Affeld Grivakes LLP
David W. Affeld (SBN 123922)
     dwa@agzlaw.com
Damion D. D. Robinson (SBN 262573)
     dr@agzlaw.com
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone:    (310) 979-8700
Facsimile:    (310) 979-8701

Attorneys for Plaintiff Michael Zeleny

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EDMUND G. BROWN, JR., an individual, in his official capacity; XAVIER BECERRA, an individual, in his official capacity; CITY OF MENLO PARK, a municipal corporation; and DAVE BERTINI, an individual, in his official capacity,<br><br>Defendants. | CASE NO.: CV 17-7357 JS<br><br>Assigned to:<br>The Honorable Richard G. Seeborg<br><br>PLAINTIFF MICHAEL ZELENY'S OPPOSITION TO DEFENDANTS EDMUND G. BROWN, JR AND XAVIER BECERRA'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION<br><br>Date:   Apr. 12, 2018<br>Time:   1:30 p.m.<br>Crtrm:  3 – 17th Floor<br><br>Date Filed:   Dec. 28, 2017<br>Trial Date:   None Set |

## I. INTRODUCTION

The motion by Edmund G. Brown, Jr. ("Governor Brown") and Xavier Becerra ("Attorney General Becerra"; collectively with Governor Brown, the "State Defendants") to dismiss for lack of subject matter jurisdiction (the "Motion") misconstrues the allegations in the Complaint, the reasons the State Defendants are named, and applicable law.

As the Complaint makes clear, this is an action to challenge **both** the facial validity of California Penal Code sections prohibiting "open carry" of unloaded firearms, and the application of those statutes by the City of Menlo Park ("City"). The Complaint is explicit that Plaintiff Michael Zeleny ("Zeleny") brings facial and as-applied challenges:

> Zeleny challenges the facial validity of California statutes restricting the public display of unloaded firearms, California Penal Code §§ 26400 and 26350. Plaintiff also challenges the interpretation of California Penal Code §§ 25510, 26400, 26405, 26350, and 26375 by local authorities in the City of Menlo Park, as applied to Plaintiff under the particular circumstances of this case, and to the City's adoption and enforcement of municipal policy as content-based restrictions on his protected speech.

(Compl. ¶ 8.) Zeleny has named the State Defendants to make his facial challenge to state statutes; he has named the City and Police Commissioner David Bertini ("Bertini"; collectively, the "City Defendants") to make his as-applied challenge. He does not seek monetary damages, but only forward-looking relief. Suing state officials for a declaration invalidating a state statute, or an injunction against enforcement, is the proper means of challenging unconstitutional state statutes under *Ex Parte Young*. Zeleny has named the correct defendants[1] and seeks the correct relief.

Each of the State Defendants' arguments to the contrary fail in turn:

*First*, Zeleny has standing to challenge the Penal Code prohibition on "open carry," because he has alleged that he plans to display unloaded firearms in connection with lawful, public protests, and has been prohibited from doing so by threat of criminal prosecution *under the challenged statutes*. The chilling of Zeleny's protected First Amendment activity based on

---

[1] Zeleny does not oppose the State Defendants' request to dismiss Governor Brown from this action, but requests that any such dismissal be without prejudice. Zeleny believes that discovery may reveal Governor Brown's direct participation in enforcement of the challenged statutes, at which time Zeleny will seek leave to amend the complaint to name Governor Brown as a party and to state the requisite facts.

explicit threats of prosecution is a constitutional injury. It can be redressed by a declaration that the statutes are unconstitutional, and an injunction against enforcing them. Without the statutes, the City Defendants would have nothing to threaten Zeleny with, and could no longer stifle his protests or require him to jump through administrative hoops to conduct them. Invalidating the statutes will allow Zeleny to immediately resume his lawful protests without interference.

*Second*, the Eleventh Amendment is no bar to a suit seeking ***only*** prospective relief, such as declaratory or injunctive relief, to challenge unconstitutional state statutes. It is well established under *Ex parte Young* that a plaintiff may bring a constitutional challenge by suing appropriate state officials, as long as he does not seek damages, or "equitable" relief that is a disguised request for damages. Zeleny seeks only a forward-looking injunction and declaration of his rights, prohibiting the City Defendants from curtailing his protests, prohibiting all of the defendants from enforcing invalid statutes, and invalidating the challenged statutes. These types of relief fall squarely within the *Ex parte Young* exception to Eleventh Amendment immunity.

Accordingly, the State Defendants' Motion should be denied.

