1  THOMAS S. BROWN, CA Bar No. 178620
     tsbrown@foley.com
2  NICHOLAS P. HONKAMP, CA Bar No. 261299
     nhonkamp@foley.com
3  **FOLEY & LARDNER LLP**
   555 CALIFORNIA STREET
4  SUITE 1700
   SAN FRANCISCO, CA 94104-1520
5  TELEPHONE:  415.434.4484
   FACSIMILE:   415.434.4507
6
   Attorneys for Non-Party New Enterprise
7  Associates

8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11

12 Michael Zeleny,                          Case No. 17-CV-07357-RS

13                          Individual,     **NON-PARTY NEW ENTERPRISE
                                            ASSOCIATES' NOTICE OF MOTION AND
14        vs.                               MOTION TO QUASH AND/OR FOR
                                            PROTECTIVE ORDER; MEMORANDUM
   Edmund G. Brown, et al.,                 OF POINTS AND AUTHORITIES IN
15                                          SUPPORT OF SAME**
                            Defendants.
16                                          Date:     March 7, 2019
                                            Time:     1:30 pm
17

18

19        **PLEASE TAKE NOTICE** that on March 7, 2019, at 1:30 p.m., or as soon thereafter as the

20 matter may be heard by the Court, non-party New Enterprise Associates ("NEA") will, and hereby does,

21 move the Court to quash the subpoena Plaintiff Michael Zeleny ("Zeleny" or "Plaintiff") issued to it in

22 the above-captioned matter, as compliance would unduly burden non-party NEA due to the time, effort

23 and expense necessary to comply with the twenty-four (24) requests for production and twenty-one (21)

24 topics designated for testimony by a corporate representative that span a time period of up to twenty

25 years.  Such a burden is particularly inappropriate where the discovery sought is irrelevant to Plaintiff's

26 claims and would require the production of NEA's privileged information.

27        This Motion is brought on the grounds that there is no good cause for the Subpoena because: (1)

28 the Subpoena is on its face overly broad, unduly burdensome and would impose excessive costs on a

4820-0164-2374.3

1  non-party; (2) NEA's documents and testimony are irrelevant to Plaintiff's claims, which focus on

2  whether various statutes are constitutional; and (3) the Subpoena seeks privileged information from

3  NEA.  For these reasons, NEA respectfully requests that the Court quash the Subpoena issued by

4  Plaintiff in its entirety, or alternatively, enter a protective order to protect NEA from this unduly

5  burdensome discovery.

6       This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of

7  Points and Authorities, the Declarations of Adam Valachovic and Roger Lane submitted concurrently

8  herewith, in addition to the pleadings and other papers filed in this action, and such other evidence and

9  arguments as the Court may consider at the time of the hearing.

10

11  DATE:  JANUARY 25, 2019              **FOLEY & LARDNER LLP**
                              THOMAS S. BROWN

12                                NICHOLAS P. HONKAMP

13

                           By: /s/ Nicholas P. Honkamp

14                                NICHOLAS P. HONKAMP
                              Attorneys for Non-Party New Enterprise Associates

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4820-0164-2374.3

1

**TABLE OF CONTENTS**

2    MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

3    I.    BACKGROUND ..................................................................................................................1

4    A.    PLAINTIFF'S COMPLAINT..................................................................................1

5    B.    PROCEDURAL BACKGROUND............................................................................2

6    C.    THE SUBPOENA.....................................................................................................2

7    II.   ARGUMENT .......................................................................................................................2

8    A.    LEGAL STANDARD...............................................................................................3

9    B.    THE SUBPOENA IS UNDULY BURDENSOME AND OPPRESSIVE ....................4

10         1.    The time period of the Subpoena is overly broad. ............................................5

11         2.    The Subpoena imposes unnecessary burden and cost on a non-
                 party. .................................................................................................................6
12
           3.    The scope of the Subpoena is overly broad. .....................................................8
13
           4.    The discovery sought by the Subpoena is not relevant to
14               Plaintiff's claims. ..............................................................................................8

15   C.    THE SUBPOENA SEEKS NEA'S PRIVILEGED INFORMATION .........................11

16   III.  CONCLUSION...................................................................................................................12

17

18

19

20

21

22

23

24

25

26

27

28

4820-0164-2374.3

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*AngioScore, Inc. v. TriReme Med., Inc.*,
   No. 12-cv-03393-YGR(JSC), 2014 WL 6706898 (N.D. Cal. Nov. 25, 2014) ....................................3

5

*Dart Indus. Co. v. Westwood Chem. Co.*,
   649 F.2d 646 (9th Cir. 1980) ...............................................................................................................4

6

7

*Dibel v. Jenny Craig, Inc.*,
   No. 06cv2533 BEN(AJB), 2007 WL 2220987 (S.D. Cal. Aug. 1, 2007).............................................7

8

9

*Fidelity & Guaranty Life Ins. Co. v. United Advisory Group, Inc.*,
   No. JFM-13-40, 2016 WL 632025 (D. Md. Feb. 17, 2016) .................................................................3

