THOMAS S. BROWN, CA Bar No. 178620
  tsbrown@foley.com
NICHOLAS P. HONKAMP, CA Bar No. 261299
  nhonkamp@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

Attorneys for Non-Party New Enterprise
Associates

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| Michael Zeleny, an Individual, | Case No. 17-cv-07357-RS |
| Plaintiff, | **DECLARATION OF ROGER A. LANE IN SUPPORT OF NON-PARTY NEW ENTERPRISE ASSOCIATES'S MOTION TO QUASH AND/OR FOR PROTECIVE ORDER** |
| vs. | |
| Edmund G. Brown, et al., , | Date:       March 7, 2019 |
| Defendants. | Time:      1:30 pm |

I, Roger A. Lane, declare and state as follows:

1.      I am an attorney licensed to practice in Massachusetts, and a partner with Foley & Lardner LLP, counsel for non-party New Enterprise Associates ("NEA").  I make this declaration based on my own personal knowledge, except as to those matters stated on information and belief, which I believe to be true. If called as a witness, I could competently testify to the matters stated herein.

2.      Attached as Exhibit A is a true and accurate copy of a Subpoena to Testify at a Deposition in a Civil Action dated December 13, 2018 ("Subpoena") that was issued by the Plaintiff in this action, Michael Zeleny.

3.      Attached as Exhibit B is a true and accurate copy of a letter dated January 10, 2019 from me to Damion Robinson, counsel for Plaintiff, by which NEA formally objected to the Subpoena.

4.      On January 11, 2019, I participated in a meet and confer telephone call with Mr. Robinson and David Affeld, counsel for Plaintiff, in an attempt to resolve the differences that we had regarding the scope of the Subpoena.  We were unable to reach an agreement.

5.      During the meet and confer, I inquired whether Plaintiff would be willing to pay for the costs associated with NEA complying with the Subpoena and Plaintiff declined.

6.      During the meet and confer, I inquired as to the relevance of various requests and topics for deposition that involved NEA's knowledge of Plaintiff's protests and allegations.  Plaintiff's counsel asserted that the requested information was relevant because:  1) Plaintiff wanted to publicize that NEA was aware of Plaintiff's allegations against Min Zhu; 2) Plaintiff wants to morally condemn NEA for allegedly continuing to do business with Min Zhu; and 3) this discovery would enable Plaintiff to demonstrate the "social value" of his protests, and thereby combat any effort by government officials to deny Plaintiff permits based upon content, in particular that aspects of his planned protest are obscene.

7.      As of January 11, 2019, when counsel for Plaintiff and I met and conferred regarding the scope of the Subpoena, Plaintiff's counsel stated that he had yet to serve any formal, written discovery on any of the parties in the case.  I suggested that he do so first and then, if necessary, serve a modified subpoena on NEA.  Plaintiff's counsel declined.

8.      On January 15, 2019, an associate in my office made a Public Records request via the City of Menlo Park website requesting records from a de novo appeal that took place on August 11, 2016 at 2 pm, regarding Michael Zeleny's appeal of the decision of the Community Services Director, denying his Application for a City Special Event Permit.

9.      Attached hereto as Exhibit C is a true and accurate copy of the confirmation email that was received from the City of Menlo Park in response to this request.

10.      On January 17, 2019, the City of Menlo Park produced documents and an MP3 recording in response to the Public Records request.  Attached are the following excerpts from the records that were produced:

   a.   Attached as Exhibit D is a true and accurate copy of a September 21, 2015 letter from the City of Menlo Park to Michael Zeleny.

   b.   Attached as Exhibit E is a true and accurate copy of a May 4, 2016 letter from the

DECLARATION OF ROGER LANE IN SUPPORT OF NEA'S MOTION TO QUASH

-2-

Case No. 17-cv-07357-RS

City of Menlo Park to Michael Zeleny.

c.  Attached as Exhibit F is a true and accurate copy of a letter dated June 16, 2016 from the City of Menlo Park to Michael Zeleny.

d.  Attached as Exhibit G is a true and accurate copy of a letter dated September 12, 2016 from the City of Menlo Park to Michael Zeleny.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 25th day of January 2019 at Boston, Massachusetts.

By: _____
ROGER A. LANE

# EXHIBIT A

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| Michael Zeleny, an individual | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   17-7357 |
| Edmund G. Brown, Jr., et al. | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                    New Enterprise Associates

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Attachment 1.

| Place: Veritext | Date and Time: |
|---|---|
| 101 Montgomery Street, Suite 450 San Francisco, CA 94104 | 01/11/2019 10:00 am |

The deposition will be recorded by this method:    Stenography; audio and video recording

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Attachment1, Attachment 2

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    12/13/2018

*CLERK OF COURT*

                                    OR

_____          _____
*Signature of Clerk or Deputy Clerk*                      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Michael Zeleny
_____ , who issues or requests this subpoena, are:

Damion Robinson, 2049 Century Pk. E, Ste 2460, Los Angeles, CA 90067; dr@agzlaw.com; (310) 979-8700

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**ATTACHMENT "1"**
**Topics of Testimony**

Pursuant to Federal Rules of Civil Procedure 30(b)(6) and 45, you are required to produce one or more officers, directors, or managing agents, or to designate other persons who consent, to testify on your behalf about the following matters.

## I.   INSTRUCTIONS & DEFINITIONS

1.      You are requested to identify those person(s) designated to testify on your behalf at least five (5) business days before the date of the deposition. If any such person(s) require a translator, you are requested to advise the subpoenaing party at that time so that a translator can be obtained.

2.      "NEA" means New Enterprise Associates, its current and former parents, subsidiaries, and affiliates, and each of their respective predecessors, successors, and assigns.

3.      The "NEA Parties" means NEA and any of its current and former officers, directors, managing directors, managers, managing agents, partners, managing partners, general partners, executives, advisors, or associates.

4.      The "Protests" means those protests occurring in San Diego, California in 2004; in San Francisco, California in May 2005; in Santa Clara, California in November 2005; in Milpitas, California in October 2009; in Menlo Park, California, in October 2009 and September 2010; and those commencing in June 2012 in Menlo Park, California.

5.      "WebEx" means WebEx Communications, Inc., its current and former parents, subsidiaries, and affiliates, and each of their respective predecessors, successors, and assigns.

6.      The "WebEx Parties" means WebEx, and any of its current and former officers, directors, managing agents, partners, executives, advisors, or associates.

7.      "Zeleny" means Michael Zeleny.

8.      Interpretation: "Including" means "including, but not limited to." The terms "and," "or," and "and/or" shall be interpreted inclusively, and either disjunctively or conjunctively as necessary to give the broadest interpretation. The terms "all," "any," "each," and "every" shall be interpreted to mean any, all, each and every. The use of either gender shall include every other gender. The use of a verb in any tense shall be interpreted to include every other tense as necessary to bring within the scope of the response all responses that otherwise might be excluded.

*(Continued on following page)*

- 1 -

## II.   TOPICS OF TESTIMONY

**Topic No. 1**
The allegations and/or protests by Zeleny regarding NEA, Min Zhu, and/or WebEx, Including the Protests.

**Topic No. 2**
Communications and corporate records involving the NEA Parties and/or the WebEx Parties, and local, city, county, and/or state authorities (Including district attorney's offices, police departments, law enforcement, or permitting authorities) regarding Zeleny or his allegations and/or protests concerning Min Zhu, NEA and/or WebEx, from 2001 through the present.

**Topic No. 3**
Communications between the NEA Parties, the management of the Rosewood Sand Hill complex, and/or their affiliates, on the one hand, and the authorities acting for the City of Menlo Park and/or San Mateo County, on the other hand, regarding public access to the Rosewood Sand Hill complex, from 2004 through present.

