1   David W. Affeld, State Bar No. 123922
    Damion Robinson, State Bar No. 262573
2   Affeld Grivakes LLP
    2049 Century Park East, Ste. 2460
3   Los Angeles, CA 90067
    Telephone:    (310) 979-8700
4
    Attorneys for Plaintiff
5   Michael Zeleny

6

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  MICHAEL ZELENY,                    Case No. CV 17-7357 JCS

12        Plaintiff,                   Assigned to:
                                       The Honorable Richard G. Seeborg
13        vs.
                                       **PLAINTIFF'S OPPOSITION TO**
14  EDMUND G. BROWN, Jr., *et al.*,    **MOTION OF NEW ENTERPRISE**
                                       **ASSOCIATES TO QUASH SUBPOENA**
15        Defendants.
                                       Date:  March 7, 2019
16                                     Time: 1:30 p.m.
                                       Courtroom:  3 (17th Floor)
17
                                       [Filed Concurrently:
18                                     1.      Declaration of Larry Berliner;
                                       2.      Declaration of Michael Zeleny;
19                                     3.      Declaration of David Affeld]
20
                                       Action Filed:  December 28, 2017
21                                     Trial Date:     November 18, 2019
22

23

24

25

26

27

28

                                    - 1 -

1

## I.   INTRODUCTION

2      The Court should deny the motion of New Enterprise Associates ("NEA") to quash the

3   subpoena issued by plaintiff Michael Zeleny ("Zeleny").  There is no basis for NEA's position

4   that it can outright refuse to participate in discovery because it is a non-party.  Zeleny seeks

5   relevant information going to the heart of his First Amendment claims.  NEA rejected any

6   opportunity to narrow the subpoena through the meet-and-confer process.  Its objections are

7   manufactured, after-the-fact justifications for its desire to avoid basic discovery altogether.

8      NEA is not a disinterested party.  This case relates to Zeleny's ongoing protests ***against***

9   ***NEA***.  Zeleny has sued the City of Menlo Park (the "City") for refusing to allow him to protest

10   outside of NEA's headquarters.  For going on 10 years, NEA has used its political muscle—as

11   one of the largest venture capital firms in the world—to silence Zeleny and other critics.  It

12   went so far as to have Zeleny frivolous prosecuted.  When this NEA-backed prosecution failed,

13   however, the City threatened to arrest Zeleny again if he continued protesting.  He has every

14   reason to believe that NEA is behind this.  He is at least entitled to discovery to prove it.

15      NEA's arguments fail for several independently sufficient reasons.

16      *First*, the information Zeleny seeks is directly relevant.  NEA's role in stifling Zeleny's

17   protected speech is at the center of this suit.  Evidence of the pressure NEA brought to bear on

18   the City will demonstrate that the City's refusal to allow Zeleny to protest is content based, in

19   violation of the First Amendment.  Zeleny also seeks evidence going to the merit of his protests

20   against NEA – *i.e.*, showing that NEA has knowingly continued to fund a child rapist.  The

21   merit of Zeleny's grievances is directly relevant to establish the redeeming value of his speech,

22   showing that it is not obscene, as the City has claimed.

23      Rather than address these issues on the merits, NEA pretends that this is merely a case to

24   challenge state gun laws.  It is not.  Four of Zeleny's five claims relate to the NEA-backed

25   efforts to stop him from protesting.  Although not a named party—because it is not a state

26   actor—NEA is mentioned in the complaint more than 40 times.  Its conduct is front and center.

27      *Second*, NEA cannot complain about the breadth of the subpoena because it flatly

28   refused Zeleny's offer to compromise on the scope.  This is what the meet-and-confer process

is for.  NEA refused to engage in that process.  It cannot now claim that the subpoena is unduly burdensome when it had the opportunity to limit the scope and refused.

*Third*, NEA is wrong in arguing that it need not comply with a subpoena because it is a third party.  NEA is the only available source for the information it seeks – *e.g.*, NEA's internal documents demonstrating its efforts to silence Zeleny, its knowledge of Min Zhu's heinous conduct, and its efforts to cover that conduct up.  The City does not have this information.  It is available from exactly one source:  NEA.

*Fourth*, the scope of the subpoena is directly tied to NEA's ongoing efforts to stifle Zeleny's protests.  These efforts have spanned many years.  Zeleny's requests are tailored to the exact time frame.  And, as NEA's own evidence shows, the additional burden of searching for documents from earlier years is minimal—they represent about 10% of the total.

