1  David W. Affeld, State Bar No. 123922
   Damion Robinson, State Bar No. 262573
2  Affeld Grivakes LLP
   2049 Century Park East, Ste. 2460
3  Los Angeles, CA 90067
   Telephone:    (310) 979-8700
4
   Attorneys for Plaintiff
5  Michael Zeleny
6
7
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
11  MICHAEL ZELENY,                    Case No. CV 17-7357 JCS

12        Plaintiff,                   Assigned to:
                                       The Honorable Richard G. Seeborg
13        vs.
                                       **DECLARATION OF LARRY BERLINER**
14  EDMUND G. BROWN, Jr., *et al.*,    **IN SUPPORT OF PLAINTIFF'S**
                                       **OPPOSITION TO MOTION OF NEW**
15        Defendants.                  **ENTERPRISE ASSOCIATES TO QUASH**
                                       **SUBPOENA**
16
                                       Date:  March 7, 2019
17                                     Time: 1:30 p.m.
                                       Courtroom:  3 (17th Floor)
18
                                       [Filed Concurrently:
19                                     1.  Opposition
                                       2.  Declaration of Michael Zeleny;
20                                     3.  Declaration of David Affeld]

21                                     Action Filed:  December 28, 2017
                                       Trial Date:     November 18, 2019
22
23
24
25
26
27
28

- 1 -

BERLINER DECL. IN OPP. TO MOT. TO QUASH

I, Larry Berliner, declare

1.      I am over the age of 18 and am not a party to this action.  I have personal knowledge of the facts below.  If called upon to do so, I could testify competently to those facts.

2.      I have more than 30 years in the computer and internet technology industry.  I have been working full time in the field since 1986 when I received my first job as a systems administrator.

3.      I am the principal of Berliner Consulting, which is a full-service information technology consulting firm.  Our work focuses on forensics, network implementation, data recovery and examination, and electronic discovery, among other things.  I presently manage the information systems of more than 50 businesses.  A substantial portion of our work is on behalf of law firms engaged in data extraction, processing, and e-discovery.

4.      I am readily familiar with industry standards regarding e-discovery, including document collection, processing, review, and production, as well as e-discovery software and systems.  I am familiar with industry standards by virtue of my regular work for major law firms on e-discovery projects.

5.      I have performed hundreds of e-discovery assessments and projects involving document collection, processing, and production.  We have worked for both plaintiffs and defendants, on behalf of parties seeking to compel electronic documents and those seeking to avoid electronic production where it would be unreasonably burdensome.

6.      I have reviewed the Declaration of Adam Valachovic in Support of Motion to Quash in this case.

7.      The document collection and processing method described by Mr. Valachovic is not consistent with industry standards.

8.      It contemplates collecting and processing all of the known email for all employees of NEA.   This would result in a significant unnecessary effort and considerable overbilling.  As a result, the estimates provided are not, in my opinion, reasonable.

9.      In none of my e-discovery projects, even for small productions such as the one

- 2 -

at issue here, would I recommend collecting and processing all emails within an organization. This is not consistent with industry standards.

10.     Instead, industry practice is to limit the data before it is collected and processed.  This usually involves discussions among counsel to limit the custodians[1] whose data is searched, and to identify relevant search terms before collecting data.

11.     Mr. Valachovic's declaration does not reflect any effort to reduce the data in any way before collecting and processing it, either by custodians or using search terms.

12.     Both of these functions are readily available on the Office365 email platform.

13.     Even without limiting the data set as discussed above, Office365 maintains a word index of all emails.  This makes even company-wide searches of emails easy and fast.

14.     For example, given the data identified by Mr. Valachovic, a search for the keyword "Zeleny" across the entire data set, and a download of all resulting email, would likely take less than an hour.

15.     The search terms that I would have recommended using in this case would not include any words in the most common 500 words in the English language.  As a result, search terms should have resulted in an appreciable reduction in the total collection.

16.     Mr. Valachovic also does not mention identifying custodians before collecting and processing data.  As a result, he assumes a need to collect and process all emails from any user.  This is not consistent with industry standards.

17.     Limiting the data collection to those custodians reasonably likely to have relevant data is an almost universal practice in e-discovery and has been for years.  It significantly reduces the amount of data to be collected and processed.

18.     The website of NEA lists 36 team members.  Assuming some rate of employee turnover, and the use of assistants and other administrative staff, there are likely to be at least 50 custodians, and likely many more.  I understand based on discussions with counsel for plaintiff that only approximately five custodians are likely to have relevant data.

---

[1] Custodians are those individuals in a company who are reasonably likely to have relevant information.

19.     Assuming that each custodian has roughly the same amount of data, limiting the collection to relevant custodians would decrease the data collected by at least 90%

20.     Using the data estimates provided by Mr. Valachovic, performing the above steps would reduce the total data processed to less than 10 gigabytes, as follows:

| | |
|---|---|
| Total Data on System: | 4,880 gigabytes (4.88 terabytes) |
| After Identifying Custodians: | 488 gigabytes (90% reduction) |
| After Running Search Terms: | 9.76 gigabytes (98% reduction) |

I have used a 98% reduction as a conservative estimate.  In my experience, properly designed search terms typically reduce the collected data by far more than this amount.

21.     Collection of 9.76 gigabytes would require significantly less processing effort than is suggested by Mr. Valachovic.  This is a fraction of the data on a single iPhone.

22.     Assuming Mr. Valachovic's rates, it should cost approximately $1,220 to process the resulting data and upload it to a Relativity platform, as follows:

| | |
|---|---|
| Processing cost at $5.00/gigabyte: | $48.80 |
| Uploading cost[2] at $120.00/gigabyte: | $1171.20 |
| Total: | $1,220.00 |

23.      I do not understand the basis for Mr. Valachovic's assumption that the project would require 30 hours of project management.  Given the size of the project, this estimate appears to be overstated by many times.

24.     That said, because the project is small, many discovery vendors would charge a fixed fee of $2,000 to $10,000 to attend a Meet and Confer, collect and process the data.

*(Continued on next page)*

[2] Assuming no further reduction by using more narrow search terms after processing

BERLINER DECL. IN OPP. TO MOT. TO QUASH

1    25.    In my experience, law firms that are mid-sized or larger typically have internal

2    e-discovery systems that allow document processing, bates marking, and production to occur

3    at far less cost than using an outside vendor.  A discovery project of this size, which is quite

4    small by e-discovery standards, could readily be handled internally at a nominal cost.

5        I declare under penalty of perjury under the laws of the United States that the

6    foregoing is true and correct.  Executed February 8, 2019 at Los Angeles, California.

7

8                    <u>        s/ Larry Berliner        </u>
                    Larry Berliner

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BERLINER DECL. IN OPP. TO MOT. TO QUASH

## **PROOF OF SERVICE**

I hereby certify that on February 8, 2019, I electronically filed the foregoing document using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

s/ Damion Robinson
Damion Robinson

PLAINTIFF'S OPP. TO MOT. TO QUASH