THOMAS S. BROWN, CA Bar No. 178620
 tsbrown@foley.com
NICHOLAS P. HONKAMP, CA Bar No. 261299
 nhonkamp@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

ROGER A. LANE (admitted *pro hac vice*)
 rlane@foley.com
COURTNEY WORCESTER (admitted *pro hac vice*)
 cworcester@foley.com
**FOLEY & LARDNER LLP**
111 HUNTINGTON AVENUE
BOSTON, MA 02199
TELEPHONE: 617.342.4000
FACSIMILE:   617.342.4001

Attorneys for Non-Party New Enterprise
Associates

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Michael Zeleny, | Case No. 17-cv-07357-RS |
| Plaintiff, | **NON-PARTY NEA'S REPLY IN SUPPORT OF ITS MOTION TO QUASH** |
| vs. | Date:      March 7, 2019 |
| Edmund G. Brown, Jr., et al., | Time:      1:30 |
| Defendants. | Courtroom:3, 17th Floor |

4845-2313-6392.1

**TABLE OF CONTENTS**

I.    THE OVERBROAD SUBPOENA SEEKS IRRELEVANT INFORMATION ........................ 2

  A.    PLAINTIFF HAS FAILED TO DEMONSTRATE THAT THE SUBPOENA
        SEEKS RELEVANT DOCUMENTS ...................................................................... 3

  B.    THE SUBPOENA IS FATALLY OVERBROAD ........................................................ 8

        1.    Plaintiff has provided no justification for the extensive time frame
              of his Subpoena............................................................................................ 9

        2.    Plaintiff's attempt to minimize the burden and cost of the
              Subpoena fails.............................................................................................. 9

CONCLUSION...............................................................................................................11

1

**TABLE OF AUTHORITIES**

2

**CASES**  **PAGE(S)**

3
4

*Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.,*
  319 F.R.D. 277 (N.D. Cal. 2017)...................................................................................... 8, 9

5
6

*Chaplinsky v. New Hampshire,*
  315 U.S. 568 (1942)........................................................................................................... 5

7
8

*Cornell v. Columbus McKinnon Corp.,*
  No. 13-2188, 2015 WL 4747260 (N.D. Cal. Aug. 11, 2015) ............................................ 8

9
10

*Fujikura Ltd. v. Finisar Corp.,*
  No. 15MC80110HRLJSC, 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015) ............................. 2

11
12

*Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.,*
  No. ST-2014-CV-513, 2016 WL 7107879 (V.I. Super. Nov. 30, 2016) ............................. 2

13
14

*Micro Motion Inc. v. Kane Steel Co., Inc.,*
  894 F.2d 1318 (Fed. Cir. 1990) ....................................................................................... 4

15
16

*Miller v. United States,*
  413 U.S. 15 (1973)..................................................................................................... 1, 4, 5

17
18

*National* Day *Laborer Organizing Network v. U.S. Immigration & Customs Enforcement Agency,*
  877 F. Supp. 2d 87 (S.D.N.Y. 2012) .............................................................................. 11

19
20

*Optimize Tech. Solutions, LLC v. Staples, Inc.,*
  No. 14-mc-80095-LHK (HRL), 2014 WL 1477651 (N.D. Cal. Apr. 14, 2014) .................... 2

21
22

*Puente Arizona v. Arpaio,*
  314 F.R.D. 664 (2016)....................................................................................................... 7

23
24

*Robert Half Int'l Inc. v. Ainsworth,*
  No. 14-CV-2481-WQH DHB, 2015 WL 4662429 (S.D. Cal. Aug. 6, 2015)........................ 1

25
26

*Shinedling v. Sunbeam Prod. Inc.,*
  No. EDCV12438CJCSPX, 2014 WL 12600964 (C.D. Cal. Mar. 4, 2014)........................... 4

27
28

*Tutor-Saliba Corp. v. United States,*
  32 Fed. Cl. 609 (1995)....................................................................................................... 8

*United States v. Alvarez,*
    567 U.S. 709 (2012)..........................................................................................................5

**STATUTES**

CAL. PENAL CODE § 25510 ....................................................................................................4

CAL. PENAL CODE § 26375 ....................................................................................................4

CAL. PENAL CODE § 26405 ....................................................................................................4

FED. R. EVID. 902(14) ..........................................................................................................11

FED. R. CIV. P. 26 ....................................................................................................................2

FED. R. CIV. P. 45 ....................................................................................................................2

**SECONDARY SOURCES**

Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary (2015) ..............................2

4845-2313-6392.1

1    Plaintiff's Opposition to the Motion of New Enterprise Associates to Quash ("Opposition") rests,

2    at bottom, on two proffered legal propositions, both of which are simply wrong:  first, that "truth" is a

3    defense to a charge of obscenity (it is not); and second, that discovery into the "truth" of challenged speech

4    from a third party is therefore relevant (it is not).  Under *Miller v. United States*, 413 U.S. 15, 24 (1973),

5    whether Plaintiff's speech "as a whole, lacks serious literary, artistic, political or scientific value" is

6    determined by an objective test, based on the content of the challenged speech; whether it is true or untrue

7    is not the First Amendment's concern.

