# EXHIBIT A

McIntyre: Okay. Mr. Affeld, do you want to ask the Commander any questions?

Affeld: I do. We do have that problem. I don't anticipate we're going to need all two hours for today so…

McIntyre: Okay.

Affeld: …I'm willing to be patient to see if there's something we can do to stop…

McIntyre: I texted someone, I'll know in a second and then we will…

Rubens: Should we recess until we see what happens?

Affeld: …why don't we do that?

McIntyre: …yeah, that's fine. Let me…

Rubens: Do you want me to turn off the tape recording will we do that?

McIntyre: Give me three minutes. I'll be right back.

Affeld: How about if we do it this way. I think we're all in agreement we can resume recording. If anybody feels otherwise say so now, otherwise you're deemed that your previous consent is still operative. Okay?

Rubens: Okay.

Affeld: Commander, I want to start where you ended. You showed us Penal Code Section 313.1.

Bertini: Correct.

Affeld: And you also have a graphic from Mr. Zeleny's LiveJournal.

Bertini: Correct.

Affeld: The page in the lower righthand corner, there's a print date of July 21, 2015 at 4:04 p.m.

Bertini: Correct.

Affeld: Is that the date that you printed this out?

Bertini: Yes, sir.

Affeld: And did you personally do that or somebody else at the city?

Bertini: No. I did.

Affeld:     Was this something that you included or anybody else on behalf of the city included in any of the previous denials at the first instance around any of the other layers of appeal?

Bertini:    No.

Affeld:     You, you were aware of this for more than a year, but it didn't find its way into any of the appellate record until today?

Bertini:    That's correct.

Affeld:     Okay. And your point in including this graphic, it's dated December 14th, 2012. Do you see that?

Bertini:    Yes, sir.

Affeld:     And it depicts some individuals and some sexual activity?

Bertini:    Correct.

Affeld:     Your point is that a display of this kind in public might harm minors?

Bertini:    My point is that if it were to be displayed in public and we had a complaining parent of a minor who was exposed to it, that 313.1 could be a section that could be used to make an arrest or a prosecution.

Affeld:     And so it. Did Mr. Zeleny tell you that this graphic that's depicted from December 14, 2012 was going to be part of the protest?

Bertini:    My understanding was that I, this was the graphic that he was proposing to display on the video screen.

Affeld:     Okay. So it was the content of this graphic that you found as part of the grounds for denying Mr. Zeleny's application?

Bertini:    No, I just, I just bring that up now as another, another reason why. It was never, it was never brought up before. It was not in the record before.

Affeld:     Okay. The new reason today, regarding this graphic, has to do with the content of the graphic. Is that right?

Bertini:    That's correct.

Affeld:     Do you know if there's been any determination as to whether this graphic is obscene?

Bertini:    That would have to be determined in a court of law.

Affeld:     Has that happened?

6

Bertini: There've been no arrest. I'm talking about a criminal case.

Affeld: Okay.

Bertini: And it hasn't been displayed yet, so no arrest has been made so it can't have gone to court.

Affeld: So, so as of today, there's been no adjudication that you're aware of to the effect that this graphic is obscene. Am I right?

Bertini: That's correct.

Affeld: What is the definition of a special event for purposes of Mr. Zeleny's application?

Bertini: A special event is one in which a person or group is requesting special consideration from the city for an event that is of community, a community nature for people to come together or to have some kind of event within the City of Menlo Park that would require a permit. So which, which would require a permit if there were to be any kind of police required for street closures if there was to be any kind of music or any kind of display or, or entertainment that would be, that would be displayed. I mean I don't have the, the definition in front of me but I could certainly find it.

Affeld: Where do we find that definition

Bertini: That would be on the website.

Affeld: Which website?

Bertini: The City of Menlo Park website. Under special permits.

Affeld: Have you ever seen Mr. Zeleny before?

Bertini: Yes I have.

Affeld: You saw him when he protested previously in 2012 and 2013, am I right?

Bertini: Correct.

Affeld: When you did that, you saw him interacting with the public in the course of his protest, right?

Bertini: I did not personally see that, no.

Affeld: Did you ever see him talk to anybody?

Bertini: I did not see him talk, besides officers? No.

Affeld: How much time did you spend observing Mr. Zeleny?

7

Bertini: Fifty-five inches.

Affeld: Yeah, is that okay?

Bertini: I don't know. I just told you I don't know the, the size of the sidewalk.

Affeld: Does Mr. Zeleny need to get approval from the city regarding the content of his protest ahead of time?

Bertini: No.

Affeld: Have you ever met with anybody from NEA regarding the criminal prosecution of Mr. Zeleny?

Bertini: Not regarding the criminal prosecution of Mr. Zeleny, no.

Affeld: Have you met with NEA in any other capacity?

Bertini: Yes.

Affeld: In what, in what capacity?

Bertini: I met with the, all the stakeholders that were complaining about Mr. Zeleny's protests on two or three occasions.

Affeld: Who were the stakeholders?

Bertini: I don't know exactly who was involved but I know it was, it was the property owners, Stanford, it was NEA of the Rosewood property, I know the sheriff's department was there, the DA's office and I'm not quite sure who else was there.

Affeld: That was when Mr. Zeleny was protesting within that compound where NEA is, right?

Bertini: Correct.

Affeld: He moved from the front door to the parking lot when asked to do so by the Menlo, City of Menlo Park Police Department?

Bertini: That was before I was employed with the city.

Affeld: You have seen the records that indicate that?

Bertini: Correct.

Affeld: Then, Mr. Zeleny moved from the parking lot to outside of the compound, right?

Bertini: Correct.