David W. Affeld, State Bar No. 123922
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: (310) 979-8700

Attorneys for Plaintiff
Michael Zeleny

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY,<br><br>    Plaintiff,<br><br>    vs.<br><br>EDMUND G. BROWN, Jr., *et al.*,<br><br>    Defendants. | Case No. CV 17-7357 JCS<br><br>Assigned to:<br>The Honorable Richard G. Seeborg<br><br>Discovery Matters:<br>The Honorable Thomas S. Hixson<br><br>**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO MOTION TO QUASH OF NEW ENTERPRISE ASSOCIATES**<br><br>Date: February 28, 2019<br>Time: 10:00 a.m.<br>Courtroom: A (15th Floor)<br><br>[Filed Concurrently:<br>1.   Application to File Sur-Reply]<br><br>Action Filed: December 28, 2017<br>Trial Date:    November 18, 2019 |

    Zeleny submits this sur-reply to respond to an argument New Enterprise Associates ("NEA") asserts for the first time in its reply. Because NEA raised it only in reply, Zeleny did not have a chance to rebut it previously.

NEA's newly raised argument is an issue of apparent first impression: whether the truth of speech is relevant to whether the speech has "serious value" under the test for obscenity established by *Miller v. California*, 413 U.S. 15, 20-21 (1973) (the "*Miller* test").[1] According to NEA, truth is totally irrelevant because questions about truth "may have their place, but they are not part of the First Amendment." Reply at p. 5.

In the larger context of the First Amendment generally, this argument is plainly wrong. In defamation cases, the Supreme Court has frequently recognized—including in the very cases cited in *Miller*—that the truth of speech is directly relevant to its constitutional value. Similarly, in obscenity cases prior to *Miller*, the Supreme Court repeatedly emphasized the truth of speech as important to its protectability under the First Amendment.

Because the truth of Zeleny's protests is directly relevant to the redeeming constitutional value of his message, he should be allowed discovery to prove its truth.

**A.   The Supreme Court Has Long Held that Truth Is Relevant to the Constitutional Value of Speech.**

NEA cites no case directly addressing the question of whether truth bears on the "serious value" prong of the *Miller* test. Zeleny has not found any such authority either. This is no surprise, as the "serious value" prong has been largely neglected. *See* Edward John Main, *The Neglected Prong of the Miller Test for Obscenity: Serious Literary, Artistic, Political, or Scientific Value*, 11 S. Ill. U. L. J. 1159, 1662 (1987).  The place to tackle thorny constitutional issues of first impression is on the merits, with a full record, not on a discovery motion to decide whether a party can even make his record in the first place.

In First Amendment contexts other than the *Miller* test, the Supreme Court has long held that truth bears on the constitutional value of speech.   Established doctrine holds that "[f]alse statements of fact are . . . valueless," as they "interfere with the truth-seeking

---

[1] As set forth in the opening and opposition briefs, under *Miller*, speech may be prohibited as obscene if it (a) appeals to the "prurient interest" (b) depicts sexual material in a "patently offensive way"; and (c) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller*, 413 U.S. 24. The focus of this motion is on the third prong – *i.e.*, the "serious value" of the speech.

function of the marketplace of ideas." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988). This concept stems from the basic foundation of the First Amendment – *i.e.*, to encourage an "uninhibited marketplace of ideas *in which truth will ultimately prevail*." *Red Lion Broad. v. F.C.C.*, 395 U.S. 367, 390 (1969) (emphasis added).

> [T]here is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in uninhibited, robust, and wide-open debate on public issues. They belong to that category of utterances which are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit . . . is clearly outweighed by the social interest in order and morality.

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)). Thus, "the erroneous statement of fact is not worthy of constitutional protection." *Id.*; *see also Herbert v. Lando*, 441 U.S. 153, 171 ("[s]preading false information . . . carries no First Amendment credentials").

The Supreme Court has consistently applied the principle that false speech lacks redeeming constitutional value to identify various forms of unprotected speech, such as obscenity and defamation. Following *Chaplinsky*, the Court has described both obscenity and defamation as having "such slight social value *as a step to truth*" that they may be properly regulated or prohibited. *See Chaplinsky*, 315 U.S. at 571-572 (emphasis added); *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992); *Roth v. United States*, 354 U.S. 476, 481-82 (1957) (landmark obscenity case citing *Chaplinsky*). Indeed, the *Chaplinsky* formulation has carried through each iteration of the Court's test for obscenity. *See Roth*, 354 U.S. at 484-85. The Court has cited *Chaplinsky* for this proposition, *i.e.*, that false speech lacks value, at least a dozen times. *E.g.*, *R.A.V.*, 505 U.S. at 383; *Gertz*, 418 U.S. at 340; *Garrison v. State of La.*, 379 U.S. 64, 75 (1964); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975); *McDonald v. Smith*, 472 U.S. 479, 487 (1985) (Brennan, J., concurring); *Texas v. Johnson*, 491 U.S. 397, 430 (1989) (Rehnquist, J., dissenting); *cf. United States v. Alvarez*, 567 U.S. 709, 746 (Alito, J., dissenting) ("[t]ime and again, this Court has recognized that as a general matter false factual statements possess no intrinsic First Amendment value").

