UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY,<br>　　　　Plaintiff,<br>　　v.<br>EDMUND G. BROWN, et al.,<br>　　　　Defendants. | Case No. 17-cv-07357-RS (TSH)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH**<br><br>Re: Dkt. No. 48 |

　　　　Plaintiff Michael Zeleny has sued Defendants Attorney General Xavier Becerra, the City of Menlo Park, and the City's Police Commander Dave Bertini for five claims for relief. Complaint, ECF No. 1.[1] He alleges that Min Zhu, a prominent Silicon Valley executive and co-founder of WebEx, raped his daughter Erin in 1988 when she was 14. Zeleny learned of this conduct when he developed a personal and professional relationship with Erin from the early 1990s to 2000. He started protesting Zhu in 2005, then broadened his protests to include others who did business with Zhu, including non-party New Enterprise Associates ("NEA"), which invested in WebEx and, Zeleny says, whose senior management continues to fund and collaborate with him. Zeleny's protests include in-person demonstrations, musical performances, multimedia posts on YouTube, and internet blogging. The protests are intended to be provocative, to highlight the moral bankruptcy of Zhu's cohorts.

　　　　Zeleny alleges that the objects of his protests have tried to silence him. For example, he says that WebEx filed a lawsuit against him concerning posts he made on a Yahoo! message board, and the case was dismissed under California's anti-SLAPP statute. When that failed,

---

[1] He also sued then-Governor Edmund G. Brown, Jr., but Brown has been dismissed. ECF No. 37.

WebEx called the San Francisco Police, who arrested and then released Zeleny without filing any charges. Starting in 2009, Zeleny began protesting NEA in front of its headquarters in Menlo Park, and in 2010 NEA tried and failed to get a TRO against him. Later, when he moved his next series of protests to the sidewalk in front of the property housing NEA's headquarters, he alleges the City of Menlo Park placed restrictions on his protests and threatened him with criminal prosecution if he did not acquiesce. And he claims that the District Attorney of San Mateo County charged him with a bogus count of carrying a concealed weapon during one of his protests – at the behest of NEA, which called in political favors.

Relatedly, prior to 2012, it was legal to openly carry an unloaded firearm in public in California. In 2012 and 2013, new legislation went into effect that restricts the open carrying of an unloaded gun or other firearm outside of a vehicle, except for certain entertainment purposes. The City Menlo Park adopted a municipal policy requiring that a person obtain a special event permit before engaging in entertainment-related open carry. Despite Zeleny's repeated efforts to obtain such a permit for him to openly carry an unloaded gun during his protests, the City has denied all of his applications. He thinks the real reason for the denials and the threats of prosecution is that the City disagrees with the substance of his protest message and does not believe his allegations about Zhu and WebEx's and NEA's tacit approval.

Zeleny asserts five claims for relief. First, he sues the City and Bertini under the First Amendment, alleging they have prohibited him from protesting based on the content of his speech, which they contend is obscene as to minors. (Some of the cartoons Zeleny has used in his protests depict Zhu engaged in sexual activity. An example is attached as Exhibit A to the complaint.) Second, he sues the City and Bertini under the First Amendment, arguing they have improperly interpreted state law to require a municipal permit before someone can engage in entertainment-related open carry, and in any event the way the City has distinguished between permissible and impermissible entertainment purposes violates the First Amendment. Third, he sues the City and Bertini under the First and Second Amendments. This claim is similar to the second claim for relief, except it also relies on the right to bear arms and contains more allegations about the municipal policy being vague and indefinite and that the City's application of it to him is content-

2

1  based. The fourth claim, again against the City and Bertini, is under 42 U.S.C. § 1983, claiming
2  they have violated his rights under the First and Second Amendments by stifling his speech and
3  right to bear arms to silence his message and mode of expression. His fifth claim is against
4  Becerra and is a constitutional challenge under the First and Second Amendments to the state laws
5  governing open carry for expressive purposes.

