David W. Affeld, State Bar No. 123922
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:     (310) 979-8700

Attorneys for Plaintiff
Michael Zeleny

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY, | Case No. CV 17-7357 JCS |
| Plaintiff, | <u>Assigned to</u>: The Honorable Richard G. Seeborg |
| vs. | <u>Discovery Matters</u>: The Honorable Thomas S. Hixson |
| GAVIN NEWSOM, *et al.*, | **STIPULATION TO FILING OF FIRST AMENDED COMPLAINT** |
| Defendants. | [Proposed Order filed concurrently]. |
| | Action Filed:  December 28, 2017 Trial Date:     November 18, 2019 |

- 1 -

1

**STIPULATION**

2        Plaintiff Michael Zeleny ("Plaintiff") and defendants Xavier Becerra, the City of

3    Menlo Park, and Dave Bertini (collectively, "Defendants") hereby stipulate pursuant to

4    Federal Rule of Civil Procedure 15(a)(2) to permit Plaintiff to file a First Amended

5    Complaint.  Plaintiff and Defendants are referred to herein collectively as the "Parties" and

6    each as a "Party."

7        The proposed First Amended Complaint is attached hereto as **Exhibit 1**.

8

9    **I.      RECITALS**

10       1.      The Parties have not made any previous amendments to the pleadings and have

11   not previously sought leave to amend.

12       2.      Plaintiff filed his Complaint in this action on December 28, 2017, asserting

13   claims against Defendants and Governor Edmund G. Brown ("Brown").  Plaintiff asserted

14   claims against the City of Menlo Park and Dave Bertini for violation of his rights under the

15   First, Second, and Fourteenth Amendments to the United States Constitution, pursuant to 42

16   U.S.C. § 1983.  Plaintiff sued former Governor Edmund G. Brown, Jr. and Attorney General

17   Xavier Becerra, in their official capacities, for purposes of asserting a facial challenge to

18   California Penal Code sections 25510, 26350, 26375, 26400, and 26405.

19       3.      In substance, Plaintiff's claim against the City of Menlo Park and Dave Bertini

20   alleged that those defendants were involved in an effort to stop Plaintiff's protests for the

21   benefit of New Enterprise Associates, Inc. ("NEA").

22       4.      The Court dismissed Governor Brown from this action pursuant to a Motion to

23   Dismiss, which Plaintiff did not oppose as to Governor Brown.

24       5.      The Parties participated in an early settlement conference before Magistrate

25   Judge Nathanael Cousins on May 17, 2018 and a follow-up call in July 2018.  They were

26   unsuccessful in resolving the matter.

27       6.      The Court issued its scheduling order in this case on June 14, 2018, setting a

28   trial date of November 18, 2019.

7.     On January 11, 2019, Plaintiff served discovery requests on defendants the City of Menlo Park and Bertini requesting, among other things, "[a]ll Documents Relating Communications with NEA Relating to . . .  Zeleny."

8.     Zeleny also served subpoenas on NEA and its executive Scott Sandell.  NEA moved to quash the subpoena directed to it, and briefing on that motion is still underway.

9.     On or about March 5, 2019, the City of Menlo Park made an initial production of documents in response to Plaintiff's Requests for Production.

10.    On March 19, 2019, Plaintiff took the deposition of Chief Bertini, individually and as the Rule 30(b)(6) designee of the City of Menlo Park.

11.    Plaintiff contends that the documents produced by the City of Menlo Park, and confirmed in Chief Bertini's deposition, evidence a conspiracy between NEA, the City of Menlo Park, and Chief Bertini to stop Zeleny from engaging in his peaceful protests.

12.    Zeleny contends that this evidence supports claims for (a) conspiracy to violate 42 U.S.C. § 1983, *see Franklin v. Fox.*, 312 F.3d 423, 441 (9th Cir. 2002) ("[a] private individual may be liable under [42 U.S.C.] § 1983 if she conspired or entered joint action with a state actor"); and (b) conspiracy to violate civil rights under 42 U.S.C. § 1985(3), *see Fargaza v. FBI*, 916 F.3d 1202 (9th Cir. 2019).

13.    The City of Menlo Park and Chief Bertini deny the existence of any conspiracy.

14.    On March 21, 2019, Plaintiff requested that Defendants stipulate to Plaintiff filing a First Amended Complaint to name NEA as a defendant on claims for conspiracy to violate 42 U.S.C. § 1983 and conspiracy in violation of 42 U.S.C. § 1985(3).  Plaintiff provided Defendants a draft First Amended Complaint on March 26, 2019.

15.    All Defendants have stipulated to the filing of Plaintiff's First Amended Complaint.

## II.    BASIS FOR STIPULATION

16.    Federal Rule of Civil Procedure 15(a)(2) provides that a pleading may be amended "with the opposing party's written consent."  Amendment occurs automatically if all

parties consent. *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1006-07 & n.3. A party's right to amend its pleadings is applied with "extreme liberality." *Sonoma County Ass'n of Retired Empl'ees v. Sonoma County*, 708 F.3d 1109, 1117.

## III.   STIPULATION

Based on the foregoing, the Parties hereby stipulate and agree as follows:

17.    Defendants consent to Plaintiff filing the First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

18.    The First Amended Complaint shall be deemed filed upon approval of this stipulation by the Court.

19.    Defendants shall have 14 days from the date of such approval to answer or otherwise respond to the First Amended Complaint.

20.    The Parties jointly apply for an order in the form submitted herewith approving this stipulation.

**So Stipulated.**

Dated:  March 21, 2019                            Respectfully submitted,

s/ Damion Robinson
David W. Affeld
Damion D. D. Robinson
Affeld Grivakes LLP
Attorneys for Plaintiff Michael Zeleny

s/ Noreen P. Skelly
Noreen P. Skelly
Office of the Attorney General
Attorneys for Defendant Xavier Becerra

s/ Todd H. Master
Todd H. Master
Howard Rome Martin & Ridley LLP
Attorneys for Defendants the City of Menlo Park
and Dave Bertini

**Exhibit 1**

1  AFFELD GRIVAKES LLP
   David W. Affeld (SBN 123922)
2      dwa@agzlaw.com
   2049 Century Park East, Suite 2460
3  Los Angeles, California 90067
   Telephone:    (310) 979-8700
4  Facsimile:    (310) 979-8701

5  Attorneys for Plaintiff Michael Zeleny

6

7

8                    **UNITED STATES DISTRICT COURT**

9             **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11  MICHAEL ZELENY, an individual,      )   CASE NO.: CV 17-7357 JCS
                                        )
12              Plaintiff,              )
                                        )
13      v.                              )   **FIRST AMENDED COMPLAINT FOR**
                                        )   **DECLARATORY AND INJUNCTIVE**
14  GAVIN NEWSOM, an individual, in his )   **RELIEF**
    official capacity; XAVIER BECERRA, an )
15  individual, in his official capacity; CITY )
    OF MENLO PARK, a municipal          )
16  corporation; and DAVE BERTINI, an   )
    individual, in his official capacity, )   DEMAND FOR JURY TRIAL
17                                       )
                                        )
18              Defendants.             )
                                        )
19  _____   )

