THOMAS S. BROWN, CA Bar No. 178620
  tsbrown@foley.com
NICHOLAS P. HONKAMP, CA Bar No. 261299
  nhonkamp@foley.com
FOLEY & LARDNER LLP
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

ROGER A. LANE (admitted *pro hac vice*)
  rlane@foley.com
COURTNEY WORCESTER (admitted *pro hac vice*)
  cworcester@foley.com
**FOLEY & LARDNER LLP**
111 HUNTINGTON AVENUE
BOSTON, MA 02199
TELEPHONE:  617.342.4000
FACSIMILE:   617.342.4001

Attorneys for New Enterprise Associates, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| MICHAEL ZELENY, AN INDIVIDUAL<br>PLAINTIFF,<br><br>v.<br><br>EDMUND G. BROWN, ET AL.,<br><br>DEFENDANTS. | )<br>) CASE NO:  17-CV-07357-RS<br>)<br>) **NEW ENTERPRISE ASSOCIATES, INC.'S**<br>) **NOTICE OF MOTION AND MOTION TO**<br>) **DISMISS; MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT OF SAME**<br>)<br>) **DATE:  JUNE 13, 2019**<br>) **TIME:  1:30 PM**<br>) **COURTROOM: 3, 17TH FLOOR**<br>) |

**PLEASE TAKE NOTICE** that on June 13, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard by the Court, New Enterprise Associates, Inc. ("NEA") will, and hereby does, move the Court to dismiss all claims asserted against it by Plaintiff Michael Zeleny ("Zeleny" or "Plaintiff").

This Motion is brought on the grounds that: (1) the Sixth and Seventh Counts of Plaintiff's Corrected First Amended Complaint ("CFAC"), which assert claims against NEA for an alleged conspiracy to violate Sections 1983 and 1985, are premised upon "overt acts" that fall well outside the statute of limitations; (2) additionally, Plaintiff's Section 1983 claim fails as a matter of law because all of NEA's alleged "overt acts" were in the exercise of NEA's First Amendment rights, and hence the *Noerr-Pennington* doctrine provides NEA with immunity; and (3) finally, Plaintiff's Section 1985 claim fails as a matter of law because Plaintiff has not and cannot allege that there was racial or other class-based, discriminatory animus behind NEA's alleged actions. For these reasons, NEA respectfully requests that the Court dismiss all claims against NEA with prejudice.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, and the Declaration of Roger A. Lane submitted concurrently herewith, in addition to the pleadings and other papers filed in this action, and such other evidence and arguments as the Court may consider at the time of the hearing.

DATE: MAY 9, 2019

**FOLEY & LARDNER LLP**

ROGER A. LANE, ESQ.
COURTNEY WORCESTER, ESQ

By: /s Roger A. Lane

Roger A. Lane, Esq.
Courtney Worcester, Esq.
Attorneys for New Enterprise Associates, Inc.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.     BACKGROUND ......................................................................................................... 1

     A.    Plaintiff's Original Complaint ....................................................... 1

     B.    Procedural Background.................................................................. 2

     C.    The CFAC's Claims Against NEA ................................................ 2

II.    ARGUMENT ............................................................................................................. 3

     A.    Plaintiff's Claims Against NEA are Barred by the Statue of Limitations ......................... 3

        1.  Standard of Review ........................................................... 3

        2.  Plaintiff's CFAC Fails to Allege Any Overt Act by NEA Subsequent to March 29, 2017 .................... 4

     B.    Plaintiff's Section 1983 and Section 1985 Claims Fail as a Matter of Law ..................... 10

        1.  Standard of Review ........................................................... 10

        2.  Plaintiff's Section 1983 Claim Fails as a Matter of Law ................................. 11

          a.  Plaintiff's Claims are barred by the *Noerr-Pennington* Doctrine ............................ 12

        3.  Plaintiff's Section 1985 Claim fails as a matter of law .................................... 15

CONCLUSION................................................................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aaron v. Aguirre,*
 No. 06-CV-1451-H(POR), 2007 WL 959083 (S.D. Cal. Mar. 8, 2007)..............................11

*In re Airport Car Rental Antitrust Litig.,*
 766 F.2d 1292 (9th Cir. 1985), *cert. denied,* 476 U.S. 1141 (1986)...............................13

*Allied Tube & Conduit Corp. v. Indian Head Inc.,*
 486 U.S. 492 (1988)..............................................................................................................12

*Anderson v. Allstate Ins. Co.,*
 630 F.2d 677 (9th Cir. 1980) .................................................................................................5

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009)............................................................................................................10

*Balistreri v. Pacifica Police Dep't,*
 901 F.2d 696 (9th Cir.1988) ...............................................................................................10

*Bashkin v. Hickman,*
 No. 07cv0995–LAB (CAB), 2008 WL 183696 (S.D. Cal. Jan. 17, 2008) ..........................11

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007)............................................................................................................10

*Biby v. Bd. of Regents of Univ. of Neb. at Lincoln,*
 338 F. Supp. 2d 1063 (D. Neb. 2004), *amended in part sub nom. Biby v. Bd. of*
 *Regents of Univ. of Neb. at Lincoln*, 340 F. Supp. 2d 1031 (D. Neb. 2004) ......................16

*Boulware v. Nev. Dep't of Human Res.,*
 960 F. 2d 793 (9th Cir. 1992) .............................................................................................12

*Bray v. Alexandria Women's Health Clinic,*
 506 U.S. 263 (1993).............................................................................................................17

*Brown v. Philip Morris, Inc.*
 250 F.3d 789 (3d Cir. 2001).................................................................................................15

*Burns v. Cty. of King,*
 883 F.2d 819 (9th Cir. 1989) ..............................................................................................11

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
 404 U.S. 508 (1972).............................................................................................................12

4836-8447-2981.1

*Caldeira v. Cty. of Kauai,*
866 F.2d 1175 (9th Cir. 1989) ...................................................................15

*Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara,*
344 F.3d 822 (9th Cir. 2003) .....................................................................6

*Collins v. Womancare,*
878 F.2d 1145 (9th Cir. 1989) ...................................................................13

*Daniels-Hall v. Nat'l Educ. Ass'n,*
629 F.3d 992 (9th Cir. 2010) .....................................................................10

*Davis v. Powell,*
901 F. Supp. 2d 1196 (S.D. Cal. 2012) .......................................................11

*Dietrich v. John Ascuaga's Nugget,*
548 F.3d 892 (9th Cir. 2008) .....................................................................13

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.,*
365 U.S. 127 (1961) ..................................................................................12

