David W. Affeld, State Bar No. 123922
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:     (310) 979-8700

Attorneys for Plaintiff
Michael Zeleny

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ZELENY,

      Plaintiff,

          vs.

GAVIN NEWSOM, *et al.*,

      Defendants.

Case No. CV 17-7357 JCS

<u>Assigned to:</u>
The Honorable Richard G. Seeborg

<u>Discovery Matters:</u>
The Honorable Thomas S. Hixson

**OPPOSITION TO MOTION TO DISMISS OF DEFENDANT NEW ENTERPRISE ASSOCIATES, INC.**

Date:  June 13, 2019
Time:  1:30 p.m.
Courtroom:  3, 17th Floor

Action Filed:   December 28, 2017
Trial Date:      November 18, 2019

- 1 -

OPPOSITION TO MOTION BY DEFENDANT NEA TO DISMISS

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION .................................................................................... 1

II.  FACTS ...................................................................................................... 2

    A.  Zeleny's Protests Against NEA........................................................ 2

    B.  NEA's Conspiracy with the City of Menlo Park to Stop Zeleny's Protests.......... 3

    C.  The City Seizes on the Open Carry Ban as Part of the Conspiracy ..................... 4

    D.  The City and NEA Delay and Derail the Permitting Process............................... 4

        1.  The City Delays and Derails Zeleny's Special Events Application.......... 5

        2.  The City Delays and Derails Zeleny's Film Permit Application ............. 6

    E.  Procedural History............................................................................ 6

III.  ARGUMENT ........................................................................................... 7

    A.  The Statute of Limitations Does Not Bar Zeleny's Claims................................. 7

        1.  The Complaint Does Not Make It "Appear[] Beyond Doubt" that Zeleny's Claims are Time Barred .............................................. 8

        2.  The Statute of Limitations Commenced, at the Earliest, on August 17, 2017, When the City Denied Zeleny's Permit Application The Injunction Improperly Restrains Speculative Misuse ................................................. 9

        3.  The Statute of Limitations Has Not Run under the Continuing Violation Doctrine Because the Violation and Injury to Zeleny Are Ongoing ....... 11

        4.  Zeleny Could Not Have Discovered the Cause of His Injury Until Discovery Revealed that NEA Had Conspired with the City .................................. 12

        5.  The Statute of Limitations Was Equitably Tolled While Zeleny Exhausted Administrative Procedures as a Matter of Settled Law .......................... 14

    B.  Noerr-Pennington Immunity Does Not Immunize NEA's Conspiracy to Silence Zeleny's Protests on Content-Based Grounds ..................................................... 16

        1.  Noerr-Pennington immunity does not apply to claims arising from abridgment of First Amendment rights.  ................................................ 16

        2.  The sham exception to Noerr-Pennington applies ................................. 17

    C.  42 U.S.C. § 1985(3) Applies to Equal Protection Violations Stemming from Restrictions on Exercise of Fundamental Rights ............................................... 20

    D.  To the Extent NEA's Motion Is Granted in Any Part, Zeleny Should be Given Leave to Amend ....................................................................... 21

IV.  CONCLUSION  ..................................................................................... 22

OPPOSITION TO MOTION BY DEFENDANT NEA TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.H.D.C. v. City of Fresno, Cal.,*
  No. 97-5498, 2000 WL 35810722 (E.D. Cal. Aug. 31, 2000) ................................................ 16, 17

*Adams v. Kraft,*
  No. 10-0602, 2011 WL 846065 (N.D. Cal. Mar. 8, 2011) .................................................... 16, 17

*In re Airport Car Rental Antitust Litig.,*
  693 F.2d 84 (9th Cir. 1982).................................................................................................... 16

*Anthony v. Cnty. of Sacramento,*
  845 F. Supp. 1396 (E.D. Cal. 1994) ....................................................................................... 12

*Associated Press v. United States,*
  326 U.S. 1 (1945) .................................................................................................................... 17

*Azar v. Conley,*
  456 F.3d 1382 (6th Cir. 1972)................................................................................................. 21

*Beck v. City of Upland,*
  527 F.3d 853 (9th Cir. 2008)................................................................................................... 17

*Bone v. City of L.A.,*
  471 F. App'x 620 ............................................................................................................... 12, 13

*Brown v. Valoff,*
  422 F.3d 926 (9th Cir. 2005)................................................................................................... 15

*Bruno v. W'ern Elec. Co.,*
  829 F.2d 957 (10th Cir. 1987)................................................................................................. 11

*California Motor Transp. Co. v. Trucking Unlimited,*
  404 U.S. 508 (1972) .......................................................................................................... 17, 18

*Carpinteria Valley Farms, Ltd. v. County of Santa Barbara,*
  344 F.3d 822 (9th Cir. 2003).................................................................................................... 8

*Cervantes v. City of San Diego,*
  5 F.3d 1273 (9th Cir. 1993)..................................................................................................... 15

*Cholla Ready Mix, Inc. v. Civish,*
  382 F.3d 969 (9th Cir. 2004)................................................................................................... 10

*City of Columbia v. Omni Outdoor Advertising, Inc.,*
  499 U.S. 365 (1991) ................................................................................................................ 17

- ii -

*Doe v. Kaweah Delta Hosp.*,
    478 F. App'x 390 (9th Cir. 2012)................................................................15

*Doe v. United States*,
    58 F.3d 494 (9th Cir. 1995)......................................................................21

*Donoghue v. Orange County*,
    848 F.2d 926 (9th Cir. 1987)....................................................................15

*Douglas v. Cal. Dept. of Youth Auth.*,
    271 F.3d 812 (9th Cir. 2001)....................................................................11

*Dowling v. Arpaio*,
    No. 09-1401, 2011 WL 843942 (D. Ariz. Mar. 8, 2011) ........................12

*Fenerjian v. Nongshim Co., Ltd.*,
    72 F. Supp. 2d 1058 (N.D. Cal. 2014)................................................12, 13

*Fonda v. Gray*,
    707 F.2d 435 (9th Cir. 1983)....................................................................14

*Forro Precision, Inc. v. IBM*,
    673 F.2d 1045 (9th Cir. 1982)..................................................................20

*Galindo v. Stoody Co.*,
    793 F.2d 1502 (9th Cir. 1986)..................................................................15

*Gutowsky v. County of Placer*,
    108 F.3d 256 (9th Cir. 1997)....................................................................11

*Hartman v. Moore*,
    547 U.S. 250 (2006) .................................................................................17

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) (9th Cir. 1980) .............................................8

*Jones v. Blanas*,
    393 F.3d 918 (9th Cir. 2004)....................................................................14

*K'Napp v. Hickman*,
    No. No. 05-2520, 2008 WL 495755 (E.D. Cal. Feb. 21, 2008) ................11

*Kottle v. Northwest Kidney Centers*,
    146 F.3d 1056 (9th Cir. 1998)............................................................18, 19

*Life Ins. Co. of N. Am. v. Reichardt*,
    591 F.2d 499 (9th Cir. 1979)....................................................................21

*National Council of La Raza v. Cegavske*,
    800 F.3d 1032 (9th Cir. 2015)..................................................................21

- iii -

*Nevada Power Co. v. Monsanto Co.*,
  955 F.3d 1304 (9th Cir. 1992) ................................................................. 13

*Pension Trust Fund for Op. Eng'rs v. Mortgage Asset Secur. Trans., Inc.*,
  730 F.3d 263 (3d Cir. 2013) ............................................................. 12, 13

