THOMAS S. BROWN, CA Bar No. 178620
  tsbrown@foley.com
NICHOLAS P. HONKAMP, CA Bar No. 261299
  nhonkamp@foley.com
FOLEY & LARDNER LLP
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

ROGER A. LANE (admitted *pro hac vice*)
  rlane@foley.com
COURTNEY WORCESTER (admitted *pro hac vice*)
  cworcester@foley.com
**FOLEY & LARDNER LLP**
111 HUNTINGTON AVENUE
BOSTON, MA 02199
TELEPHONE:  617.342.4000
FACSIMILE:   617.342.4001

Attorneys for New Enterprise Associates, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| MICHAEL ZELENY, AN INDIVIDUAL PLAINTIFF,<br><br>v.<br><br>EDMUND G. BROWN, ET AL.,<br><br>DEFENDANTS. | ) CASE NO:  17-CV-07357-RS<br>)<br>) **NEW ENTERPRISE ASSOCIATES, INC.'S**<br>) **REPLY IN SUPPORT OF ITS MOTION TO**<br>) **DISMISS**<br>)<br>) **DATE:  JUNE 13, 2019**<br>) **TIME:  1:30 PM**<br>) **COURTROOM: 3, 17TH FLOOR**<br>)<br>) |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      PRELIMINARY STATEMENT ................................................................................. 1

II.     ARGUMENT ............................................................................................................... 1

      A.      Plaintiff's Claims Against NEA Are Barred By The Statute Of Limitations .................... 1

            1. Plaintiff's CFAC contains only *one* overt after March 29, 2017 ................................. 1

            2. Plaintiff's far flung attempts to avoid the running of the statute of limitations fail .................................................................................................................... 2

                 a. The Continuing Violation Doctrine Cannot Salvage Plaintiff's CFAC ................ 3

                 b. The "Discovery Rule" Does Not Delay The Accrual Of Plaintiff's Claims Against NEA ........................................................................................... 4

                 c. Equitable Tolling Is Inapplicable To Plaintiff's Claims Against NEA ................ 6

      B.      Plaintiff's Section 1983 And Section 1985 Claims Fail As A Matter of Law ................... 8

            1. Plaintiff's Section 1983 claim fails as a matter of law ................................................. 8

                 a. Plaintiff's Claims Are Barred By The *Noerr-Pennington* Doctrine ..................... 8

                 b. Plaintiff's Attempt To invoke The "Sham Exception" Fails As A Matter Of Law ...................................................................................................... 10

            2. Plaintiff's Section 1985 claim fails as a matter of law ............................................... 12

      C.      Plaintiff Should Not Be Given Another Chance ............................................................. 13

CONCLUSION ..................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,*
    483 U.S. 143 (1987)................................................................................................2

*A.H.D.C. v. City of Fresno, Cal.,*
    No. 97-5498, 2000 WL 35810722 (E.D. Cal. Aug. 31, 2000)..............................8

*Adams v. Kraft,*
    No. 10-CV-0602-LKH, 2011 WL 846065 (N.D. Cal. Mar. 8, 2011) ...................9

*Allied Tube & Conduit Corp. v. Indian Head Inc.,*
    486 U.S. 492 (1988).............................................................................................10

*Associated Press v. United States,*
    326 U.S. 1 (1945)...................................................................................................9

*Azer v. Connell,*
    306 F.3d 930 (9th Cir. 2002) .................................................................................7

*Beck v. City of Upland,*
    527 F.3d 853 (9th Cir. 2008) .................................................................................9

*Bey v. City of Oakland,*
    No. 14-cv-01626-JSC, 2015 WL 8752762 (N.D. Cal. Dec. 15, 2015)..................3

*Bibeau v. Pac. Nw. Research Found. Inc.,*
    188 F.3d 1105 (9th Cir. 1999) ..........................................................................4, 6

*Boone v. Redevelopment Agency of City of San Jose,*
    841 F.2d 886 (9th Cir. 1988) ...............................................................................10

*Bray v. Alexandria Women's Health Clinic,*
    506 U.S. 263 (1993).............................................................................................12

*Broam v. Broam,*
    320 F.3d 1023 (9th Cir. 2003) ...............................................................................1

*Carpinteria Valley Farms, Ltd. v. Cnty. Of Santa Barbara,*
    344 F.3d 822 (9th Cir. 2003) .................................................................................3

*Cherosky v. Henderson,*
    330 F.3d 1243 (9th Cir. 2003) ...............................................................................3

*Clark v. Mason,*
    No. C04-1647C, 2005 WL 1189577 (W.D. Wash. May 19, 2005) ........................4

*Compton v. Ide*,
    732 F.2d 1429 (9th Cir. 1984) ...................................................................................2

*Conley v. International Bhd. Of Elec. Workers Local 639*,
    810 F.2d 913 (9th Cir. 1987) ....................................................................................7

*Donoghue v. County of Orange*,
    848 F.2d 926 (9th Cir. 1987) ....................................................................................6

*Eggleston v. Prince Edward Volunteer Rescue Squad, Inc.*,
    569 F.Supp. 1344 (E.D. Va. 1983), *aff'd*, 742 F.2d 1448 (4th Cir. 1984) ..........................13

*Ervin v. County of Los Angeles*,
    848 F.2d 1018 (9th Cir. 1988) ..................................................................................8

*Evers v. County of Custer*,
    745 F.2d 1196 (9th Cir. 1984) ..................................................................................9

