UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY, <br> Plaintiff, <br> v. <br> EDMUND G. BROWN, et al., <br> Defendants. | Case No. 17-cv-07357-RS <br><br> **ORDER GRANTING MOTION TO DISMISS CORRECTED FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION

Plaintiff Michael Zeleny brings this action against Attorney General Xavier Becerra, the City of Menlo Park (the "City"), Commander of the Menlo Park Police Department Dave Bertini, and the venture capitalist firm New Enterprise Associates ("NEA") (collectively, "Defendants"). He advances a number of constitutional claims associated with municipal efforts to prevent him from engaging in public protest while carrying an unloaded firearm. NEA moves to dismiss the two claims advanced against it. For the reasons set forth below, the motion to dismiss is granted. Zeleny is granted leave to amend with respect to his claim under 42 U.S.C. § 1983, however the 42 U.S.C. § 1985 claim is dismissed without leave to amend.

## II. BACKGROUND

### A. Procedural Background

Zeleny filed this action in federal court in December 2017. Then California Governor Edmund G. Brown, Jr. was among the defendants named in the initial complaint, however NEA was not included as a defendant at that time. Governor Brown was subsequently dismissed from

the action. Approximately fifteen months after the filing of the original complaint, the parties to the action at that time stipulated to allow Zeleny to amend his complaint to add NEA as a defendant. This stipulation was granted and Zeleny's First Amended Complaint was deemed filed. He subsequently filed a Corrected First Amended Complaint ("CFAC"), which is now the operative complaint. The CFAC advances two claims against NEA for conspiracy to interfere with Zeleny's civil rights under 42 U.S.C. §§ 1983 and 1985.

### B. Factual Background[1]

Since 2005, Zeleny has conducted a series of public protests in Menlo Park against NEA and its affiliates for their financial backing of Min Zhu ("Zhu") and his company. The impetus for these protests is Zhu's alleged abuse of his daughter when she was a minor. In an effort to draw attention to his protests, Zeleny began openly carrying unloaded firearms during his demonstrations. According to Zeleny, NEA conspired with the City to stifle his protests against the company. He specifically alleges that, in 2009, NEA met with representatives of the City and entered into a "tacit or explicit agreement" to prevent him from protesting and carrying a firearm. CFAC ¶¶ 136, 138. Zeleny further contends that internal documents reveal that by 2010 the City had developed a "firm solution" to end Zeleny's protests. *Id.* ¶ 138.

In furtherance of this purported conspiracy, NEA engaged in a year-long surveillance effort designed to track Zeleny's online and in-person activities and transmitted this information to the City. Representatives of the City also gave NEA "direct access to police officials, including their private cell phone numbers" and encouraged the company to contact the police if Zeleny approached NEA's offices. *Id.* ¶ 139(c). NEA did in fact call the police on multiple occasions when Zeleny appeared near the company's offices. Zeleny further alleges NEA worked with the City to prosecute him without basis for carrying a concealed firearm. NEA's representatives followed the trial and met frequently with the Deputy District Attorney, who regularly referred to

---

[1] The facts included in this section are taken from the CFAC and presumed true for the purpose of this motion to dismiss.

NEA as her "client." This prosecution ended in an acquittal of Zeleny in December 2014.

During the course of the prosecution, the State of California enacted laws which made the open carry of an unloaded handgun illegal. California adopted similar restrictions with respect to rifles, with an exception for authorized participants in certain types of public events. Based on these statutes, the City adopted a municipal policy requiring individuals to obtain a permit if they wished openly to carry a firearm during a demonstration. Since 2015, Zeleny has repeatedly applied to the city for entertainment permits in connection with his armed protests, which have all been denied without explanation. The CFAC alleges NEA conspired with the City to delay and derail his applications, and that the true reason for these denials was simply to stop him from protesting against the company.

### III. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Courts, however, need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### IV. DISCUSSION

NEA advances three primary arguments in its motion to dismiss. First, it argues both of the

1   claims advanced against it are barred by the statute of limitations. Second, the company contends,

2   Zeleny's 1983 claim is barred by the *Noerr-Pennington* doctrine. Finally, NEA argues the CFAC

3   fails to state a claim under Section 1985 because Zeleny has not alleged he is a member of a

4   protected class.

### A. Statute of Limitations

A cause of action may be dismissed under Rule 12(b)(6) for failure to state a claim where "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). In other words, a complaint should be dismissed only if "it appears beyond doubt" the plaintiff will be unable to establish a timely claim. *Id.* (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)). Where the timeliness of a claim turns on when it began to accrue, the claim should be dismissed only if the facts are so clear that the question of accrual can be decided as a matter of law. *Mir v. Deck*, No. SACV 12-1629-RGK (SH), 2013 WL 4857673, at *5 (C.D. Cal. Sept. 11, 2013).

