THOMAS S. BROWN, CA Bar No. 178620
   tsbrown@foley.com
NICHOLAS P. HONKAMP, CA Bar No. 261299
   nhonkamp@foley.com
FOLEY & LARDNER LLP
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

ROGER A. LANE (admitted *pro hac vice*)
   rlane@foley.com
COURTNEY WORCESTER (admitted *pro hac vice*)
   cworcester@foley.com
**FOLEY & LARDNER LLP**
111 HUNTINGTON AVENUE
BOSTON, MA 02199
TELEPHONE:  617.342.4000
FACSIMILE:   617.342.4001

Attorneys for New Enterprise Associates, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| MICHAEL ZELENY, AN INDIVIDUAL<br>PLAINTIFF,<br><br>v.<br><br>EDMUND G. BROWN, ET AL.,<br><br>DEFENDANTS. | ) CASE NO:  17-CV-07357-RS<br>)<br>) **NEW ENTERPRISE ASSOCIATES, INC.'S**<br>) **NOTICE OF MOTION AND MOTION TO**<br>) **DISMISS; MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT OF SAME**<br>)<br>) **DATE:  NOVEMBER 7, 2019**<br>) **TIME:  1:30 PM**<br>) **COURTROOM: 3, 17TH FLOOR**<br>) |

4814-8814-2503.1

**PLEASE TAKE NOTICE** that on November 7, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard by the Court, New Enterprise Associates, Inc. ("NEA") will, and hereby does, move the Court to dismiss the claim asserted against it by Plaintiff Michael Zeleny ("Zeleny" or "Plaintiff").

This Motion is brought on the grounds that the sole count of Plaintiff's Second Amended Complaint ("SAC") against NEA for an alleged conspiracy to violate Section 1983 fails as a matter of law because all of NEA's alleged "overt acts" were in the exercise of NEA's First Amendment rights, and hence the *Noerr-Pennington* doctrine provides NEA with immunity. Plaintiff's SAC fails to address the infirmities articulated by this Court in its prior decision dismissing Plaintiff's claims against NEA. Having failed in its latest attempt to articulate a claim against NEA, NEA respectfully requests that the Court dismiss Plaintiff's claim once again, this time with prejudice.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, and the Declaration of Roger A. Lane submitted concurrently herewith, in addition to the pleadings and other papers filed in this action, and such other evidence and arguments as the Court may consider at the time of the hearing.

DATE:  SEPTEMBER 25, 2019

**FOLEY & LARDNER LLP**

ROGER A. LANE, ESQ.
COURTNEY WORCESTER, ESQ

By: /s Roger A. Lane

Roger A. Lane, Esq.
Courtney Worcester, Esq.
Attorneys for New Enterprise Associates, Inc.

4814-8814-2503.1

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      BACKGROUND ........................................................................................................ 1

    A.      Plaintiff's Original Complaint ........................................................................ 1

    B.      Procedural Background .................................................................................... 2

    C.      The CFAC's Claims Against NEA ................................................................ 2

    D.      Dismissal of the CFAC .................................................................................. 3

II.     ARGUMENT ............................................................................................................. 4

A.      Standard of Review ................................................................................................ 5

B.      Plaintiff's Section 1983 Claim Fails as a Matter of Law ...................................... 6

    1.      Plaintiff's claims are barred by the *Noerr-Pennington* doctrine ................ 6

    2.      Plaintiff's SAC lacks specific allegations to establish that NEA is not entitled to *Noerr-Pennington* immunity ................................................................... 8

        (a) Sham Litigation ............................................................................... 9

        (b) Allegedly False Statements to the Police ...................................... 12

        (c) Intimidating and Harassing Surveillance and Monitoring ............ 15

CONCLUSION ................................................................................................................ 16

4814-8814-2503.1

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aaron v. Aguirre*,
   No. 06-CV-1451-H(POR), 2007 WL 959083 (S.D. Cal. Mar. 8, 2007) ............................. 6

*Amarel v. Connell*,
   102 F.3d 1494 (9th Cir. 1996) ........................................................................................ 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................................... 5

*Barnes Found. v. Twp of Lower Merion*,
   927 F. Supp. 874 (E.D. Pa. 1996) ................................................................................ 8, 16

*Bashkin v. Hickman*,
   No. 07cv0995–LAB (CAB), 2008 WL 183696 (S.D. Cal. Jan. 17, 2008) ......................... 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................................... 5

*Boone v. Redevelopment Agency of City of San Jose*,
   841 F.2d 886 (9th Cir. 1988) ............................................................................................ 9

*Boulware v. Nev. Dep't of Human Res.*,
   960 F. 2d 793 (9th Cir. 1992) ........................................................................................... 7

*Burns v. Cty. of King*,
   883 F.2d 819 (9th Cir. 1989) ............................................................................................ 6

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972) .......................................................................................................... 7

*City of Columbia v. Omni Outdoor Advertising, Inc.*,
   499 U.S. 365, 380 (1991) ................................................................................................ 16

*Coca–Cola Co. v. Omni Pac. Co.*,
   1998 U.S. Dist. LEXIS 23277 (N.D. Cal. Dec. 9, 1998) ................................................ 12

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ............................................................................................ 5

*Davis v. Powell*,
   901 F. Supp. 2d 1196 (S.D. Cal. 2012) ............................................................................ 6

*E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) ..................................................................................7, 15, 16

*Epstein v. Wash. Energy Co.*,
  83 F.3d 1136 (9th Cir. 1996) ............................................................................ 5

*Forro Precision, Inc. v. I.B.M. Corp.*,
  673 F.2d 1045 (9th Cir. 1982) ..................................................................... 8, 13

