THOMAS S. BROWN, CA Bar No. 178620
  tsbrown@foley.com
NICHOLAS P. HONKAMP, CA Bar No. 261299
  nhonkamp@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

ROGER A. LANE (admitted *pro hac vice*)
  rlane@foley.com
COURTNEY WORCESTER (admitted *pro hac vice*)
  cworcester@foley.com
**FOLEY & LARDNER LLP**
111 HUNTINGTON AVENUE
BOSTON, MA 02199
TELEPHONE:  617.342.4000
FACSIMILE:   617.342.4001

Attorneys for New Enterprise Associates, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

|  |  |
|---|---|
| MICHAEL ZELENY, AN INDIVIDUAL<br>PLAINTIFF,<br><br>v.<br><br>EDMUND G. BROWN, ET AL.,<br><br>DEFENDANTS. | ) CASE NO:  17-CV-07357-RS<br>)<br>) **NEW ENTERPRISE ASSOCIATES, INC.'S**<br>) **REPLY MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT OF ITS**<br>) **MOTION TO DISMISS**<br>)<br>) DATE:  NOVEMBER 14, 2019<br>) TIME:  1:30 PM<br>) COURTROOM: 3, 17TH FLOOR<br>) |

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

II.   ARGUMENT ............................................................................................................ 2

    A. There is No "Conspiracy" Exception to *Noerr-Pennington* Immunity .................... 2

    B. NEA's Alleged Conduct Is Protected by *Noerr-Pennington* ................................. 5

        1. NEA Has Not Engaged In Sham Litigation ......................................................... 5

           a. Plaintiff's Criminal Prosecution ................................................................ 5

           b. NEA Has Not Engaged in a Series of Sham Lawsuits .............................. 8

               i.    The WebEx Lawsuit. ...................................................................... 8

               ii.   Scott Sandell's TRO. .................................................................... 9

               iii.  NEA's 2010 Lawsuit. ................................................................... 9

        2. NEA's Reports to Law Enforcement are Protected by *Noerr-Pennington* ....... 11

               i.    NEA's Alleged False Statement. ................................................... 11

               ii.   NEA's Alleged Harassing Calls to Police. .................................... 13

               iii.  NEA's Surveillance of Plaintiff ................................................... 14

    C. Dismissal of the SAC with Prejudice is Appropriate ........................................... 15

CONCLUSION ................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Amarel v. Connell*,
   102 F.3d 1494 (9th Cir. 1996) .................................................................................... 8

*Boone v. Redevelopment Agency of City of San Jose*,
   841 F.2d 886 (9th Cir. 1988) ................................................................................... 15

*Boulware v.State of Nev., Dep't of Human Res.*,
   960 F.2d 793 (9th Cir. 1992) ..................................................................................... 4

*Brady v. United States*,
   397 U.S. 742 (1970) ............................................................................................. 6, 7

*In re Burlington N., Inc.*,
   822 F.2d 518 (5th Cir. 1987) ..................................................................................... 6

*Chantilly Farms, Inc. v. W. Pikeland Twp.*,
   No. CIV. A. 00-3903, 2001 WL 290645 (E.D. Pa. Mar. 23, 2001)...................................... 5

*City of Columbia v. Omni Outdoor Adver. Inc.*,
   499 U.S. 365 (1991) .........................................................................................3, 4, 5

*Crowe v. Cty. of San Diego*,
   608 F.3d 406 (9th Cir. 2010) ................................................................................... 15

*In re Elysium Health-Chromadex Litig.*,
   354 F. Supp. 3d 330 (S.D.N.Y. 2019), *as amended* (Feb. 7, 2019), *reconsideration
   denied*, No. 17 CIV. 7394 (CM), 2019 WL 763532 (S.D.N.Y. Feb. 6, 2019) ................... 10

*In re Fresh Del Monte Pineapple*,
   No. 04-Md.-1628 (RMB)(MHD), 2007 WL 64189 (S.D.N.Y. Jan. 4, 2007),
   *subsequently aff'd sub nom. Am. Banana Co. v. J. Bonafede Co.*, 407 F. App'x 520
   (2d Cir. 2010)....................................................................................................... 10

*Empress LLC v. City & Cty. of San Francisco*,
   419 F.3d 1052 (9th Cir. 2005) ...............................................................................2, 3, 4

*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*
   365 U.S. 127 (1961) ...................................................................................... *passim*

4829-2708-4970.1

*Evers v. Custer Cty.*,
    745 F.2d 1196 (9th Cir.1984) ........................................................................................ 3

*Forro Precision, Inc. v. IBM Corp.*,
    673 F.2d 1045 (9th Cir. 1982) ............................................................................... 11, 12, 13

*Holmes v. Harris*,
    No. CV 18-3739 PSG (EX), 2019 WL 2895632 (C.D. Cal. May 15, 2019) .................................... 12

*Kearney v. Foley & Lardner, LLP*,
    590 F.3d 638 (9th Cir. 2009) ...................................................................................... 7, 8

*King v. Twp. of E. Lampeter*,
    17 F. Supp. 2d 394 (E.D. Pa. 1998), *aff'd*, 182 F.3d 903 (3d Cir. 1999) ........................................... 4

*Klatch-Maynard v. Sugarloaf Twp.*,
    No. 3:06-CV-845, 2010 WL 5789390 (M.D. Pa. Nov. 8, 2010) ......................................................... 5

*Kottle v. Northwest Kidney Centers*,
    146 F. 3d 1056 (9th Circuit 1998) ...........................................................................6, 7, 8

*Liberty Lake Investments, Inc. v. Magnuson*,
    12 F.3d 155 (9th Cir. 1993) ........................................................................................ 6

