UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ZELENY,

    Plaintiff,

v.

EDMUND G. BROWN, et al.,

    Defendants.

Case No. 17-cv-07357-RS

**ORDER GRANTING MOTION TO DISMISS DEFENDANT NEW ENTERPRISE ASSOCIATES**

Defendant New Enterprise Associates ("NEA") is a venture capital firm headquartered in Menlo Park, California. In 2005, plaintiff Michael Zeleny began a series of public protests against NEA for its financial backing of the company WebEx. Zeleny alleges that WebEx's founder Min Zhu raped his daughter Erin Zhu, with whom Zeleny later had a relationship. To draw attention to his demonstrations, Zeleny openly carried unloaded firearms while protesting. According to Zeleny, NEA entered into a conspiracy with codefendant the City of Menlo Park (the "City") to stifle his protests against the company, in violation of his First and Second Amendment rights.[1] Zeleny previously filed a complaint alleging violations of these rights under 42 U.S.C. § 1983.[2] His claim was dismissed, with leave to amend in order to plead with particularity that NEA should not be immune from liability for its conduct under the *Noerr-Pennington* doctrine. Zeleny

---

[1] In addition to the City, Attorney General Xavier Becerra and Commander of the Menlo Park Police Department Dave Bertini are also named defendants.

[2] Zeleny also raised a claim under 42 U.S.C. § 1985, which was dismissed without leave to amend.

subsequently filed a Second Amended Complaint ("SAC"), which NEA now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for November 14, 2019 is vacated.

On his latest attempt at a viable pleading, Zeleny first raises the creative argument that even if NEA were immune from liability for its own conduct under the *Noerr-Pennington* doctrine, it remains liable for the City's conduct as its coconspirator. That argument is plainly contradicted by Ninth Circuit and Supreme Court law. "[T]here is no 'conspiracy' exception to the *Noerr-Pennington* doctrine that applies when government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights…In such circumstances, a remedy lies only against the conspiring government officials, not against the private citizens." *Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005) (citing *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 382–83 (1991)). Thus, NEA can be held liable only for its own conduct—not that of any of its codefendants.

Zeleny then reverts to the argument that NEA's alleged conduct either does not fall within the protections of the *Noerr-Pennington* doctrine, or falls squarely within the "sham exception" to the doctrine. Under that doctrine, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). Under the "sham exception," a defendant who uses a governmental process, "as opposed to the outcome of that process," to violate the plaintiff's rights may be held liable for such conduct. *City of Columbia*, 499 U.S. at 380. The quintessential example of such conduct is the filing of frivolous objections during a governmental proceeding with no expectation of prevailing but rather to impose expense and delay. *Id.* Here, Zeleny alleges that NEA filed and participated in lawsuits against him, communicated with the City and police about him, and surveilled him, all of which is unprotected by the doctrine.

First, Zeleny alleges that NEA either itself filed or cooperated with several lawsuits against him, which collectively amount to an abuse of government process and therefore fall within the

"sham exception." However, NEA itself has only ever filed one lawsuit against Zeleny, and that lawsuit was settled—contravening Zeleny's assertion that the lawsuit was baseless. *See Theme Promotions, Inc. v. News America Marketing FSI*, 549 F.3d 911, 1008 (9th Cir. 2008). Zeleny has not alleged specific facts showing that NEA was involved in any of the civil lawsuits against him that it did not personally file; conclusory statements that NEA was assisting WebEx and one of its partners will not suffice. *Franchise Realty Interstate Corp. v. S.F. Local Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1080–81 (9th Cir. 1976) (requiring specific facts to plead a "sham"). As to the criminal prosecution against Zeleny, he seems to be attempting to hold NEA liable because of an alleged *Brady* violation by the prosecutors in that case—but again, NEA can only be liable for its own conduct, and Zeleny does not allege facts showing NEA's involvement in that violation or case.

Second, Zeleny alleges that NEA unreasonably interfered with his applications for permits to carry an unloaded weapon, again invoking the "sham exception." The majority of these allegations, as Zeleny himself admits, are based on the City's conduct, not that of NEA. Again, NEA can only be held liable for its own conduct. The only allegation regarding NEA's own conduct is that it remained in contact with the City throughout the permitting process—an allegation nowhere near specific enough to invoke the exception.

Third, Zeleny alleges that NEA made false, bad faith communications about him to the police. The normal protections afforded to citizen-government communications are diminished when those communications are false or solely to harass the subject or achieve means otherwise unrelated to law enforcement. *See Forro Precision, Inc. v. I.B.M. Corp.*, 673 F.2d 1045, 1060 (9th Cir. 1982). Zeleny only alleges that one statement made by NEA to the police—that Zeleny posed an "ongoing threat" to NEA in April 2013—was false. The record, however, plainly shows that Zeleny *did* pose an ongoing threat to NEA at that time: the SAC itself asserts that NEA's meetings and phone calls with law enforcement, including in March and April 2013, "correspond[ed] to Zeleny's protests." SAC at 12. Zeleny then represents the remainder of NEA's communications with the police as made in "bad faith" because they were intended to trigger a "response by police

officers" that was not arrest or prosecution. *Id.* at 15. That point, however, seems to rest on the narrow proposition that the *sole* purpose of law enforcement is to arrest and prosecute. It ignores the fact that police often respond to calls to monitor public safety with the express purpose of avoiding a situation where someone would need to be arrested or prosecuted.

Finally, Zeleny alleges that NEA had him followed on a daily basis and hired armed security staff. To the extent that Zeleny complains the private surveillance itself injured him, his federal constitutional rights, the basis for his 42 U.S.C. § 1983 claim, are not implicated as state action is a statutory requisite. To the extent that he laments NEA used what it learned from its security staff to report Zeleny to the police, that is precisely the type of citizen-government communication the *Noerr-Pennington* doctrine is designed to protect. *Forro*, 673 F.2d at 1059.

Zeleny has not alleged sufficient facts to overcome NEA's *Noerr-Pennington* immunity. Filing lawsuits, communicating with the City and the police, and engaging in private surveillance—that is, "petition[ing] the Government for a redress of grievances," *Sosa*, 437 F.3d at 929—are precisely the type of conduct that the doctrine is designed to protect. Zeleny was already given an opportunity to show that the doctrine should not apply, or that the "sham exception" should, and failed to plead specific facts to that effect. The motion to dismiss defendant NEA is therefore granted in its entirety, without leave to amend. The deadlines with respect to other defendants remain in effect.[3]

**IT IS SO ORDERED**.

Dated: November 5, 2019

RICHARD SEEBORG
United States District Judge

---

[3] NEA has also submitted requests that judicial notice be taken of several documents pursuant to Fed. R. Evid. 201. Notice is taken of the Notice of Entry of Judgment and Permanent Injunction entered *in New Enterprise Associates, Inc. v. Zeleny*, No. 499465 (Cal. Sup. Ct., County of San Mateo) for the proposition that a permanent injunction issued against Zeleny and he agreed to pay NEA $25,000 on September 22, 2011. The other documents are not necessary to the resolution of this motion.