# AFFELD GRIVAKES LLP

2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel: (310) 979-8700
Fax: (310) 979-8701

February 14, 2020

The Honorable Thomas S. Hixson            *Via CM/ECF*
United States Magistrate Judge
San Francisco Courthouse, Courtroom G
450 Golden Gate Avenue,
San Francisco, CA 94102

    Re:    ***Michael Zeleny v. Gavin Newsom, et al.***
            Case No. CV 17-7357 JCS
            **Joint Letter Brief Regarding Government Privileges**

Dear Judge Hixson:

      Plaintiff Michael Zeleny ("Zeleny") and defendants the City of Menlo Park and Chief Dave Bertini (collectively, "Menlo Park") respectfully submit this letter brief pursuant to your Discovery Standing Order ¶ 2.

      Counsel for Zeleny and Menlo Park have met and conferred in good faith by phone regarding the subject of this joint statement. If Your Honor is willing to conduct an *in camera* review, Zeleny and Menlo Park have stipulated to an *in camera* review of a modest number of documents over which Menlo Park asserts official information privilege and California Government Code § 6254(f). The meet-and-confer process has clarified that a Court order is necessary to address the privilege issues.

      The parties' position on the assertion of privilege are set forth in this letter brief. A declaration of counsel is submitted concurrently, attaching the discovery responses at issue, meet-and-confer correspondence, and a declaration from Dave Bertini.

[*Continued on Next Page*]

**Plaintiff's Position**

The Court should order Menlo Park to produce communications with other law enforcement agencies about Zeleny and his protests. The only dispute is whether these communications are privileged under the official information privilege or California Government Code § 6254(f). There is no dispute that the materials are otherwise relevant and discoverable. Because neither privilege applies, the materials should be produced.

This case is about Menlo Park's preventing Zeleny from engaging in protests in the exercise of his First and Second Amendment Rights. The Menlo Park Police Department, at the direction of Chief Bertini, engaged in extensive efforts to find a "firm solution" to stop Zeleny from protesting. Between 2010 and 2012, police engaged in extensive harassment and surveillance of Zeleny and his supporters, and ultimately, at the instance of Bertini, had him falsely charged with carrying a concealed weapon. Zeleny was acquitted in 2014.

After his acquittal, he sought permits that Menlo Park now requires for him to resume his protests. Chief Bertini took the unprecedented step of personally handling Zeleny's first permit application, rather than allowing it to be processed through ordinary channels. He denied the permit application, which he later admitted was partially content-based. Zeleny then applied for a film permit. Although Chief Bertini is not involved in any way in the film-permitting process, he intercepted this application as well, and caused the City to deny it.

The long history of interactions between Zeleny and the Menlo Park Police Department, and the pattern of efforts to stifle his protests, are central to Zeleny's claims of content-based discrimination. Menlo Park and Bertini have given an ever-changing series of excuses for the denial of Zeleny's permit applications, which belie the content-based motive.

Menlo Park has made clear during the meet-and-confer process that it is withholding a relatively small number of communications with other law enforcement agencies about Zeleny and his protests. The Court has already recognized that communications about Zeleny and his protests are relevant and discoverable. The City asserts official information privilege as well as an exemption to the California Public Records Act ("CPRA"), the state equivalent of FOIA. Neither protection applies here.

*First*, Menlo Park cannot satisfy its "substantial burden" of invoking the official information privilege. It is required to show a "substantial risk of harm" to "significant governmental or privacy interests," even with the imposition of a "carefully-crafted" protective order. It cannot make this showing. And, in any event, Zeleny's interest in discovering the information far outweighs any residual concerns that cannot be addressed through a protective order limiting disclosure and making appropriate redactions to the materials.

*Second*, that exceptions to a state public-records statute do not govern federal discovery. The CPRA does not apply to discovery by its terms. It also does not apply in federal court.

A.  **The Official Information Privilege Does Not Apply.**

Federal courts have recognized a qualified privilege for "official information." *Kerr v. U.S. Dist. Ct. for the Northern Dist.*, 511 F.2d 192, 198 (9th Cir. 1975). This privilege and the "law enforcement investigatory privilege" are governed by the same analysis. *Kelly v. City of San Jose*, 114 F.R.D. 653, 663; *see also Conan v. City of Fontana*, 2017 WL 2874623, at *4-5 (C.D. Cal. July 5, 2017). To assess assertions of privilege, courts engage in a two-step analysis.

