UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY,<br><br>    Plaintiff,<br><br>v.<br><br>GAVIN NEWSOM, et al.,<br><br>    Defendants. | Case No. 17-cv-07357-RS   (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 115 |

    This case is about crusades. Plaintiff Michael Zeleny has been on a crusade to expose the wrongdoing of a prominent Silicon Valley executive, Min Zhu. From 2005 to 2012 Zeleny staged public protests of Zhu and his cohorts at New Enterprise Associates and WebEx. Zeleny's protests took the form of in-person demonstrations, musical performances, and multimedia posts on YouTube. His protests were intended to be provocative. They included flyers and posters with graphic content that called out individuals by name. Zeleny eventually combined the First Amendment with the Second and started openly carrying and displaying unloaded firearms during his protests.

    But Zeleny says the City of Menlo Park has been on a crusade too. Fed up with his loud and unwelcome message, the City allegedly entered into a conspiracy with NEA to stifle Zeleny and stop his protests. The conspiracy began in 2009, and the City's part of it consisted of harassing Zeleny, with police constantly stopping and questioning him and his supporters without any reasonable suspicion of wrongdoing. Undercover officers in unmarked cars trailed him and his supporters, and followed him wherever he went. The police interfered with his protests, surveilled him, and falsely branded him a security risk. In 2012 the City went so far as to frivolously refer Zeleny to the San Mateo County District Attorney's Office for a sham prosecution for carrying a concealed weapon, which ended in an acquittal. Following the state's

adoption of new legislation regarding open carry, the City adopted a new municipal policy that requires Zeleny to obtain a permit if he is to carry an unloaded firearm during his protests. In furtherance of the conspiracy, the City has continuously denied Zeleny's applications, all to stifle his free speech and Second Amendment rights.

Or, at least, that's what he says. In an effort to obtain evidence to back up these accusations, Zeleny served document requests on the City for any documents relating to him or to any actual or contemplated arrest or criminal prosecution of him. The parties are now before the Court on a dispute concerning about 40 pages of responsive documents, over which the City claims the official information privilege.

Federal courts recognize a "qualified privilege" for official information. *See Kerr v. U.S. District Court for Northern Dist. of California*, 511 F.2d 192, 198 (9th Cir. 1975).[1] A governmental entity seeking to invoke the privilege must "make a substantial threshold showing." *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987). It must, "through competent declarations," "provide[] the court with *specific* information about how the disclosure of the subject material, in the situation presented by the case at hand, would harm significant law enforcement or privacy interests." *Id*. (emphasis original).[2] If it does so, the court must "conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995). The test is "moderately pre-weighted in favor of

---

[1] The City also objects to production of these documents pursuant to California Evidence Code § 1040. However, all of Zeleny's claims arise under federal law, *see* Second Amended Complaint, ECF No. 99, ¶¶ 194-235, so the federal law of privilege applies. *See* Fed. R. Evid. 501. Indeed, the Ninth Circuit has specifically rejected the application of California Evidence Code § 1040 in a federal lawsuit alleging a claim under 42 U.S.C. § 1983, *see Kerr*, 511 F.2d at 197, as Zeleny does here against the City, *see* SAC ¶¶ 218-24 (fourth claim for relief). *See also Kelly v. City of San Jose*, 114 F.R.D. 653, 655 (N.D. Cal. 1987) ("At the outset it is important to emphasize that in a civil rights case brought under federal statutes questions of privilege are resolved by federal law."). The cover page of the parties' joint discovery letter brief, as well as Zeleny's section of the letter, says that the City also objects to production based on California Government Code § 6253(f). However, the City's section of the letter makes no reference to that provision. Regardless, as explained, the federal law of privilege applies.

[2] The law enforcement investigatory privilege is similar and does not require separate analysis. *See Conan v. City of Fontana*, 2017 WL 2874623, *4-6 (C.D. Cal. July 5, 2017) (describing the privileges as being similar and then analyzing them together).

disclosure." *Kelly*, 114 F.R.D. at 661.

Because this is a qualified privilege, we have to start with relevance. If a document is core to the case, a qualified privilege is easier to overcome. But if it's collateral or unimportant, there's less need to compromise the legitimate interests law enforcement may have in confidentiality. *See Kelly*, 114 F.R.D. at 663 ("Some courts have stated expressly that . . . the importance of the information sought to the plaintiff's case is clearly the most important" factor) (citations and quotations marked omitted). Here, the documents are clearly relevant to Zeleny's conspiracy allegations. They are mostly dated 2012 and 2013 (with one in April 2011), during the most dangerous time in the conspiracy, when the police were harassing Zeleny and his supporters, and when the City was trying to have him imprisoned on a trumped up concealed-carry charge.

