1  XAVIER BECERRA
    Attorney General of California
2  ANTHONY R. HAKL
    Supervising Deputy Attorney General
3  NOREEN P. SKELLY
    Deputy Attorney General
4  JOHN W. KILLEEN
    Deputy Attorney General
5  State Bar No. 258395
    1300 I Street, Suite 125
6    P.O. Box 944255
    Sacramento, CA 94244-2550
7    Telephone: (916) 210-6045
    Fax: (916) 324-8835
8    E-mail: John.Killeen@doj.ca.gov
  *Attorneys for Defendant California Attorney*
9  *General Xavier Becerra*

10

IN THE UNITED STATES DISTRICT COURT

11

FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13

14

| | |
|---|---|
| 15  **MICHAEL ZELENY, an individual,** | Case No. 3:17-cv-07357-RS (TSH) |
| 16            Plaintiff, | |
| 17      v. | **DECLARATION OF JOHN W. KILLEEN** |
| 18  **GAVIN NEWSOM, an individual, in his** | **IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |
| 19  **official capacity; XAVIER BECERRA, an individual, in his official capacity; CITY OF** | **[L.R. 72-2]** |
| 20  **MENLO PARK, a municipal corporation; and DAVE BERTINI, in his official** | Dept:     Courtroom 3, 17th Floor |
| 21  **capacity,** | Judge:    The Honorable Richard G. Seeborg |
| 22           Defendants. | Trial Date: None set<br>Action Filed: 12/28/2017 |

23

24

25

26

27

28

1        I, John W. Killeen, declare as follows:

2            1.        I am a Deputy Attorney General with the California Department of Justice and am

3    counsel of record for Defendant California Attorney General Xavier Becerra.  I have personal

4    knowledge of the matters set forth herein, except those matters stated on information and belief,

5    and would so testify.  I make this declaration in support of the Motion for Relief From

6    Nondispositive Order of Magistrate Judge being filed concurrently.

7            2.        For the convenience of the Court and the parties, attached hereto are true and

8    correct copies of the following docket entries in this case:

9                a.    ECF 99 (Second Amended Complaint), attached hereto as Exhibit 1;

10               b.    ECF 100 (Answer), attached hereto as Exhibit 2;

11               c.    ECF 135 (Discovery Letter Brief), attached hereto as Exhibit 3;

12               d.    ECF 140 (Order re Discovery Dispute), attached hereto as Exhibit 4.

13

14       I declare under penalty of perjury under the laws of the State of California and the United

15   States of America that the foregoing is true and correct, to the best of my knowledge, and that this

16   Declaration was executed on September 16, 2020, in Davis, California.

17

18                                        _____/s/ John W. Killeen_____

19                                                  John W. Killeen

20
     SA2018100198
21   34412094.docx

22

23

24

25

26

27

28

1

# EXHIBIT 1

David W. Affeld, State Bar No. 123922
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:    (310) 979-8700

Attorneys for Plaintiff
Michael Zeleny

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ZELENY,

    Plaintiff,

      vs.

GAVIN NEWSOM, *et al.*,

    Defendants.

Case No. CV 17-7357 RS

Assigned to:
The Honorable Richard G. Seeborg

**SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL**

Date: August 8, 2018
Time: 1:30 p.m.
Courtroom: 3, 17th Floor

Action Filed:  December 28, 2017
Trial Date:    November 18, 2019

    Plaintiff Michael Zeleny ("Plaintiff" or "Zeleny') alleges for his Second Amended Complaint against Defendants Xavier Becerra, in his official capacity ("Becerra"), the City of Menlo Park (the "City"), Police Chief Dave Bertini ("Bertini"), and New Enterprise Associates ("NEA"; collectively, "Defendants"), as follows.

- 1 -

SECOND AMENDED COMPLAINT

1.    This case is brought to challenge the constitutionality of California statutes restricting Plaintiff's rights to bear arms under the Second Amendment while engaging in, and as part of, entertainment events and media productions of peaceful, public speech on matters of public concern or matters of political, social, or other concerns to the community, or issues of significant importance to the public as a whole, as protected by the First Amendment. This case also challenges the application, by the City of Menlo Park (the "City"), of California statutes restricting Plaintiff's rights to bear arms under the Second Amendment while engaging in, and as part of, entertainment events and media productions of peaceful, public speech on matters of public concern or matters of political, social, or other concerns to the community, or issues of significant importance to the public as a whole, as protected by the First Amendment.  Lastly, this case challenges state statutes and municipal policies that have been seized upon by the City, which has imposed unlawful, content-based prior restraints, backed by the threat of criminal prosecution, to stifle Plaintiff's Constitutionally protected speech.

2.    Plaintiff Michael Zeleny ("Zeleny" or "Plaintiff") has been making lawful public protests in an effort to expose grave wrongdoing by a prominent Silicon Valley executive, Min Zhu, and those individuals and entities who have willingly continued to do business with Min Zhu despite knowing about his misconduct.  Min Zhu's cohorts include New Enterprise Associates, Inc. ("NEA"), present and former members of NEA's senior management, WebEx Communications, Inc. ("WebEx"), and present and former members of its senior management. The point of Zeleny's protests is to express the view that Min Zhu's wrongdoing, and the conduct of NEA and WebEx senior management in turning a blind eye to it, should disqualify them from any involvement in publicly traded companies.

3.    Zeleny's protests have sought to publicize allegations that Min Zhu repeatedly raped his daughter Erin Zhu when she was 14 years old.  Other Silicon Valley executives and investors, including NEA, WebEx, and their senior management, became aware of Min Zhu's incestuous, pedophilic assaults, but have nevertheless continued to do business with him.  Zeleny has been protesting to expose Min Zhu's despicable conduct and the corruption of Min Zhu's cohorts for condoning it.

- 2 -

SECOND AMENDED COMPLAINT

4. To amplify his message, Zeleny previously conducted protests at which he lawfully carried unloaded firearms. Zeleny also used simulated, non-explicit images and videos of Min Zhu's heinous conduct. In compliance with entertainment event and film and video production exemptions to recently enacted California bans on the carrying of unloaded firearms, Zeleny has created, and intends to continue creating, multimedia video and live entertainment events to disseminate his message.

5. The targets of Zeleny's protests have attempted to sweep Min Zhu's misdeeds and NEA's and WebEx's knowledge of them under the rug. They have enlisted the help of local law enforcement to suppress Zeleny's speech. In 2012, they responded to Zeleny's protests by having him arrested and criminally prosecuted for supposed violations of California open and/or concealed carry laws. Zeleny was acquitted after a bench trial. Since that time, at the behest of NEA, the City has circumvented and subverted its own policies to deprive Zeleny of access to the permitting process so that he can resume his protests.

6. Despite having failed in the earlier prosecution, the City continues to threaten further prosecution if Zeleny resumes his protests. The City asserts that Zeleny is required to have a permit from the City for his events in order to qualify for state law exemptions to the firearm carry ban. Yet, the City refuses to grant Zeleny a permit for his entertainment events, even though he is willing to comply with lawful time, place, and manner restrictions. Indeed, the City refuses even to advise Zeleny *what the requirements are* for seeking a permit. Instead, the City has made clear that it will not grant Zeleny a permit because it considers his message offensive, and that if he continues his protests, the City will prosecute him for violating California's obscenity laws and its open and/or concealed carry statutes.

7. Zeleny files this action to seek a declaration that the California statutes invoked against him are unconstitutional. Zeleny also seeks a declaration that the California statutes as applied against him by the City are unconstitutional. Zeleny contends that the People of the State of California and the Menlo Park Police Department have violated and threaten further violation of Zeleny's rights under the First, Second, and Fourteenth Amendments to the United States Constitution and provisions of the California State Constitution. Furthermore,

- 3 -

1  Zeleny's exercise of his Constitutional rights arises in connection with a public issue or an issue

2  of public interest.  Thus, Zeleny sues under 42 U.S.C. § 1983 for violation of his civil rights.

3          8.      Zeleny challenges the facial validity of California statutes restricting the

4  public display of unloaded firearms, California Penal Code §§ 26400 and 26350. Plaintiff also

5  challenges the interpretation of California Penal Code §§ 25510, 26400, 26405, 26350, and

6  26375 by local authorities in the City of Menlo Park, as applied to Plaintiff under the particular

7  circumstances of this case, and to the City's adoption and enforcement of municipal policy as

8  content-based restrictions on his protected speech.

9  **JURISDICTION AND VENUE**

10          9.      This action arises under the United States Constitution, particularly the

11  First, Second, and Fourteenth Amendments, and the Civil Rights Act, 42 U.S.C. §§ 1983 and

12  1988.

13          10.     This Court has original jurisdiction over these federal claims pursuant to

14  28 U.S.C. §§ 1331 and 1343.

15          11.     This Court has authority to grant the requested declaratory judgment

16  pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

17          12.     This Court has authority to issue the requested injunctive relief pursuant to

18  42 U.S.C. § 1983 and Federal Rule of Civil Procedure 65.

19          13.     This Court has authority to award attorneys' fees and costs pursuant to 42

20  U.S.C. § 1988.

21          14.     This Court has supplemental jurisdiction over state law claims pursuant to

22  28 U.S.C. § 1367(a), and it is authorized to award attorneys' fees and costs pursuant to Cal. Code

23  Civ. Proc. § 1021.5.

24          15.     Each of Defendant's unlawful acts alleged herein occurred in the

25  State of California and within the Northern District of California.

26          16.     Venue is proper in the United States District Court for the Northern

27  District of California pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the

28  instant action occurred in Menlo Park, California.

SECOND AMENDED COMPLAINT

## **THE PARTIES**

17.     Zeleny is a citizen and resident of Los Angeles, California.  Zeleny is an internationally renowned researcher of the history and technology of firearms, and a holder of a California Certificate of Eligibility (COE), which certifies that the California Department of Justice (DOJ) has checked its records and determined that he is not prohibited from acquiring or possessing firearms at the time the firearms eligibility criminal background check was performed. A COE is a prerequisite licensing/permit requirement for all prospective licensed firearms dealers, licensed ammunition vendors, manufacturers, certified instructors, gun show promoters, explosive permit holders, and other firearm-related employment activities, including any agent or employee of a vendor who handles, sells, or delivers firearms and ammunition. Zeleny has never been convicted of a felony or misdemeanor offense.

18.     Defendant Xavier Becerra (hereinafter "Becerra") is the Attorney General of the State of California.  Plaintiff is informed and believes, and on that basis alleges, that Becerra is a citizen and resident of the State of California.

19.     Defendant City of Menlo Park (hereinafter "City") is a municipal corporation duly organized and existing under the laws of the State of California and located within the Northern District of California.

20.     Defendant Dave Bertini (hereinafter "Bertini") is and was at all relevant times the Commander of the Menlo Park Police Department.  He committed the acts complained of herein while acting in his official capacity as Police Commander.  Plaintiff is informed and believes, and on that basis alleges, that Bertini is a citizen and resident of the state of California and the Northern District of California.

21.     In all of their actions and omissions alleged below, the foregoing Defendants were acting under color of state law and are being sued in their official capacities pursuant to *Ex Parte Young*, 209 U.S. 123 (1908).

22.     Defendant New Enterprise Associates, Inc. (hereinafter, "NEA") is a Delaware corporation with its principal place of business in Menlo Park, California.  NEA bills itself as the largest and most prominent venture capital firm in the world.

- 5 -

SECOND AMENDED COMPLAINT

23.     At all relevant times alleged herein, Defendant NEA conspired with defendants City and Bertini for the purpose of violating Zeleny's constitutional rights under the First, Second, and Fourteenth Amendments to the United States Constitution.

## FACTS

**Min Zhu's Heinous Conduct**

24.     Min Zhu was a prominent Silicon Valley executive who worked in the high-tech industry in California from the late 1980's until May 2005. He was a founder, President, and Chief Technology Officer of WebEx, an Internet technology company that became publicly traded on NASDAQ in 2000.

25.     Plaintiff is informed and believes, and on that basis alleges, that since May 2005, Min Zhu has continued to work in the high-tech industry based out of the People's Republic of China, and that Silicon Valley executives, including current and former NEA senior management, continue to fund him and collaborate with him in his ventures.

26.     Plaintiff is informed and believes, and on that basis alleges, that in or about August and September of 1988, Min Zhu repeatedly raped his daughter Erin Zhu, who was 14 years old at the time. At the time, Erin Zhu had been cut off from contact with anyone outside the home. Her mother was away undergoing medical treatment in China. While Erin Zhu was isolated and helpless, Min Zhu raped her for a period of four weeks, until his wife returned to California in September of 1988.

27.     Erin Zhu testified about these events under oath in 2003. Min Zhu was afforded multiple opportunities to deny her testimony, but he has never disputed it. In early 2000, Erin Zhu successfully pursued a claim against her father, Min Zhu, for childhood sexual abuse. Erin Zhu settled her claim against Min Zhu on confidential terms.

**Zeleny Becomes Aware of Min Zhu's Conduct**

28.     Zeleny became aware of Min Zhu's monstrous conduct when he developed a personal and professional relationship with Erin Zhu from the early 1990s to 2000. During the time that Erin Zhu and Zeleny were involved, romantically and in business, Erin Zhu told Zeleny about the horrific abuse she suffered at the hands of her father, Min Zhu.

- 6 -

SECOND AMENDED COMPLAINT

29.     Erin Zhu also told Zeleny about posts she had made on the Usenet newsgroup alt.sexual.abuse.recovery in 1991 and 1992.  Erin Zhu's posts corroborated what she had told Zeleny.  The posts can be found at: https://groups.google.com/forum/?hl=en#! search/erin$20zhu$20sexual$20abuse

30.     Erin Zhu also testifed about these events under oath in deposition.  Her deposition testimony can be found at: https://youtu.be/QgmWMGG3qgE/.

31.     Erin Zhu requested that Zeleny help her pursue claims against her father for childhood sexual abuse.  Zeleny is informed and believes, and on that basis alleges, that Min Zhu paid Erin Zhu a substantial sum of money as part of a confidential settlement to resolve her claims in April 2000.

**NEA's Support of Min Zhu Despite Knowledge of the Allegations of His Conduct**

32.     NEA provided venture capital support to WebEx from its early stages, through and beyond its initial public offering in 2000.

33.     NEA continued to do business with Min Zhu through 2005, when Zeleny began his public protests.  On May 2, 2005, during a WebEx Experience conference in San Francisco, Zeleny protested against the coverup of Min Zhu's rape of his daughter.  The next day, WebEx cancelled its conference.  It never held another user conference.

34.     According to *Breaking News*, posted on ConferencingNews.com on May 3, 2005, WebEx shut down its user conference in response to Zeleny's protest outside the Westin St. Francis in San Francisco the day before. The archived posting reporting this event can be found at https://web.archive.org/web/20050507090846/http:/www.conferencingnews.com/ breakingnews/11

35.     A week later, this report was corroborated by another conference attendee, who stated "that the conference was cancelled because a protestor with guns was outside the event and was consequently arrested Monday night."  The archived posting of this attendee's report can be found at http://web.archive.org/web/20070225101509/conferblog.com/ public/item/91268.

- 7 -

36.     On May 13, 2005, after failing to get a restraining order against future protests by Zeleny, WebEx announced Min Zhu's sudden "retirement" and his relocation to China. The archived posting of this document can be found at https://web.archive.org/web/20051109144958/http:/www.webex.com:80/pr/pr340.html

37.     Zeleny is informed and believes, and on that basis alleges, that the management of WebEx encouraged Min Zhu to "retire" as a result of Zeleny's public disclosure of Min Zhu's heinous conduct.

38.     On September 23, 2005, *Private Equity Week* announced the formation of Northern Light, a venture capital fund co-founded in China by Min Zhu, in partnership with Scott Sandell of NEA.  In commenting on this announcement on the same day, *China Venture News* reported: "What's missing in the *PrivateEquityOnline* article or any NEA release is any mention of the previous controversy surrounding NEA's venture partner, Min Zhu, who joined NEA in 2004, after his forced resignation as WebEx President and Director."  The archived posting of this report can be found at https://web.archive.org/web/20110314194905/ http://www.chinaventurenews.com/50226711/nea_invests_in_china_vc_firm_northern_light.php

39.     Following Min Zhu's departure from WebEx and his flight from the United States, Zeleny emailed various senior management of NEA to put them and NEA on direct, personal notice of Min Zhu's abuse of Erin Zhu.

40.     NEA refused to disavow Min Zhu.  Zeleny is informed and believes, and on that basis alleges, that NEA has continued to do business with Min Zhu, who is now ensconced in the Peoples' Republic of China.  In particular, C. Richard "Dick" Kramlich, a former Chairman and Co-Founder of NEA, moved to Shanghai in January 2008 to collaborate with Min Zhu, long after Zeleny brought the facts of Min Zhu's sexual depravity to the attention of NEA.  See the report published in *San Francisco Business Times* on June 29, 2008, at https://www.bizjournals.com/sanfrancisco/stories/2008/06/30/focus1.html?page=all.  Zeleny is informed and believes, and on that basis alleges, that NEA has sought to suppress media reports concerning the causes and circumstances of Min Zhu's departure from WebEx and the United States.

- 8 -

**Zeleny's Protests Against Min Zhu and His Enablers**

41.    Because of the foregoing, Zeleny believed that Min Zhu was categorically unfit to serve as an officer of a publicly traded company.  Zeleny also believed that anyone who would do business with Min Zhu despite knowledge of Min Zhu's monstrous conduct was similarly unfit for any position involving the public trust.

42.    Between 2005 and 2012, Zeleny conducted a series of public protests.  Initially, Zeleny's protests were directed only against Min Zhu.  Zeleny later broadened his protests after NEA senior management refused to acknowledge or address Erin Zhu's claims.  He expanded his protests to include the officers and directors of WebEx and investors in WebEx who had knowledge of Min Zhu's conduct, yet willingly continued to do business with him, including NEA and certain of its senior management such as Scott Sandell and Dick Kramlich.  Zeleny's public protests were intended to expose Min Zhu's conduct and the moral bankruptcy of Min Zhu's cohorts for condoning it.

43.    The protests have taken the form of in-person demonstrations, musical performances, and multimedia posts on YouTube as well as Zeleny's Internet-based LiveJournal blog, at http://larvatus.livejournal.com/tag/webex.

44.    Zeleny's protests were intended to be provocative.  They included flyers and posters containing graphic but non-obscene images reflecting Min Zhu's conduct.  They also included flyers and posters calling out specific individuals, including WebEx's Chief Executive Officer Subrah Iyar and NEA's Scott Sandell and Dick Kramlich, for being enablers of Min Zhu.  To draw attention to Zeleny's message, some of Zeleny's protests involved music played on accordions, trumpets, and bagpipes, and offers of free food to sex workers, registered sex offenders, and adult industry performers.

45.    Zeleny made video recordings of his demonstrations and posted them on the Internet.  He created a website, www.subrah.com, summarizing the contents of these protest activities.  On the website, Zeleny states that executives who raped family members and their knowing enablers have no place in positions of public trust.

- 9 -

46.     In a further effort to draw attention to his First Amendment protests, Zeleny eventually moved to lawfully exercising his Second Amendment rights, openly carrying and displaying unloaded weapons in compliance with state law.

47.     Zeleny always notified public officials and peace officers in advance of his plans for demonstrations.  He always complied with any peace officer's request to inspect his weapons.  Zeleny complied with all time, place, or manner restrictions on his protests requested by the City authorities, even when he believed that such restrictions were unlawful.

48.     Zeleny's exercise of his Second Amendment rights has been part and parcel of his exercise of his First Amendment right to protest against Min Zhu and Min Zhu's cohorts.  By incorporating a display of unloaded weapons, Zeleny intended to dramatize his protests, attract attention to them, and amplify his message.

**The Attempts to Stifle Zeleny's Protests**

49.     Min Zhu and his cohorts have persistently tried to stifle Zeleny's protests.

50.     In 2005, WebEx unsuccessfully sued Zeleny over truthful posts he made on the Yahoo! message board pertaining to WebEx.  The case was styled *WebEx Communications, Inc. v. Zeleny*, Santa Clara County Superior Court Case No. 104CV024062, later Los Angeles County Superior Court Case No. BC324927.  WebEx was eventually made to pay over $16,000 in attorney's fees and sanctions to Zeleny, first for filing in an improper venue, and subsequently after its complaint was stricken under California's anti-SLAPP (Strategic Lawsuit Against Public Participation) statute.

51.     When WebEx was unsuccessful in its efforts to silence Zeleny through civil litigation, it then enlisted law enforcement to attempt to silence him on its behalf.

52.     On May 2, 2005, Zeleny began a campaign of street protests against WebEx and Min Zhu at a WebEx user conference at the Westin St. Francis hotel in San Francisco.  Zeleny also protested against Subrah Iyar, another co-founder of WebEx and its CEO, and against Scott Sandell, a venture capitalist with NEA who had funded WebEx.

- 10 -

SECOND AMENDED COMPLAINT

53.     Zeleny's protest was peaceful.  He did not threaten anyone or brandish any weapons.  He did not use abusive language.  Zeleny stood peacefully in front of the hotel, in a business suit, holding a two-foot by three-foot board, and distributing flyers.

54.     WebEx nevertheless called the San Francisco Police Department and had Zeleny arrested.  Because the arrest was unlawful, later that same day, May 2, 2005, the San Francisco Police department released Zeleny without charges.

55.     He resumed his protest the following morning, May 3, 2005.  WebEx then abruptly canceled its user conference.  Ten days later, Min Zhu resigned from WebEx and left the United States for China.

56.     In October 2009 and September 2010, Zeleny conducted protests in front of NEA's headquarters in Menlo Park to protest its ongoing support of Min Zhu.

**NEA and the City Conspire to Derail Zeleny's Protests**

57.     In the midst of Zeleny's protests, the City and NEA entered into an agreement to stifle, restrict, frustrate, interfere with and ultimately stop Zeleny's protests by any available means.  The City explained in internal documents the desire to develop a "firm solution to ending his protests."  The object of this conspiracy was to delay and ultimately shut down Zeleny's protests using, among other things, harassing police tactics, false criminal prosecution, baseless legal proceedings, and later a sham permitting process.

58.     The reason for the conspiracy was NEA's, the City's, and Bertini's disagreement with the content of Zeleny's protected speech and his exercise of lawful Second Amendment rights.  The object of the conspiracy was illegal.  At no time has the City or NEA legitimately believed or expected that they could stop Zeleny's protected based on its content.  Instead, they have used unlawful and fraudulent actions as a weapon to directly interfere with Zeleny's protests through delay, distraction, and interference in violation of his First, Second, and Fourteenth Amendment rights.

59.     Zeleney is informed and believes that the City and NEA first entered into this conspiracy and reached a meeting of the minds in or about 2009 through a series of phone calls and in-person communications between representatives of NEA and the City police

SECOND AMENDED COMPLAINT

1    department, including Sergeant Sharon Kaufman and Bertini.  NEA representatives involved in

2    reaching and implementing the agreement included NEA security head David Tesmontan and his

3    predecessors.

4            60.    On information and belief, the conspiracy has later expanded to include

5    other individuals and other tactics, but the general object and nature of the conspiracy has

6    remained the same.  Among other communications, Zeleny is informed and believes that the

7    City and NEA developed and fostered the conspiracy through numerous meetings and phone

8    calls, corresponding to Zeleny's protests, including in October 2009, September 2010, October

9    2010, April 2011, October 2011, February 2012, June 2012, March 2013, April 2013, and

10   September 2015.  In addition, NEA and the City have routinely emailed one another regarding

11   Zeleny throughout the period of his protests.

12           61.    The conspiracy between the City and NEA has continued to date.  The City

13   and NEA have remained in regular contact since forming the conspiracy to develop ways, both

14   explicit and tacit, to perpetually stifle, delay, frustrate, and interfere with Zeleny's protected

15   activity.  According to the City, it remained in "close contact with security from NEA" to

16   address Zeleny and has "worked collaboratively" with NEA to address Zeleny's protests.

17           62.    Each of NEA and the City have taken overt acts in furtherance of the

18   conspiracy, including, without limitation, those alleged below.

