David W. Affeld, State Bar No. 123922
Damion Robinson, State Bar No. 262573
David Markevitch, State Bar No. 256163
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:     (310) 979-8700

Attorneys for Plaintiff
Michael Zeleny

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY,<br><br>            Plaintiff,<br><br>                    vs.<br><br>GAVIN NEWSOM, *et al.*,<br><br>            Defendants. | Case No. CV 17-7357 RS<br><br><u>Assigned to:</u><br>The Honorable Richard G. Seeborg<br><br><u>Assigned for Discovery Purposes to:</u><br>The Honorable Thomas S. Hixson<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL CHIEF DAVE BERTINI TO ANSWER DEPOSITION QUESTIONS**<br><br>Filed Concurrently:<br>1.  Declaration of Damion Robinson;<br>2.  Proposed Order.<br><br>Date:  November 19, 2020<br>Time: 10:00 a.m.<br>Courtroom G – 15th Floor<br><br>Action Filed:  December 28, 2017<br>Trial Date:     [Not Set] |

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 19, 2020 at 10:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Thomas S. Hixson in Courtroom G of the above-entitled Court, Plaintiff Michael Zeleny ("Plaintiff") will and hereby does move for an order directing Defendant Chief Dave Bertini ("Bertini"), individually and as the Rule

- 1 -

1  30(b)(6) designee of the City of Menlo Park, to answer deposition questions that he was

2  improperly instructed not to answer and reasonable follow-up questions.  This Motion is made

3  on the grounds that Bertini was improperly instructed not to answer on (i) grounds other than

4  attorney client privilege; and (ii) on privilege grounds where privilege does not apply.

5  Pursuant to Local Civil Rule 37-2, each question on which Zeleny seeks and order compelling

6  an answer is set out in **Appendix 1**.

7         PLEASE TAKE FURTHER NOTICE that Zeleny seeks sanctions against

8  Bertini and his counsel, Todd H. Master, Howard, Rome, Martin & Ridley, LLP for the

9  estimated costs of completing the deposition, in the amount of $2,000, under Fed. R. Civ. P.

10  37(a)(5)(A) and 30(d)(2) on the grounds that (i) sanctions are mandatory on a successful

11  motion to compel; and (ii) Bertini and counsel obstructed fair examination at his deposition.

12         This motion follows a conference of counsel.  Robinson Decl. ¶ 2 & Ex. 1.

13         This Motion is based on this Notice of Motion and Motion, the accompanying

14  Declaration of Damion Robinson, the records and files herein, and such other matters as the

15  Court may consider.

16  Dated:  October 9, 2020                    Respectfully submitted,

17                                             s/ Damion Robinson
                                               David W. Affeld
18                                             Damion D. D. Robinson
                                               David Markevitch
19                                             Affeld Grivakes LLP

20                                             Attorneys for Plaintiff Michael Zeleny

21

22

23

24

25

26

27

28

MOTION TO COMPEL DEPOSITION ANSWERS

## MEMORANDUM OF POINTS & AUTHORITIES

### I.      INTRODUCTION

Instructions not to answer on grounds other than privilege are improper and sanctionable.  Fed. R. Civ. P. 30(c)(2).  Counsel instructed Police Chief Dave Bertini ("Bertini"), the Rule 30(b)(6) designee of the City of Menlo Park (the "City"), not to answer multiple questions on grounds other than privilege and where no privilege applies.  An order directing Bertini to answer those questions and reasonable follow-up questions is necessary. Sanctions are also appropriate for the costs of completing the deposition due to these improper instructions and other disruptive conduct by Bertini's counsel.

*First*, counsel instructed Bertini not to answer questions that do not remotely implicate privilege.  These include questions about whether Bertini found Zeleny's protests to be offensive—going directly to Zeleny's claim of content-based discrimination—and whether it is a standard practice to engage in "enforcement stops" to interrogate protestors.  There is no legitimate argument that these topics seek privileged information.  Instructions not to answer because a question has been asked before are not proper, particularly where a witness repeatedly fails to give a straight answer.

