David W. Affeld, State Bar No. 123922
Damion Robinson, State Bar No. 262573
David Markevitch, State Bar No. 256163
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:   (310) 979-8700

Attorneys for Plaintiff
Michael Zeleny

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY, | Case No. CV 17-7357 RS |
| Plaintiff, | Assigned to: The Honorable Richard G. Seeborg |
| vs. | |
| GAVIN NEWSOM, *et al.*, | Assigned for Discovery Purposes to: The Honorable Thomas S. Hixson |
| Defendants. | **DECLARATION OF DAMION ROBINSON IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL CHIEF DAVE BERTINI TO ANSWER DEPOSITION QUESTIONS** |
| | Filed Concurrently: 1. Notice of Motion and Motion; 2. Proposed Order |
| | Date:  November 19, 2020 Time: 10:00 a.m. Courtroom G – 15th Floor |
| | Action Filed:  December 28, 2017 Trial Date:     [Not Set] |

- 1 -

# **DECLARATION**

I, Damion Robinson, declare:

1.      I and my law firm are counsel of record to plaintiff Michael Zeleny in this action.  I have personal knowledge of the facts below.  I could testify competently to these facts if called upon to do so.

2.      I am filing this motion following a conference with Todd Master, counsel for the City of Menlo Park (the "City") and Chief Dave Bertini ("Bertini"), which took place by phone on October 8, 2020.  A true copy of my email exchange with Mr. Master concerning the instructions is attached as **Exhibit 1**.

3.      I took Bertini's deposition as both an individual witness and as the Rule 30(b)(6) designee of the City per stipulation.  Based on this stipulation, the deposition took place in two sessions, one on March 19, 2019 and one on August 7, 2020 via Zoom.  The record of the last deposition session was provided to us in early September.

4.      Attached hereto as **Exhibits 2 through 6** are true copies of excerpts of the transcript of Chief Bertini's deposition taken in his capacity as an individual witness and the Rule 30(b)(6) designee of the City of Menlo Park.

5.      Attached hereto as **Exhibit 7** is a true copy of excerpts of Defendant Dave Bertini's Supplemental Response to Plaintiff's Interrogatories.

6.      Attached as **Exhibit 8** is a true copy of a letter from City Attorney William L. McClure to Michael Zeleny, produced by the City of Menlo Park in this matter, and marked as deposition exhibit 105.

7.      I estimate that a deposition on the questions that Chief Bertini was improperly instructed not to answer can be completed in two hours or less.  Including the costs of virtual deposition and court reporter, as well as two hours of attorney time, I estimate that the costs of this resumed deposition will be approximately $2,000, using a rate of $595.00 per hour for my time.

8.      I am informed and believe that this is a reasonable rate for my time.  My fees have regularly been awarded at this rate and similar rates on discovery motions and other

matters.  According to the Adjusted Laffey Matrix, a benchmarking tool for attorney fees, the benchmark rate for attorneys with my experience is $759.00 per hour.  I graduated from UCLA School of Law in 2007; clerked for the Honorable David O. Carter of the United States District Court for the Central District of California from 2007-2008; and was an associate at Sullivan & Cromwell LLP from 2008-2012, a partner and named partner of Van Vleck Turner & Zaller LLP from 2012-2017, and am currently a partner at Affeld Grivakes LLP.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed October 9, 2020 at Los Angeles, California.

s/ Damion Robinson
Damion D. D. Robinson

ROBINSON DECL. ISO MOT. TO COMPEL

EXHIBIT 1

| | |
|---|---|
| **From:** | Damion Robinson |
| **Sent:** | Friday, October 9, 2020 4:17 PM |
| **To:** | Todd H. Master |
| **Cc:** | David Markevitch; Brian R. England; David Affeld; Faith Kelly; Bob Gundert |
| **Subject:** | RE: [External] ZELENY/Newsom: Deposition of Chief Bertini |

Todd –

Thank you for your response. I take it from the below that the City is not willing to make Chief Bertini available to answer any of the questions. We disagree that counsel for the deponent is allowed to decide what information the witness will provide, when questioning has become "argumentative," or whether an answer sufficiently addresses the question, such that further questioning is not warranted. We appear to be at an impasse and will have to let the Court resolve this.

Regards,

**From:** Todd H. Master <tmaster@hrmrlaw.com>
**Sent:** Friday, October 9, 2020 10:41 AM
**To:** Damion Robinson <DR@agzlaw.com>
**Cc:** David Markevitch <dm@agzlaw.com>; Brian R. England <bre@agzlaw.com>; David Affeld <dwa@agzlaw.com>; Faith Kelly <FKELLY@hrmrlaw.com>; Bob Gundert <rgundert@hrmrlaw.com>
**Subject:** RE: [External] ZELENY/Newsom: Deposition of Chief Bertini

Damion,

In follow-up to our discussion yesterday, we would like to thank your office for agreeing not to pursue additional deposition testimony concerning Chief Bertini's meetings with his legal counsel (the first two items listed under "Volume 1" and the first item listed under "Volume 2" in your email at the bottom of this email chain). That is much appreciated.

Last night, we had the opportunity to more thoroughly review your 9/27/2020 email, which I personally did not see until 10/7/2020 due to the fact that 9/27 was a Sunday (and it thus got buried in my inbox – please communicate during the week, not on weekends moving forward). In any event, we reiterate the concern that your office waited until late September/early October 2020 (at the very end of fact discovery and then after the cut-off) to seek a further deposition of Chief Dave Bertini. Volume 1 of Chief Bertini's deposition was completed on 3/19/19 (more than 18 months ago). Our office, and presumably your office, received a copy of that deposition transcript on 3/31/19 (again, more than 18 months ago). There is no reasonable excuse to wait more than 18 months to raise the issues your office raises now with regard to Volume 1 of Chief Bertini's deposition – after the close of fact discovery in October 2020 and after he was deposed again in August 2020.

In sum, we do not believe there is good cause for Chief Bertini to appear for yet another deposition. It is our position that Chief Bertini answered the questions that did not call for him to reveal the substance of privileged communications or information that is protected by the law enforcement and official information privilege (about third parties who have absolutely no bearing on this litigation).

Taking each volume of Chief Bertini's deposition separately, we respond to your concerns.

**Volume 1 (3/19/19 deposition, delivered to the parties on 3/31/19)**

- Pages 138:9-139:2: Whether Mr. Bertini finds the artistic work used in Mr. Zeleny's protests offensive.

  - From our review of the deposition testimony, Chief Bertini answered this question, on multiple occasions. At 137:4-138:8, you asked Chief Bertini whether an "image" plaintiff wished to display was "offensive". Chief Bertini testified that "for an adult [which Chief Bertini clearly is], perhaps not; for a child, yeah." At 137:13 – 137:22, Chief Bertini testified that, as a police officer, he is "unable to have his peace disturbed, nor be offended" [as that would be up to the court evaluating whether something is obscene, not a police officer] and that he "can't be personally offended". At 138:9-15, Chief Bertini testified that he had not received any feedback "from anyone, either in the government in the City of Menlo Park or the community of Menlo Park, that the animation" plaintiff was desiring to display was "offensive". He answered, "no".

