David W. Affeld, State Bar No. 123922
Damion Robinson, State Bar No. 262573
David Markevitch, State Bar No. 256163
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:     (310) 979-8700

Attorneys for Plaintiff
Michael Zeleny

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ZELENY,

    Plaintiff,

       vs.

GAVIN NEWSOM, *et al.*,

    Defendants.

Case No. CV 17-7357 RS

Assigned to:
The Honorable Richard G. Seeborg

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO MAKE CLARIFYING AMENDMENT TO SECOND AMENDED COMPLAINT**

Date:  October 29, 2020
Time: 1:30 p.m.
Courtroom 3, 17th Floor

Action Filed:  December 28, 2017
Trial Date:     [Not Set]

## I.    INTRODUCTION

Defendant Xavier Becerra ("Becerra") provides no basis to deviate from the strong policy of granting amendments with extreme liberality—particularly amendments encompassed within the facts alleged in the existing pleadings.  He offers no authority nor any evidence supporting a contrary result.  He does not distinguish the myriad of cases cited in the opening brief, showing that (a) a plaintiff is not required to plead his legal theory in the first place; and (b) even if Zeleny were, amendment must be granted absent a showing of prejudice or bad faith.  The policy of the Federal Rules is to try cases on their merits, not procedural

- 1 -

1   technicalities.

2            **First**, Becerra fails to cite a single authority for his argument that Zeleny needs

3   leave to add a "new cause of action."  The Federal Rules do not contemplate "causes of action,"

4   but claims.  Claims are the facts alleged, not the legal theories attached to them.  Becerra cannot

5   dispute that all of the facts supporting Zeleny's amendment are included in the existing

6   complaint—and have been included since the original complaint.

7            **Second**, Becerra fails to show prejudice from an amendment clarifying Zeleny's

8   theory.  While he now argues that Zeleny's facial challenge "may" require factual

9   development—directly contrary to the position he has taken repeatedly—he does not identify

10   any new facts or new discovery that would be needed.  He does not even bother to submit a

11   declaration of counsel.  A party cannot ward off a valid amendment by raising the specter that it

12   "may" require unidentified discovery.

13            To the extent that amendment is needed at all, Becerra has done nothing to

14   overcome the extremely liberal standard in this Circuit.

15

16  **II.**    **<u>ARGUMENT</u>**

17       **A.**      **The Federal Rules Did Away with Code Pleading Decades Ago.**

18            Becerra's argument that Zeleny is adding a "new cause of action" ignores the

19   Federal Rules.  The Federal Rules do not contemplate "causes of action" – *i.e.*, facts tied to a

20   specific legal theory.  *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992)

21   (Easterbrook, J.)  This is a "throwback to code pleading, perhaps all the way back to the forms of

22   action." *Id.*

23            Causes of action are not required in federal practice, and a plaintiff is not stuck to

24   the theories alleged in his complaint.  *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12

25   (2014) ("[t]he federal rules effectively abolish the restrictive theory of the pleadings doctrine,

26   making it clear that it is unnecessary to set out a legal theory").  A plaintiff is not required to

27   "break out all of her legal theories into separate 'causes' of action with precise accompanying

28   facts and law." *Ostrofky v. Sauer*, No. 07-987, 2010 WL 891263, at *4 (E.D. Cal. Mar. 8, 2010).

Instead, the Federal Rules require a plaintiff to state "claims" for relief.  Fed. R. Civ. P. 8(a)(2).  *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("[n]otice pleading requires the plaintiff to set forth … claims for relief, not causes of action").  A claim is an "aggregate of operative facts which give rise to a right enforceable in the courts." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).  "One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate." *N.A.A.C.P.*, 978 F.3d at 292.  A party can recover on any theory consistent with the facts alleged.  *See, e.g., Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d 1075, 1082 (9th Cir. 2005) (noting that plaintiff could prevail on unpled novation theory where facts alleged supported novation).  A plaintiff is "required to do no more" than to state facts entitling him to relief.  *Johnson*, 574 U.S. at 12.

Becerra does not and cannot argue that the facts underlying Zeleny's claims are missing from the complaint.  Zeleny brings a facial challenge to the open carry statutes, including the "authorized participant" exception.  He quotes the exact statutory language at issue.  He alleges that there are differing interpretations.  He states a constitutional challenge under the Fourteenth Amendment.  Becerra ignores the overwhelming authority, cited in the moving papers and above, that this is sufficient.  Zeleny's vagueness theory is well within the scope of the facts alleged.

Although no amendment is needed, as in *Johnson*, "[f]or clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings,'" Zeleny should be allowed to make a clarifying amendment.  574 U.S. at 12.

**B.     There Was No Bad Faith and Is No Prejudice.**

As Becerra concedes, absent prejudice or bad faith, no amount of time delay is sufficient to deny leave.  Opp. at p. 1; *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981).  Becerra has not come close to showing bad faith or prejudice.  He fails to submit any evidence whatsoever.

Zeleny seeks amendment in direct response to issues that came out during discovery.  After fighting to avoid discovery into his interpretation and application of the statutes, Becerra cannot seriously argue that Zeleny is seeking leave in bad faith.  It is true that

1  the statutes have not changed since 2012 or 2013.  It is also true that over the past two months,

2  Becerra—whose job it is to understand and enforce them—has made clear that he has no idea

3  what they mean.  Even now, after two orders to do so, he cannot explain how the statutes apply.

4  *See* Robinson Supp. Decl., Ex. 1 at pp. 24-32.  This made the vagueness of the statutes apparent

5  and naturally prompted Zeleny to revisit his legal arguments.

6          Becerra's argument that he is prejudiced by a *facial* challenge to the statutes is

7  disingenuous.  He has repeatedly taken the position that a facial challenge is a pure matter of law

8  and no discovery is needed.  *See*, *e.g.*, Letter Brief dated June 4, 2020, Dkt. No. 127, at p. 4

9  ("[s]uch a pure legal conclusion is not the proper subject of written or oral discovery"); Letter

10 Brief dated August 26, 2020, Dkt. No. 135, at p. 5 ("Zeleny's facial claims … will involve pure

11 issues of law.  It will not involve any issues of fact, or issues of law applied to fact").  Becerra's

12 position—at least until Zeleny filed this motion—was as follows:

13         Discovery may be sought about facts, or about the application of law to facts, but
           not about pure questions of law. ***In this facial constitutional challenge, the***
14         ***meaning of the California Penal Code will involve statutory interpretation***
           ***divorced from the facts of the case. Zeleny and the Attorney General will have***
15         ***equal access to relevant legislative history and other legal resources, and the***
           ***Court will determine whether Zeleny is entitled to the judgment that he seeks***.
16         Discovery about the Attorney General's legal theories is not permitted and will
           improperly infringe on the Attorney General's mental impression work product.
17

18 Letter Brief dated August 26, 2020, Dkt. No. 135, at p. 4 (emphasis added).

19          Now, however, Becerra claims that "[w]hile a facial challenge generally involves

20 questions of law," a vagueness challenge "may also depend on facts about what conduct a

21 plaintiff is engaged in, or wants to engage in."  Opp. at p. 3.  He cites no authority and identifies

22 no facts or discovery that he believes he needs.  *See United States v. Jess*, No. 05-3964, 2008

23 WL 480291, at *2 (N.D. Cal. Feb. 19, 2008) (finding no significant prejudice where party

24 opposing leave did not identify any specific discovery that it needed).  The conduct Zeleny

25 "wants to engage in" is detailed in an exhaustive administrative record.

26          The burden was on Becerra to show prejudice.  *See DCD Programs, Ltd. v.*

27 *Leighton*, 833 F.2d 183, 186 (9th Cir. 1997).  He fails to carry it.

28

III.     **CONCLUSION**

   Becerra has failed to show that amendment is required.  If it is required, he has failed to show that he would be prejudiced by it. This motion should be granted to avoid any further dispute or confusion.

Dated:  October 14, 2020     Respectfully submitted,

         s/ Damion Robinson
         David W. Affeld
         Damion D. D. Robinson
         David Markevitch
         Affeld Grivakes LLP

         Attorneys for Plaintiff Michael Zeleny

REPLY ISO MOTION FOR LEAVE TO AMEND

1

## SUPPLEMENTAL DECLARATION OF DAMION ROBINSON

2          I, Damion Robinson, declare:

3          1.      I and my law firm are counsel of record for plaintiff Michael Zeleny in this

4    action.  I have personal knowledge of the facts below.

5          2.      Attached as **Exhibit 1** is a true copy of Defendant Attorney General Xavier

6    Becerra's Amended Responses to Plaintiff Michael Zeleny's First Set of Interrogatories, served

7    October 6, 2020.

8          I declare under penalty of perjury under the laws of the United States that the

9    foregoing is true and correct.  Executed this 13th day of October, 2020 at Los Angeles,

10   California.

11          .

                                                    s/ Damion Robinson
12                                                  Damion D. D. Robinson

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOTION FOR LEAVE TO AMEND

**EXHIBIT 1**

1    XAVIER BECERRA
     Attorney General of California
2    ANTHONY R. HAKL
     Supervising Deputy Attorney General
3    NOREEN P. SKELLY
     Deputy Attorney General
4    State Bar No. 186135
       1300 I Street, Suite 125
5      P.O. Box 944255
       Sacramento, CA 94244-2550
6      Telephone: (916) 210-6057
       Fax: (916) 324-8835
7      E-mail: Noreen.Skelly@doj.ca.gov
     *Attorneys for Defendant Attorney General Xavier*
8    *Becerra*

9

10                    IN THE UNITED STATES DISTRICT COURT

11                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                            SAN FRANCISCO DIVISION

13

14   **MICHAEL ZELENY, an individual,**            3:17-cv-07357 RS (NC)

15                                  Plaintiff,      **DEFENDANT ATTORNEY GENERAL**
                                                    **XAVIER BECERRA'S AMENDED[1]**
16             v.                                   **RESPONSES TO PLAINTIFF MICHAEL**
                                                    **ZELENY'S FIRST SET OF**
17                                                  **INTERROGATORIES**
     **GAVIN NEWSOM, an individual, in his**
18   **official capacity; XAVIER BECERRA, an**
     **individual, in his official capacity; CITY OF**
19   **MENLO PARK, a municipal corporation;**
     **and DAVE BERTINI, in his official**
20   **capacity,**

21                                Defendants.

22

23       PROPOUNDING PARTY:        Plaintiff Michael Zeleny

24       ANSWERING PARTY:          Defendant Attorney General Xavier Becerra

25       SET NUMBER:               One

26   */ / /*

27   ──────────────────
            [1] On September 4, 2020, the Court ordered Defendant Becerra to amend his responses to
28   Plaintiff Michael Zeleny's interrogatories 10 through 16 and 22 through 25. *See* Dkt. No. 140
     (affirmed by Dkt. No. 148).

