UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY,<br><br>               Plaintiff,<br><br>       v.<br><br>GAVIN NEWSOM, et al.,<br><br>               Defendants. | Case No.  17-cv-07357-RS   (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 150 |

Plaintiff Michael Zeleny moves to compel Defendant Chief Dave Bertini, both individually and in his capacity as the Rule 30(b)(6) designee of Defendant City of Menlo Park, to answer deposition questions that he was instructed not to answer, as well as reasonable follow-up questions.  Zeleny also seeks sanctions.  ECF No. 150.  There are a couple of procedural issues the Court must address both before and after reaching the merits.

**A.      The Court's Discovery Standing Order**

Like all of the magistrate judges in this district, the undersigned has a standing order that requires a joint discovery letter brief to be filed in lieu of a formal discovery motion under Civil Local Rule 7.  A joint discovery letter brief is often a useful tool for resolving discovery disputes. For one thing, most discovery disputes don't need the 65 pages of briefing allowed for motions. For another, a joint discovery letter brief avoids the 35-day notice period under Rule 7, allowing disputes to be briefed more quickly.

However, a joint discovery letter brief by definition requires cooperation between opposing counsel.  Usually this is not a problem because most lawyers behave responsibly and realize they are obligated to meet and confer promptly and expeditiously exchange their half of the joint letter. But every now and then a non-moving party will play games, for example, by using trivial edits

United States District Court
Northern District of California

United States District Court
Northern District of California

1  made by their opponent as a justification for needing multiple additional days before filing the

2  joint letter, or refusing to get a joint discovery letter brief on file by the deadline to move to

3  compel, or failing or refusing to respond to the other side's draft letter or attempts to meet and

4  confer.  In such a situation, it's not fair to insist that the moving party comply with the joint

5  discovery letter brief procedure because the non-moving party has made that unreasonably

6  difficult or impossible.

7           That's what happened here, with this motion.  On September 27, 2020, Zeleny's attorney

8  emailed counsel for Defendants Bertini and the City concerning the present discovery dispute and

9  proposed to have a meet and confer call.  ECF No. 150-1, Ex. 1.  The email was less than a page

10  long.  It was sent 12 days before the deadline to move to compel, which was October 9, so there

11  was plenty of time for the parties to meet and confer and get a joint discovery letter on file.

12           For the next 10 days, defense counsel did not respond.  When Zeleny's lawyer emailed to

13  follow up, the defense attorney said he had not seen the email, stated that he was buried with other

14  deadlines, and offered to look over counsel's email and get back to him after the deadline to move

15  to compel expired.  When Zeleny's attorney pointed out this deadline, defense counsel complained

16  that "this rush to a deadline is not my doing."  The parties eventually met and conferred on

17  October 8, and on the following day – which was the deadline to move to compel – defense

18  counsel sent a lengthy email at last responding to the issues raised in the September 27 email.

19           Defense counsel's excuse for not seeing the September 27 email is that it was sent on a

20  Sunday, so it got "buried" in his inbox.  This is a lousy excuse, only slightly better than claiming

21  his dog ate the email.  One important feature of email – unlike, say, a telephone call or walking up

22  to someone's house and knocking on the door – is that the communication is just as effective even

23  if the recipient isn't available at exactly the moment the communication is sent.  So, the email

24  Zeleny's lawyer sent at 4:59 pm on Sunday was in defense counsel's inbox when he got to work

25  the following morning and was available for him to read and respond to then.  It's true that busy

26  lawyers sometimes get many emails, but that's no excuse for ignoring opposing counsel's request

27  to meet and confer.

28           Attorneys should also conform their conduct to court deadlines, and when the deadline to

1    move to compel is approaching, they should be extra careful to meet and confer promptly and

2    work in good faith to get a joint discovery letter brief on file in time.  The happiest explanation for

3    defense counsel's conduct is that he inappropriately ignored the request to meet and confer and

4    then completely forgot about the deadline to move to compel when he initially indicated when he

5    would be able to consider the issues raised in the September 27 email.  But Zeleny says the

6    happiest explanation is a little too happy and this was a deliberate effort to run out the clock.  That

7    impression seems bolstered by the fact that the first time defense counsel provided any substantive

8    response to the issues raised in Zeleny's request to meet and confer was on the last day to move to

9    compel.  At that point there was no way Zeleny could have gotten a joint letter brief on file in

10   time.

