**TODD H. MASTER [SBN 185881]**
**tmaster@hrmrlaw.com**
**ROBERT J. GUNDERT [SBN 104486]**
**rgundert@hrmrlaw.com**
**HOWARD ROME MARTIN & RIDLEY LLP**
1900 O'Farrell Street, Suite 280
San Mateo, CA 94403
Telephone: (650) 365-7715
Facsimile: (650) 364-5297

Attorneys for Defendants
CITY OF MENLO PARK and DAVE BERTINI

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

MICHAEL ZELENY, an individual

Plaintiff,

vs.

EDMUND G. BROWN, JR., an individual, in his official capacity, et al.

Defendants.

Case No. 17-cv-07357-RS (TSH)

**DECLARATION OF NICOLAS A. FLEGEL IN SUPPORT OF DEFENDANTS CITY OF MENLO PARK'S AND DAVE BERTINI'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

**Date: February 25, 2021**
**Time: 1:30 p.m.**
**Dept.: Courtroom 3**
**Judge: Hon. Richard Seeborg**

**Trial Date: None**

I, NICOLAS A. FLEGEL, declare:

1. I am a competent adult over the age of eighteen. I have personal knowledge of the

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

matters set forth in this declaration and, if called as a witness, could and would competently testify thereto.

2. I am a partner at the law firm of Jorgenson. Siegel, McClure & Flegel, LLP ("JSMF") in the City of Menlo Park, California ("Menlo Park"). I have been an attorney at JSMF since 2005.

3. JSMF has served as City Attorney for Menlo Park for decades, assisting Menlo Park in a variety of legal matters. At all times relevant to the instant litigation my partner, William McClure, served as City Attorney for Menlo Park. In addition to being a partner at JSMF, until his recent retirement as Menlo Park City Attorney Mr. McClure was also a Menlo Park employee, in his capacity as Menlo Park City Attorney.

4. At all times relevant to the instant litigation I assisted Mr. McClure and have represented the City of Menlo Park in a variety of matters. I have provided legal services to Menlo Park over my career and have represented the City in various litigation matters while at JSMF.

5. I recently represented Menlo Park in a civil lawsuit filed by plaintiff Alvaro Zamora, arising from an automobile versus bicycle accident that occurred on 1/19/19 at or about the intersection of Sand Hill Road and Sand Hill Circle in Menlo Park. Mr. Zamora sued the State of California, Menlo Park, San Mateo County, and the driver of the automobile in San Mateo County Superior Court Case No. 19-CIV-04046. A true and correct copy of that Complaint is attached as Exhibit "A." I represented Menlo Park in that lawsuit.

6. In response to the Zamora litigation on 9/17/19 I, on behalf of Menlo Park, prepared and served a California Public Records Act request to the California Department of Transportation (Caltrans) requesting copies of:

> Any documents regarding the right of way map for Sand Hill Road and the Highway 280 intersection. As well as any maintenance agreements between Caltrans and the City of Menlo Park. Lastly, any maintenance records for any traffic signal for the last year, at the

DECLARATION OF NICOLAS A. FLEGEL IN SUPPORT OF DEFENDANTS CITY OF MENLO PARK'S AND DAVE BERTINI'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS(TSH) 2

east side of the freeway intersection (i.e., where Sand Hill Road intersects with Sand Hill Circle).

7. A true and correct copy of Caltrans' initial response to my 9/17/19 California Public Records Act request is attached as Exhibit "B." I understand that this document was produced to plaintiff in the instant litigation as MP006729 – MP0006730.

8. Caltrans subsequently produced documents in response to Menlo Park's 9/17/19 California Public Records Act request, which I understand were produced to plaintiff's counsel in the instant litigation as MP006618 – 6682. True and correct copies of these documents are attached as Exhibit "C" hereto. As relevant here, they include various Freeway Maintenance Agreements (and amendments thereto) between the State of California and Menlo Park, Menlo Park resolutions approving/adopting same, and two Caltrans D4 Right of Way Maps (Bates-numbered MP006681 and MP006682). The Agreement dated July 1, 1972, at page 12b, confirms that the State of California is responsible for all encroachment permits within the right of way.

9. The aforementioned maps and maintenance agreement show the boundaries of Caltrans' rights of way for Interstate 280 within Menlo Park (see blue lines) and confirm the rights and responsibilities of Menlo Park and the State of California with respect to the rights of way. While I used these maps and agreement to secure a dismissal of Menlo Park from the Zamora suit (since the accident occurred within the State's right-of-way), these maps also clearly identify the portion of the Sand Hill Road center median as State property under the jurisdiction and control of Caltrans. It was on that portion of the median that plaintiff Michael Zeleny indicated that he wished to stage a "special event" as per his 7/10/15 application to Menlo Park for a Special Event Permit.

10. In sum, based on the information provided by Caltrans, the location proposed by plaintiff Michael Zeleny for his proposed special event, is and was located within Caltrans' right-of-way and would thus require approval from the State of California. Given that the subject center median is within Caltrans' right-of-way, Menlo Park does not have jurisdiction to approve any activity on or within that particular center median. While I understand that Menlo Park did not deny Mr. Zeleny's application for a Special Event Permit for that reason, based on my subsequent

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

DECLARATION OF NICOLAS A. FLEGEL IN SUPPORT OF DEFENDANTS CITY OF MENLO PARK'S AND DAVE BERTINI'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS(TSH) 3

discovery through Caltrans, the City had cause to deny Mr. Zeleny's Special Event Permit application on that jurisdictional ground alone as it has no right to grant a permit for the area in which he sought to conduct his proposed event.

11.     On or about 9/7/17, Menlo Park received an email from Mr. Zeleny asking that the City "reconsider [his] special event permit application as requesting a film permit." I received a copy of that 9/7/17 email, which Mr. Zeleny had sent to a number of City employees, including City Attorney William McClure, City Manager Alex McIntyre, and David Bertini. I responded to Mr. Zeleny's email on 9/27/17, notifying him that the City had a film permit application process different from the special event application process. I copied Mr. Ivan Toews with my email since he was a Menlo Park Land Development Engineer involved in the handling of film permits at that time. By my email I asked Mr. Toews to forward a film permit application and information about the procedure to Mr. Zeleny. I also provided Mr. Zeleny with Mr. Toews' contact information. A true and correct copy of the email string comprised of Mr. Zeleny's 9/7/17 email and my response is attached as Exhibit "D.

12.     Attached as Exhibit "E" is a true and correct copy of Mr. Toews' 9/28/17 email to Mr. Zeleny, with attachments, on which I was copied. The attachments were comprised of an encroachment permit application (since that is what Menlo Park uses for film permit applications and other activities within a public right-of-way) with general conditions, a film production information sheet and a non-Menlo Park based business permit application.

13.     On 10/6/17, I received an email from Mr. Zeleny. which purported to attach a "completed application for a film permit." A true and correct copy of that email, with attachments, is attached as Exhibit "F." Of note was the fact that Mr. Zeleny had moved the proposed location of his activities from the center median on Sand Hill Road to "either side of Sand Hill Road."

14.     On 11/6/17, Ivan Toews, on behalf of Menlo Park, responded to Mr. Zeleny's film permit application, requesting additional information. A true and correct copy of Mr. Toews' 11/6/17 email to Mr. Zeleny, on which I was copied, is attached as Exhibit "G."

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

15. On 11/9/17, Mr. Zeleny sent an email to Mr. Toews and a number of others, including myself, responding to Menlo Park's request for additional information. A true and correct copy of Mr. Zeleny's 11/9/17 email is attached as Exhibit "H."

16. On 11/13/17, Mr. Toews and Mr. Zeleny exchanged emails concerning Mr. Zeleny's application for a film permit, on which I was copied. A true and correct copy of that email exchange is attached as Exhibit "I." In his email Mr. Zeleny asked the City to acknowledge that he had statutory rights "to carry a concealed firearm or openly carry an unloaded handgun or a long gun" pursuant to certain Penal Code sections that he cited. Because Mr. Zeleny's request called for a legal opinion, I then got involved more directly in the communications.

17. On 11/22/17, I sent an email to Mr. Zeleny in response to his emails of 11/9/17 and 11/13/17, a true and correct copy of which is attached as Exhibit "J." By my email, I advised Mr. Zeleny, as counsel for the City of Menlo Park, that once he obtained a film permit from Menlo Park he would be able to lawfully possess unloaded guns as part of his film production. I further advised that Menlo Park was willing to work with him on agreeable terms for the filming to take place but that City staff needed additional information from him, which I outlined in my email. I advised that we needed to know where he planned on placing his various items since City staff needed this information in order to evaluate his proposed film project for safety and traffic (pedestrian, cyclist and vehicular) control purposes.

18. I also requested information from Mr. Zeleny about his planned use of guns and live ammunition as part of his film production. In particular, I asked him for information about the types of guns he would be using, how they were to be used, where he planned to place them and what direction they would face, as he had indicated he would be stationed next to Sand Hill Road, a very busy arterial roadway within the City. I noted that it would not be acceptable to brandish his weapons at motorists, pedestrians or cyclists in order to film their reactions, since it was unclear what he meant when he stated that he intended to film the reactions of those passing by. I also asked for more information about his plans to film the reactions of those passing by. Additionally, I asked him about his ammunition feeding devices and on what basis he would need or wish to use

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

live ammunition in his film project. I solicited legal authority from him in support of his apparent claim that the exemptions to the statutory open carry prohibitions allowed for the use of live ammunition in connection with his film production activities. I concluded by advising Mr. Zeleny that the City was working with him in good faith so that he could proceed with his film production, but that staff needed additional information since his described activities raised a number of public safety issues.

19.   On 11/27/17, I received an email response from Mr. Zeleny, a true and correct copy of which is attached as Exhibit "K." Other than stating that he would not brandish weapons at those passing by he declined to answer the questions and request for additional information I had sent to him other than to challenge the City's right to ask such questions or even to require a permit for his film production project on City property. Instead, he made generalized assurances that he would not interfere with traffic and would not commit any crimes.

20.   I responded to Mr. Zeleny's 11/27/17 email on 12/7/17 via email, a true and correct copy of which is attached as Exhibit "L. I again asked Mr. Zeleny to provide the additional information that had been requested in my 11/22/17 email. I pointed out that it was essential that the City understand what he wished to do in order to determine what, if any, impacts would have to be considered for traffic control and public safety purposes. I also explained that the City requests such information so as to be able to put a plan in place.

21.   On 12/8/17, Mr. Zeleny responded via email to my 12/7/17 email, a true and correct copy of which is attached as Exhibit "M." Rather than responding to the questions and requests sent to him 16 days earlier, Mr. Zeleny argued the law and claimed that it was the City's responsibility to answer those questions and respond to those requests, notwithstanding the fact that he was in charge of the film project and presumably would know how he wished to arrange his equipment, where he would be pointing his guns, why he needed to have live ammunition, etc.

22.   Mr. Zeleny sent me a further email on 12/20/17, a true and correct copy of which is attached as Exhibit "N." He continued to decline to respond to the questions and requests I had sent him 29 days earlier while claiming we were stalling. As with previous emails, he presented

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

legal arguments and threats of litigation rather than answers to the questions and requests sent to him.

23. On 12/21/17, I sent an email to Mr. Zeleny, advising him that if he wished to proceed with his film permit application, he needed to provide the information that Menlo Park had previously requested which were conditions of the application, with one exception – I removed the request that Mr. Zeleny identify the names of his film crew and instead simply asked him for the size of his film crew. I spelled out for him he questions that he had not yet answered in the email. A true and correct copy of my 12/21/17 email is attached as Exhibit "O."

24. Part of the issue with Mr. Zeleny's film permit application was the lack of specificity in his responses. City staff needed to know where he intended to place the various pieces of equipment, his film crew, display and firearms for traffic control and public safety purposes, as I explained. Furthermore, Mr. Zeleny indicated that he intended to have live ammunition with him on site during his filming, which presented significant safety concerns. These and other questions were asked on multiple occasions, but never directly and specifically answered by Mr. Zeleny.

25. Had Mr. Zeleny identified where specifically he intended to place his equipment and where his crew would be filming within the public right-of-way, Menlo Park personnel could have analyzed whether traffic or other controls would be required and, if so, what would be needed in order to comply with the California Vehicle Code, California law and the Menlo Park Municipal Code.

26. Mr. Zeleny responded to me via email on 12/21/17, a true and correct copy of which is attached as Exhibit "P." He did not provide the information requested in my 12/21/17 email.

27. On 12/22/17 I wrote once more to Mr. Zeleny by email. A true and correct copy of my email is attached as Exhibit Q. I asked him whether he wished to proceed with his film permit application since he had not provided the information I had requested. In his email of 12/21/17, Mr. Zeleny had made comments about a film permit not being necessary. He also had not provided

DECLARATION OF NICOLAS A. FLEGEL IN SUPPORT OF DEFENDANTS CITY OF MENLO PARK'S AND DAVE BERTINI'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS(TSH) 7

the specific information requested and needed for the City staff's review. In particular, staff needed to know details about his set up and the location of his equipment, personnel and guns. Although he stated he would be at the same location where he had protested five years previously that was not fully responsive to the question, since it appeared that he would be protesting with more equipment and firearms (including what looked like a machine gun) than he had before. Staff needed to know how he intended to place and stage his various items in order to determine if that would affect vehicular, cyclist and/or pedestrian traffic as well as public safety.

28. We also needed to know the answers to the questions I had posed about his guns, what he had meant when he stated that he intended to elicit and focus upon reactions to those traveling by and whether he intended to use live ammunition in his filming. All of this information was necessary in order to evaluate for public safety and traffic control.

29. In my 12/22/17 email (Exhibit Q) I cited to him the document he had been given in 2015 when he first indicated he would be filming. At that time he was seeking a special event permit and the City pointed out that a film permit may be more appropriate. A copy of that document was sent with Mr. Toews' September 28, 2017 email (Exhibit E). It is titled "Film Production in Menlo Park" and outlines the information needed by the City in order to process and evaluate film permit applications in terms of compliance with applicable laws, traffic control and public safety. That document references City Ordinances, which includes not only the Noise ordinance found at Chapter 8.06 of the Menlo Park Municipal Code but also the Use of Public Rights-of-Way ordinance found at Chapter 13.18 of the Municipal Code, which governs the process for encroachment permits, including film permits where filming within one or more public rights-of-way is proposed.

30. Attached hereto as Exhibit R is a copy of Chapter 13.18 of the Menlo Park Municipal Code. That ordinance has been in effect since 2007.

31. Finally, I wish to provide the court with a few facts relevant to Mr. Zeleny's previous special event permit application, by which he requested a permit in order to conduct activities on the center median of Sand Hill Road.

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

DECLARATION OF NICOLAS A. FLEGEL IN SUPPORT OF DEFENDANTS CITY OF MENLO PARK'S AND DAVE BERTINI'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS(TSH) 8

32. I have lived and worked in and around Menlo Park almost my entire life. I am very familiar with Sand Hill Road, which is one of the major thoroughfares within the City. I estimate that I have passed by the median in question well over 1,000 times during the course of my lifetime. I have never seen or heard of that median being used as a public forum.

33. Finally, and in closing, the Court may wish to know what types of events and activities have typically sought special event permits. Such events include run/walk events (including a 5K, 10K and half marathon event that is put on annually), concerts, block parties, large birthday parties, a car show, small parades, a movie night and fundraisers.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was executed on this 19th day of January 2021, at Menlo Park, California.

Nicolas A. Flegel

HOWARD ROME MARTIN & RIDLEY LLP
1900 O' FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

DECLARATION OF NICOLAS A. FLEGEL IN SUPPORT OF DEFENDANTS CITY OF MENLO PARK'S AND DAVE BERTINI'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS(TSH) 9

# Exhibit A

PLD-PI-001

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Michael Greenslade, SBN 310874; Anna H. Cronk, SBN 272970
GREENSLADE CRONK, LLP
145 South Fairfax Avenue, Second Floor
Los Angeles, California 90036
TELEPHONE NO: 323-747-7474 FAX NO. *(Optional)*: 213-289-1566
E-MAIL ADDRESS *(Optional)*: anna@greensladecronk.com
ATTORNEY FOR *(Name)*: Plaintiff ALVARO ZAMORA

FOR COURT USE ONLY

FILED
SAN MATEO COUNTY
JUL 1 6 2019
Clerk of the Superior Court
By [signature]
DEPUTY CLERK

19-CIV-04046
CMP
Complaint
1936627

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS: 400 County Center
CITY AND ZIP CODE: Redwood City 94063
BRANCH NAME: San Mateo County Superior Court

PLAINTIFF: Alvaro Zamora

DEFENDANT: State of California; City of Menlo Park; County of San Mateo; Xingyu Li

☑ DOES 1 TO 20

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

☐ **AMENDED *(Number)*:**

**Type *(check all that apply)*:**

☑ **MOTOR VEHICLE** ☑ **OTHER *(specify)*:** Premises Liability
☑ **Property Damage** ☐ **Wrongful Death**
☑ **Personal Injury** ☐ **Other Damages *(specify)*:**

**Jurisdiction *(check all that apply)*:**

☐ **ACTION IS A LIMITED CIVIL CASE**
**Amount demanded** ☐ **does not exceed $10,000**
☐ **exceeds $10,000, but does not exceed $25,000**
☑ **ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)**
☐ **ACTION IS RECLASSIFIED by this amended complaint**
☐ **from limited to unlimited**
☐ **from unlimited to limited**

CASE NUMBER: 19CIV04046

1. **Plaintiff** *(name or names)*: Alvaro Zamora
alleges causes of action against **defendant** *(name or names)*:
State of California; City of Menlo Park; County of San Mateo; Xingyu Li and Does 1 to 20
2. This pleading, including attachments and exhibits, consists of the following number of pages:
3. Each plaintiff named above is a competent adult
   a. ☐ except plaintiff *(name)*:
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe)*:
      (3) ☐ a public entity *(describe)*:
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify)*:
      (5) ☐ other *(specify)*:
   b. ☐ except plaintiff *(name)*:
      (1) ☐ a corporation qualified to do business in California
      (2) ☐ an unincorporated entity *(describe)*:
      (3) ☐ a public entity *(describe)*:
      (4) ☐ a minor ☐ an adult
         (a) ☐ for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) ☐ other *(specify)*:
      (5) ☐ other *(specify)*:

☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Page 1 of 3
Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]
**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**
Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

FAXED

PLD-PI-001

| SHORT TITLE: Zamora v. State of California et al. | CASE NUMBER: |
|---|---|

4. [ ] Plaintiff *(name):*
is doing business under the fictitious name *(specify):*

and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person
a. [✓] **except** defendant *(name):* State of California
(1) [ ] a business organization, form unknown
(2) [ ] a corporation
(3) [ ] an unincorporated entity *(describe):*
(4) [✓] a public entity *(describe):* State of California
(5) [ ] other *(specify):*

b. [✓] **except** defendant *(name):* City of Menlo Park
(1) [ ] a business organization, form unknown
(2) [ ] a corporation
(3) [ ] an unincorporated entity *(describe):*
(4) [✓] a public entity *(describe):* city in state of California
(5) [ ] other *(specify):*

c. [✓] **except** defendant *(name):* County of San Mateo
(1) [ ] a business organization, form unknown
(2) [ ] a corporation
(3) [ ] an unincorporated entity *(describe):*
(4) [✓] a public entity *(describe):* county in state of California
(5) [ ] other *(specify):*

d. [ ] **except** defendant *(name):*
(1) [ ] a business organization, form unknown
(2) [ ] a corporation
(3) [ ] an unincorporated entity *(describe):*
(4) [ ] a public entity *(describe):*
(5) [ ] other *(specify):*

[ ] Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.
a. [✓] Doe defendants *(specify Doe numbers):* 1 to 20 were the agents or employees of other named defendants and acted within the scope of that agency or employment.
b. [✓] Doe defendants *(specify Doe numbers):* 1 to 20 are persons whose capacities are unknown to plaintiff.

7. [ ] Defendants who are joined under Code of Civil Procedure section 382 are *(names)*:

8. This court is the proper court because
a. [ ] at least one defendant now resides in its jurisdictional area.
b. [ ] the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
c. [✓] injury to person or damage to personal property occurred in its jurisdictional area.
d. [ ] other *(specify):*

9. [✓] Plaintiff is required to comply with a claims statute, and
a. [✓] has complied with applicable claims statutes, or
b. [ ] is excused from complying because *(specify):*

PLD-PI-001

| SHORT TITLE: Zamora v. State of California et al. | CASE NUMBER: |
|---|---|

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
    - a. [✓] Motor Vehicle
    - b. [✓] General Negligence
    - c. [ ] Intentional Tort
    - d. [ ] Products Liability
    - e. [✓] Premises Liability
    - f. [ ] Other *(specify):*

11. Plaintiff has suffered
    - a. [✓] wage loss
    - b. [✓] loss of use of property
    - c. [✓] hospital and medical expenses
    - d. [✓] general damage
    - e. [✓] property damage
    - f. [✓] loss of earning capacity
    - g. [ ] other damage *(specify):*

12. [ ] The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
    - a. [ ] listed in Attachment 12.
    - b. [ ] as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

    The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
    - a. (1) [✓] compensatory damages.
    - (2) [ ] punitive damages

    The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
    - (1) [✓] according to proof
    - (2) [ ] in the amount of: $

15. [ ] The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*

Date: July 9, 2019

Anna H. Cronk, Esq.
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001(2)

| SHORT TITLE: Zamora v. State of California et al. | CASE NUMBER: |
|---|---|

1 (number) **CAUSE OF ACTION—General Negligence** Page 4

ATTACHMENT TO [✓] Complaint [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name)*: Alvaro Zamora

alleges that defendant *(name)*: State of California; City of Menlo Park; Cty. of San Mateo; Xingyu Li

[✓] Does 1 to 20

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff

on *(date)*: January 19, 2019

at *(place)*: intersection of Sand Hill Road and Sand Hill Circle in Menlo Park, California

*(description of reasons for liability)*:

At the time of the collision, the traffic signal at the center island that was intended to face the westbound traffic of Sand Hill Road was so negligently secured that it had become rotated 90 degrees, so that it appeared that southbound traffic on Sand Hill Circle had a green light simultaneously with both the westbound and eastbound traffic on Sand Hill Road. In the days leading up to the subject collision, Defendants State of California; City of Menlo Park; Cty. of San Mateo; Xingyu Li; and Does 1 to 20 had become aware of the same problem and all lights at the intersection had been changed to a flashing red to avoid traffic collisions of the very type suffered by Claimant, but by the time the subject collision occurred, the traffic lights were no longer flashing red. Defendants State of California; City of Menlo Park; Cty. of San Mateo; and Does 1 to 20 responsible for the traffic flow at the intersection had deemed the traffic at said intersection significant enough such that it warranted control by traffic lights, and any defect in the traffic light function creates a dangerous condition to all travelers of the intersection. Additionally, Sand Hill Road has a dedicated bicycle lane, rendering it reasonably foreseeable that bicycle traffic would pass through the intersection. Bicycle riders going through an intersection that is inappropriately controlled have a heightened likelihood of injury due to the nature of travel, which in turn creates a higher duty on the governmental entity responsible for traffic control to ensure that the controls are functioning properly. Defendants Xingyu Li and Does 1 to 20 were drivers of the vehicle that so negligently entered the intersection, operated the vehicle, failed to monitor other traffic in the intersection including Plaintiff before proceeding, and failed to follow all directing traffic controls such that she caused a collision with to occur between her vehicle and the bicycle and person of Plaintiff Alvaro Zamora.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

CAUSE OF ACTION—General Negligence

Page 1 of 1
Code of Civil Procedure 425.12
www.courtinfo.ca.gov

PLD-PI-001(1)

| SHORT TITLE: Zamora v. State of California et al. | CASE NUMBER: |
|---|---|

2 (number)

## CAUSE OF ACTION—Motor Vehicle

ATTACHMENT TO [✓] Complaint [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

Plaintiff *(name):* Alvaro Zamora

MV- 1. Plaintiff alleges the acts of defendants were negligent; the acts were the legal (proximate) cause of injuries and damages to plaintiff; the acts occurred

on *(date):* January 19, 2019

at *(place):*

intersection of Sand Hill Road and Sand Hill Circle in Menlo Park, California

MV- 2. DEFENDANTS

a. [✓] The defendants who operated a motor vehicle are *(names):*

Xingyu Li

[✓] Does 1 to 20

b. [✓] The defendants who employed the persons who operated a motor vehicle in the course of their employment are *(names):*

[✓] Does 1 to 20

c. [✓] The defendants who owned the motor vehicle which was operated with their permission are *(names):*

[✓] Does 1 to 20

d. [✓] The defendants who entrusted the motor vehicle are *(names):*

[✓] Does 1 to 20

e. [✓] The defendants who were the agents and employees of the other defendants and acted within the scope of the agency were *(names):*

Xingyu Li

[✓] Does 1 to 20

f. [ ] The defendants who are liable to plaintiffs for other reasons and the reasons for the liability are [ ] listed in Attachment MV-2f [ ] as follows:

[ ] Does ______ to ______

Page 5

PLD-PI-001(4)

| SHORT TITLE: Zamora v. State of California et al. | CASE NUMBER: |
|---|---|

3 (number) **CAUSE OF ACTION—Premises Liability** Page 6

ATTACHMENT TO [✓] Complaint [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

Prem.L-1. Plaintiff *(name):* Alvaro Zamora

alleges the acts of defendants were the legal (proximate) cause of damages to plaintiff.

On *(date):* January 19, 2019 plaintiff was injured on the following premises in the following fashion *(description of premises and circumstances of injury):*

Tthe traffic signal at the center island that was intended to face the westbound traffic of Sand Hill Road was so negligently secured that it had become rotated 90 degrees, so that it appeared that southbound traffic on Sand Hill Circle had a green light simultaneously with both the westbound and eastbound traffic on Sand Hill Road. Defendants had become aware of the same problem and all lights at the intersection had been changed to a flashing red, but by the time the subject collision occurred, the traffic lights were no longer flashing red.

Prem.L-2. [✓] **Count One—Negligence** The defendants who negligently owned, maintained, managed and operated the described premises were *(names):*

Defendants State of California; City of Menlo Park; Cty. of San Mateo

[✓] Does 1 to 20

Prem.L-3. [✓] **Count Two—Willful Failure to Warn** [Civil Code section 846] The defendant owners who willfully or maliciously failed to guard or warn against a dangerous condition, use, structure, or activity were *(names):*

Defendants State of California; City of Menlo Park; Cty. of San Mateo

[✓] Does 1 to 20

Plaintiff, a recreational user, was [ ] an invited guest [ ] a paying guest.

Prem.L-4. [✓] **Count Three—Dangerous Condition of Public Property** The defendants who owned public property on which a dangerous condition existed were *(names):*

Defendants State of California; City of Menlo Park; Cty. of San Mateo

[✓] Does 1 to 20

a. [✓] The defendant public entity had [✓] actual [ ] constructive notice of the existence of the dangerous condition in sufficient time prior to the injury to have corrected it.

b. [✓] The condition was created by employees of the defendant public entity.

