# EXHIBIT A – PART 2





Ex. No. 6
Plft.☐ Deft.☑ Pet.☐ Rsp.☐
Wit: *Zeleny*
Date: *3.18.19*
Judy Brennan, CSR #5138



OFFICE OF THE CITY ATTORNEY

1100 ALMA STREET / MENLO PARK, CA  94025 / 650.324.9300 / FAX 650.324.0227

September 21, 2015

VIA EMAIL: michael@massmeans.com

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

Re:   Special Event Permit

Dear Mr. Zeleny:

The City of Menlo Park ("City") is in receipt of your special event permit application submitted on July 10, 2015, to maintain a portable media presentation at the location of "2825 Sand Hill Rd, Menlo Park, CA 94025, at the median strip, per the attached." At this time the City is denying your application on the basis that it is incomplete and does not meet the criteria of a special event.

With respect to the application being incomplete, on July 24, 2015, I previously notified you by email that the application did not include an attachment indicating the specific location of the presentation/event, and requested additional information regarding your use of sound and lighting equipment. You responded by email on July 28, 2015, stating that you would be videotaping your presentation as part of a feature documentary and entertainment event. You again responded that the event will occur in the "median strip" and indicated the location to be the strip "directly across NEA headquarters," but you declined to provide any more detail at the time. The problem is that your application still does not indicate the exact location of the proposed event and how the presentation will be set up so that the City can analyze whether traffic control will be necessary or what other conditions might be necessary as part of the approval of the application nor the hours/length of the event. For example, there is no indication where you intend to place your tent, generator, video presentation, portable rest room, temporary lighting, sound system, etc. Further, you have stated there is no end time for the event and that the total hours are "indefinite."

With respect to the application not meeting the criteria for a special event, what you have set forth in your application is not an event that meets the City's definition of a special event. For example, the proposed event application states that it will not exceed 150 people, use any City street or right of way (even though the

Printed on recycled paper   N:\DATA\Clients\MMP\Admin\Misc\ZelenyM-1.lrt.wpd

MP000352

Michael Zeleny
September 21, 2015 - Page 2

median is part of the right of way), require lane closures, require parking needs, generate a crowd of spectators, nor does it state that this is a community type event. To the contrary, you are proposing a "media production" of a one-man protest. If what you are actually intending is the filming of a movie, then the City has an application process, for which a film production permit is required. A copy of the City's "Film Production In Menlo Park" document is attached for your review.

Lastly, the City is concerned that what you are proposing to perform in the median strip between opposing lanes of traffic would be a violation of the Vehicle Code if it causes a visual impairment or visual distraction to oncoming traffic and vehicles traveling on Sand Hill Road. It would also likely be a safety hazard/danger to drivers on Sand Hill Road due to the rate of speed on the roadway and the proximity to Interstate 280. The median strip is too narrow to accommodate the film project as you have described in the application. Another concern is that it is illegal to open carry a firearm in the State of California. As you've described the proposed event, there does not appear to be any logical nexus or legitimate purpose of carrying a firearm.

Inasmuch as your application is incomplete and does not meet the definition of a special event, your application for a special event permit is denied.

If you wish to appeal this denial of your application, you must appeal the denial to the City's Special Event Permit Committee. I would ask that you notify me and Community Services Director Matt Milde at mlmilde@menlopark.org if you wish to seek an appeal.

Sincerely,

William L. McClure,
City Attorney

WLM:rr

Enclosure

cc:    Via email only:
       Dave Bertini, Commander
       Matt Milde

### Film Production in Menlo Park

Film production in the City of Menlo Park must comply with following conditions:

1. Permittee shall submit in writing all pertinent details regarding the filming including the date(s) and times of the filming including time needed for set-up and take down; a description of the nature of the filming; the location of the filming; a list of all equipment involved in the filming, including cars and other vehicles; the proposed location for the parking and storage of all such vehicles and equipment; the number of cast and crew members involved in the filming; and an indication of any special needs, such as amplified noise, etc. If granted, the permit's approval will be confined to such activities, locations and time schedules as submitted and approved.

2. Three days prior to the beginning of filming, permittee shall provide written notice to residents and businesses within 200 feet of the proposed filming.

3. Permittee shall obey all City Ordinances, rules and the guidance of City supervisory employees pertaining to the use of City property, including the location, parking and storage of vehicles and equipment, crowd and traffic control, and the restoration of premises to their original condition after use for filming purposes.

4. Permittee will comply with the City of Menlo Park noise ordinance. Filming will be limited to the hours between 8:00 a.m. and 6:00 p.m. and will result in low to no noise levels. The use of any explosive, fireworks, or pyrotechnic devices is strictly prohibited.

5. Permittee shall make arrangements for traffic control satisfactory to the Menlo Park Police Department prior to filming on City streets and in other public areas. Permittee will be charged to recover the cost of traffic control provided by the City. Permittee will legally park vehicles and will not require street closure or traffic control other than what is approved.

6. Permittee shall covenant and agree to indemnify and hold harmless the City from any and all loss, cost, damages and expenses of any kind, including attorney fees, on account of personal injury or property damage resulting from any activity of Permittee on municipal property or in connection with its use of municipal property.

7. Liability insurance in no way limits the indemnity agreement above, Permittee will furnish the City a Certificate of Liability Insurance acceptable to its Risk Management office showing combined single limit coverage for bodily injury and property damage, or the equivalent of such coverage, not less than $1 million. The City, including its officials, employees and agents, shall be named as additional insured in the Liability Policy. Contractual liability coverage insuring the obligations of this Agreement is also required. The insurance may not be canceled or substantially modified without ten (10) days written notice to the City Manager's Office.

MP000354

8. Permittee shall pay, with a valid check, money order, credit card or cashier's check, a filming permit application fee of $150.00 in addition to the daily permit fees of $50 per day for still photography and short subject, $100 per day for industrials, and $150 per day for features, TV, music videos and commercials.

9. Permittee shall apply for a one-time Business License and pay, with a valid check, money order, credit card or cashiers check.   See **Guide to Annual Business Licensee Fee Calculation** for the fee schedule.

10. Permittee will adhere to the provisions and conditions set forth in the permit.  If Menlo Park Police Department or other City personnel are required to correct, mitigate, or provide any service not consented to under this permit, permittee will be required to pay for all services rendered.  Payment shall be made in the form of *a valid check, money order, credit card or cashiers check* immediately upon demand made by the City.

*PROJECT ADDRESS:* _____

Read and agreed on:

Date: _____

_____          _____
Signature                                                        Print name



| From: | Milde, Matt L |
| To: | Brandell, Cherise E; Jonsen, Robert |
| Cc: | Zeo, Todd A; Bertini, David C |
| Subject: | FW: Menlo Park Special Event Permit |
| Date: | Friday, April 15, 2016 1:39:42 PM |
| Attachments: | Special Event Permits - Completed Application_20140919172428/062.pdf |
| | Gmail - Special Event Permit Application.pdf |
| | SKMBT_C65415092113190.pdf |

FYI

Matt Milde
Recreation Coordinator
City of Menlo Park
(650) 330-2223
mlmilde@menlopark.org

Special Events | PAC Events | Aquatics | Event Permits | Parks | Tennis Courts

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Friday, April 15, 2016 1:35 PM
**To:** McClure, William; Cindy S. Elmquist; Bertini, David C; Milde, Matt L
**Cc:** Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Sigrid Van Bladel; Hawk, Robert B.; Arno Penzias
**Subject:** Re: Menlo Park Special Event Permit

"William L. McClure" <wlm@jsmf.com>,
"Cindy S. Elmquist" <cse@jsmf.com>
Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025
650-324-9300 Phone
650-324-0227 Fax

"David C. Bertini" <dcbertini@menlopark.org>,
"Matt L. Milde" <mlmilde@menlopark.org>,
The City of Menlo Park
701 Laurel St.
Menlo Park, CA 94025
650-330-6600

Dear Mr McClure,

I am lodging herewith an appeal of your denial of my application for a special event permit, by outlining its purpose and scope and responding to all of your objections in order.

I have been protesting NEA's ongoing support of its venture partner Min Zhu and its coverup of his incestuous child rape since 2004. In the course of the ensuing litigation and subject to demands by Menlo Park city authorities, I have been forced to relocate my protests from the immediate vicinity of NEA's headquarters, to the narrow strip of public grounds surrounding the 16 private acres of the Rosewood Sand Hill compound located at 2825 Sand Hill Rd, Menlo Park, CA 94025. The median strip identified in his current application affords the only possible location for staging my protest in clear view of the NEA headquarters. My open display of firearms is germane to the message that responds to the death threats

made against me and my family in the names and on the behalves of individuals and business entities
sponsored and supported by NEA. The continual and open-ended nature of my protest responds to
NEA's long-standing refusal to account for its responsibility in supporting and covering up the lawless
conduct of its associates.

As to your claim that my application is incomplete, attached please find a map of the area in question,
which clearly designates the specific and modest boundaries of my special event. That is all that the City
of Menlo Park ("the City") can reasonably expect and require to analyze whether traffic control will be
necessary or what other conditions might be necessary as part of its approval of my application. As
suggested before, and witnessed by my past appearances in your jurisdiction, my use of sound and
lighting equipment is subject to our ongoing mutual agreement on their time, place, and manner
parameters. If you have any specific requests in this regard, please make them with no further ado,
bearing in mind that all restrictions on my expressive conduct must be (1) content-neutral, (2) narrowly
tailored to serve a significant government interest, and (3) leave open ample alternative channels for
communication. (See *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983).) As
resolved as I am to see my task through, I remain open to all reasonable accommodations.

While the First Amendment "does not guarantee the right to communicate one's views at all times and
places or in any manner that may be desired" (*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452
U.S. 640 (1981), it protects the right of every citizen to "reach the minds of willing listeners [and] to do so,
there must be opportunity to win their attention." (*Hill v. Colorado*, 530 U.S. 703 (2000).) My presence on
NEA's grounds has been ruled out as a part of settling its trespass claims against me five years ago. The
currently proposed location of my performance therefore represents my only remaining opportunity to
address directly the public associated or connected with it. Please bear in mind the foregoing authorities
in your attempts to deny me my right to speak in this way and venue.

With respect to the application not meeting the criteria for a special event, the City lacks the authority to
define a special event subject to its permitting requirements, beyond ensuring that it does not disrupt the
ordinary use of its public spaces. It is true that I am proposing a media production of a one-man protest.
My primary aim, however, is to exhibit my media to the thousands of daily passerby on Sand Hill Road,
even as I stream their reactions online. My communication needs to be both physically proximate for
them, and available over the Internet for more distant audiences. This project falls squarely within the
ambit of Constitutional protection of political speech. My production is no less deserving of such
protection for being modestly scaled. Thus *Branzburg v. Hayes*, 408 U.S. 665, 704 (1972): "Liberty of the
press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of
the large metropolitan publisher who utilizes the latest photocomposition methods."

While the First Amendment literally forbids the abridgment only of "speech", the Supreme Court has long
recognized that its protection does not end at the spoken or written word, even as it acknowledged that
not all conduct intended by the person engaging therein to express an idea is so protected. (See *United
States v. O'Brien*, 391 U.S. 367 (1968).) For such conduct may be "sufficiently imbued with elements of
communication to fall within the scope of the First and Fourteenth Amendments". (See *Spence v.
Washington*, 418 U.S. 405 (1974).) "In deciding whether particular conduct possesses sufficient
communicative elements to bring the First Amendment into play, we have asked whether [a]n intent to
convey a particularized message was present, and [whether] the likelihood was great that the message
would be understood by those who viewed it." (See *Texas v. Johnson*, 491 U.S. 397 (1989).) In sum,
according to the Supreme Court's test for expressive conduct, known as the Spence-Johnson test, an
action is protected by the First Amendment if: (1) the speaker-actor intends for the conduct to express a
particularized message; and (2) that message would be understood by others. In the course of reaffirming
the Spence-Johnson test in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S.
557 (1995), the Supreme Court ruled that "a narrow, succinctly articulable message is not a condition of
constitutional protection, which if confined to expressions conveying a 'particularized message,' [...]
would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schönberg,
or Jabberwocky verse of Lewis Carroll." In the course of my protest, the expressive content of openly
carried firearms presented as a means of defense both warranted and necessitated by my circumstances,
will be bolstered by the concurrent multimedia presentation of the evidence of threats I received in the
names and on the behalves of NEA's associates, the damage that they claim to have inflicted on my

family, and their history of unlawful violence. Your study of my past displays should suffice to reassure
you that my painstakingly particularized message will be infinitely easier to parse than The She-Wolf,
Pierrot Lunaire, or Jabberwocky.

This brings me to the matter of my venue. Streets and sidewalks are "prototypal" examples of public fora,
and have immemorially been considered a rightful place for public discourse. (See *Hague v. C.I.O.*, 307
U.S. 496 (1939.) Public fora "have achieved a special status in our law", for they "represent areas within
which tolerance for inhibitions on speech, petition, and assembly is at a minimum." The government
therefore "bear[s] an extraordinarily heavy burden to regulate speech in such locales." (See *N.A.A.C.P. v.
City of Richmond*, 743 F.2d 1346 (9th Cir. 1984).) "And just as streets and sidewalks are prototypical
examples of public fora, political speech related to current events is the prototypical example of protected
speech." (See *American-Arab Anti-Discrimination Committee v. City of Dearborn* ("AAADC"), 418 F.3d
600 (6th Cir. 2005).) In the matter at hand, the current event at issue is NEA's ongoing financial support
of its child-raping protégé Min Zhu. As long as I do not "realistically present serious traffic, safety, and
competing-use concerns beyond those presented on a daily basis by ordinary use of the streets and
sidewalks," you cannot require me to obtain a permit for exercising my Constitutional rights, let alone
deny its issuance. (See *Santa Monica Food Not Bombs v. City of Santa Monica* ("SMFNB"), 450 F.3d
1022 (9th Cir. 2006).) Moreover, I generally do not need a permit to hold a rally or a march on public
grounds while obeying traffic laws. (See SMFNB, 450 F.3d at 1039, 1040-43; AAADC, 418 F.3d at 608.)
Thus I am asking for nothing more nor less than your approval of my rightful, conspicuous presence on
public grounds in full compliance with all applicable laws.

