# EXHIBIT A – PART 3



# Exhibit D

MP000970

**Nicolas A. Flegel**

| | |
|---|---|
| From: | Robin H. Riggins |
| Sent: | Wednesday, May 04, 2016 10:53 AM |
| To: | Nicolas A. Flegel |
| Subject: | FW: MP/ Zeleny Permit |
| Attachments: | ZelenyM-2a-ltr.pdf |

FYI.

From: Robin H. Riggins
Sent: Wednesday, May 04, 2016 10:53 AM
To: 'michael@massmeans.com' <michael@massmeans.com>
Cc: William L. McClure <wlm@jsmf.com>
Subject: MP/ Zeleny Permit

Dear Mr. Zeleny:

      Pursuant to Mr. McClure's request, please find attached his letter to you of today's date concerning the above-mentioned matter.
Thank you for your attention to this matter.

Sincerely,

Robin Riggins
Secretary to
William L. McClure, Esq.

Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025

Tel. 650/ 324-9300
Fax. 650/ 324-0227

1

MP000971



OFFICE OF THE CITY ATTORNEY

1100 ALMA STREET / MENLO PARK, CA 94025 / 650.324.9300 / FAX 650.324.0227

May 4, 2016

VIA EMAIL: michael@massmeans.com
AND U.S. MAIL

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

Re:   Appeal of Denial of Special Event Permit Application

Dear Mr. Zeleny:

The City of Menlo Park ("City") is in receipt of your email dated April 15, 2016. Your email indicates that you are lodging an appeal of the denial of your special event permit application. The original special event permit application was submitted on July 10, 2015, to which the City formally responded by letter dated September 21, 2015. In that letter, I indicated that your application was being denied as it was incomplete and did not meet the criteria of a special event.

Your email of April 15, 2016, outlines several modifications and provides additional information to supplement your original application, and therefore, the City is treating it as a revised application rather than an appeal. The April 16th email includes a Google map with a red box showing the proposed location of the event. The email also indicates that you no longer intend to film a documentary, but instead will put on an "entertainment event" in which you will be live-streaming a video showing the reaction of individuals who drive by your protest. Lastly, the revised application indicates in the "Event Narrative" that you "shall be present on site around the clock, equipped with fully operational, exposed and loaded firearms, in full compliance with all applicable laws."

Based on a review of your revised application, the City is denying your application on the basis that it is incomplete and it does not meet the criteria of a special event. With respect to the revised application still being incomplete, the application fails to describe how you intend to set up your presentation so that the City can analyze whether traffic control will be necessary or what other conditions might be necessary as part of the approval of the application, nor does it specify the hours/length of the event. For example, there is no indication where you intend to place your tent, generator, video presentation, portable rest room,

Printed on recycled paper

Exhibit D

MP000970

**Nicolas A. Flegel**

| | |
|---|---|
| From: | Robin H. Riggins |
| Sent: | Wednesday, May 04, 2016 10:53 AM |
| To: | Nicolas A. Flegel |
| Subject: | FW: MP/ Zeleny Permit |
| Attachments: | ZelenyM-2a-ltr.pdf |

FYI.

From: Robin H. Riggins
Sent: Wednesday, May 04, 2016 10:53 AM
To: 'michael@massmeans.com' <michael@massmeans.com>
Cc: William L. McClure <wlm@jsmf.com>
Subject: MP/ Zeleny Permit

Dear Mr. Zeleny:

     Pursuant to Mr. McClure's request, please find attached his letter to you of today's date concerning the above-mentioned matter.
Thank you for your attention to this matter.

Sincerely,

Robin Riggins
Secretary to
William L. McClure, Esq.

Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025

Tel. 650/ 324-9300
Fax. 650/ 324-0227

1

MP000971



OFFICE OF THE CITY ATTORNEY

1100 ALMA STREET / MENLO PARK, CA 94025 / 650.324.9300 / FAX 650.324.0227

May 4, 2016

**VIA EMAIL : michael@massmeans.com**
**AND U.S. MAIL**

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

Re:    Appeal of Denial of Special Event Permit Application

Dear Mr. Zeleny:

The City of Menlo Park ("City") is in receipt of your email dated April 15, 2016. Your email indicates that you are lodging an appeal of the denial of your special event permit application. The original special event permit application was submitted on July 10, 2015, to which the City formally responded by letter dated September 21, 2015. In that letter, I indicated that your application was being denied as it was incomplete and did not meet the criteria of a special event.

Your email of April 15, 2016, outlines several modifications and provides additional information to supplement your original application, and therefore, the City is treating it as a revised application rather than an appeal. The April 16th email includes a Google map with a red box showing the proposed location of the event. The email also indicates that you no longer intend to film a documentary, but instead will put on an "entertainment event" in which you will be live-streaming a video showing the reaction of individuals who drive by your protest. Lastly, the revised application indicates in the "Event Narrative" that you "shall be present on site around the clock, equipped with fully operational, exposed and loaded firearms, in full compliance with all applicable laws."

Based on a review of your revised application, the City is denying your application on the basis that it is incomplete and it does not meet the criteria of a special event. With respect to the revised application still being incomplete, the application fails to describe how you intend to set up your presentation so that the City can analyze whether traffic control will be necessary or what other conditions might be necessary as part of the approval of the application, nor does it specify the hours/length of the event. For example, there is no indication where you intend to place your tent, generator, video presentation, portable rest room,

Printed on recycled paper

MP000972



4

MP000978

Exhibit F

MP000979

Community Services



**CITY OF MENLO PARK**

June 16, 2016

VIA EMAIL: michael@massmeans.com
AND U.S. MAIL

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA. 90046

RE: Special Event Permit Application Denial

Dear Mr. Zeleny,

Thank you for submitting a Special Event Application with the City of Menlo Park. Upon reviewing your application and appeal, approval for your special event has been denied for the following reason(s):

- Incomplete Application
- Does not meet the criteria for Special Event
- Other:
    - No defined term
    - The exhibition of loaded and or unloaded firearms is prohibited by law
    - Location proposed creates a traffic and safety hazard
    - Driving a vehicle onto a center medium is prohibited by California Vehicle Code section 21651
    - Illuminated displays which impair a driver's vision are prohibited by California Vehicle Code section 21466.5

Determination of the approval or denial of any application is at the discretion of the Special Event Permit Committee acting on behalf of the Community Services Director. If you feel this decision has been made in error or warrants a permit outside of the policies established by the City of Menlo Park you may appeal in writing to City Manager, Alex McIntyre. He can be reached at admcintyre@menlopark.org.

If you have any questions, please feel free to contact me.

Matt Milde
Recreation Coordinator
City of Menlo Park



2

(650) 330-2223
mlmilde@menlopark.org

PRIVATE ROAD CLOSURE
The City of Menlo Park is unable to issue a special event permit if the event includes a road closure for private or exclusive residential use such as a birthday party, reunion, wedding, anniversary, etc. The Arrillaga Family Recreation Center (650-330-2200), Onetta Harris Community Center (650-330-2250) and picnic/park facilities (650-330-2220) are community resources designated for this type of function.

MP000981

Nicolas A. Flegel

| | |
|---|---|
| **From:** | Michael Zeleny <michael@massmeans.com> |
| **Sent:** | Friday, July 01, 2016 5:00 PM |
| **To:** | Brandell, Cherise E |
| **Cc:** | William L McClure; Nicolas A. Flegel; Bertini, David C; Milde, Matt L; McIntyre, Alex D; Aguilar, Pamela I; David W. Affeld; Scott Sandell; Subrah Iyar; Dick Kramlich; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzias |
| **Subject:** | [BULK] Re: MP/ Zeleny Permit |

Dear Dr Brandell,

I have received and reviewed your final denial of my "Special Event Permit" application in Menlo Park. I hereby give notice of appeal of your denial to the Menlo Park City Council and request to have a hearing in this matter conducted by the City of Menlo Park.

In the mutual interests of efficiency, I would appreciate your disclosure of any legal authority you are claiming for the proposition that "[s]pecial events by their very nature as being 'special' are for a defined term and cannot be permanent or open-ending." Likewise, I would appreciate a disclosure of any legal authority your colleagues are claiming in support of their insistence that my non-profit, public interest videography in a public venue located within its jurisdiction requires a film permit from the City of Menlo Park.

In response to your erroneous interpretation of "authorized participants in a motion picture, television, or video production, or an entertainment event" within the meaning of California Penal Code §§ 26405 and 26375, please be advised that I have applied for an Entertainment Firearms Permit pursuant to California Code Penal Code §§ 29500-29535, and intend to submit it at the said hearing that I plan to attend with my attorney David W. Affeld. Please indicate if you require any additional documentation in this regard.

Lastly, please indicate whether the hearings of the Menlo Park City Council are routinely recorded on video, and if so, whether these video recordings are made available to concerned parties. If not, please be advised that I intend to have the hearing recorded pursuant to California Government Code § 11124.1(a) and Cal Government Code §§ 54953.5(a),-.6.

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | zubrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Fri, Jun 24, 2016 at 10:26 AM, Brandell, Cherise E <cebrandell@menlopark.org> wrote:

Mr. Zeleny – please see letter regarding your appeal of a special event permit denial with the City of Menlo Park.

Cherise Brandell, PhD
Community Services Director

1

MP000982

Exhibit G

MP000983

City of Menlo Park

From: Michael Zeleny [mailto:michael@massmeans.com]
Sent: Friday, June 17, 2016 11:50 AM
To: Milde, Matt L; McClure, William
Cc: Robin H. Riggins; Brandell, Cherise E; Cindy S. Elmquist; Bertini, David C; Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzias

Subject: Re: MP/ Zeleny Permit

Gentlemen,

Thank you for your response. To clarify my application in the interest of identifying the points of intractable contention, I am willing to accommodate all your reasonable restrictions except for the following:

1. The concealed and open carry of unloaded firearms by an authorized participant in an entertainment event, is expressly authorized by California Penal Code Sections 25510 and 26375. Your denial of my statutory right is therefore groundless and legally sanctionable.
2. No legally cognizable justification exists for your imposition of a "defined term" on my Constitutionally protected speech.

Please indicate whether you prefer to proceed to litigation under 42 U.S. Code §1983, or concede these points and negotiate the remaining parameters of my performance.

Michael@massmeans.com Zelenv@post.harvard.edu | larvatus.livejournal.com | subrah.com

7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373

Wronged by the high and mighty? Cut them down to size with legally safe and

ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Thu, Jun 16, 2016 at 3:08 PM, Milde, Matt L <mlmilde@menlopark.org> wrote:

Dear Mr. Zeleny,

2

Thank you for submitting a Special Event Application with the City of Menlo Park. Upon reviewing your application and appeal, approval for your special event has been denied. Please see the attached letter regarding the specific details of this determination. If you wish to appeal this decision, please refer to the directions contained within this letter.

Regards,

Matt Milde

Recreation Coordinator

City of Menlo Park

(650) 330-2223

mimilde@menlopark.org

Special Events | PAC Events | Aquatics | Event Permits | Parks | Tennis Courts

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Wednesday, June 15, 2016 4:58 PM
**To:** McClure, William; Robin H. Riggins; Brandell, Cherise E
**Cc:** Cindy S. Elmquist; Bertini, David C; Milde, Matt L; Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzias
**Subject:** Re: MP/ Zeleny Permit

Dear Mr McClure,

The requested date of my performance is upon us. Kindly issue your definitive ruling on my application, so that we may proceed either to negotiate its time, place, and manner parameters, or to litigate the matter of your infringement of my civil rights.

—

Michael@massmeans.com  Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com

3

# Exhibit H

MP000986

Nicolas A. Flegel

| | |
|---|---|
| **From:** | Brandell, Cherise E <cebrandell@menlopark.org> |
| **Sent:** | Friday, June 24, 2016 10:27 AM |
| **To:** | Michael Zeleny |
| **Cc:** | William L. McClure; Nicolas A. Flegel; Bertini, David C; Milde, Matt L; McIntyre, Alex D; Aguilar, Pamela I |
| **Subject:** | RE: MP/ Zeleny Permit |
| **Attachments:** | Zeleny Letter June 24 final.pdf |

Mr. Zeleny -- please see letter regarding your appeal of a special event permit denial with the City of Menlo Park.

Cherise Brandell, PhD
Community Services Director
City of Menlo Park

From: Michael Zeleny [mailto:michael@massmeans.com]
Sent: Friday, June 17, 2016 11:50 AM
To: Milde, Matt L; McClure, William
Cc: Robin H. Riggins; Brandell, Cherise E; Cindy S. Elmquist; Bertini, David C; Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzias
Subject: Re: MP/ Zeleny Permit

Gentlemen,

Thank you for your response. To clarify my application in the interest of identifying the points of intractable contention, I am willing to accommodate all your reasonable restrictions except for the following:

1. The concealed and open carry of unloaded firearms by an authorized participant in an entertainment event, is expressly authorized by California Penal Code Sections 25510 and 26375. Your denial of my statutory right is therefore groundless and legally sanctionable.
2. No legally cognizable justification exists for your imposition of a "defined term" on my Constitutionally protected speech.

Please indicate whether you prefer to proceed to litigation under 42 U.S. Code §1983, or concede these points and negotiate the remaining parameters of my performance.

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and
ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Thu, Jun 16, 2016 at 3:08 PM, Milde, Matt L <mlmilde@menlopark.org> wrote:

Dear Mr. Zeleny,

1

MP000987



Community Services

**MENLO PARK**

June 24, 2016

RE: Special Event Denial Appeal

Mr. Zeleny,

Your email dated June 17, 2016 has been forwarded to me as an appeal to the denial of your "Special Event Permit" application. I have discussed your application and denial with staff, and have considered all communications and information you submitted as part of your application.  After review, I will not be overruling the denial of your application for the following reasons:

•       Your application for a special event permit continues to have no term attached to it. Special events by their very nature as being "special" are for a defined term and cannot be permanent or open-ending.

•       The open carry or concealed possession of firearms in a public place is prohibited by law; California Penal Code sections 25400, 26350, and 26400.

•       The sections you quoted, which give authorization for the carrying of firearms, are specifically for "authorized" participants in an entertainment, motion picture or television production. The City of Menlo Park has not "authorized" you as a participant in a motion picture, television, or video production, or an entertainment event; and you have not provided evidence that any other governmental agency has authorized your entertainment event.

Please be aware that the above denial of the application for a Special Event Permit is in no way a denial of your First Amendment right to protest.  No permit is necessary for a protest in the same location you have protested in the past, as long as it is conducted within the confines of the law and local ordinance, including Penal Code sections regulating the display of firearms cited above.

As Community Services Director, I have fulfilled my responsibility to review your appeal and provide you notice of my decision. As part of the City's appeals process, your next step, if you disagree with my decision, would be to appeal my decision to the City Manager, Alex McIntyre.  If you wish to appeal my decision to the City Manager, please notify me, as well as City Manager Alex McIntyre (admcintyre@menlopark.org); with a copy of your notification to City Clerk Pamela Aguilar (piaguilar@menlopark.org), Commander Dave Bertini (dcbertini@menlopark.org), and City Attorneys William L. McClure (wlm@jsmf.com) and Nicolas A. Flegel (naf@jsmf.com).   Please specify in your notification if you wish to have a hearing conducted or if you want the City Manager to base his decision on all your communications to date received by City staff.

2

If you intend to submit additional documentation, please indicate what you intend to submit.

Lastly, so you are aware, any decision made by the City Manager may be appealed to the City Council, who will have the final decision making authority for the City of Menlo Park.

Cherise Brandell

MP000989

Exhibit I

MP000990

ROBERT J. LANZONE
JEAN B. SAVAREE
GREGORY J. RUBENS
CAMAS J. STEINMETZ

KAI RUESS
KIMBERLY L. CHU

Gregory J. Rubens, Ext. 202
Email: grubens@adcl.com

LAW OFFICES
## AARONSON, DICKERSON, COHN & LANZONE
A PROFESSIONAL CORPORATION
1001 LAUREL STREET, SUITE A
SAN CARLOS, CALIFORNIA 94070
PHONE: 650-593-3117
FAX: 650-453-3911
www.adcl.com

MICHAEL AARONSON
(1910-1996)
KENNETH M. DICKERSON
(1928-2006)
MELVIN E. COHN
(1917-2014)

July 20, 2016

Via First Class Mail and Email
Michael Zeleny
7576 Willow Glen Rd
Los Angeles, CA 90046

Re: *Notice of Hearing Date on Appeal of Special Events Permit*

Dear Mr. Zeleny:

I have been retained by the City of Menlo Park to advise the City Manager on your appeal of the decision of the Community Services Director denying your Application for a City Special Event Permit. It is my understanding that this is the process employed by the City of Menlo Park for appeals of discretionary administrative decisions.

The hearing on your appeal is set for August 11, 2016 at 2:00 pm in the office of the City Manager at City Hall, 701 Laurel Street, Menlo Park, California. Should you choose to do so, you may appear at the appeal hearing telephonically, by dialing (650) 330-6610. If you chose to appear telephonically, you must deliver any additional written, digital or other materials in support of your appeal before the hearing concludes.

The hearing is scheduled to last two hours. If you require more time, you should let me know, and the hearing can be rescheduled.

This will be considered a "de novo" appeal, meaning the City Manager is not bound by the prior decision and can make his own independent decision based on the testimony, materials presented, information presented to the City, facts, relevant law and regulations.

Please have your attorney contact me if you have any concerns.

Very truly yours,

Gregory J. Rubens

Cc: David W. Affeld, Esq.
Nicole Mariano
Alex McIntyre

MP000991

**Exhibit J**

MP000992

ROBERT J. LANZONE
JEAN B. SAVAREE *
GREGORY J. RUBENS
CAMAS J. STEINMETZ

KAI RUESS
KIMBERLY LI CHU

Gregory J. Rubens, Ext. 202
Email: grubens@adcl.com

LAW OFFICES
## AARONSON, DICKERSON, COHN & LANZONE
A PROFESSIONAL CORPORATION
1001 LAUREL STREET, SUITE A
SAN CARLOS, CALIFORNIA 94070
PHONE: 650-593-3117
FAX: 650-453-3811
www.adcl.com

MICHAEL AARONSON
(1918-1998)
KENNETH M. DICKERSON
(1935-2008)
MELVIN E. COHN
(1917-2016)

July 20, 2016

**Via First Class Mail and Email**
Michael Zeleny
7576 Willow Glen Rd
Los Angeles, CA 90046

Re:   *Notice of Hearing Date on Appeal of Special Events Permit*

Dear Mr. Zeleny:

I have been retained by the City of Menlo Park to advise the City Manager on your appeal of the decision of the Community Services Director denying your Application for a City Special Event Permit. It is my understanding that this is the process employed by the City of Menlo Park for appeals of discretionary administrative decisions.

The hearing on your appeal is set for August 11, 2016 at 2:00 pm in the office of the City Manager at City Hall, 701 Laurel Street, Menlo Park, California. Should you choose to do so, you may appear at the appeal hearing telephonically, by dialing (650) 330-6610. If you chose to appear telephonically, you must deliver any additional written, digital or other materials in support of your appeal before the hearing concludes.

The hearing is scheduled to last two hours. If you require more time, you should let me know, and the hearing can be rescheduled.

This will be considered a "de novo" appeal, meaning the City Manager is not bound by the prior decision and can make his own independent decision based on the testimony, materials presented, information presented to the City, facts, relevant law and regulations.

Please have your attorney contact me if you have any concerns.

Very truly yours,

Gregory J. Rubens

Cc:   David W. Affeld, Esq.
      Nicole Mariano
      Alex McIntyre

MP000993

Nicolas A. Flegel

| | |
|---|---|
| From: | Michael Zeleny <michael@massmeans.com> |
| Sent: | Wednesday, July 13, 2016 11:53 PM |
| To: | Milde, Matt L |
| Cc: | Brandell, Cherise E; William L. McClure; Nicolas A. Flegel; Bertini, David C; McIntyre, Alex D; Aguilar, Pamela I; David W. Affeld; Scott Sandell; Subrah Iyar; Dick Kramlich; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B; Arno Penzias |
| Subject: | Re: MP/ Zeleny Permit |
| Attachments: | criminal history.pdf; 07.12.16 - Permit Letter.pdf |

Dear Mr Milde,

In response to your attached letter, I respectfully request you to schedule a hearing in this matter with the City Manager at his earliest convenience, via a teleconference with me and my lawyer David W. Affeld. This matter has been dragged out long enough. We look forward to its speedy and definitive determination by the City of Menlo Park; whether it is to ensue in the City's belated authorization of my special event, or our litigation for deprivation of my rights pursuant to 42 U.S. Code § 1983 at the City's eventual expense.

In the furtherance of efficiency, please find attached herewith a copy of my current criminal history issued by the California Department of Justice. Pursuant to California Penal Code § 29515 (b), the Department of Justice "shall issue an entertainment firearms permit" to the applicant, "only if the records indicate that the applicant is not prohibited from possessing or receiving firearms pursuant to any federal, state, or local law." As witness my record, I am fully qualified for a prompt, non-discretionary issuance of an entertainment firearms permit that will satisfy the City's erroneous interpretation of "authorized participants in a motion picture, television, or video production, or an entertainment event" within the meaning of California Penal Code §§ 26405 and 26375.

---

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and
ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Tue, Jul 12, 2016 at 4:11 PM, Milde, Matt L <mlmilde@menlopark.org> wrote:

Mr. Zeleny – please see the letter regarding your appeal of a special event permit denial with the City of Menlo Park.

