1    XAVIER BECERRA
     Attorney General of California
2    ANTHONY R. HAKL
     Supervising Deputy Attorney General
3    JOHN W. KILLEEN
     Deputy General
4    State Bar No. 258395
       1300 I Street, Suite 125
5      P.O. Box 944255
       Sacramento, CA 94244-2550
6      Telephone:  (916) 210-6045
       Fax:  (916) 324-8835
7      E-mail:  John.Killeen@doj.ca.gov
     *Attorneys for Defendant Xavier Becerra*

8

9                    IN THE UNITED STATES DISTRICT COURT

10                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13

| **MICHAEL ZELENY, an individual,** | 3:17-cv-07357 RS (NC) |
|---|---|
| Plaintiff, | **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY CALIFORNIA ATTORNEY GENERAL XAVIER BECERRA** |
| v. | |
| **GAVIN NEWSOM, an individual, in his official capacity; XAVIER BECERRA, an individual, in his official capacity; CITY OF MENLO PARK, a municipal corporation; and DAVE BERTINI, in his official capacity,** | Date:        February 25, 2021<br>Time:        1:30 p.m.<br>Dept:        Courtroom 3, 17th Floor<br>Judge:       The Honorable Richard G. Seeborg |
| Defendants. | Trial Date:  None set<br>Action Filed: 12/28/2017 |

22

23

24

25

26

27

28

Under Federal Rule of Evidence 201, Defendant Xavier Becerra, in his official capacity as Attorney General of California ("Defendant") respectfully requests that the Court take judicial notice of the following documents in support of Defendant's motion for summary judgment:

1.      The final, chaptered version of California Assembly Bill No. 144 (2011-2012), and the legislative history of that bill.  A true and correct copy of this document is attached hereto as Exhibit 1.  Exhibit 1 is a public record of the California Legislature that was accessed on September 6, 2017, from the official California Legislative Information website (http://leginfo.legislature.ca.gov).

2.      The final, chaptered version of California Assembly Bill No. 1527 (2011-2012), and the legislative history of that bill.  A true and correct copy of this document is attached hereto as Exhibit 2.  Exhibit 2 is a public record of the California Legislature that was accessed on September 6, 2017, from the official California Legislative Information website (http://leginfo.legislature.ca.gov).

The Court may take judicial notice of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  A court shall take judicial notice of such a fact if requested by a party and supplied with the necessary information.  Fed. R. Evid. 201(d).

"A trial court may presume that public records are authentic and trustworthy." *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999) (taking judicial notice of agency report). And "legislative history is properly a subject of judicial notice." *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012); *Chaker v. Crogan*, 428 F.3d 1215, 1223 n.8 (9th Cir. 2005) (discussing legislative history of California statute).  The accuracy of all these public records cannot reasonably be questioned, and judicial notice of all these records is therefore appropriate.
/ / /

/ / /

1

1   Dated:  January 21, 2020                    Respectfully Submitted,

2                                               XAVIER BECERRA
                                                Attorney General of California
3                                               BENJAMIN M. GLICKMAN
                                                Supervising Deputy Attorney General

4                                               /s/ John W. Killeen
                                                JOHN W. KILLEEN
5                                               Deputy Attorney General
                                                Attorneys for Defendant Xavier Becerra
6

7

8   SA2018100198
    34757880.docx

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

RJN Ex. 1 -001

Case 2:16-cv-06164-DMG-AGR Document 45-1 Filed 09/01/17 Page 5 of 136 Page ID #:850

Bill Text - AB-144 Firearms.                                                                                        Page 1 of 11



**AB-144 Firearms.** (2011-2012)



SHARE THIS:

## Assembly Bill No. 144

## CHAPTER 725

An act to amend Sections 7574.14 and 7582.2 of the Business and Professions Code, and to amend Sections 16520, 16750, 16850, 25595, and 25605 of, to add Sections 626.92, 16950, 17040, 17295, 17512, and 25590 to, and to add Chapter 6 (commencing with Section 26350) to Division 5 of Title 4 of Part 6 of, the Penal Code, relating to firearms.

[ Approved by Governor  October 09, 2011. Filed with Secretary of State October 09, 2011. ]

### LEGISLATIVE COUNSEL'S DIGEST

AB 144, Portantino. Firearms.

Existing law, subject to certain exceptions, makes it an offense to carry a concealed handgun on the person or in a vehicle, as specified. Existing law provides that firearms carried openly in belt holsters are not concealed within the meaning of those provisions.

This bill would establish an exemption to the offense for transportation of a firearm between certain areas where the firearm may be carried concealed, or loaded, or openly carried unloaded, as specified.

Existing law prohibits, with exceptions, a person from possessing a firearm in a place that the person knows or reasonably should know is a school zone, as defined.

This bill would additionally exempt a security guard authorized to openly carry an unloaded handgun and an honorably retired peace officer authorized to openly carry an unloaded handgun from that prohibition.

Existing law, subject to certain exceptions, makes it an offense to carry a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

The bill would, subject to exceptions, make it a misdemeanor to openly carry an unloaded handgun on the person or openly and exposed in a motor vehicle in specified public areas and would make it a misdemeanor with specified penalties to openly carry an exposed handgun in a public place or public street, as specified, if the person at the same time possesses ammunition capable of being discharged from the handgun, and the person is not in lawful possession of the handgun, as specified.

Existing law makes it a misdemeanor for any driver or owner of a motor vehicle to allow a person to bring a loaded firearm into the motor vehicle in a public place, as specified.

This bill would expand the scope of that crime to include allowing a person to bring an open and exposed unloaded handgun into the vehicle, as specified.

By creating a new offense, and expanding the scope of existing crimes, this bill would impose a state-mandated local program.

**RJN Ex. 1 -002**

The bill would make conforming and nonsubstantive technical changes.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority    Appropriation: no    Fiscal Committee: yes    Local Program: yes

THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** Section 7574.14 of the Business and Professions Code is amended to read:

**7574.14.** This chapter shall not apply to the following:

(a) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in any calendar month.

(b) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(c) A charitable philanthropic society or association incorporated under the laws of this state that is organized and duly maintained for the public good and not for private profit.

(d) Patrol special police officers appointed by the police commission of any city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(e) An attorney at law in performing his or her duties as an attorney at law.

(f) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(g) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them.

(h) Any bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of Currency of the United States.

(i) A person engaged solely in the business of securing information about persons or property from public records.

(j) A peace officer of this state or a political subdivision thereof while the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt such a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

(k) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where the employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may not carry an unloaded and exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Sections 25450 to 25475, inclusive, of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in

**RJN Ex. 1 -003**

subdivision (d) of Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(l) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

(m) Any savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(n) Any secured creditor engaged in the repossession of the creditor's collateral and any lessor engaged in the repossession of leased property in which it claims an interest.

(o) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

(p) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses any deadly weapon, as defined in subdivision (a), in the performance of his or her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

(q) An armored contract carrier operating armored vehicles pursuant to the authority of the Department of the California Highway Patrol or the Public Utilities Commission, or an armored vehicle guard employed by an armored contract carrier.

SEC. 2. Section 7582.2 of the Business and Professions Code is amended to read:

7582.2. This chapter does not apply to the following:

(a) A person who does not meet the requirements to be a proprietary private security officer, as defined in Section 7574.1, and is employed exclusively and regularly by any employer who does not provide contract security services for other entities or persons, in connection with the affairs of the employer only and where there exists an employer-employee relationship if that person at no time carries or uses any deadly weapon in the performance of his or her duties. For purposes of this subdivision, "deadly weapon" is defined to include any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, any dirk, dagger, pistol, revolver, or any other firearm, any knife having a blade longer than five inches, any razor with an unguarded blade and any metal pipe or bar used or intended to be used as a club.

(b) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in any calendar month.

(c) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(d) A charitable philanthropic society or association duly incorporated under the laws of this state that is organized and maintained for the public good and not for private profit.

(e) Patrol special police officers appointed by the police commission of any city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

RJN Ex. 1 -004

(f) An attorney at law in performing his or her duties as an attorney at law.

(g) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(h) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them.

(i) Any bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of Currency of the United States.

(j) A person engaged solely in the business of securing information about persons or property from public records.

(k) A peace officer of this state or a political subdivision thereof while the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

(l) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where the employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may not carry an unloaded and exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4 of Part 6 of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in subdivision (d) of Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(m) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

(n) Any savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(o) Any secured creditor engaged in the repossession of the creditor's collateral and any lessor engaged in the repossession of leased property in which it claims an interest.

(p) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

(q) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses any deadly weapon, as defined in subdivision (a), in the performance of his or her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

(r) The changes made to this section by the act adding this subdivision during the 2005-06 Regular Session of the Legislature shall apply as follows:

RJN Ex. 1 -005

Case 2:16-cv-06164-JAK-AS7-DOC Document 45-16 Filed 09/11/17 Page 59 of 136 Page ID #:854

Bill Text - AB-144 Firearms.                                                    Page 5 of 11

(1) On and after July 1, 2006, to a person hired as a security officer on and after January 1, 2006.

(2) On and after January 1, 2007, to a person hired as a security officer before January 1, 2006.

SEC. 3. Section 626.92 is added to the Penal Code, to read:

626.92. Section 626.9 does not apply to or affect any of the following:

(a) A security guard authorized to openly carry an unloaded handgun pursuant to Chapter 6 (commencing with Section 26350) of Division 5 of Title 4 of Part 6.

(b) An honorably retired peace officer authorized to openly carry an unloaded handgun pursuant to Section 26361.

SEC. 4. Section 16520 of the Penal Code is amended to read:

16520. (a) As used in this part, "firearm" means any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion.

(b) As used in the following provisions, "firearm" includes the frame or receiver of the weapon:

(1) Section 16550.

(2) Section 16730.

(3) Section 16960.

(4) Section 16990.

(5) Section 17070.

(6) Section 17310.

(7) Sections 26500 to 26588, inclusive.

(8) Sections 26600 to 27140, inclusive.

(9) Sections 27400 to 28000, inclusive.

(10) Section 28100.

(11) Sections 28400 to 28415, inclusive.

(12) Sections 29010 to 29150, inclusive.

(13) Sections 29610 to 29750, inclusive.

(14) Sections 29800 to 29905, inclusive.

(15) Sections 30150 to 30165, inclusive.

(16) Section 31615.

(17) Sections 31705 to 31830, inclusive.

(18) Sections 34355 to 34370, inclusive.

(19) Sections 8100, 8101, and 8103 of the Welfare and Institutions Code.

(c) As used in the following provisions, "firearm" also includes any rocket, rocket propelled projectile launcher, or similar device containing any explosive or incendiary material whether or not the device is designed for emergency or distress signaling purposes:

(1) Section 16750.

(2) Subdivision (b) of Section 16840.

(3) Section 25400.

(4) Sections 25850 to 26025, inclusive.

RJN Ex. 1 -006

Case 2:16-cv-07357-RGK Document 45-1 Filed 10/11/21 Page 10 of 136 Page ID #:855

Bill Text - AB-144 Firearms.                                              Page 6 of 11

(5) Subdivisions (a), (b), and (c) of Section 26030

(6) Sections 26035 to 26055, inclusive.

(d) As used in the following provisions, "firearm" does not include an unloaded antique firearm:

(1) Subdivisions (a) and (c) of Section 16730.

(2) Section 16550.

(3) Section 16960.

(4) Section 17310.

(5) Chapter 6 (commencing with Section 26350) of Division 5 of Title 4.

(6) Sections 26500 to 26588, inclusive.

(7) Sections 26700 to 26915, inclusive.

(8) Section 27510.

(9) Section 27530.

(10) Section 27540.

(11) Section 27545.

(12) Sections 27555 to 27570, inclusive.

(13) Sections 29010 to 29150, inclusive.

(e) As used in Sections 34005 and 34010, "firearm" does not include a destructive device.

(f) As used in Sections 17280 and 24680, "firearm" has the same meaning as in Section 922 of Title 18 of the United States Code.

(g) As used in Sections 29010 to 29150, inclusive, "firearm" includes the unfinished frame or receiver of a weapon that can be readily converted to the functional condition of a finished frame or receiver.

SEC. 5. Section 16750 of the Penal Code is amended to read:

16750. (a) As used in Section 25400, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully owns the firearm or has the permission of the lawful owner or a person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

(b) As used in Article 2 (commencing with Section 25850), Article 3 (commencing with Section 25900), and Article 4 (commencing with Section 26000) of Chapter 3 of Division 5 of Title 4, and Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully acquired and lawfully owns the firearm or has the permission of the lawful owner or person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

SEC. 6. Section 16850 of the Penal Code is amended to read:

16850. As used in Sections 17740, 23925, 25105, 25205, and 25610, in Article 3 (commencing with Section 25505) of Chapter 2 of Division 5 of Title 4, and in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, "locked container" means a secure container that is fully enclosed and locked by a padlock, keylock, combination lock, or similar locking device. The term "locked container" does not include the utility or glove compartment of a motor vehicle.

SEC. 7. Section 16950 is added to the Penal Code, to read:

RJN Ex. 1 -007

**16950.** As used in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, a handgun shall be deemed to be carried openly or exposed if the handgun is not carried concealed within the meaning of Section 25400.

**SEC. 8.** Section 17040 is added to the Penal Code, to read:

**17040.** As used in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, "public place" has the same meaning as in Section 25850.

**SEC. 9.** Section 17295 is added to the Penal Code, to read:

**17295.** For purposes of Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, a handgun shall be deemed "unloaded" if it is not "loaded" within the meaning of subdivision (b) of Section 16840.

**SEC. 10.** Section 17512 is added to the Penal Code, to read:

**17512.** It is a misdemeanor for a driver of any motor vehicle or the owner of any motor vehicle, whether or not the owner of the vehicle is occupying the vehicle, to knowingly permit any other person to carry into or bring into the vehicle a firearm in violation of Section 26350.

**SEC. 11.** Section 25590 is added to the Penal Code, to read:

**25590.** Section 25400 does not apply to, or affect, the transportation of a firearm by a person if done directly between any of the places set forth below:

(a) A place where the person may carry that firearm pursuant to an exemption from the prohibition set forth in subdivision (a) of Section 25400.

(b) A place where that person may carry that firearm pursuant to an exemption from the prohibition set forth in subdivision (a) of Section 25850, or a place where the prohibition set forth in subdivision (a) of Section 25850 does not apply.

(c) A place where that person may carry a firearm pursuant to an exemption from the prohibition set forth in subdivision (a) of Section 26350, or a place where the prohibition set forth in subdivision (a) of Section 26350 does not apply.

**SEC. 12.** Section 25595 of the Penal Code is amended to read:

**25595.** This article does not prohibit or limit the otherwise lawful carrying or transportation of any handgun in accordance with the provisions listed in Section 16580.

**SEC. 13.** Section 25605 of the Penal Code is amended to read:

**25605.** (a) Section 25400 and Chapter 6 (commencing with Section 26350) of Division 5 shall not apply to or affect any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, who carries, either openly or concealed, anywhere within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident, any handgun.

(b) No permit or license to purchase, own, possess, keep, or carry, either openly or concealed, shall be required of any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, to purchase, own, possess, keep, or carry, either openly or concealed, a handgun within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident.

(c) Nothing in this section shall be construed as affecting the application of Sections 25850 to 26055, inclusive.

**SEC. 14.** Chapter 6 (commencing with Section 26350) is added to Division 5 of Title 4 of Part 6 of the Penal Code, to read:

RJN Ex. 1 -008

Case 2:16-cv-03164-JAK-AS Document 45-1 Filed 10/11/21 Page 12 of 136 Page ID #:857

Bill Text - AB-144 Firearms.                                                Page 8 of 11

CHAPTER 6. Openly Carrying an Unloaded Handgun
Article 1. Crime of Openly Carrying an Unloaded Handgun

**26350.** (a) (1) A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following:

(A) A public place or public street in an incorporated city or city and county.

(B) A public street in a prohibited area of an unincorporated area of a county or city and county.

(C) A public place in a prohibited area of a county or city and county.

(2) A person is guilty of openly carrying an unloaded handgun when that person carries an exposed and unloaded handgun inside or on a vehicle, whether or not on his or her person, while in or on any of the following:

(A) A public place or public street in an incorporated city or city and county.

(B) A public street in a prohibited area of an unincorporated area of a county or city and county.

(C) A public place in a prohibited area of a county or city and county.

(b) (1) Except as specified in paragraph (2), a violation of this section is a misdemeanor.

(2) A violation of subparagraph (A) of paragraph (1) of subdivision (a) is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if both of the following conditions exist:

(A) The handgun and unexpended ammunition capable of being discharged from that handgun are in the immediate possession of that person.

(B) The person is not in lawful possession of that handgun.

(c) (1) Nothing in this section shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a penalty greater than is set forth in this section.

(2) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

(d) Notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a distinct and separate offense under this section.

**Article 2. Exemptions**

**26361.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any peace officer or any honorably retired peace officer if that officer may carry a concealed firearm pursuant to Article 2 (commencing with Section 25450) of Chapter 2, or a loaded firearm pursuant to Article 3 (commencing with Section 25900) of Chapter 3.

**26362.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any person to the extent that person may openly carry a loaded handgun pursuant to Article 4 (commencing with Section 26000) of Chapter 3.

**26363.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, importing, wholesaling, repairing, or dealing in firearms and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while engaged in the lawful course of the business.

**26364.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a duly authorized military or civil organization, or the members thereof, while parading or while rehearsing or practicing parading, when at the meeting place of the organization.

**26365.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a member of any club or organization organized for the purpose of practicing shooting at

**RJN Ex. 1 -009**

Case 2:16-cv-06164-AB-SD Document 45-2 Filed 09/11/17 Page 13 of 136 Page ID #:858

Bill Text - AB-144 Firearms.                                                 Page 9 of 11

targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

26366. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a licensed hunter while engaged in hunting or while transporting that handgun when going to or returning from that hunting expedition.

26367. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier, or by an authorized agent or employee thereof, when transported in conformance with applicable federal law.

26368. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or a nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while on official parade duty or ceremonial occasions of that organization or while rehearsing or practicing for official parade duty or ceremonial occasions.

26369. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun within a gun show conducted pursuant to Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) of Chapter 3 of Division 6.

26370. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun within a school zone, as defined in Section 626.9, with the written permission of the school district superintendent, the superintendent's designee, or equivalent school authority.

26371. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun when in accordance with the provisions of Section 171b.

26372. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest.

26373. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to loaning, selling, or transferring that handgun in accordance with Article 1 (commencing with Section 27500) of Chapter 4 of Division 6, or in accordance with any of the exemptions from Section 27545, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property.

26374. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business that is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

26375. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses the handgun as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event.

26376. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice pursuant to Section 23910.

26377. Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun at any established target range, whether public or private, while the person is using the handgun upon the target range.

26378. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace, while the person is actually engaged in assisting that officer.

RJN Ex. 1 -010

**26379.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to any of the following:

(a) Complying with Section 27560 or 27565, as it pertains to that handgun.

(b) Section 28000, as it pertains to that handgun.

(c) Section 27850 or 31725, as it pertains to that handgun.

(d) Complying with Section 27870 or 27875, as it pertains to that handgun.

(e) Complying with Section 27915, 27920, or 27925, as it pertains to that handgun.

**26380.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approved by the Commission on Peace Officer Standards and Training.

**26381.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to, and in the course and scope of, training of or by an individual to become licensed pursuant to Chapter 4 (commencing with Section 26150) as part of a course of study necessary or authorized by the person authorized to issue the license pursuant to that chapter.

**26382.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to and at the request of a sheriff or chief or other head of a municipal police department.

**26383.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person when done within a place of business, a place of residence, or on private property, if done with the permission of a person who, by virtue of subdivision (a) of Section 25605, may carry openly an unloaded handgun within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.

**26384.** Paragraph (1) of subdivision (a) of Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun if all of the following conditions are satisfied:

(a) The open carrying occurs at an auction or similar event of a nonprofit public benefit or mutual benefit corporation, at which firearms are auctioned or otherwise sold to fund the activities of that corporation or the local chapters of that corporation.

(b) The unloaded handgun is to be auctioned or otherwise sold for that nonprofit public benefit or mutual benefit corporation.

(c) The unloaded handgun is to be delivered by a person licensed pursuant to, and operating in accordance with, Sections 26700 to 26925, inclusive.

**26385.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to paragraph (3) of subdivision (b) of Section 171c.

**26386.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to Section 171d.

**26387.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun pursuant to subparagraph (F) of paragraph (1) subdivision (c) of Section 171.7.

**26388.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying that handgun is in lawful possession of that handgun.

**26389.** Section 26350 does not apply to, or affect, the carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a motor vehicle or in a locked container.