## II. FACTUAL BACKGROUND

### A. The Challenged Statutory Framework Prohibits "Open Carry" of Unloaded Firearms.

Until 2012, California was an "open carry" state, meaning that it was legal to openly carry an unloaded firearm in public. Compl. ¶ 64. Two statutes enacted in 2011 and 2012, however, now prohibit Californians from openly carrying unloaded firearms in any public place in a California city.[2]

On October 10, 2011, Governor Brown signed into law Assembly Bill 144, which made it a crime to openly carry an unloaded handgun in public, treating unloaded handguns the same as loaded handguns. Id.. This bill became California Penal Code, section 26350, which provides:

> A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on . . . [a] public place or public street in an incorporated city or city and county, [or] [a] public street in a prohibited area of an unincorporated area of

---

[2]/ California law also prohibits concealed carry of loaded or unloaded firearms in public. In combination these laws prohibit *any* carrying of firearms in a public place.

a county or city and county.

*Id.*; ¶ 65; Cal. Pen. Code § 23650(a)(1)(A) and (B).  Violation of section 26350 is a misdemeanor, punishable by imprisonment for up to one year and a $1,000 fine.  Cal. Pen. Code § 26350(b)(2).

California expanded the prohibition on open carry to rifles in January 2013.  On September 28, 2012, Governor Brown signed into law Assembly Bill 1527, which prohibited the open carry of any unloaded "firearm that is not a handgun." Compl. ¶ 67.  This bill became California Penal Code, section 26400, which provides

> A person is guilty of carrying an unloaded firearm that is not a handgun when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in . . . [a]n unincorporated city or city and county[, or] [a] public place or public street in a prohibited area of an unincorporated area of a county.

*Id.*; *see also* Cal. Pen. Code § 26400(a)(1) and (2).  Violation of section 26400 is also a misdemeanor punishable by up to a year in jail and a $1,000 fine.  Cal. Pen. Code § 26400(b)(2).

Taken together, Penal Code, sections 26350 and 24600 prohibit a person from carrying an unloaded firearm of any kind, in any public area in a city or city and county in California.

Both sections are subject to a number of exceptions, one of which is at issue in this case.  Section 26375 allows open carrying of an unloaded handgun "by an authorized participant in . . . a motion picture, television or video production, or entertainment event, when the participant lawfully uses the handgun as part of that production or event."  Compl. ¶ 66; Cal. Pen. Code § 26375.  Similarly, section 26405(r) allows open carrying of unloaded firearms, other than handguns, "[b]y an authorized participant in . . . a motion picture, television, or video production or entertainment event, when the participant lawfully uses that firearm as part of that production or event."  Compl. ¶ 68; Cal. Pen. Code § 26405(r).  Neither statute makes an exception for carrying an unloaded firearm as part of a peaceful protest relating to a matter of public concern.

The Penal Code does not provide any definition of "authorized participant," "motion picture, television, or video production," or "entertainment event."  *See* Cal. Pen. Code §§ 26375, 26405(r).  Accordingly, the statutes can be construed– and have been construed by the City Defendants-- to give unbounded discretion to local governments to determine whether or not they

will "authorize" participants in such events, and what constitutes an "entertainment event," including on content-based grounds.

### B. The Years-long History of Efforts to Stifle Zeleny's Lawful Protests at the Behest of a Leading Silicon Valley Venture Capital Fund.

#### 1. Zeleny Exposes the Corruption and Moral Bankruptcy of Silicon Valley through His Peaceful Protests.

Zeleny has taken part in a years-long protest against a prominent Silicon Valley executive and darling of Sand Hill Road, Min Zhu. Compl. ¶ 23. Min Zhu is the founder, and was the President and Chief Technology Officer, of WebEx, a publicly traded internet company. *Id.* Min Zhu and WebEx were heavily backed by leading venture capital firm New Enterprise Associates ("NEA"). Compl. ¶ 2.

Min Zhu is also a child rapist. Compl. ¶¶ 25-26; *see also id.* ¶¶ 28-30. In August and September 1988, Min Zhu repeatedly raped his then-14-year-old daughter Erin Zhu while his wife– Erin Zhu's mother– was away on an extended trip to China for medical treatment. Compl. ¶ 25. Erin Zhu has testified about Min Zhu's abuse under oath in a civil case against him, which Min Zhu paid a substantial sum of money to settle confidentially. *Id.*

Min Zhu has never publicly addressed the allegations that he raped Erin Zhu. After being confronted with Min Zhu's abhorrent conduct, NEA has not distanced itself from Min Zhu either. Instead, it continues to work with him and to finance his projects. Compl. ¶ 25.