10

*Friedberg v. Madison Realty Invs., Inc.*,
   No. 1:16-mc-0003, 2016 WL 1562948 (S.D. Ohio Apr. 16, 2016)......................................................3

11

12

*Gaines v. Techline, Inc.*,
   No. 1:13-CV-0576, 2016 WL 1453895 (W.D. La. Apr. 11, 2016) .......................................................3

13

14

*Haworth, Inc. v. Herman Miller, Inc.*,
   998 F.2d 975 (Fed.Cir.1993)................................................................................................................7

15

*High Tech Med. Instrumentation, Inc. v. New Image Inds., Inc.*,
   161 F.R.D. 86 (N.D. Cal. 1995)...........................................................................................................4

16

17

*Kim v. NuVasive, Inc.*,
   No. 11CV1370-DMS (NLS), 2011 WL 3844106 (S.D. Cal. Aug. 29, 2011) .....................................4

18

19

*Miller v. California*,
   413 U.S. 15 (1973)..............................................................................................................................10

20

*Moon v. SPC Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005)................................................................................................4, 5, 7, 8

21

22

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   No. 09-cv-01967 CW(NC), 2012 WL 629225 (N.D. Cal. Feb. 27, 2012) ...........................................5

23

24

*Optimize Tech. Sols., LLC v. Staples, Inc.*,
   No. 14-mc-80095-LHK (HRL), 2014 WL 1477651 (N.D. Cal. Apr. 14, 2014) ..................................8

25

26

*Paisley Park Enter., Inc. v. Uptown Prods.*,
   54 F. Supp. 2d 347 (S.D. N.Y. 1999)....................................................................................................9

27

28

4820-0164-2374.3

*Pope v. Illinois*,
   481 U.S. 497 (1987)..................................................................................................................11

*Premium Serv. Corp. v. Sperry & Hutchinson Co.*,
   511 F.2d 225 (9th Cir. 1975) ....................................................................................................4

*Robert Half Int'l Inc. v. Ainsworth*,
   No. 14-CV-2481-WQH DHB, 2015 WL 4662429 (S.D. Cal. Aug. 6, 2015)................................8, 11

*United States v. 2200 Paper Back Books*,
   565 F.2d 566 (9th Cir. 1977) ..................................................................................................11

*United States v. Columbia Broad. Sys.*,
   666 F.2d 364 (9th Cir. 1982) ....................................................................................................4

*Waymo LLC v. Uber Techs., Inc.*,
   No. 17-CV-00939-WHA(JSC), 2017 WL 2929439, (N.D. Cal. July 7, 2017)..................................4

**Statutes**

42 U.S.C. § 1983..............................................................................................................................2

Const Amend I ..................................................................................................................................1

Const Amend II..................................................................................................................................1

Const Amend XIV .........................................................................................................................1, 2

Federal Rule of Civil Procedure 26 ................................................................................................3, 4

Federal Rule of Civil Procedure 45 ................................................................................3, 4, 8, 11, 12

Federal Rule of Evidence 30(b)(6) ....................................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
AND/OR FOR PROTECTIVE ORDER
iii                                    Case No. 17-CV-07357-RS

4820-0164-2374.3

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.      BACKGROUND**

3

New Enterprise Associates ("NEA") is a venture capital firm based in Menlo Park, California.

4

(Compl. ¶ 31.)  Years ago, NEA invested in a company co-founded by Min Zhu ("Zhu") named WebEx.

5

(*Id.*)  Plaintiff was previously involved in some way with Zhu's daughter, Erin Zhu ("Ms. Zhu").  (Compl.

6

¶ 27.)  Since 2005, Plaintiff has protested Zhu and WebEx, purporting to protest Zhu's alleged treatment

7

of Ms. Zhu.  (Compl. ¶ 32.)  Plaintiff later expanded those protests to include individuals or entities he

8

believes supported or continue to support Zhu and his business activity.  (Compl. ¶ 40.)  Although Zhu's

9

involvement in WebEx ended some 14 years ago, and, on information and belief, Zhu has resided in China

10

since 2005, Plaintiff has continued to target NEA with his "protests" for nearly a decade.  (Compl. ¶¶ 35

11

& 37.)

12

**A.      PLAINTIFF'S COMPLAINT**

13

On December 28, 2017, Plaintiff filed a Complaint for Declaratory and Injunctive Relief against

14

Edmund G. Brown, Jr. (the governor of California), Xavier Becerra (the Attorney General of California),

15

the City of Menlo Park, and Dave Bertini (the Commander of the Menlo Park Police Department).