**Topic No. 4**
Communications between the NEA Parties, the management of the Rosewood Sand Hill complex, and/or their affiliates, on the one hand, and the authorities acting for the City of Menlo Park and/or San Mateo County, on the other hand, regarding restrictions on the public carrying of firearms, from 2004 through present.

**Topic No. 5**
Communications between the NEA Parties, the management of the Rosewood Sand Hill complex, and/or their affiliates, on the one hand, and the authorities acting for the City of Menlo Park and/or San Mateo County, on the other hand, regarding protesting activity in the area around the Rosewood Sand Hill complex from 2004 through present.

**Topic No. 6**
Any lobbying activities or communications with lawmakers by or on behalf of the NEA Parties or the WebEx Parties, or any of them, regarding the ban on open carrying of unloaded firearms.

**Topic No. 7**
Any efforts by any of the NEA Parties or the WebEx Parties to have Zeleny arrested, investigated, and/or prosecuted.

**Topic No. 8**
Any surveillance or investigation of Zeleny by or on behalf any of the NEA Parties, Including any surveillance referenced in the action captioned *NEA v. Zeleny*, San Mateo Superior Court Case No. CIV499465.

**Topic No. 9**
Civil or administrative proceedings initiated by or on behalf of any of the NEA Parties, or in

which any of the NEA Parties participated, against Zeleny in connection with his online or public speech or protests, Including the civil actions captioned (1) *Zeleny v. Zhu and WebEx*, Santa Clara Superior Court case number CV809286; (2) *Zelyony v. Zhu*, Santa Clara Superior Court case number CV-810705; (3) *Affeld v. Zhu*, Santa Clara Superior Court case number CV-817300; (4) *Zeleny v. WebEx*, Santa Clara County Superior Court case no. CV062767; (5) *NEA v. Zeleny*, San Mateo Superior Court Case No. CIV499465; (6) *WebEx v. Zeleny*, Santa Clara County Superior Court Case No. CV024062, Los Angeles County Superior Court Case No. BC324927; (7) the application for a restraining order filed by Zeleny against Min Zhu; and (8) the application for a restraining order filed by Scott Sandell against Zeleny.

### Topic No. 10
The criminal action captioned *People v. Zeleny*, San Mateo County Superior Court Case No. SM382036, Including NEA's involvement in that action, communications with the prosecuting authorities, and/or actions taken to cause that action to be initiated or pursued.

### Topic No. 11
Efforts by Zeleny to secure authorization to engage in protests in Menlo Park, California from 2004 through the present, discussions with current or former local authorities regarding those efforts, and/or current or former local authorities' response to Zeleny's efforts to secure authorization.

### Topic No. 12
Efforts by Zeleny to secure authorization to display of firearms in the course of or in connection with protests in Menlo Park, California from 2004 through the present, discussions with current or former local authorities regarding those efforts, and/or current or former local authorities' response to Zeleny's efforts to secure authorization.

### Topic No. 13
The allegations that Min Zhu raped, molested, sexually assaulted, or otherwise abused Erin Zhu, Including the allegations included in 1991 Usenet postings by Erin Zhu CV810705 and subsequently conveyed to NEA and publicized by Zeleny; the allegations included in legal filings and/or Internet postings by Zeleny since December of 1999, and/or publicized and/or relayed by Zeleny since December of 1999; the allegations included in the January 18, 2000 draft complaint by Erin Zhu, filed as an exhibit in Opposition to the Defendants' Motion to Strike in *Zeleny v. Zhu & WebEx*, Santa Clara Superior Court Case Number CV-809286; the statements in the November 10, 2003 deposition by Erin Zhu in *Zelyony v. Zhu*, Santa Clara Superior Court Case No. CV810705 and subsequently conveyed to NEA and publicized by Zeleny: and the responses of the NEA Parties to those allegations, if any.

### Topic No. 14
Min Zhu's resignation or termination from WebEx in or around May 2005, his relocation to China at that time, and his resignation or termination from NEA.

### Topic No. 15
NEA's role in the management or corporate governance of WebEx, Including (a) the participation of NEA or individuals affiliated with NEA on the Board of Directors of WebEx or

as board observers, (b) the response, if any, of NEA and/or such individuals to the allegations and evidence of childhood sexual abuse by Min Zhu, (c) any involvement in or discussion about those allegations or evidence, and (d) any involvement in or discussion about the alleged industrial espionage by WebEx and/or Min Zhu on behalf of the Peoples' Republic of China, or the investigation by federal law enforcement authorities regarding the same.

**Topic No. 16**
The relationship between NEA and Min Zhu from 1995 through the present.

**Topic No. 17**
The relationship between NEA and any current or former business ventures by Min Zhu, Including venture capital fund Northern Light, from 2001 through the present.

**Topic No. 18**
The founding of Northern Light by Min Zhu and Scott Sandell in or around 2005, and Mr. Sandell's business relationship with Min Zhu.

**Topic No. 19**
C. Richard "Dick" Kramlich's business relationship with Min Zhu, and his relocation to China to engage in business activities with Min Zhu.

**Topic No. 20**
This lawsuit and any communications relating to this lawsuit.

**Topic No. 21**
Documents produced pursuant to Attachment 2 to this subpoena, or by current or former affiliates, partners, officers, directors, and/or executives of NEA pursuant to subpoenas issued to them.

# # #

## ATTACHMENT "2"
### Requests for Production

Pursuant to Federal Rules of Civil Procedure 30(b)(2), 34, and 45, you are required to produce the following documents, to the extent the same are in your possession, custody or control, at or before the time of your deposition, as set forth in the attached subpoena.

## I.    INSTRUCTIONS & DEFINITIONS

1.    You are required to produce the requested documents either (a) in the manner that they are maintained in the ordinary course of your business, or (b) categorized such that the requests to which each document corresponds can be readily determined.  Emails should be produced in either native format or as individual TIFF or PDF documents with load files containing all metadata that would be available if produced in native format.  All other documents should be produced in native format unless the parties agree otherwise.

2.    If you contend that any document responsive to these requests is privileged or protected by the work-product doctrine, in whole or in part, in order to assist the parties and the Court in assessing the validity of any assertion of privilege or work-product protection, you must produce a "privilege log" identifying the following:

a.    The author, sender, and all recipients of the document;

b.    The date of the document;

c.    The title (if available and non-privileged) and general subject matter of the document;

d.    All person(s) who have been given access to the document; and

e.    The privilege asserted and grounds for such assertion.

If you contend that a document is privileged or subject to work-product protection in part, you must produce the remainder of the document with only the privileged or protected portion redacted, designating the privilege or protection asserted.

3.    You are required to produce all responsive, non-privileged documents in your possession, custody, or control, that you are able to locate after a reasonable search and diligent inquiry.  Documents are deemed to be in your possession, custody, or control if they are maintained by you or on your behalf, if they are available to you upon request, or if you have the legal right to demand them.  A reasonable search and diligent inquiry means an effort, reasonable under the circumstances, to locate, gather, and collect responsive materials, including a search of those locations and sources where responsive materials are reasonably likely to be found.

4.    The term "documents" is intended to be construed as broadly as the Federal Rules of Civil Procedure and Federal Rules of Evidence permit.  The term shall be synonymous with, and equal in scope to, the usage of the phrase "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a), and shall include, without limitation, all forms of written or recorded material, stored in any form or medium whatsoever, which are or may be reducible to a reasonably usable form.  "Documents" include, but are not limited to, hard copy or

digital writings, drawings, photographs, graphs, charts, sound recordings, images, data, data compilations, emails, correspondence, memoranda, online or social media materials (including, but not limited to, posts, comments, "likes," "reactions," and hyperlinks), instant messages, journal entries, calendar entries, contacts, or otherwise. A request for "documents" includes a request for each and every version of the document that differs in any way from the final version, including drafts, or documents reflecting revisions, comments, feedback, or modifications. "Documents" containing revisions, comments, feedback, modifications, or the like, shall be produced in a format that allows ready identification of the same, the date and time, and the author (if available).