*Fifth*, and finally, NEA's burden argument is wholly manufactured.  It relies on an inflated estimate of a single e-discovery vendor—which NEA no doubt solicited to be as high as possible.  The estimate assumes that NEA would not limit its data collection by user or keywords, and would simply download every single email on its system.  This is not how e-discovery works.  Zeleny submits an expert declaration showing that it would actually cost about $1,200 to collect and process the documents—assuming, counterintuitively, that NEA's counsel could not do it in house at nominal cost.  This is consistent with NEA's past practice in litigation against Zeleny, where it managed to produce only 134 pages of documents.  NEA's inflated claim is factually wrong.

The Court can and should deny NEA's motion outright because it is based on misguided arguments and misstatements of fact.  If the Court declines to do so, it should, at minimum, modify the subpoena rather than quashing it so that Zeleny can obtain patently relevant information from the only source available.

## II.    BACKGROUND

### A.    Zeleny's Protests Against NEA.

Zeleny has been protesting NEA since 2005.  Zeleny Decl. ¶ 11.  His protests focus on

NEA's financial backing of Min Zhu, the founder of WebEx—a company acquired in 2007 for $3.2 billion.

In addition to founding WebEx, Min Zhu is a child rapist.   Beginning in the 1990s, Min Zhu's daughter, Erin Zhu, credibly and publicly accused him of raping her, repeatedly, when she was a child.  Zeleny Decl. ¶¶ 2-7 & Ex. 1.  Min Zhu has never denied these accusations.  *Id.* ¶ 6.  He settled Erin Zhu's claims in 2000 for a confidential sum.  *Id.*

Despite knowledge of Erin Zhu's credible allegations, NEA has continued to partner with and financially back Min Zhu.  *Id.* ¶¶ 8-10.   It has also never publicly acknowledged the allegations against Min Zhu.  It has continued to support him after he fled to China in 2005.  *Id.*

Between 2005 and 2012, Zeleny conducted a series of protests against NEA, including protests at its headquarters on Sand Hill Road.  Zeleny Decl. ¶¶ 11-18.  Through his protests, Zeleny sought to bring attention to the fact that NEA has continued to support Min Zhu despite his vile sexual abuse of Erin Zhu.  *Id.* ¶ 12.  These protests have included posters and flyers to "call out" specific NEA executives, including Scott Sandell and C. Richard Kramlich, and graphic, but non-obscene cartoon images of Min Zhu's conduct.  *Id.* ¶ 19.  To draw attention to his message, Zeleny has engaged various types of musicians and a food truck to participate.  *Id.*

Beginning in late 2009, to further amplify his message, Zeleny began carrying and displaying unloaded firearms consistent with state law.  Zeleny Decl. ¶ 20.  He has always notified police in advance, and complied with requests to inspect his weapons and time, place, and manner restrictions.  *Id.* ¶ 21.

**B.      NEA's Efforts to Stifle Zeleny's Protests.**

NEA and its affiliates have attempted to silence Zeleny for many years:

•      In early 2005, WebEx frivolously sued Zeleny over online posts that he made regarding Min Zhu.  Zeleny was awarded $16,000 in attorneys fees and sanctions for filing suit in an improper venue and under California's Anti-SLAPP (Strategic Lawsuit Against Public Participation) statute .[1]  Zeleny Decl. ¶ 22.

---

[1] Zeleny lives in Los Angeles.  Venue was not even arguably proper in Santa Clara County under the California Code of Civil Procedure.

- • In May 2005, WebEx had Zeleny arrested for his protests at its user conference. Zeleny was released the same day without charge. *Id.* ¶ 23.

- • In 2009, Scott Sandell applied for a temporary restraining order against Zeleny. He never served Zeleny and his application was rejected without opposition. *Id.* ¶ 24.

- • In October 2010, NEA sought a temporary restraining order enjoining Zeleny from protesting outside of its offices.  The court summarily rejected its application without any appearance or opposition by Zeleny. *Id.* ¶ 25.

Beginning in 2010 or 2011, while NEA's lawsuit was ongoing, the City of Menlo Park (the "City") began placing increasing restrictions on the place and manner of Zeleny's protests, threatening criminal prosecution if he did not comply.  Zeleny Decl. ¶ 26.

In 2012, the County of San Mateo filed criminal charges against Zeleny, accusing him of carrying a "concealed" firearm in his protests.  Zeleny Decl. ¶ 27.  The supposedly-concealed firearm was unloaded and padlocked in a belt holster on Zeleny's hip.  *Id.* *See* Cal. Penal. Code § 25400(b) ("[a] firearm carried openly in a belt holster is not concealed").  Representatives of NEA sat in every day of Zeleny's trial.  *Id.* ¶¶ 29-31; Affeld Decl. ¶¶ 4-6.  The deputy District Attorney conferred with them on breaks.  Zeleny Decl. ¶¶ 30-31 & Ex. 2; Affeld Decl. ¶¶ 5-6. She referred to NEA as "my client" and "the client."  Zeleny Decl. ¶ 32; Affeld Decl. ¶ 7.