8    In a strained effort to make his Subpoena for some twenty years of irrelevant information seem on

9    point, Plaintiff attempts to reframe the entire gravamen of his Complaint.  In his Complaint, Plaintiff

10   plainly asserts that public officials denied Plaintiff a permit *based on their judgment* as to the obscenity

11   of its content.  (Compl. ¶¶ 85; 97 ("The City has prohibited Zeleny from exercising his right to free speech

12   based on the content of his protests.  A declaration is necessary that Zeleny's protests and the materials

13   used by him in those protests are not obscene as a matter of law…."); ¶ 100 ("The City of Menlo Park and

14   Bertini have, under threat of criminal prosecution, prohibited Zeleny from engaging in his lawful protests

15   based on the content of his speech, claiming that they will prosecute Zeleny for obscenity as to minors.")).[1]

16   Nothing in Plaintiff's Complaint (or the law) renders anything that NEA knew, believed, or did

17   relevant to Plaintiff's dispute with these public officials.  In an attempt to obscure this fundamental point,

18   Plaintiff's Opposition radically departs from his own pleading, arguing that these public officials did not

19   exercise their own judgment as to obscenity after all, but rather that NEA was somehow "behind it all."[2]

20   There are, however, no factual allegations in the Complaint to that effect, and hence no basis in the

21   pleadings for this discovery.  *Robert Half Int'l Inc. v. Ainsworth*, No. 14-CV-2481-WQH DHB, 2015 WL

22   4662429, at *4 (S.D. Cal. Aug. 6, 2015) (discovery should be limited to the claims and defenses of the

---

[1]  As noted in NEA's opening brief, it does not appear that Plaintiff has in fact been denied a permit because the proposed protest is obscene; he has been denied a permit because his application was incomplete and there were concerns regarding the time, place and manner of the proposed protests.  (NEA MTQ 11:3-5.)

[2]  The closest Plaintiff's Complaint comes to alleging that NEA is the cause of the Defendants' actions is the allegation that "Plaintiff is informed and believes, and on that basis alleges, that the City has continually denied Zeleny's requests for permits because it disagrees with the substance of his message, and does not believe that his statement about Min Zhu's conduct or WebEx's and NEA's tacit approval of that conduct are true."  (Compl. ¶ 85.)  This is a far cry from what Plaintiff now seeks to assert in his Opposition:  that the Defendants are working at the behest of NEA.  Ironically, Plaintiff himself admits in his Opposition that *only one* of his multitude of document requests asks for communications between NEA and the City, and Plaintiff further suggests that NEA need not produce any documents that the City produces anyway.  (Opp. 12:20-21.)

1  parties).  The fact that Plaintiff felt it necessary to undertake this strained effort itself betrays the

2  impropriety of his Subpoena.  NEA is not a defendant in this case, and its awareness of Plaintiff's salacious

3  allegations regarding Min Zhu's treatment of his daughter, any assessment NEA may have made of those

4  allegations, and any action NEA may have taken relative to Min Zhu as a result, are not at issue here.  All

5  that is at issue is whether the City of Menlo Park, including its civic officials and its police department,

6  acted wrongly in denying Plaintiff a permit to air his tawdry, second-hand grievances in the time, place

7  and manner that he wanted to air them.  Whatever NEA may have thought of Plaintiff's allegations, or

8  done in response to them, is simply irrelevant.  In addition to these fundamental issues, Plaintiff's

9  Opposition disingenuously mischaracterizes the very cases upon which it relies for key propositions, as

10  well as the matters of public record that it purports to present, all of which combine to show that Plaintiff's

11  Subpoena to NEA is legally unfounded and wholly improper.  Accordingly, the Court should quash the

12  Subpoena, and issue a protective order to protect NEA and its current and former personnel from further

13  subpoenas from Plaintiff.[3]

14  **I.      THE OVERBROAD SUBPOENA SEEKS IRRELEVANT INFORMATION**

15        Plaintiff has failed to demonstrate that the discovery sought from NEA "is relevant and material

16  to the allegations and claims at issue in the proceedings," requiring that the Subpoena be quashed.

17  *Optimize Tech. Sols., LLC v. Staples, Inc.*, No. 14-mc-80095-LHK (HRL), 2014 WL 1477651, at *2 (N.D.