The Court in *Miller* relied on these same cases—recognizing that false speech lacks value—in developing its obscenity test, including the "serious value" prong.  It quoted the same, oft-cited passage of *Chaplinsky* in detailing the evolution of the obscenity test.  413 U.S. at 20-21.  It then cited the section of *Roth* that quotes *Chaplinsky* as support for its formulation of obscenity as lacking "serious . . . value."  *Id.* at 35.

There is every reason to think that the Court in *Miller* understood constitutional value in the same way as the multitude of cases before it, including those it relied upon.  To suggest that truth is "irrelevant" to the *Miller* test is to misunderstand *Miller* and the cases on which it is based.  Truth is, and always has been, directly relevant to the constitutional value of speech.

### B.     NEA's Argument Confuses the Issue.

To support the reductionist and erroneous soundbite that truth is supposedly *irrelevant*, NEA selectively parses snippets of *Chaplinsky*, and cites *Alvarez*, 567 U.S. 709, a case involving the Stolen Valor Act.  (Opp. at 5.)  Neither case supports NEA's position.

This case involves more issues than NEA acknowledges.  There certainly are Second Amendment issues – whether Zeleny can exercise his Second Amendment right to bear arms to dramatize his First Amendment protests, or whether California may validly inhibit the exercise of Second Amendment rights through limitations on closed and open carrying of firearms regardless of the impact on First Amendment and Second Amendment expression.  There are also issues about California's penal statutes and the City of Menlo Park's ordinance regulating permits for using firearms in video productions, and whether doing so amounts to content-based discrimination.  But critically important for purposes of NEA's motion to quash is a third set of issues, pertaining to whether *the content* of Zeleny's protest messages may be *suppressed as obscene*.  For NEA's argument to be correct, the truth of Zeleny's content would have to be irrelevant to the obscenity analysis.  NEA's argument is wrong.

As an initial matter, *Chaplinsky* said the exact opposite, and has been cited repeatedly for the opposite proposition.  As noted above, the Supreme Court itself, not to mention countless lower courts, has cited *Chaplinsky* at least a dozen times for the settled principle of law that false speech lacks constitutional value.  In contrast, NEA narrowly focuses on the

Court's holdings relating to a particular "fighting words" statute—something having no bearing on this case.

NEA's argument under *Alvarez* fares no better and misses the point entirely. A plurality in *Alvarez*, 567 U.S. at 721-22, confirmed—as the Supreme Court has long held—that the government cannot prohibit false speech outright. This is so because outright prohibitions tend to chill truthful speech, which offends the Constitution. *See Gertz*, 418 U.S. at 340. This case, however, does not involve a prohibition on false speech at all.

Instead, the issue is whether the City of Menlo Park can prohibit Zeleny's protests *as obscene*, and according to NEA, whether the City can do so even if Zeleny's protests are truthful. The analysis of whether Zeleny's speech is obscene has to turn on whether the speech has redeeming constitutional value under the *Miller* test. As the plurality recognized in *Alvarez*, 567 U.S. at 719, where the speech is regulated for reasons other than its falsity alone – *i.e.*, obscenity – "the falsity of the speech at issue was *not irrelevant* to our analysis." So too here. NEA does not cite a single case holding that truth is irrelevant to the constitutional value of speech. The Court has long held that truth is directly relevant.

Thus, Zeleny should be permitted to establish the truth of the content of his protests through discovery.

### C.   Conclusion.

Since this matter poses an issue of first impression regarding core Constitutional rights, the Court should not stifle Zeleny at the discovery stage. The record should be developed fully. The burden on the litigants and third parties would be minimal in comparison to the importance of giving this Court and any reviewing courts the benefit of a full record.

Dated:  February 21, 2019              Respectfully submitted,

                                       s/ Damion Robinson
                                       David W. Affeld
                                       Damion D. D. Robinson
                                       Affeld Grivakes LLP
                                       Attorneys for Plaintiff Michael Zeleny

PLAINTIFF'S SUR-REPLY IN OPP. TO MOT. TO QUASH

**PROOF OF SERVICE**

I hereby certify that on February 21, 2019, I electronically filed the foregoing document using the Court's CM/ECF system. I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

                                                                   s/ Damion Robinson
                                                                   Damion Robinson