With that background, on January 4, 2019, Zeleny served a subpoena for documents and deposition testimony on NEA. There are 21 topics of testimony and 24 requests for production ("RFPs"). In broad terms, and as usefully summarized by Zeleny, *see* ECF No. 53 at 6-7, the subpoena seeks: (1) evidence related to Zeleny's protests against NEA and Zhu; (2) evidence going to the merit of Zeleny's protests, including his allegations against Zhu, NEA and its executives, and NEA's knowledge of the underlying facts; and (3) NEA's efforts to use legal and governmental processes to stop Zeleny's protests, including legal proceedings and efforts to influence local governments. NEA moved to quash the subpoena. ECF No. 48. The Court held oral argument on March 7, 2019, and this order follows.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." Rule 45(d)(3)(A) states in relevant part that the court "must quash or modify a subpoena that" "subjects a person to undue burden."

Let's start with relevance. The Court puts aside Zeleny's fifth claim for relief, which is a challenge to California's laws governing the public bearing of arms. It is impossible to see how anything in NEA's possession is relevant to that claim. Zeleny seems to agree, as his opposition to the motion to quash focuses only on his claims against the City.

Turning to those, most of what Zeleny seeks is irrelevant. Anything in NEA's possession that the City never saw could not have been part of the City's motive in allegedly stifling Zeleny's protests (which is part of the allegations in his first, third and fourth claims for relief). For example, "[d]ocuments sufficient to show the relationship between NEA and Min Zhu from 1995 to the present" (RFP 17) or "[a]ll documents [r]egarding any and all responses by WebEx and/or NEA to allegations of rape, child abuse, sexual abuse, molestation, or other abuse allegedly

3

perpetrated by Min Zhu on Erin Zhu" (RFP 7) are irrelevant if the City never saw them. In other words, even if it's true that NEA is sitting on a huge pile of damning evidence about Zhu and NEA's own complicity in dealing with him, so what? Zeleny's claims are not against Zhu or NEA but against the City and its police commander. Zhu and NEA's conduct is relevant, if at all, only to the extent the City knew about it and the information potentially influenced the City's approach to Zeleny's protests.

The Court does believe, however, that NEA's communications with the City about Zeleny or his protests are relevant. Zeleny's third and fourth claims allege that the City is not neutrally enforcing municipal policy but is targeting him for the content of his protests. The specific allegations in the complaint provide reason to believe there may be communications between NEA and the City that could potentially show that the City's neutral explanations are pretextual. He alleges that NEA attempted to use the state courts to silence him with TROs. Compl. ¶ 55. Zeleny also alleges that "NEA called in political favors in 2012 to have Zeleny prosecuted under California's firearm laws in an effort to stifle Zeleny's protests." *Id*. ¶ 59. These allegations make plausible Zeleny's accusation that NEA may also have contacted the City in an attempt to stifle the protests.

Of course, that accusation could be false. It remains undisputed, however, that Zeleny protested in front of NEA's headquarters using sexually graphic cartoons and openly carrying a gun. Zeleny Decl., ECF No. 53-1, ¶ 20 ("Beginning in or around late 2009, I began carrying unloaded firearms as part of my protests.") It is not unreasonable to believe NEA may have complained about this to the City – many companies would probably complain if a vocal and graphic protester of their company were close to their headquarters and carrying a gun right out in the open. Such complaints, and the City's responses, could be relevant to Zeleny's allegations concerning the City's true reasons for denying him permits and threatening to prosecute him. He could point to such complaints and the City's responses and say the real reason he was denied a permit wasn't, for example, that he requested to park a truck on the median, *see* ECF No. 53-1, Ex. 5, but that one of the world's largest venture capital firms with extensive connections disliked the adverse attention. The existence of such communications is therefore relevant to show whether

4

the City is trying to silence him because of his unwelcome message.

By contrast, documents other than communications between NEA and the City are not relevant under any theory. For example, NEA's internal documents about its lobbying efforts (covered by RFP 9) and NEA's communications with San Mateo County (part of RFP 8) might shed light on NEA's political connections and lobbying efforts generally, but they are not evidence of why the City of Menlo Park did something.