20

21              Plaintiff Michael Zeleny alleges as follows:

22                          **INTRODUCTION**

23         1.      This case is brought to challenge the constitutionality of California statutes

24  restricting Plaintiff's rights to bear arms under the Second Amendment while engaging in, and as

25  part of, entertainment events and media productions of peaceful, public speech on matters of

26  public concern or matters of political, social, or other concerns to the community, or issues of

27  significant importance to the public as a whole, as protected by the First Amendment. This case

28  also challenges the application, by the City of Menlo Park (the "City"), of California statutes

                                    – 1 –

restricting Plaintiff's rights to bear arms under the Second Amendment while engaging in, and as part of, entertainment events and media productions of peaceful, public speech on matters of public concern or matters of political, social, or other concerns to the community, or issues of significant importance to the public as a whole, as protected by the First Amendment.  Lastly, this case challenges state statutes and municipal policies that have been seized upon by the City, which has imposed unlawful, content-based prior restraints, backed by the threat of criminal prosecution, to stifle Plaintiff's Constitutionally protected speech.

2.      Plaintiff Michael Zeleny ("Zeleny" or "Plaintiff") has been making lawful public protests in an effort to expose grave wrongdoing by a prominent Silicon Valley executive, Min Zhu, and those individuals and entities who have willingly continued to do business with Min Zhu despite knowing about his misconduct.  Min Zhu's cohorts include New Enterprise Associates, Inc. ("NEA"), present and former members of NEA's senior management, WebEx Communications, Inc. ("WebEx"), and present and former members of its senior management. The point of Zeleny's protests is to express the view that Min Zhu's wrongdoing, and the conduct of NEA and WebEx senior management in turning a blind eye to it, should disqualify them from any involvement in publicly traded companies.

3.      Zeleny's protests have sought to publicize allegations that Min Zhu repeatedly raped his daughter Erin Zhu when she was 14 years old.  Other Silicon Valley executives and investors, including NEA, WebEx, and their senior management, became aware of Min Zhu's incestuous, pedophilic assaults, but have nevertheless continued to do business with him.  Zeleny has been protesting to expose Min Zhu's despicable conduct and the corruption of Min Zhu's cohorts for condoning it.

4.      To amplify his message, Zeleny previously conducted protests at which he lawfully carried unloaded firearms.  Zeleny also used simulated, non-explicit images and videos of Min Zhu's heinous conduct. In compliance with entertainment event and film and video production exemptions to recently enacted California bans on the carrying of unloaded firearms, Zeleny has created, and intends to continue creating, multimedia video and live entertainment events to disseminate his message.

5.      The targets of Zeleny's protests have attempted to sweep Min Zhu's misdeeds and NEA's and WebEx's knowledge of them under the rug.  They have enlisted the help of local law enforcement to suppress Zeleny's speech.  In 2012, they responded to Zeleny's protests by having him arrested and criminally prosecuted  for supposed violations of California open and/or concealed carry laws.  Zeleny was acquitted after a bench trial.

6.      Despite having failed in the earlier prosecution, the City continues to threaten further prosecution if Zeleny resumes his protests.  The City asserts that Zeleny is required to have a permit from the City for his events in order to qualify for state law exemptions to the firearm carry ban.  Yet, the City refuses to grant Zeleny a permit for his entertainment events, even though he is willing to comply with lawful time, place, and manner restrictions. Indeed, the City refuses even to advise Zeleny *what the requirements are* for seeking a permit. Instead, the City has made clear that it will not grant Zeleny a permit because it considers his message offensive, and that if he continues his protests, the City will prosecute him for violating California's obscenity laws and its open and/or concealed carry statutes.

7.      Zeleny files this action to seek a declaration that the California statutes invoked against him are unconstitutional.  Zeleny also seeks a declaration that the California statutes as applied against him by the City are unconstitutional.  Zeleny contends that the People of the State of California and the Menlo Park Police Department have violated and threaten further violation of Zeleny's rights under the First, Second, and Fourteenth Amendments to the United States Constitution and provisions of the California State Constitution.  Furthermore, Zeleny's exercise of his Constitutional rights arises in connection with a public issue or an issue of public interest.  Thus Zeleny sues under 42 U.S.C. § 1983 for violation of his civil rights.

8.      Zeleny challenges the facial validity of California statutes restricting the public display of unloaded firearms, California Penal Code §§ 26400 and 26350. Plaintiff also challenges the interpretation of California Penal Code §§ 25510, 26400, 26405, 26350, and 26375 by local authorities in the City of Menlo Park, as applied to Plaintiff under the particular circumstances of this case, and to the City's adoption and enforcement of municipal policy as content-based restrictions on his protected speech.

–3–

**JURISDICTION AND VENUE**

9.     This action arises under the United States Constitution, particularly the First, Second, and Fourteenth Amendments, and the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

10.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

11.     This Court has authority to grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

12.     This Court has authority to issue the requested injunctive relief pursuant to 42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

13.     This Court has authority to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

14.     This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a), and it is authorized to award attorneys' fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

15.     Each of Defendant's unlawful acts alleged herein occurred in the State of California and within the Northern District of California.

16.     Venue is proper in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the instant action occurred in Menlo Park, California.

**THE PARTIES**

17.     Zeleny is a citizen and resident of Los Angeles, California.  Zeleny is an internationally renowned researcher of the history and technology of firearms, and a holder of a California Certificate of Eligibility (COE), which certifies that the California Department of Justice (DOJ) has checked its records and determined that he is not prohibited from acquiring or possessing firearms at the time the firearms eligibility criminal background check was performed. A COE is a prerequisite licensing/permit requirement for all prospective licensed firearms dealers, licensed ammunition vendors, manufacturers, certified instructors, gun show promoters, explosive

–4–

permit holders, and other firearm-related employment activities, including any agent or employee of a vendor who handles, sells, or delivers firearms and ammunition. Zeleny has never been convicted of a felony or misdemeanor offense.

18.     Defendant Xavier Becerra (hereinafter "Becerra") is the Attorney General of the State of California.  Plaintiff is informed and believes, and on that basis alleges, that Becerra is a citizen and resident of the State of California.

19.     Defendant City of Menlo Park (hereinafter "City") is a municipal corporation duly organized and existing under the laws of the State of California and located within the Northern District of California.

20.     Defendant Dave Bertini (hereinafter "Bertini") is and was at all relevant times the Commander of the Menlo Park Police Department.  He committed the acts complained of herein while acting in his official capacity as Police Commander.  Plaintiff is informed and believes, and on that basis alleges, that Bertini is a citizen and resident of the state of California and the Northern District of California.

21.     In all of their actions and omissions alleged below, the foregoing Defendants were acting under color of state law and are being sued in their official capacities pursuant to *Ex Parte Young*, 209 U.S. 123 (1908).