*Eggleston v. Prince Edward Volunteer Rescue Squad, Inc.,*
569 F.Supp. 1344 (E.D. Va. 1983), *aff'd,* 742 F.2d 1448 (4th Cir. 1984) ...........16

*Epstein v. Wash. Energy Co.,*
83 F.3d 1136 (9th Cir. 1996) .....................................................................10

*Forro Precision, Inc. v. I.B.M. Corp.,*
673 F.2d 1045 (9th Cir. 1982) ...............................................................13, 14

*Found. v. Twp of Lower Merion,*
927 F. Supp. 874 (E.D. Pa. 1996) .............................................................13

*Gerritsen v. de la Madrid Hurtado,*
819 F.2d 1511 (9th Cir. 1987) ...................................................................17

*Gibson v. United States,*
781 F.2d 1334 (9th Cir. 1986) ...................................................................6

*M.G. ex rel. Goodwin v. Cty. of Contra Costa,*
No. C 11-04853 WHA, 2013 WL 706801 (N.D. Cal. Feb. 26, 2013) ....................5

*Griffith v. Breckenridge,*
403 U.S. 88 (1971) ....................................................................................15

*Harrell v. Costco,*
422 F. App'x 635 (9th Cir. 2011) ...............................................................13

*Herguan Univ. v. Immigration and Customs Enforcement,*
   258 F. Supp. 3d 1050 (N.D. Cal. 2017) ..................................................................10

*Hodge v. Oakland Unified Sch. Dist.,*
   No. C 09-04719 RS, 2010 WL 4117539 (N.D. Cal. Oct. 19, 2010) ............................10

*Hodges v. Holiday Inn Select,*
   No. 07-CV-1169 OWW TAG, 2008 WL 1945532 (E.D. Cal. May 1, 2008) ..................13

*Huynh v. Chase Manhattan Bank,*
   465 F.3d 992 (9th Cir. 2006) ........................................................................................4

*Ivey v. Bd. of Regents of Univ. of Alaska,*
   673 F.2d 266 (9th Cir. 1982) ......................................................................................11

*Jones v. Blanas,*
   393 F.3d 918 (9th Cir. 2004) ........................................................................................4

*Kilkenny v. Arco Marine Inc.,*
   800 F.2d 853 (9th Cir. 1986) ........................................................................................5

*Lee v. City of L.A.,*
   250 F.3d 668 (9th Cir. 2001) ........................................................................................8

*Lopez v. Smith,*
   203 F.3d 1122 (9th Cir. 2000) ....................................................................................10

*Margolis v. Ryan,*
   140 F.3d 850 (9th Cir. 1998) ......................................................................................11

*Mayes v. AT & T Info. Sys., Inc.,*
   867 F.2d 1172 (8th Cir. 1989) ......................................................................................5

*McCalden v. Cal. Library Ass'n,*
   955 F.2d 1214 (9th Cir. 1992) ....................................................................................16

*Merritt v. Cty. of L.A.,*
   875 F.2d 765 (9th Cir. 1989) ........................................................................................5

*Miller v. California,*
   355 F.3d 1172 (9th Cir. 2004) ....................................................................................11

*Mir v. Deck,*
   No. SACV 12-1629-RGK SH, 2013 WL 4857673 (C.D. Cal. Sept. 11, 2013), *aff'd,*
   676 F. App'x 707 (9th Cir. 2017) ..................................................................................4

*Nat'l R.R. Passenger Corp. v. Morgan,*
   536 U.S. 101 (2002) ......................................................................................................6

4836-8447-2981.1

*Ostrer v. Aronwald,*
   567 F.2d 551 (2d Cir. 1977)...........................................................................11

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,*
   522 F.3d 1049 (9th Cir. 2008) .........................................................................4

*Prochaska v. Fediaczko,*
   473 F.Supp. 704 (W.D. Pa. 1979).....................................................................16

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo,*
   971 F.2d 244 (9th Cir.1992) .............................................................................7

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.,*
   181 F.3d 410 (3rd Cir. 1999) ............................................................................8

*Scott v. Rosenberg,*
   702 F.2d 1263 (9th Cir. 1983) .........................................................................16

*Sever v. Alaska Pulp Corp.,*
   978 F.2d 1529 (9th Cir. 1992) ...........................................................15, 16, 17

*Sosa v. DIRECTV, Inc.*
   437 F.3d 923 (9th Cir. 2006) ...........................................................................12

*Steckman v. Hart Brewing, Inc.,*
   143 F.3d 1293 (9th Cir. 1998) ...........................................................................4

*Supermail Cargo, Inc. v. United States,*
   68 F.3d 1204 (9th Cir. 1995) .............................................................................4

*Taylor v. Regents of Univ. of Cal.,*
   993 F.2d 710 (9th Cir. 1993) .............................................................................5

*Tisdale v. City of L.A.,*
   617 F. Supp. 2d 1003 (C.D. Cal. 2009) ............................................................14

*Tsao v. Desert Palace, Inc.,*
   698 F.3d 1128 (9th Cir. 2012) ..........................................................................11

*United Bhd. of Carpenters and Joiners of Am. v. Scott,*
   463 U.S. 825 (1983)..........................................................................................17

*United Mine Workers of Am. v. Pennington,*
   381 U.S. 657 (1965)..........................................................................................12

*United Screeners Ass'n Local One v. City and Cty. of S.F.,*
   No. C 05-00001 JSW, 2005 WL 2671384 (N.D. Cal. Oct. 19, 2005) ...............17

4836-8447-2981.1

*Venetian Casino Resort, L.L.C. v. N.L.R.B.*,
   793 F.3d 85 (D.C. Cir. 2015) ............................................................................................. 14

*Villanueva v. Liberty Acquisition Servicing, LLC*,
   215 F. Supp. 3d 1045 (D. Ore. 2016) .................................................................................. 5

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ........................................................................................... 3, 4

*Weisbuch v. Cty. of L.A.*,
   119 F.3d 778 (9th Cir. 1997) ............................................................................................ 11

*Weiss v. City of Santa Rosa Police Dep't*,
   No. 15-CV-01639-YGR, 2018 WL 6505807 (N.D. Cal. Dec. 11, 2018) .......................... 5

*Wilson v. Garcia*,
   471 U.S. 261 (1985) ............................................................................................................ 4

*Wiseman v. County of Washoe*,
   44 F. App'x 776 (9th Cir. 2002) ...................................................................................... 15

*Woodrum v. Woodward Cty.*,
   866 F.2d 1121 (9th Cir. 1989) ......................................................................................... 11