*Portland Feminist Women's Health Center v. Advocates for Life, Inc.*,
  62 F.3d 280 (9th Cir. 1994) .................................................................... 21

*Rodriguez v. City of Los Angeles*,
  No. 11-1135, 2015 WL 13260395 (C.D. Cal. May 8, 2015) ................... 12

*Romstad v. Contra Costa County*,
  41 F App'x 43 (9th Cir. 2002) (holding that administrative grievance seeking
  return of foster child tolled limitations on § 1983 action) ........................ 15

*Salgado v. Atl. Richfield Co.*,
  823 F.2d 1322 (9th Cir. 1987) ................................................................. 15

*Scutieri v. Estate of Revitz*,
  683 F. Supp. 795 (S.D. Fla. 1988) ............................................................. 9

*United States v. Basey*,
  613 F.2d 198 (9th Cir. 1979) ..................................................................... 9

*United States v. Katz*,
  601 F.2d 66 (2nd Cir. 1979) ...................................................................... 9

*Von Saher v. Norton Simon Museum of Art*,
  592 F.3d 954 (9th Cir. 2010) ................................................................. 7, 8

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
  372 F.3d 899 (7th Cir. 2004) ..................................................................... 7

*Yan Sui v. 2176 Pacific Homeowners Ass'n*,
  2012 WL 6632758 (C.D. Cal. Aug. 30, 2012) ........................................ 8, 9

*Ziglar v. Abbasi*,
  __ U.S. __, 137 S. Ct. 1843 (2017) ......................................................... 14

**California Cases**

*Addison v. State of Cal.*,
  21 Cal. 3d 313 (1978) .............................................................................. 14

*E-Fab, Inc. v. Accountants, Inc. Servs.*,
  153 Cal. App. 4th 1308 (2007) ................................................................. 13

*Fox v. Ethicon Endo-Surgery*,
  35 Cal.4th 797 (2005) .............................................................................. 12

- iv -

*John R. v. Oakland Unified Sch. Board,*
    48 Cal.3d 438 (1989)............................................................................................16

*Lantzy v. Centex Homes,*
    31 Cal. 4th 363 (2003)........................................................................................14

*Leaf v. City of San Mateo,*
    104 Cal.App.3d 398 (1980)................................................................................13

**Federal Statutes**

42 U.S.C. .......................................................................................................................7

42 U.S.C. § 1983......................................................................................................*passim*

42 U.S.C. § 1985(3).................................................................................................. *passim*

- v -

1
## I.      INTRODUCTION

2      The Court should deny the motion of defendant New Enterprise Associates, Inc. ("NEA") to

3 dismiss the complaint of plaintiff Michael Zeleny ("Zeleny").  NEA does not argue that Zeleny has

4 failed to state facts giving rise to a plausible claim for relief.  Nor could it.  Instead, it relies on fact-

5 bound affirmative defenses, which are not disclosed on the face of the pleading, and are not properly

6 resolved at the pleading stage.  Zeleny is not required to "plead around" these defenses.  His

7 allegations are sufficient.

8      Evidence that Zeleny discovered only recently—and which NEA vigorously sought to avoid

9 producing—demonstrates a conspiracy between NEA and the City of Menlo Park (the "City") dating

10 back to 2009 to take all steps necessary to stifle Zeleny's protests.  The City and NEA explicitly

11 worked together to find a "firm solution" to Zeleny.  This "firm solution" involved, among other

12 things:  (a) NEA surveilling Zeleny for years and feeding false information to the police that they

13 could then use to seize Zeleny's firearms; (b) multiple frivolous lawsuits filed by NEA, which were

14 rejected without any opposition, or dismissed for violating Zeleny's right to free speech; (c)

15 intensive police scrutiny, including routine stops without probable cause, and "enforcement stops" of

16 Zeleny's supporters; (d) a false prosecution of Zeleny for carrying a "concealed" weapon that he had

17 in a visible padlocked holster; and (e) drawing Zeleny into a protracted and rudderless permitting

18 process, which is being used as pretext to stonewall Zeleny's protests.

19       The City and NEA's most recent gambit has been to seize upon recently-enacted "open

20 carry" legislation to insist that Zeleny apply for permits from the City before continuing his protests.

21 The entire process is flawed.  State law does not require the City's approval for Zeleny to protest.

22 Nonetheless, after Zeleny attempted to comply with the City's newfangled permit requirement, the

23 City—with NEA's active encouragement—intentionally delayed that process for more than two

24 years.  It made up an intractable series of excuses for why it needed far more information from

25 Zeleny than it has requested from other applicants.  It then refused to process the application at every

26 turn—going so far as to refer Zeleny to a non-existent committee to address the application.

27 According to the City, Zeleny does not even need a permit in the first instance.  Yet his applications

28 are still subject to consideration by the City because they are "not complete yet."

OPPOSITION TO MOTION BY DEFENDANT NEA TO DISMISS

1    This more than adequately states claims for conspiracy to violate Zeleny's rights under the

2    First, Second, and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983 and 1985(3).  NEA's

3    affirmative defenses do not change this—certainly not at the pleading stage.

4    *First*, its limitations argument fails because nothing on the face of the complaint suggests that

5    the misconduct ceased prior to 2017.  In fact, it did not.  The complaint alleges ongoing conduct.

6    The City did not issue a final decision on Zeleny's *first* permit application until August 2017.   It

7    claims that Zeleny's most-recent permit application is still subject to review.  Moreover, the statute

8    of limitations was tolled while Zeleny participated in good faith in the sham permitting process from

9    June 2015 through August 2017.  His claims are timely under the two-year statute of limitations.

10   *Second*, the Noerr-Pennington doctrine does not apply to conduct that stifles First

11   Amendment freedoms.  Even if it did, however, this case falls squarely within the sham exception.

12   The substance of Zeleny's allegations is that NEA and the City subverted the permitting process, not

13   that they sought to use that process to reach a legitimate outcome.  Weaponizing an administrative

14   process to stifle protected activity is the prototypical sham not protected by Noerr-Pennington.

15   *Third*, NEA's arguments do not defeat Zeleny's claim under 42 U.S.C. § 1985(3).  The Ninth

16   Circuit has recognized that people engaged in political activity are protected by that statute.

17   Zeleny's protests are protected by the First and Second Amendments.  NEA's conspiracy to stifle his

18   protests satisfies the letter and spirit of the statute.

19   At the pleading stage, the Court must take Zeleny's allegations as true.  A fair reading of the

20   complaint makes clear that Zeleny has stated a claim, and that NEA's defenses do not apply.  The

21   motion should be denied.

22   **II.    FACTS**

23        **A.    Zeleny's Protests Against NEA.**

24   Zeleny has been protesting NEA and its affiliates since 2005.  FAC ¶¶ 41.  His protests focus

25   on NEA's continued financial backing of Min Zhu, the founder of WebEx.  FAC ¶ 24.

26   In addition to being the founder of WebEx, Min Zhu is a child rapist.  FAC ¶¶ 24-27.  NEA

27   is well aware of the credible allegations against Min Zhu and his flight to China as a result.  FAC ¶¶

28   38-39.  Nevertheless, NEA has continued to back Min Zhu and refuses to disavow his conduct.  *Id.*

Zeleny's protests against NEA have taken the form of in-person demonstrations, musical performances, food trucks, and other features designed to draw attention to NEA's support of Min Zhu. FAC ¶¶ 42-44. He also carries unloaded firearms to draw attention to the protests.