*Forro Precision, Inc. v. I.B.M. Corp.*,
    673 F.2d 1045 (9th Cir. 1982) ................................................................................10

*Found. v. Twp of Lower Merion*,
    927 F. Supp. 874 (E.D. Pa. 1996) ..........................................................................10

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of
    Culinary Workers*,
    542 F.2d 1076 (9th Cir. 1976) ................................................................................10

*Gutowsky v. Cnty. Of Placer*,
    108 F.3d 256 (9th Cir. 1997) ....................................................................................3

*Hartman v. Moore*,
    547 U.S. 250 (2006) ..................................................................................................9

*Hoffman v. Halden*,
    268 F.2d 280 (9th Cir. 1959) ....................................................................................1

*Knox v. Davis*,
    260 F.3d 1009 (9th Cir. 2001) ..................................................................................4

*Kottle v. Northwest Kidney Centers*,
    146 F.3d 1056 (9th Cir. 1998) ................................................................................11

*Lambert v. Conrad*,
    308 F.2d 571 (9th Cir. 1962) ....................................................................................1

*Loving v. Princess Cruise Lines, LTD*,
    No. CV 08-2898-JFW, 2009 WL 7236419 (C.D. Cal. Mar. 5, 2009) ..........................3

4840-2236-5848.1

*Maldonado v. Harris*,
    370 F.3d 945 (9th Cir. 2004) ........................................................................................4

*Manistee Town Center v. City of Glendale*,
    227 F.3d 1090 (9th Cir. 2000) ......................................................................................9

*McCollum v. California*,
    610 F.Supp.2d 1053 (N.D. Cal. 2009) ..........................................................................3

*National Railroad Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002)..................................................................................................3, 4

*O'Connor v. Boeing North American, Inc.*,
    311 F.3d 1139 (9th Cir. 2002) ......................................................................................5

*Portland Feminist Women's Health Center v. Advocates for Life, Inc.*,
    62 F.3d 280 (9th Cir. 1994) ...................................................................................12, 13

*Ramachandran v. City of Los Altos*,
    359 F.Supp.3d 801 (N.D. Cal. 2019) ............................................................................3

*Sever v. Alaska Pulp Corp.*,
    978 F.2d 1529 (9th Cir. 1992) ....................................................................................12

*Smith v. Kohlweiss, Inc.*,
    No. C 11-00239 SBA, 2012 WL 1156338 (N.D. Cal. Mar. 30, 2012) ........................5

*Smith v. Mukasey*,
    No. C07-00899RJB-DAD, 2008 WL 435350 (E.D. Cal. Feb. 14, 2008) ....................4

*Stone v. City and County of San Francisco*,
    735 F.Supp. 340 (N.D. Cal. 1990) ...........................................................................6, 7

*Wang v. Wang LLP v. Banco Do Brasil, S.A.*,
    Civil No. 2:06-CV-00761-JAM-KJM, 2008 WL 5070133 (E.D. Cal. Nov. 26, 2008) ........................8

*Wilson v. Garcia*,
    471 U.S. 261 (1985)......................................................................................................7

*Yamauchi v. Cotterman*,
    84 F. Supp. 3d 993 (N.D. Cal. 2015) ...........................................................................1

**California Cases**

*Addison v. California*,
    21 Cal. 3d 313 (1978)...................................................................................................6

*Garabedian v. Skochko*,
    232 Cal. App. 3d 836 (1991) ........................................................................................8

*Javor v. Taggart,*
    98 Cal. App. 4th 795 (2002) .................................................................................................7

*McDonald v. Antelope Valley Cmty. Coll. Dist.,*
    45 Cal. 4th 88 (2008) .........................................................................................................7

**Federal Statutes**

42 U.S.C. § 1983 .......................................................................................................... passim

42 U.S.C. § 1985 ..............................................................................................7, 8, 12, 13

**California Statutes**

California Penal Code § 26400 ...................................................................................7

California Penal Code § 26350 ...................................................................................7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PRELIMINARY STATEMENT

Plaintiff's Opposition is replete with facts that appear nowhere in his CFAC, that are contradicted by his own pleadings and sworn statements, and, most importantly, which even if considered, provide no basis for this Court to deny NEA's Motion to Dismiss.[1]

Plaintiff's Opposition seeks to have this Court generously read his CFAC to find one "overt act" (in 146 paragraphs) that took place after March 29, 2017.  Plaintiff then seeks to improperly bootstrap all of his other untimely factual allegations to this one overt act.  This effort fails as a matter of law.

### II.   ARGUMENT

#### A.   Plaintiff's Claims Against NEA Are Barred By The Statute Of Limitations

1.      Plaintiff's CFAC contains only *one* overt act after March 29, 2017

Plaintiff's Opposition claims that "the substantive allegations of the complaint against NEA, … relates [sic] to ongoing ***activities*** on NEA's part to stifle Zeleny's protests."  (Opposition at 8) (emphasis in original).  This general assertion does not relieve Plaintiff of the burden of sufficiently alleging overt acts that occurred after March 29, 2017.  *Lambert v. Conrad*, 308 F.2d 571, 572 (9th Cir. 1962) ("'Since injury and damage can only flow from overt acts,' the complaint is not saved by a general allegation that the conspiracy continued to a date within the limitations period.") (quoting *Hoffman v. Halden*, 268 F.2d 280, 303 (9th Cir. 1959)).  Plaintiff points to only one factual allegation that is actually in his CFAC that occurred after March 29, 2017:[2]

---

[1] Plaintiff's Opposition is also replete with false statements.  For example, Plaintiff alleges "multiple frivolous lawsuits filed by NEA, which were rejected without any opposition or dismissed for violating Zeleny's right to free speech."  As Plaintiff's own CFAC makes clear, NEA filed one lawsuit against Zeleny, *NEA v. Zeleny*, Superior Court Case No. Civ499465, which far from being rejected or dismissed, resulted, via settlement, in a permanent injunction issuing against Mr. Zeleny and the requirement that he pay NEA $25,000 (which he has never done).  (Request for Judicial Notice, Lane Decl., Exhibit D.)