#### 1. Date of the Last Overt Act

For conspiracy claims arising under Sections 1983 and 1985, the statute of limitations begins to run from "the last overt act alleged from which damage could have flowed." *Lambert v. Conrad*, 308 F.2d 571, 571 (9th Cir. 1962). A plaintiff must allege a specific overt act occurring within the statutory period and cannot rest on a "general allegation that the conspiracy continued to a date within the limitations period." *Id.* Neither Section 1983 nor Section 1985 contains a federal statute of limitations, so courts apply the forum state's statute of limitations for personal injury claims. Accordingly, the statute of limitations for these claims is two years. *See* Cal. Civ. Proc. Code § 335.1; *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) ("For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law.").

NEA argues that, because none of the overt acts alleged in the CFAC occur after March 29,

2017—the date two years before the parties stipulated to amend the complaint to include NEA—these two claims are barred by the two-year statute of limitations. Zeleny responds that the CFAC does include conduct occurring after March 2017, but fails to cite to any portion of the complaint which supports this statement. Instead, he falls back on the allegation that NEA and the City worked to thwart his permit application at each stage of the appeal process and requests judicial notice that the City issued its final denial of Zeleny's permit application on August 19, 2017. NEA does not appear to oppose this request for judicial notice and attached a copy of the document to which Zeleny appears to be referring as Exhibit A to its reply. The document in question is dated August 29, 2017. Judicial notice of the August 29, 2017 denial of Zeleny's permit appeal is granted, accordingly Zeleny has alleged at least one overt act occurring within the statute of limitations period.

### 2. Delayed Discovery Rule

Even if Zeleny failed to plead an overt act occurring after March 2017, the delayed discovery rule casts doubt on whether this is the correct statute of limitations period. Under California's delayed discovery rule, a claim does not accrue "until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (Cal. 2005). In other words, the claim accrues once the plaintiff "has reason at least to suspect a factual basis for its elements." *Id.* Zeleny argues he did not discover evidence that NEA was involved in the alleged conspiracy to interfere with his First Amendment rights until the City produced such evidence during discovery. In other words, he did not have evidence of an actual "meeting of the minds" between NEA and the City. *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) (affirming summary judgment where the plaintiff did not have evidence of a "meeting of the minds").

Although Zeleny's assertion that he became aware of a possible claim against NEA only after obtaining discovery in this action is somewhat dubious,[2] it is not clear on the face of the

---

[2] Zeleny's own admissions reveal that he suspected NEA was working with the City to stop his protest before any discovery was produced in this action. Indeed, in his June 7, 2018 Case Management Statement, he explicitly stated that "NEA ha[d] enlisted the help of local authorities,

complaint when exactly he discovered, or reasonably should have discovered, these claims. While Zeleny indisputably saw an NEA representative communicating with the City during his 2014 criminal trial, this alone does not necessarily suggest a conspiracy to interfere with his constitutional rights. NEA also notes that Zeleny was apprised of the company's surveillance in 2011 and knew at least some of this information was shared with the police. While these facts raise the possibility that Zeleny knew, or should have known, NEA was conspiring to interfere with his civil rights, they are insufficient to resolve this issue as a matter of law. Accordingly, the statute of limitations does not form a basis for dismissal at this stage.[3]

### B. Sixth Claim: Conspiracy to Violate Civil Rights Under Section 1983

#### 1. *Noerr-Pennington* Doctrine

Under the *Noerr-Pennington* doctrine, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). The purpose of this doctrine is to protect the right of the people under the First Amendment "to petition the Government for a redress of grievances." *Id.* Such conduct includes concerted efforts to sway public officials, regardless of the person's or entity's particular motivation or intent. *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965). The *Noerr-Pennington* doctrine specifically protects efforts to advocate a particular point of view with respect to a party's business interests, *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 511 (1972), and attempts to advocate for the passage or enforcement of a particular law, *Eastern R.R. Presidents Conference v. Noerr*

---

including the City of Menlo Park . . ., its police chief David Bertini," and the San Mateo County prosecutor's office to help stop his protests. Zeleny CMC Statement 2. In a declaration submitted on February 8, 2019—before Zeleny had received any discovery regarding NEA—he stated his firm belief that "NEA [was] behind the denial of [his] applications for permits" and that NEA's involvement was "consistent with its past practices of using the legal system, law enforcement, and political influence to silence [him]." Zeleny Decl. ¶ 45.