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of
  Culinary Workers*,
  542 F.2d 1076 (9th Cir. 1976) ....................................................................8, 9, 14

*Freeman v. Lasky, Haas & Cohler*,
  410 F.3d 1180 (9th Cir. 2005) ........................................................................... 8

*Herguan Univ. v. Immigration and Customs Enforcement*,
  258 F. Supp. 3d 1050 (N.D. Cal. 2017) ............................................................. 5

*Hodge v. Oakland Unified Sch. Dist.*,
  No. C 09-04719 RS, 2010 WL 4117539 (N.D. Cal. Oct. 19, 2010) ..................... 5

*Ivey v. Bd. of Regents of Univ. of Alaska*,
  673 F.2d 266, 268 (9th Cir. 1982) ..................................................................... 6

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ............................................................................. 5

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ........................................................................... 5

*Margolis v. Ryan*,
  140 F.3d 850 (9th Cir. 1998) ............................................................................. 6

*Mark Aero, Inc., v. Trans World Airlines, Inc.*,
  580 F.2d 288 (8th Cir. 1978) ........................................................................... 15

*Movers & Warehousemen's Ass'n of Greater N.Y. v. Long Island Moving & Storage
  Ass'n*,
  No. 98 Civ. 5373(SJ), 1999 WL 1243054 (E.D.N.Y. Dec. 16, 1999) ............... 10

*New West, L.P. v. City of Joliet*,
  491 F.3d 717 (7th Cir. 2007) ........................................................................... 10

*New York Jets LLC v. Cablevision Sys. Corp.*,
  No. 05 Civ. 2875(HB), 2005 WL 2649330 (S.D.N.Y. Oct 17, 2005) ............... 15

*Noerr-Pennington. Tuosto v. Phillip Morris USA Inc.*,
    No. 05 Civ. 9384 (PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007)................................. *passim*

*Oregon Natural Res. Council v. Mohla*,
    944 F.2d 531 (9th Cir. 1991) ..................................................................................... 9, 14

*Ostrer v. Aronwald*,
    567 F.2d 551 (2d Cir. 1977) ........................................................................................... 6

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ...........................................................................................9, 10, 11, 12

*Sosa v. DIRECTV, Inc.*
    437 F.3d 923 (9th Cir. 2006) ......................................................................................... 7

*STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*,
    No. 10 Civ. 5023(JF)(PSG), 2011 WL 1362163 (N.D. Cal. Apr. 11, 2011).................................... 10

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir.2008) ......................................................................................... 10

*Toyota Tire & Rubber Co., LTD v. CIA Wheel Group, et al.*,
    Case No. SACV 15-246-JLS, 2015 WL 4545187 (C.D. Cal. July 8, 2015) ............................... 12

*Tsao v. Desert Palace, Inc.*,
    698 F.3d 1128 (9th Cir. 2012) ....................................................................................... 6

*United Mine Workers of Am. v. Pennington*,
    381 U.S. 657 (1965) ............................................................................................... 7, 16

*USS–POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades*,
    31 F.3d 800 (9th Cir.1994) .......................................................................................10, 12

*Venetian Casino Resort, L.L.C. v. N.L.R.B.*,
    793 F.3d 85 (D.C. Cir. 2015) ....................................................................................... 13

*Villa v. Heller*,
    885 F. Supp. 2d 1042 (S.D. Cal. 2012) ............................................................................. 14

*Woodrum v. Woodward Cty.*,
    866 F.2d 1121 (9th Cir. 1989) ....................................................................................... 6

**Other State Cases**

*New Enterprise Associates v. Zeleny*,
    San Mateo County Superior Court, Case No. CIV499465 ................................................................ 9

4814-8814-2503.1

*WebEx Communications, Inc. v. Michael Zeleny,*
    Santa Clara Superior Court, Case No. 1-04-CV 024062 ................................................... 11

**Federal Statutes**

42 U.S.C. § 1983 ..................................................................................................... *passim*

42 U.S.C § 1985 ........................................................................................................... 2, 3


**Other Authorities**

U.S. Const., First Amendment ..................................................................................... *passim*

U.S. Const., Second Amendment ................................................................................... 1, 2

U.S. Const., Fourteenth Amendment .............................................................................. 1, 2

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 5

4814-8814-2503.1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    BACKGROUND

New Enterprise Associates, Inc. ("NEA") is a venture capital firm based in Menlo Park, California. Years ago, NEA invested in a company cofounded by Min Zhu ("Zhu") named WebEx.  (SAC ¶ 32.) Plaintiff was previously involved in some way with Zhu's daughter, Erin Zhu ("Ms. Zhu").  (SAC ¶ 28.) In 2005, Plaintiff began protesting Zhu and WebEx, purporting to protest Zhu's alleged treatment of Ms. Zhu.  (SAC ¶ 33.)  Plaintiff later expanded those protests to include individuals or entities he believes supported or continue to support Zhu and his business activity, including NEA.  (SAC ¶ 42.)  NEA's investment in Zhu's company, WebEx, ended some 14 years ago, and, on information and belief, Zhu has resided in China since 2005.  (SAC ¶ 55.)  Despite this, from 2005 to 2012 Plaintiff targeted NEA with his "protests."  (SAC ¶ 42.)

Plaintiff's SAC challenges the constitutionality of California statutes passed in 2011 and 2012 that prohibit the open carrying of an unloaded handgun or other type of gun.  (SAC ¶¶ 1, 103-108.)  Plaintiff contends that he qualifies under exceptions to the statute that apply to participants in entertainment productions, such as motion pictures or television programs.  (*Id.* at ¶ 113.)  According to Plaintiff, the City of Menlo Park has wrongly required him to obtain a Special Event Permit or a film permit before allowing him to conduct protests.  (SAC ¶¶ 122-186.)  Plaintiff alleges that NEA has conspired with other Defendants to "discourage, restrict, stifle, and ultimately halt Zeleny's exercise of his First Amendment right to protest and his Second Amendment right to bear arms."  (SAC ¶ 231.)