*Metro Cable Co. v. CATV of Rockford, Inc.*,
    516 F.2d 220 (7th Cir. 1975) ...................................................................................... 5

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ..................................................................................... 9

*Oregon Nat. Res. Council v. Mohla*,
    944 F.2d 531 (9th Cir. 1991) ...................................................................................... 9

*Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ................................................................................................. 6

*Russell v. Rolfs*,
    893 F.2d 1033 (9th Cir. 1990) .................................................................................... 15

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ...................................................................................... 6

*STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*,
    No. 10 Civ. 5023(JF)(PSG), 2011 WL 1362163 (N.D. Cal. Apr. 11, 2011) ...................................... 10

*Strickler v. Greene,*
    527 U.S. 263 (1999) .................................................................................................... 7

*Tarkington v. Cty. of Los Angeles,*
    No. CV 18-07636-CJC-JC, 2019 WL 1002516 (C.D. Cal. Jan. 16, 2019) ......................... 7

*Theme Promotions, Inc. v. News Am. Mktg. FSI,*
    546 F.3d 991 (9th Cir. 2008) ...................................................................................... 10

*Toyo Tire & Rubber Co. v. CIA Wheel Grp.,*
    No. SACV15246JLSDFMX, 2015 WL 4545187 (C.D. Cal. July 8, 2015) .................10, 15

*United Mine Workers of Am. v. Pennington*
    381 U.S. 825 (1983) .......................................................................................... *passim*

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
    865 F.2d 1539 (9th Cir. 1989) .................................................................................... 13

*Wagner v. Prof'l Eng'rs in Caifornia Gov't,*
    354 F.3d 1036 (9th Cir. 2004) .................................................................................... 15

*Winters v. Jordan,*
    No. 2:09-CV-00522JAMKJN, 2010 WL 2838634 (E.D. Cal. July 20, 2010) ................... 3

*Yeager v. City of San Diego Cal.,*
    No. 05CV2089-BEN (WMC), 2007 WL 7032933 (S.D. Cal. June 1, 2007), *aff'd,* 310
    F. App'x 133 (9th Cir. 2009) ....................................................................................... 3

**Other State Cases**

*In re Morton's Rest. Grp., Inc. Shareholders Litig.*
    74 A.3d 656 (Del. Ch. 2013) ....................................................................................... 9

**Federal Statutes**

18 U.S.C. § 1962(d) ........................................................................................................ 4

42 U.S.C. § 1983 ..................................................................................................... *passim*

**California Statutes**

California Code of Civil Procedure§ 998 ......................................................................... 10

**Other Authorities**

U.S. Const., First Amendment .......................................................................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff's Opposition to New Enterprise Associates, Inc.'s ("NEA") Motion to Dismiss Plaintiff's Second Amended Complaint ("Opposition") ignores black letter law, including controlling Supreme Court and Ninth Circuit precedent, as well as his own allegations, in a transparent attempt to breathe life into a claim that fails as a matter of law and should be dismissed with prejudice.

The gravamen of Plaintiff's SAC against NEA is that NEA entered into a conspiracy with the City of Menlo Park to halt Plaintiff's protests.  (SAC at ¶ 231.)  In furtherance of this conspiracy, NEA is alleged to have:

- directly or indirectly, filed lawsuits against Plaintiff (SAC ¶¶ 63-74, 93-102);

- monitored and reported Plaintiff's behavior to the police (SAC ¶¶ 80-85); and

- opposed Plaintiff's attempts to obtain a permit to conduct his protests (SAC ¶¶ 117-186).

All of NEA's alleged conduct involves the exercise of its fundamental First Amendment rights, which entitles NEA to immunity under the *Noerr-Pennington* doctrine.  (Order at 7.)

Confronted with NEA's immunity, Plaintiff engages in legal slight of hand, asserting that all he must do is allege that a conspiracy exists and that NEA is a part of it.  (Opposition at 1.)  After that, Plaintiff's logic is that NEA is liable for the conduct of its alleged co-conspirators.  (*Id.* at 1-2; 9-12.)  The argument makes no sense.  How could it be the law that NEA's First Amendment activity is protected, but if its activities are successful, *i.e.*, if it successfully petitions the government, it is liable because the government was convinced by its petitioning?  Not surprisingly, that is not the law.

As set forth below, it is black-letter law that allegations of "conspiracy" do not defeat *Noerr-Pennington* immunity.  Plaintiff's SAC can only survive if it sets forth particularized factual allegations sufficient to establish that NEA's First Amendment activities were a "sham."  As Plaintiff has utterly failed to do so, this Court should dismiss Plaintiff's claim against NEA with prejudice, and without leave.

## II.    ARGUMENT

### A.    There is No "Conspiracy" Exception to *Noerr-Pennington* Immunity[1]

Plaintiff's reliance on abstract principles of jurisprudence relating to conspiracy claims has no bearing on this controversy.  Notably, not one of the cases relied upon by Plaintiff (Opposition at 9-12) involved a conspiracy to violate Section 1983 and application of *Noerr-Pennington* immunity.  The reason for this is obvious:  the Ninth Circuit, following clear U. S. Supreme Court precedent, has rejected the notion that *Noerr-Pennington* immunity can be negated by alleging a conspiracy.  Indeed, were this not the case, *Noerr-Pennington* immunity would be hollow indeed.  According to Plaintiff, even if NEA's own actions are protected by *Noerr-Peninngton*, NEA can be found liable simply because Plaintiff has alleged it conspired with government officials.  (Opposition at 9-12.)  This argument is nonsensical.  The essence of *Noerr-Pennington* immunity is that it protects an individual or entity that petitions the government – making the government, by definition, a potential "conspirator."  The presence of the government in the alleged conspiracy, far from defeating application of *Noerr-Pennington* immunity, is precisely why it is applied.  In light of this, it is hardly surprising that Plaintiff's latest legal theory has been resoundingly rejected by numerous courts, including the Ninth Circuit and the U.S. Supreme Court.