*First*, the party asserting privilege must make a "substantial threshold showing." *Kelly*, 114 F.R.D. 653, 669. It must submit a declaration by an agency head, based on personal knowledge, providing "*specific* information about how disclosure of the subject material, in the situation presented by the case at hand, would harm significant law enforcement or privacy interests." *Id.* (emphasis in original). If it fails to make this showing, the Court "would have no choice but to order disclosure." *Id.*; *see also id.* at 671.

*Second*, if the invoking party meets its initial burden, the Court then engages in a balancing test in which "the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Soto*, 162 F.R.D. at 613. The test is "moderately pre-weighted in favor of disclosure." *Kelly*, 114 F.R.D. at 661. The importance of the information to the plaintiff's case "is clearly the most important" factor. *Id.* at 663.

### 1. Menlo Park Cannot Meet Its Initial Burden

The initial burden on the party asserting privilege is substantial. It must provide:

- "a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer";
- "a description of how disclosure *subject to a carefully crafted protective order* would create a substantial risk of harm to significant governmental or privacy interests"; and
- "a projection of how much harm would be done to the threatened interests if disclosure were made."

*Soto*, 162 F.R.D. at 613 (collecting cases). "A strong affidavit would also describe how the plaintiff could acquire information of equivalent value from other sources without undue economic burden." *Kelly*, 114 F.R.D. at 670. Menlo Park cannot possibly satisfy this standard.

Menlo Park cannot establish a real risk to any legitimate law-enforcement interest based on disclosure of records that relate specifically to Zeleny and are eight years old or older. *See* Kelly, 114 F.R.D. at 661 ("there has been substantial exaggeration of the size of the harm that limited disclosure might do"). The suggestion that these documents relate to an "open investigation," when Zeleny has not protested since 2012, is not plausible. If Menlo Park intended to take law action, it would have done so—and did so—years ago. Nor would the communications about an eight-year-old investigation reveal secret police tactics. The records are not remotely of the type entitled to protection. *See Kelly*, 114 F.R.D. at 661, 666 (noting identities of confidential informants as an example of protected information).

Finally, any risk can be eliminated by an appropriate protective order. *Id.* at 666 ("[t]he weight of law enforcement's interest drops dramatically . . . when a court imposes a tightly drawn protective order"). A protective order limiting disclosure to the parties and counsel, or to counsel only, would eliminate any risk of dissemination. Any truly sensitive material – *e.g.*, the names of informants – can be redacted. There is no basis for a wholesale withholding.

### 2. Zeleny's Interest Outweighs any Remaining Privacy Interests

The requests seek information relating to Zeleny (Request No. 11) and to contemplated arrests and prosecution of Zeleny (Request No. 12). This information goes to the core of Zeleny's claim under 42 U.S.C. § 1983, establishing that the Menlo Park Police department had a pattern of attempting to silence Zeleny's protests, which undermined the permitting process.

As detailed in Zeleny's Second Amended Complaint, discovery has shown a concerted effort by the Menlo Park Police Department to find a "firm solution" to stopping Zeleny. Between 2010 and 2012, Menlo Park engaged in round-the-clock monitoring, harassing traffic and investigatory stops, and ultimately falsifying a claim that Zeleny was carrying a "concealed" weapon, resulting in a two-year criminal prosecution. In direct contravention of written policy, Chief Bertini maintained—and apparently still maintains—a personal dossier of surveillance on Zeleny, labeling Zeleny a public safety issue. The same individual responsible for this pattern of conduct, Bertini, then intercepted and denied Zeleny's permit applications on two occasions. This arbitrary denial of Zeleny's permits forms the basis for Zeleny's section 1983 case.

The police file on Zeleny goes directly to his claim that the permitting process was a sham with no prospect of ever issuing a permit. To establish that the denials were content based, Zeleny needs to establish the pattern of conduct by Menlo Park and Bertini. Zeleny has a significant interest in getting his complete file, documenting the response to his protests.

**B.     California Government Code § 6254(f) Does Not Apply.**

Menlo Park's objection under Government Code § 6254(f) is frivolous. Both state and federal law are clear that section 6254 does not apply. "The provisions of [the CPRA] shall not be deemed in any manner to affect the . . . the rights of litigants . . . under the laws of discovery of this state." Cal. Gov't Code § 6260. Moreover, the CPRA does not apply in federal court. *Doubleday v. Ruh*, 149 F.R.D. 601, 611 (E.D. Cal. 1993).