But a document has to be relevant to a "claim or defense," Fed. R. Civ. Proc. 26(b)(1), not just to an allegation. So, we need to analyze the role the conspiracy plays in Zeleny's claims against the City and its police chief. Let's start with the first claim for relief. Zeleny alleges that the City threatened him with criminal prosecution by claiming that some of his protest materials are obscene as to children and he seeks a declaration that they're not obscene and, more generally, that his protests are protected First Amendment activity. The role of the conspiracy in this claim seems to depend on how the City responds to it. If the City says yes, it did make those threats and his posters are obscene as to children, the claim boils down to evaluating the obscenity status of some posters, which really has nothing to do with the City's conduct. But if the City denies making the threats, or says the threats were because of neutral time, place and manner restrictions, then the City's motives become important in deciding who to believe. The conspiracy allegations function here mostly as evidence of motive and pretext. If they can be borne out by evidence, they would tend to show that the City's actions were driven by bias against Zeleny and his message and that the City's denials should be disbelieved.

In his second claim, Zeleny alleges that the City has wrongly interpreted the state open carry laws to create three problems (requirement for a permit, unfettered discretion, distinctions between forms of speech that are not meaningfully different) that give rise to a First Amendment violation. This claim raises factual questions about whether the City has done these things, but as

pleaded, it doesn't seem to turn on bias against Zeleny and his message. Of course, an unfettered discretion claim looks better to the trier of fact if the plaintiff can also show that the unfettered discretion was exercised with bias *against him*, so atmospherically the conspiracy allegations help here, even if they are not the essence of the claim.

But things come into sharper focus in the third claim. Here, Zeleny alleges that the City's policy with respect to issuing permits for people to use unloaded firearms in various types of performances is unconstitutionally vague. But he also alleges in the alternative in paragraph 215 that the City singled him out to stifle his protests because of the content of his speech. Bias against Zeleny's message is the core of that contention. And whatever evidence he is able to assemble of a years-long conspiracy against him is presumably how he would prove that contention.

Finally, any doubt about the relevance of the conspiracy is wiped away by the fourth claim for relief. Paragraphs 221 and 223 allege that the City threatened Zeleny with criminal prosecution to silence him and his message. So, while the role of bias against Zeleny's message is not necessarily clear in the first and second claims for relief, it is an alternative liability theory in the third claim and the very essence of the fourth claim. Accordingly, the documents at issue are relevant. And they are not just a little bit relevant. They date from the time Zeleny alleges the police were constantly harassing him and his supporters, so the police file is among the most important evidence necessary to evaluate the allegations at the heart of the fourth claim for relief. Thus, the qualified privilege starts out on shaky ground because these documents look like they're core.

The City's position is not helped by Police Chief Dave Bertini's boilerplate declaration that is the opposite of substantial and specific. The first two paragraphs state his job title and that the declaration is based on personal knowledge. The next paragraph says that the police investigate things, sometimes working with other law enforcement agencies, and keep what they find confidential. The fourth paragraph appears to be the entire justification for the official information privilege, and it is so generic the police could use it in any lawsuit about anything:

> To disclose this official information to the general public, or even in

4

> the instant litigation pursuant to a protective order, would irreparably harm the ability of the Menlo Park Police Department and other law enforcement agencies (local, state and federal) to conduct criminal and/or public safety investigations. It is in the interest of justice to maintain the confidentiality of this material because its production would necessarily disclose how the Menlo Park Police Department and other law enforcement agencies obtain information and conduct their investigations and thus complicate their ability to conduct future investigations and irreparably damage any ongoing investigations. The production of this confidential official information would also disclose private and confidential information about third persons.

The paragraph after that states that Zeleny's document requests seek, in part, confidential police documents. And then Bertini swears the declaration under penalty of perjury. Bertini's declaration is so lackluster, the Court could overrule the City's privilege claim on this ground alone. Indeed, *Kelly* holds that the Court *should* do exactly that and not even bother with an *in camera* review if the defendant's affidavit is insufficient. 114 F.R.D. at 671.

But in an abundance of caution, the Court has conducted an *in camera* review of the documents at issue. They contain some information that was sensitive eight years ago, such as planned visits to the area by a presidential candidate and the Secretary of Defense. There are also law enforcement updates on then-recent events, suspicious activities, and assessments of security threats to the 2012 election. None of the documents are classified. These documents are so stale that their production will not in any way undermine legitimate law enforcement objectives. Because the documents have the names of specific people in them, including law enforcement officers and others, they should not be posted on the internet for the whole world to see, but there isn't anything in them that justifies not giving them to Zeleny.

The Court **OVERRULES** the City's privilege objection and **ORDERS** it to produce these documents, subject to an appropriate protective order. Within seven days the parties shall file a jointly proposed protective order, or they shall file competing proposed orders and a joint discovery letter brief, not to exceed five pages, arguing for their respective positions.

**IT IS SO ORDERED.**

Dated: February 28, 2020

THOMAS S. HIXSON
United States Magistrate Judge