19   **Baseless Legal Proceedings Against Zeleny**

20           63.    NEA and its executives and affiliates have filed a series of baseless legal

21   proceedings against Zeleny pursuant to the conspiracy.  The campaign by NEA and its affiliates

22   began with the WebEx lawsuit in 2004.  On information and belief, each of these lawsuits was

23   brought with NEA's assistance and encouragement, pursuant to a policy of starting litigation

24   against Zeleny without regard to its merit, solely for the purpose of interfering directly with his

25   protests by seeking frivolous emergency relief, intimidating Zeleny, and sapping his resources.

26           64.    In 2004, NEA affiliate WebEx frivolously sued Zeleny for defamation in

27   the case styled *WebEx Communications, Inc. v. Michael Zeleny*, Santa Clara Superior Court,

28   Case No. 1-04-CV 024062.  On information and belief, NEA encouraged and assisted WebEx in

- 12 -

SECOND AMENDED COMPLAINT

1  this suit. The lawsuit was objectively baseless and was filed for the sole purpose of using

2  litigation to temporarily stifle Zeleny's speech.

3       65.    WebEx also engaged in other bad faith conduct to protract the litigation

4  and disadvantage Zeleny, using the litigation to sap his resources and interfere with his protests.

5  It filed suit in the wrong venue in clear violation of California law. WebEx was made to pay

6  $4,316.30 in sanctions for frivolously suing in the wrong venue.

7       66.    The trial court then struck the majority of WebEx's compliant under the

8  California Anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, finding that had no likelihood of

9  success on the merits. As a result, WebEx was made to pay another $12,000.00 in sanctions to

10 Zeleny for filing frivolous claims in an effort to stifle his First Amendment rights.

11      67.    WebEx dropped the remainder of its case in exchange for a waiver of

12 malicious prosecution claims and Zeleny's agreement not to file an Anti-SLAPP motion in other

13 contemplated litigation.

14      68.    Zeleny is informed and believes that in 2009, with the encouragement and

15 assistance of NEA and the City, NEA executive Scott Sandell filed a frivolous application in the

16 San Mateo Superior Court for a temporary restraining order against Zeleny. This application

17 was based on Zeleny's protests.

18      69.    This application was objectively baseless and known by NEA, Sandell, and

19 the City to be baseless. Zeleny had not engaged in any conduct offering a basis for a restraining

20 order under California law. The TRO application was also untenable under established law as

21 violative of Zeleny's First Amendment rights.

22      70.    On information and belief, the TRO application was filed to directly

23 interfere with Zeleny's protests despite knowledge of NEA and Sandell they could not prevail on

24 the merits and that the TRO would be dissolved at a merits hearing.[1] NEA and Sandell

25

26 [1] Under California procedures, a party may seek a temporary restraining order against "harassment" on an *ex
parte* basis by simply filing a form. If the court grants the restraining order, it will then set a merits hearing to

27 determine whether the order can continue in effect. In the interim, the TRO requires a forfeiture of all
firearms owned by the person subject to the order.

28

SECOND AMENDED COMPLAINT

1  intentionally used this baseless TRO filing in an effort to delay and interfere with Zeleny's

2  protests. The TRO application was denied without opposition or notice to Zeleny.

3        71.    On October 5, 2010, NEA again filed another baseless TRO application

4  against Zeleny in the case styled *New Enterprise Associates v. Zeleny*, San Mateo County

5  Superior Court Case No. CIV499465. Once again, NEA knew that the TRO application was

6  objectively baseless and would not withstand a merits hearing. Nonetheless, NEA filed the

7  baseless application solely to interfere with Zeleny's protests and to temporarily delay the

8  protests.

9        72.    The court summarily denied the TRO application.

10        73.    During this litigation, NEA engaged in other sham litigation conduct

11  designed to entangle Zeleny in frivolous and costly litigation to directly interfere with his

12  protests, and to distract and intimidate him. Among other things, NEA withheld and refused to

13  disclose evidence, necessitating repeated motions to compel for basic discovery and depositions.

14        74.    In late 2011, after the lawsuit had been pending for more than a year,

15  Zeleny was forced to settle as he could not bear the ongoing expenses of defending himself.

16        75.    In early 2012, in response to resumed protests, with the City's active

17  encouragement and assistance, NEA worked with the City to prepare an application for an

18  Emergency Protective Order ("EPO") against Zeleny. This was apparently the City's idea, but

19  the City required assistance from NEA to act as the complaining party.

20        76.    The contemplated EPO was also objectively baseless. Under California

21  law, an EPO is available at the request of law enforcement to protect against domestic violence,

22  child abuse, abduction, or elder abuse. No grounds existed for the issuance of an EPO.

23  Nonetheless, as with the sham TRO applications, an EPO requires a turn over of all firearms

24  until the merits hearing. On information and belief, the purpose of preparing the EPO was to

25  directly interfere with Zeleny's protests without any hope of securing merits relief.

26        77.    As described in more detail below, rather than file the EPO application, the

27  City, pursuant to its conspiracy with NEA, had Zeleny falsely prosecuted for carrying a

28  concealed firearm.

SECOND AMENDED COMPLAINT

**Harassing Police Conduct and Surveillance**

78.    In internal writings, including in police reports and in internal memo of May 2012, the City confirmed that Zeleny was not in violation of any laws in connection with his protected protesting activity.

79.    Nonetheless, NEA and the City continued to harass Zeleny pursuant to the conspiracy in order to dissuade him from protesting and to disrupt his protests. None of this conduct was intended as legitimate law-enforcement activity, designed to result in arrest or prosecution. All of it was designed to directly interfere with the protests and to dissuade Zeleny from protesting.

80.    Pursuant to the conspiracy, NEA took it upon itself—with encouragement from the City—to engage in daily surveillance of Zeleny including in-person and online monitoring. On information and belief, this surveillance was designed, in large part, as an effort to harass and intimidate. NEA's private contractors followed Zeleny and tracked his whereabouts and online activity at all times for a period of years.

81.    NEA, with the encouragement of the City, also retained armed security staff when Zeleny was expected. The City encouraged NEA to have armed security personnel remain on location through the duration of Zeleny's protests.

82.    As part of the conspiracy with the City, NEA would report Zeleny to the police each time Zeleny appeared, regardless of whether Zeleny had engaged in any wrongdoing and although NEA knew that Zeleny had not committed any crimes. City police gave NEA representatives their personal cell phone numbers so that NEA could contact them to address the Zeleny situation without using official channels.

83.    NEA had no expectation that calling the police on Zeleny would result in a lawful arrest or prosecution and well knew that he had not committed any crimes. Internal police records show that Zeleny was not engaged in any criminal activity and was extremely cooperative at all times. NEA reported Zeleny solely to trigger a response by police officers who would then harass and disrupt Zeleny's protests.

SECOND AMENDED COMPLAINT

84.     Much of NEA's reporting to the police was false or, at minimum, highly misleading.  For example, despite Zeleny not being at NEA's headquarters in close to a year, NEA security reported to the City police (as well as the FBI, ATF, and the U.S. DOJ) that Zeleny was an "on-going threat to NEA and its employees."   On information and belief, NEA made other false and misleading reports to law enforcement authorities, solely for the purpose of causing them to harass Zeleny and not to secure any genuine law enforcement action such as arrest or prosecution.  NEA's reporting was routinely based solely on the content of Zeleny's lawful First Amendment activity.

85.     Consistent with the conspiracy, the City engaged in extensive harassing conduct towards Zeleny in violation of its own written policies.  It would uniformly respond to NEA's reports by appearing on site and harassing Zeleny and his supporters.

86.     City police remained on scene at all times when Zeleny was present, despite repeatedly acknowledging that Zeleny was fully cooperative and had not committed any crime.  While present, City police stopped and questioned Zeleny and his supports extensively without any reasonable suspicion of criminal activity.

87.     In violation of written City policy, police questioned Zeleny and his supporters about the content of their protests and their motivations for protesting.

88.     City police would also follow and question Zeleny's supporters extensively about their affiliations with Zeleny and their involvement in his protests.  In one instance, in an effort to dissuade Zeleny's supporters, City police extensively questioned an off-duty Sheriff's Deputy attending the protests about his relationship to Zeleny and his status with the Sheriff's department where he worked.  They followed and stopped other supporters merely to question them about their affiliation with Zeleny and why they were supporting him, using sham "enforcement stops" for this purpose.

89.     Also in violation of written policy, City police followed Zeleny and his supporters in both marked and unmarked cars and using undercover officers.  City police followed Zeleny even after he left the City limits and kept tabs on where he was staying.

SECOND AMENDED COMPLAINT

90.     City police interfered with Zeleny's protests, requiring him to lower the volume of musical performances and to move his signage, even when this was not required by City ordinance or policy.  Doing so was also a violation of the City's written policy.

91.     The City kept extensive surveillance on Zeleny, again in violation of City policy, which prohibits City staff from keeping surveillance on protestors when there is no reasonable suspicion of a crime being committed.  City police were given an express directive to issue "[d]etailed reports regarding any contact with Zeleny."  In addition to generating numerous "informational" reports on Zeleny, Bertini kept his own personal "Zeleny file."

92.     During Zeleny's protests, Bertini unilaterally deemed Zeleny as a "security risk," and used this as a basis to ignore City policy prohibiting the above conduct.

**Frivolous Criminal Prosecution**

93.     In July 2012, pursuant to its conspiracy with NEA, the City frivolously referred Zeleny to the County of San Mateo District Attorney's Office[2] for a sham prosecution for carrying a "concealed" handgun.  This prosecution was also objectively baseless and a sham based on misrepresentations and the suppression of exculpatory evidence required to be disclosed to Zeleny under *Brady v. Maryland*, 373 U.S. 83 (1963).  The City and NEA's aim was, again, to directly interfere with Zeleny's protests rather than to achieve a legitimate outcome through the criminal process.

94.     The City's referral of the criminal case was fraudulent and based on the willful withholding and misrepresentation of evidence.  Initially, the officers who responded to Zeleny's protests on the date in question, June 13, 2012, found no evidence of criminal activity.  Nonetheless, Bertini made the decision to refer Zeleny for prosecution.

95.     The City referred Zeleny for prosecution based on the written report of Officer Jeremy Foy.  Initially, Officer Foy reported his interaction with Zeleny as informational only.  Neither Officer Foy, nor any of the other officers on site, arrested Zeleny, cited him, or suggested that he was committing a crime.

---

[2] The District Attorney's Office is not a City agency, but an agency of San Mateo County.

SECOND AMENDED COMPLAINT

96.     Later, apparently after speaking with Sharon Kaufman and Bertini (participants in the conspiracy), Officer Foy generated a felony policy report against Zeleny, which Bertini used to make the criminal referral, and which the County used to prosecute Zeleny.  In this sham report, Officer Foy asserted that he had observed Zeleny carrying a "concealed" firearm in a belt holster.  According to Officer Foy, the holster was such that he could not determine whether it contained a weapon.  This was the entire basis for the City's referral for prosecution and the County of San Mateo's prosecution.

97.     The City and the County District Attorney's office concealed from Zeleny—in violation of his constitutional rights under *Brady*—and from the trial court, that in a prior report Officer Foy had documented the same firearm in the same holster and reported that he was able to immediately see that the holster contained a firearm.  As a result, the firearm was <u>not</u> "concealed."  Officer Foy made the prior report for informational purposes, concluding that no crime had been committed.  On information and belief, the City and the County intentionally concealed this clearly-exculpatory evidence to support the sham prosecution.

98.     The fraudulent basis for the criminal prosecution, and the wrongful withholding of evidence, was such that it deprived the entire proceeding of its legitimacy.

99.     The City and the County engaged in further sham conduct in connection with the criminal proceeding.  Among other things, the Deputy District Attorney in charge of the case claimed at different stages of the proceeding that Zeleny had violated the law by carrying a "concealed" weapon, and through the same conduct violated the law by "openly" carrying a weapon.  When Zeleny argued that he fell within an exception to the firearms statutes because he was taking part in an entertainment event or video production, the City made retroactive changes to the policies posted on its website for such events, which the County prosecutor then relied upon to argue that Zeleny needed a permit for these activities so could not fall within the exception.

100.     On information and belief, the City and County pursued the sham prosecution at NEA's behest and with its active encouragement and participation.  Despite having no standing to participate in the criminal proceeding, NEA inserted itself into that

- 18 -

SECOND AMENDED COMPLAINT

proceeding, ultimately controlling prosecutorial decisions. In the course of the prosecution, NEA's representatives monitored Zeleny's trial, gave *ex parte* strategic input to both Bertini and the District Attorney's Office, and met frequently with Deputy District Attorney. The Deputy District Attorney regularly referred to NEA as "her client" or "the client," and indicated that she needed NEA's approval before making significant decisions.

101. More than two years the District Attorney filed the frivolous criminal charges, the trial court acquitted Zeleny, holding: "His weapon was properly holstered in the holster which was manufactured for that very weapon." The criminal prosecution had its intended effect, however, of stopping Zeleny's protests for two years under the threat of criminal prosecution.

102. While the criminal prosecution was ongoing, California enacted new restrictions on the "open carry" of firearms, described below. The City immediately seized on these new laws to stop Zeleny from protesting.

**California Adopts "Open Carry" Restrictions for Handguns and Non-Handgun Firearms**

103. Prior to January 1, 2012, it was legal to openly carry an unloaded firearm in public in California. On October 10, 2011, Governor Brown signed a bill that modified the law on openly carrying an unloaded handgun to match the existing restrictions for openly carrying a loaded weapon.

104. California Penal Code section 26350 now prohibits the open carrying of an unloaded handgun, outside of a vehicle, in public, in an incorporated city or city and county.

105. Section 26375 exempts from section 26350, "the open carrying of an unloaded handgun by an authorized participant in . . . a motion picture, television or video production, or entertainment event, when the participant lawfully uses the handgun as part of that production or event."

106. A year later, in 2012, California adopted similar restrictions on open carry of firearms other than handguns. Penal Code section 26400, which became effective on January 1, 2013, makes it a crime for a person to "carry[ ] an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an

- 19 -

1  unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city

2  and county."

3         107.  Section 26405(r) contains a similar exemption for "an authorized

4  participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture,

5  television, or video production or entertainment event, when the participant lawfully uses that

6  firearm as part of that production or event."

7         108.  Section 25510 contains a similar exemption from sanctions under Section

8  25400 for carrying a concealed firearm for "an authorized participant in a motion picture,

9  television, or video production, or an entertainment event, when the participant lawfully uses the

10  firearm as part of that production or event, or while going directly to, or coming directly from,

11  that production or event."

12  **Zeleny's Efforts to Engage in Protected First and Second Amendment Activity**

13         109.  Since the enactment of Penal Code sections 26350 and 26400, Zeleny has

14  attempted to continue his peaceful protests as part of a video production, exercising his rights

15  under sections 25510, 26375, and 26405 to film his protests, and then distributing the videos

16  online.

17         110.  Zeleny's protests are part of a rich history of peaceful, but armed, protests,

18  many drawing inspiration from the Black Panthers.  Protests of this nature are common across

19  the country in states that have not completely banned the open carry of unloaded firearms.  The

20  conspicuous bearing of loaded and unloaded arms in connection with a public or political issue

21  is an effective form of political speech and public demonstration.

22         111.  Zeleny's protests are protected activity under both the First and Second

23  Amendments to the United States Constitution.

24         112.  The First Amendment protects non-verbal forms of communication as well

25  as verbal speech.  Zeleny's protests, which combine pure speech, flyers, signs, posters, video,

26  and the peaceful carrying of unloaded firearms, are constitutionally protected activity.

27         113.  Zeleny is equally entitled to the benefit of sections 25510, 26375, and

28  26405 of the Penal Code as would be a large movie studio or production company. "Liberty of

- 20 -

SECOND AMENDED COMPLAINT

1  the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as

2  much as of the large metropolitan publisher who utilizes the latest photocomposition methods."

3  *Branzburg v. Hayes*, 408 U.S. 665, 704 (1972). While Zeleny was not engaged in the

4  production of feature films intended for national and international distribution, he did create his

5  video content for the purpose of publishing it on the Internet, in connection with a matter of

6  significant public interest.

7         114.    Zeleny's right to openly carry unloaded firearms is also protected by the

8  Second Amendment. The right to bear arms enshrined in the Second Amendment includes the

9  right to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket for the purpose

10  of being armed and ready . . . in case of conflict with another person." *District of Columbia v.*

11  *Heller*, 554 U.S. 570, 584 (2008). The motivating principle of the Second Amendment is self-

12  defense. *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

13         115.    The First and Second Amendment are made applicable to municipalities

14  pursuant to the Due Process Clause of the Fourteenth Amendment.

15         116.    The Defendants, however, acting under color of law and in their official

16  capacities, have either suppressed or threatened to suppress Plaintiff's lawful exercise of his

17  Constitutional rights pursuant to official policies, customs, or practices. The Defendants

18  interpret certain California statutes in such a way that Plaintiff's protests are completely

19  foreclosed by California's prohibition on the carriage of exposed firearms.

20  **The City Threatens Further Prosecution in an Effort to Chill Zeleny's Protected Speech**

21         117.    The City, invoking the power of the State of California, continues to

22  threaten Zeleny with further prosecution if he resumes his protests. The City police have

23  candidly confirmed that their threatened prosecution is based in part on the content of Zeleny's

24  message, which they find to be offensive.

25         118.    On March 15, 2013, following a meeting with NEA, the City noted that

26  open carry is "now illegal," referring to the Penal Code sections discussed above, such that

27  Zeleny would no longer be allowed to carry guns in his protests.

28

SECOND AMENDED COMPLAINT

119.     In order to ensure that Zeleny cannot rely on the express exceptions to the "open carry" ban, acting at the behest of NEA, the City has developed an artificial and defective interpretation of the statutes for the sole purpose of interfering with Zeleny's protests. According to the City, in order to fall within the exceptions, Zeleny must have City approval through an opaque permitting process, described in more detail below, in order to carry weapons as part of his protests.

120.     Between June 2015 and the present, Zeleny has attempted to exercise his rights under sections 25510, 26375, and 26405 by engaging in videotaped protests while carrying unloaded firearms, including handguns and rifles.

121.     Contrary to the plain language of the Penal Code, however, the City has interpreted it to require authorization from the City both for the video production itself, and for the carrying of unloaded firearms as part of that production.

122.     Shortly after the adoption of section 26405, the City adopted a municipal policy, which purportedly requires a Special Event Permit for Zeleny's protests.

123.     The City informed Zeleny that if he engages in his protests without a permit under its Special Event Permit policy and/or a film permit from the City, he will be prosecuted for violation of California's open and/or concealed carry laws, including California Penal Code §§ 25400, 26400, and 26350.

124.     In an effort to comply with the City's requirements, between 2015 and present, Zeleny has repeatedly applied to the City for entertainment and/or film permits accommodating his videotaped, armed protests.  Despite his offers to accommodate all reasonable time, place, and manner restrictions on his proposed events, the City has denied all of Zeleny's applications without explanation.  It has expressly declined to formulate conditions for approval or to provide Zeleny with any lawful time, place, or manner restrictions that he could satisfy in order to secure permits.

125.     Zeleny has repeatedly requested that the City identify the conditions or criteria Zeleny must satisfy to receive a permit, and the City has failed and refused to do so.

SECOND AMENDED COMPLAINT

126.   During an appeal of one of Zeleny's requests for a permit, Bertini testified that the City had denied Zeleny's requests, among other reasons, because they found the content of his protests offensive and "obscene as to minors."  Evidence uncovered in discovery demonstrates that the City has attempted (largely unsuccessfully) to use obscenity and similar content-based statutes to stop Zeleny's protests since at least 2010.

127.   Plaintiff is informed and believes, and on that basis alleges, that the City has continually denied and refused to process Zeleny's requests for permits because it disagrees with the substance of his message, and does not believe that his statement about Min Zhu's conduct or WebEx's and NEA's tacit approval of that conduct are true.

128.   The requirement that Zeleny obtain a permit, and refusal to approve Zeleny's permits or processes them in the ordinary course, is an unlawful, content-based restriction on Zeleny's speech protected by the First Amendment.  Plaintiff is informed and believes, and on that basis alleges, that the content-based refusal to approve Zeleny's requests for permits was undertaken pursuant to an official policy, custom, or practice of the City.

129.   In August 2016, Zeleny met with Menlo Park City Manager Alex McIntyre and Police Commander David Bertini in seeking a permit.  At that time, Commander Bertini took issue with a piece of non-obscene artwork that Zeleny was proposing to display as part of his protests. An accurate depiction of the artwork is attached hereto as **Exhibit A**.

130.   Commander Bertini threatened that if Zeleny displayed the artwork, he would be arrested for violation of California Penal Code, section 313.1(a), which prohibits the distribution of harmful content to minors.  Commander Bertini also threatened Zeleny with criminal sanctions for carrying firearms in the course of his videotaped protests.

131.   Zeleny is informed and believes, and on that basis alleges, that the foregoing conduct of the City and City officials was pursuant to an official policy, custom, or practice of the City.

132.   Zeleny continues to exercise his right to free speech under the Constitution, in connection with this issue of public interest.  Zeleny tried many different ways of accommodating the City and NEA, but their demands kept escalating unreasonably, from

- 23 -

SECOND AMENDED COMPLAINT

objections to the volume and nature of unamplified musical performances, to demands to relocate the protests outside of the Rosewood complex that houses NEA. Ultimately, what the process revealed was content-based discrimination.

**The City and NEA Entangle Zeleny in a Sham Permitting Process**

133. Evidence uncovered during discovery demonstrates that the City and Bertini, with the assistance and encouragement of NEA, developed a strategy to apply sham permitting procedures to Zeleny's permit applications, with the specific purpose of depriving him of access to the ordinary administrative process. The purpose of this conduct was not to reach a legitimate outcome on Zeleny's permit applications, but to complicate, frustrate, and perpetually delay the process to interfere with Zeleny's ability to protest. To date, Zeleny's most recent permit application remains in limbo and the City refuses to process it even now.

**The Published Permitting Process**

134. The City publishes on its website a series of procedures governing the process for seeking Special Events Permits within the City.

135. The process is designed to be an interactive process between the citizen and the City to develop a permit application that will be approved by the City. As specified by published City policy, the process is supposed to involve the following steps:

a) The City Community Services Director communicates with the applicant to secure a permit application, and then screens the initial application for completeness. If the application is incomplete, within 48 hours, the Community Services Director will communicate with the applicant regarding any deficiencies.

b) The application is then forwarded to six internal City departments for a collaborative review. Bertini is not ordinarily involved in this process. Within 10 days, the internal staff review and either conditionally approve or disapprove the decision.

c) If internal staff need more information, the Community Services Director sets up an in-person meeting with the applicant to address this information with the goal of securing a complete application.

- 24 -

d)      Once the information is provided, the City will then send Conditions of Approval or Denial to the applicant.  Once these items are completed, the permit will be conditionally approved subject to public notice.

e)      If the application is denied, it is then subject to a two-stage appeal process, first with the City Manager, and then with the City Council.  At both stages of appeal, both the applicant and the City are allowed to present evidence and argument, and examine and cross-examine witnesses, all in a public hearing on the record.  Final denials are subject to review in court pursuant to California Code of Civil Procedure § 1094.8.

136.    In the ordinary course, special event permits are generally given conditional approval within a matter of days or weeks based on a very basic description of the date, time, and location of the event and the expected activities and setup.

137.    The City has a separate permitting process for film permits.  A different City department handles film permits.  In practice, they are issued based on a cursory application, again with minimal information required.  The City approves most film permits within a day or a few days of a request.

**The City and NEA Conspire to Derail Zeleny's Permit Applications**

138.    On or about July 10, 2015, in an effort to comply with the City's interpretation of the firearms statutes, Zeleny submitted a Special Events Permit application.  He stated that he planned to start on October 1, 2015.  Without telling Zeleny, the City (at Bertini's direction) then circumvented the permit process entirely, and subjected Zeleny's permit to *ad hoc* processes that have never applied to any application before or after.

139.    As part of the ongoing conspiracy, Bertini took action to stymie and deprive Zeleny of a valid process.  Bertini intercepted and unilaterally processed and denied Zeleny's application himself on content-based grounds, without ever submitting it through the ordinary process of approval.  Bertini did not allow the Community Services Director nor the six-department group to review Zeleny's permit application.[3]

---

[3] NEA was never directly involved in the permitting process.  It made no appearance at any of the hearings. It did not submit any materials.