*Second*, counsel instructed Bertini not to answer questions where the privilege has plainly been waived—*e.g.*, as to the facts in Bertini's interrogatory answers, and the City's grounds for denying Zeleny's permit applications. If Bertini, as the Rule 30(b)(6) designee of the City, cannot explain the basis for these assertions, the City cannot make them at trial.  A party cannot use the privilege as both a sword and a shield.

Moreover, Bertini and his counsel should be sanctioned.  Sanctions are mandatory on this Motion because counsel's instructions were not substantially justified.  They are also appropriate because the conduct of Bertini and counsel intentionally impeded a fair examination.  Bertini and counsel should pay the costs and fees of having to resume the deposition to ask questions that Bertini should have answered the first time around.  These costs and fees are estimated at $2,000.

1

2    **II.    <u>BACKGROUND</u>**

3            Zeleny wants to protest a prominent tech executive and venture capital firm in

4    Menlo Park.  He has been peacefully protesting them for several years.  *See* Second Am. Comp.

5    ¶ 42, Dkt. No. 99.  Before California enacted the "open carry" ban on firearms, he safely carried

6    unloaded firearms to draw attention to his message.  *Id.* ¶ 46.

7            Although Zeleny was peaceful and cooperative, the Menlo Park Police

8    Department tried to find a "firm solution" to stop his protests.  *Id.* ¶ 57.  This included harassing

9    Zeleny and his supporters, surveilling him, making a frivolous "enforcement stop" to interrogate

10   a participant, and maintaining a surveillance file on Zeleny—which Bertini still maintains.  *Id.*

11   ¶¶ 86-91.  All of this conduct was in violation of written department policy.  These efforts

12   culminated in a failed prosecution in 2012 to 2014.  *Id.* ¶¶ 93-102.

13           After the "open carry" ban was enacted, the City has now taken the position that

14   Zeleny cannot carry firearms without a film or special event permit.  *Id.* ¶ 121.  Zeleny applied

15   for both.  Bertini took charge of the permitting process and spearheaded the denial of the

16   applications.  Applying standards and procedures that they made up as they went along, City

17   staff and the City Attorney denied both applications.  *Id.* ¶¶ 138-186.

18           Zeleny filed this suit challenging the efforts to stop his protests and the defective

19   process that led to the denial of his permits.  He alleges that the permits were denied on content-

20   based grounds, including because Bertini and others found his protests offensive.  *Id.* ¶¶ 126-127.

21           Zeleny took the deposition of Chief Bertini, individually and as the Rule 30(b)(6)

22   designee of the City.  Per stipulation, the deposition occurred in two sessions on March 19, 2019

23   and August 7, 2020.  The transcript of the second session was completed in early September.

24   Robinson Decl. ¶ 3.

25

26   **III.    <u>ARGUMENT</u>**

27           "A person may instruct a deponent not to answer only when necessary to preserve

28   a privilege, or to enforce a limitation ordered by the court, or to present a motion" to terminate or

- 4 -

1 | limit the deposition. Fed. R. Civ. P. 30(c)(2).  In all other circumstances the "testimony is taken
2 | subject to any objection." *Id.*

3 |         Rule 30(b)(2) provides the "exclusive grounds" for instructions not to answer.
4 | *Doe v. Cty. of San Diego*, No. 12-689, 2013 WL 6577065, at *4 (S.D. Cal. Dec. 13, 2013).  "A
5 | party may object to an irrelevant line of question, but instructing a witness not to answer a
6 | question because it calls for inadmissible facts is sanctionable."  *In re Stratosphere Corp. Sec.*
7 | *Litig.*, 182 F.R.D. 614, 618-19 (D. Nev. 1998).