  - A follow-up deposition on this single question is also completely unnecessary because nearly one year after Volume 1 of Chief Bertini's deposition was completed, your office served Special Interrogatories, Set Two, on Chief Bertini, which included two interrogatories (nos. 7 and 8) that asked whether he contended that "any piece of artwork, graphic, image, animation, or other material involved in Michael Zeleny's protests is obscene as to minors". Chief Bertini's answered "no", he "has not arrived at any conclusion that any particular piece of artwork, graphic, animation or other material used, or intended to be used, by Zeleny at a protest is obscene as to minors." As you know, this was the context in which your client's artwork was discussed.

  - Had this been a major concern at the time of his 3/31/19 deposition, we certainly could have met and conferred further or even asked for assistance from a Magistrate Judge pursuant to Local Rule 37-1(b). We could have also discussed this issue at Chief Bertini's 8/7/2020 deposition (otherwise referred to herein as Volume 2).

  - To be very clear, and while it is irrelevant for purposes of this litigation since Chief Bertini did not formally deny your client's application for a Special Event Permit (see City Manager and City Council decisions), Chief Bertini has not found and does not find your client's artwork offensive. That is stipulated.

- Pages 201:5-202:13: Whether it is a standard police practice to engage in "enforcement stops" to interview people about protests.

  - Chief Bertini answered this question twice before the questioning turned argumentative and he was instructed not answer any further. *See* 198:18 – 202:6, where Chief Bertini testified that "as long as the officer had reasonable suspicion to stop the vehicle, he could stop and ask about his association with anybody" (201:1-4) and "so long as the officer had reasonable suspicion to stop the vehicle, he could ask any questions, whether it's about a protestor, whether it's about a drug deal he just saw, whether it's about a gang membership he has or a gang person he just spoke to. That can happen" (201:23-202:3). Chief Bertini was only instructed not to answer when he was asked if "there was any reason you're unable to answer any question about whether it's typical police practice to follow a car like this." Chief Bertini did answer the question. It is noteworthy that this line of questioning was not brought up again until now – after fact discovery is closed and after Volume 2 of Chief Bertini's deposition was completed nearly 17 months later.  It is unclear what else you want from Chief Bertini or how he could answer this question differently.

  - Had this been a major concern at the time, we certainly could have met and conferred further or even asked for assistance from a Magistrate Judge pursuant to Local Rule 37-1(b).

**Volume 2**:

- Pages 261:20-263:8:  The basis for the City's position and Chief Bertini's interrogatory answer that the City lacks jurisdiction to issue a permit affecting the median strip.

  - This line of questioning called for Chief Bertini to disclose the content of communications he had, as the City's Police Chief, with the City Attorney's Office, which communications and advice are protected by the attorney-client privilege. Chief Bertini was instructed not to disclose the content of those privileged communications with the City Attorney. To the extent he had any other responsive information not provided to him by the City Attorney in the context of the attorney-client relationship, Chief Bertini was advised he could answer.

- Pages 273:6-274:22:  Other protestors about whom the City maintains surveillance binders.

  - For some context, in deposition Chief Bertini was asked why the Menlo Park Police Department maintained a "binder of law enforcement sensitive information" about Mr. Zeleny. Chief Bertini explained that the "police department, in the course of doing police work, sometimes will get information from other law enforcement sources that is historic information, that is good information to keep. Certainly this binder that deals with Mr. Zeleny is not the only binder or documents that police departments keep for historical data and/or for reference depending on the situation." While Chief Bertini acknowledged that the police department has other similar binders about those persons that it has received information about from other law enforcement agencies.   Chief Bertini properly declined to identify the names of those other persons to protect their privacy and pursuant to the official information and law enforcement privileges [the reporter clearly did not hear the objections correctly over Zoom]. Disclosing that information could and would reveal ongoing criminal investigations involving persons who are not related to your client or involved or in any way related to this litigation.

  - The City previously turned over the content of law enforcement binder related to Mr.  Zeleny pursuant to the Court's 2/28/2020 Discovery Order [Document 117], under the protection of a protective order. It is not clear to the City how or why such information about third persons should be disclosed to plaintiff in this litigation.

- Pages 449:10-450:3:  The City Attorney's basis for denial of Zeleny's Special Events application and discussions with Chief Bertini regarding the same.

  - This line of questioning called for Chief Bertini to disclose the content of communications between City staff and the City Attorney's Office. Such communications are protected by the attorney-client privilege particularly were, as here, staff is asking for legal advice from the City Attorney.

Please do not hesitate to contact us if you have any questions or would like to discuss this further.

Have a nice weekend.

Very Truly Yours,

Todd

Todd H. Master

Howard Rome Martin & Ridley, LLP.
1900 O'Farrell Street, Suite 280
San Mateo, CA 94403
T: (650) 365-7715
D: (650) 980-1012
F: (650) 364-5297
tmaster@hrmrlaw.com

---

**From:** Damion Robinson <DR@agzlaw.com>
**Sent:** Thursday, October 8, 2020 1:58 PM
**To:** Todd H. Master <tmaster@hrmrlaw.com>
**Cc:** David Markevitch <dm@agzlaw.com>; Brian R. England <bre@agzlaw.com>; David Affeld <dwa@agzlaw.com>; Faith Kelly <FKELLY@hrmrlaw.com>
**Subject:** RE: [External] ZELENY/Newsom: Deposition of Chief Bertini

Todd –

I just tried you.  Apologies for the delay.  I'll try again at 4:00.

Thanks,
Damion

---

**From:** Todd H. Master <tmaster@hrmrlaw.com>
**Sent:** Wednesday, October 7, 2020 1:54 PM
**To:** Damion Robinson <DR@agzlaw.com>
**Cc:** David Markevitch <dm@agzlaw.com>; Brian R. England <bre@agzlaw.com>; David Affeld <dwa@agzlaw.com>; Faith Kelly <FKELLY@hrmrlaw.com>
**Subject:** RE: [External] ZELENY/Newsom: Deposition of Chief Bertini

Please call me on my cell at (650) 520-3514 @ 1:15 tomorrow.

Thank you,

Todd

Todd H. Master
Howard Rome Martin & Ridley, LLP.
1900 O'Farrell Street, Suite 280
San Mateo, CA 94403
T: (650) 365-7715
D: (650) 980-1012
F: (650) 364-5297
tmaster@hrmrlaw.com

---

**From:** Damion Robinson <DR@agzlaw.com>
**Sent:** Wednesday, October 7, 2020 1:48 PM
**To:** Todd H. Master <tmaster@hrmrlaw.com>
**Cc:** David Markevitch <dm@agzlaw.com>; Brian R. England <bre@agzlaw.com>; David Affeld <dwa@agzlaw.com>; Faith Kelly <FKELLY@hrmrlaw.com>
**Subject:** RE: [External] ZELENY/Newsom: Deposition of Chief Bertini

Todd –

Let's talk at 1:15 tomorrow.