                                              1

**PRELIMINARY STATEMENT**

For purposes of these interrogatories, Plaintiff Zeleny has used the terms "YOU" and "YOUR" to, "refer to Xavier Becerra as the Attorney General of the State of California. These interrogatories seek the official position of the State of California." (Plaintiff Zeleny's Interrogatories, p. 2, lines 22-24.) Defendant Becerra objects to Plaintiff Zeleny's definition of "YOU" and "YOUR" as encompassing the official position of the State of California. The phrase "the official position of the State of California" is vague and overbroad. The State of California is made up of the Executive, Legislative, and Judicial branches of government, which are separate and co-equal. California's Executive branch includes a number of elected officials including, but not limited to the Attorney General of California. Moreover, the State of California is not a defendant in this action—nor would it be an appropriate defendant in this action. As a general matter, the proper respondent or defendant in a challenge to a state law or policy is the officer or agency charged with implementing it. See *Serrano v. Priest*, 18 Cal.3d 728, 752 (1976); *State v. Superior Court, 12 Cal.3d 237, 255* (1974).

Defendant Becerra objects to each interrogatory to the extent that it purports to impose any obligation or requirement greater than or different to the obligations or requirements set forth in the Federal Rules of Civil Procedure and/or the applicable rules and orders of this Court.

Defendant Becerra objects to each interrogatory to the extent that it calls for the disclosure of information protected from disclosure by the attorney work-product doctrine, the attorney-client privilege, the deliberative process privilege and/or any other applicable privilege or protection. Should Defendant Becerra disclose any privileged or otherwise protected information in these responses, the disclosure is inadvertent and does not constitute a waiver of the privilege or protection.

Defendant Becerra has not completed the investigation of the facts and issues relating to Plaintiff Zeleny's claims and has not completed discovery in this action. All of the answers contained herein are based solely upon information and documents which are presently available to, and specifically known by, Defendant Becerra, and the answers disclose only those contentions which presently occur to Defendant Becerra. Further discovery, independent

2

1   investigation, legal research and analysis may supply additional facts and may lead to additions,

2   changes, and variations from the answers herein.

3        The following answers are given without prejudice to the right to produce evidence and/or

4   witnesses or rely on facts which Defendant Becerra may later discover.  Defendant Becerra

5   accordingly reserves the right to change any and all answers herein as additional facts are

6   ascertained, witnesses identified and legal research is completed.  The answers contained herein

7   are made in good faith in an attempt to supply as much factual information and as much

8   specification of legal contention as is presently known, and in no way prejudices Defendant

9   Becerra in relation to further discovery and proceedings.

10       Defendant Becerra incorporates by reference every general objection set forth above into

11  each specific answer set forth below.  A specific response may repeat a general objection for

12  emphasis or some other reason.  The failure to include a general objection in any specific answer

13  does not waive any general objection to that interrogatory.

14       **INTERROGATORY NO. 1**:  State all facts on which You base Your contention, if any,

15  that California Penal Code § 26350 is constitutional under the Second Amendment, including any

16  legitimate goals or public interests intended to be served by that statute.

17       [As used in these interrogatories,

18       (a) "You" and "Your" refer to Xavier Becerra as the Attorney General of the State of

19  California.  These interrogatories seek the official position of the State of California;

20       (b) "Second Amendment" means the Second Amendment to the United States

21  Constitution].

22       **RESPONSE TO INTERROGATORY NO. 1**:

23       Defendant Becerra incorporates by reference the above-stated general objections as though

24  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

25  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

26  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

27  that is relevant to Plaintiff's claims.  Defendant Becerra also objects to this interrogatory on the

28  grounds that it seeks Defendant Becerra's contentions regarding the constitutionality of California

3

1    Penal Code § 26350, and thus poses a question of pure law.  Defendant Becerra is not required to

2    respond to interrogatories raising questions of pure law.  See *AngioScore, Inc. v. TriReme Med.,*

3    *Inc.*, No. 12-cv-03393-YGR (JSC), 2014 WL 7188779, at *5 (N.D. Cal. Dec. 16, 2014)

4    ("[I]nterrogatories directed to issues of 'pure law'—i.e., abstract legal issues not dependent on the

5    facts of the case are not permitted") (citation and some internal punctuation omitted).  A party

6    responding to interrogatories "is not required to write his[, her, or its] brief on a motion for

7    summary judgment in his[, her, or its] responses to interrogatories." *Larson v. Trans Union, LLC*,

8    No. 3:12-CV-05726-WHO, 2017 WL 1540710, at *1 (N.D. Cal. April 28, 2017) (citation and

9    some internal punctuation omitted).

10   Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

11   follows:  California Penal Code § 26350 is constitutional under the Second Amendment.

12   In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the United States Supreme Court

13   recognized that the Second Amendment protects an individual right to keep and bear arms.  554

14   U.S. at 636.  The *Heller* Court did not, however, "undertake an exhaustive historical analysis . . .

15   of the full scope of the Second Amendment" or attempt to "clarify the entire field." *Id.* at 626,

16   635.

17   First, *Heller* explains that "the most natural reading of 'keep Arms'" is "to 'have

18   weapons,'" 554 U.S. at 582, and that "bear arms" is most naturally read to mean "'wear, bear, or

19   carry upon the person or in clothing or in a pocket, for the purpose of being armed and ready for

20   offensive or defensive action in a case of conflict with another person,'" *id.* at 584 (ellipses

21   omitted).

22   Second, the right to bear arms must be construed and applied with careful attention to its

23   "historical background." *Heller*, 554 U.S. at 592; see *id.* At 576-626.  This is critical "because it

24   has always been widely understood that the Second Amendment, like the First and Fourth

25   Amendments, codified a *pre-existing* right," and "declares only that is 'shall not be infringed.'"

26   *Id.*, at 592.  Thus, while the Second Amendment's inclusion in the Bill of Rights indicates that the

27   right to bear arms ranks as fundamental, nothing about its enumeration in the Constitution

28

1  changed the right into anything more comprehensive or absolute than would have been

2  understood and expected by "ordinary citizens in the founding generation." *Id.* at 577.

3      Third, that commonly understood right was and is "not unlimited." *Heller*, 554 U.S. at 595,

4  626.  It is not a right "to keep and carry any weapon whatsoever in any manner whatsoever and

5  for whatever purpose," *id.* at 626, or "to carry arms for any sort of confrontation," *id.* at 595.  The

6  core individual right recognized by *Heller* is the right to keep and bear arms "in defense of hearth

7  and home."  554 U.S. at 635; see also *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010)

8  (plurality op.) (*Heller's* "central holding" was that "the Second Amendment protects a personal

9  right to keep and bear arms for lawful purposes, most notably for self-defense within the home.").

10  That does not mean that the right to "bear" has no scope or application beyond the home or its

11  immediate environs.  But nothing in *Heller* suggests that it applies in exactly the same in all

12  places, so that a restriction on bearing arms in public must be treated just like a restriction on

13  bearing in or around the home.  In particular, nothing in *Heller* dictates that, as Plaintiff Zeleny

14  seems to contend, that the Second Amendment embodies an individual right to openly carry a gun

15  in almost any public place.

16      On the contrary, *Heller* makes clear that Second Amendment rights are subject to many

17  reasonable regulations.  *See* 554 U.S. at 636.  Indeed, the Second Amendment "by no means

18  eliminates" States' "ability to devise solutions to social problems that suit local needs and

19  values." *McDonald,* 561 U.S. at 785.

20      *Heller* does not recognize any unfettered right to carry firearms in the crowded urban areas,

21  based solely on an individual's stated desire to be "'armed and ready for offensive or defensive

22  action in case of conflict with another person,'" 554 U.S. at 584.  Rather, under *Heller*, Plaintiff

23  Zeleny's challenge to Penal Code § 26350 must be evaluated, in the first instance, by examining

24  "the historical understanding of the scope of that right." *Id.* at 625. The challenge cannot succeed

25  if the State's restrictions are a type of reasonable public regulation that has long been considered

26  consistent with a private right to bear arms.  *Cf. id.* at 626-627.

27      "No fundamental right—not even the First Amendment—is absolute." *McDonald*, 561

28  U.S. at 802 (Scalia, J., concurring).  Just as the First Amendment does not confer a right to speak

1    in any time, place or manner, history and precedent teach that the Second Amendment does not

2    confer the right to carry guns anywhere or at any time.  See *Heller*, 554 U.S. at 595.  California's

3    laws regulating the public carrying of firearms strike a permissible balance between preserving

4    order and public safety and accommodating the desire of some residents to carry guns.  There are

5    consistent with traditional restrictions on public carry, and are presumptively lawful on that basis.

6        Where text, history, and tradition show that a challenged law is consistent with the Second

7    Amendment, the restriction "'passes constitutional muster'" and the court's inquiry "'is

8    complete.'"  *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (en banc); see Heller,

9    554 U.S. at 626, 627 n.26.

10        California broadly allows the carrying of firearms in places and circumstances where it has

11   traditionally been common: in or immediately around an individual's home or place of business

12   and on much other private property with permission; in less-populated areas and during activities

13   such as hunting; and in circumstances of immediate and grave danger to person or property when

14   law enforcement is not available.  It also allows qualified individuals to obtain licenses to carry

15   more generally, if they can establish "good cause" under standards set by local officials who are

16   most familiar with the needs and desires of their own communities.

17        However, there is an "historical prevalence" of public carry restrictions similar to Penal

18   Code § 26350.  *Kachalsky v. Cty of Westchester*, 701 F.3d 81, 96 (2nd Cir. 2012).  Because

19   "[f]irearms have always been more heavily regulated in the public sphere," the right to bear arms

20   "most certainly operates in a different manner" in that context than when evaluating restrictions

21   that impinge directly on the core right to keep and carry guns in the home.  *Drake v. Filko*, 724

22   F.3d 426, 430 n.5. (3rd Cir. 2013).

23        This makes good functional sense.  When individuals move outside their homes—and

24   particularly when they move about in populated areas —their interest in carrying a firearm is

25   much more likely to come into conflict with the public interest in order and safety.  *See, e.g.*,

26   *Gould v. Morgan*, 907 F.3d 659, 672, (1st Cir. 2018).  The "inherent" risk that firearms present

27   when carried in public "distinguishes the Second Amendment right from other fundamental rights

28   . . . such as the right to marry and the right to be free from viewpoint discrimination, which can be

6

1    exercised without creating a direct risk to others. *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121,

2    1126 (10th Cir. 2015).  And as the Fourth Circuit observed, it "is not far-fetched to think" that

3    Heller's focus on the "core" right to protect the home was born out of a recognition that the

4    danger of "tragic act[s]" of violence "would rise exponentially as one moved the right from the

5    home to the public square." *United States v. Masciandaro*, 638 F.3d 458, 475-476 (4th Cir. 2011)

6    (Wilkinson, J.).