     Under the circumstances, the Court excuses Zeleny from compliance with the joint

11

12   discovery letter brief requirement in the Discovery Standing Order.  He made a reasonable effort

13   to comply with this requirement, and Bertini's and the City's unreasonable delay in responding to

14   his attempt to meet and confer made it impossible.

15   **B.      Timeliness of Zeleny's Motion to Compel**

16       Bertini's deposition took place in two sessions, one on March 19, 2019 and one on August

17   7, 2020.  Bertini and the City argue that Zeleny's motion to compel is untimely as to the March

18   2019 session.  The Court disagrees.  Civil Local Rule 37-3 states that the deadline to move to

19   compel is seven days after the discovery cutoff.  The fact discovery cutoff was October 2, 2020,

20   *see* ECF No. 139, so the deadline to move to compel as to fact discovery (which this is) was

21   October 9, 2020, the day Zeleny filed his motion.  Therefore, the motion is timely.

22       Bertini and the City resist this conclusion, but their arguments are not persuasive.  First,

23   they argue that when Zeleny filed his most recent motion to modify the case schedule, he did not

24   inform Judge Seeborg that he planned to move to compel further responses concerning the March

25   2019 deposition.  That is true but irrelevant.  *See* ECF No. 136.  In his motion Zeleny did not say

26   anything at all about what upcoming motions to compel he might or might not file.  Rather, he

27   cited certain outstanding discovery matters that affected his ability to complete expert disclosures

28   and asked for the case deadlines to be extended accordingly.  Judge Seeborg's order granting the

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    extension says that "[a]ll further discovery shall be limited to those matters specified in the

2    motion." ECF No. 139.  The Court understands that to mean that Zeleny could conduct the

3    discovery described in his motion to continue and could not, for example, subpoena or depose

4    additional people.  The Court does not understand that statement to limit the scope of Zeleny's

5    motions to compel.  In asking for a continuance, Zeleny made no representations about what

6    motions to compel he might file, and Judge Seeborg moved the deadline to file a motion to compel

7    merely as a consequence of the revised fact discovery cutoff.  ECF No. 139 ("The Discovery

8    Motion Cut-Off shall run from the discovery deadlines specified above.").  There is no basis to

9    conclude that anything in this changed discovery schedule limits the motions to compel Zeleny

10   may file.

11        Second, Bertini and the City argue that Zeleny's motion is untimely under the last sentence

12   of Civil Local Rule 37-3, which says "[d]iscovery requests that call for responses or depositions

13   after the applicable discovery cut-off are not enforceable, except by order of the Court for good

14   cause shown."  However, that rule means that a party can't notice a deposition for after the fact

15   discovery cutoff.  Zeleny did not do that.  He deposed Bertini over two days, both of which were

16   before the fact discovery cutoff.  Zeleny is not now serving a notice of a deposition for after the

17   close of fact discovery; he is moving to compel, and Local Rule 37-3 allows motions to compel to

18   be filed up to seven days after the close of fact discovery, a deadline that Zeleny has met.

19        Third, Bertini's and the City's reliance on *Days Inn Worldwide, Inc., v. Sonia Investments*,

20   237 F.R.D. 395 (N.D. Tex. 2006), and the cases it cites, is misplaced.  In that case the district

21   judge issued a scheduling order under Federal Rule of Civil Procedure 16 that set forth a deadline

22   for the completion of discovery and a different deadline for "all motions not otherwise covered by

23   the order." *Id*. at 396.  The magistrate judge had to decide whether the deadline to move to

24   compel was governed by the discovery completion date or the all-other-motions deadline.  The

25   magistrate judge determined that the completion of discovery included not just initially taking

26   discovery but also any necessary motions to compel and any follow-up discovery coming out of

27   motions to compel. *Id*. at 398.  Here, by contrast, the district judge's scheduling order at ECF No.

28   139 specifies a fact discovery cut-off October 2, 2020 and makes clear that the deadline to move to

4

1    compel is *after* that ("The Discovery Motion Cut-Off shall run from the discovery deadlines

2    specified above.).  And Local Rule 37-3 specifies *how long* after:  seven days.  Accordingly, *Days*

3    *Inn* is off point.