Prem.L-5. a. [✓] **Allegations about Other Defendants** The defendants who were the agents and employees of the other defendants and acted within the scope of the agency were *(names):*

[✓] Does 1 to 20

b. [ ] The defendants who are liable to plaintiffs for other reasons and the reasons for their liability are [ ] described in attachment Prem.L-5.b [ ] as follows *(names):*

Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(4) [Rev. January 1, 2007]

**CAUSE OF ACTION—Premises Liability**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

# Exhibit B

**Nicolas A. Flegel**

**From:** CALTRANS <caltrans@mycusthelp.net>
**Sent:** Thursday, November 07, 2019 5:07 PM
**To:** Nicolas A. Flegel
**Subject:** [Records Center] Public Records Request :: R003865-091719

--- Please respond above this line ---

RE: Public Records Request of September 17, 2019, Reference # R003865-091719

Dear Nick Flegel,

On *September 17, 2019*, the California Department of Transportation (Caltrans) received your request for records under the Public Records Act (PRA) wherein you requested the following:

***Any documents regarding the right of way map for the Sand Hill Road and the highway 280 intersection. As well as any maintenance agreements between Caltrans and the City of Menlo Park. Lastly, any maintenance records for any traffic signal for the last year, at the east side of the freeway intersection (i.e. where Sand Hill Road intersects with Sand Hill Circle).***

***Thank you and please call me at (650) 324-9300 if you have any questions.***
***Nick Flegel***
***Jorgenson, Siegel, McClure & Flegel, LLP***
***1100 Alma Street, Suite 210***
***Menlo Park, CA 94025***

Caltrans is in the process of gathering and reviewing the requested records. Your request will take extra time to fulfill because of the need to:

*The need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request.*

Consequently, Caltrans is exercising its authority under Government Code section 6253(c), to extend the time to reply to a Public Records Act request. You will receive a further more complete response no later than November 21, 2019.

Thank you for your patience in awaiting this information.

Sincerely,

Hector Chinchilla
Public Records Coordinator
510-622-0798

To monitor the progress or update this request please log into the Public Records Center

# Exhibit C

FREEWAY MAINTENANCE AGREEMENT

THIS AGREEMENT, made and entered into, in duplicate, this 16th day of September, 1969, by and between the State of California, acting by and through the Department of Public Works, Division of Highways, hereinafter for convenience referred to as "the State", and the City of Menlo Park, hereinafter for convenience referred to as "the City", witnesseth:

WHEREAS, on August 9, 1966, a Freeway Agreement was executed between the City and the State relating to the development, as a freeway, of a portion of State Highway Route 280, within the limits of the City of Menlo Park, and

WHEREAS, under the provisions of said Freeway Agreement, the City agreed to certain adjustments in the city street system, and for the carrying of certain streets over and under or to a connection with the freeway, and

WHEREAS, said freeway has now been completed or is nearing completion, and the parties hereto mutually desire to clarify the division of maintenance responsibility as to separation structures, and city streets or portions thereof, and landscaped areas, within the freeway limits.

NOW THEREFORE, IT IS AGREED:

1. ROADWAY SECTIONS

The City will maintain, at City expense, all portions of city streets and appurtenant structures and bordering areas, within the shaded areas on the attached map marked Exhibit "A", entitled "Freeway Maintenance Agreement with the City of Menlo Park, 04-SM-280,

P.M. 0.0/3.4", consisting of three sheets dated August 22, 1969, and made a part hereof by this reference.

2. LANDSCAPED AREAS

All plantings or other types of roadside development within the freeway limits within the shaded areas on Exhibit "A" will be maintained by the City.

3. LEGAL RELATIONS AND RESPONSIBILITIES

Nothing in the provisions of this Agreement is intended to affect the legal liability of either party to the contract by imposing any standard of care respecting the maintenance of State highways different from the standard of care imposed by law.

It is understood and agreed that neither the State, the Department, nor any officer or employee thereof is responsibile for any damage or liability occurring by reason of anything done or omitted to be done by the City under or in connection with any work, authority or jurisdiction delegated to the City under this Freeway Maintenance Agreement. It is also understood and agreed that pursuant to Government Code Section 895.4, the City shall fully indemnify and hold the State harmless from any damage or liability occurring by reason of anything done or omitted to be done by the City under or in connection with any work, authority or jurisdiction delegated to the City under this Agreement.

It is understood and agreed that neither the City nor any officer or employee thereof, is responsible for any damage or liability occurring by reason of anything done or omitted to be done by the Department under or in connection with any work, authority

or jurisdiction not delegated to the City under this Freeway Maintenance Agreement. It is also understood and agreed that, pursuant to Government Code Section 895.4, the Department shall fully indemnify and hold the City harmless from any damage or liability occurring by reason of anything done or omitted to be done by the Department under or in connection with any work, authority or jurisdiction not delegated to the City under this Agreement.

4. EFFECTIVE DATE

This Agreement shall be effective upon the date of its execution by the State; it being understood and agreed, however, that the execution of this Agreement shall not affect any pre-existing obligations of the City to maintain designated areas pursuant to prior written notice from the State that work in such areas, which the City has agreed to maintain pursuant to the terms of the Freeway Agreement, has been completed.

STATE OF CALIFORNIA
DEPARTMENT OF PUBLIC WORKS
DIVISION OF HIGHWAYS

J. A. LEGARRA
STATE HIGHWAY ENGINEER

By [signature]
Deputy State Highway Engineer

OCT 16 1969

CITY OF MENLO PARK

[signature]
Mayor

[signature: Margaret E. Snowden]
City Clerk

OCT 16 1969

Approval Recommended

[signature]
Deputy District Engineer

[signature]
Maintenance Engineer

Approval as to Form

[signature]
Attorney for Department

[signature]
Attorney for City



EXHIBIT "A"
PALO
ALTO
LOS ALTOS
HILLS
ROUTE 280
P.M. 0.0
LOCATION LIMITS
P.M. 3.4
W O O D S I D E
MENLO
PARK
ATHERTON
REDWOOD
CITY
LOCATION NO. 1
SEE SHEETS 2,3
VICINITY MAP
Sheet 1 of 3
FREEWAY MAINTENANCE AGREEMENT WITH THE CITY OF MENLO PARK
04-SM-280
P.M. 0.0 / 3.4
AUGUST 22, 1969

MP006621



EXHIBIT "A"
R/W
AC Dike
CL & Fence
8' Shld
End Fence
A.C. Dike
R/W
8' Shld
LINE
M E N L O P A R K
PROPOSED
RELINQUISHMENT
NO. 31488
Area Maintained By City
LOCATION NO. 2
Sheet 2 of 3
FREEWAY MAINTENANCE AGREEMENT WITH THE CITY OF MENLO PARK
04 - SM - 280
P. M. 0.0 / 3.4
AUGUST 22, 1969

MP006622



EXHIBIT "A"
280 HC, LINE
City Limits
R/W
HCs LINE
5' Shld
Curb
CL-6 Fence
C O U N T Y
M E N L O
PCC 1½ SURF
A2-8 Curb
5' P.C.C. SW.
City Limits
SAND HILL ROAD
SH LINE
B7 Curb
5' Shld
R/W
A.C. Dike
P A R K
PROPOSED
RELINQUISHMENT
NO. 31488
Area Maintained By City
LOCATION NO. 2
Sheet 3 of 3
FREEWAY MAINTENANCE AGREEMENT WITH THE CITY OF MENLO PARK
04-SM-280
P.M. 0.0/3.4
AUGUST 22, 1969

RESOLUTION NO. 2276

RESOLUTION OF THE CITY COUNCIL OF THE CITY OF MENLO PARK APPROVING FREEWAY MAINTENANCE AGREEMENT.

WHEREAS, the State of California, through its Department of Public Works, Division of Highways, has presented an Agreement entitled "Freeway Maintenance Agreement" which concerns State Highway Route 280, in the City of Menlo Park at Sand Hill Road, and

WHEREAS, the City Council has heard read said Agreement in full and is familiar with the contents thereof;

THEREFORE, be it resolved by the City Council of the City of Menlo Park that said Freeway Maintenance Agreement be and the same is hereby approved and the Mayor and the City Clerk are directed to execute the same on behalf of said City.

ADOPTED THIS 16th DAY OF September, 1969.

Attest:

I hereby certify that the foregoing resolution was duly and regularly passed by the City Council of the City of Menlo Park at a regular meeting thereof held September 16, 1969.

Margaret E. Snowden
City Clerk

AGREEMENT FOR MAINTENANCE OF STATE HIGHWAY IN THE CITY OF MENLO PARK

THIS AGREEMENT, made and executed in duplicate this 1st day of July, 1972, by and between the Department of Public Works of the State of California, acting by and through the Division of Highways, hereinafter called the "Department" and the City of Menlo Park, hereinafter referred to as "City".

W I T N E S S E T H:

1. RECITALS: The parties desire to provide for the maintenance of State highway routes within the City as provided in Section 130 of the Streets and Highways Code, and to arrange herein for the particular maintenance functions to be performed by the City and those to be performed by the Department and to specify the terms and conditions under which such work will be performed.

2. AGREEMENT: This Agreement shall supersede all previous "Agreements for Maintenance of State Highways in the City of Menlo Park" and Amendments to the Agreement which have been executed.

In consideration of the mutual covenants and promises herein contained, it is agreed:

The City will perform such maintenance work as is specifically delegated to it, and the Department will perform those particular functions of maintenance not otherwise assigned to the City on the State highway routes or portions thereof all as hereinafter described under Sections 21 and 22 hereof or as said sections may be subsequently modified with the consent of the parties hereto acting by and through their authorized representative.

3. MAINTENANCE DEFINED: Maintenance is defined in Section 27 of the Streets and Highways Code as follows:

Sec. 27. "(a) The preservation and keeping of rights-of-way, and each type of roadway, structure, safety convenience or device, planting, illumination equipment and other facility, in the safe and usable condition to which it has been improved or constructed, but does not include reconstruction or other improvement.

(b) Operation of special safety conveniences and devices, and illuminating equipment.

(c) The special or emergency maintenance or repair necessitated by accidents or by storms or other weather conditions, slides, settlements or other unusual or unexpected damage to a roadway, structure or facility.
The degree and type of maintenance for each highway, or portion thereof, shall be determined in the discretion of the authorities charged with the maintenance thereof, taking into consideration traffic requirements and moneys available therefor."

4. DEGREE OF MAINTENANCE: The degree or extent of maintenance work to be performed and the standards therefor shall be in accordance with the provisions of Section 27 of the Streets and Highways Code and the provisions of this Agreement as hereinafter specified or as may be prescribed from time to time by the District Engineer. "District Engineer", as used herein, means the District Engineer or Assistant State Highway Engineer of the Division of Highways assigned to the territory in which the city is located, or his authorized representative.

5. LEGAL RELATIONS AND RESPONSIBILITIES: Nothing in the provisions of this Agreement is intended to affect the legal liability of either party to the contract by imposing any standard of care respecting the maintenance of State highways different from the standard of care imposed by law.

It is understood and agreed that neither the State, the Department, nor any officer or employee thereof is responsible for any damage or liability occurring by reason of anything done or omitted to be done by the City under or in connection with any work, authority or jurisdiction delegated to the City under this Agreement for Maintenance. It is also understood and agreed that, pursuant to Government Code Section 895.4, City shall fully indemnify and hold State harmless from any damage or liability occurring by reason of anything done or omitted to be done by City under or in connection with any work, authority or jurisdiction delegated to City under this Agreement.

It is understood and agreed that neither City, nor any officer or employee thereof, is responsible for any damage or liability occurring by reason of anything done or omitted to be done by the Department under or in connection with any work, authority or jurisdiction not delegated to the City under this Agreement for Maintenance. It is also understood and agreed that, pursuant to Government Code Section 895.4, Department shall fully indemnify and hold City harmless from any damage or liability occurring by reason of anything done or omitted to be done by Department under or in connection with any work, authority or jurisdiction not delegated to City under this Agreement.

6. HIGHWAY, as used herein, refers to the whole right-of-way which is secured or reserved to use in the construction and maintenance of the roadbed and roadsides as hereinafter described.

7. ROADBED means that portion of the roadway extending from curb line to curb line or shoulder line to shoulder line.

8. IMPROVED ROADSIDES relates to the area between the roadbed, as defined under Section 7, and the right-of-way boundary lines, including curb and sidewalk, as hereinafter described but excluding drainage structures or waterways.

9. UNIMPROVED ROADSIDES relates to the area between the roadbed and right-of-way boundary wherein curbs and sidewalks do not exist.

10. CURBS relates to a timber or a masonry structure separating or otherwise delineating the roadbed from the remainder of the highway.

11. SIDEWALK applies to the paved or otherwise improved surface area between the face of curb and right of way boundary, including bike/pedestrian pathways, paved entrances, or driveways.

12. BRIDGES, as used herein, refer to structures having been assigned Bridge Numbers by the Department. All, except HAVEN AVENUE PEDESTRIAN BRIDGE, will be maintained by the Department. HAVEN AVENUE PEDESTRIAN BRIDGE to be maintained, entirely, by CITY.

ROUTINE MAINTENANCE

13. ROUTINE MAINTENANCE to be performed on the roadbed or ~~roadsides shall consist of such work as patching, crack sealing,~~ care of drainage, upkeep and repair of bridges, culverts, guard rail, median barriers, curbs and sidewalks, operation of drawbridges, street sweeping and cleaning, repair of damage and cleaning up after storms and traffic accidents, control of roadside vegetation, care of landscaped areas, trees or other

ornamental plantings, and upkeep and operation of traffic service devices, all as hereinafter specified.

Routine tree maintenance shall be limited to minor trimming as required to improve sight distance or to the occasional removal of dead or low overhanging limbs. Extensive tree reconditioning work, spraying or removal are not routine maintenance operations and will not be paid for unless such work is specifically authorized by the Department. The above shall not be construed as restricting, prohibiting or otherwise relieving the City of the responsibility for inspection and upkeep of trees in a manner that will insure maximum safety to both vehicular and pedestrian traffic.

Sweeping and cleaning shall be limited to the removal of dirt or litter normally coming onto the roadbed from the action of traffic or from natural causes. The Department will not undertake nor pay for picking up or disposing of rubbish or debris swept into or otherwise placed on the highway from abutting property. The extent of sweeping and cleaning on the State highways shall not be greater than customarily done on comparable city streets.

Maintenance work to be performed within the area designated as Improved Roadsides shall include the removal of dirt and litter as referred to above and such sidewalk inspection and action towards repair of sidewalks, curbs or other facilities as is necessary to keep them in a reasonably safe condition. The City agrees to follow the same policy and procedure generally followed by it with respect to streets of the City in the matter

of requiring sidewalk repairs and control of vegetation to be made by or at the expense of abutting owners who are under legal obligation to perform such work.

Maintenance of warning and regulatory signs, traffic control devices, and highway lighting facilities as hereinafter referred to shall include upkeep and repair of the supports, as well as such other items which are an integral part of the installation.

Care of landscaped areas, ornamental plantings, trees, and road signs, and the upkeep and operation of traffic signals and highway lighting facilities located or based within the Improved Roadside area shall not be undertaken by City unless such work is specifically delegated under Section 22 of the Agreement.

Bridges, as defined under Section 12, will be investigated by a representative of the Department's bridge engineering staff once each year and oftener, if considered necessary. In addition to such annual investigation, routine maintenance to be performed under provisions of the Agreement shall include monthly inspection of each bridge by qualified personnel and immediate repair of the minor defects when the cost does not exceed $500. The District Engineer shall be immediately notified of major defects as are hereinafter defined.

Bridge repair work costing in excess of $500 on a single structure shall be considered as being a major repair project. Except in the case of emergency, such major repair projects shall conform to the methods and procedure to be recommended by the

Department. Major bridge repair is not a routine maintenance operation and will require specific authorization.

TRAFFIC SERVICE

14. WARNING AND REGULATORY SIGNS shall conform to the specifications adopted by the Department, or as otherwise specifically authorized by the Department. Positioning of such signs shall conform to standards adopted by the Department.

Unless specifically authorized, the Department will not maintain or pay for maintenance of Regulatory Signs installed for the purpose of stopping vehicular traffic at pedestrian or school crossings nor the Regulatory Signs installed for the prohibition or the regulation of parking.

15. TRAFFIC STRIPE AND PAVEMENT MARKINGS shall conform to the Standards established by the Department.

Except for the red "No Parking" zones at the approach to and exit from intersections controlled by traffic signals, the Department will not pay for curb painting or parking lines as may otherwise be required for the regulation of parking.

The cost of maintaining pedestrian crosswalks at intersections shall be shared between the Department and City in the same ratio as the number of intersecting roads or streets under jurisdiction of the respective agencies bears to the total number of intersecting City Streets, State Highways and County Roads within the particular intersection; for example, a 50-50 basis will apply to the regular cross-street intersection wherein a County Road is not a factor.

16. TRAFFIC SIGNALS, FLASHERS OR OTHER ELECTRICALLY OPERATED TRAFFIC CONTROL DEVICES: The cost of maintaining and operating traffic signals or other electrically operated traffic control devices now in place or those which may hereafter be installed at the intersection of any State highway route and any City street shall be shared between the Department and the City on the basis of the number of intersection streets in the same manner specified for crosswalks under Section 15.

17. HIGHWAY LIGHTING: The Department will not pay for the maintenance, installation, repair, servicing, nor power for electroliers nor ordinary street lighting; however, lighting at intersections, when required for the safety of persons using the streets, roadways or highways, will be paid for when approved and specifically authorized by the District Engineer. Where such lighting has been specifically authorized at an intersection, the maintenance and operating costs thereof shall be shared between the Department and the City on the basis of the number of intersecting streets to the intersection in the same manner specified for pedestrian crosswalks under Section 15.

18. TRAFFIC CONTROL DEVICES AND HIGHWAY LIGHTING FACILITIES as defined under paragraphs 16 and 17 above, which are installed subsequent to the execution of this Agreement, shall become subject to the terms and conditions of this Agreement upon notice to the City from the Department of the completion of any such installation.

PERMITS

19. ENCROACHMENT PERMITS: When authority to issue Encroachment Permits is delegated to the City, the authority shall pertain to all parts of the highway throughout the particular length of streets indicated under Section 22 of the Agreement. Permits shall be issued on a form provided by the Department and the City will furnish a copy of each permit to the Department. The City agrees to follow such general State policies regarding encroachments as may be specified by the District Engineer. Routine permits shall be handled by the City without approval, but prior approval of the District Engineer shall be secured before any permit is issued for the original installation of any utility line, commercial driveway, or other major encroachment within the highway right-of-way. No sign or marquee shall be permitted to be installed within or project beyond a line 18 inches back of curb line, and no sign of any kind except warning signs at railroad crossings shall be permitted to be suspended over the roadway. Marquees or signs extending over the sidewalk area shall conform to the City's Building Code and shall be maintained in a good appearing and structurally safe condition at all times. An existing sign or marquee suspended or projecting over the State highway that constitutes a hazard shall be immediately repaired or removed.

If the City by ordinance or other regulation imposes more restrictive regulations and requirements regarding signs and marquees than above set forth, nothing in these provisions shall be construed to prevent the City from enforcing such restrictive

regulations in the granting or refusing of permits with respect to any State highway.

The Department will pay for the cost of inspection of such signs, marquees, and other encroachments as a part of maintenance, provided that the City shall comply with its usual policy with respect to collecting costs from permittees in such cases as fees or charges are made by the City for similar work on City streets. Any amount so collected by the City with respect to any State highway shall be credited against the charges made by the City for such work.

20. TRANSPORTATION PERMITS: Transportation Permits will be required for all vehicles and their loads which exceed the limitations specified under Division 15 of the California Vehicle Code. Where authority to issue Transportation Permits is delegated to the City, such authority shall pertain only to travel that originates and terminates within the corporate limits and it shall not apply to through haul transportation. In issuing such permits, the City shall follow the policies and regulations established by the Department for the issuance of Transportation Permits as set out in the Department's Maintenance Manual of Instructions in effect at the time such permits are issued, including, specifically, limitations upon the crossing of bridges and overcrossings detailed therein.

Amendment No. 2 – Effective Date: July 1, 2017

04-SM-Menlo Park
July 1, 1972

21. ROUTE DESCRIPTION

| ROUTE NO. | LENGTH MILES | DESCRIPTION OF ROUTING |
|---|---|---|
| 82 | 1.28 | El Camino Real from south city limits at San Francisquito Creek to north city limits at Encinal Avenue of which the easterly half width from Valparaiso Avenue to Encinal Avenue, a length of 0.20 mile, lies within the City; a total length of 1.28 miles. |
| 114 | 0.90 | Willow Road from City limits 100 feet South of Newbridge Street to Rte 84, a length of 0.9 miles. |
| 84 | 3.20 | Rte 84 from Rte 101 to the Dumbarton Bridge, a length of approx. 3.20 miles. |
| 101 | 1.76 | Bayshore Freeway from city limits at Willow Road Separation to city limits 600 feet north of Marsh Road Overcrossing, a length of 1.76 miles. |
| 280 | 0.17 | Junipero Serra Freeway from city limits 500 feet north of Sand Hill Road Overcrossing (north) to city limits 1,400 feet north of Sand Hill Road Overcrossing (north), a length of 0.17 mile. |

Amendment No. 2 – Effective Date: July 1, 2017

22. DELEGATION OF MAINTENANCE: The maintenance work to be performed by City and/or Department shall conform to the provisions hereof and shall include those operations as hereinafter indicated:

| Item No. MAINTENANCE FUNCTION | AGENCY TO PERFORM WORK RTE. NO. 82 | | | RTE. NO. 114 | | | RTE. NO. 84 | | | RTE. NO. **101 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | City | Dept | | City | Dept | | City | Dept | | City | Dept | |
| Roadbed | | x | | | x | | | x | | | x | |
| Improved Roadside | x | | | x | | | x | | | | x | |
| Unimproved Roadside | | x | | | x | | | x | | | x | |
| Bridges and Culverts | | x | | | x | | | x | | | x | |
| Guide Signs | | x | | | x | | | x | | | x | |
| Warning Signs | | x | | | x | | | x | | | x | |
| Regulatory Signs | | x | | | x | | | x | | | x | |
| Traffic Stripe | | x | | | x | | | x | | | x | |
| Pavement Markings | | x | | | x | | | x | | | x | |
| Traffic Signals | | x | | | x | | | x | | | x | |
| Highway Lighting | x | | | | x | | | x | | | x | |
| Guard Rail | | x | | | x | | | x | | | x | |
| Median Barriers | | x | | | x | | | x | | | x | |
| Bicycle Pavement Markings | X | | | X | | | X | | | X | | |
| Sweeping and Cleaning | x | | (1) | | x | (2) | | x | (3) | | x | (4) |
| *Landscaped Areas | | x | | X | | | X | | | | x | |
| *Trees | | x | | X | | | X | | | | x | |
| Curbs and Sidewalks | x | | | x | | | X | | | | x | |
| ISSUANCE OF PERMITS | | | | | | | | | | | | |
| Encroachment | x | x | (5) | x | x | (5) | X | x | (5) | | x | |
| Transportation | x | | | x | | | | x | | | x | |

*When and as specifically authorized by the District Engineer as provided under Section 13 hereof.

**The delegation of maintenance set forth herein does not include areas and functions, the control and maintenace of which, rest with the local authority under Freeway Agreements and/or Freeway Maintenance Agreements.

(1) Length of street to be cleaned 1.8 Curb miles.
(2) " " " " " " ______ " "
(3) " " " " " " ______ " "
(4) " " " " " " ______ " "
(5) Department will issue permits for encroachments between curb lines. City will issue permits for encroachments between curb line and right of way line on each side.

22. DELEGATION OF MAINTENANCE: The maintenance work to be performed by City and/or Department shall conform to the provisions hereof and shall include those operations as hereinafter indicated:

| Item No. MAINTENANCE FUNCTION | AGENCY TO PERFORM WORK RTE. NO. **280 | | | RTE. NO. | | | RTE. NO. | | | RTE. NO. | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | City | Dept | | City | Dept | | City | Dept | | City | Dept | |
| Roadbed............... | | x | | | | | | | | | | |
| Improved Roadside..... | | x | | | | | | | | | | |
| Unimproved Roadside... | | x | | | | | | | | | | |
| Bridges and Culverts... | | x | | | | | | | | | | |
| Guide Signs........... | | x | | | | | | | | | | |
| Warning Signs......... | | x | | | | | | | | | | |
| Regulatory Signs...... | | x | | | | | | | | | | |
| Traffic Stripe........ | | x | | | | | | | | | | |
| Pavement Markings..... | | x | | | | | | | | | | |
| Traffic Signals....... | | x | | | | | | | | | | |
| Highway Lighting...... | | x | | | | | | | | | | |
| Guard Rail............ | | x | | | | | | | | | | |
| Median Barriers....... | | x | | | | | | | | | | |
| Sweeping and Cleaning.. | | x | (1) | | | (2) | | | (3) | | | (4) |
| *Landscaped Areas...... | | x | | | | | | | | | | |
| *Trees................ | | x | | | | | | | | | | |
| Curbs and Sidewalks.... | | x | | | | | | | | | | |
| ISSUANCE OF PERMITS | | | | | | | | | | | | |
| Encroachment.......... | | x | | | | | | | | | | |
| Transportation........ | | x | | | | | | | | | | |

*When and as specifically authorized by the District Engineer as provided under Section 13 hereof.

**The delegation of maintenance set forth herein does not include areas and functions, the control and maintenace of which, rest with the local authority under Freeway Agreements and/or Freeway Maintenance Agreements.

(1) Length of street to be cleaned ________ Curb miles.
(2) " " " " " " ________ " "
(3) " " " " " " ________ " "
(4) " " " " " " ________ " "

23. EXPENDITURE AUTHORIZATION: The Department will reimburse City for actual cost of all maintenance work performed by City as delegated under Section 22, but it is agreed that during any fiscal year, the maximum expenditure on any route shall not exceed the amount as shown elsewhere in this Agreement, unless such expenditure is revised by an amended Agreement or otherwise adjusted or modified as hereinafter provided for.

The expenditure per route for routine maintenance work as referred to above may be increased or decreased, redistributed between routes, or additional expenditures for specific projects costing $5,000 or less may be made when such specific work or adjustment of expenditures for routine maintenance is authorized in writing by the District Engineer or his authorized representative. Expenditures for specific projects costing in excess of $5,000 may be made when such specific work is authorized in writing by the State Highway Engineer or his authorized representative. Additional expenditures or adjustment of expenditures thus authorized shall apply during the fiscal year designated therein and shall not be deemed to permanently modify or change the basic maximum expenditure per route as hereinafter specified. An adjustment of the maximum expenditure shown on page 14 hereof (of the Agreement), either increase or decrease, shall not affect other terms of the Agreement.