As to my compliance with traffic laws, to repeat myself, I do not intend use any City street or right of way.
The California Vehicle Code Section 525 defines the right of way as "the privilege of the immediate use of
the highway". In this regard, the right of way in the median island, where I intend to conduct my
performance, is ordinarily reserved for pedestrians alone. The small part of the median island that I intend
to occupy will leave plenty of room for the passage of vehicles in any emergency, e.g. as regards tow
trucks allowed to do so pursuant to CVC Section 21719. I do not intend to present any visual impairment
to oncoming traffic and vehicles traveling on Sand Hill Road. As to presenting a visual distraction, I am
well within my First Amendment rights to do so in a rightful place for public discourse, within which
tolerance for your inhibitions on speech, petition, and assembly is at a minimum.

To clarify the nature of the proposed multimedia production in the context of my one-man protest, I am
not intending it for the filming of a movie, and therefore you may not require me to obtain a film production
permit. Kindly recall that I have borne the brunt of abusive and oppressive conduct by the City of Menlo
Park Police Department ("the police") since the inception of my protests a decade ago. This abuse and
oppression included, without limitation, illegal surveillance and harassment of myself and my associates,
arbitrary imposition of constraints on our performance, and participation in my malicious prosecution in
San Mateo Superior Court, wherein the prosecutor expressly and unequivocally acknowledged on court
record that she was seeking my criminal conviction on behalf of NEA. Accordingly, I would not dare to
appear in your jurisdiction without recording each of my interactions with your minions, for my security
and theirs alike. And I have every right to make this recording without asking or paying for your
permission.

As explained by Evan Bernick and Paul Larkin in "Filming the Watchmen: Why the First
Amendment Protects Your Right to Film the Police in Public Places", lower federal courts
have generally said that the First Amendment protects a right to record and photograph law
enforcement in public view. Some restrictions may be constitutional, but simply prohibiting
the recording because the person is recording the police cannot be constitutional. While the
Supreme Court is yet to consider this question, such is the general view in the federal appellate
decisions that have done so. An apparent exception is a recent federal trial court decision
in *Fields v. City of Philadelphia* and *Geraci v. City of Philadelphia*, which takes a different,
narrower approach: There is no constitutional right to videorecord police, the court says, when
the act of recording is unaccompanied by "challenge or criticism" of the police conduct. But
even under this restrictive standard, I remain well within my rights to videorecord at will,

without warning, and regardless of permission, all my public performances in your jurisdiction, for the sake of safety and transparency. In light of the history of my peaceful protests being subjected to oppressive scrutiny and censure by the City authorities, I am planning to exercise my rights under the First Amendment to film my appearances there, for the express purpose of mounting a potential challenge and criticism of the police conduct in the event of further obstructions mounted by Menlo Park. According to *Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969) the discretion of public officials charged with permitting First Amendment activity must be limited by "narrow, objective, and definite standards." It therefore falls upon the City to identify such standards that deny my rights or subject them to permitting requirements.

Lastly, your concern is that it is illegal to open carry a firearm in the State of California is likewise misdirected. It is none of your business to seek or scrutinize any logical nexus or legitimate purpose of carrying a firearm the proposed event. I am well within my rights in carrying a firearm, either openly or concealed, in the course of an entertainment event, as its authorized participant, as protected by the Constitution of the United States, and clearly warranted by law in the state of California.

Thus California Penal Code Section 25400 (a) (2): "A person is guilty of carrying a concealed firearm when the person does any of the following: [...] Carries concealed upon the person any pistol, revolver, or other firearm capable of being concealed upon the person." Whereas P.C. Section 25510 qualifies this ban: "Section 25400 does not apply to, or affect, any of the following: (a) The possession of a firearm by an authorized participant in a motion picture, television, or video production, or an entertainment event, when the participant lawfully uses the firearm as part of that production or event, or while going directly to, or coming directly from, that production or event. (b) The transportation of a firearm by an authorized employee or agent of a supplier of firearms when going directly to, or coming directly from, a motion picture, television, or video production, or an entertainment event, for the purpose of providing that firearm to an authorized participant to lawfully use as a part of that production or event." Please be assured that I intend to authorize myself as a participant in my own entertainment event.

A similar exemption applies to the ban on the open carrying of an unloaded handgun. Thus P.C. Section 26350 (a) (1): "A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following: (A) A public place or public street in an incorporated city or city and county." Whereas P.C. Section 26375 qualifies this ban: "Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses the handgun as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event."

Similar exemptions apply to long guns. Thus P.C. Section 26400 (a): "A person is guilty of carrying an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county." Whereas P.C. Section 26405 qualifies this ban: "Section 26400 does not apply to, or affect, the carrying of an unloaded firearm that is not a handgun in any of the following circumstances: [...] (r) By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses that firearm as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event." In short, conspicuous display of otherwise legally possessed unloaded firearms in the course of my entertainment event is my Constitutional right under the First Amendment, expressly protected by California statutes. In the event, these firearms will include, without limitation, a pair of H&K P7M13 handguns, an LRB M25 designated marksman rifle, a Winchester M97 trench shotgun with an M1917 Remington bayonet, and a semiautomatic, belt-fed, tripod mounted Browning M1919a4, all conspicuously adjoined by ample

MP000438

supplies of ammunition.

I trust that I have met your concerns over the completeness of my application. Please acknowledge the receipt of this email and approve my application at your earliest convenience. To repeat myself, we are equally willing to negotiate or litigate. Please refer to *Lefemine v. Wideman*, 568 U.S. ____ (2012), which held that a plaintiff who secured a permanent injunction but no monetary damages was a "prevailing party" under 42 U.S.C. § 1988 and could receive attorney fees, where the injunction ordered the defendant officials to change their behavior in a way that directly benefited the plaintiff, who could thereafter engage in demonstrations without fear of sanctions with which police had previously threatened him. As public officials, NEA's minions among your City colleagues enjoy qualified immunity from damages suits if they violate my rights, but only as long as they do not violate "clearly established" law. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." (See *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).) In short, your personal liability will be richly borne out by the foregoing statutes and case law. The last issue that remains to be litigated conclusively is the expressive content of openly carried firearms. In this connection, please refer to *Nordyke v. King*, 563 F. 3d 439 (9th Cir. 2009), wherein the state of California tacitly conceded the issue even before the Supreme Court incorporated the Second Amendment in *McDonald v. Chicago*, 561 U.S. 742 (2010). Long story short, if you continue siding with NEA's minions, I will win at the City's certain and considerable expense.

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | submh.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Mon, Sep 21, 2015 at 2:12 PM, Cindy S. Elmquist <cse@jsmf.com> wrote:
>
> Bill McClure requested I forward to you the attached letter with enclosure thereto.
>
>
>
> Cindy S. Elmquist, Assistant to William L. McClure
>
> Jorgenson, Siegel, McClure & Flegel, LLP
>
> 1100 Alma Street, Suite 210
>
> Menlo Park, CA 94025
>
> (650) 324-9300 Phone
>
> (650) 324-0227 Fax
>
>
>
>
>



MP000439A

**CITY OF MENLO PARK**
Special Event Application
᠐1 Laurel Street, Menlo Park, CA 94025  Ph: 650-330-2223 Fax: 650-330-2242



| | |
|---|---|
| Applicant Name:  Michael Zeleny | |
| Organization Name:  Mass Means, Inc. | |
| Name of Event:  Child Rape Tools | |

| | | | |
|---|---|---|---|
| Address: 7576 Willow Glen Rd | City: Los Angeles | State: CA | Zip: 90046 |

| | |
|---|---|
| Home Phone: 323-363-1860 | Alternate Phone:  none |
| E-mail Address: zeleny@post.harvard.edu | Fax: 323-410-2373 |
| Estimated Attendance: drive-by only | Event open the public: Yes ☒ No ☐ |
| Number of Event Staff: 1 | Number of Event Volunteers:  5 |

Purpose of Event:  Outing New Enterprise Associates as the corporate sponsors of incestuous child rapist Min Zhu.

Location of Event (please be specific and attach map): 2825 Sand Hill Rd, Menlo Park, CA 94025, at the median strip, per the attached.

| Event Timeline | Day | Date | Start Time | End Time | Total Hours |
|---|---|---|---|---|---|
| *Set up/Preparation* | Wed | 9/30/2015 | 9 a.m. | 10 p.m. | 13 hours |
| *Special Event* | Thu | 10/1/2015 | 7 a.m. | ongoing | 31 days |
| *Tear down/Clean up* | | | | | |

| | | |
|---|---|---|
| Do you plan to use a City building or park? Yes ☐ No ☒<br><br>City Facility Reservation Permit Included:<br>Yes ☐ No ☒  Pending ☐ | Do you plan to use Private Property: Yes ☐ No ☒<br><br>If yes, provide address of location: | If yes, do you have written approval from Private Property owner:<br><br>Yes ☐ No ☐ |
| Any City streets closed? Yes ☐ No ☒   Any sidewalks blocked?  Yes ☐ No ☒<br>Name of streets: | | Traffic Control Plan Included:<br><br>Yes ☐ No ☐   N/A ☒ |

| | |
|---|---|
| Renting barricades from City: Yes ☐ No ☒ | Park sprinklers turned off:  Yes ☐ No ☒ |
| Amplified sound (i.e. Music, PA system): Yes ☒ No ☐   Time of use: 7 a.m. to 9 p.m. | |
| Temporary lighting: Yes ☒ No ☐   Please describe: Portable spotlights focused on display. | |
| Charge for event: Yes ☐ No ☒ $_____/person | Event is reoccurring more than annually?:  Yes ☐ No ☐ |
| Is this event a fundraiser:  Yes ☐ No ☒ | Proof of 501c3:  Yes ☐ No ☒ |
| Will alcohol be served: Yes ☐ No ☒<br>Will you be selling alcohol:  Yes ☐ No ☒ | ABC Permit Attached: Yes ☐ No ☐ Pending ☐ |
| Will food be served:  Yes ☐ No ☒<br>Will you be selling food:  Yes ☐ No ☒ | I will apply for San Mateo County Temporary Event Food Permit:   Yes ☐ No ☒ Pending ☐ |
| Selling any other items: Yes ☐ No ☒<br>Describe: | Menlo Park Business License:<br><br>Yes ☐ No ☒ |
| Will portable rest rooms be provided:<br><br>Yes ☒ No ☐ | No. of portable toilets ___1___<br><br>No. of ADA compliant portable toilets ___0___ |
| Will you be using a tent, canopy, or other temporary structure? Yes ☒ No ☐ | Please describe: Canopy to be erected at the<br>        median strip of Sand Hill Rd. |

MP000440

## SECTION 2: EVENT NARRATIVE

**Event Description**
Briefly provide a description of the event, including activities, timeline, and sequence of events:

Throughout October 2015, we shall maintain a portable multimedia presentation illustrating ongoing corporate support of New Enterprise Associates (NEA) for incestuous child rapist Min Zhu. I shall be present on site around the clock, equipped with fully operational, exposed and loaded firearms, in full compliance with all applicable laws. All media aspects of this event will be subject to content-neutral regulation negotiated with Menlo Park authorities.

**Parking**
Describe where event participants are expected to park their vehicles:

Off-site parking only; all on-site transportation to be provided to drop off and pick up the participants.

**Security / Emergency Action Plan**
Describe the security plan, including crowd control (including the security company name, contact information, and the amount of security personnel):

No need for crowd control is anticipated, owing to the lack of sidewalks and no stopping allowed on the Sand Hill roadside. Participant assumes full personal responsibility for the lawful defense of the site.

**Americans with Disabilities (ADA) compliance**
Describe how the event will be accessible to people with disabilities (such as parking, restrooms, and accessible path of travel to all event functions):

N/A.

**Recyclables and garbage handling**
Describe the plan for cleanup and removal of recyclable goods and garbage during and after the event (include if additional street sweeping will be arranged).

All garbage generated by the event will be picked up promptly and removed from the site daily for sanitary and lawful disposal.

*Please note:* For larger events where additional garbage removal will be needed, please contact Recology at www.recologysanmateocounty.com or call (650) 595-3900. Failure to remove trash from event will result in a $250 fine.

MP000441

## SECTION 3: SITE MAP CHECKLIST

Please provide a __detailed__ site plan/route map of the event on a separate sheet.  If site map is larger than 11x17 size paper, please provide SIX (6) copies of this map in application packet. The map should include the following information:

| Yes | N/A | |
|---|---|---|
| ☒ | ☐ | Outline of event site, including names of streets or areas that are a part of the venue and surrounding area.  If the event includes a moving route (i.e. parade or run), indicate the direction of travel and start/finish locations. |
| ☐ | ☒ | Any street or lane closures |
| ☐ | ☒ | The locations of fencing, barriers or barricades. |
| ☐ | ☒ | Location of first-aid facilities |
| ☒ | ☐ | Location of all stages, platforms, booths, food areas, trash containers, tents, etc (include dimensions) |
| ☒ | ☐ | Generator locations and/or source of electricity |
| ☐ | ☒ | Placement of vehicles or trailers used for the event (include dimensions) |
| ☐ | ☒ | Anticipated parking locations and number of parking (include ADA parking) |
| ☒ | ☐ | Placement of promotional signs or banners |
| ☒ | ☐ | Placement of portable restrooms (including labeling ADA restrooms) |
| ☐ | ☒ | Exit locations for events with fences |
| ☒ | ☐ | Location of all event activities |
| ☒ | ☐ | Location of temporary lighting |
| ☒ | ☐ | Location of sound system |
| ☒ | ☐ | Fire truck access to existing building/structures shall remain clear and unobstructed (20 feet minimum) |
| ☒ | ☐ | Fire equipment shall remain clear and unobstructed (25 feet minimum) |
| ☐ | ☒ | For large event, traffic impact and traffic handling plan including re-routing of vehicles, bicycles, and pedestrians. |

**Note:** Incomplete and vague site maps will delay the permit process.

## SECTION 4: INSURANCE INFORMATION

A Certificate of Liability Insurance must be provided and must contain the following:

* The special event permit name must be listed as the one "insured."
* The policy must not expire before the planned event date.
* The policy must be for a minimum of $1,000,000 unless otherwise specified.
* The "description" should list the rental location, day, and event planned.
* The City of Menlo Park at 701 Laurel Street, Menlo Park, CA 94025 must be noted as "additional insured."