Matt Milde

Recreation Coordinator

City of Menlo Park

(650) 330-2223

mlmilde@menlopark.org

1

MP000994



**KAMALA D. HARRIS**
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

BUREAU OF CRIMINAL INFORMATION AND ANALYSIS
P.O. Box 903417
SACRAMENTO, CA 94203-4170

June 30, 2016

MICHAEL ZELENY
7576 WILLOW GLEN RD
LOS ANGELES, CA 90046

RE:   California Criminal History Information

Dear Applicant:

   This letter is in response to your record review request concerning the existence of information maintained in the California state summary criminal history files, as defined in subdivision (a) of Section 11105. Your fingerprints did identify to a record maintained in these files, and as such, a copy of that record is enclosed. If you wish to challenge the accuracy or completeness of your record, please complete and return the enclosed form (BCIA 8706) and supporting documentation to the address noted above. As requested, a copy of this record review response has been sent to your designee.

   Pursuant to California Penal Code section 11121, the purpose of a record review request is to afford an individual with a copy of their record and to refute any erroneous or inaccurate information contained therein.  The intent is not to be used for licensing, certification or employment purposes.

   Additionally, California Penal Code sections 11125, 11142, and 11143 does not allow for a person or agency to make a request to another person to provide them with a copy of an individual's criminal history or notification that a record does not exist; does not allow an authorized person to furnish the record to an unauthorized person; nor does it allow an unauthorized person to buy, receive or possess the record or information.  A violation of these section codes is a misdemeanor.

Sincerely,

*Cindy Santos*

Record Review Unit
Applicant Information and Certification Program
Bureau of Criminal Information and Analysis

For   KAMALA D. HARRIS
Attorney General

Enclosures
BCIA 8711d (Rev. 05/16)

MP000995

```
4CMTDP737036.IH
RE: QHY.CA0349400.09502469.APPUSR.        DATE:20160630 TIME:07:07:34
RESTRICTED-DO NOT USE FOR EMPLOYMENT,LICENSING OR CERTIFICATION PURPOSES
ATTN:APPUSR

** III CALIFORNIA ONLY SOURCE RECORD
CII/A09502469
DOB/19580226     SEX/M RAC/OTHER
HGT/511  WGT/180  EYE/HAZ  HAI/BRO  POB/SX
CTZ/ROMANIA/RUMANIA
NAM/001 ZELENY,MICHAEL

FBI/293068MA2
DOB/19560226
DMV/C4374807
SOC/360542687
OCC/CONSULT; STUDENT
* * * *

ARR/DET/CITE:        NAM:001 DOB:19580226
19900711   CAUV PD LOS ANGELES

CNT:001    #90-2785
  626.10(A) PC-POSSESS KNIFE/ETC AT SCHOOL        TOC:M

COURT:              NAM:001
19900810  CAMC WEST LOS ANGELES

CNT:001    #90W05955
  626.10(B) PC-POSS WPN/ETC ON CAMPUS:NOT F/ARM   TOC:F
  DISPO:DISMISSED/FURTHERANCE OF JUSTICE
* * * *

APPLICANT:          NAM:001
19940419   CASG COLLECT & INVEST SERV, SACRAMENTO

CNT:001    #CSI 983525
  APPLICANT SECURITY GUARD                   TOC:N
* * * *

APPLICANT:          NAM:001
19940928   CASO LOS ANGELES

CNT:001
  APPLICANT PEACE OFFICER AUXILIARY          TOC:N
* * * *

ARR/DET/CITE:       NAM:001  DOB:19560226
20020908   CAPD LA SEVENTY SEVEN

CNT:001    #7408911
  12025(A)(2) PC-CCW ON PERSON               TOC:M
  ARR BY:CAPD LOS ANGELES
  ADR:090802  (1209, AMHERST AV, 302,  , LA, CA,  }
  SCN:48922510055
  DCN:T6097782950219000211

COURT:              NAM:001
20030411  CASC LOS ANGELES METRO

CNT:001    #2CR11665
  LOCAL ORDINANCE VIOLATION                  TOC:M
  DISPO:ACQUITTED/NOT GUILTY
```

MP000996

```
CNT:002
   653K PC-POSSESS/SELL SWITCH-BLADE KNIFE          TOC:M
   DISPO:ACQUITTED/NOT GUILTY

CNT:003
   12025(A)(2) PC-CCW ON PERSON                     TOC:M
   DISPO:ACQUITTED/NOT GUILTY
 *  *  *  *

APPLICANT:             NAM:001
20110218   CADJ SACRAMENTO

CNT:001
   APPLICANT FIREARM ELIGIBILITY CERT               TOC:N
   SCN:U28E0490001 ATI-B049ZEM852
       *     *     *     END OF MESSAGE       *     *     *
```

MP000997

*KAMALA D. HARRIS*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*
BUREAU OF CRIMINAL INFORMATION AND ANALYSIS
P.O. Box 903417
SACRAMENTO, CA 94203-4170

## CLAIM OF ALLEGED INACCURACY OR INCOMPLETENESS

I have examined a copy of my California State Summary Criminal History Record as contained in the files of the Department of Justice, Bureau of Criminal Information and Analysis, and wish to take exception to its accuracy and/or completeness.

NAME: _____     CII NUMBER: _____
(LAST, FIRST, MIDDLE)
*************************************************************************************************

Date of Arrest: _____

Brief Explanation of claim: _____

_____

_____

Date of Arrest: _____

Brief Explanation of claim: _____

_____

_____

Date of Arrest: _____

Brief Explanation of claim: _____

_____

_____

*************************************************************************************************

_____          _____
SIGNATURE                                              DATE

Attach copies of any official documents or court orders that would verify your claim.  Failure to fill out the form correctly may result in a delay in processing or the return of the claim form.  You may attach additional pages if necessary. Return this form to the attention of the Record Review Unit at the address listed above.

BCIA 8706 (Rev. 03/08)

MP000998

Nicolas A. Flegel

| | |
|---|---|
| From: | Milde, Matt L <mlmilde@menlopark.org> |
| Sent: | Tuesday, July 12, 2016 4:11 PM |
| To: | Michael Zeleny |
| Cc: | Brandell, Cherise E; William L. McClure; Nicolas A. Flegel; Bertini, David C; McIntyre, Alex D; Aguilar, Pamela I |
| Subject: | RE: MP/ Zeleny Permit |
| Attachments: | 07.12.16 - Permit Letter.pdf |

Mr. Zeleny – please see the letter regarding your appeal of a special event permit denial with the City of Menlo Park.

Matt Milde
Recreation Coordinator
City of Menlo Park
(650) 330-2223
mlmilde@menlopark.org

Special Events | PAC Events | Aquatics | Event Permits | Parks | Tennis Courts

---

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Friday, July 01, 2016 5:00 PM
**To:** Brandell, Cherise E
**Cc:** McClure, William; Flegel, Nicolas A.; Bertini, David C; Milde, Matt L; McIntyre, Alex D; Aguilar, Pamela I; David W. Affeld; Scott Sandell; Subrah Iyar; Dick Kramlich; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzias
**Subject:** Re: MP/ Zeleny Permit

Dear Dr Brandell,

I have received and reviewed your final denial of my "Special Event Permit" application in Menlo Park. I hereby give notice of appeal of your denial to the Menlo Park City Council and request to have a hearing in this matter conducted by the City of Menlo Park.

In the mutual interests of efficiency, I would appreciate your disclosure of any legal authority you are claiming for the proposition that "[s]pecial events by their very nature as being 'special' are for a defined term and cannot be permanent or open-ending." Likewise, I would appreciate a disclosure of any legal authority your colleagues are claiming in support of their insistence that my non-profit, public interest videography in a public venue located within its jurisdiction requires a film permit from the City of Menlo Park.

In response to your erroneous interpretation of "authorized participants in a motion picture, television, or video production, or an entertainment event" within the meaning of California Penal Code §§ 26405 and 26375, please be advised that I have applied for an Entertainment Firearms Permit pursuant to California Code Penal Code §§ 29500-29535, and intend to submit it at the said hearing that I plan to attend with my attorney David W. Affeld. Please indicate if you require any additional documentation in this regard.

Lastly, please indicate whether the hearings of the Menlo Park City Council are routinely recorded on video, and if so, whether these video recordings are made available to concerned parties. If not, please be advised that I

1

MP000999



Community Services



July 12, 2016

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA. 90046

RE: Special Event Permit Application Denial

Dear Mr. Zeleny,

Community Services Director Cherise Brandell is on vacation this week, and I am therefore writing on her behalf. The City of Menlo Park is in receipt of your email of July 1, 2016, sent at 5:00 p.m. in which you gave notice of your appeal of the denial of your special event permit application by the Community Services Director. The next step in the City's appeal process is an appeal to the City Manager, Alex McIntyre, and not an appeal directly to the City Council. Your appeal has been directed to the City Manager, who is also on vacation this week; however, it is expected he will act on your appeal next week (the week of July 18th) upon his return. Please indicate whether you wish to have a hearing with the City Manager and whether you intend to submit any additional information on behalf of your appeal or whether you want the City Manager to base his decision on all your communications to date received by City Staff.

Thank you for your attention to this matter.

Matt Milde, on behalf of Cherise Brandell, Community Services Director
City of Menlo Park

City of Menlo Park   701 Laurel St., Menlo Park, CA 94025   tel 650-330-6600   www.menlopark.org

MP001000

Nicolas A. Flegel

| | |
|---|---|
| From: | Michael Zeleny <michael@massmeans.com> |
| Sent: | Friday, July 01, 2016 5:00 PM |
| To: | Brandell, Cherise E |
| Cc: | William L. McClure; Nicolas A. Flegel; Bertini, David C; Milde, Matt L; McIntyre, Alex D; Aguilar, Pamela I; David W. Affeld; Scott Sandell; Subrah Iyar; Dick Kramlich; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzias |
| Subject: | [BULK] Re: MP / Zeleny Permit |

Dear Dr Brandell:

I have received and reviewed your final denial of my "Special Event Permit" application in Menlo Park. I hereby give notice of appeal of your denial to the Menlo Park City Council and request to have a hearing in this matter conducted by the City of Menlo Park.

In the mutual interests of efficiency, I would appreciate your disclosure of any legal authority you are claiming for the proposition that "[s]pecial events by their very nature as being 'special' are for a defined term and cannot be permanent or open-ending." Likewise, I would appreciate a disclosure of any legal authority your colleagues are claiming in support of their insistence that my non-profit, public interest videography in a public venue located within its jurisdiction requires a film permit from the City of Menlo Park.

In response to your erroneous interpretation of "authorized participants in a motion picture, television, or video production, or an entertainment event" within the meaning of California Penal Code §§ 26405 and 26375, please be advised that I have applied for an Entertainment Firearms Permit pursuant to California Code Penal Code §§ 29500-29535, and intend to submit it at the said hearing that I plan to attend with my attorney David W. Affeld. Please indicate if you require any additional documentation in this regard.

Lastly, please indicate whether the hearings of the Menlo Park City Council are routinely recorded on video, and if so, whether these video recordings are made available to concerned parties. If not, please be advised that I intend to have the hearing recorded pursuant to California Government Code § 11124.1(a) and Cal Government Code §§ 54953.5(a),-.6.

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and
ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Fri, Jun 24, 2016 at 10:26 AM, Brandell, Cherise E <cebrandell@menlopark.org> wrote:

Mr. Zeleny -- please see letter regarding your appeal of a special event permit denial with the City of Menlo Park.

Cherise Brandell, PhD
Community Services Director

1

MP001001

City of Menlo Park

From: Michael Zeleny [mailto:michael@massmeans.com]
Sent: Friday, June 17, 2016 11:50 AM
To: Milde, Matt L; McClure, William
Cc: Robin H. Riggins; Brandell, Cherise E; Cindy S. Elmquist; Bertini, David C; Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzias

Subject: Re: MP/ Zeleny Permit

Gentlemen,

Thank you for your response. To clarify my application in the interest of identifying the points of intractable contention, I am willing to accommodate all your reasonable restrictions except for the following:

1. The concealed and open carry of unloaded firearms by an authorized participant in an entertainment event, is expressly authorized by California Penal Code Sections 25510 and 26375. Your denial of my statutory right is therefore groundless and legally sanctionable.
2. No legally cognizable justification exists for your imposition of a "defined term" on my Constitutionally protected speech.

Please indicate whether you prefer to proceed to litigation under 42 U.S. Code §1983, or concede these points and negotiate the remaining parameters of my performance.

---

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com

7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice: 323.363.1860 | fax: 323.410.2373

Wronged by the high and mighty? Cut them down to size with legally safe and

ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Thu, Jun 16, 2016 at 3:08 PM, Milde, Matt L <mlmilde@menlopark.org> wrote:

Dear Mr. Zeleny,

2

Thank you for submitting a Special Event Application with the City of Menlo Park. Upon reviewing your application and appeal, approval for your special event has been denied. Please see the attached letter regarding the specific details of this determination. If you wish to appeal this decision, please refer to the directions contained within this letter.

Regards,

Matt Milde

Recreation Coordinator

City of Menlo Park

(650) 330-2223

mlmilde@menlopark.org

Special Events | PAC Events | Aquatics | Event Permits | Parks | Tennis Courts

From: Michael Zeleny [mailto:michael@massmeans.com]
Sent: Wednesday, June 15, 2016 4:58 PM
To: McClure, William; Robin H. Riggins; Brandell, Cherise E
Cc: Cindy S. Elmquist; Bertini, David C; Milde, Matt L; Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzias
Subject: Re: MP/ Zeleny Permit

Dear Mr McClure,

The requested date of my performance is upon us. Kindly issue your definitive ruling on my application, so that we may proceed either to negotiate its time, place, and manner parameters, or to litigate the matter of your infringement of my civil rights.

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com

3

7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice: 323.363.1860 | fax: 323.410.2373

Wronged by the high and mighty? Cut them down to size with legally safe and

ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Fri, May 27, 2016 at 12:21 PM, Michael Zeleny <michael@massmeans.com> wrote:

Dear Mr McClure;

I have received your second denial, dated 4 May 2016, of my amended application for a special event permit, submitted on 15 April 2016. My second appeal follows:

With respect to your complaint regarding my application being incomplete, please refer to the map I submitted with it, as reattached below for your convenience. The red rectangle that designates the location of my entertainment event represents the location of my Dodge Ram SRT-10 pickup truck. All my activities and all my equipment will be confined to its bed and cabin, as driven to and parked at the designated location. The video presentation will be made with a 55" SunBrite outdoor TV, mounted in a Gator G-Tour E-Lift, and powered by a portable generator. As stated in my original application dated 28 July 2015, I will remain on site around the clock until NEA publicly acknowledges its wrongdoing and severs all its relations with Min Zhu, Scott Sandell, and Dick Kramlich. My staff will attend to all my needs with daily deliveries, in full compliance with all relevant laws and regulations.

My event is most certainly meant to be open to the community at large, and I will make every accommodation for all passerby to engage lawfully and safely with its content and its authors. Without limitation, these accommodations will include distribution of flyers and souvenirs, and opportunities to engage me in real-time discussion, broadcast via a live Internet linkage.

If the foregoing explanation satisfies your concerns, I will forgo carrying of loaded weapons in the spirit of compromise. However, if you continue to object to my carrying unloaded firearms in the course of my entertainment event, I shall be happy to litigate the matter of loaded open carry within the scope of Constitutionally protected speech. Your citation of Penal Code §16840 providing that "a firearm shall be deemed to be 'loaded' whenever both the firearm and the unexpended ammunition capable of being discharged from the firearm are in the immediate possession of the same person", is inapposite, because applicable solely to "[e]very person who carries a loaded firearm with the intent to commit a felony" within the scope of Penal Code §25800. I assure you that I have no such intent.

Lastly, I do not understand your claim that "a practical reading of the entertainment exception would require the Department of Justice or the Menlo Park Police Department to authorize [my] event." If you are claiming that my Constitutionally protected speech stands in need of such authorization, as explained previously, I shall be happy to settle this matter within the scope of a civil action for deprivation of rights pursuant to 42 U.S. Code §1983. Indeed, if you compel me to do so, the venue of my performance will merely change, from Sand Hill Road, to a Federal courthouse. One way or another, my message will resonate with its intended audience.

I trust that I have answered all relevant questions and addressed all legitimate concerns. I hope that no further explanations will be necessary for you to make a final disposition of my application.

4

Michael@massmeans.com Zeleny@post.harvard.edu | larvnius.livejournal.com | submh.com

7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373

Wronged by the high and mighty? Cut them down to size with legally safe and

ethically sound degradation of unworthy moguls and scrofulous celebrities.


On Wed, May 4, 2016 at 10:52 AM, Robin H. Riggins <rhr@jsmf.com> wrote:

Dear Mr. Zeleny:

    Pursuant to Mr. McClure's request, please find attached his letter to you of today's date concerning the above-mentioned matter.

Thank you for your attention to this matter.


Sincerely,


Robin Riggins

Secretary to

William L. McClure, Esq.


Jorgenson, Siegel, McClure & Flegel, LLP

1100 Alma Street, Suite 210

Menlo Park, CA  94025


Tel.  650/ 324-9300

Fax. 650/ 324-0227

5

MP001005



6

MP001006

Nicolas A. Flegel

| | |
|---|---|
| **From:** | Brandell, Cherise E <cebrandell@menlopark.org> |
| **Sent:** | Friday, June 24, 2016 10:27 AM |
| **To:** | Michael Zeleny |
| **Cc:** | William L. McClure; Nicolas A. Flegel; Bertini, David C; Milde, Matt L; McIntyre, Alex D; Aguilar, Pamela I |
| **Subject:** | RE: MP/ Zeleny Permit |
| **Attachments:** | Zeleny Letter June 24 final.pdf |

Mr. Zeleny – please see letter regarding your appeal of a special event permit denial with the City of Menlo Park.

Cherise Brandell, PhD
Community Services Director
City of Menlo Park

From: Michael Zeleny [mailto:michael@massmeans.com]
Sent: Friday, June 17, 2016 11:50 AM
To: Milde, Matt L; McClure; William
Cc: Robin H. Riggins; Brandell, Cherise E; Cindy S. Elmquist; Bertini, David C; Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzias
Subject: Re: MP/ Zeleny Permit

Gentlemen,

Thank you for your response. To clarify my application in the interest of identifying the points of intractable contention, I am willing to accommodate all your reasonable restrictions except for the following:

1. The concealed and open carry of unloaded firearms by an authorized participant in an entertainment event, is expressly authorized by California Penal Code Sections 25510 and 26375. Your denial of my statutory right is therefore groundless and legally sanctioned.
2. No legally cognizable justification exists for your imposition of a "defined term" on my Constitutionally protected speech.

Please indicate whether you prefer to proceed to litigation under 42 U.S. Code §1983, or concede these points and negotiate the remaining parameters of my performance.

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and
ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Thu, Jun 16, 2016 at 3:08 PM, Milde, Matt L <mlmilde@menlopark.org> wrote:

Dear Mr. Zeleny,

1

MP001007



Community Services

CITY OF
MENLO PARK

June 24, 2016

RE: Special Event Denial Appeal

Mr. Zeleny,

Your email dated June 17, 2016 has been forwarded to me as an appeal to the denial of your "Special Event Permit" application. I have discussed your application and denial with staff, and have considered all communications and information you submitted as part of your application.  After review, I will not be overruling the denial of your application for the following reasons:

• Your application for a special event permit continues to have no term attached to it. Special events by their very nature are being "special" are for a defined term and cannot be permanent or open-ending.

• The open carry or concealed possession of firearms in a public place is prohibited by law; California Penal Code sections 25400, 26350, and 26400.

• The sections you quoted, which give authorization for the carrying of firearms, are specifically for "authorized" participants in an entertainment, motion picture or television production. The City of Menlo Park has not "authorized" you as a participant in a motion picture, television, or video production, or an entertainment event; and you have not provided evidence that any other governmental agency has authorized your entertainment event.

Please be aware that the above denial of the application for a Special Event Permit is in no way a denial of your First Amendment right to protest. No permit is necessary for a protest in the same location you have protested in the past, as long as it is conducted within the confines of the law and local ordinance, including Penal Code sections regulating the display of firearms cited above.

As Community Services Director, I have fulfilled my responsibility to review your appeal and provide you notice of my decision. As part of the City's appeals process, your next step, if you disagree with my decision, would be to appeal my decision to the City Manager, Alex McIntyre. If you wish to appeal my decision to the City Manager, please notify me, as well as City Manager Alex McIntyre (admcintyre@menlopark.org); with a copy of your notification to City Clerk Pamela Aguilar (piaguilar@menlopark.org), Commander Dave Bertini (dcbertini@menlopark.org), and City Attorneys William L. McClure (wlm@jsmf.com) and Nicolas A. Flegel (naf@jsmf.com).  Please specify in your notification if you wish to have a hearing conducted or if you want the City Manager to base his decision on all your communications to date received by City staff.

2

If you intend to submit additional documentation, please indicate what you intend to submit.

Lastly, so you are aware, any decision made by the City Manager may be appealed to the City Council, who will have the final decision making authority for the City of Menlo Park.

Cherise Brandell.

MP001009

Community Services


CITY OF
MENLO PARK

June 16, 2016

VIA EMAIL: michael@massmeans.com
AND U.S. MAIL

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA. 90046

RE: Special Event Permit Application Denial

Dear Mr. Zeleny,

Thank you for submitting a Special Event Application with the City of Menlo Park. Upon reviewing your application and appeal, approval for your special event has been denied for the following reason(s):

- Incomplete Application
- Does not meet the criteria for Special Event
- Other:
    o No defined term
    o The exhibition of loaded and or unloaded firearms is prohibited by law
    o Location proposed creates a traffic and safety hazard
    o Driving a vehicle onto a center medium is prohibited by California Vehicle Code section 21651
    o Illuminated displays which impair a driver's vision are prohibited by California Vehicle Code section 21466.5

Determination of the approval or denial of any application is at the discretion of the Special Event Permit Committee acting on behalf of the Community Services Director. If you feel this decision has been made in error or warrants a permit outside of the policies established by the City of Menlo Park you may appeal in writing to City Manager, Alex McIntyre. He can be reached at admcintyre@menlopark.org.