**SEC. 15.** No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a

**RJN Ex. 1 -011**

crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

RJN Ex. 1 -012



California. LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

**AB-144 Firearms.** (2011-2012)

| Date | Action |
|------|--------|
| 10/09/11 | Chaptered by Secretary of State - Chapter 725, Statutes of 2011. |
| 10/09/11 | Approved by the Governor. |
| 09/21/11 | Enrolled and presented to the Governor at 3:30 p.m. |
| 09/09/11 | Senate amendments concurred in. To Engrossing and Enrolling. (Ayes 48. Noes 30. Page 3208.). |
| 09/09/11 | In Assembly. Concurrence in Senate amendments pending. |
| 09/08/11 | Read third time. Passed. Ordered to the Assembly. (Ayes 21. Noes 18. Page 2398.). |
| 09/06/11 | Read second time. Ordered to third reading. |
| 09/02/11 | Ordered to second reading. |
| 09/02/11 | From inactive file. |
| 08/30/11 | Ordered to inactive file at the request of Senator De León. |
| 06/28/11 | Read second time. Ordered to third reading. |
| 06/27/11 | From committee: Be placed on second reading file pursuant to Senate Rule 28.8. |
| 06/07/11 | From committee: Do pass and re-refer to Com. on APPR. (Ayes 4. Noes 2.) (June 7). Re-referred to Com. on APPR. |
| 06/01/11 | From committee chair, with author's amendments: Amend, and re-refer to committee. Read second time, amended, and re-referred to Com. on PUB. S. |
| 05/26/11 | Referred to Com. on PUB. S. |
| 05/16/11 | In Senate. Read first time. To Com. on RLS. for assignment. |
| 05/16/11 | Read third time. Passed. Ordered to the Senate. (Ayes 46. Noes 29. Page 1389.) |
| 05/09/11 | Read second time. Ordered to third reading. |
| 05/05/11 | From committee: Do pass. (Ayes 12. Noes 5.) (May 4). |
| 05/03/11 | Re-referred to Com. on APPR. |
| 05/02/11 | From committee chair, with author's amendments: Amend, and re-refer to Com. on APPR. Read second time and amended. |
| 04/13/11 | From committee: Do pass and re-refer to Com. on APPR. (Ayes 5. Noes 2.) (April 12). Re-referred to Com. on APPR. |
| 04/05/11 | In committee: Set, first hearing. Hearing canceled at the request of author. |
| 02/03/11 | Referred to Com. on PUB. S. |
| 01/14/11 | From printer. May be heard in committee February 13. |
| 01/13/11 | Read first time. To print. |

**RJN Ex. 1 -013**

Case 2:16-cv-06164-JAK-AS Document 45-2 Filed 09/11/17 Page 17 of 136 Page ID #:862



California
LEGISLATIVE INFORMATION

Home    Bill Information    California Law    Publications    Other Resources    My Subscriptions    My Favorites

**AB-144 Firearms.** (2011-2012)

| Date | Result | Location | Ayes | Noes | NVR | Motion |
|---|---|---|---|---|---|---|
| 09/09/11 | (PASS) | Assembly Floor | 48 | 30 | 2 | AB 144 PORTANTINO Concurrence in Senate Amendments |

Ayes: Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bonilla, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos, Carter, Cedillo, Chesbro, Davis, Dickinson, Eng, Feuer, Fong, Fuentes, Furutani, Gatto, Gordon, Hall, Hayashi, Roger Hernández, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mendoza, Mitchell, Monning, Pan, V. Manuel Perez, Portantino, Skinner, Solorio, Swanson, Wieckowski, Williams, Yamada, John A. Pérez

Noes: Achadjian, Bill Berryhill, Conway, Cook, Donnelly, Fletcher, Beth Gaines, Galgiani, Garrick, Grove, Hagman, Halderman, Harkey, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Norby, Olsen, Perea, Silva, Smyth, Valadao, Wagner

No Votes Recorded: Gorell, Torres

| 09/08/11 | (FAIL) | Senate Floor | 15 | 20 | 5 | Assembly 3rd Reading AB144 Portantino By De León Reconsider |

Ayes: Anderson, Berryhill, Blakeslee, Cannella, Dutton, Emmerson, Fuller, Gaines, Harman, Huff, La Malfa, Runner, Strickland, Walters, Wyland

Noes: Alquist, Calderon, Corbett, De León, DeSaulnier, Evans, Hancock, Hernandez, Kehoe, Leno, Lieu, Liu, Negrete McLeod, Padilla, Pavley, Price, Steinberg, Vargas, Wolk, Yee

No Votes Recorded: Correa, Lowenthal, Rubio, Simitian, Wright

| 09/08/11 | (PASS) | Senate Floor | 21 | 18 | 1 | Assembly 3rd Reading AB144 Portantino By De León |

Ayes: Alquist, Calderon, Corbett, De León, DeSaulnier, Evans, Hancock, Hernandez, Kehoe, Leno, Liu, Lowenthal, Negrete McLeod, Padilla, Pavley, Price, Simitian, Steinberg, Vargas, Wolk, Yee

Noes: Anderson, Berryhill, Blakeslee, Cannella, Correa, Dutton, Emmerson, Fuller, Gaines, Harman, Huff, La Malfa, Rubio, Runner, Strickland, Walters, Wright, Wyland

No Votes Recorded: Lieu

| 06/07/11 | (PASS) | Sen Public Safety | 4 | 2 | 1 | Do pass, but re-refer to the Committee on Appropriations. |

Ayes: Hancock, Liu, Price, Steinberg

Noes: Anderson, Harman

No Votes Recorded: Calderon

| 05/16/11 | (PASS) | Assembly Floor | 46 | 29 | 5 | AB 144 PORTANTINO Assembly Third Reading |

Ayes: Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bonilla, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos, Carter, Cedillo, Chesbro, Davis, Dickinson, Eng, Feuer, Fong, Fuentes, Furutani, Gatto, Gordon, Hall, Hayashi, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mitchell, Monning, Pan, V. Manuel Perez, Portantino, Skinner, Solorio, Swanson, Wieckowski, Williams, Yamada, John A. Pérez

Noes: Achadjian, Bill Berryhill, Conway, Cook, Donnelly, Fletcher, Beth Gaines, Garrick, Grove, Hagman, Halderman, Harkey, Roger Hernández, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Olsen, Perea, Silva, Smyth, Valadao, Wagner

No Votes Recorded: Galgiani, Gorell, Mendoza, Norby, Torres

| 05/04/11 | (PASS) | Asm Appropriations | 12 | 5 | 0 | Do pass. |

Ayes: Blumenfield, Bradford, Charles Calderon, Campos, Davis, Fuentes, Gatto, Hall, Hill, Lara, Mitchell, Solorio

Noes: Donnelly, Harkey, Nielsen, Norby, Wagner

No Votes Recorded:

| 04/12/11 | (PASS) | Asm Public Safety | 5 | 2 | 0 | Do pass and be re-referred to the Committee on Appropriations. |

RJN Ex. 1 -014

| Date | Result | Location | Ayes | Noes | NVR | Motion |
|------|--------|----------|------|------|-----|--------|
|      |        | **Ayes:** Ammiano, Cedillo, Hill, Mitchell, Yamada | | | | |
|      |        | **Noes:** Hagman, Knight | | | | |
|      |        | **No Votes Recorded:** | | | | |

RJN Ex. 1 -015

CONCURRENCE IN SENATE AMENDMENTS
AB 144 (Portantino and Ammiano)
As Amended June 1, 2011
Majority vote

ASSEMBLY:   46-29   (May 16, 2011)        SENATE:   21-18   (September 8, 2011)

Original Committee Reference:   PUB. S.

SUMMARY: Makes it a misdemeanor for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county.

The Senate amendments exempt a security guard authorized to openly carry an unloaded handgun and an honorably retired peace officer authorized to openly carry an unloaded handgun from prohibitions against a firearm in a school zone.

AS PASSED BY THE ASSEMBLY, this bill made it a misdemeanor for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. Specifically, this bill:

1) Made it a misdemeanor punishable by imprisonment in the county jail not to exceed six months, by a fine not to exceed $1,000, or by both a fine and imprisonment for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person, or when that person carries an exposed and unlocked handgun inside or on a vehicle, whether or not is in on his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county.

2) Made the crime of openly carrying an unloaded handgun punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed $1,000, or by that fine and imprisonment if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm.

3) Stated that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

4) Provided that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

5) Stated that notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a separate and distinct offense.

6) Stated that the open carrying of an unloaded handgun does not apply to the carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a motor vehicle or in

RJN Ex. 1 -016

a locked container.

7) Provided that the crime of openly carrying an unloaded handgun does not apply to, or affect, the following:

a) The open carrying of an unloaded handgun by any peace officer or by an honorably retired peace officer authorized to carry a handgun;

b) The open carrying of an unloaded handgun by any person authorized to carry a loaded handgun;

c) The open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative of that business;

d) The open carrying of an unloaded handgun by duly authorized military or civil organizations while parading, or the members thereof when at the meeting places of their respective organizations;

e) The open carrying of an unloaded handgun by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range;

f) The open carrying of an unloaded handgun by a licensed hunter while engaged in lawful hunting;

g) The open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law;

h) The open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization;

i) The open carrying of an unloaded handgun within a gun show;

j) The open carrying of an unloaded handgun within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority;

k) The open carrying of an unloaded handgun when in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol;

l) The open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest;

m) The open carrying of an unloaded handgun incident to loaning, selling, or transferring the same, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property;

n) The open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training;

o) The open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event;

p) The open carrying of an unloaded handgun incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);

q) The open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer;

r) The open carrying of an unloaded handgun incident to a private party transfer through a licensed firearms dealer;

s) The open carrying of an unloaded handgun by a person in the scope and course of training by an individual to become a sworn peace officer;

t) The open carrying of an unloaded handgun in the course and scope of training to in order to be licensed to carry a concealed weapon;

u) The open carrying of an unloaded handgun at the request of a sheriff or chief or other head of a municipal police department;

v) The open carrying of an unloaded handgun within a place of business, within a place of residence, or on private property if done with the permission of the owner or lawful possessor of the property; and,

w) The open carrying of an unloaded handgun when all of the following conditions are satisfied:

   i) The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

   ii) The unloaded handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation;

iii) The unloaded handgun is delivered by a licensed dealer;

iv) The open carrying of an unloaded handgun does not apply to person authorized to carry handguns in the State Capitol or residences of the Governor or other constitutional officers; and,

v) The open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.

8) Made conforming and non-substantive technical changes.

FISCAL EFFECT: According to the Senate Appropriations Committee, pursuant to Senate Rule 28.8, negligible state costs.

COMMENTS: According to the author, "The absence of a prohibition on 'open carry' has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals causing issues for law enforcement.

"Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

"In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation, the practice of 'open carry' creates an unsafe environment for all parties involved: the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

Please see the policy committee analysis for a full discussion of this bill.

Analysis Prepared by: Gregory Pagan / PUB. S. / (916) 319-3744

FN: 0001386

**SENATE RULES COMMITTEE**                                    AB 144
Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 651-1520        Fax: (916) 327-4478

---

### THIRD READING

---

Bill No:    AB 144
Author:     Portantino (D), et al
Amended:    6/1/11 in Senate
Vote:       21

---

SENATE PUBLIC SAFETY COMMITTEE: 4-2, 6/7/11
AYES: Hancock, Liu, Price, Steinberg
NOES: Anderson, Harman
NO VOTE RECORDED: Calderon

SENATE APPROPRIATIONS COMMITTEE: Senate Rule 28.8

ASSEMBLY FLOOR: 46-29, 5/16/11 - See last page for vote

---

**SUBJECT:**    Open Carrying of unloaded handguns

**SOURCE:**     California Police Chiefs Association

---

**DIGEST:**  This bill (1) makes it a misdemeanor punishable by up to six
months in jail and a $1,000 fine to openly carry an unloaded handgun on
one's person or in a vehicle; (2) makes it a misdemeanor punishable by up to
one year in county jail and a $1,000 fine to openly carry an unlawfully
possessed unloaded handgun and ammunition in public in an incorporated
city; (3) establishes specified exceptions to this prohibition; (4) makes it a
misdemeanor, punishable by up to six months in jail and a fine of up to
$1,000 for the driver of a vehicle to knowingly allow a person to bring an
openly carried, unloaded handgun into the vehicle; and (5) makes
conforming and nonsubstantive technical changes to affected statutes.

CONTINUED

**RJN Ex. 1 -020**

**ANALYSIS:**   Existing law defines "handgun" as any "pistol," "revolver," or "firearm capable of being concealed upon the person." (Penal Code Section 16640(a).)

Existing law prohibits carrying a concealed weapon, loaded or unloaded, unless granted a permit to do so. Except as otherwise provided, a person is guilty of carrying a concealed firearm when he/she:

- Carries concealed within any vehicle which is under his/her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.

- Causes to be concealed within any vehicle in which the person is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person.

- Carries concealed upon his/her person any pistol, revolver, or other firearm capable of being concealed upon the person. (Penal Code Section 25400(a).)

Existing law provides that carrying a concealed firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which carrying a concealed weapon may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law.

- A felony where the firearm is stolen and the person knew, or had reasonable cause to believe, that the firearm was stolen.

- A felony where the person is an active participant in a criminal street gang.

- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm.

CONTINUED

RJN Ex. 1 -021

- An alternate felony-misdemeanor where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.

- An alternate felony-misdemeanor where:

  o Both the concealable firearm and the unexpended ammunition for that firearm are either in the immediate possession of the person or readily available to that person or where the firearm is loaded.

  o The person is not listed with the Department of Justice (DOJ) as the registered owner of the firearm. (Penal Code Section 25400(c).)

Existing law provides a number of exceptions and limitations to the prohibition on carrying a concealed firearm including methods to lawfully carry firearms in a vehicle, a home, or a business, etc. (Penal Code Sections 25600, 25605, 25610, 25505-25595, 25450-25475, 25615-25655, and 26150-26255.)

Existing law authorizes the sheriff of a county, or the chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying satisfies any one of specified conditions, and has completed a course of training, as specified, to issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:

- A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

- Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(Penal Code Sections 26150-26255.)

Existing law prohibits the carrying of a loaded firearm on his/her person or in a vehicle while in any public place or on any public street in an incorporated city or a prohibited area of unincorporated territory. The penalty provisions for this prohibition are substantially similar to those

provided in Penal Code Section 25400(c) and provide numerous exceptions and limitation to this prohibition. (Penal Code Section 25850.)

Existing law provides that a firearm shall be deemed to be loaded for the purposes of Penal Code Section 12031 when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder. (Penal Code Section 16840(b).)

Existing law provides in the Fish and Game Code that it is unlawful to possess a loaded rifle or shotgun in any vehicle or conveyance or its attachments which is standing on or along or is being driven on or along any public highway or other way open to the public. (Fish and Game Code Section 2006.)

Existing law provides that a rifle or shotgun shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine.

Existing law provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which the penalty may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law.

- A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen.

- A felony where the person is an active participant in a criminal street gang.

- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm.

CONTINUED

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the DOJ as the registered owner of the firearm.

(Penal Code Section 25858(c).)

Existing law, the "Gun-Free School Zone Act," prohibits a person, without appropriate permission, as specified, from possessing a firearm within an area that the person knew or reasonably should have known was a "school zone," defined as an area in or on the grounds of or within 1,000 feet of the grounds of any public or private K-12 school. (Penal Code Section 626.9.)

Existing law provides that any person who has ever been convicted of a felony and who owns or has in his/her possession or under his/her custody or control a firearm is guilty of a felony, punishable by 16 months, two or three years in prison. (Penal Code Section 29800(b).)

Existing law provides that every person who, except in self-defense, draws or exhibits any firearm in public, loaded or unloaded, in the presence of another person, in a rude, angry or threatening manner is guilty of a misdemeanor and shall be imprisoned for not less than three months nor more than one year in the county jail; fined $1,000; or both. (Penal Code Section 417(a).)

Existing law provides that every person who, except in self-defense, draws or exhibits any firearm, loaded or unloaded, in a rude, angry or threatening manner in public, in the presence of a peace officer, who a reasonable person would know was in the performance of his/her duty, is guilty of an alternate misdemeanor/felony and shall be imprisoned for not less than nine months and up to one year in the county jail or in the state prison for 16 months, two or three years. (Penal Code Section 417(c).)

CONTINUED

This bill provides that it shall be a misdemeanor, punishable by up to six months in the county jail, a fine of up to $1,000, or both, for any person to carry an exposed and unloaded handgun outside a vehicle upon his/her person or inside or on a vehicle, whether or not on his/her person, while in:

- A public place or public street in an incorporated city or city and county.

- A public street in a prohibited area of an unincorporated area of a county or city and county.

- A public place in a prohibited area of a county or city and county.

This bill provides that it shall be a misdemeanor punishable by imprisonment in a county jail for up to one year, a fine of up to $1,000, or both, for any person to carry an exposed and unloaded handgun inside or on a vehicle, whether or not on his/her person, while in a public place or public street in an incorporated city or city and county is, if both of the following conditions exist:

- The handgun and unexpended ammunition capable of being discharged from that handgun are in the immediate possession of that person.

- The person is not in lawful possession of that handgun.

This bill provides that the above-stated provisions shall not preclude prosecution under any other law with a penalty that is greater.

This bill provides that the above-stated provisions are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

This bill provides that, notwithstanding the fact that the term "an unloaded handgun" is used in this section; each handgun shall constitute a separate and distinct offense.

This bill provides that the crime of openly carrying an unloaded handgun does not apply to, or affect, the following:

CONTINUED

RJN Ex. 1 -025

- The open carrying of an unloaded handgun by any peace officer or by an honorably retired peace officer authorized to carry a handgun, as specified.

- The open carrying of an unloaded handgun by any person authorized to openly carry a loaded handgun, as specified.

- The open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative of that business.

- The open carrying of an unloaded handgun by duly authorized military or civil organizations while parading or the members thereof when at the meeting places of their respective organizations.

- The open carrying of an unloaded handgun upon the person by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

- The open carrying of an unloaded handgun by a licensed hunter while engaged in lawful hunting.

- The open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law.

- The open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization.

- The open carrying of an unloaded handgun upon the person within a gun show, as specified.

CONTINUED

- The open carrying of an unloaded handgun within a school zone, as defined, with the written permission of the school district superintendent, his/her designee, or equivalent school authority.

- The open carrying of an unloaded handgun when in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol.

- The open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest.

- The open carrying of an unloaded handgun incident to loaning, selling, or transferring the same, as specified, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property.

- The open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

- The open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while rehearsing or practicing, or while the participant or authorized employee or agent is at that production event or rehearsal or practice.

- The open carrying of an unloaded handgun upon the person incident to obtaining an identification number or mark assigned for that handgun from the DOJ.

- The open carrying of an unloaded handgun upon the person at any established target range, whether public or private, while the person is using the handgun upon the target range.

- The open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he/she is actually engaged in assisting that officer.

CONTINUED

RJN Ex. 1 -027

- The open carrying of an unloaded handgun upon the person incident to any of the following:

  - Complying with requirements for importing that handgun or curio or relic into California.

  - Reporting disposition of a handgun to DOJ, as specified.

  - The sale or transfer of that firearm to a government entity, as specified.

  - Complying with requirements related to the transfer of a handgun obtained by gift or inheritance.

  - Complying with requirements for taking possession or title of that handgun.

- The open carrying of an unloaded handgun incident to a private party transfer through a licensed firearms dealer.

- The open carrying of an unloaded handgun by a person in the scope and course of training by an individual to become a sworn peace officer.

- The open carrying of an unloaded handgun in the course and scope of training to in order to be licensed to carry a concealed weapon.

- The open carrying of an unloaded handgun at the request of a sheriff or chief or other head of a municipal police department.

- The open carrying of an unloaded handgun upon the person within a place of business, within a place of residence, or on private property if done with the permission of the owner or lawful possessor of the property.

- The open carrying of an unloaded handgun upon the person when all of the following conditions are satisfied:

  - The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities.

CONTINUED

- o The unloaded handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation.

- o The unloaded handgun is delivered by a licensed dealer.

- The open carrying of an unloaded handgun by a person authorized to carry a handgun in the State Capitol or residences of the Governor or other constitutional officers.

- The open carrying of an unloaded handgun by authorized public transit officials, as specified.

- The open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is in lawful possession of that handgun.

- The carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a motor vehicle or in a locked container.

This bill provides that the "Gun Free School Zones Act" described above does not apply to or affect the following persons:

- A security guard authorized to openly carry an unloaded handgun pursuant to the provisions of this bill.

- An honorably retired peace officer authorized to openly carry an unloaded handgun pursuant to the provisions of this bill.

This bill provides that it shall be a misdemeanor, punishable by up to 6 months in county jail, a fine of up to $1,000, or both, for a driver of any motor vehicle or the owner of any motor vehicle, whether or not the owner of the vehicle is occupying the vehicle, to knowingly permit any other person to carry into or bring into the vehicle an openly carried unloaded handgun, as specified.

This bill makes conforming and nonsubstantive technical changes.

Related/Prior Legislation

RJN Ex. 1 -029

Case 2:16-cv-06164-JAK-AS Document 45-6 2-Filed 09/12/17 Page 33 of 91 Page ID
#:878

AB 1934 (Saldana, 2010) passed the Senate Floor (21-16) on August 31, 2010. This bill died on Assembly Concurrence; AB 98 (Cohn, 2005) was held on Suspense in the Assembly Appropriations Committee; AB 2501(Horton, 2004) failed passage in the Assembly Public Safety Committee; AB 2828 (Cohn, 2004) failed passage in the Assembly Public Safety Committee

**FISCAL EFFECT**: Appropriation: No   Fiscal Com.: Yes   Local: Yes

**SUPPORT**: (Verified  6/28/11)

California Police Chiefs Association (source)
Brady Campaign to Prevent Gun Violence (California Chapters)
City of Beverly Hills
City of Los Angeles
City of West Hollywood
Coalition Against Gun Violence
Friends Committee on Legislation
Legal Community Against Violence
Los Angeles Sheriff's Department
Peace Officers Research Association of California

**OPPOSITION**: (Verified  6/28/11)

California Rifle and Pistol Association
California Right To Carry
Capitol Resource Family Impact
Contra Costa Open Carry
Diablo Valley Gun Works
Gun Owners of California
National Rifle Association
Open Carry Organization
Redline Ballistic
Responsible Citizens of California
South Bay Open Carry

**ARGUMENTS IN SUPPORT**:   According to the author's office, the absence of a prohibition on "open carry" has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals and causing issues for law enforcement. Simply put, open carry creates a potentially dangerous situation for the Citizens of California.

CONTINUED
**RJN Ex. 1 -030**

Often, when an individual is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more armed individuals are present at a location.

In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation the practice of "open carry" creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other people who happen to be in the line of fire.

Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways.

**ARGUMENTS IN OPPOSITION:** The National Rifle Association and the California Rifle and Pistol Association state:

By denying individuals the ability to carry an unloaded firearm, SB 144 directly violates the constitutional right to keep and bear arms for self-defense. We urge you to oppose this attack on the rights of the law abiding population to carry a firearm in case of a self-defense emergency should they so choose.

In addition, we write to notify you that the problems facing SB 144 are compounded by the current state of California's concealed carry weapons (CCW) permitting system. Should AB 144 pass, it will wreak havoc on California's CCW permitting system. In most areas of California, CCW permits are rarely issued, and are usually reserved for those with political clout and the wealthy elite. Because of this reality, "open carrying" is the only method available to the overwhelming majority of law-abiding individuals who wish to carry a firearm for self-defense. Accordingly, by banning the open carrying of even unloaded firearms, SB 144 effectively shuts the door on the ability of law-abiding Californians to carry a firearm for self-defense at all.

**ASSEMBLY FLOOR**:
AYES: Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bonilla, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos,

CONTINUED

RJN Ex. 1 -031

Carter, Cedillo, Chesbro, Davis, Dickinson, Eng, Feuer, Fong, Fuentes, Furutani, Gatto, Gordon, Hall, Hayashi, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mitchell, Monning, Pan, V. Manuel Pérez, Portantino, Skinner, Solorio, Swanson, Wieckowski, Williams, Yamada, John A. Pérez

NOES: Achadjian, Bill Berryhill, Conway, Cook, Donnelly, Fletcher, Beth Gaines, Garrick, Grove, Hagman, Halderman, Harkey, Roger Hernández, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Olsen, Perea, Silva, Smyth, Valadao, Wagner

NO VOTE RECORDED: Galgiani, Gorell, Mendoza, Norby, Torres


RJG:do 6/28/11 Senate Floor Analyses

SUPPORT/OPPOSITION: SEE ABOVE

**** **END** ****

## SENATE COMMITTEE ON PUBLIC SAFETY

Senator Loni Hancock, Chair      **A**
2011-2012 Regular Session      **B**

**1**
**4**
**4**

AB 144 (Portantino)
As Amended June 1, 2011
Hearing date: June 7, 2011
Business and Professions Code and
Penal Code
SM:dl

### OPEN CARRYING OF UNLOADED HANDGUNS

#### HISTORY

Source:      California Police Chiefs Association

Prior Legislation:      AB 1934 (Saldana) - 2010, died on Assembly Concurrence
                     AB 98 (Cohn) - 2005, held on Suspense in Assembly Appropriations
                     AB 2501(Horton) - 2004, failed passage in Assembly Public Safety
                     AB 2828 (Cohn) - 2004, failed passage in Assembly Public Safety

Support:      Brady Campaign to Prevent Gun Violence (California Chapters); City of Beverly
            Hills; City of Los Angeles; City of West Hollywood; Coalition Against Gun
            Violence; Friends Committee on Legislation; Legal Community Against Violence;
            Los Angeles Sheriff's Department; Peace Officers Research Association of
            California (PORAC); over 200 individual citizens

Opposition:      California Rifle and Pistol Association; Capitol Resource Family Impact; Diablo
            Valley Gun Works; Gun Owners of California; National Rifle Association;
            Responsible Citizens of California; 20 individual citizens

Assembly Floor Vote: Ayes 46 - Noes 29

---

#### KEY ISSUES

SHOULD IT BE A MISDEMEANOR PUNISHABLE BY UP TO SIX MONTHS IN COUNTY
JAIL AND A $1,000 FINE TO OPENLY CARRY AN UNLOADED HANDGUN ON ONE'S
PERSON OR IN A VEHICLE?

(Continued)

---

(More)

RJN Ex. 1 -033

SHOULD IT BE A MISDEMEANOR PUNISHABLE BY UP TO ONE YEAR IN COUNTY JAIL AND A $1,000 FINE TO OPENLY CARRY AN UNLAWFULLY POSSESSED UNLOADED HANDGUN AND AMMUNITION IN PUBLIC IN AN INCORPORATED CITY?

SHOULD SPECIFIED EXCEPTIONS TO THIS PROHIBITION BE ESTABLISHED?

SHOULD IT BE A MISDEMEANOR, PUNISHABLE BY UP TO SIX MONTHS IN JAIL AND A FINE OF UP TO $1,000 FOR THE DRIVER OF A VEHICLE TO KNOWINGLY ALLOW A PERSON TO BRING AN OPENLY CARRIED, UNLOADED HANDGUN INTO THE VEHICLE?