In 2005, following one of Zeleny's protests, Min Zhu relocated to the Peoples' Republic of China, where he remains. Compl. ¶¶ 24, 35, 38. NEA has continued to do business with Min Zhu and to fund him in China. *Id.*

#### 2. NEA, Attempts to Stifle Zeleny's Free Speech and His Lawful Protests.

Between 2005 and 2012, Zeleny conducted a series of public protests against Min Zhu, WebEx, NEA, and certain of its senior executives. Compl. ¶ 40. He protested because of his deeply held belief that anyone capable of the monstrous conduct Min Zhu committed against his daughter, and anyone who would knowingly do business with him, are categorically unfit for positions of public trust, such as officers and directors of public companies. *Id.* ¶ 39.

Zeleny began these protests online, posting on Yahoo! message boards.  Compl. ¶ 48.  WebEx unsuccessfully sued to enjoin him from posting, and was ordered to pay over $16,000 in attorney's fees and sanctions after its complaint was stricken as a Strategic Lawsuit Against Public Participation (SLAPP).  *Id.*

In May 2005, Zeleny began protesting outside of the "WebEx Experience" user conference in San Francisco.  Compl. ¶ 50.  WebEx had Zeleny arrested, but he was released the same day without charges.  *Id.* ¶ 52.  When Zeleny resumed his protest, WebEx cancelled the user conference and has never held another.  *Id.* ¶ 32.  10 days later, Min Zhu resigned from WebEx and left for China, where he remains.  *Id.* ¶ 53.

Zeleny has since expanded his protests to focus on NEA and several of its senior executives, who continue to support Min Zhu, protesting outside of NEA's offices in Menlo Park.  The protests are purposefully provocative.  Compl. ¶ 42.  In addition to handing out flyers and posting graphic, but non-obscene images, Zeleny has enlisted the help of musicians playing accordions, trumpets, and bagpipes.  *Id.*  He also hired a food truck to give away free food to sex workers, registered sex offenders, and adult performers "in honor of Min Zhu.."  *Id.*

In order to enhance the provocative nature of his protests, and to draw attention to them, Zeleny began openly carrying unloaded firearms during the protests.  Compl. ¶ 44.  The protests harken back to the peaceful, but armed, protests of the Black Panthers in the 1960s, and similar armed protests throughout American history.  *Id.* ¶ 71.  Zeleny has always notified public officials and the police in advance, and complied with their requests to inspect his firearms.  *Id.* ¶ 45.

Zeleny' use of unloaded firearms during his protests has successfully drawn media attention to the issues involved.  *E.g.* David Boyce, *Man with semi-automatic weapons protests on Sand Hill*, The Almanac, Feb. 9, 2012, https://www.almanacnews.com/news/2012/02/09/man-with-semi-automatic-weapon-protests-at-hotel; PRWeb, *New Enterprise Associates Fails to Silence Protests Against WebEx Founder and Venture Capitalist Over Alleged Rape of Daughter*, Oct. 7, 2010, http://www.prweb.com/releases/2010/10/prweb4618904.htm.

Zeleny has recorded these protests, and created a website, www.subrah.com, where he publishes the videos and other materials.  Compl. ¶ 43.

In 2009, NEA executive Scott Sandell applied for a temporary restraining order against Zeleny's protests, but never served Zeleny. Compl. ¶ 55. The Superior Court rejected the application out of hand before any opposition could be filed. *Id.* In October 2010, NEA again applied for a temporary restraining order to prevent Zeleny from protesting outside of its offices. *Id.* ¶ 55. The court again summarily rejected NEA's application. *Id.*

### 3. NEA Enlists Law Enforcement in Its Efforts to Silence Zeleny.

After the Superior Court twice denied NEA's attempts to silence Zeleny through the civil process, NEA turned to the criminal process for help. Comp. ¶ 60.

At NEA's instance, the County of San Mateo filed charges against Zeleny in 2012 for carrying a concealed firearm, based on his openly carrying a handgun in a holster on his belt. *Id* ¶¶ 60-62 (Deputy District Attorney referring to NEA as "her client" and "the client"). At the time of the protests, Penal Code, section 23650 had not been enacted, and Zeleny's open carrying of an unloaded firearm was legal. *Id.* ¶ 61. The Superior Court acquitted Zeleny of all charges after a bench trial in 2014. *Id.* ¶ 63.

### C. The City Uses the Newly Enacted Prohibitions on Carrying Unloaded Firearms to Stifle Zeleny's Protests Based on their Content.

Consistent with their vague and discretionary nature, and the City's prior efforts to silence Zeleny, the City is now using the "open carry" statutes to place content-based restrictions on Zeleny's protected First Amendment activity.