16

(Compl., Docket Entry No. 1.)  In Plaintiff's own words:

17

[t]his case is brought to challenge the constitutionality of California statutes restricting Plaintiff's rights to bear arms under the Second Amendment

18

while engaging in, and as part of, entertainment events and media productions of peaceful, public speech on matters of public concern or

19

matters of political, social, or other concerns to the community, or issues of significant importance to the public as a whole, as protected by the First

20

Amendment.  This case also challenges the application, by the City of Menlo Park (the "City"), of California statutes restricting Plaintiff's rights

21

to bear arms under the Second Amendment while engaging in, and as part of, entertainment events and media productions of peaceful, public speech

22

on matters of public concern or matters of political, social, or other concerns to the community, or issues of significant importance to the public as a

23

whole, as protected by the First Amendment.  Lastly, this case challenges state statutes and municipal policies that have been seized upon by the City,

24

which has imposed unlawful, content-based prior restraints, backed by the threat of criminal prosecution, to stifle Plaintiff's Constitutionally protected

25

speech.

26

27

(Compl. at ¶ 1.)  Plaintiff's Complaint asserts claims against the City of Menlo Park and Bertini for

28

violations of the First, Second and Fourteenth Amendments to the United States Constitution (Counts I,

PROOF OF SERVICE
Case No. 17-CV-07357-RS

4820-0164-2374.3

II & III); against the City of Menlo Park and Bertini for violations of 42 U.S.C. § 1983 (Count IV); and against Becerra and Brown for violations of the Fourteenth Amendment to the United States Constitution (Count V).

## B.   PROCEDURAL BACKGROUND

Governor Brown was dismissed from the underlying lawsuit on April 17, 2018.  (Docket Entry No. 37.)  All non-expert discovery is set to be completed by March 1, 2019.  (Docket Entry No. 45.)  As of January 11, 2019, when counsel for Plaintiff and NEA met and conferred regarding the scope of the Subpoena, Plaintiff had yet to serve any formal discovery on any of the Defendants in the underlying case. (Lane Decl. ¶ 7.)

## C.   THE SUBPOENA

The Subpoena was dated December 13, 2018, but was not served on NEA until January 4, 2019 (a Friday).  (Lane Decl., Exh. A.)  The Subpoena sought a deposition of a corporate representative of NEA under Federal Rule of Evidence 30(b)(6) on ***January 11, 2019*** – *i.e.*, four business days after service, and required NEA's representative(s) to be prepared to testify on twenty-one (21) discrete topics, some of which involve events that date as far back as 1995.  (*See e.g.,* Lane Decl., Exh. A, Topic No. 16 ("The relationship between NEA and Min Zhu from 1995 through the present.").)  The Subpoena also directed NEA to bring with it on January 11, 2019, documents responsive to twenty-four (24) separate document requests, some of which also sought documents dating as far back as 1995.  (*See e.g.,* Lane Decl., Exh. A, Request No. 17 ("Documents sufficient to show the relationship between NEA and Min Zhu from 1995 to the present.").)

On January 10, 2019, NEA objected to the Subpoena in writing.  (Lane Decl., Exh. B.)  On, January 11, 2019, counsel for NEA and Plaintiff met and conferred on the scope of the Subpoena but were unable to reach agreement.  (Lane Decl. ¶ 4.)

## II.   ARGUMENT

The Subpoena issued to NEA should be quashed in its entirety and a protective order entered, barring attempts to obtain irrelevant and overly broad discovery from NEA.  First, the Subpoena is *prima facie* overly broad, unduly burdensome and would impose excessive costs on NEA in collecting and processing the requested documents, let alone the costs that would be incurred by having attorneys review

4820-0164-2374.3

1  the documents for production.  This burden is particularly inappropriate where Plaintiff admits that when

2  he served the Subpoena, he had yet to serve any written discovery on the actual parties to the case.  Second,

3  the testimony and documents sought are irrelevant to Plaintiff's case.  As Plaintiff himself admits, the real

4  purpose of the overly broad Subpoena is that Plaintiff is on an impermissible fishing expedition to try to

5  establish claims against NEA.  Third, the Subpoena seeks privileged information that is proprietary to

6  NEA.  Thus, under Federal Rules of Civil Procedure 45 and 26, the Subpoena should be quashed and a

7  protective order entered to protect non-party NEA from further discovery attempts.[1]

8    **A.  LEGAL STANDARD**

9      The issuance of subpoenas to obtain discovery from non-parties is governed in part by Federal

10  Rule of Civil Procedure 26, which provides that a "court may, for good cause, issue an order to protect a

11  party or *person* from annoyance, embarrassment, oppression, or undue burden or expense...."  FED. R.

12  CIV. P. 26(c)(1) (emphasis added).  The court may "forbid[] disclosure or discovery" or "forbid[] inquiry

13  into certain matters, or limit[] the scope of disclosure or discovery to certain matters."  FED. R. CIV. P.

14  26(c)(1)(A), (D).