5.     The term "communications" means any form of transmission of data or information from one person or machine to one or more persons or machines. "Communications" also include documents referring to, embodying, recording, commenting upon, summarizing, translating, modifying, evidencing, or otherwise reflecting or concerning a communication.

6.     "NEA" means and refers to New Enterprise Associates, its parents, subsidiaries, and affiliates, each of their respective predecessors, successors, and assigns.

7.     The "NEA Parties" means and refers to NEA and any of its current and former officers, directors, managing directors, managers, managing agents, partners, managing partners, general partners, executives, advisors, or associates.

8.     "Regarding" means concerning, relating to, referring to, describing, discussing, stating, evidencing, constituting, containing, considering, mentioning, embodying, reflecting, identifying, pertaining to, or having a connection with, directly or indirectly, the subject matter identified.

9     "WebEx" means and refers to WebEx Communications, Inc., its parents, subsidiaries, and affiliates, and each of their respective predecessors, successors, and assigns.

10.     The "WebEx Parties" means and refers to WebEx and any of its current and former officers, directors, managing agents, partners, executives, advisors, or associates.

11.     "Zeleny" means and refers to Michael Zeleny.

12.     <u>Interpretation</u>: "Including" means "including, but not limited to." The terms "and," "or," and "and/or" shall be interpreted inclusively, and either disjunctively or conjunctively as necessary to give the broadest interpretation. The terms "all," "any," "each," and "every" shall be interpreted to mean any, all, each and every. The use of either gender shall include every other gender. The use of a verb in any tense shall be interpreted to include every other tense as necessary to bring within the scope of the response all responses that otherwise might be excluded.

13.     Unless otherwise stated, these requests seek documents from the years: 1999, and 2004 through the present.

-2-

## II.    REQUESTS

**Request No. 1**
All documents Regarding Zeleny.

**Request No. 2**
All documents Regarding Zeleny's protests, Including protests of the NEA Parties, the WebEx Parties, Min Zhu, or any of them.

**Request No. 3**
All communications with local, city, county, and/or state authorities (Including district attorney's offices, police departments, law enforcement, or permitting authorities) regarding Zeleny or his allegations and/or protests concerning Min Zhu, NEA, and/or WebEx.

**Request No. 4**
All communications with public relations firms, news organizations, or members of the press Regarding Min Zhu and/or the relationship of NEA or WebEx and Min Zhu.

**Request No. 5**
All communications with public relations firms, news organizations, or members of the press Regarding the venture capital fund referred to as Northern Light.

**Request No. 6**
All documents Regarding allegations of rape, child abuse, sexual abuse, molestation, or other abuse allegedly perpetrated by Min Zhu on Erin Zhu.

**Request No. 7**
All documents Regarding any and all responses by WebEx and/or NEA to allegations of rape, child abuse, sexual abuse, molestation, or other abuse allegedly perpetrated by Min Zhu on Erin Zhu.

**Request No. 8**
All communications between the NEA Parties and/or the WebEx Parties on the one hand, and on the other hand anyone acting on behalf of the City of Menlo Park and/or San Mateo County, Regarding restrictions on the public carrying of unloaded firearms from January 1, 2005 through the present.

**Request No. 9**
All documents Regarding lobbying efforts by the NEA Parties, the WebEx Parties, or any of them, or communications by them or on their behalf with lawmakers, regarding the ban on open carry of unloaded firearms from January 1, 2005 through the present.

**Request No. 10**
All documents Regarding any efforts by the WebEx Parties or the NEA Parties to have Zeleny arrested or investigated.

**Request No. 11**
All documents Regarding any investigation or surveillance of Zeleny at any time, Including the surveillance referenced in the case captioned *NEA v. Zeleny*, San Mateo Superior Court Case No. CIV499465.

**Request No. 12**
All documents Regarding civil or administrative proceedings initiated by or on behalf of the WebEx Parties, the NEA Parties, or any of them, against Michael Zeleny, in connection with his online or public speech or protests, Including the civil actions captioned (1) *Zeleny v. Zhu and WebEx*, Santa Clara Superior Court case number CV809286; (2) *Zelyony v. Zhu*, Santa Clara Superior Court case number CV-810705; (3) *Affeld v. Zhu*, Santa Clara Superior Court case number CV-817300; (4) *Zeleny v. WebEx*, Santa Clara County Superior Court case no. CV062767; (5) *NEA v. Zeleny*, San Mateo Superior Court Case No. CIV499465; (6) *WebEx v. Zeleny*, Santa Clara County Superior Court Case No. CV024062, Los Angeles County Superior Court Case No. BC324927; (7) the application for a restraining order filed by Zeleny against Min Zhu; and (8) the application for a restraining order filed by Scott Sandell against Zeleny.

**Request No. 13**
All documents Regarding the criminal action captioned *People v. Zeleny*, San Mateo County Superior Court Case No. SM382036, Including the NEA Parties' involvement in that action, communications with the prosecuting authorities, and or actions taken to cause that action to be initiated or pursued, from 2012 through 2015.

**Request No. 14**
All documents Regarding efforts by Zeleny to secure authorization to engage in protests in Menlo Park, California from 2008 to the present, Including discussions with local authorities Regarding those efforts and/or their response, and local authorities' response to Zeleny's efforts to secure authorization.

**Request No. 15**
All documents Regarding efforts by Zeleny to secure authorization to display firearms in connection with protests in Menlo Park, California from 2008 to the present, Including discussions with local authorities Regarding those efforts and/or their response, and local authorities' response to Zeleny's efforts to secure authorization.

**Request No. 16**
All documents Regarding Min Zhu's resignation or termination from WebEx in or around May 2005, his relocation to China at that time, and his resignation or termination from NEA, from 2005 to 2007.

**Request No. 17**
Documents sufficient to show the relationship between NEA and Min Zhu from 1995 to the present.

**Request No. 18**
Documents sufficient to show the relationship between NEA and venture capital fund Northern Light from May 2005 to the present.

**Request No. 19**
Documents sufficient to show Scott Sandell's involvement in Northern Light from 2005 to present.

**Request No. 20**
Documents sufficient to show C. Richard "Dick" Kramlich's business relationship with Min Zhu, and his relocation to China to engage in business activities with Min Zhu from 2007 through the present.

**Request No. 21**
All documents Regarding NEA's role in the management or corporate governance of WebEx, Including the participation of NEA or individuals affiliated with NEA on the Board of Directors of WebEx or as board observers.

**Request No. 22**
All documents Regarding the involvement of NEA or any individuals affiliated with NEA in discussions or efforts to address allegations of industrial espionage on behalf of the Peoples' Republic of China by WebEx and/or Min Zhu.

**Request No. 23**
All documents Regarding your participation or involvement in discussions or efforts to address any and all investigations by federal law enforcement authorities of allegations of industrial espionage on behalf of the Peoples' Republic of China by WebEx and/or Min Zhu.

**Request No. 24**
All non-privileged documents Regarding this lawsuit.

# # #

AO 88A  (Rev  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  17-7357

**PROOF OF SERVICE**

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Registered Agent for NEA
on *(date)* 01/03/19.  Angela Graves

☐ I served the subpoena by delivering a copy to the named individual as follows: NEA –
New Enterprise Associates Registered
Agent Angela Graves on *(date)* 01/04/19 ; or

☐ I returned the subpoena unexecuted because:

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ _____

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00

I declare under penalty of perjury that this information is true.