The court acquitted Zeleny of all charges on December 5, 2014.  Zeleny Decl., Ex. 3.

**C.    The City of Menlo Park Stifles Zeleny's Protests at the Behest of NEA.**

While Zeleny's was being frivolously prosecuted at NEA's behest, California law changed.  State law now prohibits both concealed and non-concealed carrying ("open carry") of unloaded firearms, subject to various exemptions.   *See* Cal. Pen. Code §§ 26350, 26375, 26400, 26405.  Among other things, use of firearms in an "entertainment event" or "video production" is exempt.  Cal. Pen. Code §§ 26375, 26405(r).

During Zeleny's criminal prosecution, Zeleny's counsel argued that he qualified for the similar entertainment event exemption under the concealed carry law.  Zeleny Decl. ¶¶ 35-36.  The Deputy District Attorney argued that the exemption did not apply because Zeleny had not obtained a "Special Events" permit from the City as required.  *Id.*  Zeleny then

discovered that the City had updated its policies *while his criminal proceeding was ongoing*, to require such a permit.  *Id.* & Ex. 4.

Zeleny sought to resume his protests in 2015.  Zeleny Decl. ¶ 38.  The City has taken the position that Zeleny will violate the "open carry" ban if he continues his protests without a permit, subjecting him to arrest and prosecution again.  *Id.* ¶¶ 39-41.

To comply with the new law and the City's hastily-enacted ordinance, Zeleny sought a "Special Events" permit and/or a video production permit from the City to allow him to record his protest and publish protest videos online.   Zeleny Decl. ¶¶ 39-41 & Ex. 5.  The City refuses to issue a permit, or even to tell him the criteria for issuing one—but has asserted that the area outside of NEA's headquarters is not a suitable location. *Id.* ¶ 40 & Ex. 5; Affeld Decl. ¶ 9.  Preposterously, the City claims at the same time that Zeleny does not need a permit to engage in his protests, but that his carrying of an unloaded firearm without a permit will subject him to criminal prosecution.  Zeleny Decl. ¶ 40 & Ex. 5.

Ultimately, in a public meeting in 2016 the Chief of Police for the City, Dave Bertini ("Bertini") conceded that the City has denied the permits, in part, because it finds Zeleny's protests offensive.  Zeleny Decl. ¶¶ 43-44; Affeld Decl. ¶¶ 10-11.  Bertini threatened that Zeleny could be arrested for obscenity as to minors (Penal Code § 313.1) if he continues. *Id.*

### D.    Procedural History.

Zeleny brought this suit asserting that the City's refusal to allow him to protest is an unlawful, content-based prior restraint in violation of Zeleny's constitutional rights.  Zeleny brings four claims against the City and Bertini, *see* Compl. ¶¶ 98-128, for violation of the First, Second, and Fourteenth Amendment rights, as well as under 42 U.S.C. § 1983.  He also brings suit against the State of California challenging the "open carry" ban.

### E.    Zeleny's Subpoena to NEA

Zeleny has been attempting to schedule NEA's deposition since May 2018.  Affeld Decl. ¶ 12.  Ultimately, after receiving no cooperation from Defendants, Zeleny subpoenaed NEA to appear and produce documents on January 4, 2018.  *Id.* ¶ 14 & Lane Decl., Ex. A.

The subpoena seeks three general categories of evidence:

1.    Evidence related to Zeleny's protests against NEA and Min Zhu;

2.    Evidence going to the merit of Zeleny's protests, including his allegations against Min Zhu, NEA, and its executives, and NEA's knowledge of the underlying facts; and

3.    NEA's efforts to use legal and government process to stop Zeleny's protests, including legal proceedings and efforts to influence local governments.

### F.    NEA Refuses to Meet-and-Confer.

After service of the subpoena, NEA's counsel objected to the timing of the deposition and insisted that the parties meet and confer.  Affeld Decl. ¶ 18.  Zeleny offered to move the deposition to a convenient date, and scheduled a meet-and-confer call.  *Id.*

The call took place on January 11, 2018.  Affeld Decl. ¶¶ 18-19.  NEA's counsel flatly refused to respond to any document request or produce a witness on any topic.  *Id.* ¶ 21.  The only possible exceptions offered by NEA's counsel were Topic 20 and Request for Production 24, *i.e.*, communications with the City about the current lawsuit.  *Id.*  Counsel said that he would "consider" whether NEA would respond to these two requests.  *Id.* & Ex. 1.