18  Cal. Apr. 14, 2014) (citation omitted).  In addition, Plaintiff's Opposition utterly ignores the mandate of

19  FRCP 26 that discovery must be proportional to the needs of the case.  *See* Chief Justice John Roberts,

20  2015 Year-End Report on the Federal Judiciary, 6 (2015) (amendment to Rule 26 "crystalizes the concept

21

22

---

23  [3] Despite the fact that NEA's motion to quash was filed on January 25, 2019, Plaintiff has attempted to seek the identical documents from Richard Kramlich, who is a retired general partner of NEA, and Scott Sandell, the current managing general partner of NEA. (Worcester Decl., Exhs. B & C.) First, Mr. Sandell was not properly served, rendering his subpoena subject

24  to a motion to quash, as the process server did not serve Mr. Sandell in hand, but rather left the documents outside of NEA's Menlo Park business address. *Fujikura Ltd. v. Finisar Corp.*, No. 15MC80110HRLJSC, 2015 WL 5782351, at *5-6 (N.D. Cal.

25  Oct. 5, 2015) (Rule 45(b)(1) provides, in relevant part, that "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person[.] ***The majority of courts understand 'delivering' to require personal service of***

26  ***the subpoena.***") (emphasis added).  Second, both subpoenas seek essentially the same documents that are sought by the Subpoena to NEA, which provides an independent basis to quash them. (*Compare* Lane Decl., Exh. A *with* Worcester Decl.,

27  Exhs. B & C); *Gourmet Gallery Crown Bay, Inc. v. Crown Bay Marina, L.P.*, No. ST-2014-CV-513, 2016 WL 7107879, at *2 (V.I. Super. Nov. 30, 2016) (as FRCP 26(b)(2)(C)(i) provides that "the court must limit the frequency or extent of discovery....if

28  it determines that: (i) the discovery sought is unreasonably cumulative or duplicative," court quashed vast majority of subpoena to individual where document requests were duplicative of those made to another third party).

4845-2313-6392.1

1  of reasonable limits on discovery through increased reliance on the common-sense concepts of

2  proportionality"). Plaintiff has failed to provide any rationale for the breadth of his Subpoena which, *inter*

3  *alia*, seeks documents from ten years prior to any of Plaintiff's protests and seventeen years prior to

4  passage of the statutes whose enforcement and validity Plaintiff challenges, and it also seeks information

5  that has *nothing to do* with Plaintiff's protests. (*See* Lane Decl., Exh. A, Request No. 22 ("All documents

6  Regarding the involvement of NEA or any individuals affiliated with NEA in discussions or efforts to

7  address allegations of industrial espionage on behalf of the Peoples' Republic of China by WebEx and/or

8  Min Zhu."); Request No. 23 ("All documents Regarding your participation or involvement in discussions

9  or efforts to address any and all investigations by federal law enforcement authorities of allegations of

10  industrial espionage on behalf of the People's Republic of China by WebEx and/or Min Zhu.").) Finally,

11  Plaintiff's last-minute efforts to narrow the information sought in an attempt to demonstrate that the

12  Subpoena is not overly burdensome should be rejected, as Plaintiff previously refused to make such

13  accommodations.

14  **A.   PLAINTIFF HAS FAILED TO DEMONSTRATE THAT THE SUBPOENA SEEKS RELEVANT DOCUMENTS**

15  Plaintiff's Opposition claims that the discovery sought from NEA is relevant for two reasons.

16  First, on the basis of an utter non-sequitur: that the discovery is necessary to show that "the City has

17  banned his protests based on their content – *i.e.*, at NEA's behest."[4] (Opp. 9:17-18; 10:5 ("Zeleny has the

18

19

---

20  [4] In an attempt to bolster his contention that California law enforcement acts at NEA's behest, Plaintiff makes much of a criminal prosecution brought in 2012 by the San Mateo County DA's office for carrying a concealed firearm, in which Plaintiff

21  was acquitted. (Opp. 5:11-17.) What that prosecution has to do with this case is utterly obscure, as this case involves the denial of permits some three and four years later, in 2015 and 2016, by civic authorities representing the City of Menlo Park, and

22  statements allegedly made by Commander Bertini in that context.

23  Moreover, Plaintiff has already had the opportunity, in August 2016, to question Commander Bertini as to what, if any, interactions he had had with NEA:

24  Affeld:       Have you ever met with anybody from NEA regarding the criminal prosecution of Mr. Zeleny?

25  Bertini:     Not regarding the criminal prosecution of Mr. Zeleny, no.

26  Affeld:       Have you met with NEA in any other capacity?

27  Bertini:     Yes.

28  Affeld:       In what, in what capacity?

4845-2313-6392.1

1  right to prove that the City is acting at NEA's behest.").)  Second, that the discovery is necessary to show

2  that his protests have "serious redeeming value."  (Opp. 11:13-14).  Both justifications fail to establish

3  that the information sought is relevant.