Zeleny argues that his first claim for relief – seeking a declaration that the cartoons he used are not obscene as to minors – justifies broad discovery into what NEA knows about whether Zhu is a child rapist. But here, Zeleny is wrong. Whether the cartoons have literary, political or artistic value and therefore are not obscene, *see Miller v. California*, 413 U.S. 15, 24 (1973), does not turn on whether Zhu actually did rape his daughter or whether NEA actually is morally bankrupt in continuing to deal with him. The truth of those accusations is irrelevant because obscenity and defamation are simply different categories of proscribable speech. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). So, whatever documents or information NEA may have about the merits of Zeleny's protests, unless they were communicated to the City, would be irrelevant to both the obscenity inquiry and to why the City took the actions it did.

Turning to burden and proportionality, the time frame of the subpoena is overly broad. The earliest protest near NEA's headquarters in Menlo Park identified in the Complaint was in 2009. Compl. ¶ 54. Paragraph 11 of Zeleny's declaration states that he began publicly protesting Zhu and NEA in 2005, but the declaration first identifies a protest outside NEA's headquarters in Menlo Park in paragraph 16 as taking place 2010. There is no reason for NEA to search for and produce communications with the City prior to 2009 because there is no reason to believe it would have complained to the City about Zeleny before then.

NEA argues that even with a more limited time frame, the burden of producing documents is still excessive. However, this argument is based on a declaration that assumes NEA would conduct ediscovery by providing the entire contents of all of its email servers to its ediscovery vendor. Valachovic Decl., ECF No. 48-1, ¶ 8. No one does ediscovery that way. Instead, NEA should conduct a reasonable investigation to determine which of its personnel are likely to have

5

had communications with the City concerning Zeleny or his protests and search those custodians' documents, as well as searching any non-custodial sources that may have communications with the City.

Finally, the Court must consider Rule 26(b)(2)(C)(i)'s requirement that "the court must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less convenient . . ." The communications between NEA and the City should, one assumes, also be in the City's possession, and it is normally more convenient for a party to obtain documents from other parties before subpoenaing a non-party such as NEA. *See Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.").

However, there are some practical problems with telling Zeleny he must get communications between NEA and the City exclusively from the City. In the decade since 2009, the City may not know every individual NEA may have communicated with, some of those employees may have left, and given this period of time the City may not have retained all of the communications. At oral argument the City stated that its IT department ran email searches using Zeleny's name as a search term, but the City was unable to make any representations concerning its document retention practices since 2009. Accordingly, it is not clear that Zeleny could obtain a complete set of communications between NEA and the City from the City. Given the history between Zeleny and NEA, it is much more likely that NEA will be able to identify its personnel who were involved in the response to Zeleny's protests, and indeed at oral argument NEA indicated it had identified its relevant document custodians. Given NEA's likely superior ability to identify its relevant custodians and the uncertainty that the City has retained all of the relevant communications, it is appropriate for Zeleny to seek these communications from both the City and NEA.

Accordingly, the Court **ORDERS** as follows:

(1) NEA must search for and produce any communications with the City of Menlo Park from 2009 to the present concerning Zeleny or his protests. Given the fact discovery cutoff

of April 19, 2019, *see* ECF No. 58, NEA must complete this document production within 30 days.

(2) NEA must produce a Rule 30(b)(6) witness for deposition[2] on the following subjects: (a) NEA's communications with the City of Menlo Park concerning Zeleny or his protests, (b) documents NEA produces in response to this order, (c) how NEA searched for documents to produce in response to this order.[3]

(3) The remainder of the subpoena is **QUASHED**.

**IT IS SO ORDERED.**

Dated: March 7, 2019

THOMAS S. HIXSON
United States Magistrate Judge

---

[2] The parties agree, and the Court orders, that the deposition should take place no sooner than a week after the document production so that counsel can prepare appropriately for the deposition.

[3] The third topic – how NEA searched for documents – may not require a deposition. If NEA provides a declaration describing its search method, and if Zeleny agrees the declaration is sufficient, the parties can stipulate out of a deposition on this topic.

7