22.     Defendant New Enterprise Associates, Inc. (hereinafter, "NEA") is a Delaware corporation with its principal place of business in Menlo Park, California.  NEA bills itself as the largest and most prominent venture capital firm in the world.

23.     At all relevant times alleged herein, Defendant NEA conspired with defendants City and Bertini for the purpose of violating Zeleny's constitutional rights under the First, Second, and Fourteenth Amendments to the United States Constitution.

## FACTS

### Min Zhu's Heinous Conduct

24.     Min Zhu was a prominent Silicon Valley executive who worked in the high-tech industry in California from the late 1980's until May 2005.  He was a founder, President, and

Chief Technology Officer of WebEx, an Internet technology company that became publicly traded on NASDAQ in 2000.

25.    Plaintiff is informed and believes, and on that basis alleges, that since May 2005, Min Zhu has continued to work in the high-tech industry based out of the People's Republic of China, and that Silicon Valley executives, including current and former NEA senior management, continue to fund him and collaborate with him in his ventures.

26.    Plaintiff is informed and believes, and on that basis alleges, that in or about August and September of 1988, Min Zhu repeatedly raped his daughter Erin Zhu, who was 14 years old at the time.  At the time, Erin Zhu had been cut off from contact with anyone outside the home.  Her mother was away undergoing medical treatment in China.  While Erin Zhu was isolated and helpless, Min Zhu raped her for a period of four weeks, until his wife returned to California in September of 1988.

27.    Erin Zhu testified about these events under oath in 2003.  Min Zhu was afforded multiple opportunities to deny her testimony, but he has never disputed it.  In early 2000, Erin Zhu successfully pursued a claim against her father, Min Zhu, for childhood sexual abuse. Erin Zhu settled her claim against Min Zhu on confidential terms.

**Zeleny Becomes Aware of Min Zhu's Conduct**

28.    Zeleny became aware of Min Zhu's monstrous conduct when he developed a personal and professional relationship with Erin Zhu from the early 1990s to 2000.  During the time that Erin Zhu and Zeleny were involved, romantically and in business, Erin Zhu told Zeleny about the horrific abuse she suffered at the hands of her father, Min Zhu.

29.    Erin Zhu also told Zeleny about posts she had made on the Usenet newsgroup alt.sexual.abuse.recovery in 1991 and 1992.  Erin Zhu's posts corroborated what she had told Zeleny.  The posts can be found at: https://groups.google.com/forum/?hl=en#!search/ erin$20zhu$20sexual$20abuse/

30.    Erin Zhu also testifed about these events under oath in deposition.  Her deposition testimony can be found at: https://youtu.be/QgmWMGG3qgE/.

31.     Erin Zhu requested that Zeleny help her pursue claims against her father for childhood sexual abuse.  Zeleny is informed and believes, and on that basis alleges, that Min Zhu paid Erin Zhu a substantial sum of money as part of a confidential settlement to resolve her claims in April 2000.

**NEA's Support of Min Zhu Despite Knowledge of the Allegations of His Conduct**

32.     NEA provided venture capital support to WebEx from its early stages, through and beyond its initial public offering in 2000.

33.     NEA continued to do business with Min Zhu through 2005, when Zeleny began his public protests.  On May 2, 2005, during a WebEx Experience conference in San Francisco, Zeleny protested against the coverup of Min Zhu's rape of his daughter.  The next day, WebEx cancelled its conference.  It never held another user conference.

34.     According to *Breaking News*, posted on ConferencingNews.com on May 3, 2005, WebEx shut down its user conference in response to Zeleny's protest outside the Westin St. Francis in San Francisco the day before. The archived posting reporting this event can be found at https://web.archive.org/web/20050507090846/http://www.conferencingnews.com/breakingnews/11.

35.     A week later, this report was corroborated by another conference attendee, who stated "that the conference was cancelled because a protestor with guns was outside the event and was consequently arrested Monday night."  The archived posting of this attendee's report can be found at http://web.archive.org/web/20070225101509/conferblog.com/public/item/91268.

36.      On May 13, 2005, after failing to get a restraining order against future protests by Zeleny, WebEx announced Min Zhu's sudden "retirement" and his relocation to China. The archived posting of this document can be found at https://web.archive.org/web/20051109144958/http://www.webex.com:80/pr/pr340.html.  Zeleny is informed and believes, and on that basis alleges, that the management of WebEx encouraged Min Zhu to "retire" as a result of Zeleny's public disclosure of Min Zhu's heinous conduct.

37.      On September 23, 2005, *Private Equity Week* announced the formation of Northern Light, a venture capital fund co-founded in China by Min Zhu, in partnership with Scott

Sandell of NEA.  In commenting on this announcement on the same day, *China Venture News* reported: "What's missing in the *PrivateEquityOnline* article or any NEA release is any mention of the previous controversy surrounding NEA's venture partner, Min Zhu, who joined NEA in 2004, after his forced resignation as WebEx President and Director."  The archived posting of this report can be found at https://web.archive.org/web/20110314194905/http://www.chinaventurenews.com/50226711/nea_invests_in_china_vc_firm_northern_light.php.

38.     Following Min Zhu's departure from WebEx and his flight from the United States, Zeleny emailed various senior management of NEA to put them and NEA on direct, personal notice of Min Zhu's abuse of Erin Zhu.

39.     NEA refused to disavow Min Zhu.  Zeleny is informed and believes, and on that basis alleges, that NEA has continued to do business with Min Zhu, who is now ensconced in the Peoples' Republic of China.  In particular, C. Richard "Dick" Kramlich, a former Chairman and Co-Founder of NEA, moved to Shanghai in January 2008 to collaborate with Min Zhu, long after Zeleny brought the facts of Min Zhu's sexual depravity to the attention of NEA.  See the report published in *San Francisco Business Times* on June 29, 2008, at https://www.bizjournals.com/sanfrancisco/stories/2008/06/30/focus1.html?page=all.  Zeleny is informed and believes, and on that basis alleges, that NEA has sought to suppress media reports concerning the causes and circumstances of Min Zhu's departure from WebEx and the United States.

**Zeleny's Protests Against Min Zhu and His Enablers**

40.     Because of the foregoing, Zeleny believed that Min Zhu was categorically unfit to serve as an officer of a publicly traded company.  Zeleny also believed that anyone who would do business with Min Zhu despite knowledge of Min Zhu's monstrous conduct was similarly unfit for any position involving the public trust.

41.     Between 2005 and 2012, Zeleny conducted a series of public protests.  Initially, Zeleny's protests were directed only against Min Zhu.  Zeleny later broadened his protests after NEA senior management refused to acknowledge or address Erin Zhu's claims.  He expanded his protests to include the officers and directors of WebEx and investors in WebEx who

1   had knowledge of Min Zhu's conduct, yet willingly continued to do business with him, including

2   NEA and certain of its senior management such as Scott Sandell and Dick Kramlich.  Zeleny's

3   public protests were intended to expose Min Zhu's conduct and the moral bankruptcy of Min

4   Zhu's cohorts for condoning it.

5          42.     The protests have taken the form of in-person demonstrations, musical

6   performances, and multimedia posts on YouTube as well as Zeleny's Internet-based LiveJournal

7   blog, at http://larvatus.livejournal.com/tag/webex.