*Yan Sui v. 2176 Pac. Homeowners Ass'n*,
   No. SACV 11-1340 JAK AJW, 2012 WL 6632758 (C.D. Cal. Aug. 30, 2012) ................ 6

**California Cases**

*Bell v. Tri-City Hosp. Dist.*,
   196 Cal. App. 3d 438 (1987) .............................................................................................. 5

*Kralow Co. v. Sully-Miller Contracting Co.*,
   168 Cal. App. 3d 1029 (1985) ............................................................................................ 5

*Norgart v. Upjohn Co.*,
   21 Cal. 4th 383 (1999) ........................................................................................................ 5

*State of Cal. v. Superior Court*,
   32 Cal. 4th 1234 (2004) ...................................................................................................... 5

**Federal Statutes & Constitutional Provisions**

42 U.S.C. § 1983 ....................................................................................................... *passim*

42 U.S.C. § 1985 ....................................................................................................... *passim*

4836-8447-2981.1

US. Const., First Amendment ............................................................................... *passim*

US Const., Second Amendment.................................................................1, 2, 16, 17

US Const., Fourteenth Amendment ......................................................................2

**Federal Rules**

Federal Rule of Civil Procedure 15(c) ..................................................................5

Federal Rule of Civil Procedure 12(b)(6) ......................................................3, 7, 9

**California Statutes**

California Code of Civil Procedure
    Section 335.1......................................................................................4, 5

California Code of Civil Procedure
    Section 340(3) .........................................................................................5

California Penal Code
    Section 26400..........................................................................................9

NEA's MEMO of P & A
Case No. 17-CV-07357-RS

4836-8447-2981.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   BACKGROUND

New Enterprise Associates, Inc. ("NEA") is a venture capital firm based in Menlo Park, California. Years ago, NEA invested in a company cofounded by Min Zhu ("Zhu") named WebEx.  (CFAC ¶ 32.)[1] Plaintiff was previously involved in some way with Zhu's daughter, Erin Zhu ("Ms. Zhu").  (CFAC ¶ 28.) In 2005, Plaintiff began protesting Zhu and WebEx, purporting to protest Zhu's alleged treatment of Ms. Zhu.  (CFAC ¶ 33.)  Plaintiff later expanded those protests to include individuals or entities he believes supported or continue to support Zhu and his business activity, including NEA.  (CFAC ¶¶ 40-41.)  NEA's investment in Zhu's company, WebEx, ended some 14 years ago, and, on information and belief, Zhu has resided in China since 2005.  Despite this, from 2005 to 2012 Plaintiff targeted NEA with his "protests." (CFAC ¶ 41.)

Plaintiff's CFAC challenges the constitutionality of California statutes passed in 2011 and 2012 that prohibit the open carrying of an unloaded handgun or other type of gun.  (CFAC ¶¶ 65-68.)  Plaintiff contends that he qualifies under exceptions to the statute that apply to participants in entertainment productions, such as motion pictures or television programs.  (*Id.*)  According to Plaintiff, the City of Menlo Park has wrongly required him to obtain a Special Event Permit before allowing him to conduct protests.  (CFAC ¶¶ 82-83.)  Plaintiff alleges that NEA has conspired with other Defendants to "halt Zeleny's exercise of his First Amendment right to protest and his Second Amendment right to bear arms." (CFAC ¶ 136.)

### A.   Plaintiff's Original Complaint

On December 28, 2017, Plaintiff filed a Complaint for Declaratory and Injunctive Relief against Edmund G. Brown, Jr. (then the governor of California), Xavier Becerra (the Attorney General of California), the City of Menlo Park, and Dave Bertini (the Commander of the Menlo Park Police Department).  (Compl., Docket Entry No. 1.)  Plaintiff's original Complaint asserted claims against the

---

[1]  Plaintiff sought leave on March 29, 2019 to file a First Amended Complaint, which, *inter alia*, named NEA as a defendant (Docket Entry No. 68), which this Court granted on April 1, 2019 (Docket Entry No. 70.)  Plaintiff subsequently filed a Corrected First Amended Complaint ("CFAC") on April 9, 2019 (Docket Entry No. 80.)

NEA's MEMO of P & A
Case No. 17-CV-07357-RS

1

City of Menlo Park and Bertini for violations of the First, Second and Fourteenth Amendments to the United States Constitution (Compl., Counts I, II & III); against the City of Menlo Park and Bertini for violations of 42 U.S.C. § 1983 (Compl., Count IV); and against Becerra and Brown for violations of the Fourteenth Amendment to the United States Constitution (Compl., Count V).

Although NEA was not named as a defendant, Plaintiff's original Complaint invoked NEA's name over forty times, including alleging that "NEA called in political favors in 2012 to have Zeleny prosecuted under California's firearm laws in an effort to stifle Zeleny's protests."  (Compl., ¶ 59.)

### B.    Procedural Background

Governor Brown was dismissed from the underlying lawsuit on April 17, 2018.  (Docket Entry No. 37.)  On January 4, 2019, Plaintiff served a subpoena on NEA seeking testimony on 21 topics and 24 requests for document production.  After motion practice, Magistrate Judge Hixson quashed the vast majority of Plaintiff's subpoena.  (Docket Entry No. 65, 6:27-7:6.)

Soon thereafter – some fifteen months after filing his Original Complaint, but less than a month before discovery was to close – Plaintiff filed a Stipulation to file a First Amended Complaint (Docket Entry No. 68), which sought to add NEA as a defendant on claims of conspiracy to violate 42 U.S.C. § 1983 and conspiracy in violation of 42 U.S.C. § 1985(3).  This Court allowed the Stipulation on April 1, 2019, and the First Amended Complaint was deemed filed as of that date.  (Docket Entry No. 70.)  On April 9, 2019, Plaintiff filed a Corrected First Amended Complaint.  (Docket Entry No. 80.)