**B.     NEA's Conspiracy with the City of Menlo Park to Stop Zeleny's Protests.**

Facts learned in discovery in this action make clear that NEA has made an illicit agreement with the City of Menlo Park (the "City") to stop Zeleny's protests. FAC ¶ 136. In 2009 and 2010, Zeleny engaged in active, ongoing protests outside of NEA's headquarters. FAC ¶ 55.

Discovery has shown that in the midst of these protests, the City of Menlo Park and NEA entered into an agreement to stifle Zeleny's protests. FAC ¶ 136. Chief of Police Dave Bertini ("Bertini") was an instrumental part of this agreement. FAC ¶ 137. The plan of this conspiracy was to hamper and unlawfully restrict Zeleny's protests with the goal of ultimately making it impossible for him to protest. FAC ¶ 138. Both the City and NEA have engaged in numerous overt acts in support of this conspiracy, all in an effort to delay and ultimately stonewall Zeleny's efforts to protests.

Over the course of several years, NEA engaged in online and in-person surveillance of Zeleny. FAC ¶ 139(a). As part of this surveillance, NEA reported on Zeleny's whereabouts on an ongoing basis, and fed the City *false* information that it could potentially use to seize Zeleny's firearms. *Id.*

In connection with the conspiracy, NEA notified the City any time Zeleny was in the vicinity of its offices. In response, the City sent police officers to the scene to harass Zeleny and his supporters. Among other things, City officers (a) stopped and questioned Zeleny and his supporters routinely without probable cause or reasonable suspicion of a crime; (b) generated a multitude of "informational" police reports on Zeleny despite no evidence of a crime, and maintained a "Zeleny file" in violation of written procedure; (c) followed Zeleny and his supporters without cause, again in violation of standard procedure; (d) engaged in pretextual, sham "enforcement stops" of Zeleny's supporters for the sole purpose of questioning them about their relationship to Zeleny; and (e) required Zeleny to move or modify his protests without basis, and contrary to written procedure. FAC ¶ 140(b). When Zeleny would protest, City police officers stood by on site for hours without a

- 3 -

OPPOSITION TO MOTION BY DEFENDANT NEA TO DISMISS

1    legitimate purpose, and asked Zeleny and his supporters invasive and inappropriate questions in

2    violation of written protocol designed to dissuade them from protesting.  *Id.*

3          The City and NEA conspired to have Zeleny falsely prosecuted for carrying a concealed

4    firearm, based on a sham report generated by the City police.[1]  FAC ¶ 139(b).  At the hearings in

5    Zeleny's criminal case, the county District Attorney would refer to NEA as "her client" and "the

6    client."  FAC ¶ 63.  Zeleny was acquitted of all charges in December 2014.  FAC ¶ 64.

7          **C.      The City Seizes on the Open Carry Ban as Part of the Conspiracy.**

8          After putting a temporary stop to Zeleny's protests through the sham prosecution, the City

9    then went to work to put further roadblocks in place.  While Zeleny was being prosecuted, the City

10   submitted information about Zeleny to the state legislature in support of enacting the "open carry"

11   ban on rifles.  FAC ¶ 140(d).

12         Pursuant to its agreement with NEA to stifle Zeleny's protests, the City then seized upon the

13   open carry ban, which was enacted during Zeleny's prosecution, to further hamper his efforts.  FAC

14   ¶ 1.  The City has threatened Zeleny with arrest and prosecution for violation of the "open carry" ban

15   if he continues his protests.  FAC ¶¶ 79-83.  According to the City, Zeleny is required to have the

16   City's authorization before he can conduct his protests carrying firearms.  FAC ¶ 81.

17         In order to get this approval, the City required Zeleny to submit to a newly-created permitting

18   process.  FAC ¶¶ 81-82.  According to the City, Zeleny needed either a "Special Events Permit" or a

19   filming permit in order to carry firearms as part of his protests.  *Id.*  Throughout this process, the

20   City has maintained both (a) that Zeleny does not need a permit to protest, so cannot obtain a permit;

21   and (b) that if he continues his protests *carrying firearms* without a permit, he will be arrested and

22   prosecuted for violation of the "open carry" ban.

23         **D.      The City and NEA Delay and Derail the Permitting Process.**

24         Although he disagrees with the City's requirements, in an effort to comply, Zeleny has

---

[1] In this sham report, a City police officer reported that Zeleny was carrying a "concealed firearm" in a plainly
visible, padlocked holster.  Earlier, the same officer had seen the same holster, and concluded that it was open
and obvious and that Zeleny had not carried a concealed weapon.  The City contended at the same time that
the firearm was both "concealed" and "unconcealed."  It also withheld clearly exculpatory evidence,
including the officer's prior report indicating that the firearm was not concealed.

1    applied for both a Special Events Permit and a film permit.  He began the permitting process in

2    2015, and still has not been issued a permit.  FAC ¶ 80.

3              1.      **The City Delays and Derails Zeleny's Special Events Application.**

4          The ordinary permitting process involves a series of City departments engaging in an

5    informal dialog with the applicant, and giving feedback about how the application should be

6    modified to meet City requirements.  Chief of Police Bertini is not ordinarily involved in the process.

7    FAC ¶ 140.

8          Based on its mutual goal with NEA of making it as difficult as possible for Zeleny to protest,

9    the City—with NEA's encouragement and assistance—delayed and ultimately derailed the

10   permitting process from the outset.  Although he is not ordinarily involved in permitting decisions,

11   Bertini personally took charge of Zeleny's permit applications himself.  FAC ¶ 141(e).  Within days

12   of receiving the application—and before communicating with Zeleny about it—Bertini reported to

13   NEA that the permit application was being denied.  FAC ¶ 138(d).

14         The City then proceeded to delay the process, and to deny the permit on a series of opaque,

15   indecipherable, and ever-changing grounds, which were simply a pretext for content-based

16   restrictions on Zeleny's protests.  As examples, the City maintained that Zeleny does not need a

17   permit to protest, and has used this as a basis to refuse to grant him a permit.  But, it acknowledged

18   that if he did not have one, he would be arrested.  The City repeatedly asked Zeleny for more

19   information, including specific details about his equipment and configurations, that it did not require

20   from other applicants.   It then used the details Zeleny provided to find grounds to deny the permit.

21         It does not appear that the other City departments, which commonly review permit

22   applications, have ever given feedback on Zeleny's application.  The City declined to engage in the

23   interactive process ordinarily used in permit applications—allegedly for "Zeleny's convenience."  At

24   one point, the City recommended that Zeleny address his application with a "Special Events

25   Committee" that *does not exist, and has not existed since the City adopted a permitting process.*

26         Bertini also intentionally delayed Zeleny's permitting application.  Following a hearing in

27   2016, in response to the City's assertion that Zeleny needed a firearm's permit to engage in the

28   event, Zeleny submitted his Entertainment Firearms Permit issued by the California Department of

- 5 -

Justice, Bureau of Firearms.  The permit expired on July 31, 2017.  Bertini repeatedly delayed and rescheduled the subsequent hearing until after the permit expired.

Zeleny got to his final hearing in August 2017, more than two years after he initiated the permitting process.  The City finally denied Zeleny's permit application on August 19, 2017.

**2.      The City Delays and Derails Zeleny's Film Permit Application.**

In September 2017, Zeleny asked that his permit application be reconsidered as a film permit application.  He submitted the appropriate paperwork to the City for processing.  Once again, the City derailed this process.