[2] Plaintiff's Opposition sets forth numerous facts not found in, or contradicted by, Plaintiff's CFAC, which Plaintiff improperly relies upon in an attempt to defeat NEA's Motion to Dismiss.  (*Compare* Opposition at p. 6 (asserting that Plaintiff's film permit has not been denied and that the "City has effectively refused to issue a final, unequivocal determination on the merits of either application.") *with* CFAC ¶ 140(e) ("the City police department…took charge of processing Zeleny's 'special events' and film permit applications and *denied* those applications without basis on content-based grounds," "Bertini …participated directly with the City Attorney in *denying* the permit applications")(emphasis added).)  This "court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss" to determine the propriety of NEA's motion to dismiss.  *Broam v. Broam*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003); *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1009 (N.D. Cal. 2015) ("argument in opposition cannot cure a defect in the pleading").

139.  NEA took overt acts in pursuit of this unlawful conspiracy, including:

(d) Participating in a series of meetings and other communications regarding Zeleny's 'Special Events' permit application for the purpose of developing a "combined response" to Zeleny's protests….On information and belief, during these meetings, the City and NEA agreed and developed a plan to continue to deny Zeleny's permit applications **at each stage of the appeal process.**

(CFAC ¶ 139(d) (emphasis added).)  Plaintiff admits that his CFAC never bothered to allege *when* his appeal was allegedly denied, and he belatedly seeks to have this Court take judicial notice of it. (Opposition at pp. 9-10, n. 2).[3]

Plaintiff's last-minute attempt to allege one "overt act" after March 29, 2017 does not change the result.  As discussed in NEA's Opening Brief and below (*see* pp. 8-10), NEA's alleged advocacy to the City to have Plaintiff's permit denied is quintessential First Amendment activity and shielded by the *Noerr-Pennington* doctrine.  Thus, the one "overt act" that Plaintiff seeks to rely upon to overcome the statute of limitations cannot save Plaintiff's CFAC from dismissal.[4]

    2.      Plaintiff's far flung attempts to avoid the running of the statute of limitations fail

After assuring the Court that his substantive allegations against NEA "relates [sic] to ongoing activities on NEA's part to stifle Zeleny's protests" (Opposition at 8), Plaintiff proceeds to trot out every conceivable tolling doctrine in an attempt to breathe life into overt act allegations that occurred well outside of the statute of limitations.  Plaintiff's efforts are unavailing and instead confirm that his CFAC should be dismissed with prejudice.  *Compton v. Ide,* 732 F.2d 1429, 1433 (9th Cir. 1984), *abrogated on other grounds by Agency Holding Corp. v. Malley–Duff & Assocs., Inc.,* 483 U.S. 143, 149 (1987) ("It is the wrongful act, not the conspiracy, which is actionable in a civil case. The existence of a conspiracy does not generally postpone accrual of causes of action arising from the conspirators' separate wrongs.").

---

[3] Although Plaintiff requests that this Court take judicial notice of the denial, Plaintiff makes no formal request nor attaches the denial to his Opposition.  He is also inconsistent as to when the denial took place.  (Opposition at p. 9 (asserting that the denial occurred on August 17 and August 19).)  For the convenience of the Court, NEA attaches as Exhibit A to its Reply an August 29, 2017 Staff Report, recommending that the City Council deny Plaintiff's SEP permit at the City's Council's meeting of that date, which appears to be the denial that Plaintiff now claims constitutes the "last overt act."  (Opposition at p. 9.)

[4] Plaintiff also references "NEA's years-long surveillance of Zeleny," but as demonstrated in NEA's Opening Brief and unrefuted by Plaintiff, Zeleny was made aware of such surveillance in 2011, such that the statute of limitations has long run, and such activity is shielded by the *Noerr-Pennington* doctrine in any event.  (Opposition at p. 9; Opening Br. at p. 7 n.5.)

a.      The Continuing Violation Doctrine Cannot Salvage Plaintiff's CFAC

Plaintiff first seeks refuge in the continuing violation doctrine in an attempt to salvage his CFAC. (Opposition at pp. 11-12.)  While such a doctrine exists, Plaintiff ignores that the U.S. Supreme Court has limited its applicability, and Plaintiff has failed to set forth sufficient allegations to invoke its use here.

Plaintiff incorrectly contends that there are "two methods" to show a continuing violation, one of which is "a series of related acts against one individual, of which at least one falls within the relevant period of limitations."  (Opposition at p. 11.)  The United States Supreme Court in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002), "substantially limited the continuing violations doctrine, rejecting its application to so-called 'serial violations.'"  *Loving v. Princess Cruise Lines, LTD*, No. CV 08-2898-JFW, 2009 WL 7236419, at *5 (C.D. Cal. Mar. 5, 2009) ("Specifically, the Supreme Court held: 'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'"); *Carpinteria Valley Farms, Ltd. v. Cnty. Of Santa Barbara*, 344 F.3d 822, 828 (9th Cir. 2003) (applying the Supreme Court's *Morgan* decision to Section 1983 cases).