[3] Zeleny also advances a continuing violation argument, as well as an equitable tolling argument, based on the fact that he sought to appeal the denial of his permit. In light of the foregoing analysis, there is no need to reach these arguments.

*Motor Freight, Inc.*, 365 U.S. 127, 135 (1961). Although the doctrine originated in the antitrust context, it applies to Section 1983 cases as well. *See Boulware v. Nev. Dep't of Human Res.*, 960 F.2d 793, 800 (9th Cir. 1992).

The vast majority of NEA's alleged conduct is protected by the *Noerr-Pennington* doctrine. For example, NEA's urging the City to "submit[] information about Zeleny to a legislative committee in an effort to have the open carrying of rifles prohibited in California" and its meeting with the City to address concerns related to Zeleny's armed demonstrations is quintessential petitioning activity. Much of NEA's communication with the police also falls within the ambit of the *Noerr-Pennington* doctrine. *Forro Precision, Inc. v. I.B.M. Corp.*, 673 F.2d 1045, 1060 (9th Cir. 1982) (holding that the *Noerr-Pennington* doctrine applies to communications with the police). While Zeleny argues the *Noerr-Pennington* doctrine does not apply to challenges based on First Amendment rights, the cases he cites do not support this assertion.

First, *Adams v. Kraft* questioned whether the *Noerr-Pennington* doctrine immunized *government officials* from retaliatory prosecution claims arising under the First Amendment, not whether private entities that petitioned the government were immunized from liability. *Adams v. Kraft*, No. 10-CV-0602-LKH, 2011 WL 846065, at *14-15 (N.D. Cal. Mar. 8, 2011). Furthermore, *Associated Press v. United States*, which was decided more than fifteen years before *Noerr*, is inapposite. 326 U.S. 1 (1945). Zeleny cites this case for the general proposition that "[f]reedom to publish is guaran[teed] by the Constitution, but freedom to combine to keep others from publishing is not" and "[f]reedom of the press from governmental interference under the First Amendment does not sanction repression of that freedom by private interest." *Id.* at 20. In that case, the Supreme Court rejected the argument that a particular application of the Sherman Act infringed upon the freedom of the press and held that the press were not immune from antitrust laws. *Id.* Accordingly, this case has little bearing on the issue at bar.

Finally, to the extent Zeleny relies upon *A.H.D.C. v. City of Fresno* to support its argument, this district court case is unpersuasive as it does not address First Amendment claims, nor does it provide any analysis which can reasonably be carried over to this case. *A.H.D.C. v.*

*City of Fresno*, No. CV-F-97-5498, 2000 WL 35810718, at *4 (E.D. Cal. Aug. 31, 2000). Ultimately, the First Amendment interest in allowing the public to petition the government for redress justifies application of the *Noerr-Pennington* doctrine here. Allowing NEA to be held individually liable for raising concerns with the government regarding the open display of firearms near its offices, albeit during a protest, would severely impinge upon the public's right to petition the government. By contrast, application of the *Noerr-Pennington* doctrine to Zeleny's Section 1983 claim does not prevent Zeleny from challenging the government's alleged violation of his constitutional rights and seeking an injunction to prevent any future violations.

### 2. Sham Exception to *Noerr-Pennington* Doctrine

Zeleny contends that, even if the *Noerr-Pennington* doctrine would otherwise bar his Section 1983 claim, the sham exception to this doctrine allows him to proceed. Under the sham exception, a defendant who uses a governmental process, "as opposed to the outcome of that process," to violate the plaintiff's rights may be held liable for such conduct. *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991). The quintessential example of such conduct is filing frivolous objections during a governmental proceeding "with no expectation of achieving denial" but rather to impose expense and delay. *Id.* (emphasis added). A plaintiff must further show (1) the defendant's use of the governmental process was objectively baseless, (2) the defendant engaged in a pattern of petitions without regard for their merit, or (3) the defendant's misrepresentations deprived the governmental proceeding of its legitimacy. The plaintiff's complaint must allege specific facts to support the sham exception. *Franchise Realty Interstate Corp. v. S.F. Local Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1080-81 (9th Cir. 1976); *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988).