### A.    Plaintiff's Original Complaint

On December 28, 2017, Plaintiff filed a Complaint for Declaratory and Injunctive Relief against Edmund G. Brown, Jr. (then the governor of California), Xavier Becerra (the Attorney General of California), the City of Menlo Park, and Dave Bertini (the Commander of the Menlo Park Police Department).  (Compl., Docket Entry No. 1.)  Plaintiff's original Complaint asserted claims against the City of Menlo Park and Bertini for violations of the First, Second and Fourteenth Amendments to the United States Constitution (Compl., Counts I, II & III); against the City of Menlo Park and Bertini for

violations of 42 U.S.C. § 1983 (Compl., Count IV); and against Becerra and Brown for violations of the Fourteenth Amendment to the United States Constitution (Compl., Count V).

Although NEA was not named as a defendant, Plaintiff's original Complaint invoked NEA's name over forty times, including alleging that "NEA called in political favors in 2012 to have Zeleny prosecuted under California's firearm laws in an effort to stifle Zeleny's protests." (Compl., ¶ 59.)

### B.    Procedural Background

Governor Brown was dismissed from the underlying lawsuit on April 17, 2018. (Docket Entry No. 37.) On January 4, 2019, Plaintiff served a subpoena on NEA seeking testimony on 21 topics and 24 requests for document production. After motion practice, Magistrate Judge Hixson quashed the vast majority of Plaintiff's subpoena. (Docket Entry No. 65, 6:27-7:6.)

Soon thereafter – some fifteen months after filing his Original Complaint – Plaintiff filed a Stipulation to file a First Amended Complaint (Docket Entry No. 68), which sought to add NEA as a defendant on claims of conspiracy to violate 42 U.S.C. § 1983 and conspiracy in violation of 42 U.S.C. § 1985(3). This Court allowed the Stipulation on April 1, 2019, and the First Amended Complaint was deemed filed as of that date. (Docket Entry No. 70.) On April 9, 2019, Plaintiff filed a Corrected First Amended Complaint. (Docket Entry No. 80.)

### C.    The CFAC's Claims Against NEA

The CFAC was identical to Plaintiff's Original Complaint but for the addition of paragraphs 22-23 (describing NEA as a party and alleging NEA conspired with other defendants), as well as the two counts against NEA (paragraphs 135-141), and the deletion of former Governor Brown as a party. (*Compare* Original Complaint *with* CFAC.) The Sixth Count asserted a claim against NEA for conspiracy to violate Plaintiff's civil rights under 42 U.S.C. § 1983. (CFAC, Count VI.) The gravamen of Plaintiff's Sixth Count was that in or about 2009, NEA entered into an "agreement" with the City of Menlo Park to restrict or halt Plaintiff's exercise of his First Amendment right to protest and his Second Amendment right to bear arms. (CFAC ¶ 136.) According to Plaintiff, NEA engaged in "overt acts" in furtherance of this conspiracy that consisted of: (1) providing information to the police department about Zeleny (CFAC

¶¶ 137, 139(a), (c), 140(a)); (2) advocating that Plaintiff should be denied a permit to conduct his protests (CFAC ¶¶ 139(b), (d), 140(e)); and (3) requesting that the City provide information to a legislative committee in an effort to have the open carrying of rifles prohibited in California (CFAC ¶ 140(d).) Plaintiff's second claim against NEA was for conspiracy to violate Plaintiff's civil rights in violation of 42 U.S.C. § 1985, and it was based upon the same factual assertions as the Sixth Count. (CFAC, Count VII.)

>        **D.      Dismissal of the CFAC**

NEA sought dismissal of the CFAC on three grounds; namely, that: (1) the Sixth and Seventh Counts of the CFAC, which asserted claims against NEA for an alleged conspiracy to violate Sections 1983 and 1985, were premised on "overt acts" that fell well outside the statute of limitations; (2) Plaintiff's Section 1983 claim failed as a matter of law because all of NEA's alleged "overt acts" were in the exercise of NEA's First Amendment rights, and hence the *Noerr-Pennington* doctrine provided NEA with immunity; and (3) finally, Plaintiff's Section 1985 claim failed as a matter of law because Plaintiff had not and could not allege that there was racial or other class-based discriminatory animus behind NEA's alleged actions. (Docket No. 85.)

On July 30, 2019, this Court issued an Order granting NEA's Motion to Dismiss the CFAC (Docket Entry No. 98 ("Order").) The Court dismissed with prejudice Plaintiff's Section 1985 claim because he failed to identify a class of which he was a member that was entitled to protection under Section 1985. (Order, at p. 10.) Consequently, this Court ruled that "the Section 1985 claim fails as a matter of law and is dismissed without leave to amend." (*Id*.)

With respect to Plaintiff's Section 1983 claim, the Court ruled that the CFAC contained one overt act occurring within the statute of limitations time period and hence denied NEA's motion to the extent it was based on the running of the statute of limitations. (*Id*. at p. 5.)

The Court then held that "[t]he vast majority of NEA's alleged conduct is protected by the *Noerr-Pennington* doctrine." (*Id*. at p. 7.) In particular, "[a]llowing NEA to be held individually liable for raising

concerns with the government regarding the open display of firearms near its offices, albeit during a protest, would severely impinge upon the public's right to petition the government." (*Id.* at p. 8.)