In *Empress LLC v. City & Cty. of San Francisco,* 419 F.3d 1052 (9th Cir. 2005), the plaintiffs, owners of the Empress Hotel, brought an action against the Executive Director of the Tenderloin Housing Clinic, Randall Shaw, claiming that the City of San Francisco unlawfully delegated zoning decisions to him.  *Id.* at 1053-1054.  Shaw was alleged to have written a letter to San Francisco Zoning Administrator Lawrence Badiner, requesting that he make a zoning determination regarding the Empress and whether its prior authorized tourist use had been abandoned.  *Id.*  Shaw's letter asserted that the Empress had been vacated and its authorized tourist use abandoned and, as a result, the entire hotel had reverted to purely residential use.  *Id.*  After receiving Shaw's letter, Badiner initiated an investigation and eventually concluded that the tourist use of the Empress Hotel had been discontinued for a continuous period of at least three years, and therefore it could not be reestablished except in compliance with the then-applicable

---

[1] Plaintiff admits that the SAC is devoid of allegations that NEA participated in any way in the permitting process, and instead Plaintiff seeks to hold NEA liable solely because it conspired with others. (Opposition at 22-23.)  For the reasons detailed herein, that argument fails as a matter of law.

City codes.  *Id.*  The plaintiffs unsuccessfully appealed that determination to the Board of Appeals.  *Id.*

The plaintiffs then brought a Section 1983 claim against, *inter alia*, the City and County of San Francisco, Lawrence Badiner, the Planning Department, the Board of Appeals, and Shaw.  *Id.*  Shaw moved to dismiss the Section 1983 claim against him on grounds that his actions – specifically, his letter to Badiner requesting a zoning determination and the enforcement of zoning laws in regards to the Empress, as well as his alleged conversations with Badiner – were petitioning activities protected under the *Noerr–Pennington* doctrine.  *Id.* at 1056.  This Court dismissed the Section 1983 claim against Shaw, finding he had immunity under *Noerr-Pennington*.  *Id.* at 1054-55.

On appeal, the plaintiffs, much like Plaintiff here, argued that because Shaw's conduct constituted a conspiracy with government authorities to exercise an unlawful delegation of power, his actions were not immunized by the *Noerr–Pennington* doctrine.  *Id.* at 1056-57.

In affirming the dismissal, the Ninth Circuit held:

> [T]here is no 'conspiracy' exception to the *Noerr–Pennington* doctrine that applies when government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights.  *See City of Columbia v. Omni Outdoor Adver. Inc.,* 499 U.S. 365, 382–83, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991).  ***In such circumstances, a remedy lies only against the conspiring government officials, not against the private citizens.***  Therefore, the [plaintiffs'] allegation that Shaw conspired with the City to have the City unlawfully delegate its authority to him does not remove Shaw's petitioning activity from protection under the Noerr–Pennington doctrine.

*Id*. at 1057 (emphasis added); *see also Evers v. Custer Cty.*, 745 F.2d 1196, 1204 (9th Cir.1984)(affirming grant of summary judgment where allegations were that individual's petitioning activity did not evidence a claim of conspiracy and instead fell within the First Amendment's right to petition the government for redress of grievances); *Yeager v. City of San Diego Cal.,* No. 05CV2089-BEN (WMC), 2007 WL 7032933, at *8 (S.D. Cal. June 1, 2007), *aff'd,* 310 F. App'x 133 (9th Cir. 2009) ("Furthermore, there is no "conspiracy" exception to the *Noerr–Pennington* doctrine that applies when government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights."); *Winters v. Jordan,* No. 2:09-CV-00522JAMKJN, 2010 WL 2838634, at *8 (E.D. Cal. July 20, 2010), *report and recommendation adopted,* No. CIV-S-09-0522, 2010

WL 3636221 (E.D. Cal. Sept. 14, 2010), *aff'd,* 479 F. App'x 742 (9th Cir. 2012) (dismissing plaintiffs' federal claims premised on 42 U.S.C. § 1983 and the conspiracy provision of the RICO statute, 18 U.S.C. § 1962(d), against defendant who had immunity under *Noerr-Pennington,* as plaintiffs' claims all arose out defendant's legal representation, which included acts of representation in court proceedings, filing papers with the court, and communications with the Nevada County district attorney's office).

In affirming the dismissal of claims against Shaw, the Ninth Circuit relied on the U. S. Supreme Court's decision in *City of Columbia v. Omni Outdoor Advertising*, *Inc.,* 499 U.S. 365 (1991). There, the Supreme Court was urged to recognize an "exception to *Noerr* immunity – a 'conspiracy' exception, which would apply when government officials conspire with a private party to employ government action as a means of stifling competition." *Id.* at 382. Squarely confronted with the same argument that Plaintiff makes here, the Supreme Court definitively stated: "Giving full consideration to this matter for the first time, we conclude that a 'conspiracy' exception to *Noerr* must be rejected." *Id.* at 383. In so doing, the Supreme Court noted that the antitrust laws regulate business, not politics, and that *Noerr-Pennington* protects citizens' participation in government. In rejecting an "immunity-destroying 'conspiracy,'" the Court determined it was impracticable "to identify and invalidate lobbying that has produced selfishly motivated agreement with public officials." *Id.* at 384.