## Defendants' Position

**A.     Background**

In or about 2005, plaintiff began to publicly protest Min Zhu (the founder, President and Chief Technology Officer of WebEx Communications, Inc. ("WebEx")) and his "cohorts" (New Enterprise Associates ("NEA")), claiming that Min Zhu ("Zhu") had "repeatedly raped [Zhu's] daughter" in and about 1988 and that, despite knowing of Zhu's "horrific abuse", Zhu's cohorts continued to do business with him. *See* Complaint [Document 1] at ¶¶ 2, 3, 23 and 25.

Between 2005 and 2012, plaintiff conducted a series of public protests, directed initially against Zhu and then later broadened to include officers, directors and investors of WebEx and NEA. *Id.*, ¶ 40. To draw attention to his protests, Zeleny carried and displayed unloaded weapons. *Id.*, ¶ 44. When protesting in the City, Zeleny notified the Menlo Park Police Department ("MPPD") in advance. For public safety, the MPPD asked Zeleny for permission to inspect his weapons. *Id.*, ¶ 45. Zeleny allowed those inspections and the City allowed him to protest as he desired. *See* Complaint at ¶ ¶ 49 -55). In June 2012, Zeleny moved his protests to the sidewalk in front of NEA within the City limits. *Id.*, ¶56. He was allowed to protest.

Effective 2012, California enacted legislation which generally outlawed the open carry of an unloaded handgun in public. Effective January 1, 2013, California expanded its "open carry" legislation to include unloaded firearms other than handguns. Penal Code §26400.

   **1.     Plaintiff Applies to the City for a Special Event Permit**

This litigation concerns plaintiff's June 3, 2015 application to the City for a Special

Event Permit ("SEP") for an event that he called "Child Rape Tools" with the stated purpose of the event being the "outing New Enterprise Associates as the corporate sponsors of incestuous child rapist Min Zhu". Plaintiff advised that the one-person event would be at "2825 Sand Hill Road, Menlo Park, CA 94205, at the median strip" and that he would "maintain a portable multimedia presentation illustrating ongoing corporate support of New Enterprise Associates (NEA) for incestuous child rapist Min Zhu." Plaintiff further advised that he would be present on site "around the clock, served by support staff and equipped with fully operational, exposed and unloaded military grade firearms and loaded ammunition feeding devices therefor, including without limitation, a 9mm Para semiautomatic SIG pistol, and a 7.65x51mm NATO semiautomatic LRB M25 rifle and tripod-mounted belt-fed Browning M1919a4." The event would also include a 55" portable media display that would show videos "featuring explicit representations of sexual violence committed by NEA's publicly disgraced protégé." This would be staged on the "median strip on Sand Hill Road directly across from NEA headquarters." It is readily apparent that the purpose behind this application was to secure government approval of his desire to openly carry unloaded weapons in public and thus fall into one of the exceptions to the California's Open Carry Ban.

The City denied plaintiff's application for various reasons, the majority of which arose from requirements set forth in the California Vehicle Code – to wit, the denial had nothing to do with the content of plaintiff's protests (as evidenced by the fact that he had been allowed to protest in a different public location within the City prior to his presenting his SEP application in 2015).

### 2. Plaintiff's Discovery Seeks Information that is Protected by the Official Information Privilege

In responding to plaintiff's request for production of documents, sets one and two, the City identified potentially responsive documents that included confidential law enforcement communications which were withheld from production to plaintiff. The City provided plaintiff's counsel with a Declaration in Support of the asserted Official Information Privilege and a Privilege Log identifying the documents that were withheld in accordance with the asserted privileges, both of which are attached hereto. As the Court will note, the documents identified in the privilege log pre-date plaintiff's application to the City for a SEP. This is important because it is the City's formal denial of that application in 2017 that forms the basis for plaintiff's lawsuit. It is also worthy to note that the withheld documents, each of which concern confidential investigation communications between law enforcement agencies, pertain to the time period when plaintiff was openly carrying unloaded firearms in public – a reasonable public safety concern for any law enforcement agency.