SECOND AMENDED COMPLAINT

140.    The City did not immediately respond to Zeleny and failed to respond to or process his application on its published timeline.  Instead, according to internal City communications, Bertini set up a meeting with NEA "so we can coordinate our response."

141.    Bertini stayed in regular contact with NEA throughout the permitting process, including this in-person meeting, which took place on September 2, 2015, as well as phone calls and emails with David Tresmontan, NEA's security officer.  Throughout the process, Bertini previewed the City's proposed course of action to NEA before any official decision.

142.    Pursuant to this conspiracy, with NEA's encouragement, Bertini developed a strategy to continually delay and frustrate Zeleny's permit applications rather than allowing them to be resolved through the ordinary process.  This conduct was designed not to achieve a legitimate outcome, but to use the process itself to stifle Zeleny's ability to protest by drawing him into an endless, Kafkaesque process that did not follow established City policies or procedures.  Neither the City nor NEA have a reasonable, good faith belief that the City can properly deny Zeleny's permits on content-based grounds, and the City continues to acknowledge that it cannot legitimately stop Zeleny from protesting.

**Bertini Unilaterally Processes and Denies the Application, Depriving Zeleny of Access to the Ordinary Administrative Process.**

143.    Rather than submit the application through the ordinary process, Bertini, in consultation with the City Attorney, unilaterally processed Zeleny's application himself.  On information and belief, this has never before occurred in the permitting program.  City staff referred to Zeleny's permit application as "the one PD [*i.e.*, the Police Department] handled[.]"

144.    Bertini applied no objective criteria to the permit application.

145.    The City never engaged in an interactive process with Zeleny.  It never attempted to set up an in-person meeting as its policy requires to "complete" the application.

146.    Instead, the denial of Zeleny's application was preordained due to the ongoing conspiracy and efforts to stifle Zeleny's protests.

147.    On July 21, 2015, Bertini emailed NEA and others about Zeleny's permit application.  The City had not responded or provided feedback to Zeleny at that time.  He

- 26 -

SECOND AMENDED COMPLAINT

advised that the City had already decided to deny the application, but would still request more information from Zeleny before notifying him of the denial:

> Although we intend to deny this application on several grounds (predominately that this is not a 'special event' as defined by the City), we are in the process of requesting more information from him on the exact location he was intending as it was not clear on his application. Once we have gone through the formal information gathering process, we will notify him of our decision on his application.

The same day, Bertini emailed NEA security officer David Tesmontan to ask if NEA was still conducting surveillance on Zeleny, apparently to obtain information to justify the pre-determined denial of the permit.

148. Although Bertini was effectively processing the permit application himself, the City referred Zeleny to the "Special Events Permit Committee." In one of its denial letters, the City stated that the decision was made by this committee. ***There is no such committee and never has been***. Bertini admitted at his deposition that the City has not had a special events committee at any point since the program has been in effect.

### The City Frustrates Zeleny's Application with Needless Demands for Information Having Already Decided to Deny the Permit.

149. Consistent with this plan, although the City had already decided to deny Zeleny's application, it continued to pepper Zeleny with requests for more information, to "complete" the application. Bertini confirmed that the City had firmly decided to deny the application, but would not notify Zeleny until "after completing the appropriate due diligence" – *i.e.*, requesting extensive, unnecessary information.

150. On July 24, 2015, the City Attorney emailed Zeleny demanding extensive information supposedly needed to "process" the application. The City Attorney claimed that the City could not "further process [the] application" without this information, although Bertini had already decided to deny it. He also claimed that there was no urgency to Zeleny's application because the event was not contemplated until late September or October.

151. The City demanded far more extensive information from Zeleny that it has ever required from any other applicant. The City did not need this information to complete a

SECOND AMENDED COMPLAINT

1  decision. Instead, on information and belief, the City simply made these demands on Zeleny to

2  make the permitting process more difficult and to use the supposed lack of information, or an

3  information Zeleny provided, as a pretext to deny or refuse to process the application.

4       152.   The City engaged in the same conduct with respect to Zeleny's later film

5  permit application, as discussed below.

6  **<u>Bertini Generates Pretextual Reasons for Denying the Permit Application</u>**

7       153.   Bertini made up pretextual and circular reasons for denying the permit

8  application, which were unsupported by City policy, when in fact the denial was purely content

9  based. At each stage of the permitting process, the City has offered a changing series of

10  pretextual grounds for denying Zeleny's permit application to conceal content-based restrictions.

11       154.   The City has no objective criteria that it applies to permit applications

12  either in terms of completeness or the ultimate permitting decision.

13       155.   On September 21, 2015 – *i.e.*, nine days before his protest was set to start –

14  the City sent Zeleny its official denial of his permit application. The City gave two primary

15  reasons for the initial denial of Zeleny's permit application: (1) the application being

16  "incomplete"; and (2) the application not meeting the criteria for a "special event."

17       156.   Both of these were pretextual. The application was not incomplete.

18  Zeleny had provided far more information than was required to process such an application. As

19  Bertini's communications make clear, no matter what information Zeleny submitted, his permit

20  was going to be denied.

21       157.   Similarly, the City cannot specify any objective criteria for what

22  constitutes a "special event as defined by the City." Instead, as Bertini has since admitted,

23  Zeleny's activity qualifies as a special event under at least three categories in the City's

24  published guidelines:

25       Q.     Is the City -- is the definition in this FAQ of what qualifies as a special
               event the City's definition of a special event?

26

27       A.     Yes.

28       Q.     So under this -- at least under the published FAQ, Mr. Zeleny's event
               would qualify as a special event on at least three criteria; correct?

- 28 -

SECOND AMENDED COMPLAINT

A.    Yes.

158.    After the initial denial, the City gave a series of shifting reasons for the denial. Later, the City refused to process Zeleny's application claiming that Zeleny does not need a permit to engage in protected First Amendment protests[4] and because "open carry" is unlawful under the new firearms statutes. These assertions were equally pretextual and circular, designed to prevent Zeleny's application from being processed.

159.    The City has admitted that unless Zeleny has a permit, he will be arrested for carrying firearms in his protests. It has acknowledged that it knows he is seeking approval so that he can carry firearms in those protests. If Zeleny has a permit, the City acknowledges that he can carry firearms as part of the protest without facing a risk of arrest.

160.    Bertini finally admitted at an August 11, 2016 hearing that the reasons for denial of Zeleny's permits include the content of Zeleny's protests. During that hearing, Bertini threatened Zeleny with prosecution under Penal Code § 313(1)(a), obscenity as to minors, due to the content of his proposed presentation, including the use of suggestive cartoon images. Bertini admitted that the alleged "obscenity" of Zeleny's protest was one of the grounds for denial of Zeleny's permits, although this ground has never been documented in the proceedings.

**Bertini Intentionally Delays Zeleny's Appeals**

161.    Zeleny appealed the initial denial of his permit application in April 2016. The City affirmed the initial denial.

162.    Zeleny promptly appealed in May 2016.

163.    In June 2016, the City sent Zeleny a letter denying his appeal, reiterating Bertini's pretextual grounds. In this letter the City claimed that "[d]etermination of the approval or denial of any application is at the discretion of the Special Event Permit Committee," although the City did not have such a committee.

164.    Zeleny again appealed and requested a hearing before the City Manager. The hearing was eventually set for August 11, 2016. In advance of the hearing, Zeleny's

---

[4] The City has continued to maintain this frivolous position throughout this lawsuit as well.

SECOND AMENDED COMPLAINT

1   counsel asked basic procedural questions of the attorney the City had retained to oversee and

2   conduct the hearing as well as the City Attorney. They refused to respond or explain the

3   procedures.

4          165.    At the hearing, Zeleny presented a valid, California Entertainment Firearm

5   Permit issued by the California Department of Justice.

6          166.    The City nonetheless upheld the decision on appeal in September 2016. It

7   again asserted the same pretextual grounds and new ones, such as traffic issues and distraction

8   of passersby. The City admitted at the hearing that it has no objective basis for establishing the

9   grounds used to deny the permit application.

10          167.    Shortly after this denial, Bertini then undertook to have Zeleny's

11   Entertainment Firearms Permit revoked by the California Department of Justice. When the

12   Department of Justice would not revoke the permit, the City delayed Zeleny's further appeal

13   until the permit expired.

14          168.    Zeleny timely appealed the denial to the City Council on September 16,

15   2016. His appeal was originally scheduled for November 15, 2016.

16          169.    On October 12, 2016 the City emailed Zeleny notifying him that his

17   hearing would happen on October 26 – *i.e.*, in two weeks. Zeleny's counsel promptly notified

18   the City that Zeleny had undergone emergency surgery, and asked to postpone to mid-

19   November. Rather than simply revert to the original schedule, Bertini and other City staff

20   decided not to hold a hearing until the next year, 2017.

21          170.    Eventually the City unilaterally rescheduled the hearing for April 4, 2017.

22   When Zeleny asked to advance the hearing due to his wife being due to give birth, the City

23   refused. It eventually rescheduled the hearing for August 29, 2017.

24          171.    In the interim, Bertini repeatedly contacted the California Department of

25   Justice to seek revocation of Zeleny's firearms permit. In a June 1, 2017 email to the

26   Department of Justice as part of these efforts, Bertini noted: "We have been postponing

27   Zeleny's appeal." He urged the Department of Justice to revoke the permit immediately.

28

SECOND AMENDED COMPLAINT

172. When the Department of Justice would not do so, the City successfully postponed Zeleny's hearing until August 29, 2017, after his permit expired.

**The City Council Denies the Appeal Without Explanation**

173. The results of the August 29, 2017 appeal hearing were determined in advance. Before the hearing took place, the City had already scheduled a closed-session meeting with counsel to address potential civil litigation by Zeleny.

174. Bertini appeared on behalf of City staff and argued to uphold the denial.

175. In September 2017, the City issued its final decision, simply incorporating the prior pretextual justifications.

**Bertini Intercepts Zeleny's Film Permit Application and Unilaterally Processes that Application as Well**

176. On September 7, 2017, Zeleny requested that the City reconsider the denial of his permit and treat his application as one for a film permit under the separate process the City maintains for film permits. Like his special events permit application, the City did not submit his film application through the ordinary process, did not apply any objective criteria, and simply delayed and refused to process that application.

177. Pursuant to the City's ongoing course of conduct and its conspiracy with NEA, Bertini also intercepted Zeleny's film permit application. Bertini is not involved in the City's film permitting process. Nonetheless, after learning of Zeleny's request, Bertini immediately contacted and met with staff in the City department that processes film permits to ensure a denial of the application. On information and belief, pursuant to this meeting, Bertini dictated the film permit process as well to ensure that Zeleny would not get a permit.

178. On September 27, 2017, after Bertini had met with staff, the City Attorney then emailed Zeleny directing him to submit his film application to this same staff.

179. Once again, the City persistently delayed the application and refused to process it.

180. After a month of delay, City staff demanded extraordinary detail about Zeleny's proposed filming, which it did not need to process the application. They requested far

- 31 -

SECOND AMENDED COMPLAINT

1  more detailed information than had been requested for other applications. On information and

2  belief, City staff did this at the direction of Bertini and the City Attorney's office. Three days

3  later, Zeleny provided the requested details.

4      181. On November 22, 2017, the City Attorney then emailed Zeleny directly,

5  demanding even more unnecessary, extremely-detailed information about the proposed filming,

6  including, among other things: exactly where Zeleny planned to place various items as part of

7  his film, the names of participants and crew, the expected brightness of the display Zeleny

8  intended to use, the types of guns, serial numbers, who will be supplying them, and other minute

9  details.

10      182. None of this information is required in the ordinary process. On

11  information and belief, it was demanded solely to delay the process and use Zeleny's declining

12  to provide the unnecessary information as a basis to refuse to process his application.

13      183. Once again, the City refused to address any time, place, or manner criteria

14  or to tell Zeleny the criteria for submitting a satisfactory application. It simply refused to

15  process his application until he complied with the changing series of information demands.

16      184. The City also delayed the process extensively. Although most permit

17  applications are processed within days, the City continued to dither and demand unnecessary

18  details well into December 2017. On information and belief, the City intentionally delayed its

19  processing of Zeleny's application in order to prevent him from protesting.

20      185. The City has continued to this day to refuse to process Zeleny's permit as

21  "incomplete." According to the City, Zeleny's permit application still remains "pending" and

22  cannot be processed.

23      186. Once again, at Bertini's instance, the City has taken Zeleny's film permit

24  out of the ordinary administrative process and placed it in permanent limbo.

25                    **DECLARATORY RELIEF**

26      187. An actual, substantial, justiciable, and continuing controversy exists

27  between Plaintiff and Defendants.

28

SECOND AMENDED COMPLAINT

188.    Plaintiff seeks to exercise his First and Second Amendment rights by engaging in peaceful protests while carrying unloaded firearms. Due to the statutes, municipal requirements, and official acts identified herein, Zeleny has been prohibited from exercising those rights, and the exercise of his First and Second Amendment rights has been chilled due to the ongoing threat of criminal prosecution.

189.    A declaration of rights is necessary and proper to clarify Plaintiff's rights to engage in constitutionally protected activity and to govern the parties' conduct.

190.    California Penal Code sections 26350 and 26400, on their face, prohibit Zeleny from exercising his right to carry firearms in peaceful protest. Zeleny seeks a declaration that these statutes are unconstitutional on their face, as applied to Zeleny's display of unloaded firearms as a means of protest.

191.    California Penal Code sections 25510, 26375, and 26405 allow "authorized participants" in video productions to carry unloaded firearms in connection with such productions. On their face, these statutes permit Zeleny to carry unloaded firearms in filmed protests as part of a video production. The City has taken the position, however, that City approval is required both of the video production itself and of the "authorized participants" allowed to carry firearms.

192.    The City has required the issuance of film permits to Zeleny as a condition of recognizing his statutory and Constitutional right to lawfully carry unloaded firearms as part of his videographed public entertainment events protesting ongoing municipal and corporate sponsorship of an incestuous child rapist. Zeleny contends that he does not need the City's permission or approval to do so, and that the City has refused its permission and approval as an unlawful content-based restraint on his right to free speech. A declaration is necessary that the City's policy requiring such approval is unconstitutional, or that the City cannot condition approval on the content of the video production or entertainment event.

193.    The City has prohibited Zeleny from exercising his right to free speech based on the content of his protests. A declaration is necessary that Zeleny's protests and the materials used by him in those protests are not obscene as a matter of law, and do not violate

- 33 -

SECOND AMENDED COMPLAINT

1  California Penal Code section 313.1(a), or in the alternative, that section 313.1(a) is

2  unconstitutional as applied to Zeleny's protesting activities.

## FIRST COUNT

### (Violation of the First Amendment to the United States Constitution)

### (Against Defendants the City of Menlo Park and Bertini)

194.   Plaintiff incorporates by reference all allegations in each of the preceding paragraphs, as if fully set forth herein.

195.   The First Amendments to the United States Constitution is made·applicable to the City through the Due Process Clause of the Fourteenth Amendment.

196.   The City of Menlo Park and Bertini have, under threat of criminal prosecution, prohibited Zeleny from engaging in his lawful protests based on the content of his speech, claiming that they will prosecute Zeleny for obscenity as to minors.

197.   Zeleny's protests are not obscene as to minors under established law.

198.   The City's unwarranted threats to prosecute Zeleny for obscenity as to minors constitute an unlawful prior restraint and violate Zeleny's rights under the First Amendment.

199.   Plaintiff seeks a declaration as follows:

a)   That Plaintiff's conduct and materials used in his protests are not "obscene as to minors" under the California Penal Code, or generally "obscene" under applicable law.

b)   That Plaintiff's protests are protected First Amendment activity.

c)   That Defendants' prohibition on Plaintiff's protests violates Plaintiff's rights under the First Amendment to the United States Constitution.

## SECOND COUNT

### (Violation of the First and Fourteenth Amendments to the United States Constitution)

### (Against Defendants the City of Menlo Park and Bertini)

200.   Plaintiff incorporates by reference all allegations in each of the preceding paragraphs, as if fully set forth herein.

SECOND AMENDED COMPLAINT

201.     The First Amendments to the United States Constitution is made applicable to the City through the Due Process Clause of the Fourteenth Amendment.

202.     The City of Menlo Park has improperly interpreted the exceptions to California's firearms carry bans, California Penal Code §§ 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event, to require the City's approval of the production or event itself, and the use of firearms and "authorized participants" in that production or event.

203.     The City has applied its misinterpretation of California law to give the City unfettered discretion to refuse permits for a motion picture, television or video production, or entertainment event, and participants in said production or event, including based on impermissible factors, such as the content of the production or event.

204.     Plaintiff is informed and believes, and on that basis alleges, that the City has distinguished between commercial motion picture, television or video production, or entertainment events, and independent political productions, film and video productions of protests, and film and video productions involving matters of public concern.

205.     As a result of the City's misinterpretation and misapplication of the California Penal Code, the City has refused to recognize the exceptions to California's firearms carry bans, California Penal Code §§ 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event, as applying to Zeleny.

206.     Plaintiff seeks a declaration as follows:

a)       That California Penal Code §§ 25510, 26375, and 26405 do not require the City's approval of the motion picture, television or video production, or entertainment event involved, or the use of firearms or the authorized participants in that production or event.

b)       That the City's policies and practices regarding permits for motion picture, television or video production, or entertainment event are unconstitutional as applied to Zeleny.

SECOND AMENDED COMPLAINT

## THIRD COUNT

**(Violation of the First and Second Amendments to the United States Constitution)**

**(Against Defendants the City of Menlo Park and Bertini)**

207.   Plaintiff incorporates by reference all allegations in each of the preceding paragraphs, as if fully set forth herein.

208.   The First and Second Amendments to the United States Constitution are made applicable to the City through the Due Process Clause of the Fourteenth Amendment.

209.   Menlo Park's Special Event Permit and Film Permit policies violate the First and Second Amendments to the United States Constitution, either facially, or as applied to Zeleny's peaceful protests.

210.   The City has misinterpreted California Penal Code §§ 25510, 26375, and 26405 as giving the City the right, not only to approve motion picture, television or video productions, or entertainment events within City limits pursuant to customary permitting, but also to approve the individual participants in those productions or events who may lawfully use unloaded firearms.  As a result, the City has asserted that it has the ability, on threat of criminal prosecution, to prohibit the lawful use of firearms in video productions as a result of non-compliance with City rules relating to motion picture, television or video production, or entertainment event permits.

211.   Pursuant to its unlawful construction of §§ 25510, 26375, and 26405, the City has adopted a municipal policy that gives it unfettered discretion to prohibit protected First Amendment and Second Amendment activity, including on the grounds that the City does not approve of the content or message conveyed by that activity.

212.   The City's Special Event Permit and Film Permit policies violate the First and Second Amendments of the United States Constitution on their face in that they allow the City to wholly prohibit the exercise of rights to free speech and to bear arms, or to condition the exercise of those rights on improper factors.

213.   Plaintiff is informed and believes, and on that basis alleges, that the City has imposed no definite standards on its Special Event Permit and Film Permit decisions, nor

1  any limitation on the time period within which such permits must be approved, thus arrogating

2  unbridled discretion on behalf of its permitting officials in violation of the First Amendment.

3      214.    The City's Special Event Permit and Film Permit policies are void as

4  unconstitutionally vague, in that the prohibitive terms are not clearly defined such that a person

5  or ordinary intelligence can readily identify the applicable standard for inclusion and exclusion.

6  The requirements impose no restrictions on the discretion of City officials to deny permits

7  arbitrarily, capriciously, or based on unlawful factors, such as the content of protected speech.

8      215.    In the alternative, the City's Special Event Permit and Film Permit policies

9  violate the First and Second Amendments as applied to Zeleny, because the City has enforced

10  their provisions to bar Zeleny's peaceful film and video productions and entertainment events,

11  which comply with California state law, due to the content of his productions and events.  This

12  amounts to an unlawful, content-based prior restraint on Zeleny's protected speech activity.

13      216.    The City has also applied its Special Event Permit and Film Permit

14  requirements in such a way that it amounts to an outright prohibition against Zeleny bearing

15  arms within City limits.

16      217.    Plaintiff seeks a declaration as follows:

17      a)    That Penal Code §§ 25510, 26375, and 26405 do not require the

18  approval by a municipality in order for a person to be an "authorized participant" in a motion

19  picture, television or video production, or entertainment event, exempted from California's

20  prohibition on carrying unloaded firearms.

21      b)    That the City's Special Event Permit and Film Permit requirements

22  are unconstitutional under the First and Second Amendments to the United States Constitution

23  on its face, as improper restrictions of the rights to free speech and to bear arms.

24      c)    In the alternative, that the City's Special Event Permit and Film

25  Permit requirements, as applied to bar Zeleny's peaceful entertainment events and film

26  productions, amounts to an unlawful prior restraint on Zeleny's First Amendment right to free

27  speech, and an unlawful restriction on his Second Amendment right to bear arms.

28

## FOURTH COUNT

### (Violation of 42 U.S.C. § 1983)

### (Against Defendants the City of Menlo Park and Bertini)

218.    Plaintiff incorporates by reference all allegations in each of the preceding paragraphs, as if fully set forth herein.

219.    The City, through Bertini and other employees and agents, has violated Zeleny's constitutional rights under the First, Second, and Fourteenth Amendments to the United States Constitution, under color of state law, pursuant to official policies, customs, and practices.

220.    The City has imposed unlawful prior restraints on Zeleny's protected speech activity by requiring him to unnecessarily seek permits to engage in constitutionally protected activity, and by refusing to grant any such permits based on the content of Zeleny's speech. Forbidding Plaintiff to exercise his right to free speech does not bear any relationship to protecting the public health, safety, or welfare.

221.    The City and Bertini have violated Zeleny's rights to engage in protected speech by threatening him with criminal prosecution for engaging in protected activity, including threatening criminal prosecution based on the content of Zeleny's speech and his peaceful use of unloaded firearms as part of that speech.

222.    The City and Bertini have violated Zeleny's right to bear arms by threatening him with criminal prosecution for exercising his Second Amendment right to peacefully bear unloaded firearms, in compliance with state law, and through enforcement of unconstitutional laws.

223.    Defendants' true purpose was and is to silence the viewpoint expressed by Zeleny's speech and his mode of expression. Consequently, Defendants true purpose was and is to silence disfavored viewpoints in violation of the Free Speech Clause of the First Amendment.

224.    As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment and the Second Amendment, Plaintiff has suffered irreparable harm, including the loss of his constitutional rights, entitling him to declaratory and

- 38 -

SECOND AMENDED COMPLAINT

1  injunctive relief, and the reasonable costs of this lawsuit, including his reasonable attorneys'

2  fees.

3                                  **FIFTH COUNT**

4          **(Violation of the Fourteenth Amendment to the United States Constitution)**

5                           **(Against Defendant Becerra)**

6          225.    Plaintiff incorporates by reference all allegations in each of the preceding

7  paragraphs, as if fully set forth herein.

8          226.    The government bears the burden of justifying restrictions on the exercise

9  of fundamental rights by a particular class or classes of individuals.

10         227.    All law-abiding, competent adults are similarly situated in that they are

11  equally entitled to exercise the constitutional right to publicly bear arms in furtherance of their

12  right to free speech under the United States and California Constitution in connection with a

13  public issue or an issue of public interest, whether as an authorized participant in an

14  entertainment event or motion picture, television, or video production, or pursuant to an

15  entertainment event permit or motion picture, television, or video production permit, or

16  otherwise.

17         228.    Because California's comprehensive firearms carry restrictions bar law-

18  abiding California residents from publicly carrying a firearm in any manner in furtherance of

19  their right to free speech under the United States and California Constitution in connection with

20  a public issue or an issue of public interest, while allowing other law-abiding citizens to carry a

21  firearm for motion picture, television or video productions, or entertainment events, Defendants

22  have created a classification of persons, including Plaintiff, who are treated unequally through

23  the denial of their First and Second Amendment rights to publicly bear arms for expressive

24  purposes.