8 |     **A.    Counsel Instructed Bertini Not to Answer on Grounds Other than Privilege.**

9 |         Zeleny contends that the decision to deny his permit application was content
10 | based.  At a public hearing, Bertini urged a denial of the application claiming that Zeleny's
11 | protests could be deemed obscene as to minors – *i.e.* offensive.  *Id.*  When Zeleny's counsel tried
12 | to depose Bertini about this, Bertini would not even confirm that he found Zeleny's material
13 | offensive.  He repeatedly evaded the question with counsel's assistance.

14 |     Q.    And was it your view, at the time that Mr. Zeleny filed his permit application for a
15 |           special event permit, that the image reflected -- the animation that's shown in
              Exhibit 38 could be obscene as to minors?

16 |     A.    It could be.

17 |     Q.    Did you take that position in a public hearing related to Mr. Zeleny's permit
18 |           application?

19 |     A.    Yes. I stated it could be.

20 |     Q.    Do you have a view, one way or another, at this point, about whether it is obscene
              as to minors or not?

21 |     A.    It is actually -- as a police officer, I'm unable to have my peace disturbed, nor be
22 |           offended, so I have no personal -- I have -- personally, I can't be offended, so it
              would not be up to me whether it's offensive or not. It would be up to a Court.

23 |     Q.    When you say you can't be offended, what do you mean?

24 |     A.    In other words, I can't be the victim.

25 |     Q.    Okay. In your capacity as an individual witness, is the image offensive? Not
26 |           asking in your capacity as a police officer, but as an individual witness in this
              case, is the animation that's reflected in Exhibit 38 offensive?

27 |     **MR. MASTER: Objection. Vague. Ambiguous. Confusing. Overbroad. Calls for**
28 |     **speculation.  If you can answer it.**

        A.    For an adult, perhaps not; for a child, yeah.

…

Q.   Do you personally find it offensive?

**MR. MASTER: Objection. Asked and answered. Don't answer that. We're done with this. He's already answered that question.**

Robinson Decl., Ex. 2 at 137:4-139:2.

"Asked and answered" is not a proper basis to instruct a witness not to answer.  It is not even a proper objection in the circumstances.  The question was not asked, much less answered.  Zeleny's counsel was merely trying to get a straight answer from a witness who repeatedly evaded the question.  *See Hardin v. Mendocino Coast Dist. Hosp.*, No. 17-5554, 2019 WL 1855989, at *4 (N.D. Cal. Apr. 25, 2019) ("[t]here is nothing wrong with an attorney asking the same question multiple times in a deposition"; noting "a certain amount of [repetition] is just a normal part of cross-examination").

Bertini was similarly evasive about the City's policies for dealing with protestors, again assisted by counsel.  Robinson Decl., Ex. 3 at 198-202.  He claimed that he could not answer whether pulling over Zeleny's supporters to question them about their association with Zeleny was consistent with typical practice in the department.  After repeated avoidance of the question and interjections from counsel, *id.* at 198-200, the following exchange ensued:

Q.   I'm not asking whether it was right or wrong for the officer to stop the vehicle.  I'm asking if this conduct of following a vehicle, engaging in an enforcement stop, and … questioning the driver about his association with a protestor is consistent with typical police practice in the city of Menlo Park.

**MR. MASTER: I'm going to continue to object to that question as being vague and ambiguous. It's also argumentative, and I'd like to tell you why, if you'd let me.**

MR. ROBINSON: I would appreciate it if you don't.

**MR. MASTER: Okay. Well, then, he can answer it one more time. And when he's done with that, he's done with that question, and we'll move on.**

A.   So long as the officer had reasonable suspicion to stop the vehicle, he could ask any questions, whether it's about a protestor, whether it's about a drug deal he just saw, whether it's about a gang membership he has or a gang person he just spoke to. That can happen.

Q.   Is there any reason you're unable to answer my question about whether it's typical police practice to follow a car like this?