Thanks,
Damion

---

**From:** Todd H. Master <tmaster@hrmrlaw.com>
**Sent:** Wednesday, October 7, 2020 12:24 PM
**To:** Damion Robinson <DR@agzlaw.com>
**Cc:** David Markevitch <dm@agzlaw.com>; Brian R. England <bre@agzlaw.com>; David Affeld <dwa@agzlaw.com>; Faith Kelly <FKELLY@hrmrlaw.com>
**Subject:** RE: [External] ZELENY/Newsom: Deposition of Chief Bertini

Damion,

I am always pleased to discuss maters with you but this rush to a deadline is not my doing and requires me to re-arrange my entire schedule which is jam-packed with deadlines and meetings/appointments this week. I am in the car tomorrow for a bit – could talk between 1:15 & 1:45. Otherwise, I could squeeze a call in around 4. Let me know what works.

Todd

Todd H. Master
Howard Rome Martin & Ridley, LLP.
1900 O'Farrell Street, Suite 280
San Mateo, CA 94403
T: (650) 365-7715
D: (650) 980-1012
F: (650) 364-5297
tmaster@hrmrlaw.com

---

**From:** Damion Robinson <DR@agzlaw.com>
**Sent:** Wednesday, October 7, 2020 9:12 AM
**To:** Todd H. Master <tmaster@hrmrlaw.com>
**Cc:** David Markevitch <dm@agzlaw.com>; Brian R. England <bre@agzlaw.com>; David Affeld <dwa@agzlaw.com>; Faith Kelly <FKELLY@hrmrlaw.com>
**Subject:** RE: [External] ZELENY/Newsom: Deposition of Chief Bertini

Todd –

Unfortunately we have a motion filing deadline coming up on Friday, so we'll need to talk today or tomorrow.  Please let me know when you're available.

Thanks,
Damion

---

**From:** Todd H. Master <tmaster@hrmrlaw.com>
**Sent:** Wednesday, October 7, 2020 9:11 AM
**To:** Damion Robinson <DR@agzlaw.com>
**Cc:** David Markevitch <dm@agzlaw.com>; Brian R. England <bre@agzlaw.com>; David Affeld <dwa@agzlaw.com>; Faith

Kelly <[FKELLY@hrmrlaw.com](mailto:FKELLY@hrmrlaw.com)>
**Subject:** RE: [External] ZELENY/Newsom: Deposition of Chief Bertini

Good morning Damion,

My apologies as I did not see this email. This week is terrible for me… am absolutely buried with deadlines and other fires that need to be put out. Let me take a look at your email more closely over the weekend or early next week and get back to you. Quickly … My recollection is that most of what you complain about below was actually answered in deposition. I can tell you that we will not agree to let Chief Bertini answer any questions concerning his meetings with legal counsel – dates or length. Those questions not only seek attorney-client privileged communication but also get into attorney work product. I will look at the other issues and respond early next week.

Todd

Todd H. Master
Howard Rome Martin & Ridley, LLP.
1900 O'Farrell Street, Suite 280
San Mateo, CA 94403
T: (650) 365-7715
D: (650) 980-1012
F: (650) 364-5297
[tmaster@hrmrlaw.com](mailto:tmaster@hrmrlaw.com)

---

**From:** Damion Robinson <[DR@agzlaw.com](mailto:DR@agzlaw.com)>
**Sent:** Wednesday, October 7, 2020 8:55 AM
**To:** Todd H. Master <[tmaster@hrmrlaw.com](mailto:tmaster@hrmrlaw.com)>
**Cc:** David Markevitch <[dm@agzlaw.com](mailto:dm@agzlaw.com)>; Brian R. England <[bre@agzlaw.com](mailto:bre@agzlaw.com)>; David Affeld <[dwa@agzlaw.com](mailto:dwa@agzlaw.com)>
**Subject:** RE: [External] ZELENY/Newsom: Deposition of Chief Bertini

Todd –

I am following up on the below email. I am available today other than 10:00 to 2:00 and tomorrow all day to confer. Please let me know when you can do that.

Thanks,
Damion

---

**From:** Damion Robinson
**Sent:** Sunday, September 27, 2020 4:59 PM
**To:** Todd H. Master <[tmaster@hrmrlaw.com](mailto:tmaster@hrmrlaw.com)>
**Cc:** David Markevitch <[dm@agzlaw.com](mailto:dm@agzlaw.com)>; Brian R. England <[bre@agzlaw.com](mailto:bre@agzlaw.com)>; David Affeld <[dwa@agzlaw.com](mailto:dwa@agzlaw.com)>
**Subject:** ZELENY/Newsom: Deposition of Chief Bertini

Todd –

I am writing to meet and confer with you on several improper instructions not to answer at deposition of Chief Bertini, including the most recent session. The improper instructions appear at the following deposition pages:

**Volume 1**
Page 11:15-23: When Chief Bertini met with counsel to prepare for his deposition.
Page 13:9-17: How long Chief Bertini met with counsel to prepare.
Pages 138:9-139:2: Whether Mr. Bertini finds the artistic work used in Mr. Zeleny's protests offensive.

Pages 201:5-202:13:  Whether it is a standard police practice to engage in "enforcement stops" to interview people about protests.

**Volume 2**:
Pages 236:25-237:19:  How long Chief Bertini spent preparing with counsel for the deposition.
Pages 261:20-263:8:  The basis for the City's position and Chief Bertini's interrogatory answer that the City lacks jurisdiction to issue a permit affecting the median strip.
Pages 273:6-274:22:  Other protestors about whom the City maintains surveillance binders.
Pages 449:10-450:3:  The City Attorney's basis for denial of Zeleny's Special Events application and discussions with Chief Bertini regarding the same.

The only proper reason to instruct a witness not to answer deposition questions is to preserve attorney-client privilege.  None of the questions at issue sought privileged information either because (a) the information is not privileged in the first instance; (b) the privilege was waived when Chief Bertini relied on counsel to provide the basis for discovery answers; and (c) to the extent that the City Attorney made a determination to deny Mr. Zeleny's permit application, under California law, the basis for his decision cannot be privileged.

I believe that we could cover all of the topics above in less than an hour, including appropriate follow-up questioning.  Please review the questions and answers above, and advise whether Chief Bertini will agree to answer some or all of them.  In either case, I am available Tuesday afternoon and Wednesday afternoon to discuss.  Please let me know when you are available.

Regards,

Damion Robinson
AFFELD GRIVAKES LLP
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Tel. (310) 979-8700 | Fax (310) 979-8701

* * *

This email is sent from a law firm and may contain confidential and privileged information.  If you are not the intended recipient, please notify the sender immediately by return email and delete this message from your system.  Please do not copy or use this email for any purpose, or disclose its contents to any other person.