7           There is a legitimate role for public regulation touching on even our most fundamental

8    rights—especially when there is or can be genuine tension between the exercise of individual

9    rights and the safety of members of the public and law enforcement officers.

10          When, as here, a court will review a challenged statute under intermediate scrutiny, courts

11   ask whether the law promotes a "significant, substantial, or important government objective," and

12   whether there is a "'reasonable fit' between the challenged law and the asserted objective." *Peña*

13   *v. Lindley*, 898 F.3d 969, 979 (9th Cir. 2018).  While the State must show that the law "promotes

14   a substantial government interest that would be achieved less effectively absent the regulation," it

15   need not demonstrate that the regulation is the "least restrictive means of achieving the

16   government interest." *Id.* (citations and quotation marks omitted).  A court's only obligation is to

17   "assure that, in formulating its judgments, [the State] has drawn reasonable inferences based on

18   substantial evidence,'" an inquiry that must accord "'substantial deference to the predictive

19   judgments'" of the legislature. *Id.* at 979-980 (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S.

20   180, 195 (1997)).

21          The need for appropriate deference to legislative predications is especially clear in the

22   Second Amendment context.  "Providing for the safety of citizens within their borders has long

23   been state government's most basic task." *Kolbe v. Hogan*, 849 F.3d 114, 150 (4th Cir. 2017)

24   (Wilkinson, J., concurring).  State legislatures are "'far better equipped than the judiciary' to

25   make sensitive public policy judgments (within constitutional limits) concerning the dangers in

26   carrying firearms and the manner to combat those risks." *Kachalsky*, 701 F.3d at 97.  And, while

27   a legislature's judgments can be based on empirical evidence, they need not be; "history,

28   consensus, and 'simple common sense'" will suffice. *Florida Bar v. Went for It, Inc.*, 515 U.S.

7

1    618, 628 (1995). Indeed, when it comes to dealing with a complex societal problem like gun

2    violence, there will almost always be room for reasonable minds to differ about the optimal

3    solution; demanding undue certainly would be foolhardy.

4         Here, California has a compelling interest in protecting public safety and reducing gun

5    violence. *Jackson v. City & County of San Francisco*, 746 F.3d 953, 965 (9th Cir. 2014). An

6    increase in guns carried by private persons in public places increases the risk that "'basic

7    confrontations between individuals [will] turn deadly.'" *Wollard v. Gallagher*, 712 F.3d 865, 879

8    (4th Cir. 2013). Similarly, misfired shots or accidental discharges are "more likely to hit a

9    bystander where there are more bystanders to hit." Blocher, *Firearm Localism*, 123 Yale L.J. 82,

10   122-123 (2013). The Legislature could also conclude that widespread public carry increases the

11   "availability of handguns to criminals via theft," *Woollard*, 712 F.3d at 879, and that such guns

12   would then be used to "commit violent crimes" or be transferred to "others who commit crimes,"

13   U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *2012 Summary:*

14   *Firearms Reported Lost and Stolen* 2 (2013).

15        According to the legislative history of California Penal Code § 26350, the absence of a

16   prohibition on openly carrying unloaded firearms has created a surge in individuals openly

17   carrying unloaded firearms in public. These incidents adversely affect public safety in several

18   ways. Members of the public who encounter individuals openly carrying firearms are alarmed

19   and fearful for their safety and the safety of others. When members of the public report such

20   incidents to local law enforcement, they are only able to provide law enforcement personnel with

21   incomplete information. As a result, law enforcement agencies respond to such incidents with

22   limited information regarding whether the individual openly carrying the firearm is a danger to

23   himself or herself; a danger to the public; or a danger to the responding law enforcement

24   personnel.

25        In such situations, a wrong move by the individual carrying the firearm could be construed

26   as threatening by the responding law enforcement officer. The officer may feel compelled to

27   respond in a manner that could result in injury or death. Thus, the practice of openly carrying

28   unloaded firearms can create an unsafe environment for everyone involved: the individual

1  carrying the firearm, the responding law enforcement personnel, and all other individuals who

2  may be nearby.

3        In addition, responding to incidents involving individuals openly carrying unloaded

4  firearms taxes the resources of law enforcement agencies already stretched by under-staffing and

5  budget cutbacks.  Such a diversion of resources adversely affects law enforcement agencies'

6  ability to provide other public safety services to their communities.  See e.g., *Woollard*, 712 F.3d

7  at 879-880 (recounting similar policing benefits).

8        In light of the public safety risks the Legislature could reasonably deem to be associated

9  with public carrying of firearms, there is a "'reasonable fit'" between California's calibrated

10  regime governing public carry and the important interests that it serves.  *Peña*, 898 F.3d at. 979.

11        **INTERROGATORY NO. 2**:  Identify all documents bearing upon, supporting, or

12  reflecting the facts set forth in Your response to the preceding interrogatory.

13        **RESPONSE TO INTERROGATORY NO. 2**:

14        Defendant Becerra incorporates by reference the above-stated general objections as though

15  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

16  vague, overbroad, and/or unduly burdensome.  Moreover, it seeks information irrelevant to

17  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

18  that is relevant to Plaintiff's claims.

19        Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

20  follows:  See DOJ 000127-DOJ000411; DOJ 000001-DOJ 000126; DOJ 001227-DOJ 001281.

21        **INTERROGATORY NO. 3**:  State all facts on which You base Your contention, if any,

22  that California Penal Code § 26400 is constitutional under the Second Amendment, including any

23  legitimate goals or public interests intended to be served by the statute.

24        **RESPONSE TO INTERROGATORY NO. 3**:

25        Defendant Becerra incorporates by reference the above-stated general objections as though

26  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

27  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

28  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

9

1   that is relevant to Plaintiff's claims.  Defendant Becerra also objects to this interrogatory on the

2   grounds that it seeks Defendant Becerra's contentions regarding the constitutionality of California

3   Penal Code § 26400, and thus poses a question of pure law.  Defendant Becerra is not required to

4   respond to interrogatories raising questions of pure law.  See *AngioScore, Inc. v. TriReme Med.,*

5   *Inc.*, No. 12-cv-03393-YGR (JSC), 2014 WL 7188779, at *5 (N.D. Cal. Dec. 16, 2014)

6   ("[I]nterrogatories directed to issues of 'pure law'—i.e., abstract legal issues not dependent on the

7   facts of the case are not permitted") (citation and some internal punctuation omitted).  A party

8   responding to interrogatories "is not required to write his[, her, or its] brief on a motion for

9   summary judgment in his[, her, or its] responses to interrogatories." *Larson v. Trans Union, LLC*,

10   No. 3:12-CV-05726-WHO, 2017 WL 1540710, at *1 (N.D. Cal. April 28, 2017) (citation and

11   some internal punctuation omitted).

12       Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

13   follows:  California Penal Code § 26400 is constitutional under the Second Amendment.

14       In *Heller*, the Supreme Court recognized that the Second Amendment protects an individual

15   right to keep and bear arms.  554 U.S. at 636.  The *Heller* Court did not, however, "undertake an

16   exhaustive historical analysis . . . of the full scope of the Second Amendment" or attempt to

17   "clarify the entire field." *Id.* at 626, 635.

18       First, *Heller* explains that "the most natural reading of 'keep Arms'" is "to 'have

19   weapons,'" 554 U.S. at 582, and that "bear arms" is most naturally read to mean "'wear, bear, or

20   carry upon the person or in clothing or in a pocket, for the purpose of being armed and ready for

21   offensive or defensive action in a case of conflict with another person,'" *id.* at 584 (ellipses

22   omitted).

23       Second, the right to bear arms must be construed and applied with careful attention to its

24   "historical background." *Heller*, 554 U.S. at 592; see *id.* At 576-626.  This is critical "because it

25   has always been widely understood that the Second Amendment, like the First and Fourth

26   Amendments, codified a *pre-existing* right," and "declares only that is 'shall not be infringed.'"

27   *Id.*, at 592.  Thus, while the Second Amendment's inclusion in the Bill of Rights indicates that the

28   right to bear arms ranks as fundamental, nothing about its enumeration in the Constitution

1   changed the right into anything more comprehensive or absolute than would have been

2   understood and expected by "ordinary citizens in the founding generation." *Id.* at 577.

3       Third, that commonly understood right was and is "not unlimited." *Heller*, 554 U.S. at 595,

4   626. It is not a right "to keep and carry any weapon whatsoever in any manner whatsoever and

5   for whatever purpose," *id.* at 626, or "to carry arms for any sort of confrontation," *id.* at 595.  The

6   core individual right recognized by *Heller* is the right to keep and bear arms "in defense of hearth

7   and home." 554 U.S. at 635; see also *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010)

8   (plurality op.) (*Heller's* "central holding" was that "the Second Amendment protects a personal

9   right to keep and bear arms for lawful purposes, most notably for self-defense within the home.").

10  That does not mean that the right to "bear" has no scope or application beyond the home or its

11  immediate environs.  But nothing in *Heller* suggests that it applies in exactly the same in all

12  places, so that a restriction on bearing arms in public must be treated just like a restriction on

13  bearing in or around the home.  In particular, nothing in *Heller* dictates that, as Plaintiff Zeleny

14  seems to contend, that the Second Amendment embodies an individual right to openly carry a gun

15  in almost any public place.

16      On the contrary, *Heller* makes clear that Second Amendment rights are subject to many

17  reasonable regulations.  *See* 554 U.S. at 636.  Indeed, the Second Amendment "by no means

18  eliminates" States' "ability to devise solutions to social problems that suit local needs and

19  values." *McDonald,* 561 U.S. at 785.

20      *Heller* does not recognize any unfettered right to carry firearms in the crowded urban areas,

21  based solely on an individual's stated desire to be "'armed and ready for offensive or defensive

22  action in case of conflict with another person,'" 554 U.S. at 584.  Rather, under *Heller*, Plaintiff

23  Zeleny's challenge to Penal Code § 26350 must be evaluated, in the first instance, by examining

24  "the historical understanding of the scope of that right." *Id.* at 625. The challenge cannot succeed

25  if the State's restrictions are a type of reasonable public regulation that has long been considered

26  consistent with a private right to bear arms. *Cf. id.* at 626-627.

27      "No fundamental right—not even the First Amendment—is absolute." *McDonald*, 561

28  U.S. at 802 (Scalia, J., concurring).  Just as the First Amendment does not confer a right to speak

1    in any time, place or manner, history and precedent teach that the Second Amendment does not

2    confer the right to carry guns anywhere or at any time. See *Heller*, 554 U.S. at 595. California's

3    laws regulating the public carrying of firearms strike a permissible balance between preserving

4    order and public safety and accommodating the desire of some residents to carry guns. There are

5    consistent with traditional restrictions on public carry, and are presumptively lawful on that basis.