4    **C.     Whether Bertini and the City May File a Second Opposition Brief**

5         Bertini and the City do not respond to any of Zeleny's arguments on the merits.  Instead

6    they argue:  "Plaintiff has filed a motion that violates Magistrate Judge Thomas S. Hixson's

7    Discovery Standing Order . . . .  Rather than filing opposition to the motion, and thereby violating

8    the Discovery Order further," Bertini and the City "hereby object to plaintiff's motion and request

9    that it be summarily denied.  Alternatively, should the Court wish to receive opposition to the

10   motion, defendants will file same."  ECF No. 154.

11        The Court declines to give Bertini and the City leave to file a second opposition brief.

12   Local Rule 7-3(a) states that "[a]ny opposition to a motion may include a proposed order,

13   affidavits or declarations, as well as a brief or memorandum under Civil L.R. 7-4.  *Any* evidentiary

14   *and procedural objections to the motion must be contained within the brief* or memorandum. . . .

15   The opposition must be filed and served not more than 14 days after the motion was filed."

16   (emphasis added).  As the rule makes clear, a procedural objection to a motion goes in the

17   opposition brief; it's not an alternative to filing one.  Stated another way, a non-moving party does

18   not get to roll barrels down the hallway at an approaching motion, first trying to slow it down with

19   procedural objections, and then if that doesn't work making another attempt with a response on

20   the merits.  It gets one barrel, and all of the procedural and substantive arguments go in it.  Here,

21   Bertini's and the City's opposition brief – the whole brief, not just part of it – was due 14 days

22   after Zeleny filed his motion, a deadline that has now passed.

23   **D.     The Motion to Compel**

24        Now let's turn to the merits of the motion to compel.  Zeleny raises four issues.

25        **1.     "Asked and Answered"**

26        On page 138 of Bertini's deposition, defense counsel instructed Bertini not to answer,

27   asserting "asked and answered" and "He's already answered that question."  He did it again on

28   pages 201 and 202.  Zeleny is correct that this is a clear violation of Federal Rule of Civil

United States District Court
Northern District of California

1    Procedure 30(c)(2), which states that "[a] person may instruct a deponent not to answer only when

2    necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a

3    motion under Rule 30(d)(3)," i.e., a motion to terminate or limit the deposition.  All other

4    objections "must be noted on the record, but the examination still proceeds; the testimony is taken

5    subject to any objection."

6           The asked-and-answered objection is additionally problematic because it is a speaking

7    objection and therefore also violates Rule 30(c)(2)'s separate prohibition on argumentative and

8    suggestive objections.  There is nothing wrong with asking a question multiple times during a

9    deposition.  Sometimes the witness didn't answer it, or answered only part of it, or the answer is

10   implausible, or the answer builds in caveats that a slight rephrasing of the question might expose,

11   or asking essentially the same question from different angles or in slightly different ways yields

12   different answers.  Unless repeated questioning crosses the line into harassment, it can be an

13   effective technique of cross-examination.  Objecting "asked and answered" is a way of coaching

14   the witness because it is not actually objectionable to ask a question multiple times.  Saying

15   "asked and answered" can be a way of telling the witness not to change his testimony from what

16   he said before.  Also, as every lawyer knows, when the defending attorney objects "asked and

17   answered," often the question really wasn't answered, so the objection becomes a suggestion to

18   the witness to continue refusing to answer the question, which is what happened here.  Defense

19   counsel's instruction not to answer based on his "asked and answered" objection is overruled.

20   Zeleny may depose Bertini further on those questions and on any reasonable follow up questions.

21          **2.      Names of Other Protestors About Whom the City Has a File**

22          Defense counsel instructed Bertini not to identify other protestors about whom the City has

23   surveillance files.  In addition to objecting based on relevance and privacy, defense counsel cited

24   the official information and law enforcement privileges at pages 273-74 of the deposition.  (The

25   transcript doesn't read exactly that way, but defense counsel insists "the reporter clearly did not

26   hear the objections correctly over Zoom," ECF No. 150-1 at page 7 of 51, and Zeleny does not

27   disagree.)  It's true that when counsel got to the final instructions not to answer, he seemed to

28   ground that instruction on the privileges, but on the preceding page he repeatedly objected based

United States District Court
Northern District of California

1    on relevance and privacy to the same question, so the Court views those objections as preserved.