Amendment No. 2 – Effective Date: July 1, 2017

04-SM-Menlo Park
July 1, 1972

| ROUTE NO. | LENGTH MILES | MAXIMUM EXPENDITURE PER ROUTE |
|---|---|---|
| 82 | 1.28 | $2,300.00 |
| 114 | 0.90 | 0.00 |
| 84 | 3.20 | 0.00 |
| 101 | 1.76 | 0.00 |
| 280 | 0.17 | 0.00 |
| | Total | $2,300.00 |

24. SUBMISSION OF BILLS: The City shall submit bills monthly, provided, however, that no bill for less than $100 shall be submitted, except once each quarter. Equipment shall be charged at mutually acceptable rental rates and labor and material at actual cost. The City will be allowed to recover overhead and administrative costs only to the extent that such charges include applicable expenses incurred by the City in the execution of the work. Said factors and method shall be subject to approval by the Department. Maintenance services provided by contract or on a unit-rate basis with overhead costs included shall not have these above-mentioned charges added again. An actual handling charge for processing this type of bill will be allowed the City. Bills submitted to the City for work performed by the Department under Sections 16, 17 and 18 of this Agreement will also include overhead and administrative costs in accordance with the State Administrative Manual.

25. TERM OF AGREEMENT: This Agreement shall become effective July 1, 1972 and shall remain in full force and effect until amended or terminated.

The Agreement as above may be amended or terminated at any time upon mutual consent of the parties thereto or upon thirty days' notice by either party thereof to the other.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day and year first above written.

STATE OF CALIFORNIA
DEPARTMENT OF PUBLIC WORKS
DIVISION OF HIGHWAYS

ROBERT J. DATEL
STATE HIGHWAY ENGINEER

By ______________________
Deputy District Engineer
11-27-72

CITY OF MENLO PARK

By ______________________
Mayor Pro Tempore

Attest ______________________
City Clerk

Approved as to Form and Procedure:

______________________
City Attorney

MP006641

RESOLUTION NO. 2559

RESOLUTION OF THE CITY COUNCIL OF THE CITY OF MENLO PARK APPROVING AGREEMENT FOR MAINTENANCE OF STATE HIGHWAY IN THE CITY OF MENLO PARK

WHEREAS, the State of California, through its Department of Public Works, Division of Highways, has presented an Agreement for Maintenance of the State Highway in the City of Menlo Park effective as of July 1, 1972 and to remain in effect until amended or terminated.

WHEREAS, the City Council has heard read said Agreement in full and is familiar with the contents thereof;

THEREFORE, be it resolved by the City Council of the City of Menlo Park that said Agreement for Maintenance of the State Highway in the City is hereby approved and the Mayor and the City Clerk are directed to sign the same on behalf of said City.

ADOPTED this 21st. day of November, 1972.

[signature]
Mayor Pro Tem, City of Menlo Park

Attest: Margaret E. Snowden
City Clerk of the City of Menlo Park

I hereby certify that the foregoing resolution was duly and regularly passed by the City Council of the City of Menlo Park at a regular meeting thereof held November 21, 1972.

Margaret E. Snowden
Clerk of the City of Menlo Park

RESOLUTION NO. 2559

RESOLUTION OF THE CITY COUNCIL OF THE CITY OF MENLO PARK APPROVING AGREEMENT FOR MAINTENANCE OF STATE HIGHWAY IN THE CITY OF MENLO PARK

WHEREAS, the State of California, through its Department of Public Works, Division of Highways, has presented an Agreement for Maintenance of the State Highway in the City of Menlo Park effective as of July 1, 1972 and to remain in effect until amended or terminated.

WHEREAS, the City Council has heard read said Agreement in full and is familiar with the contents thereof;

THEREFORE, be it resolved by the City Council of the City of Menlo Park that said Agreement for Maintenance of the State Highway in the City is hereby approved and the Mayor and the City Clerk are directed to sign the same on behalf of said City.

ADOPTED this 21st. day of November, 1972.

[signature]
Mayor Pro Tem, City of Menlo Park

Attest: Margaret E. Snowden
City Clerk of the City of Menlo Park

I hereby certify that the foregoing resolution was duly and regularly passed by the City Council of the City of Menlo Park at a regular meeting thereof held November 21, 1972.

Margaret E. Snowden
Clerk of the City of Menlo Park

**AMENDMENT NO. 1**
**AGREEMENT FOR MAINTENANCE OF STATE HIGHWAYS**
**IN CITY OF MENLO PARK**

This Amendment No. 1 to the Agreement for Maintenance of State Highways in City of Menlo Park is made and entered into by and between STATE of California, acting by and through the Department of Transportation, hereinafter referred to as "STATE", and City of Menlo Park, hereinafter referred to as "CITY."

**WITNESSETH:**

WHEREAS, an Agreement for Maintenance of State Highways in City of Menlo Park, hereinafter referred to as "AGREEMENT", as provided for in Section 130 of the Streets and Highways Code, was executed by CITY on July 1, 1972, and

WHEREAS, AGREEMENT by its terms provides that it may be amended or terminated at any time upon mutual consent of the parties; and

WHEREAS, the parties hereto now desire that AGREEMENT be amended.

NOW, THEREFORE, the parties agree to amend AGREEMENT as follows:

1. The improvements listed below have been installed on State Right of Way as part of the development of the Facebook West Campus at 1 Facebook Way, Menlo Park, California. All maintenance work to be performed by CITY, as required under this Amendment, will be at no cost to STATE. Each encroachment permit is listed below with its scope of work and the maintenance responsibilities of CITY, if any, including but not limited to:

   a. Encroachment Permit No. 0414-NMC1139: On northbound Willow Road south of State Route 84, Bayfront Expressway. New right-turn lane, signing and striping to accommodate such widening. CITY shall maintain new sidewalk and paths on Willow Road.

   b. Encroachment Permit No. 0413-NMC2337: At northbound State Route 101 off-ramps and Marsh Road. Replacement of curb, gutter, concrete sidewalk and path, handrails, drainage inlet, drainage pipe, rockslope protection, wood mulch, striping and signing.

   c. Encroachment Permit No. 0413-NMC2338: This encroachment permit includes three locations:

      1) On the east side of University Avenue, south of State Route 84, Bayfront Expressway to a private driveway south of the Union Pacific Railroad Right of Way. Construct Bay Trail along University Avenue. CITY shall

maintain the Bay Trail and related truncated domes, markings and signs along the path.

2) At State Route 84 at Marsh Road. Modify existing striping. At State Route 84 at Chrysler Drive. Modify existing striping.

d. Encroachment Permit No. 0414-NMC2129:

1) Westbound State Route 84, Bayfront Expressway, post mile 27.3 to 27.7, west of Willow Road. New left turn lane to Facebook West Campus; Curb, new traffic signal, new striping, pavement delineation and drainage improvements. CITY shall be responsible for paying 100% of traffic signal operation and maintenance costs.

2) Willow Road, south of State Route 84, Bayfront Expressway and railroad tracks. Median improvements and emergency vehicle access, curb ramps; curb and gutter; Sidewalks; Striping; and Pavement Delineation on SR 84 PM27.3-27.7 in City of Menlo Park, sidewalks. CITY shall maintain landscaping in median island.

e. Encroachment Permit No. 0414-NMC0989: At southbound Willow Road on State Highway 04-SM-114, Post Mile 5.15/ 5.32 at the intersection with Newbridge Street. Widening of Willow Road to provide right through lane north of Newbridge Street to northbound off-ramp to 101. The CITY shall maintain sidewalks and landscaping outside the back of curb.

2. In all other respects, AGREEMENT shall remain in full force and effect.

3. STATE costs and expenses assumed under the terms of this Agreement Amendment are conditioned upon the passage of the annual State of California Budget by the Legislature, the allocation of funding by the California Transportation Commission as appropriate, and the encumbrance of funding to the District Office of STATE.

TERMINATION - This Agreement Amendment may be terminated by timely mutual written consent by PARTIES, and CITY failure to comply with the provisions of this Agreement may be grounds for a Notice of Termination by STATE.

TERM OF AGREEMENT AMENDMENT - This Amendment shall become effective on the date as shown below and shall remain in full force and effect until amended or terminated at any time upon mutual consent of the PARTIES or until terminated by STATE for cause.

PARTIES are empowered by Streets and Highways Code section 114 and 130 to enter into this Agreement and have delegated to the undersigned the authority to execute this Agreement on behalf of the respective agencies and covenants to have followed all the necessary legal requirements to validly execute this Agreement.

Bayfront Expressway - Facebook West Campus
Amendment to CITY of Menlo Park DMA

IN WITNESS WHEREOF, PARTIES hereto have set their hands and seals the day and year first above written.

CITY OF MENLO PARK

By: ALEX MCINTYRE
CITY Manager

STATE OF CALIFORNIA DEPARTMENT OF TRANSPORTATION

MALCOLM DOUGHERTY
Director of Transportation

By
7/1/2015
NADER ESHGHIPOUR Date
Deputy District Director
Maintenance

Attachments:
Encr. Permits location maps

3

MP006646



CITY OF MENLO PARK
IN SAN MATEO COUNTY
STREET IMPROVEMENT PROJECT
AT THE INTERSECTION OF WILLOW ROAD/BAYFRONT EXPRESSWAY
TO BE SUPPLEMENTED BY CALTRANS STANDARD PLANS & SPECIFICATIONS 2010
PROJECT LOCATION
San Francisco Bay
MENLO PARK
ROUTE 84
BAYFRONT EXPWY
UNIVERSITY AVE
To Redwood City
DUMBARTON SPUR LINE
SAN MATEO COUNTY
HAMILTON AVE
LOCATION MAP
NOT TO SCALE
VICINITY MAP
NOT TO SCALE
SHEET INDEX:
SHEET No. DESCRIPTION
1 TITLE SHEET
2 KEY MAP
3 TYPICAL CROSS SECTIONS
4 DEMOLITION PLAN
5 LAYOUT PLAN
6 - 8 CONSTRUCTION DETAILS
10 EROSION CONTROL PLAN
11 TRAFFIC HANDLING
12 PAVEMENT DELINEATION AND SIGN PLAN
13 - 16 SIGNAL AND LIGHTING
Permit No.
0414-NMC-1139
FACEBOOK EIR MITIGATION IMPROVEMENTS
WILLOW ROAD AT BAYFRONT EXPRESSWAY
TITLE SHEET
MENLO PARK
SAN MATEO COUNTY
CALIFORNIA
BKF
T-1
1 of 16

MP006647



CITY OF MENLO PARK
IN SAN MATEO COUNTY
STREET IMPROVEMENT PROJECT
AT THE INTERSECTION OF MARSH ROAD/ROUTE 101
TO BE SUPPLEMENTED BY CALTRANS STANDARD PLANS AND SPECIFICATIONS DATED 2010
PROJECT LOCATION
San Francisco Bay
SAN MATEO COUNTY
MENLO PARK
ROUTE 84
ROUTE 101
ROUTE 114
LOCATION MAP
NOT TO SCALE
VICINITY MAP
NOT TO SCALE
SHEET INDEX:
SHEET No. DESCRIPTION
1 TITLE SHEET
2 TYPICAL CROSS SECTIONS
3 DEMOLITION PLAN
4 LAYOUT
5 – 10 CONSTRUCTION DETAILS
11 EROSION CONTROL PLAN
12 SIGNING AND STRIPING PLAN
13 TRAFFIC HANDLING PLAN
14 – 15 ELECTRICAL PLANS
BENCHMARK FOR ROUTE 101 / MARSH ROAD
CITY OF MENLO PARK BENCHMARK CITY3: 2" BRASS DISK ON TOP OF CURB, OF THE NORTHERLY CURB LINE OF HAVEN AVENUE AT #3585 HAVEN AVENUE AT THE WESTERLY SIDE OF A STORM WATER CATCH BASIN.
ELEVATION = 5.428 FEET
CITY OF MENLO PARK (NGVD 29 DATUM)
0413-NMC2337
BKF ENGINEERS
PLEASANTON, CA 94588
FACEBOOK EIR MITIGATION IMPROVEMENTS
MARSH ROAD / ROUTE 101
TITLE SHEET
MENLO PARK
SAN MATEO COUNTY
CALIFORNIA
T-1
1 - 15

MP006648



CITY OF MENLO PARK
IN SAN MATEO COUNTY
STREET IMPROVEMENT PROJECT
AT THE INTERSECTION OF BAYFRONT EXPRESSWAY/UNIVERSITY AVENUE
TO BE SUPPLEMENTED BY CALTRANS STANDARD PLANS AND SPECIFICATIONS DATED 2010
PROJECT LOCATION
San Francisco Bay
MENLO PARK
ROUTE 84
BAYFRONT EXPY
UNIVERSITY AVE
To Fremont
To Redwood City
DUMBARTON SPUR LINE
SAN MATEO COUNTY
LOCATION MAP
NOT TO SCALE
VICINITY MAP
NOT TO SCALE
SHEET INDEX:
SHEET No. DESCRIPTION
1 TITLE SHEET
2 KEY MAP
3 TYPICAL CROSS SECTIONS
4 - 6 LAYOUT PLAN
7 PROFILE
8 - 9 CONSTRUCTION DETAILS
10 - 11 PAVEMENT DELINEATION AND SIGN PLAN
Permit No.
0414-NMC-2338
BKF
FACEBOOK EIR MITIGATION IMPROVEMENTS
UNIVERSITY AVENUE AT BAYFRONT EXPRESSWAY
TITLE SHEET
MENLO PARK
SAN MATEO COUNTY
CALIFORNIA
T-1
1 of 11

MP006649



CITY OF MENLO PARK
IN SAN MATEO COUNTY
STREET IMPROVEMENT PROJECT
AT THE INTERSECTION OF MARSH ROAD/BAYFRONT EXPRESSWAY
AND THE INTERSECTION OF BAYFRONT EXPRESSWAY/CHRYSLER DRIVE
PROJECT LOCATION
San Francisco Bay
MENLO PARK
BAYFRONT EXPWY
ROUTE 84
To Fremont
CONSTITUTION DR
CHILCO ST
HAVEN Ave
MARSH Rd
CHRYSLER Dr
JEFFERSON Dr
INDEPENDENCE Dr
To Redwood City
ROUTE 101
SAN MATEO COUNTY
SCOTT Dr
CAMPBELL Ave
ROUTE 101
To Palo Alto
LOCATION MAP
NOT TO SCALE
VICINITY MAP
NOT TO SCALE
SHEET INDEX:
SHEET No. DESCRIPTION
1 TITLE SHEET
2 - 3 CONSTRUCTION DETAILS
Permit No.
0414-NMC-2338
BKF
BKF ENGINEERS
PLEASANTON, CA 94588
FACEBOOK EIR MITIGATION IMPROVEMENTS
MARSH RD & CHRYSLER DR AT BAYFRONT EXPRESSWAY
TITLE SHEET
MENLO PARK
SAN MATEO COUNTY
CALIFORNIA
T-1
1 of 3

MP006650



Permit No.
0414-NMC-2129
CITY OF MENLO PARK
IN SAN MATEO COUNTY
STREET IMPROVEMENT PROJECT
FACEBOOK - WEST CAMPUS
BAYFRONT EXPRESSWAY IMPROVEMENTS
MENLO PARK, CALIFORNIA AUGUST 2014
TO BE SUPPLEMENTED BY CALTRANS STANDARD PLANS & SPECIFICATIONS 2010
PROJECT LOCATION
San Francisco Bay
MENLO PARK
ROUTE 84
BAYFRONT EXPWY
UNIVERSITY AVE
DUMBARTON SPUR LINE
FACEBOOK
WEST CAMPUS
SAN MATEO COUNTY
LOCATION MAP
NOT TO SCALE
VICINITY MAP
NOT TO SCALE
SHEET INDEX:
SHEET No. DESCRIPTION
1 TITLE SHEET
2 - 3 TYPICAL CROSS SECTIONS
LAYOUTS
CONSTRUCTION DETAILS
18 - 19 TEMPORARY WATER POLLUTION CONTROL PLANS
20 EROSION CONTROL LEGEND
21 - 22 EROSION CONTROL PLAN
23 - 25 DRAINAGE PLAN AND PROFILE, DETAILS AND QUANTITIES
26 - 28 UTILITY PLAN
29 CONSTRUCTION AREA SIGNS
30 - 35 TRAFFIC HANDLING PLANS AND QUANTITIES
36 - 40 PAVEMENT DELINEATION AND SIGN PLAN AND QUANTITIES
41 - 42 SUMMARY OF QUANTITIES
43 - 44 SIGNAL AND LIGHTING PLANS (LOCATION 1)
45 PLANT PROTECTION AND REMOVAL PLAN
47 LANDSCAPE LAYOUT PLAN
48 - 49 PLANTING SCHEDULE
50 - 61 PLANTING PLANS
62 - 64 PLANTING DETAILS
65 IRRIGATION NOTES AND LEGEND
66 - 77 IRRIGATION PLANS
78 - 80 IRRIGATION DETAILS
ENGINEER'S STATEMENT
THESE IMPROVEMENT PLANS HAVE BEEN PREPARED UNDER MY DIRECTION IN ACCORDANCE WITH STANDARD ENGINEERING PRACTICE.
12/8/14
DATE
BKF
FACEBOOK - WEST CAMPUS
BAYFRONT EXPRESSWAY IMPROVEMENTS
TITLE SHEET
MENLO PARK
SAN MATEO COUNTY
CALIFORNIA
T-1



CITY OF MENLO PARK
IN SAN MATEO COUNTY
STREET IMPROVEMENT PROJECT
AT THE INTERSECTION OF WILLOW ROAD AND NEWBRIDGE STREET
TO BE SUPPLEMENTED BY CALTRANS STANDARD PLANS AND SPECIFICATIONS DATED 2010
PROJECT LOCATION
San Francisco Bay
SAN MATEO COUNTY
MENLO PARK
ROUTE 84
ROUTE 101
ROUTE 114
To Fremont
To Redwood City
To Palo Alto Vtc
LOCATION MAP
NOT TO SCALE
VICINITY MAP
NOT TO SCALE
SHEET INDEX:
SHEET No. DESCRIPTION
1 TITLE SHEET
2 – 3 TYPICAL CROSS SECTIONS
4 – 6 DEMOLITION PLAN
7 – 9 LAYOUT
10 – 16 CONSTRUCTION DETAILS
17 – 19 SIGNING AND STRIPING PLAN
20 – 23 TRAFFIC HANDLING PLAN
24 – 30 ELECTRICAL PLANS
BENCHMARK FOR WILLOW ROAD / NEWBRIDGE STREET
CITY OF MENLO PARK BENCHMARK 0110:
3 ½" BRASS DISK IN 6 ½" x 6 ½" CONCRETE POST, STAMPED "USGS BM 0110 1932 RESET 1954", AT THE NORTHWEST CORNER OF LAUREL AVENUE & ALLEY WAY.
ELEVATION = 20.75 FEET
CITY OF MENLO PARK (NGVD 29 DATUM)
0414-NMC0989
BKF
FACEBOOK EIR MITIGATION IMPROVEMENTS
WILLOW ROAD AT NEWBRIDGE STREET
TITLE SHEET
MENLO PARK
SAN MATEO COUNTY
CALIFORNIA
T-1
1 of 30

MP006652

**AMENDMENT NO. 2**
**TO**
**AGREEMENT FOR MAINTENANCE OF STATE HIGHWAYS**
**IN CITY OF MENLO PARK**

This Amendment No. 2 to the Agreement for Maintenance of State Highways in City of Menlo Park is made and entered into by and between STATE of California, acting by and through the Department of Transportation, hereinafter referred to as "STATE", and City of Menlo Park, hereinafter referred to as "CITY" and collectively referred to as 'PARTIES".

**WITNESSETH:**

WHEREAS, an "Agreement for Maintenance of State Highways in City of Menlo Park", hereinafter referred to as "AGREEMENT", as provided for in Section 130 of the Streets and Highways Code, was executed by CITY on July 1, 1972, and later amended on July 1, 2015, and

WHEREAS, AGREEMENT by its terms provides that it may be amended or terminated at any time upon mutual consent of PARTIES; and

WHEREAS, PARTIES hereto now desire that AGREEMENT be amended.

NOW, THEREFORE, PARTIES agree to amend AGREEMENT as follows:

1. The improvements including: Bike/Pedestrian paths, Haven Avenue Pedestrian Bridge (See attached Plan), and Pavement Markings have been installed on State Right of Way as part of the improvements along Haven Ave on State Route 84 in the City of Menlo Park.

2. The attached Pages 4, 11, 12a., and 14; all labeled "Amendment No. 2 – Effective Date July 1, 2017"; shall be substituted for the like-numbered pages of the existing AGREEMENT dated July 1, 2015 (amended from original agreement, dated July 1, 1972).

3. STATE costs and expenses assumed under the terms of this Agreement Amendment are conditioned upon the passage of the annual State of California Budget by the Legislature, the allocation of funding by the California Transportation Commission as appropriate, and the encumbrance of funding to the District Office of STATE.

TERMINATION - This Agreement Amendment may be terminated by timely mutual written consent by PARTIES, and CITY's failure to comply with the provisions of this Agreement may be grounds for a Notice of Termination by STATE.

TERM OF AGREEMENT AMENDMENT - This Amendment shall become effective on the date as shown below and shall remain in full force and effect until amended or terminated at any time upon mutual consent of PARTIES or until terminated by STATE for cause.

Haven Ave/SR 84 in Menlo Park
Amendment No. 2 to City of Menlo Park DMA
SM-101 PM 25.8-28.2

PARTIES are empowered by Streets and Highways Code section 114 and 130 to enter into this Agreement and have delegated to the undersigned the authority to execute this Agreement on behalf of the respective agencies and covenants to have followed all the necessary legal requirements to validly execute this Agreement.

IN WITNESS WHEREOF, PARTIES hereto have set their hands and seals the day and year first above written.

CITY OF MENLO PARK

By:
City Manager

STATE OF CALIFORNIA DEPARTMENT OF TRANSPORTATION

MALCOLM DOUGHERTY
Director of Transportation

By
10/18/17
DAVID AMBUEHL Date
Acting - Deputy District Director
Maintenance

Attachments:

MP006654



INDEX TO BRIDGE PLANS
SHEET TITLE
1 GENERAL PLAN
2 FOUNDATION PLAN
3 ABUTMENT LAYOUT
4 ABUTMENT DETAILS
5 TYPICAL SECTION
6 TRUSS PLAN AND ELEVATION
7 STEEL TRUSS DETAILS
8 MISCELLANEOUS DETAILS
9 LOG OF TEST BORING SHEET 1 OF 3
10 LOG OF TEST BORING SHEET 2 OF 3
11 LOG OF TEST BORING SHEET 3 OF 3
2015 STANDARD PLANS
A3A ABBREVIATIONS (SHEET 1 OF 3)
A3B ABBREVIATIONS (SHEET 2 OF 3)
A3C ABBREVIATIONS (SHEET 3 OF 3)
A10A LEGEND - LINES AND SYMBOLS (SHEET 1 OF 5)
RSP A10B LEGEND - LINES AND SYMBOLS (SHEET 2 OF 5)
A10C LEGEND - LINES AND SYMBOLS (SHEET 3 OF 5)
A10D LEGEND - LINES AND SYMBOLS (SHEET 4 OF 5)
A10E LEGEND - LINES AND SYMBOLS (SHEET 5 OF 5)
A10F LEGEND - SOIL (SHEET 1 OF 2)
A10G LEGEND - SOIL (SHEET 2 OF 2)
PROFILE GRADE
NO SCALE
ELEVATION
1" = 10'
DESIGN FLOOD ELEVATION = 10.4 Ft
STEEL TRUSS BRIDGE
Abut 1
Abut 2
Exist 1¼" Dia GAS LINE PROTECT IN PLACE
Exist 6" Dia SS LINE TO BE RELOCATED
Exist 6" Dia WATER LINE TO BE ABANDONED
RELOCATED 8" Dia WATER LINE, SEE "ROADWAY PLANS"
Exist 36" Dia SS LINE
DATUM Elev +10.00
PLAN
1" = 10'
Exist TOE OF BANK
Exist SEWER MAN HOLE
PRIVATE PROPERTY CALTRANS R/W
Exist ELECTRICAL POLE MUST BE BRACED
Exist DRIVEWAY
TOE OF FILL
BOLLARD, TYP SEE NOTE 7
RELOCATED 6" Dia WATER LINE, SEE "ROADWAY PLANS"
ATHERTON CHANNEL
Exist TOP OF BANK
Exist VEHICULAR BRIDGE
Exist ℄ ROAD
HAVEN AVENUE
"HA" LINE
Curve Data
"B" Line
R = 20.00'
Δ = 16°58'30"
T = 2.98'
L = 5.93'
℄ BRIDGE = "B" LINE
SAFETY RAILING
TOP CHORD
DIAGONAL
TRUSS VERTICAL
3½" LIGHT WEIGHT Conc (POLYMER FIBER) OVER 2" - 20 Ga Min METAL DECK
PROFILE GRADE
STEEL TRUSS BRIDGE (GALVANIZED & PAINTED)
8" Dia WATERLINE
DIAGONAL BRACE
FLOOR BEAM
BOTTOM CHORD
2" Dia Elec LIGHTING RIGID STEEL CONDUIT
TYPICAL SECTION
1/2" = 1'-0"
NOTES:
1. For "GENERAL NOTES", see "FOUNDATION PLAN" sheet.
2. For "SPREAD FOOTING DATA TABLE" and "SCOUR DATA TABLE", see "FOUNDATION PLAN" sheet.
3. For "CONCRETE STRENGTH AND TYPE LIMITS", see "MISCELLANEOUS DETAILS" sheet.
4. For accurate Right-of-Way and Access Data, see "ROADWAY PLANS".
5. For sizes of steel truss members, see "TRUSS PLAN AND ELEVATION" sheet.
6. For existing and proposed utility information, see "ROADWAY PLANS".
7. For bollard detail see "ABUTMENT DETAILS" sheet.
LEGEND:
Indicates Channel Flow
CITY OF MENLO PARK
BIGGS CARDOSA ASSOCIATES INC.
PREPARED FOR THE STATE OF CALIFORNIA DEPARTMENT OF TRANSPORTATION
HAVEN AVE PEDESTRIAN BRIDGE
GENERAL PLAN

MP006655

AGREEMENT FOR MAINTENANCE OF STATE HIGHWAY IN THE CITY OF MENLO PARK

THIS AGREEMENT, made and executed in duplicate this 21st. day of November, 19 72, by and between the Department of Public Works of the State of California, acting by and through the Division of Highways, hereinafter called the "Department" and the City of Menlo Park, hereinafter referred to as "City".

W I T N E S S E T H:

1. RECITALS: The parties desire to provide for the maintenance of State highway routes within the City as provided in Section 130 of the Streets and Highways Code, and to arrange herein for the particular maintenance functions to be performed by the City and those to be performed by the Department and to specify the terms and conditions under which such work will be performed.

2. AGREEMENT: This Agreement shall supersede all previous "Agreements for Maintenance of State Highways in the City of Menlo Park" and Amendments to the Agreement which have been executed.