A special event permit __will not__ be issued until the required application fees, insurance, and other supplementary materials, as indicated in the Special Event Application, have been received. A special event permit issued for a private function on private property is not required to submit proof of liability insurance to the City.

### SECTION 5: PUBLIC NOTIFICATION

Public Notification will be required for some permits based on your application. If noise ordinance is exceeded, the Planning Division will prepare a public notice to be mailed to all property owners, residents, and businesses within 300 feet of the subject property. The notice will state the decision of the City and will serve as the noise permit unless the request is appealed. The Planning Division will mail the notices on the decision date, which starts the 10-day appeal period. If the Planning Division does not receive an appeal in writing, the decision will be become effective on the 11th day. If the decision is appealed, the item will be scheduled for the next available Planning Commission meeting. The Planning Commission generally meets on the first and third Mondays of every month. The minimum lead-time between an appeal and a Planning Commission meeting is approximately 3-weeks. The decision will also be posted at the Civic Center and on the City's web page: www.menlopark.org.

### SECTION 6: FIRE DISTRICT NOTIFICATION

If necessary, you will be asked to seek approval of the Menlo Park Fire Protection District. They will be informed of any street closures and other impacts to emergency services. Please keep in mind that there are several streets within Menlo Park that cannot be closed because they are deemed primary response routes. You must receive Conditional of Approval from the City prior to contacting the Fire District.

### SECTION 7: POLICE STAFFING

For events requiring Police assistance, the Police Department will review the application and be involved in the initial meeting with the applicant. Based on the details for the event, the Police Department will provide an estimate of costs based on the number of officers needed and hours needed at the event (payment of 50% of estimated Police services is due before your permit can be issued). Post event, an invoice will be provided by the to the applicant for Police services (based on incurred costs, minus any pre-paid amount). Any additional costs incurred that were not anticipated such as extra staffing or longer hours will be billed to the applicant. All payments are due to the Menlo Park Police Department by contacting Sgt. Matt Ortega at (650) 330-6347. Non-payment for Police assistance after the event will result in the inability to apply for a special event permit in the future, until any balance is paid in full.

### SECTION 8: PARK USAGE

Rental fees for special events held on city parkland, picnic areas, or tennis courts may be applied and are subject to availability. Please review the city's Master Fee Schedule for current park usage fees. Additionally, the organizing party of an event held in these areas is responsible for following all park rules, usage guidelines, and city ordinances. Sharon Park is reserved for weddings only.

### SECTION 9: SOUND

Approval of a Special Event permit does not necessarily exempt the planned event from the requirements of Chapter 8.06 (Noise) of the Menlo Park Municipal Code. All sources of sound measured from any residential property shall not exceed 50 dBA during the "Nighttime" hours, or 60 dBA during the "Daytime" hours. Nighttime hours are considered the period between 10 p.m. and 7 a.m. daily. If you believe your planned event could exceed the noise limitations set by Chapter 8.06 of the Municipal Code, please discuss the noise permitting requirements with a member of the Planning Division. A noise permit can be obtained as part of the Special Events permit application, subject to review and action by the Planning Division and the public notification and appeal process set forth in Section 5. The Planning Division can be reached at (650) 330-6702 or by email at planning@menlopark.org.

### SECTION 10: CONFIRMATION

Please check all that apply:
- x I have read all policies regarding the Special Event Application process.
- x I have reviewed the Special Event Permit FAQs.
- ☒ I have read and will abide by all Sections as written and described herein.
- ☒ I am submitting the most current version of the Special Event Permit Application found at: www.menlopark.org/eventpermits
- ☒ I am providing the correct payment with my application.
- ☒ I have filled out all portions of this application completely and to the best of my knowledge.

I hereby certify and agree that I shall be personally responsible on behalf of myself/organization for any damage sustained by the facility, property, or equipment, as a result of the occupancy of said facility or property by my group/organization. I hereby waive, release, discharge and agree to indemnify, defend and hold harmless the City, its officers, employees, and agents from and against any and all claims by any person or entity, demands, causes of action or judgments for personal injury, death, damage or loss of property, or any other damage and/or liability occasioned by, arising out of out of the event for the actions (active or passive) of invitees', event participants, event sponsors, and event spectators while on the property, or resulting from this reservation of the facilities or use of property. I hereby declare that I have read and understand and agree to abide by and to enforce the rules, regulations, and policies affecting the use of the facilities or property. If any portion of the Special Event is held on non-city owned property I have included letters of approval for each respective property owner.

3 June 2015

Signature of Applicant                              Date

Payment Information:

☐ Cash    ☒ Check    ☐ Visa    ☐ Mastercard         Amount $250 _____ ($125 minor / $250 major)

Account # _____ Exp. _____ Account Holder Name _____

I agree to pay the above charges and authorize the City of Menlo Park to charge these costs to my credit card. Checks payable to: City of Menlo Park.

Authorized Signature: _____

*Note: There is a $30 charge for returned checks. Additional fees from other city departments may be required before permit maybe issued, please refer to the Master Fee Schedule for updates on current fees.*

---

**Office Use Only:**

Date Permit Submitted: _____    Project No. _____

Permit Payment: $ _____ Date _____    Processed By _____

| Approval: | Department | Received | Fee | Paid | Signature | Date |
|---|---|---|---|---|---|---|
| | Police | | (50% FEE) | ☐ | | |
| | Planning | | | ☐ | | |
| | Public Works Engineering | | | ☐ | | |
| | Public Works Maintenance | | | ☐ | | |
| | CSD/Recreation | | | ☐ | | |
| REQUIRED: Yes ☐, No ☐ | Fire District | | | ☐ | | |

Event Permit Coordinator: _____
- ☐ Application Initial Review Complete
- ☐ E-mail Acknowledgement Sent to Applicant          (Date: _____)
- ☐ Application Sent to Permit Committee
- ☐ Site Map Complete
- ☐ Insurance Certificate Provided
- ☐ Other Agencies Permits Included
- ☐ Public Notification Complete
- ☐ Approved to exceed noise ordinance: ☐Yes  ☐No
- ☐ Staff Approvals Complete
- ☐ Traffic Control Plan Approved (Street closures only)
- ☐ Conditions-of-Approval or Denial Letter Sent       (Date: _____)
- ☐ Other Department Fees Paid
- ☐ Barricade Rental Information (Requesting _____ 3' barricades and _____ 12' barricades)
- ☐ Final Copies Sent to Approving Staff

Special Event Permit Application Approval:

_____          _____
Signature of Permit Coordinator               Date

Updated: 07/24/14

MP000444



Michael Zeleny <larvatus@gmail.com>

## Special Event Permit Application

**Michael Zeleny** <zeleny@post.harvard.edu>                                         Tue, Jul 28, 2015 at 12:57 AM
To: "William L. McClure" <wlm@jsmf.com>
Cc: "David W. Affeld" <dwa@agzlaw.com>, Peter Shimamoto <ps@agzlaw.com>, Scott Sandell
<ssandell@nea.com>, Matt Milde <mlmilde@menlopark.org>, "Bertini, David C" <dcbertini@menlopark.org>, "Ortega,
Matthew K" <mkortega@menlopark.org>, "Robert (Bob) Jonsen (rjonsen@menlopark.org)"
<rjonsen@menlopark.org>
Bcc: Paul Mitchell <pmitchell@chyral.com>

Dear Mr McClure,

Thank you for your response. I am hoping we can continue this conversation in a constructive and conclusive
fashion. As a reminder to your clients and colleagues, I am publicizing and protesting death threats against me and
my family, received in the course of a business dispute with, and in the names and on behalves of, WebEx
Communications its daughter-raping co-founder Min Zhu. These threats were implicitly endorsed and expressly
ratified after the fact by their erstwhile board members and ongoing investors, New Enterprise Associates (NEA).
The object of my exercise is to educate and entertain, combining remedial instruction of NEA personnel and
associates in business ethics with amusing exposure of its ongoing breach to the passerby. All onsite interactions
will be subject to audiovisual recording, live webcast, and eventual incorporation into a feature documentary. You
may think of this project as an application of disruptive technology to venture capitalist business as usual. Please
note its nature of a video production in the course of an entertainment event, which give rise to clearly established
statutory exemptions from California law regulating the possession of firearms in public.

To answer specific questions:

1. As stated, my display will be confined to the median strip on Sand Hill Road directly across the NEA
   headquarters. I assure you that it will be bounded with a safe margin for automotive and foot traffic and no
   obstructive or threatening acts or displays of any kind will take place. Beyond that, I do not believe that
   you can require me to lay out my location and its dimensions down to the last inch. In this, and many other
   matters to follow, reasonable men can disagree. Any and all residual disagreement between us will be
   subject to an application for declaratory relief in the United States District Court for the Northern District of
   California.
2. As stated, I intend to occupy the site of my performance around the clock until NEA publicly
   acknowledges its wrongdoing and severs all its relations with Min Zhu, Scott Sandell, and Dick Kramlich.
   As to the lighting and audiovisual display parameters, I will accommodate any reasonable restrictions you
   and your colleagues put forth as the authors of Menlo Park regulations, ostensibly constructed for my
   benefit in the course of previous litigation. It would be unproductive of me to second-guess you in this
   matter, and you, to demand the minute details of my proposal only to deter it with *ad hoc* obstacles. I
   specifically invite you to consider the matter of videos featuring explicit representations of sexual violence,
   in the context of their "serious literary, artistic, political, or scientific value" as per *Miller v. California*, 413
   U.S. 15 (1973). If you are unable to determine this value by consulting NEA, we shall gladly establish it
   through testimony to be elicited in the ensuing litigation. In this connection, please bear in
   mind *Terminiello v. City of Chicago*, 337 U.S. 1 (1949), wherein the United States Supreme Court
   held speech that "stirs the public to anger, invites dispute, brings about a condition of unrest, or creates
   a disturbance" to be protected under the First and Fourteenth Amendments to the United States
   Constitution.
3. Lastly, my assumption of full personal responsibility for the lawful defense of the site is meant to allay a
   concern expressed by Menlo Park Police on previous occasions, justifying its presence on site by positing
   that my firearms might come to be stolen from me in the course of my peaceful public protests. In this
   regard, please note that lawfully carrying a firearm does not constitute "reasonable suspicion" justifying a
   Terry stop. This applies in the context of California statutes that specifically allow the possession of a
   firearm "by an authorized participant in a motion picture, television, or video production, or an
   entertainment event, when the participant lawfully uses the firearm as part of that production or event, or
   while going directly to, or coming directly from, that production or event." In this regard, I expect you to

observe all legal constraints on police action. As per *Kolender v. Lawson*, 461 U.S. 352 (1983), "a person who is stopped on less than probable cause cannot be punished for failing to identify himself." Also see *Arizona v. Hicks*, 480 U.S. 321 (1987) ("Warrants only issue upon a showing of probable cause; thus, probable cause to believe an item in plain view is contraband or evidence of criminal activity must be required.") Please note that an anonymous tip that a person is carrying a gun is not sufficient to justify a police officer's stop and frisk of that person, even where descriptive detail regarding the subject has been corroborated. Thus in *Florida v. J.L.*, 529 U.S. 266 (2000), the United States Supreme Court declined to adopt the "firearms exception" to Terry's requirement of reasonable suspicion. Similarly, in *Pennsylvania v. D.M.*, 529 U.S. 1126 (2000), the Court ruled that an anonymous tip with a physical description and location that a person had a gun was not enough for reasonable suspicion, absent anything else to arouse the officer's suspicion. I bring all this to your attention in connection with adequate notice given herewith that my carrying of firearms is undertaken in the course and furtherance of a video production and an entertainment event, by an authorized participant therein. Attached please find a photo of a representative firearm to be displayed onsite.

I am hoping that the above will suffice to resolve the concerns that you voiced to date. In light of the legal complexity of this matter, I am giving you and your colleagues adequate lead time to come to a mutual accommodation.

Michael@massmeans.com | Zeleny@post.harvard.edu | 7576 Willow Glen Road, Los Angeles, CA 90046 | voice:323.363.1860 | fax:323.410.2373
http://larvatus.livejournal.com | "All of old. Nothing else ever. Ever tried. Ever failed. No matter. Try again. Fail again. Fail better." — Samuel Beckett

On Fri, Jul 24, 2015 at 2:27 PM, William L. McClure <wlm@jsmf.com> wrote:
[Quoted text hidden]



**Browning M1919A4.jpg**
330K

MP000446



OFFICE OF THE CITY ATTORNEY

1100 ALMA STREET / MENLO PARK, CA  94025 / 650.324.9300 / FAX 650.324.0227

September 21, 2015

**VIA EMAIL: michael@massmeans.com**

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

Re:    Special Event Permit

Dear Mr. Zeleny:

        The City of Menlo Park ("City") is in receipt of your special event permit
application submitted on July 10, 2015, to maintain a portable media presentation
at the location of "2825 Sand Hill Rd, Menlo Park, CA 94025', at the median strip,
per the attached." At this time the City is denying your application on the basis that
it is incomplete and does not meet the criteria of a special event.