If you have any questions, please feel free to contact me.

Matt Milde
Recreation Coordinator
City of Menlo Park

2

(650) 330-2223
mlmilde@menlopark.org

PRIVATE ROAD CLOSURE
The City of Menlo Park is unable to issue a special event permit if the event includes a road closure for private or exclusive residential use such as a birthday party, reunion, wedding, anniversary, etc. The Arrillaga Family Recreation Center (650-330-2200), Onetta Harris Community Center (650-330-2250) and picnic/park facilities (650-330-2220) are community resources designated for this type of function.

MP001011

Nicolas A. Flegel

From:       William L. McClure
Sent:       Thursday, June 16, 2016 5:10 PM
To:         Nicolas A. Flegel
Subject:    FW: MP/ Zeleny Permit

Sent with Good (www.good.com)

-----Original Message-----
From: Michael Zeleny [michael@massmeans.com]
Sent: Wednesday, June 15, 2016 04:58 PM Pacific Standard Time
To: William L. McClure; Robin H. Riggins; Cherise Brandell
Cc: Cindy S. Elmquist; David C. Bertini; Matt L. Milde; Scott Sandell; Subrah Iyar; Dick Kramlich; David W.
Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn;
Hawk, Robert B.; Arno Penzias
Subject: Re: MP/ Zeleny Permit

Dear Mr McClure,

The requested date of my performance is upon us. Kindly issue your definitive ruling on my application, so that
we may proceed either to negotiate its time, place, and manner parameters; or to litigate the matter of your
infringement of my civil rights.

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and
ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Fri, May 27, 2016 at 12:21 PM, Michael Zeleny <michael@massmeans.com> wrote:
Dear Mr McClure,

I have received your second denial, dated 4 May 2016, of my amended application for a special event permit,
submitted on 15 April 2016. My second appeal follows.

With respect to your complaint regarding my application being incomplete, please refer to the map I submitted
with it, as reattached below for your convenience. The red rectangle that designates the location of my
entertainment event represents the location of my Dodge Ram SRT-10 pickup truck. All my activities and all
my equipment will be confined to its bed and cabin, as driven to and parked at the designated location. The
video presentation will be made with a 55" SunBrite outdoor TV, mounted in a Gator G-Tour E-Lift, and
powered by a portable generator. As stated in my original application dated 28 July 2015, I will remain on site
around the clock until NEA publicly acknowledges its wrongdoing and severs all its relations with Min Zhu,
Scott Sandell, and Dick Kramlich. My staff will attend to all my needs with daily deliveries, in full compliance
with all relevant laws and regulations.

1

MP001012

My event is most certainly meant to be open to the community at large, and I will make every accommodation for all passerby to engage lawfully and safely with its content and its authors. Without limitation, these accommodations will include distribution of flyers and souvenirs, and opportunities to engage me in real-time discussion, broadcast via a live Internet linkage.

If the foregoing explanation satisfies your concerns, I will forgo carrying of loaded weapons in the spirit of compromise. However, if you continue to object to my carrying unloaded firearms in the course of my entertainment event, I shall be happy to litigate the matter of loaded open carry within the scope of Constitutionally protected speech. Your citation of Penal Code §16840 providing that "a firearm shall be deemed to be 'loaded' whenever both the firearm and the unexpended ammunition capable of being discharged from the firearm are in the immediate possession of the same person"; is inapposite, because applicable solely to "[e]very person who carries a loaded firearm with the intent to commit a felony" within the scope of Penal Code §25800. I assure you that I have no such intent.

Lastly, I do not understand your claim that "a practical reading of the entertainment exception would require the Department of Justice or the Menlo Park Police Department to authorize [my] event." If you are claiming that my Constitutionally protected speech stands in need of such authorization, as explained previously, I shall be happy to settle this matter within the scope of a civil action for deprivation of rights pursuant to 42 U.S. Code §1983. Indeed, if you compel me to do so, the venue of my performance will merely change, from Sand Hill Road, to a Federal courthouse. One way or another, my message will resonate with its intended audience.

I trust that I have answered all relevant questions and addressed all legitimate concerns. I hope that no further explanations will be necessary for you to make a final disposition of my application.

---

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | au@ult.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Wed, May 4, 2016 at 10:52 AM, Robin H. Riggins <rhr@jsmf.com> wrote:

Dear Mr. Zeleny:

    Pursuant to Mr. McClure's request, please find attached his letter to you of today's date concerning the above-mentioned matter.

Thank you for your attention to this matter.


Sincerely,


Robin Riggins

Secretary to

2

William L. McClure, Esq.

Jorgenson, Siegel, McClure & Flegel, LLP

1100 Alma Street, Suite 210

Menlo Park, CA  94025

Tel. 650/ 324-9300

Fax. 650/ 324-0227

3

MP001014



4

Nicolas A. Flegel

| | |
|---|---|
| **From:** | William L. McClure |
| **Sent:** | Wednesday, June 15, 2016 5:50 PM |
| **To:** | Michael Zeleny |
| **Cc:** | Cindy S. Elmquist; Cherise Brandell; David C. Bertini; Matt L. Milde; Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Hawk, Robert B.; Arno Penzias |
| **Subject:** | RE: MP/ Zeleny Permit |

Mr. Zeleny—

The City has received your appeal dated May 27th and will be responding in due course. I am baffled by your statement, "The requested date of my performance is upon us." Neither your submittal of mid April or your appeal on May 27th includes a proposed date for your event. The only date that appears in your April submittal was a date in September of 2015 (the application that was attached appeared to be your original application from 2015). If I am incorrect as to my reading of your submissions, please point out where the date is specified. In any event, we will be getting back to you in due course.

Regards,

William L. McClure, City Attorney
City of Menlo Park
1100 Alma Street, Suite 210
Menlo Park, CA 94025
650-324-9300 Ofc
650-324-0227 Fax
wlm@jsmf.com

 Please consider the environment before printing this email 🌱

From: Michael Zeleny [mailto:michael@massmeans.com]
Sent: Wednesday, June 15, 2016 4:58 PM
To: William L. McClure <wlm@jsmf.com>; Robin H. Riggins <rhr@jsmf.com>; Cherise Brandell <cebrandell@menlopark.org>
Cc: Cindy S. Elmquist <cse@jsmf.com>; David C. Bertini <dcbertini@menlopark.org>; Matt L. Milde <mlmilde@menlopark.org>; Scott Sandell <ssandell@nea.com>; Subrah Iyar <Subrah.Iyar@webex.com>; Dick Kramlich <dkramlich@nea.com>; David W. Affeld <dwa@agzlaw.com>; Dan Primack <danielprimack@gmail.com>; Louis Citron <lcitron@nea.com>; Forest Baskett <fbaskett@nea.com>; Brooke Seawell <bseawell@nea.com>; Peter Sonsini <psonsini@nea.com>; Robert Garland <rgarland@nea.com>; Jake Nunn <jnunn@nea.com>; Hawk, Robert B. <robert.hawk@hoganlovells.com>; Arno Penzias <apenzias@nea.com>
Subject: Re: MP/ Zeleny Permit

Dear Mr McClure,

The requested date of my performance is upon us. Kindly issue your definitive ruling on my application, so that we may proceed either to negotiate its time, place, and manner parameters, or to litigate the matter of your infringement of my civil rights.

1

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and
ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Fri, May 27, 2016 at 12:21 PM, Michael Zeleny <michael@massmeans.com> wrote:

Dear Mr McClure,

I have received your second denial, dated 4 May 2016, of my amended application for a special event permit,
submitted on 15 April 2016. My second appeal follows:

With respect to your complaint regarding my application being incomplete, please refer to the map I submitted
with it, as reattached below for your convenience. The red rectangle that designates the location of my
entertainment event represents the location of my Dodge Ram SRT-10 pickup truck. All my activities and all
my equipment will be confined to its bed and cabin, as driven to and parked at the designated location. The
video presentation will be made with a 55" SunBrite outdoor TV, mounted in a Gator G-Tour E-Lift, and
powered by a portable generator. As stated in my original application dated 28 July 2015, I will remain on site
around the clock until NEA publicly acknowledges its wrongdoing and severs all its relations with Min Zhu,
Scott Sandell, and Dick Kramlich. My staff will attend to all my needs with daily deliveries, in full compliance
with all relevant laws and regulations.

My event is most certainly meant to be open to the community at large, and I will make every accommodation
for all passerby to engage lawfully and safely with its content and its authors. Without limitation, these
accommodations will include distribution of flyers and souvenirs, and opportunities to engage me in real-time
discussion, broadcast via a live Internet linkage.

If the foregoing explanation satisfies your concerns, I will forgo carrying of loaded weapons in the spirit of
compromise. However, if you continue to object to my carrying unloaded firearms in the course of my
entertainment event, I shall be happy to litigate the matter of loaded open carry within the scope of
Constitutionally protected speech. Your citation of Penal Code §16840 providing that "a firearm shall be
deemed to be 'loaded' whenever both the firearm and the unexpended ammunition capable of being discharged
from the firearm are in the immediate possession of the same person", is inapposite, because applicable solely
to "[e]very person who carries a loaded firearm with the intent to commit a felony" within the scope of Penal
Code §25800. I assure you that I have no such intent.

Lastly, I do not understand your claim that "a practical reading of the entertainment exception would require
the Department of Justice or the Menlo Park Police Department to authorize [my] event." If you are claiming
that my Constitutionally protected speech stands in need of such authorization, as explained previously, I shall
be happy to settle this matter within the scope of a civil action for deprivation of rights pursuant to 42 U.S.
Code §1983. Indeed, if you compel me to do so, the venue of my performance will merely change, from Sand
Hill Road, to a Federal courthouse. One way or another, my message will resonate with its intended audience.

I trust that I have answered all relevant questions and addressed all legitimate concerns. I hope that no further
explanations will be necessary for you to make a final disposition of my application.

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com

2

MP001017

7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and
ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Wed, May 4, 2016 at 10:52 AM, Robin H. Riggins <rhn@jsmf.com> wrote:

Dear Mr. Zeleny:


        Pursuant to Mr. McClure's request, please find attached his letter to you of today's date concerning the above-
mentioned matter.

Thank you for your attention to this matter.


Sincerely,


Robin Riggins

Secretary to

William L. McClure, Esq.


Jorgenson, Siegel, McClure & Flegel, LLP

1100 Alma Street, Suite 210

Menlo Park, CA  94025


Tel. 650/ 324-9300

Fax. 650/ 324-0227

MP001018



4

**Nicolas A. Flegel**





**From:** Robin H. Riggins
**Sent:** Wednesday, May 04, 2016 10:53 AM
**To:** 'michael@massmeans.com' <michael@massmeans.com>
**Cc:** William L. McClure <wlm@jsmf.com>
**Subject:** MP / Zeleny Permit

Dear Mr. Zeleny:

Pursuant to Mr. McClure's request, please find attached his letter to you of today's date concerning the above-mentioned matter.
Thank you for your attention to this matter.

Sincerely,

Robin Riggins
Secretary to
William L. McClure, Esq.

Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025

Tel. 650/ 324-9300
Fax. 650/ 324-0227

1



OFFICE OF THE CITY ATTORNEY
1100 ALMA STREET / MENLO PARK, CA 94025 / 650.324.9300 / FAX 650.324.0227

May 4, 2016

VIA EMAIL: michael@massmeans.com
AND U.S. MAIL

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

Re:    Appeal of Denial of Special Event Permit Application

Dear Mr. Zeleny:

The City of Menlo Park ("City") is in receipt of your email dated April 15, 2016. Your email indicates that you are lodging an appeal of the denial of your special event permit application. The original special event permit application was submitted on July 10, 2015, to which the City formally responded by letter dated September 21, 2015. In that letter, I indicated that your application was being denied as it was incomplete and did not meet the criteria of a special event.

Your email of April 15, 2016, outlines several modifications and provides additional information to supplement your original application, and therefore, the City is treating it as a revised application rather than an appeal. The April 16th email includes a Google map with a red box showing the proposed location of the event. The email also indicates that you no longer intend to film a documentary, but instead will put on an "entertainment event" in which you will be live-streaming a video showing the reaction of individuals who drive by your protest. Lastly, the revised application indicates in the "Event Narrative" that you "shall be present on site around the clock, equipped with fully operational, exposed and loaded firearms, in full compliance with all applicable laws."

Based on a review of your revised application, the City is denying your application on the basis that it is incomplete and it does not meet the criteria of a special event. With respect to the revised application still being incomplete, the application fails to describe how you intend to set up your presentation so that the City can analyze whether traffic control will be necessary or what other conditions might be necessary as part of the approval of the application, nor does it specify the hours/length of the event. For example, there is no indication where you intend to place your tent, generator, video presentation, portable rest room,

Michael Zeleny
May 4, 2016 - Page 2

temporary lighting, sound system, etc. The revised application is deficient in that the City needs substantially more detail in order to analyze the potential for your event distracting drivers, including the volume of sound you intend to make, the brightness of your projector, location and size of items you intend to place on the median strip, and how you intend to transport your set-up to the location (to determine compliance with the Vehicle Code).

Also, the revised application still does not propose an event that requires a special event permit. The application does not propose an event that is open to the community at large to participate in (it describes a one man protest). With the essential element of community participation, a special event permit is not necessary; protests do not require special events permits.

I also want to raise three concerns regarding the proposed event:

1. The proposed event has no defined term (your email indicates an event of "indefinite" duration). Given the presence of guns and the display of a pornographic image at along a major high-speed roadway, the City would need to staff the event with police and traffic supervision. However, the City does not have staff to monitor an event that could last days, weeks or months.

2. You are proposing to illegally open-carry weapons. It is illegal to open-carry an unloaded or loaded weapon in California. You are citing to the movie/entertainment exception, but that exception does not allow for the open-carrying of *loaded* weapons or weapons "adjoined by ample supplies of ammunition." Penal Code §16840 provides that a firearm shall be deemed to be "loaded" whenever both the firearm and the unexpended ammunition capable of being discharged from the firearm are in the immediate possession of the same person. Lastly, a practical reading of the entertainment exception would require the Department of Justice or the Menlo Park Police Department to authorize your event.

3. We have serious concerns regarding the proposed location of the event and will likely prohibit locating an event as generally described in your email and attachments in the median area of Sand Hill Road as it would be a traffic and safety hazard -- regardless of how the event is characterized.

While it is clear that this is not a "special event," if you wish to appeal this denial, please provide written notice to Community Services Director Cherise Brandell (and copied to the undersigned.) Ms. Brandell's contact information is as

MP001022

Michael Zeleny
May 4, 2016 - Page 3

follows:  Email (cebrandell@menlopark.org) and telephone (650) 330-6818.
Alternatively, you may provide additional detail to respond to the above-outlined
issues.

Sincerely,

William L. McClure
City Attorney

WLM:rr
cc:    Via email only
       Dave Bertini, Commander
       Cherise Brandell
       Matt Milde

Nicolas A. Flegel



**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Friday, April 15, 2016 1:35 PM
**To:** McClure, William; Cindy S. Elmquist; Bertini, David C; Milde, Matt L
**Cc:** Scott Sandell; Subrah Iyar; Dick Kramlich; David W. Affeld; Dan Primack; Louis Citron; Forest Baskett; Brooke Seawell; Peter Sonsini; Robert Garland; Jake Nunn; Sigrid Van Bladel; Hawk, Robert B.; Arno Penzlas
**Subject:** Re: Menlo Park Special Event Permit

"William L. McClure" <wlm@jsmf.com>,
"Cindy S. Elmquist" <csc@jsmf.com>
Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025
650-324-9300 Phone
650-324-0227 Fax

"David C. Bertini" <dcbertini@menlopark.org>,
"Matt L. Milde" <mlmilde@menlopark.org>,
The City of Menlo Park
701 Laurel St.
Menlo Park, CA 94025
650-330-6600

Dear Mr McClure,

I am lodging herewith an appeal of your denial of my application for a special event permit, by outlining its purpose and scope and responding to all of your objections in order.

1

MP001024

I have been protesting NEA's ongoing support of its venture partner Min Zhu and its coverup of his incestuous child rape since 2004. In the course of the ensuing litigation and subject to demands by Menlo Park city authorities, I have been forced to relocate my protests from the immediate vicinity of NEA's headquarters, to the narrow strip of public grounds surrounding the 16 private acres of the Rosewood Sand Hill compound located at 2825 Sand Hill Rd, Menlo Park, CA 94025. The median strip identified in his current application affords the only possible location for staging my protest in clear view of the NEA headquarters. My open display of firearms is germane to the message that responds to the death threats made against me and my family in the names and on the behalves of individuals and business entities sponsored and supported by NEA. The continual and open-ended nature of my protest responds to NEA's long-standing refusal to account for its responsibility in supporting and covering up the lawless conduct of its associates.

As to your claim that my application is incomplete, attached please find a map of the area in question, which clearly designates the specific and modest boundaries of my special event. That is all that the City of Menlo Park ("the City") can reasonably expect and require to analyze whether traffic control will be necessary or what other conditions might be necessary as part of its approval of my application. As suggested before, and witnessed by my past appearances in your jurisdiction, my use of sound and lighting equipment is subject to our ongoing mutual agreement on their time, place, and manner parameters. If you have any specific requests in this regard, please make them with no further ado, bearing in mind that all restrictions on my expressive conduct must be (1) content-neutral, (2) narrowly tailored to serve a significant government interest; and (3) leave open ample alternative channels for communication. (See *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983).) As resolved as I am to see my task through, I remain open to all reasonable accommodations.

While the First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired" (*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640 (1981), it protects the right of every citizen to "reach the minds of willing listeners [and] to do so, there must be opportunity to win their attention." (*Hill v. Colorado*, 530 U.S. 703 (2000).) My presence on NEA's grounds has been ruled out as a part of settling its trespass claims against me five years ago. The currently proposed location of my performance therefore represents my only remaining opportunity to address directly the public associated or connected with it. Please bear in mind the foregoing authorities in your attempts to deny me my right to speak in this way and venue.

With respect to the application not meeting the criteria for a special event, the City lacks the authority to define a special event subject to its permitting requirements, beyond ensuring that it does not disrupt the ordinary use of its public spaces. It is true that I am proposing a media production of a one-man protest. My primary aim, however, is to exhibit my media to the thousands of daily passerby on Sand Hill Road, even as I stream their reactions online. My communication needs to be both physically proximate for them, and available over the internet for more distant audiences. This project falls squarely within the ambit of Constitutional protection of political speech. My production is no less deserving of such protection for being modestly scaled. Thus *Branzburg v. Hayes*, 408 U.S. 665, 704 (1972): "Liberty of the press is the right of the lonely pamphleteer who uses carbon paper or a mimeograph just as much as of the large metropolitan publisher who utilizes the latest photocomposition methods."

While the First Amendment literally forbids the abridgment only of "speech", the Supreme Court has long recognized that its protection does not end at the spoken or written word, even as it acknowledged that not all conduct intended by the person engaging therein to express an idea is so protected. (See *United States v. O'Brien*, 391 U.S. 367 (1968).) For such conduct may be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments". (See *Spence v. Washington*, 418 U.S. 405 (1974).) "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether [a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it." (See *Texas v. Johnson*, 491 U.S. 397 (1989).) In sum, according to the Supreme Court's test for expressive conduct, known as the Spence-Johnson test, an action is protected by the First Amendment if: (1) the speaker-actor intends for the conduct to express a particularized message; and (2) that message would be understood by others. In the course of reaffirming the Spence-Johnson test in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), the Supreme Court ruled that "a narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a 'particularized message,' [...] would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schönberg, or Jabberwocky verse of Lewis Carroll." In the course of my protest, the expressive content of openly carried firearms presented as a means of defense both warranted and necessitated by my circumstances, will be bolstered by the concurrent multimedia presentation of the evidence of threats I received in the names and on the behalves of NEA's associates, the damage that they claim to have inflicted on my family, and their history of unlawful violence. Your study of my past displays should suffice to reassure you that my painstakingly particularized message will be infinitely easier to parse than The She-Wolf, Pierrot Lunaire, or Jabberwocky.

This brings me to the matter of my venue. Streets and sidewalks are "prototypal" examples of public fora, and have immemorially been considered a rightful place for public discourse. (See *Hague v. C.I.O.*, 307 U.S. 496 (1939).) Public fora "have achieved a special status in our law", for they "represent areas within which tolerance for inhibitions on speech, petition, and assembly is at a minimum." The government therefore "bear[s] an extraordinarily heavy burden to regulate speech in such locales." (See *N.A.A.C.P. v. City of Richmond*, 743 F.2d 1346 (9th Cir. 1984).) "And just as streets and sidewalks are

2

prototypical examples of public fora, political speech related to current events is the prototypical example of protected speech." (See *American-Arab Anti-Discrimination Committee v. City of Dearborn* ("AAADC"), 418 F.3d 600 (6th Cir. 2005).) In the matter at hand, the current event at issue is NEA's ongoing financial support of its child-raping protégé Min Zhu. As long as I do not "realistically present serious traffic, safety, and competing-use concerns beyond those presented on a daily basis by ordinary use of the streets and sidewalks," you cannot require me to obtain a permit for exercising my Constitutional rights, let alone deny its issuance. (See *Santa Monica Food Not Bombs v. City of Santa Monica* ("SMFNB"), 450 F.3d 1022 (9th Cir. 2006).) Moreover, I generally do not need a permit to hold a rally or a march on public grounds while obeying traffic laws. (See SMFNB, 450 F.3d at 1039, 1040-43; AAADC, 418 F.3d at 608.) Thus I am asking for nothing more nor less than your approval of my rightful, conspicuous presence on public grounds in full compliance with all applicable laws.