## *PURPOSE*

*The purpose of this bill is to (1) make it a misdemeanor punishable by up to 6 months in jail and a $1,000 fine to openly carry an unloaded handgun on one's person or in a vehicle; (2) make it a misdemeanor punishable by up to one year in county jail and a $1,000 fine to openly carry an unlawfully possessed unloaded handgun and ammunition in public in an incorporated city; (3) establish specified exceptions to this prohibition; (4) make it a misdemeanor, punishable by up to six months in jail and a fine of up to $1,000 for the driver of a vehicle to knowingly allow a person to bring an openly carried, unloaded handgun into the vehicle; and (5) make conforming and nonsubstantive technical changes to affected statutes.*

Existing law defines "handgun" as any "pistol," "revolver," or "firearm capable of being concealed upon the person." (Penal Code § 16640(a).)[1]

Existing law prohibits carrying a concealed weapon, loaded or unloaded, unless granted a permit to do so. Except as otherwise provided, a person is guilty of carrying a concealed firearm when he or she:

- Carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person;
- Causes to be concealed within any vehicle in which the person is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person; or,

---

[1] SB 1080, Chap. 711, Stats. 2010, and SB 1115, Chap. 178, Stats. 2010, recast and renumbered most statutes relating to deadly weapons without any substantive change to those statutes. Those changes will become operative January 1, 2012. All references to affected code sections will be to the revised version unless otherwise indicated.

**RJN Ex. 1 -034**

- Carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person. (Penal Code § 25400(a).)

Existing law provides that carrying a concealed firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which carrying a concealed weapon may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;
- A felony where the firearm is stolen and the person knew, or had reasonable cause to believe, that the firearm was stolen;
- A felony where the person is an active participant in a criminal street gang;
- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;
- An alternate felony-misdemeanor where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation; and,
- An alternate felony-misdemeanor where:
  - Both the concealable firearm and the unexpended ammunition for that firearm are either in the immediate possession of the person or readily available to that person or where the firearm is loaded; and,
  - The person is not listed with the Department of Justice (DOJ) as the registered owner of the firearm. (Penal Code § 25400(c).)

Existing law provides a number of exceptions and limitations to the prohibition on carrying a concealed firearm including methods to lawfully carry firearms in a vehicle, a home, or a business, etc. (Penal Code §§ 25600, 25605, 25610, 25505-25595, 25450-25475, 25615-25655, and 26150-26255.)

Existing law authorizes the sheriff of a county, or the chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying satisfies any one of specified conditions, and has completed a course of training, as specified, to issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:

- A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.
- Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(Pen Code § 26150-26255.)

**RJN Ex. 1 -035**

Existing law prohibits the carrying of a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or a prohibited area of unincorporated territory. The penalty provisions for this prohibition are substantially similar to those provided in Penal Code Section 25400(c) and provide numerous exceptions and limitation to this prohibition. (Penal Code § 25850.)

Existing law provides that a firearm shall be deemed to be loaded for the purposes of Penal Code Section 12031 when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder. (Penal Code § 16840(b).)

Existing law provides in the Fish and Game Code that it is unlawful to possess a loaded rifle or shotgun in any vehicle or conveyance or its attachments which is standing on or along or is being driven on or along any public highway or other way open to the public. (Fish and Game Code § 2006.)

Existing law provides that a rifle or shotgun shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine. (*Id.*)

Existing law provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which the penalty may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;
- A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen ;
- A felony where the person is an active participant in a criminal street gang;
- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;
- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.
- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the DOJ as the registered owner of the firearm.

(Penal Code § 25858(c).)

RJN Ex. 1 -036

Existing law, the "Gun-Free School Zone Act," prohibits a person, without appropriate permission, as specified, from possessing a firearm within an area that the person knew or reasonably should have known was a "school zone," defined as an area in or on the grounds of or within 1,000 feet of the grounds of any public or private K-12 school. (Penal Code § 626.9.)

Existing law provides that any person who has ever been convicted of a felony and who owns or has in his or her possession or under his or her custody or control a firearm is guilty of a felony, punishable by 16 months, 2 or 3 years in prison. (Penal Code § 29800(b).)

Existing law provides that every person who, except in self-defense, draws or exhibits any firearm in public, loaded or unloaded, in the presence of another person, in a rude, angry or threatening manner is guilty of a misdemeanor and shall be imprisoned for not less than three months nor more than one year in the county jail; fined $1,000; or both. (Penal Code § 417(a).)

Existing law provides that every person who, except in self-defense, draws or exhibits any firearm, loaded or unloaded, in a rude, angry or threatening manner in public, in the presence of a peace officer, who a reasonable person would know was in the performance of his or her duty, is guilty of an alternate misdemeanor/felony and shall be imprisoned for not less than nine months and up to one year in the county jail or in the state prison for 16 months, 2 or 3 years. (Penal Code § 417(c).)

This bill provides that it shall be a misdemeanor, punishable by up to 6 months in the county jail, a fine of up to $1,000, or both, for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person or inside or on a vehicle, whether or not on his or her person, while in:

- A public place or public street in an incorporated city or city and county.
- A public street in a prohibited area of an unincorporated area of a county or city and county.
- A public place in a prohibited area of a county or city and county.

This bill provides that it shall be a misdemeanor punishable by imprisonment in a county jail for up to one year, a fine of up to $1,000, or both, for any person to carry an exposed and unloaded handgun inside or on a vehicle, whether or not on his or her person, while in a public place or public street in an incorporated city or city and county is, if both of the following conditions exist:

- The handgun and unexpended ammunition capable of being discharged from that handgun are in the immediate possession of that person.
- The person is not in lawful possession of that handgun.

This bill provides that the above-stated provisions shall not preclude prosecution under any other law with a penalty that is greater.

**RJN Ex. 1 -037**

This bill provides that the above-stated provisions are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

This bill provides that, notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a separate and distinct offense.

This bill provides that the crime of openly carrying an unloaded handgun does not apply to, or affect, the following:

- The open carrying of an unloaded handgun by any peace officer or by an honorably retired peace officer authorized to carry a handgun, as specified;
- The open carrying of an unloaded handgun by any person authorized to openly carry a loaded handgun, as specified;
- The open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative of that business;
- The open carrying of an unloaded handgun by duly authorized military or civil organizations while parading, or the members thereof when at the meeting places of their respective organizations;
- The open carrying of an unloaded handgun upon the person by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range;
- The open carrying of an unloaded handgun by a licensed hunter while engaged in lawful hunting;
- The open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law;
- The open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization;
- The open carrying of an unloaded handgun upon the person within a gun show, as specified;
- The open carrying of an unloaded handgun within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority;

RJN Ex. 1 -038

- The open carrying of an unloaded handgun when in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol;
- The open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest;
- The open carrying of an unloaded handgun incident to loaning, selling, or transferring the same, as specified, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property;
- The open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training;
- The open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while rehearsing or practicing, or while the participant or authorized employee or agent is at that production event or rehearsal or practice;
- The open carrying of an unloaded handgun upon the person incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);
- The open carrying of an unloaded handgun upon the person at any established target range, whether public or private, while the person is using the handgun upon the target range.
- The open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer;
- The open carrying of an unloaded handgun upon the person incident to any of the following:

  o Complying with requirements for importing that handgun or curio or relic into California;
  o Reporting disposition of a handgun to DOJ, as specified;
  o The sale or transfer of that firearm to a government entity, as specified;
  o Complying with requirements related to the transfer of a handgun obtained by gift or inheritance;
  o Complying with requirements for taking possession or title of that handgun;

- The open carrying of an unloaded handgun incident to a private party transfer through a licensed firearms dealer;

RJN Ex. 1 -039

- The open carrying of an unloaded handgun by a person in the scope and course of training by an individual to become a sworn peace officer;
- The open carrying of an unloaded handgun in the course and scope of training to in order to be licensed to carry a concealed weapon;
- The open carrying of an unloaded handgun at the request of a sheriff or chief or other head of a municipal police department;
- The open carrying of an unloaded handgun upon the person within a place of business, within a place of residence, or on private property if done with the permission of the owner or lawful possessor of the property;
- The open carrying of an unloaded handgun upon the person when all of the following conditions are satisfied:

    o The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities.
    o The unloaded handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation.
    o The unloaded handgun is delivered by a licensed dealer.

- The open carrying of an unloaded handgun by a person authorized to carry a handgun in the State Capitol or residences of the Governor or other constitutional officers;
- The open carrying of an unloaded handgun by authorized public transit officials, as specified;
- The open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is in lawful possession of that handgun;
- The carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a motor vehicle or in a locked container.

This bill provides that the "Gun Free School Zones Act" described above does not apply to or affect the following persons:

- A security guard authorized to openly carry an unloaded handgun pursuant to the provisions of this bill;
- An honorably retired peace officer authorized to openly carry an unloaded handgun pursuant to the provisions of this bill.

This bill provides that it shall be a misdemeanor, punishable by up to 6 months in county jail, a fine of up to $1,000, or both, for a driver of any motor vehicle or the owner of any motor vehicle, whether or not the owner of the vehicle is occupying the vehicle, to knowingly permit any other person to carry into or bring into the vehicle an openly carried unloaded handgun, as specified.

(More)

RJN Ex. 1 -040

This bill makes conforming and nonsubstantive technical changes.

### *RECEIVERSHIP/OVERCROWDING CRISIS AGGRAVATION*

For the last several years, severe overcrowding in California's prisons has been the focus of evolving and expensive litigation. As these cases have progressed, prison conditions have continued to be assailed, and the scrutiny of the federal courts over California's prisons has intensified.

On June 30, 2005, in a class action lawsuit filed four years earlier, the United States District Court for the Northern District of California established a Receivership to take control of the delivery of medical services to all California state prisoners confined by the California Department of Corrections and Rehabilitation ("CDCR"). In December of 2006, plaintiffs in two federal lawsuits against CDCR sought a court-ordered limit on the prison population pursuant to the federal Prison Litigation Reform Act. On January 12, 2010, a three-judge federal panel issued an order requiring California to reduce its inmate population to 137.5 percent of design capacity -- a reduction at that time of roughly 40,000 inmates -- within two years. The court stayed implementation of its ruling pending the state's appeal to the U.S. Supreme Court.

On May 23, 2011, the United States Supreme Court upheld the decision of the three-judge panel in its entirety, giving California two years from the date of its ruling to reduce its prison population to 137.5 percent of design capacity, subject to the right of the state to seek modifications in appropriate circumstances.

In response to the unresolved prison capacity crisis, in early 2007 the Senate Committee on Public Safety began holding legislative proposals which could further exacerbate prison overcrowding through new or expanded felony prosecutions.

This bill does not appear to aggravate the prison overcrowding crisis described above.

### COMMENTS

1. Need for This Bill

According to the author:

> The absence of a prohibition on "open carry" has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals and causing issues for law enforcement. Simply put, open carry creates a potentially dangerous situation for the Citizens of California.

Often, when an individual is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more armed individuals are present at a location.

In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation the practice of "open carry" creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other people who happen to be in the line of fire.

Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways.

## 2. Background – The "Open Carry Movement" in California

California has some of the nation's strictest regulations regarding gun ownership. One practice that has remained unregulated is carrying an unconcealed, unloaded handgun. In 2004 and 2005, and then again last year there were unsuccessful attempts to prohibit this practice. (AB 2828 (Cohn) (2004); AB 2501 (Horton) (2004); AB 98 (Cohn) (2005), AB 1934 (Saldana) (2010).) A new movement to promote the open carrying of firearms in California and around the country has heightened debate around the issue, as reported in the New York Times:

For years, being able to carry a concealed handgun has been a sacred right for many gun enthusiasts. In defending it, Charlton Heston, the actor and former president of the National Rifle Association, used to say that the flock is safer when the wolves cannot tell the difference between the lions and the lambs. But a grass-roots effort among some gun rights advocates is shifting attention to a different goal: exercising the right to carry unconcealed weapons in the 38 or more states that have so-called open-carry laws allowing guns to be carried in public view with little or no restrictions. The movement is not only raising alarm among gun control proponents but also exposing rifts among gun rights advocates.

The call for gun owners to carry their guns openly in the normal course of business first drew broad attention last summer, when opponents of the Obama administration's health care overhaul began appearing at town-hall-style meetings wearing sidearms. But in recent weeks, the practice has expanded as gun owners in California and other states that allow guns to be openly carried have tested the law by showing up at so-called meet-ups, in which gun owners appear at Starbucks, pizza parlors and other businesses openly bearing their weapons.

(More)

"Our point is to do the same thing that concealed carriers do," said Mike
Stollenwerk, a co-founder of OpenCarry.org, which serves as a national forum.
"We're just taking off our jackets."

The goal, at least in part, is to make the case for liberalized concealed weapon
laws by demonstrating how uncomfortable many people are with publicly
displayed guns. The tactic has startled many business owners like Peet's Coffee
and Tea and California Pizza Kitchen, which forbid guns at their establishments.
So far, Starbucks has resisted doing the same. (*Locked, Loaded, and Ready to
Caffeinate*, New York Times, March 7, 2010.
http://www.nytimes.com/2010/03/08/us/08 guns.html?pagewanted=print.)

## 3. Is Banning Open Carrying of Handguns Unconstitutional?

The Second Amendment to the United States Constitution states, "A well-regulated militia, being
necessary to the security of a free state, the right of the people to keep and bear arms, shall not be
infringed". (U.S. Const., Second Amend.) For many years, courts have wrestled with the
question of whether the Second Amendment protects the individual's right to own a weapon. In
*United States vs. Cruikshank* (1875) 92 U.S. 542, the Supreme Court held that the Second
Amendment guaranteed states the right to maintain militias but did not guarantee to individuals
the right to possess guns. Subsequently, in *United States vs. Miller* (1939), the Court upheld a
federal law banning the interstate transportation of certain firearms. Miller, who had been
arrested for transporting a double-barreled sawed-off shotgun from Oklahoma to Arkansas,
claimed the law was a violation of the Second Amendment.

The Court rejected Miller's argument, stating:

In the absence of any evidence tending to show that possession or use of a
"shotgun having a barrel of less than eighteen inches in length" at this time has
some reasonable relationship to the preservation or efficiency of a well regulated
militia, we cannot say that the Second Amendment guarantees the right to keep
and bear such an instrument. Certainly it is not within judicial notice that this
weapon is any part of the ordinary military equipment or that its use could
contribute to the common defense. (*United States* v. *Miller*, 307 U.S. 174, 178
(1939).)

For many years following the Supreme Court's decision in *United States vs.
Miller*, the orthodox opinion among academics and federal appeals courts alike
was that the Second Amendment to the United States Constitution did not protect
possession of firearms unrelated to service in the lawfully established militia.
(Merkel, *Parker v. District of Columbia and the Hollowness of the Originalist
Claims to Principled Neutrality*, 18 Geo. Mason U. Civil Right L. Journal, 251,
251.)

(More)

That changed in June 2008, when the United States Supreme Court ruled in *District of Columbia vs. Heller* that a District of Columbia complete ban on possession of a handgun in the home was an unconstitutional violation of the Second Amendment. (*District of Columbia v. Heller* (2008) 128 S. Ct. 2783, 2797.) After a lengthy discussion of the historical context and meaning of the Second Amendment, the Court stated:

> Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.' As we said in *United States v. Cruikshank* [citation omitted] '[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The Second Amendment declares that it shall not be infringed ...' " (*Heller* at 2797.)

However, in the *Heller* decision, the Supreme Court also stated:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. n26
>
> FOOTNOTES
> n26 We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive. (*District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2816-2817 (2008), citations omitted.)

Therefore, while the *Heller* decision established that the right to own a firearm is a personal right, not one limited to ownership while serving in a "well-regulated militia," it also held that the government may place reasonable restrictions on that right such as restricting "carrying

RJN Ex. 1 -044

firearms in sensitive places." It is not clear whether the Supreme Court would include in its list
of lawful regulatory measures prohibiting the open carrying of unloaded handguns in public.

## IS A BAN ON OPEN CARRYING OF HANDGUNS IN PUBLIC CONSTITUTIONAL?

### 4. Arguments in Support

The Peace Officer Research Association of California states:

> The practice by individuals and organizations to "openly carry" firearms in public
> places in order to challenge law enforcement and firearm statutes in California is
> increasing in frequency. While PORAC understands that most of these open
> carry demonstrations are being done by law abiding citizens, it places law
> enforcement and the public in a precarious and possibly dangerous situation.
> Most often, law enforcement is called to the scene based on a citizen or merchant
> complaint. When the officer arrives at the scene, it is their obligation to question
> those persons carrying the firearms and to inquire as to whether the firearm is
> loaded. Until that officer has physically seen if the firearm is loaded, that officer
> must assume that their lives and the lives of those around them may be in danger.

> Again, these situations are potentially dangerous and should not occur in a public
> place wherein any number of things could go wrong. We believe this bill will be
> very helpful in preventing these potentially unsafe incidents from happening.

### 5. Arguments in Opposition

The National Rifle Association and the California Rifle and Pistol Association state:

> By denying individuals the ability to carry an unloaded firearm, SB 144 directly
> violates the constitutional right to keep and bear arms for self-defense. We urge
> you to oppose this attack on the rights of the law abiding population to carry a
> firearm in case of a self-defense emergency should they so choose.

> In addition, we write to notify you that the problems facing SB 144 are
> compounded by the current state of California's concealed carry weapons (CCW)
> permitting system. Should AB 144 pass, it will wreak havoc on California's CCW
> permitting system. In most areas of California, CCW permits are rarely issued,
> and are usually reserved for those with political clout and the wealthy elite.
> Because of this reality, "open carrying" is the only method available to the
> overwhelming majority of law-abiding individuals who wish to carry a firearm for
> self-defense. Accordingly, by banning the open carrying of even unloaded
> firearms, SB 144 effectively shuts the door on the ability of law-abiding
> Californians to carry a firearm for self-defense at all.

*****************

Case 2:16-cv-06164-0765-RSD Document 45-66-2 Filed 09/11/21 Page 49 of 136 Page ID #:894

ASSEMBLY THIRD READING
AB 144 (Portantino and Ammiano)
As Amended May 2, 2011
Majority vote

| PUBLIC SAFETY | 5-2 | APPROPRIATIONS | 12-5 |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Ayes: | Ammiano, Cedillo, Hill, Mitchell, Yamada | Ayes: | Fuentes, Blumenfield, Bradford, Charles Calderon, Campos, Davis, Gatto, Hall, Hill, Lara, Mitchell, Solorio |
| Nays: | Knight, Hagman | Nays: | Harkey, Donnelly, Nielsen, Norby, Wagner |

SUMMARY: Makes it a misdemeanor for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. Specifically, this bill:

1) Makes it a misdemeanor punishable by imprisonment in the county jail not to exceed six months, by a fine not to exceed $1,000, or by both a fine and imprisonment for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person, or when that person carries and exposed and unlocked handgun inside or on a vehicle, whether or not is in on his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county.

2) Makes the crime of openly carrying an unloaded handgun punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed $1,000, or by that fine and imprisonment if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm.

3) States that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

4) Provides that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

5) States that notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a separate and distinct offense.

6) States that the open carrying of an unloaded handgun does not apply to the carrying of an unloaded handgun if the handgun is carried either in the locked trunk of a motor vehicle or in a locked container.

7) Provides that the crime of openly carrying an unloaded handgun does not apply to, or affect, the following:

   a) The open carrying of an unloaded handgun by any peace officer or by an honorably retired peace officer authorized to carry a handgun;

   b) The open carrying of an unloaded handgun by any person authorized to carry a loaded handgun;

   c) The open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative of that business;

   d) The open carrying of an unloaded handgun by duly authorized military or civil organizations while parading, or the members thereof when at the meeting places of their respective organizations;

   e) The open carrying of an unloaded handgun by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range;

   f) The open carrying of an unloaded handgun by a licensed hunter while engaged in lawful hunting;

   g) The open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law;

   h) The open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization;

   i) The open carrying of an unloaded handgun within a gun show;

   j) The open carrying of an unloaded handgun within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority;

   k) The open carrying of an unloaded handgun when in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol;

   l) The open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest;

   m) The open carrying of an unloaded handgun incident to loaning, selling, or transferring the same, so long as that handgun is possessed within private property and the possession and

Case 2:16-cv-06164-JAK-AS Document 45-6 Filed 09/11/17 Page 51 of 136 Page ID #:896

carrying is with the permission of the owner or lessee of that private property;

n) The open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training;

o) The open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event;

p) The open carrying of an unloaded handgun incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);

q) The open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer;

r) The open carrying of an unloaded handgun incident to a private party transfer through a licensed firearms dealer;

s) The open carrying of an unloaded handgun by a person in the scope and course of training by an individual to become a sworn peace officer;

t) The open carrying of an unloaded handgun in the course and scope of training to in order to be licensed to carry a concealed weapon;

u) The open carrying of an unloaded handgun at the request of a sheriff or chief or other head of a municipal police department;

v) The open carrying of an unloaded handgun within a place of business, within a place of residence, or on private property if done with the permission of the owner or lawful possessor of the property; and,

w) The open carrying of an unloaded handgun when all of the following conditions are satisfied:

   i) The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

   ii) The unloaded handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation;

   iii) The unloaded handgun is delivered by a licensed dealer;

RJN Ex. 1 -048

iv) The open carrying of an unloaded handgun does not apply to person authorized to carry handguns in the State Capitol or residences of the Governor or other constitutional officers; and,

v) The open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.

8) Makes conforming and nonsubstantive technical changes.

FISCAL EFFECT: According to the Assembly Appropriations Committee, unknown, likely minor, non-state-reimbursable local law enforcement and incarceration costs, offset to a degree by increased fine revenue.

COMMENTS: According to the author, "The absence of a prohibition on 'open carry' has created an increase in problematic instances of guns carried in public, alarming unsuspecting individuals causing issues for law enforcement.

"Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

"In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation, the practice of 'open carry' creates an unsafe environment for all parties involved: the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

Please see the policy committee for a full discussion of this bill.

Analysis Prepared by: Gregory Pagan / PUB. S. / (916) 319-3744

FN: 0000523

Date of Hearing: May 4, 2011

## ASSEMBLY COMMITTEE ON APPROPRIATIONS
### Felipe Fuentes, Chair

AB 144 (Portantino) — As Amended: May 2, 2011

Policy Committee: Public Safety        Vote:   5-2

Urgency: No     State Mandated Local Program: Yes     Reimbursable:   No

### SUMMARY

This bill makes it a misdemeanor to carry an exposed and unloaded handgun in a public place ('open carry'). Specifically, this bill:

1) Makes it a misdemeanor punishable by up to six months in county jail and/or a fine of up to $1,000, to carry an exposed and unloaded handgun while in a public place.

2) Creates a lengthy series of exceptions to the prohibition on open carry, including peace officers, range shooting, hunters engaged in lawful hunting, incidental transport, gun shows, entertainment props, etc.

3) Makes a series of conforming and nonsubstantive changes.

### FISCAL EFFECT

Unknown, likely minor, non-state-reimbursable local law enforcement and incarceration costs, offset to a degree by increased fine revenue.

### COMMENTS

1) <u>Rationale.</u> The author and proponents contend the absence of a prohibition on open carry has created a surge in problematic instances of guns carried in public, alarming people and causing issues for law enforcement. According to the author:

"Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

"In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation, the practice of 'open carry' creates an unsafe environment for all parties involved: the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in 'open carry' calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

**RJN Ex. 1 -050**

2) Current law specifies that carrying a loaded gun or a concealed gun is generally a misdemeanor, punishable by up to one year in a county jail and/or a fine of up to $1,000. There are circumstances, however, where the penalty may be a wobbler if the offender has a specified prior conviction.

3) Supporters, including the Police Chiefs Association, the Peace Officer Research Association of CA (PORAC), the CA chapters of the Brady Campaign to Prevent Gun Violence, and the Legal Community Against Violence, contend that in recent years, members of the so-called 'open carry movement' have held open carry events in public places such as coffee shops, restaurants, and public parks. Open carry intimidates the public, wastes law enforcement resources, and increases the potential for death and injury.

According to the Legal Community Against Violence, "Although California law requires openly carried firearms to remain unloaded, this does little to improve public safety, since state law also permits the carrying of ammunition. The ability to carry firearms and ammunition makes the distinction between loaded and unloaded weapons almost meaningless, as open carry advocates have boasted about their abilities to load their weapons in a matter of seconds."

4) Opponents, including various gun owner organizations, contend this bill is part of a continuing effort to disarm the public. According to the Gun Owners of California in their opposition to a similar bill last year, "We believe that a ban on 'open carrying' of unloaded handguns will bring a chilling effect on the constitutional rights of all citizens. Since the Second Amendment includes both the right to keep and bear arms, the government of California is going to have to come to grips as to how bearing will take place. As long as Carry Concealed Weapons Permits (CCWs) are not available to the vast majority of law-abiding citizens in California, the only other option is open carry.