In or around 2013, the City adopted a municipal policy, which requires a "Special Event Permit" for any entertainment event or video production involving firearms. Compl. ¶ 81. The City has taken the position that in order to qualify for exemption as an "authorized participant" in a video production or entertainment event, the City must authorize *both* the video production, *and* the carrying of unloaded firearms as part of that production. *Id.* ¶ 80.

After his acquittal, Zeleny sought to resume his protests of NEA, WebEx, and Min Zhu. Fearing further prosecution under the new "open carry" ban, Zeleny attempted to secure a permit from the City. Compl. ¶ 83. Because Zeleny is an amateur filmmaker, publishing protest videos online, he sought to qualify for the video production and entertainment exemptions. *Id.* ¶ 79.

The City has warned Zeleny that if he resumes his protests without such a permit, he will be prosecuted under Penal Code, sections 25400, 26350, and 26400. *Id.* ¶ 82.

The City, however, has refused to give Zeleny a permit, and has denied all of his applications for one. Compl. ¶ 83. Despite repeated requests, the City will not even tell Zeleny what requirements he needs to satisfy before getting one. *Id.* ¶ 84. In an appeal of the denial of one of Zeleny's applications for a permit, which was recorded, the City admitted that it had denied Zeleny's permit because it found the content of his protests offensive. *Id.* ¶ 85.

In 2016, Zeleny met with representatives of the City in a further effort to get a Special Event Permit. At that time, Police Commander David Bertini ("Bertini") threatened to arrest Zeleny for violation of Penal Code, section 313.1(a), distribution of harmful content to minors, if he displayed a non-obscene piece of artwork. Compl. ¶¶ 87-88 & Ex. A. Bertini further threatened to arrest Zeleny if he carried firearms during the protests. *Id.*

To date, Zeleny has been unable to obtain a Special Events Permit or to continue his protests on threat of criminal prosecution. Compl. ¶ 92.

   D. **Zeleny Challenges the "Open Carry" Statutes Both Facially and as Applied**.

Zeleny has filed this action challenging both the Penal Code prohibitions on open carry themselves, and the City's interpretation and application of those statutes. Compl. ¶ 8.

In his complaint, Zeleny asserts four counts against the City and Bertini for (1) Violation of the First Amendment, (2) Violation of the First and Fourteenth Amendments, (3) Violation of the First and Second Amendments, and (3) Violation of 42 U.S.C. § 1983. Each count is based on the City Defendants' refusal to allow Zeleny to engage in his protests based on their interpretation and application of Penal Code, sections 26350 and 26400. *See generally* Compl. ¶¶ 98-128.

Zeleny also states one count against the State Defendants, challenging the constitutionality of Penal Code, sections 26350 and 26400. Compl. ¶¶ 129-133. In it, Zeleny alleges that those sections violate the Equal Protection clause of the Fourteenth Amendment because they improperly distinguish between groups who are allowed to openly carry firearms in connection with First Amendment activities. Compl. ¶ 132. Specifically, Zeleny alleges:

> Because California's comprehensive firearms carry restrictions bar law-abiding California residents from publicly carrying a firearm in any manner in furtherance of their right to free speech under the United States and California Constitution in connection with a public issue or an issue of public interest, while allowing other law-abiding citizens to carry a firearm for motion picture, television or video productions, or entertainment events, Defendants have created a classification of persons, including Plaintiff, who are treated unequally through the denial of their First and Second Amendment rights to publicly bear arms for expressive purposes.

*Id.* The substance of Zeleny's challenge is that the Penal Code sections impermissibly distinguish between First Amendment speakers who are allowed to carry firearms, drawing a vague and arbitrary distinction between those engaged in movie production and "entertainment events," and those engaged in lawful, peaceful protests on matters of public concern. *See Branzburg v. Hayes*, 408 U.S. 665, 704 (1972) ("[l]iberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods").

Zeleny does not seek damages. Instead, he seeks declaratory and injunctive relief, including "a declaratory judgment . . . binding on all Defendants, that California Penal Code §§ 26400 and 26350 are unconstitutional." Compl., Prayer for Relief ¶ A. He also seeks "an injunction against Defendants prohibiting them from enforcing Penal Code, sections 26400 and 26350 against Zeleny in connection with his peaceful protests." *Id.* ¶ F.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes a motion challenging the Court's subject matter jurisdiction. The motion may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial challenge, the moving party "asserts that the allegations in a complaint are insufficient . . . to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, as here, the Court must "take the allegations in the plaintiff's complaint as true," and the plaintiff is "not required to provide evidence outside the pleadings." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

[Remainder of Page Intentionally Left Blank]

## IV. ARGUMENT

### A. Zeleny Has Standing to Challenge Penal Code, Sections 26350 and 26400 Because the Threat of Prosecution Chills His First Amendment Activities.