15      The issuance of subpoenas to obtain discovery from non-parties is also governed by Federal Rule

16  of Civil Procedure 45, which contains mandatory provisions that protect non-parties from the burden and

17  expense of discovery.  FED. R. CIV. P. 45(d)(1).  "A party or attorney responsible for issuing and serving

18  a subpoena *must* take reasonable steps to avoid imposing undue burden or expense on a person subject to

19  the subpoena."  FED. R. CIV. P. 45(d)(1) (emphasis added).  "On timely motion, the court for the district

20  where compliance is required *must* quash or modify a subpoena that. . . fails to allow a reasonable time to

21

---

22  [1]  As served, the Subpoena failed to provide NEA with sufficient time to comply in that it originally sought compliance within
four business days of service, even though the Subpoena's own Instructions & Definitions demanded that NEA "identify those

23  person(s) designated to testify on your behalf at least five (5) business days before the date of the deposition."  (Lane Decl.,
Exh. A); FED. R. CIV. P. 45(d)(3)(A)(i) ("On timely motion, the court for the district where compliance is required *must* quash

24  or modify a subpoena that. . . fails to allow a reasonable time to comply.") (emphasis added); *AngioScore, Inc. v. TriReme
Med., Inc.*, No. 12-cv-03393-YGR(JSC), 2014 WL 6706898, at *1, n.1 (N.D. Cal. Nov. 25, 2014) (holding that "the subpoena

25  appears procedurally defective as it required compliance within nine days, which is unreasonable.");  *Friedberg v. Madison
Realty Invs., Inc.*, No. 1:16-mc-0003, 2016 WL 1562948, at *2 (S.D. Ohio Apr. 16, 2016) (five business days is not sufficient

26  period of time for compliance);  *Gaines v. Techline, Inc.*, Civil Act. No. 1:13-CV-0576, 2016 WL 1453895, at *2 (W.D. La.
2016) (three days is inadequate for time to comply);  *Fidelity & Guaranty Life Ins. Co. v. United Advisory Group, Inc.*, No.

27  JFM-13-40, 2016 WL 632025, at *11 (D. Md. Feb. 17, 2016) (seven days was not reasonable time for compliance).  In the
unlikely event that the Court decides to modify the Subpoena rather than quashing it in its entirely, NEA respectfully requests

28  that it be provided adequate time to collect, review and produce documents, as well as adequately prepare its corporate
representative to testify.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
AND/OR FOR PROTECTIVE ORDER
3                            Case No. 17-CV-07357-RS

comply…requires disclosure of privileged or other protected matter…[or] subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A) (emphasis added).

"While discovery is a valuable right and should not be unnecessarily restricted … the 'necessary' restriction may be broader when a nonparty is the target of discovery." *Waymo LLC v. Uber Techs., Inc.*, No. 17-CV-00939-WHA(JSC), 2017 WL 2929439, at *3 (N.D. Cal. July 7, 2017), *motion for relief from judgment denied,* No. C 17-00939 WHA, 2017 WL 6883928 (N.D. Cal. Aug. 8, 2017) (quoting *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)). "This is because '[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party.'" *Id.* (quoting *United States v. Columbia Broad. Sys.*, 666 F.2d 364, 371 (9th Cir. 1982)).

## B.  THE SUBPOENA IS UNDULY BURDENSOME AND OPPRESSIVE

The Subpoena is, on its face, unduly burdensome and oppressive to NEA and therefore must be quashed.  *See* FED. R. CIV. P. 45(d)(3)(A)(iv); *see also* FED. R. CIV. P. 26(c)(1).

In determining whether a subpoena subjects a party to an undue burden, courts balance the need for discovery against the burden imposed on the party from whom discovery is sought,  considering: (1) the relevance of the requested information; (2) the party's need for the information; (3) the breadth of the request; (4) the time period covered by the request; (5) the particularity with which the request is described; and (6) the burden imposed.  *See Premium Serv. Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir. 1975) (affirming district court's quashing of a subpoena deemed "unreasonable and oppressive" and finding that subpoenaing party's need for documents was not sufficient to outweigh the resulting burden on non-party); *Moon v. SPC Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quashing subpoena based upon irrelevancy and overbreadth).  Importantly, "[n]on-parties deserve extra protection from the courts." *Kim v. NuVasive, Inc.*, No. 11CV1370-DMS (NLS), 2011 WL 3844106, at *2 (S.D. Cal. Aug. 29, 2011), *citing High Tech Med. Instrumentation, Inc. v. New Image Inds., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (awarding sanctions against party who failed to avoid burden to non-party); *see also Columbia Broad. Sys.*, 666 F.2d at 371-72.

Despite the duty imposed by Federal Rule of Civil Procedure 45(d)(1) that Plaintiff "take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena," Plaintiff

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
AND/OR FOR PROTECTIVE ORDER
4                    Case No. 17-CV-07357-RS

4820-0164-2374.3

1    has utterly failed to do so.  Instead, Plaintiff issued a Subpoena demanding that NEA, a non-party, produce

2    a litany of documents and prepare one or more corporate representatives to testify on a host of diverse,

3    open-ended topics that span decades and that are irrelevant to Plaintiff's claims.

4                        **1.      <u>The time period of the Subpoena is overly broad.</u>**

5           First, the time frame sought by both the document requests and topics is overly broad and unduly

6    burdensome.  Pursuant to the Instructions & Definitions in Attachment 2 of the Subpoena, "these requests

7    seek documents from the years: 1999, and 2004 through the present," unless otherwise stated by a request.