Date:  01/04/19

Server's signature  East Bay Signal 88
Barhin Bhatt  Security
Printed name and title

35411 Monterra Circle
Union City, CA 94587
Server's address

Additional information regarding attempted service, etc.:

# EXHIBIT B



**FOLEY**

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW
111 HUNTINGTON AVENUE
BOSTON, MASSACHUSETTS 02199
617 342 4000 TEL
617 342 4001 FAX
foley.com
WRITER'S DIRECT LINE 617 342 4098
EMAIL rlane@foley.com

January 10, 2019

**BY EMAIL dr@agzlaw.com AND FIRST-CLASS MAIL**

Damion Robinson
Affeld Grivakes LLP
2049 Century Pk. E, Ste. 2460
Los Angeles, CA 90067

Re:    *Michael Zeleny v. Edmund G. Brown, Jr. et al., Civil Action No. 17-7357*

Dear Mr. Robinson:

We are in receipt of a subpoena for testimony and the production of documents ("Subpoena") issued in connection with the above-captioned matter dated December 13, 2018, and directed to New Enterprise Associates ("NEA").

Pursuant to Federal Rules of Civil Procedure 30(b)(6) and 45(c)(2), NEA objects and responds to the Subpoena as follows:

NEA generally objects to the more than 20-year time period for documents sought by the Subpoena in Instruction No. 13 of Attachment 2 as overly broad and unduly burdensome, as applied to a third party such as NEA.   NEA further generally objects to the Subpoena in that it propounds 24 separate requests for production on a third-party, the vast majority of which seek documents that are irrelevant to Plaintiff's claim that various California statutes are unconstitutional. These excessive third-party discovery requests are not proportional to the issues involved and are irrelevant to resolving Plaintiff's claims.

While the Subpoena is dated December 13, 2018, NEA was not served with the Subpoena until January 4, 2019.  The Subpoena purports to require compliance by January 11, 2019.  NEA objects to the 4-business day period afforded for production as failing to provide a reasonable time for compliance, rendering the Subpoena presumptively invalid.

NEA objects to the Subpoena to the extent that it seeks to impose burdens on NEA that go beyond the requirements of the Federal Rules of Civil Procedure, including Instruction 2 of Attachment 2.  To the extent that NEA ultimately produces documents, the documents will be produced as individual TIFF documents with any excel spreadsheets produced in native format.

NEA objects to the definition of "NEA Parties" as overly broad and unduly burdensome, insofar as it would include persons and entities not involved in this action and/or a search of the

personal files of present or former employees, representatives and other third parties. NEA will only agree to undertake a search of its business files and computer network for documents and information responsive to the Subpoena.

NEA further objects to the definition of the "WebEx Parties" as overly broad and unduly burdensome insofar as it would include persons and entities not involved in this action. Specifically, WebEx was acquired by Cisco in 2007 and NEA does not have possession, custody or control of WebEx's documents.

To the extent that NEA ultimately produces documents, it expects to be reimbursed for the costs of doing so, as well as any other costs incurred in connection with the Subpoena, including costs incurred by NEA's employees and NEA's attorneys' fees. Please confirm that all such costs will be reimbursed.

**REQUEST NO. 1:**
All documents Regarding Zeleny.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 1:**
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 2-3, 10-15 and 24. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related to Mr. Zeleny over a period of 20 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks information protected from disclosure by the attorney-client privilege or work-product doctrine. NEA further objects to this Request on the grounds that it seeks confidential and proprietary information. NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order.

**REQUEST NO. 2:**
All documents Regarding Zeleny's protests, Including protests of the NEA Parties, the WebEx Parties, Min Zhu, or any of them.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 2:**
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 1, 6-7, 11-15 and 24. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related to Mr. Zeleny's protests over a period of 20 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks information protected from disclosure by the attorney-client privilege or work-product doctrine. NEA further objects to this Request on the grounds that the

Request seeks confidential and proprietary information. NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order. In addition, NEA objects to this Request on the grounds that it seeks information that is already in the possession, custody or control of Mr. Zeleny, the WebEx parties or Mr. Zhu.

NEA further objects to Topic Nos. 1-2 for the same reasons.

**REQUEST NO. 3:**
All communications with local, city, county, and/or state authorities (Including district attorney's offices, police departments, law enforcement, or permitting authorities) regarding Zeleny or his allegations and/or protests concerning Min Zhu, NEA, and/or WebEx.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 3:**
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 1-2, 8-10, 14-15 and 24. NEA further objects to the Request to the extent that it seeks "[a]ll communications" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related to Mr. Zeleny's protests over a period of 20 years is unduly burdensome. In addition, NEA objects to this Request on the grounds that it seeks information that is already in the possession, custody or control of the City of Menlo Park, a party to this case, or other government entities.

NEA further objects to Topic Nos. 3-5 for the same reasons.

**REQUEST NO. 4:**
All communications with public relations firms, news organizations, or members of the press Regarding Min Zhu and/or the relationship of NEA or WebEx and Min Zhu.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 4:**
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to the Request to the extent that it seeks "[a]ll communications" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related to Mr. Zhu or WebEx over a period of 20 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks information protected from disclosure by the attorney-client or work-product doctrine.

**REQUEST NO. 5:**
All communications with public relations firms, news organizations, or members of the press Regarding the venture capital fund referred to as Northern Light.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 5**

3

NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to the Request to the extent that it seeks "[a]ll communications" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related to Northern Light over a period of 20 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks information protected from disclosure by the attorney-client or work-product doctrine.

## REQUEST NO. 6:
All documents Regarding allegations of rape, child abuse, sexual abuse, molestation, or other abuse allegedly perpetrated by Min Zhu on Erin Zhu.

## OBJECTIONS AND RESPONSE TO REQUEST NO. 6:
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that this Request is duplicative of Request No. 7. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related to allegations involving a third-party over a period of 20 years is unduly burdensome. NEA further objects to this Request on the grounds that the Request seeks confidential information and implicates the privacy rights of third parties. NEA has not been provided any protective order in this matter and will not produce such information without the entry of a protective order. In addition, NEA objects to this Request on the grounds that it seeks information that is already in the possession, custody or control of other third-parties.

NEA further objects to Topic No. 13 for the same reasons.

## REQUEST NO. 7:
All documents Regarding any and all responses by WebEx and/or NEA to allegations of rape, child abuse, sexual abuse, molestation, or other abuse allegedly perpetrated by Min Zhu on Erin Zhu.

## OBJECTIONS AND RESPONSE TO REQUEST NO. 7:
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that this Request is duplicative of Request No. 6. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related to allegations involving a third-party over a period of 20 years is unduly burdensome. NEA further objects to this Request on the grounds that the Request seeks confidential information and implicates the privacy rights of third parties. NEA has not been provided any protective order in this matter and will not produce such information without the entry of a protective order. In addition, NEA objects

4

to this Request on the grounds that it seeks information that is already in the possession, custody or control of other third-parties or Mr. Zeleny.

NEA further objects to Topic No. 13 for the same reasons.

**REQUEST NO. 8:**
All communications between the NEA Parties and/or the WebEx Parties on the one hand, and on the other hand anyone acting on behalf of the City of Menlo Park and/or San Mateo County, Regarding restrictions on the public carrying of unloaded firearms from January 1, 2005 through the present.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 8:**
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 3, 9-10, 14-15 and 24. NEA further objects to the Request to the extent that it seeks "[a]ll communications" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related to allegations involving a third-party over a period of 14 years is unduly burdensome. In addition, NEA objects to this Request on the grounds that it seeks information that is already in the possession, custody or control of the City of Menlo Park, a party to the action.