Otherwise, NEA's counsel took the position that NEA would not respond in any fashion.  Affeld Decl. ¶ 21 & Ex. 1.  Although Zeleny's counsel offered to meet-and-confer on each topic and document request—as the Court's Local Rules require—NEA's counsel declined to do so.  *Id.* ¶ 22 & Ex. 1.  Instead, NEA's counsel stated that NEA considered the subpoena inappropriate in its entirety, and would not respond.  *Id.*  He ended the call by cryptically saying that NEA has "known about" Zeleny for a long time.  *Id.*

## III.    NEA'S MOTION SHOULD BE DENIED

Discovery rules are liberally construed in light of the parties' broad right to discovery. *Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 617 (C.D. Cal. 2007).  The analysis starts with the "basic premise 'that the deposition-discovery rules are to be accorded a broad and liberal treatment.'"  *Schlagenhauf v. Holder*, 379 U.S. 104, 114-15 (1964) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  Rule 26 states that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," so long as it is

1  proportional with the needs of the case.  Fed. R. Civ. P. 26(b)(1).

2      Rule 45 gives parties the right to serve subpoenas where consistent with the other

3  discovery rules.  The burden of quashing a subpoena is squarely on the responding party.

4  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)  "The person objecting to

5  production has a heavy burden to show that the subpoena should not be enforced."  *Millennium*

6  *TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) (citing *Northrop*

7  *Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984)).

8      **A.    Zeleny Seeks Relevant Information.**

9      NEA cannot render the subpoena irrelevant by ignoring the substance of the complaint.

10  NEA argues that "Plaintiff's claims relate to the constitutionality of statutes that only became

11  effective as of **January 1, 2012 or later**," Mot. at p. 5, and "[t]he gravamen of Plaintiff's

12  Complaint" is a challenge to the statutes.  *id.* at p. 6.  This is not even close to accurate.

13      This is a case about the City's content-based restrictions on Zeleny's protests against

14  NEA.  Four of Zeleny's five claims (Counts I through IV) are directed at the City halting

15  Zeleny's protests against NEA.  *E.g.*, Compl. ¶¶ 2-6, 24-63.  ***NEA is mentioned 42 times in the***

16  ***Complaint***.  As explained in the Complaint, the City is using California's new "open carry" ban

17  as a means to stop Zeleny from protesting NEA—the most recent in a series of different

18  methods used over the past decade.

19      NEA also blatantly misstates the parties' meet-and-confer discussion.  At no point did

20  counsel suggest that Zeleny seeks discovery to "morally sham[e]" NEA or to "publicize" its

21  conduct.  (Opp. at pp. 9-10 (citing Lane Decl. ¶ 6); *see* Affeld Decl. at ¶ 20).  Had they done so,

22  NEA no doubt would have documented this position in the parties' emails summarizing the

23  call.  NEA did no such thing because it simply never happened.  Affeld Decl., Ex. 1.  It is

24  highly irresponsible for NEA and its attorneys to attribute these statements to Zeleny's counsel

25  when counsel never made them in the first place.

26      Leaving aside NEA's misdirection, the evidence Zeleny seeks is relevant under the

27  broad standard applicable to discovery.  "The test of relevance in the discovery context is a very

28  broad one.  More precise evidentiary rulings should await trial, when the issues are more clearly

defined." *Geophysical Sys. Corp. v. Raytheon Co.*, 117 F.R.D. 646, 647 (C.D. Cal. 1987). For discovery purposes "relevance encompasses any matter that 'bears on' or could reasonably lead to a matter that could bear on, any issue that may be presented in the case." *Rutherford v. Palo Verde Health Care Dist.*, No. 13-1247, 2014 WL 12632904, at \*2 (C.D. Cal. Dec. 1, 2014) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978)).

      **1.**      **Evidence of NEA's Interference with Zeleny's Protests Is Relevant to Prove that the City's Restrictions are Content Based.**

"Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, — U.S. —, 135 S. Ct. 2218, 2226 (2015); *Epona v. Cnty. of Ventura*, 876 F.3d 1214, 1221 (9th Cir. 2017). A government regulation "may not be based upon either the content or subject matter of speech" unless it satisfies strict scrutiny. *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 536-37 (1980). In contrast, time, place and manner restrictions are valid if they are reasonable and content-neutral. *Id.* This is hornbook law. The distinction is generally outcome determinative in First Amendment cases.

Zeleny seeks discovery from NEA to show that the City has banned his protests based on their content – *i.e.*, at NEA's behest. Even a facially neutral permitting requirement may be unconstitutional if it is applied in a content-based way. *See United Broth. Of Carpenters & Joiners v. N.L.R.B.*, 540 F3d. 957, 966-67 (9th Cir. 2008); *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757-58 (1988) (noting that party could challenge licensing scheme because the scheme gave discretion that would facilitate content-based censorship).