4         As to the first point, nowhere in Plaintiff's Complaint does it allege that any Defendant has taken

5  action "at NEA's behest," and that proposition does not remotely follow from Plaintiff's allegation that

6  the City banned his protests based on a judgment as to their obscene content.  *Shinedling v. Sunbeam Prod.*

7  *Inc.*, No. EDCV12438CJCSPX, 2014 WL 12600964, at *2 (C.D. Cal. Mar. 4, 2014) ("Requested

8  discovery is not relevant to the subject matter in a pending action if the inquiry is only based on the

9  requesting party's mere suspicion or speculation."); *Micro Motion Inc. v. Kane Steel Co., Inc.*, 894 F.2d

10  1318, 1327 (Fed. Cir. 1990) ("The discovery rules are designed to assist a party prove a claim it reasonably

11  believes to be viable *without discovery*, not to find out if it has any basis for a claim.").  Far from making

12  such an allegation, the Complaint repeatedly asserts that Plaintiff seeks a declaration that his "protests and

13  the materials used by him in those protests are not obscene as a matter of law."  (Compl. ¶¶ 97, 100-101,

14  107, 119.) [5]

15         Moreover, whether Plaintiff's planned protest is or is not obscene as a matter of law has nothing

16  to do with NEA.  That determination is based upon the test articulated in *Miller v. California*, 413 U.S.

---

18 /19  Bertini:     I met with the, all the stakeholders that were complaining about Mr. Zeleny's protests on two or three occasions.

20  Affeld:      Who were the stakeholders?

21 /22  Bertini:     I don't know exactly who was involved but I know it was, it was the property owners, Stanford, it was NEA of the Rosewood property, I know the sheriff's department was there, the DA's office and I'm not quite sure who else was there.

23  (Worcester Decl., Exh. A, pg. 20.)

24  [5] Plaintiff's Complaint also alleges that Defendants have improperly interpreted various statutes, but once again, nowhere does
25  Plaintiff's Complaint allege that the interpretation is at the behest of NEA.  *See* Compl. ¶ 106 ("The City of Menlo Park has
   improperly interpreted the exceptions to California's firearms carry bans, California Penal Code §§ 25510, 26375, and 26405,
26  as applicable to authorized participants in a motion picture, television or video production, or entertainment event, to require
   the City's approval of the production or event itself, and the use of firearms and 'authorized participants' in that production or
   event."); ¶ 114 ("The City has misinterpreted California Penal Code §§ 25510, 26375, and 26405...."); ¶ 124 ("The City..[has
27  refused] to grant any such permits based on the content of Zeleny's speech."); ¶ 125 ("The City and Bertini have violated
   Zeleny's rights to engage in protected speech by threatening him with criminal prosecution for engaging in protected activity,
28  including threatening criminal prosecution based on the content of Zeleny's speech and his peaceful use of unloaded firearms
   as part of that speech.").

15, 24 (1973), which is an objective test of the challenged speech itself, and nowhere does the test for obscenity involve a determination of whether the speech or posters used in a protest are true or false. Plaintiff's contention to the contrary, that "[e]xposing the truth is a hallmark of speech with serious value entitled to First Amendment protection" (Opp. 11:10-11), is simply wrong. *U.S. v. Alvarez*, 567 U.S. 709, 721-22 (2012) (rejecting notion that "false" speech is unprotected under the First Amendment). If Plaintiff's position were the law, then every crack-pot, off-color First Amendment protest case would become a trial on the question of whether the protester's position was nonetheless "true," and turn the First Amendment shield – which protects free expression on the part of *speakers* – into a weapon to subject the *targets* of the challenged speech to sweeping discovery into their knowledge, investigation and action with respect to the substance of the challenged protest. That is not our law, and it has never been our law. Such inquiries may have their place, but they are not part of the First Amendment.