8          43.     Zeleny's protests were intended to be provocative.  They included flyers and

9   posters containing graphic but non-obscene images reflecting Min Zhu's conduct.  They also

10  included flyers and posters calling out specific individuals, including WebEx's Chief Executive

11  Officer Subrah Iyar and NEA's Scott Sandell and Dick Kramlich, for being enablers of Min Zhu.

12  To draw attention to Zeleny's message, some of Zeleny's protests involved music played on

13  accordions, trumpets, and bagpipes, and offers of free food to sex workers, registered sex

14  offenders, and adult industry performers.

15         44.     Zeleny made video recordings of his demonstrations and posted them on the

16  Internet.  He created a website, www.subrah.com, summarizing the contents of these protest

17  activities.  On the website, Zeleny states that executives who raped family members and their

18  knowing enablers have no place in positions of public trust.

19         45.     In a further effort to draw attention to his First Amendment protests, Zeleny

20  eventually moved to lawfully exercising his Second Amendment rights, openly carrying and

21  displaying unloaded weapons in compliance with state law.

22         46.     Zeleny always notified public officials and peace officers in advance of his

23  plans for demonstrations.  He always complied with any peace officer's request to inspect his

24  weapons.  Zeleny complied with all time, place, or manner restrictions on his protests requested by

25  the City authorities, even when he believed that such restrictions were unlawful.

26         47.     Zeleny's exercise of his Second Amendment rights has been part and parcel

27  of his exercise of his First Amendment right to protest against Min Zhu and Min Zhu's cohorts.

28

1  By incorporating a display of unloaded weapons, Zeleny intended to dramatize his protests, attract

2  attention to them, and amplify his message.

3  **The Attempts to Stifle Zeleny's Protests**

4       48.    Min Zhu and his cohorts have persistently tried to stifle Zeleny's protests.

5       49.    In 2005, WebEx unsuccessfully sued Zeleny over truthful posts he made on

6  the Yahoo! message board pertaining to WebEx.  The case was styled *WebEx Communications,*

7  *Inc. v. Zeleny*, Santa Clara County Superior Court Case No. 104CV024062, later Los Angeles

8  County Superior Court Case No. BC324927.  WebEx was eventually made to pay over $16,000 in

9  attorney's fees and sanctions to Zeleny, first for filing in an improper venue, and subsequently

10 after its complaint was stricken under California's anti-SLAPP (Strategic Lawsuit Against Public

11 Participation) statute.

12      50.    When WebEx was unsuccessful in its efforts to silence Zeleny through civil

13 litigation, it then enlisted law enforcement to attempt to silence him on its behalf.

14      51.    On May 2, 2005, Zeleny began a campaign of street protests against WebEx

15 and Min Zhu at a WebEx user conference at the Westin St. Francis hotel in San Francisco.  Zeleny

16 also protested against Subrah Iyar, another co-founder of WebEx and its CEO, and against Scott

17 Sandell, a venture capitalist with NEA who had funded WebEx.

18      52.    Zeleny's protest was peaceful.  He did not threaten anyone or brandish any

19 weapons.  He did not use abusive language.  Zeleny stood peacefully in front of the hotel, in a

20 business suit, holding a two-foot by three-foot board, and distributing flyers.

21      53.    WebEx nevertheless called the San Francisco Police Department and had

22 Zeleny arrested.  Because the arrest was unlawful, later that same day, May 2, 2005, the San

23 Francisco Police department released Zeleny without charges.

24      54.    He resumed his protest the following morning, May 3, 2005.  WebEx then

25 abruptly canceled its user conference.  Ten days later, Min Zhu resigned from WebEx and left the

26 United States for China.

27      55.    In October 2009 and September 2010, Zeleny conducted protests in front of

28 NEA's headquarters in Menlo Park to protest its ongoing support of Min Zhu.

56.     On October 5, 2010, NEA filed an application for a temporary restraining order to prevent Zeleny from continuing his protests outside NEA's offices in a case captioned *NEA v. Zeleny*, San Mateo County Superior Court Case No. CIV499465.  The court summarily rejected NEA's TRO application.  According to NEA's filing, NEA's Scott Sandell had similarly made an application in 2009 for a restraining order against Zeleny, but it had likewise been rejected.  Sandell never even notified Zeleny about that earlier application, and the court rejected it without receiving any opposition from Zeleny.

57.     Zeleny moved his next series of protests, which commenced in June 2012, to the sidewalk in front of the property housing NEA's headquarters.

**Participation of Law Enforcement in the Attempts to Stifle Zeleny's Protests**

58.     Some of Zeleny's protests took place near NEA's headquarters within the city limits of Menlo Park.

59.     The Menlo Park Police Department placed restrictions on the place and manner of Zeleny's protests, limiting the reach and effectiveness of Zeleny's message, and threatened Zeleny with criminal prosecution if he did not acquiesce.  The restrictions increased steadily over time.

60.     Zeleny is informed and believes, and on that basis alleges, that NEA called in political favors in 2012 to have Zeleny prosecuted under California's firearm laws in an effort to stifle Zeleny's protests.

61.     On July 19, 2012, the District Attorney for the County of San Mateo, State of California, filed charges of carrying a concealed firearm against Zeleny, in *People v. Zeleny*, San Mateo County Superior Court Case No. SM382036.  At that time, the California Penal Code did not prohibit open carrying of an unloaded firearm, so long as it was secured and locked.

62.     The incident in question was one of Zeleny's public protests, in which he openly displayed the supposedly "concealed" firearm, unloaded and padlocked in a belt holster conspicuously located on his hip.  Zeleny fully complied with all pertinent California statutes regulating concealed and open carry of firearms in effect at the time.

63. In the course of the prosecution of Zeleny, NEA's representatives monitored his trial, and met frequently with San Mateo County Deputy District Attorney Jenna Johansson. Ms. Johansson regularly referred to NEA as "her client" or "the client," and indicated that she represented both the State of California and NEA.

64. Zeleny was tried in a bench trial in the fall of 2014. The Court acquitted him of all charges on December 5, 2014.

**California Adopts "Open Carry" Restrictions for Handguns and Non-Handgun Firearms**

65. Prior to January 1, 2012, it was legal to openly carry an unloaded firearm in public in California. On October 10, 2011, Governor Brown signed a bill that modified the law on openly carrying an unloaded handgun to match the existing restrictions for openly carrying a loaded weapon.

66. California Penal Code section 26350 now prohibits the open carrying of an unloaded handgun, outside of a vehicle, in public, in an incorporated city or city and county.

67. Section 26375 exempts from section 26350, "the open carrying of an unloaded handgun by an authorized participant in . . . a motion picture, television or video production, or entertainment event, when the participant lawfully uses the handgun as part of that production or event."