### C.    The CFAC's Claims Against NEA

The CFAC is identical to Plaintiff's Original Complaint but for the addition of paragraphs 22-23 (describing NEA as a party and alleging NEA conspired with other defendants), as well as the two counts against NEA (paragraphs 135-141), and the deletion of former Governor Brown as a party.  (*Compare* Original Complaint *with* CFAC.)  The Sixth Count asserts a claim against NEA for conspiracy to violate Plaintiff's civil rights under 42 U.S.C. § 1983.  (CFAC, Count VI.)  The gravamen of Plaintiff's Sixth Count is that in or about 2009, NEA entered into an "agreement" with the City of Menlo Park to restrict or halt Plaintiff's exercise of his First Amendment right to protest and his Second Amendment right to

NEA's MEMO of P & A
Case No. 17-CV-07357-RS

bear arms.  (CFAC ¶ 136.)  According to Plaintiff, NEA engaged in "overt acts" in furtherance of this conspiracy that consisted of:  (1) providing information to the police department about Zeleny (CFAC ¶¶ 137, 139(a), (c), 140(a)); (2) advocating that Plaintiff should be denied a permit to conduct his protests (CFAC ¶¶ 139(b), (d), 140(e)); and (3) requesting that the City provide information to a legislative committee in an effort to have the open carrying of rifles prohibited in California (CFAC ¶ 140(d).)  Plaintiff's second claim against NEA is for conspiracy to violate Plaintiff's civil rights in violation of 42 U.S.C. § 1985, and it is based upon the same factual assertions as the Sixth Count.  (CFAC, Count VII.)

## II.    ARGUMENT

Plaintiff's attempt to bring NEA into this lawsuit, which has been pending for over a year, fails as a matter of law.  First, the claims in the CFAC that are asserted against NEA – the Sixth and Seventh Counts – must be dismissed with prejudice, as the alleged "overt acts" that NEA engaged in took place far outside of the applicable two-year statute of limitations.  Indeed, many of the "overt acts" took place almost seven years ago.

Plaintiff's Section 1983 claim fails for the additional reason that all of NEA's alleged "overt acts" consist of NEA exercising its core First Amendment rights, including providing information to the police, advocating that Plaintiff be denied a permit, and requesting information be provided to a legislative committee.[2]  Each of these acts are protected by the *Noerr-Pennington* doctrine, which renders NEA immune from liability.

Finally, Plaintiff's Section 1985(3) claim fails as a matter of law, as Plaintiff's CFAC is devoid of any allegation that NEA's activities were motivated by any racial or other class-based discriminatory animus.  Without such allegations, Plaintiff's claim simply fails.

### A.  Plaintiff's Claims Against NEA are Barred by the Statue of Limitations

1.    Standard of Review

Claims may be dismissed under Rule 12(b)(6) on the grounds that they are barred by the applicable statute of limitations when "the running of the statute is apparent on the face of the complaint."  *Von Saher*

---

[2] Only for the purposes of this motion to dismiss does NEA accept the well-pleaded factual allegations in the CFAC.

*v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006)). "'[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (*quoting Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 (9th Cir. 1995)). "[W]here the issue of limitations requires determination of when a claim begins to accrue, the complaint should be dismissed only if the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of law." *Mir v. Deck*, No. SACV 12-1629-RGK SH, 2013 WL 4857673, at *5 (C.D. Cal. Sept. 11, 2013), *aff'd,* 676 F. App'x 707 (9th Cir. 2017). For purposes of a motion to amend, claims barred by the statute of limitations are futile. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,* 522 F.3d 1049, 1060 (9th Cir. 2008) (citing *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1298 (9th Cir. 1998) (the "general rule that parties are allowed to amend their pleadings . . . does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal . . . .")).

    2.    Plaintiff's CFAC Fails to Allege Any Overt Act by NEA Subsequent to March 29, 2017

Simply put, Plaintiff's claims are stale. They are based on events that occurred between 2005 and 2012, when Plaintiff was conducting his putative "protests' at NEA and elsewhere, and events that occurred in 2015 and 2016, when Plaintiff applied for permits to carry firearms as part of his renewed "protests," and those permits were denied. Because Plaintiff's claims are subject to a two-year state of limitations, they are barred as a matter of law, and no amount of "artful pleading" on Plaintiff's part can avoid that conclusion. Consequently, Plaintiff's claims against NEA must be dismissed as untimely, with prejudice.

Specifically, neither Section 1983 nor Section 1985 contains a federal statute of limitations. *Wilson v. Garcia,* 471 U.S. 261, 267 (1985). To address this issue, the United States Supreme Court has determined that such actions are best characterized as personal injury actions, and courts therefore should apply the forum state's statute of limitations for personal injury claims. *Id.* at 280; *Jones v. Blanas,* 393 F.3d 918, 927 (9th Cir. 2004). Consequently, pursuant to Section 335.1 of the California Code of Civil

Procedure, the statute of limitations for Section 1983 and 1985 cases filed in a California federal court is two years.  Cal. Civ. Proc. Code § 335.1; *Jones*, 393 F.3d at 927; *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 711-12 (9th Cir. 1993) (holding that California Code of Civil Procedure § 340(3) (predecessor to Section 335.1) applies to claims brought pursuant to 42 U.S.C. § 1985).  Here, the entirety of Plaintiff's Section 1983 and 1985 claims are based on events that occurred *prior to* March 29, 2017; *i.e.*, the date that is two years before Plaintiff filed the Stipulation to file the CFAC. [3]  Consequently, the entirety of

---

[3]  The CFAC does not relate back to Plaintiff's Original Complaint filed on December 27, 2017.  As recently articulated by this Court in *Weiss v. City of Santa Rosa Police Dep't,* No. 15-CV-01639-YGR, 2018 WL 6505807, at *17 (N.D. Cal. Dec. 11, 2018):

> When a federal cause of action is brought under Section 1983, 'the relation back provisions of state law, rather than [Federal Rule of Civil Procedure] 15(c) govern....' *Merritt v. Cty. of L.A.*, 875 F.2d 765, 768 (9th Cir. 1989).  An amended complaint under California law relates back to the original complaint if the amended complaint '1) rest[s] on the *same general set of facts*, (2) involve[s] the *same injury*, and (3) refer[s] to the *same instrumentality*, as the original one.'  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 408–09 (1999) (emphases in original); *M.G. ex rel. Goodwin v. Cty. of Contra Costa*, No. C 11-04853 WHA, 2013 WL 706801, at *4 (N.D. Cal. Feb. 26, 2013) (same).
> ....
> [E]ven if an earlier complaint rests on the same set of facts, the amended complaint may not relate back unless 'a reasonable defendant [would] have understood the [original] complaint to allege that it was in some way responsible for plaintiff's injury[.]' *Bell v. Tri-City Hosp. Dist.*, 196 Cal. App. 3d 438, 449 (1987), *disapproved of on other grounds*, *State of Cal. v. Superior Court*, 32 Cal. 4th 1234 (2004). '[T]he relation-back doctrine applies where a complaint sets forth, or attempts to set forth, a cause of action against a defendant designated by fictitious name and his true name is thereafter discovered and substituted by amendment....' *Kralow Co. v. Sully-Miller Contracting Co.*, 168 Cal. App. 3d 1029, 1035 (1985) (internal quotation marks omitted). **Thus, '[t]he relation-back doctrine is inapplicable ... where [a plaintiff] attempts to relate back an amended [complaint] to a complaint which failed to name [defendant] or any Doe defendants."** *Id.* at 1035–36; *see also Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 683 (9th Cir. 1980) ("Under California law, if a defendant is added to an amended complaint as a new defendant, and not as a Doe defendant, the amendment does not relate back to the time of the original complaint.").