Bertini again took over processing of Zeleny's film permit application, although he is ordinarily not involved in this process.  FAC ¶ 140(e).  The City again demanded extensive, unnecessary information from Zeleny never required from other applicants.  It used this information to refuse to issue Zeleny a film permit.  It has never fully processed Zeleny's film permit application.

Instead, to this day, the City maintains that both of Zeleny's permit applications are incomplete and cannot be processed.  The City has effectively refused to issue a final, unequivocal determination on the merits of either application.

Along the way, Zeleny requested that the City identify conditions and criteria for the permits. The City refused to do so, despite the requirement of law that such conditions and criteria exist and be applied even-handedly.

**E.      Procedural History.**

Zeleny filed this action on December 28, 2017.  He brought claims against the City of Menlo Park for violation of his First, Second, and Fourteenth Amendment Rights.  He also brought a claim under 42 U.S.C. § 1983 against the City and Bertini.

Zeleny also brought claims against then-Governor Brown and Attorney General Becerra challenging the constitutionality of the "open carry" ban.  Governor Brown was later dismissed.

On December 13, 2018, Zeleny issued a subpoena to NEA asking, among other things, for its communications with the City and Bertini regarding his protests.  NEA moved to quash on January 25, 2019.  Following a hearing, the Court denied the motion to quash in part, and ordered NEA to produce documents reflecting its communications with the City involving Zeleny or his protests.

1   *See* Order, Dkt. No. 65.

2       Zeleny also requested documents from the City relating to its contacts with NEA.  The City

3   produced documents in March 2019.  The documents revealed the conspiracy with NEA.  Among

4   other things, the documents included numerous emails between city police officials, including

5   Bertini, and NEA, developing a plan to stifle Zeleny's protests.  Zeleny also took the deposition of

6   Bertini on March 19, 2019, which also provided circumstantial evidence of the conspiracy.

7       Based on the new evidence he uncovered, on March 21, 2019, the existing parties agreed to

8   allow Zeleny to file a First Amended Complaint.  The stipulation, filed March 29, provides:

9           Plaintiff contends that the documents produced by the City of Menlo Park, and
            confirmed in Chief Bertini's deposition, evidence a conspiracy between NEA, the
10          City of Menlo Park, and Chief Bertini to stop Zeleny from engaging in his peaceful
            protests.
11
            Zeleny contends that this evidence supports claims for (a) conspiracy to violate 42
12          U.S.C. § 1983, see Franklin v. Fox., 312 F.3d 423, 441 (9th Cir. 2002) ("[a] private
            individual may be liable under [42 U.S.C.] § 1983 if she conspired or entered joint
13          action with a state actor"); and (b) conspiracy to violate civil rights under 42 U.S.C. §
            1985(3), see Fargaza v. FBI, 916 F.3d 1202 (9th Cir. 2019).
14
15  Stipulation to Filing of First Amended Complaint, Dkt No. 68.

16      The stipulation attached a draft First Amended complaint, adding causes of action

17  against NEA for conspiracy to violate 42 U.S.C. § 1983, and violation of 42 U.S.C. § 1985.

18  *Id.*  The Court granted the stipulation and deemed the First Amended Complaint filed as of

19  April 1, 2019.  Order, Dkt. No. 70.

20

21  **III.   ARGUMENT**

22      **A.      The Statute of Limitations Does Not Bar Zeleny's Claims.**

23      In order for a motion to dismiss to be viable on statute of limitations grounds, it must clearly

24  appear from the face of the complaint that the claim is time-barred.  A plaintiff need not plead

25  around the statute of limitations.  *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901

26  (7th Cir. 2004). "A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff

27  can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton*

28  *Simon Museum of Art*, 592 F.3d 954, 959 (9th Cir. 2010) (quoting *Supermail Cargo, Inc. v. United*

1    *States*, 68 F.3d 1204, 1206 (9th Cir. 1995); modification omitted)); *see also Jablon v. Dean Witter &*

2    *Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (9th Cir. 1980) (complaint may only be dismissed if, when

3    read with "required liberality," it is clear that statute was not tolled).  As NEA concedes, where the

4    limitations issue depends on a "determination of when a claim begins to accrue," the complaint

5    cannot be dismissed unless "the evidence is so clear that there is no genuine factual issue."  Mot. at

6    p. 4 (quoting *Mir v. Deck*, No. 12-1629, 2013 WL 4857673, at *5 (C.D. Cal. Sept. 11, 2013), *aff'd*

7    676 F. App'x 707 (9th Cir. 2017)).

8    **1.    The Complaint Does Not Make It "Appear[] Beyond Doubt" that**
9    **Zeleny's Claims are Time Barred.**

10    NEA misconstrues the allegations of Zeleny's First Amended Complaint.  To be sure, as

11    factual background—included before Zeleny amended the complaint to add NEA—Zeleny includes

12    a number of acts dating back many years.  These acts evidence the ongoing conspiracy alleged

13    elsewhere in the FAC.  A plaintiff may properly "use [prior] time barred acts . . . as evidence to

14    establish motive and to put his timely-filed claims in context."  *Carpinteria Valley Farms, Ltd. v.*

15    *County of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003) (citing *RK Ventures, Inc. v. City of*

16    *Seattle*, 307 F.3d 1045, 1062 (9th Cir. 2002)).  The substantive allegations of the complaint against

17    NEA, however, relates to ***ongoing actions*** on NEA's part to stifle Zeleny's protests.  A fair reading

18    of the complaint makes this clear.

19    As NEA concedes, the statute of limitations on a conspiracy-based claim runs from the last

20    overt act undertaken in furtherance of the conspiracy.  *Yan Sui v. 2176 Pacific Homeowners Ass'n*,

21    2012 WL 6632758, at *17 (C.D. Cal. Aug. 30, 2012).  NEA goes on to assert—without reference to

22    the FAC—that all of the overt acts "occurred well before March 29, 2017."  The lack of citation to

23    the complaint is for good reason.  The actual allegations of the FAC directly refute NEA's

24    assertions.  In reality, the conduct Zeleny complains about lasted throughout 2016 and 2017.  There

25    is no basis on the face of the complaint to conclude otherwise, and assume that NEA simply stopped

26    its unlawful conduct.  *See Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir.

27    2010) (dismissal is only proper where "the running of the statute is apparent on the face of the

28    complaint") (citation omitted).

Instead, NEA has tried to flip the standard on this motion, demanding that Zeleny allege when every single overt act—undertaken by NEA, the City, and Bertini, without Zeleny's knowledge—occurred.  Zeleny is not required to do so.  It is enough that he alleges an ongoing course of conduct, including overt acts that continued well into 2017.  Among other things, Zeleny alleges that NEA has engaged in "years-long surveillance of Zeleny both online and in-person," that it "attended a number of meetings with City personnel to address [the] protests," and that NEA developed a plan with the City to deny Zeleny's "Special Events" permit application "at each stage of the appeal process, which did not end until August 2017.  FAC ¶ 139.  Zeleny similarly alleges overt acts on the part of the City, which have continued to this day – *e.g.*, the Zeleny's film permit application with the City remains in limbo and the City refuses to act on it.

There is no basis on the face of the complaint to conclude that all of this conduct occurred prior to March 2017.  As a factual matter it did not.  There is no basis to dismiss the claims.