Thus, to invoke the doctrine, a plaintiff must plead the existence of a "systemic policy or practice of discrimination" before and during the statute of limitations period.  *Gutowsky v. Cnty. Of Placer*, 108 F.3d 256, 259 (9th Cir. 1997).  "Even where acts occur as part of an ongoing policy or practice, if the 'heart of the plaintiffs' complaint does not stem from the policy . . . but rather from the individualized decisions that resulted from implementation of the policy, . . . [t]hese individualized decisions are best characterized as discrete acts, rather than as a pattern or practice of discrimination."  *Ramachandran v. City of Los Altos*, 359 F.Supp.3d 801, 813 (N.D. Cal. 2019) (quoting *Bey v. City of Oakland*, No. 14-cv-01626-JSC, 2015 WL 8752762, at *6 (N.D. Cal. Dec. 15, 2015)).

Plaintiff's CFAC is utterly devoid of any allegations regarding a systemic policy or practice sufficient to invoke the continuing violation doctrine.  *Cherosky v. Henderson*, 330 F.3d 1243, 1247 (9th Cir. 2003) ("pattern-or-practice claims cannot be based on sporadic discriminatory acts but rather must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace"); *McCollum v. California*, 610 F.Supp.2d 1053, 1057 (N.D. Cal. 2009) (rejecting application of continuing violation doctrine to Section 1983 claims, where the claims alleged "discrete

discriminatory acts by different people at different times and at different institutions"). Plaintiff's CFAC contains allegations regarding discrete actions by different individuals and entities, rendering the continuing violation doctrine inapplicable. *Clark v. Mason*, No. C04-1647C, 2005 WL 1189577, at *10 (W.D. Wash. May 19, 2005). Specifically, Plaintiff seeks to rely upon the following allegations:

- NEA engaged in surveillance of Zeleny (CFAC ¶ 139(a));

- City police officers interviewed Zeleny and his supporters (CFAC ¶ 140(b));

- The County of San Mateo (which is not a defendant here) filed charges against Zeleny, and the district attorney referred to NEA as her client (CFAC ¶¶ 61 & 62);

- The City of Menlo Park submitted information to a legislative committee (CFAC 140(d).)

(Opposition at p. 11.) These are discrete acts, by different entities and individuals at different times, all of which occurred outside of the limitations period. (Opening Br. at pp. 4-10); (Opposition at p. 11 (admitting that all of the above acts occurred between 2009 and 2012)); *Smith v. Mukasey,* No. C07-00899RJB-DAD, 2008 WL 435350, at *5 (E.D. Cal. Feb. 14, 2008) (rejecting request by plaintiff for the court "to recognize a continuing violation of retaliation, and to allow prior acts, regardless of the date of their occurrence, to become part of the claim. . . . This concept that untimely retaliatory acts may somehow 'bootstrap' onto allegations properly before the court was specifically rejected in *Morgan*."). Thus, the continuing violation doctrine cannot be used to salvage Plaintiff's claims against NEA.

b.      The "Discovery Rule" Does Not Delay The Accrual Of Plaintiff's Claims Against NEA

Plaintiff next claims that the "discovery rule" delayed accrual of his claims against NEA. (Opposition at pp. 12-14.) Plaintiff cites a hodgepodge of state law cases in support of his argument. (Opposition at pp. 12, 13.) But Plaintiff's reliance is misplaced, as federal law governs when civil rights claims accrue. *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004) (quoting *Knox*, 260 F.3d at 1013). The discovery rule requires the plaintiff to be diligent in discovering the critical facts of the case. *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999). A plaintiff is held to his actual knowledge, as well as knowledge

that could reasonably be discovered through investigation of sources open to him.  *O'Connor v. Boeing North American, Inc.,* 311 F.3d 1139, 1147 (9th Cir. 2002).  The party claiming the benefit of the discovery rule has the burden of demonstrating that it applies.  *Smith v. Kohlweiss, Inc.*, No. C 11-00239 SBA, 2012 WL 1156338, at *4 (N.D. Cal. Mar. 30, 2012).  Plaintiff has not and cannot meet this burden here.

Plaintiff claims that he did not discover "evidence of the conspiracy" between NEA and the City until March 2019, when the City produced documents and Commander Bertini was deposed.  (Opposition at p. 7.)  This contention is flatly contradicted by Plaintiff's own pleadings and sworn statements in this matter.  In a *June 2018* case management statement, Plaintiff expressly alleged that since at least 2005, "NEA has enlisted the help of local authorities, including the City of Menlo Park…, its police chief David Bertini,… and the San Mateo County prosecutor's office in its efforts to silence Zeleny's protests." (Docket Entry No. 43, p. 2.)