Zeleny argues NEA acted "not with a legitimate expectation of ultimately preventing" him from obtaining a permit to carry a gun during his protest, but to delay and protract the process. Opp. 18. He specifically contends the company attempted to delay and chill his protests by helping the City wrongfully prosecute him and urging the City to adopt an incorrect interpretation of the pertinent firearm statutes. He further alleges NEA and the City "coordinated an effort to pepper

[him] with ever-changing time, place, and manner requirements for his protests" and that the City "testified under oath at a hearing" during his appeal of the permit denial. *Id.* 18-19. In his view, these actions are analogous to filing baseless petitions before a state agency in order to clog the agency's decision-making process and prevent the application from being considered. *Id.* at 18 (citing *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972)).

These arguments are unpersuasive. Zeleny relies heavily on the City's alleged conduct and attempts to attribute this conduct to NEA by claiming the City was acting at the company's behest. The question is not, however, whether the City acted properly in handling Zeleny's prosecution and permit applications, but whether *NEA's actions* in these proceedings were "frivolous" and done with no expectation of achieving a particular result on the merits, but rather to impose expense and delay. *Omni Outdoor Advertising*, 499 U.S. at 380. The CFAC does not allege NEA lacked an expectation its lobbying efforts would result in a denial of the permit application. To the contrary, Zeleny alleges the NEA directly lobbied the City to deny Zeleny's permit and that the City agreed and subsequently made that determination. This does not plausibly suggest an effort to "clog" the City's decision-making process or to prevent the application from being considered— rather it suggests an effort to urge a particular decision on the merits. Finally, Zeleny fails to allege NEA had any impact on his criminal trial, much less explain how NEA's involvement in the trial could have resulted in undue delay or expense. In sum, the Section 1983 claim as currently plead is barred by the *Noerr-Pennington* doctrine and is, accordingly, dismissed with leave to amend.[4]

**C. Seventh Claim: Conspiracy to Violate Civil Rights Under Section 1985**

Section 1985(3) protects individuals from conspiracies to deprive them of certain legally

---

[4] In addition to the arguments discussed above, Zeleny contends NEA's communications with the police qualify for the sham exception because the company "had no legitimate purpose in going to the police" or "used the police in an illegitimate manner." *Forro Precision*, 673 F.2d at 1060. Zeleny does not, however, explain how the allegations in the CFAC support this conclusion. Instead he states: "Zeleny alleges that NEA had an improper purpose and used the police in an illegitimate manner. To the extent Zeleny has not already done so, Zeleny would amend his complaint to add such allegations." Opp. 20. Given the meager discussion of this issue in the briefing, and Zeleny's tacit admission that the complaint would benefit from additional allegations regarding NEA's interactions with the police, this argument will not be addressed at this juncture.

protected rights. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). To establish a violation of this section, a plaintiff must show (1) the existence of a conspiracy, (2) that the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, (3) an act in furtherance of this conspiracy, and (4) that, as a result of the conspiracy, the plaintiff was injured or deprived of a right or privilege to which he or she was entitled. *Id.* at 1536. With respect to the second element, the plaintiff must not only identify a legally protected right, but must also show the deprivation of that right was motivated by a racial or otherwise class-based "invidiously discriminatory animus." *Id.* (quotation omitted). Only those classes which the courts have identified as suspect or quasi-suspect, or which Congress has indicated require special protection, can support a claim under this section. *Id.*

Zeleny argues that "[c]ourts construing [§] 1985(3) have not limited its protection to racial or otherwise suspect classifications." *Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499, 505 (9th Cir. 1979). Although *Reichardt* is a Ninth Circuit case, it has since been construed by that same court to stand for the narrower proposition that gender-based classifications may result in invidious discrimination and therefore can support a Section 1985 claim. *Server*, 978 F.2d at 1536-37. Therefore *Reichardt*'s discussion of out-circuit cases that allowed 1985 claims to proceed despite the absence of a suspect or quasi-suspect class, *Reichardt*, 591 F.2d at 505 & n.16, does not reflect the current state of the law within the circuit.

Zeleny claims to be a part of two classes for the purposes of Section 1985: (1) a class of lawful firearm owners and (2) a class of people who vocally protest violence against women. He fails, however, to identify any cases which recognize either of these groups as suspect or quasi-suspect classes. Nor does he point to any legislation which would suggest these groups are in need of special protection. As the Supreme Court has explained, a class "connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993). Accordingly, the Section 1985 claim fails as a matter of law and is dismissed without leave to amend.

## V. CONCLUSION

For the reasons set forth above, the motion to dismiss is granted. The Section 1985 claim is dismissed without leave to amend and the Section 1983 claim with leave to amend. Should Zeleny choose to file an amended complaint, he must do so no later than August 30, 2019.

**IT IS SO ORDERED**.

Dated: July 30, 2019

_____
RICHARD SEEBORG
United States District Judge