The Court also rejected Plaintiff's attempts to establish that the "sham exception" to the *Noerr-Pennington* doctrine allowed his Section 1983 claim to proceed. (*Id. at 9.*)  In so doing, the Court noted that the focus of Plaintiff's allegations should be on "whether *NEA's actions* . . . were 'frivolous' and done with no expectation of achieving a particular result on the merits but rather to impose expense and delay," rather than trying to attribute the City's actions to NEA.  (Order at p. 9 (emphasis in original).)  After ruling that Plaintiff's Section 1983 claim was barred by *Noerr-Pennington*, the Court noted that Plaintiff sought the opportunity to amend his CFAC to add "additional allegations regarding NEA's interactions with the police" to try to allege the applicability of the sham exception.  (*Id.* at p. 9 n. 4.)

## II.    ARGUMENT

While Plaintiff's SAC has added additional detail regarding NEA's alleged interactions with police and other governmental officials, it still fails as a matter of law to overcome the *Noerr-Pennington* doctrine, which provides NEA with immunity for exercising its core First Amendment rights.  Plaintiff alleges that NEA engaged in actions to interfere with his protesting activity, including "intimidating and harassing daily surveillance and monitoring, sham litigation, baseless, false and frivolous police reports, police harassment and intimidation, fraudulent criminal proceedings and deprivation of Zeleny's access to the administrative permitting process."  (SAC ¶ 231.)  All of NEA's alleged "overt acts" consist of NEA exercising its core First Amendment rights, however, and hence each of these acts is protected by the *Noerr-Pennington* doctrine, rendering NEA immune from liability.[1]  Plaintiff's attempts to invoke the sham exception to avoid application of the doctrine also fail.  His efforts in this regard are based on conclusory allegations, which fail as such, and they are flatly contradicted by the record or are based on bald misrepresentations of documents incorporated by reference in the SAC, which the Court can consider on a motion to dismiss.  Plaintiff continues to seek to attribute the City's alleged conduct to NEA and still fails specifically to plead that NEA's actions were done without the expectation of Plaintiff's permit being

---

[1] Only for the purposes of this motion to dismiss does NEA accept the well-pleaded factual allegations in the SAC.

denied.  Plaintiff's SAC demonstrates that despite extensive discovery and multiple attempts, he cannot plead a viable Section 1983 claim against NEA, and therefore Plaintiff's SAC should be dismissed with prejudice.

### A.     Standard of Review

As this Court is well aware, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Hodge v. Oakland Unified Sch. Dist.,* No. C 09-04719 RS, 2010 WL 4117539, at \*2 (N.D. Cal. Oct. 19, 2010) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988)).  When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true)). Moreover, the Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  And, a court may consider documents not physically attached to the complaint where "the plaintiff's complaint necessarily relies" on them. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v. FHP, Inc.,* 146 F.3d 699, 705–06 (9th Cir.1998)).

"Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).  As the deficiencies in Plaintiff's SAC cannot be cured, the dismissal should be with prejudice.  *Herguan Univ. v. Immigration and Customs Enforcement*, 258 F. Supp. 3d 1050, 1062 (N.D. Cal. 2017) ("'[A] plaintiff may plead herself out of court'"

on a motion to dismiss for failure to state a claim "if she 'pleads facts which establish that she cannot prevail on her . . . claim'.")(*quoting Weisbuch v. Cty. of L.A., 119 F.3d 778, 783 n.1 (9th Cir. 1997)* (internal brackets omitted).

**B.      Plaintiff's Section 1983 Claim Fails as a Matter of Law**

Plaintiff's Sixth Count against NEA for conspiracy to violate Section 1983 fails as a matter of law. "To plead a claim of conspiracy under § 1983, plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights." *Davis v. Powell*, 901 F. Supp. 2d 1196, 1217 (S.D. Cal. 2012) (citing *Miller v. California,* 355 F.3d 1172, 1177 n. 3 (9th Cir. 2004)); *Margolis v. Ryan,* 140 F.3d 850, 853 (9th Cir. 1998); *Woodrum v. Woodward Cty.,* 866 F.2d 1121, 1126 (9th Cir. 1989). "'Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.'" *Ivey v. Bd. of Regents of Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982); *see Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir. 1977)).

Courts in the Ninth Circuit have required a plaintiff who alleges a conspiracy to violate civil rights to state specific facts to support the existence of the claimed conspiracy. *Burns v. Cty. of King,* 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."); *accord Bashkin v. Hickman,* No. 07cv0995–LAB (CAB), 2008 WL 183696, at *2 (S.D. Cal. Jan. 17, 2008). This heightened pleading standard, *see Aaron v. Aguirre,* No. 06-CV-1451-H(POR), 2007 WL 959083, at *21-22 (S.D. Cal. Mar. 8, 2007), is even more demanding when the defendants at issue are corporations and organizations, not individuals, *see Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).

1.      Plaintiff's claims are barred by the *Noerr-Pennington* doctrine

Despite being provided another opportunity to plead a cognizable claim against NEA, Plaintiff's SAC still fails as a matter of law. Plaintiff's allegations fail because neither NEA's "overt acts," nor those

4814-8814-2503.1

committed by the City and Bertini allegedly "at the behest of NEA," or "with the assistance and encouragement of NEA," are actionable as to NEA, because the *Noerr-Pennington* doctrine provides immunity to NEA, and Plaintiff has not and cannot plead the applicability of the "sham exception."