It is undisputed that *Noerr-Pennington* immunity has been expanded beyond the antitrust context to include Section 1983 claims and alleged conspiracies to violate Section 1983. *Empress*, 419 F.3d at 1056; *Boulware v.State of  Nev., Dep't of Human Res.*, 960 F.2d 793, 800 (9th Cir. 1992). Plaintiff has offered no reason – and indeed can offer none – why the Supreme Court's clear pronouncement that there is no "conspiracy" exception to *Noerr-Pennington* is not equally applicable to Plaintiff's attempt here to use allegations of conspiracy to negate NEA's *Noerr-Pennington* immunity.

Indeed, numerous courts have joined the Ninth Circuit in applying *City of Columbia* to prevent a "conspiracy" end-run around *Noerr-Pennington* immunity. *King v. Twp. of E. Lampeter*, 17 F. Supp. 2d 394, 413 (E.D. Pa. 1998), *aff'd,* 182 F.3d 903 (3d Cir. 1999) ("The Plaintiffs cannot circumvent the formidable barrier to prosecution imposed by the Noerr–Pennington doctrine by trying to implicate

4829-2708-4970.1

Defendant Lantz in a conspiracy with the Township Defendants."); *Klatch-Maynard v. Sugarloaf Twp.,* No. 3:06-CV-845, 2010 WL 5789390, at *6 (M.D. Pa. Nov. 8, 2010), *report and recommendation adopted,* No. 3:06CV845, 2011 WL 532168 (M.D. Pa. Feb. 8, 2011) ("Nor can a plaintiff defeat a claim of immunity for petitioning activity under the *Noerr–Pennington* doctrine by merely insisting that the defendants conspired, or agreed with others, to engage in this activity.  It is well-settled that there is no "conspiracy exception" to the *Noerr–Pennington* doctrine.") (citing *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365 (1991); *Chantilly Farms, Inc. v. W. Pikeland Twp.,* No. CIV. A. 00-3903, 2001 WL 290645, at *5 (E.D. Pa. Mar. 23, 2001) ("Further, the Plaintiffs' conspiracy allegations do not serve as an exception to the Private Defendants' immunity since the Supreme Court has expressly stated that there is no conspiracy exception to the Noerr-Pennington doctrine.); *see also Metro Cable Co. v. CATV of Rockford, Inc.,* 516 F.2d 220, 230 (7th Cir. 1975) ("Plaintiff's position is in essence that an agreement to attempt to induce legislative action is a 'conspiracy,' and that if some of the 'conspirators' persuade a member of the legislative body to agree to support their cause, he becomes a 'co-conspirator' and a Sherman Act violation results.  Such a rule would in practice abrogate the Noerr doctrine.  It would be unlikely that any effort to influence legislative action could succeed unless one or more members of the legislative body became such 'co-conspirators.'").

Plaintiff's allegations that NEA "conspired" with government officials are insufficient as a matter of law to deprive NEA of *Noerr-Pennington* immunity.  Consequently, the only question is whether Plaintiff has pled facts with particularity (as opposed to conclusory allegations) that are sufficient to invoke the "sham" exception.  Because Plaintiff has utterly failed to do so, the SAC must be dismissed.

B.   **NEA's Alleged Conduct Is Protected by *Noerr-Pennington***

1.   <u>NEA Has Not Engaged In Sham Litigation</u>

Whether viewed individually or collectively, none of the three lawsuits relied upon by Plaintiff deprive NEA of its immunity under *Noerr-Pennington.*

a.   Plaintiff's Criminal Prosecution

The actions that NEA is alleged to have taken in connection with Plaintiff's criminal trial are fully

protected by *Noerr-Pennington*.  (Opening Memo. at 11 n. 7.)  Plaintiff claims, however, that because NEA was not a party to the prosecution, it is not entitled to *Noerr-Pennington* protection.  (Opposition at 19.)  The sole case Plaintiff's relies upon for this is *In re Burlington N., Inc.*, 822 F.2d 518 (5th Cir. 1987).[2] That case, however, is expressly contrary to the Ninth Circuit's holding in *Liberty Lake Investments, Inc. v. Magnuson*, 12 F.3d 155, 157-59 (9th Cir. 1993), where the court held that *Noerr-Pennington* immunity extended to an individual who funded anticompetitive litigation but was not himself a party to the litigation, and was therefore not himself petitioning the courts.  *See also Sosa v. DIRECTV, Inc*., 437 F.3d 923, 937 (9th Cir. 2006).

Moreover, the only specific allegations related to NEA and Plaintiff's criminal prosecution are that NEA attended the trial, gave "*ex parte* strategic input," and met with the prosecutor.  (SAC ¶ 100.)  These allegations amount to nothing more than conduct incidental to Plaintiff's criminal prosecution.  The Ninth Circuit has long extended *Noerr-Pennington* immunity to such incidental conduct.  *Sosa*, 437 F.3d at 934. ("[T]o exercise its petitioning rights meaningfully, a party may not be subjected to liability for conduct intimately related to its petitioning activities.").  Thus, NEA's alleged conduct is protected as long as the underlying litigation in which it took place is also protected.  Here, Plaintiff has failed to adequately plead that his criminal prosecution constituted a sham.

Plaintiff's primary argument is that, in his 2012 criminal prosecution for carrying a concealed handgun, the County of San Mateo District Attorney's Office and the City of Menlo Park concealed allegedly exculpatory *Brady* material from his trial, depriving it of legitimacy and rendering it a "sham." (Opposition at 19-20; SAC ¶¶ 97-99.)  In so doing, Plaintiff seeks to shoehorn his criminal prosecution into the following limited circumstance to which *Noerr-Pennington* immunity does not extend, as articulated in *Kottle v. Northwest Kidney Centers*, 146 F. 3d 1056 (9th Circuit 1998):

> in the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if 'a ***party's*** knowing fraud upon, or its

---

[2] The case was also expressly disapproved by the U.S. Supreme Court when it fashioned its sham litigation test in *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 55 n.3 (1993).