**B.     Argument**

Both federal common law (e.g., *Sanchez v. City of Santa Clara*, 936 F.2d 1027, 1033 (9th Cir. 1990); *Kelly v. City of San Jose*, *supra*, 114 F.R.D. 653) and California statute (Evidence Code § 1040) recognize the existence of an Official Information Privilege. While the courts have recognized that it is not absolute, courts are required to balance competing interests to

determine whether the information or materials that fall within the definitional reach of the privilege should be disclosed. See *Sanchez v. City of Santa Ana*, *supra*, 936 F.2d at 1033; *Kelly v. City of San Jose*, *supra*, 114 F.R.D. at 669. While the balancing approach is moderately pre-weighted in favor of disclosure, the pre-weighting in favor of disclosure "should not be so substantial that it is virtually impossible for law enforcement to protect any information." *Kelly v. City of San Jose*, *supra*, 114 F.R.D. at 662. This is what plaintiff essentially proposes by way of his argument herein. However, plaintiff must first make a proper showing of relevance in order for the presumption of disclosure to even apply. *Id.* at 666. Plaintiff has not met this burden with respect to his request for the production of the withheld records – all of which pre-date the City's complained-of decision to deny his permit application by more than 4 years. Without getting into the specific content of the withheld documents, the Court will note that these documents contain public safety information about persons not related to plaintiff or his claims in the instant suit.

The Northern District has previously stated that courts must "order an *in camera* review" of the documents once the defendant establishes the privilege. *Id.* at 671. Defendants have established this privilege by way of Chief David Bertini's declaration and this moving paper. Defendants therefore respectfully request that the Court conduct an *in camera* inspection of the withheld documents (approximately 40 pages total with some duplication) that may arguably be responsive to plaintiff's document request. Responsive documents to these document requests would be produced by defendants to the Court for *in camera* inspection pursuant to California Evidence Code §1045(b) and *Kelly*. Upon review, defendants believe it will become clear that the documents were properly withheld based on the asserted privilege and because they are not relevant to the instant litigation.

Even if, assuming *arguendo*, the Court were to rule that the withheld records are somehow relevant to this litigation, there are important governmental and privacy interests at stake, which support the application of the privilege to prevent the disclosure of this information to plaintiff or even his counsel. The documents requested by plaintiff in his request for production were collected and maintained by the City and have been maintained in confidence. *See* Declaration of David Bertini at ¶¶ 3 and 4. The disclosure of these confidential records would threaten the privacy interests of third persons, including confidential sources and witnesses, and disclose confidential investigatory methods/techniques of not just the City's Police Department but other local, state and federal agencies who are employed to protect the public safety.

Finally, defendants have also withheld these records pursuant to the law enforcement investigatory privilege (similar, if not identical, to the Official Information Privilege, as set forth in the Privilege Log) based on the harm to law enforcement efforts which might arise from public disclosure of these investigatory files. *Moore v. Garnand*, 2019 U.S. Dist. LEXIS 214934, quoting from *Conan v. City of Fontana*, 2017 U.S. Dist. LEXIS 103780, 2017 WL 2874623 (C.D. Cal. 2017). Chief Bertini's declaration establishes each of the elements of that privilege. Simply put, law enforcement techniques and intelligence would be disclosed, witnesses would lose their confidentiality and investigations would be compromised if plaintiff were permitted to obtain these records. Even a finely worded crafted protective order would compromise the

information contained in the withheld documents, particularly if plaintiff himself (or his long-standing legal counsel) would ever gain access to the information contained therein.

Respectfully submitted,

s/ Damion Robinson
Damion Robinson
Affeld Grivakes LLP

Attorneys for Plaintiff Michael Zeleny

s/ Todd Master
Todd H. Master
Howard Rome Martin & Ridley LLP

Attorneys for Defendants the City of Menlo Park and Dave Bertini

Attestation per Local Rule 5-1:
I attest that each person whose electronic signature appears above has concurred in the electronic filing of this joint document and has authorized the use of their electronic signatures.  Records supporting this concurrence are maintained by the filer and are available for inspection if needed.

Dated:  February 19, 2020

s/ Damion Robinson
Damion Robinson

## **CERTIFICATE OF SERVICE**

I, Damion Robinson, hereby certify that I electronically filed the foregoing document using the Court's CM/ECF system on February 19, 2020.  I am informed and believe that electronic filing using the CM/ECF results in electronic service on all interested parties.

Dated:  February 19, 2020

　　　　　　　　　　　　　　　　　　　　　　　　Damion Robinson