25         229.    As the proximate result of the Defendants' procedures and policies,

26  conducted under color of state law, Plaintiff has been deprived of his rights pursuant to the Equal

27  Protection Clause of the Fourteenth Amendment to the United States Constitution.

28

## SIXTH COUNT

### (Conspiracy to Violate Civil Rights under 42 U.S.C. § 1983)

### (Against Defendant NEA)

230. Plaintiff repeats and re-alleges each of the foregoing allegations as though fully set forth herein.

231. Plaintiff is informed and believes, and thereon alleges, that in or about 2009, NEA entered into an agreement with the City to discourage, restrict, stifle, and ultimately halt Zeleny's exercise of his First Amendment right to protest and his Second Amendment right to bear arms. The agreement was to use whatever means were available to defer, disrupt, and interfere with Zeleny's protesting activity. These means included intimidating and harassing daily surveillance and monitoring, sham litigation, baseless, false and frivolous police reports, police harassment and intimidation, fraudulent criminal proceedings, and deprivation of Zeleny's access to the administrative permitting process, as alleged above.

232. This conspiracy was developed through a series of meetings and other communications between representatives of NEA, including its security staff, and representatives of the City, including, among others, Sharon Kauffman, and then-Commander Bertini.

233. During these meetings and communications, the City agreed to use its authority under state law to restrict, limit, and ultimately stop Zeleny's protests, and to stop him from lawfully carrying unloaded firearms within the City limits. NEA agreed, either tacitly or explicitly, to assist the City in its efforts to hamper and end Zeleny's protests and lawful carrying of firearms. Internal City documents reflect that as early as 2010, the City was devoted to developing a "firm solution" to end Zeleny's protests of NEA altogether.

234. NEA, the City, and Bertini engaged in overt acts in furtherance of the conspiracy as alleged above.

235. This conspiracy, and the acts of defendants NEA, the City, and Bertini, in furtherance of the conspiracy, injured Zeleny by preventing him from exercising his First and

- 40 -

SECOND AMENDED COMPLAINT

Second Amendment rights as alleged herein, and also violated his Fourteenth Amendment rights, as alleged in more detail above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff sues for relief as set forth below:

A.      Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, binding on all Defendants, that California Penal Code §§ 26400 and 26350 are unconstitutional;

B.      Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, binding on all Defendants, that California Penal Code §§ 25510, 26375, and 26405 do not require municipal approval of "authorized participants" in an entertainment event or film or video production, and that Zeleny is legally permitted to carry unloaded firearms in connection with his entertainment events and/or his film or video productions, without the need for City approval, subject to compliance with other applicable laws;

C.      Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, binding on all Defendants, that Zeleny's peaceful carrying of unloaded firearms in the course of his speech  on matters of public concern or matters of political, social, or other concerns to the community or issues of significant importance to the public as a whole, is constitutionally protected; in the alternative, enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, binding on all Defendants, that Zeleny's peaceful carrying of unloaded firearms in the course of his entertainment events and/or his film or video productions, is constitutionally protected;

D.      Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, binding on the City and Bertini, that Zeleny's speech activity concerning the child rape cover-up by the Zhus and their associates is constitutionally protected and not obscene or "obscene as to minors" within the meaning of the California Penal Code, and that their public display would not violate Penal Code §§ 311.2, 313.1 (a), and 313.4, in virtue of its serious literary, artistic, political, and social value;

E.      Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, that the City of Menlo Park's Special Event Permit requirement is unconstitutional on its face, or in the alternative, as applied to Zeleny's protests;

SECOND AMENDED COMPLAINT

F. Enter an injunction against Defendants prohibiting them from enforcing Penal Code §§ 26400 and 26350 against Zeleny in connection with his peaceful protests, from enforcing the City of Menlo Park's Special Event Permit requirement, and from refusing to grant Zeleny required permits based on the content of his speech activity;

G. Enter a declaratory judgment, pursuant to 28 U.S.C. § 2201, construing California Penal Code §§ 25510, 26405, and 26375 and enter a declaratory judgment stating that these sections exempt from sanctions under California Penal Code §§ 25400, 26400, and 26350 for the carrying of an unloaded handgun and of an unloaded firearm that is not a handgun, *any individual* who acts and/or holds himself out as an authorized participant in, or serves as an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses that firearm as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event. Relevant actions and representations include, without limitation, displaying ornamental signs or multimedia artworks; reciting slogans, speeches, or poetry; playing trumpets, accordions, bagpipes, or other musical instruments; and/or wearing conspicuous costumes, makeup, wigs, clown noses, or other decorative prostheses;

H. Award nominal damages against Defendant NEA and punitive damages in an amount to be proven at trial.

I. Award attorneys fees pursuant to 42 U.S.C. § 1988 and California Code of Civil Procedure § 1021.5, and costs as provided by law; and

J. Award such other and further relief as the Court deems just and proper.

Dated: August 30, 2019

Respectfully submitted,

s/ Damion Robinson
David W. Affeld
Damion D. D. Robinson
Affeld Grivakes LLP

Attorneys for Plaintiff Michael Zeleny

SECOND AMENDED COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all matters so triable.

Dated:  August 30, 2019                    Respectfully submitted,

                                           s/ Damion Robinson
                                           David W. Affeld
                                           Damion D. D. Robinson
                                           Affeld Grivakes LLP

                                           Attorneys for Plaintiff Michael Zeleny

SECOND AMENDED COMPLAINT

# Exhibit A



## **PROOF OF SERVICE**

I hereby certify that on August 30, 2019, I electronically filed the foregoing document using the Court's CM/ECF system. I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

s/ Damion Robinson
Damion Robinson

- 44 -

SECOND AMENDED COMPLAINT

# EXHIBIT 2

1   XAVIER BECERRA
    Attorney General of California
2   ANTHONY R. HAKL
    Supervising Deputy Attorney General
3   NOREEN P. SKELLY
    Deputy Attorney General
4   State Bar No. 186135
      1300 I Street, Suite 125
5     P.O. Box 944255
      Sacramento, CA 94244-2550
6     Telephone: (916) 210-6057
      Fax: (916) 324-8835
7     E-mail: Noreen.Skelly@doj.ca.gov
    *Attorneys for Defendant Attorney General Xavier*
8   *Becerra*

9

            IN THE UNITED STATES DISTRICT COURT
10
           FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                   SAN FRANCISCO DIVISION
12

13

| 14 | **MICHAEL ZELENY, an individual,** | CV 17-7357 JCS |
|---|---|---|
| 15 | Plaintiff, | **DEFENDANT ATTORNEY GENERAL** |
| 16 | **v.** | **XAVIER BECERRA'S ANSWER TO PLAINTIFF MICHAEL ZELENY'S SECOND AMENDED COMPLAINT** |
| 17 | **GAVIN NEWSOM, et al.,** | Judge:    The Honorable Richard G. Seeborg |
| 18 | Defendants. | Action Filed: December 28, 2017 |
| 19 | | Trial Date:  June 8, 2020 |

20

21

22

23

24

25

26

27

28

                                1

Xavier Becerra, in his official capacity as Attorney General of the State of California, hereby responds to Plaintiff Michael Zeleny's Second Amended Complaint as follows:

### **INTRODUCTION**

1.     The allegations contained in paragraph 1 are Plaintiff Zeleny's characterization of his case, to which no answer is required.  To the extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

2.     The allegations contained in paragraph 2 are Plaintiff Zeleny's characterization of his case, to which no answer is required.  To the extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

3.     The allegations contained in paragraph 3 are Plaintiff Zeleny's characterization of his case, to which no answer is required.  To the extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

4.     The allegations contained in paragraph 4 are Plaintiff Zeleny's characterization of his case, to which no answer is required.  To the extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

5.     The allegations contained in paragraph 5 are Plaintiff Zeleny's characterization of his case, to which no answer is required.  To the extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

6.     The allegations contained in paragraph 6 are Plaintiff Zeleny's characterization of his case, to which no answer is required.  To the extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

/ / /

2

1      7.    In response to the allegations contained in paragraph 7 of the Second Amended

2    Complaint, Defendant Becerra admits that Plaintiff Zeleny has asserted claims under 42 U.S.C.

3    § 1983.  Defendant Becerra denies that the California statutes Plaintiff Zeleny alleges were

4    invoked or applied against him are unconstitutional.  Defendant Becerra denies that Plaintiff

5    Zeleny has asserted any claims pursuant to the California Constitution.  As to the remaining

6    allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to

7    the truth of the allegations and, therefore, denies the allegations therein.

8      8.    In response to the allegations contained in paragraph 8 of the Second Amended

9    Complaint, Defendant Becerra denies that Plaintiff Zeleny challenges the facial validity of

10   California statutes restricting the public display of unloaded firearms, specifically California

11   Penal Code sections 26400 and 26350.  As to the remaining allegations, Defendant Becerra lacks

12   knowledge or information sufficient to form a belief as to the truth of the allegations and,

13   therefore, denies the allegations therein.

14                          **JURISDICTION AND VENUE**

15     9.    In response to the allegations contained in paragraph 9 of the Second Amended

16   Complaint, Defendant Becerra admits the content of the First, Second, and Fourteenth

17   Amendments to the United States Constitution and the federal Civil Rights Act, 42 U.S.C.

18   §§ 1983 and 1988.  Defendant Becerra denies that Plaintiff Zeleny is entitled to any relief under

19   the First, Second, and Fourteenth Amendments to the United States Constitution or the federal

20   Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

21     10.   In response to the allegations contained in paragraph 10 of the Second Amended

22   Complaint, Defendant Becerra admits the content of 28 U.S.C. §§ 1331 and 1343.

23     11.   In response to the allegations contained in paragraph 11 of the Second Amended

24   Complaint, Defendant Becerra admits the content of 28 U.S.C. §§ 2201 and 2202.  Defendant

25   Becerra denies Plaintiff Zeleny is entitled to the requested declaratory judgment.

26     12.   In response to the allegations contained in paragraph 12 of the Second Amended

27   Complaint, Defendant Becerra admits the content of 42 U.S.C. § 1983 and Rule 65 of the Federal

28

3

1  Rules of Civil Procedure.  Defendant Becerra denies Plaintiff Zeleny is entitled to the requested

2  injunctive relief.

3      13.    In response to the allegations contained in paragraph 13 of the Second Amended

4  Complaint, Defendant Becerra admits the content of 42 U.S.C. § 1988.  Defendant Becerra denies

5  Plaintiff Zeleny is entitled to an award of attorney's fees and/or costs.

6      14.    In response to the allegations contained in paragraph 14 of the Second Amended

7  Complaint, Defendant Becerra admits the content of 28 U.S.C. § 1367(a) and California Code of

8  Civil Procedure section 1021.5.  Defendant Becerra denies Plaintiff Zeleny has asserted any legal

9  claims under the California Constitution.  Defendant Becerra also denies that Plaintiff Zeleny is

10  entitled to an award of attorney's fees and/or costs.

11      15.    In response to the allegations contained in paragraph 15 of the Second Amended

12  Complaint, Defendant Becerra denies committing any unlawful acts.  Indeed, the Second

13  Amended Complaint lacks any allegations demonstrating any unlawful acts by Defendant

14  Becerra.  As to the remaining allegations, Defendant Becerra lacks knowledge or information

15  sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations

16  therein.

17      16.    In response to the allegations contained in paragraph 16 of the Second Amended

18  Complaint, Defendant Becerra admits the content of 28 U.S.C. § 1391(b).  Defendant Becerra

19  denies engaging in any acts which would give rise to Plaintiff Zeleny's action.  As to the

20  remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

21  belief as to the truth of the allegations and, therefore, denies the allegations therein.

## THE PARTIES

23      17.    The allegations contained in paragraph 17 are Plaintiff's characterization of his case,

24  to which no answer is required.  To the extent they may be deemed allegations of fact, Defendant

25  Becerra lacks knowledge or information sufficient to form a belief as to the truth of the

26  allegations and, therefore, denies the allegations therein.

27  / / /

28  / / /

4

1    18.    In response to the allegations contained in paragraph 18 of the Second Amended

2    Complaint, Defendant Becerra admits he is the Attorney General of the State of California.

3    Defendant Becerra admits that he is a resident of California, and a citizen of the United States.

4    19.    In response to the allegations contained in paragraph 19 of the Second Amended

5    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

6    truth of the allegations and, therefore, denies the allegations therein.

7    20.    In response to the allegations contained in paragraph 20 of the Second Amended

8    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

9    truth of the allegations and, therefore, denies the allegations therein.

10    21.    In response to the allegations contained in paragraph 21 of the Second Amended

11    Complaint, Defendant Becerra denies that he engaged in any of the unlawful acts and omissions

12    alleged in the Second Amended Complaint.  Indeed, the Second Amended Complaint lacks any

13    allegations demonstrating any unlawful acts by Defendant Becerra.  As to the remaining

14    allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to

15    the truth of the allegations and, therefore, denies the allegations therein.

16    22.    In response to the allegations contained in paragraph 22 of the Second Amended

17    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

18    truth of the allegations and, therefore, denies the allegations therein.

19    23.    In response to the allegations contained in paragraph 23 of the Second Amended

20    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

21    truth of the allegations and, therefore, denies the allegations therein.

22                                   **FACTS**

23    24.    In response to the allegations contained in paragraph 24 of the Second Amended

24    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

25    truth of the allegations and, therefore, denies the allegations therein.

26    25.    In response to the allegations contained in paragraph 25 of the Second Amended

27    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

28    truth of the allegations and, therefore, denies the allegations therein.

5

26.     In response to the allegations contained in paragraph 26 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

27.     In response to the allegations contained in paragraph 27 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

28.     In response to the allegations contained in paragraph 28 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

29.     In response to the allegations contained in paragraph 29 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

30.     In response to the allegations contained in paragraph 30 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

31.     In response to the allegations contained in paragraph 31 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

32.     In response to the allegations contained in paragraph 32 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

33.     In response to the allegations contained in paragraph 33 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

34.     In response to the allegations contained in paragraph 34 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

/ / /

35.     In response to the allegations contained in paragraph 35 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

36.     In response to the allegations contained in paragraph 36 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

37.     In response to the allegations contained in paragraph 37 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

38.     In response to the allegations contained in paragraph 38 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

39.     In response to the allegations contained in paragraph 39 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

40.     In response to the allegations contained in paragraph 40 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

41.     In response to the allegations contained in paragraph 41 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

42.     In response to the allegations contained in paragraph 42 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

43.     In response to the allegations contained in paragraph 43 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

/ / /

7

44.    In response to the allegations contained in paragraph 44 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

45.    In response to the allegations contained in paragraph 45 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

46.    In response to the allegations contained in paragraph 46 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

47.    In response to the allegations contained in paragraph 47 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

48.    In response to the allegations contained in paragraph 48 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

49.    In response to the allegations contained in paragraph 49 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

50.    In response to the allegations contained in paragraph 50 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

51.    In response to the allegations contained in paragraph 51 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

52.    In response to the allegations contained in paragraph 52 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

/ / /

Defendant Attorney General Xavier Becerra's Answer to Second Amended Complaint  (CV 17-7357 JCS)

53.     In response to the allegations contained in paragraph 53 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

54.     In response to the allegations contained in paragraph 54 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

55.     In response to the allegations contained in paragraph 55 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

56.     In response to the allegations contained in paragraph 56 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

57.     In response to the allegations contained in paragraph 57 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

58.     In response to the allegations contained in paragraph 58 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

59.     In response to the allegations contained in paragraph 59 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

60.     In response to the allegations contained in paragraph 60 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

61.     In response to the allegations contained in paragraph 61 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

/ / /

9

62.     In response to the allegations contained in paragraph 62 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

63.     In response to the allegations contained in paragraph 63 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

64.     In response to the allegations contained in paragraph 64 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

65.     In response to the allegations contained in paragraph 65 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

66.     In response to the allegations contained in paragraph 66 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

67.     In response to the allegations contained in paragraph 67 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

68.     In response to the allegations contained in paragraph 68 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

69.     In response to the allegations contained in paragraph 69 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

70.     In response to the allegations contained in paragraph 70 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

/ / /

71.     In response to the allegations contained in paragraph 71 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

72.     In response to the allegations contained in paragraph 72 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

73.     In response to the allegations contained in paragraph 73 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

74.     In response to the allegations contained in paragraph 74 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

75.     In response to the allegations contained in paragraph 75 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

76.     In response to the allegations contained in paragraph 76 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

77.     In response to the allegations contained in paragraph 77 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

78.     In response to the allegations contained in paragraph 78 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

79.     In response to the allegations contained in paragraph 79 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

/ / /

11

1    80.    In response to the allegations contained in paragraph 80 of the Second Amended

2  Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

3  truth of the allegations and, therefore, denies the allegations therein.

4    81.    In response to the allegations contained in paragraph 81 of the Second Amended

5  Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

6  truth of the allegations and, therefore, denies the allegations therein.

7    82.    In response to the allegations contained in paragraph 82 of the Second Amended

8  Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

9  truth of the allegations and, therefore, denies the allegations therein.

10    83.    In response to the allegations contained in paragraph 83 of the Second Amended

11  Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

12  truth of the allegations and, therefore, denies the allegations therein.

13    84.    In response to the allegations contained in paragraph 84 of the Second Amended

14  Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

15  truth of the allegations and, therefore, denies the allegations therein.

16    85.    In response to the allegations contained in paragraph 85 of the Second Amended

17  Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

18  truth of the allegations and, therefore, denies the allegations therein.

19    86.    In response to the allegations contained in paragraph 86 of the Second Amended

20  Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

21  truth of the allegations and, therefore, denies the allegations therein.

22    87.    In response to the allegations contained in paragraph 87 of the Second Amended

23  Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

24  truth of the allegations and, therefore, denies the allegations therein.

25    88.    In response to the allegations contained in paragraph 88 of the Second Amended

26  Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

27  truth of the allegations and, therefore, denies the allegations therein.

28  / / /

Defendant Attorney General Xavier Becerra's Answer to Second Amended Complaint  (CV 17-7357 JCS)

89.    In response to the allegations contained in paragraph 89 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

90.    In response to the allegations contained in paragraph 90 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

91.    In response to the allegations contained in paragraph 91 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

92.    In response to the allegations contained in paragraph 92 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

93.    In response to the allegations contained in paragraph 93 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

94.    In response to the allegations contained in paragraph 94 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

95.    In response to the allegations contained in paragraph 95 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

96.    In response to the allegations contained in paragraph 96 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

97.    In response to the allegations contained in paragraph 97 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

/ / /

13

1    98.    The allegations contained in paragraph 98 of the Second Amended Complaint consist

2    of legal argument and/or conclusions, which do not require admission or denial.  To the extent

3    they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information

4    sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations

5    therein.

6    99.    In response to the allegations contained in paragraph 99 of the Second Amended

7    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

8    truth of the allegations and, therefore, denies the allegations therein.

9    100.    In response to the allegations contained in paragraph 100 of the Second Amended

10    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

11    truth of the allegations and, therefore, denies the allegations therein.

12    101.    In response to the allegations contained in paragraph 101 of the Second Amended

13    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

14    truth of the allegations and, therefore, denies the allegations therein.

15    102.    In response to the allegations contained in paragraph 102 of the Second Amended

16    Complaint, Defendant Becerra admits that California Penal Code §§ 26350 and 26405 generally

17    prohibit persons from openly carrying unloaded firearms, subject to some exceptions.  As to the

18    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

19    belief as to the truth of the allegations and, therefore, denies the allegations therein.

20    103.    In response to the allegations contained in paragraph 103 of the Second Amended

21    Complaint, Defendant Becerra admits that California Penal Code §§ 26350 and 26405 generally

22    prohibit persons from openly carrying unloaded firearms, subject to some exceptions.  As to the

23    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

24    belief as to the truth of the allegations and, therefore, denies the allegations therein.

25    104.    In response to the allegations contained in paragraph 104 of the Second Amended

26    Complaint, Defendant Becerra admits that California Penal Code § 26350 generally prohibits

27    persons from openly carrying unloaded firearms, subject to some exceptions.  As to the remaining

28

14

1    allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to

2    the truth of the allegations and, therefore, denies the allegations therein.

3          105.   In response to the allegations contained in paragraph 105 of the Second Amended

4    Complaint, Defendant Becerra admits the content of California Penal Code § 26375.  As to the

5    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

6    belief as to the truth of the allegations and, therefore, denies the allegations therein.

7          106.   In response to the allegations contained in paragraph 106 of the Second Amended

8    Complaint, Defendant Becerra admits the content of California Penal Code § 26400.  As to the

9    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

10   belief as to the truth of the allegations and, therefore, denies the allegations therein.

11         107.   In response to the allegations contained in paragraph 107 of the Second Amended

12   Complaint, Defendant Becerra admits the content of California Penal Code § 26405(r).  As to the

13   remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

14   belief as to the truth of the allegations and, therefore, denies the allegations therein.

15         108.   In response to the allegations contained in paragraph 108 of the Second Amended

16   Complaint, Defendant Becerra admits the content of California Penal Code § 25510.  As to the

17   remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

18   belief as to the truth of the allegations and, therefore, denies the allegations therein.

19         109.   In response to the allegations contained in paragraph 109 of the Second Amended

20   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

21   truth of the allegations and, therefore, denies the allegations therein.

22         110.   In response to the allegations contained in paragraph 110 of the Second Amended

23   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

24   truth of the allegations and, therefore, denies the allegations therein.

25         111.   The allegations contained in paragraph 111 of the Second Amended Complaint

26   consist of legal argument and/or conclusions, which do not require admission or denial.  To the

27   extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or

28

15

1  information sufficient to form a belief as to the truth of the allegations and, therefore, denies the

2  allegations therein.

3      112.  The allegations contained in paragraph 112 of the Second Amended Complaint

4  consist of legal argument and/or conclusions, which do not require admission or denial.  To the

5  extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or

6  information sufficient to form a belief as to the truth of the allegations and, therefore, denies the

7  allegations therein.

8      113.  The allegations contained in paragraph 113 of the Second Amended Complaint

9  consist of legal argument and/or conclusions, which do not require admission or denial.  To the

10  extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or

11  information sufficient to form a belief as to the truth of the allegations and, therefore, denies the

12  allegations therein.

13      114.  The allegations contained in paragraph 114 of the Second Amended Complaint

14  consist of legal argument and/or conclusions, which do not require admission or denial.  To the

15  extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or

16  information sufficient to form a belief as to the truth of the allegations and, therefore, denies the

17  allegations therein.

18      115.  The allegations contained in paragraph 115 of the Second Amended Complaint

19  consist of legal argument and/or conclusions, which do not require admission or denial.  To the

20  extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or

21  information sufficient to form a belief as to the truth of the allegations and, therefore, denies the

22  allegations therein.

23      116.  In response to the allegations contained in paragraph 116 of the Second Amended

24  Complaint, Defendant Becerra denies suppressing or threatening to suppress Plaintiff Zeleny's

25  lawful exercise of his Constitutional rights.  As to the remaining allegations, Defendant Becerra

26  lacks knowledge or information sufficient to form a belief as to the truth of the allegations and,

27  therefore, denies the allegations therein.

28  / / /

117. The allegations contained in paragraph 117 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial. To the extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

118. In response to the allegations contained in paragraph 118 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

119. In response to the allegations contained in paragraph 119 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

120. In response to the allegations contained in paragraph 120 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

121. In response to the allegations contained in paragraph 121 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

122. In response to the allegations contained in paragraph 122 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

123. In response to the allegations contained in paragraph 123 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

124. In response to the allegations contained in paragraph 124 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

/ / /

/ / /

17

125. In response to the allegations contained in paragraph 125 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

126. In response to the allegations contained in paragraph 126 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

127. In response to the allegations contained in paragraph 127 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

128. In response to the allegations contained in paragraph 128 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

129. In response to the allegations contained in paragraph 129 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

130. In response to the allegations contained in paragraph 130 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

131. In response to the allegations contained in paragraph 131 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

132. In response to the allegations contained in paragraph 132 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

133. In response to the allegations contained in paragraph 133 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

/ / /

18

1    134.   In response to the allegations contained in paragraph 134 of the Second Amended

2    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

3    truth of the allegations and, therefore, denies the allegations therein.

4    135.   In response to the allegations contained in paragraph 135 of the Second Amended

5    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

6    truth of the allegations and, therefore, denies the allegations therein.

7    136.   In response to the allegations contained in paragraph 136 of the Second Amended

8    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

9    truth of the allegations and, therefore, denies the allegations therein.

10   137.   In response to the allegations contained in paragraph 137 of the Second Amended

11   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

12   truth of the allegations and, therefore, denies the allegations therein.