**MR. MASTER: Objection. Argumentative. Asked and answered. Don't**

- 6 -

**answer that question.  Move on.**

*Id.* at 201:5-202:10.

Again, "asked and answered" is not a proper basis to instruct a witness not to answer, particularly when he refuses to answer the question. Nor is "argumentative."  If the questioning was unduly hostile—and it wasn't—the proper remedy was to terminate the deposition.  *See Redwood v. Dobson*, 476 F.3d 462, 467 ("Fed. R. Civ. P. 30(d) specifies how harassment is to be handled.  Counsel for the witness may halt the deposition and apply for a protective order … but must not instruct the witness to remain silent.").

**B.      Counsel Instructed Bertini Not to Answer Based on Inapplicable Privileges.**

**1.      The Official Information Privilege Does Not Apply to the Names of Protestors on Whom the City Maintains Surveillance Files.**

Counsel would not allow Bertini to identify other protestors on whom Bertini maintains surveillance files, citing official information privilege and "law enforcement privileges."[1]  Robinson Decl., Ex. 4 at 273:6-274:22; *see also generally id.* at pp. 272-274.  These supposed privileges do not apply to identifying protestors about whom the Bertini maintains files.  Zeleny seeks this information to determine whether the City has a widespread practice of surveilling protestors, which would support his claim that the City violated his First Amendment rights.

The parties have already briefed official information privileges based on the City's similar objections to written discovery.  *See* Dkt. Nos. 115 (Letter Brief), 116 (Discovery Order); 117 (Discovery Order).  As the Court recognized the last time the City made a blanket "official information" argument. the privilege does not apply to ordinary police records.  The City must "make a substantial threshold showing" that the information sought to be disclosed "would harm significant law enforcement or privacy interests."  See Discovery Order, Dkt. No. 117 at p. 2; *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987).  It must present "*specific* information" through competent testimony.  *Id.* (emphasis in *Kelly*).  Just as last time,

---

[1] Counsel clarified that the record did not accurately reflect his objections.  *See* Robinson Decl., Ex. 1 ("the reporter clearly did not hear the objections correctly over Zoom").

MOTION TO COMPEL DEPOSITION ANSWERS

1   the City cannot make this showing.

2       The mere identity of the protestors would not significantly harm law enforcement or

3   privacy interests, particularly those not under active investigation.  Zeleny did not seek any of

4   the substantive information the City has about these protestors, but merely their names.  Their

5   names are not privileged.

6           **2.    The City Cannot Invoke Privilege to Avoid Disclosing the Basis for Its
                    Position in This Case.**
7

8       Counsel instructed Bertini not to answer questions about the basis for his

9   interrogatory response that the City does not own the median where Zeleny seeks to protest, so

10  cannot issue him a permit:

11      Q.    All right.  Let's – taking that paragraph as a whole that discusses the City's legal
              authority and ownership of the median, do you have any basis for knowledge
12            about that – the information in that paragraph, other than what you've been told
              by an attorney?
13
        A.    No.
14
        Q.    For purposes of our record, Chief Bertini, what were you told by an attorney
15            concerning that information?

16  Chief Bertini was not allowed to answer this question.  Robinson Decl., Ex. 5 at 262:10-263:8;

17  *see also generally id.* at pp. 260-263; Robinson Decl., Ex. 7 (Interrogatory Responses).

18      "A party who affirmatively places its attorney-client communications at issue in a

19  litigation implicitly waives the privilege. The attorney client privilege 'may not be used both as a

20  sword and shield.'"  *River Rock Comm'cns, Inc. v. Univ. Music Group, Inc.*, 745 F.3d 343, 353

21  (9th Cir. 2014) (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)).

22  It must make a "touch choice" of whether to waive privilege or have the matter excluded.

23  *Mushroom Assocs. v. Monterey Mushrooms, Inc.*, No. 91-1092, 1992 WL 442892, at *3 (N.D.