**EXHIBIT 2**

UNITED STATES DISTRICT COURT

2                NORTHERN DISTRICT OF CALIFORNIA

3

4   IN RE MATTER OF:              )
                                 )
5                                )
                                 )
6   MICHAEL ZELENY,              )
                                 )
7            Plaintiff,          )
                                 )
8        vs.                     )   CASE NO. CV 17-7357 JCS
                                 )
9   EDMUND G. BROWN, JR., et al., )
                                 )
10           Defendant.          )
                                 )
11

12

13       VIDEOTAPED DEPOSITION OF CHIEF DAVE BERTINI

14                         VOLUME I

15                   Menlo Park, California

16                  Tuesday, March 19, 2019

17

18

19

20

21

22
    Stenographically Reported by:
23
    HEATHER J. BAUTISTA, CSR, CRR, RPR
24

25

```
 1   still image of the animation that we've just been

 2   talking about; right?

 3        A.   Correct.

 4        Q.   And was it your view, at the time that

 5   Mr. Zeleny filed his permit application for a special

 6   event permit, that the image reflected -- the animation

 7   that's shown in Exhibit 38 could be obscene as to

 8   minors?

 9        A.   It could be.

10        Q.   Did you take that position in a public hearing

11   related to Mr. Zeleny's permit application?

12        A.   Yes.   I stated it could be.

13        Q.   Do you have a view, one way or another, at this

14   point, about whether it is obscene as to minors or not?

15        A.   It is actually -- as a police officer, I'm

16   unable to have my peace disturbed, nor be offended, so I

17   have no personal -- I have -- personally, I can't be

18   offended, so it would not be up to me whether it's

19   offensive or not.   It would be up to a Court.

20        Q.   When you say you can't be offended, what do you

21   mean?

22        A.   In other words, I can't be the victim.

23        Q.   Okay.

24             In your capacity as an individual witness, is

25   the image offensive?   Not asking in your capacity as a
```

14:04 (line 5)
14:04 (line 10)
14:05 (line 15)
14:05 (line 20)
14:05 (line 25)

```
 1   police officer, but as an individual witness in this

 2   case, is the animation that's reflected in Exhibit 38

 3   offensive?

 4              MR. MASTER:  Objection.  Vague.  Ambiguous.

 5   Confusing.  Overbroad.  Calls for speculation.

 6              If you can answer it.

 7              THE WITNESS:  For an adult, perhaps not; for a

 8   child, yeah.

 9       Q.   (By Mr. Robinson)  Have you received feedback

10   from anyone, either in the government in the City of

11   Menlo Park or the community of Menlo Park, that the

12   animation reflected in Exhibit 38 is offensive?

13              MR. MASTER:  Same objection.  Vague and

14   ambiguous.

15              THE WITNESS:  No.

16       Q.   (By Mr. Robinson)  Do you personally find it

17   offensive?

18              MR. MASTER:  Objection.  Asked and answered.

19              Don't answer that.

20              We're done with this.  He's already answered

21   that question.

22              MR. ROBINSON:  You're instructing him not to

23   answer?

24              MR. MASTER:  Absolutely.

25       Q.   (By Mr. Robinson)  Are you going to follow your
```

1  attorneys instruction not to answer?

2      A.   Yes.

3      Q.   In Mr. Zeleny's permit application process, you

4  acted as a spokesperson for the City in the hearing with

14:06   5  the city manager; correct?

6      A.   For the special events permit?

7      Q.   Correct.

8      A.   Yes.

9      Q.   And one of the issues that you raised in that

14:07  10  application process was that this image and the

11  associated animation might be obscene as to minors;

12  correct?

13      A.   It could be, yes.

14      Q.   Have you formed any view, in your capacity as

14:07  15  the Chief of Police of Menlo Park, about whether the

16  image is offensive?

17          MR. MASTER:  Objection.  Asked and answered.

18          Go ahead one more time.

19          THE WITNESS:  As I stated, no.

14:07  20      Q.   (By Mr. Robinson)  Who would make the decision

21  about whether to charge Mr. Zeleny with obscenity as to

22  minors related to the animation?

23      A.   District Attorney's Office.

24      Q.   Is there someone in the City of Menlo Park that

14:07  25  would make a decision about whether to refer it for

1                    DECLARATION OF WITNESS

2

3          I hereby declare I am the deponent in the
   within matter; that I have read the foregoing deposition
4  and know the contents thereof, and I declare that the
   same is true of my knowledge except as to the matters
5  which are therein stated upon my information or belief,
   and as to those matters, I believe them to be true.
6          I declare under the penalties of perjury of the
   State of California that the foregoing is true and
7  correct.

8

           Executed this _____ day of _____,
9
   201___, at _____, _____.
10            (City)                            (State)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT 3

```
 1   vehicles to follow people who aren't suspected of

 2   committing a crime?

 3          MR. MASTER:  Objection.  Asked and answered.

 4   Argumentative.

 5          THE WITNESS:  I can't answer without qualifying

 6   it as I did.

 7      Q.   (By Mr. Robinson)  Is the answer a qualified

 8   yes or a qualified no?

 9          MR. MASTER:  Same objection.  Argumentative.

10          THE WITNESS:  It's a qualified yes.

11      Q.   (By Mr. Robinson)  Going down to the second --

12   I guess it's the third paragraph from the bottom on Page

13   154 of Exhibit 49.  There's a reference to following a

14   vehicle that was nearby Mr. Zeleny's protest and

15   engaging in an enforcement stop.

16          Do you see that?

17      A.   I do.

18      Q.   During the enforcement stop, the officers asked

19   the driver of the vehicle whether he was associated with

20   Mr. Zeleny; true?

21      A.   Yes.

22      Q.   Was that consistent with typical police

23   enforcement practice -- strike that.

24          Was that consistent with typical police

25   practice of the City of Menlo Park?
```

1    **A.**    The officer clearly had reasonable suspicion to

2    detain this vehicle for having no front plate.

3    **Q.**    Was following the vehicle and making an

4    enforcement stop and then asking the driver questions

15:55    5    about association with Mr. Zeleny consistent with

6    typical police practice of the City of Menlo Park?

7         MR. MASTER:  Objection.  Vague and ambiguous.

8    Incomplete hypothetical.

9         THE WITNESS:  I can't answer that question the

15:55   10    way you stated it.  I told you that the officer,

11    obviously, had a reasonable suspicion.  That's all we

12    need to detain somebody.  That is the level of proof

13    necessary to make a Fourth Amendment detention on a

14    person, and that's what was happening -- what occurred

15:56   15    here.

16    **Q.**    (By Mr. Robinson)  So as the person most

17    qualified for the City of Menlo Park, you can't answer

18    whether it's consistent with typical police practice to

19    follow a vehicle, engage in an enforcement stop, and

15:56   20    then to question the driver about association with

21    Mr. Zeleny; is that accurate?

22    **A.**    It is typical to have reasonable suspicion to

23    stop a vehicle, and you can ask any questions you want.

24    The driver doesn't have to answer those questions;

15:56   25    doesn't matter what you ask them.

1      **Q.**    That wasn't my question, Chief Bertini.

        2             My question was:  Is it typical police practice

        3      for the City of Menlo Park, in your capacity as the

        4      person most qualified designated by the City of Menlo

15:56   5      Park, to follow a driver, make an enforcement stop, and

        6      then question the driver about his association with a

        7      protestor?

        8             Is that typical police practice?

        9             MR. MASTER:  First of all, I'm going to object

15:57  10      to the question as being vague and ambiguous.

       11             I'm also going to object to your client

       12      laughing at the question demonstrably.

       13             I'd ask you to act professionally, Mr. Zeleny.

       14      Otherwise, I'm going to have to ask you to leave.

15:57  15             MR. ROBINSON:  I'm going to object.

       16             A, I don't need you to consult with my client.

       17      If you have an issue with my client's behavior during

       18      the deposition, you can tell me, and I'll relay it to

       19      him.

15:57  20             MR. MASTER:  I do have an issue.