6        Where text, history, and tradition show that a challenged law is consistent with the Second

7    Amendment, the restriction "'passes constitutional muster'" and the court's inquiry "'is

8    complete.'" *Teixeira*, 873 F.3d at 682; see *Heller*, 554 U.S. at 626, 627 n.26.

9        California broadly allows the carrying of firearms in places and circumstances where it has

10   traditionally been common: in or immediately around an individual's home or place of business

11   and on much other private property with permission; in less-populated areas and during activities

12   such as hunting; and in circumstances of immediate and grave danger to person or property when

13   law enforcement is not available. It also allows qualified individuals to obtain licenses to carry

14   more generally, if they can establish "good cause" under standards set by local officials who are

15   most familiar with the needs and desires of their own communities.

16       However, there is an "historical prevalence" of public carry restrictions similar to Penal

17   Code § 26400. *Kachalsky*, 701 F.3d at 96. Because "[f]irearms have always been more heavily

18   regulated in the public sphere," the right to bear arms "most certainly operates in a different

19   manner" in that context than when evaluating restrictions that impinge directly on the core right

20   to keep and carry guns in the home. *Drake*, 724 F.3d at 430 n.5.

21       This makes good functional sense. When individuals move outside their homes—and

22   particularly when they move about in populated areas —their interest in carrying a firearm is

23   much more likely to come into conflict with the public interest in order and safety. *See, e.g.*,

24   *Gould v. Morgan*, 907 F.3d 659, 672, (1st Cir. 2018). The "inherent" risk that firearms present

25   when carried in public "distinguishes the Second Amendment right from other fundamental rights

26   . . . such as the right to marry and the right to be free from viewpoint discrimination, which can be

27   exercised without creating a direct risk to others. *Bonidy*, 790 F.3d at 1126. And as the Fourth

28   Circuit observed, it "is not far-fetched to think" that Heller's focus on the "core" right to protect

1    the home was born out of a recognition that the danger of "tragic act[s]" of violence "would rise

2    exponentially as one moved the right from the home to the public square." *Masciandaro*, 638

3    F.3d at 475-476.

4        There is a legitimate role for public regulation touching on even our most fundamental

5    rights—especially when there is or can be genuine tension between the exercise of individual

6    rights and the safety of members of the public and law enforcement officers.

7        When, as here, a court will review a challenged statute under intermediate scrutiny, courts

8    ask whether the law promotes a "significant, substantial, or important government objective," and

9    whether there is a "'reasonable fit' between the challenged law and the asserted objective." *Peña*,

10   898 F.3d at 979. While the State must show that the law "promotes a substantial government

11   interest that would be achieved less effectively absent the regulation," it need not demonstrate

12   that the regulation is the "least restrictive means of achieving the government interest." *Id.*

13   (citations and quotation marks omitted). A court's only obligation is to "assure that, in

14   formulating its judgments, [the State] has drawn reasonable inferences based on substantial

15   evidence,'" an inquiry that must accord "'substantial deference to the predictive judgments'" of

16   the legislature. *Id.* at 979-980 (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195

17   (1997)).

18       The need for appropriate deference to legislative predications is especially clear in the

19   Second Amendment context. "Providing for the safety of citizens within their borders has long

20   been state government's most basic task." *Kolbe*, 849 F.3d at 150. State legislatures are "'far

21   better equipped than the judiciary' to make sensitive public policy judgments (within

22   constitutional limits) concerning the dangers in carrying firearms and the manner to combat those

23   risks." *Kachalsky*, 701 F.3d at 97. And, while a legislature's judgments can be based on

24   empirical evidence, they need not be; "history, consensus, and 'simple common sense'" will

25   suffice. *Went for It, Inc.*, 515 U.S. at 628. Indeed, when it comes to dealing with a complex

26   societal problem like gun violence, there will almost always be room for reasonable minds to

27   differ about the optimal solution; demanding undue certainly would be foolhardy.

28   / / /

13

1   California has a compelling interest in protecting public safety and reducing gun violence.

2 *Jackson*, 746 F.3d at 965.  An increase in guns carried by private persons in public places

3 increases the risk that "'basic confrontations between individuals [will] turn deadly.'"  *Wollard*,

4 712 F.3d at 879.  Similarly, misfired shots or accidental discharges are "more likely to hit a

5 bystander where there are more bystanders to hit."  Blocher, *Firearm Localism*, 123 Yale L.J. 82,

6 122-123 (2013).  The Legislature could also conclude that widespread public carry increases the

7 "availability of handguns to criminals via theft," *Woollard*, 712 F.3d at 879, and that such guns

8 would then be used to "commit violent crimes" or be transferred to "others who commit crimes,"

9 U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *2012 Summary:*

10 *Firearms Reported Lost and Stolen* 2 (2013).

11   The absence of a prohibition on openly carrying unloaded firearms has created a surge in

12 individuals openly carrying unloaded firearms in public.  These incidents adversely affect public

13 safety in several ways.  Members of the public who encounter individuals openly carrying

14 firearms are alarmed and fearful for their safety and the safety of others.  When members of the

15 public report such incidents to local law enforcement, they are only able to provide law

16 enforcement personnel with incomplete information.  As a result, law enforcement agencies

17 respond to such incidents with limited information regarding whether the individual openly

18 carrying the firearm is a danger to himself or herself; a danger to the public; or a danger to the

19 responding law enforcement personnel.

20   In such situations, a wrong move by the individual carrying the firearm could be construed

21 as threatening by the responding law enforcement officer.  The officer may feel compelled to

22 respond in a manner that could result in injury or death.  Thus, the practice of openly carrying

23 unloaded firearms can create an unsafe environment for everyone involved: the individual

24 carrying the firearm, the responding law enforcement personnel, and all other individuals who

25 may be nearby.

26   In addition, responding to incidents involving individuals openly carrying unloaded

27 firearms taxes the resources of law enforcement agencies already stretched by under-staffing and

28 budget cutbacks.  Such a diversion of resources adversely affects law enforcement agencies'

1    ability to provide other public safety services to their communities.  See e.g., *Woollard*, 712 F.3d

2    at 879-880 (recounting similar policing benefits).

3         According to the legislative history of California Penal Code§ 26400, one of the purposes

4    of the bill (A.B. 1527) was to follow up A.B. 144 (Statutes of 2011), which made public open

5    carry of handguns a misdemeanor, by expanding the prohibition to long-guns in incorporated

6    cities.  "The absence of a prohibition on 'open carry' of long guns has created an increase in

7    problematic instances of these guns carried in public, alarming unsuspecting individuals causing

8    issues for law enforcement.  Open carry creates a potentially dangerous situation.  In most cases

9    when a person is openly carrying a firearm, law enforcement is called to the scene with few

10   details other than one or more people are present at a location and are armed." (See DOJ 001050)

11   "In these tense situations, the slightest wrong move by the gun-carrier could be construed as

12   threatening by the responding officer, who may feel compelled to respond in a manner that could

13   be lethal.  In this situation the practice of 'open carry' creates an unsafe environment for all

14   parties involved; the officer, the gun-carrying individual, and for any other individuals nearby as

15   well." (See DOJ 001050)

16        "Additionally, the increase in 'open-carry' calls placed to law enforcement has taxed

17   departments dealing with under-staffing and cutbacks due to the current fiscal climate in

18   California, preventing them from protecting the public in other ways."  (See DOJ 001051)

19        In light of the public safety risks the Legislature could reasonably deem to be associated

20   with public carrying of firearms, there is a "'reasonable fit'" between California's calibrated

21   regime governing public carry and the important interests that it serves.  *Peña*, 898 F.3d at. 979.

22        **INTERROGATORY NO. 4**:  Identify all documents bearing upon, supporting, or

23   reflecting the facts set forth in Your response to the preceding interrogatory.

24        **RESPONSE TO INTERROGATORY NO. 4:**

25        Defendant Becerra incorporates by reference the above-stated general objections as though

26   fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

27   vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

28

Defendant Xavier Becerra's Amended Responses to Plaintiff's First Set of Interrogatories  (3:17-cv-07357 RS)

1  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

2  that is relevant to Plaintiff's claims.

3      Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

4  follows:  See DOJ 000127-DOJ 000411; DOJ 000412-DOJ 000529; DOJ 000927-DOJ 001226;

5  DOJ 001227-DOJ 001281.

6      **INTERROGATORY NO. 5**:  State all reasons for the adoption of California Penal Code

7  §§ 26375 and 26405(r), including, but not limited to any legitimate goals or public interests

8  intended to be served by the exemptions contained therein.

9      **RESPONSE TO INTERROGATORY NO. 5**:

10      Defendant Becerra incorporates by reference the above-stated general objections as though

11  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

12  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

13  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

14  that is relevant to Plaintiff's claims.  Defendant Becerra also objects to this interrogatory on the

15  grounds that it seeks Defendant Becerra's contentions regarding the constitutionality of California

16  Penal Code §§ 26375 and 26405(r), and thus poses questions of pure law.  Defendant Becerra is

17  not required to respond to interrogatories raising questions of pure law.  See *AngioScore, Inc. v.*

18  *TriReme Med., Inc.*, No. 12-cv-03393-YGR (JSC), 2014 WL 7188779, at *5 (N.D. Cal. Dec. 16,

19  2014) ("[I]nterrogatories directed to issues of 'pure law'—i.e., abstract legal issues not dependent

20  on the facts of the case are not permitted") (citation and some internal punctuation omitted).  A

21  party responding to interrogatories "is not required to write his[, her, or its] brief on a motion for

22  summary judgment in his[, her, or its] responses to interrogatories."  *Larson v. Trans Union, LLC*,

23  No. 3:12-CV-05726-WHO, 2017 WL 1540710, at *1 (N.D. Cal. April 28, 2017) (citation and

24  some internal punctuation omitted).

25      Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

26  follows:  The *Heller* Court recognized that the Second Amendment protects an individual right to

27  keep and bear arms.  554 U.S. at 636.  The Court did not, however, "undertake an exhaustive

28

1   historical analysis . . . of the full scope of the Second Amendment" or attempt to "clarify the

2   entire field." *Id.* at 626, 635.

3       First, *Heller* explains that "the most natural reading of 'keep Arms'" is "to 'have

4   weapons,'" 554 U.S. at 582, and that "bear arms" is most naturally read to mean "'wear, bear, or

5   carry upon the person or in clothing or in a pocket, for the purpose of being armed and ready for

6   offensive or defensive action in a case of conflict with another person,'" *id.* at 584 (ellipses

7   omitted).