2         The Court declines to address the official information and law enforcement privileges

3    because it sustains the defense's relevance and privacy objections and denies Zeleny's motion to

4    compel on this issue. *See* Fed. R. Civ. Proc 26(b)(1) (discovery must be relevant), & 26(c) (for

5    good cause, court may protect a party from annoyance or embarrassment). Zeleny's question was

6    not limited to any particular type of protestor. It very difficult to understand the relevance of the

7    names of any Black Lives Matter protestors, A.B. 5 protestors, Shelter-in-Place protestors, or any

8    other protestors for causes dissimilar to Zeleny's *sui generis* protests about whom the City's police

9    have an information file.

10        Zeleny argues that he seeks this information to determine whether the City has a

11   widespread practice of surveilling protestors, which he says would support his claim that the City

12   violated his First Amendment rights. However, in the questions at issue in the motion, Zeleny was

13   asking Bertini to *identify* the other protestors, and defense counsel's objection was that the names

14   are irrelevant, and the Court agrees. Defense counsel specifically volunteered that "you can ask

15   him for approximate numbers," so he was not objecting to questions about how widespread the

16   surveilling practice might be.

17        Disclosing the other protestors' names is also inappropriately invasive of their privacy.

18   What, after all, is Zeleny going to do with that information? It's too late to depose these other

19   protestors because discovery is closed. He could still interview them, although one wonders about

20   the admissibility of the interview notes or whether Judge Seeborg would allow testimony at trial

21   from witnesses who were first interviewed after the close of fact discovery. In any event, these

22   people may not even know that the City has a file on them, and they would likely be spooked by

23   the knowledge that someone who does not work for the police knows that there is one. Zeleny

24   could try to do internet research or records searches about the other protestors, but although that

25   would avoid direct contact, it's still invasive of privacy. The Court realizes there is a protective

26   order in this action that could stop Zeleny from misusing confidential information. However,

27   merely telling Zeleny the names of the other protestors about whom the City has a file does not

28   give Zeleny any useful information unless he did something with those names, and any such

United States District Court
Northern District of California

7

1    something seems to be invasive of their privacy.

2              **3.       Attorney-Client Privilege and Interrogatory Response**

3              Defense counsel invoked the attorney-client privilege to instruct Bertini not to testify at

4    pages 262-63 of the deposition.  By way of background, the City's supplemental response to

5    interrogatory 1 stated in the final paragraph:  "In addition, the City has recently discovered and

6    contends that it never had legal authority to issue plaintiff a permit to perform any activity on the

7    center median of Sand Hill Road as set forth in his application to the City of Menlo Park for a

8    special event permit because the center median is owned, operated and controlled by the State of

9    California and is within the State of California's right-of-way."  ECF No. 150-1, Ex. 7.  Zeleny's

10   counsel asked Bertini if he had any knowledge about that paragraph other than what he had been

11   told by an attorney.  When he said no, Zeleny's counsel asked what the attorney had told him, and

12   defense counsel instructed him not to answer.  Zeleny moves to compel, citing the sword-and-

13   shield doctrine.

14             However, the Court is unpersuaded.  The Court sees the sword, of course, but has trouble

15   discerning the shield.  This is not a case like *United States v. $133,4200 in U.S. Currency*, 672

16   F.3d 629, 642 (9th Cir. 2012), where a litigant claimed in an interrogatory response that he had an

17   ownership interest in the cash that had been seized from his vehicle, then invoked the Fifth

18   Amendment to refuse to testify about how he obtained the cash.  In that case the litigant's

19   invocation of the privilege completely frustrated the government's ability to take discovery into

20   the basis for his claim of standing.  Here, the City's interrogatory response makes a legal assertion

21   about the City's authority based on who owns, operates and controls and has the right-of-way over

22   the center median.  Zeleny is right that the City must allow discovery into its contention

23   concerning who owns and controls the median, but he is wrong that Bertini's conversation with

24   counsel is essential or even important to taking that discovery.  The particular attorney who

25   conveyed this information to Bertini has no unique information about those assertions, which can

26   be fully tested and explored – and, if untrue, refuted – entirely without reference to what that

27   attorney told Bertini.  Stated another way, if you actually wanted to figure out who owns and

28   controls the center median, you would look at things like statutes and public records, which is

United States District Court
Northern District of California

United States District Court
Northern District of California

1  where the answer probably is.  Here, the assertion of the attorney-client privilege does not erect a

2  shield that prevents discovery into the City's contention.  Accordingly, this portion of Zeleny's

3  motion to compel is denied.