In consideration of the mutual covenants and promises herein contained, it is agreed:

The City will perform such maintenance work as is specifically delegated to it, and the Department will perform those particular functions of maintenance not otherwise assigned to the City on the State highway routes or portions thereof all as hereinafter described under Sections 21 and 22 hereof or as said sections may be subsequently modified with the consent of the parties hereto acting by and through their authorized representative.

3. MAINTENANCE DEFINED: Maintenance is defined in Section 27 of the Streets and Highways Code as follows:

Sec. 27. "(a) The preservation and keeping of rights-of-way, and each type of roadway, structure, safety convenience or device, planting, illumination equipment and other facility, in the safe and usable condition to which it has been improved or constructed, but does not include reconstruction or other improvement.

(b) Operation of special safety conveniences and devices, and illuminating equipment.

(c) The special or emergency maintenance or repair necessitated by accidents or by storms or other weather conditions, slides, settlements or other unusual or unexpected damage to a roadway, structure or facility.
The degree and type of maintenance for each highway, or portion thereof, shall be determined in the discretion of the authorities charged with the maintenance thereof, taking into consideration traffic requirements and moneys available therefor."

4. DEGREE OF MAINTENANCE: The degree or extent of maintenance work to be performed and the standards therefor shall be in accordance with the provisions of Section 27 of the Streets and Highways Code and the provisions of this Agreement as hereinafter specified or as may be prescribed from time to time by the District Engineer. "District Engineer", as used herein, means the District Engineer or Assistant State Highway Engineer of the Division of Highways assigned to the territory in which the city is located, or his authorized representative.

5. LEGAL RELATIONS AND RESPONSIBILITIES: Nothing in the provisions of this Agreement is intended to affect the legal liability of either party to the contract by imposing any standard of care respecting the maintenance of State highways different from the standard of care imposed by law.

It is understood and agreed that neither the State, the Department, nor any officer or employee thereof is responsible for any damage or liability occurring by reason of anything done or omitted to be done by the City under or in connection with any work, authority or jurisdiction delegated to the City under this Agreement for Maintenance. It is also understood and agreed that, pursuant to Government Code Section 895.4, City shall fully indemnify and hold State harmless from any damage or liability occurring by reason of anything done or omitted to be done by City under or in connection with any work, authority or jurisdiction delegated to City under this Agreement.

It is understood and agreed that neither City, nor any officer or employee thereof, is responsible for any damage or liability occurring by reason of anything done or omitted to be done by the Department under or in connection with any work, authority or jurisdiction not delegated to the City under this Agreement for Maintenance. It is also understood and agreed that, pursuant to Government Code Section 895.4, Department shall fully indemnify and hold City harmless from any damage or liability occurring by reason of anything done or omitted to be done by Department under or in connection with any work, authority or jurisdiction not delegated to City under this Agreement.

6. HIGHWAY, as used herein, refers to the whole right-of-way which is secured or reserved to use in the construction and maintenance of the roadbed and roadsides as hereinafter described.

7. ROADBED means that portion of the roadway extending from curb line to curb line or shoulder line to shoulder line.

8. IMPROVED ROADSIDES relates to the area between the roadbed, as defined under Section 7, and the right-of-way boundary lines, including curb and sidewalk, as hereinafter described but excluding drainage structures or waterways.

9. UNIMPROVED ROADSIDES relates to the area between the roadbed and right-of-way boundary wherein curbs and sidewalks do not exist.

10. CURBS relates to a timber or a masonry structure separating or otherwise delineating the roadbed from the remainder of the highway.

11. SIDEWALK applies to the paved or otherwise improved surface area between the face of curb and right-of-way boundary, including paved entrances or driveways.

12. BRIDGES, as used herein, refer to structures having been assigned Bridge Numbers by the Department. All other cross drainage structures will be classified as culverts.

## ROUTINE MAINTENANCE

13. ROUTINE MAINTENANCE to be performed on the roadbed or roadsides shall consist of such work as patching, crack sealing, care of drainage, upkeep and repair of bridges, culverts, guard rail, median barriers, curbs and sidewalks, operation of drawbridges, street sweeping and cleaning, repair of damage and cleaning up after storms and traffic accidents, control of roadside vegetation, care of landscaped areas, trees or other

ornamental plantings, and upkeep and operation of traffic service devices, all as hereinafter specified.

Routine tree maintenance shall be limited to minor trimming as required to improve sight distance or to the occasional removal of dead or low overhanging limbs. Extensive tree reconditioning work, spraying or removal are not routine maintenance operations and will not be paid for unless such work is specifically authorized by the Department. The above shall not be construed as restricting, prohibiting or otherwise relieving the City of the responsibility for inspection and upkeep of trees in a manner that will insure maximum safety to both vehicular and pedestrian traffic.

Sweeping and cleaning shall be limited to the removal of dirt or litter normally coming onto the roadbed from the action of traffic or from natural causes. The Department will not undertake nor pay for picking up or disposing of rubbish or debris swept into or otherwise placed on the highway from abutting property. The extent of sweeping and cleaning on the State highways shall not be greater than customarily done on comparable city streets.

Maintenance work to be performed within the area designated as Improved Roadsides shall include the removal of dirt and litter as referred to above and such sidewalk inspection and action towards repair of sidewalks, curbs or other facilities as is necessary to keep them in a reasonably safe condition. The City agrees to follow the same policy and procedure generally followed by it with respect to streets of the City in the matter

of requiring sidewalk repairs and control of vegetation to be made by or at the expense of abutting owners who are under legal obligation to perform such work.

Maintenance of warning and regulatory signs, traffic control devices, and highway lighting facilities as hereinafter referred to shall include upkeep and repair of the supports, as well as such other items which are an integral part of the installation.

Care of landscaped areas, ornamental plantings, trees, and road signs, and the upkeep and operation of traffic signals and highway lighting facilities located or based within the Improved Roadside area shall not be undertaken by City unless such work is specifically delegated under Section 22 of the Agreement.

Bridges, as defined under Section 12, will be investigated by a representative of the Department's bridge engineering staff once each year and oftener, if considered necessary. In addition to such annual investigation, routine maintenance to be performed under provisions of the Agreement shall include monthly inspection of each bridge by qualified personnel and immediate repair of the minor defects when the cost does not exceed $500. The District Engineer shall be immediately notified of major defects as are hereinafter defined.

Bridge repair work costing in excess of $500 on a single structure shall be considered as being a major repair project. Except in the case of emergency, such major repair projects shall conform to the methods and procedure to be recommended by the

Department. Major bridge repair is not a routine maintenance operation and will require specific authorization.

TRAFFIC SERVICE

14. WARNING AND REGULATORY SIGNS shall conform to the specifications adopted by the Department, or as otherwise specifically authorized by the Department. Positioning of such signs shall conform to standards adopted by the Department.

Unless specifically authorized, the Department will not maintain or pay for maintenance of Regulatory Signs installed for the purpose of stopping vehicular traffic at pedestrian or school crossings nor the Regulatory Signs installed for the prohibition or the regulation of parking.

15. TRAFFIC STRIPE AND PAVEMENT MARKINGS shall conform to the Standards established by the Department.

Except for the red "No Parking" zones at the approach to and exit from intersections controlled by traffic signals, the Department will not pay for curb painting or parking lines as may otherwise be required for the regulation of parking.

The cost of maintaining pedestrian crosswalks at intersections shall be shared between the Department and City in the same ratio as the number of intersecting roads or streets under jurisdiction of the respective agencies bears to the total number of intersecting City Streets, State Highways and County Roads within the particular intersection; for example, a 50-50 basis will apply to the regular cross-street intersection wherein a County Road is not a factor.

16. TRAFFIC SIGNALS, FLASHERS OR OTHER ELECTRICALLY OPERATED TRAFFIC CONTROL DEVICES: The cost of maintaining and operating traffic signals or other electrically operated traffic control devices now in place or those which may hereafter be installed at the intersection of any State highway route and any City street shall be shared between the Department and the City on the basis of the number of intersection streets in the same manner specified for crosswalks under Section 15.

17. HIGHWAY LIGHTING: The Department will not pay for the maintenance, installation, repair, servicing, nor power for electroliers nor ordinary street lighting; however, lighting at intersections, when required for the safety of persons using the streets, roadways or highways, will be paid for when approved and specifically authorized by the District Engineer. Where such lighting has been specifically authorized at an intersection, the maintenance and operating costs thereof shall be shared between the Department and the City on the basis of the number of intersecting streets to the intersection in the same manner specified for pedestrian crosswalks under Section 15.

18. TRAFFIC CONTROL DEVICES AND HIGHWAY LIGHTING FACILITIES as defined under paragraphs 16 and 17 above, which are installed subsequent to the execution of this Agreement, shall become subject to the terms and conditions of this Agreement upon notice to the City from the Department of the completion of any such installation.

PERMITS

19. ENCROACHMENT PERMITS: When authority to issue Encroachment Permits is delegated to the City, the authority shall pertain to all parts of the highway throughout the particular length of streets indicated under Section 22 of the Agreement. Permits shall be issued on a form provided by the Department and the City will furnish a copy of each permit to the Department. The City agrees to follow such general State policies regarding encroachments as may be specified by the District Engineer. Routine permits shall be handled by the City without approval, but prior approval of the District Engineer shall be secured before any permit is issued for the original installation of any utility line, commercial driveway, or other major encroachment within the highway right-of-way. No sign or marquee shall be permitted to be installed within or project beyond a line 18 inches back of curb line, and no sign of any kind except warning signs at railroad crossings shall be permitted to be suspended over the roadway. Marquees or signs extending over the sidewalk area shall conform to the City's Building Code and shall be maintained in a good appearing and structurally safe condition at all times. An existing sign or marquee suspended or projecting over the State highway that constitutes a hazard shall be immediately repaired or removed.

If the City by ordinance or other regulation imposes more restrictive regulations and requirements regarding signs and marquees than above set forth, nothing in these provisions shall be construed to prevent the City from enforcing such restrictive

regulations in the granting or refusing of permits with respect to any State highway.

The Department will pay for the cost of inspection of such signs, marquees, and other encroachments as a part of maintenance, provided that the City shall comply with its usual policy with respect to collecting costs from permittees in such cases as fees or charges are made by the City for similar work on City streets. Any amount so collected by the City with respect to any State highway shall be credited against the charges made by the City for such work.

20. TRANSPORTATION PERMITS: Transportation Permits will be required for all vehicles and their loads which exceed the limitations specified under Division 15 of the California Vehicle Code. Where authority to issue Transportation Permits is delegated to the City, such authority shall pertain only to travel that originates and terminates within the corporate limits and it shall not apply to through haul transportation. In issuing such permits, the City shall follow the policies and regulations established by the Department for the issuance of Transportation Permits as set out in the Department's Maintenance Manual of Instructions in effect at the time such permits are issued, including, specifically, limitations upon the crossing of bridges and overcrossings detailed therein.

04-SM-Menlo Park
July 1, 1972

21. ROUTE DESCRIPTION

| ROUTE NO. | LENGTH MILES | DESCRIPTION OF ROUTING |
|---|---|---|
| 82 | 1.28 | El Camino Real from south city limits at San Francisquito Creek to north city limits at Encinal Avenue of which the easterly half width from Valparaiso Avenue to Encinal Avenue, a length of 0.20 mile, lies within the City; a total length of 1.28 miles. |
| 84(a) | 0.81 | Willow Road from city limits 100 feet south of Newbridge Street to Southern Pacific Railroad right of way, a length of 0.81 mile. |
| 84(b) | 2.44 | Willow Road from Southern Pacific Railroad to the Dumbarton Bridge, along the Dumbarton Bridge to the east city limits at the Alameda County Line, a length of 2.44 miles. |
| 101 | 1.76 | Bayshore Freeway from city limits at Willow Road Separation to city limits 600 feet north of Marsh Road Overcrossing, a length of 1.76 miles. |
| 280 | 0.17 | Junipero Serra Freeway from city limits 500 feet north of Sand Hill Road Overcrossing (north) to city limits 1,400 feet north of Sand Hill Road Overcrossing (north), a length of 0.17 mile. |



Old City Limits
MARSH
AVE.
HAVEN
123+79.99
MAIN ST.
HOOVER ST.
City Limits
REDWOOD CITY
SEVENTEENTH
ST.
PAGE AVE.
ROAD
Rt. of way area maintained by STATE.
Pavement maintained by STATE
Pavement maintained by CITY
Rt. of way area maintained by CITY

22. DELEGATION OF MAINTENANCE: The maintenance work to be performed by City and/or Department shall conform to the provisions hereof and shall include those operations as hereinafter indicated:

| Item No. MAINTENANCE FUNCTION | AGENCY TO PERFORM WORK RTE. NO. 82 | | | RTE. NO. 84(a) | | | RTE. NO. 84(b) | | | RTE. NO. **101 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | City | Dept | | City | Dept | | City | Dept | | City | Dept | |
| Roadbed | | x | | | x | | | x | | | x | |
| Improved Roadside | x | | | x | | | | x | | | x | |
| Unimproved Roadside | | x | | | x | | | x | | | x | |
| Bridges and Culverts | | x | | | x | | | x | | | x | |
| Guide Signs | | x | | | x | | | x | | | x | |
| Warning Signs | | x | | | x | | | x | | | x | |
| Regulatory Signs | | x | | | x | | | x | | | x | |
| Traffic Stripe | | x | | | x | | | x | | | x | |
| Pavement Markings | | x | | | x | | | x | | | x | |
| Traffic Signals | | x | | | x | | | x | | | x | |
| Highway Lighting | x | | | | x | | | x | | | x | |
| Guard Rail | | x | | | x | | | x | | | x | |
| Median Barriers | | x | | | x | | | x | | | x | |
| Sweeping and Cleaning | x | | (1) | | x | (2) | | x | (3) | | x | (4) |
| *Landscaped Areas | | x | | | x | | | x | | | x | |
| *Trees | | x | | | x | | | x | | | x | |
| Curbs and Sidewalks | x | | | x | | | | x | | | x | |
| ISSUANCE OF PERMITS | | | | | | | | | | | | |
| Encroachment | x | x | (5) | x | x | (5) | | x | | | x | |
| Transportation | x | | | x | | | | x | | | x | |

*When and as specifically authorized by the District Engineer as provided under Section 13 hereof.

**The delegation of maintenance set forth herein does not include areas and functions, the control and maintenace of which, rest with the local authority under Freeway Agreements and/or Freeway Maintenance Agreements.

(1) Length of street to be cleaned 1.8 Curb miles.
(2) " " " " " ______ " "
(3) " " " " " ______ " "
(4) " " " " " ______ " "
(5) Department will issue permits for encroachments between curb lines. City will issue permits for encroachments between curb line and right of way line on each side.

22. DELEGATION OF MAINTENANCE: The maintenance work to be performed by City and/or Department shall conform to the provisions hereof and shall include those operations as hereinafter indicated:

AGENCY TO PERFORM WORK

| Item No. MAINTENANCE FUNCTION | RTE. NO. **280 | | | RTE. NO. | | | RTE. NO. | | | RTE. NO. | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | City | Dept | | City | Dept | | City | Dept | | City | Dept | |
| (Roadbed | | x | | | | | | | | | | |
| (Improved Roadside | | x | | | | | | | | | | |
| (Unimproved Roadside | | x | | | | | | | | | | |
| Bridges and Culverts | | x | | | | | | | | | | |
| (Guide Signs | | x | | | | | | | | | | |
| (Warning Signs | | x | | | | | | | | | | |
| (Regulatory Signs | | x | | | | | | | | | | |
| (Traffic Stripe | | x | | | | | | | | | | |
| (Pavement Markings | | x | | | | | | | | | | |
| (Traffic Signals | | x | | | | | | | | | | |
| (Highway Lighting | | x | | | | | | | | | | |
| (Guard Rail | | x | | | | | | | | | | |
| (Median Barriers | | x | | | | | | | | | | |
| Sweeping and Cleaning | | x | (1) | | | (2) | | | (3) | | | (4) |
| *(Landscaped Areas | | x | | | | | | | | | | |
| (Trees | | x | | | | | | | | | | |
| Curbs and Sidewalks | | x | | | | | | | | | | |
| ISSUANCE OF PERMITS | | | | | | | | | | | | |
| Encroachment | | x | | | | | | | | | | |
| Transportation | | x | | | | | | | | | | |

*When and as specifically authorized by the District Engineer as provided under Section 13 hereof.

**The delegation of maintenance set forth herein does not include areas and functions, the control and maintenance of which, rest with the local authority under Freeway Agreements and/or Freeway Maintenance Agreements.

(1) Length of street to be cleaned ________ Curb miles.
(2) " " " " " " ________ " "
(3) " " " " " " ________ " "
(4) " " " " " " ________ " "

23. EXPENDITURE AUTHORIZATION: The Department will reimburse City for actual cost of all maintenance work performed by City as delegated under Section 22, but it is agreed that during any fiscal year, the maximum expenditure on any route shall not exceed the amount as shown elsewhere in this Agreement, unless such expenditure is revised by an amended Agreement or otherwise adjusted or modified as hereinafter provided for.

The expenditure per route for routine maintenance work as referred to above may be increased or decreased, redistributed between routes, or additional expenditures for specific projects costing $5,000 or less may be made when such specific work or adjustment of expenditures for routine maintenance is authorized in writing by the District Engineer or his authorized representative. Expenditures for specific projects costing in excess of $5,000 may be made when such specific work is authorized in writing by the State Highway Engineer or his authorized representative. Additional expenditures or adjustment of expenditures thus authorized shall apply during the fiscal year designated therein and shall not be deemed to permanently modify or change the basic maximum expenditure per route as hereinafter specified. An adjustment of the maximum expenditure shown on page 14 hereof (of the Agreement), either increase or decrease, shall not affect other terms of the Agreement.

04-SM-Menlo Park
July 1, 1972

| ROUTE NO. | LENGTH MILES | MAXIMUM EXPENDITURE PER ROUTE |
|---|---|---|
| 82 | 1.28 | $2,300.00 |
| 84(a) | 0.81 | 0.00 |
| 84(b) | 2.44 | 0.00 |
| 101 | 1.76 | 0.00 |
| 280 | 0.17 | 0.00 |
| | Total | $2,300.00 |

24. SUBMISSION OF BILLS: The City shall submit bills monthly, provided, however, that no bill for less than $100 shall be submitted, except once each quarter. Equipment shall be charged at mutually acceptable rental rates and labor and material at actual cost. The City will be allowed to recover overhead and administrative costs only to the extent that such charges include applicable expenses incurred by the City in the execution of the work. Said factors and method shall be subject to approval by the Department. Maintenance services provided by contract or on a unit-rate basis with overhead costs included shall not have these above-mentioned charges added again. An actual handling charge for processing this type of bill will be allowed the City. Bills submitted to the City for work performed by the Department under Sections 16, 17 and 18 of this Agreement will also include overhead and administrative costs in accordance with the State Administrative Manual.

25. TERM OF AGREEMENT: This Agreement shall become effective July 1, 1972 and shall remain in full force and effect until amended or terminated.

The Agreement as above may be amended or terminated at any time upon mutual consent of the parties thereto or upon thirty days' notice by either party thereof to the other.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals the day and year first above written.

STATE OF CALIFORNIA
DEPARTMENT OF PUBLIC WORKS
DIVISION OF HIGHWAYS

ROBERT J. DATEL
STATE HIGHWAY ENGINEER

By [signature]
Deputy District Engineer
11-27-72

CITY OF MENLO PARK

By [signature]
Mayor Pro Tempore

Attest [signature]
City Clerk

Approved as to Form and Procedure:

[signature]
City Attorney

Haven Ave/SR 84 in Menlo Park
Amendment No. 2 to City of Menlo Park DMA
SM-101 PM 25.8-28.2
1722 A2

**AMENDMENT NO. 2**
**TO**
**AGREEMENT FOR MAINTENANCE OF STATE HIGHWAYS**
**IN CITY OF MENLO PARK**

This Amendment No. 2 to the Agreement for Maintenance of State Highways in City of Menlo Park is made and entered into by and between STATE of California, acting by and through the Department of Transportation, hereinafter referred to as "STATE", and City of Menlo Park, hereinafter referred to as "CITY" and collectively referred to as "PARTIES".

**WITNESSETH:**

WHEREAS, an "Agreement for Maintenance of State Highways in City of Menlo Park", hereinafter referred to as "AGREEMENT", as provided for in Section 130 of the Streets and Highways Code, was executed by CITY on July 1, 1972, and later amended on July 1, 2015, and

WHEREAS, AGREEMENT by its terms provides that it may be amended or terminated at any time upon mutual consent of PARTIES; and

WHEREAS, PARTIES hereto now desire that AGREEMENT be amended.

NOW, THEREFORE, PARTIES agree to amend AGREEMENT as follows:

1. The improvements including: Bike/Pedestrian paths, Haven Avenue Pedestrian Bridge (See attached Plan), and Pavement Markings have been installed on State Right of Way as part of the improvements along Haven Ave on State Route 84 in the City of Menlo Park.

2. The attached Pages 4, 11, 12a., and 14; all labeled "Amendment No. 2 – Effective Date July 1, 2017"; shall be substituted for the like-numbered pages of the existing AGREEMENT dated July 1, 2015 (amended from original agreement, dated July 1, 1972).

3. STATE costs and expenses assumed under the terms of this Agreement Amendment are conditioned upon the passage of the annual State of California Budget by the Legislature, the allocation of funding by the California Transportation Commission as appropriate, and the encumbrance of funding to the District Office of STATE.

TERMINATION - This Agreement Amendment may be terminated by timely mutual written consent by PARTIES, and CITY's failure to comply with the provisions of this Agreement may be grounds for a Notice of Termination by STATE.

TERM OF AGREEMENT AMENDMENT - This Amendment shall become effective on the date as shown below and shall remain in full force and effect until amended or terminated at any time upon mutual consent of PARTIES or until terminated by STATE for cause.

Haven Ave/SR 84 in Menlo Park
Amendment No. 2 to City of Menlo Park DMA
SM-101 PM 25.8-28.2

PARTIES are empowered by Streets and Highways Code section 114 and 130 to enter into this Agreement and have delegated to the undersigned the authority to execute this Agreement on behalf of the respective agencies and covenants to have followed all the necessary legal requirements to validly execute this Agreement.

IN WITNESS WHEREOF, PARTIES hereto have set their hands and seals the day and year first above written.

CITY OF MENLO PARK

By:
City Manager

STATE OF CALIFORNIA DEPARTMENT OF TRANSPORTATION

MALCOLM DOUGHERTY
Director of Transportation

By
10/18/17
DAVID AMBUEHL Date
Acting - Deputy District Director
Maintenance

Attachments:

MP006675



INDEX TO BRIDGE PLANS
SHEET TITLE
1 GENERAL PLAN
2 FOUNDATION PLAN
3 ABUTMENT LAYOUT
4 ABUTMENT DETAILS
5 TYPICAL SECTION
6 TRUSS PLAN AND ELEVATION
7 STEEL TRUSS DETAILS
8 MISCELLANEOUS DETAILS
9 LOG OF TEST BORING SHEET 1 OF 3
10 LOG OF TEST BORING SHEET 2 OF 3
11 LOG OF TEST BORING SHEET 3 OF 3
2015 STANDARD PLANS
A3A ABBREVIATIONS (SHEET 1 OF 3)
A3B ABBREVIATIONS (SHEET 2 OF 3)
A3C ABBREVIATIONS (SHEET 3 OF 3)
A10A LEGEND - LINES AND SYMBOLS (SHEET 1 OF 5)
RSP A10B LEGEND - LINES AND SYMBOLS (SHEET 2 OF 5)
A10C LEGEND - LINES AND SYMBOLS (SHEET 3 OF 5)
A10D LEGEND - LINES AND SYMBOLS (SHEET 4 OF 5)
A10E LEGEND - LINES AND SYMBOLS (SHEET 5 OF 5)
A10F LEGEND - SOIL (SHEET 1 OF 2)
A10G LEGEND - SOIL (SHEET 2 OF 2)
PROFILE GRADE
NO SCALE
ELEVATION
1" = 10'
DESIGN FLOOD ELEVATION = 10.4 Ft
STEEL TRUSS BRIDGE
Exist 36" Dia SS LINE
RELOCATED 8" Dia WATER LINE, SEE "ROADWAY PLANS"
DATUM Elev -10.00
TYPICAL SECTION
1/2" = 1'-0"
℄ BRIDGE = "B" LINE
SAFETY RAILING
TOP CHORD
DIAGONAL
TRUSS VERTICAL
STEEL TRUSS BRIDGE (GALVANIZED & PAINTED)
8" Dia WATERLINE
3½" LIGHT WEIGHT Conc (POLYMER FIBER) OVER 2" - 20 Ga Min METAL DECK
2" Dia Elec LIGHTING RIGID STEEL CONDUIT
DIAGONAL BRACE
FLOOR BEAM
BOTTOM CHORD
NOTES:
1. For "GENERAL NOTES", see "FOUNDATION PLAN" sheet.
2. For "SPREAD FOOTING DATA TABLE" and "SCOUR DATA TABLE", see "FOUNDATION PLAN" sheet.
3. For "CONCRETE STRENGTH AND TYPE LIMITS", see "MISCELLANEOUS DETAILS" sheet.
4. For accurate Right-of-Way and Access Data, see "ROADWAY PLANS".
5. For sizes of steel truss members, see "TRUSS PLAN AND ELEVATION" sheet.
6. For existing and proposed utility information, see "ROADWAY PLANS".
7. For bollard detail see "ABUTMENT DETAILS" sheet.
LEGEND:
Indicates Channel Flow
PLAN
1" = 10'
HAVEN AVENUE
Exist VEHICULAR BRIDGE
Exist ℄ ROAD
Exist DRIVEWAY
PRIVATE PROPERTY
CALTRANS R/W
CITY OF MENLO PARK
BIGGS CARDOSA ASSOCIATES INC.
PREPARED FOR THE STATE OF CALIFORNIA DEPARTMENT OF TRANSPORTATION
HAVEN AVE PEDESTRIAN BRIDGE
GENERAL PLAN

MP006676

7. ROADBED means that portion of the roadway extending from curb line to curb line or shoulder line to shoulder line.

8. IMPROVED ROADSIDES relates to the area between the roadbed, as defined under Section 7, and the right-of-way boundary lines, including curb and sidewalk, as hereinafter described but excluding drainage structures or waterways.

9. UNIMPROVED ROADSIDES relates to the area between the roadbed and right-of-way boundary wherein curbs and sidewalks do not exist.

10. CURBS relates to a timber or a masonry structure separating or otherwise delineating the roadbed from the remainder of the highway.

11. SIDEWALK applies to the paved or otherwise improved surface area between the face of curb and right of way boundary, including bike/pedestrian pathways, paved entrances, or driveways.

12. BRIDGES, as used herein, refer to structures having been assigned Bridge Numbers by the Department. All, except HAVEN AVENUE PEDESTRIAN BRIDGE,will be maintained by the Department. HAVEN AVENUE PEDESTRIAN BRIDGE to be maintained, entirely, by CITY.