        With respect to the application being incomplete, on July 24, 2015, I
previously notified you by email that the application did not include an attachment
indicating the specific location of the presentation/event, and requested additional
information regarding your use of sound and lighting equipment. You responded by
email on July 28, 2015, stating that you would be videotaping your presentation as
part of a feature documentary and entertainment event. You again responded that
the event will occur in the "median strip" and indicated the location to be the strip
"directly across NEA headquarters," but you declined to provide any more detail at
the time. The problem is that your application still does not indicate the exact
location of the proposed event and how the presentation will be set up so that the
City can analyze whether traffic control will be necessary or what other conditions
might be necessary as part of the approval of the application nor the hours/length
of the event. For example, there is no indication where you intend to place your tent,
generator, video presentation, portable rest room, temporary lighting, sound system,
etc. Further, you have stated there is no end time for the event and that the total
hours are "indefinite."

        With respect to the application not meeting the criteria for a special event,
what you have set forth in your application is not an event that meets the City's
definition of a special event. For example, the proposed event application states that
it will not exceed 150 people, use any City street or right of way (even though the

Michael Zeleny
September 21, 2015 - Page 2

median is part of the right of way), require lane closures, require parking needs, generate a crowd of spectators, nor does it state that this is a community type event. To the contrary, you are proposing a "media production" of a one-man protest. If what you are actually intending is the filming of a movie, then the City has an application process, for which a film production permit is required. A copy of the City's "Film Production in Menlo Park" document is attached for your review.

Lastly, the City is concerned that what you are proposing to perform in the median strip between opposing lanes of traffic would be a violation of the Vehicle Code if it causes a visual impairment or visual distraction to oncoming traffic and vehicles traveling on Sand Hill Road. It would also likely be a safety hazard/danger to drivers on Sand Hill Road due to the rate of speed on the roadway and the proximity to Interstate 280. The median strip is too narrow to accommodate the film project as you have described in the application. Another concern is that it is illegal to open carry a firearm in the State of California. As you've described the proposed event, there does not appear to be any logical nexus or legitimate purpose of carrying a firearm.

Inasmuch as your application is incomplete and does not meet the definition of a special event, your application for a special event permit is denied.

If you wish to appeal this denial of your application, you must appeal the denial to the City's Special Event Permit Committee. I would ask that you notify me and Community Services Director Matt Milde at mlmilde@menlopark.org if you wish to seek an appeal.

Sincerely,

William L. McClure,
City Attorney

WLM:rr

Enclosure

cc:     Via email only
        Dave Bertini, Commander
        Matt Milde

**Film Production in Menlo Park**

Film production in the City of Menlo Park must comply with following conditions:

1. Permittee shall submit in writing all pertinent details regarding the filming including the date(s) and times of the filming including time needed for set-up and take down; a description of the nature of the filming; the location of the filming; a list of all equipment involved in the filming, including cars and other vehicles; the proposed location for the parking and storage of all such vehicles and equipment; the number of cast and crew members involved in the filming; and an indication of any special needs, such as amplified noise, etc. If granted, the permit's approval will be confined to such activities, locations and time schedules as submitted and approved.

2. Three days prior to the beginning of filming, permittee shall provide written notice to residents and businesses within 200 feet of the proposed filming.

3. Permittee shall obey all City Ordinances, rules and the guidance of City supervisory employees pertaining to the use of City property, including the location, parking and storage of vehicles and equipment, crowd and traffic control, and the restoration of premises to their original condition after use for filming purposes.

4. Permittee will comply with the City of Menlo Park noise ordinance. Filming will be limited to the hours between 8:00 a.m. and 6:00 p.m. and will result in low to no noise levels. The use of any explosive, fireworks, or pyrotechnic devices is strictly prohibited.

5. Permittee shall make arrangements for traffic control satisfactory to the Menlo Park Police Department prior to filming on City streets and in other public areas. Permittee will be charged to recover the cost of traffic control provided by the City. Permittee will legally park vehicles and will not require street closure or traffic control other than what is approved.

6. Permittee shall covenant and agree to indemnify and hold harmless the City from any and all loss, cost, damages and expenses of any kind, including attorney fees, on account of personal injury or property damage resulting from any activity of Permittee on municipal property or in connection with its use of municipal property.

7. Liability insurance in no way limits the indemnity agreement above, Permittee will furnish the City a Certificate of Liability Insurance acceptable to its Risk Management office showing combined single limit coverage for bodily injury and property damage, or the equivalent of such coverage, not less than $1 million. The City, including its officials, employees and agents, shall be named as additional insured in the Liability Policy. Contractual liability coverage insuring the obligations of this Agreement is also required. The insurance may not be canceled or substantially modified without ten (10) days written notice to the City Manager's Office.

8. Permittee shall pay, with a valid check, money order, credit card or cashier's check, a filming permit application fee of $150.00 in addition to the daily permit fees of $50 per day for still photography and short subject, $100 per day for industrials, and $150 per day for features, TV, music videos and commercials.

9. Permittee shall apply for a one-time Business License and pay, with a valid check, money order, credit card or cashiers check.  See **Guide to Annual Business Licensee Fee Calculation** for the fee schedule.

10. Permittee will adhere to the provisions and conditions set forth in the permit.  If Menlo Park Police Department or other City personnel are required to correct, mitigate, or provide any service not consented to under this permit, permittee will be required to pay for all services rendered.  Payment shall be made in the form of *a valid check, money order, credit card or cashiers check* immediately upon demand made by the City.

*PROJECT ADDRESS:* _____

Read and agreed on:

Date: _____

_____          _____
Signature                                                    Print name

MP000450



Ex. No. 8
Plft.☐ Deft.☐ Pet.☐ Rsp.☐
Wit: Zeleny
Date: 3.18.19
Judy Brennan, CSR #5138



CITY OF
MENLO
PARK

OFFICE OF THE CITY ATTORNEY

1100 ALMA STREET / MENLO PARK, CA 94025 / 650.324.9300 / FAX 650.324.0227

May 4, 2016

**VIA EMAIL: michael@massmeans.com
AND U.S. MAIL**

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

Re:   Appeal of Denial of Special Event Permit Application

Dear Mr. Zeleny:

The City of Menlo Park ("City") is in receipt of your email dated April 15, 2016. Your email indicates that you are lodging an appeal of the denial of your special event permit application. The original special event permit application was submitted on July 10, 2015, to which the City formally responded by letter dated September 21, 2015. In that letter, I indicated that your application was being denied as it was incomplete and did not meet the criteria of a special event.

Your email of April 15, 2016, outlines several modifications and provides additional information to supplement your original application, and therefore, the City is treating it as a revised application rather than an appeal. The April 16th email includes a Google map with a red box showing the proposed location of the event. The email also indicates that you no longer intend to film a documentary, but instead will put on an "entertainment event" in which you will be live-streaming a video showing the reaction of individuals who drive by your protest. Lastly, the revised application indicates in the "Event Narrative" that you "shall be present on site around the clock, equipped with fully operational, exposed and loaded firearms, in full compliance with all applicable laws."

Based on a review of your revised application, the City is denying your application on the basis that it is incomplete and it does not meet the criteria of a special event. With respect to the revised application still being incomplete, the application fails to describe how you intend to set up your presentation so that the City can analyze whether traffic control will be necessary or what other conditions might be necessary as part of the approval of the application, nor does it specify the hours/length of the event. For example, there is no indication where you intend to place your tent, generator, video presentation, portable rest room,

Printed on recycled paper

MP000463

Michael Zeleny
May 4, 2016 - Page 2

temporary lighting, sound system, etc. The revised application is deficient in that the City needs substantially more detail in order to analyze the potential for your event distracting drivers, including the volume of sound you intend to make, the brightness of your projector, location and size of items you intend to place on the median strip, and how you intend to transport your set-up to the location (to determine compliance with the Vehicle Code).

Also, the revised application still does not propose an event that requires a special event permit. The application does not propose an event that is open to the community at large to participate in (it describes a one man protest). With the essential element of community participation, a special event permit is not necessary; protests do not require special events permits.

I also want to raise three concerns regarding the proposed event:

· 1. The proposed event has no defined term (your email indicates an event of "indefinite" duration). Given the presence of guns and the display of a pornographic image at along a major high-speed roadway, the City would need to staff the event with police and traffic supervision. However, the City does not have staff to monitor an event that could last days, weeks or months.

2. You are proposing to illegally open-carry weapons. It is illegal to open-carry an unloaded or loaded weapon in California. You are citing to the movie/entertainment exception, but that exception does not allow for the open-carrying of *loaded* weapons or weapons "adjoined by ample supplies of ammunition." Penal Code §16840 provides that a firearm shall be deemed to be "loaded" whenever both the firearm and the unexpended ammunition capable of being discharged from the firearm are in the immediate possession of the same person. Lastly, a practical reading of the entertainment exception would require the Department of Justice or the Menlo Park Police Department to authorize your event.

3. We have serious concerns regarding the proposed location of the event and will likely prohibit locating an event as generally described in your email and attachments in the median area of Sand Hill Road as it would be a traffic and safety hazard – regardless of how the event is characterized.

While it is clear that this is not a "special event," if you wish to appeal this denial, please provide written notice to Community Services Director Cherise Brandell (and copied to the undersigned.) Ms. Brandell's contact information is as

Michael Zeleny
May 4, 2016 – Page 3


follows:  ·Email (cebrandell@menlopark.org) and telephone (650) 330-6618.
Alternatively, you may provide additional detail to respond to the above-outlined
issues.

Sincerely,

William L. McClure
City Attorney

WLM:rr
cc:    Via email only
       Dave Bertini, Commander
       Cherise Brandell
       Matt Milde

MP000465



Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Fri, May 27, 2016 at 12:21 PM, Michael Zeleny <michael@massmeans.com> wrote:

Dear Mr McClure,

I have received your second denial, dated 4 May 2016, of my amended application for a special event permit, submitted on 15 April 2016. My second appeal follows.

With respect to your complaint regarding my application being incomplete, please refer to the map I submitted with it, as reattached below for your convenience. The red rectangle that designates the location of my entertainment event represents the location of my Dodge Ram SRT-10 pickup truck. All my activities and all my equipment will be confined to its bed and cabin, as driven to and parked at the designated location. The video presentation will be made with a 55" SunBrite outdoor TV, mounted in a Gator G-Tour E-Lift, and powered by a portable generator. As stated in my original application dated 28 July 2015, I will remain on site around the clock until NEA publicly acknowledges its wrongdoing and severs all its relations with Min Zhu, Scott Sandell, and Dick Kramlich. My staff will attend to all my needs with daily deliveries, in full compliance with all relevant laws and regulations.

My event is most certainly meant to be open to the community at large, and I will make every accommodation for all passerby to engage lawfully and safely with its content and its authors. Without limitation, these accommodations will include distribution of flyers and souvenirs, and opportunities to engage me in real-time discussion, broadcast via a live Internet linkage.

If the foregoing explanation satisfies your concerns, I will forgo carrying of loaded weapons in the spirit of compromise. However, if you continue to object to my carrying unloaded firearms in the course of my entertainment event, I shall be happy to litigate the matter of loaded open carry within the scope of Constitutionally protected speech. Your citation of Penal Code §16840 providing that "a firearm shall be deemed to be 'loaded' whenever both the firearm and the unexpended ammunition capable of being discharged from the firearm are in the immediate possession of the same person", is inapposite, because applicable solely to "[e]very person who carries a loaded firearm with the intent to commit a felony" within the scope of Penal Code §25800. I assure you that I have no such intent.

Lastly, I do not understand your claim that "a practical reading of the entertainment exception would require the Department of Justice or the Menlo Park Police Department to authorize [my] event." If you are claiming that my Constitutionally protected speech stands in need of such authorization, as explained previously, I shall be happy to settle this matter within the scope of a civil action for deprivation of rights pursuant to 42 U.S. Code §1983. Indeed, if you compel me to do so, the venue of my performance will merely change, from Sand Hill Road, to a Federal courthouse. One way or another, my message will resonate with its intended audience.

I trust that I have answered all relevant questions and addressed all legitimate concerns. I hope that no further explanations will be necessary for you to make a final disposition of my application.

7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and
ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Wed, May 4, 2016 at 10:52 AM, Robin H. Riggins <rhr@jsmf.com> wrote:

Dear Mr. Zeleny:


        Pursuant to Mr. McClure's request, please find attached his letter to you of today's date concerning the above-mentioned matter.

Thank you for your attention to this matter.


Sincerely,


Robin Riggins

Secretary to

William L. McClure, Esq.


Jorgenson, Siegel, McClure & Flegel, LLP

1100 Alma Street, Suite 210

Menlo Park, CA  94025


Tel. 650/ 324-9300

Fax. 650/ 324-0227

MP004891

From: Matt
To: Michael Zeleny; McClure, William; Robin H. Riggins; Reinsch, Donna E.
Cc: Clark C. Dmopak; Berlad, David C; Hale, Matt L; Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzia
Subject: RE: MY Zeleny Permit
Date: Thursday, June 16, 2016 3:34:09 PM
Attachment: Zeleny Appeal Letter 6.16.16.docx

Dear Mr. Zeleny,

Thank you for submitting a Special Event Application with the City of Menlo Park. Upon reviewing your application and appeal, approval for your special event has been denied. Please see the attached letter regarding the specific details of this determination. If you wish to appeal this decision, please refer to the directions contained within this letter.