As to my compliance with traffic laws, to repeat myself, I do not intend use any City street or right of way. The California Vehicle Code Section 525 defines the right of way as "the privilege of the immediate use of the highway." In this regard, the right of way in the median island, where I intend to conduct my performance, is ordinarily reserved for pedestrians alone. The small part of the median island that I intend to occupy will leave plenty of room for the passage of vehicles in any emergency, e.g. as regards tow trucks allowed to do so pursuant to CVC Section 21719. I do not intend to present any visual impairment to oncoming traffic and vehicles traveling on Sand Hill Road. As to presenting a visual distraction, I am well within my First Amendment rights to do so in a rightful place for public discourse, within which tolerance for your inhibitions on speech, petition, and assembly is at a minimum.

To clarify the nature of the proposed multimedia production in the context of my one-man protest, I am not intending it for the filming of a movie, and therefore you may not require me to obtain a film production permit. Kindly recall that I have borne the brunt of abusive and oppressive conduct by the City of Menlo Park Police Department ("the police") since the inception of my protests a decade ago. This abuse and oppression included, without limitation, illegal surveillance and harassment of myself and my associates, arbitrary imposition of constraints on our performance, and participation in my malicious prosecution in San Mateo Superior Court, wherein the prosecutor expressly and unequivocally acknowledged on court record that she was seeking my criminal conviction on behalf of NEA. Accordingly, I would not dare to appear in your jurisdiction without recording each of my interactions with your minions, for my security and theirs alike. And I have every right to make this recording without asking or paying for your permission.

As explained by Evan Bernick and Paul Larkin in "Filming the Watchmen: Why the First Amendment Protects Your Right to Film the Police in Public Places", lower federal courts have generally said that the First Amendment protects a right to record and photograph law enforcement in public view. Some restrictions may be constitutional, but simply prohibiting the recording because the person is recording the police cannot be constitutional. While the Supreme Court is yet to consider this question, such is the general view in the federal appellate decisions that have done so. An apparent exception is a recent federal trial court decision in *Fields v. City of Philadelphia* and *Geraci v. City of Philadelphia*, which takes a different, narrower approach: There is no constitutional right to videorecord police, the court says, when the act of recording is unaccompanied by "challenge or criticism" of the police conduct. But even under this restrictive standard, I remain well within my rights to videorecord at will, without warning, and regardless of permission, all my public performances in your jurisdiction, for the sake of safety and transparency. In light of the history of my peaceful protests being subjected to oppressive scrutiny and censure by the City authorities, I am planning to exercise my rights under the First Amendment to film my appearances there, for the express purpose of mounting a potential challenge and criticism of the police conduct in the event of further obstructions mounted by Menlo Park. According to *Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969) the discretion of public officials charged with permitting First Amendment activity must be limited by "narrow, objective, and definite standards." It therefore falls upon the City to identify such standards that deny my rights or subject them to permitting requirements.

Lastly, your concern is that it is illegal to open carry a firearm in the State of California is likewise misdirected. It is none of your business to seek or scrutinize any logical nexus or legitimate purpose of carrying a firearm the proposed event. I am well within my rights in carrying a firearm, either openly or concealed, in the course of an entertainment event, as its authorized participant, as protected by the Constitution of the United States, and clearly warranted by law in the state of California.

Thus California Penal Code Section 25400 (a) (2): "A person is guilty of carrying a concealed firearm when the person does any of the following: [...] Carries concealed upon the person any pistol, revolver, or other firearm capable of being concealed upon the person." Whereas P.C. Section 25510 qualifies this ban: "Section 25400 does not apply to, or affect, any of the following: (a) The possession of a firearm by an authorized participant in a motion picture, television, or video production, or an entertainment event, when the participant lawfully uses the firearm as part of that production or event, or while going directly to, or coming directly from, that production or event. (b) The transportation of a firearm by an authorized employee or agent of a supplier of

3

MP001026

firearms when going directly to, or coming directly from, a motion picture, television, or video production, or an entertainment event, for the purpose of providing that firearm to an authorized participant to lawfully use as a part of that production or event." Please be assured that I intend to authorize myself as a participant in my own entertainment event.

A similar exemption applies to the ban on the open carrying of an unloaded handgun. Thus P.C. Section 26350 (a) (1): "A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following: (A) A public place or public street in an incorporated city or city and county." Whereas P.C. Section 26375 qualifies this ban: "Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses the handgun as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event."

Similar exemptions apply to long guns. Thus P.C. Section 26400 (a): "A person is guilty of carrying an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county." Whereas P.C. Section 26405 qualifies this ban: "Section 26400 does not apply to, or affect, the carrying of an unloaded firearm that is not a handgun in any of the following circumstances: [...] (r) By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses that firearm as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event." In short, conspicuous display of otherwise legally possessed unloaded firearms in the course of my entertainment event is my Constitutional right under the First Amendment, expressly protected by California statutes. In the event, these firearms will include, without limitation, a pair of H&K P7M13 handguns, an LRB M25 designated marksman rifle, a Winchester M97 trench shotgun with an M1917 Remington bayonet, and a semiautomatic, belt-fed, tripod mounted Browning M1919a4, all conspicuously adjoined by ample supplies of ammunition.

I trust that I have met your concerns over the completeness of my application. Please acknowledge the receipt of this email and approve my application at your earliest convenience. To repeat myself, we are equally willing to negotiate or litigate. Please refer to Lefemine v. Wideman, 568 U.S. ____ (2012), which held that a plaintiff who secured a permanent injunction but no monetary damages was a "prevailing party" under 42 U.S.C. § 1988 and could receive attorney fees, where the injunction ordered the defendant officials to change their behavior in a way that directly benefited the plaintiff, who could thereafter engage in demonstrations without fear of sanctions with which police had previously threatened him. As public officials, NEA's minions among your City colleagues enjoy qualified immunity from damages suits if they violate my rights, but only as long as they do not violate "clearly established" law. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." (See Harlow v. Fitzgerald, 457 U.S. 800 (1982).) In short, your personal liability will be richly borne out by the foregoing statutes and case law. The last issue that remains to be litigated conclusively is the expressive content of openly carried firearms. In this connection, please refer to Nordyke v. King, 563 F. 3d 439 (9th Cir. 2009), wherein the state of California tacitly conceded the issue even before the Supreme Court incorporated the Second Amendment in McDonald v. Chicago, 561 U.S. 742 (2010). Long story short, if you continue siding with NEA's minions, I will win at the City's certain and considerable expense.

—
Michael@maxximums.com Zelenv@post.harvard.edu | larvatus.livejournal.com | subnik.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.

On Mon, Sep 21, 2015 at 2:12 PM, Cindy S. Elmquist <csc@jsmf.com> wrote:
>
> Bill McClure requested I forward to you the attached letter with enclosure thereto.
>
>
>
> Cindy S. Elmquist, Assistant to William L. McClure

4

```
>
> Jorgenson, Siegel, McClure & Flegel, LLP
>
> 1100 Alma Street, Suite 210
>
> Menlo Park, CA 94025
>
> (650) 324-9300 Phone
>
> (650) 324-0227 Fax
>
>
>
>
```

5

MP001028



MP001029



OFFICE OF THE CITY ATTORNEY
1100 ALMA STREET / MENLO PARK, CA 94025 / 650.324.9300 / FAX 650.324.0247

September 21, 2015

VIA EMAIL: michael@massmeans.com

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

Re:   Special Event Permit

Dear Mr. Zeleny:

The City of Menlo Park ("City") is in receipt of your special event permit application submitted on July 10, 2015, to maintain a portable media presentation at the location of "2825 Sand Hill Rd, Menlo Park, CA 94025, at the median strip, per the attached." At this time the City is denying your application on the basis that it is incomplete and does not meet the criteria of a special event.

With respect to the application being incomplete, on July 24, 2015, I previously notified you by email that the application did not include an attachment indicating the specific location of the presentation/event, and requested additional information regarding your use of sound and lighting equipment. You responded by email on July 28, 2015, stating that you would be videotaping your presentation as part of a feature documentary and entertainment event. You again responded that the event will occur in the "median strip" and indicated the location to be the strip "directly across NEA headquarters," but you declined to provide any more detail at the time. The problem is that your application still does not indicate the exact location of the proposed event and how the presentation will be set up so that the City can analyze whether traffic control will be necessary or what other conditions might be necessary as part of the approval of the application nor the hours/length of the event. For example, there is no indication where you intend to place your tent, generator, video presentation, portable rest room, temporary lighting, sound system, etc. Further, you have stated there is no end time for the event and that the total hours are "indefinite."

With respect to the application not meeting the criteria for a special event, what you have set forth in your application is not an event that meets the City's definition of a special event. For example, the proposed event application states that it will not exceed 150 people, use any City street or right of way (even though the

N:\DATA\CSanta\MMP\Admin\Misc\Zelony M-1.lrt.wpd

Printed on recycled paper

MP001030

Michael Zeleny
September 21, 2015 - Page 2

median is part of the right of way); require lane closures, require parking needs, generate a crowd of spectators, nor does it state that this is a community type event. To the contrary, you are proposing a "media production" of a one-man protest. If what you are actually intending is the filming of a movie, then the City has an application process, for which a film production permit is required. A copy of the City's "Film Production in Menlo Park" document is attached for your review.

Lastly, the City is concerned that what you are proposing to perform in the median strip between opposing lanes of traffic would be a violation of the Vehicle Code if it causes a visual impairment or visual distraction to oncoming traffic and vehicles traveling on Sand Hill Road. It would also likely be a safety hazard/danger to drivers on Sand Hill Road due to the rate of speed on the roadway and the proximity to Interstate 280. The median strip is too narrow to accommodate the film project as you have described in the application. Another concern is that it is illegal to open carry a firearm in the State of California. As you've described the proposed event, there does not appear to be any logical nexus or legitimate purpose of carrying a firearm.

Inasmuch as your application is incomplete and does not meet the definition of a special event, your application for a special event permit is denied.

If you wish to appeal this denial of your application, you must appeal the denial to the City's Special Event Permit Committee. I would ask that you notify me and Community Services Director Matt Milde at mlmilde@menlopark.org if you wish to seek an appeal.

Sincerely,

William L. McClure,
City Attorney

WLM:rr

Enclosure

cc:    Via email only
       Dave Bertini, Commander
       Matt Milde

N:\DATA\CBenta\WMF\Admin\Misc\ZelenyM-1.lrt.wpd

## Film Production in Menlo Park

Film production in the City of Menlo Park must comply with following conditions:

1. Permittee shall submit in writing all pertinent details regarding the filming including the date(s) and times of the filming including time needed for set-up and take down; a description of the nature of the filming; the location of the filming; a list of all equipment involved in the filming, including cars and other vehicles; the proposed location for the parking and storage of all such vehicles and equipment; the number of cast and crew members involved in the filming and an indication of any special needs, such as amplified noise, etc. If granted, the permit's approval will be confined to such activities, locations and time schedules as submitted and approved.

2. Three days prior to the beginning of filming, permittee shall provide written notice to residents and businesses within 200 feet of the proposed filming.

3. Permittee shall obey all City Ordinances, rules and the guidance of City supervisory employees pertaining to the use of City property, including the location, parking and storage of vehicles and equipment, crowd and traffic control, and the restoration of premises to their original condition after use for filming purposes.

4. Permittee will comply with the City of Menlo Park noise ordinance. Filming will be limited to the hours between 8:00 a.m. and 6:00 p.m. and will result in low to no noise levels. The use of any explosive, fireworks, or pyrotechnic devices is strictly prohibited.

5. Permittee shall make arrangements for traffic control satisfactory to the Menlo Park Police Department prior to filming on City streets and in other public areas. Permittee will be charged to recover the cost of traffic control provided by the City. Permittee will legally park vehicles and will not require street closure or traffic control other than what is approved.

6. Permittee shall covenant and agree to indemnify and hold harmless the City from any and all loss, cost, damages and expenses of any kind, including attorney fees, on account of personal injury or property damage resulting from any activity of Permittee on municipal property or in connection with its use of municipal property.

7. Liability insurance in no way limits the indemnity agreement above, Permittee will furnish the City a Certificate of Liability Insurance acceptable to its Risk Management office showing combined single limit coverage for bodily injury and property damage, or the equivalent of such coverage, not less than $1 million. The City, including its officials, employees and agents, shall be named as additional insured in the Liability Policy. Contractual liability coverage insuring the obligations of this Agreement is also required. The insurance may not be canceled or substantially modified without ten (10) days written notice to the City Manager's Office.

MP001032

8. Permittee shall pay, with a valid check, money order, credit card or cashier's check, a filming permit application fee of $150.00 in addition to the daily permit fees of $50 per day for still photography and short subject, $100 per day for industrials, and $150 per day for features, TV, music videos and commercials.

9. Permittee shall apply for a one-time Business License and pay, with a valid check, money order, credit card or cashiers check.   See Guide to Annual Business Licensee Fee Calculation for the fee schedule.

10. Permittee will adhere to the provisions and conditions set forth in the permit.  If Menlo Park Police Department or other City personnel are required to correct, mitigate, or provide any service not consented to under this permit, permittee will be required to pay for all services rendered.  Payment shall be made in the form of a valid check, money order, credit card or cashiers check immediately upon demand made by the City.

*PROJECT ADDRESS:* _____

Read and agreed on:

Date: _____

_____     _____
Signature                                                      Print name

MP001033

Nicolas A. Flegel



----Original Message----
From: Bertini, David C [dcbertini@menlopark.org]
Sent: Thursday, August 27, 2015 09:36 AM Pacific Standard Time
To: David Tresmontan; jimmy.mazon@rosewoodhotels.com; tsanchez@smcgov.org; Steve Wagstaffe; William
L. McClure; jdixon@a16z.com; Gabor Vida; Alan Campey
Cc: Dixon, William A; Jonsen, Robert; Greg Munks (gmunks@co.sanmateo.ca.us); Al Serrato
Subject: RE: Special Event Permit Application


Good morning all.

I would like to set a meeting to discuss Mr. Zeleny next Wednesday, September 2 at 9:00 a.m. at the Menlo Park Police
Department.

If you could let me know who from your organization or agency will be able to attend on that date.

Let me know if you have any questions.

Thanks.

Commander Dave Bertini
Menlo Park Police Department
701 Laurel Street
Menlo Park, CA. 94025
650.330.6321

From: Bertini, David C
Sent: Tuesday, July 21, 2015 6:14 PM
To: 'David Tresmontan'; 'jimmy.mazon@rosewoodhotels.com'; 'tsanchez@smcgov.org'; Steve Wagstaffe; McClure,
William (wlm@jsmf.com)
Cc: Dixon, William A; Jonsen, Robert (RJonsen@menlopark.org); Greg Munks (gmunks@co.sanmateo.ca.us)

1

**Subject:** RE: Special Event Permit Application
**Importance:** High

Good afternoon all.

As you are aware, Michael Zeleny has submitted an application for a "special event" to be held somewhere in front of the Rosewood Hotel / NEA Property located at 2825 Sand Hill Road in Menlo Park. This "special event" would consist of a very similar protest he has conducted in the past, including carrying several unloaded military type firearms, along with a 55" display with sexually explicit caricatures, portable lighting and a generator. The application indicates a set up date of 9-30-15, with the event to be "ongoing" and "indefinite".

Although we intend to deny this application on several grounds (predominately that this is not a "special event" as defined by the City), we are in the process of requesting more information from him on the exact location he was intending as it was not clear on his application. Once we have gone through the formal information gathering process, we will notify him of our decision on his application.

In the meantime, I will be clearing up several legal issues with the District Attorney's Office and then scheduling a meeting with the entities involved (NEA, Rosewood Hotel, Menlo Park Police and City Attorney's Office, SMCO Sheriff's Office and the District Attorney's Office). At this meeting we can discuss our combined response in case Zeleny decides to proceed without a permit.

If those interested in attending can please check their availability the week of August 17th or the week of August 24th, I will set up a meeting to discuss our response to any possible action by Zeleny.

Feel free to contact me if you have any questions.

Thanks.

Commander Dave Bertini
Menlo Park Police Department
701 Laurel Street
Menlo Park, CA. 94025
650.330.6321

**From:** larvatus@gmail.com [mailto:larvatus@gmail.com] **On Behalf Of** Michael Zeleny
**Sent:** Friday, July 10, 2015 11:05 AM
**To:** McClure, William; Scott Sandell; Milde, Matt L; Police Chief
**Cc:** David W. Affeld; Peter Shimamoto
**Subject:** Special Event Permit Application

Michael Zeleny
michael@massmeans.com
zeleny@post.harvard.edu
7576 Willow Glen Road, Los Angeles, CA 90046
voice:323.363.1860
fax:323.410.2373

City of Menlo Park
Matt Milde
Recreation Program Coordinator

2

mlmilde@menlopark.org
701 Laurel Street
Menlo Park, CA 94025
voice:650.330.2223
fax:650.330.2242

By email, fax, and postal mail.

Starting in October 2015, we shall maintain a portable multimedia presentation illustrating ongoing corporate support of New Enterprise Associates (NEA) for incestuous child rapist Min Zhu, and continuing until NEA publicly acknowledges its wrongdoing and severs its relationship with Min Zhu, Scott Sandell, and Dick Kramlich. I shall be present on site around the clock, served by support staff and equipped with fully operational, exposed and unloaded military grade firearms and loaded ammunition feeding devices therefor, including without limitation, a 9mm Para semiautomatic SIG P210 pistol, and a 7.65x51mm NATO semiautomatic LRB M25 rifle and tripod-mounted belt-fed Browning M1919a4, in full compliance with all applicable laws. A 55" portable media display powered by a portable gas generator will display videos featuring explicit representations of sexual violence committed by NEA's publicly disgraced protégé. A sample image can be found at http://larvatus.livejournal.com/371973.html. All media aspects of this event will be subject to content-neutral regulation negotiated with Menlo Park authorities. My fundamental rights under the First and Second Amendments of the Constitution of the United States are reserved and non-negotiable.

A site map can be found at https://www.google.com/maps/@37.4197308,-122.2137188.17z/. My display will be confined to the median strip on Sand Hill Road directly across the NEA headquarters. No obstruction of automotive or foot traffic will take place. Please contact me to arrange for the payment of the special event fee and discuss any organizational matters. Please address all legal inquiries and requests to David W. Affeld, Affeld Grivakes Zucker LLP, 2049 Century Park East, Suite 2460, Los Angeles, CA 90067, voice:310.979.8700, fax:310.979.8701.

cc:

Bill McClure
Menlo Park City Attorney
wlm@jsmf.comvoice:650-330-6610
Jorgenson, Siegel, McClure & Flegel, LLP
1100 Alma Street, Suite 210
Menlo Park, CA 94025
voice:650.324.9300
fax:650.324.0227

Robert Jonsen
Menlo Park Police Chief
policechief@menlopark.org
701 Laurel St.
Menlo Park, CA 94025
voice:650.330.6600

Scott Sandell
New Enterprise Associates
ssandell@nea.com
2855 Sand Hill Road

3

MP001036

Menlo Park, CA 94025
United States
voice:650.854.9499
fax:650.854.9397

Michael@massmeans.com | Zeleny@post.harvard.edu | 7576 Willow Glen Road, Los Angeles, CA 90046 |
voice:323.363.1860 | fax:323.410.2373
http://larvatus.livejournal.com | "All of old. Nothing else ever. Ever tried. Ever failed. No matter. Try again.
Fail again. Fail better." — Samuel Beckett

MP001037



Michael Zeleny <larvatus@gmail.com>

## Special Event Permit Application

Michael Zeleny <zeleny@post.harvard.edu>
To: "William L. McClure" <wlm@jsmf.com>
Cc: "David W. Affeld" <dwa@agzlaw.com>, Peter Shimamoto <ps@agzlaw.com>, Scott Sandell <ssandell@nea.com>, Matt Milde <mlmilde@menlopark.org>, "Bertini, David C" <dcbertini@menlopark.org>, "Ortega, Matthew K" <mkortega@menlopark.org>, "Robert (Bob) Jonsen (rjonsen@menlopark.org)" <rjonsen@menlopark.org>
Bcc: Paul Mitchell <pmitchell@chyral.com>

Tue, Jul 28, 2015 at 12:57 AM

Dear Mr McClure,

Thank you for your response. I am hoping we can continue this conversation in a constructive and conclusive fashion. As a reminder to your clients and colleagues, I am publicizing and protesting death threats against me and my family, received in the course of a business dispute with, and in the names and on behalves of, WebEx Communications its daughter-raping co-founder Min Zhu. These threats were implicitly endorsed and expressly ratified after the fact by their erstwhile board members and ongoing investors, New Enterprise Associates (NEA). The object of my exercise is to educate and entertain, combining remedial instruction of NEA personnel and associates in business ethics with amusing exposure of its ongoing breach to the passerby. All onsite interactions will be subject to audiovisual recording, live webcast, and eventual incorporation into a feature documentary. You may think of this project as an application of disruptive technology to venture capitalist business as usual. Please note its nature of a video production in the course of an entertainment event, which give rise to clearly established statutory exemptions from California law regulating the possession of firearms in public.

To answer specific questions:

1. As stated, my display will be confined to the median strip on Sand Hill Road directly across the NEA headquarters. I assure you that it will be bounded with a safe margin for automotive and foot traffic and no obstructive or threatening acts or displays of any kind will take place. Beyond that, I do not believe that you can require me to lay out my location and its dimensions down to the last inch. In this, and many other matters to follow, reasonable men can disagree. Any and all residual disagreement between us will be subject to an application for declaratory relief in the United States District Court for the Northern District of California.