"The argument that citizens legally expressing their rights causes some to be intimidated or uncomfortable is a vapid excuse for curtailing both the First and Second Amendment rights of any citizen. It may make some people feel uncomfortable or intimidated to hear someone espousing communist or nazi or racist beliefs in the public square, but as long as they are not breaking the law by exercising their hate-filled beliefs into actual subversion of the country, their rights of free speech, no matter how detestable, are protected even if it makes some people uncomfortable. That is freedom!"

5) Similar legislation, AB 1934 (Saldana), 2010, passed the Assembly 46-30, passed the Senate 21-16, and died on the Assembly floor on concurrence when the 2009-10 session expired.

Analysis Prepared by: Geoff Long / APPR. / (916) 319-2081

RJN Ex. 1 -051

Date of Hearing: April 12, 2011
Chief Counsel: Gregory Pagan

### ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Tom Ammiano, Chair

AB 144 (Portantino) – As Introduced: January 13, 2011

SUMMARY: Makes it a misdemeanor for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. Specifically, this bill:

1) Makes it a misdemeanor punishable by imprisonment in the county jail not to exceed six months, by a fine not to exceed $1,000, or by both a fine and imprisonment for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county.

2) Makes the crime of openly carrying an unloaded handgun punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed $1,000, or by that fine and imprisonment if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm.

3) States that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

4) Provides that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

5) States that notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a separate and distinct offense.

6) Provides that the crime of openly carrying an unloaded handgun does not apply to, or affect, the following:

   a) The open carrying of an unloaded handgun by any peace officer or by an honorably retired peace officer authorized to carry a handgun;

   b) The open carrying of an unloaded handgun by any person authorized to carry a loaded handgun;

   c) The open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is

RJN Ex. 1 -052

licensed to engaged in that business or an authorized representative of that business;

d) The open carrying of an unloaded handgun by duly authorized military or civil organizations while parading, or the members thereof when at the meeting places of their respective organizations;

e) The open carrying of an unloaded handgun by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range;

f) The open carrying of an unloaded handgun by a licensed hunter while engaged in lawful hunting;

g) The open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law;

h) The open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization;

i) The open carrying of an unloaded handgun within a gun show;

j) The open carrying of an unloaded handgun within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority;

k) The open carrying of an unloaded handgun when in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol;

l) The open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest;

m) The open carrying of an unloaded handgun incident to loaning, selling, or transferring the same, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property;

n) The open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training;

o) The open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or

**RJN Ex. 1 -053**

agent is at that production event;

p)  The open carrying of an unloaded handgun incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);

q)  The open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer; or,

r)  The open carrying of an unloaded handgun incident to a private party transfer through a licensed firearms dealer;

s)  The open carrying of an unloaded handgun by a person in the scope and course of training by an individual to become a sworn peace officer;

t)  The open carrying of an unloaded handgun in the course and scope of training to in order to be licensed to carry a concealed weapon;

u)  The open carrying of an unloaded handgun at the request of a sheriff or chief or other head of a municipal police department;

v)  The open carrying of an unloaded handgun within a place of business, within a place of residence, or on private property if done with the permission of the owner or lawful possessor of the property;

w)  The open carrying of an unloaded handgun when all of the following conditions are satisfied:

   i)   The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities.

   ii)  The unloaded handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation.

   iii) The unloaded handgun is delivered by a licensed dealer.

   iv)  The open carrying of an unloaded handgun does not apply to person authorized to carry handguns in the State Capitol or residences of the Governor or other constitutional officers.

   v)   The open carrying of an unloaded handgun on publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.

7)  The offense of openly carrying an unloaded handgun if all of the following apply:

   a) The handgun is carried on a public street or in a public place in a prohibited area of an unincorporated area of a county that is less than 200,000 persons, as specified.

   b) The person carrying the handgun is the registered owner of the handgun.

   c) The area where that person is carrying that handgun is not a public street or a public place in a prohibited area of an unincorporated territory of a county where that unincorporated area is completely bordered by an incorporated city.

8) Makes conforming and nonsubstantive technical changes.

EXISTING LAW:

1) Defines "handgun" as any "pistol," "revolver," or "firearm capable of being concealed upon the person." [Penal Code Section 12001(a)(2).]

2) Provides, except as otherwise provided, that a person is guilty of carrying a concealed firearm when he or she:

   a) Carries concealed within any vehicle which is under his or her control or direction any pistol, revolver, or other firearm capable of being concealed upon the person;

   b) Causes to be concealed within any vehicle in which the person is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person; or,

   c) Carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person. [Penal Code Section 12025(a).]

3) Provides that carrying a concealed firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or by both the fine and imprisonment. However, there are six circumstances where the penalty may be punishable as a felony or alternate felony-misdemeanor:

   a) A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;

   b) A felony where the firearm is stolen and the person knew, or had reasonable cause to believe, that the firearm was stolen;

   c) A felony where the person is an active participant in a criminal street gang;

   d) A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;

   e) An alternate felony-misdemeanor where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation; and,

   f) An alternate felony-misdemeanor where:

RJN Ex. 1 -055

    i) Both the concealable firearm and the unexpended ammunition for that firearm are either in the immediate possession of the person or readily available to that person or where the firearm is loaded; and,

    ii) The person is not listed with the DOJ as the registered owner of the firearm. [Penal Code Section 12025(b).]

4) Provides a number of exceptions and limitations to the prohibition on carrying a concealed firearm including methods to lawfully carry firearms in a vehicle, a home, or a business, etc. (Penal Code Sections 12025.5, 12026, 12026.1, 12026.2, 12027, and 12050.)

5) Defines a "loaded firearm" as "when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder." [Penal Code Section 12031(g).]

6) Prohibits the carrying of a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or a prohibited area of unincorporated territory. The penalty provisions for this prohibition are substantially similar to those provided in Penal Code Section 12025(b) and provide numerous exceptions and limitation to this prohibition. (Penal Code Section 12031.)

7) Provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or by both the fine and imprisonment. However, there are six circumstances where the penalty may be punishable as a felony or alternate felony-misdemeanor:

    a) A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;

    b) A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen;

    c) A felony where the person is an active participant in a criminal street gang;

    d) A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;

    e) An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.

    f) An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the DOJ as the

RJN Ex. 1 -056

registered owner of the firearm. [Penal Code Section 12031(b).]

8) Prohibits a person, without appropriate permission, as specified, from possessing a firearm within an area that the person knew or reasonably should have known was a "school zone", defined as an area in or on the grounds of or within 1,000 feet of the grounds of any public or private K-12 school. (Penal Code Section 629.9.)

9) Provides that any person who has ever been convicted of a felony and who owns or has in his or her possession or under his or her custody or control a firearm is guilty of a felony, punishable by 16 months, 2 or 3 years in prison. [Penal Code Section 12021(b).]

10) Provides that every person who, except in self-defense, draws or exhibits any firearm in public, loaded or unloaded, in the presence of another person, in a rude, angry or threatening manner is guilty of a misdemeanor and shall be imprisoned for not less than three months nor more than one year in the county jail; fined $1,000; or both. [Penal Code Section 417(a).]

11) Provides that every person who, except in self-defense, draws or exhibits any firearm, loaded or unloaded, in a rude, angry or threatening manner in public, in the presence of a peace officer, who a reasonable person would know was in the performance of his or her duty, is guilty of an alternate misdemeanor/felony and shall be imprisoned for not less than nine months and up to one year in the county jail or in the state prison for 16 months, 2 or 3 years. [Penal Code Section 417(c).]

FISCAL EFFECT: Unknown

COMMENTS:

1) Author' Statement: According to the author, "The absence of a prohibition on 'open carry' has created an increase in problematic instances of guns carried in public, alarming unsuspecting ting individuals causing issues for law enforcement.

"Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

"In these tense situations, the slightest wrong move by the gun carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation, the practice of 'open carry' creates an unsafe environment for all parties involved: the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in 'open carry' calls has placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

2) Argument in Support: According to the Legal Community Against Violence, "Over the past two years, members of the so-called 'open carry movement' have held numerous carrying events in public places like coffee shops, restaurants, and public parks. These events have shocked Californians statewide, because the open carrying of handguns creates serious public

RJN Ex. 1 -057

safety concerns. Open carrying intimidates the public, wastes law enforcement resources, and presents opportunities for injury and death due to the accidental or intentional use of firearms. This conduct needlessly increases the likelihood that everyday interpersonal conflicts will turn into deadly shootouts.

"Open carrying poses particular challenges for law enforcement officers who must respond to 911 calls from concerned citizens about people carrying guns in public. A state issued by the San Mateo County Sheriff's Office described the significant dangers that open carrying creates:

" 'Open carry create a potentially very dangerous situation. When police are called to a "man with a gun" call they typically are responding to a situation about which they have few details other than that one or more people are present at a location and are armed. . . . Consequently, the law enforcement response is one of "hypervigilant urgency" in order to protect the public from an armed threat. Should the gun carrying person fail to comply with a law enforcement instruction or move in a way that could be construed as threatening, the police are forced to respond in kind for their own protection. . . . Simply put, it is not recommended to open carry firearms.'

"Although California law requires openly carried firearms to remain unloaded, this does little to improve public safety, since state law also permits the carrying of ammunition. The ability to carry firearms and ammunition makes the distinction between loaded and unloaded weapons almost meaningless, as open carry advocates have boasted about their abilities to load their weapons in a matter of seconds."

3) <u>Argument in Opposition</u>: According to the <u>National Rifle Association</u>, "Should AB 144 pass, it will wreak havoc on CA's California's concealed weapons (CCW) permitting system. In most areas of California, CCW permits are rarely issued, and are a usually reserved for those with political clout and the wealthy elite. Because of this reality, 'open carrying' is the only method available to the overwhelming majority of law-abiding individuals who wish to carry a firearm for self-defense. Accordingly, by banning the open carrying of even unloaded firearms, AB 144 effectively shuts the door on the ability of law-abiding Californians to carry a firearm for self-defense at all.

"In fact, a recent 9th Circuit District Court decision expressly relied on the ability to 'open carry' as the basis for its decision to uphold the government's current policy denying CCW application unless the applicant demonstrates some special need or 'good cause' beyond that of general self-defense.

"In that case, *Peruta v. County of San Diego*, several Plaintiffs challenged the government's CCW permitting scheme. The suit alleged that the permitting scheme violated the Second Amendment because CCW applications are typically denied where the applicant identifies only a generalized self-defense need as the 'good cause' required by Cal. Pen. Code section 12050. And even though the Second Amendment requires the government to afford law abiding citizens the ability to 'bear' or 'carry' firearms for self-defense — without discretion as to who may be qualified to exercise that right — the Court ruled that the County's policy of requiring specific threats of harm, as opposed to general 'self-defense' need, did not violate the Second Amendment because the state *already* authorizes constitutional means of carrying a firearm for self-defense. That means of carry is found in section 12031, which permits the

carrying of an unloaded firearm that may be loaded by the individual in a self-defense emergency.

" '[A]s a practical matter, should the need for self-defense arise, nothing in section 12031[(j)] restricts the open carry of unloaded firearms and ammunition for instant loading.' . . . 'As a consequence, the Court declines to assume that section 12031 places an unlawful burden on the right to carry a firearm for self-defense..."

" '(Order Denying Plaintiff's Motion for Partial Summary Adjudication and Granting Defendant's Motion for Summary Judgment at 8:8-10, 8:21-22, *Peruta v. County of San Diego*, No. 09-2371 (S.D. Cal. 2010).'

"If not for the lawful ability to openly carry a firearm that may be loaded for self-defense, the County's entire CCW scheme of requiring 'good cause' beyond that of self-defense would have been ruled unconstitutional in *Peruta*."

## REGISTERED SUPPORT / OPPOSITION:

### Support

California Chapters of the Brady Campaign to Prevent Gun Violence
California Police Chiefs Association, Inc.
City of West Hollywood
Friends Committee on Legislation of California
Legal Community Against Violence
Peace Officer Research Association of California

### Opposition

Bay Area Open Carry Movement
California Rifle and Pistol Association
Californians for Natural Rights
Capitol Resource Family Impact
Contra Costa Open Carry
Gun Owners of California
Intelligent Recycling Solutions
National Rifle Association
Responsible Citizens of California
South Bay Open Carry
131 private individuals

Analysis Prepared by:   Gregory Pagan / PUB. S. / (916) 319-3744

RJN Ex. 1 -059

# EXHIBIT 2

RJN Ex. 2 -001

Bill Text - AB-1527 Firearms.



California
LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

**AB-1527 Firearms.** (2011-2012)

SHARE THIS: 

### Assembly Bill No. 1527

### CHAPTER 700

An act to amend Sections 7574.14 and 7582.2 of the Business and Professions Code, and to amend Sections 626.92, 16520, 16750, 16850, and 17295 of, to add Sections 16505, 26366.5, 26390, and 26391 to, and to add Chapter 7 (commencing with Section 26400) to Division 5 of Title 4 of Part 6 of, the Penal Code, relating to firearms.

[ Approved by Governor September 28, 2012. Filed with Secretary of State September 28, 2012. ]

### LEGISLATIVE COUNSEL'S DIGEST

AB 1527, Portantino. Firearms.

Existing law prohibits, with exceptions, a person from possessing a firearm in a place that the person knows or reasonably should know is a school zone, as defined.

This bill would, additionally, exempt a security guard authorized to openly carry an unloaded firearm that is not a handgun and an honorably retired peace officer authorized to openly carry an unloaded firearm that is not a handgun from that prohibition.

Existing law, subject to certain exceptions, makes it an offense for a person to carry an exposed and unloaded handgun on his or her person outside a motor vehicle or inside or on a motor vehicle in public areas and public streets, as specified.

This bill would exempt a person from the crime of openly carrying an unloaded handgun if he or she is in compliance with specified provisions relating to carrying a handgun in an airport or city and county and open carrying of an unloaded handgun by a licensed hunter while actually engaged in training a hunting dog or while transporting the handgun while going to or from that training.

This bill would, subject to exceptions, make it a misdemeanor for a person to carry an unloaded firearm that is not a handgun on his or her person outside a motor vehicle in an incorporated city or city and county and would make it a misdemeanor with specified penalties if a person carries an unloaded firearm that is not a handgun outside a motor vehicle in an incorporated city or city and county and the person at the same time possesses ammunition capable of being discharged from the unloaded firearm that is not a handgun, and the person is not in lawful possession of the unloaded firearm that is not a handgun, as specified.

By creating a new offense, and expanding the scope of existing crimes, this bill would impose a state-mandated local program.

The bill would make conforming technical changes.

This bill would incorporate additional changes to Section 16520 of the Penal Code proposed by SB 1366, that would become operative only if SB 1366 and this bill are both enacted, both bills become effective on or before January 1, 2013, and this bill is enacted last.

RJN Ex. 2 -002

Case 2:16-cv-08164-CAS-AFM Document 161-1 Filed 10/11/21 Page 3 of 65 Page ID #:910

Bill Text - AB-1527 Firearms.                                                    Page 2 of 12

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority   Appropriation: no   Fiscal Committee: yes   Local Program: yes

## THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

**SECTION 1.** Section 7574.14 of the Business and Professions Code is amended to read:

**7574.14.** This chapter shall not apply to the following:

(a) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in a calendar month.

(b) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(c) A charitable philanthropic society or association incorporated under the laws of this state that is organized and duly maintained for the public good and not for private profit.

(d) Patrol special police officers appointed by the police commission of a city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(e) An attorney at law in performing his or her duties as an attorney at law.

(f) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(g) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them.

(h) A bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of Currency of the United States.

(i) A person engaged solely in the business of securing information about persons or property from public records.

(j) A peace officer of this state or a political subdivision thereof while the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt such a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

(k) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where the employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may not carry an unloaded and exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, may not carry an unloaded firearm that is not a handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26405) of Chapter 7 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Sections 25450 to 25475, inclusive, of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in subdivision (d) of

RJN Ex. 2 -003

Case 2:16-cv-03057-RSC Document 161 Filed 01/11/21 Page 4 of 66 Page ID #:911

Bill Text - AB-1527 Firearms.                                    Page 3 of 12

Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(l) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

(m) A savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(n) A secured creditor engaged in the repossession of the creditor's collateral and a lessor engaged in the repossession of leased property in which it claims an interest.

(o) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

(p) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses a deadly weapon, as defined in subdivision (a), in the performance of his or her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

(q) An armored contract carrier operating armored vehicles pursuant to the authority of the Department of the California Highway Patrol or the Public Utilities Commission, or an armored vehicle guard employed by an armored contract carrier.

**SEC. 2.** Section 7582.2 of the Business and Professions Code is amended to read:

**7582.2.** This chapter does not apply to the following:

(a) A person who does not meet the requirements to be a proprietary private security officer, as defined in Section 7574.01, and is employed exclusively and regularly by an employer who does not provide contract security services for other entities or persons, in connection with the affairs of the employer only and where there exists an employer-employee relationship if that person at no time carries or uses a deadly weapon in the performance of his or her duties. For purposes of this subdivision, "deadly weapon" is defined to include an instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, metal knuckles, a dirk, dagger, pistol, revolver, or any other firearm, a knife having a blade longer than five inches, a razor with an unguarded blade, and a metal pipe or bar used or intended to be used as a club.

(b) An officer or employee of the United States of America, or of this state or a political subdivision thereof, while the officer or employee is engaged in the performance of his or her official duties, including uniformed peace officers employed part time by a public agency pursuant to a written agreement between a chief of police or sheriff and the public agency, provided the part-time employment does not exceed 50 hours in any calendar month.

(c) A person engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons.

(d) A charitable philanthropic society or association duly incorporated under the laws of this state that is organized and maintained for the public good and not for private profit.

(e) Patrol special police officers appointed by the police commission of a city, county, or city and county under the express terms of its charter who also under the express terms of the charter (1) are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial, (2) must be not less than 18 years of age nor more than 40 years of age, (3) must possess physical qualifications prescribed by the commission, and (4) are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

**RJN Ex. 2 -004**

(f) An attorney at law in performing his or her duties as an attorney at law.

(g) A collection agency or an employee thereof while acting within the scope of his or her employment, while making an investigation incidental to the business of the agency, including an investigation of the location of a debtor or his or her property where the contract with an assignor creditor is for the collection of claims owed or due or asserted to be owed or due or the equivalent thereof.

(h) Admitted insurers and agents and insurance brokers licensed by the state, performing duties in connection with insurance transacted by them.

(i) A bank subject to the jurisdiction of the Commissioner of Financial Institutions of the State of California under Division 1 (commencing with Section 99) of the Financial Code or the Comptroller of the Currency of the United States.

(j) A person engaged solely in the business of securing information about persons or property from public records.

(k) A peace officer of this state or a political subdivision thereof while the peace officer is employed by a private employer to engage in off-duty employment in accordance with Section 1126 of the Government Code. However, nothing herein shall exempt a peace officer who either contracts for his or her services or the services of others as a private patrol operator or contracts for his or her services as or is employed as an armed private security officer. For purposes of this subdivision, "armed security officer" means an individual who carries or uses a firearm in the course and scope of that contract or employment.

(l) A retired peace officer of the state or political subdivision thereof when the retired peace officer is employed by a private employer in employment approved by the chief law enforcement officer of the jurisdiction where the employment takes place, provided that the retired officer is in a uniform of a public law enforcement agency, has registered with the bureau on a form approved by the director, and has met any training requirements or their equivalent as established for security personnel under Section 7583.5. This officer may not carry an unloaded and exposed handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 of Part 6 of the Penal Code, may not carry an unloaded firearm that is not a handgun unless he or she is exempted under the provisions of Article 2 (commencing with Section 26405) of Chapter 7 of Division 5 of Title 4 of Part 6 of the Penal Code, and may not carry a loaded or concealed firearm unless he or she is exempted under the provisions of Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4 of Part 6 of the Penal Code or Sections 25900 to 25910, inclusive, of the Penal Code or has met the requirements set forth in subdivision (d) of Section 26030 of the Penal Code. However, nothing herein shall exempt the retired peace officer who contracts for his or her services or the services of others as a private patrol operator.

(m) A licensed insurance adjuster in performing his or her duties within the scope of his or her license as an insurance adjuster.

(n) A savings association subject to the jurisdiction of the Commissioner of Financial Institutions or the Office of Thrift Supervision.

(o) A secured creditor engaged in the repossession of the creditor's collateral and a lessor engaged in the repossession of leased property in which it claims an interest.

(p) A peace officer in his or her official police uniform acting in accordance with subdivisions (c) and (d) of Section 70 of the Penal Code.

(q) An unarmed, uniformed security person employed exclusively and regularly by a motion picture studio facility employer who does not provide contract security services for other entities or persons in connection with the affairs of that employer only and where there exists an employer-employee relationship if that person at no time carries or uses a deadly weapon, as defined in subdivision (a), in the performance of his or her duties, which may include, but are not limited to, the following business purposes:

(1) The screening and monitoring access of employees of the same employer.

(2) The screening and monitoring access of prearranged and preauthorized invited guests.

(3) The screening and monitoring of vendors and suppliers.

(4) Patrolling the private property facilities for the safety and welfare of all who have been legitimately authorized to have access to the facility.

RJN Ex. 2 -005

Case 2:16-cv-04357-RSC Document 45-1 161 Filed 10/11/21 Page 68 of 136 Page ID #:913

Bill Text - AB-1527 Firearms.                                                    Page 5 of 12

(r) The changes made to this section by the act adding this subdivision during the 2005-06 Regular Session of the Legislature shall apply as follows:

(1) On and after July 1, 2006, to a person hired as a security officer on and after January 1, 2006.

(2) On and after January 1, 2007, to a person hired as a security officer before January 1, 2006.

**SEC. 3.** Section 626.92 of the Penal Code is amended to read:

**626.92.** Section 626.9 does not apply to or affect any of the following:

(a) A security guard authorized to openly carry an unloaded handgun pursuant to Chapter 6 (commencing with Section 26350) of Division 5 of Title 4 of Part 6.

(b) An honorably retired peace officer authorized to openly carry an unloaded handgun pursuant to Section 26361.

(c) A security guard authorized to openly carry an unloaded firearm that is not a handgun pursuant to Chapter 7 (commencing with Section 26400) of Division 5 of Title 4 of Part 6.

(d) An honorably retired peace officer authorized to openly carry an unloaded firearm that is not a handgun pursuant to Section 26405.

**SEC. 4.** Section 16505 is added to the Penal Code, to read:

**16505.** For purposes of Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, a firearm is "encased" when that firearm is enclosed in a case that is expressly made for the purpose of containing a firearm and that is completely zipped, snapped, buckled, tied, or otherwise fastened with no part of that firearm exposed.

**SEC. 5.** Section 16520 of the Penal Code is amended to read:

**16520.** (a) As used in this part, "firearm" means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion.

(b) As used in the following provisions, "firearm" includes the frame or receiver of the weapon:

(1) Section 16550.

(2) Section 16730.

(3) Section 16960.

(4) Section 16990.

(5) Section 17070.

(6) Section 17310.

(7) Sections 26500 to 26588, inclusive.

(8) Sections 26600 to 27140, inclusive.

(9) Sections 27400 to 28000, inclusive.

(10) Section 28100.

(11) Sections 28400 to 28415, inclusive.

(12) Sections 29010 to 29150, inclusive.

(13) Sections 29610 to 29750, inclusive.

(14) Sections 29800 to 29905, inclusive.

(15) Sections 30150 to 30165, inclusive.

(16) Section 31615.

(17) Sections 31705 to 31830, inclusive.

**RJN Ex. 2 -006**

Case 2:16-cv-04357-RGK-PLA Document 45-1 Filed 10/11/21 Page 69 of 136 Page ID #:914

Bill Text - AB-1527 Firearms.                                          Page 6 of 12

(18) Sections 34355 to 34370, inclusive.

(19) Sections 8100, 8101, and 8103 of the Welfare and Institutions Code.

(c) As used in the following provisions, "firearm" also includes a rocket, rocket propelled projectile launcher, or similar device containing an explosive or incendiary material, whether or not the device is designed for emergency or distress signaling purposes:

(1) Section 16750.