The State Defendants' challenge for lack of redressability is misplaced because Zeleny has been threatened with prosecution under the challenged statutes. A plaintiff satisfies the redressability requirement where a favorable judgment will "likely" redress his injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Injury in this context means constitutional injury - *i.e.*, "invasion of a legally protected interest," such as a constitutional right. *Id.*

"First Amendment challenges . . . present unique standing considerations such that the inquiry tilts dramatically towards a finding of standing. This is so because . . . a chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury." *Libertarian Party of Los Angeles County v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) (quoting *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003); citing *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010); internal quotation marks omitted). "[W]here a plaintiff has refrained from engaging in expressive activity for fear of prosecution under the challenged statute, such self-censorship is a constitutionally sufficient injury as long as it is based on an actual and well-founded fear that the challenged statute will be enforced." *Human Life*, 624 F.3d at 1001 (citation omitted).

### 1. The Chilling of Zeleny's Protected Protests on Threat of Prosecution Establishes a Constitutional Injury.

Where a plaintiff alleges that he intends to engage in conduct prohibited by criminal laws, he suffers an "injury" for standing purposes. *See Planned Parenthood of Idaho*, 375 F.3d at 916-17 ("Whether he continues to perform abortions subject to the statute, desists from performing them to avoid the statute's penalties, or violates the statutes so as to practice his profession in accord with his medical judgment, his liberty will be concretely affected"). A plaintiff need not violate the statutes at issue, and risk criminal prosecution, in order to challenge them, particularly in the First Amendment context. *Id.*; *see also Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965) ("[b]ecause of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights").

Courts have repeatedly found standing where challenged statutes have a chilling effect on speech. *See Polykoff v. Collins*, 816 F.2d 1326, 1331 (9th Cir. 1987) (finding standing based on "chilling of protected speech"); *see also NAACP v. Button*, 371 U.S. 415, 432-33 (1963) ("These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions."); *Libertarian Party of Los Angeles County*, 709 F.3d at 870-71. The possibility of "self-censorship" is sufficient to confer standing "even without an actual prosecution." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392-93 (1988); *see also Adult Video Ass'n v. Barr*, 960 F.2d 781, 786 (9th Cir. 1992), *vacated on other grounds sub nom. in Reno v. Adult Video Ass'n*, 509 U.S. 917 (1993); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1008 ("[t]he mere threat of prosecution under a challenged statute that results in actual self-censorship constitutes a constitutionally sufficient injury as long as it is based on an actual and well-founded fear that the statute will be enforced") (quoting *Human Life*, 624 F.3d at 1001; internal quotation marks omitted).

Further, a plaintiff has standing where he is subject to a concrete threat of criminal prosecution that is not "imaginary or speculative." *Steffel v. Thompson*, 415 U.S. 452, 457 (1974) (finding an actual controversy where the plaintiff "has been twice warned to stop handbilling . . . and has been told by the police that if he again handbills. . . he will likely be prosecuted"). A plaintiff need only show a "reasonable threat of prosecution for conduct allegedly protected by the constitution." *Ripplinger v. Collins*, 868 F.2d 1043, 1047 (9th Cir. 1989). Where a plaintiff's "challenge is to those specific provisions of state law which have provided the basis for threats of criminal prosecution against him," he has standing. *Steffel*, 415 U.S. at 457; *see also Ripplinger*, 868 F.2d at 1047 (finding standing where plaintiff was warned by deputy county attorney that a charge "would be initiated" if he continued distributing "hardcore pornography") (citing *Polykoff*). In the First Amendment context, courts have found a sufficient threat of prosecution, even in the absence of meaningful prosecution history. *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1173 (9th Cir. 2017) (finding reasonable fear of enforcement where the state "has not suggested that [the statute] will not be enforced if plaintiffs (or others) decide to violate the law, nor has the law fallen into desuetude") (citations and internal quotation marks omitted).

Zeleny specifically alleges that he intends to continue his protests, and has not done so out of fear that he will be prosecuted under sections 26350 and 26400.

> Plaintiff seeks to exercise his First and Second Amendment rights by engaging in peaceful protests while carrying unloaded firearms. Zeleny has been prohibited from exercising those rights, and the exercise of his First and Second Amendment rights has been chilled due to the ongoing threat of criminal prosecution.

*See* Compl. ¶ 92. He describes his plans for future protests and efforts to engage in those protests. *Id.* ¶ 79 ("Between June 2015 and the present, Zeleny has attempted to exercise his rights under sections 25510, 26375, and 26405 by engaging in videotaped protests while carrying unloaded firearms, including handguns and rifles").