8    (Lane Decl., Exh. A, Attachment 2, page 2.)  Of twenty-four document requests, fourteen requests contain

9    no other time frame than that found in the Instructions & Definitions.  (*See* Lane Decl., Exh. A, Request

10   Nos. 1-7, 10-12, and 21-24.)   Thus, fourteen requests seek documents from a fifteen-year period and

11   additionally require NEA to search for documents from 1999, some twenty years ago.  *See In re NCAA*

12   *Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967 CW(NC), 2012 WL 629225, at *3

13   (N.D. Cal. Feb. 27, 2012) (ten to twelve-year time period was overly broad and not tailored to discover

14   relevant documents); *see also Moon,* 232 F.R.D. at 637-38 (quashing subpoena issued to non-party

15   seeking documents over a ten-year period).  The overbreadth of the time frame for Plaintiff's requests is

16   particularly striking given that Plaintiff's claims relate to the constitutionality of statutes that only became

17   effective as of **January 1, 2012 or later**.  (Compl. ¶¶ 64, 67).  As discussed below in Section B(4), the

18   relevance of documents from many years prior to the effective date of these statutes is utterly opaque.

19          Plaintiff's remaining twenty document requests are similarly defective:

20          •      One request seeks documents from 1995 to the present.  (*See* Lane Decl., Exh. A,
                   Request No. 17);
21
            •      One request seeks documents between 2005 and 2007.  (*See* Lane Decl., Exh. A,
22                 Request No. 16);

23          •      Four seek documents from 2005 to the present.  (*See* Lane Decl., Exh. A, Request
                   Nos. 8-9, 18-19);
24
            •      One request seeks documents from 2007 to the present.  (*See* Lane Decl., Exh. A,
25                 Request No. 20);

26          •      Two seek documents from 2008 to the present.  (*See* Lane Decl., Exh. A, Request
                   Nos. 14-15); and
27
            •      One seeks documents between 2012 and 2015.  (*See* Lane Decl., Exh. A, Request
28                 No. 13).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
AND/OR FOR PROTECTIVE ORDER
5                                               Case No. 17-CV-07357-RS

1    The topics upon which Plaintiff seeks to require NEA to prepare and produce testimony fare no

2    better.  The Instructions & Definitions to Plaintiff's topics of testimony contain no date limitation.  (Lane

3    Decl., Exh. A, Attachment 1.)   Thus, ten of the topics, which contain no specific time frame, seek

4    testimony over an undefined and unlimited time period.  (Lane Decl., Exh. A, Topic Nos. 1, 6-10, 13, 15,

5    19 and 20.)  The topics that do include a specific time frame, like the document requests, seek testimony

6    over an inordinately long period of time:

7        • One seeks testimony regarding events from 1995 to the present, *i.e.*, a 24-year
         period (Lane Decl., Exh. A, Topic No. 16);

8
         • One seeks testimony regarding events from 2001 to present, *i.e.*, a 18-year period
9        (Lane Decl., Exh. A, Topic No. 2);

10       • Five seek testimony regarding events from 2004 to present, *i.e.*, a 15-year time
         period (Lane Decl., Exh. A, Topic Nos. 3-5, 11-12); and

11
         • Two seek testimony regarding events from 2005 to present, *i.e.* a 14-year time
12       period (Lane Decl., Exh. A, Topic Nos. 14 and 18).

13   The gravamen of Plaintiff's Complaint is that statutes passed in **2012 or later** are facially

14   unconstitutional, or unconstitutional as applied to Plaintiff from 2015 to present.  The Subpoena's demand

15   for testimony and documents regarding events that, in some instances, predate the passage of those statutes

16   by seventeen years is facially and egregiously overbroad, and requires that the Subpoena be quashed.

17                **2.        The Subpoena imposes unnecessary burden and cost on a non-party.**

18       It is scarcely surprising that requiring a non-party such as NEA to search for documents that span

19   up to a twenty-four year period would also result in excessive and burdensome costs on NEA.[2]   As

20   demonstrated by the Declaration of Adam Valachovic, the quantity of data that the Subpoena requires

21   NEA to collect and search is vast:

22       • If NEA were to collect e-mails from January 1, 1999 to January 16, 2019, this
         would result in 4.88 terabytes of data or approximately 30.8 million emails.
23
         • If NEA were to collect emails from January 1, 2004 to January 16, 2019, this
24       would result in 4.87 terabytes of data, or approximately 30.7 million emails.

25       • If NEA were to collect emails from January 1, 2012 to January 16, 2019, this
         would result in 4.3 terabytes of data, or approximately 25.3 million emails.
26

27   _____

28   [2] During the parties' meet and confer, counsel for NEA inquired whether Plaintiff was willing to pay for the costs associated
     with NEA complying with the Subpoena, and Plaintiff declined.  (Lane Decl. ¶ 5.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
AND/OR FOR PROTECTIVE ORDER
Case No. 17-CV-07357-RS

6

- If NEA were to collect emails from January 1, 2015 to January 16, 2019, this would result in 3.16 terabytes of data, or approximately 17.5 million emails.