NEA further objects to Topic No. 4 for the same reasons.


**REQUEST NO. 9:**
All documents Regarding lobbying efforts by the NEA Parties, the WebEx Parties, or any of them, or communications by them or on their behalf with lawmakers, regarding the ban on open carry of unloaded firearms from January 1, 2005 through the present.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 9:**
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 3, 8, 10, 14-15 and 24. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related to allegations involving a third-party over a period of 14 years is unduly burdensome.

NEA further objects to Topic No. 6 for the same reasons.


**REQUEST NO. 10:**
All documents Regarding any efforts by the WebEx Parties or the NBA Parties to have Zeleny arrested or investigated.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 10:**

NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 1-3, 8-9, 14-15 and 24. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. NEA further objects to this Request on the grounds that the Request seeks confidential and proprietary information. NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order. Requiring NEA to search for and produce documents related Mr. Zeleny's activities over a period of 14 years is unduly burdensome.

NEA further objects to Topic No. 7 for the same reasons.

**REQUEST NO. 11:**

All documents Regarding any investigation or surveillance of Zeleny at any time, Including the surveillance referenced in the case captioned *NEA v. Zeleny,* San Mateo Superior Court Case No. CIV499465.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 11:**

NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 1-2 and 12-13. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. NEA further objects to this Request on the grounds that the Request seeks confidential and proprietary information. NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order. Requiring NEA to search for and produce documents related Mr. Zeleny's activities over a period of 14 years is unduly burdensome.

NEA further objects to Topic No. 8 for the same reasons.

**REQUEST NO. 12:**

All documents Regarding civil or administrative proceedings initiated by or on behalf of the WebEx Parties, the NEA Parties, or any of them, against Michael Zeleny, in connection with his online or public speech or protests, Including the civil actions captioned (1) *Zeleny v. Zhu and WebEx,* Santa Clara Superior Court case number CV809286; (2) *Zelyony v. Zhu,* Santa Clara Superior Court case number CV-810705; (3) *Affeld v. Zhu,* Santa Clara Superior Court case number CV-817300; (4) *Zeleny v. WebEx,* Santa Clara County Superior Court case no. CV062767; (5) *NEA v. Zeleny,* San Mateo Superior Court Case No. CIV499465; (6) *WebEx v. Zeleny,* Santa Clara County Superior

6

Court Case No. CV024062, Los Angeles County Superior Court Case No. BC324927; (7) the application for a restraining order filed by Zeleny against Min Zhu; and (8) the application for a restraining order filed by Scott Sandell against Zeleny.

## OBJECTIONS AND RESPONSE TO REQUEST NO. 12:
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 1-2, 11 and 13. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related Mr. Zeleny's activities over a period of 14 years is unduly burdensome. NEA further objects to this Request on the grounds that the Request seeks confidential and proprietary information. NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order. NEA further objects to this Request on the grounds that it seeks information in the possession of Mr. Zeleny, a party to this case, in the possession of other third parties, or that is publically available.

NEA further objects to Topic No. 9 for the same reasons.

## REQUEST NO. 13:
All documents Regarding the criminal action captioned *People v. Zeleny,* San Mateo County Superior Court Case No. SM382036, Including the NEA Parties' involvement in that action, communications with the prosecuting authorities, and or actions taken to cause that action to be initiated or pursued, from 2012 through 2015.

## OBJECTIONS AND RESPONSE TO REQUEST NO. 13:
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 1-2, 11-12. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. NEA further objects to this Request on the grounds that it seeks information in possession of Mr. Zeleny, a party to this case, in the possession of other third parties, or that is publically available.

NEA further objects to Topic No. 10 for the same reasons.

7

**REQUEST NO. 14:**

All documents Regarding efforts by Zeleny to secure authorization to engage in protests in Menlo Park, California from 2008 to the present, Including discussions with local authorities Regarding those efforts and/or their response, and local authorities' response to Zeleny's efforts to secure authorization.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 14:**

NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 1-3, 8-13, and 15. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related to Mr. Zeleny's activities over a period of 11 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks information in possession of Mr. Zeleny and/or the City of Menlo Park, parties to this case, or other third parties.

NEA further objects to Topic No. 11 for the same reasons.

**REQUEST NO. 15:**

All documents Regarding efforts by Zeleny to secure authorization to display firearms in connection with protests in Menlo Park, California from 2008 to the present, Including discussions with local authorities Regarding those efforts and/or their response, and local authorities' response to Zeleny's efforts to secure authorization.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 15:**

NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 1-3, 8-14. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. Requiring NEA to search for and produce documents related Mr. Zeleny's activities over a period of 11 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks information in possession of Mr. Zeleny and/or the City of Menlo Park, parties to this case, or other third parties.

NEA further objects to Topic No. 12 for the same reasons.

8

**REQUEST NO. 16:**
All documents Regarding Min Zhu's resignation or termination from WebEx in or around May 2005, his relocation to China at that time, and his resignation or termination from NEA, from 2005 to 2007.


**OBJECTIONS AND RESPONSE TO REQUEST NO. 16:**
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case.  NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine.  NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 4, and 17-23.  NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party.  Requiring NEA to search for and produce documents related Mr. Zhu activities over a period between 12 and 14 ago years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks confidential and proprietary information.  NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order. NEA further objects to this Request on the grounds that it seeks information in possession of other third parties.

NEA further objects to Topic No. 14 for the same reasons.

**REQUEST NO. 17:**
Documents sufficient to show the relationship between NEA and Min Zhu from 1995 to the present.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 17:**
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case.  NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine.  NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 4, 16 and 18-23.  Requiring NEA to search for and produce documents related Mr. Zhu activities over a period of 24 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks confidential and proprietary information.  NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order. NEA further objects to this Request on the grounds that it seeks information in possession of other third parties.

NEA further objects to Topic No. 16 for the same reasons.

**REQUEST NO. 18:**
 Documents sufficient to show the relationship between NEA and venture capital fund Northern

9

Light from May 2005 to the present.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 18:**
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to this Request on the grounds that this Request is duplicative of Request No. 19. Requiring NEA to search for and produce documents related to Northern Light over a period of 14 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks confidential and proprietary information. NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order. NEA further objects to this Request on the grounds that it seeks information in possession of other third parties.

NEA further objects to Topic No. 17 for the same reasons.


**REQUEST NO. 19:**
 Documents sufficient to show Scott Sandell's involvement in Northern Light from 2005 to present.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 19:**
NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to this Request on the grounds that this Request is duplicative of Request No. 18. Requiring NEA to search for and produce documents related to Northern Light over a period of 14 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks confidential and proprietary information. NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order. NEA further objects to this Request on the grounds that it seeks information in possession of other third parties.

NEA further objects to Topic No. 18 for the same reasons.


**REQUEST NO. 20:**
Documents sufficient to show C. Richard "Dick" Kramlich's business relationship with Min Zhu, and his relocation to China to engage in business activities with Min Zhu from 2007 through the present.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 20:**

NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to this Request on the grounds that this Request is duplicative of Request No. 17. Requiring NEA to search for and produce documents related to WebEx/Mr. Zhu over a period of 12 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks confidential and proprietary information. NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order. NEA further objects to this Request on the grounds that it seeks information in possession of other third parties.

NEA further objects to Topic No. 19 for the same reasons.


**REQUEST NO. 21:**

All documents Regarding NEA's role in the management or corporate governance of WebEx, Including the participation of NEA or individuals affiliated with NEA on the Board of Directors of WebEx or as board observers.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 21:**

NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 17 and 20. Requiring NEA to search for and produce documents related to WebEx/Mr. Zhu over a period of 20 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks confidential and proprietary information. NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order. NEA further objects to this Request on the grounds that it seeks information in possession of other third parties, including Cisco, which acquired WebEx in 2007.