Zeleny's subpoena is directed to gathering evidence of NEA's efforts to use political influence to get the City and other local authorities to stop his protest—something that NEA has undeniably done in the past. For example:

- Request for Production No. 2 asks for documents relating to Zeleny's protests.
- Request No. 3 asks for NEA's communications with local and state governments about Zeleny and his protests.
- Request No. 9 asks about NEA's lobbying efforts.

- Requests Nos. 10 through 13 ask for documents relating to NEA's efforts to have Zeleny arrested and prosecuted, and its civil lawsuits relating to his protests.

- Requests Nos. 14 and 15 ask for documents regarding Zeleny's efforts to get permits to protest and to secure authorization to display firearms.

Restricting Zeleny's speech because it targets NEA is paradigmatic content-based censorship. Zeleny has the right to prove that the City is acting at NEA's behest. *See Puente Aziz v. Arpaio*, 314 F.R.D. 664, 668 (D. Ariz. 2016) (enforcing subpoena for communication between attorneys, lobbyists, and senator which could tend to show impermissible basis for enactment of legislation). To do so, he needs documents and testimony from NEA about its efforts to influence the City, and its pattern of using local government to its ends.

**2.     Documents Going to the Merit of Zeleny's Allegations Against NEA Are Relevant to Show the Redeeming Value of his Speech.**

The City, through its police chief, has taken the position that it can prohibit Zeleny's protests because they are "obscene as to minors" under Penal Code § 313.1. Obscenity is not protected by the First Amendment. *See Roth v. United States*, 354 U.S. 476, 492-93 (1957). If Zeleny's speech is obscene, his First Amendment claim fails. He seeks a declaratory judgment that his speech is non-obscene, and subject to First Amendment protection. Compl. at p. 23 ¶ D; *see also Zeitlin v. Arnebergh*, 59 Cal. 2d 901 (1963) (holding that bookseller was entitled to declaratory relief that book was non-obscene).

For speech to be characterized as "obscene," the trier of fact must determine (a) whether an average person, would find that the speech appeals to the "prurient interest,"; (b) whether the speech depicts sexual conduct in "a patently offensive way"; and (c) "whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller v. United States*, 413 U.S. 15, 24 (1973); *see Ashcroft v. ACLU*, 535 U.S. 564, 578-79 (2002) (applying similar test to obscenity as to minors); *see also* Cal. Pen. Code § 313(a) (defining material as "harmful" to minors under the *Miller* Test). The test focuses on the "socially redeeming value" of the expressive activity. *Ashcroft*, 535 U.S. at 579 (quoting *Reno v. ACLU*, 52 U.S. 844, 873 (1997)); *see also People v. Enskat*, 33 Cal. App. 3d 900, 910-11 (1973) (discussing *Miller* test as related to prior test defining obscenity as content "utterly without redeeming social value").

In determining the value of speech, courts consider the merit of the speech itself. *See Penthouse Int'l, Ltd. v. McAuliffe*, 610 F.2d 1353, 1373 (1980) (distinguishing "Playboy" magazine from pornography due to "significant content of literary matter including short stories, interviews, and panel discussions of great merit").   "The value of a work can pass muster under *Miller* if it has serious merit, measured objectively, even if a majority of the community would not agree." *Skywalker Records v. Navarro*, 739 F. Supp. 578, 594 (S.D. Fla. 1990) *rev'd Luke Records v. Navarro*, 960 F.2d 134, 137-38 (11th Cir. 1992) (finding that trial court could not properly assess artistic value by simply listening to recording). Logically, the substantive merit of the speech bears on whether it has redeeming value. Exposing the truth is a hallmark of speech with serious value entitled to First Amendment protection. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72.  Ordinarily the value of speech is a jury question. *See Luke Records*, 960 F.2d at 138.

Whether Zeleny's grievances with NEA are legitimate goes directly to whether his protests have serious redeeming value.  There is no doubt that the protests are provocative. The question is whether they, nonetheless, have significant merit to deserve constitutional protection.  Zeleny needs the ability to show a jury that he is working to expose valid problems with NEA ignoring and covering up allegations of child rape—not that he is just a crank spinning wild conspiracy theories.

This evidence can only come from NEA itself.  NEA is the only party in a position to know when it learned that Min Zhu was a child rapist, and what (if anything) it did in response.  Several of Zeleny's discovery requests go directly to this topic.  For example,

- Request No. 4 seeks documents showing NEA's public relations campaign to minimize dissemination of the credible allegations of child rape.

- Request No. 6 requests documents relating to the allegations against Min Zhu.

- Request No. 7 asks for documents showing NEA's response to those allegations.

- Requests Nos. 16 through 20 ask for documents relating to NEA's ongoing business dealings with Min Zhu.

These requests are necessary to prove the truth of Zeleny's allegations.  The truth of his allegations necessarily goes to the merit of his protests.  He is entitled to evidence to prove it.