Further, the one case Plaintiff relies upon for this proposition, *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942), stands for no such thing. In fact, it demonstrates that truth is *irrelevant* to any such determination. There, the United States Supreme Court upheld the conviction of a Jehovah's Witness for violating a statute that prohibited addressing any offensive, derisive or annoying word to another person who was lawfully in the street or other public place. The Supreme Court held that the statute was not unconstitutional. *Id.* at 571-73. In so ruling, the Court observed that the trial court had excluded immaterial testimony relating to the individual's "mission," and that this was approved by the appellate court below, which held that "neither provocation *nor the truth of the utterance* would constitute a defense to the charge." *Id.* at 570 (emphasis added). After holding that the statute was, in fact, constitutional, the Court further held that "*[t]he refusal of the state court to admit* evidence of provocation and *evidence bearing on the truth or falsity of the utterances is open to no Constitutional objection.*" *Id.* at 574 (emphasis added). Consequently, discovery regarding the "truth" of NEA's past business relationship with Min Zhu and WebEx, when NEA learned about Plaintiff's allegations regarding Min Zhu, or what NEA may have done relative to Min Zhu as a result of learning of Plaintiff's allegations, has nothing to do with whether or not Plaintiff's protests are obscene.[6]

---

[6] To be clear, to date no one has determined that Plaintiff's proposed protest is, in fact, obscene, and Plaintiff's assertions that he has been "threatened" with criminal prosecution appear unfounded. Both Plaintiff and his counsel claim that during an August 11, 2016 hearing, Defendant Bertini stated that "he and the community considered my protests offensive. He took

1

2

particular issue with one of the cartoons of Min Zhu engaged in sexual activity.  Chief Bertini stated that if [Zeleny] continued

3
to display this artwork, he **would** have [Zeleny] arrested for 'obscenity as to minors.'" (Zeleny Decl. ¶ 44 (emphasis added);
Affeld Decl. ¶ 11.) A review of the transcript of this public hearing demonstrates that no such threats were made:

4

| | |
|---|---|
| Affeld: | Commander, I want to start where you ended.  You showed us Penal Code Section 313.1. |
| Bertini: | Correct. |
| Affeld: | And you also have a graphic from Mr. Zeleny's LiveJournal. |
| Bertini: | Correct. |
| Affeld: | The page in the lower righthand corner, there's a print date of July 21, 2015 at 4:04 p.m. |
| Bertini: | Correct. |
| Affeld: | Is that the date that you printed this out? |
| Bertini: | Yes, sir. |
| Affeld: | And did you personally do that or somebody else at the city? |
| Bertini: | No.  I did. |
| Affeld: | Was this something that you included or anybody else on behalf of the city included in any of the previous denials at the first instance around any of the other layers of appeal? |
| Bertini: | No. |
| Affeld: | You, you were aware of this for more than a year, but it didn't find its way into any of the appellate record until today? |
| Bertini: | That's correct. |
| Affeld: | Okay.  And your point in including this graphic, it's dated December 14th, 2012.  Do you see that? |
| Bertini: | Yes, sir. |
| Affeld: | And it depicts some individuals and some sexual activity? |
| Bertini: | Correct. |
| Affeld: | Your point is that a display of this kind in public might harm minors? |
| Bertini: | **My point is that *if* it were to be displayed in public *and* we had a complaining parent of a minor who was exposed to it, that 313.1 *could* be a section that *could* be used to make an arrest or a prosecution.** |
| Affeld: | And so it.  Did Mr. Zeleny tell you that this graphic that's depicted from December 14, 2012 was going to be part of the protest? |
| Bertini: | My understanding was that I, this was the graphic that he was proposing to display on the video screen. |
| Affeld: | **Okay.  So it was the content of this graphic that you found as part of the grounds for denying Mr. Zeleny's application?** |
| Bertini: | **No, I just, I just bring that up now as another, another reason why.  It was never, it was never brought up before.  It was not in the record before.** |
| Affeld: | Okay.  The new reason today, regarding this graphic, has to do with the content of the graphic.  Is that right? |
| Bertini: | That's correct. |
| Affeld: | Do you know if there's been any determination as to whether this graphic is obscene? |
| Bertini: | That would have to be determined in a court of law. |
| Affeld: | Has that happened? |
| Bertini: | There've been no arrest.  I'm talking about a criminal case. |

1    In addition, Plaintiff relies upon *Puente Arizona v. Arpaio*, 314 F.R.D. 664 (2016), for the

2  proposition that "Zeleny has the right to prove that the City is acting at NEA's behest." (Opp. 10:5-7.)

3  The case supports no such thing.  Rather, in *Puente Arizona*, an immigrant advocacy group brought an

4  action against the state and county, challenging the constitutionality of the Arizona identity theft statutes,

5  which made it a crime to use another person's information with the intent to obtain employment.  *Id*. at

6  67.  The plaintiff group served a subpoena duces tecum on the Arizona Legislature and the former state

7  senator who sponsored the challenged statute.  *Id*. at 666.  The Legislature and senator produced a variety

8  of documents, but withheld others on legislative privilege and First Amendment grounds.  *Id*. at 667.  In

9  connection with *denying* the plaintiff group's motion to compel the production of privileged documents,[7]

10  the court first observed that, unlike here, no one contended that the requested documents were

11  disproportionate to the needs of the case.  *Id*. at 668.  Next, the court found that the requested documents

12  were relevant because "contemporary statements *by members of the decision making body*, minutes of its

13  meetings, or reports may also be relevant" to determine whether a statute violates the constitution.  *Id*.