68. A year later, in 2012, California adopted similar restrictions on open carry of firearms other than handguns. Penal Code section 26400, which became effective on January 1, 2013, makes it a crime for a person to "carry[ ] an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county."

69. Section 26405(r) contains a similar exemption for "an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event, when the participant lawfully uses that firearm as part of that production or event."

70. Section 25510 contains a similar exemption from sanctions under Section 25400 for carrying a concealed firearm for "an authorized participant in a motion picture,

1  television, or video production, or an entertainment event, when the participant lawfully uses the

2  firearm as part of that production or event, or while going directly to, or coming directly from, that

3  production or event."

4  **Zeleny's Efforts to Engage in Protected First and Second Amendment Activity**

5        71.    Since the enactment of Penal Code sections 26350 and 26400, Zeleny has

6  attempted to continue his peaceful protests as part of a video production, exercising his rights

7  under sections 25510, 26375, and 26405 to film his protests, and then distributing the videos

8  online.

9        72.    Zeleny's protests are part of a rich history of peaceful, but armed, protests,

10  many drawing inspiration from the Black Panthers.  Protests of this nature are common across the

11  country in states that have not completely banned the open carry of unloaded firearms.  The

12  conspicuous bearing of loaded and unloaded arms in connection with a public or political issue is

13  an effective form of political speech and public demonstration.

14        73.    Zeleny's protests are protected activity under both the First and Second

15  Amendments to the United States Constitution.

16        74.    The First Amendment protects non-verbal forms of communication as well

17  as verbal speech.  Zeleny's protests, which combine pure speech, flyers, signs, posters, video, and

18  the peaceful carrying of unloaded firearms, are constitutionally protected activity.

19        75.    Zeleny is equally entitled to the benefit of sections 25510, 26375, and 26405

20  of the Penal Code as would be a large movie studio or production company. "Liberty of the press

21  is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of

22  the large metropolitan publisher who utilizes the latest photocomposition methods." *Branzburg v.*

23  *Hayes*, 408 U.S. 665, 704 (1972).  While Zeleny was not engaged in the production of feature

24  films intended for national and international distribution, he did create his video content for the

25  purpose of publishing it on the Internet, in connection with a matter of significant public interest.

26        76.    Zeleny's right to openly carry unloaded firearms is also protected by the

27  Second Amendment.  The right to bear arms enshrined in the Second Amendment includes the

28  right to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket for the purpose

of being armed and ready . . . in case of conflict with another person." *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008).  The motivating principle of the Second Amendment is self-defense.  *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

77.     The First and Second Amendment are made applicable to municipalities pursuant to the Due Process Clause of the Fourteenth Amendment.

78.     The Defendants, however, acting under color of law and in their official capacities, have either suppressed or threatened to suppress Plaintiff's lawful exercise of his Constitutional rights pursuant to official policies, customs, or practices.  The Defendants interpret certain California statutes in such a way that Plaintiff's protests are completely foreclosed by California's prohibition on the carriage of exposed firearms.

**The City Threatens Further Prosecution in an Effort to Chill Zeleny's Protected Speech**

79.     Local law enforcement, invoking the power of the State of California, continues to threaten Zeleny with further prosecution if he resumes his protests.  They have candidly confirmed that their threatened prosecution is based in part on the content of Zeleny's message, which they find to be offensive.

80.     Between June 2015 and the present, Zeleny has attempted to exercise his rights under sections 25510, 26375, and 26405 by engaging in videotaped protests while carrying unloaded firearms, including handguns and rifles.

81.     Contrary to the plain language of the Penal Code, however, the City has interpreted it to require authorization from the City both for the video production itself, and for the carrying of unloaded firearms as part of that production.

82.     Shortly after the adoption of section 26405, the City adopted a municipal policy, which purportedly requires a Special Event Permit for Zeleny's protests, giving the City's Special Event Permit Committee/Community Services Director broad discretionary authority to approve or deny permits for video productions involving firearms.

83.     The City informed Zeleny that if he engages in his protests without a permit under its Special Event Permit policy, he will be prosecuted for violation of California's open and/or concealed carry laws, including California Penal Code §§ 25400, 26400, and 26350.

84.     In an effort to comply with the City's requirements, between 2015 and present, Zeleny has repeatedly applied to the City for entertainment permits accommodating his videotaped, armed protests.  Despite his offers to accommodate all reasonable time, place, and manner restrictions on his proposed events, the City has denied all of Zeleny's applications without explanations, while expressly declining to formulate conditions for approval.

85.     Zeleny has repeatedly requested that the City identify the conditions or criteria Zeleny must satisfy to receive a permit, and the City has failed and refused to do so.

86.     During an appeal of one of Zeleny's requests for a permit, City officials testified that they had denied Zeleny's requests, among other reasons, because they found the content of his protests offensive.  Plaintiff is informed and believes, and on that basis alleges, that the City has continually denied Zeleny's requests for permits because it disagrees with the substance of his message, and does not believe that his statement about Min Zhu's conduct or WebEx's and NEA's tacit approval of that conduct are true.

87.     The requirement that Zeleny obtain a permit, and refusal to approve Zeleny's permit requests under any circumstances, is an unlawful, content-based restriction on Zeleny's speech protected by the First Amendment.  Plaintiff is informed and believes, and on that basis alleges, that the content-based refusal to approve Zeleny's requests for permits was undertaken pursuant to an official policy, custom, or practice of the City.

88.     In August 2016, Zeleny met with Menlo Park City Manager Alex McIntyre and Police Commander David Bertini in seeking a permit.  At that time, Commander Bertini took issue with a piece of non-obscene artwork that Zeleny was proposing to display as part of his protests. An accurate depiction of the artwork is attached hereto as **Exhibit A**.

89.     Commander Bertini threatened that if Zeleny displayed the artwork, he would be arrested for violation of California Penal Code, section 313.1(a), which prohibits the distribution of harmful content to minors.  Commander Bertini also threatened Zeleny with criminal sanctions for carrying firearms in the course of his videotaped protests.

90.     Zeleny is informed and believes, and on that basis alleges, that the foregoing conduct of the City and City officials was pursuant to an official policy, custom, or practice of the City.

91.     Zeleny continues to exercise his right to free speech under the Constitution, in connection with this issue of public interest.  Zeleny tried many different ways of accommodating the City and NEA, but their demands kept escalating unreasonably, from objections to the volume and nature of unamplified musical performances, to demands to relocate the protests outside of the Rosewood complex that houses NEA.  Ultimately, what the process revealed was content-based discrimination.

## DECLARATORY RELIEF

92.     An actual, substantial, justiciable, and continuing controversy exists between Plaintiff and Defendants.

93.     Plaintiff seeks to exercise his First and Second Amendment rights by engaging in peaceful protests while carrying unloaded firearms.  Due to the statutes, municipal requirements, and official acts identified herein, Zeleny has been prohibited from exercising those rights, and the exercise of his First and Second Amendment rights has been chilled due to the ongoing threat of criminal prosecution.