(second bolded emphasis added.)  Plaintiff's Original Complaint did not name any Doe Defendants and hence, the CFAC does not relate back.  *Accord*, *Kilkenny v. Arco Marine Inc.*, 800 F.2d 853, 857–58 (9th Cir. 1986) (holding that Federal Rule of Civil Procedure 15(c) was "intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party. Rule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation.").

In addition, for purposes of calculating the statute of limitations, an amended pleading is effectively filed when the motion to amend is filed.  *Mayes v. AT & T Info. Sys., Inc.*, 867 F.2d 1172, 1173 (8th Cir. 1989); *Villanueva v. Liberty Acquisition Servicing, LLC*, 215 F. Supp. 3d 1045, 1057 (D. Ore. 2016).  Here, the Stipulation was the procedural equivalent of a motion to amend.

Plaintiff's claims against NEA are barred by the statute of limitations and should be dismissed, with prejudice, as untimely.

The accrual of conspiracy claims for statute of limitations purposes is determined in accordance with the last "overt act" doctrine, under which "'injury and damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a conspiracy'." *Gibson v. United States,* 781 F.2d 1334, 1340 (9th Cir. 1986) (internal brackets omitted). "The limitation period runs separately from each overt act in furtherance of the conspiracy that is alleged to cause damage to the plaintiff. The plaintiff may recover only for the overt acts alleged to have occurred within the limitation period, even when the conspiracy was formed and other acts were committed outside the limitations period." *Yan Sui v. 2176 Pac. Homeowners Ass'n,* No. SACV 11-1340 JAK AJW, 2012 WL 6632758, at *17 (C.D. Cal. Aug. 30, 2012), *report and recommendation adopted,* No. SACV 11-01340 JAK AJ, 2012 WL 4900427 (C.D. Cal. Oct. 16, 2012), *aff'd,* 582 F. App'x 733 (9th Cir. 2014). Moreover, "discrete" acts "are not actionable if time barred, even if they are related to acts alleged in timely filed charges." *Carpinteria Valley Farms, Ltd. v. Cty. of Santa Barbara,* 344 F.3d 822, 828 (9th Cir. 2003) (*citing Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002)).

Plaintiff's CFAC fails to allege any overt acts by NEA that occurred *subsequent* to March 29, 2017. This is hardly surprising, as the gravamen of Plaintiff's complaint relates to permits applied for and denied in 2015 and 2016, and Plaintiff acknowledges in his CFAC that he has not resumed his protests since 2012. (CFAC ¶¶ 79, 88.) Indeed, each of the "overt acts" allegedly committed by NEA in paragraph 139 of the CFAC occurred well prior to March 29, 2017. As a result, Plaintiff's claims as to such "acts" must be dismissed with prejudice as untimely.[4]

---

[4] For purposes of its statute of limitations argument, NEA assumes for the sake of argument that the "overt acts" alleged are sufficient to adequately plead a cause of action for conspiracy to violate Sections 1983 or 1985. In fact, as discussed *infra*,

First, Plaintiff alleges that NEA engaged in "years-long surveillance of Zeleny both online and in-person surveillance of Zeleny with the City's approval and encouragement, and sharing information with the City that could be used potentially to halt Zeleny's protests." (CFAC ¶ 139(a).) Zeleny's protests, however, have not occurred since 2012. (CFAC ¶¶ 6, 41 (alleging that Zeleny conducted protests between 2005 and 2012, and since then has applied for permits to "resume" his protests but has not conducted any further protests).) Consequently, allegations regarding surveillance of Zeleny related to protests that occurred well before March 29, 2017 cannot form the basis for any timely Section 1983 or 1985 claims.[5]

Next, Plaintiff alleges that NEA attended meetings with City personnel to: (1) find a "firm solution" to stop Zeleny from protesting NEA (CFAC ¶ 139(b)); and (2) develop a strategy to combat Zeleny's protests, which allegedly involved falsely prosecuting Zeleny for carrying a concealed firearm (CFAC ¶ 139(b).) Based upon the facts alleged, these meetings occurred between 2010, when Plaintiff alleges that the City was devoted to finding a "firm solution" (CFAC ¶ 138), and 2014, when Zeleny alleges he was acquitted of carrying a concealed firearm (CFAC ¶¶ 60-64). Because these alleged meetings and the prosecution took place well before March 29, 2017, allegations based on these acts are untimely and cannot provide the basis for any claims against NEA.

Third, Plaintiff alleges that the City gave NEA direct access to police officials, including their private cell phone numbers, and "encouraged NEA representatives to contact police officials directly any

even if some of the alleged overt acts had taken place within the limitations period, they are insufficient as a matter of law to adequately plead any claim against NEA, because the *Noerr-Pennington* doctrine provides NEA with immunity.

[5] Moreover, Plaintiff was aware of such surveillance in 2011, and yet brought no claim. (*See* Request for Judicial Notice; Declaration of Roger A. Lane ("Lane Decl.") Exhibit A (Form Interrogatory No. 13.1 served by Zeleny in *New Enterprise Associates, Inc. v. Michael Zeleny*, Case No. CIV 499465, seeking any surveillance), Exhibit B (disclosing on September 14, 2011 in response to Form Interrogatory 13.1 that NEA had conducted surveillance of Zeleny and had shared information relating to that surveillance with the Menlo Park police department), Exhibit C (subpoena dated December 13, 2018, served by Zeleny on January 4, 2019 in this case, seeking surveillance from Case No. CIV 499465) (Topic No. 8 & Request No. 11.). *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo,* 971 F.2d 244, 248 (9th Cir.1992) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'").

time Zeleny appeared near NEA's offices, which NEA did." (CFAC ¶ 139(c).) But Plaintiff's CFAC does not allege – nor can it – that he has appeared near NEA's offices since the enactment of the challenged California statues in 2012.[6] (CFAC ¶¶ 6, 41 (alleging that Zeleny conducted protests between 2005 and 2012, and since then has applied for permits to "resume" his protests but has not conducted any further protests).) Thus, even if one assumes, arguendo, that this behavior constitutes an "overt act," it occurred well prior to March 29, 2017.