**2.      The Statute of Limitations Commenced, at the Earliest, on August 17, 2017, When the City Denied Zeleny's Permit Application.**

NEA is confused in its application of the "last overt act" doctrine.  Under that doctrine, absent tolling discussed below, the statute of limitations runs separately from "each overt act in furtherance of the conspiracy that is alleged to cause damage to the plaintiff."  *Yan Sui*, 2012 WL 6632758, at *17.  Each defendant's "participation in the conspiracy is presumed to continue until the last overt act by any of the coconspirators."  *United States v. Katz*, 601 F.2d 66, 68 (2nd Cir. 1979); *United States v. Basey*, 613 F.2d 198, 202 (9th Cir. 1979).  As a result, the "last overt act" means the last overt act *by any of the co-conspirators*.  *See Scutieri v. Estate of Revitz*, 683 F. Supp. 795, 803 (S.D. Fla. 1988) (holding that statute of limitations "applies equally to all defendants" and runs from the "last overt act by any of the co-conspirators").  It is not limited to overt acts by NEA.

While Zeleny properly alleges that the conspiracy and overt acts are ongoing, at the earliest, the last overt act occurred in August 19, 2017, less than two years ago.  The Court may take judicial notice of the fact that the City issued its final denial of Zeleny's permit application on August 19,

OPPOSITION TO MOTION BY DEFENDANT NEA TO DISMISS

2017, which is well within the statute of limitations period.[2]  Zeleny specifically alleges that the denial of his "special events" and film permit applications, at Bertini's direction, was an overt act in furtherance of the conspiracy.

> 140.    The City and Bertini also engaged in overt acts in furtherance of the conspiracy, at the behest of NEA, as alleged above.  Among other things: . . . After Zeleny's prosecution was over, the City police department, including Bertini personally, took charge of processing Zeleny's "special events" and film permit applications and denied those applications without basis on content-based grounds.  Bertini was not the person responsible for handling either type of application within the City, but nonetheless participated directly with the City Attorney in denying the permit applications on content-based grounds in violation of Zeleny's rights under the First and Second Amendment.

FAC ¶ 140(e).  Zeleny also alleges that NEA participated directly involved in his permit application process, and "during these meetings, the City and NEA agreed and developed a plan to continue to deny Zeleny's permit applications *at each stage of the appeal process*."  FAC ¶ 139(d).

Zeleny alleges that the City and NEA have barred him from protesting by hijacking and derailing the permitting process, which acts continue to this day.  The crux of this case is the City's constant delay, deferral, and doublespeak in refusing to grant Zeleny a permit, while claiming that he does not need a permit, but also threatening to arrest him if he does not have one.  The August 2017 appeal denial was a further overt act in support of this conspiracy.  Moreover, the City still purports to have Zeleny's film permit under consideration.  At minimum, the statute did not begin to run until the City issued its most recent decision denying the permit application, which was the product of its conspiracy with NEA to indefinitely delay issuing permits to stop Zeleny from protesting.  That the statute of limitations "makes little difference" where, as here, the plaintiff seeks forward-looking relief against an ongoing government practice barring him from engaging in lawful activity.  *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004) ("[T]he time bar makes little difference to [plaintiff's] requests for declaratory and injunctive relief.  By challenging the denial of [plaintiff's] application for a commercial source number, without which [its] aggregate materials cannot be used in state construction projects, [plaintiff] is challenging Arizona's policy against using materials from Woodruff Butte.")

---

[2] A court may refer to matters subject to judicial notice on a motion to dismiss.

**3.    The Statute of Limitations Has Not Run under the Continuing Violation Doctrine Because the Violation and Injury to Zeleny Are Ongoing.**

The "continuing violation" doctrine applies to claims under 42 U.S.C. § 1983.  *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997).  "The continuing violations doctrine extends the accrual of a claim if a continuing system of discrimination violates an individual's rights 'up to a point in time that falls within the applicable limitations period.'"  *Douglas v. Cal. Dept. of Youth Auth.*, 271 F.3d 812, 822 (9th Cir. 2001) (citation omitted).  There are "two methods" to show a continuing violation: (1) "a series of related acts against one individual, of which at least one falls within the relevant period of limitations"; or (2) a "systematic policy or practice."  *Id.*  Under a "systematic violation" the plaintiff need not allege any act within the limitation period because it depends on "general practices and policies."  *Id.* (citation omitted).

The "continuing violation" doctrine applies where "the specific acts alleged are instances of some broader policy."  *K'Napp v. Hickman*, No. No. 05-2520, 2008 WL 495755, at * 6 (E.D. Cal. Feb. 21, 2008) (citing *Gutowsky* and *Cholla Ready Mix*).  Thus, where the plaintiff alleges that discrete acts are part of a "campaign" or "policy of retaliation" that has continued into the limitations period, the continuing violation doctrine bars dismissal.  *Id.*, at *6 ("These are not merely self-serving statements . . . Rather, they are allegations in the third amended complaint").

The plaintiff may also show a series of acts that are closely related enough to be part of a continuing violation.  *Douglas*, 271 F.3d at 822.  "The question . . . boils down to whether sufficient evidence supports a determination" that the acts are "related closely enough to constitute a continuing violation."  *Bruno v. W'ern Elec. Co.*, 829 F.2d 957, 961 (10th Cir. 1987).  Whether the acts are sufficiently related is "a question of fact" generally reserved for the jury.  *Id.*

Both grounds apply here.  A fair reading of the FAC shows that the City, Bertini, and NEA conspired as early as 2009 to develop a "firm plan" to stop Zeleny's protests.  Between that time and 2012, at NEA's behest, the City interfered with Zeleny's protests by surveilling him, hassling his supporters, and restricting the nature of his activities; at the same time.  This effort culminated in Zeleny's frivolous prosecution for carrying a "concealed" handgun openly in a holster on his belt, during which the district attorney referred to NEA as her client.  Zeleny could not protest during his prosecution.  Thereafter, the FAC alleges that the City was instrumental in having the "open carry"

OPPOSITION TO MOTION BY DEFENDANT NEA TO DISMISS

ban passed during Zeleny's prosecution, and then "seized upon it" to prevent Zeleny from protesting. FAC ¶ 1.  It has done so by requiring that Zeleny obtain permits to engage in his protests, and then finding ways to stall, delay, and block his applications for the necessary permits.  FAC ¶¶ 87, 138. Zeleny alleges that this reflects official policy on the City's part.  FAC ¶ 87.

The City, *to this day*, threatens Zeleny with arrest if he resumes his protests without permits. It purportedly still has his most-recent film permit application under review currently.  The course of conduct remains ongoing to date.  There is, at the very least, a factual question of whether this conduct amounts to a continuing violation.  *See*, *e.g.*, *Anthony v. Cnty. of Sacramento*, 845 F. Supp. 1396, 1402 (E.D. Cal. 1994) (denying motion to dismiss where acts were alleged to be "related by common motive, theme, target, and function"); *Dowling v. Arpaio*, No. 09-1401, 2011 WL 843942, at *8 (D. Ariz. Mar. 8, 2011) (finding allegations sufficient where plaintiff alleged specific acts relating to the same course of conduct running into the limitations period); *Rodriguez v. City of Los Angeles*, No. 11-1135, 2015 WL 13260395, at *19 (C.D. Cal. May 8, 2015) (applying doctrine to issuance of various gang injunctions over time; denying summary judgment).

> ### 4.   Zeleny Could Not Have Discovered the Cause of His Injury Until Discovery Revealed that NEA Had Conspired with the City.