In addition, Plaintiff himself, under the pains and penalties of perjury, averred on February 8, 2019 (before any discovery was received from either the Defendants or then third-party NEA):

> I firmly believe that NEA is behind the denial of my applications for permits.  This is consistent with its *past practices of using the legal system, law enforcement, and political influence to silence me and other critics.*

(Docket Entry No. 53-1, ¶ 45) (emphasis added).  Indeed, Plaintiff went on to aver, under oath, that during his criminal prosecution in 2012 through 2014, he *observed* evidence of the prosecutor and NEA conspiring, including that:  1) the prosecutor met frequently with NEA representatives during breaks; 2) these meetings were so frequent that Plaintiff took pictures; and 3) the prosecutor referred to NEA as "the client" or "her client" during the proceedings.  (Docket Entry No. 53-1, ¶¶ 29-31.)  Finally, Plaintiff averred that based on this, "[i]t was very disturbing to me that the public prosecutor responsible for my criminal case appeared and *claimed to be acting in concert with, and on behalf of, the private entity that I was protesting.*"  (Docket Entry No. 53-1, ¶ 32)(emphasis added); (*see also* Docket Entry No. 53-2, Declaration of David Affeld ¶¶ 4-7, 24 ("unfounded criminal prosecution NEA persuaded the DA's office to pursue").)  And yet these same allegations – of which Plaintiff, by his own testimony, has been aware

for some five to seven years or more – provide the basis for one of the "overt acts" that he now seeks to use to establish a "newly discovered" claim against NEA (CFAC ¶ 140(c).)

Plaintiff was also aware in 2011 – some eight years ago – that NEA had conducted surveillance of him and shared that information with the Menlo Park Police Department.  (Opening Br. at p. 7 n. 5; Lane Decl. Exs. B & C (Docket Entry No. 85-1).)  Plaintiff hardly needed discovery in this case to know this and to allege it as an "overt act" NEA purportedly engaged in.  (CFAC ¶ 139(a).)

Thus, Plaintiff has long had "knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted the injury'." *Bibeau*, 188 F.3d at 1108.  Consequently, Plaintiff cannot invoke the discovery rule to breathe life into his stale allegations.

Moreover, Plaintiff was hardly diligent in discovering the facts that he now claims were necessary for him to assert a claim against NEA.  *Id*. at 1108.  Plaintiff filed his Original Complaint on December 28, 2017.  (Docket Entry No. 1.)  As of January 2019 – more than a year later – Plaintiff had yet to serve *any* discovery on the parties, even though all discovery was set to close on March 1, 2019. (Docket Entry No. 48, at p. 2.)  Plaintiff did not seek discovery from NEA until January 4, 2019, when he issued a subpoena to it.  (Docket Entry No. 48-2, Ex. A.)  Plaintiff's delay provides yet another reason for this Court to reject Plaintiff's unfounded invocation of the discovery rule.

        c.        Equitable Tolling Is Inapplicable to Plaintiff's Claims Against NEA

Finally, Plaintiff contends that the statute of limitations was equitably tolled while he pursued various appeals of the City's denial of his permit applications.  (Opposition at pp. 14-16.)  This doctrine, too, is inapplicable here.

The statute of limitations can be equitably tolled where a plaintiff has "several formal legal remedies and reasonably and in good faith pursues one." *Donoghue v. County of Orange*, 848 F.2d 926, 930 (9th Cir. 1987).  "Generally, in order to invoke this doctrine, the legal remedy initially sought must be one designed to lessen the extent of [the claimant's] injuries or damage." *Stone v. City and County of San Francisco*, 735 F.Supp. 340, 342 (N.D. Cal. 1990) (quoting *Addison v. California*, 21 Cal. 3d 313, 317 (1978)).  Equitable tolling "is most appropriate when the plaintiff is required to avail himself of an

alternate course of action as a precondition to filing suit." *Id.* at 343 (quoting *Conley v. International Bhd. Of Elec. Workers Local 639*, 810 F.2d 913, 915 (9th Cir. 1987)).[5]

Plaintiff's filing of an appeal with the City is insufficient to invoke the doctrine of equitable tolling as to NEA. That appeal could not provide Plaintiff with the remedy that he seeks against NEA – that is, "nominal damages … and punitive damages." (CFAC, Prayer for Relief, H.) Nor could the appeal provide Plaintiff with remedies that he seeks against the other Defendants. (CFAC, Prayer for Relief, A (declaration that California Penal Code 26400 and 26350 are unconstitutional), C (declaratory judgment that Zeleny's carrying of unloaded firearms in the course of his entertainment events is constitutionally protected.).) The only "remedy" that the appeal process could provide Plaintiff is a permit to protest. Consequently, the mere filing of his appeal is insufficient to invoke the doctrine of equitable tolling.

Moreover, Plaintiff cannot establish the necessary prerequisites to have this doctrine apply in any event. Namely, 1) timely notice *to the defendant* in filing the first claim; 2) lack of prejudice to defendant in gathering evidence to defend the second claim; and 3) good faith and reasonable conduct by plaintiff in filing the second claim. *Stone*, 735 F.Supp. at 343.

Timely notice means that "the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. *Generally this means that the defendant in the first claim is the same one being sued in the second.*" *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 n. 2 (2008) (emphasis added). Plaintiff has not and cannot allege that NEA was a party to the appeal he took to obtain his permit. Nor has Plaintiff articulated why Plaintiff's permit appeal would put NEA on notice that, years later, it would face claims that it allegedly violated Sections 1983 and 1985(3). *Azer v. Connell*, 306 F.3d 930, 936 (9th Cir. 2002) (suit by corporation did not provide defendants with notice that they might be subject to a later civil rights suit by its sole shareholder; statute of limitations was not equitably tolled as to later claim); *Javor v. Taggart*, 98

---

[5] Plaintiff's appeal was not a precondition to filing a Section 1983 claim against NEA. As the North District of California noted in *Stone*,

> Congress would not have characterized §1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials. It was the very ineffectiveness of state remedies that led Congress to enact the Civil Rights Act in the first place. Congress therefore intended that the remedy provided in §1983 be independently enforceable whether or not it duplicates a parallel state remedy.