The *Noerr-Pennington* doctrine originates from the First Amendment's guarantee of the "right of the people . . . to petition the Government for a redress of grievances." *Sosa v. DIRECTV, Inc.* 437 F.3d 923, 929 (9th Cir. 2006). "[T]hose who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Id.* Although the doctrine originated in the antitrust context, it applies to Section 1983 cases that are based on the petitioning of public authorities. *See Boulware v. Nev. Dep't of Human Res.*, 960 F. 2d 793, 800 (9th Cir. 1992). *Noerr-Pennington* immunity applies to *any* concerted effort to sway public officials, regardless of the private citizen's intent; so long as there is petitioning activity, the motive behind the activity is unimportant. *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965). The Supreme Court has made clear that, for purposes of the *Noerr–Pennington* doctrine, parties exercise their right to petition when they "advocate their causes and points of view respecting resolution of their business and economic interests," *Cal. Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 511 (1972), or attempt to "influence the passage or enforcement of laws." *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961).

As the Court has previously found, and as Plaintiff's SAC implicitly acknowledges, all of NEA's complained-of behavior involves the exercise of its fundamental First Amendment rights, and thus is entitled to immunity under the *Noerr-Pennington* doctrine. (Order at p. 7.) Plaintiff's SAC alleges that:

- NEA directly, or indirectly, filed suits against Plaintiff (SAC ¶¶ 63-74; 93-102); *Freeman v. Lasky, Haas & Cohler,* 410 F.3d 1180, 1184 (9th Cir. 2005) (defining petitioning activity as any "communication to the court");

NEA's MEMO of P & A
Case No. 17-CV-07357-RS

7

- NEA monitored and reported Plaintiff's behavior to the police (SAC ¶¶ 80-85); *Forro Precision, Inc. v. I.B.M. Corp.*, 673 F.2d 1045, 1060 (9th Cir. 1982) (communications to police covered by *Noerr-Pennington* doctrine); and

- NEA opposed Plaintiff's attempts to obtain a permit to conduct his protests (SAC ¶¶ 117-186); *Barnes Found. v. Twp of Lower Merion*, 927 F. Supp. 874, 877 (E.D. Pa. 1996) (allegations against defendants based upon their participation in meetings, in which they aired grievances about plaintiff, even if motivated by racism, were shielded by *Noerr-Pennington* doctrine).[2]

As all of NEA's challenged conduct involves the exercise of its First Amendment rights, Plaintiff's claim against NEA can only survive if Plaintiff adequately sets forth specific allegations to demonstrate that NEA is not entitled to *Noerr-Pennington* immunity. As Plaintiff's SAC fails to do so, Plaintiff's claim against NEA must be dismissed with prejudice.

> 2. Plaintiff's SAC lacks specific allegations to establish that NEA is not entitled to *Noerr-Pennington* immunity

Plaintiff's SAC must contain *specific allegations* demonstrating that the *Noerr-Pennington* protections do not apply. *See Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board of Culinary Workers,* 542 F.2d 1076, 1080-81 (9th Cir. 1976). Conclusory allegations are insufficient to strip activities of their *Noerr–Pennington* protection. *Id.* at 1081. Indeed, the Ninth Circuit

---

[2] Plaintiff asserts in wholly conclusory fashion that NEA deprived "Zeleny's access to the administrative permitting process" (SAC ¶ 231), but the SAC is devoid of any factual assertion to support this allegation. Paragraphs 117-186 of the SAC detail the permitting process that Zeleny alleges he has been forced to undergo. NEA, however, appears only nine times in these sixty-nine paragraphs and none of the allegations involve "NEA's actions in these proceedings," including whether "NEA's actions were 'frivolous' and done with no expectation of achieving a particular result on the merits, but rather to impose expense and delay." (Order at p. 9.) Indeed, Plaintiff affirmatively pleads that NEA had no involvement in the permitting proceedings. (SAC at p. 25 n. 3 ("NEA was never directly involved in the permitting process. It made no appearance at any hearings. It did not submit any materials.")). Plaintiff continues to allege, however, that NEA provided information to the City in an effort to have Zeleny's permit denied. ("Bertini emailed NEA security officer David Tresmontan to ask if NEA was still conducting surveillance on Zeleny, apparently *to obtain information to justify the pre-determined denial of the permit*." (SAC ¶147)(emphasis added).) Thus, NEA's alleged interactions with the City were, at most, petitioning activity – that is, seeking to sway the City to deny Zeleny's permit – which is quintessential First Amendment activity protected by the *Noerr-Pennington* doctrine.

has held that "[a]lthough we may be more generous in reviewing complaints in other contexts, our responsibilities under the first amendment in a case like this one require us to demand that a plaintiff's allegations be made with specificity." *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988). Here, Plaintiff's SAC is devoid of specific allegations that could deprive NEA of the protections provided to it by *Noerr-Pennington*.

(a)      Sham Litigation

Plaintiff attempts to avoid the application of the *Noerr-Pennington* doctrine by claiming that NEA engaged in sham litigation against him. To determine whether litigation is a sham, a court considers whether: (1) the lawsuit is "objectively baseless" such that "no reasonable litigant could realistically expect to secure favorable relief;" and (2) it is the subjective intent of the litigant to "interfere directly" with the plaintiff. *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60-61 (1993). In the Ninth Circuit, a plaintiff alleging the sham exception must include specific allegations explaining why the exception should apply: "Conclusory allegations are not sufficient to strip a defendant's activities of *Noerr-Pennington* protection." *Oregon Natural Res. Council v. Mohla,* 944 F.2d 531, 533 (9th Cir. 1991). The fatal flaw with Plaintiff's SAC is that NEA has only been a party to *one* lawsuit against Plaintiff and Plaintiff settled that lawsuit, making it impossible for him to establish that the litigation was "objectively baseless."