1              intentional misrepresentations to, the court deprive the litigation of its
2              legitimacy.

*Id.* at 1060 (emphasis added).

3        Plaintiff has provided no explanation – let alone law – for why misrepresentations allegedly made

4 by the government in contravention of *Brady*, in a lawsuit to which NEA was not a party, operate to

5 deprive NEA of its *Noerr-Pennington* immunity.[3]

6        Plaintiff has also failed to plead that his criminal prosecution itself lacked legitimacy because of

7 the government's alleged *Brady* violations. Key to any *Brady* violation is that the nondisclosure of the

8 evidence prejudiced the plaintiff. *Tarkington v. Cty. of Los Angeles*, No. CV 18-07636-CJC-JC, 2019 WL

9 1002516, at *7 (C.D. Cal. Jan. 16, 2019). As to the prejudice prong, the Supreme Court has stated that

10 "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there

11 is a reasonable probability that the suppressed evidence would have produced a different verdict."

12 *Strickler v. Greene*, 527 U.S. 263, 281 (1999). Here, it is undisputed that Plaintiff was *acquitted*. Even if

13 the withheld materials technically constituted a *Brady* violation, the prosecution did not lack legitimacy.

14        This also distinguishes *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009), on which

15 Plaintiff relies. (Opposition at 19). There, in an eminent domain proceeding, certain testing needed to be

16 performed to determine the value of the land at issue. *Id.* at 642. The plaintiff repeatedly asked for the

17 test results, but none were provided. *Id.* As a result of a trial regarding the value of the property, the

18 plaintiff was awarded $953,000. *Id.* After trial, the plaintiff learned that the testing had in fact been

19 performed, and that the testing supported a higher valuation for the property. *Id.* at 642-43. Plaintiff

20 brought suit against the entity that initiated the eminent domain proceeding, as well as the law firm and

21 attorneys that represented the entity. *Id.* at 642. The Ninth Circuit concluded that allegations that these

22 defendants had made "intentional misrepresentations *to the court*, and fraud upon the court through the

---

[3] Notably, neither the County of San Mateo nor the District Attorney's office are defendants in this action. Moreover, Plaintiff's SAC does not assert a Section 1983 claim against the City or Bertini based on Plaintiff's 2012 criminal prosecution. (Compl. Fourth Count, alleging that the City of Menlo Park and Bertini violated Section 1983 by threatening *future* criminal prosecution, not based on the past criminal prosecution.)

4829-2708-4970.1

suppression of evidence, that ultimately led to [the plaintiff's property] being valued lower than it should have been" was sufficient to allege that the sham litigation exception applied.  *Id*. at 646-47 (emphasis added).  Here, in contrast, Plaintiff has failed to articulate any intentional misrepresentations that NEA made to the court, or specify what its alleged improper advocacy was; indeed, Plaintiff has not alleged that NEA made any representations to the court at all.  (SAC ¶ 100); *Kottle*, 146 F.3d at 1063 (specific allegations necessary to establish a sham litigation would include such things as "exactly what representations [defendant] made, or to whom; with whom [defendant] conspired; and what exactly its improper and/or unlawful methods of advocacy were").

> b.  NEA Has Not Engaged in a Series of Sham Lawsuits

Plaintiff next contends that NEA "filed or caused to be filed at least three frivolous lawsuits," and that this is not protected behavior under *Noerr-Pennington*.  (Opposition at 20.)  In so doing, Plaintiff ignores that even if there were a basis to attribute all three suits to NEA, which there is not (Opening Memo. at 11), three lawsuits do not amount to "a whole series of legal proceedings" or a "pattern of baseless, repetitive claims."  *Amarel v. Connell*, 102 F.3d 1494, 1519 (9th Cir. 1996); (Opening Memo. at 12.)  Consequently, Plaintiff has failed to adequately plead a *series* of sham lawsuits to deprive NEA of its *Noerr-Pennington* immunity, and none of the suits, considered individually, are adequately alleged to be a "sham" in any case.

> i.  The WebEx Lawsuit.

Plaintiff's SAC utterly lacks any factual allegations – as opposed to conclusory legal assertions – for this Court to attribute WebEx's 2004 lawsuit against Plaintiff to NEA.[4]  Plaintiff's sole allegation is that NEA was an "affiliate" of WebEx in 2004, that is, a "parent, subsidiary, or sister company," and hence in "control" of WebEx and its actions.  (Opposition at 21 n. 7.)  Plaintiff's assertion is woefully insufficient to attribute WebEx's actions to NEA.  Not only is it conclusory, but as the public record makes

---

[4] While Plaintiff's Opposition asserts that WebEx filed suit in the wrong forum "at NEA's behest," Plaintiff's SAC contains so such allegations.  (*Compare* Opposition at 21 *with* SAC ¶ 65 ("WebEx also engaged in other bad faith conduct to protract the litigation and disadvantage Zeleny, using the litigation to sap his resources and interfere with his protests.  It [WebEx] filed suit in the wrong venue in clear violation of California law.").)

clear, WebEx was a publically-traded company and as of March 31, 2004, it had 43 million shares of common stock issued and outstanding and entitled to vote.  (Supplemental Request for Judicial Notice, Lane Decl., Exhibit 1, WebEx Proxy Statement at 1.)  By law, WebEx was required to disclose beneficial owners who owned more than 5% of its stock – notably, NEA does not appear.  (Supplemental Request for Judicial Notice, Lane Decl., Exhibit 1, at 10.)  Nor did anyone affiliated with NEA serve on WebEx's board of directors at or about the time it filed its lawsuit against Plaintiff.  (Supplemental Request for Judicial Notice, Lane Decl., Exhibit 1, at 3-5; Exhibit 2 at 5 (disclosing that Scott Sandell resigned from WebEx's board in February 2002).)  Consequently, Plaintiff's conclusory allegation that WebEx was an "affiliate" of NEA, and therefore under its control, is woefully insufficient and falls far short of the specific allegations required to demonstrate that the sham exception should apply.  *In re Morton's Rest. Grp., Inc. Shareholders Litig.* 74 A.3d 656, 664-65 (Del. Ch. 2013); *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991).

        ii.      Scott Sandell's TRO.