13   138.   In response to the allegations contained in paragraph 138 of the Second Amended

14   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

15   truth of the allegations and, therefore, denies the allegations therein.

16   139.   In response to the allegations contained in paragraph 139 of the Second Amended

17   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

18   truth of the allegations and, therefore, denies the allegations therein.

19   140.   In response to the allegations contained in paragraph 140 of the Second Amended

20   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

21   truth of the allegations and, therefore, denies the allegations therein.

22   141.   In response to the allegations contained in paragraph 141 of the Second Amended

23   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

24   truth of the allegations and, therefore, denies the allegations therein.

25   142.   In response to the allegations contained in paragraph 142 of the Second Amended

26   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

27   truth of the allegations and, therefore, denies the allegations therein.

28   / / /

19

1      143. In response to the allegations contained in paragraph 143 of the Second Amended

2 Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

3 truth of the allegations and, therefore, denies the allegations therein.

4      144. In response to the allegations contained in paragraph 144 of the Second Amended

5 Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

6 truth of the allegations and, therefore, denies the allegations therein.

7      145. In response to the allegations contained in paragraph 145 of the Second Amended

8 Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

9 truth of the allegations and, therefore, denies the allegations therein.

10      146. In response to the allegations contained in paragraph 146 of the Second Amended

11 Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

12 truth of the allegations and, therefore, denies the allegations therein.

13      147. In response to the allegations contained in paragraph 147 of the Second Amended

14 Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

15 truth of the allegations and, therefore, denies the allegations therein.

16      148. In response to the allegations contained in paragraph 148 of the Second Amended

17 Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

18 truth of the allegations and, therefore, denies the allegations therein.

19      149. In response to the allegations contained in paragraph 149 of the Second Amended

20 Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

21 truth of the allegations and, therefore, denies the allegations therein.

22      150. In response to the allegations contained in paragraph 150 of the Second Amended

23 Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

24 truth of the allegations and, therefore, denies the allegations therein.

25      151. In response to the allegations contained in paragraph 151 of the Second Amended

26 Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

27 truth of the allegations and, therefore, denies the allegations therein.

28 / / /

1    152.   In response to the allegations contained in paragraph 152 of the Second Amended

2    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

3    truth of the allegations and, therefore, denies the allegations therein.

4    153.   In response to the allegations contained in paragraph 153 of the Second Amended

5    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

6    truth of the allegations and, therefore, denies the allegations therein.

7    154.   In response to the allegations contained in paragraph 154 of the Second Amended

8    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

9    truth of the allegations and, therefore, denies the allegations therein.

10   155.   In response to the allegations contained in paragraph 155 of the Second Amended

11   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

12   truth of the allegations and, therefore, denies the allegations therein.

13   156.   In response to the allegations contained in paragraph 156 of the Second Amended

14   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

15   truth of the allegations and, therefore, denies the allegations therein.

16   157.   In response to the allegations contained in paragraph 157 of the Second Amended

17   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

18   truth of the allegations and, therefore, denies the allegations therein.

19   158.   In response to the allegations contained in paragraph 158 of the Second Amended

20   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

21   truth of the allegations and, therefore, denies the allegations therein.

22   159.   In response to the allegations contained in paragraph 159 of the Second Amended

23   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

24   truth of the allegations and, therefore, denies the allegations therein.

25   160.   In response to the allegations contained in paragraph 160 of the Second Amended

26   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

27   truth of the allegations and, therefore, denies the allegations therein.

28   / / /

161.   In response to the allegations contained in paragraph 161 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

162.   In response to the allegations contained in paragraph 162 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

163.   In response to the allegations contained in paragraph 163 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

164.   In response to the allegations contained in paragraph 164 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

165.   In response to the allegations contained in paragraph 165 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

166.   In response to the allegations contained in paragraph 166 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

167.   The allegations contained in paragraph 167 are Plaintiff Zeleny's characterization of his case, to which no answer is required.  To the extent they may be deemed allegations of fact, Defendant Becerra admits that Defendant Bertini contacted the California Department of Justice regarding the Entertainment Firearms Permit issued by the California Department of Justice to Plaintiff Zeleny in 2016.  An Entertainment Firearms Permit certifies that the California Department of Justice has completed a firearms eligibility check and, as of the date of issuance, there is nothing that would prohibit the named permitholder from the possession of firearms loaned to the permittee for use in a motion picture, television, video, theatrical, or other entertainment production pursuant to California Penal Code §§ 29500 through 29530.  As to the

22

1    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

2    belief as to the truth of the allegations and, therefore, denies the allegations therein.

3       168.   In response to the allegations contained in paragraph 168 of the Second Amended

4    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

5    truth of the allegations and, therefore, denies the allegations therein.

6       169.   In response to the allegations contained in paragraph 169 of the Second Amended

7    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

8    truth of the allegations and, therefore, denies the allegations therein.

9       170.   In response to the allegations contained in paragraph 170 of the Second Amended

10    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

11    truth of the allegations and, therefore, denies the allegations therein.

12       171.   The allegations contained in paragraph 171 of the Second Amended Complaint are

13    Plaintiff Zeleny's characterization of his case, to which no answer is required. To the extent they

14    may be deemed allegations of fact, Defendant Becerra admits that Defendant Bertini contacted

15    the California Department of Justice regarding the Entertainment Firearms Permit issued by the

16    California Department of Justice to Plaintiff Zeleny in 2016. As to the remaining allegations,

17    Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the

18    allegations and, therefore, denies the allegations therein.

19       172.   The allegations contained in paragraph 172 of the Second Amended Complaint are

20    Plaintiff Zeleny's characterization of his case, to which no answer is required. To the extent they

21    may be deemed allegations of fact, Defendant Becerra admits that Defendant Bertini contacted

22    the California Department of Justice regarding the Entertainment Firearms Permit issued by the

23    California Department of Justice to Plaintiff Zeleny in 2016. As to the remaining allegations,

24    Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the

25    allegations and, therefore, denies the allegations therein.

26       173.   In response to the allegations contained in paragraph 173 of the Second Amended

27    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

28    truth of the allegations and, therefore, denies the allegations therein.

1    174.  In response to the allegations contained in paragraph 174 of the Second Amended

2    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

3    truth of the allegations and, therefore, denies the allegations therein.

4    175.  In response to the allegations contained in paragraph 175 of the Second Amended

5    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

6    truth of the allegations and, therefore, denies the allegations therein.

7    176.  In response to the allegations contained in paragraph 176 of the Second Amended

8    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

9    truth of the allegations and, therefore, denies the allegations therein.

10    177.  In response to the allegations contained in paragraph 177 of the Second Amended

11    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

12    truth of the allegations and, therefore, denies the allegations therein.

13    178.  In response to the allegations contained in paragraph 178 of the Second Amended

14    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

15    truth of the allegations and, therefore, denies the allegations therein.

16    179.  In response to the allegations contained in paragraph 179 of the Second Amended

17    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

18    truth of the allegations and, therefore, denies the allegations therein.

19    180.  In response to the allegations contained in paragraph 180 of the Second Amended

20    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

21    truth of the allegations and, therefore, denies the allegations therein.

22    181.  In response to the allegations contained in paragraph 181 of the Second Amended

23    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

24    truth of the allegations and, therefore, denies the allegations therein.

25    182.  In response to the allegations contained in paragraph 182 of the Second Amended

26    Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

27    truth of the allegations and, therefore, denies the allegations therein.

28    / / /

Case 3:17-cv-07357-RS   Document 100   Filed 09/10/19   Page 25 of 37

183.   In response to the allegations contained in paragraph 183 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

184.   In response to the allegations contained in paragraph 184 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

185.   In response to the allegations contained in paragraph 185 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

186.   In response to the allegations contained in paragraph 186 of the Second Amended Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

## DECLARATORY RELIEF

187.   In response to the allegations contained in paragraph 187 of the Second Amended Complaint, Defendant Becerra denies that an actual, substantial, justiciable, and continuing controversy exists between Plaintiff Zeleny and himself.  As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

188.   The allegations contained in paragraph 188 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial.  To the extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

189.   The allegations contained in paragraph 189 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial.  To the extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

190. The allegations contained in paragraph 190 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial. To the extent they may be deemed allegations of fact, Defendant Becerra admits the content of California Penal Code §§ 26350 and 26400, but denies that those statutes are unconstitutional. As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

191. The allegations contained in paragraph 191 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial. To the extent they may be deemed allegations of fact, Defendant Becerra admits the content of California Penal Code §§ 25510, 26375, and 26405. As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

192. The allegations contained in paragraph 192 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial. To the extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

193. The allegations contained in paragraph 193 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial. To the extent they may be deemed allegations of fact, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

## FIRST COUNT

194. In response to the allegations contained in paragraph 194 of the Second Amended Complaint, Defendant Becerra repeats his responses to the allegations contained in paragraphs 1-193 as though set forth fully herein.

195. In response to the allegations contained in paragraph 195 of the Second Amended Complaint, Defendant Becerra admits the content of the First Amendment to the United States

1   Constitution and the Due Process Clause of the Fourteenth Amendment to the United States

2   Constitution. Defendant Becerra contends that the remainder of the paragraph consists of legal

3   argument and/or conclusions, which do not require admission or denial.

4       196. In response to the allegations contained in paragraph 196 of the Second Amended

5   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

6   truth of the allegations and, therefore, denies the allegations therein.

7       197. In response to the allegations contained in paragraph 197 of the Second Amended

8   Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

9   truth of the allegations and, therefore, denies the allegations therein.

10      198. In response to the allegations contained in paragraph 198 of the Second Amended

11  Complaint, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the

12  truth of the allegations and, therefore, denies the allegations therein.

13      199. The allegations contained in paragraph 199 of the Second Amended Complaint

14  consist of legal argument and/or conclusions, which do not require admission or denial. To the

15  extent they may be deemed allegations of fact, Defendant Becerra denies engaging in any

16  unlawful acts as alleged in paragraph 199. Indeed, the Second Amended Complaint lacks any

17  allegations demonstrating any unlawful acts by Defendant Becerra. As to the remaining

18  allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to

19  the truth of the allegations and, therefore, denies the allegations therein.

20                           **SECOND COUNT**

21      200. In response to the allegations contained in paragraph 200 of the Second Amended

22  Complaint, Defendant Becerra repeats his responses to the allegations contained in paragraphs 1-

23  199 as though set forth fully herein.

24      201. In response to the allegations contained in paragraph 201 of the Second Amended

25  Complaint, Defendant Becerra admits the content of the First Amendment to the United States

26  Constitution and the Due Process Clause of the Fourteenth Amendment to the United States

27  Constitution. Defendant Becerra contends that the remainder of the paragraph consists of legal

28  argument and/or conclusions, which do not require admission or denial.

1    202.  The allegations contained in paragraph 202 of the Second Amended Complaint

2    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

3    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

4    belief as to the truth of the allegations and, therefore, denies the allegations therein.

5    203.  The allegations contained in paragraph 203 of the Second Amended Complaint

6    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

7    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

8    belief as to the truth of the allegations and, therefore, denies the allegations therein.

9    204.  The allegations contained in paragraph 204 of the Second Amended Complaint

10   consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

11   remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

12   belief as to the truth of the allegations and, therefore, denies the allegations therein.

13   205.  The allegations contained in paragraph 205 of the Second Amended Complaint

14   consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

15   remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

16   belief as to the truth of the allegations and, therefore, denies the allegations therein.

17   206.  The allegations contained in paragraph 206 of the Second Amended Complaint

18   consist of legal argument and/or conclusions, which do not require admission or denial.  To the

19   extent they may be deemed allegations of fact, Defendant Becerra denies engaging in any

20   unlawful acts as alleged in paragraph 206.  Indeed, the Second Amended Complaint lacks any

21   allegations demonstrating any unlawful acts by Defendant Becerra.  As to the remaining

22   allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to

23   the truth of the allegations and, therefore, denies the allegations therein.

24                                    **THIRD COUNT**

25   207.  In response to the allegations contained in paragraph 207 of the Second Amended

26   Complaint, Defendant Becerra repeats his responses to the allegations contained in paragraphs 1-

27   206 as though set forth fully herein.

28   / / /

1    208.   In response to the allegations contained in paragraph 208 of the Second Amended

2    Complaint, Defendant Becerra admits the content of the First and Second Amendments to the

3    United States Constitution and the Due Process Clause of the Fourteenth Amendment to the

4    United States Constitution.  Defendant Becerra contends that the remainder of the paragraph

5    consists of legal argument and/or conclusions, which do not require admission or denial.

6    209.   The allegations contained in paragraph 209 of the Second Amended Complaint

7    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

8    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

9    belief as to the truth of the allegations and, therefore, denies the allegations therein.

10    210.   The allegations contained in paragraph 210 of the Second Amended Complaint

11    consist of legal argument and/or conclusions, which do not require admission or denial.

12    Defendant Becerra denies that Plaintiff Zeleny has asserted a facial challenge to California Penal

13    Code §§ 25510, 26375, or 26405.  As to the remaining allegations, Defendant Becerra lacks

14    knowledge or information sufficient to form a belief as to the truth of the allegations and,

15    therefore, denies the allegations therein.

16    211.   The allegations contained in paragraph 211 of the Second Amended Complaint

17    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

18    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

19    belief as to the truth of the allegations and, therefore, denies the allegations therein.

20    212.   The allegations contained in paragraph 212 of the Second Amended Complaint

21    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

22    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

23    belief as to the truth of the allegations and, therefore, denies the allegations therein.

24    213.   The allegations contained in paragraph 213 of the Second Amended Complaint

25    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

26    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

27    belief as to the truth of the allegations and, therefore, denies the allegations therein.

28    / / /

214. The allegations contained in paragraph 214 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial. As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

215. The allegations contained in paragraph 215 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial. As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

216. The allegations contained in paragraph 216 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial. As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

217. The allegations contained in paragraph 217 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial. To the extent they may be deemed allegations of fact, Defendant Becerra denies engaging in any unlawful acts as alleged in paragraph 217. Indeed, the Second Amended Complaint lacks any allegations demonstrating any unlawful acts by Defendant Becerra. As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

**FOURTH COUNT**

218. In response to the allegations contained in paragraph 218 of the Second Amended Complaint, Defendant Becerra repeats his responses to the allegations contained in paragraphs 1-217 as though set forth fully herein.

219. The allegations contained in paragraph 219 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial. As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

/ / /

1    220.  The allegations contained in paragraph 220 of the Second Amended Complaint

2    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

3    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

4    belief as to the truth of the allegations and, therefore, denies the allegations therein.

5    221.  The allegations contained in paragraph 221 of the Second Amended Complaint

6    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

7    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

8    belief as to the truth of the allegations and, therefore, denies the allegations therein.

9    222.  The allegations contained in paragraph 222 of the Second Amended Complaint

10    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

11    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

12    belief as to the truth of the allegations and, therefore, denies the allegations therein.

13    223.  The allegations contained in paragraph 223 of the Second Amended Complaint

14    consist of legal argument and/or conclusions, which do not require admission or denial.

15    Defendant Becerra denies engaging in any unlawful acts as alleged in paragraph 223.  As to the

16    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

17    belief as to the truth of the allegations and, therefore, denies the allegations therein.

18    224.  The allegations contained in paragraph 224 of the Second Amended Complaint

19    consist of legal argument and/or conclusions, which do not require admission or denial.

20    Defendant Becerra denies engaging in any unlawful acts as alleged in paragraph 224.  As to the

21    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

22    belief as to the truth of the allegations and, therefore, denies the allegations therein.

23    **FIFTH COUNT**

24    225.  In response to the allegations contained in paragraph 225 of the Second Amended

25    Complaint, Defendant Becerra repeats his responses to the allegations contained in paragraphs 1-

26    224 as though set forth fully herein.

27    226.  The allegations contained in paragraph 226 of the Second Amended Complaint

28    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

1    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

2    belief as to the truth of the allegations and, therefore, denies the allegations therein.

3         227.  The allegations contained in paragraph 227 of the Second Amended Complaint

4    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

5    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

6    belief as to the truth of the allegations and, therefore, denies the allegations therein.

7         228.  The allegations contained in paragraph 228 of the Second Amended Complaint

8    consist of legal argument and/or conclusions, which do not require admission or denial.

9    Defendant Becerra denies that Plaintiff Zeleny has asserted a claim under the California

10    Constitution.  As to the remaining allegations, Defendant Becerra lacks knowledge or information

11    sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations

12    therein.

13         229.  In response to the allegations contained in paragraph 229 of the Second Amended

14    Complaint, Defendant Becerra denies promulgating policies and/or procedures, conducted under

15    color of state law, that deprived Plaintiff Zeleny of rights secured by the Equal Protection Clause

16    of the Fourteenth Amendment to the United States Constitution.  The remainder of the paragraph

17    consists of legal argument and/or conclusions, which do not require admission or denial.  To the

18    extent admission or denial is required, Defendant Becerra lacks knowledge or information

19    sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations

20    therein.

21                        **SIXTH COUNT**

22         230.  In response to the allegations contained in paragraph 230 of the Second Amended

23    Complaint, Defendant Becerra repeats his responses to the allegations contained in paragraphs 1-

24    229 as though set forth fully herein.

25         231.  The allegations contained in paragraph 231 of the Second Amended Complaint

26    consist of legal argument and/or conclusions, which do not require admission or denial.  As to the

27    remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a

28    belief as to the truth of the allegations and, therefore, denies the allegations therein.

232.   The allegations contained in paragraph 232 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial.  As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

233.   The allegations contained in paragraph 233 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial.  As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

234.   The allegations contained in paragraph 234 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial.  As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

235.   The allegations contained in paragraph 235 of the Second Amended Complaint consist of legal argument and/or conclusions, which do not require admission or denial.  As to the remaining allegations, Defendant Becerra lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, therefore, denies the allegations therein.

## PRAYER FOR RELIEF

A.   Defendant Becerra denies that Plaintiff Zeleny is entitled to a declaratory judgment, "pursuant to 28 U.S.C. § 2201, binding on all Defendants, that California Penal Code §§ 26400 and 26350 are unconstitutional."

B.   Defendant Becerra denies that Plaintiff Zeleny is entitled to a declaratory judgment, "pursuant to 28 U.S.C. § 2201, binding on all Defendants, that California Penal Code §§ 25510, 26375, and 26405 do not require municipal approval of 'authorized participants' in an entertainment event or film or video production, and that Zeleny is legally permitted to carry unloaded firearms in connection with his entertainment events and/or his film or video productions, without the need for City approval, subject to compliance with other applicable laws."

/ / /

1    C.    Defendant Becerra denies that Plaintiff Zeleny is entitled to a declaratory judgment,

2    "pursuant to 28 U.S.C. § 2201, binding on all Defendants, that Zeleny's peaceful carrying of

3    unloaded firearms in the course of his speech on matters of public concern or matters of political,

4    social, or other concerns to the community or issues of significant importance to the public as a

5    whole, is constitutionally protected; in the alternative, enter a declaratory judgment, pursuant to

6    28 U.S.C. § 2201, binding on all Defendants, that Zeleny's peaceful carrying of unloaded

7    firearms in the course of his entertainment events and/or his film or video productions, is

8    constitutionally protected."

9    D.    Defendant Becerra denies that Plaintiff Zeleny is entitled to a declaratory judgment,

10   "pursuant to 28 U.S.C. § 2201, binding on the City and Bertini, that Zeleny's speech activity

11   concerning the child rape cover-up by the Zhus and their associates is constitutionally protected

12   and not obscene or 'obscene as to minors' within the meaning of the California Penal Code, and

13   that their public display would not violate Penal Code §§ 311.2, 313.1(a), and 313.4, in virtue of

14   its serious literary, artistic, political, and social value."

15   E.    Defendant Becerra denies that Plaintiff Zeleny is entitled to a declaratory judgment,

16   "pursuant to 28 U.S.C. § 2201, that the City of Menlo Park's Special Event Permit requirement is

17   unconstitutional on its face, or in the alternative, as applied to Zeleny's protests."

18   F.    Defendant Becerra denies that Plaintiff Zeleny is entitled to an injunction, "against

19   Defendants prohibiting them from enforcing Penal Code §§ 26400 and 26350 against Zeleny in

20   connection with his peaceful protests, from enforcing the City of Menlo Park's Special Event

21   Permit requirement, and from refusing to grant Zeleny required permits based on the content of

22   his speech activity."

23   G.    Defendant Becerra denies that Plaintiff Zeleny is entitled to a declaratory judgment,

24   "pursuant to 28 U.S.C. § 2201, construing California Penal Code §§ 25510, 26405, and 26375

25   and enter a declaratory judgment stating that these sections exempt from sanctions under

26   California Penal Code §§ 25400, 26400, and 26350 for the carrying of an unloaded handgun and

27   of an unloaded firearm that is not a handgun, *any individual* who acts and/or holds himself out as

28   an authorized participant in, or serves as an authorized employee or agent of a supplier of

firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses that firearm as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event. Relevant actions and representations include, without limitation, displaying ornamental signs or multimedia artworks; reciting slogans, speeches, or poetry; playing trumpets, accordions, bagpipes, or other musical instruments; and/or wearing conspicuous costumes, makeup, wigs, clown noses, or other decorative prostheses."

H.  Defendant Becerra denies that Plaintiff Zeleny is entitled to an award of nominal damages against Defendant NEA and punitive damages in an amount to be proven at trial.

I.  Defendant Becerra denies that Plaintiff Zeleny is entitled to an award of attorneys fees pursuant to 42 U.S.C. § 1988 and California Code of Civil Procedure § 1021.5, and costs as provided by law.

J.  Defendant Becerra denies that Plaintiff Zeleny is entitled to an award of any such other and further relief as the Court deems just and proper.

## DEFENSES

### FIRST DEFENSE

Plaintiff Zeleny fails to state a claim for relief against Defendant Becerra.

### SECOND DEFENSE

Plaintiff Zeleny's alleged violation of the Fourteenth Amendment to the United States Constitution (Second Amended Complaint, ¶¶ 225-229) fails because no case or controversy exists between Plaintiff Zeleny and Defendant Becerra.

### THIRD DEFENSE

Plaintiff Zeleny's alleged violation of the Fourteenth Amendment to the United States Constitution (Second Amended Complaint, ¶¶ 225-229) is barred by the Eleventh Amendment.

### FOURTH DEFENSE

To the extent that Plaintiff Zeleny alleges a violation of the California Constitution (Second Amended Complaint, ¶¶ 225-229), such claim is barred because a federal court may not grant

35

1    relief against a state official on the basis of state law.  *Pennhurst State Sch. & Hosp. v.*

2    *Halderman*, 465 U.S. 89 (1984).

3                                   **FIFTH DEFENSE**

4         Defendant Becerra has insufficient knowledge on which to form a belief as to whether he

5    may have additional, as yet unstated, defenses available.  Defendant Becerra reserves the right to

6    assert additional defenses in the event that discovery indicates such additional defenses are

7    proper.

8                                 **PRAYER FOR RELIEF**

9         **WHEREFORE**, Defendant Becerra prays for judgment as follows:

10        1.    Plaintiff Zeleny take nothing from Defendant Becerra by way of this action;

11        2.    Plaintiff Zeleny's Second Amended Complaint be dismissed with prejudice, and

12   judgment entered in favor of Defendant Becerra;

13        3.    Defendant Becerra be awarded costs of suit, and any other relief which the Court

14   deems proper.