24  Cal. May 19, 1992).

25      The "sword and shield" doctrine applies here.  In interrogatory responses, Bertini

26  asserted that the City cannot issue Zeleny a permit because it does not own the median..[2]  He

27  _____

28  [2] The City did not take this position at any point in the administrative process.

admitted that his only basis for this answer was what he had been told by counsel, but counsel would not allow him to testify about what counsel told him.  The City cannot offer testimony that it does not own the median strip while also claiming that the basis for this testimony is privileged.  *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 642 (9th Cir. 2012) (affirming order striking interrogatory response under "sword and shield" doctrine where witness invoked privilege to avoid answer questions about the response).  The City must either allow discovery into the basis for its contention or waive the contention.

### 3.   The Basis for the City's Permit Denials Is Not Privileged.

Similarly, the City invoked the privilege in order to avoid disclosing the basis for its denial of Zeleny's permits:

Q.    And the new application was denied through this letter [from the City Attorney]; correct?

A.    Correct.

Q.    Do you know if anyone, other than the city attorney's office, was involved in making the decision to deny the renewed application or the new application?

A.    Yes. The city attorney's office, and I spoke to the city attorney, and it is my recollection that Matt Milde also spoke to the city attorney.

Q.    What did you tell the city attorney?

**MR. MASTER: Objection. Don't answer that. That's attorney-client-privileged.**

Robinson Decl., Ex. 6 at 449:7-25; *id.* Ex 8 (Denial Letter).  The City cannot hide the basis for its permit denial simply because it let the City Attorney to make that permitting decision—also in violation of written policy.

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).  An essential ingredient is that the person communicating with counsel is seeking legal advice.  *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).  Discussing a permit application with the person deciding the application is not seeking legal advice—it is seeking the desired permitting decision.  The bases for an administrative decision cannot be privileged, especially where

MOTION TO COMPEL DEPOSITION ANSWERS

governmental intent is at issue.  *See*, *e.g.*, *Jones v. Cty. of Coll. Park, Ga.*, 237 F.R.D. 517, 519-20 (declining to apply deliberative process privilege where "government intent is at issue").

### C.      Bertini and Counsel Should Pay the Costs of a Resumed Deposition.

On a successful motion to compel, "the court must … require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses."  Fed. R. Civ. P. 37(a)(5)(A).  Sanctions are mandatory unless the movant failed to meet-and-confer in good faith, the opposing party's objections were substantially justified, or other circumstances make sanctions unjust.  *Id.*

There was no legitimate basis for counsel to instruct Bertini not to answer deposition questions on the grounds of "asked and answered" or that the questions were "argumentative."  The Federal Rules are abundantly clear that this is improper and sanctionable.  This is particularly true where the questioning was necessitated by Bertini repeatedly evading questions.  *See Hardin*, 2019 WL 1855989, at *4.

Sanctions are particularly appropriate here due to the one-two punch of Bertini giving evasive answers and counsel following up with frivolous objections to further questioning.  This conduct frustrated Zeleny's ability to complete the deposition efficiently, wasting extraordinary time.   "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any person—on a person who impedes, delays, or frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2).

Zeleny seeks a modest sanction of $2,000, reflecting the estimated costs of resuming the deposition.  Robinson Decl. ¶¶ 7-8.  Since the conduct of Bertini and his counsel necessitated a resumed deposition, they should bear the costs.

### III.    CONCLUSION.

For the foregoing reasons, Bertini should be ordered to answer the questions laid out above and reasonable follow up questions and he and his counsel should be sanctioned $1,000.