       21             MR. ROBINSON:  Okay.

       22             You've just expressed it on the record.

       23             MR. MASTER:  Thank you.

       24             So you've heard my objection to it.  If you can

15:57  25      answer it, he's answered it, but go ahead.

1              THE WITNESS:  The answer is that it is -- as

                2    long as the officer had reasonable suspicion to stop the

                3    vehicle, he could stop and ask about his association

                4    with anybody.

15:57           5         Q.    (By Mr. Robinson)   I'm not asking whether it

                6    was right or wrong for the officer to stop the vehicle.

                7    I'm asking if this conduct of following a vehicle,

                8    engaging in an enforcement stop, and --

                9              (Reporter interruption.)

15:57          10         Q.    (By Mr. Robinson)   -- questioning the driver

               11    about his association with a protestor is consistent

               12    with typical police practice in the city of Menlo Park.

               13              MR. MASTER:   I'm going to continue to object to

               14    that question as being vague and ambiguous.   It's also

15:58          15    argumentative, and I'd like to tell you why, if you'd

               16    let me.

               17              MR. ROBINSON:   I would appreciate it if you

               18    don't.

               19              MR. MASTER:   Okay.

15:58          20              Well, then, he can answer it one more time.

               21    And when he's done with that, he's done with that

               22    question, and we'll move on.

               23              THE WITNESS:   So long as the officer had

               24    reasonable suspicion to stop the vehicle, he could ask

15:58          25    any questions, whether it's about a protestor, whether

```
 1    it's about a drug deal he just saw, whether it's about a

 2    gang membership he has or a gang person he just spoke

 3    to.  That can happen.

 4        Q.   (By Mr. Robinson)  Is there any reason you're

15:58   5    unable to answer my question about whether it's typical

 6    police practice to follow a car like this?

 7            MR. MASTER:  Objection.  Argumentative.  Asked

 8    and answered.

 9            Don't answer that question.

15:58  10            Move on.

11        Q.   (By Mr. Robinson)  Are you going to follow your

12    attorney's instruction not to answer that question?

13        A.   I am.

14            MR. ROBINSON:  Could we mark the record, then.

15:59  15            Let's take a look at Exhibit 50, please.

16            (Exhibit 50 was marked for identification.)

17        Q.   (By Mr. Robinson)  Do you recognize Exhibit 50?

18        A.   I do.

19        Q.   It's a -- for the record, a multiple-page

16:00  20    document, MP120 to 124; correct?

21        A.   Yes.

22        Q.   If I could have you turn to MP122, please.

23    There is a reference in the document, about halfway down

24    this page, to contact with Michael Zeleny.

16:00  25            Do you see that?
```

1                    DECLARATION OF WITNESS

2

3           I hereby declare I am the deponent in the
    within matter; that I have read the foregoing deposition
4   and know the contents thereof, and I declare that the
    same is true of my knowledge except as to the matters
5   which are therein stated upon my information or belief,
    and as to those matters, I believe them to be true.
6           I declare under the penalties of perjury of the
    State of California that the foregoing is true and
7   correct.

8

            Executed this _____ day of _____,
9
    201____, at _____, _____.
10           (City)                              (State)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT 4**

Veritext Legal Solutions
866 299-5127

1  UNITED STATES DISTRICT COURT

2  NORTHERN DISTRICT OF CALIFORNIA

3  ---oOo---

4  MICHAEL ZELENY,

5      Plaintiff,

6  vs.                    Case No.  CV 17-7357 JCS

7  GAVIN NEWSOM, et al.,

8      Defendants.
   _____/

9  Pages 278 - 286 ARE CONFIDENTIAL

10  AND BOUND SEPARATELY

11

12  Pages 310 - 324 ARE CONFIDENTIAL

13  AND BOUND SEPARATELY

14

15   CONTINUED VIDEOTAPED DEPOSITION OF CHIEF DAVE BERTINI

16                  BY VIDEOCONFERENCE

17              (Volume II - Pages 229 to 534

18

19      Taken before DENISE M. LOMBARDO, CSR No. 5419

20                  RPR, RMR, RDR, CRR

21                  August 7, 2020

22

23

24

25

1          MR. MASTER:  Did you do that in my office?

2          THE WITNESS:  Yes.  Yeah.

3    BY MR. ROBINSON:

4      Q.  And you have -- separately from this

5    three-ring binder, you have your Zeleny file;          11:11

6    correct?

7      A.  That's correct.

8      Q.  And the Zeleny file is a set of materials

9    that you collected over the course of your work

10   with the Menlo Park Police Department?                  11:11

11     A.  That's correct.

12     Q.  Why do you maintain a binder of law

13   enforcement sensitive information about Mr. Zeleny?

14     A.  Are you speaking of my specific file or

15   this white binder we're looking at?                    11:12

16     Q.  Let's start with this white binder.  Do

17   you still have the white binder?

18     A.  It is in the office at the police

19   department.

20     Q.  Why does the police department maintain a   11:12

21   binder of law enforcement sensitive information

22   about Mr. Zeleny?

23     A.  The police department, in the course of

24   doing police work, sometimes will get information

25   from other law enforcement sources that is historic   11:12

Veritext Legal Solutions
866 299-5127

```
 1    information, that is good information to keep.
 2           Certainly this binder that deals with
 3    Mr. Zeleny is not the only binder or documents that
 4    police departments keep for historical data and/or
 5    for ready reference depending on the situation.      11:13
 6       Q.  Do you have any other similar binders of
 7    law enforcement sensitive information about other
 8    protesters?
 9       A.  Yes.
10       Q.  Which other protesters?                        11:13
11           MR. MASTER:  Objection.  How is that
12    relevant?  And it goes to invasion of privacy.  I'm
13    not sure how it's relevant.  Invades privacy of
14    third parties.
15    BY MR. ROBINSON:                                      11:13
16       Q.  Chief Bertini, you can go ahead and answer
17    the question unless you're instructed not to.
18           MR. MASTER:  Well, I'm going to instruct
19    him not to answer that question, Damion, because it
20    goes to third parties that are not pertinent or       11:13
21    relevant to this litigation.
22           You can ask him if they are, but,
23    otherwise, I'm going to instruct him not to answer
24    that because it goes to the official information
25    privilege, the legal law and motion privilege and
```

Page 273

```
 1    the designation privilege.

 2    BY MR. ROBINSON:

 3        Q.  Chief Bertini, I'm not asking you about

 4    the content of any of your materials.  All I'm

 5    asking is, do you have -- which other protesters do    11:14

 6    you maintain binders about?

 7            MR. MASTER:  Well, it's the same

 8    objection, Damion, because you're asking him to

 9    identify individuals by name.  So you can ask him

10    for approximate numbers, something like that, but     11:14

11    if you're identifying third parties, we are, by its

12    very nature, violating those privileges that I

13    mentioned before.

14            MR. ROBINSON:  I'm not going to argue the

15    issue with you.  You can either instruct or don't    11:14

16    instruct, and we'll reserve our rights.

17            MR. MASTER:  Okay.  I'm instructing him

18    not to answer that.

19    BY MR. ROBINSON:

20        Q.  Chief Bertini, are you going to follow       11:14

21    your counsel's instruction not to answer?

22        A.  Yes.

23        Q.  How many binders does the City of Menlo

24    Park -- strike that.

25            How many binders or other files does the      11:14
```

**EXHIBIT 5**

1          UNITED STATES DISTRICT COURT

2         NORTHERN DISTRICT OF CALIFORNIA

3                  ---oOo---

4   MICHAEL ZELENY,

5        Plaintiff,

6   vs.                   Case No.  CV 17-7357 JCS

7   GAVIN NEWSOM, et al.,

8        Defendants.
    _____/

9   Pages 278 - 286 ARE CONFIDENTIAL

10  AND BOUND SEPARATELY

11

12  Pages 310 - 324 ARE CONFIDENTIAL

13  AND BOUND SEPARATELY

14

15   CONTINUED VIDEOTAPED DEPOSITION OF CHIEF DAVE BERTINI

16              BY VIDEOCONFERENCE

17          (Volume II - Pages 229 to 534

18

19      Taken before DENISE M. LOMBARDO, CSR No. 5419

20              RPR, RMR, RDR, CRR

21              August 7, 2020

22

23

24

25

                              Page 229

1    the application?