8       Second, the right to bear arms must be construed and applied with careful attention to its

9   "historical background." *Heller*, 554 U.S. at 592; see *id.* At 576-626. This is critical "because it

10   has always been widely understood that the Second Amendment, like the First and Fourth

11   Amendments, codified a *pre-existing* right," and "declares only that is 'shall not be infringed.'"

12   *Id.*, at 592. Thus, while the Second Amendment's inclusion in the Bill of Rights indicates that the

13   right to bear arms ranks as fundamental, nothing about its enumeration in the Constitution

14   changed the right into anything more comprehensive or absolute than would have been

15   understood and expected by "ordinary citizens in the founding generation." *Id.* at 577.

16       Third, that commonly understood right was and is "not unlimited." *Heller*, 554 U.S. at 595,

17   626. It is not a right "to keep and carry any weapon whatsoever in any manner whatsoever and

18   for whatever purpose," *id.* at 626, or "to carry arms for any sort of confrontation," *id.* at 595. The

19   core individual right recognized by *Heller* is the right to keep and bear arms "in defense of hearth

20   and home." 554 U.S. at 635; see also *McDonald*, 561 U.S. at 780 (*Heller's* "central holding" was

21   that "the Second Amendment protects a personal right to keep and bear arms for lawful purposes,

22   most notably for self-defense within the home."). That does not mean that the right to "bear" has

23   no scope or application beyond the home or its immediate environs. But nothing in *Heller*

24   suggests that it applies in exactly the same in all places, so that a restriction on bearing arms in

25   public must be treated just like a restriction on bearing in or around the home.

26       On the contrary, *Heller* makes clear that Second Amendment rights are subject to many

27   reasonable regulations. *See* 554 U.S. at 636. Indeed, the Second Amendment "by no means

28

1  eliminates" States' "ability to devise solutions to social problems that suit local needs and

2  values." *McDonald*, 561 U.S. at 785.

3       *Heller* does not recognize any unfettered right to carry firearms in the crowded urban areas,

4  based solely on an individual's stated desire to be "'armed and ready for offensive or defensive

5  action in case of conflict with another person,'" 554 U.S. at 584.  Rather, under *Heller*, a

6  challenge to Penal Code § 26350 must be evaluated, in the first instance, by examining "the

7  historical understanding of the scope of that right." *Id.* at 625. The challenge cannot succeed if

8  the State's restrictions are a type of reasonable public regulation that has long been considered

9  consistent with a private right to bear arms. *Cf. id.* at 626-627.

10       "No fundamental right—not even the First Amendment—is absolute." *McDonald*, 561

11  U.S. at 802 (Scalia, J., concurring).  Just as the First Amendment does not confer a right to speak

12  in any time, place or manner, history and precedent teach that the Second Amendment does not

13  confer the right to carry guns anywhere or at any time. See *Heller*, 554 U.S. at 595.  California's

14  laws regulating the public carrying of firearms strike a permissible balance between preserving

15  order and public safety and accommodating the desire of some residents to carry guns.  There are

16  consistent with traditional restrictions on public carry, and are presumptively lawful on that basis.

17       Where text, history, and tradition show that a challenged law is consistent with the Second

18  Amendment, the restriction "'passes constitutional muster'" and the court's inquiry "'is

19  complete.'" *Teixeira*, 873 F.3d at 682; see *Heller*, 554 U.S. at 626, 627 n.26.

20       California broadly allows the carrying of firearms in places and circumstances where it has

21  traditionally been common: in or immediately around an individual's home or place of business

22  and on much other private property with permission; in less-populated areas and during activities

23  such as hunting; and in circumstances of immediate and grave danger to person or property when

24  law enforcement is not available.  It also allows qualified individuals to obtain licenses to carry

25  more generally, if they can establish "good cause" under standards set by local officials who are

26  most familiar with the needs and desires of their own communities.

27       However, there is an "historical prevalence" of public carry restrictions similar to those in

28  California. *Kachalsky*, 701 F.3d at 96. Because "[f]irearms have always been more heavily

18

1   regulated in the public sphere," the right to bear arms "most certainly operates in a different

2   manner" in that context than when evaluating restrictions that impinge directly on the core right

3   to keep and carry guns in the home. *Drake*, 724 F.3d at 430 n.5.

4         This makes good functional sense. When individuals move outside their homes—and

5   particularly when they move about in populated areas —their interest in carrying a firearm is

6   much more likely to come into conflict with the public interest in order and safety. *See, e.g.*,

7   *Gould*, 907 F.3d at 672. The "inherent" risk that firearms present when carried in public

8   "distinguishes the Second Amendment right from other fundamental rights . . . such as the right to

9   marry and the right to be free from viewpoint discrimination, which can be exercised without

10   creating a direct risk to others. *Bonidy*, 790 F.3d at 1126. And as the Fourth Circuit observed, it

11   "is not far-fetched to think" that *Heller's* focus on the "core" right to protect the home was born

12   out of a recognition that the danger of "tragic act[s]" of violence "would rise exponentially as one

13   moved the right from the home to the public square." *Masciandaro*, 638 F.3d at 475-476.

14         There is a legitimate role for public regulation touching on even our most fundamental

15   rights—especially when there is or can be genuine tension between the exercise of individual

16   rights and the safety of members of the public and law enforcement officers.

17         When, as here, a court will review a challenged statute under intermediate scrutiny, courts

18   ask whether the law promotes a "significant, substantial, or important government objective," and

19   whether there is a "'reasonable fit' between the challenged law and the asserted objective." *Peña*,

20   898 F.3d at 979. While the State must show that the law "promotes a substantial government

21   interest that would be achieved less effectively absent the regulation," it need not demonstrate

22   that the regulation is the "least restrictive means of achieving the government interest." *Id.*

23   (citations and quotation marks omitted). A court's only obligation is to "assure that, in

24   formulating its judgments, [the State] has drawn reasonable inferences based on substantial

25   evidence,'" an inquiry that must accord "'substantial deference to the predictive judgments'" of

26   the legislature. *Id.* at 979-980 (quoting *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195

27   (1997)).

28

The need for appropriate deference to legislative predications is especially clear in the Second Amendment context. "Providing for the safety of citizens within their borders has long been state government's most basic task." *Kolbe*, 849 F.3d at 150. State legislatures are "'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." *Kachalsky*, 701 F.3d at 97. And, while a legislature's judgments can be based on empirical evidence, they need not be; "history, consensus, and 'simple common sense'" will suffice. *Went for It, Inc.*, 515 U.S. at 628.

California has a compelling interest in protecting public safety and reducing gun violence. *Jackson*, 746 F.3d at 965. An increase in guns carried by private persons in public places increases the risk that "'basic confrontations between individuals [will] turn deadly.'" *Wollard*, 712 F.3d at 879. Similarly, misfired shots or accidental discharges are "more likely to hit a bystander where there are more bystanders to hit." Blocher, *Firearm Localism*, 123 Yale L.J. 82, 122-123 (2013). The Legislature could also conclude that widespread public carry increases the "availability of handguns to criminals via theft," *Woollard*, 712 F.3d at 879, and that such guns would then be used to "commit violent crimes" or be transferred to "others who commit crimes," U.S. Dep't of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *2012 Summary: Firearms Reported Lost and Stolen* 2 (2013).

The absence of a prohibition on openly carrying unloaded firearms has created a surge in individuals openly carrying unloaded firearms in public. These incidents adversely affect public safety in several ways. Members of the public who encounter individuals openly carrying firearms are alarmed and fearful for their safety and the safety of others. When members of the public report such incidents to local law enforcement, they are only able to provide law enforcement personnel with incomplete information. As a result, law enforcement agencies respond to such incidents with limited information regarding whether the individual openly carrying the firearm is a danger to himself or herself; a danger to the public; or a danger to the responding law enforcement personnel.

1        In such situations, a wrong move by the individual carrying the firearm could be construed

2   as threatening by the responding law enforcement officer.  The officer may feel compelled to

3   respond in a manner that could result in injury or death.  Thus, the practice of openly carrying

4   unloaded firearms can create an unsafe environment for everyone involved: the individual

5   carrying the firearm, the responding law enforcement personnel, and all other individuals who

6   may be nearby.

7        In addition, responding to incidents involving individuals openly carrying unloaded

8   firearms taxes the resources of law enforcement agencies already stretched by under-staffing and

9   budget cutbacks.  Such a diversion of resources adversely affects law enforcement agencies'

10  ability to provide other public safety services to their communities.  *See e.g.*, *Woollard*, 712 F.3d

11  at 879-880 (recounting similar policing benefits).

12       According to the legislative history of California Penal Code § 26400, one of the purposes

13  of the bill (A.B. 1527) was to follow up A.B. 144 (Statutes of 2011), which made public open

14  carry of handguns a misdemeanor, by expanding the prohibition to long-guns in incorporated

15  cities.  "The absence of a prohibition on 'open carry' of long guns has created an increase in

16  problematic instances of these guns carried in public, alarming unsuspecting individuals causing

17  issues for law enforcement.  Open carry creates a potentially dangerous situation.  In most cases

18  when a person is openly carrying a firearm, law enforcement is called to the scene with few

19  details other than one or more people are present at a location and are armed." (See DOJ 001050)

20  "In these tense situations, the slightest wrong move by the gun-carrier could be construed as

21  threatening by the responding officer, who may feel compelled to respond in a manner that could

22  be lethal.  In this situation the practice of 'open carry' creates an unsafe environment for all

23  parties involved; the officer, the gun-carrying individual, and for any other individuals nearby as

24  well."  (See DOJ 001050)

25       "Additionally, the increase in 'open-carry' calls placed to law enforcement has taxed

26  departments dealing with under-staffing and cutbacks due to the current fiscal climate in

27  California, preventing them from protecting the public in other ways."  (See DOJ 001051)

28

Defendant Xavier Becerra's Amended Responses to Plaintiff's First Set of Interrogatories  (3:17-cv-07357 RS)

1    Here, the Legislature enacted certain exceptions to the general prohibitions on openly

2    carrying firearms.

3    Penal Code § 26375 provides that section 26350 does not apply to, or affect, the open

4    carrying of an unloaded handgun by an authorized participant in, or an authorized employee or

5    agent of a supplier of firearms for, a motion picture, television or video production, or

6    entertainment event, when the participant lawfully uses the handgun as part of that production or

7    event, as part of rehearsing or practicing for participation in that production or event, or while the

8    participant or authorized employee or agent is at that production or event, or rehearsal or practice

9    for that production or event. (Pen. Code, § 26375.)  According to the Legislative history, Penal

10   Code § 26375 permits the use of unloaded handguns as an "entertainment props."  (See DOJ

11   000219)

12   Likewise, Penal Code § 26405, subdivision (r) provides that Penal Code § 26400 does not

13   apply to, or affect, the carrying of an unloaded firearm that is not a handgun by an authorized

14   participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture,

15   television, or video production or entertainment event, when the participant lawfully uses that

16   firearm as part of that production or event, as part of rehearsing or practicing for participation in

17   that production or event, or while the participant or authorized employee or agent is at that

18   production or event, or rehearsal or practice for that production or event.