4  **4.    Attorney-Client Privilege and the Permit Denial**

5  Zeleny also challenges another invocation of the attorney-client privilege.  By way of

6  background, the City denied Zeleny's April 15, 2016 permit application in a letter dated May 4,

7  2016.  ECF No. 150-1, Ex. 8.  Zeleny's counsel asked Bertini about the denial on page 449 of the

8  deposition:

9  Q. And the new application was denied through this letter; correct?

10  A. Correct.

11  Q. Do you know if anyone, other than the city attorney's office, was
12  involved in making the decision to deny the renewed application or
   the new application?

13  A. Yes.  The city attorney's office, and I spoke to the city attorney,
14  and it is my recollection that Matt Milde also spoke to the city
   attorney.

15  Q. What did you tell the city attorney?

16  MR. MASTER:  Objection.  Don't answer that.  That's attorney-
17  client-privileged communication.

18  Zeleny argues that the City cannot hide the basis for its permit denial simply because it let

19  the City Attorney make the permitting decision.  Zeleny says that discussing a permit application

20  is not seeking legal advice but is instead seeking a permitting decision.  However, Zeleny's

21  arguments are off base.  In the excerpt of the testimony at issue, Zeleny did not ask what the basis

22  for the permit denial was.  Zeleny has not demonstrated that the City is using the attorney-client

23  privilege to shield the true reasons for the permit denial from inquiry.  And a discussion of a

24  permit application could of course involve legal advice.  The Court denies this aspect of Zeleny's

25  motion to compel as well.

26  **E.    The Motion for Sanctions**

27  Zeleny also moves for sanctions under Federal Rule of Civil Procedure 37.  Rule 37

28  provides that if a motion to compel is granted, "the court must, after giving an opportunity to be

9

1    heard, require the party or deponent whose conduct necessitated the motion, the party or attorney

2    advising that conduct, or both to pay the movant's reasonable expenses incurred in making the

3    motion, including attorney's fees."  However, "the court must not order this payment if:  (i) the

4    movant filed the motion before attempting in good faith to obtain the disclosure or discovery

5    without court action; (ii) the opposing party's nondisclosure, response, or objection was

6    substantially justified; or (iii) other circumstances make an award of expenses unjust."  *Id*.  Zeleny

7    seeks a sanction of $2,000, reflecting the estimated costs of resuming the deposition.

8         Zeleny's motion for sanctions is denied.  As to the motion to compel, he lost it on the

9    merits as to the second, third and fourth issues he raised, so the motion was not granted to that

10   extent.  The Court granted the motion only as to the first issue raised.  However, Civil Local Rule

11   7-8(c) states that a motion for sanctions "must be made as soon as practicable after the filing party

12   learns of the circumstances that it alleges make the motion appropriate . . ."  Zeleny's first issue –

13   the "asked and answer" objection – related to two discrete portions of the transcript in day one of

14   Bertini's deposition, which took place on March 19, 2019.  Zeleny filed this motion for sanctions

15   on October 9, 2020, which is about a year and a half later.  In no way did that timing comply with

16   Local Rule 7-8(c).

17   **F.      Conclusion**

18        Zeleny's motion for sanctions is denied.  His motion to compel is granted in part and

19   denied in part as explained above.  The Court orders Bertini to be redeposed as indicated above in

20   his individual capacity, and in his Rule 30(b)(6) capacity to the extent the questions fall within the

21   scope of the noticed topics, within 30 days.

22        **IT IS SO ORDERED.**

23

24   Dated: November 10, 2020

25

26                                          THOMAS S. HIXSON
                                            United States Magistrate Judge

27

28

United States District Court
Northern District of California