ROUTINE MAINTENANCE

13. ROUTINE MAINTENANCE to be performed on the roadbed or ~~roadsides shall consist of such work as patching, crack sealing,~~ care of drainage, upkeep and repair of bridges, culverts, guard rail, median barriers, curbs and sidewalks, operation of drawbridges, street sweeping and cleaning, repair of damage and cleaning up after storms and traffic accidents, control of roadside vegetation, care of landscaped areas, trees or other

Amendment No. 2 – Effective Date: July 1, 2017

04-SM-Menlo Park
July 1, 1972

21. ROUTE DESCRIPTION

| ROUTE NO. | LENGTH MILES | DESCRIPTION OF ROUTING |
|---|---|---|
| 82 | 1.28 | El Camino Real from south city limits at San Francisquito Creek to north city limits at Encinal Avenue of which the easterly half width from Valparaiso Avenue to Encinal Avenue, a length of 0.20 mile, lies within the City; a total length of 1.28 miles. |
| 114 | 0.90 | Willow Road from City limits 100 feet South of Newbridge Street to Rte 84, a length of 0.9 miles. |
| 84 | 3.20 | Rte 84 from Rte 101 to the Dumbarton Bridge, a length of approx. 3.20 miles. |
| 101 | 1.76 | Bayshore Freeway from city limits at Willow Road Separation to city limits 600 feet north of Marsh Road Overcrossing, a length of 1.76 miles. |
| 280 | 0.17 | Junipero Serra Freeway from city limits 500 feet north of Sand Hill Road Overcrossing (north) to city limits 1,400 feet north of Sand Hill Road Overcrossing (north), a length of 0.17 mile. |

Amendment No. 2 – Effective Date: July 1, 2017

22. DELEGATION OF MAINTENANCE: The maintenance work to be performed by City and/or Department shall conform to the provisions hereof and shall include those operations as hereinafter indicated:

| Item No. MAINTENANCE FUNCTION | AGENCY TO PERFORM WORK RTE. NO. 82 | | | RTE. NO. 114 | | | RTE. NO. 84 | | | RTE. NO. **101 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | City | Dept | | City | Dept | | City | Dept | | City | Dept | |
| Roadbed | | x | | | x | | | x | | | x | |
| Improved Roadside | x | | | x | | | X | | | | x | |
| Unimproved Roadside | | x | | | x | | | x | | | x | |
| Bridges and Culverts | | x | | | x | | | x | | | x | |
| Guide Signs | | x | | | x | | | x | | | x | |
| Warning Signs | | x | | | x | | | x | | | x | |
| Regulatory Signs | | x | | | x | | | x | | | x | |
| Traffic Stripe | | x | | | x | | | x | | | x | |
| Pavement Markings | | x | | | x | | | x | | | x | |
| Traffic Signals | | x | | | x | | | x | | | x | |
| Highway Lighting | x | | | | x | | | x | | | x | |
| Guard Rail | | x | | | x | | | x | | | x | |
| Median Barriers | | x | | | x | | | x | | | x | |
| Bicycle Pavement Markings | X | | | X | | | X | | | X | | |
| Sweeping and Cleaning | x | | (1) | | x | (2) | | x | (3) | | x | (4) |
| *Landscaped Areas | | x | | X | | | X | | | | x | |
| *Trees | | x | | X | | | X | | | | x | |
| Curbs and Sidewalks | x | | | x | | | X | | | | x | |
| ISSUANCE OF PERMITS | | | | | | | | | | | | |
| Encroachment | x | x | (5) | x | x | (5) | X | x | (5) | | x | |
| Transportation | x | | | x | | | | x | | | x | |

*When-and-as-specifically authorized by the District Engineer as provided under Section 13 hereof.

**The delegation of maintenance set forth herein does not include areas and functions, the control and maintenace of which, rest with the local authority under Freeway Agreements and/or Freeway Maintenance Agreements.

(1) Length of street to be cleaned 1.8 Curb miles.
(2) " " " " " " ______ " "
(3) " " " " " " ______ " "
(4) " " " " " " ______ " "
(5) Department will issue permits for encroachments between curb lines. City will issue permits for encroachments between curb line and right of way line on each side.

Amendment No. 2 – Effective Date: July 1, 2017

04-SM-Menlo Park
July 1, 1972

| ROUTE NO. | LENGTH MILES | MAXIMUM EXPENDITURE PER ROUTE |
|---|---|---|
| 82 | 1.28 | $2,300.00 |
| 114 | 0.90 | 0.00 |
| 84 | 3.20 | 0.00 |
| 101 | 1.76 | 0.00 |
| 280 | 0.17 | 0.00 |
| | Total | $2,300.00 |

-14-

MP006680

# Caltrans D4 Right of Way Maps

Find address or place

PM
PM 2.1
PM 2
PM 1.9
PM 1.8
PM 1.7
PM 1.6
PM 1.5
PM 1.4
PM 1.3
PM 1.2
PM 1.1
PM 1
PM
USDA FSA
600ft

-122.210 37.422 Degrees

10/25/2019 Caltrans D4 Right of Way Maps

Caltrans D4 Right of Way Maps
Find address or place
Sand
Sand Hill Rd
Sand Hill Rd
Junipero Serra Fwy
PM 1.6
PM 1.5
PM 1.4
PM 1.3
PM 1.2
Junipero Serra Fwy
County of San Mateo, California, BuildingF
300ft
122 211 37 421 Degrees

https://www.arcgis.com/apps/webappviewer/index.html?id=04efb9a9f14c4da2aabd9ce36b7dda48 1/1

MP006682

# Exhibit D

**Nicolas A. Flegel**

| | |
|---|---|
| **From:** | Nicolas A. Flegel |
| **Sent:** | Wednesday, September 27, 2017 11:35 AM |
| **To:** | michael@massmeans.com |
| **Cc:** | jvharada@menlopark.org; William L. McClure; admcintyre@menlopark.org; dcbertini@menlopark.org; dwa@agzlaw.com; ijtoews@menlopark.org |
| **Subject:** | RE: Notice re Menlo Park City Council Decision |

Dear Mr. Zeleny,

Thank you for your email of September 7, 2017, requesting that the City of Menlo Park reconsider your special events permit application as a film permit application. The City has asked that I respond to your email. The City has a film permit application process, and therefore you should submit a film permit application to staff. This is a different permit than a special event permit, so you will need to follow/comply with the film permit requirements. I am copying Ivan Toews of the Public Works Department, who handles film permits, and am requesting Ivan by this email to forward you the necessary application and information. Ivan's contact information is:

Ivan Toews- Land Development Engineer
City of Menlo Park |
701 Laurel St. | Menlo Park, CA 94025
Direct (650)-330-6712 | | Fax 650-327-5497
ijtoews@menlopark.org

Thank you for your attention to this matter.

Nick Flegel
(650) 324-9300

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Thursday, September 7, 2017 2:28 AM
**To:** Harada, Jelena V <jvharada@menlopark.org>
**Cc:** William L. McClure <wlm@jsmf.com>; grubens@adcl.com; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; David W. Affeld <dwa@agzlaw.com>
**Subject:** Re: Notice re Menlo Park City Council Decision

Thank you for your email. In keeping with the substance of our exchanges in last week's hearing, and in the mutual interests of efficiency, I would like the City of Menlo Park to reconsider my special event permit mitapplication as requesting a film permit.

The salient points of my request are as follows:

- The videography is to take place alongside 2855 Sand Hill Road, Menlo Park, CA 94025, and continue indefinitely, Monday through Friday, from 8 a.m. to 7 p.m.;
- All participants, cameras, and props will be placed so as to avoid any interference with automotive and foot traffic;
- The City will recognize all participants in the film production that are so authorized in advance by myself, as exempt from sanctions for carrying a concealed firearm or openly carrying an unloaded handgun or a long gun under California Penal Code Sections 25400 (a) (2), 26350 (a) (1), and 26400

(a), pursuant to the relevant exemptions under P.C. Sections 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event.

I remain open to reasonable time, place, and manner regulations.

Please let me know how to proceed in order to ensure an expeditious determination from the City authorities.

—
Michael@massmeans.com | Zeleny@post.harvard.edu | 7576 Willow Glen Road, Los Angeles, CA 90046 | voice:323.363.1860 | fax:323.410.2373
http://larvatus.livejournal.com | "All of old. Nothing else ever. Ever tried. Ever failed. No matter. Try again. Fail again. Fail better." — Samuel Beckett

On Sep 5, 2017, at 10:14 PM, Harada, Jelena V <jvharada@menlopark.org> wrote:

Mr. Zeleny,

Attached is correspondence informing you of the Menlo Park City Council's decision made at the City Council special meeting of August 29, 2017, related to your Appeal of Denial of Special Event Permit Application. This item is also being sent to you via US mail.

Sincerely,

**Jelena Harada**

Deputy City Clerk

City of Menlo Park

701 Laurel St., Menlo Park, CA 94025

650-330-6612 | jvharada@menlopark.org

<image001.jpg>

<Zeleny Letter - city council action.pdf>

# Exhibit E

**Nicolas A. Flegel**

| | |
|---|---|
| **From:** | Toews, Ivan J <IJToews@menlopark.org> |
| **Sent:** | Thursday, September 28, 2017 1:01 PM |
| **To:** | michael@massmeans.com |
| **Cc:** | Harada, Jelena V; William L. McClure; McIntyre, Alex D; Bertini, David C; dwa@agzlaw.com; Nicolas A. Flegel |
| **Subject:** | RE: Notice re Menlo Park City Council Decision |
| **Attachments:** | Encroachment Permit- Film Permit..pdf; Filming Permit Conditions.doc; Business license application.pdf |

Dear Mr. Zeleny,

Please see attached film permit application and film permit conditions. Application can be submitted via email. Thank you.

**Ivan Toews- Land Development Engineer**
**City of Menlo Park |**
701 Laurel St. | Menlo Park, CA 94025
Direct (650)-330-6712 | | Fax 650-327-5497
ijtoews@menlopark.org

**From:** Nicolas A. Flegel [mailto:naf@jsmf.com]
**Sent:** Wednesday, September 27, 2017 11:35 AM
**To:** michael@massmeans.com
**Cc:** Harada, Jelena V <jvharada@menlopark.org>; McClure, William <wlm@jsmf.com>; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; dwa@agzlaw.com; Toews, Ivan J <IJToews@menlopark.org>
**Subject:** RE: Notice re Menlo Park City Council Decision

Dear Mr. Zeleny,

Thank you for your email of September 7, 2017, requesting that the City of Menlo Park reconsider your special events permit application as a film permit application. The City has asked that I respond to your email. The City has a film permit application process, and therefore you should submit a film permit application to staff. This is a different permit than a special event permit, so you will need to follow/comply with the film permit requirements. I am copying Ivan Toews of the Public Works Department, who handles film permits, and am requesting Ivan by this email to forward you the necessary application and information. Ivan's contact information is:

> Ivan Toews- Land Development Engineer
> City of Menlo Park |
> 701 Laurel St. | Menlo Park, CA 94025
> Direct (650)-330-6712 | | Fax 650-327-5497
> ijtoews@menlopark.org

Thank you for your attention to this matter.

Nick Flegel
(650) 324-9300

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Thursday, September 7, 2017 2:28 AM
**To:** Harada, Jelena V <jvharada@menlopark.org>
**Cc:** William L. McClure <wlm@jsmf.com>; grubens@adcl.com; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; David W. Affeld <dwa@agzlaw.com>
**Subject:** Re: Notice re Menlo Park City Council Decision

Thank you for your email. In keeping with the substance of our exchanges in last week's hearing, and in the mutual interests of efficiency, I would like the City of Menlo Park to reconsider my special event permit mitapplication as requesting a film permit.

The salient points of my request are as follows:

- The videography is to take place alongside 2855 Sand Hill Road, Menlo Park, CA 94025, and continue indefinitely, Monday through Friday, from 8 a.m. to 7 p.m.;
- All participants, cameras, and props will be placed so as to avoid any interference with automotive and foot traffic;
- The City will recognize all participants in the film production that are so authorized in advance by myself, as exempt from sanctions for carrying a concealed firearm or openly carrying an unloaded handgun or a long gun under California Penal Code Sections 25400 (a) (2), 26350 (a) (1), and 26400 (a), pursuant to the relevant exemptions under P.C. Sections 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event.

I remain open to reasonable time, place, and manner regulations.

Please let me know how to proceed in order to ensure an expeditious determination from the City authorities.

—

Michael@massmeans.com | Zeleny@post.harvard.edu | 7576 Willow Glen Road, Los Angeles, CA 90046 | voice:323.363.1860 | fax:323.410.2373
http://larvatus.livejournal.com | "All of old. Nothing else ever. Ever tried. Ever failed. No matter. Try again. Fail again. Fail better." — Samuel Beckett

On Sep 5, 2017, at 10:14 PM, Harada, Jelena V <jvharada@menlopark.org> wrote:

Mr. Zeleny,

Attached is correspondence informing you of the Menlo Park City Council's decision made at the City Council special meeting of August 29, 2017, related to your Appeal of

Denial of Special Event Permit Application. This item is also being sent to you via US mail.

Sincerely,

**Jelena Harada**

Deputy City Clerk

City of Menlo Park

701 Laurel St., Menlo Park, CA 94025

650-330-6612 | jvharada@menlopark.org

<image001.jpg>

<Zeleny Letter - city council action.pdf>



**City of Menlo Park**
**Engineering Division**
**701 Laurel Street**
**Menlo Park, CA 94025**
**Telephone (650) 330-6740**

**PERMIT NO.:________________**
**Keep this permit at the work site at all times**

**Call 24 hours in advance of working in the public right of way AND for each inspection request.**
***Uninspected work will be rejected.***

## ENCROACHMENT PERMIT APPLICATION

☐ Major Encroachment
☐ Minor Encroachment
☐ Temporary Encroachment
☐ Debris or Container Box
☐ Other FILM PERMIT
☐ City-Mandated Repairs

**ONE PERMIT PER ADDRESS**

| Location of Work | Applicant Represents ☐ Contractor ☐ Owner | Applicant e-mail: Applicant fax: | | | |
|---|---|---|---|---|---|
| Name of Applicant (person) | Address | City | State | Zip | Telephone |
| Name of Contractor | Address | City | State | Zip | Telephone |
| California Construction License No. | Menlo Park Business License No. | Est. Start Date | Est. Complete Date | | |
| Estimated Construction Cost (Estimate work in city R/W only. Do not include value of utility.) $________ | Bond or Deposit * $________ | Bond or Deposit provided by: ☐ Contractor ☐ Owner ☐ Other (provide name, company, address) | | | |

Description of work to be done:

Applicant submits the following:
☐ 3 copies of sketch or plans
☐ 3 copies of traffic control plans
☐ insurance certificate

***Call Underground Service Alert (USA) at 1-800-227-2600 before you dig***

GENERAL CONDITIONS OF PERMIT ATTACHED.
**Signature below acknowledges that special working hours may apply – check the approved traffic control plan.**

I hereby acknowledge that I have read this permit and the attached conditions, that the information given by me is correct, that I am the owner or the duly authorized agent of the owner, and that I agree to comply with the conditions and all applicable provisions of state laws, city ordinances, and the rules of any governmental agency involved.

| Signature of Applicant (Owner or authorized agent) | Title | Date |
|---|---|---|

**DO NOT WRITE BELOW THIS LINE -- CITY STAFF USE ONLY**

| Approved by Engineering Division | Date | Permit expires | Fees (retained by City) | $ |
|---|---|---|---|---|
| | | Total Due to City | ☐ Paid | $ |

** Bond or deposit requests must originate from the bond/deposit provider. A copy of the original receipt must accompany the refund request. All deposits or bonds are subject to forfeiture to comply with City Codes and Ordinances.*

N. Flegel 0119



CITY OF
MENLO PARK

# GENERAL CONDITIONS OF PERMIT

**Engineering Division**
**701 Laurel Street**
**Menlo Park, CA 94025**
**Notification of Work or Inspection Requests: (650) 330-6740**

1. This permit, regardless of when dated, shall not be in effect until the applicant has obtained all licenses and other permits required by law.
2. This permit is declared **null and void** if work has not commenced three (3) months after the date of permit issuance.
3. Traffic control plan is required for work that will block public right-of-way. Plan shall include re-routing of vehicles, bicycles and pedestrians.
4. Any damages to existing facilities and improvements above ground or below ground, shall be promptly repaired or replaced at the permittee's expense, and claims for damage to City property must be promptly paid.
5. Applicant is responsible for determining exact locations or depths of existing utilities or other facilities. Call Underground Service Alert (USA) at 1-800-227-2600 a minimum of 48 hours prior to performing work.
6. Applicant carries sufficient insurance to work in the public right of way, and names City of Menlo Park as additional insured. Applicant agrees to keep insurance active for the duration of the project.
7. All work shall comply with the City and Caltrans Standards, including traffic control.
8. **Street Opening, Sidewalk, Curb and Gutter, and Driveway Permits**. Permittee shall notify the Public Works Inspector at least **24 hours prior to: beginning work, inspection requests, or concrete placement**. The number and type of inspections required, and any tests that may be required will be as directed by the Public Works Inspector. The Public Works Inspector may be contacted by calling (650) 330-6740.
9. All trench plates used in the public right of way must have a non-skid surface.
10. Construction activities are restricted to Monday through Friday (City holidays excepted) between the hours of 8:00 AM and 5:00 PM, unless otherwise approved in writing by the Engineering Services Division.
11. A faithful performance bond or a cash deposit in an amount equal to the estimated cost of the proposed work is required for curb and gutter, driveway, or street opening permits
12. This grant of permission does not constitute a deed or grant of easement by the City, is not transferable or assignable and is revocable at any time at the will of the City.
13. This permit does not authorize tree trimming or tree removal.
14. The traffic control plan as attached must be adhered to at all times. *Note that the traffic control plan may have restricted working hours for working in the public right of way, which supersedes the standard encroachment permit working hours.*
15. The use of City property by permittee shall be limited to the purposes set forth by this permit and no structures of any kind, except those expressly permitted shall be erected or placed thereon.
16. Debris boxes/storage containers shall have reflectors so that they can be seen at night. This permit must be taped to the outside of debris boxes in a visible location.
17. This permit does not include overnight street parking for any vehicles. A separate parking permit can be obtained from the Police Department.
18. All stormwater BMP's must be in place between October 15th and April 15th, or as directed by the Public Works Inspector.
19. Additional conditions (if any) are attached to this permit and shall be followed accordingly.

**Additional Conditions:**

# Non-Menlo Park Based Businesses

CITY OF
MENLO
PARK

Civic Center 701 Laurel Street
Menlo Park, CA 94025
Business License Department
Phone: (650) 330-6642
FAX (650) 327-5391

**CONFIDENTIAL AFFIDAVIT AND APPLICATION FOR BUSINESS LICENSE FOR NON-MENLO PARK BASED BUSINESSES**

Obtaining a business license satisfies the business license requirements of Title V of the Menlo Park Municipal Code. It is the responsibility of all persons to insure that they are in compliance with zoning requirements of Title XVI of the Menlo Park Municipal Code and all other adopted codes of the city.

**Please Note: Incomplete applications cannot be processed and will be returned for completion.**

Business Name ______________________

Additional Name ______________________

Business Address ______________________

City, State, Zip ______________________

Mailing Address (If Different) ______________________

______________________

Business Phone Number ______________________

Fax Number ______________________

Type of Ownership: _____ Sole Proprietorship _____ Partnership _____ Corporation _____ Limited Liability Corporation

Federal Tax ID or Social Security Number ______________________

Description of primary business activity ______________________

State Contractors License Number ______________ State Resale License Number ______________

Owner/Officer Name and Title ______________________

Home Address ______________________

City, State, Zip ______________________

Phone Number ______________________

**Business License Tax Calculation Section**

Gross Receipts: ______________________

Use the accompanying Guide to Annual Business License Tax Calculation to determine the tax based on annual gross receipts and/or late charges or other fees (if applicable).

Estimate gross receipts anticipated to be earned in Menlo Park during the current calendar year.

Gross Receipts Tax: ______________________

Late Charges or Other Fees: CASp Fee $1.00

TOTAL AMOUNT DUE: ______________________

I certify under penalty of perjury that the above information is correct.

______________________ Signature

__________ Date

FOR OFFICE USE

Business License Number __________ New _____ Renewal _____ Year _______

N. Flegel 0121

**Film Production in Menlo Park**

Film production in the City of Menlo Park must comply with following conditions:

1. Permittee shall submit in writing all pertinent details regarding the filming including the date(s) and times of the filming including time needed for set-up and take down; a description of the nature of the filming; the location of the filming; a list of all equipment involved in the filming, including cars and other vehicles; the proposed location for the parking and storage of all such vehicles and equipment; the number of cast and crew members involved in the filming; and an indication of any special needs, such as amplified noise, etc. If granted, the permit's approval will be confined to such activities, locations and time schedules as submitted and approved.

2. Three days prior to the beginning of filming, permittee shall provide written notice to residents and businesses within 200 feet of the proposed filming.

3. Permittee shall obey all City Ordinances, rules and the guidance of City supervisory employees pertaining to the use of City property, including the location, parking and storage of vehicles and equipment, crowd and traffic control, and the restoration of premises to their original condition after use for filming purposes.

4. Permittee will comply with the City of Menlo Park noise ordinance. Filming will be limited to the hours between 8:00 a.m. and 6:00 p.m. and will result in low to no noise levels. The use of any explosive, fireworks, or pyrotechnic devices is strictly prohibited.

5. Permittee shall make arrangements for traffic control satisfactory to the Menlo Park Police Department prior to filming on City streets and in other public areas. Permittee will be charged to recover the cost of traffic control provided by the City. Permittee will legally park vehicles and will not require street closure or traffic control other than what is approved.

6. Permittee shall covenant and agree to indemnify and hold harmless the City from any and all loss, cost, damages and expenses of any kind, including attorney fees, on account of personal injury or property damage resulting from any activity of Permittee on municipal property or in connection with its use of municipal property.

7. Liability insurance in no way limits the indemnity agreement above, Permittee will furnish the City a Certificate of Liability Insurance acceptable to its Risk Management office showing combined single limit coverage for bodily injury and property damage, or the equivalent of such coverage, not less than $1 million. The City, including its officials, employees and agents, shall be named as additional insured in the Liability Policy. Contractual liability coverage insuring the obligations of this Agreement is also required. The insurance may not be canceled or substantially modified without ten (10) days written notice to the City Manager's Office.

8. Permittee shall pay, with a valid check, money order, credit card or cashier's check, a **filming permit application fee of $150.00 in addition to the daily permit fees of $50 per day for still photography and short subject, $100 per day for industrials, and $150 per day for features, TV, music videos and commercials.**

9. Permittee shall apply for a one-time Business License and pay, with a valid check, money order, credit card or cashiers check. See **Guide to Annual Business Licensee Fee Calculation** for the fee schedule.

10. Permittee will adhere to the provisions and conditions set forth in the permit. If Menlo Park Police Department or other City personnel are required to correct, mitigate, or provide any service not consented to under this permit, permittee will be required to pay for all services rendered. Payment shall be made in the form of *a valid check, money order, credit card or cashiers check* immediately upon demand made by the City.

*PROJECT ADDRESS:*________________________________________

Read and agreed on:

Date:____________________

______________________________ ____________________________

Signature Print name

# Exhibit F

**Nicolas A. Flegel**

**From:** Michael Zeleny <michael@massmeans.com>
**Sent:** Friday, October 06, 2017 3:02 AM
**To:** Toews, Ivan J
**Cc:** Harada, Jelena V; William L. McClure; McIntyre, Alex D; Bertini, David C; dwa@agzlaw.com; Nicolas A. Flegel
**Subject:** [BULK] Re: Notice re Menlo Park City Council Decision
**Attachments:** Encroachment Permit- Film Permit. - signed.pdf

Dear Mr Toews,

Attached please find a completed application for a film permit.

Starting on 30 October 2017 and continuing through 27 December 2017, I shall maintain a portable multimedia presentation illustrating ongoing corporate support of New Enterprise Associates (NEA) for incestuous child rapist Min Zhu. I shall be present in the vicinity of 2825 Sand Hill Road from 08:00 till 18:00 every weekday, served by a support staff of one personal assistant and one cinematographer. My props are to include fully operational, exposed and unloaded military grade firearms and loaded ammunition feeding devices therefor, including without limitation, a 9mm Para semiautomatic SIG P210 pistol, and a 7.65x51mm NATO semiautomatic LRB M25 rifle and tripod-mounted belt-fed semiautomatic Browning M1919a4, in full compliance with all applicable laws. A 55" portable media display powered by a portable gas generator will display videos featuring explicit representations of sexual violence committed by NEA's publicly disgraced protégé. A sample image can be found at http://larvatus.livejournal.com/371973.html. Two tripod-mounted cameras will be placed on either side of Sand Hill Road, focusing on public reactions to my display. One of them will be attended by a cinematographer. I will operate the other one remotely. All their footage, complemented by output of body cams, will be live streamed on the Internet.

A site map can be found at https://www.google.com/maps/@37.4197308,-122.2137188,17z/. All placements of equipment and personnel will be determined to avoid interference with automotive and foot traffic, in consultation with the Menlo Park City authorities. All media aspects of this event will be subject to content-neutral regulation negotiated with Menlo Park City authorities. My fundamental rights under the First and Second Amendments of the Constitution of the United States are reserved and non-negotiable.

Please note that my standing and circumstances require accommodations not anticipated by your application format and requirements. As an individual engaged in a non-profit endeavor of public interest, I hereby apply for a waiver of all applicable fees. I will furnish all requisite liability waivers and procure the appropriate insurance coverage upon your conditional approval of this application.

Please address all legal inquiries and requests to David W. Affeld, Affeld Grivakes LLP, 2049 Century Park East, Suite 2460, Los Angeles, CA 90067, voice:310.979.8700, fax:310.979.8701.

—
Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Thu, Sep 28, 2017 at 1:00 PM, Toews, Ivan J <IJToews@menlopark.org> wrote:

Dear Mr. Zeleny,

Please see attached film permit application and film permit conditions. Application can be submitted via email. Thank you.

**Ivan Toews- Land Development Engineer**

**City of Menlo Park |**

701 Laurel St. | Menlo Park, CA 94025

Direct (650)-330-6712 | | Fax 650-327-5497

ijtoews@menlopark.org

**From:** Nicolas A. Flegel [mailto:naf@jsmf.com]
**Sent:** Wednesday, September 27, 2017 11:35 AM
**To:** michael@massmeans.com
**Cc:** Harada, Jelena V <jvharada@menlopark.org>; McClure, William <wlm@jsmf.com>; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; dwa@agzlaw.com; Toews, Ivan J <IJToews@menlopark.org>
**Subject:** RE: Notice re Menlo Park City Council Decision

Dear Mr. Zeleny,

Thank you for your email of September 7, 2017, requesting that the City of Menlo Park reconsider your special events permit application as a film permit application. The City has asked that I respond to your email. The City has a film permit application process, and therefore you should submit a film permit application to staff. This is a different permit than a special event permit, so you will need to follow/comply with the film permit requirements. I am copying Ivan Toews of the Public Works Department, who handles film permits, and am requesting Ivan by this email to forward you the necessary application and information. Ivan's contact information is:

> Ivan Toews- Land Development Engineer
>
> City of Menlo Park |
>
> 701 Laurel St. | Menlo Park, CA 94025
>
> Direct (650)-330-6712 | | Fax 650-327-5497
>
> ijtoews@menlopark.org

Thank you for your attention to this matter.