Regards,

Matt Milde
Recreation Coordinator
City of Menlo Park
(650) 330-2223
mbmilde@menlopark.org

Special Events | PAG Events | Aquatics | Event Permits | Parks | Tennis Courts

From: Michael Zeleny [mailto:michael@massenre.com]
Sent: Wednesday, June 15, 2016 4:58 PM
To: McClure, William; Robin H. Riggins; Reinsch, Donna E.
Cc: Clark C. Dmopak; Berlad, David C; Hale, Matt L; Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzia
Subject: Re: MY Zeleny Permit

Dear Mr McClure,

The requested date of my performance is upon us. Kindly issue your definitive ruling on my application, so that we may proceed either to negotiate its time, place, and manner parameters, or to litigate the matter of your infringement of my civil rights.

Michael Zeleny aka Michael Zelenyi | mailto:michael@mattenre.com | http://mattenre.com
7576 Willow Glen Rd., Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Fri, May 27, 2016 at 12:21 PM, Michael Zeleny <michael@mattenre.com> wrote:
Dear Mr McClure,

I have received your second denial, dated 4 May 2016, of my amended application for a special event permit, submitted on 15 April 2016. My second appeal follows.

With respect to your complaint regarding my application being incomplete, please refer to the map I submitted with it, as reattached below for your convenience. The red rectangle that designates the location of my entertainment event represents the location of my Dodge Ram SRT-10 pickup truck. All my activities and all my equipment will be confined to its bed and cabin, as driven in and parked at the designated locations. The video presentation will be made with a 35" Sun/Brite outdoor TV, mounted in a Gator G-Tour E-Lift, and powered by a portable generator. As stated in my original application dated 28 July 2015, I will remain on the ground the clock until NEA publicly zelenyi belies its wrongdoing and severe all its relations with Min Zhu, Scott Sandell, and Dick Kramlich. My staff will attend to all my needs with their deliveries, in full compliance with all relevant laws and regulations.

My event is most certainly meant to be open to the community at large, and I will make every accommodation for all passerby to engage lawfully and safely with its content and its authors. Without limitation, these accommodations will include distribution of flyers and souvenirs, and opportunities to engage me in real-time discussion, broadcast via a live Internet link-up.

If the foregoing explanations satisfies your concerns, I will forgo carrying of loaded weapons in the spirit of compromise. However, if you continue to object to my carrying unloaded firearms in the course of my entertainment event, I shall be happy to litigate the matter of loaded open carry within the scope of Constitutionally protected speech. Your citation of Penal Code §16140, providing that "a firearm shall be deemed to be 'loaded' whenever both the firearm and the unexpended ammunition capable of being discharged from the firearm are in the immediate possession of the same person", is inapposite, because applicable only to [fe?]very person who carries a loaded firearm with the intent to commit a felony" within the scope of Penal Code §21100. I assure you that I have no such intent.

Lastly, I do not understand your claim that "a practical reading of the entertainment exception would require the Department of Justice or the Menlo Park Police Department to [authorize] my [event." If you are claiming that my Constitutionally protected speech stands in need of such authorization, as explained previously, I shall be happy to settle this matter within the scope of a civil action for deprivation of rights pursuant to 42 U.S. Code §1983. Indeed, if you compel me to do so, the venue of my performance will merely change from Sand Hill Road, to a Federal courthouse. One way or another, my message will resonate with its intended audience."

I trust that I have answered all relevant questions and addressed all legitimate concerns. I hope that no further explanations will be necessary for you to make a final disposition of my application.

Michael Zeleny aka Michael Zelenyi | mailto:michael@mattenre.com | http://mattenre.com
7576 Willow Glen Rd., Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Wed, May 4, 2016 at 10:52 AM, Robin H. Riggins <rhr@jsmf.com> wrote:
Dear Mr. Zeleny:

Pursuant to Mr. McClure's request, please find attached his letter to you of today's date concerning the above-mentioned matter.
Thank you for your attention to this matter.

Sincerely,

Robin Riggins
Secretary to
William L. McClure, Esq.

Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025

Tel. (650)324-9333
Fax: (650)324-0228



Ex. No. 10
Plf.☐ Deft.☒ Pet.☐ Rsp.☐
Wit: Zeleny
Date: 3.18.19
Judy Brennan, CSR #5138

MP000473



MP000474

Community Services


CITY OF
MENLO PARK

**June 16, 2016**

**VIA EMAIL: michael@massmeans.com**
**AND U.S. MAIL**

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA. 90046

### RE: Special Event Permit Application Denial

Dear Mr. Zeleny,

Thank you for submitting a Special Event Application with the City of Menlo Park. Upon reviewing your application and appeal, approval for your special event has been denied for the following reason(s):

- Incomplete Application
- Does not meet the criteria for Special Event
- Other:
    - No defined term
    - The exhibition of loaded and or unloaded firearms is prohibited by law
    - Location proposed creates a traffic and safety hazard
    - Driving a vehicle onto a center medium is prohibited by California Vehicle Code section 21651
    - Illuminated displays which impair a driver's vision are prohibited by California Vehicle Code section 21466.5

Determination of the approval or denial of any application is at the discretion of the Special Event Permit Committee acting on behalf of the Community Services Director. If you feel this decision has been made in error or warrants a permit outside of the policies established by the City of Menlo Park you may appeal in writing to City Manager, Alex McIntyre. He can be reached at admcintyre@menlopark.org.

If you have any questions, please feel free to contact me.

Matt Milde
Recreation Coordinator
City of Menlo Park

2

(650) 330-2223
mlmilde@menlopark.org

PRIVATE ROAD CLOSURE
The City of Menlo Park is unable to issue a special event permit if the event includes a road closure for private or exclusive residential use such as a birthday party, reunion, wedding, anniversary, etc. The Arrillaga Family Recreation Center (650-330-2200), Onetta Harris Community Center (650-330-2250) and picnic/park facilities (650-330-2220) are community resources designated for this type of function.





Ex. No. 11
Plt.□ Deft.□ Pet.□ Rsp.□
Wit: Zeleny
Date: 3.18.19
Judy Brennan, CSR #5138

From: [illegible]
To: Michael Zeleny
Cc: [illegible]
Subject: RE: MP/Zeleny Permit
Date: Friday, June 24, 2016 10:36:19 AM
Attachments: [illegible]

Mr. Zeleny – please see letter regarding your appeal of a special event permit denial with the City of Menlo Park.

**Cherise Brandell, PhD**
Community Services Director
City of Menlo Park

From: Michael Zeleny [mailto:michael@maxsmeant.com]
Sent: Friday, June 17, 2016 11:50 AM
To: Milde, Matt L; McClure, William
Cc: Robin H. Riggins; Brandell, Cherise E; Cindy S. Elmquist; Bertini, David C; Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Alfeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Hurm; Hawk, Robert B.; Anna Pernias
Subject: Re: MP/Zeleny Permit

Gentlemen,

Thank you for your response. To clarify my application in the interest of identifying the points of intractable contention, I am willing to be reminded on all your permissible restrictions except for the following:

1. The concealed and open carry of unloaded firearms by an authorized participant in an entertainment event, is expressly authorized by California Penal Code Sections 25510 and 26375. Your denial of my statutory right is therefore groundless and legally sanctionable.

2. No legally cognizable justification exists for your imposition of a "defined term" on my Constitutionally protected speech. Please indicate whether you prefer to proceed to litigation under 42 U.S. Code §1983, or concede these points and negotiate the remaining parameters of my performance.

Michael Zeleny <michael@maxsmeant.com> | Platform@maxsmeant.com | eZ4.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Thu, Jun 16, 2016 at 3:08 PM, Milde, Matt L <mlmilde@menlopark.org> wrote:

Dear Mr. Zeleny:

Thank you for submitting a Special Event Application with the City of Menlo Park. Upon reviewing your application and appeal, approval for your special event has been denied. Please see the attached letter regarding the specific details of this determination. If you wish to appeal this decision, please refer to the directions contained within this letter.

Regards,

**Matt Milde**
Recreation Coordinator
City of Menlo Park
(650) 330-2223
mlmilde@menlopark.org

Special Events | PAC Events | Aquatics | Event Permits | Parks | Tennis Courts

From: Michael Zeleny [mailto:michael@maxsmeant.com]
Sent: Wednesday, June 15, 2016 4:58 PM
To: McClure, William; Robin H. Riggins; Brandell, Cherise E
Cc: Cindy S. Elmquist; Bertini, David C; Milde, Matt L; Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Alfeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Hurm; Hawk, Robert B.; Anna Pernias
Subject: Re: MP/Zeleny Permit

Dear Mr. McClure,

The requested date of my performance is upon us. Kindly issue your definitive ruling on my application, so that we may proceed either to negotiate its time, place, and manner parameters, or to litigate the matter of your infringement of my civil rights.

Michael Zeleny <michael@maxsmeant.com> | Platform@maxsmeant.com | eZ4.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Fri, May 27, 2016 at 12:21 PM, Michael Zeleny <michael@maxsmeant.com> wrote:
Dear Mr McClure,

I have received your second denial, dated 4 May 2016, of my amended application for a special event permit, submitted on 15 April 2016. My second appeal follows.

With respect to your complaint regarding my application being incomplete, please refer to the map I submitted with it, as reattached below for your convenience. The red rectangle that designates the location of my entertainment event represents the location of my Dodge Ram SRT-10 pickup truck. All my activities and all my equipment will be confined to its bed and cabin, as driven to and parked at the designated location. The video presentation will be made with a 55" Sunlite outdoor TV, mounted on a Gator G-Tour E-Lift, and powered by a portable generator. As stated in my original application dated 28 July 2015, I will remain on site around the clock until NEA publicly acknowledges its wrongdoing and severs all its relations with Min Zhu, Scott Sandell, and Dick Kramlich. My staff will attend to all my needs with daily deliveries, in full compliance with all relevant laws and regulations.

My event is most certainly meant to be open to the community at large, and I will make every accommodation for all plausibly to engage lawfully and safely with its content and its authors. Without limitation, these accommodations will include distribution of flyers and souvenirs, and opportunities to engage in real-time discussion, broadcast via a live Internet linkage.

If the foregoing explanation satisfies your concerns, I will forgo carrying of loaded weapons in the spirit of compromise. However, if you continue to object to my carrying unloaded firearms in the course of my entertainment event, I shall be happy to litigate the matter of loaded open carry within the scope of Constitutionally protected speech. Your citation of Penal Code §16840 providing that "a firearm shall be deemed to be 'loaded' whenever both the firearm and the unexpended ammunition capable of being discharged from the firearm are in the immediate possession of the same person", is inapposite, because applicable solely to "[e]very person who carries a loaded firearm with the intent to commit a felony" within the scope of Penal Code §25800. I assure you that I have no such intent.

Lastly, I do not understand your claim that "a practical reading of the entertainment exception would require the Department of Justice or the Menlo Park Police Department to authorize [my] event." If you are claiming that my Constitutionally protected speech stands in need of such authorization, as explained previously, I shall be happy to settle this matter within the scope of a civil action for deprivation of rights pursuant to 42 U.S. Code §1983. Indeed, if you compel me to do so, the virtue of my performance will merely change, from Sand Hill Road, to a Federal courthouse. One way or another, my message will resonate with its intended audience.

I trust that I have answered all relevant questions and addressed all legitimate concerns. I hope that no further explanations will be necessary for you to make a final disposition of my application.

Michael Zeleny <michael@maxsmeant.com> | Platform@maxsmeant.com | eZ4.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Wed, May 4, 2016 at 10:52 AM, Robin H. Riggins <rhr@[illegible].com> wrote:
Dear Mr. Zeleny

Pursuant to Mr. McClure's request, please find attached his letter to you of today's date concerning the above-mentioned matter

MP000477

Thank you for your attention to this matter.

Sincerely,

Bella Riggins
Secretary to
William L. McClure, Esq.

Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025

Tel: 650/ 324-1200
Fax: 650/ 324-0227



MP000478



Ex. No. _12_
Plf.☐ Deft.☑ Pet.☐ Rsp.☐
Wit: _Zeleny_
Date: _3·18·19_
Judy Brennan, CSR #5138

Community Services



CITY OF
MENLO PARK     June 24, 2016

RE: Special Event Denial Appeal

Mr. Zeleny.

Your email dated June 17, 2016 has been forwarded to me as an appeal to the denial of your "Special Event Permit" application. I have discussed your application and denial with staff, and have considered all communications and information you submitted as part of your application.   After review, I will not be overruling the denial of your application for the following reasons:

•       Your application for a special event permit continues to have no term attached to it. Special events by their very nature as being "special" are for a defined term and cannot be permanent or open-ending.

•       The open carry or concealed possession of firearms in a public place is prohibited by law; California Penal Code sections 25400, 26350, and 26400.

•       The sections you quoted, which give authorization for the carrying of firearms, are specifically for "authorized" participants in an entertainment, motion picture or television production. The City of Menlo Park has not "authorized" you as a participant in a motion picture, television, or video production, or an entertainment event; and you have not provided evidence that any other governmental agency has authorized your entertainment event.

Please be aware that the above denial of the application for a Special Event Permit is in no way a denial of your First Amendment right to protest. No permit is necessary for a protest in the same location you have protested in the past, as long as it is conducted within the confines of the law and local ordinance, including Penal Code sections regulating the display of firearms cited above.

As Community Services Director, I have fulfilled my responsibility to review your appeal and provide you notice of my decision. As part of the City's appeals process, your next step, if you disagree with my decision, would be to appeal my decision to the City Manager, Alex McIntyre.  If you wish to appeal my decision to the City Manager, please notify me, as well as City Manager Alex McIntyre (admcintyre@menlopark.org); with a copy of your notification to City Clerk Pamela Aguilar (piaguilar@menlopark.org), Commander Dave Bertini (dcbertini@menlopark.org), and City Attorneys William L. McClure (wlm@jsmf.com) and Nicolas A. Flegel (naf@jsmf.com).   Please specify in your notification if you wish to have a hearing conducted or if you want the City Manager to base his decision on all your communications to date received by City staff.