2. As stated, I intend to occupy the site of my performance around the clock until NEA publicly acknowledges its wrongdoing and severs all its relations with Min Zhu, Scott Sandell, and Dick Kramlich. As to the lighting and audiovisual display parameters, I will accommodate any reasonable restrictions you and your colleagues put forth as the authors of Menlo Park regulations, ostensibly constructed for my benefit in the course of previous litigation. It would be unproductive of me to second-guess you in this matter, and you, to demand the minute details of my proposal only to deter it with *ad hoc* obstacles. I specifically invite you to consider the matter of videos featuring explicit representations of sexual violence, in the context of their "serious literary, artistic, political, or scientific value" as per *Miller v. California*, 413 U.S. 15 (1973). If you are unable to determine this value by consulting NEA, we shall gladly establish it through testimony to be elicited in the ensuing litigation. In this connection, please bear in mind *Terminiello v. City of Chicago*, 337 U.S. 1 (1949), wherein the United States Supreme Court held speech that "stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance" to be protected under the First and Fourteenth Amendments to the United States Constitution.

3. Lastly, my assumption of full personal responsibility for the lawful defense of the site is meant to allay a concern expressed by Menlo Park Police on previous occasions, justifying its presence on site by positing that my firearms might come to be stolen from me in the course of my peaceful public protests. In this regard, please note that lawfully carrying a firearm does not constitute "reasonable suspicion" justifying a Terry stop. This applies in the context of California statutes that specifically allow the possession of a firearm "by an authorized participant in a motion picture, television, or video production, or an entertainment event, when the participant lawfully uses the firearm as part of that production or event, or while going directly to, or coming directly from, that production or event." In this regard, I expect you to

observe all legal constraints on police action. As per *Kolender v. Lawson*, 461 U.S. 352 (1983), "a person who is stopped on less than probable cause cannot be punished for failing to identify himself." Also see *Arizona v. Hicks*, 480 U.S. 321 (1987) ("Warrants only issue upon a showing of probable cause; thus, probable cause to believe an item in plain view is contraband or evidence of criminal activity must be required.") Please note that an anonymous tip that a person is carrying a gun is not sufficient to justify a police officer's stop and frisk of that person, even where descriptive detail regarding the subject has been corroborated. Thus in *Florida v. J.L.*, 529 U.S. 266 (2000), the United States Supreme Court declined to adopt the "firearms exception" to Terry's requirement of reasonable suspicion. Similarly, in *Pennsylvania v. D.M.*, 529 U.S. 1126 (2000), the Court ruled that an anonymous tip with a physical description and location that a person had a gun was not enough for reasonable suspicion, absent anything else to arouse the officer's suspicion. I bring all this to your attention in connection with adequate notice given herewith that my carrying of firearms is undertaken in the course and furtherance of a video production and an entertainment event, by an authorized participant therein. Attached please find a photo of a representative firearm to be displayed onsite.

I am hoping that the above will suffice to resolve the concerns that you voiced to date. In light of the legal complexity of this matter, I am giving you and your colleagues adequate lead time to come to a mutual accommodation.

Michael@massmeans.com | Zeleny@post.harvard.edu | 7576 Willow Glen Road, Los Angeles, CA 90046 | voice:323.363.1860 | fax:323.410.2373
http://larvatus.livejournal.com | "All of old. Nothing else ever. Ever tried. Ever failed. No matter. Try again. Fail again. Fail better." — Samuel Beckett

On Fri, Jul 24, 2015 at 2:27 PM, William L. McClure <wlm@jsmf.com> wrote:
[Quoted text hidden]



Browning M1919A4.jpg
330K

MP001039

# CITY OF MENLO PARK
Special Event Application
701 Laurel Street, Menlo Park, CA 94025  Ph: 650-330-2223  Fax: 650-330-2242



Applicant Name: **Michael Zeleny**

Organization Name: **Mass Means, Inc.**

Name of Event: **Child Rape Tools**

Address: **7576 Willow Glen Rd**

Home Phone: **323-363-1860**          City: **Los Angeles**   State: **CA**    Zip: **90046**

E-mail Address: **zeleny@post.harvard.edu**    Alternate Phone: **none**

Estimated Attendance: **drive-by only**    Fax: **323-410-2373**

Number of Event Staff: **1**    Event open the public: Yes ☒ No ☐

Purpose of Event: **Outing New Enterprise Associates as the corporate sponsors of incestuous child rapist Min Zhu.**    Number of Event Volunteers: **5**

Location of Event (please be specific and attach map): **2825 Sand Hill Rd, Menlo Park, CA 94025, at the median strip, per the attached.**

| Event Timeline | Day | Date | Start Time | End Time | Total Hours |
|---|---|---|---|---|---|
| Set up/Preparation | Wed | 9/30/2015 | 9 a.m. | | |
| Special Event | Thu | 10/1/2015 | 7 a.m. | 10 p.m. | 13 hours |
| Tear down/Clean up | | | | ongoing | 31 days |

Do you plan to use a City building or park? Yes ☐ No ☒     Do you plan to use Private Property: Yes ☐ No ☒     If yes, do you have written approval from Private Property owner: Yes ☐ No ☐

City Facility Reservation Permit Included: Yes ☐ No ☐ Pending ☐     If yes, provide address of location:

Any City streets closed? Yes ☐ No ☒     Any sidewalks blocked? Yes ☐ No ☒     Traffic Control Plan included: Yes ☐ No ☐ N/A ☒
Name of streets:

Renting barricades from City: Yes ☐ No ☒

Amplified sound (i.e. Music, PA system): Yes ☒ No ☐    Park sprinklers turned off: Yes ☐ No ☒     Time of use: **7 a.m. to 9 p.m.**

Temporary lighting: Yes ☒ No ☐  Please describe: **Portable spotlights focused on display.**

Charge for event: Yes ☐ No ☒  $_____ /person    Event is reoccurring more than annually?: Yes ☐ No ☐

Is this event a fundraiser: Yes ☐ No ☒    Proof of 501c3: Yes ☐ No ☐

Will alcohol be served: Yes ☐ No ☒    ABC Permit Attached: Yes ☐ No ☐ Pending ☐

Will you be selling alcohol: Yes ☐ No ☒

Will food be served: Yes ☐ No ☒    I will apply for San Mateo County Temporary Event Food Permit: Yes ☐ No ☒ Pending ☐

Will you be selling food: Yes ☐ No ☒

Selling any other items: Yes ☐ No ☒    Menlo Park Business License: Yes ☐ No ☒

Describe:

Will portable rest rooms be provided: ~~es~~ ☒ No ☐    No. of portable toilets **1**

Will you be using a tent, canopy, or other temporary structure? Yes ☒ No ☐    No. of ADA compliant portable toilets **0**

Please describe: **Canopy to be erected at** ~~MP00~~1040 **median strip of Sand Hill Rd**

# California Firearms Laws Summary

## 2016

California Department of Justice
Kamala D. Harris
Attorney General
http://oag.ca.gov

MP001041

# Table of Contents



**California Firearms Laws Summary 2016**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Persons Ineligible to Possess Firearms . . . . . . . . . . . . . . . . . . . 1
Sales and Transfers of Firearms . . . . . . . . . . . . . . . . . . . . . . . . 3
Prohibited Firearms Transfers and Straw Purchases . . . . . . . . . . 5
Reporting Requirements for New California Residents . . . . . . . . . 6
Shipment of Firearms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Carrying Firearms Aboard Common Carriers . . . . . . . . . . . . . . . . 7
Firearms in the Home, Business or at the Campsite . . . . . . . . . . . 7
Transportation of Firearms . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Use of Lethal Force in Self-Defense . . . . . . . . . . . . . . . . . . . . . . 8
Carrying a Concealed Weapon Without a License . . . . . . . . . . . . 10
Loaded Firearms in Public . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Openly Carrying an Unloaded Handgun . . . . . . . . . . . . . . . . . . . 11
Punishment for Carrying Unregistered Handgun . . . . . . . . . . . . . 11
Miscellaneous Prohibited Acts . . . . . . . . . . . . . . . . . . . . . . . . . 12
New Firearms/Weapons Laws . . . . . . . . . . . . . . . . . . . . . . . . . 14

MP001042

# California Firearms Laws
# Summary 2016



## INTRODUCTION

As the owner of a firearm, it is your responsibility to understand and comply with all federal, state and local laws regarding firearms ownership. Many of the laws described below pertain to the possession, use and storage of firearms in the home and merit careful review. The California Firearms Laws Summary 2016 provides a general summary of California laws that govern common possession and use of firearms by persons other than law enforcement officers or members of the armed forces. It is not designed to provide individual guidance for specific situations, nor does it address federal or local laws. The legality of any specific act of possession or use will ultimately be determined by applicable federal and state statutory and case law. Persons having specific questions are encouraged to seek legal advice from an attorney, or consult their local law enforcement agency, local prosecutor or law library. The California Department of Justice (DOJ) and all other public entities are immune from any liability arising from the drafting, publication, dissemination, or reliance upon this information.

## PERSONS INELIGIBLE TO POSSESS FIREARMS

The following persons are prohibited from possessing firearms (Pen. Code, §§ 29800-29825, 29900; Welf. & Inst. Code, §§ 8100, 8103):

### Lifetime Prohibitions

- Any person convicted of any felony or any offense enumerated in Penal Code section 29905.

- Any person convicted of an offense enumerated in Penal Code section 23515.

- Any person with two or more convictions for violating Penal Code section 417, subdivision (a)(2).

- Any person adjudicated to be a mentally disordered sex offender. (Welf. & Inst. Code; § 8103, subd. (a)(1).)

- Any person found by a court to be mentally incompetent to stand trial or not guilty by reason of insanity of any crime, unless the court has made a finding of restoration of competence or sanity. (Welf. & Inst. Code, § 8103, subds. (b)(1), (c)(1), and (d)(1).)

1

### 10-Year Prohibitions

- Any person convicted of a misdemeanor violation of the following: Penal Code sections 71, 76, 136.5, 140, 148, subdivision (d), 171b, 171c, 171d, 186.28, 240, 241, 242, 243, 244.5, 245, 245.5, 246, 246.3, 247, 273.5, 273.6, 417, 417.1, 417.2, 417.6, 422, 626.9, 646.9, 830.95, subdivision (a), 17500, 17510, subdivision (a), 25300, 25800, 27510, 27590, subdivision (c), 30315, or 32625, and Welfare and Institutions Code sections 871.5, 1001.5, 8100, 8101, or 8103.

## 5-Year Prohibitions

- Any person taken into custody as a danger to self or others, assessed, and admitted to a mental health facility under Welfare and Institutions Code sections 5150, 5151, 5152; or certified under Welfare and Institutions Code sections 5250, 5260, 5270.15. Persons certified under Welfare and Institutions Code sections 5250, 5260, or 5270.15 may be subject to a lifetime prohibition pursuant to federal law.

### Juvenile Prohibitions

- Juveniles adjudged wards of the juvenile court are prohibited until they reach age 30 if they committed an offense listed in Welfare and Institutions Code section 707, subdivision (b). (Pen. Code, § 29820.)

### Miscellaneous Prohibitions

- Any person denied firearm possession as a condition of probation pursuant to Penal Code section 29900, subdivision (c).

- Any person charged with a felony offense, pending resolution of the matter. (18 U.S.C. § 922(g).)

- Any person while he or she is either a voluntary patient in a mental health facility or under a gravely disabled conservatorship (due to a mental disorder or impairment by chronic alcoholism) and if he or she is found to be a danger to self or others. (Welf. & Inst. Code, § 8103, subd. (e).)

- Any person addicted to the use of narcotics. (Pen. Code, § 29800, subd. (a).)

- Any person who communicates a threat (against any reasonably identifiable victim) to a licensed psychotherapist which is subsequently reported to law enforcement, is prohibited for six months. (Welf. & Inst. Code, § 8100, subd. (b).)

- Any person who is subject to a protective order as defined in Family Code section 6218 or Penal Code section 136.2, or a temporary restraining order issued pursuant to Code of Civil Procedure sections 527.6 or 527.8.

### Personal Firearms Eligibility Check

Any person may obtain from the DOJ a determination as to whether he or she is eligible to possess firearms (review of California records only). The personal firearms eligibility check application form and instructions are on the DOJ website at http://oag.ca.gov/firearms/forms. The cost for such an eligibility check is $20. (Pen. Code, § 30105.)

2

## SALES AND TRANSFERS OF FIREARMS

In California, only licensed California firearms dealers who possess a valid Certificate of Eligibility (COE) are authorized to engage in retail sales of firearms. These retail sales require the purchaser to provide personal identifier information for the Dealer Record of Sale (DROS) document that the firearms dealer must submit to the DOJ. There is a mandatory 10-day waiting period before the firearms dealer can deliver the firearm to the purchaser. During this 10-day waiting period, the DOJ conducts a firearms eligibility background check to ensure the purchaser is not prohibited from lawfully possessing firearms. Although there are exceptions, generally all firearms purchasers must be at least 18 years of age to purchase a long gun (rifle or shotgun) and 21 years of age to purchase a handgun (pistol or revolver). Additionally, purchasers must be California residents with a valid driver's license or identification card issued by the California Department of Motor Vehicles.

Generally, it is illegal for any person who is not a California licensed firearms dealer (private party) to sell or transfer a firearm to another non-licensed person (private party) unless the sale or transfer is completed through a licensed California firearms dealer. A "Private Party Transfer" (PPT) can be conducted at any licensed California firearms dealership. The buyer and seller must complete the required DROS document in person at the licensed firearms dealership and deliver the firearm to the dealer who will retain possession of the firearm during the mandatory 10-day waiting period. In addition to the applicable state fees, the firearms dealer may charge a fee not to exceed $10 per firearm for conducting the PPT.

The infrequent transfer of firearms between immediate family members is exempt from the law requiring PPTs to be conducted through a licensed firearms dealer. For purposes of this exemption, "immediate family member" means parent and child, and grandparent and grandchild but does not include brothers or sisters. (Pen. Code, § 16720.) The transferee must also comply with the Firearm Safety Certificate requirement described below, prior to taking possession of the firearm. Within 30 days of the transfer, the transferee must also submit a report of the transaction to the DOJ. Download the form (Report of Operation of Law or Intra-Familial Firearm Transaction BOF 4544A) from the DOJ website at http://oag.ca.gov/firearms/forms or complete and submit the form electronically via the internet at https://CFARS.doj.ca.gov.

The reclaiming of a pawned firearm is subject to the DROS and 10-day waiting period requirements.

Specific statutory requirements relating to sales and transfers of firearms follow:

### Proof-of-Residency Requirement

To purchase a handgun in California, you must present documentation indicating that you are a California resident. Acceptable documentation includes a utility bill from within the last three months, a residential lease, a property deed or military permanent duty station orders indicating assignment within California.

3

MP001045

The address provided on the proof-of-residency document must match either the address on the DROS or the address on the purchaser's California driver's license or identification card. (Pen. Code, § 26945.)

## Firearm Safety Certificate Requirement

To purchase or acquire a firearm, you must have a valid Firearm Safety Certificate (FSC). To obtain an FSC, you must score at least 75% on an objective written test pertaining to firearms laws and safety requirements. The test is administered by DOJ Certified Instructors, who are often located at firearms dealerships. An FSC is valid for five years. You may be charged up to $25 for an FSC. Firearms being returned to their owners, such as pawn returns, are exempt from this requirement. In the event of a lost, stolen or destroyed FSC, the issuing DOJ Certified Instructor will issue a replacement FSC for a fee of $5. You must present proof of identity to receive a replacement FSC. (Pen. Code, §§ 31610-31670.)

## Safe Handling Demonstration Requirement

Prior to taking delivery of a firearm, you must successfully perform a safe handling demonstration with the firearm being purchased or acquired. Safe handling demonstrations must be performed in the presence of a DOJ Certified Instructor sometime between the date the DROS is submitted to the DOJ and the delivery of the firearm, and are generally performed at the firearms dealership. The purchaser, firearms dealer and DOJ Certified Instructor must sign an affidavit stating the safe handling demonstration was completed. The steps required to complete the safe handling demonstration are described in the Appendix. Pawn returns and intra-familial transfers are not subject to the safe handling demonstration requirement. (Pen. Code, § 26850.)

## Firearms Safety Device Requirement

All firearms (long guns and handguns) purchased in California must be accompanied with a firearms safety device (FSD) that has passed required safety and functionality tests and is listed on the DOJ's official roster of DOJ-approved firearm safety devices. The current roster of certified FSDs is available on the DOJ website at http://oag.ca.gov/firearms/fsdcertlist. The FSD requirement also can be satisfied if the purchaser signs an affidavit declaring ownership of either a DOJ-approved lock box or a gun safe capable of accommodating the firearm being purchased. Pawn returns and intra-familial transfers are not subject to the FSD requirement. (Pen. Code, §§ 23635-23690.)

## Roster of Handguns Certified for Sale in California

No handgun may be sold by a firearms dealer to the public unless it is of a make and model that has passed required safety and functionality tests and is listed on the DOJ's official roster of handguns certified for sale in California. The current roster of handguns certified for sale in California is on the DOJ website at http://certguns.doj.ca.gov/. PPTs, intrafamilial transfers, and pawn/consignment returns are exempt from this requirement. (Pen. Code, § 32000.)

4

MP001046

### One-Handgun-per-30-Days Limit

No person shall make an application to purchase more than one handgun within any 30-days period. Exemptions to the one-handgun-per-30-days limit include pawn returns, intra-familial transfers and private party transfers. (Pen. Code, § 27540.)

### Handgun Sales and Transfer Requirements

| | Retail Sales | Private Party Transfers | Intra-familial Transfers | Pawn Returns |
|---|---|---|---|---|
| Proof-of-Residency Requirement | Yes | Yes | No | Yes |
| Firearm Safety Certificate Requirement | Yes | Yes | Yes | No |
| Safe Handling Demonstration Requirement | Yes | Yes | No | No |
| Firearm Safety Device Requirement | Yes | Yes | No | No |
| Roster of Handguns Certified for Sale in California | Yes | No | No | No |
| One-Handgun-Per-30-Days Limit | Yes | No | No | No |

### Long Gun Sales and Transfer Requirements

| | Retail Sales | Private Party Transfers | Intra-familial Transfers | Pawn Returns |
|---|---|---|---|---|
| Proof-of-Residency Requirement | No | No | No | No |
| Firearm Safety Certificate Requirement | Yes | Yes | Yes | No |
| Safe Handling Demonstration Requirement | Yes | Yes | No | No |
| Firearm Safety Device Requirement | Yes | Yes | No | No |

## PROHIBITED FIREARMS TRANSFERS AND STRAW PURCHASES

**What is a straw purchase?**

A straw purchase is buying a firearm for someone who is prohibited by law from possessing one, or buying a firearm for someone who does not want his or her name associated with the transaction.

5

MP001047

It is a violation of California law for a person who is not licensed as a California firearms dealer to transfer a firearm to another unlicensed person, without conducting such a transfer through a licensed firearms dealer. (Pen. Code, § 27545.) Such a transfer may be punished as a felony. (Pen. Code, § 27590.)

Furthermore, it is a violation of federal law to either (1) make a false or fictitious statement on an application to purchase a firearm about a material fact, such as the identity of the person who ultimately will acquire the firearm (commonly known as "lying and buying") (18 U.S.C. 922(a)(6)), or (2) knowingly transfer a firearm to a person who is prohibited by federal law from possessing and purchasing it. (18 U.S.C. 922(d).) Such transfers are punishable under federal law by a $250,000 fine and 10 years in federal prison. (18 U.S.C. 924(a)(2).)

Things to Remember About Prohibited Firearms Transfers and Straw Purchases

An illegal firearm purchase (straw purchase) is a federal crime.

An illegal firearm purchase can bring a felony conviction sentence of 10 years in jail and a fine of up to $250,000.

Buying a gun and giving it to someone who is prohibited from owning one is a state and federal crime.

Never buy a gun for someone who is prohibited by law or unable to do so.

## REPORTING REQUIREMENTS FOR NEW CALIFORNIA RESIDENTS

New California residents must report their ownership of firearms to the DOJ or sell/transfer them in accordance with California law, within 60 days of bringing the firearm into the state. Persons who want to keep their firearms must submit a New Resident Firearm Ownership Report (BOF 4010A), along with a $19 fee, to the DOJ. Forms are available at licensed firearms dealers, the Department of Motor Vehicles or on-line at the DOJ website at http://oag.ca.gov/firearms/forms. Forms may also be completed and submitted electronically via the internet at https://CEARS.doj.ca.gov (Pen. Code, § 27560.)

## SHIPMENT OF FIREARMS

Long guns may be mailed through the U.S. Postal Service, as well as most private parcel delivery services or common carriers. Handguns may not be sent through the U.S. Postal Service. A common or contract carrier must be used for shipment of handguns. However, pursuant to federal law, non-licensees may ship handguns only to persons who hold a valid Federal Firearms License (FFL).

Both in-state and out-of-state FFL holders are required to obtain approval (e.g., a unique verification number) from the California DOJ prior to shipping firearms to any California FFL. (Pen. Code, § 27555.)

6

MP001048

## CARRYING FIREARMS ABOARD COMMON CARRIERS

Federal and state laws generally prohibit a person from carrying any firearm or ammunition aboard any commercial passenger airplane. Similar restrictions may apply to other common carriers such as trains, ships and buses. Persons who need to carry firearms or ammunition on a common carrier should always consult the carrier in advance to determine conditions under which firearms may be transported.