(2) Subdivision (b) of Section 16840.

(3) Section 25400.

(4) Sections 25850 to 26025, inclusive.

(5) Subdivisions (a), (b), and (c) of Section 26030.

(6) Sections 26035 to 26055, inclusive.

(d) As used in the following provisions, "firearm" does not include an unloaded antique firearm:

(1) Subdivisions (a) and (c) of Section 16730.

(2) Section 16550.

(3) Section 16960.

(4) Section 17310.

(5) Chapter 6 (commencing with Section 26350) of Division 5 of Title 4.

(6) Chapter 7 (commencing with Section 26400) of Division 5 of Title 4.

(7) Sections 26500 to 26588, inclusive.

(8) Sections 26700 to 26915, inclusive.

(9) Section 27510.

(10) Section 27530.

(11) Section 27540.

(12) Section 27545.

(13) Sections 27555 to 27570, inclusive.

(14) Sections 29010 to 29150, inclusive.

(e) As used in Sections 34005 and 34010, "firearm" does not include a destructive device.

(f) As used in Sections 17280 and 24680, "firearm" has the same meaning as in Section 922 of Title 18 of the United States Code.

(g) As used in Sections 29010 to 29150, inclusive, "firearm" includes the unfinished frame or receiver of a weapon that can be readily converted to the functional condition of a finished frame or receiver.

**SEC. 5.5.** Section 16520 of the Penal Code is amended to read:

**16520.** (a) As used in this part, "firearm" means a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion.

(b) As used in the following provisions, "firearm" includes the frame or receiver of the weapon:

(1) Section 16550.

(2) Section 16730.

(3) Section 16960.

**RJN Ex. 2 -007**

Case 2:16-cv-01164-JAK-AS Document 45-1 Filed 10/11/21 Page 70 of 136 Page ID #:915

Bill Text - AB-1527 Firearms.                                                                                    Page 7 of 12

(4) Section 16990.

(5) Section 17070.

(6) Section 17310.

(7) Sections 25250 to 25256, inclusive.

(8) Sections 26500 to 26588, inclusive.

(9) Sections 26600 to 27140, inclusive.

(10) Sections 27400 to 28000, inclusive.

(11) Section 28100.

(12) Sections 28400 to 28415, inclusive.

(13) Sections 29010 to 29150, inclusive.

(14) Sections 29610 to 29750, inclusive.

(15) Sections 29800 to 29905, inclusive.

(16) Sections 30150 to 30165, inclusive.

(17) Section 31615.

(18) Sections 31705 to 31830, inclusive.

(19) Sections 34355 to 34370, inclusive.

(20) Sections 8100, 8101, and 8103 of the Welfare and Institutions Code.

(c) As used in the following provisions, "firearm" also includes a rocket, rocket propelled projectile launcher, or similar device containing an explosive or incendiary material, whether or not the device is designed for emergency or distress signaling purposes:

(1) Section 16750.

(2) Subdivision (b) of Section 16840.

(3) Section 25400.

(4) Sections 25850 to 26025, inclusive.

(5) Subdivisions (a), (b), and (c) of Section 26030.

(6) Sections 26035 to 26055, inclusive.

(d) As used in the following provisions, "firearm" does not include an unloaded antique firearm:

(1) Subdivisions (a) and (c) of Section 16730.

(2) Section 16550.

(3) Section 16960.

(4) Section 17310.

(5) Sections 25250 to 25256, inclusive.

(6) Chapter 6 (commencing with Section 26350) of Division 5 of Title 4.

(7) Chapter 7 (commencing with Section 26400) of Division 5 of Title 4.

(8) Sections 26500 to 26588, inclusive.

(9) Sections 26700 to 26915, inclusive.

(10) Section 27510.

(11) Section 27530.

RJN Ex. 2 -008

Case 2:16-cv-07357-RGK-PLA Document 61 Filed 10/11/21 Page 74 of 86 Page ID #:916

Bill Text - AB-1527 Firearms. Page 8 of 12

(12) Section 27540.

(13) Section 27545.

(14) Sections 27555 to 27570, inclusive.

(15) Sections 29010 to 29150, inclusive.

(e) As used in Sections 34005 and 34010, "firearm" does not include a destructive device.

(f) As used in Sections 17280 and 24680, "firearm" has the same meaning as in Section 922 of Title 18 of the United States Code.

(g) As used in Sections 29010 to 29150, inclusive, "firearm" includes the unfinished frame or receiver of a weapon that can be readily converted to the functional condition of a finished frame or receiver.

**SEC. 6.** Section 16750 of the Penal Code is amended to read:

**16750.** (a) As used in Section 25400, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully owns the firearm or has the permission of the lawful owner or a person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

(b) As used in Article 2 (commencing with Section 25850), Article 3 (commencing with Section 25900), and Article 4 (commencing with Section 26000) of Chapter 3 of Division 5 of Title 4, Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, and Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully acquired and lawfully owns the firearm or has the permission of the lawful owner or person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

**SEC. 7.** Section 16850 of the Penal Code is amended to read:

**16850.** As used in Sections 17740, 23925, 25105, 25205, and 25610, in Article 3 (commencing with Section 25505) of Chapter 2 of Division 5 of Title 4, in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, and in Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, "locked container" means a secure container that is fully enclosed and locked by a padlock, keylock, combination lock, or similar locking device. The term "locked container" does not include the utility or glove compartment of a motor vehicle.

**SEC. 8.** Section 17295 of the Penal Code is amended to read:

**17295.** (a) For purposes of Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, a handgun shall be deemed "unloaded" if it is not "loaded" within the meaning of subdivision (b) of Section 16840.

(b) For purposes of Chapter 7 (commencing with Section 26400) of Division 5 of Title 4, a firearm that is not a handgun shall be deemed "unloaded" if it is not "loaded" within the meaning of subdivision (b) of Section 16840.

**SEC. 9.** Section 26366.5 is added to the Penal Code, to read:

**26366.5.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

**SEC. 10.** Section 26390 is added to the Penal Code, to read:

**26390.** Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun in any of the following circumstances:

(a) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 1 (commencing with Section 18710) of Division 5 of Title 2 by a person who holds a permit issued pursuant to Article 3 (commencing with Section 18900) of that chapter, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit.

Case 2:16-cv-06164-JAK-AS Document 51-2 Filed 09/11/17 Page 72 of 136 Page ID #:917

Bill Text - AB-1527 Firearms.                                          Page 9 of 12

(b) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 2 (commencing with Section 30500) of Division 10 by a person who holds a permit issued pursuant to Section 31005, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit.

(c) The open carrying of an unloaded handgun that is regulated pursuant to Chapter 6 (commencing with Section 32610) of Division 10 by a person who holds a permit issued pursuant to Section 32650, if the carrying is conducted in accordance with the terms and conditions of the permit.

(d) The open carrying of an unloaded handgun that is regulated pursuant to Article 2 (commencing with Section 33300) of Chapter 8 of Division 10 by a person who holds a permit issued pursuant to Section 33300, if the carrying of that handgun is conducted in accordance with the terms and conditions of the permit.

**SEC. 11.** Section 26391 is added to the Penal Code, to read:

26391. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun when done in accordance with the provisions of subdivision (d) of Section 171.5.

**SEC. 12.** Chapter 7 (commencing with Section 26400) is added to Division 5 of Title 4 of Part 6 of the Penal Code, to read:

**CHAPTER 7. Carrying an Unloaded Firearm That is not a Handgun in an Incorporated City or City and County**
**Article 1. Crime of Carrying an Unloaded Firearm that is not a Handgun in an Incorporated City or City and County**

26400. (a) A person is guilty of carrying an unloaded firearm that is not a handgun in an incorporated city or city and county when that person carries upon his or her person an unloaded firearm that is not a handgun outside a vehicle while in the incorporated city or city and county.

(b) (1) Except as specified in paragraph (2), a violation of this section is a misdemeanor.

(2) A violation of subdivision (a) is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if the firearm and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not in lawful possession of that firearm.

(c) (1) Nothing in this section shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a penalty greater than is set forth in this section.

(2) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

(d) Notwithstanding the fact that the term "an unloaded firearm that is not a handgun" is used in this section, each individual firearm shall constitute a distinct and separate offense under this section.

**Article 2. Exemptions**

26405. Section 26400 does not apply to, or affect, the carrying of an unloaded firearm that is not a handgun in any of the following circumstances:

(a) By a person when done within a place of business, a place of residence, or on private property, if that person, by virtue of subdivision (a) of Section 25605, may carry a firearm within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.

(b) By a person when done within a place of business, a place of residence, or on private property, if done with the permission of a person who, by virtue of subdivision (a) of Section 25605, may carry a firearm within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.

(c) When the firearm is either in a locked container or encased and it is being transported directly between places where a person is not prohibited from possessing that firearm and the course of travel shall include only those deviations between authorized locations as are reasonably necessary under the circumstances.

(d) If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety. This paragraph may not apply when the circumstances involve a mutual restraining order issued pursuant to Division 10 (commencing with

Case 2:16-cv-06164-JAK-AS Document 51-2 Filed 09/11/17 Page 176 of 413 Page ID #:918

Bill Text - AB-1527 Firearms.                                              Page 10 of 12

Section 6200) of the Family Code absent a factual finding of a specific threat to the person's life or safety. Upon a trial for violating subdivision (a), the trier of fact shall determine whether the defendant was acting out of a reasonable belief that he or she was in grave danger.

(e) By a peace officer or an honorably retired peace officer if that officer may carry a concealed firearm pursuant to Article 2 (commencing with Section 25450) of Chapter 2, or a loaded firearm pursuant to Article 3 (commencing with Section 25900) of Chapter 3.

(f) By a person to the extent that person may openly carry a loaded firearm that is not a handgun pursuant to Article 4 (commencing with Section 26000) of Chapter 3.

(g) As merchandise by a person who is engaged in the business of manufacturing, importing, wholesaling, repairing, or dealing in firearms and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while engaged in the lawful course of the business.

(h) By a duly authorized military or civil organization, or the members thereof, while parading or while rehearsing or practicing parading, when at the meeting place of the organization.

(i) By a member of a club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a firearm that is not a handgun at that target range.

(j) By a licensed hunter while engaged in hunting or while transporting that firearm when going to or returning from that hunting expedition.

(k) Incident to transportation of a handgun by a person operating a licensed common carrier, or by an authorized agent or employee thereof, when transported in conformance with applicable federal law.

(l) By a member of an organization chartered by the Congress of the United States or a nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while on official parade duty or ceremonial occasions of that organization or while rehearsing or practicing for official parade duty or ceremonial occasions.

(m) Within a gun show conducted pursuant to Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) of Chapter 3 of Division 6.

(n) Within a school zone, as defined in Section 626.9, with the written permission of the school district superintendent, the superintendent's designee, or equivalent school authority.

(o) When in accordance with the provisions of Section 171b.

(p) By a person while engaged in the act of making or attempting to make a lawful arrest.

(q) By a person engaged in firearms-related activities, while on the premises of a fixed place of business that is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

(r) By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses that firearm as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event.

(s) Incident to obtaining an identification number or mark assigned for that firearm from the Department of Justice pursuant to Section 23910.

(t) At an established public target range while the person is using that firearm upon that target range.

(u) By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace, while the person is actually engaged in assisting that officer.

(v) Incident to any of the following:

(1) Complying with Section 27560 or 27565, as it pertains to that firearm.

(2) Section 28000, as it pertains to that firearm.

(3) Section 27850 or 31725, as it pertains to that firearm.

RJN Ex. 2 -011

(4) Complying with Section 27870 or 27875, as it pertains to that firearm.

(5) Complying with Section 27915, 27920, or 27925, as it pertains to that firearm.

(w) Incident to, and in the course and scope of, training of, or by an individual to become a sworn peace officer as part of a course of study approved by the Commission on Peace Officer Standards and Training.

(x) Incident to, and in the course and scope of, training of, or by an individual to become licensed pursuant to Chapter 4 (commencing with Section 26150) as part of a course of study necessary or authorized by the person authorized to issue the license pursuant to that chapter.

(y) Incident to and at the request of a sheriff, chief, or other head of a municipal police department.

(z) If all of the following conditions are satisfied:

(1) The open carrying occurs at an auction or similar event of a nonprofit public benefit or mutual benefit corporation at which firearms are auctioned or otherwise sold to fund the activities of that corporation or the local chapters of that corporation.

(2) The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for that nonprofit public benefit or mutual benefit corporation.

(3) The unloaded firearm that is not a handgun is to be delivered by a person licensed pursuant to, and operating in accordance with, Sections 26700 to 26925, inclusive.

(aa) Pursuant to paragraph (3) of subdivision (b) of Section 171c.

(ab) Pursuant to Section 171d.

(ac) Pursuant to subparagraph (F) of paragraph (1) of subdivision (c) of Section 171.7.

(ad) On publicly owned land, if the possession and use of unloaded firearm that is not a handgun is specifically permitted by the managing agency of the land and the person carrying that firearm is in lawful possession of that firearm.

(ae) By any of the following:

(1) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Chapter 1 (commencing with Section 18710) of Division 5 of Title 2 by a person who holds a permit issued pursuant to Article 3 (commencing with Section 18900) of that chapter, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(2) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Chapter 2 (commencing with Section 30500) of Division 10 by a person who holds a permit issued pursuant to Section 31005, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(3) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Chapter 6 (commencing with Section 32610) of Division 10 by a person who holds a permit issued pursuant to Section 32650, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(4) The carrying of an unloaded firearm that is not a handgun that is regulated pursuant to Article 2 (commencing with Section 33300) of Chapter 8 of Division 10 by a person who holds a permit issued pursuant to Section 33300, if the carrying of that firearm is conducted in accordance with the terms and conditions of the permit.

(af) By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

(ag) Pursuant to the provisions of subdivision (d) of Section 171.5.

(ah) By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while the firearm is being used in the lawful course and scope of the licensee's activities as a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and regulations issued pursuant thereto.

(ai) On the navigable waters of this state that are held in public trust, if the possession and use of an unloaded firearm that is not a handgun is not prohibited by the managing agency thereof and the person carrying the firearm is in lawful possession of the firearm.

RJN Ex. 2 -012

**SEC. 13.** Section 5.5 of this bill incorporates amendments to Section 16520 of the Penal Code proposed by both this bill and Senate Bill 1366. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2013, (2) each bill amends Section 16520 of the Penal Code, and (3) this bill is enacted after Senate Bill 1366, in which case Section 5 of this bill shall not become operative.

**SEC. 14.** No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.



*California*
LEGISLATIVE INFORMATION

| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

**AB-1527 Firearms.** (2011-2012)

| Date | Action |
|------|--------|
| 09/28/12 | Chaptered by Secretary of State - Chapter 700, Statutes of 2012. |
| 09/28/12 | Approved by the Governor. |
| 09/13/12 | Enrolled and presented to the Governor at 12:15 p.m. |
| 08/29/12 | Senate amendments concurred in. To Engrossing and Enrolling. (Ayes 47. Noes 31. Page 6503.). |
| 08/29/12 | Assembly Rule 77 suspended. (Page 6486.) |
| 08/28/12 | In Assembly. Concurrence in Senate amendments pending. May be considered on or after August 30 pursuant to Assembly Rule 77. |
| 08/27/12 | Read third time. Passed. Ordered to the Assembly. (Ayes 23. Noes 15. Page 4873.). |
| 08/23/12 | Read second time. Ordered to third reading. |
| 08/22/12 | Read third time and amended. Ordered to second reading. |
| 08/08/12 | Read second time. Ordered to third reading. |
| 08/07/12 | From committee: Do pass. (Ayes 5. Noes 2.) (August 6). |
| 06/26/12 | From committee: Do pass and re-refer to Com. on APPR. (Ayes 5. Noes 2.) (June 26). Re-referred to Com. on APPR. |
| 05/17/12 | Referred to Com. on PUB. S. |
| 05/03/12 | In Senate. Read first time. To Com. on RLS. for assignment. |
| 05/03/12 | Read third time. Passed. Ordered to the Senate. (Ayes 44. Noes 29. Page 4661.) |
| 04/19/12 | Read second time. Ordered to third reading. |
| 04/18/12 | From committee: Do pass. (Ayes 12. Noes 5.) (April 18). |
| 04/11/12 | Re-referred to Com. on APPR. |
| 04/10/12 | Read second time and amended. |
| 04/09/12 | From committee: Do pass as amended and re-refer to Com. on APPR. (Ayes 4. Noes 2.) (March 27). |
| 03/08/12 | Re-referred to Com. on PUB. S. |
| 03/07/12 | From committee chair, with author's amendments: Amend, and re-refer to Com. on PUB. S. Read second time and amended. |
| 02/02/12 | Referred to Com. on PUB. S. |
| 01/24/12 | From printer. May be heard in committee February 23. |
| 01/23/12 | Read first time. To print. |

**RJN Ex. 2 -014**



California LEGISLATIVE INFORMATION

Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites

### AB-1527 Firearms. (2011-2012)

| Date | Result | Location | Ayes | Noes | NVR | Motion |
|------|--------|----------|------|------|-----|--------|
| 08/29/12 | (PASS) | Assembly Floor | 47 | 31 | 2 | AB 1527 PORTANTINO Concurrence In Senate Amendments |

**Ayes:** Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bonilla, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos, Carter, Cedillo, Davis, Dickinson, Eng, Feuer, Fletcher, Fong, Fuentes, Gatto, Gordon, Hall, Hayashi, Roger Hernández, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mendoza, Mitchell, Monning, Pan, Portantino, Skinner, Solorio, Swanson, Torres, Wieckowski, Williams, Yamada, John A. Pérez

**Noes:** Achadjian, Bill Berryhill, Chesbro, Conway, Cook, Donnelly, Beth Gaines, Garrick, Gorell, Grove, Hagman, Halderman, Harkey, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Norby, Olsen, Perea, V. Manuel Pérez, Silva, Smyth, Valadao, Wagner

**No Votes Recorded:** Furutani, Galgiani

| 08/27/12 | (PASS) | Senate Floor | 23 | 15 | 2 | Assembly 3rd Reading AB1527 Portantino By De León |

**Ayes:** Alquist, Calderon, Corbett, De León, DeSaulnier, Evans, Hancock, Hernandez, Kehoe, Leno, Lieu, Liu, Lowenthal, Negrete McLeod, Padilla, Pavley, Price, Rubio, Simitian, Steinberg, Vargas, Wolk, Yee

**Noes:** Anderson, Berryhill, Blakeslee, Cannella, Correa, Dutton, Emmerson, Fuller, Gaines, Harman, Huff, La Malfa, Strickland, Walters, Wright

**No Votes Recorded:** Runner, Wyland

| 08/06/12 | (PASS) | Sen Appropriations | 5 | 2 | 0 | Do pass. |

**Ayes:** Alquist, Kehoe, Lieu, Price, Steinberg

**Noes:** Dutton, Walters

**No Votes Recorded:**

| 06/26/12 | (PASS) | Sen Public Safety | 5 | 2 | 0 | Do pass, but re-refer to the Committee on Appropriations. |

**Ayes:** Calderon, Hancock, Liu, Price, Steinberg

**Noes:** Anderson, Harman

**No Votes Recorded:**

| 05/03/12 | (PASS) | Assembly Floor | 44 | 29 | 7 | AB 1527 PORTANTINO Assembly Third Reading |

**Ayes:** Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos, Carter, Cedillo, Davis, Dickinson, Eng, Feuer, Fong, Fuentes, Galgiani, Gatto, Gordon, Hayashi, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mendoza, Mitchell, Monning, Pan, Portantino, Skinner, Solorio, Swanson, Torres, Wieckowski, Williams, Yamada, John A. Pérez

**Noes:** Achadjian, Bill Berryhill, Chesbro, Conway, Cook, Donnelly, Beth Gaines, Garrick, Gorell, Grove, Hagman, Halderman, Harkey, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Norby, Olsen, Perea, Silva, Valadao, Wagner

**No Votes Recorded:** Bonilla, Fletcher, Furutani, Hall, Roger Hernández, V. Manuel Pérez, Smyth

| 04/18/12 | (PASS) | Asm Appropriations | 12 | 5 | 0 | Do pass. |

**Ayes:** Blumenfield, Bradford, Charles Calderon, Campos, Davis, Fuentes, Gatto, Hall, Hill, Lara, Mitchell, Solorio

**Noes:** Donnelly, Harkey, Nielsen, Norby, Wagner

**No Votes Recorded:**

| 03/27/12 | (PASS) | Asm Public Safety | 4 | 2 | 0 | Do pass as amended and be re-referred to the Committee on Appropriations. |

**Ayes:** Ammiano, Cedillo, Mitchell, Skinner

| Date | Result | Location | . | Ayes | Noes | NVR | Motion |
|------|--------|----------|---|------|------|-----|--------|
|      |        | Noes: Hagman, Knight |   |      |      |     |        |
|      |        | **No Votes Recorded:** |   |      |      |     |        |
|      |        |          |   |      |      |     |        |
|      |        |          |   |      |      |     |        |

RJN Ex. 2 -016

CONCURRENCE IN SENATE AMENDMENTS
AB 1527 (Portantino and Ammiano)
As Amended August 22, 2012
Majority vote

| ASSEMBLY: | 44-29 | (May 3, 2012) | SENATE: | 23-15 | (August 27, 2012) |

Original Committee Reference: PUB. S.

SUMMARY: Makes it a misdemeanor, with certain exceptions, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a motor vehicle in an incorporated city or city and county.

The Senate amendments add double jointing language to avoid chaptering problems with SB 1366 (De Saulnier).

AS PASSED BY THE ASSEMBLY, this bill made it a misdemeanor, with certain exceptions, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a motor vehicle in an incorporated city or city and county. Specifically, this bill

1) Made it a misdemeanor punishable by imprisonment in a county jail not to exceed six months, or by a fine not to exceed $1,000, or both, for person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county, and makes this offense punishable by imprisonment in the county jail not exceeding one year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

2) Stated that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

3) Provided that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

4) Provided that the provisions relating to the carrying of an unloaded firearm that is not a handgun on his or her person outside a vehicle in specified areas does not apply under any of the following circumstances:

   a) By a person when done within a place of business, a place of residence, or on private property, or if done with the permission of the owner or lawful possessor of the property;

   b) When the firearm is either in a locked container or encased and it is being transported directly from any place where a person is not prohibited from possessing that firearm and the course of travel includes only those deviations that are reasonably necessary under the circumstances;

c) If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety, as specified;

d) By any peace officer or by an honorably retired peace officer if that officer may carry a concealed firearm, as specified;

e) By any person to the extent that person is authorized to openly carry a loaded firearm as a member of the military of the United States;

f) As merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative or agent of that business;

g) By a duly authorized military or civil organization, or the members thereof, while parading or rehearsing or practicing parading, when at the meeting place of the organization;

h) By a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range;

i) By a licensed hunter while engaged in lawful hunting or while transporting that firearm while going to or returning from that hunting expedition;

j) Incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law;

k) By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization;

l) Within a licensed gun show;

m) Within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority;

n) When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol;

o) By any person while engaged in the act of making or attempting to make a lawful arrest;

p) By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or

RJN Ex. 2 -018

related to firearms training;

q) By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event;

r) Incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);

s) At any established public target range while the person is using that firearm upon the target range;

t) By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer;

u) Complying with specified provisions of law relating to the regulation of firearms;

v) Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training;

w) Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon;

x) Incident to and at the request of a sheriff or chief or other head of a municipal police department;

y) If all of the following conditions are satisfied:

   i) The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

   ii) The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and,

   iii) The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

z) By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol;

aa) By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion;

bb) By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a

weapon within a public transit system;

cc) On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun;

dd) The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit;

ee) By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from the training;

ff) By a person in compliance with specified provisions related to carrying a firearm in an airport; or,

gg) By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

5) Exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

6) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

7) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in an airport.

8) Made conforming technical changes.

FISCAL EFFECT: According to the Senate Appropriations Committee

1) Ongoing court costs for increased misdemeanor filings potentially in excess of $100,000 (General Fund) per year, offset to a degree by fine revenue.

2) Potential non-reimbursable local enforcement and incarceration costs, offset to a degree by fine revenue.

3) While the impact of this bill independently on local jails could be minor, the cumulative effect of increasing the number of misdemeanors filed could create General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources in the context of recently enacted 2011 Public Safety Realignment.