Rather than simply engaging in the protests as he did before the "open carry" ban, however, Zeleny has now been required to comply with vague permitting requirements, which have served as a subterfuge for content-based restrictions. *Id.* ¶¶ 83-84 (alleging that Zeleny has applied for permits per City policy, but that the City has refused to issue them or to tell Zeleny what the requirements are for issuing them). The permitting requirement has stalled, and ultimately prevented Zeleny from engaging in his protests for over two years. *Id.* The unlawful permitting process would not exist, and Zeleny would not need to jump through regulatory hoops to engage in protected First Amendment activity, but for the challenged statutes. *See Bayless*, 320 F.3d at 1006 (holding that plaintiff had standing where he was "forced to modify [his] speech and behavior to comply with the statute," even though he had "neither violated the statute nor been subject to penalties for doing so").

Zeleny further alleges concrete threats of prosecution if he engages in peaceful, armed protests without the City's approval. *Id.* ¶ 82 ("The City informed Zeleny that if he engages in his protests without a permit under its Special Event Permit policy, he will be prosecuted for violation of California's open and/or concealed carry laws, including California Penal Code §§ 25400, 26400, and 26350."); *id.* ¶ 88. These threats are even more acute and more chilling on Zeleny's First Amendment activities because he was unsuccessfully prosecuted before under related statutes for the same protests. *Id.* ¶¶ 57-63.

The chilling effect on Zeleny's First Amendment activities, his concrete plans for future protests, and the threats of criminal prosecution if he engages in them is more than sufficient to establish a cognizable injury for purposes of standing.

### 2. The Prohibition on Zeleny's First Amendment Activities Would Be Redressed by a Favorable Judgment Prohibiting Enforcement of the Challenged Statutes.

"A plaintiff meets the redressibility requirement if it is likely, although not certain, that his injury can be redressed by a favorable decision." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) (citing *Bonnichsen v. United States*, 367 F.3d 864, 873 (9th Cir. 2004)). Redressability exists where a plaintiff challenges a state law applied to him, and sues the authority responsible for enforcing it for a declaration that it is invalid. *See*, *e.g.*, *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 893 (9th Cir. 2007) (finding redressability where plaintiff challenged statute, and invalidation of statute would allow it to engage in its desired activity of erecting billboards); *Marijuana Policy Project v. Miller*, 578 F. Supp. 2d 1290, 1303 (D. Nev. 2008) ("[r]edressability [] exists because, as the alleged injury is a result of enforcement of the [challenged rule], invalidation of the [rule] would redress Plaintiffs' injuries").

It is well established that a ruling prohibiting enforcement of the challenged statute will redress the plaintiff's injuries arising from that statute. *Wolfson*, 616 F.3d at 1057 (holding that injunction against parties with "the power to discipline" the plaintiff would redress the plaintiff's injuries "in the form of freedom to engage in certain activities without fear of punishment"). This is true whether the plaintiff seeks an injunction directed at state prosecuting authorities, local ones, or both, as Zeleny does here. *See Planned Parenthood of Idaho*, 376 F.3d at 920 ("[a]n injunction against the attorney general could redress plaintiffs' alleged injuries, just as an injunction against the Ada County prosecutor could").

The authorities offered by the State Defendants do not suggest otherwise. *Blair v. Shanahan*, 38 F.3d 1514 (9th Cir. 1994) was not a redressability case; it was a mootness case. The plaintiff lost standing because he no longer wanted to engage in the activity that was prohibited by statute - *i.e.*, panhandling. *Id.* at 1518-19. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976) is far off base as well. In that case, the plaintiff sued the

IRS, claiming that a revenue ruling had discouraged hospitals from providing services to indigents. *Id*. The Court determined that the IRS should have obtained summary judgment because there was no showing that the revenue ruling caused the denial of services. *Id*. The plaintiff had failed to establish a causal connection between the challenged ruling and the injury. Here, in contrast, there is a direct and concrete connection between the challenged statutes and Zeleny's injury.

As alleged in the Complaint, Zeleny used to be free to exercise his right to carry an unloaded firearm in public as part of his protests without any requirement that he obtain permits or seek approval from local authorities. After the enactment of Penal Code, sections 26350, and 26400, however, he now requires an Events Permit, which the City Defendants will not issue him. If he engages in the protests without a permit, he will suffer criminal prosecution. But for the threat of enforcement of those statutes, there would not be a permitting requirement, and no mechanism for the City to interfere with his protests. A ruling invalidating the statutes as against the Attorney General will remedy Zeleny's injury just as easily as a ruling as against the City Defendants because it will take away the means for them to stifle Zeleny's protests. *Planned Parenthood of Idaho*, 376 F.3d at 920.