(*See* Valachovic Decl. ¶¶ 3-6.)  The cost to process this amount of data, run search terms, and prepare the results for review by attorneys for responsiveness and privilege determinations is estimated to range between $86,400 and $104,052.  (*See* Valachovic Decl. ¶¶ 8 - 9.)  NEA would then need to incur the substantial additional expense of having attorneys review, for responsiveness and privilege, the documents resulting from running search terms, and then incur still further expense in preparing a privilege log. Requiring a non-party to incur hundreds of thousands of dollars to search for and produce documents that are irrelevant to Plaintiff's claim would plainly run afoul of Rule 26(b)(1)'s mandate to ensure that the scope of discovery is "proportional to the needs of the case."

Moreover, many of the requests seek information that is already in the possession of Plaintiff himself (*see* Lane Decl., Exh. A, Request Nos. 12 & 13 (seeking documents related to lawsuits where Plaintiff was a party)) or the Defendants.  (*See, e.g.*, Lane Decl., Exh. A, Request Nos. 14 and 15 (seeking documents regarding Plaintiff's efforts to secure authorization to engage in protests and local authorities' response to Plaintiff's efforts to secure authorization for such protests).)  Plaintiff, however, neglected to serve discovery requests on the Defendants and seeks instead to obtain them from a third-party.  During the meet and confer, NEA's counsel specifically suggested that Plaintiff first obtain documents from Defendants and then, if items appeared missing or if additional evidence was needed in support of his claims, that a narrower subpoena focused on those items be served on NEA.  (Lane Decl. ¶ 7.)  Plaintiff declined to do so.  (*Id.*); *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed.Cir.1993) (affirming order requiring party to first attempt to obtain documents from opposing party rather than non-party); *Moon*, 232 F.R.D. at 637-38; *Dibel v. Jenny Craig, Inc.*, No. 06 cv 2533 BEN(AJB), 2007 WL 2220987, at *2 (S.D. Cal. Aug. 1, 2007) ("The fact that Plaintiffs' have not propounded any other discovery in this case clearly demonstrates that other means exist to obtain the requested information and Plaintiffs may not employ extraordinary measures that are inconvenient, burdensome, and expensive to obtain discovery before propounding customary and appropriate Rule 34 requests.").

For this reason also, the Subpoena should be quashed in its entirety.

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
AND/OR FOR PROTECTIVE ORDER
7                                    Case No. 17-CV-07357-RS

**3.      The scope of the Subpoena is overly broad.**

Of the twenty-four document requests in the Subpoena, twenty of them seek "[a]ll documents" or "[a]ll communications" on a particular topic.  (Lane Decl., Exh. A, Request Nos. 1-16, 21-24.)  Such requests are not narrowly tailored, fail to describe with particularity the materials sought, and impose an undue burden on a non-party to comply.  *Moon*, 232 F.R.D. at 637-38 (quashing subpoena that broadly sought "any and all documents" over a ten year or greater period).  Indeed, the Subpoena demands information in such an expansive way that it is apparent that Plaintiff made no effort whatsoever to tailor the requests to the relevant issues, and certainly did not narrow the scope so as to avoid placing an undue burden on its non-party recipient, NEA.  The total absence of meaningful parameters limiting the scope of the Subpoena renders it fatally overbroad and unduly burdensome, and likewise requires that the Subpoena be quashed and a protective order be entered.

**4.      The discovery sought by the Subpoena is not relevant to Plaintiff's claims.**

While the party moving to quash under Federal Rule of Civil Procedure Rule 45(c)(3) generally bears the burden of persuasion, "[t]he party issuing the subpoena ***must demonstrate*** that the information sought is relevant and material to the allegations and claims at issue in the proceedings."  *Optimize Tech. Sols., LLC v. Staples*, *Inc.*, No. 14-mc-80095-LHK (HRL), 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) (emphasis added) (citation omitted); *Robert Half Int'l Inc. v. Ainsworth*, No. 14-CV-2481-WQH DHB, 2015 WL 4662429, at *4 (S.D. Cal. Aug. 6, 2015) (discovery should be limited to the claims and defenses of the parties).  Here, virtually all of the discovery sought has nothing to do with the constitutionality of the statutes at issue or their enforcement by government officials, and instead is focused on NEA's business practices and past relationships with Zhu, WebEx, and a third entity, Northern Light.  Among the most egregious examples:

- Request No. 4 "All communications with public relations firms, news organizations, or members of the press Regarding Min Zhu and/or the relationship of NEA or WebEx and Min Zhu."  (*See* Lane Decl., Exh. A);

- Request No. 5 "All communications with public relation firms, news organizations, or members of the press Regarding the venture capital fund referred to as Northern Light." (*See* Lane Decl., Exh. A);

- Request No. 18 "Documents sufficient to show the relationship between NEA and

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
AND/OR FOR PROTECTIVE ORDER
8
Case No. 17-CV-07357-RS

venture capital fund Northern Light from May 2005 to the present."  (*See* Lane Decl., Exh. A; *see also* Lane Decl. Exh. A, Topic No. 17);