NEA further objects to Topic No. 15 for the same reasons.


**REQUEST NO. 22:**

All documents Regarding the involvement of NEA or any individuals affiliated with NEA in discussions or efforts to address allegations of industrial espionage on behalf of the Peoples' Republic of China by WebEx and/or Min Zhu.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 22:**

NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 21 and 23. Requiring NEA to search for and produce documents related to WebEx/Mr. Zhu over a period of 15 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks confidential and proprietary information. NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order. NEA further objects to this Request on the grounds that it seeks information in possession of other third parties.

NEA further objects to Topic No. 15 for the same reasons.

**REQUEST NO. 23:**

All documents Regarding your participation or involvement in discussions or efforts to address any and all investigations by federal law enforcement authorities of allegations of industrial espionage on behalf of the Peoples' Republic of China by WebEx and/or Min Zhu.

**OBJECTIONS AND RESPONSE TO REQUEST NO. 23:**

NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case. NEA further objects to this Request on the grounds that it seeks documents protected from discovery by the attorney-client privilege, joint defense or common interest privilege or the work-product doctrine. NEA further objects to the Request to the extent that it seeks "[a]ll documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party. NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 21-22. Requiring NEA to search for and produce documents related to WebEx/Mr. Zhu over a period of 15 years is unduly burdensome. NEA further objects to this Request on the grounds that it seeks confidential and proprietary information. NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order.

NEA further objects to Topic No. 15 for the same reasons.

**REQUEST NO. 24:**

All non-privileged documents Regarding this lawsuit.

12

**OBJECTIONS AND RESPONSE TO REQUEST NO. 24:**

NEA objects to this Request on the grounds that it is overly broad and unduly burdensome in that it seeks information that is not relevant to the issues in the lawsuit and is not proportional to the needs of the case.  NEA further objects to the Request to the extent that it seeks "[a]ll non-privileged documents Regarding" as being overly broad and imposing unnecessary burdens and costs on NEA, a third party.  NEA further objects to this Request on the grounds that this Request is duplicative of Request Nos. 1-3, 8-10 and 14-15.  NEA further objects to this Request on the grounds that it seeks confidential and proprietary information.  NEA has not been provided any protective order in this matter and will not produce confidential and proprietary information without the entry of a protective order.

NEA further objects to Topic No. 20 for the same reasons.

Subject to and without waiving the foregoing Specific Objections and subject to the entry of a protective order, NEA will produce non-privileged documents within its possession, custody or control that can be located after a reasonable and diligent search that relate to the filing of this lawsuit and the prosecution of same.

Very truly yours,

Roger A. Lane

cc.     Todd H. Master, Esq.
        Noreen P. Skelly, Esq.

13

# EXHIBIT C

**Worcester, Courtney**

| | |
|---|---|
| **From:** | Nicolas A. Flegel <naf@jsmf.com> |
| **Sent:** | Wednesday, January 16, 2019 5:52 PM |
| **To:** | Wiss, Sommer |
| **Cc:** | Herren, Judi A |
| **Subject:** | Reference # P001245-011519 |

** EXTERNAL EMAIL MESSAGE **

Dear Ms. Wiss,

On behalf of the City of Menlo Park, I am writing to confirm that your Public Records Act request has been received. Your request seeks:

> Overview of the Request
> Create Date: 1/15/2019 6:11:45 PM
> Reference # P001245-011519
> Type of Record: Permits
> Description of Record Requested: We are requesting records from a de novo appeal that took place on August 11, 2016 at 2 PM, regarding Michael Zeleny's appeal of the decision of the Community Services Director denying his Application for a City Special Event Permit.

Staff and I are in the process of gathering the responsive records, and I expect I can provide them to you by the end of the week or early next week at the latest. Please let me know if you have any questions.

Nick Flegel

Nicolas A. Flegel
Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025
Tel: (650) 324-9300
Fax: (650) 324-0227

# EXHIBIT D



OFFICE OF THE CITY ATTORNEY

**CITY OF MENLO PARK** 1100 ALMA STREET / MENLO PARK, CA 94025 / 650.324.9300 / FAX 650.324.0227

September 21, 2015

**VIA EMAIL: michael@massmeans.com**

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

Re:    Special Event Permit

Dear Mr. Zeleny:

The City of Menlo Park ("City") is in receipt of your special event permit application submitted on July 10, 2015, to maintain a portable media presentation at the location of "2825 Sand Hill Rd, Menlo Park, CA 94025, at the median strip, per the attached." At this time the City is denying your application on the basis that it is incomplete and does not meet the criteria of a special event.

With respect to the application being incomplete, on July 24, 2015, I previously notified you by email that the application did not include an attachment indicating the specific location of the presentation/event, and requested additional information regarding your use of sound and lighting equipment. You responded by email on July 28, 2015, stating that you would be videotaping your presentation as part of a feature documentary and entertainment event. You again responded that the event will occur in the "median strip" and indicated the location to be the strip "directly across NEA headquarters," but you declined to provide any more detail at the time. The problem is that your application still does not indicate the exact location of the proposed event and how the presentation will be set up so that the City can analyze whether traffic control will be necessary or what other conditions might be necessary as part of the approval of the application nor the hours/length of the event. For example, there is no indication where you intend to place your tent, generator, video presentation, portable rest room, temporary lighting, sound system, etc. Further, you have stated there is no end time for the event and that the total hours are "indefinite."

With respect to the application not meeting the criteria for a special event, what you have set forth in your application is not an event that meets the City's definition of a special event. For example, the proposed event application states that it will not exceed 150 people, use any City street or right of way (even though the

Michael Zeleny
September 21, 2015 - Page 2

median is part of the right of way), require lane closures, require parking needs, generate a crowd of spectators, nor does it state that this is a community type event. To the contrary, you are proposing a "media production" of a one-man protest. If what you are actually intending is the filming of a movie, then the City has an application process, for which a film production permit is required. A copy of the City's "Film Production in Menlo Park" document is attached for your review.

Lastly, the City is concerned that what you are proposing to perform in the median strip between opposing lanes of traffic would be a violation of the Vehicle Code if it causes a visual impairment or visual distraction to oncoming traffic and vehicles traveling on Sand Hill Road. It would also likely be a safety hazard/danger to drivers on Sand Hill Road due to the rate of speed on the roadway and the proximity to Interstate 280. The median strip is too narrow to accommodate the film project as you have described in the application. Another concern is that it is illegal to open carry a firearm in the State of California. As you've described the proposed event, there does not appear to be any logical nexus or legitimate purpose of carrying a firearm.

Inasmuch as your application is incomplete and does not meet the definition of a special event, your application for a special event permit is denied.

If you wish to appeal this denial of your application, you must appeal the denial to the City's Special Event Permit Committee. I would ask that you notify me and Community Services Director Matt Milde at mlmilde@menlopark.org if you wish to seek an appeal.

Sincerely,

William L. McClure,
City Attorney

WLM:rr

Enclosure

cc:     Via email only
        Dave Bertini, Commander
        Matt Milde

## Film Production in Menlo Park

Film production in the City of Menlo Park must comply with following conditions:

1. Permittee shall submit in writing all pertinent details regarding the filming including the date(s) and times of the filming including time needed for set-up and take down; a description of the nature of the filming; the location of the filming; a list of all equipment involved in the filming, including cars and other vehicles; the proposed location for the parking and storage of all such vehicles and equipment; the number of cast and crew members involved in the filming; and an indication of any special needs, such as amplified noise, etc. If granted, the permit's approval will be confined to such activities, locations and time schedules as submitted and approved.

2. Three days prior to the beginning of filming, permittee shall provide written notice to residents and businesses within 200 feet of the proposed filming.