**B.     NEA Failed to Meet and Confer**

NEA is playing a discovery game.  After receiving Zeleny's subpoena, its counsel[2] insisted that the parties meet and confer, and then simply announced that NEA would not respond to the subpoena, and counsel would not address any of the individual requests or topics of testimony.[3]  He flatly refused Zeleny's offer to go through the requests and topics individually to see whether any compromise could be reached.

Having failed to meet and confer, NEA cannot legitimately object that the subpoena is overly broad or unduly burdensome.  It had every opportunity to address the breadth of the subpoena informally and chose not to do so.  The Local Rules are clear. "The Court will not entertain a request or motion to resolve a disclosure or discovery dispute unless . . . counsel have previously conferred *for the purpose of attempting to resolve all disputed issues.*"  Civil Local Rules, Rule 37-1(a) (emphasis added).  NEA did not "attempt[] to resolve all disputed issues."  Its motion should fail on this basis alone.

**C.     NEA Is Not Exempt from Discovery**

NEA seems to think that it can simply ignore civil discovery where it is not a party.  Its argument is based on cases involving subpoenaing third parties for documents in the possession of parties.  NEA fails to show that this is the case here.

The subpoena seeks NEA's internal documents and information about its lobbying efforts, its knowledge of Min Zhu's conduct, its business dealings with him, the efforts of NEA efforts—not the City's—to stop Zeleny's protests.  Only *one* of the document requests, Request No. 8, asks directly for communications between NEA and the City.  Zeleny would gladly stipulate that NEA need not produce any documents that the City produces.[4]  This was

---

[2] Counsel who represented NEA on the call, Roger Lane, is not licensed to practice in California and did not seek *pro hac vice* admission until long after the call.  It is unclear whether NEA could possibly have satisfied the meet-and-confer requirement without engaging counsel authorized to participate in that process and familiar with the Court's Local Rules regarding discovery.

[3] NEA's objection (in a footnote) that the subpoena was not served in a reasonable time is meritless.  Despite giving a full week notice, after being contacted by NEA's counsel, Zeleny's counsel immediately offered to move the deposition to a date convenient to NEA.  Affeld Decl. ¶ 18.

[4] Zeleny has served the City and Bertini with two sets of requests for production each.  Documents are set to

- 12 -

1    not the point of his requests in the first place.

2          NEA also makes much of the fact that Zeleny sought discovery from NEA before

3    seeking other discovery.  This does not support NEA's point either.   Given that NEA and its

4    affiliates have repeatedly sued him in the past—and resisted discovery there as well—Zeleny

5    correctly anticipated that NEA would resist discovery and require motion practice.  He has

6    been seeking to take NEA's deposition since May in hopes of resolving any disputes in ample

7    time to meet the discovery cut-off.  This is why he sought NEA's deposition first.  Having

8    proved Zeleny's concerns correct, NEA can hardly blame him for trying to head off these

9    issues early in the discovery process.

10         Finally, NEA wrongly portrays itself as a completely disinterested party in this suit.  It

11   is not.  Where a non-party has "an interest in the outcome of the underlying case," its

12   objections to discovery are given less weight.  *See Balfour Beatty Infrastructure, Inc. v. PB &*

13   *A, Inc.*, 319 F.R.D. 277, 282 (citation omitted).   Non-parties that are "substantially involved"

14   in the controversy should expect discovery, and cannot claim that participating is an undue

15   burden.  *Tutor-Saliba Corp. v. United States*, 32 Fed. Cl. 609, 610 n. 5 (1995).  Rule 45 is "not

16   intended as a mechanism for entities which stand to benefit from certain litigation outcomes to

17   evade discovery costs arising from their involvement in the underlying acts that gave rise to

18   the lawsuit."  *Cornell v. Columbus McKinnon Corp.*, No. 13-2188, 20154 WL 4747260, at *5

19   (N.D. Cal. Aug. 11, 2015) (discussing cost-shifting rules).

20         Despite NEA's portrayal of itself, it is not a disinterested third party.  Through this

21   lawsuit, Zeleny seeks to establish his right to protest NEA—efforts that NEA has stonewalled

22   for many years.  If Zeleny wins, he will resume his protests outside of NEA's headquarters.

23   NEA is plainly interested in the outcome.  It cannot hide behind the City when its own conduct

24   is plainly at issue.

25         **C.    The Requests Are Not Overly Broad.**

26         A subpoena cannot be quashed merely because it is broad.  It must be "so unreasonable

27   _____

     be produced in response to the first set on February 11.

28

- 13 -

1    and oppressive as to justify" quashing it.  *Democratic Nat'l Committee v. McCord*, 356 F. Supp.