14  (emphasis added) (to determine whether a state statute violates the Supremacy Clause by regulating a

15  preempted subject matter courts consider "any specific expressions of legislative intent in the statute itself

16  as well as the legislative history").  The motion, again, was denied on grounds of privilege.  *Id*. at 670.

17    Nothing in *Puente Arizona* stands for the proposition that Plaintiff is entitled to discovery from a

18  third-party, such as NEA, that was indisputably *not* a member of any decision-making body involved with

19  passing the statutes at issue here.  Moreover, as shown in NEA's opening brief, none of the document

20  requests and topics in the Subpoena are tailored to elicit documents or information about the enactment of

21  the statutes at issue here.  (NEA MTQ 9:18-10:13.)  As Plaintiff has failed to demonstrate that the

---

23  Affeld:      Okay.

24  Bertini:     And it hasn't been displayed yet, so no arrest has been made so it can't have gone to court.

     Affeld:      So, so as of today, there's been no adjudication that you're aware of to the effect that this graphic is obscene.
25                Am I right?

26  Bertini:     That's correct.

     (Worcester Decl., Exh. A, pp 5-7) (emphasis added.)  Notably, at no time did Defendant Bertini state that any actions he may
27  take were at the behest of NEA.

28  [7] Plaintiff mistakenly asserts that the court "enforced the subpoena," when it actually denied a motion to compel privileged documents that the subpoena sought.  (Opp. at 10:6); *Id*. at 670 ("The Court concludes that these emails are protected by the legislative privilege.").

1  Subpoena seeks relevant information, the Subpoena should be quashed.

2  **B.  THE SUBPOENA IS FATALLY OVERBROAD**

3  Plaintiff proceeds to set forth a hodgepodge of disjointed justifications for why his Subpoena is

4  not fatally overbroad – none of which are supported by the facts or the case law Plaintiff relies on.

5  Plaintiff first asserts that NEA's objections to the Subpoena are entitled to little weight, because

6  NEA has "an interest in the outcome of the underlying case." (Opp. 13:10-12.)  Once again, none of the

7  cases that Plaintiff cites support his position.  In each case cited by Plaintiff, a nonparty sought *costs*

8  related to complying with a subpoena, as opposed to objecting to the scope of the subpoena itself.  In

9  connection with deciding whether cost-shifting was appropriate – that is, whether the costs incurred were

10  "significant" – each case took into account whether the third party had an interest in the outcome of the

11  litigation.  In none of these cases did a court conclude that a third-party's purported interest in the outcome

12  of the underlying case was relevant to whether the scope of the subpoena itself was appropriate:

13  •  In *Cornell v. Columbus McKinnon Corp.*, No. 13-2188, 2015 WL 4747260 (N.D. Cal. Aug. 11,
14  2015) (Opp. 13:16-19), a Federal Express ("FedEx") employee who had been injured while
     performing his job duties at an airport sued the airport and others. *Id.* at *1. FedEx had refused to
15  comply with any discovery absent cost-shifting, as provided for in Rule 45. *Id.* The court ordered
     FedEx to comply and deferred ruling on the issue of cost-shifting. *Id.* When it finally addressed
16  FedEx's motion for costs associated with discovery, it noted that FedEx was the individual's
     employer at the time of the incident, and had filed a lien against any judgment or settlement in
17  plaintiff's favor in order to recoup worker's compensation benefits (which exceeded $200,000 and
     were growing). *Id.* at *3. Consequently, as "FedEx's interest in this case is therefore tantamount
18  to that of a party," and FedEx had the ability to pay, the court denied FedEx's motion for costs.
     *Id.* at *3, 5.
19

20  •  In *Tutor-Saliba Corp. v. United States*, 32 Fed. Cl. 609 (1995) (Opp. 13:13-15), nonparty Ellerbe
     Beckett, Inc. ("EBI") was the architect of a federal office building that was the subject of a
21  construction contract awarded to the plaintiff.  *Id.* at 609.  EBI and the plaintiff extensively
     negotiated the terms of an agreement to provide the discovery sought by the third-party subpoena
22  which did not include the costs of compliance. *Id.* at 609-10. When EBI threatened not to produce
     any documents unless the agreement provided for costs of compliance, the plaintiff refused and
23  threatened to file a motion to compel. *Id.* at 610. EBI then produced documents and sought its
     costs.  *Id.*  The court denied the request for costs noting that "[w]hen it was served with the
24  subpoena, EBI did not object to compliance and did not make any effort to indicate it would be
     seeking reimbursement of costs as a condition of compliance.  EBI did not move to quash or
25  modify the subpoena….[n]or did it object in writing to compliance as unreasonable." *Id.* at 612.