94.     A declaration of rights is necessary and proper to clarify Plaintiff's rights to engage in constitutionally protected activity and to govern the parties' conduct.

95.     California Penal Code sections 26350 and 26400, on their face, prohibit Zeleny from exercising his right to carry firearms in peaceful protest.  Zeleny seeks a declaration that these statutes are unconstitutional on their face, as applied to Zeleny's display of unloaded firearms as a means of protest.

96.     California Penal Code sections 25510, 26375, and 26405 allow "authorized participants" in video productions to carry unloaded firearms in connection with such productions. On their face, these statutes permit Zeleny to carry unloaded firearms in filmed protests as part of a video production.  The City has taken the position, however, that City approval is required both of the video production itself and of the "authorized participants" allowed to carry firearms.

97.    The City has required the issuance of film permits to Zeleny as a condition of recognizing his statutory and Constitutional right to lawfully carry unloaded firearms as part of his videographed public entertainment events protesting ongoing municipal and corporate sponsorship of an incestuous child rapist.  Zeleny contends that he does not need the City's permission or approval to do so, and that the City has refused its permission and approval as an unlawful content-based restraint on his right to free speech.  A declaration is necessary that the City's policy requiring such approval is unconstitutional, or that the City cannot condition approval on the content of the video production or entertainment event.

98.    The City has prohibited Zeleny from exercising his right to free speech based on the content of his protests.  A declaration is necessary that Zeleny's protests and the materials used by him in those protests are not obscene as a matter of law, and do not violate California Penal Code section 313.1(a), or in the alternative, that section 313.1(a) is unconstitutional as applied to Zeleny's protesting activities.

## FIRST COUNT

### (Violation of the First Amendment to the United States Constitution)

### (Against Defendants the City of Menlo Park and Bertini)

99.    Plaintiff incorporates by reference all allegations in each of the preceding paragraphs, as if fully set forth herein.

100.    The First Amendments to the United States Constitution is made applicable to the City through the Due Process Clause of the Fourteenth Amendment.

101.    The City of Menlo Park and Bertini have, under threat of criminal prosecution, prohibited Zeleny from engaging in his lawful protests based on the content of his speech, claiming that they will prosecute Zeleny for obscenity as to minors.

102.    Zeleny's protests are not obscene as to minors under established law.

103.    The City's unwarranted threats to prosecute Zeleny for obscenity as to minors constitute an unlawful prior restraint and violate Zeleny's rights under the First Amendment.

104.    Plaintiff seeks a declaration as follows:

a.      That Plaintiff's conduct and materials used in his protests are not "obscene as to minors" under the California Penal Code, or generally "obscene" under applicable law.

b.      That Plaintiff's protests are protected First Amendment activity.

c.      That Defendants' prohibition on Plaintiff's protests violates Plaintiff's rights under the First Amendment to the United States Constitution.

## SECOND COUNT

**(Violation of the First and Fourteenth Amendments to the United States Constitution)**

**(Against Defendants the City of Menlo Park and Bertini)**

105.    Plaintiff incorporates by reference all allegations in each of the preceding paragraphs, as if fully set forth herein.

106.    The First Amendments to the United States Constitution is made applicable to the City through the Due Process Clause of the Fourteenth Amendment.

107.    The City of Menlo Park has improperly interpreted the exceptions to California's firearms carry bans, California Penal Code §§ 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event, to require the City's approval of the production or event itself, and the use of firearms and "authorized participants" in that production or event.

108.    The City has applied its misinterpretation of California law to give the City unfettered discretion to refuse permits for a motion picture, television or video production, or entertainment event, and participants in said production or event, including based on impermissible factors, such as the content of the production or event.

109.    Plaintiff is informed and believes, and on that basis alleges, that the City has distinguished between commercial motion picture, television or video production, or entertainment events, and independent political productions, film and video productions of protests, and film and video productions involving matters of public concern.

110.    As a result of the City's misinterpretation and misapplication of the California Penal Code, the City has refused to recognize the exceptions to California's firearms

carry bans, California Penal Code §§ 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event, as applying to Zeleny.

111.    Plaintiff seeks a declaration as follows:

a.    That California Penal Code §§ 25510, 26375, and 26405 do not require the City's approval of the motion picture, television or video production, or entertainment event involved, or the use of firearms or the authorized participants in that production or event.

b.    That the City's policies and practices regarding permits for motion picture, television or video production, or entertainment event are unconstitutional as applied to Zeleny.

### **THIRD COUNT**

**(Violation of the First and Second Amendments to the United States Constitution)**

**(Against Defendants the City of Menlo Park and Bertini)**

112.    Plaintiff incorporates by reference all allegations in each of the preceding paragraphs, as if fully set forth herein.

113.    The First and Second Amendments to the United States Constitution are made applicable to the City through the Due Process Clause of the Fourteenth Amendment.

114.    Menlo Park's Special Event Permit and Film Permit policies violate the First and Second Amendments to the United States Constitution, either facially, or as applied to Zeleny's peaceful protests.

115.    The City has misinterpreted California Penal Code §§ 25510, 26375, and 26405 as giving the City the right, not only to approve motion picture, television or video productions, or entertainment events within City limits pursuant to customary permitting, but also to approve the individual participants in those productions or events who may lawfully use unloaded firearms.  As a result, the City has asserted that it has the ability, on threat of criminal prosecution, to prohibit the lawful use of firearms in video productions as a result of non-compliance with City rules relating to motion picture, television or video production, or entertainment event permits.

116.   Pursuant to its unlawful construction of §§ 25510, 26375, and 26405, the City has adopted a municipal policy that gives it unfettered discretion to prohibit protected First Amendment and Second Amendment activity, including on the grounds that the City does not approve of the content or message conveyed by that activity.

117.   The City's Special Event Permit and Film Permit policies violate the First and Second Amendments of the United States Constitution on their face in that they allow the City to wholly prohibit the exercise of rights to free speech and to bear arms, or to condition the exercise of those rights on improper factors.

118.   Plaintiff is informed and believes, and on that basis alleges, that the City has imposed no definite standards on its Special Event Permit and Film Permit decisions, nor any limitation on the time period within which such permits must be approved, thus arrogating unbridled discretion on behalf of its permitting officials in violation of the First Amendment.

119.   The City's Special Event Permit and Film Permit policies are void as unconstitutionally vague, in that the prohibitive terms are not clearly defined such that a person or ordinary intelligence can readily identify the applicable standard for inclusion and exclusion.  The requirements impose no restrictions on the discretion of City officials to deny permits arbitrarily, capriciously, or based on unlawful factors, such as the content of protected speech.

120.   In the alternative, the City's Special Event Permit and Film Permit policies violate the First and Second Amendments as applied to Zeleny, because the City has enforced their provisions to bar Zeleny's peaceful film and video productions and entertainment events, which comply with California state law, due to the content of his productions and events.  This amounts to an unlawful, content-based prior restraint on Zeleny's protected speech activity.

121.   The City has also applied its Special Event Permit and Film Permit requirements in such a way that it amounts to an outright prohibition against Zeleny bearing arms within City limits.