Finally, Plaintiff alleges that NEA participated in a series of meetings and other communications regarding "Zeleny's 'Special Events' permit application for the purpose of developing a 'combined response to' to Zeleny's protests," during which: (1) the City gave NEA advanced notice that it intended to deny Zeleny's permits; and (2) the City and NEA agreed and developed a plan to continue to deny "Zeleny's permit applications at each stage of the appeal process." (CFAC ¶ 139(d).) Plaintiff, however, has pled that he applied for a "Special Permit" in 2015, which was denied, and that an appeal of that denial took place in August 2016. (CFAC ¶¶ 84, 86, 88.) Thus, these meetings and communications which Plaintiff claims are "overt acts" occurred well before March 29, 2017 and consequently cannot provide the basis for any claim against NEA.

In addition, the hodgepodge of purported "overt acts" that Plaintiff contends the City of Menlo Park and Defendant Bertini engaged in "at the behest of NEA" in paragraph 140 of the CFAC also all occurred outside of the statute of limitations, and thus cannot form the basis for Plaintiff's Section 1983

---

[6] Indeed, since 2011, Zeleny has been "permanently enjoined from entering onto … any portion of the real property situated at 2855 Sand Hill Road, Menlo Park, California, the walkway leading to NEA's business offices located in 2855 Sand Hill Road, the common tenant grounds of the office park in which 2855 Sand Hill Road is located, including the internal street and entryways surrounding the buildings and the parking lots serving employees and invited guests of tenants." (*See* Request for Judicial Notice; Lane Decl., Exhibit D.); *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.") (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.,* 181 F.3d 410, 426–27 (3rd Cir. 1999)).

NEA's MEMO of P & A
Case No. 17-CV-07357-RS

and 1985 claims against NEA.  (CFAC ¶¶ 140(a) – (e).)  Plaintiff alleges that "the City maintained a surveillance file on Zeleny based solely on his protesting activity," and that City police officers "routinely stood by to watch Zeleny's protests and interviewed Zeleny and his supporters about inappropriate topics in violation of written City policy."  (CFAC ¶ 140(a) – (b) (alleging that he complied with "any peace officer's request to inspect his weapons" during his protests from 2005 to 2012 (CFAC ¶¶ 41, 46).)  But, again, by his own admission, Zeleny has not protested since 2012 – consequently, allegations regarding what took place during such protests are well outside the statute of limitations.  Plaintiff also alleges that Bertini or his subordinates referred Zeleny for "prosecution for carrying a concealed weapon without legal basis in direct violation of California law."  (CFAC ¶ 140(c).)  But Plaintiff's CFAC unequivocally alleges that that prosecution commenced in 2012 (CFAC ¶¶ 60-61), and resulted in an acquittal in December 2014.  (CFAC ¶ 64.)  Thus, this "overt act" is also entirely outside of the statute of limitations and cannot provide the basis for any claim against NEA.

Plaintiff also alleges that the City submitted information about Zeleny to a legislative committee "in an effort to have the open carrying of rifles prohibited in California."  (CFAC ¶ 140(d).)  As of January 1, 2013, however, California Penal Section 26400 banned an individual from carrying an "unloaded firearm that is not a handgun," *e.g.* a rifle.  (CFAC ¶ 68).  Hence, the submission of information – if it had any casual efficacy – had to have occurred *prior to* the law's passage and effective date, *i.e.* 2013.  Once again, any claim premised upon this activity is far outside the statute of limitations.

Finally, Plaintiff alleges that the City police department and Defendant Bertini denied Plaintiff's application for a Special Event permit.  (CFAC ¶ 140(e).)  However, the only well-pled allegation regarding Defendant Bertini and the City denying Plaintiff such a permit is that they allegedly did so in August 2016 – which is, once again, well outside the applicable two-year statute of limitations.  (CFAC ¶¶ 84, 86 & 88.)  As Plaintiff's own pleading established that each and every alleged "overt act" engaged

in by NEA took place well before March 27, 2017, Plaintiff's CFAC must be dismissed with prejudice, and Plaintiff's claims cannot be saved by amendment.

### B. Plaintiff's Section 1983 and Section 1985 Claims Fail as a Matter of Law

1.    Standard of Review

As this Court is well aware, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be based on either the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Hodge v. Oakland Unified Sch. Dist.,* No. C 09-04719 RS, 2010 WL 4117539, at *2 (N.D. Cal. Oct. 19, 2010) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988)).   When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true)).

Moreover, the Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).   "Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).   As the deficiencies in Plaintiff's CFAC cannot be cured, the dismissal should be with prejudice.   *Herguan Univ. v. Immigration and Customs Enforcement*, 258 F. Supp. 3d 1050, 1062 (N.D. Cal. 2017) ("'[A] plaintiff may

4836-8447-2981.1

plead herself out of court'" on a motion to dismiss for failure to state a claim "if she 'pleads facts which establish that she cannot prevail on her . . . claim'.")(*quoting Weisbuch v. Cty. of L.A.,* 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal brackets omitted).

        2.      Plaintiff's Section 1983 Claim Fails as a Matter of Law

      Plaintiff's Sixth Count against NEA for conspiracy to violate Section 1983 fails as a matter of law. "To plead a claim of conspiracy under § 1983, plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1217 (S.D. Cal. 2012) (citing *Miller v. California,* 355 F.3d 1172, 1177 n. 3 (9th Cir. 2004)); *Margolis v. Ryan,* 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward Cty.,* 866 F.2d 1121, 1126 (9th Cir. 1989). "'Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.'" *Id.* (*quoting Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982)); *see Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir. 1977)).

      Courts in the Ninth Circuit have required a plaintiff who alleges a conspiracy to violate civil rights to state specific facts to support the existence of the claimed conspiracy. *Burns v. Cty. of King,* 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."); *accord Bashkin v. Hickman,* No. 07cv0995–LAB (CAB), 2008 WL 183696, at *2 (S.D. Cal. Jan. 17, 2008). This heightened pleading standard, *see Aaron v. Aguirre*, No. 06-CV-1451-H(POR), 2007 WL 959083, at *21-22 (S.D. Cal. Mar. 8, 2007), is even more demanding when the defendants at issue are corporations and organizations, not individuals, *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).

a.      Plaintiff's Claims are barred by the *Noerr-Pennington* Doctrine

Plaintiff's allegations fail because neither NEA's "overt acts," nor those committed by the City and Bertini allegedly "at the behest of NEA," are actionable as to NEA, because the *Noerr-Pennington* doctrine provides immunity to NEA.