The "discovery rule" applies to claims under 42 U.S.C. § 1983.  *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017).  Under the discovery rule, a plaintiff's cause of action does not accrue and is tolled "until the plaintiff discovers, or has reason to discover, the cause of action."  *Fox v. Ethicon Endo-Surgery*, 35 Cal.4th 797, 807 (2005).  A plaintiff must have "reason to at least suspect a factual basis for [the] elements" of the claim.  *Bone v. City of L.A.*, 471 F. App'x 620, 622 (quoting *Fox*).  "Regarding the amount of information a reasonably diligent plaintiff must have about a particular fact before she is deemed to have 'discovered it' . . . a fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information about the fact to adequately plead it in a complaint with sufficient detail and particularly to survive a 12(b)(6) motion to dismiss."  *Pension Trust Fund for Op. Eng'rs v. Mortgage Asset Secur. Trans., Inc.*, 730 F.3d 263, 275 (3d Cir. 2013) (citation and modifications omitted); *see also Fenerjian v. Nongshim Co., Ltd.*, 72 F. Supp. 2d 1058, 1077 (N.D. Cal. 2014) (citing *Pension Trust Fund*; denying motion to dismiss

where plaintiff plausibly alleged that it could not have discovered conspiracy until public announcement of investigation).

The plaintiff must have reason to know that he was harmed by the particular type of wrongdoing alleged. *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1323 (2007). Moreover, he must have reason to believe that the particular defendant caused the injury alleged. *Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 408-09 (1980) ("[i]t would be contrary to public policy to require that [he] file a lawsuit against [a particular defendant] when the evidence available to [him] failed to indicate a cause of action against this defendant"). In cases where a defendant is liable on a conspiracy theory, the discovery rule applies to when the plaintiff knew or should have known of the conspiracy. *Fenerjian*, 72 F. Supp. 2d at 1077.

"[T]he question of when the alleged wrongdoing was or should have been discovered is a question of fact. It may be decided as a matter of law only when the uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct." *Nevada Power Co. v. Monsanto Co.*, 955 F.3d 1304 (9th Cir. 1992) (quoting *Mosesian v. Peat, Marwick, Mitchell & CO.*, 727 F.2d 873, 877 (9th Cir. 1984); modifications omitted).

Under that rule, where the basis for a cause of action is not readily apparent, it accrues when the plaintiff reasonably has access to the information needed to discover the claim. *Id.* (holding that Fourth Amendment claim for filing false affidavit in support of warrant did not accrue until the underlying affidavit "became reasonably available"). Any other rule "would encourage unripe claims and establish perverse incentives." *Id.* It would "force plaintiffs without access [to the necessary evidence] to file unripe and factually unsupported § 1983 suits, wasting time and judicial resources as prospective plaintiffs seek to preserve their claims before the before the expiration of the applicable limitations period." *Id.*

The same is true here. The original complaint makes clear that, if Zeleny had any basis to name NEA as a defendant, and could have survived a Rule 12(b)(6) motion, he would have done so at that time. *Pension Trust Fund*, 730 F.3d at 275; *Fenerjian*, 72 F. Supp. 2d at 1077. He simply did not have sufficient information at the time. *See Bone*, 471 F. App'x at 623 (reversing denial of leave to amend on grounds that plaintiff could plausibly allege that he did not realize he was racially

OPPOSITION TO MOTION BY DEFENDANT NEA TO DISMISS

discriminated against until seeing evidence that a subsequent owner of his property was treated differently). Conspiracy to violate section 1983 requires evidence of an actual agreement between a government entity and a private actor to violate constitutional rights. *See Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) (affirming summary judgment where plaintiff did not have evidence of a "meeting of the minds"). The same is true of a claim under section 1985(3). *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1868 (2017) ("a plaintiff must first show that the defendants conspired— that is, reached an agreement—with one another") (citation omitted). People do not usually conspire out in the open. Facts supporting a conspiracy are often difficult to discover, as they were here.

Zeleny did not discovery evidence of the conspiracy until it was produced by the City in March of this year. He had no ability to obtain that evidence other than through discovery. NEA vigorously challenged Zeleny's right to the materials showing the conspiracy by refusing to produce any documents or a deposition witness, and by moving to quash Zeleny's subpoena. *See Klein*, 865 F.3d at 1280 (noting that even after lawsuit the defendant "repeatedly resisted efforts to release" the affidavit). Zeleny promptly sought leave to amend after discovering this evidence.

### 5. The Statute of Limitations Was Equitably Tolled While Zeleny Exhausted Administrative Procedures as a Matter of Settled Law.

Federal courts apply state law to issues "regarding tolling, including equitable tolling, except to the extent limited by federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citation omitted). Equitable tolling applies and "favors relieving plaintiff from the bar of the limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage." *Addison v. State of Cal.*, 21 Cal. 3d 313, 317-18 (1978) (collecting cases).

Equitable tolling is applied flexibly "to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370 (2003).

> California courts "have liberally applied tolling rules or their functional equivalents to situations in which the plaintiff has satisfied the notification purpose of a limitations statute." Consistent with this tradition, the doctrine of equitable tolling rests upon the reasoning that a claim should not be barred "unless the defendant would be unfairly prejudiced if the plaintiff were allowed to proceed."

*Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (reversing order granting motion to dismiss where equitable tolling was available) (internal citations omitted).   Equitable tolling will apply if the first proceeding (a) gives "timely notice to the defendants"; (b) defendants are not prejudiced in gathering evidence; and (c) the plaintiff's "good faith and reasonable conduct in filing the second claim." *Id.* (citing cases).   "[O]rdinarily equitable tolling is not properly resolved at the pleading stage." *Id.*

Pursuit of administrative remedies suffices to constitute tolling.   "As a general rule, a state statute of limitations is tolled when the plaintiff is pursuing an administrative remedy for the same alleged wrongdoing." *Salgado v. Atl. Richfield Co.*, 823 F.2d 1322, 1326 (9th Cir. 1987).   Where the plaintiff's administrative efforts are directed at avoiding the "major injury alleged in his complaint," they suffice. *Cervantes*, 5 F.3d at 1277 (holding in § 1983 action that plaintiff's action was tolled where he sought reinstatement through administrative efforts); *see also Romstad v. Contra Costa County*, 41 F App'x 43, 45-46 (9th Cir. 2002) (holding that administrative grievance seeking return of foster child tolled limitations on § 1983 action); *Doe v. Kaweah Delta Hosp.*, 478 F. App'x 390, 391 (9th Cir. 2012) (timely filing of administrative claim tolled statute).   "The doctrine [of equitable tolling] suspends the statute of limitations pending exhaustion of administrative remedies, even though no statute makes exhaustion a condition of the right to sue." *Donoghue v. Orange County*, 848 F.2d 926, 931 (9th Cir. 1987); *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) (noting that courts "uniformly hold" that mandatory exhaustion tolls the statute).   Tolling also applies where a plaintiff pursues administrative remedies in good faith, even if the administrative "procedures are ultimately futile." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1510 (9th Cir. 1986).

Zeleny attempted to exhaust his administrative remedies through the City's permitting process starting in 2015 by filing a permit application.   FAC ¶ 80.   He has gone through multiple stages of appeal in that process, seeking to obtain a permit that will allow him to protest.   He sought the same relief as here – *i.e.*, the right to conduct his protests carrying unloaded firearms.   He seeks only forward-looking relief against the City.   He raised the same arguments he raises here about why the First and Second Amendments require that he be allowed to protest.