*Stone*, 735 S.Supp. at 344 (quoting *Wilson v. Garcia*, 471 U.S. 261, 279 (1985)).

Cal. App. 4th 795, 803-04 (2002) (finding equitable tolling inapplicable in part because defendant was not a party to plaintiff's first claim); *Garabedian v. Skochko*, 232 Cal. App. 3d 836, 847 (1991) (finding equitable tolling inapplicable where defendant was not a party to plaintiff's first claim).

Plaintiff's attempt to establish the second prerequisite fares no better. "The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." *McDonald*, 45 Cal. 4th at 102 n. 2. Again, Plaintiff's appeal to obtain his permit was hardly similar to, let alone identical to, the Civil Rights violations that Plaintiff now seeks to assert against NEA. NEA had no "first claim" to investigate, let alone any grounds to investigate the putative Civil Rights claims Plaintiff now seeks to assert. Consequently, Plaintiff cannot establish the second prerequisite.

Finally, as discussed *infra* (*see* Section A.2.b), Plaintiff's inexplicable delay in seeking to assert claims against NEA precludes Plaintiff's ability to invoke the equitable tolling doctrine. *Ervin v. County of Los Angeles*, 848 F.2d 1018, 1020 (9th Cir. 1988) (equitable tolling did not apply due to delay, even where there was timely notice and lack of prejudice); *Wang v. Wang LLP v. Banco Do Brasil, S.A.,* Civil No. 2:06-CV-00761-JAM-KJM, 2008 WL 5070133, at *4 (E.D. Cal. Nov. 26, 2008) (refusing to apply equitable tolling doctrine due to delay, and noting that "[t]he statute is not tolled while a plaintiff searches for evidence to make out its case"). This is especially true where, as here, Plaintiff admits that he has long been aware of the grounds for his claims. (*See, infra,* pp. 5-6.)

**B.  Plaintiff's Section 1983 And Section 1985 Claims Fail As A Matter Of Law**

1.  Plaintiff's Section 1983 claim fails as a matter of law

    a.  Plaintiff's Claims Are Barred By The *Noerr-Pennington* Doctrine

Plaintiff's Opposition ignores that it is black letter law in the Ninth Circuit that the *Noerr-Pennington* doctrine applies to Section 1983 claims. (Opening Br. at pp. 12-15.) Indeed, even the case that Plaintiff relies upon so states. (Opposition at p. 16); *A.H.D.C. v. City of Fresno, Cal.*, No. 97-5498, 2000 WL 35810722, at *4 (E.D. Cal. Aug. 31, 2000) ("The Ninth Circuit has applied *Noerr–Pennington*

to Section 1983 claims.")(citing *Evers v. County of Custer*, 745 F.2d 1196, 1204 (9th Cir. 1984)); *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000).[6]

Plaintiff's only legal argument against the application of the *Noerr-Pennington* doctrine is that NEA cannot be permitted to assert its First Amendment rights if, in doing so, Plaintiff's First Amendment rights are impacted.  (Opposition at p. 17.)  Once again, the case Plaintiff relies upon is inapposite.  *Associated Press v. United States*, 326 U.S. 1 (1945), involved the legality of bylaws of the Associated Press, which placed restrictions on the admission to membership of applicants serving the same area as any existing member, and other bylaws forbidding A.P. members from selling local news to nonmembers. *Id.* at 4.  The Court struck down the bylaws of the A.P. which restricted membership solely because the applicant was a competitor of an existing member.  In so doing, the Supreme Court rejected the argument that application of the Sherman Act constituted an abridgment of the press guaranteed by the First Amendment:  "The First Amendment affords not the slightest support for the contention that a combination to restrain trade in news and views has any constitutional immunity."  *Id.* at 20.  Thus, the Court's holding that the A.P. was not immune from the antitrust laws simply because it was a press organization, has no bearing on this case, and it provides no basis for this Court to refuse to apply the *Noerr-Pennington* doctrine to NEA's petitioning activity.  Indeed, *Noerr* itself was not decided until 1961, some sixteen years later.

---

[6] *Adams v. Kraft*, No. 10-CV-0602-LKH, 2011 WL 846065, at *14-15 (N.D. Cal. Mar. 8, 2011), which Plaintiff also cites, does not support a different result.  There, the court observed that "the question as to whether the *Noerr–Pennington* doctrine can immunize *police officers* from First Amendment retaliatory prosecution claims appears to be an unanswered one."  *Id.* (emphasis added).  This is not the question presented here, as NEA is not a police officer, and Plaintiff has conceded that his allegations regarding his alleged "malicious prosecution" are outside of the statute of limitations.  (Opposition at p. 8.)

Plaintiff also baldly misstates *Adams'* analysis of *Hartman v. Moore*, 547 U.S. 250 (2006), and *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008), as neither case even addressed the *Noerr-Pennington* doctrine.  (Opposition at pp. 16-17.)  Plaintiff contends that both cases "suggest that arguable petitioning activity is actionable if it infringes on First Amendment rights and is not immunized."  (Opposition at p. 17.)  However, as *Adams* observed, "it does not appear that either the Supreme Court or the Ninth Circuit considered the *Noerr-Pennington* doctrine when they issued the[eir] rulings*" Adams,* 2011 WL 846065, at *15.  For all of these reasons, these cases are neither applicable to, nor remotely controlling in, the case at bar.