The only lawsuit that NEA has been a party to is a 2010 lawsuit captioned *New Enterprise Associates v. Zeleny,* San Mateo County Superior Court Case No. CIV499465. (SAC ¶ 71.) As Plaintiff admits, however, Plaintiff settled that suit for $25,000 and agreed to the entry of a permanent injunction that prohibits him "from entering onto . . . any portion of the real property situated at 2855 Sand Hill Road, Menlo Park, California, the walkway leading to NEA's business offices located in 2855 Sand Hill Road, the common tenant grounds of the office park in which 2855 Sand Hill Road is located, including internal street and entryways surrounding the buildings and the parking lots serving employees and invited guests

of tenants.[3]  (Request for Judicial Notice, Lane Decl., Exhibit A.)  As a matter of law, Plaintiff's decision to settle this lawsuit cannot be reconciled with his allegations that the suit was objectively baseless.  *See Theme Promotions, Inc. v. News Am. Mktg. FSI,* 546 F.3d 991, 1008 (9th Cir.2008) ("We begin by analyzing whether the underlying litigation was objectively baseless.... The fact that this ongoing litigation settled suggests that the original suit was not objectively baseless."); *New West, L.P. v. City of Joliet,* 491 F.3d 717, 722 (7th Cir. 2007) (holding a lawsuit that was settled for a significant amount could not form the basis for the sham litigation exception); *STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.,* No. 10 Civ. 5023(JF)(PSG), 2011 WL 1362163, at *2 (N.D. Cal. Apr. 11, 2011) ("[I]n determining whether particular litigation is a sham, courts often look to settlements and rulings on dispositive motions as evidence of the merits of the case."); *Movers & Warehousemen's Ass'n of Greater N.Y. v. Long Island Moving & Storage Ass'n,* No. 98 Civ. 5373(SJ), 1999 WL 1243054, at *6 (E.D.N.Y. Dec. 16, 1999) (stating that "resolution [by settlement] does not lend itself well to the label 'objectively baseless'"); *cf. Prof'l Real Estate Investors,* 508 U.S. at 61 n.5 ("A winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham.").  Having voluntarily settled NEA's case against him and accepted a "no trespass" injunction, Plaintiff cannot now claim that litigation constituted a sham.

Nor can Plaintiff establish that NEA has engaged in the practice of bringing a series of meritless lawsuits that could deprive NEA of its *Noerr-Pennington* immunity.  *USS–POSCO Indus. v. Contra Costa Cnty. Bldg. & Const. Trades,* 31 F.3d 800, 811 (9th Cir.1994).  In such circumstances, the inquiry is whether the "series of lawsuits . . . are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring" a plaintiff.  *Id.*

As noted above, NEA has only brought *one* lawsuit against Plaintiff and that lawsuit was settled.  The other three lawsuits identified in Plaintiff's SAC were brought by other entities or individuals, and Plaintiff has failed to allege, other than in a conclusory fashion, that those other lawsuits can be attributed

---

[3] Plaintiff alleges that he was "forced to settle as he could not bear the ongoing expense of defending himself." (SAC ¶ 74.)  Plaintiff, however, settled the action by agreeing, *inter alia,* to pay $25,000, which to date he has never paid.  Plaintiff presumably is not admitting that he agreed to a settlement that he had no ability of paying.

to NEA.  Moreover, even if one were to assume that the three lawsuits were, in fact, attributable to NEA, it is well-established that three suits fail to establish a pattern or series of lawsuits sufficient to invoke the sham litigation exception.

The other lawsuits that Plaintiff describes in his SAC are:[4]

- A 2004 lawsuit by *WebEx Communications, Inc. v. Michael Zeleny*, Santa Clara Superior Court, Case No. 1-04-CV 024062 (SAC ¶ 64);[5]

- In 2009, Scott Sandell, an NEA executive, allegedly filed for a TRO against Plaintiff (SAC ¶ 68)[6]; and

- In 2012, the City of San Mateo prosecuted Zeleny for carrying a concealed handgun (SAC ¶¶ 93-101).[7]

---

[4] Plaintiff also makes reference to an application for an emergency protective order that was never filed. It is utterly opaque how an unfiled suit is relevant to establishing that filed litigation was a sham.  (SAC ¶¶ 75-77.)

[5] Plaintiff sets forth the conclusory (and therefore ineffective) allegations that WebEx was an "affiliate" of NEA (SAC ¶ 64), and that "[o]n information and belief, NEA encouraged and assisted WebEx in this suit." (*Id.*)  Plaintiff's CFAC was noticeably devoid of any such assertions.  *Compare* CFAC ¶ 49.

[6] As Plaintiff himself admits, the TRO application "was denied without opposition or notice to Zeleny." (SAC ¶ 70.)  Hence, Plaintiff cannot claim that the application imposed any burden or expense on him.

Moreover, the courts have held that even when a lawsuit is lost, it does not mean that the litigation was a sham.  *Prof's Real Estate Investors*, 508 U.S. at 59-60 ("even where the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit").

[7] Plaintiff's allegations regarding NEA's involvement in his criminal prosecution are not new.  As the Court observed in its Order dismissing Plaintiff's CFAC, "Zeleny fails to allege NEA had any impact on his criminal trial, much less explain how NEA's involvement in the trial could have resulted in undue delay or expense." (Order at p. 9.)  Plaintiff's SAC does not remedy any of these deficiencies, as it merely adds vague, passing assertions of "control" and "ex parte" input.  Indeed, substantively, the allegations in the SAC regarding NEA's involvement in Zeleny's prosecution are essentially the same as those previously rejected by this Court:

| CFAC ¶ 63 | SAC ¶ 100 |
|---|---|
| In the course of the prosecution of Zeleny, NEA's representatives monitored his trial, and met frequently with San Mateo County Deputy District | On information and belief, the City and County pursued the sham prosecution at NEA's behest and with its active encouragement and participation. Despite having no standing to participate in the |

4814-8814-2503.1

Plaintiff's SAC is devoid of any allegations that these lawsuits were brought on behalf of NEA, and hence Plaintiff has failed to plead that NEA has engaged in a pattern or series of litigation against him.