Plaintiff next seeks to attribute to NEA a TRO application made by Scott Sandell, a general partner of NEA, in 2009.  Plaintiff provides no support for his assertion that a TRO sought by an individual *employee* can be attributed to the entity for which the individual works.  Moreover, Plaintiff's assertion that the TRO sought by Mr. Sandell was "objectively baseless" rests on nothing other than the fact that the TRO was denied.  However, the fact that a TRO was not granted does not show that a lawsuit was objectively baseless for purposes of *Noerr-Pennington*.  *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000).  This is especially the case where, as here, the judge who denied the TRO, far from ruling that the application was baseless, instead encouraged Mr. Sandell to seek other relief:

> This [Request for Orders to Stop Harassment] does not meet the criteria set forth under CCP sec 527.6
>
> Petitioners are free to pursue any civil remedies or actions they feel are just and appropriate.

(Supplemental Request for Judicial Notice, Lane Decl., Exhibit 3.)

        iii.      NEA's 2010 Lawsuit.

It is undisputed that NEA brought one lawsuit – and exactly one – against Plaintiff in 2010 for

trespass related to Plaintiff's attempts to protest on its leased property at Sand Hill Road.  NEA, pursuant to California Code of Civil Procedure Section 998, submitted a settlement offer to Plaintiff, *which he accepted,* pursuant to which:

- Zeleny agreed to have judgment enter against him in the amount of $25,000; and

- Zeleny agreed to have a permanent injunction enter against him that prohibited him from entering onto NEA's leased property.

(Request for Judicial Notice, Lane Decl., Exhibit A.)

Despite the fact that NEA obtained the relief that it sought in its lawsuit, along with monetary relief (which it has never been paid), Plaintiff claims he has adequately alleged that this litigation was a sham, because he claims that he settled "because he 'could not bear the ongoing expenses of defending himself.'"  (Opposition at 22.)  There is simply no basis for this Court to entertain, still less delve into, Plaintiff's proffered subjective motivations for settling.[5]

Numerous courts have held that the "the settlement of a purportedly objectively baseless lawsuit constitutes a favorable outcome within the meaning of *Noerr-Pennington* and therefore insulates the activity from application of the sham exception."  *In re Elysium Health-Chromadex Litig.*, 354 F. Supp. 3d 330, 338 (S.D.N.Y. 2019), *as amended* (Feb. 7, 2019), *reconsideration denied*, No. 17 CIV. 7394 (CM), 2019 WL 763532 (S.D.N.Y. Feb. 6, 2019), *supplemented,* No. 17 CIV. 7394 (CM), 2019 WL 759262 (S.D.N.Y. Feb. 7, 2019) (collecting cases, including *In re Fresh Del Monte Pineapple*, No. 04-Md.-1628 (RMB)(MHD), 2007 WL 64189, at *19 (S.D.N.Y. Jan. 4, 2007), *subsequently aff'd sub nom. Am. Banana Co. v. J. Bonafede Co.*, 407 F. App'x 520 (2d Cir. 2010) (agreement to settle lawsuit with payment and agreement to refrain from future behavior is inconsistent with position that lawsuit was sham); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1008 (9th Cir. 2008); *STMicroelectronics, Inc. v. Avago Tech. U.S., Inc.*, No. 10 Civ. 5023(JF)(PSG), 2011 WL 1362163, at *2 (N.D. Cal. Apr. 11, 2011); *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SACV15246JLSDFMX, 2015 WL 4545187, at *3 (C.D. Cal. July 8, 2015)).  Thus, Plaintiff has failed to articulate any basis for his

---

[5] Notably, Plaintiff's allegation that he could not afford to continue litigating is not only at odds with his voluntary agreement to pay NEA $25,000 as part of that settlement, but also contradicted by his institution of the instant lawsuit.

assertion that NEA's trespass lawsuit was objectively baseless, and Plaintiff's decision to settle the matter insulates NEA from any liability associated with it under *Noerr-Pennington*.

>    2.    NEA's Reports to Law Enforcement are Protected by *Noerr-Pennington*

Plaintiff next asserts that all of NEA's contact with the police over numerous years, even contact that he has previously asserted he was unaware of, that he has not alleged to be false, and which did not result in his arrest, falls outside of the protections of *Noerr-Pennington*.  In so doing, Plaintiff ignores clear Ninth Circuit precedent that for reports to the police to fall within the sham exception, the reports must *first* be false and *second,* the false reports need to have been provided solely to harass or to achieve ends unrelated to law enforcement.  *Forro Precision, Inc. v. IBM Corp.*, 673 F.2d 1045, 1060 (9th Cir. 1982) (emphasis added).  Plaintiff's SAC only alleges *one* purported false statement to law enforcement, and Plaintiff does not allege that any branch of government took action in response to the allegedly false report.  (Opposition at 17.)  While Plaintiff complains about other contact between NEA and law enforcement, he does not allege that NEA provided law enforcement with false information during these interactions.  Consequently, all of NEA's interactions with law enforcement are protected by *Noerr-Pennington*.[6]

>    i.    NEA's Alleged False Statement.