15   Dated:  September 10, 2019              Respectfully submitted,
16
17                                          XAVIER BECERRA
                                            Attorney General of California
18                                          ANTHONY R. HAKL
                                            Supervising Deputy Attorney General
19
20                                          */s/ Noreen P. Skelly*
21                                          NOREEN P. SKELLY
                                            Deputy Attorney General
22                                          *Attorneys for Defendant Attorney General*
                                            *Xavier Becerra*
23
24
25
26
27   SA2018100198
     14068326.docx
28

                                            36

# CERTIFICATE OF SERVICE

Case Name: **Zeleny, Michael v. Edmund G. Brown, et al.**     No.     **3:17-cv-07357 RS (NC)**

I hereby certify that on <u>September 10, 2019</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT ATTORNEY GENERAL XAVIER BECERRA'S ANSWER TO PLAINTIFF MICHAEL ZELENY'S SECOND AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>September 10, 2019</u>, at Sacramento, California.


| Eileen A. Ennis | */s/ Eileen A. Ennis* |
|:---:|:---:|
| Declarant | Signature |

SA2018100198
14089274.docx

# EXHIBIT 3

# AFFELD GRIVAKES LLP

2049 Century Park East, Suite 2460
Los Angeles, California 90067
Tel: (310) 979-8700
Fax: (310) 979-8701

August 26, 2020

The Honorable Thomas S. Hixson                    *Via CM/ECF*
United States Magistrate Judge
San Francisco Courthouse, Courtroom G
450 Golden Gate Avenue,
San Francisco, CA 94102

      Re:    ***Michael Zeleny v. Gavin Newsom, et al.***
               **Case No. CV 17-7357 JCS**
               **Joint Letter Brief Regarding Attorney General Xavier Becerra's Responses**
               **to Interrogatories**

Dear Judge Hixson:

      Plaintiff Michael Zeleny ("Zeleny") and Defendant Xavier Becerra ("Becerra") respectfully submit this Letter Brief pursuant to your Discovery Standing Order ¶ 2.

      Zeleny and Becerra have reached an impasse regarding whether Becerra is obligated to answer Zeleny's Interrogatories Nos. 10-16 and 22-25, which ask Becerra to provide his and the State's interpretation of the meaning of the term "authorized participant" as used in California Penal Code §§ 26375 and 26405(r), including any process for becoming or qualifying as one.

      The parties' respective positions are set forth in this Letter Brief. A Declaration of Counsel is submitted concurrently, attaching pertinent excerpts of the Interrogatories and responses, relevant correspondence among counsel, and several other pertinent exhibits.

*[Continued on Next Page]*

**Plaintiff's Position**

**A.    Introduction**

This case involves, in part, a challenge to California's "open carry ban," which prohibits ordinary Californians from carrying a firearm almost anywhere in California. The State of California (the "State") refused to produce a witness who could take an official position on the meaning of the "open carry ban," including the exceptions thereto. The parties submitted that dispute to the Court for resolution. ECF No. 127.

On June 9, 2020, the Court ruled that "… a 30(b)(6) deposition is not an appropriate vehicle for taking discovery into legal contentions." Ex. 1 (ECF No. 132), 4:1-16. The Court instructed that such "contention discovery" *should rather* be taken through interrogatories ("rogs") and requests for admission. *Id.* at 4:16-20.

The Court identified and discussed such rogs propounded by Zeleny and found that Becerra's responses were incomplete. *Id.* at 2:1-12 ("In interrogatory . . . 10 [Zeleny] asked the AG if 'authorized participant' means someone authorized by a governmental body or agency. The AG's response did not answer the question"; noting that the AG "did not cleanly answer" whether a person with an Entertainment Firearm's permit" is an "authorized participant".) Zeleny immediately asked Becerra to answer the rogs. Ex. 2. Becerra refused. Ex. 3.

As the Court has observed, "[i]n his answer [Becerra] specifically denies that Zeleny is entitled to a declaration adopting his preferred interpretation of the 'authorized participant' exception." Ex. 1 at 1:25-28. The State cannot reject Zeleny's interpretation of the statute while also refusing to take a position on what the statute means.

**B.    Background**

**1.    Zeleny's Challenge to the Open Carry Ban.**

Zeleny challenges California's "open carry ban," which prohibits openly carrying unloaded handguns or long guns in any city or incorporated city and county. There are exceptions to the open carry ban. One, permits open carry by an "authorized participant in . . . a motion picture, television or video production, or entertainment event[.]" Cal. Pen. Code §§ 26375, 26405(r). The definition of an "authorized participant" and who does the authorizing is not in the statute. Ex. 1 at 1. There are no regulations and no official opinions on the subject.

This exception ties together Zeleny's Second Amendment claim against the State and his claims against the City of Menlo Park (the "City"). The City claims that an "authorized participant" must have a City film or event permit. Zeleny disputes this interpretation and further challenges the Constitutionality of the ban. Ex. 1 at 1:21-24, *citing* the Second Amended Complaint.

**2.    The Parties' Respective Roles**.

Zeleny sued Becerra *in his official capacity*, under *Ex Parte Young*. In denying Becerra's Motion to Dismiss, the Court found that Zeleny had properly stated a constitutional challenge under *Ex Parte Young*. Ex. 6 (ECF No. 37) at 4:25-5:11. Thus, this suit is not "against [Becerra] but . . . against [his] office," and is "no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Wilvox v. Batiste*, 360 F. Supp. 3d 1112, 1119 (E.D. Wash. 2018). The State is a party here.

Becerra's interpretation of the Penal Code sections at hand–*in his role as a State Attorney General*–is both factually relevant and causally related to the injury that Zeleny seeks to redress through this lawsuit. An interpretation by Becerra that is contrary to Zeleny's will likely lead to Zeleny's arrest if he resumes his protests. Thus, a claim for injunctive relief precluding such an interpretation is grounded in fact and properly directed at Becerra. *See Ex. 6 at 3:19-4:11.*

**3.  Attorney General Becerra Provides Evasive Interrogatory Answers, Sidestepping the Question of what "Authorized Participant" Means.**

On January 25, 2019, Zeleny propounded interrogatories to Becerra directed at understanding the meaning and application to Zeleny of the term "authorized participant." *See* Ex. 4, rogs nos. 10-16.

In his responses, Becerra suggested that the phrase might refer to someone with a state-issued Entertainment Firearm's Permit but refused to give further information. *See* Ex. 4 at 24:14-25:15. Becerra gave similarly evasive answers to rogs nos. 12-16, which similarly sought information about how one can become an "authorized participant."

On February 12, 2020, Zeleny propounded further interrogatories asking whether an individual with an "entertainment firearms permit" issued pursuant to Penal Code § 29500 is an "authorized participant." Ex. 5, p. 3. Becerra gave an evasive response to the effect "that it is possible to infer" this definition, but refused to clearly answer. *Id.* at p. 4-5.

**C.  Argument**

The meaning of the phrase "authorized participant," and, specifically, who may legally bestow such an "authorization," is central to this case. There is no reasonable argument to the contrary.

The responsibility to interpret the term "authorized participant" falls on Becerra as the state's chief law enforcement officer, who is required to know whether a crime is being committed or an exception applies. *See* Cal. Const., Art. V § 13 ("It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced").

While the parties may dispute what the statute means as a legal matter, Becerra's understanding as the chief law enforcement officer of the State is a fact. And Zeleny is entitled to learn that fact in discovery so he can proceed accordingly in this case and with his protests.

**1.  The Interrogatories Are Directly Relevant**

There is no dispute that the interrogatories seek relevant information in this case. They seek the interpretation of the proper State official as to the meaning of state criminal statutes applied to Zeleny. As the Court recognized in its prior discovery order, contention interrogatories are the proper method of getting this information. *See* Ex. 1 at 4.

**2.  Becerra's Claim that Interrogatories Seek Pure Legal Conclusions Is Unsupported.**

Becerra claims that "the interrogatories … do not seek to determine 'how the authorized participant exception applies to Zeleny[]' … because there is no allegation in the complaint that the Attorney General has applied the law to Zeleny in any way, or is involved in his dispute with the other defendants." Ex. 3 at p. 1.

This is the same argument that the Court considered and rejected at the motion to dismiss stage. *See* Ex. 6 at 3:9-4:11. The "other defendants" in this case enforce the criminal laws, including the "open carry" ban, pursuant to a delegation from the State. *See* Cal. Const., Art. 5, § 13 ("The Attorney General shall have direct supervision over … such other law enforcement officers as may be designated by law, in all matters pertaining to the duties of their respective offices"); *see also* Cal. Gov. Code § 12550. Accordingly, Courts have repeatedly rejected the argument by the AG's office that the AG has "no connection" to the prosecution of the individual plaintiff. *Nichols v. Brown*, 945 F. Supp. 2d 1079, 1106-07 (C.D. Cal. 2013); *see also Duncan v. Becerra*, 265 F. Supp. 3d. 1216 (noting that Becerra "has not indicated that [firearms statutes] will not be enforced").

b.      **Becerra Relies on Inapposite Legal Authority.**

In refusing to answer the rogs, Becerra now relies on cases generally precluding a party from requiring another to provide a purely legal opinion or interpretation, "entirely divorced from the factual context." Ex. 3 at p. 1-2. Those cases are inapplicable here.

As an initial matter, Becerra did not object to Interrogatories Nos. 10-16 on this basis. That objection has been waived. *See* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity. Any ground *not stated in a timely objection* is waived unless the court, for good causes, excuses the failure.").

Moreover, the decisions Becerra cites are off base. None involved rogs to a government official whose duty is to interpret statutes, seeking his interpretation of a state statute directly applicable to the plaintiff. Becerra's interpretation—whether right or wrong—is a directly relevant fact. If he interprets the statutes in the same manner as Zeleny, this interpretation itself will support Zeleny's claims against the City, and preclude the City from enforcing the statutes against Zeleny.

Finally, courts distinguish "contention interrogatories" of the type at issue here from interrogatories asking for analysis of "pure law." *See Salazar v. Continental Constr. Co.*, 2012 WL 1438892, at *1 (D. Mt. Apr. 25, 2012) (compelling response to interrogatory asking plaintiff to "identify what OSHA regulations he claims were violated"). These types of interrogatories properly serve to narrow and frame the issues. *See Black Mountain Equities, Inc. v. Players Network, Inc.*, 2020 WL 2097600 (S.D. Cal. May 1, 2020) (compelling answer to interrogatory asking for "all statutes, rules or regulations" that prevented SEC registration).

**D.      Conclusion**

Based on the foregoing, Zeleny respectfully askes the Court to require Becerra to serve complete answers to rogs nos. 10-16 and 22-25.

## Defendant California Attorney General Xavier Becerra's Position

**I.      INTRODUCTION**

Plaintiff Michael Zeleny alleges a conspiracy among the City of Menlo Park and its officials to deny him certain constitutional rights. Zeleny does not allege that California Attorney General Xavier Becerra has participated in this conspiracy, applied the law to Zeleny in any way, or done anything else wrong. The Attorney General is a defendant only because Zeleny asserts a facial challenge to the constitutionality of certain sections of the California Penal Code that prohibit the open carry of weapons. *See* Second Am. Compl., ¶¶ 104-09, 187-193, 225-29.

Through written discovery, Zeleny has sought the Attorney General's "official interpretation" of California Penal Code sections 26375 and 26405(r), which contain an exception to the general prohibition on open carrying of weapons for "authorized participant[s] in . . . a motion picture, television or video production, or entertainment event[.]"

The Court already denied Zeleny's request to obtain the same legal interpretation from the Attorney General in the context of a live deposition. *See* Dkt. 132. The same reasoning applies to Zeleny's request for a legal interpretation via written discovery. Discovery may be sought about facts, or about the application of law to facts, but not about pure questions of law. In this facial constitutional challenge, the meaning of the California Penal Code will involve statutory interpretation divorced from the facts of the case. Zeleny and the Attorney General will have equal access to relevant legislative history and other legal resources, and the Court will determine whether Zeleny is entitled to the judgment that he seeks. Discovery about the Attorney General's legal theories is not permitted and will improperly infringe on the Attorney General's mental impression work product.

## II. IN THIS FACIAL CONSTITUTIONAL CHALLENGE, DISCOVERY ABOUT THE ATTORNEY GENERAL'S LEGAL THEORIES SHOULD NOT BE ALLOWED

Zeleny alleges that whether he is allowed to openly carry firearms in his protests under the current statutory framework, and whether the City of Menlo Park has any discretion to prohibit him from doing so, depends on the phrase 'authorized participant' in Penal Code §§ 26375 and 26405(r). As part of his facial challenge against the Attorney General, he seeks discovery about the Attorney General's legal opinion (which he calls an "official interpretation") of the statutory phrase "authorized participant." Because there is no allegation that the Attorney General has had anything to do with the alleged conspiracy described in the complaint, as to the Attorney General, Zeleny seeks only a pure legal interpretation untethered from the facts of the case.

Such a pure legal interpretation is not the proper subject of written discovery.

Interrogatories that seek pure legal conclusions untethered from the facts of the case are improper. "Rule 33 does not permit interrogatories directed to issues of 'pure law'—i.e., abstract legal issues not dependent on the facts of the case." Phillips & Stevenson, Rutter Group Practice Guide: Fed. Civ. Pro. Before Trial ¶ 11:1680 (The Rutter Group April 2020 Update); *see United States ex rel. Englund v. L.A. Cnty.*, 235 F.R.D. 675, 683 (E.D. Cal. 2006) (barring interrogatory seeking legal interpretation of statutory term); *Everest Nat'l Ins. Co. v. Santa Cruz Cnty. Bank*, No. 15CV02085BLFHRL, 2016 WL 6311876, at *4 (N.D. Cal. Oct. 28, 2016) (barring interrogatories seeking information about "abstract legal definitions or discussions entirely divorced from the factual context of this case"); *cf. Disability Rights Council v. Wash. Metro. Area*, 234 F.R.D. 1, 3 (D.D.C. 2006) (prohibiting requests for admission about specific terms in federal law).

In the Court's order denying a further 30(b)(6) deposition of the Department of Justice and a personal deposition of Attorney General Becerra, the Court referred to the role of contention interrogatories in determining how a party applies the law to a specific set of facts, e.g., "how the authorized participant exception applies to Zeleny." See June 9 Order at 4. A contention interrogatory is permissible, while an interrogatory seeking a legal conclusion is not.

Here, the relevant interrogatories do not seek to determine "how the authorized participant exception applies to Zeleny." They seek a legal opinion about the term "authorized participant." *See* Interrogatories 10-16, 22-25. There is no allegation in the complaint that the Attorney General has applied the law to Zeleny in any way, or is involved in his dispute with the other defendants. The Attorney General is named as a defendant only because the complaint asserts a facial challenge to certain provisions of the California Penal Code. Because Zeleny does not allege that the Attorney General has applied any of these statutes against him, Zeleny's facial claims against the Attorney General will involve pure issues of law. It will not involve any issues of fact, or issues of law applied to fact.

Because Zeleny's dispute with the Attorney General involves only issues of "pure law"— the facial constitutionality of sections in the Penal Code—the Attorney General is not required to give Zeleny an advance copy of his attorney work product, which is effectively what these interrogatories seek.

## III. ZELENY'S ARGUMENTS TO THE CONTRARY ARE UNPERSUASIVE

Zeleny argues that, despite the general rule prohibiting discovery of legal interpretations, the Attorney General can be compelled to provide his legal interpretation of a statute because the Attorney General is the State's "chief law enforcement officer." But Zeleny cites no authority for this purported exception to the general rule that litigants cannot be compelled to provide legal interpretations in discovery. Like any other civil litigant, the Attorney General is entitled to be protected against having to disclose his mental impression work production in discovery. Indeed, that concern is heightened here, where it is undisputed that the Attorney General has not

applied the statute against Zeleny, or relied on the meaning of "authorized participant" in any way that would harm Zeleny. As to the Attorney General, this is a quintessential purely legal challenge to the facial constitutionality of a state statute.

Similarly, Zeleny suggests that such discovery against the Attorney General is proper because the Attorney General allegedly has some degree of authority over the City of Menlo Park, which Zeleny alleges "enforce the criminal laws . . . pursuant to a delegation from the State." Zeleny also relies on the Court's earlier ruling on a motion to dismiss. But the Court's determination that the Attorney General is a proper defendant to defend a facial constitutional challenge to a state criminal statute does not mean that every action of every city in California can be imputed to the Attorney General, such that the Attorney General can be deemed to have "applied" the law to every individual who alleges that they have been harmed by a local government in California. Zeleny does not allege that the Attorney General, or anyone in the State, has taken any action against him, either directly or in concert with the City of Menlo Park. To the extent that the Attorney General has some degree of authority over local law enforcement activities, that does not equate to direct responsibility over—or knowledge of—the decisions of local agencies to allow or disallow First Amendment activities in each of California's hundreds of cities.

Nor is there any truth to Zeleny's suggestion that "[a]n interpretation by Becerra that is contrary to Zeleny's will likely lead to Zeleny's arrest if he resumes his protests." The Court, not the Attorney General, will determine whether Zeleny is an "authorized participant" that must be allowed to carry weapons as part of his protests in Menlo Park. Zeleny, Menlo Park, and the Attorney General will present their legal arguments to the Court, which will make a decision that will govern Zeleny's and Menlo Park's future conduct.

Finally, Zeleny cites other authorities in support of his argument that the relevant interrogatories are actually contention interrogatories, not requests for a legal interpretation. But in both *Salazar* and *Black Mountain Equities*, the interrogatories simply asked the party to identify what regulations might apply. They did not ask the parties what those authorities meant, or how they should be interpreted. By contrast, here Zeleny seeks a legal interpretation of the term "authorized participant." Such a request is not permissible. *See United States ex rel. Englund v. L.A. Cnty.*, 235 F.R.D. 675, 683 (E.D. Cal. 2006) (barring interrogatory seeking legal interpretation of statutory term).

Respectfully submitted,

s/ David Markevitch
David Markevitch
Affeld Grivakes LLP

Attorneys for Plaintiff Michael Zeleny

s/ John W. Killeen
John W. Killeen
Deputy Attorney General

Attorneys for California Attorney General
Xavier Becerra

Attestation per Local Rule 5-1:

I attest that each person whose electronic signature appears above has concurred in the electronic filing of this joint document and has authorized the use of their electronic signatures. Records supporting this concurrence are maintained by the filer and are available for inspection if needed.

Dated:  August 26, 2020                    s/ David Markevitch
                                           David Markevitch

## CERTIFICATE OF SERVICE

I, David Markevitch, hereby certify that I electronically filed the foregoing document using the Court's CM/ECF system on August 26, 2020. I am informed and believe that electronic filing using the CM/ECF results in electronic service on all interested parties.

Dated: August 26, 2020         s/ David Markevitch
                                       David Markevitch

David W. Affeld, State Bar No. 123922
Damion Robinson, State Bar No. 262573
David Markevitch, State Bar No. 256163
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:     (310) 979-8700

Attorneys for Plaintiff Michael Zeleny

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ZELENY,

     Plaintiff,

     vs.

GAVIN NEWSOM, *et al.*,

     Defendants.

Case No. CV 17-7357 JCS

<u>Assigned to:</u>
The Honorable Richard G. Seeborg

<u>Discovery Matters:</u>
The Honorable Thomas S. Hixson

**DECLARATION OF COUNSEL**

Action Filed:  December 28, 2017
Trial Date:     TBD

DECLARATION OF COUNSEL

I, David Markevitch, declare:

    1.    I, as counsel at Affeld Grivakes LLP, am counsel of record to plaintiff Michael Zeleny ("Plaintiff") in this matter. I have personal knowledge of the facts below and could testify competently to those facts if called upon to do so. I submit this declaration concurrently with a Joint Letter Brief Regarding Interrogatories Propounded to State of California and Attorney General Xavier Becerra.

    2.    A true copy of Discovery Order entered on June 9, 2020 in this case, ECF No. 132, is attached as **Exhibit 1**.

    3.    A true copy of correspondence dated June 10, 2020 from Damion Robinson, counsel for Plaintiff, to John Killeen, counsel for Defendant Attorney General Xavier Becerra, is attached as **Exhibit 2**.

    4.    A true copy of correspondence dated June 26, 2020 from John Killeen, counsel for Defendant Attorney General Xavier Becerra, to Damion Robinson, counsel for Plaintiff, is attached as **Exhibit 3**.

    5.    A true copy of Defendant Attorney General Xavier Becerra's Responses to Plaintiff Michael Zeleny's First Set of Interrogatories is attached as **Exhibit 4**.

    6.    A true copy of Defendant Attorney General Xavier Becerra's Responses to Plaintiff Michael Zeleny's Interrogatories, Set Two is attached as **Exhibit 5**.

    7.    A true copy of Order Granting in Part and Denying in Part Motion to Dismiss entered on April 17, 2018 in this case, ECF No. 37, is attached as **Exhibit 6**.

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on this 26th day of August 2020.

s/ David Markevitch         
David Markevitch

- 1 -

DECLARATION OF COUNSEL

### PROOF OF SERVICE

I hereby certify that on August 26, 2020, I electronically filed the foregoing document using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

Dated:  August 26, 2020

s/ David Markevitch
David Markevitch

DECLARATION OF COUNSEL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ZELENY,

Plaintiff,

v.

GAVIN NEWSOM, et al.,

Defendants.

Case No. 17-cv-07357-RS   (TSH)

**DISCOVERY ORDER**

Re: Dkt. No. 127

Plaintiff Michael Zeleny wants to carry unloaded firearms during his public protests. California generally bans "open carry," but there is an exception for an "authorized participant in . . . a motion picture, television or video production, or entertainment event[.]"  Cal. Penal Code § 26375; *see also id*. § 26405(r).  Unhelpfully, there is no statutory definition of an "authorized participant," nor a provision stating who does the authorizing.  There are no governing regulations either.  The City of Menlo Park takes the position that an "authorized participant" must have a City film or event permit.  Zeleny disagrees.  So, what we have here is a disagreement about a matter of statutory interpretation.

But there is an additional layer, because if the Court rejects Zeleny's interpretation of this statutory exception (which he seeks in paragraph B of his prayer for relief, *see* ECF No. 99 (Second Amended Complaint)), he wants the open carry laws struck down (which he seeks in paragraph A of the prayer for relief, *see id*.)  The California Attorney General ("AG") has been named as a defendant in this case, and he seeks to defend the state's open carry laws.  In his answer the AG also specifically denies that Zeleny is entitled to a declaration adopting his preferred interpretation of the "authorized participant" exception.  ECF No. 100, prayer for relief B.

United States District Court
Northern District of California

Zeleny has been trying to take discovery into the AG's interpretation of the "authorized participant" exception. In interrogatory ("rog") 10 he asked the AG if "authorized participant" means someone authorized by a governmental body or agency. The AG's response did not answer the question. In rog 22 he asked if someone who has a valid entertainment firearms permit under Penal Code section 29500 is an "authorized participant." The AG's response did not cleanly answer that question either, although it came closer.

Zeleny then served a Rule 30(b)(6) deposition notice on the AG concerning 20 topics about the meaning of the state's open and concealed carry laws and their exceptions, including the "authorized participant" exception. The AG put Blake Graham up as the deponent. When Zeleny's counsel asked the witness about the meaning of the "authorized participant" exception, the AG objected that the witness wasn't authorized to interpret a statute, and the witness refused to give a substantive answer. We are now here on Zeleny's motion to compel. ECF No. 127. He seeks an order compelling the state to produce a Rule 30(b)(6) witness who will answer his questions about the meaning of the open carry laws, or in the alternative, to produce AG Xavier Becerra himself for a deposition.

Although the gist of Zeleny's motion is clear enough, as an analytical matter it lacks precision because he doesn't identify which 30(b)(6) topics he is moving on. He doesn't seem to be moving on topics 1-5, which concern California's *concealed* carry laws. Likewise, his motion doesn't seem to cover topics 18-20, which deal with discovery responses and documents produced. He is definitely moving on topic 13 ("The interpretation of the Open Carry Statutes"). The Court supposes he is moving on topics 6-12 only to the extent that the AG thinks those issues bear on the interpretation of the open carry laws, and the same is probably true of topics 14-17. Accordingly, the Court construes this motion as being directed to topic 13, including whatever tools of statutory interpretation (such as legislative history, post-enactment enforcement, constitutional avoidance, and so on) the AG believes are relevant to topic 13.

The AG opposes the motion, arguing that while discovery into facts or the application of law to fact is allowed, Zeleny is trying to take discovery into pure issues of law. The AG also asserts that deposing Becerra personally is unwarranted under the apex doctrine.

2

United States District Court
Northern District of California

There are essentially three problems with this motion as it relates to the 30(b)(6) notice. The first is that "the interpretation of the open carry statutes" is too sweeping a topic for a witness to testify to. The ban on openly carrying an unloaded handgun itself has numerous subparts, *see* Cal. Penal Code § 26350, and could easily generate many law review articles interpreting it. And then there are 33 exceptions to the ban. Cal. Penal Code §§ 26361-26392. Zeleny's motion seems to demand a 30(b)(6) witness who can testify about the entirety of that statute and all of its exceptions. ECF No. 127 at 2 (criticizing the state for "refus[ing] to produce any witness who can take an official position on the meaning of the 'open carry ban,' including the exceptions thereto."). However, Rule 30(b)(6) requires a deposition notice to an entity to "describe with reasonable particularity the matters for examination," and topic 13 fails that requirement.