Dated:  October 9, 2020                    Respectfully submitted,

                                    s/ Damion Robinson
                                    David W. Affeld

Damion D. D. Robinson
David Markevitch
Affeld Grivakes LLP

Attorneys for plaintiff Michael Zeleny

MOTION TO COMPEL DEPOSITION ANSWERS

## APPENDIX 1

| Question and Answer | Grounds for Compelling a Response |
|---|---|
| Q. And was it your view, at the time that Mr. Zeleny filed his permit application for a special event permit, that the image reflected -- the animation that's shown in Exhibit 38 could be obscene as to minors? | A witness may only be instructed not to answer to preserve privilege, to enforce a court-ordered limitation, or to seek a protective order.  Fed. R. Civ. P. 30(c)(2). "Asked and answered" is not a proper basis to instruct a witness not to answer. |
| A. It could be. | |
| Q. Did you take that position in a public hearing related to Mr. Zeleny's permit application? | |
| A. Yes. I stated it could be. | |
| Q. Do you have a view, one way or another, at this point, about whether it is obscene as to minors or not? | |
| A. It is actually -- as a police officer, I'm unable to have my peace disturbed, nor be offended, so I have no personal -- I have -- personally, I can't be offended, so it would not be up to me whether it's offensive or not. It would be up to a Court. | |
| Q. When you say you can't be offended, what do you mean? | |
| A. In other words, I can't be the victim. | |
| Q. Okay. In your capacity as an individual witness, is the image offensive? Not asking in your capacity as a police officer, but as an individual witness in this case, is the animation that's reflected in Exhibit 38 offensive? | |
| **MR. MASTER: Objection. Vague. Ambiguous. Confusing. Overbroad. Calls for speculation.  If you can answer it.** | |
| A. For an adult, perhaps not; for a child, yeah. | |
| ...<br>Q. Do you personally find it offensive? | |
| **MR. MASTER: Objection. Asked and answered.  Don't answer that.  We're done with this. He's already** | |

- 12 -

| | | |
|---|---|---|
| 1 | **answered that question.** | |
| 2 | Robinson Decl., Ex. 2 at 137:4-139:2. | |
| 3 | Q.     I'm not asking whether it was right or wrong for the officer to stop the vehicle.  I'm asking if this conduct of following a vehicle, engaging in an enforcement stop, and … questioning the driver about his association with a protestor is consistent with typical police practice in the city of Menlo Park. | A witness may only be instructed not to answer to preserve privilege, to enforce a court-ordered limitation, or to seek a protective order.  Fed. R. Civ. P. 30(c)(2).  "Asked and answered" and "argumentative" are not proper bases to instruct a witness not to answer. |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | **MR. MASTER: I'm going to continue to object to that question as being vague and ambiguous. It's also argumentative, and I'd like to tell you why, if you'd let me.** | |
| 9 | | |
| 10 | MR. ROBINSON: I would appreciate it if you don't. | |
| 11 | | |
| 12 | **MR. MASTER: Okay. Well, then, he can answer it one more time. And when he's done with that, he's done with that question, and we'll move on.** | |
| 13 | | |
| 14 | A.     So long as the officer had reasonable suspicion to stop the vehicle, he could ask any questions, whether it's about a protestor, whether it's about a drug deal he just saw, whether it's about a gang membership he has or a gang person he just spoke to. That can happen. | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | Q.     Is there any reason you're unable to answer my question about whether it's typical police practice to follow a car like this? | |
| 19 | | |
| 20 | | |
| 21 | **MR. MASTER: Objection. Argumentative. Asked and answered. Don't answer that question.  Move on.** | |
| 22 | | |
| 23 | Robinson Decl., Ex. 3 at 201:5-202:10. | |
| 24 | Q.     Do you have any other similar binders of law enforcement sensitive information about other protesters? | The official information privilege only applies where the government entity can make a "substantial threshold showing" that the information sought to be disclosed "would harm significant law enforcement or |
| 25 | | |
| 26 | A.     Yes. | |
| 27 | Q.     Which other protesters? | |
| 28 | MR. MASTER: Objection. How is that | |

MOTION TO COMPEL DEPOSITION ANSWERS

1   relevant? And it goes to invasion of privacy. I'm not sure how it's relevant. Invades privacy of third parties.