2        A.  It is my recollection that there was some

3    e-mails asking for clarification, based on the

4    application, from the city attorney's office.

5        Q.  Was that before or after the City had made    10:53

6    a decision to deny the permit application?

7        A.  I don't know.

8        Q.  Let's shift gears a little bit.

9            I'm going to mark -- just give me a second

10   here.                                                  10:53

11           (Plaintiff's Exhibit 251 marked

12            for Identification.)

13   BY MR. ROBINSON:

14       Q.  We marked as Exhibit 251 a multiple-page

15   document.  The first page has a case caption on it,    10:54

16   and in the right-hand column of the case caption,

17   Defendant Dave Bertini's Second Supplemental

18   Response to Plaintiff's Interrogatories.

19           Do you see that?

20       A.  (No response.)                                 10:55

21       Q.  I couldn't hear the answer, Chief Bertini.

22       A.  I do.

23       Q.  Good.  Thank you.

24           Do you recognize this document?

25       A.  I do.                                          10:55

```
 1        Q.  If you could please turn to the page that
 2   has the caption "Verification," near the very end
 3   of the document.
 4        A.  Okay.
 5        Q.  Is that your signature?                    10:55
 6        A.  It is.
 7        Q.  You reviewed this document before you
 8   signed it?
 9        A.  I did.
10        Q.  Let's go to page 3, please.  Actually,     10:55
11   let's start on page 2 and carrying over to page 3.
12   There's interrogatory No. 1 and supplemental
13   response to interrogatory No. 1.  Read those, if
14   you would.
15        A.  (Witness complying.)                        10:56
16        Q.  I want to focus on the paragraph that
17   starts:  "In addition, the City has recently
18   discovered."  Do you see that?
19        A.  I do.
20        Q.  How did the City discover that it never    10:56
21   had legal authority to issue a permit?
22        A.  I'm not -- I'm not 100 percent sure.  My
23   understanding, from discussions with the city
24   attorney's office --
25            MR. MASTER:  Hold on.  If they're          10:56
```

Veritext Legal Solutions
866 299-5127

```
 1    discussions with the city attorney's office, then

 2    it's attorney-client-privileged communication.  If

 3    you have any understanding outside of what you've

 4    been told by an attorney, you're certainly entitled

 5    to answer.                                      10:57

 6            THE WITNESS:  Then I have no -- nothing

 7    else, aside from what I was discussing with the

 8    city attorney.

 9    BY MR. ROBINSON:

10       Q.  All right.  Let's -- taking that paragraph  10:57

11    as a whole that discusses the City's legal

12    authority and ownership of the median, do you have

13    any basis for knowledge about that -- the

14    information in that paragraph, other than what

15    you've been told by an attorney?                 10:57

16       A.  No.

17       Q.  For purposes of our record, Chief Bertini,

18    what were you told by an attorney concerning that

19    information?

20            MR. MASTER:  Again, just for the record,  10:57

21    you're asking Chief Bertini to disclose what he was

22    told by the city attorney's office, the city

23    attorney being the attorney for the City and the

24    staff.  Therefore, it calls for him to disclose

25    attorney-client-privileged communications, and I'll  10:58
```

Page 262

1    instruct him not to answer.

2         MR. ROBINSON:  I didn't quite hear you,

3    Todd.  Are you instructing him not to answer?

4         MR. MASTER:  Yes.

5    BY MR. ROBINSON:                              10:58

6         Q.  Chief Bertini, are you going to follow

7    your attorney's instruction not to answer?

8         A.  I am.

9         Q.  As the chief of police of the City of

10   Menlo Park, are Menlo Park police officers      10:58

11   authorized to enforce the laws on that median strip

12   on Sand Hill Road?

13        A.  Yes.

14        Q.  Does the city police department have

15   jurisdiction over the median strip on Sand Hill   10:58

16   Road?

17             MR. MASTER:  Objection.  Calls for a legal

18   conclusion.  Vague and ambiguous.

19             You can answer.

20             THE WITNESS:  The City of Menlo Park has    10:59

21   jurisdictional boundaries, but to be technical with

22   you, Counselor, police officers in the state of

23   California can actually use their police power

24   anywhere in the state.  So, yes, they have police

25   power over that median.                          10:59

                                        Page 263

EXHIBIT 6

```
1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3                      ---oOo---

4   MICHAEL ZELENY,

5        Plaintiff,

6   vs.                    Case No.  CV 17-7357 JCS

7   GAVIN NEWSOM, et al.,

8        Defendants.
    _____/

9   Pages 278 - 286 ARE CONFIDENTIAL

10  AND BOUND SEPARATELY

11

12  Pages 310 - 324 ARE CONFIDENTIAL

13  AND BOUND SEPARATELY

14

15   CONTINUED VIDEOTAPED DEPOSITION OF CHIEF DAVE BERTINI

16                 BY VIDEOCONFERENCE

17            (Volume II - Pages 229 to 534

18

19       Taken before DENISE M. LOMBARDO, CSR No. 5419

20                 RPR, RMR, RDR, CRR

21                 August 7, 2020

22

23

24

25
```

Veritext Legal Solutions
866 299-5127

1  specific requests to Mr. Zeleny as to the time,

2  place or manner?

3      A.  I do not believe that the City made

4  specific time, place, manner suggestions to

5  Mr. Zeleny, but I know there was an invitation to        04:23

6  discuss those issues.

7      Q.  Okay.  I'm going to go ahead and mark --

8  I'm going to introduce what was previously marked

9  as Exhibit 105.  It should pop up with the file

10  name 160504, Appeal Denial.                              04:24

11      A.  Okay.

12      Q.  Do you recognize this document?

13      A.  I recognize it as a letter.

14      Q.  A letter that was part of the

15  administrative record of Mr. Zeleny's permit            04:24

16  application and appeal?

17      A.  Yes.

18      Q.  Is it consistent with your recollection

19  that the City treated Mr. Zeleny's appeal as a new

20  permit application?                                      04:25

21      A.  I don't understand what you're asking.

22          MR. MASTER:  Read the document.

23          THE WITNESS:  Okay.  Let me read the

24  document.