19   And, Penal Code § 29500 provides that, "Any person who is at least 21 years of age may

20   apply for an entertainment firearms permit from the Department of Justice.  An entertainment

21   firearms permit authorizes the permit holder to possess firearms loaned to the permitholder for

22   use solely as a prop in a motion picture, television, video, theatrical, or other entertainment

23   production or event."  (Added by Stats.2010, c. 711 (S.B. 1080).)

24   **INTERROGATORY NO. 6**:  Identify all documents bearing upon, supporting, or

25   reflecting the reasons set forth in Your response to the preceding interrogatory.

26   **RESPONSE TO INTERROGATORY NO. 6:**

27   Defendant Becerra incorporates by reference the above-stated general objections as though

28   fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

22

1   vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

2   Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

3   that is relevant to Plaintiff's claims.

4       Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

5   follows:  See DOJ 000127-DOJ 000411; DOJ 000749-DOJ 000926; DOJ 0001282-DOJ 001312.

6       **INTERROGATORY NO. 7**:  State all factors that You contend were considered by the

7   Legislature of the State of California in determining whether or not to exempt the use of firearms

8   in other forms of expressive activity from the statutes prohibiting the carrying of firearms in

9   public.

10      **RESPONSE TO INTERROGATORY NO. 7**:

11      Defendant Becerra incorporates by reference the above-stated general objections as though

12  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

13  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

14  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

15  that is relevant to Plaintiff's claims.

16      Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

17  follows:  Defendant Becerra has not made the contention described in this interrogatory.

18      **INTERROGATORY NO. 8**:  State all reasons for distinguishing between "motion picture,

19  television or video production, or entertainment event[s ]" and other forms of speech or

20  expressive conduct in California Penal Code §§ 26375 and 26405(r).

21      **RESPONSE TO INTERROGATORY NO. 8**:

22      Defendant Becerra incorporates by reference the above-stated general objections as though

23  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

24  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

25  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

26  that is relevant to Plaintiff's claims.

27      Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

28  follows:  The interrogatory call for Defendant Becerra to speculate regarding whether the

1   Legislature considered including other forms of "speech or expressive conduct" in enacting Penal

2   Code §§ 26375 and 26405, subdivision (r).  Thus, Defendant Becerra is unable to respond to this

3   interrogatory.

4       **INTERROGATORY NO. 9**:  Identify all documents bearing upon, supporting, or

5   reflecting the reasons set forth in Your response to the preceding interrogatory.

6       **RESPONSE TO INTERROGATORY NO. 9**:

7       Defendant Becerra incorporates by reference the above-stated general objections as though

8   fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

9   vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

10  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

11  that is relevant to Plaintiff's claims.

12      Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

13  follows: N/A.

14      **INTERROGATORY NO. 10**:  Does the phrase "authorized participant" as used in

15  California Penal Code §§ 26375 and 26405(r) refer to a participant authorized by a governmental

16  body or agency?

17      **INITIAL RESPONSE TO INTERROGATORY NO. 10**:

18      Defendant Becerra incorporates by reference the above-stated general objections as though

19  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

20  vague and overbroad.  Moreover, it seeks information irrelevant to Plaintiff Zeleny's claims, and

21  not reasonably calculated to lead to the discovery of information that is relevant to Plaintiff's

22  claims.

23      Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

24  follows: Penal Code §§ 26375 and 26405, subdivision (r) do not include definitions of the phrase

25  "authorized participant."

26      However, according to the Legislative history of Penal Code § 26375, that section permits

27  the use of unloaded handguns as an "entertainment props."  (See DOJ 000219)  Additionally, the

28  Entertainment Firearms Permit only authorizes the permit holder "to possess firearms loaned to

24

1   the permitholder for use solely as a prop in a motion picture, television, video, theatrical, or other

2   entertainment production or event." (Penal Code § 29500.) Thus, the exceptions set forth in

3   Penal Code §§ 26375 and 26405, subdivision (r) are available only to those using unloaded

4   firearms loaned to them for use as "entertainment props" in a motion picture, television, video,

5   theatrical, or other entertainment production or event.

6   **AMENDED RESPONSE TO INTERROGATORY NO. 10:**

7   Defendant Becerra incorporates by reference the above-stated general objections as though

8   fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it is

9   vague and overbroad. Moreover, it seeks information irrelevant to Plaintiff Zeleny's claims, and

10   not reasonably calculated to lead to the discovery of information that is relevant to Plaintiff's

11   claims.

12   Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

13   follows: Penal Code §§ 26375 and 26405, subdivision (r) do not include definitions of the phrase

14   "authorized participant." Defendant Becerra has never issued a formal opinion under California

15   law regarding the meaning of the phrase "authorized participant," and this response is not such an

16   opinion and cannot be relied upon as such an opinion. Nor is this response a generally applicable

17   rule or regulation that is intended to be applied outside of the context of this case. Moreover,

18   Defendant Becerra played no material role in the events described in the complaint, and was not

19   involved in the denial of Plaintiff Michael Zeleny's permit application(s).

20   Based on Defendant Becerra's understanding of Plaintiff Zeleny's situation, in the specific

21   context of this case, Defendant Becerra believes that most plausible reading of the term

22   "authorized participant" as used in California Penal Code §§ 26375 and 26405(r) refers to a

23   participant authorized by a governmental body or agency.

24   **INTERROGATORY NO. 11**: If Your answer to Interrogatory No. 10 is in the

25   affirmative, identify the governmental bodies or agencies from which authorization is required?

26   **INITIAL RESPONSE TO INTERROGATORY NO. 11**:

27   Defendant Becerra incorporates by reference the above-stated general objections as though

28   fully set forth herein. Defendant Becerra objects to this interrogatory on the grounds that it is

25

vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information that is relevant to Plaintiff's claims.

Subject to, and without waiving the foregoing objections, Defendant Becerra responds as follows: N/A.

**AMENDED RESPONSE TO INTERROGATORY NO. 11:**

Defendant Becerra incorporates by reference the above-stated general objections as though fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information that is relevant to Plaintiff's claims.

Subject to, and without waiving the foregoing objections, Defendant Becerra responds as follows: Penal Code §§ 26375 and 26405, subdivision (r) do not include definitions of the phrase "authorized participant."  Defendant Becerra has never issued a formal opinion under California law regarding the meaning of the phrase "authorized participant," and this response is not such an opinion and cannot be relied upon as such an opinion.  Nor is this response a generally applicable rule or regulation that is intended to be applied outside of the context of this case.  Moreover, Defendant Becerra played no material role in the events described in the complaint, and was not involved in the denial of Plaintiff Michael Zeleny's permit application(s).

Based on Defendant Becerra's understanding of Plaintiff Zeleny's situation, in the specific context of this case, the Department of Justice's Entertainment Firearms Permit only authorizes the permit holder "to possess firearms loaned to the permitholder for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event." (Penal Code § 29500.)  Anyone who is not otherwise authorized to carry a weapon openly, but who desires to carry a weapon openly "as a prop in a motion picture, television, video, theatrical, or other entertainment production or event" would need to do so under the auspices of an Entertainment Firearms Permit.

1      The Attorney General understands this exception to have been carried forward into the open

2   carry laws, as the legislative history of Penal Code § 26375 refers to the use of unloaded

3   handguns as an "entertainment props." (See DOJ 000219.) Thus, the exceptions set forth in

4   Penal Code §§ 26375 and 26405, subdivision (r) are available only to those using unloaded

5   firearms loaned to them for use as "entertainment props" in a motion picture, television, video,

6   theatrical, or other entertainment production or event.

7      While the Department of Justice "authorizes" the use of firearms in this narrow context

8   through the issuance of Firearms Entertainment Permits, such authorization is in the nature of a

9   defense to an open carry prosecution within the very narrow context of an entertainment prop, not

10   a preclusion of any other regulation by other agencies. Other law enforcement agencies would

11   not be precluded from ensuring that an individual carrying a weapon openly had a permit, or

12   ensuring that an identified individual is not violating any other federal, state, or local laws or

13   ordinances. Notably, when issuing the Firearms Entertainment Permit, the Department does not

14   verify the nature of the entertainment event or impose any restrictions on how a weapon might be

15   carried or used, but only looks to see if a person is prohibited from owning firearms. In this

16   sense, the Firearms Entertainment Permit is a floor rather than a ceiling, with possible room for

17   other law enforcement agencies to determine, for example, that the open carry of weapons

18   endangered public safety, or was a nuisance, or that someone's conduct was not a "production or

19   event" covered by the relevant exception, or that someone was not violating other laws.

20      Also, within the structure of the open carry laws, the exception for an authorized participant

21   appears to be analogous to similar exceptions for gun shows (Pen. Code § 26369) or target ranges

22   (Pen. Code § 26365)—defined spaces in which the weapon being carried is not easily visible or

23   accessible to the public. The Attorney General understands the Firearms Entertainment Permit,

24   and the corresponding exceptions to the open carry laws, to apply to confined, non-public spaces

25   for a limited period of time, i.e., in a movie studio or clearly defined production area. To the

26   extent that an individual like Mr. Zeleny seeks to demonstrate on a public street with an unloaded

27   firearm in an unconfined area and/or for an indefinite period of time, the Attorney General views

28   the open carrying of unloaded weapons on a public street, in an unconfined area fully visible to

27

1   and accessible by anyone else, and not within what would reasonably be considered a defined,

2   enclosed production area, to potentially be conduct outside the scope of the Firearms

3   Entertainment Permit and the corresponding exception to the open carry laws, and potentially

4   subject to enforcement by the law enforcement agency primarily responsible for enforcing the

5   open carry laws in that area.

6       **INTERROGATORY NO. 12**:  If Your answer to Interrogatory No. 10 is in the

7   affirmative, state all bases for your contention that the phrase "authorized participant," as used in

8   California Penal Code §§ 26375 and 26405(r), refers to a participant authorized by a

9   governmental body or agency?

10       **INITIAL RESPONSE TO INTERROGATORY NO. 12**:

11       Defendant Becerra incorporates by reference the above-stated general objections as though

12   fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

13   vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

14   Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

15   that is relevant to Plaintiff's claims.

16       Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

17   follows: N/A.

18       **AMENDED RESPONSE TO INTERROGATORY NO. 12**:

19       Penal Code §§ 26375 and 26405, subdivision (r) do not include definitions of the phrase

20   "authorized participant."  Defendant Becerra has never issued a formal opinion under California

21   law regarding the meaning of the phrase "authorized participant," and this response is not such an

22   opinion and cannot be relied upon as such an opinion.  Nor is this response a generally applicable

23   rule or regulation that is intended to be applied outside of the context of this case.  Moreover,

24   Defendant Becerra played no material role in the events described in the complaint, and was not

25   involved in the denial of Plaintiff Michael Zeleny's permit application(s).