Nick Flegel

(650) 324-9300

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Thursday, September 7, 2017 2:28 AM
**To:** Harada, Jelena V <jvharada@menlopark.org>

**Cc:** William L. McClure <wlm@jsmf.com>; grubens@adcl.com; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; David W. Affeld <dwa@agzlaw.com>
**Subject:** Re: Notice re Menlo Park City Council Decision

Thank you for your email. In keeping with the substance of our exchanges in last week's hearing, and in the mutual interests of efficiency, I would like the City of Menlo Park to reconsider my special event permit mitapplication as requesting a film permit.

The salient points of my request are as follows:

- The videography is to take place alongside 2855 Sand Hill Road, Menlo Park, CA 94025, and continue indefinitely, Monday through Friday, from 8 a.m. to 7 p.m.;
- All participants, cameras, and props will be placed so as to avoid any interference with automotive and foot traffic;
- The City will recognize all participants in the film production that are so authorized in advance by myself, as exempt from sanctions for carrying a concealed firearm or openly carrying an unloaded handgun or a long gun under California Penal Code Sections 25400 (a) (2), 26350 (a) (1), and 26400 (a), pursuant to the relevant exemptions under P.C. Sections 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event.

I remain open to reasonable time, place, and manner regulations.

Please let me know how to proceed in order to ensure an expeditious determination from the City authorities.

—

Michael@massmeans.com | Zeleny@post.harvard.edu | 7576 Willow Glen Road, Los Angeles, CA 90046 | voice:323.363.1860 | fax:323.410.2373

http://larvatus.livejournal.com | "All of old. Nothing else ever. Ever tried. Ever failed. No matter. Try again. Fail again. Fail better." — Samuel Beckett

On Sep 5, 2017, at 10:14 PM, Harada, Jelena V <jvharada@menlopark.org> wrote:

> Mr. Zeleny,
>
> Attached is correspondence informing you of the Menlo Park City Council's decision made at the City Council special meeting of August 29, 2017, related to your Appeal of Denial of Special Event Permit Application. This item is also being sent to you via US mail.
>
> Sincerely,
>
> **Jelena Harada**
>
> Deputy City Clerk
>
> City of Menlo Park
>
> 701 Laurel St., Menlo Park, CA 94025
>
> 650-330-6612 | jvharada@menlopark.org

<image001.jpg>

<Zeleny Letter - city council action.pdf>

4

N. Flegel 0088



CITY OF
MENLO PARK

**City of Menlo Park**
**Engineering Division**
**701 Laurel Street**
**Menlo Park, CA 94025**
**Telephone (650) 330-6740**

**PERMIT NO.:**__________
**Keep this permit at the work site at all times**

**Call 24 hours in advance of working in the public right of way AND for each inspection request.**
***Uninspected work will be rejected.***

# ENCROACHMENT PERMIT APPLICATION

☐ Major Encroachment ☐ Temporary Encroachment ■ Other FILM PERMIT
☐ Minor Encroachment ☐ Debris or Container Box ☐ City-Mandated Repairs

## ONE PERMIT PER ADDRESS

| Location of Work | Applicant Represents | Applicant e-mail: / Applicant fax: |
|---|---|---|
| 2825 Sand Hill Rd, Menlo Park, CA 94025 | ☐ Contractor ■ Owner | zeleny@post.harvard.edu |

| Name of Applicant (person) | Address | City | State | Zip | Telephone |
|---|---|---|---|---|---|
| Michael Zeleny | 7576 Willow Glen Road | Los Angeles | CA | 90046 | 323-363-1860 |

| Name of Contractor | Address | City | State | Zip | Telephone |
|---|---|---|---|---|---|
| n/a | | | | | |

| California Construction License No. | Menlo Park Business License No. | Est. Start Date | Est. Complete Date |
|---|---|---|---|
| n/a | n/a | 30 October 2017 | 29 December 2017 |

| Estimated Construction Cost (Estimate work in city R/W only. Do not include value of utility.) | Bond or Deposit * | Bond or Deposit provided by: |
|---|---|---|
| $ 0 | $ to be furnished | ☐ Contractor ■ Owner ☐ Other (provide name, company, address) |

Description of work to be done:

Making a multimedia presentation and filming public responses thereto.

Applicant submits the following:
☐ 3 copies of sketch or plans
☐ 3 copies of traffic control plans
☐ insurance certificate

***Call Underground Service Alert (USA) at 1-800-227-2600 before you dig***

GENERAL CONDITIONS OF PERMIT ATTACHED.
**Signature below acknowledges that special working hours may apply – check the approved traffic control plan.**

I hereby acknowledge that I have read this permit and the attached conditions, that the information given by me is correct, that I am the owner or the duly authorized agent of the owner, and that I agree to comply with the conditions and all applicable provisions of state laws, city ordinances, and the rules of any governmental agency involved.

| [signature] | Principal | 6 October 2017 |
|---|---|---|
| Signature of Applicant (Owner or authorized agent) | Title | Date |

**DO NOT WRITE BELOW THIS LINE -- CITY STAFF USE ONLY**

| Approved by Engineering Division | Date | Permit expires | Fees (retained by City) | $ |
|---|---|---|---|---|
| | | Total Due to City | ☐ Paid | $ |

** Bond or deposit requests must originate from the bond/deposit provider. A copy of the original receipt must accompany the refund request. All deposits or bonds are subject to forfeiture to comply with City Codes and Ordinances.*



# GENERAL CONDITIONS OF PERMIT

**Engineering Division**
**701 Laurel Street**
**Menlo Park, CA 94025**
**Notification of Work or Inspection Requests: (650) 330-6740**

1. This permit, regardless of when dated, shall not be in effect until the applicant has obtained all licenses and other permits required by law.
2. This permit is declared **null and void** if work has not commenced three (3) months after the date of permit issuance.
3. Traffic control plan is required for work that will block public right-of-way. Plan shall include re-routing of vehicles, bicycles and pedestrians.
4. Any damages to existing facilities and improvements above ground or below ground, shall be promptly repaired or replaced at the permittee's expense, and claims for damage to City property must be promptly paid.
5. Applicant is responsible for determining exact locations or depths of existing utilities or other facilities. Call Underground Service Alert (USA) at 1-800-227-2600 a minimum of 48 hours prior to performing work.
6. Applicant carries sufficient insurance to work in the public right of way, and names City of Menlo Park as additional insured. Applicant agrees to keep insurance active for the duration of the project.
7. All work shall comply with the City and Caltrans Standards, including traffic control.
8. **Street Opening, Sidewalk, Curb and Gutter, and Driveway Permits**. Permittee shall notify the Public Works Inspector at least **24 hours prior to: beginning work, inspection requests, or concrete placement**. The number and type of inspections required, and any tests that may be required will be as directed by the Public Works Inspector. The Public Works Inspector may be contacted by calling (650) 330-6740.
9. All trench plates used in the public right of way must have a non-skid surface.
10. Construction activities are restricted to Monday through Friday (City holidays excepted) between the hours of 8:00 AM and 5:00 PM, unless otherwise approved in writing by the Engineering Services Division.
11. A faithful performance bond or a cash deposit in an amount equal to the estimated cost of the proposed work is required for curb and gutter, driveway, or street opening permits
12. This grant of permission does not constitute a deed or grant of easement by the City, is not transferable or assignable and is revocable at any time at the will of the City.
13. This permit does not authorize tree trimming or tree removal.
14. The traffic control plan as attached must be adhered to at all times. *Note that the traffic control plan may have restricted working hours for working in the public right of way, which supersedes the standard encroachment permit working hours.*
15. The use of City property by permittee shall be limited to the purposes set forth by this permit and no structures of any kind, except those expressly permitted shall be erected or placed thereon.
16. Debris boxes/storage containers shall have reflectors so that they can be seen at night. This permit must be taped to the outside of debris boxes in a visible location.
17. This permit does not include overnight street parking for any vehicles. A separate parking permit can be obtained from the Police Department.
18. All stormwater BMP's must be in place between October 15th and April 15th, or as directed by the Public Works Inspector.
19. Additional conditions (if any) are attached to this permit and shall be followed accordingly.

**Additional Conditions:**

# Exhibit G

**Nicolas A. Flegel**

**From:** Toews, Ivan J <IJToews@menlopark.org>
**Sent:** Monday, November 06, 2017 9:50 AM
**To:** Michael Zeleny; Harada, Jelena V; William L. McClure; Bertini, David C; McIntyre, Alex D; Nicolas A. Flegel; Subrah Iyar; Scott Sandell
**Cc:** dwa@agzlaw.com
**Subject:** RE: Notice re Menlo Park City Council Decision

Mr. Zeleny,

Staff has reviewed your permit application. Due to the proposed length of the time to film and location of filming on a busy arterial roadway, this is an unusual permit to process. Thank you in advance for your patience and cooperation. In order for the staff to process your film permit application, we need the following additional information:

1. Film dates: Per your application you plan to film for over 55 days.
    a. Submit times for each day regarding set-up and tear down the equipment. City film permits require filming to occur between 8:00 a.m. and 6:00 p.m.
    b. Note: proposed film times are subject to review by staff based upon scope of work required.
2. Gas generator: please provide the make and model of the gas generator
    a. Submit decibel reading for the equipment to ensure it does not exceed City ordinance for noise level.
3. Written notice to business within 200 feet of the film location will need to be notified
    a. Provide a draft written notice letter that you plan to mail to surrounding businesses for staff's review
4. Site plan: the permit is unclear as to the filming location or locations you intend to utilize. Please provide a detailed site plan to show the exact location of equipment and where you plan to stage your presentation/ equipment
    a. Proposed parking location for your equipment and crew vehicles
    b. List all proposed equipment you intend to utilize for the production and location where you intend to place it
5. Traffic control plan: provide a detailed traffic control on how you plan to divert pedestrians around your film location so that staff can determine if police officers must be present for traffic control, and so staff can determine the feasibility and cost of staff time. Please refer to the Film Production worksheet previously provided to you which sets forth the required information necessary to process the application.
6. Business license: Permittee shall apply for a one-time Business License and pay, with a valid check, money order, credit card or cashier's check. See Guide to Annual Business License Fee Calculation for the fee schedule.
    a. Fee waiver: Please provide details why a fee waiver is necessary.
7. The application refers to "accommodations not anticipated by your application format." Please provide more detail regarding what accommodations you are seeking for your production.
8. Liability Insurance: Please provide the City a Certificate of Liability Insurance acceptable to its Risk Management office showing combined single limit coverage for bodily injury and property damage, not less than $1 million; which is to include the City and it's officials and employees and agents named as additional insured in the policy.
9. Please provide a complete and signed application
10. Fees: Submit a film permitting payment of $150.00 in addition to the daily permit fees of $50 per day for short subject films.

Ivan Toews- Land Development Engineer

**City of Menlo Park |**
701 Laurel St. | Menlo Park, CA 94025
Direct (650)-330-6712 | | Fax 650-327-5497
ijtoews@menlopark.org

MENLO PARK

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Friday, November 03, 2017 1:41 AM
**To:** Toews, Ivan J <IJToews@menlopark.org>; Harada, Jelena V <jvharada@menlopark.org>; McClure, William <wlm@jsmf.com>; Bertini, David C <dcbertini@menlopark.org>; McIntyre, Alex D <admcintyre@menlopark.org>; Flegel, Nicolas A. <naf@jsmf.com>; Subrah Iyar <Subrah.Iyar@webex.com>; Scott Sandell <ssandell@nea.com>
**Cc:** dwa@agzlaw.com
**Subject:** Re: Notice re Menlo Park City Council Decision

Dear Menlo Park City authorities,

Your failure to respond in a timely manner to my film permit application belies your repeat asseverations of respecting my Constitutional rights to free speech. I look forward to a judicial hearing in the matter of your ongoing collusion in a corporate coverup of child rape and sponsorship of its fugitive perpetrator. As a resident of Hollywood, I submit that it's high time for Silicon Valley to host a scandal that would make our current sexual harassment debacle look like a game of tiddlywinks.

https://groups.google.com/forum/#!search/erin$20zhu$20sexual$20abuse
https://youtu.be/QgmWMGG3qgE

—
Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Fri, Oct 6, 2017 at 3:01 AM, Michael Zeleny <michael@massmeans.com> wrote:

Dear Mr Toews,

Attached please find a completed application for a film permit.

Starting on 30 October 2017 and continuing through 27 December 2017, I shall maintain a portable multimedia presentation illustrating ongoing corporate support of New Enterprise Associates (NEA) for incestuous child rapist Min Zhu. I shall be present in the vicinity of 2825 Sand Hill Road from 08:00 till 18:00 every weekday, served by a support staff of one personal assistant and one cinematographer. My props are to include fully operational, exposed and unloaded military grade firearms and loaded ammunition feeding devices therefor, including without limitation, a 9mm Para semiautomatic SIG P210 pistol, and a 7.65x51mm NATO semiautomatic LRB M25 rifle and tripod-mounted belt-fed semiautomatic Browning M1919a4, in full compliance with all applicable laws. A 55" portable media display powered by a portable gas generator will display videos featuring explicit representations of sexual violence committed by NEA's publicly disgraced protégé. A sample image can be found at http://larvatus.livejournal.com/371973.html. Two tripod-mounted cameras will be placed on either side of Sand Hill Road, focusing on public reactions to my display. One of them will be attended by a cinematographer. I will operate the other one remotely. All their footage, complemented by output of body cams, will be live streamed on the Internet.

A site map can be found at https://www.google.com/maps/@37.4197308,-122.2137188,17z/. All placements of equipment and personnel will be determined to avoid interference with automotive and foot traffic, in consultation with the Menlo Park City authorities. All media aspects of this event will be subject to content-neutral regulation negotiated with Menlo Park City authorities. My fundamental rights under the First and Second Amendments of the Constitution of the United States are reserved and non-negotiable.

Please note that my standing and circumstances require accommodations not anticipated by your application format and requirements. As an individual engaged in a non-profit endeavor of public interest, I hereby apply for a waiver of all applicable fees. I will furnish all requisite liability waivers and procure the appropriate insurance coverage upon your conditional approval of this application.

Please address all legal inquiries and requests to David W. Affeld, Affeld Grivakes LLP, 2049 Century Park East, Suite 2460, Los Angeles, CA 90067, voice:310.979.8700, fax:310.979.8701.

—

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373

**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Thu, Sep 28, 2017 at 1:00 PM, Toews, Ivan J <IJToews@menlopark.org> wrote:

Dear Mr. Zeleny,

Please see attached film permit application and film permit conditions. Application can be submitted via email. Thank you.

**Ivan Toews- Land Development Engineer**

**City of Menlo Park |**

701 Laurel St. | Menlo Park, CA 94025

Direct (650)-330-6712 | | Fax 650-327-5497

ijtoews@menlopark.org

MENLO PARK

N Flegel0130

**From:** Nicolas A. Flegel [mailto:naf@jsmf.com]
**Sent:** Wednesday, September 27, 2017 11:35 AM
**To:** michael@massmeans.com
**Cc:** Harada, Jelena V <jvharada@menlopark.org>; McClure, William <wlm@jsmf.com>; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; dwa@agzlaw.com; Toews, Ivan J <IJToews@menlopark.org>
**Subject:** RE: Notice re Menlo Park City Council Decision

Dear Mr. Zeleny,

Thank you for your email of September 7, 2017, requesting that the City of Menlo Park reconsider your special events permit application as a film permit application. The City has asked that I respond to your email. The City has a film permit application process, and therefore you should submit a film permit application to staff. This is a different permit than a special event permit, so you will need to follow/comply with the film permit requirements. I am copying Ivan Toews of the Public Works Department, who handles film permits, and am requesting Ivan by this email to forward you the necessary application and information. Ivan's contact information is:

Ivan Toews- Land Development Engineer

City of Menlo Park |

701 Laurel St. | Menlo Park, CA 94025

Direct (650)-330-6712 | | Fax 650-327-5497

ijtoews@menlopark.org

Thank you for your attention to this matter.

Nick Flegel

(650) 324-9300

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Thursday, September 7, 2017 2:28 AM
**To:** Harada, Jelena V <jvharada@menlopark.org>
**Cc:** William L. McClure <wlm@jsmf.com>; grubens@adcl.com; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; David W. Affeld <dwa@agzlaw.com>
**Subject:** Re: Notice re Menlo Park City Council Decision

Thank you for your email. In keeping with the substance of our exchanges in last week's hearing, and in the mutual interests of efficiency, I would like the City of Menlo Park to reconsider my special event permit mitapplication as requesting a film permit.

The salient points of my request are as follows:

- The videography is to take place alongside 2855 Sand Hill Road, Menlo Park, CA 94025, and continue indefinitely, Monday through Friday, from 8 a.m. to 7 p.m.;
- All participants, cameras, and props will be placed so as to avoid any interference with automotive and foot traffic;
- The City will recognize all participants in the film production that are so authorized in advance by myself, as exempt from sanctions for carrying a concealed firearm or openly carrying an unloaded handgun or a long gun under California Penal Code Sections 25400 (a) (2), 26350 (a) (1), and 26400 (a), pursuant to the relevant exemptions under P.C. Sections 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event.

I remain open to reasonable time, place, and manner regulations.

Please let me know how to proceed in order to ensure an expeditious determination from the City authorities.

—

Michael@massmeans.com | Zeleny@post.harvard.edu | 7576 Willow Glen Road, Los Angeles, CA 90046 | voice:323.363.1860 | fax:323.410.2373

http://larvatus.livejournal.com | "All of old. Nothing else ever. Ever tried. Ever failed. No matter. Try again. Fail again. Fail better." — Samuel Beckett

On Sep 5, 2017, at 10:14 PM, Harada, Jelena V <jvharada@menlopark.org> wrote:

Mr. Zeleny,

Attached is correspondence informing you of the Menlo Park City Council's decision made at the City Council special meeting of August 29, 2017, related to your Appeal of Denial of Special Event Permit Application. This item is also being sent to you via US mail.

Sincerely,

**Jelena Harada**

Deputy City Clerk

City of Menlo Park

701 Laurel St., Menlo Park, CA 94025

650-330-6612 | jvharada@menlopark.org

<image001.jpg>

<Zeleny Letter - city council action.pdf>

# Exhibit H

**Nicolas A. Flegel**

**From:** Michael Zeleny <michael@massmeans.com>
**Sent:** Thursday, November 09, 2017 4:02 PM
**To:** Toews, Ivan J
**Cc:** Harada, Jelena V; William L. McClure; Bertini, David C; McIntyre, Alex D; Nicolas A. Flegel; Subrah Iyar; Scott Sandell; dwa@agzlaw.com
**Subject:** Re: Notice re Menlo Park City Council Decision
**Attachments:** 2825 Sand Hill Rd - Google Maps.pdf

Dear Mr Toews,

I answer your questions in order received:

1. Daily times for setting up and tearing down my equipment will not exceed one hour each. Given that Menlo Park City film permits require filming to occur between 08:00 and 18:00, I am planning to start no earlier than 07:00 and finish no later than 19:00.
2. My gas generator is a Yamaha EF2800I inverter generator, factory rated between 65 dBA and 68 dBA at ¼ load.
3. Written notice to business within 200 feet of the film location will read approximately as follows: "Please take note that on the dates identified below, I shall maintain a portable multimedia presentation illustrating ongoing corporate support of New Enterprise Associates (NEA) for incestuous child rapist Min Zhu. I shall be present in the vicinity of 2825 Sand Hill Road from 08:00 till 18:00 every weekday, served by a support staff of one personal assistant and one cinematographer. My props are to include fully operational, exposed and unloaded military grade firearms and loaded ammunition feeding devices therefor, including without limitation, a 9mm Para semiautomatic SIG P210 pistol, and a 7.65x51mm NATO semiautomatic LRB M25 rifle and tripod-mounted belt-fed semiautomatic Browning M1919a4, in full compliance with all applicable laws. A 55" portable media display powered by a portable gas generator will display videos featuring explicit representations of sexual violence committed by NEA's publicly disgraced protégé. A sample image can be found at http://larvatus.livejournal.com/371973.html. Two tripod-mounted cameras focusing on public reactions to my display will be placed on the side of Sand Hill Road, without obstructing any pedestrian or automotive traffic. One of them will be attended by a cinematographer. I will operate the other one remotely. All their raw footage, complemented by output of body cams, will be live streamed on the Internet. Please refrain from any public displays that you do not wish to be broadcast worldwide."
4. As to the site plan, please see the attached Google Maps photo. Please take note of the fact that my presence and equipment will be confined to the location shown in the photo and used on my last appearance in 2012, as then judged by the City not to require any special traffic control efforts or law enforcement presence or oversight. The site will accommodate me displaying the aforementioned firearms and a 55" SunBrite outdoor TV, mounted in a Gator G-Tour E-Lift, and powered by a Yamaha EF2800I inverter generator, while operating a Leica SL camera fitted with a Summilux-SL 50mm f/1.4 prime lens, mounted statically on a Gitzo Ocean Traveler 4-Section carbon fiber tripod with a ballhead. My cinematographer will operate nearby a RED SCARLET camera fitted interchangeably with either a Canon EF 70-200mm f/2.8L IS II USM telephoto zoom lens or a Canon EF 24-70mm f/2.8L II USM Lens, and mounted on a Sachtler D-12 Speed Balance Hot Pod tripod. We do not intend to use any adjacent parking locations.
5. As to the traffic control plan, since our proposed filming location does not encroach on any sidewalks or roads, there will be no need to divert pedestrians or automobiles around it.
6. As to the licensing and fees, I will entertain the option of applying and paying for a one-time Business License upon your conditional approval of my filming project. However, my project is not meant as any kind of business, and should not require this kind of licensing. Additionally, the minimal footprint of my project will not burden the City by imposing any special administrative costs. Accordingly, I am requesting a license and fee waiver owing to the non-commercial, non-profit, and *pro bono publico* nature of my project, designed to rid your community of scurrilous business practices.
7. As to my standing and circumstances requiring accommodations not anticipated by your application format and requirements, the reference is to the non-commercial, non-profit, and *pro bono* purpose and zero associated administrative cost considerations recited in the previous response.

8. I will provide the City with a Certificate of Liability Insurance on the terms acceptable to its Risk Management office, as soon as it conditionally approves my application.
9. I will provide a complete and signed application as soon as the City indicates its conditional approval of the schedule and parameters of my project.
10. I will submit all permitting payments as soon as the City and I agree on the fees applicable in this matter, or their waiver pursuant to the considerations recited above.

On a general note, based on our previous experience in this matter, I do not expect my film permit application to be approved by the City of Menlo Park regardless of the scope and extent of my accommodations for its demands. Accordingly, this application is meant to elicit the terms and pretexts of the City's denial of my rights under the First Amendment, to be contested in an appropriate judicial venue. In the unlikely alternative of the City abandoning its ongoing collusion with corporate sponsorship of incestuous child rapist Min Zhu by New Enterprise Associates, I shall be happy to pay any reasonable fees due in this matter.

Consider taking the high road. If Hollywood can dump attempted child rapist Kevin Spacey, surely Silicon Valley can dump accomplished child rapist Min Zhu.

—

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Mon, Nov 6, 2017 at 9:49 AM, Toews, Ivan J <IJToews@menlopark.org> wrote:

Mr. Zeleny,

Staff has reviewed your permit application. Due to the proposed length of the time to film and location of filming on a busy arterial roadway, this is an unusual permit to process. Thank you in advance for your patience and cooperation. In order for the staff to process your film permit application, we need the following additional information:

1. Film dates: Per your application you plan to film for over 55 days.

    a. Submit times for each day regarding set-up and tear down the equipment. City film permits require filming to occur between 8:00 a.m. and 6:00 p.m.

    b. Note: proposed film times are subject to review by staff based upon scope of work required.

2. Gas generator: please provide the make and model of the gas generator

    a. Submit decibel reading for the equipment to ensure it does not exceed City ordinance for noise level.

3. Written notice to business within 200 feet of the film location will need to be notified

    a. Provide a draft written notice letter that you plan to mail to surrounding businesses for staff's review

4. Site plan: the permit is unclear as to the filming location or locations you intend to utilize. Please provide a detailed site plan to show the exact location of equipment and where you plan to stage your presentation/ equipment

    a. Proposed parking location for your equipment and crew vehicles

# Exhibit I

**Nicolas A. Flegel**

| | |
|---|---|
| **From:** | Michael Zeleny <michael@massmeans.com> |
| **Sent:** | Monday, November 13, 2017 4:12 PM |
| **To:** | Toews, Ivan J |
| **Cc:** | Harada, Jelena V; William L. McClure; Bertini, David C; McIntyre, Alex D; Nicolas A. Flegel; Subrah Iyar; Scott Sandell; dwa@agzlaw.com |
| **Subject:** | Re: Notice re Menlo Park City Council Decision |

Dear Mr Toews,

Thanks for your response. Given that your previous deliberations have pushed us back well past my requested starting date, I would appreciate a prompt and dispositive response to my present query.

To simplify, I am not requesting any accommodations for my production beyond those available to any comer at zero cost, and free of permit requirements; nor am I imposing any costs or burdens on the City, given that Menlo Park Police Department did not regard my previous appearance in the exact same location as requiring any special effort on their part. All I am asking the City to acknowledge in its response is my eligibility to carry a concealed firearm or openly carry an unloaded handgun or a long gun under California Penal Code Sections 25400 (a) (2), 26350 (a) (1), and 26400 (a), pursuant to the relevant exemptions under P.C. Sections 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event.

Accordingly, your choice in this matter is limited to (1) acknowledging the fact of my aforementioned statutory rights, whereupon I would proceed with my production, secured from your unlawful arrest and malicious prosecution; or (2) fabricating a pretext to deny me my statutory rights, whereupon I would proceed with 42 U.S. Code § 1983 civil rights litigation at your ultimate expense.

As we say in Hollywood, let's cut to the chase.