MP000479

2

If you intend to submit additional documentation, please indicate what you intend to submit.

Lastly, so you are aware, any decision made by the City Manager may be appealed to the City Council, who will have the final decision making authority for the City of Menlo Park.

Cherise Brandell

MP000480



Ex. No. 17
Plft.☐ Deft.☑ Pet.☐ Rsp.☐
Wit: _Zeleny_
Date: _3.18.19_
Judy Brennan, CSR #5138

| | |
|---|---|
| **From:** | Casados, Nicole |
| **To:** | Bertini, David C (dcbertini@menlopark.org) |
| **Subject:** | FW: Special Event Permit Application Appeal Decision |
| **Date:** | Tuesday, August 22, 2017 4:42:00 PM |
| **Attachments:** | 20160912 - Letter to Zeleny.pdf |

**From:** Mariano, Nicole S
**Sent:** Monday, September 12, 2016 5:44 PM
**To:** michael@massmeans.com
**Cc:** McIntyre, Alex D (admcintyre@menlopark.org); Greg Rubens; dwa@agzlaw.com
**Subject:** Special Event Permit Application Appeal Decision

Good evening Mr. Zeleny,

Please see attached letter from Menlo Park City Manager Alex D. McIntyre.

Thank you,

*Nicole Mariano*
CITY OF MENLO PARK
701 Laurel Street
Menlo Park, CA 94025
Phone: 650.330.6610
Email: nsmariano@menlopark.org





# City Manager's Office

CITY OF
**MENLO PARK**

September 12, 2016

**VIA First Class Mail and Email**
Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

**RE: Special Event Permit Application Appeal Decision**

Dear Mr. Zeleny,

This correspondence serves as final determination of the City of Menlo Park's denial of your appeal of a prior decision to deny a Special Events Permit.

**Background**

The Appeal of the administrative decision denying the application of Michael Zeleny for a special event permit ("SEP") was heard on August 11, 2016 at the Menlo Park City Hall.

Mr. Zeleny first applied for a SEP on June 3, 2015 to conduct a protest in the median on Sand Hill Road near the entrance and exits of Interstate 280 in Menlo Park. The application (Exhibit A) included, but was not limited to, a request to:

- park a truck on the median;
- display loaded and unloaded firearms;
- distribute literature to the public; and
- run a generator to operate a 55-inch digital video monitor.

The protest was to be video recorded and, since the event was to extend into the evening, requested high-intensity lighting. This request was denied by staff on September 21, 2015 (Exhibit B).

On April 15, 2016, a revised application for a SEP was submitted to the City (Exhibit C). This application was treated as a new application. The April 2016 application was denied by staff on May 4, 2016 (Exhibit D). This denial was then appealed by Mr. Zeleny to the Community Services Department on or about May 27, 2016 (Exhibit E). The appeal was again denied by letter dated June 16, 2016 (Exhibit F). That decision was appealed to the Community Services Director (Exhibit G), which was again denied on June 24, 2016 (Exhibit H). Appellant then appealed to the City Manager. The City sent out a notice of appeal hearing on July 20 to the appellant, setting August 11, 2016 at 2:00 pm as the hearing date (Exhibit I).

2

As Menlo Park City Manager, I acted as the hearing officer for the appeal hearing and was represented by Gregory J. Rubens, Esq.. Appearing on behalf of the City was Police Commander David Bertini of the Menlo Park Police Department. The Appellant was represented by David Affeld, Esq. Also in attendance was Michael Zeleny (Appellant) and Kimberly Chu, Esq. from Gregory J. Rubens' office.

The Appeal was conducted as a de novo hearing. The City admitted the above described documents and e-mails from staff and Mr. Zeleny from June 2015 to July 2016 (Exhibit J). In addition, Mr. Zeleny provided an electronic copy of the Entertainment Firearms permit dated July 13, 2016 issued by the Office of the Attorney General (Exhibit K). On its face, the permit allows firearms loaned to the permittee for use as props in motion picture, television, video, theatrical or other entertainment productions.

The appellant and his attorney presented their appeal and requested that the Special Events Permit be granted based on constitutional and statutory grounds.

The City staff present argued that the Appeal be denied for the reasons stated in the prior denials.

**Decision**

The appeal is denied. As stated previously, no permit is required for first amendment protected activity. Filming or digitally recording a protest in traditional public forum areas in the City is allowed provided they comply with all laws. SEPs are not intended to regulate protests or filming of protests in the public forum areas of the City. Special events are also time limited and not of an ongoing nature.

You are free to conduct a protest in compliance with laws. However, the City has an obligation to protect public safety. To that end, your protest cannot occur in the center median under State law, cannot block pedestrian access on the sidewalk, and cannot accommodate camping or sleeping on the sidewalk or any portion of the right-of-way.

A City may impose reasonable time, place and manner restrictions on first amendment rights in a content-neutral manner, by a narrowly tailored regulation to serve a significant public interest.

The regulations cited in this decision clearly allow a protest to occur in compliance with the City and State content neutral laws. Protests are not allowed in the median, but would in traditional public forum areas, such as sidewalks and City parks and plaza's.

Your protest described in your SEP application and subsequent documents implicates a number of laws. These laws include but are not limited to:

Display of Firearms

- Display of unloaded firearms could be considered a violation of Penal Code. State law prohibits display of unloaded firearms with the exception of using firearms loaned to the permittee as props as defined in Penal Code 29500-29530.
- Brandishing and display of unloaded firearms is illegal, except as provided in Penal Code Section 29500 et seq.
- Under Penal Code Section 25850, having possession of a loaded firearm is also illegal. Under this section possession of a loaded firearm even with a film entertainment permit is illegal.
- Under Penal Code Section 28500(b), persons who display unloaded firearms are subject to the additional requirement that allows peace officers to examine any firearm. Failure to allow examination is a violation of the law.

Public Rights-of-Way

Public use of rights-of-way and medians are subject to the California Vehicle Code and the Menlo Park Municipal Code. These legitimate and content-neutral regulations that serve a significant government interest include parking and time limits, obstruction of sidewalks, and obscenity laws. Cities have been granted clear authority under state law over their rights-of-way.

- Vehicle Code Section 22507 provides broad discretion to cites over parking on public rights-of-way (in this case, there is no parking on Sand Hill Road in the proposed area of your protest).
- The proposed monitor and related equipment cannot impair a driver's vision block the sidewalk under Vehicle Code Section 21466.5. The proposed lights, and video display also have the potential to impair a driver's vision.
- Driving upon or parking a vehicle or conducting in the median violates Vehicle Code Section 21651.

From a practical aspect and for public safety concerns,

- The lighting at night would be highly distracting to motorists, cyclists and pedestrians.
- City medians are not traditional public forum areas and are inappropriate and unsafe.
- The proposed location encourages the public to cross a busy arterial on to a median area that is without sidewalks and are encouraged to cross traffic and view your monitor and view hand-outs with high speed and high volume traffic

4

justifies this prohibition from a public safety standpoint.

- The median you propose is adjacent to the entrances and exits of Interstate 280, making the location unsafe and dangerous to pedestrians, cyclists and vehicles. Such a display or protest in the median could also block vehicular sight lines and impair public safety for pedestrians, cyclists and automobiles under Municipal Code section 11.44.030.

This is not an exhaustive list of the laws with which you must comply. Accordingly, if you attempt to conduct your protest in the medians anywhere in Menlo Park, the City will consider all appropriate remedies.

**Conclusion**

Based on the record and findings above, which are incorporated by this reference, your application for an SEP is denied. No permit to conduct a protest is required. Any protest you conduct must comply with all laws, include those set forth above which are described above.

Denial of the SEP does not violate any first amendment rights. The lack of need for a permit shows the City is not preventing your protest or prevented you from displaying your message. The City is using its police power and common sense to regulate the time, place and manner of your proposed free speech protest. The City has a compelling interest in public safety and a protest in the median would place the vehicular, cyclists, pedestrians and you in danger.

To appeal this decision to the City Council you must provide notice of your appeal to the City Clerk within ten days of the date of this letter.

Please be advised that, to the extent that the City can accommodate your request to protest safely and lawfully, we are willing to work with you.

Sincerely,

Alex D. McIntyre
City Manager

Enclosures

Cc:    Via Email only
       David W. Affeld, Esq.
       Greg Rubens, Esq.

# Exhibit A

MP000952

# CITY OF MENLO PARK
Special Event Application
701 Laurel Street, Menlo Park, CA 94025  Ph: 650-330-2223  Fax: 650-330-2242



| | |
|---|---|
| Applicant Name: Michael Zeleny | |
| Organization Name: Mass Means, Inc. | |
| Name of Event: Child Rape Tools | |

| Address: 7576 Willow Glen Rd | City: Los Angeles | State: CA | Zip: 90046 |
|---|---|---|---|

| Home Phone: 323-363-1860 | Alternate Phone: none |
|---|---|
| E-mail Address: zeleny@post.harvard.edu | Fax: 323-410-2373 |
| Estimated Attendance: drive-by only | Event open the public: Yes ☒ No ☐ |
| Number of Event Staff: 1 | Number of Event Volunteers: 5 |

Purpose of Event: Outing New Enterprise Associates as the corporate sponsors of incestuous child rapist Min Zhu.

Location of Event (please be specific and attach map): 2825 Sand Hill Rd, Menlo Park, CA 94025, at the median strip, per the attached.

| Event Timeline | Day | Date | Start Time | End Time | Total Hours |
|---|---|---|---|---|---|
| Set up/Preparation | Wed | 9/30/2015 | 9 a.m. | 10 p.m. | 13 hours |
| Special Event | Thu | 10/1/2015 | 7 a.m. | ongoing | 31 days |
| Tear down/Clean up | | | | | |

| Do you plan to use a City building or park? Yes ☐ No ☒  City Facility Reservation Permit Included: Yes ☐ No ☒ Pending ☐ | Do you plan to use Private Property: Yes ☐ No ☒  If yes, provide address of location: | If yes, do you have written approval from Private Property owner: Yes ☐ No ☐ |
|---|---|---|
| Any City streets closed? Yes ☐ No ☒    Any sidewalks blocked? Yes ☐ No ☒  Name of streets: | | Traffic Control Plan Included: Yes ☐ No ☐ N/A ☒ |
| Renting barricades from City: Yes ☐ No ☒ | Park sprinklers turned off: Yes ☐ No ☒ | |
| Amplified sound (i.e. Music, PA system): Yes ☒ No ☐  Time of use: 7 a.m. to 9 p.m. | | |
| Temporary lighting: Yes ☒ No ☐   Please describe: Portable spotlights focused on display. | | |
| Charge for event: Yes ☐ No ☒ $____/person | Event is reoccurring more than annually?: Yes ☐ No ☐ | |
| Is this event a fundraiser: Yes ☐ No ☒ | Proof of 501c3: Yes ☐ No ☒ | |
| Will alcohol be served: Yes ☐ No ☒  Will you be selling alcohol: Yes ☐ No ☒ | ABC Permit Attached: Yes ☐ No ☐ Pending ☐ | |
| Will food be served: Yes ☐ No ☒  Will you be selling food: Yes ☐ No ☒ | I will apply for San Mateo County Temporary Event Food Permit:  Yes ☐ No ☒ Pending ☐ | |
| Selling any other items: Yes ☐ No ☒  Describe: | Menlo Park Business License: Yes ☐ No ☒ | |
| Will portable rest rooms be provided: Yes ☒ No ☐ | No. of portable toilets __1__  No. of ADA compliant portable toilets __0__ | |
| Will you be using a tent, canopy, or other temporary structure? Yes ☒ No ☐ | Please describe: Canopy to be erected at the median strip of Sand Hill Rd. | |

MP000953

SECTION 2: EVENT NARRATIVE

**Event Description**
Briefly provide a description of the event, including activities, timeline, and sequence of events:

Throughout October 2015, we shall maintain a portable multimedia presentation illustrating ongoing corporate support of New Enterprise Associates (NEA) for incestuous child rapist Min Zhu. I shall be present on site around the clock, equipped with fully operational, exposed and loaded firearms, in full compliance with all applicable laws. All media aspects of this event will be subject to content-neutral regulation negotiated with Menlo Park authorities.

**Parking**
Describe where event participants are expected to park their vehicles:

Off-site parking only; all on-site transportation to be provided to drop off and pick up the participants.

**Security / Emergency Action Plan**
Describe the security plan, including crowd control (including the security company name, contact information, and the amount of security personnel):

No need for crowd control is anticipated, owing to the lack of sidewalks and no stopping allowed on the Sand Hill roadside. Participant assumes full personal responsibility for the lawful defense of the site.

**Americans with Disabilities (ADA) compliance**
Describe how the event will be accessible to people with disabilities (such as parking, restrooms, and accessible path of travel to all event functions):

N/A.

**Recyclables and garbage handling**
Describe the plan for cleanup and removal of recyclable goods and garbage during and after the event (include if additional street sweeping will be arranged).

All garbage generated by the event will be picked up promptly and removed from the site daily for sanitary and lawful disposal.

*Please note:* For larger events where additional garbage removal will be needed, please contact Recology at www.recologysanmateocounty.com or call (650) 595-3900. Failure to remove trash from event will result in a $250 fine.