## FIREARMS IN THE HOME, BUSINESS OR AT THE CAMPSITE

Unless otherwise unlawful, any person over the age of 18 who is not prohibited from possessing firearms may have a loaded or unloaded firearm at his or her place of residence, temporary residence, campsite or on private property owned or lawfully possessed by the person. Any person engaged in lawful business (including nonprofit organizations) or any officer, employee or agent authorized for lawful purposes connected with the business may have a loaded firearm within the place of business if that person is over 18 years of age and not otherwise prohibited from possessing firearms. (Pen. Code, §§ 25605, 26035.)

NOTE: If a person's place of business, residence, temporary residence, campsite or private property is located within an area where possession of a firearm is prohibited by local or federal laws, such laws would prevail.

## TRANSPORTATION OF FIREARMS

### Handguns

California Penal Code section 25400 does not prohibit a citizen of the United States over 18 years of age who is in lawful possession of a handgun, and who resides or is temporarily in California, from transporting the handgun by motor vehicle provided it is unloaded and stored in a locked container. (Pen. Code, § 25610.)

The term "locked container" means a secure container which is fully enclosed and locked by a padlock, key lock, combination lock, or similar locking device. This includes the trunk of a motor vehicle, but does not include the utility or glove compartment. (Pen. Code, § 16850.)

### Rifles and Shotguns

Nonconcealable firearms (rifles and shotguns) are not generally covered within the provisions of California Penal Code section 25400 and therefore are not required to be transported in a locked container. However, as with any firearm, nonconcealable firearms must be unloaded while they are being transported. A rifle or shotgun that is defined as an assault weapon pursuant to Penal Code section 30510 or 30515 must be transported in accordance with Penal Code section 25610.

7

MP001049

### Registered Assault Weapons and .50 BMG Rifles

Registered assault weapons and registered .50 BMG rifles may be transported only between specified locations and must be unloaded and in a locked container when transported. (Pen. Code, § 30945, subd. (g).)

The term "locked container" means a secure container which is fully enclosed and locked by a padlock, key lock, combination lock, or similar locking device. This includes the trunk of a motor vehicle, but does not include the utility or glove compartment. (Pen. Code, § 16850.)

## USE OF LETHAL FORCE IN SELF-DEFENSE

The question of whether use of lethal force is justified in self-defense cannot be reduced to a simple list of factors. This section is based on the instructions generally given to the jury in a criminal case where self-defense is claimed and illustrates the general rules regarding the use of lethal force in self-defense.

### Permissible Use of Lethal Force in Defense of Life and Body

The killing of one person by another may be justifiable when necessary to resist the attempt to commit a forcible and life-threatening crime, provided that a reasonable person in the same or similar situation would believe that (a) the person killed intended to commit a forcible and life-threatening crime; (b) there was imminent danger of such crime being accomplished; and (c) the person acted under the belief that such force was necessary to save himself or herself or another from death or a forcible and life-threatening crime. Murder, mayhem, rape and robbery are examples of forcible and life-threatening crimes. (Pen. Code, § 197.)

### Self-Defense Against Assault

It is lawful for a person being assaulted to defend themself from attack if he or she has reasonable grounds for believing, and does in fact believe, that he or she will suffer bodily injury. In doing so, he or she may use such force, up to deadly force, as a reasonable person in the same or similar circumstances would believe necessary to prevent great bodily injury or death. An assault with fists does not justify use of a deadly weapon in self-defense unless the person being assaulted believes, and a reasonable person in the same or similar circumstances would also believe, that the assault is likely to inflict great bodily injury.

It is lawful for a person who has grounds for believing, and does in fact believe, that great bodily injury is about to be inflicted upon another to protect the victim from attack. In so doing, the person may use such force as reasonably necessary to prevent the injury. Deadly force is only considered reasonable to prevent great bodily injury or death.

NOTE: The use of excessive force to counter an assault may result in civil or criminal penalties.

8

MP001050

## Limitations on the Use of Force in Self-Defense

The right of self-defense ceases when there is no further danger from an assailant. Thus, where a person attacked under circumstances initially justifying self-defense renders the attacker incapable of inflicting further injuries, the law of self-defense ceases and no further force may be used. Furthermore, a person may only use the amount of force, up to deadly force, as a reasonable person in the same or similar circumstances would believe necessary to prevent imminent injury. It is important to note the use of excessive force to counter an assault may result in civil or criminal penalties.

The right of self-defense is not initially available to a person who assaults another. However, if such a person attempts to stop further combat and clearly informs the adversary of his or her desire for peace but the opponent nevertheless continues the fight, the right of self-defense returns and is the same as the right of any other person being assaulted.

## Protecting One's Home

A person may defend his or her home against anyone who attempts to enter in a violent manner intending violence to any person in the home. The amount of force that may be used in resisting such entry is limited to that which would appear necessary to a reasonable person in the same or similar circumstances to resist the violent entry. One is not bound to retreat, even though a retreat might safely be made. One may resist force with force, increasing it in proportion to the intruder's persistence and violence, if the circumstances apparent to the occupant would cause a reasonable person in the same or similar situation to fear for his or her safety.

The occupant may use a firearm when resisting the intruder's attempt to commit a forcible and life-threatening crime against anyone in the home provided that a reasonable person in the same or similar situation would believe that (a) the intruder intends to commit a forcible and life-threatening crime; (b) there is imminent danger of such crime being accomplished; and (c) the occupant acts under the belief that use of a firearm is necessary to save himself or herself or another from death or great bodily injury. Murder, mayhem, rape, and robbery are examples of forcible and life-threatening crimes.

Any person using force intended or likely to cause death or great bodily injury within his or her residence shall be presumed to have held a reasonable fear of imminent peril of death or great bodily injury to self, family, or a member of the household when that force is used against another person, not a member of the family or household, who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using the force knew or had reason to believe that an unlawful and forcible entry had occurred. Great bodily injury means a significant or substantial physical injury. (Pen. Code, § 198.5.)

NOTE: If the presumption is rebutted by contrary evidence, the occupant may be criminally liable for an unlawful assault or homicide.

9

MP001051

## Defense of Property

The lawful occupant of real property has the right to request a trespasser to leave the premises. If the trespasser does not do so within a reasonable time, the occupant may use force to eject the trespasser. The amount of force that may be used to eject a trespasser is limited to that which a reasonable person would believe to be necessary under the same or similar circumstances.

## CARRYING A CONCEALED WEAPON WITHOUT A LICENSE

It is illegal for any person to carry a handgun concealed upon his or her person or concealed in a vehicle without a license issued pursuant to Penal Code section 26150. (Pen. Code, § 25400.) A firearm locked in a motor vehicle's trunk or in a locked container carried in the vehicle other than in the utility or glove compartment is not considered concealed within the meaning of the Penal Code section 25400; neither is a firearm carried within a locked container directly to or from a motor vehicle for any lawful purpose. (Pen. Code, § 25610.)

The prohibition from carrying a concealed handgun does not apply to licensed hunters or fishermen while engaged in hunting or fishing, or while going to or returning from the hunting expedition. (Pen. Code, § 25640.) Notwithstanding this exception for hunters or fishermen, these individuals may not carry or transport loaded firearms when going to or from the expedition. The unloaded firearms should be transported in the trunk of the vehicle or in a locked container other than the utility or glove compartment. (Pen. Code, § 25610.)

There are also occupational exceptions to the prohibition from carrying a concealed weapon, including authorized employees while engaged in specified activities. (Pen. Code, §§ 25630, 25640.)

## LOADED FIREARMS IN PUBLIC

It is illegal to carry a loaded firearm on one's person or in a vehicle while in any public place, on any public street, or in any place where it is unlawful to discharge a firearm. (Pen. Code, § 25850, subd. (a).)

It is illegal for the driver of any motor vehicle, or the owner of any motor vehicle irrespective of whether the owner is occupying the vehicle to knowingly permit any person to carry a loaded firearm into the vehicle in violation of Penal Code section 25850, or Fish and Game Code section 2006. (Pen. Code, § 26100.)

A firearm is deemed loaded when there is a live cartridge or shell in, or attached in any manner to, the firearm, including, but not limited to, the firing chamber, magazine, or clip thereof attached to the firearm. A muzzle-loading firearm is deemed loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder. (Pen. Code, § 16840.)

In order to determine whether a firearm is loaded, peace officers are authorized to examine any firearm carried by anyone on his or her person or in a vehicle while in any public place, on any public street or in any prohibited area of an

10

MP001052

unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to these provisions is, in itself, grounds for arrest. (Pen. Code, § 25850, subd. (b).)

The prohibition from carrying a loaded firearm in public does not apply to any person while hunting in an area where possession and hunting is otherwise lawful or while practice shooting at target ranges. (Pen. Code, §§ 26005, 26040.) There are also occupational exceptions to the prohibition from carrying a loaded firearm in public, including authorized employees while engaged in specified activities. (Pen. Code, §§ 26015, 26030.)

NOTE: Peace officers and honorably retired peace officers having properly endorsed identification certificates may carry a concealed weapon at any time. Otherwise, these exemptions apply only when the firearm is carried within the scope of the exempted conduct, such as hunting or target shooting, or within the course and scope of assigned duties, such as an armored vehicle guard transporting money for his employer. A person who carries a loaded firearm outside the limits of the applicable exemption is in violation of the law, notwithstanding his or her possession of an occupational license or firearms training certificate. (Pen. Code, § 12031(b).)

## OPENLY CARRYING AN UNLOADED HANDGUN

It is generally illegal for any person to carry upon his or her person or in a vehicle, an exposed and unloaded handgun while in or on:

- A public place or public street in an incorporated city or city and county; or
- A public street in a prohibited area of an unincorporated city or city and county. (Pen. Code, § 26350.)

It is also illegal for the driver or owner of a motor vehicle to allow a person to bring an open and exposed unloaded handgun into a motor vehicle in specified public areas. (Pen. Code, § 17512.)

## PUNISHMENT FOR CARRYING UNREGISTERED HANDGUN

Any person who commits the crime of carrying a concealed handgun while having both the handgun and ammunition for that handgun on his/her person or in his/her vehicle may be subject to a felony enhancement if the handgun is not on file (registered) in the DOJ's Automated Firearms System. (Pen. Code, § 25400, subd. (c).)

Any person who commits the crime of carrying a loaded handgun on his/her person in a prohibited place may be guilty of a felony if the handgun is not on file (registered) in the DOJ's Automated Firearms System. (Pen. Code, § 25850, subd. (c).)

11

MP001053

## MISCELLANEOUS PROHIBITED ACTS

### Obliteration or Alteration of Firearm Identification

It is illegal for any person to obliterate or alter the identification marks placed on any firearm including the make, model, serial number or any distinguishing mark lawfully assigned by the owner or by the DOJ. (Pen. Code, § 23900.)

It is illegal for any person to buy, sell or possess a firearm knowing its identification has been obliterated or altered. (Pen. Code, § 23920.)

### Unauthorized Possession of a Firearm on School Grounds

It is illegal for any unauthorized person to possess or bring a firearm upon the grounds of, or into, any public school, including the campuses of the University of California, California State University campuses, California community colleges, any private school (kindergarten through 12th grade) or private university or college. (Pen. Code, § 626.9.)

### Unauthorized Possession of a Firearm in a Courtroom, the State Capitol, etc.

It is illegal for any unauthorized person to bring or possess any firearm within a courtroom, courthouse, court building or at any meeting required to be open to the public. (Pen. Code, § 171b.)

It is illegal for any unauthorized person to bring or possess a loaded firearm within (including upon the grounds of) the State Capitol, any legislative office, any office of the Governor or other constitutional officer, any Senate or Assembly hearing room, the Governor's Mansion or any other residence of the Governor or the residence of any constitutional officer or any Member of the Legislature. For these purposes, a firearm shall be deemed loaded whenever both the firearm and its unexpended ammunition are in the immediate possession of the same person. (Pen. Code, §§ 171c, 171d, 171e.)

### Drawing or Exhibiting a Firearm

If another person is present, it is illegal for any person, except in self-defense, to draw or exhibit a loaded or unloaded firearm in a rude, angry or threatening manner or in any manner use a firearm in a fight or quarrel. (Pen. Code, § 417.)

### Threatening Acts with a Firearm on a Public Street or Highway

It is illegal for any person to draw or exhibit a loaded or unloaded firearm in a threatening manner against an occupant of a motor vehicle which is on a public street or highway in such a way that would cause a reasonable person apprehension or fear of bodily harm. (Pen. Code, § 417.3.)

### Discharge of a Firearm in a Grossly Negligent Manner

It is illegal for any person to willfully discharge a firearm in a grossly negligent manner which could result in injury or death to a person. (Pen. Code, § 246.3.)

12

MP001054

## Discharge of a Firearm at an Inhabited/Occupied Dwelling, Building, Vehicle, Aircraft

It is illegal for any person to maliciously and willfully discharge a firearm at an inhabited dwelling, house, occupied building, occupied motor vehicle, occupied aircraft, inhabited housecar or inhabited camper. (Pen. Code, § 246.)

## Discharge of a Firearm at an Unoccupied Aircraft, Motor Vehicle, or Uninhabited Building or Dwelling

It is illegal for any person to willfully and maliciously discharge a firearm at an unoccupied aircraft. It is illegal for any person to discharge a firearm at an unoccupied motor vehicle, building or dwelling. This does not apply to an abandoned vehicle, an unoccupied motor vehicle or uninhabited building or dwelling with permission of the owner and if otherwise lawful. (Pen. Code, § 247.)

## Discharge of a Firearm from a Motor Vehicle

It is illegal for any person to willfully and maliciously discharge a firearm from a motor vehicle. A driver or owner of a vehicle who allows any person to discharge a firearm from the vehicle may be punished by up to three years imprisonment in state prison. (Pen. Code, § 26100.)

## Criminal Storage

"Criminal storage of firearm of the first degree" – Keeping any loaded firearm within any premises that are under your custody or control and you know or reasonably should know that a child (any person under 18) is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes death or great bodily injury to himself, herself, or any other person. (Pen. Code, § 25100, subd. (a).)

"Criminal storage of firearm of the second degree" – Keeping any loaded firearm within any premises that are under your custody or control and you know or reasonably should know that a child (any person under 18) is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes injury, other than great bodily injury, to himself, herself, or any other person, or carries the firearm either to a public place or in violation of Penal Code section 417. (Pen. Code, § 25100, subd. (b).)

Neither of the criminal storage offenses (first degree, second degree) shall apply whenever the firearm is kept in a locked container or locked with a locking device that has rendered the firearm inoperable. (Pen. Code, § 25105.)

## Sales, Transfers and Loans of Firearms to Minors

Generally, it is illegal to sell, loan or transfer any firearm to a person under 18 years of age, or to sell a handgun to a person under 21 years of age. (Pen. Code, § 27505.)

13

MP001055

Possession of a Handgun or Live Ammunition by Minors

It is unlawful for a minor to possess a handgun unless one of the following circumstances exist:

- The minor is accompanied by his or her parent or legal guardian and the minor is actively engaged in a lawful recreational sporting, ranching or hunting activity, or a motion picture, television or other entertainment event;

- The minor is accompanied by a responsible adult and has prior written consent of his or her parent or legal guardian and is involved in one of the activities cited above; or

- The minor is at least 16 years of age, has prior written consent of his or her parent or legal guardian, and the minor is involved in one of the activities cited above. (Pen. Code, §§ 29610, 29615.)

It is unlawful for a minor to possess live ammunition unless one of the following circumstances exist:

- The minor has the written consent of a parent or legal guardian to possess live ammunition;

- The minor is accompanied by a parent or legal guardian; or

- The minor is actively engaged in, or is going to or from, a lawful, recreational sport, including, competitive shooting, or agricultural, ranching, or hunting activity. (Pen. Code, §§ 29650, 29655.)

## NEW FIREARMS/WEAPONS LAWS

**AB 892 (Stats. 2015, ch. 203) – Purchase of State-Issued Handgun by Spouse/Domestic Partner of Peace Officer Killed in the Line of Duty**

- Provides an exception to the Unsafe Handgun Act allowing the spouse/domestic partner of a peace officer killed in the line of duty to purchase their spouse/domestic partner's service weapon. (Pen. Code, § 32000.)

**AB 950 (Stats. 2015, ch. 205) – Gun Violence Restraining Orders**

- Allows a person who is subject to a gun violence restraining order to transfer his or her firearms or ammunition to a licensed firearms dealer for the duration of the prohibition. If the firearms or ammunition have been surrendered to a law enforcement agency, the bill would entitle the owner to have them transferred to a licensed firearms dealer. (Pen. Code, §§ 29830.)

- Extends to ammunition, current authority for a city or county to impose a charge relating to the seizure, impounding, storage, or release of a firearm. (Pen. Code, § 33880.)

14

MP001056

AB 1014 (Stats. 2014, ch. 872 ) — Gun Violence Restraining Orders

- Beginning June 1, 2016, authorizes courts to issue gun violence restraining orders, ex parte gun violence restraining orders, and temporary emergency gun violence restraining orders if the subject of the petition poses a significant danger of personal injury to himself, herself, or another by having in his or her custody or control, owning, purchasing, possessing, or receiving a firearm and that the order is necessary to prevent personal injury to himself, herself, or another, as specified. (Pen. Code, §§ 18100 - 18205.)

- Beginning June 1, 2016, makes it a misdemeanor to own or possess a firearm or ammunition with the knowledge that he or she is prohibited from doing so by a gun violence restraining order. (Pen. Code, § 18205.)

- Beginning June 1, 2016, makes it a misdemeanor to file a petition for a gun violence restraining order with the intent to harass or knowing the information in the petition to be false. (Pen. Code, § 18200.)

AB 1134 (Stats. 2015, ch. 785 ) — Licenses to Carry Concealed Handguns

- Authorizes the sheriff of a county to enter into an agreement with the chief or other head of a municipal police department of a city for the chief or other head of a municipal police department to process all applications for licenses to carry a concealed handgun, renewals of those licenses, and amendments of those licenses, for that city's residents. (Pen. Code, § 26150.)

AB 2220 (Stats. 2014, ch. 423) — Private Patrol Operators

- Beginning July 1, 2016, establishes procedures allowing a Private Patrol Operator (PPO) business entity to be the registered owner of a firearm.

- Beginning July 1, 2016, allows a security guard to be assigned a firearm by the PPO and for a firearm custodian to be designated by the PPO. (Pen. Code, §§ 16970, 31000, 32650.)

SB 199 (Stats. 2014, ch. 915) — BB Devices and Imitation Firearms

- Beginning January 1, 2016, amends the definitions of a "BB device" and an "imitation firearm." (Pen. Code, §§ 16250, 16700.)

SB 707 (Stats. 2015, ch. 766) — Gun-free School Zones

- Recasts Gun-Free School Zone Act provisions relating to a person holding a valid license to carry a concealed firearm to allow that person to carry a firearm in an area that is within 1,000 feet of, but not on the grounds of, a public or private school providing instruction in kindergarten or grades 1 to 12, inclusive. (Pen. Code, § 626.9.)

- Creates an exemption from the Gun-Free School Zone Act for certain appointed peace officers authorized to carry a firearm by their appointing agency, and for certain retired reserve peace officers authorized to carry a concealed or loaded firearm. (Pen. Code, § 626.9.)

15



If you have any comments or suggestions
regarding this publication, please send them to:

Department of Justice
Bureau of Firearms / BSC Unit
P.O. Box 160367
Sacramento, CA 95816-0367

or via our website at
http://oag.ca.gov/firearms

Printed on recycled paper

MP001059

*KAMALA D. HARRIS*
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

BUREAU OF CRIMINAL INFORMATION AND ANALYSIS
P.O. Box 903417
SACRAMENTO, CA 94203-4170

June 30, 2016

MICHAEL ZELENY
7576 WILLOW GLEN RD
LOS ANGELES, CA 90046

RE:   California Criminal History Information

Dear Applicant:

This letter is in response to your record review request concerning the existence of information maintained in the California state summary criminal history files, as defined in subdivision (a) of Section 11105. Your fingerprints did identify to a record maintained in these files, and as such, a copy of that record is enclosed. If you wish to challenge the accuracy or completeness of your record, please complete and return the enclosed form (BCIA 8706) and supporting documentation to the address noted above. As requested, a copy of this record review response has been sent to your designee.

Pursuant to California Penal Code section 11121, the purpose of a record review request is to afford an individual with a copy of their record and to refute any erroneous or inaccurate information contained therein. The intent is not to be used for licensing, certification or employment purposes.

Additionally, California Penal Code sections 11125, 11142, and 11143 does not allow for a person or agency to make a request to another person to provide them with a copy of an individual's criminal history or notification that a record does not exist; does not allow an authorized person to furnish the record to an unauthorized person; nor does it allow an unauthorized person to buy, receive or possess the record or information. A violation of these section codes is a misdemeanor.

Sincerely,

*Cindy Santos*

Record Review Unit
Applicant Information and Certification Program
Bureau of Criminal Information and Analysis

For   KAMALA D. HARRIS
Attorney General

Enclosures
BCIA 8711d (Rev. 05/16)

MP001060

# Exhibit K

MP001061

*KAMALA D. HARRIS*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*



BUREAU OF FIREARMS
P.O. BOX 160367
SACRAMENTO, CA 95816-0367
Telephone: (916) 227-2153
Fax: (916) 227-1021

July 12, 2016

Michael Zeleny
7576 Willow Glen Rd
Los Angeles, CA 90046

RE:     Entertainment Firearms Permit Number: 12-380

Dear Mr. Zeleny:

The California Department of Justice (the Department) has approved your application for an Entertainment Firearms Permit. Your permit is enclosed along with a wallet sized permit for your convenience. Your permit will expire one year from the date of issuance and must be renewed annually. Additionally, the Department will no longer send courtesy notices regarding the scheduled expiration of your permit(s). You are responsible for submitting the required application and applicable fees as required for timely renewal.