**RJN Ex. 2 -020**

AB 1527
Page 5

COMMENTS: According to the author, "AB 1527 is a modified version of AB 144 from last session. AB 1527 bans the open carrying of an unloaded firearm that is not a handgun in an incorporated city or city and county, with specific exceptions." The absence of a prohibition on 'open carry' of long guns has created an increase in problematic instances of these guns carried in public, alarming unsuspecting individuals causing issues for law enforcement. Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

"In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation the practice of 'open carry' creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in 'open carry' calls has placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

Please see the policy committee for a full discussion of this bill.

Analysis Prepared by: Gregory Pagan / PUB. S. / (916) 319-3744

FN: 0005485

RJN Ex. 2 -021

## SENATE RULES COMMITTEE

AB 1527

Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 651-1520     Fax: (916) 327-4478

---

### THIRD READING

---

Bill No:     AB 1527
Author:      Portantino (D)
Amended:     8/22/12 in Senate
Vote:        21

---

SENATE PUBLIC SAFETY COMMITTEE: 5-2, 6/26/12
AYES: Hancock, Calderon, Liu, Price, Steinberg
NOES: Anderson, Harman

SENATE APPROPRIATIONS COMMITTEE: 5-2, 8/6/12
AYES: Kehoe, Alquist, Lieu, Price, Steinberg
NOES: Walters, Dutton

ASSEMBLY FLOOR: 44-29, 5/3/12 - See last page for vote

---

**SUBJECT:**     Openly carrying long guns

**SOURCE:**      California Police Chiefs Association
                 Peace Officer Research Association of California

---

**DIGEST:**  This bill (1) makes it a misdemeanor, punishable by up to six
months in a county jail, or a fine of up to $1,000, or both, for a person to
carry an unloaded firearm that is not a handgun on his/her person outside a
vehicle while in an incorporated city or city and county; (2) makes this
offense punishable by up to one year in the county jail, or a fine of up to
$1,000, or both, if the firearm and unexpended ammunition capable of being
fired from that firearm are in the immediate possession of that person and
the person is not in lawful possession of that firearm; (3) establishes
numerous exemptions from this prohibition; (4) creates an exemption from
the existing prohibition against carrying an exposed and unloaded handgun
outside a vehicle in a public place for a licensed hunter while actually

CONTINUED

**RJN Ex. 2 -022**

engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training; and (5) creates an exemption from the existing prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place for a person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals, as specified.

Senate Floor Amendments of 8/22/12 exempt from the bill's prohibition on openly carrying unloaded long guns in incorporated cities the carrying of such guns "on the navigable waters of this state that are held in public trust", and add double-jointing with SB 1366, to prevent chaptering out.

**ANALYSIS:** Existing law makes it a misdemeanor punishable by imprisonment in the county jail not to exceed six months, by a fine not to exceed $1,000, or both, for any person to carry an exposed and unloaded handgun outside a vehicle upon his/her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. (Penal Code (PEN) Section 26350(a)(1))

Existing law makes the crime of openly carrying an unloaded handgun punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed $1,000, or by that fine and imprisonment if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm. (PEN Section 26350(a)(2))

Existing law prohibits the carrying of a loaded firearm on his/her person or in a vehicle while in any public place or on any public street in an incorporated city or a prohibited area of unincorporated territory. This offense is a misdemeanor, punishable by up to one year in the county jail, a fine of up to $1,000, or both, unless various aggravating circumstances are present, in which case this offense it is punishable as a felony. (PEN Section 25850)

Existing law provides that a firearm shall be deemed to be loaded for the purposes of PEN Section 12031 when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except

CONTINUED

**RJN Ex. 2 -023**

that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder. (PEN Section 16840(b))

Existing law provides in the Fish and Game Code that it is unlawful to possess a loaded rifle or shotgun in any vehicle or conveyance or its attachments which is standing on or along or is being driven on or along any public highway or other way open to the public. (Fish and Game Code Section 2006)

Existing law provides that a rifle or shotgun shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine. (Id.)

Existing law provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which the penalty may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;

- A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen;

- A felony where the person is an active participant in a criminal street gang;

- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the Department of Justice (DOJ) as the registered owner of the firearm. (PEN Section 25858(c))

CONTINUED

RJN Ex. 2 -024

This bill makes it a misdemeanor punishable by imprisonment in a county jail not to exceed six months, or by a fine not to exceed $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his/her person outside a vehicle while in an incorporated city or city and county, and makes this offense punishable by imprisonment in the county jail not exceeding one year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

This bill states that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

This bill states that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

This bill provides that the provisions relating to the carrying of an unloaded firearm that is not a handgun on his/her person outside a vehicle in specified areas does not apply under any of the following circumstances:

- By a person when done within a place of business, a place of residence, or on private property, or if done with the permission of the owner or lawful possessor of the property.

- When the firearm is either in a locked container or encased and it is being transported directly from any place where a person is not prohibited from possessing that firearm and the course of travel includes only those deviations that are reasonably necessary under the circumstances.

- If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his/her life or safety, as specified.

- By any peace officer or by an honorably retired peace officer if that officer may carry a concealed firearm, as specified.

- By any person to the extent that person is authorized to openly carry a loaded firearm as a member of the military of the United States.

CONTINUED

RJN Ex. 2 -025

- As merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative or agent of that business.

- By a duly authorized military or civil organization, or the members thereof, while parading or rehearsing or practicing parading, when at the meeting place of the organization.

- By a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

- Incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law.

- By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization.

- Within a licensed gun show.

- Within a school zone, as defined, with the written permission of the school district superintendent, his/her designee, or equivalent school authority.

- When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol.

- By any person while engaged in the act of making or attempting to make a lawful arrest.

- By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

- By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event.

CONTINUED

- Incident to obtaining an identification number or mark assigned for that handgun from the DOJ.

- At any established public target range while the person is using that firearm upon the target range.

- By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer.

- Complying with specified provisions of law relating to the regulation of firearms.

- Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training.

- Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon.

- Incident to and at the request of a sheriff or chief or other head of a municipal police department.

- If all of the following conditions are satisfied:

  o The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

  o The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and

  o The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

  o By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol.

  o By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion.

  o By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a weapon within a public transit system.

CONTINUED

- o On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.
- o The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit.
- o By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning form the training.
- o By a person in compliance with specified provisions related to carrying a firearm in an airport.
- o By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

This bill states that, for purposes of the prohibition on openly carrying an unloaded firearm that is not a handgun, the definition of "firearm" does not include any antique firearm.

This bill exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals.

Existing law also exempts from the provisions of carrying an exposed and unloaded handgun a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while the firearm is being

CONTINUED

RJN Ex. 2 -028

used in the lawful course and scope of the licensee's activities as a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and regulations issued pursuant thereto.

This bill adds to that exemption an individual carrying an exposed and unloaded firearm on the navigable waters of this state that are held in public trust, if the possession and use of an unloaded firearm that is not a handgun is not prohibited by the managing agency thereof and the person carrying the firearm is in lawful possession of the firearm.

This bill makes conforming technical changes and is double-jointed with SB 1366 (DeSaulnier).

Prior Legislation

AB 144 (Portantino), Chapter 725, Statutes of 2011, passed the Senate Floor (21-18) on 9/8/11.

AB 1934 (Saldana, 2010) died on Assembly Concurrence.

AB 98 (Cohn, 2005) was held on Suspense in the Assembly Appropriations Committee.

AB 2501(Horton, 2004) failed passage in the Assembly Public Safety Committee.

AB 2828 (Cohn, 2004) failed passage in the Assembly Public Safety Committee.

**FISCAL EFFECT**:  Appropriation: No  Fiscal Com.: Yes  Local: Yes

According to the Senate Appropriations Committee:

- Potential ongoing court costs of $24,000 to $48,000 (General Fund) for 50 to 100 additional misdemeanor filings per year.

- Potential non-reimbursable local enforcement and incarceration costs, offset to a degree by fine revenue.

- While the impact of this bill independently is likely to be minor, the cumulative effect of all new misdemeanors could create General Fund cost pressure on capital outlay, staffing, programming, the courts, and

CONTINUED

other resources in the context of recently enacted 2011 Public Safety Realignment.

**SUPPORT:** (Verified 8/22/12)

California Police Chiefs Association (co-source)
Peace Officer Research Association of California (co-source)
California Chapters of the Brady Campaign Against Gun Violence
California Peace Officers Association
Coalition Against Gun Violence
Law Center to Prevent Gun Violence
Los Angeles Sheriff's Department
Women Against Gun Violence

**OPPOSITION:** (Verified 8/22/12)

California Rifle and Pistol Association
National Association for Gun Rights
National Rifle Association of America
Save Our State

**ARGUMENTS IN SUPPORT:** The Peace Officer Research Association of California states:

> The practice by individuals and organizations to "openly carry" firearms in public places in order to challenge law enforcement and firearms statutes in California is increasing in frequency. While PORAC understands that most of these open carry demonstrations are being done by law abiding citizens, it places law enforcement and the public in a precarious and possible dangerous situation. Most often, law enforcement is called to the scene based on a citizen or merchant complaint. When the officer arrives at the scene, it is their obligation to question those persons carrying the firearms and to inquire as to whether the firearm is loaded. Until that officer has physically seen if the firearm is loaded, that officer must assume that their lives and the lives of those around them may be in danger.

> Again, these situations are potentially dangerous and should not occur in a public place wherein any number of things could go wrong. We believe this bill will be very helpful in preventing these potentially unsafe incidents from happening.

CONTINUED

**ARGUMENTS IN OPPOSITION:** The National Association for Gun Rights states, "Rifles and shotguns are hardly the weapons of choice for the common criminal. This is yet another attempt to prohibit something because it 'looks scary.' In a recent press release, Assemblyman Anthony Portantino admitted this bill is merely retaliation against law-abiding citizens who chose to peacefully exercise their First Amendment right of free speech in support of their Second Amendment rights after passage of last year's Open Carry Ban. Punishing citizens for engaging in lawful public demonstration is an outrageous abuse of power, further infringing on their constitutionally protected rights. Currently twenty-eight states allow for the Open Carry of firearms in some form without a permit, and an additional thirteen allow Open Carry with a permit. Eight states and the District of Colombia ban open carry; half of which are remnants of the 'Jim Crow' era where the intent was to prevent African-Americans from possessing firearms. Open Carry should be viewed in the same light as [ ] concealed carry: if a person is legally able to purchase a firearm, it is not the place of the state to deny their right to carry it."

**ASSEMBLY FLOOR**: 44-29, 5/3/12
AYES: Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos, Carter, Cedillo, Davis, Dickinson, Eng, Feuer, Fong, Fuentes, Galgiani, Gatto, Gordon, Hayashi, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mendoza, Mitchell, Monning, Pan, Portantino, Skinner, Solorio, Swanson, Torres, Wieckowski, Williams, Yamada, John A. Pérez
NOES: Achadjian, Bill Berryhill, Chesbro, Conway, Cook, Donnelly, Beth Gaines, Garrick, Gorell, Grove, Hagman, Halderman, Harkey, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Norby, Olsen, Perea, Silva, Valadao, Wagner
NO VOTE RECORDED: Bonilla, Fletcher, Furutani, Hall, Roger Hernández, V. Manuel Pérez, Smyth


RJG:d 8/23/12   Senate Floor Analyses
                SUPPORT/OPPOSITION:  SEE ABOVE
                **** **END** ****

RJN Ex. 2 -031

## Senate Appropriations Committee Fiscal Summary
### Senator Christine Kehoe, Chair

**AB 1950 (Davis) – Prohibited business practices: enforcement.**

**Amended:** August 6, 2012      **Policy Vote:** Judiciary 4-0
**Urgency:** No                  **Mandate:** Yes
**Hearing Date:** August 16, 2012   **Consultant:** Jolie Onodera

**SUSPENSE FILE.**

**Bill Summary:** AB 1950 would remove the January 1, 2013, sunset date on the prohibition from unlawfully performing mortgage loan modification or loan forbearance services. This bill would extend the statute of limitations period for prosecution of certain real estate-related misdemeanors, as specified, and would provide that it is unlawful to act as a mortgage loan originator without being licensed.

**Fiscal Impact:**
- Ongoing court costs for increased misdemeanor filings potentially in excess of $100,000 (General Fund) per year, offset to a degree by fine revenue.
- Potential non-reimbursable local enforcement and incarceration costs, offset to a degree by fine revenue.
- While the impact of this bill independently on local jails could be minor, the cumulative effect of increasing the number of misdemeanors filed could create General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources in the context of recently enacted 2011 Public Safety Realignment.

**Background:** This bill is part of the Attorney General's package of mortgage fraud reform termed the "California Homeowner Bill of Rights." This bill seeks to enable more thorough investigations and prosecutions of mortgage-related crime. In May 2011, the Attorney General announced the creation of the Mortgage Fraud Strike Force whose purpose is to monitor and prosecute violations related to all steps in the mortgage process. The Attorney General has indicated the one-year statute of limitations on various mortgage-related crimes has inhibited a number of prosecutions due to the protracted nature of the foreclosure process and the delayed discovery of illegal activity.

Existing law, until January 1, 2013, prohibits any person, real estate licensee, or attorney who negotiates, attempts to negotiate, arranges, attempts to arrange, or otherwise offers to perform a mortgage loan modification or other form of mortgage loan forbearances for a fee or other compensation paid by the borrower to do any of the following:
- Claim, demand, charge, collect, or receive any compensation until after the person or licensee has fully performed each and every service he or she contracted to perform or represented that he or she would perform.
- Take any wage assignment, any lien of any type on real or personal property, or any other security to secure the payment of compensation.

**RJN Ex. 2 -032**

AB 1950 (Davis)
Page 2

- Take any power of attorney from the borrower for any purpose.

A violation of the above provision is a misdemeanor, punishable by a fine not exceeding $10,000 ($50,000 if the party violating the law is a corporation), imprisonment in the county jail for up to one year, or by both a fine and imprisonment, and provides that those penalties are cumulative to any other remedies or penalties provided by law.

Existing law generally applies a one year statute of limitations to the prosecution of violations of California laws not punishable by death or imprisonment in the state prison or pursuant to subdivision (h) of PC section 1170.

**Proposed Law:** This bill seeks to expand protections related to mortgage fraud. Specifically, this bill:
- Deletes the January 1, 2013, sunset date on the prohibition against charging up-front fees, thereby extending the prohibition indefinitely.
- Deletes the January 1, 2013, sunset date on Business and Professions Code section 10085.6 and Civil Code section 2944.7 which apply to real estate licensees and other persons, thereby extending these provisions indefinitely.
- Extends the statute of limitations from one year to three years after discovery of the offense or completion of the offense, whichever is later, for prosecution of misdemeanor violations of the following:
  - Prohibition against the practice of law by unlicensed or disbarred persons.
  - Prohibition against collecting up-front fees in connection with offers to help borrowers obtain mortgage loan modifications or forbearance.
  - Prohibition against the practice of real estate by unlicensed persons.
  - Requirement for real estate licensees to provide a specified notice to borrowers before entering into a fee agreement in connection with offers to help obtain mortgage loan modifications or forbearance.
  - General requirement to provide a specified notice to borrowers before entering into a fee agreement with them in mortgage loan transactions.
  - General prohibition against collecting up-front fees in connection with offers to help borrowers obtain mortgage loan modifications or forbearance.
- Provides that it is unlawful to act as a mortgage loan originator without being licensed.

**Related Legislation:** SB 980 (Vargas) 2012 would extend the sunset date on the provisions of SB 94 from January 1, 2013, to January 1, 2017. This bill has been referred to the Assembly Committee on Appropriations.

SB 94 (Calderon) Chapter 630/2009 prohibits, until January 1, 2013, any person who, for a fee, assists a borrower in obtaining a loan modification from charging compensation before a service is completed.

**Staff Comments:** The provisions of this bill will likely result in an increased number of misdemeanor court filings that otherwise would not have occurred under existing law in the absence of the removal of the sunset date and the extension of the statute of limitations from one to three years for specified offenses. It is unknown how many

AB 1950 (Davis)
Page 3

additional filings will result due to the provisions of this bill. The Judicial Council would incur costs for increased misdemeanor filings of approximately $120,500 (General Fund) statewide for 250 new misdemeanors filed annually, offset to a degree by fine revenue. This estimate equates to less than five misdemeanor filings per county per year. To the extent the actual number of annual filings per county is greater, associated costs to the courts could be significantly higher.

The creation of new, or the extension of existing, misdemeanors has historically been analyzed by this Committee to result in non-reimbursable state mandated costs for local law enforcement and incarceration. Staff notes, however, that the potential for an increased number of misdemeanor convictions taken cumulatively could increase the statewide adult jail population to a degree that could potentially impact the flexibility of counties to manage their jail populations recently increased under the 2011 Public Safety Realignment. While the provisions of this bill could be minor, the cumulative effect of all additional misdemeanors could create unknown General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources.

**RJN Ex. 2 -034**

**SENATE RULES COMMITTEE**
Office of Senate Floor Analyses
1020 N Street, Suite 524
(916) 651-1520      Fax: (916) 327-4478

AB 1527

---

THIRD READING

---

Bill No:      AB 1527
Author:      Portantino (D)
Amended:    4/10/12 in Assembly
Vote:         21

---

SENATE PUBLIC SAFETY COMMITTEE: 5-2, 6/26/12
AYES: Hancock, Calderon, Liu, Price, Steinberg
NOES: Anderson, Harman

SENATE APPROPRIATIONS COMMITTEE: 5-2, 8/6/12
AYES: Kehoe, Alquist, Lieu, Price, Steinberg
NOES: Walters, Dutton

ASSEMBLY FLOOR: 44-29, 5/3/12 - See last page for vote

---

**SUBJECT:**    Openly carrying long guns

**SOURCE:**     California Police Chiefs Association
                Peace Officer Research Association of California

---

**DIGEST:** This bill (1) makes it a misdemeanor, punishable by up to six months in a county jail, or a fine of up to $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his/her person outside a vehicle while in an incorporated city or city and county; (2) makes this offense punishable by up to one year in the county jail, or a fine of up to $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm; (3) establishes numerous exemptions from this prohibition; (4) creates an exemption from the existing prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place for a licensed hunter while actually

CONTINUED

**RJN Ex. 2 -035**

engaged in the training of a dog for the purpose of using the dog in hunting
that is not prohibited by law, or while transporting the firearm while going to
or returning from that training; and (5) creates an exemption from the
existing prohibition against carrying an exposed and unloaded handgun
outside a vehicle in a public place for a person in compliance with specified
provisions related to carrying a firearm in airports and commuter passenger
terminals, as specified.

**ANALYSIS:**  Existing law makes it a misdemeanor punishable by
imprisonment in the county jail not to exceed six months, by a fine not to
exceed $1,000, or both, for any person to carry an exposed and unloaded
handgun outside a vehicle upon his/her person while in any public place or
on any public street in an incorporated city, or in any public place or public
street in a prohibited area of an unincorporated county. (Penal Code (PEN)
Section 26350(a)(1))

Existing law makes the crime of openly carrying an unloaded handgun
punishable by imprisonment in the county jail not to exceed one year, or by
a fine not to exceed $1,000, or by that fine and imprisonment if the handgun
and unexpended ammunition capable of being discharged from that firearm
are in the immediate possession of the person and the person is not the
registered owner of the firearm.  (PEN Section 26350(a)(2))

Existing law prohibits the carrying of a loaded firearm on his/her person or
in a vehicle while in any public place or on any public street in an
incorporated city or a prohibited area of unincorporated territory.  This
offense is a misdemeanor, punishable by up to one year in the county jail, a
fine of up to $1,000, or both, unless various aggravating circumstances are
present, in which case this offense it is punishable as a felony. (PEN Section
25850)

Existing law provides that a firearm shall be deemed to be loaded for the
purposes of PEN Section 12031 when there is an unexpended cartridge or
shell, consisting of a case that holds a charge of powder and a bullet or shot,
in, or attached in any manner to, the firearm, including, but not limited to, in
the firing chamber, magazine, or clip thereof attached to the firearm; except
that a muzzle-loader firearm shall be deemed to be loaded when it is capped
or primed and has a powder charge and ball or shot in the barrel or cylinder.
(PEN Section 16840(b))

Existing law provides in the Fish and Game Code that it is unlawful to possess a loaded rifle or shotgun in any vehicle or conveyance or its attachments which is standing on or along or is being driven on or along any public highway or other way open to the public. (Fish and Game Code Section 2006)

Existing law provides that a rifle or shotgun shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine. (Id.)

Existing law provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which the penalty may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;

- A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen;

- A felony where the person is an active participant in a criminal street gang;

- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.

- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the Department of Justice (DOJ) as the registered owner of the firearm. (PEN Section 25858(c))

This bill makes it a misdemeanor punishable by imprisonment in a county jail not to exceed six months, or by a fine not to exceed $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his/her person

CONTINUED

outside a vehicle while in an incorporated city or city and county, and makes this offense punishable by imprisonment in the county jail not exceeding one year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

This bill states that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

This bill states that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

This bill provides that the provisions relating to the carrying of an unloaded firearm that is not a handgun on his/her person outside a vehicle in specified areas does not apply under any of the following circumstances:

- By a person when done within a place of business, a place of residence, or on private property, or if done with the permission of the owner or lawful possessor of the property.

- When the firearm is either in a locked container or encased and it is being transported directly from any place where a person is not prohibited from possessing that firearm and the course of travel includes only those deviations that are reasonably necessary under the circumstances.

- If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his/her life or safety, as specified.

- By any peace officer or by an honorably retired peace officer if that officer may carry a concealed firearm, as specified.

- By any person to the extent that person is authorized to openly carry a loaded firearm as a member of the military of the United States.

- As merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative or agent of that business.

CONTINUED

RJN Ex. 2 -038

- By a duly authorized military or civil organization, or the members thereof, while parading or rehearsing or practicing parading, when at the meeting place of the organization.

- By a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

- Incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law.

- By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization.

- Within a licensed gun show.

- Within a school zone, as defined, with the written permission of the school district superintendent, his/her designee, or equivalent school authority.

- When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol.

- By any person while engaged in the act of making or attempting to make a lawful arrest.

- By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

- By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event.

- Incident to obtaining an identification number or mark assigned for that handgun from the DOJ.

CONTINUED

- At any established public target range while the person is using that firearm upon the target range.

- By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer.

- Complying with specified provisions of law relating to the regulation of firearms.

- Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training.

- Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon.

- Incident to and at the request of a sheriff or chief or other head of a municipal police department.

- If all of the following conditions are satisfied:

  o The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

  o The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and

  o The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

  o By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol.

  o By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion.

  o By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a weapon within a public transit system.

  o On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.

CONTINUED

- The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit.
- By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning form the training.
- By a person in compliance with specified provisions related to carrying a firearm in an airport.
- By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

This bill states that, for purposes of the prohibition on openly carrying an unloaded firearm that is not a handgun, the definition of "firearm" does not include any antique firearm.

This bill exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals.

This bill makes conforming technical changes.

Prior Legislation

AB 144 (Portantino), Chapter 725, Statutes of 2011, passed the Senate Floor (21-18) on 9/8/11.

CONTINUED

AB 1934 (Saldana, 2010) died on Assembly Concurrence.

AB 98 (Cohn, 2005) held on Suspense in the Assembly Appropriations Committee.

AB 2501(Horton, 2004) failed passage in the Assembly Public Safety Committee.

AB 2828 (Cohn, 2004) failed passage in the Assembly Public Safety Committee.

**FISCAL EFFECT**:   Appropriation: No   Fiscal Com.: Yes   Local: Yes

According to the Senate Appropriations Committee:

- Potential ongoing court costs of $24,000 to $48,000 (General Fund) for 50 to 100 additional misdemeanor filings per year.
- Potential non-reimbursable local enforcement and incarceration costs, offset to a degree by fine revenue.
- While the impact of this bill independently is likely to be minor, the cumulative effect of all new misdemeanors could create General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources in the context of recently enacted 2011 Public Safety Realignment.