It is for this reason that courts routinely find standing in suits against state attorneys general– including Attorney General Becerra in particular– to challenge state statutes as unconstitutional under *Ex parte Young*. *See*, *e.g.*, *Nichols v. Brown*, 945 F. Supp. 2d 1079, 1107 (C.D. Cal. 2013) (finding sufficient connection between Attorney General and enforcement of warrantless firearm search statute because of the Attorney General's expansive authority to enforce criminal laws) (citing *Planned Parenthood of Idaho*); *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1113 (S.D. Cal. 2017) (granting preliminary injunction against enforcement of high-capacity magazine ban, and finding standing because "Attorney General [Becerra] has not indicated that § 32310(c) & (d) will not be enforced"); *cf. also Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017) (challenge to firearm transfer fee under Second Amendment); *Weiss v. Becerra*, 263 F. Supp. 3d 986 (E.D. Cal. 2017) (Second Amendment and equal protection challenge to high-capacity magazine ban).

Indeed, in *Nichols*, the Central District rejected the very argument the Attorney General makes here - *i.e.*, an insufficient causal connection between the Attorney General and enforcement

by local authorities.  945 F. Supp. 2d at 1107.  Relying on *Planned Parenthood of Idaho*, the court in *Nichols*  held that the Attorney General's broad enforcement authority, including the duty to step in when local prosecutors cannot or will not enforce state law, provided a causal connection. *Id*.  The fact that the Attorney General does not directly enforce or intend to enforce the statute is no bar. *Association de Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (2013) ("The Attorney General's argument that she is entitled to Eleventh Amendment immunity because she has not shown she intends to enforce [the statute] is foreclosed by our decision in *National Audubon Society*")**;** *see also National Audubon Society, Inc. v. Davis*, 307 F.3d 835, 846-47 (9th Cir. 2002) (finding that suit could be brought against state officials with enforcement authority over challenged statute, even in the absence of a threat of enforcement; finding standing to sue where invalidating statute would allow plaintiffs to engage in their desired conduct).

  **B.** **The Eleventh Amendment Does Not Bar Actions Solely for Injunctive and Declaratory Relief against State Officials in their Official Capacity.**

    **1.** **The *Ex parte Young* Doctrine Permits Suits Against State Officials Challenging the Constitutionality of State Law.**

  The Eleventh Amendment does not bar *prospective* injunctive or declaratory relief to stop an ongoing violation of Federal law or the United States Constitution. *Ariz. Students Assn. v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016)  (citing *Ex Parte Young*, 209 U.S. 123, 149-56 (1908)). "To ensure the enforcement of federal law . . . the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel Few v. Hawkins*, 540 U.S. 431, 438 (citing *Ex parte Young*).  "Under the doctrine of *Ex parte Young*, suits against an official for prospective relief are generally cognizable, whereas claims for retrospective relief (such as damages) are not." *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003) (citations omitted).  A plaintiff may recover both prospective relief and ancillary remedies, such as attorneys fees and costs, without violating the Eleventh Amendment. *See Ariz. Students Assn.*, 824 F.3d at 865 (citations omitted); *see also Hutto v. Finney*, 437 U.S. 678, 689-92 (permitting injunctive relief and attorney's fees for enforcing injunction).

  The Supreme Court explained this distinction in *Papasan v. Allain*:

> Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant. This is true if the relief is expressly denominated as damages. It is also true if the relief is tantamount to an award of damages for a past violation of federal law, even though styled as something else. On the other hand, ***relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment*** even though accompanied by a substantial ancillary effect on the state treasury.

478 U.S. 265, 278 (1986) (citations and footnotes omitted; emphasis added). Thus, Courts have held that cases seeking money or affecting property rights of states are barred by the Eleventh Amendment. *E.g.*, *Coeur d'Alene Tribe*, 521 U.S. at 282 (finding suit barred because it was "the functional equivalent of a quiet title action which implicates special sovereign interests"); *Porter v. Jones*, 319 F.3d 483, 491 n.7 (9th Cir. 2003)   In contrast, cases challenging the ongoing enforcement of state statutes fall squarely under *Ex parte Young*. *See Green v. Louisville & I.R. Co.*, 244 U.S. 499, 506-507 (1917) (holding that "the matter was set at rest in *Ex parte Young*," and that suits challenging ongoing enforcement of unconstitutional state laws are not barred).