- Request No. 19 "Documents sufficient to show Scott Sandell's involvement in Northern Light from 2005 to present."  (*See* Lane Decl., Exh. A; *see also* Lane Decl. Exh. A, Topic No. 18);

- Request No. 20 "Documents sufficient to show C. Richard 'Dick' Kramlich's business relationship with Min Zhu, and his relocation to China to engage in business activities with Min Zhu from 2007 through the present."  (*See* Lane Decl., Exh. A; *see also* Lane Decl. Exh. A, Topic No. 19);

- Request No. 21 "All documents Regarding NEA's role in the management or corporate governance of WebEx, Including the participation of NEA or individuals affiliated with NEA on the Board of Directors of WebEx or as board observers."  (*See* Lane Decl., Exh. A; *see also* Lane Decl. Exh. A, Topic No. 15);

- Request No. 22 "All documents Regarding the involvement of NEA or any individuals affiliated with NEA in discussions or efforts to address allegations of industrial espionage on behalf of the Peoples' Republic of China by WebEx and/or Min Zhu."  (*See* Lane Decl., Exh. A; *see also* Lane Decl. Exh. A, Topic No. 15); and

- Request No. 23 "All documents Regarding your participation or involvement in discussions or efforts to address any and all investigations by federal law enforcement authorities of allegations of industrial espionage on behalf of the People's Republic of China by WebEx and/or Min Zhu."  (*See* Lane Decl., Exh. A; *see also* Lane Decl. Exh. A, Topic No. 15.)

This information has no bearing on and is utterly irrelevant to Plaintiff's claims.  On this ground, too, the Subpoena must be quashed and non-party NEA protected from such discovery.

The Subpoena contains other discovery requests that focus on Plaintiff's allegations regarding Zhu's alleged treatment of his daughter, Ms. Zhu; what NEA allegedly knew about Plaintiff's allegations; and when NEA learned about Plaintiff's allegations and its subsequent actions.  (*See* Lane Decl., Ex. A, Topic Nos. 13 & 15; Request Nos. 6-7.)  During the parties' meet and confer, Plaintiff's counsel asserted that this information was relevant because:   1) Plaintiff wants to publicize that NEA was aware of Plaintiff's allegations against Zhu; 2) Plaintiff wants to morally condemn NEA for allegedly continuing to do business with Zhu;[3] and 3) this discovery would enable Plaintiff to demonstrate the "social value"

---

[3] Plaintiff's attempt to seek discovery for the purpose of "morally shaming" NEA is itself an abuse of the discovery process. *Paisley Park Enter., Inc. v. Uptown Prods.,* 54 F. Supp. 2d 347, 349 (S.D. N.Y. 1999) (granting protective order limiting dissemination of videotaped deposition where it was evident that it would be publically disseminated, as "courts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role.").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
AND/OR FOR PROTECTIVE ORDER
9                                     Case No. 17-CV-07357-RS

1    of his protests, and thereby combat alleged efforts by government officials to deny him permits based on

2    content, in particular, that aspects of his planned protest are obscene.[4]  (Lane Decl. at ¶ 6.)  None of these

3    contentions demonstrate that the demanded discovery is relevant.

4            First, based upon documents obtained through a public records request to the City of Menlo Park's

5    City Manager's Office, it does not appear that Plaintiff has been denied a permit on the grounds that his

6    protest is obscene or may be obscene to minors.  Instead, it appears that Plaintiff's permit applications

7    were incomplete or city officials had concerns about the time, place and manner of the proposed protests.

8    (Lane Decl., Exh. D (indicating that Special Event Permit ("SEP") denied on July 24, 2015 because the

9    application was incomplete); Exh. D (SEP denied on September 21, 2015 because application was

10   incomplete and does not meet criteria of special event); Exh. E (on May 4, 2016 SEP denied because

11   application was incomplete, does not meet criteria of special event and various concerns including

12   indefinite duration of protest, proposing to carry firearms, and concerns regarding location of protest); Ex.

13   F (on June 16, 2016 SEP denied for similar reasons as on May 4, 2016); Ex. G (on September 12, 2016

14   SEP denied for variety of reasons, none of which involve obscenity).

15          Moreover, even if Plaintiff had been denied a permit, in whole or in part, on grounds of obscenity,

16   there is simply no nexus between the denial of permits by government officials in 2015 and 2016, on the

17   one hand, and what, if anything, NEA knew of Plaintiff's allegations more than a decade before.  As a

18   matter of law, NEA's knowledge or opinions regarding Plaintiff's allegations against Zhu have no bearing

19   on whether aspects of Plaintiff's proposed protest are obscene.  The determination of whether something

20   is obscene is governed by *Miller v. California*, 413 U.S. 15, 24 (1973), which provides an objective test;

21   namely, that "[t]he basic guidelines for the trier of fact must be: (a) whether 'the *average person*, applying

22   contemporary community standards' would find that the work, taken as a whole, appeals to the prurient

23   interest . . .; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct

24   specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious

25   literary, artistic, political, or scientific value."  (emphasis added).  In applying the test, "a judgment on

26

27   ─────────────────────
     [4] According to the Joint Case Management Conference Statement, the specific legal issue presented is "Whether Zeleny's

28   speech is 'obscene as to minors' in violation of the California Penal Code."  (Docket Entry No. 43, Section 3(6).)  To state the
     obvious, NEA is a business entity and venture capital firm, it is not a "minor."