3. Permittee shall obey all City Ordinances, rules and the guidance of City supervisory employees pertaining to the use of City property, including the location, parking and storage of vehicles and equipment, crowd and traffic control, and the restoration of premises to their original condition after use for filming purposes.

4. Permittee will comply with the City of Menlo Park noise ordinance. Filming will be limited to the hours between 8:00 a.m. and 6:00 p.m. and will result in low to no noise levels. The use of any explosive, fireworks, or pyrotechnic devices is strictly prohibited.

5. Permittee shall make arrangements for traffic control satisfactory to the Menlo Park Police Department prior to filming on City streets and in other public areas. Permittee will be charged to recover the cost of traffic control provided by the City. Permittee will legally park vehicles and will not require street closure or traffic control other than what is approved.

6. Permittee shall covenant and agree to indemnify and hold harmless the City from any and all loss, cost, damages and expenses of any kind, including attorney fees, on account of personal injury or property damage resulting from any activity of Permittee on municipal property or in connection with its use of municipal property.

7. Liability insurance in no way limits the indemnity agreement above, Permittee will furnish the City a Certificate of Liability Insurance acceptable to its Risk Management office showing combined single limit coverage for bodily injury and property damage, or the equivalent of such coverage, not less than $1 million. The City, including its officials, employees and agents, shall be named as additional insured in the Liability Policy. Contractual liability coverage insuring the obligations of this Agreement is also required. The insurance may not be canceled or substantially modified without ten (10) days written notice to the City Manager's Office.

8. Permittee shall pay, with a valid check, money order, credit card or cashier's check, a **filming permit application fee of $150.00 in addition to the daily permit fees of $50 per day for still photography and short subject, $100 per day for industrials, and $150 per day for features, TV, music videos and commercials.**

9. Permittee shall apply for a one-time Business License and pay, with a valid check, money order, credit card or cashiers check.   See **Guide to Annual Business Licensee Fee Calculation** for the fee schedule.

10. Permittee will adhere to the provisions and conditions set forth in the permit.  If Menlo Park Police Department or other City personnel are required to correct, mitigate, or provide any service not consented to under this permit, permittee will be required to pay for all services rendered.  Payment shall be made in the form of *a valid check, money order, credit card or cashiers check* immediately upon demand made by the City.

*PROJECT ADDRESS:*_____

Read and agreed on:

Date:_____

_____          _____
Signature                                                              Print name

# EXHIBIT E



OFFICE OF THE CITY ATTORNEY

1100 ALMA STREET / MENLO PARK, CA  94025 / 650.324.9300 / FAX 650.324.0227

May 4, 2016

**VIA EMAIL: michael@massmeans.com**
**AND U.S. MAIL**

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

Re:    Appeal of Denial of Special Event Permit Application

Dear Mr. Zeleny:

The City of Menlo Park ("City") is in receipt of your email dated April 15, 2016. Your email indicates that you are lodging an appeal of the denial of your special event permit application. The original special event permit application was submitted on July 10, 2015, to which the City formally responded by letter dated September 21, 2015. In that letter, I indicated that your application was being denied as it was incomplete and did not meet the criteria of a special event.

Your email of April 15, 2016, outlines several modifications and provides additional information to supplement your original application, and therefore, the City is treating it as a revised application rather than an appeal. The April 16th email includes a Google map with a red box showing the proposed location of the event. The email also indicates that you no longer intend to film a documentary, but instead will put on an "entertainment event" in which you will be live-streaming a video showing the reaction of individuals who drive by your protest. Lastly, the revised application indicates in the"Event Narrative" that you "shall be present on site around the clock, equipped with fully operational, exposed and loaded firearms, in full compliance with all applicable laws."

Based on a review of your revised application, the City is denying your application on the basis that it is incomplete and it does not meet the criteria of a special event. With respect to the revised application still being incomplete, the application fails to describe how you intend to set up your presentation so that the City can analyze whether traffic control will be necessary or what other conditions might be necessary as part of the approval of the application, nor does it specify the hours/length of the event. For example, there is no indication where you intend to place your tent, generator, video presentation, portable rest room,

Printed on recycled paper

Michael Zeleny
May 4, 2016 - Page 2

temporary lighting, sound system, etc. The revised application is deficient in that the City needs substantially more detail in order to analyze the potential for your event distracting drivers, including the volume of sound you intend to make, the brightness of your projector, location and size of items you intend to place on the median strip, and how you intend to transport your set-up to the location (to determine compliance with the Vehicle Code).

Also, the revised application still does not propose an event that requires a special event permit. The application does not propose an event that is open to the community at large to participate in (it describes a one man protest). With the essential element of community participation, a special event permit is not necessary; protests do not require special events permits.

I also want to raise three concerns regarding the proposed event:

1. The proposed event has no defined term (your email indicates an event of "indefinite" duration). Given the presence of guns and the display of a pornographic image at along a major high-speed roadway, the City would need to staff the event with police and traffic supervision. However, the City does not have staff to monitor an event that could last days, weeks or months.

2. You are proposing to illegally open-carry weapons. It is illegal to open-carry an unloaded or loaded weapon in California. You are citing to the movie/entertainment exception, but that exception does not allow for the open-carrying of *loaded* weapons or weapons "adjoined by ample supplies of ammunition." Penal Code §16840 provides that a firearm shall be deemed to be "loaded" whenever both the firearm and the unexpended ammunition capable of being discharged from the firearm are in the immediate possession of the same person. Lastly, a practical reading of the entertainment exception would require the Department of Justice or the Menlo Park Police Department to authorize your event.

3. We have serious concerns regarding the proposed location of the event and will likely prohibit locating an event as generally described in your email and attachments in the median area of Sand Hill Road as it would be a traffic and safety hazard – regardless of how the event is characterized.

While it is clear that this is not a "special event," if you wish to appeal this denial, please provide written notice to Community Services Director Cherise Brandell (and copied to the undersigned.) Ms. Brandell's contact information is as

Michael Zeleny
May 4, 2016 - Page 3

follows:   Email (cebrandell@menlopark.org) and telephone (650) 330-6818.
Alternatively, you may provide additional detail to respond to the above-outlined
issues.

Sincerely,

William L. McClure
City Attorney

WLM:rr
cc:      Via email only
         Dave Bertini, Commander
         Cherise Brandell
         Matt Milde

# EXHIBIT F



CITY OF
MENLO PARK

Community Services

June 16, 2016

VIA EMAIL: michael@massmeans.com
AND U.S. MAIL

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA. 90046

**RE: Special Event Permit Application Denial**

Dear Mr. Zeleny,

Thank you for submitting a Special Event Application with the City of Menlo Park. Upon reviewing your application and appeal, approval for your special event has been denied for the following reason(s):

- Incomplete Application
- Does not meet the criteria for Special Event
- Other:
    - No defined term
    - The exhibition of loaded and or unloaded firearms is prohibited by law
    - Location proposed creates a traffic and safety hazard
    - Driving a vehicle onto a center medium is prohibited by California Vehicle Code section 21651
    - Illuminated displays which impair a driver's vision are prohibited by California Vehicle Code section 21466.5

Determination of the approval or denial of any application is at the discretion of the Special Event Permit Committee acting on behalf of the Community Services Director. If you feel this decision has been made in error or warrants a permit outside of the policies established by the City of Menlo Park you may appeal in writing to City Manager, Alex McIntyre. He can be reached at admcintyre@menlopark.org.

If you have any questions, please feel free to contact me.