2    1394, 1395 (D.D.C. 1973); *see also* Fed. R. Civ. P. 45(D)(3).   The breadth of the subpoena is

3    one of many factors considered in determining whether it is unduly burdensome.  *See Premier*

4    *Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975).

5           Zeleny's subpoena is not overly broad.   He seeks to establish a pattern of NEA using

6    political influence and public resources to stifle his speech.  He also seeks to show that NEA

7    has continued to do business with Min Zhu after learning of credible allegations that Min Zhu is

8    a child rapist.  Zeleny notified NEA of the underlying facts in 2005.  He has been protesting

9    since that time, and NEA and its affiliates have been trying to stop him ever since.   The time

10   frame of Zeleny's subpoenas directly corresponds to the time frame of Zeleny's protests and

11   NEA's efforts to stop those protests.

12          That the protests have spanned many years is not, on its own, a basis to quash the

13   subpoena.   All of the NEA's cases addressing the time frame of the subpoenas appear to do so

14   where the subpoenas also seek a mass of otherwise irrelevant information.  *E.g. Moon*, 232

15   F.R.D. at 637-38 (finding subpoena overbroad where it included 10-year period *and* sought

16   documents relating to products that were not at issue in the litigation).  Where the information

17   sought is relevant, even a subpoena without a time limitation may be upheld—particularly

18   where the requesting party offers to limit the scope to avoid burden.  *Balfour Beatty*, 319 F.R.D.

19   at 283.  Zeleny did exactly that by offering to negotiate with NEA over each request and topic

20   of testimony.  NEA flatly refused to do so.

21          Finally, NEA's own evidence demonstrates that the breadth of the requests will pose

22   almost no burden.  NEA's submits a declaration from Adam Valachovic, a discovery vendor,

23   which indicates that only about 10% of NEA's data is from before 2012.  Valachovic Decl. ¶¶

24   3-6.  The remaining 90% falls within the period that NEA claims is the relevant to this case –

25   *i.e.*, 2012 and later.  *Id.*; *see also* Opp. at 5 (asserting that Zeleny's claims relate to statutes

26   "effective as of **January 1, 2012 or later**") (emphasis in original).  The marginal effort to

27   search the pre-2012 data is nominal.  There is no meaningful burden.

28          NEA has simply asserted a knee-jerk "overbreadth" objection to justify its outright

- 14 -

1    refusal to participate in discovery.

2          **E.      NEA Has Failed to Show that the Requests are Unduly Burdensome**

3          All discovery requests necessarily involve some burden.  The fact that it would be time

4    consuming to respond is not a basis to quash a subpoena.  *See Ghandi v. Police Dept. of City of*

5    *Detroit*, 74 F.R.D. 115, 124 (E.D. Mich. 1977) (noting that mere fact that responding would be

6    "time consuming" is not sufficient to quash subpoena).  NEA bears the burden of showing the

7    actual burden involved.

8          "A party cannot rely on the mere assertion that compliance would be burdensome or

9    onerous without showing the manner and extent of the burden and the injurious consequences

10   of insisting upon compliance."  *Garcia v. E.J. Amusements of New Hampshire, Inc.*, 89 F. Supp.

11   3d 211, 216 (D. Mass. 2015) (citation and modifications omitted).  Courts have emphatically

12   rejected arguments of burden without supporting evidence.  *Id.* ("The court does not accept

13   such arguments without specific estimates of staff hours needed to comply") (quoting *Assoc. of*

14   *Am. Physicians and Surgeons, Inc. v. Clinton*, 837 F. Supp. 457, 458 n.2 (D.D.C. 1993)); *In re*

15   *Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (requiring

16   "provable negative consequences of insisting on compliance").

17         NEA has failed to offer admissible evidence of undue burden.  Its only support is the

18   grossly-inflated estimate of Mr. Valichovic, which it apparently solicited for the sole purpose of

19   making a small discovery production appear as burdensome as possible.  Mr. Valachovic does

20   not even attempt to qualify himself as an expert.  His $100,000 estimate for a relatively small

21   document production is absurd.  It assumes that NEA will do nothing to limit the data it

22   collects, will not run search terms, and will simply download every single email to or from any

23   person at the company.  *See* Berliner Decl. ¶¶ 6-8.  This is not how e-discovery works.  *Id.* ¶ 9.

24         In reality, NEA's estimate is overstated by as much as ***100 times***.  Berliner Decl. ¶¶ 20-

25   22.  As Mr. Berliner, an e-discovery expert makes clear, NEA could easily reduce the data it

26   processes by over 99% by using standard search features available on NEA's own email

27   platform, Office365.  *Id.* ¶¶ 6-14.  Searching for relevant emails—even without limiting the

28   search to employees reasonably likely to have relevant data—would take less than an hour

- 15 -

using this program. *Id.* ¶ 14.  This would result in a collection of a fraction of the data available on an ordinary iPhone.  The total costs of about $1,220, would likely not even reach the minimum charges of an outside vendor—assuming that NEA's counsel, inconsistent with customary practice, could not simply process this small dataset itself.  *Id.* ¶¶ 22-25.