26

27  •  In *Balfour Beatty Infrastructure, Inc. v. PB & A, Inc.*, 319 F.R.D. 277 (N.D. Cal. 2017) (Opp.
     13:10-13) the defendant served a subpoena on nonparty URS Corporation seeking documents
28  related to the defendant's work on a project. *Id.* at 279. URS objected to the subpoena and the
     parties engaged in discussions regarding the scope. *Id.* URS moved for costs related to its

1   production and sanctions, after the defendant cancelled a deposition at the last minute. *Id.* at 280-

2   81. The court denied the vast majority of the requested costs, finding that URS had provided no

3   evidence that they could not bear the costs of production and that the complaint alleged that URS
    was involved in the underlying acts that gave rise to the lawsuit. *Id.* at 282. Specifically, URS had

4   been hired to ensure compliance with contractual specifications and the defendant was alleged to
    have failed to properly design aspects of the project within those specifications. *Id.* at 282-83.

5       As NEA timely objected to the Subpoena and is, to date, focused only on the propriety and scope

6   of the Subpoena, Plaintiff has provided no basis for this Court to discount NEA's well-founded objections

7   to the Subpoena itself.

8   **1.   Plaintiff has provided no justification for the extensive time frame of his Subpoena.**

9       Plaintiff's attempt to minimize the extensive time frame of his Subpoena also falls well short.

10  According to Plaintiff, "[t]he time frame of Zeleny's subpoenas *directly* corresponds to the time frame of

11  Zeleny's protests and NEA's efforts to stop those protests." (Opp. 14:9-11) (emphasis added.) According

12  to Plaintiff, he commenced his protests in 2005 (Zeleny Decl. ¶ 11), and yet his Subpoena seeks documents

13  from as far back as 1995 (*see* Lane Decl., Exh. A, Request No. 17, Topic No. 16), and the Subpoena's

14  general instructions with respect to producing documents require NEA to search the year 1999, as well.

15  (NEA MTQ 5:16-7:2.) Plaintiff did not even bother to provide a default time period in the Instructions &

16  Definitions to Plaintiff's topics of testimony, and so for ten of these topics, Plaintiff seeks testimony from

17  an undefined and unlimited period of time. (Lane Decl., Exh. A, Topic Nos. 1, 6-10, 13, 15, 19 & 20.)

18      The only other justification Plaintiff proffers for the extensive time frame of his Subpoena is that

19  the information it seeks is relevant. (Opp. 14:16-18.). As demonstrated above and in NEA's opening

20  brief, the information sought is not relevant to the claims in Plaintiff's Complaint, and hence provides no

21  justification for the Subpoena.[8]

22  **2.   Plaintiff's attempt to minimize the burden and cost of the Subpoena fails.**

23      Plaintiff's attempts to minimize the burden and costs of NEA's compliance with the overly broad

24

25

26  ---
    [8] Nor can Plaintiff justify the excessive scope of the Subpoena by the false claim that Plaintiff offered to limit the time frame of the Subpoena. (Opp. 14:18-20.) Plaintiff made no such offer and instead, declined to limit the time frame of the Subpoena

27  in any manner. This makes the situation vastly different than that in *Balfour Beatty*, 319 F.R.D. at 283, where a third party sought sanctions after producing documents. The court declined to award sanctions, noting that although the initial subpoena

28  contained no limiting time frames, prior to the production counsel agreed to limit the scope of the subpoena to a three-year period, and hence the subpoena did not provide a basis for imposing sanctions.

4845-2313-6392.1

1  Subpoena are illogical and ignore the realities of document collection and review.

2      Plaintiff first attempts to downplay the amount of data that the Subpoena requires NEA to collect

3  and review by referencing a previous litigation between the parties and asserting that the discovery sought

4  by the current Subpoena would be comparable to the discovery produced in that matter.  (Opp. 16:5-9.)