122.   Plaintiff seeks a declaration as follows:

a.   That Penal Code §§ 25510, 26375, and 26405 do not require the approval by a municipality in order for a person to be an "authorized participant" in a motion

1   picture, television or video production, or entertainment event, exempted from California's

2   prohibition on carrying unloaded firearms.

3          b.      That the City's Special Event Permit and Film Permit requirements

4   are unconstitutional under the First and Second Amendments to the United States Constitution on

5   its face, as improper restrictions of the rights to free speech and to bear arms.

6          c.      In the alternative, that the City's Special Event Permit and Film

7   Permit requirements, as applied to bar Zeleny's peaceful entertainment events and film

8   productions, amounts to an unlawful prior restraint on Zeleny's First Amendment right to free

9   speech, and an unlawful restriction on his Second Amendment right to bear arms.

10                          **FOURTH COUNT**

11                      **(Violation of 42 U.S.C. § 1983)**

12          **(Against Defendants the City of Menlo Park and Bertini)**

13          123.    Plaintiff incorporates by reference all allegations in each of the preceding

14   paragraphs, as if fully set forth herein.

15          124.    The City, through Bertini and other employees and agents, has violated

16   Zeleny's constitutional rights under the First, Second, and Fourteenth Amendments to the United

17   States Constitution, under color of state law, pursuant to official policies, customers, and practices.

18          125.    The City has imposed unlawful prior restraints on Zeleny's protected speech

19   activity by requiring him to unnecessarily seek permits to engage in constitutionally protected

20   activity, and by refusing to grant any such permits based on the content of Zeleny's speech.

21   Forbidding Plaintiff to exercise his right to free speech does not bear any relationship to protecting

22   the public health, safety, or welfare.

23          126.    The City and Bertini have violated Zeleny's rights to engage in protected

24   speech by threatening him with criminal prosecution for engaging in protected activity, including

25   threatening criminal prosecution based on the content of Zeleny's speech and his peaceful use of

26   unloaded firearms as part of that speech.

27          127.    The City and Bertini have violated Zeleny's right to bear arms by

28   threatening him with criminal prosecution for exercising his Second Amendment right to

1   peacefully bear unloaded firearms, in compliance with state law, and through enforcement of

2   unconstitutional laws.

3        128.   Defendants' true purpose was and is to silence the viewpoint expressed by

4   Zeleny's speech and his mode of expression.  Consequently, Defendants true purpose was and is to

5   silence disfavored viewpoints in violation of the Free Speech Clause of the First Amendment.

6        129.   As a direct and proximate result of Defendants' violation of the Free Speech

7   Clause of the First Amendment and the Second Amendment, Plaintiff has suffered irreparable

8   harm, including the loss of his constitutional rights, entitling him to declaratory and injunctive

9   relief, and the reasonable costs of this lawsuit, including his reasonable attorneys' fees.

10                              **FIFTH COUNT**

11        **(Violation of the Fourteenth Amendment to the United States Constitution)**

12            **(Against Defendants Becerra ~~and Brown~~)**

13        130.   Plaintiff incorporates by reference all allegations in each of the preceding

14   paragraphs, as if fully set forth herein.

15        131.   The government bears the burden of justifying restrictions on the exercise of

16   fundamental rights by a particular class or classes of individuals.

17        132.   All law-abiding, competent adults are similarly situated in that they are

18   equally entitled to exercise the constitutional right to publicly bear arms in furtherance of their

19   right to free speech under the United States and California Constitution in connection with a public

20   issue or an issue of public interest, whether as an authorized participant in an entertainment event

21   or motion picture, television, or video production, or pursuant to an entertainment event permit or

22   motion picture, television, or video production permit, or otherwise.

23        133.   Because California's comprehensive firearms carry restrictions bar

24   law-abiding California residents from publicly carrying a firearm in any manner in furtherance of

25   their right to free speech under the United States and California Constitution in connection with a

26   public issue or an issue of public interest, while allowing other law-abiding citizens to carry a

27   firearm for motion picture, television or video productions, or entertainment events, Defendants

28

have created a classification of persons, including Plaintiff, who are treated unequally through the denial of their First and Second Amendment rights to publicly bear arms for expressive purposes.

134.   As the proximate result of the Defendants' procedures and policies, conducted under color of state law, Plaintiff has been deprived of his rights pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## SIXTH COUNT

### (Conspiracy to Violate Civil Rights under 42 U.S.C. § 1983)

### (Against Defendant NEA)

135.   Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

136.   Plaintiff is informed and believes, and thereon alleges, that in or about 2009, NEA entered into a tacit or explicit agreement with the City to discourage, restrict, stifle, and ultimately halt Zeleny's exercise of his First Amendment right to protest and his Second Amendment right to bear arms.

137.   This conspiracy was developed through a series of meetings and other communications between representatives of NEA, including its security staff, and representatives of the City, including, among others, Sargent Sharon Kauffman, and then-Commander Bertini.

138.   During these meetings and communications, the City agreed to use its authority under state law to restrict, limit, and ultimately stop Zeleny's protests, and to stop him from lawfully carrying unloaded firearms within the City limits.  NEA agreed, either tacitly or explicitly, to assist the City in its efforts to hamper and end Zeleny's protests and lawful carrying of firearms.  Internal City documents reflect that as early as 2010, the City was devoted to developing a "firm solution" to end Zeleny's protests of NEA altogether.

139.   NEA took overt acts in pursuit of this unlawful conspiracy, including:

a.   Engaging in years-long surveillance of Zeleny both online and in-person surveillance of Zeleny with the City's approval and encouragement, and sharing information with the City that could be used potentially to halt Zeleny's protests.  This surveillance included, among other things, tracking Zeleny's online activities and physically

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

following him.  NEA transmitted the results of this surveillance to the City, including, among other information (a) NEA notified Bertini that Zeleny's mother had passed away in Los Angeles (Zeleny is unaware how NEA learned this personal information); (b) NEA falsely accused Zeleny of using drugs, which the City believed it could use to seize Zeleny's firearms; (c) NEA regularly reported to the City about Zeleny's whereabouts; and (d) NEA followed Zeleny's online activity and reported information to the City that it believed useful in prosecuting Zeleny or ending his protests.

        b.      Attending a number of meetings with City personnel to address Zeleny's protests.  On information and belief, the purpose of these meetings was to find a "firm solution" to stop Zeleny from protesting NEA.  On information and belief, NEA and the City used these meetings to develop a combined strategy to combat Zeleny's protests, which involved falsely prosecuting Zeleny for carrying a concealed firearm, and using California's "open carry" ban to prevent him from continuing to protest.

        c.      Representatives of the City gave NEA direct access to police officials, including their private cell phone numbers, and encouraged NEA representatives to contact police officials directly any time Zeleny appeared near NEA's offices, which NEA did.

        d.      Participating in a series of meetings and other communications regarding Zeleny's "Special Events" permit application for the purpose of developing a "combined response" to Zeleny's protests.  During these communications, the City gave NEA advanced notice that it intended to deny Zeleny's permits, but would nonetheless request more information from him only to ultimately deny the application.  On information and belief, during these meetings, the City and NEA agreed and developed a plan to continue to deny Zeleny's permit applications at each stage of the appeal process.