The *Noerr-Pennington* doctrine originates from the First Amendment's guarantee of the "right of the people . . . to petition the Government for a redress of grievances." *Sosa v. DIRECTV, Inc.* 437 F.3d 923, 929 (9th Cir. 2006).  "[T]hose who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."  *Id.*  Although the doctrine originated in the antitrust context, it applies to Section 1983 cases that are based on the petitioning of public authorities.  *See Boulware v. Nev. Dep't of Human Res.*, 960 F. 2d 793, 800 (9th Cir. 1992).  *Noerr-Pennington* immunity applies to *any* concerted effort to sway public officials, regardless of the private citizen's intent; so long as there is petitioning activity, the motive behind the activity is unimportant. *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965).  The Supreme Court has made clear that, for purposes of the *Noerr–Pennington* doctrine, parties exercise their right to petition when they "advocate their causes and points of view respecting resolution of their business and economic interests," *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 511 (1972), or attempt to "influence the passage or enforcement of laws."  *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961).

Allegations that the City, at the behest of NEA, "submitted information about Zeleny to a legislative committee in an effort to have the open carrying of rifles prohibited in California," is quintessential First Amendment conduct and cannot provide the basis for any liability on the part of NEA. (CFAC ¶ 140(d)); *Allied Tube & Conduit Corp. v. Indian Head Inc.*, 486 U.S. 492, 499 (1988) (individuals may lobby or make other focused efforts to obtain administrative results as an exercise of their First

Amendment rights).  Similarly, allegations that NEA attended meetings with City personnel to address Zeleny's protests and allegedly seek to develop a strategy to stop them (including NEA allegedly using its "influence" to sway the City to deny Zeleny's requests for permits) amount to nothing more than NEA exercising its constitutional right to petition for redress, *i.e.*, conduct protected by the First Amendment. (CFAC ¶¶ 139(b), (d), 140(e) (alleging that "at the behest of NEA" Zeleny's Special Event permit was denied));  *In re Airport Car Rental Antitrust Litig.,* 766 F.2d 1292, 1295 (9th Cir. 1985), *cert. denied,* 476 U.S. 1141 (1986) (ruling that private meetings between government officials and individuals seeking to monopolize the airport car rental market was a form of advocacy protected by the *Noerr–Pennington* rule); *Found. v. Twp of Lower Merion*, 927 F. Supp. 874, 877 (E.D. Pa. 1996) (allegations against defendants based upon their participation in meetings in which they aired grievances about plaintiff, even if motivated by racism, were shielded by *Noerr-Pennington* doctrine).

The rest of Plaintiff's allegations – all of which involve NEA providing information to the police – fare no better.  (CFAC ¶¶ 139(a), (c), 140(a).)[7]  The Ninth Circuit has held that the *Noerr–Pennington* doctrine applies to citizen communications with police.  *Forro Precision, Inc. v. I.B.M. Corp.,* 673 F.2d 1045, 1060 (9th Cir. 1982).  There, the defendant IBM had approached the police department to allege that one of its competitors had stolen trade secrets.  *Id.* at 1059.  Consequently, the police searched the competitor's premises and, at the police department's request for assistance, IBM aided in the search. *Forro Precision, Inc.,* 673 F.2d at 1053-54.  The Ninth Circuit held that neither IBM's communication with the police nor its assistance with the search could be used to establish IBM's specific intent to engage

---

[7] The Ninth Circuit has repeatedly and long held that "merely complaining to the police does not convert a private party into a state actor."  *Collins v. Womancare*, 878 F.2d 1145, 1155 (9th Cir. 1989); *see Harrell v. Costco*, 422 F. App'x 635, 635 (9th Cir. 2011); *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008); *see also Hodges v. Holiday Inn Select*, No. 07-CV-1169 OWW TAG, 2008 WL 1945532, at *4 (E.D. Cal. May 1, 2008) *report and recommendation adopted,* No. 107CV1169OWWTAG, 2008 WL 2477615 (E.D. Cal. June 16, 2008) (collecting out-of-circuit cases).

NEA's MEMO of P & A
Case No. 17-CV-07357-RS

13

in anti-competitive conduct because "it would be difficult indeed for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information." *Id.* at 1060. The Court in *Forro Precision* explained that,

> [w]e do not liken an approach to the police for aid in apprehending wrongdoers to political activity. However, we think that the public policies served by ensuring the free flow of information to the police, although somewhat different from those served by *Noerr–Pennington,* are equally strong. Encouraging citizen communication with police does not generally promote the free exchange of ideas, nor does it provide citizens with the opportunity to influence policy decisions ... Nonetheless, it would be difficult indeed for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information.

*Id. see also Venetian Casino Resort, L.L.C. v. N.L.R.B.*, 793 F.3d 85, 90 (D.C. Cir. 2015) ("summoning the police to enforce state trespass laws is a direct petition to government subject to protection under the Noerr-Pennington doctrine."); *Tisdale v. City of L.A.*, 617 F. Supp. 2d 1003, 1007 (C.D. Cal. 2009) (distinguishing citizen arrest as not being covered by doctrine from situation where company took action "at the behest of the police," which would be covered).

The remaining "overt acts" that NEA allegedly engaged in all involve providing information to petitioning the police. For example:

- Plaintiff alleges that NEA engaged in years-long surveillance of Zeleny and provided the information to Defendant Bertini and the City to prosecute Zeleny or stop his protests (CFAC ¶¶ 139(a), 140(a));

- Plaintiff alleges that NEA was encouraged to contact police officers "which NEA did." (CFAC ¶ 139(c));

- Plaintiff alleges that Bertini referred Zeleny for prosecution "at the behest of NEA." (CFAC ¶ 140(c)); and

- Plaintiff further alleges that "at the behest of NEA" Bertini and City police officers monitored Zeleny. (CFAC ¶ 140(b).).

Such allegations – which amount to no more than NEA allegedly providing information to or petitioning the police – cannot subject NEA to liability, and Plaintiff's claims based upon such activity must be dismissed.

NEA's MEMO of P & A
Case No. 17-CV-07357-RS

14

3.      Plaintiff's Section 1985 Claim fails as a matter of law[8]

Section 1985(3) was enacted to protect individuals from conspiracies to deprive them of certain legally protected rights. *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1536 (9th Cir. 1992); *Brown v. Philip Morris, Inc.* 250 F.3d 789, 805 (3d Cir. 2001) (Section 1985 does not by itself create any substantive rights, but "serves only as a vehicle for vindicating federal rights and privileges which have been defined elsewhere.").[9]  To establish a claim for violation of 42 U.S.C. § 1985(3), "a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever*, 978 F.2d at 1536 (citing *United Bhd. of Carpenters and Joiners of Am. v. Scott,* 463 U.S. 825, 828–29 (1983)).  Critically, under the second element, a plaintiff must (a) identify a legally protected right, and (b) "demonstrate a deprivation of that right motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Griffith v. Breckenridge,* 403 U.S. 88, 102 (1971)).  As Plaintiff's CFAC lacks any such allegations, this claim against NEA must be dismissed with prejudice.