Zeleny's good faith efforts to obtain the permit *that the City required* necessarily tolled the

OPPOSITION TO MOTION BY DEFENDANT NEA TO DISMISS

statute of limitations.  The permitting process was effectively a prerequisite to this suit.  Had the City simply given Zeleny the permit, this lawsuit would never have been filed.  Indeed, this lawsuit stems in large part from the repeated delay and denial of Zeleny's applications on content-based grounds.

Moreover, evidence developed during discovery shows that the City intentionally delayed and frustrated Zeleny's permitting process for many months, and that the process was rigged from the outset.  FAC ¶ 140(e).  Moreover, NEA was directly aware of and involved in these efforts. FAC ¶ 139.  "It is well settled that a public entity may be estopped from asserting the limitations of claims hwere its agents or employees have prevented or deterred the filing of a timely claim by some affirmative act."  *John R. v. Oakland Unified Sch. Board*, 48 Cal.3d 438, 445 (1989).  Had the City simply denied Zeleny's permit, rather than conspiring with NEA to delay and subvert the permitting process, Zeleny would have filed this suit long ago, and would have discovered NEA's participation equally long ago.

> **B.**   ***Noerr-Pennington* Immunity Does Not Immunize NEA's Conspiracy to Silence Zeleny's Protests on Content-Based Grounds.**
>
> **1.**   **Noerr-Pennington immunity does not apply to claims arising from abridgment of First Amendment rights.**

Noerr-Pennington immunity arose in the anti-trust context.  Courts do not mechanically apply it to other contexts.  To determine whether Noerr-Pennington "protects a particular activity, [courts] must evaluation whether exempting it would further" the interests represented by Noerr-Pennington "sufficiently to justify overriding" the other laws from which the defendant seeks protection.  *In re Airport Car Rental Antitust Litig.*, 693 F.2d 84, 86 (9th Cir. 1982); *see also A.H.D.C. v. City of Fresno, Cal.*, No. 97-5498, 2000 WL 35810722, at *4 (E.D. Cal. Aug. 31, 2000). "[O]ne must utilize legitimate means to get the desired end," and cannot "bar any other party's meaningful access to the same process.  *A.H.D.C.* 2000 WL 35810722, at *4.  Where a strong constitutional interest weighs against Noerr-Pennington immunity, courts decline to apply Noerr-Pennington.  *Id.* (denying motion to dismiss civil rights claims, noting "the First Amendment does not necessarily trump" civil rights laws based on the Fifth and Fourteenth Amendments").

It is unsettled whether Noerr-Pennington applies where the challenged activity represents an infringement on First Amendment rights.  *Adams v. Kraft*, No. 10-0602, 2011 WL 846065, at *14–

OPPOSITION TO MOTION BY DEFENDANT NEA TO DISMISS

15 (N.D. Cal. Mar. 8, 2011) (noting that there is no law directly addressing whether Noerr-Pennington applies to First Amendment retaliation claims).   As the court noted in *Adams*, the decisions of the Supreme Court and the Ninth Circuit in *Hartman v. Moore*, 547 U.S. 250 (2006), and *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008) suggest that arguable petitioning activity is actionable if it infringes on First Amendment rights and is not immunized.  *Id.*

        This is the better view.  Noerr-Pennington is a First Amendment doctrine.  NEA is seeking to invoke it to immunize efforts to prevent Zeleny from engaging in Zeleny's own core First Amendment activity, including protests.  Whatever interest NEA may have in its "petitioning" conduct, that interest cannot outweigh Zeleny's constitutional right to free speech.  *A.H.D.C.*, No. 97-5498, 2000 WL 35810722, at *4.   One speaker cannot invoke the First Amendment to prevent another from enjoying the same protection:

> Surely a command that the government itself shall not impede the free flow of ideas does not afford non-governmental combinations a refuge if they impose restraints upon that constitutionally guaranteed freedom. Freedom to publish means freedom for all and not for some. Freedom to publish is guaranteed by the Constitution, but freedom to combine to keep others from publishing is not. Freedom of the press from governmental interference under the First Amendment does not sanction repression of that freedom by private interests.

*Associated Press v. United States*, 326 U.S. 1, 20 (1945).  "First Amendment rights may not be used as a pretext for achieving 'substantive evils.'"  *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 515 (1972) (quoting *NAACP v. Button*, 371 U.S. 415, 444 (1963)).

## 2.    The sham exception to Noerr-Pennington applies.

        Assuming for the sake of argument that the Noerr-Pennington doctrine would apply in this case, the "sham exception" to the doctrine would nullify its applicability to NEA.  In *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991), the Supreme Court explained:

> The "sham" exception to Noerr encompasses situations in which persons use the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon. A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay.

        That is exactly the situation Zeleny alleges in this case: NEA conspired with the City not

with a legitimate expectation of ultimately preventing Zeleny from obtaining a permit to protest, but to delay and protract the process of Zeleny's obtaining a permit.  Likewise, NEA had no legitimate expectation of stifling the content or method of Zeleny's protests, but it enlisted the help of the City to chill and delay Zeleny's protests with content-based threats of prosecution.

Similarly, the Supreme Court applied the sham exception in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972), and allowed an antitrust claim to be based on repetitive filing of baseless petitions before a state agency.  The exception was warranted based on an attempt to clog the agency's decision-making process and to deprive the competitor of an opportunity to have its applications considered.  Here, Zeleny's application for a permit dragged on for more than two years.  NEA and the City have coordinated an effort to pepper Zeleny with ever-changing time, place, and manner requirements for his protests.  Based on recently acquired evidence, Zeleny would also allege, if he needs to amend his complaint, that NEA and the City's chief of police, Bertini, jointly developed the strategy of delaying Zeleny's application so that other permits that Zeleny had obtained would expire.

The Ninth Circuit has held that the scope of the Noerr-Pennington doctrine depends on which branch of government is involved, and more specifically, "'on the degree of political discretion exercised by the government agency.'"  *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1061-62 (9th Cir. 1998).  If it is the legislature, the scope of the exception is "extraordinarily narrow."  The scope is much broader if the judicial branch is involved.  In between the legislature and the judiciary, if the executive branch is involved, a court must determine "whether the executive entity in question more resembled a judicial body, or more resembled a political entity."  *Id.*  The *Kottle* court reviewed Ninth Circuit decisions and summarized:

> [F]or purposes of the sham exception, executive entities are treated like judicial entities only to the extent that their actions are guided by enforceable standards subject to review.  Only when administrative officials must follow rules is it meaningful to ask whether a petition before an agency was "objectively baseless," or whether there has been a pattern of petitioning without regard to the "merit" of the petitions.

In *Kottle*, the court found that the judicial (litigation) scope of the sham exception should apply to the particular administrative agency involved.  Id. at 1062-1063.  Analogous to this case, the

issue was whether issuance of "Certificates of Need" to the plaintiff was held up by a competitor through anti-competitive lobbying to the State of Washington's Department of Health.  The Ninth Circuit determined that the judicial version of the sham exception applied because the Department:

> conducts public hearings, accepts written and oral arguments, permits representation by counsel, and allows affected persons to question witnesses. The Department must issue written findings after its hearing. Its decision is appealable, and that appeal is governed by APA procedures and statutory standards.