As demonstrated in Defendant's Opening Brief, and unchallenged by Plaintiff, the alleged overt acts attributed to NEA fall within quintessential petitioning activities, which cannot provide the basis for a claim against NEA.  These include allegations that:

- The City, at the behest of NEA, "submitted information about Zeleny to a legislative committee in an effort to have the open carrying of rifles prohibited in California." (CFAC ¶ 140(d)); *Allied Tube & Conduit Corp. v. Indian Head Inc.*, 486 U.S. 492, 499 (1988) (individuals may lobby or make other focused efforts to obtain administrative results as an exercise of their First Amendment rights);

- NEA attended meetings with City personnel to address Zeleny's protests and allegedly seek to develop a strategy to stop them.  (CFAC ¶¶ 139(b), (d), 140(e) (alleging that "at the behest of NEA," Zeleny's Special Event permit was denied)); *Found. v. Twp of Lower Merion*, 927 F. Supp. 874, 877 (E.D. Pa. 1996) (allegations against defendants based upon their participation in meetings in which they aired grievances about plaintiff, even if motivated by racism, were shielded by *Noerr-Pennington* doctrine); and

- NEA provided information to the police (CFAC ¶¶ 139(a), (c), 140(a), (b), (c)); *Forro Precision, Inc. v. I.B.M. Corp.,* 673 F.2d 1045, 1060 (9th Cir. 1982).

Under the *Noerr-Pennington* doctrine, NEA cannot be held liable for any of these "overt acts," and therefore the Sixth Count of Plaintiff's CFAC must be dismissed with prejudice.

        b.      Plaintiff's Attempt To Invoke The "Sham Exception" Fails As A Matter Of Law

Plaintiff's attempt to invoke the "sham exception" to avoid application of the *Noerr-Pennington* doctrine also fails as a matter of law.  Notably, a plaintiff's complaint must contain *specific allegations* demonstrating that the *Noerr–Pennington* protections do not apply.  *See Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers,* 542 F.2d 1076, 1080–81 (9th Cir. 1976).  Conclusory allegations are insufficient to strip activities of their *Noerr–Pennington* protection.  *Id.* at 1081.  Indeed, the Ninth Circuit has held that "[a]lthough we may be more generous in reviewing complaints in other contexts, our responsibilities under the first amendment in a case like this one require us to demand that a plaintiff's allegations be made with specificity."  *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988).  Plaintiff's CFAC is devoid of any such specific allegations.  Moreover, the additional allegations that Plaintiff says he will "easily be able" to add – *i.e.*, that NEA and Bertini sought to delay his permit, such that gun permits Zeleny had would expire

(Opposition at pp. 18, 20) – are also insufficient, as a matter of law, to demonstrate that NEA's activities are not entitled to the protection of the *Noerr-Pennington* doctrine.

Plaintiff asserts that this Court should apply the judicial sham exception to the administrative appeal process used by the City, which, as Plaintiff concedes, provides broader *Noerr-Pennington* immunity. (Opposition at pp. 18-19.) Plaintiff, however, has failed to even articulate the test used by the Ninth Circuit to determine whether invocation of the judicial sham exception is proper. This is because facially, it is plain that the exception has no place here.

To invoke the judicial sham exception, Plaintiff's allegations must demonstrate one of three things: 1) NEA's advocacy in the appeal was objectively baseless and merely an attempt to stifle Plaintiff; 2) NEA engaged in a pattern of petitions without regard to their merit; or 3) NEA's misrepresentations deprived the proceedings of their legitimacy. *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056, 1062-63 (9th Cir. 1998). Neither the allegations of Plaintiff's CFAC nor the contentions in his Opposition even approach these criteria. For support, Plaintiff merely reiterates that *the City* took certain actions – sometimes, vaguely, "at the behest of NEA" – and he points to no allegations he has made or could make, with the required factual specificity, that any petitioning activity by NEA meets the criteria of the judicial "sham exception." (Opposition at pp. 19-20.)[7] Indeed, Plaintiff does not allege (nor could he) that NEA ever appeared at any public hearings relating to his appeals, let alone that NEA presented any argument or made any representations at such hearings – *i.e.*, the proceedings that he asserts are judicial in nature. (Opposition at p. 19.) Only one of the allegations Plaintiff relies on has anything to do with his appeals – the allegation that the "City testified under oath at a hearing on an appeal by Zeleny." (Opposition at p. 19, CFAC ¶ 88.) Plaintiff does not claim that what the City testified to was a misrepresentation, nor does he explain why, even if it was, that testimony is attributable to NEA. As Plaintiff has failed to allege with specificity any facts demonstrating that the *Noerr-Pennington* doctrine is inapplicable, Plaintiff's Sixth Count must be dismissed with prejudice.

---

[7] Thus, to the extent that Plaintiff seeks leave to add allegations that the permitting process itself was a "sham" (Opposition at p. 22), such allegations are futile, as they are also legally insufficient, for the same reasons, to invoke the judicial sham exception as to any petitioning activity by NEA.

2.      Plaintiff's Section 1985 claim fails as a matter of law[8]

Plaintiff relies upon questionable law and ignores Ninth Circuit precedent in a desperate attempt to try to salvage his Section 1985 claim.  Indeed, far from being "muddled" as Plaintiff claims, the Ninth Circuit's law regarding when Section 1985(3) can be invoked outside the context of race is clear.  The Ninth Circuit's

> rule is that section 1985(3) is extended beyond race '*only* when the class in question can show that there has been a governmental determination that its members 'require and warrant special federal assistance in protecting their civil rights.'… More specifically, we require either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.