Moreover, three lawsuits do not amount to "a whole series of legal proceedings" or a "pattern of baseless, repetitive claims." *Amarel v. Connell*, 102 F.3d 1494, 1519 (9th Cir. 1996) (quoting *USS-POSCO Indus.*, 31 F.3d at 811); *Prof'l Real Estate Investors*, 508 U.S. at 58. *Compare Toyota Tire & Rubber Co., LTD v. CIA Wheel Group, et al.*, Case No. SACV 15-246-JLS, 2015 WL 4545187, at *3 (C.D. Cal. July 8, 2015) (three lawsuits do not constitute a "series of lawsuits" within the meaning of the "pattern exception"); *Coca–Cola Co. v. Omni Pac. Co.*, 1998 U.S. Dist. LEXIS 23277, at *24 (N.D. Cal. Dec. 9, 1998) (concluding that four lawsuits did not constitute a series of lawsuits), *with USS-POSCO*, 31 F.3d at 811 (determining that twenty-nine lawsuits constituted a series of lawsuits). Plaintiff's SAC fails to set forth any specific allegations that NEA engaged in sham litigation, whether individually or as a series of lawsuits, and consequently, NEA's act of petitioning the court is entitled to immunity under *Noerr-Pennington*.

(b)    Allegedly False Statements to the Police

Plaintiff alleges that "[m]uch of NEA's reporting to the police was false, or at minimum, highly misleading," but, as discussed below, Plaintiff's SAC sets forth only **one** statement that he alleges was false (SAC ¶ 84)[8]; Plaintiff fails to set forth any factual allegations, as opposed to conclusory allegations, regarding how this statement was false; and even more problematic, Plaintiff blatantly misquotes the

| | |
|---|---|
| Attorney Jenna Johansson. Ms. Johansson regularly referred to NEA as 'her client' or 'the client' and indicated that she represented both the State of California and NEA. | criminal proceeding, NEA inserted itself into that proceeding, ultimately controlling prosecutorial decisions. In the course of the prosecution, NEA's representatives monitored Zeleny's trial, gave ex parte strategic input to both Bertini and the District Attorney's Office, and met frequently with Deputy District Attorney. The Deputy District Attorney regularly referred to NEA as 'her client' or 'the client,' and indicated that she needed NEA's approval before making significant decisions. |

[8] Previously Plaintiff alleged that "NEA falsely accused Zeleny of using drugs." (CFAC ¶ 139(a).) That allegation (properly) appears nowhere in Plaintiff's SAC.

statement in question in an effort to create a false statement by NEA.[9]

It is undisputed that interactions with the police are protected by *Noerr-Pennington*.  In *Forro Precision, Inc. v. I.B.M. Corp.,* 673 F.2d 1045, 1060 (9th Cir. 1982), the defendant IBM had approached the police department to allege that one of its competitors had stolen trade secrets.  *Id.* at 1059.  Consequently, the police searched the competitor's premises and, at the police department's request for assistance, IBM aided in the search.  *Forro Precision, Inc.,* 673 F.2d at 1053-54.  The Ninth Circuit held that neither IBM's communication with the police nor its assistance with the search could be used to establish IBM's specific intent to engage in anti-competitive conduct because "it would be difficult indeed for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information."  *Id.* at 1060.  The Court in *Forro Precision* explained that,

> [w]e do not liken an approach to the police for aid in apprehending wrongdoers to political activity. However, we think that the public policies served by ensuring the free flow of information to the police, although somewhat different from those served by *Noerr–Pennington,* are equally strong.  Encouraging citizen communication with police does not generally promote the free exchange of ideas, nor does it provide citizens with the opportunity to influence policy decisions ... Nonetheless, it would be difficult indeed for law enforcement authorities to discharge their duties if citizens were in any way discouraged from providing information.

*Id.*; *see also Venetian Casino Resort, L.L.C. v. N.L.R.B.*, 793 F.3d 85, 90 (D.C. Cir. 2015) ("[S]ummoning the police to enforce state trespass law is a direct petition to government subject to protection under the *Noerr-Pennington* doctrine.").

---

[9] This is not the only instance of Plaintiff's SAC misrepresenting the content of a referenced document in an effort to state a cognizable claim.  In Paragraph 140, Plaintiff alleges that "according to internal City communications, Bertini set up a meeting **with NEA 'so we can coordinate our response.'**" (SAC ¶140 (emphasis added).)  The "internal communication" however, demonstrates that an individual employed by the City of San Mateo emailed other government officials (and no one from NEA) seeking to have a meeting (amongst the city and government officials) to discuss the planned resumption of Plaintiff's Protests. (Lane Decl., Exhibit C.)  In response, another city official stated "Commander Bertini will be setting up a meeting in the next couple of weeks so we can coordinate our response." (*Id.*)  The plain reading of the email is that city officials – and not NEA – were looking to coordinate a response.  The only reference to NEA is that its security official "is available to provide additional background and assistance." (*Id.*)

Plaintiff cannot avoid *Noerr-Pennington*'s application by means of conclusory allegations that NEA made false statements to the police. Moreover, the allegedly false statement was this: "[D]espite Zeleny not being at NEA's headquarters in close to a year, NEA security reported to the City police (as well as the FBI, ATF, and the U.S. DOJ) that Zeleny was an 'on-going threat to NEA and its employees.'" (SAC ¶ 84).[10] As is abundantly clear from the April 9, 2013 email from which Plaintiff selectively quotes, NEA did not make any affirmative statement regarding Zeleny and his protests, let alone a false statement. Instead, a representative of NEA sent the following email to a variety of government officials:

> Dr. Michael H. Corcoran of the WorkThreat Group, LLC, *will be discussing his assessment of an on-going threat to NEA and its employees*. I hope to have you, or a representative from your organization, participate in this discussion. In light of law enforcement resources already expended in this matter, an updated perspective may be helpful.