The sole allegedly false statement that Plaintiff relies upon is a 2013 email which says that a third party "will be discussing his assessment of an on-going threat to NEA and its employees."  (Lane Decl. Exhibit B.)  As set forth in NEA's Opening Memorandum, nothing in this email is alleged to be factually false.  (Opening Memo. at 12-13.)[7]

---

[6] Plaintiff asserts that NEA's decision to have armed security present when he protested is not protected by *Noerr-Pennington*.  Plaintiff's SAC, however, sets forth no factual allegations that security hired by NEA ever interacted with Plaintiff or any government officials in a way that violated his civil rights.  (SAC ¶ 81.)  Plaintiff has also offered no explanation for why NEA is not permitted to hire security to protect its own building and personnel.  Instead, Plaintiff's conclusory (and odd) assertion that NEA's decision to do so "esclata[ed] the danger of the situation" is without support and is utterly untethered to any alleged violation of Plaintiff's constitutional rights.  (Opposition at 15.)

[7] Plaintiff asserts that the characterization of Plaintiff as an "ongoing threat" is false because "he had not protested NEA in close to a year, and had never threatened NEA."  (Opposition at 17.)  Yet as the email attached to the Declaration of Damion Robinson makes clear, Plaintiff's contact with NEA was not limited to his actual protests:

1

2

3

Even if the Court were to assume that the statement was false, Plaintiff has failed to allege that any action was taken, or even contemplated, as a result of it.  Without such an allegation, Plaintiff has failed to plead that NEA's alleged false statement is unprotected by *Noerr-Pennington*.  Indeed, the case of *Holmes v. Harris*, No. CV 18-3739 PSG (EX), 2019 WL 2895632 (C.D. Cal. May 15, 2019), on which Plaintiff relies, demonstrates the fatal flaw in Plaintiff's pleading.  There, two individuals contacted police about an alleged attempted assault on their daughter.  *Id*. at *1-2.  One of the individuals was a police officer, and at times during her interactions with the police, invoked her status as a police officer.  *Id*. at *2-3.  Based upon the statements given by the couple, an individual was arrested for assault with a deadly weapon.  *Id*. at *3.  A video-tape of the incident contradicted the couples' statement and the accused was never prosecuted for assault.  *Id*.  The accused individual sued the police officer who had allegedly given false statements for violation of Section 1983.  *Id*.  In declining to dismiss the claim based upon *Noerr-Pennington*, the court noted that it was unclear whether the police officer was acting as a police officer when making the false statements or as an individual petitioning the government for redress.  *Id*. at *8. As such, it was not clear that the *Noerr-Pennington* doctrine applied.  *Id*.  The court then went on to say that even if the doctrine applied, the "sham exception" would apply ***because*** there was a genuine issue as to whether the alleged false report to the police led to the individual's arrest, depriving the arrest of its legitimacy.  *Id*.  Here, Plaintiff's SAC is utterly devoid of any allegations of action actually undertaken by any law enforcement agency as a result of NEA's allegedly false statement.  *Forro Precision*, 673 F.2d at 1060 ("If, in the case before us, IBM had provided the police with deliberately false information, solely for the purpose of harassing Forro or of achieving other ends unrelated to law enforcement, its conduct would unquestionably come within the sham exception.").

> I shall be present on site around the clock, served by support staff and equipped with fully operational, exposed and unloaded military grade firearms and load ammunition feeding devices therefor, including without limitation, a 9mm Para semiautomatic SIG P210 pistol, and a 7.65x51mm NATO semiautomatic LRB M25 rifle and tripod-mounted belt-fed Browning M1919a4, in full compliance with all applicable laws.

(Declaration of D. Robinson, Exhibit A.)  That Plaintiff had not followed through with his threatened protests does not render an assessment of him as an ongoing threat "false."

NEA's Reply ISO of P & A
Case No. 17-CV-07357-RS

ii.    NEA's Alleged Harassing Calls to Police.

Plaintiff next alleges that when he would appear to protest, NEA would call the police, who would, in turn, allegedly harass him.  (SAC ¶¶ 82-83; Opposition at 16-17.)  Plaintiff however does not allege that NEA ever said anything false to the police when calling them, which, as noted above, is a requirement to invoke the "sham exception."  (*Id*.)  Nor does Plaintiff allege that NEA directed (or could direct) the police to respond to its calls, nor what action the police should take in response.  Instead, Plaintiff asserts that NEA's calls to the police were improper because NEA "knew" Plaintiff had not committed a crime. (Opposition at 16.)  This assertion is not only is unsupported, but is also directly at odds with the Ninth Circuit's rationale for extending *Noerr-Pennington* protection to communications with the police.

First, Plaintiff's assertion that NEA *knew* he had not committed a crime because *internal* police reports so stated is illogical.  (SAC ¶ 83.)  Plaintiff does not allege that NEA ever saw these "internal reports," and indeed, as the reports would be generated *after* NEA called the police, it is illogical that they could be relevant to NEA's decision to call the police in the first place.  Even putting that to one side, Plaintiff's argument ignores the Court's rationale in *Forro Precision* for extending *Noerr-Pennington* protection to communications with the police:  to ensure that citizens are not discouraged from providing information to the police.  *Forro Precision*, *Inc.* 673 F.2d at 1060.  According to Plaintiff's logic, if NEA contacts the police and provides them truthful information (*e.g.*, Plaintiff is protesting and guns are visible), NEA is undeserving of *Noerr-Pennington* immunity *unless* the police make an arrest of Plaintiff in response to NEA's report.  Such a rule would unquestionably discourage citizens from providing information to the police, and it is categorically not the law.  *See, e.g.*, *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1545 (9th Cir. 1989) ("Phelps Dodge argues that it was confronted with a dangerous and potentially volatile situation requiring police protection.  It contends that assisting the police in this protective effort is no violation of the Steelworkers' civil rights. We agree. Indeed, citizens are properly urged to cooperate with law enforcement agencies when crime or civil disobedience is threatened….such cooperation does not prove conspiratorial conduct.").