Second, the vast majority of what is covered by "the interpretation of the open carry statutes" is irrelevant to this case. There is no suggestion in the Second Amended Complaint that Zeleny wants to carry an unloaded handgun in a target range (Cal. Penal Code § 26377) or in an official parade (*id.* § 26368) or in a pawn shop (*id.* § 26374) or to train a dog to hunt (*id.* § 26366.5). In his motion, Zeleny emphasizes the importance to this lawsuit of the "authorized participant" exception. However, none of the 20 topics in the deposition notice are limited to the "authorized participant" exception, and certainly none are limited to or even cover whether Zeleny is an authorized participant, and if not, what authorization he needs. Indeed, once you put aside topics 9, 10 and 18-20, none of the topics have anything to do with the facts of this case. The topics seem to contemplate a witness who will give answers in the form of long, abstract essays about the meaning and interpretation of every provision of the open carry laws. There is too big of a disconnect between the relevant question of what Zeleny needs to do to become an "authorized participant," if he is not one already, and the topics in this deposition notice. Indeed, the case-specific subject of how the "authorized participant" exception *applies to Zeleny* is not even embraced in the notice.

But let's suppose the Court fixes the first two problems, such as by narrowing topic 13 to the meaning of the "authorized participant" exception, or by completely rewriting the deposition notice and turning this into a deposition about how the "authorized participant" exception applies

3

United States District Court
Northern District of California

to Zeleny. We then run into the third problem, which is that a 30(b)(6) deposition is not an appropriate vehicle for taking discovery into legal contentions. *See Lenz v. Universal Music Corp.*, 2010 WL 1610074, at *3 (N.D. Cal. April 20, 2010) (questions about legal contentions are "an improper topic for a Rule 30(b)(6) deposition"); *3M Co. v. Kanbar*, 2007 WL 1794936, at *2 (N.D. Cal. June 19, 2007) (topics "seeking legal conclusions . . . should not form the basis for 30(b)(6) deposition topics"). Rule 30(b)(6) has many great uses. It's helpful for a litigant who knows what he wants to depose an entity about but hasn't the faintest idea who possesses the right knowledge. It's helpful to force an entity to aggregate information known to multiple people, so the deposing party can learn the information in one deposition rather than ten. But Zeleny isn't using this deposition to obtain factual information, and oral testimony in which the witness has to answer questions on the spot about a party's legal contentions is an improper use of a deposition. The purpose of contention discovery is to bind your opponent to a position, but "'a Rule 30(b)(6) deponent's . . . legal conclusions do not bind the entity.'" *Snapp v. United Transp. Union*, 889 F.3d 1088, 1104 (9th Cir. 2018) (quoting 7 James Wm. Moore, et al., Moore's Federal Practice § 30.25[3] (3d ed. 2016)), *cert. denied sub nom. Snapp v. Burlington Northern Santa Fe Ry. Co.*, 139 S. Ct. 817 (2019). Rather, Rules 33 and 36 expressly contemplate that rogs and RFAs will be used to take contention discovery. *See* Fed. R. Civ. Proc. 33(a)(2) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact"); Fed. R. Civ. P. 36(a)(1)(A) (requests for admission may relate to "facts, the application of law to fact, or opinions about either").

Accordingly, the Court denies Zeleny's motion to compel the AG to produce a Rule 30(b)(6) deponent on the interpretation of the open carry laws. The Court also denies Zeleny's alternative request to depose Becerra. "Heads of government agencies are not normally subject to deposition," *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979). "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Apple Inc. v. Samsung Electronics, Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). As for the first prong, if Becerra knows

anything about the facts of this case, it would only be because an aide briefed him; he is named as a defendant only because, under *Ex parte Young*, 209 U.S. 123 (1908), that is the procedure for challenging the constitutionality of a state law that is enforced by the AG. As for the second prong, any relevant factual discovery would come from the City of Menlo Park. There is no basis to depose Becerra here.

**IT IS SO ORDERED.**

Dated: June 9, 2020

THOMAS S. HIXSON
United States Magistrate Judge

# AFFELD GRIVAKES LLP

2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Tel: (310) 979-8700
Fax: (310) 979-8701

Sender's email:
dr@agzlaw.com

June 10, 2020

John W. Killeen, Deputy Attorney General                          *Via Email*
Government Law Section
California Department of Justice, Office of
the Attorney General
1300 I Street, Suite 125
P.O. Box. 944255
Sacramento, CA 94244-2550

Re:     *Zeleny v. Newsom, et al.*, N.D. Cal. Case No. 17-7357
        Responses to Interrogatories

Dear John:

In light of the Court's ruling this afternoon, we would ask that Attorney General Becerra revisit and revise his responses to our interrogatories seeking an interpretation of the "authorized participant" exception. As Judge Hixson explained, interrogatories are a proper tool to determine a party's legal contentions. Order at p. 4. He also determined that the Attorney General has not properly answered contention interrogatories going to the exception:

> Zeleny has been trying to take discovery into the AG's interpretation of the "authorized participant" exception. In interrogatory ("rog") 10 he asked the AG if "authorized participant" means someone authorized by a governmental body or agency. The AG's response did not answer the question. In rog 22 he asked if someone who has a valid entertainment firearms permit under Penal Code section 29500 is an "authorized participant." The AG's response did not cleanly answer that question either, although it came closer. (Order at p. 2)

The Order is clear that these interrogatories are appropriate and that the answers given are not.

Based on the Order, substantive answers are required to the following interrogatories:

**Interrogatory No. 10**: Does the phrase 'authorized participant' as used in California Penal Code §§ 26375 and 26405(r) refer to a participant authorized by a governmental body or agency?

Noreen Skelly, Esq.
February 12, 2020
Page 2 of 2

**Interrogatory No. 11**: If Your answer to Interrogatory No. 10 is in the affirmative, identify the governmental bodies or agencies from which authorization is required?

**Interrogatory No. 12**: If Your answer to Interrogatory No. 10 is in the affirmative, state all bases for your contention that the phrase 'authorized participant,' as used in California Penal Code §§ 26375 and 26405(r), refers to a participant authorized by a governmental body or agency.

**Interrogatory No. 13**: If your answer to Interrogatory No. 10 is in the negative, state the persons or entities [*i.e.*, other than governmental agencies] whose authorization is required in order for California Penal Code §§ 26375 and 26405(r) to exempt the carrying of firearms from California Penal Code §§ 26350 and 26405.

**Interrogatory No. 14**: Do California Penal Code §§ 26375 and 26405(r) require that the "motion picture, television or video production" or "entertainment event" itself be authorized in order to exempt participants from California Penal Code §§ 26350 and 26405?

**Interrogatory No. 15**: If your response to Interrogatory No. 14 is in the affirmative, identify all persons or entities whose authorization of the "motion picture, television or video production" or "entertainment event" is required in order to exempt participants from California Penal Code §§ 26350 and 26405.

**Interrogatory No. 16**: State all of the bases for Your response to Interrogatory No. 14.

**Interrogatory No. 21**: Identify the types of events that qualify as "entertainment events" under California Penal Code §§ 26375, 26405(r), and 25510.

**Interrogatory No. 22**: Is an individual who has a valid "entertainment firearms permit" issued pursuant to Penal Code § 29500 an "authorized participant" within the meaning of penal Code §§ 26375 and 26405(r)?

**Interrogatory No. 23**: State all facts supporting your response to the preceding interrogatory.

**Interrogatory No. 24**: State all facts supporting your contention that the definition of "authorized participant" under Penal Code §§ 26375 and 26405(r) refers to a person with an "entertainment firearms permit" issued pursuant to Penal Code § 29500.

**Interrogatory No. 25**: Identify all documents supporting your contention that the definition of "authorized participant" under Penal Code §§ 26375 and 26405(r) refers to a person with an "entertainment firearms permit" issued pursuant to Penal Code § 29500.

All of these interrogatories are of the type that Judge Hixson mentioned in his Order. The Attorney General's answers are either "N/A" or are in the form that the Court found insufficient.

We simply need to know the Attorney General's interpretation of the statute before summary judgment briefing and trial – *i.e.*, how the Attorney General interprets "authorized participant" and why. Please let us know if you are willing to revise the responses consistent with the Court's Order today without further motion practice. If you would like to discuss this further, please feel free to call or email.

Sincerely,
s/ Damion Robinson
Damion Robinson

cc:     Todd H. Master, Esq.

**XAVIER BECERRA**
*Attorney General*

**State of California**
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public: (916) 445-9555
Telephone: (916) 210-6045
Facsimile: (916) 324-8835
E-Mail: John.Killeen@doj.ca.gov

June 26, 2020

*Via Email*

Mr. Damion Robinson
Mr. David Markevitch
Affeld Grivakes, LLP
2049 Century Park East, Suite 2460
Los Angeles, CA 90067

RE:   *Zeleny, Michael v. Gavin Newsom, et al.*
        USDC, Northern District of California, Case No. 3:17-cv-07357 RS

Dear Damion and David:

I am writing in response to your June 10 letter about Interrogatories 10 through 16 and 21 through 25. You seek additional or different answers to these interrogatories on the basis that they are "of the type that Judge Hixon mentioned in his Order."

In his order denying a further 30(b)(6) deposition of the Department of Justice and a personal deposition of Attorney General Becerra, Judge Hixson referred to the role of contention interrogatories in determining how a party applies the law to a specific set of facts, e.g., "how the authorized participant exception applies to Zeleny." *See* June 9 Order at 4.

But the interrogatories you identify do not seek to determine "how the authorized participant exception applies to Zeleny." The reason they do not is because there is no allegation in the complaint that the Attorney General has applied the law to Zeleny in any way, or is involved in his dispute with the other defendants. The Attorney General is named as a defendant only because the complaint asserts a facial challenge to certain provisions of the California Penal Code. Because Zeleny does not allege that the Attorney General has applied any of these statutes against him, Zeleny's facial claims against the Attorney General will involve pure issues of law. It will not involve any issues of fact, or issues of law applied to fact.

Interrogatories that seek pure legal conclusions untethered from the facts of the case are improper. "Rule 33 does not permit interrogatories directed to issues of 'pure law'—i.e., abstract legal issues not dependent on the facts of the case." Phillips & Stevenson, Rutter Group Practice Guide: Fed. Civ. Pro. Before Trial ¶ 11:1680 (The Rutter Group April 2020 Update); *see United States ex rel. Englund v. L.A. Cnty.*, 235 F.R.D. 675, 683 (E.D. Cal. 2006) (barring interrogatory seeking legal interpretation of statutory term); *Everest Nat'l Ins. Co. v. Santa Cruz Cnty. Bank,*

Damion Robinson
June 26, 2020
Page 2

No. 15CV02085BLFHRL, 2016 WL 6311876, at *4 (N.D. Cal. Oct. 28, 2016) (barring interrogatories seeking information about "abstract legal definitions or discussions entirely divorced from the factual context of this case"); *cf. Disability Rights Council v. Wash. Metro. Area*, 234 F.R.D. 1, 3 (D.D.C. 2006) (prohibiting requests for admission about specific terms in federal law).

Because Zeleny's dispute with the Attorney General involves only issues of "pure law"—the facial constitutionality of sections in the Penal Code—the Attorney General is not required to give Zeleny an advance copy of his attorney work product, which is effectively what these interrogatories seek.

Please let me know if you would like to discuss this issue further.

Sincerely,

JOHN W. KILLEEN
Deputy Attorney General

For    XAVIER BECERRA
Attorney General

JWK:EE

SA2018100198
34191320.docx

1  XAVIER BECERRA
   Attorney General of California
2  ANTHONY R. HAKL
   Supervising Deputy Attorney General
3  NOREEN P. SKELLY
   Deputy Attorney General
4  State Bar No. 186135
     1300 I Street, Suite 125
5    P.O. Box 944255
     Sacramento, CA 94244-2550
6    Telephone: (916) 210-6057
     Fax: (916) 324-8835
7    E-mail: Noreen.Skelly@doj.ca.gov
   *Attorneys for Defendant Attorney General Xavier*
8  *Becerra*

9

                    IN THE UNITED STATES DISTRICT COURT
10
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                         SAN FRANCISCO DIVISION
12

13

14  **MICHAEL ZELENY, an individual,**          3:17-cv-07357 RS (NC)

15                             Plaintiff,    **DEFENDANT ATTORNEY GENERAL**
                                             **XAVIER BECERRA'S RESPONSES TO**
16       v.                                  **PLAINTIFF MICHAEL ZELENY'S**
                                             **FIRST SET OF INTERROGATORIES**[2]
17
    **GAVIN NEWSOM**[1]**, an individual, in his**
18  **official capacity; XAVIER BECERRA, an**
    **individual, in his official capacity; CITY OF**
19  **MENLO PARK, a municipal corporation;**
    **and DAVE BERTINI, in his official**
20  **capacity,**

21                            Defendants.

22

23       PROPOUNDING PARTY:        Plaintiff Michael Zeleny

24       ANSWERING PARTY:          Defendant Attorney General Xavier Becerra

25       SET NUMBER:               One

26  ─────────────
         [1] Although Edmund G. Brown, Jr., sued in his official capacity as the Governor of
27  California, has been dismissed from this matter, Defendant Becerra updates the caption to
    substitute Governor Gavin Newsom for former Governor Edmund G. Brown, Jr., pursuant to Rule
28  25(d)(1) of the Federal Rules of Civil Procedure.
         [2] Verification to follow.

                                        1

1 **PRELIMINARY STATEMENT**

2     For purposes of these interrogatories, Plaintiff Zeleny has used the terms "YOU" and

3 "YOUR" to, "refer to Xavier Becerra as the Attorney General of the State of California. These

4 interrogatories seek the official position of the State of California." (Plaintiff Zeleny's

5 Interrogatories, p. 2, lines 22-24.) Defendant Becerra objects to Plaintiff Zeleny's definition of

6 "YOU" and "YOUR" as encompassing the official position of the State of California. The phrase

7 "the official position of the State of California" is vague and overbroad. The State of California

8 is made up of the Executive, Legislative, and Judicial branches of government, which are separate

9 and co-equal. California's Executive branch includes a number of elected officials including, but

10 not limited to the Attorney General of California. Moreover, the State of California is not a

11 defendant in this action—nor would it be an appropriate defendant in this action. As a general

12 matter, the proper respondent or defendant in a challenge to a state law or policy is the officer or

13 agency charged with implementing it. See *Serrano v. Priest*, 18 Cal.3d 728, 752 (1976); *State v.*

14 *Superior Court, 12 Cal.3d 237, 255* (1974).

15     Defendant Becerra objects to each interrogatory to the extent that it purports to impose any

16 obligation or requirement greater than or different to the obligations or requirements set forth in

17 the Federal Rules of Civil Procedure and/or the applicable rules and orders of this Court.

18     Defendant Becerra objects to each interrogatory to the extent that it calls for the disclosure

19 of information protected from disclosure by the attorney work-product doctrine, the attorney-

20 client privilege, the deliberative process privilege and/or any other applicable privilege or

21 protection. Should Defendant Becerra disclose any privileged or otherwise protected information

22 in these responses, the disclosure is inadvertent and does not constitute a waiver of the privilege

23 or protection.

24     Defendant Becerra has not completed the investigation of the facts and issues relating to

25 Plaintiff Zeleny's claims and has not completed discovery in this action. All of the answers

26 contained herein are based solely upon information and documents which are presently available

27 to, and specifically known by, Defendant Becerra, and the answers disclose only those

28 contentions which presently occur to Defendant Becerra. Further discovery, independent

2

1   investigation, legal research and analysis may supply additional facts and may lead to additions,

2   changes, and variations from the answers herein.

3       The following answers are given without prejudice to the right to produce evidence and/or

4   witnesses or rely on facts which Defendant Becerra may later discover.  Defendant Becerra

5   accordingly reserves the right to change any and all answers herein as additional facts are

6   ascertained, witnesses identified and legal research is completed.  The answers contained herein

7   are made in good faith in an attempt to supply as much factual information and as much

8   specification of legal contention as is presently known, and in no way prejudices Defendant

9   Becerra in relation to further discovery and proceedings.

10      Defendant Becerra incorporates by reference every general objection set forth above into

11  each specific answer set forth below.  A specific response may repeat a general objection for

12  emphasis or some other reason.  The failure to include a general objection in any specific answer

13  does not waive any general objection to that interrogatory.

14      **INTERROGATORY NO. 1**:  State all facts on which You base Your contention, if any,

15  that California Penal Code § 26350 is constitutional under the Second Amendment, including any

16  legitimate goals or public interests intended to be served by that statute.

17      [As used in these interrogatories,

18      (a) "You" and "Your" refer to Xavier Becerra as the Attorney General of the State of

19  California.  These interrogatories seek the official position of the State of California;

20      (b) "Second Amendment" means the Second Amendment to the United States

21  Constitution].

22      **RESPONSE TO INTERROGATORY NO. 1:**

23      Defendant Becerra incorporates by reference the above-stated general objections as though

24  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

25  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

26  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

27  that is relevant to Plaintiff's claims.  Defendant Becerra also objects to this interrogatory on the

28  grounds that it seeks Defendant Becerra's contentions regarding the constitutionality of California

1    Legislature considered including other forms of "speech or expressive conduct" in enacting Penal

2    Code §§ 26375 and 26405, subdivision (r). Thus, Defendant Becerra is unable to respond to this

3    interrogatory.

4    **INTERROGATORY NO. 9**: Identify all documents bearing upon, supporting, or

5    reflecting the reasons set forth in Your response to the preceding interrogatory.

6    **RESPONSE TO INTERROGATORY NO. 9:**

7    Defendant Becerra incorporates by reference the above-stated general objections as though

8    fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it is

9    vague and overbroad, and unduly burdensome. Moreover, it seeks information irrelevant to

10    Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

11    that is relevant to Plaintiff's claims.

12    Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

13    follows: N/A.

14    **INTERROGATORY NO. 10**: Does the phrase "authorized participant" as used in

15    California Penal Code §§ 26375 and 26405(r) refer to a participant authorized by a governmental

16    body or agency?

17    **RESPONSE TO INTERROGATORY NO. 10:**

18    Defendant Becerra incorporates by reference the above-stated general objections as though

19    fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it is

20    vague and overbroad. Moreover, it seeks information irrelevant to Plaintiff Zeleny's claims, and

21    not reasonably calculated to lead to the discovery of information that is relevant to Plaintiff's

22    claims.

23    Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

24    follows: Penal Code §§ 26375 and 26405, subdivision (r) do not include definitions of the phrase

25    "authorized participant."

26    However, according to the Legislative history of Penal Code § 26375, that section permits

27    the use of unloaded handguns as an "entertainment props." (See DOJ 000219) Additionally, the

28    Entertainment Firearms Permit only authorizes the permit holder "to possess firearms loaned to

1  the permitholder for use solely as a prop in a motion picture, television, video, theatrical, or other

2  entertainment production or event." (Penal Code § 29500.) Thus, the exceptions set forth in

3  Penal Code §§ 26375 and 26405, subdivision (r) are available only to those using unloaded

4  firearms loaned to them for use as "entertainment props" in a motion picture, television, video,

5  theatrical, or other entertainment production or event.

6      **INTERROGATORY NO. 11**: If Your answer to Interrogatory No. 10 is in the

7  affirmative, identify the governmental bodies or agencies from which authorization is required?

8      **RESPONSE TO INTERROGATORY NO. 11:**

9      Defendant Becerra incorporates by reference the above-stated general objections as though

10  fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it is

11  vague and overbroad, and unduly burdensome. Moreover, it seeks information irrelevant to

12  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

13  that is relevant to Plaintiff's claims.

14      Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

15  follows: N/A.

16      **INTERROGATORY NO. 12**: If Your answer to Interrogatory No. 10 is in the

17  affirmative, state all bases for your contention that the phrase "authorized participant," as used in

18  California Penal Code §§ 26375 and 26405(r), refers to a participant authorized by a

19  governmental body or agency?

20      **RESPONSE TO INTERROGATORY NO. 12:**

21      Defendant Becerra incorporates by reference the above-stated general objections as though

22  fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it is

23  vague and overbroad, and unduly burdensome. Moreover, it seeks information irrelevant to

24  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

25  that is relevant to Plaintiff's claims.

26      Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

27  follows: N/A.

28

1  **INTERROGATORY NO. 13**: If your answer to Interrogatory No. 10 is in the negative,

2  state the persons or entities whose authorization is required in order for California Penal Code §§

3  26375 and 26405(r) to exempt the carrying of firearms from California Penal Code §§ 26350 and

4  26405.

5  **RESPONSE TO INTERROGATORY NO. 13**:

6  Defendant Becerra incorporates by reference the above-stated general objections as though

7  fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it is

8  vague and overbroad. Moreover, it seeks information irrelevant to Plaintiff Zeleny's claims, and

9  not reasonably calculated to lead to the discovery of information that is relevant to Plaintiff's

10  claims.

11  Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

12  follows: The Legislature enacted certain exceptions to the general prohibitions on openly carrying

13  firearms.

14  Penal Code § 26375 provides that section 26350 does not apply to, or affect, the open

15  carrying of an unloaded handgun by an authorized participant in, or an authorized employee or

16  agent of a supplier of firearms for, a motion picture, television or video production, or

17  entertainment event, when the participant lawfully uses the handgun as part of that production or

18  event, as part of rehearsing or practicing for participation in that production or event, or while the

19  participant or authorized employee or agent is at that production or event, or rehearsal or practice

20  for that production or event. (Pen. Code, § 26375.) According to the Legislative history, Penal

21  Code § 26375 permits the use of unloaded handguns as an "entertainment props." (See DOJ

22  000219)

23  Likewise, Penal Code § 26405, subdivision (r) provides that Penal Code § 26400 does not

24  apply to, or affect, the carrying of an unloaded firearm that is not a handgun by an authorized

25  participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture,

26  television, or video production or entertainment event, when the participant lawfully uses that

27  firearm as part of that production or event, as part of rehearsing or practicing for participation in

28

26

1  that production or event, or while the participant or authorized employee or agent is at that

2  production or event, or rehearsal or practice for that production or event.

3      And, Penal Code § 29500 provides that, "Any person who is at least 21 years of age may

4  apply for an entertainment firearms permit from the Department of Justice. An entertainment

5  firearms permit authorizes the permit holder to possess firearms loaned to the permitholder for

6  use solely as a prop in a motion picture, television, video, theatrical, or other entertainment

7  production or event." (Added by Stats.2010, c. 711 (S.B. 1080).)

8      **INTERROGATORY NO. 14:** Do California Penal Codes §§ 26375 and 26405(r) require

9  that the "motion picture, television or video production" or "entertainment event" itself be

10 authorized in order to exempt participants from California Penal Code §§ 26350 and 26405?

11     **RESPONSE TO INTERROGATORY NO. 14:**

12     Defendant Becerra incorporates by reference the above-stated general objections as though

13 fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it is

14 vague and overbroad, and unduly burdensome. Moreover, it seeks information irrelevant to

15 Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

16 that is relevant to Plaintiff's claims.

17     Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

18 follows: Penal Code §§ 26375 and 26405(r) do not address whether the "motion picture,

19 television or video production" or "entertainment event" itself be authorized in order to exempt

20 participants from California Penal Code §§ 26350 and 26405. Accordingly, Defendant Becerra is

21 unable to respond to this interrogatory.

22     **INTERROGATORY NO. 15:** If your response to Interrogatory No. 14 is in the

23 affirmative, identify all persons or entities whose authorization of the "motion picture, television

24 or video production" or "entertainment event" is required in order to exempt participants from

25 California Penal Code §§ 26350 and 26405.

26     **RESPONSE TO INTERROGATORY NO. 15:**

27     Defendant Becerra incorporates by reference the above-stated general objections as though

28 fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it is

27

1   vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

2   Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

3   that is relevant to Plaintiff's claims.

4       Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

5   follows: N/A.

6       **INTERROGATORY NO. 16**:  State all of the bases for Your response to Interrogatory

7   No. 14.

8       **RESPONSE TO INTERROGATORY NO. 16**:

9       Defendant Becerra incorporates by reference the above-stated general objections as though

10  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

11  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

12  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

13  that is relevant to Plaintiff's claims.