2

3   Q.      Chief Bertini, you can go ahead and answer the question unless you're instructed not to.

4

5   MR. MASTER: Well, I'm going to instruct him not to answer that question, Damion, because it goes to third parties that are not pertinent or relevant to this litigation. You can ask him if they are, but, otherwise, I'm going to instruct him not to answer that because it goes to the official information privilege, the legal law and motion privilege and the designation privilege.

6

7

8

9

10  Q.      Chief Bertini, I'm not asking you about the content of any of your materials. All I'm asking is, do you have -- which other protesters do you maintain binders about?

11

12

13  MR. MASTER: Well, it's the same objection, Damion, because you're asking him to identify individuals by name. So you can ask him for approximate numbers, something like that, but if you're identifying third parties, we are, by its very nature, violating those privileges that I mentioned before.

14

15

16

17  MR. ROBINSON: I'm not going to argue the issue with you. You can either instruct or don't instruct, and we'll reserve our rights.

18

19  MR. MASTER: Okay. I'm instructing him not to answer that.

20  Robinson Decl., Ex. 4 at 273:10-274:22.

21

22  Q.      All right.  Let's – taking that paragraph as a whole that discusses the City's legal authority and ownership of the median, do you have any basis for knowledge about that – the information in that paragraph, other than what you've been told by an attorney?

23

24

25

26  A.      No.

27  Q.      For purposes of our record, Chief Bertini, what were you told by an attorney concerning that information?

28

---

privacy interests." *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987).  The City cannot make this showing as to the mere identity of protestors on which it maintains surveillance files.

In interrogatory responses, Chief Bertini contends as a defense that the City does not own the median strip where Zeleny seeks to protest so cannot issue him a permit.  If Bertini and the City intend to take this position at trial, they must disclose the basis for this understanding.  A party cannot use

---

- 14 -

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | **MR. MASTER: Again, just for the record, you're asking Chief Bertini to disclose what he was told by the city attorney's office, the city attorney being the attorney for the City and the staff.  Therefore, it calls for him to disclose attorney-client-privileged communications, and I'll instruct him not to answer.**<br><br>Robinson Decl., Ex. 5 at 262:10-263:4. | the privilege as a sword and a shield.  *River Rock Comm'cns, Inc. v. Univ. Music Group, Inc.*, 745 F.3d 343, 353 (9th Cir. 2014) (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)). |

| | |
|---|---|
| 7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19<br>20<br>21<br>22<br>23 | Q.      And the new application was denied through this letter [from the City Attorney]; correct?<br><br>A.      Correct.<br><br>Q.      Do you know if anyone, other than the city attorney's office, was involved in making the decision to deny the renewed application or the new application?<br><br>A.      Yes. The city attorney's office, and I spoke to the city attorney, and it is my recollection that Matt Milde also spoke to the city attorney.<br><br>Q.      What did you tell the city attorney?<br><br>**MR. MASTER: Objection. Don't answer that. That's attorney-client-privileged.**<br><br>Robinson Decl., Ex. 6 at 449:7-25. | The City delegated authority to the City Attorney to decide Mr. Zeleny's permit application.  In its capacity as the administrative decision-maker, the City Attorney's communications with City staff are not privileged.  They form the bases for the City Attorney's administrative decision.<br><br>The privilege applies to communications seeking legal advice.  *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992)  It does not apply to communications seeking to persuade an administrative decision-maker to make a particular decision.  The City cannot shield the basis for a governmental agency decision by having its counsel make that decision. |

24
25
26
27
28

MOTION TO COMPEL DEPOSITION ANSWERS

1

## **PROOF OF SERVICE**

2

I hereby certify that on October 9, 2020, I electronically filed the foregoing document using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

3

4

s/ Gabrielle Bruckner
Gabrielle Bruckner

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO COMPEL DEPOSITION ANSWERS