25          MR. ROBINSON:  Okay.                            04:25

Page 448

```
 1          THE WITNESS:  Yes.   In reading the
 2    document, the answer is yes.   The city attorney's
 3    office was treating his appeal as a new
 4    application, as there were several modifications
 5    that he made to that application.                    04:26
 6    BY MR. ROBINSON:
 7         Q.  And the new application was denied through
 8    this letter; correct?
 9         A.  Correct.
10         Q.  Do you know if anyone, other than the city   04:26
11    attorney's office, was involved in making the
12    decision to deny the renewed application or the new
13    application?
14         A.  Yes.  The city attorney's office, and I
15    spoke to the city attorney, and it is my              04:27
16    recollection that Matt Milde also spoke to the city
17    attorney.
18         Q.  What did you tell the city attorney?
19              MR. MASTER:  Objection.  Don't answer
20    that.  That's attorney-client-privileged             04:27
21    communication.
22    BY MR. ROBINSON:
23         Q.  Are you going to follow your attorney's
24    instruction not to answer?
25         A.  Yes.                                         04:27
```

Veritext Legal Solutions
866 299-5127

```
 1       Q.  Does the city attorney have authority to

 2  approve or deny permit applications?

 3       A.  Certainly.

 4       Q.  Did you believe that Mr. Zeleny's renewed

 5  permit application should be denied?                04:27

 6       A.  My -- my belief was that the concern --

 7  I'm sorry.  Was there something else?

 8       Q.  No.

 9       A.  My belief was that the concern that we had

10  originally regarding the time, place, manner of     04:28

11  this permitted special event was still a concern as

12  far as location, still the confusion regarding the

13  exception to the open carry, the traffic -- the

14  traffic issues, the public safety issues both for

15  Mr. Zeleny, himself, and for the public at large.   04:28

16            So all those -- all those were still

17  concerns of the police department that I, in fact,

18  did let the city attorney know.

19       Q.  Do you know if Mr. Milde had a view about

20  whether this -- what was treated as a renewed       04:28

21  application should be denied?

22       A.  I don't know the answer to that.

23       Q.  Did you talk to Mr. Milde about it?

24       A.  Not about this second application, no.

25       Q.  Did the city attorney make the ultimate    04:29
```

Veritext Legal Solutions
866 299-5127

**EXHIBIT 7**

**TODD H. MASTER [SBN. 185881]**
**tmaster@hrmrlaw.com**
**HOWARD ROME MARTIN & RIDLEY LLP**
1900 O'Farrell Street, Suite 280
San Mateo, CA 94403
Telephone: (650) 365-7715
Facsimile: (650) 364-5297

Attorneys for Defendants
CITY OF MENLO PARK and
DAVE BERTINI

**HOWARD ROME MARTIN & RIDLEY LLP**
1900 O' FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| MICHAEL ZELENY, an individual | Case No. 17-cv-07357-RS |
| Plaintiff, | **DEFENDANT DAVE BERTINI'S SECOND SUPPLEMENTAL RESPONSE TO PLAINTIFF'S INTERROGATORIES** |
| vs. | |
| EDMUND G. BROWN, JR., an individual, in his official capacity, et al. | |
| Defendants. | |

RESPONDING PARTY:      Defendant DAVE BERTINI

PROPOUNDING PARTY:    Plaintiff MICHAEL ZELENY

SET NUMBER:                 One (1)

COMES NOW responding party and answers the interrogatories of the propounding party. The answers to these interrogatories are based upon the knowledge and information available to the responding party as of the date of these answers. Responding party has not yet completed its

HOWARD ROME MARTIN & RIDLEY LLP
1900 O' FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

investigation and discovery in this action and thus reserves the right to introduce at trial any information not included in these answers obtained through investigation and discovery subsequent to the date of these answers. Responding party also has not yet completed its review and analysis of the information it presently possesses and reserves the right to introduce at trial any information not included in these answers which is warranted by subsequent review or analysis. Responding party further reserves the right to amend the answers to these interrogatories and to correct any inadvertent errors and/or omissions.

**INTERROGATORY NO. 1:**

For each denial and affirmative defense in your Answer in this action, state all facts upon which such denial or affirmative defense is based.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

Objection. Responding party objects to this interrogatory to the extent it is vague, ambiguous and overbroad. This interrogatory is also compound. In addition, responding party objects to this interrogatory to the extent it seeks the premature disclosure of expert opinion testimony in violation of the attorney work product doctrine.

This interrogatory seeks to impose an unfair and unreasonable burden on responding party. The Federal Rules of Civil Procedure and relevant case law require a defendant to assert all applicable or potentially applicable affirmative defenses at the outset of the litigation, and prior to discovery, or risk waiver of those affirmative defenses. As discovery progresses, responding party will seek to develop the factual basis for each of its affirmative defenses.

Without waiving these objections, pursuant to FRCP 33(d), responding party respectfully refers plaintiff to the following documents that have previously been produced by the City in this litigation and/or identified as exhibits to depositions which include and identify the facts supporting the City's affirmative defenses: MP000001 – 5, MP00007 – 19, MP000023 – 31, MP000036 – 40, MP000042 – 47, MP000050 – 52, MP000059 – 60, MP000067, MP000080 – 83, MP000096 - 97, MP000100 – 101, MP000105 – 107, MP000114 – 119, MP000121 – 122,

MP000126 – 127, MP000131 – 132, MP000135 - 147, MP000151 – 179, MP000182 – 204,

MP000218 - 221, MP000234 – 242, MP000257 – 274, MP000285 – 305, MP000321 – 324,

MP000329 – 344, MP000351 – 370, MP000373 – 382, MP000390 – 401, MP000435 – 450,

MP000463 – 467, MP000473 – 486, MP000492 – 498, MP000501 – 505, MP000566 – 577,

MP000582 – 583, MP000601 – 602, MP000633, MP000680 – 683, MP000685 – 704, MP000717

– 722, MP000750 – 755, MP000758 – 763, MP000771 – 800, MP000809 – 826, MP000834 – 858,

MP000863 – 866, MP000867 – 872, MP000879 – 881, MP000883 – 886, MP000902 – 903,

MP000948 – 1205, MP001218 - 1222, MP001229 – 1238, MP001242 – 1253, MP001268 – 1272,

MP001279 – 1283, MP001290 – 1299, MP001311 – 1321, MP001331 – 1341, MP001353 – 1367,

MP001381 – 1426, MP001449 – 1566, MP001567 – 1779, MP001838 – 1841, MP001842,

MP001843 – 1901, MP001902 – 4888, MP004889 – 5083, MP005084 – 5099, MP005100 – 5520,

the audio recording from plaintiff's appeal hearing before City Manager, video-recording of

plaintiff's appeal to City Council of Menlo park, Audio-recordings of Menlo Park Police

Department Case Nos. 10-2666, 10-2678, 10-2687, 10-2700, 10-2712, 10-2739, 12-495, 12-1596,

12-1805, 12-1824, 12-1903 and 12-1914, MP005521 – 5529, MP006074-6617, MP001792 -1831,

and https://www.menlopark.org/292/Special-event-permits.

In addition, the City has recently discovered and contends that it never had legal authority

to issue plaintiff a permit to perform any activity on the center median of Sand Hill Road as set

forth in his application to the City of Menlo Park for a special event permit because the center

median is owned, operated and controlled by the State of California and is within the State of

California's right-of-way.