26       Based on Defendant Becerra's understanding of Plaintiff Zeleny's situation, in the specific

27   context of this case, Defendant Becerra believes that most plausible reading of the term

28   "authorized participant" as used in California Penal Code §§ 26375 and 26405(r) refers to a

1    participant authorized by a governmental body or agency.  The opposite reading is less plausible.

2    In the broader context of California law, and especially in the context of the Penal Code, it would

3    be anomalous for an individual to be able to exempt themselves from the reach of a penal statute

4    by "authorizing" an exception for themselves.

5         **INTERROGATORY NO. 13**:  If your answer to Interrogatory No. 10 is in the negative,

6    state the persons or entities whose authorization is required in order for California Penal Code §§

7    26375 and 26405(r) to exempt the carrying of firearms from California Penal Code §§ 26350 and

8    26405.

9         **INITIAL RESPONSE TO INTERROGATORY NO. 13**:

10        Defendant Becerra incorporates by reference the above-stated general objections as though

11   fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

12   vague and overbroad.  Moreover, it seeks information irrelevant to Plaintiff Zeleny's claims, and

13   not reasonably calculated to lead to the discovery of information that is relevant to Plaintiff's

14   claims.

15        Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

16   follows: The Legislature enacted certain exceptions to the general prohibitions on openly carrying

17   firearms.

18        Penal Code § 26375 provides that section 26350 does not apply to, or affect, the open

19   carrying of an unloaded handgun by an authorized participant in, or an authorized employee or

20   agent of a supplier of firearms for, a motion picture, television or video production, or

21   entertainment event, when the participant lawfully uses the handgun as part of that production or

22   event, as part of rehearsing or practicing for participation in that production or event, or while the

23   participant or authorized employee or agent is at that production or event, or rehearsal or practice

24   for that production or event. (Pen. Code, § 26375.)  According to the Legislative history, Penal

25   Code § 26375 permits the use of unloaded handguns as an "entertainment props." (See DOJ

26   000219)

27        Likewise, Penal Code § 26405, subdivision (r) provides that Penal Code § 26400 does not

28   apply to, or affect, the carrying of an unloaded firearm that is not a handgun by an authorized

29

1  participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture,

2  television, or video production or entertainment event, when the participant lawfully uses that

3  firearm as part of that production or event, as part of rehearsing or practicing for participation in

4  that production or event, or while the participant or authorized employee or agent is at that

5  production or event, or rehearsal or practice for that production or event.

6       And, Penal Code § 29500 provides that, "Any person who is at least 21 years of age may

7  apply for an entertainment firearms permit from the Department of Justice.  An entertainment

8  firearms permit authorizes the permit holder to possess firearms loaned to the permitholder for

9  use solely as a prop in a motion picture, television, video, theatrical, or other entertainment

10  production or event."  (Added by Stats.2010, c. 711 (S.B. 1080).)

11      **<u>AMENDED</u> RESPONSE TO INTERROGATORY NO. 13:**

12       No amendment is needed because Defendant Becerra's answer to interrogatory 10 was not

13  in the negative.

14      **INTERROGATORY NO. 14**:  Do California Penal Codes §§ 26375 and 26405(r) require

15  that the "motion picture, television or video production" or "entertainment event" itself be

16  authorized in order to exempt participants from California Penal Code §§ 26350 and 26405?

17      **INITIAL RESPONSE TO INTERROGATORY NO. 14:**

18       Defendant Becerra incorporates by reference the above-stated general objections as though

19  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

20  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

21  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

22  that is relevant to Plaintiff's claims.

23       Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

24  follows: Penal Code §§ 26375 and 26405(r) do not address whether the "motion picture,

25  television or video production" or "entertainment event" itself be authorized in order to exempt

26  participants from California Penal Code §§ 26350 and 26405.  Accordingly, Defendant Becerra is

27  unable to respond to this interrogatory.

28

1  **AMENDED RESPONSE TO INTERROGATORY NO. 14:**

2      Defendant Becerra incorporates by reference the above-stated general objections as though

3  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

4  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

5  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

6  that is relevant to Plaintiff's claims.

7      Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

8  follows: Penal Code §§ 26375 and 26405, subdivision (r) do not include definitions of the phrase

9  "authorized participant."  Defendant Becerra has never issued a formal opinion under California

10  law regarding the meaning of the phrase "authorized participant," and this response is not such an

11  opinion and cannot be relied upon as such an opinion.  Nor is this response a generally applicable

12  rule or regulation that is intended to be applied outside of the context of this case.  Moreover,

13  Defendant Becerra played no material role in the events described in the complaint, and was not

14  involved in the denial of Plaintiff Michael Zeleny's permit application(s).

15      Based on Defendant Becerra's understanding of Plaintiff Zeleny's situation, in the specific

16  context of this case, Penal Code §§ 26375 and 26405(r) do not address whether the "motion

17  picture, television or video production" or "entertainment event" itself be "authorized" in order to

18  exempt participants from California Penal Code §§ 26350 and 26405.  The term "authorized"

19  only clearly modifies the terms "participant," "employee" or "agent."  And since Mr. Zeleny

20  himself appears to be the "participant" possessing the weapon(s), it appears to be irrelevant if his

21  "production" or "event" is separately authorized.  As Defendant Becerra understands the facts, the

22  question might be different if Mr. Zeleny were not the person openly carrying weapons, but were

23  only the person responsible for a "production" or "event."

24      Whether or not the "motion picture, television or video production" or "entertainment

25  event" itself must be "authorized" also appears to be a separate question from whether there exists

26  a bona fide "production" or "event" to begin with.  Again specifically in the context of this case,

27  within the structure of the open carry laws, the relevant exception appears to be analogous to

28  similar exceptions for gun shows (Pen. Code § 26369) or target ranges (Pen. Code § 26365)—

31

1  defined spaces in which the weapon being carried is not easily visible or accessible to the public.

2  The Attorney General understands the Firearms Entertainment Permit, and the corresponding

3  exceptions to the open carry laws, to apply to confined, non-public spaces for a limited period of

4  time, i.e., in a movie studio or clearly defined production area.  To the extent that an individual

5  like Mr. Zeleny seeks to demonstrate on a public street with an unloaded firearm in an unconfined

6  area and/or for an indefinite period of time, the Attorney General views the open carrying of

7  unloaded weapons on a public street, in an unconfined area fully visible to and accessible by

8  anyone else, and not within what would reasonably be considered a defined, enclosed production

9  area (i.e., a production or event), to potentially be conduct outside the scope of the Firearms

10  Entertainment Permit and the corresponding exception to the open carry laws, and potentially

11  subject to enforcement by the law enforcement agency primarily responsible for enforcing the

12  open carry laws in that area.

13  While the Department of Justice "authorizes" the use of firearms in this narrow context

14  through the issuance of Firearms Entertainment Permits, such authorization is in the nature of a

15  defense to an open carry prosecution within the very narrow context of an entertainment prop, not

16  a preclusion of any other regulation by other agencies.  Other law enforcement agencies would

17  not be precluded from ensuring that an individual carrying a weapon openly had a permit, or

18  ensuring that an identified individual is not violating any other federal, state, or local laws or

19  ordinances.  Notably, when issuing the Firearms Entertainment Permit, the Department does not

20  verify the nature of the entertainment event or impose any restrictions on how a weapon might be

21  carried or used, but only looks to see if a person is prohibited from owning firearms.  In this

22  sense, the Firearms Entertainment Permit is a floor rather than a ceiling, with possible room for

23  other law enforcement agencies to determine, for example, that the open carry of weapons

24  endangered public safety, or was a nuisance, or that someone's conduct was not a "production or

25  event" covered by the relevant exception, or that someone was not violating other laws.

26  **INTERROGATORY NO. 15**:  If your response to Interrogatory No. 14 is in the

27  affirmative, identify all persons or entities whose authorization of the "motion picture, television

28

32

1  or video production" or "entertainment event" is required in order to exempt participants from

2  California Penal Code §§ 26350 and 26405.

3  **INITIAL RESPONSE TO INTERROGATORY NO. 15**:

4  Defendant Becerra incorporates by reference the above-stated general objections as though

5  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

6  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

7  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

8  that is relevant to Plaintiff's claims.

9  Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

10  follows: N/A.

11  **AMENDED RESPONSE TO INTERROGATORY NO. 15:**

12  Defendant Becerra's answer to interrogatory 14 was not in the affirmative.

13  **INTERROGATORY NO. 16**:  State all of the bases for Your response to Interrogatory

14  No. 14.

15  **INITIAL RESPONSE TO INTERROGATORY NO. 16**:

16  Defendant Becerra incorporates by reference the above-stated general objections as though

17  fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

18  vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

19  Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

20  that is relevant to Plaintiff's claims.

21  Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

22  follows: N/A.

23  **AMENDED RESPONSE TO INTERROGATORY NO. 16:**

24  Defendant Becerra has never issued a formal opinion under California law regarding the

25  meaning of the phrase "authorized participant," and this response is not such an opinion and

26  cannot be relied upon as such an opinion.  Nor is this response a generally applicable rule or

27  regulation that is intended to be applied outside of the context of this case.  Moreover, Defendant

28

1  Becerra played no material role in the events described in the complaint, and was not involved in

2  the denial of Plaintiff Michael Zeleny's permit application(s).

3       Based on Defendant Becerra's understanding of Plaintiff Zeleny's situation, in the specific

4  context of this case, Penal Code §§ 26375 and 26405(r) do not address whether the "motion

5  picture, television or video production" or "entertainment event" itself be "authorized" in order to

6  exempt participants from California Penal Code §§ 26350 and 26405.  The term "authorized"

7  only clearly modifies the terms "participant," "employee" or "agent."  And since Mr. Zeleny

8  himself appears to be the "participant" possessing the weapon(s), it appears to be irrelevant if his

9  "production" or "event" is separately authorized.  As Defendant Becerra understands the facts, the

10  question might be different if Mr. Zeleny were not the person openly carrying weapons, but were

11  only the person responsible for a "production" or "event."

12       Whether or not the "motion picture, television or video production" or "entertainment

13  event" itself must be "authorized" also appears to be a separate question from whether there exists

14  a bona fide "production" or "event" to begin with.  Again specifically in the context of this case,

15  within the structure of the open carry laws, the relevant exception appears to be analogous to

16  similar exceptions for gun shows (Pen. Code § 26369) or target ranges (Pen. Code § 26365)—

17  defined spaces in which the weapon being carried is not easily visible or accessible to the public.