—

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Mon, Nov 13, 2017 at 3:48 PM, Toews, Ivan J <IJToews@menlopark.org> wrote:

> Dear Mr. Zeleny,
>
> I received your response to comments of 11/9/17. I was out of the office on the 10th for Veteran's Day. I will review your response, discuss with staff and will reply within the next 10 days. If you have any additional questions or concerns in the meantime please let me know.
>
> **Ivan Toews- Land Development Engineer**
>
> City of Menlo Park |
>
> 701 Laurel St. | Menlo Park, CA 94025
>
> Direct (650)-330-6712 | | Fax 650-327-5497

# Exhibit J

**Nicolas A. Flegel**

**From:** Nicolas A. Flegel
**Sent:** Wednesday, November 22, 2017 4:04 PM
**To:** Michael Zeleny; Toews, Ivan J
**Cc:** Harada, Jelena V; William L. McClure; Bertini, David C; McIntyre, Alex D; Subrah Iyar; Scott Sandell; dwa@agzlaw.com
**Subject:** RE: Notice re Menlo Park City Council Decision

Dear Mr. Zeleny,

Because you have requested a response to a legal issue, I am responding to your emails of November 9th and November 13th. I am responding to the legal issue you have raised, as well as requesting additional detail from you so we can consider your application. With respect to the legal question, I have analyzed Penal Code Sections 25400, 26350 and 26400, and the corresponding exemptions for filming events found in Sections 25510, 26350, and 26405. It is my opinion that once you obtain a film permit from the City, you will be allowed to possess an unloaded gun(s) to the extent you are using it as part of the film production. The City is willing to work with you in coming to agreeable terms for the filming to take place, so please do not take the approach that a denial of your application is in anyway predetermined. However we need additional information from you so that the City is comfortable in its understanding of what you are proposing and so the City can be satisfied that it will be done in a way that is safe and acceptable.

With respect to specifics, please respond to the below questions as fully as possible to avoid the need for more back and forth. If what is being requested is unclear, please let me know and I can try to clarify or staff can clarify.

a. Site Set-up: Please confirm where you plan to place the different items (generator, projector, cameras, guns you intend to use as part of your film, and anything else you intend to have on the site); we need to understand exactly where you plan to place the items. A diagram will be very helpful to analyze the site set-up.
b. Participants: Please provide the names of the participants or crew that will be part of the filming and his or her role (including cameramen).
c. Cameraman: Please provide detail on where the cameraman or cameramen will be positioned.
d. Display: Please provide more detail on where you plan to place the video display, which direction the display will face (i.e. towards traffic, towards the businesses on the south side of the road, etc. ?) so staff can analyze for safety/traffic control purposes.
    i. Please confirm the expected brightness of the display so staff can analyze for safety/traffic control purposes.
    ii. Please confirm exactly what image or images you intend to show on the display so staff can analyze for safety/traffic control purposes.
e. Use of Guns in Film: You indicate you intend to use guns as part of the production. Please list the types of guns, serial numbers, who will be supplying them to you, how they will be used as part of the production, etc.
    i. Please provide more detail on where you plan to place the weapons and what direction you intend to face them during the production so staff can analyze for safety/traffic control purposes. It is not acceptable (or legal) for you to brandish weapons at passing motorists, pedestrians, and cyclists to film their reactions.
    ii. In your email of October 6th, you state that you intend to focus "on public reactions to my display." Please clarify what you mean by this so staff can analyze for safety/traffic control purposes.
f. Staging: Please provide more detail on what areas you plan to use for staging. As set forth above, a diagram will be helpful in this respect for staff's consideration.

g. Loaded Ammunition: You indicate that you intend to have "loaded ammunition feeding devices" with you. Please describe what this means and provide pictures of what props you are proposing to use and confirm you will be using them for film production. For example, are you intending to use props (fakes) or have with you actual magazines with live ammunition?
h. Film Exception for Live Ammunition: If you are proposing to use live ammunition, it is unclear why live ammunition would in any way be necessary for your film production. In light of the numerous mass shootings around the country, I think you can understand the concern regarding this issue. If you believe the film exemptions allow you to carry live ammunition for use in the film production, please provide me the authority so I may review it.
i. Notice: The notice you have drafted to neighboring properties will need to be re-written. Staff can work with you on what would be an appropriate notice.

The City is working with you in good faith so you can put on your film production. However, we need to work together to come to an agreement so filming occurs in a safe and acceptable way. Your application is an unusual one, and implicates numerous public safety considerations due to the props you have indicated you want to use while filming alongside a busy arterial roadway; so your patience is appreciated.

Thank you and hope you have a nice thanksgiving.

Nicolas A. Flegel
Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025
Tel: (650) 324-9300
Fax: (650) 324-0227

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Monday, November 13, 2017 4:12 PM
**To:** Toews, Ivan J <IJToews@menlopark.org>
**Cc:** Harada, Jelena V <jvharada@menlopark.org>; William L. McClure <wlm@jsmf.com>; Bertini, David C <dcbertini@menlopark.org>; McIntyre, Alex D <admcintyre@menlopark.org>; Nicolas A. Flegel <naf@jsmf.com>; Subrah Iyar <Subrah.Iyar@webex.com>; Scott Sandell <ssandell@nea.com>; dwa@agzlaw.com
**Subject:** Re: Notice re Menlo Park City Council Decision

Dear Mr Toews,

Thanks for your response. Given that your previous deliberations have pushed us back well past my requested starting date, I would appreciate a prompt and dispositive response to my present query.

To simplify, I am not requesting any accommodations for my production beyond those available to any comer at zero cost, and free of permit requirements; nor am I imposing any costs or burdens on the City, given that Menlo Park Police Department did not regard my previous appearance in the exact same location as requiring any special effort on their part. All I am asking the City to acknowledge in its response is my eligibility to carry a concealed firearm or openly carry an unloaded handgun or a long gun under California Penal Code Sections 25400 (a) (2), 26350 (a) (1), and 26400 (a), pursuant to the relevant exemptions under P.C. Sections 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event.

Accordingly, your choice in this matter is limited to (1) acknowledging the fact of my aforementioned statutory rights, whereupon I would proceed with my production, secured from your unlawful arrest and malicious prosecution; or (2) fabricating a pretext to deny me my statutory rights, whereupon I would proceed with 42 U.S. Code § 1983 civil rights litigation at your ultimate expense.

As we say in Hollywood, let's cut to the chase.

# Exhibit K

**Nicolas A. Flegel**

**From:** Michael Zeleny <michael@massmeans.com>
**Sent:** Monday, November 27, 2017 2:37 PM
**To:** Nicolas A. Flegel
**Cc:** Toews, Ivan J; Harada, Jelena V; William L. McClure; Bertini, David C; McIntyre, Alex D; Subrah Iyar; Scott Sandell; dwa@agzlaw.com
**Subject:** [BULK] Re: Notice re Menlo Park City Council Decision

Dear Mr Flegel,

Thank you for conceding that the exemptions to California Penal Code §§ 25400, 26350, and 26400, as found in §§ 25510, 26350, and 26405, allow me to possess unloaded guns to the extent that I am using them as part of a film production. Please note that the aforementioned statutes in no way require that said film production must proceed subject to a permit from any authority whatsoever. Please note as well that the same exemptions apply to authorized participants in an entertainment event, whether or not that event is recognized as such by any official body. In short, the statutory exemptions apply whether or not the City recognizes or authorizes me as an entertainer or a filmmaker. A failure to obtain such recognition or authorization would not expose me, or any other participant in my entertainment event or film production that I choose to authorize, to sanctions under P.C. §§ 25400, 26350, and 26400 for possessing unloaded guns, to the extent that we are using them as part of my event or a production.

This point brings us to your ongoing attempt at content regulation. In *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85 (1977), the U.S. Supreme Court has ruled that "laws regulating the time, place or manner of speech stand on a different footing than laws prohibiting speech altogether". Time, place, and manner restrictions on speech are constitutional if (1) they are content neutral; (2) they are narrowly tailored to serve a governmental interest; and (3) they leave open ample alternative means of expression. As to the last criterion, my proposed expression allows for no alternative means outside of the immediate vicinity of the individual and corporate sponsors and enablers of daughter rapist Min Zhu. If I cannot designate their lair by ostension, my intent to expose them fails. Hence the proposed location of my performance, on grounds that in no way encumber or disrupt automotive or pedestrian traffic. As stated before, the location I propose the exact same one I used in my previous appearance. Given that it was acceptable to the City then, the burden falls on you to explain your reasons for deeming it otherwise now, should you choose to do so.

Staying within the bounds of content neutrality, you have no authority to question my choice of collaborators or deployment of equipment, provided that I break no laws in either matter. Nor do you have the authority to hold forth on what "would in any way be necessary for [my] film production". Outside of exigent circumstances, my necessity is none of your business. Pursuant to the aforementioned statutes, your authority begins and ends at ensuring that my firearms remain unloaded. According to *People v. Clark* (1996), 45 Cal. App. 4th 1147, 53 Cal. Rptr. 2d 99, a firearm is loaded within the relevant meaning, if and only if it has a shell placed in a position ready to be fired. There remains a question whether a firearm with an empty firing chamber, and a detachable magazine that contains rounds inserted into its magazine well, counts as loaded. Thus the California Fish and Game Code § 2006 deems a rifle or shotgun to be loaded "when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine". If we can resolve this matter short of litigation, I am willing to compromise by keeping loaded magazines outside of magazine wells. If not, not.

Lastly, to answer your most fanciful concerns, I do not intend to brandish weapons at passing motorists, pedestrians, and cyclists, let alone reenact any of the numerous mass shootings around the country. As we discuss my compliance with the City ordinances, absent any evidence or indications to the contrary, you would do well to assume that I have no intent to commit any felonies or misdemeanors.

Thanks again for your prompt attention to this matter. I look forward to resolving it in time to rid your community of individual and corporate sponsors and enablers of incestuous child rape over the coming holidays.

—
Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Wed, Nov 22, 2017 at 4:04 PM, Nicolas A. Flegel <naf@jsmf.com> wrote:

Dear Mr. Zeleny,

Because you have requested a response to a legal issue, I am responding to your emails of November 9th and November 13th. I am responding to the legal issue you have raised, as well as requesting additional detail from you so we can consider your application. With respect to the legal question, I have analyzed Penal Code Sections 25400, 26350 and 26400, and the corresponding exemptions for filming events found in Sections 25510, 26350, and 26405. It is my opinion that once you obtain a film permit from the City, you will be allowed to possess an unloaded gun(s) to the extent you are using it as part of the film production. The City is willing to work with you in coming to agreeable terms for the filming to take place, so please do not take the approach that a denial of your application is in anyway predetermined. However we need additional information from you so that the City is comfortable in its understanding of what you are proposing and so the City can be satisfied that it will be done in a way that is safe and acceptable.

With respect to specifics, please respond to the below questions as fully as possible to avoid the need for more back and forth. If what is being requested is unclear, please let me know and I can try to clarify or staff can clarify.

a. Site Set-up: Please confirm where you plan to place the different items (generator, projector, cameras, guns you intend to use as part of your film, and anything else you intend to have on the site); we need to understand exactly where you plan to place the items. A diagram will be very helpful to analyze the site set-up.

b. Participants: Please provide the names of the participants or crew that will be part of the filming and his or her role (including cameramen).

c. Cameraman: Please provide detail on where the cameraman or cameramen will be positioned.

d. Display: Please provide more detail on where you plan to place the video display, which direction the display will face (i.e. towards traffic, towards the businesses on the south side of the road, etc. ?) so staff can analyze for safety/traffic control purposes.

i. Please confirm the expected brightness of the display so staff can analyze for safety/traffic control purposes.

ii. Please confirm exactly what image or images you intend to show on the display so staff can analyze for safety/traffic control purposes.

e. Use of Guns in Film: You indicate you intend to use guns as part of the production. Please list the types of guns, serial numbers, who will be supplying them to you, how they will be used as part of the production, etc.

# Exhibit L

**Nicolas A. Flegel**

**From:** Nicolas A. Flegel
**Sent:** Thursday, December 07, 2017 4:08 PM
**To:** Michael Zeleny
**Cc:** Toews, Ivan J; Harada, Jelena V; William L. McClure; Bertini, David C; McIntyre, Alex D; Subrah Iyar; Scott Sandell; dwa@agzlaw.com
**Subject:** RE: [BULK] Re: Notice re Menlo Park City Council Decision

Dear Mr. Zeleny,

I am writing in response to your email of November 27th. In response to the first paragraph of your email, please be aware that the City of Menlo Park requires a special event permit if you are proposing to put on an entertainment event on public property or requires a film permit if you intend to put on a film production on public property. Without a special event permit or a film permit, it is inappropriate and illegal for you to possess guns as part of your entertainment event/film production. To remind you, you initially sought a Special Events Permit per your email in July 2015, proposing to put on an entertainment event in the median strip of Sand Hill Road near the entrances and exits of Interstate 280. That application was denied by staff and ultimately the City Manager, and the reasons for the denial were outlined in the letter dated September 12, 2016, signed by City Manager Alex D. McIntyre.

You appealed the City Manager's denial of your application to the City Council, which upheld the City Manager's decision. You received notice from the City Clerk on September 5, 2017, confirming that on August 29, 2017, the Menlo Park City Council upheld staff's administrative decision to deny your Special Events Permit application. That letter notified you that any challenge to the council's decision in the appropriate court of competent jurisdiction must be made within ninety (90) days of August 29, 2017, pursuant to California Code of Civil Procedure Section 1094.6, unless a shorter time is required by State or Federal law, and that if you believed the City Council's decision involved speech or expressive conduct entitled to protection by the First Amendment, any petition must have been served on the City of Menlo Park no later than twenty-one (21) calendar days following the City Council's decision of August 29, 2017, pursuant to California Code of Civil Procedure Section 1094.8.

Thereafter, on September 7th, you sent an email asking if your special event application could be reconsidered as a film permit. You were informed you could proceed with a film permit application, and you elected to proceed with a film permit application, which you submitted on October 6, 2017. It is your film permit application that is before us now. Staff, and then I, responded to your film permit application as we are attempting to process your application and trying to work with you in good faith to understand what you are proposing so you can put on your film production. However, this requires that the City is satisfied that filming occur in a safe and acceptable way. As I noted before, your application is an unusual one, and implicates numerous public safety considerations due to the props you have indicated you want to use while filming alongside a busy arterial roadway.

With respect to your second paragraph, at no time has the City of Menlo Park tried to regulate your content. If you wish to protest/promote a message regarding New Enterprises Associates, the City has no stance on that issue. However, it is essential that the City understand what event or film you are trying to put on so it can determine what if any impacts must be considered for traffic control and public safety. To that end, it is necessary for you to respond to the specific questions I posed to you in my email dated November 22, 2017, i.e. understanding information regarding the site set-up, participants, cameraman, display to be utilized, etc. Again, this is crucial for staff to have this information in order to analyze the impacts on the public right of way, traffic control, and public safety issues. This is why we have applicants submit film applications; so these details can be reviewed and a plan put in place. To that end, thank you for confirming that you will not be brandishing weapons at passing motorists, pedestrians or cyclists in order to incite a reaction.

At this point your application is incomplete because the City cannot analyze the public safety concerns, and if you wish to proceed with the film permit application please respond in detail to my email of November 22nd. If your goal, however, as stated in your email is to "rid your community of individual and corporate sponsors and enablers of incestuous child rape over the coming holidays," you may lawfully protest along Sand Hill Road without guns, as staff and the City Council informed you. Thank you for your attention to this matter.

Nicolas A. Flegel
Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025
Tel: (650) 324-9300
Fax: (650) 324-0227

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Monday, November 27, 2017 2:37 PM
**To:** Nicolas A. Flegel <naf@jsmf.com>
**Cc:** Toews, Ivan J <IJToews@menlopark.org>; Harada, Jelena V <jvharada@menlopark.org>; William L. McClure <wlm@jsmf.com>; Bertini, David C <dcbertini@menlopark.org>; McIntyre, Alex D <admcintyre@menlopark.org>; Subrah Iyar <Subrah.Iyar@webex.com>; Scott Sandell <ssandell@nea.com>; dwa@agzlaw.com
**Subject:** [BULK] Re: Notice re Menlo Park City Council Decision

Dear Mr Flegel,

Thank you for conceding that the exemptions to California Penal Code §§ 25400, 26350, and 26400, as found in §§ 25510, 26350, and 26405, allow me to possess unloaded guns to the extent that I am using them as part of a film production. Please note that the aforementioned statutes in no way require that said film production must proceed subject to a permit from any authority whatsoever. Please note as well that the same exemptions apply to authorized participants in an entertainment event, whether or not that event is recognized as such by any official body. In short, the statutory exemptions apply whether or not the City recognizes or authorizes me as an entertainer or a filmmaker. A failure to obtain such recognition or authorization would not expose me, or any other participant in my entertainment event or film production that I choose to authorize, to sanctions under P.C. §§ 25400, 26350, and 26400 for possessing unloaded guns, to the extent that we are using them as part of my event or a production.

This point brings us to your ongoing attempt at content regulation. In *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85 (1977), the U.S. Supreme Court has ruled that "laws regulating the time, place or manner of speech stand on a different footing than laws prohibiting speech altogether". Time, place, and manner restrictions on speech are constitutional if (1) they are content neutral; (2) they are narrowly tailored to serve a governmental interest; and (3) they leave open ample alternative means of expression. As to the last criterion, my proposed expression allows for no alternative means outside of the immediate vicinity of the individual and corporate sponsors and enablers of daughter rapist Min Zhu. If I cannot designate their lair by ostension, my intent to expose them fails. Hence the proposed location of my performance, on grounds that in no way encumber or disrupt automotive or pedestrian traffic. As stated before, the location I propose the exact same one I used in my previous appearance. Given that it was acceptable to the City then, the burden falls on you to explain your reasons for deeming it otherwise now, should you choose to do so.

Staying within the bounds of content neutrality, you have no authority to question my choice of collaborators or deployment of equipment, provided that I break no laws in either matter. Nor do you have the authority to hold forth on what "would in any way be necessary for [my] film production". Outside of exigent circumstances, my necessity is none of your business. Pursuant to the aforementioned statutes, your authority begins and ends at

# Exhibit M

**Nicolas A. Flegel**

**From:** Michael Zeleny <michael@massmeans.com>
**Sent:** Friday, December 08, 2017 3:34 PM
**To:** Nicolas A. Flegel
**Cc:** Toews, Ivan J; Harada, Jelena V; William L. McClure; Bertini, David C; McIntyre, Alex D; Subrah Iyar; Scott Sandell; dwa@agzlaw.com
**Subject:** Re: [BULK] Re: Notice re Menlo Park City Council Decision

Dear Mr Flegel,

Your latest missive represents an unfortunate retrenchment in gross misstatement of applicable state law. As repeatedly noted to date, the exemptions to California Penal Code §§ 25400, 26350, and 26400, as found in its §§ 25510, 26350, and 26405, allow me to possess unloaded guns to the extent that I am using them as part of a film production or an entertainment event. Given that said exemptions nowise rely on the existence of special event permits or film permits, your conclusion that in the absence thereof "it is inappropriate and illegal for [me] to possess guns as part of [my] entertainment event/film production", remains bereft of any basis in the referenced law. Please take note, and advise your clients, that *ad hoc* business regulations propounded by the City of Menlo Park, are powerless to trump clearly established law.

In this connection, please recall that qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, only "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (See *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).) The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law". (See *Malley v. Briggs*, 465 U.S. 335 (1986).) Thus, even allowing along with Johann Wolfgang von Goethe, "that misunderstandings and neglect occasion more mischief in the world than even malice and wickedness", cannot relieve your clients of liability for infringing my rights, be it due to your negligence or their malice.

Please take note also of precedents establishing that, in a sufficiently "obvious" case of constitutional misconduct, the courts do not require a precise factual analogue in judicial precedents. Thus *Brosseau v. Haugen*, 543 U.S. 194 (2004) (*per curiam*): "[I]n an obvious case, [highly generalized] standards can 'clearly establish' the answer, even without a body of relevant case law." Likewise *United States v. Lanier*, 520 U.S. 259 (1997): "[I]n [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." Once again, I urge you to take note of *Branzburg v. Hayes*, 408 U.S. 665 (1972): "Liberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods." *Mutatis mutandis*, the statutory exemptions referenced above would apply even to the case of a would-be entertainer qualified as such only by donning a red clown nose, or a would-be fillmmaker equipped for his task with nothing but a GoPro camera.

This exchange is meant in part to give notice of the relevant law to the City of Menlo Park. To achieve that kind of notice, the prior precedent must be "controlling"—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction. (See *Wilson v. Layne*, 526 U.S. 603 (1999).) In this regard, a new Ninth Circuit ruling in *Epona, LLC v. County of Ventura*, ___ F. 3d ___ (9th Cir. 2017), is of particular relevance to your ongoing attempts to play for time:

> A property owner seeking to profit from facilitating and providing a commercial space for weddings was a wedding "vendor" with standing to bring a facial First Amendment challenge a county zoning ordinance requiring it to obtain a conditional use permit to use its property for weddings. The zoning ordinance--which imposed no definite standards on permit decisions nor any limitation on the time period within which a permit must be approved--provided unbridled discretion on permitting officials in violation of the First Amendment.

To apply the principle articulated herein to the matter at hand, the onus always already falls on the City to articulate definite standards for its permit decisions, and identify a limitation on the time period within which it must approve or deny a permit. And to belabor a point repeatedly articulated in prior hearings and emails, the City has no right to vet the camera crew in film productions or participants in entertainment events taking place within its jurisdiction, as such vetting would be tantamount to impermissible content regulation. Please refer to my email dated November 9 for exhaustive technical details that identify the display to be utilized, and so on. As for further specifics of the proposed site

set-up, I am willing to make reasonable accommodations to the City's requirements related to the public right of way, traffic control, and public safety issues, as soon as it takes the trouble to articulate them. To spell out what should be obvious by now, in light of the foregoing case law, the City's ongoing attempt to make up its rules as we go along amounts to an unlawful arrogation of unbridled discretion in violation of my rights under the First Amendment. Please refrain from further dithering and stalling. Justice delayed is justice denied.

—

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Thu, Dec 7, 2017 at 4:07 PM, Nicolas A. Flegel <naf@jsmf.com> wrote:

Dear Mr. Zeleny,

I am writing in response to your email of November 27th. In response to the first paragraph of your email, please be aware that the City of Menlo Park requires a special event permit if you are proposing to put on an entertainment event on public property or requires a film permit if you intend to put on a film production on public property. Without a special event permit or a film permit, it is inappropriate and illegal for you to possess guns as part of your entertainment event/film production. To remind you, you initially sought a Special Events Permit per your email in July 2015, proposing to put on an entertainment event in the median strip of Sand Hill Road near the entrances and exits of Interstate 280. That application was denied by staff and ultimately the City Manager, and the reasons for the denial were outlined in the letter dated September 12, 2016, signed by City Manager Alex D. McIntyre.

You appealed the City Manager's denial of your application to the City Council, which upheld the City Manager's decision. You received notice from the City Clerk on September 5, 2017, confirming that on August 29, 2017, the Menlo Park City Council upheld staff's administrative decision to deny your Special Events Permit application. That letter notified you that any challenge to the council's decision in the appropriate court of competent jurisdiction must be made within ninety (90) days of August 29, 2017, pursuant to California Code of Civil Procedure Section 1094.6, unless a shorter time is required by State or Federal law, and that if you believed the City Council's decision involved speech or expressive conduct entitled to protection by the First Amendment, any petition must have been served on the City of Menlo Park no later than twenty-one (21) calendar days following the City Council's decision of August 29, 2017, pursuant to California Code of Civil Procedure Section 1094.8.

Thereafter, on September 7th, you sent an email asking if your special event application could be reconsidered as a film permit. You were informed you could proceed with a film permit application, and you elected to proceed with a film permit application, which you submitted on October 6, 2017. It is your film permit application that is before us now. Staff, and then I, responded to your film permit application as we are attempting to process your application and trying to work with you in good faith to understand what you are proposing so you can put on your film production. However, this requires that the City is satisfied that filming occur in a safe and acceptable way. As I noted before, your application is an unusual one, and implicates numerous public safety considerations due to the props you have indicated you want to use while filming alongside a busy arterial roadway.

With respect to your second paragraph, at no time has the City of Menlo Park tried to regulate your content. If you wish to protest/promote a message regarding New Enterprises Associates, the City has no stance on that issue. However, it is essential that the City understand what event or film you are trying to put on so it can determine what if any impacts must be considered for traffic control and public safety. To that end, it is necessary for you to respond to the specific questions I posed to you in my email dated November 22, 2017, i.e. understanding information regarding the site set-up, participants, cameraman, display to be utilized, etc. Again, this is crucial for staff to have this

# Exhibit N

**Nicolas A. Flegel**

**From:** Michael Zeleny <michael@massmeans.com>
**Sent:** Wednesday, December 20, 2017 5:22 PM
**To:** Nicolas A. Flegel
**Cc:** Toews, Ivan J; Harada, Jelena V; William L. McClure; Bertini, David C; McIntyre, Alex D; Subrah Iyar; Scott Sandell; info@greenbayventures.com; dwa@agzlaw.com
**Subject:** Re: [BULK] Re: Notice re Menlo Park City Council Decision

Dear Mr Flegel,

As I put you on notice in my last email twelve days ago, your ongoing dithering and stalling amounts to a violation of my Constitutional rights. I am giving your municipal clients and their corporate sponsors one last opportunity to minimize their losses before we escalate this matter to civil rights litigation under 42 U.S. Code § 1983.

As a reminder, in the course of litigating *NEA v. Zeleny*, San Mateo Superior Court Case No. CIV 499465, New Enterprise Associates (NEA), the Menlo Park establishment that modestly bills itself in court filings as "the largest VC firm in the country", acknowledged its timely receipt of evidence of Min Zhu's history as an incestuous child rapist, which I forwarded to them following his forced resignation as WebEx President and Director and flight from the United States. As noted by numerous industry analysts, Min Zhu's downfall took place in the wake of my exposure of his sex crimes at WebEx User Conference in San Francisco on 2 May 2005. In spite of this disclosure, in September 2005, Scott Sandell of NEA co-founded Northern Light, a venture capital fund in China, in partnership with freshly disgraced, degraded, and exiled Min Zhu, and in full knowledge of accusations that his partner's daughter Erin Zhu had made against her father, in Usenet postings and a sworn deposition.

https://groups.google.com/forum/#!search/erin$20zhu$20sexual$20abuse
https://youtu.be/QgmWMGG3qgE

And in January of 2008, C. Richard "Dick" Kramlich, NEA's Chairman and Co-Founder, moved to Shanghai in order to collaborate with Min Zhu, buttressing its knowing endorsement of incestuous child rape and generous sponsorship of its perpetrator.

As you know, or ought to know, federal court filings are subject to continual scrutiny by the media. I am presenting you with an opportunity to estimate the public prospects of our impending judicial conversation concerning NEA's knowing choice to entrust vast amounts of investment capital to a man who repeatedly and unrepentantly raped his fourteen-year-old daughter. In my estimation, they will far exceed the ongoing catastrophic fallout from sexual favors extorted on Hollywood casting couches, never mind the charges of unwelcome grab-assing and off-color innuendo putting paid to countless distinguished careers from the United States Congress to the United States Court of Appeals for the Ninth Circuit.

As a merciful alternative to this blowback, I offer you a one-time opportunity to minimize collateral damage to your clients' community and its corporate citizens and neighbors. I am prepared to shut down my campaign in exchange for a public apology from Subrah Iyar, Scott Sandell, and Dick Kramlich, to include their permanent withdrawal from all active participation in domestic and international business. This offer stands till we file our complaint on Friday, December 22. Many more heads will roll in its wake. Choose wisely.