## SECTION 3: SITE MAP CHECKLIST

Please provide a <u>detailed</u> site plan/route map of the event on a separate sheet.  If site map is larger than 11x17 size paper, please provide SIX (6) copies of this map in application packet. The map should include the following information:

| Yes | N/A | |
|-----|-----|---|
| ☒ | ☐ | Outline of event site, including names of streets or areas that are a part of the venue and surrounding area.  If the event includes a moving route (i.e. parade or run), indicate the direction of travel and start/finish locations. |
| ☐ | ☒ | Any street or lane closures |
| ☐ | ☒ | The locations of fencing, barriers or barricades. |
| ☐ | ☒ | Location of first-aid facilities |
| ☒ | ☐ | Location of all stages, platforms, booths, food areas, trash containers, tents, etc (include dimensions) |
| ☒ | ☐ | Generator locations and/or source of electricity |
| ☐ | ☒ | Placement of vehicles or trailers used for the event (include dimensions) |
| ☐ | ☒ | Anticipated parking locations and number of parking (include ADA parking) |
| ☒ | ☐ | Placement of promotional signs or banners |
| ☒ | ☐ | Placement of portable restrooms (including labeling ADA restrooms) |
| ☐ | ☒ | Exit locations for events with fences |
| ☒ | ☐ | Location of all event activities |
| ☒ | ☐ | Location of temporary lighting |
| ☒ | ☐ | Location of sound system |
| ☒ | ☐ | Fire truck access to existing building/structures shall remain clear and unobstructed (20 feet minimum) |
| ☒ | ☐ | Fire equipment shall remain clear and unobstructed (25 feet minimum) |
| ☐ | ☒ | For large event, traffic impact and traffic handling plan including re-routing of vehicles, bicycles, and pedestrians. |

Note: Incomplete and vague site maps will delay the permit process.


## SECTION 4: INSURANCE INFORMATION

A Certificate of Liability Insurance must be provided and must contain the following:
- The special event permit name must be listed as the one "insured."
- The policy must not expire before the planned event date.
- The policy must be for a minimum of $1,000,000 unless otherwise specified.
- The "description" should list the rental location, day, and event planned.
- The City of Menlo Park at 701 Laurel Street, Menlo Park, CA 94025 must be noted as "additional insured."

A special event permit <u>will not</u> be issued until the required application fees, insurance, and other supplementary materials, as indicated in the Special Event Application, have been received. A special event permit issued for a private function on private property is not required to submit proof of liability insurance to the City.

## SECTION 5: PUBLIC NOTIFICATION

Public Notification will be required for some permits based on your application. If noise ordinance is exceeded, the Planning Division will prepare a public notice to be mailed to all property owners, residents, and businesses within 300 feet of the subject property. The notice will state the decision of the City and will serve as the noise permit unless the request is appealed. The Planning Division will mail the notices on the decision date, which starts the 10-day appeal period. If the Planning Division does not receive an appeal in writing, the decision will be become effective on the 11th day. If the decision is appealed, the item will be scheduled for the next available Planning Commission meeting. The Planning Commission generally meets on the first and third Mondays of every month. The minimum lead-time between an appeal and a Planning Commission meeting is approximately 3-weeks. The decision will also be posted at the Civic Center and on the City's web page: www.menlopark.org.

## SECTION 6: FIRE DISTRICT NOTIFICATION

If necessary, you will be asked to seek approval of the Menlo Park Fire Protection District. They will be informed of any street closures and other impacts to emergency services. Please keep in mind that there are several streets within Menlo Park that cannot be closed because they are deemed primary response routes. You must receive Conditional of Approval from the City prior to contacting the Fire District.

## SECTION 7: POLICE STAFFING

For events requiring Police assistance, the Police Department will review the application and be involved in the initial meeting with the applicant. Based on the details for the event, the Police Department will provide an estimate of costs based on the number of officers needed and hours needed at the event (payment of 50% of estimated Police services is due before your permit can be issued). Post event, an invoice will be provided by the to the applicant for Police services (based on incurred costs, minus any pre-paid amount). Any additional costs incurred that were not anticipated such as extra staffing or longer hours will be billed to the applicant. All payments are due to the Menlo Park Police Department by contacting Sgt. Matt Ortega at (650) 330-6347. Non-payment for Police assistance after the event will result in the inability to apply for a special event permit in the future, until any balance is paid in full.

## SECTION 8: PARK USAGE

Rental fees for special events held on city parkland, picnic areas, or tennis courts may be applied and are subject to availability. Please review the city's Master Fee Schedule for current park usage fees. Additionally, the organizing party of an event held in these areas is responsible for following all park rules, usage guidelines, and city ordinances. Sharon Park is reserved for weddings only.

## SECTION 9: SOUND

Approval of a Special Event permit does not necessarily exempt the planned event from the requirements of Chapter 8.06 (Noise) of the Menlo Park Municipal Code. All sources of sound measured from any residential property shall not exceed 50 dBA during the "Nighttime" hours, or 60 dBA during the "Daytime" hours. Nighttime hours are considered the period between 10 p.m. and 7 a.m. daily. If you believe your planned event could exceed the noise limitations set by Chapter 8.06 of the Municipal Code, please discuss the noise permitting requirements with a member of the Planning Division. A noise permit can be obtained as part of the Special Events permit application, subject to review and action by the Planning Division and the public notification and appeal process set forth in Section 5. The Planning Division can be reached at (650) 330-6702 or by email at planning@menlopark.org.

## SECTION 10: CONFIRMATION

Please check all that apply:

- ☒ I have read all policies regarding the Special Event Application process.
- ☒ I have reviewed the Special Event Permit FAQs.
- ☒ I have read and will abide by all Sections as written and described herein.
- ☒ I am submitting the most current version of the Special Event Permit Application found at: www.menlopark.org/eventpermits
- ☒ I am providing the correct payment with my application.
- ☒ I have filled out all portions of this application completely and to the best of my knowledge.

MP000956

I hereby certify and agree that I shall be personally responsible on behalf of myself/organization for any damage sustained by the facility, property, or equipment, as a result of the occupancy of said facility or property by my group/organization. I hereby waive, release, discharge and agree to indemnify, defend and hold harmless the City, its officers, employees, and agents from and against any and all claims by any person or entity, demands, causes of action or judgments for personal injury, death; damage or loss of property, or any other damage and/or liability occasioned by, arising out of out of the event for the actions (active or passive) of invitees', event participants, event sponsors, and event spectators while on the property, or resulting from this reservation of the facilities or use or property. I hereby declare that I have read and understand and agree to abide by and to enforce the rules, regulations, and policies affecting the use of the facilities or property. If any portion of the Special Event is held on non-city owned property I have included letters of approval for each respective property owner.

3 June 2015

_____          _____
Signature of Applicant                Date

**Payment Information:**

☐ Cash   ☒ Check   ☐ Visa   ☐ Mastercard          Amount $250_____ ($125 minor / $250 major)

Account #_____   Exp. _____ Account Holder Name _____

I agree to pay the above charges and authorize the City of Menlo Park to charge these costs to my credit card. Checks payable to: City of Menlo Park.

Authorized Signature:_____

*Note: There is a $30 charge for returned checks. Additional fees from other city departments may be required before permit maybe issued, please refer to the Master Fee Schedule for updates on current fees.*

---

**Office Use Only:**

Date Permit Submitted:_____        Project No. _____
Permit Payment: $_____ Date _____        Processed By _____

| Approval: | Department | Received | Fee | Paid | Signature | Date |
|---|---|---|---|---|---|---|
| | Police | | (50% Est.) | ☐ | | |
| | Planning | | | ☐ | | |
| | Public Works Engineering | | | ☐ | | |
| | Public Works Maintenance | | | ☐ | | |
| | CSD/Recreation | | | ☐ | | |
| REQUIRED: Yes ☐ No ☐ | Fire District | | | ☐ | | |

**Event Permit Coordinator:** _____
☐ Application Initial Review Complete
☐ E-mail Acknowledgement Sent to Applicant          (Date: _____)
☐ Application Sent to Permit Committee
☐ Site Map Complete
☐ Insurance Certificate Provided
☐ Other Agencies Permits Included
☐ Public Notification Complete
☐ Approved to exceed noise ordinance: ☐Yes ☐No
☐ Staff Approvals Complete
☐ Traffic Control Plan Approved (Street closures only)
☐ Conditions-of-Approval or Denial Letter Sent          (Date: _____)
☐ Other Department Fees Paid
☐ Barricade Rental Information (Requesting _____ 3' barricades and _____ 12' barricades)
☐ Final Copies Sent to Approving Staff

Special Event Permit Application Approval:

_____          _____
Signature of Permit Coordinator                Date

Updated: 07/24/14

MP000957

# Exhibit B

MP000958



CITY OF
MENLO
PARK

OFFICE OF THE CITY ATTORNEY

1100 ALMA STREET / MENLO PARK, CA 94025 / 650.324.9300 / FAX 650.324.0227

September 21, 2015

VIA EMAIL: michael@massmeans.com

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

Re:    Special Event Permit

Dear Mr. Zeleny:

The City of Menlo Park ("City") is in receipt of your special event permit application submitted on July 10, 2015, to maintain a portable media presentation at the location of "2825 Sand Hill Rd, Menlo Park, CA 94025, at the median strip, per the attached." At this time the City is denying your application on the basis that it is incomplete and does not meet the criteria of a special event.

With respect to the application being incomplete, on July 24, 2015, I previously notified you by email that the application did not include an attachment indicating the specific location of the presentation/event, and requested additional information regarding your use of sound and lighting equipment. You responded by email on July 28, 2015, stating that you would be videotaping your presentation as part of a feature documentary and entertainment event. You again responded that the event will occur in the "median strip" and indicated the location to be the strip "directly across NEA headquarters," but you declined to provide any more detail at the time. The problem is that your application still does not indicate the exact location of the proposed event and how the presentation will be set up so that the City can analyze whether traffic control will be necessary or what other conditions might be necessary as part of the approval of the application nor the hours/length of the event. For example, there is no indication where you intend to place your tent, generator, video presentation, portable restroom, temporary lighting, sound system, etc. Further, you have stated there is no end time for the event and that the total hours are "indefinite."

With respect to the application not meeting the criteria for a special event, what you have set forth in your application is not an event that meets the City's definition of a special event. For example, the proposed event application states that it will not exceed 150 people, use any City street or right of way (even though the

Printed on recycled paper    N:\DATA\Clients\MMP\Admin\Misc\ZelenyM-1.lrt.wpd

Michael Zeleny
September 21, 2015 - Page 2

median is part of the right of way), require lane closures, require parking needs, generate a crowd of spectators, nor does it state that this is a community type event. To the contrary, you are proposing a "media production" of a one-man protest. If what you are actually intending is the filming of a movie, then the City has an application process, for which a film production permit is required. A copy of the City's "Film Production in Menlo Park" document is attached for your review.

Lastly, the City is concerned that what you are proposing to perform in the median strip between opposing lanes of traffic would be a violation of the Vehicle Code if it causes a visual impairment or visual distraction to oncoming traffic and vehicles traveling on Sand Hill Road. It would also likely be a safety hazard/danger to drivers on Sand Hill Road due to the rate of speed on the roadway and the proximity to Interstate 280. The median strip is too narrow to accommodate the film project as you have described in the application. Another concern is that it is illegal to open carry a firearm in the State of California. As you've described the proposed event, there does not appear to be any logical nexus or legitimate purpose of carrying a firearm.

Inasmuch as your application is incomplete and does not meet the definition of a special event, your application for a special event permit is denied.

If you wish to appeal this denial of your application, you must appeal the denial to the City's Special Event Permit Committee. I would ask that you notify me and Community Services Director Matt Milde at mlmilde@menlopark.org if you wish to seek an appeal.

Sincerely,

William L. McClure,
City Attorney

WLM:rr

Enclosure

cc:   Via email only
      Dave Bertini, Commander
      Matt Milde

## Film Production in Menlo Park

Film production in the City of Menlo Park must comply with following conditions:

1.  Permittee shall submit in writing all pertinent details regarding the filming including the date(s) and times of the filming including time needed for set-up and take down; a description of the nature of the filming; the location of the filming; a list of all equipment involved in the filming, including cars and other vehicles; the proposed location for the parking and storage of all such vehicles and equipment; the number of cast and crew members involved in the filming; and an indication of any special needs, such as amplified noise, etc. If granted, the permit's approval will be confined to such activities, locations and time schedules as submitted and approved.

2.  Three days prior to the beginning of filming, permittee shall provide written notice to residents and businesses within 200 feet of the proposed filming.

3.  Permittee shall obey all City Ordinances, rules and the guidance of City supervisory employees pertaining to the use of City property, including the location, parking and storage of vehicles and equipment, crowd and traffic control, and the restoration of premises to their original condition after use for filming purposes.

4.  Permittee will comply with the City of Menlo Park noise ordinance. Filming will be limited to the hours between 8:00 a.m. and 6:00 p.m. and will result in low to no noise levels. The use of any explosive, fireworks, or pyrotechnic devices is strictly prohibited.

5.  Permittee shall make arrangements for traffic control satisfactory to the Menlo Park Police Department prior to filming on City streets and in other public areas. Permittee will be charged to recover the cost of traffic control provided by the City. Permittee will legally park vehicles and will not require street closure or traffic control other than what is approved.

6.  Permittee shall covenant and agree to indemnify and hold harmless the City from any and all loss, cost, damages and expenses of any kind, including attorney fees, on account of personal injury or property damage resulting from any activity of Permittee on municipal property or in connection with its use of municipal property.

7.  Liability insurance in no way limits the indemnity agreement above, Permittee will furnish the City a Certificate of Liability Insurance acceptable to its Risk Management office showing combined single limit coverage for bodily injury and property damage, or the equivalent of such coverage, not less than $1 million. The City, including its officials, employees and agents, shall be named as additional insured in the Liability Policy. Contractual liability coverage insuring the obligations of this Agreement is also required. The insurance may not be canceled or substantially modified without ten (10) days written notice to the City Manager's Office.

8. Permittee shall pay, with a valid check, money order, credit card or cashier's check, a filming permit application fee of $150.00 in addition to the daily permit fees of $50 per day for still photography and short subject, $100 per day for industrials, and $150 per day for features, TV, music videos and commercials.

9. Permittee shall apply for a one-time Business License and pay, with a valid check, money order, credit card or cashiers check.   See Guide to Annual Business Licensee Fee Calculation for the fee schedule.