DATE OF ISSUE:     JULY 13, 2016

EXPIRATION DATE:  JULY 12, 2017

Possession of a valid Entertainment Firearms Permit allows you to receive unloaded firearms loaned to you for use solely as props in motion picture, television, video, theatrical, or other entertainment productions. (Pen. Code, §§ 29500-29530.)

If you have any questions, please contact the Bureau of Firearms at (916) 227-2153.

Sincerely,

ELENE MCGEE, Manager
Bureau of Firearms

For   KAMALA D. HARRIS
Attorney General

Enclosure

BOF/EFP-0001

MP001062



STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
BUREAU OF FIREARMS

*Entertainment Firearms Permit*

Permit Number: 12-380

Issued to:

MICHAEL ZELENY

Date of Issue:      JULY 13, 2016
Expiration Date:    JULY 12, 2017

Signature of Issuing Officer

This is to certify that the Department of Justice, Bureau of Firearms has completed a firearms eligibility check. As of the date of issue, there is nothing that would prohibit the above named permit holder from the possession of firearms loaned to the permittee for use as props in motion picture, television, video theatrical, or other entertainment productions pursuant to Penal Code sections 29500 through 29530.

MP001063

State of California
Department of Justice
Bureau of Firearms

## Entertainment Firearms Permit

Permit No.   12-380i

Issued to

**MICHAEL ZELENY**

Date of Issue:   7-18-16

Expiration Date:   7-18-17

This is to certify that the Department of Justice, Bureau of Firearms, has completed a firearms eligibility check. As of the date of issue, there is nothing that would prohibit the above named permitholder from the possession of firearms loaned to and/or permitted for use as props in motion picture, television, video, theatrical, or other entertainment production pursuant to Penal Code sections 29500 through 29535.

Signature of Issuing Officer

MP001064

| | |
|---|---|
| **From:** | Harada, Jelena V. |
| **To:** | michael@massmeans.com |
| **Cc:** | McClure, William; "grubens@adcl.com"; McIntyre, Alex D; Bertini, David C |
| **Subject:** | Notice re Menlo Park City Council Decision |
| **Date:** | Tuesday, September 05, 2017 10:14:46 PM |
| **Attachments:** | Zeleny Letter - city council action.pdf |

Mr. Zeleny,

Attached is correspondence informing you of the Menlo Park City Council's decision made at the City Council special meeting of August 29, 2017, related to your Appeal of Denial of Special Event Permit Application. This item is also being sent to you via US mail.

Sincerely,

**Jelena Harada**
Deputy City Clerk
City of Menlo Park
701 Laurel St., Menlo Park, CA 94025
650-330-6612 | jvharada@menlopark.org


CITY OF
MENLO PARK


Ex. No. 18
Plt.□ Def.□ Pet.□ Rsp.□
Wit: Zeleny
Date: 3.18.19
Judy Brennan, CSR #5138

**City Clerk**



CITY OF
**MENLO PARK**

September 5, 2017

VIA EMAIL: michael@massmeans.com
AND U.S. MAIL

Michael Zeleny
7576 Willow Glen Road
Los Angeles, CA 90046

**RE: City Council Decision: Appeal of Denial of Special Event Permit Application**

Dear Mr. Zeleny,

On August 29, 2017, the Menlo Park City Council considered the appeal of staff's administrative decision to deny your Special Events Permit application. The City Council voted 4-0 to uphold the City Manager's decision to uphold staff's denial of your application. The City Council relied on the presentation of staff, your presentation and response to questions, and the staff report for the August 29, 2017, meeting, which consisted of a staff report and a letter from the City Manager's Office dated September 12, 2016, including Exhibits A through K, which consisted of correspondence between you and staff with respect to your application.

Please take notice that the City Council's decision on August 29, 2017, is a final administrative decision. Any challenge to this decision in the appropriate court of competent jurisdiction must be made within ninety (90) days of August 29, 2017, pursuant to California Code of Civil Procedure Section 1094.6, unless a shorter time is required by State or Federal law.

If you believe the City Council's decision involved speech or expressive conduct entitled to protection by the First Amendment, any petition must be served on the City of Menlo Park no later than twenty-one (21) calendar days following the City Council's decision of August 29, 2017, pursuant to California Code of Civil Procedure Section 1094.8.

Thank you for your attention to this matter.

2

Sincerely,

Jelena Harada
Deputy City Clerk


cc:     Via email only
        William L. McClure, Esq.
        Greg Rubens, Esq.
        Alex D. McIntyre, City Manager
        Dave Bertini, Commander

MP001220



From: Michael Zeleny
To: Toews, Ivan J
Cc: Harada, Jelena V; McClure, William; McIntyre, Alex D; Bertini, David C; dwa@agzlaw.com; Flegel, Nicolas A.
Subject: Re: Notice re Menlo Park City Council Decision
Date: Friday, October 06, 2017 3:04:25 AM
Attachments: image001.png
Encroachment-Permits-Film Permit, - signed.pdf

Dear Mr Toews,

Attached please find a completed application for a film permit.

Starting on 30 October 2017 and continuing through 27 December 2017, I shall maintain a portable multimedia presentation illustrating ongoing corporate support of New Enterprise Associates (NEA) for incestuous child rapist Min Zhu. I shall be present in the vicinity of 2825 Sand Hill Road from 08:00 till 18:00 every weekday, served by a support staff of one personal assistant and one cinematographer. My props are to include fully operational, exposed and unloaded military grade firearms and loaded ammunition feeding devices therefor, including without limitation, a 9mm Para semiautomatic SIG P210 pistol, and a 7.65x51mm NATO semiautomatic LRB M25 rifle and tripod-mounted belt-fed semiautomatic Browning M1919a4, in full compliance with all applicable laws. A 55" portable media display powered by a portable gas generator will display videos featuring explicit representations of sexual violence committed by NEA's publicly disgraced protégé. A sample image can be found at http://larvatus.livejournal.com/371973.html. Two tripod-mounted cameras will be placed on either side of Sand Hill Road, focusing on public reactions to my display. One of them will be attended by a cinematographer. I will operate the other one remotely. All their footage, complemented by output of body cams, will be live streamed on the Internet.

A site map can be found at https://www.google.com/maps/@37.4197308,-122.2137188,17z/. All placements of equipment and personnel will be determined to avoid interference with automotive and foot traffic, in consultation with the Menlo Park City authorities. All media aspects of this event will be subject to content-neutral regulation negotiated with Menlo Park City authorities. My fundamental rights under the First and Second Amendments of the Constitution of the United States are reserved and non-negotiable.

Please note that my standing and circumstances require accommodations not anticipated by your application format and requirements. As an individual engaged in a non-profit endeavor of public interest, I hereby apply for a waiver of all applicable fees. I will furnish all requisite liability waivers and procure the appropriate insurance coverage upon your conditional approval of this application.

Please address all legal inquiries and requests to David W. Affeld, Affeld Grivakes LLP, 2049 Century Park East, Suite 2460, Los Angeles, CA 90067, voice:310.979.8700, fax:310.979.8701.

___

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Thu, Sep 28, 2017 at 1:00 PM, Toews, Ivan J <IJToews@menlopark.org> wrote:

> Dear Mr. Zeleny,
>
>
> Please see attached film permit application and film permit conditions. Application can be submitted via email. Thank you.

**Ivan Toews- Land Development Engineer**

**City of Menlo Park |**

701 Laurel St. | Menlo Park, CA 94025

Direct (650)-330-6712 | | Fax 650-327-5497

IJToews@menlopark.org



---

**From:** Nicolas A. Flegel [mailto:naf@jsmf.com]
**Sent:** Wednesday, September 27, 2017 11:35 AM
**To:** michael@massmeans.com
**Cc:** Harada, Jelena V <jvharada@menlopark.org>; McClure, William <wlm@jsmf.com>; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; dwa@agzlaw.com; Toews, Ivan J <IJToews@menlopark.org>
**Subject:** RE: Notice re Menlo Park City Council Decision

Dear Mr. Zeleny,

Thank you for your email of September 7, 2017, requesting that the City of Menlo Park reconsider your special events permit application as a film permit application. The City has asked that I respond to your email.   The City has a film permit application process, and therefore you should submit a film permit application to staff.  This is a different permit than a special event permit, so you will need to follow/comply with the film permit requirements.   I am copying Ivan Toews of the Public Works Department, who handles film permits, and am requesting Ivan by this email to forward you the necessary application and information.   Ivan's contact information is:

Ivan Toews- Land Development Engineer

City of Menlo Park |

701 Laurel St. | Menlo Park, CA 94025

Direct (650)-330-6712 | | Fax 650-327-5497

jjtoews@menlopark.org

Thank you for your attention to this matter.

Nick Flegel

(650) 324-9300

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Thursday, September 7, 2017 2:28 AM
**To:** Harada, Jelena V <jvharada@menlopark.org>
**Cc:** William L. McClure <wlm@jsmf.com>; grubens@adcl.com; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; David W. Affeld <dwa@agzlaw.com>
**Subject:** Re: Notice re Menlo Park City Council Decision

Thank you for your email. In keeping with the substance of our exchanges in last week's hearing, and in the mutual interests of efficiency, I would like the City of Menlo Park to reconsider my special event permit mitapplication as requesting a film permit.

The salient points of my request are as follows:

- The videography is to take place alongside 2855 Sand Hill Road, Menlo Park, CA 94025, and continue indefinitely, Monday through Friday, from 8 a.m. to 7 p.m.;
- All participants, cameras, and props will be placed so as to avoid any interference with automotive and foot traffic;
- The City will recognize all participants in the film production that are so authorized in advance by myself, as exempt from sanctions for carrying a concealed firearm or openly carrying an unloaded handgun or a long gun under California Penal Code Sections 25400 (a) (2), 26350 (a) (1), and 26400 (a), pursuant to the relevant exemptions under P.C. Sections 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event.

I remain open to reasonable time, place, and manner regulations.

Please let me know how to proceed in order to ensure an expeditious determination from the City authorities.

Michael@massmeans.com | Zeleny@post.harvard.edu | 7576 Willow Glen Road, Los Angeles, CA 90046 | voice:323.363.1860 | fax:323.410.2373.

http://larvatus.livejournal.com | "All of old. Nothing else ever. Ever tried. Ever failed. No matter. Try again. Fail again. Fail better." — Samuel Beckett

On Sep 5, 2017, at 10:14 PM, Harada, Jelena V <jvharada@menlopark.org> wrote:

> Mr. Zeleny,
>
> Attached is correspondence informing you of the Menlo Park City Council's decision made at the City Council special meeting of August 29, 2017, related to your Appeal of Denial of Special Event Permit Application. This item is also being sent to you via US mail.
>
> Sincerely,
>
> **Jelena Harada**
>
> Deputy City Clerk
>
> City of Menlo Park
>
> 701 Laurel St., Menlo Park, CA 94025
>
> 650-330-6612 | jvharada@menlopark.org
>
> <image001.jpg>
>
> <Zeleny Letter – city council action.pdf>

MP001246



MP001247



**City of Menlo Park
Engineering Division
701 Laurel Street
Menlo Park, CA 94025
Telephone (650) 330-6740**

CITY OF MENLO PARK

**PERMIT NO.:** _____
Keep this permit at the work site at all times

Call 24 hours in advance of working in the public right of way AND for each inspection request.
*Uninspected work will be rejected.*

## ENCROACHMENT PERMIT APPLICATION

- ☐ Major Encroachment
- ☐ Minor Encroachment
- ☐ Temporary Encroachment
- ☐ Debris or Container Box
- ■ Other FILM PERMIT
- ☐ City-Mandated Repairs

### ONE PERMIT PER ADDRESS

| Location of Work | Applicant Represents | | Applicant e-mail: |
|---|---|---|---|
| 2825 Sand Hill Rd, Menlo Park, CA 94025 | ☐ Contractor  ■ Owner | | Applicant fax:   zeleny@post.harvard.edu |

| Name of Applicant (person) | Address | City | State | Zip | Telephone |
|---|---|---|---|---|---|
| Michael Zeleny | 7576 Willow Glen Road | Los Angeles | CA | 90046 | 323-363-1860 |

| Name of Contractor | Address | City | State | Zip | Telephone |
|---|---|---|---|---|---|
| n/a | | | | | |

| California Construction License No. | Menlo Park Business License No. | Est. Start Date | Est. Complete Date |
|---|---|---|---|
| n/a | n/a | 30 October 2017 | 29 December 2017 |

| Estimated Construction Cost (Estimate work in city R/W only. Do not include value of utility.)  $ 0 | Bond or Deposit * $ to be furnished | Bond or Deposit provided by: ☐ Contractor  ■ Owner  ☐ Other (provide name, company, address) |
|---|---|---|

| Description of work to be done: | Applicant submits the following: |
|---|---|
| Making a multimedia presentation and filming public responses thereto. | ☐ 3 copies of sketch or plans<br>☐ 3 copies of traffic control plans<br>☐ insurance certificate |

***Call Underground Service Alert (USA) at 1-800-227-2600 before you dig***

GENERAL CONDITIONS OF PERMIT ATTACHED.
Signature below acknowledges that special working hours may apply – check the approved traffic control plan.

I hereby acknowledge that I have read this permit and the attached conditions, that the information given by me is correct, that I am the owner or the duly authorized agent of the owner, and that I agree to comply with the conditions and all applicable provisions of state laws, city ordinances, and the rules of any governmental agency involved.

| | Principal | 6 October 2017 |
|---|---|---|
| Signature of Applicant<br>(Owner or authorized agent) | Title | Date |

### DO NOT WRITE BELOW THIS LINE -- CITY STAFF USE ONLY

| Approved by Engineering Division | Date | Permit expires | Fees (retained by City) | $ |
|---|---|---|---|---|
| | | Total Due to City | ☐ Paid | $ |

*\* Bond or deposit requests must originate from the bond/deposit provider. A copy of the original receipt must accompany the refund request. All deposits or bonds are subject to forfeiture to comply with City Codes and Ordinances.*

MP001248



CITY OF
MENLO PARK

# GENERAL CONDITIONS OF PERMIT

### Engineering Division
### 701 Laurel Street
### Menlo Park, CA 94025
### Notification of Work or Inspection Requests: (650) 330-6740

1. This permit, regardless of when dated, shall not be in effect until the applicant has obtained all licenses and other permits required by law.

2. This permit is declared null and void if work has not commenced three (3) months after the date of permit issuance.

3. Traffic control plan is required for work that will block public right-of-way.  Plan shall include re-routing of vehicles, bicycles and pedestrians.

4. Any damages to existing facilities and improvements above ground or below ground, shall be promptly repaired or replaced at the permittee's expense, and claims for damage to City property must be promptly paid.

5. Applicant is responsible for determining exact locations or depths of existing utilities or other facilities.  Call Underground Service Alert (USA) at 1-800-227-2600 a minimum of 48 hours prior to performing work.

6. Applicant carries sufficient insurance to work in the public right of way, and names City of Menlo Park as additional insured.  Applicant agrees to keep insurance active for the duration of the project.

7. All work shall comply with the City and Caltrans Standards, including traffic control.

8. **Street Opening, Sidewalk, Curb and Gutter, and Driveway Permits.**  Permittee shall notify the Public Works Inspector at least 24 hours prior to:  beginning work, inspection requests, or concrete placement.  The number and type of inspections required, and any tests that may be required will be as directed by the Public Works Inspector.  The Public Works Inspector may be contacted by calling (650) 330-6740.

9. All trench plates used in the public right of way must have a non-skid surface.

10. Construction activities are restricted to Monday through Friday (City holidays excepted) between the hours of 8:00 AM and 5:00 PM, unless otherwise approved in writing by the Engineering Services Division.

11. A faithful performance bond or a cash deposit in an amount equal to the estimated cost of the proposed work is required for curb and gutter, driveway, or street opening permits

12. This grant of permission does not constitute a deed or grant of easement by the City, is not transferable or assignable and is revocable at any time at the will of the City.

13.     This permit does not authorize tree trimming or tree removal.

14. *The traffic control plan as attached must be adhered to at all times.  Note that the traffic control plan may have restricted working hours for working in the public right of way, which supersedes the standard encroachment permit working hours.*

15. The use of City property by permittee shall be limited to the purposes set forth by this permit and no structures of any kind, except those expressly permitted shall be erected or placed thereon.

16. Debris boxes/storage containers shall have reflectors so that they can be seen at night.  This permit must be taped to the outside of debris boxes in a visible location.

17. This permit does not include overnight street parking for any vehicles.  A separate parking permit can be obtained from the Police Department.

18. All stormwater BMP's must be in place between October 15th and April 15th, or as directed by the Public Works Inspector.

19. Additional conditions (if any) are attached to this permit and shall be followed accordingly.

<u>Additional Conditions:</u>

MP001249



Ex. No. 23
Plt.☐ Deft.☐ Jet.☐ Rsp.☐
Wit: Zeleny
Date: 3.18.19
Judy Brennan, CSR #5138

| From: | Toews, Ivan J |
| To: | Michael Zeleny; Harada, Jelena V; McClure, William; Bertini, David C; McIntyre, Alex D; Flegel, Nicolas A.; Subrah Ivar; Scott Sandell |
| Cc: | rlwa@gnzlaw.com |
| Subject: | RE: Notice re Menlo Park City Council Decision |
| Date: | Monday, November 06, 2017 9:49:00 AM |
| Attachments: | image001.png |

Mr. Zeleny,

Staff has reviewed your permit application.  Due to the proposed length of the time to film and location of filming on a busy arterial roadway, this is an unusual permit to process.  Thank you in advance for your patience and cooperation.  In order for the staff to process your film permit application, we need the following additional information:

1. Film dates: Per your application you plan to film for over 55 days.
   a. Submit times for each day regarding set-up and tear down the equipment. City film permits require filming to occur between 8:00 a.m. and 6:00 p.m.
   b. Note: proposed film times are subject to review by staff based upon scope of work required.
2. Gas generator: please provide the make and model of the gas generator
   a. Submit decibel reading for the equipment to ensure it does not exceed City ordinance for noise level.
3. Written notice to business within 200 feet of the film location will need to be notified
   a. Provide a draft written notice letter that you plan to mail to surrounding businesses for staff's review
4. Site plan: the permit is unclear as to the filming location or locations you intend to utilize.  Please provide a detailed site plan to show the exact location of equipment and where you plan to stage your presentation/ equipment
   a. Proposed parking location for your equipment and crew vehicles
   b. List all proposed equipment you intend to utilize for the production and location where you intend to place it
5. Traffic control plan: provide a detailed traffic control on how you plan to divert pedestrians around your film location so that staff can determine if police officers must be present for traffic control, and so staff can determine the feasibility and cost of staff time.  Please refer to the Film Production worksheet previously provided to you which sets forth the required information necessary to process the application.
6. Business license: Permittee shall apply for a one-time Business License and pay, with a valid check, money order, credit card or cashier's check. See Guide to Annual Business License Fee Calculation for the fee schedule.
   a. Fee waiver:  Please provide details why a fee waiver is necessary.
7. The application refers to "accommodations not anticipated by your application format."  Please provide more detail regarding what accommodations you are seeking for your production.
8. Liability Insurance: Please provide  the City a Certificate of Liability Insurance acceptable to its Risk Management office showing combined single limit coverage for bodily injury and property damage, not less than $1 million; which is to include the City and it's officials and employees and agents named as additional insured in the policy.
9. Please provide a complete and signed application
10. Fees: Submit a film permitting payment of $150.00 in addition to the daily permit

fees of $50 per day for short subject films.

Ivan Toews- Land Development Engineer
City of Menlo Park |
701 Laurel St. | Menlo Park, CA 94025
Direct (650)-330-6712 | | Fax 650-327-5497
ijtoews@menlopark.org



**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Friday, November 03, 2017 1:41 AM
**To:** Toews, Ivan J <IJToews@menlopark.org>; Harada, Jelena V <jvharada@menlopark.org>; McClure, William <wlm@jsmf.com>; Bertini, David C <dcbertini@menlopark.org>; McIntyre, Alex D <admcintyre@menlopark.org>; Flegel, Nicolas A. <naf@jsmf.com>; Subrah Iyar <Subrah.Iyar@webex.com>; Scott Sandell <ssandell@nea.com>
**Cc:** dwa@agzlaw.com
**Subject:** Re: Notice re Menlo Park City Council Decision

Dear Menlo Park City authorities,

Your failure to respond in a timely manner to my film permit application belies your repeat asseverations of respecting my Constitutional rights to free speech. I look forward to a judicial hearing in the matter of your ongoing collusion in a corporate coverup of child rape and sponsorship of its fugitive perpetrator. As a resident of Hollywood, I submit that it's high time for Silicon Valley to host a scandal that would make our current sexual harassment debacle look like a game of tiddlywinks.

https://groups.google.com/forum/#!search/erin$20zhu$20sexual$20abuse
https://youtu.be/QgmWMGG3qgE

—
Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com .
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Fri, Oct 6, 2017 at 3:01 AM, Michael Zeleny <michael@massmeans.com> wrote:

Dear Mr Toews,

Attached please find a completed application for a film permit.