**SUPPORT:** (Verified  8/8/12)

California Police Chiefs Association (co-source)
Peace Officer Research Association of California (co-source)
California Chapters of the Brady Campaign Against Gun Violence
California Peace Officers Association
Coalition Against Gun Violence
Law Center to Prevent Gun Violence
Los Angeles Sheriff's Department
Women Against Gun Violence

**OPPOSITION:**  (Verified  8/8/12)

California Rifle and Pistol Association
National Association for Gun Rights
National Rifle Association of America

CONTINUED

Save Our State

**ARGUMENTS IN SUPPORT:**    The Peace Officer Research Association states:

> The practice by individuals and organizations to "openly carry" firearms in public places in order to challenge law enforcement and firearms statutes in California is increasing in frequency. While PORAC understands that most of these open carry demonstrations are being done by law abiding citizens, it places law enforcement and the public in a precarious and possible dangerous situation. Most often, law enforcement is called to the scene based on a citizen or merchant complaint. When the officer arrives at the scene, it is their obligation to question those persons carrying the firearms and to inquire as to whether the firearm is loaded. Until that officer has physically seen if the firearm is loaded, that officer must assume that their lives and the lives of those around them may be in danger.

> Again, these situations are potentially dangerous and should not occur in a public place wherein any number of things could go wrong. We believe this bill will be very helpful in preventing these potentially unsafe incidents from happening.

**ARGUMENTS IN OPPOSITION:**    The National Association for Gun Rights states, "Rifles and shotguns are hardly the weapons of choice for the common criminal. This is yet another attempt to prohibit something because it 'looks scary.' In a recent press release, Assemblyman Anthony Portantino admitted this bill is merely retaliation against law-abiding citizens who chose to peacefully exercise their First Amendment right of free speech in support of their Second Amendment rights after passage of last year's Open Carry Ban. Punishing citizens for engaging in lawful public demonstration is an outrageous abuse of power, further infringing on their constitutionally protected rights. Currently twenty-eight states allow for the Open Carry of firearms in some form without a permit, and an additional thirteen allow Open Carry with a permit. Eight states and the District of Colombia ban open carry; half of which are remnants of the 'Jim Crow' era where the intent was to prevent African-Americans from possessing firearms. Open Carry should be viewed in the same light as [ ] concealed carry: if a person is legally able to purchase a firearm, it is not the place of the state to deny their right to carry it."

CONTINUED

**ASSEMBLY FLOOR**: 44-29, 5/3/12

AYES: Alejo, Allen, Ammiano, Atkins, Beall, Block, Blumenfield, Bradford, Brownley, Buchanan, Butler, Charles Calderon, Campos, Carter, Cedillo, Davis, Dickinson, Eng, Feuer, Fong, Fuentes, Galgiani, Gatto, Gordon, Hayashi, Hill, Hueso, Huffman, Lara, Bonnie Lowenthal, Ma, Mendoza, Mitchell, Monning, Pan, Portantino, Skinner, Solorio, Swanson, Torres, Wieckowski, Williams, Yamada, John A. Pérez

NOES: Achadjian, Bill Berryhill, Chesbro, Conway, Cook, Donnelly, Beth Gaines, Garrick, Gorell, Grove, Hagman, Halderman, Harkey, Huber, Jeffries, Jones, Knight, Logue, Mansoor, Miller, Morrell, Nestande, Nielsen, Norby, Olsen, Perea, Silva, Valadao, Wagner

NO VOTE RECORDED: Bonilla, Fletcher, Furutani, Hall, Roger Hernández, V. Manuel Pérez, Smyth


RJG:d  8/8/12   Senate Floor Analyses

SUPPORT/OPPOSITION:   SEE ABOVE
**\*\*\*\* END \*\*\*\***

## Senate Appropriations Committee Fiscal Summary
### Senator Christine Kehoe, Chair

**AB 1527 (Portantino) – Firearms: openly carrying long guns.**

| | |
|---|---|
| **Amended:** April 10, 2012 | **Policy Vote:** Public Safety 5-2 |
| **Urgency:** No | **Mandate:** Yes |
| **Hearing Date:** August 6, 2012 | **Consultant:** Jolie Onodera |

**This bill does not meet the criteria for referral to the Suspense File.**

**Bill Summary:** AB 1527 would make it a misdemeanor, subject to numerous exemptions, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county. This bill creates additional exemptions from the existing prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public space, as specified.

**Fiscal Impact:**
- Potential ongoing court costs of $24,000 to $48,000 (General Fund) for 50 to 100 additional misdemeanor filings per year.
- Potential non-reimbursable local enforcement and incarceration costs, offset to a degree by fine revenue.
- While the impact of this bill independently is likely to be minor, the cumulative effect of all new misdemeanors could create General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources in the context of recently enacted 2011 Public Safety Realignment.

**Background:** Existing law makes it a misdemeanor for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. Openly carrying an unloaded handgun is also prohibited if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm.

**Proposed Law:** This bill would make it a misdemeanor to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county, to be punishable as follows:

- By up to six months in a county jail, or a fine of up to $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county.
- By up to one year in the county jail, or a fine of up to $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

**RJN Ex. 2 -045**

AB 1527 (Portantino)
Page 2

This bill provides numerous exemptions to the prohibition on the carrying of an unloaded firearm that is not a handgun outside a vehicle in specified areas, including but not limited to the following:

- By a person when done within a place of business, a place of residence, or on private property, if that person may carry a firearm within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.
- When the firearm is either in a locked container or encased and it is being transported directly between places where a person is not prohibited from possessing that firearm and the course of travel shall include only those deviations between authorized locations as are reasonably necessary under the circumstances.
- If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety. This paragraph may not apply when the circumstances involve a mutual restraining order absent a factual finding of a specific threat to the person's life or safety.
- By a peace officer or an honorably retired peace officer if that officer may carry a concealed firearm or a loaded firearm pursuant to existing law.
- As merchandise by a person who is engaged in the business of manufacturing, importing, wholesaling, repairing, or dealing in firearms and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while engaged in the lawful course of the business.
- By a duly authorized military or civil organization, or the members thereof, while parading or while rehearsing or practicing parading, when at the meeting place of the organization.
- By a member of a club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a firearm that is not a handgun at that target range.
- By a licensed hunter while engaged in hunting or while transporting that firearm when going to or returning from that hunting expedition.
- Incident to transportation of a handgun by a person operating a licensed common carrier, or by an authorized agent or employee thereof, when transported in conformance with applicable federal law.
- By a member of an organization chartered by the Congress of the United States or a nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while on official parade duty or ceremonial occasions of that organization or while rehearsing or practicing for official parade duty or ceremonial occasions.
- Within a gun show.
- Within a school zone, as defined, with the written permission of the school district superintendent, the superintendent's designee, or equivalent school authority.
- By a person while engaged in the act of making or attempting to make a lawful arrest.

AB 1527 (Portantino)
Page 3

- By a person engaged in firearms-related activities, while on the premises of a fixed place of business that is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.
- By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses that firearm as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event.
- At an established public target range while the person is using that firearm upon that target range.

This bill creates the following exemptions from the existing prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public space:

- A licensed hunter while engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.
- A person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals.

**Related Legislation:** AB 144 (Portantino) Chapter 725/2011 made it a misdemeanor punishable by up to six months in jail and a $1,000 fine to openly carry an unloaded handgun on one's person, as specified, and established specified exceptions to this prohibition.

**Staff Comments:** The provisions of this bill will result in non-reimbursable local law enforcement costs offset to a degree by fine revenue. The Judicial Council has indicated costs for increased misdemeanor filings could result in increased costs of approximately $24,000 to $48,000 (General Fund) statewide if 50 to 100 new misdemeanors are filed annually.

The creation of new misdemeanors has historically been analyzed by this Committee to result in non-reimbursable state mandated costs for local law enforcement and incarceration. Staff notes, however, that the creation of new misdemeanors taken cumulatively could increase the statewide adult jail population to a degree that could potentially impact the flexibility of counties to manage their jail populations recently increased under the 2011 Public Safety Realignment. While the provisions of this bill are likely to be minor, the cumulative effect of all new misdemeanors could create unknown General Fund cost pressure on capital outlay, staffing, programming, the courts, and other resources.

## SENATE COMMITTEE ON PUBLIC SAFETY

Senator Loni Hancock, Chair
2011-2012 Regular Session

A
B

1
5
2
7

AB 1527 ( Portantino)
As April 10, 2012
Hearing date: June 26, 2012
Business and Professions Code; Penal Code
SM:dl

### OPENLY CARRYING LONG GUNS

### HISTORY

Source:       California Police Chiefs Association; Peace Officer Research Association of
              California

Prior Legislation:    AB 144 (Portantino)  - Chapter 725, Statutes of 2011
                      AB 1934 (Saldana) - 2010, died on Assembly Concurrence
                      AB 98 (Cohn) - 2005, held on Suspense in Assembly Appropriations
                      AB 2501(Horton) - 2004, failed passage in Assembly Public Safety
                      AB 2828 (Cohn) - 2004, failed passage in Assembly Public Safety

Support:    California Chapters of the Brady Campaign Against Gun Violence; California Peace
            Officers Association; Coalition Against Gun Violence; Los Angeles Sheriff's
            Department; Women Against Gun Violence; Law Center to Prevent Gun Violence

Opposition:   California Rifle and Pistol Association; National Association for Gun Rights; Save
              Our State; National Rifle Association of America

Assembly Floor Vote: Ayes  44 - Noes  29

### KEY ISSUES

SHOULD IT BE A MISDEMEANOR, PUNISHABLE BY UP TO SIX MONTHS IN A
COUNTY JAIL, OR A FINE OF UP TO $1,000, OR BOTH, FOR A PERSON TO CARRY AN
UNLOADED FIREARM THAT IS NOT A HANDGUN ON HIS OR HER PERSON OUTSIDE
A VEHICLE WHILE IN AN INCORPORATED CITY OR CITY AND COUNTY, EXCEPT
AS SPECIFIED?

(CONTINUED)

(More)

SHOULD THIS OFFENSE BE PUNISHABLE BY UP TO ONE YEAR IN THE COUNTY JAIL, OR A FINE OF UP TO $1,000, OR BOTH, IF THE FIREARM AND UNEXPENDED AMMUNITION CAPABLE OF BEING FIRED FROM THAT FIREARM ARE IN THE IMMEDIATE POSSESSION OF THAT PERSON AND THE PERSON IS NOT IN LAWFUL POSSESSION OF THAT FIREARM?

## *PURPOSE*

*The purpose of this bill is to (1) make it a misdemeanor, punishable by up to six months in a county jail, or a fine of up to $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county; (2) make this offense punishable by up to one year in the county jail, or a fine of up to $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm; (3) establish numerous exemptions from this prohibition; (4) create an exemption from the existing prohibition against carrying an exposed and unloaded <u>handgun</u> outside a vehicle in a public place for a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training; and (5) create an exemption from the existing prohibition against carrying an exposed and unloaded <u>handgun</u> outside a vehicle in a public place for a person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals, as specified.*

<u>Existing law</u> makes it a misdemeanor punishable by imprisonment in the county jail not to exceed six months, by a fine not to exceed $1,000, or both, for any person to carry an exposed and <u>unloaded handgun</u> outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. (Penal Code § 26350(a)(1).)

<u>Existing law</u> makes the crime of openly carrying an <u>unloaded handgun</u> punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed $1,000, or by that fine and imprisonment if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm. (Penal Code § 26350(a)(2).)

<u>Existing law</u> prohibits the carrying of a <u>loaded</u> firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or a prohibited area of unincorporated territory. This offense is a misdemeanor, punishable by up to one year in the

county jail, a fine of up to $1,000, or both, unless various aggravating circumstances are present, in which case this offense it is punishable as a felony. (Penal Code § 25850.)

Existing law provides that a firearm shall be deemed to be loaded for the purposes of Penal Code Section 12031 when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm; except that a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder. (Penal Code § 16840(b).)

Existing law provides in the Fish and Game Code that it is unlawful to possess a loaded rifle or shotgun in any vehicle or conveyance or its attachments which is standing on or along or is being driven on or along any public highway or other way open to the public. (Fish and Game Code § 2006.)

Existing law provides that a rifle or shotgun shall be deemed to be loaded for the purposes of this section when there is an unexpended cartridge or shell in the firing chamber but not when the only cartridges or shells are in the magazine. (*Id.*)

Existing law provides that carrying a loaded firearm is generally a misdemeanor, punishable by up to one year in a county jail; by a fine of up to $1,000; or both. However, there are several circumstances in which the penalty may be punishable as a felony or alternate felony-misdemeanor:

- A felony where the person has previously been convicted of any felony or of any crime made punishable by the Dangerous Weapons Control Law;
- A felony where the firearm is stolen and the person knew or had reasonable cause to believe that the firearm was stolen ;
- A felony where the person is an active participant in a criminal street gang;
- A felony where the person is not in lawful possession of the firearm, as defined, or the person is within a class of persons prohibited from possessing or acquiring a firearm;
- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person has been convicted of a crime against a person or property or of a narcotics or dangerous drug violation.
- An alternate felony-misdemeanor punishable by imprisonment in the state prison; by imprisonment in a county jail not to exceed one year; by a fine not to exceed $1,000; or by both that imprisonment and fine where the person is not listed with the DOJ as the registered owner of the firearm.

(Penal Code § 25858(c).)

This bill makes it a misdemeanor punishable by imprisonment in a county jail not to exceed six months, or by a fine not to exceed $1,000, or both, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and

(More)

county, and makes this offense punishable by imprisonment in the county jail not exceeding one year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

This bill states that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

This bill states that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

This bill provides that the provisions relating to the carrying of an unloaded firearm that is not a handgun on his or her person outside a vehicle in specified areas does not apply under any of the following circumstances:

- By a person when done within a place of business, a place of residence, or on private property, or if done with the permission of the owner or lawful possessor of the property.
- When the firearm is either in a locked container or encased and it is being transported directly from any place where a person is not prohibited from possessing that firearm and the course of travel includes only those deviations that are reasonably necessary under the circumstances.
- If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person or persons who has or have been found to pose a threat to his or her life or safety, as specified.
- By any peace officer or by an honorably retired peace officer if that officer may carry a concealed firearm, as specified.
- By any person to the extent that person is authorized to openly carry a loaded firearm as a member of the military of the United States.
- As merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative or agent of that business.
- By a duly authorized military or civil organization, or the members thereof, while parading or rehearsing or practicing parading, when at the meeting place of the organization.
- By a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.
- Incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law.

(More)

- By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization.
- Within a licensed gun show.
- Within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority.
- When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol.
- By any person while engaged in the act of making or attempting to make a lawful arrest.
- By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.
- By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event.
- Incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ).
- At any established public target range while the person is using that firearm upon the target range.
- By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer.
- Complying with specified provisions of law relating to the regulation of firearms.
- Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training.
- Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon.
- Incident to and at the request of a sheriff or chief or other head of a municipal police department.
- If all of the following conditions are satisfied:

  - The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;
  - The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and
  - The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

- By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol.
- By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion.
- By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a weapon within a public transit system.
- On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.
- The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit.
- By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning form the training.
- By a person in compliance with specified provisions related to carrying a firearm in an airport.
- By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

This bill states that, for purposes of the prohibition on openly carrying an unloaded firearm that is not a handgun, the definition of "firearm" does not include any antique firearm.

This bill exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

This bill exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in airports and commuter passenger terminals.

This bill makes conforming technical changes.

RJN Ex. 2 -053

### *RECEIVERSHIP/OVERCROWDING CRISIS AGGRAVATION ("ROCA")*

In response to the unresolved prison capacity crisis, since early 2007 it has been the policy of the chair of the Senate Committee on Public Safety and the Senate President pro Tem to hold legislative proposals which could further aggravate prison overcrowding through new or expanded felony prosecutions. Under the resulting policy known as "ROCA" (which stands for "Receivership/Overcrowding Crisis Aggravation"), the Committee has held measures which create a new felony, expand the scope or penalty of an existing felony, or otherwise increase the application of a felony in a manner which could exacerbate the prison overcrowding crisis by expanding the availability or length of prison terms (such as extending the statute of limitations for felonies or constricting statutory parole standards). In addition, proposed expansions to the classification of felonies enacted last year by AB 109 (the 2011 Public Safety Realignment) which may be punishable in jail and not prison (Penal Code section 1170(h)) would be subject to ROCA because an offender's criminal record could make the offender ineligible for jail and therefore subject to state prison. Under these principles, ROCA has been applied as a content-neutral, provisional measure necessary to ensure that the Legislature does not erode progress towards reducing prison overcrowding by passing legislation which could increase the prison population. ROCA will continue until prison overcrowding is resolved.

For the last several years, severe overcrowding in California's prisons has been the focus of evolving and expensive litigation. On June 30, 2005, in a class action lawsuit filed four years earlier, the United States District Court for the Northern District of California established a Receivership to take control of the delivery of medical services to all California state prisoners confined by the California Department of Corrections and Rehabilitation ("CDCR"). In December of 2006, plaintiffs in two federal lawsuits against CDCR sought a court-ordered limit on the prison population pursuant to the federal Prison Litigation Reform Act. On January 12, 2010, a three-judge federal panel issued an order requiring California to reduce its inmate population to 137.5 percent of design capacity -- a reduction at that time of roughly 40,000 inmates -- within two years. The court stayed implementation of its ruling pending the state's appeal to the U.S. Supreme Court.

On May 23, 2011, the United States Supreme Court upheld the decision of the three-judge panel in its entirety, giving California two years from the date of its ruling to reduce its prison population to 137.5 percent of design capacity, subject to the right of the state to seek modifications in appropriate circumstances. Design capacity is the number of inmates a prison can house based on one inmate per cell, single-level bunks in dormitories, and no beds in places not designed for housing. Current design capacity in CDCR's 33 institutions is 79,650.

On January 6, 2012, CDCR announced that California had cut prison overcrowding by more than 11,000 inmates over the last six months, a reduction largely accomplished by the passage of Assembly Bill 109. Under the prisoner-reduction order, the inmate population in California's 33 prisons must be no more than the following:

**RJN Ex. 2 -054**

- 167 percent of design capacity by December 27, 2011 (133,016 inmates);
- 155 percent by June 27, 2012;
- 147 percent by December 27, 2012; and
- 137.5 percent by June 27, 2013.

This bill does not aggravate the prison overcrowding crisis described above under ROCA.

## COMMENTS

1.  Need for This Bill

According to the author:

AB 1527 makes it a misdemeanor for carrying an unloaded long gun in public, vehicle or street in incorporated communities in California and in unincorporated communities that meet certain criteria. The bill contains specific exemptions for law enforcement personnel as well as licensed hunters. It is a follow-up to AB 144 of last year that banned the open carry of handguns.

Open carry creates a potentially dangerous situation when police officers respond to calls from the public when confronted with someone carrying a rifle or shotgun. It's a bad situation for everyone -- the police, the gun owner and innocent bystanders who could be injured by this risky behavior. In addition, it wastes time, money and attention when police have to roll-out and respond to these unnecessary calls.

If AB 1527 becomes law, violations are punishable by six months in county jail and a fine up to $1,000. The measure is backed by the California Brady Campaign Against Gun Violence, PORAC- Peace Officers Research Association of California and the California Police Chiefs Association which refers to AB 1527 as "one of our most important bills in this session".

"This bill just makes sense. Sooner or later, somebody's going to get hurt. If you see somebody walking around a mall or main street with a shotgun, it's pretty intimidating. It's unnecessary and it is just going to lead to trouble. I had hoped that the earlier measure banning open carry of handguns would solve this problem but when long gun advocates attended a police fundraiser it became clear that there was more work to do. When law enforcement asks the legislature for help because of a public safety risk, we should help them.

Open carry advocates are now taking the opportunity to openly carry rifles and shotguns in urban areas of the state. Invariably, these demonstrations result in a call to the police or sheriff's departments to respond. This causes the waste of police time and assets besides causing an unnecessary risk to public safety. Attached are several articles that detail such incidences. In one case open carry advocated carried long guns to a city police department fund raiser.

In a Redondo Beach protest in May, an open carry advocate was reported carrying a 12 gauge shotgun through the Redondo Beach pier and adjoining Veterans Park. In the attached photographs you can clearly see that at least 4, maybe 5 or more Redondo Police officers responded to this open carry. In a time when many city and county police and sheriff departments are facing severe budget cuts, our law enforcement agencies shouldn't be squandering scarce resources following open carry advocates around incorporated areas of the state.

## 2. The Open-Carrying of Rifles and Shotguns in Public

In response to the enactment of AB 144 (Portantino) -1 Chapter 725, Statutes of 2011, some gun rights advocates have shifted their focus to openly carrying rifles and shotguns in public places. This bill is intended to outlaw that practice. Last October the San Francisco Chronicle reported:

> SAN LEANDRO -- Now that a new California law banning the open carrying of pistols is loaded for action, the big guns are coming out.

> Rifles, that is. And shotguns.

> Gun owners who are upset that the anti-carry state law will go into effect Jan. 1 intend to start packing their biggest heat in open as often and as visibly as they can, beginning with a gathering in San Leandro today.

> They expect at least 50 gun-toting Second Amendment enthusiasts to show up on Hesperian Boulevard at Bayfair mall from noon to 1 p.m. From target-plinking .22-caliber rifles and .270-caliber deer-hunting weapons to 12-gauge shotguns that can blow a gaping hole in a wall - expect any or all long guns that are legal to own in California, organizers say.

> The point is to be provocative enough to spur action by the courts or legislators to repeal the new law and restore the right to pack unloaded pistols in the open.

> "People are really upset about this law, and if they won't let us carry handguns, we just have to defend ourselves with the next thing available," said co-organizer Yih Chau Chang of Dublin, who intends to bring his unloaded pump-action shotgun to today's rifle meet-up. "This just shows that here in California, our gun-control laws have gotten out of control."

> Gun opponents say this new tactic, which follows last year's open-carry displays of handguns by many of those now promoting rifles, is reprehensible.

> There will be change, all right, they say - but not the kind the gun advocates want.

> 'Alarms the public'

"Actually, this kind of event is an invitation to ban long rifles in public now," said Juliet Leftwich, legal director of Legal Community Against Violence, a gun-control group founded in San Francisco in response to the 101 California St. massacre of 1993 in which nine people died.

"Open carrying of any guns, pistols or rifles alarms the public and it wastes law enforcement resources while they have to monitor the people carrying them," Leftwich said. "It would be best if it were totally banned."

Motivation for tactic

The law spurring this new tactic is AB144, which Gov. Jerry Brown signed Oct. 10. Introduced in January right after the shooting in Tucson that left six dead and 13 wounded including Rep. Gabrielle Giffords, D-Ariz., the law forbids anyone from openly carrying handguns in public.

Previously, Californians could tote handguns any way they wished, in holsters or in their hands, as long as they were unloaded. Violation of the new law is a misdemeanor punishable by up to a year in prison.

California is the fifth state, including Florida and Texas, to outlaw openly carrying pistols. The District of Columbia also forbids it. Thirty-three states allow unrestricted open carry, and 12 require permits.

Gun advocates say the California law is doomed whenever a lawsuit gets filed - and they say one will be - because two federal court rulings in the past year asserted the legality of open-carry rights. The rulings upheld rejections of several individual concealed-weapons-permit applications in San Diego and Yolo counties, saying the old open-carry law negated the need to pack a hidden gun.

Gun-control advocates say the gun-rights crowd shouldn't pin any hopes on those rulings.

They say the danger is too acute to play politics with, citing figures from the Brady Center to Prevent Gun Violence showing that America's annual toll of 30,000 gun-related deaths far outstrips those of any other Western country. Britain, for example, experiences about 50 gun-related deaths a year.

Seal Beach rampage cited

Gun advocates say those same statistics just prove their point.

"What you will see if you restrict people's gun rights is more of what happened in Seal Beach last week, where people don't have the right to defend themselves," said Jeff Dunhill, an open-carry organizer who spent this week hunting elk in Colorado. He was referring to a rampage in which eight people were shot to death

(More)

at an Orange County beauty salon, allegedly by a man involved in a child-custody battle with one of the victims.

"They are arguing that patrons at the nail salon in Seal Beach should have had firearms with them?" said Leftwich. "That's crazy."