   In determining whether actions for injunctive or declaratory relief are except from Eleventh Amendment immunity, courts conduct a "straightforward inquiry" to determine whether the complaint seeks "relief properly characterized as prospective." *Verizon Md. Inc. v. Pub'c Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). The Eleventh Amendment bars suits for "equitable relief" only where they seek something akin to monetary damages, or affect property rights. *See Porter*, 319 F.3d at 491 n.7 ("The cases that Jones cites stand *only* for the proposition that a plaintiff may not couch in terms of injunctive or declaratory relief a compensatory, backward-looking remedy") (citations omitted). The decision turns on the *relief* a plaintiff is seeking, not on the conduct underlying the case, which may relate to past acts. *Porter*, 319 F.3d at 491 ("This argument confuses liability with remedy. Although Plaintiffs' allegations are rooted in events that occurred in the past, the injunctive and declaratory relief that they seek would prevent future and ongoing illegality").

   The Complaint in this case is explicit: Zeleny is seeking *exclusively* forward-looking declaratory and injunctive relief against the State Defendants to declare Penal Code, sections

26350 and 26400 unconstitutional, and to prohibit the State Defendants from enforcing them.[3] This is purely prospective relief, not money damages. Under *Ex parte Young* the Eleventh Amendment is no bar to Zeleny's claims for these types of prospective relief.

### 2. Attorney General Becerra Is a Proper Defendant to a Constitutional Challenge to the California Penal Code.

The Ninth Circuit has established that a state attorney general is a proper defendant in a case challenging criminal laws where he has authority to directly prosecute violations of those laws. *Planned Parenthood of Idaho v. Wasden*, 376 F.3d 908, 919-20 (2004) ("However, and determinatively here . . . the [state] attorney general may in effect deputize himself . . . to stand in the role of county prosecutor. . . . That power demonstrates the requisite causal connection for standing purposes"). It applied this same rationale to the California Attorney General, then Attorney General Kamala Harris, in *Association de Eleveurs*, 729 F.3d at 943. There, the Court held under *Ex parte Young* that the Attorney General was a proper party because (a) the law at issue could be enforced by district attorneys and city attorneys, and (b) the California Constitution gives the Attorney General the right and duty to step in for local prosecutors if state law is not being enforced. *Id.* ("The combination of [the underlying statute], which gives district attorneys the authority to prosecute . . . and the Attorney General's duty to prosecute as a district attorney establishes sufficient enforcement power for *Ex parte Young*").

The same rationale applies with even more force when the statute at issue is a penal statute. California law permits Attorney General Becerra to step in to directly prosecute violations of the California Penal Code:

> When he deems it advisable or necessary in the public interest, or when directed to do so by the Governor, [the Attorney General] shall assist any district attorney in the discharge of his duties, *and may, where he deems it necessary, take full charge of any investigation or prosecution of violations of law of which the superior court has jurisdiction. In this respect he has all the powers of a district attorney*, including the power to issue or cause to be issued subpenas or other process.

---

[3] Zeleny's prayer for fees and costs is "ancillary" relief, not barred by the Eleventh Amendment. *Ariz. Students Assn.*, 824 F.3d at 865 (citing *Hutto* and *Green*).

Cal. Gov. Code § 12550 (emphasis added).  Further, as in *Association des Eleveurs*, Article 5, Section 13 of the California Constitution makes this a duty of the Attorney General.  *See* Cal. Const., Art. 5, § 13 ("it shall be the duty of the Attorney General to prosecute any violations of law of which the superior court shall have jurisdiction, and in such cases the Attorney General shall have all the powers of a district attorney").  This provision "confers broad discretion upon the Attorney General to determine when to step in and prosecute a criminal case." *Pitts v. County of Kern*, 17 Cal. 4th 340, 357 (1998) (quoting *People v. Honig*, 48 Cal. App. 4th 289, 354-55 (1996)).

Based on this reasoning, in *Nichols*, 859 F. Supp. 2d at 1130-31, the Central District of California found that the California Attorney General was the proper defendant in a case challenging the constitutionality of California's ban on open carry of loaded firearms, Penal Code, section 25850.  The court went on to hold that under *Planned Parenthood of Idaho*, a suit against the Attorney General to enjoin enforcement of that statute fell within the *Ex parte Young* exception to Eleventh Amendment immunity.  *Id.* at 1135-36.  In so holding, the court determined that the Attorney General's authority to act as prosecutor provided a sufficient connection to enforcement of the statute to satisfy *Ex parte Young*.  *Id.*  The same is equally true here.

## V. CONCLUSION

Because Zeleny has challenged state Penal Code provisions that apply directly to him, and which are the source of the invasion of his First Amendment rights, and because he seeks only prospective relief against the proper defendant, the Motion should be denied.

Dated: March 6, 2018              Respectfully submitted,

  /s/ Damion Robinson
David W. Affeld
Damion D. D. Robinson
Affeld Grivakes LLP
Attorneys for Defendant Michael Zeleny