4820-0164-2374.3

1   each of the three elements is not to be made on the basis of personal opinion or by the effect of the material

2   on a particularly sensitive or insensitive person or group." *United States v. 2200 Paper Back Books*, 565

3   F.2d 566, 570 (9th Cir. 1977).  Nor does the test evaluate the truth or falsity of the challenged speech.

4   Rather, the trier of fact is to draw on his own knowledge about how an *average person* in the community

5   would view the material as to the first two prongs of the test, (s*ee id.* (emphasis added)), and how a

6   reasonable person would view the material as to the third prong of the test. *Pope v. Illinois*, 481 U.S. 497,

7   500-501 (1987).  Thus, in light of the *objective* nature of the test for obscenity, the discovery sought by

8   Plaintiff regarding NEA's knowledge or and reaction to Plaintiff's allegations is simply irrelevant to any

9   determination of obscenity.

10      Further, even the few document requests that actually relate to Plaintiff's attempts to secure

11   permission for his protests (*see, e.g.*, Lane Decl., Exh. A, Request Nos 3, 8-9, 14-15) do not relate to

12   Plaintiff's claims that various statutes are unconstitutional, but rather are a transparent attempt to fish for

13   claims against NEA, as they focus on NEA's interactions with various government officials. *See* Docket

14   Entry No. 43, Section 5 ("To the extent that Zeleny develops evidence of concerted action between the

15   Menlo Park Defendants and private actors, Zeleny may seek to name those private actors as defendants,

16   including on a theory of conspiracy.").  Discovery on third-parties is not to be used to investigate or gather

17   evidence to determine if the nonparty could be named as a defendant. *Robert Half Int'l Inc.,* 2015 WL

18   4662429, at *4 (partially granting the motion to quash).  As none of the discovery sought by the Subpoena

19   is relevant to Plaintiff's claims, the Subpoena should be quashed on this ground, as well, and NEA

20   protected from such discovery attempts.

21      **C.  THE SUBPOENA SEEKS NEA'S PRIVILEGED INFORMATION**

22      Finally, many of the discovery requests seek documents that involve NEA's privileged

23   information, further necessitating that the Subpoena be quashed and that a protective order issue. Fed. R.

24   Civ. P. 45(d)(3)(A), (B)(i).

25      For example,

26      • Request No. 1 "All documents Regarding Zeleny."  (Lane Decl., Exh. A);

27      • Request No. 10 "All documents Regarding any efforts by the WebEx Parties or the NEA
        Parties to have Zeleny arrested or investigated.  (Lane Decl., Exh. A); and

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
AND/OR FOR PROTECTIVE ORDER
11                                       Case No. 17-CV-07357-RS

- Request No. 11 "All documents Regarding any investigation or surveillance of Zeleny at any time, Including the surveillance referenced in the case captioned *NEA v. Zeleny*, San Mateo Superior Court Case No. CIV499465." (Lane Decl., Exh. A).

(*See also* Lane Decl., Exh. A, Request Nos. 2, 6, 7, 12 & 13; *see also* Topic Nos. 1, 7, 8-10, 13.)  In addition to being irrelevant to Plaintiff's claims, and serving as yet another example of Plaintiff seeking documents and information that are already in his possession, custody or control (*see supra*), these requests improperly call for the production of documents protected by the attorney-client, work-product or other privileges.  Fed. R. Civ. P. 45(d)(3)(A), (B)(i) ("On timely motion, the court for the district where compliance is required *must* quash or modify a subpoena that…requires disclosure of privileged or other protected matter.").  Such requests are improper and provide still another basis to quash the Subpoena and enter a protective order to protect NEA's privileged information.

## III.    CONCLUSION

For all of the reasons stated above, NEA respectfully request that this Court issue an Order quashing the subpoenas issued by Defendant, and entering a protective order that prohibits the discovery being sought from NEA.

DATE:  JANUARY 25, 2019

**FOLEY & LARDNER LLP**
THOMAS S. BROWN
NICHOLAS P. HONKAMP


By: */s/ Nicholas P. Honkamp*
      NICHOLAS P. HONKAMP
      Attorneys for Non-Party New Enterprise Associates

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH
AND/OR FOR PROTECTIVE ORDER
12                                    Case No. 17-CV-07357-RS

4820-0164-2374.3

1

**PROOF OF SERVICE Electronic Filing**

2
3

I HEREBY CERTIFY that on January 25, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the Electronic Service List for this case.

4

*/s/ Nicholas P. Honkamp*
NICHOLAS P. HONKAMP

5

Attorneys for Non-Party New Enterprise Associates

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
Case No. 17-CV-07357-RS

1

4820-0164-2374.3