Matt Milde
Recreation Coordinator
City of Menlo Park

City of Menlo Park   701 Laurel St., Menlo Park, CA 94025   tel 650-330-6600  www.menlopark.org

2

(650) 330-2223
mlmilde@menlopark.org

PRIVATE ROAD CLOSURE
The City of Menlo Park is unable to issue a special event permit if the event includes a road closure for private or exclusive residential use such as a birthday party, reunion, wedding, anniversary, etc. The Arrillaga Family Recreation Center (650-330-2200), Onetta Harris Community Center (650-330-2250) and picnic/park facilities (650-330-2220) are community resources designated for this type of function.

# EXHIBIT G



City Manager's Office

September 12, 2016

**VIA First Class Mail and Email**
Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

**RE: Special Event Permit Application Appeal Decision**

Dear Mr. Zeleny,

This correspondence serves as final determination of the City of Menlo Park's denial of your appeal of a prior decision to deny a Special Events Permit.

**Background**

The Appeal of the administrative decision denying the application of Michael Zeleny for a special event permit ("SEP") was heard on August 11, 2016 at the Menlo Park City Hall.

Mr. Zeleny first applied for a SEP on June 3, 2015 to conduct a protest in the median on Sand Hill Road near the entrance and exits of Interstate 280 in Menlo Park. The application (Exhibit A) included, but was not limited to, a request to:

- park a truck on the median;
- display loaded and unloaded firearms;
- distribute literature to the public; and
- run a generator to operate a 55-inch digital video monitor.

The protest was to be video recorded and, since the event was to extend into the evening, requested high-intensity lighting. This request was denied by staff on September 21, 2015 (Exhibit B).

On April 15, 2016, a revised application for a SEP was submitted to the City (Exhibit C). This application was treated as a new application. The April 2016 application was denied by staff on May 4, 2016 (Exhibit D). This denial was then appealed by Mr. Zeleny to the Community Services Department on or about May 27, 2016 (Exhibit E). The appeal was again denied by letter dated June 16, 2016 (Exhibit F). That decision was appealed to the Community Services Director (Exhibit G), which was again denied on June 24, 2016 (Exhibit H). Appellant then appealed to the City Manager. The City sent out a notice of appeal hearing on July 20 to the appellant, setting August 11, 2016 at 2:00 pm as the hearing date (Exhibit I).

As Menlo Park City Manager, I acted as the hearing officer for the appeal hearing and was represented by Gregory J. Rubens, Esq..  Appearing on behalf of the City was Police Commander David Bertini of the Menlo Park Police Department.  The Appellant was represented by David Affeld, Esq.  Also in attendance was Michael Zeleny (Appellant) and Kimberly Chu, Esq. from Gregory J. Rubens' office.

The Appeal was conducted as a de novo hearing.  The City admitted the above described documents and e-mails from staff and Mr. Zeleny from June 2015 to July 2016 (Exhibit J).  In addition, Mr. Zeleny provided an electronic copy of the Entertainment Firearms permit dated July 13, 2016 issued by the Office of the Attorney General (Exhibit K).  On its face, the permit allows firearms loaned to the permittee for use as props in motion picture, television, video, theatrical or other entertainment productions.

The appellant and his attorney presented their appeal and requested that the Special Events Permit be granted based on constitutional and statutory grounds.

The City staff present argued that the Appeal be denied for the reasons stated in the prior denials.

**Decision**

The appeal is denied.  As stated previously, no permit is required for first amendment protected activity.  Filming or digitally recording a protest in traditional public forum areas in the City is allowed provided they comply with all laws.  SEPs are not intended to regulate protests or filming of protests in the public forum areas of the City.  Special events are also time limited and not of an ongoing nature.

You are free to conduct a protest in compliance with laws.  However, the City has an obligation to protect public safety.  To that end, your protest cannot occur in the center median under State law, cannot block pedestrian access on the sidewalk, and cannot accommodate camping or sleeping on the sidewalk or any portion of the right-of-way.

A City may impose reasonable time, place and manner restrictions on first amendment rights in a content-neutral manner, by a narrowly tailored regulation to serve a significant public interest.

The regulations cited in this decision clearly allow a protest to occur in compliance with the City and State content neutral laws.  Protests are not allowed in the median, but would in traditional public forum areas, such as sidewalks and City parks and plaza's.

Your protest described in your SEP application and subsequent documents implicates a number of laws.  These laws include but are not limited to:

Display of Firearms

- Display of unloaded firearms could be considered a violation of Penal Code. State law prohibits display of unloaded firearms with the exception of using firearms loaned to the permittee as props as defined in Penal Code 29500-29530.
- Brandishing and display of unloaded firearms is illegal, except as provided in Penal Code Section 29500 et seq.
- Under Penal Code Section 25850, having possession of a loaded firearm is also illegal.  Under this section possession of a loaded firearm even with a film entertainment permit is illegal.
- Under Penal Code Section 28500(b), persons who display unloaded firearms are subject to the additional requirement that allows peace officers to examine any firearm. Failure to allow examination is a violation of the law.

Public Rights-of-Way

Public use of rights-of-way and medians are subject to the California Vehicle Code and the Menlo Park Municipal Code.  These legitimate and content-neutral regulations that serve a significant government interest include parking and time limits, obstruction of sidewalks, and obscenity laws.  Cities have been granted clear authority under state law over their rights-of-way.

- Vehicle Code Section 22507 provides broad discretion to cites over parking on public rights-of-way (in this case, there is no parking on Sand Hill Road in the proposed area of your protest).
- The proposed monitor and related equipment cannot impair a driver's vision block the sidewalk under Vehicle Code Section 21466.5.  The proposed lights, and video display also have the potential to impair a driver's vision.
- Driving upon or parking a vehicle or conducting in the median violates Vehicle Code Section 21651.

From a practical aspect and for public safety concerns,

- The lighting at night would be highly distracting to motorists, cyclists and pedestrians.
- City medians are not traditional public forum areas and are inappropriate and unsafe.
- The proposed location encourages the public to cross a busy arterial on to a median area that is without sidewalks and are encouraged to cross traffic and view your monitor and view hand-outs with high speed and high volume traffic

4

justifies this prohibition from a public safety standpoint.
- The median you propose is adjacent to the entrances and exits of Interstate 280, making the location unsafe and dangerous to pedestrians, cyclists and vehicles. Such a display or protest in the median could also block vehicular sight lines and impair public safety for pedestrians, cyclists and automobiles under Municipal Code section 11.44.030.

This is not an exhaustive list of the laws with which you must comply. Accordingly, if you attempt to conduct your protest in the medians anywhere in Menlo Park, the City will consider all appropriate remedies.

**Conclusion**

Based on the record and findings above, which are incorporated by this reference, your application for an SEP is denied. No permit to conduct a protest is required. Any protest you conduct must comply with all laws, include those set forth above which are described above.

Denial of the SEP does not violate any first amendment rights. The lack of need for a permit shows the City is not preventing your protest or prevented you from displaying your message. The City is using its police power and common sense to regulate the time, place and manner of your proposed free speech protest. The City has a compelling interest in public safety and a protest in the median would place the vehicular, cyclists, pedestrians and you in danger.

To appeal this decision to the City Council you must provide notice of your appeal to the City Clerk within ten days of the date of this letter.

Please be advised that, to the extent that the City can accommodate your request to protest safely and lawfully, we are willing to work with you.

Sincerely,

Alex D. McIntyre
City Manager

Enclosures

Cc:     <u>Via Email only</u>
        David W. Affeld, Esq.
        Greg Rubens, Esq.

**PROOF OF SERVICE Electronic Filing**

I HEREBY CERTIFY that on January 25, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the Electronic Service List for this case.

*/s/ Nicholas P. Honkamp*
NICHOLAS P. HONKAMP
Attorneys for Non-Party New Enterprise Associates

PROOF OF SERVICE
Case No. 17-CV-07357-RS