NEA's burden claim is also belied by its own past practices.  In prior litigation with Zeleny, after vigorously resisting basic discovery, NEA only could produce 134 pages of documents concerning its dealings with Zeleny.  Affeld Decl. ¶ 3.  There is no reason to think that it has millions more responsive documents now.  *Id.* ¶ 24.  Producing a couple hundred pages of emails is not an undue burden on a behemoth such as NEA.

The burden of discovery is considered in light of the third-party's resources.  *Balfour Beatty*, 319 F.3d at 282 (comparing cases).  Courts are skeptical of burdensomeness claims by large, well-funded parties.  *Id.*  Even if NEA could show some meaningful burden—and it has failed to do so—it is "one of the world's larges and most active venture capital firms."[5]  The costs of complying with the subpoena are negligible.  The feigned burden is simply a post hoc justification for its outright refusal to participate in discovery.

### F.    NEA's Privilege Argument Is Frivolous.

Finally, NEA's privilege claim is frivolous. As the instructions to the subpoena make clear, Zeleny only seeks "non-privileged documents.  Requests at p. 1 ¶ 3.  The requests contained a specific instruction of how to address privileged communications – *i.e.*, by providing a standard privilege log.  *Id.* ¶ 2.  NEA has not provided one.

NEA has failed to carry its burden to show that the subpoena actually implicates privileged documents.  "The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question."  *Tornay v. United States*, 840 F.2d 1424, 1428 (9th Cir. 1988).  It is not allowed to simply assert that the discovery includes some privileged information.  *Burlington N'ern & Santa Fe Ry. Co. v. U.S. District Court*, 408 F.3d 1142, 1149-50 (9th Cir. 2005).  Ordinarily, it must submit a privilege log

---

[5] https://www.nea.com/about.

showing the attorney-client communications at issue. *Id.*; *see also Karnoski v. Trump*, 328 F. Supp. 3d 1156, 1163 (W.D. Wash. 2018) (noting that privilege log is necessary to allow the court to rule on the validity of privilege assertions).

Because NEA has failed to identify any privileged information at issue, its boilerplate privilege objection also fails.

## IV.   AT MINIMUM, THE COURT SHOULD MODIFY THE SUBPOENA.

Rule 45 gives the Court discretion of whether to quash a subpoena or to modify it.  Fed. R. Civ. P. 45(d)(3).  "In ruling on a motion to quash . . . the Court is not limited to the remedy of quashing the subpoena, but may so modify it as to remove its objectionable features." *Ghandi*, 74 F.R.D. at 117 (citing 9 Wright & Miller, Fed. Prac. & Proc. § 2457 (1971)).

To the extent the Court is not inclined to simply deny NEA's motion as unsupported, it should modify the subpoena rather than quashing it.  Zeleny needs discovery from NEA to prove his constitutional claims against the City.  NEA has deprived him of any opportunity to address its objections by refusing to meet and confer in good faith.  It should not be permitted to ignore the subpoena entirely, particularly when it failed to comply with the Local Rules, and now raises objections that those rules are designed to avoid.

At minimum, the Court should exercise its discretion to limit the subpoena to avoid any *proven* undue burden, rather than depriving Zeleny of any discovery from NEA.

## V.   CONCLUSION

Zeleny is entitled to discovery from third parties necessary to prove his constitutional claims against the City.  NEA, which has repeatedly tried to stop those protests, is no exception. Zeleny seeks relevant discovery bearing directly on the merits of his claims.

NEA's objections are unsupportable and NEA rejected the chance to address them informally as required.  As NEA's failure to meet and confer makes plain, it is not concerned with burden, but simply refuses to participate in discovery.  This is not proper.

(*Continued on next page*)

1    The Court should deny NEA's motion outright, or, at minimum, limit the subpoena and

2    order NEA to comply as so limited.

3    Dated:  February 8, 2019                Respectfully submitted,

4                                            s/ Damion Robinson
                                             David W. Affeld
5                                            Damion D. D. Robinson
                                             Affeld Grivakes LLP
6                                            Attorneys for Plaintiff Michael Zeleny

- 18 -

1

## **PROOF OF SERVICE**

2

     I hereby certify that on February 8, 2019, I electronically filed the foregoing document

3
using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will
send a notice of electronic filing to the interested parties.

4

                                 s/ Damion Robinson

5
                                 Damion Robinson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPP. TO MOT. TO QUASH