5  In so doing, Plaintiff fails to provide this Court with any information regarding the previous lawsuit,

6  including the causes of action asserted,[9] the scope of the discovery sought (including the time frame),

7  whether search terms were agreed to, and any negotiations between the parties regarding the scope of

8  discovery.  *(Id.)*  Instead, Plaintiff merely asserts that NEA produced 134 pages covering the time frame

9  2009 through 2011 (Affeld Decl. ¶ 3), and from this, Plaintiff makes the following leap:

10          The kind of information we would seek would be comprised of
approximately the same volume as NEA produced in the 2010-2011

11          litigation it filed against Mr. Zeleny, i.e., 134 pages.  That production would
suffice for the timeframe of the litigation.  About the same volume would

12          suffice for 2011-2014, the end of the unfounded criminal prosecution NEA
persuaded the DA's office to pursue.  About the same volume would suffice

13          for the period from 2007 to 2009.  A total of fewer than 1,000 pages of email

14          would be expected….

15  (Affeld Decl. ¶ 24.)  It is utterly opaque what Plaintiff means by "the same volume would suffice."  Of

16  the twenty-four requests for production, only four seek "documents sufficient" to demonstrate something

17  (Lane Decl. Exh. A, Request Nos. 17-20), the rest seek "all documents."  Plaintiff likewise fails to

18  articulate any cogent basis upon which he assumes that the search for documents responsive to a Subpoena

19  that seeks documents from 1995, 1999, and 2004 to present would result in the production of less than

20  1,000 pages.

21      More fundamentally, what NEA may ultimately produce bears little relationship to what the

22  Subpoena requires NEA to collect and review.[10]  Before NEA can run search terms, it needs to collect the

23  data and process it.  Otherwise, attachments, such as zip files and images such as PDFs, will not be

24  

---

25  [9] In fact, that case involved an action for trespass (Zeleny Decl. ¶ 25), and consequently involved a single cause of action
regarding just six days of activity.  (Worcester Decl. Exh. E.)  Defendant entered a general denial.  (Worcester Decl., Exh. F.)

26  Judgment entered in NEA's favor and Zeleny was ordered to pay $25,000 (a sum he has never paid.) (Worcester Decl., Exh.
G.)  Hence, the amount of documents produced in that case is hardly predictive of the volume that Plaintiff's extensive

27  Subpoena would require NEA to collect, review and produce.

28  [10] NEA agrees with Mr. Berliner that it is inconsistent with industry standards to collect and process all emails from an
organization. (Berliner Decl. ¶ 9.)  Unfortunately, while Plaintiff was apparently willing to tell Mr. Berliner that only
approximately five custodians are likely to have relevant data, Plaintiff never suggested that to NEA. (Berliner Decl. ¶ 18.)

Non-Party NEA's Reply in Support of its Motion to Quash
-10-                       Case No. 17-cv-07357-RS
4845-2313-6392.1

properly searched. (Worcester Decl., Exh. D ("In Exchange, a partially indexed item typically contains a file – of a file type that can't be indexed – that is attached to an email message.").) It appears that Mr. Berliner is proposing that NEA itself, as opposed to a vendor, collect the data (*i.e.*, run the search terms) and then export the results of those searches to a vendor or NEA's law firm. (Berliner Decl. ¶ 15.) Such a suggestion is curious, as it ignores best practices. *National Day Laborer Organizing Network v. U.S. Immigration & Customs Enforcement Agency*, 877 F. Supp. 2d 87, 108 (S.D.N.Y. 2012) ("most custodians cannot be 'trusted' to run effective searches"); Fed. R. Evid. 902(14) (allowing the authentication of electronic evidence by written affidavit of authentication of a "qualified person," who must at a minimum, check the "hash value" of the copy and that it is identical to the original). In light of Plaintiff's overly broad requests that seek, for example, all communications with news organizations regarding WebEx and Northern Light (business entities that NEA invested in), and all communications regarding the management or corporate governance of WebEx (a company in which NEA invested years before Plaintiff's protests ever began), Plaintiff's blithe dismissal of the significant effort and costs involved in complying with his Subpoena is without merit.

## CONCLUSION

In sum, Plaintiff is attempting to use his suit against the Defendants as a "hook" to obtain documents from NEA that have nothing to do with the constitutionality of the Defendants' actions. Plaintiff has failed to demonstrate that the two decades of documents that he seeks are relevant to his claims, and requiring NEA to comply with the overly broad Subpoena would hardly be proportionate. For all the reasons set forth above, as well as in NEA's Motion to Quash and Memorandum of Law in Support of Same, NEA respectfully requests that this Court quash Plaintiff's Subpoena, and issue a protective order to protect NEA and its current and former personnel from further subpoenas from Plaintiff.

**FOLEY & LARDNER LLP**

February 15, 2019                    /s Roger A. Lane
_____
Roger A. Lane
Attorneys for Non-Party
New Enterprise
Associates

1

PROOF OF SERVICE

2

     I hereby certify that on February 15, 2019, I electronically filed the foregoing document using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

3

4

5

                    /s/ Roger A. Lane
                    Roger A. Lane

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4845-2313-6392.1