      140.     The City and Bertini also engaged in overt acts in furtherance of the conspiracy, at the behest of NEA, as alleged above.  Among other things:

        a.      Contrary to written policy, and despite acknowledging that Zeleny had not violated any laws and was at all times cooperative with police, the City maintained a surveillance file on Zeleny based solely on his protesting activity.  Bertini referred to this as his

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

"Zeleny file."  The file contained information about Zeleny's whereabouts, his living situation, his activities, and potential criminal laws that the City could use to stop Zeleny's protests.  Both officers and NEA representatives gathered information on Zeleny to keep in Bertini's "Zeleny file."

        b.    Bertini unilaterally (and without basis) designated Zeleny as a "security risk," and used this as a basis to monitor and harass Zeleny and his supporters.  Among other things, City police officers repeatedly interviewed Zeleny and his supporters without probable cause or reasonable suspicion of a crime, initiated "informational" police reports on Zeleny and his supporters, followed Zeleny and his supporters in marked and unmarked police cars in violation of written policy, engaged in "enforcement stops" of the sole purpose of questioning Zeleny's supporters about their affiliation with Zeleny.  City police officers also routinely stood by to watch Zeleny's protests and interviewed Zeleny and his supporters about inappropriate topics in violation of written City policy.

        c.    Bertini and one or more subordinates referred Zeleny for prosecution for carrying a concealed weapon without legal basis in direct violation of California law, resulting in Zeleny's complete acquittal.  Among other things, the City claimed in the same case that Zeleny was guilty of unlawfully carrying an <u>unconcealed firearm</u> and also that he was guilty of unlawfully carrying a <u>concealed firearm</u> based on the same conduct.  During this prosecution, City officers failed to disclose exculpatory material to Zeleny or his attorneys. This prosecution resulted in a complete acquittal.

        d.    The City submitted information about Zeleny to a legislative committee in an effort to have the open carrying of rifles prohibited in California in violation of the Second Amendment.

        e.    After Zeleny's prosecution was over, the City police department, including Bertini personally, took charge of processing Zeleny's "special events" and film permit applications and denied those applications without basis on content-based grounds.  Bertini was not the person responsible for handling either type of application within the City, but nonetheless

participated directly with the City Attorney in denying the permit applications on content-based grounds in violation of Zeleny's rights under the First and Second Amendment.

141.   This conspiracy, and the acts of defendants NEA, the City, and Bertini, in furtherance of the conspiracy, injured Zeleny by preventing him from exercising his First and Second Amendment rights as alleged herein.

**<u>SEVENTH COUNT</u>**

**(Conspiracy to Violate Civil Rights in violation of 42 U.S.C. § 1985)**

**(Against Defendant NEA)**

142.   Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

143.   As set forth above, NEA, the City, and Bertini engaged in a conspiracy to prevent Zeleny from protesting in violation of his First and Second Amendment Rights.

144.   The purpose of that conspiracy was to deprive Zeleny of equal protection of the laws, or of equal privileges and immunities, by preventing him from exercising his rights of free speech and to bear arms based on the content of his protests and his engaging in protected First Amendment activity.

145.   Each of NEA, the City, and Bertini engaged in overt acts in furtherance of the conspiracy as alleged above.

146.   The conspiracy, and defendants NEA, the City, and Bertini's conduct in furtherance of the conspiracy, injured Zeleny and deprived him of his First and Second Amendment rights as alleged herein.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff sues for relief as set forth below:

A.   Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, binding on all Defendants, that California Penal Code §§ 26400 and 26350 are unconstitutional;

B.   Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, binding on all Defendants, that California Penal Code §§ 25510, 26375, and 26405 do not require municipal

approval of "authorized participants" in an entertainment event or film or video production, and that Zeleny is legally permitted to carry unloaded firearms in connection with his entertainment events and/or his film or video productions, without the need for City approval, subject to compliance with other applicable laws;

C.     Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, binding on all Defendants, that Zeleny's peaceful carrying of unloaded firearms in the course of his speech  on matters of public concern or matters of political, social, or other concerns to the community or issues of significant importance to the public as a whole, is constitutionally protected; in the alternative, enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, binding on all Defendants, that Zeleny's peaceful carrying of unloaded firearms in the course of his entertainment events and/or his film or video productions, is constitutionally protected;

D.     Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, binding on the City and Bertini, that Zeleny's speech activity concerning the child rape cover-up by the Zhus and their associates is constitutionally protected and not obscene or "obscene as to minors" within the meaning of the California Penal Code, and that their public display would not violate Penal Code §§ 311.2, 313.1 (a), and 313.4, in virtue of its serious literary, artistic, political, and social value;

E.     Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the City of Menlo Park's Special Event Permit requirement is unconstitutional on its face, or in the alternative, as applied to Zeleny's protests;

F.     Enter an injunction against Defendants prohibiting them from enforcing Penal Code §§ 26400 and 26350 against Zeleny in connection with his peaceful protests, from enforcing the City of Menlo Park's Special Event Permit requirement, and from refusing to grant Zeleny required permits based on the content of his speech activity;

G.     Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, construing California Penal Code §§ 25510, 26405, and 26375 and enter a declaratory judgment stating that these sections exempt from sanctions under California Penal Code §§ 25400, 26400, and 26350 for the carrying of an unloaded handgun and of an unloaded firearm that is not a handgun, *any individual* who acts and/or holds himself out as an authorized participant in, or serves as an

authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses that firearm as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event. Relevant actions and representations include, without limitation, displaying ornamental signs or multimedia artworks; reciting slogans, speeches, or poetry; playing trumpets, accordions, bagpipes, or other musical instruments; and/or wearing conspicuous costumes, makeup, wigs, clown noses, or other decorative prostheses;

    H. Award nominal damages against Defendant NEA and punitive damages in an amount to be proven at trial.

    I. Award attorneys fees pursuant to 42 U.S.C. § 1988 and California Code of Civil Procedure § 1021.5, and costs as provided by law; and

    J. Award such other and further relief as the Court deems just and proper.

Dated: March 28, 2019      Affeld Grivakes LLP


                s/ David W. Affeld

                 David W. Affeld

             Attorneys for Plaintiff Michael Zeleny

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all matters so triable.

Dated: March 28, 2019      Affeld Grivakes LLP


                s/ David W. Affeld

                 David W. Affeld

             Attorneys for Plaintiff Michael Zeleny

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1

## **PROOF OF SERVICE**

2

     I hereby certify that on March 29, 2019, I electronically filed the foregoing document
using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will
send a notice of electronic filing to the interested parties.

3

4

                              s/ Damion Robinson
                              Damion Robinson

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 5 -

STIPULATION TO FILE FIRST AMENDED COMPLAINT