In his CFAC, there are no allegations that any of Plaintiff's legally protected rights were affected because of his race, or because of his membership in a class of individuals that "the courts have designated

---

[8] While Plaintiff's CFAC is silent as to which provision of Section 1985 the Seventh Count is based on, the only possibility is subsection 3.  *Wiseman v. County of Washoe*, 44 F. App'x 776, 778 (9th Cir. 2002) (42 U.S.C. §§ 1985 (1) and (2) apply only to a federal officer or a party or a witness in a federal proceeding.)

[9] As established *supra*, Plaintiff has failed to adequately allege a violation of Section 1983 by NEA, as NEA's conduct is shielded by the *Neorr-Pennington* doctrine.  This provides another basis on which to dismiss his Section 1985(3) claim, as it is premised on the same inadequate allegations.  *Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) (the absence of a Section 1983 deprivation of rights precludes a Section 1985 conspiracy claim predicated on the same allegations).

4836-8447-2981.1

... a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated

through legislation ... require[ ] special protection." *Sever,* 978 F.2d at 1536; *McCalden v. Cal. Library*

*Ass'n,* 955 F.2d 1214, 1223 (9th Cir. 1992) ("the plaintiff must be a member of a class that requires special

federal assistance in protecting its civil rights").   Indeed, insofar as Plaintiff's Section 1985 claim is

premised on the exercise of his own, individual First Amendment rights, Plaintiff has not alleged that he

is a member of a class, let alone that NEA's actions were motivated by racial or similar animus toward

that class.  *Eggleston v. Prince Edward Volunteer Rescue Squad, Inc.,* 569 F.Supp. 1344, 1352 (E.D. Va.

1983), *aff'd,* 742 F.2d 1448 (4th Cir. 1984) ("people who exercise free speech and who petition the

government for redress of their grievances are not in a class distinguishable from their fellow citizens and

therefore are not within the realm of classes protected by § 1985(3)"); *Biby v. Bd. of Regents of Univ. of*

*Neb. at Lincoln*, 338 F. Supp. 2d 1063, 1075 (D. Neb. 2004), *amended in part sub nom. Biby v. Bd. of*

*Regents of Univ. of Neb. at Lincoln*, 340 F. Supp. 2d 1031 (D. Neb. 2004), and *aff'd sub nom. Biby v. Bd.*

*of Regents, of Univ. of Neb. at Lincoln*, 419 F.3d 845 (8th Cir. 2005) (where plaintiff has merely alleged

a conspiracy directed at him for the individual exercise of his First Amendment rights, plaintiff cannot

establish membership in a class against which the defendants directed a class-based animus); *Scott v.*

*Rosenberg*, 702 F.2d 1263, 1270 (9th Cir. 1983) (citing *Prochaska v. Fediaczko,* 473 F.Supp. 704, 709

(W.D. Pa. 1979), which held that a conspiracy directed only toward the individual exercise of First

Amendment rights does not state a cause of action under section 1985(3)).[10]

---

[10] Similarly, Plaintiff's allegation that NEA engaged in a conspiracy to deprive him of his Second Amendment rights also fails. Plaintiff has not alleged that he is part of a class that, using weapons, seeks to protest about Min Zhu's alleged activities.  As the Supreme Court has noted:

> Whatever may be the precise meaning of a 'class' for purposes of *Griffin's* speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with. This definitional ploy would convert the

The Ninth Circuit has further explained:  "[W]e require either that the courts have designated the class in question as a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection."  *Sever*, 978 F.2d at 1536.  Plaintiff's CFAC is devoid of any allegations that any of the City, Defendant Bertini or NEA deprived Plaintiff of his First or Second Amendment rights *on the basis* of his race or for other protected class-based reasons.  Indeed, Plaintiff's CFAC alleges that the reason law enforcement has continued to threaten him with prosecution is that it finds his message "offensive," and because the City of Menlo Park does not believe his allegations regarding Min Zhu and NEA.  (CFAC ¶¶ 79, 86.)  Section 1985(3) is simply not meant to provide redress for such motivations.  *See United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 837-38 (1983) (Section 1985(3) does not "reach conspiracies motivated by economic or commercial animus."); *United Screeners Ass'n Local One v. City and Cty. of S.F.*, No. C 05-00001 JSW, 2005 WL 2671384, at *4 (N.D. Cal. Oct. 19, 2005) (dismissing Section 1985 claim where, even assuming that plaintiffs' status as a labor union or members of a labor union would render them a "protected class," no facts were alleged that the defendants were motivated by plaintiffs' status as union members; instead, plaintiffs asserted that the defendants preferred other unions over plaintiffs' union.).  This failure is fatal to Plaintiff's claim against NEA and requires the dismissal of the Seventh Count, with prejudice.

---

statute into the 'general federal tort law' it was the very purpose of the animus requirement to avoid.  *Ibid.* As Justice BLACKMUN has cogently put it, the class 'cannot be defined simply as the group of victims of the tortious action.' *Carpenters, supra,* 463 U.S., at 850, 103 S.Ct., at 3367 (dissenting opinion).

*Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269 (1993) (holding that ""Women seeking abortion"" is not a qualifying class.); *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511, 1518–19 (9th Cir. 1987)("42 U.S.C. § 1985(3) is not to be construed as a general federal tort law").

4836-8447-2981.1

## CONCLUSION

For all of the reasons set forth above, NEA respectfully requests that this Court dismiss Plaintiff's claims against NEA with prejudice.

DATE:  MAY 9, 2019

FOLEY & LARDNER LLP

By: /s Roger A. Lane
    ROGER A. LANE
    COURTNEY WORCESTER
    Attorneys for New Enterprise Associates, Inc.

1

2

**PROOF OF SERVICE**

3

I hereby certify that on May 9, 2019, I electronically filed the foregoing document using the

4

Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of

5

electronic filing to the interested parties.

6

7

8

/s/ Roger A. Lane
Roger A. Lane

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NEA's MEMO of P & A
Case No. 17-CV-07357-RS

4836-8447-2981.1