*Id.* at 1062.  Similarly, here, the City conducts public hearings on appeals of denials of an application for a Special Event permit, ultimately before the City Counsel.  The administrative appeal process includes testimony and cross-examination of witnesses under oath – a process Zeleny employed in this case.  Issuance of a permit is (or should be) subject to neutral criteria.  Judicial review is available for denial of a permit.  To the extent these facts are not already in Zeleny's operative complaint and would need to be alleged, Zeleny would easily be able to do so in an amended complaint.

The following facts support application of the sham exception to this case:

• The City, acting at the behest of NEA, threatens to prosecute Zeleny under California Penal Code § 313(1)(a) based on the content of his protest message, an illegitimate purpose forbidden by the First Amendment.  ¶¶ 79, 88-91, 136-141.

• The City testified under oath at a hearing on an appeal by Zeleny of the denial of his permit application that its decision was based in part on the content of Zeleny's protests – again, an impermissible basis for the City's action.  ¶¶ 86, 87, 136-141.

• The City has arbitrarily withheld a "Special Event" permit for Zeleny's protests and refused to identify the conditions or criteria Zeleny would have to satisfy for such a permit, despite Zeleny's repeated assurances that he would accommodate all reasonable time, place, and manner restrictions.  ¶¶ 82-87, 91, 136-141.  Instead, the City asked Zeleny for information that would never be required of other applicants, and then used it to develop an ever-changing list challenges to his permit.

• The City, acting at the behest of NEA, has adopted ever-changing requirements for the time, place, and manner of Zeleny's protests, under threat of prosecution if

- 19 -

OPPOSITION TO MOTION BY DEFENDANT NEA TO DISMISS

Zeleny did not comply.  ¶¶ 91, 136-141.

    •    The City, acting at the behest of NEA, has adopted an arbitrary and incorrect interpretation of the pertinent firearm statutes to restrict the manner of Zeleny's protests.  ¶¶ 95-98, 136-141

    •    Based on recently acquired evidence, Zeleny would also allege, if he needs to amend his complaint, that NEA and the City's chief of police intentionally developed a strategy of delaying Zeleny's application so that other permits that Zeleny had obtained would expire. All of these facts are either alleged in Zeleny's first amended complaint at ¶¶ 79-91, or would easily be added in an amended pleading.

    Finally, NEA's reliance on *Forro Precision, Inc. v. IBM*, 673 F.2d 1045 (9th Cir. 1982), is misplaced.  In *Forro*, plaintiff FPI contended that IBM deceived law enforcement into searching FPI's plant, damaging FPI's reputation and operations in the process.  FPI alleged that IBM intended to harass it and its vendors in an attempt to monopolize.  In defense, IBM asserted the Noerr-Pennington doctrine.  *Id*. at 1059-1061.  The Ninth Circuit held that the sham exception did not apply because even if the evidence demonstrated that IBM intended to harass FPI and its vendors, FPI "had to show as well that IBM had no legitimate purpose in going to the police or that it used the police in an illegitimate manner." *Id.* at 1060-1061.  FPI offered no such evidence at trial.  Here, Zeleny's allegations must be taken as true on a pleading challenge.  Zeleny alleges that NEA had an improper purpose and used the police in an illegitimate manner.  To the extent Zeleny has not already done so, Zeleny would amend his complaint to add such allegations.

## C.    42 U.S.C. § 1985(3) Applies to Equal Protection Violations Stemming from Restrictions on Exercise of Fundamental Rights.

    NEA is wrong in arguing that Zeleny must allege that he is a member of a racial minority or other similarly under-represented group.  The statute makes plain that it applies to efforts to deprive "*any person* or class of persons of the equal protection of the laws."  42 U.S.C. § 1985(3).  This belies NEA's claim that a section 1985(3) claim cannot be based on its efforts to deprive Zeleny of equal protection – *i.e.*, in the exercise of his fundamental First and Second Amendment Rights.

"Courts construing § 1985(3) have not limited its protection to racial or otherwise suspect classifications." *Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499, 504 (9th Cir. 1979) (defining class as "similarly situated women purchasers of life insurance").  Courts have upheld section 1985(3) claims for conduct directed at "political opponents," or "supporters of a political candidate." *Id.*  A claim by a single family based on the theory that the police department failed to stop harassment by a police officer due to his position on the force was found sufficient to state a claim. *Azar v. Conley*, 456 F.3d 1382 (6th Cir. 1972); *see also Life Ins. Co.*, 591 F.2d at 504 (citing *Azar*).

Although the law is muddled, the Ninth Circuit has continued to follow the broader interpretation of section 1985(3) stated in *Life Insurance Co. of North America.  See Portland Feminist Women's Health Center v. Advocates for Life, Inc.*, 62 F.3d 280, 284 (9th Cir. 1994) (class defined as "class of women who choose to exercise their constitutional right of privacy by having an abortion" is subject to protection).  Zeleny is in two classes entitled to protection.  He is in the class of lawful firearm owners, protected by the Second Amendment.  He is also in the class of people who vocally protest violence against women.  NEA has directly targeted Zeleny because of these characteristics.

### D. To the Extent NEA's Motion Is Granted in Any Part, Zeleny Should be Given Leave to Amend.

"It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that the amendment would be futile." *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041-42 (9th Cir. 2015).  Dismissal without leave, "even if no request to amend the pleading [is] made," is only proper if it "could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

To the extent that the Court is inclined to grant NEA's motion in any part, it should also grant Zeleny leave to amend.  NEA's motion is based in large part on affirmative defenses, which Zeleny is not required to plead around.  Zeleny submits that the facts alleged on the face of the complaint do not warrant application of these defenses.

Nonetheless, if the Court disagrees, Zeleny would amend the pleading, consistent with the facts learned in discovery, to plead facts showing these defenses do not apply.  Among other things:

1.      Zeleny could and would allege that NEA and the City specifically conspired to delay, complicate, and frustrate the permitting process itself, rather than seeking an outcome of a clear denial of the permit on valid grounds.  To the extent not already clear, Zeleny would allege that the conduct of the City and NEA amounted to a misuse of this process, rather than the ultimate outcome, to delay and stifle his protests.  Neither the City nor NEA have a reasonable or good faith belief that Zeleny's protests can validly be halted on content-based grounds.  The City continues to acknowledge that it cannot stop Zeleny from protesting.  Instead, the permitting process was a sham process intended to delay and frustrate his efforts to protest, rather than to reach a valid decision.

2.      Although not required under basic pleading standards, Zeleny would and could allege that NEA and the City have continued overt acts of their conspiracy well into 2017, including by intentionally delaying the permitting process.  Among other things, Bertini intentionally deferred hearings on Zeleny's permit application into August 2017, waiting for Zeleny's state-issued Entertainment Firearm's Permit to elapse so that Zeleny could not refer to it at the hearing.   Further, the City has also stalled Zeleny's film permit application for the same reasons, which Zeleny filed in September 2017.

## V.      CONCLUSION

Because NEA has failed to establish, on the face of the complaint, that its affirmative defenses apply, the motion should be denied.

Dated:  April 9, 2019                         Respectfully submitted,

                                                          s/ Damion Robinson
                                                          David W. Affeld
                                                          Damion D. D. Robinson
                                                          Affeld Grivakes LLP

                                                          Attorneys for plaintiff Michael Zeleny

1

## **PROOF OF SERVICE**

2

     I hereby certify that on May 23, 2019, I electronically filed the foregoing document using
the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a

3
notice of electronic filing to the interested parties.

4

                                     s/ Damion Robinson

5
                                     Damion Robinson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION BY DEFENDANT NEA TO DISMISS