*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (emphasis added).  The two classes of which Plaintiff contends he is a member are "the class of lawful firearm owners" and "the class of people who vocally protest violence against women."  (Opposition at p. 21.)  Plaintiff's Opposition makes no attempt to demonstrate that a government determination has been made that either of these are classes that require special protection, and thus Plaintiff's Section 1985(3) claim fails as a matter of law.  (*See generally* Opposition §III.C.); *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 269 (1993) ("Whatever may be the precise meaning of a 'class' for purposes of *Griffin's* speculative extension of § 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors.").

Plaintiff's attempt to recast himself as a member of a "class of people who protest violence against women" fails.[9]  First, Plaintiff has not alleged that this class requires and warrants special federal

---

[8] While Plaintiff elsewhere seeks leave to try to plead a cognizable Section 1983 claim, none of the additional facts he offers are applicable to his Section 1985(3) claim, and they do not change the irrefutable fact that he is not a member of a class entitled to protection under that section.  (Opposition at pp. 21-22.)  Consequently, Plaintiff's Section 1985(3) claim should be dismissed with prejudice.

[9] Plaintiff cites *Portland Feminist Women's Health Center v. Advocates for Life, Inc.*, 62 F.3d 280, 284 (9th Cir. 1994), for the proposition that the Ninth Circuit takes a broad view of protected classes under Section 1985(3) and contends that in that case, the Ninth Circuit embraced a class defined as "women who choose to exercise their constitutional right of privacy by having an abortion" as viable under Section 1985(3).  (Opposition at p. 21.)  There, however, the Ninth Circuit actually held that in accordance with Supreme Court precedent, such a class was not, in fact, protected by the "deprivation" portion of Section 1985(3).  *Id.* at 284-285 ("Given the Court's ruling in *Bray*, our holding in *Operation Rescue*, and the fact that the jury only considered liability based on discrimination against 'a class of women who were seeking to exercise their Constitutional right to abortion,' we conclude that the judgment against defendants on the § 1985(3) claim—to the extent it rests on a "deprivation"

assistance in protecting its civil rights.  Moreover, as demonstrated in Plaintiff's CFAC, Plaintiff is not protesting violence against women generally; he is protesting the alleged treatment of one woman, Erin Zhu.  As demonstrated in NEA's Opening Brief, the exercise of Plaintiff's own, individual First Amendment rights is not actionable under Section 1985(3).  *Eggleston v. Prince Edward Volunteer Rescue Squad, Inc.,* 569 F.Supp. 1344, 1352 (E.D. Va. 1983), *aff'd,* 742 F.2d 1448 (4th Cir. 1984) ("people who exercise free speech and who petition the government for redress of their grievances are not in a class distinguishable from their fellow citizens and therefore are not within the realm of classes protected by § 1985(3)"); Opening Br. p. 16.)  Similarly, Plaintiff has done nothing to allege that a "class of lawful firearm owners" is a class of individuals whose civil rights require special federal assistance, nor could he sensibly do so.

Plaintiff's CFAC fails to allege a viable Section 1985(3) claim. Plaintiff does not, and cannot, contend that he can amend his complaint to allege membership in a class protected by Section 1985(3). Accordingly, Plaintiff's Seventh Count must be dismissed with prejudice.

### C.  Plaintiff Should Not Be Given Another Chance

Finally, Plaintiff requests that if any portion of his CFAC is dismissed, the Court grant him leave to try again.  The factual allegations that Plaintiff offers to save his complaint, however, are insufficient and, in fact, are flatly contradicted by the very document of which he requests judicial notice.

Plaintiff alleges that if permitted, he can allege that "Bertini intentionally deferred hearings on Zeleny's permit application into August 2017, waiting for Zeleny's state-issued Entertainment Firearm's Permit to elapse so that Zeleny could not refer to it at the hearing."  (Opposition at p. 22.)  This allegation, however, even if included, does not save Plaintiff's claims against NEA.  Plaintiff has not explained why or how this allegation would prevent the *Noerr-Pennington* doctrine from being applied to any alleged petitioning activity by NEA regarding Plaintiff's appeal.  Moreover, the very document of which Plaintiff

---

clause theory of liability—rests on unsound ground.").  Consequently, *Portland Feminist* provides no support for Plaintiff's contention that he is part of a class protected by Section 1985(3).

requests that this Court take judicial notice (Opposition at p. 10 n. 2) flatly contradicts that it was *Bertini* who intentionally deferred hearings on Plaintiff's appeal.  That document states:

> Mr. Zeleny appealed the City Manager's decision on September 16, 2016, and an appeal hearing before the City Council was scheduled for October 25, 2016. *At the request of Mr. Zeleny's counsel*, the hearing was continued, and after extensive back and forth the City Clerk scheduled the hearing for August 29, 2017, at 4 pm.

(Exhibit A.)  As any amendment would be futile, Plaintiff's CFAC should be dismissed with prejudice.

## CONCLUSION

For all of the reasons set forth above, and in NEA's Opening Brief, NEA respectfully requests that this Court dismiss Plaintiff's claims against NEA with prejudice.

DATE: MAY 30, 2019

FOLEY & LARDNER LLP

By: /s Roger A. Lane
    ROGER A. LANE
    COURTNEY WORCESTER
    Attorneys for New Enterprise Associates, Inc.

4840-2236-5848.1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PROOF OF SERVICE**

I hereby certify that on May 30, 2019, I electronically filed the foregoing document using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

/s/ Roger A. Lane
Roger A. Lane

NEA's REPLY
Case No. 17-CV-07357-RS

4840-2236-5848.1