(Lane Decl. Exhibit B) (emphasis added).[11] The email does not disclose what Dr. Corcoran's assessment was, whether NEA agreed with the assessment, let alone any information from which anyone could infer that the police were provided with any false information by NEA.

Moreover, even if NEA provided false information to the police, it would still be entitled to immunity under *Noerr-Pennington*. *Tuosto v. Phillip Morris USA Inc.*, No. 05 Civ. 9384 (PKL), 2007 WL 2398507, at *5 (S.D.N.Y. Aug. 21, 2007) ("*Noerr–Pennington* protection has been extended to all advocacy intended to influence government action, including to allegedly false statements."); *Villa v. Heller*, 885 F. Supp. 2d 1042, 1050 (S.D. Cal. 2012) (*Noerr-Pennington* doctrine barred RICO violation based upon individual making false allegations to the San Diego District Attorney and the San Diego

---

[10] Plaintiff's SAC then contains the following vague and wholly conclusory allegation: "On information and belief, NEA made other false and misleading reports to law enforcement authorities, solely for the purpose of causing them to harass Zeleny. . . ." (SAC ¶ 84.)

[11] Plaintiff must do more than mechanically assert that NEA made false statements. *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 536 (9th Cir. 1991) ("[T]he heightened pleading standard of *Franchise Realty* would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as misrepresentations.").

4814-8814-2503.1

sheriff); *Noerr,* 365 U.S. at 140–42; *Mark Aero, Inc., v. Trans World Airlines, Inc.,* 580 F.2d 288, 297 (8th Cir. 1978); *New York Jets LLC v. Cablevision Sys. Corp.,* No. 05 Civ. 2875(HB), 2005 WL 2649330, *7 (S.D.N.Y. Oct 17, 2005) ("The alleged misrepresentations fall squarely within the confines of *Noerr– Pennington.*").

(c)        Intimidating and Harassing Daily Surveillance and Monitoring

Finally, Plaintiff alleges that NEA engaged in "intimidating and harassing daily surveillance and monitoring." (SAC ¶ 231.)   Specifically, Plaintiff alleges that "NEA took it upon itself – with encouragement from the City – to engage in daily surveillance of Zeleny including in-person and online monitoring.  On information and belief, this surveillance was designed, in large part, as an effort to harass and intimidate." (SAC ¶ 80.)  It is not entirely clear from Plaintiff's SAC whether Plaintiff is asserting that NEA's surveillance *itself* directly harmed or harassed Zeleny or rather that, after NEA reported the results of its surveillance to the police, it was they who acted on it in a manner that harmed Zeleny.  The former cannot be the case, as it is directly contradicted by Plaintiff's CFAC and his efforts to resist dismissal of that complaint, in which he claimed that he had been *unaware* of NEA's surveillance at the time it occurred.  (Docket Entry No. 87, at pp. 1, 3.)  Plaintiff cannot simultaneously claim to have been unaware of NEA's surveillance in order to toll the running of the statute of limitations, and at the same time claim that the surveillance contemporaneously harmed him.

And as to the latter, NEA's conduct constitutes protected *Noerr-Pennington* activity.  Indeed, this Court previously rejected similar allegations made by Plaintiff in his CFAC.  (*Compare* CFAC ¶ 140(b) *with* SAC ¶¶ 79-83, 85-92.)  There, Plaintiff alleged that NEA had engaged in surveillance and made reports to the police in the hope that Zeleny's protests would stop.  (CFAC ¶ 139(a).)  That is, NEA was charged with having gathered and provided information to the police in pursuit of that goal, which is classic protected activity.  Plaintiff's new focus in his SAC on the purported *rationale* for NEA's actions

4814-8814-2503.1

– that it disagreed with the content of Zeleny's protests – utterly misses the mark.  (SAC ¶ 58.)  "Under the *Noerr–Pennington* doctrine, it does not matter what factors fuel the citizen's desire to petition government.  As long as there is petitioning activity, the motivation behind the activity is unimportant." *Barnes Found. v. Twp. of Lower Merion*, 927 F. Supp. 874, 877 (E.D. Pa. 1996); *see e.g. Noerr,* 365 U.S. at 139 ("The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so"); *Pennington,* 381 U.S. at 670 ("*Noerr* shields ... a concerted effort to influence public officials regardless of intent of purpose"); *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 380 (1991) ("That a private party's political motives are selfish is irrelevant").  As NEA's motivations for petitioning various government resources are irrelevant, Plaintiff's SAC fails as a matter of law.

## CONCLUSION

For all of the reasons set forth above, NEA respectfully requests that this Court dismiss Plaintiff's claim against NEA with prejudice.

DATE:  SEPTEMBER 25, 2019             **FOLEY & LARDNER LLP**

By: /s Roger A. Lane
     ROGER A. LANE
     COURTNEY WORCESTER
     Attorneys for New Enterprise Associates, Inc.

1

2

**PROOF OF SERVICE**

3

4

    I hereby certify that on September 25, 2019, I electronically filed the foregoing document using

the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of

5

electronic filing to the interested parties.

6

7

8

/s/ Roger A. Lane
Roger A. Lane

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4814-8814-2503.1