As Plaintiff has not – and cannot – plead that NEA's calls to the police when Plaintiff appeared to protest contained any false information, NEA's communications are entitled to *Noerr-Pennington*

immunity.

                        iii.      NEA's Surveillance of Plaintiff.

Plaintiff now contends that NEA-sponsored surveillance of him was undertaken to harass and intimidate him,[8] and that such conduct is not protected by *Noerr-Pennington*.  (SAC ¶ 80; Opposition at 15.)  In so doing, Plaintiff now asserts that NEA's surveillance constitutes "actions, not communications [which do not] seek[] official action in any meaningful sense."  (Opposition at 15.)  Plaintiff's recasting of his allegations should be seen for what it is:  a hollow tactical attempt to avoid application of *Noerr Pennington*.

While Plaintiff now contends that NEA's surveillance of him is divorced from NEA seeking action from government officials, this is directly contradicted by what Plaintiff actually pled in his First Amended Complaint:

> • Over the course of several years, NEA engaged in on-line and in-person surveillance of Zeleny.  FAC ¶ 139(a).  As part of this surveillance, NEA reported on Zeleny's whereabouts on an ongoing basis, and fed the City false information that it could potentially use to seize Zeleny's firearms.  *Id.* (Docket Entry No. 87 at 3.)

> • NEA engaged in years-long surveillance of Zeleny both on-line and in person surveillance of Zeleny with the City's approval and encouragement, and sharing information with the City that could be used potentially to halt Zeleny's protests.  This surveillance included, among other things, tracking Zeleny's online activities and physically following him.  NEA transmitted the results of this surveillance to the City…(c) NEA regularly reported to the City about Zeleny's whereabouts; and (d) NEA followed Zeleny's online activity and reported information to the City that it believed useful in prosecuting Zeleny or ending his protests.  (FAC ¶ 139(a).)

(Opening Memo. at 15-16.)  Plaintiff obtained leave of Court to file a further amended complaint by asserting that "Zeleny alleges that NEA had an improper purpose and used the police in an illegitimate manner.  To the extent Zeleny has not already done so, Zeleny would amend his complaint to add such allegations."  (Order at 9 n.4.)  Instead of adding such allegations, Plaintiff now seeks to disavow his previous allegations.  As NEA reported its surveillance activity to the police, it is entitled to immunity

---

[8] As noted in NEA's Opening Memorandum, this assertion is impossible to reconcile with Plaintiff's allegation that he was unaware of the surveillance at the time it occurred.  (Opening Memo. at 15.)

under *Noerr-Pennington*, and the Court should reject Plaintiff's efforts to play fast and loose in this manner. *Wagner v. Prof'l Eng'rs in Caifornia Gov't,* 354 F.3d 1036, 1044 (9th Cir. 2004) ("Judicial estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by preventing a litigant from 'playing fast and loose with the courts.' ") (quoting *Russell v. Rolfs,* 893 F.2d 1033, 1037 (9th Cir. 1990)) (internal quotation marks omitted). Indeed, if Plaintiff's allegation now is that state action was *not* implicated in NEA's surveillance, there can be no Section 1983 claim based on it to begin with. *Crowe v. Cty. of San Diego,* 608 F.3d 406, 440 (9th Cir. 2010).

### C. Dismissal of the SAC with Prejudice is Appropriate

Even though Plaintiff has already had the benefit of extensive discovery (and years to conduct it), he asserts that dismissal would be inappropriate at this stage. (Opposition at 23-24.) In so doing, Plaintiff asserts that the issues presented by his SAC set forth a "novel" legal theory (Opposition at 24), yet he never identifies what his "novel" legal theory is. The reality is that courts routinely grant motions to dismiss based on *Noerr-Pennington* immunity. *Toyo Tire & Rubber Co.,* 2015 WL 4545187, at *3 (granting motion to dismiss counterclaims *without leave to amend* where counterclaim did not adequately allege that the "sham exception" to *Noerr-Pennington* applied); (Order). Indeed, that is why there is a heightened pleading standard – to facilitate dismissal to protect *Noerr-Pennington* immunity. *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988).

Dismissal with prejudice is particularly appropriate here, where the Court's previous Order laid out exactly what Plaintiff would need to plead in order to defeat application of the *Noerr-Pennington* doctrine. Plaintiff's SAC does not do so, and it should now be dismissed with prejudice.

### CONCLUSION

For all of the reasons set forth above, NEA respectfully requests that this Court dismiss Plaintiff's claim against NEA with prejudice.

4829-2708-4970.1

1    DATE:  OCTOBER 25, 2019                    FOLEY & LARDNER LLP

2

3                                        By: /s Roger A. Lane
                                             ROGER A. LANE
4                                            COURTNEY WORCESTER
                                             Attorneys for New Enterprise Associates, Inc.
5
                                **PROOF OF SERVICE**
6

7        I hereby certify that on October 25, 2019, I electronically filed the foregoing document using the

8    Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of

9    electronic filing to the interested parties.

10

11

12                                              /s/ Roger A. Lane
                                                Roger A. Lane
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                          NEA's Reply ISO of P & A
                                                          Case No. 17-CV-07357-RS

4829-2708-4970.1