14      Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

15  follows: N/A.

16      **INTERROGATORY NO. 17**:  State all facts supporting your interpretation of California

17  Penal Code §§ 26375 and 26405(r).

18      **RESPONSE TO INTERROGATORY NO. 17**:

19      Defendant Becerra incorporates by reference the above-stated general objections as though

20  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

21  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

22  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

23  that is relevant to Plaintiff's claims.

24      Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

25  follows:  Defendant Becerra has not issued an interpretation of California Penal Code §§ 26375

26  and 26405, subdivision (r).  However, the California Department of Justice does possess

27  documents that are related to firearms generally.  See and DOJ 0001282-DOJ 001312.

28

Dated:  April 3, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

NOREEN P. SKELLY
Deputy Attorney General
*Attorneys for Defendant Attorney General*
*Xavier Becerra*

31

## DECLARATION OF SERVICE BY OVERNIGHT COURIER

Case Name:  **Zeleny, Michael v. Edmund G. Brown, et al.**

No.:  **3:17-cv-07357 RS (NC)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is: 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550.

On April 3, 2019, I served the attached **DEFENDANT ATTORNEY GENERAL XAVIER BECERRA'S RESPONSES TO PLAINTIFF MICHAEL ZELENY'S FIRSTS SET OF INTERROGATORIES** by placing a true copy thereof enclosed in a sealed envelope with the **Golden State Overnight**, addressed as follows:

David William Affeld
Damion D. D. Robinson
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, CA  90067
Tel:     (310) 979-8700
Fax:     (310) 979-8701
Email: dwa@agzlaw.com
           dr@agzlaw.com
*Attorneys for Plaintiff*

Todd H. Master
Howard Rome Martin & Ridley LLP
1900 O'Farrell Street, Suite 280
San Mateo, CA  94403
Tel:     (650) 365-7715
Fax:     (650) 364-5297
Email: tmaster@hrmrlaw.com
*Attorneys for Defendants City of Menlo Park and Dave Bertini*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 3, 2019, at Sacramento, California.

_____
Eileen A. Ennis
Declarant

_____
Signature

SA2018100198
13607465.docx13607465.DOCX

1 XAVIER BECERRA
Attorney General of California
2 ANTHONY R. HAKL
Supervising Deputy Attorney General
3 NOREEN P. SKELLY
Deputy Attorney General
4 JOHN W. KILLEEN
Deputy Attorney General
5 State Bar No. 258395
1300 I Street, Suite 125
6 P.O. Box 944255
Sacramento, CA 94244-2550
7 Telephone: (916) 210-6045
Fax: (916) 324-8835
8 E-mail: John.Killeen@doj.ca.gov
*Attorneys for Defendant Attorney General Xavier*
9 *Becerra*

10                IN THE UNITED STATES DISTRICT COURT

11            FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14

15 | **MICHAEL ZELENY, an individual,** | 3:17-cv-07357 RS

16 | Plaintiff, | **DEFENDANT ATTORNEY GENERAL XAVIER BECERRA'S RESPONSES TO**

17 | v. | **PLAINTIFF MICHAEL ZELENY'S INTERROGATORIES, SET TWO**

18 | **GAVIN NEWSOM, an individual, in his**

19 | **official capacity; XAVIER BECERRA, an individual, in his official capacity; CITY OF**

20 | **MENLO PARK, a municipal corporation; and DAVE BERTINI, in his official**

21 | **capacity,**

22 | Defendants.

23

24       PROPOUNDING PARTY:        Plaintiff Michael Zeleny

25       ANSWERING PARTY:          Defendant Attorney General Xavier Becerra

26       SET NUMBER:               Two

27 / / /

28 / / /

1

# PRELIMINARY STATEMENT

Defendant Becerra objects to each interrogatory to the extent that it purports to impose any obligation or requirement greater than or different to the obligations or requirements set forth in the Federal Rules of Civil Procedure and/or the applicable rules and orders of this Court.

Defendant Becerra objects to each interrogatory to the extent that it calls for the disclosure of information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, the deliberative process privilege and/or any other applicable privilege or protection. Should Defendant Becerra disclose any privileged or otherwise protected information in these responses, the disclosure is inadvertent and does not constitute a waiver of the privilege or protection.

Defendant Becerra objects to each interrogatory to the extent that it calls for him to interpret what the Legislature intended when it drafted any of the statutory provisions at issue in this case.

Defendant Becerra has not completed the investigation of the facts and issues relating to Plaintiff Zeleny's claims and has not completed discovery in this action. All of the answers contained herein are based solely upon information and documents which are presently available to, and specifically known by, Defendant Becerra, and the answers disclose only those contentions which presently occur to Defendant Becerra. Further discovery, independent investigation, legal research and analysis may supply additional facts and may lead to additions, changes, and variations from the answers herein.

The following answers are given without prejudice to the right to produce evidence and/or witnesses or rely on facts which Defendant Becerra may later discover. Defendant Becerra accordingly reserves the right to change any and all answers herein as additional facts are ascertained, witnesses identified and legal research is completed. The answers contained herein are made in good faith in an attempt to supply as much factual information and as much specification of legal contention as is presently known, and in no way prejudices Defendant Becerra in relation to further discovery and proceedings.

2

1  Defendant Becerra incorporates by reference every general objection set forth above into

2  each specific answer set forth below.  A specific response may repeat a general objection for

3  emphasis or some other reason.  The failure to include a general objection in any specific answer

4  does not waive any general objection to that interrogatory.

5  **INTERROGATORY NO. 22**:  Is an individual who has a valid "entertainment firearms

6  permit" issued pursuant to Penal Code § 29500 an "authorized participant" within the meaning of

7  Penal Code §§ 26375 and 26405(r)?

8  **RESPONSE TO INTERROGATORY NO. 22**:

9  Defendant Becerra incorporates by reference the above-stated general objections as though

10  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it poses

11  a question of pure law.  Defendant Becerra is not required to respond to interrogatories raising

12  questions of pure law.  See *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR (JSC),

13  2014 WL 7188779, at *5 (N.D. Cal. Dec. 16, 2014) ("[I]nterrogatories directed to issues of 'pure

14  law'—i.e., abstract legal issues not dependent on the facts of the case are not permitted") (citation

15  and some internal punctuation omitted).  Defendant Becerra also objects to this interrogatory

16  because it calls for him to interpret what the Legislature intended when it drafted any of the

17  statutory provisions at issue in this case.

18  Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

19  follows: Penal Code §§ 26375 and 26405, subdivision (r) do not include definitions of the phrase

20  "authorized participant."  Thus, what the Legislature intended by that phrase is a question of

21  statutory interpretation.

22  However, according to the Legislative history of Penal Code § 26375, that section permits

23  the use of unloaded handguns as an "entertainment props."  (See DOJ 000219)  Additionally, the

24  Entertainment Firearms Permit authorizes the permit holder "to possess firearms loaned to the

25  permitholder for use solely as a prop in a motion picture, television, video, theatrical, or other

26  entertainment production or event."  (Penal Code § 29500.)  Thus, it is possible to infer that the

27  Legislature intended the exceptions set forth in Penal Code §§ 26375 and 26405, subdivision (r)

28  to be available only to those using unloaded firearms loaned to them for use as "entertainment

3

props" in a motion picture, television, video, theatrical, or other entertainment production or event.

**INTERROGATORY NO. 23**: State all facts supporting your response to the preceding interrogatory.

**RESPONSE TO INTERROGATORY NO. 23**:

Defendant Becerra incorporates by reference the above-stated general objections as though fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it poses a question of pure law. Defendant Becerra is not required to respond to interrogatories raising questions of pure law. See *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR (JSC), 2014 WL 7188779, at *5 (N.D. Cal. Dec. 16, 2014) ("[I]nterrogatories directed to issues of 'pure law'—i.e., abstract legal issues not dependent on the facts of the case are not permitted") (citation and some internal punctuation omitted). Defendant Becerra also objects to this interrogatory because it calls for him to interpret what the Legislature intended when it drafted any of the statutory provisions at issue in this case.

Subject to, and without waiving the foregoing objections, Defendant Becerra responds as follows: Penal Code §§ 26375 and 26405, subdivision (r) do not include definitions of the phrase "authorized participant." Thus, what the Legislature intended by that phrase is a question of statutory interpretation.

However, according to the Legislative history of Penal Code § 26375, that section permits the use of unloaded handguns as an "entertainment props." (See DOJ 000219) Additionally, the Entertainment Firearms Permit authorizes the permit holder "to possess firearms loaned to the permitholder for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event." (Penal Code § 29500.) Thus, it is possible to infer that the Legislature intended the exceptions set forth in Penal Code §§ 26375 and 26405, subdivision (r) to be available only to those using unloaded firearms loaned to them for use as "entertainment props" in a motion picture, television, video, theatrical, or other entertainment production or event.

4

1    **INTERROGATORY NO. 24**: State all facts supporting your contention that the definition of

2    "authorized participant" under Penal Code §§ 26375 and 26405(r) refers to a person with an

3    "entertainment firearms permit" issued pursuant to Penal Code § 29500.

4    **RESPONSE TO INTERROGATORY NO. 24**:

5    Defendant Becerra incorporates by reference the above-stated general objections as though

6    fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it poses

7    a question of pure law. Defendant Becerra is not required to respond to interrogatories raising

8    questions of pure law. See *AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-cv-03393-YGR (JSC),

9    2014 WL 7188779, at *5 (N.D. Cal. Dec. 16, 2014) ("[I]nterrogatories directed to issues of 'pure

10   law'—i.e., abstract legal issues not dependent on the facts of the case are not permitted") (citation

11   and some internal punctuation omitted).

12   Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

13   follows: Defendant Becerra has not made this contention. What the Legislature intended when it

14   used the phrase "authorized participant" is a question of statutory interpretation.

15   **INTERROGATORY NO. 25**: Identify all documents bearing upon, supporting, or

16   reflecting the facts set forth in Your response to the preceding interrogatory.

17   **RESPONSE TO INTERROGATORY NO. 25**:

18   Defendant Becerra incorporates by reference the above-stated general objections as though

19   fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it is

20   vague and overbroad, and unduly burdensome. Moreover, it seeks information irrelevant to

21   Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

22   that is relevant to Plaintiff's claims.

23   Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

24   follows: N/A.

25   ///

26   ///

27   ///

28   ///

5

Dated: March 13, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General

NOREEN P. SKELLY
Deputy Attorney General
JOHN W. KILLEEN
Deputy Attorney General
*Attorneys for Defendant Attorney General Xavier Becerra*

6

Defendant Xavier Becerra's Responses to Plaintiff's Interrogatories, Set Two  (3:17-cv-07357 RS)

# DECLARATION OF SERVICE BY OVERNIGHT COURIER

Case Name:   **Zeleny, Michael v. Edmund G. Brown, et al.**

No.:   **3:17-cv-07357 RS (NC)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is: 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550.

On March 13, 2020, I served the attached **DEFENDANT ATTORNEY GENERAL XAVIER BECERRA'S RESPONSES TO PLAINTIFF MICHAEL ZELENY'S INTERROGATORIES, SET TWO** by placing a true copy thereof enclosed in a sealed envelope with the **GOLDEN STATE OVERNIGHT COURIER SERVICE**, addressed as follows:

David William Affeld
Damion D. D. Robinson
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel:    (310) 979-8700
Fax:    (310) 979-8701
Email: dwa@agzlaw.com
          dr@agzlaw.com
*Attorneys for Plaintiff*

Todd H. Master
Howard Rome Martin & Ridley LLP
1900 O'Farrell Street, Suite 280
San Mateo, CA 94403
Tel:    (650) 365-7715
Fax:    (650) 364-5297
Email: tmaster@hrmrlaw.com
*Attorneys for Defendants City of Menlo Park
and Dave Bertini*

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on March 13, 2020, at Sacramento, California.

_____
Tracie L. Campbell
Declarant

*Tracie Campbell*
Signature

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ZELENY,

Plaintiff,

v.

EDMUND G. BROWN, et al.,

Defendants.

Case No. 17-cv-07357-RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff Michael Zeleny brings this action against California Governor Edmund G. Brown, Attorney General Xavier Becerra, the City of Menlo Park, and Commander of the Menlo Park Police Department Dave Bertini, alleging a number of constitutional claims in connection with municipal efforts to prevent him from engaging in protest-related activities involving an unloaded firearm. Governor Brown and Attorney General Becerra move to dismiss for lack of subject matter jurisdiction. For the reasons explained below, the motion is granted with respect to Governor Brown and denied as to Attorney General Becerra.

## II. BACKGROUND[1]

---

[1] The factual background is based on the averments in the complaint, which must be taken as true for purposes of this motion.

United States District Court
Northern District of California

Between 2005 and 2012, Zeleny conducted a series of public protests in Menlo Park against WebEx Communications, Inc. and members of its senior management. In an effort to draw attention to his protests, Zeleny began openly carrying and displaying unloaded weapons. This type of display was lawful until the 2012 enactment of California Penal Code section 26350, which made openly carrying an unloaded handgun in public a misdemeanor. In 2013, California adopted similar restrictions on firearms other than handguns, codified as Penal Code section 26400. Penal Code sections 25510, 26375, and 26405 make exceptions, however, for authorized participants in certain scenarios, including entertainment events.

Based on these statutes, the City of Menlo Park adopted a municipal policy requiring a permit for video productions involving firearms. From 2015, Zeleny has repeatedly applied to the city for entertainment permits in connection with his armed protests, but the applications have all been denied without explanation. In addition, the city informed Zeleny that if he engages in his protests without a permit, he will be prosecuted for violations of the above-mentioned statutes. Zeleny seeks, among other things, a judgment declaring sections 26350 and 26400 unconstitutional and an injunction prohibiting the enforcement of these sections against him.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)[2] challenges the court's subject matter jurisdiction over the asserted claims. A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). A district court accepts all

---

[2] In their Reply brief, defendants assert for the first time that Claim 5 of the complaint should be dismissed for failure to state a claim under Federal Rule of Procedure 8 because it is "ambiguous, confusing, and improperly pleaded." Reply at 2. Defendants attempt to justify the belated inclusion of 12(b)(6) objections by claiming they were not on notice that Zeleny intended to challenge the constitutionality of California's open carry law until the filing of his opposition. This explanation is unpersuasive, as it is clear from the first sentence of Zeleny's complaint that he seeks to raise such a challenge. Because Zeleny lacked the opportunity to respond, a ruling on defendants' newly raised 12(b)(6) motion will not issue at this time. In any event, although Claim 5 is far from artfully pled, it appears to outline sufficiently the constitutional grounds upon which Zeleny seeks invalidation of California's open carry law.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 17-cv-07357-RS

2

United States District Court
Northern District of California

1   allegations of fact in the complaint as true and construes them in the light most favorable to the

2   plaintiff. *Id.* at 1140.

3                                    **IV. DISCUSSION**

4          As an initial matter, Zeleny does not oppose dismissal of Governor Brown from this

5   action. Accordingly, the motion to dismiss is granted with respect to Governor Brown.

6          Attorney General Becerra moves to dismiss the single claim asserted against him on the

7   grounds that the injury Zeleny complains of is not fairly traceable to Becerra. Even if Zeleny could

8   demonstrate standing, Becerra argues, the Eleventh Amendment grants him immunity from suit.

9          **A. Standing**

10         To satisfy constitutional standing, "a plaintiff must show (1) it has suffered an 'injury in

11  fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or

12  hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

13  likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

14  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000). As

15  the party seeking to invoke a court's jurisdiction, plaintiffs bear the burden of establishing

16  constitutional standing by alleging, among other things "a causal connection between [their] injury

17  and the conduct complained of." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134

18  (2011) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

19         Here, Becerra challenges Zeleny's standing based on a purported failure to show causation

20  and redressability. More specifically, Becerra contends that the Attorney General has "no

21  connection" to Zeleny's potential prosecution by a local prosecutor. To the contrary, where a state

22  Attorney General may assume the role of a district attorney, the Attorney General has a sufficient

23  connection to the enforcement of the state's criminal laws to be a proper defendant in suits

24  challenging their constitutionality. *Planned Parenthood of Idaho v. Wasden*, 376 F.3d 908, 919–20

25  (9th Cir. 2004). In California, the Attorney General "has charge, as attorney, of all legal matters in

26  which the state is interested" and may "take full charge of any investigation or prosecution of

27  violations of law," with "*all the powers of a district attorney*." Cal. Gov't Code §§ 12511 & 12550

28
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 17-cv-07357-RS

United States District Court
Northern District of California

3

1    (emphasis added); *see also Pitts v. County of Kern*, 17 Cal. 4th 340, 357 (1998) (noting that article

2    V, section 13, of the California Constitution gives the Attorney General supervisory authority over

3    all district attorneys, including the power to enforce or assist with the enforcement of California

4    law at his or her discretion). That is, Becerra may in effect be deputized to stand in the role of a

5    county prosecutor, and in that role exercise the same power to enforce state statutes as the county

6    prosecutor would. *See Wasden*, 376 F.3d at 920. That power demonstrates the requisite causal

7    connection for standing purposes. *Id.*; *see also Nichols v. Brown*, 945 F. Supp. 2d 1079, 1106

8    (C.D. Cal. 2013). Thus, an injunction against the Attorney General could redress Zeleny's alleged

9    injuries, just as an injunction against the county prosecutor could. *See Wasden*, 376 F.3d at 920.

10   Therefore, Zeleny has established sufficient causation and redressability for standing to bring the

11   claim against the Attorney General.

12       **B. Eleventh Amendment Immunity**

13       The Eleventh Amendment bars actions brought in federal court against an unconsenting

14   state by her own citizens as well as by citizens of another state. *Hans v. Louisiana*, 134 U.S. 1, 9-

15   21 (1890). The Eleventh Amendment also "bars suits which seek damages or injunctive relief

16   against a state, an arm of the state, its instrumentalities, or its agencies." *Franceschi v. Schwartz*,

17   57 F.3d 828, 831 (9th Cir. 1995) (internal quotation marks omitted). An exception under *Ex Parte*

18   *Young*, 209 U.S. 123 (1908), however, allows suits against state officers in their official capacities

19   "for prospective declaratory or injunctive relief . . . for their alleged violations of federal law."

20   *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). The state

21   official must have *some connection* with the enforcement of the law. *Id.* That connection "must be

22   fairly direct; a generalized duty to enforce state law or general supervisory power over the persons

23   responsible for enforcing the challenged provision will not subject an official to suit." *Id.* (quoting

24   *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir.1992)).

25       Here, Becerra argues unpersuasively that his connection to the statutes challenged by

26   Zeleny is insufficient for the *Ex Parte Young* exception to apply. As explained above, the

27   California Attorney General not only has "direct supervision over every district attorney," but also

28       ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
     CASE NO. 17-cv-07357-RS

has the duty "to prosecute any violations of law . . . [and] shall have all the powers of a district attorney," whenever he believes that the law is not being adequately enforced. Cal. Const. art. V, § 13. Because Becerra has the authority to prosecute Zeleny directly for violations of California law, Zeleny has established a sufficient connection between the Attorney General's enforcement power and the penal statutes at issue in this case to invoke *Ex Parte Young*. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943–44 (9th Cir. 2013) (finding the Eleventh Amendment did not bar suit against the California Attorney General to enjoin the enforcement of the state's ban on foie gras). If Becerra had affirmatively declared he will not enforce the statutes in question, he could have challenged Zeleny's standing based on "an unripe controversy." *Id.* The Attorney General, however, makes no such challenge. Accordingly, Becerra is not entitled to Eleventh Amendment immunity.[3]

## V. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted with respect to Governor Brown and denied as to Attorney General Becerra.

**IT IS SO ORDERED**.

Dated: April 17, 2018

RICHARD SEEBORG
United States District Judge

---

[3] As required for an exception to Eleventh Amendment immunity under *Ex Parte Young*, Zeleny seeks only declaratory and injunctive relief on his claim against Becerra. Zeleny's prayer for attorney's fees and costs is ancillary relief and therefore, allowed under *Ex Parte Young*. *See Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016).

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
CASE NO. 17-cv-07357-RS

5

United States District Court
Northern District of California

# EXHIBIT 4

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ZELENY,

               Plaintiff,

      v.

GAVIN NEWSOM, et al.,

               Defendants.

Case No. 17-cv-07357-RS (TSH)

**DISCOVERY ORDER**

Re: Dkt. No. 135

Depending on the lawsuit, contention discovery can be important. It is specifically authorized by Federal Rule of Civil Procedure 33(a)(2), which provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . ." So, in a breach of contract case, it's not enough to produce the contract and some witnesses who testify about events that happened; if the other side serves an interrogatory asking why you think their conduct breached the contract, you have to tell them. You are not entitled to claim that your legal theories of the case are work product, and then surprise your opponent when you move for summary judgment. Fact discovery includes disclosing your contentions.

Plaintiff Michael Zeleny wants to carry unloaded firearms during his public protests. California generally bans "open carry," but there is an exception for an "authorized participant in . . . a motion picture, television or video production, or entertainment event[.]" Cal. Penal Code § 26375; *see also id*. § 26405(r). Unhelpfully, there is no statutory definition of an "authorized participant," nor a provision stating who does the authorizing. There are no governing regulations either. In this case Zeleny seeks a declaration "that California Penal Code §§ 25510, 26375, and 26405 do not require municipal approval of 'authorized participants' in an entertainment event or

film or video production, and that Zeleny is legally permitted to carry unloaded firearms in

connection with his entertainment events and/or his film or video productions, without the need

for City approval, subject to compliance with other applicable laws . . ." ECF No. 99 (Second

Amended Complaint), prayer for relief B. The California Attorney General ("AG") denies that

Zeleny is entitled to this declaration. ECF No. 100, prayer for relief B.

Zeleny has been trying to take discovery into why the AG contends that Zeleny is not

entitled to carry unloaded firearms in connection with his protests, but the AG won't tell him.

Zeleny is smart enough to understand that the answer is probably not specific to him, or to people

whose last name begins with "Z," or to events that happen in Menlo Park as opposed to elsewhere

is California. So, he has phrased his questions at the level of generality at which the answer

presumably is. Still, that does not mean that his interrogatories 10-16 and 22-25 are asking pure

questions of law because they are asking about *his* situation. Interrogatory 10 asks whether an

"authorized participant" means someone authorized by a governmental body or agency because

Zeleny lacks that type of authorization. (It's an interesting question, by the way. You could read

the statute to mean that the person has to be authorized merely by the organizer of the event.)

Interrogatories 11 and 12 ask what those government bodies or agencies are, and why the AG

thinks that. Interrogatory 13 asks the AG, if Zeleny doesn't need governmental approval, then

whose approval does he need – because he doesn't have anyone's approval other than his own.

Interrogatories 14, 15 and 16 ask for the AG's contentions with respect to whether the

entertainment event (as opposed to the participant) needs to be authorized – because Zeleny's

aren't. And interrogatories 22-25 ask questions about whether someone who has an

"entertainment firearms permit" under Penal Code § 29500 is an authorized participant because

Zeleny doesn't have one of those permits any more.

All of these interrogatories are just asking variants of the same question: *Why do you*

*contend that I am not an authorized participant?* In each rog, he points to something about his

factual situation (no governmental approval, no approval by anyone else, no approval for the

event, no entertainment firearms permit) and asks *is this the reason?* He is not asking pure

questions of law because each interrogatory asks the AG to apply the law to the facts of this case.

2

Zeleny is entitled to learn the answers to his questions sooner than when he reads the AG's summary judgment motion. The Court overrules the AG's objections and orders him to respond fully to interrogatories 10-16 and 22-25 within 21 days.

**IT IS SO ORDERED.**

Dated: September 4, 2020

THOMAS S. HIXSON
United States Magistrate Judge

# CERTIFICATE OF SERVICE

Case Name:   **Zeleny, Michael v. Edmund G.**        No.    **3:17-cv-07357 RS (NC)**
　　　　　　 **Brown, et al.**

I hereby certify that on <u>September 16, 2020</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DECLARATION OF JOHN W. KILLEEN IN SUPPORT OF MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>September 16, 2020</u>, at Sacramento, California.


　　　　　 Tracie L. Campbell 　　　　　　　　　　　　 */s/ Tracie Campbell*
　　　　　　　　 Declarant 　　　　　　　　　　　　　　　 Signature

SA2018100198
34413318.docx