**INTERROGATORY NO. 2:**

For each denial and affirmative defense in your Answer in this action, IDENTIFY all

persons with knowledge of any facts supporting such denial or affirmative defense is based.

[For purposes of these Interrogatories, "IDENTIFY" means:

HOWARD ROME MARTIN & RIDLEY LLP
1900 O' FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

Maintenance Agreement dated September 16, 1969, Resolution No. 2276 of the City Council for

Menlo Park Approving Freeway Maintenance Agreement, the July 1, 1972 Agreement for

Maintenance of State Highway in the City of Menlo Park, City of Menlo Park Resolution No. 2559

Approving Agreement for Maintenance of State Highway in the City of Menlo Park, Amendment 1

to Agreement for Maintenance of State Highways in City of Menlo Park, Caltrans D4 Right of

Way Map, Agreement for Maintenance of State Highway in the City of Menlo Park dated

November 21, 1972, and Amendment No. 2 to Agreement for Maintenance of State Highways in

City of Menlo Park dated October 18, 2017. These documents are being produced herewith as

MP006618 – 6682.  To the extent it may also potentially be responsive, the City respectfully refers

plaintiff to the Caltrans Encroachment Permits Manual, which is equally available to plaintiff at

https://dot.ca.gov/programs/traffic-operations/ep/ep-manual. Chapter 514 refers to Special Event

permits.

Date:  May 27, 2020                                HOWARD ROME MARTIN & RIDLEY LLP

By:_____
        Todd H. Master
        Attorneys for Defendants
        CITY OF MENLO PARK and
        DAVE BERTINI

HOWARD ROME MARTIN & RIDLEY LLP
1900 O' FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

Maintenance Agreement dated September 16, 1969, Resolution No. 2276 of the City Council for

Menlo Park Approving Freeway Maintenance Agreement, the July 1, 1972 Agreement for

Maintenance of State Highway in the City of Menlo Park, City of Menlo Park Resolution No. 2559

Approving Agreement for Maintenance of State Highway in the City of Menlo Park, Amendment 1

to Agreement for Maintenance of State Highways in City of Menlo Park, Caltrans D4 Right of

Way Map, Agreement for Maintenance of State Highway in the City of Menlo Park dated

November 21, 1972, and Amendment No. 2 to Agreement for Maintenance of State Highways in

City of Menlo Park dated October 18, 2017. These documents are being produced herewith as

MP006618 – 6682.  To the extent it may also potentially be responsive, the City respectfully refers

plaintiff to the Caltrans Encroachment Permits Manual, which is equally available to plaintiff at

https://dot.ca.gov/programs/traffic-operations/ep/ep-manual. Chapter 514 refers to Special Event

permits.

Date:  May 27, 2020                              HOWARD ROME MARTIN & RIDLEY LLP

By:_____
　　　　　Todd H. Master
　　　　　Attorneys for Defendants
　　　　　CITY OF MENLO PARK and
　　　　　DAVE BERTINI

**EXHIBIT 8**



CITY OF
MENLO
PARK

OFFICE OF THE CITY ATTORNEY

1100 ALMA STREET / MENLO PARK, CA 94025 / 650.324.9300 / FAX 650.324.0227

May 4, 2016



EXHIBIT

Milde   105

C.T. 3-5-2020

**VIA EMAIL: michael@massmeans.com**
**AND U.S. MAIL**

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

Re:   Appeal of Denial of Special Event Permit Application

Dear Mr. Zeleny:

The City of Menlo Park ("City") is in receipt of your email dated April 15, 2016. Your email indicates that you are lodging an appeal of the denial of your special event permit application. The original special event permit application was submitted on July 10, 2015, to which the City formally responded by letter dated September 21, 2015. In that letter, I indicated that your application was being denied as it was incomplete and did not meet the criteria of a special event.

Your email of April 15, 2016, outlines several modifications and provides additional information to supplement your original application, and therefore, the City is treating it as a revised application rather than an appeal. The April 16th email includes a Google map with a red box showing the proposed location of the event. The email also indicates that you no longer intend to film a documentary, but instead will put on an "entertainment event" in which you will be live-streaming a video showing the reaction of individuals who drive by your protest. Lastly, the revised application indicates in the "Event Narrative" that you "shall be present on site around the clock, equipped with fully operational, exposed and loaded firearms, in full compliance with all applicable laws."

Based on a review of your revised application, the City is denying your application on the basis that it is incomplete and it does not meet the criteria of a special event. With respect to the revised application still being incomplete, the application fails to describe how you intend to set up your presentation so that the City can analyze whether traffic control will be necessary or what other conditions might be necessary as part of the approval of the application, nor does it specify the hours/length of the event. For example, there is no indication where you intend to place your tent, generator, video presentation, portable rest room,

Printed on recycled paper

MP000463

temporary lighting, sound system, etc. The revised application is deficient in that the City needs substantially more detail in order to analyze the potential for your event distracting drivers, including the volume of sound you intend to make, the brightness of your projector, location and size of items you intend to place on the median strip, and how you intend to transport your set-up to the location (to determine compliance with the Vehicle Code).

Also, the revised application still does not propose an event that requires a special event permit. The application does not propose an event that is open to the community at large to participate in (it describes a one man protest). With the essential element of community participation, a special event permit is not necessary; protests do not require special events permits.

I also want to raise three concerns regarding the proposed event:

1. The proposed event has no defined term (your email indicates an event of "indefinite" duration). Given the presence of guns and the display of a pornographic image at along a major high-speed roadway, the City would need to staff the event with police and traffic supervision. However, the City does not have staff to monitor an event that could last days, weeks or months.

2. You are proposing to illegally open-carry weapons. It is illegal to open-carry an unloaded or loaded weapon in California. You are citing to the movie/entertainment exception, but that exception does not allow for the open-carrying of *loaded* weapons or weapons "adjoined by ample supplies of ammunition." Penal Code §16840 provides that a firearm shall be deemed to be "loaded" whenever both the firearm and the unexpended ammunition capable of being discharged from the firearm are in the immediate possession of the same person. Lastly, a practical reading of the entertainment exception would require the Department of Justice or the Menlo Park Police Department to authorize your event.

3. We have serious concerns regarding the proposed location of the event and will likely prohibit locating an event as generally described in your email and attachments in the median area of Sand Hill Road as it would be a traffic and safety hazard – regardless of how the event is characterized.

While it is clear that this is not a "special event," if you wish to appeal this denial, please provide written notice to Community Services Director Cherise Brandell (and copied to the undersigned.) Ms. Brandell's contact information is as

follows: Email (cebrandell@menlopark.org) and telephone (650) 330-6618. Alternatively, you may provide additional detail to respond to the above-outlined issues.

Sincerely,

William L. McClure
City Attorney

WLM:rr
cc:   <u>Via email only</u>
      Dave Bertini, Commander
      Cherise Brandell
      Matt Milde

MP000465

# **PROOF OF SERVICE**

I hereby certify that on October 9, 2020, I electronically filed the foregoing document using the Court's CM/ECF system. I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

s/ Gabrielle Bruckner
Gabrielle Bruckner