18  The Attorney General understands the Firearms Entertainment Permit, and the corresponding

19  exceptions to the open carry laws, to apply to confined, non-public spaces for a limited period of

20  time, i.e., in a movie studio or clearly defined production area.  To the extent that an individual

21  like Mr. Zeleny seeks to demonstrate on a public street with an unloaded firearm in an unconfined

22  area and/or for an indefinite period of time, the Attorney General views the open carrying of

23  unloaded weapons on a public street, in an unconfined area fully visible to and accessible by

24  anyone else, and not within what would reasonably be considered a defined, enclosed production

25  area (i.e., a production or event), to potentially be conduct outside the scope of the Firearms

26  Entertainment Permit and the corresponding exception to the open carry laws, and potentially

27  subject to enforcement by the law enforcement agency primarily responsible for enforcing the

28  open carry laws in that area.

1    This conclusion is consistent with the legislative history of the open carry statutes.  The

2  absence of a prohibition on openly carrying unloaded firearms has created a surge in individuals

3  openly carrying unloaded firearms in public.  These incidents adversely affect public safety in

4  several ways.  Members of the public who encounter individuals openly carrying firearms are

5  alarmed and fearful for their safety and the safety of others.  When members of the public report

6  such incidents to local law enforcement, they are only able to provide law enforcement personnel

7  with incomplete information.  As a result, law enforcement agencies respond to such incidents

8  with limited information regarding whether the individual openly carrying the firearm is a danger

9  to himself or herself; a danger to the public; or a danger to the responding law enforcement

10  personnel.

11    In such situations, a wrong move by the individual carrying the firearm could be construed

12  as threatening by the responding law enforcement officer.  The officer may feel compelled to

13  respond in a manner that could result in injury or death.  Thus, the practice of openly carrying

14  unloaded firearms can create an unsafe environment for everyone involved: the individual

15  carrying the firearm, the responding law enforcement personnel, and all other individuals who

16  may be nearby.

17    In addition, responding to incidents involving individuals openly carrying unloaded

18  firearms taxes the resources of law enforcement agencies already stretched by under-staffing and

19  budget cutbacks.  Such a diversion of resources adversely affects law enforcement agencies'

20  ability to provide other public safety services to their communities.  *See e.g.*, *Woollard*, 712 F.3d

21  at 879-880 (recounting similar policing benefits).

22    According to the legislative history of California Penal Code § 26400, one of the purposes

23  of the bill (A.B. 1527) was to follow up A.B. 144 (Statutes of 2011), which made public open

24  carry of handguns a misdemeanor, by expanding the prohibition to long-guns in incorporated

25  cities.  "The absence of a prohibition on 'open carry' of long guns has created an increase in

26  problematic instances of these guns carried in public, alarming unsuspecting individuals causing

27  issues for law enforcement.  Open carry creates a potentially dangerous situation.  In most cases

28  when a person is openly carrying a firearm, law enforcement is called to the scene with few

1   details other than one or more people are present at a location and are armed." (See DOJ 001050)

2   "In these tense situations, the slightest wrong move by the gun-carrier could be construed as

3   threatening by the responding officer, who may feel compelled to respond in a manner that could

4   be lethal.  In this situation the practice of 'open carry' creates an unsafe environment for all

5   parties involved; the officer, the gun-carrying individual, and for any other individuals nearby as

6   well."  (See DOJ 001050)

7        "Additionally, the increase in 'open-carry' calls placed to law enforcement has taxed

8   departments dealing with under-staffing and cutbacks due to the current fiscal climate in

9   California, preventing them from protecting the public in other ways."  (See DOJ 001051)

10        The opposite legal interpretation is less plausible.  If anyone could create a "motion picture,

11   television or video production" or "entertainment event" merely by filming themselves in a public

12   place (using an object as small as a cell phone), with no meaningful limitation on the visibility or

13   timing of the firearms display, such an exception would swallow the general prohibition on open

14   carrying of weapons and be inconsistent with the California Legislature's intent to minimize

15   potentially dangerous interactions in public.

16        **INTERROGATORY NO. 17**:  State all facts supporting your interpretation of California

17   Penal Code §§ 26375 and 26405(r).

18        **RESPONSE TO INTERROGATORY NO. 17**:

19        Defendant Becerra incorporates by reference the above-stated general objections as though

20   fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

21   vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

22   Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

23   that is relevant to Plaintiff's claims.

24        Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

25   follows:  Defendant Becerra has not issued an interpretation of California Penal Code §§ 26375

26   and 26405, subdivision (r).  However, the California Department of Justice does possess

27   documents that are related to firearms generally.  See and DOJ 0001282-DOJ 001312. .

28

1    **INTERROGATORY NO. 18**:  Describe in detail all means through which your

2    interpretation of California Penal Code §§ 26375 and 26405(r) has been relayed to municipalities

3    and local governments.

4    **RESPONSE TO INTERROGATORY NO. 18**:

5    Defendant Becerra incorporates by reference the above-stated general objections as though

6    fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

7    vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

8    Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

9    that is relevant to Plaintiff's claims.

10   Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

11   follows:  Defendant Becerra has not issued an interpretation of California Penal Code §§ 26375

12   and 26405(r).  However, the California Department of Justice does possess documents that are

13   related to firearms generally.  See and DOJ 0001282-DOJ 001312.

14   **INTERROGATORY NO. 19**:  Identify all documents reflecting your interpretation of

15   California Penal Code §§ 26375 and 26405(r).

16   **RESPONSE TO INTERROGATORY NO. 19**:

17   Defendant Becerra incorporates by reference the above-stated general objections as though

18   fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

19   vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

20   Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

21   that is relevant to Plaintiff's claims.

22   Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

23   follows:  Defendant Becerra has not issued an interpretation of California Penal Code §§ 26375

24   and 26405(r).  Thus, Defendant Becerra is not aware of any documents that would be responsive

25   to this request.  However, the California Department of Justice does possess documents that are

26   related to firearms generally.  See and DOJ 0001282-DOJ 001312.

27   **INTERROGATORY NO. 20**:  Identify all documents reflecting that you have conveyed

28   your interpretation of California Penal Code §§ 26375 and 26405(r).

1    **RESPONSE TO INTERROGATORY NO. 20:**

2        Defendant Becerra incorporates by reference the above-stated general objections as though

3    fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

4    vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

5    Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

6    that is relevant to Plaintiff's claims.

7        Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

8    follows:  Defendant Becerra has not issued an interpretation of California Penal Code §§ 26375

9    and 26405(r).  Thus, Defendant Becerra is not aware of any documents that would be responsive

10   to this request.  However, the California Department of Justice does possess documents that are

11   related to firearms generally.  See and DOJ 0001282-DOJ 001312.

12       **INTERROGATORY NO. 21**:  Identify the types of events that qualify as "entertainment

13   events" under California Penal Code §§ 26375, 26405(r), and 25510.

14       **RESPONSE TO INTERROGATORY NO. 21:**

15       Defendant Becerra incorporates by reference the above-stated general objections as though

16   fully set forth herein.  Defendant Becerra objects to this interrogatory on the grounds that it is

17   vague and overbroad, and unduly burdensome.  Moreover, it seeks information irrelevant to

18   Plaintiff Zeleny's claims, and not reasonably calculated to lead to the discovery of information

19   that is relevant to Plaintiff's claims.

20       Subject to, and without waiving the foregoing objections, Defendant Becerra responds as

21   follows:  Defendant Becerra has not issued an interpretation of the types of events that would

22   qualify as "entertainment events" under California Penal Code §§ 26375, 26405, subdivision (r),

23   and 25510.  Thus, Defendant Becerra is not aware of any documents that would be responsive to

24   this request.  However, the California Department of Justice does possess documents that are

25   related to firearms generally.  See and DOJ 0001282-DOJ 001312.

26

27

28

Defendant Xavier Becerra's Amended Responses to Plaintiff's First Set of Interrogatories  (3:17-cv-07357 RS)

1   Dated:  October 6, 2020                          Respectfully submitted,

2                                                    XAVIER BECERRA
                                                     Attorney General of California
3                                                    ANTHONY R. HAKL
                                                     Supervising Deputy Attorney General
4

5
                                                     /s/ John W. Killeen
6                                                    NOREEN P. SKELLY
                                                     Deputy Attorney General
7                                                    JOHN W. KILLEEN
                                                     Deputy Attorney General
8                                                    *Attorneys for Defendant Attorney General*
                                                     *Xavier Becerra*
9

10

11

12

13

14

15

16

17

18

19

20

21   SA2018100198
22   Version 34385595_3 AMENDED Responses to Zeleny's Interrogatories.docx

23

24

25

26

27

28

Defendant Xavier Becerra's Amended Responses to Plaintiff's First Set of Interrogatories  (3:17-cv-07357 RS)

## DECLARATION OF SERVICE BY E-MAIL and OVERNIGHT COURIER

Case Name:  **Zeleny, Michael v. Edmund G. Brown, et al.**
No.:        **3:17-cv-07357 RS (NC)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is: 1300 I Street, Suite 125, P.O. Box 944255, Sacramento, CA 94244-2550.  I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for overnight mail with the **GOLDEN STATE OVERNIGHT COURIER SERVICE**.  In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the overnight courier that same day in the ordinary course of business.

On <u>October 6, 2020</u>, I served the attached **DEFENDANT ATTORNEY GENERAL XAVIER BECERRA'S <u>AMENDED</u> RESPONSES TO PLAINTIFF MICHAEL ZELENY'S FIRST SET OF INTERROGATORIES** by transmitting a true copy via electronic mail.  In addition, I placed a true copy thereof enclosed in a sealed envelope, in the internal mail system of the Office of the Attorney General, for overnight delivery, addressed as follows:

David William Affeld
Damion D. D. Robinson
David Markevitch
Affeld Grivakes LLP
2049 Century Park East, Suite 2460
Los Angeles, CA  90067
Tel:    (310) 979-8700
Fax:   (310) 979-8701
Email: dwa@agzlaw.com
        dr@agzlaw.com
        dm@agzlaw.com
*Attorneys for Plaintiff*

Todd H. Master
Howard Rome Martin & Ridley LLP
1900 O'Farrell Street, Suite 280
San Mateo, CA  94403
Tel:    (650) 365-7715
Fax:   (650) 364-5297
Email: tmaster@hrmrlaw.com
*Attorneys for Defendants City of Menlo Park and Dave Bertini*

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on October 6, 2020, at Sacramento, California.

| | |
|---|---|
| Tracie L. Campbell | *Tracie Campbell* |
| Declarant | Signature |

SA2018100198
34469907.docx

1

## **PROOF OF SERVICE**

2

     I hereby certify that on October 14, 2020, I electronically filed the foregoing document using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

3

4

                         s/ Gabrielle Bruckner
                         Gabrielle Bruckner

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOTION FOR LEAVE TO AMEND