—
Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com

7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Fri, Dec 8, 2017 at 3:33 PM, Michael Zeleny <michael@massmeans.com> wrote:

Dear Mr Flegel,

Your latest missive represents an unfortunate retrenchment in gross misstatement of applicable state law. As repeatedly noted to date, the exemptions to California Penal Code §§ 25400, 26350, and 26400, as found in its §§ 25510, 26350, and 26405, allow me to possess unloaded guns to the extent that I am using them as part of a film production or an entertainment event. Given that said exemptions nowise rely on the existence of special event permits or film permits, your conclusion that in the absence thereof "it is inappropriate and illegal for [me] to possess guns as part of [my] entertainment event/film production", remains bereft of any basis in the referenced law. Please take note, and advise your clients, that *ad hoc* business regulations propounded by the City of Menlo Park, are powerless to trump clearly established law.

In this connection, please recall that qualified immunity affords limited protection to public officials faced with liability under 42 U.S.C. § 1983, only "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (See *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).) The qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law". (See *Malley v. Briggs*, 465 U.S. 335 (1986).) Thus, even allowing along with Johann Wolfgang von Goethe, "that misunderstandings and neglect occasion more mischief in the world than even malice and wickedness", cannot relieve your clients of liability for infringing my rights, be it due to your negligence or their malice.

Please take note also of precedents establishing that, in a sufficiently "obvious" case of constitutional misconduct, the courts do not require a precise factual analogue in judicial precedents. Thus *Brosseau v. Haugen*, 543 U.S. 194 (2004) (*per curiam*): "[I]n an obvious case, [highly generalized] standards can 'clearly establish' the answer, even without a body of relevant case law." Likewise *United States v. Lanier*, 520 U.S. 259 (1997): "[I]n [some] instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." Once again, I urge you to take note of *Branzburg v. Hayes*, 408 U.S. 665 (1972): "Liberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods." *Mutatis mutandis*, the statutory exemptions referenced above would apply even to the case of a would-be entertainer qualified as such only by donning a red clown nose, or a would-be fillmmaker equipped for his task with nothing but a GoPro camera.

This exchange is meant in part to give notice of the relevant law to the City of Menlo Park. To achieve that kind of notice, the prior precedent must be "controlling"—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction. (See *Wilson v. Layne*, 526 U.S. 603 (1999).) In this regard, a new Ninth Circuit ruling in *Epona, LLC v. County of Ventura*, ___ F. 3d ___ (9th Cir. 2017), is of particular relevance to your ongoing attempts to play for time:

> A property owner seeking to profit from facilitating and providing a commercial space for weddings was a wedding "vendor" with standing to bring a facial First Amendment challenge a county zoning ordinance requiring it to obtain a conditional use permit to use its property for weddings. The zoning ordinance--which imposed no definite standards on permit decisions nor any limitation on the time period within which a permit must be approved--provided unbridled discretion on permitting officials in violation of the First Amendment.

To apply the principle articulated herein to the matter at hand, the onus always already falls on the City to articulate definite standards for its permit decisions, and identify a limitation on the time period within which it must approve or deny a permit. And to belabor a point repeatedly articulated in prior hearings and emails, the City has no right to vet the camera crew in film productions or participants in entertainment events taking place within its jurisdiction, as such vetting would be tantamount to impermissible content regulation. Please refer to my email dated November 9 for exhaustive technical details that identify the display to be utilized, and so on. As for further specifics of the proposed site set-up, I am willing to make reasonable accommodations to the City's requirements related to the public right of way, traffic control, and public safety issues, as soon as it takes the trouble to articulate them. To spell out what should be obvious by now, in light of the foregoing case law, the City's ongoing attempt to make up its rules as we go along amounts to an unlawful arrogation of unbridled discretion in violation of my rights under the First Amendment. Please refrain from further dithering and stalling. Justice delayed is justice denied.

# Exhibit O

**Nicolas A. Flegel**

**From:** Nicolas A. Flegel
**Sent:** Thursday, December 21, 2017 10:38 AM
**To:** Michael Zeleny
**Cc:** Toews, Ivan J; Harada, Jelena V; William L. McClure; Bertini, David C; McIntyre, Alex D; Subrah Iyar; Scott Sandell; info@greenbayventures.com; dwa@agzlaw.com
**Subject:** RE: [BULK] Re: Notice re Menlo Park City Council Decision
**Attachments:** Filming Permit Conditions.doc

Dear Mr. Zeleny,

In response to your emails dated December 8, 2017 and December 20, 2017, if you wish to proceed with the film permit application you have submitted, please provide the information we have requested which are conditions of the permit application. Your application is currently incomplete. I am re-listing the questions that you have not yet answered that the City is requesting (these were listed in my email of November 22, 2017). Again, please respond to the below questions as fully as possible. If what is being requested is unclear, please let me know and I can try to clarify or staff can clarify.

a. Site Set-up: Please confirm where you plan to place the different items (generator, projector, cameras, guns you intend to use as part of your film, and anything else you intend to have on the site); we need to understand exactly where you plan to place the items. A diagram will be very helpful to analyze the site set-up.

b. Participants: Please let us know how many people you expect to be on the site (this is not to vet any camera crew- just to understand how many participants you are expecting to use/have on the site).

c. Cameraman: Please provide detail on where the cameraman or cameramen will be positioned.

d. Display: Please provide more detail on where you plan to place the video display, which direction the display will face (i.e. towards traffic, towards the businesses on the south side of the road, etc. ?) so staff can analyze for safety/traffic control purposes.

i. Please confirm the expected brightness of the display so staff can analyze for safety/traffic control purposes.

ii. Please confirm exactly what image or images you intend to show on the display so staff can analyze for safety/traffic control purposes.

e. Use of Guns in Film: You indicate you intend to use guns as part of the production. Please provide more detail on where you plan to place the weapons and what direction you intend to face them during the production so staff can analyze for safety/traffic control purposes. In your email of October 6th, you state that you intend to focus "on public reactions to my display." Please clarify what you mean by this so staff can analyze for safety/traffic control purposes.

f. Staging: Please provide more detail on what areas you plan to use for staging. As set forth above, a diagram will be helpful in this respect for staff's consideration.

g. Loaded Ammunition: You indicate that you intend to have "loaded ammunition feeding devices" with you. Please describe what this means and provide pictures of what props you are proposing to use and confirm you will be using them for film production.

h. Notice: The notice you have drafted to neighboring properties will need to be re-written. Staff can work with you on what would be an appropriate notice.

i. Business license and insurance: Please obtain a business license and insurance, which are conditions of the film permit application (I am attaching the City's conditions again for your review).

The City is working with you in good faith, and asks that you likewise work with the City in good faith. It is essential that the City understand what you are trying to put on so it can determine what if any impacts must be considered for traffic control and public safety. It is impossible for the City to discuss reasonable accommodations with you when you have not provided the basic information required by the application. Please do respond to the above flagged questions at your convenience.

With respect to the legal issue you have raised, I do not agree with your assessment that the statutory exemptions would apply if you simply wore a red clown nose or wore a go-pro camera. Regardless, what the City understands is before it is your film permit application, and at this point it is incomplete until you comply with the permit conditions. And furthermore, I want to be clear that the City does intend to grant your film permit, but needs the information requested to determine what conditions are necessary for safety/traffic control purposes. But again, to date your application is incomplete, and it is your failure to provide this requested information that is causing the delay. You have stated in your emails that you are willing to work with the City with respect to traffic control and public safety issues, and we are articulating exactly the information required. Thank you for your attention to this matter and hope you have a nice holidays.

Nicolas A. Flegel
Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025
Tel: (650) 324-9300
Fax: (650) 324-0227

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Wednesday, December 20, 2017 5:22 PM
**To:** Nicolas A. Flegel <naf@jsmf.com>
**Cc:** Toews, Ivan J <IJToews@menlopark.org>; Harada, Jelena V <jvharada@menlopark.org>; William L. McClure <wlm@jsmf.com>; Bertini, David C <dcbertini@menlopark.org>; McIntyre, Alex D <admcintyre@menlopark.org>; Subrah Iyar <Subrah.Iyar@webex.com>; Scott Sandell <ssandell@nea.com>; info@greenbayventures.com; dwa@agzlaw.com
**Subject:** Re: [BULK] Re: Notice re Menlo Park City Council Decision

Dear Mr Flegel,

As I put you on notice in my last email twelve days ago, your ongoing dithering and stalling amounts to a violation of my Constitutional rights. I am giving your municipal clients and their corporate sponsors one last opportunity to minimize their losses before we escalate this matter to civil rights litigation under 42 U.S. Code § 1983.

As a reminder, in the course of litigating *NEA v. Zeleny*, San Mateo Superior Court Case No. CIV 499465, New Enterprise Associates (NEA), the Menlo Park establishment that modestly bills itself in court filings as "the

# Exhibit P

**Nicolas A. Flegel**

**From:** Michael Zeleny <michael@massmeans.com>
**Sent:** Thursday, December 21, 2017 3:07 PM
**To:** Nicolas A. Flegel
**Cc:** Toews, Ivan J; Harada, Jelena V; William L. McClure; Bertini, David C; McIntyre, Alex D; Subrah Iyar; Scott Sandell; info@greenbayventures.com; dwa@agzlaw.com
**Subject:** Re: [BULK] Re: Notice re Menlo Park City Council Decision

Dear Mr Flegel,

Thank you for your response and your concession that the City has no legitimate authority to vet the participants in my film production. As stated in previous correspondence, it will be personally and continually attended by me in the vicinity of 2825 Sand Hill Road from 08:00 till 18:00 every weekday, supported by staff limited to one personal assistant and one cinematographer. Concerning the specific arrangements, previously cited recent Ninth Circuit ruling in *Epona, LLC v. County of Ventura*, unequivocally requires the City to impose definite standards on its permit decisions, and identify a limitation on the time period within which a permit must be approved. Please refrain from further requests to ensure my compliance with rules that your clients make up as we go along. As stated in my email of December 8, I am willing to make reasonable accommodations to the City's requirements related to the public right of way, traffic control, and public safety issues, as soon as it takes the trouble to articulate them. In failing to disclose any specific requirements of this kind, your responses to date have amounted to dawdling and stalling in contravention of my Constitutional rights.

As previously explained, I am not operating a commercial film production. Accordingly, your requirement that it be licensed and insured as a business is inapposite. In this connection, your disagreement with my assessment that the statutory exemptions for entertainment events and film and video productions to the ban on openly carried firearms would apply if my entertainment event were limited to wearing a red clown nose, or my film production were limited to wearing a GoPro camera, runs counter to law clearly established in *Branzburg v. Hayes*. The City's attempt to withhold from my amateur media production the legal accommodations that it offers to commercial enterprises, is a clear instance of impermissible content-based regulation of protected speech.

—
Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Thu, Dec 21, 2017 at 10:37 AM, Nicolas A. Flegel <naf@jsmf.com> wrote:

> Dear Mr. Zeleny,
>
> In response to your emails dated December 8, 2017 and December 20, 2017, if you wish to proceed with the film permit application you have submitted, please provide the information we have requested which are conditions of the permit application. Your application is currently incomplete. I am re-listing the questions that you have not yet answered that the City is requesting (these were listed in my email of November 22, 2017). Again, please respond to the below questions as fully as possible. If what is being requested is unclear, please let me know and I can try to clarify or staff can clarify.
>
> a. Site Set-up: Please confirm where you plan to place the different items (generator, projector, cameras, guns you intend to use as part of your film, and anything else you intend to have on the site); we need to understand exactly where you plan to place the items. A diagram will be very helpful to analyze the site set-up.

# Exhibit Q

**Nicolas A. Flegel**

**From:** Nicolas A. Flegel
**Sent:** Friday, December 22, 2017 4:02 PM
**To:** Michael Zeleny
**Cc:** Toews, Ivan J; Harada, Jelena V; William L. McClure; Bertini, David C; McIntyre, Alex D; Subrah Iyar; Scott Sandell; info@greenbayventures.com; dwa@agzlaw.com
**Subject:** RE: [BULK] Re: Notice re Menlo Park City Council Decision
**Attachments:** Filming Permit Conditions.doc

Dear Mr. Zeleny,

We would appreciate it if you would please confirm whether you wish to proceed with your film permit application. Based on your last few emails, it is unclear how you wish to proceed. If you do wish to proceed with the application, please provide the information that is required for your application to be considered complete. The required information was set forth in the film permit condition worksheet, which I believe was first provided to you over two years ago when you first applied for the special event permit, and again when you requested to proceed with a film application in September/October of this year. I am not understanding why you keep saying that we are not articulating what staff requires to process the application, as the conditions are completely transparent. If there is anything you do not understand, staff is happy to work with you to explain the conditions.

As soon as you provide what is required by the permit application, your application will be acted upon within 30 days. The City is not treating you differently than anyone else that desires to film in the public right of way by requiring this basic information and requiring you to obtain insurance, etc. I disagree that the City is "dawdling," instead, you are refusing to complete your application, despite being asked many times to do so. I think you understand, based on your suggesting reasonable accommodations are appropriate, that staff needs this information so that they can analyze your application and grant it with appropriate conditions due to the proposed filming occurring on a very busy roadway.

If you are no longer seeking a permit, that is fine, just please let us know. Again, if you wish to protest at the location, you are free to do so in compliance with City and State law, as explained to you in the City Manager's letter dated September 12, 2016. Thank you for your attention to this matter and hope you have a nice holidays.

Nicolas A. Flegel
Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025
Tel: (650) 324-9300
Fax: (650) 324-0227

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Thursday, December 21, 2017 3:07 PM
**To:** Nicolas A. Flegel <naf@jsmf.com>
**Cc:** Toews, Ivan J <IJToews@menlopark.org>; Harada, Jelena V <jvharada@menlopark.org>; William L. McClure <wlm@jsmf.com>; Bertini, David C <dcbertini@menlopark.org>; McIntyre, Alex D <admcintyre@menlopark.org>; Subrah Iyar <Subrah.Iyar@webex.com>; Scott Sandell <ssandell@nea.com>; info@greenbayventures.com; dwa@agzlaw.com
**Subject:** Re: [BULK] Re: Notice re Menlo Park City Council Decision

# Exhibit R

# Chapter 13.18
# USE OF PUBLIC RIGHTS-OF-WAY

Sections:

**13.18.010 Definitions.**

**13.18.020 Permit required.**

**13.18.030 Permit application.**

**13.18.040 State video franchisee permit application and appeal procedures.**

**13.18.050 Permit effective.**

**13.18.060 Permit fees.**

**13.18.070 Permit expiration and renewal.**

**13.18.080 Repair of damage.**

**13.18.090 Existing utility locations.**

**13.18.100 Liability.**

**13.18.110 Regulations.**

**13.18.120 Street opening, sidewalk, curb and gutter, and driveway permits.**

**13.18.130 Insurance.**

**13.18.140 Deposit or bond.**

**13.18.150 Removal and relocation.**

**13.18.160 Enforcement.**

**13.18.170 Severability.**

## 13.18.010 Definitions.

For the purposes of this chapter, the following terms, phrases, words and their derivations shall have the meaning given in this section.

(1) "Construction Supervisor" means the City inspector for all encroachment permits;

(2) "Director of Public Works" means the Director of Public Works and his/her designee or the person designated by the Director of Public Works to implement and enforce the provisions in this chapter;

(3) "Encroachment" includes any going over, upon, under or using any public right-of-way in such manner as to prevent, obstruct or interfere with its normal use;

(4) "Excavation" means any opening in the surface of a public right-of-way made in any manner whatsoever, except an opening into a lawful structure below the surface of a public right-of-way, the top of which is flush with the adjoining surface and so constructed as to permit frequent opening without injury or damage to the public right-of-way;

(5) "Facility" means pipe, pipeline, tube, main, service, trap, vent, vault, manhole, meter, gauge, regulator, valve, conduit, wire, tower, pole, pole line, anchor, cable, junction box, transformer or any other material, structure or object of any kind or character, whether enumerated herein or not, which is or may be lawfully constructed, left, placed or maintained in, upon, along, across, under or over any public right-of-way;

(6) "Permittee" means any person or entity that proposes to do work or encroach upon a public right-of-way and has been issued a permit for such encroachment;

(7) "Public right-of-way" means all or part of the surface, the air space above the surface, and the area below the surface of the public streets, roads, sidewalks, lanes, courts, ways, alleys, boulevards, and places, including, without limitation, all public utility easements and public service easements as the same now or may thereafter exist that are under the jurisdiction of the City;

(8) "State video franchisee" means any cable operator or video service provider that, pursuant to Division 2.5 of the Public Utilities Code of the State of California, has been granted a state franchise to provide cable or video service by the California Public Utilities Commission and whose video service includes all or part of the City;

(9) "Utility" means all persons or entities supplying water, gas, sewer, electric, communication or similar associated service. (Ord. 957 § 2 (part), 2007).

### 13.18.020 Permit required.

(a) No person shall perform any work, construct any facility, make any excavation or fill any excavation, store materials and/or vehicles in or upon any real property in which the City has an interest, whether by title, easement, right-of-way, license or otherwise, without first obtaining an encroachment permit to do so from the Director of Public Works.

(b) Nothing in this chapter shall prevent any person from constructing, repairing, maintaining, or removing any facility in the public right-of-way as may be necessary for the preservation of life or property when an urgent necessity arises. The person making emergency use of and encroaching upon the public right-of-way shall apply for an encroachment permit within one (1) business day of commencing such use or encroachment.

(c) No encroachment of any kind, which impedes, obstructs or denies pedestrian, vehicular or other lawful travel within the limits of the public right-of-way or which impairs adequate sight-distance or safe pedestrian or vehicular traffic, will be permitted. (Ord. 957 § 2 (part), 2007).

**13.18.030 Permit application.**

No encroachment permit shall be issued unless a written application (on a form provided by the Director of Public Works) for the issuance of an encroachment permit is submitted to the Director of Public Works. The written application shall state the name of the applicant; the name, address, telephone number, and business information for the owner or contractor on behalf of whom the applicant is submitting the application; the location and a description of the work to be done; and the approximate time which will be required to complete such work. When required by the Director of Public Works, the applicant shall enclose with, attach, or add to the permit application a map, plat, sketch, diagram, or similar exhibit of a size and in such a quantity as prescribed by the Director of Public Works, on which shall be plainly shown any and all information necessary to locate, delineate, illustrate, or identify the proposed use or encroachment and the right of the applicant to so use or encroach thereon. (Ord. 957 § 2 (part), 2007).

**13.18.040 State video franchisee permit application and appeal procedures.**

(a) The Director of Public Works shall approve or deny an encroachment permit application by a state video franchisee within sixty (60) days of receiving a completed application. An application for an encroachment permit is complete when the applicant has complied with all applicable requirements of this chapter concerning such application and all other statutory requirements, including the California Environmental Quality Act (Division 13 (commencing with Section 2100) of the Public Resources Code of the state of California).

(b) The time period set forth in subsection (a) may be extended on mutual agreement by the applicant and the City.

(c) If the City denies the application, the Director of Public Works shall, at the time of notifying the applicant of the denial, furnish the applicant a detailed explanation of the reasons for the denial.

(d) Any state video franchisee whose encroachment permit application is denied may, within thirty (30) days of receiving the explanation of the denial required, file an appeal to the City Council. In determining such appeal, the City Council shall consider whether the denial of the encroachment permit is consistent with this chapter and other applicable City, state and federal law. If the City Council denies the state video franchisee's appeal, it shall issue a written decision setting forth the reasons for the denial. The City Council's decision shall be final. (Ord. 957 § 2 (part), 2007).

**13.18.050 Permit effective.**

An encroachment permit, regardless of when dated, shall not be in effect until the applicant has obtained all licenses and other permits required by law and paid the required permit fees. The use of City property by permittee shall be limited to the purposes set forth in the encroachment permit and no structures of any kind, except those expressly permitted, shall be erected or placed thereon. (Ord. 957 § 2 (part), 2007).

**13.18.060 Permit fees.**

Permit fees shall be paid in accordance with the master fee schedule or for actual City staff time, including, without limitation, processing, field marking, engineering, and inspection fees and shall be paid by the applicant prior to the issuance of any encroachment permit. In addition, the City may charge an annual fee for private encroachments for the benefit of maintaining a facility in the public right-of-way. All applicable permit fees, including those for the issuance of a permit and for the benefit of maintaining an encroachment in the public right-of-way, shall be established by resolution of the City Council. (Ord. 957 § 2 (part), 2007).

**13.18.070 Permit expiration and renewal.**

An encroachment permit shall become null and void if work is not commenced within ninety (90) days after the date of application. A permit may be extended or renewed upon request to the Director of Public Works provided no changes have been made from the original conditions for issuance of the original permit. (Ord. 957 § 2 (part), 2007).

**13.18.080 Repair of damage.**

Permittee shall be responsible for any damage to City street pavements, existing utilities, curbs, gutters, sidewalks or to any private property or improvements to the extent attributable to its installation, maintenance, repair or removal of facilities in the public right-of-way. Permittee shall repair, replace and restore in kind any such damaged improvements at its sole expense and with the

approval of City. Any and all site restoration and clean-up shall be done by a licensed and insured contractor. (Ord. 957 § 2 (part), 2007).

**13.18.090 Existing utility locations.**

City shall not be responsible for exact locations or depths of existing utilities or other facilities. (Ord. 957 § 2 (part), 2007).

**13.18.100 Liability.**

Permittee shall be responsible and liable for, and shall hold the City and its commissions, boards, officers, and employees free and harmless from, any and all liens and claims involving personal injury or property damage of any kind due directly, or indirectly, to permittee's operations and use of City's lands. (Ord. 957 § 2 (part), 2007).

**13.18.110 Regulations.**

(a) The construction, operation, maintenance and repair of facilities in the public rights-of-way shall be performed in compliance with all laws and practices affecting such facilities. This shall include, but not be limited to applicable City standards, including safety precautions (warning signs, barricades, lights) and all applicable zoning and safety codes, construction standards, noise regulations, regulations for providing notice to persons that may be affected by such facilities construction, and such directives or additional conditions placed on the encroachment permit by the Director of Public Works governing the time, place and manner in which facilities may be installed in the public rights-of-way, including but not limited to, the following:

(1) Time. Standard hours of construction activities are weekdays between the hours of 8:00 a.m. and 6:00 p.m. Hours of construction may be restricted to greater than or less than the standard hours of construction, as determined by the Director of Public Works.

(2) Materials. Above-ground facilities may be limited to a graffiti-resistant finish material that is easy to clean and is of a neutral color, as determined by the Director of Public Works. Permittees may be required to clean graffiti at their own cost and provide a hotline for the City residents to report graffiti.

(3) Identification Markers. Debris boxes/storage containers may be required to have reflectors so that they can be seen at night. Identification markers may be limited by color and size, for example the Director of Public Works may prohibit orange decals and may limit decals to one inch (1") or less in size.

(4) Landscaping and Location. Permittee may be required to install landscaping to screen any above-ground facilities and to work with the City or adjacent property owners to resolve any

concerns about placement and appearance of above-ground facilities. Permittee will be required to maintain landscaping in neat and orderly condition at all times.

(b)    Any person engaged in the construction, operation, maintenance or repair of facilities in the public rights-of-way shall exercise reasonable care in the performance of all of its activities and shall use commonly accepted methods and devices for preventing failures and accidents that are likely to cause damage, injury, or nuisance to the public or to property.

(c)    A person with facilities in the public right-of-way shall, by a time specified by the Director of Public Works, temporarily disconnect, relocate, or remove when required by the City in exercise of its governmental or proprietary powers by reason of traffic conditions, public safety, public rights-of-way construction and repair, or any other purpose where the work involved would be aided by the removal and relocation of the facilities in the public right-of-way. Collectively, such matters are referred to below as the "public project."

(1)    The Director of Public Works, as applicable, shall provide written notice describing where the public project is to be performed at least one (1) week prior to the deadline by which a person must protect, support, or temporarily disconnect, remove or relocate its facilities in the public right-of-way.

(2)    In an emergency, or where a person's facility in the right-of-way creates or contributes to an imminent danger to health, safety, or property, the City may protect, support, or temporarily disconnect, remove or relocate any and all parts of the person's facility without prior notice and that person shall be responsible to pay the City for the costs incurred. (Ord. 957 § 2 (part), 2007).

**13.18.120 Street opening, sidewalk, curb and gutter, and driveway permits.**
The Construction Supervisor shall be notified at least twenty-four (24) hours prior to beginning excavation work and twenty-four (24) hours prior to each inspection. The number and type of inspections required, and any tests that may be required will be as directed by the Construction Supervisor. (Ord. 957 § 2 (part), 2007).

**13.18.130 Insurance.**
Permittee may be required to file with the City a certificate of insurance showing that the permittee has one million dollars ($1,000,000) in general liability insurance and any other certificates of insurance required by the Director of Public Works as a condition of approval. (Ord. 957 § 2 (part), 2007).

**13.18.140 Deposit or bond.**
The Director of Public Works may require that the application for an encroachment permit be accompanied by a faithful performance bond or a cash deposit in an amount equal to the estimated

cost of the proposed work. (Ord. 957 § 2 (part), 2007).

**13.18.150 Removal and relocation.**

Permittee shall remove or relocate, without cost or expense to the City, any facility when made necessary by any lawful change ingrade, alignment, or width of any street, including, the construction, maintenance, or operation of any other City underground or above-ground facilities. Said removal or relocation shall be completed within ninety (90) days of notification by the City; provided that if removal or relocation cannot reasonably be accomplished within ninety (90) days, then permittee shall commence such removal or relocation within such ninety (90) days and thereafter continue the same diligently until completion thereof. If permittee intends to abandon a facility located above ground in the public right-of-way, permittee must provide written notice of its intention to abandon and must remove the facility within ninety (90) days thereafter. (Ord. 957 § 2 (part), 2007).

**13.18.160 Enforcement.**

The City may either require removal of the unpermitted encroachment or may require the person to obtain an encroachment permit, subject appropriate conditions, and pay all applicable permit fees. In addition, the City may either charge a civil or administrative penalty equal to the amount of the permit fees payable to the City or treat it as a misdemeanor pursuant to Section 1.12.010 of the code. (Ord. 957 § 2 (part), 2007).

**13.18.170 Severability.**

If any section of this chapter, or part hereof, is held by a court of competent jurisdiction in a final judicial action to be void, voidable, or enforceable, such section, or part hereof, shall be deemed severable from the remaining sections of this chapter and shall in no way affect the validity of the remaining sections hereof. (Ord. 957 § 3, 2007).

---

The Menlo Park Municipal Code is current through Ordinance 1073, passed October 6, 2020.

Disclaimer: The city clerk's office has the official version of the Menlo Park Municipal Code. Users should contact the city clerk's office for ordinances passed subsequent to the ordinance cited above.

City Website: https://www.menlopark.org/
City Telephone: (650) 330-6620

Code Publishing Company