10. Permittee will adhere to the provisions and conditions set forth in the permit.  If Menlo Park Police Department or other City personnel are required to correct, mitigate, or provide any service not consented to under this permit, permittee will be required to pay for all services rendered.  Payment shall be made in the form of *a valid check, money order, credit card or cashiers check* immediately upon demand made by the City.

*PROJECT ADDRESS:* _____

Read and agreed on:

Date: _____

_____        _____
Signature                                                    Print name

Exhibit C

MP000963

Nicolas A. Flegel



**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Friday, April 15, 2016 1:35 PM
**To:** McClure, William; Cindy S. Elmquist; Bertini, David C; Milde, Matt L
**Cc:** Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Sigrid Van Bladel; Hawk, Robert B.; Arno Penzias
**Subject:** Re: Menlo Park Special Event Permit


"William L. McClure" <wlm@jsmf.com>,
"Cindy S. Elmquist" <cse@jsmf.com>
Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025
650-324-9300 Phone
650-324-0227 Fax

"David C. Bertini" <dcbertini@menlopark.org>,
"Matt L. Milde" <mlmilde@menlopark.org>,
The City of Menlo Park
701 Laurel St.
Menlo Park, CA 94025
650-330-6600


Dear Mr McClure,


I am lodging herewith an appeal of your denial of my application for a special event permit, by outlining its purpose and scope and responding to all of your objections in order.

1

MP000964

I have been protesting NEA's ongoing support of its venture partner Min Zhu and its coverup of his incestuous child rape since 2004. In the course of the ensuing litigation and subject to demands by Menlo Park city authorities, I have been forced to relocate my protests from the immediate vicinity of NEA's headquarters, to the narrow strip of public grounds surrounding the 16 private acres of the Rosewood Sand Hill compound located at 2825 Sand Hill Rd, Menlo Park, CA 94025. The median strip identified in his current application affords the only possible location for staging my protest in clear view of the NEA headquarters. My open display of firearms is germane to the message that responds to the death threats made against me and my family in the names and on the behalves of individuals and business entities sponsored and supported by NEA. The continual and open-ended nature of my protest responds to NEA's long-standing refusal to account for its responsibility in supporting and covering up the lawless conduct of its associates.

As to your claim that my application is incomplete, attached please find a map of the area in question, which clearly designates the specific and modest boundaries of my special event. That is all that the City of Menlo Park ("the City") can reasonably expect and require to analyze whether traffic control will be necessary or what other conditions might be necessary as part of its approval of my application. As suggested before, and witnessed by my past appearances in your jurisdiction, my use of sound and lighting equipment is subject to our ongoing mutual agreement on their time, place, and manner parameters. If you have any specific requests in this regard, please make them with no further ado, bearing in mind that all restrictions on my expressive conduct must be (1) content-neutral, (2) narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels for communication. (See *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983).) As resolved as I am to see my task through, I remain open to all reasonable accommodations.

While the First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired" (*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981), it protects the right of every citizen to "reach the minds of willing listeners [and] to do so, there must be opportunity to win their attention." (*Hill v. Colorado*, 530 U.S. 703 (2000).) My presence on NEA's grounds has been ruled out as a part of settling its trespass claims against me five years ago. The currently proposed location of my performance therefore represents my only remaining opportunity to address directly the public associated or connected with it. Please bear in mind the foregoing authorities in your attempts to deny me my right to speak in this way and venue.

With respect to the application not meeting the criteria for a special event, the City lacks the authority to define a special event subject to its permitting requirements, beyond ensuring that it does not disrupt the ordinary use of its public spaces. It is true that I am proposing a media production of a one-man protest. My primary aim, however, is to exhibit my media to the thousands of daily passerby on Sand Hill Road, even as I stream their reactions online. My communication needs to be both physically proximate for them, and available over the Internet for more distant audiences. This project falls squarely within the ambit of Constitutional protection of political speech. My production is no less deserving of such protection for being modestly scaled. Thus *Branzburg v. Hayes*, 408 U.S. 665, 704 (1972): "Liberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods."

While the First Amendment literally forbids the abridgment only of "speech", the Supreme Court has long recognized that its protection does not end at the spoken or written word, even as it acknowledged that not all conduct intended by the person engaging therein to express an idea is so protected. (See *United States v. O'Brien*, 391 U.S. 367 (1968).) For such conduct may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments". (See *Spence v. Washington*, 418 U.S. 405 (1974).) "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether [a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." (See *Texas v. Johnson*, 491 U.S. 397 (1989).) In sum, according to the Supreme Court's test for expressive conduct, known as the Spence-Johnson test, an action is protected by the First Amendment if: (1) the speaker-actor intends for the conduct to express a particularized message; and (2) that message would be understood by others. In the course of reaffirming the Spence-Johnson test in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), the Supreme Court ruled that "a narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a 'particularized message,' [...] would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schönberg, or Jabberwocky verse of Lewis Carroll." In the course of my protest, the expressive content of openly carried firearms presented as a means of defense both warranted and necessitated by my circumstances, will be bolstered by the concurrent multimedia presentation of the evidence of threats I received in the names and on the behalves of NEA's associates, the damage that they claim to have inflicted on my family, and their history of unlawful violence. Your study of my past displays should suffice to reassure you that my painstakingly particularized message will be infinitely easier to parse than The She-Wolf, Pierrot Lunaire, or Jabberwocky.

This brings me to the matter of my venue. Streets and sidewalks are "prototypal" examples of public fora, and have immemorially been considered a rightful place for public discourse. (See *Hague v. C.I.O.*, 307 U.S. 496 (1939).) Public fora "have achieved a special status in our law", for they "represent areas within which tolerance for inhibitions on speech, petition, and assembly is at a minimum." The government therefore "bear[s] an extraordinarily heavy burden to regulate speech in such locales." (See *N.A.A.C.P. v. City of Richmond*, 743 F.2d 1346 (9th Cir. 1984).) "And just as streets and sidewalks are

2

MP000965

prototypical examples of public fora, political speech related to current events is the prototypical example of protected speech." (See *American-Arab Anti-Discrimination Committee v. City of Dearborn* ("AAADC"), 418 F.3d 600 (6th Cir. 2005).) In the matter at hand, the current event at issue is NEA's ongoing financial support of its child-raping protégé Min Zhu. As long as I do not "realistically present serious traffic, safety, and compelling-use concerns beyond those presented on a daily basis by ordinary use of the streets and sidewalks," you cannot require me to obtain a permit for exercising my Constitutional rights, let alone deny its issuance. (See *Santa Monica Food Not Bombs v. City of Santa Monica* ("SMFNB"), 450 F.3d 1022 (9th Cir. 2006).) Moreover, I generally do not need a permit to hold a rally or a march on public grounds while obeying traffic laws. (See SMFNB, 450 F.3d at 1039, 1040-43; AAADC, 418 F.3d at 608.) Thus I am asking for nothing more nor less than your approval of my rightful, conspicuous presence on public grounds in full compliance with all applicable laws.

As to my compliance with traffic laws, to repeat myself, I do not intend use any City street or right of way. The California Vehicle Code Section 525 defines the right of way as "the privilege of the immediate use of the highway". In this regard, the right of way in the median island, where I intend to conduct my performance, is ordinarily reserved for pedestrians alone. The small part of the median island that I intend to occupy will leave plenty of room for the passage of vehicles in any emergency, e.g. as regards low trucks allowed to do so pursuant to CVC Section 21719. I do not intend to present any visual impairment to oncoming traffic and vehicles traveling on Sand Hill Road. As to presenting a visual distraction, I am well within my First Amendment rights to do so in a rightful place for public discourse, within which tolerance for your inhibitions on speech, petition, and assembly is at a minimum.

To clarify the nature of the proposed multimedia production in the context of my one-man protest, I am not intending it for the filming of a movie, and therefore you may not require me to obtain a film production permit. Kindly recall that I have borne the brunt of abusive and oppressive conduct by the City of Menlo Park Police Department ("the police") since the inception of my protests a decade ago. This abuse and oppression included, without limitation, illegal surveillance and harassment of myself and my associates, arbitrary imposition of constraints on our performance, and participation in my malicious prosecution in San Mateo Superior Court, wherein the prosecutor expressly and unequivocally acknowledged on court record that she was seeking my criminal conviction on behalf of NEA. Accordingly, I would not dare to appear in your jurisdiction without recording each of my interactions with your minions, for my security and theirs alike. And I have every right to make this recording without asking or paying for your permission.

As explained by Evan Bernick and Paul Larkin in "Filming the Watchmen: Why the First Amendment Protects Your Right to Film the Police in Public Places", lower federal courts have generally said that the First Amendment protects a right to record and photograph law enforcement in public view. Some restrictions may be constitutional, but simply prohibiting the recording because the person is recording the police cannot be constitutional. While the Supreme Court is yet to consider this question, such is the general view in the federal appellate decisions that have done so. An apparent exception is a recent federal trial court decision in *Fields v. City of Philadelphia* and *Geraci v. City of Philadelphia*, which takes a different, narrower approach: There is no constitutional right to videorecord police, the court says, when the act of recording is unaccompanied by "challenge or criticism" of the police conduct. But even under this restrictive standard, I remain well within my rights to videorecord at will, without warning, and regardless of permission, all my public performances in your jurisdiction, for the sake of safety and transparency. In light of the history of my peaceful protests being subjected to oppressive scrutiny and censure by the City authorities, I am planning to exercise my rights under the First Amendment to film my appearances there, for the express purpose of mounting a potential challenge and criticism of the police conduct in the event of further obstructions mounted by Menlo Park. According to *Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969) the discretion of public officials charged with permitting First Amendment activity must be limited by "narrow, objective, and definite standards." It therefore falls upon the City to identify such standards that deny my rights or subject them to permitting requirements.

Lastly, your concern is that it is illegal to open carry a firearm in the State of California is likewise misdirected. It is none of your business to seek or scrutinize any logical nexus or legitimate purpose of carrying a firearm the proposed event. I am well within my rights in carrying a firearm, either openly or concealed, in the course of an entertainment event, as its authorized participant, as protected by the Constitution of the United States, and clearly warranted by law in the state of California.

Thus California Penal Code Section 25400 (a) (2): "A person is guilty of carrying a concealed firearm when the person does any of the following: [...] Carries concealed upon the person any pistol, revolver, or other firearm capable of being concealed upon the person." Whereas P.C. Section 25510 qualifies this ban: "Section 25400 does not apply to, or affect, any of the following: (a) The possession of a firearm by an authorized participant in a motion picture, television, or video production, or an entertainment event, when the participant lawfully uses the firearm as part of that production or event, or while going directly to, or coming directly from, that production or event. (b) The transportation of a firearm by an authorized employee or agent of a supplier of

3

firearms when going directly to, or coming directly from, a motion picture, television, or video production, or an entertainment event, for the purpose of providing that firearm to an authorized participant to lawfully use as a part of that production or event." Please be assured that I intend to authorize myself as a participant in my own entertainment event.

A similar exemption applies to the ban on the open carrying of an unloaded handgun. Thus P.C. Section 26350 (a) (1): "A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following: (A) A public place or public street in an incorporated city or city and county." Whereas P.C. Section 26375 qualifies this ban: "Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses the handgun as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event."

Similar exemptions apply to long guns. Thus P.C. Section 26400 (a): "A person is guilty of carrying an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county." Whereas P.C. Section 26405 qualifies this ban: "Section 26400 does not apply to, or affect, the carrying of an unloaded firearm that is not a handgun in any of the following circumstances: [...] (r) By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses that firearm as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event." In short, conspicuous display of otherwise legally possessed unloaded firearms in the course of my entertainment event is my Constitutional right under the First Amendment, expressly protected by California statutes. In the event, these firearms will include, without limitation, a pair of H&K P7M13 handguns, an LRB M25 designated marksman rifle, a Winchester M97 trench shotgun with an M1917 Remington bayonet, and a semiautomatic, belt-fed, tripod mounted Browning M1919a4, all conspicuously adjoined by ample supplies of ammunition.

I trust that I have met your concerns over the completeness of my application. Please acknowledge the receipt of this email and approve my application at your earliest convenience. To repeat myself, we are equally willing to negotiate or litigate. Please refer to *Lefemine v. Wideman*, 568 U.S. ___ (2012), which held that a plaintiff who secured a permanent injunction but no monetary damages was a "prevailing party" under 42 U.S.C. § 1988 and could receive attorney fees, where the injunction ordered the defendant officials to change their behavior in a way that directly benefited the plaintiff, who could thereafter engage in demonstrations without fear of sanctions with which police had previously threatened him. As public officials, NEA's minions among your City colleagues enjoy qualified immunity from damages suits if they violate my rights, but only as long as they do not violate "clearly established" law. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." (See *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).) In short, your personal liability will be richly borne out by the foregoing statutes and case law. The last issue that remains to be litigated conclusively is the expressive content of openly carried firearms. In this connection, please refer to *Nordyke v. King*, 563 F. 3d 439 (9th Cir. 2009), wherein the state of California tacitly conceded the issue even before the Supreme Court incorporated the Second Amendment in *McDonald v. Chicago*, 561 U.S. 742 (2010). Long story short, if you continue siding with NEA's minions, I will win at the City's certain and considerable expense.

---

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com

7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373

Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Mon, Sep 21, 2015 at 2:12 PM, Cindy S. Elmquist <cse@jsmf.com> wrote:
>
> Bill McClure requested I forward to you the attached letter with enclosure thereto.
>
>
>
> Cindy S. Elmquist, Assistant to William L. McClure

4

```
>
> Jorgenson, Siegel, McClure & Flegel, LLP
>
> 1100 Alma Street, Suite 210
>
> Menlo Park, CA 94025
>
> (650) 324-9300 Phone
>
> (650) 324-0227 Fax
>
>
>
>
```

5

MP000968