MP001280

Starting on 30 October 2017 and continuing through 27 December 2017, I shall maintain a portable multimedia presentation illustrating ongoing corporate support of New Enterprise Associates (NEA) for incestuous child rapist Min Zhu. I shall be present in the vicinity of 2825 Sand Hill Road from 08:00 till 18:00 every weekday, served by a support staff of one personal assistant and one cinematographer. My props are to include fully operational, exposed and unloaded military grade firearms and loaded ammunition feeding devices therefor, including without limitation, a 9mm Para semiautomatic SIG P210 pistol, and a 7.65x51mm NATO semiautomatic LRB M25 rifle and tripod-mounted belt-fed semiautomatic Browning M1919a4, in full compliance with all applicable laws. A 55" portable media display powered by a portable gas generator will display videos featuring explicit representations of sexual violence committed by NEA's publicly disgraced protégé. A sample image can be found at http://larvatus.livejournal.com/371973.html. Two tripod-mounted cameras will be placed on either side of Sand Hill Road, focusing on public reactions to my display. One of them will be attended by a cinematographer. I will operate the other one remotely. All their footage, complemented by output of body cams, will be live streamed on the Internet.

A site map can be found at https://www.google.com/maps/@37.4197308,-122.2137188,17z/. All placements of equipment and personnel will be determined to avoid interference with automotive and foot traffic, in consultation with the Menlo Park City authorities. All media aspects of this event will be subject to content-neutral regulation negotiated with Menlo Park City authorities. My fundamental rights under the First and Second Amendments of the Constitution of the United States are reserved and non-negotiable.

Please note that my standing and circumstances require accommodations not anticipated by your application format and requirements. As an individual engaged in a non-profit endeavor of public interest, I hereby apply for a waiver of all applicable fees. I will furnish all requisite liability waivers and procure the appropriate insurance coverage upon your conditional approval of this application.

Please address all legal inquiries and requests to David W. Affeld, Affeld Grivakes LLP, 2049 Century Park East, Suite 2460, Los Angeles, CA 90067, voice:310.979.8700; fax:310.979.8701.

—

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 |
fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Thu, Sep 28, 2017 at 1:00 PM, Toews, Ivan J <IJToews@menlopark.org> wrote:

Dear Mr. Zeleny,

Please see attached film permit application and film permit conditions. Application can be submitted via email. Thank you.

Ivan Toews- Land Development Engineer
City of Menlo Park |
701 Laurel St. | Menlo Park, CA 94025
Direct (650)-330-6712 | | Fax 650-327-5497
ijtoews@menlopark.org

MP001281



**From:** Nicolas A. Flegel [mailto:naf@jsmf.com]
**Sent:** Wednesday, September 27, 2017 11:35 AM
**To:** michael@massmeans.com
**Cc:** Harada, Jelena V <jvharada@menlopark.org>; McClure, William <wlm@jsmf.com>; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; dwa@agzlaw.com; Toews, Ivan J <IJToews@menlopark.org>
**Subject:** RE: Notice re Menlo Park City Council Decision

Dear Mr. Zeleny,

Thank you for your email of September 7, 2017, requesting that the City of Menlo Park reconsider your special events permit application as a film permit application. The City has asked that I respond to your email.  The City has a film permit application process, and therefore you should submit a film permit application to staff. This is a different permit than a special event permit, so you will need to follow/comply with the film permit requirements.   I am copying Ivan Toews of the Public Works Department, who handles film permits, and am requesting Ivan by this email to forward you the necessary application and information.  Ivan's contact information is:

> Ivan Toews- Land Development Engineer
> City of Menlo Park |
> 701 Laurel St. | Menlo Park, CA 94025
> Direct (650)-330-6712 | | Fax 650-327-5497
> IJToews@menlopark.org

Thank you for your attention to this matter.

Nick Flegel
(650) 324-9300

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Thursday, September 7, 2017 2:28 AM
**To:** Harada, Jelena V <jvharada@menlopark.org>
**Cc:** William L. McClure <wlm@jsmf.com>; grubens@adcl.com; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; David W. Affeld <dwa@agzlaw.com>
**Subject:** Re: Notice re Menlo Park City Council Decision

Thank you for your email. In keeping with the substance of our exchanges in last week's hearing, and in the mutual interests of efficiency, I would like the City of Menlo Park to

reconsider my special event permit mitapplication as requesting a film permit.

The salient points of my request are as follows:

- The videography is to take place alongside 2855 Sand Hill Road, Menlo Park, CA 94025, and continue indefinitely, Monday through Friday, from 8 a.m. to 7 p.m.;
- All participants, cameras, and props will be placed so as to avoid any interference with automotive and foot traffic;
- The City will recognize all participants in the film production that are so authorized in advance by myself, as exempt from sanctions for carrying a concealed firearm or openly carrying an unloaded handgun or a long gun under California Penal Code Sections 25400 (a) (2), 26350 (a) (1), and 26400 (a), pursuant to the relevant exemptions under P.C. Sections 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event.

I remain open to reasonable time, place, and manner regulations.

Please let me know how to proceed in order to ensure an expeditious determination from the City authorities.



Michael@massmeans.com | Zeleny@post.harvard.edu | 7576 Willow Glen Road, Los Angeles, CA 90046 | voice:323.363.1860 | fax:323.410.2373 http://larvatus.livejournal.com | "All of old. Nothing else ever. Ever tried. Ever failed. No matter. Try again. Fail again. Fail better." —— Samuel Beckett


On Sep 5, 2017, at 10:14 PM, Harada, Jelena V <jvharada@menlopark.org> wrote:

Mr. Zeleny,

Attached is correspondence informing you of the Menlo Park City Council's decision made at the City Council special meeting of August 29, 2017, related to your Appeal of Denial of Special Event Permit Application. This item is also being sent to you via US mail.


Sincerely,

**Jelena Harada**
Deputy City Clerk
City of Menlo Park
701 Laurel St., Menlo Park, CA 94025
650-330-6612 | jvharada@menlopark.org
<image001.jpg>

<Zeleny Letter - city council action.pdf>



Ex. No. 24
Plf.☐ Def.☐ Pet.☐ Rsp.☐
Wit: Zeleny
Date: 3-18-19
Judy Brennan, CSR #5138

From:      Michael Zeleny
To:        Toews, Ivan J
Cc:        Harada, Jelena V; McClure, William; Bertini, David C; McIntyre, Alex D; Flegel, Nicolas A.; Subrah'Ivan; Scott Sandell; dwa@apzlaw.com
Subject:   Re: Notice re Menlo Park City Council Decision
Date:      Thursday, November 09, 2017 4:02:02 PM
Attachments: image001.png
            2825 Sand Hill Rd – Google Maps.pdf

Dear Mr Toews,

I answer your questions in order received:

1.    Daily times for setting up and tearing down my equipment will not exceed one hour each. Given that Menlo Park City film permits require filming to occur between 08:00 and 18:00, I am planning to start no earlier than 07:00 and finish no later than 19:00.

2.    My gas generator is a Yamaha EF2800I inverter generator, factory rated between 65 dBA and 68 dBA at ¼ load.

3.    Written notice to business within 200 feet of the film location will read approximately as follows: "Please take note that on the dates identified below, I shall maintain a portable multimedia presentation illustrating ongoing corporate support of New Enterprise Associates (NEA) for incestuous child rapist Min Zhu. I shall be present in the vicinity of 2825 Sand Hill Road from 08:00 till 18:00 every weekday, served by a support staff of one personal assistant and one cinematographer. My props are to include fully operational, exposed and unloaded military grade firearms and loaded ammunition feeding devices therefor, including without limitation, a 9mm Para semiautomatic SIG P210 pistol, and a 7.65x51mm NATO semiautomatic LRB M25 rifle and tripod-mounted belt-fed semiautomatic Browning M1919a4, in full compliance with all applicable laws. A 55" portable media display powered by a portable gas generator will display videos featuring explicit representations of sexual violence committed by NEA's publicly disgraced protégé. A sample image can be found at http://larvatus.livejournal.com/371973.html. Two tripod-mounted cameras focusing on public reactions to my display will be placed on the side of Sand Hill Road, without obstructing any pedestrian or automotive traffic. One of them will be attended by a cinematographer. I will operate the other one remotely. All their raw footage, complemented by output of body cams, will be live streamed on the Internet. Please refrain from any public displays that you do not wish to be broadcast worldwide."

4.    As to the site plan, please see the attached Google Maps photo. Please take note of the fact that my presence and equipment will be confined to the location shown in the photo and used on my last appearance in 2012, as then judged by the City not to require any special traffic control efforts or law enforcement presence or oversight. The site will accommodate me displaying the aforementioned firearms and a 55" SunBrite outdoor TV, mounted in a Gator G-Tour E-Lift, and powered by a Yamaha EF2800I inverter generator, while operating a Leica SL camera fitted with a Summilux-SL 50mm f/1.4 prime lens, mounted statically on a Gitzo Ocean Traveler 4-Section carbon fiber tripod with a ballhead. My cinematographer will operate nearby a RED SCARLET camera fitted interchangeably with either a Canon EF 70-200mm f/2.8L IS II USM telephoto zoom lens or a Canon EF 24-70mm f/2.8L II USM Lens, and mounted on a Sachtler D-12 Speed Balance Hot Pod tripod. We do not intend to use any adjacent parking locations.

5.    As to the traffic control plan, since our proposed filming location does not encroach on any sidewalks or roads, there will be no need to divert pedestrians or automobiles around it.

6.    As to the licensing and fees, I will entertain the option of applying and paying for a one-time Business License upon your conditional approval of my filming project.

However, my project is not meant as any kind of business, and should not require this kind of licensing. Additionally, the minimal footprint of my project will not burden the City by imposing any special administrative costs. Accordingly, I am requesting a license and fee waiver owing to the non-commercial, non-profit, and *pro bono publico* nature of my project, designed to rid your community of scurrilous business practices.

7.   As to my standing and circumstances requiring accommodations not anticipated by your application format and requirements, the reference is to the non-commercial, non-profit, and *pro bono* purpose and zero associated administrative cost considerations recited in the previous response.

8.   I will provide the City with a Certificate of Liability Insurance on the terms acceptable to its Risk Management office, as soon as it conditionally approves my application.

9.   I will provide a complete and signed application as soon as the City indicates its conditional approval of the schedule and parameters of my project.

10.  I will submit all permitting payments as soon as the City and I agree on the fees applicable in this matter, or their waiver pursuant to the considerations recited above.

On a general note, based on our previous experience in this matter, I do not expect my film permit application to be approved by the City of Menlo Park regardless of the scope and extent of my accommodations for its demands. Accordingly, this application is meant to elicit the terms and pretexts of the City's denial of my rights under the First Amendment, to be contested in an appropriate judicial venue. In the unlikely alternative of the City abandoning its ongoing collusion with corporate sponsorship of incestuous child rapist Min Zhu by New Enterprise Associates, I shall be happy to pay any reasonable fees due in this matter.

Consider taking the high road. If Hollywood can dump attempted child rapist Kevin Spacey, surely Silicon Valley can dump accomplished child rapist Min Zhu.

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com
7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 |
fax:323.410.2373
**Wronged by the high and mighty? Cut them down to size with legally safe and
ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Mon, Nov 6, 2017 at 9:49 AM, Toews, Ivan J <IJToews@menlopark.org> wrote:

Mr. Zeleny,

Staff has reviewed your permit application.  Due to the proposed length of the time to film and location of filming on a busy arterial roadway, this is an unusual permit to process. Thank you in advance for your patience and cooperation.  In order for the staff to process your film permit application, we need the following additional information:

1.  Film dates: Per your application you plan to film for over 55 days.

       a.  Submit times for each day regarding set-up and tear down the equipment.  City film permits require filming to occur between 8:00 a.m. and 6:00 p.m.

       b.  Note: proposed film times are subject to review by staff based upon scope of work required.

2.  Gas generator: please provide the make and model of the gas generator

       a.  Submit decibel reading for the equipment to ensure it does not exceed City ordinance for noise level.

3.  Written notice to business within 200 feet of the film location will need to be notified

       a.  Provide a draft written notice letter that you plan to mail to surrounding businesses for staff's review

4.  Site plan: the permit is unclear as to the filming location or locations you intend to utilize.  Please provide a detailed site plan to show the exact location of equipment and where you plan to stage your presentation/ equipment

       a.  Proposed parking location for your equipment and crew vehicles

       b.  List all proposed equipment you intend to utilize for the production and location where you intend to place it

5.  Traffic control plan: provide a detailed traffic control on how you plan to divert pedestrians around your film location so that staff can determine if police officers must be present for traffic control, and so staff can determine the feasibility and cost of staff time. Please refer to the Film Production worksheet previously provided to you which sets forth the required information necessary to process the application.

6.  Business license: Permittee shall apply for a one-time Business License and pay, with a valid check, money order, credit card or cashier's check. See Guide to Annual Business License Fee Calculation for the fee schedule.

       a.  Fee waiver:  Please provide details why a fee waiver is necessary.

7.  The application refers to "accommodations not anticipated by your application format."  Please provide more detail regarding what accommodations you are seeking for your production.

8.  Liability Insurance: Please provide  the City a Certificate of Liability Insurance acceptable to its Risk Management office showing combined single limit coverage for bodily injury and property damage, not less than $1 million; which is to include the City and it's officials and employees and agents named as additional insured in the policy.

9.  Please provide a complete and signed application

10. Fees: Submit a film permitting payment of $150.00 in addition to the daily permit fees of $50 per day for short subject films.

MP001292

**Ivan Toews- Land Development Engineer**

City of Menlo Park |

701 Laurel St. | Menlo Park, CA 94025

Direct (650)-330-6712 | | Fax 650-327-5497

iltoews@menlopark.org



MENLO PARK

**From:** Michael Zeleny [mailto:michael@massmeans.com]
**Sent:** Friday, November 03, 2017 1:41 AM
**To:** Toews, Ivan J <IJToews@menlopark.org>; Harada, Jelena V <jvharada@menlopark.org>; McClure, William <wlm@jsmf.com>; Bertini, David C <dcbertini@menlopark.org>; McIntyre, Alex D <admcintyre@menlopark.org>; Flegel, Nicolas A. <naf@jsmf.com>; Subrah Iyar <Subrah.Iyar@webex.com>; Scott Sandell <ssandell@nea.com>
**Cc:** dwa@agzlaw.com

**Subject:** Re: Notice re Menlo Park City Council Decision

Dear Menlo Park City authorities,

Your failure to respond in a timely manner to my film permit application belies your repeat asseverations of respecting my Constitutional rights to free speech. I look forward to a judicial hearing in the matter of your ongoing collusion in a corporate coverup of child rape and sponsorship of its fugitive perpetrator. As a resident of Hollywood, I submit that it's high time for Silicon Valley to host a scandal that would make our current sexual harassment debacle look like a game of tiddlywinks.

https://groups.google.com/forum/#!search/erin$20zhu$20sexual$20abuse
https://youtu.be/QgmWMGG3qgE

MP001293

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com

7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373

**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Fri, Oct 6, 2017 at 3:01 AM, Michael Zeleny <michael@massmeans.com> wrote:

Dear Mr Toews,

Attached please find a completed application for a film permit.

Starting on 30 October 2017 and continuing through 27 December 2017, I shall maintain a portable multimedia presentation illustrating ongoing corporate support of New Enterprise Associates (NEA) for incestuous child rapist Min Zhu. I shall be present in the vicinity of 2825 Sand Hill Road from 08:00 till 18:00 every weekday, served by a support staff of one personal assistant and one cinematographer. My props are to include fully operational, exposed and unloaded military grade firearms and loaded ammunition feeding devices therefor, including without limitation, a 9mm Para semiautomatic SIG P210 pistol, and a 7.65x51mm NATO semiautomatic LRB M25 rifle and tripod-mounted belt-fed semiautomatic Browning M1919a4, in full compliance with all applicable laws. A 55" portable media display powered by a portable gas generator will display videos featuring explicit representations of sexual violence committed by NEA's publicly disgraced protégé. A sample image can be found at http://larvatus.livejournal.com/371973.html. Two tripod-mounted cameras will be placed on either side of Sand Hill Road, focusing on public reactions to my display. One of them will be attended by a cinematographer. I will operate the other one remotely. All their footage, complemented by output of body cams, will be live streamed on the Internet.

A site map can be found at https://www.google.com/maps/@37.4197308,-122.2137188.17z/. All placements of equipment and personnel will be determined to avoid interference with automotive and foot traffic, in consultation with the Menlo Park City authorities. All media aspects of this event will be subject to content-neutral regulation negotiated with Menlo Park City authorities. My fundamental rights under the First and Second Amendments of the Constitution of the United States are reserved and non-negotiable.

Please note that my standing and circumstances require accommodations not anticipated by your application format and requirements. As an individual engaged in a non-profit endeavor of public interest, I hereby apply for a waiver of all applicable fees. I will furnish all requisite liability waivers and procure the appropriate insurance coverage upon

your conditional approval of this application.

Please address all legal inquiries and requests to David W. Affeld, Affeld Grivakes LLP, 2049 Century Park East, Suite 2460, Los Angeles, CA 90067, voice:310.979.8700, fax:310.979.8701.

——

Michael@massmeans.com Zeleny@post.harvard.edu | larvatus.livejournal.com | subrah.com

7576 Willow Glen Rd, Los Angeles, CA 90046, U.S.A. | voice:323.363.1860 | fax:323.410.2373

**Wronged by the high and mighty? Cut them down to size with legally safe and ethically sound degradation of unworthy moguls and scrofulous celebrities.**

On Thu, Sep 28, 2017 at 1:00 PM, Toews, Ivan J <IJToews@menlopark.org> wrote:

Dear Mr. Zeleny,

Please see attached film permit application and film permit conditions. Application can be submitted via email. Thank you.

Ivan Toews- Land Development Engineer

City of Menlo Park |

701 Laurel St. | Menlo Park, CA 94025

Direct (650)-330-6712 | | Fax 650-327-5497

ijtoews@menlopark.org



MENLO PARK

**From:** Nicolas A. Flegel [mailto:naf@jsmf.com]
**Sent:** Wednesday, September 27, 2017 11:35 AM
**To:** michael@massmeans.com
**Cc:** Harada, Jelena V <jvharada@menlopark.org>; McClure, William <wlm@jsmf.com>; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; dwa@agzlaw.com; Toews, Ivan J <IJToews@menlopark.org>
**Subject:** RE: Notice re Menlo Park City Council Decision

Dear Mr. Zeleny,

Thank you for your email of September 7, 2017, requesting that the City of Menlo Park reconsider your special events permit application as a film permit application. The City has asked that I respond to your email.   The City has a film permit application process, and therefore you should submit a film permit application to staff.  This is a different permit than a special event permit, so you will need to follow/comply with the film permit requirements. I am copying Ivan Toews of the Public Works Department, who handles film permits, and am requesting Ivan by this email to forward you the necessary application and information. Ivan's contact information is:

Ivan Toews- Land Development Engineer

City of Menlo Park |

701 Laurel St. | Menlo Park, CA 94025

Direct (650)-330-6712 | | Fax 650-327-5497

ijtoews@menlopark.org

Thank you for your attention to this matter.

Nick Flegel

(650) 324-9300

**From:** Michael Zeleny [mailto:michael@massmeans.com]

MP001296

**Sent:** Thursday, September 7, 2017 2:28 AM
**To:** Harada, Jelena V <jvharada@menlopark.org>
**Cc:** William L. McClure <wlm@jsmf.com>; grubens@adel.com; McIntyre, Alex D <admcintyre@menlopark.org>; Bertini, David C <dcbertini@menlopark.org>; David W. Affeld <dwa@agzlaw.com>
**Subject:** Re: Notice re Menlo Park City Council Decision

Thank you for your email. In keeping with the substance of our exchanges in last week's hearing, and in the mutual interests of efficiency, I would like the City of Menlo Park to reconsider my special event permit mitapplication as requesting a film permit.

The salient points of my request are as follows:

- The videography is to take place alongside 2855 Sand Hill Road, Menlo Park, CA 94025, and continue indefinitely, Monday through Friday, from 8 a.m. to 7 p.m.;
- All participants, cameras, and props will be placed so as to avoid any interference with automotive and foot traffic;
- The City will recognize all participants in the film production that are so authorized in advance by myself, as exempt from sanctions for carrying a concealed firearm or openly carrying an unloaded handgun or a long gun under California Penal Code Sections 25400 (a) (2), 26350 (a) (1), and 26400 (a), pursuant to the relevant exemptions under P.C. Sections 25510, 26375, and 26405, as applicable to authorized participants in a motion picture, television or video production, or entertainment event.

I remain open to reasonable time, place, and manner regulations.

Please let me know how to proceed in order to ensure an expeditious determination from the City authorities.

—

Michael@massmeans.com | Zeleny@post.harvard.edu | 7576 Willow Glen Road, Los Angeles, CA 90046 | voice:323.363.1860 | fax:323.410.2373

http://larvatus.livejournal.com | "All of old. Nothing else ever. Ever tried. Ever failed. No matter. Try again. Fail again. Fail better." — Samuel Beckett

On Sep 5, 2017, at 10:14 PM, Harada, Jelena V <jvharada@menlopark.org> wrote:

Mr. Zeleny,

Attached is correspondence informing you of the Menlo Park City Council's decision made at the City Council special meeting of August 29, 2017, related to your Appeal of Denial of Special Event Permit Application. This item is also being sent to you via US mail.

Sincerely,

**Jelena Harada**

Deputy City Clerk

City of Menlo Park

701 Laurel St., Menlo Park, CA 94025

650-330-6612 | jvharada@menlopark.org

<image001.jpg>

<Zeleny Letter - city council action.pdf>

2751 Sand Hill Rd - Google Maps                    https://www.google.com/maps/place/2825+Sand+Hill+Rd,+Men...

**Google** Maps    2751 Sand Hill Rd



Image capture: Jul 2016    © 2017 Google

Menlo Park, California

Google, Inc.

Street View - Jul 2016

9 Jan 2017, 3:34 PM

MP001299



MP001300