(*Handgun Law Riles Activists - They'll Carry Rifles,* San Francisco Chronicle, Saturday, October 22, 2011, http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2011/10/21/BAVU1LKGRM.DTL)

3. Is Banning Open Carrying of Rifles and Shotguns Unconstitutional?

The Second Amendment to the United States Constitution states, "A well-regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed". (U.S. Const., Second Amend.) For many years, courts have wrestled with the question of whether the Second Amendment protects the individual's right to own a weapon. In *United States vs. Cruikshank* (1875) 92 U.S. 542, the Supreme Court held that the Second Amendment guaranteed states the right to maintain militias but did not guarantee to individuals the right to possess guns. Subsequently, in *United States vs. Miller* (1939), the Court upheld a federal law banning the interstate transportation of certain firearms. Miller, who had been arrested for transporting a double-barreled sawed-off shotgun from Oklahoma to Arkansas, claimed the law was a violation of the Second Amendment.

The Court rejected Miller's argument, stating:

> In the absence of any evidence tending to show that possession or use of a "shotgun having a barrel of less than eighteen inches in length" at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense. (*United States* v. *Miller,* 307 U.S. 174, 178 (1939).)

> For many years following the Supreme Court's decision in *United States vs. Miller,* the orthodox opinion among academics and federal appeals courts alike was that the Second Amendment to the United States Constitution did not protect possession of firearms unrelated to service in the lawfully established militia. (Merkel, *Parker v. District of Columbia and the Hollowness of the Originalist Claims to Principled Neutrality,* 18 Geo. Mason U. Civil Right L. Journal, 251, 251.)

That changed in June 2008, when the United States Supreme Court ruled in *District of Columbia vs. Heller* that a District of Columbia complete ban on possession of a handgun in the home was an unconstitutional violation of the Second Amendment. (*District of Columbia v. Heller* (2008) 128 S. Ct. 2783, 2797.) After a lengthy discussion of the historical context and meaning of the Second Amendment, the Court stated:

**RJN Ex. 2 -058**

Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment. We look to this because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right. The very text of the Second Amendment implicitly recognizes the pre-existence of the right and declares only that it 'shall not be infringed.' As we said in *United States v. Cruikshank* [citation omitted] '[t]his is not a right granted by the Constitution. Neither is it in any manner dependent upon that instrument for its existence. The Second Amendment declares that it shall not be infringed ...' " (*Heller* at 2797.)

However, in the *Heller* decision, the Supreme Court also stated:

Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. n26

FOOTNOTES

n26 We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive. (*District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2816-2817 (2008), citations omitted.)

Therefore, while the *Heller* decision established that the right to own a firearm is a personal right, not one limited to ownership while serving in a "well-regulated militia," it also held that the government may place reasonable restrictions on that right such as restricting "carrying firearms in sensitive places." It is not clear whether the Supreme Court would include in its list of lawful regulatory measures prohibiting the open carrying of unloaded rifles and shotguns in public.

## IS A BAN ON OPEN CARRYING OF RIFLES AND SHOTGUNS IN PUBLIC CONSTITUTIONAL?

(More)

RJN Ex. 2 -059

4.  Argument in Support

The Peace Officer Research Association states:

> The practice by individuals and organizations to "openly carry" firearms in public places in order to challenge law enforcement and firearms statutes in California is increasing in frequency. While PORAC understands that most of these open carry demonstrations are being done by law abiding citizens, it places law enforcement and the public in a precarious and possible dangerous situation. Most often, law enforcement is called to the scene based on a citizen or merchant complaint. When the officer arrives at the scene, it is their obligation to question those persons carrying the firearms and to inquire as to whether the firearm is loaded. Until that officer has physically seen if the firearm is loaded, that officer must assume that their lives and the lives of those around them may be in danger.

> Again, these situations are potentially dangerous and should not occur in a public place wherein any number of things could go wrong. We believe this bill will be very helpful in preventing these potentially unsafe incidents from happening.

5.  Argument in Opposition

The National Association for Gun Rights states:

> Rifles and shotguns are hardly the weapons of choice for the common criminal. This is yet another attempt to prohibit something because it "looks scary."

> In a recent press release, Assemblyman Anthony Portantino admitted this bill is merely retaliation against law-abiding citizens who chose to peacefully exercise their First Amendment right of free speech in support of their Second Amendment rights after passage of last year's Open Carry Ban.

> Punishing citizens for engaging in lawful public demonstration is an outrageous abuse of power, further infringing on their constitutionally protected rights.

> Currently twenty-eight states allow for the Open Carry of firearms in some form without a permit, and an additional thirteen allow Open Carry with a permit. Eight states and the District of Colombia ban open carry; half of which are remnants of the "Jim Crow" era where the intent was to prevent African-Americans from possessing firearms.

> Open Carry should be viewed in the same light as [ ] concealed carry: if a person is legally able to purchase a firearm, it is not the place of the state to deny their right to carry it.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**RJN Ex. 2 -060**

ASSEMBLY THIRD READING
AB 1527 (Portantino and Ammiano)
As Amended April 10, 2012
Majority vote

| PUBLIC SAFETY | 4-2 | APPROPRIATIONS | 12-5 |
|---|---|---|---|

Ayes: Ammiano, Cedillo, Mitchell, Skinner

Ayes: Fuentes, Blumenfield, Bradford, Charles Calderon, Campos, Davis, Gatto, Hall, Hill, Lara, Mitchell, Solorio

Nays: Knight, Hagman

Nays: Harkey, Donnelly, Nielsen, Norby, Wagner

SUMMARY: Makes it a misdemeanor, with certain exceptions, for a person to carry an unloaded firearm that is not a handgun on his or her person outside a motor vehicle in an incorporated city or city and county. Specifically, this bill:

1) Makes it a misdemeanor punishable by imprisonment in a county jail not to exceed six months, or by a fine not to exceed $1,000, or both, for person to carry an unloaded firearm that is not a handgun on his or her person outside a vehicle while in an incorporated city or city and county, and makes this offense punishable by imprisonment in the county jail not exceeding one year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended ammunition capable of being fired from that firearm are in the immediate possession of that person and the person is not in lawful possession of that firearm.

2) States that the sentencing provisions of this prohibition shall not preclude prosecution under other specified provisions of law with a penalty that is greater.

3) Provides that the provisions of this prohibition are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

4) Provides that the provisions relating to the carrying of an unloaded firearm that is not a handgun on his or her person outside a vehicle in specified areas does not apply under any of the following circumstances:

   a) By a person when done within a place of business, a place of residence, or on private property, or if done with the permission of the owner or lawful possessor of the property;

   b) When the firearm is either in a locked container or encased and it is being transported directly from any place where a person is not prohibited from possessing that firearm and the course of travel includes only those deviations that are reasonably necessary under the circumstances;

   c) If the person possessing the firearm reasonably believes that he or she is in grave danger because of circumstances forming the basis of a current restraining order issued by a

RJN Ex. 2 -061

court against another person or persons who has or have been found to pose a threat to his or her life or safety, as specified;

d) By any peace officer or by an honorably retired peace officer if that officer may carry a concealed firearm, as specified;

e) By any person to the extent that person is authorized to openly carry a loaded firearm as a member of the military of the United States;

f) As merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative or agent of that business;

g) By a duly authorized military or civil organization, or the members thereof, while parading or rehearsing or practicing parading, when at the meeting place of the organization;

h) By a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range;

i) By a licensed hunter while engaged in lawful hunting or while transporting that firearm while going to or returning from that hunting expedition;

j) Incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law;

k) By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization;

l) Within a licensed gun show;

m) Within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority;

n) When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol;

o) By any person while engaged in the act of making or attempting to make a lawful arrest;

p) By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training;

**RJN Ex. 2 -062**

q) By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or while the participant or authorized employee or agent is at that production event;

r) Incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ);

s) At any established public target range while the person is using that firearm upon the target range;

t) By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer;

u) Complying with specified provisions of law relating to the regulation of firearms;

v) Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training;

w) Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon;

x) Incident to and at the request of a sheriff or chief or other head of a municipal police department;

y) If all of the following conditions are satisfied:

   i) The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

   ii) The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and,

   iii) The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

z) By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol;

aa) By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion;

bb) By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a weapon within a public transit system;

cc) On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun;

dd) The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit;

ee) By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning form the training;

ff) By a person in compliance with specified provisions related to carrying a firearm in an airport; or,

gg) By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

5) Exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

6) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

7) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in an airport.

8) Makes conforming technical changes.

FISCAL EFFECT: According to the Assembly Appropriations Committee, unknown, likely minor, non-state-reimbursable local law enforcement and incarceration costs, offset to a degree by increased fine revenue.

COMMENTS: According to the author, "AB 1527 is a modified version of AB 144 from last session. AB 1527 bans the open carrying of an unloaded firearm that is not a handgun in an incorporated city or city and county, with specific exceptions." The absence of a prohibition on 'open carry' of long guns has created an increase in problematic instances of these guns carried in public, alarming unsuspecting individuals causing issues for law enforcement. Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

"In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could

RJN Ex. 2 -064

AB 1527
Page 5

be lethal. In this situation the practice of 'open carry' creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in 'open carry' calls has placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

Please see the policy committee for a full discussion of this bill.

Analysis Prepared by:    Gregory Pagan / PUB. S. / (916) 319-3744

FN: 0003321

RJN Ex. 2 -065

Date of Hearing:   April 18, 2012

### ASSEMBLY COMMITTEE ON APPROPRIATIONS
Felipe Fuentes, Chair

AB 1527 (Portantino) – As Amended:  April 10, 2012

| | | | |
|---|---|---|---|
| Policy Committee:  Public Safety | | Vote:   4-2 | |
| Urgency:  No     State Mandated Local Program: Yes | | Reimbursable:    No | |

## SUMMARY

This bill makes it a misdemeanor, with a long list of exceptions, for a person to carry an unloaded gun that is not a handgun on his or her person (long-gun open-carry) outside a motor vehicle in an incorporated city or city and county.  Specifically, this bill:

1) Makes the misdemeanor punishable by up to six months and/or a fine of up to $1,000, or by up to one year in county jail and/or a fine up to $1,000 if the gun and unexpended ammunition capable of being fired from that gun are in the immediate possession of that person and the person is not in lawful possession of that gun.

2) Creates a lengthy series of exceptions to the long-gun open carry prohibition.

3) Makes a series of conforming changes.

## FISCAL EFFECT

Unknown, likely minor, non-state-reimbursable local law enforcement and incarceration costs, offset to a degree by increased fine revenue.

## COMMENTS

1) Rationale. The principle purpose of the bill is to follow up on the author's AB 144 (Statutes of 2011), which made public open-carry of handguns a misdemeanor, as specified, by expanding the prohibition to long-guns in incorporated cities.

   According to the author, "The absence of a prohibition on 'open carry 'of long guns has created an increase in problematic instances of these guns carried in public, alarming unsuspecting individuals causing issues for law enforcement. Open carry creates a potentially dangerous situation. In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

   "In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal. In this situation the practice of 'open carry' creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in "open carry" calls placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

2) Current law.

   a) Makes it a misdemeanor punishable by up to six months in county jail and/or a fine of up to $1,000 to carry an exposed and unloaded handgun upon his or her person, or inside a vehicle, while in any public place or on any public street in an incorporated city, on any public street in a prohibited area of an unincorporated county, in any public place in a prohibited area of a city or county  The penalty is up to one year in county jail and/or a fine of up to $1,000 if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the gun.

   b) Makes it a felony or a misdemeanor, depending on the circumstances, to carry a loaded gun upon the person or in a vehicle while at any public or on any public street in an incorporated city or in any public place or in a prohibited area of an unincorporated territory.

3) Support. According to the Peace Officers Research Association of California (PORAC), "The practice by individuals and organizations to "openly carry" firearms in public places in order to challenge law enforcement and firearm statutes in California is increasing in frequency.  While PORAC understands that most of these open carry demonstrations are being done by law abiding citizens, it places law enforcement and the public in a precarious and possibly dangerous situation."

According to the California Chapter of the Brady Campaign to Prevent Gun Violence, "The California Brady Campaign Chapters oppose the open carry of long guns for the same reasons that we opposed the open carrying of handguns. We continue to believe that carrying exposed firearms in crowded public places with ammunition readily available is inappropriate and risky behavior that threatens public safety and strains law enforcement resources. The carrying of exposed rifles and shotguns in urban settings, such as shopping malls and restaurants, is particularly inappropriate and threatening."

4) Opposition. According to the National Rifle Association of America, "The defensive carrying of firearms in public is protected by the Second Amendment of the United States Constitution, which the U.S. Supreme Court has already stated protects the individual right to possess and carry weapons in case of confrontation.

"The extreme nature of this prohibition is illustrated in the bill itself, which follows the prohibition with dozens of exceptions, all of which merely reflect the fact that firearms are a normal and integral part of American culture and are handled or carried in a variety of perfectly innocent and legitimate context."

Analysis Prepared by:   Geoff Long/ APPR. / (916) 319-2081

RJN Ex. 2 -067

Date of Hearing:  March 27, 2011
Chief Counsel:  Gregory Pagan

## ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Tom Ammiano, Chair

AB 1527 (Portantino) — As Amended:  March 7, 2012

**SUMMARY**:  Makes it a misdemeanor, with certain exceptions, for a person to carry an
unloaded firearm that is not a handgun on his or her person outside a motor vehicle in an
incorporated city or city and county.  Specifically, this bill:

1) Makes it a misdemeanor punishable by imprisonment in a county jail not to exceed six
   months, or by a fine not to exceed $1,000, or both, for person to carry an unloaded firearm
   that is not a handgun on his or her person outside a vehicle while in an incorporated city or
   city and county, and makes this offense punishable by imprisonment in the county jail not
   exceeding one year, or by a fine not to exceed $1,000, or both, if the firearm and unexpended
   ammunition capable of being fired from that firearm are in the immediate possession of that
   person and the person is not in lawful possession of that firearm.

2) States that the sentencing provisions of this prohibition shall not preclude prosecution under
   other specified provisions of law with a penalty that is greater.

3) Provides that the provisions of this prohibition are cumulative, and shall not be construed as
   restricting the application of any other law.  However, an act or omission punishable in
   different ways by different provisions of law shall not be punished under more than one
   provision.

4) Provides that the provisions relating to the carrying of an unloaded firearm that is not a
   handgun on his or her person outside a vehicle in specified areas does not apply under any of
   the following circumstances:

   a) By a person when done within a place of business, a place of residence, or on private
      property, or if done with the permission of the owner or lawful possessor of the property.

   b) When the firearm is either in a locked container or encased and it is being transported
      directly from any place where a person is not prohibited from possessing that firearm and
      the course of travel includes only those deviations that are reasonably necessary under the
      circumstances.

   c) If the person possessing the firearm reasonably believes that he or she is in grave danger
      because of circumstances forming the basis of a current restraining order issued by a
      court against another person or persons who has or have been found to pose a threat to his
      or her life or safety, as specified.

**RJN Ex. 2 -068**

d) By any peace officer or by an honorably retired peace officer if that officer may carry a concealed firearm, as specified.

e) By any person to the extent that person is authorized to openly carry a loaded firearm as a member of the military of the United States.

f) As merchandise by a person who is engaged in the business of manufacturing, wholesaling, repairing or dealing in firearms and who is licensed to engaged in that business or an authorized representative or agent of that business.

g) By a duly authorized military or civil organization, or the members thereof, while parading or rehearsing or practicing parading, when at the meeting place of the organization.

h) By a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

i) By a licensed hunter while engaged in lawful hunting or while transporting that firearm while going to or returning from that hunting expedition.

j) Incident to transportation of a handgun by a person operating a licensed common carrier or an authorized agent or employee thereof when transported in conformance with applicable federal law.

k) By a member of an organization chartered by the Congress of the United States or nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while an official parade duty or ceremonial occasions of that organization.

l) Within a licensed gun show.

m) Within a school zone, as defined, with the written permission of the school district superintendent, his or her designee, or equivalent school authority.

n) When in accordance with the provisions relating to the possession of a weapon in a public building or State Capitol.

o) By any person while engaged in the act of making or attempting to make a lawful arrest.

p) By a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

q) By an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television, or video production or entertainment event when the participant lawfully uses the handgun as part of that production or event or

while the participant or authorized employee or agent is at that production event.

r) Incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice (DOJ).

s) At any established public target range while the person is using that firearm upon the target range.

t) By a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace while he or she is actually engaged in assisting that officer.

u) Complying with specified provisions of law relating to the regulation of firearms.

v) Incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approve by the Commission on Peace Officer Standards and Training.

w) Incident to, and in the course and scope of, training of or by an individual to become licensed to carry a concealed weapon.

x) Incident to and at the request of a sheriff or chief or other head of a municipal police department.

y) If all of the following conditions are satisfied:

   i) The open carrying occurs at an auction or similar event of a nonprofit or mutual benefit corporation event where firearms are auctioned or otherwise sold to fund activities;

   ii) The unloaded firearm that is not a handgun is to be auctioned or otherwise sold for the nonprofit public benefit mutual benefit corporation; and

   iii) The unloaded firearm that is not a handgun is to be delivered by a licensed firearms dealer.

z) By a person who has permission granted by Chief Sergeants at Arms of the State Assembly and the State Senate to possess a concealed firearm within the State Capitol.

aa) By a person exempted from the prohibition against carrying a loaded firearm within the Governor's Mansion.

bb) By a person who is responsible for the security of a public transit system who has been authorized by the public transit authority's security coordinator, in writing, to possess a weapon within a public transit system.

cc) On publicly owned land, if the possession and use of a handgun is specifically permitted by the managing agency of the land and the person carrying the handgun is the registered owner of the handgun.

dd) The carrying of an unloaded firearm that is not a handgun by a person who holds a specified permit.

ee) By a licensed hunter while actually engaged in training a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning form the training.

ff) By a person in compliance with specified provisions related to carrying a firearm in an airport.

gg) By a person who is engaged in the business of manufacturing ammunition and who is licensed to engage in that business, or an authorized representative or authorized agent of the person while the firearm is being used in the lawful course and scope of the licensee's activities, as specified.

5) Exempts security guards and retired peace officers who are authorized to carry an unloaded firearm that is not a handgun from the prohibition against possessing a firearm in a school zone.

6) Recasts existing provisions of law that make it an offense for a person to carry a loaded firearm on his or her person or in a vehicle in a public place or a public street, public road, or public highway in an incorporated city, or on his or her person in a public place or on a public street in a prohibited area of an unincorporated territory, or in a vehicle while in a public place or on a public street, public road, or public highway in any part of an unincorporated area.

7) Expands the prohibition against carrying an exposed an unloaded handgun on his or her person outside a motor vehicle in public areas and public streets to include public roads and public highways in the areas a person is prohibited from carrying an exposed and unloaded handgun, as specified.

8) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a licensed hunter while actually engaged in the training of a dog for the purpose of using the dog in hunting that is not prohibited by law, or while transporting the firearm while going to or returning from that training.

9) Exempts from the prohibition against carrying an exposed and unloaded handgun outside a vehicle in a public place a person in compliance with specified provisions related to carrying a firearm in an airport.

10) Authorizes a county board of supervisors to enact an ordinance that regulates the carrying of unloaded firearms that are not handguns outside of a vehicle in the unincorporated area of a county where the county has prohibited the discharge of firearms if the ordinance contains specified exemptions.

11) Makes conforming technical changes.

EXISTING LAW:

**RJN Ex. 2 -071**

1) Makes it a misdemeanor punishable by imprisonment in the county jail not to exceed six months, by a fine not to exceed $1,000, or by both a fine and imprisonment for any person to carry an exposed and unloaded handgun outside a vehicle upon his or her person while in any public place or on any public street in an incorporated city, or in any public place or public street in a prohibited area of an unincorporated county. [Penal Code Section 26350(a)(1).]

2) Makes the crime of openly carrying an unloaded handgun punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed $1,000, or by that fine and imprisonment if the handgun and unexpended ammunition capable of being discharged from that firearm are in the immediate possession of the person and the person is not the registered owner of the firearm. [Penal Code Section 26350(a)(2).]

3) Provides that a person is guilty of carrying a loaded firearm when the person carries a loaded firearm upon the person or in a vehicle while at any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of an unincorporated territory. [Penal Code Section 25850(a).]

FISCAL EFFECT:   Unknown

COMMENTS:

1) Author's Statement:   According to the author, "AB 1577 is a modified version of AB 144 from last session.  AB 1577 bans the open carrying of an unloaded firearm that is not a handgun in an incorporated city or city and county, with specific exceptions  The absence of a prohibition on 'open carry 'of long guns has created an increase in problematic instances of these guns carried in public, alarming unsuspecting individuals causing issues for law enforcement.  Open carry creates a potentially dangerous situation.  In most cases when a person is openly carrying a firearm, law enforcement is called to the scene with few details other than one or more people are present at a location and are armed.

"In these tense situations, the slightest wrong move by the gun-carrier could be construed as threatening by the responding officer, who may feel compelled to respond in a manner that could be lethal.  In this situation the practice of 'open carry' creates an unsafe environment for all parties involved; the officer, the gun-carrying individual, and for any other individuals nearby as well.

"Additionally, the increase in "open carry" calls has placed to law enforcement has taxed departments dealing with under-staffing and cutbacks due to the current fiscal climate in California, preventing them from protecting the public in other ways."

2) Comments:  This bill makes it a misdemeanor punishable by up to six months in the county jail to carry an unloaded rifle or shotgun in an incorporated city or city and county. Additionally, this bill contains 33 exemptions or exceptions that acknowledge the need to openly carry an unloaded rifle or shotgun in order to engage in otherwise legal activity, such as hunting and target shooting.  What is the point of a prohibition that requires 33 exceptions?

3) Argument in Support:  According to the California Chapter of the Brady Campaign to Prevent Gun Violence, "Last year, AB 144, which prohibits the open carry of unloaded

RJN Ex. 2 -072

handguns was enacted and became operative on January 1, 2012. In response to this new law, the open carry proponents announced that they would openly carry long guns, which is still permitted under existing state law. The original open carry problem has now been escalated with the carrying of exposed long guns in crowded public places and in response, AB 1527 was introduced.

"The California Brady Campaign Chapters oppose the open carry of long guns for the same reasons that we opposed the open carrying of handguns. We continue to believe that carrying exposed firearms in crowded public places with ammunition readily available is inappropriate and risky behavior that threatens public safety and strains law enforcement resources. The carrying of exposed rifles and shotguns in urban settings, such as shopping malls and restaurants, is particularly inappropriate and threatening.

"Those who carry exposed long guns in public are not required to undergo any special screening or clearance. In fact, there is no verification process to ensure that the person is not prohibited from possessing firearms. People who carry long guns in crowded public places may lack the skill, experience, judgment or moral character for safely carrying an exposed weapon, particularly when faced with a confrontational situation.

"The public display and flaunting of long guns in shopping malls and restaurants puts employees and customers at risk of an accidental or vigilante-type incident where innocent bystanders could get shot. A member of the public, when confronted by a person openly carrying a long gun, has no way of knowing the intentions of that person. Caution would dictate that the incident be reported to police. Police, in turn, must respond and assume that the firearm is loaded until determined otherwise. In this potentially life threatening situation, law enforcement may understandably take lethal action to protect the public and themselves from a perceived armed threat."

4) Argument in Opposition: According to the National Rifle Association of America, "In AB 1527, the proponents seek to ban the open carry of unloaded guns. The provisions are written without the basic comprehension of what an integral part of the open carrying and possession of long guns are in the numerous outdoor activities Californians enjoy.

"The defensive carrying of firearms in public is protected by the Second Amendment of the United States Constitution, which the U.S. Supreme Court has already stated protects 'the individual right to possess and carry weapons in case of confrontation'.

"The extreme nature of this prohibition is illustrated in the bill itself, which follows the prohibition with dozens of exceptions, all of which merely reflect the fact that firearms are a normal and integral part of American culture and are handled or carried in a variety of perfectly innocent and legitimate context."

REGISTERED SUPPORT / OPPOSITION:

Support

Peace Officers Research Association of California
California Chapter of the Brady Campaign to Prevent Gun Violence

AB 1527
Page 7

Opposition

California Rifle and Pistol Association
National Rifle Association of America
National Association for Gun Rights
California Right to Carry

Analysis Prepared by:    Gregory Pagan / PUB. S. / (916) 319-3744

RJN Ex. 2 -074