David W. Affeld, State Bar No. 123922
Brian R. England, State Bar No. 211335
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:    (310) 979-8700

Attorneys for Plaintiff
Michael Zeleny

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY, | Case No. CV 17-7357 JCS |
| Plaintiff, | |
| vs. | <u>Assigned to:</u><br>The Honorable Richard G. Seeborg |
| GAVIN NEWSOM, Jr., *et al.*, | <u>Discovery Matters:</u><br>The Honorable Thomas S. Hixson |
| Defendants. | **REQUEST FOR JUDICIAL NOTICE** |
| | Date:        February 25, 2021<br>Time:        1:30 p.m.<br>Courtroom:  3, 17th Floor |
| | Action Filed:  December 28, 2017<br>Trial Date:      TBD |

- 1 -

REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

**TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Plaintiff Michael Zeleny ("Plaintiff") hereby requests judicial notice pursuant to Federal Rule of Evidence 201 of (a) the legislative history of current California Penal Code § 29500, *et seq.*; and (b) Report 2017-101 by the California State Auditor, entitled "Concealed Carry Weapon Licenses: Sheriffs Have Implemented Their Local Programs Inconsistently and Sometimes Inadequately" dated December 2017, including Exhibits 1 through 7 attached hereto.

The Court may take judicial notice "at any stage of the proceeding." Fed. R. Evid. 201(a). Judicial notice is appropriate if a fact "is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*, subd. (b). Judicial notice is mandatory "if a party requests it and the court is supplied with the necessary information." *Id.*

Courts routinely take judicial notice of public records. *See*, *e.g.*, *Gerritsen v. Warner Bros. Ent'mt Inc.*, 112 F.Supp.3d 1011, 1033-34 (C.D. Cal. 2015). "Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." *Id.* (citations, modifications, and quotation marks omitted).

A. **Judicial Notice of the Legislative History of Penal Code § 29500, *et seq.* Is Appropriate.**

1. **Legislative History of Penal Code § 29500.**

California Penal Code § 29500, *et seq.*, governs the issuance of "Entertainment Firearms Permits" by the California Department of Justice.

What is currently California Penal Code § 29500 was originally enacted in 2004 as Penal Code § 12081 pursuant to Senate Bill 231 (Smith).

**Exhibit 1**   Senate Bill No. 231 (2004), 2004 Cal. Legis. Serv. Ch. 606 (S.B. 231) (West)

**Exhibit 2**   California Penal Code § 12081, "Entertainment firearms permit;

- 2 -

application; forms; contents; review of criminal offender record

information; fees; validity" (Effective Jan. 1, 2006 to Dec. 31, 2011)

(West).

Penal Code § 12081 was enacted to govern the ***transfer*** of firearms from "prop-houses"—*i.e.*, companies that loan props to movie productions—to on-set "prop masters"—*i.e.*, the people who manage firearms and other props on movie sets. *See* Exhibit 3.

It was enacted as a compromise with the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to address a new ATF policy "regarding the transfer of firearms for use in the motion picture industry." *Id.*  Under this new policy, the ATF proposed applying the same rules to "prop houses" and "prop masters" as it applied to federally-licensed gun dealers. *Id.*  Under this policy, before a "prop master" could receive firearms, he or she would have to pass an extensive background check, delaying the transfer by several days, or register as a gun dealer. *Id.*  "Such a policy would severely limit move production in California." *Id.*

Section 12081 reflected a compromise between California and ATF. *Id.*  Rather than require "prop masters" to register as gun dealers or submit to lengthy background checks, section 12081 allows "prop houses" to transfer firearms to "prop masters" having the new permit. *Id.*

**Exhibit 3**     California Bill Analysis, Assembly Committee, 2003-2004 Regular Session, Senate Bill 231 (Aug. 18, 2004), CA B. An., S.B. 231 Assem., 8/18/2004 (West)

**Exhibit 4**     California Bill Analysis, Senate Floor, 2003-2004 Regular Session, Senate Bill 231 (Aug. 16, 2004), CA B. An., S.B. 231 Sen., 8/16/2014 (West).

California Penal Code § 12081 was subject to non-substantive, technical amendments as part of extensive "maintenance" legislation in 2005.

**Exhibit 5**     Senate Bill No. 1108 (2005), 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (West)

Effective January 1, 2012, section 12081 was part of a non-substantive reorganization of the Penal Code provisions governing firearms.  It was, thus, repealed and re-numbered as California Penal Code § 29500, *et seq.*, without substantive change.

| | |
|---|---|
| **Exhibit 6** | Senate Bill No. 1080 (2010), 2010 Cal. Legis. Service Ch. 711 (S.B. 1080) (West) |

### 2.    Judicial Notice Is Appropriate.

Under Federal Rule of Evidence 201, courts are authorized to take judicial notice of the legislative history of statutes. *See Territory of Alaska v. Am. Can. Co.*, 358 U.S. 224, 226-27 (1959); *Sonoma Cnty. Ass'n of Retired Employees v. Sonoma Cnty.*, 708 F.3d 1109, 1120 n. 8 (9th Cir. 2013).

The foregoing legislative history is relevant to the erroneous position taken by Defendant Attorney General Xavier Becerra that the reference to "authorized participants" within the meaning of California Penal Code §§ 26375 and 26405(r) means a person with an Entertainment Firearms Permit under California Penal Code § 29500, *et seq.* As discussed above, the Entertainment Firearms Permit statute governs the transfer of firearms, not the use of firearms as part of a production. It was enacted to avoid federal transfer restrictions. Moreover, the legislative history makes clear that the people required to have such permits are "prop masters," not the individual performers who use firearms as part of a movie production. Incorporating this permitting scheme into sections 26375 and 26405(r), which apply to performers rather than "prop masters," is irreconcilable with the purpose of Penal Code § 29500.

### B.    Judicial Notice of the 2017 State Auditor's Report Is Appropriate.

Judicial notice is appropriate of the 2017 State Auditor's report:

| | |
|---|---|
| **Exhibit 7** | California State Auditor, "Concealed Carry Weapon Licenses: Sheriffs Have Implemented Their Local Programs Inconsistently and Sometimes Inadequately," Report 2017-101 (Dec. 2017). |

Courts may take judicial notice of "records and reports of administrative bodies." *Interstate Nat. Gas Co. v. S. Cal. Gas. Co.*, 209 F.2d 380, 385 (9th Cir. 1995); *Nat'l Urban League v. Ross*, -- F.Supp.3d --, 2020 WL 5739144, at *n.2 (N.D. Cal. Sept. 24, 2020) ("Courts take judicial notice of information, such as reports of the Government Accountability Office [], Census Scientific Advisory Committee [], and Department of Commerce Office of the Inspector General"). The statistical and factual findings in the State Auditor's 2017 report are not subject to

reasonable dispute.

The 2017 State Auditor's Report is relevant because it demonstrates the difficulty of ordinary Californians in obtaining "Concealed Carry" permits, particularly in Los Angeles County, where Plaintiff resides.  It also demonstrates that issuance of such permits varies widely both among counties and within counties.  The report confirms the common sense understanding that it is impossible for many Californians to obtain "Concealed Carry" or "Open Carry" licenses.

Dated:  January 21, 2021                    Respectfully submitted,

                                            s/ Damion Robinson
                                            David W. Affeld
                                            Brian R. England
                                            Damion D. D. Robinson
                                            Affeld Grivakes LLP

                                            Attorneys for Plaintiff Michael Zeleny

REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# Exhibit 1

WEAPONS—LICENSES AND PERMITS—TRANSFERS, 2004 Cal. Legis. Serv. Ch....

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 7 of 697

2004 Cal. Legis. Serv. Ch. 606 (S.B. 231) (WEST)

CALIFORNIA 2004 LEGISLATIVE SERVICE

2004 Portion of 2003-2004 Regular Session

Additions are indicated by Text; deletions by

\* \* \* . Changes in tables are made but not highlighted.

CHAPTER 606

S.B. No. 231

WEAPONS—LICENSES AND PERMITS—TRANSFERS

AN ACT to amend Sections 12073 and 12078 of, and to add Section 12081 to, the Penal Code, relating to firearms, and declaring the urgency thereof, to take effect immediately.

[Filed with Secretary of State September 20, 2004.]

LEGISLATIVE COUNSEL'S DIGEST

SB 231, Scott. Firearms: entertainment firearms permit.

Existing law generally regulates the possession and transfer of firearms.

This bill would establish an entertainment firearms permit, to be issued by the Department of Justice, authorizing the holder to possess firearms for use as props in motion picture, television, video, theatrical, or other entertainment productions. The bill would establish fees for application and renewal of the permit. This bill would make certain false statements on this permit application a misdemeanor.

By creating a new crime, this bill would impose a state-mandated local program.

The bill would also make other conforming technical changes exempting loans of unloaded firearms for use as props from specified requirements applicable to the transfer of firearms.

This bill would make other technical, nonsubstantive changes.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

The bill would declare that it is to take effect immediately as an urgency statute.

The people of the State of California do enact as follows:

SECTION 1. It is the intent of the Legislature to encourage safety while facilitating the appropriate use of firearms by the entertainment industry by enacting a special permit program that will simplify that use for persons who are properly screened. The Legislature finds and declares that the fees in subdivision (c) of Section 12081 of the Penal Code are set at a level that will cover only the costs of this program, and that any adjustment of the fees in the future shall provide only for the costs of the entertainment firearms permit program.

SEC. 2. Section 12073 of the Penal Code is amended to read:

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 8 of 697

WEAPONS—LICENSES AND PERMITS—TRANSFERS, 2004 Cal. Legis. Serv. Ch....

<< CA PENAL § 12073 >>

12073. (a) As required by the Department of Justice, every dealer shall keep a register or record of electronic or telephonic transfer in which shall be entered the information prescribed in Section 12077.

(b) This section shall not apply to any of the following transactions:

(1) The delivery, sale, or transfer of an unloaded firearm that is not a \* \* \* handgun by a dealer to another dealer upon proof of compliance with the requirements of paragraph (1) of subdivision (f) of Section 12072.

(2) The delivery, sale, or transfer of an unloaded firearm by a dealer to another dealer if that firearm is intended as merchandise in the receiving dealer's business upon proof of compliance with the requirements of paragraph (1) of subdivision (f) of Section 12072.

(3) The delivery, sale, or transfer of an unloaded firearm by a dealer to a person licensed as an importer or manufacturer pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and any regulations issued pursuant thereto.

(4) The delivery, sale, or transfer of an unloaded firearm by a dealer who sells, transfers, or delivers the firearm to a person who resides outside this state who is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and any regulations issued pursuant thereto.

(5) The delivery, sale, or transfer of an unloaded firearm by a dealer to a wholesaler if that firearm is being returned to the wholesaler and is intended as merchandise in the wholesaler's business.

(6) The delivery, sale, or transfer of an unloaded firearm that is not a \* \* \* handgun by a dealer to himself or herself.

(7) The loan of an unloaded firearm by a dealer who also operates a target facility which holds a business or regulatory license on the premises of the building designated in the license or whose building designated in the license is on the premises of any club or organization organized for the purpose of practicing shooting at targets upon established ranges, whether public or private, to a person at that target facility or club or organization, if the firearm is kept at all times within the premises of the target range or on the premises of the club or organization.

(8) The delivery of an unloaded firearm by a dealer to a gunsmith for service or repair.

(9) The return of an unloaded firearm to the owner of that firearm by a dealer, if the owner initially delivered the firearm to the dealer for service or repair.

(10) The loan of an unloaded firearm by a dealer to a person who possesses a valid entertainment firearms permit issued pursuant to Section 12081, for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

(c) A violation of this section is a misdemeanor.

SEC. 3. Section 12078 of the Penal Code is amended to read:

<< CA PENAL § 12078 >>

12078. (a)(1) The waiting periods described in Sections 12071, 12072, and 12084 shall not apply to deliveries, transfers, or sales of firearms made to persons properly identified as full-time paid peace officers as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, provided that the peace officers are authorized by their employer to carry firearms while in the performance of their duties. Proper identification is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the purchaser or transferee as a peace officer who is authorized to carry firearms while in the performance of his or her duties, and authorizing the purchase or transfer. The certification shall be delivered to the dealer or local law enforcement agency acting pursuant to Section 12084 at the time of purchase or transfer and the purchaser or transferee shall identify himself or herself as the person authorized in the certification. The dealer or local law enforcement agency shall keep the certification with the record of sale, or LEFT, as the case may be. On the date that the delivery, sale, or transfer is made, the dealer delivering the firearm or the law enforcement agency processing the transaction pursuant to Section 12084 shall forward by prepaid mail to the Department of Justice a report of the transaction pursuant to subdivision (b) or (c) of Section 12077 or Section 12084. If electronic or telephonic transfer of applicant information is used, on the date that the application to purchase is completed, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the transaction as is indicated in subdivision (b) or (c) of Section 12077.

WEAPONS—LICENSES AND PERMITS—TRANSFERS, 2004 Cal. Legis. Serv. Ch....

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 9 of 697

(2) Subdivision (b) of Section 12801 and the preceding provisions of this article do not apply to deliveries, transfers, or sales of firearms made to authorized law enforcement representatives of cities, counties, cities and counties, or state or federal governments for exclusive use by those governmental agencies if, prior to the delivery, transfer, or sale of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made. Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which he or she is employed. Within 10 days of the date a * * * handgun is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Those agencies without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

(3) Subdivision (b) of Section 12801 and the preceding provisions of this article do not apply to the loan of a firearm made by an authorized law enforcement representative of a city, county, or city and county, or the state or federal government to a peace officer employed by that agency and authorized to carry a firearm for the carrying and use of that firearm by that peace officer in the course and scope of his or her duties.

(4) Subdivision (b) of Section 12801 and the preceding provisions of this article do not apply to the delivery, sale, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code. Within 10 days of the date that a * * * handgun is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, transferred, or delivered shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, transferred, or delivered the firearm. Those agencies without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

(5) Subdivision (b) of Section 12801 and the preceding provisions of this article do not apply to the delivery, sale, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Section 12027.1. Within 10 days of the date that a * * * handgun is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, transferred, or delivered shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, transferred, or delivered the firearm. Those agencies without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

(6) Subdivision (d) of Section 12072 and subdivision (b) of Section 12801 do not apply to sales, deliveries, or transfers of firearms to authorized representatives of cities, cities and counties, counties, or state or federal governments for those governmental agencies where the entity is acquiring the weapon as part of an authorized, voluntary program where the entity is buying or receiving weapons from private individuals. Any weapons acquired pursuant to this paragraph shall be disposed of pursuant to the applicable provisions of Section 12028 or 12032.

(7) Subdivision (d) of Section 12072 and subdivision (b) of Section 12801 shall not apply to the sale, loan, delivery, or transfer of a firearm made by an authorized law enforcement representative of a city, county, city and county, state, or the federal government to any public or private nonprofit historical society, museum, or institutional collection or the purchase or receipt of that firearm by that public or private nonprofit historical society, museum, or institutional collection if all of the following conditions are met:

(A) The entity receiving the firearm is open to the public.

(B) The firearm prior to delivery is deactivated or rendered inoperable.

(C) The firearm is not subject to Section 12028, 12028.5, 12030, or 12032.

(D) The firearm is not prohibited by other provisions of law from being sold, delivered, or transferred to the public at large.

(E) Prior to delivery, the entity receiving the firearm submits a written statement to the law enforcement representative stating that the firearm will not be restored to operating condition, and will either remain with that entity, or if subsequently disposed of, will be transferred in accordance with the applicable provisions of this article and, if applicable, Section 12801.

(F) Within 10 days of the date that the firearm is sold, loaned, delivered, or transferred to that entity, the name of the government entity delivering the firearm, and the make, model, serial number, and other identifying characteristics of the firearm and the

name of the person authorized by the entity to take possession of the firearm shall be reported to the department in a manner prescribed by the department.

(G) In the event of a change in the status of the designated representative, the entity shall notify the department of a new representative within 30 days.

(8) Subdivision (d) of Section 12072 and subdivision (b) of Section 12801 shall not apply to the sale, loan, delivery, or transfer of a firearm made by any person other than a representative of an authorized law enforcement agency to any public or private nonprofit historical society, museum, or institutional collection if all of the following conditions are met:

(A) The entity receiving the firearm is open to the public.

(B) The firearm is deactivated or rendered inoperable prior to delivery.

(C) The firearm is not of a type prohibited from being sold, delivered, or transferred to the public.

(D) Prior to delivery, the entity receiving the firearm submits a written statement to the person selling, loaning, or transferring the firearm stating that the firearm will not be restored to operating condition, and will either remain with that entity, or if subsequently disposed of, will be transferred in accordance with the applicable, provisions of this article and, if applicable Section 12801.

(E) If title to a handgun is being transferred to the public or private nonprofit historical society, museum, or institutional collection, then the designated representative of that public or private historical society, museum or institutional collection within 30 days of taking possession of that handgun, shall forward by prepaid mail or deliver in person to the Department of Justice, a single report signed by both parties to the transaction, that includes information identifying the person representing that public or private historical society, museum, or institutional collection, how title was obtained and from whom, and a description of the firearm in question, along with a copy of the written statement referred to in subparagraph (D). The report forms that are to be completed pursuant to this paragraph shall be provided by the Department of Justice.

(F) In the event of a change in the status of the designated representative, the entity shall notify the department of a new representative within 30 days.

(b)(1) Section 12071, subdivisions (c) and (d) of Section 12072, and subdivision (b) of Section 12801 shall not apply to deliveries, sales, or transfers of firearms between or to importers and manufacturers of firearms licensed to engage in that business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(2) Subdivision (b) of Section 12801 shall not apply to the delivery, sale, or transfer of a handgun to a person licensed pursuant to Section 12071, where the licensee is receiving the handgun in the course and scope of his or her activities as a person licensed pursuant to Section 12071.

(c)(1) Subdivision (d) of Section 12072 shall not apply to the infrequent transfer of a firearm that is not a * * * handgun by gift, bequest, intestate succession, or other means by one individual to another if both individuals are members of the same immediate family.

(2) Subdivision (d) of Section 12072 shall not apply to the infrequent transfer of a * * * handgun by gift, bequest, intestate succession, or other means by one individual to another if both individuals are members of the same immediate family and both of the following conditions are met:

(A) The person to whom the firearm is transferred shall, within 30 days of taking possession of the firearm, forward by prepaid mail or deliver in person to the Department of Justice, a report that includes information concerning the individual taking possession of the firearm, how title was obtained and from whom, and a description of the firearm in question. The report forms that individuals complete pursuant to this paragraph shall be provided to them by the Department of Justice.

(B) * * * The person taking title to the firearm shall first obtain a handgun safety certificate.

(C) The person receiving the firearm is 18 years of age or older.

(3) As used in this subdivision, "immediate family member" means any one of the following relationships:

(A) Parent and child.

(B) Grandparent and grandchild.

(d)(1) Subdivision (d) of Section 12072 shall not apply to the infrequent loan of firearms between persons who are personally known to each other for any lawful purpose, if the loan does not exceed 30 days in duration and, when the firearm is a handgun, commencing January 1, 2003, the individual being loaned the handgun has a valid handgun safety certificate.

WEAPONS—LICENSES AND PERMITS—TRANSFERS, 2004 Cal. Legis. Serv. Ch....

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 11 of 697

(2) Subdivision (d) of Section 12072, and subdivision (b) of Section 12801 shall not apply to the loan of a firearm where all of the following conditions exist:

(A) The person loaning the firearm is at all times within the presence of the person being loaned the firearm.

(B) The loan is for a lawful purpose.

(C) The loan does not exceed three days in duration.

(D) The individual receiving the firearm is not prohibited from owning or possessing a firearm pursuant to Section 12021 or 12021.1 of this code, or by Section 8100 or 8103 of the Welfare and Institutions Code.

(E) The person loaning the firearm is 18 years of age or older.

(F) The person being loaned the firearm is 18 years of age or older.

(e) Section 12071, subdivisions (c) and (d) of Section 12072, and subdivision (b) of Section 12801 shall not apply to the delivery of a firearm to a gunsmith for service or repair, or to the return of the firearm to its owner by the gunsmith.

(f) Subdivision (d) of Section 12072 and subdivision (b) of Section 12801 shall not apply to the sale, delivery, or transfer of firearms by persons who reside in this state to persons who reside outside this state who are licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, if the sale, delivery, or transfer is in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(g)(1) Subdivision (d) of Section 12072 shall not apply to the infrequent sale or transfer of a firearm, other than a * * * handgun, at auctions or similar events conducted by nonprofit mutual or public benefit corporations organized pursuant to the Corporations Code.

As used in this paragraph, the term "infrequent" shall not be construed to prohibit different local chapters of the same nonprofit corporation from conducting auctions or similar events, provided the individual local chapter conducts the auctions or similar events infrequently. It is the intent of the Legislature that different local chapters, representing different localities, be entitled to invoke the exemption created by this paragraph, notwithstanding the frequency with which other chapters of the same nonprofit corporation may conduct auctions or similar events.

(2) Subdivision (d) of Section 12072 shall not apply to the transfer of a firearm other than a handgun, if the firearm is donated for an auction or similar event described in paragraph (1) and the firearm is delivered to the nonprofit corporation immediately preceding, or contemporaneous with, the auction or similar event.

(3) The waiting period described in Sections 12071 and 12072 shall not apply to a dealer who delivers a firearm other than a * * * handgun at an auction or similar event described in paragraph (1), as authorized by subparagraph (C) of paragraph (1) of subdivision (b) of Section 12071. Within two business days of completion of the application to purchase, the dealer shall forward by prepaid mail to the Department of Justice a report of the same as is indicated in subdivision (c) of Section 12077. If the electronic or telephonic transfer of applicant information is used, within two business days of completion of the application to purchase, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the same as is indicated in subdivision (c) of Section 12077.

(h) Subdivision (d) of Section 12072 and subdivision (b) of Section 12801 shall not apply to the loan of a firearm to a person 18 years of age or older for the purposes of shooting at targets if the loan occurs on the premises of a target facility that holds a business or regulatory license or on the premises of any club or organization organized for the purposes of practicing shooting at targets upon established ranges, whether public or private, if the firearm is at all times kept within the premises of the target range or on the premises of the club or organization.

(i)(1) Subdivision (d) of Section 12072 shall not apply to a person who takes title or possession of a firearm that is not a * * * handgun by operation of law if the person is not prohibited by Section 12021 or 12021.1 of this code or Section 8100 or 8103 of the Welfare and Institutions Code from possessing firearms.

(2) Subdivision (d) of Section 12072 shall not apply to a person who takes title or possession of a * * * handgun by operation of law if the person is not prohibited by Section 12021 or 12021.1 of this code or Section 8100 or 8103 of the Welfare and Institutions Code from possessing firearms and all of the following conditions are met:

(A) If the person taking title or possession is neither a levying officer as defined in Section 481.140, 511.060, or 680.210 of the Code of Civil Procedure, nor a person who is receiving that firearm pursuant to subparagraph (G), (I), or (J) of paragraph (2) of subdivision (u), the person shall, within 30 days of taking possession, forward by prepaid mail or deliver in person to the Department of Justice, a report of information concerning the individual taking possession of the firearm, how title or possession

WEAPONS—LICENSES AND PERMITS—TRANSFERS, 2004 Cal. Legis. Serv. Ch....

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 12 of 697

was obtained and from whom, and a description of the firearm in question. The reports that individuals complete pursuant to this paragraph shall be provided to them by the department.

(B) If the person taking title or possession is receiving the firearm pursuant to subparagraph (G) of paragraph (2) of subdivision (u), the person shall do both of the following:

(i) Within 30 days of taking possession, forward by prepaid mail or deliver in person to the department, a report of information concerning the individual taking possession of the firearm, how title or possession was obtained and from whom, and a description of the firearm in question. The reports that individuals complete pursuant to this paragraph shall be provided to them by the department.

(ii) Prior to taking title or possession of the firearm, * * * the person shall obtain a handgun safety certificate.

(C) Where the person receiving title or possession of the * * * handgun is a person described in subparagraph (I) of paragraph (2) of subdivision (u), on the date that the person is delivered the firearm, the name and other information concerning the person taking possession of the firearm, how title or possession of the firearm was obtained and from whom, and a description of the firearm by make, model, serial number, and other identifying characteristics, shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that transferred or delivered the firearm. Those agencies without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

(D) Where the person receiving title or possession of the * * * handgun is a person described in subparagraph (J) of paragraph (2) of subdivision (u), on the date that the person is delivered the firearm, the name and other information concerning the person taking possession of the firearm, how title or possession of the firearm was obtained and from whom, and a description of the firearm by make, model, serial number, and other identifying characteristics, shall be entered into the AFS via the CLETS by the law enforcement or state agency that transferred or delivered the firearm. Those agencies without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system. In addition, that law enforcement agency shall not deliver that * * * handgun to the person referred to in this subparagraph * * * unless, prior to the delivery of the same, the person presents proof to the agency that he or she is the holder of a * * * handgun safety certificate.

(3) Subdivision (d) of Section 12072 shall not apply to a person who takes possession of a firearm by operation of law in a representative capacity who subsequently transfers ownership of the firearm to himself or herself in his or her individual capacity. In the case of a * * * handgun, the individual shall obtain a handgun safety certificate prior to transferring ownership to himself or herself, or taking possession of a handgun in an individual capacity.

(j) Subdivision (d) of Section 12072 and subdivision (b) of Section 12801 shall not apply to deliveries, transfers, or returns of firearms made pursuant to Section 12028, 12028.5, or 12030.

(k) Section 12071, subdivision (c) of Section 12072, and subdivision (b) of Section 12801 shall not apply to any of the following:

(1) The delivery, sale, or transfer of unloaded firearms that are not * * * handguns by a dealer to another dealer upon proof of compliance with the requirements of paragraph (1) of subdivision (f) of Section 12072.

(2) The delivery, sale, or transfer of unloaded firearms by dealers to persons who reside outside this state who are licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(3) The delivery, sale, or transfer of unloaded firearms to a wholesaler if the firearms are being returned to the wholesaler and are intended as merchandise in the wholesaler's business.

(4) The delivery, sale, or transfer of unloaded firearms by one dealer to another dealer if the firearms are intended as merchandise in the receiving dealer's business upon proof of compliance with the requirements of paragraph (1) of subdivision (f) of Section 12072.

(5) The delivery, sale, or transfer of an unloaded firearm that is not a * * * handgun by a dealer to himself or herself.

(6) The loan of an unloaded firearm by a dealer who also operates a target facility that holds a business or regulatory license on the premises of the building designated in the license or whose building designated in the license is on the premises of any club or organization organized for the purposes of practicing shooting at targets upon established ranges, whether public or private, to a person at that target facility or that club or organization, if the firearm is at all times kept within the premises of the target range or on the premises of the club or organization.

WEAPONS—LICENSES AND PERMITS—TRANSFERS, 2004 Cal. Legis. Serv. Ch....

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 13 of 697

(l) A person who is exempt from subdivision (d) of Section 12072 or is otherwise not required by law to report his or her acquisition, ownership, or disposal of a \* \* \* handgun or who moves out of this state with his or her \* \* \* handgun may submit a report of the same to the Department of Justice in a format prescribed by the department.

(m) Subdivision (d) of Section 12072 and subdivision (b) of Section 12801 shall not apply to the delivery, sale, or transfer of unloaded firearms to a wholesaler as merchandise in the wholesaler's business by manufacturers or importers licensed to engage in that business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, or by another wholesaler, if the delivery, sale, or transfer is made in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code.

(n)(1) The waiting period described in Section 12071 or 12072 shall not apply to the delivery, sale, or transfer of a \* \* \* handgun by a dealer in either of the following situations:

(A) The dealer is delivering the firearm to another dealer and it is not intended as merchandise in the receiving dealer's business.

(B) The dealer is delivering the firearm to himself or herself and it is not intended as merchandise in his or her business.

(2) In order for this subdivision to apply, both of the following shall occur:

(A) If the dealer is receiving the firearm from another dealer, the dealer receiving the firearm shall present proof to the dealer delivering the firearm that he or she is licensed pursuant to Section 12071 by complying with paragraph (1) of subdivision (f) of Section 12072.

(B) Whether the dealer is delivering, selling, or transferring the firearm to himself or herself or to another dealer, on the date that the application to purchase is completed, the dealer delivering the firearm shall forward by prepaid mail to the Department of Justice a report of the same and the type of information concerning the purchaser or transferee as is indicated in subdivision (b) of Section 12077. Where the electronic or telephonic transfer of applicant information is used, on the date that the application to purchase is completed, the dealer delivering the firearm shall transmit an electronic or telephonic report of the same and the type of information concerning the purchaser or transferee as is indicated in subdivision (b) of Section 12077.

(o) Section 12071 and subdivisions (c) and (d) of Section 12072 shall not apply to the delivery, sale, or transfer of firearms regulated pursuant to Section 12020, Chapter 2 (commencing with Section 12200), or Chapter 2.3 (commencing with Section 12275), if the delivery, sale, or transfer is conducted in accordance with the applicable provisions of Section 12020, Chapter 2 (commencing with Section 12200), or Chapter 2.3 (commencing with Section 12275).

(p)(1) Paragraph (3) of subdivision (a) and subdivision (d) of Section 12072 shall not apply to the loan of a firearm that is not a \* \* \* handgun to a minor, with the express permission of the parent or legal guardian of the minor, if the loan does not exceed 30 days in duration and is for a lawful purpose.

(2) Paragraph (3) of subdivision (a) of Section 12072, subdivision (d) of Section 12072, and subdivision (b) of Section 12801 shall not apply to the loan of a \* \* \* handgun to a minor by a person who is not the parent or legal guardian of the minor if all of the following circumstances exist:

(A) The minor has the written consent of his or her parent or legal guardian that is presented at the time of, or prior to the time of, the loan, or is accompanied by his or her parent or legal guardian at the time the loan is made.

(B) The minor is being loaned the firearm for the purpose of engaging in a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(C) The duration of the loan does not exceed the amount of time that is reasonably necessary to engage in the lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(D) The duration of the loan does not, in any event, exceed 10 days.

(3) Paragraph (3) of subdivision (a), and subdivision (d), of Section 12072, and subdivision (b) of Section 12801 shall not apply to the loan of a \* \* \* handgun to a minor by his or her parent or legal guardian if both of the following circumstances exist:

(A) The minor is being loaned the firearm for the purposes of engaging in a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(B) The duration of the loan does not exceed the amount of time that is reasonably necessary to engage in the lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

WEAPONS—LICENSES AND PERMITS—TRANSFERS, 2004 Cal. Legis. Serv. Ch....

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 14 of 697

(4) Paragraph (3) of subdivision (a), and subdivision (d), of Section 12072 shall not apply to the transfer or loan of a firearm that is not a \* \* \* handgun to a minor by his or her parent or legal guardian.

(5) Paragraph (3) of subdivision (a), and subdivision (d), of Section 12072 shall not apply to the transfer or loan of a firearm that is not a \* \* \* handgun to a minor by his or her grandparent who is not the legal guardian of the minor if the transfer is done with the express permission of the parent or legal guardian of the minor.

(6) Subparagraph (A) of paragraph (3) of subdivision (a) of Section 12072 shall not apply to the sale of a handgun if both of the following requirements are satisfied:

(A) The sale is to a person who is at least 18 years of age.

(B) The firearm is an antique firearm as defined in paragraph (16) of subsection (a) of Section 921 of Title 18 of the United States Code.

(q) Subdivision (d) of Section 12072 shall not apply to the loan of a firearm that is not a \* \* \* handgun to a licensed hunter for use by that licensed hunter for a period of time not to exceed the duration of the hunting season for which that firearm is to be used.

(r) The waiting period described in Section 12071, 12072, or 12084 shall not apply to the delivery, sale, or transfer of a firearm to the holder of a special weapons permit issued by the Department of Justice issued pursuant to Section 12095, 12230, 12250, or 12305. On the date that the application to purchase is completed, the dealer delivering the firearm or the law enforcement agency processing the transaction pursuant to Section 12084, shall forward by prepaid mail to the Department of Justice a report of the same as described in subdivision (b) or (c) of Section 12077 or Section 12084. If the electronic or telephonic transfer of applicant information is used, on the date that the application to purchase is completed, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the same as is indicated in subdivision (b) or (c) of Section 12077.

(s)(1) Subdivision (d) of Section 12072 and subdivision (b) of Section 12801 shall not apply to the infrequent loan of an unloaded firearm \* \* \* by a person who is neither a dealer as defined in Section 12071 nor a federal firearms licensee pursuant to Chapter 44 of Title 18 of the United States Code, to a person 18 years of age or older \* \* \* for use solely as a prop in a motion picture, television, \* \* \* video\* \* \* , theatrical, or other entertainment production or event.

(2) Subdivision (d), and paragraph (1) of subdivision (f), of Section 12072, and subdivision (b) of Section 12801 shall not apply to the loan of an unloaded firearm by a person who is not a dealer as defined in Section 12071 but who is a federal firearms licensee pursuant to Chapter 44 of Title 18 of the United States Code, to a person who possesses a valid entertainment firearms permit issued pursuant to Section 12081, for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event. The person loaning the firearm pursuant to this paragraph shall retain a photocopy of the entertainment firearms permit as proof of compliance with this requirement.

(3) Subdivision (b) of Section 12071, subdivision (c) of, and paragraph (1) of subdivision (f) of, Section 12072, and subdivision (b) of Section 12801 shall not apply to the loan of an unloaded firearm by a dealer as defined in Section 12071, to a person who possesses a valid entertainment firearms permit issued pursuant to Section 12081, for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event. The dealer shall retain a photocopy of the entertainment firearms permit as proof of compliance with this requirement.

(t)(1) The waiting period described in Sections 12071, 12072, and 12084 shall not apply to the sale, delivery, loan, or transfer of a firearm that is a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations, or its successor, by a dealer or through a law enforcement agency to a person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto who has a current certificate of eligibility issued to him or her by the Department of Justice pursuant to Section 12071. On the date that the delivery, sale, or transfer is made, the dealer delivering the firearm or the law enforcement agency processing the transaction pursuant to Section 12084, shall forward by prepaid mail to the Department of Justice a report of the transaction pursuant to subdivision (b) of Section 12077 or Section 12084. If the electronic or telephonic transfer of applicant information is used, on the date that the application to purchase is completed, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the transaction as is indicated in subdivision (b) or (c) of Section 12077.

(2) Subdivision (d) of Section 12072 shall not apply to the infrequent sale, loan, or transfer of a firearm that is not a \* \* \* handgun, which is a curio or relic manufactured at least 50 years prior to the current date, but not including replicas thereof, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations, or its successor.

(u) As used in this section:

(1) "Infrequent" has the same meaning as in paragraph (1) of subdivision (c) of Section 12070.

(2) "A person taking title or possession of firearms by operation of law" includes, but is not limited to, any of the following instances wherein an individual receives title to, or possession of, firearms:

(A) The executor or administrator of an estate if the estate includes firearms.

(B) A secured creditor or an agent or employee thereof when the firearms are possessed as collateral for, or as a result of, a default under a security agreement under the Commercial Code.

(C) A levying officer, as defined in Section 481.140, 511.060, or 680.260 of the Code of Civil Procedure.

(D) A receiver performing his or her functions as a receiver if the receivership estate includes firearms.

(E) A trustee in bankruptcy performing his or her duties if the bankruptcy estate includes firearms.

(F) An assignee for the benefit of creditors performing his or her functions as an assignee, if the assignment includes firearms.

(G) A transmutation of property consisting of firearms pursuant to Section 850 of the Family Code.

(H) Firearms passing to a surviving spouse pursuant to Chapter 1 (commencing with Section 13500) of Part 2 of Division 8 of the Probate Code.

(I) Firearms received by the family of a police officer or deputy sheriff from a local agency pursuant to Section 50081 of the Government Code.

(J) The transfer of a firearm by a law enforcement agency to the person who found the firearm where the delivery is to the person as the finder of the firearm pursuant to Article 1 (commencing with Section 2080) of Chapter 4 of Division 3 of the Civil Code.

SEC. 4. Section 12081 is added to the Penal Code, to read:

<< CA PENAL § 12081 >>

12081. (a) Any person who is at least 21 years of age may apply for an entertainment firearms permit from the Department of Justice that authorizes the permitholder to possess firearms loaned to him or her for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event. Upon receipt of an initial or renewal application submitted as specified in subdivision (b), the department shall examine its records, records the department is authorized to request from the State Department of Mental Health pursuant to Section 8104 of the Welfare and Institutions Code, and records of the National Instant Criminal Background Check System as described in subsection (t) of Section 922 of Title 18 of the United States Code, in order to determine if the applicant is prohibited from possessing or receiving firearms. The department shall issue an entertainment firearms permit only if the records indicate that the applicant is not prohibited from possessing or receiving firearms pursuant to any federal, state, or local law.

(b)(1) Requests for entertainment firearms permits shall be made on application forms prescribed by the Department of Justice that requires applicant information, including but not limited to the following:

(A) Complete name.

(B) Residential and mailing address.

(C) Telephone number.

(D) Date of birth.

(E) Place of birth.

(F) Country of citizenship and, if other than United States, alien number or admission number.

(G) Valid driver's license number or valid identification card number issued by the California Department of Motor Vehicles.

(H) Social security number.

(I) Signature.

(2) All applications must be submitted with the appropriate fee as specified in subdivision (c).

(3) Initial applications for an entertainment firearms permit shall require the submission of fingerprint images and related information in a manner prescribed by the department, for the purpose of obtaining information as to the existence and nature of a record of state or federal level convictions and state or federal level arrests for which the department establishes that the individual was released on bail or on his or her own recognizance pending trial as needed to determine whether the applicant may be issued the permit. Requests for federal level criminal offender record information received by the Department of Justice pursuant to this section shall be forwarded by the department to the Federal Bureau of Investigation.

(4) The Department of Justice shall review the criminal offender record information specified in subdivision (l) of Section 11105 for entertainment firearms permit applicants.

(5) The Department of Justice shall review subsequent arrests, pursuant to Section 11105.2, to determine the continuing validity of the permit as specified in subdivision (d) for all entertainment firearms permitholders.

(6) Any person who furnishes a fictitious name or address or knowingly furnishes any incorrect information or knowingly omits any information required to be provided on this application is guilty of a misdemeanor.

(c) The Department of Justice shall recover the full costs of administering the program by assessing the following application fees:

(1) For the initial application: one hundred four dollars ($104). Of this sum, fifty-six dollars ($56) shall be deposited into the Fingerprint Fee Account, and forty-eight dollars ($48) shall be deposited into the Dealer Record of Sale Account.

(2) For each annual renewal application: twenty–nine dollars ($29), which shall be deposited into the Dealer Record of Sale Account.

(d) The implementation of subdivisions (a), (b), and (c) by the department is exempt from the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

(e) The department shall annually review and shall adjust the fees specified in subdivision (c), if necessary, to fully fund, but not to exceed the actual costs of, the permit program provided for by this section, including enforcement of the program.

(f) An entertainment firearms permit issued by the Department of Justice shall be valid for one year from the date of issuance. If at any time during that year the permitholder becomes prohibited from possessing or receiving firearms pursuant to any federal, state, or local law, his or her entertainment firearms permit shall be no longer valid.

SEC. 5. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

SEC. 6. This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting the necessity are:

In order to assure appropriate regulation of firearms in the entertainment industry, it is necessary that this act take effect immediately.

CA LEGIS 606 (2004)

---

**End of Document**
© 2021 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 2

---

West's Annotated California Codes
 Penal Code (Refs & Annos)
  Part 4. Prevention of Crimes and Apprehension of Criminals (Refs & Annos)
   Title 2. Control of Deadly Weapons (Refs & Annos)
    Chapter 1. Firearms (Refs & Annos)
     Article 4. Licenses to Sell Firearms (Refs & Annos)

This section has been updated. Click here for the updated version.

West's Ann.Cal.Penal Code § 12081

§ 12081. Entertainment firearms permit; application; forms; contents;
review of criminal offender record information; fees; validity

Effective: January 1, 2006 to December 31, 2011

(a) Any person who is at least 21 years of age may apply for an entertainment firearms permit from the Department of Justice that authorizes the permitholder to possess firearms loaned to him or her for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event. Upon receipt of an initial or renewal application submitted as specified in subdivision (b), the department shall examine its records, records the department is authorized to request from the State Department of Mental Health pursuant to Section 8104 of the Welfare and Institutions Code, and records of the National Instant Criminal Background Check System as described in subsection (t) of Section 922 of Title 18 of the United States Code, in order to determine if the applicant is prohibited from possessing or receiving firearms. The department shall issue an entertainment firearms permit only if the records indicate that the applicant is not prohibited from possessing or receiving firearms pursuant to any federal, state, or local law.

(b)(1) Requests for entertainment firearms permits shall be made on application forms prescribed by the Department of Justice that require applicant information, including, but not limited to, the following:

(A) Complete name.

(B) Residential and mailing address.

(C) Telephone number.

(D) Date of birth.

(E) Place of birth.

(F) Country of citizenship and, if other than United States, alien number or admission number.

(G) Valid driver's license number or valid identification card number issued by the California Department of Motor Vehicles.

---

(H) Social security number.

(I) Signature.

(2) All applications must be submitted with the appropriate fee as specified in subdivision (c).

(3) An initial application for an entertainment firearms permit shall require the submission of fingerprint images and related information in a manner prescribed by the department, for the purpose of obtaining information as to the existence and nature of a record of state or federal level convictions and state or federal level arrests for which the department establishes that the individual was released on bail or on his or her own recognizance pending trial as needed to determine whether the applicant may be issued the permit. Requests for federal level criminal offender record information received by the Department of Justice pursuant to this section shall be forwarded by the department to the Federal Bureau of Investigation.

(4) The Department of Justice shall review the criminal offender record information specified in subdivision (l) of Section 11105 for entertainment firearms permit applicants.

(5) The Department of Justice shall review subsequent arrests, pursuant to Section 11105.2, to determine the continuing validity of the permit as specified in subdivision (d) for all entertainment firearms permitholders.

(6) Any person who furnishes a fictitious name or address or knowingly furnishes any incorrect information or knowingly omits any information required to be provided on this application is guilty of a misdemeanor.

(c) The Department of Justice shall recover the full costs of administering the program by assessing the following application fees:

(1) For the initial application: one hundred four dollars ($104). Of this sum, fifty-six dollars ($56) shall be deposited into the Fingerprint Fee Account, and forty-eight dollars ($48) shall be deposited into the Dealer Record of Sale Account.

(2) For each annual renewal application: twenty-nine dollars ($29), which shall be deposited into the Dealer Record of Sale Account.

(d) The implementation of subdivisions (a), (b), and (c) by the department is exempt from the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

(e) The department shall annually review and shall adjust the fees specified in subdivision (c), if necessary, to fully fund, but not to exceed the actual costs of, the permit program provided for by this section, including enforcement of the program.

(f) An entertainment firearms permit issued by the Department of Justice shall be valid for one year from the date of issuance. If at any time during that year the permitholder becomes prohibited from possessing or receiving firearms pursuant to any federal, state, or local law, his or her entertainment firearms permit shall be no longer valid.

**Credits**

(Added by Stats.2004, c. 606 (S.B.231), § 4, eff. Sept. 20, 2004. Amended by Stats.2005, c. 22 (S.B.1108), § 152.)

**Editors' Notes**

**REPEAL**

<Stats.2010, c. 711 (S.B.1080), § 4, provides for repeal of Title 2, "Control of Deadly Weapons", operative Jan. 1, 2012.>

**LAW REVISION COMMISSION COMMENTS**

2010 Repeal

The provisions of the repealed title are continued without substantive change, as follows:

(1) The repealed provisions that relate to sentence enhancements are continued without substantive change in new Title 2 (commencing with Section 12001), entitled "Sentence Enhancements."

(2) The portions of former Section 12590 relating to picketing in the uniform of a peace officer are continued in new Section 830.95.

(3) All other repealed provisions are continued without substantive change in new Part 6 (commencing with Section 16000), entitled "Control of Deadly Weapons." [38 Cal.L.Rev.Comm. Reports 217 (2009)].

West's Ann. Cal. Penal Code § 12081, CA PENAL § 12081
Current with all laws through Ch. 372 of 2020 Reg.Sess.

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 3

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 22 of 697

California Bill Analysis, S.B. 231 Assem., 8/18/2004, California Bill Analysis, S.B. 231...

CA B. An., S.B. 231 Assem., 8/18/2004

California Bill Analysis, Assembly Committee, 2003-2004 Regular Session, Senate Bill 231

August 18, 2004
California Assembly
2003-2004 Regular Session

Date of Hearing: August 18, 2004

Counsel: Harry Ermoian

ASSEMBLY COMMITTEE ON PUBLIC SAFETY

Mark Leno, Chair

SB 231 (Scott) - As Amended: August 16, 2004

SUMMARY : Authorizes the Department of Justice (DOJ) to establish and issue "entertainment firearms permits" that designate a person who may possess firearms loaned to the entertainment industry for theatrical purposes. Specifically, this bill :

1)Authorizes the DOJ to issue an "entertainment firearms permit" to a person 21 years of age or older who is not prohibited from possessing or receiving firearms, which would allow the permit holder to possess firearms loaned to him or her solely as a prop for use as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

 a) Specifies information that shall be included in the application for a permit, the process for the background check, and authorizes DOJ to receive updated information regarding persons who become prohibited from possessing firearms during the term of the permit.

 b) Establishes a misdemeanor for an applicant to furnish a fictitious name, address, or knowingly incorrect or incomplete information.

 c) Specifies that the initial application fee shall be $104 and the annual renewal fee shall be $29, as well as directs the accounts to which the fees shall be deposited.

 d) Provides that the implementation of the entertainment firearms permit program by DOJ, except the annual review and potential adjustment of fees, shall be exempt from the Administrative Procedures Act.

 e) Directs DOJ to annually review the fees associated with the entertainment firearms permit and, if necessary, adjust the fees to ensure that the fees fully fund but not exceed the actual cost of the permit program.

 f) Specifies that the entertainment firearms permit shall be valid for one year and shall be invalid if at any time during the year the permit holder becomes prohibited from possessing or receiving firearms.

2)Recasts the existing exemption from the licensed firearm dealer transfer and handgun safety certificate requirements for firearms used as theatrical props into three distinct provisions:

 a) Largely retains the existing exemption for loans of unloaded firearms for theatrical prop purposes, but specifies that exemption applies to a transfer by a person who is neither a state-licensed dealer or a federal firearms licensee (FFL), limits that exemption to infrequent transactions and unloaded firearms, and applies the revised description of qualified theatrical events.

 b) Applies the same exemptions to loans of unloaded firearms for theatrical prop purposes from a FFL to a person who possesses a valid entertainment firearms permit, exempts the licensure verification requirements applicable to FFL to FFL transfers, and requires the loaning person to retain a photocopy of the entertainment firearms permit.

 c) Applies the same exemptions to loans of unloaded firearms for theatrical prop purposes from a state-licensed dealer to a person who possesses a valid entertainment firearms permit and also exempts these loans from specified state license forfeiture laws and the licensure verification requirements applicable to FFL to FFL transfers. The person loaning the firearm would also be required to retain a photocopy of the entertainment firearms permit.

Case 3:17-cv-07357-RS  Document 163-3  Filed 01/21/21  Page 23 of 697

California Bill Analysis, S.B. 231 Assem. 8/18/2004, California Bill Analysis, S.B. 231...

3)Exempts the loan of an unloaded firearm for use as a theatrical prop, as specified, by a state-licensed dealer to a person who possesses a valid entertainment firearms permit from the record of transaction requirements.

4)State legislative intent regarding the purpose of this bill. State that the fees established in this bill may be adjusted to include only the costs of the entertainment firearms permit program.

5)Revises the references from "pistol, revolver, or other firearms capable of being concealed upon the person" to "handgun" in applicable sections.

6)Conforms various existing cross-references to renumbered sections of the Code of Federal Regulations and future successor CFR sections.

7)Incorporates amendments made to Penal Code Section 12078 by SB 1140 (Scott), pending hearing by the Assembly Appropriations Committee, to avoid potential chaptering conflicts.

EXISTING LAW :

1)Provides that it is a misdemeanor to sell, lease, or transfer firearms without a state-issued firearms dealer license, except as provided in specified exceptions, and sets forth the requirements of such a license. (Penal Code Sections 12070 and 12071.)

2)Exempts from the state-issued firearms licensure requirement the infrequent sale, lease, or transfer of firearms as well as the loan of an unloaded firearm or a firearm loaded with blanks for use solely as a prop for a motion picture, television, video production, or entertainment or theatrical event. [ [ [Penal Code Section 12070(b)(4) and (b)(17).]

3)Requires dealers to obtain, maintain, and submit record of sale information to DOJ pertaining to each firearms purchase or transfer, except as specified. (Penal Code Sections 12073 through 12078.)

4)Specifies requirements that must be met prior to the delivery of a firearm, such as waiting periods; a background check; and, where appropriate, a handgun safety certificate. [Penal Code Section 12072(c).]

5)Provides where neither party to a firearms transaction holds a firearms dealer's license, the parties to the transaction shall complete the sale, loan, or transfer of that firearm through either a state-licensed dealer or a sheriff's office in smaller counties, as specified. [Penal Code Sections 12072(d), 12082, and 12084.]

6)Provides that transfers between federal firearm licensees must follow a specified process for the DOJ to verify that the recipient is properly licensed, eligible to receive firearms, or is exempt from state licensure. [ [ [Penal Code Section 12072(f) (1).]

7)Prohibits any person from doing purchasing or receiving any handgun, except as specified, without a valid handgun safety certificate; or selling, delivering, transferring, or loaning any handgun to a person who does not have a valid handgun safety certificate. [Penal Code Section 12801(b).]

8)Exempts specified transactions from the licensed firearm dealer transactions and handgun safety certificate requirements, including loans of an unloaded firearm or a firearm loaded with blanks for use solely as a prop for a motion picture, television or other entertainment event. [Penal Code Section 12078(s).]

9)Requires that a FFL initiate a background check prior to transferring a firearm to a person who is not also an FFL, except under specified circumstances, including where the receiving person has a state-issued permit to possess or receive firearms issued after a background check. [18 U.S.C. Section 922(t).]

FISCAL EFFECT : Unknown

COMMENTS :

1)Author's Statement : According to the author, "Under this bill, prop firearms can be loaned infrequently for use in a motion picture, television, video, theatrical, or other entertainment production or event without any type of special permit or license, as permitted under current California law.

In order for prop firearms to be loaned frequently for use in a motion picture, television, video, theatrical, or other entertainment production or event, the loaning person must be a licensed firearm dealer and the person loaned the firearm must have an 'entertainment firearms permit.'

"This bill sets forth the requirements for obtaining, renewing and maintaining an entertainment firearms permit. In order to obtain a permit, applicants must be at least 21 years of age, pass a background check conducted by DOJ, and pay an application fee of $104. Entertainment firearms permits are valid for one year, and can be renewed each year for a fee of $29. If a permitee becomes prohibited from possessing firearms while the permit is in effect, the permit is no longer valid."

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 24 of 697

California Bill Analysis, S.B. 231 Assem., 8/18/2004, California Bill Analysis, S.B. 231...

2)Stated Need for this Bill : According to the author's office, "the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) recently informed prop houses of ATF's new policy regarding the transfer of firearms for use in the motion picture industry. The ATF intends to apply the same rules to prop houses that frequently loan prop firearms that applies to gun dealers. Under the new policy, firearms altered to shoot blank ammunition and temporarily loaned by prop houses to theatrical and television motion picture production companies would be subject to federal laws regarding the sale of firearms by gun dealers. This new policy is a major shift and conflicts with the well-established intent of California's lawmakers to exempt the motion picture industry from state gun laws such as the 10-day waiting period to purchase firearms, the one-gun-per-month purchase limit, and the handgun safety certificate requirement. When applied to Hollywood prop masters, the new ATF policy would require prop houses that frequently loan unloaded firearms to conduct background checks on gun recipients or to transfer prop firearms only to other licensed firearms dealers. Such a policy will severely limit movie production in California (or anywhere else in the nation) and could contribute to the flight of the film industry overseas. DOJ has worked with ATF to reach a compromise that ensures that appropriately regulates the temporary loan of firearms in the motion picture industry. This bill is the legislative vehicle for that compromise."

3)ATF Clarification of Existing Law Applicability - Not Yet in Writing : Under existing federal law, if the recipient prop master is not a licensed firearms dealer, the Brady law background check requirements are applicable before the firearm can be loaned, potentially delaying a loan for several days. At some point, it came to the attention of ATF that some entertainment industry-related loans were occurring in the absence of a firearms dealer license or background check. As a result, ATF informed the entertainment industry of its concerns with Brady law compliance.

Although there have been several meetings between the affected parties and the ATF, the ATF has apparently not placed its explanation of Brady law applicability in writing to affected parties. The DOJ has requested that ATF provide a letter confirming that the compromise proposed in this bill will resolve the current conflict, consistent with the understanding that had apparently been conveyed to DOJ staff. Committee staff was able to contact ATF staff regarding this bill, able to confirm that ATF had reviewed this bill while in draft form, and this bill appeared to meet the requirements of the Brady law.

4)Temporary Solution in Place in Anticipation of this Bill : Because the background check requirement is the product of existing law, in the absence of a license, this process must already be used for entertainment industry-related loans. In anticipation of the entertainment firearms permit process and exemptions included in this bill, DOJ has implemented an interim method of conducting firearms eligibility background checks for persons working within the entertainment industry and who may be a firearm loan transferee. This temporary process provides some continuity for the entertainment industry, but does not include the complete structure of the entertainment firearms permit included in this bill. DOJ has, however, represented in its open letter announcing the interim program that the a loan transferee that undergoes this process will temporarily be in compliance with the federally required background check.

REGISTERED SUPPORT / OPPOSITION :

Support

Motion Picture Association of America

Opposition

None on file

Analysis Prepared by : Harry Ermoian / PUB. S. / (916) 319-3744

CA B. An., S.B. 231 Assem., 8/18/2004

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

 © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 4

CA B. An., S.B. 231 Sen., 8/16/2004

California Bill Analysis, Senate Floor, 2003-2004 Regular Session, Senate Bill 231

August 16, 2004
California Senate
2003-2004 Regular Session

SENATE RULES COMMITTEE

Office of Senate Floor Analyses

UNFINISHED BUSINESS

Bill No: SB 231

Author: Scott (D) and Murray (D), et al

Amended: 8/16/04

Vote: 27 - Urgency

ALL PRIOR SENATE VOTES NOT RELEVANT

ASSEMBLY FLOOR : 78-0, 8/23/04 - See last page for vote

SUBJECT : Firearms

SOURCE : Author

DIGEST : Assembly Amendments delete the prior version, which dealt with hereditary disorders, add provisions relating to firearms, and add an urgency clause.

As amended, this bill now establishes an entertainment firearms permit, to be issued by the State Department of Justice, authorizing the holder to possess firearms for use as props in motion picture, television, video, theatrical, or other entertainment productions. The bill establishes fees for application and renewal of the permit. The bill makes certain false statements on this permit application a misdemeanor..

ANALYSIS : Existing law generally regulates the possession and transfer of firearms.

This bill authorizes the State Department of Justice (DOJ) to establish and issue entertainment firearms permits that designate a person who may possess firearms loaned to the entertainment industry for theatrical purposes.

Specifically, this bill:
  1.Authorizes DOJ to issue an entertainment firearms permit to a person 21 years of age or older who is not prohibited from possessing or receiving firearms, which allows the permit holder to possess firearms loaned to him or her solely as a prop for use as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.
  2.Specifies information that shall be included in the application for a permit, the process for the background check, and authorizes DOJ to receive updated information regarding persons who become prohibited from possessing firearms during the term of the permit.
  3.Establishes a misdemeanor for an applicant to furnish a fictitious name, address, or knowingly incorrect or incomplete information.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 27 of 697

California Bill Analysis, S.B. 231 Sen., 8/16/2004, California Bill Analysis, S.B. 231...

4.Specifies that the initial application fee shall be $104 and the annual renewal fee shall be $39, as well as directs the accounts to which the fees shall be deposited.

5.Provides that the implementation of the entertainment firearms permit program by DOJ, except the annual review and potential adjustment fees, shall be exempt from the Administrative Procedures Act.

6.Directs DOJ to annually review the fees associated with the entertainment firearms permit and, if necessary, adjust the fees to ensure that the fees fully fund but not exceed the actual cost of the permit program.

7.Specifies that the entertainment firearms permit shall be valid for one year and shall be invalid if at any time during the year the permit holder becomes prohibited from possessing or receiving firearms.

8.Recasts the existing exemption from the licensed firearm dealer transfer and handgun safety certificate requirements for firearms used as theatrical props into three distinct provisions:

  A. Largely retains the existing exemption for loans of unloaded firearms for theatrical prop purposes, but specifies that exemption applies to a transfer by a person who is neither a state-licensed dealer or a federal firearms license, limits that exemption to infrequent transactions and unloaded firearms, and applies the revised description of qualified theatrical events.

  B. Applies the same exemptions to loans of unloaded firearms for theatrical prop purposes from a FFL to a person who possesses a valid entertainment firearms permit, exempts the licensure verification requirements applicable for FFL to FFL transfers, and requires the loaning person to retain a photocopy of the entertainment firearms permit.

  C. Applies the same exemptions to loans of unloaded firearms for theatrical prop purposes from a state-licensed dealer to a person who possesses a valid entertainment firearms permit and also exempts these loans from specified state license forfeiture laws and the licensure verification requirement applicable for FFL to FFL transfers. The person loaning the firearm will also be required to retain a photocopy of the entertainment firearms permit.

9.Exempts the loan of an unloaded firearm for use as a theatrical prop, as specified, by a state-licensed dealer to a person who possesses a valid entertainment firearms permit from the record of transaction requirements.

10.States legislative intent regarding the purpose of the bill. States that the fees established in this bill may be adjusted to include only the costs of the entertainment firearms permit program.

11.Revises the references from "pistol, revolver, or other firearms capable of being concealed upon the person" to "handgun" in applicable sections.

12.Conforms various existing cross-references to renumbered sections of the Code of Federal Regulations (CFR) and future successor CFR sections.

13.Incorporates amendments made to Penal Code Section 12078 by SB 1140 (Scott), pending in the Assembly, to avoid potential chaptering conflicts.


Comments


  According to the author's office, "the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) recently informed prop houses of ATF's new policy regarding the transfer of firearms for use in the motion picture industry. The ATF intends to apply the same rules to prop houses that frequently loan prop firearms that applies to gun dealers. Under the new policy, firearms altered to shoot blank ammunition and temporarily loaned by prop houses to theatrical and television motion picture production companies would be subject to federal laws regarding the sale of firearms by gun dealers. This new policy is a major shift and conflicts with the well-established intent of California's lawmakers to exempt the motion picture industry from state gun laws such as the 10-day waiting period to purchase firearms, the one-gun-per-month purchase limit, and the handgun safety certificate requirement. When applied to Hollywood prop masters, the new ATF policy would require prop houses that frequently loan unloaded firearms to conduct background checks on gun recipients or to transfer prop firearms only to other licensed firearms dealers. Such a policy will severely limit movie production in California (or anywhere else in the nation) and could contribute to the flight of the film industry overseas. DOJ has worked with ATF to reach a compromise that ensures that appropriately regulates the temporary loan of firearms in the motion picture industry. This bill is the legislative vehicle for that compromise."


FISCAL EFFECT : Appropriation: No Fiscal Com.: Yes Local: Yes


ASSEMBLY FLOOR :

AYES: Aghazarian, Bates, Benoit, Berg, Bermudez, Bogh, Calderon, Campbell, Canciamilla, Chan, Chavez, Chu, Cogdill, Cohn, Corbett, Correa, Daucher, Diaz, Dutra, Dutton, Dymally, Firebaugh, Frommer, Garcia, Goldberg, Hancock, Harman, Haynes, Jerome Horton, Shirley Horton, Houston, Jackson, Keene, Kehoe, La Malfa, La Suer, Laird, Leno, Leslie, Levine, Lieber, Liu, Longville, Lowenthal, Maddox, Maldonado, Matthews, Maze, McCarthy, Montanez, Mountjoy, Mullin, Nakanishi, Nakano, Nation, Negrete McLeod, Oropeza, Pacheco, Parra, Pavley, Plescia, Reyes, Richman, Ridley-Thomas, Runner, Salinas, Samuelian, Simitian, Spitzer, Steinberg, Strickland, Vargas, Wesson, Wiggins, Wolk, Wyland, Yee, Nunez

NO VOTE RECORDED: Cox, Koretz

RJG:cm               8/24/04                    Senate Floor Analyses

SUPPORT/OPPOSITION: NONE RECEIVED

CA B. An., S.B. 231 Sen., 8/16/2004

---

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

Exhibit 5

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 30 of 697

2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

CALIFORNIA 2005 LEGISLATIVE SERVICE

2005 Portion of 2005-2006 Regular Session

Additions are indicated by Text; deletions by

*** . Changes in tables are made but not highlighted.

CHAPTER 22

S.B. No. 1108
MAINTENANCE OF CODES

AN ACT to amend Sections 1658, 6704.1, 8764, 8776.4, 19641.2, 24045.3, 24045.5, 24045.9, 24045.15, and 25658 of the Business and Professions Code, to amend Sections 798.25, 799.1.5, 1365.2.5, 1747.08, 1798.81.5, 1798.83, and 1936 of the Civil Code, to amend Sections 995.640, 1985.6, 2025.480, 2030.050, 2031.300, and 2033.220 of the Code of Civil Procedure, to amend Section 31109.1 of the Corporations Code, to amend Sections 1240, 17212.2, 17592.70, 17592.72, 17592.73, 22115, 22200, 33126, 41020.5, 41326.1, 41328, 41530, 44830.3, 48853, 49341, 49414.5, 51226.1, 51430, 52059, 52124, 56366, 56366.1, 56366.11, 56505, 59052, 66739.5, 71093, 89539.2, 94742.3, 94931, and 99235 of, and to amend and renumber Section 17463.6 of, the Education Code, to amend Section 9042 of the Elections Code, to amend Sections 299.3, 420, 2024.6, 3111, and 6341 of the Family Code, to amend Section 14252 of the Financial Code, to amend Sections 1053, 1363.5, and 8494 of the Fish and Game Code, to amend Sections 77253 and 77265 of the Food and Agricultural Code, to amend Sections 3309.5, 6254, 7072, 7076.2, 7099, 7110, 7113.5, 8592.4, 8875.10, 12599, 12715, 17555, 20281.5, 20610, 21224, 22860, 27393, 30061, 31492.1, 31725.65, 31755, 31781.2, 31831.2, 31874.6, 51283.4, 53080, 53635, 54954.5, 56700, 65053.5, 65351, 65460.1, 66907.7, 68085, 68115, 68927, 69927, 70367, 71622, 82036, 84602, and 90004 of, and to add the heading of Chapter 5 (commencing with Section 14557) to Part 5.3 of Division 3 of Title 2 of, the Government Code, to amend Sections 1179.2, 1351.2, 1596.792, 11571.1, 18070, 25395.110, 25395.65, 25395.67, 25395.93, 25395.95, 25395.96, 25404, 25404.3, 44297, 100425, 101317, 101850, 113995, 118275, 120440, 125001 of, and to amend and renumber the heading of Article 45 (commencing with Section 123620) of Chapter 2 of Part 2 of Division 106 of, the Health and Safety Code, to amend Section 1215.2 of the Insurance Code, to amend Sections 98.2, 98.6, 2699.5, 3099.3, 3600.1, and 4658.5 of the Labor Code, to amend Sections 179, 972.1, and 985 of the Military and Veterans Code, to amend Sections 502.01, 679.05, 1203.4a, 11055, 12081, and 12553 of the Penal Code, to amend Sections 6106.5, 6108, and 10411 of the Public Contract Code, to amend Sections 5018.1, 14530.1, 14539, 14551, 21159.24, 30310, 40507, 42648.6 of, to amend and renumber Section 21061.5 of, and to amend and renumber the heading of Chapter 4 (commencing with Section 71069) of Part 2 of Division 34 of, the Public Resources Code, to amend Sections 353.2, 379.6, 394.25, 2827.10, 2828, 21661.5, 90300, 130054.1, 130630, and 170042 of the Public Utilities Code, to amend Sections 69.4, 214, 217, 2508, 3811, 7105, 17041, 17052.6, 18648, 18706, 19164, and 20583 of the Revenue and Taxation Code, to amend Sections 527, 36705, 36733, and 36737 of the Streets and Highways Code, to amend Section 1052 of the Unemployment Insurance Code, to amend Sections 4000.1, 4466, 5205.5, 9400.1, 12509, 13352, 15250, 15275, 23575, 23593, and 27362 of the Vehicle Code, to amend Sections 521, 525, 527, 1013, 12997, 13305, 13387, and 35539.13 of the Water Code, to amend Sections 294, 366.21, 387, 636, 740, 827, 4637.5, 4688.5, 7200.06, 11404, 11462, 14016.5, 14016.51, 14087.6, 14123.25, and 16206 of the Welfare and Institutions Code, to amend Section 15 of Chapter 656 of the Statutes of 2003, and to amend Sections 4 and 5 of the Lake County Flood Control and Water Conservation District Act (Chapter 1544 of the Statutes of 1951), relating to the maintenance of the codes.

[Filed with Secretary of State June 28, 2005.]

LEGISLATIVE COUNSEL'S DIGEST

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 31 of 697

SB 1108, Committee on Judiciary. Maintenance of the codes.

Existing law directs the Legislative Counsel to advise the Legislature from time to time as to legislation necessary to maintain the codes.

This bill would make technical, nonsubstantive changes in various provisions of law to effectuate the recommendations made by the Legislative Counsel to the Legislature.

The people of the State of California do enact as follows:

SECTION 1. Section 1658 of the Business and Professions Code is amended to read:

<< CA BUS & PROF § 1658 >>

1658. (a) When a licensee desires to have more than one place of practice, he or she shall, prior to the opening of the additional office, apply to the board, pay the fee required by this chapter, and receive permission in writing from the board to have the additional place of practice.

"Place of practice" means any dental office where any act of dentistry is practiced as defined by Section 1625, and includes a place of practice in which the applicant holds any proprietary interest of any nature whatsoever, or in which he or she holds any right to participate in the management or control thereof. A dentist who is the lessor of a dental office shall not be deemed to hold a proprietary interest in that place of practice, unless he or she is entitled to participate in the management or control of the dentistry practiced there.

(b) This section shall not apply to a licensee who practices dentistry outside his or her registered place of practice in any of the following places:

(1) Facilities licensed by the State Department of Health Services.

(2) Licensed health facilities as defined in Section 1250 of the Health and Safety Code.

(3) Clinics that are licensed under subdivision (a) of Section 1204 of, or that are exempt from licensure under subdivision (b), (c), or (h) of Section 1206 of, the Health and Safety Code.

(4) Licensed community care facilities as defined in Section 1502 of the Health and Safety Code.

(5) Schools of any grade level, whether public or private.

(6) Public institutions, including, but not limited to, federal, state, and local penal and correctional facilities.

(7) Mobile units that are operated by a public or governmental agency or a nonprofit or charitable organization and are approved by the board, provided that the mobile units meet all statutory or regulatory requirements.

(8) The home of a nonambulatory patient when a physician or registered nurse has provided a written note that the patient is unable to visit a dental office.

SEC. 2. Section 6704.1 of the Business and Professions Code is amended to read:

<< CA BUS & PROF § 6704.1 >>

6704.1. (a) The Department of Consumer Affairs, in conjunction with the board, and the Joint Committee on Boards, Commissions, and Consumer Protection shall review the engineering branch titles specified in Section 6732 to determine whether certain title acts should be eliminated from this chapter, retained, or converted to practice acts similar to civil, electrical, and mechanical engineering, and whether supplemental engineering work should be permitted for all branches of engineering. The department shall contract with an independent consulting firm to perform this comprehensive analysis of title act registration.

(b) The independent consultant shall perform, but not be limited to, the following: (1) meet with representatives of each of the engineering branches and other professional groups; (2) examine the type of services and work provided by engineers in all branches of engineering and interrelated professions within the marketplace, to determine the interrelationship that exists between the various branches of engineers and other interrelated professions; (3) review and analyze educational requirements of engineers; (4) identify the degree to which supplemental or "overlapping" work between engineering branches and interrelated professions occurs; (5) review alternative methods of regulation of engineers in other states and what impact the regulations

would have if adopted in California; (6) identify the manner in which local and state agencies utilize regulations and statutes to regulate engineering work; and \* \* \* (7) recommend changes to existing laws regulating engineers after considering how these changes may affect the health, safety, and welfare of the public.

(c) The board shall reimburse the department for costs associated with this comprehensive analysis. The department shall report its findings and recommendations to the Legislature by September 1, 2002.

SEC. 3. Section 8764 of the Business and Professions Code is amended to read:

<< CA BUS & PROF § 8764 >>

8764. The record of survey shall show the applicable provisions of the following consistent with the purpose of the survey:

(a) All monuments found, set, reset, replaced, or removed, describing their kind, size, and location, and giving other data relating thereto.

(b) Bearing or witness monuments, basis of bearings, bearing and length of lines, scale of map, and north arrow.

(c) Name and legal designation of the property in which the survey is located, and the date or time period of the survey.

(d) The relationship to those portions of adjacent tracts, streets, or senior conveyances which have common lines with the survey.

(e) Memorandum of oaths.

(f) Statements required by Section 8764.5.

(g) Any other data necessary for the intelligent interpretation of the various items and locations of the points, lines, and areas shown, or convenient for the identification of the survey or surveyor, as may be determined by the civil engineer or land surveyor preparing the record of survey.

The record of survey shall also show, either graphically or by note, the reason or reasons, if any, why the mandatory filing provisions of \* \* \* paragraphs (1) to (5), inclusive, of subdivision (b) of Section 8762 apply.

The record of survey need not consist of a survey of an entire property.

SEC. 4. Section 8776.4 of the Business and Professions Code is amended to read:

<< CA BUS & PROF § 8776.4 >>

8776.4. \* \* \* Notwithstanding any other provision of law, a licensee shall not be considered to have violated a confidential settlement agreement or other confidential agreement by providing a report to the board as required by this article.

SEC. 5. Section 19641.2 of the Business and Professions Code is amended to read:

<< CA BUS & PROF § 19641.2 >>

19641.2. (a) The nonprofit foundation authorized to receive funds pursuant to Section 19641 shall use those funds to administer a health and welfare trust fund without prejudice and for the benefit of every eligible person. The officers and directors of the health and welfare trust fund shall have a fiduciary responsibility to manage the fund for the benefit of the beneficiaries.

(b) Every employer of backstretch workers shall, upon request, submit in writing or electronically to the administrator of the welfare program for backstretch workers any employment records necessary for prompt payment of benefits and proper administration of the program. Upon request, employers shall also provide to the administrator access to any employment records necessary for prompt payment of benefits and proper administration of the program.

(c) At least one member of the health and welfare fund board shall be a member without financial interest in the horse racing industry appointed from a list of nominees submitted jointly by the California State Council of the Service Employees International Union, the Jockey's Guild, and the California Teamsters Public Affairs Council.

(d) Nothing in this section is intended to affect the status of the welfare fund as a charity under Section 501(c)(3) of the federal Internal Revenue Code or its compliance with the Charitable Purposes Act (Article 7 (commencing with Section 12580) of Chapter 6 of Part 2 of Division 3 of Title 2 of the Government Code).

SEC. 6. Section 24045.3 of the Business and Professions Code is amended to read:

<< CA BUS & PROF § 24045.3 >>

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 33 of 697

24045.3. (a) The department may issue a special temporary retail package off-sale beer and wine license to a women's educational and charitable organization that is a part of a national organization having at least 10 chapters in California at least one of which has been incorporated since 1928, whose purpose is to foster interest among its members in the social, economic, and civic conditions of their community and to give effective volunteer service. An applicant for this license shall accompany the application with a fee of one hundred dollars ($100).

(b) This license shall only entitle the licensee to sell at auction for charitable purposes beer and wine donated to it. None of the funds realized from this auction shall be used for the administrative expenses of the auction and all funds shall be placed in trust for a charitable purpose. Notwithstanding any other provision of this division, a licensee may donate beer and wine * * * to an organization licensed under this section, provided that donations are not made in connection with a sale of an alcoholic beverage.

(c) This license shall be for a period not exceeding one day. Only one license shall be issued to any organization in a calendar year.

SEC. 7. Section 24045.5 of the Business and Professions Code is amended to read:

<< CA BUS & PROF § 24045.5 >>

24045.5. The department in its discretion may issue a temporary permit to the transferee of any license to continue the operation of the premises during the period a transfer application for the license from person to person at the same premises is pending and when all the following conditions exist:

(a) The premises shall have been operated under a license within 30 days of the date of filing the application for a temporary permit.

(b) The license for the premises shall have been surrendered pursuant to rules of the department.

(c) The applicant for the temporary permit shall have filed with the department an application for transfer of the license at the premises to himself or herself.

(d) The application for the temporary permit shall be accompanied by a temporary permit fee of one hundred dollars ($100).

A temporary permit issued by the department pursuant to this section shall be for a period not to exceed four calendar months. A temporary permit may be extended at the discretion of the department for an additional four calendar months upon payment of an additional fee of one hundred dollars ($100) and upon compliance with all conditions required herein. A temporary permit is a conditional permit and authorizes the holder thereof to sell the alcoholic beverages as would be permitted to be sold under the privileges of the license for which the transfer application has been filed with the department.

Purchase of beer, wine, and distilled spirits by the holder of a temporary permit shall be made only upon payment before or at the time of delivery in currency or by check. However, the holder of a temporary retail permit who also holds one or more retail licenses and is operating under the retail license or licenses in addition to the temporary permit, and who is not delinquent under the provisions of Section 25509 as to any retail license under which he or she operates, may purchase alcoholic beverages on credit under the temporary permit.

All checks received by a seller for alcoholic beverages purchased by the holder of a temporary retail permit shall be deposited not later than the second business day following the date the alcoholic beverages are delivered.

A check dishonored on presentation shall not be deemed payment. The receipt by the seller or his or her agent in good faith from a holder of a temporary permit of a check dishonored on presentation shall not be cause for disciplinary action against the seller.

Transfer of the license for which the holder of a temporary permit has filed an application shall not be approved by the department until the holder of the temporary permit has filed with the department a statement executed under penalty of perjury that all current obligations have been discharged, and that all outstanding checks issued by him or her in payment for alcoholic beverages will be honored on presentation.

It shall not be a violation of this section or otherwise grounds for disciplinary action for any licensee to extend credit to the holder of a temporary permit or to receive payment from the permittee in a manner other than authorized herein unless the seller had knowledge of the fact that the purchaser was operating under a temporary permit. Knowledge of the fact may be established by evidence, including, but not limited to, evidence that, at the time of receipt of payment or the extension of credit, the premises operated under a temporary permit were posted with the notice required by Section 23985, or the holder of the temporary permit had recorded notice as required by Section 24073, or the holder of the temporary permit had published notice as required by Section 23986, or the holder of the temporary permit had recorded and published notice pursuant to Division 6 (commencing with Section 6101) of the Commercial Code.

Case 3:17-cv-07357-RS  Document 163-3  Filed 01/21/21  Page 34 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Refusal by the department to issue or extend a temporary permit shall not entitle the applicant to petition for the permit pursuant to Section 24011, or to a hearing pursuant to Section 24012. Articles 2 (commencing with Section 23985) and 3 (commencing with Section 24011) shall not apply to temporary permits.

Notwithstanding any other provision of law, a temporary permit may be canceled or suspended summarily at anytime if the department determines that good cause for the cancellation or suspension exists. Chapter 8 (commencing with Section 24300) shall not apply to temporary permits.

Application for a temporary permit shall be on any form the department shall prescribe. If an application for a temporary permit is withdrawn before issuance or is refused by the department, the fee which accompanied the application shall be refunded in full, and Section 23959 shall not apply. Fees received by the department for issuance of temporary permits shall be deposited in the Alcohol Beverage Control Fund as provided in Section 25761.

SEC. 8. Section 24045.9 of the Business and Professions Code is amended to read:

<< CA BUS & PROF § 24045.9 >>

24045.9. (a) The department may issue a special temporary on-sale beer and wine license to: (1) a television station, supported wholly or in part by public membership subscription, which is a nonprofit, charitable corporation exempt from payment of income taxes under the provisions of the Internal Revenue Code of 1954 of the United States, or (2) a nonprofit, charitable corporation exempt from payment of income taxes under the provisions of the Internal Revenue Code of 1954 of the United States which receives and administers donations for a noncommercial, educational television station or public broadcasting station supported wholly or in part by public membership subscription. An applicant for this license shall accompany the application with a fee of one hundred dollars ($100).

(b) This license shall only entitle the licensee to sell and serve beer and wine donated to it. Notwithstanding any other provision of this division, a licensee may donate beer or wine to a corporation licensed under this section, provided * * * that the donations are not made in connection with a sale of an alcoholic beverage.

(c) This license shall be for a period not exceeding 30 days. Only one license shall be issued to any corporation in a calendar year.

(d) For purposes of this section, any licensee may also serve that beer or wine donated by him or her at any event for which the license has been issued.

(e) The department shall adopt rules as it determines necessary to implement and administer this section.

SEC. 9. Section 24045.15 of the Business and Professions Code is amended to read:

<< CA BUS & PROF § 24045.15 >>

24045.15. (a) Notwithstanding any other provision of this division, the department may issue a special temporary on-sale or off-sale wine license to any nonprofit corporation having an agricultural purpose that is exempt from the payment of income taxes under Section 501(c)(5) of the Internal Revenue Code of 1986. If the nonprofit corporation's name, or any name under which the nonprofit corporation does business, includes the designation of an American Viticultural Area (AVA) recognized by the United States Bureau of Alcohol, Tobacco and Firearms (BATF), as set forth in Part 9 (commencing with Section 9.1) of Title 27 of the Code of Federal Regulations (27 C.F.R. 9.1 et seq.), the membership of the nonprofit corporation shall include a majority of the winegrowers located in the named AVA in order to obtain a license under this section. No more than one nonprofit corporation located in an AVA is entitled to obtain a license under this section. The applicant shall accompany the application with a fee of one hundred dollars ($100).

(b) This special license shall only entitle the licensee to sell wine donated or sold to the nonprofit corporation by the member winegrowers to consumers for the purpose of fundraising. The wine shall bear the brand name of the producing winery. Off-sale privileges shall be limited to direct mail, telephone, and online computer services. No member winegrower shall donate or sell more than 75 cases of wine per year to the nonprofit corporation and the nonprofit corporation shall sell no more than 1,000 cases of wine per year under the license. If the nonprofit corporation's name or any name under which the nonprofit corporation does business includes the designation of an American Viticultural Area (AVA) recognized by the United States Bureau of Alcohol, Tobacco and Firearms (BATF), as set forth in Part 9 (commencing with Section 9.1) of Title 27 of the Code of Federal Regulations (27 C.F.R. 9.1 et seq.), the wines sold by the nonprofit corporation must be entitled to use the named

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 35 of 697

AVA as the appellation of origin. In order to avoid confusion between the corporation and any winery whose name also includes the designation of the named AVA, any advertising or solicitation for the sale of wine under this license by the corporation shall include a statement disclosing that the corporation is a nonprofit agricultural organization whose members include individual winegrowers or grapegrowers and whose purpose is to promote its agricultural region and improve its grapes and wines. This advertising or solicitation shall also include a complete roster of the corporation's members and a list of the brand names, varieties, and vintages of the wines offered for sale. The wine shall not be sold at less than its minimum retail price.

 (c) This special license shall be for a period not exceeding 60 days. Only one special license authorized by this section shall be issued to any nonprofit corporation in a calendar year.

 SEC. 10. Section 25658 of the Business and Professions Code is amended to read:

<< CA BUS & PROF § 25658 >>

 25658. (a) Except as otherwise provided in subdivision (c), every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any person under the age of 21 years is guilty of a misdemeanor.

 (b) Any person under the age of 21 years who purchases any alcoholic beverage, or any person under the age of 21 years who consumes any alcoholic beverage in any on-sale premises, is guilty of a misdemeanor.

 (c) Any person who violates subdivision (a) by purchasing any alcoholic beverage for, or furnishing, giving, or giving away any alcoholic beverage to, a person under the age of 21 years, and the person under the age of 21 years thereafter consumes the alcohol and thereby proximately causes great bodily injury or death to himself, herself, or any other person, is guilty of a misdemeanor.

 (d) Any on-sale licensee who knowingly permits a person under the age of 21 years to consume any alcoholic beverage in the on-sale premises, whether or not the licensee has knowledge that the person is under the age of 21 years, is guilty of a misdemeanor.

 (e)(1) Except as otherwise provided in paragraph (2) or (3), any person who violates this section shall be punished by a fine of two hundred fifty dollars ($250), no part of which shall be suspended, or the person shall be required to perform not less than 24 hours or more than 32 hours of community service during hours when the person is not employed and is not attending school, or a combination of a fine and community service as determined by the court. A second or subsequent violation of subdivision (b) shall be punished by a fine of not more than five hundred dollars ($500), or the person shall be required to perform not less than 36 hours or more than 48 hours of community service during hours when the person is not employed and is not attending school, or a combination of a fine and community service as determined by the court. It is the intent of the Legislature that the community service requirements prescribed in this section require service at an alcohol or drug treatment program or facility or at a county coroner's office, if available, in the area where the violation occurred or where the person resides.

 (2) Except as provided in paragraph (3), any person who violates subdivision (a) by furnishing an alcoholic beverage, or causing an alcoholic beverage to be furnished, to a minor shall be punished by a fine of one thousand dollars ($1,000), no part of which shall be suspended, and the person shall be required to perform not less than 24 hours of community service during hours when the person is not employed and is not attending school.

 (3) Any person who violates subdivision (c) shall be punished by imprisonment in a county jail for a minimum term of six months not to exceed one year, by a fine not exceeding one thousand dollars ($1,000), or by both imprisonment and fine.

 (f) Persons under the age of 21 years may be used by peace officers in the enforcement of this section to apprehend licensees, or employees or agents of licensees, who sell alcoholic beverages to minors. Notwithstanding subdivision (b), any person under the age of 21 years who purchases or attempts to purchase any alcoholic beverage while under the direction of a peace officer is immune from prosecution for that purchase or attempt to purchase an alcoholic beverage. Guidelines with respect to the use of persons under the age of 21 years as decoys shall be adopted and published by the department in accordance with the rulemaking portion of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code). Law enforcement-initiated minor decoy programs in operation prior to the effective date of regulatory guidelines adopted by the department shall be authorized as long as the minor decoy displays to the seller of alcoholic beverages the appearance of a person under the age of 21 years. This subdivision shall not be construed to prevent the department from taking disciplinary action against a licensee who sells alcoholic beverages to a minor decoy prior to the department's final adoption of regulatory guidelines. After the completion of every minor decoy program performed under this subdivision, the law enforcement agency using the decoy shall notify licensees within 72 hours of the results of the program.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 36 of 697

When the use of a minor decoy results in the issuance of a citation, the notification required shall be given within 72 hours of the issuance of the citation. A law enforcement agency may comply with this requirement by leaving a written notice at the licensed premises addressed to the licensee, or by mailing a notice addressed to the licensee.

(g) The penalties imposed by this section do not preclude prosecution under any other provision of law, including, but not limited to, Section 272 of the Penal Code.

SEC. 11. Section 798.25 of the Civil Code is amended to read:

<< CA CIVIL § 798.25 >>

798.25. (a) Except as provided in subdivision (d), when the management proposes an amendment to the park's rules and regulations, the management shall meet and consult with the homeowners in the park, their representatives, or both, after written notice has been given to all the homeowners in the park 10 days or more before the meeting. The notice shall set forth the proposed amendment to the park's rules and regulations and shall state the date, time, and location of the meeting.

(b) Except as provided in subdivision (d) following the meeting and consultation with the homeowners, the noticed amendment to the park's rules and regulations may be implemented, as to any homeowner, with the consent of that homeowner, or without the homeowner's consent upon written notice of not less than six months, except for regulations applicable to recreational facilities, which may be amended without homeowner consent upon written notice of not less than 60 days.

(c) Written notice to a homeowner whose tenancy commences within the required period of notice of a proposed amendment to the park's rules and regulations under subdivision (b) or (d) shall constitute compliance with this section where the written notice is given before the inception of the tenancy.

(d) When the management proposes an amendment to the park's rules and regulations mandated by a change in the law, including, but not limited to, a change in a statute, ordinance, or governmental regulation, the management may implement the amendment to the park's rules and regulations, as to any homeowner, with the consent of that homeowner or without the homeowner's consent upon written notice of not less than 60 days. For purposes of this subdivision, the management shall specify in the notice the citation to the statute, ordinance, or regulation, including the section number, that necessitates the proposed amendment to the park's rules and regulations.

(e) Any amendment to the park's rules and regulations that creates a new fee payable by the homeowner and that has not been expressly agreed upon by the homeowner and management in the written rental agreement or lease, shall be void and unenforceable.

SEC. 12. Section 799.1.5 of the Civil Code is amended to read:

<< CA CIVIL § 799.1.5 >>

799.1.5. A homeowner or resident, or an heir, joint tenant, or personal representative of the estate who gains ownership of a mobilehome through the death of the resident of the mobilehome who was a resident at the time of his or her death, or the agent of any of those persons, may advertise the sale or exchange of his or her mobilehome or, if not prohibited by the terms of an agreement with the management or ownership, may advertise the rental of his or her mobilehome by displaying a sign in the window of the mobilehome, or by a sign posted on the side of the mobilehome facing the street, or by a sign in front of the mobilehome facing the street, stating that the mobilehome is for sale or exchange or, if not prohibited, for rent by the owner of the mobilehome or his or her agent. Any such person also may display a sign conforming to these requirements indicating that the mobilehome is on display for an "open house," unless the park rules prohibit the display of an open house sign. The sign shall state the name, address, and telephone number of the owner of the mobilehome or his or her agent. The sign face may not exceed 24 inches * * * in width and 36 inches in height. Signs posted in front of a mobilehome pursuant to this section may be of an H-frame or A-frame design with the sign face perpendicular to, but not extending into, the street. A homeowner or resident, or an heir, joint tenant, or personal representative of the estate who gains ownership of a mobilehome through the death of the resident of the mobilehome who was a resident at the time of his or her death, or the agent of any of those persons, may attach to the sign or their mobilehome tubes or holders for leaflets that provide information on the mobilehome for sale, exchange, or rent.

SEC. 13. Section 1365.2.5 of the Civil Code is amended to read:

<< CA CIVIL § 1365.2.5 >>

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 37 of 697

1365.2.5. (a) The disclosures required by this article in regard to an association or a property shall be summarized on the following form:

Assessment and Reserve Funding Disclosure Summary

(1) The current assessment per unit is $_____ per ____. Note: If assessments vary by the size or type of unit, the assessment applicable to this unit may be found on page ____ of the attached report.

(2) Additional assessments that have already been scheduled to be imposed or charged, regardless of the purpose, if they have been approved by the board and/or members:

| Date assessment is due: | Amount per unit per month (If assessments are variable, see note immediately below): | Purpose of the assessment: |
| --- | --- | --- |
| | | |
| | | |
| | | |
| Total: | | |

Note: If assessments vary by the size or type of unit, the assessment applicable to this unit may be found on page ____ of the attached report.

(3) Based upon the most recent reserve study and other information available to the board of directors, will currently projected reserve account balances be sufficient at the end of each year to meet the association's obligation for repair and/or replacement of major components during the next 30 years?

Yes _____ No _____

(4) If the answer to (3) is no, what additional assessments or other contributions to reserves would be necessary to ensure that sufficient reserve funds will be available each year during the next 30 years?

| Approximate date assessment will be due: | Amount per unit per month: |
| --- | --- |
| | |
| | |
| | |
| Total: | |

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 38 of 697

(5)   The following major components, which are included in the reserve study, are NOT included in the existing reserve funding:

| Major component: | Useful remaining life in years: | Reason this major component was not included: |
| --- | --- | --- |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

(6)   As of the last reserve study or update, the current balance in the reserve fund is $_____. Based on the method of calculation in paragraph (4) of subdivision (b) of Section 1365.2.5, the required amount in the reserve fund is $_____, and if an alternate, but generally accepted, method of calculation is also used, the required amount is $_____. (See attached explanation)

NOTE: The financial representations set forth in this summary are based on the best estimates of the preparer at that time. The estimates are subject to change.

(b) For the purposes of preparing a summary pursuant to this section:

(1) "Estimated remaining useful life" means the time reasonably calculated to remain before a major component will require replacement.

(2) "Major component" has the meaning used in Section 1365.5. Components with an estimated remaining useful life of more than 30 years may be included in a study as a capital asset or disregarded from the reserve calculation, so long as the decision is revealed in the reserve study report and reported in the Assessment and Reserve Funding Disclosure Summary.

(3) The form set out in subdivision (a) shall accompany each pro forma operating budget or summary thereof that is delivered pursuant to this article. The form may be supplemented or modified to clarify the information delivered, so long as the minimum information set out in subdivision (a) is provided.

(4) For the purpose of the report and summary, the amount of reserves needed to be accumulated for a component at a given time shall be computed as the current cost of replacement or repair multiplied by the number of years the component has been in service divided by the useful life of the component. This shall not be construed to require the board to fund reserves in accordance with this calculation.

SEC. 14. Section 1747.08 of the Civil Code is amended to read:

<< CA CIVIL § 1747.08 >>

1747.08. (a) Except as provided in subdivision (c), no person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall do any of the following:

(1) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to write any personal identification information upon the credit card transaction form or otherwise.

(2) Request, or require as a condition to accepting the credit card as payment in full or in part for goods or services, the cardholder to provide personal identification information, which the person, firm, partnership, association, or corporation accepting the credit card writes, causes to be written, or otherwise records upon the credit card transaction form or otherwise.

(3) Utilize, in any credit card transaction, a credit card form which contains preprinted spaces specifically designated for filling in any personal identification information of the cardholder.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 39 of 697

(b) For purposes of this section "personal identification information," means information concerning the cardholder, other than information set forth on the credit card, and including, but not limited to, the cardholder's address and telephone number.

(c) Subdivision (a) does not apply in the following instances:

(1) If the credit card is being used as a deposit to secure payment in the event of default, loss, damage, or other similar occurrence.

(2) Cash advance transactions.

(3) If the person, firm, partnership, association, or corporation accepting the credit card is contractually obligated to provide personal identification information in order to complete the credit card transaction or is obligated to collect and record the personal identification information by federal law or regulation.

(4) If personal identification information is required for a special purpose incidental but related to the individual credit card transaction, including, but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders.

(d) This section does not prohibit any person, firm, partnership, association, or corporation from requiring the cardholder, as a condition to accepting the credit card as payment in full or in part for goods or services, to provide reasonable forms of positive identification, which may include a driver's license or a California state identification card, or where one of these is not available, another form of photo identification, provided that none of the information contained thereon is written or recorded on the credit card transaction form or otherwise. If the cardholder pays for the transaction with a credit card number and does not make the credit card available upon request to verify the number, the cardholder's driver's license or identification card number may be recorded on the credit card transaction form or otherwise.

(e) Any person who violates this section shall be subject to a civil penalty not to exceed two hundred fifty dollars ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation, to be assessed and collected in a civil action brought by the person paying with a credit card, by the Attorney General, or by the district attorney or city attorney of the county or city in which the violation occurred. However, no civil penalty shall be assessed for a violation of this section if the defendant shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error made notwithstanding the defendant's maintenance of procedures reasonably adopted to avoid that error. When collected, the civil penalty shall be payable, as appropriate, to the person paying with a credit card who brought the action, or to the general fund of whichever governmental entity brought the action to assess the civil penalty.

(f) The Attorney General, or any district attorney or city attorney within his or her respective jurisdiction, may bring an action in the superior court in the name of the people of the State of California to enjoin violation of subdivision (a) and, upon notice to the defendant of not less than five days, to temporarily restrain and enjoin the violation. If it appears to the satisfaction of the court that the defendant has, in fact, violated subdivision (a), the court may issue an injunction restraining further violations, without requiring proof that any person has been damaged by the violation. In these proceedings, if the court finds that the defendant has violated subdivision (a), the court may direct the defendant to pay any or all costs incurred by the Attorney General, district attorney, or city attorney in seeking or obtaining injunctive relief pursuant to this subdivision.

(g) Actions for collection of civil penalties under subdivision (e) and for injunctive relief under subdivision (f) may be consolidated.

(h) The changes made to this section by * * * Chapter 458 of the Statutes of 1995 * * * apply only to credit card transactions entered into on and after January 1, 1996. Nothing in those changes shall be construed to affect any civil action which was filed before January 1, 1996.

SEC. 15. Section 1798.81.5 of the Civil Code is amended to read:

<< CA CIVIL § 1798.81.5 >>

1798.81.5. (a) It is the intent of the Legislature to ensure that personal information about California residents is protected. To that end, the purpose of this section is to encourage businesses that own or license personal information about Californians to provide reasonable security for that information. For the purpose of this section, the phrase "owns or licenses" is intended to include, but is not limited to, personal information that a business retains as part of the business' internal customer account or for the purpose of using that information in transactions with the person to whom the information relates.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 40 of 697

(b) A business that owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure.

(c) A business that discloses personal information about a California resident pursuant to a contract with a nonaffiliated third party shall require by contract that the third party implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure.

(d) For purposes of this section, the following terms have the following meanings:

(1) "Personal information" means an individual's first name or first initial and his or her last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted:

(A) Social security number.

(B) Driver's license number or California identification card number.

(C) Account number, credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account.

(D) Medical information.

(2) "Medical information" means any individually identifiable information, in electronic or physical form, regarding the individual's medical history or medical treatment or diagnosis by a health care professional.

(3) "Personal information" does not include publicly available information that is lawfully made available to the general public from federal, state, or local government records.

(e) The provisions of this section do not apply to any of the following:

(1) A provider of health care, health care service plan, or contractor regulated by the Confidentiality of Medical Information Act (Part 2.6 (commencing with Section 56) of Division 1).

(2) A financial institution as defined in Section 4052 of the Financial Code and subject to the California Financial Information Privacy Act (Division 1.2 (commencing with Section 4050) of the Financial Code.

(3) A covered entity governed by the medical privacy and security rules issued by the federal Department of Health and Human Services, Parts 160 and 164 of Title 45 of the Code of Federal Regulations, established pursuant to the Health Insurance Portability and Availability Act of 1996 (HIPAA).

(4) An entity that obtains information under an agreement pursuant to Article 3 (commencing with Section 1800) of Chapter 1 of Division 2 of the Vehicle Code and is subject to the confidentiality requirements of the Vehicle Code.

(5) A business that is regulated by state or federal law providing greater protection to personal information than that provided by this section in regard to the subjects addressed by this section. Compliance with that state or federal law shall be deemed compliance with this section with regard to those subjects. This paragraph does not relieve a business from a duty to comply with any other requirements of other state and federal law regarding the protection and privacy of personal information.

SEC. 16. Section 1798.83 of the Civil Code is amended to read:

<< CA CIVIL § 1798.83 >>

1798.83. (a) Except as otherwise provided in subdivision (d), if a business has an established business relationship with a customer and has within the immediately preceding calendar year disclosed personal information that corresponds to any of the categories of personal information set forth in paragraph (6) of subdivision (e) to third parties, and if the business knows or reasonably should know that the third parties used the personal information for the third parties' direct marketing purposes, that business shall, after the receipt of a written or electronic mail request, or, if the business chooses to receive requests by toll-free telephone or facsimile numbers, a telephone or facsimile request from the customer, provide all of the following information to the customer free of charge:

(1) In writing or by electronic mail, a list of the categories set forth in paragraph (6) of subdivision (e) that correspond to the personal information disclosed by the business to third parties for the third parties' direct marketing purposes during the immediately preceding calendar year.

(2) In writing or by electronic mail, the names and addresses of all of the third parties that received personal information from the business for the third parties' direct marketing purposes during the preceding calendar year and, if the nature of the third

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 41 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

parties' business cannot reasonably be determined from the third parties' name, examples of the products or services marketed, if known to the business, sufficient to give the customer a reasonable indication of the nature of the third parties' business.

(b)(1) A business required to comply with this section shall designate a mailing address, electronic mail address, or, if the business chooses to receive requests by telephone or facsimile, a toll-free telephone or facsimile number, to which customers may deliver requests pursuant to subdivision (a). A business required to comply with this section shall, at its election, do at least one of the following:

(A) Notify all agents and managers who directly supervise employees who regularly have contact with customers of the designated addresses or numbers or the means to obtain those addresses or numbers and instruct those employees that customers who inquire about the business's privacy practices or the business's compliance with this section shall be informed of the designated addresses or numbers or the means to obtain the addresses or numbers.

(B) Add to the home page of its Web site * * * a link either to a page titled "Your Privacy Rights" or * * * add the words "Your Privacy Rights* * * " to the home page's link to the business's privacy policy. If the business elects to add the words "Your Privacy Rights" to the link to the business's privacy policy, the words "Your Privacy Rights" shall be in the same style and size as the link to the business's privacy policy. If the business does not display a link to its privacy policy on the home page of its Web site, or does not have a privacy policy, the words "Your Privacy Rights" shall be written in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks that call attention to the language. The first page of the link shall describe a customer's rights pursuant to this section and shall provide the designated mailing address, e-mail address, as required, or toll-free telephone number or facsimile number, as appropriate. If the business elects to add the words "Your California Privacy Rights" to the home page's link to the business's privacy policy in a manner that complies with this subdivision, and the first page of the link describes a customer's rights pursuant to this section, and provides the designated mailing address, electronic mailing address, as required, or toll-free telephone or facsimile number, as appropriate, the business need not respond to requests that are not received at one of the designated addresses or numbers.

(C) Make the designated addresses or numbers, or means to obtain the designated addresses or numbers, readily available upon request of a customer at every place of business in California where the business or its agents regularly have contact with customers.

The response to a request pursuant to this section received at one of the designated addresses or numbers shall be provided within 30 days. Requests received by the business at other than one of the designated addresses or numbers shall be provided within a reasonable period, in light of the circumstances related to how the request was received, but not to exceed 150 days from the date received.

(2) A business that is required to comply with this section and Section 6803 of Title 15 of the United States Code may comply with this section by providing the customer the disclosure required by Section 6803 of Title 15 of the United States Code, but only if the disclosure also complies with this section.

(3) A business that is required to comply with this section is not obligated to provide information associated with specific individuals and may provide the information required by this section in standardized format.

(c)(1) A business that is required to comply with this section is not obligated to do so in response to a request from a customer more than once during the course of any calendar year. A business with fewer than 20 full-time or part-time employees is exempt from the requirements of this section.

(2) If a business that is required to comply with this section adopts and discloses to the public, in its privacy policy, a policy of not disclosing personal information of customers to third parties for the third parties' direct marketing purposes unless the customer first affirmatively agrees to that disclosure, or of not disclosing the personal information of customers to third parties for the third parties' direct marketing purposes if the customer has exercised an option that prevents that information from being disclosed to third parties for those purposes, as long as the business maintains and discloses the policies, the business may comply with subdivision (a) by notifying the customer of his or her right to prevent disclosure of personal information, and providing the customer with a cost-free means to exercise that right.

(d) The following are among the disclosures not deemed to be disclosures of personal information by a business for a third party's direct marketing purposes for purposes of this section:

(1) Disclosures between a business and a third party pursuant to contracts or arrangements pertaining to any of the following:

(A) The processing, storage, management, or organization of personal information, or the performance of services on behalf of the business during which personal information is disclosed, if the third party that processes, stores, manages, or organizes the personal information does not use the information for a third party's direct marketing purposes and does not disclose the information to additional third parties for their direct marketing purposes.

(B) Marketing products or services to customers with whom the business has an established business relationship where, as a part of the marketing, the business does not disclose personal information to third parties for the third parties' direct marketing purposes.

(C) Maintaining or servicing accounts, including credit accounts and disclosures pertaining to the denial of applications for credit or the status of applications for credit and processing bills or insurance claims for payment.

(D) Public record information relating to the right, title, or interest in real property or information relating to property characteristics, as defined in Section 408.3 of the Revenue and Taxation Code, obtained from a governmental agency or entity or from a multiple listing service, as defined in Section 1087, and not provided directly by the customer to a business in the course of an established business relationship.

(E) Jointly offering a product or service pursuant to a written agreement with the third party that receives the personal information, provided that all of the following requirements are met:

(i) The product or service offered is a product or service of, and is provided by, at least one of the businesses that is a party to the written agreement.

(ii) The product or service is jointly offered, endorsed, or sponsored by, and clearly and conspicuously identifies for the customer, the businesses that disclose and receive the disclosed personal information.

(iii) The written agreement provides that the third party that receives the personal information is required to maintain the confidentiality of the information and is prohibited from disclosing or using the information other than to carry out the joint offering or servicing of a product or service that is the subject of the written agreement.

(2) Disclosures to or from a consumer reporting agency of a customer's payment history or other information pertaining to transactions or experiences between the business and a customer if that information is to be reported in, or used to generate, a consumer report as defined in subdivision (d) of Section 1681a of Title 15 of the United States Code, and use of that information is limited by the federal Fair Credit Reporting Act (15 U.S.C. Sec. 1681 et seq.).

(3) Disclosures of personal information by a business to a third party financial institution solely for the purpose of the business obtaining payment for a transaction in which the customer paid the business for goods or services with a check, credit card, charge card, or debit card, if the customer seeks the information required by subdivision (a) from the business obtaining payment, whether or not the business obtaining payment knows or reasonably should know that the third party financial institution has used the personal information for its direct marketing purposes.

(4) Disclosures of personal information between a licensed agent and its principal, if the personal information disclosed is necessary to complete, effectuate, administer, or enforce transactions between the principal and the agent, whether or not the licensed agent or principal also uses the personal information for direct marketing purposes, if that personal information is used by each of them solely to market products and services directly to customers with whom both have established business relationships as a result of the principal and agent relationship.

(5) Disclosures of personal information between a financial institution and a business that has a private label credit card, affinity card, retail installment contract, or cobranded card program with the financial institution, if the personal information disclosed is necessary for the financial institution to maintain or service accounts on behalf of the business with which it has a private label credit card, affinity card, retail installment contract, or cobranded card program, or to complete, effectuate, administer, or enforce customer transactions or transactions between the institution and the business, whether or not the institution or the business also uses the personal information for direct marketing purposes, if that personal information is used solely to market products and services directly to customers with whom both the business and the financial institution have established business relationships as a result of the private label credit card, affinity card, retail installment contract, or cobranded card program.

(e) For purposes of this section, the following terms have the following meanings:

(1) "Customer" means an individual who is a resident of California who provides personal information to a business during the creation of, or throughout the duration of, an established business relationship if the business relationship is primarily for personal, family, or household purposes.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 43 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(2) "Direct marketing purposes" means the use of personal information to solicit or induce a purchase, rental, lease, or exchange of products, goods, property, or services directly to individuals by means of the mail, telephone, or electronic mail for their personal, family, or household purposes. The sale, rental, exchange, or lease of personal information for consideration to businesses is a direct marketing purpose of the business that sells, rents, exchanges, or obtains consideration for the personal information. "Direct marketing purposes" does not include the use of personal information (A) by bona fide tax exempt charitable or religious organizations to solicit charitable contributions, (B) to raise funds from and communicate with individuals regarding politics and government, (C) by a third party when the third party receives personal information solely as a consequence of having obtained for consideration permanent ownership of accounts that might contain personal information, or (D) by a third party when the third party receives personal information solely as a consequence of a single transaction where, as a part of the transaction, personal information had to be disclosed in order to effectuate the transaction.

(3) "Disclose" means to disclose, release, transfer, disseminate, or otherwise communicate orally, in writing, or by electronic or any other means to any third party.

(4) "Employees who regularly have contact with customers" means employees whose contact with customers is not incidental to their primary employment duties, and whose duties do not predominantly involve ensuring the safety or health of the business's customers. It includes, but is not limited to, employees whose primary employment duties are as cashier, clerk, customer service, sales, or promotion. It does not, by way of example, include employees whose primary employment duties consist of food or beverage preparation or service, maintenance and repair of the business's facilities or equipment, direct involvement in the operation of a motor vehicle, aircraft, watercraft, amusement ride, heavy machinery or similar equipment, security, or participation in a theatrical, literary, musical, artistic, or athletic performance or contest.

(5) "Established business relationship" means a relationship formed by a voluntary, two-way communication between a business and a customer, with or without an exchange of consideration, for the purpose of purchasing, renting, or leasing real or personal property, or any interest therein, or obtaining a product or service from the business, if the relationship is ongoing and has not been expressly terminated by the business or the customer, or if the relationship is not ongoing, but is solely established by the purchase, rental, or lease of real or personal property from a business, or the purchase of a product or service, and no more than 18 months have elapsed from the date of the purchase, rental, or lease.

(6)(A) The categories of personal information required to be disclosed pursuant to paragraph (1) of subdivision (a) are all of the following:

(i) Name and address.

(ii) Electronic mail address.

(iii) Age or date of birth.

(iv) Names of children.

(v) Electronic mail or other addresses of children.

(vi) Number of children.

(vii) The age or gender of children.

(viii) Height.

(ix) Weight.

(x) Race.

(xi) Religion.

(xii) Occupation.

(xiii) Telephone number.

(xiv) Education.

(xv) Political party affiliation.

(xvi) Medical condition.

(xvii) Drugs, therapies, or medical products or equipment used.

(xviii) The kind of product the customer purchased, leased, or rented.

(xix) Real property purchased, leased, or rented.

(xx) The kind of service provided.

(xxi) Social security number.

(xxii) Bank account number.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 44 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(xxiii) Credit card number.

(xxiv) Debit card number.

(xxv) Bank or investment account, debit card, or credit card balance.

(xxvi) Payment history.

(xxvii) Information pertaining to the customer's creditworthiness, assets, income, or liabilities.

(B) If a list, description, or grouping of customer names or addresses is derived using any of these categories, and is disclosed to a third party for direct marketing purposes in a manner that permits the third party to identify, determine, or extrapolate any other personal information from which the list was derived, and that personal information when it was disclosed identified, described, or was associated with an individual, the categories set forth in this subdivision that correspond to the personal information used to derive the list, description, or grouping shall be considered personal information for purposes of this section.

(7) "Personal information" as used in this section means any information that when it was disclosed identified, described, or was able to be associated with an individual and includes all of the following:

(A) An individual's name and address.

(B) Electronic mail address.

(C) Age or date of birth.

(D) Names of children.

(E) Electronic mail or other addresses of children.

(F) Number of children.

(G) The age or gender of children.

(H) Height.

(I) Weight.

(J) Race.

(K) Religion.

(L) Occupation.

(M) Telephone number.

(N) Education.

(O) Political party affiliation.

(P) Medical condition.

(Q) Drugs, therapies, or medical products or equipment used.

(R) The kind of product the customer purchased, leased, or rented.

(S) Real property purchased, leased, or rented.

(T) The kind of service provided.

(U) Social security number.

(V) Bank account number.

(W) Credit card number.

(X) Debit card number.

(Y) Bank or investment account, debit card, or credit card balance.

(Z) Payment history.

(AA) Information pertaining to creditworthiness, assets, income, or liabilities.

(8) "Third party" or "third parties" means one or more of the following:

(A) A business that is a separate legal entity from the business that has an established business relationship with a customer.

(B) A business that has access to a database that is shared among businesses, if the business is authorized to use the database for direct marketing purposes, unless the use of the database is exempt from being considered a disclosure for direct marketing purposes pursuant to subdivision (d).

(C) A business not affiliated by a common ownership or common corporate control with the business required to comply with subdivision (a).

(f)(1) Disclosures of personal information for direct marketing purposes between affiliated third parties that share the same brand name are exempt from the requirements of paragraph (1) of subdivision (a) unless the personal information disclosed corresponds to one of the following categories, in which case the customer shall be informed of those categories listed in this

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 45 of 697

subdivision that correspond to the categories of personal information disclosed for direct marketing purposes and the third party recipients of personal information disclosed for direct marketing purposes pursuant to paragraph (2) of subdivision (a):

(A) Number of children.

(B) The age or gender of children.

(C) Electronic mail or other addresses of children.

(D) Height.

(E) Weight.

(F) Race.

(G) Religion.

(H) Telephone number.

(I) Medical condition.

(J) Drugs, therapies, or medical products or equipment used.

(K) Social security number.

(L) Bank account number.

(M) Credit card number.

(N) Debit card number.

(O) Bank or investment account, debit card, or credit card balance.

(2) If a list, description, or grouping of customer names or addresses is derived using any of these categories, and is disclosed to a third party or third parties sharing the same brand name for direct marketing purposes in a manner that permits the third party to identify, determine, or extrapolate the personal information from which the list was derived, and that personal information when it was disclosed identified, described, or was associated with an individual, any other personal information that corresponds to the categories set forth in this subdivision used to derive the list, description, or grouping shall be considered personal information for purposes of this section.

(3) If a business discloses personal information for direct marketing purposes to affiliated third parties that share the same brand name, the business that discloses personal information for direct marketing purposes between affiliated third parties that share the same brand name may comply with the requirements of paragraph (2) of subdivision (a) by providing the overall number of affiliated companies that share the same brand name.

(g) The provisions of this section are severable. If any provision of this section or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

(h) This section does not apply to a financial institution that is subject to the California Financial Information Privacy Act (Division 1.2 (commencing with Section 4050) of the Financial Code) if the financial institution is in compliance with Sections 4052, 4052.5, 4053, 4053.5, and 4054.6 of the Financial Code, as those sections read when they were chaptered on August 28, 2003, and as subsequently amended by the Legislature or by initiative.

(i) This section shall become operative on January 1, 2005.

SEC. 17. Section 1936 of the Civil Code, as amended by Section 1 of Chapter 317 of the Statutes of 2004, is amended to read:

<< CA CIVIL § 1936 >>

1936. (a) For the purpose of this section, the following definitions shall apply:

(1) "Rental company" means any person or entity in the business of renting passenger vehicles to the public.

(2) "Renter" means any person in any manner obligated under a contract for the lease or hire of a passenger vehicle from a rental company for a period of less than 30 days.

(3) "Authorized driver" means (A) the renter, (B) the renter's spouse if that person is a licensed driver and satisfies the rental company's minimum age requirement, (C) the renter's employer or coworkers if they are engaged in business activity with the renter, are licensed drivers, and satisfy the rental company's minimum age requirement, and (D) any person expressly listed by the rental company on the renter's contract as an authorized driver.

(4)(A) "Customer facility charge" means a fee required by an airport to be collected by a rental company from a renter for any of the following purposes:

(i) The fee shall be used to finance, design, and construct consolidated airport car rental facilities.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 46 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(ii) The fee shall be used to finance, design, construct, and provide common-use transportation systems that move passengers between airport terminals and those consolidated car rental facilities.

(B) The aggregate amount to be collected may not exceed the reasonable costs, as determined by an independent audit paid for by the airport, to finance, design, and construct those facilities. Copies of the audit shall be provided to the Assembly and Senate Committees on Judiciary and Committees on Transportation. In the case of a transportation system, the audit shall also consider the reasonable costs of providing the transit system or busing network. At the Burbank Airport, and at all other airports, the fees designated as a Customer Facility Charge may not be used to pay for terminal expansion, gate expansion, runway expansion, changes in hours of operation, or changes in the number of flights arriving or departing from the airport.

(C) The authorization given pursuant to this section for an airport to impose a customer facility charge shall become inoperative when the bonds used for financing are paid.

(5) "Damage waiver" means a rental company's agreement not to hold a renter liable for all or any portion of any damage or loss related to the rented vehicle, any loss of use of the rented vehicle, or any storage, impound, towing, or administrative charges.

(6) "Electronic surveillance technology" means a technological method or system used to observe, monitor, or collect information, including telematics, Global Positioning System (GPS), wireless technology, or location-based technologies. "Electronic surveillance technology" does not include event data recorders (EDR), sensing and diagnostic modules (SDM), or other systems that are used either:

(A) For the purpose of identifying, diagnosing, or monitoring functions related to the potential need to repair, service, or perform maintenance on the rental vehicle.

(B) As part of the vehicle's airbag sensing and diagnostic system in order to capture safety systems-related data for retrieval after a crash has occurred or in the event that the collision sensors are activated to prepare the decisionmaking computer to make the determination to deploy or not to deploy the airbag.

(7) "Estimated time for replacement" means the number of hours of labor, or fraction thereof, needed to replace damaged vehicle parts as set forth in collision damage estimating guides generally used in the vehicle repair business and commonly known as "crash books."

(8) "Estimated time for repair" means a good faith estimate of the reasonable number of hours of labor, or fraction thereof, needed to repair damaged vehicle parts.

(9) "Membership program" means a service offered by a rental company that permits customers to bypass the rental counter and go directly to the car previously reserved. A membership program shall meet all of the following requirements:

(A) The renter initiates enrollment by completing an application on which the renter can specify a preference for type of vehicle and acceptance or declination of optional services.

(B) The rental company fully discloses, prior to the enrollee's first rental as a participant in the program, all terms and conditions of the rental agreement as well as all required disclosures.

(C) The renter may terminate enrollment at any time.

(D) The rental company fully explains to the renter that designated preferences, as well as acceptance or declination of optional services, may be changed by the renter at any time for the next and future rentals.

(E) An employee designated to receive the form specified in subparagraph (C) of paragraph (1) of subdivision (r) is present at the lot where the renter takes possession of the car, to receive any change in the rental agreement from the renter.

(10) "Passenger vehicle" means a passenger vehicle as defined in Section 465 of the Vehicle Code.

(b) Except as limited by subdivision (c), a rental company and a renter may agree that the renter will be responsible for no more than all of the following:

(1) Physical or mechanical damage to the rented vehicle up to its fair market value, as determined in the customary market for the sale of that vehicle, resulting from collision regardless of the cause of the damage.

(2) Loss due to theft of the rented vehicle up to its fair market value, as determined in the customary market for the sale of that vehicle, provided that the rental company establishes by clear and convincing evidence that the renter or the authorized driver failed to exercise ordinary care while in possession of the vehicle. In addition, the renter shall be presumed to have no liability for any loss due to theft if (A) an authorized driver has possession of the ignition key furnished by the rental company or an authorized driver establishes that the ignition key furnished by the rental company was not in the vehicle at the time of the theft, and (B) an authorized driver files an official report of the theft with the police or other law enforcement agency within 24 hours of learning of the theft and reasonably cooperates with the rental company and the police or other law enforcement

Case 3:17-cv-07357-RS  Document 163-3  Filed 01/21/21  Page 47 of 697

MAINTENANCE OF CODES, 2006 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

agency in providing information concerning the theft. The presumption set forth in this paragraph is a presumption affecting the burden of proof which the rental company may rebut by establishing that an authorized driver committed, or aided and abetted the commission of, the theft.

(3) Physical damage to the rented vehicle up to its fair market value, as determined in the customary market for the sale of that vehicle, resulting from vandalism occurring after, or in connection with, the theft of the rented vehicle. However, the renter shall have no liability for any damage due to vandalism if the renter would have no liability for theft pursuant to paragraph (2).

(4) Physical damage to the rented vehicle up to a total of five hundred dollars ($500) resulting from vandalism unrelated to the theft of the rented vehicle.

(5) Actual charges for towing, storage, and impound fees paid by the rental company if the renter is liable for damage or loss.

(6) An administrative charge, which shall include the cost of appraisal and all other costs and expenses incident to the damage, loss, repair, or replacement of the rented vehicle.

(c) The total amount of the renter's liability to the rental company resulting from damage to the rented vehicle may not exceed the sum of the following:

(1) The estimated cost of parts which the rental company would have to pay to replace damaged vehicle parts. All discounts and price reductions or adjustments that are or will be received by the rental company shall be subtracted from the estimate to the extent not already incorporated in the estimate or otherwise promptly credited or refunded to the renter.

(2) The estimated cost of labor to replace damaged vehicle parts which may not exceed the product of (A) the rate for labor usually paid by the rental company to replace vehicle parts of the type that were damaged and (B) the estimated time for replacement. All discounts and price reductions or adjustments that are or will be received by the rental company shall be subtracted from the estimate to the extent not already incorporated in the estimate or otherwise promptly credited or refunded to the renter.

(3)(A) The estimated cost of labor to repair damaged vehicle parts, which may not exceed the lesser of the following:

(i) The product of the rate for labor usually paid by the rental company to repair vehicle parts of the type that were damaged and the estimated time for repair.

(ii) The sum of the estimated labor and parts costs determined under paragraphs (1) and (2) to replace the same vehicle parts.

(B) All discounts and price reductions or adjustments that are or will be received by the rental company shall be subtracted from the estimate to the extent not already incorporated in the estimate or otherwise promptly credited or refunded to the renter.

(4) For the purpose of converting the estimated time for repair into the same units of time in which the rental rate is expressed, a day shall be deemed to consist of eight hours.

(5) Actual charges for towing, storage, and impound fees paid by the rental company.

(6) The administrative charge described in paragraph (6) of subdivision (b) may not exceed (A) fifty dollars ($50) if the total estimated cost for parts and labor is more than one hundred dollars ($100) up to and including five hundred dollars ($500), (B) one hundred dollars ($100) if the total estimated cost for parts and labor exceeds five hundred dollars ($500) up to and including one thousand five hundred dollars ($1,500), and (C) one hundred fifty dollars ($150) if the total estimated cost for parts and labor exceeds one thousand five hundred dollars ($1,500). No administrative charge may be imposed if the total estimated cost of parts and labor is one hundred dollars ($100) or less.

(d)(1) The total amount of an authorized driver's liability to the rental company, if any, for damage occurring during the authorized driver's operation of the rented vehicle may not exceed the amount of the renter's liability under subdivision (c).

(2) A rental company may not recover from the renter or other authorized driver an amount exceeding the renter's liability under subdivision (c).

(3) A claim against a renter resulting from damage or loss, excluding loss of use, to a rental vehicle shall be reasonably and rationally related to the actual loss incurred. A rental company shall mitigate damages where possible and may not assert or collect any claim for physical damage which exceeds the actual costs of the repairs performed or the estimated cost of repairs, if the rental company chooses not to repair the vehicle, including all discounts and price reductions. However, if the vehicle is a total loss vehicle, the claim may not exceed the total loss vehicle value established in accordance with procedures that are customarily used by insurance companies when paying claims on total loss vehicles, less the proceeds from salvaging the vehicle, if those proceeds are retained by the rental company.

(4) If insurance coverage exists under the renter's applicable personal or business insurance policy and the coverage is confirmed during regular business hours, the renter may require that the rental company submit any claims to the renter's

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 48 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

applicable personal or business insurance carrier. The rental company may not make any written or oral representations that it will not present claims or negotiate with the renter's insurance carrier. For purposes of this paragraph, confirmation of coverage includes telephone confirmation from insurance company representatives during regular business hours. Upon request of the renter and after confirmation of coverage, the amount of claim shall be resolved between the insurance carrier and the rental company. The renter shall remain responsible for payment to the rental car company for any loss sustained that the renter's applicable personal or business insurance policy does not cover.

(5) A rental company may not recover from the renter or other authorized driver for any item described in subdivision (b) to the extent the rental company obtains recovery from any other person.

(6) This section applies only to the maximum liability of a renter or other authorized driver to the rental company resulting from damage to the rented vehicle and not to the liability of any other person.

(e)(1) Except as provided in subdivision (f), every damage waiver shall provide or, if not expressly stated in writing, shall be deemed to provide that the renter has no liability for any damage, loss, loss of use, or any cost or expense incident thereto.

(2) Except as provided in subdivision (f), every limitation, exception, or exclusion to any damage waiver is void and unenforceable.

(f) A rental company may provide in the rental contract that a damage waiver does not apply under any of the following circumstances:

(1) Damage or loss results from an authorized driver's (A) intentional, willful, wanton, or reckless conduct, (B) operation of the vehicle under the influence of drugs or alcohol in violation of Section 23152 of the Vehicle Code, (C) towing or pushing anything, or (D) operation of the vehicle on an unpaved road if the damage or loss is a direct result of the road or driving conditions.

(2) Damage or loss occurs while the vehicle is (A) used for commercial hire, (B) used in connection with conduct that could be properly charged as a felony, (C) involved in a speed test or contest or in driver training activity, (D) operated by a person other than an authorized driver, or (E) operated outside of the United States.

(3) Any authorized driver who has (A) provided fraudulent information to the rental company * * * or (B) provided false information and the rental company would not have rented the vehicle if it had instead received true information.

(g)(1) A rental company that offers or provides a damage waiver for any consideration in addition to the rental rate shall clearly and conspicuously disclose the following information in the rental contract or holder in which the contract is placed and, also, in signs posted at the place, such as the counter, where the renter signs the rental contract, and, for renters who are enrolled in the rental company's membership program, in a sign which shall be posted in a location clearly visible to those renters as they enter the location where their reserved rental cars are parked or near the exit of the bus or other conveyance that transports the enrollee to a reserved car: (A) the nature of the renter's liability, e.g., liability for all collision damage regardless of cause, (B) the extent of the renter's liability, e.g., liability for damage or loss up to a specified amount, (C) the renter's personal insurance policy or the credit card used to pay for the car rental transaction may provide coverage for all or a portion of the renter's potential liability, (D) the renter should consult with his or her insurer to determine the scope of insurance coverage, including the amount of the deductible, if any, for which the renter is obligated, (E) the renter may purchase an optional damage waiver to cover all liability, subject to whatever exceptions the rental company expressly lists that are permitted under subdivision (f), and (F) the range of charges for the damage waiver.

(2) In addition to the requirements of paragraph (1), a rental company that offers or provides a damage waiver shall, orally disclose to all renters, except those who are participants in the rental company's membership program, that the damage waiver may be duplicative of coverage that the customer maintains under his or her own policy of motor vehicle insurance. The renter's receipt of the oral disclosure shall be demonstrated through the renter acknowledging receipt of the oral disclosure near that part of the contract where the renter indicates, by the renter's own initials, his or her acceptance or declination of the damage waiver. Adjacent to that same part, the contract shall also state that the damage waiver is optional.

(3) The following is an example, for purposes of illustration and not limitation, of a notice fulfilling the requirements of paragraph (1) for a rental company that imposes liability on the renter for collision damage to the full value of the vehicle:

### NOTICE ABOUT YOUR FINANCIAL RESPONSIBILITY AND OPTIONAL DAMAGE WAIVER

You are responsible for all collision damage to the rented vehicle even if someone else caused it or the cause is unknown. You are responsible for the cost of repair up to the value of the vehicle, and towing, storage, and impound fees.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 49 of 697

Your own insurance, or the issuer of the credit card you use to pay for the car rental transaction, may cover all or part of your financial responsibility for the rented vehicle. You should check with your insurance company, or credit card issuer, to find out about your coverage and the amount of the deductible, if any, for which you may be liable.

Further, if you use a credit card that provides coverage for your potential liability, you should check with the issuer to determine if you must first exhaust the coverage limits of your own insurance before the credit card coverage applies.

The rental company will not hold you responsible if you buy a damage waiver. But a damage waiver will not protect you if (list exceptions).

(A) When the above notice is printed in the rental contract or holder in which the contract is placed, the following shall be printed immediately following the notice:

"The cost of an optional damage waiver is $_____ for every (day or week)."

(B) When the above notice appears on a sign, the following shall appear immediately adjacent to the notice:

"The cost of an optional damage waiver is $_____ to $_____ for every (day or week), depending upon the vehicle rented."

(h) Notwithstanding any other provision of law, a rental company may sell a damage waiver subject to the following rate limitations for each full or partial 24–hour rental day for the damage waiver:

(1) For rental vehicles that the rental company designates as an "economy car," "subcompact car," "compact car," or any other term having similar meaning when offered for rental, or any other vehicle having a manufacturer's suggested retail price of nineteen thousand dollars ($19,000) or less, the rate may not exceed nine dollars ($9).

(2) For rental vehicles that have a manufacturer's suggested retail price from nineteen thousand one dollars ($19,001) to thirty-four thousand nine hundred ninety-nine dollars ($34,999), inclusive, and that are also either vehicles of next year's model, or not older than the previous year's model, the rate may not exceed fifteen dollars ($15). For those rental vehicles older than the previous year's model **\* \* \*** , the rate may not exceed nine dollars ($9).

(i) On or after January 1, 2003, the manufacturer's suggested retail prices described in subdivision (h) shall be adjusted annually to reflect changes from the previous year in the Consumer Price Index. For the purposes of this section, "Consumer Price Index" means the United States Consumer Price Index for All Urban Consumers, for all items.

(j) A rental company that disseminates in this state an advertisement containing a rental rate shall include in that advertisement a clearly readable statement of the charge for a damage waiver and a statement that a damage waiver is optional.

(k)(1) A rental company may not require the purchase of a damage waiver, optional insurance, or any other optional good or service.

(2) A rental company may not engage in any unfair, deceptive, or coercive conduct to induce a renter to purchase the damage waiver, optional insurance, or any other optional good or service, including conduct such as, but not limited to, refusing to honor the renter's reservation, limiting the availability of vehicles, requiring a deposit, or debiting or blocking the renter's credit card account for a sum equivalent to a deposit if the renter declines to purchase the damage waiver, optional insurance, or any other optional good or service.

(l)(1) In the absence of express permission granted by the renter subsequent to damage to, or loss of, the vehicle, a rental company may not seek to recover any portion of any claim arising out of damage to, or loss of, the rented vehicle by processing a credit card charge or causing any debit or block to be placed on the renter's credit card account.

(2) A rental company may not engage in any unfair, deceptive, or coercive tactics in attempting to recover or in recovering on any claim arising out of damage to, or loss of, the rented vehicle.

(m)(1) A customer facility charge may be collected by a rental company under the following circumstances:

(A) Collection of the fee by the rental company is required by an airport operated by a city, a county, a city and county, a joint powers authority, or a special district.

(B) The fee is calculated on a per-contract basis.

(C) The fee is a user fee, not a tax imposed upon real property or an incidence of property ownership under Article XIII D of the California Constitution.

(D) Except as otherwise provided in subparagraph (E), the fee shall be ten dollars ($10) per contract.

(E) If the fee imposed by the airport is for both a consolidated rental car facility and a common-use transportation system, the fee collected from customers of on-airport rental car companies shall be ten dollars ($10), but the fee imposed on customers of off-airport rental car companies who are transported on the common-use transportation system is proportionate to the costs of

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 50 of 697

the common-use transportation system only. The fee is uniformly applied to each class of on-airport or off-airport customers, provided the airport requires off-airport customers to use the common-use transportation system.

(F) Revenues collected from the fee do not exceed the reasonable costs of financing, designing, constructing, or operating the facility or services and may not be used for any other purpose.

(G) The fee is separately identified on the rental agreement.

(H) This paragraph does not apply to airports whose fees are governed by Section 1936.5 of the Civil Code, Section 50474.1 of the Government Code, or Section 57.5 of the San Diego Unified Port District Act.

(2) Notwithstanding any other provision of law, including, but not limited to, Part 1 (commencing with Section 6001) to Part 1.7 (commencing with Section 7280), inclusive, of Division 2 of the Revenue and Taxation Code, the fees collected pursuant to this section, or any other law whereby a local agency operating an airport requires a rental car company to collect a facility financing fee from its customers, are not subject to sales, use, or transaction taxes.

(n)(1) A rental company shall only advertise, quote, and charge a rental rate that includes the entire amount except taxes, a customer facility charge, if any, and a mileage charge, if any, which a renter must pay to hire or lease the vehicle for the period of time to which the rental rate applies. A rental company may not charge in addition to the rental rate, taxes, a customer facility charge, if any, and a mileage charge, if any, any fee which must be paid by the renter as a condition of hiring or leasing the vehicle, such as, but not limited to, required fuel or airport surcharges other than customer facility charges, nor any fee for transporting the renter to the location where the rented vehicle will be delivered to the renter.

(2) In addition to the rental rate, taxes, customer facility charges, if any, and mileage charges, if any, a rental company may charge for an item or service provided in connection with a particular rental transaction if the renter could have avoided incurring the charge by choosing not to obtain or utilize the optional item or service. Items and services for which the rental company may impose an additional charge * * * include, but are not limited to, optional insurance and accessories requested by the renter, service charges incident to the renter's optional return of the vehicle to a location other than the location where the vehicle was hired or leased, and charges for refueling the vehicle at the conclusion of the rental transaction in the event the renter did not return the vehicle with as much fuel as was in the fuel tank at the beginning of the rental. A rental company also may impose an additional charge based on reasonable age criteria established by the rental company.

(3) A rental company may not charge any fee for authorized drivers in addition to the rental charge for an individual renter.

(4) If a rental company states a rental rate in print advertisement or in a telephonic, in-person, or computer-transmitted quotation, the rental company shall clearly disclose in that advertisement or quotation the terms of any mileage conditions relating to the advertised or quoted rental rate, including, but not limited to, to the extent applicable, the amount of mileage and gas charges, the number of miles for which no charges will be imposed, and a description of geographic driving limitations within the United States and Canada.

(5)(A) When a rental rate is stated in an advertisement, quotation, or reservation in connection with a car rental at an airport where a customer facility charge is imposed, the rental company shall clearly disclose the existence and amount of the customer facility charge. For the purposes of this subparagraph, advertisements include radio, television, other electronic media, and print advertisements. For purposes of this subparagraph, quotations and reservations include those that are telephonic, in-person, and computer-transmitted. If the rate advertisement is intended to include transactions at more than one airport imposing a customer facility charge, a range of fees may be stated in the advertisement. However, all rate advertisements that include car rentals at airport destinations shall clearly and conspicuously include a toll-free telephone number whereby a customer can be told the specific amount of the customer facility charge to which the customer will be obligated.

(B) If any person or entity other than a rental car company, including a passenger carrier or a seller of travel services, advertises or quotes a rate for a car rental at an airport where a customer facility charge is imposed, that person or entity shall, if they are provided with information about the existence and amount of the fee, to the extent not specifically prohibited by federal law, clearly disclose the existence and amount of the fee in any telephonic, in-person, or computer-transmitted quotation at the time of making an initial quotation of a rental rate and at the time of making a reservation of a rental car. If a rental car company provides the person or entity with rate and customer facility charge information, the rental car company is not responsible for the failure of that person or entity to comply with this subparagraph when quoting or confirming a rate to a third person or entity.

(6) If a rental company delivers a vehicle to a renter at a location other than the location where the rental company normally carries on its business, the rental company may not charge the renter any amount for the rental for the period before the delivery of the vehicle. If a rental company picks up a rented vehicle from a renter at a location other than the location where the rental

MAINTENANCE OF CODES, 2006 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 51 of 697

company normally carries on its business, the rental company may not charge the renter any amount for the rental for the period after the renter notifies the rental company to pick up the vehicle.

(o) A rental company may not use, access, or obtain any information relating to the renter's use of the rental vehicle that was obtained using electronic surveillance technology, except in the following circumstances:

(1)(A) When the equipment is used by the rental company only for the purpose of locating a stolen, abandoned, or missing rental vehicle after one of the following:

(i) The renter or law enforcement has informed the rental company that the vehicle has been stolen, abandoned, or missing.

(ii) The rental vehicle has not been returned following one week after the contracted return date, or by one week following the end of an extension of that return date.

(iii) The rental company discovers the rental vehicle has been stolen or abandoned, and, if stolen, it * * * has reported the vehicle stolen to law enforcement by filing a stolen vehicle report, unless law enforcement has already informed the rental company that the vehicle has been stolen, abandoned, or is missing.

(B) If electronic surveillance technology is activated pursuant to subparagraph (A) of paragraph (1), a rental company shall maintain a record, in either electronic or written form, of information relevant to the activation of that technology. That information shall include the rental agreement, including the return date, and the date and time the electronic surveillance technology was activated. The record shall also include, if relevant, a record of any written or other communication with the renter, including communications regarding extensions of the rental, police reports, or other written communication with law enforcement officials. The record shall be maintained for a period of at least 12 months from the time the record is created and shall be made available upon the renter's request. The rental company shall maintain and furnish any explanatory codes necessary to read the record. A rental company shall not be required to maintain a record if electronic surveillance technology is activated to recover a rental vehicle that is stolen or missing at a time other than during a rental period.

(2) In response to a specific request from law enforcement pursuant to a subpoena or search warrant.

(3) Nothing in this subdivision prohibits a rental company from equipping rental vehicles with GPS-based technology that provides navigation assistance to the occupants of the rental vehicle, if the rental company does not use, access, or obtain any information relating to the renter's use of the rental vehicle that was obtained using that technology, except for the purposes of discovering or repairing a defect in the technology and the information may then be used only for that purpose.

(4) Nothing in this subdivision prohibits a rental company from equipping rental vehicles with electronic surveillance technology that allows for the remote locking or unlocking of the vehicle at the request of the renter, if the rental company does not use, access, or obtain any information relating to the renter's use of the rental vehicle that was obtained using that technology, except as necessary to lock or unlock the vehicle.

(5) Nothing in this subdivision prohibits a rental company from equipping rental vehicles with electronic surveillance technology that allows the company to provide roadside assistance, such as towing or flat tire or fuel services, at the request of the renter, if the rental company does not use, access, or obtain any information relating to the renter's use of the rental vehicle that was obtained using that technology except as necessary to provide the requested roadside assistance.

(6) Nothing in this subdivision prohibits a rental company from obtaining, accessing, or using information from electronic surveillance technology for the sole purpose of determining the date and time the vehicle is returned to the rental company, * * * the total mileage driven, and the vehicle fuel level of the returned vehicle. This paragraph, however, shall apply only after the renter has returned the vehicle to the rental company, and the information shall only be used for the purpose described in this paragraph.

(p) A rental company may not use electronic surveillance technology to track a renter in order to impose fines or surcharges relating to the renter's use of the rental vehicle.

(q) A renter may bring an action against a rental company for the recovery of damages and appropriate equitable relief for a violation of this section. The prevailing party shall be entitled to recover reasonable attorney's fees and costs.

(r) A rental company that brings an action against a renter for loss due to theft of the vehicle shall bring the action in the county in which the renter resides or, if the renter is not a resident of this state, in the jurisdiction in which the renter resides.

(s) Any waiver of any of the provisions of this section shall be void and unenforceable as contrary to public policy.

(t)(1) A rental company's disclosure requirements shall be satisfied for renters who are enrolled in the rental company's membership program if all of the following conditions are met:

(A) Prior to the enrollee's first rental as a participant in the program, the renter receives, in writing, the following:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 52 of 697

(i) All of the disclosures required by paragraph (1) of subdivision (g), including the terms and conditions of the rental agreement then in effect.

(ii) A Web site address, as well as a contact number or address, where the enrollee can learn of any changes to the rental agreement or to the laws of this state governing rental agreements since the effective date of the rental company's most recent restatement of the rental agreement and distribution of that restatement to its members.

(B) At the commencement of each rental period, the renter is provided, on the rental record or the folder in which it is inserted, with a printed notice stating that he or she had either previously selected or declined an optional damage waiver and that the renter has the right to change preferences.

(C) At the commencement of each rental period, the rental company provides, on the rearview mirror, a hanger on which a statement is printed * * * in a box, in at least 12–point boldface type, notifying the renter that the collision damage waiver offered by the rental company may be duplicative of coverage that the customer maintains under his or her own policy of motor vehicle insurance. If it is not feasible to hang the statement from the rearview mirror, * * * the statement shall be hung from the steering wheel.

The hanger shall provide the renter a box to initial if * * * the renter (not his or her employer) has previously accepted or declined the collision damage waiver and * * * now wishes to change his or her decision to accept or decline the collision damage waiver, as follows:

"□ If I previously accepted the collision damage waiver, I now decline it.

□ If I previously declined the collision damage waiver, I now accept it."

The hanger shall also provide a box for the enrollee to indicate whether this change applies to this rental transaction only or to all future rental transactions. The hanger shall also notify the renter that he or she may make such a change, prior to leaving the lot, by returning the form to an employee designated to receive the form who is present at the lot where the renter takes possession of the car, to receive any change in the rental agreement from the renter.

(2)(A) This subdivision is not effective unless the employee designated pursuant to subparagraph (E) of paragraph (8) of subdivision (a) is actually present at the required location.

(B) This subdivision does not relieve the rental company from those disclosures that are required to be made within the text of a contract or holder in which the contract is placed; in or on an advertisement containing a rental rate; or in a telephonic, in-person, or computer-transmitted quotation or reservation.

(u) The amendments made to this section during the 2001–02 Regular Session of the Legislature do not affect litigation pending on or before January 1, 2003, alleging a violation of Section 22325 of the Business and Professions Code as it read at the time the action was commenced.

(v) This section shall remain in effect only until January 1, 2006, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2006, deletes or extends that date.

SEC. 18. Section 1936 of the Civil Code, as amended by Section 2 of Chapter 317 of the Statutes of 2004, is amended to read:

<< CA CIVIL § 1936 >>

1936. (a) For the purpose of this section, the following * * * terms have the following meanings:

(1) "Rental company" means any person or entity in the business of renting passenger vehicles to the public.

(2) "Renter" means any person in any manner obligated under a contract for the lease or hire of a passenger vehicle from a rental company for a period of less than 30 days.

(3) "Authorized driver" means (A) the renter, (B) the renter's spouse if that person is a licensed driver and satisfies the rental company's minimum age requirement, (C) the renter's employer or coworker if they are engaged in business activity with the renter, are licensed drivers, and satisfy the rental company's minimum age requirement, and (D) any person expressly listed by the rental company on the renter's contract as an authorized driver.

(A) "Customer facility charge" means a fee required by an airport to be collected by a rental company from a renter for any of the following purposes:

(i) The fee shall be used to finance, design, and construct consolidated airport car rental facilities.

(ii) The fee shall be used to finance, design, construct, and provide common-use transportation systems that move passengers between airport terminals and those consolidated car rental facilities.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.   23

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 53 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(B) The aggregate amount to be collected may not exceed the reasonable costs, as determined by an independent audit paid for by the airport, to finance, design, and construct those facilities. Copies of the audit shall be provided to the Assembly and Senate Committees on Judiciary and Committees on Transportation. In the case of a transportation system, the audit shall also consider the reasonable costs of providing the transit system or busing network. At the Burbank Airport, and at all other airports, the fees designated as a customer facility charge may not be used to pay for terminal expansion, gate expansion, runway expansion, changes in hours of operation, or changes in the number of flights arriving or departing from the airport.

(C) The authorization given pursuant to this section for an airport to impose a customer facility charge shall become inoperative when the bonds used for financing are paid.

(4) "Damage waiver" means a rental company's agreement not to hold a renter liable for all or any portion of any damage or loss related to the rented vehicle, any loss of use of the rented vehicle, or any storage, impound, towing, or administrative charges.

(5) "Electronic surveillance technology" means a technological method or system used to observe, monitor, or collect information, including telematics, Global Positioning System (GPS), wireless technology, or location-based technologies. "Electronic surveillance technology" does not include event data recorders (EDR), sensing and diagnostic modules (SDM), or other systems that are used either:

(A) For the purpose of identifying, diagnosing, or monitoring functions related to the potential need to repair, service, or perform maintenance on the rental vehicle.

(B) As part of the vehicle's airbag sensing and diagnostic system in order to capture safety systems-related data for retrieval after a crash has occurred or in the event that the collision sensors are activated to prepare the decisionmaking computer to make the determination to deploy or not to deploy the airbag.

(6) "Estimated time for replacement" means the number of hours of labor, or fraction thereof, needed to replace damaged vehicle parts as set forth in collision damage estimating guides generally used in the vehicle repair business and commonly known as "crash books."

(7) "Estimated time for repair" means a good faith estimate of the reasonable number of hours of labor, or fraction thereof, needed to repair damaged vehicle parts.

(8) "Passenger vehicle" means a passenger vehicle as defined in Section 465 of the Vehicle Code.

(b) Except as limited by subdivision (c), a rental company and a renter may agree that the renter will be responsible for no more than all of the following:

(1) Physical or mechanical damage to the rented vehicle up to its fair market value, as determined in the customary market for the sale of that vehicle, resulting from collision regardless of the cause of the damage.

(2) Loss due to theft of the rented vehicle up to its fair market value, as determined in the customary market for the sale of that vehicle, provided that the rental company establishes by clear and convincing evidence that the renter or the authorized driver failed to exercise ordinary care while in possession of the vehicle. In addition, the renter shall be presumed to have no liability for any loss due to theft if (A) an authorized driver has possession of the ignition key furnished by the rental company or an authorized driver establishes that the ignition key furnished by the rental company was not in the vehicle at the time of the theft, and (B) an authorized driver files an official report of the theft with the police or other law enforcement agency within 24 hours of learning of the theft and reasonably cooperates with the rental company and the police or other law enforcement agency in providing information concerning the theft. The presumption set forth in this paragraph is a presumption affecting the burden of proof which the rental company may rebut by establishing that an authorized driver committed, or aided and abetted the commission of, the theft.

(3) Physical damage to the rented vehicle up to its fair market value, as determined in the customary market for the sale of that vehicle, resulting from vandalism occurring after, or in connection with, the theft of the rented vehicle; however, the renter shall have no liability for any damage due to vandalism if the renter would have no liability for theft pursuant to paragraph (2).

(4) Physical damage to the rented vehicle up to a total of five hundred dollars ($500) resulting from vandalism unrelated to the theft of the rented vehicle.

(5) Actual charges for towing, storage, and impound fees paid by the rental company if the renter is liable for damage or loss.

(6) An administrative charge, which shall include the cost of appraisal and all other costs and expenses incident to the damage, loss, repair, or replacement of the rented vehicle.

(c) The total amount of the renter's liability to the rental company resulting from damage to the rented vehicle may not exceed the sum of the following:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 54 of 697

(1) The estimated cost of parts which the rental company would have to pay to replace damaged vehicle parts. All discounts and price reductions or adjustments that are or will be received by the rental company shall be subtracted from the estimate to the extent not already incorporated in the estimate or otherwise promptly credited or refunded to the renter.

(2) The estimated cost of labor to replace damaged vehicle parts which may not exceed the product of (A) the rate for labor usually paid by the rental company to replace vehicle parts of the type that were damaged and (B) the estimated time for replacement. All discounts and price reductions or adjustments that are or will be received by the rental company shall be subtracted from the estimate to the extent not already incorporated in the estimate or otherwise promptly credited or refunded to the renter.

(3)(A) The estimated cost of labor to repair damaged vehicle parts, which may not exceed the lesser of the following:

(i) The product of the rate for labor usually paid by the rental company to repair vehicle parts of the type that were damaged and the estimated time for repair.

(ii) The sum of the estimated labor and parts costs determined under paragraphs (1) and (2) to replace the same vehicle parts.

(B) All discounts and price reductions or adjustments that are or will be received by the rental company shall be subtracted from the estimate to the extent not already incorporated in the estimate or otherwise promptly credited or refunded to the renter.

(4) For the purpose of converting the estimated time for repair into the same units of time in which the rental rate is expressed, a day shall be deemed to consist of eight hours.

(5) Actual charges for towing, storage, and impound fees paid by the rental company.

(6) The administrative charge described in paragraph (6) of subdivision (b) may not exceed (A) fifty dollars ($50) if the total estimated cost for parts and labor is more than one hundred dollars ($100) up to and including five hundred dollars ($500), (B) one hundred dollars ($100) if the total estimated cost for parts and labor exceeds five hundred dollars ($500) up to and including one thousand five hundred dollars ($1,500), and (C) one hundred fifty dollars ($150) if the total estimated cost for parts and labor exceeds one thousand five hundred dollars ($1,500). No administrative charge may be imposed if the total estimated cost of parts and labor is one hundred dollars ($100) or less.

(d)(1) The total amount of an authorized driver's liability to the rental company, if any, for damage occurring during the authorized driver's operation of the rented vehicle may not exceed the amount of the renter's liability under subdivision (c).

(2) A rental company may not recover from the renter or other authorized driver an amount exceeding the renter's liability under subdivision (c).

(3) A claim against a renter resulting from damage or loss, excluding loss of use, to a rental vehicle shall be reasonably and rationally related to the actual loss incurred. A rental company shall mitigate damages where possible and may not assert or collect any claim for physical damage which exceeds the actual costs of the repairs performed or the estimated cost of repairs, if the rental company chooses not to repair the vehicle, including all discounts and price reductions. However, if the vehicle is a total loss vehicle, the claim may not exceed the total loss vehicle value established in accordance with procedures that are customarily used by insurance companies when paying claims on total loss vehicles, less the proceeds from salvaging the vehicle, if those proceeds are retained by the rental company.

(4) If insurance coverage exists under the renter's applicable personal or business insurance policy and the coverage is confirmed during regular business hours, the renter may require that the rental company submit any claims to the renter's applicable personal or business insurance carrier. The rental company may not make any written or oral representations that it will not present claims or negotiate with the renter's insurance carrier. For purposes of this paragraph, confirmation of coverage includes telephone confirmation from insurance company representatives during regular business hours. Upon request of the renter and after confirmation of coverage, the amount of claim shall be resolved between the insurance carrier and the rental company. The renter shall remain responsible for payment to the rental car company for any loss sustained that the renter's applicable personal or business insurance policy does not cover.

(5) A rental company may not recover from the renter or other authorized driver for any item described in subdivision (b) to the extent the rental company obtains recovery from any other person.

(6) This section applies only to the maximum liability of a renter or other authorized driver to the rental company resulting from damage to the rented vehicle and not to the liability of any other person.

(e)(1) Except as provided in subdivision (f), every damage waiver shall provide or, if not expressly stated in writing, shall be deemed to provide that the renter has no liability for any damage, loss, loss of use, or any cost or expense incident thereto.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 55 of 697

MAINTENANCE OF CODES, 2006 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(2) Except as provided in subdivision (f), every limitation, exception, or exclusion to any damage waiver is void and unenforceable.

(f) A rental company may provide in the rental contract that a damage waiver does not apply under any of the following circumstances:

(1) Damage or loss results from an authorized driver's (A) intentional, willful, wanton, or reckless conduct, (B) operation of the vehicle under the influence of drugs or alcohol in violation of Section 23152 of the Vehicle Code, (C) towing or pushing anything, or (D) operation of the vehicle on an unpaved road if the damage or loss is a direct result of the road or driving conditions.

(2) Damage or loss occurs while the vehicle is (A) used for commercial hire, (B) used in connection with conduct that could be properly charged as a felony, (C) involved in a speed test or contest or in driver training activity, (D) operated by a person other than an authorized driver, or (E) operated outside of the United States.

(3) Any authorized driver who has (A) provided fraudulent information to the rental company * * * or (B) provided false information and the rental company would not have rented the vehicle if it had instead received true information.

(g)(1) A rental company that offers or provides a damage waiver for any consideration in addition to the rental rate shall clearly and conspicuously disclose the following information in the rental contract or holder in which the contract is placed and, also, in signs posted at the place, such as the counter, where the renter signs the rental contract: (A) the nature of the renter's liability, e.g., liability for all collision damage regardless of cause, (B) the extent of the renter's liability, e.g., liability for damage or loss up to a specified amount, (C) the renter's personal insurance policy or the credit card used to pay for the car rental transaction may provide coverage for all or a portion of the renter's potential liability, (D) the renter should consult with his or her insurer to determine the scope of insurance coverage, including the amount of the deductible, if any, for which the renter is obligated, (E) the renter may purchase an optional damage waiver to cover all liability, subject to whatever exceptions the rental company expressly lists that are permitted under subdivision (f), and (F) the range of charges for the damage waiver.

(2) In addition to the requirements of paragraph (1), a rental company that offers or provides a damage waiver shall, on that part of the contract where the renter indicates his or her acceptance or declination of the damage waiver, indicate that the purchase of the damage waiver is optional.

(3) The following is an example, for purposes of illustration and not limitation, of a notice fulfilling the requirements of paragraph (1) for a rental company that imposes liability on the renter for collision damage to the full value of the vehicle:

"NOTICE ABOUT YOUR FINANCIAL RESPONSIBILITY AND OPTIONAL DAMAGE WAIVER

You are responsible for all collision damage to the rented vehicle even if someone else caused it or the cause is unknown. You are responsible for the cost of repair up to the value of the vehicle, and towing, storage, and impound fees.

Your own insurance, or the issuer of the credit card you use to pay for the car rental transaction, may cover all or part of your financial responsibility for the rented vehicle. You should check with your insurance company, or credit card issuer, to find out about your coverage and the amount of the deductible, if any, for which you may be liable.

Further, if you use a credit card that provides coverage for your potential liability, you should check with the issuer to determine if you must first exhaust the coverage limits of your own insurance before the credit card coverage applies.

The rental company will not hold you responsible if you buy a damage waiver. But a damage waiver will not protect you if (list exceptions)."

(A) When the above notice is printed in the rental contract or holder in which the contract is placed, the following shall be printed immediately following the notice:

"The cost of an optional damage waiver is $_____ for every (day or week)."

(B) When the above notice appears on a sign, the following shall appear immediately adjacent to the notice:

"The cost of an optional damage waiver is $_____ to $_____ for every (day or week), depending upon the vehicle rented."

(h) Notwithstanding any other provision of law, a rental company may sell a damage waiver subject to the following rate limitations for each full or partial 24–hour rental day for the damage waiver:

(1) For rental vehicles that the rental company designates as an "economy car," "subcompact car," "compact car," or any other term having similar meaning when offered for rental, or any other vehicle having a manufacturer's suggested retail price of nineteen thousand dollars ($19,000) or less, the rate may not exceed nine dollars ($9).

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 56 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(2) For rental vehicles that have a manufacturer's suggested retail price from nineteen thousand one dollars ($19,001) to thirty-four thousand nine hundred ninety-nine dollars ($34,999), inclusive, and that are also either vehicles of next year's model, or not older than the previous year's model, the rate may not exceed fifteen dollars ($15). For those rental vehicles older than the previous year's model, the rate may not exceed nine dollars ($9).

(i) On or after January 1, 2003, the manufacturer's suggested retail prices described in subdivision (h) shall be adjusted annually to reflect changes from the previous year in the Consumer Price Index. For the purposes of this section, "Consumer Price Index" means the United States Consumer Price Index for All Urban Consumers, for all items.

(j) A rental company that disseminates in this state an advertisement containing a rental rate shall include in that advertisement a clearly readable statement of the charge for a damage waiver and a statement that a damage waiver is optional.

(k)(1) A rental company may not require the purchase of a damage waiver, optional insurance, or any other optional good or service.

(2) A rental company may not engage in any unfair, deceptive, or coercive conduct to induce a renter to purchase the damage waiver, optional insurance, or any other optional good or service, including conduct such as, but not limited to, refusing to honor the renter's reservation, limiting the availability of vehicles, requiring a deposit, or debiting or blocking the renter's credit card account for a sum equivalent to a deposit if the renter declines to purchase the damage waiver, optional insurance, or any other optional good or service.

(l)(1) In the absence of express permission granted by the renter subsequent to damage to, or loss of, the vehicle, a rental company may not seek to recover any portion of any claim arising out of damage to, or loss of, the rented vehicle by processing a credit card charge or causing any debit or block to be placed on the renter's credit card account.

(2) A rental company may not engage in any unfair, deceptive, or coercive tactics in attempting to recover or in recovering on any claim arising out of damage to, or loss of, the rented vehicle.

(m)(1) A customer facility charge may be collected by a rental company under the following circumstances:

(A) Collection of the fee by the rental company is required by an airport operated by a city, a county, a city and county, a joint powers authority, or a special district.

(B) The fee is calculated on a per-contract basis.

(C) The fee is a user fee, not a tax imposed upon real property or an incidence of property ownership under Article XIII D of the California Constitution.

(D) Except as otherwise provided in subparagraph (E), the fee shall be ten dollars ($10) per contract.

(E) If the fee imposed by the airport is for both a consolidated rental car facility and a common-use transportation system, the fee collected from customers of on-airport rental car companies shall be ten dollars ($10), but the fee imposed on customers of off-airport rental car companies who are transported on the common-use transportation system is proportionate to the costs of the common-use transportation system only. The fee is uniformly applied to each class of on-airport or off-airport customers, provided the airport requires off-airport customers to use the common-use transportation system.

(F) Revenues collected from the fee do not exceed the reasonable costs of financing, designing, constructing, or operating the facility or services and may not be used for any other purpose.

(G) The fee is separately identified on the rental agreement.

(H) This paragraph does not apply to airports whose fees are governed by Section 1936.5 of the Civil Code, Section 50474.1 of the Government Code, or Section 57.5 of the San Diego Unified Port District Act.

(2) Notwithstanding any other provision of law, including, but not limited to, Part 1 (commencing with Section 6001) to Part 1.7 (commencing with Section 7280), inclusive, of Division 2 of the Revenue and Taxation Code, the fees collected pursuant to this section, or any other law whereby a local agency operating an airport requires a rental car company to collect a facility financing fee from its customers, are not subject to sales, use, or transaction taxes.

(n)(1) A rental company shall only advertise, quote, and charge a rental rate that includes the entire amount except taxes, a customer facility charge, if any, and a mileage charge, if any, which a renter must pay to hire or lease the vehicle for the period of time to which the rental rate applies. A rental company may not charge in addition to the rental rate, taxes, a customer facility charge, if any, and a mileage charge, if any, any fee which must be paid by the renter as a condition of hiring or leasing the vehicle, such as, but not limited to, required fuel or airport surcharges other than customer facility charges, nor any fee for transporting the renter to the location where the rented vehicle will be delivered to the renter.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 57 of 697

(2) In addition to the rental rate, taxes, customer facility charges, if any, and mileage charges, if any, a rental company may charge for an item or service provided in connection with a particular rental transaction if the renter could have avoided incurring the charge by choosing not to obtain or utilize the optional item or service. Items and services for which the rental company may impose an additional charge include, but are not limited to, optional insurance and accessories requested by the renter, service charges incident to the renter's optional return of the vehicle to a location other than the location where the vehicle was hired or leased, and charges for refueling the vehicle at the conclusion of the rental transaction in the event the renter did not return the vehicle with as much fuel as was in the fuel tank at the beginning of the rental. A rental company also may impose an additional charge based on reasonable age criteria established by the rental company.

(3) A rental company may not charge any fee for authorized drivers in addition to the rental charge for an individual renter.

(4) If a rental company states a rental rate in print advertisement or in a telephonic, in-person, or computer-transmitted quotation, the rental company shall clearly disclose in that advertisement or quotation the terms of any mileage conditions relating to the advertised or quoted rental rate, including, but not limited to, to the extent applicable, the amount of mileage and gas charges, the number of miles for which no charges will be imposed, and a description of geographic driving limitations within the United States and Canada.

(5)(A) When a rental rate is stated in an advertisement, quotation, or reservation in connection with a car rental at an airport where a customer facility charge is imposed, the rental company shall clearly disclose the existence and amount of the customer facility charge. For the purposes of this subparagraph, advertisements include radio, television, other electronic media, and print advertisements. For purposes of this subparagraph, quotations and reservations include those that are telephonic, in-person, and computer-transmitted. If the rate advertisement is intended to include transactions at more than one airport imposing a customer facility charge, a range of fees may be stated in the advertisement. However, all rate advertisements that include car rentals at airport destinations shall clearly and conspicuously include a toll-free telephone number whereby a customer can be told the specific amount of the customer facility charge to which the customer will be obligated.

(B) If any person or entity other than a rental car company, including a passenger carrier or a seller of travel services, advertises or quotes a rate for a car rental at an airport where a customer facility charge is imposed, that person or entity shall, if they are provided with information about the existence and amount of the fee, to the extent not specifically prohibited by federal law, clearly disclose the existence and amount of the fee in any telephonic, in-person, or computer-transmitted quotation at the time of making an initial quotation of a rental rate and at the time of making a reservation of a rental car. If a rental car company provides the person or entity with rate and customer facility charge information, the rental car company is not responsible for the failure of that person or entity to comply with this subparagraph when quoting or confirming a rate to a third person or entity.

(6) If a rental company delivers a vehicle to a renter at a location other than the location where the rental company normally carries on its business, the rental company may not charge the renter any amount for the rental for the period before the delivery of the vehicle. If a rental company picks up a rented vehicle from a renter at a location other than the location where the rental company normally carries on its business, the rental company may not charge the renter any amount for the rental for the period after the renter notifies the rental company to pick up the vehicle.

(o) A rental company may not use, access, or obtain any information relating to the renter's use of the rental vehicle that was obtained using electronic surveillance technology, except in the following circumstances:

(1)(A) When the equipment is used by the rental company only for the purpose of locating a stolen, abandoned, or missing rental vehicle after one of the following:

(i) The renter or law enforcement has informed the rental company that the vehicle has been stolen, abandoned, or missing.

(ii) The rental vehicle has not been returned following one week after the contracted return date, or by one week following the end of an extension of that return date.

(iii) The rental company discovers the rental vehicle has been stolen or abandoned, and, if stolen, it shall report the vehicle stolen to law enforcement by filing a stolen vehicle report, unless law enforcement has already informed the rental company that the vehicle has been stolen, abandoned, or is missing.

(B) If electronic surveillance technology is activated pursuant to subparagraph (A) of paragraph (1), a rental company shall maintain a record, in either electronic or written form, of information relevant to the activation of that technology. That information shall include the rental agreement, including the return date, and the date and time the electronic surveillance technology was activated. The record shall also include, if relevant, a record of any written or other communication with the renter, including communications regarding extensions of the rental, police reports or other written communication with law

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 58 of 697

enforcement officials. The record shall be maintained for a period of at least 12 months from the time the record is created and shall be made available upon the renter's request. The rental company shall maintain and furnish any explanatory codes necessary to read the record. A rental company shall not be required to maintain a record if electronic surveillance technology is activated to recover a rental vehicle that is stolen or missing at a time other than during a rental period.

(2) In response to a specific request from law enforcement pursuant to a subpoena or search warrant.

(3) Nothing in this subdivision prohibits a rental company from equipping rental vehicles with GPS-based technology that provides navigation assistance to the occupants of the rental vehicle, if the rental company does not use, access, or obtain any information relating to the renter's use of the rental vehicle that was obtained using that technology, except for the purposes of discovering or repairing a defect in the technology and the information may then be used only for that purpose.

(4) Nothing in this subdivision prohibits a rental company from equipping rental vehicles with electronic surveillance technology that allows for the remote locking or unlocking of the vehicle at the request of the renter, if the rental company does not use, access, or obtain any information relating to the renter's use of the rental vehicle that was obtained using that technology except as necessary to lock or unlock the vehicle.

(5) Nothing in this subdivision prohibits a rental company from equipping rental vehicles with electronic surveillance technology that allows the company to provide roadside assistance, such as towing or flat tire or fuel services, at the request of the renter, if the rental company does not use, access, or obtain any information relating to the renter's use of the rental vehicle that was obtained using that technology, except as necessary to provide the requested roadside assistance.

(6) Nothing in this subdivision prohibits a rental company from obtaining, accessing, or using information from electronic surveillance technology for the sole purpose of determining the date and time the vehicle is returned to the rental company, and the total mileage driven and the vehicle fuel level of the returned vehicle. This paragraph, however, shall apply only after the renter has returned the vehicle to the rental company, and the information shall only be used for the purpose described in this paragraph.

(p) A rental company may not use electronic surveillance technology to track a renter in order to impose fines or surcharges relating to the renter's use of the rental vehicle.

(q) A renter may bring an action against a rental company for the recovery of damages and appropriate equitable relief for a violation of this section. The prevailing party shall be entitled to recover reasonable attorney's fees and costs.

(r) A rental company that brings an action against a renter for loss due to theft of the vehicle shall bring the action in the county in which the renter resides or, if the renter is not a resident of this state, in the jurisdiction in which the renter resides.

(s) Any waiver of any of the provisions of this section is void and unenforceable as contrary to public policy.

SEC. 19. Section 995.640 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 995.640 >>

995.640. The county clerk of any county shall, upon request of any person, do any of the following:

(a) Issue a certificate stating whether the certificate of authority of an admitted surety insurer issued by the Insurance Commissioner authorizing the insurer to transact surety insurance, has been surrendered, revoked, canceled, annulled, or suspended, and in the event that it has, whether renewed authority has been granted. The county clerk in issuing the certificate shall rely solely upon the information furnished by the Insurance Commissioner pursuant to Article 2 (commencing with Section 12070) of Chapter 1 of Part 4 of Division 2 of the Insurance Code.

(b) Issue a certificate stating whether a copy of the transcript or record of the unrevoked appointment, power of attorney, bylaws, or other instrument, duly certified by the proper authority and attested by the seal of an admitted surety insurer entitling or authorizing the person who executed a bond to do so for and on behalf of the insurer, is filed in the office of the clerk.

SEC. 20. Section 1985.6 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 1985.6 >>

1985.6. (a) For purposes of this section, the following * * * terms have the following meanings:

(1) "Deposition officer" means a person who meets the qualifications specified in paragraph (3) of subdivision (d) of Section 2020.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 59 of 697

(2) "Employee" means any individual who is or has been employed by a witness subject to a subpoena duces tecum. "Employee" also means any individual who is or has been represented by a labor organization that is a witness subject to a subpoena duces tecum.

(3) "Employment records" means the original or any copy of books, documents, other writings, or electronic data pertaining to the employment of any employee maintained by the current or former employer of the employee, or by any labor organization that has represented or currently represents the employee.

(4) "Labor organization" has the meaning set forth in Section 1117 of the Labor Code.

(5) "Subpoenaing party" means the person or persons causing a subpoena duces tecum to be issued or served in connection with any civil action or proceeding, but does not include the state or local agencies described in Section 7465 of the Government Code, or any entity provided for under Article VI of the California Constitution in any proceeding maintained before an adjudicative body of that entity pursuant to Chapter 4 (commencing with Section 6000) of Division 3 of the Business and Professions Code.

(b) Prior to the date called for in the subpoena duces tecum of the production of employment records, the subpoenaing party shall serve or cause to be served on the employee whose records are being sought a copy of: the subpoena duces tecum; the affidavit supporting the issuance of the subpoena, if any; *** the notice described in subdivision (e); and proof of service as provided in paragraph (1) of subdivision (c). This service shall be made as follows:

(1) To the employee personally, or at his or her last known address, or in accordance with Chapter 5 (commencing with Section 1010) of Title 14 of Part 3, or, if he or she is a party, to his or her attorney of record. If the employee is a minor, service shall be made on the minor's parent, guardian, conservator, or similar fiduciary, or if one of them cannot be located with reasonable diligence, then service shall be made on any person having the care or control of the minor, or with whom the minor resides, and on the minor if the minor is at least 12 years of age.

(2) Not less than 10 days prior to the date for production specified in the subpoena duces tecum, plus the additional time provided by Section 1013 if service is by mail.

(3) At least five days prior to service upon the custodian of the employment records, plus the additional time provided by Section 1013 if service is by mail.

(c) Prior to the production of the records, the subpoenaing party shall either:

(1) Serve or cause to be served upon the witness a proof of personal service or of service by mail attesting to compliance with subdivision (b).

(2) Furnish the witness a written authorization to release the records signed by the employee or by his or her attorney of record. The witness may presume that the attorney purporting to sign the authorization on behalf of the employee acted with the consent of the employee, and that any objection to the release of records is waived.

(d) A subpoena duces tecum for the production of employment records shall be served in sufficient time to allow a witness a reasonable time, as provided in paragraph (1) of subdivision (d) of Section 2020, to locate and produce the records or copies thereof.

(e) Every copy of the subpoena duces tecum and affidavit served on an employee or his or her attorney in accordance with subdivision (b) shall be accompanied by a notice, in a typeface designed to call attention to the notice, indicating that (1) employment records about the employee are being sought from the witness named on the subpoena; (2) the employment records may be protected by a right of privacy; (3) if the employee objects to the witness furnishing the records to the party seeking the records, the employee shall file papers with the court prior to the date specified for production on the subpoena; and (4) if the subpoenaing party does not agree in writing to cancel or limit the subpoena, an attorney should be consulted about the employee's interest in protecting his or her rights of privacy. If a notice of taking of deposition is also served, that other notice may be set forth in a single document with the notice required by this subdivision.

(f) Any employee whose employment records are sought by a subpoena duces tecum may, prior to the date for production, bring a motion under Section 1987.1 to quash or modify the subpoena duces tecum. Notice of the bringing of that motion shall be given to the witness and the deposition officer at least five days prior to production. The failure to provide notice to the deposition officer does not invalidate the motion to quash or modify the subpoena duces tecum but may be raised by the deposition officer as an affirmative defense in any action for liability for improper release of records.

Any nonparty employee whose employment records are sought by a subpoena duces tecum may, prior to the date of production, serve on the subpoenaing party, *** the deposition officer, and the witness a written objection that cites the specific grounds on which production of the employment records should be prohibited.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 60 of 697

No witness or deposition officer shall be required to produce employment records after receipt of notice that the motion has been brought by an employee, or after receipt of a written objection from a nonparty employee, except upon order of the court in which the action is pending or by agreement of the parties, witnesses, and employees affected.

The party requesting an employee's employment records may bring a motion under subdivision (c) of Section 1987 to enforce the subpoena within 20 days of service of the written objection. The motion shall be accompanied by a declaration showing a reasonable and good faith attempt at informal resolution of the dispute between the party requesting the employment records and the employee or the employee's attorney.

(g) Upon good cause shown and provided that the rights of witnesses and employees are preserved, a subpoenaing party shall be entitled to obtain an order shortening the time for service of a subpoena duces tecum or waiving the requirements of subdivision (b) where due diligence by the subpoenaing party has been shown.

(h) This section may not be construed to apply to any subpoena duces tecum that does not request the records of any particular employee or employees and that requires a custodian of records to delete all information which would in any way identify any employee whose records are to be produced.

(i) This section does not apply to proceedings conducted under Division 1 (commencing with Section 50), Division 4 (commencing with Section 3200), Division 4.5 (commencing with Section 6100), or Division 4.7 (commencing with Section 6200) of the Labor Code.

(j) Failure to comply with this section shall be sufficient basis for the witness to refuse to produce the employment records sought by subpoena duces tecum.

SEC. 21. Section 2025.480 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 2025.480 >>

2025.480. (a) If a deponent fails to answer any question or to produce any document or tangible thing under the deponent's control that is specified in the deposition notice or a deposition subpoena, the party seeking discovery may move the court for an order compelling that answer or production.

(b) This motion shall be made no later than 60 days after the completion of the record of the deposition, and shall be accompanied by a meet and confer declaration under Section 2016.040.

(c) Notice of this motion shall be given to all parties * * * and to the deponent either orally at the examination, or by subsequent service in writing. If the notice of the motion is given orally, the deposition officer shall direct the deponent to attend a session of the court at the time specified in the notice.

(d) Not less than five days prior to the hearing on this motion, the moving party shall lodge with the court a certified copy of any parts of the stenographic transcript of the deposition that are relevant to the motion. If a deposition is recorded by audio or video technology, the moving party is required to lodge a certified copy of a transcript of any parts of the deposition that are relevant to the motion.

(e) If the court determines that the answer or production sought is subject to discovery, it shall order that the answer be given or the production be made on the resumption of the deposition.

(f) The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel an answer or production, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust.

(g) If a deponent fails to obey an order entered under this section, the failure may be considered a contempt of court. In addition, if the disobedient deponent is a party to the action or an officer, director, managing agent, or employee of a party, the court may make those orders that are just against the disobedient party, or against the party with whom the disobedient deponent is affiliated, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Chapter 7 (commencing with Section 2023.010). In lieu of * * * or in addition to * * * this sanction, the court may impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against that party deponent or against any party with whom the deponent is affiliated.

SEC. 22. Section 2030.050 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 2030.050 >>

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 61 of 697

2030.050. Any party who is propounding or has propounded more than 35 specially prepared interrogatories to any other party shall attach to each set of those interrogatories a declaration containing substantially the following:

## DECLARATION FOR ADDITIONAL DISCOVERY

I, _____, declare:

1. I am (a party to this action or proceeding appearing in propria persona) (presently the attorney for _____, a party to this action or proceeding).

2. I am propounding to _____ the attached set of interrogatories.

3. This set of interrogatories will cause the total number of specially prepared interrogatories propounded to the party to whom they are directed to exceed the number of specially prepared interrogatories permitted by Section 2030.030 of the Code of Civil Procedure.

4. I have previously propounded a total of _____ interrogatories to this party, of which _____ interrogatories were not official form interrogatories.

5. This set of interrogatories contains a total of _____ specially prepared interrogatories.

6. I am familiar with the issues and the previous discovery conducted by all of the parties in the case.

7. I have personally examined each of the questions in this set of interrogatories.

8. This number of questions is warranted under Section 2030.040 of the Code of Civil Procedure because _____. (Here state each factor described in Section 2030.040 that is relied on, as well as the reasons why any factor relied on is applicable to the instant lawsuit.)

9. None of the questions in this set of interrogatories is being propounded for any improper purpose, such as to harass the party, or the attorney for the party, to whom it is directed, or to cause unnecessary delay or needless increase in the cost of litigation.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct, and that this declaration was executed on _____.

...........................................................................................................................................................................

(Signature)

Attorney for ....................................................................................................................................................

SEC. 23. Section 2031.300 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 2031.300 >>

2031.300. If a party to whom an inspection demand is directed fails to serve a timely response to it, the following rules apply:
 (a) The party to whom the inspection demand is directed waives any objection to the demand, including one based on privilege or on the protection for work product under Chapter 4 (commencing with Section 2018.010). The court, on motion, may relieve that party from this waiver on its determination that both of the following conditions are satisfied:
 (1) The party has subsequently served a response that is in substantial compliance with Sections 2031.210, 2031.220, 2031.230, 2031.240, and 2031.280.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 62 of 697

(2) The party's failure to serve a timely response was the result of mistake, inadvertence, or excusable neglect.

(b) The party making the demand may move for an order compelling response to the inspection demand.

(c) The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a response to an inspection demand, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. If a party then fails to obey the order compelling a response, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Chapter 7 (commencing with Section 2023.010). In lieu of or in addition to this sanction, the court may impose a monetary sanction under Chapter 7 (commencing with Section 2023.010).

SEC. 24. Section 2033.220 of the Code of Civil Procedure is amended to read:

<< CA CIV PRO § 2033.220 >>

2033.220. (a) Each answer in a response to requests for admission shall be as complete and straightforward as the information reasonably available to the responding party permits.

(b) Each answer shall:

(1) Admit so much of the matter involved in the request as is true, either as expressed in the request itself or as reasonably and clearly qualified by the responding party.

(2) Deny so much of the matter involved in the request as is untrue.

(3) Specify so much of the matter involved in the request as to the * * * truth of which the responding party lacks sufficient information or knowledge.

(c) If a responding party gives lack of information or knowledge as a reason for a failure to admit all or part of a request for admission, that party shall state in the answer that a reasonable inquiry concerning the matter in the particular request has been made, and that the information known or readily obtainable is insufficient to enable that party to admit the matter.

SEC. 25. Section 31109.1 of the Corporations Code is amended to read:

<< CA CORP § 31109.1 >>

31109.1. (a) There shall be exempted from the provisions of Chapter 2 (commencing with Section 31110) the offer and sale of a franchise registered under Section 31111, 31121, or 31123 on terms different from the terms of the offer registered thereunder if all of the following requirements are met:

(1) The initial offer is the offer registered under Section 31111, 31121, or 31123.

(2) The prospective franchisee receives all of the following in a separate written appendix to the offering circular:

(A) A summary description of each material negotiated term that was negotiated by the franchisor for a California franchise during the 12–month period ending in the calendar month immediately preceding the month in which the negotiated offer or sale is made under this section.

(B) A statement indicating that copies of the negotiated terms are available upon written request.

(C) The name, telephone number, and address of the representative of the franchisor to whom requests for a copy of the negotiated terms may be obtained.

(3) The franchisor certifies or declares in an appendix to its application for renewal that it has complied with all of the requirements of this section, in the event this exemption is claimed.

(4) The negotiated terms, on the whole, confer additional benefits on the franchisee.

(b) The franchisor shall provide a copy of the negotiated terms described in subdivision (a) to the prospective franchisee within five business days following the request of the franchisee.

(c) The franchisor shall maintain copies of all material negotiated terms for which this exemption is claimed for a period of five years from the effective date of the first agreement containing the relevant negotiated term. Upon the request of the commissioner, the franchisor shall make the copies available to the commissioner for review. For purposes of this section, the commissioner may prescribe by rule or order the format and content of the summary description of the negotiated terms required by * * * subparagraph (A) of paragraph (2) of subdivision (a).

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 63 of 697

(d) For purposes of this section, "material" means that a reasonable franchisee would view the terms as important in negotiating the franchise.

SEC. 26. Section 1240 of the Education Code is amended to read:

<< CA EDUC § 1240 >>

1240. The county superintendent of schools shall do all of the following:

(a) Superintend the schools of his or her county.

(b) Maintain responsibility for the fiscal oversight of each school district in his or her county pursuant to the authority granted by this code.

(c)(1) Visit and examine each school in his or her county at reasonable intervals to observe its operation and to learn of its problems. He or she may annually present a report of the state of the schools in his or her county, and of his or her office, including, but not limited to, his or her observations while visiting the schools, to the board of education and the board of supervisors of his or her county.

(2)(A) To the extent that funds are appropriated for purposes of this paragraph, the county superintendent, or his or her designee, shall annually present a report to the governing board of each school district under his or her jurisdiction, the county board of education of his or her county, and the board of supervisors of his or her county describing the state of the schools in the county or of his or her office that are ranked in deciles 1 to 3, inclusive, of the 2003 base Academic Performance Index, as defined in subdivision (b) of Section 17592.70, and shall include, among other things, his or her observations while visiting the schools.

(B) The county superintendent of the Counties of Alpine, Amador, Del Norte, Mariposa, Plumas, and Sierra, and the City and County of San Francisco shall contract with another county office of education or an independent auditor to conduct the required visits and make all reports required by this paragraph.

(C) The results of the visits shall be reported to the governing board of the school district on a quarterly basis at a regularly scheduled meeting held in accordance with public notification requirements.

(D) The visits made pursuant to this paragraph shall be conducted at least annually and shall meet the following criteria:

(i) Not disrupt the operation of the school.

(ii) Be performed by individuals who meet the requirements of Section 45125.1.

(iii) Consist of not less than 25 percent unannounced visits in each county. During unannounced visits in each county, the county superintendent shall not demand access to documents or specific school personnel. Unannounced visits shall only be used to observe the condition of school repair and maintenance and the sufficiency of instructional materials, as defined by Section 60119.

(E) The priority objective of the visits made pursuant to this paragraph shall be to determine the status of all of the following circumstances:

(i) Sufficient textbooks, as defined in Section 60119 and as specified in subdivision (i).

(ii) The condition of a facility that poses an emergency or urgent threat to the health or safety of pupils or staff as defined in district policy, or as defined by paragraph (1) of subdivision (c) of Section 17592.72.

(iii) The accuracy of data reported on the school accountability report card with respect to the availability of sufficient textbooks and instructional materials as defined by Section 60119 and the safety, cleanliness, and adequacy of school facilities, including good repair as required by Sections 17014, 17032.5, 17070.75, and 17089.

(d) Distribute all laws, reports, circulars, instructions, and blanks that he or she may receive for the use of the school officers.

(e) Annually present a report to the governing board of the school district and the Superintendent of Public Instruction regarding the fiscal solvency of any school district with a disapproved budget, qualified interim certification, or a negative interim certification, or that is determined at any time to be in a position of fiscal uncertainty pursuant to Section 42127.6.

(f) Keep in his or her office the reports of the Superintendent of Public Instruction.

(g) Keep a record of his or her official acts, and of all the proceedings of the county board of education, including a record of the standing, in each study, of all applicants for certificates who have been examined, which shall be open to the inspection of any applicant or his or her authorized agent.

(h) Enforce the course of study.

(i)(1) Enforce the use of state textbooks and instructional materials and of high school textbooks and instructional materials regularly adopted by the proper authority.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS    Document 163-3    Filed 01/21/21    Page 64 of 697

(2) For purposes of this subdivision, "sufficient textbooks or instructional materials" has the same meaning as in subdivision (c) of Section 60119.

(3) If a school is ranked in any of deciles 1 to 3, inclusive, of the 2003 base Academic Performance Index, as defined in subdivision (b) of Section 17592.70, and is not currently under review through a state or federal intervention program, the county superintendent shall specifically review that school at least annually as a priority school. A review conducted for purposes of this paragraph shall be conducted within the first four weeks of the school year. For the 2004–05 fiscal year only, the county superintendent shall make a diligent effort to conduct a visit to each school pursuant to this paragraph within 120 days of receipt of funds for this purpose.

(4) If the county superintendent determines that a school does not have sufficient textbooks or instructional materials in accordance with subparagraph (A) of paragraph (1) of subdivision (a) of Section 60119 and as defined by subdivision (c) of Section 60119, the county superintendent shall do all of the following:

(A) Prepare a report that specifically identifies and documents the areas or instances of noncompliance.

(B) Provide, within five business days of the review, a copy of the report to the school district, as provided in subdivision (c), and forward the report to the Superintendent of Public Instruction.

(C) Provide the school district with the opportunity to remedy the deficiency. The county superintendent shall ensure remediation of the deficiency no later than the second month of the school term.

(D) If the deficiency is not remedied as required pursuant to subparagraph (C), the county superintendent shall request the department, with approval by the State Board of Education, to purchase the textbooks or instructional materials necessary to comply with the sufficiency requirement of this subdivision. If the state board approves a recommendation from the department to purchase textbooks or instructional materials for the school district, the board shall issue a public statement at a regularly scheduled meeting indicating that the district superintendent and the governing board of the school district failed to provide pupils with sufficient textbooks or instructional materials as required by this subdivision. Before purchasing the textbooks or instructional materials, the department shall consult with the district to determine which textbooks or instructional materials to purchase. All purchases of textbooks or instructional materials shall comply with Chapter 3.25 (commencing with Section 60420) of Part 33. The amount of funds necessary to * * * purchase the textbooks and materials is a loan to the school district receiving the textbooks or instructional materials. Unless the school district repays the amount owed based upon an agreed-upon repayment schedule with the Superintendent of Public Instruction, the Superintendent of Public Instruction shall notify the Controller and the Controller shall deduct an amount equal to the total amount used to purchase the textbooks and materials * * * from the next principal apportionment of the district or from another apportionment of state funds.

(j) Preserve carefully all reports of school officers and teachers.

(k) Deliver to his or her successor, at the close of his or her official term, all records, books, documents, and papers belonging to the office, taking a receipt for them, which shall be filed with the department.

(l)(1) Submit two reports during the fiscal year to the county board of education in accordance with the following:

(A) The first report shall cover the financial and budgetary status of the county office of education for the period ending October 31. The second report shall cover the period ending January 31. Both reports shall be reviewed by the county board of education and approved by the county superintendent of schools no later than 45 days after the close of the period being reported.

(B) As part of each report, the county superintendent shall certify in writing whether or not the county office of education is able to meet its financial obligations for the remainder of the fiscal year and, based on current forecasts, for two subsequent fiscal years. The certifications shall be classified as positive, qualified, or negative, pursuant to standards prescribed by the Superintendent of Public Instruction, for the purposes of determining subsequent state agency actions pursuant to Section 1240.1. For purposes of this subdivision, a negative certification shall be assigned to any county office of education that, based upon current projections, will be unable to meet its financial obligations for the remainder of the fiscal year or for the subsequent fiscal year. A qualified certification shall be assigned to any county office of education that may not meet its financial obligations for the current fiscal year or two subsequent fiscal years. A positive certification shall be assigned to any county office of education that will meet its financial obligations for the current fiscal year and subsequent two fiscal years. In accordance with those standards, the Superintendent of Public Instruction may reclassify any certification. If a county office of education receives a negative certification, the Superintendent of Public Instruction, or his or her designee, may exercise the authority set forth in subdivision (c) of Section 1630. Copies of each certification, and of the report containing that certification, shall be sent to the Superintendent of Public Instruction at the time the certification is submitted to the county board of education. Copies

MAINTENANCE OF CODES, 2006 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 65 of 697

of each qualified or negative certification and the report containing that certification shall be sent to the Controller at the time the certification is submitted to the county board of education.

(2) All reports and certifications required under this subdivision shall be in a format or on forms prescribed by the Superintendent of Public Instruction, and shall be based on standards and criteria for fiscal stability adopted by the State Board of Education pursuant to Section 33127. The reports and supporting data shall be made available by the county superintendent of schools to any interested party upon request.

(3) This subdivision does not preclude the submission of additional budgetary or financial reports by the county superintendent to the county board of education or to the Superintendent of Public Instruction.

(4) The county superintendent of schools is not responsible for the fiscal oversight of the community colleges in the county; however, he or she may perform financial services on behalf of those community colleges.

(m) If requested, act as agent for the purchase of supplies for the city and high school districts of his or her county.

(n) For purposes of Section 44421.5, report to the Commission on Teacher Credentialing the identity of any certificated person who knowingly and willingly reports false fiscal expenditure data relative to the conduct of any educational program. This requirement applies only if, in the course of his or her normal duties, the county superintendent of schools discovers information that gives him or her reasonable cause to believe that false fiscal expenditure data relative to the conduct of any educational program has been reported.

SEC. 27. Section 17212.2 of the Education Code is amended to read:

<< CA EDUC § 17212.2 >>

17212.2. (a) The governing board of a school district may make a written request upon a person, corporation, public utility, local publicly owned utility, or governmental agency for information necessary or useful to assess and determine the safety of a proposed schoolsite or an addition to an existing schoolsite, pursuant to Section 17251 and this chapter, including pipelines, electric transmission and distribution lines, railroads, and storage tanks. The written request shall identify the physical location of the schoolsite for which information is sought, describe the information sought, and contain a statement as to why the information is needed or useful. Information requested may include all of the following:

(1) Railroad operations involving hazardous or toxic materials, as reported to a governmental agency; frequency, speed, and schedule of railroad traffic; grade, curves, and condition of railroad tracks; and railroad accident occurrence.

(2) Whether there are existing pipelines, planned pipelines, or easements for pipelines on, or in proximity to, as specified pursuant to regulations adopted pursuant to Section 17251, the schoolsite, including the location of the pipeline, the age of the pipeline, the pipeline material, the class of pipeline, the diameter of the pipeline, the depth at which the pipeline is buried, the wall thickness of the pipeline, the product or products transported by the pipeline, the operating pressure of the pipeline, the history of spills or leaks of material being transported by the pipeline, as reported to a governmental agency, and the location of the shutoff valves for the pipeline that are capable of preventing or halting the transport of product or products to the schoolsite.

(3) Whether there are easements for * * * planned * * * or existing lines for the transmission or distribution of electricity, electrical transformers, or electrical substations * * * on or in proximity to, as specified pursuant to regulations adopted pursuant to Section 17251, the schoolsite, the location of easements for, planned, or existing lines, transformers, or substations, the voltages currently handled or planned to be handled by the line, transformer, or substation, the ground clearance, if applicable, of a line, transformer, or substation, and the depth of burial, if applicable, of the line, transformer, or substation as specified by the Public Utilities Commission.

(4) The location, age, construction type, safety record, and product stored in a storage tank.

(b) A person, corporation, public utility, local publicly owned utility, or governmental agency receiving a written request for information pursuant to this section * * * shall provide a written response within 30 calendar days of receipt of the request, that provides the requested information, identifies available public information or an available report to a governmental agency, or provides written justification why the requested information is not being provided. A claim that the requested information is proprietary or confidential is a legitimate justification for the requested information to not be provided. The governing board of a school district may grant additional time to respond to a request for information pursuant to this section.

(c) A school district may file a complaint with the appropriate regulatory agency or legislative body for a violation of the requirements of this section. The regulatory agency or legislative body may appoint a representative to work toward informally resolving the complaint.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 66 of 697

<< CA EDUC § 17463.6 >>

<< CA EDUC § 17463.5 >>

SEC. 28. Section 17463.6 of the Education Code, as added by Section 2 of Chapter 838 of the Statutes of 2004, is amended and renumbered to read:

17463.5. (a) Notwithstanding any other law, the Santa Clara Unified School District may use the proceeds from the sale of surplus real property, together with any personal property located thereon, if purchased entirely with local funds and may deposit the proceeds thereof into the general fund of the school district or county office of education for any one-time general fund purpose. If the purchase of the property was made using the proceeds of a general obligation bond act or revenue derived from developer fees, the amount of the proceeds of the transaction that may be deposited into the general fund of the school district or county office of education may not exceed the percentage computed by the difference between the purchase price of the property and the proceeds from the transaction, divided by the amount of the proceeds of the transaction. For the purposes of this section, proceeds of the transaction means either of the following, as appropriate:

(1) The amount realized from the sale of property minus reasonable expenses related to the sale.

(2) For any transaction that did not result in a lump-sum payment of the proceeds of the transaction, the proceeds of the transaction shall be calculated as the net present value of the transaction.

(b) The State Allocation Board shall reduce an apportionment of hardship assistance awarded to the Santa Clara Unified School District pursuant to Article 8 (commencing with Section 17075.10) by an amount equal to the amount of the sale of surplus real property used for a one-time expenditure of the school district pursuant to this section.

(c) If the Santa Clara Unified School District exercises the authority granted pursuant to this section, the district is ineligible for hardship funding from the State School Deferred Maintenance Fund under Section 17587 for five years after the date of sale.

(d) Before the Santa Clara Unified School District exercises the authority granted pursuant to this section, the governing board of the school district shall first submit to the State Allocation Board documents certifying the following:

(1) The district has no major deferred maintenance requirements not covered by existing capital outlay resources.

(2) The sale of real property pursuant to this section does not violate any provisions of a local bond act.

(3) The real property is not suitable to meet any projected school construction need for the next 10 years.

(e) Before the Santa Clara Unified School District exercises the authority granted pursuant to this section, the governing board of the school district shall at a regularly scheduled meeting present a plan for expending one-time resources pursuant to this section. The plan shall identify the source and use of the funds and describe the reasons why the expenditure will not result in ongoing fiscal obligations for the district.

(f) This section is repealed on January 1, 2007, unless a later enacted statute that becomes operative on or before January 1, 2007, deletes or extends the date on which it is repealed.

SEC. 29. Section 17592.70 of the Education Code is amended to read:

<< CA EDUC § 17592.70 >>

17592.70. (a) There is hereby established the School Facilities Needs Assessment Grant Program * * * to provide for a one-time comprehensive assessment of school facilities needs. The grant program shall be administered by the State Allocation Board.

(b)(1) The grants shall be awarded to school districts on behalf of schoolsites ranked in deciles 1 to 3, inclusive, on the Academic Performance Index, pursuant to Section 52056, based on the 2003 base Academic Performance Index score for each school newly constructed prior to January 1, 2000.

(2) For purposes of this section, schools ranked in deciles 1 to 3, inclusive, on the 2003 base Academic Performance Index (API) shall include any schools determined by the State Department of Education to meet either of the following:

(A) The school meets all of the following criteria:

(i) Does not have a valid base API score for 2003.

(ii) Is operating in * * * the 2004–05 fiscal year and was operating in * * * the 2003–04 fiscal year during the Standardized Testing and Reporting (STAR) Program testing period.

(iii) Has a valid base API score for 2002 that was ranked in deciles 1 to 3, inclusive, in that year.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 67 of 697

(B) The school has an estimated base API score for 2003 that would be in deciles 1 to 3, inclusive.

(3) The State Department of Education shall estimate an API score for any school meeting the criteria of clauses (i) and (ii) of subparagraph (A) of paragraph (2) and not meeting the criteria of clause (iii) of subparagraph (A) of that paragraph, using available testing scores and any weighting or corrective factors it deems appropriate. The department shall provide those API scores to the Office of Public School Construction and post them on its Web site within 30 days of the enactment of this section.

(c) The \* \* \* State Allocation Board shall allocate funds pursuant to subdivision (b) to school districts with jurisdiction over eligible schoolsites, based on ten dollars ($10) per pupil enrolled in the eligible school as of October 2003, with a minimum allocation of seven thousand five hundred dollars ($7,500) for each schoolsite.

(d) As a condition of receiving funds pursuant to this section, school districts shall do all of the following:

(1) Use the funds to develop a comprehensive needs assessment of all schoolsites eligible for grants pursuant to subdivision (b). The assessment shall contain, at a minimum, all of the following information for each schoolsite:

(A) The year each building that is currently used for instructional purposes was constructed.

(B) The year, if any, each building that is currently used for instructional purposes was last modernized.

(C) The pupil capacity of the school.

(D) The number of pupils enrolled in the school.

(E) The density of the school campus measured in pupils per acre.

(F) The total number of classrooms at the school.

(G) The age and number of portable classrooms at the school.

(H) Whether the school is operating on a multitrack, year-round calendar, and, if so, what type.

(I) Whether the school has a cafeteria, \* \* \* an auditorium, or other space used for pupil eating and not for class instruction.

(J) The useful life remaining of all major building systems for each structure housing instructional space, including, but not limited to, sewer, water, gas, electrical, roofing, and fire and life safety protection.

(K) The estimated costs for five years necessary to maintain functionality of each instructional space to maintain health, safety, and suitable learning environment, as applicable, including classrooms, counseling areas, administrative space, libraries, gymnasiums, multipurpose and dining space, and the accessibility to those spaces.

(L) A list of necessary repairs.

(2) Use the data currently filed with the state as part of the process of applying for and obtaining modernization or construction funds for school facilities, or information that is available in the California Basic Education Data System for the element required in subparagraphs (D), (E), (F), and (G) of paragraph (1).

(3) Use the assessment as the baseline for the facilities inspection system required pursuant to subdivision (e) of Section 17070.75.

(4) Provide the results of the assessment to the Office of Public School Construction, including a report on the expenditures made in performing the assessment. It is the intent of the Legislature that the assessments be completed as soon as possible, but not later than January 1, 2006.

(5) If a school district does not need the full amount of the allocation it receives pursuant to this section, the school district shall expend the remaining funds for making facilities repairs identified in its needs assessment. The school district shall report to the Office of Public School Construction on the repairs completed pursuant to this paragraph and the cost of the repairs.

(6) Submit to the Office of Public School Construction an interim report regarding the progress made by the school district in completing the assessments of all eligible schools.

SEC. 30. Section 17592.72 of the Education Code is amended to read:

<< CA EDUC § 17592.72 >>

17592.72. (a) All moneys in the School Facilities Emergency Repair Account are available for reimbursement to schools ranked in deciles 1 to 3, inclusive, on the Academic Performance Index, pursuant to Section 52056, based on the 2003 base Academic Performance Index score for each school, as defined in subdivision (b) of Section 17592.70, to meet the repair costs of the school district projects that meet the criteria specified in subdivisions (c) and (d) and as approved by the State Allocation Board.

(b)(1) It is the intent of the Legislature that each school district exercise due diligence in the administration of deferred maintenance and regular maintenance in order to avoid the occurrence of emergency repairs.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 68 of 697

(2) Funds made available pursuant to this article shall supplement, not supplant, existing funds available for maintenance of school facilities.

(3) The board is authorized to deny future funding pursuant to this article to a school district if the board determines that there is a pattern of failure to exercise due diligence pursuant to paragraph (1) or supplantation. If the board finds a pattern of failure to exercise due diligence, the board shall notify the county superintendent of schools in which the school district is located.

(c)(1) For purposes of this article, "emergency facilities needs" means structures or systems that are in a condition that poses a threat to the health and safety of pupils or staff while at school. These projects may include, but are not limited to, the following types of facility repairs or replacements* * * :

(A) Gas leaks.

(B) Nonfunctioning heating, ventilation, fire sprinklers, or air-conditioning systems.

(C) Electrical power failure.

(D) Major sewer line stoppage.

(E) Major pest or vermin infestation.

(F) Broken windows or exterior doors or gates that will not lock and that pose a security risk.

(G) Abatement of hazardous materials previously undiscovered that pose an immediate threat to pupil or staff.

(H) Structural damage creating a hazardous or uninhabitable condition.

(2) For purposes of this section, "emergency facilities needs" does not include any cosmetic or nonessential repairs.

(d) For the purpose of this section, structures or components shall only be replaced if it is more cost-effective than repair.

SEC. 31. Section 17592.73 of the Education Code is amended to read:

<< CA EDUC § 17592.73 >>

17592.73. * * * The State Allocation Board shall do all of the following:

(a) Adopt regulations and review and amend its regulations, as necessary, pursuant to the rulemaking provisions of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 2 of Division 3 of Title 2 of the Government Code), for the administration of this article, including those regulations necessary to specify the qualifications of the personnel performing the needs assessment and a method to ensure their independence. The initial regulations adopted pursuant to this article shall be adopted as emergency regulations, and the circumstances related to the initial adoption are hereby deemed to constitute an emergency for this purpose. The initial regulations adopted pursuant to this article shall be adopted by January 31, 2005.

(b) Establish and publish any procedures and policies in connection with the administration of this article as it deems necessary.

(c) Apportion funds to eligible school districts under this article.

(d) Provide technical assistance to school districts to implement this article.

(e) Submit an interim status report to the Legislature and the Governor by June 30, 2005, by compiling the reports submitted pursuant to paragraph (6) of subdivision (d) of Section 17592.70.

(f) By June 30, 2008, report to the Legislature and the Governor on expenditures pursuant to Section 17592.72 and projections of future expenditures pursuant to Section 17592.72.

SEC. 32. Section 22115 of the Education Code is amended to read:

<< CA EDUC § 22115 >>

22115. (a) "Compensation earnable" means the creditable compensation a person could earn in a school year for creditable service performed on a full-time basis, excluding service for which contributions are credited by the system to the Defined Benefit Supplement Program.

(b) The board may determine compensation earnable for persons employed on a part-time basis.

(c) When service credit for a school year is less than 1.000, compensation earnable shall be the quotient obtained when creditable compensation paid in that year is divided by the service credit for that year, except as provided in subdivision (d).

(d) When a member earns creditable compensation at multiple pay rates during a school year and service credit at the highest pay rate is at least 0.900 of a year, compensation earnable shall be determined as if all service credit for that year had been earned at the highest pay rate. This subdivision shall be applicable only for purposes of determining final compensation. When

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 69 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

a member earns creditable compensation at multiple pay rates during a school year and service credit at the highest pay rate is less than 0.900 of a year, compensation earnable shall be determined pursuant to subdivision (c).

(e) For purposes of determining compensation earnable for a member employed by a community college prior to July 1, 1996, full time shall be defined pursuant to Section 22138.5 and pursuant to Section 20521 of Title 5 of the California Code of Regulations, as those provisions read on June 30, 1996, if application of that definition will increase the compensation earnable or otherwise enhance the benefits of the member.

(f) The amendments to this section made during the second year of the 1999–2000 Regular Session shall become operative on July 1, 2002, if the revenue limit cost-of-living adjustment computed by the Superintendent of Public Instruction for the 2001–02 fiscal year is equal to or greater than 3.5 percent. Otherwise the amendments to this section made during the second year of the 1999–2000 Regular Session shall become operative on July 1, 2003.

SEC. 33. Section 22200 of the Education Code is amended to read:

<< CA EDUC § 22200 >>

22200. (a) The plan and the system are administered by the Teachers' Retirement Board. On and after January 1, 2004, the members of the board are as follows:

(1) The Superintendent of Public Instruction.

(2) The Controller.

(3) The Treasurer.

(4) The Director of Finance.

(5) Three persons who are either members of the Defined Benefit Program or participants in the Cash Balance Benefit Program, as follows:

(A) One person who, at the time of election, is an active member of the Defined Benefit Program or an active participant of the Cash Balance Benefit Program employed by a school district that provides instruction for kindergarten and grades 1 to 12, inclusive, or a county office of education, in a position other than a school administrator that requires a services credential with a specialization in administrative services. This member shall be elected by the active members of the Defined Benefit Program and active participants of the Cash Balance Benefit Program who are employed by a school district that provides instruction for kindergarten and grades 1 to 12, inclusive, or county office of education, pursuant to regulations adopted by the board, for a four-year term commencing on January 1, 2004.

(B) One person who, at the time of election, is an active member of the Defined Benefit Program or an active participant of the Cash Balance Benefit Program employed by a school district that provides instruction for kindergarten and grades 1 to 12, inclusive, or a county office of education. This member shall be elected by the active members of the Defined Benefit Program and active participants of the Cash Balance Benefit Program who are employed by a school district that provides instruction for kindergarten and grades 1 to 12, inclusive, or a county office of education, pursuant to regulations adopted by the board, for a four-year term commencing on January 1, 2004.

(C) One person who, at the time of election, is a community college instructor and an active member of the Defined Benefit Program or an active participant of the Cash Balance Benefit Program employed by a community college district, who shall be elected by the active community college members of the Defined Benefit Program and the active community college participants of the Cash Balance Benefit Program, pursuant to regulations adopted by the board, for a four-year term commencing on January 1, 2004.

(6) Five persons appointed by the Governor for a term of four years, subject to confirmation by the Senate, as follows:

(A) One person who, at the time of appointment, is a member of the governing board of a school district or a community college district.

(B) One person who is either a retired member under this part or a retired participant under Part 14 (commencing with Section 26000).

(C) Three persons representing the public, whose terms shall be staggered by varying the first terms of these members, as follows:

(i) One person to a term expiring December 31, 2005.

(ii) One person to a term expiring December 31, 2006.

(iii) One person to a term expiring December 31, 2007.

(b) A person who is employed to perform creditable service by a community college district and either a school district that provides instruction for kindergarten *** and grades 1 to 12, inclusive, or a county office of education may only be elected to the position on the board that corresponds to the position in which *** he or she accrued the most service credit during the prior school year.

(c) The members of the board shall annually elect a chairperson and vice chairperson.

SEC. 34. Section 33126 of the Education Code is amended to read:

<< CA EDUC § 33126 >>

33126. (a) The school accountability report card shall provide data by which a parent can make meaningful comparisons between public schools that will enable him or her to make informed decisions on which school to enroll his or her children.

(b) The school accountability report card shall include, but is not limited to, assessment of the following school conditions:

(1)(A) Pupil achievement by grade level, as measured by the standardized testing and reporting programs pursuant to Article 4 (commencing with Section 60640) of Chapter 5 of Part 33.

(B) Pupil achievement in and progress toward meeting reading, writing, arithmetic, and other academic goals, including results by grade level from the assessment tool used by the school district using percentiles when available for the most recent three-year period.

(C) After the state develops a statewide assessment system pursuant to Chapter 5 (commencing with Section 60600) and Chapter 6 (commencing with Section 60800) of Part 33, pupil achievement by grade level, as measured by the results of the statewide assessment.

(D) Secondary schools with high school seniors shall list both the average verbal and math Scholastic Assessment Test scores to the extent provided to the school and the percentage of seniors taking that exam for the most recent three-year period.

(2) Progress toward reducing dropout rates, including the one-year dropout rate listed in the California Basic Education Data System or any successor data system for the schoolsite over the most recent three-year period, and the graduation rate, as defined by the State Board of Education, over the most recent three-year period when available pursuant to Section 52052.

(3) Estimated expenditures per pupil and types of services funded.

(4) Progress toward reducing class sizes and teaching loads, including the distribution of class sizes at the schoolsite by grade level, the average class size, and, if applicable, the percentage of pupils in kindergarten and grades 1 to 3, inclusive, participating in the Class Size Reduction Program established pursuant to Chapter 6.10 (commencing with Section 52120) of Part 28, using California Basic Education Data System or any successor data system information for the most recent three-year period.

(5) The total number of the school's fully credentialed teachers, the number of teachers relying upon emergency credentials, the number of teachers working without credentials, any assignment of teachers outside their subject areas of competence, misassignments, including misassignments of teachers of English learners, and the number of vacant teacher positions for the most recent three-year period.

(A) For purposes of this paragraph, "vacant teacher position" means a position to which a single designated certificated employee has not been assigned at the beginning of the year for an entire year or, if the position is for a one-semester course, a position to which a single designated certificated employee has not been assigned at the beginning of a semester for an entire semester.

(B) For purposes of this paragraph, "misassignment" means the placement of a certificated employee in a teaching or services position for which the employee does not hold a legally recognized certificate or credential or the placement of a certificated employee in a teaching or services position that the employee is not otherwise authorized by statute to hold.

(6)(A) Quality and currency of textbooks and other instructional materials, including whether textbooks and other materials meet state standards and are adopted by the State Board of Education for kindergarten and grades 1 to 8, inclusive, and adopted by the governing boards of school districts for grades 9 to 12, inclusive, and the ratio of textbooks per pupil and the year the textbooks were adopted.

(B) The availability of sufficient textbooks and other instructional materials, as defined in Section 60119, for each pupil, including English learners, in each of the following areas:

(i) The core curriculum areas of reading/language arts, mathematics, science, and history/social science.

(ii) Foreign language and health.

(iii) Science laboratory equipment for grades 9 to 12, inclusive, as appropriate.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 71 of 697

(7) The availability of qualified personnel to provide counseling and other pupil support services, including the ratio of academic counselors per pupil.

(8) Availability of qualified substitute teachers.

(9) Safety, cleanliness, and adequacy of school facilities, including any needed maintenance to ensure good repair as specified in Section 17014, Section 17032.5, subdivision (a) of Section 17070.75, and subdivision (b) of Section 17089.

(10) Adequacy of teacher evaluations and opportunities for professional improvement, including the annual number of schooldays dedicated to staff development for the most recent three-year period.

(11) Classroom discipline and climate for learning, including suspension and expulsion rates for the most recent three-year period.

(12) Teacher and staff training, and curriculum improvement programs.

(13) Quality of school instruction and leadership.

(14) The degree to which pupils are prepared to enter the workforce.

(15) The total number of instructional minutes offered in the school year, separately stated for each grade level, as compared to the total number of the instructional minutes per school year required by state law, separately stated for each grade level.

(16) The total number of minimum days, as specified in Sections 46112, 46113, 46117, and 46141, in the school year.

(17) The number of advanced placement courses offered, by subject.

(18) The Academic Performance Index, including the disaggregation of subgroups as set forth in Section 52052 and the decile rankings and a comparison of schools.

(19) Whether a school qualified for the Immediate Intervention Underperforming Schools Program pursuant to Section 52053 and whether the school applied for, and received, a grant pursuant to * * * that program.

(20) Whether the school qualifies for the Governor's Performance Award Program.

(21) When available, the percentage of pupils, including the disaggregation of subgroups as set forth in Section 52052, completing grade 12 who successfully complete the high school exit examination, as set forth in Sections 60850 and 60851, as compared to the percentage of pupils in the district and statewide completing grade 12 who successfully complete the examination.

(22) Contact information pertaining to any organized opportunities for parental involvement.

(23) For secondary schools, the percentage of graduates who have passed course requirements for entrance to the University of California and the California State University pursuant to Section 51225.3 and the percentage of pupils enrolled in those courses, as reported by the California Basic Education Data System or any successor data system.

(24) Whether the school has a college admissions test preparation course program.

* * *

(c) If the Commission on State Mandates finds that a school district is eligible for a reimbursement of costs incurred in complying with this section, the school district shall be reimbursed only if the information provided in the school accountability report card is accurate, as determined by the annual audit performed pursuant to Section 41020. If the information is determined to be inaccurate, the school district is not ineligible for reimbursement if the information is corrected by May 15.

(d) It is the intent of the Legislature that schools make a concerted effort to notify parents of the purpose of the school accountability report cards, as described in this section, and ensure that all parents receive a copy of the report card; to ensure that the report cards are easy to read and understandable by parents; to ensure that local educational agencies with access to the Internet make available current copies of the report cards through the Internet; and to ensure that administrators and teachers are available to answer any questions regarding the report cards.

SEC. 35. Section 41020.5 of the Education Code is amended to read:

<< CA EDUC § 41020.5 >>

41020.5. (a) If the Controller determines by two consecutive quality control reviews pursuant to Section 14504.2, or if a county superintendent of schools determines, that audits performed by a certified public accountant or public accountant under Section 41020 were not performed in substantial conformity with provisions of the audit guide, or that the audit reports, including amended reports, submitted by February 15 following the close of the fiscal year audited, for two consecutive years do not conform to provisions of the audit guide as required by Section 14504, the Controller or the county superintendent of schools, as appropriate, shall notify in writing the certified public accountant or public accountant and the California Board of Accountancy.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 72 of 697

If the certified public accountant or public accountant does not file an appeal in writing with the California Board of Accountancy within 30 calendar days after receipt of the notification from the Controller or county superintendent of schools, the determination of the Controller or county superintendent of schools *** pursuant to this section shall be final.

(b) If an appeal is filed with the California Board of Accountancy, the board shall complete an investigation of the appeal within 90 days of the filing date. On the basis of the investigation, the board may do either of the following:

(1) Find that the determination of the Controller or county superintendent of schools should not be upheld and has no effect.

(2) Schedule the appeal for a hearing, in which case, the final action on the appeal shall be completed by the board within one year from the date of filing the appeal.

(c) If the determination of the Controller or county superintendent of schools under subdivision (a) becomes final, the certified public accountant or public accountant shall be ineligible to conduct audits under Section 41020 for a period of three years, or, in the event of an appeal, for any period, and subject to the conditions, that may be ordered by the California Board of Accountancy. Not later than the first day of March of each year, the Controller shall notify each school district and county office of education of those certified public accountants or public accountants determined to be ineligible under this section. School districts and county offices of education shall not use the audit services of a certified public accountant or public accountant ineligible under this section.

(d) For the purposes of this section, *** "certified public accountant or public accountant" *** includes any person or firm entering into a contract to conduct an audit under Section 41020.

(e) This section shall not preclude the California Board of Accountancy from taking any disciplinary action it deems appropriate under other provisions of law.

SEC. 36. Section 41326.1 of the Education Code is amended to read:

<< CA EDUC § 41326.1 >>

41326.1. Within 30 days of assuming authority, an administrator who has control over a school district pursuant to Section 41326 shall discuss options for resolving the fiscal problems of the district with all of the following groups and shall consider, on a monthly basis, or more frequently if so desired by the administrator, information from one or more of the following groups:

(a) The governing board of the school district.

(b) Any advisory council of the school district.

(c) Any parent-teacher organization of the school district.

(d) Representatives from the community in which the school district is located.

(e) The district administrative team.

(f) The County Office Fiscal Crisis and Management Assistance Team.

(g) Representatives of employee bargaining units.

(h) The county superintendent of schools.

SEC. 37. Section 41328 of the Education Code is amended to read:

<< CA EDUC § 41328 >>

41328. The qualifying district shall bear 100 percent of all costs associated with implementing this article, including the activities of the County Office Fiscal Crisis and Management Assistance Team or the regional team. The Superintendent of Public Instruction shall withhold from the apportionments to be made from the State School Fund to the district the amounts due pursuant to this section.

SEC. 38. Section 41530 of the Education Code is amended to read:

<< CA EDUC § 41530 >>

41530. (a) There is hereby established the professional development block grant. Commencing with the 2005–06 fiscal year, the Superintendent of Public Instruction shall apportion block grant funds to a school district based on the number of certificated teachers employed by the school district in the immediately prior fiscal year.

(b) A school district may expend funds received pursuant to this article for any purpose authorized by the programs listed in Section 41531, as the statutes governing those programs read on January 1, 2004, if the school district provides each teacher

Case 3:17-cv-07357-RS    Document 163-3    Filed 01/21/21    Page 73 of 697

MAINTENANCE OF CODES, 2006 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

of kindergarten or * * * grades 1 to 6, inclusive, with opportunities to participate in professional development activities in reading, language arts * * * , or English language development. In providing teachers of kindergarten * * * and grades 1 to 6, inclusive, with opportunities to participate in professional development activities in reading, language arts * * * , or English language development, a school district shall expend at least an amount that is equal to the proportion that funding calculated pursuant to Article 3 (commencing with Section 99230) of Chapter 5 of Part 65 bears to the statewide total amount of block grant funds appropriated for purposes of this article. For purposes of this article, professional development in reading, language arts * * * , or English language development shall be equivalent in rigor to the professional development provided pursuant to Article 3 (commencing with Section 99230) of Chapter 5 of Part 65, as that article read on January 1, 2004.

 (c) For purposes of this article, "school district" includes a county office of education if county offices of education are eligible to receive funds for the programs that are listed in Section 41531. The block grant of a county office of education shall be based only on those programs for which it was eligible to receive funds in the 2003–04 fiscal year.

 SEC. 39. Section 44830.3 of the Education Code is amended to read:

<< CA EDUC § 44830.3 >>

 44830.3. (a) The governing board of any school district that maintains kindergarten or grades 1 to 12, inclusive, classes in bilingual education, or special education programs for pupils with mild and moderate disabilities, may, in consultation with an accredited institution of higher education offering an approved program of pedagogical teacher preparation, employ persons authorized by the Commission on Teacher Credentialing to provide service as district interns to provide instruction to pupils in those grades or classes as a classroom teacher. The governing board shall require that each district intern be assisted and guided by a certificated employee selected through a competitive process adopted by the governing board after consultation with the exclusive teacher representative unit or by personnel employed by institutions of higher education to supervise student teachers. These certificated employees shall possess valid certification at the same level, or of the same type * * * of credential, as the district interns they serve.

 (b) The governing board of each school district employing district interns shall develop and implement a professional development plan for district interns in consultation with an accredited institution of higher education offering an approved program of pedagogical preparation. The professional development plan shall include all of the following:

 (1) Provisions for an annual evaluation of the district intern.

 (2) As the governing board determines necessary, a description of courses to be completed by the district intern, if any, and a plan for the completion of preservice or other clinical training, if any, including student teaching.

 (3) Mandatory preservice training for district interns tailored to the grade level or class to be taught, through either of the following options:

 (A) One hundred twenty clock hours of preservice training and orientation in the aspects of child development, classroom organization and management, pedagogy, and methods of teaching the subject field or fields in which the district intern will be assigned, which training and orientation period shall be under the direct supervision of an experienced permanent teacher. In addition, persons holding district intern certificates issued by the commission pursuant to Section 44325 shall receive orientation in methods of teaching pupils with mild and moderate disabilities. At the conclusion of the preservice training period, the permanent teacher shall provide the district with information regarding the area that should be emphasized in the future training of the district intern.

 (B) The successful completion, prior to service by the intern in any classroom, of six semester units of coursework from a regionally accredited college or university, designed in cooperation with the school district to provide instruction and orientation in the aspects of child development and the methods of teaching the subject matter or matters in which the district intern will be assigned.

 (4) Instruction in child development and the methods of teaching during the first semester of service for district interns teaching in kindergarten or grades 1 to 6, inclusive, including bilingual education classes and, for persons holding district intern certificates issued by the commission pursuant to Section 44325, special education programs for pupils with mild and moderate disabilities at those levels.

 (5) Instruction in the culture of and methods of teaching bilingual pupils during the first year of service for district interns teaching pupils in bilingual classes and, for persons holding district intern certificates issued by the commission pursuant to Section 44325, instruction in the etiology of and methods of teaching pupils with mild and moderate disabilities.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 74 of 697

(6) Any other criteria that may be required by the governing board.

(7) In addition to the requirements set forth in paragraphs (1) to (6), inclusive, the professional development plan for district interns teaching in special education programs for pupils with mild and moderate disabilities also shall include 120 clock hours of mandatory training and supervised fieldwork that shall include, but not be limited to, instructional practices, and the procedures and pedagogy of both general education programs and special education programs that teach pupils with disabilities.

(8) In addition to the requirements set forth in paragraphs (1) to (6), inclusive, the professional development plan for district interns teaching bilingual classes shall also include 120 clock hours of mandatory training and orientation, which shall include, but not be limited to, instruction in subject matter relating to bilingual-crosscultural language and academic development.

(9) The professional development plan for district interns teaching in special education programs for pupils with mild and moderate disabilities shall be based on the standards adopted by the commission as provided in subdivision (a) of Section 44327.

(c) Each district intern and each district teacher assigned to supervise the district intern during the preservice period shall be compensated for the preservice period required pursuant to subparagraph (A) or (B) of paragraph (3) of subdivision (b). The compensation shall be that which is normally provided by each district for staff development or in-service activity.

(d) Upon completion of service sufficient to meet program standards and performance assessments, the governing board may recommend to the Commission on Teacher Credentialing that the district intern be credentialed in the manner prescribed by Section 44328.

SEC. 40. Section 48853 of the Education Code is amended to read:

<< CA EDUC § 48853 >>

48853. (a) A pupil placed in a licensed children's institution or foster family home shall attend programs operated by the local educational agency, unless one of the following applies:

(1) The pupil has an individualized education program requiring placement in a nonpublic, nonsectarian school or agency, or in another local educational agency.

(2) The parent or guardian, or other person holding the right to make educational decisions for the pupil pursuant to Section 361 or 727 of the Welfare and Institutions Code or Section 56055, determines that it is in the best interest of the pupil to be placed in another educational program, or that the pupil continue in his or her school of origin pursuant to paragraph (1) of subdivision (d) of Section 48853.5.

(b) Before any decision is made to place a pupil in a juvenile court school as defined by Section 48645.1, the parent or guardian, or person holding the right to make educational decisions for the pupil pursuant to Section 361 or 726 of the Welfare and Institutions Code or Section 56055, shall first consider placement in the regular public school.

(c) If any dispute arises as to the school placement of a pupil subject to this section, the pupil has the right to remain in his or her school of origin, as defined in subdivision (e) of Section 48853.5, pending resolution of the dispute.

(d) This section does not supersede other laws that govern pupil expulsion.

(e) This section does not supersede any other law governing the educational placement in a juvenile court school, as defined by Section 48645.1, of a pupil detained in a county juvenile hall, or committed to a county juvenile ranch, camp, forestry camp, or regional facility.

(f) Foster children living in emergency shelters, as referenced in the McKinney–Vento Homeless Assistance Act (42 U.S.C. Sec. 11301 et seq.), may receive educational services at the emergency shelter as necessary for short periods of time for either of the following reasons:

(1) For health and safety emergencies.

(2) To provide temporary, special, and supplementary services to meet the child's unique needs if a decision regarding whether it is in the child's best interest to attend the school of origin cannot be made promptly, it is not practical to transport the child to the school of origin, and the child would otherwise not receive educational services.

The educational services may be provided at the shelter pending a determination by the person holding the right regarding the educational placement of the child.

(g) All educational and school placement decisions shall be made to ensure that the child is placed in the least restrictive educational programs and has access to academic resources, services, and extracurricular and enrichment activities that are available to all pupils. In all instances, educational and school placement decisions shall be based on the best interests of the child.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS  Document 163-3  Filed 01/21/21  Page 75 of 697

SEC. 41. Section 49341 of the Education Code is amended to read:

<< CA EDUC § 49341 >>

49341. The Legislature hereby finds and declares as follows:

(a) Because school science laboratories pose a potentially serious threat to the health and safety of school pupils and school personnel due to the use and storage of hazardous materials in these laboratories, educational efforts are needed to increase the awareness of persons dealing with these materials in these settings so that possible losses of life, injuries, losses of property, and social disruption, which could result from the improper and unsafe use of hazardous materials, will be minimized.

(b) Effective safety in school laboratories requires informed judgment, decisionmaking, and operating procedures by those responsible for laboratory and related instruction. It is desirable that each high school and junior high, middle, or elementary school offering laboratory work have a trained member of the professional staff who is designated as the building laboratory consultant and who is responsible for the review, updating, and carrying out of the school's adopted procedures for laboratory safety.

(c) Efforts by state and local agencies to implement training programs designed to provide qualified individuals with the necessary information, organizational skills, and materials to assist schools and teachers in the development of their laboratory safety policies and procedures are nonexistent or inadequate, and it is necessary that this situation be remedied. The state should assume leadership through the policy and guidance of the State Department of Education in the development, support, and implementation of a statewide training program.

(d) The Legislature requests that the State Department of Education consider making this program a part of the department's energy and environmental education program that is conducted pursuant to Chapter 4 (commencing with Section 8700) of Part 6.

SEC. 42. Section 49414.5 of the Education Code is amended to read:

<< CA EDUC § 49414.5 >>

49414.5. (a) In the absence of a credentialed school nurse or other licensed nurse onsite at the school, each school district may provide school personnel with voluntary emergency medical training to provide emergency medical assistance to pupils with diabetes suffering from severe hypoglycemia, and volunteer personnel shall provide this emergency care, in accordance with standards established pursuant to subdivision (b) and the performance instructions set forth by the licensed health care provider of the pupil. A school employee who does not volunteer or who has not been trained pursuant to subdivision (b) may not be required to provide emergency medical assistance pursuant to this subdivision.

(b)(1) The Legislature encourages the American Diabetes Association to develop performance standards for the training and supervision of school personnel in providing emergency medical assistance to pupils with diabetes suffering from severe hypoglycemia. The performance standards shall be developed in cooperation with the department, the California School Nurses Organization, the California Medical Association, and the American Academy of Pediatrics. Upon the development of the performance standards pursuant to this paragraph, the State Department of Health Services' Diabetes Prevention and Control Program shall approve the performance standards for distribution and make those standards available upon request.

(2) Training established pursuant to this subdivision shall include all of the following:

(A) Recognition and treatment of hypoglycemia.

(B) Administration of glucagon.

(C) Basic emergency followup procedures, including, but not limited to, calling the emergency 911 telephone number and contacting, if possible, the pupil's parent or guardian and licensed health care provider.

(3) Training by a physician, credentialed school nurse, registered nurse, or certificated public health nurse according to the standards established pursuant to this section shall be deemed adequate training for the purposes of this section.

(4)(A) A school employee shall notify the credentialed school nurse assigned to the school district if he or she administers glucagon pursuant to this section.

(B) If a credentialed school nurse is not assigned to the school district, the school employee shall notify the superintendent of the school district, or his or her designee, if he or she administers glucagon pursuant to this section.

(5) All materials necessary to administer the glucagon shall be provided by the parent or guardian of the pupil.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 76 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(c) In the case of a pupil who is able to self-test and monitor his or her blood glucose level, upon written request of the parent or guardian, and with authorization of the licensed health care provider of the pupil, a pupil with diabetes shall be permitted to test his or her blood glucose level and to otherwise provide diabetes self-care in the classroom, in any area of the school or school grounds, during any school-related activity, and, upon specific request by a parent or guardian, in a private location.

(d) For the purposes of this section, the following terms have the following meanings:

(1) "School personnel" means any one or more employees of a school district who volunteers to be trained to administer emergency medical assistance to a pupil with diabetes.

(2) "Emergency medical assistance" means the administration of glucagon to a pupil who is suffering from severe hypoglycemia.

SEC. 43. Section 51226.1 of the Education Code is amended to read:

<< CA EDUC § 51226.1 >>

51226.1. (a) Upon adoption of the model curriculum standards developed pursuant to Section 51226, the Superintendent of Public Instruction shall develop a curriculum framework consistent with criteria set forth in subdivision (a) of Section 60005 that offers a blueprint for implementation of career and technical education. The framework shall be adopted no later than June 1, 2006.

(b) In developing the framework, the superintendent shall work in consultation and coordination with an advisory group, including, but not limited to, representatives from all of the following:

(1) Business and industry.

(2) Labor.

(3) The California Community Colleges.

(4) The University of California.

(5) The California State University.

(6) Classroom teachers.

(7) School administrators.

(8) Pupils.

(9) Parents and guardians.

(10) Representatives of the Legislature.

(11) The State Department of Education.

(12) The Labor and Workforce Development Agency.

(c) In convening the membership of the advisory group set forth in subdivision (b), the superintendent is encouraged to seek representation broadly reflective of the state population.

(d) Costs incurred by the superintendent in complying with this section shall be covered, to the extent permitted by federal law, by the state administrative and leadership funds available pursuant to the Carl D. Perkins Vocational and Technical Education Act of 1998 (20 U.S.C. Sec. 2301 et seq.).

(e) In developing the framework, the superintendent shall consider developing frameworks for various career pathways that will prepare pupils for both career entry and matriculation into postsecondary education.

(f) Upon completion of the framework, the advisory group is encouraged to identify career technical education courses that meet state-adopted academic content standards and that satisfy high school graduation requirements and admissions requirements of the University of California and the California State University, and to determine the extent to which local educational agencies accept credit earned for the completion of those courses, in lieu of other courses of study.

(g) The adoption of the framework developed and adopted pursuant to this section by a local educational agency shall be voluntary.

SEC. 44. Section 51430 of the Education Code is amended to read:

<< CA EDUC § 51430 >>

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 77 of 697

51430. (a) Notwithstanding any other provision of law, a high school district, unified school district, or county office of education, may retroactively grant a high school diploma to a person who has not received a high school diploma if he or she meets either of the following conditions:

(1) The person was interned by order of the federal government during World War II and was enrolled in a high school operated by the school district or under the jurisdiction of the county office of education immediately preceding his or her internment and did not receive a high school diploma because his or her education was interrupted due to his or her internment during World War II.

(2) The person is a veteran of World War II, the Korean War, or the Vietnam War, was honorably discharged from his or her military service, was enrolled in a high school operated by the school district or under the jurisdiction of the county office of education immediately preceding his or her military service in those wars, and did not receive a high school diploma because his or her education was interrupted due to his or her military service in those wars.

(b) A high school district, unified school district, or county office of education may retroactively grant a high school diploma to a deceased person who meets the conditions of paragraph (1) or (2) of subdivision (a), to be received by the next of kin of the deceased person.

SEC. 45. Section 52059 of the Education Code is amended to read:

<< CA EDUC § 52059 >>

52059. (a) For purposes of complying with the federal No Child Left Behind Act of 2001 (20 U.S.C. Sec. 6301 et seq.), a Statewide System of School Support shall be established by the department to provide a statewide system of intensive and sustained support and technical assistance for school districts, county offices of education, and schools in need of improvement. The system shall consist of regional consortia, which may include counties offices of education and school districts, that work collaboratively with school districts and county offices of education to meet the needs of school districts and schools in need of improvement.

(b) The system shall provide assistance to school districts and schools in need of improvement by:

(1) Reviewing and analyzing all facets of a school's operation, including the * * * following:

(A) The design and operation of the instructional program offered by the school.

(B) The recruitment, hiring, and retention of principals, teachers, and other staff, including vacancy issues. The system may request the assistance of the Fiscal Crisis and Management Assistance Team to review school district or school recruitment, hiring, and retention practices.

(C) The roles and responsibilities of district and school management personnel.

(2) Assisting the school in developing recommendations for improving pupil performance and school operations.

(3) Assisting schools and school districts in efforts to eliminate misassignments of certificated personnel.

(c) In carrying out this article, the department shall ensure that support is provided in the following order of priority:

(1) To school districts or county offices of education with schools that are subject to corrective action under paragraph (7) of subsection (b) of Section 6316 of Title 20 of the United States Code.

(2) To school districts or county offices of education with schools that are identified as being in need of improvement pursuant to subsection (b) of Section 6316 of Title 20 of the United States Code.

(3) To provide support and assistance to school districts and county offices of education with schools participating under the No Child Left Behind Act of 2001 (20 U.S.C. Sec. 6301 et seq.) that need support and assistance to achieve the purposes of that act.

(4) To provide support and assistance to other school districts and county offices of education with schools participating in a program carried out under this chapter.

(d) For purposes of this article, all references to schools shall include charter schools.

(e) Funds shall be distributed under this article based on the number of schools and enrollment of those schools in each region that have been identified as being in need of improvement pursuant to Section 6316 of Title 20 of the United States Code, or are participating in the programs conducted under this chapter.

SEC. 46. Section 52124 of the Education Code, as amended by Section 1 of Chapter 910 of the Statutes of 2004, is amended to read:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 78 of 697

<< CA EDUC § 52124 >>

52124. (a) A school district that implements a class size reduction program pursuant to this chapter is subject to this section.

(b) A school district may establish a program to reduce class size in kindergarten and grades 1 to 3, inclusive, and that program shall be implemented at each schoolsite according to the following priorities:

(1) If only one grade level is reduced at a schoolsite, the grade level shall be grade 1.

(2) If only two grade levels are reduced at a schoolsite, the grade levels shall be grades 1 and 2.

(3) If three grade levels are reduced at a schoolsite, then those grade levels shall be kindergarten and grades 1 and 2 or grades 1 to 3, inclusive. Priority shall be given to the reduction of class sizes in grades 1 and 2 before the class sizes of kindergarten or grade 3 are reduced.

(4) If four grade levels are reduced at a schoolsite, then those grade levels shall be kindergarten and grades 1 to 3, inclusive. First priority shall be given to the reduction of class sizes in grades 1 and 2, and second priority shall be given to the reduction of class size in kindergarten and grade 3. This paragraph shall be operative only in those fiscal years for which funds are appropriated expressly for the purposes of this paragraph.

(c) It is the intent of the Legislature to continue to permit the use of combination classes of more than one grade level to the extent that school districts are otherwise permitted to use that instructional strategy. However, any school district that uses a combination class in any class for which funding is received pursuant to this chapter may not claim funding pursuant to this chapter if the total number of pupils in the combination class, regardless of grade level, exceeds 20 pupils per certificated teacher assigned to provide direct instructional services.

(d) The governing board of a school district shall certify to the Superintendent of Public Instruction that it has met the requirements of this section in implementing its class size reduction program. If a school district receives funding pursuant to this chapter but has not implemented its class size reduction program for all grades and classes for which it received funding pursuant to this chapter, the Superintendent of Public Instruction shall notify the Controller and the school district in writing and the Controller shall deduct an amount equal to the amount received by the school district under this chapter for each class that the school district failed to reduce to a class size of 20 or fewer pupils from the next principal apportionment or apportionments of state funds to the district, other than basic aid apportionments required by Section 6 of Article IX of the California Constitution.

(e) Except for a school district participating pursuant to subdivision (h) of Section 52122, the amount deducted pursuant to subdivision (d) shall be adjusted as follows:

(1) Twenty percent of the amount to which the district would otherwise be eligible for each class for which the annual enrollment determined pursuant to Section 52124.5 is greater than or equal to 20.5 but less than 21.0.

(2) Forty percent of the amount to which the district would otherwise be eligible for each class for which the annual average enrollment determined pursuant to Section 52124.5 is greater than or equal to 21.0 but less than 21.5.

(3) Eighty percent of the amount to which the district would otherwise be eligible for each class for which the annual average enrollment determined pursuant to Section 52124.5 is greater than or equal to 21.5 but less than 21.9.

(4) The amount deducted pursuant to subdivision (d) for each class for which the annual average enrollment determined pursuant to Section 52141.5 is greater than or equal to 21.9 shall be the amount of funding the district received for the class pursuant to this chapter.

(f) Notwithstanding any other provision of this chapter, a school district located in the County of Los Angeles, Riverside, San Bernardino, San Diego, or Ventura may claim funding pursuant to this chapter for the 2003–04 school year based on enrollment counts before the October 2003 fires, in classes for which the class size reduction program is implemented, if the following criteria are met:

(1) The school district submits to the Superintendent of Public Instruction a "Request for Allowance of Attendance because of Emergency Conditions" pursuant to Section 46392 and the emergency conditions were caused by the October 2003 fires.

(2) The school district certifies that it suffered a loss of enrollment in classes in which the class size reduction program is implemented and this loss of enrollment is due to the October 2003 fires and would result in a decrease in funding that the district receives pursuant to this chapter.

(g) This section shall be operative until July 1, 2009, and as of January 1, 2010, is repealed, unless a later enacted statute deletes or extend that date.

SEC. 47. Section 56366 of the Education Code is amended to read:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 79 of 697

<< CA EDUC § 56366 >>

56366. It is the intent of the Legislature that the role of a nonpublic, nonsectarian school or agency shall be maintained and continued as an alternative special education service available to a local educational agency and parents.

(a) The master contract for nonpublic, nonsectarian school or agency services shall be developed in accordance with the following provisions:

(1) The master contract shall specify the general administrative and financial agreements, including teacher-to-pupil ratios, between the nonpublic, nonsectarian school or agency and the local educational agency to provide the special education and designated instruction and services, as well as transportation specified in each pupil's individualized education program. The administrative provisions of the contract also shall include procedures for recordkeeping and documentation, and the maintenance of school records by the contracting local educational agency to ensure that appropriate high school graduation credit is received by each pupil. The contract may allow for partial or full-time attendance at the nonpublic, nonsectarian school.

(2)(A) The master contract shall include an individual services agreement for each pupil placed by a local educational agency that will be negotiated for the length of time for which nonpublic, nonsectarian school or agency special education and designated instruction and services are specified in the pupil's individualized education program.

(B) The master contract shall include a description of the process being utilized by the local educational agency to oversee and evaluate placements in nonpublic, nonsectarian schools, as required by federal law. This description shall include a method for evaluating whether each pupil is making appropriate educational progress. At least once every year, the local educational agency shall do all of the following and, to the extent possible, the following shall be conducted as part of the development and provision of an individualized education program:

(i) Evaluate the educational progress of each pupil placed in a nonpublic, nonsectarian school, including all state assessment results pursuant to the requirements of Section 52052.

(ii) Consider whether or not the needs of the pupil continue to be best met at the nonpublic, nonsectarian school and whether changes to the individualized education program of the pupil are necessary, including whether the pupil may be transitioned to a public school setting. This consideration shall be made at the meeting required by subdivision (d) of Section 56343.

(C) In the case of a nonpublic, nonsectarian school that is owned, operated by, or associated with a licensed children's institution, the master contract shall include a method for evaluating whether the nonpublic, nonsectarian school is in compliance with the mandate set forth in Section 56366.9 of * * * this code and subdivision (b) of Section 1501.1 of the Health and Safety Code.

(3) Changes in educational instruction, services, or placement provided under contract may only be made on the basis of revisions to a pupil's individualized education program.

At any time during the term of the contract or individual services agreement, the parent, the nonpublic, nonsectarian school or agency, or the local educational agency may request a review of a pupil's individualized education program by the individualized education program team. Changes in the administrative or financial agreements of the master contract that do not alter the individual services agreement that outlines each pupil's educational instruction, services, or placement may be made at any time during the term of the contract as mutually agreed by the nonpublic, nonsectarian school or agency and the local educational agency.

(4) The master contract or individual services agreement may be terminated for cause. The cause shall not be the availability of a public class initiated during the period of the contract unless the parent agrees to the transfer of the pupil to a public school program. To terminate the contract either party shall give 20 days' notice.

(5) The nonpublic, nonsectarian school or agency shall provide all services specified in an individualized education program, unless the nonpublic, nonsectarian school or agency and the local educational agency agree otherwise in the contract or individual services agreement.

(6) Related services provided pursuant to a nonpublic, nonsectarian agency master contract shall only be provided during the period of * * * a pupil's regular or extended school year program, or both, unless otherwise specified by the pupil's individualized education program.

(7) The nonpublic, nonsectarian school or agency shall report attendance of pupils receiving special education and designated instruction and services, as defined by Section 46307, for purposes of submitting a warrant for tuition to each contracting local educational agency.

MAINTENANCE OF CODES, 2006 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 80 of 697

(8)(A) A nonpublic, nonsectarian school * * * is subject to the alternative accountability system developed pursuant to Section 52052 * * * in the same manner as public schools and each pupil placed in the nonpublic, nonsectarian school by a local educational agency shall be tested by qualified staff of the nonpublic, nonsectarian school in accordance with that accountability program. The test results shall be reported by the nonpublic, nonsectarian school to the department.

(B) Beginning with the 2006–07 school year testing cycle, each nonpublic, nonsectarian school shall determine its STAR testing period subject to subdivisions (b) and (c) of Section 60640. The nonpublic, nonsectarian school shall determine this period based on completion of 85 percent of the instructional year at that nonpublic, nonsectarian school, plus and minus 10 days, resulting in a 21–day period. Each nonpublic, nonsectarian school shall notify the district of residence of a pupil enrolled in the school of its testing period. Staff at the nonpublic, nonsectarian school who * * * administer the assessments shall attend the regular testing training sessions provided by the district of residence. If staff from a nonpublic, nonsectarian school have received training from one local educational agency, that training will be sufficient for all local educational agencies that send pupils to the nonpublic, nonsectarian school. The district of residence shall order testing materials for its pupils that have been placed in the nonpublic, nonsectarian school. The * * * board shall adopt regulations to facilitate the distribution of and collection of testing materials.

(9) With respect to a nonpublic, nonsectarian school, the school shall prepare a school accountability report card in accordance with Section 33126.

(b) The master contract or individual services agreement shall not include special education transportation provided through the use of services or equipment owned, leased, or contracted by a local educational agency for pupils enrolled in the nonpublic, nonsectarian school or agency unless provided directly or subcontracted by that nonpublic, nonsectarian school or agency.

The superintendent shall withhold 20 percent of the amount apportioned to a local educational agency for costs related to the provision of nonpublic, nonsectarian school or agency placements if the superintendent finds that the local educational agency is in noncompliance with this subdivision. This amount shall be withheld from the apportionments in the fiscal year following the superintendent's finding of noncompliance. The superintendent shall take other appropriate actions to prevent noncompliant practices from occurring and report to the Legislature on those actions.

(c)(1) If a pupil is enrolled in a nonpublic, nonsectarian school or agency with the approval of the local educational agency prior to agreement to a contract or individual services agreement, the local educational agency shall issue a warrant, upon submission of an attendance report and claim, for an amount equal to the number of creditable days of attendance at the per diem tuition rate agreed upon prior to the enrollment of the pupil. This provision shall be allowed for 90 days during which time the contract shall be consummated.

(2) If after 60 days the master contract or individual services agreement has not been finalized as prescribed in paragraph (1) of subdivision (a), either party may appeal to the county superintendent of schools, if the county superintendent is not participating in the local plan involved in the nonpublic, nonsectarian school or agency contract, or the superintendent, if the county superintendent is participating in the local plan involved in the contract, to negotiate the contract. Within 30 days of receipt of this appeal, the county superintendent or the superintendent, or his or her designee, shall mediate the formulation of a contract, which shall be binding upon both parties.

(d) A master contract for special education and related services provided by a nonpublic, nonsectarian school or agency may not be authorized under this part, unless the school or agency has been certified as meeting those standards relating to the required special education and specified related services and facilities for individuals with exceptional needs. The certification shall result in the school or agency receiving approval to educate pupils under this part for a period no longer than 18 months from the date of the initial approval.

(e) By September 30, 1998, the procedures, methods, and regulations for the purposes of contracting for nonpublic, nonsectarian school and agency services pursuant to this section and for reimbursement pursuant to Sections 56836.16 and 56836.20 shall be developed by the superintendent in consultation with statewide organizations representing providers of special education and designated instruction and services. The regulations shall be established by rules and regulations issued by the board.

SEC. 48. Section 56366.1 of the Education Code is amended to read:

<< CA EDUC § 56366.1 >>

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 81 of 697

56366.1. (a) A nonpublic, nonsectarian school or agency that seeks certification shall file an application with the superintendent on forms provided by the department, and include the following information on the application:

(1) A description of the special education and designated instruction and services provided to individuals with exceptional needs if the application is for nonpublic, nonsectarian school certification.

(2) A description of the designated instruction and services provided to individuals with exceptional needs if the application is for nonpublic, nonsectarian agency certification.

(3) A list of appropriately qualified staff, a description of the credential, license, or registration that qualifies each staff member rendering special education or designated instruction and services to do so, and copies of their credentials, licenses, or certificates of registration with the appropriate state or national organization that has established standards for the service rendered.

(4) An annual operating budget.

(5) Affidavits and assurances necessary to comply with all applicable federal, state, and local laws and regulations which include criminal record summaries required of all nonpublic school or agency personnel having contact with minor children under Section 44237.

(b)(1) The applicant shall provide the special education local plan area in which the applicant is located with the written notification of its intent to seek certification or renewal of its certification. The applicant shall submit on a form, developed by the department, a signed verification by local educational agency representatives that they have been notified of the intent to certify or renew certification. The verification shall include a statement that representatives of the local educational agency * * * for the area in which the applicant is located have had the opportunity to review the application at least 60 calendar days prior to submission of an initial application to the superintendent, or at least 30 calendar days prior to submission of a renewal application to the superintendent. The signed verification shall provide assurances that local educational agency representatives have had the opportunity to provide input on all required components of the application.

(2) If the applicant has not received a response from the local educational agency 30 days from the date of the return receipt, the applicant may file the application with the superintendent. A copy of the return receipt shall be included with the application as verification of notification efforts to the local educational agency.

(3) The department shall mail renewal application materials to certified nonpublic, nonsectarian schools and agencies at least 120 days prior to the date their current certification expires.

(c) If the applicant operates a facility or program on more than one site, each site shall be certified.

(d) If the applicant is part of a larger program or facility on the same site, the superintendent shall consider the effect of the total program on the applicant. A copy of the policies and standards for the nonpublic, nonsectarian school or agency and the larger program shall be available to the superintendent.

(e) Prior to certification, the superintendent shall conduct an onsite review of the facility and program for which the applicant seeks certification. The superintendent may be assisted by representatives of the special education local plan area in which the applicant is located and a nonpublic, nonsectarian school or agency representative who does not have a conflict of interest with the applicant. The superintendent shall conduct an additional onsite review of the facility and program within four years of the * * * effective date of the certification, unless the superintendent conditionally certifies the school or agency or unless the superintendent receives a formal complaint against the school or agency. In the latter two cases, the superintendent shall conduct an onsite review at least annually.

(f) The superintendent shall make a determination on an application within 120 days of receipt of the application and shall certify, conditionally certify, or deny certification to the applicant. If the superintendent fails to take one of these actions within 120 days, the applicant is automatically granted conditional certification for a period terminating on August 31 * * * of the current school year. If certification is denied, the superintendent shall provide reasons for the denial. The superintendent may certify the school or agency for a period of not longer than one year.

(g) Certification becomes effective on the date the nonpublic, nonsectarian school or agency meets all the application requirements and is approved by the superintendent. Certification may be retroactive if the school or agency met all the requirements of this section on the date the retroactive certification is effective. Certification expires on December 31 of the terminating year.

(h) The superintendent shall annually review the certification of each nonpublic, nonsectarian school and agency. For this purpose, a certified school or agency shall annually update its application between August 1 and October 31, unless the board grants a waiver pursuant to Section 56101. The superintendent may conduct an onsite review as part of the annual review.

(i)(1) The superintendent shall conduct an investigation of a nonpublic, nonsectarian school or agency onsite at any time without prior notice if there is substantial reason to believe that there is an immediate danger to the health, safety, or welfare of a child. The superintendent shall document the concern and submit it to the nonpublic, nonsectarian school or agency at the time of the onsite investigation. The superintendent shall require a written response to any noncompliance or deficiency found.

(2) With respect to a nonpublic, nonsectarian school, the superintendent shall conduct an investigation, which may include an unannounced onsite visit, if the superintendent receives evidence of a significant deficiency in the quality of educational services provided, a violation of Section 56366.9, or noncompliance with the policies expressed by subdivision (b) of Section 1501 of the Health and Safety Code by the nonpublic, nonsectarian school. The superintendent shall document the complaint and the results of the investigation and shall provide copies of the documentation to the complainant, the nonpublic, nonsectarian school, and the contracting local educational agency.

(3) Violations or noncompliance documented pursuant to paragraph (1) or (2) shall be reflected in the status of the certification of the school, at the discretion of the superintendent, pending an approved plan of correction by the nonpublic, nonsectarian school. The department shall retain, for a period of 10 years, all violations pertaining to certification of the nonpublic, nonsectarian school or agency.

(j) The superintendent shall monitor the facilities, the educational environment, and the quality of the educational program, including the teaching staff, the credentials authorizing service, the standards-based core curriculum being employed, and the standard focused instructional materials used, of an existing certified nonpublic, nonsectarian school or agency on a three-year cycle, as follows:

(1) The nonpublic, nonsectarian school or agency shall complete a self-review in year one.

(2) The superintendent shall conduct an onsite review of the nonpublic, nonsectarian school or agency in year two.

(3) The superintendent shall conduct a followup visit to the nonpublic, nonsectarian school or agency in year three.

(k)(1) Notwithstanding any other provision of law, the superintendent may not certify a nonpublic, nonsectarian school or agency that proposes to initiate or expand services to pupils currently educated in the immediate prior fiscal year in a juvenile court program, community school pursuant to Section 56150, or other nonspecial education program, including independent study or adult school, or both, unless the nonpublic, nonsectarian school or agency notifies the county superintendent of schools and the special education local plan area in which the proposed new or expanded nonpublic, nonsectarian school or agency is located of its intent to seek certification.

(2) The notification shall occur no later than the December 1 prior to the new fiscal year in which the proposed or expanding school or agency intends to initiate services. The notice shall include the following:

(A) The specific date upon which the proposed nonpublic, nonsectarian school or agency is to be established.

(B) The location of the proposed program or facility.

(C) The number of pupils proposed for services, the number of pupils currently served in the juvenile court, community school, or other nonspecial education program, the current school services including special education and related services provided for these pupils, and the specific program of special education and related services to be provided under the proposed program.

(D) The reason for the proposed change in services.

(E) The number of staff that will provide special education and designated instruction and services and hold a current valid California credential or license in the service rendered or certificate of registration to provide occupational therapy.

(3) In addition to the requirements in subdivisions (a) to (f), inclusive, the superintendent shall require and consider the following in determining whether to certify a nonpublic, nonsectarian school or agency as described in this subdivision:

(A) A complete statement of the information required as part of the notice under paragraph (1).

(B) Documentation of the steps taken in preparation for the conversion to a nonpublic, nonsectarian school or agency, including information related to changes in the population to be served and the services to be provided pursuant to each pupil's individualized education program.

(4) Notwithstanding any other provision of law, the certification becomes effective no earlier than July 1 * * * if the school or agency provided the notification required pursuant to paragraph (1).

(l)(1) Commencing July 1, 2006, notwithstanding any other provision of law, the superintendent may not certify or renew the certification of a nonpublic, nonsectarian school or agency, unless all of the following conditions are met:

Case 3:17-cv-07357-RS  Document 163-3  Filed 01/21/21  Page 83 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(A) The entity operating the nonpublic, nonsectarian school or agency maintains separate financial records for each entity that it operates, with each nonpublic, nonsectarian school or agency identified separately from any licensed children's institution that it operates.

(B) The entity submits an annual budget that identifies the projected costs and revenues for each entity and demonstrates that the rates to be charged are reasonable to support the operation of the entity.

(C) The entity submits an entity-wide annual audit that identifies its costs and revenues, by entity, in accordance with generally accepted accounting and auditing principles. The audit shall clearly document the amount of moneys received and expended on the education program provided by the nonpublic, nonsectarian school.

(D) The relationship between various entities operated by the same entity are documented, defining the responsibilities of the entities. The documentation shall clearly identify the services to be provided as part of each program, for example, the residential or medical program, the mental health program, or the educational program. The entity shall not seek funding from a public agency for a service, either separately or as part of a package of services, if the service is funded by another public agency, either separately or as part of a package of services.

(2) For purposes of this section, the term "licensed children's institution" has the same meaning as it is defined by Section 56155.5.

(m) The school or agency shall be charged a reasonable fee for certification. The superintendent may adjust the fee annually commensurate with the statewide average percentage inflation adjustment computed for revenue limits of unified school districts with greater than 1,500 units of average daily attendance if the percentage increase is reflected in the district revenue limit for inflation purposes. For purposes of this section, the base fee shall be the following:

| | |
|---|---:|
| (1) 1–5 pupils | $ 300 |
| (2) 6–10 pupils | 500 |
| (3) 11–24 pupils | 1,000 |
| (4) 25–75 pupils | 1,500 |
| (5) 76 pupils and over | 2,000 |

The school or agency shall pay this fee when it applies for certification and when it updates its application for annual review by the superintendent. The superintendent shall use these fees to conduct onsite reviews, which may include field experts. No fee shall be refunded if the application is withdrawn or is denied by the superintendent.

(n)(1) Notwithstanding any other provision of law, only those nonpublic, nonsectarian schools and agencies that provide special education and designated instruction and services utilizing staff who hold a certificate, permit, or other document equivalent to that which staff in a public school are required to hold in the service rendered are eligible to receive certification. Only those nonpublic, nonsectarian schools or agencies located outside of California that employ staff who hold a current valid credential or license to render special education and related services as required by that state shall be eligible to be certified.

(2) The * * * board shall develop regulations to implement this subdivision.

(o) In addition to meeting the standards adopted by the board, a nonpublic, nonsectarian school or agency shall provide written assurances that it meets all applicable standards relating to fire, health, sanitation, and building safety.

SEC. 49. Section 56366.11 of the Education Code is amended to read:

<< CA EDUC § 56366.11 >>

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 84 of 697

56366.11. (a) The department shall implement a program to integrate individuals with exceptional needs placed in nonpublic, nonsectarian schools into public schools, as appropriate. Under the program, a pupil placed in a nonpublic, nonsectarian school and each individual who has the right to make educational decisions for the pupil shall be informed of all \* \* \* his or her rights relating to the educational placement of the pupil. Existing dispute resolution procedures involving public school enrollment or attendance shall be explained to a pupil placed in a nonpublic, nonsectarian school in an age- and developmentally appropriate manner. The Foster Child Ombudsman shall disseminate the information on education rights to every foster child residing in a licensed children's institution or foster family home.

(b) Following the development of the next statewide assessment contract, the department shall submit to the Legislature a report on the academic progress of pupils attending nonpublic, nonsectarian schools serving individuals with exceptional needs. Using the results of the two most recent years of the Standardized Testing and Reporting (STAR) Program and the California Alternative Performance Assessment, the report shall summarize by district the achievement of all pupils attending a nonpublic, nonsectarian school. The department shall ensure that the report does not violate the confidentiality of individual pupil scores. In addition, the report shall include an academic performance index score for pupils attending nonpublic, nonsectarian schools for each district using the same procedures as under Section 52052.

SEC. 50. Section 56505 of the Education Code is amended to read:

<< CA EDUC § 56505 >>

56505. (a) The state hearing shall be conducted in accordance with regulations adopted by the board.

(b) The hearing shall be held at a time and place reasonably convenient to the parent or guardian and the pupil.

(c) The hearing shall be conducted by a person knowledgeable in the laws and regulations governing special education and administrative hearings pursuant to Section 56504.5, and who has satisfactorily completed training pursuant to this subdivision. The Superintendent shall establish standards for the training of hearing officers, the degree of specialization of the hearing officers, and the quality control mechanisms to be used to ensure that the hearings are fair and the decisions are accurate. A due process hearing may not be conducted by any individual listed in subsection (a) of Section 300.508 of the Code of Federal Regulations. Pursuant to subsection (b) of Section 300.508 of \* \* \* Title 34 of the Code of Federal Regulations, a person who is qualified to conduct a hearing is not an employee of the agency solely because he or she is paid by the agency to serve as a hearing officer. The hearing officer shall encourage the parties to a hearing to consider the option of mediation as an alternative to a hearing.

(d) Pursuant to subsection (a) of Section 300.514 of Title 34 of the Code of Federal Regulations, during the pendency of the hearing proceedings, including the actual state-level hearing, or judicial proceeding regarding a due process hearing, the pupil shall remain in his or her present placement, except as provided in Section 300.526 of Title 34 of the Code of Federal Regulations, unless the public agency and the parent or guardian agree otherwise. A pupil applying for initial admission to a public school shall, with the consent of his or her parent or guardian, be placed in the public school program until all proceedings have been completed. As provided in subsection (c) of Section 300.514 of Title 34 of the Code of Federal Regulations, if the decision of a hearing officer in a due process hearing or a state review official in an administrative appeal agrees with the parent or guardian of the pupil that a change of placement is appropriate, that placement shall be treated as an agreement between the state or local agency and the parent or guardian.

(e) Any party to the hearing held pursuant to this section shall be afforded the following rights consistent with state and federal statutes and regulations:

(1) The right to be accompanied and advised by counsel and by individuals with special knowledge or training relating to the problems of individuals with exceptional needs.

(2) The right to present evidence, written arguments, and oral arguments.

(3) The right to confront, cross-examine, and compel the attendance of \* \* \* witnesses.

(4) The right to a written, or, at the option of the parents or guardians, electronic verbatim record of the hearing.

(5) The right to written, or, at the option of the parent or guardian, electronic findings of fact and decisions. The record of the hearing and the findings of fact and decisions shall be provided at no cost to parents or guardians in accordance with paragraph (2) of subsection (c) of Section 300.509 of Title 34 of the Code of Federal Regulations. The findings and decisions shall be made available to the public after any personally identifiable information has been deleted consistent with the confidentiality requirements of subsection (c) of Section 1417 of Title 20 of the United States Code and shall also be transmitted to the Advisory

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 85 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Commission on Special Education pursuant to paragraph (4) of subsection (h) of Section 1415 of Title 20 of the United States Code.

(6) The right to be informed by the other parties to the hearing, at least 10 days prior to the hearing, as to what those parties believe are the issues to be decided at the hearing and their proposed resolution of those issues. Upon the request of a parent who is not represented by an attorney, the agency responsible for conducting hearings shall provide a mediator to assist the parent in identifying the issues and the proposed resolution of the issues.

(7) The right to receive from other parties to the hearing, at least five business days prior to the hearing, a copy of all documents and a list of all witnesses and their general area of testimony that the parties intend to present at the hearing. Included in the material to be disclosed to all parties at least five business days prior to a hearing shall be all assessments completed by that date and recommendations based on the assessments that the parties intend to use at the hearing.

(8) The right, pursuant to paragraph (3) of subsection (a) of Section 300.509 of Title 34 of the Code of Federal Regulations, to prohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five business days before the hearing.

(f) The hearing conducted pursuant to this section shall be completed and a written, reasoned decision, including the reasons for any nonpublic, nonsectarian school placement, the provision of nonpublic, nonsectarian agency services, or the reimbursement for such placement or services, taking into account the requirements of subdivision (a) of Section 56365, shall be mailed to all parties to the hearing within 45 days from the receipt by the Superintendent of the request for a hearing. Either party to the hearing may request the hearing officer to grant an extension. The extension shall be granted upon a showing of good cause. Any extension shall extend the time for rendering a final administrative decision for a period only equal to the length of the extension.

(g) Subdivision (f) does not alter the burden of proof required in a due process hearing, or prevent a hearing officer from ordering a compensatory remedy for an individual with exceptional needs.

(h) The hearing conducted pursuant to this section shall be the final administrative determination and binding on all parties.

(i) In decisions relating to the placement of individuals with exceptional needs, the person conducting the state hearing shall consider cost, in addition to all other factors that are considered.

(j) In a hearing conducted pursuant to this section, the hearing officer may not base a decision solely on nonsubstantive procedural errors, unless the hearing officer finds that the nonsubstantive procedural errors resulted in the loss of an educational opportunity to the pupil or interfered with the opportunity of the parent or guardian of the pupil to participate in the formulation process of the individualized education program.

(k) This chapter does not preclude a party aggrieved by the findings and decisions in a hearing under this section from exercising the right to appeal the decision to a state court of competent jurisdiction. An aggrieved party may also exercise the right to bring a civil action in a district court of the United States without regard to the amount in controversy, pursuant to Section 300.512 of Title 34 of the Code of Federal Regulations. An appeal shall be made within 90 days of receipt of the hearing decision. During the pendency of any administrative or judicial proceeding conducted pursuant to Chapter 5 (commencing with Section 56500), the child involved in the hearing shall remain in his or her present educational placement, unless the public education agency and the parent or guardian of the child agree otherwise. Any action brought under this subdivision shall adhere to the provisions of subsection (b) of Section 300.512 of Title 34 of the Code of Federal Regulations.

(l) Any request for a due process hearing arising under subdivision (a) of Section 56501 shall be filed within three years from the date the party initiating the request knew or had reason to know of the facts underlying the basis for the request.

(m) Pursuant to subsection (c) of Section 300.508 of Title 34 of the Code of Federal Regulations, each public education agency shall keep a list of the persons who serve as due process hearing officers, in accordance with Section 56504.5, and the list shall include a statement of the qualifications of each of those persons. The list of hearing officers shall be provided to the public education agencies by the organization or entity under contract with the department to conduct due process hearings.

SEC. 51. Section 59052 of the Education Code is amended to read:

<< CA EDUC § 59052 >>

59052. (a) Commencing with the 2004–05 school year, an individual may not be hired as a certificated employee to instruct deaf pupils * * * unless the individual achieves a minimum score of 2.5 on the American Sign Language Proficiency Interview (ASLPI) or an equivalent score on an alternate test selected by the American Sign Language Competency Evaluation Committee of the California School for the Deaf that assesses American Sign Language linguistic competency.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 86 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(b) Commencing with the 2005–06 school year, an individual may not be hired as a certificated employee to instruct deaf pupils \* \* \* unless the individual achieves a minimum score of 3 on the ASLPI or an equivalent score on an alternate test, as described in subdivision (a).

(c) Commencing with the 2006–07 school year, an individual may not be hired as a certificated employee to instruct deaf pupils \* \* \* unless the individual achieves a minimum score of 3.5 on the ASLPI or an equivalent score on an alternate test, as described in subdivision (a).

(d) The minimum score requirements specified in subdivisions (a) to (c), inclusive, may be waived by the superintendent of the school if he or she certifies that no candidate who meets those requirements and all other selection criteria has applied to instruct deaf pupils and open positions remain.

SEC. 52. Section 66739.5 of the Education Code is amended to read:

<< CA EDUC § 66739.5 >>

66739.5. (a) The Legislature finds and declares all of the following:

(1) The California Master Plan and supporting statutes place utmost importance on the effective transfer of community college students to the University of California (UC) and the California State University (CSU) as a means of providing access to the baccalaureate degree.

(2) In 2002, CSU enrolled 55,000 transfer students from community colleges.

(3) Two out of three students who earn CSU baccalaureate degrees begin in a community college.

(4) Effective use of state and student time and resources would be maximized by students accruing fewer unrequired units in earning their degrees.

(5) Additional access to community colleges and CSU will be created by higher graduation rates and fewer nonessential units taken.

(6) The state budget situation makes it urgent to streamline the path of the transfer student to the baccalaureate degree.

(b) It is, therefore, the intent of the Legislature to ensure that community college students who wish to earn the baccalaureate degree at CSU are provided with a clear and effective path to this degree.

(c) This section shall not be construed to limit in any way the ability of students to gain admission through alternative paths to transfer, such as the Intersegmental General Education Transfer Curriculum (IGETC) or the California State University General Education–Breadth Requirements.

(d) On or before February 1, 2005, the Chancellor of CSU shall establish transfer student admissions requirements that give highest priority to transfer students who are qualified in accordance with subdivision (f) and paragraph (3) of subdivision (g).

(e)(1) CSU campuses admitting students qualified in accordance with subdivision (f) and paragraph (3) of subdivision (g) will make it possible for these students to complete their baccalaureate degree in the minimum number of remaining units required for that degree major.

(2) For purposes of this subdivision, the "minimum number of remaining units" is the minimum number of units required for a degree major after subtracting the number of fully degree-transferable units earned at the community college.

(f) The Chancellor of CSU, in consultation with the Academic Senate of CSU, shall establish the following components necessary for a clear degree path for transfer students:

(1) On or before June 1, 2005, the Chancellor of CSU, in consultation with the Academic Senate of CSU and with the faculty responsible for each high-demand baccalaureate degree major program, shall specify for each high-demand baccalaureate program major a systemwide lower division transfer curriculum composed of at least 45 semester course units, or the quarter-unit equivalent, that will be common across all CSU campuses offering specific major programs.

(2)(A) The systemwide lower division transfer curriculum for each high-demand baccalaureate \* \* \* degree major program shall be composed of at least 45 semester units, or the quarter-unit equivalent, and shall include all of the following:

(i) General education courses.

(ii) Any other lower division courses required for graduation.

(iii) Lower division components of the student's declared major.

(iv) Elective units, as appropriate.

(B) The coursework described in subparagraph \* \* \* (A) shall be designated by the CSU faculty responsible for the student's major degree program.

MAINTENANCE OF CODES, 2006 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 87 of 697

(3) The systemwide lower division transfer curriculum shall be specified in sufficient manner and detail so that existing and future community college lower division courses may be articulated, according to the usual procedures, to the corresponding CSU courses or course descriptions.

(g)(1) On or before June 1, 2006, the Chancellor of CSU and the Chancellor of the California Community Colleges, in consultation with the Academic Senate of the California Community Colleges, shall articulate those lower division, baccalaureate-level courses at each campus of the California Community Colleges that meet for each degree major the systemwide lower division transfer curriculum requirements specified in paragraph (1) of subdivision (f).

(2) To the extent that the goals of efficiency and urgency are advanced, existing articulation procedures such as the California Articulation Number (CAN) program shall be employed.

(3) On or before June 1, 2006, each CSU campus shall have identified any additional specific, nonelective course requirements beyond the systemwide lower division transfer curriculum requirements for each major, up to a maximum of 60 semester units or the quarter-unit equivalent, for the systemwide and campus-specific requirements combined. To the extent these additional course requirements are identified, each CSU campus shall provide that information to all community colleges.

(4) The Chancellor of CSU shall amend CSU's transfer admissions procedures to encourage prospective community college transfer students to identify and, to the extent possible, commit to, a specific CSU transfer destination campus before earning *  *  * more than 45 semester units, or the quarter-unit equivalent, of lower division, baccalaureate-level courses, as described in subdivision (f).

(h) As allowed by enrollment demand and available space, each CSU campus shall develop a transfer admission agreement with each student who intends to meet the requirements of this section, including the declaration of a major and identification of a choice of a destination campus, before earning *  *  * more than 45 systemwide semester units, or the quarter-unit equivalent. The transfer admission agreement shall guarantee admission to the campus and major identified in that agreement and transfer of all 60 semester units, or the quarter-unit equivalent, as creditable to the baccalaureate degree, subject to the student's meeting the following conditions:

(1) Completion of the 60 semester units of college-level coursework, or the quarter-unit equivalent, specified for the student's major degree program.

(2) Declaration of a major.

(3) Satisfactory completion of the systemwide lower division transfer curriculum requirements for the student's declared major.

(4) Satisfactory completion of any requirements beyond the systemwide lower division transfer curriculum that are specified by the CSU destination campus.

(5) Any impaction criteria for that campus or major.

(i) A CSU campus shall guarantee that the transfer students admitted under this section will be able to complete the baccalaureate degree in the minimum number of course units required for that degree.

SEC. 53. Section 71093 of the Education Code is amended to read:

<< CA EDUC § 71093 >>

71093. Notwithstanding any other provision of law:

(a) The board of governors may authorize the chancellor to suspend, for a period of up to one year, the authority of the Board of Trustees of the Compton Community College District, or of any of the members of that board, to exercise any powers or responsibilities or to take any official actions with respect to the management of the district, including any of the district's assets, contracts, expenditures, facilities, funds, personnel, or property. With the prior approval of the board of governors, the chancellor may renew a suspension under this section as many times, and as often, as *  *  * he or she finds it necessary during the period of operation of this section.

(b) A suspension authorized by this section becomes effective immediately upon the delivery of a document to the administrative offices of the Compton Community College District that sets forth the finding of the chancellor that a suspension pursuant to this section is necessary for the establishment of fiscal integrity and security in that district.

(c) If and when the chancellor suspends the authority of the Board of Trustees of the Compton Community College District or any of its members pursuant to this section, the chancellor may appoint a special trustee as provided in paragraph (3) of subdivision (c) of Section 84040, at district expense, to manage the district. The chancellor is authorized to assume, and delegate to the special trustee, those powers and duties of the Board of Trustees of the Compton Community College District that the

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 88 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

chancellor determines, with the approval of the board of governors, are necessary for the management of that district. The Board of Trustees of the Compton Community College District may not exercise any of the duties or powers assumed by the chancellor under this section. The chancellor may appoint as a special trustee under this section a person who has served in a similar capacity prior to the enactment of the act that adds this section. A special trustee appointed under this section shall serve at the pleasure of the chancellor.

(d) This section shall remain in effect only until January 1, 2008, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2008, deletes or extends that date.

SEC. 54. Section 89539.2 of the Education Code is amended to read:

<< CA EDUC § 89539.2 >>

89539.2. (a) Any party claiming that his or her request for discovery pursuant to Section 89539.1 has not been complied with may serve and file a petition to compel discovery with the Hearing Office of the State Personnel Board, naming as the respondent the party refusing or failing to comply with Section 89539.1. The petition shall state facts showing that the respondent failed or refused to comply with Section 89539.1, a description of the matters sought to be discovered, the reason or reasons why the matter is discoverable under Section 89539.1, and the ground or grounds for the respondent's refusal so far as known to the petitioner.

(b)(1) The petition shall be served upon the respondent, and filed within 14 days after the respondent first evidenced his or her failure or refusal to comply with Section 89539.1, or within 30 days after the request was made and the party has failed to reply to the request, whichever period is longer. However, no petition may be filed within 15 days of the date set for commencement of the administrative hearing, except upon a petition and a determination by the administrative law judge of good cause. In determining good cause, the administrative law judge shall consider the necessity and reasons for the discovery, the diligence or lack of diligence of the moving party, whether the granting of the petition will delay the commencement of the administrative hearing on the date set, and the possible prejudice of the action to any party.

(2) The respondent shall have a right to file a written answer to the petition. Any answer shall be filed with the Hearing Office of the State Personnel Board and the petitioner within 15 days of service of the petition.

(3) Unless otherwise stipulated by the parties and as provided by this section, the administrative law judge shall review the petition and any response filed by the respondent, and issue a decision granting or denying the petition within 20 days after the filing of the petition. Nothing in this section shall preclude the administrative law judge from determining that an evidentiary hearing shall be conducted prior to the issuance of a decision on the petition. In the event that a hearing is ordered, the decision of the administrative law judge shall be issued within 20 days of the closing of the hearing.

(4) A party aggrieved by the decision of the administrative law judge may, within 30 days of service of the decision, file a petition to compel discovery in the superior court for the county in which the administrative hearing will be held or in the county in which the headquarters of the trustees is located. The petition shall be served on the respondent.

(c) If, from a reading of the petition, the court is satisfied that the petition sets forth good cause for relief, the court shall issue an order to show cause directed to the respondent; otherwise the court shall enter an order denying the petition. The order to show cause shall be served upon the respondent and his or her attorney of record in the administrative proceeding by personal delivery or certified mail, and shall be returnable no earlier than 10 days from its issuance nor later than 30 days after the filing of the petition. The respondent shall have the right to serve and file a written answer or other response to the petition and order to show cause.

(d) The court may, in its discretion, order the administrative proceeding stayed during the pendency of the proceeding, and, if necessary, for a reasonable time thereafter to afford the parties time to comply with the court order.

(e) If the matter sought to be discovered is under the custody or control of the respondent and the respondent asserts that the matter is not a discoverable matter under Section 89539.1, or is privileged against disclosure under Section 89539.1, the court may order lodged with it matters that are provided in subdivision (b) of Section 915 of the Evidence Code, and shall examine the matters in accordance with the provisions thereof.

(f) The court shall decide the case on the matters examined by the court in camera, the papers filed by the parties, and any oral argument and additional evidence as the court may allow.

(g) Unless otherwise stipulated by the parties, the court shall, no later than 45 days after the filing of the petition, file its order denying or granting the petition. However, the court may, on its own motion, for good cause, extend the time an additional

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 89 of 697

45 days. The order of the court shall be in writing, setting forth the matters or parts the petitioner is entitled to discover under Section 89539.1. A copy of the order shall forthwith be served by mail by the clerk upon the parties. If the order grants the petition in whole or in part, the order shall not become effective until 10 days after the date the order is served by the clerk. If the order denies relief to the petitioning party, the order shall be effective on the date it is served by the clerk.

 (h)(1) The order of the superior court shall be final and, except for this subdivision, shall not be subject to review by appeal. A party aggrieved by the order, or any part thereof, may, within 30 days after the service of the superior court's order, serve and file in the district court of appeal for the district in which the superior court is located, a petition for a writ of mandamus to compel the superior court to set aside, or otherwise modify, its order.

 (2) If a review is sought from an order granting discovery, the order of the trial court and the administrative proceeding shall be stayed upon the filing of the petition for writ of mandamus. However, the court of appeal may dissolve or modify the stay thereafter, if it is in the public interest to do so. If the review is sought from a denial of discovery, neither the trial court's order nor the administrative proceeding shall be stayed by the court of appeal except upon a clear showing of probable error.

 (i) If the superior court finds that a party or his or her attorney, without substantial justification, failed or refused to comply with Section 89539.1, or, without substantial justification, filed a petition to compel discovery pursuant to this section, or, without substantial justification, failed to comply with any order of court made pursuant to this section, the court may award court costs and reasonable attorney's fees to the opposing party. Nothing in this subdivision shall limit the power of the superior court to compel obedience to its orders by contempt proceedings.

 SEC. 55. Section 94742.3 of the Education Code is amended to read:

<< CA EDUC § 94742.3 >>

 94742.3. "Short-term education program" means an educational service meeting all of the following criteria:

 (a) The total charge to the student is more than five hundred dollars ($500) and not more than two thousand dollars ($2,000).

 (b) The length of training is 250 hours or less.

 (c) The service is not any of the following:

 (1) Instruction leading to a degree.

 (2) Instruction financed by a federal or state loan or grant.

 (3) Any educational service that was originally longer than 250 hours or cost more than two thousand dollars ($2,000), but has been structured into segments to meet the requirement of subdivision (a).

 (d) The service is offered by approved institutions or institutions registered pursuant to Article 9.5 (commencing with Section 94931).

 SEC. 56. Section 94931 of the Education Code is amended to read:

<< CA EDUC § 94931 >>

 94931. (a) No private postsecondary educational institution, except those offering degrees and approved under Article 8 (commencing with Section 94900) or offering vocational and nondegree granting programs and approved under Article 9 (commencing with Section 94915), or those that are exempt from this chapter, may offer educational services or programs or short-term educational programs unless the institution has been registered by the bureau as meeting the requirements of this article.

 (b) An institution approved to offer degrees under Article 8 (commencing with Section 94900) or approved to offer vocational and nondegree granting programs under Article 9 (commencing with Section 94915) may offer registered short-term education programs without affecting its status under either of those articles so long as the registered short-term education program is disclosed in its approval to operate application or the institution completes a registration application and receives specific authorization for the program, maintains compliance for all registered programs in conformity with this article, and maintains a set of student records for registered programs separate from its approved programs. Any registered institution that offers an educational program not specified in subdivision (c) or not otherwise exempt from this chapter shall be approved under Article 8 (commencing with Section 94900) or Article 9 (commencing with Section 94915) and shall comply with this chapter.

 (c) Except as otherwise provided in this article, this chapter does not apply to an educational service that qualifies for registration status and that complies with this article. The educational services that qualify for registration status are limited to:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 90 of 697

(1) An educational service, as described in Section 94733, that is offered to provide an intensive English language program.

(2) An educational service, as described in Section 94742.1, that is offered to provide short-term career training.

(3) An educational service, as described in Section 94742.3, that is offered to provide short-term seminar training.

(4) An educational service that is offered to assist students to prepare for an examination for licensure, except as provided in Section 94787.

(5) An educational service that consists of continuing education not otherwise exempt from this chapter.

(d) An institution that qualifies under any of paragraphs (1) to (4), inclusive, of subdivision (c) shall complete a registration form provided by the bureau, including a signed declaration by the chief executive officer of the institution under penalty of perjury, and provide all of the following information for public disclosure:

(1) The owner's legal name, headquarters address, and the name of an agent for the service of process within California.

(2) All names, whether real or fictitious, under which the owner is doing and will do business.

(3) The names and addresses of the principal officers of the institution.

(4) A list of all California locations at which the institution operates, its offerings, and, if previously registered, the number of students enrolled in California during the preceding year.

(5) A copy of the registration form or agreement that enrolls the student in the educational service that contains all of the following:

(A) The name and address of the location where instruction will be provided.

(B) The title of the educational program.

(C) The total amount the student is obligated to pay for the educational service.

(D) A clear and conspicuous statement that the enrollment form or agreement is a legally binding instrument when signed by the student and accepted by the institution.

(E) The refund policy developed by the institution unless this article specifies a different refund policy.

(F) Unless this article specifies that the institution is required to participate in the Student Tuition Recovery Fund, a statement that the institution does not participate in that fund.

(G) In 10–point boldface type or larger, the following statement: "Any questions or problems concerning this school that have not been satisfactorily answered or resolved by the school should be directed to the Bureau for Private Postsecondary and Vocational Education in the Department of Consumer Affairs (insert city, address, CA ZIP Code number, and telephone number)."

(H) Schools approved under paragraph (1) of subdivision (c) of Section 94931 shall also include with the statement required by subparagraph (G) information referring the student to a consulate of his or her country and the United States Immigration and Naturalization Service.

(6) A brochure or catalog and a sample advertisement used to promote the educational service.

(7) A copy of its certificate of completion.

(8) If the educational service offers short-term career training, the institution shall comply with the requirements of Sections 94804 and 94806.

(9) If the institution assists students in obtaining financing from a third party for the cost of the educational services at the institution, a copy of the contract or finance agreement reflecting that financing.

(e) The bureau shall establish the initial registration fee and the annual fee to be paid by institutions registered under this article. No institution shall be registered pursuant to this article unless it has paid the appropriate fees required by the bureau. Upon receipt of an institution's initial application for registration for a program, the bureau may conduct a site visit pursuant to subdivision (c) of Section 94915.

(f) For the purposes of communication with other state agencies, any organization or individual registered to offer short-term seminar training may state that * * * he, she, or it is "authorized" by the State of California.

(g)(1) Except as provided by subdivision (f), any institution registered pursuant to this article shall be restricted to stating that its training is "registered" with the State of California and is prohibited from using the words "approval," "approved," "approval to operate," "approved to operate," "authorized," "licensed," or "licensed to operate."

(2) The institution shall place the following statement in all brochures, catalogues, enrollment agreements, and registration forms, in a conspicuous location in at least 12–point boldfaced type:

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 91 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

"We are registered with the State of California. Registration means we have met certain minimum standards imposed by the state for registered schools on the basis of our written application to the state. Registration does not mean we have met all of the more extensive standards required by the state for schools that are approved to operate or licensed or that the state has verified the information we submitted with our registration form."

(h) The bureau may require, at least every three years following the initial registration date, that a registered institution verify all or part of the information required to be provided with the registration form under subdivision (d).

(i) Sections 94812 and 94818, Sections 94822 to 94825, inclusive, * * * Sections 94829 to 94838, inclusive, and Sections 94841 and 94846 * * * apply to any institution registered pursuant to this article.

(j) Article 1 (commencing with Section 94700), Article 2 (commencing with Section 94710), Article 3 (commencing with Section 94750), Article 3.5 (commencing with Section 94760), Article 4 (commencing with Section 94770), and Article 13 (commencing with Section 94950) * * * apply to any institution registered pursuant to this article.

SEC. 57. Section 99235 of the Education Code is amended to read:

<< CA EDUC § 99235 >>

99235. (a) The Superintendent of Public Instruction shall notify local educational agencies that they are eligible to receive funding to provide instructional aides and paraprofessionals who directly assist with classroom instruction in mathematics and reading with professional development training in mathematics and reading, in an amount equal to one thousand dollars ($1,000) per qualifying instructional aide. Funding will be provided to local educational agencies on a first-come, first-served basis. A local educational agency that chooses to participate in the program is eligible to receive funding for no greater than the percentage calculated in accordance with provisions of an item of appropriation in the annual Budget Act for its instructional aides and paraprofessionals. However, the statewide total number of instructional aides and paraprofessionals who directly assist with classroom instruction in mathematics and reading served under this program may not exceed 9,600 over the two fiscal years.

(b) Of the incentive provided pursuant to subdivision (a), a local educational agency may * * * not use more than five hundred dollars ($500) of the amount per instructional aide and paraprofessional * * * who directly assists with classroom instruction in mathematics and reading * * * to provide an individual instructional aide stipend.

SEC. 58. Section 9042 of the Elections Code is amended to read:

<< CA ELEC § 9042 >>

9042. If a measure submitted to the voters by the Legislature was not adopted unanimously, one Member of the Senate who voted against it shall be appointed by the President pro Tempore of the Senate and one Member of the Assembly who voted against it shall be appointed by the Speaker of the Assembly, at the same time as appointments to draft an argument in its favor are made, to write an argument against the measure. An argument shall not exceed 500 words.

If those members appointed to write an argument against the measure choose, each may write a separate argument opposing it, but the combined length of the two arguments shall not exceed 500 words.

SEC. 59. Section 299.3 of the Family Code is amended to read:

<< CA FAM § 299.3 >>

299.3. (a) On or before June 30, 2004, and again on or before December 1, 2004, and again on or before January 31, 2005, the Secretary of State shall send the following letter to the mailing address on file of each registered domestic partner who registered more than one month prior to each of those dates:

"Dear Registered Domestic Partner:
This letter is being sent to all persons who have registered with the Secretary of State as a domestic partner.

Effective January 1, 2005, California's law related to the rights and responsibilities of registered domestic partners will change (or, if you are receiving this letter after that date, the law has changed, as of January 1, 2005). With this new legislation, for purposes of California law, domestic partners will have a great many new rights and responsibilities, including laws governing community property, those governing property transfer, those regarding duties of mutual financial support and mutual responsibilities for certain debts to third parties, and many others. The way domestic partnerships are terminated is also changing.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 92 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

After January 1, 2005, under certain circumstances, it will be necessary to participate in a dissolution proceeding in court to end a domestic partnership.

Domestic partners who do not wish to be subject to these new rights and responsibilities MUST terminate their domestic partnership before January 1, 2005. Under the law in effect until January 1, 2005, your domestic partnership is automatically terminated if you or your partner marry or die while you are registered as domestic partners. It is also terminated if you send to your partner or your partner sends to you, by certified mail, a notice terminating the domestic partnership, or if you and your partner no longer share a common residence. In all cases, you are required to file a Notice of Termination of Domestic Partnership.

If you do not terminate your domestic partnership before January 1, 2005, as provided above, you will be subject to these new rights and responsibilities and, under certain circumstances, you will only be able to terminate your domestic partnership, other than as a result of your domestic partner's death, by the filing of a court action.

Further, if you registered your domestic partnership with the state prior to January 1, 2005, you have until June 30, 2005, to enter into a written agreement with your domestic partner that will be enforceable in the same manner as a premarital agreement under California law, if you intend to be so governed.

If you have any questions about any of these changes, please consult an attorney. If you cannot find an attorney in your locale, please contact your county bar association for a referral.

Sincerely,

The Secretary of State"

(b) From January 1, 2004, to December 31, 2004, inclusive, the Secretary of State shall provide the following notice with all requests for the Declaration of Domestic Partnership form. The Secretary of State also shall attach the Notice to the Declaration of Domestic Partnership form that is provided to the general public on the Secretary of State's Web site:

"NOTICE TO POTENTIAL DOMESTIC PARTNER REGISTRANTS

As of January 1, 2005, California's law of domestic partnership will change.

Beginning at that time, for purposes of California law, domestic partners will have a great many new rights and responsibilities, including laws governing community property, those governing property transfer, those regarding duties of mutual financial support and mutual responsibilities for certain debts to third parties, and many others. The way domestic partnerships are terminated will also change. Unlike current law, which allows partners to end their partnership simply by filing a "Termination of Domestic Partnership" form with the Secretary of State, after January 1, 2005, it will be necessary under certain circumstances to participate in a dissolution proceeding in court to end a domestic partnership.

If you have questions about these changes, please consult an attorney. If you cannot find an attorney in your area, please contact your county bar association for a referral."

SEC. 60. Section 420 of the Family Code is amended to read:

<< CA FAM § 420 >>

420. (a) No particular form for the ceremony of marriage is required for solemnization of the marriage, but the parties shall declare, in the presence of the person solemnizing the marriage and necessary witnesses, that they take each other as husband and wife.

(b) Notwithstanding subdivision (a), a member of the Armed Forces of the United States who is stationed overseas and serving in a conflict or a war and is unable to appear for the licensure and solemnization of the marriage may enter into that marriage by the appearance of an attorney-in-fact, commissioned and empowered in writing for that purpose through a power of attorney. The attorney-in-fact must personally appear at the county clerk's office with the party who is not stationed overseas, and present the original power of attorney duly signed by the party stationed overseas and acknowledged by a notary or witnessed by two officers of the United States Armed Forces. The power of attorney shall state the true legal names of the parties to be married, and that the power of attorney is solely for the purpose of authorizing the attorney-in-fact to obtain a marriage license on the person's behalf and participate in the solemnization of the marriage. The original power of attorney shall be a part of the marriage certificate upon registration.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

(c) No contract of marriage, if otherwise duly made, shall be invalidated for want of conformity to the requirements of any religious sect.

SEC. 61. Section 2024.6 of the Family Code is amended to read:

<< CA FAM § 2024.6 >>

2024.6. (a) Upon request by a party to a petition for dissolution of marriage, nullity of marriage, or legal separation, the court shall order a pleading that lists the parties' financial assets and liabilities and provides the location or identifying information about those assets and liabilities sealed. The request may be made by ex parte application. Nothing sealed pursuant to this section may be unsealed except upon petition to the court and good cause shown.

(b) Commencing not later than July 1, 2005, the Judicial Council form used to declare assets and liabilities of the parties in a proceeding for dissolution of marriage, nullity of marriage, or legal separation of the parties shall require the party filing the form to state whether the declaration contains identifying information on the assets and liabilities listed therein. If the party making the request uses a pleading other than the Judicial Council form, the pleading shall exhibit a notice on the front page, in bold capital letters, that the pleading lists and identifies financial information and is therefore subject to this section.

(c) For purposes of this section, "pleading" means a document that sets forth or declares the parties' assets and liabilities, income and expenses, a marital settlement agreement that lists and identifies the parties' assets and liabilities, or any document filed with the court incidental to the declaration or agreement that lists and identifies financial information.

(d) The party making the request to seal a pleading pursuant to subdivision (a) shall serve a copy of the pleading on the other party to the proceeding and file a proof of service with the request to seal the pleading.

(e) Nothing in this section precludes a party to a proceeding described in this section from using any document or information contained in a sealed pleading in any manner that is not otherwise prohibited by law.

SEC. 62. Section 3111 of the Family Code is amended to read:

<< CA FAM § 3111 >>

3111. (a) In any contested proceeding involving child custody or visitation rights, the court may appoint a child custody evaluator to conduct a child custody evaluation in cases where the court determines it is in the best interests of the child. The child custody evaluation shall be conducted in accordance with the standards adopted by the Judicial Council pursuant to Section 3117, and all other standards adopted by the Judicial Council regarding child custody evaluations. If directed by the court, the court-appointed child custody evaluator shall file a written confidential report on his or her evaluation. At least 10 days before any hearing regarding custody of the child, the report shall be filed with the clerk of the court in which the custody hearing will be conducted and served on the parties or their attorneys, and any other counsel appointed for the child pursuant to Section 3150. The report may be considered by the court.

(b) The report shall not be made available other than as provided in subdivision (a), or as described in Section 204 of the Welfare and Institutions Code or Section 1514.5 of the Probate Code. Any information obtained from access to a juvenile court case file, as defined in subdivision (e) of Section 827 of the Welfare and Institutions Code, is confidential and shall only be disseminated as provided by paragraph (4) of subdivision (a) of Section 827 of the Welfare and Institutions Code.

(c) The report may be received in evidence on stipulation of all interested parties and is competent evidence as to all matters contained in the report.

SEC. 63. Section 6341 of the Family Code is amended to read:

<< CA FAM § 6341 >>

6341. (a) If the parties are married to each other and no other child support order exists or if there is a presumption under Section 7611 that the respondent is the natural father of a minor child and the child is in the custody of the petitioner, after notice and a hearing, the court may, if requested by the petitioner, order a party to pay an amount necessary for the support and maintenance of the child if the order would otherwise be authorized in an action brought pursuant to Division 9 (commencing with Section 3500) or the Uniform Parentage Act (Part 3 (commencing with Section 7600) of Division 12). When determining whether to make any orders under this subdivision, the court shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner and the children for whom child support is requested, including safety concerns related to

the financial needs of the petitioner and the children. The Judicial Council shall provide notice of this provision on any Judicial Council forms related to this subdivision.

(b) An order issued pursuant to subdivision (a) of this section shall be without prejudice in an action brought pursuant to the Uniform Parentage Act (Part 3 (commencing with Section 7600) of Division 12).

(c) If the parties are married to each other and no spousal support order exists, after notice and a hearing, the court may order the respondent to pay spousal support in an amount, if any, that would otherwise be authorized in an action pursuant to Part 1 (commencing with Section 3500) or Part 3 (commencing with Section 4300) of Division 9. When determining whether to make any orders under this subdivision, the court shall consider whether failure to make any of these orders may jeopardize the safety of the petitioner, including safety concerns related to the financial needs of the petitioner. The Judicial Council shall provide notice of this provision on any Judicial Council forms related to this subdivision.

(d) An order issued pursuant to subdivision (c) shall be without prejudice in a proceeding for dissolution of marriage, nullity of marriage, or legal separation of the parties.

SEC. 64. Section 14252 of the Financial Code is amended to read:

<< CA FIN § 14252 >>

14252. (a) A credit union with total assets equal to or greater than ten million dollars ($10,000,000) shall, within 105 days after the end of each fiscal year or within any extended time that the commissioner may specify, file with the commissioner an audit report for the fiscal year.

(b) The audit report called for in subdivision (a) shall comply with all of the following provisions:

(1) The audit report shall contain the audited financial statements of the credit union for, or as of the end of, the fiscal year, prepared in accordance with generally accepted accounting principles that the commissioner may specify, and any other information that the commissioner may specify.

(2) The audit report shall be based upon an audit of the credit union, conducted in accordance with generally accepted auditing standards, and any other requirements that the commissioner may specify.

(3) The audit report shall be prepared by an independent certified public accountant or independent public accountant who is acceptable to the commissioner.

(4) The audit report shall include, or be accompanied by, a certificate or opinion of the independent certified public accountant or independent public accountant that is satisfactory in form and content to the commissioner. If the certificate or opinion is qualified, the commissioner may order the credit union to take any action that the commissioner may find necessary or advisable to enable the independent certified public accountant or independent public accountant to remove the qualification.

(c) A credit union with total assets of less than ten million dollars ($10,000,000) shall, within 105 days after the end of each fiscal year or within any extended time that the commissioner may specify, file with the commissioner an audit report for the fiscal year.

(d) The audit report called for in subdivision (c) may comply with all the provisions of subdivision (b), or may consist of alternative procedures acceptable to the commissioner. An alternative procedures audit may be performed by any of the following:

(1) An independent certified public accountant.

(2) An independent public accountant.

(3) The credit union's supervisory committee, provided that the audit complies with the requirements of Section 14253.

(e) Notwithstanding subdivision (d), the commissioner may reject an alternative procedures audit that he or she determines is not satisfactory. If the commissioner rejects an alternative procedures audit for any reason, he or she may order a credit union to obtain an audit that is satisfactory to the commissioner.

(f) The commissioner may, by order or regulation, either unconditionally or upon specified terms and conditions, grant an exemption from this section in any case where the commissioner finds that the requirements of this section are not necessary or advisable.

SEC. 65. Section 1053 of the Fish and Game Code is amended to read:

<< CA FISH & G § 1053 >>

MAINTENANCE OF CODES, 2006 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 95 of 697

1053. No person shall obtain more than one license, permit, reservation, or other entitlement of the same class, or more than the number of tags authorized by statute or regulation for the same license year, except under one of the following conditions:

(a) Licenses issued pursuant to paragraphs (3), (4), and (5) of subdivision (a) of Section 7149, paragraphs (3), (4), and (5) of subdivision (a) of Section 7149.05, and paragraphs (4) and (5) of subdivision (a) of Section 3031.

(b) The loss or destruction of an unexpired license, tag, permit, reservation, or other entitlement as certified by the applicant's signed affidavit and proof, as determined by the department, that the original license, tag, permit, reservation, or other entitlement was issued, and payment of a base fee of five dollars ($5), adjusted pursuant to Section 713, not to exceed the fee for the original entitlement.

(c) The adjustment of the base fee pursuant to Section 713 applies to the hunting license years commencing on or after July 1, 1996, and the fishing license years commencing on or after January 1, 1996.

SEC. 66. Section 1363.5 of the Fish and Game Code is amended to read:

<< CA FISH & G § 1363.5 >>

1363.5. (a) Commencing on June 30, 2003, and every two years thereafter, the board shall report to the Legislature and the Governor concerning the activities and expenditures of the fund.

(b)(1) In the first report to the Legislature, the board shall provide its best estimate of the total amount, in terms of acreage, species, and coverage, of oak woodlands habitat purchased with funds from the Habitat Conservation Fund and other funds pursuant to the California Wildlife Protection Act of 1990 (Chapter 9 (commencing with Section 2780) of Division 3).

(2) In each subsequent report, the board shall update the information required by paragraph (1) to reflect additional oak woodlands habitat purchased with funds from the Habitat Conservation Fund pursuant to Chapter 9 (commencing with Section 2780) of Division 3, and any purchases made with moneys deposited in the Oak Woodlands Conservation Fund.

(c) The board shall provide its best estimate in each report of the acreage, cover, and species of oak woodlands habitat purchased with all moneys from the Safe Neighborhood Parks, Clean Water, Clean Air, and Coastal Protection Bond Fund.

(d) The board shall make all information available online at its Web site.

(e) This section shall become inoperative on July 1, 2020, and, as of January 1, 2021, is repealed, unless a later enacted statute that is enacted before January 1, 2021, deletes or extends the dates on which it becomes inoperative and is repealed.

SEC. 67. Section 8494 of the Fish and Game Code is amended to read:

<< CA FISH & G § 8494 >>

8494. (a) Commencing April 1, 2006, any vessel using bottom trawl gear in state-managed halibut fisheries, as described in subdivision (a) of Section 8841, shall possess a halibut bottom trawl permit issued by the department that authorizes the use of trawl gear by that vessel for the take of California halibut. An application for a California halibut bottom trawl vessel permit for the 2006–07 season shall be received by the department not later than January 1, 2006.

(b) A halibut bottom trawl vessel permit shall be issued annually, commencing with the 2006 permit year. Commencing with the 2007–08 season, in order to be eligible for that permit, an applicant shall have previously held a valid California halibut bottom trawl vessel permit.

(c) The department shall not issue a bottom trawl vessel permit pursuant to this section for use in the halibut fishery unless that vessel has landed a minimum of 200 pounds of California halibut and reported that landing on fish tickets as being caught with bottom trawl gear in at least one of the following:

(1) At least two of the calendar years 1995 to 2003, inclusive.

(2) At least one of the calendar years 1995 to 2003, inclusive, and from January 1, 2004, to February 19, 2004, inclusive.

(d) Permits issued pursuant to this section may be transferred only if at least one of the following occurs:

(1) The commission adopts a restricted access program for the fishery, including, but not limited to, if necessary, a plan for reducing capacity in this fishery in a manner that is consistent with the commission's policies regarding restricted access to commercial fisheries.

(2) Prior to the implementation of a restricted access program, the permit is transferred to another vessel owned by the same permitholder of equal or less capacity, as determined by the department based on the United States Coast Guard documentation papers, and if the originally permitted vessel was lost, stolen, destroyed, or suffered a major irreparable mechanical breakdown.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 96 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

The department may not issue a permit for a replacement vessel if the department determines that the originally permitted vessel was fraudulently reported as lost, stolen, destroyed, or damaged. Only the permitholder at the time of the loss, theft, destruction, or irreparable mechanical breakdown of a vessel may apply to transfer the vessel permit. Evidence that a vessel is lost, stolen, or destroyed shall be in the form of a copy of the report filed with the United States Coast Guard, or any other law enforcement agency or fire department that conducted an investigation of the loss.

 (3) Prior to the implementation of a halibut trawl restricted access program, a vessel permitholder, or his or her heirs or assigns, requests to transfer the permit because of the death or permanent disability of the permitholder or the decision by the permitholder to retire from fishing upon reaching or exceeding the age of 65 years, and halibut landings contributed significantly to the catch record and economic income derived from the vessel, and the permit is authorized by the department to be transferred with the vessel. The department may request information that it determines is reasonably necessary from the permitholder or his or her heirs and assigns for the purpose of verifying statements in the request prior to authorizing the transfer of the permit.

 (e) The commission shall establish California halibut bottom trawl vessel permit fees based on the recommendations of the department and utilizing the guidelines outlined in subdivision (b) of Section 711 to cover the costs of administering this section. Prior to the adoption of a restricted access program pursuant to subdivision (d), fees may not exceed one thousand dollars ($1,000) per permit.

 (f) Individuals holding a federal groundfish trawl permit may retain and land up to 150 pounds of California halibut per trip without a California halibut trawl permit in accordance with federal and state regulations, including, but not limited to, regulations developed under a halibut fishery management plan.

 (g) This section shall become inoperative upon the adoption by the commission of a halibut fishery management plan in accordance with the requirements of Part 1.7 (commencing with Section 7050).

 SEC. 68. Section 77253 of the Food and Agricultural Code is amended to read:

<< CA FOOD & AG § 77253 >>

 77253. The commission or the secretary may bring an action for judicial relief from the secretary's written notice, or from noncompliance by the commission with the written notice, as the case may be, in a court of competent jurisdiction, which may issue a temporary restraining order, permanent injunction, or other applicable relief.

 SEC. 69. Section 77265 of the Food and Agricultural Code is amended to read:

<< CA FOOD & AG § 77265 >>

 77265. The secretary or his or her representative shall be notified and may attend each meeting of the commission and any committee meeting of the commission.

 SEC. 70. Section 3309.5 of the Government Code is amended to read:

<< CA GOVT § 3309.5 >>

 3309.5. (a) It shall be unlawful for any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter.

 (b) Nothing in subdivision (h) of Section 11181 shall be construed to affect the rights and protections afforded to state public safety officers under this chapter or under Section 832.5 of the Penal Code.

 (c) The superior court shall have initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of this chapter.

 (d)(1) In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer.

 (2) If the court finds that a bad faith or frivolous action or a filing for an improper purpose has been brought pursuant to this chapter, the court may order sanctions against the party filing the action, the party's attorney, or both, pursuant to Sections 128.6 and 128.7 of the Code of Civil Procedure. Those sanctions may include, but not be limited to, reasonable expenses,

including attorney's fees, incurred by a public safety department * * * as the court deems appropriate. Nothing in this paragraph is intended to subject actions or filings under this section to rules or standards that are different from those applicable to other civil actions or filings subject to Section 128.6 or 128.7 of the Code of Civil Procedure.

(e) In addition to the extraordinary relief afforded by this chapter, upon a finding by a superior court that a public safety department, its employees, agents, or assigns, with respect to acts taken within the scope of employment, maliciously violated any provision of this chapter with the intent to injure the public safety officer, the public safety department shall, for each and every violation, be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) to be awarded to the public safety officer whose right or protection was denied and for reasonable attorney's fees as may be determined by the court. If the court so finds, and there is sufficient evidence to establish actual damages suffered by the officer whose right or protection was denied, the public safety department shall also be liable for the amount of the actual damages. Notwithstanding these provisions, a public safety department may not be required to indemnify a contractor for the contractor's liability pursuant to this subdivision if there is, within the contract between the public safety department and the contractor, a "hold harmless" or similar provision that protects the public safety department from liability for the actions of the contractor. An individual shall not be liable for any act for which a public safety department is liable under this section.

SEC. 71. Section 6254 of the Government Code is amended to read:

<< CA GOVT § 6254 >>

6254. Except as provided in Sections 6254.7 and 6254.13, nothing in this chapter shall be construed to require disclosure of records that are any of the following:

(a) Preliminary drafts, notes, or interagency or intra-agency memoranda that are not retained by the public agency in the ordinary course of business, provided that the public interest in withholding those records clearly outweighs the public interest in disclosure.

(b) Records pertaining to pending litigation to which the public agency is a party, or to claims made pursuant to Division 3.6 (commencing with Section 810), until the pending litigation or claim has been finally adjudicated or otherwise settled.

(c) Personnel, medical, or similar files, the disclosure of which would constitute an unwarranted invasion of personal privacy.

(d) Contained in or related to any of the following:

(1) Applications filed with any state agency responsible for the regulation or supervision of the issuance of securities or of financial institutions, including, but not limited to, banks, savings and loan associations, industrial loan companies, credit unions, and insurance companies.

(2) Examination, operating, or condition reports prepared by, on behalf of, or for the use of, any state agency referred to in paragraph (1).

(3) Preliminary drafts, notes, or interagency or intra-agency communications prepared by, on behalf of, or for the use of, any state agency referred to in paragraph (1).

(4) Information received in confidence by any state agency referred to in paragraph (1).

(e) Geological and geophysical data, plant production data, and similar information relating to utility systems development, or market or crop reports, that are obtained in confidence from any person.

(f) Records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes, except that state and local law enforcement agencies shall disclose the names and addresses of persons involved in, or witnesses other than confidential informants to, the incident, the description of any property involved, the date, time, and location of the incident, all diagrams, statements of the parties involved in the incident, the statements of all witnesses, other than confidential informants, to the victims of an incident, or an authorized representative thereof, an insurance carrier against which a claim has been or might be made, and any person suffering bodily injury or property damage or loss, as the result of the incident caused by arson, burglary, fire, explosion, larceny, robbery, carjacking, vandalism, vehicle theft, or a crime as defined by subdivision (b) of Section 13951, unless the disclosure would endanger the safety of a witness or other person involved in the investigation, or unless disclosure would endanger the successful completion of the investigation or a related investigation. However, nothing in this division shall require the disclosure of that portion of those investigative files that reflect the analysis or conclusions of the investigating officer.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 98 of 697

Customer lists provided to a state or local police agency by an alarm or security company at the request of the agency shall be construed to be records subject to this subdivision.

Notwithstanding any other provision of this subdivision, state and local law enforcement agencies shall make public the following information, except to the extent that disclosure of a particular item of information would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related investigation:

(1) The full name and occupation of every individual arrested by the agency, the individual's physical description including date of birth, color of eyes and hair, sex, height and weight, the time and date of arrest, the time and date of booking, the location of the arrest, the factual circumstances surrounding the arrest, the amount of bail set, the time and manner of release or the location where the individual is currently being held, and all charges the individual is being held upon, including any outstanding warrants from other jurisdictions and parole or probation holds.

(2) Subject to the restrictions imposed by Section 841.5 of the Penal Code, the time, substance, and location of all complaints or requests for assistance received by the agency and the time and nature of the response thereto, including, to the extent the information regarding crimes alleged or committed or any other incident investigated is recorded, the time, date, and location of occurrence, the time and date of the report, the name and age of the victim, the factual circumstances surrounding the crime or incident, and a general description of any injuries, property, or weapons involved. The name of a victim of any crime defined by Section 220, 261, 261.5, 262, 264, 264.1, 273a, 273d, 273.5, 286, 288, 288a, 289, 422.6, 422.7, 422.75, or 646.9 of the Penal Code may be withheld at the victim's request, or at the request of the victim's parent or guardian if the victim is a minor. When a person is the victim of more than one crime, information disclosing that the person is a victim of a crime defined by Section 220, 261, 261.5, 262, 264, 264.1, 273a, 273d, 286, 288, 288a, 289, 422.6, 422.7, 422.75, or 646.9 of the Penal Code may be deleted at the request of the victim, or the victim's parent or guardian if the victim is a minor, in making the report of the crime, or of any crime or incident accompanying the crime, available to the public in compliance with the requirements of this paragraph.

(3) Subject to the restrictions of Section 841.5 of the Penal Code and this subdivision, the current address of every individual arrested by the agency and the current address of the victim of a crime, where the requester declares under penalty of perjury that the request is made for a scholarly, journalistic, political, or governmental purpose, or that the request is made for investigation purposes by a licensed private investigator as described in Chapter 11.3 (commencing with Section 7512) of Division 3 of the Business and Professions Code, except that the address of the victim of any crime defined by Section 220, 261, 261.5, 262, 264, 264.1, 273a, 273d, 273.5, 286, 288, 288a, 289, 422.6, 422.7, 422.75, or 646.9 of the Penal Code shall remain confidential. Address information obtained pursuant to this paragraph may not be used directly or indirectly, or furnished to another, to sell a product or service to any individual or group of individuals, and the requester shall execute a declaration to that effect under penalty of perjury. Nothing in this paragraph shall be construed to prohibit or limit a scholarly, journalistic, political, or government use of address information obtained pursuant to this paragraph.

(g) Test questions, scoring keys, and other examination data used to administer a licensing examination, examination for employment, or academic examination, except as provided for in Chapter 3 (commencing with Section 99150) of Part 65 of the Education Code.

(h) The contents of real estate appraisals or engineering or feasibility estimates and evaluations made for or by the state or local agency relative to the acquisition of property, or to prospective public supply and construction contracts, until all of the property has been acquired or all of the contract agreement obtained. However, the law of eminent domain shall not be affected by this provision.

(i) Information required from any taxpayer in connection with the collection of local taxes that is received in confidence and the disclosure of the information to other persons would result in unfair competitive disadvantage to the person supplying the information.

(j) Library circulation records kept for the purpose of identifying the borrower of items available in libraries, and library and museum materials made or acquired and presented solely for reference or exhibition purposes. The exemption in this subdivision shall not apply to records of fines imposed on the borrowers.

(k) Records, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege.

(l) Correspondence of and to the Governor or employees of the Governor's office or in the custody of or maintained by the Governor's Legal Affairs Secretary, provided that public records shall not be transferred to the custody of the Governor's Legal Affairs Secretary to evade the disclosure provisions of this chapter.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 99 of 697

(m) In the custody of or maintained by the Legislative Counsel, except those records in the public database maintained by the Legislative Counsel that are described in Section 10248.

(n) Statements of personal worth or personal financial data required by a licensing agency and filed by an applicant with the licensing agency to establish his or her personal qualification for the license, certificate, or permit applied for.

(o) Financial data contained in applications for financing under Division 27 (commencing with Section 44500) of the Health and Safety Code, where an authorized officer of the California Pollution Control Financing Authority determines that disclosure of the financial data would be competitively injurious to the applicant and the data is required in order to obtain guarantees from the United States Small Business Administration. The California Pollution Control Financing Authority shall adopt rules for review of individual requests for confidentiality under this section and for making available to the public those portions of an application that are subject to disclosure under this chapter.

(p) Records of state agencies related to activities governed by Chapter 10.3 (commencing with Section 3512), Chapter 10.5 (commencing with Section 3525), and Chapter 12 (commencing with Section 3560) of Division 4 of Title 1, that reveal a state agency's deliberative processes, impressions, evaluations, opinions, recommendations, meeting minutes, research, work product, theories, or strategy, or that provide instruction, advice, or training to employees who do not have full collective bargaining and representation rights under these chapters. Nothing in this subdivision shall be construed to limit the disclosure duties of a state agency with respect to any other records relating to the activities governed by the employee relations acts referred to in this subdivision.

(q) Records of state agencies related to activities governed by Article 2.6 (commencing with Section 14081), Article 2.8 (commencing with Section 14087.5), and Article 2.91 (commencing with Section 14089) of Chapter 7 of Part 3 of Division 9 of the Welfare and Institutions Code, that reveal the special negotiator's deliberative processes, discussions, communications, or any other portion of the negotiations with providers of health care services, impressions, opinions, recommendations, meeting minutes, research, work product, theories, or strategy, or that provide instruction, advice, or training to employees.

Except for the portion of a contract containing the rates of payment, contracts for inpatient services entered into pursuant to these articles, on or after April 1, 1984, shall be open to inspection one year after they are fully executed. In the event that a contract for inpatient services that is entered into prior to April 1, 1984, is amended on or after April 1, 1984, the amendment, except for any portion containing the rates of payment, shall be open to inspection one year after it is fully executed. If the California Medical Assistance Commission enters into contracts with health care providers for other than inpatient hospital services, those contracts shall be open to inspection one year after they are fully executed.

Three years after a contract or amendment is open to inspection under this subdivision, the portion of the contract or amendment containing the rates of payment shall be open to inspection.

Notwithstanding any other provision of law, the entire contract or amendment shall be open to inspection by the Joint Legislative Audit Committee and the Legislative Analyst's Office. The committee and that office shall maintain the confidentiality of the contracts and amendments until the time a contract or amendment is fully open to inspection by the public.

(r) Records of Native American graves, cemeteries, and sacred places maintained by the Native American Heritage Commission.

(s) A final accreditation report of the Joint Commission on Accreditation of Hospitals that has been transmitted to the State Department of Health Services pursuant to subdivision (b) of Section 1282 of the Health and Safety Code.

(t) Records of a local hospital district, formed pursuant to Division 23 (commencing with Section 32000) of the Health and Safety Code, or the records of a municipal hospital, formed pursuant to Article 7 (commencing with Section 37600) or Article 8 (commencing with Section 37650) of Chapter 5 of Division 3 of Title 4 of this code, that relate to any contract with an insurer or nonprofit hospital service plan for inpatient or outpatient services for alternative rates pursuant to Section 10133 or 11512 of the Insurance Code. However, the record shall be open to inspection within one year after the contract is fully executed.

(u)(1) Information contained in applications for licenses to carry firearms issued pursuant to Section 12050 of the Penal Code by the sheriff of a county or the chief or other head of a municipal police department that indicates when or where the applicant is vulnerable to attack or that concerns the applicant's medical or psychological history or that of members of his or her family.

(2) The home address and telephone number of peace officers, judges, court commissioners, and magistrates that are set forth in applications for licenses to carry firearms issued pursuant to Section 12050 of the Penal Code by the sheriff of a county or the chief or other head of a municipal police department.

(3) The home address and telephone number of peace officers, judges, court commissioners, and magistrates that are set forth in licenses to carry firearms issued pursuant to Section 12050 of the Penal Code by the sheriff of a county or the chief or other head of a municipal police department.

(v)(1) Records of the Major Risk Medical Insurance Program related to activities governed by Part 6.3 (commencing with Section 12695) and Part 6.5 (commencing with Section 12700) of Division 2 of the Insurance Code, and that reveal the deliberative processes, discussions, communications, or any other portion of the negotiations with health plans, or the impressions, opinions, recommendations, meeting minutes, research, work product, theories, or strategy of the board or its staff, or records that provide instructions, advice, or training to employees.

(2)(A) Except for the portion of a contract that contains the rates of payment, contracts for health coverage entered into pursuant to Part 6.3 (commencing with Section 12695) or Part 6.5 (commencing with Section 12700) of Division 2 of the Insurance Code, on or after July 1, 1991, shall be open to inspection one year after they have been fully executed.

(B) In the event that a contract for health coverage that is entered into prior to July 1, 1991, is amended on or after July 1, 1991, the amendment, except for any portion containing the rates of payment, shall be open to inspection one year after the amendment has been fully executed.

(3) Three years after a contract or amendment is open to inspection pursuant to this subdivision, the portion of the contract or amendment containing the rates of payment shall be open to inspection.

(4) Notwithstanding any other provision of law, the entire contract or amendments to a contract shall be open to inspection by the Joint Legislative Audit Committee. The committee shall maintain the confidentiality of the contracts and amendments thereto, until the contract or amendments to a contract is open to inspection pursuant to paragraph (3).

(w)(1) Records of the Major Risk Medical Insurance Program that are related to activities governed by Chapter 14 (commencing with Section 10700) of Part 2 of Division 2 of the Insurance Code, and that reveal for agreement the deliberative processes, discussions, communications, or any other portion of the negotiations with health plans, or the impressions, opinions, recommendations, meeting minutes, research, work product, theories, or strategy of the board or its staff, or records that provide instructions, advice, or training to employees.

(2) Except for the portion of a contract that contains the rates of payment, contracts for health coverage entered into pursuant to Chapter 14 (commencing with Section 10700) of Part 2 of Division 2 of the Insurance Code, on or after January 1, 1993, shall be open to inspection one year after they have been fully executed.

(3) Notwithstanding any other provision of law, the entire contract or amendments to a contract shall be open to inspection by the Joint Legislative Audit Committee. The committee shall maintain the confidentiality of the contracts and amendments thereto, until the contract or amendments to a contract are open to inspection pursuant to paragraph (2).

(x) Financial data contained in applications for registration, or registration renewal, as a service contractor filed with the Director of the Department of Consumer Affairs pursuant to Chapter 20 (commencing with Section 9800) of Division 3 of the Business and Professions Code, for the purpose of establishing the service contractor's net worth, or financial data regarding the funded accounts held in escrow for service contracts held in force in this state by a service contractor.

(y)(1) Records of the Managed Risk Medical Insurance Board related to activities governed by Part 6.2 (commencing with Section 12693) or Part 6.4 (commencing with Section 12699.50) of Division 2 of the Insurance Code * * * that reveal the deliberative processes, discussions, communications, or any other portion of the negotiations with health plans, or the impressions, opinions, recommendations, meeting minutes, research, work product, theories, or strategy of the board or its staff, or records that provide instructions, advice, or training to employees.

(2)(A) Except for the portion of a contract that contains the rates of payment, contracts entered into pursuant to Part 6.2 (commencing with Section 12693) or Part 6.4 (commencing with Section 12699.50) of Division 2 of the Insurance Code, on or after January 1, 1998, shall be open to inspection one year after they have been fully executed.

(B) In the event that a contract entered into pursuant to Part 6.2 (commencing with Section 12693) or Part 6.4 (commencing with Section 12699.50) of Division 2 of the Insurance Code is amended, the amendment shall be open to inspection one year after the amendment has been fully executed.

(3) Three years after a contract or amendment is open to inspection pursuant to this subdivision, the portion of the contract or amendment containing the rates of payment shall be open to inspection.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 101 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(4) Notwithstanding any other provision of law, the entire contract or amendments to a contract shall be open to inspection by the Joint Legislative Audit Committee. The committee shall maintain the confidentiality of the contracts and amendments thereto until the contract or amendments to a contract are open to inspection pursuant to paragraph (2) or (3).

(5) The exemption from disclosure provided pursuant to this subdivision for the contracts, deliberative processes, discussions, communications, negotiations with health plans, impressions, opinions, recommendations, meeting minutes, research, work product, theories, or strategy of the board or its staff shall also apply to the contracts, deliberative processes, discussions, communications, negotiations with health plans, impressions, opinions, recommendations, meeting minutes, research, work product, theories, or strategy of applicants pursuant to Part 6.4 (commencing with Section 12699.50) of Division 2 of the Insurance Code.

(z) Records obtained pursuant to paragraph (2) of subdivision (c) of Section 2891.1 of the Public Utilities Code.

(aa) A document prepared by or for a state or local agency that assesses its vulnerability to terrorist attack or other criminal acts intended to disrupt the public agency's operations and that is for distribution or consideration in a closed session.

\* \* \*

(bb) All information provided to the Secretary of State by a person for the purpose of registration in the Advance Health Care Directive Registry, except that those records shall be released at the request of a health care provider, a public guardian, or the registrant's legal representative.

Nothing in this section prevents any agency from opening its records concerning the administration of the agency to public inspection, unless disclosure is otherwise prohibited by law.

Nothing in this section prevents any health facility from disclosing to a certified bargaining agent relevant financing information pursuant to Section 8 of the National Labor Relations Act.

SEC. 72. Section 7072 of the Government Code is amended to read:

<< CA GOVT § 7072 >>

7072. For purposes of this chapter, the following definitions shall apply:

(a) "Department" means the Department of Housing and Community Development.

(b) "Date of original designation" means the earlier of the following:

(1) The date the eligible area receives designation as an enterprise zone by the department pursuant to this chapter.

(2) In the case of an enterprise zone deemed designated pursuant to subdivision (e) of Section 7073, the date the enterprise zone or program area received original designation by the former Trade and Commerce Agency pursuant to Chapter 12.8 (commencing with Section 7070) or Chapter 12.9 (commencing with Section 7080), as those chapters read prior to January 1, 1997.

(c) "Eligible area" means any of the following:

(1) An area designated as an enterprise zone pursuant to Chapter 12.8 (commencing with Section 7070), as it read prior to January 1, 1997, or as a targeted economic development area, neighborhood development area, or program area pursuant to Chapter 12.9 (commencing with Section 7080), as it read prior to January 1, 1997.

(2) A geographic area that, based upon the determination of the department, fulfills at least one of the following criteria:

(A) The proposed geographic area meets the Urban Development Action Grant criteria of the United States Department of Housing and Urban Development.

(B) The area within the proposed zone has experienced plant closures within the past two years affecting more than 100 workers.

(C) The city or county has submitted material to the department for a finding that the proposed geographic area meets criteria of economic distress related to those used in determining eligibility under the Urban Development Action Grant Program and is therefore an eligible area.

(D) The area within the proposed zone has a history of gang-related activity, whether or not crimes of violence have been committed.

(3) A geographic area that meets at least two of the following criteria:

(A) The census tracts within the proposed zone have an unemployment rate not less than 3 percentage points above the statewide average for the most recent calendar year as determined by the Employment Development Department.

(B) The county of the proposed zone has more than 70 percent of the children enrolled in public school participating in the federal free lunch program.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 102 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(C) The median household income for a family of four within the census tracts of the proposed zone does not exceed 80 percent of the statewide median income for the most recently available calendar year.

(d) "Enterprise zone" means any area within a city, county, or city and county that is designated as such by the department in accordance with Section 7073.

(e) "Governing body" means a county board of supervisors or a city council, as appropriate.

(f) "High technology industries" includes, but is not limited to, the computer, biological engineering, electronics, and telecommunications industries.

(g) "Resident," unless otherwise defined, means a person whose principal place of residence is within a targeted employment area.

(h) "Targeted employment area" means an area within a city, county, or city and county that is composed solely of those census tracts designated by the United States Department of Housing and Urban Development as having at least 51 percent of its residents of low- or moderate-income levels, using either the most recent United States Department of Census data available at the time of the original enterprise zone application or the most recent census data available at the time the targeted employment area is designated to determine that eligibility. The purpose of a "targeted employment area" is to encourage businesses in an enterprise zone to hire eligible residents of certain geographic areas within a city, county, or city and county. A targeted employment area may be, but is not required to be, the same as all or part of an enterprise zone. A targeted employment area's boundaries need not be contiguous. A targeted employment area does not need to encompass each eligible census tract within a city, county, or city and county. The governing body of each city, county, or city and county that has jurisdiction of the enterprise zone shall identify those census tracts whose residents are in the most need of this employment targeting. Only those census tracts within the jurisdiction of the city, county, or city and county that has jurisdiction of the enterprise zone may be included in a targeted employment area.

At least a part of each eligible census tract within a targeted employment area shall be within the territorial jurisdiction of the city, county, or city and county that has jurisdiction for an enterprise zone. If an eligible census tract encompasses the territorial jurisdiction of two or more local governmental entities, all of those entities shall be a party to the designation of a targeted employment area. However, any one or more of those entities, by resolution or ordinance, may specify that it shall not participate in the application as an applicant, but shall agree to complete all actions stated within the application that apply to its jurisdiction, if the area is designated.

Each local governmental entity of each city, county, or city and county that has jurisdiction of an enterprise zone shall approve, by resolution or ordinance, the boundaries of its targeted employment area, regardless of whether a census tract within the proposed targeted employment area is outside the jurisdiction of the local governmental entity.

SEC. 73. Section 7076.2 of the Government Code is amended to read:

<< CA GOVT § 7076.2 >>

7076.2. (a) The department shall dedesignate a zone on the first day of the month immediately following the date upon which the department has received from each jurisdiction comprising the zone a resolution, adopted by the governing body of that jurisdiction, requesting the dedesignation of the zone. Upon the dedesignation of a zone pursuant to this subdivision, the department shall initiate an application process for a new designation as provided in Section 7073.

(b) The department shall exclude from a zone that portion of that zone that is located within a jurisdiction on the first day of the month immediately following the date upon which the department receives from that jurisdiction a resolution, adopted by the governing body of that jurisdiction, requesting that exclusion. Any jurisdiction that provides notice to the department pursuant to this subdivision shall concurrently provide a copy of that notice to all other jurisdictions that comprise the affected zone.

(c) Any business, located within any jurisdiction that comprises a zone that has been dedesignated or within a jurisdiction that has excluded itself from a zone, that has elected to avail itself of any state tax incentive specifically applicable to a zone for any taxable or income year beginning prior to the dedesignation of the zone or the exclusion of a jurisdiction comprising the zone may, to the extent the business is still otherwise eligible for those incentives, continue to avail itself of those incentives for a period equal to the remaining life of the zone. However, any business, located within any jurisdiction that comprises a zone that has been dedesignated or within a jurisdiction that has excluded itself from a zone, that has not availed itself of any state tax incentive in the manner described in the preceding sentence may not, after dedesignation of the zone, avail itself of any state incentive specifically applicable to a zone.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 103 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(d) For purposes of this section, "dedesignation" is defined as set forth in paragraph (1) of subdivision (d) of Section 7076.1.

 SEC. 74. Section 7099 of the Government Code is amended to read:

<< CA GOVT § 7099 >>

 7099. (a) The Department of Housing and Community Development may approve a proposed expansion of a targeted tax area subject to the following conditions:

 (1) The governing body of each city and county in which the targeted tax area is located approves an ordinance or resolution approving the proposed expansion of the area.

 (2) The department determines that the proposed additional territory meets the criteria specified in subdivision (a) of Section 7097 to the same extent as the existing territory of the targeted tax area.

 (3) The proposed expansion, in combination with any previous expansions of the targeted tax area, does not exceed 15 percent of the size of the area on the date of its original designation.

 (4) The expansion area is contiguous to the targeted tax area.

 (5) The expansion meets the criteria established in paragraphs (1), (2), and (3) of subdivision (b) of Section 7074.

 (b) The department shall respond in writing to any application for a proposed expansion of the targeted tax area within 90 days of the date on which the application is deemed complete.

 SEC. 75. Section 7110 of the Government Code is amended to read:

<< CA GOVT § 7110 >>

 7110. (a) The governing body may, either by ordinance or resolution, propose an eligible area within its respective jurisdiction as the geographic area for a local agency military base recovery area. A county may propose an area within the unincorporated area as the geographic area for a local agency military base recovery area, but shall not propose an area within an incorporated area. A city may propose an area within the incorporated area as the geographic area for a local agency military base recovery area, but may not propose an area within an unincorporated area. A city and county may propose an area within the city and county for designation as a local agency military base recovery area. This proposed geographic area shall be based upon findings by the governing body that the area meets the criteria in Section 7111 and that the designation as a local agency military base recovery area is necessary in order to assist in attracting private sector investment in the area. The governing body shall establish definitive boundaries, not to exceed former base property, for the area to be included in the application for designation and, if designated by the department, the designation shall be binding for the period described in Section 7110.5.

 (b) Following the application for designation of a local agency military base recovery area, the governing body shall apply to the department for designation. The department shall adopt regulations and guidelines concerning the necessary contents of each application for designation.

 (c) Any governing body with an eligible area within its jurisdiction may complete a preliminary application.

 (d) In designating a local agency military base recovery area, the department shall select from the applications submitted those proposed local agency military base recovery areas which, based on a comparison of those applications, propose the most effective, innovative, and comprehensive regulatory, tax, program, and other incentives to attract private sector investment in the proposed local agency military base recovery area. For purposes of this * * * subdivision, the following terms have the following meanings:

 (1) "Regulatory incentives" includes, but is not limited to, the elimination or reduction of fees for applications, permits, and local government facilities and services; and the establishment of a streamlined permit process.

 (2) "Tax incentives" includes, but is not limited to, the elimination or reduction of business license taxes and utility user taxes.

 (3) "Program" and "other incentives" may include, but are not limited to, the provision or expansion of infrastructure; the targeting of federal block grant moneys, including small cities, education, and health and welfare block grants; the targeting of economic development grants and loan moneys, including grant and loan moneys provided by the federal Urban Development Action Grant program and the federal Economic Development Administration; the targeting of state and federal job disadvantaged and vocational education grant moneys, including moneys provided by the federal Job Partnership Training Act of 1982; the targeting of federal or state transportation grant moneys; and the targeting of federal or state low-income housing and rental assistance moneys.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 104 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(e) The department shall also consider the following:

(1) The unemployment rate for the area under the jurisdiction of the local governing body.

(2) The number of civilian and military jobs lost as a result of the base closure when compared to the number of jobs available in the area.

(3) Whether the local agency has a comprehensive economic development plan that is consistent with the reuse plan.

(4) Whether the local agency has a prepared plan for appropriate hazardous waste management facilities as an integral part of the base and shall give extra consideration for any plan that includes provisions for critically needed hazardous waste facilities.

(5) Whether the governing body has resolved, as part of the reuse plan approval, to prepare a program environmental impact report that is in compliance with the California Environmental Quality Control Act and associated guidelines.

(f) In evaluating applications for designation, the department shall ensure that applications are not disqualified solely because of technical deficiencies and shall provide applicants with an opportunity to correct the deficiencies. Applications shall be disqualified if the deficiencies are not corrected within two weeks. The department shall provide technical assistance to applicants that request it.

SEC. 76. Section 7113.5 of the Government Code is amended to read:

<< CA GOVT § 7113.5 >>

7113.5. When selecting successful applicants for a local agency military base recovery area, the department shall limit the number of local agency military base recovery areas to eight, which shall be awarded by the following criteria, in addition to the criteria set forth in Section 7111:

(a) The department shall designate at least one local agency military base recovery area in each region.

(b) If the department finds that none of the applications in a competition is satisfactory in meeting the selection criteria, the department shall inform all applicants on the deficiencies in their application and shall reopen competition for a period not to exceed six months. Local governing bodies who originally applied * * * may reapply in the new competition.

(c) If, after following the procedures specified in * * * subdivision (b), the department determines that * * * no applications * * * are satisfactory, the department may not designate a local agency military base recovery area.

(d) Eligible bases shall compete for approval of a local agency military base recovery area against other eligible bases. In any event, not less than one area shall be designated from each region.

SEC. 77. Section 8592.4 of the Government Code is amended to read:

<< CA GOVT § 8592.4 >>

8592.4. (a) The committee shall determine which state public safety departments listed in subdivision (b) of Section 8592.1 need new or upgraded communication equipment and shall establish a program for equipment purchase. In establishing this program, the committee shall recommend the purchase of * * * equipment that will enable state agencies to commence conforming to accepted industry standards for interoperability specified in subdivision (a) of Section 8592.5.

(b) This section may not be construed to mandate that a state or local governmental agency affected thereby is required to compromise its immediate mission or ability to function and carry out its existing responsibilities.

SEC. 78. Section 8875.10 of the Government Code is amended to read:

<< CA GOVT § 8875.10 >>

8875.10. (a) Notwithstanding any other provision of law, a city or county may not impose any additional building or site conditions, including, but not limited to, parking or other onsite or offsite requirements, fees, or exactions, on or before the issuance of a building permit that is necessary for the owner of a potentially hazardous building to conduct seismic-related improvements to that building in order for that building to meet the requirements of a mitigation program established pursuant to Section 8875.1 and adopted pursuant to Section 8875.2, if the building or site conditions do not relate to, or further the purpose of, seismic improvements to the building and the improvements comply with applicable building codes and meet or exceed the requirements of state and federal law and regulations that would otherwise apply.

(b) This section shall not apply to any changes in use, design, or other building features that are unrelated to the seismic improvements. This section shall also not apply to a request for other entitlements for the project, including, but not limited

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 105 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

to, a general plan amendment, zone change, or approval pursuant to the Subdivision Map Act (Division 2 (commencing with Section 66410) of Title 7 [1].

(c) This section shall remain in effect only until January 1, 2009, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2009, deletes or extends that date.

SEC. 79. Section 12599 of the Government Code is amended to read:

<< CA GOVT § 12599 >>

12599. (a) "Commercial fundraiser for charitable purposes" * * * means any individual, corporation, unincorporated association, or other legal entity who for compensation does any of the following:

(1) Solicits funds, assets, or property in this state for charitable purposes.

(2) As a result of a solicitation of funds, assets, or property in this state for charitable purposes, receives or controls the funds, assets, or property solicited for charitable purposes.

(3) Employs, procures, or engages any compensated person to solicit, receive, or control funds, assets, or property for charitable purposes.

A commercial fundraiser for charitable purposes shall include any person, association of persons, corporation, or other entity that obtains a majority of its inventory for sale by the purchase, receipt, or control for resale to the general public, of salvageable personal property solicited by an organization qualified to solicit donations pursuant to Section 148.3 of the Welfare and Institutions Code.

A commercial fundraiser for charitable purposes shall not include a "trustee" as defined in Section 12582 or 12583, a "charitable corporation" as defined in Section 12582.1, or any employee thereof. A commercial fundraiser for charitable purposes shall not include an individual who is employed by or under the control of a commercial fundraiser for charitable purposes registered with the Attorney General. A commercial fundraiser for charitable purposes shall not include any federally insured financial institution that holds as a depository funds received as a result of a solicitation for charitable purposes.

As used in this section, "charitable purposes" includes any solicitation in which the name of any organization of law enforcement personnel, firefighters, or other persons who protect the public safety is used or referred to as an inducement for transferring any funds, assets, or property, unless the only expressed or implied purpose of the solicitation is for the sole benefit of the actual active membership of the organization.

(b) A commercial fundraiser for charitable purposes shall, prior to soliciting any funds, assets, or property, including salvageable personal property, in California for charitable purposes, or prior to receiving and controlling any funds, assets, or property, including salvageable personal property, as a result of a solicitation in this state for charitable purposes, register with the Attorney General's Registry of Charitable Trusts on a registration form provided by the Attorney General. Renewals of registration shall be filed with the Registry of Charitable Trusts by January 15 of each calendar year in which the commercial fundraiser for charitable purposes does business and shall be effective for one year. A registration or renewal fee of two hundred dollars ($200) shall be required for registration of a commercial fundraiser for charitable purposes, and shall be payable by certified or cashier's check to the Attorney General's Registry of Charitable Trusts at the time of registration or renewal. The Attorney General may adjust the annual registration or renewal fee as needed pursuant to this section. The Attorney General's Registry of Charitable Trusts may grant extensions of time to file annual registration as required, pursuant to subdivision (b) of Section 12586.

(c) A commercial fundraiser for charitable purposes shall file with the Attorney General's Registry of Charitable Trusts an annual financial report on a form provided by the Attorney General, accounting for all funds collected pursuant to any solicitation for charitable purposes during the preceding calendar year. The annual financial report shall be filed with the Attorney General's Registry of Charitable Trusts no later than 30 days after the close of the preceding calendar year.

(d) The contents of the forms for annual registration and annual financial reporting by commercial fundraisers for charitable purposes shall be established by the Attorney General in a manner consistent with the procedures set forth in subdivisions (a) and (b) of Section 12586. The annual financial report shall require a detailed, itemized accounting of funds, assets, or property, solicited for charitable purposes on behalf of each charitable organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code or for each charitable purpose during the accounting period, and shall include, among other data, the following information for funds, assets, or property, solicited by the commercial fundraiser for charitable purposes:

(1) Total revenue.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 106 of 697

(2) The fee or commission charged by the commercial fundraiser for charitable purposes.

(3) Salaries paid by the commercial fundraiser for charitable purposes to its officers and employees.

(4) Fundraising expenses.

(5) Distributions to the identified charitable organization or purpose.

(6) The names and addresses of any director, officer, or employee of the commercial fundraiser for charitable purposes who is a director, officer, or employee of any charitable organization listed in the annual financial report.

(e) A commercial fundraiser for charitable purposes that obtains a majority of its inventory for sale by the purchase, receipt, or control for resale to the general public, of salvageable personal property solicited by an organization qualified to solicit donations pursuant to Section 148.3 of the Welfare and Institutions Code shall file with the Attorney General's Registry of Charitable Trusts, and not with the sheriff of any county, an annual financial report on a form provided by the Attorney General that is separate and distinct from forms filed by other commercial fundraisers for charitable purposes pursuant to subdivisions (c) and (d).

(f) It shall be unlawful for any commercial fundraiser for charitable purposes to solicit funds in this state for charitable purposes unless the commercial fundraiser for charitable purposes has complied with the registration or annual renewal and financial reporting requirements of this article. Failure to comply with these registration or annual renewal and financial reporting requirements shall be grounds for injunction against solicitation in this state for charitable purposes and other civil remedies provided by law.

(g) A commercial fundraiser for charitable purposes is a constructive trustee for charitable purposes as to all funds collected pursuant to solicitation for charitable purposes and shall account to the Attorney General for all funds. A commercial fundraiser for charitable purposes is subject to the Attorney General's supervision and enforcement over charitable funds and assets to the same extent as a trustee for charitable purposes under this article.

(h) Not less than 10 working days prior to the commencement of each solicitation campaign, event, or service, or not later than commencement of solicitation for solicitations to aid victims of emergency hardship or disasters, a commercial fundraiser for charitable purposes shall file with the Attorney General's Registry of Charitable Trusts a notice on a form prescribed by the Attorney General that sets forth all of the following:

(1) The name, address, and telephone number of the commercial fundraiser for charitable purposes.

(2) The name, address, and telephone number of the charitable organization with whom the commercial fundraiser has contracted.

(3) The fundraising methods to be used.

(4) The projected dates when performance under the contract will commence and terminate.

(5) The name, address, and telephone number of the person responsible for directing and supervising the work of the commercial fundraiser under the contract.

(i) There shall be a written contract between a commercial fundraiser for charitable purposes and a charitable organization for each solicitation campaign, event, or service, that shall be signed by the authorized contracting officer for the commercial fundraiser and by an official of the charitable organization who is authorized to sign by the organization's governing body. The contract shall be available for inspection by the Attorney General and shall contain all of the following provisions:

(1) The legal name and address of the charitable organization as registered with the Registry of Charitable Trusts, unless the charitable organization is exempt from registration.

(2) A statement of the charitable purpose for which the solicitation campaign, event, or service is being conducted.

(3) A statement of the respective obligations of the commercial fundraiser and the charitable organization.

(4) If the commercial fundraiser is to be paid a fixed fee, a statement of the fee to be paid to the commercial fundraiser and a good faith estimate of what percentage the fee will constitute of the total contributions received. The contract shall clearly disclose the assumptions upon which the estimate is based, and the stated assumptions shall be based upon all of the relevant facts known to the commercial fundraiser regarding the solicitation to be conducted by the commercial fundraiser.

(5) If a percentage fee is to be paid to the commercial fundraiser, a statement of the percentage of the total contributions received that will be remitted to or retained by the charitable organization, or, if the solicitation involves the sale of goods or services or the sale of admissions to a fundraising event, the percentage of the purchase price that will be remitted to the charitable organization. The stated percentage shall be calculated by subtracting from contributions received and sales receipts

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 107 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

not only the commercial fundraiser's fee, but also any additional amounts that the charitable organization is obligated to pay as fundraising costs.

(6) The effective and termination dates of the contract and the date solicitation activity is to commence within the state.

(7) A provision that requires that each contribution in the control or custody of the commercial fundraiser shall in its entirety and within five working days of its receipt comply with either of the following:

(A) Be deposited in an account at a bank or other federally insured financial institution that is solely in the name of the charitable organization and over which the charitable organization has sole control of withdrawals.

(B) Be delivered to the charitable organization in person, by United States express mail, or by another method of delivery providing for overnight delivery.

(8) A statement that the charitable organization exercises control and approval over the content and frequency of any solicitation.

(9) If the commercial fundraiser proposes to make any payment in cash or in kind to any person or legal entity to secure any person's attendance at, or sponsorship, approval, or endorsement of, a charity fundraising event, the maximum dollar amount of those payments shall be set forth in the contract. "Charity fundraising event" means any gathering of persons, including, but not limited to, a party, banquet, concert, or show, that is held for the purpose or claimed purpose of raising funds for any charitable purpose or organization.

(10) A provision that the charitable organization has the right to cancel the contract without cost, penalty, or liability for a period of 10 days following the date on which the contract is executed; that the charitable organization may cancel the contract by serving a written notice of cancellation on the commercial fundraiser; that, if mailed, service shall be by certified mail, return receipt requested, and cancellation shall be deemed effective upon the expiration of five calendar days from the date of mailing; that any funds collected after effective notice that the contract has been canceled shall be deemed to be held in trust for the benefit of the charitable organization without deduction for costs or expenses of any nature; and that the charitable organization shall be entitled to recover all funds collected after the date of cancellation.

(11) A provision that, following the initial 10–day cancellation period, the charitable organization may terminate the contract by giving 30 days' written notice; that, if mailed, service of the notice shall be by certified mail, return receipt requested, and shall be deemed effective upon the expiration of five calendar days from the date of mailing; and that, in the event of termination under this subdivision, the charitable organization shall be liable for services provided by the commercial fundraiser up to 30 days after the effective service of the notice.

(12) A provision that, following the initial 10–day cancellation period, the charitable organization may terminate the contract at any time upon written notice, without payment or compensation of any kind to the commercial fundraiser, if the commercial fundraiser or its agents, employees, or representatives (A) make any material misrepresentations in the course of solicitations or with respect to the charitable organization, (B) are found by the charitable organization to have been convicted of a crime arising from the conduct of a solicitation for a charitable organization or purpose punishable as a misdemeanor or a felony, or (C) otherwise conduct fundraising activities in a manner that causes or could cause public disparagement of the charitable organization's good name or good will.

(13) Any other information required by the regulations of the Attorney General.

(j) It shall be unlawful for a commercial fundraiser for charitable purposes to not disclose the percentage of total fundraising expenses of the fundraiser upon receiving a written or oral request from a person solicited for a contribution for a charitable purpose. "Percentage of total fundraising expenses," as used in this section, means the ratio of the total expenses of the fundraiser to the total revenue received by the fundraiser for the charitable purpose for which funds are being solicited, as reported on the most recent financial report filed with the Attorney General's Registry of Charitable Trusts. A commercial fundraiser shall disclose this information in writing within five working days from receipt of a request by mail or facsimile. A commercial fundraiser shall orally disclose this information immediately upon a request made in person or in a telephone conversation and shall follow this response with a written disclosure within five working days. Failure to comply with the requirements of this subdivision shall be grounds for an injunction against solicitation in this state for charitable purposes and other civil remedies provided by law.

(k) If the Attorney General issues a report to the public containing information obtained from registration forms or financial report forms filed by commercial fundraisers for charitable purposes, there shall be a separate section concerning commercial fundraisers for charitable purposes that obtain a majority of their inventory for sale by the purchase, receipt, or control for resale

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 108 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

to the general public, of salvageable personal property solicited \* \* \* by an organization qualified to solicit donations pursuant to Section 148.3 of the Welfare and Institutions Code. The report shall include an explanation of the distinctions between these thrift store operations and other types of commercial fundraising.

 (l) No person may act as a commercial fundraiser for charitable purposes if that person, any officer or director of that person's business, any person with a controlling interest in the business, or any person the commercial fundraiser employs, engages, or procures to solicit for compensation, has been convicted by a court of any state or the United States of a crime arising from the conduct of a solicitation for a charitable organization or purpose punishable as a misdemeanor or felony.

 (m) A commercial fundraiser for charitable purposes shall not solicit in the state on behalf of a charitable organization unless that charitable organization is registered or is exempt from registration with the Attorney General's Registry of Charitable Trusts.

 (n) If any provision of this section or the application thereof to any person or circumstances is held invalid, that invalidity shall not affect any other provision or application of this section that can be given effect without the invalid provision or application, and to this end the provisions of this section are severable.

 SEC. 80. Section 12715 of the Government Code is amended to read:

<< CA GOVT § 12715 >>

 12715. (a) The Controller, acting in consultation with the California Gambling Control Commission, shall divide the County Tribal Casino Account for each county that has gaming devices that are subject to an obligation to make contributions to the Indian Gaming Special Distribution Fund into a separate account for each tribe that operates a casino within the county. These accounts shall be known as Individual Tribal Casino Accounts, and funds may be released from these accounts to make grants selected by an Indian Gaming Local Community Benefit Committee pursuant to the method established by this section to local jurisdictions impacted by tribal casinos. Each Individual Tribal Casino Account shall be funded in proportion to the amount that each individual tribe paid in the prior fiscal year to the Indian Gaming Special Distribution Fund.

 (b)(1) There is hereby created in each county in which Indian gaming is conducted an Indian Gaming Local Community Benefit Committee. The selection of all grants from each Individual Tribal Casino Account or County Tribal Casino Account shall be made by each county's Indian Gaming Local Community Benefit Committee. In selecting grants, the Indian Gaming Local Community Benefit Committee shall follow the priorities established in subdivision (g). This committee has the following additional responsibilities:

 (A) Establishing all application policies and procedures for grants from the Individual Tribal Casino Account or County Tribal Casino Account.

 (B) Assessing the eligibility of applications for grants from local jurisdictions impacted by tribal gaming operations.

 (C) Determining the appropriate amount for reimbursement from the aggregate county tribal account of the demonstrated costs incurred by the county for administering the grant programs. The reimbursement for county administrative costs may not exceed 2 percent of the aggregate county tribal account in any given fiscal year.

 (2) Except as provided in Section 12715.5, the Indian Gaming Local Community Benefit Committee shall be composed of seven representatives, consisting of the following:

 (A) Two representatives from the county, selected by the county board of supervisors.

 (B) Three elected representatives from cities located within four miles of a tribal casino in the county, selected by the county board of supervisors. In the event that there are no cities located within four miles of a tribal casino in the county, other local representatives may be selected upon mutual agreement by the county board of supervisors and a majority of the tribes paying into the Indian Gaming Special Distribution Fund in the county. When there are no cities within four miles of a tribal casino in the county, and when the Indian Gaming Local Community Benefit Committee acts on behalf of a county where no tribes pay into the Indian Gaming Special Distribution Fund, other local representatives may be selected upon mutual agreement by the county board of supervisors and a majority of the tribes operating casinos in the county.

 (C) Two representatives selected upon the recommendation of a majority of the tribes paying into the Indian Gaming Special Distribution Fund in each county. When an Indian Gaming Local Community Benefit Committee acts on behalf of a county where no tribes pay into the Indian Gaming Special Distribution Fund, the two representatives may be selected upon the recommendation of the tribes operating casinos in the county.

 (c) Sixty percent of each individual tribal casino account shall be available for nexus grants on a yearly basis to cities and counties impacted by tribes that are paying into the Indian Gaming Special Distribution Fund, according to the four-part nexus

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 109 of 697

test described in paragraph (1). Grant awards shall be selected by each county's Indian Gaming Local Community Benefit Committee and shall be administered by the county. Grants may be awarded on a multiyear basis, and these multiyear grants shall be accounted for in the grant process for each year.

(1) A nexus test based on the geographical proximity of a local government jurisdiction to an individual Indian land upon which a tribal casino is located shall be used by each county's Indian Gaming Local Community Benefit Committee to determine the relative priority for grants, using the following criteria:

(A) Whether the local government jurisdiction borders the Indian lands on all sides.

(B) Whether the local government jurisdiction partially borders Indian lands.

(C) Whether the local government jurisdiction maintains a highway, road, or other thoroughfare that is the predominant access route to a casino that is located within four miles.

(D) Whether all or a portion of the local government jurisdiction is located within four miles of a casino.

(2) Fifty percent of the amount specified in subdivision (c) shall be awarded in equal proportions to local government jurisdictions that meet all four of the nexus test criteria in paragraph (1). If no eligible local government jurisdiction satisfies this requirement, the amount specified in this paragraph shall be made available for nexus grants in equal proportions to local government jurisdictions meeting the requirements of paragraph (3) or (4).

(3) Thirty percent of the amount specified in subdivision (c) shall be awarded in equal proportions to local government jurisdictions that meet three of the nexus test criteria in paragraph (1). If no eligible local government jurisdiction satisfies this requirement, the amount specified in this paragraph shall be made available for nexus grants in equal proportions to local government jurisdictions meeting the requirements of paragraph (2) or (4).

(4) Twenty percent of the amount specified in subdivision (c) shall be awarded in equal proportions to local government jurisdictions that meet two of the nexus test criteria in paragraph (1). If no eligible local government jurisdiction satisfies this requirement, the amount specified in this paragraph shall be made available for nexus grants in equal proportions to local government jurisdictions meeting the requirements of paragraph (2) or (3).

(d) Twenty percent of each Individual Tribal Casino Account shall be available for discretionary grants to local jurisdictions impacted by tribes that are paying into the Indian Gaming Special Distribution Fund. These discretionary grants shall be made available to all local jurisdictions in the county irrespective of any nexus to impacts from any particular tribal casino, as described in paragraph (1) of subdivision (c). Grant awards shall be selected by each county's Indian Gaming Local Community Benefit Committee and shall be administered by the county. Grants may be awarded on a multiyear basis, and these multiyear grants shall be accounted for in the grant process for each year.

(e)(1) Twenty percent of each Individual Tribal Casino Account shall be available for discretionary grants to local jurisdictions impacted by tribes that are not paying into the Indian Gaming Special Distribution Fund. These grants shall be made available to local jurisdictions in the county irrespective of any nexus to impacts from any particular tribal casino, as described in paragraph (1) of subdivision (c), and irrespective of whether the impacts presented are from a tribal casino that is not paying into the Indian Gaming Special Distribution Fund. Grant awards shall be selected by each county's Indian Gaming Local Community Benefit Committee and shall be administered by the county. Grants may be awarded on a multiyear basis, and * * * these multiyear grants shall be accounted for in the grant process for each year.

(A) Grants awarded pursuant to this subdivision are limited to addressing service-oriented impacts and providing assistance with one-time large capital projects related to Indian gaming impacts.

(B) Grants shall be subject to the sole sponsorship of the tribe that pays into the Indian Gaming Special Distribution Fund and the recommendations of the Indian Gaming Local Community Benefit Committee for that county.

(2) If an eligible county does not have a tribal casino operated by a tribe that does not pay into the Indian Gaming Special Distribution Fund, the money available for discretionary grants under this subdivision shall be available for distribution pursuant to subdivision (d).

(f)(1) For each county that does not have gaming devices subject to an obligation to make payments to the Indian Gaming Special Distribution Fund, funds may be released from the county's County Tribal Casino Account to make grants selected by the county's Indian Gaming Local Community Benefit Committee pursuant to the method established by this section to local jurisdictions impacted by tribal casinos. These grants shall be made available to local jurisdictions in the county irrespective of any nexus to any particular tribal casino. These grants shall follow the priorities specified in subdivision (g).

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 110 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(2) Funds not allocated from a county tribal casino account by the end of each fiscal year shall revert back to the Indian Gaming Special Distribution Fund. Moneys allocated for the 2003–04 fiscal year shall be eligible for expenditure through December 31, 2004.

(g) The following uses shall be the priorities for the receipt of grant money from Individual Tribal Casino Accounts: law enforcement, fire services, emergency medical services, environmental impacts, water supplies, waste disposal, behavioral, health, planning and adjacent land uses, public health, roads, recreation and youth programs, and child care programs.

(h) All grants from Individual Tribal Casino Accounts shall be made only upon the affirmative sponsorship of the tribe paying into the Indian Gaming Special Distribution Fund from whose Individual Tribal Casino Account the grant moneys are available for distribution. Tribal sponsorship shall confirm that the grant application has a reasonable relationship to a casino impact and satisfies at least one of the priorities listed in subdivision (g). A grant may not be made for any purpose that would support or fund, directly or indirectly, any effort related to the opposition or challenge to Indian gaming in the state, and, to the extent any awarded grant is utilized for any prohibited purpose by any local government, upon notice given to the county by any tribe from whose Individual Tribal Casino Account the awarded grant went toward that prohibited use, the grant shall terminate immediately and any moneys not yet used shall again be made available for qualified nexus grants.

(i) A local government jurisdiction that is a recipient of a grant from an Individual County Tribal Casino Account or a County Tribal Casino Account shall provide notice to the public, either through a slogan, signage, or other mechanism, * * * stating that the local government project has received funding from the Indian Gaming Special Distribution Fund and * * * further identifying the particular Individual Tribal Casino Account from which the grant derives.

(j)(1) Each county's Indian Gaming Local Community Benefit Committee shall submit to the Controller a list of approved projects for funding from Individual Tribal Casino Accounts. Upon receipt of this list, the Controller shall release the funds directly to the local government entities for which a grant has been approved by the committee.

(2) Funds not allocated from an Individual Tribal Casino Account by the end of each fiscal year shall revert back to the Indian Gaming Special Distribution Fund. Moneys allocated for the 2003–04 fiscal year shall be eligible for expenditure through December 31, 2004.

<< CA GOVT pr. 14557 (c. hd.) >>

SEC. 81. The heading of Chapter 5 (commencing with Section 14557) is added to Part 5.3 of Division 3 of Title 2 of the Government Code, to read:

Chapter 5. Suspension of Article XIX B Transfers

SEC. 82. Section 17555 of the Government Code is amended to read:

<< CA GOVT § 17555 >>

17555. (a) Not later than 30 days after hearing and deciding upon a test claim pursuant to subdivision (a) of Section 17551, the commission shall notify the appropriate Senate and Assembly policy and fiscal committees, the Legislative Analyst, the Department of Finance, and the Controller of that decision.

(b) For purposes of this section, the "appropriate policy committee" means the policy committee that has jurisdiction over the subject matter of the statute, regulation, or executive order, and in which bills relating to that subject matter would have been heard.

SEC. 83. Section 20281.5 of the Government Code is amended to read:

<< CA GOVT § 20281.5 >>

20281.5. (a) Notwithstanding Section 20281, a person who becomes a state miscellaneous or state industrial member of the system on or after the effective date of this section because the person is first employed by the state and qualifies for membership shall be subject to the provisions of this section.

(b) Members subject to this section shall not accrue credit for service in the system and shall not make employee contributions to the system, including the contributions set forth in Section 20677.4, for employment with the state until the first day of the first pay period commencing 24 months after becoming a member of the system.

Case 3:17-cv-07357-RS  Document 163-3  Filed 01/21/21  Page 111 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(c) Notwithstanding subdivision (a), this section shall not apply to any of the following:

(1) Persons who are already members or annuitants of the system at the time they are first employed by the state.

(2) Employees of the California State University, or the legislative or judicial branch of state government.

(3) Members of the Judges' Retirement System, the Judges' Retirement System II, the Legislators' Retirement System, the State Teachers' Retirement System, or the University of California Retirement Plan.

(4) Persons who are members of a reciprocal retirement system and whose employment was subject to a reciprocal retirement system within the six months prior to membership in this system.

(5) Persons whose service is not included in the federal system.

(6) Persons who are employed by the Department of the California Highway Patrol as students at the department's training school established pursuant to Section 2262 of the Vehicle Code.

(7) Persons who have ceased to be members pursuant to Section 20340 or 21075.

(d) Any regulations adopted by the board to implement the requirements of this section shall not be subject to the review and approval of the Office of Administrative Law, pursuant to Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3. The regulations shall become effective immediately upon filing with the Secretary of State.

SEC. 84. Section 20610 of the Government Code is amended to read:

<< CA GOVT § 20610 >>

20610. (a) Every county superintendent of schools shall enter into a contract with the board for the inclusion in this system of (1) all of the employees of the office of county superintendent whose compensation is paid from the county school service fund other than employees electing pursuant to Section 1313 of the Education Code to continue in membership in a county system; and (2) all of the employees of school districts and community college districts existing on July 1, 1949, or thereafter formed, within his or her jurisdiction, other than school districts that are contracting agencies or that maintain a district, joint district, or other local retirement system, with respect to service rendered in a status in which they are not eligible for membership in the State Teachers' Retirement Plan. The effective date of each contract shall * * * not be later than July 1, 1949. For the purposes of this part, those school district employees shall be considered * * * employees of the county superintendent of schools having jurisdiction over the school district by which they are employed and service to the district shall be considered * * * service to the county superintendent of schools.

(b) If a charter school chooses to participate in the system, all employees of the charter school who qualify for membership in the system shall be covered under the system and all provisions of this part shall apply in the same manner as if the charter school were a public school in the school district that granted the charter.

SEC. 85. Section 21224 of the Government Code is amended to read:

<< CA GOVT § 21224 >>

21224. (a) A retired person may serve without reinstatement from retirement or loss or interruption of benefits provided by this system upon appointment by the appointing power of a state agency or any other employer either during an emergency to prevent stoppage of public business or because the retired employee has skills needed in performing work of limited duration. These appointments shall not exceed a total for all employers of 960 hours in any calendar year, and the rate of pay for the employment shall not be less than the minimum, nor exceed that paid by the employer to other employees * * * performing comparable duties.

(b)(1) This section does not apply to any retired person otherwise eligible if during the 12–month period prior to an appointment described in this section the retired person received any unemployment insurance compensation arising out of prior employment subject to this section with the same employer.

(2) A retired person who accepts an appointment after receiving unemployment insurance compensation as described in this subdivision shall terminate that employment on the last day of the current pay period and shall not be eligible for reappointment subject to this section for a period of 12 months following the last day of employment. The retired person shall not be subject to Section 21202 or subdivision (b) of Section 21220.

SEC. 86. Section 22860 of the Government Code is amended to read:

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 112 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

<< CA GOVT § 22860 >>

22860. It is the policy of the Legislature that benefits provided by a health benefit plan be integrated with the benefits provided by federal or state plans for health care services for the aged in which there is federal or state financial participation. The board shall adopt rules and regulations necessary to implement this section. Notwithstanding any other provision of this part, those rules and regulations may establish exclusions and limitations with respect to benefits, different rates within health benefit plans for employees or annuitants eligible for benefits under other plans, or enrollment of those employees or annuitants in separate plans.

SEC. 87. Section 27393 of the Government Code is amended to read:

<< CA GOVT § 27393 >>

27393. (a) The Attorney General shall, in consultation with interested parties, adopt regulations for the review, approval, and oversight of electronic recording delivery systems. Regulations shall be adopted pursuant to the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3). The regulations shall comply with Section 12168.7.

(b) The regulations adopted pursuant to subdivision (a) may include, but need not be limited to, all of the following:

(1) Establishment of baseline technological and procedural specifications for electronic recording delivery systems.

(2) Requirements for security, capacity, reliability, and uniformity.

(3) Requirements as to the nature and frequency of computer security audits.

(4) A statement of a detailed and uniform definition of the term "source code" consistent with paragraph (7) of subdivision (b) of Section 27390, and as used in this article, and applicable to each county's electronic recording delivery system.

(5) Requirements for placement of a copy of the operating system, source code, compilers, and all related software associated with each county's electronic recording delivery system in an approved escrow facility prior to that system's first use.

(6) Requirements to ensure that substantive modifications to an operating system, compilers, related software, or source code are approved by the Attorney General.

(7) Procedures for initial certification of vendors offering software and other services to counties for electronic recording delivery systems.

(8) Requirements for system certification and for oversight of approved systems.

(9) Requirements for fingerprinting and criminal records checks required by Section 27395, including a list of employment positions or classifications subject to criminal records checks under subdivision (f) of that section.

(10) Requirements for uniform index information that shall be included in every digitized or digital electronic record.

(11) Requirements for protecting proprietary information accessed pursuant to subdivision (e) of Section 27394 from public disclosure.

(12) Requirements for certification under Section 27397.5.

(c) The Attorney General may promulgate any other regulations necessary to fulfill his or her obligations under this article.

(d) An electronic recording delivery system shall be subject to local inspection and review by the Attorney General. The Attorney General shall furnish a statement of any relevant findings associated with a local inspection of an electronic recording delivery system, to the county recorder and the district attorney of the affected county, and to all technology vendors associated with that system.

SEC. 88. Section 30061 of the Government Code is amended to read:

<< CA GOVT § 30061 >>

30061. (a) There shall be established in each county treasury a Supplemental Law Enforcement Services Fund (SLESF), to receive all amounts allocated to a county for purposes of implementing this chapter.

(b) In any fiscal year for which a county receives moneys to be expended for the implementation of this chapter, the county auditor shall allocate the moneys in the county's SLESF, including any interest or other return earned on the investment of those moneys, within 30 days of the deposit of those moneys into the fund, and shall allocate those moneys in accordance with the requirements set forth in this subdivision. However, the auditor shall not transfer those moneys to a recipient agency until the

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 113 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Supplemental Law Enforcement Oversight Committee certifies receipt of an approved expenditure plan from the governing board of that agency. The moneys shall be allocated as follows:

 (1) Five and * * * fifteen-hundredths percent to the county sheriff for county jail construction and operation. In the case of Madera, Napa, and Santa Clara Counties, this allocation shall be made to the county director or chief of corrections.

 (2) Five and * * * fifteen-hundredths percent to the district attorney for criminal prosecution.

 (3) Thirty-nine and seven-tenths percent to the county and the cities within the county, and, in the case of San Mateo, Kern, Siskiyou, and Contra Costa Counties, also to the Broadmoor Police Protection District, the Bear Valley Community Services District, the Stallion Springs Community Services District, the Lake Shastina Community Services District, and the Kensington Police Protection and Community Services District, in accordance with the relative population of the cities within the county and the unincorporated area of the county, and the Broadmoor Police Protection District in the County of San Mateo, the Bear Valley Community Services District and the Stallion Springs Community Services District in Kern County, the Lake Shastina Community Services District in Siskiyou County, and the Kensington Police Protection and Community Services District in Contra Costa County, as specified in the most recent January estimate by the population research unit of the Department of Finance, and as adjusted to provide a grant of at least one hundred thousand dollars ($100,000) to each law enforcement jurisdiction. For a newly incorporated city whose population estimate is not published by the Department of Finance, but that was incorporated prior to July 1 of the fiscal year in which an allocation from the SLESF is to be made, the city manager, or an appointee of the legislative body, if a city manager is not available, and the county administrative or executive officer shall prepare a joint notification to the Department of Finance and the county auditor with a population estimate reduction of the unincorporated area of the county equal to the population of the newly incorporated city by July 15, or within 15 days after the Budget Act is enacted, of the fiscal year in which an allocation from the SLESF is to be made. No person residing within the Broadmoor Police Protection District, the Bear Valley Community Services District, the Stallion Springs Community Services District, the Lake Shastina Community Services District, or the Kensington Police Protection and Community Services District shall also be counted as residing within the unincorporated area of the County of San Mateo, Kern, Siskiyou, or Contra Costa, or within any city located within those counties. The county auditor shall allocate a grant of at least one hundred thousand dollars ($100,000) to each law enforcement jurisdiction. Moneys allocated to the county pursuant to this subdivision shall be retained in the county SLESF, and moneys allocated to a city pursuant to this subdivision shall be deposited in an SLESF established in the city treasury.

 (4) Fifty percent to the county or city and county to implement a comprehensive multiagency juvenile justice plan as provided in this paragraph and to the Board of Corrections for administrative purposes. Funding for the Board of Corrections, as determined by the Department of Finance, shall not exceed two hundred seventy-five thousand dollars ($275,000). For the 2003–04 fiscal year, of the two hundred seventy-five thousand dollars ($275,000), up to one hundred seventy-six thousand dollars ($176,000) may be used for juvenile facility inspections. The juvenile justice plan shall be developed by the local juvenile justice coordinating council in each county and city and county with the membership described in Section 749.22 of the Welfare and Institutions Code. If a plan has been previously approved by the Board of Corrections, the plan shall be reviewed and modified annually by the council. The plan or modified plan shall be approved by the county board of supervisors, and in the case of a city and county, the plan shall also be approved by the mayor. The plan or modified plan shall be submitted to the Board of Corrections by May 1, 2002, and annually thereafter.

 (A) Juvenile justice plans shall include, but not be limited to, all of the following components:

 (i) An assessment of existing law enforcement, probation, education, mental health, health, social services, drug and alcohol, and youth services resources that specifically target at-risk juveniles, juvenile offenders, and their families.

 (ii) An identification and prioritization of the neighborhoods, schools, and other areas in the community that face a significant public safety risk from juvenile crime, such as gang activity, daylight burglary, late-night robbery, vandalism, truancy, controlled substances sales, firearm-related violence, and juvenile substance abuse and alcohol use.

 (iii) A local juvenile justice action strategy that provides for a continuum of responses to juvenile crime and delinquency and demonstrates a collaborative and integrated approach for implementing a system of swift, certain, and graduated responses for at-risk youth and juvenile offenders.

 (iv) Programs identified in clause (iii) that are proposed to be funded pursuant to this subparagraph, including the projected amount of funding for each program.

 (B) Programs proposed to be funded shall satisfy all of the following requirements:

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 114 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(i) Be based on programs and approaches that have been demonstrated to be effective in reducing delinquency and addressing juvenile crime for any elements of response to juvenile crime and delinquency, including prevention, intervention, suppression, and incapacitation.

(ii) Collaborate and integrate services of all the resources set forth in clause (i) of subparagraph (A), to the extent appropriate.

(iii) Employ information sharing systems to ensure that county actions are fully coordinated, and designed to provide data for measuring the success of juvenile justice programs and strategies.

(iv) Adopt goals related to the outcome measures that shall be used to determine the effectiveness of the local juvenile justice action strategy.

(C) The plan shall also identify the specific objectives of the programs proposed for funding and specified outcome measures to determine the effectiveness of the programs and contain an accounting for all program participants, including those who do not complete the programs. Outcome measures of the programs proposed to be funded shall include, but not be limited to, all of the following:

(i) The rate of juvenile arrests per 100,000 population.

(ii) The rate of successful completion of probation.

(iii) The rate of successful completion of restitution and court-ordered community service responsibilities.

(iv) Arrest, incarceration, and probation violation rates of program participants.

(v) Quantification of the annual per capita costs of the program.

(D) The Board of Corrections shall review plans or modified plans submitted pursuant to this paragraph within 30 days upon receipt of submitted or resubmitted plans or modified plans. The board shall approve only those plans or modified plans that fulfill the requirements of this paragraph, and shall advise a submitting county or city and county immediately upon the approval of its plan or modified plan. The board shall offer, and provide, if requested, technical assistance to any county or city and county that submits a plan or modified plan not in compliance with the requirements of this paragraph. The SLESF shall only allocate funding pursuant to this paragraph upon notification from the board that a plan or modified plan has been approved.

(E) To assess the effectiveness of programs funded pursuant to this paragraph using the program outcome criteria specified in subparagraph (C), the following periodic reports shall be submitted:

(i) Each county or city and county shall report, beginning October 15, 2002, and annually each October 15 thereafter, to the county board of supervisors and the Board of Corrections, in a format specified by the Board of Corrections, on the programs funded pursuant to this chapter and program outcomes as specified in subparagraph (C).

(ii) The Board of Corrections shall compile the local reports and, by March 15, 2003, and annually thereafter, make a report to the Governor and the Legislature on program expenditures within each county and city and county from the appropriation for the purposes of this paragraph, on the outcomes as specified in subparagraph (C) of the programs funded pursuant to this paragraph and the statewide effectiveness of the comprehensive multiagency juvenile justice plans.

(c) Subject to subdivision (d), for each fiscal year in which the county, each city, the Broadmoor Police Protection District, the Bear Valley Community Services District, the Stallion Springs Community Services District, the Lake Shastina Community Services District, and the Kensington Police Protection and Community Services District receive moneys pursuant to paragraph (3) of subdivision (b), the county, each city, and each district specified in this subdivision shall appropriate those moneys in accordance with the following procedures:

(1) In the case of the county, the county board of supervisors shall appropriate existing and anticipated moneys exclusively to provide frontline law enforcement services, other than those services specified in paragraphs (1) and (2) of subdivision (b), in the unincorporated areas of the county, in response to written requests submitted to the board by the county sheriff and the district attorney. Any request submitted pursuant to this paragraph shall specify the frontline law enforcement needs of the requesting entity, and those personnel, equipment, and programs that are necessary to meet those needs. The board shall, at a public hearing held at a time determined by the board in each year that the Legislature appropriates funds for purposes of this chapter, or within 30 days after a request by a recipient agency for a hearing if the funds have been received by the county from the state prior to that request, consider and determine each submitted request within 60 days of receipt, pursuant to the decision of a majority of a quorum present. The board shall consider these written requests separate and apart from the process applicable to proposed allocations of the county general fund.

(2) In the case of a city, the city council shall appropriate existing and anticipated moneys exclusively to fund frontline municipal police services, in accordance with written requests submitted by the chief of police of that city or the chief

administrator of the law enforcement agency that provides police services for that city. These written requests shall be acted upon by the city council in the same manner as specified in paragraph (1) for county appropriations.

(3) In the case of the Broadmoor Police Protection District within the County of San Mateo, the Bear Valley Community Services District or the Stallion Springs Community Services District within Kern County, the Lake Shastina Community Services District within Siskiyou County, or the Kensington Police Protection and Community Services District within Contra Costa County, the legislative body of that special district shall appropriate existing and anticipated moneys exclusively to fund frontline municipal police services, in accordance with written requests submitted by the chief administrator of the law enforcement agency that provides police services for that special district. These written requests shall be acted upon by the legislative body in the same manner specified in paragraph (1) for county appropriations.

(d) For each fiscal year in which the county, a city, or the Broadmoor Police Protection District within the County of San Mateo, the Bear Valley Community Services District or the Stallion Springs Community Services District within Kern County, the Lake Shastina Community Services District within Siskiyou County, or the Kensington Police Protection and Community Services District within Contra Costa County receives any moneys pursuant to this chapter, in no event shall the governing body of any of those recipient agencies subsequently alter any previous, valid appropriation by that body, for that same fiscal year, of moneys allocated to the county or city pursuant to paragraph (3) of subdivision (b).

(e) Funds received pursuant to subdivision (b) shall be expended or encumbered in accordance with this chapter no later than June 30 of the following fiscal year. A local agency that has not met this requirement shall remit unspent SLESF moneys to the Controller for deposit into the General Fund.

(f) If a county, a city, a city and county, or a qualifying special district does not comply with the requirements of this chapter to receive an SLESF allocation, the Controller shall revert those funds to the General Fund.

SEC. 89. Section 31492.1 of the Government Code is amended to read:

<< CA GOVT § 31492.1 >>

31492.1. (a) Notwithstanding Section 31492, each monthly survivor allowance paid pursuant to subdivision (a) of Section 31492 on account of a member who retires on or after the operative date of this section shall be equal to 55 percent of the retirement pension, if not modified in accordance with the optional survivor allowance in subdivision (c) or (d) of that section.

(b) This section is only applicable to Los Angeles County and is not operative until the board of supervisors of that county elects, by resolution adopted by a majority vote, to make this section operative in the county.

SEC. 90. Section 31725.65 of the Government Code is amended to read:

<< CA GOVT § 31725.65 >>

31725.65. (a) When the board finds, based on medical advice, that a member in county service is incapacitated for the performance of the member's duties, the board shall determine, based upon that medical advice, whether the member may be capable of performing other duties. If the board determines that a member, although incapacitated for the performance of the member's duties, is capable of performing other duties, the board shall notify the appropriate agency in county service of its findings.

(b) When the appropriate agency in county service receives that notification from the board, the agency shall immediately inform the member of any vacant county positions that may be suitable for the member, consistent with his or her disability, and shall consult with the member in an effort to develop a reemployment plan that shall identify what position, if any, in county service would be compatible with the member's aptitudes, interests, and abilities.

(c) Upon approval by the member of the reemployment plan, the appropriate agency in county service shall notify the board that the agency is proceeding to implement the approved reemployment plan.

(d) Upon commencement of service by the member in the position specified in the approved reemployment plan, the member shall not be paid the disability retirement allowance to which the member would otherwise be entitled during the entire period that the member remains in county service. However, if the compensation rate of the position specified in the approved reemployment plan is less than the compensation rate of the position for which the member was incapacitated, the board shall, in lieu of the disability retirement allowance, pay to the member a supplemental disability allowance in an amount equal to the difference between the compensation rate of the position for which the member was incapacitated, applicable on the

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 116 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

date of the commencement of service by the member in the position specified in the approved reemployment plan, and the compensation rate of the position specified in the plan, applicable on the same date. The supplemental disability allowance shall be adjusted annually to equal the difference between the current compensation rate of the position for which the member was incapacitated and the current compensation of the position specified in the approved reemployment plan. The supplemental disability allowance payments shall commence upon suspension of the disability retirement allowance and the amount of the payments shall not be greater than the disability retirement allowance to which the member would otherwise be entitled. Supplemental disability allowance payments made pursuant to this section shall be considered as a charge against the county advance reserve for current service, and all of these payments received by a member shall be considered as a part of the member's compensation within the meaning of Section 31460.

 (e) From the time that the member is eligible to receive a disability retirement allowance until the appropriate agency is able to provide the position in county service specified in the approved reemployment plan, and the member has commenced service in that position, the disability retirement allowance to which the member is entitled under this article shall be paid. Upon commencement of service by the member in the position specified in the approved reemployment plan, the period during which the member was receiving disability retirement payments shall not be considered as breaking the continuity of the member's service, and the rate of the member's contributions shall continue to be based on the same age at entrance into the retirement system *** on which the member's rates were based *** prior to the date of the member's disability. The member's accumulated contributions shall not be reduced as a result of the member receiving the disability retirement payments, but shall be increased by the amount of interest that would have accrued had the member not been retired.

 (f) Notwithstanding Section 31560, a member whose principal duties, while serving in the position for which the member was incapacitated, consisted of activities defined in Section 31469.3 shall, upon commencement of service by the member in the position specified in the approved reemployment plan, continue to be considered as satisfying the requirements of Section 31560, notwithstanding the actual duties performed during the entire period that the member remains in county service.

 (g) This section shall apply only to members who are incapacitated for the performance of the member's duties on or after January 1, 2004, and who are eligible to retire for service-connected disability.

 SEC. 91. Section 31755 of the Government Code is amended to read:

<< CA GOVT § 31755 >>

 31755. (a)(1) The Board of Supervisors of Contra Costa County may make this section, Tier Three, applicable to officers and employees for whom it is the governing body, by adopting an ordinance specifying the future operative date of its application.

 (2) As used in this section, "Tier One" refers to the retirement plan covering general members not covered by Section 31751.

 (3) After the board of supervisors has adopted an ordinance, the governing body of a district not governed by the board of supervisors may make this section applicable as Tier Three to its officers and employees on and after the future operative date it specifies.

 (b) Except as otherwise provided in this section, this section shall cover all officers and employees who are members or return to membership in the county's Tier Two retirement system established by Section 31751 on or after the operative date specified in the ordinance adopted pursuant to subdivision (a), and in a district on or after the date of its applicability thereto.

 (c)(1) This section shall not cover any employee who is in, or eligible for, Tier One or safety membership under this chapter.

 (2) This section shall not cover any person who is a member of the retirement system in the county or district on or after the operative date of its application thereto unless and until the person voluntarily in writing irrevocably elects coverage.

 (3) This section shall not be applicable to any eligible member who does not elect coverage, is then laid off or terminates employment, regardless of whether voluntarily or involuntarily, and later returns to membership employment.

 (4) This section shall not be applicable to any eligible member who does not elect coverage, then retires or becomes a deferred member, and later returns to active membership.

 (5) This section shall not be applicable to any person referred to in subparagraph (D) of paragraph (2) of subdivision (d) who does not elect coverage.

 (d) Upon adoption of this section by the board of supervisors, the following provisions shall become applicable:

 (1) Subject to the provisions of paragraph (2) of subdivision (d), any qualified individual county or district employee may irrevocably elect coverage under Tier Three.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 117 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(2)(A) County or district employees who are members of the county's Tier Two retirement system and who have attained five years' \* \* \* credited service with the county or district on the applicable date of this section, must elect Tier Three coverage in writing within six months after that date.

(B) Persons not subject to subparagraph (A), who thereafter attain five years' credited service in the county's Tier Two retirement system, must elect Tier Three coverage in writing within 90 days after attaining the five years' \* \* \* credited service.

(C) Persons not subject to subparagraph (A) or (B), who, before the Tier Three applicability date, elected deferred retirement under Article 9 (commencing with Section 31700) from the county's Tier Two retirement system, and who had at least five years' credited Tier Two \* \* \* service, and who thereafter while still in deferred status return to active membership, must elect coverage in writing within 90 days after that return.

(D) Persons not \* \* \* subject to subparagraph (A), (B), or (C), who enter or reenter employment in the county or the district for the first time after Tier Three is applicable thereto, and who have reciprocal rights under Article 15 (commencing with Section 31830), and who are otherwise eligible to elect Tier Three by virtue of their Tier Two status and years of retirement credited service must elect Tier Three coverage in writing within 90 days after that entry or reentry.

(e) The board may not grant a disability retirement allowance to a person who has become a Tier Three member except as provided in Section 31720.1. The amount of disability retirement allowances under Tier Three shall be as set forth in Section 31727.01.

(f) Notwithstanding any other provision of this chapter, service retirements under Tier Three shall be governed by the same provisions that govern Tier One retirements in Contra Costa County.

(g) Notwithstanding any other provision of this chapter, Tier Three retired members who have retired for service shall only be entitled to cost-of-living adjustments as provided by the board of supervisors for Tier One retired members pursuant to Article 16.5 (commencing with Section 31830).

(h) Notwithstanding any other provision of this chapter, Tier Three retired members who have been retired for disability shall only be entitled to cost-of-living adjustments as provided by the board of supervisors for Tier Two retired members pursuant to Article 16.5 (commencing with Section 31830).

(i) The board of supervisors may adopt regulations to implement the provisions of this section.

SEC. 92. Section 31781.2 of the Government Code is amended to read:

<< CA GOVT § 31781.2 >>

31781.2. In lieu of accepting in cash the death benefit payable under Section 31781 or 31781.01, the surviving spouse of a member who dies prior to reaching the minimum retirement age and who at the date of his or her death has 10 or more years of service to his or her credit, shall have the option to leave the amount of the death benefit on deposit in the retirement system until the earliest date when the deceased member could have retired had he or she lived, and at that time receive the retirement allowance provided for in Section 31765, 31765.1, or 31765.11, whichever is applicable.

If, at the death of the spouse, \* \* \* he or she is survived by one or more unmarried children of the member, under the age of 18 \* \* \* years, the retirement allowance shall continue to the child or children, collectively, until every child dies, marries, or attains the age of 18 years. If the spouse dies, either before or after the death of the member, without either making the election or receiving any portion of the death benefit, and no part of the death benefit had been paid to any person, prior to the payment of any benefits, the legally appointed guardian of the children shall make the election herein provided for on behalf of the surviving children as, in his or her judgment, may appear to be in their interest and advantage, and the election so made shall be binding and conclusive upon all parties in interest.

Notwithstanding any other provisions of this section, the benefits otherwise payable to the children of the member shall be paid to those children through the age of 21 years if the children remain unmarried and are regularly enrolled as full-time students in an accredited school as determined by the board.

SEC. 93. Section 31831.2 of the Government Code is amended to read:

<< CA GOVT § 31831.2 >>

31831.2. Any member who left county or district service on or before December 31, 1974, and became a member of a retirement system established under this chapter in another county or of the Public Employees' Retirement System, who did not elect to,

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 118 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

or was not eligible to, leave his or her contributions on deposit pursuant to Article 9 (commencing with Section 31700) may now elect to leave his or her accumulated contributions on deposit pursuant to Article 9 (commencing with Section 31700) by redepositing in the retirement fund of the county or district he or she left the amount of accumulated contributions and interest he or she withdrew from the retirement fund plus regular interest thereon from date of separation.

Any such member whose accumulated contributions are on deposit as provided in this section and any other member who left county or district service on or before December 31, 1974, who became a member of a retirement system established under this chapter in another county or of the Public Employees' Retirement System and who elected to leave his or her accumulated contributions on deposit pursuant to Article 9 (commencing with Section 31700) shall be eligible for the benefits provided in this article, and for purposes of these benefits shall be deemed to have entered membership in the other system within 90 days, or six months if Section 31840.4 applies, of his or her separation from county or district employment. The deferred retirement allowance for the member shall be determined in accordance with the provisions of this chapter applicable to * * * a member retiring directly from county employment on the date of his or her retirement. Any member who qualifies for a reduced age at entry pursuant to this section shall be entitled to use that age only from and after the date he or she completes the redeposit as provided in this section or, if he or she elected to leave his or her accumulated contributions on deposit pursuant to Article 9 (commencing with Section 31700), from and after the date he or she notifies the board in writing that he or she desires the benefits of this section. This section shall not apply to members who are retired or who are not in service of an employer making him or her a member of a retirement system established under this chapter or of the Public Employees' Retirement System.

Unless this chapter expressly provides to the contrary, the retirement allowance received by a member pursuant to this section shall be calculated based upon the laws pertaining to the retirement system of the district or county as of the date of retirement and not the laws pertaining to the system as of the date the member first left county or district service.

This section shall not be applicable to any member entering service after December 31, 1979.

This section shall apply only in a county of the first class, as established by Sections 28020 and 28022, but shall not be operative in a county until adopted by resolution of the board of supervisors.

SEC. 94. Section 31874.6 of the Government Code is amended to read:

<< CA GOVT § 31874.6 >>

31874.6. (a) Notwithstanding any other provision of law, on an annual basis, the board of retirement may, with the approval of the county board of supervisors, grant a cost-of-living adjustment on a prefunded basis to the retirement allowances, optional death allowances, or annual death allowances payable to or on account of eligible members. The action by the board of retirement may specify a date as of which the adjustment shall be effective and, if no effective date is specified, the adjustment shall be made in allowances payable for the time commencing on the first day of the month following the action by the board of retirement or approval by the county board of supervisors, whichever is later.

(b) Before the board of retirement may grant an adjustment pursuant to this section, the total costs of the adjustment shall be determined by a qualified actuary and the board shall determine, with the advice of the actuary, that full funding of the adjustment can be provided from earnings of the retirement fund that are in excess of the total interest credited to contributions and reserves plus 1 percent of the total assets of the retirement fund.

(c) The adjustment provided by this section shall be payable only to those retired members, survivors, beneficiaries, or successors in interest whose accumulated loss of purchasing power equals or exceeds 20 percent as of January 1 of the year the board of retirement takes action pursuant to this section. Loss of purchasing power shall be determined by the board of retirement based on the difference between the following:

(1) The initial retirement allowance, optional death allowance, or annual death allowance as it would have been increased by the cumulative total effect of the annual changes, rounded to the nearest one-half of 1 percent, in the Consumer Price Index for All Urban Consumers for the area in which the county seat is situated.

(2) The retirement allowance, optional death allowance, or annual death allowance as actually increased by cost-of-living adjustments previously granted with respect to the allowance.

(d) A cost-of-living adjustment granted pursuant to this section shall become part of the retirement allowance, optional death allowance, or annual death allowance to be increased by any subsequent cost-of-living adjustments. The granting of an increase pursuant to this section in any particular year does not create any continuing entitlement to additional increases in subsequent years, and does not create any claim by a retired member, survivor, beneficiary, or successor in interest against the county,

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 119 of 697

district, or retirement fund for any increase in any allowance paid or payable prior to the effective date of the action by the board of retirement pursuant to this section.

 (e) This section shall only be applicable in a county of the 19th class, as defined by Sections 28020 and 28040, as amended by Chapter 1204 of the Statutes of 1971.

 SEC. 95. Section 51283.4 of the Government Code is amended to read:

<< CA GOVT § 51283.4 >>

 51283.4. (a) Upon tentative approval of a petition accompanied by a proposal for a specified alternative use of the land, the clerk of the board or council shall record, in the office of the county recorder of the county in which *** the land *** is located to which the contract is applicable, a certificate of tentative cancellation*** . The certificate shall set forth the name of the landowner requesting the cancellation, the fact that a certificate of cancellation of contract will be issued and recorded at the time that specified conditions and contingencies are satisfied, a description of the conditions and contingencies that must be satisfied, and a legal description of the property. Conditions to be satisfied shall include payment in full of the amount of the fee computed under the provisions of Section 51283, together with a statement that unless the fee is paid, or a certificate of cancellation of contract is issued within one year from the date of the recording of the certificate of tentative cancellation, the fee shall be recomputed as of the date the landowner requests a recomputation. A landowner may request a recomputation when he or she believes that he or she will be able to satisfy the conditions and contingencies of the certificate of cancellation within 180 days. The board or council shall request the assessor to recompute the cancellation valuation. The assessor shall recompute the valuation, certify it to the board or council, and provide notice to the Department of Conservation and landowner as provided in subdivision (a) of Section 51283, and the board or council shall certify the fee to the county auditor. Any provisions related to the waiver of the fee or portion *** of the fee shall be treated in the manner provided for in the certificate of tentative cancellation. Contingencies to be satisfied shall include a requirement that the landowner obtain all permits necessary to commence the project. The board or council may, at the request of the landowner, amend a tentatively approved specified alternative use if it finds that the amendment is consistent with the findings made pursuant to subdivision (a) of Section 51282.

 (b) The landowner shall notify the board or council when he or she has satisfied the conditions and contingencies enumerated in the certificate of tentative cancellation. Within 30 days of receipt of the notice, and upon a determination that the conditions and contingencies have been satisfied, the board or council shall execute a certificate of cancellation of contract, cause the *** certificate to be recorded, and send a copy to the Director of Conservation.

 (c) If the landowner has been unable to satisfy the conditions and contingencies enumerated in the certificate of tentative cancellation, the landowner shall notify the board or council of the particular conditions or contingencies he or she is unable to satisfy. Within 30 days of receipt of the notice, and upon a determination that the landowner is unable to satisfy the conditions and contingencies listed, the board or council shall execute a certificate of withdrawal of tentative approval of a cancellation of contract and cause the same to be recorded. However, the landowner shall not be entitled to the refund of any cancellation fee paid.

 SEC. 96. Section 53080 of the Government Code is amended to read:

<< CA GOVT § 53080 >>

 53080. (a) No city, county, city and county, or special district, including, but not limited to, a community services district, recreation and park district, regional park district, regional park and open-space district, regional open-space park district, or resort improvement district shall discriminate against any person on the basis of sex or gender in the operation, conduct, or administration of community youth athletics programs or in the allocation of parks and recreation facilities and resources that support or enable these programs.

 (b) The Unruh Civil Rights Act (Section 51 of the Civil Code) has been held to prohibit local governmental agencies from discriminating on the bases proscribed by the act, and Section 11135 also prohibits local governmental agencies that receive financial assistance from the state from discriminating on the basis of gender, among other bases.

 (c) As used in this section, "community youth athletics program" means any athletic program in which youth solely or predominantly participate, that is organized for the purposes of training for and engaging in athletic activity and competition, and that is in any way operated, conducted, administered, supported, or enabled by a city, county, city and county, or special district.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 120 of 697

(d) As used in this section, "parks and recreation facilities and resources" include, but are not limited to, park facilities, including, but not limited to, athletic fields, athletic courts, gymnasiums, recreational rooms, restrooms, concession stands and storage spaces; lands and areas accessed through permitting, leasing, or other land use arrangements, or otherwise accessed through cities, counties, cities and counties, or special districts; sports and recreation equipment; devices used to promote athletics such as scoreboards, banners, and advertising; and all moneys used in conjunction with youth athletics.

(e) It is the intent of the Legislature in enacting this section that girls shall be accorded opportunities for participation in community youth athletics programs * * * equal* * * , both in quality and scope, to those accorded to boys.

(f) In civil actions brought under this section or under other applicable antidiscrimination laws alleging discrimination in community youth athletics programs, courts shall consider the following factors, among others, in determining whether discrimination exists:

(1) Whether the selection of community youth athletics programs offered effectively accommodate the athletic interests and abilities of members of both genders.

(2) The provision of moneys, equipment, and supplies.

(3) Scheduling of games and practice times.

(4) Opportunity to receive coaching.

(5) Assignment and compensation of coaches.

(6) Access to lands and areas accessed through permitting, leasing, or other land use arrangements, or otherwise accessed through a city, a county, a city and county, or a special district.

(7) Selection of the season for a sport.

(8) Location of the games and practices.

(9) Locker rooms.

(10) Practice and competitive facilities.

(11) Publicity.

(12) Officiating by umpires, referees, or judges who have met training and certification standards.

(g) In making the determination under paragraph (1) of subdivision (f), a court shall assess whether the city, county, city and county, or special district has effectively accommodated the athletic interests and abilities of both genders in any one of the following ways:

(1) The community youth athletics program opportunities for boys and girls are provided in numbers substantially proportionate to their respective numbers in the community.

(2) Where the members of one gender have been, and continue to be, underrepresented in community youth athletics programs, the city, county, city and county, or special district can show a history and continuing practice of program expansion and allocation of resources that are demonstrably responsive to the developing interests and abilities of the members of that gender.

(3) Where the members of one gender are underrepresented in community youth athletics programs, the city, county, city and county, or special district can demonstrate that the interests and abilities of the members of that gender have been fully and effectively accommodated by the present program and allocation of resources.

(h) Effective January 1, 2015, a city, county, city and county, and special district may no longer rely on paragraph (2) of subdivision (g) to show that they have accommodated the athletic interests and abilities of both genders.

(i) Nothing in this section shall be construed to invalidate any existing consent decree or any other settlement agreement entered into by a city, county, city and county, or special district to address gender equity in athletic programs.

(j) This section and any ordinances, regulations, or resolutions adopted pursuant to this section by a city, county, city and county, or special district may be enforced against a city, county, city and county, or special district by a civil action for injunctive relief or damages or both, which shall be independent of any other rights and remedies.

SEC. 97. Section 53635 of the Government Code is amended to read:

<< CA GOVT § 53635 >>

53635. (a) This section shall apply to a local agency that is a county, a city and * * * county, or other local agency that pools money in deposits or investments with other local agencies, including local agencies that have the same governing body. However, Section 53601 shall apply to all local agencies that pool money in deposits or investments exclusively with local agencies that have the same governing body.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 121 of 697

This section shall be interpreted in a manner that recognizes the distinct characteristics of investment pools and the distinct administrative burdens on managing and investing funds on a pooled basis pursuant to Article 6 (commencing with Section 27130) of Chapter 5 of Division 2 of Title 3.

A local agency that is a county, a city and county, or other local agency that pools money in deposits or investments with other agencies may invest in commercial paper pursuant to subdivision (g) of Section 53601, except that the local agency shall be subject to the following concentration limits:

(1) No more than 40 percent of the local agency's money may be invested in eligible commercial paper.

(2) No more than 10 percent of the local agency's money that may be invested pursuant to this section may be invested in the outstanding commercial paper of any single issuer.

(3) No more than 10 percent of the outstanding commercial paper of any single issuer may be purchased by the local agency.

(b) Notwithstanding Section 53601, the City of Los Angeles shall be subject to the concentration limits of this section for counties and for cities and counties with regard to the investment of money in eligible commercial paper.

SEC. 98. Section 54954.5 of the Government Code is amended to read:

<< CA GOVT § 54954.5 >>

54954.5. For purposes of describing closed session items pursuant to Section 54954.2, the agenda may describe closed sessions as provided below. No legislative body or elected official shall be in violation of Section 54954.2 or 54956 if the closed session items were described in substantial compliance with this section. Substantial compliance is satisfied by including the information provided below, irrespective of its format.

(a) With respect to a closed session held pursuant to Section 54956.7:

LICENSE/PERMIT DETERMINATION

Applicant(s): (Specify number of applicants)

(b) With respect to every item of business to be discussed in closed session pursuant to Section 54956.8:

CONFERENCE WITH REAL PROPERTY NEGOTIATORS

Property: (Specify street address, or if no street address, the parcel number or other unique reference, of the real property under negotiation)

Agency negotiator: (Specify names of negotiators attending the closed session)(If circumstances necessitate the absence of a specified negotiator, an agent or designee may participate in place of the absent negotiator so long as the name of the agent or designee is announced at an open session held prior to the closed session.)

Negotiating parties: (Specify name of party (not agent))

Under negotiation: (Specify whether instruction to negotiator will concern price, terms of payment, or both)

(c) With respect to every item of business to be discussed in closed session pursuant to Section 54956.9:

CONFERENCE WITH LEGAL COUNSEL—EXISTING LITIGATION

(Subdivision (a) of Section 54956.9)

Name of case: (Specify by reference to claimant's name, names of parties, case or claim numbers)

or

Case name unspecified: (Specify whether disclosure would jeopardize service of process or existing settlement negotiations)

CONFERENCE WITH LEGAL COUNSEL—ANTICIPATED LITIGATION

Significant exposure to litigation pursuant to subdivision (b) of Section 54956.9: (Specify number of potential cases)

(In addition to the information noticed above, the agency may be required to provide additional information on the agenda or in an oral statement prior to the closed session pursuant to subparagraphs (B) to (E), inclusive, of paragraph (3) of subdivision (b) of Section 54956.9.)

Initiation of litigation pursuant to subdivision (c) of Section 54956.9: (Specify number of potential cases)

(d) With respect to every item of business to be discussed in closed session pursuant to Section 54956.95:

LIABILITY CLAIMS

Claimant: (Specify name unless unspecified pursuant to Section 54961)

Agency claimed against: (Specify name)

(e) With respect to every item of business to be discussed in closed session pursuant to Section 54957:

THREAT TO PUBLIC SERVICES OR FACILITIES

Consultation with: (Specify name of law enforcement agency and title of officer, or name of applicable agency representative and title)

PUBLIC EMPLOYEE APPOINTMENT

Title: (Specify description of position to be filled)

PUBLIC EMPLOYMENT

Title: (Specify description of position to be filled)

PUBLIC EMPLOYEE PERFORMANCE EVALUATION

Title: (Specify position title of employee being reviewed)

PUBLIC EMPLOYEE DISCIPLINE/DISMISSAL/RELEASE

(No additional information is required in connection with a closed session to consider discipline, dismissal, or release of a public employee. Discipline includes potential reduction of compensation.)

 (f) With respect to every item of business to be discussed in closed session pursuant to Section 54957.6:

CONFERENCE WITH LABOR NEGOTIATORS

 Agency designated representatives: (Specify names of designated representatives attending the closed session)(If circumstances necessitate the absence of a specified designated representative, an agent or designee may participate in place of the absent representative so long as the name of the agent or designee is announced at an open session held prior to the closed session.)

 Employee organization: (Specify name of organization representing employee or employees in question)

 or

 Unrepresented employee: (Specify position title of unrepresented employee who is the subject of the negotiations)

 (g) With respect to closed sessions called pursuant to Section 54957.8:

CASE REVIEW/PLANNING

(No additional information is required in connection with a closed session to consider case review or planning.)

 (h) With respect to every item of business to be discussed in closed session pursuant to Sections 1461, 32106, and 32155 of the Health and Safety Code or Sections 37606 and 37624.3 of the Government Code:

 REPORT INVOLVING TRADE SECRET

 Discussion will concern: (Specify whether discussion will concern proposed new service, program, or facility)

 Estimated date of public disclosure: (Specify month and year)

 HEARINGS

 Subject matter: (Specify whether testimony/deliberation will concern staff privileges, report of medical audit committee, or report of quality assurance committee)

 (i) With respect to every item of business to be discussed in closed session pursuant to Section 54956.86:

 CHARGE OR COMPLAINT INVOLVING INFORMATION PROTECTED BY FEDERAL LAW

 (No additional information is required in connection with a closed session to discuss a charge or complaint pursuant to Section 54956.86.)

 (j) With respect to every item of business to be discussed in closed session pursuant to Section 54956.96:

 CONFERENCE INVOLVING A JOINT POWERS AGENCY (Specify by name)

 Discussion will concern: (Specify closed session description used by the joint powers agency* * * )

 Name of local agency representative on joint powers agency board: (Specify name)

 (Additional information listing the names of agencies or titles of representatives attending the closed session as consultants or other representatives.)

 (k) With respect to every item of business to be discussed in closed session pursuant to Section 54956.75:

 AUDIT BY BUREAU OF STATE AUDITS

  SEC. 99. Section 56700 of the Government Code, as amended by Section 2 of Chapter 471 of the Statutes of 2004, is amended to read:

<< CA GOVT § 56700 >>

 56700. (a) A proposal for a change of organization or a reorganization may be made by petition. The petition shall do all of the following:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 123 of 697

(1) State that the proposal is made pursuant to this part.

(2) State the nature of the proposal and list all proposed changes of organization.

(3) Set forth a description of the boundaries of affected territory accompanied by a map showing the boundaries.

(4) Set forth any proposed terms and conditions.

(5) State the reason or reasons for the proposal.

(6) State whether the petition is signed by registered voters or owners of land.

(7) Designate up to * * * three persons as chief petitioners, setting forth their names and mailing addresses.

(8) Request that proceedings be taken for the proposal pursuant to this part.

(9) State whether the proposal is consistent with the sphere of influence of any affected city or affected district.

(b) A petition for a proposal for a change of organization or a reorganization that includes the consolidation of two or more special districts not formed pursuant to the same principal act, in addition to the requirements set forth in subdivision (a), shall do either of the following:

(1) Designate the district that shall be the successor and specify under which principal act the successor shall conduct itself.

(2) State that the proposal requires the formation of a new district and includes a plan for services prepared pursuant to Section 56653.

(c) This section shall become inoperative on July 1, 2008, and, as of January 1, 2009, is repealed, unless a later enacted statute, that becomes operative on or before January 1, 2009, deletes or extends the dates on which it becomes inoperative and is repealed.

SEC. 100. Section 56700 of the Government Code, as added by Section 2.5 of Chapter 471 of the Statutes of 2004, is amended to read:

<< CA GOVT § 56700 >>

56700. (a) A proposal for a change of organization or a reorganization may be made by petition. The petition shall do all of the following:

(1) State that the proposal is made pursuant to this part.

(2) State the nature of the proposal and list all proposed changes of organization.

(3) Set forth a description of the boundaries of affected territory accompanied by a map showing the boundaries.

(4) Set forth any proposed terms and conditions.

(5) State the reason or reasons for the proposal.

(6) State whether the petition is signed by registered voters or owners of land.

(7) Designate up to * * * three persons as chief petitioners, setting forth their names and mailing addresses.

(8) Request that proceedings be taken for the proposal pursuant to this part.

(9) State whether the proposal is consistent with the sphere of influence of any affected city or affected district.

(b) This section shall become operative on July 1, 2008.

SEC. 101. Section 65053.5 of the Government Code is amended to read:

<< CA GOVT § 65053.5 >>

65053.5. (a) As used in this article, the following terms have the following meanings:

(1) "Military installation" means a base, camp, post, station, yard, center, homeport facility for any ship, or other facility under the jurisdiction of the United States Department of Defense, as defined in paragraph (1) of subsection (e) of Section 2687 of Title 10 of the United States Code.

(2) "Affected local government" means any county or city identified as located wholly or partly within the boundaries of a military installation or as having a sphere of influence over any portion of the installation with responsibility for local zoning and planning decisions.

(b) The Legislature hereby finds and declares all of the following:

(1) Because of the tremendous economic impact that military installations have on the state, it is in the best interest of the state to facilitate their retention.

(2) It is the intent of the Legislature to encourage cooperation among affected local governments in their efforts to retain military installations in this state by authorizing the creation of a joint powers authority pursuant to this section.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 124 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(3) The Legislature also encourages affected local governments to engage other community-based organizations in their retention activities.

(c) For the purposes of this article, a local retention authority shall be recognized for each active military installation in this state.

(d) A list of retention authorities or their successors, including, but not limited to, separate airport or port authorities recognized as the local retention authority for the military installations, shall be maintained by the Office of Military and Aerospace Support created pursuant to Section 13998.2. If multiple affected local governments are identified for a military installation as described in paragraph (2) of subdivision (a), those affected counties and cities may, by resolution, designate an existing joint powers authority or establish a joint powers authority for the purposes of this article pursuant to Chapter 5 (commencing with Section 6500) of Division 7 of Title 1.

(e) The state shall recognize a local retention authority for each active military installation if resolutions acknowledging the authority as the local retention authority are adopted by all county boards of supervisors and city councils identified as described in paragraph (2) of subdivision (a) and are forwarded to the Office of Military and Aerospace Support on or before October 1, 2004. If prior to January 1, 2004, a local government was awarded grant moneys pursuant to any predecessor to Section 13998.8 for a specific military installation and qualifies as an affected local government as described in paragraph (2) of subdivision (a), the recipient local government shall be recognized by the state as the local retention authority unless resolutions acknowledging a different authority are adopted by all county boards of supervisors and city councils identified as described in paragraph (2) of subdivision (a), and are forwarded to the Office of Military and Aerospace Support.

(f) If the necessary resolutions are not adopted within the time limit specified in subdivision (e), the Office of Military and Aerospace Support shall recognize a local retention authority for each military installation.

SEC. 102. Section 65351 of the Government Code is amended to read:

<< CA GOVT § 65351 >>

65351. During the preparation or amendment of the general plan, the planning agency shall provide opportunities for the involvement of citizens, California Native American Indian tribes, public agencies, public utility companies, and civic, education, and other community groups, through public hearings and any other means the * * * planning agency deems appropriate.

SEC. 103. Section 65460.1 of the Government Code is amended to read:

<< CA GOVT § 65460.1 >>

65460.1. (a) The Legislature hereby finds and declares all of the following:

(1) Federal, state, and local governments in California are investing in new and expanded * * * transit systems in areas throughout the state, including Los Angeles County, the San Francisco Bay area, San Diego County, Santa Clara County, and Sacramento County.

(2) This public investment in * * * transit is unrivaled in the state's history and represents well over ten billion dollars ($10,000,000,000) in planned investment alone.

(3) Recent studies of transit ridership in California indicate that persons who live within a quarter-mile radius of * * * transit stations utilize the transit system in far greater numbers than does the general public living elsewhere.

(4) The use of transit by persons living near * * * transit stations is particularly important given the decline of transit ridership in California between 1980 and 1990. Transit's share of commute trips dropped in all California metropolitan areas-greater Los Angeles: 5.4 percent to 4.8 percent; San Francisco Bay area: 11.9 percent to 10.0 percent; San Diego: 3.7 percent to 3.6 percent; Sacramento: 3.7 percent to 2.5 percent.

(5) Only a few * * * transit stations in California have any concentration of housing proximate to the station.

(6) Interest in clustering housing and commercial development around * * * transit stations, called transit villages, has gained momentum in recent years.

(b) For purposes of this article, the following definitions shall apply:

(1) "Bus hub" means an intersection of three or more bus routes, with a minimum route headway of 10 minutes during peak hours.

(2) "District" means a transit village development district as defined in Section 65460.4.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 125 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(3) "Peak hours" means the time between 7 a.m. to 10 a.m., inclusive, and 3 p.m. to 7 p.m., inclusive, Monday through Friday.

(4) "Transit station" means a rail or light-rail station, ferry terminal, bus hub, or bus transfer station.

SEC. 104. Section 66907.7 of the Government Code is amended to read:

<< CA GOVT § 66907.7 >>

66907.7. (a) The conservancy may award grants to local public agencies, state agencies, federal agencies, federally recognized Indian tribes, the Tahoe Transportation District established under Section 66801, and nonprofit organizations, for the purposes of this title.

(b) Grants to nonprofit organizations for the acquisition of real property or interests therein shall be subject to all of the following conditions:

(1) The purchase price of any interest in land acquired by the nonprofit organization may not exceed fair market value as established by an appraisal approved by the conservancy.

(2) The conservancy approves the terms under which the interest in land is acquired.

(3) The interest in land acquired pursuant to a grant from the conservancy may not be used as security for any debt to be incurred by the nonprofit organization unless the conservancy approves the transaction.

(4) The transfer of land acquired pursuant to a grant shall be subject to the approval of the conservancy and the execution of an agreement between the conservancy and the transferee sufficient to protect the interest of the people of California.

(5) The state shall have a right of entry and power of termination in and over all interests in real property acquired with state funds, which may be exercised if any essential term or condition of the grant is violated.

(6) If the existence of the nonprofit organization is terminated for any reason, title to all interest in real property acquired with state funds shall immediately vest in the state, except that, prior to that termination, another public agency or nonprofit organization may receive title to all or a portion of that interest in real property, by recording its acceptance of title, together with the conservancy's approval, in writing.

(c) Any deed or other instrument of conveyance whereby real property is being acquired by a nonprofit organization pursuant to this section shall be recorded and shall set forth the executory interest or right of entry on the part of the state.

(d) The relocation by a local public agency of a water- or sewer-related infrastructure owned by a publicly owned utility shall be considered an eligible expense by the conservancy for the purpose of awarding soil erosion grant funds, if that relocation is intended to control or reduce soil erosion caused by the infrastructure to be relocated. A local public agency is eligible to receive grant funds for up to two-thirds of the cost of relocating the water- or sewer-related infrastructure, provided the relocation cost is not eligible for any other public funding.

SEC. 105. Section 68085 of the Government Code is amended to read:

<< CA GOVT § 68085 >>

68085. (a)(1) There is hereby established the Trial Court Trust Fund, the proceeds of which shall be apportioned at least quarterly for the purpose of funding trial court operations, as defined in Section 77003. Apportionment payments may not exceed 30 percent of the total annual apportionment to the Trial Court Trust Fund for state trial court funding in any 90–day period.

(2) The apportionment payments shall be made by the Controller. The final payment from the Trial Court Trust Fund for each fiscal year shall be made on or before August 31 of the subsequent fiscal year.

(3) If apportionment payments are made on a quarterly basis, the payments shall be on July 15, October 15, January 15, and April 15. In addition to quarterly payments, a final payment from the Trial Court Trust Fund for each fiscal year may be made on or before August 31 of the subsequent fiscal year.

(4) Notwithstanding any other provision of law, in order to promote statewide efficiency, the Judicial Council may authorize the direct payment or reimbursement or both of actual costs from the Trial Court Trust Fund or the Trial Court Improvement Fund to fund administrative infrastructure within the Administrative Office of the Courts, such as legal services, financial services, information systems services, human resource services, and support services, for one or more participating courts upon appropriation of funding for these purposes in the annual Budget Act. The amount of appropriations from the Trial Court Improvement Fund under this subdivision may not exceed 20 percent of the amount deposited in the Trial Court Improvement Fund pursuant to subdivision (a) of Section 77205. Upon prior written approval of the Director of Finance, the Judicial Council

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 126 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

may also authorize an increase in any reimbursements or direct payments in excess of the amount appropriated in the annual Budget Act. For any increases in reimbursements or direct payments within the fiscal year that exceed two hundred thousand dollars ($200,000), the Director of Finance shall provide notification in writing of any approval granted under this section, not less than 30 days prior to the effective date of that approval, to the chairperson of the committee in each house of the Legislature that considers appropriations, the chairpersons of the committees and the appropriate subcommittees in each house of the Legislature that consider the annual Budget Act, and the Chairperson of the Joint Legislative Budget Committee, or not sooner than whatever lesser time the Chairperson of the Joint Legislative Budget Committee, or his or her designee, may in each instance * * * determine. The direct payment or reimbursement of costs from the Trial Court Trust Fund may be supported by the reduction of a participating court's allocation from the Trial Court Trust Fund to the extent that the court's expenditures for the program are reduced and the court is supported by the program. The Judicial Council shall provide the affected trial courts with quarterly reports on expenditures from the Trial Court Trust Fund incurred as authorized by this subdivision. The Judicial Council shall establish procedures to provide for the administration of this paragraph in a way that promotes the effective, efficient, reliable, and accountable operation of the trial courts.

(b) Notwithstanding any other provision of law, the fees listed in subdivision (c) shall all be deposited upon collection in a special account in the county treasury, and transmitted monthly to the Controller for deposit in the Trial Court Trust Fund.

(c)(1) Except as specified in subdivision (d), this section applies to all fees collected pursuant to Sections * * * 116.230, * * * 403.060, and 631.3 of the Code of Civil Procedure and Sections 26820.4, 26823, 26826, 26826.01, 26827, 26827.4, 26830, 26832.1, 26833.1, 26835.1, 26836.1, 26837.1, 26838, 26850.1, 26851.1, 26852.1, 26853.1, 26855.4, 26862, 27081.5, 68086, 72055, 72056, 72056.01, and 72060.

(2) If any of the fees provided for in this subdivision is partially waived by court order, and the fee is to be divided between the Trial Court Trust Fund and any other fund, the amount of the partial waiver shall be deducted from the amount to be distributed to each fund in the same proportion as the amount of each distribution bears to the total amount of the fee.

(3) Any amounts transmitted by a county to the Controller for deposit into the Trial Court Trust Fund from fees collected pursuant to Section 27361 between January 1, 1998, and the effective date of this paragraph shall be credited against the total amount the county is required to pay to the state pursuant to paragraph (2) of subdivision (b) of Section 77201 for the 1997–98 fiscal year.

(d) This section does not apply to that portion of a filing fee collected pursuant to Section 26820.4, 26826, 26827, 72055, or 72056 which is allocated for dispute resolution pursuant to Section 470.3 of the Business and Professions Code, the county law library pursuant to Section 6320 of the Business and Professions Code, the Judges' Retirement Fund pursuant to Section 26822.3, automated recordkeeping or conversion to micrographics pursuant to Sections 26863 and 68090.7, and courthouse financing pursuant to Section 76238. This section also does not apply to fees collected pursuant to subdivisions (a) and (c) of Section 27361.

(e) This section applies to all payments required to be made to the State Treasury by any county or city and county pursuant to Section 77201, 77201.1, or 77205.

(f) Notwithstanding any other provision of law, no agency may take action to change the amounts allocated to any of the funds described in subdivision (a), (b), (c), or (d).

(g) Before making any apportionments under this section, the Controller shall deduct, from the annual appropriation for that purpose, the actual administrative costs that will be incurred under this section. Costs reimbursed under this section shall be determined on an annual basis in consultation with the Judicial Council.

(h) Any amounts required to be transmitted by a county, or city and county, to the state pursuant to this section shall be remitted to the Controller no later than 45 days after the end of the month in which the fees were collected. This remittance shall be accompanied by a remittance advice identifying the collection month and the appropriate account in the Trial Court Trust Fund to which it is to be deposited. Any remittance that is not made by the county or city and county in accordance with this section shall be considered delinquent, and subject to the penalties specified in this section.

(i) Upon receipt of any delinquent payment required pursuant to this section, the Controller shall calculate a penalty on any delinquent payment by multiplying the amount of the delinquent payment at a daily rate equivalent to 1 ½ percent per month for the number of days the payment is delinquent. Notwithstanding Section 77009, any penalty on a delinquent payment that a court is required to reimburse to a county's general fund pursuant to this section and Section 24353 shall be paid from the Trial Court Operations Fund for that court.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 127 of 697

(j) Penalty amounts calculated pursuant to subdivision (i) shall be paid by the county to the Trial Court Trust Fund no later than 45 days after the end of the month in which the penalty was calculated.

(k) The Trial Court Trust Fund shall be invested in the Surplus Money Investment Fund and all interest earned shall be allocated to the Trial Court Trust Fund semiannually and shall be allocated among the courts in accordance with the requirements of subdivision (a). The specific allocations shall be specified by the Judicial Council.

(l) It is the intent of the Legislature that the revenues required to be deposited into the Trial Court Trust Fund be remitted as soon after collection by the courts as possible.

SEC. 106. Section 68115 of the Government Code is amended to read:

<< CA GOVT § 68115 >>

68115. When war, insurrection, pestilence, or other public calamity, or the danger thereof, or the destruction of or danger to the building appointed for holding the court, renders it necessary, or when a large influx of criminal cases resulting from a large number of arrests within a short period of time threatens the orderly operation of a superior court location or locations within a county, the presiding judge may request and the Chairperson of the Judicial Council may, notwithstanding any other provision of law, by order authorize the court to do one or more of the following:

(a) Hold sessions anywhere within the county.

(b) Transfer civil cases pending trial in the court to a superior court in an adjacent county. No transfer may be made pursuant to this subdivision except with the consent of all parties to the case or upon a showing by a party that extreme or undue hardship would result unless the case is transferred for trial. Any civil case so transferred shall be integrated into the existing caseload of the court to which it is transferred pursuant to rules to be provided by the Judicial Council.

(c) Declare that a date or dates on which an emergency condition, as described in this section, substantially interfered with the public's ability to file papers in a court facility or facilities be deemed a holiday for purposes of computing the time for filing papers with the court under Sections 12 and 12a of the Code of Civil Procedure. This subdivision shall apply to the fewest days necessary under the circumstances of the emergency, as determined by the Chairperson of the Judicial Council.

(d) Declare that a date on which an emergency condition, as described in this section, prevented the court from conducting proceedings governed by Section 825 of the Penal Code, or Section 313, 315, 631, 632, 637, or 657 of the Welfare and Institutions Code, be deemed a holiday for purposes of computing time under those statutes. This subdivision shall apply to the fewest days necessary under the circumstances of the emergency, as determined by the Chairperson of the Judicial Council.

(e) Extend the duration of any temporary restraining order that would otherwise expire because an emergency condition, as described in this section, prevented the court from conducting proceedings to determine whether a permanent order should be entered. The extension shall be for the fewest days necessary under the circumstances of the emergency, as determined by the Chairperson of the Judicial Council.

(f) Within the affected county during a state of emergency resulting from a natural or human-made disaster proclaimed by the President of the United States or by the Governor pursuant to Section 8625 of the Government Code, extend the time period provided in Section 825 of the Penal Code within which a defendant charged with a felony offense shall be taken before a magistrate from 48 hours to not more than seven days, with the number of days to be designated by the Chairperson of the Judicial Council. This authorization shall be effective for 30 days unless it is extended by a new request and a new order.

(g) Extend the time period provided in Section 859b of the Penal Code for the holding of a preliminary examination from 10 court days to not more than 15 days.

(h) Extend the time period provided in Section 1382 of the Penal Code within which the trial must be held by not more than 30 days, but the trial of a defendant in custody whose time is so extended shall be given precedence over all other cases.

(i) Within the affected area of a county during a state of emergency resulting from a natural or human-made disaster proclaimed by the President of the United States or by the Governor pursuant to Section 8625 of the Government Code, extend the time period provided in Sections 313, 315, 632, and 637 of the Welfare and Institutions Code within which a minor shall be given a detention hearing, with the number of days to be designated by the Chairperson of the Judicial Council. The extension of time shall be for the shortest period of time necessary under the circumstances of the emergency, but in no event shall the time period within which a detention hearing must be given be extended to more than seven days. This authorization shall be effective for 30 days unless it is extended by a new request and a new order. This subdivision shall apply only where the minor has been charged with a felony.

Case 3:17-cv-07357-RS  Document 163-3  Filed 01/21/21  Page 128 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(j) Within the affected county during a state of emergency resulting from a natural or human-made disaster proclaimed by the President of the United States or by the Governor pursuant to Section 8625 of the Government Code, extend the time period provided in Sections 334 and 657 of the Welfare and Institutions Code within which an adjudication on a juvenile court petition shall be held by not more than 15 days, with the number of days to be designated by the Chairperson of the Judicial Council. This authorization shall be effective for 30 days unless it is extended by a new request and a new order. This subdivision shall apply only where the minor has been charged with a felony.

SEC. 107. Section 68927 of the Government Code is amended to read:

<< CA GOVT § 68927 >>

68927. The fee for filing a petition for review in a civil case in the Supreme Court after a decision in a court of appeal is four hundred twenty dollars ($420). A fee may not be charged for petitions for review from decisions in juvenile cases or proceedings to declare a minor free from parental custody or control or proceedings under the Lanterman–Petris–Short Act (Part 1 (commencing with Section 5000) of Division 5 of the Welfare and Institutions Code).

SEC. 108. Section 69927 of the Government Code is amended to read:

<< CA GOVT § 69927 >>

69927. (a) It is the intent of the Legislature in enacting this section to develop a definition of the court security component of court operations that modifies Function 8 of Rule 810 of the California Rules of Court in a manner that will standardize billing and accounting practices and court security plans, and identify allowable law enforcement security costs after the operative date of this article. It is not the intent of the Legislature to increase or decrease the responsibility of a county for the cost of court operations, as defined in Section 77003 or Rule 810 of the California Rules of Court, as it read on July 1, 1996, for court security services provided prior to January 1, 2003. It is the intent of the Legislature that a sheriff's or marshal's court law enforcement budget * * * not be reduced as a result of this article. Any new court security costs permitted by this article shall not be operative unless the funding is provided by the Legislature.

(1) The Judicial Council shall adopt a rule establishing a working group on court security. The group shall consist of six representatives from the judicial branch of government, as selected by the Administrative Director of the Courts, two representatives of the counties, as selected by the California State Association of Counties, and three representatives of the county sheriffs, as selected by the California State Sheriffs' Association. It is the intent of the Legislature that this working group may recommend modifications only to the template used to determine that the security costs submitted by the courts to the Administrative Office of the Courts are permitted pursuant to this article. The template shall be a part of the trial court's financial policies and procedures manual and used in place of the definition of law enforcement costs in Function 8 of Rule 810 of the California Rules of Court. If the working group determines that there is a need to make recommendations to the template that specifically involve law enforcement or security personnel in courtrooms or court detention facilities, the membership of the working group shall change and consist of six representatives from the judicial branch of government selected by the Administrative Director of the Courts, two representatives of the counties selected by the California State Association of Counties, two representatives of the county sheriffs selected by the California State Sheriffs' Association, and two representatives of labor selected by the California Coalition of Law Enforcement Associations.

(2) The Judicial Council shall establish a working group on court security to promulgate recommended uniform standards and guidelines that may be used by the Judicial Council and any sheriff or marshal for the implementation of trial court security services. The working group shall consist of representatives from the judicial branch of government, the California State Sheriffs' Association, the California State Association of Counties, the Peace Officer's Research Association of California, and the California Coalition of Law Enforcement Associations, for the purpose of developing guidelines. The Judicial Council, after requesting and receiving recommendations from the working group on court security, shall promulgate and implement rules, standards, and policy directions for the trial courts in order to achieve efficiencies that will reduce security operating costs and constrain growth in those costs.

(3) When mutually agreed to by the courts, county, and the sheriff or marshal in any county, the costs of perimeter security in any building that the court shares with any county agency, excluding the sheriff's or marshal's department, shall be apportioned based on the amount of the total noncommon square feet of space occupied by the court and any county agency.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 129 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(4) "Allowable costs for equipment, services, and supplies," as defined in the contract law enforcement template, means the purchase and maintenance of security screening equipment and the costs of ammunition, batons, bulletproof vests, handcuffs, holsters, leather gear, chemical spray and holders, radios, radio chargers and holders, uniforms, and one primary duty sidearm.

(5) "Allowable costs for professional support staff for court security operations," as defined in the contract law enforcement template, means the salary, benefits, and overtime of staff performing support functions that, at a minimum, provide payroll, human resources, information systems, accounting, or budgeting.

Allowable costs for professional support staff for court security operations in each trial court shall not exceed 6 percent of total allowable costs for law enforcement security personnel services in courts with total allowable costs for law enforcement security personnel services less than ten million dollars ($10,000,000) per year. Allowable costs for professional support staff for court security operations for each trial court shall not exceed 4 percent of total allowable costs for law enforcement security personnel services in courts with total allowable costs for law enforcement security personnel services exceeding ten million dollars ($10,000,000) per year. Additional costs for services related to court-mandated special project support, beyond those provided for in the contract law enforcement template, are allowable only when negotiated by the trial court and the court law enforcement provider. Allowable costs shall not exceed actual costs of providing support staff services for law enforcement security personnel services.

The working group established pursuant to paragraph (1) of subdivision (a) may periodically recommend changes to the limit for allowable costs for professional support staff for court security operations based on surveys of actual expenditures incurred by trial courts and the court law enforcement provider in the provision of law enforcement security personnel services. Limits for allowable costs as stated in this section shall remain in effect until changes are recommended by the working group and adopted by the Judicial Council.

(6) "Allowable costs for security personnel services," as defined in the contract law enforcement template, means the salary and benefits of an employee, including, but not limited to, county health and welfare, county incentive payments, deferred compensation plan costs, FICA or Medicare, general liability premium costs, leave balance payout commensurate with an employee's time in court security services as a proportion of total service credit earned after January 1, 1998, premium pay, retirement, state disability insurance, unemployment insurance costs, workers' compensation paid to an employee in lieu of salary, workers' compensation premiums of supervisory security personnel through the rank of captain, line personnel, inclusive of deputies, court attendants, contractual law enforcement services, prisoner escorts within the courts, and weapons screening personnel, court required training, and overtime and related benefits of law enforcement supervisory and line personnel.

(A) The Administrative Office of the Courts shall use the actual salary and benefits costs approved for court law enforcement personnel as of June 30 of each year in determining the funding request that will be presented to the Department of Finance.

(B) Courts and court security providers shall manage their resources to minimize the use of overtime.

(7) "Allowable costs for vehicle use for court security needs," as defined in the contract law enforcement template, means the per-mile recovery cost for vehicles used in rendering court law enforcement services, exclusive of prisoner or detainee transport to or from court. The standard mileage rate applied against the miles driven for the above shall be the standard reimbursable mileage rate in effect for judicial officers and employees at the time of contract development.

(b) Nothing in this article may increase a county's obligation or require any county to assume the responsibility for a cost of any service that was defined as a court operation cost, as defined by Function 8 of Rule 810 of the California Rules of Court, as it read on July 1, 1996, or that meets the definition of any new law enforcement component developed pursuant to this article.

SEC. 109. Section 70367 of the Government Code is amended to read:

<< CA GOVT § 70367 >>

70367. (a) Within 30 days after the Administrative Director of the Courts has mailed to the county, pursuant to subdivision (d) of Section 70363, the approved county facilities payment, the Administrative Director of the Courts may submit a declaration to the Court Facilities Dispute Resolution Committee, * * * with copies mailed to the other parties, that the amount is incorrect because the county failed to report court facilities expenses paid by the county which reduced the amount of the approved county facilities payment.

(b) The county shall mail its comments to the Court Facilities Dispute Resolution Committee on the administrative director's declaration within 30 days of the mailing of the administrative director's declaration, with * * * copies mailed to the other parties.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 130 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(c) Within 90 days of receipt of comments pursuant to subdivision (b), the Court Facilities Dispute Resolution Committee shall review the declarations and comments received, and make its recommendation to the Director of Finance concerning correction of any errors and, if necessary, an adjustment of the amount of the county facilities payment. The Court Facilities Dispute Resolution Committee shall mail a copy of its recommendation to all the parties.

(d) The Director of Finance or his or her designee shall review the recommendations of the Court Facilities Dispute Resolution Committee and make his or her determination concerning any correction of errors and, if necessary, an adjustment of the amount of the county facilities payment. The director shall serve a copy of his or her determination on all the parties.

SEC. 110. Section 71622 of the Government Code is amended to read:

<< CA GOVT § 71622 >>

71622. (a) Each trial court may establish and may appoint any subordinate judicial officers that are deemed necessary for the performance of subordinate judicial duties, as authorized by law to be performed by subordinate judicial officers. However, the number and type of subordinate judicial officers in a trial court shall be subject to approval by the Judicial Council. Subordinate judicial officers shall serve at the pleasure of the trial court.

(b) The appointment or termination of a subordinate judicial officer shall be made by order of the presiding judge or another judge or a committee to whom appointment or termination authority is delegated by the court, and shall be entered in the minutes of the court.

(c) The Judicial Council shall promulgate rules establishing the minimum qualifications and training requirements for subordinate judicial officers.

(d) The presiding judge of a superior court may cross-assign one type of subordinate judicial officer to exercise all the powers and perform all the duties authorized by law to be performed by another type of subordinate judicial officer, but only if the person cross-assigned satisfies the minimum qualifications and training requirements for the new assignment established by the Judicial Council pursuant to subdivision (c).

(e) The superior courts of two or more counties may appoint the same person as court commissioner.

(f) As of the implementation date of this chapter, all persons who were authorized to serve as subordinate judicial officers pursuant to other provisions of law shall be authorized by this section to serve as subordinate judicial officers at their existing salary rate, which may be a percentage of the salary of a judicial officer.

(g) A subordinate judicial officer who has been duly appointed and has thereafter * * * retired from service may be assigned by a presiding judge to perform subordinate judicial duties consistent with subdivision (a). The retired subordinate judicial officer shall be subject to the limits, if any, on postretirement service prescribed by the Public Employees' Retirement System, the county defined-benefit retirement system, as defined in subdivision (f) of Section 71624, or any other defined-benefit retirement plan from which the retired officer is receiving benefits. The retired subordinate judicial officer shall be compensated by the assigning court at a rate not to exceed 85 percent of the compensation of a retired judge assigned to a superior court.

SEC. 111. Section 82036 of the Government Code is amended to read:

<< CA GOVT § 82036 >>

82036. "Late contribution" means any of the following:

(a) Any contribution, including a loan, that totals in the aggregate one thousand dollars ($1,000) or more that is made to or received by a candidate, a controlled committee, or a committee formed or existing primarily to support or oppose a candidate or measure before the date of the election at which the candidate or measure is to be voted on but after the closing date of the last campaign statement required to be filed before the election.

(b) Any contribution, including a loan, that totals in the aggregate one thousand dollars ($1,000) or more that is made to or received by a political party committee, as defined in Section 85205, before the date of any state election, but after the closing date of the last campaign statement required to be filed before the election.

SEC. 112. Section 84602 of the Government Code is amended to read:

<< CA GOVT § 84602 >>

Case 3:17-cv-07357-RS    Document 163-3    Filed 01/21/21    Page 131 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

84602. To implement the Legislature's intent, the Secretary of State, in consultation with the commission, notwithstanding any other provision of the Government Code, shall do all of the following:

(a) Develop online and electronic filing processes for use by persons and entities specified in Sections 84604 and 84605 that are required to file statements and reports with the Secretary of State's office pursuant to Chapter 4 (commencing with Section 84100) and Chapter 6 (commencing with Section 86100). Those processes shall each enable a user to comply with all the disclosure requirements of this title and shall include, at a minimum, the following:

(1) A means or method whereby filers subject to this chapter may submit required filings free of charge. Any means or method developed pursuant to this provision shall not provide any additional or enhanced functions or services that exceed the minimum requirements necessary to fulfill the disclosure provisions of this title. At least one means or method shall be made available no later than December 31, 2002.

(2) The definition of a nonproprietary standardized record format or formats using industry standards for the transmission of the data that is required of those persons and entities specified in subdivision (a) of Section 84604 and Section 84605 and that conforms with the disclosure requirements of this title. The Secretary of State shall hold public hearings prior to development of the record format or formats as a means to ensure that affected entities have an opportunity to provide input into the development process. The format or formats shall be made public no later than July 1, 1999, to ensure sufficient time to comply with the requirements of this chapter.

(b) Accept test files * * * from software vendors and others wishing to file reports electronically, for the purpose of determining whether the file format is in compliance with the standardized record format developed pursuant to subdivision (a) and is compatible with the Secretary of State's system for receiving the data. A list of the software and service providers who have submitted acceptable test files shall be published by the Secretary of State and made available to the public. Acceptably formatted files shall be submitted by a filer in order to meet the requirements of this chapter.

(c) Develop a system that provides for the online or electronic transfer of the data specified in this section utilizing telecommunications technology that assures the integrity of the data transmitted and that creates safeguards against efforts to tamper with or subvert the data.

(d) Make all the data filed available on the Internet in an easily understood format that provides the greatest public access. The data shall be made available free of charge and as soon as possible after receipt. All late contribution and late independent expenditure reports, as defined by Sections 84203 and 84204, respectively, shall be made available on the Internet within 24 hours of receipt. The data made available on the Internet shall not contain the street name and building number of the persons or entity representatives listed on the electronically filed forms or any bank account number required to be disclosed pursuant to this title.

(e) Develop a procedure for filers to comply with the requirement that they sign under penalty of perjury pursuant to Section 81004.

(f) Maintain all filed data online for 10 years after the date it is filed, and then archive the information in a secure format.

(g) Provide assistance to those seeking public access to the information.

(h) Implement sufficient technology to seek to prevent unauthorized alteration or manipulation of the data.

(i) Provide the commission with necessary information to enable it to assist agencies, public officials, and others, with the compliance * * * with and administration of this title.

(j) Report to the Legislature on the implementation and development of the online and electronic filing and disclosure requirements of this chapter. The report shall include an examination of system security, private security issues, software availability, compliance costs to filers, use of the filing system and software provided by the Secretary of State, and other issues relating to this chapter, and shall recommend appropriate changes if necessary. In preparing the report, the commission may present to the Secretary of State and the Legislature its comments regarding this chapter as it relates to the duties of the commission and suggest appropriate changes if necessary. There shall be one report due before the system is operational as set forth in Section 84603, one report due no later than June 1, 2002, and one report due no later than January 31, 2003.

(k) Review the current filing and disclosure requirements of this chapter and report to the Legislature, no later than June 1, 2005, recommendations on revising these requirements so as to promote greater reliance on electronic and online submissions.

SEC. 113. Section 90004 of the Government Code is amended to read:

<< CA GOVT § 90004 >>

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 132 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

90004. (a) The Franchise Tax Board shall periodically prepare reports, which, except as otherwise provided in this section, shall be sent to the commission, the Secretary of State, and the Attorney General. If the reports relate to candidates for or committees supporting or opposing candidates for the office of Attorney General, the reports shall be sent to the commission, the Secretary of State, and the District Attorneys of Los Angeles, Sacramento, and San Francisco Counties. If the reports relate to local candidates and their controlled committees, the reports shall be sent to the commission, the local filing officer with whom the candidate or committee is required to file the originals of campaign reports pursuant to Section 84215, and the district attorney for the candidate's county of domicile.

(b) The Franchise Tax Board shall complete its report of any audit conducted on a random basis pursuant to Section 90001 within one year after the person or entity subject to the audit is selected by the commission to be audited.

(c) The reports of the Franchise Tax Board shall be public documents and shall contain in detail the Franchise Tax Board's findings with respect to the accuracy and completeness of each report and statement reviewed and its findings with respect to any report or statement that should have been but was not filed. The Secretary of State and the local filing officer shall place the audit reports in the appropriate campaign statement or lobbying files.

SEC. 114. Section 1179.2 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 1179.2 >>

1179.2. (a) The Health and Welfare Agency shall establish an interdepartmental Task Force on Rural Health to coordinate rural health policy development and program operations and to develop a strategic plan for rural health.

(b) At a minimum, the following state departmental directors, or their representatives, shall participate on this task force:

(1) The Director of Health Services.

(2) The Director of Statewide Health Planning and Development.

(3) The Director of Alcohol and Drug Programs.

(4) The Director of the Emergency Medical Services Authority.

(5) The Director of Mental Health.

(6) The Executive Director of the Managed Risk Medical Insurance Board.

(c) The task force shall review and direct the activities of the Office of Rural Health or the alternative organizational structure, as determined by the Secretary of the Health and Welfare Agency.

(d) The task force shall establish appropriate mechanisms, such as ad hoc or standing advisory committees or the holding of public hearings in rural communities, for the purpose of soliciting and receiving input from these communities, including input from rural hospitals, rural clinics, health care service plans, local governments, academia, and consumers.

SEC. 115. Section 1351.2 of the Health and Safety Code, as added by Section 2 of Chapter 491 of the Statutes of 2004, is amended to read:

<< CA HLTH & S § 1351.2 >>

1351.2. (a) If a prepaid health plan operating lawfully under the laws of Mexico elects to operate a health care service plan in this state, the prepaid health plan shall apply for licensure as a health care service plan under this chapter by filing an application for licensure in the form prescribed by the department and verified by an authorized representative of the applicant. The prepaid health plan shall be subject to the provisions of this chapter, and the rules adopted by the director thereunder, as determined by the director to be applicable. The application shall be accompanied by the fee prescribed by subdivision (a) of Section 1356 and shall demonstrate compliance with the following requirements:

(1) The prepaid health plan is constituted and operating lawfully under the laws of Mexico and, if required by Mexican law, is authorized as an Insurance Institution Specializing in Health by the Mexican Insurance Commission. If the Mexican Insurance Commission determines that the prepaid health plan is not required to be authorized as an Insurance Institution Specializing in Health under the laws of Mexico, the applicant shall obtain written verification from the Mexican Insurance Commission stating that the applicant is not required to be authorized as an Insurance Institution Specializing in Health in Mexico. A Mexican prepaid health plan not required to be an Insurance Institution Specializing in Health shall obtain written verification from the Mexican Ministry of Health that the prepaid health plan and its provider network are operating in full compliance with Mexican law.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 133 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(2) The prepaid health plan offers and sells in this state only employer-sponsored group plan contracts exclusively for the benefit of citizens of Mexico legally employed in this state, and for the benefit of their dependents regardless of nationality, that pay for, reimburse the cost of, or arrange for the provision or delivery of health care services that are to be provided or delivered wholly in Mexico, except for the provision or delivery of those health care services set forth in * * * paragraph (4).

(3) Solicitation of plan contracts in this state is made only through insurance brokers and agents licensed in this state or a third-party administrator licensed in this state, each of whom is authorized to offer and sell plan group contracts.

(4) Group contracts provide, through a contract of insurance between the prepaid health plan and an insurer admitted in this state, for the reimbursement of emergency and urgent care services provided out of area as required by subdivision (h) of Section 1345.

(5) All advertising, solicitation material, disclosure statements, evidences of coverage, and contracts are in compliance with the appropriate provisions of this chapter and the rules or orders of the director. The director shall require that each of these documents contain a legend in 10–point type, in both English and Spanish, declaring that the health care service plan contract provided by the prepaid health plan may be limited as to benefits, rights, and remedies under state and federal law.

(6) All funds received by the prepaid health plan from a subscriber are deposited in an account of a bank organized under the laws of this state or in an account of a national bank located in this state.

(7) The prepaid health plan maintains a tangible net equity as required by this chapter and the rules of the director, as calculated under United States generally accepted accounting principles, in the amount of at least one million dollars ($1,000,000). In lieu of an amount in excess of the minimum tangible net equity of one million dollars ($1,000,000), the prepaid health plan may demonstrate a reasonable, acceptable alternative reimbursement arrangement that the director may in his or her discretion accept. The prepaid health plan shall also maintain a fidelity bond and a surety bond as required by Section 1376 and the rules of the director.

(8) The prepaid health plan agrees to make all of its books and records, including the books and records of health care providers in Mexico, available to the director in the form and at the time and place requested by the director. Books and records shall be made available to the director no later than 24 hours from the date of the request.

(9) The prepaid health plan files a consent to service of process with the director and agrees to be subject to the laws of this state and the United States in any investigation, examination, dispute, or other matter arising from the advertising, solicitation, or offer and sale of a plan contract, or the management or provision of health care services in this state or throughout the United States. The prepaid health plan shall agree to notify the director, immediately and in no case later than one business day, if it is subject to any investigation, examination, or administrative or legal action relating to the prepaid health plan or the operations of the prepaid health plan initiated by the government of Mexico or the government of any state of Mexico against the prepaid health plan or any officer, director, security holder, or contractor owning 10 percent or more of the securities of the prepaid health plan. The prepaid health plan shall agree that in the event of conflict of laws in any action arising out of the license, the laws of California and the United States shall apply.

(10) The prepaid health plan agrees that disputes arising from the group contracts involving group contractholders and providers of health care services in the United States shall be subject to the jurisdiction of the courts of this state and the United States.

(b) The prepaid health plan shall pay the application processing fee and other fees and assessments set forth in Section 1356. The director, by order, may designate provisions of this chapter and rules adopted thereunder that need not be applied to a prepaid health plan licensed under the laws of Mexico when consistent with the intent and purpose of this chapter, and in the public interest.

(c) If the plan ceases to operate legally in Mexico, the director shall immediately deliver written notice to the health care service plan that it is not in compliance with the provisions of this section. If this occurs, a health care service plan shall do all of the following:

(1) Provide the director with written proof that the prepaid health plan has complied with the laws of Mexico not later than 45 days after the date the written notice is received by the health care service plan.

(2) If, by the 45th day, the health care service plan is unable to provide written confirmation that it is in full compliance with Mexican law, the director shall notify the health care service plan in writing that it is prohibited from accepting any new enrollees or subscribers. The health care service plan shall be given an additional 180 days to comply with Mexican law or to become a licensed health care service plan.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 134 of 697

(3) If, at the end of the 180–day notice period in paragraph (2), the health care service plan has not complied with the laws of Mexico or California, the director shall issue an order that the health care service plan cease and desist operations in California.

(d) This section shall become operative on January 1, 2008.

SEC. 116. Section 1596.792 of the Health and Safety Code, as amended by Section 4 of Chapter 664 of the Statutes of 2004, is amended to read:

<< CA HLTH & S § 1596.792 >>

1596.792. This chapter* * * , Chapter 3.5 (commencing with Section 1596.90), and Chapter 3.6 (commencing with Section 1597.30) do not apply to any of the following:

(a) Any health facility, as defined by Section 1250.

(b) Any clinic, as defined by Section 1202.

(c) Any community care facility, as defined by Section 1502.

(d) Any family day care home providing care for the children of only one family in addition to the operator's own children.

(e) Any cooperative arrangement between parents for the care of their children when no payment is involved and the arrangement meets all of the following conditions:

(1) In a cooperative arrangement, parents shall combine their efforts so that each parent, or set of parents, rotates as the responsible caregiver with respect to all the children in the cooperative.

(2) Any person caring for children shall be a parent, legal guardian, stepparent, grandparent, aunt, uncle, or adult sibling of at least one of the children in the cooperative.

(3) There can be no payment of money or receipt of in-kind income in exchange for the provision of care. This does not prohibit in-kind contributions of snacks, games, toys, blankets for napping, pillows, and other materials parents deem appropriate for their children. It is not the intent of this paragraph to prohibit payment for outside activities, the amount of which may not exceed the actual cost of the activity.

(4) No more than 12 children are receiving care in the same place at the same time.

(f) Any arrangement for the receiving and care of children by a relative.

(g) Any public recreation program. "Public recreation program" means a program operated by the state, city, county, special district, school district, community college district, chartered city, or chartered city and county that meets either of the following criteria:

(1) The program is operated only during hours other than normal school hours for kindergarten and grades * * * 1 to 12, inclusive, in the public school district where the program is located, or operated only during periods when students in kindergarten and grades * * * 1 to 12, inclusive, are normally not in session in the public school district where the program is located, for either of the following periods:

(A) For under 16 hours per week.

(B) For a total of 12 weeks or less during a 12–month period. This total applies to any 12 weeks within any 12–month period, without regard to whether the weeks are consecutive.

In determining "normal school hours" or periods when students are "normally not in session," the State Department of Social Services shall, when appropriate, consider the normal school hours or periods when students are normally not in session for students attending a year-round school.

(2) The program is provided to children who are over the age of four years and nine months and not yet enrolled in school and the program is operated during either of the following periods:

(A) For under 16 hours per week.

(B) For a total of 12 weeks or less during a 12–month period. This total applies to any 12 weeks within any 12–month period, without regard to whether the weeks are consecutive.

(3) The program is provided to children under the age of four years and nine months with sessions that run 12 hours per week or less and are 12 weeks or less in duration. A program subject to this paragraph may permit children to be enrolled in consecutive sessions throughout the year. However, the program shall not permit children to be enrolled in a combination of sessions that total more than 12 hours per week for each child.

(h) Extended day care programs operated by public or private schools.

(i) Any school parenting program or adult education child care program that satisfies both of the following:

(1) Is operated by a public school district or operated by an individual or organization pursuant to a contract with a public school district.

(2) Is not operated by an organization specified in Section 1596.793.

(j) Any child day care program that operates only one day per week for no more than four hours on that one day.

(k) Any child day care program that offers temporary child care services to parents and that satisfies both of the following:

(1) The services are only provided to parents and guardians who are on the same premises as the site of the child day care program.

(2) The child day care program is not operated on the site of a ski facility, shopping mall, department store, or any other similar site identified by the department by regulation.

(l) Any program that provides activities for children of an instructional nature in a classroom-like setting and satisfies both of the following:

(1) Is operated only during periods of the year when students in kindergarten and grades * * * 1 to 12, inclusive, are normally not in session in the public school district where the program is located due to regularly scheduled vacations.

(2) Offers any number of sessions during the period specified in paragraph (1) that when added together do not exceed a total of 30 days when only schoolage children are enrolled in the program or 15 days when children younger than schoolage are enrolled in the program.

(m) A program facility administered by the Department of Corrections that (1) houses both women and their children, and (2) is specifically designated for the purpose of providing substance abuse treatment and maintaining and strengthening the family unit pursuant to Chapter 4 (commencing with Section 3410) of Title 2 of Part 3 of the Penal Code, or Chapter 4.8 (commencing with Section 1174) of Title 7 of Part 2 of that code.

(n) Any crisis nursery, as defined in subdivision (a) of Section 1516.

(o) This section shall remain in effect only until January 1, 2008, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2008, deletes or extends that date.

SEC. 117. Section 1596.792 of the Health and Safety Code, as added by Section 5 of Chapter 664 of the Statutes of 2004, is amended to read:

<< CA HLTH & S § 1596.792 >>

1596.792. This chapter* * * , Chapter 3.5 (commencing with Section 1596.90), and Chapter 3.6 (commencing with Section 1597.30) do not apply to any of the following:

(a) Any health facility, as defined by Section 1250.

(b) Any clinic, as defined by Section 1202.

(c) Any community care facility, as defined by Section 1502.

(d) Any family day care home providing care for the children of only one family in addition to the operator's own children.

(e) Any cooperative arrangement between parents for the care of their children when no payment is involved and the arrangement meets all of the following conditions:

(1) In a cooperative arrangement, parents shall combine their efforts so that each parent, or set of parents, rotates as the responsible caregiver with respect to all the children in the cooperative.

(2) Any person caring for children shall be a parent, legal guardian, stepparent, grandparent, aunt, uncle, or adult sibling of at least one of the children in the cooperative.

(3) There can be no payment of money or receipt of in-kind income in exchange for the provision of care. This does not prohibit in-kind contributions of snacks, games, toys, blankets for napping, pillows, and other materials parents deem appropriate for their children. It is not the intent of this paragraph to prohibit payment for outside activities, the amount of which may not exceed the actual cost of the activity.

(4) No more than 12 children are receiving care in the same place at the same time.

(f) Any arrangement for the receiving and care of children by a relative.

(g) Any public recreation program. "Public recreation program" means a program operated by the state, city, county, special district, school district, community college district, chartered city, or chartered city and county that meets either of the following criteria:

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 136 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(1) The program is operated only during hours other than normal school hours for kindergarten and grades * * * 1 to 12, inclusive, in the public school district where the program is located, or operated only during periods when students in kindergarten and grades * * * 1 to 12, inclusive, are normally not in session in the public school district where the program is located, for either of the following periods:

(A) For under 16 hours per week.

(B) For a total of 12 weeks or less during a 12–month period. This total applies to any 12 weeks within any 12–month period, without regard to whether the weeks are consecutive.

In determining "normal school hours" or periods when students are "normally not in session," the State Department of Social Services shall, when appropriate, consider the normal school hours or periods when students are normally not in session for students attending a year-round school.

(2) The program is provided to children who are over the age of four years and nine months and not yet enrolled in school and the program is operated during either of the following periods:

(A) For under 16 hours per week.

(B) For a total of 12 weeks or less during a 12–month period. This total applies to any 12 weeks within any 12–month period, without regard to whether the weeks are consecutive.

(3) The program is provided to children under the age of four years and nine months with sessions that run 12 hours per week or less and are 12 weeks or less in duration. A program subject to this paragraph may permit children to be enrolled in consecutive sessions throughout the year. However, the program shall not permit children to be enrolled in a combination of sessions that total more than 12 hours per week for each child.

(h) Extended day care programs operated by public or private schools.

(i) Any school parenting program or adult education child care program that satisfies both of the following:

(1) Is operated by a public school district or operated by an individual or organization pursuant to a contract with a public school district.

(2) Is not operated by an organization specified in Section 1596.793.

(j) Any child day care program that operates only one day per week for no more than four hours on that one day.

(k) Any child day care program that offers temporary child care services to parents and that satisfies both of the following:

(1) The services are only provided to parents and guardians who are on the same premises as the site of the child day care program.

(2) The child day care program is not operated on the site of a ski facility, shopping mall, department store, or any other similar site identified by the department by regulation.

(l) Any program that provides activities for children of an instructional nature in a classroom-like setting and satisfies both of the following:

(1) Is operated only during periods of the year when students in kindergarten and grades * * * 1 to 12, inclusive, are normally not in session in the public school district where the program is located due to regularly scheduled vacations.

(2) Offers any number of sessions during the period specified in paragraph (1) that when added together do not exceed a total of 30 days when only schoolage children are enrolled in the program or 15 days when children younger than schoolage are enrolled in the program.

(m) A program facility administered by the Department of Corrections that (1) houses both women and their children, and (2) is specifically designated for the purpose of providing substance abuse treatment and maintaining and strengthening the family unit pursuant to Chapter 4 (commencing with Section 3410) of Title 2 of Part 3 of the Penal Code, or Chapter 4.8 (commencing with Section 1174) of Title 7 of Part 2 of that code.

(n) This section shall become operative on January 1, 2008.

SEC. 118. Section 11571.1 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 11571.1 >>

11571.1. (a) To effectuate the purposes of this article, the city prosecutor or city attorney may file, in the name of the people, an action for unlawful detainer against any person who is in violation of the nuisance or illegal purpose provisions of subdivision 4 of Section 1161 of the Code of Civil Procedure, with respect to a controlled substance purpose. In filing this action, which shall be based upon an arrest report or on another action or report by a regulatory or law enforcement agency, the city prosecutor or

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 137 of 697

city attorney shall utilize the procedures set forth in Chapter 4 (commencing with Section 1159) of Title 3 of Part 3 of the Code of Civil Procedure, except that in cases filed under this section, the following also shall apply:

(1)(A) Prior to filing an action pursuant to this section, the city prosecutor or city attorney shall give 30 calendar days' written notice to the owner, requiring the owner to file an action for the removal of the person who is in violation of the nuisance or illegal purpose provisions of subdivision 4 of Section 1161 of the Code of Civil Procedure with respect to a controlled substance purpose.

(B) This notice shall include sufficient documentation establishing a violation of the nuisance or illegal purpose provisions of subdivision 4 of Section 1161 of the Code of Civil Procedure and shall be served upon the owner and the tenant in accordance with subdivision (e) of this section.

(C) The notice to the tenant shall also include on the bottom of its front page, in at least 14–point bold type, the following:

"Notice to Tenant: This notice is not a notice of eviction. However, you should know that an eviction action may soon be filed in court against you for suspected drug activity, as described above. You should call (insert name and telephone number of the city attorney or prosecutor pursuing the action) or legal aid to stop the eviction action if any of the following is applicable:

(i) You are not the person named in this notice.

(ii) The person named in the notice does not live with you.

(iii) The person named in the notice has permanently moved.

(iv) You do not know the person named in the notice.

(v) You have any other legal defense or legal reason to stop the eviction action.

A list of legal assistance providers is attached to this notice. Some provide free legal help if you are eligible."

(D) The owner shall, within 30 calendar days of the mailing of the written notice, either provide the city prosecutor or city attorney with all relevant information pertaining to the unlawful detainer case, or provide a written explanation setting forth any safety-related reasons for noncompliance, and an assignment to the city prosecutor or city attorney of the right to bring an unlawful detainer action against the tenant.

(E) The assignment shall be on a form provided by the city prosecutor or city attorney and may contain a provision for costs of investigation, discovery, and reasonable attorney's fees, in an amount not to exceed six hundred dollars ($600).

(F) If the city prosecutor or city attorney accepts the assignment of the right of the owner to bring the unlawful detainer action, the owner shall retain all other rights and duties, including the handling of the tenant's personal property, following issuance of the writ of possession and its delivery to and execution by the appropriate agency.

(2) Upon the failure of the owner to file an action pursuant to this section, or to respond to the city prosecutor or city attorney as provided in paragraph (1), or having filed an action, if the owner fails to prosecute it diligently and in good faith, the city prosecutor or city attorney may file and prosecute the action, and join the owner as a defendant in the action. This action shall have precedence over any similar proceeding thereafter brought by the owner, or to one previously brought by the owner and not prosecuted diligently and in good faith. Service of the summons and complaint upon the defendant owner shall be in accordance with Sections 415.10, 415.20, 415.30, 415.40, and 415.50 of the Code of Civil Procedure.

(3) If a jury or court finds the defendant tenant guilty of unlawful detainer in a case filed pursuant to paragraph (2), the city prosecutor or city attorney may be awarded costs, including the costs of investigation and discovery and reasonable attorney's fees. These costs shall be assessed against the defendant owner, to whom notice was directed pursuant to paragraph (1), and once an abstract of judgment is recorded, it shall constitute a lien on the subject real property.

(4) Nothing in this article shall prevent a local governing body from adopting and enforcing laws, consistent with this article, relating to drug abatement. Where local laws duplicate or supplement this article, this article shall be construed as providing alternative remedies and not preempting the field.

(5) Nothing in this article shall prevent a tenant from receiving relief against a forfeiture of a lease pursuant to Section 1179 of the Code of Civil Procedure.

(b) In any proceeding brought under this section, the court may, upon a showing of good cause, issue a partial eviction ordering the removal of any person, including, but not limited to, members of the tenant's household if the court finds that the person has engaged in the activities described in subdivision (a). Persons removed pursuant to this section may be permanently barred from returning to or reentering any portion of the entire premises. The court may further order as an express condition of the tenancy that the remaining tenants shall not give permission to or invite any person who has been removed pursuant to this subdivision to return to or reenter any portion of the entire premises.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 138 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(c) For the purposes of this section, "controlled substance purpose" means the manufacture, cultivation, importation into the state, transportation, possession, possession for sale, sale, furnishing, administering, or giving away, or providing a place to use or fortification of a place involving, cocaine, phencyclidine, heroin, methamphetamine, or any other controlled substance, in a violation of subdivision (a) of Section 11350, Section 11351, 11351.5, 11352, or 11359, subdivision (a) of Section 11360, or Section 11366, 11366.6, 11377, 11378, 11378.5, 11379, 11379.5, 11379.6, or 11383, if the offense occurs on the subject real property and is documented by the observations of a peace officer.

(d) Notwithstanding subdivision (b) of Section 68097.2 of the Government Code, a public entity may waive all or part of the costs incurred in furnishing the testimony of a peace officer in an unlawful detainer action brought pursuant to this section.

(e) The notice and documentation described in paragraph (1) of subdivision (a) shall be given in writing and may be given either by personal delivery or by deposit in the United States mail in a sealed envelope, postage prepaid, addressed to the owner at the address known to the public entity giving the notice, or as shown on the last equalized assessment roll, if not known. Separate notice of not less than 30 calendar days and documentation shall be provided to the tenant in accordance with this subdivision. Service by mail shall be deemed to be completed at the time of deposit in the United States mail. Proof of giving the notice may be made by a declaration signed under penalty of perjury by any employee of the public entity which shows service in conformity with this section.

(f) This section shall only apply to the following courts:

(1) In the County of Los Angeles, any court having jurisdiction over unlawful detainer cases involving real property situated in the City of Los Angeles or in the City of Long Beach.

(2) In the County of San Diego, any court having jurisdiction over unlawful detainer cases involving real property situated in the City of San Diego.

(3) In the County of Alameda, any court with jurisdiction over unlawful detainer cases involving real property situated in the City of Oakland.

(g)(1) The city attorney and city prosecutor of each participating jurisdiction shall provide to the Judicial Council the following information:

(A) The number of notices provided pursuant to paragraph (1) of subdivision (a).

(B) The number of cases filed by an owner, upon notice.

(C) The number of assignments executed by owners to the city attorney or city prosecutor.

(D) The number of three-day, 30–day, or 60–day notices issued by the city attorney or city prosecutor.

(E) The number of cases filed by the city attorney or city prosecutor.

(F) The number of times that an owner is joined as a defendant pursuant to this section.

(G) As to each case filed by an owner, the city attorney, or the city prosecutor, the following information:

(i) The number of judgments ordering an eviction or partial eviction (specify whether default, stipulated, or following trial).

(ii) The number of cases, listed by separate categories, in which the case was withdrawn or in which the tenant prevailed.

(iii) The number of other dispositions (specify disposition).

(iv) The number of defendants represented by counsel.

(v) Whether the case was a trial by the court or a trial by a jury.

(vi) Whether an appeal was taken, and, if so, the result of the appeal.

(vii) The number of cases in which partial eviction was requested, and the number of cases in which the court ordered a partial eviction.

(H) As to each case in which a notice was issued, but no case was filed, the following information:

(i) The number of instances in which a tenant voluntarily vacated the unit.

(ii) The number of instances in which a tenant vacated a unit prior to the providing of the notice.

(iii) The number of cases in which the notice provided pursuant to subdivision (a) was erroneously sent to the tenant. (List reasons, if known, for the erroneously sent notice, such as reliance on information on the suspected controlled substance law violator's name or address that was incorrect; clerical error; or any other reason [2] )

(iv) The number of other resolutions (specify resolution).

(2)(A) Information compiled pursuant to this section shall be reported annually to the Judicial Council on or before January 30 of each year.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 139 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(B) The Judicial Council shall thereafter submit a brief report to the Senate and Assembly * * * Committees on the Judiciary once on or before April 15, 2007, and once on or before April 15, 2009, summarizing the information collected pursuant to this section and evaluating the merits of the pilot programs established by this section.

(h) This section shall remain in effect only until January 1, 2010, and as of that date is repealed unless a later enacted statute deletes or extends that date.

SEC. 119. Section 18070 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 18070 >>

18070. (a) The Legislature finds and declares all of the following:

(1) The financial hardship endured by someone who is buying or selling a manufactured home for the purpose of using it for a primary residence is more profound than the hardship of someone who is selling or purchasing a manufactured home for investment purposes.

(2) It is, therefore, the intent of the Legislature in enacting this chapter that any claims for primary residences submitted, pursuant to this chapter, by a claimant for payment from the fund shall be given priority over claims submitted for investment purposes.

(3) The distinctions made in this chapter between claims made for personal residential purposes and claims made for investment purposes shall reflect the priorities set forth in this paragraph.

(4) The costs of seeking and obtaining civil judgments and related collection efforts to support claims for compensation often exceed the ability of claimants and the amounts received.

(5) The costs and efforts of public entities obtaining criminal or administrative restitution orders could provide further benefits if these orders could be used as the basis for compensation claims.

(b) The following definitions shall apply for the purposes of this chapter:

(1) "Actual and direct loss" includes the following:

(A) The amount of the actual and direct loss, interest at the statutory rate from the date of loss, plus court costs and reasonable attorney's fees incurred in pursuit of the judgment, not to exceed 25 percent of the amount of the judgment, if the claim is based on a judgment obtained by a private attorney or an attorney employed by a nonprofit corporation, and not to exceed 35 percent of the amount of the judgment if the claim is based on a judgment obtained by an attorney employed by a public agency.

(B) The amount of the actual and direct loss, if the claim is not based on a judgment. However, the claimant may collect actual and reasonable costs incurred in pursuit of compensation including attorney's fees not exceeding 15 percent of the amount of the claim and court costs, if any.

"Actual and direct loss" does not include any punitive damages or damages awarded for negligent or intentional infliction of emotional distress.

(2) "Claimant" does not include a person holding a lien on, or a person possessing a secondary interest in, a manufactured home.

(3) "Conversion" means the unlawful appropriation of the property of another.

(4) "Judgment" means any of the following:

(A) A final judgment in a court of competent jurisdiction, other than a court in another state, including, but not limited to, a criminal restitution order issued pursuant to subdivision (f) of Section 1202.4 of the Penal Code or Section 3663 of Title 18 of the United States Code.

(B) An order of the director, including an order for restitution, based on an accusation filed pursuant to Article 3 (commencing with Section 18058) of Chapter 7, after an opportunity for a hearing.

(5) "Complaint" means the facts of the underlying transaction upon which the criminal restitution order or administrative order is based.

(6) "Judgment debtor" means any defendant who is the subject of the criminal restitution order or civil judgment, any respondent who is the subject of an administrative accusation and order, or any person responsible for any violation upon which payment is made, as determined by the department.

(c) There is hereby created in the State Treasury the Manufactured Home Recovery Fund. The money in the fund shall be used only for the purposes of this chapter, including payment of the department's administrative costs incurred pursuant to this chapter. The department's costs may include any investigative costs incurred under this chapter, costs incurred to render a decision pursuant to Section 18070.3, and costs incurred in defending a decision on appeal.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 140 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(d) The moneys in the fund may be invested pursuant to Chapter 3 (commencing with Section 16430) of Part 2 of Division 4 of Title 2 of the Government Code. All income derived from investments of the fund shall be returned to the fund by the Treasurer as the income is earned.

(e) Notwithstanding Section 13340 of the Government Code, the moneys in the fund are hereby continuously appropriated to make the payments and distributions required by this chapter.

SEC. 120. Section 25395.110 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 25395.110 >>

25395.110. (a) A person who, before January 1, 2010, qualifies for immunity pursuant to Chapter 6.82 (commencing with Section 25395.60), as that chapter read on December 31, 2009, shall continue to have that immunity on and after January 1, 2010, if the person continues to be in compliance with the requirements of former Chapter 6.82 (commencing with Section 25395.60), including, but not limited to, compliance with all response plans approved pursuant to Article 6 (commencing with Section 25395.90) of Chapter 6.82**\***, and compliance with all other applicable laws.

(b) This article shall become operative January 1, 2010.

SEC. 121. Section 25395.65 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 25395.65 >>

25395.65. "All appropriate inquiries" has the following meanings:

(a) Except as provided in subdivision (c), until the date when the standards and practices established by the Administrator of the United States Environmental Protection Agency pursuant to Section 101(35)(B)(ii) of the federal act (42 U.S.C. Sec. 9601(35)(B)(ii)) are adopted and take effect, "all appropriate inquiries" means:

(1) For property acquired on or before December 1, 2000, compliance with American Society for Testing and Materials Standard EI527–97 entitled "Standard Practice for Environmental Site Assessment": Phase 1 Environmental Site Assessment Process.

(2) For property acquired after December 1, 2000, compliance with American Society for Testing and Materials Standard EI527–00.

(b) Except as provided in subdivision (c), on and after the date when the standards and practices established by the Administrator of the United States Environmental Protection Agency pursuant to Section 101(35)(B)(ii) of the federal act (42 U.S.C. Sec. 9601(35)(B)(ii)) are adopted and take effect, "all appropriate inquiries" means compliance with those standards, except that any portion of the inquiry that includes the practice of engineering or the practice of geology shall be carried out in conformance with applicable state statutes.

(c) If the property is used solely for residential use and has four or fewer units at the time of acquisition by a nongovernmental or noncommercial entity, "all appropriate inquiries" means that a site inspection and title search does not reveal a basis for further investigation.

SEC. 122. Section 25395.67 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 25395.67 >>

25395.67. "Appropriate care" means either of the following:

(a) The performance of a response action, with respect to hazardous materials found at a site, for which the agency makes the determination specified in paragraph (1) of subdivision (c) of Section 25395.96 and that meets all of the following conditions:

(1) The response action is determined by an agency to be necessary to prevent an unreasonable risk to human health and safety or the environment, as defined in Section 25395.90.

(2) The response action is performed in accordance with a response plan approved by the agency pursuant to Article 6 (commencing with Section 25395.90).

(3) The approved response plan includes a provision for oversight and approval of the completed response action by the agency pursuant to Article 6 (commencing with Section 25395.90).

(b) A determination that no further action is required pursuant to Section 25395.95.

SEC. 123. Section 25395.93 of the Health and Safety Code is amended to read:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 141 of 697

<< CA HLTH & S § 25395.93 >>

25395.93. (a) A person may withdraw from an agreement entered into pursuant to this article by providing a 30–day written notice to the agency and doing both of the following:

(1) Reimbursing the agency for all costs incurred by the agency pursuant to the agreement.

(2) Demonstrating to the satisfaction of the agency * * * that conditions at the site to which the agreement applies do not pose an endangerment to public health and safety or the environment. If the agency determines that conditions at the site pose an endangerment to public health, safety, or the environment, this article does not prevent the agency from exercising its authority to take appropriate response actions or to cause the person or persons responsible for the endangerment to take appropriate response actions.

(b) A person who enters into an agreement with an agency pursuant to this article shall reimburse the agency for all agency costs, including, but not limited to, costs incurred while reviewing a site assessment plan or a response plan or overseeing the implementation of a site assessment or response plan by the person pursuant to this article, except that the department's costs shall be reimbursed pursuant to Chapter 6.66 (commencing with Section 25269) and shall be recoverable pursuant to Section 25360.

(c) The entry into an agreement pursuant to this article shall not constitute an admission of fact or liability or conclusion of law for any purpose or proceeding and a person who enters into an agreement under this article shall not be deemed liable under any other provision of law solely by reason of entering into that agreement.

(d) If the conditions described in paragraph (1) of subdivision (c) of Section 25395.81 or in subdivision (d) of Section 25395.81 occur, an agency may withdraw from an agreement entered into pursuant to this chapter by providing a 30–day written notice to the other party.

SEC. 124. Section 25395.95 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 25395.95 >>

25395.95. (a) After implementation of the site assessment plan, the person shall submit to the agency a report of the findings made pursuant to the plan* * * . Based upon a review of this information, the agency shall determine whether a response action is necessary to address any unreasonable risk from hazardous materials at the site.

(b) If the agency determines * * * that there is no unreasonable risk at the site and that there are no hazardous materials at the site at levels that are not suitable for unrestricted use of the site, the agency shall make a finding that no further action is necessary at the site.

(c) If the agency determines that there are hazardous materials at the site at levels that are not suitable for unrestricted use, but that are suitable for the reasonably anticipated foreseeable use of the site based on current and projected land use and zoning designations, the agency shall find that no further action is necessary at the site except that a land use control that imposes appropriate restrictions pursuant to Section 25395.99 shall be executed and recorded and the public comment and participation requirements of Section 25395.96 shall be met before the execution and recording of any land use control. On or before 15 days after the date when the land use control is recorded pursuant to Section 25395.99, the agency shall state in writing that this act constitutes "appropriate care" for the purposes of Section 25395.67.

SEC. 125. Section 25395.96 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 25395.96 >>

25395.96. (a) If, upon review of the site assessment prepared pursuant to this article, the agency determines that a response action is necessary to prevent or eliminate an unreasonable risk, the bona fide purchaser, innocent landowner, or contiguous property owner shall submit a response plan to the agency to conduct a response action at the site, in conformance with the agreement entered into pursuant to Section 25395.92. The response plan shall include all of the following:

(1)(A) An opportunity for the public, other agencies, and the host jurisdiction to participate in decisions regarding the response action, taking into consideration * * * the nature of the community interest.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 142 of 697

(B) If a regional board is the agency, the regional board shall provide access to the proposed response plan and site assessment at the regional board for public review, conduct a public hearing with 30 days' prior notice, provide notice on the agenda of the public hearing, and take action on the response plan in a regularly scheduled regional board meeting.

(C) If the department is the agency, the methods for public participation proposed in the response plan shall include reasonable public notice in English and other languages commonly spoken in the area, access to the proposed response plan and site assessment at the agency and local repositories, and reasonable opportunity to comment. The department shall hold a public meeting in the area to receive comments if a public meeting is requested. The department shall consider any comments received prior to acting on the response plan. Methods for public participation may also include, but are not limited to, the use of factsheets, public notices, direct notification of interested parties, public meetings, and an opportunity to comment on the proposed response plan prior to approval.

(D) To the extent possible, the agency shall coordinate its public participation activities with those undertaken by the host jurisdiction and other agencies associated with the development of the property, to avoid duplication to the extent feasible.

(E) It is the intent of the Legislature that the public participation process established pursuant to this subdivision ensures full and robust participation of a community affected by this chapter.

(2) Identification of the release or threatened release that is the subject of the response plan and documentation that the plan is based on an adequate characterization of the site.

(3) An identification of the response plan objectives and the proposed remedy, and an identification of the reasonably anticipated future land uses of the site and of the current and projected land use and zoning designations. This identification shall include confirmation by the host jurisdiction that the anticipated future land uses and current and projected land uses and zoning designations are accurate.

(4) A description of activities that will be implemented to control any endangerment that may occur during the response action at the site.

(5) A description of any land use control that is part of the response action.

(6) A description of wastes other than hazardous materials at the site and how they will be managed in conjunction with the response action.

(7) Provisions for the removal of containment or storage vessels and other sources of contamination, including soils and free product, that cause an unreasonable risk.

(8) Provisions for the agency to require further response actions based on the discovery of hazardous materials that pose an unreasonable risk to human health and safety or the environment that are discovered during the course of the response action or subsequent development of the site.

(9) Any other information that the agency determines is necessary.

(b) The agency shall evaluate the adequacy of the plan submitted pursuant to subdivision (a) and shall approve the plan if the agency makes all of the following findings:

(1) The plan contains the information required by subdivision (a).

(2) When implemented, the plan will place the site in a condition that allows it to be used for its reasonably anticipated future land use without unreasonable risk to human health and safety and the environment.

(3) The plan addresses any public comments.

(4) If applicable, the plan provides for long-term operation and maintenance, including land use and engineering controls, that are part of the remedy contained in the response plan.

(c)(1) On or before 60 days after the date an agency receives a response plan, the agency shall make a written determination that proper completion of the response plan constitutes "appropriate care" for purposes of subdivision (a) of Section 25395.67.

(2) Upon approval of the response plan by the agency, the agency shall notify all appropriate persons, including the host jurisdiction.

(d) If the use of the property changes, after a response plan is approved, to a use that requires a higher level of protection, the agency may require the preparation and implementation of a new response plan pursuant to this article.

(e) The owner of a site shall not make any change in use of a site inconsistent with any land use control recorded for the site, unless the change is approved by the agency in accordance with subdivision (f) of Section 25395.99.

SEC. 126. Section 25404 of the Health and Safety Code, as amended by Section 9 of Chapter 880 of the Statutes of 2004, is amended to read:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 143 of 697

<< CA HLTH & S § 25404 >>

25404. (a) For purposes of this chapter, the following terms shall have the following meanings:

(1)(A) "Certified Unified Program Agency" or "CUPA" means the agency certified by the secretary to implement the unified program specified in this chapter within a jurisdiction.

(B) "Participating Agency" or "PA" means a state or local agency that has a written agreement with the CUPA pursuant to subdivision (d) of Section 25404.3, and is approved by the secretary, to implement or enforce one or more of the unified program elements specified in subdivision (c), in accordance with Sections 25404.1 and 25404.2.

(C) "Unified Program Agency" or "UPA" means the CUPA, or its participating agencies to the extent each PA has been designated by the CUPA, pursuant to a written agreement, to implement or enforce a particular unified program element specified in subdivision (c). The UPAs have the responsibility and authority to implement and enforce the requirements listed in subdivision (c), and the regulations adopted to implement the requirements listed in subdivision (c), to the extent provided by Chapter 6.5 (commencing with Section 25100), Chapter 6.67 (commencing with Section 25270), Chapter 6.7 (commencing with Section 25280), Chapter 6.95 (commencing with Section 25500), and Sections 25404.1 and 25404.2. After a CUPA has been certified by the secretary, the unified program agencies and the state agencies carrying out responsibilities under this chapter shall be the only agencies authorized to enforce the requirements listed in subdivision (c) within the jurisdiction of the CUPA.

(2) "Department" means the Department of Toxic Substances Control.

(3) "Minor violation" means the failure of a person to comply with any requirement or condition of any applicable law, regulation, permit, information request, order, variance, or other requirement, whether procedural or substantive, of the unified program that the UPA is authorized to implement or enforce pursuant to this chapter, and that does not otherwise include any of the following:

(A) A violation that results in injury to persons or property, or that presents a significant threat to human health or the environment.

(B) A knowing, willful, or intentional violation.

(C) A violation that is a chronic violation, or that is committed by a recalcitrant violator. In determining whether a violation is chronic or a violator is recalcitrant, the UPA shall consider whether there is evidence indicating that the violator has engaged in a pattern of neglect or disregard with respect to applicable regulatory requirements.

(D) A violation that results in an emergency response from a public safety agency.

(E) A violation that enables the violator to benefit economically from the noncompliance, either by reduced costs or competitive advantage.

(F) A class I violation as provided in Section 25117.6.

(G) A class II violation committed by a chronic or a recalcitrant violator, as provided in Section 25117.6.

(H) A violation that hinders the ability of the UPA to determine compliance with any other applicable local, state, or federal rule, regulation, information request, order, variance, permit, or other requirement.

(4) "Secretary" means the Secretary for Environmental Protection.

(5) "Unified program facility" means all contiguous land and structures, other appurtenances, and improvements on the land that are subject to the requirements listed in subdivision (c).

(6) "Unified program facility permit" means a permit issued pursuant to this chapter. For the purposes of this chapter, a unified program facility permit encompasses the permitting requirements of Section 25284, and any permit or authorization requirements under any local ordinance or regulation relating to the generation or handling of hazardous waste or hazardous materials, but does not encompass the permitting requirements of a local ordinance that incorporates provisions of the Uniform Fire Code or the Uniform Building Code.

(b) The secretary shall adopt implementing regulations and implement a unified hazardous waste and hazardous materials management regulatory program, which shall be known as the unified program, after holding an appropriate number of public hearings throughout the state. The unified program shall be developed in close consultation with the director, the Director of the Office of Emergency Services, the State Fire Marshal, the executive officers and chairpersons of the State Water Resources Control Board and the California regional water quality control boards, the local health officers, local fire services, and other appropriate officers of interested local agencies, and affected businesses and interested members of the public, including environmental organizations.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 144 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(c) The unified program shall consolidate the administration of the following requirements, and shall, to the maximum extent feasible within statutory constraints, ensure the coordination and consistency of any regulations adopted pursuant to those requirements:

(1)(A) Except as provided in subparagraphs (B) and (C), the requirements of Chapter 6.5 (commencing with Section 25100), and the regulations adopted by the department pursuant thereto, are applicable to all of the following:

(i) Hazardous waste generators, persons operating pursuant to a permit-by-rule, conditional authorization, or conditional exemption, pursuant to Chapter 6.5 (commencing with Section 25100) or the regulations adopted by the department.

(ii) Persons managing perchlorate materials.

(iii) Persons subject to Article 10.1 (commencing with Section 25211) of Chapter 6.5.

(B) The unified program shall not include the requirements of paragraph (3) of subdivision (c) of Section 25200.3, the requirements of Sections 25200.10 and 25200.14, and the authority to issue an order under Sections 25187 and 25187.1, with regard to those portions of a unified program facility that are subject to one of the following:

(i) A corrective action order issued by the department pursuant to Section 25187.

(ii) An order issued by the department pursuant to Chapter 6.8 (commencing with Section 25300) or Chapter 6.85 (commencing with Section 25396).

(iii) A remedial action plan approved pursuant to Chapter 6.8 (commencing with Section 25300) or Chapter 6.85 (commencing with Section 25396).

(iv) A cleanup and abatement order issued by a California regional water quality control board pursuant to Section 13304 of the Water Code, to the extent that the cleanup and abatement order addresses the requirements of the applicable section or sections listed in this subparagraph.

(v) Corrective action required under subsection (u) of Section 6924 of Title 42 of the United States Code or subsection (h) of Section 6928 of Title 42 of the United States Code.

(vi) An environmental assessment pursuant to Section 25200.14 or a corrective action pursuant to Section 25200.10 or paragraph (3) of subdivision (c) of Section 25200.3, that is being overseen by the department.

(C) The unified program shall not include the requirements of Chapter 6.5 (commencing with Section 25100), and the regulations adopted by the department pursuant thereto, applicable to persons operating transportable treatment units, except that any required notice regarding transportable treatment units shall also be provided to the CUPAs.

(2) The requirement of subdivision (c) of Section 25270.5 for owners and operators of aboveground storage tanks to prepare a spill prevention control and countermeasure plan.

(3)(A) Except as provided in subparagraphs (B) and (C), the requirements of Chapter 6.7 (commencing with Section 25280) concerning underground storage tanks and the requirements of any underground storage tank ordinance adopted by a city or county.

(B) The unified program may not include the responsibilities assigned to the State Water Resources Control Board pursuant to Section 25297.1.

(C) The unified program may not include the corrective action requirements of Sections 25296.10 to 25296.40, inclusive.

(4) The requirements of Article 1 (commencing with Section 25500) of Chapter 6.95 concerning hazardous material release response plans and inventories.

(5) The requirements of Article 2 (commencing with Section 25531) of Chapter 6.95, concerning the accidental release prevention program.

(6) The requirements of subdivisions (b) and (c) of Section 80.103 of the Uniform Fire Code, as adopted by the State Fire Marshal pursuant to Section 13143.9, concerning hazardous material management plans and inventories.

(d) To the maximum extent feasible within statutory constraints, the secretary shall consolidate, coordinate, and make consistent these requirements of the unified program with other requirements imposed by other federal, state, regional, or local agencies upon facilities regulated by the unified program.

(e)(1) The secretary shall establish standards applicable to CUPAs, participating agencies, state agencies, and businesses specifying the data to be collected and submitted by unified program agencies in administering the programs listed in subdivision (c). Those standards shall incorporate any standard developed under Section 25503.3.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 145 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(2) The secretary shall establish an electronic geographic information management system capable of receiving all data collected by the unified program agencies pursuant to this subdivision and Section 25504.1. The secretary shall make all nonconfidential data available on the Internet.

(3)(A) As funding becomes available, the secretary shall establish, consistent with paragraph (2), and thereafter maintain, a statewide database.

(B) The secretary, or one or more of the boards, departments, or offices within the California Environmental Protection Agency, shall seek available federal funding for purposes of implementing this subdivision.

(4) Once the statewide database is established, the secretary shall work with the CUPAs to develop a phased-in schedule for the electronic collection and submittal of information to be included in the statewide database, giving first priority to information relating to those chemicals determined by the secretary to be of greatest concern. The secretary, in making this determination, shall consult with the CUPAs, the Office of Emergency Services, the State Fire Marshal, and the boards, departments, and offices within the California Environmental Protection Agency. The information initially included in the statewide database shall include, but is not limited to, the hazardous materials inventory information required to be submitted pursuant to Section 25504.1 for perchlorate materials.

(f) This section shall remain in effect only until January 1, 2006, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2006, deletes or extends that date.

SEC. 127. Section 25404 of the Health and Safety Code, as amended by Section 10 of Chapter 880 of the Statutes of 2004, is amended to read:

<< CA HLTH & S § 25404 >>

25404. (a) For purposes of this chapter, the following terms shall have the following meanings:

(1)(A) "Certified Unified Program Agency" or "CUPA" means the agency certified by the secretary to implement the unified program specified in this chapter within a jurisdiction.

(B) "Participating Agency" or "PA" means a state or local agency that has a written agreement with the CUPA pursuant to subdivision (d) of Section 25404.3, and is approved by the secretary, to implement or enforce one or more of the unified program elements specified in subdivision (c), in accordance with Sections 25404.1 and 25404.2.

(C) "Unified Program Agency" or "UPA" means the CUPA, or its participating agencies to the extent each PA has been designated by the CUPA, pursuant to a written agreement, to implement or enforce a particular unified program element specified in subdivision (c). The UPAs have the responsibility and authority to implement and enforce the requirements listed in subdivision (c), and the regulations adopted to implement the requirements listed in subdivision (c), to the extent provided by Chapter 6.5 (commencing with Section 25100), Chapter 6.67 (commencing with Section 25270), Chapter 6.7 (commencing with Section 25280), Chapter 6.95 (commencing with Section 25500), and Sections 25404.1 and 25404.2. After a CUPA has been certified by the secretary, the unified program agencies and the state agencies carrying out responsibilities under this chapter shall be the only agencies authorized to enforce the requirements listed in subdivision (c) within the jurisdiction of the CUPA.

(2) "Department" means the Department of Toxic Substances Control.

(3) "Secretary" means the Secretary for Environmental Protection.

(4) "Unified program facility" means all contiguous land and structures, other appurtenances, and improvements on the land that are subject to the requirements listed in subdivision (c).

(5) "Unified program facility permit" means a permit issued pursuant to this chapter. For the purposes of this chapter, a unified program facility permit encompasses the permitting requirements of Section 25284, and any permit or authorization requirements under any local ordinance or regulation relating to the generation or handling of hazardous waste or hazardous materials, but does not encompass the permitting requirements of a local ordinance that incorporates provisions of the Uniform Fire Code or the Uniform Building Code.

(b) The secretary shall adopt implementing regulations and implement a unified hazardous waste and hazardous materials management regulatory program, which shall be known as the unified program, after holding an appropriate number of public hearings throughout the state. The unified program shall be developed in close consultation with the director, the Director of the Office of Emergency Services, the State Fire Marshal, the executive officers and chairpersons of the State Water Resources Control Board and the California regional water quality control boards, the local health officers, local fire services, and other

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 146 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

appropriate officers of interested local agencies, and affected businesses and interested members of the public, including environmental organizations.

(c) The unified program shall consolidate the administration of the following requirements, and shall, to the maximum extent feasible within statutory constraints, ensure the coordination and consistency of any regulations adopted pursuant to those requirements:

(1)(A) Except as provided in subparagraphs (B) and (C), the requirements of Chapter 6.5 (commencing with Section 25100), and the regulations adopted by the department pursuant thereto, are applicable to all of the following:

(i) Hazardous waste generators, persons operating pursuant to a permit-by-rule, conditional authorization, or conditional exemption, pursuant to Chapter 6.5 (commencing with Section 25100) or the regulations adopted by the department.

(ii) Persons managing perchlorate materials.

(iii) Persons subject to Article 10.1 (commencing with Section 25211) of Chapter 6.5.

(B) The unified program shall not include the requirements of paragraph (3) of subdivision (c) of Section 25200.3, the requirements of Sections 25200.10 and 25200.14, and the authority to issue an order under Sections 25187 and 25187.1, with regard to those portions of a unified program facility that are subject to one of the following:

(i) A corrective action order issued by the department pursuant to Section 25187.

(ii) An order issued by the department pursuant to Chapter 6.8 (commencing with Section 25300) or Chapter 6.85 (commencing with Section 25396).

(iii) A remedial action plan approved pursuant to Chapter 6.8 (commencing with Section 25300) or Chapter 6.85 (commencing with Section 25396).

(iv) A cleanup and abatement order issued by a California regional water quality control board pursuant to Section 13304 of the Water Code, to the extent that the cleanup and abatement order addresses the requirements of the applicable section or sections listed in this subparagraph.

(v) Corrective action required under subsection (u) of Section 6924 of Title 42 of the United States Code or subsection (h) of Section 6928 of Title 42 of the United States Code.

(vi) An environmental assessment pursuant to Section 25200.14 or a corrective action pursuant to Section 25200.10 or paragraph (3) of subdivision (c) of Section 25200.3, that is being overseen by the department.

(C) The unified program shall not include the requirements of Chapter 6.5 (commencing with Section 25100), and the regulations adopted by the department pursuant thereto, applicable to persons operating transportable treatment units, except that any required notice regarding transportable treatment units shall also be provided to the CUPAs.

(2) The requirement of subdivision (c) of Section 25270.5 for owners and operators of aboveground storage tanks to prepare a spill prevention control and countermeasure plan.

(3)(A) Except as provided in subparagraphs (B) and (C), the requirements of Chapter 6.7 (commencing with Section 25280) concerning underground storage tanks and the requirements of any underground storage tank ordinance adopted by a city or county.

(B) The unified program may not include the responsibilities assigned to the State Water Resources Control Board pursuant to Section 25297.1.

(C) The unified program may not include the corrective action requirements of Sections 25296.10 to 25296.40, inclusive.

(4) The requirements of Article 1 (commencing with Section 25500) of Chapter 6.95 concerning hazardous material release response plans and inventories.

(5) The requirements of Article 2 (commencing with Section 25531) of Chapter 6.95, concerning the accidental release prevention program.

(6) The requirements of subdivisions (b) and (c) of Section 80.103 of the Uniform Fire Code, as adopted by the State Fire Marshal pursuant to Section 13143.9, concerning hazardous material management plans and inventories.

(d) To the maximum extent feasible within statutory constraints, the secretary shall consolidate, coordinate, and make consistent these requirements of the unified program with other requirements imposed by other federal, state, regional, or local agencies upon facilities regulated by the unified program.

(e)(1) The secretary shall establish standards applicable to CUPAs, participating agencies, state agencies, and businesses specifying the data to be collected and submitted by unified program agencies in administering the programs listed in subdivision (c). Those standards shall incorporate any standard developed under Section 25503.3.

(2) The secretary shall establish an electronic geographic information management system capable of receiving all data collected by the unified program agencies pursuant to this subdivision and Section 25504.1. The secretary shall make all nonconfidential data available on the Internet.

(3)(A) As funding becomes available, the secretary shall establish, consistent with paragraph (2), and thereafter maintain, a statewide database.

(B) The secretary, or one or more of the boards, departments, or offices within the California Environmental Protection Agency, shall seek available federal funding for purposes of implementing this subdivision.

(4) Once the statewide database is established, the secretary shall work with the CUPAs to develop a phased-in schedule for the electronic collection and submittal of information to be included in the statewide database, giving first priority to information relating to those chemicals determined by the secretary to be of greatest concern. The secretary, in making this determination, shall consult with the CUPAs, the Office of Emergency Services, the State Fire Marshal, and the boards, departments, and offices within the California Environmental Protection Agency. The information initially included in the statewide database shall include, but is not limited to, the hazardous materials inventory information required to be submitted pursuant to Section 25504.1 for perchlorate materials.

(f) This section shall become operative January 1, 2006.

SEC. 128. Section 25404.3 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 25404.3 >>

25404.3. (a) The secretary shall, within a reasonable time after submission of a complete application for certification pursuant to Section 25404.2, and regulations adopted pursuant to that section, but not to exceed 180 days, review the application, and, after holding a public hearing, determine if the application should be approved. Before disapproving an application for certification, the secretary shall submit to the applicant agency a notification of the secretary's intent to disapprove the application, in which the secretary shall specify the reasons why the applicant agency does not have the capability or the resources to fully implement and enforce the unified program in a manner that is consistent with the regulations implementing the unified program adopted by the secretary pursuant to this chapter. The secretary shall provide the applicant agency with a reasonable time to respond to the reasons specified in the notification and to correct deficiencies in its application. The applicant agency may request a second public hearing, at which the secretary shall hear the applicant agency's response to the reasons specified in the notification.

(b) In determining whether an applicant agency should be certified, or designated as certified, the secretary, after receiving comments from the director, the Director of the Office of Emergency Services, the State Fire Marshal, and the Executive Officers and Chairpersons of the State Water Resources Control Board and the California regional water quality control boards, shall consider at least all of the following factors:

(1) Adequacy of the technical expertise possessed by each unified program agency that will be implementing each element of the unified program, including, but not limited to, whether the agency responsible for implementing and enforcing the requirements of Chapter 6.5 (commencing with Section 25100) satisfies the requirements of Section 15260 of Title 27 of the California Code of Regulations.

(2) Adequacy of staff resources.

(3) Adequacy of budget resources and funding mechanisms.

(4) Training requirements.

(5) Past performance in implementing and enforcing requirements related to the handling of hazardous materials and hazardous waste.

(6) Recordkeeping and cost accounting systems.

(7) Compliance with the criteria in Section 15170 of Title 27 of the California Code of Regulations.

(c)(1) In making the determination of whether or not to certify a particular applicant agency as a certified unified program agency, the secretary shall consider the applications of every other applicant agency applying to be a certified unified program agency within the same county, in order to determine the impact of each certification decision on the county. If the secretary identifies that there may be adverse impacts on the county if any particular agency in a county is certified, the secretary shall work cooperatively with each affected agency to address the secretary's concerns.

(2) The secretary shall not certify an agency to be a certified unified program agency unless the secretary finds both of the following:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 148 of 697

(A) The unified program will be implemented in a coordinated and consistent manner throughout the entire county in which the applicant agency is located.

(B) The administration of the unified program throughout the entire county in which the applicant agency is located will be less fragmented between jurisdictions, as compared to before January 1, 1994, with regard to the administration of the provisions specified in subdivision (c) of Section 25404.

(d)(1) The secretary shall not certify an applicant agency that proposes to allow participating agencies to implement certain elements of the unified program unless the secretary makes all of the following findings:

(A) The applicant agency has adequate authority, and has in place adequate systems, protocols, and agreements, to ensure that the actions of the other agencies proposed to implement certain elements of the unified program are fully coordinated and consistent with each other and with those of the applicant agency, and to ensure full compliance with the regulations implementing the unified program adopted by the secretary pursuant to this chapter.

(B) An agreement between the applicant and other agencies proposed to implement any elements of the unified program contains procedures for removing any agencies proposed and engaged to implement any element of the unified program. The procedures in the agreement shall include, at a minimum, provisions for providing notice, stating causes, taking public comment, making appeals, and resolving disputes.

(C) The other agencies proposed to implement certain elements of the unified program have the capability and resources to implement those elements, taking into account the factors designated in subdivision (b).

(D) All other agencies proposed to implement certain elements of the unified program shall maintain an agreement with the applicant agency that ensures that the requirements of Section 25404.2 will be fully implemented.

(E) If the applicant agency proposes that any agency other than itself will be responsible for implementing aspects of the single fee system imposed pursuant to Section 25404.5, the applicant agency maintains an agreement with that agency that ensures that the fee system is implemented in a fully consistent and coordinated manner, and that ensures that each participating agency receives the amount that it determines to constitute its necessary and reasonable costs of implementing the element or elements of the unified program that it is responsible for implementing.

(2) After the secretary has certified an applicant agency pursuant to this subdivision, that agency shall obtain the approval of the secretary before removing and replacing a participating agency that is implementing an element of the unified program.

(3) Any state agency, including, but not limited to, the State Department of Health Services, acting as a participating agency, may contract with a unified program agency to implement or enforce the unified program.

(e) Until a city's or county's application for certification to implement the unified program is acted upon by the secretary, the roles, responsibilities, and authority for implementing the programs identified in subdivision (c) of Section 25404 that existed in that city or county pursuant to statutory authorization as of December 31, 1993, shall remain in effect.

(f)(1) Except as provided in subparagraph (C) of paragraph (2) or in Section 25404.8, if no local agency has been certified by January 1, 1997, to implement the unified program within a city, the secretary shall designate either the county in which the city is located or another agency pursuant to subparagraph (A) of paragraph (2) as the unified program agency.

(2)(A) Except as provided in subparagraph (C), if no local agency has been certified by January 1, 2001, to implement the unified program within the unincorporated or an incorporated area of a county, the secretary shall determine how the unified program shall be implemented in the unincorporated area of the county, and in any city in which there is no agency certified to implement the unified program. In such an instance, the secretary shall work in consultation with the county and cities to determine which state or local agency or combination of state and local agencies should implement the unified program, and shall determine which state or local agency shall be designated as the certified unified program agency.

(B) The secretary shall determine the method by which the unified program shall be implemented throughout the county and may select any combination of the following implementation methods:

(i) The certification of a state or local agency as a certified unified program agency.

(ii) The certification of an agency from another county as the certified unified program agency.

(iii) The certification of a joint powers agency as the certified unified program agency.

(C) Notwithstanding paragraph (1) and subparagraphs (A) and (B), if the Cities of Sunnyvale, Anaheim, and Santa Ana prevail in litigation filed in 1997 against the secretary, and, to the extent the secretary determines that these three cities meet the requirements for certification, the secretary may certify these cities as certified unified program agencies.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 149 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(g)(1) If a certified unified program agency wishes to withdraw from its obligations to implement the unified program and is a city or a joint powers agency implementing the unified program within a city, the agency may withdraw after providing 180 days' notice to the secretary and to the county within which the city is located, or to the joint powers agency with which the county has an agreement to implement the unified program.

(2) Whenever a certified unified program agency withdraws from its obligations to implement the unified program, or the secretary withdraws an agency's certification pursuant to Section 25404.4, the successor certified unified program agency shall be determined in accordance with subdivision (f).

SEC. 129. Section 44297 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 44297 >>

44297. (a) The state board, acting within its existing authority, shall, at its first opportunity following January 1, 2005, revise the grant criteria and guidelines adopted pursuant to Section 44287 to incorporate projects described in subdivision (c).

(b) The guidelines may define eligible costs to include monitoring and verifying compliance with this article.

(c) Notwithstanding any other provision of this chapter, a project that meets either of the following criteria constitutes a heavy-duty fleet modernization project and thus is eligible for funding under the program, if it complies with the guidelines established by the state board pursuant to subdivision (a):

(1) Replaces an old engine or vehicle with a newer engine or vehicle certified to more stringent emissions standards than the engine or vehicle being replaced, pursuant to paragraph (2) of subdivision (a) of Section 44281.

(2) Provides the equivalent emission reductions as would be gained by a project that combines both of the following:

(A) The purchase of a new very low or zero-emission covered vehicle pursuant to paragraph (1) of subdivision (a) of Section 44281.

(B) The replacement of an old engine or vehicle with a newer engine or vehicle certified to more stringent standards than the engine or vehicle being replaced, pursuant to paragraph (2) of subdivision (a) of Section 44281.

(d) In establishing guidelines pursuant to subdivision (a), the state board shall consider any existing heavy-duty fleet modernization program carried out by a district. The state board shall design a program that, to the extent feasible, includes fleet owners, independent truck owners, heavy-duty vehicle dealers, districts, and other participants it determines appropriate from existing local programs.

(e) The grants provided pursuant to this article shall provide moneys to offset the incremental cost of projects that reduce emissions of oxides of nitrogen (NOx) and particulate matter (PM).

(f) The state board shall determine an appropriate weighted cost-effectiveness standard for projects intended to reduce particulate matter.

SEC. 130. Section 100425 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 100425 >>

100425. (a) The fees or charges for the issuance or renewal of any permit, license, registration, or document pursuant to Sections 1639.5, 1676, 1677, 2202, 2805, 11887, 100860, 106700, 106890, 106925, 107080, 107090, 107095, 107160, 110210, 110470, 111130, 111140, 111630, 112405, 112510, 112750, 112755, 113060, 113065, 113845, 114056, 114065, paragraph (2) ** ** of subdivision (c) of Section 114090, Section 114140, subdivision (b) of Section 114290, Sections 114367, 115035, 115065, 115080, 116205, 117923, 117995, 118045, 118210, and 118245 shall be adjusted annually by the percentage change printed in the Budget Act for those items appropriating funds to the state department. After the first annual adjustment of fees or charges pursuant to this section, the fees or charges subject to subsequent adjustment shall be the fees or charges for the prior calendar year. The percentage change shall be determined by the Department of Finance, and shall include at least the total percentage change in salaries and operating expenses of the state department. However, the total increase in amounts collected under this section shall not exceed the total increased cost of the program or service provided.

(b) The state department shall publish annually a list of the actual numerical fee charges for each permit, license, certification, or registration governed by this section.

(c) This adjustment of fees and publication of the fee list shall not be subject to the requirements of Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 150 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

SEC. 131. Section 101317 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 101317 >>

101317. (a) For purposes of this article, allocations shall be made to the administrative bodies of qualifying local health jurisdictions described as public health administrative organizations in Section 101185, and pursuant to Section 101315, in the following manner:

(1)(A) For the 2003–04 fiscal year and subsequent fiscal years, to the administrative bodies of each local health jurisdiction, a basic allotment of one hundred thousand dollars ($100,000), subject to the availability of funds appropriated in the annual Budget Act or some other act.

(B) For the 2002–03 fiscal year, the basic allotment of one hundred thousand dollars ($100,000) shall be reduced by the amount of federal funding allocated as part of a basic allotment for the purposes of this article to local health jurisdictions in the 2001–02 fiscal year.

(2)(A) Except as provided in subdivision (c), after determining the amount allowed for the basic allotment as provided in paragraph (1), the balance of the annual appropriation for purposes of this article, if any, shall be allotted on a per capita basis to the administrative bodies of each local health jurisdiction in the proportion that the population of that local health jurisdiction bears to the population of all eligible local health jurisdictions of the state.

(B) The population estimates used for the calculation of the per capita allotment pursuant to subparagraph (A) shall be based on the Department of Finance's E–1 Report, "City/County Populations Estimates with Annual Percentage Changes," as of January 1 of the previous year. However, if within a local health jurisdiction there are one or more city health jurisdictions, the local health jurisdiction shall subtract the population of the city or cities from the local health jurisdiction total population for purposes of calculating the per capita total.

(b) If the amounts appropriated are insufficient to fully fund the allocations specified in subdivision (a), the department shall prorate and adjust each local health jurisdiction's allocation so that the total amount allocated equals the amount appropriated.

(c) For the 2002–03 fiscal year and subsequent fiscal years, where the federally approved collaborative state-local plan identifies an allocation method, other than the basic allotment and per capita method described in subdivision (a), for specific funding to a local public health jurisdiction, including, but not limited to, funding laboratory training, chemical and nuclear terrorism preparedness, smallpox preparedness, and information technology approaches, that funding shall be paid to the administrative bodies of those local health jurisdictions in accordance with the federally approved collaborative state-local plan for bioterrorism preparedness and other public health threats in the state.

(d) Funds appropriated pursuant to the annual Budget Act or some other act for allocation to local health jurisdictions pursuant to this article shall be disbursed quarterly to local health jurisdictions beginning July 1, 2002, using the following process:

(1) Each fiscal year, upon the submission of an application for funding by the administrative body of a local health jurisdiction, the department shall make the first quarterly payment to each eligible local health jurisdiction. Initially, that application shall include a plan and budget for the local program that is in accordance with the department's plans and priorities for bioterrorism preparedness and response, and other public health threats and emergencies, and a certification by the chairperson of the board of supervisors or the mayor of a city with a local health department that the funds received pursuant to this article will not be used to supplant other funding sources in violation of subdivision (d) of Section 101315. In subsequent years, the department shall develop a streamlined process for continuation of funding that will address new federal requirements and will assure the continuity of local plan activities.

(2) The department shall establish procedures and a format for the submission of the local health jurisdiction's plan and budget. The local health jurisdiction's plan shall be consistent with the department's plans and priorities for bioterrorism preparedness and response and other public health threats and emergencies in accordance with requirements specified in the department's federal grant award. Payments to local health jurisdictions beyond the first quarter shall be contingent upon the approval of the department of the local health jurisdiction's plan and the local health jurisdiction's progress in implementing the provisions of the local health jurisdiction's plan, as determined by the department.

(3) If a local health jurisdiction does not apply or submits a noncompliant application for its allocation, those funds provided under this article may be redistributed according to subdivision (a) to the remaining local health jurisdictions.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 151 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(e) Funds shall be used for activities to improve and enhance local health jurisdictions' preparedness for and response to bioterrorism and other public health threats and emergencies, and for any other purposes, as determined by the department, that are consistent with the purposes for which the funds were appropriated.

(f) Any local health jurisdiction that receives funds pursuant to this article shall deposit \*\*\* those funds in a special local public health preparedness trust fund established solely for this purpose before transferring or expending the funds for any of the uses allowed pursuant to this article. The interest earned on moneys in the fund shall accrue to the benefit of the fund and shall be expended for the same purposes as other moneys in the fund.

(g)(1) A local health jurisdiction that receives funding pursuant to this article shall submit reports that display cost data and the activities funded by moneys deposited in its local public health preparedness trust fund to the department on a regular basis in a form and according to procedures prescribed by the department.

(2) The department, in consultation with local health jurisdictions, shall develop required content for the reports required under paragraph (1), which shall include, but shall not be limited to, data and information needed to implement this article and to satisfy federal reporting requirements. The chairperson of the board of supervisors or the mayor of a city with a local health department shall certify the accuracy of the reports and that the moneys appropriated for the purposes of this article have not been used to supplant other funding sources.

(h) The administrative body of a local health jurisdiction may enter into a contract with the department and the department may enter into a contract with that local health jurisdiction for the department to administer all or a portion of the moneys allocated to the local health jurisdiction pursuant to this article. The department may use funds retained on behalf of a local jurisdiction pursuant to this subdivision solely for the purposes of administering the jurisdiction's bioterrorism preparedness activities. The funds appropriated pursuant to this article and retained by the department pursuant to this subdivision are available for expenditure and encumbrance for the purposes of support or local assistance.

(i) The department may recoup from a local health jurisdiction any moneys allocated pursuant to this article that are unspent or that are not expended for purposes specified in subdivision (d). The department may also recoup funds expended by a local health jurisdiction in violation of subdivision (d) of Section 101315. The department may withhold quarterly payments of moneys to a local health jurisdiction if the local health jurisdiction is not in compliance with this article or the terms of that local health jurisdiction's plan as approved by the department. Before any funds are recouped or withheld from a local health jurisdiction, the department shall meet with local health officials to discuss the status of the unspent moneys or the disputed use of the funds, or both.

(j) Notwithstanding any other provision of law, moneys made available for bioterrorism preparedness pursuant to this article in the 2001–02 fiscal year shall be available for expenditure and encumbrance until June 30, 2003. Moneys made available for bioterrorism preparedness pursuant to this article from July 1, 2002, to August 30, 2003, inclusive, shall be available for expenditure and encumbrance until August 30, 2004. Moneys made available in the 2003–04 Budget Act for bioterrorism preparedness shall be available for expenditure and encumbrance until August 30, 2005.

SEC. 132. Section 101850 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 101850 >>

101850. The Legislature finds and declares the following:

(a)(1) Due to the challenges facing the Alameda County Medical Center arising from changes in the public and private health industries, the Alameda County Board of Supervisors has determined that a transfer of governance of the Alameda County Medical Center to an independent governing body, a hospital authority, is needed to improve the efficiency, effectiveness, and economy of the community health services provided at the medical center. The board of supervisors has further determined that the creation of an independent hospital authority strictly and exclusively dedicated to the management, administration, and control of the medical center, in a manner consistent with the county's obligations under Section 17000 of the Welfare and Institutions Code, is the best way to fulfill its commitment to the medically indigent, special needs, and general populations of Alameda County. To accomplish this, it is necessary that the board of supervisors be given authority to create a hospital authority. Because there is no general law under which this authority could be formed, the adoption of a special act and the formation of a special authority is required.

(2) The following definitions shall apply for purposes of this section:

(A) "The county" means the County of Alameda.

(B) "Governing board" means the governing body of the hospital authority.

(C) "Hospital authority" means the separate public agency established by the Board of Supervisors of Alameda County to manage, administer, and control the Alameda County Medical Center.

(D) "Medical center" means the Alameda County Medical Center.

(b) The board of supervisors of the county may, by ordinance, establish a hospital authority separate and apart from the county for the purpose of effecting a transfer of the management, administration, and control of the medical center in accordance with Section 14000.2 of the Welfare and Institutions Code. A hospital authority established pursuant to this chapter shall be strictly and exclusively dedicated to the management, administration, and control of the medical center within parameters set forth in this chapter, and in the ordinance, bylaws, and contracts adopted by the board of supervisors which shall not be in conflict with this chapter, Section 1442.5 of this code, or Section 17000 of the Welfare and Institutions Code.

(c) A hospital authority established pursuant to this chapter shall be governed by a board that is appointed, both initially and continually, by the Board of Supervisors of the County of Alameda. This hospital authority governing board shall reflect both the expertise necessary to maximize the quality and scope of care at the medical center in a fiscally responsible manner and the diverse interest that the medical center serves. The enabling ordinance shall specify the membership of the hospital authority governing board, the qualifications for individual members, the manner of appointment, selection, or removal of governing board members, their terms of office, and all other matters that the board of supervisors deems necessary or convenient for the conduct of the hospital authority's activities.

(d) The mission of the hospital authority shall be the management, administration, and other control, as determined by the board of supervisors, of the group of public hospitals, clinics, and programs that comprise the medical center, in a manner that ensures appropriate, quality, and cost-effective medical care as required of counties by Section 17000 of the Welfare and Institutions Code, and, to the extent feasible, other populations, including special populations in Alameda County.

(e) The board of supervisors shall adopt bylaws for the medical center that set forth those matters * * * related to the operation of the medical center by the hospital authority * * * that the board of supervisors deems necessary and appropriate. The bylaws shall become operative upon approval by a majority vote of the board of supervisors. Any changes or amendments to the bylaws shall be by majority vote of the board of supervisors.

(f) The hospital authority created and appointed pursuant to this section is a duly constituted governing body within the meaning of Section 1250 and Section 70035 of Title 22 of the California Code of Regulations as currently written or subsequently amended.

(g) Unless otherwise provided by the board of supervisors by way of resolution, the hospital authority is empowered, or the board of supervisors is empowered on behalf of the hospital authority, to apply as a public agency for one or more licenses for the provision of health care pursuant to statutes and regulations governing licensing as currently written or subsequently amended.

(h) In the event of a change of license ownership, the governing body of the hospital authority shall comply with the obligations of governing bodies of general acute care hospitals generally as set forth in Section 70701 of Title 22 of the California Code of Regulations, as currently written or subsequently amended, as well as the terms and conditions of the license. The hospital authority shall be the responsible party with respect to compliance with these obligations, terms, and conditions.

(i)(1) Any transfer by the county to the hospital authority of the administration, management, and control of the medical center, whether or not the transfer includes the surrendering by the county of the existing general acute care hospital license and corresponding application for a change of ownership of the license, shall not affect the eligibility of the county, or in the case of a change of license ownership, the hospital authority, to do any of the following:

(A) Participate in, and receive allocations pursuant to, the California Healthcare for the Indigent Program (CHIP).

(B) Receive supplemental reimbursements from the Emergency Services and Supplemental Payments Fund created pursuant to Section 14085.6 of the Welfare and Institutions Code.

(C) Receive appropriations from the Medi–Cal Inpatient Payment Adjustment Fund without relieving the county of its obligation to make intergovernmental transfer payments related to the Medi–Cal Inpatient Payment Adjustment Fund pursuant to Section 14163 of the Welfare and Institutions Code.

(D) Receive Medi–Cal capital supplements pursuant to Section 14085.5 of the Welfare and Institutions Code.

(E) Receive any other funds that would otherwise be available to a county hospital.

(2) Any transfer described in paragraph (1) shall not otherwise disqualify the county, or in the case of a change in license ownership, the hospital authority, from participating in any of the following:

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 153 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(A) Other funding sources either specific to county hospitals or county ambulatory care clinics or for which there are special provisions specific to county hospitals or to county ambulatory care clinics.

(B) Funding programs in which the county, on behalf of the medical center and the Alameda County Health Care Services Agency, had participated prior to the creation of the hospital authority, or would otherwise be qualified to participate in had the hospital authority not been created, and administration, management, and control not been transferred by the county to the hospital authority, pursuant to this chapter.

(j) A hospital authority created pursuant to this chapter shall be a legal entity separate and apart from the county and shall file the statement required by Section 53051 of the Government Code. The hospital authority shall be a government entity separate and apart from the county, and shall not be considered to be an agency, division, or department of the county. The hospital authority shall not be governed by, nor be subject to, the charter of the county and shall not be subject to policies or operational rules of the county, including, but not limited to, those relating to personnel and procurement.

(k)(1) Any contract executed by and between the county and the hospital authority shall provide that liabilities or obligations of the hospital authority with respect to its activities pursuant to the contract shall be the liabilities or obligations of the hospital authority, and shall not become the liabilities or obligations of the county.

(2) Any liabilities or obligations of the hospital authority with respect to the liquidation or disposition of the hospital authority's assets upon termination of the hospital authority shall not become the liabilities or obligations of the county.

(3) Any obligation of the hospital authority, statutory, contractual, or otherwise, shall be the obligation solely of the hospital authority and shall not be the obligation of the county or the state.

(l)(1) Notwithstanding any other provision of this section, any transfer of the administration, management, or assets of the medical center, whether or not accompanied by a change in licensing, shall not relieve the county of the ultimate responsibility for indigent care pursuant to Section 17000 of the Welfare and Institutions Code or any obligation pursuant to Section 1442.5 of this code.

(2) Any contract executed by and between the county and the hospital authority shall provide for the indemnification of the county by the hospital authority for liabilities as specifically set forth in the contract, except that the contract shall include a provision that the county shall remain liable for its own negligent acts.

(3) Indemnification by the hospital authority shall not be construed as divesting the county from its ultimate responsibility for compliance with Section 17000 of the Welfare and Institutions Code.

(m) Notwithstanding the provisions of this section relating to the obligations and liabilities of the hospital authority, a transfer of control or ownership of the medical center shall confer onto the hospital authority all the rights and duties set forth in state law with respect to hospitals owned or operated by a county.

(n)(1) A transfer of the maintenance, operation, and management or ownership of the medical center to the hospital authority shall comply with the provisions of Section 14000.2 of the Welfare and Institutions Code.

(2) A transfer of maintenance, operation, and management or ownership to the hospital authority may be made with or without the payment of a purchase price by the hospital authority and otherwise upon the terms and conditions that the parties may mutually agree, which terms and conditions shall include those found necessary by the board of supervisors to ensure that the transfer will constitute an ongoing material benefit to the county and its residents.

(3) A transfer of the maintenance, operation, and management to the hospital authority shall not be construed as empowering the hospital authority to transfer any ownership interest of the county in the medical center except as otherwise approved by the board of supervisors.

(o) The board of supervisors shall retain control over the use of the medical center physical plant and facilities except as otherwise specifically provided for in lawful agreements entered into by the board of supervisors. Any lease agreement or other agreement between the county and the hospital authority shall provide that county premises shall not be sublet without the approval of the board of supervisors.

(p) The statutory authority of a board of supervisors to prescribe rules that authorize a county hospital to integrate its services with those of other hospitals into a system of community service that offers free choice of hospitals to those requiring hospital care, as set forth in Section 14000.2 of the Welfare and Institutions Code, shall apply to the hospital authority upon a transfer of maintenance, operation, and management or ownership of the medical center by the county to the hospital authority.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 154 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(q) The hospital authority shall have the power to acquire and possess real or personal property and may dispose of real or personal property other than that owned by the county, as may be necessary for the performance of its functions. The hospital authority shall have the power to sue or be sued, to employ personnel, and to contract for services required to meet its obligations.

(r) Any agreement between the county and the hospital authority shall provide that all existing services provided by the medical center shall continue to be provided to the county through the medical center subject to the policy of the county and consistent with the county's obligations under Section 17000 of the Welfare and Institutions Code.

(s) A hospital authority to which the maintenance, operation, and management or ownership of the medical center is transferred shall be a "district" within the meaning set forth in the County Employees Retirement Law of 1937 (Chapter 3 (commencing with Section 31450) of Part 3 of Division 4 of Title 3 of the Government Code). Employees of a hospital authority are eligible to participate in the County Employees Retirement System to the extent permitted by law.

(t) Members of the governing board of the hospital authority shall not be vicariously liable for injuries caused by the act or omission of the hospital authority to the extent that protection applies to members of governing boards of local public entities generally under Section 820.9 of the Government Code.

(u) The hospital authority shall be a public agency subject to the Myers–Milias–Brown Act (Chapter 10 (commencing with Section 3500) of Division 4 of Title 1 of the Government Code).

(v) Any transfer of functions from county employee classifications to a hospital authority established pursuant to this section shall result in the recognition by the hospital authority of the employee organization that represented the classifications performing those functions at the time of the transfer.

(w)(1) In exercising its powers to employ personnel, as set forth in subdivision (p), the hospital authority shall implement, and the board of supervisors shall adopt, a personnel transition plan. The personnel transition plan shall require all of the following:

(A) Ongoing communications to employees and recognized employee organizations regarding the impact of the transition on existing medical center employees and employee classifications.

(B) Meeting and conferring on all of the following issues:

(i) The timeframe for which the transfer of personnel shall occur. The timeframe shall be subject to modification by the board of supervisors as appropriate, but in no event shall it exceed one year from the effective date of transfer of governance from the board of supervisors to the hospital authority.

(ii) A specified period of time during which employees of the county impacted by the transfer of governance may elect to be appointed to vacant positions with the Alameda County Health Care Services Agency for which they have tenure.

(iii) A specified period of time during which employees of the county impacted by the transfer of governance may elect to be considered for reinstatement into positions with the county for which they are qualified and eligible.

(iv) Compensation for vacation leave and compensatory leave accrued while employed with the county in a manner that grants affected employees the option of either transferring balances or receiving compensation to the degree permitted employees laid off from service with the county.

(v) A transfer of sick leave accrued while employed with the county to hospital authority employment.

(vi) The recognition by the hospital authority of service with the county in determining the rate at which vacation accrues.

(vii) The possible preservation of seniority, pensions, health benefits, and other applicable accrued benefits of employees of the county impacted by the transfer of governance.

(2) Nothing in this subdivision shall be construed as prohibiting the hospital authority from determining the number of employees, the number of full-time equivalent positions, the job descriptions, and the nature and extent of classified employment positions.

(3) Employees of the hospital authority are public employees for purposes of Division 3.6 (commencing with Section 810) of Title 1 of the Government Code relating to claims and actions against public entities and public employees.

(x) Any hospital authority created pursuant to this section shall be bound by the terms of the memorandum of understanding executed by and between the county and health care and management employee organizations that is in effect as of the date this legislation becomes operative in the county. Upon the expiration of the memorandum of understanding, the hospital authority shall have sole authority to negotiate subsequent memorandums of understanding with appropriate employee organizations. Subsequent memorandums of understanding shall be approved by the hospital authority.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 155 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(y) The hospital authority created pursuant to this section may borrow from the county and the county may lend the hospital authority funds or issue revenue anticipation notes to obtain those funds necessary to operate the medical center and otherwise provide medical services.

(z) The hospital authority shall be subject to state and federal taxation laws that are applicable to counties generally.

(aa) The hospital authority, the county, or both, may engage in marketing, advertising, and promotion of the medical and health care services made available to the community at the medical center.

(bb) The hospital authority shall not be a "person" subject to suit under the Cartwright Act (Chapter 2 (commencing with Section 16700) of Part 2 of Division 7 of the Business and Professions Code).

(cc) Notwithstanding Article 4.7 (commencing with Section 1125) of Chapter 1 of Division 4 of Title 1 of the Government Code related to incompatible activities, no member of the hospital authority administrative staff shall be considered to be engaged in activities inconsistent and incompatible with his or her duties as a result of employment or affiliation with the county.

(dd)(1) The hospital authority may use a computerized management information system in connection with the administration of the medical center.

(2) Information maintained in the management information system or in other filing and records maintenance systems that is confidential and protected by law shall not be disclosed except as provided by law.

(3) The records of the hospital authority, whether paper records, records maintained in the management information system, or records in any other form, that relate to trade secrets or to payment rates or the determination thereof, or which relate to contract negotiations with providers of health care, shall not be subject to disclosure pursuant to the California Public Records Act (Chapter 5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code). The transmission of the records, or the information contained therein in an alternative form, to the board of supervisors shall not constitute a waiver of exemption from disclosure, and the records and information once transmitted shall be subject to this same exemption. The information, if compelled pursuant to an order of a court of competent jurisdiction or administrative body in a manner permitted by law, shall be limited to in-camera review, which, at the discretion of the court, may include the parties to the proceeding, and shall not be made a part of the court file unless sealed.

(ee)(1) Notwithstanding any other law, the governing board may order that a meeting held solely for the purpose of discussion or taking action on hospital authority trade secrets, as defined in subdivision (d) of Section 3426.1 of the Civil Code, shall be held in closed session. The requirements of making a public report of actions taken in closed session and the vote or abstention of every member present may be limited to a brief general description devoid of the information constituting the trade secret.

(2) The governing board may delete the portion or portions containing trade secrets from any documents that were finally approved in the closed session that are provided to persons who have made the timely or standing request.

(3) Nothing in this section shall be construed as preventing the governing board from meeting in closed session as otherwise provided by law.

(ff) Open sessions of the hospital authority shall constitute official proceedings authorized by law within the meaning of Section 47 of the Civil Code. The privileges set forth in that section with respect to official proceedings shall apply to open sessions of the hospital authority.

(gg) The hospital authority shall be a public agency for purposes of eligibility with respect to grants and other funding and loan guarantee programs. Contributions to the hospital authority shall be tax deductible to the extent permitted by state and federal law. Nonproprietary income of the hospital authority shall be exempt from state income taxation.

(hh) Contracts by and between the hospital authority and the state and contracts by and between the hospital authority and providers of health care, goods, or services may be let on a nonbid basis and shall be exempt from Chapter 2 (commencing with Section 10290) of Part 2 of Division 2 of the Public Contract Code.

(ii)(1) Provisions of the Evidence Code, the Government Code, including the Public Records Act (Chapter 5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code), the Civil Code, the Business and Professions Code, and other applicable law pertaining to the confidentiality of peer review activities of peer review bodies shall apply to the peer review activities of the hospital authority. Peer review proceedings shall constitute an official proceeding authorized by law within the meaning of Section 47 of the Civil Code and those privileges set forth in that section with respect to official proceedings shall apply to peer review proceedings of the hospital authority. If the hospital authority is required by law or contractual obligation to submit to the state or federal government peer review information or information relevant to the credentialing of a participating provider, that submission shall not constitute a waiver of confidentiality. The laws pertaining to the confidentiality of peer

review activities shall be together construed as extending, to the extent permitted by law, the maximum degree of protection of confidentiality.

(2) Notwithstanding any other law, Section 1461 shall apply to hearings on the reports of hospital medical audit or quality assurance committees.

(jj) The hospital authority shall carry general liability insurance to the extent sufficient to cover its activities.

(kk) In the event the board of supervisors determines that the hospital authority should no longer function for the purposes as set forth in this chapter, the board of supervisors may, by ordinance, terminate the activities of the hospital authority and expire the hospital authority as an entity.

(ll) A hospital authority which is created pursuant to this section but which does not obtain the administration, management, and control of the medical center or which has those duties and responsibilities revoked by the board of supervisors shall not be empowered with the powers enumerated in this section.

(mm)(1) The county shall establish baseline data reporting requirements for the medical center consistent with the Medically Indigent Health Care Reporting System (MICRS) program established pursuant to Section 16910 of the Welfare and Institutions Code and shall collect that data for at least one year prior to the final transfer of the medical center to the hospital authority established pursuant to this chapter. The baseline data shall include, but not be limited to, all of the following:

(A) Inpatient days by facility by quarter.

(B) Outpatient visits by facility by quarter.

(C) Emergency room visits by facility by quarter.

(D) Number of unduplicated users receiving services within the medical center.

(2) Upon transfer of the medical center, the county shall establish baseline data reporting requirements for each of the medical center inpatient facilities consistent with data reporting requirements of the Office of Statewide Health Planning and Development, including, but not limited to, monthly average daily census by facility for all of the following:

(A) Acute care, excluding newborns.

(B) Newborns.

(C) Skilled nursing facility, in a distinct part.

(3) From the date of transfer of the medical center to the hospital authority, the hospital authority shall provide the county with quarterly reports specified in paragraphs (1) and (2) and any other data required by the county. The county, in consultation with health care consumer groups, shall develop other data requirements that shall include, at a minimum, reasonable measurements of the changes in medical care for the indigent population of Alameda County that result from the transfer of the administration, management, and control of the medical center from the county to the hospital authority.

(nn) A hospital authority established pursuant to this section shall comply with the requirements of Sections 53260 and 53261 of the Government Code.

SEC. 133. Section 113995 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 113995 >>

113995. (a) Except as otherwise provided in this section, all potentially hazardous food being transported to or from a retail food facility for a period of longer than 30 minutes, excluding raw shell eggs, shall be held at or below 7 degrees Celsius (45 degrees Fahrenheit) or shall be kept at or above 57.2 degrees Celsius (135 degrees Fahrenheit) at all times. Storage and display of raw shell eggs shall be governed by Sections 113997 and 114351.

(b) A retail food facility may accept potentially hazardous food at or below 7 degrees Celsius (45 degrees Fahrenheit), * * * pursuant to subdivision (a), if the potentially hazardous food is cooled within four hours of receipt to a temperature at or below 5 degrees Celsius (41 degrees Fahrenheit).

(c) All potentially hazardous food shall be held at or below 5 degrees Celsius (41 degrees Fahrenheit) or shall be kept at or above 57.2 degrees Celsius (135 degrees Fahrenheit) at all times, except for the following:

(1) Unshucked live molluscan shellfish shall not be stored or displayed at a temperature above 7 degrees Celsius (45 degrees Fahrenheit).

(2) Frozen potentially hazardous foods shall be stored and displayed in their frozen state unless being thawed in accordance with Section 114085.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 157 of 697

(3) Potentially hazardous foods held for dispensing in serving lines and salad bars during periods not to exceed 12 hours in any 24–hour period or held in vending machines may not exceed 7 degrees Celsius (45 degrees Fahrenheit). For purposes of this subdivision, a display case shall not be deemed to be a serving line.

(4) Pasteurized milk and pasteurized milk products in original, sealed containers shall not be held at a temperature above 7 degrees Celsius (45 degrees Fahrenheit).

(d) Potentially hazardous foods may be held at temperatures other than those specified in this section only under the following circumstances:

(1) While being heated or cooled.

(2) When the food facility operates pursuant to a HACCP plan adopted pursuant to Section 114055 or 114056.

(3) When time only, rather than time in conjunction with temperature, is used as the public health control for a working supply of potentially hazardous food before cooking, or for ready-to-eat potentially hazardous food that is displayed or held for service for immediate consumption, but only if all of the following conditions are met:

(A) The food shall be marked or otherwise identified to indicate the time that is four hours after the time when the food is removed from temperature control.

(B) The food shall be cooked and served, served if ready-to-eat, or discarded *** within four hours after the time when the food is removed from temperature control.

(C) Food in unmarked containers or packages, or marked to exceed a four-hour time limit shall be discarded.

(D) Written procedures that ensure compliance with this paragraph and with Section 114002 for food that is prepared, cooked, and refrigerated before time is used as a public health control shall be maintained in the food facility and made available to the enforcement agency upon request.

(e) A thermometer accurate to plus or minus 1 degree Celsius (2 degrees Fahrenheit) shall be provided for each refrigeration unit, shall be located to indicate the air temperature in the warmest part of the unit and, except for vending machines, shall be affixed to be readily visible. Except for vending machines, an accurate easily readable metal probe thermometer suitable for measuring the temperature of food shall be readily available on the premises.

SEC. 134. Section 118275 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 118275 >>

118275. To containerize or store medical waste, a person shall do all of the following:

(a) Medical waste shall be contained separately from other waste at the point of origin in the producing facility. Sharps containers may be placed in biohazard bags or in containers with biohazard bags.

(b) Biohazardous waste, except biohazardous waste as defined in subdivision (g) of Section 117635, shall be placed in a red biohazard bag conspicuously labeled with the words "Biohazardous Waste" or with the international biohazard symbol and the word "BIOHAZARD."

(c) Sharps waste shall be contained in a sharps container pursuant to Section 118285.

(d)(1) Biohazardous waste, which meets the conditions of subdivision (f) of Section 117635 because it is contaminated through contact with, or having previously contained, chemotherapeutic agents, shall be segregated for storage, and, when placed in a secondary container, that container shall be labeled with the words "Chemotherapy Waste," "CHEMO," or other label approved by the department on the lid and on the sides, so as to be visible from any lateral direction, to ensure treatment of the biohazardous waste pursuant to Section 118222.

(2) Biohazardous waste, which meets the conditions of subdivision (f) of Section 117635 because it is comprised of human surgery specimens or tissues which have been fixed in formaldehyde or other fixatives, shall be segregated for storage and, when placed in a secondary container, that container shall be labeled with the words "Pathology Waste," "PATH," or other label approved by the department on the lid and on the sides, so as to be visible from any lateral direction, to ensure treatment of the biohazardous waste pursuant to Section 118222.

(e) Sharps waste, which meets the conditions of subdivision (f) of Section 117635, shall be placed in sharps containers labeled in accordance with the industry standard with the words "Chemotherapy Waste," "CHEMO," or other label approved by the department, and segregated to ensure treatment of the sharps waste pursuant to Section 118222.

(f) Biohazardous waste, which are recognizable human anatomical parts, as specified in Section 118220, shall be segregated for storage and, when placed in a secondary container for treatment as pathology waste, that container shall be labeled with the

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 158 of 697

words "Pathology Waste," "PATH," or other label approved by the department on the lid and on the sides, so as to be visible from any lateral direction, to ensure treatment of the biohazardous waste pursuant to Section 118222.

(g) Biohazardous waste, which meets the conditions specified in subdivision (g) of Section 117635, shall be segregated for storage and, when placed in a container or secondary container, that container shall be labeled with the words "INCINERATION ONLY" or other label approved by the department on the lid and on the sides, so as to be visible from any lateral direction, to ensure treatment of the biohazardous waste pursuant to Section 118222.

(h) A person may consolidate into a common container all of the wastes in this section provided that the consolidated waste is treated by an extremely high heat technology approved pursuant to subparagraph (B) of paragraph (1) of subdivision (a) of Section 118215. The container shall be labeled with the biohazardous waste symbol and the words "HIGH HEAT ONLY" or other label approved by the department on the lid and on the sides, so as to be visible from any lateral direction, to ensure treatment of the biohazardous waste pursuant to this subdivision.

SEC. 135. Section 120440 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 120440 >>

120440. (a) For the purposes of this chapter, the following definitions shall apply:

(1) "Health care provider" means any person licensed pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code or a clinic or health facility licensed pursuant to Division 2 (commencing with Section 1200).

(2) "Schools, child care facilities, and family child care homes" means those institutions referred to in subdivision (b) of Section 120335, regardless of whether they directly provide immunizations to patients or clients.

(3) "WIC service provider" means any public or private nonprofit agency contracting with the department to provide services under the California Special Supplemental Food Program for Women, Infants, and Children, as provided for in Article 2 (commencing with Section 123275) of Chapter 1 of Part 2 of Division 106.

(4) "Health care plan" means a health care service plan as defined in subdivision (f) of Section 1345, a government-funded program the purpose of which is paying the costs of health care, or an insurer as described in Sections 10123.5 and 10123.55 of the Insurance Code, regardless of whether the plan directly provides immunizations to patients or clients.

(5) "County welfare department" means a county welfare agency administering the California Work Opportunity and Responsibility to Kids (CalWORKs) program, pursuant to Chapter 2 (commencing with Section 11200.5) of Part 3 of Division 9 of the Welfare and Institutions Code.

(6) "Foster care agency" means any of the county and state social services agencies providing foster care services in California.

(b)(1) Local health officers may operate immunization information systems pursuant to their authority under Section 120175, in conjunction with the Immunization Branch of the State Department of Health Services. Local health officers and the State Department of Health Services may operate these systems in either or both of the following manners:

(A) Separately within their individual jurisdictions.

(B) Jointly among more than one jurisdiction.

(2) Nothing in this subdivision shall preclude local health officers from sharing the information set forth in paragraphs (1) to (9), inclusive, of subdivision (c) with other health officers jointly operating the system.

(c) Notwithstanding Sections 49075 and 49076 of the Education Code, Chapter 5 (commencing with Section 10850) of Part 2 of Division 9 of the Welfare and Institutions Code, or any other provision of law, unless a refusal to permit recordsharing is made pursuant to subdivision (e), health care providers, and other agencies, including, but not limited to, schools, child care facilities, service providers for the California Special Supplemental Food Program for Women, Infants, and Children (WIC), health care plans, foster care agencies, and county welfare departments, may disclose the information set forth in paragraphs (1) to (9), inclusive, from the patient's medical record, or the client's record, to local health departments operating countywide or regional immunization information and reminder systems and the State Department of Health Services. Local health departments and the State Department of Health Services may disclose the information set forth in paragraphs (1) to (9), inclusive, to each other, and upon a request for information pertaining to a specific person, to health care providers taking care of the patient. Local health departments and the State Department of Health Services may disclose the information in paragraphs (1) to (6), inclusive, and paragraphs (8) and (9), to schools, child care facilities, county welfare departments, and family child care homes to which the person is being admitted or in attendance, foster care agencies in assessing and providing medical care for children in foster care, and WIC service providers providing services to the person, health care plans arranging for immunization services for the patient,

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 159 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

and county welfare departments assessing immunization histories of dependents of CalWORKs participants, upon request for information pertaining to a specific person. Determination of benefits based upon immunization of a dependent CalWORKs participant shall be made pursuant to Section 11265.8 of the Welfare and Institutions Code. The following information shall be subject to this subdivision:

(1) The name of the patient or client and names of the parents or guardians of the patient or client.

(2) Date of birth of the patient or client.

(3) Types and dates of immunizations received by the patient or client.

(4) Manufacturer and lot number for each immunization received.

(5) Adverse reaction to immunizations received.

(6) Other nonmedical information necessary to establish the patient's or client's unique identity and record.

(7) Current address and telephone number of the patient or client and the parents or guardians of the patient or client.

(8) Patient's or client's gender.

(9) Patient's or client's place of birth.

(d)(1) Health care providers, local health departments, and the State Department of Health Services shall maintain the confidentiality of information listed in subdivision (c) in the same manner as other medical record information with patient identification that they possess. These providers, departments, and contracting agencies are subject to civil action and criminal penalties for the wrongful disclosure of the information listed in subdivision (c), in accordance with existing law. They shall use the information listed in subdivision (c) only for the following purposes:

(A) To provide immunization services to the patient or client, including issuing reminder notifications to patients or clients or their parents or guardians when immunizations are due.

(B) To provide or facilitate provision of third-party payer payments for immunizations.

(C) To compile and disseminate statistical information of immunization status on groups of patients or clients or populations in California, without identifying information for these patients or clients included in these groups or populations.

(D) In the case of health care providers only, as authorized by Part 2.6 (commencing with Section 56) of Division 1 of the Civil Code.

(2) Schools, child care facilities, family child care homes, WIC service providers, foster care agencies, county welfare departments, and health care plans shall maintain the confidentiality of information listed in subdivision (c) in the same manner as other client, patient, and pupil information that they possess. These institutions and providers are subject to civil action and criminal penalties for the wrongful disclosure of the information listed in subdivision (c), in accordance with existing law. They shall use the information listed in subdivision (c) only for those purposes provided in subparagraphs (A) to (D), inclusive, of paragraph (1) and as follows:

(A) In the case of schools, child care facilities, family child care homes, and county welfare departments, to carry out their responsibilities regarding required immunization for attendance or participation benefits, or both, as described in Chapter 1 (commencing with Section 120325), and in Section 11265.8 of the Welfare and Institutions Code.

(B) In the case of WIC service providers, to perform immunization status assessments of clients and to refer those clients found to be due or overdue for immunizations to health care providers.

(C) In the case of health care plans, to facilitate payments to health care providers, to assess the immunization status of their clients, and to tabulate statistical information on the immunization status of groups of patients, without including patient-identifying information in these tabulations.

(D) In the case of foster care agencies, to perform immunization status assessments of foster children and to assist those foster children found to be due or overdue for immunization in obtaining immunizations from health care providers.

(e) A patient or a patient's parent or guardian may refuse to permit recordsharing. The health care provider administering immunization and any other agency possessing any patient or client information listed in subdivision (c), if planning to provide patient or client information to an immunization system, as described in subdivision (b), shall inform the patient or client, or the parent or guardian of the patient or client, of the following:

(1) The information listed in subdivision (c) may be shared with local health departments, and the State Department of Health Services. The health care provider or other agency shall provide the name and address of the State Department of Health Services and of the immunization registry with which the provider or other agency will share the information.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 160 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(2) Any of the information shared with local health departments and the State Department of Health Services shall be treated as confidential medical information and shall be used only to share with each other, and, upon request, with health care providers, schools, child care facilities, family child care homes, WIC service providers, county welfare departments, foster care agencies, and health care plans. These providers, agencies, and institutions shall, in turn, treat the shared information as confidential, and shall use it only as described in subdivision (d).

(3) The patient or client, or parent or guardian of the patient or client, has the right to examine any immunization-related information shared in this manner and to correct any errors in it.

(4) The patient or client, or the parent or guardian of the patient or client, may refuse to allow this information to be shared in the manner described, or to receive immunization reminder notifications at any time, or both.

(f)(1) The health care provider administering the immunization and any other agency possessing any patient or client information listed in subdivision (c) may inform the patient or client, or the parent or guardian of the patient or client, by ordinary mail, of the information in paragraphs (1) to (4), inclusive, of subdivision (e). The mailing must include a reasonable means for refusal, such as a return form or contact telephone number.

(2) The information in paragraphs (1) to (4), inclusive, of subdivision (e) may also be presented to the parent or guardian of the patient or client during any hospitalization of the patient or client.

(g) If the patient or client, or parent or guardian of the patient or client, refuses to allow the information to be shared, pursuant to paragraph (4) of subdivision (e), the health care provider or other agency may not share this information in the manner described in subdivision (c), except as provided in subparagraph (D) of paragraph (1) of subdivision (d).

(h) Upon request of the patient or client, or the parent or guardian of the patient or client, in writing or by other means acceptable to the recipient, a local health department or the State Department of Health Services that has received information about a person pursuant to subdivision (c) shall do all of the following:

(1) Provide the name and address of other persons or agencies with whom the recipient has shared the information.

(2) Stop sharing the information in its possession after the date of the receipt of the request.

(i) Upon notification, in writing or by other means acceptable to the recipient, of an error in the information, a local health department or the State Department of Health Services that has information about a person pursuant to subdivision (c) shall correct the error. If the recipient is aware of a disagreement about whether an error exists, information to that effect may be included.

(j)(1) Any party authorized to make medical decisions for a patient or client, including, but not limited to, those authorized by Section 6922, 6926, or 6927 of, or Part 1.5 (commencing with Section 6550), Chapter 2 (commencing with Section 6910) of Part 4, or Chapter 1 (commencing with Section 7000) of Part 6 of Division 11 of, the Family Code, Section 1530.6 of the Health and Safety Code, or Sections 727 and 1755.3 of, and Article 6 (commencing with Section 300) of Chapter 2 of Part 1 of Division 2 of, the Welfare and Institutions Code, may permit sharing of the patient's or client's record with any of the immunization information systems authorized by this section.

(2) For a patient or client who is a dependent of a juvenile court, the court or a person or agency designated by the court may permit this recordsharing.

(3) For a patient or client receiving foster care, a person or persons licensed to provide residential foster care, or having legal custody, may permit this recordsharing.

(k) For purposes of supporting immunization information systems, the State Department of Health Services shall assist its Immunization Branch in both of the following:

(1) * * * Providing department records containing information about publicly funded immunizations.

(2) Supporting efforts for the reporting of publicly funded immunizations into immunization information systems by health care providers and health care plans.

(l) Section 120330 shall not apply to this section.

<< CA HLTH & S pr. 123620 (a. 45 hd.) >>

<< CA HLTH & S pr. 123620 (a. 4.5 hd.) >>

SEC. 136. The heading of Article 45 (commencing with Section 123620) of Chapter 2 of Part 2 of Division 106 of the Health and Safety Code is amended and renumbered to read:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 161 of 697

Article 4.5. Fetal Ultrasound

SEC. 137. Section 125001 of the Health and Safety Code is amended to read:

<< CA HLTH & S § 125001 >>

125001. (a) The department shall establish a program for the development, provision, and evaluation of genetic disease testing, and may provide laboratory testing facilities or make grants to, contract with, or make payments to, any laboratory that it deems qualified and cost-effective to conduct testing or with any metabolic specialty clinic to provide necessary treatment with qualified specialists. The program shall provide genetic screening and followup services for persons who have the screening.

(b) The department shall expand statewide screening of newborns to include tandem mass spectrometry screening for fatty acid oxidation, amino acid, and organic acid disorders and congenital adrenal hyperplasia as soon as possible. The department shall provide information with respect to these disorders and available testing resources * * * to all women receiving prenatal care and to all women admitted to a hospital for delivery. If the department is unable to provide this statewide screening by August 1, 2005, the department shall temporarily obtain these testing services through a competitive bid process from one or more public or private laboratories that meet the department's requirements for testing, quality assurance, and reporting. If the department determines that contracting for these services is more cost-effective, and meets the other requirements of this chapter, than purchasing the tandem mass spectrometry equipment themselves, the department shall contract with one or more public or private laboratories.

(c) The department shall report to the Legislature regarding the progress of the program on or before July 1, 2006. The report shall include the costs for screening, followup, and treatment as compared to costs and morbidity averted for each condition tested for in the program.

SEC. 138. Section 1215.2 of the Insurance Code is amended to read:

<< CA INS § 1215.2 >>

1215.2. (a) No person shall make a tender offer for, or a request or invitation for tenders of, or enter into an agreement to exchange securities for or acquire in the open market, any voting security, or any security convertible into a voting security, of a domestic insurer or of any other person controlling a domestic insurer, if the other person is not substantially engaged either directly or through its affiliates in any businesses other than that of insurance, if, as a result of the consummation thereof, the person would, directly or indirectly, acquire control of the insurer, and no person shall enter into an agreement to merge with or otherwise to acquire control of a domestic insurer, unless, at the time copies of the offer, purchase, request, or invitation are first published, sent, or given to security holders or the agreement or transaction is entered into, as the case may be, the person has filed with the commissioner, and has sent to the insurer, a statement containing the following information, and any additional information * * * as the commissioner may by rule or regulation prescribe as necessary or appropriate in the public interest or for the protection of policyholders or shareholders:

(1) The background and identity of all persons by whom or on whose behalf the purchases or the exchange, merger, or other acquisition of control are to be effected.

(2) The source and amount of the funds or other consideration used or to be used in making the purchases or in effecting the exchange, merger, or other acquisition of control, and, if any part of the funds or other consideration has been or is to be borrowed or otherwise obtained for the purpose of making the purchases or effecting the exchange, merger, or other acquisition of control, a description of the transaction and the names of the parties thereto. However, where a source of funds is a loan made in the lender's ordinary course of business, if the person filing the statement so requests, the name of the lender shall not be made available to the public.

(3) Any plans or proposals which those persons may have to liquidate the insurer, to sell its assets or merge it with any person, or to make any other major change in its business or corporate structure or management.

(4) The amount of each class of voting securities or securities which may be converted into voting securities of the insurer or the controlling person which are beneficially owned, and the amount of each class of voting securities or securities which may be converted into voting securities of the insurer or the controlling person concerning which there is a right to acquire beneficial ownership, by each person and by each affiliate of each person, together with the name and address of each affiliate.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 162 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(5) Information as to any contracts, arrangements, or understandings with any person with respect to any securities of the insurer or the controlling person, including, but not limited to, transfer of any of the securities, joint ventures, loan or option arrangements, puts or calls, guarantees of loans, guarantees against loss or guarantees of profits, division of losses or profits, or the giving or withholding of proxies, naming the persons with whom the contracts, arrangements, or understandings have been entered into, and giving the details thereof.

All requests or invitations for tenders or advertisements making a tender offer or requesting or inviting tenders of the voting securities of the insurer or the controlling person made by or on behalf of the person, and a copy of the agreement to exchange or otherwise acquire securities or to merge with or otherwise to acquire control of the insurer, shall be filed with the commissioner and sent to the insurer as a part of the statement and shall contain the information contained in the statement as the commissioner may by rule or regulation prescribe. Copies of any additional material soliciting or requesting the tender offers subsequent to the initial solicitation or request, and copies of any amendment to the agreement, shall contain the information as the commissioner may by rule or regulation prescribe as necessary or appropriate in the public interest or for the protection of policyholders or shareholders, and shall be filed with the commissioner and sent to the insurer not later than the time copies of the material are first published or sent or given to security holders or the amendment is entered into.

(b) If the person required to file the statement referred to in subdivision (a) * * * is a partnership, limited partnership, syndicate, or other group, the commissioner may require that the information called for by paragraphs (1) to (5), inclusive, of subdivision (a) shall be given with respect to: (1) each partner of the partnership or limited partnership, (2) each member of the syndicate or group, and (3) each person who controls the partner or member. If a person referred to in paragraph (1), (2), or (3) of this subdivision is a corporation or the person required to file the statement referred to in subdivision (a) is a corporation, the commissioner may require that the information called for by paragraphs (1) to (5), inclusive, of subdivision (a) shall be given with respect to the corporation and each officer and director of the corporation and each person who is directly or indirectly the beneficial owner of more than 10 percent of the outstanding voting securities of the corporation.

(c) If any tender offer, request, or invitation for tenders, or agreement to exchange or otherwise acquire securities or to merge or otherwise acquire control referred to in subdivision (a)* * * , is proposed to be made by means of a registration statement under the federal Securities Act of 1933, or in circumstances requiring the disclosure of similar information under the federal Securities Exchange Act of 1934, or under a state law requiring similar registration or disclosure, the person required to file the statement referred to in subdivision (a) may file that registration statement with the commissioner as full satisfaction of the requirement in subdivision (a).

(d) The purchases, exchanges, mergers, or other acquisitions of control referred to in subdivision (a) * * * may not be made until the commissioner approves the purchases, exchanges, mergers, or other acquisitions of control. The commissioner shall approve or disapprove the transaction within 60 days after the statement required by subdivision (a) has been filed with the commissioner. The commissioner may disapprove the transaction if the commissioner finds any of the following:

(1) After the change of control the domestic insurer referred to in subdivision (a) could not satisfy the requirements for the issuance of a license to write the line or lines of insurance for which it is presently licensed.

(2) The purchases, exchanges, mergers, or other acquisitions of control would substantially lessen competition in insurance in this state or create a monopoly therein.

(3) The financial condition of an acquiring person might jeopardize the financial stability of the insurer, or prejudice the interests of its policyholders.

(4) The plans or proposals which the acquiring person has to liquidate the insurer, to sell its assets, or to merge it with any person, or to make any other major change in its business or corporate structure or management, are not fair and reasonable to policyholders.

(5) The competence, experience, and integrity of those persons who would control the operation of the insurer indicate that it would not be in the interest of policyholders, or the public to permit them to do so.

(e) The commissioner shall require the payment of two thousand three hundred sixty dollars ($2,360) as a fee for filing an application under this section, the amount to accompany the application.

(f) * * * This section shall not apply to any offer for or request or invitation for tenders of any voting securities, or any agreement to exchange securities for or otherwise acquire control, if the insurer whose shares are to be acquired remains a direct or indirect subsidiary of the same ultimate controlling company person within the insurer's insurance holding company system, neither the acquiring person nor any affiliate acquires or incurs any debt, guarantee, or other liability related to the transaction,

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 163 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

and no shares are purchased by or sold to a person who is not an affiliated person in that insurance holding company system, or if, and to the extent that, the commissioner, by rule or regulation or by order, exempts the offer, request, invitation, or agreement from the provisions of this section as not comprehended within the purposes thereof.

SEC. 139. Section 98.2 of the Labor Code is amended to read:

<< CA LABOR § 98.2 >>

98.2. (a) Within 10 days after service of notice of an order, decision, or award, the parties may seek review by filing an appeal to the superior court, where the appeal shall be heard de novo. A copy of the appeal request shall be served upon the Labor Commissioner by the appellant. For purposes of computing the 10–day period after service, Section 1013 of the Code of Civil Procedure is applicable.

(b) Whenever an employer files an appeal pursuant to this section, the employer shall post an undertaking with the reviewing court in the amount of the order, decision, or award. The undertaking shall consist of an appeal bond issued by a licensed surety or a cash deposit with the court in the amount of the order, decision, or award. The employer shall provide written notification to the other parties and the Labor Commissioner of the posting of the undertaking. The undertaking shall be on the condition that, if any judgment is entered in favor of the employee, the employer shall pay the amount owed pursuant to the judgment, and if the appeal is withdrawn or dismissed without entry of judgment, the employer shall pay the amount owed pursuant to the order, decision, or award of the Labor Commissioner unless the parties have executed a settlement agreement for payment of some other amount, in which case the employer shall pay the amount that the employer is obligated to pay under the terms of the settlement agreement. If the employer fails to pay the amount owed within 10 days of entry of the judgment, dismissal, or withdrawal of the appeal, or the execution of a settlement agreement, a portion of the undertaking equal to the amount owed, or the entire undertaking if the amount owed exceeds the undertaking, is forfeited to the employee.

(c) If the party seeking review by filing an appeal to the superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and assess that amount as a cost upon the party filing the appeal. An employee is successful if the court awards an amount greater than zero.

(d) If no notice of appeal of the order, decision, or award is filed within the period set forth in subdivision (a), the order, decision, or award shall, in the absence of fraud, be deemed the final order.

(e) The Labor Commissioner shall file, within 10 days of the order becoming final pursuant to subdivision (d), a certified copy of the final order with the clerk of the superior court of the appropriate county unless a settlement has been reached by the parties and approved by the Labor Commissioner. Judgment shall be entered immediately by the court clerk in conformity therewith. The judgment so entered has the same force and effect as, and is subject to all of the provisions of law relating to, a judgment in a civil action, and may be enforced in the same manner as any other judgment of the court in which it is entered. Enforcement of the judgment shall receive court priority.

(f)(1) In order to ensure that judgments are satisfied, the Labor Commissioner may serve upon the judgment debtor, personally or by first-class mail at the last known address of the judgment debtor listed with the division, a form similar to, and requiring the reporting of the same information as, the form approved or adopted by the Judicial Council for purposes of subdivision (a) of Section 116.830 of the Code of Civil Procedure to assist in identifying the nature and location of any assets of the judgment debtor.

(2) The judgment debtor shall complete the form and cause it to be delivered to the division at the address listed on the form within 35 days after the form has been served on the judgment debtor, unless the judgment has been satisfied. In case of willful failure by the judgment debtor to comply with this subdivision, the division or the judgment creditor may request the court to apply the sanctions provided in Section 708.170 of the Code of Civil Procedure.

(g) Notwithstanding subdivision (e), the Labor Commissioner may stay execution of any judgment entered upon an order, decision, or award that has become final upon good cause appearing therefor and may impose the terms and conditions of the stay of execution. A certified copy of the stay of execution shall be filed with the clerk entering the judgment.

(h) When a judgment is satisfied in fact, other than by execution, the Labor Commissioner may, upon the motion of either party or on its own motion, order entry of satisfaction of judgment. The clerk of the court shall enter a satisfaction of judgment upon the filing of a certified copy of the order.

(i) The Labor Commissioner shall make every reasonable effort to ensure that judgments are satisfied, including taking all appropriate legal action and requiring the employer to deposit a bond as provided in Section 240.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 164 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(j) The judgment creditor, or the Labor Commissioner as assignee of the judgment creditor, is entitled to court costs and reasonable attorney's fees for enforcing the judgment that is rendered pursuant to this section.

SEC. 140. Section 98.6 of the Labor Code is amended to read:

<< CA LABOR § 98.6 >>

98.6. (a) No person shall discharge an employee or in any manner discriminate against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights, which are under the jurisdiction of the Labor Commissioner, or because the employee has initiated any action or notice pursuant to Section 2699, or has testified or is about to testify in any such proceeding or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her.

(b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of his or her employment because the employee engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the employee has made a bona fide complaint or claim to the division pursuant to this part, or because the employee has initiated any action or notice pursuant to Section 2699 shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by those acts of the employer. Any employer who willfully refuses to hire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for rehiring or promotion by a grievance procedure, arbitration, or hearing authorized by law, is guilty of a misdemeanor.

(c)(1) Any applicant for employment who is refused employment, who is not selected for a training program leading to employment, or who in any other manner is discriminated against in the terms and conditions of any offer of employment because the applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 (commencing with Section 1101) of Part 3 of Division 2, or because the applicant has made a bona fide complaint or claim to the division pursuant to this part, or because the employee has initiated any action or notice pursuant to Section 2699 shall be entitled to employment and reimbursement for lost wages and work benefits caused by the acts of the prospective employer.

(2) This subdivision shall not be construed to invalidate any collective bargaining agreement that requires an applicant for a position that is subject to the collective bargaining agreement to sign a contract that protects either or both of the following as specified in subparagraphs (A) and (B), nor shall this subdivision be construed to invalidate any employer requirement of an applicant for a position that is not subject to a collective bargaining agreement to sign an employment contract that protects either or both of the following:

(A) An employer against any conduct that is actually in direct conflict with the essential enterprise-related interests of the employer and where breach of that contract would actually constitute a material and substantial disruption of the employer's operation.

(B) A firefighter against any disease that is presumed to arise in the course and scope of employment, by limiting his or her consumption of tobacco products on and off the job.

(d) The provisions of this section creating new actions or remedies that are effective on January 1, 2002, to employees or applicants for employment do not apply to any state or local law enforcement agency, any religious association or corporation specified in subdivision (d) of Section 12926 of the Government Code, except as provided in Section 12926.2 of the Government Code, or any person described in Section 1070 of the Evidence Code.

SEC. 141. Section 2699.5 of the Labor Code is amended to read:

<< CA LABOR § 2699.5 >>

2699.5. The provisions of subdivision (a) of Section 2699.3 shall apply to any alleged violation of the following provisions: subdivision (k) of Section 96, Section 98.6, 201, 201.5, 201.7, 202, 203, 203.1, 203.5, 204, 204a, 204b, 204.1, 204.2, 205, 205.5, 206, 206.5, 208, 209, or 212, subdivision (d) of Section 213, Section 221, 222, 222.5, 223, or 224, subdivision (a) of

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 165 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Section 226, Section 226.7, 227, 227.3, 230, 230.1, 230.2, 230.3, 230.4, 230.7, 230.8, or 231, subdivision (c) of Section 232, subdivision (c) of Section 232.5, Section 233, 234, 351, 353, or 403, subdivision (b) of Section 404, Section 432.2, 432.5, 432.7, 435, 450, 510, 511, 512, 513, 551, 552, 601, 602, 603, 604, 750, 751.8, 800, 850, 851, 851.5, 852, 921, 922, 923, 970, 973, 976, 1021, 1021.5, 1025, 1026, 1101, 1102, 1102.5, or 1153, subdivision (c) or (d) of Section 1174, Section 1194, 1197, 1197.1, 1197.5, or 1198, subdivision (b) of Section 1198.3, Section 1199, 1199.5, 1290, 1292, 1293, 1293.1, 1294, 1294.1, 1294.5, 1296, 1297, 1298, 1301, 1308, 1308.1, 1308.7, 1309, 1309.5, 1391, 1391.1, 1391.2, 1392, 1683, or 1695, subdivision (a) of Section 1695.5, Section 1695.55, 1695.6, 1695.7, 1695.8, 1695.9, 1696, 1696.5, 1696.6, 1697.1, 1700.25, 1700.26, 1700.31, 1700.32, 1700.40, or 1700.47, paragraph (1), (2), or (3) of subdivision (a) of or subdivision (e) of Section 1701.4, subdivision (a) of Section 1701.5, Section 1701.8, 1701.10, 1701.12, 1735, 1771, 1774, 1776, 1777.5, 1811, 1815, 2651, or 2673, subdivision (a) of Section 2673.1, Section 2695.2, 2800, 2801, 2802, 2806, or 2810, subdivision (b) of Section 2929, or Section 3095, 6310, 6311, or 6399.7.

    SEC. 142. Section 3099.3 of the Labor Code is amended to read:

<< CA LABOR § 3099.3 >>

 3099.3. The Division of Apprenticeship Standards shall do all of the following:

 (a) Make information about electrician certification available in non-English languages spoken by a substantial number of construction workers, as defined in Section 7296.2 of the Government Code.

 (b) Provide for the administration of certification tests in Spanish and, to the extent practicable, other non-English languages spoken by a substantial number of applicants, as defined in Section 7296.2 of the Government Code, except insofar as the ability to understand warning signs, instructions, and certain other information in English is necessary for safety reasons.

 (c) Ensure, in conjunction with the California Apprenticeship Council, that by no later than January 1, 2003, all electrician apprenticeship programs approved under this chapter that impose minimum formal education requirements as a condition of entry provide for reasonable alternative means of satisfying those requirements.

 (d) Ensure, in conjunction with the California Apprenticeship Council, that by no later than January 1, 2003, all electrician apprenticeship programs approved under this chapter have adopted reasonable procedures for granting credit toward a term of apprenticeship for other vocational training and on-the-job training experience.

 (e) Report to the Legislature, prior to the deadline for individuals to become certified, on the status of electrician certification, including all of the following:

 (1) The number of persons who have been certified pursuant to Section 3099.

 (2) The number of persons enrolled in electrician apprenticeship programs.

 (3) The number of persons who have registered pursuant to Section 3099.4.

 (4) The estimated number of individuals performing work for Class C–10 electrical contractors for which certification will be required after the deadline for certification, who have not yet been certified and are not enrolled in apprenticeship programs or registered pursuant to Section 3099.4.

 (5) Whether enforcement of the deadline for certification will cause a shortage of electricians in California.

 (6) Whether persons who wish to become certified electricians will have an adequate opportunity to pass the certification exam, to register pursuant to Section 3099.4, or to enroll in an apprenticeship program prior to the deadline for certification.

    SEC. 143. Section 3600.1 of the Labor Code is amended to read:

<< CA LABOR § 3600.1 >>

 3600.1. (a) Whenever any firefighter of the state, as defined in Section 19886 of the Government Code, is injured, dies, or is disabled from performing his or her duties as a firefighter by reason of his or her proceeding to or engaging in a fire-suppression or rescue operation, or the protection or preservation of life or property, anywhere in this state, including the jurisdiction in which he or she is employed, but is not at the time acting under the immediate direction of his or her employer, he or she or his or her dependents, as the case may be, shall be accorded by his or her employer all of the same benefits of this division that he, she, or they would have received had that firefighter been acting under the immediate direction of his or her employer. Any injury, disability, or death incurred under the circumstances described in this section shall be deemed to have arisen out of, and been sustained in, the course of employment for purposes of workers' compensation and all other benefits.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 166 of 697

(b) Nothing in this section shall be deemed to do either of the following:

(1) Require the extension of any benefits to a firefighter who, at the time of his or her injury, death, or disability, is acting for compensation from one other than the state.

(2) Require the extension of any benefits to a firefighter employed by the state where by departmental regulation, whether now in force or hereafter enacted or promulgated, the activity giving rise to the injury, disability, or death * * * is expressly prohibited.

(c) If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to Section 3517.5 of the Government Code, the memorandum of understanding shall be controlling without further legislative action, except that if the provisions of a memorandum of understanding require the expenditure of funds, the provisions shall not become effective unless approved by the Legislature in the annual Budget Act.

SEC. 144. Section 4658.5 of the Labor Code is amended to read:

<< CA LABOR § 4658.5 >>

4658.5. (a) Except as provided in Section 4658.6, if the injury causes permanent partial disability and the injured employee does not return to work for the employer within 60 days of the termination of temporary disability, the injured employee shall be eligible for a supplemental job displacement benefit in the form of a nontransferable voucher for education-related retraining or skill enhancement, or both, at state-approved or accredited schools, as follows:

(1) Up to four thousand dollars ($4,000) for permanent partial disability awards of less than 15 percent.

(2) Up to six thousand dollars ($6,000) for permanent partial disability awards between 15 and 25 percent.

(3) Up to eight thousand dollars ($8,000) for permanent partial disability awards between 26 and 49 percent.

(4) Up to ten thousand dollars ($10,000) for permanent partial disability awards between 50 and 99 percent.

(b) The voucher may be used for payment of tuition, fees, books, and other expenses required by the school for retraining or skill enhancement. No more than 10 percent of the voucher moneys may be used for vocational or return to work counseling. The administrative director shall adopt regulations governing the form of payment, direct reimbursement to the injured employee upon presentation to the employer of appropriate documentation and receipts, and any other matters necessary to the proper administration of the supplemental job displacement benefit.

(c) Within 10 days of the last payment of temporary disability, the employer shall provide to the employee, in the form and manner prescribed by the administrative director, information that provides notice of rights under this section. This notice shall be sent by certified mail.

(d) This section shall apply to injuries occurring on or after January 1, 2004.

SEC. 145. Section 179 of the Military and Veterans Code is amended to read:

<< CA MIL & VET § 179 >>

179. (a) The Adjutant General shall establish a California State Military Museum and Resource Center as a repository for military artifacts, memorabilia, equipment, documents, and other items relating to the history of the California National Guard, in accordance with applicable regulations of the United States Army governing Army museum activities. The museum shall consist of the facility described in the Proclamation of the Governor dated May 11, 1994, and any branches as may currently exist or may from time to time be created throughout the state. Each facility shall be deemed to be an armory within the meaning of Section 430.

(b) The Adjutant General shall enter into an operating agreement with the California Military Museum Foundation, formerly known as the California National Guard Historical Society, an existing California nonprofit public benefit corporation * * * that is tax exempt under Section 501(c)(3) of the Internal Revenue Code [3]. Under the operating agreement with the Adjutant General, the foundation shall operate the * * * California State Military Museum and Resource Center in coordination with the California State Military Reserve's California Center for Military History* * * . The foundation shall develop, administer, interpret, and manage museum historical programs and related public services, and acquire and manage funding for museum programs and services.

(c) Volunteers, docents, members of the California State Military Reserve, or others working with or for the California Military Museum Foundation for purposes consistent with the mission of the organization, shall be considered volunteers under Sections 3118 and 3119 of the Government Code and Section 3363.5 of the Labor Code.

(d) The Board of Trustees of the California Military Museum Foundation shall include the Adjutant General, or the Assistant Adjutant General, or any Deputy Adjutant General designated by the Adjutant General, as an ex officio voting member of the board. The board of trustees of the foundation shall be the governing authority for operations funded through moneys received by the foundation. The board of trustees of the foundation shall submit an audit report annually to the Adjutant General. The board of trustees of the foundation shall submit copies of annual audit reports to the Director of * * * Finance, the Chair of the Joint Legislative Audit Committee, and the Chair of the Joint Legislative Budget Committee. No funds raised or assets acquired by the foundation shall be used for purposes inconsistent with support of the museum.

(e) The Board of Trustees of the California Military Museum Foundation shall, no later than January 10 of each year, submit a business plan for the following fiscal year to the Adjutant General, the Director of * * * Finance, and the Chair of the Joint Legislative Budget Committee for review and comment. The board of trustees shall also submit, not less than 30 days prior to adoption, any proposed formal amendments to the business plan to the Adjutant General, the Director of Finance, and the Chair of the Joint Legislative Budget Committee for review and comment.

(f)(1) The Adjutant General or the California State Military Museum Foundation may solicit, receive, and administer donations of funds or property for the support and improvement of the museum. Any grants or donations received may be expended or used for museum purposes.

(2) Property of historical military significance, not including real property, that is owned by the state and is determined by the Adjutant General to be in excess of the needs of the Military Department, shall be transferred to the museum.

(3) Property determined by the California State Military Museum Foundation to be in excess of the needs of the museum may be sold, donated, exchanged, or otherwise disposed of, at its discretion, in a manner appropriate to the historical and intrinsic value of the property, and the benefits from the disposition shall inure to the museum. This paragraph does not apply to property held in trust for the Controller pursuant to Section 1563 of the Code of Civil Procedure.

(g) The Adjutant General or the California State Military Museum Foundation may solicit and receive firearms and other weaponry confiscated by or otherwise in the possession of law enforcement officers as donations to the museum if he or she deems them to be of historical or military interest.

(h) The Adjutant General shall, in cooperation with the California State Military Museum Foundation, conduct a study of the future needs of the National Guard to preserve, display, and interpret artifacts, documents, photographs, films, literature, and other items relating to the history of the military in California.

(i)(1) The California State Military Museum Foundation may enter into agreements with other military museums in California, including, but not limited to, the Legion of Valor Museum, to loan property that is not real property and that is under the direct control of the * * * foundation.

(2) The California State Military Museum may enter into agreements with other military museums in California to loan property held in trust for the Controller pursuant to Section 1563 of the Code of Civil Procedure.

SEC. 146. Section 972.1 of the Military and Veterans Code, as amended by Section 2 of Chapter 138 of the Statutes of 2004, is amended to read:

<< CA MIL & VET § 972.1 >>

972.1. (a) The sum of five hundred thousand dollars ($500,000) is hereby appropriated from the General Fund to the Department of Veterans Affairs for allocation, during the 1989–90 fiscal year, for purposes of funding the activities of county veteran service officers pursuant to this section. Funds for allocation in future years shall be as provided in the annual Budget Act.

(b) Funds shall be disbursed each fiscal year on a pro rata basis to counties that have established and maintain a county veteran service officer in accordance with the staffing level and workload of each county veteran service officer under a formula based upon performance that shall be developed by the Department of Veterans Affairs for these purposes, and that shall allocate county funds in any fiscal year for county veteran service officers in an amount not less than the amount allocated in the 1988–89 fiscal year.

(c) The department shall annually determine the amount of new or increased monetary benefits paid to eligible veterans by the federal government attributable to the assistance of county veteran service officers. The department shall on or before January

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 168 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

1, prepare and transmit its determination for the preceding fiscal year to the Department of Finance and the Legislature. The Department of Finance shall review the department's determination in time to use the information in the annual Budget Act for the budget of the department for the next fiscal year.

 (d)(1) The Legislature finds and declares that 50 percent of the amount annually budgeted for county veteran service officers is approximately five million dollars ($5,000,000). The Legislature further finds and declares that it is an efficient and reasonable use of state funds to increase the annual budget for county veteran service officers in an amount not to exceed five million dollars ($5,000,000) if it is justified by the monetary benefits to the state's veterans attributable to the effort of these officers.

 (2) It is the intent of the Legislature, after reviewing the department's determination in subdivision (c), to consider an increase in the annual budget for county veteran service officers in an amount not to exceed five million dollars ($5,000,000), if the monetary benefits to the state's veterans attributable to the assistance of county veteran service officers justify that increase in the budget.

 (e) This section shall become operative January 1, 2011.

 SEC. 147. Section 985 of the Military and Veterans Code is amended to read:

<< CA MIL & VET § 985 >>

 985. As used in this article:

 (a) "Farm" means a tract of land, which, in the opinion of the department, is capable of producing sufficiently to provide a living for the purchaser and the purchaser's dependents.

 (b) "Home" means any of the following:

 (1) A parcel of real estate upon which there is a dwelling house or other buildings that will, in the opinion of the department, suit the needs of the purchaser and the purchaser's dependents as a place of abode.

 (2) Condominium, as defined in subdivision (h).

 (3) Mobilehome, as defined in subdivision (k).

 (4) Cooperative housing, as defined in subdivision (m).

 (c) "Purchaser" means a veteran or any person who has entered into a contract of purchase of a farm or home from the department.

 (d) "Purchase price" means the price which the department pays for any farm or home.

 (e) "Selling price" means the price for which the department sells any farm or home.

 (f) "Initial payment" means the first payment to be made by a purchaser to the department for a farm or home.

 (g) "Progress payment plan" means payment by the department for improvements on real property in installments as work progresses.

 (h) "Condominium" means an estate in real property consisting of an undivided interest in common in a portion of a parcel of real property together with a separate interest in space in a residential building on the real property, such as an apartment, which, in the opinion of the department, suits the needs of the purchaser and the purchaser's dependents as a place of abode. A condominium may include, in addition, a separate interest in other portions of the real property.

 (i) "Effective rate of interest" means the average interest rate of the interest on the unpaid balance due on a participation contract to which the interest of the department is subject and the interest rate on the unpaid balance of the purchase price, as determined by the department.

 (j) "Participation contract" means an obligation secured by a deed of trust or mortgage, or other security interest established pursuant to regulations of the department.

 (k) "Mobilehome" means either a parcel of real estate, or an undivided interest in common in a portion of a parcel of real property, on which is situated a mobilehome that will, in the opinion of the department, suit the needs of the purchaser and the purchaser's dependents as a place of abode and meets all requirements of local governmental jurisdictions.

 (l) "Immediate family" means the spouse of a purchaser, the natural or adopted dependent children of the purchaser, and the parents of the purchaser if they are dependent on the purchaser for 50 percent or more of their support.

 (m) "Cooperative housing corporation" means a real estate development in which membership in the corporation, by stock ownership, is coupled with the exclusive right to possess a portion of the real property.

 SEC. 148. Section 502.01 of the Penal Code is amended to read:

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 169 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

<< CA PENAL § 502.01 >>

502.01. (a) As used in this section:

(1) "Property subject to forfeiture" means any property of the defendant that is illegal telecommunications equipment as defined in subdivision (g) of Section 502.8, or a computer, computer system, or computer network, and any software or data residing thereon, if the telecommunications device, computer, computer system, or computer network was used in committing a violation of, or conspiracy to commit a violation of, Section 288, 288.2, 311.1, 311.2, 311.3, 311.4, 311.5, 311.10, 311.11, 422, 470, 470a, 472, 475, 476, 480, 483.5, or 484g, or subdivision (a), (b), or (d) of Section 484e, subdivision (a) of Section 484f, subdivision (b) or (c) of Section 484i, or subdivision (c) of Section 502, or Section 502.7, 502.8, 529, 529a, * * * 530.5, 537e, 593d, 593e, or 646.9, or was used as a repository for the storage of software or data obtained in violation of those provisions. Forfeiture shall not be available for any property used solely in the commission of an infraction. If the defendant is a minor, it also includes property of the parent or guardian of the defendant.

(2) "Sentencing court" means the court sentencing a person found guilty of violating or conspiring to commit a violation of Section 288, 288.2, 311.1, 311.2, 311.3, 311.4, 311.5, 311.10, 311.11, 422, 470, 470a, 472, 475, 476, 480, 483.5, or 484g, or subdivision (a), (b), or (d) of Section 484e, * * * subdivision (a) of Section 484f, subdivision (b) or (c) of Section 484i, or subdivision (c) of Section 502, or Section 502.7, 502.8, 529, 529a, 530.5, 537e, 593d, 593e, or 646.9, or, in the case of a minor, found to be a person described in Section 602 of the Welfare and Institutions Code because of a violation of those provisions, the juvenile court.

(3) "Interest" means any property interest in the property subject to forfeiture.

(4) "Security interest" means an interest that is a lien, mortgage, security interest, or interest under a conditional sales contract.

(5) "Value" has the following meanings:

(A) When counterfeit items of computer software are manufactured or possessed for sale, the "value" of those items shall be equivalent to the retail price or fair market price of the true items that are counterfeited.

(B) When counterfeited but unassembled components of computer software packages are recovered, including, but not limited to, counterfeited computer diskettes, instruction manuals, or licensing envelopes, the "value" of those components of computer software packages shall be equivalent to the retail price or fair market price of the number of completed computer software packages that could have been made from those components.

(b) The sentencing court shall, upon petition by the prosecuting attorney, at any time following sentencing, or by agreement of all parties, at the time of sentencing, conduct a hearing to determine whether any property or property interest is subject to forfeiture under this section. At the forfeiture hearing, the prosecuting attorney shall have the burden of establishing, by a preponderance of the evidence, that the property or property interests are subject to forfeiture. The prosecuting attorney may retain seized property that may be subject to forfeiture until the sentencing hearing.

(c) Prior to the commencement of a forfeiture proceeding, the law enforcement agency seizing the property subject to forfeiture shall make an investigation as to any person other than the defendant who may have an interest in it. At least 30 days before the hearing to determine whether the property should be forfeited, the prosecuting agency shall send notice of the hearing to any person who may have an interest in the property that arose before the seizure.

A person claiming an interest in the property shall file a motion for the redemption of that interest at least 10 days before the hearing on forfeiture, and shall send a copy of the motion to the prosecuting agency and to the probation department.

If a motion to redeem an interest has been filed, the sentencing court shall hold a hearing to identify all persons who possess valid interests in the property. No person shall hold a valid interest in the property if, by a preponderance of the evidence, the prosecuting agency shows that the person knew or should have known that the property was being used in violation of, or conspiracy to commit a violation of, Section 288, 288.2, 311.1, 311.2, 311.3, 311.4, 311.5, 311.10, 311.11, 470, 470a, 472, 475, 476, 480, 483.5, or 484g, or subdivision (a), (b), or (d) of Section 484e, subdivision (a) of Section 484f, subdivision (b) or (c) of Section 484i, or subdivision (c) of Section 502, or Section 502.7, 502.8, 529, 529a, 530.5, 537e, 593d, 593e, or 646.9, and that the person did not take reasonable steps to prevent that use, or if the interest is a security interest, the person knew or should have known at the time that the security interest was created that the property would be used for a violation.

(d) If the sentencing court finds that a person holds a valid interest in the property, the following provisions shall apply:

(1) The court shall determine the value of the property.

(2) The court shall determine the value of each valid interest in the property.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 170 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(3) If the value of the property is greater than the value of the interest, the holder of the interest shall be entitled to ownership of the property upon paying the court the difference between the value of the property and the value of the valid interest.

If the holder of the interest declines to pay the amount determined under paragraph (2), the court may order the property sold and designate the prosecutor or any other agency to sell the property. The designated agency shall be entitled to seize the property and the holder of the interest shall forward any documentation underlying the interest, including any ownership certificates for that property, to the designated agency. The designated agency shall sell the property and pay the owner of the interest the proceeds, up to the value of that interest.

(4) If the value of the property is less than the value of the interest, the designated agency shall sell the property and pay the owner of the interest the proceeds, up to the value of that interest.

(e) If the defendant was a minor at the time of the offense, this subdivision shall apply to property subject to forfeiture that is the property of the parent or guardian of the minor.

(1) The prosecuting agency shall notify the parent or guardian of the forfeiture hearing at least 30 days before the date set for the hearing.

(2) The computer or telecommunications device shall not be subject to forfeiture if the parent or guardian files a signed statement with the court at least 10 days before the date set for the hearing that the minor shall not have access to any computer or telecommunications device owned by the parent or guardian for two years after the date on which the minor is sentenced.

(3) If the minor is convicted of a violation of Section 288, 288.2, 311.1, 311.2, 311.3, 311.4, 311.5, 311.10, 311.11, 470, 470a, 472, 476, or 480, or subdivision (b) * * * or (d) of Section 484e, subdivision (a) of Section 484f, subdivision (b) of Section 484i, or subdivision (c) of Section 502, or Section 502.7, 502.8, 529, 529a, or 530.5, within two years after the date on which the minor is sentenced, and the violation involves a computer or telecommunications device owned by the parent or guardian, the original property subject to forfeiture, and the property involved in the new offense, shall be subject to forfeiture notwithstanding paragraph (2).

(4) Notwithstanding paragraph (1), (2), or (3), or any other provision of this chapter, if a minor's parent or guardian makes full restitution to the victim of a crime enumerated in this chapter in an amount or manner determined by the court, the forfeiture provisions of this chapter do not apply to the property of that parent or guardian if the property was located in the family's primary residence during the commission of the crime.

(f) Notwithstanding any other provision of this chapter, the court may exercise its discretion to deny forfeiture where the court finds that the convicted defendant, or minor adjudicated to come within the jurisdiction of the juvenile court, is not likely to use the property otherwise subject to forfeiture for future illegal acts.

(g) If the defendant is found to have the only valid interest in the property subject to forfeiture, it shall be distributed as follows:

(1) First, to the victim, if the victim elects to take the property as full or partial restitution for injury, victim expenditures, or compensatory damages, as defined in paragraph (1) of subdivision (e) of Section 502. If the victim elects to receive the property under this paragraph, the value of the property shall be determined by the court and that amount shall be credited against the restitution owed by the defendant. The victim shall not be penalized for electing not to accept the forfeited property in lieu of full or partial restitution.

(2) Second, at the discretion of the court, to one or more of the following agencies or entities:

(A) The prosecuting agency.

(B) The public entity of which the prosecuting agency is a part.

(C) The public entity whose officers or employees conducted the investigation resulting in forfeiture.

(D) Other state and local public entities, including school districts.

(E) Nonprofit charitable organizations.

(h) If the property is to be sold, the court may designate the prosecuting agency or any other agency to sell the property at auction. The proceeds of the sale shall be distributed by the court as follows:

(1) To the bona fide or innocent purchaser or encumbrancer, conditional sales vendor, or mortgagee of the property up to the amount of his or her interest in the property, if the court orders a distribution to that person.

(2) The balance, if any, to be retained by the court, subject to the provisions for distribution under subdivision (g).

SEC. 149. Section 679.05 of the Penal Code is amended to read:

<< CA PENAL § 679.05 >>

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 171 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

679.05. (a) A victim of domestic violence or abuse, as defined in Section 6203 or 6211 of the Family Code, or Section 13700 of * * * this code, has the right to have a domestic violence counselor and a support person of the victim's choosing present at any interview by law enforcement authorities, district attorneys, or defense attorneys. However, the support person may be excluded from an interview by law enforcement or the district attorney if the law enforcement authority or the district attorney determines that the presence of that individual would be detrimental to the purpose of the interview. As used in this section, "domestic violence counselor" is defined in Section 1037.1 of the Evidence Code.

(b)(1) Prior to the commencement of the initial interview by law enforcement authorities or the district attorney pertaining to any criminal action arising out of a domestic violence incident, a victim of domestic violence or abuse, as defined in Section 6203 or 6211 of the Family Code, or Section 13700 of this code, shall be notified orally or in writing by the attending law enforcement authority or district attorney that the victim has the right to have a domestic violence counselor and a support person of the victim's choosing present at the interview or contact. This subdivision applies to investigators and agents employed or retained by law enforcement or the district attorney.

(2) At the time the victim is advised of his or her rights pursuant to paragraph (1), the attending law enforcement authority or district attorney shall also advise the victim of the right to have a domestic violence counselor and a support person present at any interview by the defense attorney or investigators or agents employed by the defense attorney.

(c) An initial investigation by law enforcement to determine whether a crime has been committed and the identity of the suspects shall not constitute a law enforcement interview for purposes of this section.

SEC. 150. Section 1203.4a of the Penal Code is amended to read:

<< CA PENAL § 1203.4a >>

1203.4a. (a) Every defendant convicted of a misdemeanor and not granted probation shall, at any time after the lapse of one year from the date of pronouncement of judgment, if he or she has fully complied with and performed the sentence of the court, is not then serving a sentence for any offense and is not under charge of commission of any crime and has, since the pronouncement of judgment, lived an honest and upright life and has conformed to and obeyed the laws of the land, be permitted by the court to withdraw his or her plea of guilty or nolo contendere and enter a plea of not guilty; or if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and in either case the court shall thereupon dismiss the accusatory pleading against the defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 12021.1 of this code or Section 13555 of the Vehicle Code. The defendant shall be informed of the provisions of this section, either orally or in writing, at the time he or she is sentenced. The defendant may make an application and change of plea in person or by attorney, or by the probation officer authorized in writing; provided, that in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if relief had not been granted pursuant to this section.

This subdivision applies to convictions which occurred before as well as those occurring after, the effective date of this section.

(b) Subdivision (a) does not apply to any misdemeanor falling within the provisions of subdivision (b) of Section 42001 of the Vehicle Code, or to any infraction.

(c) A person who petitions for a dismissal of a charge under this section may be required to reimburse the county and the court for the cost of services rendered at a rate to be determined by the county board of supervisors for the county and by the court for the court, not to exceed sixty dollars ($60), and to reimburse any city for the cost of services rendered at a rate to be determined by the city council not to exceed sixty dollars ($60). Ability to make this reimbursement shall be determined by the court using the standards set forth in paragraph (2) of subdivision (g) of Section 987.8 and shall not be a prerequisite to a person's eligibility under this section. The court may order reimbursement in any case in which the petitioner appears to have the ability to pay, without undue hardship, all or any portion of the cost for services established pursuant to this subdivision.

(d) Any determination of amount made by a court under this section shall be valid only if either (1) made under procedures adopted by the Judicial Council or (2) approved by the Judicial Council.

SEC. 151. Section 11055 of the Penal Code is amended to read:

<< CA PENAL § 11055 >>

11055. (a) There is within the Department of Justice the Foreign Prosecution and Law Enforcement Unit designated with the responsibility for assisting local law enforcement agencies with foreign prosecutions, child abduction recoveries and returns under the Hague Convention on the Civil Aspects of International Child Abduction, and law enforcement investigative matters. The unit is also responsible for assisting local law enforcement in obtaining information from foreign officials on foreign prosecution matters.

(b) The Foreign Prosecution and Law Enforcement Unit shall do all of the following:

(1) For those countries having extraterritorial jurisdiction allowing for the prosecution of their citizens for crimes committed in California, the unit shall, upon request, provide informational assistance to local law enforcement on foreign prosecution protocols and provide technical assistance in preparing investigative materials for forwarding and filing in international jurisdictions. The unit shall provide information and assistance on the scope and uses of foreign prosecution to California prosecutors and law enforcement agencies. The unit shall be responsible for tracking foreign prosecution cases presented by California law enforcement agencies. The unit shall collect information on a statewide basis regarding foreign prosecution cases for the primary purpose of analyzing the information it collects and disseminating its conclusions to local law enforcement agencies. Local law enforcement agencies shall retain the authority to prepare and present foreign prosecution cases without the assistance of the unit.

(2) The unit shall assist district attorneys in recovering children from Mexico, and, where appropriate, other countries either in court-ordered returns pursuant to the Hague Convention or voluntary returns.

(3) The unit shall, upon request, assist local law enforcement agencies and foreign law enforcement in formal requests under the Mutual Legal Assistance Treaty. The unit shall, upon request, also assist California law enforcement agencies and foreign officials in informal requests for mutual legal assistance.

(4) The unit, under the direction of the Attorney General, shall provide information to local law enforcement on sensitive diplomatic issues.

SEC. 152. Section 12081 of the Penal Code is amended to read:

<< CA PENAL § 12081 >>

12081. (a) Any person who is at least 21 years of age may apply for an entertainment firearms permit from the Department of Justice that authorizes the permitholder to possess firearms loaned to him or her for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event. Upon receipt of an initial or renewal application submitted as specified in subdivision (b), the department shall examine its records, records the department is authorized to request from the State Department of Mental Health pursuant to Section 8104 of the Welfare and Institutions Code, and records of the National Instant Criminal Background Check System as described in subsection (t) of Section 922 of Title 18 of the United States Code, in order to determine if the applicant is prohibited from possessing or receiving firearms. The department shall issue an entertainment firearms permit only if the records indicate that the applicant is not prohibited from possessing or receiving firearms pursuant to any federal, state, or local law.

(b)(1) Requests for entertainment firearms permits shall be made on application forms prescribed by the Department of Justice that require applicant information, including, but not limited to, the following:

(A) Complete name.

(B) Residential and mailing address.

(C) Telephone number.

(D) Date of birth.

(E) Place of birth.

(F) Country of citizenship and, if other than United States, alien number or admission number.

(G) Valid driver's license number or valid identification card number issued by the California Department of Motor Vehicles.

(H) Social security number.

(I) Signature.

(2) All applications must be submitted with the appropriate fee as specified in subdivision (c).

(3) * * * An initial application for an entertainment firearms permit shall require the submission of fingerprint images and related information in a manner prescribed by the department, for the purpose of obtaining information as to the existence and nature of a record of state or federal level convictions and state or federal level arrests for which the department establishes that

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 173 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

the individual was released on bail or on his or her own recognizance pending trial as needed to determine whether the applicant may be issued the permit. Requests for federal level criminal offender record information received by the Department of Justice pursuant to this section shall be forwarded by the department to the Federal Bureau of Investigation.

(4) The Department of Justice shall review the criminal offender record information specified in subdivision (l) of Section 11105 for entertainment firearms permit applicants.

(5) The Department of Justice shall review subsequent arrests, pursuant to Section 11105.2, to determine the continuing validity of the permit as specified in subdivision (d) for all entertainment firearms permitholders.

(6) Any person who furnishes a fictitious name or address or knowingly furnishes any incorrect information or knowingly omits any information required to be provided on this application is guilty of a misdemeanor.

(c) The Department of Justice shall recover the full costs of administering the program by assessing the following application fees:

(1) For the initial application: one hundred four dollars ($104). Of this sum, fifty-six dollars ($56) shall be deposited into the Fingerprint Fee Account, and forty-eight dollars ($48) shall be deposited into the Dealer Record of Sale Account.

(2) For each annual renewal application: twenty-nine dollars ($29), which shall be deposited into the Dealer Record of Sale Account.

(d) The implementation of subdivisions (a), (b), and (c) by the department is exempt from the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

(e) The department shall annually review and shall adjust the fees specified in subdivision (c), if necessary, to fully fund, but not to exceed the actual costs of, the permit program provided for by this section, including enforcement of the program.

(f) An entertainment firearms permit issued by the Department of Justice shall be valid for one year from the date of issuance. If at any time during that year the permitholder becomes prohibited from possessing or receiving firearms pursuant to any federal, state, or local law, his or her entertainment firearms permit shall be no longer valid.

SEC. 153. Section 12553 of the Penal Code is amended to read:

<< CA PENAL § 12553 >>

12553. (a)(1) Any person who changes, alters, removes, or obliterates any coloration or markings that are required for by any applicable state or federal law or regulation, for any imitation firearm, or device described in subdivision (c) of Section 12555, in any way that makes the imitation firearm or device look more like a firearm is guilty of a misdemeanor.

(2) This subdivision shall not apply to a manufacturer, importer, or distributor of imitation firearms or to the lawful use in theatrical productions, including motion pictures, television, and stage productions.

(b) Any manufacturer, importer, or distributor of imitation firearms that fails to comply with any applicable federal law or regulation governing the marking of a toy, look-alike or imitation firearm as defined by federal law or regulation is guilty of a misdemeanor.

SEC. 154. Section 6106.5 of the Public Contract Code is amended to read:

<< CA PUB CONT § 6106.5 >>

6106.5. (a) "State agency," as used in this section, means those departments defined in Section 10106 of the Public Contract Code.

(b) "Contractor," as used in this section, means "firm," "architectural, landscape architectural, engineering, environmental, and land surveying services," "construction project management," and "environmental services" as defined in Section 4525 of the Government Code.

(c) State agencies shall include a provision in solicitations and in contracts, if the estimated amount to be retained exceeds ten thousand dollars ($10,000), and the retention continues for a period of 60 days beyond the completion of phased services, to permit, upon written request and the expense of the contractor, the payment of retentions earned directly to a state- or federally chartered bank in this state, as the escrow agent. The contractor may direct the investment of the payments into securities, pursuant to subdivision (d), and the contractor shall receive the interest earned on the investments. Upon satisfactory completion of the contract, the contractor shall receive from the escrow agent all securities, interest, and payments received by the escrow agent from the owner, pursuant to the terms of this section. State agencies, relative to contracts entered into prior to the enactment

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 174 of 697

of this section, upon written request of the contractor, and subject to the approval of the state agency, may utilize the provisions of this section.

(d) Securities eligible for investment under this section shall include those listed in Section 16430 of the Government Code, interest-bearing demand deposit accounts, or any other investment mutually agreed to by the contractor and the state agency.

(e)(1) Any contractor who elects to receive interest on moneys withheld in retention by a state agency shall, at the request of any subcontractor, make that option available to the subcontractor regarding any moneys withheld in retention by the contractor from the subcontractor. If the contractor elects to receive interest on any moneys withheld in retention by a state agency, then the subcontractor shall receive the identical rate of interest received by the contractor on any retention moneys withheld from the subcontractor by the contractor, less any actual pro rata costs associated with administering and calculating that interest. In the event that the interest rate is a fluctuating rate, the rate for the subcontractor shall be determined by calculating the interest rate paid during the time that retentions were withheld from the subcontractor. If the contractor elects to substitute securities in lieu of retention, then, by mutual consent of the contractor and subcontractor, the subcontractor may substitute securities in exchange for the release of moneys held in retention by the contractor.

(2) This subdivision shall apply only to those subcontractors performing more than 5 percent of the contractor's total fee.

(3) No contractor shall require any subcontractor to waive any provision of this section.

(f) An escrow agreement used pursuant to this section shall be null, void, and unenforceable unless it is substantially similar to the following form:

ESCROW AGREEMENT FOR SECURITY DEPOSITS

This Escrow Agreement is made and entered into by and between

......................................................................................................................................................................................................

whose address is ...................................................................................................................................................................

hereinafter called "owner," ...................................................................................................................................................

whose address is ...................................................................................................................................................................

hereinafter called "contractor," and .....................................................................................................................................

whose address is ...................................................................................................................................................................

hereinafter called "escrow agent."

(1) Pursuant to Section 6106.5 of the Public Contract Code of the State of California, upon written request of the contractor, the owner shall make payments of retention earnings required to be withheld by the owner pursuant to the professional consulting services agreement entered into between the owner and contractor for _____ in the amount of _____ dated _____ hereafter referred to as the "contract."

(2) When the owner makes payment of retentions earned directly to the escrow agent, the escrow agent shall hold them for the benefit of the contractor until such time as the escrow created under this contract is terminated. The contractor may direct the investment of the payments into securities pursuant to Section 6106.5(d) of the Public Contract Code. All terms and conditions of this agreement and the rights and responsibilities of the parties shall be equally applicable and binding when the owner pays the escrow agent directly.

(3) The contractor shall be responsible for paying all fees for the expenses incurred by the escrow agent in administering the escrow account. These expenses and payment terms shall be determined by the contractor and escrow agent.

(4) The contractor shall have the right to withdraw all or any part of the principal or interest in the escrow account only by written notice to the escrow agent accompanied by written authorization from the owner to the escrow agent that the owner consents to the withdrawal of the amount sought to be withdrawn by contractor.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 175 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(5) The owner shall have a right to draw upon the escrow account in the event of default by the contractor. Upon seven days' written notice to the escrow agent from the owner of the default, the escrow agent shall immediately distribute the cash as instructed by the owner.

(6) Upon receipt of written notification from the owner certifying that the contract is final and complete, and that the contractor has complied with all requirements and procedures applicable to the contract, the escrow agent shall release to the contractor all deposits and interest on deposits less escrow fees and charges of the escrow account. The escrow shall be closed immediately upon disbursement of all moneys on deposit and payments of fees and charges.

(7) The escrow agent shall rely on the written notifications from the owner and the contractor pursuant to Sections (1) to (6), inclusive, of this agreement and the owner and contractor shall hold the escrow agent harmless from the escrow agent's release, conversion, and disbursement of the securities and interest as set forth above.

(8) The names of the persons who are authorized to give written notice or to receive written notice on behalf of the owner and on behalf of the contractor in connection with the foregoing, and exemplars of their respective signatures are as follows:

On behalf of the owner:                                On behalf of the contractor:

.......................................................        .......................................................

Title                                                  Title

.......................................................        .......................................................

Name                                                   Name

.......................................................        .......................................................

Address                                                Address

.......................................................        .......................................................

On behalf of the escrow agent:

.......................................................

Title

.......................................................

Name

.......................................................

Signature

.......................................................

Address

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 176 of 697

At the time the escrow account is opened, the owner and contractor shall deliver to the escrow agent a fully executed counterpart of this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement by their proper officers on the date first set forth above.

Owner                                                            Contractor

..........................................................................          ..........................................................................

Title                                                            Title

..........................................................................          ..........................................................................

Name                                                             Name

..........................................................................          ..........................................................................

Signature                                                        Signature

..........................................................................          ..........................................................................

SEC. 155. Section 6108 of the Public Contract Code is amended to read:

<< CA PUB CONT § 6108 >>

6108. (a)(1) Every contract entered into by any state agency for the procurement or laundering of apparel, garments or corresponding accessories, or the procurement of equipment, materials, or supplies, other than procurement related to a public works contract, shall require that a contractor certify that no apparel, garments or corresponding accessories, equipment, materials, or supplies furnished to the state pursuant to the contract have been laundered or produced in whole or in part by sweatshop labor, forced labor, convict labor, indentured labor under penal sanction, abusive forms of child labor or exploitation of children in sweatshop labor, or with the benefit of sweatshop labor, forced labor, convict labor, indentured labor under penal sanction, abusive forms of child labor or exploitation of children in sweatshop labor. The contractor shall agree to comply with this provision of the contract.

(2) The contract shall specify that the contractor is required to cooperate fully in providing reasonable access to the contractor's records, documents, agents, employees, or premises if reasonably required by authorized officials of the contracting agency, the Department of Industrial Relations, or the Department of Justice determine the contractor's compliance with the requirements under paragraph (1).

(b)(1) Any contractor contracting with the state who knew or should have known that the apparel, garments or corresponding accessories, equipment, materials, or supplies furnished to the state were laundered or produced in violation of the conditions specified in subdivision (a) when entering into a contract pursuant to subdivision (a), may, subject to subdivision (c), have any or all of the following sanctions imposed:

(A) The contract under which the prohibited apparel, garments or corresponding accessories, equipment, materials, or supplies were laundered or provided may be voided at the option of the state agency to which the equipment, materials, or supplies were provided.

(B) The contractor may be assessed a penalty which shall be the greater of one thousand dollars ($1,000) or an amount equaling 20 percent of the value of the apparel, garments or corresponding accessories, equipment, materials, or supplies that the state

agency demonstrates were produced in violation of the conditions specified in paragraph (1) of subdivision (a) and that were supplied to the state agency under the contract.

(C) The contractor may be removed from the bidder's list for a period not to exceed 360 days.

(2) Any moneys collected pursuant to this subdivision shall be deposited into the General Fund.

(c)(1) When imposing the sanctions described in subdivision (b), the contracting agency shall notify the contractor of the right to a hearing, if requested, within 15 days of the date of the notice. The hearing shall be before an administrative law judge of the Office of Administrative Hearings in accordance with the procedures specified in Chapter 5 (commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code. The administrative law judge shall take into consideration any measures the contractor has taken to ensure compliance with this section, and may waive any or all of the sanctions if it is determined that the contractor has acted in good faith.

(2) The agency shall be assessed the cost of the administrative hearing, unless the agency has prevailed in the hearing, in which case the contractor shall be assessed the cost of the hearing.

(d)(1) Any state agency that investigates a complaint against a contractor for violation of this section may limit its investigation to evaluating the information provided by the person or entity submitting the complaint and the information provided by the contractor.

(2) Whenever a contracting officer of the contracting agency has reason to believe that the contractor failed to comply with the requirements under paragraph (1) of subdivision (a), the agency shall refer the matter for investigation to the head of the agency and, as the head of the agency determines appropriate, to either the Director of Industrial Relations or the Department of Justice.

(e)(1) For purposes of this section, the term "forced labor" shall have the same meaning as in Section 1307 of Title 19 of the United States Code.

(2) "Abusive forms of child labor" means any of the following:

(A) All forms of slavery or practices similar to slavery, such as the sale and trafficking of children, debt bondage, and serfdom and forced or compulsory labor, including forced or compulsory recruitment of children for use in armed conflict.

(B) The use, procuring, or offering of a child for prostitution, for the production of pornography, or for pornographic performances.

(C) The use, procuring, or offering of a child for illicit activities, in particular for the production and trafficking of illicit drugs.

(D) All work or service exacted from or performed by any person under the age of 18 either under the menace of any penalty for its nonperformance and for which the worker does not offer oneself voluntarily, or under a contract, the enforcement of which can be accomplished by process or penalties.

(E) All work or service exacted from or performed by a child in violation of all applicable laws of the country of manufacture governing the minimum age of employment, compulsory education, and occupational health and safety.

(3) "Exploitation of children in sweatshop labor" means all work or service exacted from or performed by any person under the age of 18 years in violation of more than one law of the country of manufacture governing wage and benefits, occupational health and safety, nondiscrimination, and freedom of association.

(4) "Sweatshop labor" means all work or service extracted from or performed by any person in violation of more than one law of the country of manufacture governing wages, employee benefits, occupational health, occupational safety, nondiscrimination, or freedom of association.

(5) "Apparel, garments or corresponding accessories" includes, but is not limited to, uniforms.

(6) Notwithstanding any other provision of this section, "forced labor" and "convict labor" do not include work or services performed by an inmate or a person employed by the Prison Industry Authority.

(7) "State agency" means any state agency in this state.

(f)(1) On or before February 1, 2004, the Department of Industrial Relations shall establish a contractor responsibility program, including a Sweatfree Code of Conduct, to be signed by all bidders on state contracts and subcontracts. Any state agency responsible for procurement shall ensure that the Sweatfree Code of Conduct is available for public review at least 30 calendar days between the dates of receipt and the final award of the contract. The Sweatfree Code of Conduct shall list the requirements that contractors are required to meet, as set forth in subdivision (g).

(2) Upon implementation in the manner described in paragraph (4), every contract entered into by any state agency for the procurement or laundering of apparel, garments or corresponding accessories, or for the procurement of equipment or supplies, shall require that the contractor certify in accordance with the Sweatfree Code of Conduct that no apparel, garments

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 178 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

or corresponding accessories, or equipment, materials, or supplies, furnished to the state pursuant to the contract have been laundered or produced, in whole or in part, by sweatshop labor.

(3) The appropriate procurement agency, in consultation with the Director of Industrial Relations, shall employ a phased and targeted approach to implementing the Sweatfree Code of Conduct. Sweatfree Code of Conduct procurement policies involving apparel, garments and corresponding accessories may be permitted a phasein period of up to one year for purposes of feasibility and providing sufficient notice to contractors and the general public. The appropriate procurement agency, in consultation with the Director of Industrial Relations, shall target other procurement categories based on the magnitude of verified sweatshop conditions and the feasibility of implementation, and may set phasein goals and timetables of up to three years in order to achieve compliance with the principles of the Sweatfree Code of Conduct.

(4) In order to facilitate compliance with the Sweatfree Code of Conduct, the Department of Industrial Relations shall explore mechanisms employed by other governmental entities, including, but not limited to, New Jersey Executive Order 20 * * * of 2002, to ensure that businesses that contract with this state are in compliance with this section and any regulations or requirements promulgated in conformance with this section, as amended by the act adding this paragraph. The mechanisms explored may include, but not be limited to, authorization to contract with a competent nonprofit organization that is neither funded nor controlled, in whole or in part, by a corporation that is engaged in the procurement or laundering of apparel, garments, or corresponding accessories, or the procurement of equipment, materials, or supplies. The Department of Industrial Relations, in complying with this paragraph, shall also consider any feasible and cost-effective monitoring measures that will encourage compliance with the Sweatfree Code of Conduct.

(5) To ensure public access and confidence, the Department of Industrial Relations shall ensure public awareness and access to proposed contracts by postings on the Internet and through communication to advocates for garment workers, unions, and other interested parties. The appropriate agencies shall establish a mechanism for soliciting and reviewing any information indicating violations of the Sweatfree Code of Conduct by prospective or current bidders, contractors, or subcontractors. The agencies shall make their findings public when they reject allegations against bidding or contracting parties.

(6) Contractors shall ensure that their subcontractors comply in writing with the Sweatfree Code of Conduct, under penalty of perjury. Contractors shall attach a copy of the Sweatfree Code of Conduct to the certification required by subdivision (a).

(g) No state agency may enter into a contract with any contractor unless the contractor meets the following requirements:

(1) Contractors and subcontractors in California shall comply with all appropriate state laws concerning wages, workplace safety, rights to association and assembly, and nondiscrimination standards, as well as appropriate federal laws. Contractors based in other states in the United States shall comply with all appropriate laws of their states and appropriate federal laws. For contractors whose locations for manufacture or assembly are outside the United States, those contractors shall ensure that their subcontractors comply with the appropriate laws of countries where the facilities are located.

(2) Contractors and subcontractors shall maintain a policy of not terminating any employee except for just cause, and employees shall have access to a mediator or to a mediation process to resolve certain workplace disputes that are not regulated by the National Labor Relations Board.

(3) Contractors and subcontractors shall ensure that workers are paid, at a minimum, wages and benefits in compliance with applicable local, state, and national laws of the jurisdiction in which the labor, on behalf of the contractor or subcontractor, is performed. Whenever a state agency expends funds for the procurement or laundering of apparel, garments, or corresponding accessories, or the procurement of equipment, materials, or supplies, other than procurement related to a public works contract, the applicable labor standards established by the local jurisdiction through the exercise of either local police powers or local spending powers in which the labor, in compliance with the contract or purchase order for which the expenditure is made, is performed shall apply with regard to the contract or purchase order for which the expenditure is made, unless the applicable local standards are in conflict with, or are explicitly preempted by, state law. A state agency may not require, as a condition for the receipt of state funds or assistance, that a local jurisdiction refrain from applying the labor standards that are otherwise applicable to that local jurisdiction. The Department of Industrial Relations may, without incurring additional expenses, access information from any nonprofit organization, including, but not limited to, the World Bank, that gathers and disseminates data with respect to wages paid throughout the world, to allow the Department of Industrial Relations to determine whether contractors and subcontractors are compensating their employees at a level that enables those employees to live above the applicable poverty level.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 179 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(4) All contractors and subcontractors shall comply with the overtime laws and regulations of the country in which their employees are working.

(5) All overtime hours shall be worked voluntarily. Workers shall be compensated for overtime at either (A) the rate of compensation for regular hours of work, or (B) as legally required in the country of manufacture, whichever is greater.

(6) No person may be employed who is younger than the legal age for children to work in the country in which the facility is located. In no case may children under the age of 15 years be employed in the manufacturing process. Where the age for completing compulsory education is higher than the standard for the minimum age of employment, the age for completing education shall apply to this section.

(7) There may be no form of forced labor of any kind, including slave labor, prison labor, indentured labor, or bonded labor, including forced overtime hours.

(8) The work environment shall be safe and healthy and, at a minimum, be in compliance with relevant local, state, and national laws. If residential facilities are provided to workers, those facilities shall be safe and healthy as well.

(9) There may be no discrimination in hiring, salary, benefits, performance evaluation, discipline, promotion, retirement, or dismissal on the basis of age, sex, pregnancy, maternity leave status, marital status, race, nationality, country of origin, ethnic origin, disability, sexual orientation, gender identity, religion, or political opinion.

(10) No worker may be subjected to any physical, sexual, psychological, or verbal harassment or abuse, including corporal punishment, under any circumstances, including, but not limited to, retaliation for exercising his or her right to free speech and assembly.

(11) No worker may be forced to use contraceptives or take pregnancy tests. No worker may be exposed to chemicals, including glues and solvents, that endanger reproductive health.

(12) Contractors and bidders shall list the names and addresses of each subcontractor to be utilized in the performance of the contract, and list each manufacturing or other facility or operation of the contractor or subcontractor for performance of the contract. The list, which shall be maintained and updated to show any changes in subcontractors during the term of the contract, shall provide company names, owners or officers, addresses, telephone numbers, e-mail addresses, and the nature of the business association.

(h) Any person who certifies as true any material matter pursuant to this section that he or she knows to be false is guilty of a misdemeanor.

(i) The provisions of this section, as amended by * * * Chapter 711 of the Statutes of 2003, shall be in addition to any other provisions that authorize the prosecution and enforcement of local labor laws and may not be interpreted to prohibit a local prosecutor from bringing a criminal or civil action against an individual or business that violates the provisions of this section.

SEC. 156. Section 10411 of the Public Contract Code is amended to read:

<< CA PUB CONT § 10411 >>

10411. (a) No retired, dismissed, separated, or formerly employed person of any state agency or department employed under the state civil service or otherwise appointed to serve in state government may enter into a contract in which he or she engaged in any of the negotiations, transactions, planning, arrangements, or any part of the decisionmaking process relevant to the contract while employed in any capacity by any state agency or department. The prohibition of this subdivision shall apply to a person only during the two-year period beginning on the date the person left state employment.

(b) For a period of 12 months following the date of his or her retirement, dismissal, or separation from state service, no person employed under state civil service or otherwise appointed to serve in state government may enter into a contract with any state agency, if he or she was employed by that state agency in a policymaking position in the same general subject area as the proposed contract within the 12–month period prior to his or her retirement, dismissal, or separation. The prohibition of this subdivision shall not apply to a contract requiring the person's services as an expert witness in a civil case or to a contract for the continuation of an attorney's services on a matter with which he or she was involved prior to leaving state service.

SEC. 157. Section 5018.1 of the Public Resources Code is amended to read:

<< CA PUB RES § 5018.1 >>

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 180 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

5018.1. (a) Notwithstanding any other provision of law, the Department of Finance may delegate to the department the right to exercise the same authority granted to the Division of the State Architect and the Real Estate Services Division in the Department of General Services, to plan, design, construct, and administer contracts and professional services for legislatively approved capital outlay projects.

(b) Any right afforded to the department pursuant to subdivision (a) to exercise project planning, design, construction, and administration of contracts and professional services may be revoked, in whole or in part, by the Department of Finance at any time prior to January 1, 2009.

(c) This section shall remain in effect only until January 1, 2009, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2009, deletes or extends that date.

SEC. 158. Section 14530.1 of the Public Resources Code is amended to read:

<< CA PUB RES § 14530.1 >>

14530.1. There is hereby created within the department a recycling financial analysis and policy development unit, to develop, analyze, consolidate, and evaluate economic and policy proposals to carry out the objectives of this division, including, but not limited to, all of the following:

(a) Evaluate the solvency of the fund * * * on an ongoing basis in order to make recommendations and report to the Legislature.

(b) Identify the fiscal impacts of proposed recycling programs, or changes to existing recycling programs.

(c) Assess the economic impacts of recycling proposals and programs on the state's citizens and businesses, including the impact of adding new container types into existing law.

(d) Develop recommendations to better integrate the various recycling alternatives available from state government, local government, and private industry with the objective of reducing recycling costs to citizens and businesses and meeting the 80–percent recycling goal established by this division.

SEC. 159. Section 14539 of the Public Resources Code is amended to read:

<< CA PUB RES § 14539 >>

14539. (a) The department shall certify processors pursuant to this section. The director shall adopt, by regulation, requirements and standards for certification. The regulations shall require, but shall not be limited to requiring, that all of the following conditions be met for certification:

(1) The processor demonstrates to the satisfaction of the department that the processor will operate in accordance with this division.

(2) If one or more certified entities have operated at the same location within the past five years, the operations at the location of the processor exhibit, to the satisfaction of the department, a pattern of operation in compliance with the requirements of this division and regulations adopted pursuant to this division.

(3) The processor notifies the department promptly of any material change in the nature of the processor's operations that conflicts with the information submitted in the operator's application for certification.

(b) A certified processor shall comply with all of the following requirements for operation:

(1) The processor shall not pay a refund value for, or receive a refund value from the department for, any food or drink packaging material or any beverage container or other product that does not have a refund value established pursuant to Section 14560.

(2) The processor shall take those actions that satisfy the department to prevent the payment of a refund value for any food or drink packaging material or any beverage container or other product that does not have a refund value established pursuant to Section 14560.

(3) Unless exempted pursuant to subdivision (b) of Section 14572, the processor shall accept, and pay at least the refund value for, all empty beverage containers, regardless of type, for which the processor is certified.

(4) A processor shall not pay any refund values, processing payments, or administrative fees to a noncertified recycler. A processor may pay refund values, processing payments, or administrative fees to any entity that is identified by the department on its list of certified recycling centers.

(5) A processor shall not pay any refund values, processing payments, or administrative fees on empty beverage containers or other containers that the processor knew, or should have known, were coming into the state from out of the state.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 181 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(6) A processor shall not claim refund values, processing payments, or administrative fees on empty beverage containers that the processor knew, or should have known, were received from noncertified recyclers or on beverage containers that the processor knew, or should have known, come from out of the state. A processor may claim refund values, processing payments, or administrative fees on any empty beverage container that does not come from out of the state and that is received from any entity that is identified by the department on its list of certified recycling centers.

(7) A processor shall take the actions necessary and approved by the department to cancel containers to render them unfit for redemption.

(8) A processor shall prepare or maintain the following documents involving empty beverage containers, as specified by the department by regulation:

(A) Shipping reports that are required to be prepared by the processor or that are required to be obtained from recycling centers.

(B) Processor invoice reports.

(C) Cancellation verification documents.

(D) Documents authorizing recycling centers to cancel empty beverage containers.

(E) Processor-to-processor transaction receipts.

(F) Rejected container receipts on materials subject to this division.

(G) Receipts for transactions with beverage manufacturers on materials subject to this division.

(H) Receipts for transactions with distributors on materials subject to this division.

(I) Weight tickets.

(9) In addition to the requirements of paragraph (7), a processor shall cooperate with the department and make available its records of scrap transactions when the review of these records is necessary for an audit or investigation by the department.

(c) The department may recover, in restitution pursuant to paragraph (5) of subdivision (c) of Section 14591.2, any payments made by the department to the processor pursuant to Section 14573 that are based on the documents specified in paragraph (8), that are not prepared or maintained in compliance with the department's regulations, and that do not allow the department to verify claims for program payments.

SEC. 160. Section 14551 of the Public Resources Code is amended to read:

<< CA PUB RES § 14551 >>

14551. (a) The department shall establish reporting periods for the reporting of redemption rates and recycling rates. Each reporting period shall be six months. The department shall determine all of the following for each reporting period and shall issue a report on its determinations, within 130 days of the end of each reporting period:

(1) Sales of beverages in aluminum beverage containers, bimetal beverage containers, glass beverage containers, plastic beverage containers, and other beverage containers in this state, including refillable beverage containers.

(2) Returns for recycling, and returns not for recycling, of empty aluminum beverage containers, bimetal beverage containers, glass beverage containers, plastic beverage containers, and other beverage containers in this state, including refillable beverage containers returned to distributors pursuant to Section 14572.5. These numbers shall be calculated using the average current weights of beverage containers, as determined and reported by the department. To these numbers shall be added and separately reported the following, if greater than, or equal to, zero:

(A) All empty postfilled aluminum, glass, and plastic food or drink packaging materials sold in the state, returned for recycling, and reported by weight to the department which do not have a refund value less the number specified in subparagraph (B).

(B) The number of beverage containers which comprise the first five percentage points of the redemption rate without including the empty postfilled aluminum, glass, and plastic food or drink packaging materials sold in the state, returned for recycling and reported by weight to the department which do not have a refund value.

(3) An aluminum beverage container redemption rate, the numerator of which shall be the number of empty aluminum beverage containers returned, including refillable aluminum beverage containers and empty postfilled aluminum food or drink packaging material included in paragraph (2), and the denominator of which shall be the number of aluminum beverage containers sold in this state.

(4) An aluminum beverage container recycling rate, the numerator of which shall be the number of empty aluminum beverage containers returned for recycling, including refillable aluminum beverage containers, and the denominator of which shall be the number of aluminum beverage containers sold in this state.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 182 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(5) A bimetal beverage container redemption rate, the numerator of which shall be the number of empty bimetal beverage containers returned, and the denominator of which shall be the number of bimetal beverage containers sold in this state.

(6) A bimetal beverage container recycling rate, the numerator of which shall be the number of empty bimetal containers returned for recycling, including refillable bimetal beverage containers, and the denominator of which shall be the number of bimetal beverage containers sold in this state.

(7) A glass beverage container redemption rate, the numerator of which shall be the number of empty glass beverage containers returned, including refillable glass beverage containers and empty postfilled food or drink packaging materials included in paragraph (2), and the denominator of which shall be the number of glass beverage containers sold in this state.

(8) A glass beverage container recycling rate, the numerator of which shall be the number of empty glass beverage containers returned for recycling, including refillable glass beverage containers, and the denominator of which shall be the number of glass beverage containers sold in this state.

(9) A plastic beverage container redemption rate, the numerator of which shall be the number of empty plastic beverage containers returned, including refillable plastic beverage containers and empty postfilled food or drink packaging materials included in paragraph (2), and the denominator of which shall be the number of plastic beverage containers sold in this state.

(10) A plastic beverage container recycling rate, the numerator of which shall be the number of empty plastic beverage containers returned for recycling, including refillable plastic beverage containers, and the denominator of which shall be the number of plastic beverage containers sold in this state.

(11) A redemption rate for other beverage containers, the numerator of which shall be the number of empty beverage containers other than those containers specified in paragraphs (1) to (10), inclusive, returned, and the denominator of which shall be the number of beverage containers, other than those containers specified in paragraphs (1) to (10), inclusive, sold in this state.

(12) A recycling rate for other beverage containers, the numerator of which shall be the number of empty beverage containers other than those containers specified in paragraphs (1) to (10), inclusive, returned for recycling, and the denominator of which shall be the number of beverage containers, other than those containers specified in paragraphs (1) to (10), inclusive, sold in this state.

(13) The department may define categories of other beverage containers, and report a redemption rate and a recycling rate for each such category of other beverage containers.

(14) The volumes of materials collected from certified recycling centers, by city or county, as requested by the city or county, if the reporting is consistent with the procedures established pursuant to Section 14554 to protect proprietary information.

(b) The department shall determine the manner of collecting the information for the reports specified in subdivision (a), including establishing procedures, to protect any proprietary information concerning the sales and purchases.

<< CA PUB RES § 21061.0.5 >>

<< CA PUB RES § 21061.3 >>

SEC. 161. Section 21061.0.5 of the Public Resources Code is amended and renumbered to read:

21061.3. "Infill site" means a site in an urbanized area that meets either of the following criteria:

(a) The immediately adjacent parcels are developed with qualified urban uses or at least 75 percent of the perimeter of the site adjoins parcels that are developed with qualified urban uses and the remaining 25 percent of the site adjoins parcels that have previously been developed for qualified urban uses, and the site has not been developed for urban uses and no parcel within the site has been created within the past 10 years.

(b) The site has been previously developed for qualified urban uses.

SEC. 162. Section 21159.24 of the Public Resources Code is amended to read:

<< CA PUB RES § 21159.24 >>

21159.24. (a) Except as provided in subdivision (b), this division does not apply to a project if all of the following criteria are met:

(1) The project is a residential project on an infill site.

(2) The project is located within an urbanized area.

(3) The project satisfies the criteria of Section 21159.21.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 183 of 697

(4) Within five years of the date that the application for the project is deemed complete pursuant to Section 65943 of the Government Code, community-level environmental review was certified or adopted.

(5) The site of the project is not more than four acres in total area.

(6) The project does not contain more than 100 residential units.

(7) Either of the following criteria are met:

(A)(i) At least 10 percent of the housing is sold to families of moderate income, or not less than 10 percent of the housing is rented to families of low income, or not less than 5 percent of the housing is rented to families of very low income.

(ii) The project developer provides sufficient legal commitments to the appropriate local agency to ensure the continued availability and use of the housing units for very low, low-, and moderate-income households at monthly housing costs determined pursuant to paragraph (3) of subdivision (h) of Section 65589.5 of the Government Code.

(B) The project developer has paid or will pay in-lieu fees pursuant to a local ordinance in an amount sufficient to result in the development of an equivalent number of units that would otherwise be required pursuant to subparagraph (A).

(8) The project is within one-half mile of a major transit stop.

(9) The project does not include any single level building that exceeds 100,000 square feet.

(10) The project promotes higher density infill housing. A project with a density of at least 20 units per acre shall be conclusively presumed to promote higher density infill housing. A project with a density of at least 10 units per acre and a density greater than the average density of the residential properties within 1,500 feet shall be presumed to promote higher density housing unless the preponderance of the evidence demonstrates otherwise.

(b) Notwithstanding subdivision (a), this division shall apply to a development project that meets the criteria described in subdivision (a), if any of the following occur:

(1) There is a reasonable possibility that the project will have a project-specific, significant effect on the environment due to unusual circumstances.

(2) Substantial changes with respect to the circumstances under which the project is being undertaken that are related to the project have occurred since community-level environmental review was certified or adopted.

(3) New information becomes available regarding the circumstances under which the project is being undertaken and that is related to the project, that was not known, and could not have been known, at the time that community-level environmental review was certified or adopted.

(c) If a project satisfies the criteria described in subdivision (a), but is not exempt from this division as a result of satisfying the criteria described in subdivision (b), the analysis of the environmental effects of the project in the environmental impact report or the negative declaration shall be limited to an analysis of the project-specific effect of the projects and any effects identified pursuant to paragraph (2) or (3) of subdivision (b).

(d) For the purposes of this section, "residential" means a use consisting of either of the following:

(1) Residential units only.

(2) Residential units and primarily neighborhood-serving goods, services, or retail uses that do not exceed 15 percent of the total floor area of the project.

SEC. 163. Section 30310 of the Public Resources Code is amended to read:

<< CA PUB RES § 30310 >>

30310. In making their appointments pursuant to this division, the Governor, the Senate * * * Committee on Rules, and the Speaker of the Assembly shall make good faith efforts to assure that their appointments, as a whole, reflect, to the greatest extent feasible, the economic, social, and geographic diversity of the state.

SEC. 164. Section 40507 of the Public Resources Code is amended to read:

<< CA PUB RES § 40507 >>

40507. (a) On or before March 1 of each year, the board shall file an annual report with the Legislature highlighting significant programs or actions undertaken by the board to implement programs pursuant to this division during the prior calendar year. The report shall include, but is not limited to, the information described in subdivision (b).

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 184 of 697

(b) Commencing January 1, 1997, the board shall file annual progress reports with the Legislature covering the activities and actions undertaken by the board in the prior fiscal year. The board shall prepare, and may electronically file with the Legislature, the progress reports throughout the calendar year, as determined by the board, on the following programs:

(1) The local enforcement agency program.

(2) The research and development program.

(3) The public education program.

(4) The market development program.

(5) The used oil program.

(6) The planning and local assistance program.

(7) The site cleanup program.

(c) The progress report shall specifically include, but is not limited to, all of the following information:

(1) Pursuant to paragraph (1) of subdivision (b), the status of the certification and evaluation of local enforcement agencies pursuant to Chapter 2 (commencing with Section 43200) of Part 4.

(2) Pursuant to paragraph (2) of subdivision (b), all of the following information:

(A) The results of the research and development programs established pursuant to Chapter 13 (commencing with Section 42650) of Part 3.

(B) A report on information and activities associated with the establishment of the Plastics Recycling Information Clearinghouse, pursuant to Section 42520.

(C) A report on the progress in implementing the monitoring and control program for the subsurface migration of landfill gas established pursuant to Section 43030, including recommendations, as needed, to improve the program.

(D) A report on the comparative costs and benefits of the recycling or conversion processes for waste tires funded pursuant to Chapter 17 (commencing with Section 42860) of Part 3.

(3) Pursuant to paragraph (3) of subdivision (b), all of the following information:

(A) A review of actions taken by the board to educate and inform individuals and public and private sector entities who generate solid waste on the importance of source reduction, recycling, and composting of solid waste, and recommendations for administrative or legislative actions which will inform and educate these parties.

(B) A report on the effectiveness of the public information program required to be implemented pursuant to Chapter 12 (commencing with Section 42600) of Part 3, including recommendations on administrative and legislative changes to improve the program.

(C) A report on the status and effectiveness of school district source reduction and recycling programs implemented pursuant to Chapter 12.5 (commencing with Section 42620) of Part 3, including recommendations on administrative and legislative changes to improve the program's effectiveness.

(D) A report on the effectiveness of the integrated waste management educational program and teacher training plan implemented pursuant to Part 4 (commencing with Section 71300) of Division 34, including recommendations on administrative and legislative changes which will improve the program.

(E) A summary of available and wanted materials, a profile of the participants, and the amount of waste diverted from disposal sites as a result of the California Materials Exchange Program established pursuant to subdivision (a) of Section 42600.

(4) Pursuant to paragraph (4) of subdivision (b), all of the following information:

(A) A review of market development strategies undertaken by the board pursuant to this division to ensure that markets exist for materials diverted from solid waste facilities, including recommendations for administrative and legislative actions which will promote expansion of those markets. The recommendations shall include, but not be limited to, all of the following:

(i) Recommendations for actions to develop more direct liaisons with private manufacturing industries in the state to promote increased utilization of recycled feedstock in manufacturing processes.

(ii) Recommendations for actions which can be taken to assist local governments in the inclusion of recycling activities in county overall economic development plans.

(iii) Recommendations for actions to utilize available financial resources for expansion of recycling industry capacity.

(iv) Recommendations to improve state, local, and private industry product and material procurement practices.

(B) Development and implementation of a program to assist local agencies in the identification of markets for materials that are diverted from disposal facilities through source reduction, recycling, and composting pursuant to Section 40913.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 185 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(C) A report on the Recycling Market Development Zone Loan Program *  *  * conducted pursuant to *  *  * Article 3 (commencing with Section 42010) of Chapter 1 of Part 3.

(D) A report on implementation of the Compost Market Program pursuant to Chapter 5 (commencing with Section 42230) of Part 3.

(E) A report on the progress in developing and implementing the comprehensive Market Development Plan, pursuant to Article 2 of Chapter 1 (commencing with Section 42005) of Part 3.

(F) The number of retreaded tires purchased by the Department of General Services during the prior fiscal year pursuant to Section 42414.

(G) The results of the study performed in consultation with the Department of General Services pursuant to Section 42415 to determine if tire retreads, procured by the Department of General Services, have met all quality and performance criteria of a new tire, including any recommendations to expand, revise, or curtail the program.

(H) The number of recycled lead-acid batteries purchased during the prior fiscal year by the Department of General Services pursuant to Section 42443.

(I) A list of established price preferences for recycled paper products for the prior fiscal year pursuant to paragraph (1) of subdivision (c) of Section 12162 of the Public Contract Code.

(J) A report on the implementation of the white office paper recovery program pursuant to Chapter 10 (commencing with Section 42560) of Part 3.

(5) Pursuant to paragraph (5) of subdivision (b), both of the following information:

(A) A report on the annual audit of the used oil recycling program established pursuant to Chapter 4 (commencing with Section 48600) of Part 7.

(B) A summary of industrial and lubricating oil sales and recycling rates, the results of programs funded pursuant to Chapter 4 (commencing with Section 48600) of Part 7, recommendations, if any, for statutory changes to the program, including changes in the amounts of the payment required by Section 48650 and the recycling incentive, and plans for present and future programs to be conducted over the next two years.

(6) Pursuant to paragraph (6) of subdivision (b), all of the following information:

(A) The development by the board of the model countywide or regional siting element and model countywide or regional agency integrated waste management plan pursuant to Section 40912, including its effectiveness in assisting local agencies.

(B) The adoption by the board of a program to provide assistance to cities, counties, or regional agencies in the development and implementation of source reduction programs pursuant to subdivision (c) of Section 40912.

(C) The development by the board of model programs and materials to assist rural counties and cities in preparing city and county source reduction and recycling elements pursuant to Section 41787.3.

(D) A report on the number of tires that are recycled or otherwise diverted from disposal in landfills or stockpiles.

(E) A report on the development and implementation of recommendations, with proposed implementing regulations, for providing technical assistance to counties and cities that meet criteria specified in Section 41782, so that those counties and cities will be able to meet the objectives of this division. The recommendations shall, among other things, address both of the following matters:

(i) Assistance in developing methods of raising revenue at the local level to fund rural integrated waste management programs.

(ii) Assistance in developing alternative methods of source reduction, recycling, and composting of solid waste suitable for rural local governments.

(F) A report on the status and implementation of the "Buy Recycled" program established pursuant to subdivision (d) of Section 42600, including the waste collection and recycling programs established pursuant to Sections 12164.5 and 12165 of the Public Contract Code.

(7) Pursuant to paragraph (7) of subdivision (b), a description of sites cleaned up under the Solid Waste Disposal and Codisposal Site Cleanup Program established pursuant to Article 2.5 (commencing with Section 48020) of Chapter 2 of Part 7, a description of remaining sites where there is no responsible party or the responsible party is unable or unwilling to pay for cleanup, and recommendations for any needed legislative changes.

SEC. 165. Section 42648.6 of the Public Resources Code is amended to read:

<< CA PUB RES § 42648.6 >>

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 186 of 697

42648.6. If a large venue or large event has contiguous parcels located in both the City of Los Angeles and the County of Los Angeles, the requirements of this chapter shall apply only to the local agency containing the majority of the property for that large venue or large event.

<< CA PUB RES pr. 71069 (c. 4 hd.) >>

<< CA PUB RES pr. 71069 (c. 3.5 hd.) >>

SEC. 166. The heading of Chapter 4 (commencing with Section 71069) of Part 2 of Division 34 of the Public Resources Code, as added by Chapter 644 of the Statutes of 2004, is amended and renumbered to read:

Chapter 3.5. Report and Information Management

SEC. 167. Section 353.2 of the Public Utilities Code is amended to read:

<< CA PUB UTIL § 353.2 >>

353.2. (a) As used in this article, "ultraclean and low-emission distributed generation" means any electric generation technology that meets both of the following criteria:

(1) Commences initial operation between January 1, 2003, and December 31, 2008.

(2) Produces zero emissions during its operation or produces emissions during its operation that are equal to or less than the 2007 State Air Resources Board emission limits for distributed generation, except that technologies operating by combustion must operate in a combined heat and power application with a 60–percent system efficiency on a higher heating value.

(b) In establishing rates and fees, the commission may consider energy efficiency and emissions performance to encourage early compliance with air quality standards established by the State Air Resources Board for ultraclean and low-emission distributed generation.

SEC. 168. Section 379.6 of the Public Utilities Code is amended to read:

<< CA PUB UTIL § 379.6 >>

379.6. (a) The commission, in consultation with the State Energy Resources Conservation and Development Commission, shall administer, until January 1, 2008, the self-generation incentive program for distributed generation resources originally established pursuant to Chapter 329 of the Statutes of 2000. Except as provided in subdivision (b), the program shall be administered in the same form as it existed on January 1, 2004.

(b) Eligibility for the self-generation incentive program's level 3 incentive category shall be subject to the following conditions:

(1) Commencing January 1, 2005, all combustion-operated distributed generation projects using fossil fuel shall meet an oxides of nitrogen (NOx) emissions rate standard of 0.14 pounds per megawatthour.

(2) Commencing January 1, 2007, all combustion-operated distributed generation projects using fossil fuel shall meet a NOx emissions rate standard of 0.07 pounds per megawatthour and a minimum efficiency of 60 percent. A minimum efficiency of 60 percent shall be measured as useful energy output divided by fuel input. The efficiency determination shall be based on 100 percent load.

(3) Combined heat and power units that meet the 60–percent efficiency standard may take a credit to meet the applicable NOx emissions standard of 0.14 pounds per megawatthour or 0.07 pounds per megawatthour. Credit shall be at the rate of one megawatthour for each 3.4 million British thermal units (Btus) of heat recovered.

(4) Notwithstanding paragraphs (1) and (2), a project that does not meet the applicable NOx emission standard is eligible if it meets both of the following requirements:

(A) The project operates solely on waste gas. The commission shall require a customer that applies for an incentive pursuant to this paragraph to provide an affidavit or other form of proof, that specifies that the project shall be operated solely on waste gas. Incentives awarded pursuant to this paragraph shall be subject to refund and shall be refunded by the recipient to the extent the project does not operate on waste gas. As used in this paragraph, "waste gas" means natural gas that is generated as a byproduct of petroleum production operations and is not eligible for delivery to the utility pipeline system.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 187 of 697

(B) The air quality management district or air pollution control district, in issuing a permit to operate the project, determines that operation of the project will produce an onsite net air emissions benefit, compared to permitted onsite emissions if the project does not operate. The commission shall require the customer to secure the permit prior to receiving incentives.

(c) In administering the self-generation incentive program, the commission may adjust the amount of rebates, include other ultraclean and low-emission distributed generation technologies, as defined in Section 353.2, and evaluate other public policy interests, including, but not limited to, ratepayers, and energy efficiency and environmental interests.

SEC. 169. Section 394.25 of the Public Utilities Code is amended to read:

<< CA PUB UTIL § 394.25 >>

394.25. (a) The commission may enforce the provisions of Sections 2102, 2103, 2104, 2105, 2107, 2108, and 2114 against electric service providers as if those electric service providers were public utilities as defined in these code sections. Notwithstanding the above, nothing in this section grants the commission jurisdiction to regulate electric service providers other than as specifically set forth in this part. Electric service providers shall continue to be subject to the provisions of Sections 2111 and 2112. Upon a finding by the commission's executive director that there is evidence to support a finding that the electric service provider has committed an act constituting grounds for suspension or revocation of registration as set forth in subdivision (b) of Section 394.25, the commission shall notify the electric service provider in writing and notice an expedited hearing on the suspension or revocation of the electric service provider's registration to be held within 30 days of the notification to the electric service provider of the executive director's finding of evidence to support suspension or revocation of registration. The commission shall, within 45 days after holding the hearing, issue a decision on the suspension or revocation of registration, which shall be based on findings of fact and conclusions of law based on the evidence presented at the hearing. The decision shall include the findings of fact and the conclusions of law relied upon.

(b) An electric service provider may have its registration suspended or revoked, immediately or prospectively, in whole or in part, for any of the following acts:

(1) Making material misrepresentations in the course of soliciting customers, entering into service agreements with those customers, or administering those service agreements.

(2) Dishonesty, fraud, or deceit with the intent to substantially benefit the electric service provider or its employees, agents, or representatives, or to disadvantage retail electricity customers.

(3) Where the commission finds that there is evidence that the electric service provider is not financially or operationally capable of providing the offered electric service.

(4) The misrepresentation of a material fact by an applicant in obtaining a registration pursuant to Section 394.

(c) Pursuant to its authority to revoke or suspend registration, the commission may suspend a registration for a specified period or revoke the registration, or in lieu of suspension or revocation, impose a moratorium on adding or soliciting additional customers. Any suspension or revocation of a registration shall require the electric service provider to cease serving customers within the boundaries of investor-owned electrical corporations, and the affected customers shall be served by the electrical corporation until the time when they may select service from another service provider. Customers shall not be liable for the payment of any early termination fees or other penalties to any electric service provider under the service agreement if the serving electric service provider's registration is suspended or revoked.

(d) The commission shall require any electric service provider whose registration is revoked pursuant to paragraph (4) of subdivision (b) to refund all of the customer credit funds that the electric service provider received from the State Energy Resources Conservation and Development Commission pursuant to subdivision (a) of Section 25744 of the Public Resources Code. The repayment of these funds shall be in addition to all other penalties and fines appropriately assessed the electric service provider for committing those acts under other provisions of law. All customer credit funds refunded under this subdivision shall be deposited in the Renewable Resource Trust Fund for redistribution by the State Energy Resources Conservation and Development Commission pursuant to Chapter 8.6 (commencing with Section 25740) of Division 15 of the Public Resources Code. This subdivision may not be construed to apply retroactively.

(e) If a customer of an electric service provider or a community choice aggregator is involuntarily returned to service provided by an electrical corporation, any reentry fee imposed on that customer that the commission deems is necessary to avoid imposing costs on other customers of the electrical corporation shall be the obligation of the electric service provider or a community choice aggregator, except in the case of a customer returned due to default in payment or other contractual obligations or

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 188 of 697

because the customer's contract has expired. As a condition of its registration, an electric service provider or a community choice aggregator shall post a bond or demonstrate insurance sufficient to cover those reentry fees. In the event that an electric service provider becomes insolvent and is unable to discharge its obligation to pay reentry fees, the fees shall be allocated to the returning customers.

SEC. 170. Section 2827.10 of the Public Utilities Code is amended to read:

<< CA PUB UTIL § 2827.10 >>

2827.10. (a) As used in this section, the following terms have the following meanings:

(1) "Electrical corporation" means an electrical corporation, as defined in Section 218.

(2) "Eligible fuel cell electrical generating facility" means a facility that includes the following:

(A) Integrated powerplant systems containing a stack, tubular array, or other functionally similar configuration used to electrochemically convert fuel to electric energy.

(B) An inverter and fuel processing system where necessary.

(C) Other plant equipment, including heat recovery equipment, necessary to support the plant's operation or its energy conversion.

(3) "Eligible fuel cell customer-generator" means a customer of an electrical corporation that meets all the following criteria:

(A) Uses a fuel cell electrical generating facility with a capacity of not more than one megawatt that is located on or adjacent to the customer's owned, leased, or rented premises, is interconnected and operates in parallel with the electric grid while the grid is operational or in a grid independent mode when the grid is nonoperational, and is sized to offset part or all of the eligible fuel cell customer-generator's own electrical requirements.

(B) Is the recipient of local, state, or federal funds, or who self-finances projects designed to encourage the development of eligible fuel cell electrical generating facilities.

(C) Uses technology that meets the definition of an "ultraclean and low-emission distributed generation" in subdivision (a) of Section 353.2.

(4) "Net energy metering" has the same meaning as that term is defined in Section 2827.9.

(b) Every electrical corporation shall, not later than March 1, 2004, file with the commission a standard tariff providing for net energy metering for eligible fuel cell customer-generators, consistent with this section. Every electrical corporation shall make this tariff available to eligible fuel cell customer-generators upon request, on a first-come, first-served basis, until the total cumulative rated generating capacity used by the eligible fuel cell customer-generators equals 45 megawatts within the service territory of the electrical corporation for an electrical corporation with a peak demand above 10,000 megawatts, or equals 22.5 megawatts within the service territory of the electrical corporation for an electrical corporation with a peak demand of 10,000 megawatts or below. The combined statewide cumulative rated generating capacity used by the eligible fuel cell customer-generators in the service territories of all electrical corporations in the state may not exceed 112.5 megawatts.

(c) In determining the eligibility for the cumulative rated generating capacity within an electrical service area, preference shall be given to facilities which, at the time of installation, are located in a community with significant exposure to air contaminants or localized air contaminants, or both, including, but not limited to, communities of minority populations or low-income populations, or both, based on the ambient air quality standards established pursuant to Section 39607 of the Health and Safety Code.

(d) Each net energy metering contract or tariff shall be identical, with respect to rate structure, all retail rate components, and any monthly charges, to the contract or tariff to which the customer would be assigned if the customer was not an eligible fuel cell customer-generator. Any new or additional demand charge, standby charge, customer charge, minimum monthly charge, interconnection charge, or other charge that would increase an eligible fuel cell customer-generator's costs beyond those of other customers in the rate class to which the eligible fuel cell customer-generator would otherwise be assigned are contrary to the intent of the Legislature in enacting * * * Chapter 661 of the Statutes of 2003, and may not form a part of net energy metering tariffs.

(e) The net metering calculation shall be carried out in accordance with Section 2827.9.

(f) This section shall remain in effect only until January 1, 2006, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2006, deletes or extends that date.

SEC. 171. Section 2828 of the Public Utilities Code is amended to read:

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 189 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

<< CA PUB UTIL § 2828 >>

2828. (a) As used in this section, the following terms have the following meanings:

(1) "Environmental attributes" associated with the Hetch Hetchy Water and Power solar generation include, but are not limited to, the credits, benefits, emissions reductions, environmental air quality credits, and emissions reduction credits, offsets, and allowances, however entitled, resulting from the avoidance of the emission of any gas, chemical, or other substance attributable to the Hetch Hetchy Water and Power photovoltaic electricity generation facility owned by the City and County of San Francisco.

(2) "HHWP solar generation" means the electricity generated by Hetch Hetchy Water and Power photovoltaic electricity generation facilities owned by the City and County of San Francisco, designated by the City and County of San Francisco pursuant to subdivision (b) and not to exceed five megawatts of peak generation capacity in total.

(3) "Interconnection Agreement" means the 1987 agreement between Pacific Gas and Electric Company and the City and County of San Francisco, as filed with and accepted by the Federal Energy Regulatory Commission (FERC), and as amended from time to time with FERC approval, which provides for rates for transmission, distribution, and sales of supplemental electricity to the City and County of San Francisco. Nothing in this section shall waive or modify the rights of parties under the Interconnection Agreement or the jurisdiction of the FERC over rates set forth in the Interconnection Agreement.

(4) "Appropriate TOU tariff" means the Time-of-Use tariff that would be applicable to the City and County of San Francisco account at the photovoltaic project site if the facility at the site were a Pacific Gas and Electric Company bundled customer, as determined by Pacific Gas and Electric Company.

(b) The City and County of San Francisco may elect to designate specific photovoltaic electricity generation facilities as HHWP solar generation, if all of the following conditions are met:

(1) No single photovoltaic generation project exceeds one megawatt of peak generation capacity.

(2) The photovoltaic project utilizes a meter, or multiple meters, capable of separately measuring electricity flow in both directions. All meters shall provide "time-of-use" measurement information. If the existing meter at the site of the photovoltaic project is not capable of providing time-of-use information or is not capable of separately measuring total flow of energy in both directions, the City and County of San Francisco is responsible for all expenses involved in purchasing and installing a meter or meters that are both capable of providing time-of-use information and able to separately measure total electricity flow in both directions.

(3) The amount of all electricity delivered to the electric grid by the designated HHWP solar generation is the property of Pacific Gas and Electric Company.

(4) The City and County of San Francisco does not sell electricity delivered to the electric grid from the designated HHWP solar generation to a third party.

(5) Ownership and use of the environmental attributes associated with the electricity delivered to the electric grid by HHWP solar generation shall be determined by the commission in accordance with Article 16 (commencing with Section 399.11) of Chapter 2.3 of Part 1.

(c) For each site of a photovoltaic project that comprises the HHWP solar generation, Pacific Gas and Electric Company shall identify the appropriate TOU tariff for that site. Any electricity exported to the Pacific Gas and Electric Company grid at that site shall, for each time-of-use period, result in a monetary credit to be applied monthly as a credit or offset against the invoice created pursuant to the Interconnection Agreement and shall be valued at the generation component of the appropriate TOU tariff. The commission shall determine if it is appropriate to increase the credit to reflect any additional value derived from the location or the environmental attributes of, designated HHWP solar generation.

(d) Monthly charges and credit amounts are interim and subject to an accounting true-up, consistent with commission policies and practices. The true-up shall be performed annually or upon the termination, for any reason, of the Interconnection Agreement. The true-up shall accomplish the following:

(1) If the total electricity delivered to the site by Pacific Gas and Electric Company since the previous true-up equals or exceeds the total electricity exported to the grid by the Hetch Hetchy photovoltaic electricity generation facility at the site, the City and County of San Francisco is a net electricity consumer at that site. For any site where the City and County of San Francisco is a net electricity consumer, a credit or offset shall be applied to reduce the obligations of the City and County of San Francisco to an invoice prepared pursuant to the Interconnection Agreement. If there is no invoiced obligation to be reduced, there is no applicable credit.

Case 3:17-cv-07357-RS    Document 163-3    Filed 01/21/21    Page 190 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(2) If the total electricity delivered to the site by Pacific Gas and Electric Company since the previous true-up is less than the total electricity exported to the grid by the Hetch Hetchy photovoltaic electricity generation facility at the site, the City and County of San Francisco is a net electricity producer at that site. For any site where the City and County of San Francisco is a net electricity producer, the City and County of San Francisco shall receive no credit or offset for the electricity exported to the grid in excess of the electricity delivered to the site from the grid. For any site where the City and County of San Francisco is a net electricity producer, the City and County of San Francisco shall receive a credit or offset up to the amount of electricity delivered to the site from the grid. The credit or offset shall be applied to reduce the obligations of the City and County of San Francisco to an invoice prepared pursuant to the Interconnection Agreement. If there is no invoiced obligation to be reduced, there is no applicable credit or offset. Pacific Gas and Electric Company shall use the last-in, first-out method to determine what electricity delivered to the grid from the site will not earn a credit or offset.

(e) Notwithstanding any other provision of this section, if the City and County of San Francisco engages in retail sales to customers within the service territory of Pacific Gas and Electric Company, as a result of becoming a community choice aggregator, as a result of municipalization, or otherwise, all other provisions of this section shall become inoperative.

(f) Pursuant to this section, the offset to charges under the Interconnection Agreement is the medium to convey credits earned under this section. Nothing in this section shall be construed to affect in any way the rights and obligations of the City and County of San Francisco and Pacific Gas and Electric Company under the Interconnection Agreement.

(g) Pacific Gas and Electric Company shall file an advice letter with the commission, that complies with this section, not later than 10 days after the City and County of San Francisco first designates the specific generation facilities that will comprise HHWP solar generation. The commission, within 30 days of the date of filing of the advice letter, shall approve the advice letter or specify conforming changes to be made by Pacific Gas and Electric Company to be filed in an amended advice letter within 30 days.

(h) The City and County of San Francisco may terminate its election pursuant to subdivisions (b), (c), and (d), upon providing Pacific Gas and Electric Company with a minimum of 60 days' written notice.

SEC. 172. Section 21661.5 of the Public Utilities Code is amended to read:

<< CA PUB UTIL § 21661.5 >>

21661.5. (a) No political subdivision, any of its officers or employees, or any person may submit any application for the construction of a new airport to any local, regional, state, or federal agency unless the plan for construction is first approved by the board of supervisors of the county, or the city council of the city, in which the airport is to be located and unless the plan is submitted to the appropriate commission exercising powers pursuant to Article 3.5 (commencing with Section 21670) of Chapter 4 of Part 1 of Division 9, and acted upon by that commission in accordance with the provisions of that article.

(b) A county board of supervisors or a city council may, pursuant to Section 65100 of the Government Code, delegate its responsibility under this section for the approval of a plan for construction of new helicopter landing and takeoff areas, to the county or city planning agency.

SEC. 173. Section 90300 of the Public Utilities Code is amended to read:

<< CA PUB UTIL § 90300 >>

90300. (a) Employees have the right to self-organize, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. It is declared to be in the public interest that the district not express any preference for one union over another.

(1)(A) Notwithstanding any other provision of this act, if a majority of the employees employed by a district in a unit appropriate for collective bargaining indicate a desire to be represented by a labor organization, then the district, after determining pursuant to subdivision (f) that the labor organization represents the employees in the appropriate unit, shall enter into a written contract with the accredited representative of those employees governing wages, salaries, hours, and working conditions.

(B)(i) If a dispute arises over wages, salaries, hours, or working conditions that is not resolved by negotiations conducted in good faith between the district and the labor organization, then upon the request of either party, the district and the labor organization may submit the dispute to an arbitration board. The decision of a majority of the arbitration board shall be final.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 191 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(ii) The arbitration board shall be composed of two representatives of the district, two representatives of the labor organization, and a fifth member to be agreed upon by the representatives of the district and labor organization.

(iii) If the representatives of the district and labor organization are unable to agree on the fifth member, then the names of five persons experienced in labor arbitration shall be obtained from the California State Mediation and Conciliation Service within the Department of Industrial Relations. The labor organization and the district shall, alternately, strike a name from the list supplied by the California State Mediation and Conciliation Service. The labor organization and the district shall determine by lot who shall first strike a name from the list. After the labor organization and the district have stricken four names, the name remaining shall be designated as the arbitrator. The decision of a majority of the arbitration board shall be final and binding upon the parties.

(iv) The expenses of arbitration shall be borne equally by the parties. Each party shall bear the party's own costs.

(b) If the board and the representatives of the employees do not agree to submit the dispute to an arbitration board as provided in subdivision (a), either party may notify the California State Mediation and Conciliation Service that a dispute exists and that there is no agreement to arbitrate. The California State Mediation and Conciliation Service shall determine whether or not the dispute can be resolved by the parties and, if not, the issues that are the subject of dispute. After making its determination, the service shall certify its findings to the Governor who shall, within 10 days of receipt of certification, appoint a factfinding commission consisting of three persons. The factfinding commission shall immediately convene and investigate the issues involved in the dispute. The commission shall report to the Governor within 30 days of the date of its creation.

(c) After the creation of the commission and for 30 days after the date the commission made its report to the Governor, the parties to the controversy shall not make any change, except by mutual agreement, in the conditions out of which the dispute arose. Service to the public shall be provided during that time.

(d) A contract or agreement shall not be made, or assumed, with any labor organization, association, group, or individual that denies membership to, or in any manner discriminates against, any employee on any basis listed in subdivision (a) of Section 12940 of the Government Code, as those bases are defined in Sections 12926 and 12926.1 of the Government Code. However, the organization may preclude from membership any individual who advocates the overthrow of the government by force or violence.

(e) The district shall not discriminate with regard to employment against any person on any basis listed in subdivision (a) of Section 12940 of the Government Code, as those bases are defined in Sections 12926 and 12926.1 of the Government Code, except as otherwise provided in Section 12940 of the Government Code.

(f)(1) Any questions regarding whether a labor organization represents a majority of employees or whether the proposed unit is or is not appropriate, shall be submitted to the California State Mediation and Conciliation Service for disposition. The California State Mediation and Conciliation Service shall promptly hold a public hearing after due notice to all interested parties to determine the unit appropriate for the purposes of collective bargaining. In making that determination and in establishing rules and regulations governing petitions and the conduct of hearings and elections, the California State Mediation and Conciliation Service shall be guided by relevant federal law and administrative practice, developed under the Labor–Management Relations Act of 1947 (29 U.S.C. Sec. 141 et seq.).

(2) The California State Mediation and Conciliation Service shall provide for an election to determine the question of representation and shall certify the results to the parties. A certification of a labor organization to represent or act for the employees in any collective bargaining unit shall not be subject to challenge on the grounds that a new substantial question of representation within the collective bargaining unit exists until the lapse of one year from the date of certification or the expiration of any collective bargaining agreement, whichever is later. However, no collective bargaining agreement shall be construed to be a bar to representation proceedings for a period of more than two years.

(g) If the district acquires existing facilities from a publicly or privately owned public utility, either in proceedings by eminent domain or otherwise, the district shall assume and observe all existing labor contracts.

(1) To the extent necessary for operation of facilities, all of the employees of the acquired public utility whose duties pertain to the facilities acquired shall be appointed to comparable positions in the district without examination, subject to all the rights and benefits of this act. Those employees shall be given sick leave, seniority, vacation, and pension credits in accordance with the records and labor agreements of the acquired public utility.

(2) Members and beneficiaries of any pension or retirement system, or other benefits established by the public utility, shall continue to have the rights, privileges, benefits, obligations, and status with respect to the established system. No employee

Case 3:17-cv-07357-RS    Document 163-3    Filed 01/21/21    Page 192 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

of any acquired public utility may be subject to a reduction in wages, seniority, pension, vacation, or other benefits as a result of the acquisition.

(3) The district may extend the benefits of this section to officers or supervisory employees of the acquired utility.

(h) The district shall not do any of the following:

(1) Acquire any existing system or part of an existing system, whether by purchase, lease, condemnation, or otherwise.

(2) Dispose of or lease any transit system or part of the transit system.

(3) Merge, consolidate, or coordinate any transit system or part of the transit system.

(4) Reduce or limit the lines or service of any existing system or of the district's system unless the district has first made adequate provision for any employees who are or may be displaced. The terms and conditions of that provision shall be a proper subject of collective bargaining.

(i) Notwithstanding any provision of the Government Code, the district may make deductions from the wages and salaries of its employees who authorize the deductions for the following purposes:

(1) Pursuant to a collective bargaining agreement with a duly designated or certified labor organization, for the payment of union dues, fees, or assessments.

(2) For the payment of contributions pursuant to any health and welfare plan, or pension or retirement plan.

(3) For any purpose for which employees of any private employer may authorize deductions.

(j)(1) The obligation of the district to bargain in good faith with a duly designated or certified labor organization and to execute a written collective bargaining agreement with that labor organization covering the wages, hours, and working conditions of the employees represented by that labor organization in an appropriate unit, and to comply with the terms of the collective bargaining agreement, shall not be limited or restricted by any provision of law. The obligation of the district to bargain collectively shall extend to all subjects of collective bargaining that are or may be proper subjects of collective bargaining with a private employer, including retroactive provisions.

(2) Notwithstanding any other provision of law, the district shall make deductions from the wages and salaries of its employees, upon receipt of authorization to make those deductions, for the payment of union dues, fees, or assessments, for the payment of contributions pursuant to any health and welfare plan or pension plan, or for any other purpose for which employees of any private employer may authorize deductions, where those deductions are pursuant to a collective bargaining agreement with a duly designated or certified labor organization.

(k) The district may provide for a retirement system, provided that the adoption, terms, and conditions of any retirement system covering employees of the district represented by a labor organization in accordance with this section shall be pursuant to a collective bargaining agreement between the labor organization and the district.

(l) The district shall take any steps that may be necessary to obtain coverage for the district and its employees under Title II of the Federal Social Security Act (42 U.S.C. Sec. 401 et seq.), and the related provisions of the Federal Insurance Contributions Act (26 U.S.C. Sec. 3101 et seq.).

(m) The district shall take any steps that may be necessary to obtain coverage for the district and its employees under the workers' compensation (Division 4 (commencing with Section 3200) and Division 4.5 (commencing with Section 6100) of the Labor Code), unemployment compensation disability (Part 2 (commencing with Section 2691) of Division 1 of the Unemployment Insurance Code), and unemployment insurance (Part 1 (commencing with Section 100) of Division 1 of the Unemployment Insurance Code) laws of the State of California.

SEC. 174. Section 130054.1 of the Public Utilities Code is amended to read:

<< CA PUB UTIL § 130054.1 >>

130054.1. The Ventura County Transportation Commission shall consist of the following members:

(a) Five members of the Ventura County Board of Supervisors.

(b) One member from each incorporated city within Ventura County who shall be the mayor of the city or a member of its city council. The term of a member under this subdivision terminates when he or she ceases to hold that office or when replaced by the city council.

(c) One citizen member appointed by the Ventura County Board of Supervisors, who shall not be an elected official, but who shall be a resident of Ventura County.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 193 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(d) One citizen member appointed by the Ventura County City Selection Committee, who shall not be an elected official, but who shall be a resident of Ventura County.

(e) One nonvoting member appointed by the Governor.

SEC. 175. Section 130630 of the Public Utilities Code is amended to read:

<< CA PUB UTIL § 130630 >>

130630. The role of the board as it relates to the MTA is as follows:

(a) The board provides counsel and direction to management and shall not be involved in the day-to-day affairs of the MTA.

(b) Board members do not have individual power or authority over the MTA. That power and decisionmaking authority lie with the full board.

SEC. 176. Section 170042 of the Public Utilities Code is amended to read:

<< CA PUB UTIL § 170042 >>

170042. (a) The board may act only by ordinance or resolution for the regulation of the authority and undertaking all acts necessary and convenient for the exercise of the authority's powers.

(b) The authority may adopt and enforce rules and regulations for the administration, maintenance, operation, and use of its facilities and services.

(c)(1) A person who violates a rule, regulation, or ordinance adopted by the board is guilty of a misdemeanor punishable pursuant to Section 19 of the Penal Code, or an infraction under the circumstances set forth in paragraph (1) or (2) of subdivision (d) of Section 17 of the Penal Code.

(2) The authority may employ necessary personnel to enforce this section.

(d) A majority of the membership of the board shall constitute a quorum for the transaction of business.

SEC. 177. Section 69.4 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 69.4 >>

69.4. (a)(1) Notwithstanding any other provision of law, pursuant to the authority of subdivision (i) of Section 2 of Article XIII A of the California Constitution, the base year value of qualified contaminated property may be transferred, subject to the conditions and limitations of that subdivision and this section, to a comparable replacement property of equal or lesser value that is located in the same county and is acquired or newly constructed as a replacement for the contaminated property, pursuant to subparagraph (A) of paragraph (1) of that subdivision.

(2) The limitation in paragraph (1) requiring that the qualified contaminated property and the replacement property be located in the same county does not apply in a county in which the county board of supervisors adopts a resolution making the provisions of this section applicable to replacement properties acquired to replace qualified contaminated properties located in another county within this state. The resolution shall specify the date on and after which its provisions are applicable. The specified date may be a date earlier than the date on which the county adopts the ordinance, but no earlier than November 3, 1998.

(b) The replacement property shall be acquired or newly constructed within five years after the original property is sold or otherwise transferred.

(c)(1) Upon the sale or transfer of the original property, the assessor shall determine a new base year value for that property in accordance with subdivision (a) of Section 2 of Article XIII A of the California Constitution and Section 110.1.

(2) This section does not apply unless the sale or transfer of the original property is a change in ownership that does either of the following:

(A) Subjects the original property to reappraisal at its current fair market value in accordance with Section 110.1 or 5803.

(B) Results in a base year value determined in accordance with this section, Section 69, Section 69.3, or Section 69.5 because the property qualifies under this section, Section 69, Section 69.3, or Section 69.5 as a replacement dwelling or property.

(d) Property tax relief under this section is not available for a replacement property if the owner or owners of the original property do either of the following:

(1) Receive property tax relief under Section 74.7.

(2) Sign a claim under Section 63.1 allowing the base year value to stay with the original property.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 194 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(e) For purposes of this section:

(1) The "original property" means the qualified contaminated property.

(2) "Equal or lesser value" means the amount of the full cash value of a replacement property that does not exceed one of the following:

(A) One hundred five percent of the amount of the full cash value of the original property, if the replacement property is purchased or newly constructed within the first year following the date of the sale of the original property.

(B) One hundred ten percent of the amount of the full cash value of the original property, if the replacement property is purchased or newly constructed within the second year following the date of the sale of the original property.

(C) One hundred fifteen percent of the amount of the full cash value of the original property, if the replacement property is purchased or newly constructed within the third year following the date of the sale of the original property.

(D) One hundred twenty percent of the amount of the full cash value of the original property, if the replacement property is purchased or newly constructed within the fourth year following the date of the sale of the original property.

(E) One hundred twenty-five percent of the amount of the full cash value of the original property, if the replacement property is purchased or newly constructed within the fifth year following the date of the sale of the original property.

For purposes of this paragraph, if the replacement property is, in part, purchased and, in part, newly constructed, the date the replacement property is "acquired or newly constructed" is the date of acquisition or the date of completion of construction, whichever is later.

(3) The base year value of the original property shall be the base year value of the original property as determined in accordance with Section 110.1, with the inflation factor adjustments permitted by subdivision (f) of Section 110.1. The base year value of the original property shall also include any inflation factor adjustments permitted by subdivision (f) of Section 110.1 up to the date the replacement property is acquired or newly constructed, regardless of whether the claimant continued to own the original property during this entire period. The base year or years used to compute the base year value of the original property shall be deemed to be the base year or years of any property to which that base year value is transferred pursuant to this section.

(4) "Fair market value of the replacement property" means the full cash value of the replacement property determined in accordance with Section 110.1 as of the date on which that property was acquired or new construction was completed. If the replacement property is, in part, acquired and, in part, newly constructed, "fair market value of the replacement property" means the fair market value of the land and the improvements as of the date of completion.

(5) "Fair market value of the qualified contaminated property" means the full cash value of the qualified contaminated property, as if that property was not contaminated, determined in accordance with Section 110.1, as of the date of its sale or transfer by the claimant.

(6) "Claimant" means any owner of qualified contaminated property claiming the property tax relief provided by this section.

(7) "Comparable replacement property" means a property that is similar in utility and function to the property that it replaces. Property is similar in function and utility if it is, or is intended to be, used in the same manner as the qualified contaminated property.

(f)(1) A claimant is not eligible for the property tax relief provided by this section unless a claim is filed within three years of the date the replacement property was purchased or the new construction of the replacement property was completed.

(2) The claimant shall provide to the assessor the following information:

(A) Proof that the claimant did not participate or acquiesce in any act or omission that rendered the real property uninhabitable or unusable, as applicable, or is related to any individual or entity that committed that act or omission.

(B) Proof that the qualified contaminated property has been designated as a toxic or environmental hazard or as an environmental cleanup site by an agency of the State of California or the federal government.

(3) The State Board of Equalization shall design the form for claiming eligibility.

(g)(1) Upon the timely filing of a claim, the assessor shall adjust the new base year value as of the date the replacement property is acquired or the date the new construction of the replacement property is completed, whichever is later.

(2) Any taxes that were levied on the replacement property prior to the filing of the claim on the basis of the replacement property's new base year value, and any allowable annual adjustments thereto, shall be canceled or refunded to the claimant to the extent that the taxes exceed the amount that would be due when determined on the basis of the adjusted new base year value.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 195 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(3) Notwithstanding Section 75.10, Chapter 3.5 (commencing with Section 75) of Part 0.5 of Division 1 shall be utilized for purposes of implementing this subdivision, including adjustments of the new base year value of replacement properties acquired prior to the sale or transfer of the qualified contaminated property.

(h) This section applies only to replacement property that is acquired or newly constructed on or after January 1, 1995.

SEC. 178. Section 214 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 214 >>

214. (a) Property used exclusively for religious, hospital, scientific, or charitable purposes owned and operated by community chests, funds, foundations, limited liability companies, or corporations organized and operated for religious, hospital, scientific, or charitable purposes is exempt from taxation, including ad valorem taxes to pay the interest and redemption charges on any indebtedness approved by the voters prior to July 1, 1978, or any bonded indebtedness for the acquisition or improvement of real property approved on or after July 1, 1978, by two-thirds of the votes cast by the voters voting on the proposition, if:

(1) The owner is not organized or operated for profit. However, in the case of hospitals, the organization shall not be deemed to be organized or operated for profit if, during the immediately preceding fiscal year, operating revenues, exclusive of gifts, endowments and grants-in-aid, did not exceed operating expenses by an amount equivalent to 10 percent of those operating expenses. As used herein, operating expenses include depreciation based on cost of replacement and amortization of, and interest on, indebtedness.

(2) No part of the net earnings of the owner inures to the benefit of any private shareholder or individual.

(3) The property is used for the actual operation of the exempt activity, and does not exceed an amount of property reasonably necessary to the accomplishment of the exempt purpose.

(A) For the purposes of determining whether the property is used for the actual operation of the exempt activity, consideration shall not be given to use of the property for either or both of the following described activities if that use is occasional:

(i) The owner conducts fundraising activities on the property and the proceeds derived from those activities are not unrelated business taxable income, as defined in Section 512 of the Internal Revenue Code, of the owner and are used to further the exempt activity of the owner.

(ii) The owner permits any other organization that meets all of the requirements of this subdivision, other than ownership of the property, to conduct fundraising activities on the property and the proceeds derived from those activities are not unrelated business taxable income, as defined in Section 512 of the Internal Revenue Code [4], of the organization, are not subject to the tax on unrelated business taxable income that is imposed by Section 511 of the Internal Revenue Code, and are used to further the exempt activity of the organization.

(B) For purposes of subparagraph (A):

(i) "Occasional use" means use of the property on an irregular or intermittent basis by the qualifying owner or any other qualifying organization described in clause (ii) of subparagraph (A) that is incidental to the primary activities of the owner or the other organization.

(ii) "Fundraising activities" means both activities involving the direct solicitation of money or other property and the anticipated exchange of goods or services for money between the soliciting organization and the organization or person solicited.

(C) Subparagraph (A) shall have no application in determining whether paragraph (3) has been satisfied unless the owner of the property and any other organization using the property as provided in subparagraph (A) have filed with the assessor a valid organizational clearance certificate issued pursuant to Section 254.6.

(D) For the purposes of determining whether the property is used for the actual operation of the exempt activity, consideration shall not be given to the use of the property for meetings conducted by any other organization if the meetings are incidental to the other organization's primary activities, are not fundraising meetings or activities as defined in subparagraph (B), are held no more than once per week, and the other organization and its use of the property meet all other requirements of paragraphs (1) to (5), inclusive. The owner of the other organization also shall file with the assessor a valid organizational clearance certificate issued pursuant to Section 254.6.

(E) Nothing in subparagraph (A), (B), (C), or (D) shall be construed to either enlarge or restrict the exemption provided for in subdivision (b) of Section 4 and Section 5 of Article XIII of the California Constitution and this section.

(4) The property is not used or operated by the owner or by any other person so as to benefit any officer, trustee, director, shareholder, member, employee, contributor, or bondholder of the owner or operator, or any other person, through the

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 196 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

distribution of profits, payment of excessive charges or compensations, or the more advantageous pursuit of their business or profession.

(5) The property is not used by the owner or members thereof for fraternal or lodge purposes, or for social club purposes except where that use is clearly incidental to a primary religious, hospital, scientific, or charitable purpose.

(6) The property is irrevocably dedicated to religious, charitable, scientific, or hospital purposes and upon the liquidation, dissolution, or abandonment of the owner will not inure to the benefit of any private person except a fund, foundation, or corporation organized and operated for religious, hospital, scientific, or charitable purposes.

(7) The property, if used exclusively for scientific purposes, is used by a foundation or institution that, in addition to complying with the foregoing requirements for the exemption of charitable organizations in general, has been chartered by the Congress of the United States (except that this requirement shall not apply when the scientific purposes are medical research), and whose objects are the encouragement or conduct of scientific investigation, research, and discovery for the benefit of the community at large.

The exemption provided for herein shall be known as the "welfare exemption." This exemption shall be in addition to any other exemption now provided by law, and the existence of the exemption provision in paragraph (2) of subdivision (a) of Section 202 shall not preclude the exemption under this section for museum or library property. Except as provided in subdivision (e), this section shall not be construed to enlarge the college exemption.

(b) Property used exclusively for school purposes of less than collegiate grade and owned and operated by religious, hospital, or charitable funds, foundations, limited liability companies, or corporations, which property and funds, foundations, limited liability companies, or corporations meet all of the requirements of subdivision (a), shall be deemed to be within the exemption provided for in subdivision (b) of Section 4 and Section 5 of Article XIII of the California Constitution and this section.

(c) Property used exclusively for nursery school purposes and owned and operated by religious, hospital, or charitable funds, foundations, limited liability companies, or corporations, which property and funds, foundations, limited liability companies, or corporations meet all the requirements of subdivision (a), shall be deemed to be within the exemption provided for in subdivision (b) of Section 4 and Section 5 of Article XIII of the California Constitution and this section.

(d) Property used exclusively for a noncommercial educational FM broadcast station or an educational television station, and owned and operated by religious, hospital, scientific, or charitable funds, foundations, limited liability companies, or corporations meeting all of the requirements of subdivision (a), shall be deemed to be within the exemption provided for in subdivision (b) of Section 4 and Section 5 of Article XIII of the California Constitution and this section.

(e) Property used exclusively for religious, charitable, scientific, or hospital purposes and owned and operated by religious, hospital, scientific, or charitable funds, foundations, limited liability companies, or corporations or educational institutions of collegiate grade, as defined in Section 203, which property and funds, foundations, limited liability companies, corporations, or educational institutions meet all of the requirements of subdivision (a), shall be deemed to be within the exemption provided for in subdivision (b) of Section 4 and Section 5 of Article XIII of the California Constitution and this section. As to educational institutions of collegiate grade, as defined in Section 203, the requirements of paragraph (6) of subdivision (a) shall be deemed to be met if both of the following are met:

(1) The property of the educational institution is irrevocably dedicated in its articles of incorporation to charitable and educational purposes, to religious and educational purposes, or to educational purposes.

(2) The articles of incorporation of the educational institution provide for distribution of its property upon its liquidation, dissolution, or abandonment to a fund, foundation, or corporation organized and operated for religious, hospital, scientific, charitable, or educational purposes meeting the requirements for exemption provided by Section 203 or this section.

(f) Property used exclusively for housing and related facilities for elderly or handicapped families and financed by, including, but not limited to, the federal government pursuant to Section 202 of Public Law 86–372 (12 U.S.C. Sec. 1701q), as amended, Section 231 of Public Law 73–479 (12 U.S.C. Sec. 1715v), Section 236 of Public Law 90–448 (12 U.S.C. Sec. 1715z), or Section 811 of Public Law 101–625 (42 U.S.C. Sec. 8013), and owned and operated by religious, hospital, scientific, or charitable funds, foundations, or corporations meeting all of the requirements of this section shall be deemed to be within the exemption provided for in subdivision (b) of Section 4 and Section 5 of Article XIII of the California Constitution and this section.

The amendment of this paragraph made by Chapter 1102 of the Statutes of 1984 does not constitute a change in, but is declaratory of, * * * existing law. However, no refund of property taxes shall be required as a result of this amendment for any fiscal year prior to the fiscal year in which the amendment takes effect.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 197 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Property used exclusively for housing and related facilities for elderly or handicapped families at which supplemental care or services designed to meet the special needs of elderly or handicapped residents are not provided, or that is not financed by the federal government pursuant to Section 202 of Public Law 86–372 (12 U.S.C. Sec. 1701q), as amended, Section 231 of Public Law 73–479 (12 U.S.C. Sec. 1715v), Section 236 of Public Law 90–448 (12 U.S.C. Sec. 1715z), or Section 811 of Public Law 101–625 (42 U.S.C. Sec. 8013), shall not be entitled to exemption pursuant to this subdivision unless the property is used for housing and related facilities for low- and moderate-income elderly or handicapped families. Property that would otherwise be exempt pursuant to this subdivision, except that it includes some housing and related facilities for other than low- or moderate-income elderly or handicapped families, shall be entitled to a partial exemption. The partial exemption shall be equal to that percentage of the value of the property that is equal to the percentage that the number of low- and moderate-income elderly and handicapped families occupying the property represents of the total number of families occupying the property.

As used in this subdivision, "low and moderate income" has the same meaning as the term "persons and families of low or moderate income" as defined by Section 50093 of the Health and Safety Code.

(g)(1) Property used exclusively for rental housing and related facilities and owned and operated by religious, hospital, scientific, or charitable funds, foundations, limited liability companies, or corporations, including limited partnerships in which the managing general partner or eligible limited liability company * * * is an eligible nonprofit corporation, meeting all of the requirements of this section, or by veterans' organizations, as described in Section 215.1, meeting all the requirements of paragraphs (1) to (7), inclusive, of subdivision (a), shall be deemed to be within the exemption provided for in subdivision (b) of Section 4 and Section 5 of Article XIII of the California Constitution and this section and shall be entitled to a partial exemption equal to that percentage of the value of the property that the portion of the property serving lower income households represents of the total property in any year in which either of the following criteria applies:

(A) The acquisition, rehabilitation, development, or operation of the property, or any combination of these factors, is financed with tax-exempt mortgage revenue bonds or general obligation bonds, or is financed by local, state, or federal loans or grants and the rents of the occupants who are lower income households do not exceed those prescribed by deed restrictions or regulatory agreements pursuant to the terms of the financing or financial assistance.

(B) The owner of the property is eligible for and receives low-income housing tax credits pursuant to Section 42 of the Internal Revenue Code [5] of 1986, as added by Public Law 99–514.

(C) In the case of a claim, other than a claim with respect to property owned by a limited partnership in which the managing general partner is an eligible nonprofit corporation, that is filed for the 2000–01 fiscal year or any fiscal year thereafter, 90 percent or more of the occupants of the property are lower income households whose rent does not exceed the rent prescribed by Section 50053 of the Health and Safety Code. The total exemption amount allowed under this subdivision to a taxpayer, with respect to a single property or multiple properties for any fiscal year on the sole basis of the application of this subparagraph, may not exceed twenty thousand dollars ($20,000) of tax.

(2) In order to be eligible for the exemption provided by this subdivision, the owner of the property shall do both of the following:

(A)(i) For any claim filed for the 2000–01 fiscal year or any fiscal year thereafter, certify and ensure, subject to the limitation in clause (ii), that there is an enforceable and verifiable agreement with a public agency, a recorded deed restriction, or other legal document that restricts the project's usage and that provides that the units designated for use by lower income households are continuously available to or occupied by lower income households at rents that do not exceed those prescribed by Section 50053 of the Health and Safety Code, or, to the extent that the terms of federal, state, or local financing or financial assistance conflicts with Section 50053, rents that do not exceed those prescribed by the terms of the financing or financial assistance.

(ii) In the case of a limited partnership in which the managing general partner is an eligible nonprofit corporation, the restriction and provision specified in clause (i) shall be contained in an enforceable and verifiable agreement with a public agency, or in a recorded deed restriction to which the limited partnership certifies.

(B) Certify that the funds that would have been necessary to pay property taxes are used to maintain the affordability of, or reduce rents otherwise necessary for, the units occupied by lower income households.

(3) As used in this subdivision, "lower income households" has the same meaning as the term "lower income households" as defined by Section 50079.5 of the Health and Safety Code.

(h) Property used exclusively for an emergency or temporary shelter and related facilities for homeless persons and families and owned and operated by religious, hospital, scientific, or charitable funds, foundations, limited liability companies, or

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 198 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

corporations meeting all of the requirements of this section shall be deemed to be within the exemption provided for in subdivision (b) of Section 4 and Section 5 of Article XIII of the California Constitution and this section. Property that otherwise would be exempt pursuant to this subdivision, except that it includes housing and related facilities for other than an emergency or temporary shelter, shall be entitled to a partial exemption.

  As used in this subdivision, "emergency or temporary shelter" means a facility that would be eligible for funding pursuant to Chapter 11 (commencing with Section 50800) of Part 2 of Division 31 of the Health and Safety Code.

  (i) Property used exclusively for housing and related facilities for employees of religious, charitable, scientific, or hospital organizations that meet all the requirements of subdivision (a) and owned and operated by funds, foundations, limited liability companies, or corporations that meet all the requirements of subdivision (a) shall be deemed to be within the exemption provided for in subdivision (b) of Section 4 and Section 5 of Article XIII of the California Constitution and this section to the extent the residential use of the property is institutionally necessary for the operation of the organization.

  (j) For purposes of this section, charitable purposes include educational purposes. For purposes of this subdivision, "educational purposes" means those educational purposes and activities for the benefit of the community as a whole or an unascertainable and indefinite portion thereof, and do not include those educational purposes and activities that are primarily for the benefit of an organization's shareholders. Educational activities include the study of relevant information, the dissemination of that information to interested members of the general public, and the participation of interested members of the general public.

  (k) In the case of property used exclusively for the exempt purposes specified in this section, owned and operated by limited liability companies that are organized and operated for those purposes, the State Board of Equalization shall adopt regulations to specify the ownership, organizational, and operational requirements for those companies to qualify for the exemption provided by this section.

  (l) The amendments made by * * * Chapter 354 of the Statutes of 2004 shall apply with respect to lien dates occurring on and after January 1, 2005.

  SEC. 179. Section 217 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 217 >>

  217. (a) Except as provided in subdivision (d), the following articles of personal property that have been made available for display in a publicly owned art gallery or museum, or a museum that is regularly open to the public and that is operated by a nonprofit organization that qualifies for exemption pursuant to Section 23701d, shall be exempt from taxation:

  (1) Original paintings in oil, mineral, water, vitreous enamel, or other colors, pastels, original mosaics, original drawings and sketches in pen, ink, pencil, or watercolors, or works of the free fine arts in any other media including applied paper and other materials, manufactured or otherwise, that are used on collages, artists' proof etchings unbound, and engravings and woodcuts unbound, lithographs, or prints made by other hand transfer processes unbound, or original sculptures or statuary. As used in this subdivision:

  (A) "Sculpture" and "statuary" shall include professional productions of sculptors only whether in round or in relief, in bronze, marble, stone, terra cotta, ivory, wood, metal, or other materials, or whether cut, carved, or otherwise wrought by hand from the solid block or mass of marble, stone, alabaster, or from metal, or other materials, or cast in bronze or other metal or substance, or from wax or plaster, or constructed from any material or made in any form as the professional productions of sculptors, only.

  (B) "Original" when used to modify the words "sculptures" and "statuary" shall include the original work or model and the first 10 castings, replicas, or reproductions made from the sculptor's original work or model, with or without a change in scale, regardless of whether or not the sculptor is alive at the time the castings, replicas, or reproductions are completed.

  (C) "Painting," "mosaic," "drawing," "work of the free fine arts," "sketch," "sculpture," and "statuary" shall not include any articles of utility, articles designed for industrial use, or any articles that are made wholly or in part by stenciling or any other mechanical process.

  (D) "Etchings," "engravings," * * * "woodcuts," "lithographs," or "prints made by other hand transfer processes," shall include only works that are printed by hand from plates, stones or blocks etched, drawn, or engraved with handtools and do not include works that are printed from plates, stones or blocks etched, drawn, or engraved by photochemical or other mechanical processes.

  (2) Original works of the free fine arts, that are not described in paragraph (1)* * *, are subject to regulations, as the board may prescribe, to prove that the article represents some school, kind, or medium of the free fine arts. As used in this paragraph, "original works of the free fine arts" shall not include any article of utility or any article designed for industrial use.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 199 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(b) When making a claim for an exemption pursuant to this section, a person claiming the exemption shall provide all information required and answer all questions in an affidavit, under penalty of perjury. The assessor may require other proof of the facts stated before allowing the exemption. The affidavit shall be accompanied by a certificate of the director or other officer of the art gallery or museum in which the property for which an exemption is claimed under this section was made available for display that the property was available for public display in the art gallery or museum for the period specified in subdivision (e).

(c) \* \* \* Sections 255 and 260 shall be applicable to the exemption provided by this section.

(d) The exemption provided by subdivision (a) shall not apply to any work of art loaned by any person who holds works of art primarily for purposes of sale.

(e) The exemption provided by this section shall not apply unless the property was made available for public display in the art gallery or museum for a period of 90 days during the 12–month period immediately preceding the lien date for the year for which the exemption is claimed.

If the property was first made available for public display less than 90 days prior to the lien date, the exemption may be granted if the person claiming the exemption certifies in writing that the property will be made available for public display for at least 90 days during the 12–month period commencing with the first day the property was made available for public display.

(f) For purposes of this section, "regularly open to the public" means that the gallery or museum was open to the public not less than 20 hours per week for not less than 35 weeks of the 12–month period immediately preceding the lien date for the year for which the exemption is claimed.

If the gallery or museum has been open for less than 35 weeks during the 12–month period immediately preceding the lien date or for less than 20 hours per week during that period, the exemption may be granted if the director or other officer of the gallery or museum certifies in writing that the gallery or museum will be open for not less than 20 hours per week for not less than 35 weeks during the 12–month period beginning with the day the gallery or museum was first opened.

(g) If a person certifies in writing that the property will be made available and the gallery or museum open for the periods specified in subdivisions (e) and (f), and the property is not so made available or the gallery or museum is not so opened, the exemption shall be canceled, and an escape assessment may be made as provided in Section 531.1.

SEC. 180. Section 2508 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 2508 >>

2508. If any negotiable paper is returned unpaid to the bank with which it was deposited pursuant to any requirement of this division, the bank shall return it to the officer who deposited it and, if its amount has been included in any cashier's check given by the bank, the bank is entitled to a refund in the amount of the unpaid negotiable paper. Any negotiable paper redeemed by or charged back to the county treasurer by reason of nonpayment shall be returned to the officer who deposited it \* \* \* in exchange for currency or other negotiable paper or for the warrant of the county auditor drawn on the fund into which the original deposit was made.

SEC. 181. Section 3811 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 3811 >>

3811. On execution of the deed to the taxing agency or nonprofit organization, the tax collector shall report the following to the Controller, the assessor, and the auditor:

(a) The name of the purchaser.

(b) The effective date of the sale and the date of the transfer of the deed to the taxing agency or nonprofit organization.

(c) The amount for which the property was sold.

(d) The description of the property conveyed.

SEC. 182. Section 7105 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 7105 >>

7105. (a) The Transportation Deferred Investment Fund is hereby created in the State Treasury.

(b) On or before June 30, 2009, the Controller shall transfer an amount from the General Fund to the Transportation Deferred Investment Fund that is equal to the amount that was not transferred from the General Fund to the Transportation Investment

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 200 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Fund for the 2003–04 fiscal year because of the partial suspension of the transfer pursuant to Section 14557 of the Government Code, plus interest calculated at the Pooled Money Investment Account rate relative to the amounts that would otherwise have been available for the transportation programs described in paragraphs (2) to (5), inclusive, of subdivision (c) of Section 7104. The amount to be transferred from the General Fund to the Transportation Deferred Investment Fund shall be reduced by the amount of any payment made to the Transportation Deferred Investment Fund from any funding source, excluding subdivision (d). The moneys deposited in the Transportation Deferred Investment Fund pursuant to this subdivision is continuously appropriated without regard to fiscal years for disbursement in the manner and for the purposes set forth in this section.

 (c) The Controller, from the moneys deposited in the Transportation Deferred Investment Fund pursuant to subdivision (b), shall make transfers and apportionments of those funds in the same manner and amounts that would have been made in the 2003–04 fiscal year from the Transportation Investment Fund pursuant to Section 7104, as that section read on January 1, 2003, if the transfer of funds from the General Fund to the Transportation Investment Fund had not been partially suspended for the 2003–04 fiscal year pursuant to Section 14557 of the Government Code. However, in making those transfers and apportionments, the Controller shall take into account and deduct therefrom any transfers and apportionments that were made from the Transportation Investment Fund in the 2003–04 fiscal year from funds made available pursuant to subdivision (b) of Section 14557 of the Government Code. It is the intent of the Legislature that, upon completion of the transfer of funds pursuant to subdivision (b) from the General Fund to the Transportation Deferred Investment Fund, each of the transportation programs that was to have been funded during the 2003–04 fiscal year from the Transportation Investment Fund pursuant to Section 7104 of * * * this code shall have received the amount of funding that the program would have received in the absence of the suspension of the transfer pursuant to Section 14557 of the Government Code.

 (d) To the extent that funds are provided under clauses (iii) and (v) of subparagraph (A) of paragraph (1) of subdivision (c) of Section 63048.65 of the Government Code to the Traffic Congestion Relief Fund for apportionment pursuant to subparagraphs (B) and (C) of paragraph (2) of subdivision (c) of Section 7104, paragraph (4) of subdivision (c) of Section 7104, and paragraph (5) of subdivision (c) of Section 7104, the Controller shall deduct an equal amount from any transfer of funds from the Transportation Deferred Investment Fund made for those apportionments and transfer that amount instead to the Traffic Congestion Relief Fund.

 (e) The interest that is to be deposited in the Transportation Deferred Investment Fund pursuant to subdivision (b) shall be allocated proportionately to each program element in paragraphs (2) to (5), inclusive, of subdivision (c) of Section 7104, based on the amount that each program did not receive in the 2003–04 fiscal year due to suspension of the transfer pursuant to Section 14557 of the Government Code.

 (f) The Legislature finds and declares that continued investment in transportation is essential for the California economy. That investment reduces traffic congestion, assists in economic development, improves the condition of local streets and roads, and provides high-quality public transportation.

 SEC. 183. Section 17041 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 17041 >>

 17041. (a) There shall be imposed for each taxable year upon the entire taxable income of every resident of this state who is not a part-year resident, except the head of a household as defined in Section 17042, taxes in the following amounts and at the following rates upon the amount of taxable income computed for the taxable year as if the resident were a resident of this state for the entire taxable year and for all prior taxable years for any carryover items, deferred income, suspended losses, or suspended deductions:

| If the taxable income is: | The tax is: |
| --- | --- |
| Not over $3,650.................................................................. | 1% of the taxable income |
| Over $3,650 but notover $8,650........................................... | $36.50 plus 2% of the excess over $3,650 |
| Over $8,650 but notover $13,650........................................ | $136.50 plus 4% of the excess over $8,650 |

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 201 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

| Over $13,650 but notover $18,950 | $336.50 plus 6% of the excess over $13,650 |
| Over $18,950 but notover $23,950 | $654.50 plus 8% of the excess over $18,950 |
| Over $23,950 | $1,054.50 plus 9.3% of the excess over $23,950 |

(b)(1) There shall be imposed for each taxable year upon the taxable income of every nonresident or part-year resident, except the head of a household as defined in Section 17042, a tax as calculated in paragraph (2).

(2) The tax imposed under paragraph (1) shall be calculated by multiplying the "taxable income of a nonresident or part-year resident," as defined in subdivision (i), by a rate (expressed as a percentage) equal to the tax computed under subdivision (a) on the entire taxable income of the nonresident or part-year resident as if the nonresident or part-year resident were a resident of this state for the taxable year and as if the nonresident or part-year resident were a resident of this state for all prior taxable years for any carryover items, deferred income, suspended losses, or suspended deductions, divided by the amount of that income.

(c) There shall be imposed for each taxable year upon the entire taxable income of every resident of this state who is not a part-year resident for that taxable year, when the resident is the head of a household, as defined in Section 17042, taxes in the following amounts and at the following rates upon the amount of taxable income computed for the taxable year as if the resident were a resident of the state for the entire taxable year and for all prior taxable years for carryover items, deferred income, suspended losses, or suspended deductions:

| If the taxable income is: | The tax is: |
| --- | --- |
| Not over $7,300 | 1% of the taxable income |
| Over $7,300 but notover $17,300 | $73 plus 2% of the excess over $7,300 |
| Over $17,300 but notover $22,300 | $273 plus 4% of the excess over $17,300 |
| Over $22,300 but notover $27,600 | $473 plus 6% of the excess over $22,300 |
| Over $27,600 but notover $32,600 | $791 plus 8% of the excess over $27,600 |
| Over $32,600 | $1,191 plus 9.3% of the excess over $32,600 |

(d)(1) There shall be imposed for each taxable year upon the taxable income of every nonresident or part-year resident when the nonresident or part-year resident is the head of a household, as defined in Section 17042, a tax as calculated in paragraph (2).

(2) The tax imposed under paragraph (1) shall be calculated by multiplying the "taxable income of a nonresident or part-year resident," as defined in subdivision (i), by a rate (expressed as a percentage) equal to the tax computed under subdivision (c) on the entire taxable income of the nonresident or part-year resident as if the nonresident or part-year resident were a resident of this state for the taxable year and as if the nonresident or part-year resident were a resident of this state for all prior taxable years for any carryover items, deferred income, suspended losses, or suspended deductions, divided by the amount of that income.

(e) There shall be imposed for each taxable year upon the taxable income of every estate, trust, or common trust fund taxes equal to the amount computed under subdivision (a) for an individual having the same amount of taxable income.

(f) The tax imposed by this part is not a surtax.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 202 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(g)(1) Section 1(g) of the Internal Revenue Code [6], relating to certain unearned income of minor children taxed as if the parent's income, shall apply, except as otherwise provided.

(2) Section 1(g)(7)(B)(ii)(II) of the Internal Revenue Code, relating to income included on parent's return, is modified, for purposes of this part, by substituting "1 percent" for "15 percent."

(h) For each taxable year beginning on or after January 1, 1988, the Franchise Tax Board shall recompute the income tax brackets prescribed in subdivisions (a) and (c). That computation shall be made as follows:

(1) The California Department of Industrial Relations shall transmit annually to the Franchise Tax Board the percentage change in the California Consumer Price Index for all items from June of the prior calendar year to June of the current calendar year, no later than August 1 of the current calendar year.

(2) The Franchise Tax Board shall do both of the following:

(A) Compute an inflation adjustment factor by adding 100 percent to the percentage change figure that is furnished pursuant to paragraph (1) and dividing the result by 100.

(B) Multiply the preceding taxable year income tax brackets by the inflation adjustment factor determined in subparagraph (A) and round off the resulting products to the nearest one dollar ($1).

(i)(1) For purposes of this part, the term "taxable income of a nonresident or part-year resident" includes each of the following:

(A) For any part of the taxable year during which the taxpayer was a resident of this state (as defined by Section 17014), all items of gross income and all deductions, regardless of source.

(B) For any part of the taxable year during which the taxpayer was not a resident of this state, gross income and deductions derived from sources within this state, determined in accordance with Article 9 of Chapter 3 (commencing with Section 17301) and Chapter 11 (commencing with Section 17951).

(2) For purposes of computing "taxable income of a nonresident or part-year resident" under paragraph (1), the amount of any net operating loss sustained in any taxable year during any part of which the taxpayer was not a resident of this state shall be limited to the sum of the following:

(A) The amount of the loss attributable to the part of the taxable year in which the taxpayer was a resident.

(B) The amount of the loss which, during the part of the taxable year the taxpayer is not a resident, is attributable to California source income and deductions allowable in arriving at taxable income of a nonresident or part-year resident.

(3) For purposes of computing "taxable income of a nonresident or part-year resident" under paragraph (1), any carryover items, deferred income, suspended losses, or suspended deductions shall only be includable or allowable to the extent that the carryover item, deferred income, suspended loss, or suspended deduction was derived from sources within this state, calculated as if the nonresident or part-year resident, for the portion of the year he or she was a nonresident, had been a nonresident for all prior years.

SEC. 184. Section 17052.6 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 17052.6 >>

17052.6. (a) For each taxable year beginning on or after January 1, 2000, there shall be allowed as a credit against the "net tax" (as defined in Section 17039) an amount determined in accordance with Section 21 of the Internal Revenue Code, as modified by the Economic Growth and Tax Relief Reconciliation Act of 2001 (P.L. 107–16), except that the amount of the credit shall be a percentage, as provided in subdivision (b), of the allowable federal credit without taking into account whether there is a federal tax liability.

(b) For the purposes of subdivision (a), the percentage of the allowable federal credit shall be determined as follows:

(1) For taxable years beginning before January 1, 2003:

| If the adjusted gross income is: | The percentage of credit is: |
| --- | --- |
| $40,000 or less.................................................................................... | 63% |
| Over $40,000 but not over $70,000............................................................. | 53% |
| Over $70,000 but not over $100,000........................................................... | 42% |

Over $100,000.................................................................................. 0%

(2) For taxable years beginning on or after January 1, 2003:

| If the adjusted gross income is: | The percentage of credit is: |
|---|---|
| $40,000 or less.................................................................... | 50% |
| Over $40,000 but not over $70,000............................................... | 43% |
| Over $70,000 but not over $100,000............................................. | 34% |
| Over $100,000.................................................................... | 0% |

(c) In the case of a taxpayer whose credits provided under this section exceed the taxpayer's tax liability computed under this part, the excess shall be credited against other amounts due, if any, from the taxpayer and the balance, if any, shall be paid from the Tax Relief and Refund Account and refunded to the taxpayer.

(d) For purposes of this section, adjusted gross income means adjusted gross income as computed for purposes of paragraph (2) of subdivision (h) of Section 17024.5.

(e) The credit authorized by this section shall be limited to employment-related expenses, within the meaning of Section 21 of the Internal Revenue Code [7], but only for child care services or care provided in this state and only to the extent of earned income (within the meaning of Section 21(d) of the Internal Revenue Code) from sources within this state.

(f) For purposes of this section, Section 21(b)(1) of the Internal Revenue Code, relating to a qualifying individual, is modified to additionally provide that a child (as defined in Section 151(c)(3) of the Internal Revenue Code) shall be treated, for purposes of Section 152 of the Internal Revenue Code (as applicable for purposes of this section), as receiving over one-half of his or her support during the calendar year from the parent having custody for a greater portion of the calendar year, that parent shall be treated as a "custodial parent" (within the meaning of Section 152(e) of the Internal Revenue Code, as applicable for purposes of this section), and the child shall be treated as a qualifying individual under Section 21(b)(1) of the Internal Revenue Code, as applicable for purposes of this section, if both of the following apply:

(1) The child receives over one-half of his or her support during the calendar year from his or her parents who never married each other and who lived apart at all times during the last six months of the calendar year.

(2) The child is in the custody of one or both of his or her parents for more than one-half of the calendar year.

(g) The amendments to this section made by * * * Chapter 757 of the Statutes of 2002 shall apply only to taxable years beginning on or after January 1, 2002.

SEC. 185. Section 18648 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 18648 >>

18648. (a) Section 6112 of the Internal Revenue Code, relating to organizers and sellers of potentially abusive tax shelters that must keep lists of investors, applies except as otherwise provided.

(b) Section 6112 of the Internal Revenue Code is modified by substituting the phrase "Secretary or the Franchise Tax Board" for the word "Secretary" each place it appears.

(c) The requirement to maintain lists under this section shall apply to any organizer, seller, or material advisor of a potentially abusive tax shelter (within the meaning of Section 6112 of the Internal Revenue Code, as modified by this section) that additionally satisfies any of the following conditions:

(1) Organized in this state.

(2) Doing business in this state.

(3) Deriving income from sources in this state.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 204 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(4) At least one of its investors is a California taxpayer.

(d)(1) Notwithstanding any regulation issued under Section 6112 of the Internal Revenue Code, the list required to be maintained by this section for listed transactions, as defined in subdivision (a) of Section 18407, shall be maintained in the form and manner prescribed by the Franchise Tax Board.

(2) Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code does not apply to any requirement prescribed by the Franchise Tax Board under this section.

(3) For transactions entered into on or after February 28, 2000, that become listed transactions (as defined under Section 6011(a) of the Internal Revenue Code) at any time, the lists shall be provided to the Franchise Tax Board by the later of:

(A) Sixty days after entering into the transaction.

(B) Sixty days after the transaction becomes a listed transaction.

(C) April 30, 2004.

(4) For transactions entered into on or after September 2, 2003, that are specifically identified by the Franchise Tax Board for California income or franchise tax purposes (under the authority of paragraph (4) of subdivision (a) of Section 18407) as a "listed transaction" at any time, the list shall be provided to the Franchise Tax Board by the later of:

(A) Sixty days after entering into the transaction.

(B) Sixty days after the transaction becomes a listed transaction.

(C) April 30, 2004.

(e) The terms "organizer," "seller," and "material advisor" mean a person that meets any of the requirements of this section or of Section 6112 of the Internal Revenue Code or regulations issued thereunder.

SEC. 186. Section 18706 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 18706 >>

18706. There is in the State Treasury the California Military Family Relief Fund to receive contributions made pursuant to Section 18705. The Franchise Tax Board shall notify the Controller of both the amount of money paid by taxpayers in excess of their tax liability and the amount of refund money that taxpayers have designated pursuant to Section 18705 to be transferred to the California Military Family Relief Fund. The Controller shall transfer from the Personal Income Tax Fund to the California Military Family Relief Fund an amount not in excess of the sum of the amounts designated by individuals pursuant to Section 18705 for payment into that fund. The California Military Family Relief Fund shall also accept contributions from sources other than the tax form, at any time.

SEC. 187. Section 19164 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 19164 >>

19164. (a)(1)(A) An accuracy-related penalty shall be imposed under this part and shall be determined in accordance with Section 6662 of the Internal Revenue Code, relating to imposition of accuracy-related penalty, except as otherwise provided.

(B)(i) Except for understatements relating to tax shelter items to which paragraph (5) applies, in the case of any proposed deficiency assessment issued after the last date of the amnesty period specified in Chapter 9.1 (commencing with Section 19730) for any taxable year beginning prior to January 1, 2003, the penalty specified in Section 6662(a) of the Internal Revenue Code shall be computed by substituting "40 percent" for "20 percent."

(ii) Clause (i) shall not apply to any taxable year of a taxpayer beginning prior to January 1, 2003, if, as of the start date of the amnesty program period specified in Section 19731, the taxpayer is then under audit by the Franchise Tax Board, or the taxpayer has filed a protest under Section 19041, or the taxpayer has filed an appeal under Section 19045, or the taxpayer is engaged in settlement negotiations under Section 19442, or the taxpayer has a pending judicial proceeding in any court of this state or in any federal court relating to the tax liability of the taxpayer for that taxable year.

(2) With respect to corporations, this subdivision shall apply to all of the following:

(A) All taxable years beginning on or after January 1, 1990.

(B) Any other taxable year for which an assessment is made after July 16, 1991.

(C) For purposes of this section, references in Section 6662(e) of the Internal Revenue Code and the regulations thereunder, relating to treatment of an affiliated group that files a consolidated federal return, are modified to apply to those entities required

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 205 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

to be included in a combined report under Section 25101 or 25110. For these purposes, entities included in a combined report pursuant to paragraph (4) or (6) of subdivision (a) of Section 25110 shall be considered only to the extent required to be included in the combined report.

(3) Section 6662(d)(1)(B) of the Internal Revenue Code is modified to provide that in the case of a corporation, other than an "S" corporation, that has been contacted by the Franchise Tax Board regarding the use of a potentially abusive tax shelter (within the meaning of Section 19777), there is a substantial understatement of tax for any taxable year if the amount of the understatement for the taxable year exceeds the lesser of:

(A) Ten percent of the tax required to be shown on the return for the taxable year (or, if greater, two thousand five hundred dollars ($2,500)).

(B) Five million dollars ($5,000,000).

(4) Section 6662(d)(2)(A) of the Internal Revenue Code is modified to additionally provide that the excess determined under Section 6662(d)(2)(A) of the Internal Revenue Code shall be determined without regard to items to which Section 19773 applies and without regard to items with respect to which a penalty is imposed by Section 19774.

(5) For taxpayers that have been contacted by the Franchise Tax Board regarding the use of a potentially abusive tax shelter (within the meaning of Section 19777), Section 6662(d)(2)(B)(i) of the Internal Revenue Code is modified to substitute the phrase "the tax treatment of any item by the taxpayer if the taxpayer had reasonable belief that the tax treatment was more likely than not the proper treatment" for the phrase "the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment" contained therein.

(b) For purposes of Section 6662(d) of the Internal Revenue Code, Section 6664 of the Internal Revenue Code (as modified by subdivision (d)), Section 6694(a)(1) of the Internal Revenue Code, and this part, the Franchise Tax Board may prescribe a list of positions for which the Franchise Tax Board believes there is not substantial authority or there is no reasonable belief that the tax treatment is more likely than not the proper tax treatment. That list (and any revisions thereof) shall be published through the use of Franchise Tax Board Notices or other published positions. In addition, the "listed transactions" identified and published pursuant to the preceding sentence shall be published on the Web site of the Franchise Tax Board. This subdivision applies only to a list of positions relating to abusive tax shelters, within the meaning of Section 19777.

(c) A fraud penalty shall be imposed under this part and shall be determined in accordance with Section 6663 of the Internal Revenue Code, relating to imposition of fraud penalty, except as otherwise provided.

(d) Section 6664 of the Internal Revenue Code, relating to definitions and special rules, shall apply, except as otherwise provided.

(1) For taxpayers that have been contacted by the Franchise Tax Board regarding the use of a potentially abusive tax shelter (within the meaning of Section 19777), Section 6664 of the Internal Revenue Code is modified to additionally provide that no penalty shall be imposed under Section 19773 with respect to any portion of a reportable transaction understatement if it is shown that there was a reasonable cause for that portion and that the taxpayer acted in good faith with respect to that portion.

(2) Paragraph (1) does not apply to any reportable transaction understatement unless all of the following requirements are met:

(A)(i) The relevant facts affecting the tax treatment of the item are adequately disclosed in accordance with the regulations prescribed under Section 6011 of the Internal Revenue Code, as modified by Section 18407.

(ii) A taxpayer failing to adequately disclose in accordance with Section 6011 of the Internal Revenue Code, as modified by Section 18407, shall be treated as meeting the requirements of this subparagraph, if the penalty for that failure was rescinded under subdivision (e) of Section 19772.

(iii) For taxable years beginning on or before January 1, 2003, "adequately disclosed" includes the disclosure of the tax shelter identification number on the taxpayer's return, as required by subdivision (c) of Section 18628.

(B) There is or was substantial authority for that treatment.

(C) The taxpayer reasonably believed that treatment was more likely than not the proper treatment.

(3) For purposes of subparagraph (C) of paragraph (2) all of the following shall apply:

(A) A taxpayer shall be treated as having a reasonable belief with respect to the tax treatment of an item only if that belief meets both of the following requirements:

(i) Is based on the facts and law that exist at the time the return of tax that includes that tax treatment is filed.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 206 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(ii) Relates solely to the taxpayer's chances of success on the merits of that treatment and does not take into account the possibility that the return will not be audited, that the treatment will not be raised on audit, or that the treatment will be resolved through settlement if it is raised.

(B)(i) An opinion of a tax advisor may not be relied upon to establish the reasonable belief of a taxpayer if either of the following conditions are met:

(I) The tax advisor is described in clause (ii).

(II) The opinion is described in clause (iii).

(ii) A tax advisor is described in this clause if the tax advisor meets any of the following conditions:

(I) Is a material advisor (within the meaning of subdivision (d) of Section 18648) who participates in the organization, management, promotion, or sale of the transaction or who is related (within the meaning of Section 267(b) or 707(b)(1) of the Internal Revenue Code) to any person who so participates.

(II) Is compensated directly or indirectly by a material advisor with respect to the transaction.

(III) Has a fee arrangement with respect to the transaction that is contingent on all or part of the intended tax benefits from the transaction being sustained.

(IV) As determined under regulations prescribed by either the Secretary of the Treasury for federal income tax purposes or the Franchise Tax Board, has a continuing financial interest with respect to the transaction.

(iii) For purposes of clause (i), an opinion is disqualified if the opinion meets any of the following conditions:

(I) Is based on unreasonable, factual, or legal assumptions (including assumptions as to future events).

(II) Unreasonably relies on representations, statements, findings, or agreements of the taxpayer or any other person.

(III) Does not identify and consider all relevant facts.

(IV) Fails to meet any other requirement as either the Secretary of the Treasury for federal income tax purposes or the Franchise Tax Board may by forms and instructions prescribe.

(e) Section 6665 of the Internal Revenue Code, relating to applicable rules, shall apply, except as otherwise provided.

(f) For taxpayers that have been contacted by the Franchise Tax Board regarding the use of a potentially abusive tax shelter (within the meaning of Section 19777), Section 461(i)(3)(C) of the Internal Revenue Code is modified by substituting a reference to "Section 1274(b)(3)(B) of the Internal Revenue Code, as modified by subdivision (g) of Section 19164" instead of the reference to "Section 6662(d)(2)(C)(iii)" contained therein.

(g) For taxpayers that have been contacted by the Franchise Tax Board regarding the use of a potentially abusive tax shelter (within the meaning of Section 19777), Section 1274(b)(3)(B)(i) of the Internal Revenue Code is modified to provide that for purposes of Section 1274(b)(3)(B) of the Internal Revenue Code, the term "tax shelter" means (1) a partnership or other entity, (2) any investment plan or arrangement, or (3) any other plan or arrangement, if a significant purpose of the partnership, entity, plan, or arrangement is the avoidance or evasion of federal income tax or the tax imposed under Part 10 (commencing with Section 17001) or Part 11 (commencing with Section 23001).

SEC. 188. Section 20583 of the Revenue and Taxation Code is amended to read:

<< CA REV & TAX § 20583 >>

20583. (a) "Residential dwelling" means a dwelling occupied as the principal place of residence of the claimant, and so much of the land surrounding it as is reasonably necessary for use of the dwelling as a home, owned by the claimant, the claimant and spouse, or by the claimant and either another individual eligible for postponement under this chapter or an individual described in subdivision (a), (b), or (c) of Section 20511 and located in this state. It shall include condominiums and mobilehomes that are assessed as realty for local property tax purposes. It also includes part of a multidwelling or multipurpose building and a part of the land upon which it is built. In the case of a mobilehome not assessed as real property that is located on land owned by the claimant, "residential * * * dwelling" includes the land on which the mobilehome is situated and so much of the land surrounding it as reasonably necessary for use of the mobilehome as a home.

(b) As used in this chapter in reference to ownership interests in residential dwellings, "owned" includes (1) the interest of a vendee in possession under a land sale contract provided that the contract or memorandum thereof is recorded and only from the date of recordation of the contract or memorandum thereof in the office of the county recorder where the residential dwelling is located, (2) the interest of the holder of a life estate provided that the instrument creating the life estate is recorded and only from the date of recordation of the instrument creating the life estate in the office of the county recorder where the

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 207 of 697

residential dwelling is located, but "owned" does not include the interest of the holder of any remainder interest or the holder of a reversionary interest in the residential dwelling, (3) the interest of a joint tenant or a tenant in common in the residential dwelling or the interest of a tenant where title is held in tenancy by the entirety or a community property interest where title is held as community property, and (4) the interest in the residential dwelling in which the title is held in trust, as described in subdivision (d) of Section 62, provided that the Controller determines that the state's interest is adequately protected.

(c) For purposes of this chapter, the registered owner of a mobilehome shall be deemed to be the owner of the mobilehome.

(d) Except as provided in subdivision (c), and Chapter 3 (commencing with Section 20625), ownership must be evidenced by an instrument duly recorded in the office of the county where the residential dwelling is located.

(e) "Residential dwelling" does not include any of the following:

(1) Any residential dwelling in which the owners do not have an equity of at least 20 percent of the full value of the property as determined for purposes of property taxation or at least 20 percent of the fair market value as determined by the Controller and where the Controller determines that the state's interest is adequately protected. The 20–percent equity requirement shall be met at the time the claimant or authorized agent files an initial postponement claim and tenders to the tax collector the initial certificate of eligibility described in Sections 20602, 20639.6, and 20640.6.

(2) Any residential dwelling in which the claimant's interest is held pursuant to a contract of sale or under a life estate, unless the claimant obtains the written consent of the vendor under the contract of sale, or the holder of the reversionary interest upon termination of the life estate, for the postponement of taxes and the creation of a lien on the real property in favor of the state for amounts postponed pursuant to this act.

(3) Any residential dwelling on which the claimant does not receive a secured tax bill.

(4) Any residential dwelling in which the claimant's interest is held as a possessory interest, except as provided in Chapter 3.5 (commencing with Section 20640).

(5)(A) Except as provided in this section, any residential dwelling on which the property taxes, as defined in Section 20584, are delinquent at the time the application for postponement under this chapter is made or on which any other property tax or special assessment imposed by a special district or other tax code area is delinquent at the time the application for postponement under this chapter is made.

(B) Any taxes or assessments described in subparagraph (A) that are delinquent on July 1, 1977, will not disqualify an otherwise eligible dwelling for postponement under this chapter. An application for postponement under this chapter to postpone the payment of property taxes for the 1977–78 fiscal year, shall also constitute an application for the postponement of all those delinquent taxes and assessments, together with any penalties, interest, fees, or other charges resulting from that delinquency and those amounts shall, unless otherwise paid by the claimant, be paid out of the amount appropriated by Section 16100 of the Government Code and shall be added to and become part of the obligation secured by the lien provided by Section 16182 of the Government Code; provided, however, that upon payment of delinquent taxes and assessments for * * * the 1976–77 fiscal year out of the amount appropriated by Section 16100, any delinquent penalties, interest, fees or other charges resulting from the delinquency of those taxes and assessments for * * * the 1976–77 fiscal year shall be canceled.

(C) For the 1978–79 fiscal year and each fiscal year thereafter, any taxes or assessments described in subparagraph (A) that became delinquent after the claimant was 62 and before the claimant first has established a lien pursuant to Section 16182 of the Government Code will not disqualify an otherwise eligible dwelling for postponement under this chapter. An application to postpone taxes for the 1978–79 * * * fiscal year or for any fiscal year thereafter shall also constitute an application for the postponement of all delinquent taxes and assessments, together with any penalties, interest, fees, or other charges resulting from the delinquency and those amounts shall, unless otherwise paid by the claimant, be paid out of the amount appropriated by Section 16100 of the Government Code and shall be added to and become part of the obligation secured by the lien provided by Section 16182 of the Government Code.

(6) All taxes or assessments described in subparagraph (A) of paragraph (5) that are delinquent on the date this bill takes effect will not disqualify an otherwise eligible blind or disabled applicant's dwelling from postponement under this chapter. A blind or disabled citizen's application for postponement of property taxes will not constitute an application for the postponement of any delinquent taxes and assessments, or any penalties, interest, fees or other charges resulting from delinquency. Delinquent taxes of blind or disabled applicants are not subject to postponement under this chapter.

SEC. 189. Section 527 of the Streets and Highways Code is amended to read:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 208 of 697

<< CA STR & HWY § 527 >>

527. (a) Route 227 is from Route 1 south of Oceano to Route 101 in San Luis Obispo.

(b)(1) Notwithstanding subdivision (a), the commission may relinquish to the City of Arroyo Grande the portion of Route 227 that is located within the city limits of that city, upon terms and conditions the commission finds to be in the best interests of the state, including, but not limited to, a condition that the City of Arroyo Grande maintain within its jurisdiction signs directing motorists to the continuation of Route 227.

(2) A relinquishment under this subdivision shall become effective immediately following the recording by the county recorder of the relinquishment resolution containing the commission's approval of the terms and conditions of the relinquishment.

(3) On and after the effective date of the relinquishment, both of the following shall occur:

(A) The portion of Route 227 relinquished under this subdivision shall cease to be a state highway.

(B) The portion of Route 227 relinquished under this subdivision may not be considered for future adoption under Section 81.

(c)(1) Notwithstanding subdivision (a), the commission may relinquish to the City of San Luis Obispo the portion of Route 227 that is located within the city limits of that city, upon terms and conditions the commission finds to be in the best interests of the state, including, but not limited to, a condition that the City of San Luis Obispo maintain within its jurisdiction signs directing motorists to the continuation of Route 227.

(2) A relinquishment under this subdivision shall become effective immediately following the recording by the county recorder of the relinquishment resolution containing the commission's approval of the terms and conditions of the relinquishment.

(3) On and after the effective date of the relinquishment, both of the following shall occur:

(A) The portion of Route 227 relinquished under this subdivision shall cease to be a state highway.

(B) The portion of Route 227 relinquished under this subdivision may not be considered for future adoption under Section 81.

(4) For the portions of Route 227 that are relinquished, the City of San Luis Obispo shall maintain within its jurisdiction signs directing motorists to the continuation of Route 227.

SEC. 190. Section 36705 of the Streets and Highways Code is amended to read:

<< CA STR & HWY § 36705 >>

36705. As used in this part:

(a) "Activities" means, but is not limited to, all of the following:

(1) Providing security services supplemental to those normally provided by the city.

(2) Maintaining, including irrigating, landscaping.

(3) Providing sanitation, graffiti removal, street and sidewalk cleaning, and other public services supplemental to those normally provided by the city.

(4) Marketing, advertising, and promoting economic development, including the retention and recruitment of businesses and tenants.

(5) Providing managerial services for multifamily residential businesses.

(6) Providing building inspection and code enforcement services for multifamily residential businesses supplemental to those normally provided by the city.

(b) "Assessment" means a levy for the purpose of acquiring, constructing, installing, or maintaining improvements and promoting activities which will benefit the properties or businesses located within a multifamily improvement district.

(c) "Business" means all types of businesses, including, but not limited to, the operation of multifamily residential properties, retail stores, commercial properties, financial institutions, and professional offices.

(d) "City" means a city, county, city and county, or an agency or entity created pursuant to the Joint Exercise of Powers Act, Article 1 (commencing with Section 6500) of Chapter 5 of Division 7 of Title 1 of the Government Code, the public member agencies of which includes only cities, counties, or a city and county.

(e) "City council" means the city council of a city or the board of supervisors of a county, or the agency, commission, or board created pursuant to a joint powers agreement and which is a city within the meaning of this part.

(f) "Improvement" means the acquisition, construction, installation, or maintenance of any tangible property with an estimated useful life of five years or more, including, but not limited to:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 209 of 697

(1) Parking facilities.

(2) Benches, booths, kiosks, display cases, pedestrian shelters, signs, and entry monuments.

(3) Trash receptacles.

(4) Street lighting.

(5) Street decorations.

(6) Parks.

(7) Fountains.

(8) Planting areas.

(9) Closing, opening, widening, or narrowing of existing streets.

(10) Facilities or equipment, or both, to enhance the security of persons and property within the district.

(11) Ramps, sidewalks, plazas, and pedestrian malls.

(12) Rehabilitation or removal of existing structures.

(g) "Management district plan" or "plan" means a proposal as described in Section 36713.

(h) "Multifamily improvement district," or "district," means a multifamily improvement district established pursuant to this part.

(i) "Owners' association" means a private nonprofit entity that is under contract with a city to administer or implement activities and improvements specified in the management district plan. An owners' association may be an existing nonprofit entity or a newly formed nonprofit entity. An owners' association is a private entity and may not be considered a public entity for any purpose, nor may its board members or staff be considered to be public officials for any purpose.

(j) "Property" means real property situated within a multifamily improvement district.

(k) "Property owner" or "owner" means any person shown as the owner of land on the last equalized assessment roll or otherwise known to be the owner of land by the city council. The city council has no obligation to obtain other information as to the ownership of land, and its determination of ownership shall be final and conclusive for the purposes of this part. Wherever this subdivision requires the signature of the property owner, the signature of the authorized agent of the property owner shall be sufficient.

(l) "Tenant" means an occupant pursuant to a lease or a rental agreement of commercial space or a dwelling unit, other than an owner.

SEC. 191. Section 36733 of the Streets and Highways Code is amended to read:

## << CA STR & HWY § 36733 >>

36733. The city council may execute baseline service contracts that would establish levels of city services that would continue after a district has been formed.

SEC. 192. Section 36737 of the Streets and Highways Code is amended to read:

## << CA STR & HWY § 36737 >>

36737. (a) The city council may, by resolution, determine and declare that bonds shall be issued to finance the estimated cost of some or all of the proposed improvements described in the resolution of formation adopted pursuant to Section 36716, if the resolution of formation adopted pursuant to that section provides for the issuance of bonds, under the Improvement Bond Act of 1915 (Division 10 (commencing with Section 8500)) or in conjunction with Marks–Roos Local Bond Pooling Act of 1985 (Article 4 (commencing with Section 6584) of Chapter 5 of Division 7 of Title 1 of the Government Code). Either act, as the case may be, shall govern the proceedings relating to the issuance of bonds, although proceedings under the Improvement Bond Act of 1915 may be modified by the city council as necessary to accommodate assessments levied upon business pursuant to this part.

(b) The resolution adopted pursuant to subdivision (a) shall generally describe the proposed improvements specified in the resolution of formation adopted pursuant to Section 36716, set forth the estimated cost of those improvements, specify the number of annual installments and the fiscal years during which they are to be collected. The amount of debt service to retire the bonds shall not exceed the amount of revenue estimated to be raised from assessments over 20 years.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 210 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(c) Notwithstanding any other provision of this part, assessments levied to pay the principal and interest on any bond issued pursuant to this section shall not be reduced or terminated if doing so would interfere with the timely retirement of the debt.

SEC. 193. Section 1052 of the Unemployment Insurance Code is amended to read:

<< CA UNEMP INS § 1052 >>

1052. Upon receipt of the application the separate account, actual contribution and benefit experience and payrolls of the predecessor or that part thereof, as determined by authorized regulations, which pertains to the organization, trade, or business, or portion thereof acquired, shall be transferred to the successor employer for the purpose of determining its rate of contribution after the acquisition with the same effect for that purpose as if the operations of the predecessor had at all times been carried on by the successor. The separate account shall be transferred by the director to the successor employer and, as of the date of the acquisition, shall become the separate account or part of the separate account, as the case may be, of the successor employer, and the benefits thereafter chargeable to the predecessor employer on account of employment relating to the transferred organization, trade, or business or transferred portion thereof prior to the date of the acquisition shall be charged to the separate account. This section shall not apply to any acquisition which is determined by the director to have been made for the purpose of obtaining a more favorable rate of contributions under Section 977.

SEC. 194. Section 4000.1 of the Vehicle Code, as amended by Section 3 of Chapter 704 of the Statutes of 2004, is amended to read:

<< CA VEHICLE § 4000.1 >>

4000.1. (a) Except as otherwise provided in subdivision (b), (c), or (d) of this section, or subdivision (b) of Section 43654 of the Health and Safety Code, the department shall require upon initial registration, and upon transfer of ownership and registration, of any motor vehicle subject to Part 5 (commencing with Section 43000) of Division 26 of the Health and Safety Code, a valid certificate of compliance or a certificate of noncompliance, as appropriate, issued in accordance with Section 44015 of the Health and Safety Code.

(b) With respect to new motor vehicles certified pursuant to Chapter 2 (commencing with Section 43100) of Part 5 of Division 26 of the Health and Safety Code, the department shall accept a statement completed pursuant to subdivision (b) of Section 24007 in lieu of the certificate of compliance.

(c) For purposes of determining the validity of a certificate of compliance or noncompliance submitted in compliance with the requirements of this section, the definitions of new and used motor vehicle contained in Chapter 2 (commencing with Section 39010) of Part 1 of Division 26 of the Health and Safety Code shall control.

(d) Subdivision (a) does not apply to a transfer of ownership and registration under any of the following circumstances:

(1) The initial application for transfer is submitted within the 90–day validity period of a smog certificate as specified in Section 44015 of the Health and Safety Code.

(2) The transferor is the parent, grandparent, sibling, child, grandchild, or spouse of the transferee.

(3) A motor vehicle registered to a sole proprietorship is transferred to the proprietor as owner.

(4) The transfer is between companies the principal business of which is leasing motor vehicles, if there is no change in the lessee or operator of the motor vehicle or between the lessor and the person who has been, for at least one year, the lessee's operator of the motor vehicle.

(5) The transfer is between the lessor and lessee of the motor vehicle, if there is no change in the lessee or operator of the motor vehicle.

(6) The motor vehicle was manufactured prior to the 1976 model-year.

(7) Beginning January 1, 2005, the transfer is for a motor vehicle that is four or less model-years old. The department shall impose a fee of eight dollars ($8) on the transferee of a motor vehicle that is four or less model-years old. Revenues generated from the imposition of that fee shall be deposited into the Vehicle Inspection and Repair Fund.

(e) The State Air Resources Board, under Part 5 (commencing with Section 43000) of Division 26 of the Health and Safety Code, may exempt designated classifications of motor vehicles from subdivision (a) as it deems necessary, and shall notify the department of that action.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 211 of 697

(f) Subdivision (a) does not apply to a motor vehicle when an additional individual is added as a registered owner of the motor vehicle.

(g) For purposes of subdivision (a), any collector motor vehicle, as defined in Section 259, is exempt from those portions of the test required by subdivision (f) of Section 44012 of the Health and Safety Code, if the collector motor vehicle meets all of the following criteria:

(1) Submission of proof that the motor vehicle is insured as a collector motor vehicle, as shall be required by regulation of the bureau.

(2) The motor vehicle is at least 35 model-years old.

(3) The motor vehicle complies with the exhaust emissions standards for that motor vehicle's class and model year as prescribed by the department, and the motor vehicle passes a functional inspection of the fuel cap and a visual inspection for liquid fuel leaks.

  SEC. 195. Section 4466 of the Vehicle Code, as amended by Section 1 of Chapter 430 of the Statutes of 2004, is amended to read:

<< CA VEHICLE § 4466 >>

4466. (a) The department shall not issue a duplicate or substitute certificate of title or license plate if, after a search of the records of the department, the registered owner's address, as submitted on the application, is different from that which appears in the records of the department, unless the registered owner applies in person and presents all of the following:

(1) Proof of ownership of the vehicle that is acceptable to the department. Proof of ownership may be the certificate of title, registration certificate, or registration renewal notice, or a facsimile of any of those documents, if the facsimile matches the vehicle record of the department.

(2) A driver's license or identification card containing a picture of the licensee or cardholder issued to the registered owner by the department pursuant to Chapter 1 (commencing with Section 12500) of Division 6. The department shall conduct a search of its records to verify the authenticity of any document submitted under this paragraph.

(A) If the registered owner is a resident of another state or country, the registered owner shall present a driver's license or identification card issued by that state or country. In addition, the registered owner shall provide photo documentation in the form of a valid passport, military identification card, identification card issued by a state or United States government agency, student identification card issued by a college or university, or identification card issued by a California-based employer. If a resident of another state is unable to present the required photo identification, the department shall verify the authenticity of the driver's license or identification card by contacting the state that issued the driver's license or identification card.

(B) If the registered owner is not an individual, the person submitting the application shall submit the photo identification required under this paragraph, as well as documentation acceptable to the department that demonstrates that the person is employed by an officer of the registered owner.

(3) If the application is for the purpose of replacing a license plate that was stolen, a copy of a police report identifying the plate as stolen.

(4) If the application is for the purpose of replacing a certificate of title or license plate that was mutilated or destroyed, the remnants of the mutilated or destroyed document or plate.

(5) If the department has a record of a prior issuance of a duplicate or substitute certificate of title or license plate for the vehicle within the past 90 days, a copy of a report from the Department of the California Highway Patrol verifying the vehicle identification number of the vehicle.

(b) Subdivision (a) does not apply if either of the following apply:

(1) The registered owner's name, address, and driver's license or identification card number submitted on the application match the name, address, and driver's license or identification card number contained in the department's records.

(2) An application for a duplicate or substitute certificate of title or license plate is submitted by or through one of the following:

(A) A legal owner, if the legal owner is not the same person as the registered owner or as the lessee under Section 4453.5.

(B) A dealer or an agent of the dealer.

(C) A dismantler.

(D) An insurer or an agent of the insurer.

(E) A salvage pool.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 212 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(c) At the discretion of the department, the requirements of subdivision (a) shall not apply in any of the following circumstances:

(1) An application for a duplicate or substitute certificate of title or license plate is submitted by a licensed registration service representing any of the following:

(A) A person, including, but not limited to, a person listed in subparagraphs (A) to (E), inclusive, of paragraph (2) of subdivision (b).

(B) A business entity recognized under the laws of this state or the laws of any foreign or domestic jurisdiction whose laws are in parity with the laws of this state.

(C) A court-appointed bankruptcy referee.

(D) A person who is an individual, is not included in subparagraphs (A) to (C), inclusive, and submits to the licensed registration service an application with a signature that is validated by a notary public. The licensed registration service shall maintain full and complete records of its transactions conducted pursuant to this subparagraph and shall make those records available for inspection by an investigator of the Department of Motor Vehicles, investigator of the Department of the California Highway Patrol, a city police department, a county sheriff's office, or a district attorney's office, if the investigator requests access to the record and the request is for the purpose of a criminal investigation.

(2) The vehicle is registered under the International Registration Plan pursuant to Section 8052 or under the Permanent Fleet Registration program pursuant to Article 9.5 (commencing with Section 5301) of Chapter 1.

(3) The vehicle is an implement of husbandry, as defined in Section 36000, or a tow dolly, or has been issued an identification plate under Section 5014 or 5014.1.

(d) The department shall issue one or more license plates only to the registered owner or lessee. The department shall issue the certificate of title only to the legal owner, or if none, then to the registered owner, as shown on the department's records.

(e) This section shall remain in effect only until January 1, 2008, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 2008, deletes or extends that date.

SEC. 196. Section 5205.5 of the Vehicle Code is amended to read:

<< CA VEHICLE § 5205.5 >>

5205.5. (a) For the purposes of implementing Section 21655.9, the department shall make available for issuance, for a fee determined by the department to be sufficient to reimburse the department for the actual costs incurred pursuant to this section, distinctive decals, labels, and other identifiers that clearly distinguish the following vehicles from other vehicles:

(1) A vehicle that meets California's super ultra-low emission vehicle (SULEV) standard for exhaust emissions and the federal inherently low-emission vehicle (ILEV) evaporative emission standard, as defined in Part 88 (commencing with Section 88.101–94) of Title 40 of the Code of Federal Regulations.

(2) A vehicle that was produced during the 2004 model year or earlier and meets California ultra-low emission vehicle (ULEV) standard for exhaust emissions and the federal ILEV standard.

(3) A hybrid vehicle or an alternative fuel vehicle that meets California's advanced technology partial zero-emission vehicle (AT PZEV) standard for criteria pollutant emissions and has a 45 miles per gallon or greater fuel economy highway rating.

(4) A hybrid vehicle that was produced during the 2004 model year or earlier and has a 45 miles per gallon or greater fuel economy highway rating, and meets California's ultra-low emission vehicle (ULEV), super ultra-low emission vehicle (SULEV), or partial zero-emission vehicle (PZEV) standards.

(b) Neither an owner of a hybrid vehicle that meets the AT PZEV standard, with the exception of a vehicle that meets the federal ILEV standard, nor an owner of a hybrid vehicle described in paragraph (4) of subdivision (a), is entitled to a decal, label, or other identifier pursuant to this section unless, and until, the federal government acts to approve the use of high-occupancy vehicle lanes by vehicles of the types identified in paragraph (3) or (4) of subdivision (a), regardless of the number of occupants.

(c) The department shall include a summary of the provisions of this section on each motor vehicle registration renewal notice, or on a separate insert, if space is available and the summary can be included without incurring additional printing or postage costs.

(d) The Department of Transportation shall remove individual high-occupancy vehicle (HOV) lanes, or portions of those lanes, during periods of peak congestion from the access provisions provided in subdivision (a), following a finding by the Department of Transportation as follows:

Case 3:17-cv-07357-RS    Document 163-3    Filed 01/21/21    Page 213 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(1) The lane, or portion thereof, exceeds a level of service C, as discussed in subdivision (b) of Section 65089 of the Government Code.

(2) The operation or projected operation of the vehicles described in subdivision (a) in these lanes, or portions thereof, will significantly increase congestion.

The finding also shall demonstrate the infeasibility of alleviating the congestion by other means, including, but not limited to, reducing the use of the lane by noneligible vehicles, or further increasing vehicle occupancy.

(e) The State Air Resources Board shall publish and maintain a listing of all vehicles eligible for participation in the programs described in this section. The board shall provide that listing to the department.

(f) For purposes of subdivision (a), the Department of the California Highway Patrol and the department, in consultation with the Department of Transportation, shall design and specify the placement of the decal, label, or other identifier on the vehicle. Each decal, label, or other identifier issued for a vehicle shall display a unique number, which number shall be printed on, or affixed to, the vehicle registration.

(g)(1) For purposes of subdivision (a), the department shall issue no more than 75,000 distinctive decals, labels, or other identifiers that clearly distinguish the vehicles specified in paragraphs (3) and (4) of subdivision (a).

(2) The department shall notify the Department of Transportation immediately after the date on which the department has issued 50,000 decals, labels, and other identifiers under this section for the vehicles described in paragraphs (3) and (4) of subdivision (a).

(3) The Department of Transportation shall determine whether significant high-occupancy vehicle lane breakdown has occurred throughout the state, in accordance with the following timeline:

(A) For lanes that are nearing capacity, the Department of Transportation shall make the determination not later than 90 days after the date provided by the department under paragraph (2).

(B) For lanes that are not nearing capacity, the Department of Transportation shall make the determination not later than 180 days after the date provided by the department under paragraph (2).

(4) In making the determination that significant high-occupancy vehicle lane breakdown has occurred, the Department of Transportation shall consider the following factors in the HOV lane:

(A) Reduction in level of service.

(B) Sustained stop-and-go conditions.

(C) Slower than average speed than the adjacent mixed flow lanes.

(D) Consistent increase in travel time.

(5) After making the determinations pursuant to subparagraphs (A) and (B) of paragraph (3), if the Department of Transportation determines that significant high-occupancy vehicle lane breakdown has occurred throughout the state, the Department of Transportation shall immediately notify the department of that determination, and the department, on the date of receiving that notification, shall discontinue issuing the decals, labels, or other identifiers for the vehicles described in paragraphs (3) and (4) of subdivision (a).

(h) If the Metropolitan Transportation Commission, serving as the Bay Area Toll Authority, grants toll-free and reduced-rate passage on toll bridges under its jurisdiction to any vehicle pursuant to Section 30102.5 of the Streets and Highways Code, it shall also grant the same toll-free and reduced-rate passage to a vehicle displaying an identifier issued by the department pursuant to paragraph (1) or (2) of subdivision (a) and to a vehicle displaying a valid identifier issued by the department pursuant to paragraph (3) or (4) of subdivision (a) if either of the following apply:

(1) The vehicle is registered to an address outside of the region identified in Section 66502 of the Government Code.

(2) If the vehicle is registered to an address inside the region, the owner of the vehicle complies with subdivision (i) unless subdivision (j) is applicable.

(i) An owner of a vehicle specified in paragraph (3) or (4) of subdivision (a) whose vehicle is registered to an address in the region identified in Section 66502 of the Government Code and who seeks a vehicle identifier under subdivision (a) shall obtain an account to operate within the automatic vehicle identification system described in Section 27565 of the Streets and Highways Code and shall submit to the department a form, approved by the department and issued by the Bay Area Toll Authority, that contains the vehicle owner's name, the license plate number and vehicle identification number of the vehicle, the vehicle make and year model, and the automatic vehicle identification system account number, as a condition to obtaining a vehicle identifier

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 214 of 697

pursuant to subdivision (a) that allows for the use of that vehicle in high-occupancy vehicle lanes regardless of the number of occupants.

(j) If the automatic vehicle identification system readers on all high-occupancy vehicle lanes on all of the toll bridges identified in subdivision (a) of Section 30910 of the Streets and Highways Code are not fully operational and fully funded with bridge tolls controlled by the Bay Area Toll Authority within 90 days of the federal government approval described in subdivision (b), then subdivision (i) shall not be applicable and both of the following shall apply:

(1) The Metropolitan Transportation Commission, acting as the Bay Area Toll Authority, shall grant toll-free and reduced-rate passage to all vehicles displaying an identifier issued by the department pursuant to subdivision (a).

(2) The department shall not require documentation that the owner of a vehicle registered to an address in the region identified in Section 66502 of the Government Code has obtained an automatic vehicle identification system account as a condition to the issuance of an identifier under subdivision (a).

(k) This section shall remain in effect only until January 1, 2008, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2008, deletes or extends that date.

SEC. 197. Section 9400.1 of the Vehicle Code is amended to read:

## << CA VEHICLE § 9400.1 >>

9400.1. (a)(1) In addition to any other required fee, there shall be paid the fees set forth in this section for the registration of commercial motor vehicles operated either singly or in combination with a declared gross vehicle weight of 10,001 pounds or more. Pickup truck and electric vehicle weight fees are not calculated under this section.

(2) The weight of a vehicle issued an identification plate pursuant to an application under Section 5014, and the weight of an implement of husbandry as defined in Section 36000, shall not be considered when calculating, pursuant to this section, the declared gross vehicle weight of a towing commercial motor vehicle that is owned and operated exclusively by a farmer or an employee of a farmer in the conduct of agricultural operations.

(3) Tow trucks that are utilized to render assistance to the motoring public or to tow or carry impounded vehicles shall pay fees in accordance with this section, except that the fee calculation shall be based only on the gross vehicle weight rating of the towing or carrying vehicle. Upon each initial or transfer application for registration of a tow truck described in this paragraph, the registered owner or lessee or that owner's or lessee's designee, shall certify to the department the gross vehicle weight rating of the tow truck:

| Gross Vehicle Weight Range | Fee |
|---|---|
| 10,001–15,000 | $ 257 |
| 15,001–20,000 | 353 |
| 20,001–26,000 | 435 |
| 26,001–30,000 | 552 |
| 30,001–35,000 | 648 |
| 35,001–40,000 | 761 |
| 40,001–45,000 | 837 |
| 45,001–50,000 | 948 |
| 50,001–54,999 | 1,039 |
| 55,000–60,000 | 1,173 |
| 60,001–65,000 | 1,282 |

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 215 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

| | |
|---|---|
| 65,001–70,000.................................................................................................................. | 1,398 |
| 70,001–75,000.................................................................................................................. | 1,650 |
| 75,001–80,000.................................................................................................................. | 1,700 |

(b) The fees specified in subdivision (a) apply to both of the following:

(1) An initial or original registration occurring on or after December 31, 2001, to December 30, 2003, inclusive, of a commercial motor vehicle operated either singly or in combination with a declared gross vehicle weight of 10,001 pounds or more.

(2) The renewal of registration of a commercial motor vehicle operated either singly or in combination, with a declared gross vehicle weight of 10,001 pounds or more for which registration expires on or after December 31, 2001, to December 30, 2003, inclusive.

(c)(1) For both an initial or original registration occurring on or after December 31, 2003, of a commercial motor vehicle operated either singly or in combination with a declared gross vehicle weight of 10,001 pounds or more, and the renewal of registration of a commercial motor vehicle operated either singly or in combination, with a declared gross vehicle weight of 10,001 pounds or more for which registration expires on or after December 31, 2003, there shall be paid fees as follows:

| Gross Vehicle Weight Range | Weight Code | Fee |
|---|---|---|
| 10,001–15,000 | A | $ 332 |
| 15,001–20,000 | B | 447 |
| 20,001–26,000 | C | 546 |
| 26,001–30,000 | D | 586 |
| 30,001–35,000 | E | 801 |
| 35,001–40,000 | F | 937 |
| 40,001–45,000 | G | 1,028 |
| 45,001–50,000 | H | 1,161 |
| 50,001–54,999 | I | 1,270 |
| 55,000–60,000 | J | 1,431 |
| 60,001–65,000 | K | 1,562 |
| 65,001–70,000 | L | 1,701 |
| 70,001–75,000 | M | 2,004 |
| 75,001–80,000 | N | 2,064 |

(2) For the purpose of obtaining "revenue neutrality" as described in Sections 1 and 59 of Senate Bill 2084 of the 1999–2000 Regular Session (Chapter 861 of the Statutes of 2000), the Director of Finance shall review the final 2003–04 Statement of Transactions of the State Highway Account. If that review indicates that the actual truck weight fee revenues deposited in the State Highway Account do not total at least seven hundred eighty-nine million dollars ($789,000,000), the Director of Finance shall instruct the department to adjust the schedule set forth in paragraph (1), but not to exceed the following fee amounts:

| Gross Vehicle Weight Range | Weight Code | Fee |
|---|---|---|

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 216 of 697

| | | |
|---|---|---|
| 10,001–15,000 | A | $ 354 |
| 15,001–20,000 | B | 482 |
| 20,001–26,000 | C | 591 |
| 26,001–30,000 | D | 746 |
| 30,001–35,000 | E | 874 |
| 35,001–40,000 | F | 1,024 |
| 40,001–45,000 | G | 1,125 |
| 45,001–50,000 | H | 1,272 |
| 50,001–54,999 | I | 1,393 |
| 55,000–60,000 | J | 1,571 |
| 60,001–65,000 | K | 1,716 |
| 65,001–70,000 | L | 1,870 |
| 70,001–75,000 | M | 2,204 |
| 75,001–80,000 | N | 2,271 |

(d)(1) In addition to the fees set forth in subdivision (a), a Cargo Theft Interdiction Program fee of three dollars ($3) shall be paid at the time of initial or original registration or renewal of registration of each motor vehicle subject to weight fees under this section.

(2) This subdivision does not apply to vehicles used or maintained for the transportation of persons for hire, compensation or profit, and tow trucks.

(3) For vehicles registered under Article 4 (commencing with Section 8050) of Chapter 4, the fee imposed under this subdivision shall be apportioned as required for registration fees under that article.

(4) Funds collected pursuant to the Cargo Theft Interdiction Program shall not be proportionately reduced for each month and shall be transferred to the Motor Carriers Safety Improvement Fund.

(e) Notwithstanding Section 42270 or any other provision of law, of the moneys collected by the department under this section, one hundred twenty-two dollars ($122) for each initial, original, and renewal registration shall be reported monthly to the Controller, and at the same time, deposited in the State Treasury to the credit of the Motor Vehicle Account in the State Transportation Fund. All other moneys collected by the department under this section shall be deposited to the credit of the State Highway Account in the State Transportation Fund. One hundred twenty-two dollars ($122) of the fee imposed under this section shall not be proportionately reduced for each month. For vehicles registered under Article 4 (commencing with Section 8050) of Chapter 4, the fee shall be apportioned as required for registration under that article.

(f)(1) The department, in consultation with the Department of the California Highway Patrol, shall design and make available a set of distinctive weight decals that reflect the declared gross combined weight or gross operating weight reported to the department at the time of initial registration, registration renewal, or when a weight change is reported to the department pursuant to Section 9406.1. A new decal shall be issued on each renewal or when the weight is changed pursuant to Section 9406.1. The decal for a tow truck that is subject to this section shall reflect the gross vehicle weight rating or weight code.

(2) The department may charge a fee, not to exceed ten dollars ($10), for the department's actual cost of producing and issuing each set of decals issued under paragraph (1).

Case 3:17-cv-07357-RS    Document 163-3    Filed 01/21/21    Page 217 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(3) The weight decal shall be in sharp contrast to the background and shall be of a size, shape, and color that is readily legible during daylight hours from a distance of 50 feet.

(4) Each vehicle subject to this section shall display the weight decal on both the right and left sides of the vehicle.

(5) A person may not display upon a vehicle a decal issued pursuant to this subdivision that does not reflect the declared weight reported to the department.

(6) Notwithstanding subdivision (e) or any other provision of law, the moneys collected by the department under this subdivision shall be deposited in the State Treasury to the credit of the Motor Vehicle Account in the State Transportation Fund.

(7) This subdivision shall apply to vehicles subject to this section at the time of an initial registration, registration renewal, or reported weight change that occurs on or after July 1, 2004.

(8) The following shall apply to vehicles registered under the permanent fleet registration program pursuant to Article 9.5 (commencing with Section 5301) of Chapter 1:

(A) The department, in consultation with the Department of the California Highway Patrol, shall distinguish the weight decals issued to permanent fleet registration vehicles from those issued to other vehicles.

(B) The department shall issue the distinguishable weight decals only to the following:

(i) A permanent fleet registration vehicle that is registered with the department on January 1, 2005.

(ii) On and after January 1, 2005, a vehicle for which the department has an application for initial registration as a permanent fleet registration vehicle.

(iii) On and after January 1, 2005, a permanent fleet registration vehicle that has a weight change pursuant to Section 9406.1.

(C) The weight decal issued under this paragraph shall comply with the applicable provisions of paragraphs (1) to (6), inclusive.

SEC. 198. Section 12509 of the Vehicle Code is amended to read:

<< CA VEHICLE § 12509 >>

12509. (a) Except as otherwise provided in subdivision (f) of Section 12514, the department, for good cause, may issue an instruction permit to any physically and mentally qualified person who meets one of the following requirements and who applies to the department for an instruction permit:

(1) Is age 15 years and 6 months or over, and has successfully completed approved courses in automobile driver education and driver training as provided in paragraph (3) of subdivision (a) of Section 12814.6.

(2) Is age 15 years and 6 months or over, and has successfully completed an approved course in automobile driver education and is taking driver training as provided in paragraph (3) of subdivision (a) of Section 12814.6.

(3) Is age 15 years and 6 months and enrolled and participating in an integrated driver education program as provided in subparagraph (B) of paragraph (3) of subdivision (a) of Section 12814.6.

(4) Is over the age of 16 years and is applying for a restricted driver's license pursuant to Section 12814.7.

(5) Is over the age of 17 years and 6 months.

(b) The applicant shall qualify for, and be issued, an instruction permit within 12 months from the date of the application.

(c) An instruction permit issued pursuant to subdivision (a) shall entitle the applicant to operate a vehicle, subject to the limitations imposed by this section and any other provisions of law, upon the highways for a period not exceeding 24 months from the date of the application.

(d) Except as provided in Section 12814.6, a person, while having in his or her immediate possession a valid permit issued pursuant to paragraphs (1) to (3), inclusive, of subdivision (a), may operate a motor vehicle, other than a motorcycle, motorized scooter, or a motorized bicycle, when accompanied by, and under the immediate supervision of, a California licensed driver with a valid license of the appropriate class, 18 years of age or over whose driving privilege is not on probation. Except as provided in subdivision (e), an accompanying licensed driver at all times shall occupy a position within the driver's compartment that would enable the accompanying licensed driver to assist the person in controlling the vehicle as may be necessary to avoid a collision and to provide immediate guidance in the safe operation of the vehicle.

(e) A person, while having in his or her immediate possession a valid permit issued pursuant to paragraphs (1) to (3), inclusive, of subdivision (a), who is age 15 years and 6 months or over and who has successfully completed approved courses in automobile education and driver training as provided in paragraph (3) of subdivision (a) of Section 12814.6, and a person, while having in his or her immediate possession a valid permit issued pursuant to subdivision (a), who is age 17 years and 6 months or over, may, in addition to operating a motor vehicle pursuant to subdivision (d), also operate a motorcycle, motorized scooter,

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 218 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

or a motorized bicycle, except that the person shall not operate a motorcycle, motorized scooter, or a motorized bicycle during hours of darkness, shall stay off any freeways that have full control of access and no crossings at grade, and shall not carry any passenger except an instructor licensed under Chapter 1 (commencing with Section 11100) of Division 5 of this code or a qualified instructor as defined in Section 18252.2 of the Education Code.

(f) A person while having in his or her immediate possession a valid permit issued pursuant to paragraph (4) of subdivision (a), may only operate a government-owned motor vehicle, other than a motorcycle, motorized scooter, or a motorized bicycle, when taking a driver training instruction administered by the California National Guard.

(g) The department may also issue an instruction permit to a person who has been issued a valid driver's license to authorize the person to obtain driver training instruction and to practice that instruction in order to obtain another class of driver's license or an endorsement.

(h) The department may further restrict permits issued under subdivision (a) as it may determine to be appropriate to assure the safe operation of a motor vehicle by the permittee.

SEC. 199. Section 13352 of the Vehicle Code, as added by Chapter 595 of the Statutes of 2004, is amended to read:

<< CA VEHICLE § 13352 >>

13352. (a) The department shall immediately suspend or revoke the privilege of a person to operate a motor vehicle upon the receipt of an abstract of the record of any court showing that the person has been convicted of a violation of Section 23152 or 23153 or subdivision (a) of Section 23109, or upon the receipt of a report of a judge of the juvenile court, a juvenile traffic hearing officer, or a referee of a juvenile court showing that the person has been found to have committed a violation of Section 23152 or 23153 or subdivision (a) of Section 23109. If any offense specified in this section occurs in a vehicle defined in Section 15210, the suspension or revocation specified below shall apply to the noncommercial driving privilege. The commercial driving privilege shall be disqualified as specified in Sections 15300 to 15302, inclusive. For the purposes of this section, suspension or revocation shall be as follows:

(1) Except as required under Section 13352.4, upon a conviction or finding of a violation of Section 23152 punishable under Section 23536, the privilege shall be suspended for a period of six months. The privilege may not be reinstated until the person gives proof of financial responsibility and gives proof satisfactory to the department of successful completion of a driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code described in subdivision (b) of Section 23538. If the court, as authorized under paragraph (3) of subdivision (b) of Section 23646, elects to order a person to enroll in, participate in, and complete either program described in paragraph (4) of subdivision (b) of Section 23542, the department shall require that program in lieu of the program described in subdivision (b) of Section 23538. For the purposes of this paragraph, enrollment in, participation in, and completion of an approved program shall be subsequent to the date of the current violation. Credit may not be given to any program activities completed prior to the date of the current violation.

(2) Upon a conviction or finding of a violation of Section 23153 punishable under Section 23554, the privilege shall be suspended for a period of one year. The privilege may not be reinstated until the person gives proof of financial responsibility and gives proof satisfactory to the department of successful completion of a driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code as described in subdivision (b) of Section 23556. If the court, as authorized under paragraph (3) of subdivision (b) of Section 23646, elects to order a person to enroll in, participate in, and complete either program described in paragraph (4) of subdivision (b) of Section 23542, the department shall require that program in lieu of the program described in subdivision (b) of Section 23556. For the purposes of this paragraph, enrollment in, participation in, and completion of an approved program shall be subsequent to the date of the current violation. Credit may not be given to any program activities completed prior to the date of the current violation.

(3) Except as provided in Section 13352.5, upon a conviction or finding of a violation of Section 23152 punishable under Section 23540, the privilege shall be suspended for two years. The privilege may not be reinstated until the person gives proof of financial responsibility and gives proof satisfactory to the department of successful completion of a driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code as described in subdivision (b) of Section 23542. For the purposes of this paragraph, enrollment in, participation in, and completion of an approved program shall be subsequent to the date of the current violation. Credit shall not be given to any program activities completed prior to the date of the current violation. The department shall advise the person that after completion of 12 months of the suspension period, which may

include credit for any suspension period served under subdivision (c) of Section 13353.3, the person may apply to the department for a restricted driver's license, subject to the following conditions:

(A) The person has satisfactorily provided, subsequent to the violation date of the current underlying conviction, either of the following:

(i) Proof of enrollment in an 18–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code.

(ii) Proof of enrollment in a 30–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, if available in the county of the person's residence or employment.

(B) The person agrees, as a condition of the restriction, to continue satisfactory participation in the program described in subparagraph (A).

(C) The person submits the "Verification of Installation" form described in paragraph (2) of subdivision (e) of Section 13386.

(D) The person agrees to maintain the ignition interlock device as required under subdivision (g) of Section 23575.

(E) The person provides proof of financial responsibility, as defined in Section 16430.

(F) The person pays all administrative fees or reissue fees and any restriction fee required by the department.

(G) The restriction shall remain in effect for the period required in subdivision (f) of Section 23575.

(4) Except as provided in this paragraph, upon a conviction or finding of a violation of Section 23153 punishable under Section 23560, the privilege shall be revoked for a period of three years. The privilege may not be reinstated until the person gives proof of financial responsibility, and the person gives proof satisfactory to the department of successful completion of a driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, as described in subdivision (b) of Section 23562. For the purposes of this paragraph, enrollment in, participation in, and completion of an approved program shall be subsequent to the date of the current violation. Credit shall not be given to any program activities completed prior to the date of the current violation. The department shall advise the person that after the completion of 18 months of the revocation period, which may include credit for any suspension period served under subdivision (c) of Section 13353.3, the person may apply to the department for a restricted driver's license, subject to the following conditions:

(A) The person has satisfactorily completed, subsequent to the violation date of the current underlying conviction, either of the following:

(i) An 18–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code.

(ii) The initial 18 months of a 30–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, if available in the county of the person's residence or employment, and the person agrees, as a condition of the restriction, to continue satisfactory participation in that 30–month program.

(B) The person submits the "Verification of Installation" form described in paragraph (2) of subdivision (e) of Section 13386.

(C) The person agrees to maintain the ignition interlock device as required under subdivision (g) of Section 23575.

(D) The person provides proof of financial responsibility, as defined in Section 16430.

(E) The person pays all applicable reinstatement or reissue fees and any restriction fee required by the department.

(F) The restriction shall remain in effect for the period required in subdivision (f) of Section 23575.

(5) Except as provided in this paragraph, upon a conviction or finding of a violation of Section 23152 punishable under Section 23546, the privilege shall be revoked for a period of three years. The privilege may not be reinstated until the person files proof of financial responsibility and gives proof satisfactory to the department of successful completion of one of the following programs: an 18–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, as described in subdivision (b) or (c) of Section 23548, or, if available in the county of the person's residence or employment, a 30–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, or a program specified in Section 8001 of the Penal Code. For the purposes of this paragraph, enrollment in, participation in, and completion of an approved program shall be subsequent to the date of the current violation. Credit shall not be given to any program activities completed prior to the date of the current violation. The department shall advise the person that after completion of 18 months of the revocation period, which may include credit for any suspension period served under subdivision (c) of Section 13353.3, the person may apply to the department for a restricted driver's license, subject to the following conditions:

(A) The person has satisfactorily completed, subsequent to the violation date of the current underlying conviction, either of the following:

(i) An 18–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code.

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 220 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(ii) The initial 18 months of a 30–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, if available in the county of the person's residence or employment, and the person agrees, as a condition of the restriction, to continue satisfactory participation in the 30–month driving-under-the-influence program.

(B) The person submits the "Verification of Installation" form described in paragraph (2) of subdivision (e) of Section 13386.

(C) The person agrees to maintain the ignition interlock device as required under subdivision (g) of Section 23575.

(D) The person provides proof of financial responsibility, as defined in Section 16430.

(E) An individual convicted of a violation of Section 23152 punishable under Section 23546 may also, at any time after sentencing, petition the court for referral to an 18–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, or, if available in the county of the person's residence or employment, a 30–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code. Unless good cause is shown, the court shall order the referral.

(F) The person pays all applicable reinstatement or reissue fees and any restriction fee required by the department.

(G) The restriction shall remain in effect for the period required in subdivision (f) of Section 23575.

(6) Except as provided in this paragraph, upon a conviction or finding of a violation of Section 23153 punishable under Section 23550.5 or 23566, the privilege shall be revoked for a period of five years. The privilege may not be reinstated until the person gives proof of financial responsibility and proof satisfactory to the department of successful completion of one of the following programs: an 18–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, as described in subdivision (b) of Section 23568 or, if available in the county of the person's residence or employment, a 30–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, or a program specified in Section 8001 of the Penal Code. For the purposes of this paragraph, enrollment in, participation in, and completion of an approved program shall be subsequent to the date of the current violation. Credit shall not be given to any program activities completed prior to the date of the current violation. The department shall advise the person that after the completion of 30 months of the revocation period, which may include credit for any suspension period served under subdivision (c) of Section 13353.3, the person may apply to the department for a restricted driver's license, subject to the following conditions:

(A) The person has satisfactorily completed, subsequent to the violation date of the current underlying conviction, either of the following:

(i) The initial 18 months of a 30–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, if available in the county of the person's residence or employment, and the person agrees, as a condition of the restriction, to continue satisfactory participation in the 30–month driving-under-the-influence program.

(ii) An 18–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, if a 30–month program is unavailable in the person's county of residence or employment.

(B) The person submits the "Verification of Installation" form described in paragraph (2) of subdivision (e) of Section 13386.

(C) The person agrees to maintain the ignition interlock device as required under subdivision (g) of Section 23575.

(D) The person provides proof of financial responsibility, as defined in Section 16430.

(E) Any individual convicted of a violation of Section 23153 punishable under Section 23566 may also, at any time after sentencing, petition the court for referral to an 18–month driving-under-the-influence program or, if available in the county of the person's residence or employment, a 30–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code. Unless good cause is shown, the court shall order the referral.

(F) The person pays all applicable reinstatement or reissue fees and any restriction fee required by the department.

(G) The restriction shall remain in effect for the period required in subdivision (f) of Section 23575.

(7) Except as provided in this paragraph, upon a conviction or finding of a violation of Section 23152 punishable under Section 23550 or 23550.5, or Section 23153 punishable under Section 23550.5, the privilege shall be revoked for a period of four years. The privilege may not be reinstated until the person gives proof of financial responsibility and proof satisfactory to the department of successful completion of one of the following programs: an 18–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, or, if available in the county of the person's residence or employment, a 30–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, or a program specified in Section 8001 of the Penal Code. For the purposes of this paragraph, enrollment in, participation in, and completion of an approved program shall be subsequent to the date of the current violation. Credit shall not be given to any program activities completed prior to the date of the current violation. The department shall advise the person that

Case 3:17-cv-07357-RS    Document 163-3    Filed 01/21/21    Page 221 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

after the completion of 24 months of the revocation period, which may include credit for any suspension period served under subdivision (c) of Section 13353.3, the person may apply to the department for a restricted driver's license, subject to the following conditions:

(A) The person has satisfactorily completed, subsequent to the violation date of the current underlying conviction, either of the following:

(i) An 18–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code.

(ii) The initial 18 months of a 30–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code, if available in the county of the person's residence or employment, and the person agrees, as a condition of the restriction, to continue satisfactory participation in the 30–month driving-under-the-influence program.

(B) The person submits the "Verification of Installation" form described in paragraph (2) of subdivision (e) of Section 13386.

(C) The person agrees to maintain the ignition interlock device as required under subdivision (g) of Section 23575.

(D) The person provides proof of financial responsibility, as defined in Section 16430.

(E) An individual convicted of a violation of Section 23152 punishable under Section 23550 may also, at any time after sentencing, petition the court for referral to an 18–month driving-under-the-influence program or, if available in the county of the person's residence or employment, a 30–month driving-under-the-influence program licensed pursuant to Section 11836 of the Health and Safety Code. Unless good cause is shown, the court shall order the referral.

(F) The person pays all applicable reinstatement or reissue fees and any restriction fee required by the department.

(G) The restriction shall remain in effect for the period required in subdivision (f) of Section 23575.

(8) Upon a conviction or finding of a violation of subdivision (a) of Section 23109 that is punishable under subdivision (e) of that section, the privilege shall be suspended for a period of 90 days to six months, if ordered by the court. The privilege may not be reinstated until the person gives proof of financial responsibility, as defined in Section 16430.

(9) Upon a conviction or finding of a violation of subdivision (a) of Section 23109 that is punishable under subdivision (f) of that section, the privilege shall be suspended for a period of six months, if ordered by the court. The privilege may not be reinstated until the person gives proof of financial responsibility, as defined in Section 16430.

(b) For the purpose of paragraphs (2) to (9), inclusive, of subdivision (a), the finding of the juvenile court judge, the juvenile hearing officer, or the referee of a juvenile court of a commission of a violation of Section 23152 or 23153 or subdivision (a) of Section 23109, as specified in subdivision (a) of this section, is a conviction.

(c) A judge of a juvenile court, juvenile hearing officer, or referee of a juvenile court shall immediately report the findings specified in subdivision (a) to the department.

(d) A conviction of an offense in any state, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or Canada that, if committed in this state, would be a violation of Section 23152, is a conviction of Section 23152 for purposes of this section, and a conviction of an offense that, if committed in this state, would be a violation of Section 23153, is a conviction of Section 23153 for purposes of this section. The department shall suspend or revoke the privilege to operate a motor vehicle pursuant to this section upon receiving notice of that conviction.

(e) For the purposes of the restriction conditions specified in paragraphs (3) to (7), inclusive, of subdivision (a), the department shall terminate the restriction imposed pursuant to this section and shall suspend or revoke the person's driving privilege upon receipt of notification from the driving-under-the-influence program that the person has failed to comply with the program requirements. The person's driving privilege shall remain suspended or revoked for the remaining period of the original suspension or revocation imposed under this section and until all reinstatement requirements described in this section are met.

(f) For the purposes of this section, completion of a program is the following:

(1) Satisfactory completion of all program requirements approved pursuant to program licensure, as evidenced by a certificate of completion issued, under penalty of perjury, by the licensed program.

(2) Certification, under penalty of perjury, by the director of a program specified in Section 8001 of the Penal Code, that the person has completed a program specified in Section 8001 of the Penal Code.

(g) The holder of a commercial driver's license who was operating a commercial motor vehicle, as defined in Section 15210, at the time of a violation that resulted in a suspension or revocation of the person's noncommercial driving privilege under this section is not eligible for the restricted driver's license authorized under paragraphs (3) to (7), inclusive, of subdivision (a).

(h) This section shall become operative on September 20, 2005.

SEC. 200. Section 15250 of the Vehicle Code is amended to read:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 222 of 697

<< CA VEHICLE § 15250 >>

15250. (a)(1) A person may not operate a commercial motor vehicle unless that person has in his or her immediate possession a valid commercial driver's license of the appropriate class.

(2) A person may not operate a commercial motor vehicle while transporting hazardous materials unless that person has in his or her possession a valid commercial driver's license with a hazardous materials endorsement. An instruction permit does not authorize the operation of a vehicle transporting hazardous materials.

(b)(1) Before an application for an original or renewal of a commercial driver's license with a hazardous materials endorsement is submitted to the United States Transportation Security Administration for the processing of a security threat assessment, as required under Part 1572 of Title 49 of the Code of Federal Regulations, the department shall complete a check of the applicant's driving record to ensure that the person is not subject to a disqualification under Part 383.51 of Title 49 of the Code of Federal Regulations.

(2) A person may not be issued a commercial driver's license until he or she has passed a written and driving test for the operation of a commercial motor vehicle which complies with the minimum federal standards established by the federal Commercial Motor Vehicle Safety Act of 1986 (P.L. 99–570) and Part 383 of Title 49 of the Code of Federal Regulations, and has satisfied all other requirements of that act as well as any other requirements imposed by this code.

(c) The tests shall be prescribed and conducted by or under the direction of the department. The department may allow a third-party tester to administer the driving test part of the examination required under this section and Section 15275 if all of the following conditions are met:

(1) The tests given by the third party are the same as those that would otherwise be given by the department.

(2) The third party has an agreement with the department * * * that includes, but is not limited to, the following provisions:

(A) Authorization for the United States Secretary of Transportation, or his or her representative, and the department, or its representative, to conduct random examinations, inspections, and audits without prior notice.

(B) Permission for the department, or its representative, to conduct onsite inspections at least annually.

(C) A requirement that all third-party testers meet the same qualification and training standards as the department's examiners, to the extent necessary to conduct the driving skill tests in compliance with the requirements of Part 383 of Title 49 of the Code of Federal Regulations.

(D) The department may cancel, suspend, or revoke the agreement with a third-party tester if the third-party tester fails to comply with the standards for the commercial driver's license testing program, or with any other term of the third-party agreement, upon 15 days' prior written notice of the action to cancel, suspend, or revoke the agreement by the department to the third party. Any action to appeal or review any order of the department canceling, suspending, or revoking a third-party testing agreement shall be brought in a court of competent jurisdiction under Section 1085 of the Code of Civil Procedure, or as otherwise permitted by the laws of this state. The action shall be commenced within 90 days from the effective date of the order.

(E) Any third-party tester whose agreement has been canceled pursuant to subparagraph (D) may immediately apply for a third-party testing agreement.

(F) A suspension of a third-party testing agreement pursuant to subparagraph (D) shall be for a term of less than 12 months as determined by the department. After the period of suspension, the agreement shall be reinstated upon request of the third-party tester.

(G) A revocation of a third-party testing agreement pursuant to subparagraph (D) shall be for a term of not less than one year. A third-party tester may apply for a new third-party testing agreement after the period of revocation and upon submission of proof of correction of the circumstances causing the revocation.

(H) Authorization for the department to charge the third-party tester a fee, as determined by the department, which is sufficient to defray the actual costs incurred by the department for administering and evaluating the third-party testing program, and for carrying out any other activities deemed necessary by the department to ensure sufficient training for the drivers participating in the program.

(3) Except as provided in Section 15250.3, the tests given by the third party shall not be accepted in lieu of tests prescribed and conducted by the department for applicants for a passenger vehicle endorsement specified in paragraph (2) of subdivision (a) of Section 15278, if the applicant operates or will operate a tour bus.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 223 of 697

(d) Commercial driver's license applicants who take and pass driving tests administered by a third party shall provide the department with certificates of driving skill satisfactory to the department that the applicant has successfully passed the driving tests administered by the third party.

(e) Implementation dates for the issuance of a commercial driver's license pursuant to this chapter may be established by the department as it determines is necessary to accomplish an orderly commercial driver's license program.

SEC. 201. Section 15275 of the Vehicle Code is amended to read:

## << CA VEHICLE § 15275 >>

15275. (a) A person may not operate a commercial motor vehicle described in this chapter unless that person has in his or her possession a valid commercial driver's license for the appropriate class, and an endorsement issued by the department to permit the operation of the vehicle unless exempt from the requirement to obtain an endorsement pursuant to subdivision (b) of Section 15278.

(b)(1) An endorsement to drive vehicles specified in this article shall be issued only to applicants who are qualified by examinations prescribed by the department and who meet the minimum standards established in Part 383 of Title 49 of the Code of Federal Regulations.

(2) A hazardous materials endorsement shall be issued only to applicants who comply with paragraph (1) and the requirements set forth in Part 1572 of Title 49 of the Code of Federal Regulations.

(c) The department may deny, suspend, revoke, or cancel an endorsement to drive vehicles specified in this article when the applicant does not meet the qualifications for the issuance or retention of the endorsement.

(d) If the department denies, suspends, revokes, or cancels a hazardous materials endorsement because the department received notification that the applicant poses a security threat pursuant to Part 1572 of Title 49 of the Code of Federal Regulations, and, upon appeal by the United States Transportation Security Administration, that endorsement is ordered reinstated, the department shall issue or restore the hazardous materials endorsement to the applicant within the period specified under those federal regulations.

SEC. 202. Section 23575 of the Vehicle Code is amended to read:

## << CA VEHICLE § 23575 >>

23575. (a)(1) In addition to any other provisions of law, the court may require that a person convicted of a first offense violation of Section 23152 or 23153 to install a certified ignition interlock device on any vehicle that the person owns or operates and prohibit that person from operating a motor vehicle unless that vehicle is equipped with a functioning, certified ignition interlock device. The court shall give heightened consideration to applying this sanction to a first offense violator with 0.20 percent or more, by weight, of alcohol in his or her blood at arrest, or with two or more prior moving traffic violations, or to persons who refused the chemical tests at arrest. If the court orders the ignition interlock device restriction, the term shall be determined by the court for a period not to exceed three years from the date of conviction. The court shall notify the Department of Motor Vehicles, as specified in subdivision (a) of Section 1803, of the terms of the restrictions in accordance with subdivision (a) of Section 1804. The Department of Motor Vehicles shall place the restriction in the person's records in the Department of Motor Vehicles.

(2) The court shall require a person convicted of a violation of Section 14601.2 to install an ignition interlock device on any vehicle that the person owns or operates and prohibit the person from operating a motor vehicle unless the vehicle is equipped with a functioning, certified ignition interlock device. The term of the restriction shall be determined by the court for a period not to exceed three years from the date of conviction. The court shall notify the Department of Motor Vehicles, as specified in subdivision (a) of Section 1803, of the terms of the restrictions in accordance with subdivision (a) of Section 1804. The Department of Motor Vehicles shall place the restriction in the person's records in the Department of Motor Vehicles.

(b) The court shall include on the abstract of conviction or violation submitted to the Department of Motor Vehicles under Section 1803 or 1816, the requirement and term for the use of a certified ignition interlock device. The records of the department shall reflect mandatory use of the device for the term ordered by the court.

(c) The court shall advise the person that installation of an ignition interlock device on a vehicle does not allow the person to drive without a valid driver's license.

(d) A person whose driving privilege is restricted by the court pursuant to this section shall arrange for each vehicle with an ignition interlock device to be serviced by the installer at least once every 60 days in order for the installer to recalibrate and monitor the operation of the device. The installer shall notify the court if the device is removed or indicates that the person has attempted to remove, bypass, or tamper with the device, or if the person fails three or more times to comply with any requirement for the maintenance or calibration of the ignition interlock device. There is no obligation for the installer to notify the court if the person has complied with all of the requirements of this article.

(e) The court shall monitor the installation and maintenance of any ignition interlock device restriction ordered pursuant to subdivision (a) or (l). If a person fails to comply with the court order, the court shall give notice of the fact to the department pursuant to Section 40509.1.

(f)(1) Pursuant to Section 13352, if a person is convicted of a violation of Section 23152 or 23153, and the offense occurred within 10 years of one or more separate violations of Section 23152 or 23153 that resulted in a conviction, the person may apply to the Department of Motor Vehicles for a restricted driver's license pursuant to Section 13352 that prohibits the person from operating a motor vehicle unless that vehicle is equipped with a functioning ignition interlock device, certified pursuant to Section 13386. The restriction shall remain in effect for at least the remaining period of the original suspension or revocation and until all reinstatement requirements in Section 13352 are met.

(2) Pursuant to subdivision (g), the Department of Motor Vehicles shall immediately terminate the restriction issued pursuant to Section 13352 and shall immediately suspend or revoke the privilege to operate a motor vehicle of a person who attempts to remove, bypass, or tamper with the device, who has the device removed prior to the termination date of the restriction, or who fails three or more times to comply with any requirement for the maintenance or calibration of the ignition interlock device ordered pursuant to Section 13352. The privilege shall remain suspended or revoked for the remaining period of the originating suspension or revocation and until all reinstatement requirements in Section 13352 are met.

(g) A person whose driving privilege is restricted by the Department of Motor Vehicles pursuant to Section 13352 shall arrange for each vehicle with an ignition interlock device to be serviced by the installer at least once every 60 days in order for the installer to recalibrate the device and monitor the operation of the device. The installer shall notify the Department of Motor Vehicles if the device is removed or indicates that the person has attempted to remove, bypass, or tamper with the device, or if the person fails three or more times to comply with any requirement for the maintenance or calibration of the ignition interlock device. There is no obligation on the part of the installer to notify the department or the court if the person has complied with all of the requirements of this section.

(h) Nothing in this section permits a person to drive without a valid driver's license.

(i) The Department of Motor Vehicles shall include information along with the order of suspension or revocation for repeat offenders informing them that after a specified period of suspension or revocation has been completed, the person may either install an ignition interlock device on any vehicle that the person owns or operates or remain with a suspended or revoked driver's license.

(j) Pursuant to this section, an out-of-state resident who otherwise would qualify for an ignition interlock device restricted license in California shall be prohibited from operating a motor vehicle in California unless that vehicle is equipped with a functioning ignition interlock device. An ignition interlock device is not required to be installed on any vehicle owned by the defendant that is not driven in California.

(k) If a person has a medical problem that does not permit the person to breathe with sufficient strength to activate the device, then that person shall only have the suspension option.

(l) This section does not restrict a court from requiring installation of an ignition interlock device and prohibiting operation of a motor vehicle unless that vehicle is equipped with a functioning, certified ignition interlock device for a person to whom subdivision (a) or (b) does not apply. The term of the restriction shall be determined by the court for a period not to exceed three years from the date of conviction. The court shall notify the Department of Motor Vehicles, as specified in subdivision (a) of Section 1803, of the terms of the restrictions in accordance with subdivision (a) of Section 1804. The Department of Motor Vehicles shall place the restriction in the person's records in the Department of Motor Vehicles.

(m) For the purposes of this section, "vehicle" does not include a motorcycle until the state certifies an ignition interlock device that can be installed on a motorcycle. Any person subject to an ignition interlock device restriction shall not operate a motorcycle for the duration of the ignition interlock device restriction period.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 225 of 697

(n) For the purposes of this section, "owned" means solely owned or owned in conjunction with another person or legal entity. For purposes of this section, "operates" includes operating vehicles that are not owned by the person subject to this section.

(o) For the purposes of this section, "bypass" includes, but is not limited to, either of the following:

(1) Any combination of failing or not taking the ignition interlock device rolling retest three consecutive times.

(2) Any incidence of failing or not taking the ignition interlock device rolling retest, when not followed by an incidence of passing the ignition interlock rolling retest prior to turning * * * off the vehicle's engine * * * .

SEC. 203. Section 23593 of the Vehicle Code is amended to read:

<< CA VEHICLE § 23593 >>

23593. (a) The court shall advise a person convicted of a violation of Section 23103, as specified in Section 23103.5, or a violation of Section 23152 or 23153, as follows:

"You are hereby advised that being under the influence of alcohol or drugs, or both, impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If you continue to drive while under the influence of alcohol or drugs, or both, and, as a result of that driving, someone is killed, you can be charged with murder."

(b) The advisory statement may be included in a plea form, if used, or the fact that the advice was given may be specified on the record.

(c) The court shall include on the abstract of the conviction or violation submitted to the department under Section 1803 or 1816, the fact that the person has been advised as required under subdivision (a).

SEC. 204. Section 27362 of the Vehicle Code is amended to read:

<< CA VEHICLE § 27362 >>

27362. (a) A manufacturer, wholesaler, or retailer shall not sell, offer for sale, or install in a motor vehicle, a child passenger restraint system that does not conform to all applicable federal motor vehicle safety standards on the date of manufacture. Responsibility for compliance with this section shall rest with the individual selling the system, offering the system for sale, or installing the system. A person who violates this section is guilty of a misdemeanor and shall be punished as follows:

(1) Upon a first conviction, by a fine not exceeding four hundred dollars ($400), or by imprisonment in a county jail for a period of not more than 90 days, or both.

(2) Upon a second or subsequent conviction, by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail for a period of not more than 180 days, or both.

(b) The fines collected for a violation of this section shall be allocated as follows:

(1)(A) Sixty percent to the county or city health department where the violation occurred, to be used for a child passenger restraint low-cost purchase or loaner program which shall include, but not be limited to, education on the proper installation and use of a child passenger restraint system. The county health department shall designate a coordinator to facilitate the creation of a special account and to develop a relationship with the superior court to facilitate the transfer of funds to the program. The county may contract for the implementation of the program. Prior to obtaining possession of a child passenger restraint system pursuant to this section, a person shall receive information relating to the importance of utilizing that system.

(B) As the proceeds from fines become available, county health departments shall prepare and maintain a listing of all child passenger restraint low-cost purchase or loaner programs in their counties, including a semiannual verification that all programs listed are in existence. Each county shall forward the listing to the Office of Traffic Safety in the Business, Transportation and Housing Agency and the courts, birthing centers, community child health and disability prevention programs, and county hospitals in that county, who shall make the listing available to the public. The Office of Traffic Safety shall maintain a listing of all of the programs in the state.

(2) Twenty-five percent to the county for the administration of the program.

(3) Fifteen percent to the city, to be deposited in its general fund except that, if the violation occurred in an unincorporated area, this amount shall be allocated to the county for purposes of paragraph (1).

SEC. 205. Section 521 of the Water Code is amended to read:

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 226 of 697

<< CA WATER § 521 >>

521. The Legislature further finds and declares all of the following:

(a) Water furnished or used without any method of determination of the quantities of water used by the person to whom the water is furnished has caused, and will continue to cause, waste and unreasonable use of water, and that this waste and unreasonable use should be identified, isolated, and eliminated.

(b) Water metering and volumetric pricing are among the most efficient conservation tools, providing information on how much water is being used and pricing to encourage conservation.

(c) Without water meters, it is impossible for homeowners and businesses to know how much water they are using, thereby inhibiting conservation, punishing those who conserve, and rewarding those who waste water.

(d) Existing law requires the installation of a water meter as a condition of water service provided pursuant to a connection installed on or after January 1, 1992, but the continuing widespread absence of water meters and the lack of volumetric pricing could result in the inefficient use of water for municipal and industrial uses.

(e) The benefits to be gained from metering infrastructure are not recovered if urban water suppliers do not use this infrastructure.

(f) This chapter addresses a subject matter of statewide concern. It is the intent of the Legislature that this chapter supersede and preempt all enactments and other local action of cities and counties, including charter cities and charter counties, and other local public agencies that conflict with this chapter, other than enactments or local actions that impose additional or more stringent requirements regarding matters set forth in this chapter.

(g) An urban water supplier should take any available necessary step consistent with state law to ensure that the implementation of this chapter does not place an unreasonable burden on low-income families.

SEC. 206. Section 525 of the Water Code is amended to read:

<< CA WATER § 525 >>

525. (a) Notwithstanding any other provision of law, every water purveyor who sells, leases, rents, furnishes, or delivers water service to any person shall require, as a condition of new water service on and after January 1, 1992, that a suitable water meter to measure the water service shall be installed on the water service facilities in accordance with this chapter. The cost of installation of the meter shall be paid by the user of the water, and any water purveyor may impose and collect charges for those costs.

(b) Subdivision (a) applies only to potable water.

(c) Subdivision (a) does not apply to a community water system which serves fewer than 15 service connections used by yearlong residents or regularly serves fewer than 25 yearlong residents, or a single well that services the water supply of a single-family residential home.

SEC. 207. Section 527 of the Water Code is amended to read:

<< CA WATER § 527 >>

527. (a) An urban water supplier that is not subject to Section 526 shall do both of the following:

(1) Install water meters on all municipal and industrial service connections located within its service area on or before January 1, 2025.

(2)(A) Charge each customer that has a service connection for which a water meter has been installed *** based on the actual volume of deliveries as *** measured by the water meter, beginning on or before January 1, 2010.

(B) Notwithstanding subparagraph (A), in order to provide customers with experience in volume-based water service charges, an urban water supplier that is subject to this subdivision may delay, for one annual seasonal cycle of water use, the use of meter-based charges for service connections that are being converted from nonvolume-based billing to volume-based billing.

(b) A water purveyor, including an urban water supplier, may recover the cost of providing services related to the purchase, installation, and operation of a water meter from rates, fees, or charges.

SEC. 208. Section 1013 of the Water Code is amended to read:

## << CA WATER § 1013 >>

1013. (a) The Imperial Irrigation District, acting under a contract with the United States for diversion and use of Colorado River water or pursuant to the California Constitution or to this chapter, or complying with an order of the Secretary of the Interior, a court, or the board, to reduce through conservation measures, the volume of the flow of water directly or indirectly into the Salton Sea, shall not be held liable for any effects to the Salton Sea or its bordering area resulting from the conservation measures.

(b) For the purposes of this section, and during the term of the Quantification Settlement Agreement as defined in subdivision (a) of * * * Chapter 617 of the Statutes of 2002, "land fallowing conservation measures" means the generation of water to be made available for transfer or for environmental mitigation purposes by fallowing land or removing land from agricultural production regardless of whether the fallowing or removal from agricultural production is temporary or long term, and regardless of whether it occurs in the course of normal and customary agricultural production, if both of the following apply:

(1) The measure is part of a land fallowing conservation plan that includes mitigation provisions adopted by the Board of Directors of the Imperial Irrigation District.

(2) Before the Imperial Irrigation District adopts a land fallowing conservation plan, the district shall consult with the Board of Supervisors of the County of Imperial and obtain the board's assessment of whether the proposed land fallowing conservation plan includes adequate measures to avoid or mitigate unreasonable economic or environmental impacts in the County of Imperial.

(c) In order to minimize impacts on the environment, during the term of the Quantification Settlement Agreement and for six years thereafter, in any evaluation or assessment of the Imperial Irrigation District's use of water, it shall be conclusively presumed that any water conserved, or used for mitigation purposes, through land fallowing conservation measures has been conserved in the same volume as if conserved by efficiency improvements, such as by reducing canal seepage, canal spills, or surface or subsurface runoff from irrigation fields.

(d) If a party to the Quantification Settlement Agreement engages in water efficiency conservation measures or land fallowing conservation measures to carry out a Quantification Settlement Agreement transfer or to mitigate the environmental impacts of a Quantification Settlement Agreement transfer, there may be no forfeiture, diminution, or impairment of the right of that party to use of the water conserved.

(e) During the period that the Quantification Settlement Agreement is in effect and the Imperial Irrigation District is meeting its water delivery obligations under the Quantification Settlement Agreement and its water delivery obligations under subdivision (c) of Section 2081.7 of the Fish and Game Code, no person or local agency, as defined in Section 21062 of the Public Resources Code, may seek to obtain additional conserved Colorado River water from the district, voluntarily or involuntarily, until the district has adopted a resolution offering to make conserved Colorado River water available.

(f) During the initial term in which the Quantification Settlement Agreement is in effect, any water transferred by the Imperial Irrigation District shall be subject to an ecosystem restoration fee established by the Department of Fish and Game, in consultation with the board, to cover the proportional impacts to the Salton Sea of the additional water transfer. The fee shall not exceed 10 percent of the amount of any compensation received for the transfer of the water. The fee shall be deposited in the Salton Sea Restoration Fund. This fee shall not apply to the following transfers:

(1) Transfers to meet water delivery obligations under the Quantification Settlement Agreement and related agreements, as defined in that agreement.

(2) Transfers to comply with subdivision (c) of Section 2081.7 of the Fish and Game Code.

(3) Transfers pursuant to a Defensive Transfer Agreement as defined in the Agreement for Acquisition of Conserved Water between the Imperial Irrigation District and the Metropolitan Water District of Southern California.

(g) Subdivisions (c), (d), (e), and (f) shall not become operative unless the parties have executed the Quantification Settlement Agreement on or before October 12, 2003.

(h) This section may not be construed to exempt the Imperial Irrigation District from any requirement established under the California Environmental Quality Act (Division 13 (commencing with Section 21000) of the Public Resources Code).

SEC. 209. Section 12997 of the Water Code is amended to read:

Case 3:17-cv-07357-RS  Document 163-3  Filed 01/21/21  Page 228 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

## << CA WATER § 12997 >>

12997. (a) Not later than June 30, 2005, the director shall establish the Alluvial Fan Task Force with broad membership, to the maximum extent possible, from local, state, and federal government and other stakeholders to review the state of knowledge regarding alluvial fan flood plains, determine future research needs, and prepare recommendations relating to alluvial fan flood plain management, with an emphasis on alluvial fan flood plains that are being considered for development in accordance with local general plans. The director, in consultation with representatives of the Counties of San Bernardino, Riverside, Los Angeles, Ventura, Santa Barbara, San Luis Obispo, Kern, Orange, Imperial, and San Diego, may enter into an interagency agreement with the California State University, the University of California, or other appropriate agency, to oversee the task force.

 (b) The director shall determine the composition of the task force. The task force may include, but need not be limited to, representatives from all of the following entities or groups, subject to the consent of those entities or groups:

 (1) City and county governments in the Counties of San Bernardino, Riverside, Los Angeles, Ventura, Santa Barbara, San Luis Obispo, Kern, Orange, Imperial, and San Diego.

 (2) The department.

 (3) Other local, state, and federal government agencies and stakeholders that represent relevant environmental, agricultural, and construction interests.

 (c) The Alluvial Fan Task Force shall develop a model ordinance on alluvial fan flooding to be made available to communities subject to alluvial fan flooding.

 (d) The Alluvial Fan Task Force shall prepare and submit a report, with findings and recommendations, to the Legislature not later than June 30, 2006.

 SEC. 210. Section 13305 of the Water Code is amended to read:

## << CA WATER § 13305 >>

13305. (a) Upon determining that a condition of pollution or nuisance exists that has resulted from a nonoperating industrial or business location within its region, a regional board may cause notice of the condition to be posted upon the property in question. The notice shall state that the condition constitutes either a condition of pollution or nuisance that is required to be abated by correction of the condition, or * * * a condition that will be corrected by the city, county, other public agency, or regional board at the property owner's expense. The notice shall further state that all property owners having any objections to the proposed correction of the condition may attend a hearing to be held by the regional board at a time not less than 10 days from the posting of the notice.

 (b) Notice of the hearing prescribed in this section shall be given in the county where the property is located pursuant to Section 6061 of the Government Code.

 (c) In addition to posting and publication, notice as required in this section shall be mailed to the property owners as their names and addresses appear from the last equalized assessment roll.

 (d) At the time stated in the notices, the regional board shall hear and consider all objections or protests, if any, to the proposed correction of the condition, and may continue the hearing from time to time.

 (e)(1) After final action is taken by the regional board on the disposition of any protests or objections, or if no protests or objections are received, the regional board shall request the city, county, or other public agency in which the condition of pollution or * * * nuisance exists to abate * * * the condition or nuisance.

 (2) If the city, county, or other public agency does not abate the condition within a reasonable time, the regional board shall cause the condition to be abated. The regional board may proceed by force account, contract or other agreement, or any other method deemed most expedient by the regional board, and shall apply to the state board for the necessary funds.

 (3) The regional board shall be permitted reasonable access to the affected property as necessary to perform any cleanup, abatement, or other remedial work. Access shall be obtained with the consent of the owner or possessor of the property, or, if the consent is withheld, with a warrant duly issued pursuant to the procedure described in Title 13 (commencing with Section 1822.50) of Part 3 of the Code of Civil Procedure. However, in the event of an emergency affecting public health or safety, the regional board may enter the property without consent or the issuance of a warrant.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 229 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(f) The owner of the property on which the condition exists, or is created, is liable for all reasonable costs incurred by the regional board or any city, county, or public agency in abating the condition. The amount of the cost for abating the condition upon the property in question constitutes a lien upon the property so posted upon the recordation of a notice of lien, which identifies the property on which the condition was abated, the amount the lien, and the owner of record of the property, in the office of the county recorder of the county in which the property is located. Upon recordation, the lien has the same force, effect, and priority as a judgment lien, except that it attaches only to the property so posted and described in the notice of lien, and shall continue for 10 years from the time of the recording of the notice unless sooner released or otherwise discharged. The lien may be foreclosed by an action brought by the city, county, other public agency, or state board, on behalf of the regional board, for a money judgment. Money recovered by a judgment in favor of the state board shall be returned to the State Water Pollution Cleanup and Abatement Account.

(g) The city, county, other public agency, or state board on behalf of a regional board, may, at any time, release all, or any portion, of the property subject to a lien imposed pursuant to subdivision (f) from the lien or subordinate the lien to other liens and encumbrances if it determines that the amount owed is sufficiently secured by a lien on other property or that the release or subordination of the lien will not jeopardize the collection of the amount owed. A certificate by the state board, city, county, or other public agency to the effect that any property has been released from the lien or that the lien has been subordinated to other liens and encumbrances is conclusive evidence that the property has been released or that the lien has been subordinated as provided in the certificate.

(h) As used in this section, the words "nonoperating" or "not in operation" mean the business is not conducting routine operations usually associated with that kind of business.

(i) Nothing in this section limits the authority of any state agency under any other law or regulation to enforce or administer any cleanup or abatement activity.

SEC. 211. Section 13387 of the Water Code is amended to read:

<< CA WATER § 13387 >>

13387. (a) Any person who knowingly or negligently does any of the following is subject to criminal penalties as provided in subdivisions (b), (c), and (d):

(1) Violates Section 13375 or 13376.

(2) Violates any waste discharge requirements or dredged or fill material permit issued pursuant to this chapter or any water quality certification issued pursuant to Section 13160.

(3) Violates any order or prohibition issued pursuant to Section 13243 or 13301, if the activity subject to the order or prohibition is subject to regulation under this chapter.

(4) Violates any requirement of Section 301, 302, 306, 307, 308, 318, 401, or 405 of the Clean Water Act (33 U.S.C. Sec. 1311, 1312, 1316, 1317, 1318, 1328, 1341, or 1345), as amended.

(5) Introduces into a sewer system or into a publicly owned treatment works any pollutant or hazardous substances that the person knew or reasonably should have known could cause personal injury or property damage.

(6) Introduces any pollutant or hazardous substance into a sewer system or into a publicly owned treatment works, except in accordance with any applicable pretreatment requirements, which * * * causes the treatment works to violate waste discharge requirements.

(b) Any person who negligently commits any of the violations set forth in subdivision (a) shall, upon conviction, be punished by a fine of not less than five thousand dollars ($5,000), nor more than twenty-five thousand dollars ($25,000), for each day in which the violation occurs, or by imprisonment for not more than one year in a county jail, or both. If a conviction of a person is for a violation committed after a first conviction of the person under this subdivision, subdivision (c), or subdivision (d), punishment shall be by a fine of not more than fifty thousand dollars ($50,000) for each day in which the violation occurs, or by imprisonment for not more than two years, or by both.

(c) Any person who knowingly commits any of the violations set forth in subdivision (a) shall, upon conviction, be punished by a fine of not less than five thousand dollars ($5,000), nor more than fifty thousand dollars ($50,000), for each day in which the violation occurs, or by imprisonment in the state prison for not more than three years, or by both. If a conviction of a person is for a violation committed after a first conviction of the person under this subdivision or subdivision (d), punishment shall be by

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 230 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

a fine of not more than one hundred thousand dollars ($100,000) for each day in which the violation occurs, or by imprisonment in the state prison for not more than six years, or by both.

(d)(1) Any person who knowingly commits any of the violations set forth in subdivision (a), and who knows at the time that the person thereby places another person in imminent danger of death or serious bodily injury, shall, upon conviction, be subject to a fine of not more than two hundred fifty thousand dollars ($250,000) or imprisonment in the state prison for not more than 15 years, or both. A person that is an organization shall, upon conviction under this subdivision, be subject to a fine of not more than one million dollars ($1,000,000). If a conviction of a person is for a violation committed after a first conviction of the person under this subdivision, the maximum punishment shall be a fine of not more than five hundred thousand dollars ($500,000) or imprisonment in the state prison for not more than 30 years, or both. A person that is an organization shall, upon conviction for a violation committed after a first conviction of the person under this subdivision, be subject to a fine of not more than two million dollars ($2,000,000). Any fines imposed pursuant to this subdivision shall be in addition to any fines imposed pursuant to subdivision (c).

(2) In determining whether a defendant who is an individual knew that the defendant's conduct placed another person in imminent danger of death or serious bodily injury, the defendant is responsible only for actual awareness or actual belief that the defendant possessed, and knowledge possessed by a person other than the defendant, but not by the defendant personally, cannot be attributed to the defendant.

(e) Any person who knowingly makes any false statement, representation, or certification in any record, report, plan, notice to comply, or other document filed with a regional board or the state board, or who knowingly falsifies, tampers with, or renders inaccurate any monitoring device or method required under this division shall be punished by a fine of not more than twenty-five thousand dollars ($25,000), or by imprisonment in the state prison for not more than two years, or by both. If a conviction of a person is for a violation committed after a first conviction of the person under this subdivision, punishment shall be by a fine of not more than twenty-five thousand dollars ($25,000) per day of violation, or by imprisonment in the state prison for not more than four years, or by both.

(f) For purposes of this section, a single operational upset which leads to simultaneous violations of more than one pollutant parameter shall be treated as a single violation.

(g) For purposes of this section, "organization," "serious bodily injury," "person," and "hazardous substance" shall have the same meaning as in Section 309(c) of the Clean Water Act (33 U.S.C. Sec. 1319(c)), as amended.

(h)(1) Subject to paragraph (2), funds collected pursuant to this section shall be deposited in the State Water Pollution Cleanup and Abatement Account.

(2)(A) Notwithstanding any other provision of law, fines collected for a violation of a water quality certification in accordance with paragraph (2) of subdivision (a) or for a violation of Section 401 of the Clean Water Act (33 U.S.C. Sec. 1341) in accordance with paragraph (4) of subdivision (a) shall be deposited in the Water Discharge Permit Fund and separately accounted for in that fund.

(B) The funds described in subparagraph (A) shall be expended by the state board, upon appropriation by the Legislature, to assist regional boards, and other public agencies with authority to clean up waste or abate the effects of the waste, in cleaning up or abating the effects of the waste on waters of the state, or for the purposes authorized in Section 13443.

SEC. 212. Section 35539.13 of the Water Code is amended to read:

<< CA WATER § 35539.13 >>

35539.13. (a) The districts may convey water in a drainage course within the boundaries of each respective district for the purposes of treating and reusing that water, if the conveyance, treatment, and reuse meet the requirements of state and federal law.

(b) For purposes of this section, "drainage course" refers to a drainage course with regard to which each respective district has a right of use.

(c) For purposes of this section, "water" refers to water with regard to which * * * each respective district has a right of use.

SEC. 213. Section 294 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 294 >>

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 231 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

294. The social worker or probation officer shall give notice of a selection and implementation hearing held pursuant to Section 366.26 in the following manner:

(a) Notice of the hearing shall be given to the following persons:

(1) The mother.

(2) The fathers, presumed and alleged.

(3) The child, if the child is 10 years of age or older.

(4) Any known sibling of the child who is the subject of the hearing if that sibling either is the subject of a dependency proceeding or has been adjudged to be a dependent child of the juvenile court. If the sibling is 10 years of age or older, the sibling, the sibling's caregiver, and the sibling's attorney. If the sibling is under 10 years of age, the sibling's caregiver and the sibling's attorney. However, notice is not required to be given to any sibling whose matter is calendared in the same court on the same day.

(5) The grandparents of the child, if their address is known and if the parent's whereabouts are unknown.

(6) All counsel of record.

(7) If the court knows or has reason to know that an Indian child is involved, then to the Indian custodian and the tribe of that child. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, notice shall be given to the Bureau of Indian Affairs.

(b) The following persons shall not be notified of the hearing:

(1) A parent who has relinquished the child to the State Department of Social Services or to a licensed adoption agency for adoption, and the relinquishment has been accepted and filed with notice as required under Section 8700 of the Family Code.

(2) An alleged father who has denied paternity and has executed a waiver of the right to notice of further proceedings.

(3) A parent whose parental rights have been terminated.

(c)(1) Service of the notice shall be completed at least 45 days before the hearing date. Service is deemed complete at the time the notice is personally delivered to the person named in the notice or 10 days after the notice has been placed in the mail, or at the expiration of the time prescribed by the order for publication.

(2) In the case of an Indian child, notice to the Indian custodian and the tribe shall be completed at least 10 days before the hearing.

(3) In the case of an Indian child, if notice is given to the Bureau of Indian Affairs, the bureau shall have 15 days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe.

(4) Service of notice in cases where publication is ordered shall be completed at least 30 days before the date of the hearing.

(d) Regardless of the type of notice required, or the manner in which it is served, once the court has made the initial finding that notice has properly been given to the parent, or to any person entitled to receive notice pursuant to this section, subsequent notice for any continuation of a Section 366.26 hearing may be by first-class mail to any last known address, by an order made pursuant to Section 296, or by any other means that the court determines is reasonably calculated, under any circumstance, to provide notice of the continued hearing. However, if the recommendation changes from the recommendation contained in the notice previously found to be proper, notice shall be provided to the parent, and to any person entitled to receive notice pursuant to this section, regarding that subsequent hearing.

(e) The notice shall contain the following information:

(1) The date, time, and place of the hearing.

(2) The right to appear.

(3) The parents' right to counsel.

(4) The nature of the proceedings.

(5) The recommendation of the supervising agency.

(6) A statement that, at the time of hearing, the court is required to select a permanent plan of adoption, legal guardianship, or long-term foster care for the child.

(7) In the case of an Indian child, the notice shall contain a statement that the parent or Indian custodian and the tribe have a right to intervene at any point in the proceedings. The notice shall also include a statement that the parent or Indian custodian and the tribe shall, upon request, be granted up to 20 additional days to prepare for the proceedings.

(f) Notice to the parents may be given in any one of the following manners:

(1) If the parent is present at the hearing at which the court schedules a hearing pursuant to Section 366.26, the court shall advise the parent of the date, time, and place of the proceedings, * * * his or her right to counsel, the nature of the proceedings,

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 232 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

and * * * that at the proceedings the court shall select and implement a plan of adoption, legal guardianship, or long-term foster care for the child. The court shall direct the parent to appear for the proceedings and then direct that the parent be notified thereafter by first-class mail to the parent's usual place of residence or business only.

(2) Certified mail, return receipt requested, to the parent's last known mailing address. This notice shall be sufficient if the child welfare agency receives a return receipt signed by the parent.

(3) Personal service to the parent named in the notice.

(4) Delivery to a competent person who is at least 18 years of age at the parent's usual place of residence or business, and thereafter mailed to the parent named in the notice by first-class mail at the place where the notice was delivered.

(5) If the residence of the parent is outside the state, service may be made as described in paragraph (1), (3), or (4) or by certified mail, return receipt requested.

(6) If the recommendation of the probation officer or social worker is legal guardianship or long-term foster care, service may be made by first-class mail to the parent's usual place of residence or business.

(7) If the parent's whereabouts are unknown and the parent cannot, with reasonable diligence, be served in any manner specified in paragraphs (1) to (6), inclusive, the petitioner shall file an affidavit with the court at least 75 days before the hearing date, stating the name of the parent and describing the efforts made to locate and serve the parent.

(A) If the court determines that there has been due diligence in attempting to locate and serve the parent and the probation officer or social worker recommends adoption, service shall be to that parent's attorney of record, if any, by certified mail, return receipt requested. If the parent does not have an attorney of record, the court shall order that service be made by publication of citation requiring the parent to appear at the date, time, and place stated in the citation, and that the citation be published in a newspaper designated as most likely to give notice to the parent. Publication shall be made once a week for four consecutive weeks. Whether notice is to the attorney of record or by publication, the court shall also order that notice be given to the grandparents of the child by first-class mail.

(B) If the court determines that there has been due diligence in attempting to locate and serve the parent and the probation officer or social worker recommends legal guardianship or long-term foster care, no further notice is required to the parent, but the court shall order that notice be given to the grandparents of the child by first-class mail.

(C) In any case where the residence of the parent becomes known, notice shall immediately be served upon the parent as provided for in either paragraph (2), (3), (4), (5), or (6).

(8) If the identity of one or both of the parents, or alleged parents, of the child is unknown, or if the name of one or both parents is uncertain, then that fact shall be set forth in the affidavit and the court, if ordering publication, shall order the published citation to be directed to either the father or mother, or both, of the child, and to all persons claiming to be the father or mother of the child, naming and otherwise describing the child.

(g) Notice to the child and all counsel of record shall be by first-class mail.

(h) In the case of an Indian child, notice to the tribe shall be by registered mail, return receipt requested.

(i) Notwithstanding subdivision (a), if the attorney of record is present at the time the court schedules a hearing pursuant to Section 366.26, no further notice is required, except as required by subparagraph (A) of paragraph (7) of subdivision (f).

(j) This section shall also apply to children adjudged wards pursuant to Section 727.31.

SEC. 214. Section 366.21 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 366.21 >>

366.21. (a) Every hearing conducted by the juvenile court reviewing the status of a dependent child shall be placed on the appearance calendar. The court shall advise all persons present at the hearing of the date of the future hearing and of their right to be present and represented by counsel.

(b) Except as provided in Sections 294 and 295, notice of the hearing shall be provided pursuant to Section 293.

(c) At least 10 calendar days prior to the hearing, the social worker shall file a supplemental report with the court regarding the services provided or offered to the parent or legal guardian to enable him or her to assume custody and the efforts made to achieve legal permanence for the child if efforts to reunify fail, including, but not limited to, efforts to maintain relationships between a child who is 10 years of age or older and has been in out-of-home placement in a group home for six months or longer from the date the child entered foster care and individuals who are important to the child, consistent with the child's best interests; the progress made; and, where relevant, the prognosis for return of the child to the physical custody of his or

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 233 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

her parent or legal guardian; and shall make his or her recommendation for disposition. If the child is a member of a sibling group described in paragraph (3) of subdivision (a) of Section 361.5, the report and recommendation may also take into account those factors described in subdivision (e) relating to the child's sibling group. If the recommendation is not to return the child to a parent or legal guardian, the report shall specify why the return of the child would be detrimental to the child. The social worker shall provide the parent or legal guardian, counsel for the child, and any court-appointed child advocate with a copy of the report, including his or her recommendation for disposition, at least 10 calendar days prior to the hearing. In the case of a child removed from the physical custody of his or her parent or legal guardian, the social worker shall, at least 10 calendar days prior to the hearing, provide a summary of his or her recommendation for disposition to any foster parents, relative caregivers, and certified foster parents who have been approved for adoption by the State Department of Social Services when it is acting as an adoption agency in counties that are not served by a county adoption agency or by a licensed county adoption agency, community care facility, or foster family agency having the physical custody of the child.

(d) Prior to any hearing involving a child in the physical custody of a community care facility or a foster family agency that may result in the return of the child to the physical custody of his or her parent or legal guardian, or in adoption or the creation of a legal guardianship, the facility or agency shall file with the court a report containing its recommendation for disposition. Prior to the hearing involving a child in the physical custody of a foster parent, a relative caregiver, or a certified foster parent who has been approved for adoption by the State Department of Social Services when it is acting as an adoption agency or by a licensed adoption agency, the foster parent, relative caregiver, or the certified foster parent who has been approved for adoption by the State Department of Social Services when it is acting as an adoption agency in counties that are not served by a county adoption agency or by a licensed county adoption agency, may file with the court a report containing his or her recommendation for disposition. The court shall consider the report and recommendation filed pursuant to this subdivision prior to determining any disposition.

(e) At the review hearing held six months after the initial dispositional hearing, the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment. The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental. In making its determination, the court shall review and consider the social worker's report and recommendations and the report and recommendations of any child advocate appointed pursuant to Section 356.5; and shall consider the efforts or progress, or both, demonstrated by the parent or legal guardian and the extent to which he or she availed himself or herself of services provided.

Whether or not the child is returned to a parent or legal guardian, the court shall specify the factual basis for its conclusion that the return would be detrimental or would not be detrimental. The court also shall make appropriate findings pursuant to subdivision (a) of Section 366; and, where relevant, shall order any additional services reasonably believed to facilitate the return of the child to the custody of his or her parent or legal guardian. The court shall also inform the parent or legal guardian that if the child cannot be returned home by the 12–month permanency hearing, a proceeding pursuant to Section 366.26 may be instituted. This section does not apply in a case where, pursuant to Section 361.5, the court has ordered that reunification services shall not be provided.

If the child was under the age of three years on the date of the initial removal, or is a member of a sibling group described in paragraph (3) of subdivision (a) of Section 361.5, and the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a hearing pursuant to Section 366.26 within 120 days. If, however, the court finds there is a substantial probability that the child, who was under the age of three years on the date of initial removal or is a member of a sibling group described in paragraph (3) of subdivision (a) of Section 361.5, may be returned to his or her parent or legal guardian within six months or that reasonable services have not been provided, the court shall continue the case to the 12–month permanency hearing.

For the purpose of placing and maintaining a sibling group together in a permanent home, the court, in making its determination to schedule a hearing pursuant to Section 366.26 for some or all members of a sibling group, as described in paragraph (3) of subdivision (a) of Section 361.5, shall review and consider the social worker's report and recommendations. Factors the report shall address, and the court shall consider, may include, but need not be limited to, whether the sibling group was removed from parental care as a group, the closeness and strength of the sibling bond, the ages of the siblings, the appropriateness of

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 234 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

maintaining the sibling group together, the detriment to the child if sibling ties are not maintained, the likelihood of finding a permanent home for the sibling group, whether the sibling group is currently placed together in a preadoptive home or has a concurrent plan goal of legal permanency in the same home, the wishes of each child whose age and physical and emotional condition permits a meaningful response, and the best interest of each child in the sibling group. The court shall specify the factual basis for its finding that it is in the best interest of each child to schedule a hearing pursuant to Section 366.26 in 120 days for some or all of the members of the sibling group.

If the child was removed initially under subdivision (g) of Section 300 and the court finds by clear and convincing evidence that the whereabouts of the parent are still unknown, or the parent has failed to contact and visit the child, the court may schedule a hearing pursuant to Section 366.26 within 120 days. If the court finds by clear and convincing evidence that the parent has been convicted of a felony indicating parental unfitness, the court may schedule a hearing pursuant to Section 366.26 within 120 days.

If the child had been placed under court supervision with a previously noncustodial parent pursuant to Section 361.2, the court shall determine whether supervision is still necessary. The court may terminate supervision and transfer permanent custody to that parent, as provided for by paragraph (1) of subdivision (b) of Section 361.2.

In all other cases, the court shall direct that any reunification services previously ordered shall continue to be offered to the parent or legal guardian pursuant to the time periods set forth in subdivision (a) of Section 361.5, provided that the court may modify the terms and conditions of those services.

If the child is not returned to his or her parent or legal guardian, the court shall determine whether reasonable services that were designed to aid the parent or legal guardian in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent or legal guardian. The court shall order that those services be initiated, continued, or terminated.

(f) The permanency hearing shall be held no later than 12 months after the date the child entered foster care, as that date is determined pursuant to subdivision (a) of Section 361.5. At the permanency hearing, the court shall determine the permanent plan for the child, which shall include a determination of whether the child will be returned to the child's home and, if so, when, within the time limits of subdivision (a) of Section 361.5. The court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment. The court shall also determine whether reasonable services that were designed to aid the parent or legal guardian to overcome the problems that led to the initial removal and continued custody of the child have been provided or offered to the parent or legal guardian. For each youth 16 years of age and older, the court shall also determine whether services have been made available to assist him or her in making the transition from foster care to independent living. The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental. In making its determination, the court shall review and consider the social worker's report and recommendations and the report and recommendations of any child advocate appointed pursuant to Section 356.5, shall consider the efforts or progress, or both, demonstrated by the parent or legal guardian and the extent to which he or she availed himself or herself of services provided, and shall make appropriate findings pursuant to subdivision (a) of Section 366.

Whether or not the child is returned to his or her parent or legal guardian, the court shall specify the factual basis for its decision. If the child is not returned to a parent or legal guardian, the court shall specify the factual basis for its conclusion that the return would be detrimental. The court also shall make a finding pursuant to subdivision (a) of Section 366.

(g) If the time period in which the court-ordered services were provided has met or exceeded the time period set forth in paragraph (1), (2), or (3) of subdivision (a) of Section 361.5, as appropriate, and a child is not returned to the custody of a parent or legal guardian at the permanency hearing held pursuant to subdivision (f), the court shall do one of the following:

(1) Continue the case for up to six months for a permanency review hearing, provided that the hearing shall occur within 18 months of the date the child was originally taken from the physical custody of his or her parent or legal guardian. The court shall continue the case only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian and safely maintained in the home within the extended period of time or that reasonable services have not been provided to the parent or legal guardian. For the purposes of this section, in order to find a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian and safely maintained in the home within the extended period of time, the court shall be required to find all of the following:

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 235 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(A) That the parent or legal guardian has consistently and regularly contacted and visited with the child.

(B) That the parent or legal guardian has made significant progress in resolving problems that led to the child's removal from the home.

(C) The parent or legal guardian has demonstrated the capacity and ability both to complete the objectives of his or her treatment plan and to provide for the child's safety, protection, physical and emotional well-being, and special needs.

For purposes of this subdivision, the court's decision to continue the case based on a finding or substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian is a compelling reason for determining that a hearing held pursuant to Section 366.26 is not in the best interests of the child.

The court shall inform the parent or legal guardian that if the child cannot be returned home by the next permanency review hearing, a proceeding pursuant to Section 366.26 may be instituted. The court may not order that a hearing pursuant to Section 366.26 be held unless there is clear and convincing evidence that reasonable services have been provided or offered to the parent or legal guardian.

(2) Order that a hearing be held within 120 days, pursuant to Section 366.26, but only if the court does not continue the case to the permanency planning review hearing and there is clear and convincing evidence that reasonable services have been provided or offered to the parents or legal guardians.

(3) Order that the child remain in long-term foster care, but only if the court finds by clear and convincing evidence, based upon the evidence already presented to it, including a recommendation by the State Department of Social Services when it is acting as an adoption agency in counties that are not served by a county adoption agency or by a licensed county adoption agency, that there is a compelling reason for determining that a hearing held pursuant to Section 366.26 is not in the best interest of the child because the child is not a proper subject for adoption and has no one willing to accept legal guardianship. For purposes of this section, a recommendation by the State Department of Social Services when it is acting as an adoption agency in counties that are not served by a county adoption agency or by a licensed county adoption agency that adoption is not in the best interest of the child shall constitute a compelling reason for the court's determination. That recommendation shall be based on the present circumstances of the child and may not preclude a different recommendation at a later date if the child's circumstances change.

If the court orders that a child who is 10 years of age or older remain in long-term foster care at a group home, the court shall determine whether the agency has made reasonable efforts to maintain the child's relationships with individuals other than the child's siblings who are important to the child, consistent with the child's best interests, and may make any appropriate order to ensure that those relationships are maintained.

(h) In any case in which the court orders that a hearing pursuant to Section 366.26 shall be held, it shall also order the termination of reunification services to the parent or legal guardian. The court shall continue to permit the parent or legal guardian to visit the child pending the hearing unless it finds that visitation would be detrimental to the child. The court shall make any other appropriate orders to enable the child to maintain relationships with individuals, other than the child's siblings, who are important to the child, consistent with the child's best interests.

(i) Whenever a court orders that a hearing pursuant to Section 366.26 shall be held, it shall direct the agency supervising the child and the licensed county adoption agency, or the State Department of Social Services when it is acting as an adoption agency in counties that are not served by a county adoption agency, to prepare an assessment that shall include all of the following:

(1) Current search efforts for an absent parent or parents or legal guardians.

(2) A review of the amount of and nature of any contact between the child and his or her parents or legal guardians and other members of his or her extended family since the time of placement. Although the extended family of each child shall be reviewed on a case-by-case basis, "extended family" for the purpose of this paragraph shall include, but not be limited to, the child's siblings, grandparents, aunts, and uncles.

(3) An evaluation of the child's medical, developmental, scholastic, mental, and emotional status.

(4) A preliminary assessment of the eligibility and commitment of any identified prospective adoptive parent or legal guardian, particularly the caretaker, to include a social history including screening for criminal records and prior referrals for child abuse or neglect, the capability to meet the child's needs, and the understanding of the legal and financial rights and responsibilities of adoption and guardianship. If a proposed guardian is a relative of the minor, and the relative was assessed for foster care placement of the minor prior to January 1, 1998, the assessment shall also consider, but need not be limited to, all of the factors specified in subdivision (a) of Section 361.3.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 236 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(5) The relationship of the child to any identified prospective adoptive parent or legal guardian, the duration and character of the relationship, the motivation for seeking adoption or guardianship, and a statement from the child concerning placement and the adoption or guardianship, unless the child's age or physical, emotional, or other condition precludes his or her meaningful response, and if so, a description of the condition.

(6) A description of efforts to be made to identify a prospective adoptive parent or legal guardian, including, but not limited to, child-specific recruitment and listing on an adoption exchange.

(7) An analysis of the likelihood that the child will be adopted if parental rights are terminated.

(j) If, at any hearing held pursuant to Section 366.26, a guardianship is established for the minor with a relative, and juvenile court dependency is subsequently dismissed, the relative shall be eligible for aid under the Kin–GAP program as provided in Article 4.5 (commencing with Section 11360) of Chapter 2 of Part 3 of Division 9.

(k) As used in this section, "relative" means an adult who is related to the minor by blood, adoption, or affinity within the fifth degree of kinship, including stepparents, stepsiblings, and all relatives whose status is preceded by the words "great," "great-great," or "grand," or the spouse of any of those persons even if the marriage was terminated by death or dissolution.

(l) For purposes of this section, evidence of any of the following circumstances may not, in and of itself, be deemed a failure to provide or offer reasonable services:

(1) The child has been placed with a foster family that is eligible to adopt a child, or has been placed in a preadoptive home.

(2) The case plan includes services to make and finalize a permanent placement for the child if efforts to reunify fail.

(3) Services to make and finalize a permanent placement for the child, if efforts to reunify fail, are provided concurrently with services to reunify the family.

SEC. 215. Section 387 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 387 >>

387. (a) An order changing or modifying a previous order by removing a child from the physical custody of a parent, guardian, relative, or friend and directing placement in a foster home, or commitment to a private or county institution, shall be made only after noticed hearing upon a supplemental petition.

(b) The supplemental petition shall be filed by the social worker in the original matter and shall contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child or, in the case of a placement with a relative, sufficient to show that the placement is not appropriate in view of the criteria in Section 361.3.

(c) Notwithstanding subdivision (a), dependency jurisdiction shall be resumed for a child as to whom dependency jurisdiction has been suspended pursuant to Section 366.5 if the jurisdiction established pursuant to Section 601 or 602 is terminated and if, after the issuance of a joint assessment pursuant to Section 366.5, the court determines that the court's dependency jurisdiction should be resumed.

(d) Upon the filing of the supplemental petition, the clerk of the juvenile court shall immediately set the same for hearing within 30 days, and the social worker shall cause notice thereof to be served upon the persons and in the manner prescribed by Sections 290.1 and 291.

(e) An order for the detention of the child pending adjudication of the petition may be made only after a hearing is conducted pursuant to Article 7 (commencing with Section 305).

SEC. 216. Section 636 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 636 >>

636. (a) If it appears upon the hearing that the minor has violated an order of the juvenile court or has escaped from a commitment of the juvenile court or that it is a matter of immediate and urgent necessity for the protection of the minor or reasonably necessary for the protection of the person or property of another that he or she be detained or that the minor is likely to flee to avoid the jurisdiction of the court, and that continuance in the home is contrary to the minor's welfare, the court may make its order that the minor be detained in the juvenile hall or other suitable place designated by the juvenile court for a period not to exceed 15 judicial days and shall enter said order together with its findings of fact in support thereof in the records of the court. The circumstances and gravity of the alleged offense may be considered, in conjunction with other factors, to determine

whether it is a matter of immediate and urgent necessity for the protection of the minor or the person or property of another that the minor be detained.

(b) If the court finds that the criteria of Section 628.1 are applicable, the court shall place the minor on home supervision for a period not to exceed 15 judicial days, and shall enter the order together with its findings of fact in support thereof in the records of the court. If the court releases the minor on home supervision, the court may continue, modify, or augment any conditions of release previously imposed by the probation officer, or may impose new conditions on a minor released for the first time. If there are new or modified conditions, the minor shall be required to sign a written promise to obey those conditions pursuant to Section 628.1.

(c) If the probation officer is recommending that the minor be detained, the probation officer shall submit to the court documentation, as follows:

(1) Documentation that continuance in the home is contrary to the minor's welfare shall be submitted to the court as part of the detention report prepared pursuant to Section 635.

(2) Documentation that reasonable efforts were made to prevent or eliminate the need for removal of the minor from the home and documentation of the nature and results of the services provided shall be submitted to the court either as part of the detention report prepared pursuant to Section 635, or as part of a case plan prepared pursuant to Section 636.1, but in no case later than 60 days from the date of detention.

(d) Before detaining the minor, the court shall determine whether continuance in the home is contrary to the minor's welfare and whether there are available services that would prevent the need for further detention. The court shall make that determination on a case-by-case basis and shall make reference to the documentation provided by the probation officer or other evidence relied upon in reaching its decision.

(1) If the minor can be returned to the custody of his or her parent or legal guardian at the detention hearing, through the provision of services to prevent removal, the court shall release the minor to the physical custody of his or her parent or legal guardian and order that those services * * * be provided.

(2) If the minor cannot be returned to the custody of his or her parent or legal guardian at the detention hearing, the court shall state the facts upon which the detention is based. The court shall make the following findings on the record and reference the probation officer's report or other evidence relied upon to make its determinations:

(A) Whether continuance in the home of the parent or legal guardian is contrary to the minor's welfare.

(B) Whether reasonable efforts have been made to safely maintain the minor in the home of his or her parent or legal guardian and to prevent or eliminate the need for removal of the minor from his or her home. This finding shall be made at the detention hearing if possible, but in no case later than 60 days following the minor's removal from the home.

(3) If the minor cannot be returned to the custody of his or her parent or legal guardian at the detention hearing, the court shall make the following orders:

(A) The probation officer shall provide services as soon as possible * * * to enable the minor's parent or legal guardian to obtain any assistance as may be needed to enable the parent or guardian to effectively provide the care and control necessary for the minor to return to the home.

(B) The minor's placement and care shall be the responsibility of the probation department pending disposition or further order of the court.

(4) If the matter is set for rehearing pursuant to Section 637, or continued pursuant to Section 638, or continued for any other reason, the court shall find that the continuance of the minor in the parent's or guardian's home is contrary to the minor's welfare at the initial petition hearing or order the release of the minor from custody.

(e) Whether the minor is returned home or detained, the court shall order the minor's parent or guardian to cooperate with the probation officer in obtaining those services described in paragraph (1) or in subparagraph (A) of paragraph (3).

SEC. 217. Section 740 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 740 >>

740. (a) Any minor adjudged to be a ward of the court on the basis that he or she is a person described in Section 602 and who is placed in a community care facility shall be placed in a community care facility within his or her county of residence, unless both of the following apply:

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 238 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(1) He or she has identifiable needs requiring specialized care that cannot be provided in a local facility, or his or her needs dictate physical separation from his or her family.

(2) The county of residence agrees to pay the placement county the costs of providing services to the minor, pursuant to Section 1566.25 of the Health and Safety Code.

(b)(1) Before the placement of a minor adjudged to be a ward of the court on the basis that he or she is a person described in Section 602 in any community care facility outside the ward's county of residence, the probation officer of the county making the placement, or in the case of a Youth Authority ward, the parole officer in charge of his or her case, shall send written notice of the placement, including the name of the ward, the juvenile record of the ward (including any known prior offenses), and the ward's county of residence, to the probation officer of the county in which the community care facility is located* * * . It is the intention of the Legislature, in regard to this requirement, that the probation officer of the county making the placement, or in the case of a Youth Authority ward, the parole officer in charge of his or her case, shall make his or her best efforts to send, or to hand deliver, the notice at the same time the placement is made. When that placement is terminated, the probation officer of the county making the placement, or in the case of a Youth Authority ward, the parole officer in charge of his or her case, shall send notice thereof to any person or agency receiving notification of the placement.

(2) When it has been determined that it is necessary for a ward whose board and care is funded through the Aid to Families with Dependent Children–Foster Care program * * * to be placed in a county other than the ward's parents' or guardians' county of residence, the specific reason the out-of-county placement is necessary shall be documented in the ward's case plan. If the reason is lack of resources in the sending county to meet the specific needs of the ward, those specific resources needs shall be documented in the case plan.

(3) When it has been determined that a ward whose board and care is funded through the Aid to Families with Dependent Children–Foster Care program * * * is to be placed out-of-county and that the sending county is to maintain responsibility for supervision and visitation of the ward, the sending county shall develop a plan of supervision and visitation activities to be performed, and shall specify that the sending county is responsible for performing those activities. The sending county shall send to the receiving county a copy of the plan of supervision and visitation, in addition to the notice of placement required in paragraph (1), prior to placement of the ward. If placement occurs on a holiday or weekend, the plan of supervision and visitation and the notice of placement shall be provided to the receiving county on or before the end of the next business day.

(4) When it has been determined that a ward whose placement is funded through the Aid to Families with Dependent Children–Foster Care program * * * is to be placed out-of-county and the sending county plans that the receiving county shall be responsible for the supervision and visitation of the ward, the sending county shall develop a formal agreement between the sending and receiving counties. The formal agreement shall specify the supervision and visitation to be provided the ward, and shall specify that the receiving county is responsible for providing the supervision and visitation. The formal agreement shall be approved and signed by the sending and receiving counties prior to placement of the ward in the receiving county. Additionally, the notice of placement required by paragraph (1) shall be provided to the receiving county prior to placement of the ward in that county. Upon completion of the case plan, the sending county shall provide a copy of the completed case plan to the receiving county.

(5) The probation department of a receiving county that has a group home in which a minor is placed by the probation department of another county, after adjudication of the minor for any felony offense, may disclose to the sheriff of the receiving county or to the municipal police department of the city in which the group home is located, the name of the minor, the felony offense or offenses for which the minor has been adjudicated, and the address of the group home. This information shall be utilized only for law enforcement purposes and may not be utilized in any manner that is inconsistent with the rehabilitative program in which the minor has been placed or with the progress the minor may be making in the placement program. Notwithstanding any other provision of law, the information provided by the probation department to a law enforcement agency under this paragraph may be provided to other law enforcement personnel for the limited law enforcement purposes described in this paragraph, but shall otherwise remain confidential.

(c) A minor, the parent or guardian of any minor, and counsel representing a minor or the parent or guardian of a minor may petition the juvenile court for the review of any placement decision concerning the minor made by the probation officer pursuant to subdivision (a). The petition shall state the petitioner's relationship to the minor and shall set forth in concise language the grounds on which the review is sought. The court shall order that a hearing shall be held on the petition and shall give prior

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 239 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

notice, or cause prior notice to be given, to the persons and by the means as prescribed by Section 776, and, in instances in which the means of giving notice is not prescribed by that section, then by any means as the court prescribes.

(d) If a minor is placed in a community care facility out of his or her county of residence and is then arrested and placed in juvenile hall pending a jurisdictional hearing, the county of residence shall pay to the probation department of the county of placement all reasonable costs resulting directly from the minor's stay in the juvenile hall, provided that these costs exceed one hundred dollars ($100).

(e) If, as a result of the hearing in subdivision (d), the minor is remanded back to his or her county of residence, the county of residence shall pay to the probation department of the county of placement, in addition to any payment made pursuant to subdivision (d), all reasonable costs resulting directly from transporting the minor to the county of residency, provided that these costs exceed one hundred dollars ($100).

(f) Claims made by the probation department in the county of placement * * * to the county of residence, pursuant to subdivisions (d) and (e), shall be paid within 30 days of the submission of these claims and the probation department in the county of placement shall bear the remaining expense.

(g) As used in this section:

(1) "Community care facility" shall be defined as provided in Section 1502 of the Health and Safety Code.

(2) "Group home" has the same meaning as provided in paragraph (1) of subdivision (g) of Section 80001 of Title 22 of the California Code of Regulations.

SEC. 218. Section 827 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 827 >>

827. (a)(1) Except as provided in Section 828, a case file may be inspected only by the following:

(A) Court personnel.

(B) The district attorney, a city attorney, or city prosecutor authorized to prosecute criminal or juvenile cases under state law.

(C) The minor who is the subject of the proceeding.

(D) His or her parents or guardian.

(E) The attorneys for the parties, judges, referees, other hearing officers, probation officers, and law enforcement officers who are actively participating in criminal or juvenile proceedings involving the minor.

(F) The superintendent or designee of the school district where the minor is enrolled or attending school.

(G) Members of the child protective agencies as defined in Section 11165.9 of the Penal Code.

(H) The State Department of Social Services to carry out its duties pursuant to Division 9 (commencing with Section 10000), and Part 5 (commencing with Section 7900) of Division 12, of the Family Code to oversee and monitor county child welfare agencies, children in foster care or receiving foster care assistance, and out-of-state placements.

(I) * * * Authorized legal staff or special investigators who are peace officers who are employed by, or who are authorized representatives of, the State Department of Social Services, as necessary to the performance of their duties to inspect, license, and investigate community care facilities, and to ensure that the standards of care and services provided in those facilities are adequate and appropriate and to ascertain compliance with the rules and regulations to which the facilities are subject. The confidential information shall remain confidential except for purposes of inspection, licensing, or investigation pursuant to Chapter 3 (commencing with Section 1500) and Chapter 3.4 (commencing with Section 1596.70) of Division 2 of the Health and Safety Code, or a criminal, civil, or administrative proceeding in relation thereto. The confidential information may be used by the State Department of Social Services in a criminal, civil, or administrative proceeding. The confidential information shall be available only to the judge or hearing officer and to the parties to the case. Names that are confidential shall be listed in attachments separate to the general pleadings. The confidential information shall be sealed after the conclusion of the criminal, civil, or administrative hearings, and may not subsequently be released except in accordance with this subdivision. If the confidential information does not result in a criminal, civil, or administrative proceeding, it shall be sealed after the State Department of Social Services decides that no further action will be taken in the matter of suspected licensing violations. Except as otherwise provided in this subdivision, confidential information in the possession of the State Department of Social Services may not contain the name of the minor.

(J) Members of children's multidisciplinary teams, persons, or agencies providing treatment or supervision of the minor.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 240 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(K) A judge, commissioner, or other hearing officer assigned to a family law case with issues concerning custody or visitation, or both, involving the minor, and the following persons, if actively participating in the family law case: a family court mediator assigned to a case involving the minor pursuant to Article 1 (commencing with Section 3160) of Chapter 11 of Part 2 of Division 8 of the Family Code, a court-appointed evaluator or a person conducting a court-connected child custody evaluation, investigation, or assessment pursuant to Section 3111 or 3118 of the Family Code, and counsel appointed for the minor in the family law case pursuant to Section 3150 of the Family Code. Prior to allowing counsel appointed for the minor in the family law case to inspect the file, the court clerk may require counsel to provide a certified copy of the court order appointing him or her as the minor's counsel.

(L) A court-appointed investigator who is actively participating in a guardianship case involving a minor pursuant to Part 2 (commencing with Section 1500) of Division 4 of the Probate Code and acting within the scope of his or her duties in that case.

(M) A local child support agency for the purpose of establishing paternity and establishing and enforcing child support orders.

(N) Juvenile justice commissions as established under Section 225. The confidentiality provisions of Section 10850 shall apply to a juvenile justice commission and its members.

(O) Any other person who may be designated by court order of the judge of the juvenile court upon filing a petition.

(2) Notwithstanding any other law and subject to subparagraph (A) of paragraph (3), juvenile case files, except those relating to matters within the jurisdiction of the court pursuant to Section 601 or 602, that pertain to a deceased child who was within the jurisdiction of the juvenile court pursuant to Section 300, shall be released to the public pursuant to an order by the juvenile court after a petition has been filed and interested parties have been afforded an opportunity to file an objection. Any information relating to another child or which could identify another child, except for information about the deceased, shall be redacted from the juvenile case file prior to release, unless a specific order is made by the juvenile court to the contrary. Except as provided in this paragraph, the presiding judge of the juvenile court may issue an order prohibiting or limiting access to the juvenile case file, or any portion thereof, of a deceased child only upon a showing that release of the juvenile case file or any portion thereof is detrimental to the safety, protection, or physical * * * or emotional well-being of another child who is directly or indirectly connected to the juvenile case that is the subject of the petition.

(3) Access to juvenile case files pertaining to matters within the jurisdiction of the juvenile court pursuant to Section 300 shall be limited as follows:

(A) If a juvenile case file, or any portion thereof, is privileged or confidential pursuant to any other state law or federal law or regulation, the requirements of that state law or federal law or regulation prohibiting or limiting release of the juvenile case file or any portions thereof shall prevail. Unless a person is listed in subparagraphs (A) to (N), inclusive, of paragraph (1) and is entitled to access under the other state law or federal law or regulation without a court order, all those seeking access, pursuant to other authorization, to portions of, or information relating to the contents of, juvenile case files protected under another state law or federal law or regulation, shall petition the juvenile court. The juvenile court may only release the portion of, or information relating to the contents of, juvenile case files protected by another state law or federal law or regulation if disclosure is not detrimental to the safety, protection, or physical or emotional well-being of a child who is directly or indirectly connected to the juvenile case that is the subject of the petition. This paragraph shall not be construed to limit the ability of the juvenile court to carry out its duties in conducting juvenile court proceedings.

(B) Prior to the release of the juvenile case file or any portion thereof, the court shall afford due process, including a notice of and an opportunity to file an objection to the release of the record or report to all interested parties.

(4) A juvenile case file, any portion thereof, and information relating to the content of the juvenile case file, may not be disseminated by the receiving agencies to any persons or agencies, other than those persons or agencies authorized to receive documents pursuant to this section. Further, a juvenile case file, any portion thereof, and information relating to the content of the juvenile case file, may not be made as an attachment to any other documents without the prior approval of the presiding judge of the juvenile court, unless it is used in connection with and in the course of a criminal investigation or a proceeding brought to declare a person a dependent child or ward of the juvenile court.

(b)(1) While the Legislature reaffirms its belief that juvenile court records, in general, should be confidential, it is the intent of the Legislature in enacting this subdivision to provide for a limited exception to juvenile court record confidentiality to promote more effective communication among juvenile courts, family courts, law enforcement agencies, and schools to ensure the rehabilitation of juvenile criminal offenders as well as to lessen the potential for drug use, violence, other forms of delinquency, and child abuse.

(2) Notwithstanding subdivision (a), written notice that a minor enrolled in a public school, kindergarten to grade 12, inclusive, has been found by a court of competent jurisdiction to have committed any felony or any misdemeanor involving curfew, gambling, alcohol, drugs, tobacco products, carrying of weapons, a sex offense listed in Section 290 of the Penal Code, assault or battery, larceny, vandalism, or graffiti shall be provided by the court, within seven days, to the superintendent of the school district of attendance. Written notice shall include only the offense found to have been committed by the minor and the disposition of the minor's case. This notice shall be expeditiously transmitted by the district superintendent to the principal at the school of attendance. The principal shall expeditiously disseminate the information to those counselors directly supervising or reporting on the behavior or progress of the minor. In addition, the principal shall disseminate the information to any teacher or administrator directly supervising or reporting on the behavior or progress of the minor whom the principal believes needs the information to work with the pupil in an appropriate fashion, to avoid being needlessly vulnerable or to protect other persons from needless vulnerability.

Any information received by a teacher, counselor, or administrator under this subdivision shall be received in confidence for the limited purpose of rehabilitating the minor and protecting students and staff, and shall not be further disseminated by the teacher, counselor, or administrator, except insofar as communication with the juvenile, his or her parents or guardians, law enforcement personnel, and the juvenile's probation officer is necessary to effectuate the juvenile's rehabilitation or to protect students and staff.

An intentional violation of the confidentiality provisions of this paragraph is a misdemeanor punishable by a fine not to exceed five hundred dollars ($500).

(3) If a minor is removed from public school as a result of the court's finding described in subdivision (b), the superintendent shall maintain the information in a confidential file and shall defer transmittal of the information received from the court until the minor is returned to public school. If the minor is returned to a school district other than the one from which the minor came, the parole or probation officer having jurisdiction over the minor shall so notify the superintendent of the last district of attendance, who shall transmit the notice received from the court to the superintendent of the new district of attendance.

(c) Each probation report filed with the court concerning a minor whose record is subject to dissemination pursuant to subdivision (b) shall include on the face sheet the school at which the minor is currently enrolled. The county superintendent shall provide the court with a listing of all of the schools within each school district, within the county, along with the name and mailing address of each district superintendent.

(d) Each notice sent by the court pursuant to subdivision (b) shall be stamped with the instruction: "Unlawful Dissemination Of This Information Is A Misdemeanor." Any information received from the court shall be kept in a separate confidential file at the school of attendance and shall be transferred to the minor's subsequent schools of attendance and maintained until the minor graduates from high school, is released from juvenile court jurisdiction, or reaches the age of 18 years, whichever occurs first. After that time the confidential record shall be destroyed. At any time after the date by which a record required to be destroyed by this section should have been destroyed, the minor or his or her parent or guardian shall have the right to make a written request to the principal of the school that the minor's school records be reviewed to ensure that the record has been destroyed. Upon completion of any requested review and no later than 30 days after the request for the review was received, the principal or his or her designee shall respond in writing to the written request and either shall confirm that the record has been destroyed or, if the record has not been destroyed, shall explain why destruction has not yet occurred.

Except as provided in paragraph (2) of subdivision (b), no liability shall attach to any person who transmits or fails to transmit any notice or information required under subdivision (b).

(e) For purposes of this section, a "juvenile case file" means a petition filed in any juvenile court proceeding, reports of the probation officer, and all other documents filed in that case or made available to the probation officer in making his or her report, or to the judge, referee, or other hearing officer, and thereafter retained by the probation officer, judge, referee, or other hearing officer.

SEC. 219. Section 4637.5 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 4637.5 >>

4637.5. (a) The State Department of Developmental Services shall provide data, by regional center, regarding all vendors providing services to regional center consumers for each fiscal year beginning with the 2003–04 fiscal year. The data shall include a list of the services provided by each vendor * * * and, to the extent data is available, an unduplicated count of

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 242 of 697

consumers receiving the services, the total amount paid to each vendor for each service, and the average cost for each service. For parent voucher services, the department shall summarize the information for each regional center.

(b) The department shall compile the data and submit the information to the chairs and vice chairs of each fiscal committee by March 1 of the fiscal year following the close of the prior fiscal year. The data shall not include personal or confidential consumer information.

(c) The department shall evaluate and report on the adequacy of the data provided through March 1, 2008, and recommend changes, if needed. By March 1, 2008, the report shall be provided to the chair and vice chair of each fiscal committee.

(d) This section shall become inoperative on July 1, 2008, and, as of January 1, 2009, is repealed, unless a later enacted statute, that becomes operative on or before January 1, 2009, deletes or extends the dates on which it becomes inoperative and is repealed.

SEC. 220. Section 4688.5 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 4688.5 >>

4688.5. (a) Notwithstanding any other provision of law to the contrary, the department may approve a proposal or proposals by Golden Gate Regional Center, Regional Center of the East Bay, and San Andreas Regional Center to provide for, secure, and assure the payment of a lease or leases on housing, developed pursuant to this section, based on the level of occupancy in each home, if all of the following conditions are met:

(1) The acquired or developed real property is occupied by individuals eligible for regional center services and is integrated with housing for people without disabilities.

(2) The regional center has approved the proposed ownership entity, management entity, and developer or development entity for each project, and, prior to granting the approval, has consulted with the department and has provided to the department a proposal that includes the credentials of the proposed entities.

(3) The costs associated with the proposal are reasonable.

(4) The proposal includes a plan for a transfer at a time certain of the real property's ownership to a nonprofit entity to be approved by the regional center.

(b) Prior to approving a regional center proposal pursuant to subdivision (a), the department, in consultation with the California Housing Finance Agency and the Department of Housing and Community Development, shall review all of the following:

(1) The terms and conditions of the financing structure for acquisition* * * , development, or both, of the real property.

(2) Any and all agreements that govern the real property's ownership, occupancy, maintenance, management, and operation, to ensure that the use of the property is maintained for the benefit of persons with developmental disabilities.

(c) No sale, encumbrance, hypothecation, assignment, refinancing, pledge, conveyance, exchange, or transfer in any other form of the real property, or of any of its interest therein, shall occur without the prior written approval of the department and the California Health and Human Services Agency.

(d) Notice of the restrictions pursuant to this section shall be recorded against the acquired or developed real property subject to this section.

(e) At least 45 days prior to granting approval under subdivision (c), the department shall provide notice to the chairs and vice chairs of the fiscal committees of the Assembly and the Senate, the Secretary of California Health and Human Services* * * , and the Director of Finance.

(f) The regional center shall not be eligible to acquire or develop real property for the purpose of residential housing.

SEC. 221. Section 7200.06 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 7200.06 >>

7200.06. (a) Of the 1,362 licensed beds at Napa State Hospital, at least 20 percent of these beds shall be available in any given fiscal year for use by counties for contracted services. Of the remaining beds, in no case shall the population of patients whose placement has been required pursuant to the Penal Code exceed 980.

(b) After construction of the perimeter security fence is completed at Napa State Hospital, no patient whose placement has been required pursuant to the Penal Code shall be placed outside the perimeter security fences, with the exception of placements in the general acute care and skilled nursing units. The State Department of Mental Health shall ensure that appropriate security measures are in place for the general acute care and skilled nursing units.

(c) Any alteration to the security perimeter structure or policies shall be made in conjunction with representatives of the City of Napa, the County of Napa, and local law enforcement agencies.

SEC. 222. Section 11404 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 11404 >>

11404. (a) Except as provided in Section 11405, a child is not eligible for AFDC–FC unless responsibility for placement and care of the child is with the county welfare department or Indian tribe that entered into an agreement pursuant to Section 10553.1, the county probation department which has an agreement with the county welfare department, or a licensed public adoption agency, licensed private adoption agency, or the department.

(b) In order for the child to be eligible for AFDC–FC, the agency with responsibility for the child's placement and care shall, in accordance with departmental regulations do all of the following:

(1) For children removed after October 1, 1983, document that it provided preplacement preventive services to the child prior to the child's placement in foster care, and document why provisions of these services were not successful in maintaining the child in his or her home, unless it is documented that these services were not provided due to either of the following:

(A) * * * The voluntary relinquishment of the child by one or both parents or court action declaring a child free from the custody and control of one or both parents.

(B) The child's residence with a nonrelated legal guardian.

(2) Develop a written assessment of the reasons necessitating the child's placement in foster care and the treatment needs of the child while in foster care to be updated by the agency no less frequently than once every six months. Where the child is a parent who has a child living with him or her in the same eligible facility, the assessment shall also address the needs of his or her child.

(3) Develop a case plan for the child within a maximum of 60 days of placement.

(4) Ensure that services are provided to return the child to his or her own home or establish an alternative permanent placement for the child if returning home is not possible or is inappropriate.

SEC. 223. Section 11462 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 11462 >>

11462. (a)(1) Effective July 1, 1990, foster care providers licensed as group homes, as defined in departmental regulations, including public child care institutions, as defined in Section 11402.5, shall have rates established by classifying each group home program and applying the standardized schedule of rates. The department shall collect information from group providers beginning January 1, 1990, in order to classify each group home program.

(2) Notwithstanding paragraph (1), foster care providers licensed as group homes shall have rates established only if the group home is organized and operated on a nonprofit basis as required under subdivision (h) of Section 11400. The department shall terminate the rate effective January 1, 1993, of any group home not organized and operated on a nonprofit basis as required under subdivision (h) of Section 11400.

(3)(A) The department shall determine, consistent with the requirements of this chapter and other relevant requirements under law, the rate classification level (RCL) for each group home program on a biennial basis. Submission of the biennial rate application shall be made according to a schedule determined by the department.

(B) The department shall adopt regulations to implement this paragraph. The adoption, amendment, repeal, or readoption of a regulation authorized by this paragraph is deemed to be necessary for the immediate preservation of the public peace, health and safety, or general welfare, for purposes of Sections 11346.1 and 11349.6 of the Government Code, and the department is hereby exempted from the requirement to describe specific facts showing the need for immediate action.

(b) A group home program shall be initially classified, for purposes of emergency regulations, according to the level of care and services to be provided using a point system developed by the department and described in the report, "The Classification of Group Home Programs under the Standardized Schedule of Rates System," prepared by the State Department of Social Services, August 30, 1989.

(c) The rate for each RCL has been determined by the department with data from the AFDC–FC Group Home Rate Classification Pilot Study. The rates effective July 1, 1990, were developed using 1985 calendar year costs and reflect adjustments to the costs for each fiscal year, starting with the 1986–87 fiscal year, by the amount of the California Necessities

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 244 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Index computed pursuant to the methodology described in Section 11453. The data obtained by the department using 1985 calendar year costs shall be updated and revised by January 1, 1993.

(d) As used in this section, "standardized schedule of rates" means a listing of the 14 rate classification levels, and the single rate established for each RCL.

(e) Except as specified in paragraph (1), the department shall determine the RCL for each group home program on a prospective basis, according to the level of care and services that the group home operator projects will be provided during the period of time for which the rate is being established.

(1)(A) For new and existing providers requesting the establishment of an RCL, and for existing group home programs requesting an RCL increase, the department shall determine the RCL no later than 13 months after the effective date of the provisional rate. The determination of the RCL shall be based on a program audit of documentation and other information that verifies the level of care and supervision provided by the group home program during a period of the two full calendar months or 60 consecutive days, whichever is longer, preceding the date of the program audit, unless the group home program requests a lower RCL. The program audit shall not cover the first six months of operation under the provisional rate. Pending the department's issuance of the program audit report that determines the RCL for the group home program, the group home program shall be eligible to receive a provisional rate that shall be based on the level of care and service that the group home program proposes it will provide. The group home program shall be eligible to receive only the RCL determined by the department during the pendency of any appeal of the department's RCL determination.

(B) A group home program may apply for an increase in its RCL no earlier than two years from the date the department has determined the group home program's rate, unless the host county, the primary placing county, or a regional consortium of counties submits to the department in writing that the program is needed in that county, that the provider is capable of effectively and efficiently operating the proposed program, and that the provider is willing and able to accept AFDC–FC children for placement who are determined by the placing agency to need the level of care and services that will be provided by the program.

(C) To ensure efficient administration of the department's audit responsibilities, and to avoid the fraudulent creation of records, group home programs shall make records that are relevant to the RCL determination available to the department in a timely manner. Except as provided in this section, the department may refuse to consider, for purposes of determining the rate, any documents that are relevant to the determination of the RCL that are not made available by the group home provider by the date the group home provider requests a hearing on the department's RCL determination. The department may refuse to consider, for purposes of determining the rate, the following records, unless the group home provider makes the records available to the department during the fieldwork portion of the department's program audit:

(i) Records of each employee's full name, home address, occupation, and social security number.

(ii) Time records showing when the employee begins and ends each work period, meal periods, split shift intervals, and total daily hours worked.

(iii) Total wages paid each payroll period.

(iv) Records required to be maintained by licensed group home providers under Title 22 of the California Code of Regulations that are relevant to the RCL determination.

(D) To minimize financial abuse in the startup of group home programs, when the department's RCL determination is more than three levels lower than the RCL level proposed by the group home provider, and the group home provider does not appeal the department's RCL determination, the department shall terminate the rate of a group home program 45 days after issuance of its program audit report. When the group home provider requests a hearing on the department's RCL determination, and the RCL determined by the director under subparagraph (E) is more than three levels lower than the RCL level proposed by the group home provider, the department shall terminate the rate of a group home program within 30 days of issuance of the director's decision. Notwithstanding the reapplication provisions in subparagraph (B), the department shall deny any request for a new or increased RCL from a group home provider whose RCL is terminated pursuant to this subparagraph, for a period of no greater than two years from the effective date of the RCL termination.

(E) A group home provider may request a hearing of the department's RCL determination under subparagraph (A) no later than 30 days after the date the department issues its RCL determination. The department's RCL determination shall be final if the group home provider does not request a hearing within the prescribed time. Within 60 days of receipt of the request for hearing, the department shall conduct a hearing on the RCL determination. The standard of proof shall be the preponderance of the evidence and the burden of proof shall be on the department. The hearing officer shall issue the proposed decision within 45 days

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 245 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

of the close of the evidentiary record. The director shall adopt, reject, or modify the proposed decision, or refer the matter back to the hearing officer for additional evidence or findings, within 100 days of issuance of the proposed decision. If the director takes no action on the proposed decision within the prescribed time, the proposed decision shall take effect by operation of law.

(2) Group home programs that fail to maintain at least the level of care and services associated with the RCL upon which their rate was established shall inform the department. The department shall develop regulations specifying procedures to be applied when a group home fails to maintain the level of services projected, including, but not limited to, rate reduction and recovery of overpayments.

(3) The department shall not reduce the rate, establish an overpayment, or take other actions pursuant to paragraph (2) for any period that a group home program maintains the level of care and services associated with the RCL for children actually residing in the facility. Determinations of levels of care and services shall be made in the same way as modifications of overpayments are made pursuant to paragraph (2) of subdivision (b) of Section 11466.2.

(4) A group home program that substantially changes its staffing pattern from that reported in the group home program statement shall provide notification of this change to all counties that have placed children currently in care. This notification shall be provided whether or not the RCL for the program may change as a result of the change in staffing pattern.

(f)(1) The standardized schedule of rates for the 2002–03, 2003–04, and 2004–05 fiscal years is:

| Rate Classification Level | Point Ranges | FY 2002–03, 2003-04, and 2004–05 Standard Rate |
| --- | --- | --- |
| 1 | Under 60 | $1,454 |
| 2 | 60– 89 | 1,835 |
| 3 | 90–119 | 2,210 |
| 4 | 120–149 | 2,589 |
| 5 | 150–179 | 2,966 |
| 6 | 180–209 | 3,344 |
| 7 | 210–239 | 3,723 |
| 8 | 240–269 | 4,102 |
| 9 | 270–299 | 4,479 |
| 10 | 300–329 | 4,858 |
| 11 | 330–359 | 5,234 |
| 12 | 360–389 | 5,613 |
| 13 | 390–419 | 5,994 |
| 14 | 420 & Up | 6,371 |

(2)(A) For group home programs that receive AFDC–FC payments for services performed during the 2002–03, 2003–04, and 2004–05 fiscal years, the adjusted RCL point ranges below shall be used for establishing the biennial rates for existing programs, pursuant to paragraph (3) of subdivision (a) and in performing program audits and in determining any resulting rate reduction, overpayment assessment, or other actions pursuant to paragraph (2) of subdivision (e):

Case 3:17-cv-07357-RS Document 163-3 Filed 01/21/21 Page 246 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

| Rate Classification Level | Adjusted Point Ranges for the 2002–03, 2003–04, and 2004–05 Fiscal Years |
|---|---|
| 1 | Under 54 |
| 2 | 54- 81 |
| 3 | 82–110 |
| 4 | 111–138 |
| 5 | 139–167 |
| 6 | 168–195 |
| 7 | 196–224 |
| 8 | 225–253 |
| 9 | 254–281 |
| 10 | 282–310 |
| 11 | 311–338 |
| 12 | 339–367 |
| 13 | 368–395 |
| 14 | 396 & Up |

(B) Notwithstanding subparagraph (A), foster care providers operating group homes during the 2002–03, 2003–04, and 2004–05 fiscal years shall remain responsible for ensuring the health and safety of the children placed in their programs in accordance with existing applicable provisions of the Health and Safety Code and community care licensing regulations, as contained in Title 22 of the Code of California Regulations.

(C) Subparagraph (A) shall not apply to program audits of group home programs with provisional rates established pursuant to paragraph (1) of subdivision (e). For those program audits, the RCL point ranges in paragraph (1) shall be used.

(g)(1)(A) For the 1999–2000 fiscal year, the standardized rate for each RCL shall be adjusted by an amount equal to the California Necessities Index computed pursuant to the methodology described in Section 11453. The resultant amounts shall constitute the new standardized schedule of rates, subject to further adjustment pursuant to subparagraph (B).

(B) In addition to the adjustment in subparagraph (A), commencing January 1, 2000, the standardized rate for each RCL shall be increased by 2.36 percent, rounded to the nearest dollar. The resultant amounts shall constitute the new standardized schedule of rates.

(2) Beginning with the 2000–01 fiscal year, the standardized schedule of rates shall be adjusted annually by an amount equal to the CNI computed pursuant to Section 11453, subject to the availability of funds. The resultant amounts shall constitute the new standardized schedule of rates.

(3) Effective January 1, 2001, the amount included in the standard rate for each Rate Classification Level (RCL) for the salaries, wages, and benefits for staff providing child care and supervision or performing social work activities, or both, shall be increased by 10 percent. This additional funding shall be used by group home programs solely to supplement staffing, salaries, wages, and benefit levels of staff specified in this paragraph. The standard rate for each RCL shall be recomputed using this adjusted

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 247 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

amount and the resultant rates shall constitute the new standardized schedule of rates. The department may require a group home receiving this additional funding to certify that the funding was utilized in accordance with the provisions of this section.

(h) The standardized schedule of rates pursuant to subdivisions (f) and (g) shall be implemented as follows:

(1) Any group home program that received an AFDC–FC rate in the prior fiscal year at or above the standard rate for the RCL in the current fiscal year shall continue to receive that rate.

(2) Any group home program that received an AFDC–FC rate in the prior fiscal year below the standard rate for the RCL in the current fiscal year shall receive the RCL rate for the current year.

(i)(1) The department shall not establish a rate for a new program of a new or existing provider, or for an existing program at a new location of an existing provider, unless the provider submits a letter of recommendation from the host county, the primary placing county, or a regional consortium of counties that includes all of the following:

(A) That the program is needed by that county.

(B) That the provider is capable of effectively and efficiently operating the program.

(C) That the provider is willing and able to accept AFDC–FC children for placement who are determined by the placing agency to need the level of care and services that will be provided by the program.

(D) That, if the letter of recommendation is not being issued by the host county, the primary placing county has notified the host county of its intention to issue the letter and the host county was given * * * 30 days to respond to this notification and to discuss options with the primary placing county.

(2) The department shall encourage the establishment of consortia of county placing agencies on a regional basis for the purpose of making decisions and recommendations about the need for, and use of, group home programs and other foster care providers within the regions.

(3) The department shall annually conduct a county-by-county survey to determine the unmet placement needs of children placed pursuant to Section 300 and Section 601 or 602, and shall publish its findings by November 1 of each year.

(j) The department shall develop regulations specifying ratesetting procedures for program expansions, reductions, or modifications, including increases or decreases in licensed capacity, or increases or decreases in level of care or services.

(k)(1) For the purpose of this subdivision, "program change" means any alteration to an existing group home program planned by a provider that will increase the RCL or AFDC–FC rate. An increase in the licensed capacity or other alteration to an existing group home program that does not increase the RCL or AFDC–FC rate shall not constitute a program change.

(2) For the 1998–99, 1999–2000, and 2000–01 fiscal years, the rate for a group home program shall not increase, as the result of a program change, from the rate established for the program effective July 1, 2000, and as adjusted pursuant to subparagraph (B) of paragraph (1) of subdivision (g), except as provided in paragraph (3).

(3)(A) For the 1998–99, 1999–2000, and 2000–01 fiscal years, the department shall not establish a rate for a new program of a new or existing provider or approve a program change for an existing provider that either increases the program's RCL or AFDC–FC rate, or increases the licensed capacity of the program as a result of decreases in another program with a lower RCL or lower AFDC–FC rate that is operated by that provider, unless both of the following conditions are met:

(i) The licensee obtains a letter of recommendation from the host county, primary placing county, or regional consortium of counties regarding the proposed program change or new program.

(ii) The county determines that there is no increased cost to the General Fund.

(B) Notwithstanding subparagraph (A), the department may grant a request for a new program or program change, not to exceed 25 beds, statewide, if both of the following conditions are met:

(i) The licensee obtains a letter of recommendation from the host county, primary placing county, or regional consortium of counties regarding the proposed program change or new program.

(ii) The department determines that the new program or program change will result in a reduction of referrals to state hospitals during the 1998–99 fiscal year.

(l) General unrestricted or undesignated private charitable donations and contributions made to charitable or nonprofit organizations shall not be deducted from the cost of providing services pursuant to this section. The donations and contributions shall not be considered in any determination of maximum expenditures made by the department.

(m) The department shall, by October 1 of each year, commencing October 1, 1992, provide the Joint Legislative Budget Committee with a list of any new departmental requirements established during the previous fiscal year concerning the operation of group homes, and of any unusual, industrywide increase in costs associated with the provision of group home care that may

Case 3:17-cv-07357-RS    Document 163-3    Filed 01/21/21    Page 248 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

have significant fiscal impact on providers of group home care. The committee may, in * * * the 1993–94 fiscal year and beyond, use the list to determine whether an appropriation for rate adjustments is needed in the subsequent fiscal year.

SEC. 224. Section 14016.5 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 14016.5 >>

14016.5. (a) At the time of determining or redetermining the eligibility of a Medi–Cal * * * program or Aid to Families with Dependent Children (AFDC) program applicant or beneficiary who resides in an area served by a managed health care plan or pilot program in which beneficiaries may enroll, each applicant or beneficiary shall personally attend a presentation at which the applicant or beneficiary is informed of the managed care and fee-for-service options available regarding methods of receiving Medi–Cal benefits. The county shall ensure that each beneficiary or applicant attends this presentation.

(b) The health care options presentation described in subdivision (a) shall include all of the following elements:

(1) Each beneficiary or eligible applicant shall be informed that he or she may choose to continue an established patient-provider relationship in the fee-for-service sector.

(2) Each beneficiary or eligible applicant shall be provided with the name, address, telephone number, and specialty, if any, of each primary care provider, and each clinic participating in each prepaid managed health care plan, pilot project, or fee-for-service case management provider option. This information shall be provided under geographic area designations, in alphabetical order by the name of the primary care provider and clinic. The name, address, and telephone number of each specialist participating in each prepaid managed * * * health care plan, pilot project, or fee-for-service case management provider option shall be made available by * * * contacting either the health care options contractor or the prepaid managed * * * health care plan, pilot project, or fee-for-service case management provider.

(3) Each beneficiary or eligible applicant shall be informed that he or she may choose to continue an established patient-provider relationship in a managed care option, if his or her treating provider is a primary care provider or clinic contracting with any of the prepaid managed health care plans, pilot projects, or fee-for-service case management provider options available, has available capacity, and agrees to continue to treat that beneficiary or applicant.

(4) In areas specified by the director, each beneficiary or eligible applicant shall be informed that if he or she fails to make a choice, or does not certify that he or she has an established relationship with a primary care provider or clinic, he or she shall be assigned to, and enrolled in, a prepaid managed health care plan, pilot project, or fee-for-service case management provider.

(c) No later than 30 days following the date a Medi–Cal or AFDC beneficiary or applicant is determined eligible, the beneficiary or applicant shall indicate his or her choice in writing, as a condition of coverage for Medi–Cal benefits, of either of the following health care options:

(1) To obtain benefits by receiving a Medi–Cal card, which may be used to obtain services from individual providers, that the beneficiary would locate, who choose to provide services to Medi–Cal beneficiaries.

The department may require each beneficiary or eligible applicant, as a condition for electing this option, to sign a statement certifying that he or she has an established patient-provider relationship, or in the case of a dependent, the parent or guardian shall make that certification. This certification shall not require the acknowledgment or guarantee of acceptance, by any indicated Medi–Cal provider or health facility, of any beneficiary making a certification under this section.

(2)(A) To obtain benefits by enrolling in a prepaid managed health care plan, pilot program, or fee-for-service case management provider that has agreed to make Medi–Cal services readily available to enrolled Medi–Cal beneficiaries.

(B) At the time the beneficiary or eligible applicant selects a prepaid managed health care plan, pilot project, or fee-for-service case management provider, the department shall, when applicable, encourage the beneficiary or eligible applicant to also indicate, in writing, his or her choice of primary care provider or clinic contracting with the selected prepaid managed health care plan, pilot project, or fee-for-service case management provider.

(d)(1) In areas specified by the director, a Medi–Cal or AFDC beneficiary or eligible applicant who does not make a choice, or who does not certify that he or she has an established relationship with a primary care provider or clinic, shall be assigned to and enrolled in an appropriate Medi–Cal managed care plan, pilot project, or fee-for-service case management provider providing service within the area in which the beneficiary resides.

(2) If it is not possible to enroll the beneficiary under a Medi–Cal managed care plan, pilot project, or a fee-for-service case management provider because of a lack of capacity or availability of participating contractors, the beneficiary shall be provided with a Medi–Cal card and informed about fee-for-service primary care providers who do all of the following:

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 249 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(A) The providers agree to accept Medi–Cal patients.

(B) The providers provide information about the provider's willingness to accept Medi–Cal patients as described in Section 14016.6.

(C) The providers provide services within the area in which the beneficiary resides.

(e) If a beneficiary or eligible applicant does not choose a primary care provider or clinic, or does not select any primary care provider who is available, the managed health care plan, pilot project, or fee-for-service case management provider that was selected by or assigned to the beneficiary shall ensure that the beneficiary selects a primary care provider or clinic within 30 days after enrollment or is assigned to a primary care provider within 40 days after enrollment.

(f)(1) The managed care plan shall have a valid Medi–Cal contract, adequate capacity, and appropriate staffing to provide health care services to the beneficiary.

(2) The department shall establish standards for all of the following:

(A) The maximum distances a beneficiary is required to travel to obtain primary care services from the managed care plan, fee-for-service * * * case management provider, or pilot project in which the beneficiary is enrolled.

(B) The conditions under which a primary care service site shall be accessible by public transportation.

(C) The conditions under which a managed care plan, fee-for-service * * * case management provider, or pilot project shall provide nonmedical transportation to a primary care service site.

(3) In developing the standards required by paragraph (2), the department shall take into account, on a geographic basis, the means of transportation used and distances typically traveled by Medi–Cal beneficiaries to obtain fee-for-service primary care services and the experience of managed care plans in delivering services to Medi–Cal enrollees. The department shall also consider the provider's ability to render culturally and linguistically appropriate services.

(g) To the extent possible, the arrangements for carrying out subdivision (d) shall provide for the equitable distribution of Medi–Cal beneficiaries among participating managed care plans, fee-for-service case management providers, and pilot projects.

(h) If, under the provisions of subdivision (d), a Medi–Cal beneficiary or applicant does not make a choice or does not certify that he or she has an established relationship with a primary care provider or clinic, the person may, at the option of the department, be provided with a Medi–Cal card or be assigned to and enrolled in a managed care plan providing service within the area in which the beneficiary resides.

(i) Any Medi–Cal or AFDC beneficiary who is dissatisfied with the provider or managed care plan, pilot project, or fee-for-service case management provider shall be allowed to select or be assigned to another provider or managed care plan, pilot project, or fee-for-service case management provider.

(j) The department or its contractor shall notify a managed care plan, pilot project, or fee-for-service case management provider when it has been selected by or assigned to a beneficiary. The managed care plan, pilot project, or fee-for-service case management provider that has been selected by, or assigned to, a beneficiary, shall notify the primary care provider or clinic that it has been selected or assigned. The managed care plan, pilot project, or fee-for-service case management provider shall also notify the beneficiary of the managed care plan, pilot project, or fee-for-service case management provider or clinic selected or assigned.

(k)(1) The department shall ensure that Medi–Cal beneficiaries eligible under Title XVI of the Social Security Act are provided with information about options available regarding methods of receiving Medi–Cal benefits as described in subdivision (c).

(2)(A) The director may waive the requirements of subdivisions (c) and (d) until a means is established to directly provide the presentation described in subdivision (a) to beneficiaries who are eligible for the federal Supplemental Security Income for the Aged, Blind, and Disabled Program (Subchapter 16 (commencing with Section 1381) of Chapter 7 of Title 42 of the United States Code).

(B) The director may elect not to apply the requirements of subdivisions (c) and (d) to beneficiaries whose eligibility under the Supplemental Security Income program is established before January 1, 1994.

(l) In areas where there is no prepaid managed health care plan or pilot program that has contracted with the department to provide services to Medi–Cal beneficiaries, and where no other enrollment requirements have been established by the department, no explicit choice need be made, and the beneficiary or eligible applicant shall receive a Medi–Cal card.

(m) The following definitions contained in this subdivision shall control the construction of this section, unless the context requires otherwise:

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 250 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

(1) "Applicant," "beneficiary," and "eligible applicant," in the case of a family group, mean any person with legal authority to make a choice on behalf of dependent family members.

(2) "Fee-for-service case management provider" means a provider enrolled and certified to participate in the Medi–Cal fee-for-service case management program the department may elect to develop in selected areas of the state with the assistance of and in cooperation with California physician providers and other interested provider groups.

(3) "Managed health care plan" and "managed care plan" mean a person or entity operating under a Medi–Cal contract with the department under this chapter or Chapter 8 (commencing with Section 14200) to provide, or arrange for, health care services for Medi–Cal beneficiaries as an alternative to the Medi–Cal fee-for-service program that has a contractual responsibility to manage health care provided to Medi–Cal beneficiaries covered by the contract.

(n)(1) Whenever a county welfare department notifies a public assistance recipient or Medi–Cal beneficiary that the recipient or beneficiary is losing Medi–Cal eligibility, the county shall include, in the notice to the recipient or beneficiary, notification that the loss of eligibility shall also result in the recipient's or beneficiary's disenrollment from Medi–Cal managed * * * health care or dental plans, if enrolled.

(2)(A) Whenever the department or the county welfare department processes a change in a public assistance recipient's or Medi–Cal beneficiary's residence or aid code that will result in the recipient's or beneficiary's disenrollment from the managed * * * health care or dental plan in which he or she is currently enrolled, a written notice shall be given to the recipient or beneficiary.

(B) This paragraph shall become operative and the department shall commence sending the notices required under this paragraph on or before the expiration of 12 months after the effective date of this section.

(o) This section shall be implemented in a manner consistent with any federal waiver required to be obtained by the department in order to implement this section.

SEC. 225. Section 14016.51 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 14016.51 >>

14016.51. Upon the availability of federal funding, the department shall modify the Medi–Cal program mail-in application form, and other appropriate materials, and the single point-of-entry application form, to allow applicants in counties served by managed care plans to contact the enrollment contractor by using the Health Care Options toll-free telephone number to request and receive enrollment materials before a Medi–Cal eligibility determination has been made.

SEC. 226. Section 14087.6 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 14087.6 >>

14087.6. A county that has contracted for the provision of services pursuant to this article may provide the services directly to recipients, or arrange for any or all of the services to be provided by subcontracting with primary care providers, health maintenance organizations, insurance carriers, or other entities or individuals. The subcontracts may utilize a prospectively negotiated reimbursement rate, fee-for-service, retainer, capitation, or other basis for payment. The rate of payment established under the contract shall not exceed the total per capita amount that the department estimates would be payable for all services and requirements covered under the contract if all these services and requirements were to be furnished to Medi–Cal beneficiaries under the Medi–Cal fee-for-service program.

Counties that are responsible for providing health care under this chapter shall make efforts to utilize existing health service resources if these resources can be estimated by the county to result in lower total long-term costs and accessible quality care to persons served under this chapter. The granting of a certificate of need pursuant to the criteria set forth in Section 127200 of the Health and Safety Code or a certificate of exemption pursuant to the criteria set forth in Section 127175 of the Health and Safety Code shall satisfy the intent of this provision.

SEC. 227. Section 14123.25 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 14123.25 >>

14123.25. (a) In lieu of, or in addition to, the imposition of any other sanction available to it, including the sanctions and penalties authorized under Section 14123.2 or 14171.6, and as the "single state agency" for California vested with authority to

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 251 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

administer the Medi–Cal program, the department shall exercise the authority granted to it in Section 1002.2 of Title 42 of the Code of Federal Regulations, and may also impose the mandatory and permissive exclusions identified in Section 1128 of the federal Social Security Act (42 U.S.C. Sec. 1320a–7), and its implementing regulations, and impose civil penalties identified in Section 1128A of the federal Social Security Act (42 U.S.C. Sec. 1320a–7a), and its implementing regulations, against applicants and providers, as defined in Section 14043.1, or against billing agents, as defined in Section 14040.1. The department may also terminate, or refuse to enter into, a provider agreement authorized under Section 14043.2 with an applicant or provider, as defined in Section 14043.1, upon the grounds specified in Section 1866(b)(2) of the federal Social Security Act (42 U.S.C. Sec. 1395cc(b)(2)). Notwithstanding Section 100171 of the Health and Safety Code or any other provision of law, any appeal by an applicant, provider, or billing agent of the imposition of a civil penalty, exclusion, or other sanction pursuant to this subdivision shall be in accordance with Section 14043.65, except that where the action is based upon a conviction for any crime involving fraud or abuse of the Medi–Cal, Medicaid, or Medicare programs, or an exclusion by the federal government from the Medicaid or Medicare programs, the action shall be automatic and not subject to appeal or hearing.

(b) In addition, the department may impose the intermediate sanctions identified in Section 1846 of the Social Security Act (42 U.S.C. Sec. 1395w–2), and its implementing regulations, against any provider that is a clinical laboratory, as defined in Section 1206 of the Business and Professions Code. The imposition and appeal of this intermediate sanction shall be in accordance with Article 8 (commencing with Section 1065) of Chapter 2 of Division 1 of Title 17 of the California Code of Regulations.

(c)(1) In addition, the department may issue a written warning notice of improper billing or improper cost report computation, which shall specifically identify the statute, regulation, or rule that is being violated, to a provider via certified mail, return receipt requested, whenever a review of the provider's paid claims or a provider's cost report demonstrates a pattern of improper billing or improper cost report computation. The review shall not take into account claims that were denied or payment reductions. The warning notice shall be in a format that specifically apprises the provider of the item or service improperly billed * * * and, if applicable, the deficiencies in the manner in which provider costs were computed. The warning notice may be issued with annual cost report audit findings, or in addition to any audit or any other action that the department is authorized to take. The failure of the department to exercise its discretion to issue the warning notice shall not * * * limit its authority to audit or take any action authorized by law. The warning notice shall provide the provider with the opportunity to contest the warning notice and explain to the department the correctness of the provider's bill or cost report computation. If the department accepts the provider's explanation, in whole or in part, no further action related to the notice or part of the notice that the department accepts as correct shall be taken pursuant to this section.

(2) Civil money penalties may be imposed in the following circumstances:

(A) If a provider presents or causes to be presented claims for payment by the Medi–Cal program that are* * * :

(i) Billed improperly, and are for a service or item about which the provider has received two or more warning notices of improper billing, the provider may, in addition to any other penalties that may be prescribed by law, be subject to a civil money penalty of one hundred dollars ($100) per claim, or up to two times the amount improperly claimed for each item or service, whichever is greater.

(ii) For a service or item for which the department solicits provider costs for use in calculating Medi–Cal reimbursement or in calculating and assigning Medi–Cal reimbursement rates, the cost reports relevant to the claims are improperly calculated, and the provider has received two or more warning notices of improper cost report computation regarding substantially similar errors, the provider may, in addition to any other penalties that may be prescribed by law, be subject to a civil money penalty of one hundred dollars ($100) per adjustment by the department to the costs submitted by the provider, or up to two times the amount improperly claimed for each item or service, whichever is greater.

(B) If a provider presents or causes to be presented claims for payment by the Medi–Cal program that are* * * :

(i) Billed improperly, and are for a service or item about which the provider has received three or more warning notices of improper billing, or has been assessed a penalty under subparagraph (A), the provider may, in addition to any other penalties that may be prescribed by law, be subject to a civil money penalty of one thousand dollars ($1,000) per claim, or up to three times the amount improperly claimed for each item or service, whichever is greater.

(ii) For a service or item for which the department solicits provider costs for use in calculating Medi–Cal reimbursement or in calculating and assigning Medi–Cal reimbursement rates, the cost reports relevant to the claims are improperly calculated, and the provider has received three or more warning notices of improper cost report computation regarding substantially similar errors, or has been assessed a penalty under subparagraph (A), the provider may, in addition to any other penalties that may be

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 252 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

prescribed by law, be subject to a civil money penalty of one thousand dollars ($1,000) per adjustment by the department to the costs submitted by the provider, or three times the amount claimed for each item or service, whichever is greater.

(3) Any provider subjected to civil money penalties under paragraph (2) may appeal the decision to assess penalties pursuant to Section 100171 of the Health and Safety Code.

SEC. 228. Section 16206 of the Welfare and Institutions Code is amended to read:

<< CA WEL & INST § 16206 >>

16206. (a) The purpose of the program is to develop and implement statewide coordinated training programs designed specifically to meet the needs of county child protective services social workers assigned emergency response, family maintenance, family reunification, permanent placement, and adoption responsibilities. It is the intent of the Legislature that the program include training for other agencies under contract with county welfare departments to provide child welfare services. In addition, the program shall provide training programs for persons defined as a mandated reporter pursuant to the Child Abuse and Neglect Reporting Act, Article 2.5 (commencing with Section 11164) of Chapter 2 of Title 1 of Part 4 of the Penal Code. The program shall provide the services required in this section to the extent possible within the total allocation. If allocations are insufficient, the department, in consultation with the grantee or grantees and the Child Welfare Training Advisory Board, shall prioritize the efforts of the program, giving primary attention to the most urgently needed services. County child protective services social workers assigned emergency response responsibilities shall receive first priority for training pursuant to this section.

(b) The training program shall provide practice-relevant training for mandated child abuse reporters and all members of the child welfare delivery system that will address critical issues affecting the well-being of children, and shall develop curriculum materials and training resources for use in meeting staff development needs of mandated child abuse reporters and child welfare personnel in public and private agency settings.

(c) The training provided pursuant to this section shall include all of the following:

(1) Crisis intervention.

(2) Investigative techniques.

(3) Rules of evidence.

(4) Indicators of abuse and neglect.

(5) Assessment criteria, including the application of guidelines for assessment of relatives for placement according to the criteria described in Section 361.3.

(6) Intervention strategies.

(7) Legal requirements of child protection, including requirements of child abuse reporting laws.

(8) Case management.

(9) Use of community resources.

(10) Information regarding the dynamics and effects of domestic violence upon families and children, including indicators and dynamics of teen dating violence.

(11) Posttraumatic stress disorder and the causes, symptoms, and treatment of posttraumatic stress disorder in children.

(12) The importance of maintaining relationships with individuals who are important to a child in out-of-home placement, including methods to identify those individuals, consistent with the child's best interests, including, but not limited to, asking the child about individuals who are important, and ways to maintain and support those relationships.

(13) The legal duties of a child protective services social worker, in order to protect the legal rights and safety of children and families from the initial time of contact during investigation through treatment.

(d) The training provided pursuant to this section may also include any or all of the following:

(1) Child development and parenting.

(2) Intake, interviewing, and initial assessment.

(3) Casework and treatment.

(4) Medical aspects of child abuse and neglect.

(e) The training program shall assess the program's performance at least annually and forward it to the State Department of Social Services for an evaluation and report to the Legislative Analyst. The first report shall be forwarded to the Legislative

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 253 of 697

Analyst no later than January 1, 1990, and on the first of January in any subsequent year. The assessment shall include at minimum the following:

(1) The number of persons trained.

(2) The type of training provided.

(3) The degree to which the training is perceived by participants as useful in practice.

(f) The training program shall provide practice-relevant training to county child protective services social workers who screen referrals for child abuse or neglect and for all workers assigned to provide emergency response, family maintenance, family reunification, and permanent placement services. The training shall be developed in consultation with the Child Welfare Training Advisory Board and domestic violence victims' advocates and other public and private agencies that provide programs for victims of domestic violence or programs of intervention for perpetrators.

SEC. 229. Section 15 of Chapter 656 of the Statutes of 2003 is amended to read:

(a) Unless otherwise provided, this act shall apply with respect to any penalty assessed on or after January 1, 2004, on any return for which the statute of limitations on assessment has not expired. All other provisions of this act shall apply on and after January 1, 2004.

(b) Except as provided in subdivision (c), Sections 18407, 19772, and 19773 of the Revenue and Taxation Code, as amended or added by this act, apply to taxable years beginning on or after January 1, 2003.

(c)(1) The penalty provisions of Section 19772 apply to any person that satisfies both of the following:

(A) The person is subject to the provisions of Sections 18407 and 19772.

(B) The person has invested in a transaction after February 28, 2000, and before January 1, 2004, where that transaction becomes a listed transaction at any time.

(2)(A) A person that is subject to the provisions of Section 6111 of the Internal Revenue Code, as incorporated and modified by Section 18648, must register a tax shelter with the Franchise Tax Board before April 30, 2004, if that tax shelter was offered for sale between February 28, 2000, and January 1, 2004, and becomes a listed transaction on or before January 1, 2004.

(B) The penalty under Section 19173 applies for a failure to register the tax shelter under subparagraph (A).

(3)(A) Subdivision (c) of Section 18648 does not apply to licensed attorneys in the case of a transaction that was entered into before January 1, 2004, if the attorney is considered a material adviser solely due to the practice of law.

(B) The provisions of subparagraph (A) shall only apply to an attorney offering advice in an attorney-client relationship where:

(i) Legal advice of any kind is sought from a professional legal adviser in his or her capacity as a professional legal adviser.

(ii) The communications are made in confidence and relate to that purpose.

(iii) The communications are made or received by the client.

(4) For purposes of applying Section 19778 of the Revenue and Taxation Code, Section 18407 of the Revenue and Taxation Code, as added by * * * Section 1 of Chapter 656 of the Statutes of 2003, applies for taxable years beginning after December 31, 1998.

<< CA WATER App. § 62–4 >>

SEC. 230. Section 4 of the Lake County Flood Control and Water Conservation District (Chapter 1544 of the Statutes of 1951) [8] is amended to read:

Sec. 4. (a) The objects and purposes of this act are to provide for the control, impounding, treatment, and disposal of the flood and storm waters of the district, the conservation and protection of all waters within the district, including both surface water and groundwater, and the control of flood and storm waters of streams that have their source outside of the district, but which streams and the flood waters thereof flow into the district, to protect from flood or storm waters the watercourses, lakes, groundwater, watersheds, harbors, public highways, life, and property in the district, to develop and improve the quality of all waters within the district for all beneficial uses, including domestic, irrigation, industrial and recreational uses, and to protect and improve the quality of all waters within the district.

(b) The objects and purposes of this act are also to provide for the participation of the district in the national pollutant discharge elimination system (NPDES) permit program in accordance with the Clean Water Act (33 U.S.C. Sec. 1251 et seq.).

<< CA WATER App. § 62–5 >>

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 254 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

SEC. 231. Section 5 of the Lake County Flood Control and Water Conservation District Act (Chapter 1544 of the Statutes of 1951) [9] is amended to read:

Sec. 5. The district is hereby declared to be a body corporate and politic and may do all of the following:

(a) Have perpetual succession.

(b) Sue and be subject to suit in the name of the district.

(c) Adopt a seal.

(d) Acquire by grant, purchase, lease, gift, devise, contract, construction, or otherwise, and hold, use, enjoy, let, and dispose of real and personal property of every kind, including lands, structures, buildings, rights-of-way, easements, water, and water rights * * * and privileges, and construct, maintain, alter, and operate any and all works or improvements, within or outside the district, necessary or proper to carry out any of the objects of purposes of this act and convenient to the full exercise of its powers, and complete, extend, add to, alter, remove, repair, or otherwise improve any works, or improvements, or property acquired by it as authorized by this act.

(e) Conserve all waters within the district, and control the flood and storm waters of the district and the flood and storm waters of streams that have their sources outside the district, but which streams and floodwaters thereof flow * * * into the district, and protect from damage from those flood or storm waters the watercourses, watersheds, harbors, public highways, life and property in the district, and the watercourses outside the district of streams flowing into the district, and to develop waters within or outside the district for domestic irrigation, industrial, and recreational uses, and construct works therefor, including works for the storage and delivery of water, provided* * * , that none of the provisions of this act shall preclude the exercise by any other political subdivision that may now or hereafter exist, wholly or in part, within the district from exercising its powers, although the powers may be of the same nature as the powers of the district. Any other political subdivision may, by written agreement with the district, provide for the use, or joint use, of property or facilities in which that other political subdivision has an interest, or for the use, or joint use, of property or facilities in which the district has an interest.

(f) Cooperate and act in conjunction with the federal government, the state, or any of their engineers, officers, boards, commissions, departments, or agencies, or with any public or private corporation, or with the County of Lake or adjacent counties, or with any other agencies, in the construction of any work for the storage or delivery of all waters within or outside the district for domestic, irrigation, industrial, and recreational uses and for the conservation of waters within the district, for the controlling of flood or storm waters of or flowing into the district, or for the protection of life or property in the district.

(g) Carry on technical and other investigations of all kinds, make measurements, collect data and make analyses, studies, and inspections pertaining to the beneficial use of waters within or outside the district, including domestic, irrigation, industrial, and recreational uses and the conservation of water and the control of floods both within and outside the district, and for those purposes the district shall have the right of access through its authorized representatives to all properties within the district. The district, through its authorized representatives, may enter upon those lands and make examinations, surveys, and maps thereof.

(h) Enter upon any land, to make surveys and locate the necessary works of improvement and the lines for channels, conduits, canals, pipelines, roadways, and other rights-of-way; acquire by purchase, lease, contract, gift, devise, or other legal means all lands and other property necessary or convenient for the construction, use, supply, maintenance, repair and improvement of the works, enter into and do any acts necessary or proper for the performance of any agreement with the United States, or any state, county, district of any kind, public or private corporation, association, firm or individual, or any number of them for the joint acquisition, construction, leasing, ownership, disposition, use, management, maintenance, repair, or operation of any rights, works, or other property of a kind which might be lawfully acquired or owned by the district.

(i) Incur indebtedness and issue bonds in the manner provided in this act.

(j) In compliance with Article XIII C and Article XIII D of the California Constitution, cause taxes, fees, or assessments to be levied and collected for the purpose of paying any obligation of the district, and to carry out any of the purposes of this act, in the manner provided in this act.

(k) Make contracts, and employ labor, and do all acts necessary for the full exercise of all powers vested in the district or any of the officers thereof by this act.

(l) Exercise the right of eminent domain, either within or outside the district, to take any property necessary to carry out any of the objects or purposes of this act. The district in exercising that power shall, in addition to the damage for the taking, injury, or destruction of property, also pay the cost of removal, reconstruction, or relocation of any structure, railways, mains, pipes, conduits, wires, cable, and poles of any public utility that is required to be moved to a new location.

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 255 of 697

The district shall not condemn property outside the County of Lake unless the consent of the governing board of the county, in which the property to be condemned is located, has first been obtained.

Nothing contained in this act * * * shall be construed as in any way affecting the plenary power of any existing city and county or municipal utility district to provide for a water supply for that city and county or municipal utility district, or as affecting the absolute control of any properties of that city and county or municipal utility district necessary for that water supply and nothing herein contained shall be construed as vesting any power of control over those properties in the district or in any officer thereof, or in any person referred to in this act.

(m) Provide for the operation and maintenance of any works of any kind or channelways, that may be built or operated by the state or the federal government without cost to the district, for the control or disposition of flood and storm waters within the district, whether those waters originate within or outside the district.

(n) Contract with the County of Lake, because of the interest of the County of Lake in the general welfare and preservation and promotion of land values in the county and in the maintenance, construction, and improvement of public roads, bridges, and other county property within any zone that may be damaged or destroyed by those flood and storm waters and that will be protected by proper control and disposition of those waters, for the participation by that county, on a percentage or other appropriate basis, in the amount or amounts that may be taxed or assessed from time to time against any lands in any zone by any taxing or assessing agency or authority, including the district, to provide funds for the operation and maintenance of any works of any kind or channelways which may be built, maintained, or operated by the state or the federal government or the district for the benefit of that zone; and the County of Lake may enter into that contract with the district.

(n) [10] Levy assessments in any zone, on the basis of benefits as provided in Section 13 or 13.1* * * , to raise funds for payment of expenses of operation and of works or channelways in that zone and the cost of levying and collecting those assessments.

(o) Levy and collect special taxes in the district or any zone in accordance with Section 13* * * .

(p) Levy and collect benefit assessments in the district or any zone in accordance with Section 13* * * .

(q) Participate alone, or jointly with Lake County, or cities or districts within Lake County, in the national pollutant discharge elimination system (NPDES) permit program in accordance with the Clean Water Act (33 U.S.C. Sec. 1252 et seq.), and undertake necessary acts in connection with that program.

SEC. 232. Any section of any act enacted by the Legislature during the 2005 calendar year that takes effect on or before January 1, 2006, and that amends, amends and renumbers, adds, repeals and adds, or repeals a section that is amended, amended and renumbered, added, repealed and added, or repealed by this act, shall prevail over this act, whether that act is enacted prior to, or subsequent to, the enactment of this act. The repeal, or repeal and addition, of any article, chapter, part, title, or division of any code by this act shall not become operative if any section of any other act that is enacted by the Legislature during the 2005 calendar year and takes effect on or before January 1, 2006, amends, amends and renumbers, adds, repeals and adds, or repeals any section contained in that article, chapter, part, title, or division.

[1] So in enrolled bill.

[2] So in enrolled bill.

[3] Internal Revenue Code sections are in Title 26 of the U.S.C.A.

[4] Internal Revenue Code sections are in Title 26 of the U.S.C.A.

[5] Internal Revenue Code sections are in Title 26 of the U.S.C.A.

[6] Internal Revenue Code sections are in Title 26 of the U.S.C.A.

[7] Internal Revenue Code sections are in Title 26 of the U.S.C.A.

[8] Water Code App. § 62–4.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 256 of 697

MAINTENANCE OF CODES, 2005 Cal. Legis. Serv. Ch. 22 (S.B. 1108) (WEST)

9   Water Code App. § 62–5.

10   So in enrolled bill.

CA LEGIS 22 (2005)

---

**End of Document**                                               © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 6

2010 Cal. Legis. Serv. Ch. 711 (S.B. 1080) (WEST)

CALIFORNIA 2010 LEGISLATIVE SERVICE

2010 Portion of 2009-2010 Regular Session

Additions are indicated by **Text**; deletions by
**\* \* \***.

CHAPTER 711

S.B. No. 1080

WEAPONS--DEADLY--NONSUBSTANTIVE REORGANIZATION OF STATUTES

AN ACT to add Sections 626.91 and 830.95 to, to add Title 2 (commencing with Section 12001) to Part 4 of, to add Part 6 (commencing with Section 16000) to, to repeal Section 653k of, and to repeal Title 2 (commencing with Section 12000) of Part 4 of, the Penal Code, relating to nonsubstantive reorganization of deadly weapon statutes.

[Filed with Secretary of State September 30, 2010.]

**LEGISLATIVE COUNSEL'S DIGEST**

SB 1080, Committee on Public Safety. Deadly weapons.

Existing law generally regulates deadly weapons.

This bill would reorganize without substantive change the provisions of the Penal Code relating to deadly weapons, to be operative January 1, 2012.

This bill would incorporate additional changes proposed by AB 1810, AB 1934, AB 2263, AB 2358, AB 2668, SB 282, SB 1062, and SB 1190, contingent on the prior enactment of those bills.

The people of the State of California do enact as follows:

SECTION 1. Section 626.91 is added to the Penal Code, to read:

<< CA PENAL § 626.91 >>

626.91. Possession of ammunition on school grounds is governed by Section 30310.

<< Repealed: CA ST § 653k >>

SEC. 2. Section 653k of the Penal Code is repealed.

SEC. 3. Section 830.95 is added to the Penal Code, to read:

<< CA ST § 830.95 >>

830.95. (a) Any person who wears the uniform of a peace officer while engaged in picketing, or other informational activities in a public place relating to a concerted refusal to work, is guilty of a misdemeanor, whether or not the person is a peace officer.

(b) This section shall not be construed to authorize or ratify any picketing or other informational activities not otherwise authorized by law.

<< Repealed: CA ST §§ 12000, 12001, 12001.1, 12001.2, 12001.5, 12001.6, 12002, 12003, 12010, 12011, 12012, 12020, 12020.1, 12020.3, 12020.5, 12021, 12021.1, 12021.3, 12021.5, 12022, 12022.1, 12022.2, 12022.3, 12022.4, 12022.5, 12022.53, 12022.55, 12022.6, 12022.7, 12022.75, 12022.8, 12022.85, 12022.9, 12022.95, 12023, 12024, 12025, 12025.5, 12026, 12026.1, 12026.2, 12027, 12027.1, 12028, 12028.5, 12028.7, 12029, 12030, 12031, 12031.1, 12032, 12033, 10234, 12035, 12036, 12039, 12040, 12050, 12050.2, 12051, 12052, 12052.5, 12054, 12054, 12060, 12061, 12070, 12071, 12071.1, 12071.4, 12072, 12072.5, 12073, 12074, 12075, 12076, 12076.5, 12077, 12077.5, 12078, 12079, 12080, 12081, 12082, 12083, 12085, 12086, 12087, 12087.5, 12087.6, 12088, 12088.1, 12088.15, 12088.2, 12088.3, 12088.4, 12088.5, 12088.6, 12088.7, 12088.8, 12088.9, 12090, 12092, 12093, 12094, 12095, 12096, 12097, 12098, 12099, 12101, 12125, 12126, 12127, 12128, 12129, 12130, 12131, 12131.5, 12132, 12133, 12200, 12201, 12220, 12230, 12231, 12232, 12233, 12234, 12250, 12251, 12275, 12275.5, 12276, 12276.1, 12276.5, 12277, 12278, 12280, 12281, 12282, 12285, 12286, 12287, 12288, 12288.5, 12289, 12289.5, 12290, 12301, 12302, 12303, 12303.1, 12303.2, 12303.3, 12303.6, 12304, 12305, 12306, 12307, 12308, 12309, 12310, 12311, 12312, 12316, 12317, 12318, 12320, 12321, 12322, 12323, 12324, 12325, 12355, 12360, 12361, 12362, 12363, 12364, 12365, 12366, 12367, 12368, 12369, 12370, 12401, 12402, 12403, 12403.1, 12403.5, 12403.7, 12403.8, 12403.9, 12404, 12420, 12421, 12422, 12423, 12424, 12424.5, 12425, 12426, 12500, 12501, 12520, 12550, 12551, 12552, 12553, 12554, 12555, 12556, 12580, 12581, 12582, 12583, 12590, 12600, 12601, 12650, 12651, 12652, 12653, 12654, 12655, 12800, 12801, 12802, 12803, 12804, 12805, 12806, 12807, 12808, 12809 >>

SEC. 4. Title 2 (commencing with Section 12000) of Part 4 of the Penal Code is repealed.

SEC. 5. Title 2 (commencing with Section 12001) is added to Part 4 of the Penal Code, to read:

pt. 4 t. 2 pr. § 12001

TITLE 2. SENTENCE ENHANCEMENTS

<< CA ST § 12001 >>

12001. As used in this title, "firearm" has the meaning provided in subdivision (a) of Section 16520.

<< CA ST § 12003 >>

12003. If any section, subsection, sentence, clause, or phrase of this title or any other provision listed in Section 16580 is for any reason held to be unconstitutional, that decision shall not affect the validity of the remaining portions of this title or any other provision listed in Section 16580. The Legislature hereby declares that it would have passed this title and any other provision listed in Section 16580, and each section, subsection, sentence, clause, and phrase thereof, irrespective of the fact that any one or more other sections, subsections, sentences, clauses, or phrases be declared unconstitutional.

<< CA ST § 12021.5 >>

12021.5. (a) Every person who carries a loaded or unloaded firearm on his or her person, or in a vehicle, during the commission or attempted commission of any street gang crimes described in subdivision (a) or (b) of Section 186.22, shall, upon conviction of the felony or attempted felony, be punished by an additional term of imprisonment in the state prison for one, two, or three years in the court's discretion. The court shall impose the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of sentence.

(b) Every person who carries a loaded or unloaded firearm together with a detachable shotgun magazine, a detachable pistol magazine, a detachable magazine, or a belt-feeding device on his or her person, or in a vehicle, during the commission or attempted commission of any street gang crimes described in subdivision (a) or (b) of Section 186.22, shall, upon conviction of the felony or attempted felony, be punished by an additional term of imprisonment in the state prison for two, three, or four years in the court's discretion. The court shall impose the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of sentence.

(c) As used in this section, the following definitions shall apply:

(1) "Detachable magazine" means a device that is designed or redesigned to do all of the following:

(A) To be attached to a rifle that is designed or redesigned to fire ammunition.

(B) To be attached to, and detached from, a rifle that is designed or redesigned to fire ammunition.

(C) To feed ammunition continuously and directly into the loading mechanism of a rifle that is designed or redesigned to fire ammunition.

(2) "Detachable pistol magazine" means a device that is designed or redesigned to do all of the following:

(A) To be attached to a semiautomatic firearm that is not a rifle or shotgun that is designed or redesigned to fire ammunition.

(B) To be attached to, and detached from, a firearm that is not a rifle or shotgun that is designed or redesigned to fire ammunition.

(C) To feed ammunition continuously and directly into the loading mechanism of a firearm that is not a rifle or a shotgun that is designed or redesigned to fire ammunition.

(3) "Detachable shotgun magazine" means a device that is designed or redesigned to do all of the following:

(A) To be attached to a firearm that is designed or redesigned to fire a fixed shotgun shell through a smooth or rifled bore.

(B) To be attached to, and detached from, a firearm that is designed or redesigned to fire a fixed shotgun shell through a smooth bore.

(C) To feed fixed shotgun shells continuously and directly into the loading mechanism of a firearm that is designed or redesigned to fire a fixed shotgun shell.

(4) "Belt–feeding device" means a device that is designed or redesigned to continuously feed ammunition into the loading mechanism of a machinegun or a semiautomatic firearm.

(5) "Rifle" shall have the same meaning as specified in Section 17090.

(6) "Shotgun" shall have the same meaning as specified in Section 17190.

(d) This section shall become operative on January 1, 2011.

<< CA ST § 12022 >>

12022. (a)(1) Except as provided in subdivisions (c) and (d), any person who is armed with a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless the arming is an element of that offense. This additional term shall apply to any person who is a principal in the commission of a felony or attempted felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm.

(2) Except as provided in subdivision (c), and notwithstanding subdivision (d), if the firearm is an assault weapon, as defined in Section 30510 or Section 30515, or a machinegun, as defined in Section 16880, or a .50 BMG rifle, as defined in Section 30530, the additional and consecutive term described in this subdivision shall be three years whether or not the arming is an element of the offense of which the person was convicted. The additional term provided in this paragraph shall apply to any person who is a principal in the commission of a felony or attempted felony if one or more of the principals is armed with an assault weapon or machinegun, or a .50 BMG rifle, whether or not the person is personally armed with an assault weapon or machinegun, or a .50 BMG rifle.

(b)(1) Any person who personally uses a deadly or dangerous weapon in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for one year, unless use of a deadly or dangerous weapon is an element of that offense.

(2) If the person described in paragraph (1) has been convicted of carjacking or attempted carjacking, the additional term shall be one, two, or three years.

(3) When a person is found to have personally used a deadly or dangerous weapon in the commission of a felony or attempted felony as provided in this subdivision and the weapon is owned by that person, the court shall order that the weapon be deemed a nuisance and disposed of in the manner provided in Sections 18000 and 18005.

(c) Notwithstanding the enhancement set forth in subdivision (a), any person who is personally armed with a firearm in the commission of a violation or attempted violation of Section 11351, 11351.5, 11352, 11366.5, 11366.6, 11378, 11378.5, 11379, 11379.5, or 11379.6 of the Health and Safety Code, shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years.

(d) Notwithstanding the enhancement set forth in subdivision (a), any person who is not personally armed with a firearm who, knowing that another principal is personally armed with a firearm, is a principal in the commission of an offense or attempted offense specified in subdivision (c), shall be punished by an additional and consecutive term of imprisonment in the state prison for one, two, or three years.

(e) For purposes of imposing an enhancement under Section 1170.1, the enhancements under this section shall count as one, single enhancement.

(f) Notwithstanding any other provision of law, the court may strike the additional punishment for the enhancements provided in subdivision (c) or (d) in an unusual case where the interests of justice would best be served, if the court specifies on the record and enters into the minutes the circumstances indicating that the interests of justice would best be served by that disposition.

<< CA ST § 12022.1 >>

12022.1. (a) For the purposes of this section only:

(1) "Primary offense" means a felony offense for which a person has been released from custody on bail or on his or her own recognizance prior to the judgment becoming final, including the disposition of any appeal, or for which release on bail or his or her own recognizance has been revoked. In cases where the court has granted a stay of execution of a county jail commitment

or state prison commitment, "primary offense" also means a felony offense for which a person is out of custody during the period of time between the pronouncement of judgment and the time the person actually surrenders into custody or is otherwise returned to custody.

(2) "Secondary offense" means a felony offense alleged to have been committed while the person is released from custody for a primary offense.

(b) Any person arrested for a secondary offense which was alleged to have been committed while that person was released from custody on a primary offense shall be subject to a penalty enhancement of an additional two years in state prison which shall be served consecutive to any other term imposed by the court.

(c) The enhancement allegation provided in subdivision (b) shall be pleaded in the information or indictment which alleges the secondary offense, or in the information or indictment of the primary offense if a conviction has already occurred in the secondary offense, and shall be proved as provided by law. The enhancement allegation may be pleaded in a complaint but need not be proved at the preliminary hearing or grand jury hearing.

(d) Whenever there is a conviction for the secondary offense and the enhancement is proved, and the person is sentenced on the secondary offense prior to the conviction of the primary offense, the imposition of the enhancement shall be stayed pending imposition of the sentence for the primary offense. The stay shall be lifted by the court hearing the primary offense at the time of sentencing for that offense and shall be recorded in the abstract of judgment. If the person is acquitted of the primary offense the stay shall be permanent.

(e) If the person is convicted of a felony for the primary offense, is sentenced to state prison for the primary offense, and is convicted of a felony for the secondary offense, any state prison sentence for the secondary offense shall be consecutive to the primary sentence.

(f) If the person is convicted of a felony for the primary offense, is granted probation for the primary offense, and is convicted of a felony for the secondary offense, any state prison sentence for the secondary offense shall be enhanced as provided in subdivision (b).

(g) If the primary offense conviction is reversed on appeal, the enhancement shall be suspended pending retrial of that felony. Upon retrial and reconviction, the enhancement shall be reimposed. If the person is no longer in custody for the secondary offense upon reconviction of the primary offense, the court may, at its discretion, reimpose the enhancement and order him or her recommitted to custody.

<< CA ST § 12022.2 >>

12022.2. (a) Any person who, while armed with a firearm in the commission or attempted commission of any felony, has in his or her immediate possession ammunition for the firearm designed primarily to penetrate metal or armor, shall upon conviction of that felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony, be punished by an additional term of 3, 4, or 10 years. The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of the sentence.

(b) Any person who wears a body vest in the commission or attempted commission of a violent offense, as defined in Section 29905, shall, upon conviction of that felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one, two, or five years. The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of the sentence.

(c) As used in this section, "body vest" means any bullet-resistant material intended to provide ballistic and trauma protection for the wearer.

(d) This section shall become operative on January 1, 2011.

<< CA ST § 12022.3 >>

12022.3. For each violation of Section 220 involving a specified sexual offense, or for each violation or attempted violation of Section 261, 262, 264.1, 286, 288, 288a, or 289, and in addition to the sentence provided, any person shall receive the following:

(a) A 3–, 4–, or 10–year enhancement if the person uses a firearm or a deadly weapon in the commission of the violation.

(b) A one-, two-, or five-year enhancement if the person is armed with a firearm or a deadly weapon.

<< CA ST § 12022.4 >>

12022.4. (a) Any person who, during the commission or attempted commission of a felony, furnishes or offers to furnish a firearm to another for the purpose of aiding, abetting, or enabling that person or any other person to commit a felony shall, in addition and consecutive to the punishment prescribed by the felony or attempted felony of which the person has been convicted, be punished by an additional term of one, two, or three years in the state prison. The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of the sentence. The additional term provided in this section shall not be imposed unless the fact of the furnishing is charged in the accusatory pleading and admitted or found to be true by the trier of fact.

(b) This section shall become operative on January 1, 2011.

<< CA ST § 12022.5 >>

12022.5. (a) Except as provided in subdivision (b), any person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense.

(b) Notwithstanding subdivision (a), any person who personally uses an assault weapon, as specified in Section 30510 or Section 30515, or a machinegun, as defined in Section 16880, in the commission of a felony or attempted felony, shall be punished by an additional and consecutive term of imprisonment in the state prison for 5, 6, or 10 years.

(c) Notwithstanding Section 1385 or any other provisions of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section.

(d) Notwithstanding the limitation in subdivision (a) relating to being an element of the offense, the additional term provided by this section shall be imposed for any violation of Section 245 if a firearm is used, or for murder if the killing is perpetrated by means of shooting a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict great bodily injury or death.

(e) When a person is found to have personally used a firearm, an assault weapon, a machinegun, or a .50 BMG rifle, in the commission of a felony or attempted felony as provided in this section and the firearm, assault weapon, machinegun, or a .50 BMG rifle, is owned by that person, the court shall order that the firearm be deemed a nuisance and disposed of in the manner provided in Sections 18000 and 18005.

(f) For purposes of imposing an enhancement under Section 1170.1, the enhancements under this section shall count as one, single enhancement.

<< CA ST § 12022.53 >>

12022.53. (a) This section applies to the following felonies:

(1) Section 187 (murder).

(2) Section 203 or 205 (mayhem).

(3) Section 207, 209, or 209.5 (kidnapping).

(4) Section 211 (robbery).

(5) Section 215 (carjacking).

(6) Section 220 (assault with intent to commit a specified felony).

(7) Subdivision (d) of Section 245 (assault with a firearm on a peace officer or firefighter).

(8) Section 261 or 262 (rape).

(9) Section 264.1 (rape or sexual penetration in concert).

(10) Section 286 (sodomy).

(11) Section 288 or 288.5 (lewd act on a child).

(12) Section 288a (oral copulation).

(13) Section 289 (sexual penetration).

(14) Section 4500 (assault by a life prisoner).

(15) Section 4501 (assault by a prisoner).

(16) Section 4503 (holding a hostage by a prisoner).

(17) Any felony punishable by death or imprisonment in the state prison for life.

(18) Any attempt to commit a crime listed in this subdivision other than an assault.

(b) Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply.

(c) Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally and intentionally discharges a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 20 years.

(d) Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), Section 246, or subdivision (c) or (d) of Section 26100, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in Section 12022.7, or death, to any person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life.

(e)(1) The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if both of the following are pled and proved:

(A) The person violated subdivision (b) of Section 186.22.

(B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d).

(2) An enhancement for participation in a criminal street gang pursuant to Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1 shall not be imposed on a person in addition to an enhancement imposed pursuant to this subdivision, unless the person personally used or personally discharged a firearm in the commission of the offense.

(f) Only one additional term of imprisonment under this section shall be imposed per person for each crime. If more than one enhancement per person is found true under this section, the court shall impose upon that person the enhancement that provides the longest term of imprisonment. An enhancement involving a firearm specified in Section 12021.5, 12022, 12022.3, 12022.4, 12022.5, or 12022.55 shall not be imposed on a person in addition to an enhancement imposed pursuant to this section. An enhancement for great bodily injury as defined in Section 12022.7, 12022.8, or 12022.9 shall not be imposed on a person in addition to an enhancement imposed pursuant to subdivision (d).

(g) Notwithstanding any other provision of law, probation shall not be granted to, nor shall the execution or imposition of sentence be suspended for, any person found to come within the provisions of this section.

(h) Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section.

(i) The total amount of credits awarded pursuant to Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 or pursuant to Section 4019 or any other provision of law shall not exceed 15 percent of the total term of imprisonment imposed on a defendant upon whom a sentence is imposed pursuant to this section.

(j) For the penalties in this section to apply, the existence of any fact required under subdivision (b), (c), or (d) shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact. When an enhancement specified in this section has been admitted or found to be true, the court shall impose punishment for that enhancement pursuant to this section rather than imposing punishment authorized under any other provision of law, unless another enhancement provides for a greater penalty or a longer term of imprisonment.

(k) When a person is found to have used or discharged a firearm in the commission of an offense that includes an allegation pursuant to this section and the firearm is owned by that person, a coparticipant, or a cocospirator, the court shall order that the firearm be deemed a nuisance and disposed of in the manner provided in Sections 18000 and 18005.

(l) The enhancements specified in this section shall not apply to the lawful use or discharge of a firearm by a public officer, as provided in Section 196, or by any person in lawful self-defense, lawful defense of another, or lawful defense of property, as provided in Sections 197, 198, and 198.5.

<< CA ST § 12022.55 >>

12022.55. Notwithstanding Section 12022.5, any person who, with the intent to inflict great bodily injury or death, inflicts great bodily injury, as defined in Section 12022.7, or causes the death of a person, other than an occupant of a motor vehicle, as a result of discharging a firearm from a motor vehicle in the commission of a felony or attempted felony, shall be punished by an additional and consecutive term of imprisonment in the state prison for 5, 6, or 10 years.

<< CA ST § 12022.6 >>

12022.6. (a) When any person takes, damages, or destroys any property in the commission or attempted commission of a felony, with the intent to cause that taking, damage, or destruction, the court shall impose an additional term as follows:

(1) If the loss exceeds sixty-five thousand dollars ($65,000), the court, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted, shall impose an additional term of one year.

(2) If the loss exceeds two hundred thousand dollars ($200,000), the court, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted, shall impose an additional term of two years.

(3) If the loss exceeds one million three hundred thousand dollars ($1,300,000), the court, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted, shall impose an additional term of three years.

(4) If the loss exceeds three million two hundred thousand dollars ($3,200,000), the court, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted, shall impose an additional term of four years.

(b) In any accusatory pleading involving multiple charges of taking, damage, or destruction, the additional terms provided in this section may be imposed if the aggregate losses to the victims from all felonies exceed the amounts specified in this section and arise from a common scheme or plan. All pleadings under this section shall remain subject to the rules of joinder and severance stated in Section 954.

(c) The additional terms provided in this section shall not be imposed unless the facts of the taking, damage, or destruction in excess of the amounts provided in this section are charged in the accusatory pleading and admitted or found to be true by the trier of fact.

(d) This section applies to, but is not limited to, property taken, damaged, or destroyed in violation of Section 502 or subdivision (b) of Section 502.7. This section shall also apply to applicable prosecutions for a violation of Section 350, 653h, 653s, or 653w.

(e) For the purposes of this section, the term "loss" has the following meanings:

(1) When counterfeit items of computer software are manufactured or possessed for sale, the "loss" from the counterfeiting of those items shall be equivalent to the retail price or fair market value of the true items that are counterfeited.

(2) When counterfeited but unassembled components of computer software packages are recovered, including, but not limited to, counterfeited computer diskettes, instruction manuals, or licensing envelopes, the "loss" from the counterfeiting of those components of computer software packages shall be equivalent to the retail price or fair market value of the number of completed computer software packages that could have been made from those components.

(f) It is the intent of the Legislature that the provisions of this section be reviewed within 10 years to consider the effects of inflation on the additional terms imposed. For that reason this section shall remain in effect only until January 1, 2018, and as of that date is repealed unless a later enacted statute, which is enacted before January 1, 2018, deletes or extends that date.

<< CA ST § 12022.7 >>

12022.7. (a) Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years.

(b) Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony which causes the victim to become comatose due to brain injury or to suffer paralysis of a permanent nature, shall be punished by an additional and consecutive term of imprisonment in the state prison for five years. As used in this subdivision, "paralysis" means a major or complete loss of motor function resulting from injury to the nervous system or to a muscular mechanism.

(c) Any person who personally inflicts great bodily injury on a person who is 70 years of age or older, other than an accomplice, in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for five years.

(d) Any person who personally inflicts great bodily injury on a child under the age of five years in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for four, five, or six years.

(e) Any person who personally inflicts great bodily injury under circumstances involving domestic violence in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three, four, or five years. As used in this subdivision, "domestic violence" has the meaning provided in subdivision (b) of Section 13700.

(f) As used in this section, "great bodily injury" means a significant or substantial physical injury.

(g) This section shall not apply to murder or manslaughter or a violation of Section 451 or 452. Subdivisions (a), (b), (c), and (d) shall not apply if infliction of great bodily injury is an element of the offense.

(h) The court shall impose the additional terms of imprisonment under either subdivision (a), (b), (c), or (d), but may not impose more than one of those terms for the same offense.

<< CA ST § 12022.75 >>

12022.75. (a) Except as provided in subdivision (b), any person who, for the purpose of committing a felony, administers by injection, inhalation, ingestion, or any other means, any controlled substance listed in Section 11054, 11055, 11056, 11057, or 11058 of the Health and Safety Code, against the victim's will by means of force, violence, or fear of immediate and unlawful

bodily injury to the victim or another person, shall, in addition and consecutive to the penalty provided for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of three years.

(b)(1) Any person who, in the commission or attempted commission of any offense specified in paragraph (2), administers any controlled substance listed in Section 11054, 11055, 11056, 11057, or 11058 of the Health and Safety Code to the victim shall be punished by an additional and consecutive term of imprisonment in the state prison for five years.

(2) This subdivision shall apply to the following offenses:

(A) Rape, in violation of paragraph (3) or (4) of subdivision (a) of Section 261.

(B) Sodomy, in violation of subdivision (f) or (i) of Section 286.

(C) Oral copulation, in violation of subdivision (f) or (i) of Section 288a.

(D) Sexual penetration, in violation of subdivision (d) or (e) of Section 289.

(E) Any offense specified in subdivision (c) of Section 667.61.


<< CA ST § 12022.8 >>

12022.8. Any person who inflicts great bodily injury, as defined in Section 12022.7, on any victim in a violation of Section 220 involving a specified sexual offense, or a violation or attempted violation of paragraph (2), (3), or (6) of subdivision (a) of Section 261, paragraph (1) or (4) of subdivision (a) of Section 262, Section 264.1, subdivision (b) of Section 288, subdivision (a) of Section 289, or sodomy or oral copulation by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person as provided in Section 286 or 288a shall receive a five-year enhancement for each violation in addition to the sentence provided for the felony conviction.


<< CA ST § 12022.85 >>

12022.85. (a) Any person who violates one or more of the offenses listed in subdivision (b) with knowledge that he or she has acquired immune deficiency syndrome (AIDS) or with the knowledge that he or she carries antibodies of the human immunodeficiency virus at the time of the commission of those offenses, shall receive a three-year enhancement for each violation in addition to the sentence provided under those sections.

(b) Subdivision (a) applies to the following crimes:

(1) Rape in violation of Section 261.

(2) Unlawful intercourse with a person under 18 years of age in violation of Section 261.5.

(3) Rape of a spouse in violation of Section 262.

(4) Sodomy in violation of Section 286.

(5) Oral copulation in violation of Section 288a.

(c) For purposes of proving the knowledge requirement of this section, the prosecuting attorney may use test results received under subdivision (c) of Section 1202.1 or subdivision (g) of Section 1202.6.

<< CA ST § 12022.9 >>

12022.9. Any person who, during the commission of a felony or attempted felony, knows or reasonably should know that the victim is pregnant, and who, with intent to inflict injury, and without the consent of the woman, personally inflicts injury upon a pregnant woman that results in the termination of the pregnancy shall be punished by an additional and consecutive term of imprisonment in the state prison for five years. The additional term provided in this subdivision shall not be imposed unless the fact of that injury is charged in the accusatory pleading and admitted or found to be true by the trier of fact.

Nothing in this section shall be construed as affecting the applicability of subdivision (a) of Section 187.

<< CA ST § 12022.95 >>

12022.95. Any person convicted of a violation of Section 273a, who under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or injury that results in death, or having the care or custody of any child, under circumstances likely to produce great bodily harm or death, willfully causes or permits that child to be injured or harmed, and that injury or harm results in death, shall receive a four-year enhancement for each violation, in addition to the sentence provided for that conviction. Nothing in this paragraph shall be construed as affecting the applicability of subdivision (a) of Section 187 or Section 192. This section shall not apply unless the allegation is included within an accusatory pleading and admitted by the defendant or found to be true by the trier of fact.

SEC. 6. Part 6 (commencing with Section 16000) is added to the Penal Code, to read:

pt. 6 pr. § 16000

PART 6. CONTROL OF DEADLY WEAPONS

pt. 6 t. 1 pr. § 16000

TITLE 1. PRELIMINARY PROVISIONS

pt. 6 t. 1 d. 1 pr. § 16000

DIVISION 1. GENERAL PROVISIONS

<< CA ST § 16000 >>

16000. This act recodifies the provisions of former Title 2 (commencing with Section 12000) of Part 4, which was entitled "Control of Deadly Weapons." The act shall be known and may be cited as the "Deadly Weapons Recodification Act of 2010."

<< CA ST § 16005 >>

16005. Nothing in the Deadly Weapons Recodification Act of 2010 is intended to substantively change the law relating to deadly weapons. The act is intended to be entirely nonsubstantive in effect. Every provision of this part, of Title 2 (commencing with Section 12001) of Part 4, and every other provision of this act, including, without limitation, every cross-reference in every provision of the act, shall be interpreted consistent with the nonsubstantive intent of the act.

<< CA ST § 16010 >>

16010. (a) A provision of this part or of Title 2 (commencing with Section 12001) of Part 4, or any other provision of the Deadly Weapons Recodification Act of 2010, insofar as it is substantially the same as a previously existing provision relating to the same subject matter, shall be considered as a restatement and continuation thereof and not as a new enactment.

(b) A reference in a statute to a previously existing provision that is restated and continued in this part or in Title 2 (commencing with Section 12001) of Part 4, or in any other provision of the Deadly Weapons Recodification Act of 2010, shall, unless a contrary intent appears, be deemed a reference to the restatement and continuation.

(c) A reference in a statute to a provision of this part or of Title 2 (commencing with Section 12001) of Part 4, or any other provision of the Deadly Weapons Recodification Act of 2010, which is substantially the same as a previously existing provision, shall, unless a contrary intent appears, be deemed to include a reference to the previously existing provision.

<< CA ST § 16015 >>

16015. If a previously existing provision is restated and continued in this part, or in Title 2 (commencing with Section 12001) of Part 4, or in any other provision of the Deadly Weapons Recodification Act of 2010, a conviction under that previously existing provision shall, unless a contrary intent appears, be treated as a prior conviction under the restatement and continuation of that provision.

<< CA ST § 16020 >>

16020. (a) A judicial decision interpreting a previously existing provision is relevant in interpreting any provision of this part, of Title 2 (commencing with Section 12001) of Part 4, or any other provision of the Deadly Weapons Recodification Act of 2010, which restates and continues that previously existing provision.

(b) However, in enacting the Deadly Weapons Recodification Act of 2010, the Legislature has not evaluated the correctness of any judicial decision interpreting a provision affected by the act.

(c) The Deadly Weapons Recodification Act of 2010 is not intended to, and does not, reflect any assessment of any judicial decision interpreting any provision affected by the act.

<< CA ST § 16025 >>

16025. (a) A judicial decision determining the constitutionality of a previously existing provision is relevant in determining the constitutionality of any provision of this part, of Title 2 (commencing with Section 12001) of Part 4, or any other provision of the Deadly Weapons Recodification Act of 2010, which restates and continues that previously existing provision.

(b) However, in enacting the Deadly Weapons Recodification Act of 2010, the Legislature has not evaluated the constitutionality of any provision affected by the act, or the correctness of any judicial decision determining the constitutionality of any provision affected by the act.

(c) The Deadly Weapons Recodification Act of 2010 is not intended to, and does not, reflect any determination of the constitutionality of any provision affected by the act.

pt. 6 t. 1 d. 2 pr. § 16100

DIVISION 2. DEFINITIONS

<< CA ST § 16100 >>

16100. Use of the term ".50 BMG cartridge" is governed by Section 30525.

<< CA ST § 16110 >>

16110. Use of the term ".50 BMG rifle" is governed by Section 30530.

<< CA ST § 16120 >>

16120. As used in this part, "abuse" means any of the following:

(a) Intentionally or recklessly to cause or attempt to cause bodily injury.

(b) Sexual assault.

(c) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another.

(d) To molest, attack, strike, stalk, destroy personal property, or violate the terms of a domestic violence protective order issued pursuant to Part 4 (commencing with Section 6300) of Division 10 of the Family Code.

<< CA ST § 16130 >>

16130. As used in Section 26915, "agent" means an employee of the licensee.

<< CA ST § 16140 >>

16140. As used in this part, "air gauge knife" means a device that appears to be an air gauge but has concealed within it a pointed, metallic shaft that is designed to be a stabbing instrument which is exposed by mechanical action or gravity which locks into place when extended.

<< CA ST § 16150 >>

16150. (a) As used in Section 30300, "ammunition" means handgun ammunition as defined in Section 16650.

(b) As used in subdivision (a) of Section 30305 and in Section 30306, "ammunition" includes, but is not limited to, any bullet, cartridge, magazine, clip, speed loader, autoloader, or projectile capable of being fired from a firearm with a deadly consequence. "Ammunition" does not include blanks.

<< CA ST § 16160 >>

16160. As used in this part, "antique cannon" means any cannon manufactured before January 1, 1899, which has been rendered incapable of firing or for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.

<< CA ST § 16170 >>

16170. (a) As used in Sections 30515 and 30530, "antique firearm" means any firearm manufactured before January 1, 1899.

(b) As used in Section 16520, Section 16650, subdivision (a) of Section 23630, paragraph (1) of subdivision (b) of Section 27505, and subdivision (a) of Section 31615, "antique firearm" has the same meaning as in Section 921(a)(16) of Title 18 of the United States Code.

(c) As used in Section 17700, "antique firearm" means either of the following:

(1) Any firearm not designed or redesigned for using rimfire or conventional center fire ignition with fixed ammunition and manufactured in or before 1898. This includes any matchlock, flintlock, percussion cap, or similar type of ignition system or replica thereof, whether actually manufactured before or after the year 1898.

(2) Any firearm using fixed ammunition manufactured in or before 1898, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.

<< CA ST § 16180 >>

16180. As used in this part, "antique rifle" means a firearm conforming to the definition of an "antique firearm" in Section 479.11 of Title 27 of the Code of Federal Regulations.

<< CA ST § 16190 >>

16190. As used in Article 2 (commencing with Section 26800) of Chapter 2 of Division 6 of Title 4, and in Article 1 (commencing with Section 27500) of Chapter 4 of Division 6 of Title 4, "application to purchase" means either of the following:

(a) The initial completion of the register by the purchaser, transferee, or person being loaned a firearm, as required by Section 28210.

(b) The initial completion and transmission to the Department of Justice of the record of electronic or telephonic transfer by the dealer on the purchaser, transferee, or person being loaned a firearm, as required by Section 28215.

<< CA ST § 16200 >>

16200. Use of the term "assault weapon" is governed by Sections 30510 and 30515.

<< CA ST § 16220 >>

16220. As used in this part, "ballistic knife" means a device that propels a knifelike blade as a projectile by means of a coil spring, elastic material, or compressed gas. Ballistic knife does not include any device that propels an arrow or a bolt by means of any common bow, compound bow, crossbow, or underwater speargun.

<< CA ST § 16230 >>

16230. As used in this part, "ballistics identification system" includes, but is not limited to, any automated image analysis system that is capable of storing firearm ballistic markings and tracing those markings to the firearm that produced them.

<< CA ST § 16240 >>

16240. As used in this part, "basic firearms safety certificate" means a certificate issued before January 1, 2003, by the Department of Justice pursuant to former Article 8 (commencing with Section 12800) of Chapter 6 of Title 2 of Part 4, as that article read at any time from when it became operative on January 1, 1992, to when it was repealed on January 1, 2003.

<< CA ST § 16250 >>

16250. As used in this part, "BB device" means any instrument that expels a projectile, such as a BB or a pellet, not exceeding 6mm caliber, through the force of air pressure, gas pressure, or spring action, or any spot marker gun.

<< CA ST § 16260 >>

16260. As used in this part, "belt buckle knife" is a knife that is made an integral part of a belt buckle and consists of a blade with a length of at least two and one-half inches.

<< CA ST § 16270 >>

16270. As used in this part, "blowgun" means a hollow tube designed and intended to be used as a tube through which a dart is propelled by the force of the breath of the user.

<< CA ST § 16280 >>

16280. As used in this part, "blowgun ammunition" means a dart designed and intended for use in a blowgun.

<< CA ST § 16288 >>

16288. As used in Section 31360, "body armor" means any bullet-resistant material intended to provide ballistic and trauma protection for the person wearing the body armor.

<< CA ST § 16290 >>

16290. As used in this part, "body vest" or "body shield" means any bullet-resistant material intended to provide ballistic and trauma protection for the wearer or holder.

<< CA ST § 16300 >>

16300. As used in this part, "bona fide evidence of identity" or "bona fide evidence of majority and identity" means a document issued by a federal, state, county, or municipal government, or subdivision or agency thereof, including, but not limited to, a

motor vehicle operator's license, state identification card, identification card issued to a member of the armed forces, or other form of identification that bears the name, date of birth, description, and picture of the person.

<< CA ST § 16310 >>

16310. As used in this part, "boobytrap" means any concealed or camouflaged device designed to cause great bodily injury when triggered by an action of any unsuspecting person coming across the device. Boobytraps may include, but are not limited to, guns, ammunition, or explosive devices attached to trip wires or other triggering mechanisms, sharpened stakes, and lines or wire with hooks attached.

<< CA ST § 16320 >>

16320. (a) As used in this part, "camouflaging firearm container" means a container that meets all of the following criteria:

(1) It is designed and intended to enclose a firearm.

(2) It is designed and intended to allow the firing of the enclosed firearm by external controls while the firearm is in the container.

(3) It is not readily recognizable as containing a firearm.

(b) "Camouflaging firearm container" does not include any camouflaging covering used while engaged in lawful hunting or while going to or returning from a lawful hunting expedition.

<< CA ST § 16330 >>

16330. As used in this part, "cane gun" means any firearm mounted or enclosed in a stick, staff, rod, crutch, or similar device, designed to be, or capable of being used as, an aid in walking, if the firearm may be fired while mounted or enclosed therein.

<< CA ST § 16340 >>

16340. As used in this part, "cane sword" means a cane, swagger stick, stick, staff, rod, pole, umbrella, or similar device, having concealed within it a blade that may be used as a sword or stiletto.

<< CA ST § 16350 >>

16350. As used in Section 30515, "capacity to accept more than 10 rounds" means capable of accommodating more than 10 rounds. The term does not apply to a feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds.

<< CA ST § 16360 >>

16360. As used in this part, "CCW" means "carry concealed weapons."

<< CA ST § 16370 >>

16370. As used in Sections 31610 to 31700, inclusive, "certified instructor" or "DOJ Certified Instructor" means a person designated as a handgun safety instructor by the Department of Justice pursuant to subdivision (a) of Section 31635.

<< CA ST § 16380 >>

16380. As used in this part, "chamber load indicator" means a device that plainly indicates that a cartridge is in the firing chamber. A device satisfies this definition if it is readily visible, has incorporated or adjacent explanatory text or graphics, or both, and is designed and intended to indicate to a reasonably foreseeable adult user of the pistol, without requiring the user to refer to a user's manual or any other resource other than the pistol itself, whether a cartridge is in the firing chamber.

<< CA ST § 16400 >>

16400. As used in this part, "clear evidence of the person's identity and age" means either of the following:

(a) A valid California driver's license.

(b) A valid California identification card issued by the Department of Motor Vehicles.

<< CA ST § 16405 >>

16405. As used in this part, "composite knuckles" means any device or instrument made wholly or partially of composite materials, other than a medically prescribed prosthetic, that is not metal knuckles, that is worn for purposes of offense or defense in or on the hand, and that either protects the wearer's hand while striking a blow or increases the force of impact from the blow or injury to the individual receiving the blow.

<< CA ST § 16410 >>

16410. As used in this part, "consultant-evaluator" means a consultant or evaluator who, in the course of that person's profession is loaned firearms from a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, for research or evaluation, and has a current certificate of eligibility issued pursuant to Section 26710.

<< CA ST § 16420 >>

16420. Use of the term "dagger" is governed by Section 16470.

<< CA ST § 16430 >>

16430. As used in Division 4 (commencing with Section 18250) of Title 2, "deadly weapon" means any weapon, the possession or concealed carrying of which is prohibited by any provision listed in Section 16590.

<< CA ST § 16440 >>

16440. Use of the term "dealer" is governed by Section 26700.

<< CA ST § 16450 >>

16450. As used in Sections 31610 to 31700, inclusive, in Chapter 2 (commencing with Section 29030) of Division 7 of Title 4, and in Article 3 (commencing with Section 30345) of Chapter 1 of Division 10 of Title 4, "department" means the Department of Justice.

<< CA ST § 16460 >>

16460. (a) As used in Sections 16510, 16520, and 16780, and in Chapter 1 (commencing with Section 18710) of Division 5 of Title 2, "destructive device" includes any of the following weapons:

(1) Any projectile containing any explosive or incendiary material or any other chemical substance, including, but not limited to, that which is commonly known as tracer or incendiary ammunition, except tracer ammunition manufactured for use in shotguns.

(2) Any bomb, grenade, explosive missile, or similar device or any launching device therefor.

(3) Any weapon of a caliber greater than 0.60 caliber which fires fixed ammunition, or any ammunition therefor, other than a shotgun (smooth or rifled bore) conforming to the definition of a "destructive device" found in subsection (b) of Section 479.11 of Title 27 of the Code of Federal Regulations, shotgun ammunition (single projectile or shot), antique rifle, or an antique cannon.

(4) Any rocket, rocket-propelled projectile, or similar device of a diameter greater than 0.60 inch, or any launching device therefor, and any rocket, rocket-propelled projectile, or similar device containing any explosive or incendiary material or any other chemical substance, other than the propellant for that device, except those devices as are designed primarily for emergency or distress signaling purposes.

(5) Any breakable container that contains a flammable liquid with a flashpoint of 150 degrees Fahrenheit or less and has a wick or similar device capable of being ignited, other than a device which is commercially manufactured primarily for the purpose of illumination.

(6) Any sealed device containing dry ice ($CO_2$) or other chemically reactive substances assembled for the purpose of causing an explosion by a chemical reaction.

(b) A bullet containing or carrying an explosive agent is not a destructive device as that term is used in subdivision (a).

<< CA ST § 16470 >>

16470. As used in this part, "dirk" or "dagger" means a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death. A nonlocking folding knife, a folding knife that is not prohibited by Section 21510, or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed and locked into position.

<< CA ST § 16480 >>

16480. Use of the term "DOJ Certified Instructor" is governed by Section 16370.

<< CA ST § 16490 >>

16490. As used in this part, "domestic violence" means abuse perpetrated against any of the following persons:

(a) A spouse or former spouse.

(b) A cohabitant or former cohabitant, as defined in Section 6209 of the Family Code.

(c) A person with whom the respondent is having or has had a dating or engagement relationship.

(d) A person with whom the respondent has had a child, where the presumption applies that the male parent is the father of the child of the female parent under the Uniform Parentage Act (Part 3 (commencing with Section 7600) of Division 12 of the Family Code).

(e) A child of a party or a child who is the subject of an action under the Uniform Parentage Act, where the presumption applies that the male parent is the father of the child to be protected.

(f) Any other person related by consanguinity or affinity within the second degree.


<< CA ST § 16500 >>

16500. Use of the phrase "drop safety requirement for handguns" is governed by Section 31900.


<< CA ST § 16510 >>

16510. As used in subdivision (a) of Section 16460 and Chapter 1 (commencing with Section 18710) of Division 5 of Title 2, "explosive" means any substance, or combination of substances, the primary or common purpose of which is detonation or rapid combustion, and which is capable of a relatively instantaneous or rapid release of gas and heat, or any substance, the primary purpose of which, when combined with others, is to form a substance capable of a relatively instantaneous or rapid release of gas and heat. "Explosive" includes, but is not limited to, any explosive as defined in Section 841 of Title 18 of the United States Code and published pursuant to Section 555.23 of Title 27 of the Code of Federal Regulations, and any of the following:

(a) Dynamite, nitroglycerine, picric acid, lead azide, fulminate of mercury, black powder, smokeless powder, propellant explosives, detonating primers, blasting caps, or commercial boosters.

(b) Substances determined to be division 1.1, 1.2, 1.3, or 1.6 explosives as classified by the United States Department of Transportation.

(c) Nitro carbo nitrate substances (blasting agent) classified as division 1.5 explosives by the United States Department of Transportation.

(d) Any material designated as an explosive by the State Fire Marshal. The designation shall be made pursuant to the classification standards established by the United States Department of Transportation. The State Fire Marshal shall adopt regulations in accordance with the Government Code to establish procedures for the classification and designation of explosive materials or explosive devices that are not under the jurisdiction of the United States Department of Transportation pursuant to provisions of Section 841 of Title 18 of the United States Code and published pursuant to Section 555.23 of Title 27 of the Code of Federal Regulations that define explosives.

(e) Certain division 1.4 explosives as designated by the United States Department of Transportation when listed in regulations adopted by the State Fire Marshal.

(f) As used in Section 16460 and Chapter 1 (commencing with Section 18710) of Division 5 of Title 2, "explosive" does not include any destructive device, nor does it include ammunition or small arms primers manufactured for use in shotguns, rifles, and pistols.

<< CA ST § 16520 >>

16520. (a) As used in this part, "firearm" means any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion.

(b) As used in the following provisions, "firearm" includes the frame or receiver of the weapon:

(1) Section 16550.

(2) Section 16730.

(3) Section 16960.

(4) Section 16990.

(5) Section 17070.

(6) Section 17310.

(7) Sections 26500 to 26588, inclusive.

(8) Sections 26600 to 27140, inclusive.

(9) Sections 27400 to 28000, inclusive.

(10) Section 28100.

(11) Sections 28400 to 28415, inclusive.

(12) Sections 29010 to 29150, inclusive.

(13) Sections 29610 to 29750, inclusive.

(14) Sections 29800 to 29905, inclusive.

(15) Sections 30150 to 30165, inclusive.

(16) Section 31615.

(17) Sections 31705 to 31830, inclusive.

(18) Sections 34355 to 34370, inclusive.

(19) Sections 8100, 8101, and 8103 of the Welfare and Institutions Code.

(c) As used in the following provisions, "firearm" also includes any rocket, rocket propelled projectile launcher, or similar device containing any explosive or incendiary material whether or not the device is designed for emergency or distress signaling purposes:

(1) Section 16750.

(2) Subdivision (b) of Section 16840.

(3) Section 25400.

(4) Sections 25850 to 26025, inclusive.

(5) Subdivisions (a), (b), and (c) of Section 26030.

(6) Sections 26035 to 26055, inclusive.

(d) As used in the following provisions, "firearm" does not include an unloaded antique firearm:

(1) Subdivisions (a) and (c) of Section 16730.

(2) Section 16550.

(3) Section 16960.

(4) Section 17310.

(5) Sections 26500 to 26588, inclusive.

(6) Sections 26700 to 26915, inclusive.

(7) Section 27510.

(8) Section 27530.

(9) Section 27540.

(10) Section 27545.

(11) Sections 27555 to 27570, inclusive.

(12) Sections 29010 to 29150, inclusive.

(e) As used in Sections 34005 and 34010, "firearm" does not include a destructive device.

(f) As used in Sections 17280 and 24680, "firearm" has the same meaning as in Section 922 of Title 18 of the United States Code.

(g) As used in Sections 29010 to 29150, inclusive, "firearm" includes the unfinished frame or receiver of a weapon that can be readily converted to the functional condition of a finished frame or receiver.

<< CA ST § 16530 >>

16530. (a) As used in this part, the terms "firearm capable of being concealed upon the person," "pistol," and "revolver" apply to and include any device designed to be used as a weapon, from which is expelled a projectile by the force of any explosion, or other form of combustion, and that has a barrel less than 16 inches in length. These terms also include any device that has a barrel 16 inches or more in length which is designed to be interchanged with a barrel less than 16 inches in length.

(b) Nothing shall prevent a device defined as a "firearm capable of being concealed upon the person," "pistol," or "revolver" from also being found to be a short-barreled rifle or a short-barreled shotgun.

<< CA ST § 16540 >>

16540. As used in Division 2 (commencing with Section 23620) of Title 4, "firearm safety device" means a device other than a gun safe that locks and is designed to prevent children and unauthorized users from firing a firearm. The device may be installed on a firearm, be incorporated into the design of the firearm, or prevent access to the firearm.

<< CA ST § 16550 >>

16550. As used in this part, "firearm transaction record" is a record containing the same information referred to in subdivision (a) of Section 478.124, Section 478.124a, and subdivision (e) of Section 478.125 of Title 27 of the Code of Federal Regulations.

<< CA ST § 16560 >>

16560. Use of the phrase "firing requirement for handguns" is governed by Section 31905.

<< CA ST § 16570 >>

16570. As used in this part, "flechette dart" means a dart, capable of being fired from a firearm, that measures approximately one inch in length, with tail fins that take up approximately five-sixteenths of an inch of the body.

<< CA ST § 16575 >>

16575. (a) Except as stated in subdivision (c), the following provisions are continuations of provisions that were included in former Article 4 (commencing with Section 12070) of Chapter 1 of Title 2 of Part 4, entitled "Licenses to Sell Firearms," when that article was repealed by the Deadly Weapons Recodification Act of 2010:

(1) Section 16130.

(2) Subdivision (b) of Section 16170, to the extent that it continues former Sections 12078 and 12085, as those sections read when they were repealed by the Deadly Weapons Recodification Act of 2010.

(3) Section 16230.

(4) Section 16400.

(5) Section 16450, to the extent that it continues subdivision (a) of former Section 12086, as that subdivision read when it was repealed by the Deadly Weapons Recodification Act of 2010.

(6) Subdivisions (b) and (d) of Section 16520, to the extent that they continue subdivision (e) of former Section 12085, as that subdivision read when it was repealed by the Deadly Weapons Recodification Act of 2010.

(7) Subdivision (g) of Section 16520.

(8) Section 16550.

(9) Section 16620.

(10) Section 16720.

(11) Section 16730.

(12) Section 16740, to the extent that it continues subdivision (b) of former Section 12079, as that subdivision read when it was repealed by the Deadly Weapons Recodification Act of 2010.

(13) Section 16800.

(14) Section 16810.

(15) Section 16960.

(16) Section 16990.

(17) Section 17110.

(18) Section 17310.

(19) Sections 26500 to 26588, inclusive.

(20) Sections 26600 to 29150, inclusive.

(21) Chapter 2 (commencing with Section 29500) of Division 8 of Title 4.

(22) Section 30105.

(23) Sections 30150 to 30165, inclusive.

(24) Sections 31705 to 31830, inclusive.

(25) Section 32315.

(26) Section 34205.

(27) Sections 34350 to 34370, inclusive.

(b) Except as stated in subdivision (c), the provisions listed in subdivision (a) may be referred to as "former Article 4 of Chapter 1 provisions."

(c) Subdivision (a) does not include any provision that was first codified in one of the specified numerical ranges after the effective date of the Deadly Weapons Recodification Act of 2010.

<< CA ST § 16580 >>

16580. (a) Except as stated in subdivision (c), the following provisions are continuations of provisions that were included in former Chapter 1 (commencing with Section 12000) of Title 2 of Part 4, entitled "Firearms," when that chapter was repealed by the Deadly Weapons Recodification Act of 2010:

(1) Sections 12001 to 12022.95, inclusive.

(2) Sections 16120 to 16140, inclusive.

(3) Subdivision (b) of Section 16170, to the extent it continues former Sections 12001, 12060, 12078, 12085, and 12088.8, as those sections read when they were repealed by the Deadly Weapons Recodification Act of 2010.

(4) Subdivision (c) of Section 16170.

(5) Section 16190.

(6) Sections 16220 to 16240, inclusive.

(7) Section 16250, to the extent it continues former Section 12001, as that section read when it was repealed by the Deadly Weapons Recodification Act of 2010.

(8) Section 16260.

(9) Sections 16320 to 16340, inclusive.

(10) Section 16360.

(11) Sections 16400 to 16410, inclusive.

(12) Section 16430.

(13) Section 16450, to the extent it continues former Sections 12060 and 12086, as those sections read when they were repealed by the Deadly Weapons Recodification Act of 2010.

(14) Subdivision (b) of Section 16460.

(15) Section 16470.

(16) Section 16490.

(17) Subdivision (a) of Section 16520, to the extent it continues former Section 12001, as that section read when it was repealed by the Deadly Weapons Recodification Act of 2010.

(18) Subdivisions (b) to (g), inclusive, of Section 16520.

(19) Sections 16530 to 16550, inclusive.

(20) Section 16570.

(21) Sections 16600 to 16640, inclusive.

(22) Section 16650, to the extent it continues former Section 12060, as that section read when it was repealed by the Deadly Weapons Recodification Act of 2010.

(23) Section 16662, to the extent it continues former Section 12060, as that section read when it was repealed by the Deadly Weapons Recodification Act of 2010.

(24) Sections 16670 to 16690, inclusive.

(25) Sections 16720 to 16760, inclusive.

(26) Sections 16800 and 16810.

(27) Sections 16830 to 16870, inclusive.

(28) Sections 16920 to 16960, inclusive.

(29) Sections 16990 and 17000.

(30) Sections 17020 to 17070, inclusive.

(31) Section 17090, to the extent it continues former Section 12020, as that section read when it was repealed by the Deadly Weapons Recodification Act of 2010.

(32) Section 17110.

(33) Section 17125.

(34) Section 17160.

(35) Sections 17170 to 17200, inclusive.

(36) Sections 17270 to 17290, inclusive.

(37) Sections 17310 and 17315.

(38) Sections 17330 to 17505, inclusive.

(39) Sections 17515 to 18500, inclusive.

(40) Sections 19100 to 19290, inclusive.

(41) Sections 20200 to 21390, inclusive.

(42) Sections 21790 to 22490, inclusive.

(43) Sections 23500 to 30290, inclusive.

(44) Sections 30345 to 30365, inclusive.

(45) Sections 31500 to 31590, inclusive.

(46) Sections 31705 to 31830, inclusive.

(47) Sections 32310 to 32450, inclusive.

(48) Sections 32900 to 33320, inclusive.

(49) Sections 33600 to 34370, inclusive.

(b) Except as stated in subdivision (c), the provisions listed in subdivision (a) may be referred to as "former Chapter 1 provisions."

(c) Subdivision (a) does not include any provision that was first codified in one of the specified numerical ranges after the effective date of the Deadly Weapons Recodification Act of 2010.

<< CA ST § 16585 >>

16585. (a) Except as stated in subdivision (d), the following provisions are continuations of provisions that were included in former Section 12078, as that section read when it was repealed by the Deadly Weapons Recodification Act of 2010:

(1) Subdivision (b) of Section 16170, as it pertains to former Section 12078, as that section read when it was repealed by the Deadly Weapons Recodification Act of 2010.

(2) Section 16720.

(3) Subdivision (a) of Section 16730, as it pertains to former Section 12078, as that section read when it was repealed by the Deadly Weapons Recodification Act of 2010.

(4) Subdivision (b) of Section 16730.

(5) Section 16990.

(6) Sections 26600 to 26615, inclusive.

(7) Sections 26950 to 27140, inclusive.

(8) Sections 27400 to 27415, inclusive.

(9) Subdivision (b) of Section 27505, as it pertains to former Section 12078, as that section read when it was repealed by the Deadly Weapons Recodification Act of 2010.

(10) Sections 27600 to 28000, inclusive.

(11) Sections 28400 to 28415, inclusive.

(12) Sections 30150 to 30165, inclusive.

(13) Sections 31705 to 31830, inclusive.

(14) Sections 34355 to 34370, inclusive.

(b) Except as stated in subdivision (d), the provisions listed in subdivision (a) may be referred to as "former Section 12078 provisions."

(c) Except as stated in subdivision (d), the following provisions are continuations of provisions that were included in subdivision (a) of former Section 12078, as that subdivision read when it was repealed by the Deadly Weapons Recodification Act of 2010:

(1) Sections 26600 to 26615, inclusive.

(2) Section 26950.

(3) Sections 27050 to 27065, inclusive.

(4) Sections 27400 to 27415, inclusive.

(5) Sections 27600 to 27615, inclusive.

(6) Section 27650.

(7) Sections 27850 to 27860, inclusive.

(8) Sections 28400 to 28415, inclusive.

(9) Sections 30150 to 30165, inclusive.

(10) Sections 31705 to 31735, inclusive.

(11) Sections 34355 to 34370, inclusive.

(d) Subdivisions (a) and (c) do not include any provision that was first codified in one of the specified numerical ranges after the effective date of the Deadly Weapons Recodification Act of 2010.

<< CA ST § 16590 >>

16590. As used in this part, "generally prohibited weapon" means any of the following:

(a) An air gauge knife, as prohibited by Section 20310.

(b) Ammunition that contains or consists of a flechette dart, as prohibited by Section 30210.

(c) A ballistic knife, as prohibited by Section 21110.

(d) A belt buckle knife, as prohibited by Section 20410.

(e) A bullet containing or carrying an explosive agent, as prohibited by Section 30210.

(f) A camouflaging firearm container, as prohibited by Section 24310.

(g) A cane gun, as prohibited by Section 24410.

(h) A cane sword, as prohibited by Section 20510.

(i) A concealed dirk or dagger, as prohibited by Section 21310.

(j) A concealed explosive substance, other than fixed ammunition, as prohibited by Section 19100.

(k) A firearm that is not immediately recognizable as a firearm, as prohibited by Section 24510.

(l) A large-capacity magazine, as prohibited by Section 32310.

(m) A leaded cane or an instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot, as prohibited by Section 22210.

(n) A lipstick case knife, as prohibited by Section 20610.

(o) Metal knuckles, as prohibited by Section 21810.

(p) A metal military practice handgrenade or a metal replica handgrenade, as prohibited by Section 19200.

(q) A multiburst trigger activator, as prohibited by Section 32900.

(r) A nunchaku, as prohibited by Section 22010.

(s) A shobi-zue, as prohibited by Section 20710.

(t) A short-barreled rifle or short-barreled shotgun, as prohibited by Section 33215.

(u) A shuriken, as prohibited by Section 22410.

(v) An unconventional pistol, as prohibited by Section 31500.

(w) An undetectable firearm, as prohibited by Section 24610.

(x) A wallet gun, as prohibited by Section 24710.

(y) A writing pen knife, as prohibited by Section 20910.

(z) A zip gun, as prohibited by Section 33600.

<< CA ST § 16600 >>

16600. As used in Chapter 2 (commencing with Section 25100) of Division 4 of Title 4, "great bodily injury" means a significant or substantial physical injury.

<< CA ST § 16610 >>

16610. As used in this part, "gun safe" means a locking container that fully contains and secures one or more firearms, and that meets the standards for gun safes adopted pursuant to Section 23650.

<< CA ST § 16620 >>

16620. As used in this part, "Gun Show Trader" means a person described in Section 26525.

<< CA ST § 16630 >>

16630. As used in this part, "gunsmith" means any person who is licensed as a dealer pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, who is engaged primarily in the business of repairing firearms, or making or fitting special barrels, stocks, or trigger mechanisms to firearms, or the agent or employee of that person.

<< CA ST § 16640 >>

16640. (a) As used in this part, "handgun" means any pistol, revolver, or firearm capable of being concealed upon the person.

(b) Nothing shall prevent a device defined as a "handgun" from also being found to be a short-barreled rifle or a short-barreled shotgun.

<< CA ST § 16650 >>

16650. (a) As used in this part, "handgun ammunition" means ammunition principally for use in pistols, revolvers, and other firearms capable of being concealed upon the person, notwithstanding that the ammunition may also be used in some rifles.

(b) As used in Section 30312 and in Article 3 (commencing with Section 30345) of Chapter 1 of Division 10 of Title 4, "handgun ammunition" does not include either of the following:

(1) Ammunition designed and intended to be used in an antique firearm.

(2) Blanks.

<< CA ST § 16660 >>

16660. As used in this part, "handgun ammunition designed primarily to penetrate metal or armor" means any ammunition, except a shotgun shell or ammunition primarily designed for use in a rifle, that is designed primarily to penetrate a body vest or body shield, and has either of the following characteristics:

(a) Has projectile or projectile core constructed entirely, excluding the presence of traces of other substances, from one or a combination of tungsten alloys, steel, iron, brass, beryllium copper, or depleted uranium, or any equivalent material of similar density or hardness.

(b) Is primarily manufactured or designed, by virtue of its shape, cross-sectional density, or any coating applied thereto, including, but not limited to, ammunition commonly known as "KTW ammunition," to breach or penetrate a body vest or body shield when fired from a pistol, revolver, or other firearm capable of being concealed upon the person.

<< CA ST § 16662 >>

16662. As used in this part, "handgun ammunition vendor" means any person, firm, corporation, dealer, or any other business enterprise that is engaged in the retail sale of any handgun ammunition, or that holds itself out as engaged in the business of selling any handgun ammunition.

<< CA ST § 16670 >>

16670. As used in this part, "handgun safety certificate" means a certificate issued by the Department of Justice pursuant to Sections 31610 to 31700, inclusive, or pursuant to former Article 8 (commencing with Section 12800) of Chapter 6 of Title 2 of Part 4, as that article was operative at any time from January 1, 2003, until it was repealed by the Deadly Weapons Recodification Act of 2010.

<< CA ST § 16680 >>

16680. As used in this part, "hard wooden knuckles" means any device or instrument made wholly or partially of wood or paper products that is not metal knuckles, that is worn for purposes of offense or defense in or on the hand, and that either protects the wearer's hand while striking a blow, or increases the force of impact from the blow or injury to the individual receiving the blow. The composite materials, wood, or paper products contained in the device may help support the hand or fist, provide a shield to protect it, or consist of projections or studs that would contact the individual receiving a blow.

<< CA ST § 16690 >>

16690. As used in Sections 25650 and 26020, Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4, and Article 3 (commencing with Section 25900) of Chapter 3 of Division 5 of Title 4, "honorably retired" includes any peace officer who has qualified for, and has accepted, a service or disability retirement. As used in those provisions, "honorably retired" does not include an officer who has agreed to a service retirement in lieu of termination.

<< CA ST § 16700 >>

16700. (a) As used in this part, "imitation firearm" means any BB device, toy gun, replica of a firearm, or other device that is so substantially similar in coloration and overall appearance to an existing firearm as to lead a reasonable person to perceive that the device is a firearm.

(b) As used in Section 20165, "imitation firearm" does not include any of the following:

(1) A nonfiring collector's replica that is historically significant, and is offered for sale in conjunction with a wall plaque or presentation case.

(2) A BB device.

(3) A device where the entire exterior surface of the device is white, bright red, bright orange, bright yellow, bright green, bright blue, bright pink, or bright purple, either singly or as the predominant color in combination with other colors in any pattern, as provided by federal regulations governing imitation firearms, or where the entire device is constructed of transparent or translucent materials which permits unmistakable observation of the device's complete contents, as provided by federal regulations governing imitation firearms.

<< CA ST § 16720 >>

16720. As used in this part, "immediate family member" means either of the following relationships:

(a) Parent and child.

(b) Grandparent and grandchild.

<< CA ST § 16730 >>

16730. (a) As used in Section 31815 and in Division 6 (commencing with Section 26500) of Title 4, "infrequent" means:

(1) For handguns, less than six transactions per calendar year.

(2) For firearms other than handguns, occasional and without regularity.

(b) As used in Section 27900, the term "infrequent" shall not be construed to prohibit different local chapters of the same nonprofit corporation from conducting auctions or similar events, provided the individual local chapter conducts the auctions or similar events infrequently. It is the intent of the Legislature that different local chapters, representing different localities, be entitled to invoke the exemption created by Section 27900, notwithstanding the frequency with which other chapters of the same nonprofit corporation may conduct auctions or similar events.

(c) As used in this section, "transaction" means a single sale, lease, or transfer of any number of handguns.

<< CA ST § 16740 >>

16740. As used in this part, "large-capacity magazine" means any ammunition feeding device with the capacity to accept more than 10 rounds, but shall not be construed to include any of the following:

(a) A feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds.

(b) A .22 caliber tube ammunition feeding device.

(c) A tubular magazine that is contained in a lever-action firearm.

<< CA ST § 16750 >>

16750. (a) As used in Section 25400, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully owns the firearm or has the permission of the lawful owner or a person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

(b) As used in Article 2 (commencing with Section 25850), Article 3 (commencing with Section 25900), and Article 4 (commencing with Section 26000) of Chapter 3 of Division 5 of Title 4, "lawful possession of the firearm" means that the person who has possession or custody of the firearm either lawfully acquired and lawfully owns the firearm or has the permission of the lawful owner or person who otherwise has apparent authority to possess or have custody of the firearm. A person who takes a firearm without the permission of the lawful owner or without the permission of a person who has lawful custody of the firearm does not have lawful possession of the firearm.

<< CA ST § 16760 >>

16760. As used in this part, a "leaded cane" means a staff, crutch, stick, rod, pole, or similar device, unnaturally weighted with lead.

<< CA ST § 16770 >>

16770. As used in this part, "less lethal ammunition" means any ammunition that satisfies both of the following requirements:

(a) It is designed to be used in any less lethal weapon or any other kind of weapon (including, but not limited to, any firearm, pistol, revolver, shotgun, rifle, or spring, compressed air, or compressed gas weapon).

(b) When used in a less lethal weapon or other weapon, it is designed to immobilize, incapacitate, or stun a human being through the infliction of any less than lethal impairment of physical condition, function, or senses, including physical pain or discomfort.

<< CA ST § 16780 >>

16780. As used in this part:

(a) "Less lethal weapon" means any device that is designed to or that has been converted to expel or propel less lethal ammunition by any action, mechanism, or process for the purpose of incapacitating, immobilizing, or stunning a human being through the infliction of any less than lethal impairment of physical condition, function, or senses, including physical pain or discomfort. It is not necessary that a weapon leave any lasting or permanent incapacitation, discomfort, pain, or other injury or disability in order to qualify as a less lethal weapon.

(b) Less lethal weapon includes the frame or receiver of any weapon described in subdivision (a), but does not include any of the following unless the part or weapon has been converted as described in subdivision (a):

(1) Pistol, revolver, or firearm.

(2) Machinegun.

(3) Rifle or shotgun using fixed ammunition consisting of standard primer and powder and not capable of being concealed upon the person.

(4) A pistol, rifle, or shotgun that is a firearm having a barrel less than 0.18 inches in diameter and that is designed to expel a projectile by any mechanical means or by compressed air or gas.

(5) When used as designed or intended by the manufacturer, any weapon that is commonly regarded as a toy gun, and that as a toy gun is incapable of inflicting any impairment of physical condition, function, or senses.

(6) A destructive device.

(7) A tear gas weapon.

(8) A bow or crossbow designed to shoot arrows.

(9) A device commonly known as a slingshot.

(10) A device designed for the firing of stud cartridges, explosive rivets, or similar industrial ammunition.

(11) A device designed for signaling, illumination, or safety.

(12) An assault weapon.

<< CA ST § 16790 >>

16790. As used in Article 5 (commencing with Section 30900) and Article 7 (commencing with Section 31050) of Chapter 2 of Division 10 of Title 4, "licensed gun dealer" means a person who is licensed pursuant to Sections 26700 to 26915, inclusive, and who has a permit to sell assault weapons or .50 BMG rifles pursuant to Section 31005.

<< CA ST § 16800 >>

16800. As used in this part, "licensed gun show producer" means a person who has been issued a certificate of eligibility by the Department of Justice pursuant to Section 27200. No regulations shall be required to implement this section.

<< CA ST § 16810 >>

16810. As used in Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) of Chapter 2 of Division 6 of Title 4, "licensed premises," "licensee's business premises," or "licensee's place of business" means the building designated in the license.

<< CA ST § 16820 >>

16820. (a) For purposes of the provisions listed in Section 16580, use of the term "licensee" is governed by Section 26700.

(b) For purposes of Chapter 2 (commencing with Section 29030) of Division 7 of Title 4, use of the term "licensee" is governed by Section 29030.

## << CA ST § 16822 >>

16822. Use of the term "licensee's business premises" is governed by Section 16810.

## << CA ST § 16824 >>

16824. Use of the term "licensee's place of business" is governed by Section 16810.

## << CA ST § 16830 >>

16830. As used in this part, a "lipstick case knife" means a knife enclosed within and made an integral part of a lipstick case.

## << CA ST § 16840 >>

16840. (a) As used in Section 25800, a firearm shall be deemed to be "loaded" whenever both the firearm and the unexpended ammunition capable of being discharged from the firearm are in the immediate possession of the same person.

(b) As used in Chapter 2 (commencing with Section 25100) of Division 4 of Title 4, in subparagraph (A) of paragraph (6) of subdivision (c) of Section 25400, and in Sections 25850 to 26055, inclusive,

(1) A firearm shall be deemed to be "loaded" when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm.

(2) Notwithstanding paragraph (1), a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder.

## << CA ST § 16850 >>

16850. As used in Sections 17740, 23925, 25105, 25205, and 25610, and in Article 3 (commencing with Section 25505) of Chapter 2 of Division 5 of Title 4, "locked container" means a secure container that is fully enclosed and locked by a padlock, keylock, combination lock, or similar locking device. The term "locked container" does not include the utility or glove compartment of a motor vehicle.

## << CA ST § 16860 >>

16860. As used in Sections 16850, 25105, and 25205, "locking device" means a device that is designed to prevent a firearm from functioning and, when applied to the firearm, renders the firearm inoperable.

## << CA ST § 16870 >>

16870. As used in this part, "long-gun safe" means a locking container designed to fully contain and secure a rifle or shotgun, which has a locking system consisting of either a mechanical combination lock or an electronic combination lock that has at least 1,000 possible unique combinations consisting of a minimum of three numbers, letters, or symbols per combination, and is not listed on the roster maintained pursuant to Section 23655.

<< CA ST § 16880 >>

16880. (a) As used in this part, "machinegun" means any weapon that shoots, is designed to shoot, or can readily be restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.

(b) The term "machinegun" also includes the frame or receiver of any weapon described in subdivision (a), any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if those parts are in the possession or under the control of a person.

(c) The term "machinegun" also includes any weapon deemed by the federal Bureau of Alcohol, Tobacco, and Firearms as readily convertible to a machinegun under Chapter 53 (commencing with Section 5801) of Title 26 of the United States Code.

<< CA ST § 16890 >>

16890. As used in Section 30515, "magazine" means any ammunition feeding device.

<< CA ST § 16900 >>

16900. As used in this part, "magazine disconnect mechanism" means a mechanism that prevents a semiautomatic pistol that has a detachable magazine from operating to strike the primer of ammunition in the firing chamber when a detachable magazine is not inserted in the semiautomatic pistol.

<< CA ST § 16920 >>

16920. As used in this part, "metal knuckles" means any device or instrument made wholly or partially of metal that is worn for purposes of offense or defense in or on the hand and that either protects the wearer's hand while striking a blow or increases the force of impact from the blow or injury to the individual receiving the blow. The metal contained in the device may help support the hand or fist, provide a shield to protect it, or consist of projections or studs which would contact the individual receiving a blow.

<< CA ST § 16930 >>

16930. As used in this part, a "multiburst trigger activator" means either of the following:

(a) A device designed or redesigned to be attached to a semiautomatic firearm, which allows the firearm to discharge two or more shots in a burst by activating the device.

(b) A manual or power-driven trigger activating device constructed and designed so that when attached to a semiautomatic firearm it increases the rate of fire of that firearm.

<< CA ST § 16940 >>

16940. As used in this part, "nunchaku" means an instrument consisting of two or more sticks, clubs, bars, or rods to be used as handles, connected by a rope, cord, wire, or chain, in the design of a weapon used in connection with the practice of a system of self-defense such as karate.

<< CA ST § 16960 >>

16960. As used in Article 1 (commencing with Section 26500) of Chapter 1 of Division 6 of Title 4, "operation of law" includes, but is not limited to, any of the following:

(a) The executor or administrator of an estate, if the estate includes a firearm.

(b) A secured creditor or an agent or employee of a secured creditor when a firearm is possessed as collateral for, or as a result of, a default under a security agreement under the Commercial Code.

(c) A levying officer, as defined in Section 481.140, 511.060, or 680.260 of the Code of Civil Procedure.

(d) A receiver performing the functions of a receiver, if the receivership estate includes a firearm.

(e) A trustee in bankruptcy performing the duties of a trustee, if the bankruptcy estate includes a firearm.

(f) An assignee for the benefit of creditors performing the functions of an assignee, if the assignment includes a firearm.

(g) A transmutation of property between spouses pursuant to Section 850 of the Family Code.

(h) A firearm received by the family of a police officer or deputy sheriff from a local agency pursuant to Section 50081 of the Government Code.

(i) The transfer of a firearm by a law enforcement agency to the person who found the firearm where the delivery is to the person as the finder of the firearm pursuant to Article 1 (commencing with Section 2080) of Chapter 4 of Title 6 of Part 4 of Division 3 of the Civil Code.

<< CA ST § 16965 >>

16965. As used in this part, "passenger's or driver's area" means that part of a motor vehicle which is designed to carry the driver and passengers, including any interior compartment or space therein.

<< CA ST § 16970 >>

16970. As used in Sections 16790 and 17505 and in Chapter 2 (commencing with Section 30500) of Division 10 of Title 4, "person" means an individual, partnership, corporation, limited liability company, association, or any other group or entity, regardless of how it was created.

<< CA ST § 16980 >>

16980. Use of the term "person licensed pursuant to Sections 26700 to 26915, inclusive" is governed by Section 26700.

<< CA ST § 16990 >>

16990. As used in any provision listed in subdivision (a) of Section 16585, the phrase "a person taking title or possession of a firearm by operation of law" includes, but is not limited to, any of the following instances in which an individual receives title to, or possession of, a firearm:

(a) The executor or administrator of an estate, if the estate includes a firearm.

(b) A secured creditor or an agent or employee of a secured creditor when the firearm is possessed as collateral for, or as a result of, a default under a security agreement under the Commercial Code.

(c) A levying officer, as defined in Section 481.140, 511.060, or 680.260 of the Code of Civil Procedure.

(d) A receiver performing the functions of a receiver, if the receivership estate includes a firearm.

(e) A trustee in bankruptcy performing the duties of a trustee, if the bankruptcy estate includes a firearm.

(f) An assignee for the benefit of creditors performing the functions of an assignee, if the assignment includes a firearm.

(g) A transmutation of property consisting of a firearm pursuant to Section 850 of the Family Code.

(h) A firearm passing to a surviving spouse pursuant to Chapter 1 (commencing with Section 13500) of Part 2 of Division 8 of the Probate Code.

(i) A firearm received by the family of a police officer or deputy sheriff from a local agency pursuant to Section 50081 of the Government Code.

(j) The transfer of a firearm by a law enforcement agency to the person who found the firearm where the delivery is to the person as the finder of the firearm pursuant to Article 1 (commencing with Section 2080) of Chapter 4 of Division 3 of the Civil Code.

<< CA ST § 17000 >>

17000. (a) As used in this part, "personal handgun importer" means an individual who meets all of the following criteria:

(1) The individual is not a person licensed pursuant to Sections 26700 to 26915, inclusive.

(2) The individual is not a licensed manufacturer of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code.

(3) The individual is not a licensed importer of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(4) The individual is the owner of a handgun.

(5) The individual acquired that handgun outside of California.

(6) The individual moved into this state on or after January 1, 1998, as a resident of this state.

(7) The individual intends to possess that handgun within this state on or after January 1, 1998.

(8) The handgun was not delivered to the individual by a person licensed pursuant to Sections 26700 to 26915, inclusive, who delivered that firearm following the procedures set forth in Section 27540 and Sections 26700 to 26915, inclusive.

(9) The individual, while a resident of this state, had not previously reported ownership of that handgun to the Department of Justice in a manner prescribed by the department that included information concerning the individual and a description of the firearm.

(10) The handgun is not a firearm that is prohibited by any provision listed in Section 16590.

(11) The handgun is not an assault weapon.

(12) The handgun is not a machinegun.

(13) The person is 18 years of age or older.

(b) For purposes of paragraph (6) of subdivision (a):

(1) Except as provided in paragraph (2), residency shall be determined in the same manner as is the case for establishing residency pursuant to Section 12505 of the Vehicle Code.

(2) In the case of a member of the Armed Forces of the United States, residency shall be deemed to be established when the individual was discharged from active service in this state.

<< CA ST § 17010 >>

17010. Use of the term "pistol" is governed by Section 16530.

<< CA ST § 17020 >>

17020. For purposes of this part, a city or county may be considered an applicant's "principal place of employment or business" only if the applicant is physically present in the jurisdiction during a substantial part of the applicant's working hours for purposes of that employment or business.

<< CA ST § 17030 >>

17030. As used in this part, "prohibited area" means any place where it is unlawful to discharge a weapon.

<< CA ST § 17070 >>

17070. As used in this part, "responsible adult" means a person at least 21 years of age who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

<< CA ST § 17080 >>

17080. Use of the term "revolver" is governed by Section 16530.

<< CA ST § 17090 >>

17090. As used in Sections 16530, 16640, 16650, 16660, 16870, and 17170, Sections 17720 to 17730, inclusive, Section 17740, subdivision (f) of Section 27555, Article 2 (commencing with Section 30300) of Chapter 1 of Division 10 of Title 4, and Article

1 (commencing with Section 33210) of Chapter 8 of Division 10 of Title 4, "rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

<< CA ST § 17110 >>

17110. As used in Section 26890, "secure facility" means a building that meets all of the following specifications:

(a) All perimeter doorways shall meet one of the following:

(1) A windowless steel security door equipped with both a dead bolt and a doorknob lock.

(2) A windowed metal door that is equipped with both a dead bolt and a doorknob lock. If the window has an opening of five inches or more measured in any direction, the window shall be covered with steel bars of at least one-half inch diameter or metal grating of at least nine gauge affixed to the exterior or interior of the door.

(3) A metal grate that is padlocked and affixed to the licensee's premises independent of the door and doorframe.

(b) All windows are covered with steel bars.

(c) Heating, ventilating, air-conditioning, and service openings are secured with steel bars, metal grating, or an alarm system.

(d) Any metal grates have spaces no larger than six inches wide measured in any direction.

(e) Any metal screens have spaces no larger than three inches wide measured in any direction.

(f) All steel bars shall be no further than six inches apart.

<< CA ST § 17111 >>

17111. For purposes of Chapter 2 (commencing with Section 29030) of Division 7 of Title 4, use of the term "secure facility" is governed by Sections 29141 and 29142.

<< CA ST § 17125 >>

17125. As used in this part, "Security Exemplar" has the same meaning as in Section 922 of Title 18 of the United States Code.

<< CA ST § 17140 >>

17140. As used in Sections 16900 and 31910, "semiautomatic pistol" means a pistol with an operating mode that uses the energy of the explosive in a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of the trigger.

<< CA ST § 17160 >>

17160. As used in this part, a "shobi-zue" means a staff, crutch, stick, rod, or pole concealing a knife or blade within it, which may be exposed by a flip of the wrist or by a mechanical action.

<< CA ST § 17170 >>

17170. As used in Sections 16530 and 16640, Sections 17720 to 17730, inclusive, Section 17740, Article 1 (commencing with Section 27500) of Chapter 4 of Division 6 of Title 4, and Article 1 (commencing with Section 33210) of Chapter 8 of Division 10 of Title 4, "short-barreled rifle" means any of the following:

(a) A rifle having a barrel or barrels of less than 16 inches in length.

(b) A rifle with an overall length of less than 26 inches.

(c) Any weapon made from a rifle (whether by alteration, modification, or otherwise) if that weapon, as modified, has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length.

(d) Any device that may be readily restored to fire a fixed cartridge which, when so restored, is a device defined in subdivisions (a) to (c), inclusive.

(e) Any part, or combination of parts, designed and intended to convert a device into a device defined in subdivisions (a) to (c), inclusive, or any combination of parts from which a device defined in subdivisions (a) to (c), inclusive, may be readily assembled if those parts are in the possession or under the control of the same person.

<< CA ST § 17180 >>

17180. As used in Sections 16530 and 16640, Sections 17720 to 17730, inclusive, Section 17740, Article 1 (commencing with Section 27500) of Chapter 4 of Division 6 of Title 4, and Article 1 (commencing with Section 33210) of Chapter 8 of Division 10 of Title 4, "short-barreled shotgun" means any of the following:

(a) A firearm that is designed or redesigned to fire a fixed shotgun shell and has a barrel or barrels of less than 18 inches in length.

(b) A firearm that has an overall length of less than 26 inches and that is designed or redesigned to fire a fixed shotgun shell.

(c) Any weapon made from a shotgun (whether by alteration, modification, or otherwise) if that weapon, as modified, has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length.

(d) Any device that may be readily restored to fire a fixed shotgun shell which, when so restored, is a device defined in subdivisions (a) to (c), inclusive.

(e) Any part, or combination of parts, designed and intended to convert a device into a device defined in subdivisions (a) to (c), inclusive, or any combination of parts from which a device defined in subdivisions (a) to (c), inclusive, can be readily assembled if those parts are in the possession or under the control of the same person.

<< CA ST § 17190 >>

17190. As used in Sections 16530, 16640, 16870, and 17180, Sections 17720 to 17730, inclusive, Section 17740, subdivision (f) of Section 27555, Section 30215, and Article 1 (commencing with Section 33210) of Chapter 8 of Division 10 of Title 4, "shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger.

<< CA ST § 17200 >>

17200. As used in this part, a "shuriken" means any instrument, without handles, consisting of a metal plate having three or more radiating points with one or more sharp edges and designed in the shape of a polygon, trefoil, cross, star, diamond, or other geometric shape, for use as a weapon for throwing.

<< CA ST § 17210 >>

17210. As used in Chapter 9 (commencing with Section 33410) of Division 10 of Title 4, "silencer" means any device or attachment of any kind designed, used, or intended for use in silencing, diminishing, or muffling the report of a firearm. The term "silencer" also includes any combination of parts, designed or redesigned, and intended for use in assembling a silencer or fabricating a silencer and any part intended only for use in assembly or fabrication of a silencer.

<< CA ST § 17220 >>

17220. Use of the term "SKS rifle" is governed by Section 30710.

<< CA ST § 17230 >>

17230. As used in this part, "stun gun" means any item, except a less lethal weapon, used or intended to be used as either an offensive or defensive weapon that is capable of temporarily immobilizing a person by the infliction of an electrical charge.

<< CA ST § 17235 >>

17235. As used in this part, "switchblade knife" means a knife having the appearance of a pocketknife and includes a spring-blade knife, snap-blade knife, gravity knife, or any other similar type knife, the blade or blades of which are two or more inches in length and which can be released automatically by a flick of a button, pressure on the handle, flip of the wrist or other mechanical device, or is released by the weight of the blade or by any type of mechanism whatsoever. "Switchblade knife" does not include a knife that opens with one hand utilizing thumb pressure applied solely to the blade of the knife or a thumb stud attached to the blade, provided that the knife has a detent or other mechanism that provides resistance that must be overcome in opening the blade, or that biases the blade back toward its closed position.

<< CA ST § 17240 >>

17240. (a) As used in this part, "tear gas" applies to and includes any liquid, gaseous or solid substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispersed in the air.

(b) Notwithstanding subdivision (a), "tear gas" does not apply to, and does not include, any substance registered as an economic poison as provided in Chapter 2 (commencing with Section 12751) of Division 7 of the Food and Agricultural Code, provided that the substance is not intended to be used to produce discomfort or injury to human beings.

<< CA ST § 17250 >>

17250. As used in this part, "tear gas weapon" applies to and includes:

(a) Any shell, cartridge, or bomb capable of being discharged or exploded, when the discharge or explosion will cause or permit the release or emission of tear gas.

(b) Any revolver, pistol, fountain pen gun, billy, or other form of device, portable or fixed, intended for the projection or release of tear gas, except those regularly manufactured and sold for use with firearm ammunition.

<< CA ST § 17270 >>

17270. As used in this part, an "unconventional pistol" means a firearm with both of the following characteristics:

(a) It does not have a rifled bore.

(b) It has a barrel or barrels of less than 18 inches in length or has an overall length of less than 26 inches.

<< CA ST § 17280 >>

17280. As used in this part, "undetectable firearm" means any weapon that meets either of the following requirements:

(a) After removal of grips, stocks, and magazines, the weapon is not as detectable as the Security Exemplar, by a walk-through metal detector calibrated and operated to detect the Security Exemplar.

(b) Any major component of the weapon, as defined in Section 922 of Title 18 of the United States Code, when subjected to inspection by the types of X-ray machines commonly used at airports, does not generate an image that accurately depicts the shape of the component. Barium sulfate or other compounds may be used in the fabrication of the component.

<< CA ST § 17290 >>

17290. As used in this part, "undetectable knife" means any knife or other instrument, with or without a handguard, that satisfies all of the following requirements:

(a) It is capable of ready use as a stabbing weapon that may inflict great bodily injury or death.

(b) It is commercially manufactured to be used as a weapon.

(c) It is not detectable by a metal detector or magnetometer, either handheld or otherwise, which is set at standard calibration.

<< CA ST § 17300 >>

17300. Use of the phrase "unsafe handgun" is governed by Section 31910.

<< CA ST § 17310 >>

17310. As used in this part, "used firearm" means a firearm that has been sold previously at retail and is more than three years old.

<< CA ST § 17315 >>

17315. As used in Article 3 (commencing with Section 30345) of Chapter 1 of Division 10 of Title 4, "vendor" means a handgun ammunition vendor.

<< CA ST § 17320 >>

17320. For purposes of Section 31360 only, "violent felony" refers to the specific crimes listed in subdivision (c) of Section 667.5, and to crimes defined under the applicable laws of the United States or any other state, government, or country that are reasonably equivalent to the crimes listed in subdivision (c) of Section 667.5.

<< CA ST § 17330 >>

17330. As used in this part, "wallet gun" means any firearm mounted or enclosed in a case, resembling a wallet, designed to be or capable of being carried in a pocket or purse, if the firearm may be fired while mounted or enclosed in the case.

<< CA ST § 17340 >>

17340. (a) As used in this part, "wholesaler" means any person who is licensed as a dealer pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, who sells, transfers, or assigns firearms, or parts of firearms, to persons who are licensed as manufacturers, importers, or gunsmiths pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code, or persons licensed pursuant to Sections 26700 to 26915, inclusive, and includes persons who receive finished parts of firearms and assemble them into completed or partially completed firearms in furtherance of that purpose.

(b) "Wholesaler" shall not include a manufacturer, importer, or gunsmith who is licensed to engage in those activities pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code or a person licensed pursuant to Sections 26700 to 26915, inclusive, and the regulations issued pursuant thereto. A wholesaler also does not include a person dealing exclusively in grips, stocks, and other parts of firearms that are not frames or receivers thereof.

<< CA ST § 17350 >>

17350. As used in this part, "writing pen knife" means a device that appears to be a writing pen but has concealed within it a pointed, metallic shaft that is designed to be a stabbing instrument which is exposed by mechanical action or gravity which locks into place when extended or the pointed, metallic shaft is exposed by the removal of the cap or cover on the device.

<< CA ST § 17360 >>

17360. As used in this part, "zip gun" means any weapon or device that meets all of the following criteria:

(a) It was not imported as a firearm by an importer licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(b) It was not originally designed to be a firearm by a manufacturer licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(c) No tax was paid on the weapon or device nor was an exemption from paying tax on that weapon or device granted under Section 4181 and Subchapters F (commencing with Section 4216) and G (commencing with Section 4221) of Chapter 32 of Title 26 of the United States Code, as amended, and the regulations issued pursuant thereto.

(d) It is made or altered to expel a projectile by the force of an explosion or other form of combustion.

pt. 6 t. 2 pr. § 17500

TITLE 2. WEAPONS GENERALLY

pt. 6 t. 2 d. 1 pr. § 17500

DIVISION 1. MISCELLANEOUS RULES RELATING TO WEAPONS GENERALLY

<< CA ST § 17500 >>

17500. Every person having upon the person any deadly weapon, with intent to assault another, is guilty of a misdemeanor.

<< CA ST § 17505 >>

17505. It shall be unlawful for any person, as defined in Section 16970, to advertise the sale of any weapon or device, the possession of which is prohibited by Section 18710, 20110, 30315, 30320, 32625, or 33410, by Article 2 (commencing with Section 30600) of Chapter 2 of Division 10 of Title 4, or by any provision listed in Section 16590, in any newspaper, magazine, circular, form letter, or open publication that is published, distributed, or circulated in this state, or on any billboard, card, label, or other advertising medium, or by means of any other advertising device.

<< CA ST § 17510 >>

17510. (a) Any person who does any of the following acts while engaged in picketing, or other informational activities in a public place relating to a concerted refusal to work, is guilty of a misdemeanor:

(1) Carries concealed upon the person, or within any vehicle which is under the person's control or direction, any pistol, revolver, or other firearm capable of being concealed upon the person.

(2) Carries a loaded firearm upon the person or within any vehicle that is under the person's control or direction.

(3) Carries a deadly weapon.

(b) This section shall not be construed to authorize or ratify any picketing or other informational activities not otherwise authorized by law.

(c) The following provisions shall not be construed to authorize any conduct described in paragraph (1) of subdivision (a):

(1) Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4.

(2) Sections 25615 to 25655, inclusive.

(d) Sections 25900 to 26020, inclusive, shall not be construed to authorize any conduct described in paragraph (2) of subdivision (a).

<< CA ST § 17515 >>

17515. Nothing in any provision listed in Section 16580 prohibits a police officer, special police officer, peace officer, or law enforcement officer from carrying any equipment authorized for the enforcement of law or ordinance in any city or county.

pt. 6 t. 2 d. 2 pr. § 17700

DIVISION 2. GENERALLY PROHIBITED WEAPONS

pt. 6 t. 2 d. 2 ch. 1 pr. § 17700

Chapter 1. Exemptions

<< CA ST § 17700 >>

17700. The provisions listed in Section 16590 do not apply to any antique firearm.

<< CA ST § 17705 >>

17705. (a) The provisions listed in Section 16590 do not apply to any firearm or ammunition that is a curio or relic as defined in Section 478.11 of Title 27 of the Code of Federal Regulations and that is in the possession of a person permitted to possess the items under Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(b) Any person prohibited by Chapter 1 (commencing with Section 29610), Chapter 2 (commencing with Section 29800), or Chapter 3 (commencing with Section 29900) of Division 9 of Title 4 of this part, or Section 8100 or 8103 of the Welfare and Institutions Code, from possessing firearms or ammunition who obtains title to these items by bequest or intestate succession may retain title for not more than one year, but actual possession of these items at any time is punishable under Chapter 1 (commencing with Section 29610), Chapter 2 (commencing with Section 29800), or Chapter 3 (commencing with Section 29900) of Division 9 of Title 4 of this part, or Section 8100 or 8103 of the Welfare and Institutions Code. Within the year, the person shall transfer title to the firearms or ammunition by sale, gift, or other disposition. Any person who violates this section is in violation of the applicable provision listed in Section 16590.

<< CA ST § 17710 >>

17710. (a) The provisions listed in Section 16590 do not apply to "any other weapon" as defined in subsection (e) of Section 5845 of Title 26 of the United States Code, which is in the possession of a person permitted to possess the weapons under the federal Gun Control Act of 1968 (Public Law 90–618), as amended, and the regulations issued pursuant thereto.

(b) Any person prohibited by Chapter 1 (commencing with Section 29610), Chapter 2 (commencing with Section 29800), or Chapter 3 (commencing with Section 29900) of Division 9 of Title 4 of this part, or Section 8100 or 8103 of the Welfare and Institutions Code, from possessing these weapons who obtains title to these weapons by bequest or intestate succession may retain title for not more than one year, but actual possession of these weapons at any time is punishable under Chapter 1 (commencing with Section 29610), Chapter 2 (commencing with Section 29800), or Chapter 3 (commencing with Section 29900) of Division 9 of Title 4 of this part, or Section 8100 or 8103 of the Welfare and Institutions Code. Within the year, the person shall transfer title to the weapons by sale, gift, or other disposition. Any person who violates this section is in violation of the applicable provision listed in Section 16590.

(c) The exemption provided by this section does not apply to a pen gun.

<< CA ST § 17715 >>

17715. The provisions listed in Section 16590 do not apply to any instrument or device that is possessed by a federal, state, or local historical society, museum, or institutional collection that is open to the public if all of the following conditions are satisfied:

(a) The instrument or device is properly housed.

(b) The instrument or device is secured from unauthorized handling.

(c) If the instrument or device is a firearm, it is unloaded.

<< CA ST § 17720 >>

17720. The provisions listed in Section 16590 do not apply to any instrument or device, other than a short-barreled rifle or a short-barreled shotgun, which is possessed or used during the course of a motion picture, television, or video production or entertainment event by an authorized participant therein in the course of making that production or event or by an authorized employee or agent of the entity producing that production or event.

<< CA ST § 17725 >>

17725. The provisions listed in Section 16590 do not apply to any instrument or device, other than a short-barreled rifle or a short-barreled shotgun, which is sold by, manufactured by, exposed or kept for sale by, possessed by, imported by, or lent by a person who is in the business of selling instruments or devices listed in Section 16590 solely to the entities referred to in Sections 17715 and 17720 when engaging in transactions with those entities.

<< CA ST § 17730 >>

17730. The provisions listed in Section 16590 do not apply to any of the following:

(a) The sale to, possession of, or purchase of any weapon, device, or ammunition, other than a short-barreled rifle or a short-barreled shotgun, by any federal, state, county, city and county, or city agency that is charged with the enforcement of any law for use in the discharge of its official duties.

(b) The possession of any weapon, device, or ammunition, other than a short-barreled rifle or short-barreled shotgun, by any peace officer of any federal, state, county, city and county, or city agency that is charged with the enforcement of any law, when the officer is on duty and the use is authorized by the agency and is within the course and scope of the officer's duties.

(c) Any weapon, device, or ammunition, other than a short-barreled rifle or a short-barreled shotgun, that is sold by, manufactured by, exposed or kept for sale by, possessed by, imported by, or lent by, any person who is in the business of selling weapons, devices, and ammunition listed in Section 16590 solely to the entities referred to in subdivision (a) when engaging in transactions with those entities.

<< CA ST § 17735 >>

17735. The provisions listed in Section 16590 do not apply to any instrument, ammunition, weapon, or device that is not a firearm and is found and possessed by a person who meets all of the following:

(a) The person is not prohibited from possessing firearms or ammunition under subdivision (a) of Section 30305 or Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of Title 4 of this part, or Section 8100 or 8103 of the Welfare and Institutions Code.

(b) The person possessed the instrument, ammunition, weapon, or device no longer than was necessary to deliver or transport it to a law enforcement agency for that agency's disposition according to law.

(c) If the person is transporting the item, the person is transporting it to a law enforcement agency for disposition according to law.

<< CA ST § 17740 >>

17740. The provisions listed in Section 16590 do not apply to any firearm, other than a short-barreled rifle or short-barreled shotgun, which is found and possessed by a person who meets all of the following:

(a) The person is not prohibited from possessing firearms or ammunition under subdivision (a) of Section 30305 or Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of Title 4 of this part, or Section 8100 or 8103 of the Welfare and Institutions Code.

(b) The person possessed the firearm no longer than was necessary to deliver or transport it to a law enforcement agency for that agency's disposition according to law.

(c) If the person is transporting the firearm, the person is transporting it to a law enforcement agency for disposition according to law.

(d) Before transporting the firearm to a law enforcement agency, the person has given prior notice to that law enforcement agency that the person is transporting the firearm to that law enforcement agency for disposition according to law.

(e) The firearm is transported in a locked container as defined in Section 16850.

<< CA ST § 17745 >>

17745. The provisions listed in Section 16590 do not apply to the possession of any weapon, device, or ammunition by a forensic laboratory or by any authorized agent or employee thereof in the course and scope of the person's authorized activities.

pt. 6 t. 2 d. 2 ch. 2 pr. § 17800

Chapter 2. Miscellaneous Provisions

<< CA ST § 17800 >>

17800. For purposes of the provisions listed in Section 16590, a violation as to each firearm, weapon, or device enumerated in any of those provisions shall constitute a distinct and separate offense.

pt. 6 t. 2 d. 3 pr. § 18000

DIVISION 3. SURRENDER, DISPOSAL, AND ENJOINING OF WEAPONS CONSTITUTING A NUISANCE

<< CA ST § 18000 >>

18000. (a) Any weapon described in Section 19190, 21390, 21590, or 25700, or, upon conviction of the defendant or upon a juvenile court finding that an offense that would be a misdemeanor or felony if committed by an adult was committed or attempted by the juvenile with the use of a firearm, any weapon described in Section 29300, shall be surrendered to one of the following:

(1) The sheriff of a county.

(2) The chief of police or other head of a municipal police department of any city or city and county.

(3) The chief of police of any campus of the University of California or the California State University.

(4) The Commissioner of the California Highway Patrol.

(b) For purposes of this section, the Commissioner of the California Highway Patrol shall receive only weapons that were confiscated by a member of the California Highway Patrol.

(c) A finding that the defendant was guilty of the offense but was insane at the time the offense was committed is a conviction for the purposes of this section.

<< CA ST § 18005 >>

18005. (a) An officer to whom weapons are surrendered under Section 18000, except upon the certificate of a judge of a court of record, or of the district attorney of the county, that the retention thereof is necessary or proper to the ends of justice, may annually, between the 1st and 10th days of July, in each year, offer the weapons, which the officer in charge of them considers to have value with respect to sporting, recreational, or collection purposes, for sale at public auction to persons licensed pursuant to Sections 26700 to 26915, inclusive, to engage in businesses involving any weapon purchased.

(b) If any weapon has been stolen and is thereafter recovered from the thief or the thief's transferee, or is used in a manner as to constitute a nuisance under Section 19190, 21390, 21590, or 29300, or subdivision (a) of Section 25700 without the prior knowledge of its lawful owner that it would be so used, it shall not be offered for sale under subdivision (a) but shall be restored to the lawful owner, as soon as its use as evidence has been served, upon the lawful owner's identification of the weapon and proof of ownership, and after the law enforcement agency has complied with Chapter 2 (commencing with Section 33850) of Division 11 of Title 4.

(c) If, under this section, a weapon is not of the type that can be sold to the public, generally, or is not sold under subdivision (a), the weapon, in the month of July, next succeeding, or sooner, if necessary to conserve local resources, including space and utilization of personnel who maintain files and security of those weapons, shall be destroyed so that it can no longer be used as a weapon subject to surrender under Section 18000, except upon the certificate of a judge of a court of record, or of the district attorney of the county, that the retention of it is necessary or proper to the ends of justice.

(d) No stolen weapon shall be sold or destroyed pursuant to subdivision (a) or (c) unless reasonable notice is given to its lawful owner, if the lawful owner's identity and address can be reasonably ascertained.

<< CA ST § 18010 >>

18010. (a) The Attorney General, district attorney, or city attorney may bring an action to enjoin the manufacture of, importation of, keeping for sale of, offering or exposing for sale, giving, lending, or possession of, any item that constitutes a nuisance under any of the following provisions:

(1) Section 19290, relating to metal handgrenades.

(2) Section 20390, relating to an air gauge knife.

(3) Section 20490, relating to a belt buckle knife.

(4) Section 20590, relating to a cane sword.

(5) Section 20690, relating to a lipstick case knife.

(6) Section 20790, relating to a shobi-zue.

(7) Section 20990, relating to a writing pen knife.

(8) Section 21190, relating to a ballistic knife.

(9) Section 21890, relating to metal knuckles.

(10) Section 22090, relating to a nunchaku.

(11) Section 22290, relating to a leaded cane or an instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot.

(12) Section 22490, relating to a shuriken.

(13) Section 24390, relating to a camouflaging firearm container.

(14) Section 24490, relating to a cane gun.

(15) Section 24590, relating to a firearm not immediately recognizable as a firearm.

(16) Section 24690, relating to an undetectable firearm.

(17) Section 24790, relating to a wallet gun.

(18) Section 30290, relating to flechette dart ammunition and to a bullet with an explosive agent.

(19) Section 31590, relating to an unconventional pistol.

(20) Section 32390, relating to a large-capacity magazine.

(21) Section 32990, relating to a multiburst trigger activator.

(22) Section 33290, relating to a short-barreled rifle or a short-barreled shotgun.

(23) Section 33690, relating to a zip gun.

(b) These weapons shall be subject to confiscation and summary destruction whenever found within the state.

(c) These weapons shall be destroyed in the same manner described in Section 18005, except that upon the certification of a judge or of the district attorney that the ends of justice will be served thereby, the weapon shall be preserved until the necessity for its use ceases.

pt. 6 t. 2 d. 4 pr. § 18250

DIVISION 4. SEIZURE OF FIREARM OR OTHER DEADLY WEAPON AT SCENE OF DOMESTIC VIOLENCE

pt. 6 t. 2 d. 4 ch. 1 pr. § 18250

Chapter 1. Seizure and Subsequent Procedures

<< CA ST § 18250 >>

18250. If any of the following persons is at the scene of a domestic violence incident involving a threat to human life or a physical assault, that person shall take temporary custody of any firearm or other deadly weapon in plain sight or discovered pursuant to a consensual or other lawful search as necessary for the protection of the peace officer or other persons present:

(a) A sheriff, undersheriff, deputy sheriff, marshal, deputy marshal, or police officer of a city, as defined in subdivision (a) of Section 830.1.

(b) A peace officer of the Department of the California Highway Patrol, as defined in subdivision (a) of Section 830.2.

(c) A member of the University of California Police Department, as defined in subdivision (b) of Section 830.2.

(d) An officer listed in Section 830.6, while acting in the course and scope of the officer's employment as a peace officer.

(e) A member of a California State University Police Department, as defined in subdivision (c) of Section 830.2.

(f) A peace officer of the Department of Parks and Recreation, as defined in subdivision (f) of Section 830.2.

(g) A peace officer, as defined in subdivision (d) of Section 830.31.

(h) A peace officer, as defined in subdivisions (a) and (b) of Section 830.32.

(i) A peace officer, as defined in Section 830.5.

<< CA ST § 18255 >>

18255. (a) Upon taking custody of a firearm or other deadly weapon pursuant to this division, the officer shall give the owner or person who possessed the firearm a receipt.

(b) The receipt shall describe the firearm or other deadly weapon and list any identification or serial number on the firearm.

(c) The receipt shall indicate where the firearm or other deadly weapon can be recovered, the time limit for recovery as required by this division, and the date after which the owner or possessor can recover the firearm or other deadly weapon.

<< CA ST § 18260 >>

18260. Any peace officer, as defined in subdivisions (a) and (b) of Section 830.32, who takes custody of a firearm or deadly weapon pursuant to this division, shall deliver the firearm within 24 hours to the city police department or county sheriff's office in the jurisdiction where the college or school is located.

<< CA ST § 18265 >>

18265. (a) No firearm or other deadly weapon taken into custody pursuant to this division shall be held less than 48 hours.

(b) Except as provided in Section 18400, if a firearm or other deadly weapon is not retained for use as evidence related to criminal charges brought as a result of the domestic violence incident or is not retained because it was illegally possessed, the firearm or other deadly weapon shall be made available to the owner or person who was in lawful possession 48 hours after the seizure, or as soon thereafter as possible, but no later than five business days after the owner or person who was in lawful possession demonstrates compliance with Chapter 2 (commencing with Section 33850) of Division 11 of Title 4.

(c) In any civil action or proceeding for the return of any firearm, ammunition, or other deadly weapon seized by any state or local law enforcement agency and not returned within five business days after the initial seizure, except as provided in Section 18270, the court shall allow reasonable attorney's fees to the prevailing party.

<< CA ST § 18270 >>

18270. If a firearm or other deadly weapon has been stolen and has been taken into custody pursuant to this division, it shall be restored to the lawful owner upon satisfaction of all of the following conditions:

(a) Its use for evidence has been served.

(b) The owner identifies the firearm or other deadly weapon and provides proof of ownership.

(c) The law enforcement agency has complied with Chapter 2 (commencing with Section 33850) of Division 11 of Title 4.

<< CA ST § 18275 >>

18275. (a) Any firearm or other deadly weapon that has been taken into custody and held by any of the following law enforcement authorities for longer than 12 months, and has not been recovered by the owner or person who had lawful possession at the time it was taken into custody, shall be considered a nuisance and sold or destroyed as provided in subdivisions (a) and (b) of Section 18000 and subdivisions (a) and (b) of Section 18005:

(1) A police, university police, or sheriff's department.

(2) A marshal's office.

(3) A peace officer of the Department of the California Highway Patrol, as defined in subdivision (a) of Section 830.2.

(4) A peace officer of the Department of Parks and Recreation, as defined in subdivision (f) of Section 830.2.

(5) A peace officer, as defined in subdivision (d) of Section 830.31.

(6) A peace officer, as defined in Section 830.5.

(b) If a firearm or other deadly weapon is not recovered within 12 months due to an extended hearing process as provided in Section 18420, it is not subject to destruction until the court issues a decision, and then only if the court does not order the return of the firearm or other deadly weapon to the owner.

pt. 6 t. 2 d. 4 ch. 2 pr. § 18400

Chapter 2. Procedure Where Agency Believes Return of Weapon Would Create Danger

<< CA ST § 18400 >>

18400. (a) When a law enforcement agency has reasonable cause to believe that the return of a firearm or other deadly weapon seized under this division would be likely to result in endangering the victim or the person who reported the assault or threat, the agency shall so advise the owner of the firearm or other deadly weapon, and within 60 days of the date of seizure, initiate a petition in superior court to determine if the firearm or other deadly weapon should be returned.

(b) The law enforcement agency may make an ex parte application stating good cause for an order extending the time to file a petition.

(c) Including any extension of time granted in response to an ex parte request, a petition must be filed within 90 days of the date of seizure of the firearm or other deadly weapon.

<< CA ST § 18405 >>

18405. (a) If a petition is filed under Section 18400, the law enforcement agency shall inform the owner or person who had lawful possession of the firearm or other deadly weapon, at that person's last known address, by registered mail, return receipt requested, that the person has 30 days from the date of receipt of the notice to respond to the court clerk to confirm the person's desire for a hearing, and that the failure to respond shall result in a default order forfeiting the confiscated firearm or other deadly weapon.

(b) For purposes of this section, the person's last known address shall be presumed to be the address provided to the law enforcement officer by that person at the time of the family violence incident.

(c) In the event the person whose firearm or other deadly weapon was seized does not reside at the last address provided to the agency, the agency shall make a diligent, good faith effort to learn the whereabouts of the person and to comply with these notification requirements.

<< CA ST § 18410 >>

18410. (a) If the person who receives a petition under Section 18405 requests a hearing, the court clerk shall set a hearing no later than 30 days from receipt of that request.

(b) The court clerk shall notify the person, the law enforcement agency involved, and the district attorney of the date, time, and place of the hearing.

(c) Unless it is shown by a preponderance of the evidence that the return of the firearm or other deadly weapon would result in endangering the victim or the person reporting the assault or threat, the court shall order the return of the firearm or other deadly weapon and shall award reasonable attorney's fees to the prevailing party.

<< CA ST § 18415 >>

18415. If the person who receives a petition under Section 18405 does not request a hearing or does not otherwise respond within 30 days of the receipt of the notice, the law enforcement agency may file a petition for an order of default and may dispose of the firearm or other deadly weapon as provided in Sections 18000 and 18005.

<< CA ST § 18420 >>

18420. (a) If, at a hearing under Section 18410, the court does not order the return of the firearm or other deadly weapon to the owner or person who had lawful possession, that person may petition the court for a second hearing within 12 months from the date of the initial hearing.

(b) If there is a petition for a second hearing, unless it is shown by clear and convincing evidence that the return of the firearm or other deadly weapon would result in endangering the victim or the person reporting the assault or threat, the court shall order the return of the firearm or other deadly weapon and shall award reasonable attorney's fees to the prevailing party.

(c) If the owner or person who had lawful possession does not petition the court within this 12–month period for a second hearing or is unsuccessful at the second hearing in gaining return of the firearm or other deadly weapon, the firearm or other deadly weapon may be disposed of as provided in Sections 18000 and 18005.

pt. 6 t. 2 d. 4 ch. 3 pr. § 18500

Chapter 3. Liability

<< CA ST § 18500 >>

18500. The law enforcement agency, or the individual law enforcement officer, shall not be liable for any act in the good faith exercise of this division.

pt. 6 t. 2 d. 5 pr. § 18710

DIVISION 5. DESTRUCTIVE DEVICES, EXPLOSIVES, AND SIMILAR WEAPONS

pt. 6 t. 2 d. 5 ch. 1 pr. § 18710

Chapter 1. Destructive Devices and Explosives Generally

pt. 6 t. 2 d. 5 ch. 1 art. 1 pr. § 18710

Article 1. Prohibited Acts

<< CA ST § 18710 >>

18710. (a) Except as provided by this chapter, any person, firm, or corporation who, within this state, possesses any destructive device, other than fixed ammunition of a caliber greater than .60 caliber, is guilty of a public offense.

(b) A person, firm, or corporation who is convicted of an offense under subdivision (a) shall be punished by imprisonment in the county jail for a term not to exceed one year, or in state prison, or by a fine not to exceed ten thousand dollars ($10,000), or by both this fine and imprisonment.

<< CA ST § 18715 >>

18715. (a) Every person who recklessly or maliciously has in possession any destructive device or any explosive in any of the following places is guilty of a felony:

(1) On a public street or highway.

(2) In or near any theater, hall, school, college, church, hotel, or other public building.

(3) In or near any private habitation.

(4) In, on, or near any aircraft, railway passenger train, car, cable road, cable car, or vessel engaged in carrying passengers for hire.

(5) In, on, or near any other public place ordinarily passed by human beings.

(b) An offense under subdivision (a) is punishable by imprisonment in the state prison for a period of two, four, or six years.

<< CA ST § 18720 >>

18720. Every person who possesses any substance, material, or any combination of substances or materials, with the intent to make any destructive device or any explosive without first obtaining a valid permit to make that destructive device or explosive, is guilty of a felony, and is punishable by imprisonment in the state prison for two, three, or four years.

<< CA ST § 18725 >>

18725. Every person who willfully does any of the following is guilty of a felony and is punishable by imprisonment in the state prison for two, four, or six years:

(a) Carries any destructive device or any explosive on any vessel, aircraft, car, or other vehicle that transports passengers for hire.

(b) While on board any vessel, aircraft, car, or other vehicle that transports passengers for hire, places or carries any destructive device or any explosive in any hand baggage, roll, or other container.

(c) Places any destructive device or any explosive in any baggage that is later checked with any common carrier.

<< CA ST § 18730 >>

18730. Except as provided by this chapter, any person, firm, or corporation who, within this state, sells, offers for sale, or knowingly transports any destructive device, other than fixed ammunition of a caliber greater than .60 caliber, is guilty of a felony and is punishable by imprisonment in the state prison for two, three, or four years.

<< CA ST § 18735 >>

18735. (a) Except as provided by this chapter, any person, firm, or corporation who, within this state, sells, offers for sale, possesses or knowingly transports any fixed ammunition of a caliber greater than .60 caliber is guilty of a public offense.

(b) Upon conviction of an offense under subdivision (a), a person, firm, or corporation shall be punished by imprisonment in the county jail for a term not to exceed six months or by a fine not to exceed one thousand dollars ($1,000), or by both this fine and imprisonment.

(c) A second or subsequent conviction shall be punished by imprisonment in the county jail for a term not to exceed one year, or by imprisonment in the state prison, or by a fine not to exceed three thousand dollars ($3,000), or by both this fine and imprisonment.

<< CA ST § 18740 >>

18740. Every person who possesses, explodes, ignites, or attempts to explode or ignite any destructive device or any explosive with intent to injure, intimidate, or terrify any person, or with intent to wrongfully injure or destroy any property, is guilty of a felony, and shall be punished by imprisonment in the state prison for a period of three, five, or seven years.

<< CA ST § 18745 >>

18745. Every person who explodes, ignites, or attempts to explode or ignite any destructive device or any explosive with intent to commit murder is guilty of a felony, and shall be punished by imprisonment in the state prison for life with the possibility of parole.

<< CA ST § 18750 >>

18750. Every person who willfully and maliciously explodes or ignites any destructive device or any explosive that causes bodily injury to any person is guilty of a felony, and shall be punished by imprisonment in the state prison for a period of five, seven, or nine years.

<< CA ST § 18755 >>

18755. (a) Every person who willfully and maliciously explodes or ignites any destructive device or any explosive that causes the death of any person is guilty of a felony, and shall be punished by imprisonment in the state prison for life without the possibility of parole.

(b) Every person who willfully and maliciously explodes or ignites any destructive device or any explosive that causes mayhem or great bodily injury to any person is guilty of a felony, and shall be punished by imprisonment in the state prison for life.

<< CA ST § 18780 >>

18780. A person convicted of a violation of this chapter shall not be granted probation, and the execution of the sentence imposed upon that person shall not be suspended by the court.

pt. 6 t. 2 d. 5 ch. 1 art. 2 pr. § 18800

Article 2. Exemptions

<< CA ST § 18800 >>

18800. (a) Nothing in this chapter prohibits the sale to, purchase by, or possession, transportation, storage, or use of, a destructive device or explosive by any of the following:

(1) Any peace officer listed in Section 830.1 or 830.2, or any peace officer in the Department of Justice authorized by the Attorney General, while on duty and acting within the scope and course of employment.

(2) Any member of the Army, Navy, Air Force, or Marine Corps of the United States, or the National Guard, while on duty and acting within the scope and course of employment.

(b) Nothing in this chapter prohibits the sale to, or the purchase, possession, transportation, storage, or use by any person who is a regularly employed and paid officer, employee, or member of a fire department or fire protection or firefighting agency of the federal government, the State of California, a city, county, city and county, district, or other public or municipal corporation or political subdivision of this state, while on duty and acting within the scope and course of employment, of any equipment used by that department or agency in the course of fire suppression.

pt. 6 t. 2 d. 5 ch. 1 art. 3 pr. § 18900

Article 3. Permit and Inspection

<< CA ST § 18900 >>

18900. (a) Every dealer, manufacturer, importer, and exporter of any destructive device, or any motion picture or television studio using destructive devices in the conduct of its business, shall obtain a permit for the conduct of that business from the Department of Justice.

(b) Any person, firm, or corporation not mentioned in subdivision (a) shall obtain a permit from the Department of Justice in order to possess or transport any destructive device. No permit shall be issued to any person who meets any of the following criteria:

(1) Has been convicted of any felony.

(2) Is addicted to the use of any narcotic drug.

(3) Is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(c) An application for a permit shall comply with all of the following:

(1) It shall be filed in writing.

(2) It shall be signed by the applicant if an individual, or by a member or officer qualified to sign if the applicant is a firm or corporation.

(3) It shall state the name, business in which engaged, business address, and a full description of the use to which the destructive devices are to be put.

(d) Applications and permits shall be uniform throughout the state on forms prescribed by the Department of Justice.

<< CA ST § 18905 >>

18905. (a) Each applicant for a permit under this article shall pay at the time of filing the application a fee not to exceed the application processing costs of the Department of Justice.

(b) A permit granted under this article may be renewed one year from the date of issuance, and annually thereafter, upon the filing of a renewal application and the payment of a permit renewal fee not to exceed the application processing costs of the Department of Justice.

(c) After the department establishes fees sufficient in amount to cover processing costs, the amount of the fees shall only increase at a rate not to exceed the legislatively approved cost-of-living adjustment for the department.

<< CA ST § 18910 >>

18910. (a) Except as provided in subdivision (b), the Department of Justice shall, for every person, firm, or corporation to whom a permit is issued under this article, annually conduct an inspection for security and safe storage purposes, and to reconcile the inventory of destructive devices.

(b) A person, firm, or corporation with an inventory of fewer than five devices that require any Department of Justice permit shall be subject to an inspection for security and safe storage purposes, and to reconcile inventory, once every five years, or more frequently if determined by the department.

pt. 6 t. 2 d. 5 ch. 1 art. 4 pr. § 19000

Article 4. Destructive Device Constituting Nuisance

<< CA ST § 19000 >>

19000. (a) Possession of any destructive device in violation of this chapter is a public nuisance.

(b) The Attorney General or district attorney of any city, county, or city and county may bring an action in the superior court to enjoin the possession of any destructive device.

(c) Any destructive device found to be in violation of this chapter shall be surrendered to the Department of Justice, or to the sheriff or chief of police, if the sheriff or chief of police has elected to perform the services required by this section. The department, sheriff, or chief of police shall destroy the destructive device so as to render it unusable and unrepairable as a destructive device, except upon the filing of a certificate with the department by a judge or district attorney stating that the preservation of the destructive device is necessary to serve the ends of justice.

pt. 6 t. 2 d. 5 ch. 2 pr. § 19100

Chapter 2. Explosive Substance Other Than Fixed Ammunition

<< CA ST § 19100 >>

19100. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2, any person in this state who carries concealed upon the person any explosive substance, other than fixed ammunition, is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 19190 >>

19190. The unlawful concealed carrying upon the person of any explosive substance other than fixed ammunition, as provided in Section 19100, is a nuisance and is subject to Sections 18000 and 18005.

pt. 6 t. 2 d. 5 ch. 3 pr. § 19200

Chapter 3. Handgrenades

<< CA ST § 19200 >>

19200. (a) Except as provided in Section 19205 and Chapter 1 (commencing with Section 17700) of Division 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any metal military practice handgrenade or metal replica handgrenade is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

(b) Notwithstanding subdivision (a), a first offense involving any metal military practice handgrenade or metal replica handgrenade shall be punishable only as an infraction unless the offender is an active participant in a criminal street gang as defined in the Street Terrorism and Enforcement and Prevention Act (Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1).

<< CA ST § 19205 >>

19205. Section 19200 does not apply to any plastic toy handgrenade, or any metal military practice handgrenade or metal replica handgrenade that is a relic, curio, memorabilia, or display item, that is filled with a permanent inert substance, or that is otherwise permanently altered in a manner that prevents ready modification for use as a grenade.

<< CA ST § 19290 >>

19290. Except as provided in Section 19205 and in Chapter 1 (commencing with Section 17700) of Division 2, any metal military practice handgrenade or metal replica handgrenade is a nuisance and is subject to Section 18010.

pt. 6 t. 2 d. 6 pr. § 19400

DIVISION 6. LESS LETHAL WEAPONS

<< CA ST § 19400 >>

19400. A person who is a peace officer or a custodial officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, may, if authorized by and under the terms and conditions as are specified by the person's employing agency, purchase, possess, or transport any less lethal weapon or ammunition for any less lethal weapon, for official use in the discharge of the person's duties.

<< CA ST § 19405 >>

19405. Any person who sells a less lethal weapon to a person under the age of 18 years is guilty of a misdemeanor, punishable by imprisonment in the county jail for up to six months or by a fine of not more than one thousand dollars ($1,000), or by both that imprisonment and fine.

pt. 6 t. 3 pr. § 19910

TITLE 3. WEAPONS AND DEVICES OTHER THAN FIREARMS

pt. 6 t. 3 d. 1 pr. § 19910

DIVISION 1. BB DEVICES

<< CA ST § 19910 >>

19910. Every person who sells any BB device to a minor is guilty of a misdemeanor.

<< CA ST § 19915 >>

19915. (a) Every person who furnishes any BB device to any minor, without the express or implied permission of a parent or legal guardian of the minor, is guilty of a misdemeanor.

(b) As used in this section, "furnishes" means either of the following:

(1) A loan.

(2) A transfer that does not involve a sale.

pt. 6 t. 3 d. 2 pr. § 20010

DIVISION 2. BLOWGUNS

<< CA ST § 20010 >>

20010. Any person who knowingly manufactures, sells, offers for sale, possesses, or uses a blowgun or blowgun ammunition in this state is guilty of a misdemeanor.

<< CA ST § 20015 >>

20015. Nothing in this division shall prohibit the sale to, purchase by, possession of, or use of any blowgun or blowgun ammunition by zookeepers, animal control officers, Department of Fish and Game personnel, humane officers whose names are maintained in the county record of humane officers pursuant to Section 14502 of the Corporations Code, or veterinarians in the course and scope of their business in order to administer medicine to animals.

pt. 6 t. 3 d. 3 pr. § 20110

DIVISION 3. BOOBYTRAP

<< CA ST § 20110 >>

20110. (a) Except as provided in Chapter 1 (commencing with Section 18710) of Division 5 of Title 2, any person who assembles, maintains, places, or causes to be placed a boobytrap device is guilty of a felony punishable by imprisonment in the state prison for two, three, or five years.

(b) Possession of any device with the intent to use the device as a boobytrap is punishable by imprisonment in state prison, or in a county jail not exceeding one year, or by a fine not exceeding five thousand dollars ($5,000), or by both that fine and imprisonment.

pt. 6 t. 3 d. 4 pr. § 20150

DIVISION 4. IMITATION FIREARMS

<< CA ST § 20150 >>

20150. (a) Any person who changes, alters, removes, or obliterates any coloration or markings that are required by any applicable state or federal law or regulation, for any imitation firearm, or any device described in subdivision (b) of Section 16700, in a way that makes the imitation firearm or device look more like a firearm, is guilty of a misdemeanor.

(b) This section does not apply to a manufacturer, importer, or distributor of imitation firearms.

(c) This section does not apply to lawful use in theatrical productions, including motion pictures, television, and stage productions.

<< CA ST § 20155 >>

20155. Any manufacturer, importer, or distributor of imitation firearms that fails to comply with any applicable federal law or regulation governing the marking of a toy, look-alike, or imitation firearm, as defined by federal law or regulation, is guilty of a misdemeanor.

<< CA ST § 20160 >>

20160. (a) Any imitation firearm manufactured after July 1, 2005, shall, at the time of offer for sale in this state, be accompanied by a conspicuous advisory in writing as part of the packaging, but not necessarily affixed to the imitation firearm, to the effect that the product may be mistaken for a firearm by law enforcement officers or others, that altering the coloration or markings required by state or federal law or regulations so as to make the product look more like a firearm is dangerous, and may be a crime, and that brandishing or displaying the product in public may cause confusion and may be a crime.

(b) Any manufacturer, importer, or distributor that fails to comply with this advisory for any imitation firearm manufactured after July 1, 2005, shall be liable for a civil fine for each action brought by a city attorney or district attorney of not more than one thousand dollars ($1,000) for the first action, five thousand dollars ($5,000) for the second action, and ten thousand dollars ($10,000) for the third action and each subsequent action.

<< CA ST § 20165 >>

20165. (a) Any person who, for commercial purposes, purchases, sells, manufactures, ships, transports, distributes, or receives, by mail order or in any other manner, an imitation firearm, except as authorized by this section, is liable for a civil fine in an action brought by the city attorney or the district attorney of not more than ten thousand dollars ($10,000) for each violation.

(b) The manufacture, purchase, sale, shipping, transport, distribution, or receipt, by mail or in any other manner, of an imitation firearm is authorized if the device is manufactured, purchased, sold, shipped, transported, distributed, or received for any of the following purposes:

(1) Solely for export in interstate or foreign commerce.

(2) Solely for lawful use in theatrical productions, including motion picture, television, and stage productions.

(3) For use in a certified or regulated sporting event or competition.

(4) For use in military or civil defense activities, or ceremonial activities.

(5) For public displays authorized by public or private schools.

<< CA ST § 20170 >>

20170. (a) No person may openly display or expose any imitation firearm in a public place.

(b) As used in this section, "public place" means an area open to the public and includes any of the following:

(1) A street.

(2) A sidewalk.

(3) A bridge.

(4) An alley.

(5) A plaza.

(6) A park.

(7) A driveway.

(8) A front yard.

(9) A parking lot.

(10) An automobile, whether moving or not.

(11) A building open to the general public, including one that serves food or drink, or provides entertainment.

(12) A doorway or entrance to a building or dwelling.

(13) A public school.

(14) A public or private college or university.

<< CA ST § 20175 >>

20175. Section 20170 does not apply in any of the following circumstances:

(a) The imitation firearm is packaged or concealed so that it is not subject to public viewing.

(b) The imitation firearm is displayed or exposed in the course of commerce, including a commercial film or video production, or for service, repair, or restoration of the imitation firearm.

(c) The imitation firearm is used in a theatrical production, a motion picture, video, television, or stage production.

(d) The imitation firearm is used in conjunction with a certified or regulated sporting event or competition.

(e) The imitation firearm is used in conjunction with lawful hunting, or a lawful pest control activity.

(f) The imitation firearm is used or possessed at a certified or regulated public or private shooting range.

(g) The imitation firearm is used at a fair, exhibition, exposition, or other similar activity for which a permit has been obtained from a local or state government.

(h) The imitation firearm is used in a military, civil defense, or civic activity, including a flag ceremony, color guard, parade, award presentation, historical reenactment, or memorial.

(i) The imitation firearm is used for a public display authorized by a public or private school or a display that is part of a museum collection.

(j) The imitation firearm is used in a parade, ceremony, or other similar activity for which a permit has been obtained from a local or state government.

(k) The imitation firearm is displayed on a wall plaque or in a presentation case.

(l) The imitation firearm is used in an area where the discharge of a firearm is lawful.

(m) The entire exterior surface of the imitation firearm is white, bright red, bright orange, bright yellow, bright green, bright blue, bright pink, or bright purple, either singly or as the predominant color in combination with other colors in any pattern, or the entire device is constructed of transparent or translucent material that permits unmistakable observation of the device's complete contents. Merely having an orange tip as provided in federal law and regulations does not satisfy this requirement. The entire surface must be colored or transparent or translucent.

<< CA ST § 20180 >>

20180. (a) Except as provided in subdivision (b), violation of Section 20170 is an infraction punishable by a fine of one hundred dollars ($100) for the first offense, and three hundred dollars ($300) for a second offense.

(b) A third or subsequent violation of Section 20170 is punishable as a misdemeanor.

(c) Nothing in Section 20170, 20175, or this section shall be construed to preclude prosecution for a violation of Section 171b, 171.5, or 626.10.

pt. 6 t. 3 d. 5 pr. § 20200

DIVISION 5. KNIVES AND SIMILAR WEAPONS

pt. 6 t. 3 d. 5 ch. 1 pr. § 20200

Chapter 1. General Provisions

<< CA ST § 20200 >>

20200. A knife carried in a sheath that is worn openly suspended from the waist of the wearer is not concealed within the meaning of Section 16140, 16340, 17350, or 21310.

pt. 6 t. 3 d. 5 ch. 2 pr. § 20310

Chapter 2. Disguised or Misleading Appearance

pt. 6 t. 3 d. 5 ch. 2 art. 1 pr. § 20310

Article 1. Air Gauge Knife

<< CA ST § 20310 >>

20310. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any air gauge knife is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 20390 >>

20390. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any air gauge knife is a nuisance and is subject to Section 18010.

pt. 6 t. 3 d. 5 ch. 2 art. 2 pr. § 20410

Article 2. Belt Buckle Knife

<< CA ST § 20410 >>

20410. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who

gives, lends, or possesses any belt buckle knife is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 20490 >>

20490. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any belt buckle knife is a nuisance and is subject to Section 18010.

pt. 6 t. 3 d. 5 ch. 2 art. 3 pr. § 20510

Article 3. Cane Sword

<< CA ST § 20510 >>

20510. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any cane sword is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 20590 >>

20590. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any cane sword is a nuisance and is subject to Section 18010.

pt. 6 t. 3 d. 5 ch. 2 art. 4 pr. § 20610

Article 4. Lipstick Case Knife

<< CA ST § 20610 >>

20610. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any lipstick case knife is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 20690 >>

20690. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any lipstick case knife is a nuisance and is subject to Section 18010.

pt. 6 t. 3 d. 5 ch. 2 art. 5 pr. § 20710

Article 5. Shobi-zue

<< CA ST § 20710 >>

20710. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any shobi-zue is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 20790 >>

20790. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any shobi-zue is a nuisance and is subject to Section 18010.

pt. 6 t. 3 d. 5 ch. 2 art. 6 pr. § 20810

Article 6. Undetectable Knife

<< CA ST § 20810 >>

20810. (a) Any person in this state who commercially manufactures or causes to be commercially manufactured, or who knowingly imports into the state for commercial sale, or who knowingly exports out of this state for commercial, dealer, wholesaler, or distributor sale, or who keeps for commercial sale, or offers or exposes for commercial, dealer, wholesaler, or distributor sale, any undetectable knife is guilty of a misdemeanor.

(b) Notwithstanding any other provision of law, commencing January 1, 2000, all knives or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death that are commercially manufactured in this state that utilize materials that are not detectable by a metal detector or magnetometer, shall be manufactured to include materials that will ensure they are detectable by a metal detector or magnetometer, either handheld or otherwise, that is set at standard calibration.

<< CA ST § 20815 >>

20815. Section 20810 does not apply to the manufacture or importation of any undetectable knife for sale to a law enforcement or military entity with a valid agency, department, or unit purchase order, nor does Section 20810 apply to the subsequent sale of any undetectable knife to a law enforcement or military entity.

<< CA ST § 20820 >>

20820. Section 20810 does not apply to the manufacture or importation of any undetectable knife for sale to a federal, state, or local historical society, museum, or institutional collection that is open to the public, provided that the undetectable knife is properly housed and secured from unauthorized handling, nor does Section 20810 apply to the subsequent sale of the knife to any of these entities.

pt. 6 t. 3 d. 5 ch. 2 art. 7 pr. § 20910

Article 7. Writing Pen Knife

<< CA ST § 20910 >>

20910. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any writing pen knife is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 20990 >>

20990. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any writing pen knife is a nuisance and is subject to Section 18010.

pt. 6 t. 3 d. 5 ch. 3 pr. § 21110

Chapter 3. Ballistic Knife

<< CA ST § 21110 >>

21110. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any ballistic knife is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 21190 >>

21190. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any ballistic knife is a nuisance and is subject to Section 18010.

pt. 6 t. 3 d. 5 ch. 4 pr. § 21310

Chapter 4. Dirk or Dagger

<< CA ST § 21310 >>

21310. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who carries concealed upon the person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 21390 >>

21390. The unlawful concealed carrying upon the person of any dirk or dagger, as provided in Section 21310, is a nuisance and is subject to Sections 18000 and 18005.

pt. 6 t. 3 d. 5 ch. 5 pr. § 21510

Chapter 5. Switchblade Knife

<< CA ST § 21510 >>

21510. Every person who does any of the following with a switchblade knife having a blade two or more inches in length is guilty of a misdemeanor:

(a) Possesses the knife in the passenger's or driver's area of any motor vehicle in any public place or place open to the public.

(b) Carries the knife upon the person.

(c) Sells, offers for sale, exposes for sale, loans, transfers, or gives the knife to any other person.

<< CA ST § 21590 >>

21590. The unlawful possession or carrying of any switchblade knife, as provided in Section 21510, is a nuisance and is subject to Sections 18000 and 18005.

pt. 6 t. 3 d. 6 pr. § 21710

DIVISION 6. KNUCKLES

pt. 6 t. 3 d. 6 ch. 1 pr. § 21710

Chapter 1. Composite Knuckles or Hard Wooden Knuckles

<< CA ST § 21710 >>

21710. Any person in this state who possesses, commercially manufactures or causes to be commercially manufactured, or who knowingly imports into the state for commercial sale, keeps for commercial sale, or offers or exposes for commercial sale, any composite knuckles or hard wooden knuckles is guilty of a misdemeanor.

pt. 6 t. 3 d. 6 ch. 2 pr. § 21810

Chapter 2. Metal Knuckles

<< CA ST § 21810 >>

21810. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any metal knuckles is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 21890 >>

21890. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, metal knuckles are a nuisance and are subject to Section 18010.

pt. 6 t. 3 d. 7 pr. § 22010

DIVISION 7. NUNCHAKU

<< CA ST § 22010 >>

22010. Except as provided in Section 22015 and Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any nunchaku is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 22015 >>

22015. Section 22010 does not apply to either of the following:

(a) The possession of a nunchaku on the premises of a school that holds a regulatory or business license and teaches the arts of self-defense.

(b) The manufacture of a nunchaku for sale to, or the sale of a nunchaku to, a school that holds a regulatory or business license and teaches the arts of self-defense.

<< CA ST § 22090 >>

22090. Except as provided in Section 22015 and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any nunchaku is a nuisance and is subject to Section 18010.

pt. 6 t. 3 d. 8 pr. § 22210

DIVISION 8. SAPS AND SIMILAR WEAPONS

<< CA ST § 22210 >>

22210. Except as provided in Section 22215 and Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any leaded cane, or any instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot, is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 22215 >>

22215. Section 22210 does not apply to the manufacture for, sale to, exposing or keeping for sale to, importation of, or lending of wooden clubs or batons to special police officers or uniformed security guards authorized to carry any wooden club or baton pursuant to Section 22295 by entities that are in the business of selling wooden clubs or batons to special police officers and uniformed security guards when engaging in transactions with those persons.

<< CA ST § 22290 >>

22290. Except as provided in Section 22215 and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any leaded cane or any instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot is a nuisance and is subject to Section 18010.

<< CA ST § 22295 >>

22295. (a) Nothing in any provision listed in Section 16580 prohibits any police officer, special police officer, peace officer, or law enforcement officer from carrying any wooden club or baton.

(b) Nothing in any provision listed in Section 16580 prohibits a uniformed security guard, regularly employed and compensated by a person engaged in any lawful business, while actually employed and engaged in protecting and preserving property or life

within the scope of employment, from carrying any wooden club or baton if the uniformed security guard has satisfactorily completed a course of instruction certified by the Department of Consumer Affairs in the carrying and use of the club or baton. The training institution certified by the Department of Consumer Affairs to present this course, whether public or private, is authorized to charge a fee covering the cost of the training.

(c) The Department of Consumer Affairs, in cooperation with the Commission on Peace Officer Standards and Training, shall develop standards for a course in the carrying and use of a club or baton.

(d) Any uniformed security guard who successfully completes a course of instruction under this section is entitled to receive a permit to carry and use a club or baton within the scope of employment, issued by the Department of Consumer Affairs. The department may authorize a certified training institution to issue permits to carry and use a club or baton. A fee in the amount provided by law shall be charged by the Department of Consumer Affairs to offset the costs incurred by the department in course certification, quality control activities associated with the course, and issuance of the permit.

(e) Any person who has received a permit or certificate that indicates satisfactory completion of a club or baton training course approved by the Commission on Peace Officer Standards and Training prior to January 1, 1983, shall not be required to obtain a club or baton permit or complete a course certified by the Department of Consumer Affairs.

(f) Any person employed as a county sheriff's or police security officer, as defined in Section 831.4, shall not be required to obtain a club or baton permit or to complete a course certified by the Department of Consumer Affairs in the carrying and use of a club or baton, provided that the person completes a course approved by the Commission on Peace Officer Standards and Training in the carrying and use of the club or baton, within 90 days of employment.

(g) Nothing in any provision listed in Section 16580 prohibits an animal control officer, as described in Section 830.9, or an illegal dumping enforcement officer, as described in Section 830.7, from carrying any wooden club or baton if the animal control officer or illegal dumping enforcement officer has satisfactorily completed a course of instruction certified by the Department of Consumer Affairs in the carrying and use of the club or baton. The training institution certified by the Department of Consumer Affairs to present this course, whether public or private, is authorized to charge a fee covering the cost of the training.

pt. 6 t. 3 d. 9 pr. § 22410

DIVISION 9. SHURIKEN

<< CA ST § 22410 >>

22410. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any shuriken is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 22490 >>

22490. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any shuriken is a nuisance and is subject to Section 18010.

pt. 6 t. 3 d. 10 pr. § 22610

DIVISION 10. STUN GUN

<< CA ST § 22610 >>

22610. Notwithstanding any other provision of law, any person may purchase, possess, or use a stun gun, subject to the following requirements:

(a) No person convicted of a felony or any crime involving an assault under the laws of the United States, the State of California, or any other state, government, or country, or convicted of misuse of a stun gun under Section 244.5, shall purchase, possess, or use any stun gun.

(b) No person addicted to any narcotic drug shall purchase, possess, or use a stun gun.

(c)(1) No person shall sell or furnish any stun gun to a minor unless the minor is at least 16 years of age and has the written consent of the minor's parent or legal guardian.

(2) Violation of this subdivision shall be a public offense punishable by a fifty-dollar ($50) fine for the first offense. Any subsequent violation of this subdivision is a misdemeanor.

(d) No minor shall possess any stun gun unless the minor is at least 16 years of age and has the written consent of the minor's parent or legal guardian.

<< CA ST § 22615 >>

22615. Each stun gun sold shall contain both of the following:

(a) The name of the manufacturer stamped on the stun gun.

(b) The serial number applied by the manufacturer.

<< CA ST § 22620 >>

22620. Unless otherwise specified, any violation of this division is a misdemeanor.

<< CA ST § 22625 >>

22625. (a) Each stun gun sold in this state shall be accompanied by an instruction booklet.

(b) Violation of this section shall be a public offense punishable by a fifty-dollar ($50) fine for each weapon sold without the booklet.

pt. 6 t. 3 d. 11 pr. § 22810

DIVISION 11. TEAR GAS AND TEAR GAS WEAPONS

pt. 6 t. 3 d. 11 ch. 1 pr. § 22810

Chapter 1. General Provisions

<< CA ST § 22810 >>

22810. Notwithstanding any other provision of law, any person may purchase, possess, or use tear gas or any tear gas weapon for the projection or release of tear gas if the tear gas or tear gas weapon is used solely for self-defense purposes, subject to the following requirements:

(a) No person convicted of a felony or any crime involving an assault under the laws of the United States, the State of California, or any other state, government, or country, or convicted of misuse of tear gas under subdivision (g), shall purchase, possess, or use tear gas or any tear gas weapon.

(b) No person addicted to any narcotic drug shall purchase, possess, or use tear gas or any tear gas weapon.

(c) No person shall sell or furnish any tear gas or tear gas weapon to a minor.

(d) No minor shall purchase, possess, or use tear gas or any tear gas weapon.

(e)(1) No person shall purchase, possess, or use any tear gas weapon that expels a projectile, or that expels the tear gas by any method other than an aerosol spray, or that contains more than 2.5 ounces net weight of aerosol spray.

(2) Every tear gas container and tear gas weapon that may be lawfully purchased, possessed, and used pursuant to this section shall have a label that states: "WARNING: The use of this substance or device for any purpose other than self-defense is a crime under the law. The contents are dangerous-use with care."

(3) After January 1, 1984, every tear gas container and tear gas weapon that may be lawfully purchased, possessed, and used pursuant to this section shall have a label that discloses the date on which the useful life of the tear gas weapon expires.

(4) Every tear gas container and tear gas weapon that may be lawfully purchased pursuant to this section shall be accompanied at the time of purchase by printed instructions for use.

(f) Effective March 1, 1994, every tear gas container and tear gas weapon that may be lawfully purchased, possessed, and used pursuant to this section shall be accompanied by an insert including directions for use, first aid information, safety and storage information, and explanation of the legal ramifications of improper use of the tear gas container or tear gas product.

(g)(1) Except as provided in paragraph (2), any person who uses tear gas or any tear gas weapon except in self-defense is guilty of a public offense and is punishable by imprisonment in a state prison for 16 months, or two or three years or in a county jail not to exceed one year or by a fine not to exceed one thousand dollars ($1,000), or by both the fine and imprisonment.

(2) If the use is against a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, engaged in the performance of official duties and the person committing the offense knows or reasonably should know that the victim is a peace officer, the offense is punishable by imprisonment in a state prison for 16 months or two or three years or by a fine of one thousand dollars ($1,000), or by both the fine and imprisonment.

<< CA ST § 22815 >>

22815. (a) Notwithstanding subdivision (d) of Section 22810, a minor who has attained the age of 16 years may purchase and possess tear gas or a tear gas weapon pursuant to this division if the minor is accompanied by a parent or guardian, or has the written consent of a parent or guardian.

(b) Notwithstanding subdivision (c) of Section 22810, a person may sell or furnish tear gas or a tear gas weapon to a minor who has attained the age of 16 years and who is accompanied by a parent or guardian, or who presents a statement of consent signed by the minor's parent or guardian.

(c) Any civil liability of a minor arising out of the minor's use of tear gas or a tear gas weapon other than for self-defense is imposed upon the person, parent, or guardian who signed the statement of consent specified in subdivision (b). That person, parent, or guardian shall be jointly and severally liable with the minor for any damages proximately resulting from the negligent or wrongful act or omission of the minor in the use of the tear gas or a tear gas weapon.

<< CA ST § 22820 >>

22820. Nothing in this division prohibits any person who is a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, from purchasing, possessing, transporting, or using any tear gas or tear gas weapon if the person has satisfactorily completed a course of instruction approved by the Commission on Peace Officer Standards and Training in the use of tear gas.

<< CA ST § 22825 >>

22825. A custodial officer of a county may carry a tear gas weapon pursuant to Section 22820 only while on duty. A custodial officer of a county may carry a tear gas weapon while off duty only in accordance with all other laws.

<< CA ST § 22830 >>

22830. Nothing in this division prohibits any member of the military or naval forces of this state or of the United States or any federal law enforcement officer from purchasing, possessing, or transporting any tear gas or tear gas weapon for official use in the discharge of duties.

<< CA ST § 22835 >>

22835. Notwithstanding any other provision of law, a person holding a license as a private investigator pursuant to Chapter 11.3 (commencing with Section 7512) of Division 3 of the Business and Professions Code, or as a private patrol operator pursuant to Chapter 11.5 (commencing with Section 7580) of Division 3 of the Business and Professions Code, or a uniformed patrolperson employee of a private patrol operator, may purchase, possess, or transport any tear gas weapon, if it is used solely for defensive purposes in the course of the activity for which the license was issued and if the person has satisfactorily completed a course of instruction approved by the Department of Consumer Affairs in the use of tear gas.

<< CA ST § 22840 >>

22840. Nothing in this division authorizes the possession of tear gas or a tear gas weapon in any institution described in Section 4574, or within the grounds belonging or adjacent to any institution described in Section 4574, except where authorized by the person in charge of the institution.

pt. 6 t. 3 d. 11 ch. 2 pr. § 22900

Chapter 2. Unlawful Possession, Sale, or Transportation

<< CA ST § 22900 >>

22900. Any person, firm, or corporation who within this state knowingly sells or offers for sale, possesses, or transports any tear gas or tear gas weapon, except as permitted under the provisions of this division, is guilty of a public offense and upon conviction thereof shall be punishable by imprisonment in the county jail for not exceeding one year or by a fine not to exceed two thousand dollars ($2,000), or by both that fine and imprisonment.

<< CA ST § 22905 >>

22905. Each tear gas weapon sold, transported, or possessed under the authority of this division shall bear the name of the manufacturer and a serial number applied by the manufacturer.

<< CA ST § 22910 >>

22910. (a) Any person who changes, alters, removes, or obliterates the name of the manufacturer, the serial number, or any other mark of identification on any tear gas weapon is guilty of a public offense and, upon conviction, shall be punished by imprisonment in the state prison or by a fine of not more than two thousand dollars ($2,000), or by both that fine and imprisonment.

(b) Possession of any such weapon upon which the same shall have been changed, altered, removed, or obliterated, shall be presumptive evidence that such possessor has changed, altered, removed, or obliterated the same.

pt. 6 t. 3 d. 11 ch. 3 pr. § 23000

Chapter 3. Permits

<< CA ST § 23000 >>

23000. The Department of Justice may issue a permit for the possession and transportation of tear gas or a tear gas weapon that is not intended or certified for personal self-defense purposes, upon proof that good cause exists for issuance of the permit to the applicant. The permit may also allow the applicant to install, maintain, and operate a protective system involving the use of tear gas or a tear gas weapon in any place that is accurately and completely described in the permit application.

<< CA ST § 23005 >>

23005. (a) An application for a permit shall satisfy all of the following requirements:

(1) It shall be filed in writing.

(2) It shall be signed by the applicant if an individual, or by a member or officer qualified to sign if the applicant is a firm or corporation.

(3) It shall state the applicant's name, business in which engaged, business address, and a full description of the place or vehicle in which the tear gas or tear gas weapon is to be transported, kept, installed, or maintained.

(b) If the tear gas or tear gas weapon is to be used in connection with, or to constitute, a protective system, the application shall also contain the name of the person who is to install the protective system.

(c) Applications and permits shall be uniform throughout the state upon forms prescribed by the Department of Justice.

<< CA ST § 23010 >>

23010. (a) Each applicant for a permit shall pay, at the time of filing the application, a fee determined by the Department of Justice, not to exceed the application processing costs of the Department of Justice.

(b) A permit granted pursuant to this chapter may be renewed one year from the date of issuance, and annually thereafter, upon the filing of a renewal application and the payment of a permit renewal fee, not to exceed the application processing costs of the Department of Justice.

(c) After the department establishes fees sufficient to reimburse the department for processing costs, fees charged shall increase at a rate not to exceed the legislatively approved annual cost-of-living adjustments for the department's budget.

<< CA ST § 23015 >>

23015. (a) Notwithstanding Section 23000, a bank, a savings and loan association, a credit union, or an industrial loan company that maintains more than one office or branch may make a single annual application for a permit.

(b) In addition to the requirements set forth in this chapter, an application under this section shall separately state the business address and a full description of each office or branch in which the tear gas or tear gas weapon is to be kept, installed, or maintained. Any location addition or deletion as to an office or branch shall be reported to the department within 60 days of the change.

(c) A single permit issued under this section shall allow for the possession, operation, and maintenance of tear gas at each office or branch named in the application, including any location change.

<< CA ST § 23020 >>

23020. Every person, firm, or corporation to whom a permit is issued shall either carry the permit upon the person or keep it in the place described in the permit. The permit shall be open to inspection by any peace officer or other person designated by the authority issuing the permit.

<< CA ST § 23025 >>

23025. A permit issued in accordance with this chapter may be revoked or suspended by the issuing authority at any time when it appears that the need for the possession or transportation of the tear gas or tear gas weapon or protective system involving the use thereof, has ceased, or that the holder of the permit has engaged in an unlawful business or occupation or has wrongfully made use of the tear gas or tear gas weapon or the permit issued.

pt. 6 t. 4 pr. § 23500

TITLE 4. FIREARMS

pt. 6 t. 4 d. 1 pr. § 23500

DIVISION 1. PRELIMINARY PROVISIONS

<< CA ST § 23500 >>

23500. The provisions listed in Section 16580 shall be known and may be cited as "The Dangerous Weapons Control Law."

<< CA ST § 23505 >>

23505. If any section, subsection, sentence, clause, or phrase of any provision listed in Section 16580 is for any reason held unconstitutional, that decision does not affect the validity of any other provision listed in Section 16580. The Legislature hereby declares that it would have passed the provisions listed in Section 16580 and each section, subsection, sentence, clause, and phrase of it, irrespective of the fact that any one or more other sections, subsections, sentences, clauses, or phrases be declared unconstitutional.

<< CA ST § 23510 >>

23510. For purposes of Sections 25400 and 26500, Sections 27500 to 27590, inclusive, Section 28100, Sections 29610 to 29750, inclusive, Sections 29800 to 29905, inclusive, and Section 31615 of this code, and any provision listed in subdivision (a) of Section 16585 of this code, and Sections 8100, 8101, and 8103 of the Welfare and Institutions Code, notwithstanding the fact that the term "any firearm" may be used in those sections, each firearm or the frame or receiver of each firearm constitutes a distinct and separate offense under those sections.

<< CA ST § 23515 >>

23515. As used in the provisions listed in Section 16580, an offense that involves the violent use of a firearm includes any of the following:

(a) A violation of paragraph (2) or (3) of subdivision (a) of Section 245 or a violation of subdivision (d) of Section 245.

(b) A violation of Section 246.

(c) A violation of paragraph (2) of subdivision (a) of Section 417.

(d) A violation of subdivision (c) of Section 417.

<< CA ST § 23520 >>

23520. Each application that requires any firearms eligibility determination involving the issuance of any license, permit, or certificate pursuant to this part shall include two copies of the applicant's fingerprints on forms prescribed by the Department of Justice. One copy of the fingerprints may be submitted to the United States Federal Bureau of Investigation.

pt. 6 t. 4 d. 2 pr. § 23620

DIVISION 2. FIREARM SAFETY DEVICES, GUN SAFES, AND RELATED WARNINGS

<< CA ST § 23620 >>

23620. This division and Sections 16540, 16610, and 16870 shall be known and may be cited as the "Aroner-Scott-Hayden Firearms Safety Act of 1999."

<< CA ST § 23625 >>

23625. The Legislature makes the following findings:

(a) In the years 1987 to 1996, nearly 2,200 children in the United States under the age of 15 years died in unintentional shootings. In 1996 alone, 138 children were shot and killed unintentionally. Thus, more than 11 children every month, or one child every three days, were shot or killed unintentionally in firearms-related incidents.

(b) The United States leads the industrialized world in the rates of children and youth lost to unintentional, firearms-related deaths. A 1997 study from the federal Centers for Disease Control and Prevention reveals that for unintentional firearm-related deaths for children under the age of 15, the rate in the United States was nine times higher than in 25 other industrialized countries combined.

(c) While the number of unintentional deaths from firearms is an unacceptable toll on America's children, nearly eight times that number are treated in U.S. hospital emergency rooms each year for nonfatal unintentional gunshot wounds.

(d) A study of unintentional firearm deaths among children in California found that unintentional gunshot wounds most often involve handguns.

(e) A study in the December 1995 issue of the Archives of Pediatric and Adolescent Medicine found that children as young as three years old are strong enough to fire most commercially available handguns. The study revealed that 25 percent of three to four year olds and 70 percent of five to six year olds had sufficient finger strength to fire 59 (92 percent) of the 64 commonly available handguns referenced in the study.

(f) The Government Accounting Office (GAO), in its March 1991 study, "Accidental Shootings: Many Deaths and Injuries Caused by Firearms Could be Prevented," estimates that 31 percent of accidental deaths caused by firearms might be prevented by the addition of two safety devices: a child-resistant safety device that automatically engages and a device that indicates whether the gun is loaded. According to the study results, of the 107 unintentional firearms-related fatalities the GAO examined for the calendar years 1988 and 1989, 8 percent could have been prevented had the firearm been equipped with a child-resistant safety device. This 8 percent represents instances in which children under the age of six unintentionally shot and killed themselves or other persons.

(g) Currently, firearms are the only products manufactured in the United States that are not subject to minimum safety standards.

(h) A 1997 public opinion poll conducted by the National Opinion Research Center at the University of Chicago in conjunction with the Johns Hopkins Center for Gun Policy and Research found that 74 percent of Americans support safety regulation of the firearms industry.

(i) Some currently available trigger locks and other similar devices are inadequate to prevent the accidental discharge of the firearms to which they are attached, or to prevent children from gaining access to the firearm.

<< CA ST § 23630 >>

23630. (a) This division does not apply to the commerce of any antique firearm.

(b)(1) This division does not apply to the commerce of any firearm intended to be used by a salaried, full-time peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, for purposes of law enforcement.

(2) Nothing in this division precludes a local government, local agency, or state law enforcement agency from requiring its peace officers to store their firearms in gun safes or attach firearm safety devices to those firearms.

<< CA ST § 23635 >>

23635. (a) Any firearm sold or transferred in this state by a licensed firearms dealer, including a private transfer through a dealer, and any firearm manufactured in this state, shall include or be accompanied by a firearm safety device that is listed on the Department of Justice's roster of approved firearm safety devices and that is identified as appropriate for that firearm by reference to either the manufacturer and model of the firearm, or to the physical characteristics of the firearm that match those listed on the roster for use with the device.

(b) The sale or transfer of a firearm shall be exempt from subdivision (a) if both of the following apply:

(1) The purchaser or transferee owns a gun safe that meets the standards set forth in Section 23650. Gun safes shall not be required to be tested, and therefore may meet the standards without appearing on the Department of Justice roster.

(2) The purchaser or transferee presents an original receipt for purchase of the gun safe, or other proof of purchase or ownership of the gun safe as authorized by the Attorney General, to the firearms dealer. The dealer shall maintain a copy of this receipt or proof of purchase with the dealer's record of sales of firearms.

(c) The sale or transfer of a firearm shall be exempt from subdivision (a) if all of the following apply:

(1) The purchaser or transferee purchases an approved safety device no more than 30 days prior to the day the purchaser or transferee takes possession of the firearm.

(2) The purchaser or transferee presents the approved safety device to the firearms dealer when picking up the firearm.

(3) The purchaser or transferee presents an original receipt to the firearms dealer, which shows the date of purchase, the name, and the model number of the safety device.

(4) The firearms dealer verifies that the requirements in paragraphs (1) to (3), inclusive, have been satisfied.

(5) The firearms dealer maintains a copy of the receipt along with the dealer's record of sales of firearms.

(d)(1) Any long-gun safe commercially sold or transferred in this state, or manufactured in this state for sale in this state, that does not meet the standards for gun safes adopted pursuant to Section 23650 shall be accompanied by the following warning:

"WARNING: This gun safe does not meet the safety standards for gun safes specified in California Penal Code Section 23650. It does not satisfy the requirements of Penal Code Section 23635, which mandates that all firearms sold in California be accompanied by a firearm safety device or proof of ownership, as required by law, of a gun safe that meets the Section 23650 minimum safety standards developed by the California Attorney General."

(2) This warning shall be conspicuously displayed in its entirety on the principal display panel of the gun safe's package, on any descriptive materials that accompany the gun safe, and on a label affixed to the front of the gun safe.

(3) This warning shall be displayed in both English and Spanish, in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on the package or descriptive materials, in a manner consistent with Part 1500.121 of Title 16 of the Code of Federal Regulations, or successor regulations thereto.

(e) Any firearm sold or transferred in this state by a licensed firearms dealer, including a private transfer through a dealer, and any firearm manufactured in this state, shall be accompanied by warning language or a label as described in Section 23640.

<< CA ST § 23640 >>

23640. (a) The packaging of any firearm and any descriptive materials that accompany any firearm sold or transferred in this state, or delivered for sale in this state, by any licensed manufacturer, or licensed dealer, shall bear a label containing the following warning statement:

**WARNING**

**Children are attracted to and can operate firearms that can cause severe injuries or death.**

**Prevent child access by always keeping guns locked away and unloaded when not in use. If you keep a loaded firearm where a child obtains and improperly uses it, you may be fined or sent to prison.**

A yellow triangle containing an exclamation mark shall appear immediately before the word "Warning" on the label.

(b) If the firearm is sold or transferred without accompanying packaging, the warning label or notice shall be affixed to the firearm itself by a method to be prescribed by regulation of the Attorney General.

(c) The warning statement required under subdivisions (a) and (b) shall satisfy both of the following requirements:

(1) It shall be displayed in its entirety on the principal display panel of the firearm's package, and on any descriptive materials that accompany the firearm.

(2) It shall be displayed in both English and Spanish, in conspicuous and legible type in contrast by typography, layout, or color with other printed matter on that package or descriptive materials, in a manner consistent with Part 1500.121 of Title 16 of the Code of Federal Regulations, or successor regulations thereto.

<< CA ST § 23645 >>

23645. (a) Any violation of Section 23635 or Section 23640 is punishable by a fine of one thousand dollars ($1,000).

(b) On a second violation of any of those sections, a licensed firearm manufacturer shall be ineligible to manufacture, or a licensed firearm dealer shall be ineligible to sell, firearms in this state for 30 days, and shall be punished by a fine of one thousand dollars ($1,000).

(c)(1) On a third violation of any of those sections, a firearm manufacturer shall be permanently ineligible to manufacture firearms in this state.

(2) On a third violation of any of those sections, a licensed firearm dealer shall be permanently ineligible to sell firearms in this state.

<< CA ST § 23650 >>

23650. (a) The Attorney General shall develop regulations to implement a minimum safety standard for firearm safety devices and gun safes to significantly reduce the risk of firearm-related injuries to children 17 years of age and younger. The final standard shall do all of the following:

(1) Address the risk of injury from unintentional gunshot wounds.

(2) Address the risk of injury from self-inflicted gunshot wounds by unauthorized users.

(3) Include provisions to ensure that all firearm safety devices and gun safes are reusable and of adequate quality and construction to prevent children and unauthorized users from firing the firearm and to ensure that these devices cannot be readily removed from the firearm or that the firearm cannot be readily removed from the gun safe except by an authorized user utilizing the key, combination, or other method of access intended by the manufacturer of the device.

(4) Include additional provisions as appropriate.

(b) The Attorney General may consult, for the purposes of guidance in development of the standards, test protocols such as those described in Title 16 (commencing with Part 1700) of the Code of Federal Regulations, relating to poison prevention packaging standards. These protocols may be consulted to provide suggestions for potential methods to utilize in developing standards and shall serve as guidance only. The Attorney General shall also give appropriate consideration to the use of devices that are not detachable, but are permanently installed and incorporated into the design of a firearm.

(c) The Attorney General shall commence development of regulations under this section no later than January 1, 2000. The Attorney General shall adopt and issue regulations implementing a final standard no later than January 1, 2001. The Attorney General shall report to the Legislature on these standards by January 1, 2001. The final standard shall be effective January 1, 2002.

<< CA ST § 23655 >>

23655. (a) The Department of Justice shall certify laboratories to verify compliance with standards for firearm safety devices set forth in Section 23650.

(b) The Department of Justice may charge any laboratory that is seeking certification to test firearm safety devices a fee not exceeding the costs of certification, including costs associated with the development and approval of regulations and standards pursuant to Section 23650.

(c) The certified laboratory shall, at the manufacturer's or dealer's expense, test a firearm safety device and submit a copy of the final test report directly to the Department of Justice, along with the firearm safety device. The department shall notify the manufacturer or dealer of its receipt of the final test report and the department's determination as to whether the firearm safety device tested may be sold in this state.

(d) Commencing on July 1, 2001, the Department of Justice shall compile, publish, and maintain a roster listing all of the firearm safety devices that have been tested by a certified testing laboratory, have been determined to meet the department's standards for firearm safety devices, and may be sold in this state.

(e) The roster shall list, for each firearm safety device, the manufacturer, model number, and model name.

(f) The department may randomly retest samples obtained from sources other than directly from the manufacturer of the firearm safety device listed on the roster to ensure compliance with the requirements of this division.

(g) Firearm safety devices used for random sample testing and obtained from sources other than the manufacturer shall be in new, unused condition, and still in the manufacturer's original and unopened package.


<< CA ST § 23660 >>

23660. (a) No person shall keep for commercial sale, offer, or expose for commercial sale, or commercially sell any firearm safety device that is not listed on the roster maintained pursuant to subdivision (d) of Section 23655, or that does not comply with the standards for firearm safety devices adopted pursuant to Section 23650.

(b) No person may distribute as part of an organized firearm safety program, with or without consideration, any firearm safety device that is not listed on the roster maintained pursuant to subdivision (d) of Section 23655, or that does not comply with the standards for firearm safety devices adopted pursuant to Section 23650.


<< CA ST § 23665 >>

23665. (a) No long-gun safe may be manufactured in this state for sale in this state that does not comply with the standards for gun safes adopted pursuant to Section 23650, unless the long-gun safe is labeled by the manufacturer consistent with the requirements of Section 23635.

(b)(1) Any person who keeps for commercial sale, offers, or exposes for commercial sale, or who commercially sells a long-gun safe that does not comply with the standards for gun safes adopted pursuant to Section 23650, and who knows or has reason to know, that the long-gun safe in question does not meet the standards for gun safes adopted pursuant to Section 23650, is in violation of this section, and is punishable as provided in Section 23670, unless the long-gun safe is labeled pursuant to Section 23635.

(2) Any person who keeps for commercial sale, offers, or exposes for commercial sale, or who commercially sells a long-gun safe that does not comply with the standards for gun safes adopted pursuant to Section 23650, and who removes or causes to be removed, from the long-gun safe, the label required pursuant to Section 23635, is in violation of this section, and is punishable as provided in Section 23670.


<< CA ST § 23670 >>

23670. (a)(1) A violation of Section 23660 or 23665 is punishable by a civil fine of up to five hundred dollars ($500).

(2) A second violation of any of those sections, which occurs within five years of the date of a previous offense, is punishable by a civil fine of up to one thousand dollars ($1,000) and, if the violation is committed by a licensed firearms dealer, the dealer shall be ineligible to sell firearms in this state for 30 days.

(3) A third or subsequent violation that occurs within five years of two or more previous offenses is punishable by a civil fine of up to five thousand dollars ($5,000) and, if the violation is committed by a licensed firearms dealer, the firearms dealer shall be permanently ineligible to sell firearms in this state.

(b) The Attorney General, a district attorney, or a city attorney may bring a civil action for a violation of Section 23660 or 23665.


<< CA ST § 23675 >>

23675. Compliance with the requirements set forth in this division does not relieve any person from liability to any other person as may be imposed pursuant to common law, statutory law, or local ordinance.

<< CA ST § 23680 >>

23680. (a) If at any time the Attorney General determines that a gun safe or firearm safety device subject to the provisions of this division and sold after January 1, 2002, does not conform with the standards required by subdivision (a) of Section 23635 or Section 23650, the Attorney General may order the recall and replacement of the gun safe or firearm safety device, or order that the gun safe or firearm safety device be brought into conformity with those requirements.

(b) If the firearm safety device can be separated and reattached to the firearm without damaging the firearm, the licensed manufacturer or licensed firearms dealer shall immediately provide a conforming replacement as instructed by the Attorney General.

(c) If the firearm safety device cannot be separated from the firearm without damaging the firearm, the Attorney General may order the recall and replacement of the firearm.

<< CA ST § 23685 >>

23685. Each lead law enforcement agency investigating an incident shall report to the State Department of Health Services any information obtained that reasonably supports the conclusion that:

(a) A child 18 years of age or younger suffered an unintentional or self-inflicted gunshot wound inflicted by a firearm that was sold or transferred in this state, or manufactured in this state.

(b) Whether as a result of that incident the child died, suffered serious injury, or was treated for an injury by a medical professional.

<< CA ST § 23690 >>

23690. (a)(1) The Department of Justice may require each dealer to charge each firearm purchaser or transferee a fee not to exceed one dollar ($1) for each firearm transaction.

(2) The fee shall be for the purpose of supporting department program costs related to this act, including the establishment, maintenance, and upgrading of related database systems and public rosters.

(b)(1) There is hereby created within the General Fund the Firearm Safety Account.

(2) Revenue from the fee imposed by subdivision (a) shall be deposited into the Firearm Safety Account and shall be available for expenditure by the Department of Justice upon appropriation by the Legislature.

(3) Expenditures from the Firearm Safety Account shall be limited to program expenditures as defined by subdivision (a).

pt. 6 t. 4 d. 3 pr. § 23800

DIVISION 3. DISGUISED OR MISLEADING APPEARANCE

pt. 6 t. 4 d. 3 ch. 1 pr. § 23800

Chapter 1. Miscellaneous Provisions

<< CA ST § 23800 >>

23800. Any person who, for commercial purposes, purchases, sells, manufactures, ships, transports, distributes, or receives a firearm, where the coloration of the entire exterior surface of the firearm is bright orange or bright green, either singly, in combination, or as the predominant color in combination with other colors in any pattern, is liable for a civil fine in an action brought by the city attorney of the city, or the district attorney for the county, of not more than ten thousand dollars ($10,000).

pt. 6 t. 4 d. 3 ch. 2 pr. § 23900

Chapter 2. Obliteration of Identification Marks

<< CA ST § 23900 >>

23900. Any person who changes, alters, removes, or obliterates the name of the maker, model, manufacturer's number, or other mark of identification, including any distinguishing number or mark assigned by the Department of Justice, on any pistol, revolver, or any other firearm, without first having secured written permission from the department to make that change, alteration, or removal shall be punished by imprisonment in the state prison.

<< CA ST § 23910 >>

23910. The Department of Justice upon request may assign a distinguishing number or mark of identification to any firearm whenever the firearm lacks a manufacturer's number or other mark of identification, or whenever the manufacturer's number or other mark of identification or a distinguishing number or mark assigned by the department has been destroyed or obliterated.

<< CA ST § 23915 >>

23915. (a) Any person may place or stamp on any pistol, revolver, or other firearm any number or identifying indicium, provided the number or identifying indicium does not change, alter, remove, or obliterate the manufacturer's name, number, model, or other mark of identification.

(b) This section does not prohibit restoration by the owner of the name of the maker or model, or of the original manufacturer's number or other mark of identification, when that restoration is authorized by the department.

(c) This section does not prevent any manufacturer from placing in the ordinary course of business the name of the maker, model, manufacturer's number, or other mark of identification upon a new firearm.

<< CA ST § 23920 >>

23920. Except as provided in Section 23925, any person who, with knowledge of any change, alteration, removal, or obliteration described in this section, buys, receives, disposes of, sells, offers for sale, or has in possession any pistol, revolver, or other firearm that has had the name of the maker or model, or the manufacturer's number or other mark of identification, including any distinguishing number or mark assigned by the Department of Justice, changed, altered, removed, or obliterated, is guilty of a misdemeanor.

<< CA ST § 23925 >>

23925. Section 23920 does not apply to any of the following:

(a) The acquisition or possession of a firearm described in Section 23920 by any member of the military forces of this state or of the United States, while on duty and acting within the scope and course of employment.

(b) The acquisition or possession of a firearm described in Section 23920 by any peace officer described in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, while on duty and acting within the scope and course of employment.

(c) The acquisition or possession of a firearm described in Section 23920 by any employee of a forensic laboratory, while on duty and acting within the scope and course of employment.

(d) The possession and disposition of a firearm described in Section 23920 by a person who meets all of the following:

(1) The person is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(2) The person possessed the firearm no longer than was necessary to deliver it to a law enforcement agency for that agency's disposition according to law.

(3) If the person is transporting the firearm, the person is transporting it to a law enforcement agency in order to deliver it to the agency for the agency's disposition according to law.

(4) If the person is transporting the firearm to a law enforcement agency, the person has given prior notice to the agency that the person is transporting the firearm to that agency for the agency's disposition according to law.

(5) The firearm is transported in a locked container as defined in Section 16850.

pt. 6 t. 4 d. 3 ch. 3 pr. § 24310

Chapter 3. Camouflaging Firearm Container

<< CA ST § 24310 >>

24310. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any camouflaging firearm container is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 24390 >>

24390. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any camouflaging firearm container is a nuisance and is subject to Section 18010.

pt. 6 t. 4 d. 3 ch. 4 pr. § 24410

Chapter 4. Cane Gun

<< CA ST § 24410 >>

24410. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any cane gun is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 24490 >>

24490. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any cane gun is a nuisance and is subject to Section 18010.

pt. 6 t. 4 d. 3 ch. 5 pr. § 24510

Chapter 5. Firearm Not Immediately Recognizable as a Firearm

<< CA ST § 24510 >>

24510. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any firearm not immediately recognizable as a firearm is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 24590 >>

24590. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any firearm not immediately recognizable as a firearm is a nuisance and is subject to Section 18010.

pt. 6 t. 4 d. 3 ch. 6 pr. § 24610

Chapter 6. Undetectable Firearm and Firearm Detection Equipment

<< CA ST § 24610 >>

24610. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any undetectable firearm is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 24680 >>

24680. Any firearm detection equipment newly installed in a nonfederal public building in this state shall be of a type identified by either the United States Attorney General, the Secretary of Transportation, or the Secretary of the Treasury, as appropriate, as available state-of-the-art equipment capable of detecting an undetectable firearm, while distinguishing innocuous metal objects likely to be carried on one's person sufficient for reasonable passage of the public.

<< CA ST § 24690 >>

24690. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any undetectable firearm is a nuisance and is subject to Section 18010.

pt. 6 t. 4 d. 3 ch. 7 pr. § 24710

Chapter 7. Wallet Gun

<< CA ST § 24710 >>

24710. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any wallet gun is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 24790 >>

24790. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any wallet gun is a nuisance and is subject to Section 18010.

pt. 6 t. 4 d. 4 pr. § 25000

DIVISION 4. STORAGE OF FIREARMS

pt. 6 t. 4 d. 4 ch. 1 pr. § 25000

Chapter 1. Preliminary Provisions

<< CA ST § 25000 >>

25000. As used in this division, "child" means a person under 18 years of age.

pt. 6 t. 4 d. 4 ch. 2 pr. § 25100

Chapter 2. Criminal Storage of Firearm

<< CA ST § 25100 >>

25100. (a) Except as provided in Section 25105, a person commits the crime of "criminal storage of a firearm of the first degree" if all of the following conditions are satisfied:

(1) The person keeps any loaded firearm within any premises that are under the person's custody or control.

(2) The person knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian.

(3) The child obtains access to the firearm and thereby causes death or great bodily injury to the child or any other person.

(b) Except as provided in Section 25105, a person commits the crime of "criminal storage of a firearm of the second degree" if all of the following conditions are satisfied:

(1) The person keeps any loaded firearm within any premises that are under the person's custody or control.

(2) The person knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian.

(3) The child obtains access to the firearm and thereby causes injury, other than great bodily injury, to the child or any other person, or carries the firearm either to a public place or in violation of Section 417.

<< CA ST § 25105 >>

25105. Section 25100 does not apply whenever any of the following occurs:

(a) The child obtains the firearm as a result of an illegal entry to any premises by any person.

(b) The firearm is kept in a locked container or in a location that a reasonable person would believe to be secure.

(c) The firearm is carried on the person or within close enough proximity thereto that the individual can readily retrieve and use the firearm as if carried on the person.

(d) The firearm is locked with a locking device, as defined in Section 16860, which has rendered the firearm inoperable.

(e) The person is a peace officer or a member of the Armed Forces or the National Guard and the child obtains the firearm during, or incidental to, the performance of the person's duties.

(f) The child obtains, or obtains and discharges, the firearm in a lawful act of self-defense or defense of another person.

(g) The person who keeps a loaded firearm on any premise that is under the person's custody or control has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premises.

<< CA ST § 25110 >>

25110. (a) Criminal storage of a firearm in the first degree is punishable by imprisonment in the state prison for 16 months, or two or three years, by a fine not exceeding ten thousand dollars ($10,000), or by both that imprisonment and fine; or by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(b) Criminal storage of a firearm in the second degree is punishable by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

<< CA ST § 25115 >>

25115. If a person who allegedly violated Section 25100 is the parent or guardian of a child who is injured or who dies as the result of an accidental shooting, the district attorney shall consider, among other factors, the impact of the injury or death on the person alleged to have violated Section 25100 when deciding whether to prosecute the alleged violation. It is the Legislature's intent that a parent or guardian of a child who is injured or who dies as the result of an accidental shooting shall be prosecuted only in those instances in which the parent or guardian behaved in a grossly negligent manner or where similarly egregious circumstances exist. This section shall not otherwise restrict, in any manner, the factors that a district attorney may consider when deciding whether to prosecute an alleged violation of Section 25100.

<< CA ST § 25120 >>

25120. (a) If a person who allegedly violated Section 25100 is the parent or guardian of a child who was injured or who died as the result of an accidental shooting, no arrest of the person for the alleged violation of Section 25100 shall occur until at least seven days after the date upon which the accidental shooting occurred.

(b) In addition to the limitation stated in subdivision (a), before arresting a person for a violation of Section 25100, a law enforcement officer shall consider the health status of a child who suffered great bodily injury as the result of an accidental shooting, if the person to be arrested is the parent or guardian of the injured child. The intent of this section is to encourage law enforcement officials to delay the arrest of a parent or guardian of a seriously injured child while the child remains on life-support equipment or is in a similarly critical medical condition.

<< CA ST § 25125 >>

25125. (a) The fact that a person who allegedly violated Section 25100 attended a firearm safety training course prior to the purchase of the firearm that was obtained by a child in violation of Section 25100 shall be considered a mitigating factor by a district attorney when deciding whether to prosecute the alleged violation.

(b) In any action or trial commenced under Section 25100, the fact that the person who allegedly violated Section 25100 attended a firearm safety training course prior to the purchase of the firearm that was obtained by a child in violation of Section 25100 is admissible.

<< CA ST § 25130 >>

25130. Every person licensed under Sections 26700 to 26915, inclusive, shall post within the licensed premises the notice required by Section 26835, disclosing the duty imposed by this chapter upon any person who keeps a loaded firearm.

pt. 6 t. 4 d. 4 ch. 3 pr. § 25200

Chapter 3. Storage of Firearm Where Child Obtains Access and Carries Firearm Off–Premises

<< CA ST § 25200 >>

25200. (a) If all of the following conditions are satisfied, a person shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine:

(1) The person keeps a pistol, revolver, or other firearm capable of being concealed upon the person, loaded or unloaded, within any premises that are under the person's custody or control.

(2) The person knows or reasonably should know that a child is likely to gain access to that firearm without the permission of the child's parent or legal guardian.

(3) The child obtains access to that firearm and thereafter carries that firearm off-premises.

(b) If all of the following conditions are satisfied, a person shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding five thousand dollars ($5,000), or by both that imprisonment and fine:

(1) The person keeps any firearm within any premises that are under the person's custody or control.

(2) The person knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian.

(3) The child obtains access to the firearm and thereafter carries that firearm off-premises to any public or private preschool, elementary school, middle school, high school, or to any school-sponsored event, activity, or performance, whether occurring on school grounds or elsewhere.

(c) A pistol, revolver, or other firearm capable of being concealed upon the person that a child gains access to and carries off-premises in violation of this section shall be deemed "used in the commission of any misdemeanor as provided in this code or any felony" for the purpose of Section 29300 regarding the authority to confiscate firearms and other deadly weapons as a nuisance.

(d) As used in this section, "off-premises" means premises other than the premises where the firearm was stored.

<< CA ST § 25205 >>

25205. Section 25200 does not apply if any of the following are true:

(a) The child obtains the firearm as a result of an illegal entry into any premises by any person.

(b) The firearm is kept in a locked container or in a location that a reasonable person would believe to be secure.

(c) The firearm is locked with a locking device, as defined in Section 16860, which has rendered the firearm inoperable.

(d) The firearm is carried on the person within close enough range that the individual can readily retrieve and use the firearm as if carried on the person.

(e) The person is a peace officer or a member of the Armed Forces or National Guard and the child obtains the firearm during, or incidental to, the performance of the person's duties.

(f) The child obtains, or obtains and discharges, the firearm in a lawful act of self-defense or defense of another person.

(g) The person who keeps a firearm has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premises.

<< CA ST § 25210 >>

25210. If a person who allegedly violated Section 25200 is the parent or guardian of a child who is injured or who dies as the result of an accidental shooting, the district attorney shall consider, among other factors, the impact of the injury or death on the person alleged to have violated Section 25200 when deciding whether to prosecute the alleged violation. It is the Legislature's intent that a parent or guardian of a child who is injured or who dies as the result of an accidental shooting shall be prosecuted only in those instances in which the parent or guardian behaved in a grossly negligent manner or where similarly egregious circumstances exist. This section shall not otherwise restrict, in any manner, the factors that a district attorney may consider when deciding whether to prosecute alleged violations of Section 25200.

<< CA ST § 25215 >>

25215. (a) If a person who allegedly violated Section 25200 is the parent or guardian of a child who was injured or who died as the result of an accidental shooting, no arrest of the person for the alleged violation of Section 25200 shall occur until at least seven days after the date upon which the accidental shooting occurred.

(b) In addition to the limitation contained in subdivision (a), before arresting a person for a violation of Section 25200, a law enforcement officer shall consider the health status of a child who suffers great bodily injury as the result of an accidental shooting, if the person to be arrested is the parent or guardian of the injured child. The intent of this section is to encourage law enforcement officials to delay the arrest of a parent or guardian of a seriously injured child while the child remains on life-support equipment or is in a similarly critical medical condition.

<< CA ST § 25220 >>

25220. (a) The fact that the person who allegedly violated Section 25200 attended a firearm safety training course prior to the purchase of the firearm that is obtained by a child in violation of Section 25200 shall be considered a mitigating factor by a district attorney when deciding whether to prosecute the alleged violation.

(b) In any action or trial commenced under Section 25200, the fact that the person who allegedly violated Section 25200 attended a firearm safety training course prior to the purchase of the firearm that was obtained by a child in violation of Section 25200 is admissible.

<< CA ST § 25225 >>

25225. Every person licensed under Sections 26700 to 26915, inclusive, shall post within the licensed premises the notice required by Section 26835, disclosing the duty imposed by this chapter upon any person who keeps any firearm.

pt. 6 t. 4 d. 5 pr. § 25300

DIVISION 5. CARRYING FIREARMS

pt. 6 t. 4 d. 5 ch. 1 pr. § 25300

Chapter 1. Miscellaneous Rules Relating to Carrying Firearms

<< CA ST § 25300 >>

25300. (a) A person commits criminal possession of a firearm when the person carries a firearm in a public place or on any public street while masked so as to hide the person's identity.

(b) Criminal possession of a firearm is punishable by imprisonment in the state prison or by imprisonment in a county jail not to exceed one year.

(c) Subdivision (a) does not apply to any of the following:

(1) A peace officer in performance of the officer's duties.

(2) A full-time paid peace officer of another state or the federal government who is carrying out official duties while in this state.

(3) Any person summoned by any of the officers enumerated in paragraph (1) or (2) to assist in making an arrest or preserving the peace while that person is actually engaged in assisting that officer.

(4) The possession of an unloaded firearm or a firearm loaded with blank ammunition by an authorized participant in, or while rehearsing for, a motion picture, television, video production, entertainment event, entertainment activity, or lawfully organized and conducted activity when the participant lawfully uses the firearm as part of that production, event, or activity.

(5) The possession of a firearm by a licensed hunter while actually engaged in lawful hunting, or while going directly to or returning directly from the hunting expedition.

pt. 6 t. 4 d. 5 ch. 1 pr. § 25400

Chapter 2. Carrying a Concealed Firearm

pt. 6 t. 4 d. 5 ch. 1 art. 1 pr. § 25400

Article 1. Crime of Carrying a Concealed Firearm

<< CA ST § 25400 >>

25400. (a) A person is guilty of carrying a concealed firearm when the person does any of the following:

(1) Carries concealed within any vehicle that is under the person's control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.

(2) Carries concealed upon the person any pistol, revolver, or other firearm capable of being concealed upon the person.

(3) Causes to be carried concealed within any vehicle in which the person is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person.

(b) A firearm carried openly in a belt holster is not concealed within the meaning of this section.

(c) Carrying a concealed firearm in violation of this section is punishable as follows:

(1) If the person previously has been convicted of any felony, or of any crime made punishable by a provision listed in Section 16580, as a felony.

(2) If the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen, as a felony.

(3) If the person is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22, under the Street Terrorism Enforcement and Prevention Act (Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1), as a felony.

(4) If the person is not in lawful possession of the firearm or the person is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, as a felony.

(5) If the person has been convicted of a crime against a person or property, or of a narcotics or dangerous drug violation, by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(6) If both of the following conditions are met, by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment:

(A) The pistol, revolver, or other firearm capable of being concealed upon the person is loaded, or both it and the unexpended ammunition capable of being discharged from it are in the immediate possession of the person or readily accessible to that person.

(B) The person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner of that pistol, revolver, or other firearm capable of being concealed upon the person.

(7) In all cases other than those specified in paragraphs (1) to (6), inclusive, by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(d)(1) Every person convicted under this section who previously has been convicted of a misdemeanor offense enumerated in Section 23515 shall be punished by imprisonment in a county jail for at least three months and not exceeding six months, or, if granted probation, or if the execution or imposition of sentence is suspended, it shall be a condition thereof that the person be imprisoned in a county jail for at least three months.

(2) Every person convicted under this section who has previously been convicted of any felony, or of any crime made punishable by a provision listed in Section 16580, if probation is granted, or if the execution or imposition of sentence is suspended, it shall be a condition thereof that the person be imprisoned in a county jail for not less than three months.

(e) The court shall apply the three-month minimum sentence as specified in subdivision (d), except in unusual cases where the interests of justice would best be served by granting probation or suspending the imposition or execution of sentence without the minimum imprisonment required in subdivision (d) or by granting probation or suspending the imposition or execution of sentence with conditions other than those set forth in subdivision (d), in which case, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by that disposition.

(f) A peace officer may arrest a person for a violation of paragraph (6) of subdivision (c) if the peace officer has probable cause to believe that the person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner of the pistol, revolver, or other firearm capable of being concealed upon the person, and one or more of the conditions in subparagraph (A) of paragraph (6) of subdivision (c) is met.

pt. 6 t. 4 d. 5 ch. 1 art. 2 pr. § 25450

Article 2. Peace Officer Exemption

<< CA ST § 25450 >>

25450. As provided in this article, Section 25400 does not apply to, or affect, any of the following:

(a) Any peace officer, listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, whether active or honorably retired.

(b) Any other duly appointed peace officer.

(c) Any honorably retired peace officer listed in subdivision (c) of Section 830.5.

(d) Any other honorably retired peace officer who during the course and scope of employment as a peace officer was authorized to, and did, carry a firearm.

(e) Any full-time paid peace officer of another state or the federal government who is carrying out official duties while in California.

(f) Any person summoned by any of these officers to assist in making arrests or preserving the peace while the person is actually engaged in assisting that officer.

<< CA ST § 25455 >>

25455. (a) Any peace officer described in Section 25450 who has been honorably retired shall be issued an identification certificate by the law enforcement agency from which the officer retired.

(b) The issuing agency may charge a fee necessary to cover any reasonable expenses incurred by the agency in issuing certificates pursuant to this article.

(c) Any officer, except an officer listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall have an endorsement on the identification certificate stating that the issuing agency approves the officer's carrying of a concealed firearm.

(d) An honorably retired peace officer listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall not be required to obtain an endorsement from the issuing agency to carry a concealed firearm.

<< CA ST § 25460 >>

25460. (a) Except as provided in subdivision (b), no endorsement or renewal endorsement issued pursuant to Section 25465 shall be effective unless it is in the format set forth in subdivision (c).

(b) Any peace officer listed in subdivision (f) of Section 830.2 or in subdivision (c) of Section 830.5, who retired between January 2, 1981, and on or before December 31, 1988, and who is authorized to carry a concealed firearm pursuant to this article, shall not be required to have an endorsement in the format set forth in subdivision (c) until the time of the issuance, on or after January 1, 1989, of a renewal endorsement pursuant to Section 25465.

(c) A certificate issued pursuant to Section 25455 for any person who is not listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5, or for any person retiring after January 1, 1981, shall be in the following format: it shall be on a 2x3 inch card, bear the photograph of the retiree, include the retiree's name, date of birth, the date that the retiree retired, and the name and address of the agency from which the retiree retired, and have stamped on it the endorsement "CCW Approved" and the date the endorsement is to be renewed. A certificate issued pursuant to Section 25455 shall not be valid as identification for the sale, purchase, or transfer of a firearm.

<< CA ST § 25465 >>

25465. Every five years, a retired peace officer, except an officer listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall petition the issuing agency for renewal of the officer's privilege to carry a concealed firearm.

<< CA ST § 25470 >>

25470. (a) The agency from which a peace officer is honorably retired may, upon initial retirement of that peace officer, or at any time subsequent thereto, deny or revoke for good cause the retired officer's privilege to carry a concealed firearm.

(b) A peace officer who is listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall have the privilege to carry a concealed firearm denied or revoked by having the agency from which the officer retired stamp on the officer's identification certificate "No CCW privilege."

<< CA ST § 25475 >>

25475. (a) An honorably retired peace officer who is listed in subdivision (c) of Section 830.5 and authorized to carry a concealed firearm by this article shall meet the training requirements of Section 832 and shall qualify with the firearm at least annually.

(b) The individual retired peace officer shall be responsible for maintaining eligibility to carry a concealed firearm.

(c) The Department of Justice shall provide subsequent arrest notification pursuant to Section 11105.2 regarding honorably retired peace officers listed in subdivision (c) of Section 830.5 to the agency from which the officer has retired.

pt. 6 t. 4 d. 5 ch. 1 art. 3 pr. § 25505

Article 3. Conditional Exemptions

<< CA ST § 25505 >>

25505. In order for a firearm to be exempted under this article, while being transported to or from a place, the firearm shall be unloaded and kept in a locked container, and the course of travel shall include only those deviations between authorized locations as are reasonably necessary under the circumstances.

<< CA ST § 25510 >>

25510. Section 25400 does not apply to, or affect, any of the following:

(a) The possession of a firearm by an authorized participant in a motion picture, television, or video production, or an entertainment event, when the participant lawfully uses the firearm as part of that production or event, or while going directly to, or coming directly from, that production or event.

(b) The transportation of a firearm by an authorized employee or agent of a supplier of firearms when going directly to, or coming directly from, a motion picture, television, or video production, or an entertainment event, for the purpose of providing that firearm to an authorized participant to lawfully use as a part of that production or event.

<< CA ST § 25515 >>

25515. Section 25400 does not apply to, or affect, the possession of a firearm in a locked container by a member of any club or organization, organized for the purpose of lawfully collecting and lawfully displaying pistols, revolvers, or other firearms, while the member is at a meeting of the club or organization or while going directly to, and coming directly from, a meeting of the club or organization.

<< CA ST § 25520 >>

25520. Section 25400 does not apply to, or affect, the transportation of a firearm by a participant when going directly to, or coming directly from, a recognized safety or hunter safety class, or a recognized sporting event involving that firearm.

<< CA ST § 25525 >>

25525. (a) Section 25400 does not apply to, or affect, the transportation of a firearm by any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, directly between any of the following places:

(1) The person's place of residence.

(2) The person's place of business.

(3) Private property owned or lawfully possessed by the person.

(b) Section 25400 does not apply to, or affect, the transportation of a firearm by a person listed in subdivision (a) when going directly from the place where that person lawfully received that firearm to that person's place of residence or place of business or to private property owned or lawfully possessed by that person.

<< CA ST § 25530 >>

25530. Section 25400 does not apply to, or affect, the transportation of a firearm by a person when going directly to, or coming directly from, a fixed place of business or private residential property for the purpose of the lawful repair or the lawful sale, loan, or transfer of that firearm.

<< CA ST § 25535 >>

25535. Section 25400 does not apply to, or affect, any of the following:

(a) The transportation of a firearm by a person when going directly to, or coming directly from, a gun show, swap meet, or similar event to which the public is invited, for the purpose of displaying that firearm in a lawful manner.

(b) The transportation of a firearm by a person when going directly to, or coming directly from, a gun show or event, as defined in Section 478.100 of Title 27 of the Code of Federal Regulations, for the purpose of lawfully transferring, selling, or loaning that firearm in accordance with Section 27545.

<< CA ST § 25540 >>

25540. Section 25400 does not apply to, or affect, the transportation of a firearm by a person when going directly to, or coming directly from, a target range, which holds a regulatory or business license, for the purposes of practicing shooting at targets with that firearm at that target range.

<< CA ST § 25545 >>

25545. Section 25400 does not apply to, or affect, the transportation of a firearm by a person when going directly to, or coming directly from, a place designated by a person authorized to issue licenses pursuant to Section 26150, 26155, 26170, or 26215,

when done at the request of the issuing agency so that the issuing agency can determine whether or not a license should be issued to that person to carry that firearm.

<< CA ST § 25550 >>

25550. (a) Section 25400 does not apply to, or affect, the transportation of a firearm by a person when going directly to, or coming directly from, a lawful camping activity for the purpose of having that firearm available for lawful personal protection while at the lawful campsite.

(b) This section shall not be construed to override the statutory authority granted to the Department of Parks and Recreation or any other state or local governmental agencies to promulgate rules and regulations governing the administration of parks and campgrounds.

<< CA ST § 25555 >>

25555. Section 25400 does not apply to, or affect, the transportation of a firearm by a person in order to comply with Section 27870, 27875, 27915, 27920, or 27925, as it pertains to that firearm.

<< CA ST § 25560 >>

25560. Section 25400 does not apply to, or affect, the transportation of a firearm by a person in order to utilize Section 28000 as it pertains to that firearm.

<< CA ST § 25565 >>

25565. Section 25400 does not apply to, or affect, the transportation of a firearm by a person in order to sell, deliver, or transfer the firearm as specified in Section 27850 or 31725 to an authorized representative of a city, city and county, county, or state or federal government that is acquiring the weapon as part of an authorized, voluntary program in which the entity is buying or receiving weapons from private individuals.

<< CA ST § 25570 >>

25570. Section 25400 does not apply to, or affect, any of the following:

(a) The transportation of a firearm by a person who finds the firearm, if the person is transporting the firearm in order to comply with Article 1 (commencing with Section 2080) of Chapter 4 of Division 3 of the Civil Code as it pertains to that firearm, and, if the person is transporting the firearm to a law enforcement agency, the person gives prior notice to the law enforcement agency that the person is transporting the firearm to the law enforcement agency.

(b) The transportation of a firearm by a person who finds the firearm and is transporting it to a law enforcement agency for disposition according to law, if the person gives prior notice to the law enforcement agency that the person is transporting the firearm to the law enforcement agency for disposition according to law.

<< CA ST § 25575 >>

25575. Section 25400 does not apply to, or affect, the transportation of a firearm by a person in order to comply with Section 27560 as it pertains to that firearm.

<< CA ST § 25580 >>

25580. Section 25400 does not apply to, or affect, the transportation of a firearm that is a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations, by a person in order to comply with Section 27565 as it pertains to that firearm.

<< CA ST § 25585 >>

25585. Section 25400 does not apply to, or affect, the transportation of a firearm by a person for the purpose of obtaining an identification number or mark assigned to that firearm from the Department of Justice pursuant to Section 23910.

<< CA ST § 25595 >>

25595. This article does not prohibit or limit the otherwise lawful carrying or transportation of any pistol, revolver, or other firearm capable of being concealed upon the person in accordance with the provisions listed in Section 16580.

pt. 6 t. 4 d. 5 ch. 1 art. 4 pr. § 25600

Article 4. Other Exemptions

<< CA ST § 25600 >>

25600. (a) A violation of Section 25400 is justifiable when a person who possesses a firearm reasonably believes that person is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person who has been found to pose a threat to the life or safety of the person who possesses the firearm. This section may not apply when the circumstances involve a mutual restraining order issued pursuant to Division 10 (commencing with Section 6200) of the Family Code absent a factual finding of a specific threat to the person's life or safety. It is not the intent of the Legislature to limit, restrict, or narrow the application of current statutory or judicial authority to apply this or other justifications to a defendant charged with violating Section 25400 or committing another similar offense.

(b) Upon trial for violating Section 25400, the trier of fact shall determine whether the defendant was acting out of a reasonable belief that the defendant was in grave danger.

<< CA ST § 25605 >>

25605. (a) Section 25400 shall not apply to or affect any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, who carries, either openly or concealed, anywhere within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident, any pistol, revolver, or other firearm capable of being concealed upon the person.

(b) No permit or license to purchase, own, possess, keep, or carry, either openly or concealed, shall be required of any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, to purchase, own, possess, keep, or carry, either openly or concealed, a pistol, revolver, or other firearm capable of being concealed upon the person within

the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident.

(c) Nothing in this section shall be construed as affecting the application of Sections 25850 to 26055, inclusive.

<< CA ST § 25610 >>

25610. (a) Section 25400 shall not be construed to prohibit any citizen of the United States over the age of 18 years who resides or is temporarily within this state, and who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, from transporting or carrying any pistol, revolver, or other firearm capable of being concealed upon the person, provided that the following applies to the firearm:

(1) The firearm is within a motor vehicle and it is locked in the vehicle's trunk or in a locked container in the vehicle.

(2) The firearm is carried by the person directly to or from any motor vehicle for any lawful purpose and, while carrying the firearm, the firearm is contained within a locked container.

(b) The provisions of this section do not prohibit or limit the otherwise lawful carrying or transportation of any pistol, revolver, or other firearm capable of being concealed upon the person in accordance with the provisions listed in Section 16580.

<< CA ST § 25615 >>

25615. Section 25400 does not apply to, or affect, the possession or transportation of unloaded pistols, revolvers, or other firearms capable of being concealed upon the person as merchandise by a person who is engaged in the business of manufacturing, importing, wholesaling, repairing, or dealing in firearms and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while engaged in the lawful course of the business.

<< CA ST § 25620 >>

25620. Section 25400 does not apply to, or affect, any member of the Army, Navy, Air Force, Coast Guard, or Marine Corps of the United States, or the National Guard, when on duty, or any organization that is by law authorized to purchase or receive those weapons from the United States or this state.

<< CA ST § 25625 >>

25625. Section 25400 does not apply to, or affect, the carrying of unloaded pistols, revolvers, or other firearms capable of being concealed upon the person by duly authorized military or civil organizations while parading, or the members thereof when going to and from the places of meeting of their respective organizations.

<< CA ST § 25630 >>

25630. Section 25400 does not apply to, or affect, any guard or messenger of any common carrier, bank, or other financial institution, while actually employed in and about the shipment, transportation, or delivery of any money, treasure, bullion, bonds, or other thing of value within this state.

<< CA ST § 25635 >>

25635. Section 25400 does not apply to, or affect, members of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using pistols, revolvers, or other firearms capable of being concealed upon the person upon the target ranges, or transporting these firearms unloaded when going to and from the ranges.

<< CA ST § 25640 >>

25640. Section 25400 does not apply to, or affect, licensed hunters or fishermen carrying pistols, revolvers, or other firearms capable of being concealed upon the person while engaged in hunting or fishing, or transporting those firearms unloaded when going to or returning from the hunting or fishing expedition.

<< CA ST § 25645 >>

25645. Section 25400 does not apply to, or affect, the transportation of unloaded firearms by a person operating a licensed common carrier or an authorized agent or employee thereof when the firearms are transported in conformance with applicable federal law.

<< CA ST § 25650 >>

25650. (a) Upon approval of the sheriff of the county in which the retiree resides, Section 25400 does not apply to, or affect, any honorably retired federal officer or agent of any federal law enforcement agency, including, but not limited to, the Federal Bureau of Investigation, the Secret Service, the United States Customs Service, the Federal Bureau of Alcohol, Tobacco, and Firearms, the Federal Bureau of Narcotics, the Drug Enforcement Administration, the United States Border Patrol, and any officer or agent of the Internal Revenue Service who was authorized to carry weapons while on duty, who was assigned to duty within the state for a period of not less than one year, or who retired from active service in the state.

(b) A retired federal officer or agent shall provide the sheriff with certification from the agency from which the officer or agent retired certifying that person's service in the state, the nature of that person's retirement, and indicating the agency's concurrence that the retired federal officer or agent should be accorded the privilege of carrying a concealed firearm.

(c) Upon that approval, the sheriff shall issue a permit to the retired federal officer or agent indicating that the retiree may carry a concealed firearm in accordance with this section. The permit shall be valid for a period not exceeding five years, shall be carried by the retiree while carrying a concealed firearm, and may be revoked for good cause.

(d) The sheriff of the county in which the retired federal officer or agent resides may require recertification prior to a permit renewal, and may suspend the privilege for cause. The sheriff may charge a fee necessary to cover any reasonable expenses incurred by the county.

<< CA ST § 25655 >>

25655. Section 25400 does not apply to, or affect, the carrying of a pistol, revolver, or other firearm capable of being concealed upon the person by a person who is authorized to carry that weapon in a concealed manner pursuant to Chapter 4 (commencing with Section 26150).

SEC. 6. Part 6 (commencing with Section 16000) is added to the Penal Code, to read:

pt. 6 t. 4 d. 5 ch. 1 art. 5 pr. § 25700

Article 5. Concealed Carrying of Firearm as a Nuisance

<< CA ST § 25700 >>

25700. (a) The unlawful carrying of any handgun in violation of Section 25400 is a nuisance and is subject to Sections 18000 and 18005.

(b) This section does not apply to any of the following:

(1) Any firearm in the possession of the Department of Fish and Game.

(2) Any firearm that was used in the violation of any provision of the Fish and Game Code or any regulation adopted pursuant thereto.

(3) Any firearm that is forfeited pursuant to Section 5008.6 of the Public Resources Code.

SEC. 6. Part 6 (commencing with Section 16000) is added to the Penal Code, to read:

pt. 6 t. 4 d. 5 ch. 3 pr. § 25800

Chapter 3. Carrying a Loaded Firearm

pt. 6 t. 4 d. 5 ch. 3 art. 1 pr. § 25800

Article 1. Armed Criminal Action

<< CA ST § 25800 >>

25800. (a) Every person who carries a loaded firearm with the intent to commit a felony is guilty of armed criminal action.

(b) Armed criminal action is punishable by imprisonment in a county jail not exceeding one year, or in the state prison.

pt. 6 t. 4 d. 5 ch. 3 art. 2 pr. § 25850

Article 2. Crime of Carrying a Loaded Firearm in Public

<< CA ST § 25850 >>

25850. (a) A person is guilty of carrying a loaded firearm when the person carries a loaded firearm on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

(b) In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section.

(c) Carrying a loaded firearm in violation of this section is punishable, as follows:

(1) Where the person previously has been convicted of any felony, or of any crime made punishable by a provision listed in Section 16580, as a felony.

(2) Where the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen, as a felony.

(3) Where the person is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22, under the Street Terrorism Enforcement and Prevention Act (Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1), as a felony.

(4) Where the person is not in lawful possession of the firearm, or is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, as a felony.

(5) Where the person has been convicted of a crime against a person or property, or of a narcotics or dangerous drug violation, by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(6) Where the person is not listed with the Department of Justice pursuant to Section 11106 as the registered owner of the handgun, by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or both that fine and imprisonment.

(7) In all cases other than those specified in paragraphs (1) to (6), inclusive, as a misdemeanor, punishable by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(d)(1) Every person convicted under this section who has previously been convicted of an offense enumerated in Section 23515, or of any crime made punishable under a provision listed in Section 16580, shall serve a term of at least three months in a county jail, or, if granted probation or if the execution or imposition of sentence is suspended, it shall be a condition thereof that the person be imprisoned for a period of at least three months.

(2) The court shall apply the three-month minimum sentence except in unusual cases where the interests of justice would best be served by granting probation or suspending the imposition or execution of sentence without the minimum imprisonment required in this section or by granting probation or suspending the imposition or execution of sentence with conditions other than those set forth in this section, in which case, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by that disposition.

(e) A violation of this section that is punished by imprisonment in a county jail not exceeding one year shall not constitute a conviction of a crime punishable by imprisonment for a term exceeding one year for the purposes of determining federal firearms eligibility under Section 922(g)(1) of Title 18 of the United States Code.

(f) Nothing in this section, or in Article 3 (commencing with Section 25900) or Article 4 (commencing with Section 26000), shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a greater penalty than this section.

(g) Notwithstanding paragraphs (2) and (3) of subdivision (a) of Section 836, a peace officer may make an arrest without a warrant:

(1) When the person arrested has violated this section, although not in the officer's presence.

(2) Whenever the officer has reasonable cause to believe that the person to be arrested has violated this section, whether or not this section has, in fact, been violated.

(h) A peace officer may arrest a person for a violation of paragraph (6) of subdivision (c), if the peace officer has probable cause to believe that the person is carrying a handgun in violation of this section and that person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner of that handgun.

pt. 6 t. 4 d. 5 ch. 3 art. 3 pr. § 25900

Article 3. Peace Officer Exemption to the Crime of Carrying a Loaded Firearm in Public

<< CA ST § 25900 >>

25900. As provided in this article, Section 25850 does not apply to any of the following:

(a) Any peace officer, listed in Section 830.1 or 830.2, or subdivision (a) of Section 830.33, whether active or honorably retired.

(b) Any other duly appointed peace officer.

(c) Any honorably retired peace officer listed in subdivision (c) of Section 830.5.

(d) Any other honorably retired peace officer who during the course and scope of employment as a peace officer was authorized to, and did, carry a firearm.

(e) Any full-time paid peace officer of another state or the federal government who is carrying out official duties while in California.

(f) Any person summoned by any of these officers to assist in making arrests or preserving the peace while the person is actually engaged in assisting that officer.

<< CA ST § 25905 >>

25905. (a) Any peace officer described in Section 25900 who has been honorably retired shall be issued an identification certificate by the law enforcement agency from which the officer has retired.

(b) The issuing agency may charge a fee necessary to cover any reasonable expenses incurred by the agency in issuing certificates pursuant to Sections 25900, 25910, 25925, and this section.

(c) Any officer, except an officer listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall have an endorsement on the identification certificate stating that the issuing agency approves the officer's carrying of a loaded firearm.

(d) An honorably retired peace officer listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall not be required to obtain an endorsement from the issuing agency to carry a loaded firearm.

<< CA ST § 25910 >>

25910. (a) Except as provided in subdivision (b), no endorsement or renewal endorsement issued pursuant to Section 25915 shall be effective unless it is in the format set forth in subdivision (c) of Section 25460.

(b) Any peace officer listed in subdivision (f) of Section 830.2 or in subdivision (c) of Section 830.5, who is retired between January 2, 1981, and on or before December 31, 1988, and who is authorized to carry a loaded firearm pursuant to this article, shall not be required to have an endorsement in the format set forth in subdivision (c) of Section 25460 until the time of the issuance, on or after January 1, 1989, of a renewal endorsement pursuant to Section 25915.

<< CA ST § 25915 >>

25915. Every five years, a retired peace officer, except an officer listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, shall petition the issuing agency for renewal of the privilege to carry a loaded firearm.

<< CA ST § 25920 >>

25920. (a) The agency from which a peace officer is honorably retired may, upon initial retirement of the peace officer, or at any time subsequent thereto, deny or revoke for good cause the retired officer's privilege to carry a loaded firearm.

(b) A peace officer who is listed in Section 830.1 or 830.2, subdivision (a) of Section 830.33, or subdivision (c) of Section 830.5 who is retired prior to January 1, 1981, shall have the privilege to carry a loaded firearm denied or revoked by having the agency from which the officer retired stamp on the officer's identification certificate "No CCW privilege."

<< CA ST § 25925 >>

25925. (a) An honorably retired peace officer who is listed in subdivision (c) of Section 830.5 and authorized to carry a loaded firearm by this article shall meet the training requirements of Section 832 and shall qualify with the firearm at least annually.

(b) The individual retired peace officer shall be responsible for maintaining eligibility to carry a loaded firearm.

(c) The Department of Justice shall provide subsequent arrest notification pursuant to Section 11105.2 regarding honorably retired peace officers listed in subdivision (c) of Section 830.5 to the agency from which the officer has retired.

pt. 6 t. 4 d. 5 ch. 3 art. 4 pr. § 26000

Article 4. Other Exemptions to the Crime of Carrying a Loaded Firearm in Public

<< CA ST § 26000 >>

26000. Section 25850 does not apply to members of the military forces of this state or of the United States engaged in the performance of their duties.

<< CA ST § 26005 >>

26005. Section 25850 does not apply to either of the following:

(a) Persons who are using target ranges for the purpose of practice shooting with a firearm.

(b) Members of shooting clubs while hunting on the premises of those clubs.

<< CA ST § 26010 >>

26010. Section 25850 does not apply to the carrying of any handgun by any person as authorized pursuant to Chapter 4 (commencing with Section 26150) of Division 5.

<< CA ST § 26015 >>

26015. Section 25850 does not apply to any armored vehicle guard, as defined in Section 7582.1 of the Business and Professions Code, if either of the following conditions is satisfied:

(a) The guard was hired prior to January 1, 1977, and is acting within the course and scope of employment.

(b) The guard was hired on or after January 1, 1977, has received a firearms qualification card from the Department of Consumer Affairs, and is acting within the course and scope of employment.

<< CA ST § 26020 >>

26020. (a) Upon approval of the sheriff of the county in which the retiree resides, Section 25850 does not apply to any honorably retired federal officer or agent of any federal law enforcement agency, including, but not limited to, the Federal Bureau of Investigation, the Secret Service, the United States Customs Service, the Federal Bureau of Alcohol, Tobacco, and Firearms, the Federal Bureau of Narcotics, the Drug Enforcement Administration, the United States Border Patrol, and any officer or agent of the Internal Revenue Service who was authorized to carry weapons while on duty, who was assigned to duty within the state for a period of not less than one year, or who retired from active service in the state.

(b) A retired federal officer or agent shall provide the sheriff with certification from the agency from which the officer or agent retired certifying that person's service in the state, the nature of that person's retirement, and indicating the agency's concurrence that the retired federal officer or agent should be accorded the privilege of carrying a loaded firearm.

(c) Upon approval, the sheriff shall issue a permit to the retired federal officer or agent indicating that the retiree may carry a loaded firearm in accordance with this section. The permit shall be valid for a period not exceeding five years, shall be carried by the retiree while carrying a loaded firearm, and may be revoked for good cause.

(d) The sheriff of the county in which the retired federal officer or agent resides may require recertification prior to a permit renewal, and may suspend the privilege for cause. The sheriff may charge a fee necessary to cover any reasonable expenses incurred by the county.

<< CA ST § 26025 >>

26025. Section 25850 does not apply to any of the following who have completed a regular course in firearms training approved by the Commission on Peace Officer Standards and Training:

(a) Patrol special police officers appointed by the police commission of any city, county, or city and county under the express terms of its charter who also, under the express terms of the charter, satisfy all of the following requirements:

(1) They are subject to suspension or dismissal after a hearing on charges duly filed with the commission after a fair and impartial trial.

(2) They are not less than 18 years of age or more than 40 years of age.

(3) They possess physical qualifications prescribed by the commission.

(4) They are designated by the police commission as the owners of a certain beat or territory as may be fixed from time to time by the police commission.

(b) Animal control officers or zookeepers, regularly compensated in that capacity by a governmental agency, when carrying weapons while acting in the course and scope of their employment and when designated by a local ordinance or, if the governmental agency is not authorized to act by ordinance, by a resolution, either individually or by class, to carry the weapons.

(c) Persons who are authorized to carry the weapons pursuant to Section 14502 of the Corporations Code, while actually engaged in the performance of their duties pursuant to that section.

(d) Harbor police officers designated pursuant to Section 663.5 of the Harbors and Navigation Code.

<< CA ST § 26030 >>

26030. (a) Section 25850 does not apply to any of the following who have been issued a certificate pursuant to subdivision (d):

(1) Guards or messengers of common carriers, banks, and other financial institutions, while actually employed in and about the shipment, transportation, or delivery of any money, treasure, bullion, bonds, or other thing of value within this state.

(2) Guards of contract carriers operating armored vehicles pursuant to California Highway Patrol and Public Utilities Commission authority, if they were hired prior to January 1, 1977.

(3) Guards of contract carriers operating armored vehicles pursuant to California Highway Patrol and Public Utilities Commission authority, if they were hired on or after January 1, 1977, and they have completed a course in the carrying and use of firearms that meets the standards prescribed by the Department of Consumer Affairs.

(4) Private investigators licensed pursuant to Chapter 11.3 (commencing with Section 7512) of Division 3 of the Business and Professions Code, while acting within the course and scope of their employment.

(5) Uniformed employees of private investigators licensed pursuant to Chapter 11.3 (commencing with Section 7512) of Division 3 of the Business and Professions Code, while acting within the course and scope of their employment.

(6) Private patrol operators licensed pursuant to Chapter 11.5 (commencing with Section 7580) of Division 3 of the Business and Professions Code, while acting within the course and scope of their employment.

(7) Uniformed employees of private patrol operators licensed pursuant to Chapter 11.5 (commencing with Section 7580) of Division 3 of the Business and Professions Code, while acting within the course and scope of their employment.

(8) Alarm company operators licensed pursuant to Chapter 11.6 (commencing with Section 7590) of Division 3 of the Business and Professions Code, while acting within the course and scope of their employment.

(9) Uniformed security guards or night watch persons employed by any public agency, while acting within the scope and course of their employment.

(10) Uniformed security guards, regularly employed and compensated in that capacity by persons engaged in any lawful business, and uniformed alarm agents employed by an alarm company operator, while actually engaged in protecting and preserving the property of their employers, or on duty or en route to or from their residences or their places of employment, and security guards and alarm agents en route to or from their residences or employer-required range training.

(b) Nothing in paragraph (10) of subdivision (a) shall be construed to prohibit cities and counties from enacting ordinances requiring alarm agents to register their names.

(c) A certificate under this section shall not be required of any person who is a peace officer, who has completed all training required by law for the exercise of the person's power as a peace officer, and who is employed while not on duty as a peace officer.

(d) The Department of Consumer Affairs may issue a certificate to any person referred to in this section, upon notification by the school where the course was completed, that the person has successfully completed a course in the carrying and use of firearms and a course of training in the exercise of the powers of arrest, which meet the standards prescribed by the department pursuant to Section 7583.5 of the Business and Professions Code.

<< CA ST § 26035 >>

26035. Nothing in Section 25850 shall prevent any person engaged in any lawful business, including a nonprofit organization, or any officer, employee, or agent authorized by that person for lawful purposes connected with that business, from having a loaded firearm within the person's place of business, or any person in lawful possession of private property from having a loaded firearm on that property.

<< CA ST § 26040 >>

26040. Nothing in Section 25850 shall prevent any person from carrying a loaded firearm in an area within an incorporated city while engaged in hunting, provided that the hunting at that place and time is not prohibited by the city council.

<< CA ST § 26045 >>

26045. (a) Nothing in Section 25850 is intended to preclude the carrying of any loaded firearm, under circumstances where it would otherwise be lawful, by a person who reasonably believes that any person or the property of any person is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property.

(b) A violation of Section 25850 is justifiable when a person who possesses a firearm reasonably believes that person is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person who has been found to pose a threat to the life or safety of the person who possesses the firearm. This subdivision may not apply when the circumstances involve a mutual restraining order issued pursuant to Division 10 (commencing with Section 6200) of the Family Code absent a factual finding of a specific threat to the person's life or safety. It is not the intent of the Legislature to limit, restrict, or narrow the application of current statutory or judicial authority to apply this or other justifications to a defendant charged with violating Section 25400 or committing another similar offense. Upon trial for violating Section 25850, the trier of fact shall determine whether the defendant was acting out of a reasonable belief that the defendant was in grave danger.

(c) As used in this section, "immediate" means the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance.

<< CA ST § 26050 >>

26050. Nothing in Section 25850 is intended to preclude the carrying of a loaded firearm by any person while engaged in the act of making or attempting to make a lawful arrest.

<< CA ST § 26055 >>

26055. Nothing in Section 25850 shall prevent any person from having a loaded weapon, if it is otherwise lawful, at the person's place of residence, including any temporary residence or campsite.

<< CA ST § 26060 >>

26060. Nothing in Section 25850 shall prevent any person from storing aboard any vessel or aircraft any loaded or unloaded rocket, rocket propelled projectile launcher, or similar device designed primarily for emergency or distress signaling purposes, or from possessing that type of a device while in a permitted hunting area or traveling to or from a permitted hunting area and carrying a valid California permit or license to hunt.

pt. 6 t. 4 d. 5 ch. 3 art. 5 pr. § 26100

Article 5. Loaded Firearm in a Motor Vehicle

<< CA ST § 26100 >>

26100. (a) It is a misdemeanor for a driver of any motor vehicle or the owner of any motor vehicle, whether or not the owner of the vehicle is occupying the vehicle, knowingly to permit any other person to carry into or bring into the vehicle a firearm in violation of Section 25850 of this code or Section 2006 of the Fish and Game Code.

(b) Any driver or owner of any vehicle, whether or not the owner of the vehicle is occupying the vehicle, who knowingly permits any other person to discharge any firearm from the vehicle is punishable by imprisonment in the county jail for not more than one year or in state prison for 16 months or two or three years.

(c) Any person who willfully and maliciously discharges a firearm from a motor vehicle at another person other than an occupant of a motor vehicle is guilty of a felony punishable by imprisonment in state prison for three, five, or seven years.

(d) Except as provided in Section 3002 of the Fish and Game Code, any person who willfully and maliciously discharges a firearm from a motor vehicle is guilty of a public offense punishable by imprisonment in the county jail for not more than one year or in the state prison.

pt. 6 t. 4 d. 5 ch. 4 pr. § 26150

Chapter 4. License to Carry A Pistol, Revolver, or Other Firearm Capable of Being Concealed Upon the Person

<< CA ST § 26150 >>

26150. (a) When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following:

(1) The applicant is of good moral character.

(2) Good cause exists for issuance of the license.

(3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business.

(4) The applicant has completed a course of training as described in Section 26165.

(b) The sheriff may issue a license under subdivision (a) in either of the following formats:

(1) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(2) Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

<< CA ST § 26155 >>

26155. (a) When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the chief or other head of a municipal police department of any city or city and county may issue a license to that person upon proof of all of the following:

(1) The applicant is of good moral character.

(2) Good cause exists for issuance of the license.

(3) The applicant is a resident of that city.

(4) The applicant has completed a course of training as described in Section 26165.

(b) The chief or other head of a municipal police department may issue a license under subdivision (a) in either of the following formats:

(1) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(2) Where the population of the county in which the city is located is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(c) Nothing in this chapter shall preclude the chief or other head of a municipal police department of any city from entering an agreement with the sheriff of the county in which the city is located for the sheriff to process all applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this chapter.

<< CA ST § 26160 >>

26160. Each licensing authority shall publish and make available a written policy summarizing the provisions of Section 26150 and subdivisions (a) and (b) of Section 26155.

<< CA ST § 26165 >>

26165. (a) For new license applicants, the course of training for issuance of a license under Section 26150 or 26155 may be any course acceptable to the licensing authority, shall not exceed 16 hours, and shall include instruction on at least firearm safety and the law regarding the permissible use of a firearm.

(b) Notwithstanding subdivision (a), the licensing authority may require a community college course certified by the Commission on Peace Officer Standards and Training, up to a maximum of 24 hours, but only if required uniformly of all license applicants without exception.

(c) For license renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than four hours, and shall include instruction on at least firearm safety and the law regarding the permissible use of a firearm. No course of training shall be required for any person certified by the licensing authority as a trainer for purposes of this section, in order for that person to renew a license issued pursuant to this article.

<< CA ST § 26170 >>

26170. (a) Upon proof of all of the following, the sheriff of a county, or the chief or other head of a municipal police department of any city or city and county, may issue to an applicant a license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person:

(1) The applicant is of good moral character.

(2) Good cause exists for issuance of the license.

(3) The applicant has been deputized or appointed as a peace officer pursuant to subdivision (a) or (b) of Section 830.6 by that sheriff or that chief of police or other head of a municipal police department.

(b) Direct or indirect fees for the issuance of a license pursuant to this section may be waived.

(c) The fact that an applicant for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person has been deputized or appointed as a peace officer pursuant to subdivision (a) or (b) of Section 830.6 shall be considered only for the purpose of issuing a license pursuant to this section, and shall not be considered for the purpose of issuing a license pursuant to Section 26150 or 26155.

<< CA ST § 26175 >>

26175. (a)(1) Applications for licenses, applications for amendments to licenses, amendments to licenses, and licenses under this article shall be uniform throughout the state, upon forms to be prescribed by the Attorney General.

(2) The Attorney General shall convene a committee composed of one representative of the California State Sheriffs' Association, one representative of the California Police Chiefs' Association, and one representative of the Department of Justice

to review, and as deemed appropriate, revise the standard application form for licenses. The committee shall meet for this purpose if two of the committee's members deem that necessary.

(b) The application shall include a section summarizing the statutory provisions of state law that result in the automatic denial of a license.

(c) The standard application form for licenses described in subdivision (a) shall require information from the applicant, including, but not limited to, the name, occupation, residence and business address of the applicant, the applicant's age, height, weight, color of eyes and hair, and reason for desiring a license to carry the weapon.

(d) Applications for licenses shall be filed in writing, and signed by the applicant.

(e) Applications for amendments to licenses shall be filed in writing and signed by the applicant, and shall state what type of amendment is sought pursuant to Section 26215 and the reason for desiring the amendment.

(f) The forms shall contain a provision whereby the applicant attests to the truth of statements contained in the application.

(g) An applicant shall not be required to complete any additional application or form for a license, or to provide any information other than that necessary to complete the standard application form described in subdivision (a), except to clarify or interpret information provided by the applicant on the standard application form.

(h) The standard application form described in subdivision (a) is deemed to be a local form expressly exempt from the requirements of the Administrative Procedures Act, Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code.

(i) Any license issued upon the application shall set forth the licensee's name, occupation, residence and business address, the licensee's age, height, weight, color of eyes and hair, and the reason for desiring a license to carry the weapon, and shall, in addition, contain a description of the weapon or weapons authorized to be carried, giving the name of the manufacturer, the serial number, and the caliber. The license issued to the licensee may be laminated.

<< CA ST § 26180 >>

26180. (a) Any person who files an application required by Section 26175 knowing that any statement contained therein is false is guilty of a misdemeanor.

(b) Any person who knowingly makes a false statement on the application regarding any of the following is guilty of a felony:

(1) The denial or revocation of a license, or the denial of an amendment to a license, issued pursuant to this article.

(2) A criminal conviction.

(3) A finding of not guilty by reason of insanity.

(4) The use of a controlled substance.

(5) A dishonorable discharge from military service.

(6) A commitment to a mental institution.

(7) A renunciation of United States citizenship.

<< CA ST § 26185 >>

26185. (a)(1) The fingerprints of each applicant shall be taken and two copies on forms prescribed by the Department of Justice shall be forwarded to the department.

(2) Upon receipt of the fingerprints and the fee as prescribed in Section 26190, the department shall promptly furnish the forwarding licensing authority a report of all data and information pertaining to any applicant of which there is a record in its office, including information as to whether the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(3) No license shall be issued by any licensing authority until after receipt of the report from the department.

(b) Notwithstanding subdivision (a), if the license applicant has previously applied to the same licensing authority for a license to carry firearms pursuant to this article and the applicant's fingerprints and fee have been previously forwarded to the Department of Justice, as provided by this section, the licensing authority shall note the previous identification numbers and other data that would provide positive identification in the files of the Department of Justice on the copy of any subsequent license submitted to the department in conformance with Section 26225 and no additional application form or fingerprints shall be required.

(c) If the license applicant has a license issued pursuant to this article and the applicant's fingerprints have been previously forwarded to the Department of Justice, as provided in this section, the licensing authority shall note the previous identification numbers and other data that would provide positive identification in the files of the Department of Justice on the copy of any subsequent license submitted to the department in conformance with Section 26225 and no additional fingerprints shall be required.

<< CA ST § 26190 >>

26190. (a)(1) Each applicant for a new license or for the renewal of a license shall pay at the time of filing the application a fee determined by the Department of Justice. The fee shall not exceed the application processing costs of the Department of Justice for the direct costs of furnishing the report required by Section 26185.

(2) After the department establishes fees sufficient to reimburse the department for processing costs, fees charged shall increase at a rate not to exceed the legislatively approved annual cost-of-living adjustments for the department's budget.

(3) The officer receiving the application and the fee shall transmit the fee, with the fingerprints if required, to the Department of Justice.

(b)(1) The licensing authority of any city, city and county, or county may charge an additional fee in an amount equal to the actual costs for processing the application for a new license, excluding fingerprint and training costs, but in no case to exceed one hundred dollars ($100), and shall transmit the additional fee, if any, to the city, city and county, or county treasury.

(2) The first 20 percent of this additional local fee may be collected upon filing the initial application. The balance of the fee shall be collected only upon issuance of the license.

(c) The licensing authority may charge an additional fee, not to exceed twenty-five dollars ($25), for processing the application for a license renewal, and shall transmit an additional fee, if any, to the city, city and county, or county treasury.

(d) These local fees may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the Department of Industrial Relations.

(e)(1) In the case of an amended license pursuant to Section 26215, the licensing authority of any city, city and county, or county may charge a fee, not to exceed ten dollars ($10), for processing the amended license.

(2) This fee may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the Department of Industrial Relations.

(3) The licensing authority shall transmit the fee to the city, city and county, or county treasury.

(f)(1) If psychological testing on the initial application is required by the licensing authority, the license applicant shall be referred to a licensed psychologist used by the licensing authority for the psychological testing of its own employees. The applicant may be charged for the actual cost of the testing in an amount not to exceed one hundred fifty dollars ($150).

(2) Additional psychological testing of an applicant seeking license renewal shall be required only if there is compelling evidence to indicate that a test is necessary. The cost to the applicant for this additional testing shall not exceed one hundred fifty dollars ($150).

(g) Except as authorized pursuant to this section, no requirement, charge, assessment, fee, or condition that requires the payment of any additional funds by the applicant may be imposed by any licensing authority as a condition of the application for a license.

<< CA ST § 26195 >>

26195. (a) A license under this article shall not be issued if the Department of Justice determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(b)(1) A license under this article shall be revoked by the local licensing authority if at any time either the local licensing authority is notified by the Department of Justice that a licensee is prohibited by state or federal law from owning or purchasing firearms, or the local licensing authority determines that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(2) If at any time the Department of Justice determines that a licensee is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, the department shall immediately notify the local licensing authority of the determination.

(3) If the local licensing authority revokes the license, the Department of Justice shall be notified of the revocation pursuant to Section 26225. The licensee shall also be immediately notified of the revocation in writing.

<< CA ST § 26200 >>

26200. (a) A license issued pursuant to this article may include any reasonable restrictions or conditions that the issuing authority deems warranted, including restrictions as to the time, place, manner, and circumstances under which the licensee may carry a pistol, revolver, or other firearm capable of being concealed upon the person.

(b) Any restrictions imposed pursuant to subdivision (a) shall be indicated on any license issued.

<< CA ST § 26205 >>

26205. The licensing authority shall give written notice to the applicant indicating if the license under this article is approved or denied. The licensing authority shall give this notice within 90 days of the initial application for a new license or a license renewal, or 30 days after receipt of the applicant's criminal background check from the Department of Justice, whichever is later.

<< CA ST § 26210 >>

26210. (a) When a licensee under this article has a change of address, the license shall be amended to reflect the new address and a new license shall be issued pursuant to subdivision (b) of Section 26215.

(b) The licensee shall notify the licensing authority in writing within 10 days of any change in the licensee's place of residence.

(c) If both of the following conditions are satisfied, a license to carry a concealed handgun may not be revoked solely because the licensee's place of residence has changed to another county:

(1) The licensee has not breached any of the conditions or restrictions set forth in the license.

(2) The licensee has not become prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(d) Notwithstanding subdivision (c), if a licensee's place of residence was the basis for issuance of a license, any license issued pursuant to Section 26150 or 26155 shall expire 90 days after the licensee moves from the county of issuance.

(e) If the license is one to carry loaded and exposed a pistol, revolver, or other firearm capable of being concealed upon the person, the license shall be revoked immediately upon a change of the licensee's place of residence to another county.

<< CA ST § 26215 >>

26215. (a) A person issued a license pursuant to this article may apply to the licensing authority for an amendment to the license to do one or more of the following:

(1) Add or delete authority to carry a particular pistol, revolver, or other firearm capable of being concealed upon the person.

(2) Authorize the licensee to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(3) If the population of the county is less than 200,000 persons according to the most recent federal decennial census, authorize the licensee to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

(4) Change any restrictions or conditions on the license, including restrictions as to the time, place, manner, and circumstances under which the person may carry a pistol, revolver, or other firearm capable of being concealed upon the person.

(b) If the licensing authority amends the license, a new license shall be issued to the licensee reflecting the amendments.

(c) An amendment to the license does not extend the original expiration date of the license and the license shall be subject to renewal at the same time as if the license had not been amended.

(d) An application to amend a license does not constitute an application for renewal of the license.

<< CA ST § 26220 >>

26220. (a) Except as otherwise provided in this section and in subdivision (c) of Section 26210, a license issued pursuant to Section 26150 or 26155 is valid for any period of time not to exceed two years from the date of the license.

(b) If the licensee's place of employment or business was the basis for issuance of a license pursuant to Section 26150, the license is valid for any period of time not to exceed 90 days from the date of the license. The license shall be valid only in the county in which the license was originally issued. The licensee shall give a copy of this license to the licensing authority of the city, county, or city and county in which the licensee resides. The licensing authority that originally issued the license shall inform the licensee verbally and in writing in at least 16–point type of this obligation to give a copy of the license to the licensing authority of the city, county, or city and county of residence. Any application to renew or extend the validity of, or reissue, the license may be granted only upon the concurrence of the licensing authority that originally issued the license and the licensing authority of the city, county, or city and county in which the licensee resides.

(c) A license issued pursuant to Section 26150 or 26155 is valid for any period of time not to exceed three years from the date of the license if the license is issued to any of the following individuals:

(1) A judge of a California court of record.

(2) A full-time court commissioner of a California court of record.

(3) A judge of a federal court.

(4) A magistrate of a federal court.

(d) A license issued pursuant to Section 26150 or 26155 is valid for any period of time not to exceed four years from the date of the license if the license is issued to a custodial officer who is an employee of the sheriff as provided in Section 831.5, except that the license shall be invalid upon the conclusion of the person's employment pursuant to Section 831.5 if the four-year period has not otherwise expired or any other condition imposed pursuant to this article does not limit the validity of the license to a shorter time period.

(e) A license issued pursuant to Section 26170 to a peace officer appointed pursuant to Section 830.6 is valid for any period of time not to exceed four years from the date of the license, except that the license shall be invalid upon the conclusion of the person's appointment pursuant to Section 830.6 if the four-year period has not otherwise expired or any other condition imposed pursuant to this article does not limit the validity of the license to a shorter time period.

<< CA ST § 26225 >>

26225. (a) A record of the following shall be maintained in the office of the licensing authority:

(1) The denial of a license.

(2) The denial of an amendment to a license.

(3) The issuance of a license.

(4) The amendment of a license.

(5) The revocation of a license.

(b) Copies of each of the following shall be filed immediately by the issuing officer or authority with the Department of Justice:

(1) The denial of a license.

(2) The denial of an amendment to a license.

(3) The issuance of a license.

(4) The amendment of a license.

(5) The revocation of a license.

(c)(1) Commencing on or before January 1, 2000, and annually thereafter, each licensing authority shall submit to the Attorney General the total number of licenses issued to peace officers pursuant to Section 26170, and to judges pursuant to Section 26150 or 26155.

(2) The Attorney General shall collect and record the information submitted pursuant to this subdivision by county and licensing authority.


pt. 6 t. 4 d. 5 ch. 5 pr. § 26300

Chapter 5. Retired Peace Officer Carrying A Concealed and Loaded Firearm

<< CA ST § 26300 >>

26300. (a) Any peace officer listed in Section 830.1 or 830.2 or subdivision (c) of Section 830.5 who retired prior to January 1, 1981, is authorized to carry a concealed and loaded firearm if the agency issued the officer an identification certificate and the certificate has not been stamped as specified in Section 25470.

(b) Any peace officer employed by an agency and listed in Section 830.1 or 830.2 or subdivision (c) of Section 830.5 who retired after January 1, 1981, shall have an endorsement on the officer's identification certificate stating that the issuing agency approves the officer's carrying of a concealed and loaded firearm.

(c) Any peace officer not listed in subdivision (a) or (b) who was authorized to, and did, carry a firearm during the course and scope of employment as a peace officer shall have an endorsement on the officer's identification certificate stating that the issuing agency approves the officer's carrying of a concealed and loaded firearm.


<< CA ST § 26305 >>

26305. (a) No peace officer who is retired after January 1, 1989, because of a psychological disability shall be issued an endorsement to carry a concealed and loaded firearm pursuant to this article.

(b) A retired peace officer may have the privilege to carry a concealed and loaded firearm revoked or denied by violating any departmental rule, or state or federal law that, if violated by an officer on active duty, would result in that officer's arrest, suspension, or removal from the agency.

(c) An identification certificate authorizing the officer to carry a concealed and loaded firearm or an endorsement on the certificate may be immediately and temporarily revoked by the issuing agency when the conduct of a retired peace officer compromises public safety.

(d) An identification certificate authorizing the officer to carry a concealed and loaded firearm or an endorsement may be permanently revoked or denied by the issuing agency only upon a showing of good cause. Good cause shall be determined at a hearing, as specified in Section 26320.

<< CA ST § 26310 >>

26310. (a) Issuance of an identification certificate authorizing the officer to carry a concealed and loaded firearm or an endorsement may be denied prior to a hearing.

(b) If a hearing is not conducted prior to the denial of an endorsement, a retired peace officer, within 15 days of the denial, shall have the right to request a hearing. A retired peace officer who fails to request a hearing pursuant to this section shall forfeit the right to a hearing.

<< CA ST § 26312 >>

26312. (a) Notice of a temporary revocation shall be effective upon personal service or upon receipt of a notice that was sent by first-class mail, postage prepaid, return receipt requested, to the retiree's last known place of residence.

(b) The retiree shall have 15 days to respond to the notification and request a hearing to determine if the temporary revocation should become permanent.

(c) A retired peace officer who fails to respond to the notice of hearing within the 15–day period shall forfeit the right to a hearing and the authority of the officer to carry a firearm shall be permanently revoked. The retired officer shall immediately return the identification certificate to the issuing agency.

(d) If a hearing is requested, good cause for permanent revocation shall be determined at a hearing, as specified in Section 26320. The hearing shall be held no later than 120 days after the request by the retired officer for a hearing is received.

(e) A retiree may waive the right to a hearing and immediately return the identification certificate to the issuing agency.

<< CA ST § 26315 >>

26315. (a) An identification certificate authorizing the officer to carry a concealed and loaded firearm or an endorsement may be permanently revoked only after a hearing, as specified in Section 26320.

(b) Any retired peace officer whose identification certificate authorizing the officer to carry a concealed and loaded firearm or an endorsement is to be revoked shall receive notice of the hearing. Notice of the hearing shall be served either personally on the retiree or sent by first-class mail, postage prepaid, return receipt requested to the retiree's last known place of residence.

(c) From the date the retiree signs for the notice or upon the date the notice is served personally on the retiree, the retiree shall have 15 days to respond to the notification. A retired peace officer who fails to respond to the notice of the hearing shall forfeit the right to a hearing and the authority of the officer to carry a firearm shall be permanently revoked. The retired officer shall immediately return the identification certificate to the issuing agency.

(d) If a hearing is requested, good cause for permanent revocation shall be determined at the hearing, as specified in Section 26320. The hearing shall be held no later than 120 days after the request by the retired officer for a hearing is received.

(e) The retiree may waive the right to a hearing and immediately return the identification certificate to the issuing agency.

<< CA ST § 26320 >>

26320. (a) Any hearing conducted under this article shall be held before a three-member hearing board. One member of the board shall be selected by the agency and one member shall be selected by the retired peace officer or his or her employee organization. The third member shall be selected jointly by the agency and the retired peace officer or his or her employee organization.

(b) Any decision by the board shall be binding on the agency and the retired peace officer.

<< CA ST § 26325 >>

26325. (a) A retired peace officer, when notified of the revocation of the privilege to carry a concealed and loaded firearm, after the hearing, or upon forfeiting the right to a hearing, shall immediately surrender to the issuing agency the officer's identification certificate.

(b) The issuing agency shall reissue a new identification certificate without an endorsement.

(c) Notwithstanding subdivision (b), if the peace officer retired prior to January 1, 1981, and was at the time of retirement a peace officer listed in Section 830.1 or 830.2 or subdivision (c) of Section 830.5, the issuing agency shall stamp on the identification certificate "No CCW privilege."

pt. 6 t. 4 d. 6 pr. § 26500

DIVISION 6. SALE, LEASE, OR TRANSFER OF FIREARMS

pt. 6 t. 4 d. 6 ch. 1 pr. § 26500

Chapter 1. License Requirement for Sale, Lease, or Transfer of Firearms

pt. 6 t. 4 d. 6 ch. 1 art 1 pr. § 26500

Article 1. License Requirement and Miscellaneous Exceptions

<< CA ST § 26500 >>

26500. (a) No person shall sell, lease, or transfer firearms unless the person has been issued a license pursuant to Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) of Chapter 2.

(b) Any person violating this article is guilty of a misdemeanor.

<< CA ST § 26505 >>

26505. Section 26500 does not apply to the sale, lease, or transfer of any firearm by any of the following:

(a) A person acting pursuant to operation of law.

(b) A person acting pursuant to a court order.

(c) A person acting pursuant to the Enforcement of Judgments Law (Title 9 (commencing with Section 680.010) of Part 2 of the Code of Civil Procedure).

(d) A person who liquidates a personal firearm collection to satisfy a court judgment.

<< CA ST § 26510 >>

26510. Section 26500 does not apply to a person acting pursuant to subdivision (f) of Section 186.22a or Section 18000 or 18005.

<< CA ST § 26515 >>

26515. Section 26500 does not apply to the sale, lease, or transfer of a firearm if both of the following conditions are satisfied:

(a) The sale, lease, or transfer is made by a person who obtains title to the firearm by intestate succession or bequest, or as a surviving spouse pursuant to Chapter 1 (commencing with Section 13500) of Part 2 of Division 8 of the Probate Code.

(b) The person disposes of the firearm within 60 days of receipt of the firearm.

<< CA ST § 26520 >>

26520. (a) Section 26500 does not apply to the infrequent sale, lease, or transfer of firearms.

(b) As used in this section, "infrequent" has the meaning provided in Section 16730.

<< CA ST § 26525 >>

26525. (a) Section 26500 does not apply to the sale, lease, or transfer of used firearms, other than handguns, at gun shows or events, as specified in Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) of Chapter 2, by a person other than a licensee or dealer, provided the person has a valid federal firearms license and a current certificate of eligibility issued by the Department of Justice, as specified in Section 26710, and provided all the sales, leases, or transfers fully comply with Section 27545. However, the person shall not engage in the sale, lease, or transfer of used firearms other than handguns at more than 12 gun shows or events in any calendar year and shall not sell, lease, or transfer more than 15 used firearms other than handguns at any single gun show or event. In no event shall the person sell more than 75 used firearms other than handguns in any calendar year.

(b) The Department of Justice shall adopt regulations to administer this program and shall recover the full costs of administration from fees assessed applicants.

<< CA ST § 26530 >>

26530. Section 26500 does not apply to sales, deliveries, or transfers of firearms between or to importers and manufacturers of firearms licensed to engage in that business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 26535 >>

26535. Section 26500 does not apply to any sale, delivery, or transfer of firearms that satisfies both of the following conditions:

(a) It is made by an importer or manufacturer licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(b) It is made to a dealer or wholesaler.

<< CA ST § 26540 >>

26540. Section 26500 does not apply to deliveries and transfers of firearms made pursuant to Sections 18000 and 18005, pursuant to Division 4 (commencing with Section 18250) of Title 2, or pursuant to Sections 34005 and 34010.

<< CA ST § 26545 >>

26545. Section 26500 does not apply to the loan of a firearm for the purposes of shooting at targets, if the loan occurs on the premises of a target facility that holds a business or regulatory license or on the premises of any club or organization organized for the purposes of practicing shooting at targets upon established ranges, whether public or private, if the firearm is at all times kept within the premises of the target range or on the premises of the club or organization.

<< CA ST § 26550 >>

26550. Section 26500 does not apply to any sale, delivery, or transfer of firearms that satisfies all of the following requirements:

(a) It is made by a manufacturer, importer, or wholesaler licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(b) It is made to a person who resides outside this state and is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(c) It is made in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 26555 >>

26555. Section 26500 does not apply to any sale, delivery, or transfer of firearms that satisfies all of the following requirements:

(a) It is made by a person who resides outside this state and is licensed outside this state pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(b) It is made to a manufacturer, importer, or wholesaler.

(c) It is made in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 26560 >>

26560. Section 26500 does not apply to any sale, delivery, or transfer of firearms by a wholesaler to a dealer.

<< CA ST § 26565 >>

26565. Section 26500 does not apply to any sale, delivery, or transfer of firearms that satisfies all of the following conditions:

(a) It is made by a person who resides outside this state.

(b) It is made to a person licensed pursuant to Sections 26700 to 26915, inclusive.

(c) It is made in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 26570 >>

26570. Section 26500 does not apply to any sale, delivery, or transfer of firearms that satisfies all of the following conditions:

(a) It is made by a person who resides outside this state and is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(b) It is made to a dealer.

(c) It is made in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 26575 >>

26575. Section 26500 does not apply to the sale, delivery, or transfer of an unloaded firearm by one wholesaler to another wholesaler if that firearm is intended as merchandise in the receiving wholesaler's business.

<< CA ST § 26580 >>

26580. Section 26500 does not apply to the loan of an unloaded firearm or the loan of a firearm loaded with blank cartridges for use solely as a prop for a motion picture, television, or video production or entertainment or theatrical event.

<< CA ST § 26585 >>

26585. Section 26500 does not apply to the delivery of an unloaded firearm that is a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations, if the delivery satisfies all of the following conditions:

(a) It is made by a person licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(b) It is made by a person with a current certificate of eligibility issued pursuant to Section 26710.

(c) It is made to a dealer.

<< CA ST § 26587 >>

26587. Section 26500 does not apply to either of the following:

(a) A loan of a firearm to a gunsmith for service or repair.

(b) The return of the firearm by the gunsmith.

<< CA ST § 26588 >>

26588. Section 26500 does not apply to any of the following:

(a) The sale, delivery, transfer, or return of a firearm regulated pursuant to Chapter 1 (commencing with Section 18710) of Division 5 of Title 2 by a person who holds a permit issued pursuant to Article 3 (commencing with Section 18900) of that chapter, if the sale, delivery, transfer, or return is conducted in accordance with the terms and conditions of the permit.

(b) The sale, delivery, transfer, or return of a firearm regulated pursuant to Chapter 2 (commencing with Section 30500) of Division 10 by a person who holds a permit issued pursuant to Section 31005, if the sale, delivery, transfer, or return is conducted in accordance with the terms and conditions of the permit.

(c) The sale, delivery, transfer, or return of a firearm regulated pursuant to Chapter 6 (commencing with Section 32610) of Division 10 by a person who holds a permit issued pursuant to Section 32650, if the sale, delivery, transfer, or return is conducted in accordance with the terms and conditions of the permit.

(d) The sale, delivery, transfer, or return of a firearm regulated pursuant to Article 2 (commencing with Section 33300) of Chapter 8 of Division 10 by a person who holds a permit issued pursuant to Section 33300, if the sale, delivery, transfer, or return is conducted in accordance with the terms and conditions of the permit.

<< CA ST § 26590 >>

26590. Section 26500 does not apply to deliveries, transfers, or returns of firearms made by a court or a law enforcement agency pursuant to Chapter 2 (commencing with Section 33850) of Division 11.

pt. 6 t. 4 d. 6 ch. 1 art. 2 pr. § 26600

Article 2. Exceptions Relating to Law Enforcement

<< CA ST § 26600 >>

26600. (a) Section 26500 does not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 26605 >>

26605. Section 26500 does not apply to the loan of a firearm if all of the following conditions are satisfied:

(a) The loan is made by an authorized law enforcement representative of a city, county, or city and county, or of the state or federal government.

(b) The loan is made to a peace officer employed by that agency and authorized to carry a firearm.

(c) The loan is made for the carrying and use of that firearm by that peace officer in the course and scope of the officer's duties.

<< CA ST § 26610 >>

26610. (a) Section 26500 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 26615 >>

26615. (a) Section 26500 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

pt. 6 t. 4 d. 6 ch. 2 pr. § 26700

Chapter 2. Issuance, Forfeiture, and Conditions of License to Sell, Lease, or Transfer Firearms at Retail

pt. 6 t. 4 d. 6 ch. 2 art. 1 pr. § 26700

Article 1. License to Sell, Lease, or Transfer Firearms at Retail

<< CA ST § 26700 >>

26700. As used in this division, and in any other provision listed in Section 16580, "dealer," "licensee," or "person licensed pursuant to Sections 26700 to 26915, inclusive" means a person who satisfies all of the following requirements:

(a) Has a valid federal firearms license.

(b) Has any regulatory or business license, or licenses, required by local government.

(c) Has a valid seller's permit issued by the State Board of Equalization.

(d) Has a certificate of eligibility issued by the Department of Justice pursuant to Section 26710.

(e) Has a license issued in the format prescribed by subdivision (c) of Section 26705.

(f) Is among those recorded in the centralized list specified in Section 26715.

<< CA ST § 26705 >>

26705. (a) The duly constituted licensing authority of a city, county, or a city and county shall accept applications for, and may grant licenses permitting, licensees to sell firearms at retail within the city, county, or city and county. The duly constituted licensing authority shall inform applicants who are denied licenses of the reasons for the denial in writing.

(b) No license shall be granted to any applicant who fails to provide a copy of the applicant's valid federal firearms license, valid seller's permit issued by the State Board of Equalization, and the certificate of eligibility described in Section 26710.

(c) A license granted by the duly constituted licensing authority of any city, county, or city and county, shall be valid for not more than one year from the date of issuance and shall be in one of the following forms:

(1) In the form prescribed by the Attorney General.

(2) A regulatory or business license that states on its face "Valid for Retail Sales of Firearms" and is endorsed by the signature of the issuing authority.

(3) A letter from the duly constituted licensing authority having primary jurisdiction for the applicant's intended business location stating that the jurisdiction does not require any form of regulatory or business license or does not otherwise restrict or regulate the sale of firearms.

(d) Local licensing authorities may assess fees to recover their full costs of processing applications for licenses.

<< CA ST § 26710 >>

26710. (a) A person may request a certificate of eligibility from the Department of Justice.

(b) The Department of Justice shall examine its records and records available to the department in the National Instant Criminal Background Check System in order to determine if the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(c) The department shall issue a certificate to an applicant if the department's records indicate that the applicant is not a person who is prohibited by state or federal law from possessing firearms.

(d) The department shall adopt regulations to administer the certificate of eligibility program and shall recover the full costs of administering the program by imposing fees assessed to applicants who apply for those certificates.

<< CA ST § 26715 >>

26715. (a) Except as otherwise provided in paragraphs (1) and (3) of subdivision (b), the Department of Justice shall keep a centralized list of all persons licensed pursuant to subdivisions (a) to (e), inclusive, of Section 26700.

(b)(1) The department may remove from this list any person who knowingly or with gross negligence violates a provision listed in Section 16575.

(2) The department shall remove from the centralized list any person whose federal firearms license has expired or has been revoked.

(3) Upon removal of a dealer from this list, notification shall be provided to local law enforcement and licensing authorities in the jurisdiction where the dealer's business is located.

(c) Information compiled from the list shall be made available, upon request, for the following purposes only:

(1) For law enforcement purposes.

(2) When the information is requested by a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code for determining the validity of the license for firearm shipments.

(3) When information is requested by a person promoting, sponsoring, operating, or otherwise organizing a show or event as defined in Section 478.100 of Title 27 of the Code of Federal Regulations, or its successor, who possesses a valid certificate of eligibility issued pursuant to Article 1 (commencing with Section 27200) of Chapter 3, if that information is requested by the person to determine the eligibility of a prospective participant in a gun show or event to conduct transactions as a firearms dealer pursuant to subdivision (b) of Section 26805.

(d) Information provided pursuant to subdivision (c) shall be limited to information necessary to corroborate an individual's current license status as being one of the following:

(1) A person licensed pursuant to subdivisions (a) to (e), inclusive, of Section 26700.

(2) A person who is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code, and who is not subject to the requirement of being licensed pursuant to subdivisions (a) to (e), inclusive, of Section 26700.

<< CA ST § 26720 >>

26720. (a) The Department of Justice may inspect dealers to ensure compliance with the provisions listed in Section 16575.

(b) The department may assess an annual fee, not to exceed one hundred fifteen dollars ($115), to cover the reasonable cost of maintaining the list described in Section 26715, including the cost of inspections.

(c) Dealers whose place of business is in a jurisdiction that has adopted an inspection program to ensure compliance with firearms law shall be exempt from that portion of the department's fee that relates to the cost of inspections. The applicant is responsible for providing evidence to the department that the jurisdiction in which the business is located has the inspection program.

<< CA ST § 26725 >>

26725. The Department of Justice shall maintain and make available upon request information concerning all of the following:

(a) The number of inspections conducted and the amount of fees collected pursuant to Section 26720.

(b) A listing of exempted jurisdictions, as defined in Section 26720.

(c) The number of dealers removed from the centralized list defined in Section 26715.

(d) The number of dealers found to have violated a provision listed in Section 16575 with knowledge or gross negligence.

pt. 6 t. 4 d. 6 ch. 2 art. 2 pr. § 26800

Article 2. Grounds for Forfeiture of License

<< CA ST § 26800 >>

26800. A license under this chapter is subject to forfeiture for a breach of any of the prohibitions and requirements of this article, except those stated in the following provisions:

(a) Subdivision (c) of Section 26890.

(b) Subdivision (d) of Section 26890.

(c) Subdivision (b) of Section 26900.

<< CA ST § 26805 >>

26805. (a) Except as provided in subdivisions (b) and (c), the business of a licensee shall be conducted only in the buildings designated in the license.

(b)(1) A person licensed pursuant to Sections 26700 and 26705 may take possession of firearms and commence preparation of registers for the sale, delivery, or transfer of firearms at any gun show or event, as defined in Section 478.100 of Title 27 of the Code of Federal Regulations, or its successor, if the gun show or event is not conducted from any motorized or towed vehicle. A person conducting business pursuant to this subdivision shall be entitled to conduct business as authorized herein at any gun show or event in the state, without regard to the jurisdiction within this state that issued the license pursuant to Sections 26700 and 26705, provided the person complies with all applicable laws, including, but not limited to, the waiting period specified in subdivision (a) of Section 26815, and all applicable local laws, regulations, and fees, if any.

(2) A person conducting business pursuant to this subdivision shall publicly display the person's license issued pursuant to Sections 26700 and 26705, or a facsimile thereof, at any gun show or event, as specified in this subdivision.

(c)(1) A person licensed pursuant to Sections 26700 and 26705 may engage in the sale and transfer of firearms other than pistols, revolvers, or other firearms capable of being concealed upon the person, at events specified in Sections 26955, 27655, 27900, and 27905, subject to the prohibitions and restrictions contained in those sections.

(2) A person licensed pursuant to Sections 26700 and 26705 may also accept delivery of firearms other than pistols, revolvers, or other firearms capable of being concealed upon the person, outside the building designated in the license, provided the firearm is being donated for the purpose of sale or transfer at an auction or similar event specified in Section 27900.

(d) The firearm may be delivered to the purchaser, transferee, or person being loaned the firearm at one of the following places:

(1) The building designated in the license.

(2) The places specified in subdivision (b) or (c).

(3) The place of residence of, the fixed place of business of, or on private property owned or lawfully possessed by, the purchaser, transferee, or person being loaned the firearm.

## << CA ST § 26810 >>

26810. A person's license under this chapter, or a copy thereof certified by the issuing authority, shall be displayed on the premises where it can easily be seen.

## << CA ST § 26815 >>

26815. No firearm shall be delivered:

(a) Within 10 days of the application to purchase, or, after notice by the department pursuant to Section 28220, within 10 days of the submission to the department of any correction to the application, or within 10 days of the submission to the department of any fee required pursuant to Section 28225, whichever is later.

(b) Unless unloaded and securely wrapped or unloaded and in a locked container.

(c) Unless the purchaser, transferee, or person being loaned the firearm presents clear evidence of the person's identity and age to the dealer.

(d) Whenever the dealer is notified by the Department of Justice that the person is prohibited by state or federal law from processing, owning, purchasing, or receiving a firearm. The dealer shall make available to the person in the prohibited class a prohibited notice and transfer form, provided by the department, stating that the person is prohibited from owning or possessing a firearm, and that the person may obtain from the department the reason for the prohibition.

## << CA ST § 26820 >>

26820. No pistol, revolver, or other firearm or imitation thereof capable of being concealed upon the person, or placard advertising the sale or other transfer thereof, shall be displayed in any part of the premises where it can readily be seen from the outside.

<< CA ST § 26825 >>

26825. A licensee shall agree to and shall act properly and promptly in processing firearms transactions pursuant to Chapter 5 (commencing with Section 28050).

<< CA ST § 26830 >>

26830. A licensee shall comply with all of the following:

(a) Sections 27500 to 27535, inclusive.

(b) Section 27555.

(c) Section 28100.

(d) Article 2 (commencing with Section 28150) of Chapter 6.

(e) Article 3 (commencing with Section 28200) of Chapter 6.

(f) Section 30300.

<< CA ST § 26835 >>

26835. A licensee shall post conspicuously within the licensed premises the following warnings in block letters not less than one inch in height:

(a) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(b) "IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF–PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(c) "IF YOU KEEP ANY FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF–PREMISES TO A SCHOOL OR SCHOOL–SPONSORED EVENT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A FINE OF UP TO FIVE THOUSAND DOLLARS ($5,000), UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(d) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,

REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(e) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(f) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30–DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30–DAY PERIOD."

<< CA ST § 26840 >>

26840. (a) Commencing April 1, 1994, and until January 1, 2003, no pistol, revolver, or other firearm capable of being concealed upon the person shall be delivered unless the purchaser, transferee, or person being loaned the firearm presents to the dealer a basic firearms safety certificate.

(b) Commencing January 1, 2003, no dealer may deliver a handgun unless the person receiving the handgun presents to the dealer a valid handgun safety certificate. The firearms dealer shall retain a photocopy of the handgun safety certificate as proof of compliance with this requirement.

<< CA ST § 26845 >>

26845. (a) Commencing January 1, 2003, no handgun may be delivered unless the purchaser, transferee, or person being loaned the firearm presents documentation indicating that the person is a California resident.

(b) Satisfactory documentation shall include a utility bill from within the last three months, a residential lease, a property deed, or military permanent duty station orders indicating assignment within this state, or other evidence of residency as permitted by the Department of Justice.

(c) The firearms dealer shall retain a photocopy of the documentation as proof of compliance with this requirement.

<< CA ST § 26850 >>

26850. (a) Commencing January 1, 2003, except as authorized by the department, no firearms dealer may deliver a handgun unless the recipient performs a safe handling demonstration with that handgun.

(b) The safe handling demonstration shall commence with the handgun unloaded and locked with the firearm safety device with which it is required to be delivered, if applicable. While maintaining muzzle awareness, that is, the firearm is pointed in a safe direction, preferably down at the ground, and trigger discipline, that is, the trigger finger is outside of the trigger guard and along side of the handgun frame, at all times, the handgun recipient shall correctly and safely perform the following:

(1) If the handgun is a semiautomatic pistol, the steps listed in Section 26853.

(2) If the handgun is a double-action revolver, the steps listed in Section 26856.

(3) If the handgun is a single-action revolver, the steps listed in Section 26859.

(c) The recipient shall receive instruction regarding how to render that handgun safe in the event of a jam.

(d) The firearms dealer shall sign and date an affidavit stating that the requirements of subdivisions (a) and (b) have been met. The firearms dealer shall additionally obtain the signature of the handgun purchaser on the same affidavit. The firearms dealer shall retain the original affidavit as proof of compliance with this requirement.

(e) The recipient shall perform the safe handling demonstration for a department-certified instructor.

(f) No demonstration shall be required if the dealer is returning the handgun to the owner of the handgun.

(g) Department–certified instructors who may administer the safe handling demonstration shall meet the requirements set forth in subdivision (b) of Section 31635.

(h) The persons who are exempt from the requirements of subdivision (a) of Section 31615, pursuant to Section 31700, are also exempt from performing the safe handling demonstration.


<< CA ST § 26853 >>

26853. To comply with Section 26850, a safe handling demonstration for a semiautomatic pistol shall include all of the following steps:

(a) Remove the magazine.

(b) Lock the slide back. If the model of firearm does not allow the slide to be locked back, pull the slide back, visually and physically check the chamber to ensure that it is clear.

(c) Visually and physically inspect the chamber, to ensure that the handgun is unloaded.

(d) Remove the firearm safety device, if applicable. If the firearm safety device prevents any of the previous steps, remove the firearm safety device during the appropriate step.

(e) Load one bright orange, red, or other readily identifiable dummy round into the magazine. If no readily identifiable dummy round is available, an empty cartridge casing with an empty primer pocket may be used.

(f) Insert the magazine into the magazine well of the firearm.

(g) Manipulate the slide release or pull back and release the slide.

(h) Remove the magazine.

(i) Visually inspect the chamber to reveal that a round can be chambered with the magazine removed.

(j) Lock the slide back to eject the bright orange, red, or other readily identifiable dummy round. If the handgun is of a model that does not allow the slide to be locked back, pull the slide back and physically check the chamber to ensure that the chamber is clear. If no readily identifiable dummy round is available, an empty cartridge casing with an empty primer pocket may be used.

(k) Apply the safety, if applicable.

(l) Apply the firearm safety device, if applicable. This requirement shall not apply to an Olympic competition pistol if no firearm safety device, other than a cable lock that the department has determined would damage the barrel of the pistol, has been approved for the pistol, and the pistol is either listed in subdivision (b) of Section 32105 or is subject to subdivision (c) of Section 32105.

<< CA ST § 26856 >>

26856. To comply with Section 26850, a safe handling demonstration for a double-action revolver shall include all of the following steps:

(a) Open the cylinder.

(b) Visually and physically inspect each chamber, to ensure that the revolver is unloaded.

(c) Remove the firearm safety device. If the firearm safety device prevents any of the previous steps, remove the firearm safety device during the appropriate step.

(d) While maintaining muzzle awareness and trigger discipline, load one bright orange, red, or other readily identifiable dummy round into a chamber of the cylinder and rotate the cylinder so that the round is in the next-to-fire position. If no readily identifiable dummy round is available, an empty cartridge casing with an empty primer pocket may be used.

(e) Close the cylinder.

(f) Open the cylinder and eject the round.

(g) Visually and physically inspect each chamber to ensure that the revolver is unloaded.

(h) Apply the firearm safety device, if applicable. This requirement shall not apply to an Olympic competition pistol if no firearm safety device, other than a cable lock that the department has determined would damage the barrel of the pistol, has been approved for the pistol, and the pistol is either listed in subdivision (b) of Section 32105 or is subject to subdivision (c) of Section 32105.

<< CA ST § 26859 >>

26859. To comply with Section 26850, a safe handling demonstration for a single-action revolver shall include all of the following steps:

(a) Open the loading gate.

(b) Visually and physically inspect each chamber, to ensure that the revolver is unloaded.

(c) Remove the firearm safety device required to be sold with the handgun. If the firearm safety device prevents any of the previous steps, remove the firearm safety device during the appropriate step.

(d) Load one bright orange, red, or other readily identifiable dummy round into a chamber of the cylinder, close the loading gate and rotate the cylinder so that the round is in the next-to-fire position. If no readily identifiable dummy round is available, an empty cartridge casing with an empty primer pocket may be used.

(e) Open the loading gate and unload the revolver.

(f) Visually and physically inspect each chamber to ensure that the revolver is unloaded.

(g) Apply the firearm safety device, if applicable. This requirement shall not apply to an Olympic competition pistol if no firearm safety device, other than a cable lock that the department has determined would damage the barrel of the pistol, has been approved for the pistol, and the pistol is either listed in subdivision (b) of Section 32105 or is subject to subdivision (c) of Section 32105.

<< CA ST § 26865 >>

26865. Commencing July 1, 1992, a licensee shall offer to provide the purchaser or transferee of a firearm, or person being loaned a firearm, with a copy of the pamphlet described in Section 34205, and may add the cost of the pamphlet, if any, to the sales price of the firearm.

<< CA ST § 26870 >>

26870. A licensee shall not commit an act of collusion as defined in Section 27550.

<< CA ST § 26875 >>

26875. A licensee shall post conspicuously within the licensed premises a detailed list of each of the following:

(a) All charges required by governmental agencies for processing firearm transfers required by Section 12806, Chapter 5 (commencing with Section 28050), and Article 3 (commencing with Section 28200) of Chapter 6.

(b) All fees that the licensee charges pursuant to Section 12806 and Chapter 5 (commencing with Section 28050).

<< CA ST § 26880 >>

26880. A licensee shall not misstate the amount of fees charged by a governmental agency pursuant to Section 12806, Chapter 5 (commencing with Section 28050), and Article 3 (commencing with Section 28200) of Chapter 6.

<< CA ST § 26885 >>

26885. (a) Except as provided in subdivisions (b) and (c) of Section 26805, all firearms that are in the inventory of a licensee shall be kept within the licensed location.

(b) Within 48 hours of discovery, a licensee shall report the loss or theft of any of the following items to the appropriate law enforcement agency in the city, county, or city and county where the licensee's business premises are located:

(1) Any firearm that is merchandise of the licensee.

(2) Any firearm that the licensee takes possession of pursuant to Chapter 5 (commencing with Section 28050).

(3) Any firearm kept at the licensee's place of business.

<< CA ST § 26890 >>

26890. (a) Except as provided in subdivisions (b) and (c) of Section 26805, any time when the licensee is not open for business, all inventory firearms shall be stored in the licensed location. All firearms shall be secured using one of the following methods as to each particular firearm:

(1) Store the firearm in a secure facility that is a part of, or that constitutes, the licensee's business premises.

(2) Secure the firearm with a hardened steel rod or cable of at least one-eighth inch in diameter through the trigger guard of the firearm. The steel rod or cable shall be secured with a hardened steel lock that has a shackle. The lock and shackle shall be protected or shielded from the use of a boltcutter and the rod or cable shall be anchored in a manner that prevents the removal of the firearm from the premises.

(3) Store the firearm in a locked fireproof safe or vault in the licensee's business premises.

(b) The licensing authority in an unincorporated area of a county or within a city may impose security requirements that are more strict or are at a higher standard than those specified in subdivision (a).

(c) Upon written request from a licensee, the licensing authority may grant an exemption from compliance with the requirements of subdivision (a) if the licensee is unable to comply with those requirements because of local ordinances, covenants, lease conditions, or similar circumstances not under the control of the licensee.

(d) Subdivision (a) or (b) shall not apply to a licensee organized as a nonprofit public benefit corporation pursuant to Part 2 (commencing with Section 5110) of Division 2 of the Corporations Code, or as a mutual benefit corporation pursuant to Part 3 (commencing with Section 7110) of Division 2 of the Corporations Code, if both of the following conditions are satisfied:

(1) The nonprofit public benefit or mutual benefit corporation obtained the dealer's license solely and exclusively to assist that corporation or local chapters of that corporation in conducting auctions or similar events at which firearms are auctioned off to fund the activities of that corporation or the local chapters of the corporation.

(2) The firearms are not pistols, revolvers, or other firearms capable of being concealed upon the person.

<< CA ST § 26895 >>

26895. Commencing January 1, 1994, a licensee shall, upon the issuance or renewal of a license, submit a copy of it to the Department of Justice.

<< CA ST § 26900 >>

26900. (a) A licensee shall maintain and make available for inspection during business hours to any peace officer, authorized local law enforcement employee, or Department of Justice employee designated by the Attorney General, upon the presentation of proper identification, a firearm transaction record, as defined in Section 16550.

(b) A licensee shall be in compliance with the provisions of subdivision (a) if the licensee maintains and makes available for inspection during business hours to any peace officer, authorized local law enforcement employee, or Department of Justice employee designated by the Attorney General, upon the presentation of proper identification, the bound book containing the same information referred to in Section 478.124a and subdivision (e) of Section 478.125 of Title 27 of the Code of Federal Regulations and the records referred to in subdivision (a) of Section 478.124 of Title 27 of the Code of Federal Regulations.

<< CA ST § 26905 >>

26905. (a) On the date of receipt, a licensee shall report to the Department of Justice, in a format prescribed by the department, the acquisition by the licensee of the ownership of a pistol, revolver, or other firearm capable of being concealed upon the person.

(b) The provisions of this section shall not apply to any of the following transactions:

(1) A transaction subject to the provisions of Sections 26960 and 27660.

(2) The dealer acquired the firearm from a wholesaler.

(3) The dealer acquired the firearm from a person who is licensed as a manufacturer or importer to engage in those activities pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and any regulations issued pursuant thereto.

(4) The dealer acquired the firearm from a person who resides outside this state who is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and any regulations issued pursuant thereto.

(5) Until July 1, 2010, the dealer is also licensed as a secondhand dealer pursuant to Article 4 (commencing with Section 21625) of Chapter 9 of Division 8 of the Business and Professions Code, acquires a handgun, and reports its acquisition pursuant to Section 21628 of the Business and Professions Code.

(6) Commencing July 1, 2010, the dealer is also licensed as a secondhand dealer pursuant to Article 4 (commencing with Section 21625) of Chapter 9 of Division 8 of the Business and Professions Code, acquires a handgun, and reports its acquisition pursuant to Section 21628.2 of the Business and Professions Code.

<< CA ST § 26910 >>

26910. A licensee shall forward, in a format prescribed by the Department of Justice, information as required by the department on any firearm that is not delivered within the time period set forth in Section 478.102(c) of Title 27 of the Code of Federal Regulations.

<< CA ST § 26915 >>

26915. (a) A firearms dealer may require any agent who handles, sells, or delivers firearms to obtain and provide to the dealer a certificate of eligibility from the Department of Justice pursuant to Section 26710. On the application for the certificate, the agent or employee shall provide the name and California firearms dealer number of the firearms dealer with whom the person is employed.

(b) The department shall notify the firearms dealer in the event that the agent or employee who has a certificate of eligibility is or becomes prohibited from possessing firearms.

(c) If the local jurisdiction requires a background check of the agents or employees of a firearms dealer, the agent or employee shall obtain a certificate of eligibility pursuant to subdivision (a).

(d)(1) Nothing in this section shall be construed to preclude a local jurisdiction from conducting an additional background check pursuant to Section 11105. The local jurisdiction may not charge a fee for the additional criminal history check.

(2) Nothing in this section shall be construed to preclude a local jurisdiction from prohibiting employment based on criminal history that does not appear as part of obtaining a certificate of eligibility.

(e) The licensee shall prohibit any agent who the licensee knows or reasonably should know is within a class of persons prohibited from possessing firearms pursuant to Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, from coming into contact with any firearm that is not secured and from accessing any key, combination, code, or other means to open any of the locking devices described in subdivision (g).

(f) Nothing in this section shall be construed as preventing a local government from enacting an ordinance imposing additional conditions on licensees with regard to agents.

(g) For purposes of this article, "secured" means a firearm that is made inoperable in one or more of the following ways:

(1) The firearm is inoperable because it is secured by a firearm safety device listed on the department's roster of approved firearm safety devices pursuant to subdivision (d) of Section 23655.

(2) The firearm is stored in a locked gun safe or long-gun safe that meets the standards for department-approved gun safes set forth in Section 23650.

(3) The firearm is stored in a distinct locked room or area in the building that is used to store firearms, which can only be unlocked by a key, a combination, or similar means.

(4) The firearm is secured with a hardened steel rod or cable that is at least one-eighth of an inch in diameter through the trigger guard of the firearm. The steel rod or cable shall be secured with a hardened steel lock that has a shackle. The lock and shackle shall be protected or shielded from the use of a boltcutter and the rod or cable shall be anchored in a manner that prevents the removal of the firearm from the premises.

pt. 6 t. 4 d. 6 ch. 2 art. 3 pr. § 26950

Article 3. Exceptions Extending Only to Waiting Period

<< CA ST § 26950 >>

26950. (a) The waiting period described in Section 26815 does not apply to the sale, delivery, or transfer of firearms made to any person who satisfies both of the following requirements:

(1) The person is properly identified as a full-time paid peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2.

(2) The officer's employer has authorized the officer to carry firearms while in the performance of duties.

(b)(1) Proper identification is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the purchaser or transferee as a peace officer who is authorized to carry firearms while in the performance of duties, and authorizing the purchase or transfer.

(2) The certification shall be delivered to the dealer at the time of purchase or transfer and the purchaser or transferee shall identify himself or herself as the person authorized in the certification.

(3) The dealer shall keep the certification with the record of sale.

(4) On the date that the sale, delivery, or transfer is made, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the transaction as is indicated in Section 28160 or 28165.

<< CA ST § 26955 >>

26955. (a) The waiting period described in Section 26815 does not apply to a dealer who delivers a firearm, other than a handgun, at an auction or similar event described in Section 27900, as authorized by subdivision (c) of Section 26805.

(b) Within two business days of completion of the application to purchase, the dealer shall forward by prepaid mail to the Department of Justice a report of the application as is indicated in Section 28165.

(c) If the electronic or telephonic transfer of applicant information is used, within two business days of completion of the application to purchase, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the application as is indicated in Section 28165.

<< CA ST § 26960 >>

26960. (a) The waiting period described in Section 26815 does not apply to the sale, delivery, or transfer of a handgun by a dealer in either of the following situations:

(1) The dealer is delivering the firearm to another dealer, the firearm is not intended as merchandise in the receiving dealer's business, and the requirements of subdivisions (b) and (c) are satisfied.

(2) The dealer is delivering the firearm to himself or herself, the firearm is not intended as merchandise in the dealer's business, and the requirements of subdivision (c) are satisfied.

(b) If the dealer is receiving the firearm from another dealer, the dealer receiving the firearm shall present proof to the dealer delivering the firearm that the receiving dealer is licensed pursuant to Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800). This shall be done by complying with Section 27555.

(c)(1) Regardless of whether the dealer is selling, delivering, or transferring the firearm to another dealer or to himself or herself, on the date that the application to purchase is completed, the dealer delivering the firearm shall forward by prepaid mail to the Department of Justice a report of the application and the type of information concerning the purchaser or transferee as is indicated in Section 28160.

(2) Where electronic or telephonic transfer of applicant information is used, on the date that the application to purchase is completed, the dealer delivering the firearm shall transmit an electronic or telephonic report of the application and the type of information concerning the purchaser or transferee as is indicated in Section 28160.

<< CA ST § 26965 >>

26965. (a) The waiting period described in Section 26815 does not apply to the sale, delivery, or transfer of a firearm to the holder of a special weapons permit issued by the Department of Justice pursuant to Section 32650 or 33300, pursuant to Article 3 (commencing with Section 18900) of Chapter 1 of Division 5 of Title 2, or pursuant to Article 4 (commencing with Section 32700) of Chapter 6 of Division 10 of this title.

(b) On the date that the application to purchase is completed, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the application as is indicated in Section 28160 or 28165.

<< CA ST § 26970 >>

26970. (a) The waiting period described in Section 26815 does not apply to the sale, delivery, loan, or transfer of a firearm if all of the following conditions are satisfied:

(1) The firearm is a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations, or its successor.

(2) The sale, delivery, loan, or transfer is made by a dealer.

(3) The sale, delivery, loan, or transfer is made to a person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(4) The licensed collector has a current certificate of eligibility issued by the Department of Justice pursuant to Section 26710.

(b) On the date that the sale, delivery, or transfer is made, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the transaction as is indicated in Section 28160 or 28165.

pt. 6 t. 4 d. 6 ch. 2 art. 4 pr. § 27000

Article 4. Exceptions Extending Only to Grounds for Forfeiture of License

<< CA ST § 27000 >>

27000. (a) Article 2 (commencing with Section 26800) does not apply to the loan of a firearm if all of the following conditions are satisfied:

(1) The firearm is unloaded.

(2) The loan is made by a dealer.

(3) The loan is made to a person who possesses a valid entertainment firearms permit issued pursuant to Chapter 2 (commencing with Section 29500) of Division 8.

(4) The firearm is loaned solely for use as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

(b) The dealer shall retain a photocopy of the entertainment firearms permit as proof of compliance with this requirement.

<< CA ST § 27005 >>

27005. (a) Article 2 (commencing with Section 26800) does not apply to the loan of an unloaded firearm to a consultant-evaluator by a person licensed pursuant to Sections 26700 to 26915, inclusive, if the loan does not exceed 45 days from the date of delivery.

(b) At the time of the loan, the consultant-evaluator shall provide the following information, which the dealer shall retain for two years:

(1) A photocopy of a valid, current, government-issued identification to determine the consultant-evaluator's identity, including, but not limited to, a California driver's license, identification card, or passport.

(2) A photocopy of the consultant-evaluator's valid, current certificate of eligibility.

(3) A letter from the person licensed as an importer, manufacturer, or dealer pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code, with whom the consultant-evaluator has a bona fide business relationship. The letter shall detail the bona fide business purposes for which the firearm is being loaned and confirm that the consultant-evaluator is being loaned the firearm as part of a bona fide business relationship.

(4) The signature of the consultant-evaluator on a form indicating the date the firearm is loaned and the last day the firearm may be returned.

pt. 6 t. 4 d. 6 ch. 2 art. 5 pr. § 27050

Article 5. Exceptions Relating to Law Enforcement

<< CA ST § 27050 >>

27050. (a) Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 27055 >>

27055. Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the loan of a firearm if all of the following conditions are satisfied:

(a) The loan is made by an authorized law enforcement representative of a city, county, or city and county, or of the state or federal government.

(b) The loan is made to a peace officer employed by that agency and authorized to carry a firearm.

(c) The loan is made for the carrying and use of that firearm by that peace officer in the course and scope of the officer's duties.

<< CA ST § 27060 >>

27060. (a) Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 27065 >>

27065. (a) Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

pt. 6 t. 4 d. 6 ch. 2 art. 6 pr. § 27100

Article 6. Other Exceptions

<< CA ST § 27100 >>

27100. Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to sales, deliveries, or transfers of firearms between or to importers and manufacturers of firearms licensed to engage in that business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 27105 >>

27105. Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the delivery of a firearm to a gunsmith for service or repair, or to the return of the firearm to its owner by the gunsmith, or to the delivery of

a firearm by a gunsmith to a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code for service or repair and the return of the firearm to the gunsmith.

<< CA ST § 27110 >>

27110. Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of firearms if all of the following conditions are satisfied:

(a) The firearms are unloaded.

(b) The firearms are not handguns.

(c) The sale, delivery, or transfer is made by a dealer to another dealer, upon proof of compliance with the requirements of Section 27555.

<< CA ST § 27115 >>

27115. Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of unloaded firearms by a dealer to a person who resides outside this state and is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 27120 >>

27120. Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of unloaded firearms to a wholesaler if the firearms are being returned to the wholesaler and are intended as merchandise in the wholesaler's business.

<< CA ST § 27125 >>

27125. Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of firearms if all of the following conditions are satisfied:

(a) The firearms are unloaded.

(b) The sale, delivery, or transfer is made by one dealer to another dealer, upon proof of compliance with the requirements of Section 27555.

(c) The firearms are intended as merchandise in the receiving dealer's business.

<< CA ST § 27130 >>

27130. Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of an unloaded firearm, other than a handgun, by a dealer to himself or herself.

<< CA ST § 27135 >>

27135. Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the loan of an unloaded firearm by a dealer who also operates a target facility that holds a business or regulatory license on the premises of the building designated in the license or whose building designated in the license is on the premises of any club or organization organized for the purposes of practicing shooting at targets upon established ranges, whether public or private, to a person at that target facility or that club or organization, if the firearm is at all times kept within the premises of the target range or on the premises of the club or organization.

<< CA ST § 27140 >>

27140. Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of a firearm regulated pursuant to any of the following statutes, if the sale, delivery, or transfer of that firearm is conducted in accordance with the applicable provisions of the statute:

(a) Chapter 1 (commencing with Section 18710) of Division 5 of Title 2, relating to destructive devices and explosives.

(b) Section 24410, relating to cane guns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to cane guns.

(c) Section 24510, relating to firearms that are not immediately recognizable as firearms, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to firearms that are not immediately recognizable as firearms.

(d) Sections 24610 and 24680, relating to undetectable firearms, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to undetectable firearms.

(e) Section 24710, relating to wallet guns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to wallet guns.

(f) Chapter 2 (commencing with Section 30500) of Division 10, relating to assault weapons.

(g) Section 31500, relating to unconventional pistols, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to unconventional pistols.

(h) Sections 33215 to 33225, inclusive, relating to short-barreled rifles and short-barreled shotguns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to short-barreled rifles and short-barreled shotguns.

(i) Chapter 6 (commencing with Section 32610) of Division 10, relating to machineguns.

(j) Section 33600, relating to zip guns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to zip guns.

pt. 6 t. 4 d. 6 ch. 3 pr. § 27200

Chapter 3. Gun Show or Event

pt. 6 t. 4 d. 6 ch. 3 art. 1 pr. § 27200

Article 1. Gun Show or Event

<< CA ST § 27200 >>

27200. (a) No person shall produce, promote, sponsor, operate, or otherwise organize a gun show or event, as specified in subdivision (b) of Section 26805, unless that person possesses a valid certificate of eligibility from the Department of Justice.

(b) Unless the department's records indicate that the applicant is a person prohibited from possessing firearms, a certificate of eligibility shall be issued by the Department of Justice to an applicant provided the applicant does all of the following:

(1) Certifies that the applicant is familiar with the provisions of this article and Article 2 (commencing with Section 27300).

(2) Ensures that liability insurance is in effect for the duration of an event or show in an amount of not less than one million dollars ($1,000,000).

(3) Provides an annual list of the gun shows or events that the applicant plans to promote, produce, sponsor, operate, or otherwise organize during the year for which the certificate of eligibility is issued, including the date, time, and location of the gun shows or events.

(c) If during that year the information required by paragraph (3) of subdivision (b) changes, or additional gun shows or events will be promoted, produced, sponsored, operated, or otherwise organized by the applicant, the producer shall notify the Department of Justice no later than 30 days prior to the gun show or event.

(d) The Department of Justice shall adopt regulations to administer the certificate of eligibility program under this section.

(e) The Department of Justice shall recover the full costs of administering the certificate of eligibility program by fees assessed applicants who apply for certificates. A licensed gun show producer shall be assessed an annual fee of eighty-five dollars ($85) by the department.

(f) It is the intent of the Legislature that the certificate of eligibility program established pursuant to this section be incorporated into the certificate of eligibility program established pursuant to Section 26710 to the maximum extent practicable.

<< CA ST § 27205 >>

27205. (a) Before commencement of a gun show or event, the producer thereof shall, upon written request from a law enforcement agency with jurisdiction over the facility, make available to that agency, within 48 hours or a later time specified by the agency, a complete and accurate list of all persons, entities, and organizations that have leased or rented, or are known to the producer to intend to lease or rent, any table, display space, or area at the gun show or event for the purpose of selling, leasing, or transferring firearms.

(b) The producer shall thereafter, upon written request, for every day the gun show or event operates, within 24 hours or a later time specified by the requesting law enforcement agency, make available to that agency an accurate, complete, and current list of the persons, entities, and organizations that have leased or rented, or are known to the producer to intend to lease or rent, any table, display space, or area at the gun show or event for the purpose of selling, leasing, or transferring firearms.

(c) Subdivisions (a) and (b) apply to any person, entity, or organization, regardless of whether that person, entity, or organization participates in the entire gun show or event, or only a portion thereof.

(d) The information that may be requested by the law enforcement agency with jurisdiction over the facility, and that shall be provided by the producer upon request, may include, but is not limited to, the following information relative to a vendor who offers for sale firearms manufactured after December 31, 1898:

(1) The vendor's complete name.

(2) A driver's license or identification card number.

<< CA ST § 27210 >>

27210. (a) The producer and facility manager of a gun show or event shall prepare an annual event and security plan and schedule that shall include, at a minimum, the following information for each show or event:

(1) The type of show or event including, but not limited to, antique or general firearms.

(2) The estimated number of vendors offering firearms for sale or display.

(3) The estimated number of attendees.

(4) The number of entrances and exits at the gun show or event site.

(5) The location, dates, and times of the show or event.

(6) The contact person and telephone number for both the producer and the facility.

(7) The number of sworn peace officers employed by the producer or the facilities manager who will be present at the show or event.

(8) The number of nonsworn security personnel employed by the producer or the facility's manager who will be present at the show or event.

(b) The annual event and security plan shall be submitted by either the producer or the facility's manager to the Department of Justice and the law enforcement agency with jurisdiction over the facility.

(c) If significant changes have been made since the annual plan was submitted, the producer shall, not later than 15 days before commencement of the gun show or event, submit to the department, the law enforcement agency with jurisdiction over the facility site, and the facility's manager, a revised event and security plan, including a revised list of vendors that the producer knows, or reasonably should know, will be renting tables, space, or otherwise participating in the gun show or event.

(d) The event and security plan shall be approved by the facility's manager before the event or show, after consultation with the law enforcement agency with jurisdiction over the facility.

(e) No gun show or event shall commence unless the requirements of subdivisions (b), (c), and (d) are met.

<< CA ST § 27215 >>

27215. The producer of a gun show or event shall be responsible for informing prospective gun show vendors of the requirements of this article and of Article 2 (commencing with Section 27300) that apply to vendors.

<< CA ST § 27220 >>

27220. (a) Within seven calendar days of the commencement of a gun show or event, but not later than noon on Friday for a show or event held on a weekend, the producer shall submit a list of all prospective vendors and designated firearms transfer agents who are licensed firearms dealers to the Department of Justice for the purpose of determining whether these prospective vendors and designated firearms transfer agents possess valid licenses and are thus eligible to participate as licensed dealers at the show or event.

(b) The department shall examine its records and if it determines that a dealer's license is not valid, it shall notify the show or event producer of that fact before the show or event commences.

<< CA ST § 27225 >>

27225. If a licensed firearms dealer fails to cooperate with a producer of a gun show or event, or fails to comply with the applicable requirements of this article or Article 2 (commencing with Section 27300), that person shall not be allowed to participate in that show or event.

<< CA ST § 27230 >>

27230. If a producer fails to comply with Section 27215 or 27220, the gun show or event shall not commence until those requirements are met.

<< CA ST § 27235 >>

27235. Every producer of a gun show or event shall have a written contract with each gun show vendor selling firearms at the show or event.

<< CA ST § 27240 >>

27240. (a) The producer of a gun show or event shall require that signs be posted in a readily visible location at each public entrance to the show containing, but not limited to, the following notices:

(1) This gun show follows all federal, state, and local firearms and weapons laws, without exception.

(2) Any firearm carried onto the premises by any member of the public will be checked, cleared of any ammunition, and secured in a manner that prevents it from being operated, and an identification tag or sticker will be attached to the firearm before the person is allowed admittance to the show.

(3) No member of the public under the age of 18 years shall be admitted to the show unless accompanied by a parent, grandparent, or legal guardian.

(4) All firearms transfers between private parties at the show shall be conducted through a licensed dealer in accordance with applicable state and federal laws.

(5) Persons possessing firearms at this facility must have in their immediate possession government-issued photo identification, and display it upon request to any security officer or any peace officer, as defined in Section 830.

(b) The show producer shall post, in a readily visible location at each entrance to the parking lot at the show, signage that states: "The transfer of firearms on the parking lot of this facility is a crime."

<< CA ST § 27245 >>

27245. (a) A willful failure by a gun show producer to comply with any of the requirements of this article, except for the posting of required signs, shall be a misdemeanor punishable by a fine not to exceed two thousand dollars ($2,000), and shall render the producer ineligible for a gun show producer license for one year from the date of the conviction.

(b) A willful failure of a gun show producer to post signs as required by this article shall be a misdemeanor punishable by a fine not to exceed one thousand dollars ($1,000) for the first offense and not to exceed two thousand dollars ($2,000) for the second or subsequent offense, and with respect to the second or subsequent offense, shall render the producer ineligible for a gun show producer license for one year from the date of the conviction.

(c) Multiple violations charged pursuant to subdivision (a) arising from more than one gun show or event shall be grounds for suspension of a producer's certificate of eligibility pending adjudication of the violations.

pt. 6 t. 4 d. 6 ch. 3 art. 2 pr. § 27300

Article 2. Gun Show Enforcement and Security Act of 2000

<< CA ST § 27300 >>

27300. This article shall be known, and may be cited as, the Gun Show Enforcement and Security Act of 2000.

<< CA ST § 27305 >>

27305. All gun show or event vendors shall certify in writing to the producer that they:

(a) Will not display, possess, or offer for sale any firearms, knives, or weapons for which possession or sale is prohibited.

(b) Acknowledge that they are responsible for knowing and complying with all applicable federal, state, and local laws dealing with the possession and transfer of firearms.

(c) Will not engage in activities that incite or encourage hate crimes.

(d) Will process all transfers of firearms through licensed firearms dealers as required by state law.

(e) Will verify that all firearms in their possession at the show or event will be unloaded, and that the firearms will be secured in a manner that prevents them from being operated except for brief periods when the mechanical condition of a firearm is being demonstrated to a prospective buyer.

(f) Have complied with the requirements of Section 27320.

(g) Will not display or possess black powder, or offer it for sale.

<< CA ST § 27310 >>

27310. All firearms transfers at a gun show or event shall be in accordance with applicable state and federal laws.

<< CA ST § 27315 >>

27315. Except for purposes of showing ammunition to a prospective buyer, ammunition at a gun show or event may be displayed only in closed original factory boxes or other closed containers.

<< CA ST § 27320 >>

27320. (a) Before commencement of a gun show or event, each vendor who will offer for sale firearms manufactured after December 31, 1898, shall provide to the producer all of the following information relative to the vendor, the vendor's employees, and other persons, compensated or not, who will be working or otherwise providing services to the public at the vendor's display space:

(1) The person's complete name.

(2) The person's driver's license or state-issued identification card number.

(3) The person's date of birth.

(b) The producer shall keep the information at the onsite headquarters of the show or event for the duration of the show or event, and at the producer's regular place of business for two weeks after the conclusion of the show or event. The producer shall make the information available upon request to any sworn peace officer for purposes of the officer's official law enforcement duties.

<< CA ST § 27325 >>

27325. At any gun show or event, each vendor and each employee of a vendor shall wear a name tag indicating first and last name.

<< CA ST § 27330 >>

27330. No person at a gun show or event, other than security personnel or sworn peace officers, shall possess at the same time both a firearm and ammunition that is designed to be fired in the firearm. Vendors having those items at the show for sale or exhibition are exempt from this prohibition.

<< CA ST § 27335 >>

27335. No member of the public who is under the age of 18 years shall be admitted to, or be permitted to remain at, a gun show or event unless accompanied by a parent or legal guardian. Any member of the public who is under the age of 18 years shall be accompanied by that person's parent, grandparent, or legal guardian while at the show or event.

<< CA ST § 27340 >>

27340. (a) Persons other than show or event security personnel, sworn peace officers, or vendors, who bring firearms onto the gun show or event premises shall sign in ink the tag or sticker that is attached to the firearm prior to being allowed admittance to the show or event, as provided for in subdivision (b).

(b) All firearms carried onto the premises of a gun show or event by members of the public shall be checked, cleared of any ammunition, secured in a manner that prevents them from being operated, and an identification tag or sticker shall be attached to the firearm, prior to the person being allowed admittance to the show. The identification tag or sticker shall state that all firearms transfers between private parties at the show or event shall be conducted through a licensed dealer in accordance with applicable state and federal laws. The person possessing the firearm shall complete the following information on the tag before it is attached to the firearm:

(1) The gun owner's signature.

(2) The gun owner's printed name.

(3) The identification number from the gun owner's government-issued photo identification.

<< CA ST § 27345 >>

27345. Any person who possesses a firearm at a gun show or event shall have government-issued photo identification in immediate possession, and shall display it upon request to any security officer or peace officer.

<< CA ST § 27350 >>

27350. (a) Unless otherwise specified, a first violation of this article is an infraction.

(b) Any second or subsequent violation of this article is a misdemeanor.

(c) Any person who commits an act the person knows to be a violation of this article is guilty of a misdemeanor for a first offense.

pt. 6 t. 4 d. 6 ch. 3 art. 3 pr. § 27400

Article 3. Exceptions Relating to Law Enforcement

<< CA ST § 27400 >>

27400. (a) Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS)

by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 27405 >>

27405. Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to the loan of a firearm if all of the following conditions are satisfied:

(a) The loan is made by an authorized law enforcement representative of a city, county, or city and county, or of the state or federal government.

(b) The loan is made to a peace officer employed by that agency and authorized to carry a firearm.

(c) The loan is made for the carrying and use of that firearm by that peace officer in the course and scope of the officer's duties.

<< CA ST § 27410 >>

27410. (a) Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 27415 >>

27415. (a) Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

pt. 6 t. 4 d. 6 ch. 4 pr. § 27500

Chapter 4. Crimes Relating to Sale, Lease, or Transfer of Firearms

pt. 6 t. 4 d. 6 ch. 4 art. 1 pr. § 27500

Article 1. Crimes Relating to Sale, Lease, or Transfer of Firearms

<< CA ST § 27500 >>

27500. (a) No person, corporation, or firm shall knowingly sell, supply, deliver, or give possession or control of a firearm to any person within any of the classes prohibited by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9.

(b) No person, corporation, or dealer shall sell, supply, deliver, or give possession or control of a firearm to anyone whom the person, corporation, or dealer has cause to believe is within any of the classes prohibited by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code.

<< CA ST § 27505 >>

27505. (a) No person, corporation, or firm shall sell, loan, or transfer a firearm to a minor, nor sell a handgun to an individual under 21 years of age.

(b) Subdivision (a) shall not apply to or affect the following circumstances:

(1) The sale of a handgun, if the handgun is an antique firearm and the sale is to a person at least 18 years of age.

(2) The transfer or loan of a firearm, other than a handgun, to a minor by the minor's parent or legal guardian.

(3) The transfer or loan of a firearm, other than a handgun, to a minor by a grandparent who is not the legal guardian of the minor, if the transfer is done with the express permission of the minor's parent or legal guardian.

(4) The loan of a firearm, other than a handgun, to a minor, with the express permission of the minor's parent or legal guardian, if the loan does not exceed 30 days in duration and is for a lawful purpose.

(5) The loan of a handgun to a minor by the minor's parent or legal guardian, if both of the following requirements are satisfied:

(A) The minor is being loaned the firearm for the purposes of engaging in a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(B) The duration of the loan does not exceed the amount of time that is reasonably necessary to engage in the lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(6) The loan of a handgun to a minor by a person who is not the minor's parent or legal guardian, if all of the following requirements are satisfied:

(A) The minor is accompanied by the minor's parent or legal guardian when the loan is made, or the minor has the written consent of the minor's parent or legal guardian, which is presented at the time of the loan, or earlier.

(B) The minor is being loaned the firearm for the purpose of engaging in a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(C) The duration of the loan does not exceed the amount of time that is reasonably necessary to engage in the lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(D) The duration of the loan does not, in any event, exceed 10 days.

<< CA ST § 27510 >>

27510. No person licensed under Sections 26700 to 26915, inclusive, shall sell, supply, deliver, or give possession or control of a handgun to any person under the age of 21 years, or any other firearm to a person under the age of 18 years.

<< CA ST § 27515 >>

27515. No person, corporation, or dealer shall sell, loan, or transfer a firearm to anyone whom the person, corporation, or dealer knows or has cause to believe is not the actual purchaser or transferee of the firearm, or to anyone who is not the one actually being loaned the firearm, if the person, corporation, or dealer has either of the following:

(a) Knowledge that the firearm is to be subsequently sold, loaned, or transferred to avoid the provisions of Section 27540 or 27545.

(b) Knowledge that the firearm is to be subsequently sold, loaned, or transferred to avoid the requirements of any exemption to the provisions of Section 27540 or 27545.

<< CA ST § 27520 >>

27520. No person, corporation, or dealer shall acquire a firearm for the purpose of selling, loaning, or transferring the firearm, if the person, corporation, or dealer has either of the following:

(a) In the case of a dealer, intent to violate Section 27510 or 27540.

(b) In any other case, intent to avoid either of the following:

(1) The provisions of Section 27545.

(2) The requirements of any exemption to the provisions of Section 27545.

<< CA ST § 27525 >>

27525. (a) A dealer shall comply with Section 26905.

(b) A dealer shall comply with Section 26910.

<< CA ST § 27530 >>

27530. No person shall sell or otherwise transfer ownership in a handgun unless the firearm bears either:

(a) The name of the manufacturer, the manufacturer's make or model, and a manufacturer's serial number assigned to that firearm.

(b) The identification number or mark assigned to the firearm by the Department of Justice pursuant to Section 23910.

<< CA ST § 27535 >>

27535. (a) No person shall make an application to purchase more than one handgun within any 30–day period.

(b) Subdivision (a) shall not apply to any of the following:

(1) Any law enforcement agency.

(2) Any agency duly authorized to perform law enforcement duties.

(3) Any state or local correctional facility.

(4) Any private security company licensed to do business in California.

(5) Any person who is properly identified as a full-time paid peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

(6) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

(7) Any person who may, pursuant to Article 2 (commencing with Section 27600), Article 3 (commencing with Section 27650), or Article 4 (commencing with Section 27700), claim an exemption from the waiting period set forth in Section 27540.

(8) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

(9) Any person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and has a current certificate of eligibility issued by the Department of Justice pursuant to Article 1 (commencing with Section 26700) of Chapter 2.

(10) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30–day period immediately preceding the date of exchange or replacement.

(11) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

(12) The return of any handgun to its owner.

(13) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

<< CA ST § 27540 >>

27540. No dealer, whether or not acting pursuant to Chapter 5 (commencing with Section 28050), shall deliver a firearm to a person, as follows:

(a) Within 10 days of the application to purchase, or, after notice by the department pursuant to Section 28220, within 10 days of the submission to the department of any correction to the application, or within 10 days of the submission to the department of any fee required pursuant to Section 28225, whichever is later.

(b) Unless unloaded and securely wrapped or unloaded and in a locked container.

(c) Unless the purchaser, transferee, or person being loaned the firearm presents clear evidence of the person's identity and age to the dealer.

(d) Whenever the dealer is notified by the Department of Justice that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(e)(1) Commencing April 1, 1994, and until January 1, 2003, no handgun shall be delivered unless the purchaser, transferee, or person being loaned the firearm presents to the dealer a basic firearms safety certificate.

(2) Commencing January 1, 2003, no handgun shall be delivered unless the purchaser, transferee, or person being loaned the handgun presents a handgun safety certificate to the dealer.

(f) No handgun shall be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30–day period the purchaser has made another application to purchase a handgun and that the previous application to purchase involved none of the entities specified in subdivision (b) of Section 27535.

<< CA ST § 27545 >>

27545. Where neither party to the transaction holds a dealer's license issued pursuant to Sections 26700 to 26915, inclusive, the parties to the transaction shall complete the sale, loan, or transfer of that firearm through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

<< CA ST § 27550 >>

27550. (a) No person may commit an act of collusion relating to Sections 31610 to 31700, inclusive.

(b) For purposes of this section and Section 26870, collusion may be proven by any one of the following factors:

(1) Answering a test applicant's questions during an objective test relating to firearms safety.

(2) Knowingly grading the examination falsely.

(3) Providing an advance copy of the test to an applicant.

(4) Taking or allowing another person to take the basic firearms safety course for one who is the applicant for a basic firearms safety certificate or a handgun safety certificate.

(5) Allowing another to take the objective test for the applicant, purchaser, or transferee.

(6) Using or allowing another to use one's identification, proof of residency, or thumbprint.

(7) Allowing others to give unauthorized assistance during the examination.

(8) Reference to unauthorized materials during the examination and cheating by the applicant.

(9) Providing originals or photocopies of the objective test, or any version thereof, to any person other than as authorized by the department.

<< CA ST § 27555 >>

27555. (a)(1) Commencing July 1, 2008, a person who is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code may not sell, deliver, or transfer a firearm to a person in California who is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code unless, prior to delivery, the person intending to sell, deliver, or transfer the firearm obtains a verification number via the Internet for the intended sale, delivery, or transfer, from the Department of Justice.

(2) If Internet service is unavailable to either the department or the licensee due to a technical or other malfunction, or a federal firearms licensee who is located outside of California does not possess a computer or have Internet access, alternate means of communication, including facsimile or telephone, shall be made available for a licensee to obtain a verification number in order to comply with this section.

(b) For every verification number request received pursuant to this section, the department shall determine whether the intended recipient is on the centralized list of firearms dealers pursuant to Section 26715, or the centralized list of exempted federal firearms licensees pursuant to Section 28450, or the centralized list of firearms manufacturers pursuant to Section 29060.

(c)(1) If the department finds after the reviews specified in subdivision (b) that the intended recipient is authorized to receive the firearm shipment, the department shall issue to the inquiring party, a unique verification number for the intended sale, delivery, or transfer. One verification number shall be issued for each sale, delivery, or transfer, which may involve multiple firearms.

(2) In addition to the unique verification number, the department may provide to the inquiring party information necessary for determining the eligibility of the intended recipient to receive the firearm.

(3) The person intending to sell, deliver, or transfer the firearm shall provide the unique verification number to the recipient along with the firearm upon delivery, in a manner to be determined by the department.

(d) If the department finds after the reviews specified in subdivision (b) that the intended recipient is not authorized to receive the firearm shipment, the department shall notify the inquiring party that the intended recipient is ineligible to receive the shipment.

(e) The department shall prescribe the manner in which the verification numbers may be requested via the Internet, or by alternate means of communication, such as by facsimile or telephone, including all required enrollment information and procedures.

<< CA ST § 27560 >>

27560. (a) On or after January 1, 1998, within 60 days of bringing a handgun into this state, a personal handgun importer shall do one of the following:

(1) Forward by prepaid mail or deliver in person to the Department of Justice, a report prescribed by the department including information concerning that individual and a description of the firearm in question.

(2) Sell or transfer the firearm in accordance with the provisions of Section 27545 or in accordance with the provisions of an exemption from Section 27545.

(3) Sell or transfer the firearm to a dealer licensed pursuant to Sections 26700 to 26915, inclusive.

(4) Sell or transfer the firearm to a sheriff or police department.

(b) If all of the following requirements are satisfied, the personal handgun importer shall have complied with the provisions of this section:

(1) The personal handgun importer sells or transfers the handgun pursuant to Section 27545.

(2) The sale or transfer cannot be completed by the dealer to the purchaser or transferee.

(3) The firearm can be returned to the personal handgun importer.

(c)(1) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law.

(2) However, an act or omission punishable in different ways by this article and different provisions of the Penal Code shall not be punished under more than one provision.

(d) On and after January 1, 1998, the department shall conduct a public education and notification program regarding this section to ensure a high degree of publicity of the provisions of this section.

(e) As part of the public education and notification program described in this section, the department shall do all of the following:

(1) Work in conjunction with the Department of Motor Vehicles to ensure that any person who is subject to this section is advised of the provisions of this section, and provided with blank copies of the report described in paragraph (1) of subdivision (a), at the time when that person applies for a California driver's license or registers a motor vehicle in accordance with the Vehicle Code.

(2) Make the reports referred to in paragraph (1) of subdivision (a) available to dealers licensed pursuant to Sections 26700 to 26915, inclusive.

(3) Make the reports referred to in paragraph (1) of subdivision (a) available to law enforcement agencies.

(4) Make persons subject to the provisions of this section aware of all of the following:

(A) The report referred to in paragraph (1) of subdivision (a) may be completed at either a law enforcement agency or the licensed premises of a dealer licensed pursuant to Sections 26700 to 26915, inclusive.

(B) It is advisable to do so for the sake of accuracy and completeness of the report.

(C) Before transporting a handgun to a law enforcement agency to comply with subdivision (a), the person should give notice to the law enforcement agency that the person is doing so.

(D) In any event, the handgun should be transported unloaded and in a locked container.

(f) Any costs incurred by the department to implement this section shall be absorbed by the department within its existing budget and the fees in the Dealers' Record of Sale Special Account allocated for implementation of subdivisions (d) and (e) of this section pursuant to Section 28235.


<< CA ST § 27565 >>

27565. (a) This section applies in the following circumstances:

(1) A person is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(2) The licensed premises of that person are within this state.

(3) The licensed collector acquires, outside of this state, a handgun.

(4) The licensed collector takes actual possession of that firearm outside of this state pursuant to the provisions of subsection (j) of Section 923 of Title 18 of the United States Code, as amended by Public Law 104–208, and transports the firearm into this state.

(5) The firearm is a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations.

(b) Within five days of transporting a firearm into this state under the circumstances described in subdivision (a), the licensed collector shall report the acquisition of that firearm to the department in a format prescribed by the department.


<< CA ST § 27570 >>

27570. (a) It is the intent of the Legislature that a violation of Section 27560 or 27565 shall not constitute a "continuing offense" and the statute of limitations for commencing a prosecution for a violation of Section 27560 or 27565 commences on the date that the applicable grace period specified in Section 27560 or 27565 expires.

(b) Sections 27560 and 27565 shall not apply to a person who reports ownership of a handgun after the applicable grace period specified in Section 27560 or 27565 expires if evidence of that violation arises only as the result of the person submitting the report described in Section 27560 or 27565.


<< CA ST § 27590 >>

27590. (a) Except as provided in subdivision (b), (c), or (e), a violation of this article is a misdemeanor.

(b) If any of the following circumstances apply, a violation of this article is punishable by imprisonment in the state prison for two, three, or four years.

(1) If the violation is of subdivision (a) of Section 27500.

(2) If the defendant has a prior conviction of violating the provisions, other than Section 27535, of this article or former Section 12100 of this code, as that section read at any time from when it was enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to when it was repealed by Section 18 of Chapter 23 of the Statutes of 1994, or Section 8101 of the Welfare and Institutions Code.

(3) If the defendant has a prior conviction of violating any offense specified in Section 29905 or of a violation of Section 32625 or 33410, or of former Section 12560, as that section read at any time from when it was enacted by Section 4 of Chapter 931 of the Statutes of 1965 to when it was repealed by Section 14 of Chapter 9 of the Statutes of 1990, or of any provision listed in Section 16590.

(4) If the defendant is in a prohibited class described in Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code.

(5) A violation of this article by a person who actively participates in a "criminal street gang" as defined in Section 186.22.

(6) A violation of Section 27510 involving the delivery of any firearm to a person who the dealer knows, or should know, is a minor.

(c) If any of the following circumstances apply, a violation of this article shall be punished by imprisonment in a county jail not exceeding one year or in the state prison, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment.

(1) A violation of Section 27515, 27520, or subdivision (b) of Section 27500.

(2) A violation of Section 27505 involving the sale, loan, or transfer of a handgun to a minor.

(3) A violation of Section 27510 involving the delivery of a handgun.

(4) A violation of subdivision (a), (c), (d), (e), or (f) of Section 27540 involving a pistol, revolver, or other firearm capable of being concealed upon the person.

(5) A violation of Section 27545 involving a handgun.

(6) A violation of Section 27550.

(d) If both of the following circumstances apply, an additional term of imprisonment in the state prison for one, two, or three years shall be imposed in addition and consecutive to the sentence prescribed.

(1) A violation of Section 27510 or subdivision (b) of Section 27500.

(2) The firearm transferred in violation of Section 27510 or subdivision (b) of Section 27500 is used in the subsequent commission of a felony for which a conviction is obtained and the prescribed sentence is imposed.

(e)(1) A first violation of Section 27535 is an infraction punishable by a fine of fifty dollars ($50).

(2) A second violation of Section 27535 is an infraction punishable by a fine of one hundred dollars ($100).

(3) A third or subsequent violation of Section 27535 is a misdemeanor.

(4) For purposes of this subdivision each application to purchase a handgun in violation of Section 27535 shall be deemed a separate offense.

pt. 6 t. 4 d. 6 ch. 4 art. 2 pr. § 27600

Article 2. Exceptions Relating to Law Enforcement

<< CA ST § 27600 >>

27600. (a) Article 1 (commencing with Section 27500) does not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 27605 >>

27605. Article 1 (commencing with Section 27500) does not apply to the loan of a firearm if all of the following conditions are satisfied:

(a) The loan is made by an authorized law enforcement representative of a city, county, or city and county, or of the state or federal government.

(b) The loan is made to a peace officer employed by that agency and authorized to carry a firearm.

(c) The loan is made for the carrying and use of that firearm by that peace officer in the course and scope of the officer's duties.

<< CA ST § 27610 >>

27610. (a) Article 1 (commencing with Section 27500) does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 27615 >>

27615. (a) Article 1 (commencing with Section 27500) does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

pt. 6 t. 4 d. 6 ch. 4 art. 3 pr. § 27650

Article 3. Exceptions Extending Only to Waiting Period

<< CA ST § 27650 >>

27650. (a) The waiting period described in Section 27540 does not apply to the sale, delivery, or transfer of firearms made to any person who satisfies both of the following requirements:

(1) The person is properly identified as a full-time paid peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2.

(2) The officer's employer has authorized the officer to carry firearms while in the performance of duties.

(b)(1) Proper identification is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the purchaser or transferee as a peace officer who is authorized to carry firearms while in the performance of duties, and authorizing the purchase or transfer.

(2) The certification shall be delivered to the dealer at the time of purchase or transfer and the purchaser or transferee shall identify himself or herself as the person authorized in the certification.

(3) The dealer shall keep the certification with the record of sale.

(4) On the date that the sale, delivery, or transfer is made, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the transaction as is indicated in Section 28160 or 28165.

<< CA ST § 27655 >>

27655. (a) The waiting period described in Section 27540 does not apply to a dealer who delivers a firearm, other than a handgun, at an auction or similar event described in Section 27900, as authorized by subdivision (c) of Section 26805.

(b) Within two business days of completion of the application to purchase, the dealer shall forward by prepaid mail to the Department of Justice a report of the application as is indicated in Section 28165.

(c) If the electronic or telephonic transfer of applicant information is used, within two business days of completion of the application to purchase, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the application as is indicated in Section 28165.

<< CA ST § 27660 >>

27660. (a) The waiting period described in Section 27540 does not apply to the sale, delivery, or transfer of a handgun by a dealer in either of the following situations:

(1) The dealer is delivering the firearm to another dealer, the firearm is not intended as merchandise in the receiving dealer's business, and the requirements of subdivisions (b) and (c) are satisfied.

(2) The dealer is delivering the firearm to himself or herself, the firearm is not intended as merchandise in the dealer's business, and the requirements of subdivision (c) are satisfied.

(b) If the dealer is receiving the firearm from another dealer, the dealer receiving the firearm shall present proof to the dealer delivering the firearm that the receiving dealer is licensed pursuant to Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800). This shall be done by complying with Section 27555.

(c)(1) Regardless of whether the dealer is selling, delivering, or transferring the firearm to another dealer or to himself or herself, on the date that the application to purchase is completed, the dealer delivering the firearm shall forward by prepaid mail to the Department of Justice a report of the application and the type of information concerning the purchaser or transferee as is indicated in Section 28160.

(2) Where electronic or telephonic transfer of applicant information is used, on the date that the application to purchase is completed, the dealer delivering the firearm shall transmit an electronic or telephonic report of the application and the type of information concerning the purchaser or transferee as is indicated in Section 28160.

<< CA ST § 27665 >>

27665. (a) The waiting period described in Section 27540 does not apply to the sale, delivery, or transfer of a firearm to the holder of a special weapons permit issued by the Department of Justice pursuant to Section 32650 or 33300, pursuant to Article 3 (commencing with Section 18900) of Chapter 1 of Division 5 of Title 2, or pursuant to Article 4 (commencing with Section 32700) of Chapter 6 of Division 10 of this title.

(b) On the date that the application to purchase is completed, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the application as is indicated in Section 28160 or 28165.

<< CA ST § 27670 >>

27670. (a) The waiting period described in Section 27540 does not apply to the sale, delivery, loan, or transfer of a firearm if all of the following conditions are satisfied:

(1) The firearm is a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations, or its successor.

(2) The sale, delivery, loan, or transfer is made by a dealer.

(3) The sale, delivery, loan, or transfer is made to a person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(4) The licensed collector has a current certificate of eligibility issued by the Department of Justice pursuant to Section 26710.

(b) On the date that the sale, delivery, or transfer is made, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the transaction as is indicated in Section 28160 or 28165.

pt. 6 t. 4 d. 6 ch. 4 art. 4 pr. § 27700

Article 4. Exceptions to Restrictions on Delivery of a Firearm

<< CA ST § 27700 >>

27700. Section 27540 does not apply to sales, deliveries, or transfers of firearms between or to importers and manufacturers of firearms licensed to engage in that business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 27705 >>

27705. Section 27540 does not apply to the delivery of a firearm to a gunsmith for service or repair, or to the return of the firearm to its owner by the gunsmith, or to the delivery of a firearm by a gunsmith to a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code for service or repair and the return of the firearm to the gunsmith.

<< CA ST § 27710 >>

27710. Section 27540 does not apply to the sale, delivery, or transfer of firearms if all of the following conditions are satisfied:

(a) The firearms are unloaded.

(b) The firearms are not handguns.

(c) The sale, delivery, or transfer is made by a dealer to another dealer, upon proof of compliance with the requirements of Section 27555.

<< CA ST § 27715 >>

27715. Section 27540 does not apply to the sale, delivery, or transfer of unloaded firearms by a dealer to a person who resides outside this state and is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 27720 >>

27720. Section 27540 does not apply to the sale, delivery, or transfer of unloaded firearms to a wholesaler if the firearms are being returned to the wholesaler and are intended as merchandise in the wholesaler's business.

<< CA ST § 27725 >>

27725. Section 27540 does not apply to the sale, delivery, or transfer of firearms if all of the following conditions are satisfied:

(a) The firearms are unloaded.

(b) The sale, delivery, or transfer is made by one dealer to another dealer, upon proof of compliance with the requirements of Section 27555.

(c) The firearms are intended as merchandise in the receiving dealer's business.

<< CA ST § 27730 >>

27730. Section 27540 does not apply to the sale, delivery, or transfer of an unloaded firearm, other than a handgun, by a dealer to himself or herself.

<< CA ST § 27735 >>

27735. Section 27540 does not apply to the loan of an unloaded firearm by a dealer who also operates a target facility that holds a business or regulatory license on the premises of the building designated in the license or whose building designated in the license is on the premises of any club or organization organized for the purposes of practicing shooting at targets upon established ranges, whether public or private, to a person at that target facility or that club or organization, if the firearm is at all times kept within the premises of the target range or on the premises of the club or organization.

<< CA ST § 27740 >>

27740. Section 27540 does not apply to the sale, delivery, or transfer of a firearm regulated pursuant to any of the following statutes, if the sale, delivery, or transfer of that firearm is conducted in accordance with the applicable provisions of the statute:

(a) Chapter 1 (commencing with Section 18710) of Division 5 of Title 2, relating to destructive devices and explosives.

(b) Section 24410, relating to cane guns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to cane guns.

(c) Section 24510, relating to firearms that are not immediately recognizable as firearms, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to firearms that are not immediately recognizable as firearms.

(d) Sections 24610 and 24680, relating to undetectable firearms, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to undetectable firearms.

(e) Section 24710, relating to wallet guns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to wallet guns.

(f) Chapter 2 (commencing with Section 30500) of Division 10, relating to assault weapons.

(g) Section 31500, relating to unconventional pistols, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to unconventional pistols.

(h) Sections 33215 to 33225, inclusive, relating to short-barreled rifles and short-barreled shotguns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to short-barreled rifles and short-barreled shotguns.

(i) Chapter 6 (commencing with Section 32610) of Division 10, relating to machineguns.

(j) Section 33600, relating to zip guns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to zip guns.

<< CA ST § 27745 >>

27745. (a) Section 27540 does not apply to the loan of a firearm if all of the following conditions are satisfied:

(1) The firearm is unloaded.

(2) The loan is made by a dealer.

(3) The loan is made to a person who possesses a valid entertainment firearms permit issued pursuant to Chapter 2 (commencing with Section 29500) of Division 8.

(4) The firearm is loaned solely for use as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

(b) The dealer shall retain a photocopy of the entertainment firearms permit as proof of compliance with this requirement.

<< CA ST § 27750 >>

27750. (a) Section 27540 does not apply to the loan of an unloaded firearm to a consultant-evaluator by a person licensed pursuant to Sections 26700 to 26915, inclusive, if the loan does not exceed 45 days from the date of delivery.

(b) At the time of the loan, the consultant-evaluator shall provide the following information, which the dealer shall retain for two years:

(1) A photocopy of a valid, current, government-issued identification to determine the consultant-evaluator's identity, including, but not limited to, a California driver's license, identification card, or passport.

(2) A photocopy of the consultant-evaluator's valid, current certificate of eligibility.

(3) A letter from the person licensed as an importer, manufacturer, or dealer pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code, with whom the consultant-evaluator has a bona fide business relationship. The letter shall detail the bona fide business purposes for which the firearm is being loaned and confirm that the consultant-evaluator is being loaned the firearm as part of a bona fide business relationship.

(4) The signature of the consultant-evaluator on a form indicating the date the firearm is loaned and the last day the firearm may be returned.

pt. 6 t. 4 d. 6 ch. 4 art. 5 pr. § 27805

Article 5. Exceptions to the Requirement of Obtaining a Verification Number

<< CA ST § 27805 >>

27805. (a) Section 27555 does not apply to the loan of a firearm if all of the following conditions are satisfied:

(1) The firearm is unloaded.

(2) The loan is made by a dealer.

(3) The loan is made to a person who possesses a valid entertainment firearms permit issued pursuant to Chapter 2 (commencing with Section 29500) of Division 8.

(4) The firearm is loaned solely for use as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

(b) The dealer shall retain a photocopy of the entertainment firearms permit as proof of compliance with this requirement.

<< CA ST § 27810 >>

27810. (a) Section 27555 does not apply to the loan of a firearm if all of the following requirements are satisfied:

(1) The firearm is unloaded.

(2) The loan is made by a person who is not a dealer but is a federal firearms licensee pursuant to Chapter 44 of Title 18 (commencing with Section 921) of the United States Code.

(3) The loan is made to a person who possesses a valid entertainment firearms permit issued pursuant to Chapter 2 (commencing with Section 29500) of Division 8.

(4) The firearm is loaned for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

(b) The person loaning the firearm pursuant to this section shall retain a photocopy of the entertainment firearms permit as proof of compliance with this requirement.

<< CA ST § 27815 >>

27815. (a) Section 27555 does not apply to the loan of an unloaded firearm to a consultant-evaluator by a person licensed pursuant to Sections 26700 to 26915, inclusive, if the loan does not exceed 45 days from the date of delivery.

(b) At the time of the loan, the consultant-evaluator shall provide the following information, which the dealer shall retain for two years:

(1) A photocopy of a valid, current, government-issued identification to determine the consultant-evaluator's identity, including, but not limited to, a California driver's license, identification card, or passport.

(2) A photocopy of the consultant-evaluator's valid, current certificate of eligibility.

(3) A letter from the person licensed as an importer, manufacturer, or dealer pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code, with whom the consultant-evaluator has a bona fide business relationship. The letter shall detail the bona fide business purposes for which the firearm is being loaned and confirm that the consultant-evaluator is being loaned the firearm as part of a bona fide business relationship.

(4) The signature of the consultant-evaluator on a form indicating the date the firearm is loaned and the last day the firearm may be returned.

<< CA ST § 27820 >>

27820. If all of the following requirements are satisfied, Section 27555 does not apply to the sale, loan, or transfer of a firearm:

(a) The sale, loan, or transfer is infrequent, as defined in Section 16730.

(b) The firearm is not a handgun.

(c) The firearm is a curio or relic manufactured at least 50 years prior to the current date but is not a replica, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations, or its successor.

<< CA ST § 27825 >>

27825. Section 27555 does not apply to the delivery of a firearm to a gunsmith for service or repair, or to the return of the firearm to its owner by the gunsmith, or to the delivery of a firearm by a gunsmith to a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code for service or repair and the return of the firearm to the gunsmith.

<< CA ST § 27830 >>

27830. Section 27555 does not apply where the transferor and the transferee are the same person or corporation.

<< CA ST § 27835 >>

27835. Section 27555 does not apply where the transfer is to or from a person who has a valid entertainment firearms permit and the transfer involves the loan or return of a firearm used solely as a prop in a television, film, or theatrical production.

pt. 6 t. 4 d. 6 ch. 4 art. 6 pr. § 27850

Article 6. Exceptions to the Requirement of Using a Dealer for a Private Party Firearms Transaction

<< CA ST § 27850 >>

27850. (a) Section 27545 does not apply to a sale, delivery, or transfer of firearms if both of the following requirements are satisfied:

(1) The sale, delivery, or transfer is to an authorized representative of a city, city and county, county, or state government, or of the federal government, and is for the governmental entity.

(2) The entity is acquiring the weapon as part of an authorized, voluntary program in which the entity is buying or receiving weapons from private individuals.

(b) Any weapons acquired pursuant to this section shall be disposed of pursuant to the applicable provisions of Section 34000 or Sections 18000 and 18005.

<< CA ST § 27855 >>

27855. Section 27545 does not apply to the sale, delivery, loan, or transfer of a firearm made by an authorized law enforcement representative of a city, county, city and county, or state, or of the federal government, to any public or private nonprofit historical society, museum, or institutional collection, or the purchase or receipt of that firearm by that public or private nonprofit historical society, museum, or institutional collection, if all of the following conditions are met:

(a) The entity receiving the firearm is open to the public.

(b) The firearm prior to delivery is deactivated or rendered inoperable.

(c) The firearm is not subject to any of the following:

(1) Sections 18000 and 18005.

(2) Division 4 (commencing with Section 18250) of Title 2.

(3) Section 34000.

(4) Sections 34005 and 34010.

(d) The firearm is not prohibited by other provisions of law from being sold, delivered, or transferred to the public at large.

(e) Prior to delivery, the entity receiving the firearm submits a written statement to the law enforcement representative stating that the firearm will not be restored to operating condition, and will either remain with that entity, or if subsequently disposed of, will be transferred in accordance with the applicable provisions listed in Section 16575 and, if applicable, with Section 31615.

(f) Within 10 days of the date that the firearm is sold, loaned, delivered, or transferred to that entity, all of the following information shall be reported to the department in a manner prescribed by the department:

(1) The name of the government entity delivering the firearm.

(2) The make, model, serial number, and other identifying characteristics of the firearm.

(3) The name of the person authorized by the entity to take possession of the firearm.

(g) In the event of a change in the status of the designated representative, the entity shall notify the department of a new representative within 30 days.

<< CA ST § 27860 >>

27860. Section 27545 does not apply to the sale, delivery, loan, or transfer of a firearm made by any person other than a representative of an authorized law enforcement agency to any public or private nonprofit historical society, museum, or institutional collection, if all of the following conditions are met:

(a) The entity receiving the firearm is open to the public.

(b) The firearm is deactivated or rendered inoperable prior to delivery.

(c) The firearm is not of a type prohibited from being sold, delivered, or transferred to the public.

(d) Prior to delivery, the entity receiving the firearm submits a written statement to the person selling, loaning, or transferring the firearm stating that the firearm will not be restored to operating condition, and will either remain with that entity, or if subsequently disposed of, will be transferred in accordance with the applicable provisions listed in Section 16575 and, if applicable, with Section 31615.

(e) If title to a handgun is being transferred to the public or private nonprofit historical society, museum, or institutional collection, then the designated representative of that entity shall, within 30 days of taking possession of that handgun, forward by prepaid mail or deliver in person to the Department of Justice, a single report signed by both parties to the transaction, which includes all of the following information:

(1) Information identifying the person representing the public or private historical society, museum, or institutional collection.

(2) Information on how title was obtained and from whom.

(3) A description of the firearm in question.

(4) A copy of the written statement referred to in subdivision (d).

(f) The report forms that are to be completed pursuant to this section shall be provided by the Department of Justice.

(g) In the event of a change in the status of the designated representative, the entity shall notify the department of a new representative within 30 days.

<< CA ST § 27865 >>

27865. Section 27545 does not apply to sales, deliveries, or transfers of firearms between or to importers and manufacturers of firearms licensed to engage in that business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 27870 >>

27870. Section 27545 does not apply to the transfer of a firearm, other than a handgun, by gift, bequest, intestate succession, or other means from one individual to another, if both of the following requirements are satisfied:

(a) The transfer is infrequent, as defined in Section 16730.

(b) The transfer is between members of the same immediate family.

<< CA ST § 27875 >>

27875. Section 27545 does not apply to the transfer of a handgun by gift, bequest, intestate succession, or other means from one individual to another, if all of the following requirements are met:

(a) The transfer is infrequent, as defined in Section 16730.

(b) The transfer is between members of the same immediate family.

(c) Within 30 days of taking possession of the firearm, the person to whom it is transferred shall forward by prepaid mail, or deliver in person to the Department of Justice, a report that includes information concerning the individual taking possession of the firearm, how title was obtained and from whom, and a description of the firearm in question. The report forms that individuals complete pursuant to this section shall be provided to them by the Department of Justice.

(d) The person taking title to the firearm shall first obtain a handgun safety certificate.

(e) The person receiving the firearm is 18 years of age or older.

<< CA ST § 27880 >>

27880. Section 27545 does not apply to the loan of a firearm between persons who are personally known to each other, if all of the following requirements are satisfied:

(a) The loan is infrequent, as defined in Section 16730.

(b) The loan is for any lawful purpose.

(c) The loan does not exceed 30 days in duration.

(d) Commencing January 1, 2003, if the firearm is a handgun, the individual being loaned the handgun shall have a valid handgun safety certificate.

<< CA ST § 27885 >>

27885. Section 27545 does not apply to the loan of a firearm if all of the following conditions exist:

(a) The person loaning the firearm is at all times within the presence of the person being loaned the firearm.

(b) The loan is for a lawful purpose.

(c) The loan does not exceed three days in duration.

(d) The individual receiving the firearm is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(e) The person loaning the firearm is 18 years of age or older.

(f) The person being loaned the firearm is 18 years of age or older.

<< CA ST § 27890 >>

27890. Section 27545 does not apply to the delivery of a firearm to a gunsmith for service or repair, or to the return of the firearm to its owner by the gunsmith, or to the delivery of a firearm by a gunsmith to a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code for service or repair and the return of the firearm to the gunsmith.

<< CA ST § 27895 >>

27895. Section 27545 does not apply to the sale, delivery, or transfer of firearms if all of the following requirements are satisfied:

(a) The sale, delivery, or transfer is made by a person who resides in this state.

(b) The sale, delivery, or transfer is made to a person who resides outside this state and is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(c) The sale, delivery, or transfer is in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 27900 >>

27900. (a) Section 27545 does not apply to the infrequent sale or transfer of a firearm other than a handgun at an auction or similar event conducted by a nonprofit mutual or public benefit corporation organized pursuant to the Corporations Code.

(b) As used in this section, "infrequent" has the meaning provided in Section 16730.

<< CA ST § 27905 >>

27905. Section 27545 does not apply to the transfer of a firearm if all of the following requirements are satisfied:

(a) The firearm is not a handgun.

(b) The firearm is donated for an auction or similar event described in Section 27900.

(c) The firearm is delivered to the nonprofit corporation immediately preceding, or contemporaneous with, the auction or similar event.

<< CA ST § 27910 >>

27910. Section 27545 does not apply to the loan of a firearm to a person 18 years of age or older for the purposes of shooting at targets if the loan occurs on the premises of a target facility that holds a business or regulatory license or on the premises of any club or organization organized for the purposes of practicing shooting at targets upon established ranges, whether public or private, if the firearm is at all times kept within the premises of the target range or on the premises of the club or organization.

<< CA ST § 27915 >>

27915. Section 27545 does not apply to a person who takes title or possession of a firearm by operation of law if both of the following requirements are satisfied:

(a) The firearm is not a handgun.

(b) The person is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

<< CA ST § 27920 >>

27920. Section 27545 does not apply to a person who takes title or possession of a handgun by operation of law if the person is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm and all of the following conditions are met:

(a) If the person taking title or possession is neither a levying officer as defined in Section 481.140, 511.060, or 680.260 of the Code of Civil Procedure, nor a person who is receiving that firearm pursuant to subdivision (g), (i), or (j) of Section 16990, the person shall, within 30 days of taking possession, forward by prepaid mail or deliver in person to the Department of Justice, a report of information concerning the individual taking possession of the firearm, how title or possession was obtained and from whom, and a description of the firearm in question.

(b) If the person taking title or possession is receiving the firearm pursuant to subdivision (g) of Section 16990, the person shall do both of the following:

(1) Within 30 days of taking possession, forward by prepaid mail or deliver in person to the department, a report of information concerning the individual taking possession of the firearm, how title or possession was obtained and from whom, and a description of the firearm in question.

(2) Prior to taking title or possession of the firearm, the person shall obtain a handgun safety certificate.

(c) Where the person receiving title or possession of the handgun is a person described in subdivision (i) of Section 16990, on the date that the person is delivered the firearm, the name and other information concerning the person taking possession of the firearm, how title or possession of the firearm was obtained and from whom, and a description of the firearm by make, model, serial number, and other identifying characteristics shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that transferred or delivered the firearm. An agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

(d) Where the person receiving title or possession of the handgun is a person described in subdivision (j) of Section 16990, on the date that the person is delivered the firearm, the name and other information concerning the person taking possession of the firearm, how title or possession of the firearm was obtained and from whom, and a description of the firearm by make, model, serial number, and other identifying characteristics shall be entered into the AFS via the CLETS by the law enforcement or state agency that transferred or delivered the firearm. An agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system. In addition, that law enforcement agency shall not deliver that handgun to the person referred to in this subdivision unless, prior to the delivery of the handgun, the person presents proof to the agency that the person is the holder of a handgun safety certificate.

(e) The reports that individuals complete pursuant to this section shall be provided to them by the Department of Justice.

<< CA ST § 27925 >>

27925. (a) Section 27545 does not apply to a person who takes possession of a firearm by operation of law in a representative capacity who subsequently transfers ownership of the firearm to himself or herself in an individual capacity.

(b) In the case of a handgun, the individual shall obtain a handgun safety certificate prior to transferring ownership to himself or herself, or taking possession of a handgun in an individual capacity.

<< CA ST § 27930 >>

27930. Section 27545 does not apply to deliveries, transfers, or returns of firearms made pursuant to any of the following:

(a) Sections 18000 and 18005.

(b) Division 4 (commencing with Section 18250) of Title 2.

(c) Chapter 2 (commencing with Section 33850) of Division 11.

(d) Sections 34005 and 34010.

<< CA ST § 27935 >>

27935. Section 27545 does not apply to the sale, delivery, or transfer of unloaded firearms to a wholesaler as merchandise in the wholesaler's business by a manufacturer or importer licensed to engage in that business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, or by another wholesaler, if the sale, delivery, or transfer is made in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code.

<< CA ST § 27940 >>

27940. Section 27545 does not apply to the sale, delivery, or transfer of a firearm regulated pursuant to any of the following statutes, if the sale, delivery, or transfer of that firearm is conducted in accordance with the applicable provisions of the statute:

(a) Chapter 1 (commencing with Section 18710) of Division 5 of Title 2, relating to destructive devices and explosives.

(b) Section 24410, relating to cane guns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to cane guns.

(c) Section 24510, relating to firearms that are not immediately recognizable as firearms, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to firearms that are not immediately recognizable as firearms.

(d) Sections 24610 and 24680, relating to undetectable firearms, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to undetectable firearms.

(e) Section 24710, relating to wallet guns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to wallet guns.

(f) Chapter 2 (commencing with Section 30500) of Division 10, relating to assault weapons.

(g) Section 31500, relating to unconventional pistols, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to unconventional pistols.

(h) Sections 33215 to 33225, inclusive, relating to short-barreled rifles and short-barreled shotguns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to short-barreled rifles and short-barreled shotguns.

(i) Chapter 6 (commencing with Section 32610) of Division 10, relating to machineguns.

(j) Section 33600, relating to zip guns, and the exemptions in Chapter 1 (commencing with Section 17700) of Title 2, as they relate to zip guns.

<< CA ST § 27945 >>

27945. Section 27545 does not apply to or affect the following circumstances:

(a) The transfer or loan of a firearm, other than a handgun, to a minor by the minor's parent or legal guardian.

(b) The transfer or loan of a firearm, other than a handgun, to a minor by a grandparent who is not the legal guardian of the minor, if the transfer is done with the express permission of the minor's parent or legal guardian.

(c) The loan of a firearm, other than a handgun, to a minor, with the express permission of the minor's parent or legal guardian, if the loan does not exceed 30 days in duration and is for a lawful purpose.

(d) The loan of a handgun to a minor by the minor's parent or legal guardian, if both of the following requirements are satisfied:

(1) The minor is being loaned the firearm for the purposes of engaging in a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(2) The duration of the loan does not exceed the amount of time that is reasonably necessary to engage in the lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(e) The loan of a handgun to a minor by a person who is not the minor's parent or legal guardian, if all of the following requirements are satisfied:

(1) The minor is accompanied by the minor's parent or legal guardian when the loan is made, or the minor has the written consent of the minor's parent or legal guardian, which is presented at the time of the loan, or earlier.

(2) The minor is being loaned the firearm for the purpose of engaging in a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(3) The duration of the loan does not exceed the amount of time that is reasonably necessary to engage in the lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(4) The duration of the loan does not, in any event, exceed 10 days.

<< CA ST § 27950 >>

27950. Section 27545 does not apply to the loan of a firearm, other than a handgun, to a licensed hunter for use by that hunter for a period of time not to exceed the duration of the hunting season for which the firearm is to be used.

<< CA ST § 27955 >>

27955. Section 27545 does not apply to the loan of a firearm if all of the following requirements are satisfied:

(a) The loan is infrequent, as defined in Section 16730.

(b) The firearm is unloaded.

(c) The loan is made by a person who is neither a dealer nor a federal firearms licensee pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code.

(d) The loan is made to a person 18 years of age or older.

(e) The loan is for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

<< CA ST § 27960 >>

27960. (a) Section 27545 does not apply to the loan of a firearm if all of the following requirements are satisfied:

(1) The firearm is unloaded.

(2) The loan is made by a person who is not a dealer but is a federal firearms licensee pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code.

(3) The loan is made to a person who possesses a valid entertainment firearms permit issued pursuant to Chapter 2 (commencing with Section 29500) of Division 8.

(4) The firearm is loaned for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

(b) The person loaning the firearm pursuant to this section shall retain a photocopy of the entertainment firearms permit as proof of compliance with this requirement.

<< CA ST § 27965 >>

27965. If all of the following requirements are satisfied, Section 27545 does not apply to the sale, loan, or transfer of a firearm:

(a) The sale, loan, or transfer is infrequent, as defined in Section 16730.

(b) The firearm is not a handgun.

(c) The firearm is a curio or relic manufactured at least 50 years prior to the current date but is not a replica, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations, or its successor.

pt. 6 t. 4 d. 6 ch. 4 art. 7 pr. § 28000

Article 7. Report to Department of Justice

<< CA ST § 28000 >>

28000. A person who is exempt from Section 27545 or is otherwise not required by law to report acquisition, ownership, or disposal of a handgun or who moves out of this state with the person's handgun may report that to the Department of Justice in a format prescribed by the department.

pt. 6 t. 4 d. 6 ch. 5 pr. § 28050

Chapter 5. Procedure For a Private Party Firearms Transaction

<< CA ST § 28050 >>

28050. (a) A person shall complete any sale, loan, or transfer of a firearm through a person licensed pursuant to Sections 26700 to 26915, inclusive, in accordance with this chapter in order to comply with Section 27545.

(b) The seller or transferor or the person loaning the firearm shall deliver the firearm to the dealer who shall retain possession of that firearm.

(c) The dealer shall then deliver the firearm to the purchaser or transferee or the person being loaned the firearm, if it is not prohibited, in accordance with Section 27540.

(d) If the dealer cannot legally deliver the firearm to the purchaser or transferee or the person being loaned the firearm, the dealer shall forthwith, without waiting for the conclusion of the waiting period described in Sections 26815 and 27540, return the firearm to the transferor or seller or the person loaning the firearm. The dealer shall not return the firearm to the seller or transferor or the person loaning the firearm when to do so would constitute a violation of Section 27500, 27505, 27515, 27520, 27525, 27530, or 27535. If the dealer cannot legally return the firearm to the transferor or seller or the person loaning the firearm, then the dealer shall forthwith deliver the firearm to the sheriff of the county or the chief of police or other head of a municipal police department of any city or city and county, who shall then dispose of the firearm in the manner provided by Sections 18000, 18005, and 34000.

<< CA ST § 28055 >>

28055. (a) For a sale, loan, or transfer conducted pursuant to this chapter, the purchaser or transferee or person being loaned the firearm may be required by the dealer to pay a fee not to exceed ten dollars ($10) per firearm.

(b) No other fee may be charged by the dealer for a sale, loan, or transfer of a firearm conducted pursuant to this chapter, except for the applicable fees that may be charged pursuant to Sections 23690 and 28300 and Article 3 (commencing with Section 28200) of Chapter 6 and forwarded to the Department of Justice, and the fees set forth in Section 31650.

(c) The dealer may not charge any additional fees.

(d) Nothing in these provisions shall prevent a dealer from charging a smaller fee.

<< CA ST § 28060 >>

28060. The Attorney General shall adopt regulations under this chapter to do all of the following:

(a) Allow the seller or transferor or the person loaning the firearm, and the purchaser or transferee or the person being loaned the firearm, to complete a sale, loan, or transfer through a dealer, and to allow those persons and the dealer to preserve the confidentiality of those records and to comply with the requirements of this chapter and all of the following:

(1) Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) of Chapter 2.

(2) Article 1 (commencing with Section 27500) of Chapter 4.

(3) Article 2 (commencing with Section 28150) of Chapter 6.

(4) Article 3 (commencing with Section 28200) of Chapter 6.

(b) Where a personal handgun importer is selling or transferring a pistol, revolver, or other firearm capable of being concealed upon the person to comply with paragraph (2) of subdivision (a) of Section 27560, to allow a personal handgun importer's ownership of the pistol, revolver, or other firearm capable of being concealed upon the person being sold or transferred to be recorded in a manner that if the firearm is returned to that personal handgun importer because the sale or transfer cannot be completed, the Department of Justice will have sufficient information about that personal handgun importer so that a record of the importer's ownership can be maintained in the registry provided by subdivision (c) of Section 11106.

(c) Ensure that the register or record of electronic transfer shall state all of the following:

(1) The name and address of the seller or transferor of the firearm or the person loaning the firearm.

(2) Whether or not the person is a personal handgun importer.

(3) Any other information required by Article 2 (commencing with Section 28150) of Chapter 6.

<< CA ST § 28065 >>

28065. Notwithstanding any other provision of law, a dealer who does not sell, transfer, or keep an inventory of handguns is not required to process private party transfers of handguns.

<< CA ST § 28070 >>

28070. A violation of this chapter by a dealer is a misdemeanor.

pt. 6 t. 4 d. 6 ch. 6 pr. § 28100

Chapter 6. Recordkeeping, Background Checks, and Fees Relating to Sale, Lease, or Transfer of Firearms

pt. 6 t. 4 d. 6 ch. 6 art. 1 pr. § 28100

Article 1. General Provisions Relating to the Register or the Record of Electronic or Telephonic Transfer

<< CA ST § 28100 >>

28100. (a) As required by the Department of Justice, every dealer shall keep a register or record of electronic or telephonic transfer in which shall be entered the information prescribed in Article 2 (commencing with Section 28150).

(b) This section shall not apply to any of the following transactions:

(1) The loan of an unloaded firearm by a dealer to a person who possesses a valid entertainment firearms permit issued pursuant to Chapter 2 (commencing with Section 29500) of Division 8, for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

(2) The delivery of an unloaded firearm by a dealer to a gunsmith for service or repair.

(3) The sale, delivery, or transfer of an unloaded firearm, other than a handgun, by a dealer to another dealer, upon proof of compliance with the requirements of Section 27555.

(4) The sale, delivery, or transfer of an unloaded firearm by a dealer who sells, delivers, or transfers the firearm to a person who resides outside this state and is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and any regulations issued pursuant thereto.

(5) The sale, delivery, or transfer of an unloaded firearm by a dealer to a wholesaler if that firearm is being returned to the wholesaler and is intended as merchandise in the wholesaler's business.

(6) The sale, delivery, or transfer of an unloaded firearm by a dealer to another dealer, upon proof of compliance with the requirements of Section 27555, if the firearm is intended as merchandise in the receiving dealer's business.

(7) The sale, delivery, or transfer of an unloaded firearm, other than a handgun, by a dealer to himself or herself.

(8) The loan of an unloaded firearm by a dealer who also operates a target facility which holds a business or regulatory license on the premises of the building designated in the license or whose building designated in the license is on the premises of any club or organization organized for the purpose of practicing shooting at targets upon established ranges, whether public or private, to a person at that target facility or club or organization, if the firearm is kept at all times within the premises of the target range or on the premises of the club or organization.

(9) The loan of an unloaded firearm by a dealer to a consultant-evaluator, if the loan does not exceed 45 days from the date of delivery of the firearm by the dealer to the consultant-evaluator.

(10) The return of an unloaded firearm to the owner of that firearm by a dealer, if the owner initially delivered the firearm to the dealer for service or repair.

(11) The sale, delivery, or transfer of an unloaded firearm by a dealer to a person licensed as an importer or manufacturer pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and any regulations issued pursuant thereto.

(c) A violation of this section is a misdemeanor.

<< CA ST § 28105 >>

28105. (a)(1) The register required by Section 28100 shall be prepared by and obtained from the State Printer.

(2) The State Printer shall furnish the register only to dealers on application, at a cost to be determined by the Department of General Services.

(3) The Department of General Services shall determine the cost for each 100 leaves in quadruplicate, one original and three duplicates for the making of carbon copies.

(4) The original and duplicate copies shall differ in color, and shall be in the form provided by this chapter.

(b) Where the electronic transfer of applicant information is used, the Department of Justice shall develop the standards for all appropriate electronic equipment and telephone numbers to effect the transfer of information to the department.

<< CA ST § 28110 >>

28110. (a) The State Printer upon issuing a register shall forward to the Department of Justice both of the following:

(1) The name and business address of the dealer.

(2) The series and sheet numbers of the register.

(b) The register shall not be transferable.

(c) If the dealer moves the business to a different location, the dealer shall notify the department of that fact in writing within 48 hours.

pt. 6 t. 4 d. 6 ch. 6 art. 2 pr. § 28150

Article 2. Form of the Register or the Record of Electronic Transfer

<< CA ST § 28150 >>

28150. As used in this article, the following words have the following meanings:

(a) "Purchase" means the purchase, loan, or transfer of a firearm.

(b) "Purchaser" means the purchaser or transferee of a firearm or the person being loaned a firearm.

(c) "Sale" means the sale, loan, or transfer of a firearm.

<< CA ST § 28155 >>

28155. The Department of Justice shall prescribe the form of the register and the record of electronic transfer pursuant to Section 28105.

<< CA ST § 28160 >>

28160. (a) For handguns, the register or record of electronic transfer shall include all of the following information:

(1) The date and time of sale.

(2) The make of firearm.

(3) Peace officer exemption status pursuant to the provisions listed in subdivision (c) of Section 16585, and the agency name.

(4) Dealer waiting period exemption pursuant to Sections 26960 and 27660.

(5) Dangerous weapons permitholder waiting period exemption pursuant to Sections 26965 and 27665.

(6) Curio and relic waiting period exemption pursuant to Sections 26970 and 27670.

(7) California Firearms Dealer number issued pursuant to Article 1 (commencing with Section 26700) of Chapter 2.

(8) For transactions occurring prior to January 1, 2003, the purchaser's basic firearms safety certificate number issued pursuant to former Sections 12805 and 12809, as those sections read at any time from when they became operative on January 1, 1992, to when they were repealed on January 1, 2003.

(9) For transactions occurring on or after January 1, 2003, the purchaser's handgun safety certificate number issued pursuant to Article 2 (commencing with Section 31610) of Chapter 4 of Division 10 of this title, or pursuant to former Article 8 (commencing with Section 12800) of Chapter 6 of Title 2 of Part 4, as that article read at any time from when it became operative on January 1, 2003, to when it was repealed by the Deadly Weapons Recodification Act of 2010.

(10) Manufacturer's name if stamped on the firearm.

(11) Model name or number, if stamped on the firearm.

(12) Serial number, if applicable.

(13) Other number, if more than one serial number is stamped on the firearm.

(14) Any identification number or mark assigned to the firearm pursuant to Section 23910.

(15) Caliber.

(16) Type of firearm.

(17) If the firearm is new or used.

(18) Barrel length.

(19) Color of the firearm.

(20) Full name of purchaser.

(21) Purchaser's complete date of birth.

(22) Purchaser's local address.

(23) If current address is temporary, complete permanent address of purchaser.

(24) Identification of purchaser.

(25) Purchaser's place of birth (state or country).

(26) Purchaser's complete telephone number.

(27) Purchaser's occupation.

(28) Purchaser's sex.

(29) Purchaser's physical description.

(30) All legal names and aliases ever used by the purchaser.

(31) Yes or no answer to questions that prohibit purchase, including, but not limited to, conviction of a felony as described in Chapter 2 (commencing with Section 29800) or an offense described in Chapter 3 (commencing with Section 29900) of Division 9 of this title, the purchaser's status as a person described in Section 8100 of the Welfare and Institutions Code, whether the purchaser is a person who has been adjudicated by a court to be a danger to others or found not guilty by reason of insanity, and whether the purchaser is a person who has been found incompetent to stand trial or placed under conservatorship by a court pursuant to Section 8103 of the Welfare and Institutions Code.

(32) Signature of purchaser.

(33) Signature of salesperson, as a witness to the purchaser's signature.

(34) Salesperson's certificate of eligibility number, if the salesperson has obtained a certificate of eligibility.

(35) Name and complete address of the dealer or firm selling the firearm as shown on the dealer's license.

(36) The establishment number, if assigned.

(37) The dealer's complete business telephone number.

(38) Any information required by Chapter 5 (commencing with Section 28050).

(39) Any information required to determine whether subdivision (f) of Section 27540 applies.

(40) A statement of the penalties for signing a fictitious name or address, knowingly furnishing any incorrect information, or knowingly omitting any information required to be provided for the register.

(b) Effective January 1, 2003, the purchaser shall provide the purchaser's right thumbprint on the register in a manner prescribed by the department. No exception to this requirement shall be permitted except by regulations adopted by the department.

(c) The firearms dealer shall record on the register or record of electronic transfer the date that the handgun is delivered.

<< CA ST § 28165 >>

28165. (a) For firearms other than handguns, the register or record of electronic transfer shall include all of the following information:

(1) The date and time of sale.

(2) Peace officer exemption status pursuant to the provisions listed in subdivision (c) of Section 16585, and the agency name.

(3) Dangerous weapons permitholder waiting period exemption pursuant to Sections 26965 and 27665.

(4) Curio and relic waiting period exemption pursuant to Sections 26970 and 27670.

(5) Auction or event waiting period exemption pursuant to Sections 26955 and 27655.

(6) California Firearms Dealer number issued pursuant to Article 1 (commencing with Section 26700) of Chapter 2.

(7) Full name of purchaser.

(8) Purchaser's complete date of birth.

(9) Purchaser's local address.

(10) If current address is temporary, complete permanent address of purchaser.

(11) Identification of purchaser.

(12) Purchaser's place of birth (state or country).

(13) Purchaser's complete telephone number.

(14) Purchaser's occupation.

(15) Purchaser's sex.

(16) Purchaser's physical description.

(17) All legal names and aliases ever used by the purchaser.

(18) Yes or no answer to questions that prohibit purchase, including, but not limited to, conviction of a felony as described in Chapter 2 (commencing with Section 29800) or an offense described in Chapter 3 (commencing with Section 29900) of Division 9 of this title, the purchaser's status as a person described in Section 8100 of the Welfare and Institutions Code, whether the purchaser is a person who has been adjudicated by a court to be a danger to others or found not guilty by reason of insanity, whether the purchaser is a person who has been found incompetent to stand trial or placed under conservatorship by a court pursuant to Section 8103 of the Welfare and Institutions Code.

(19) Signature of purchaser.

(20) Signature of salesperson, as a witness to the purchaser's signature.

(21) Salesperson's certificate of eligibility number, if the salesperson has obtained a certificate of eligibility.

(22) Name and complete address of the dealer or firm selling the firearm as shown on the dealer's license.

(23) The establishment number, if assigned.

(24) The dealer's complete business telephone number.

(25) Any information required by Chapter 5 (commencing with Section 28050).

(26) A statement of the penalties for any person signing a fictitious name or address, knowingly furnishing any incorrect information, or knowingly omitting any information required to be provided for the register.

(b) Effective January 1, 2003, the purchaser shall provide the purchaser's right thumbprint on the register in a manner prescribed by the department. No exception to this requirement shall be permitted except by regulations adopted by the department.

(c) The firearms dealer shall record on the register or record of electronic transfer the date that the firearm is delivered.

<< CA ST § 28170 >>

28170. Where the register is used, the following shall apply:

(a) Dealers shall use ink to complete each document.

(b) The dealer or salesperson making a sale shall ensure that all information is provided legibly. The dealer and salespersons shall be informed that incomplete or illegible information will delay sales.

(c) Each dealer shall be provided instructions regarding the procedure for completion of the form and routing of the form. Dealers shall comply with these instructions, which shall include the information set forth in this section.

(d) One firearm transaction shall be reported on each record of sale document.

(e) For purposes of this section, a "transaction" means a single sale, loan, or transfer of any number of firearms that are not handguns.

<< CA ST § 28175 >>

28175. The dealer or salesperson making a sale shall ensure that all required information has been obtained from the purchaser. The dealer and all salespersons shall be informed that incomplete information will delay sales.

<< CA ST § 28180 >>

28180. (a) Effective January 1, 2003, the purchaser's name, date of birth, and driver's license or identification number shall be obtained electronically from the magnetic strip on the purchaser's driver's license or identification and shall not be supplied by any other means, except as authorized by the department.

(b) The requirement of subdivision (a) shall not apply in either of the following cases:

(1) The purchaser's identification consists of a military identification card.

(2) Due to technical limitations, the magnetic stripe reader is unable to obtain the required information from the purchaser's identification. In those circumstances, the firearms dealer shall obtain a photocopy of the identification as proof of compliance.

(c) In the event that the dealer has reported to the department that the dealer's equipment has failed, information pursuant to this section shall be obtained by an alternative method to be determined by the department.

pt. 6 t. 4 d. 6 ch. 6 art. 3 pr. § 28200

Article 3. Submission of Fees and Firearm Purchaser Information to the Department of Justice

<< CA ST § 28200 >>

28200. As used in this article, the following words have the following meanings:

(a) "Purchase" means the purchase, loan, or transfer of a firearm.

(b) "Purchaser" means the purchaser or transferee of a firearm or the person being loaned a firearm.

(c) "Sale" means the sale, loan, or transfer of a firearm.

(d) "Seller" means, if the transaction is being conducted pursuant to Chapter 5 (commencing with Section 28050), the person selling, loaning, or transferring the firearm.

<< CA ST § 28205 >>

28205. (a) Until January 1, 1998, the Department of Justice shall determine the method by which a dealer shall submit firearm purchaser information to the department. The information shall be in one of the following formats:

(1) Submission of the register described in Article 2 (commencing with Section 28150).

(2) Electronic or telephonic transfer of the information contained in the register described in Article 2 (commencing with Section 28150).

(b) On or after January 1, 1998, electronic or telephonic transfer, including voice or facsimile transmission, shall be the exclusive means by which purchaser information is transmitted to the department.

(c) On or after January 1, 2003, except as permitted by the department, electronic transfer shall be the exclusive means by which information is transmitted to the department. Telephonic transfer shall not be permitted for information regarding sales of any firearms.

<< CA ST § 28210 >>

28210. (a)(1) Where the register is used, the purchaser of any firearm shall be required to present to the dealer clear evidence of the person's identity and age.

(2) The dealer shall require the purchaser to sign the purchaser's current legal name and affix the purchaser's residence address and date of birth to the register in quadruplicate.

(3) The salesperson shall sign the register in quadruplicate, as a witness to the signature and identification of the purchaser.

(b) Any person furnishing a fictitious name or address, knowingly furnishing any incorrect information, or knowingly omitting any information required to be provided for the register shall be punished as provided in Section 28250.

(c)(1) The original of the register shall be retained by the dealer in consecutive order.

(2) Each book of 50 originals shall become the permanent register of transactions, which shall be retained for not less than three years from the date of the last transaction.

(3) Upon presentation of proper identification, the permanent register of transactions shall be available for inspection by any peace officer, Department of Justice employee designated by the Attorney General, or agent of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives. No information shall be compiled therefrom regarding the purchasers or other transferees of firearms that are not pistols, revolvers, or other firearms capable of being concealed upon the person.

(d) On the date of the application to purchase, two copies of the original sheet of the register shall be placed in the mail, postage prepaid, and properly addressed to the Department of Justice.

(e) If requested, a photocopy of the original shall be provided to the purchaser by the dealer.

(f) If the transaction is a private party transfer conducted pursuant to Chapter 5 (commencing with Section 28050), a photocopy of the original shall be provided to the seller or purchaser by the dealer, upon request. The dealer shall redact all of the purchaser's personal information, as required pursuant to subdivision (a) of Section 28160 and subdivision (a) of Section 28165, from the seller's copy, and the seller's personal information from the purchaser's copy.

<< CA ST § 28215 >>

28215. (a)(1) Where the electronic or telephonic transfer of applicant information is used, the purchaser shall be required to present to the dealer clear evidence of the person's identity and age.

(2) The dealer shall require the purchaser to sign the purchaser's current legal name to the record of electronic or telephonic transfer.

(3) The salesperson shall sign the record of electronic or telephonic transfer, as a witness to the signature and identification of the purchaser.

(b) Any person furnishing a fictitious name or address, knowingly furnishing any incorrect information, or knowingly omitting any information required to be provided for the electronic or telephonic transfer shall be punished as provided in Section 28250.

(c)(1) The original of each record of electronic or telephonic transfer shall be retained by the dealer in consecutive order.

(2) Each original shall become the permanent record of the transaction, which shall be retained for not less than three years from the date of the last transaction.

(3) Upon presentation of proper identification, the permanent record of the transaction shall be provided for inspection by any peace officer, Department of Justice employee designated by the Attorney General, or agent of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives. No information shall be compiled therefrom regarding the purchasers or other transferees of firearms that are not pistols, revolvers, or other firearms capable of being concealed upon the person.

(d) On the date of the application to purchase, the record of applicant information shall be transmitted to the Department of Justice by electronic or telephonic transfer.

(e) If requested, a copy of the record of electronic or telephonic transfer shall be provided to the purchaser by the dealer.

(f) If the transaction is a private party transfer conducted pursuant to Chapter 5 (commencing with Section 28050), a copy shall be provided to the seller or purchaser by the dealer, upon request. The dealer shall redact all of the purchaser's personal information, as required pursuant to subdivision (a) of Section 28160 and subdivision (a) of Section 28165, from the seller's copy, and the seller's personal information from the purchaser's copy.

<< CA ST § 28220 >>

28220. (a) Upon submission of firearm purchaser information, the Department of Justice shall examine its records, as well as those records that it is authorized to request from the State Department of Mental Health pursuant to Section 8104 of the Welfare and Institutions Code, in order to determine if the purchaser is a person described in subdivision (a) of Section 27535, or is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(b) To the extent that funding is available, the Department of Justice may participate in the National Instant Criminal Background Check System (NICS), as described in subsection (t) of Section 922 of Title 18 of the United States Code, and, if that participation is implemented, shall notify the dealer and the chief of the police department of the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, that the purchaser is a person prohibited from acquiring a firearm under federal law.

(c) If the department determines that the purchaser is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm or is a person described in subdivision (a) of Section 27535, it shall immediately notify the dealer and the chief of the police department of the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, of that fact.

(d) If the department determines that the copies of the register submitted to it pursuant to subdivision (d) of Section 28210 contain any blank spaces or inaccurate, illegible, or incomplete information, preventing identification of the purchaser or the pistol, revolver, or other firearm to be purchased, or if any fee required pursuant to Section 28225 is not submitted by the dealer in conjunction with submission of copies of the register, the department may notify the dealer of that fact. Upon notification by the department, the dealer shall submit corrected copies of the register to the department, or shall submit any fee required pursuant to Section 28225, or both, as appropriate and, if notification by the department is received by the dealer at any time prior to delivery of the firearm to be purchased, the dealer shall withhold delivery until the conclusion of the waiting period described in Sections 26815 and 27540.

(e) If the department determines that the information transmitted to it pursuant to Section 28215 contains inaccurate or incomplete information preventing identification of the purchaser or the pistol, revolver, or other firearm capable of being concealed upon the person to be purchased, or if the fee required pursuant to Section 28225 is not transmitted by the dealer in conjunction with transmission of the electronic or telephonic record, the department may notify the dealer of that fact. Upon notification by the department, the dealer shall transmit corrections to the record of electronic or telephonic transfer to the department, or shall transmit any fee required pursuant to Section 28225, or both, as appropriate, and if notification by the department is received by the dealer at any time prior to delivery of the firearm to be purchased, the dealer shall withhold delivery until the conclusion of the waiting period described in Sections 26815 and 27540.

<< CA ST § 28225 >>

28225. (a) The Department of Justice may require the dealer to charge each firearm purchaser a fee not to exceed fourteen dollars ($14), except that the fee may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the Department of Industrial Relations.

(b) The fee under subdivision (a) shall be no more than is necessary to fund the following:

(1) The department for the cost of furnishing this information.

(2) The department for the cost of meeting its obligations under paragraph (2) of subdivision (b) of Section 8100 of the Welfare and Institutions Code.

(3) Local mental health facilities for state-mandated local costs resulting from the reporting requirements imposed by Section 8103 of the Welfare and Institutions Code.

(4) The State Department of Mental Health for the costs resulting from the requirements imposed by Section 8104 of the Welfare and Institutions Code.

(5) Local mental hospitals, sanitariums, and institutions for state-mandated local costs resulting from the reporting requirements imposed by Section 8105 of the Welfare and Institutions Code.

(6) Local law enforcement agencies for state-mandated local costs resulting from the notification requirements set forth in subdivision (a) of Section 6385 of the Family Code.

(7) Local law enforcement agencies for state-mandated local costs resulting from the notification requirements set forth in subdivision (c) of Section 8105 of the Welfare and Institutions Code.

(8) For the actual costs associated with the electronic or telephonic transfer of information pursuant to Section 28215.

(9) The Department of Food and Agriculture for the costs resulting from the notification provisions set forth in Section 5343.5 of the Food and Agricultural Code.

(10) The department for the costs associated with subdivisions (d) and (e) of Section 27560.

(11) The department for the costs associated with funding Department of Justice firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms pursuant to any provision listed in Section 16580.

(c) The fee established pursuant to this section shall not exceed the sum of the actual processing costs of the department, the estimated reasonable costs of the local mental health facilities for complying with the reporting requirements imposed by paragraph (3) of subdivision (b), the costs of the State Department of Mental Health for complying with the requirements imposed by paragraph (4) of subdivision (b), the estimated reasonable costs of local mental hospitals, sanitariums, and institutions for complying with the reporting requirements imposed by paragraph (5) of subdivision (b), the estimated reasonable costs of local law enforcement agencies for complying with the notification requirements set forth in subdivision (a) of Section 6385 of the Family Code, the estimated reasonable costs of local law enforcement agencies for complying with the notification requirements set forth in subdivision (c) of Section 8105 of the Welfare and Institutions Code imposed by paragraph (7) of subdivision (b), the estimated reasonable costs of the Department of Food and Agriculture for the costs resulting from the notification provisions set forth in Section 5343.5 of the Food and Agricultural Code, the estimated reasonable costs of the department for the costs associated with subdivisions (d) and (e) of Section 27560, and the estimated reasonable costs of department firearms-related regulatory and enforcement activities related to the sale, purchase, loan, or transfer of firearms pursuant to any provision listed in Section 16580.

(d) Where the electronic or telephonic transfer of applicant information is used, the department shall establish a system to be used for the submission of the fees described in this section to the department.

<< CA ST § 28230 >>

28230. (a) The Department of Justice may charge a fee sufficient to reimburse it for each of the following but not to exceed fourteen dollars ($14), except that the fee may be increased at a rate not to exceed any increase in the California Consumer Price Index as compiled and reported by the Department of Industrial Relations:

(1) For the actual costs associated with the preparation, sale, processing, and filing of forms or reports required or utilized pursuant to any provision listed in subdivision (a) of Section 16585.

(2) For the actual processing costs associated with the submission of a Dealers' Record of Sale to the department.

(3) For the actual costs associated with the preparation, sale, processing, and filing of reports utilized pursuant to Section 26905, 27565, or 28000, or paragraph (1) of subdivision (a) of Section 27560.

(4) For the actual costs associated with the electronic or telephonic transfer of information pursuant to Section 28215.

(b) If the department charges a fee pursuant to paragraph (2) of subdivision (a), it shall be charged in the same amount to all categories of transaction that are within that paragraph.

(c) Any costs incurred by the Department of Justice to implement this section shall be reimbursed from fees collected and charged pursuant to this section. No fees shall be charged to the dealer pursuant to Section 28225 for implementing this section.

<< CA ST § 28235 >>

28235. All money received by the department pursuant to this article shall be deposited in the Dealers' Record of Sale Special Account of the General Fund, which is hereby created, to be available, upon appropriation by the Legislature, for expenditure by the department to offset the costs incurred pursuant to any of the following:

(a) This article.

(b) Section 18910.

(c) Section 27555.

(d) Subdivisions (d) and (e) of Section 27560.

(e) Article 6 (commencing with Section 28450).

(f) Section 31110.

(g) Section 31115.

(h) Subdivision (a) of Section 32020.

(i) Section 32670.

(j) Section 33320.

<< CA ST § 28240 >>

28240. (a) Only one fee shall be charged pursuant to this article for a single transaction on the same date for the sale of any number of firearms that are not pistols, revolvers, or other firearms capable of being concealed upon the person, or for the taking of possession of those firearms.

(b) In a single transaction on the same date for the delivery of any number of firearms that are pistols, revolvers, or other firearms capable of being concealed upon the person, the department shall charge a reduced fee pursuant to this article for the second and subsequent firearms that are part of that transaction.

(c) Only one fee shall be charged pursuant to this article for a single transaction on the same date for taking title or possession of any number of firearms pursuant to Section 26905, 27870, 27875, 27915, 27920, or 27925.

<< CA ST § 28245 >>

28245. Whenever the Department of Justice acts pursuant to this article as it pertains to firearms other than pistols, revolvers, or other firearms capable of being concealed upon the person, the department's acts or omissions shall be deemed to be discretionary within the meaning of the California Tort Claims Act pursuant to Division 3.6 (commencing with Section 810) of Title 1 of the Government Code.

<< CA ST § 28250 >>

28250. (a) Any person who does any of the following is guilty of a misdemeanor:

(1) Furnishing a fictitious name or address for the register under Section 28210 or the electronic or telephonic transfer under Section 28215.

(2) Knowingly furnishing any incorrect information for the register under Section 28210 or the electronic or telephonic transfer under Section 28215.

(3) Knowingly omitting any information required to be provided for the register under Section 28210 or the electronic or telephonic transfer under Section 28215.

(4) Violating any provision of this article.

(b) Notwithstanding subdivision (a), any person who is prohibited from obtaining a firearm pursuant to Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, who does any of the following shall be punished by imprisonment in a county jail not exceeding one year or imprisonment in the state prison for a term of 8, 12, or 18 months:

(1) Knowingly furnishes a fictitious name or address for the register under Section 28210 or the electronic or telephonic transfer under Section 28215.

(2) Knowingly furnishes any incorrect information for the register under Section 28210 or the electronic or telephonic transfer under Section 28215.

(3) Knowingly omits any information required to be provided for the register under Section 28210 or the electronic or telephonic transfer under Section 28215.

pt. 6 t. 4 d. 6 ch. 6 art. 4 pr. § 28300

Article 4. Firearms Safety and Enforcement Special Fund

<< CA ST § 28300 >>

28300. (a) The Firearms Safety and Enforcement Special Fund is hereby established in the State Treasury and shall be administered by the Department of Justice.

(b) Notwithstanding Section 13340 of the Government Code, all moneys in the fund are continuously appropriated to the Department of Justice, without regard to fiscal years, for the purpose of implementing and enforcing the provisions of Article 2 (commencing with Section 31610) of Chapter 4 of Division 10, enforcing Section 830.95, Title 2 (commencing with Section 12001) of Part 4, Sections 16000 to 16960, inclusive, Sections 16970 to 17230, inclusive, Sections 17240 to 21390, inclusive, and Sections 21590 to 34370, inclusive, and for the establishment, maintenance, and upgrading of equipment and services necessary for firearms dealers to comply with Article 2 (commencing with Section 28150).

(c) The Department of Justice may require firearms dealers to charge each person who obtains a firearm a fee not to exceed five dollars ($5) for each transaction. Revenues from this fee shall be deposited in the Firearms Safety and Enforcement Special Fund.

pt. 6 t. 4 d. 6 ch. 6 art. 5 pr. § 28400

Article 5. Exceptions Relating to Law Enforcement

<< CA ST § 28400 >>

28400. (a) Article 1 (commencing with Section 28100), Article 2 (commencing with Section 28150), Article 3 (commencing with Section 28200), and Article 4 (commencing with Section 28300) do not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 28405 >>

28405. Article 1 (commencing with Section 28100), Article 2 (commencing with Section 28150), Article 3 (commencing with Section 28200), and Article 4 (commencing with Section 28300) do not apply to the loan of a firearm if all of the following conditions are satisfied:

(a) The loan is made by an authorized law enforcement representative of a city, county, or city and county, or of the state or federal government.

(b) The loan is made to a peace officer employed by that agency and authorized to carry a firearm.

(c) The loan is made for the carrying and use of that firearm by that peace officer in the course and scope of the officer's duties.

<< CA ST § 28410 >>

28410. (a) Article 1 (commencing with Section 28100), Article 2 (commencing with Section 28150), Article 3 (commencing with Section 28200), and Article 4 (commencing with Section 28300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 28415 >>

28415. (a) Article 1 (commencing with Section 28100), Article 2 (commencing with Section 28150), Article 3 (commencing with Section 28200), and Article 4 (commencing with Section 28300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

pt. 6 t. 4 d. 6 ch. 6 art. 6 pr. § 28450

Article 6. Centralized List of Exempted Federal Firearms Licensees

<< CA ST § 28450 >>

28450. (a) Commencing January 1, 2008, the Department of Justice shall keep a centralized list of persons who identify themselves as being licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code as a dealer, importer, or manufacturer of firearms whose licensed premises are within this state and who declare to the department an exemption from the firearms dealer licensing requirements of Section 26500.

(b) The list shall be known as the centralized list of exempted federal firearms licensees.

(c) To qualify for placement on the centralized list, an applicant shall do all of the following:

(1) Possess a valid federal firearms license pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code as a dealer, importer, or manufacturer of firearms.

(2) Possess a current, valid certificate of eligibility pursuant to Section 26710.

(3) Maintain with the department a signed declaration enumerating the applicant's statutory exemptions from licensing requirements of Section 26500.

<< CA ST § 28455 >>

28455. Any person furnishing a fictitious name, knowingly furnishing any incorrect information, or knowingly omitting any information for the declaration under paragraph (3) of subdivision (c) of Section 28450 shall be guilty of a misdemeanor.

<< CA ST § 28460 >>

28460. (a) Commencing January 1, 2008, the department shall assess an annual fee of one hundred fifteen dollars ($115) to cover its costs of maintaining the centralized list of exempted federal firearms licensees prescribed by Section 28450, conducting inspections in accordance with this article, and for the cost of maintaining the firearm shipment verification number system described in Section 27555.

(b) The department may increase the fee at a rate not to exceed the increase in the California Consumer Price Index as compiled and reported by the Department of Industrial Relations.

(c) The fees collected shall be deposited in the Dealers' Record of Sale Special Account.

(d) A person who satisfies all of the following conditions shall not be charged a fee:

(1) The person is not licensed pursuant to Sections 26700 to 26915, inclusive.

(2) The person has been issued a permit pursuant to Section 31005, 32650, or 33300, or pursuant to Article 3 (commencing with Section 18900) of Chapter 1 of Division 5 of Title 2.

(3) The person is placed on the centralized list of exempted federal firearms licensees.

<< CA ST § 28465 >>

28465. (a) Any person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code as a dealer, importer, or manufacturer of firearms whose licensed premises are within this state shall not import or receive firearms from any source unless listed on the centralized list of firearms dealers pursuant to Section 26715, or the centralized list of exempted federal firearms licensees pursuant to Section 28450, or the centralized list of firearms manufacturers pursuant to Section 29060.

(b) A violation of this section is a misdemeanor.

<< CA ST § 28470 >>

28470. (a) All persons on the centralized list of exempted federal firearms licensees prescribed by Section 28450 shall record and keep on file for three years, the verification number that shall accompany firearms received from other federal firearms licensees pursuant to Section 27555.

(b) A violation of this section is cause for immediate removal from the centralized list.

<< CA ST § 28475 >>

28475. Information compiled from the list described in Section 28450 shall be made available for the following purposes:

(a) Requests from local, state, and federal law enforcement agencies and the duly constituted city, county, and city and county licensing authorities.

(b) When the information is requested by a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code for determining the validity of the license for firearm shipments.

<< CA ST § 28480 >>

28480. (a) The department may conduct onsite inspections at the business premises of a person on the centralized list described in Section 28450 to determine compliance with firearms laws pursuant to the provisions listed in Section 16575.

(b) The department shall work in consultation with the Bureau of Alcohol, Tobacco, Firearms, and Explosives to ensure that licensees are not subject to duplicative inspections.

(c) During the inspection the following firearm records shall be made available for review:

(1) Federal records referred to in subdivision (a) of Section 478.125 of Title 27 of the Code of Federal Regulations and the bound book containing the same information referred to in Section 478.124a and subdivision (e) of Section 478.125 of Title 27 of the Code of Federal Regulations.

(2) Verification numbers issued pursuant to Section 27555.

(3) Any other records requested by the department to determine compliance with the provisions listed in Section 16575.

<< CA ST § 28485 >>

28485. The department may remove from the centralized list described in Section 28450 any person who violates a provision listed in Section 16575.

<< CA ST § 28490 >>

28490. The department may adopt regulations as necessary to carry out the provisions of this article, Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) of Chapter 2, and Sections 27555 to 27570, inclusive. The department shall work in consultation with the Bureau of Alcohol, Tobacco, Firearms, and Explosives to ensure that state regulations are not duplicative of federal regulations.

SEC. 6. Part 6 (commencing with Section 16000) is added to the Penal Code, to read:

pt. 6 t. 4 d. 7 pr. § 29010

DIVISION 7. MANUFACTURE OF FIREARMS

pt. 6 t. 4 d. 7 ch. 1 pr. § 29010

Chapter 1. License Requirement for Manufacture of Firearms

<< CA ST § 29010 >>

29010. (a) Commencing July 1, 1999, no person, firm, or corporation licensed to manufacture firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code may manufacture firearms within this state unless licensed pursuant to Chapter 2 (commencing with Section 29030).

(b) Subdivision (a) does not apply to a person licensed to manufacture firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code who manufactures fewer than 100 firearms in a calendar year within this state.

(c) If a person, firm, or corporation required to be licensed pursuant to Chapter 2 (commencing with Section 29030) ceases operations, then the records required pursuant to Section 29130 and subdivision (b) of Section 29115 shall be forwarded to the federal Bureau of Alcohol, Tobacco, and Firearms within three days of the closure of business.

(d) A violation of this section is a misdemeanor.


pt. 6 t. 4 d. 7 ch. 2 pr. § 29030

Chapter 2. Issuance, Forfeiture, and Conditions of License to Manufacture Firearms

pt. 6 t. 4 d. 7 ch. 2 art. 1 pr. § 29030

Article 1. Preliminary Provisions

<< CA ST § 29030 >>

29030. In this chapter, "licensee" means a person, firm, or corporation that satisfies both of the following:

(a) Has a license issued pursuant to subdivision (b) of Section 29050.

(b) Is among those recorded in the centralized list specified in Section 29060.


pt. 6 t. 4 d. 7 ch. 2 art. 2 pr. § 29050

Article 2. Licensing Process

<< CA ST § 29050 >>

29050. (a) The Department of Justice shall accept applications for, and shall grant licenses permitting, the manufacture of firearms within this state.

(b) No license shall be granted by the department unless and until the applicant presents proof that the applicant has all of the following:

(1) A valid license to manufacture firearms issued pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code.

(2) Any regulatory or business license required by local government.

(3) A valid seller's permit or resale certificate issued by the State Board of Equalization, if applicable.

(4) A certificate of eligibility issued by the Department of Justice pursuant to Section 26710.

(c) A license granted by the department shall be valid for no more than one year from the date of issuance and shall be in the form prescribed by the Attorney General.

(d) The department shall inform applicants who are denied licenses of the reasons for the denial in writing.

<< CA ST § 29055 >>

29055. (a) The department shall adopt regulations to administer this chapter and Chapter 1 (commencing with Section 29010).

(b) The department shall recover the full costs of administering the program by collecting fees from license applicants. Recoverable costs shall include, but not be limited to, the costs of inspections and maintaining a centralized list of licensed firearm manufacturers.

(c) The fee for licensed manufacturers who produce fewer than 500 firearms in a calendar year within this state shall not exceed two hundred fifty dollars ($250) per year or the actual costs of inspections and maintaining a centralized list of firearm manufacturers and any other duties of the department required pursuant to this chapter and Chapter 1 (commencing with Section 29010), whichever is less.

<< CA ST § 29060 >>

29060. (a) Except as otherwise provided in subdivisions (a) and (b) of Section 20965, the Department of Justice shall maintain a centralized list of all persons licensed pursuant to subdivision (b) of Section 29050.

(b) The centralized list shall be provided annually to each police department and county sheriff within the state.

<< CA ST § 29065 >>

29065. (a) Except as provided in subdivision (b), the license of any licensee who violates this chapter may be revoked.

(b) The license of any licensee who knowingly or with gross negligence violates this chapter or violates this chapter three times shall be revoked, and that person, firm, or corporation shall become permanently ineligible to obtain a license pursuant to this chapter.

(c) Upon the revocation of the license, notification shall be provided to local law enforcement authorities in the jurisdiction where the licensee's business is located and to the federal Bureau of Alcohol, Tobacco, and Firearms.

<< CA ST § 29070 >>

29070. (a) The department shall make information concerning the location and name of a licensee available, upon request, for the following purposes only:

(1) Law enforcement.

(2) When the information is requested by a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code for determining the validity of the license for firearm shipments.

(b) Notwithstanding subdivision (a), the department shall make the name and business address of a licensee available to any person upon written request.

<< CA ST § 29075 >>

29075. The Department of Justice shall maintain and make available upon request information concerning all of the following:

(a) The number of inspections conducted and the amount of fees collected pursuant to Section 29055.

(b) The number of licensees removed from the centralized list described in Sections 29060 and 29065.

(c) The number of licensees found to have violated this chapter.

pt. 6 t. 4 d. 7 ch. 2 art. 3 pr. § 29100

Article 3. Prohibitions and Requirements Applicable to Licensee

<< CA ST § 29100 >>

29100. A licensee shall comply with the prohibitions and requirements described in this article.

<< CA ST § 29105 >>

29105. The business of a licensee shall be conducted only in the buildings designated in the license.

<< CA ST § 29110 >>

29110. A licensee shall display the license or a copy thereof, certified by the department, on the premises where it can easily be seen.

<< CA ST § 29115 >>

29115. (a) Whenever a licensee discovers that a firearm has been stolen or is missing from the licensee's premises, the licensee shall report the loss or theft within 48 hours of the discovery to all of the following:

(1) The Department of Justice, in a manner prescribed by the department.

(2) The federal Bureau of Alcohol, Tobacco, and Firearms.

(3) The police department in the city or city and county where the building designated in the license is located.

(4) If there is no police department in the city or city and county where the building designated in the license is located, the sheriff of the county where the building designated in the license is located.

(b) For at least 10 years, the licensee shall maintain records of all firearms that are lost or stolen, as prescribed by the Department of Justice.

<< CA ST § 29120 >>

29120. (a) A licensee shall require that each employee obtain a certificate of eligibility pursuant to Section 26710, which shall be renewed annually, before being allowed to come into contact with any firearm.

(b) A licensee shall prohibit any employee who the licensee knows or reasonably should know is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm from coming into contact with any firearm.

<< CA ST § 29125 >>

29125. (a) Each firearm a licensee manufactures in this state shall be identified with a unique serial number stamped onto the firearm utilizing the method of compression stamping.

(b) Licensed manufacturers who produce fewer than 500 firearms in a calendar year within this state may serialize long guns only by utilizing a method of compression stamping or by engraving the serial number onto the firearm.

(c) The licensee shall stamp the serial number onto the firearm within one business day of the time the frame or receiver is manufactured.

(d) The licensee shall not use the same serial number for more than one firearm.

<< CA ST § 29130 >>

29130. (a) A licensee shall record the type, model, caliber, or gauge, and serial number of each firearm manufactured or acquired, and the date of the manufacture or acquisition, within one business day of the manufacture or acquisition.

(b) The licensee shall maintain permanently within the building designated in the license the records required pursuant to subdivision (a).

(c) Backup copies of the records described in subdivision (a), whether electronic or hard copy, shall be made at least once a month. These backup records shall be maintained in a facility separate from the one in which the primary records are stored.

<< CA ST § 29135 >>

29135. (a) A licensee shall allow the department to inspect the building designated in the license to ensure compliance with the requirements of this chapter.

(b) A licensee shall allow any peace officer, authorized law enforcement employee, or Department of Justice employee designated by the Attorney General, upon the presentation of proper identification, to inspect facilities and records during business hours to ensure compliance with the requirements of this chapter.

<< CA ST § 29140 >>

29140. A licensee shall store in a secure facility all firearms manufactured and all barrels for firearms manufactured.

<< CA ST § 29141 >>

29141. Except as otherwise provided in Section 29142, as used in this chapter, "secure facility" means that the facility satisfies all of the following:

(a) The facility is equipped with a burglar alarm with central monitoring.

(b) All perimeter entries to areas in which firearms are stored other than doors, including windows and skylights, are secured with steel window guards or an audible, silent, or sonic alarm to detect entry.

(c) All perimeter doorways are designed in one of the following ways:

(1) A windowless steel security door equipped with both a deadbolt and a doorknob lock.

(2) A windowed metal door equipped with both a deadbolt and a doorknob lock. If the window has an opening of five inches or more measured in any direction, the window is covered with steel bars of at least one-half inch diameter or metal grating of at least nine gauge affixed to the exterior or interior of the door.

(3) A metal grate that is padlocked and affixed to the licensee's premises independent of the door and doorframe.

(4) Hinges and hasps attached to doors by welding, riveting, or bolting with nuts on the inside of the door.

(5) Hinges and hasps installed so that they cannot be removed when the doors are closed and locked.

(d) Heating, ventilating, air-conditioning, and service openings are secured with steel bars, metal grating, or an alarm system.

(e) No perimeter metal grates are capable of being entered by any person.

(f) Steel bars used to satisfy the requirements of this section are not capable of being entered by any person.

(g) Perimeter walls of rooms in which firearms are stored are constructed of concrete or at least 10–gauge expanded steel wire mesh utilized along with typical wood frame and drywall construction. If firearms are not stored in a vault, the facility shall use an exterior security-type door along with a high security, single-key deadbolt, or other door that is more secure. All firearms shall be stored in a separate room away from any general living area or work area. Any door to the storage facility shall be locked while unattended.

(h) Perimeter doorways, including the loading dock area, are locked at all times when not attended by paid employees or contracted employees, including security guards.

(i) Except when a firearm is currently being tested, any ammunition on the premises is removed from all manufactured guns and stored in a separate and locked room, cabinet, or box away from the storage area for the firearms. Ammunition may be stored with a weapon only in a locked safe.

<< CA ST § 29142 >>

29142. (a) For purposes of this chapter, any licensed manufacturer who produces fewer than 500 firearms in a calendar year within this state may maintain a "secure facility" by complying with all of the requirements described in Section 29141, or may design a security plan that is approved by the Department of Justice or the federal Bureau of Alcohol, Tobacco, and Firearms.

(b) If a security plan is approved by the federal Bureau of Alcohol, Tobacco, and Firearms, the approved plan, along with proof of approval, shall be filed with the Department of Justice and the local police department. If there is no police department, the filing shall be with the county sheriff's office.

(c) If a security plan is approved by the Department of Justice, the approved plan, along with proof of approval, shall be filed with the local police department. If there is no police department, the filing shall be with the county sheriff's office.

<< CA ST § 29150 >>

29150. (a) A licensee shall notify the chief of police or other head of the municipal police department in the city or city and county where the building designated in the license is located that the licensee is manufacturing firearms within that city or city and county and the location of the licensed premises.

(b) If there is no police department in the city or city and county where the building designated in the license is located, the licensee shall notify the sheriff of the county where the building designated in the license is located that the licensee is manufacturing firearms within that county and the location of the licensed premises.

pt. 6 t. 4 d. 8 pr. § 29300

DIVISION 8. MISCELLANEOUS RULES RELATING TO FIREARMS GENERALLY

pt. 6 t. 4 d. 8 ch. 1 pr. § 29300

Chapter 1. Miscellaneous Provisions

<< CA ST § 29300 >>

29300. (a) Except as provided in subdivision (c), a firearm of any nature owned or possessed in violation of Chapter 1 (commencing with Section 29610), Chapter 2 (commencing with Section 29800), or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Chapter 3 (commencing with Section 8100) of Division 5 of the Welfare and Institutions Code, or used in the commission of any misdemeanor as provided in this code, any felony, or an attempt to commit any misdemeanor as provided in this code or any felony, is, upon a conviction of the defendant or upon a juvenile court finding that an offense which would be a misdemeanor or felony if committed by an adult was committed or attempted by the juvenile with the use of a firearm, a nuisance, and is subject to Sections 18000 and 18005.

(b) A finding that the defendant was guilty of the offense but was insane at the time the offense was committed is a conviction for the purposes of this section.

(c) A firearm is not a nuisance pursuant to this section if the firearm owner disposes of the firearm pursuant to Section 29810.

(d) This section does not apply to any of the following:

(1) Any firearm in the possession of the Department of Fish and Game.

(2) Any firearm that was used in the violation of any provision of the Fish and Game Code or any regulation adopted pursuant thereto.

(3) Any firearm that is forfeited pursuant to Section 5008.6 of the Public Resources Code.

pt. 6 t. 4 d. 8 ch. 2 pr. § 29500

Chapter 2. Entertainment Firearms Permit

<< CA ST § 29500 >>

29500. Any person who is at least 21 years of age may apply for an entertainment firearms permit from the Department of Justice. An entertainment firearms permit authorizes the permitholder to possess firearms loaned to the permitholder for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

<< CA ST § 29505 >>

29505. (a) Requests for entertainment firearms permits shall be made on application forms prescribed by the Department of Justice that require applicant information, including, but not limited to, the following:

(1) Complete name.

(2) Residential and mailing address.

(3) Telephone number.

(4) Date of birth.

(5) Place of birth.

(6) Country of citizenship and, if other than United States, alien number or admission number.

(7) Valid driver's license number or valid identification card number issued by the California Department of Motor Vehicles.

(8) Social security number.

(9) Signature.

(b) All applications must be submitted with the appropriate fee as specified in Section 29510.

<< CA ST § 29510 >>

29510. (a) The Department of Justice shall recover the full costs of administering the entertainment firearms permit program by assessing the following application fees:

(1) For the initial application: one hundred four dollars ($104). Of this sum, fifty-six dollars ($56) shall be deposited into the Fingerprint Fee Account, and forty-eight dollars ($48) shall be deposited into the Dealer Record of Sale Account.

(2) For each annual renewal application: twenty–nine dollars ($29), which shall be deposited into the Dealer Record of Sale Account.

(b) The department shall annually review and shall adjust the fees specified in subdivision (a), if necessary, to fully fund, but not to exceed the actual costs of, the permit program provided for by this chapter, including enforcement of the program.

<< CA ST § 29515 >>

29515. (a) Upon receipt of an initial or renewal application submitted as specified in Sections 29505, 29520, and 29525, the department shall examine its records, records the department is authorized to request from the State Department of Mental Health pursuant to Section 8104 of the Welfare and Institutions Code, and records of the National Instant Criminal Background Check System as described in subsection (t) of Section 922 of Title 18 of the United States Code, in order to determine if the applicant is prohibited from possessing or receiving firearms.

(b) The department shall issue an entertainment firearms permit only if the records indicate that the applicant is not prohibited from possessing or receiving firearms pursuant to any federal, state, or local law.

<< CA ST § 29520 >>

29520. (a) An initial application for an entertainment firearms permit shall require the submission of fingerprint images and related information in a manner prescribed by the department, for the purpose of obtaining information as to the existence and nature of a record of state or federal level convictions and state or federal level arrests for which the department establishes that the individual was released on bail or on the individual's own recognizance pending trial as needed to determine whether the applicant may be issued the permit. Requests for federal level criminal offender record information received by the Department of Justice pursuant to this chapter shall be forwarded by the department to the Federal Bureau of Investigation.

(b) The Department of Justice shall review the criminal offender record information specified in subdivision (l) of Section 11105 for entertainment firearms permit applicants.

(c) The Department of Justice shall review subsequent arrests, pursuant to Section 11105.2, to determine the continuing validity of the permit as specified in Section 29530 for all entertainment firearms permitholders.

<< CA ST § 29525 >>

29525. Any person who furnishes a fictitious name or address or knowingly furnishes any incorrect information or knowingly omits any information required to be provided on an application for an entertainment firearms permit is guilty of a misdemeanor.

<< CA ST § 29530 >>

29530. (a) An entertainment firearms permit issued by the Department of Justice shall be valid for one year from the date of issuance.

(b) If at any time during that year the permitholder becomes prohibited from possessing or receiving firearms pursuant to any federal, state, or local law, the entertainment firearms permit shall be no longer valid.

<< CA ST § 29535 >>

29535. The implementation of Sections 29500, 29505, 29515, 29520, and 29525, and of subdivision (a) of Section 29510, by the department is exempt from the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code).

pt. 6 t. 4 d. 9 pr. § 29610

DIVISION 9. SPECIAL FIREARM RULES RELATING TO PARTICULAR PERSONS

pt. 6 t. 4 d. 9 ch. 1 pr. § 29610

Chapter 1. Juvenile

pt. 6 t. 4 d. 9 ch. 1 art. 1 pr. § 29610

Article 1. Possession of Handgun

<< CA ST § 29610 >>

29610. A minor shall not possess a pistol, revolver, or other firearm capable of being concealed upon the person.

<< CA ST § 29615 >>

29615. Section 29610 shall not apply if one of the following circumstances exists:

(a) The minor is accompanied by a parent or legal guardian, and the minor is actively engaged in, or is in direct transit to or from, a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves this use of a firearm.

(b) The minor is accompanied by a responsible adult, the minor has the prior written consent of a parent or legal guardian, and the minor is actively engaged in, or is in direct transit to or from, a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(c) The minor is at least 16 years of age, the minor has the prior written consent of a parent or legal guardian and the minor is actively engaged in, or is in direct transit to or from, a lawful recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(d) The minor has the prior written consent of a parent or legal guardian, the minor is on lands owned or lawfully possessed by the parent or legal guardian, and the minor is actively engaged in, or is in direct transit to or from, a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

pt. 6 t. 4 d. 9 ch. 1 art. 2 pr. § 29650

Article 2. Possession of Live Ammunition

<< CA ST § 29650 >>

29650. A minor shall not possess live ammunition.

<< CA ST § 29655 >>

29655. Section 29650 shall not apply if one of the following circumstances exists:

(a) The minor has the written consent of a parent or legal guardian to possess live ammunition.

(b) The minor is accompanied by a parent or legal guardian.

(c) The minor is actively engaged in, or is going to or from, a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, the nature of which involves the use of a firearm.

pt. 6 t. 4 d. 9 ch. 1 art. 3 pr. § 29700

Article 3. Punishment

<< CA ST § 29700 >>

29700. Every minor who violates this chapter shall be punished as follows:

(a) By imprisonment in the state prison or in a county jail if one of the following applies:

(1) The minor has been found guilty previously of violating this chapter.

(2) The minor has been found guilty previously of an offense specified in Section 29905, 32625, or 33410, or an offense specified in any provision listed in Section 16590.

(3) The minor has been found guilty of a violation of Section 29610.

(b) Violations of this chapter other than those violations specified in subdivision (a) shall be punishable as a misdemeanor.

<< CA ST § 29705 >>

29705. In a proceeding to enforce this chapter brought pursuant to Article 14 (commencing with Section 601) of Chapter 2 of Part 1 of Division 2 of the Welfare and Institutions Code, the court may require the custodial parent or legal guardian of a minor who violates this chapter to participate in classes on parenting education that meet the requirements established in Section 16507.7 of the Welfare and Institutions Code.

pt. 6 t. 4 d. 9 ch. 1 art. 4 pr. § 29750

Article 4. Legislative Intent

<< CA ST § 29750 >>

29750. In enacting the amendments to former Sections 12078 and 12101 by Section 10 of Chapter 33 of the Statutes of 1994, First Extraordinary Session, it was not the intent of the Legislature to expand or narrow the application of the then-existing statutory and judicial authority as to the rights of minors to be loaned or to possess live ammunition or a firearm for the purpose of self-defense or the defense of others.

pt. 6 t. 4 d. 9 ch. 2 pr. § 29800

Chapter 2. Person Convicted of Specified Offense, Addicted to Narcotic, or Subject to Court Order

pt. 6 t. 4 d. 9 ch. 2 art. 1 pr. § 29800

Article 1. Prohibitions on Firearm Access

<< CA ST § 29800 >>

29800. (a)(1) Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country, or of an offense enumerated in subdivision (a), (b), or (d) of Section 23515, or who is addicted to the use of any narcotic drug, and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony.

(2) Any person who has two or more convictions for violating paragraph (2) of subdivision (a) of Section 417 and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony.

(b) Notwithstanding subdivision (a), any person who has been convicted of a felony or of an offense enumerated in Section 23515, when that conviction results from certification by the juvenile court for prosecution as an adult in an adult court under Section 707 of the Welfare and Institutions Code, and who owns or has in possession or under custody or control any firearm is guilty of a felony.

(c) Subdivision (a) shall not apply to a person who has been convicted of a felony under the laws of the United States unless either of the following criteria is satisfied:

(1) Conviction of a like offense under California law can only result in imposition of felony punishment.

(2) The defendant was sentenced to a federal correctional facility for more than 30 days, or received a fine of more than one thousand dollars ($1,000), or received both punishments.

<< CA ST § 29805 >>

29805. Except as provided in Section 29855 or subdivision (a) of Section 29800, any person who has been convicted of a misdemeanor violation of Section 71, 76, 136.1, 136.5, or 140, subdivision (d) of Section 148, Section 171b, 171c, 171d, 186.28, 240, 241, 242, 243, 243.4, 244.5, 245, 245.5, 246.3, 247, 273.5, 273.6, 417, 417.6, 422, 626.9, 646.9, or 830.95, subdivision (a) of former Section 12100, as that section read at any time from when it was enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to when it was repealed by Section 18 of Chapter 23 of the Statutes of 1994, Section 17500, 17510, 25300, 25800, 30315, or 32625, subdivision (b) or (d) of Section 26100, or Section 27510, or Section 8100, 8101, or 8103 of the Welfare and Institutions Code, any firearm-related offense pursuant to Sections 871.5 and 1001.5 of the Welfare and Institutions Code,

or of the conduct punished in subdivision (c) of Section 27590, and who, within 10 years of the conviction, owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine. The court, on forms prescribed by the Department of Justice, shall notify the department of persons subject to this section. However, the prohibition in this section may be reduced, eliminated, or conditioned as provided in Section 29855 or 29860.

## << CA ST § 29810 >>

29810. (a) For any person who is subject to Section 29800 or 29805, the court shall, at the time judgment is imposed, provide on a form supplied by the Department of Justice, a notice to the defendant prohibited by this chapter from owning, purchasing, receiving, possessing, or having under custody or control, any firearm. The notice shall inform the defendant of the prohibition regarding firearms and include a form to facilitate the transfer of firearms.

(b) Failure to provide the notice described in subdivision (a) shall not be a defense to a violation of this chapter.

## << CA ST § 29815 >>

29815. (a) Any person who, as an express condition of probation, is prohibited or restricted from owning, possessing, controlling, receiving, or purchasing a firearm and who owns, purchases, receives, or has in possession or under custody or control, any firearm, but who is not subject to Section 29805 or subdivision (a) of Section 29800, is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(b) The court, on forms provided by the Department of Justice, shall notify the department of persons subject to this section. The notice shall include a copy of the order of probation and a copy of any minute order or abstract reflecting the order and conditions of probation.

## << CA ST § 29820 >>

29820. (a) This section applies to any person who satisfies both of the following requirements:

(1) The person is alleged to have committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code, an offense described in subdivision (b) of Section 1203.073, any offense enumerated in Section 29805, or any offense described in Section 25850, subdivision (a) of Section 25400, or subdivision (a) of Section 26100.

(2) The person is subsequently adjudged a ward of the juvenile court within the meaning of Section 602 of the Welfare and Institutions Code because the person committed an offense listed in subdivision (b) of Section 707 of the Welfare and Institutions Code, an offense described in subdivision (b) of Section 1203.073, any offense enumerated in Section 29805, or any offense described in Section 25850, subdivision (a) of Section 25400, or subdivision (a) of Section 26100.

(b) Any person described in subdivision (a) shall not own, or have in possession or under custody or control, any firearm until the age of 30 years.

(c) A violation of this section shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(d) The juvenile court, on forms prescribed by the Department of Justice, shall notify the department of persons subject to this section. Notwithstanding any other law, the forms required to be submitted to the department pursuant to this section may be used to determine eligibility to acquire a firearm.

<< CA ST § 29825 >>

29825. (a) Every person who purchases or receives, or attempts to purchase or receive, a firearm knowing that the person is prohibited from doing so by a temporary restraining order or injunction issued pursuant to Section 527.6 or 527.8 of the Code of Civil Procedure, a protective order as defined in Section 6218 of the Family Code, a protective order issued pursuant to Section 136.2 or 646.91 of this code, or a protective order issued pursuant to Section 15657.03 of the Welfare and Institutions Code, is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(b) Every person who owns or possesses a firearm knowing that the person is prohibited from doing so by a temporary restraining order or injunction issued pursuant to Section 527.6 or 527.8 of the Code of Civil Procedure, a protective order as defined in Section 6218 of the Family Code, a protective order issued pursuant to Section 136.2 or 646.91 of this code, or a protective order issued pursuant to Section 15657.03 of the Welfare and Institutions Code, is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(c) If probation is granted upon conviction of a violation of this section, the court shall impose probation consistent with Section 1203.097.

(d) The Judicial Council shall provide notice on all protective orders that the respondent is prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive a firearm while the protective order is in effect. The order shall also state that the firearm shall be relinquished to the local law enforcement agency for that jurisdiction or sold to a licensed gun dealer, and that proof of surrender or sale shall be filed within a specified time of receipt of the order. The order shall state the penalties for a violation of the prohibition. The order shall also state on its face the expiration date for relinquishment.

pt. 6 t. 4 d. 9 ch. 2 art. 2 pr. § 29850

Article 2. Exemption or Petition for Relief

<< CA ST § 29850 >>

29850. (a) A violation of Section 29800, 29805, 29815, or 29820 is justifiable where all of the following conditions are met:

(1) The person found the firearm or took the firearm from a person who was committing a crime against the person who found or took the firearm.

(2) The person possessed the firearm no longer than was necessary to deliver or transport the firearm to a law enforcement agency for that agency's disposition according to law.

(3) If the firearm was transported to a law enforcement agency, it was transported in accordance with subdivision (b) of Section 25570.

(4) If the firearm is being transported to a law enforcement agency, the person transporting the firearm has given prior notice to the law enforcement agency that the person is transporting the firearm to the law enforcement agency for disposition according to law.

(b) Upon the trial for violating Section 29800, 29805, 29815, or 29820, the trier of fact shall determine whether the defendant was acting within the provisions of the exemption created by this section.

(c) The defendant has the burden of proving by a preponderance of the evidence that the defendant comes within the provisions of the exemption created by this section.

<< CA ST § 29855 >>

29855. (a) Any person employed as a peace officer described in Section 830.1, 830.2, 830.31, 830.32, 830.33, or 830.5 whose employment or livelihood is dependent on the ability to legally possess a firearm, who is subject to the prohibition imposed by Section 29805 because of a conviction under Section 273.5, 273.6, or 646.9, may petition the court only once for relief from this prohibition.

(b) The petition shall be filed with the court in which the petitioner was sentenced. If possible, the matter shall be heard before the same judge who sentenced the petitioner.

(c) Upon filing the petition, the clerk of the court shall set the hearing date and shall notify the petitioner and the prosecuting attorney of the date of the hearing.

(d) Upon making each of the following findings, the court may reduce or eliminate the prohibition, impose conditions on reduction or elimination of the prohibition, or otherwise grant relief from the prohibition as the court deems appropriate:

(1) Finds by a preponderance of the evidence that the petitioner is likely to use a firearm in a safe and lawful manner.

(2) Finds that the petitioner is not within a prohibited class as specified in Section 29815, 29820, 29825, or 29900, or subdivision (a) or (b) of Section 29800, and the court is not presented with any credible evidence that the petitioner is a person described in Section 8100 or 8103 of the Welfare and Institutions Code.

(3) Finds that the petitioner does not have a previous conviction under Section 29805 no matter when the prior conviction occurred.

(e) In making its decision, the court shall consider the petitioner's continued employment, the interest of justice, any relevant evidence, and the totality of the circumstances. The court shall require, as a condition of granting relief from the prohibition under Section 29805, that the petitioner agree to participate in counseling as deemed appropriate by the court. Relief from the prohibition shall not relieve any other person or entity from any liability that might otherwise be imposed. It is the intent of the Legislature that courts exercise broad discretion in fashioning appropriate relief under this section in cases in which relief is warranted. However, nothing in this section shall be construed to require courts to grant relief to any particular petitioner. It is the intent of the Legislature to permit persons who were convicted of an offense specified in Section 273.5, 273.6, or 646.9 to seek relief from the prohibition imposed by Section 29805.

<< CA ST § 29860 >>

29860. (a) Any person who is subject to the prohibition imposed by Section 29805 because of a conviction of an offense prior to that offense being added to Section 29805 may petition the court only once for relief from this prohibition.

(b) The petition shall be filed with the court in which the petitioner was sentenced. If possible, the matter shall be heard before the same judge that sentenced the petitioner.

(c) Upon filing the petition, the clerk of the court shall set the hearing date and notify the petitioner and the prosecuting attorney of the date of the hearing.

(d) Upon making each of the following findings, the court may reduce or eliminate the prohibition, impose conditions on reduction or elimination of the prohibition, or otherwise grant relief from the prohibition as the court deems appropriate:

(1) Finds by a preponderance of the evidence that the petitioner is likely to use a firearm in a safe and lawful manner.

(2) Finds that the petitioner is not within a prohibited class as specified in Section 29815, 29820, 29825, or 29900, or subdivision (a) or (b) of Section 29800, and the court is not presented with any credible evidence that the petitioner is a person described in Section 8100 or 8103 of the Welfare and Institutions Code.

(3) Finds that the petitioner does not have a previous conviction under Section 29805, no matter when the prior conviction occurred.

(e) In making its decision, the court may consider the interest of justice, any relevant evidence, and the totality of the circumstances. It is the intent of the Legislature that courts exercise broad discretion in fashioning appropriate relief under this section in cases in which relief is warranted. However, nothing in this section shall be construed to require courts to grant relief to any particular petitioner.

<< CA ST § 29865 >>

29865. Law enforcement officials who enforce the prohibition specified in Section 29805 against a person who has been granted relief pursuant to Section 29855 or 29860 shall be immune from any liability for false arrest arising from the enforcement of Section 29805 unless the person has in possession a certified copy of the court order that granted the person relief from the prohibition. This immunity from liability shall not relieve any person or entity from any other liability that might otherwise be imposed.

pt. 6 t. 4 d. 9 ch. 2 art. 3 pr. § 29875

Article 3. Miscellaneous Provisions

<< CA ST § 29875 >>

29875. Subject to available funding, the Attorney General, working with the Judicial Council, the California Alliance Against Domestic Violence, prosecutors, and law enforcement, probation, and parole officers, shall develop a protocol for the implementation of the provisions of Section 12021, as it reads in Section 2 of Chapter 830 of the Statutes of 2002, and as later amended at any time before completion of the protocol. The protocol shall be designed to facilitate the enforcement of restrictions on firearm ownership, including provisions for giving notice to defendants who are restricted, provisions for informing those defendants of the procedures by which defendants shall dispose of firearms when required to do so, provisions explaining how defendants shall provide proof of the lawful disposition of firearms, and provisions explaining how defendants may obtain possession of seized firearms when legally permitted to do so pursuant to any provision of law. The protocol shall be completed on or before January 1, 2005.

pt. 6 t. 4 d. 9 ch. 3 pr. § 29900

Chapter 3. Person Convicted of Violent Offense

<< CA ST § 29900 >>

29900. (a)(1)Notwithstanding subdivision (a) of Section 29800, any person who has been previously convicted of any of the offenses listed in Section 29905 and who owns or has in possession or under custody or control any firearm is guilty of a felony.

(2) A dismissal of an accusatory pleading pursuant to Section 1203.4a involving an offense set forth in Section 29905 does not affect the finding of a previous conviction.

(3) If probation is granted, or if the imposition or execution of sentence is suspended, it shall be a condition of the probation or suspension that the defendant serve at least six months in a county jail.

(b)(1)Any person previously convicted of any of the offenses listed in Section 29905 which conviction results from certification by the juvenile court for prosecution as an adult in adult court under the provisions of Section 707 of the Welfare and Institutions Code, who owns or has in possession or under custody or control any firearm, is guilty of a felony.

(2) If probation is granted, or if the imposition or execution of sentence is suspended, it shall be a condition of the probation or suspension that the defendant serve at least six months in a county jail.

(c) The court shall apply the minimum sentence as specified in subdivisions (a) and (b) except in unusual cases where the interests of justice would best be served by granting probation or suspending the imposition or execution of sentence without the imprisonment required by subdivisions (a) and (b), or by granting probation or suspending the imposition or execution of sentence with conditions other than those set forth in subdivisions (a) and (b), in which case the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by the disposition.

<< CA ST § 29905 >>

29905. (a) As used in this chapter, a violent offense includes any of the following:

(1) Murder or voluntary manslaughter.

(2) Mayhem.

(3) Rape.

(4) Sodomy by force, violence, duress, menace, or threat of great bodily harm.

(5) Oral copulation by force, violence, duress, menace, or threat of great bodily harm.

(6) Lewd acts on a child under the age of 14 years.

(7) Any felony punishable by death or imprisonment in the state prison for life.

(8) Any other felony in which the defendant inflicts great bodily injury on any person, other than an accomplice, that has been charged and proven, or any felony in which the defendant uses a firearm which use has been charged and proven.

(9) Attempted murder.

(10) Assault with intent to commit rape or robbery.

(11) Assault with a deadly weapon or instrument on a peace officer.

(12) Assault by a life prisoner on a noninmate.

(13) Assault with a deadly weapon by an inmate.

(14) Arson.

(15) Exploding a destructive device or any explosive with intent to injure.

(16) Exploding a destructive device or any explosive causing great bodily injury.

(17) Exploding a destructive device or any explosive with intent to murder.

(18) Robbery.

(19) Kidnapping.

(20) Taking of a hostage by an inmate of a state prison.

(21) Attempt to commit a felony punishable by death or imprisonment in the state prison for life.

(22) Any felony in which the defendant personally used a dangerous or deadly weapon.

(23) Escape from a state prison by use of force or violence.

(24) Assault with a deadly weapon or force likely to produce great bodily injury.

(25) Any felony violation of Section 186.22.

(26) Any offense enumerated in subdivision (a), (b), or (d) of Section 23515.

(27) Carjacking.

(28) Any offense enumerated in subdivision (c) of Section 23515 if the person has two or more convictions for violating paragraph (2) of subdivision (a) of Section 417.

(b) As used in this chapter, a violent offense also includes any attempt to commit a crime listed in subdivision (a) other than an assault.

pt. 6 t. 4 d. 9 ch. 4 pr. § 30000

Chapter 4. Prohibited Armed Persons File

<< CA ST § 30000 >>

30000. (a) The Attorney General shall establish and maintain an online database to be known as the Prohibited Armed Persons File. The purpose of the file is to cross-reference persons who have ownership or possession of a firearm on or after January

1, 1991, as indicated by a record in the Consolidated Firearms Information System, and who, subsequent to the date of that ownership or possession of a firearm, fall within a class of persons who are prohibited from owning or possessing a firearm.

(b) The information contained in the Prohibited Armed Persons File shall only be available to those entities specified in, and pursuant to, subdivision (b) or (c) of Section 11105, through the California Law Enforcement Telecommunications System, for the purpose of determining if persons are armed and prohibited from possessing firearms.

<< CA ST § 30005 >>

30005. The Prohibited Armed Persons File database shall function as follows:

(a) Upon entry into the Automated Criminal History System of a disposition for a conviction of any felony, a conviction for any firearms-prohibiting charge specified in Chapter 2 (commencing with Section 29800), a conviction for an offense described in Chapter 3 (commencing with Section 29900), a firearms prohibition pursuant to Section 8100 or 8103 of the Welfare and Institutions Code, or any firearms possession prohibition identified by the federal National Instant Criminal Background Check System, the Department of Justice shall determine if the subject has an entry in the Consolidated Firearms Information System indicating possession or ownership of a firearm on or after January 1, 1991, or an assault weapon registration, or a .50 BMG rifle registration.

(b) Upon an entry into any department automated information system that is used for the identification of persons who are prohibited by state or federal law from acquiring, owning, or possessing firearms, the department shall determine if the subject has an entry in the Consolidated Firearms Information System indicating ownership or possession of a firearm on or after January 1, 1991, or an assault weapon registration, or a .50 BMG rifle registration.

(c) If the department determines that, pursuant to subdivision (a) or (b), the subject has an entry in the Consolidated Firearms Information System indicating possession or ownership of a firearm on or after January 1, 1991, or an assault weapon registration, or a .50 BMG rifle registration, the following information shall be entered into the Prohibited Armed Persons File:

(1) The subject's name.

(2) The subject's date of birth.

(3) The subject's physical description.

(4) Any other identifying information regarding the subject that is deemed necessary by the Attorney General.

(5) The basis of the firearms possession prohibition.

(6) A description of all firearms owned or possessed by the subject, as reflected by the Consolidated Firearms Information System.

<< CA ST § 30010 >>

30010. The Attorney General shall provide investigative assistance to local law enforcement agencies to better ensure the investigation of individuals who are armed and prohibited from possessing a firearm.

pt. 6 t. 4 d. 9 ch. 5 pr. § 30105

Chapter 5. Firearms Eligibility Check

pt. 6 t. 4 d. 9 ch. 5 art. 1 pr. § 30105

Article 1. Firearms Eligibility Check

<< CA ST § 30105 >>

30105. (a) An individual may request that the Department of Justice perform a firearms eligibility check for that individual. The applicant requesting the eligibility check shall provide the information required by Section 28165 to the department, in an application specified by the department.

(b) The department shall charge a fee of twenty dollars ($20) for performing the eligibility check authorized by this section, but not to exceed the actual processing costs of the department. After the department establishes fees sufficient to reimburse the department for processing costs, fees charged may increase at a rate not to exceed the legislatively approved cost-of-living adjustment for the department's budget or as otherwise increased through the Budget Act.

(c) An applicant for the eligibility check pursuant to subdivision (a) shall complete the application, have it notarized by any licensed California Notary Public, and submit it by mail to the department.

(d) Upon receipt of a notarized application and fee, the department shall do all of the following:

(1) Examine its records, and the records it is authorized to request from the State Department of Mental Health pursuant to Section 8104 of the Welfare and Institutions Code, to determine if the purchaser is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(2) Notify the applicant by mail of its determination of whether the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. The department's notification shall state either "eligible to possess firearms as of the date the check was completed" or "ineligible to possess firearms as of the date the check was completed."

(e) If the department determines that the information submitted to it in the application contains any blank spaces, or inaccurate, illegible, or incomplete information, preventing identification of the applicant, or if the required fee is not submitted, the department shall not be required to perform the firearms eligibility check.

(f) The department shall make applications to conduct a firearms eligibility check as described in this section available to licensed firearms dealers and on the department's Web site.

(g) The department shall be immune from any liability arising out of the performance of the firearms eligibility check, or any reliance upon the firearms eligibility check.

(h) No person or agency may require or request another person to obtain a firearms eligibility check or notification of a firearms eligibility check pursuant to this section. A violation of this subdivision is a misdemeanor.

(i) The department shall include on the application specified in subdivision (a) and the notification of eligibility specified in subdivision (d) the following statements:

"No person or agency may require or request another person to obtain a firearms eligibility check or notification of firearms eligibility check pursuant to Section 30105 of the Penal Code. A violation of these provisions is a misdemeanor."

"If the applicant for a firearms eligibility check purchases, transfers, or receives a firearm through a licensed dealer as required by law, a waiting period and background check are both required."

pt. 6 t. 4 d. 9 ch. 5 art. 2 pr. § 30150

Article 2. Exceptions Relating to Law Enforcement

<< CA ST § 30150 >>

30150. (a) Section 30105 does not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 30155 >>

30155. Section 30105 does not apply to the loan of a firearm if all of the following conditions are satisfied:

(a) The loan is made by an authorized law enforcement representative of a city, county, or city and county, or of the state or federal government.

(b) The loan is made to a peace officer employed by that agency and authorized to carry a firearm.

(c) The loan is made for the carrying and use of that firearm by that peace officer in the course and scope of the officer's duties.

<< CA ST § 30160 >>

30160. (a) Section 30105 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 30165 >>

30165. (a) Section 30105 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

pt. 6 t. 4 d. 10 pr. § 30210

DIVISION 10. SPECIAL RULES RELATING TO PARTICULAR TYPES OF FIREARMS OR FIREARM EQUIPMENT

pt. 6 t. 4 d. 10 ch. 1 pr. § 30210

Chapter 1. Ammunition

pt. 6 t. 4 d. 10 ch. 1 art. 1 pr. § 30210

Article 1. Flechette Dart Ammunition or Bullet Containing or Carrying an Explosive Agent

<< CA ST § 30210 >>

30210. Except as provided in Section 30215 and Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses either of the following is punishable by imprisonment in a county jail not exceeding one year or in the state prison:

(a) Any ammunition that contains or consists of any flechette dart.

(b) Any bullet containing or carrying an explosive agent.

<< CA ST § 30215 >>

30215. Section 30210 does not apply to tracer ammunition manufactured for use in a shotgun.

<< CA ST § 30290 >>

30290. Except as provided in Section 30215 and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any ammunition that contains or consists of any flechette dart, or any bullet containing or carrying an explosive agent, is a nuisance and is subject to Section 18010.

pt. 6 t. 4 d. 10 ch. 1 art. 2 pr. § 30300

Article 2. Other Restrictions Relating to Ammunition

<< CA ST § 30300 >>

30300. (a) Any person, corporation, or dealer who does any of the following shall be punished by imprisonment in a county jail for a term not to exceed six months, or by a fine not to exceed one thousand dollars ($1,000), or by both the imprisonment and fine:

(1) Sells any ammunition or reloaded ammunition to a person under 18 years of age.

(2) Sells any ammunition or reloaded ammunition designed and intended for use in a handgun to a person under 21 years of age. Where ammunition or reloaded ammunition may be used in both a rifle and a handgun, it may be sold to a person who is at least 18 years of age, but less than 21 years of age, if the vendor reasonably believes that the ammunition is being acquired for use in a rifle and not a handgun.

(3) Supplies, delivers, or gives possession of any ammunition to any minor who the person, corporation, or dealer knows, or using reasonable care should know, is prohibited from possessing that ammunition at that time pursuant to Chapter 1 (commencing with Section 29610) of Division 9 of Title 4 of Part 6.

(b) Proof that a person, corporation, or dealer, or his or her agent or employee, demanded, was shown, and acted in reasonable reliance upon, bona fide evidence of majority and identity shall be a defense to any criminal prosecution under this section.

<< CA ST § 30305 >>

30305. (a)(1) No person prohibited from owning or possessing a firearm under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, shall own, possess, or have under custody or control, any ammunition or reloaded ammunition.

(2) A violation of this subdivision is punishable by imprisonment in a county jail not to exceed one year or in the state prison, by a fine not to exceed one thousand dollars ($1,000), or by both the fine and imprisonment.

(b)(1) A person who is not prohibited by subdivision (a) from owning, possessing, or having under the person's custody or control, any ammunition or reloaded ammunition, but who is enjoined from engaging in activity pursuant to an injunction issued pursuant to Section 3479 of the Civil Code against that person as a member of a criminal street gang, as defined in Section 186.22, may not own, possess, or have under the person's custody or control, any ammunition or reloaded ammunition.

(2) A violation of this subdivision is a misdemeanor.

(c) A violation of subdivision (a) or (b) is justifiable where all of the following conditions are met:

(1) The person found the ammunition or reloaded ammunition or took the ammunition or reloaded ammunition from a person who was committing a crime against the person who found or took the ammunition or reloaded ammunition.

(2) The person possessed the ammunition or reloaded ammunition no longer than was necessary to deliver or transport the ammunition or reloaded ammunition to a law enforcement agency for that agency's disposition according to law.

(3) The person is prohibited from possessing any ammunition or reloaded ammunition solely because that person is prohibited from owning or possessing a firearm only by virtue of Chapter 2 (commencing with Section 29800) of Division 9 or ammunition or reloaded ammunition because of subdivision (b).

(d) Upon the trial for violating subdivision (a) or (b), the trier of fact shall determine whether the defendant is subject to the exemption created by subdivision (c). The defendant has the burden of proving by a preponderance of the evidence that the defendant is subject to the exemption provided by subdivision (c).

## << CA ST § 30306 >>

30306. (a) Any person, corporation, or firm who supplies, delivers, sells, or gives possession or control of, any ammunition to any person who he or she knows or using reasonable care should know is prohibited from owning, possessing, or having under custody or control, any ammunition or reloaded ammunition pursuant to subdivision (a) or (b) of Section 30305, is guilty of a misdemeanor, punishable by imprisonment in a county jail not exceeding one year, or a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(b) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by this section and another provision of law shall not be punished under more than one provision.

## << CA ST § 30310 >>

30310. (a) Unless it is with the written permission of the school district superintendent, the superintendent's designee, or equivalent school authority, no person shall carry ammunition or reloaded ammunition onto school grounds, except sworn law enforcement officers acting within the scope of their duties or persons exempted under Section 25450.

(b) This section shall not apply to any of the following:

(1) A duly appointed peace officer as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2.

(2) A full-time paid peace officer of another state or the federal government who is carrying out official duties while in California.

(3) Any person summoned by any of these officers to assist in making an arrest or preserving the peace while that person is actually engaged in assisting the officer.

(4) A member of the military forces of this state or of the United States who is engaged in the performance of that person's duties.

(5) A person holding a valid license to carry the firearm pursuant to Chapter 4 (commencing with Section 26150) of Division 5.

(6) An armored vehicle guard, who is engaged in the performance of that person's duties, as defined in subdivision (d) of Section 7582.1 of the Business and Professions Code.

(c) A violation of this section is punishable by imprisonment in a county jail for a term not to exceed six months, a fine not to exceed one thousand dollars ($1,000), or both the imprisonment and fine.

## << CA ST § 30312 >>

30312. (a) Commencing February 1, 2011, the delivery or transfer of ownership of handgun ammunition may only occur in a face-to-face transaction with the deliverer or transferor being provided bona fide evidence of identity from the purchaser or other transferee.

(b) Subdivision (a) shall not apply to or affect the sale, delivery, or transfer of handgun ammunition to any of the following:

(1) An authorized law enforcement representative of a city, county, city and county, or state or federal government, if the sale, delivery, or transfer is for exclusive use by that government agency and, prior to the sale, delivery, or transfer of the handgun

ammunition, written authorization from the head of the agency employing the purchaser or transferee is obtained, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency employing the individual.

(2) A sworn peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 who is authorized to carry a firearm in the course and scope of the officer's duties.

(3) An importer or manufacturer of handgun ammunition or firearms who is licensed to engage in business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(4) A person who is on the centralized list maintained by the Department of Justice pursuant to Article 6 (commencing with Section 28450) of Chapter 6 of Division 6 of this title.

(5) A person whose licensed premises are outside this state and who is licensed as a dealer or collector of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(6) A person who is licensed as a collector of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, whose licensed premises are within this state, and who has a current certificate of eligibility issued by the Department of Justice pursuant to Section 26710.

(7) A handgun ammunition vendor.

(8) A consultant-evaluator.

(c) A violation of this section is a misdemeanor.

## << CA ST § 30315 >>

30315. Any person, firm, or corporation who, within this state knowingly possesses any handgun ammunition designed primarily to penetrate metal or armor is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison, or in the county jail for a term not to exceed one year, or by a fine not to exceed five thousand dollars ($5,000), or by both that fine and imprisonment.

## << CA ST § 30320 >>

30320. Any person, firm, or corporation who, within this state, manufactures, imports, sells, offers to sell, or knowingly transports any handgun ammunition designed primarily to penetrate metal or armor is guilty of a felony and upon conviction thereof shall be punished by imprisonment in state prison, or by a fine not to exceed five thousand dollars ($5,000), or by both that fine and imprisonment.

## << CA ST § 30325 >>

30325. Nothing in this article shall apply to or affect the possession of handgun ammunition designed primarily to penetrate metal or armor by a person who found the ammunition, if that person is not prohibited from possessing firearms or ammunition pursuant to subdivision (a) of Section 30305, Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, and the person is transporting the ammunition to a law enforcement agency for disposition according to law.

<< CA ST § 30330 >>

30330. Nothing in this article shall apply to or affect the sale to, purchase by, possession of, or use of any ammunition by any member of the Army, Navy, Air Force, or Marine Corps of the United States, or the National Guard, while on duty and acting within the scope and course of employment, or any police agency or forensic laboratory or any person who is the holder of a valid permit issued pursuant to Article 3 (commencing with Section 18900) of Chapter 1 of Division 5 of Title 2.

<< CA ST § 30335 >>

30335. Nothing in this article shall prohibit the possession, importation, sale, attempted sale, or transport of ammunition from which the propellant has been removed and the primer has been permanently deactivated.

<< CA ST § 30340 >>

30340. Nothing in this article shall prohibit the manufacture of ammunition under contracts approved by agencies of the state or federal government.

pt. 6 t. 4 d. 10 ch. 1 art. 3 pr. § 30345

Article 3. Handgun Ammunition Vendors

<< CA ST § 30345 >>

30345. A vendor shall comply with all of the conditions, requirements, and prohibitions stated in this article.

<< CA ST § 30347 >>

30347. A vendor shall not permit any employee who the vendor knows or reasonably should know is a person described in Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title or Section 8100 or 8103 of the Welfare and Institutions Code to handle, sell, or deliver handgun ammunition in the course and scope of employment.

<< CA ST § 30350 >>

30350. A vendor shall not sell or otherwise transfer ownership of, offer for sale or otherwise offer to transfer ownership of, or display for sale or display for transfer of ownership of any handgun ammunition in a manner that allows that ammunition to be accessible to a purchaser or transferee without the assistance of the vendor or an employee of the vendor.

<< CA ST § 30352 >>

30352. (a) Commencing February 1, 2011, a vendor shall not sell or otherwise transfer ownership of any handgun ammunition without, at the time of delivery, legibly recording the following information:

(1) The date of the sale or other transaction.

(2) The purchaser's or transferee's driver's license or other identification number and the state in which it was issued.

(3) The brand, type, and amount of ammunition sold or otherwise transferred.

(4) The purchaser's or transferee's signature.

(5) The name of the salesperson who processed the sale or other transaction.

(6) The right thumbprint of the purchaser or transferee on the above form.

(7) The purchaser's or transferee's full residential address and telephone number.

(8) The purchaser's or transferee's date of birth.

(b) Subdivision (a) shall not apply to or affect sales or other transfers of ownership of handgun ammunition by handgun ammunition vendors to any of the following, if properly identified:

(1) A person licensed pursuant to Sections 26700 to 26915, inclusive.

(2) A handgun ammunition vendor.

(3) A person who is on the centralized list maintained by the department pursuant to Article 6 (commencing with Section 28450) of Chapter 6 of Division 6 of this title.

(4) A target facility that holds a business or regulatory license.

(5) A gunsmith.

(6) A wholesaler.

(7) A manufacturer or importer of firearms licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code, and the regulations issued pursuant thereto.

(8) An authorized law enforcement representative of a city, county, city and county, or state or federal government, if the sale or other transfer of ownership is for exclusive use by that government agency, and, prior to the sale, delivery, or transfer of the handgun ammunition, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made. Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser, transferee, or person otherwise acquiring ownership is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that individual is employed.

<< CA ST § 30355 >>

30355. Commencing February 1, 2011, the records required by this article shall be maintained on the premises of the vendor for a period of not less than five years from the date of the recorded transfer.

<< CA ST § 30357 >>

30357. (a) Commencing February 1, 2011, the records referred to in Section 30352 shall be subject to inspection at any time during normal business hours by any peace officer employed by a sheriff, city police department, or district attorney as provided

in subdivision (a) of Section 830.1, or employed by the department as provided in subdivision (b) of Section 830.1, provided that the officer is conducting an investigation where access to those records is or may be relevant, is seeking information about persons prohibited from owning a firearm or ammunition, or is engaged in ensuring compliance with the Dangerous Weapons Control Law, as defined in Section 23500, or any other laws pertaining to firearms or ammunition.

(b) The records referred to in Section 30352 shall also be subject to inspection at any time during normal business hours by any other employee of the department, provided that the employee is conducting an investigation where access to those records is or may be relevant, is seeking information about persons prohibited from owning a firearm or ammunition, or is engaged in ensuring compliance with the Dangerous Weapons Control Law, as defined in Section 23500, or any other laws pertaining to firearms or ammunition.

<< CA ST § 30360 >>

30360. Commencing February 1, 2011, a vendor shall not knowingly make a false entry in, fail to make a required entry in, fail to obtain the required thumbprint, or otherwise fail to maintain in the required manner, records prepared in accordance with Section 30352. If the right thumbprint is not available, then the vendor shall have the purchaser or transferee use the left thumb, or any available finger, and shall so indicate on the form.

<< CA ST § 30362 >>

30362. (a) Commencing February 1, 2011, no vendor shall, during any inspection conducted pursuant to this article, refuse to permit a person authorized under Section 30357 to examine any record prepared in accordance with this article.

(b) Commencing February 1, 2011, no vendor shall refuse to permit the use of any record or information by a person authorized under Section 30357.

<< CA ST § 30365 >>

30365. (a) A violation of Section 30352, 30355, 30360, or 30362 is a misdemeanor.

(b) The provisions of this section are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

pt. 6 t. 4 d. 10 ch. 2 pr. § 30500

Chapter 2. Assault Weapons and .50 BMG Rifles

pt. 6 t. 4 d. 10 ch. 2 art. 1 pr. § 30500

Article 1. General Provisions

<< CA ST § 30500 >>

30500. This chapter shall be known as the Roberti–Roos Assault Weapons Control Act of 1989 and the .50 Caliber BMG Regulation Act of 2004.

<< CA ST § 30505 >>

30505. (a) The Legislature hereby finds and declares that the proliferation and use of assault weapons poses a threat to the health, safety, and security of all citizens of this state. The Legislature has restricted the assault weapons specified in Section 30510 based upon finding that each firearm has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings. It is the intent of the Legislature in enacting this chapter to place restrictions on the use of assault weapons and to establish a registration and permit procedure for their lawful sale and possession. It is not, however, the intent of the Legislature by this chapter to place restrictions on the use of those weapons which are primarily designed and intended for hunting, target practice, or other legitimate sports or recreational activities.

(b) The Legislature hereby finds and declares that the proliferation and use of .50 BMG rifles poses a clear and present terrorist threat to the health, safety, and security of all residents of, and visitors to, this state, based upon findings that those firearms have such a high capacity for long distance and highly destructive firepower that they pose an unacceptable risk to the death and serious injury of human beings, destruction or serious damage of vital public and private buildings, civilian, police and military vehicles, power generation and transmission facilities, petrochemical production and storage facilities, and transportation infrastructure. It is the intent of the Legislature in enacting this chapter to place restrictions on the use of these rifles and to establish a registration and permit procedure for their lawful sale and possession.

<< CA ST § 30510 >>

30510. As used in this chapter and in Sections 16780, 17000, and 27555, "assault weapon" means the following designated semiautomatic firearms:

(a) All of the following specified rifles:

(1) All AK series including, but not limited to, the models identified as follows:

(A) Made in China AK, AKM, AKS, AK47, AK47S, 56, 56S, 84S, and 86S.

(B) Norinco 56, 56S, 84S, and 86S.

(C) Poly Technologies AKS and AK47.

(D) MAADI AK47 and ARM.

(2) UZI and Galil.

(3) Beretta AR–70.

(4) CETME Sporter.

(5) Colt AR–15 series.

(6) Daewoo K–1, K–2, Max 1, Max 2, AR 100, and AR 110C.

(7) Fabrique Nationale FAL, LAR, FNC, 308 Match, and Sporter.

(8) MAS 223.

(9) HK–91, HK–93, HK–94, and HK–PSG–1.

(10) The following MAC types:

(A) RPB Industries Inc. sM10 and sM11.

(B) SWD Incorporated M11.

(11) SKS with detachable magazine.

(12) SIG AMT, PE–57, SG 550, and SG 551.

(13) Springfield Armory BM59 and SAR–48.

(14) Sterling MK–6.

(15) Steyer AUG.

(16) Valmet M62S, M71S, and M78S.

(17) Armalite AR–180.

(18) Bushmaster Assault Rifle.

(19) Calico M–900.

(20) J&R ENG M–68.

(21) Weaver Arms Nighthawk.

(b) All of the following specified pistols:

(1) UZI.

(2) Encom MP–9 and MP–45.

(3) The following MAC types:

(A) RPB Industries Inc. sM10 and sM11.

(B) SWD Incorporated M–11.

(C) Advance Armament Inc. M–11.

(D) Military Armament Corp. Ingram M–11.

(4) Intratec TEC–9.

(5) Sites Spectre.

(6) Sterling MK–7.

(7) Calico M–950.

(8) Bushmaster Pistol.

(c) All of the following specified shotguns:

(1) Franchi SPAS 12 and LAW 12.

(2) Striker 12.

(3) The Streetsweeper type S/S Inc. SS/12.

(d) Any firearm declared to be an assault weapon by the court pursuant to former Section 12276.5, as it read in Section 3 of Chapter 19 of the Statutes of 1989, Section 1 of Chapter 874 of the Statutes of 1990, or Section 3 of Chapter 954 of the Statutes of 1991, which is specified as an assault weapon in a list promulgated pursuant to former Section 12276.5, as it read in Section 3 of Chapter 954 of the Statutes of 1991.

(e) This section is declaratory of existing law and a clarification of the law and the Legislature's intent which bans the weapons enumerated in this section, the weapons included in the list promulgated by the Attorney General pursuant to former Section 12276.5, as it read in Section 3 of Chapter 954 of the Statutes of 1991, and any other models that are only variations of those weapons with minor differences, regardless of the manufacturer. The Legislature has defined assault weapons as the types, series, and models listed in this section because it was the most effective way to identify and restrict a specific class of semiautomatic weapons.

(f) As used in this section, "series" includes all other models that are only variations, with minor differences, of those models listed in subdivision (a), regardless of the manufacturer.

<< CA ST § 30515 >>

30515. (a) Notwithstanding Section 30510, "assault weapon" also means any of the following:

(1) A semiautomatic, centerfire rifle that has the capacity to accept a detachable magazine and any one of the following:

(A) A pistol grip that protrudes conspicuously beneath the action of the weapon.

(B) A thumbhole stock.

(C) A folding or telescoping stock.

(D) A grenade launcher or flare launcher.

(E) A flash suppressor.

(F) A forward pistol grip.

(2) A semiautomatic, centerfire rifle that has a fixed magazine with the capacity to accept more than 10 rounds.

(3) A semiautomatic, centerfire rifle that has an overall length of less than 30 inches.

(4) A semiautomatic pistol that has the capacity to accept a detachable magazine and any one of the following:

(A) A threaded barrel, capable of accepting a flash suppressor, forward handgrip, or silencer.

(B) A second handgrip.

(C) A shroud that is attached to, or partially or completely encircles, the barrel that allows the bearer to fire the weapon without burning the bearer's hand, except a slide that encloses the barrel.

(D) The capacity to accept a detachable magazine at some location outside of the pistol grip.

(5) A semiautomatic pistol with a fixed magazine that has the capacity to accept more than 10 rounds.

(6) A semiautomatic shotgun that has both of the following:

(A) A folding or telescoping stock.

(B) A pistol grip that protrudes conspicuously beneath the action of the weapon, thumbhole stock, or vertical handgrip.

(7) A semiautomatic shotgun that has the ability to accept a detachable magazine.

(8) Any shotgun with a revolving cylinder.

(b) The Legislature finds a significant public purpose in exempting from the definition of "assault weapon" pistols that are designed expressly for use in Olympic target shooting events. Therefore, those pistols that are sanctioned by the International Olympic Committee and by USA Shooting, the national governing body for international shooting competition in the United States, and that were used for Olympic target shooting purposes as of January 1, 2001, and that would otherwise fall within the definition of "assault weapon" pursuant to this section are exempt, as provided in subdivision (c).

(c) "Assault weapon" does not include either of the following:

(1) Any antique firearm.

(2) Any of the following pistols, because they are consistent with the significant public purpose expressed in subdivision (b):

| MANUFACTURER | MODEL | CALIBER |
| --- | --- | --- |
| BENELLI | MP90 | .22LR |
| BENELLI | MP90 | .32 S&W LONG |
| BENELLI | MP95 | .22LR |
| BENELLI | MP95 | .32 S&W LONG |

| HAMMERLI | 280 | .22LR |
| HAMMERLI | 280 | .32 S&W LONG |
| HAMMERLI | SP20 | .22LR |
| HAMMERLI | SP20 | .32 S&W LONG |
| PARDINI | GPO | .22 SHORT |
| PARDINI | GP–SCHUMANN | .22 SHORT |
| PARDINI | HP | .32 S&W LONG |
| PARDINI | MP | .32 S&W LONG |
| PARDINI | SP | .22LR |
| PARDINI | SPE | .22LR |
| WALTHER | GSP | .22LR |
| WALTHER | GSP | .32 S&W LONG |
| WALTHER | OSP | .22 SHORT |
| WALTHER | OSP–2000 | .22 SHORT |

(3) The Department of Justice shall create a program that is consistent with the purposes stated in subdivision (b) to exempt new models of competitive pistols that would otherwise fall within the definition of "assault weapon" pursuant to this section from being classified as an assault weapon. The exempt competitive pistols may be based on recommendations by USA Shooting consistent with the regulations contained in the USA Shooting Official Rules or may be based on the recommendation or rules of any other organization that the department deems relevant.

<< CA ST § 30520 >>

30520. (a) The Attorney General shall prepare a description for identification purposes, including a picture or diagram, of each assault weapon listed in Section 30510, and any firearm declared to be an assault weapon pursuant to former Section 12276.5, as it read in Section 3 of Chapter 19 of the Statutes of 1989, Section 1 of Chapter 874 of the Statutes of 1990, or Section 3 of Chapter 954 of the Statutes of 1991, and shall distribute the description to all law enforcement agencies responsible for enforcement of this chapter. Those law enforcement agencies shall make the description available to all agency personnel.

(b)(1) Until January 1, 2007, the Attorney General shall promulgate a list that specifies all firearms designated as assault weapons in former Section 12276, as it read in Section 2 of Chapter 954 of the Statutes of 1991, Section 134 of Chapter 427 of the Statutes of 1992, or Section 19 of Chapter 606 of the Statutes of 1993, or declared to be assault weapons pursuant to former Section 12276.5, as it read in Section 3 of Chapter 19 of the Statutes of 1989, Section 1 of Chapter 874 of the Statutes of 1990, or Section 3 of Chapter 954 of the Statutes of 1991. The Attorney General shall file that list with the Secretary of State for publication in the California Code of Regulations. Any declaration that a specified firearm is an assault weapon shall be implemented by the Attorney General who, within 90 days, shall promulgate an amended list which shall include the specified firearm declared to be an assault weapon. The Attorney General shall file the amended list with the Secretary of State for publication in the California Code of Regulations. Any firearm declared to be an assault weapon prior to January 1, 2007, shall remain on the list filed with the Secretary of State.

(2) Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code, pertaining to the adoption of rules and regulations, shall not apply to any list of assault weapons promulgated pursuant to this section.

(c) The Attorney General shall adopt those rules and regulations that may be necessary or proper to carry out the purposes and intent of this chapter.

<< CA ST § 30525 >>

30525. As used in this part, ".50 BMG cartridge" means a cartridge that is designed and intended to be fired from a center fire rifle and that meets all of the following criteria:

(a) It has an overall length of 5.54 inches from the base to the tip of the bullet.

(b) The bullet diameter for the cartridge is from .510 to, and including, .511 inch.

(c) The case base diameter for the cartridge is from .800 inch to, and including, .804 inch.

(d) The cartridge case length is 3.91 inches.

<< CA ST § 30530 >>

30530. (a) As used in this part, ".50 BMG rifle" means a center fire rifle that can fire a .50 BMG cartridge and is not already an assault weapon or a machinegun.

(b) A ".50 BMG rifle" does not include any antique firearm, nor any curio or relic as defined in Section 478.11 of Title 27 of the Code of Federal Regulations.

pt. 6 t. 4 d. 10 ch. 2 art. 2 pr. § 30600

Article 2. Unlawful Acts Relating to Assault Weapons and .50 BMG Rifles

<< CA ST § 30600 >>

30600. (a) Any person who, within this state, manufactures or causes to be manufactured, distributes, transports, or imports into the state, keeps for sale, or offers or exposes for sale, or who gives or lends any assault weapon or any .50 BMG rifle, except as provided by this chapter, is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for four, six, or eight years.

(b) In addition and consecutive to the punishment imposed under subdivision (a), any person who transfers, lends, sells, or gives any assault weapon or any .50 BMG rifle to a minor in violation of subdivision (a) shall receive an enhancement of one year.

(c) Except in the case of a first violation involving not more than two firearms as provided in Sections 30605 and 30610, for purposes of this article, if more than one assault weapon or .50 BMG rifle is involved in any violation of this article, there shall be a distinct and separate offense for each.

<< CA ST § 30605 >>

30605. (a) Any person who, within this state, possesses any assault weapon, except as provided in this chapter, shall be punished by imprisonment in a county jail for a period not exceeding one year, or by imprisonment in the state prison.

(b) Notwithstanding subdivision (a), a first violation of these provisions is punishable by a fine not exceeding five hundred dollars ($500) if the person was found in possession of no more than two firearms in compliance with Section 30945 and the person meets all of the following conditions:

(1) The person proves that he or she lawfully possessed the assault weapon prior to the date it was defined as an assault weapon.

(2) The person has not previously been convicted of a violation of this article.

(3) The person was found to be in possession of the assault weapon within one year following the end of the one-year registration period established pursuant to Section 30900.

(4) The person relinquished the firearm pursuant to Section 31100, in which case the assault weapon shall be destroyed pursuant to Sections 18000 and 18005.

<< CA ST § 30610 >>

30610. (a) Any person who, within this state, possesses any .50 BMG rifle, except as provided in this chapter, shall be punished by a fine of one thousand dollars ($1,000), imprisonment in a county jail for a period not to exceed one year, or by both that fine and imprisonment.

(b) Notwithstanding subdivision (a), a first violation of these provisions is punishable by a fine not exceeding five hundred dollars ($500) if the person was found in possession of no more than two firearms in compliance with Section 30905 and the person satisfies all of the following conditions:

(1) The person proves that he or she lawfully possessed the .50 BMG rifle prior to January 1, 2005.

(2) The person has not previously been convicted of a violation of this article.

(3) The person was found to be in possession of the .50 BMG rifle within one year following the end of the .50 BMG rifle registration period established pursuant to Section 30905.

(c) Firearms seized pursuant to this section from persons who meet all of the conditions in paragraphs (1), (2), and (3) of subdivision (b) shall be returned unless the court finds in the interest of public safety, after notice and hearing, that the .50 BMG rifle should be destroyed pursuant to Sections 18000 and 18005. Firearms seized from persons who do not meet the conditions set forth in paragraphs (1), (2), and (3) of subdivision (b) shall be destroyed pursuant to Sections 18000 and 18005.

<< CA ST § 30615 >>

30615. Notwithstanding Section 654 or any other provision of law, any person who commits another crime while violating this article may receive an additional, consecutive punishment of one year for violating this article, in addition and consecutive to the punishment, including enhancements, which is prescribed for the other crime.

<< CA ST § 30620 >>

30620. As used in this chapter, the date a firearm is an assault weapon is the earliest of the following:

(a) The effective date of an amendment to Section 30510 or to former Section 12276 that adds the designation of the specified firearm.

(b) The effective date of the list promulgated pursuant to former Section 12276.5, as that section read in Section 3 of Chapter 954 of the Statutes of 1991, which adds or changes the designation of the specified firearm.

(c) January 1, 2000, which was the operative date of former Section 12276.1, as enacted by Section 7 of Chapter 129 of the Statutes of 1999.

<< CA ST § 30625 >>

30625. Sections 30600, 30605, and 30610 shall not apply to the sale to, purchase by, importation of, or possession of assault weapons or a .50 BMG rifle by the Department of Justice, police departments, sheriffs' offices, marshals' offices, the Department of Corrections and Rehabilitation, the Department of the California Highway Patrol, district attorneys' offices, the Department of Fish and Game, the Department of Parks and Recreation, or the military or naval forces of this state or of the United States, or any federal law enforcement agency for use in the discharge of their official duties.

<< CA ST § 30630 >>

30630. (a) Sections 30605 and 30610 shall not prohibit the possession or use of assault weapons or a .50 BMG rifle by sworn peace officer members of those agencies specified in Section 30625 for law enforcement purposes, whether on or off duty.

(b)(1) Sections 30600, 30605, and 30610 shall not prohibit the sale, delivery, or transfer of an assault weapon or a .50 BMG rifle to, or the possession of an assault weapon or a .50 BMG rifle by, a sworn peace officer member of an agency specified in Section 30625 if the peace officer is authorized by the officer's employer to possess or receive the assault weapon or the .50 BMG rifle. Required authorization is defined as verifiable written certification from the head of the agency, identifying the recipient or possessor of the assault weapon as a peace officer and authorizing that person to receive or possess the specific assault weapon.

(2) For this exemption to apply, in the case of a peace officer who possesses or receives the assault weapon prior to January 1, 2002, the officer shall register the assault weapon on or before April 1, 2002, pursuant to former Section 12285, as it read at any time from when it was enacted by Section 3 of Chapter 19 of the Statutes of 1989, to and including when it was amended by Section 9 of Chapter 129 of the Statutes of 1999. In the case of a peace officer who possesses or receives the assault weapon on or after January 1, 2002, the officer shall, not later than 90 days after possession or receipt, register the assault weapon pursuant to Article 5 (commencing with Section 30900), or pursuant to former Section 12285, as it read at any time from when it was amended by Section 9 of Chapter 129 of the Statutes of 1999 to when it was repealed by the Deadly Weapons Recodification Act of 2010. In the case of a peace officer who possesses or receives a .50 BMG rifle on or before January 1, 2005, the officer shall register the .50 BMG rifle on or before April 30, 2006. In the case of a peace officer who possesses or receives a .50 BMG rifle after January 1, 2005, the officer shall register the .50 BMG rifle not later than one year after possession or receipt.

(3) With the registration, the peace officer shall include a copy of the authorization required pursuant to this subdivision.

(c) Nothing in this article shall be construed to limit or prohibit the sale, delivery, or transfer of an assault weapon or a .50 BMG rifle to, or the possession of an assault weapon or a .50 BMG rifle by, a member of a federal law enforcement agency provided that person is authorized by the employing agency to possess the assault weapon or .50 BMG rifle.

<< CA ST § 30635 >>

30635. Section 30605 shall not apply to the possession of an assault weapon during the 90–day period immediately after the date it was specified as an assault weapon pursuant to former Section 12276.5, as that section read in Section 3 of Chapter 19 of the Statutes of 1989, Section 1 of Chapter 874 of the Statutes of 1990, or Section 3 of Chapter 954 of the Statutes of 1991, or during the one-year period after the date it was defined as an assault weapon pursuant to former Section 12276.1, as that section read at any time from when it was enacted by Section 7 of Chapter 129 of the Statutes of 1999 to when it was repealed by the Deadly Weapons Recodification Act of 2010, if all of the following are applicable:

(a) At the time of the possession in question, the person was eligible under the then-applicable version of former Chapter 2.3 (commencing with Section 12275) of Title 2 of Part 4 to register the particular assault weapon.

(b) The person lawfully possessed the particular assault weapon prior to the date it was specified as an assault weapon pursuant to former Section 12276.5, or prior to the date it was defined as an assault weapon pursuant to former Section 12276.1.

(c) At the time of the possession in question, the person was otherwise in compliance with the then-applicable version of former Chapter 2.3 (commencing with Section 12275) of Title 2 of Part 4.

<< CA ST § 30640 >>

30640. Section 30610 shall not apply to the possession of a .50 BMG rifle, which was not defined or specified as an assault weapon pursuant to the then-applicable version of the former Chapter 2.3 (commencing with Section 12275) of Title 2 of Part 4 that was added to this code by Section 3 of Chapter 19 of the Statutes of 1989, by any person prior to May 1, 2006, if all of the following are applicable:

(a) At the time of the possession in question, the person was eligible under the then-applicable version of former Chapter 2.3 (commencing with Section 12275) of Title 2 of Part 4 to register that .50 BMG rifle.

(b) The person lawfully possessed the .50 BMG rifle prior to January 1, 2005.

(c) At the time of the possession in question, the person was otherwise in compliance with the then-applicable version of former Chapter 2.3 (commencing with Section 12275) of Title 2 of Part 4.

<< CA ST § 30645 >>

30645. Sections 30600, 30605, and 30610 shall not apply to the manufacture by any person who is issued a permit pursuant to Section 31005 of assault weapons or .50 BMG rifles for sale to the following:

(a) Exempt entities listed in Section 30625.

(b) Entities and persons who have been issued permits pursuant to Section 31000 or 31005.

(c) Federal military and law enforcement agencies.

(d) Law enforcement and military agencies of other states.

(e) Foreign governments and agencies approved by the United States State Department.

(f) Entities outside the state who have, in effect, a federal firearms dealer's license solely for the purpose of distribution to an entity listed in subdivisions (c) to (e), inclusive.

<< CA ST § 30650 >>

30650. Sections 30600, 30605, and 30610 shall not apply to the sale of assault weapons or .50 BMG rifles by persons who are issued permits pursuant to Section 31005 to any of the following:

(a) Exempt entities listed in Section 30625.

(b) Entities and persons who have been issued permits pursuant to Section 31000 or 31005.

(c) Federal military and law enforcement agencies.

(d) Law enforcement and military agencies of other states.

(e) Foreign governments and agencies approved by the United States State Department.

(f) Officers described in Section 30630 who are authorized to possess assault weapons or .50 BMG rifles pursuant to Section 30630.

<< CA ST § 30655 >>

30655. (a) Section 30600 shall not apply to a person who is the executor or administrator of an estate that includes an assault weapon or a .50 BMG rifle registered under Article 5 (commencing with Section 30900) or that was possessed pursuant to subdivision (a) of Section 30630 that is disposed of as authorized by the probate court, if the disposition is otherwise permitted by this chapter.

(b) Sections 30605 and 30610 shall not apply to a person who is the executor or administrator of an estate that includes an assault weapon or a .50 BMG rifle registered under Article 5 (commencing with Section 30900) or that was possessed pursuant to subdivision (a) of Section 30630, if the assault weapon or .50 BMG rifle is possessed at a place set forth in subdivision (a) of Section 30945 or as authorized by the probate court.

<< CA ST § 30660 >>

30660. (a) Section 30600 shall not apply to a person who lawfully possesses and has registered an assault weapon or .50 BMG rifle pursuant to this chapter who lends that assault weapon or .50 BMG rifle to another person, if all the following requirements are satisfied:

(1) The person to whom the assault weapon or .50 BMG rifle is lent is 18 years of age or over and is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(2) The person to whom the assault weapon or .50 BMG rifle is lent remains in the presence of the registered possessor of the assault weapon or .50 BMG rifle.

(3) The assault weapon or .50 BMG rifle is possessed at any of the following locations:

(A) While on a target range that holds a regulatory or business license for the purpose of practicing shooting at that target range.

(B) While on the premises of a target range of a public or private club or organization organized for the purpose of practicing shooting at targets.

(C) While attending any exhibition, display, or educational project that is about firearms and that is sponsored by, conducted under the auspices of, or approved by a law enforcement agency or a nationally or state recognized entity that fosters proficiency in, or promotes education about, firearms.

(b) Section 30600 shall not apply to the return of an assault weapon or .50 BMG rifle to the registered possessor, or the lawful possessor, which is lent by that registered or lawful possessor pursuant to subdivision (a).

(c) Sections 30605 and 30610 shall not apply to the possession of an assault weapon or .50 BMG rifle by a person to whom an assault weapon or .50 BMG rifle is lent pursuant to subdivision (a).

<< CA ST § 30665 >>

30665. Sections 30600, 30605, and 30610 shall not apply to the possession and importation of an assault weapon or a .50 BMG rifle into this state by a nonresident if all of the following conditions are met:

(a) The person is attending or going directly to or coming directly from an organized competitive match or league competition that involves the use of an assault weapon or a .50 BMG rifle.

(b) The competition or match is conducted on the premises of one of the following:

(1) A target range that holds a regulatory or business license for the purpose of practicing shooting at that target range.

(2) A target range of a public or private club or organization that is organized for the purpose of practicing shooting at targets.

(c) The match or competition is sponsored by, conducted under the auspices of, or approved by, a law enforcement agency or a nationally or state recognized entity that fosters proficiency in, or promotes education about, firearms.

(d) The assault weapon or .50 BMG rifle is transported in accordance with Section 25610 or Article 3 (commencing with Section 25505) of Chapter 2 of Division 5.

(e) The person is 18 years of age or over and is not in a class of persons prohibited from possessing firearms by virtue of Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this code or Section 8100 or 8103 of the Welfare and Institutions Code.

<< CA ST § 30670 >>

30670. (a) Section 30600 shall not apply to the importation into this state of an assault weapon or a .50 BMG rifle by the registered owner of that assault weapon or a .50 BMG rifle if it is in accordance with the provisions of Section 30945.

(b) Section 30600 shall not apply during the first 180 days of the 2005 calendar year to the importation into this state of a .50 BMG rifle by a person who lawfully possessed that .50 BMG rifle in this state prior to January 1, 2005.

<< CA ST § 30675 >>

30675. (a) Sections 30605 and 30610 shall not apply to any of the following persons:

(1) A person acting in accordance with Section 31000 or 31005.

(2) A person who has a permit to possess an assault weapon or a .50 BMG rifle issued pursuant to Section 31000 or 31005 when that person is acting in accordance with Section 31000 or 31005 or Article 5 (commencing with Section 30900).

(b) Sections 30600, 30605, and 30610 shall not apply to any of the following persons:

(1) A person acting in accordance with Article 5 (commencing with Section 30900).

(2) A person acting in accordance with Section 31000, 31005, 31050, or 31055.

(c) Sections 30605 and 30610 shall not apply to the registered owner of an assault weapon or a .50 BMG rifle possessing that firearm in accordance with Section 30945.

pt. 6 t. 4 d. 10 ch. 2 art. 3 pr. § 30710

Article 3. SKS Rifles

<< CA ST § 30710 >>

30710. Notwithstanding paragraph (11) of subdivision (a) of Section 30510, an "SKS rifle" under this article means all SKS rifles commonly referred to as "SKS Sporter" versions, manufactured to accept a detachable AK–47 magazine and imported into this state and sold by a licensed gun dealer, or otherwise lawfully possessed in this state by a resident of this state who is not a licensed gun dealer, between January 1, 1992, and December 19, 1997.

<< CA ST § 30715 >>

30715. (a)(1) Any person who, or firm, company, or corporation that operated a retail or other commercial firm, company, or corporation, and manufactured, distributed, transported, imported, possessed, possessed for sale, offered for sale, or transferred, for commercial purpose, an SKS rifle in California between January 1, 1992, and December 19, 1997, shall be immune from criminal prosecution under Article 2 (commencing with Section 30600) or former Section 12280.

(2) The immunity provided in this subdivision shall apply retroactively to any person who, or firm, company, or corporation that, is or was charged by complaint or indictment with a violation of former Section 12280 for conduct related to an SKS rifle, whether or not the case of that person, firm, company, or corporation is final.

(b)(1) Any person who possessed, gave, loaned, or transferred an SKS rifle in California between January 1, 1992, and December 19, 1997, shall be immune from criminal prosecution under Article 2 (commencing with Section 30600) or former Section 12280.

(2) The immunity provided in this subdivision shall apply retroactively to any person who was charged by complaint or indictment with a violation of former Section 12280 for conduct related to an SKS rifle, whether or not the case of that person is final.

(c) Any SKS rifle in the possession of any person who, or firm, company, or corporation that, is described in subdivision (a) or (b), shall not be subject to seizure by law enforcement for violation of Article 2 (commencing with Section 30600) or former Section 12280 prior to January 1, 2000.

(d) Any person, firm, company, or corporation, convicted under former Section 12280 for conduct relating to an SKS rifle, shall be permitted to withdraw a plea of guilty or nolo contendere, or to reopen the case and assert the immunities provided in this article, if the court determines that the allowance of the immunity is in the interests of justice. The court shall interpret this article liberally to the benefit of the defendant.

(e) For purposes of this section, "former Section 12280" refers to former Section 12280, as added by Section 3 of Chapter 19 of the Statutes of 1989 or as subsequently amended.

<< CA ST § 30720 >>

30720. (a) Any person, firm, company, or corporation that is in possession of an SKS rifle shall do one of the following on or before January 1, 2000:

(1) Relinquish the SKS rifle to the Department of Justice pursuant to subdivision (h) of former Section 12281.

(2) Relinquish the SKS rifle to a law enforcement agency pursuant to former Section 12288, as added by Section 3 of Chapter 19 of the Statutes of 1989.

(3) Dispose of the SKS rifle as permitted by former Section 12285, as it read in Section 20 of Chapter 23 of the Statutes of 1994.

(b) Any person who has obtained title to an SKS rifle by bequest or intestate succession shall be required to comply with paragraph (1) or (2) of subdivision (a) unless that person otherwise complies with paragraph (1) of subdivision (b) of former Section 12285, as it read in Section 20 of Chapter 23 of the Statutes of 1994, or as subsequently amended.

(c) Any SKS rifle relinquished to the department pursuant to this section shall be in a manner prescribed by the department.

<< CA ST § 30725 >>

30725. (a) Any person who complies with Section 30720 shall be exempt from the prohibitions set forth in Section 30600 or 30605 for those acts by that person associated with complying with the requirements of Section 30720.

(b) Failure to comply with Section 30720 is a public offense punishable by imprisonment in the state prison, or in a county jail, not exceeding one year.

<< CA ST § 30730 >>

30730. (a)(1) The department shall purchase any SKS rifle relinquished pursuant to Section 30720 from funds appropriated for this purpose by the act amending former Section 12281 in the 1997–98 Regular Session of the Legislature or by subsequent budget acts or other legislation.

(2) The department shall adopt regulations for this purchase program that include, but are not limited to, the manner of delivery, the reimbursement to be paid, and the manner in which persons shall be informed of the state purchase program.

(3) Any person who relinquished possession of an SKS rifle to a law enforcement agency pursuant to any version of former Section 12288 prior to the effective date of the purchase program set forth in paragraph (1) shall be eligible to be reimbursed from the purchase program. The procedures for reimbursement pursuant to this paragraph shall be part of the regulations adopted by the department pursuant to paragraph (2).

(b) In addition to the regulations required pursuant to subdivision (a), emergency regulations for the purchase program described in subdivision (a) shall be adopted pursuant to Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code.

<< CA ST § 30735 >>

30735. (a) The Department of Justice shall notify all district attorneys on or before January 31, 1999, of the provisions of former Section 12281.

(b) The department shall identify all criminal prosecutions in the state for conduct related to SKS rifles on or before April 1, 1999. In all cases so identified by the Attorney General, the district attorneys shall inform defense counsel, or the defendant if the defendant is in propria persona, in writing, of the provisions of former Section 12281 on or before May 1, 1999.

(c) Commencing no later than January 1, 1999, the department shall conduct a public education and notification program as described in Section 31115 or in former Section 12289, as added by Section 6 of Chapter 954 of the Statutes of 1991 or as subsequently amended.

pt. 6 t. 4 d. 10 ch. 2 art. 4 pr. § 30800

Article 4. Assault Weapon or .50 BMG Rifle Constituting Nuisance

<< CA ST § 30800 >>

30800. (a)(1) Except as provided in Article 2 (commencing with Section 30600), possession of any assault weapon or of any .50 BMG rifle in violation of this chapter is a public nuisance, solely for purposes of this section and subdivision (c) of Section 18005.

(2) The Attorney General, any district attorney, or any city attorney, may, in lieu of criminal prosecution, bring a civil action or reach a civil compromise in any superior court to enjoin the possession of the assault weapon or .50 BMG rifle that is a public nuisance.

(b) Upon motion of the Attorney General, district attorney, or city attorney, a superior court may impose a civil fine not to exceed three hundred dollars ($300) for the first assault weapon or .50 BMG rifle deemed a public nuisance pursuant to subdivision (a) and up to one hundred dollars ($100) for each additional assault weapon or .50 BMG rifle deemed a public nuisance pursuant to subdivision (a).

(c) Any assault weapon or .50 BMG rifle deemed a public nuisance under subdivision (a) shall be destroyed in a manner so that it may no longer be used, except upon a finding by a court, or a declaration from the Department of Justice, district attorney, or city attorney stating that the preservation of the assault weapon or .50 BMG rifle is in the interest of justice.

(d) Upon conviction of any misdemeanor or felony involving the illegal possession or use of an assault weapon, the assault weapon shall be deemed a public nuisance and disposed of pursuant to subdivision (c) of Section 18005.

pt. 6 t. 4 d. 10 ch. 2 art. 5 pr. § 30900

Article 5. Registration of Assault Weapons and .50 BMG Rifles and Related Rules

<< CA ST § 30900 >>

30900. (a) Any person who, prior to June 1, 1989, lawfully possessed an assault weapon, as defined in former Section 12276, as added by Section 3 of Chapter 19 of the Statutes of 1989, shall register the firearm by January 1, 1991, and any person who lawfully possessed an assault weapon prior to the date it was specified as an assault weapon pursuant to former Section 12276.5, as added by Section 3 of Chapter 19 of the Statutes of 1989 or as amended by Section 1 of Chapter 874 of the Statutes of 1990 or Section 3 of Chapter 954 of the Statutes of 1991, shall register the firearm within 90 days with the Department of Justice pursuant to those procedures that the department may establish.

(b) Except as provided in Section 30600, any person who lawfully possessed an assault weapon prior to the date it was defined as an assault weapon pursuant to former Section 12276.1, as it read in Section 7 of Chapter 129 of the Statutes of 1999, and which was not specified as an assault weapon under former Section 12276, as added by Section 3 of Chapter 19 of the Statutes of 1989 or as amended at any time before January 1, 2001, or former Section 12276.5, as added by Section 3 of Chapter 19 of the Statutes of 1989 or as amended at any time before January 1, 2001, shall register the firearm by January 1, 2001, with the department pursuant to those procedures that the department may establish.

(c) The registration shall contain a description of the firearm that identifies it uniquely, including all identification marks, the full name, address, date of birth, and thumbprint of the owner, and any other information that the department may deem appropriate.

(d) The department may charge a fee for registration of up to twenty dollars ($20) per person but not to exceed the actual processing costs of the department. After the department establishes fees sufficient to reimburse the department for processing costs, fees charged shall increase at a rate not to exceed the legislatively approved annual cost-of-living adjustment for the department's budget or as otherwise increased through the Budget Act. The fees shall be deposited into the Dealers' Record of Sale Special Account.

<< CA ST § 30905 >>

30905. (a) Except as provided in Section 30600, any person who lawfully possesses any .50 BMG rifle prior to January 1, 2005, that is not specified as an assault weapon under former Section 12276, as it reads in Section 19 of Chapter 606 of the Statutes of 1993, or former Section 12276.5, as it reads in Section 3 of Chapter 954 of the Statutes of 1991, or defined as an assault weapon pursuant to former Section 12276.1, as it reads in Section 3 of Chapter 911 of the Statutes of 2002, shall register the .50 BMG rifle with the department no later than April 30, 2006, pursuant to those procedures that the department may establish.

(b) The registration shall contain a description of the firearm that identifies it uniquely, including all identification marks, the full name, address, date of birth, and thumbprint of the owner, and any other information that the department may deem appropriate.

(c) The department may charge a fee for registration of twenty-five dollars ($25) per person to cover the actual processing and public education campaign costs of the department. The fees shall be deposited into the Dealers' Record of Sale Special Account. Data--processing costs associated with modifying the department's data system to accommodate .50 caliber BMG rifles shall not be paid from the Dealers' Record of Sale Special Account.

<< CA ST § 30910 >>

30910. Except as provided in Section 30925, no assault weapon possessed pursuant to this article may be sold or transferred on or after January 1, 1990, to anyone within this state other than to a licensed gun dealer or as provided in Section 31100.

<< CA ST § 30915 >>

30915. Any person who obtains title to an assault weapon registered under this article or that was possessed pursuant to subdivision (a) of Section 30630 by bequest or intestate succession shall, within 90 days, do one or more of the following:

(a) Render the weapon permanently inoperable.

(b) Sell the weapon to a licensed gun dealer.

(c) Obtain a permit from the Department of Justice in the same manner as specified in Article 3 (commencing with Section 32650) of Chapter 6.

(d) Remove the weapon from this state.

<< CA ST § 30920 >>

30920. (a) Any person who lawfully possessed a firearm subsequently declared to be an assault weapon pursuant to former Section 12276.5, as it reads in Section 3 of Chapter 19 of the Statutes of 1989, Section 1 of Chapter 874 of the Statutes of 1990, or Section 3 of Chapter 954 of the Statutes of 1991, or subsequently defined as an assault weapon pursuant to former Section 12276.1, as that section read at any time from when it was enacted by Section 7 of Chapter 129 of the Statutes of 1999 to when it was repealed by the Deadly Weapons Recodification Act of 2010, shall, within 90 days, do one or more of the following:

(1) Render the weapon permanently inoperable.

(2) Sell the weapon to a licensed gun dealer.

(3) Obtain a permit from the Department of Justice in the same manner as specified in Article 3 (commencing with Section 32650) of Chapter 6.

(4) Remove the weapon from this state.

(b) Notwithstanding subdivision (a), a person who lawfully possessed a firearm that was subsequently declared to be an assault weapon pursuant to former Section 12276.5 may alternatively register the firearm within 90 days of the declaration issued pursuant to subdivision (f) of former Section 12276.5, as it reads in Section 3 of Chapter 19 of the Statutes of 1989, Section 1 of Chapter 874 of the Statutes of 1990, or Section 3 of Chapter 954 of the Statutes of 1991.

<< CA ST § 30925 >>

30925. A person moving into this state, otherwise in lawful possession of an assault weapon, shall do one of the following:

(a) Prior to bringing the assault weapon into this state, that person shall first obtain a permit from the Department of Justice in the same manner as specified in Article 3 (commencing with Section 32650) of Chapter 6.

(b) The person shall cause the assault weapon to be delivered to a licensed gun dealer in this state in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto. If the person obtains a permit from the Department of Justice in the same manner as specified in Article 3 (commencing with Section 32650) of Chapter 6, the dealer shall redeliver that assault weapon to the person. If the licensed gun dealer is prohibited from delivering the assault weapon to a person pursuant to this section, the dealer shall possess or dispose of the assault weapon as allowed by this chapter.

<< CA ST § 30930 >>

30930. Except as provided in Section 30940, no .50 BMG rifle possessed pursuant to this article may be sold or transferred on or after January 1, 2005, to anyone within this state other than to a licensed gun dealer or as provided in Section 31100.

<< CA ST § 30935 >>

30935. Any person who obtains title to a .50 BMG rifle registered under this article or that was possessed pursuant to subdivision (a) of Section 30630 by bequest or intestate succession shall, within 180 days of receipt, do one or more of the following:

(a) Render the weapon permanently inoperable.

(b) Sell the weapon to a licensed gun dealer.

(c) Obtain a permit from the Department of Justice in the same manner as specified in Article 3 (commencing with Section 32650) of Chapter 6.

(d) Remove the weapon from this state.

<< CA ST § 30940 >>

30940. A person moving into this state, otherwise in lawful possession of a .50 BMG rifle, shall do one of the following:

(a) Prior to bringing the .50 BMG rifle into this state, that person shall first obtain a permit from the Department of Justice in the same manner as specified in Article 3 (commencing with Section 32650) of Chapter 6.

(b) The person shall cause the .50 BMG rifle to be delivered to a licensed gun dealer in this state in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto. If the person obtains a permit from the Department of Justice in the same manner as specified in Article 3 (commencing with Section 32650) of Chapter 6, the dealer shall redeliver that .50 BMG rifle to the person. If the licensed gun dealer is prohibited from delivering the .50 caliber BMG rifle to a person pursuant to this section, the dealer shall dispose of the .50 BMG rifle as allowed by this chapter.

<< CA ST § 30945 >>

30945. Unless a permit allowing additional uses is first obtained under Section 31000, a person who has registered an assault weapon or registered a .50 BMG rifle under this article may possess it only under any of the following conditions:

(a) At that person's residence, place of business, or other property owned by that person, or on property owned by another with the owner's express permission.

(b) While on the premises of a target range of a public or private club or organization organized for the purpose of practicing shooting at targets.

(c) While on a target range that holds a regulatory or business license for the purpose of practicing shooting at that target range.

(d) While on the premises of a shooting club that is licensed pursuant to the Fish and Game Code.

(e) While attending any exhibition, display, or educational project that is about firearms and that is sponsored by, conducted under the auspices of, or approved by a law enforcement agency or a nationally or state recognized entity that fosters proficiency in, or promotes education about, firearms.

(f) While on publicly owned land, if the possession and use of a firearm described in Section 30510, 30515, 30520, or 30530, is specifically permitted by the managing agency of the land.

(g) While transporting the assault weapon or .50 BMG rifle between any of the places mentioned in this section, or to any licensed gun dealer, for servicing or repair pursuant to Section 31050, if the assault weapon is transported as required by Sections 16850 and 25610.

<< CA ST § 30950 >>

30950. No person who is under the age of 18 years, and no person who is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, may register or possess an assault weapon or .50 BMG rifle.

<< CA ST § 30955 >>

30955. The department's registration procedures shall provide the option of joint registration for any assault weapon or .50 BMG rifle owned by family members residing in the same household.

<< CA ST § 30960 >>

30960. (a) For 90 days following January 1, 1992, a forgiveness period shall exist to allow any person specified in subdivision (b) of former Section 12280, as it reads in Section 4.5 of Chapter 954 of the Statutes of 1991, to register with the Department of Justice any assault weapon that the person lawfully possessed prior to June 1, 1989.

(b)(1) Any person who registers an assault weapon during the 90–day forgiveness period described in subdivision (a), and any person whose registration form was received by the Department of Justice after January 1, 1991, and who was issued a temporary registration prior to the end of the forgiveness period, shall not be charged with a violation of subdivision (b) of former Section 12280, as added by Section 3 of Chapter 19 of the Statutes of 1989 or as subsequently amended, if law enforcement becomes aware of that violation only as a result of the registration of the assault weapon.

(2) This section shall have no effect upon any person charged prior to January 1, 1992, with a violation of subdivision (b) of former Section 12280 as added by Section 3 of Chapter 19 of the Statutes of 1989 or as subsequently amended, provided that law enforcement was aware of the violation before the weapon was registered.

<< CA ST § 30965 >>

30965. (a) Any person who registered a firearm as an assault weapon pursuant to the provisions of law in effect prior to January 1, 2000, where the assault weapon is thereafter defined as an assault weapon pursuant to Section 30515 or former Section 12276.1, as that section read at any time from when it was enacted by Section 7 of Chapter 129 of the Statutes of 1999 to when it was repealed by the Deadly Weapons Recodification Act of 2010, shall be deemed to have registered the weapon for purposes of this chapter and shall not be required to reregister the weapon pursuant to this article.

(b) Any person who legally registered a firearm as an assault weapon pursuant to the provisions of law in effect prior to January 1, 2005, where the assault weapon is thereafter defined as a .50 caliber BMG rifle pursuant to Section 30530 or former Section

12278, shall be deemed to have registered the weapon for purposes of this chapter and shall not be required to reregister the weapon pursuant to this article.

pt. 6 t. 4 d. 10 ch. 2 art. 6 pr. § 31000

Article 6. Permits for Assault Weapons and .50 BMG Rifles

<< CA ST § 31000 >>

31000. (a) Any person who lawfully acquired an assault weapon before June 1, 1989, or a .50 BMG rifle before January 1, 2005, and wishes to use it in a manner different than specified in Section 30945 shall first obtain a permit from the Department of Justice in the same manner as specified in Article 3 (commencing with Section 32650) of Chapter 6.

(b) Any person who lawfully acquired an assault weapon between June 1, 1989, and January 1, 1990, and wishes to keep it after January 1, 1990, shall first obtain a permit from the Department of Justice in the same manner as specified in Article 3 (commencing with Section 32650) of Chapter 6.

(c) Any person who wishes to acquire an assault weapon after January 1, 1990, or a .50 BMG rifle after January 1, 2005, shall first obtain a permit from the Department of Justice in the same manner as specified in Article 3 (commencing with Section 32650) of Chapter 6.

<< CA ST § 31005 >>

31005. (a) The Department of Justice may, upon a finding of good cause, issue permits for the manufacture or sale of assault weapons or .50 BMG rifles for the sale to, purchase by, or possession of assault weapons or .50 BMG rifles by, any of the following:

(1) The agencies listed in Section 30625, and the officers described in Section 30630.

(2) Entities and persons who have been issued permits pursuant to this section or Section 31000.

(3) Federal law enforcement and military agencies.

(4) Law enforcement and military agencies of other states.

(5) Foreign governments and agencies approved by the United States State Department.

(6) Entities outside the state who have, in effect, a federal firearms dealer's license solely for the purpose of distribution to an entity listed in paragraphs (3) to (5), inclusive.

(b) Application for the permits, the keeping and inspection thereof, and the revocation of permits shall be undertaken in the same manner as specified in Article 3 (commencing with Section 32650) of Chapter 6.

pt. 6 t. 4 d. 10 ch. 2 art. 7 pr. § 31050

Article 7. Licensed Gun Dealers

<< CA ST § 31050 >>

31050. (a) Any licensed gun dealer may take possession of any assault weapon or .50 BMG rifle for the purposes of servicing or repair from any person to whom it is legally registered or who has been issued a permit to possess it pursuant to this chapter.

(b) Any licensed gun dealer may transfer possession of any assault weapon or .50 BMG rifle received pursuant to subdivision (a), to a gunsmith for purposes of accomplishing service or repair of that weapon. A transfer is permissible only to the following persons:

(1) A gunsmith who is in the dealer's employ.

(2) A gunsmith with whom the dealer has contracted for gunsmithing services.

(c) In order for paragraph (2) of subdivision (b) to apply, the gunsmith receiving the assault weapon or .50 BMG rifle shall hold all of the following:

(1) A dealer's license issued pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(2) Any business license required by a state or local governmental entity.

<< CA ST § 31055 >>

31055. In addition to the uses allowed in Article 5 (commencing with Section 30900), any licensed gun dealer who lawfully possesses an assault weapon or .50 BMG rifle pursuant to Article 5 (commencing with Section 30900) may do any of the following:

(a) Transport the firearm between dealers or out of the state if that person is permitted pursuant to the National Firearms Act. Any transporting allowed by this section or Section 31050 shall be done as required by Sections 16850 and 25610.

(b) Display the firearm at any gun show licensed by a state or local governmental entity.

(c) Sell the firearm to a resident outside the state.

(d) Sell the firearm to a person who has been issued a permit pursuant to Section 31000.

pt. 6 t. 4 d. 10 ch. 2 art. 8 pr. § 31100

Article 8. Miscellaneous Provisions

<< CA ST § 31100 >>

31100. Any individual may arrange in advance to relinquish an assault weapon or a .50 BMG rifle to a police or sheriff's department. The assault weapon or .50 BMG rifle shall be transported in accordance with Sections 16850 and 25610.

<< CA ST § 31105 >>

31105. (a) No peace officer or dispatcher shall broadcast over a police radio that an individual has registered, or has obtained a permit to possess, an assault weapon or .50 BMG rifle pursuant to this chapter, unless there exists a reason to believe in good faith that one of the following conditions exist:

(1) The individual has engaged, or may be engaged, in criminal conduct.

(2) The police are responding to a call in which the person allegedly committing a criminal violation may gain access to the assault weapon or .50 BMG rifle.

(3) The victim, witness, or person who reported the alleged criminal violation may be using the assault weapon or .50 BMG rifle to hold the person allegedly committing the criminal violation, or may be using the weapon in defense of self or another person.

(b) This section shall not prohibit a peace officer or dispatcher from broadcasting over a police radio that an individual has not registered, or has not obtained a permit to possess, an assault weapon or .50 BMG rifle pursuant to this chapter.

(c) This section does not limit the transmission of an assault weapon or a .50 BMG rifle ownership status via law enforcement computers or any other medium that is legally accessible only to peace officers or other authorized personnel.


<< CA ST § 31110 >>

31110. (a) Except as provided in subdivision (b), the Department of Justice shall, for every person, firm, or corporation to whom a permit is issued pursuant to this article, annually conduct an inspection for security and safe storage purposes, and to reconcile the inventory of assault weapons.

(b) A person, firm, or corporation with an inventory of fewer than five devices that require any Department of Justice permit shall be subject to an inspection for security and safe storage purposes, and to reconcile inventory, once every five years, or more frequently if determined by the department.


<< CA ST § 31115 >>

31115. (a) The Department of Justice shall conduct a public education and notification program regarding the registration of assault weapons and the definition of the weapons set forth in Section 30515 and former Section 12276.1, as it read at any time from when it was added by Section 7 of Chapter 129 of the Statutes of 1999 to when it was repealed by the Deadly Weapons Recodification Act of 2010.

(b) The public education and notification program shall include outreach to local law enforcement agencies and utilization of public service announcements in a variety of media approaches, to ensure maximum publicity of the limited forgiveness period of the registration requirement specified in subdivision (f) of former Section 12285, as that subdivision read in Section 5 of Chapter 954 of the Statutes of 1991, and the consequences of nonregistration. The department shall develop posters describing gunowners' responsibilities under former Chapter 2.3 (commencing with Section 12275) of Title 2 of Part 4, as that chapter read when the forgiveness period commenced on January 1, 1992, which shall be posted in a conspicuous place in every licensed gun store in the state during the forgiveness period.

(c) For .50 BMG rifles, the department's education campaign shall provide materials to dealers of .50 BMG rifles, and to recognized national associations that specialize in .50 BMG rifles.

(d) Any costs incurred by the Department of Justice to implement this section, which cannot be absorbed by the department, shall be funded from the Dealers' Record of Sale Special Account, as set forth in Section 28235, or former Section 12076 as it read at any time from when it was amended by Section 1.7 of Chapter 954 of the Statutes of 1991 to when it was repealed by Section 12 of Chapter 606 of the Statutes of 1993, or former Section 12076 as it read at any time from when it was enacted

by Section 13 of Chapter 606 of the Statutes of 1993 to when it was repealed by the Deadly Weapons Recodification Act of 2010, upon appropriation by the Legislature.

pt. 6 t. 4 d. 10 ch. 3 pr. § 31310

Chapter 3. Body Armor

<< CA ST § 31310 >>

31310. No body armor shall be acquired by the commissioner pursuant to Section 2259.5 of the Vehicle Code unless, pursuant to subdivision (a) of Section 31315, the Department of Justice has certified the body armor.

<< CA ST § 31315 >>

31315. (a) Before a body armor may be purchased for use by state peace officers, the Department of Justice, after consultation with the Department of the California Highway Patrol, shall establish minimum ballistic performance standards, and shall determine that the armor satisfies those standards.

(b) Only body armor that meets state requirements under subdivision (a) for acquisition or purchase shall be eligible for testing for certification under the ballistic performance standards established by the Department of Justice.

(c) Only body armor that is certified as acceptable by the department shall be purchased for use by state peace officers.

<< CA ST § 31320 >>

31320. (a) Any person engaged in the manufacture or sale of body armor may apply to the Department of Justice for certification that a particular type of body armor manufactured or sold by that person is acceptable.

(b) The applicant shall reimburse the state for any actual expenses incurred by the state in testing and certifying a particular type of body armor.

<< CA ST § 31325 >>

31325. Any application submitted pursuant to Section 31320 shall contain all of the following:

(a) Full written reports of any investigation conducted for the purpose of determining whether the body armor is acceptable.

(b) A full written statement of the design of the body armor.

(c) A full written statement of the methods used in, and the facilities and controls used for, the manufacture of the body armor.

(d) Any samples of the body armor and its components as the Department of Justice may require.

(e) Specimens of the instructions and advertisements used or proposed to be used for the body armor.

<< CA ST § 31330 >>

31330. The Department of Justice, in cooperation with the office of procurement of the Department of General Services, shall establish a schedule for ballistic testing for certification pursuant to subdivision (b) of Section 31315.

<< CA ST § 31335 >>

31335. The Department of Justice shall issue an order refusing to certify a body armor as acceptable if, after due notice to the applicant, the department finds any of the following:

(a) That the body armor does not satisfy the ballistic performance standards established by the department pursuant to subdivision (b) of Section 31315.

(b) That the application contains any misrepresentation of a material fact.

(c) That the application is materially incomplete.

(d) That the applicant has failed to reimburse the state as required by Section 31320.

<< CA ST § 31340 >>

31340. The Department of Justice shall issue an order revoking certification of a body armor if, after due notice to the applicant, the department finds any of the following:

(a) The experience or additional testing show that the body armor does not comply with the department's ballistic performance standards.

(b) The application contains any misrepresentation of a material fact.

(c) The body armor must be retested for certification under new department standards.

<< CA ST § 31345 >>

31345. (a) All purchases of certified body armor under the provisions of this chapter shall be made by the Department of General Services on behalf of an authorized state agency or department. Purchases of body armor shall be based upon written requests submitted by an authorized state agency or department to the Department of General Services.

(b) The Department of General Services shall make certified body armor available to peace officers of the Department of Justice, as defined by Section 830.3, while engaged in law enforcement activities.

<< CA ST § 31350 >>

31350. The Department of General Services shall, pursuant to departmental regulation, after consultation with the Department of the California Highway Patrol, define the term "enforcement activities" for purposes of this chapter, and develop standards regarding what constitutes sufficient wear on body armor to necessitate replacement of the body armor.

<< CA ST § 31355 >>

31355. The Department of Justice shall adopt and promulgate regulations for the fair and efficient enforcement of this chapter.

<< CA ST § 31360 >>

31360. (a) A person who has been convicted of a violent felony under the laws of the United States, the State of California, or any other state, government, or country, who purchases, owns, or possesses body armor, as defined in Section 16288, except as authorized under subdivision (b), is guilty of a felony, punishable by imprisonment in a state prison for 16 months, or two or three years.

(b) A person whose employment, livelihood, or safety is dependent on the ability to legally possess and use body armor, who is subject to the prohibition imposed by subdivision (a) due to a prior violent felony conviction, may file a petition for an exception to this prohibition with the chief of police or county sheriff of the jurisdiction in which that person seeks to possess and use the body armor. The chief of police or sheriff may reduce or eliminate the prohibition, impose conditions on reduction or elimination of the prohibition, or otherwise grant relief from the prohibition as the chief of police or sheriff deems appropriate, based on the following:

(1) A finding that the petitioner is likely to use body armor in a safe and lawful manner.

(2) A finding that the petitioner has a reasonable need for this type of protection under the circumstances.

In making its decision, the chief of police or sheriff shall consider the petitioner's continued employment, the interests of justice, any relevant evidence, and the totality of the circumstances. It is the intent of the Legislature that law enforcement officials exercise broad discretion in fashioning appropriate relief under this paragraph in cases in which relief is warranted. However, this paragraph may not be construed to require law enforcement officials to grant relief to any particular petitioner. Relief from this prohibition does not relieve any other person or entity from any liability that might otherwise be imposed.

(c) The chief of police or sheriff shall require, as a condition of granting an exception under subdivision (b), that the petitioner agree to maintain on the petitioner's person a certified copy of the law enforcement official's permission to possess and use body armor, including any conditions or limitations.

(d) Law enforcement officials who enforce the prohibition specified in subdivision (a) against a person who has been granted relief pursuant to subdivision (b), shall be immune from any liability for false arrest arising from the enforcement of this subdivision unless the person has in possession a certified copy of the permission granting the person relief from the prohibition, as required by subdivision (c). This immunity from liability does not relieve any person or entity from any other liability that might otherwise be imposed.

pt. 6 t. 4 d. 10 ch. 4 pr. § 31500

Chapter 4. Handguns

pt. 6 t. 4 d. 10 ch. 4 art. 1 pr. § 31500

Article 1. Unconventional Pistol

<< CA ST § 31500 >>

31500. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any unconventional pistol is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 31590 >>

31590. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any unconventional pistol is a nuisance and is subject to Section 18010.

pt. 6 t. 4 d. 10 ch. 4 art. 2 pr. § 31610

Article 2. Handgun Safety Certificate

<< CA ST § 31610 >>

31610. It is the intent of the Legislature in enacting this article to require that persons who obtain handguns have a basic familiarity with those firearms, including, but not limited to, the safe handling and storage of those firearms. It is not the intent of the Legislature to require a handgun safety certificate for the mere possession of a firearm.

<< CA ST § 31615 >>

31615. (a) No person shall do either of the following:

(1) Purchase or receive any handgun, except an antique firearm, without a valid handgun safety certificate.

(2) Sell, deliver, loan, or transfer any handgun, except an antique firearm, to any person who does not have a valid handgun safety certificate.

(b) Any person who violates subdivision (a) is guilty of a misdemeanor.

(c) The provisions of this section are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of this code shall not be punished under more than one provision.

<< CA ST § 31620 >>

31620. (a) No person may commit an act of collusion as specified in Section 27550.

(b) Any person who alters, counterfeits, or falsifies a handgun safety certificate, or who uses or attempts to use any altered, counterfeited, or falsified handgun safety certificate to purchase a handgun is guilty of a misdemeanor.

(c) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by this section and different provisions of this code shall not be punished under more than one provision.

<< CA ST § 31625 >>

31625. (a) No certified instructor may issue a handgun safety certificate to any person who has not complied with this article. Proof of compliance shall be forwarded to the department by certified instructors as frequently as the department may determine.

(b) No certified instructor may issue a handgun safety certificate to any person who is under 18 years of age.

(c) A violation of this section shall be grounds for the department to revoke the instructor's certification to issue handgun safety certificates.

## << CA ST § 31630 >>

31630. (a) The department shall develop an instruction manual in English and in Spanish by October 1, 2002. The department shall make the instructional manual available to firearms dealers licensed pursuant to Sections 26700 to 26915, inclusive, who shall make it available to the general public. Essential portions of the manual may be included in the pamphlet described in Section 34205.

(b) The department shall develop audiovisual materials in English and in Spanish by March 1, 2003, to be issued to instructors certified by the department.

(c) The department shall solicit input from any reputable association or organization, including any law enforcement association that has as one of its objectives the promotion of firearms safety, in the development of the handgun safety certificate instructional materials.

## << CA ST § 31635 >>

31635. (a) The department shall prescribe a minimum level of skill, knowledge, and competency to be required of all handgun safety certificate instructors.

(b) Department Certified Instructor applicants shall have a certification to provide training from one of the following organizations as specified, or any entity found by the department to give comparable instruction in firearms safety, or the applicant shall have similar or equivalent training to that provided by the following, as determined by the department:

(1) Department of Consumer Affairs, State of California–Firearm Training Instructor.

(2) Director of Civilian Marksmanship, Instructor or Rangemaster.

(3) Federal Government, Certified Rangemaster or Firearm Instructor.

(4) Federal Law Enforcement Training Center, Firearm Instructor Training Program or Rangemaster.

(5) United States Military, Military Occupational Specialty (MOS) as marksmanship or firearms instructor. Assignment as Range Officer or Safety Officer are not sufficient.

(6) National Rifle Association–Certified Instructor, Law Enforcement Instructor, Rangemaster, or Training Counselor.

(7) Commission on Peace Officer Standards and Training (POST), State of California–Firearm Instructor or Rangemaster.

(8) Authorization from a State of California accredited school to teach a firearm training course.

## << CA ST § 31640 >>

31640. (a) The department shall develop a written objective test, in English and in Spanish, and prescribe its content, form, and manner, to be administered by an instructor certified by the department.

(b) If the person taking the test is unable to read, the examination shall be administered orally. If the person taking the test is unable to read English or Spanish, the test may be applied orally by a translator.

(c) The test shall cover, but not be limited to, all of the following:

(1) The laws applicable to carrying and handling firearms, particularly handguns.

(2) The responsibilities of ownership of firearms, particularly handguns.

(3) Current law as it relates to the private sale and transfer of firearms.

(4) Current law as it relates to the permissible use of lethal force.

(5) What constitutes safe firearm storage.

(6) Issues associated with bringing a handgun into the home.

(7) Prevention strategies to address issues associated with bringing firearms into the home.

(d) The department shall update test materials related to this article every five years.

(e) If a dealer licensed pursuant to Sections 26700 to 26915, inclusive, or his or her employee, or where the managing officer or partner is certified as an instructor pursuant to this article, he or she shall also designate a separate room or partitioned area for a person to take the objective test, and maintain adequate supervision to assure that no acts of collusion occur while the objective test is being administered.

<< CA ST § 31645 >>

31645. (a) An applicant for a handgun safety certificate shall successfully pass the objective test referred to in Section 31640, with a passing grade of at least 75 percent. Any person receiving a passing grade on the objective test shall immediately be issued a handgun safety certificate by the instructor.

(b) An applicant who fails to pass the objective test upon the first attempt shall be offered additional instructional materials by the instructor, such as a videotape or booklet. The person may not retake the objective test under any circumstances until 24 hours have elapsed after the failure to pass the objective test upon the first attempt. The person failing the test on the first attempt shall take another version of the test upon the second attempt. All tests shall be taken from the same instructor except upon permission by the department, which shall be granted only for good cause shown. The instructor shall make himself or herself available to the applicant during regular business hours in order to retake the test.

<< CA ST § 31650 >>

31650. (a) The certified instructor may charge a fee of twenty-five dollars ($25), fifteen dollars ($15) of which is to be paid to the department pursuant to subdivision (c).

(b) An applicant to renew a handgun safety certificate shall be required to pass the objective test. The certified instructor may charge a fee of twenty-five dollars ($25), fifteen dollars ($15) of which is to be forwarded to the department pursuant to subdivision (c).

(c) The department may charge the certified instructor up to fifteen dollars ($15) for each handgun safety certificate issued by that instructor to cover the department's cost in carrying out and enforcing this article, and enforcing the provisions listed in subdivision (e), as determined annually by the department.

(d) All money received by the department pursuant to this article shall be deposited into the Firearms Safety and Enforcement Special Fund created pursuant to Section 28300.

(e) The department shall conduct enforcement activities, including, but not limited to, law enforcement activities to ensure compliance with the following provisions:

(1) Section 830.95.

(2) Title 2 (commencing with Section 12001) of Part 4.

(3) This part, except Sections 16965, 17235, and 21510.

<< CA ST § 31655 >>

31655. (a) The department shall develop handgun safety certificates to be issued by instructors certified by the department, to those persons who have complied with this article.

(b) A handgun safety certificate shall include, but not be limited to, the following information:

(1) A unique handgun safety certificate identification number.

(2) The holder's full name.

(3) The holder's date of birth.

(4) The holder's driver's license or identification number.

(5) The holder's signature.

(6) The signature of the issuing instructor.

(7) The date of issuance.

(c) The handgun safety certificate shall expire five years after the date that it was issued by the certified instructor.

<< CA ST § 31660 >>

31660. (a) In the case of loss or destruction of a handgun safety certificate, the issuing instructor shall issue a duplicate certificate upon request and proof of identification to the certificate holder.

(b) The department may authorize the issuing instructor to charge a fee not to exceed fifteen dollars ($15), for a duplicate certificate. Revenues from this fee shall be deposited in the Firearms Safety and Enforcement Special Fund, created pursuant to Section 28300.

<< CA ST § 31665 >>

31665. The department shall be immune from any liability arising from implementing Sections 31630, 31635, 31640, and subdivision (a) of Section 31655.

<< CA ST § 31670 >>

31670. Except for the provisions of former Section 12804, former Article 8 (commencing with Section 12800) of Chapter 6 of Title 2 of Part 4, as added by Section 10 of Chapter 942 of the Statutes of 2001, became operative on January 1, 2003.

pt. 6 t. 4 d. 10 ch. 4 art. 3 pr. § 31700

Article 3. Exceptions to Handgun Safety Certificate Requirement

<< CA ST § 31700 >>

31700. (a) The following persons, properly identified, are exempted from the handgun safety certificate requirement in subdivision (a) of Section 31615:

(1) Any active or honorably retired peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2.

(2) Any active or honorably retired federal officer or law enforcement agent.

(3) Any reserve peace officer, as defined in Section 832.6.

(4) Any person who has successfully completed the course of training specified in Section 832.

(5) A firearms dealer licensed pursuant to Sections 26700 to 26915, inclusive, who is acting in the course and scope of that person's activities as a person licensed pursuant to Sections 26700 to 26915, inclusive.

(6) A federally licensed collector who is acquiring or being loaned a handgun that is a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations, who has a current certificate of eligibility issued by the department pursuant to Section 26710.

(7) A person to whom a handgun is being returned, where the person receiving the firearm is the owner of the firearm.

(8) A family member of a peace officer or deputy sheriff from a local agency who receives a firearm pursuant to Section 50081 of the Government Code.

(9) Any individual who has a valid concealed weapons permit issued pursuant to Chapter 4 (commencing with Section 26150) of Division 5.

(10) An active, or honorably retired member of the United States Armed Forces, the National Guard, the Air National Guard, the active reserve components of the United States, where individuals in those organizations are properly identified. For purposes of this section, proper identification includes the Armed Forces Identification Card, or other written documentation certifying that the individual is an active or honorably retired member.

(11) Any person who is authorized to carry loaded firearms pursuant to Section 26025 or 26030.

(12) Persons who are the holders of a special weapons permit issued by the department pursuant to Section 32650 or 33300, pursuant to Article 3 (commencing with Section 18900) of Chapter 1 of Division 5 of Title 2, or pursuant to Article 4 (commencing with Section 32700) of Chapter 6 of this division.

(b) The following persons who take title or possession of a handgun by operation of law in a representative capacity, until or unless they transfer title ownership of the handgun to themselves in a personal capacity, are exempted from the handgun safety certificate requirement in subdivision (a) of Section 31615:

(1) The executor or administrator of an estate.

(2) A secured creditor or an agent or employee thereof when the firearms are possessed as collateral for, or as a result of, or an agent or employee thereof when the firearms are possessed as collateral for, or as a result of, a default under a security agreement under the Commercial Code.

(3) A levying officer, as defined in Section 481.140, 511.060, or 680.260 of the Code of Civil Procedure.

(4) A receiver performing the functions of a receiver.

(5) A trustee in bankruptcy performing the duties of a trustee.

(6) An assignee for the benefit of creditors performing the functions of an assignee.

<< CA ST § 31705 >>

31705. (a) Subdivision (a) of Section 31615 does not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 31710 >>

31710. Subdivision (a) of Section 31615 does not apply to the loan of a firearm if all of the following conditions are satisfied:

(a) The loan is made by an authorized law enforcement representative of a city, county, or city and county, or of the state or federal government.

(b) The loan is made to a peace officer employed by that agency and authorized to carry a firearm.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

(c) The loan is made for the carrying and use of that firearm by that peace officer in the course and scope of the officer's duties.

<< CA ST § 31715 >>

31715. (a) Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 31720 >>

31720. (a) Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 31725 >>

31725. (a) Subdivision (a) of Section 31615 does not apply to a sale, delivery, or transfer of firearms if both of the following requirements are satisfied:

(1) The sale, delivery, or transfer is to an authorized representative of a city, city and county, county, or state government, or of the federal government, and is for the governmental entity.

(2) The entity is acquiring the weapon as part of an authorized, voluntary program in which the entity is buying or receiving weapons from private individuals.

(b) Any weapons acquired pursuant to this section shall be disposed of pursuant to the applicable provisions of Section 34000 or Sections 18000 and 18005.

<< CA ST § 31730 >>

31730. Subdivision (a) of Section 31615 does not apply to the sale, delivery, loan, or transfer of a firearm made by an authorized law enforcement representative of a city, county, city and county, or state, or of the federal government, to any public or private nonprofit historical society, museum, or institutional collection, or the purchase or receipt of that firearm by that public or private nonprofit historical society, museum, or institutional collection, if all of the following conditions are met:

(a) The entity receiving the firearm is open to the public.

(b) The firearm prior to delivery is deactivated or rendered inoperable.

(c) The firearm is not subject to any of the following:

(1) Sections 18000 and 18005.

(2) Division 4 (commencing with Section 18250) of Title 2.

(3) Section 34000.

(4) Sections 34005 and 34010.

(d) The firearm is not prohibited by other provisions of law from being sold, delivered, or transferred to the public at large.

(e) Prior to delivery, the entity receiving the firearm submits a written statement to the law enforcement representative stating that the firearm will not be restored to operating condition, and will either remain with that entity, or if subsequently disposed of, will be transferred in accordance with the applicable provisions listed in Section 16575 and, if applicable, Section 31615.

(f) Within 10 days of the date that the firearm is sold, loaned, delivered, or transferred to that entity, all of the following information shall be reported to the department in a manner prescribed by the department:

(1) The name of the government entity delivering the firearm.

(2) The make, model, serial number, and other identifying characteristics of the firearm.

(3) The name of the person authorized by the entity to take possession of the firearm.

(g) In the event of a change in the status of the designated representative, the entity shall notify the department of a new representative within 30 days.

<< CA ST § 31735 >>

31735. Subdivision (a) of Section 31615 does not apply to the sale, delivery, loan, or transfer of a firearm made by any person other than a representative of an authorized law enforcement agency to any public or private nonprofit historical society, museum, or institutional collection, if all of the following conditions are met:

(a) The entity receiving the firearm is open to the public.

(b) The firearm is deactivated or rendered inoperable prior to delivery.

(c) The firearm is not of a type prohibited from being sold, delivered, or transferred to the public.

(d) Prior to delivery, the entity receiving the firearm submits a written statement to the person selling, loaning, or transferring the firearm stating that the firearm will not be restored to operating condition, and will either remain with that entity, or if subsequently disposed of, will be transferred in accordance with the applicable provisions listed in Section 16575 and, if applicable, with Section 31615.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 506 of 697

(e) If title to a handgun is being transferred to the public or private nonprofit historical society, museum, or institutional collection, then the designated representative of that entity shall, within 30 days of taking possession of that handgun, forward by prepaid mail or deliver in person to the Department of Justice, a single report signed by both parties to the transaction, which includes all of the following information:

(1) Information identifying the person representing the public or private historical society, museum, or institutional collection.

(2) Information on how title was obtained and from whom.

(3) A description of the firearm in question.

(4) A copy of the written statement referred to in subdivision (d).

(f) The report forms that are to be completed pursuant to this section shall be provided by the Department of Justice.

(g) In the event of a change in the status of the designated representative, the entity shall notify the department of a new representative within 30 days.

<< CA ST § 31740 >>

31740. Subdivision (a) of Section 31615 does not apply to sales, deliveries, or transfers of firearms between or to importers and manufacturers of firearms licensed to engage in that business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 31745 >>

31745. Subdivision (a) of Section 31615 shall not apply to the sale, delivery, or transfer of a handgun to a person licensed pursuant to Sections 26700 to 26915, inclusive, where the licensee is receiving the handgun in the course and scope of the licensee's activities as a person licensed pursuant to Sections 26700 to 26915, inclusive.

<< CA ST § 31750 >>

31750. Subdivision (a) of Section 31615 does not apply to the loan of a firearm if all of the following conditions exist:

(a) The person loaning the firearm is at all times within the presence of the person being loaned the firearm.

(b) The loan is for a lawful purpose.

(c) The loan does not exceed three days in duration.

(d) The individual receiving the firearm is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(e) The person loaning the firearm is 18 years of age or older.

(f) The person being loaned the firearm is 18 years of age or older.

<< CA ST § 31755 >>

31755. Subdivision (a) of Section 31615 does not apply to the delivery of a firearm to a gunsmith for service or repair, or to the return of the firearm to its owner by the gunsmith, or to the delivery of a firearm by a gunsmith to a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code for service or repair and the return of the firearm to the gunsmith.

<< CA ST § 31760 >>

31760. Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of firearms if all of the following requirements are satisfied:

(a) The sale, delivery, or transfer is made by a person who resides in this state.

(b) The sale, delivery, or transfer is made to a person who resides outside this state and is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(c) The sale, delivery, or transfer is in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 31765 >>

31765. Subdivision (a) of Section 31615 does not apply to the loan of a firearm to a person 18 years of age or older for the purposes of shooting at targets if the loan occurs on the premises of a target facility that holds a business or regulatory license or on the premises of any club or organization organized for the purposes of practicing shooting at targets upon established ranges, whether public or private, if the firearm is at all times kept within the premises of the target range or on the premises of the club or organization.

<< CA ST § 31770 >>

31770. Subdivision (a) of Section 31615 does not apply to deliveries, transfers, or returns of firearms made pursuant to any of the following:

(a) Sections 18000 and 18005.

(b) Division 4 (commencing with Section 18250) of Title 2.

(c) Chapter 2 (commencing with Section 33850) of Division 11.

(d) Sections 34005 and 34010.

<< CA ST § 31775 >>

31775. Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of firearms if all of the following conditions are satisfied:

(a) The firearms are unloaded.

(b) The firearms are not handguns.

(c) The sale, delivery, or transfer is made by a dealer to another dealer, upon proof of compliance with the requirements of Section 27555.

<< CA ST § 31780 >>

31780. Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of unloaded firearms by a dealer to a person who resides outside this state and is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

<< CA ST § 31785 >>

31785. Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of unloaded firearms to a wholesaler if the firearms are being returned to the wholesaler and are intended as merchandise in the wholesaler's business.

<< CA ST § 31790 >>

31790. Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of firearms if all of the following conditions are satisfied:

(a) The firearms are unloaded.

(b) The sale, delivery, or transfer is made by one dealer to another dealer, upon proof of compliance with the requirements of Section 27555.

(c) The firearms are intended as merchandise in the receiving dealer's business.

<< CA ST § 31795 >>

31795. Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of an unloaded firearm, other than a handgun, by a dealer to himself or herself.

<< CA ST § 31800 >>

31800. Subdivision (a) of Section 31615 does not apply to the loan of an unloaded firearm by a dealer who also operates a target facility that holds a business or regulatory license on the premises of the building designated in the license or whose building designated in the license is on the premises of any club or organization organized for the purposes of practicing shooting at targets upon established ranges, whether public or private, to a person at that target facility or that club or organization, if the firearm is at all times kept within the premises of the target range or on the premises of the club or organization.

<< CA ST § 31805 >>

31805. Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of unloaded firearms to a wholesaler as merchandise in the wholesaler's business by a manufacturer or importer licensed to engage in that business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, or by

another wholesaler, if the sale, delivery, or transfer is made in accordance with Chapter 44 (commencing with Section 921) of Title 18 of the United States Code.

<< CA ST § 31810 >>

31810. Subdivision (a) of Section 31615 does not apply to or affect the following circumstances:

(a) The loan of a handgun to a minor by the minor's parent or legal guardian, if both of the following requirements are satisfied:

(1) The minor is being loaned the firearm for the purposes of engaging in a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(2) The duration of the loan does not exceed the amount of time that is reasonably necessary to engage in the lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(b) The loan of a handgun to a minor by a person who is not the minor's parent or legal guardian, if all of the following requirements are satisfied:

(1) The minor is accompanied by the minor's parent or legal guardian when the loan is made, or the minor has the written consent of the minor's parent or legal guardian, which is presented at the time of the loan, or earlier.

(2) The minor is being loaned the firearm for the purpose of engaging in a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(3) The duration of the loan does not exceed the amount of time that is reasonably necessary to engage in the lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, or a motion picture, television, or video production, or entertainment or theatrical event, the nature of which involves the use of a firearm.

(4) The duration of the loan does not, in any event, exceed 10 days.

<< CA ST § 31815 >>

31815. Subdivision (a) of Section 31615 does not apply to the loan of a firearm if all of the following requirements are satisfied:

(a) The loan is infrequent, as defined in Section 16730.

(b) The firearm is unloaded.

(c) The loan is made by a person who is neither a dealer nor a federal firearms licensee pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code.

(d) The loan is made to a person 18 years of age or older.

(e) The loan is for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

<< CA ST § 31820 >>

31820. (a) Subdivision (a) of Section 31615 does not apply to the loan of a firearm if all of the following requirements are satisfied:

(1) The firearm is unloaded.

(2) The loan is made by a person who is not a dealer but is a federal firearms licensee pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code.

(3) The loan is made to a person who possesses a valid entertainment firearms permit issued pursuant to Chapter 2 (commencing with Section 29500) of Division 8.

(4) The firearm is loaned for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

(b) The person loaning the firearm pursuant to this section shall retain a photocopy of the entertainment firearms permit as proof of compliance with this requirement.

<< CA ST § 31825 >>

31825. (a) Subdivision (a) of Section 31615 does not apply to the loan of a firearm if all of the following conditions are satisfied:

(1) The firearm is unloaded.

(2) The loan is made by a dealer.

(3) The loan is made to a person who possesses a valid entertainment firearms permit issued pursuant to Chapter 2 (commencing with Section 29500) of Division 8.

(4) The firearm is loaned solely for use as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

(b) The dealer shall retain a photocopy of the entertainment firearms permit as proof of compliance with this requirement.

<< CA ST § 31830 >>

31830. (a) Subdivision (a) of Section 31615 does not apply to the loan of an unloaded firearm to a consultant-evaluator by a person licensed pursuant to Sections 26700 to 26915, inclusive, if the loan does not exceed 45 days from the date of delivery.

(b) At the time of the loan, the consultant-evaluator shall provide the following information, which the dealer shall retain for two years:

(1) A photocopy of a valid, current, government-issued identification to determine the consultant-evaluator's identity, including, but not limited to, a California driver's license, identification card, or passport.

(2) A photocopy of the consultant-evaluator's valid, current certificate of eligibility.

(3) A letter from the person licensed as an importer, manufacturer, or dealer pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code, with whom the consultant-evaluator has a bona fide business relationship. The letter shall detail the bona fide business purposes for which the firearm is being loaned and confirm that the consultant-evaluator is being loaned the firearm as part of a bona fide business relationship.

(4) The signature of the consultant-evaluator on a form indicating the date the firearm is loaned and the last day the firearm may be returned.

pt. 6 t. 4 d. 10 ch. 4 art. 4 pr. § 31900

Article 4. "Unsafe Handgun" and Related Definitions

<< CA ST § 31900 >>

31900. As used in this part, the "drop safety requirement for handguns" means that at the conclusion of the firing requirements for handguns described in Section 31905, the same certified independent testing laboratory shall subject the same three handguns of the make and model for which certification is sought, to the following test:

(a) A primed case (no powder or projectile) shall be inserted into the chamber. For a pistol, the slide shall be released, allowing it to move forward under the impetus of the recoil spring, and an empty magazine shall be inserted. For both a pistol and a revolver, the weapon shall be placed in a drop fixture capable of dropping the pistol from a drop height of 1m + 1cm (39.4 + 0.4 in.) onto the largest side of a slab of solid concrete having minimum dimensions of 7.5 x 15 x 15 cm (3 x 6 x 6 in.). The drop distance shall be measured from the lowermost portion of the weapon to the top surface of the slab. The weapon shall be dropped from a fixture and not from the hand. The weapon shall be dropped in the condition that it would be in if it were dropped from a hand (cocked with no manual safety applied). If the pistol is designed so that upon leaving the hand a "safety" is automatically applied by the pistol, this feature shall not be defeated. An approved drop fixture is a short piece of string with the weapon attached at one end and the other end held in an air vise until the drop is initiated.

(b) The following six drops shall be performed:

(1) Normal firing position with barrel horizontal.

(2) Upside down with barrel horizontal.

(3) On grip with barrel vertical.

(4) On muzzle with barrel vertical.

(5) On either side with barrel horizontal.

(6) If there is an exposed hammer or striker, on the rearmost point of that device, otherwise on the rearmost point of the weapon.

(c) The primer shall be examined for indentations after each drop. If indentations are present, a fresh primed case shall be used for the next drop.

(d) The handgun shall pass this test if each of the three test guns does not fire the primer.

<< CA ST § 31905 >>

31905. (a) As used in this part, "firing requirement for handguns" means a test in which the manufacturer provides three handguns of the make and model for which certification is sought to an independent testing laboratory certified by the Attorney General pursuant to Section 32010. These handguns may not be refined or modified in any way from those that would be made available for retail sale if certification is granted. The magazines of a tested pistol shall be identical to those that would be provided with the pistol to a retail customer.

(b) The test shall be conducted as follows:

(1) The laboratory shall fire 600 rounds from each gun, stopping after each series of 50 rounds has been fired for 5 to 10 minutes to allow the weapon to cool, stopping after each series of 100 rounds has been fired to tighten any loose screws and clean the gun in accordance with the manufacturer's instructions, and stopping as needed to refill the empty magazine or cylinder to capacity before continuing.

(2) The ammunition used shall be of the type recommended by the handgun manufacturer in the user manual, or if none is recommended, any standard ammunition of the correct caliber in new condition that is commercially available.

(c) A handgun shall pass this test if each of the three test guns meets both of the following:

(1) Fires the first 20 rounds without a malfunction that is not due to ammunition that fails to detonate.

(2) Fires the full 600 rounds with no more than six malfunctions that are not due to ammunition that fails to detonate and without any crack or breakage of an operating part of the handgun that increases the risk of injury to the user.

(d) If a pistol or revolver fails the requirements of either paragraph (1) or (2) of subdivision (c) due to ammunition that fails to detonate, the pistol or revolver shall be retested from the beginning of the "firing requirement for handguns" test. A new model of the pistol or revolver that failed due to ammunition that fails to detonate may be submitted for the test to replace the pistol or revolver that failed.

(e) As used in this section, "malfunction" means a failure to properly feed, fire, or eject a round, or failure of a pistol to accept or eject the magazine, or failure of a pistol's slide to remain open after the magazine has been expended.

<< CA ST § 31910 >>

31910. As used in this part, "unsafe handgun" means any pistol, revolver, or other firearm capable of being concealed upon the person, for which any of the following is true:

(a) For a revolver:

(1) It does not have a safety device that, either automatically in the case of a double-action firing mechanism, or by manual operation in the case of a single-action firing mechanism, causes the hammer to retract to a point where the firing pin does not rest upon the primer of the cartridge.

(2) It does not meet the firing requirement for handguns.

(3) It does not meet the drop safety requirement for handguns.

(b) For a pistol:

(1) It does not have a positive manually operated safety device, as determined by standards relating to imported guns promulgated by the federal Bureau of Alcohol, Tobacco, and Firearms.

(2) It does not meet the firing requirement for handguns.

(3) It does not meet the drop safety requirement for handguns.

(4) Commencing January 1, 2006, for a center fire semiautomatic pistol that is not already listed on the roster pursuant to Section 32015, it does not have either a chamber load indicator, or a magazine disconnect mechanism.

(5) Commencing January 1, 2007, for all center fire semiautomatic pistols that are not already listed on the roster pursuant to Section 32015, it does not have both a chamber load indicator and if it has a detachable magazine, a magazine disconnect mechanism.

(6) Commencing January 1, 2006, for all rimfire semiautomatic pistols that are not already listed on the roster pursuant to Section 32015, it does not have a magazine disconnect mechanism, if it has a detachable magazine.

(7)(A) Commencing January 1, 2010, for all semiautomatic pistols that are not already listed on the roster pursuant to Section 32015, it is not designed and equipped with a microscopic array of characters that identify the make, model, and serial number of the pistol, etched or otherwise imprinted in two or more places on the interior surface or internal working parts of the pistol, and that are transferred by imprinting on each cartridge case when the firearm is fired, provided that the Department of Justice certifies that the technology used to create the imprint is available to more than one manufacturer unencumbered by any patent restrictions.

(B) The Attorney General may also approve a method of equal or greater reliability and effectiveness in identifying the specific serial number of a firearm from spent cartridge casings discharged by that firearm than that which is set forth in this paragraph, to be thereafter required as otherwise set forth by this paragraph where the Attorney General certifies that this new method is also unencumbered by any patent restrictions. Approval by the Attorney General shall include notice of that fact via regulations adopted by the Attorney General for purposes of implementing that method for purposes of this paragraph.

(C) The microscopic array of characters required by this section shall not be considered the name of the maker, model, manufacturer's number, or other mark of identification, including any distinguishing number or mark assigned by the Department of Justice, within the meaning of Sections 23900 and 23920.

pt. 6 t. 4 d. 10 ch. 4 art. 5 pr. § 32000

Article 5. Rules Governing Unsafe Handguns

<< CA ST § 32000 >>

32000. (a) Commencing January 1, 2001, any person in this state who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, offers or exposes for sale, gives, or lends any unsafe handgun shall be punished by imprisonment in a county jail not exceeding one year.

(b) This section shall not apply to any of the following:

(1) The manufacture in this state, or importation into this state, of any prototype pistol, revolver, or other firearm capable of being concealed upon the person when the manufacture or importation is for the sole purpose of allowing an independent laboratory certified by the Department of Justice pursuant to Section 32010 to conduct an independent test to determine whether

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 514 of 697

that pistol, revolver, or other firearm capable of being concealed upon the person is prohibited by Sections 31900 to 32110, inclusive, and, if not, allowing the department to add the firearm to the roster of pistols, revolvers, and other firearms capable of being concealed upon the person that may be sold in this state pursuant to Section 32015.

(2) The importation or lending of a pistol, revolver, or other firearm capable of being concealed upon the person by employees or authorized agents of entities determining whether the weapon is prohibited by this section.

(3) Firearms listed as curios or relics, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations.

(4) The sale or purchase of any pistol, revolver, or other firearm capable of being concealed upon the person, if the pistol, revolver, or other firearm is sold to, or purchased by, the Department of Justice, any police department, any sheriff's official, any marshal's office, the Youth and Adult Correctional Agency, the California Highway Patrol, any district attorney's office, or the military or naval forces of this state or of the United States for use in the discharge of their official duties. Nor shall anything in this section prohibit the sale to, or purchase by, sworn members of these agencies of any pistol, revolver, or other firearm capable of being concealed upon the person.

(c) Violations of subdivision (a) are cumulative with respect to each handgun and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by this section and other provisions of law shall not be punished under more than one provision, but the penalty to be imposed shall be determined as set forth in Section 654.

## << CA ST § 32005 >>

32005. (a) Every person who is licensed as a manufacturer of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and who manufactures firearms in this state shall certify under penalty of perjury and any other remedy provided by law that every model, kind, class, style, or type of pistol, revolver, or other firearm capable of being concealed upon the person that the person manufactures is not an unsafe handgun as prohibited by Sections 31900 to 32110, inclusive.

(b) Every person who imports into the state for sale, keeps for sale, or offers or exposes for sale any firearm shall certify under penalty of perjury and any other remedy provided by law that every model, kind, class, style, or type of pistol, revolver, or other firearm capable of being concealed upon the person that the person imports, keeps, or exposes for sale is not an unsafe handgun as prohibited by Sections 31900 to 32110, inclusive.

## << CA ST § 32010 >>

32010. (a) Any pistol, revolver, or other firearm capable of being concealed upon the person manufactured in this state, imported into the state for sale, kept for sale, or offered or exposed for sale, shall be tested within a reasonable period of time by an independent laboratory certified pursuant to subdivision (b) to determine whether that pistol, revolver, or other firearm capable of being concealed upon the person meets or exceeds the standards defined in Section 31910.

(b) On or before October 1, 2000, the Department of Justice shall certify laboratories to verify compliance with the standards defined in Section 31910. The department may charge any laboratory that is seeking certification to test any pistol, revolver, or other firearm capable of being concealed upon the person pursuant to Sections 31900 to 32110, inclusive, a fee not exceeding the costs of certification.

(c) The certified testing laboratory shall, at the manufacturer's or importer's expense, test the firearm and submit a copy of the final test report directly to the Department of Justice along with a prototype of the weapon to be retained by the department. The

department shall notify the manufacturer or importer of its receipt of the final test report and the department's determination as to whether the firearm tested may be sold in this state.

(d)(1) Commencing January 1, 2006, no center-fire semiautomatic pistol may be submitted for testing pursuant to Sections 31900 to 32110, inclusive, if it does not have either a chamber load indicator, or a magazine disconnect mechanism if it has a detachable magazine.

(2) Commencing January 1, 2007, no center-fire semiautomatic pistol may be submitted for testing pursuant to Sections 31900 to 32110, inclusive, if it does not have both a chamber load indicator and a magazine disconnect mechanism.

(3) Commencing January 1, 2006, no rimfire semiautomatic pistol may be submitted for testing pursuant to Sections 31900 to 32110, inclusive, if it has a detachable magazine, and does not have a magazine disconnect mechanism.

<< CA ST § 32015 >>

32015. (a) On and after January 1, 2001, the Department of Justice shall compile, publish, and thereafter maintain a roster listing all of the pistols, revolvers, and other firearms capable of being concealed upon the person that have been tested by a certified testing laboratory, have been determined not to be unsafe handguns, and may be sold in this state pursuant to this part. The roster shall list, for each firearm, the manufacturer, model number, and model name.

(b)(1) The department may charge every person in this state who is licensed as a manufacturer of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code, and any person in this state who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, or offers or exposes for sale any pistol, revolver, or other firearm capable of being concealed upon the person in this state, an annual fee not exceeding the costs of preparing, publishing, and maintaining the roster pursuant to subdivision (a) and the costs of research and development, report analysis, firearms storage, and other program infrastructure costs necessary to implement Sections 31900 to 32110, inclusive.

(2) Any pistol, revolver, or other firearm capable of being concealed upon the person that is manufactured by a manufacturer who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, or offers or exposes for sale any pistol, revolver, or other firearm capable of being concealed upon the person in this state, and who fails to pay any fee required pursuant to paragraph (1), may be excluded from the roster.

(3) If a purchaser has initiated a transfer of a handgun that is listed on the roster as not unsafe, and prior to the completion of the transfer, the handgun is removed from the roster of not unsafe handguns because of failure to pay the fee required to keep that handgun listed on the roster, the handgun shall be deliverable to the purchaser if the purchaser is not otherwise prohibited from purchasing or possessing the handgun. However, if a purchaser has initiated a transfer of a handgun that is listed on the roster as not unsafe, and prior to the completion of the transfer, the handgun is removed from the roster pursuant to subdivision (d) of Section 32020, the handgun shall not be deliverable to the purchaser.

<< CA ST § 32020 >>

32020. (a) The Attorney General may annually retest up to 5 percent of the handgun models that are listed on the roster described in subdivision (a) of Section 32015.

(b) The retesting of a handgun model pursuant to subdivision (a) shall conform to the following:

(1) The Attorney General shall obtain from retail or wholesale sources, or both, three samples of the handgun model to be retested.

(2) The Attorney General shall select the certified laboratory to be used for the retesting.

(3) The ammunition used for the retesting shall be of a type recommended by the manufacturer in the user manual for the handgun. If the user manual for the handgun model makes no ammunition recommendation, the Attorney General shall select the ammunition to be used for the retesting. The ammunition shall be of the proper caliber for the handgun, commercially available, and in new condition.

(c) The retest shall be conducted in the same manner as the testing prescribed in Sections 31900 and 31905.

(d) If the handgun model fails retesting, the Attorney General shall remove the handgun model from the roster maintained pursuant to subdivision (a) of Section 32015.

<< CA ST § 32025 >>

32025. A handgun model removed from the roster pursuant to subdivision (d) of Section 32020 may be reinstated on the roster if all of the following are met:

(a) The manufacturer petitions the Attorney General for reinstatement of the handgun model.

(b) The manufacturer pays the Department of Justice for all of the costs related to the reinstatement testing of the handgun model, including the purchase price of the handguns, prior to reinstatement testing.

(c) The reinstatement testing of the handguns shall be in accordance with subdivisions (b) and (c) of Section 32020.

(d) The three handgun samples shall be tested only once for reinstatement. If the sample fails it may not be retested.

(e) If the handgun model successfully passes testing for reinstatement, and if the manufacturer of the handgun is otherwise in compliance with Sections 31900 to 32110, inclusive, the Attorney General shall reinstate the handgun model on the roster maintained pursuant to subdivision (a) of Section 32015.

(f) The manufacturer shall provide the Attorney General with the complete testing history for the handgun model.

(g) Notwithstanding subdivision (a) of Section 32020, the Attorney General may, at any time, further retest any handgun model that has been reinstated to the roster.

<< CA ST § 32030 >>

32030. (a) A firearm shall be deemed to satisfy the requirements of subdivision (a) of Section 32015 if another firearm made by the same manufacturer is already listed and the unlisted firearm differs from the listed firearm only in one or more of the following features:

(1) Finish, including, but not limited to, bluing, chrome-plating, oiling, or engraving.

(2) The material from which the grips are made.

(3) The shape or texture of the grips, so long as the difference in grip shape or texture does not in any way alter the dimensions, material, linkage, or functioning of the magazine well, the barrel, the chamber, or any of the components of the firing mechanism of the firearm.

(4) Any other purely cosmetic feature that does not in any way alter the dimensions, material, linkage, or functioning of the magazine well, the barrel, the chamber, or any of the components of the firing mechanism of the firearm.

(b) Any manufacturer seeking to have a firearm listed under this section shall provide to the Department of Justice all of the following:

(1) The model designation of the listed firearm.

(2) The model designation of each firearm that the manufacturer seeks to have listed under this section.

(3) A statement, under oath, that each unlisted firearm for which listing is sought differs from the listed firearm only in one or more of the ways identified in subdivision (a) and is in all other respects identical to the listed firearm.

(c) The department may, in its discretion and at any time, require a manufacturer to provide to the department any model for which listing is sought under this section, to determine whether the model complies with the requirements of this section.

pt. 6 t. 4 d. 10 ch. 4 art. 6 pr. § 32100

Article 6. Exceptions to Rules Governing Unsafe Handguns

<< CA ST § 32100 >>

32100. (a) Article 4 (commencing with Section 31900) and Article 5 (commencing with Section 32000) shall not apply to a single-action revolver that has at least a five-cartridge capacity with a barrel length of not less than three inches, and meets any of the following specifications:

(1) Was originally manufactured prior to 1900 and is a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations.

(2) Has an overall length measured parallel to the barrel of at least seven and one-half inches when the handle, frame or receiver, and barrel are assembled.

(3) Has an overall length measured parallel to the barrel of at least seven and one-half inches when the handle, frame or receiver, and barrel are assembled and that is currently approved for importation into the United States pursuant to the provisions of paragraph (3) of subsection (d) of Section 925 of Title 18 of the United States Code.

(b) Article 4 (commencing with Section 31900) and Article 5 (commencing with Section 32000) shall not apply to a single-shot pistol with a barrel length of not less than six inches and that has an overall length of at least 10 ½ inches when the handle, frame or receiver, and barrel are assembled.

<< CA ST § 32105 >>

32105. (a) The Legislature finds a significant public purpose in exempting pistols that are designed expressly for use in Olympic target shooting events. Therefore, those pistols that are sanctioned by the International Olympic Committee and by USA Shooting, the national governing body for international shooting competition in the United States, and that were used for

Olympic target shooting purposes as of January 1, 2001, and that fall within the definition of "unsafe handgun" pursuant to paragraph (3) of subdivision (b) of Section 31910 shall be exempt, as provided in subdivisions (b) and (c).

(b) Article 4 (commencing with Section 31900) and Article 5 (commencing with Section 32000) shall not apply to any of the following pistols, because they are consistent with the significant public purpose expressed in subdivision (a):

| MANUFACTURER | MODEL | CALIBER |
| --- | --- | --- |
| ANSCHUTZ | FP | .22LR |
| BENELLI | MP90 | .22LR |
| BENELLI | MP90 | .32 S&W LONG |
| BENELLI | MP95 | .22LR |
| BENELLI | MP95 | .32 S&W LONG |
| DRULOV | FP | .22LR |
| GREEN | ELECTROARM | .22LR |
| HAMMERLI | 100 | .22LR |
| HAMMERLI | 101 | .22LR |
| HAMMERLI | 102 | .22LR |
| HAMMERLI | 162 | .22LR |
| HAMMERLI | 280 | .22LR |
| HAMMERLI | 280 | .32 S&W LONG |
| HAMMERLI | FP10 | .22LR |
| HAMMERLI | MP33 | .22LR |
| HAMMERLI | SP20 | .22LR |
| HAMMERLI | SP20 | .32 S&W LONG |
| MORINI | CM102E | .22LR |
| MORINI | 22M | .22LR |
| MORINI | 32M | .32 S&W LONG |
| MORINI | CM80 | ..22LR |
| PARDINI | GP | .22 SHORT |
| PARDINI | GPO | .22 SHORT |
| PARDINI | GP–SCHUMANN | .22 SHORT |

| | | |
|---|---|---|
| PARDINI | HP | .32 S&W LONG |
| PARDINI | K22 | .22LR |
| PARDINI | MP | .32 S&W LONG |
| PARDINI | PGP75 | .22LR |
| PARDINI | SP | .22LR |
| PARDINI | SPE | .22LR |
| SAKO | FINMASTER | .22LR |
| STEYR | FP | .22LR |
| VOSTOK | IZH NO. 1 | .22LR |
| VOSTOK | MU55 | .22LR |
| VOSTOK | TOZ35 | .22LR |
| WALTHER | FP | .22LR |
| WALTHER | GSP | .22LR |
| WALTHER | GSP | .32 S&W LONG |
| WALTHER | OSP | .22 SHORT |
| WALTHER | OSP–2000 | .22 SHORT |

(c) The department shall create a program that is consistent with the purpose stated in subdivision (a) to exempt new models of competitive firearms from Article 4 (commencing with Section 31900) and Article 5 (commencing with Section 32000). The exempt competitive firearms may be based on recommendations by USA Shooting consistent with the regulations contained in the USA Shooting Official Rules or may be based on the recommendation or rules of any other organization that the department deems relevant.


<< CA ST § 32110 >>

32110. Article 4 (commencing with Section 31900) and Article 5 (commencing with Section 32000) shall not apply to any of the following:

(a) The sale, loan, or transfer of any firearm pursuant to Chapter 5 (commencing with Section 28050) of Division 6 in order to comply with Section 27545.

(b) The sale, loan, or transfer of any firearm that is exempt from the provisions of Section 27545 pursuant to any applicable exemption contained in Article 2 (commencing with Section 27600) or Article 6 (commencing with Section 27850) of Chapter 4 of Division 6, if the sale, loan, or transfer complies with the requirements of that applicable exemption to Section 27545.

(c) The sale, loan, or transfer of any firearm as described in paragraph (3) of subdivision (b) of Section 32000.

(d) The delivery of a pistol, revolver, or other firearm capable of being concealed upon the person to a person licensed pursuant to Sections 26700 to 26915, inclusive, for the purposes of the service or repair of that firearm.

(e) The return of a pistol, revolver, or other firearm capable of being concealed upon the person by a person licensed pursuant to Sections 26700 to 26915, inclusive, to its owner where that firearm was initially delivered in the circumstances set forth in subdivision (a), (d), (f), or (i).

(f) The delivery of a pistol, revolver, or other firearm capable of being concealed upon the person to a person licensed pursuant to Sections 26700 to 26915, inclusive, for the purpose of a consignment sale or as collateral for a pawnbroker loan.

(g) The sale, loan, or transfer of any pistol, revolver, or other firearm capable of being concealed upon the person listed as a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations.

(h) The sale, loan, or transfer of any semiautomatic pistol that is to be used solely as a prop during the course of a motion picture, television, or video production by an authorized participant therein in the course of making that production or event or by an authorized employee or agent of the entity producing that production or event.

(i) The delivery of a pistol, revolver, or other firearm capable of being concealed upon the person to a person licensed pursuant to Sections 26700 to 26915, inclusive, where the firearm is being loaned by the licensee to a consultant-evaluator.

(j) The delivery of a pistol, revolver, or other firearm capable of being concealed upon the person by a person licensed pursuant to Sections 26700 to 26915, inclusive, where the firearm is being loaned by the licensee to a consultant-evaluator.

(k) The return of a pistol, revolver, or other firearm capable of being concealed upon the person to a person licensed pursuant to Sections 26700 to 26915, inclusive, where it was initially delivered pursuant to subdivision (j).

pt. 6 t. 4 d. 10 ch. 5 pr. § 32310

Chapter 5. Large–Capacity Magazine

pt. 6 t. 4 d. 10 ch. 5 art. 1 pr. § 32310

Article 1. Rules Governing Large–Capacity Magazines

<< CA ST § 32310 >>

32310. Except as provided in Article 2 (commencing with Section 32400) of this chapter and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, commencing January 1, 2000, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, or lends, any large-capacity magazine is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 32315 >>

32315. Upon a showing that good cause exists, the Department of Justice may issue permits for the possession, transportation, or sale between a person licensed pursuant to Sections 26700 to 26915, inclusive, and an out-of-state client, of large-capacity magazines.

<< CA ST § 32390 >>

32390. Except as provided in Article 2 (commencing with Section 32400) of this chapter and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any large-capacity magazine is a nuisance and is subject to Section 18010.

pt. 6 t. 4 d. 10 ch. 5 art. 2 pr. § 32400

Article 2. Exceptions Relating Specifically to Large–Capacity Magazines

<< CA ST § 32400 >>

32400. Section 32310 does not apply to the sale of, giving of, lending of, importation into this state of, or purchase of, any large-capacity magazine to or by any federal, state, county, city and county, or city agency that is charged with the enforcement of any law, for use by agency employees in the discharge of their official duties, whether on or off duty, and where the use is authorized by the agency and is within the course and scope of their duties.

<< CA ST § 32405 >>

32405. Section 32310 does not apply to the sale to, lending to, transfer to, purchase by, receipt of, or importation into this state of, a large-capacity magazine by a sworn peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, who is authorized to carry a firearm in the course and scope of that officer's duties.

<< CA ST § 32410 >>

32410. Section 32310 does not apply to the sale or purchase of any large-capacity magazine to or by a person licensed pursuant to Sections 26700 to 26915, inclusive.

<< CA ST § 32415 >>

32415. Section 32310 does not apply to the loan of a lawfully possessed large-capacity magazine between two individuals if all of the following conditions are met:

(a) The person being loaned the large-capacity magazine is not prohibited by Chapter 1 (commencing with Section 29610), Chapter 2 (commencing with Section 29800), or Chapter 3 (commencing with Section 29900) of Division 9 of this title or Section 8100 or 8103 of the Welfare and Institutions Code from possessing firearms or ammunition.

(b) The loan of the large-capacity magazine occurs at a place or location where the possession of the large-capacity magazine is not otherwise prohibited, and the person who lends the large-capacity magazine remains in the accessible vicinity of the person to whom the large-capacity magazine is loaned.

<< CA ST § 32420 >>

32420. Section 32310 does not apply to the importation of a large-capacity magazine by a person who lawfully possessed the large-capacity magazine in the state prior to January 1, 2000, lawfully took it out of the state, and is returning to the state with the same large-capacity magazine.

<< CA ST § 32425 >>

32425. Section 32310 does not apply to either of the following:

(a) The lending or giving of any large-capacity magazine to a person licensed pursuant to Sections 26700 to 26915, inclusive, or to a gunsmith, for the purposes of maintenance, repair, or modification of that large-capacity magazine.

(b) The return to its owner of any large-capacity magazine by a person specified in subdivision (a).

<< CA ST § 32430 >>

32430. Section 32310 does not apply to the importation into this state of, or sale of, any large-capacity magazine by a person who has been issued a permit to engage in those activities pursuant to Section 32315, when those activities are in accordance with the terms and conditions of that permit.

<< CA ST § 32435 >>

32435. Section 32310 does not apply to any of the following:

(a) The sale of, giving of, lending of, importation into this state of, or purchase of, any large-capacity magazine, to or by any entity that operates an armored vehicle business pursuant to the laws of this state.

(b) The lending of large-capacity magazines by an entity specified in subdivision (a) to its authorized employees, while in the course and scope of employment for purposes that pertain to the entity's armored vehicle business.

(c) The return of those large-capacity magazines to the entity specified in subdivision (a) by those employees specified in subdivision (b).

<< CA ST § 32440 >>

32440. Section 32310 does not apply to any of the following:

(a) The manufacture of a large-capacity magazine for any federal, state, county, city and county, or city agency that is charged with the enforcement of any law, for use by agency employees in the discharge of their official duties, whether on or off duty, and where the use is authorized by the agency and is within the course and scope of their duties.

(b) The manufacture of a large-capacity magazine for use by a sworn peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, who is authorized to carry a firearm in the course and scope of that officer's duties.

(c) The manufacture of a large-capacity magazine for export or for sale to government agencies or the military pursuant to applicable federal regulations.

<< CA ST § 32445 >>

32445. Section 32310 does not apply to the loan of a large-capacity magazine for use solely as a prop for a motion picture, television, or video production.

<< CA ST § 32450 >>

32450. Section 32310 does not apply to the purchase of a large-capacity magazine by the holder of a special weapons permit issued pursuant to Section 31000, 32650, or 33300, or pursuant to Article 3 (commencing with Section 18900) of Chapter 1 of Division 5 of Title 2, or pursuant to Article 4 (commencing with Section 32700) of Chapter 6 of this division, for any of the following purposes:

(a) For use solely as a prop for a motion picture, television, or video production.

(b) For export pursuant to federal regulations.

(c) For resale to law enforcement agencies, government agencies, or the military, pursuant to applicable federal regulations.

pt. 6 t. 4 d. 10 ch. 6 pr. § 32610

Chapter 6. Machineguns

pt. 6 t. 4 d. 10 ch. 6 art. 1 pr. § 32610

Article 1. General Provisions

<< CA ST § 32610 >>

32610. Nothing in this chapter shall affect or apply to any of the following:

(a) The sale to, purchase by, or possession of machineguns by a police department, a sheriff's office, a marshal's office, a district attorney's office, the California Highway Patrol, the Department of Justice, the Department of Corrections for use by the department's Special Emergency Response Teams and Law Enforcement Liaison/Investigations Unit, or the military or naval forces of this state or of the United States for use in the discharge of their official duties, provided, however, that any sale to these entities be transacted by a person who is permitted pursuant to Section 32650 and licensed pursuant to Article 4 (commencing with Section 32700).

(b) The possession of machineguns by regular, salaried, full-time peace officer members of a police department, sheriff's office, marshal's office, district attorney's office, the California Highway Patrol, the Department of Justice, or the Department of Corrections for use by the department's Special Emergency Response Teams and Law Enforcement Liaison/Investigations Unit, when on duty and if the use is within the scope of their duties.

pt. 6 t. 4 d. 10 ch. 6 art. 2 pr. § 32625

Article 2. Unlawful Acts Relating to Machineguns

<< CA ST § 32625 >>

32625. (a) Any person, firm, or corporation, who within this state possesses or knowingly transports a machinegun, except as authorized by this chapter, is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison, or by a fine not to exceed ten thousand dollars ($10,000), or by both that fine and imprisonment.

(b) Any person, firm, or corporation who within this state intentionally converts a firearm into a machinegun, or who sells, or offers for sale, or knowingly manufactures a machinegun, except as authorized by this chapter, is punishable by imprisonment in the state prison for four, six, or eight years.

pt. 6 t. 4 d. 10 ch. 6 art. 3 pr. § 32650

Article 3. Permits

<< CA ST § 32650 >>

32650. The Department of Justice may issue permits for the possession, manufacture, and transportation or possession, manufacture, or transportation of machineguns, upon a satisfactory showing that good cause exists for the issuance of the permit to the applicant. No permit shall be issued to a person who is under 18 years of age.

<< CA ST § 32655 >>

32655. (a) An application for a permit under this article shall satisfy all of the following conditions:

(1) It shall be filed in writing.

(2) It shall be signed by the applicant if an individual, or by a member or officer qualified to sign if the applicant is a firm or corporation.

(3) It shall state the applicant's name.

(4) It shall state the business in which the applicant is engaged.

(5) It shall state the applicant's business address.

(6) It shall include a full description of the use to which the firearms are to be put.

(b) Applications and permits shall be uniform throughout the state on forms prescribed by the Department of Justice.

(c) Each applicant for a permit shall pay at the time of filing the application a fee determined by the Department of Justice. The fee shall not exceed the application processing costs of the Department of Justice.

(d) A permit granted pursuant to this article may be renewed one year from the date of issuance, and annually thereafter, upon the filing of a renewal application and the payment of a permit renewal fee, which shall not exceed the application processing costs of the Department of Justice.

(e) After the department establishes fees sufficient to reimburse the department for processing costs, fees charged shall increase at a rate not to exceed the legislatively approved annual cost-of-living adjustments for the department's budget.

<< CA ST § 32660 >>

32660. Every person, firm, or corporation to whom a permit is issued under this article shall keep it on the person or at the place where the firearms are kept. The permit shall be open to inspection by any peace officer or any other person designated by the authority issuing the permit.

<< CA ST § 32665 >>

32665. A permit issued in accordance with this chapter may be revoked by the issuing authority at any time, when it appears that the need for the firearms has ceased or that the holder of the permit has used the firearms for purposes other than those allowed by the permit or that the holder of the permit has not exercised great care in retaining custody of any weapons possessed under the permit.

<< CA ST § 32670 >>

32670. (a) Except as provided in subdivision (b), the Department of Justice shall, for every person, firm, or corporation to whom a permit is issued pursuant to this article, annually conduct an inspection for security and safe storage purposes, and to reconcile the inventory of machineguns.

(b) A person, firm, or corporation with an inventory of fewer than five devices that require any Department of Justice permit shall be subject to an inspection for security and safe storage purposes, and to reconcile inventory, once every five years, or more frequently if determined by the department.

pt. 6 t. 4 d. 10 ch. 6 art. 4 pr. § 32700

Article 4. Licenses to Sell Machineguns

<< CA ST § 32700 >>

32700. The Department of Justice may grant a license to permit the sale of machineguns at the place specified in the license, subject to all of the following conditions:

(a) The business shall be carried on only in the place designated in the license.

(b) The license or a certified copy of the license must be displayed on the premises in a place where it may easily be read.

(c) No machinegun shall be delivered to any person not authorized to receive the machinegun under the provisions of this chapter.

(d) A complete record must be kept of sales made under the authority of the license, showing the name and address of the purchaser, the descriptions and serial numbers of the weapons purchased, the number and date of issue of the purchaser's permit, if any, and the signature of the purchaser or purchasing agent. This record shall be open to the inspection of any peace officer or other person designated by the Attorney General.

<< CA ST § 32705 >>

32705. An application for a license under this article shall satisfy all of the following conditions:

(a) It shall be filed in writing.

(b) It shall be signed by the applicant if an individual, or by a member or officer qualified to sign if the applicant is a firm or corporation.

(c) It shall state the applicant's name.

(d) It shall state the business in which the applicant is engaged.

(e) It shall state the applicant's business address.

(f) It shall include a full description of the use to which the firearms are to be put.

<< CA ST § 32710 >>

32710. (a) Applications and licenses under this article shall be uniform throughout the state, on forms prescribed by the Department of Justice.

(b) A license under this article shall be effective for not more than one year from the date of issuance.

<< CA ST § 32715 >>

32715. (a) Each applicant for a license under this article shall pay at the time of filing the application a fee determined by the Department of Justice. The fee shall not exceed the application processing costs of the Department of Justice.

(b) A license granted pursuant to this article may be renewed one year from the date of issuance, and annually thereafter, upon the filing of a renewal application and the payment of a license renewal fee, which shall not exceed the application processing costs of the Department of Justice.

(c) After the department establishes fees sufficient to reimburse the department for processing costs, fees charged shall increase at a rate not to exceed the legislatively approved annual cost-of-living adjustments for the department's budget.

<< CA ST § 32720 >>

32720. Upon breach of any of the conditions stated in Section 32700, a license under this article shall be revoked.

pt. 6 t. 4 d. 10 ch. 6 art. 5 pr. § 32750

Article 5. Machinegun Constituting Nuisance

<< CA ST § 32750 >>

32750. (a) It shall be a public nuisance to possess any machinegun in violation of this chapter.

(b) The Attorney General, any district attorney, or any city attorney may bring an action before the superior court to enjoin the possession of any machinegun in violation of this chapter.

(c) Any machinegun found to be in violation of this chapter shall be surrendered to the Department of Justice. The department shall destroy the machinegun so as to render it unusable and unrepairable as a machinegun, except upon the filing of a certificate with the department by a judge or district attorney stating that the preservation of the machinegun is necessary to serve the ends of justice.

pt. 6 t. 4 d. 10 ch. 7 pr. § 32900

Chapter 7. Multiburst Trigger Activator

<< CA ST § 32900 >>

32900. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any multiburst trigger activator is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 32990 >>

32990. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any multiburst trigger activator is a nuisance and is subject to Section 18010.

pt. 6 t. 4 d. 10 ch. 8 pr. § 33210

Chapter 8. Short–Barreled Rifle or Short–Barreled Shotgun

pt. 6 t. 4 d. 10 ch. 8 art. 1 pr. § 33210

Article 1. Restrictions Relating to Short–Barreled Rifle or Short–Barreled Shotgun

<< CA ST § 33210 >>

33210. Except as expressly provided in Sections 33215 to 33225, inclusive, and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, and solely in accordance with those provisions, no person may manufacture, import into this state, keep for sale, offer for sale, give, lend, or possess any short-barreled rifle or short-barreled shotgun. Nothing else in any provision listed in Section 16580 shall be construed as authorizing the manufacture, importation into the state, keeping for sale, offering for sale, or giving, lending, or possession of any short-barreled rifle or short-barreled shotgun.

<< CA ST § 33215 >>

33215. Except as provided in Sections 33220 and 33225 and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any short-barreled rifle or short-barreled shotgun is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 33220 >>

33220. Section 33215 does not apply to either of the following:

(a) The sale to, purchase by, or possession of short-barreled rifles or short-barreled shotguns by a police department, sheriff's office, marshal's office, the California Highway Patrol, the Department of Justice, the Department of Corrections and Rehabilitation, or the military or naval forces of this state or of the United States, for use in the discharge of their official duties.

(b) The possession of short-barreled rifles and short-barreled shotguns by peace officer members of a police department, sheriff's office, marshal's office, the California Highway Patrol, the Department of Justice, or the Department of Corrections and Rehabilitation, when on duty and the use is authorized by the agency and is within the course and scope of their duties, and the officers have completed a training course in the use of these weapons certified by the Commission on Peace Officer Standards and Training.

<< CA ST § 33225 >>

33225. Section 33215 does not apply to the manufacture, possession, transportation, or sale of a short-barreled rifle or short-barreled shotgun, when authorized by the Department of Justice pursuant to Article 2 (commencing with Section 33300) and not in violation of federal law.

<< CA ST § 33290 >>

33290. Except as provided in Sections 33220 and 33225 and in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any short-barreled rifle or short-barreled shotgun is a nuisance and is subject to Section 18010.

pt. 6 t. 4 d. 10 ch. 8 art. 2 pr. § 33300

Article 2. Permit for Short–Barreled Rifle or Short–Barreled Shotgun

<< CA ST § 33300 >>

33300. (a) Upon a showing that good cause exists for issuance of a permit to the applicant, and if the Department of Justice finds that issuance of the permit does not endanger the public safety, the department may issue a permit for the manufacture, possession, transportation, or sale of short-barreled rifles or short-barreled shotguns. The permit shall be initially valid for a period of one year, and renewable annually thereafter. No permit shall be issued to a person who is under 18 years of age.

(b) Good cause, for the purposes of this section, shall be limited to only the following:

(1) The permit is sought for the manufacture, possession, or use with blank cartridges, of a short-barreled rifle or short-barreled shotgun, solely as a prop for a motion picture, television, or video production or entertainment event.

(2) The permit is sought for the manufacture of, exposing for sale, keeping for sale, sale of, importation or lending of short-barreled rifles or short-barreled shotguns to the entities listed in Section 33220 by persons who are licensed as dealers or manufacturers under the provisions of Chapter 53 (commencing with Section 5801) of Title 26 of the United States Code, as amended, and the regulations issued pursuant thereto.

<< CA ST § 33305 >>

33305. (a) An application for a permit under this article shall satisfy all of the following conditions:

(1) It shall be filed in writing.

(2) It shall be signed by the applicant if an individual, or by a member or officer qualified to sign if the applicant is a firm or corporation.

(3) It shall state the applicant's name.

(4) It shall state the business in which the applicant is engaged.

(5) It shall state the applicant's business address.

(6) It shall include a full description of the use to which the short-barreled rifles or short-barreled shotguns are to be put.

(b) Applications and permits shall be uniform throughout the state on forms prescribed by the Department of Justice.

(c) Each applicant for a permit shall pay at the time of filing the application a fee determined by the Department of Justice. The fee shall not exceed the application processing costs of the Department of Justice.

(d) A permit granted pursuant to this article may be renewed one year from the date of issuance, and annually thereafter, upon the filing of a renewal application and the payment of a permit renewal fee, which shall not exceed the application processing costs of the Department of Justice.

(e) After the department establishes fees sufficient to reimburse the department for processing costs, fees charged shall increase at a rate not to exceed the legislatively approved annual cost-of-living adjustments for the department's budget.

<< CA ST § 33310 >>

33310. (a) Every person, firm, or corporation to whom a permit is issued under this article shall keep it on the person or at the place where the short-barreled rifles or short-barreled shotguns are kept. The permit shall be open to inspection by any peace officer or any other person designated by the authority issuing the permit.

(b) Every short-barreled rifle or short-barreled shotgun possessed pursuant to the provisions of this article shall bear a unique identifying number. If a weapon does not bear a unique identifying number, the Department of Justice shall assign a number which shall be placed or stamped on that weapon.

<< CA ST § 33315 >>

33315. A permit issued in accordance with this article may be revoked by the issuing authority at any time, when it appears that the need for the short-barreled rifles or short-barreled shotguns has ceased or that the holder of the permit has used the short-barreled rifles or short-barreled shotguns for purposes other than those allowed by the permit or that the holder of the permit has not exercised great care in retaining custody of any weapons possessed under the permit.

<< CA ST § 33320 >>

33320. (a) Except as provided in subdivision (b), the Department of Justice shall, for every person, firm, or corporation to whom a permit is issued pursuant to this article, annually conduct an inspection for security and safe storage purposes, and to reconcile the inventory of short-barreled rifles and short-barreled shotguns.

(b) A person, firm, or corporation with an inventory of fewer than five devices that require any Department of Justice permit shall be subject to an inspection for security and safe storage purposes, and to reconcile inventory, once every five years, or more frequently if determined by the department.

pt. 6 t. 4 d. 10 ch. 9 pr. § 33410

Chapter 9. Silencers

<< CA ST § 33410 >>

33410. Any person, firm, or corporation who within this state possesses a silencer is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state prison or by a fine not to exceed ten thousand dollars ($10,000), or by both that fine and imprisonment.

<< CA ST § 33415 >>

33415. Section 33410 shall not apply to, or affect, any of the following:

(a) The sale to, purchase by, or possession of silencers by agencies listed in Section 830.1, or the military or naval forces of this state or of the United States, for use in the discharge of their official duties.

(b) The possession of silencers by regular, salaried, full-time peace officers who are employed by an agency listed in Section 830.1, or by the military or naval forces of this state or of the United States, when on duty and when the use of silencers is authorized by the agency and is within the course and scope of their duties.

(c) The manufacture, possession, transportation, or sale or other transfer of silencers to an entity described in subdivision (a) by dealers or manufacturers registered under Chapter 53 (commencing with Section 5801) of Title 26 of the United States Code and the regulations issued pursuant thereto.

pt. 6 t. 4 d. 10 ch. 10 pr. § 33600

Chapter 10. Zip Guns

<< CA ST § 33600 >>

33600. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any zip gun is punishable by imprisonment in a county jail not exceeding one year or in the state prison.

<< CA ST § 33690 >>

33690. Except as provided in Chapter 1 (commencing with Section 17700) of Division 2 of Title 2, any zip gun is a nuisance and is subject to Section 18010.

pt. 6 t. 4 d. 11 pr. § 33800

DIVISION 11. FIREARM IN CUSTODY OF COURT OR LAW ENFORCEMENT AGENCY OR SIMILAR SITUATION

pt. 6 t. 4 d. 11 ch. 1 pr. § 33800

Chapter 1. Procedure for Taking Firearm into Custody

<< CA ST § 33800 >>

33800. (a) When a firearm is taken into custody by a law enforcement officer, the officer shall issue the person who possessed the firearm a receipt describing the firearm, and listing any serial number or other identification on the firearm.

(b) The receipt shall indicate where the firearm may be recovered, any applicable time limit for recovery, and the date after which the owner or possessor may recover the firearm pursuant to Chapter 2 (commencing with Section 33850).

(c) Nothing in this section is intended to displace any existing law regarding the seizure or return of firearms.

pt. 6 t. 4 d. 11 ch. 2 pr. § 33850

Chapter 2. Return or Transfer of Firearm in Custody or Control of Court or Law Enforcement Agency

<< CA ST § 33850 >>

33850. (a) Any person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned shall make application for a determination by the Department of Justice as to whether the applicant is eligible to possess a firearm. The application shall include the following:

(1) The applicant's name, date and place of birth, gender, telephone number, and complete address.

(2) Whether the applicant is a United States citizen. If the applicant is not a United States citizen, the application shall also include the applicant's country of citizenship and the applicant's alien registration or I–94 number.

(3) If the firearm is a handgun, the firearm's make, model, caliber, barrel length, handgun type, country of origin, and serial number.

(4) For residents of California, the applicant's valid California driver's license number or valid California identification card number issued by the Department of Motor Vehicles. For nonresidents of California, a copy of the applicant's military identification with orders indicating that the individual is stationed in California, or a copy of the applicant's valid driver's license from the applicant's state of residence, or a copy of the applicant's state identification card from the applicant's state of residence. Copies of the documents provided by non-California residents shall be notarized.

(5) The name of the court or law enforcement agency holding the firearm.

(6) The signature of the applicant and the date of signature.

(7) Any person furnishing a fictitious name or address or knowingly furnishing any incorrect information or knowingly omitting any information required to be provided for the application, including any notarized information pursuant to paragraph (4), shall be guilty of a misdemeanor.

(b) A person who owns a firearm that is in the custody of a court or law enforcement agency and who does not wish to obtain possession of the firearm, and the firearm is an otherwise legal firearm, and the person otherwise has right to title of the firearm, shall be entitled to sell or transfer title of the firearm to a licensed dealer.

(c) Any person furnishing a fictitious name or address, or knowingly furnishing any incorrect information or knowingly omitting any information required to be provided for the application, including any notarized information pursuant to paragraph (4) of subdivision (a), is punishable as a misdemeanor.

<< CA ST § 33855 >>

33855. No law enforcement agency or court that has taken custody of any firearm may return the firearm to any individual unless the following requirements are satisfied:

(a) The individual presents to the agency or court notification of a determination by the department pursuant to Section 33865 that the person is eligible to possess firearms.

(b) If the agency or court has direct access to the Automated Firearms System, the agency or court has verified that the firearm is not listed as stolen pursuant to Section 11108, and that the firearm has been recorded in the Automated Firearms System in the name of the individual who seeks its return.

(c) If the firearm has been reported lost or stolen pursuant to Section 11108, a law enforcement agency shall notify the owner or person entitled to possession pursuant to Section 11108.5. However, that person shall provide proof of eligibility to possess a firearm pursuant to Section 33865.

(d) Nothing in this section shall prevent the local law enforcement agency from charging the rightful owner or person entitled to possession of the firearm the fees described in Section 33880. However, an individual who is applying for a background check to retrieve a firearm that came into the custody or control of a court or law enforcement agency pursuant to Section 33850 shall be exempt from the fees in Section 33860, provided that the court or agency determines the firearm was reported stolen to a law enforcement agency prior to the date the firearm came into custody or control of the court or law enforcement agency, or within five business days of the firearm being stolen from its owner. The court or agency shall notify the Department of Justice of this fee exemption in a manner prescribed by the department.


<< CA ST § 33860 >>

33860. (a) The Department of Justice shall establish a fee of twenty dollars ($20) per request for return of a firearm, plus a three-dollar ($3) charge for each additional handgun being processed as part of the request to return a firearm, to cover its costs for processing firearm clearance determinations submitted pursuant to this chapter.

(b) The fees collected pursuant to subdivision (a) shall be deposited into the Dealers' Record of Sale Special Account.

(c) The department may increase the fee by using the California Consumer Price Index as compiled and reported by the California Department of Industrial Relations to determine an annual rate of increase. Any fee increase shall be rounded to the nearest dollar.


<< CA ST § 33865 >>

33865. (a) When the Department of Justice receives a completed application pursuant to Section 33850 accompanied by the fee required pursuant to Section 33860, it shall conduct an eligibility check of the applicant to determine whether the applicant is eligible to possess a firearm.

(b) The department shall have 30 days from the date of receipt to complete the background check, unless the background check is delayed by circumstances beyond the control of the department. The applicant may contact the department to inquire about the reason for a delay.

(c) If the department determines that the applicant is eligible to possess the firearm, the department shall provide the applicant with written notification that includes the following:

(1) The identity of the applicant.

(2) A statement that the applicant is eligible to possess a firearm.

(3) If the firearm is a handgun, a description of the handgun by make, model, and serial number.

(d) If the firearm is a handgun, the department shall enter a record of the handgun into the Automated Firearms System.

(e) If the department denies the application, and the firearm is an otherwise legal firearm, the department shall notify the applicant of the denial and provide a form for the applicant to use to sell or transfer the firearm to a licensed dealer. The applicant may contact the department to inquire about the reason for the denial.

<< CA ST § 33870 >>

33870. (a) If a law enforcement agency determines that the applicant is the legal owner of any firearm deposited with the agency, that the applicant is prohibited from possessing any firearm, and that the firearm is an otherwise legal firearm, the applicant shall be entitled to sell or transfer the firearm to a licensed dealer.

(b) If the firearm has been lost or stolen, the firearm shall be restored to the lawful owner pursuant to Section 11108.5 upon the owner's identification of the firearm, proof of ownership, and proof of eligibility to possess a firearm pursuant to Section 33865.

(c) Nothing in this section shall prevent the local law enforcement agency from charging the rightful owner of the firearm the fees described in Section 33880.

<< CA ST § 33875 >>

33875. Notwithstanding any other provision of law, no law enforcement agency or court shall be required to retain a firearm for more than 180 days after the owner of the firearm has been notified by the court or law enforcement agency that the firearm has been made available for return. An unclaimed firearm may be disposed of after the 180–day period has expired.

<< CA ST § 33880 >>

33880. (a) A city, county, or city and county, or a state agency may adopt a regulation, ordinance, or resolution imposing a charge equal to its administrative costs relating to the seizure, impounding, storage, or release of a firearm.

(b) The fee under subdivision (a) shall not exceed the actual costs incurred for the expenses directly related to taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner.

(c) The administrative costs described in subdivisions (a) and (b) may be waived by the local or state agency upon verifiable proof that the firearm was reported stolen at the time the firearm came into the custody or control of the law enforcement agency.

(d) The following apply to any charges imposed for administrative costs pursuant to this section:

(1) The charges shall only be imposed on the person claiming title to the firearm.

(2) Any charges shall be collected by the local or state authority only from the person claiming title to the firearm.

(3) The charges shall be in addition to any other charges authorized or imposed pursuant to this code.

(4) No charge may be imposed for any hearing or appeal relating to the removal, impound, storage, or release of a firearm, unless that hearing or appeal was requested in writing by the legal owner of the firearm. In addition, the charge may be imposed only upon the person requesting that hearing or appeal.

(e) No costs for any hearing or appeal related to the release of a firearm shall be charged to the legal owner who redeems the firearm, unless the legal owner voluntarily requests the post-storage hearing or appeal. No city, county, city and county, or state agency shall require a legal owner to request a post-storage hearing as a requirement for release of the firearm to the legal owner.

<< CA ST § 33885 >>

33885. In a proceeding for the return of a firearm seized and not returned pursuant to this chapter, where the defendant or cross-defendant is a law enforcement agency, the court shall award reasonable attorney's fees to the prevailing party.

<< CA ST § 33890 >>

33890. Notwithstanding Section 11106, the Department of Justice may retain personal information about an applicant in connection with a claim under this chapter for a firearm that is not a handgun, to allow for law enforcement confirmation of compliance with this chapter. The information retained may include personal identifying information regarding the individual applying for the clearance, but may not include information that identifies any particular firearm that is not a handgun.

<< CA ST § 33895 >>

33895. Section 27545 does not apply to deliveries, transfers, or returns of firearms made pursuant to this chapter.

pt. 6 t. 4 d. 11 ch. 3 pr. § 34000

Chapter 3. Firearms that are Unclaimed, Abandoned, or Subject to Destruction

<< CA ST § 34000 >>

34000. (a) Notwithstanding any provision of law or of any local ordinance to the contrary, when any firearm is in the possession of any officer of the state, or of a county, city, or city and county, or of any campus of the University of California or the California State University, and the firearm is an exhibit filed in any criminal action or proceeding which is no longer needed or is unclaimed or abandoned property, which has been in the possession of the officer for at least 180 days, the firearm shall be sold, or destroyed, as provided for in Sections 18000 and 18005.

(b) This section does not apply to any firearm in the possession of the Department of Fish and Game, or which was used in the violation of any provision in the Fish and Game Code, or any regulation under that code.

<< CA ST § 34005 >>

34005. (a)(1) An officer having custody of any firearm that may be useful to the California National Guard, the Coast Guard Auxiliary, or to any military or naval agency of the federal or state government, including, but not limited to, the California National Guard military museum and resource center, may, upon the authority of the legislative body of the city, city and county, or county by which the officer is employed and the approval of the Adjutant General, deliver the firearm to the commanding officer of a unit of the California National Guard, the Coast Guard Auxiliary, or any other military agency of the state or federal government, in lieu of destruction as required by any of the provisions listed in Section 16580.

(2) The officer delivering a firearm pursuant to this subdivision shall take a receipt for it, which contains a complete description of the firearm, and shall keep the receipt on file in his or her office as a public record.

(b) Any law enforcement agency that has custody of any firearms, or any parts of any firearms, which are subject to destruction as required by any of the provisions listed in Section 16580, may, in lieu of destroying the weapons, retain and use any of them as may be useful in carrying out the official duties of the agency. Alternatively, upon approval of a court, the agency may do either of the following:

(1) Release the weapons to any other law enforcement agency for use in carrying out the official duties of that agency.

(2) Turn over to the criminalistics laboratory of the Department of Justice or the criminalistics laboratory of a police department, sheriff's office, or district attorney's office, any weapons that may be useful in carrying out the official duties of the respective agencies.

(c)(1) Any firearm, or part of any firearm, which, rather than being destroyed, is used for official purposes pursuant to this section, shall be destroyed by the agency using the weapon when it is no longer needed by the agency for use in carrying out its official duties.

(2) Firearms or weaponry donated to the California National Guard military museum and resource center may be disposed of pursuant to Section 179 of the Military and Veterans Code.

(d)(1) Any law enforcement agency that has custody of any firearms, or any parts of any firearms, which are subject to destruction as required by any of the provisions listed in Section 16580, may, in lieu of destroying the firearms, obtain an order from the superior court directing the release of the firearms to the sheriff.

(2) The sheriff shall enter those weapons into the Automated Firearms System (AFS), via the California Law Enforcement Telecommunications System, with a complete description of each weapon, including the make, type, category, caliber, and serial number of the firearms, and the name of the academy receiving the weapon entered into the AFS miscellaneous field.

(3) The sheriff shall then release the firearms to the basic training academy certified by the Commission on Peace Officer Standards and Training, so that the firearms may be used for instructional purposes in the certified courses. All firearms released to an academy shall be under the care, custody, and control of the particular academy.

(4) Any firearm, or part of any firearm, which is not destroyed, and is used for the purposes authorized by this section, shall be returned to the law enforcement agency that had original custody of the firearm when it is no longer needed by the basic training academy, or when the basic training academy is no longer certified by the commission.

(5) When those firearms are returned, the law enforcement agency to which the firearms are returned, shall on the date of the return, enter into the Automated Firearms System (AFS), via the California Law Enforcement Telecommunications System, a complete description of each weapon, including the make, type, category, caliber, and serial number of the firearms, and the name of the entity returning the firearm.

<< CA ST § 34010 >>

34010. Any law enforcement agency that retains custody of any firearm pursuant to Section 34005, or that destroys a firearm pursuant to Sections 18000 and 18005, shall notify the Department of Justice of the retention or destruction. This notification shall consist of a complete description of each firearm, including the name of the manufacturer or brand name, model, caliber, and serial number.

pt. 6 t. 4 d. 12 pr. § 34200

DIVISION 12. MISCELLANEOUS DUTIES OF THE DEPARTMENT OF JUSTICE

pt. 6 t. 4 d. 12 ch. 1 pr. § 34200

Chapter 1. Miscellaneous Reports and Publications

<< CA ST § 34200 >>

34200. The Attorney General shall provide the Legislature on or before April 15 of each year, commencing in 1998, a written report on the specific types of firearms used in the commission of crimes based upon information obtained from state and local crime laboratories. The report shall include all of the following information regarding crimes in which firearms were used:

(a) A description of the relative occurrence of firearms most frequently used in the commission of violent crimes, distinguishing whether the firearms used were handguns, rifles, shotguns, assault weapons, or other related types of weapons.

(b) A description of specific types of firearms that are used in homicides or street gang and drug trafficking crimes.

(c) The frequency with which stolen firearms were used in the commission of the crimes.

(d) The frequency with which fully automatic firearms were used in the commission of the crimes.

(e) Any trends of importance such as those involving specialized ammunition or firearms modifications, such as conversion to a fully automatic weapon, removal of serial number, shortening of barrel, or use of a suppressor.

<< CA ST § 34205 >>

34205. (a) The Department of Justice shall prepare a pamphlet that summarizes California firearms laws as they pertain to persons other than law enforcement officers or members of the armed services.

(b) The pamphlet shall include the following matters:

(1) Lawful possession.

(2) Licensing procedures.

(3) Transportation and use of firearms.

(4) Acquisition of hunting licenses.

(5) The safe handling and use of firearms.

(6) Various methods of safe storage and child proofing of firearms.

(7) The availability of firearms safety programs and devices.

(8) The responsibilities of firearms ownership.

(9) The operation of various types of firearms.

(10) The lawful use of deadly force.

(c) The department shall offer copies of the pamphlet at actual cost to firearms dealers licensed pursuant to Sections 26700 to 26915, inclusive, who shall have copies of the most current version available for sale to retail purchasers or transferees of firearms. The cost of the pamphlet, if any, may be added to the sale price of the firearm. Other interested parties may purchase copies directly from the Department of General Services.

(d) The pamphlet shall declare that it is merely intended to provide a general summary of laws applicable to firearms and is not designed to provide individual guidance for specific areas. Individuals having specific questions shall be directed to contact their local law enforcement agency or private counsel.

(e) The Department of Justice or any other public entity shall be immune from any liability arising from the drafting, publication, or dissemination of the pamphlet or any reliance upon it. All receipts from the sale of these pamphlets shall be deposited as reimbursements to the support appropriation for the Department of Justice.

pt. 6 t. 4 d. 12 ch. 2 pr. § 34350

Chapter 2. Ballistics Identification System

<< CA ST § 34350 >>

34350. (a) The Attorney General shall conduct a study to evaluate ballistics identification systems to determine the feasibility and potential benefits to law enforcement of utilizing a statewide ballistics identification system capable of maintaining a database of ballistic images and information from test fired and sold firearms. The study shall include an evaluation of ballistics identification systems currently used by state and federal law enforcement agencies and the firearms industry. The Attorney General shall consult with law enforcement agencies, firearms industry representatives, private technology providers, and other appropriate parties in conducting the study.

(b) In evaluating ballistics identification systems to determine the feasibility of utilizing a statewide system as required pursuant to subdivision (a), the Attorney General shall consider, at a minimum, the following:

(1) The development of methods by which firearm manufacturers, importers, and dealers may potentially capture ballistic images from firearms prior to sale in California and forward that information to the Attorney General.

(2) The development of methods by which the Attorney General will receive, store, and make available to law enforcement ballistic images submitted by firearm manufacturers, importers, and dealers prior to sale in California.

(3) The potential financial costs to the Attorney General of implementing and operating a statewide ballistics identification system, including the process for receipt of information from firearm manufacturers, importers, and dealers.

(4) The capability of a ballistics identification system maintaining a database of ballistic images and information from test fired firearms for all firearms sold in California.

(5) The compatibility of a ballistics identification system with ballistics identification systems that are currently used by law enforcement agencies in California.

(6) A method to ensure that state and local law enforcement agencies can forward ballistic identification information to the Attorney General for inclusion in a statewide ballistics identification system.

(7) The feasibility and potential benefits to law enforcement of requiring firearm manufacturers, importers, and dealers to provide the Attorney General with ballistic images from any, or a selected number of, test fired firearms prior to the sale of those firearms in California.

(c) The Attorney General shall submit a report to the Legislature with the results of the study not later than June 1, 2001. In the event the report includes a determination that a ballistics identification system and database is feasible and would benefit law enforcement, the report shall also recommend a strategy for implementation.

<< CA ST § 34355 >>

34355. (a) Section 34350 does not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 34360 >>

34360. Section 34350 does not apply to the loan of a firearm if all of the following conditions are satisfied:

(a) The loan is made by an authorized law enforcement representative of a city, county, or city and county, or of the state or federal government.

(b) The loan is made to a peace officer employed by that agency and authorized to carry a firearm.

(c) The loan is made for the carrying and use of that firearm by that peace officer in the course and scope of the officer's duties.

<< CA ST § 34365 >>

34365. (a) Section 34350 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

<< CA ST § 34370 >>

34370. (a) Section 34350 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.01. Section 12021.5 is added to the Penal Code, to read:

<< CA ST § 12021.5 >>

12021.5. (a) Every person who carries a loaded or unloaded firearm on his or her person, or in a vehicle, during the commission or attempted commission of any street gang crimes described in subdivision (a) or (b) of Section 186.22, shall, upon conviction of the felony or attempted felony, be punished by an additional term of imprisonment in the state prison for one, two, or three years in the court's discretion. The court shall impose the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of sentence.

(b) Every person who carries a loaded or unloaded firearm together with a detachable shotgun magazine, a detachable pistol magazine, a detachable magazine, or a belt-feeding device on his or her person, or in a vehicle, during the commission or attempted commission of any street gang crimes described in subdivision (a) or (b) of Section 186.22, shall, upon conviction of the felony or attempted felony, be punished by an additional term of imprisonment in the state prison for two, three, or four years in the court's discretion. The court shall impose the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of sentence.

(c) As used in this section, the following definitions shall apply:

(1) "Detachable magazine" means a device that is designed or redesigned to do all of the following:

(A) To be attached to a rifle that is designed or redesigned to fire ammunition.

(B) To be attached to, and detached from, a rifle that is designed or redesigned to fire ammunition.

(C) To feed ammunition continuously and directly into the loading mechanism of a rifle that is designed or redesigned to fire ammunition.

(2) "Detachable pistol magazine" means a device that is designed or redesigned to do all of the following:

(A) To be attached to a semiautomatic firearm that is not a rifle or shotgun that is designed or redesigned to fire ammunition.

(B) To be attached to, and detached from, a firearm that is not a rifle or shotgun that is designed or redesigned to fire ammunition.

(C) To feed ammunition continuously and directly into the loading mechanism of a firearm that is not a rifle or a shotgun that is designed or redesigned to fire ammunition.

(3) "Detachable shotgun magazine" means a device that is designed or redesigned to do all of the following:

(A) To be attached to a firearm that is designed or redesigned to fire a fixed shotgun shell through a smooth or rifled bore.

(B) To be attached to, and detached from, a firearm that is designed or redesigned to fire a fixed shotgun shell through a smooth bore.

(C) To feed fixed shotgun shells continuously and directly into the loading mechanism of a firearm that is designed or redesigned to fire a fixed shotgun shell.

(4) "Belt–feeding device" means a device that is designed or redesigned to continuously feed ammunition into the loading mechanism of a machinegun or a semiautomatic firearm.

(5) "Rifle" shall have the same meaning as specified in Section 17090.

(6) "Shotgun" shall have the same meaning as specified in Section 17190.

(d) This section shall become operative on January 1, 2012.


SEC. 6.02. Section 12022.2 is added to the Penal Code, to read:

<< CA ST § 12022.2 >>

12022.2. (a) Any person who, while armed with a firearm in the commission or attempted commission of any felony, has in his or her immediate possession ammunition for the firearm designed primarily to penetrate metal or armor, shall upon conviction of that felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony, be punished by an additional term of 3, 4, or 10 years. The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of the sentence.

(b) Any person who wears a body vest in the commission or attempted commission of a violent offense, as defined in Section 29905, shall, upon conviction of that felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one, two, or five years. The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record at the time of the sentence.

(c) As used in this section, "body vest" means any bullet-resistant material intended to provide ballistic and trauma protection for the wearer.

(d) This section shall become operative on January 1, 2012.


SEC. 6.03. Section 12022.4 is added to the Penal Code, to read:

<< CA ST § 12022.4 >>

12022.4. (a) Any person who, during the commission or attempted commission of a felony, furnishes or offers to furnish a firearm to another for the purpose of aiding, abetting, or enabling that person or any other person to commit a felony shall, in addition and consecutive to the punishment prescribed by the felony or attempted felony of which the person has been convicted, be punished by an additional term of one, two, or three years in the state prison. The court shall order the middle term unless there are circumstances in aggravation or mitigation. The court shall state the reasons for its enhancement choice on the record

at the time of the sentence. The additional term provided in this section shall not be imposed unless the fact of the furnishing is charged in the accusatory pleading and admitted or found to be true by the trier of fact.

(b) This section shall become operative on January 1, 2012.

SEC. 6.04. Section 16520 is added to the Penal Code, to read:

<< CA ST § 16520 >>

16520. (a) As used in this part, "firearm" means any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion.

(b) As used in the following provisions, "firearm" includes the frame or receiver of the weapon:

(1) Section 16550.

(2) Section 16730.

(3) Section 16960.

(4) Section 16990.

(5) Section 17070.

(6) Section 17310.

(7) Sections 26500 to 26588, inclusive.

(8) Sections 26600 to 27140, inclusive.

(9) Sections 27400 to 28000, inclusive.

(10) Section 28100.

(11) Sections 28400 to 28415, inclusive.

(12) Sections 29010 to 29150, inclusive.

(13) Sections 29610 to 29750, inclusive.

(14) Sections 29800 to 29905, inclusive.

(15) Sections 30150 to 30165, inclusive.

(16) Section 31615.

(17) Sections 31705 to 31830, inclusive.

(18) Sections 34355 to 34370, inclusive.

(19) Sections 8100, 8101, and 8103 of the Welfare and Institutions Code.

(c) As used in the following provisions, "firearm" also includes any rocket, rocket propelled projectile launcher, or similar device containing any explosive or incendiary material whether or not the device is designed for emergency or distress signaling purposes:

(1) Section 16750.

(2) Subdivision (b) of Section 16840.

(3) Section 25400.

(4) Sections 25850 to 26025, inclusive.

(5) Subdivisions (a), (b), and (c) of Section 26030.

(6) Sections 26035 to 26055, inclusive.

(d) As used in the following provisions, "firearm" does not include an unloaded antique firearm:

(1) Subdivisions (a) and (c) of Section 16730.

(2) Section 16550.

(3) Section 16960.

(4) Section 17310.

(5) Chapter 6 (commencing with Section 26350) of Division 5 of Title 4.

(6) Sections 26500 to 26588, inclusive.

(7) Sections 26700 to 26915, inclusive.

(8) Section 27510.

(9) Section 27530.

(10) Section 27540.

(11) Section 27545.

(12) Sections 27555 to 27570, inclusive.

(13) Sections 29010 to 29150, inclusive.

(e) As used in Sections 34005 and 34010, "firearm" does not include a destructive device.

(f) As used in Sections 17280 and 24680, "firearm" has the same meaning as in Section 922 of Title 18 of the United States Code.

(g) As used in Sections 29010 to 29150, inclusive, "firearm" includes the unfinished frame or receiver of a weapon that can be readily converted to the functional condition of a finished frame or receiver.

SEC. 6.045. Section 16650 is added to the Penal Code, to read:

<< CA ST § 16650 >>

16650. (a) As used in this part, "handgun ammunition" means any variety of ammunition in the following calibers, notwithstanding that the ammunition may also be used in some rifles:

(1) .22.

(2) .25.

(3) .32.

(4) .38.

(5) .9mm.

(6) .10mm.

(7) .40.

(8) .41.

(9) .44.

(10) .45.

(11) 5.7x28mm.

(12) .223.

(13) .357.

(14) .454.

(15) 5.56x45mm.

(16) 7.62x39.

(17) 7.63mm.

(18) 7.65mm.

(19) .50.

(b) As used in the part, "handgun ammunition" does not include either of the following:

(1) Ammunition designed and intended to be used in an antique firearm.

(2) Blanks.

SEC. 6.05. Section 16840 is added to the Penal Code, to read:

<< CA ST § 16840 >>

16840. (a) As used in Section 25800, a firearm shall be deemed to be "loaded" whenever both the firearm and the unexpended ammunition capable of being discharged from the firearm are in the immediate possession of the same person.

(b) As used in Chapter 2 (commencing with Section 25100) of Division 4 of Title 4, in subparagraph (A) of paragraph (6) of subdivision (b) of Section 25400, and in Sections 25850 to 26055, inclusive:

(1) A firearm shall be deemed to be "loaded" when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm.

(2) Notwithstanding paragraph (1), a muzzle-loader firearm shall be deemed to be loaded when it is capped or primed and has a powder charge and ball or shot in the barrel or cylinder.

SEC. 6.06. Section 17000 is added to the Penal Code, to read:

<< CA ST § 17000 >>

17000. (a) As used in this part, "personal handgun importer" means an individual who meets all of the following criteria:

(1) The individual is not a person licensed pursuant to Sections 26700 to 26915, inclusive.

(2) The individual is not a licensed manufacturer of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code.

(3) The individual is not a licensed importer of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(4) The individual is the owner of a handgun.

(5) The individual acquired that handgun outside of California.

(6) The individual moved into this state on or after January 1, 1998, as a resident of this state.

(7) The individual intends to possess that handgun within this state on or after January 1, 1998.

(8) The handgun was not delivered to the individual by a person licensed pursuant to Sections 26700 to 26915, inclusive, who delivered that handgun following the procedures set forth in Section 27540 and Sections 26700 to 26915, inclusive.

(9) The individual, while a resident of this state, had not previously reported ownership of that handgun to the Department of Justice in a manner prescribed by the department that included information concerning the individual and a description of the firearm.

(10) The handgun is not a firearm that is prohibited by any provision listed in Section 16590.

(11) The handgun is not an assault weapon.

(12) The handgun is not a machinegun.

(13) The person is 18 years of age or older.

(b) For purposes of paragraph (6) of subdivision (a):

(1) Except as provided in paragraph (2), residency shall be determined in the same manner as is the case for establishing residency pursuant to Section 12505 of the Vehicle Code.

(2) In the case of a member of the Armed Forces of the United States, residency shall be deemed to be established when the individual was discharged from active service in this state.

SEC. 6.07. Section 17000 is added to the Penal Code, to read:

<< CA ST § 17000 >>

17000. (a) As used in this part, until July 1, 2012, any reference to the term "personal firearm importer" shall be deemed to mean "personal handgun importer" and, on and after July 1, 2012, any reference to the term "personal handgun importer" shall be deemed to mean "personal firearm importer." A "personal handgun importer," until July 1, 2012, and commencing July 1, 2012, a "personal firearm importer" means an individual who meets all of the following criteria:

(1) The individual is not a person licensed pursuant to Sections 26700 to 26915, inclusive.

(2) The individual is not a licensed manufacturer of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code.

(3) The individual is not a licensed importer of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(4) The individual is the owner of a firearm.

(5) The individual acquired that firearm outside of California.

(6) The individual moved into this state on or after January 1, 1998, in the case of a handgun, or in the case of a firearm that is not a handgun, on or after July 1, 2012, as a resident of this state.

(7) The individual intends to possess that handgun within this state on or after January 1, 1998, or in the case of a firearm that is not a handgun, the individual intends to possess that firearm within this state on or after July 1, 2012.

(8) The firearm was not delivered to the individual by a person licensed pursuant to Sections 26700 to 26915, inclusive, who delivered that firearm following the procedures set forth in Section 27540 and Sections 26700 to 26915, inclusive.

(9) The individual, while a resident of this state, had not previously reported ownership of that firearm to the Department of Justice in a manner prescribed by the department that included information concerning the individual and a description of the firearm.

(10) The firearm is not a firearm that is prohibited by any provision listed in Section 16590.

(11) The firearm is not an assault weapon.

(12) The firearm is not a machinegun.

(13) The person is 18 years of age or older.

(b) For purposes of paragraph (6) of subdivision (a):

(1) Except as provided in paragraph (2), residency shall be determined in the same manner as is the case for establishing residency pursuant to Section 12505 of the Vehicle Code.

(2) In the case of a member of the Armed Forces of the United States, residency shall be deemed to be established when the individual was discharged from active service in this state.

SEC. 6.08. Section 17040 is added to the Penal Code, to read:

<< CA ST § 17040 >>

17040. As used in Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, "public place" has the same meaning as in Section 25850.

SEC. 6.09. Section 17295 is added to the Penal Code, to read:

<< CA ST § 17295 >>

17295. For purposes of Chapter 6 (commencing with Section 26350) of Division 5 of Title 4, a handgun shall be deemed "unloaded" if it is not "loaded" within the meaning of subdivision (b) of Section 16840.

SEC. 6.10. Section 17510 is added to the Penal Code, to read:

<< CA ST § 17510 >>

17510. (a) Any person who does any of the following acts while engaged in picketing, or other informational activities in a public place relating to a concerted refusal to work, is guilty of a misdemeanor:

(1) Carries concealed upon the person, or within any vehicle which is under the person's control or direction, any handgun.

(2) Carries a loaded firearm upon the person or within any vehicle that is under the person's control or direction.

(3) Carries a deadly weapon.

(4) Openly carries an unloaded handgun upon the person outside of a vehicle.

(b) This section shall not be construed to authorize or ratify any picketing or other informational activities not otherwise authorized by law.

(c) The following provisions shall not be construed to authorize any conduct described in paragraph (1) of subdivision (a):

(1) Article 2 (commencing with Section 25450) of Chapter 2 of Division 5 of Title 4.

(2) Sections 25615 to 25655, inclusive.

(d) Sections 25900 to 26020, inclusive, shall not be construed to authorize any conduct described in paragraph (2) of subdivision (a).

(e) Article 2 (commencing with Section 26361) of Chapter 6 of Division 5 of Title 4 shall not be construed to authorize any conduct described in paragraph (4) of subdivision (a).

SEC. 6.11. Section 22295 is added to the Penal Code, to read:

<< CA ST § 22295 >>

22295. (a) Nothing in any provision listed in Section 16580 prohibits any police officer, special police officer, peace officer, or law enforcement officer from carrying any wooden club or baton.

(b) Nothing in any provision listed in Section 16580 prohibits a uniformed security guard, regularly employed and compensated by a person engaged in any lawful business, while actually employed and engaged in protecting and preserving property or life within the scope of employment, from carrying any wooden club or baton if the uniformed security guard has satisfactorily completed a course of instruction certified by the Department of Consumer Affairs in the carrying and use of the club or baton. The training institution certified by the Department of Consumer Affairs to present this course, whether public or private, is authorized to charge a fee covering the cost of the training.

(c) The Department of Consumer Affairs, in cooperation with the Commission on Peace Officer Standards and Training, shall develop standards for a course in the carrying and use of a club or baton.

(d) Any uniformed security guard who successfully completes a course of instruction under this section is entitled to receive a permit to carry and use a club or baton within the scope of employment, issued by the Department of Consumer Affairs. The department may authorize a certified training institution to issue permits to carry and use a club or baton. A fee in the amount provided by law shall be charged by the Department of Consumer Affairs to offset the costs incurred by the department in course certification, quality control activities associated with the course, and issuance of the permit.

(e) Any person who has received a permit or certificate that indicates satisfactory completion of a club or baton training course approved by the Commission on Peace Officer Standards and Training prior to January 1, 1983, shall not be required to obtain a club or baton permit or complete a course certified by the Department of Consumer Affairs.

(f) Any person employed as a county sheriff's or police security officer, as defined in Section 831.4, shall not be required to obtain a club or baton permit or to complete a course certified by the Department of Consumer Affairs in the carrying and use of a club or baton, provided that the person completes a course approved by the Commission on Peace Officer Standards and Training in the carrying and use of the club or baton, within 90 days of employment.

(g) Nothing in any provision listed in Section 16580 prohibits an animal control officer, as described in Section 830.9, or an illegal dumping enforcement officer, as described in Section 830.7, from carrying any wooden club or baton if the animal control officer or illegal dumping enforcement officer has satisfactorily completed the course of instruction certified by the Commission on Peace Officer Standards and Training in the carrying and use of the club or baton. The training institution certified by the Commission on Peace Officer Standards and Training to present this course, whether public or private, is authorized to charge a fee covering the cost of the training.

SEC. 6.12. Section 25400 is added to the Penal Code, to read:

<< CA ST § 25400 >>

25400. (a) A person is guilty of carrying a concealed firearm when the person does any of the following:

(1) Carries concealed within any vehicle that is under the person's control or direction any handgun.

(2) Carries concealed upon the person any handgun.

(3) Causes to be carried concealed within any vehicle in which the person is an occupant any handgun.

(b) Carrying a concealed firearm in violation of this section is punishable as follows:

(1) If the person previously has been convicted of any felony, or of any crime made punishable by a provision listed in Section 16580, as a felony.

(2) If the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen, as a felony.

(3) If the person is an active participant in a criminal street gang, as defined in subdivision (a) of Section 186.22, under the Street Terrorism Enforcement and Prevention Act (Chapter 11 (commencing with Section 186.20) of Title 7 of Part 1), as a felony.

(4) If the person is not in lawful possession of the firearm or the person is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, as a felony.

(5) If the person has been convicted of a crime against a person or property, or of a narcotics or dangerous drug violation, by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(6) If both of the following conditions are met, by imprisonment in the state prison, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment:

(A) The handgun is loaded, or both it and the unexpended ammunition capable of being discharged from it are in the immediate possession of the person or readily accessible to that person.

(B) The person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner of that handgun.

(7) In all cases other than those specified in paragraphs (1) to (6), inclusive, by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

(c)(1) Every person convicted under this section who previously has been convicted of a misdemeanor offense enumerated in Section 23515 shall be punished by imprisonment in a county jail for at least three months and not exceeding six months, or, if granted probation, or if the execution or imposition of sentence is suspended, it shall be a condition thereof that the person be imprisoned in a county jail for at least three months.

(2) Every person convicted under this section who has previously been convicted of any felony, or of any crime made punishable by a provision listed in Section 16580, if probation is granted, or if the execution or imposition of sentence is suspended, it shall be a condition thereof that the person be imprisoned in a county jail for not less than three months.

(d) The court shall apply the three-month minimum sentence as specified in subdivision (c), except in unusual cases where the interests of justice would best be served by granting probation or suspending the imposition or execution of sentence without the minimum imprisonment required in subdivision (c) or by granting probation or suspending the imposition or execution of sentence with conditions other than those set forth in subdivision (c), in which case, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by that disposition.

(e) A peace officer may arrest a person for a violation of paragraph (6) of subdivision (b) if the peace officer has probable cause to believe that the person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of Section 11106 as the registered owner of the handgun, and one or more of the conditions in subparagraph (A) of paragraph (6) of subdivision (b) are met.

SEC. 6.13. Section 25590 is added to the Penal Code, to read:

<< CA ST § 25590 >>

25590. Section 25400 does not apply to, or affect, the transportation by a member of an organization of a firearm directly to, or directly from, official parade duty or ceremonial occasions of that organization, or a place for the purpose of rehearsing or practicing for official parade duty or ceremonial occasions of that organization, if the organization is chartered by the Congress of the United States, or is a nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service.

SEC. 6.14. Section 25595 is added to the Penal Code, to read:

<< CA ST § 25595 >>

25595. This article does not prohibit or limit the otherwise lawful carrying or transportation of any handgun in accordance with the provisions listed in Section 16580.

SEC. 6.15. Section 25605 is added to the Penal Code, to read:

<< CA ST § 25605 >>

25605. (a) Section 25400 and Chapter 6 (commencing with Section 26350) of Division 5 shall not apply to or affect any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, who carries, either openly or concealed, anywhere within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident, any handgun.

(b) No permit or license to purchase, own, possess, keep, or carry, either openly or concealed, shall be required of any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, to purchase, own, possess, keep, or carry, either openly or concealed, a handgun within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident.

(c) Nothing in this section shall be construed as affecting the application of Sections 25850 to 26055, inclusive.

SEC. 6.16. Chapter 6 (commencing with Section 26350) is added to Division 5 of Title 4 of Part 6 of the Penal Code, to read:

pt. 6 t. 4 d. 5 ch. 6 pr. § 26350

Chapter 6. Openly Carrying an Unloaded Handgun

pt. 6 t. 4 d. 5 ch. 6 art. 1 pr. § 26350

Article 1. Crime of Openly Carrying an Unloaded Handgun

<< CA ST § 26350 >>

26350. (a) A person is guilty of openly carrying an unloaded handgun when that person carries upon the person an exposed and unloaded handgun outside a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of an unincorporated territory.

(b) A violation of this section is punishable by imprisonment in a county jail not to exceed six months, by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment.

(c)(1) Nothing in this section shall preclude prosecution under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of Title 4, Section 8100 or 8103 of the Welfare and Institutions Code, or any other law with a penalty greater than is set forth in this section.

(2) The provisions of this section are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

(d) Notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a distinct and separate offense under this section.

pt. 6 t. 4 d. 5 ch. 6 art. 2 pr. § 26361

Article 2. Exemptions

<< CA ST § 26361 >>

26361. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any peace officer or any honorably retired peace officer if that officer may carry a concealed firearm pursuant to Article 2 (commencing with Section 25450) of Chapter 2, or a loaded firearm pursuant to Article 3 (commencing with Section 25900) of Chapter 3.

<< CA ST § 26362 >>

26362. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any person to the extent that that person may carry a loaded firearm pursuant to Article 4 (commencing with Section 26000) of Chapter 3.

<< CA ST § 26363 >>

26363. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun as merchandise by a person who is engaged in the business of manufacturing, importing, wholesaling, repairing, or dealing in firearms and who is licensed to engage in that business, or the authorized representative or authorized agent of that person, while engaged in the lawful course of the business.

<< CA ST § 26364 >>

26364. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a duly authorized military or civil organization, or the members thereof, while parading or while rehearsing or practicing parading, when at the meeting place of the organization.

<< CA ST § 26365 >>

26365. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a member of any club or organization organized for the purpose of practicing shooting at targets upon established target ranges, whether public or private, while the members are using handguns upon the target ranges or incident to the use of a handgun at that target range.

<< CA ST § 26366 >>

26366. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a licensed hunter while engaged in hunting or while transporting that handgun when going to or returning from that hunting expedition.

<< CA ST § 26367 >>

26367. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to transportation of a handgun by a person operating a licensed common carrier, or by an authorized agent or employee thereof, when transported in conformance with applicable federal law.

<< CA ST § 26368 >>

26368. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a member of an organization chartered by the Congress of the United States or a nonprofit mutual or public benefit corporation organized and recognized as a nonprofit tax-exempt organization by the Internal Revenue Service while on official parade duty or ceremonial occasions of that organization or while rehearsing or practicing for official parade duty or ceremonial occasions.

<< CA ST § 26369 >>

26369. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun within a gun show conducted pursuant to Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) of Chapter 3 of Division 6.

<< CA ST § 26370 >>

26370. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun within a school zone, as defined in Section 626.9, with the written permission of the school district superintendent, the superintendent's designee, or equivalent school authority.

<< CA ST § 26371 >>

26371. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun when in accordance with the provisions of Section 171b.

<< CA ST § 26372 >>

26372. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by any person while engaged in the act of making or attempting to make a lawful arrest.

<< CA ST § 26373 >>

26373. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to loaning, selling, or transferring that handgun in accordance with Article 1 (commencing with Section 27500) of Chapter 4 of Division 6, or in accordance with any of the exemptions from Section 27545, so long as that handgun is possessed within private property and the possession and carrying is with the permission of the owner or lessee of that private property.

<< CA ST § 26374 >>

26374. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person engaged in firearms-related activities, while on the premises of a fixed place of business which is licensed to conduct and conducts, as a regular course of its business, activities related to the sale, making, repair, transfer, pawn, or the use of firearms, or related to firearms training.

<< CA ST § 26375 >>

26375. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by an authorized participant in, or an authorized employee or agent of a supplier of firearms for, a motion picture, television or video production, or entertainment event, when the participant lawfully uses the handgun as part of that production or event, as part of rehearsing or practicing for participation in that production or event, or while the participant or authorized employee or agent is at that production or event, or rehearsal or practice for that production or event.

<< CA ST § 26376 >>

26376. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to obtaining an identification number or mark assigned for that handgun from the Department of Justice pursuant to Section 23910.

<< CA ST § 26377 >>

26377. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun at any established target range, whether public or private, while the person is using the handgun upon the target range.

<< CA ST § 26378 >>

26378. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person when that person is summoned by a peace officer to assist in making arrests or preserving the peace, while the person is actually engaged in assisting that officer.

<< CA ST § 26379 >>

26379. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to any of the following:

(a) Complying with Section 27560 or 27565, as it pertains to that handgun.

(b) Section 28000, as it pertains to that handgun.

(c) Section 27850 or 31725, as it pertains to that handgun.

(d) Complying with Section 27870 or 27875, as it pertains to that handgun.

(e) Complying with Section 27915, 27920, or 27925, as it pertains to that handgun.

<< CA ST § 26380 >>

26380. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to, and in the course and scope of, training of or by an individual to become a sworn peace officer as part of a course of study approved by the Commission on Peace Officer Standards and Training.

<< CA ST § 26381 >>

26381. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to, and in the course and scope of, training of or by an individual to become licensed pursuant to Chapter 4 (commencing with Section 26150) as part of a course of study necessary or authorized by the person authorized to issue the license pursuant to that chapter.

<< CA ST § 26382 >>

26382. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun incident to and at the request of a sheriff or chief or other head of a municipal police department.

<< CA ST § 26383 >>

26383. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun by a person when done within a place of business, a place of residence, or on private property, if done with the permission of a person who, by virtue of

subdivision (a) of Section 25605, may carry openly an unloaded handgun within that place of business, place of residence, or on that private property owned or lawfully possessed by that person.

<< CA ST § 26384 >>

26384. Section 26350 does not apply to, or affect, the open carrying of an unloaded handgun if all of the following conditions are satisfied:

(a) The open carrying occurs at an auction or similar event of a nonprofit public benefit or mutual benefit corporation, at which firearms are auctioned or otherwise sold to fund the activities of that corporation or the local chapters of that corporation.

(b) The unloaded handgun is to be auctioned or otherwise sold for that nonprofit public benefit or mutual benefit corporation.

(c) The unloaded handgun is to be delivered by a person licensed pursuant to, and operating in accordance with, Sections 26700 to 26925, inclusive.

<< CA ST § 26385 >>

26385. (a) The open carrying of an unloaded handgun pursuant to paragraph (3) of subdivision (b) of Section 171c is not a violation of Section 26350.

(b) Operation of this section is contingent on AB 2668 adding Section 171c to the Penal Code, and being enacted and becoming effective on or before January 1, 2011.

<< CA ST § 26386 >>

26386. (a) The open carrying of an unloaded handgun pursuant to subparagraph (F) of paragraph (1) subdivision (c) of Section 171.7 is not a violation of Section 26350.

(b) Operation of this section is contingent on AB 2324 adding Section 171.7 to the Penal Code, and being enacted and becoming effective on or before January 1, 2011.

SEC. 6.17. Section 26600 is added to the Penal Code, to read:

<< CA ST § 26600 >>

26600. (a) Section 26500 does not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun, and commencing July 1, 2012, any firearm, is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement

Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.18. Section 26610 is added to the Penal Code, to read:

<< CA ST § 26610 >>

26610. (a) Section 26500 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.19. Section 26615 is added to the Penal Code, to read:

<< CA ST § 26615 >>

26615. (a) Section 26500 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.20. Section 26805 is added to the Penal Code, to read:

<< CA ST § 26805 >>

26805. (a) Except as provided in subdivisions (b) and (c), the business of a licensee shall be conducted only in the buildings designated in the license.

(b)(1) A person licensed pursuant to Sections 26700 and 26705 may take possession of firearms and commence preparation of registers for the sale, delivery, or transfer of firearms at any gun show or event, as defined in Section 478.100 of Title 27 of the Code of Federal Regulations, or its successor, if the gun show or event is not conducted from any motorized or towed vehicle. A person conducting business pursuant to this subdivision shall be entitled to conduct business as authorized herein at any gun show or event in the state, without regard to the jurisdiction within this state that issued the license pursuant to Sections 26700 and 26705, provided the person complies with all applicable laws, including, but not limited to, the waiting period specified in subdivision (a) of Section 26815, and all applicable local laws, regulations, and fees, if any.

(2) A person conducting business pursuant to this subdivision shall publicly display the person's license issued pursuant to Sections 26700 and 26705, or a facsimile thereof, at any gun show or event, as specified in this subdivision.

(c)(1) A person licensed pursuant to Sections 26700 and 26705 may engage in the sale and transfer of firearms other than handguns, at events specified in Sections 26955, 27655, 27900, and 27905, subject to the prohibitions and restrictions contained in those sections.

(2) A person licensed pursuant to Sections 26700 and 26705 may also accept delivery of firearms other than handguns, outside the building designated in the license, provided the firearm is being donated for the purpose of sale or transfer at an auction or similar event specified in Section 27900.

(d) The firearm may be delivered to the purchaser, transferee, or person being loaned the firearm at one of the following places:

(1) The building designated in the license.

(2) The places specified in subdivision (b) or (c).

(3) The place of residence of, the fixed place of business of, or on private property owned or lawfully possessed by, the purchaser, transferee, or person being loaned the firearm.

SEC. 6.21. Section 26820 is added to the Penal Code, to read:

<< CA ST § 26820 >>

26820. No handgun or imitation thereof, or placard advertising the sale or other transfer thereof, shall be displayed in any part of the premises where it can readily be seen from the outside.

SEC. 6.22. Section 26840 is added to the Penal Code, to read:

<< CA ST § 26840 >>

26840. (a) Commencing April 1, 1994, and until January 1, 2003, no pistol, revolver, or other firearm capable of being concealed upon the person shall be delivered unless the purchaser, transferee, or person being loaned the firearm presents to the dealer a basic firearms safety certificate.

(b) No dealer may deliver a handgun unless the person receiving the handgun presents to the dealer a valid handgun safety certificate. The firearms dealer shall retain a photocopy of the handgun safety certificate as proof of compliance with this requirement.

SEC. 6.23. Section 26845 is added to the Penal Code, to read:

<< CA ST § 26845 >>

26845. (a) No handgun may be delivered unless the purchaser, transferee, or person being loaned the firearm presents documentation indicating that the person is a California resident.

(b) Satisfactory documentation shall include a utility bill from within the last three months, a residential lease, a property deed, or military permanent duty station orders indicating assignment within this state, or other evidence of residency as permitted by the Department of Justice.

(c) The firearms dealer shall retain a photocopy of the documentation as proof of compliance with this requirement.

SEC. 6.24. Section 26850 is added to the Penal Code, to read:

<< CA ST § 26850 >>

26850. (a) Except as authorized by the department, no firearms dealer may deliver a handgun unless the recipient performs a safe handling demonstration with that handgun.

(b) The safe handling demonstration shall commence with the handgun unloaded and locked with the firearm safety device with which it is required to be delivered, if applicable. While maintaining muzzle awareness, that is, the firearm is pointed in a safe direction, preferably down at the ground, and trigger discipline, that is, the trigger finger is outside of the trigger guard and along side of the handgun frame, at all times, the handgun recipient shall correctly and safely perform the following:

(1) If the handgun is a semiautomatic pistol, the steps listed in Section 26853.

(2) If the handgun is a double-action revolver, the steps listed in Section 26856.

(3) If the handgun is a single-action revolver, the steps listed in Section 26859.

(c) The recipient shall receive instruction regarding how to render that handgun safe in the event of a jam.

(d) The firearms dealer shall sign and date an affidavit stating that the requirements of subdivisions (a) and (b) have been met. The firearms dealer shall additionally obtain the signature of the handgun purchaser on the same affidavit. The firearms dealer shall retain the original affidavit as proof of compliance with this requirement.

(e) The recipient shall perform the safe handling demonstration for a department-certified instructor.

(f) No demonstration shall be required if the dealer is returning the handgun to the owner of the handgun.

(g) Department–certified instructors who may administer the safe handling demonstration shall meet the requirements set forth in subdivision (b) of Section 31635.

(h) The persons who are exempt from the requirements of subdivision (a) of Section 31615, pursuant to Section 31700, are also exempt from performing the safe handling demonstration.

SEC. 6.25. Section 26865 is added to the Penal Code, to read:

<< CA ST § 26865 >>

26865. The licensee shall offer to provide the purchaser or transferee of a firearm, or person being loaned a firearm, with a copy of the pamphlet described in Section 34205, and may add the cost of the pamphlet, if any, to the sales price of the firearm.

SEC. 6.26. Section 26890 is added to the Penal Code, to read:

<< CA ST § 26890 >>

26890. (a) Except as provided in subdivisions (b) and (c) of Section 26805, any time when the licensee is not open for business, all inventory firearms shall be stored in the licensed location. All firearms shall be secured using one of the following methods as to each particular firearm:

(1) Store the firearm in a secure facility that is a part of, or that constitutes, the licensee's business premises.

(2) Secure the firearm with a hardened steel rod or cable of at least one-eighth inch in diameter through the trigger guard of the firearm. The steel rod or cable shall be secured with a hardened steel lock that has a shackle. The lock and shackle shall be protected or shielded from the use of a boltcutter and the rod or cable shall be anchored in a manner that prevents the removal of the firearm from the premises.

(3) Store the firearm in a locked fireproof safe or vault in the licensee's business premises.

(b) The licensing authority in an unincorporated area of a county or within a city may impose security requirements that are more strict or are at a higher standard than those specified in subdivision (a).

(c) Upon written request from a licensee, the licensing authority may grant an exemption from compliance with the requirements of subdivision (a) if the licensee is unable to comply with those requirements because of local ordinances, covenants, lease conditions, or similar circumstances not under the control of the licensee.

(d) Subdivision (a) or (b) shall not apply to a licensee organized as a nonprofit public benefit corporation pursuant to Part 2 (commencing with Section 5110) of Division 2 of the Corporations Code, or as a mutual benefit corporation pursuant to Part 3 (commencing with Section 7110) of Division 2 of the Corporations Code, if both of the following conditions are satisfied:

(1) The nonprofit public benefit or mutual benefit corporation obtained the dealer's license solely and exclusively to assist that corporation or local chapters of that corporation in conducting auctions or similar events at which firearms are auctioned off to fund the activities of that corporation or the local chapters of the corporation.

(2) The firearms are not handguns.

SEC. 6.27. Section 26905 is added to the Penal Code, to read:

<< CA ST § 26905 >>

26905. (a) On the date of receipt, a licensee shall report to the Department of Justice, in a format prescribed by the department, the acquisition by the licensee of the ownership of a handgun, and commencing July 1, 2012, of any firearm.

(b) The provisions of this section shall not apply to any of the following transactions:

(1) A transaction subject to the provisions of Sections 26960 and 27660.

(2) The dealer acquired the firearm from a wholesaler.

(3) The dealer acquired the firearm from a person who is licensed as a manufacturer or importer to engage in those activities pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and any regulations issued pursuant thereto.

(4) The dealer acquired the firearm from a person who resides outside this state who is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and any regulations issued pursuant thereto.

(5) The dealer is also licensed as a secondhand dealer pursuant to Article 4 (commencing with Section 21625) of Chapter 9 of Division 8 of the Business and Professions Code, acquires a handgun, and reports its acquisition pursuant to Section 21628.2 of the Business and Professions Code.

SEC. 6.28. Section 26955 is added to the Penal Code, to read:

<< CA ST § 26955 >>

26955. (a) The waiting period described in Section 26815 does not apply to a dealer who delivers a firearm, other than a handgun, at an auction or similar event described in Section 27900, as authorized by subdivision (c) of Section 26805.

(b) Within two business days of completion of the application to purchase, the dealer shall forward by prepaid mail to the Department of Justice a report of the application as is indicated in Section 28160 or 28165, as applicable.

(c) If the electronic or telephonic transfer of applicant information is used, within two business days of completion of the application to purchase, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the application as is indicated in Section 28160 or 28165, as applicable.

SEC. 6.29. Section 26960 is added to the Penal Code, to read:

<< CA ST § 26960 >>

26960. (a) The waiting period described in Section 26815 does not apply to the sale, delivery, or transfer of a handgun, and commencing July 1, 2012, a firearm that is not a handgun, by a dealer in either of the following situations:

(1) The dealer is delivering the firearm to another dealer, the firearm is not intended as merchandise in the receiving dealer's business, and the requirements of subdivisions (b) and (c) are satisfied.

(2) The dealer is delivering the firearm to himself or herself, the firearm is not intended as merchandise in the dealer's business, and the requirements of subdivision (c) are satisfied.

(b) If the dealer is receiving the firearm from another dealer, the dealer receiving the firearm shall present proof to the dealer delivering the firearm that the receiving dealer is licensed pursuant to Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800). This shall be done by complying with Section 27555.

(c)(1) Regardless of whether the dealer is selling, delivering, or transferring the firearm to another dealer or to himself or herself, on the date that the application to purchase is completed, the dealer delivering the firearm shall forward by prepaid mail to the Department of Justice a report of the application and the type of information concerning the purchaser or transferee as is indicated in Section 28160.

(2) Where electronic or telephonic transfer of applicant information is used, on the date that the application to purchase is completed, the dealer delivering the firearm shall transmit an electronic or telephonic report of the application and the type of information concerning the purchaser or transferee as is indicated in Section 28160.

SEC. 6.30. Section 26965 is added to the Penal Code, to read:

<< CA ST § 26965 >>

26965. (a) The waiting period described in Section 26815 does not apply to the sale, delivery, or transfer of a firearm to the holder of a special weapons permit issued by the Department of Justice pursuant to Section 32650 or 33300, pursuant to Article 3 (commencing with Section 18900) of Chapter 1 of Division 5 of Title 2, or pursuant to Article 4 (commencing with Section 32700) of Chapter 6 of Division 10 of this title.

(b) On the date that the application to purchase is completed, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the application as is indicated in Section 28160 or 28165, as applicable.

SEC. 6.31. Section 27050 is added to the Penal Code, to read:

<< CA ST § 27050 >>

27050. (a) Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun, and commencing July 1, 2012, any firearm, is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.32. Section 27060 is added to the Penal Code, to read:

<< CA ST § 27060 >>

27060. (a) Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.33. Section 27065 is added to the Penal Code, to read:

<< CA ST § 27065 >>

27065. (a) Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law

Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.34. Section 27110 is added to the Penal Code, to read:

<< CA ST § 27110 >>

27110. Until July 1, 2012, Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of firearms if all of the following conditions are satisfied:

(a) The firearms are unloaded.

(b) The firearms are not handguns.

(c) The sale, delivery, or transfer is made by a dealer to another dealer, upon proof of compliance with the requirements of Section 27555.

SEC. 6.35. Section 27130 is added to the Penal Code, to read:

<< CA ST § 27130 >>

27130. Until July 1, 2012, Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) do not apply to the sale, delivery, or transfer of an unloaded firearm, other than a handgun, by a dealer to himself or herself.

SEC. 6.36. Section 27400 is added to the Penal Code, to read:

<< CA ST § 27400 >>

27400. (a) Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun, and commencing July 1, 2012, any firearm, is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.37. Section 27410 is added to the Penal Code, to read:

<< CA ST § 27410 >>

27410. (a) Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.38. Section 27415 is added to the Penal Code, to read:

<< CA ST § 27415 >>

27415. (a) Article 1 (commencing with Section 27200) and Article 2 (commencing with Section 27300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.39. Section 27540 is added to the Penal Code, to read:

<< CA ST § 27540 >>

27540. No dealer, whether or not acting pursuant to Chapter 5 (commencing with Section 28050), shall deliver a firearm to a person, as follows:

(a) Within 10 days of the application to purchase, or, after notice by the department pursuant to Section 28220, within 10 days of the submission to the department of any correction to the application, or within 10 days of the submission to the department of any fee required pursuant to Section 28225, whichever is later.

(b) Unless unloaded and securely wrapped or unloaded and in a locked container.

(c) Unless the purchaser, transferee, or person being loaned the firearm presents clear evidence of the person's identity and age to the dealer.

(d) Whenever the dealer is notified by the Department of Justice that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(e) No handgun shall be delivered unless the purchaser, transferee, or person being loaned the handgun presents a handgun safety certificate to the dealer.

(f) No handgun shall be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30–day period the purchaser has made another application to purchase a handgun and that the previous application to purchase involved none of the entities specified in subdivision (b) of Section 27535.

SEC. 6.40. Section 27560 is added to the Penal Code, to read:

<< CA ST § 27560 >>

27560. (a) Within 60 days of bringing a handgun into this state, and commencing July 1, 2012, within 60 days of bringing any firearm into this state, a personal firearm importer shall do one of the following:

(1) Forward by prepaid mail or deliver in person to the Department of Justice, a report prescribed by the department including information concerning that individual and a description of the firearm in question.

(2) Sell or transfer the firearm in accordance with the provisions of Section 27545 or in accordance with the provisions of an exemption from Section 27545.

(3) Sell or transfer the firearm to a dealer licensed pursuant to Sections 26700 to 26915, inclusive.

(4) Sell or transfer the firearm to a sheriff or police department.

(b) If all of the following requirements are satisfied, the personal firearm importer shall have complied with the provisions of this section:

(1) The personal firearm importer sells or transfers the firearm pursuant to Section 27545.

(2) The sale or transfer cannot be completed by the dealer to the purchaser or transferee.

(3) The firearm can be returned to the personal firearm importer.

(c)(1) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law.

(2) However, an act or omission punishable in different ways by this article and different provisions of the Penal Code shall not be punished under more than one provision.

(d) The department shall conduct a public education and notification program regarding this section to ensure a high degree of publicity of the provisions of this section.

(e) As part of the public education and notification program described in this section, the department shall do all of the following:

(1) Work in conjunction with the Department of Motor Vehicles to ensure that any person who is subject to this section is advised of the provisions of this section, and provided with blank copies of the report described in paragraph (1) of subdivision (a), at the time when that person applies for a California driver's license or registers a motor vehicle in accordance with the Vehicle Code.

(2) Make the reports referred to in paragraph (1) of subdivision (a) available to dealers licensed pursuant to Sections 26700 to 26915, inclusive.

(3) Make the reports referred to in paragraph (1) of subdivision (a) available to law enforcement agencies.

(4) Make persons subject to the provisions of this section aware of all of the following:

(A) The report referred to in paragraph (1) of subdivision (a) may be completed at either a law enforcement agency or the licensed premises of a dealer licensed pursuant to Sections 26700 to 26915, inclusive.

(B) It is advisable to do so for the sake of accuracy and completeness of the report.

(C) Before transporting a firearm to a law enforcement agency to comply with subdivision (a), the person should give notice to the law enforcement agency that the person is doing so.

(D) In any event, the handgun should be transported unloaded and in a locked container and a firearm that is not a handgun should be transported unloaded.

(f) Any costs incurred by the department to implement this section shall be absorbed by the department within its existing budget and the fees in the Dealers' Record of Sale Special Account allocated for implementation of subdivisions (d) and (e) of this section pursuant to Section 28235.

SEC. 6.41. Section 27565 is added to the Penal Code, to read:

<< CA ST § 27565 >>

27565. (a) This section applies in the following circumstances:

(1) A person is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(2) The licensed premises of that person are within this state.

(3) The licensed collector acquires, outside of this state, a handgun, or after July 1, 2012, any firearm.

(4) The licensed collector takes actual possession of that firearm outside of this state pursuant to the provisions of subsection (j) of Section 923 of Title 18 of the United States Code, as amended by Public Law 104–208, and transports the firearm into this state.

(5) The firearm is a curio or relic, as defined in Section 478.11 of Title 27 of the Code of Federal Regulations.

(b) Within five days of transporting a firearm into this state under the circumstances described in subdivision (a), the licensed collector shall report the acquisition of that firearm to the department in a format prescribed by the department.

SEC. 6.42. Section 27590 is added to the Penal Code, to read:

<< CA ST § 27590 >>

27590. (a) Except as provided in subdivision (b), (c), or (e), a violation of this article is a misdemeanor.

(b) If any of the following circumstances apply, a violation of this article is punishable by imprisonment in the state prison for two, three, or four years.

(1) If the violation is of subdivision (a) of Section 27500.

(2) If the defendant has a prior conviction of violating the provisions, other than Section 27535, of this article or former Section 12100 of this code, as that section read at any time from when it was enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to when it was repealed by Section 18 of Chapter 23 of the Statutes of 1994, or Section 8101 of the Welfare and Institutions Code.

(3) If the defendant has a prior conviction of violating any offense specified in Section 29905 or of a violation of Section 32625 or 33410, or of former Section 12560, as that section read at any time from when it was enacted by Section 4 of Chapter 931 of the Statutes of 1965 to when it was repealed by Section 14 of Chapter 9 of the Statutes of 1990, or of any provision listed in Section 16590.

(4) If the defendant is in a prohibited class described in Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code.

(5) A violation of this article by a person who actively participates in a "criminal street gang" as defined in Section 186.22.

(6) A violation of Section 27510 involving the delivery of any firearm to a person who the dealer knows, or should know, is a minor.

(c) If any of the following circumstances apply, a violation of this article shall be punished by imprisonment in a county jail not exceeding one year or in the state prison, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment.

(1) A violation of Section 27515, 27520, or subdivision (b) of Section 27500.

(2) A violation of Section 27505 involving the sale, loan, or transfer of a handgun to a minor.

(3) A violation of Section 27510 involving the delivery of a handgun.

(4) A violation of subdivision (a), (c), (d), (e), or (f) of Section 27540 involving a handgun.

(5) A violation of Section 27545 involving a handgun.

(6) A violation of Section 27550.

(d) If both of the following circumstances apply, an additional term of imprisonment in the state prison for one, two, or three years shall be imposed in addition and consecutive to the sentence prescribed.

(1) A violation of Section 27510 or subdivision (b) of Section 27500.

(2) The firearm transferred in violation of Section 27510 or subdivision (b) of Section 27500 is used in the subsequent commission of a felony for which a conviction is obtained and the prescribed sentence is imposed.

(e)(1) A first violation of Section 27535 is an infraction punishable by a fine of fifty dollars ($50).

(2) A second violation of Section 27535 is an infraction punishable by a fine of one hundred dollars ($100).

(3) A third or subsequent violation of Section 27535 is a misdemeanor.

(4) For purposes of this subdivision each application to purchase a handgun in violation of Section 27535 shall be deemed a separate offense.

SEC. 6.43. Section 27600 is added to the Penal Code, to read:

<< CA ST § 27600 >>

27600. (a) Article 1 (commencing with Section 27500) does not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun, and commencing July 1, 2012, any firearm, is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.44. Section 27610 is added to the Penal Code, to read:

<< CA ST § 27610 >>

27610. (a) Article 1 (commencing with Section 27500) does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.45. Section 27615 is added to the Penal Code, to read:

<< CA ST § 27615 >>

27615. (a) Article 1 (commencing with Section 27500) does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred

the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.46. Section 27655 is added to the Penal Code, to read:

<< CA ST § 27655 >>

27655. (a) The waiting period described in Section 27540 does not apply to a dealer who delivers a firearm, other than a handgun, at an auction or similar event described in Section 27900, as authorized by subdivision (c) of Section 26805.

(b) Within two business days of completion of the application to purchase, the dealer shall forward by prepaid mail to the Department of Justice a report of the application as is indicated in Section 28160 or 28165, as applicable.

(c) If the electronic or telephonic transfer of applicant information is used, within two business days of completion of the application to purchase, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the application as is indicated in Section 28160 or 28165, as applicable.

SEC. 6.47. Section 27660 is added to the Penal Code, to read:

<< CA ST § 27660 >>

27660. (a) The waiting period described in Section 27540 does not apply to the sale, delivery, or transfer of a handgun, and commencing July 1, 2012, a firearm that is not a handgun, by a dealer in either of the following situations:

(1) The dealer is delivering the firearm to another dealer, the firearm is not intended as merchandise in the receiving dealer's business, and the requirements of subdivisions (b) and (c) are satisfied.

(2) The dealer is delivering the firearm to himself or herself, the firearm is not intended as merchandise in the dealer's business, and the requirements of subdivision (c) are satisfied.

(b) If the dealer is receiving the firearm from another dealer, the dealer receiving the firearm shall present proof to the dealer delivering the firearm that the receiving dealer is licensed pursuant to Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800). This shall be done by complying with Section 27555.

(c)(1) Regardless of whether the dealer is selling, delivering, or transferring the firearm to another dealer or to himself or herself, on the date that the application to purchase is completed, the dealer delivering the firearm shall forward by prepaid mail to the Department of Justice a report of the application and the type of information concerning the purchaser or transferee as is indicated in Section 28160.

(2) Where electronic or telephonic transfer of applicant information is used, on the date that the application to purchase is completed, the dealer delivering the firearm shall transmit an electronic or telephonic report of the application and the type of information concerning the purchaser or transferee as is indicated in Section 28160.

SEC. 6.48. Section 27665 is added to the Penal Code, to read:

<< CA ST § 27665 >>

27665. (a) The waiting period described in Section 27540 does not apply to the sale, delivery, or transfer of a firearm to the holder of a special weapons permit issued by the Department of Justice pursuant to Section 32650 or 33300, pursuant to Article

3 (commencing with Section 18900) of Chapter 1 of Division 5 of Title 2, or pursuant to Article 4 (commencing with Section 32700) of Chapter 6 of Division 10 of this title.

(b) On the date that the application to purchase is completed, the dealer delivering the firearm shall transmit to the Department of Justice an electronic or telephonic report of the application as is indicated in Section 28160 or 28165, as applicable.

SEC. 6.49. Section 27710 is added to the Penal Code, to read:

<< CA ST § 27710 >>

27710. Until July 1, 2012, Section 27540 does not apply to the sale, delivery, or transfer of firearms if all of the following conditions are satisfied:

(a) The firearms are unloaded.

(b) The firearms are not handguns.

(c) The sale, delivery, or transfer is made by a dealer to another dealer, upon proof of compliance with the requirements of Section 27555.

SEC. 6.50. Section 27730 is added to the Penal Code, to read:

<< CA ST § 27730 >>

27730. Until July 1, 2012, Section 27540 does not apply to the sale, delivery, or transfer of an unloaded firearm, other than a handgun, by a dealer to himself or herself.

SEC. 6.51. Section 27860 is added to the Penal Code, to read:

<< CA ST § 27860 >>

27860. Section 27545 does not apply to the sale, delivery, loan, or transfer of a firearm made by any person other than a representative of an authorized law enforcement agency to any public or private nonprofit historical society, museum, or institutional collection, if all of the following conditions are met:

(a) The entity receiving the firearm is open to the public.

(b) The firearm is deactivated or rendered inoperable prior to delivery.

(c) The firearm is not of a type prohibited from being sold, delivered, or transferred to the public.

(d) Prior to delivery, the entity receiving the firearm submits a written statement to the person selling, loaning, or transferring the firearm stating that the firearm will not be restored to operating condition, and will either remain with that entity, or if subsequently disposed of, will be transferred in accordance with the applicable provisions listed in Section 16575 and, if applicable, with Section 31615.

(e) If title to a handgun, and commencing July 1, 2012, any firearm, is being transferred to the public or private nonprofit historical society, museum, or institutional collection, then the designated representative of that entity shall, within 30 days of

taking possession of that firearm, forward by prepaid mail or deliver in person to the Department of Justice, a single report signed by both parties to the transaction, which includes all of the following information:

(1) Information identifying the person representing the public or private historical society, museum, or institutional collection.

(2) Information on how title was obtained and from whom.

(3) A description of the firearm in question.

(4) A copy of the written statement referred to in subdivision (d).

(f) The report forms that are to be completed pursuant to this section shall be provided by the Department of Justice.

(g) In the event of a change in the status of the designated representative, the entity shall notify the department of a new representative within 30 days.

SEC. 6.52. Section 27870 is added to the Penal Code, to read:

<< CA ST § 27870 >>

27870. (a) Section 27545 does not apply to the transfer of a firearm, other than a handgun, by gift, bequest, intestate succession, or other means from one individual to another, if both of the following requirements are satisfied:

(1) The transfer is infrequent, as defined in Section 16730.

(2) The transfer is between members of the same immediate family.

(b) This section shall become inoperative on July 1, 2012.

SEC. 6.53. Section 27875 is added to the Penal Code, to read:

<< CA ST § 27875 >>

27875. Section 27545 does not apply to the transfer of a handgun, and commencing July 1, 2012, a firearm that is not a handgun, by gift, bequest, intestate succession, or other means from one individual to another, if all of the following requirements are met:

(a) The transfer is infrequent, as defined in Section 16730.

(b) The transfer is between members of the same immediate family.

(c) Within 30 days of taking possession of the firearm, the person to whom it is transferred shall forward by prepaid mail, or deliver in person to the Department of Justice, a report that includes information concerning the individual taking possession of the firearm, how title was obtained and from whom, and a description of the firearm in question. The report forms that individuals complete pursuant to this section shall be provided to them by the Department of Justice.

(d) The person taking title to the firearm shall first obtain a handgun safety certificate, if the firearm is a handgun.

(e) The person receiving the firearm is 18 years of age or older.

SEC. 6.54. Section 27880 is added to the Penal Code, to read:

<< CA ST § 27880 >>

27880. Section 27545 does not apply to the loan of a firearm between persons who are personally known to each other, if all of the following requirements are satisfied:

(a) The loan is infrequent, as defined in Section 16730.

(b) The loan is for any lawful purpose.

(c) The loan does not exceed 30 days in duration.

(d) The individual being loaned the handgun shall have a valid handgun safety certificate, if the firearm is a handgun.

SEC. 6.55. Section 27915 is added to the Penal Code, to read:

<< CA ST § 27915 >>

27915. (a) Section 27545 does not apply to a person who takes title or possession of a firearm by operation of law if both of the following requirements are satisfied:

(1) The firearm is not a handgun.

(2) The person is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(b) This section shall become inoperative on July 1, 2012.

SEC. 6.56. Section 27920 is added to the Penal Code, to read:

<< CA ST § 27920 >>

27920. Section 27545 does not apply to a person who takes title or possession of a handgun, and commencing July 1, 2012, a firearm that is not a handgun, by operation of law if the person is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm and all of the following conditions are met:

(a) If the person taking title or possession is neither a levying officer as defined in Section 481.140, 511.060, or 680.260 of the Code of Civil Procedure, nor a person who is receiving that firearm pursuant to subdivision (g), (i), or (j) of Section 16990, the person shall, within 30 days of taking possession, forward by prepaid mail or deliver in person to the Department of Justice, a report of information concerning the individual taking possession of the firearm, how title or possession was obtained and from whom, and a description of the firearm in question.

(b) If the person taking title or possession is receiving the firearm pursuant to subdivision (g) of Section 16990, the person shall do both of the following:

(1) Within 30 days of taking possession, forward by prepaid mail or deliver in person to the department, a report of information concerning the individual taking possession of the firearm, how title or possession was obtained and from whom, and a description of the firearm in question.

(2) Prior to taking title or possession of the firearm, the person shall obtain a handgun safety certificate, if the firearm is a handgun.

(c) Where the person receiving title or possession of the handgun, and commencing July 1, 2012, a firearm that is not a handgun, is a person described in subdivision (i) of Section 16990, on the date that the person is delivered the firearm, the name and other information concerning the person taking possession of the firearm, how title or possession of the firearm was obtained and from whom, and a description of the firearm by make, model, serial number, and other identifying characteristics shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that transferred or delivered the firearm, provided however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, that fact shall be noted. An agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

(d) Where the person receiving title or possession of the handgun, and commencing July 1, 2012, a firearm that is not a handgun, is a person described in subdivision (j) of Section 16990, on the date that the person is delivered the firearm, the name and other information concerning the person taking possession of the firearm, how title or possession of the firearm was obtained and from whom, and a description of the firearm by make, model, serial number, and other identifying characteristics shall be entered into the AFS via the CLETS by the law enforcement or state agency that transferred or delivered the firearm, provided however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, that fact shall be noted. An agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system. In addition, that law enforcement agency shall not deliver that handgun to the person referred to in this subdivision unless, prior to the delivery of the handgun, the person presents proof to the agency that the person is the holder of a handgun safety certificate.

(e) The reports that individuals complete pursuant to this section shall be provided to them by the Department of Justice.

SEC. 6.57. Section 28000 is added to the Penal Code, to read:

<< CA ST § 28000 >>

28000. A person who is exempt from Section 27545 or is otherwise not required by law to report acquisition, ownership, or disposal of a handgun, and commencing July 1, 2012, a firearm that is not a handgun, or who moves out of this state with the person's handgun, and commencing July 1, 2012, a firearm that is not a handgun, may report that to the Department of Justice in a format prescribed by the department.

SEC. 6.58. Section 28060 is added to the Penal Code, to read:

<< CA ST § 28060 >>

28060. The Attorney General shall adopt regulations under this chapter to do all of the following:

(a) Allow the seller or transferor or the person loaning the firearm, and the purchaser or transferee or the person being loaned the firearm, to complete a sale, loan, or transfer through a dealer, and to allow those persons and the dealer to preserve the confidentiality of those records and to comply with the requirements of this chapter and all of the following:

(1) Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) of Chapter 2.

(2) Article 1 (commencing with Section 27500) of Chapter 4.

(3) Article 2 (commencing with Section 28150) of Chapter 6.

(4) Article 3 (commencing with Section 28200) of Chapter 6.

(b) Record sufficient information for purposes of subdivision (c) of Section 11106 in the instance where a firearm is returned to a personal firearm importer because a sale or transfer of that firearm by the personal firearm importer could not be completed.

(c) Ensure that the register or record of electronic transfer shall state all of the following:

(1) The name and address of the seller or transferor of the firearm or the person loaning the firearm.

(2) Whether or not the person is a personal firearm importer.

(3) Any other information required by Article 2 (commencing with Section 28150) of Chapter 6.

SEC. 6.59. Section 28100 is added to the Penal Code, to read:

<< CA ST § 28100 >>

28100. (a) As required by the Department of Justice, every dealer shall keep a register or record of electronic or telephonic transfer in which shall be entered the information prescribed in Article 2 (commencing with Section 28150).

(b) This section shall not apply to any of the following transactions:

(1) The loan of an unloaded firearm by a dealer to a person who possesses a valid entertainment firearms permit issued pursuant to Chapter 2 (commencing with Section 29500) of Division 8, for use solely as a prop in a motion picture, television, video, theatrical, or other entertainment production or event.

(2) The delivery of an unloaded firearm by a dealer to a gunsmith for service or repair.

(3) Until July 1, 2012, the sale, delivery, or transfer of an unloaded firearm, other than a handgun, by a dealer to another dealer, upon proof of compliance with the requirements of Section 27555.

(4) The sale, delivery, or transfer of an unloaded firearm by a dealer who sells, delivers, or transfers the firearm to a person who resides outside this state and is licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and any regulations issued pursuant thereto.

(5) The sale, delivery, or transfer of an unloaded firearm by a dealer to a wholesaler if that firearm is being returned to the wholesaler and is intended as merchandise in the wholesaler's business.

(6) The sale, delivery, or transfer of an unloaded firearm by a dealer to another dealer, upon proof of compliance with the requirements of Section 27555, if the firearm is intended as merchandise in the receiving dealer's business.

(7) Until July 1, 2012, the sale, delivery, or transfer of an unloaded firearm, other than a handgun, by a dealer to himself or herself.

(8) The loan of an unloaded firearm by a dealer who also operates a target facility which holds a business or regulatory license on the premises of the building designated in the license or whose building designated in the license is on the premises of any club or organization organized for the purpose of practicing shooting at targets upon established ranges, whether public or

private, to a person at that target facility or club or organization, if the firearm is kept at all times within the premises of the target range or on the premises of the club or organization.

(9) The loan of an unloaded firearm by a dealer to a consultant-evaluator, if the loan does not exceed 45 days from the date of delivery of the firearm by the dealer to the consultant-evaluator.

(10) The return of an unloaded firearm to the owner of that firearm by a dealer, if the owner initially delivered the firearm to the dealer for service or repair.

(11) The sale, delivery, or transfer of an unloaded firearm by a dealer to a person licensed as an importer or manufacturer pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and any regulations issued pursuant thereto.

(c) A violation of this section is a misdemeanor.

SEC. 6.60. Section 28160 is added to the Penal Code, to read:

<< CA ST § 28160 >>

28160. (a) Until July 1, 2012, for handguns, and thereafter for all firearms, the register or record of electronic transfer shall include all of the following information:

(1) The date and time of sale.

(2) The make of firearm.

(3) Peace officer exemption status pursuant to the provisions listed in subdivision (c) of Section 16585, and the agency name.

(4) Auction or event waiting period exemption pursuant to Sections 26955 and 27655.

(5) Dealer waiting period exemption pursuant to Sections 26960 and 27660.

(6) Dangerous weapons permitholder waiting period exemption pursuant to Sections 26965 and 27665.

(7) Curio and relic waiting period exemption pursuant to Sections 26970 and 27670.

(8) California Firearms Dealer number issued pursuant to Article 1 (commencing with Section 26700) of Chapter 2.

(9) For transactions occurring prior to January 1, 2003, the purchaser's basic firearms safety certificate number issued pursuant to former Sections 12805 and 12809, as those sections read at any time from when they became operative on January 1, 1992, to when they were repealed on January 1, 2003.

(10) For transactions occurring on or after January 1, 2003, the purchaser's handgun safety certificate number issued pursuant to Article 2 (commencing with Section 31610) of Chapter 4 of Division 10 of this title, or pursuant to former Article 8 (commencing with Section 12800) of Chapter 6 of Title 2 of Part 4, as that article read at any time from when it became operative on January 1, 2003, to when it was repealed by the Deadly Weapons Recodification Act of 2010.

(11) Manufacturer's name if stamped on the firearm.

(12) Model name or number, if stamped on the firearm.

(13) Serial number, if applicable.

(14) Other number, if more than one serial number is stamped on the firearm.

(15) Any identification number or mark assigned to the firearm pursuant to Section 23910, provided however, that if the firearm is not a handgun and does not have a serial number, identification number, or mark assigned to it, a notation as to that fact.

(16) Caliber.

(17) Type of firearm.

(18) If the firearm is new or used.

(19) Barrel length.

(20) Color of the firearm.

(21) Full name of purchaser.

(22) Purchaser's complete date of birth.

(23) Purchaser's local address.

(24) If current address is temporary, complete permanent address of purchaser.

(25) Identification of purchaser.

(26) Purchaser's place of birth (state or country).

(27) Purchaser's complete telephone number.

(28) Purchaser's occupation.

(29) Purchaser's sex.

(30) Purchaser's physical description.

(31) All legal names and aliases ever used by the purchaser.

(32) Yes or no answer to questions that prohibit purchase, including, but not limited to, conviction of a felony as described in Chapter 2 (commencing with Section 29800) or an offense described in Chapter 3 (commencing with Section 29900) of Division 9 of this title, the purchaser's status as a person described in Section 8100 of the Welfare and Institutions Code, whether the purchaser is a person who has been adjudicated by a court to be a danger to others or found not guilty by reason of insanity, and whether the purchaser is a person who has been found incompetent to stand trial or placed under conservatorship by a court pursuant to Section 8103 of the Welfare and Institutions Code.

(33) Signature of purchaser.

(34) Signature of salesperson, as a witness to the purchaser's signature.

(35) Salesperson's certificate of eligibility number, if the salesperson has obtained a certificate of eligibility.

(36) Name and complete address of the dealer or firm selling the firearm as shown on the dealer's license.

(37) The establishment number, if assigned.

(38) The dealer's complete business telephone number.

(39) Any information required by Chapter 5 (commencing with Section 28050).

(40) Any information required to determine whether subdivision (f) of Section 27540 applies.

(41) A statement of the penalties for signing a fictitious name or address, knowingly furnishing any incorrect information, or knowingly omitting any information required to be provided for the register.

(b) The purchaser shall provide the purchaser's right thumbprint on the register in a manner prescribed by the department. No exception to this requirement shall be permitted except by regulations adopted by the department.

(c) The firearms dealer shall record on the register or record of electronic transfer the date that the firearm is delivered.

SEC. 6.61. Section 28165 is added to the Penal Code, to read:

<< CA ST § 28165 >>

28165. (a) For firearms other than handguns, the register or record of electronic transfer shall include all of the following information:

(1) The date and time of sale.

(2) Peace officer exemption status pursuant to the provisions listed in subdivision (c) of Section 16585, and the agency name.

(3) Dangerous weapons permitholder waiting period exemption pursuant to Sections 26965 and 27665.

(4) Curio and relic waiting period exemption pursuant to Sections 26970 and 27670.

(5) Auction or event waiting period exemption pursuant to Sections 26955 and 27655.

(6) California Firearms Dealer number issued pursuant to Article 1 (commencing with Section 26700) of Chapter 2.

(7) Full name of purchaser.

(8) Purchaser's complete date of birth.

(9) Purchaser's local address.

(10) If current address is temporary, complete permanent address of purchaser.

(11) Identification of purchaser.

(12) Purchaser's place of birth (state or country).

(13) Purchaser's complete telephone number.

(14) Purchaser's occupation.

(15) Purchaser's sex.

(16) Purchaser's physical description.

(17) All legal names and aliases ever used by the purchaser.

(18) Yes or no answer to questions that prohibit purchase, including, but not limited to, conviction of a felony as described in Chapter 2 (commencing with Section 29800) or an offense described in Chapter 3 (commencing with Section 29900) of Division 9 of this title, the purchaser's status as a person described in Section 8100 of the Welfare and Institutions Code, whether the purchaser is a person who has been adjudicated by a court to be a danger to others or found not guilty by reason of insanity, whether the purchaser is a person who has been found incompetent to stand trial or placed under conservatorship by a court pursuant to Section 8103 of the Welfare and Institutions Code.

(19) Signature of purchaser.

(20) Signature of salesperson, as a witness to the purchaser's signature.

(21) Salesperson's certificate of eligibility number, if the salesperson has obtained a certificate of eligibility.

(22) Name and complete address of the dealer or firm selling the firearm as shown on the dealer's license.

(23) The establishment number, if assigned.

(24) The dealer's complete business telephone number.

(25) Any information required by Chapter 5 (commencing with Section 28050).

(26) A statement of the penalties for any person signing a fictitious name or address, knowingly furnishing any incorrect information, or knowingly omitting any information required to be provided for the register.

(b) The purchaser shall provide the purchaser's right thumbprint on the register in a manner prescribed by the department. No exception to this requirement shall be permitted except by regulations adopted by the department.

(c) The firearms dealer shall record on the register or record of electronic transfer the date that the firearm is delivered.

(d) This subdivision shall become inoperative on July 1, 2012.

SEC. 6.62. Section 28170 is added to the Penal Code, to read:

<< CA ST § 28170 >>

28170. Where the register is used, the following shall apply:

(a) Dealers shall use ink to complete each document.

(b) The dealer or salesperson making a sale shall ensure that all information is provided legibly. The dealer and salespersons shall be informed that incomplete or illegible information will delay sales.

(c) Each dealer shall be provided instructions regarding the procedure for completion of the form and routing of the form. Dealers shall comply with these instructions, which shall include the information set forth in this section.

(d) One firearm transaction shall be reported on each record of sale document.

SEC. 6.63. Section 28180 is added to the Penal Code, to read:

<< CA ST § 28180 >>

28180. (a) The purchaser's name, date of birth, and driver's license or identification number shall be obtained electronically from the magnetic strip on the purchaser's driver's license or identification and shall not be supplied by any other means, except as authorized by the department.

(b) The requirement of subdivision (a) shall not apply in either of the following cases:

(1) The purchaser's identification consists of a military identification card.

(2) Due to technical limitations, the magnetic stripe reader is unable to obtain the required information from the purchaser's identification. In those circumstances, the firearms dealer shall obtain a photocopy of the identification as proof of compliance.

(c) In the event that the dealer has reported to the department that the dealer's equipment has failed, information pursuant to this section shall be obtained by an alternative method to be determined by the department.

SEC. 6.64. Section 28180 is added to the Penal Code, to read:

<< CA ST § 28180 >>

28180. (a) Effective January 1, 2003, the purchaser's name, date of birth, and driver's license or identification number shall be obtained electronically from the magnetic strip on the purchaser's driver's license or identification and shall not be supplied by any other means, except as authorized by the department.

(b) The requirement of subdivision (a) shall not apply in either of the following cases:

(1) The purchaser's identification consists of a military identification card.

(2) Due to technical limitations, the magnetic strip reader is unable to obtain the required information from the purchaser's identification. In those circumstances, the firearms dealer shall obtain a photocopy of the identification as proof of compliance.

(c) In the event that the dealer has reported to the department that the dealer's equipment has failed, information pursuant to this section shall be obtained by an alternative method to be determined by the department.

SEC. 6.65. Section 28180 is added to the Penal Code, to read:

<< CA ST § 28180 >>

28180. (a) The purchaser's name, date of birth, and driver's license or identification number shall be obtained electronically from the magnetic strip on the purchaser's driver's license or identification and shall not be supplied by any other means, except as authorized by the department.

(b) The requirement of subdivision (a) shall not apply in either of the following cases:

(1) The purchaser's identification consists of a military identification card.

(2) Due to technical limitations, the magnetic strip reader is unable to obtain the required information from the purchaser's identification. In those circumstances, the firearms dealer shall obtain a photocopy of the identification as proof of compliance.

(c) In the event that the dealer has reported to the department that the dealer's equipment has failed, information pursuant to this section shall be obtained by an alternative method to be determined by the department.

SEC. 6.66. Section 28185 is added to the Penal Code, to read:

<< CA ST § 28185 >>

28185. (a) No dealer shall provide the information required by this article to any third party, or use the information for any purpose other than as required or authorized by statute or regulation, without the written consent of the purchaser or transferee.

(b) This section shall not apply to the electronic submission of information to the department as required by this article and Article 3 (commencing with Section 28200), through a third party authorized by the department.

SEC. 6.67. Section 28190 is added to the Penal Code, to read:

<< CA ST § 28190 >>

28190. Any records generated pursuant to this article by a person licensed pursuant to Sections 26700 to 26915, inclusive, that are no longer required to be maintained by that licensee, if destroyed, shall be destroyed in accordance with Section 1798.31 of the Civil Code.

SEC. 6.68. Section 28210 is added to the Penal Code, to read:

<< CA ST § 28210 >>

28210. (a)(1) Where the register is used, the purchaser of any firearm shall be required to present to the dealer clear evidence of the person's identity and age.

(2) The dealer shall require the purchaser to sign the purchaser's current legal name and affix the purchaser's residence address and date of birth to the register in quadruplicate.

(3) The salesperson shall sign the register in quadruplicate, as a witness to the signature and identification of the purchaser.

(b) Any person furnishing a fictitious name or address, knowingly furnishing any incorrect information, or knowingly omitting any information required to be provided for the register shall be punished as provided in Section 28250.

(c)(1) The original of the register shall be retained by the dealer in consecutive order.

(2) Each book of 50 originals shall become the permanent register of transactions, which shall be retained for not less than three years from the date of the last transaction.

(3) Upon presentation of proper identification, the permanent register of transactions shall be available for inspection by any peace officer, Department of Justice employee designated by the Attorney General, or agent of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives. Until July 1, 2012, no information shall be compiled therefrom regarding the purchasers or other transferees of firearms that are not handguns.

(d) On the date of the application to purchase, two copies of the original sheet of the register shall be placed in the mail, postage prepaid, and properly addressed to the Department of Justice.

(e) If requested, a photocopy of the original shall be provided to the purchaser by the dealer.

(f) If the transaction is a private party transfer conducted pursuant to Chapter 5 (commencing with Section 28050), a photocopy of the original shall be provided to the seller or purchaser by the dealer, upon request. The dealer shall redact all of the purchaser's personal information, as required pursuant to subdivision (a) of Section 28160 and subdivision (a) of Section 28165, from the seller's copy, and the seller's personal information from the purchaser's copy.


SEC. 6.69. Section 28215 is added to the Penal Code, to read:

<< CA ST § 28215 >>

28215. (a)(1) Where the electronic or telephonic transfer of applicant information is used, the purchaser shall be required to present to the dealer clear evidence of the person's identity and age.

(2) The dealer shall require the purchaser to sign the purchaser's current legal name to the record of electronic or telephonic transfer.

(3) The salesperson shall sign the record of electronic or telephonic transfer, as a witness to the signature and identification of the purchaser.

(b) Any person furnishing a fictitious name or address, knowingly furnishing any incorrect information, or knowingly omitting any information required to be provided for the electronic or telephonic transfer shall be punished as provided in Section 28250.

(c)(1) The original of each record of electronic or telephonic transfer shall be retained by the dealer in consecutive order.

(2) Each original shall become the permanent record of the transaction, which shall be retained for not less than three years from the date of the last transaction.

(3) Upon presentation of proper identification, the permanent record of the transaction shall be provided for inspection by any peace officer, Department of Justice employee designated by the Attorney General, or agent of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives. Until July 1, 2012, no information shall be compiled therefrom regarding the purchasers or other transferees of firearms that are not handguns.

(d) On the date of the application to purchase, the record of applicant information shall be transmitted to the Department of Justice by electronic or telephonic transfer.

(e) If requested, a copy of the record of electronic or telephonic transfer shall be provided to the purchaser by the dealer.

(f) If the transaction is a private party transfer conducted pursuant to Chapter 5 (commencing with Section 28050), a copy shall be provided to the seller or purchaser by the dealer, upon request. The dealer shall redact all of the purchaser's personal information, as required pursuant to subdivision (a) of Section 28160 and subdivision (a) of Section 28165, from the seller's copy, and the seller's personal information from the purchaser's copy.

SEC. 6.70. Section 28220 is added to the Penal Code, to read:

<< CA ST § 28220 >>

28220. (a) Upon submission of firearm purchaser information, the Department of Justice shall examine its records, as well as those records that it is authorized to request from the State Department of Mental Health pursuant to Section 8104 of the Welfare and Institutions Code, in order to determine if the purchaser is a person described in subdivision (a) of Section 27535, or is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(b) To the extent that funding is available, the Department of Justice may participate in the National Instant Criminal Background Check System (NICS), as described in subsection (t) of Section 922 of Title 18 of the United States Code, and, if that participation is implemented, shall notify the dealer and the chief of the police department of the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, that the purchaser is a person prohibited from acquiring a firearm under federal law.

(c) If the department determines that the purchaser is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm or is a person described in subdivision (a) of Section 27535, it shall immediately notify the dealer and the chief of the police department of the city or city and county in which the sale was made, or if the sale was made in a district in which there is no municipal police department, the sheriff of the county in which the sale was made, of that fact.

(d) If the department determines that the copies of the register submitted to it pursuant to subdivision (d) of Section 28210 contain any blank spaces or inaccurate, illegible, or incomplete information, preventing identification of the purchaser or the handgun or other firearm to be purchased, or if any fee required pursuant to Section 28225 is not submitted by the dealer in conjunction with submission of copies of the register, the department may notify the dealer of that fact. Upon notification by the department, the dealer shall submit corrected copies of the register to the department, or shall submit any fee required pursuant to Section 28225, or both, as appropriate and, if notification by the department is received by the dealer at any time prior to delivery of the firearm to be purchased, the dealer shall withhold delivery until the conclusion of the waiting period described in Sections 26815 and 27540.

(e) If the department determines that the information transmitted to it pursuant to Section 28215 contains inaccurate or incomplete information preventing identification of the purchaser or the firearm to be purchased, or if the fee required pursuant to Section 28225 is not transmitted by the dealer in conjunction with transmission of the electronic or telephonic record, the department may notify the dealer of that fact. Upon notification by the department, the dealer shall transmit corrections to the record of electronic or telephonic transfer to the department, or shall transmit any fee required pursuant to Section 28225, or both, as appropriate, and if notification by the department is received by the dealer at any time prior to delivery of the firearm to be purchased, the dealer shall withhold delivery until the conclusion of the waiting period described in Sections 26815 and 27540.

SEC. 6.71. Section 28240 is added to the Penal Code, to read:

<< CA ST § 28240 >>

28240. (a) Until July 1, 2012, only one fee shall be charged pursuant to this article for a single transaction on the same date for the sale of any number of firearms that are not handguns or for the taking of possession of those firearms.

(b) In a single transaction on the same date for the delivery of any number of firearms that are handguns, and commencing July 1, 2012, for any firearm, the department shall charge a reduced fee pursuant to this article for the second and subsequent firearms that are part of that transaction.

(c) Only one fee shall be charged pursuant to this article for a single transaction on the same date for taking title or possession of any number of firearms pursuant to Section 26905, 27870, 27875, 27915, 27920, or 27925.

SEC. 6.72. Section 28245 is added to the Penal Code, to read:

<< CA ST § 28245 >>

28245. Whenever the Department of Justice acts pursuant to this article as it pertains to firearms other than handguns, the department's acts or omissions shall be deemed to be discretionary within the meaning of the California Tort Claims Act pursuant to Division 3.6 (commencing with Section 810) of Title 1 of the Government Code.

SEC. 6.73. Section 28400 is added to the Penal Code, to read:

<< CA ST § 28400 >>

28400. (a) Article 1 (commencing with Section 28100), Article 2 (commencing with Section 28150), Article 3 (commencing with Section 28200), and Article 4 (commencing with Section 28300) do not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun, and commencing July 1, 2012, any firearm, is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.74. Section 28410 is added to the Penal Code, to read:

<< CA ST § 28410 >>

28410. (a) Article 1 (commencing with Section 28100), Article 2 (commencing with Section 28150), Article 3 (commencing with Section 28200), and Article 4 (commencing with Section 28300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.75. Section 28415 is added to the Penal Code, to read:

<< CA ST § 28415 >>

28415. (a) Article 1 (commencing with Section 28100), Article 2 (commencing with Section 28150), Article 3 (commencing with Section 28200), and Article 4 (commencing with Section 28300) do not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.76. Section 29805 is added to the Penal Code, to read:

<< CA ST § 29805 >>

29805. Except as provided in Section 29855 or subdivision (a) of Section 29800, any person who has been convicted of a misdemeanor violation of Section 71, 76, 136.1, 136.5, or 140, subdivision (d) of Section 148, Section 171b, paragraph (1) of subdivision (a) of Section 171c, 171d, 186.28, 240, 241, 242, 243, 243.4, 244.5, 245, 245.5, 246.3, 247, 273.5, 273.6, 417, 417.6, 422, 626.9, 646.9, or 830.95, subdivision (a) of former Section 12100, as that section read at any time from when it was enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to when it was repealed by Section 18 of Chapter 23 of the Statutes of 1994, Section 17500, 17510, 25300, 25800, 30315, or 32625, subdivision (b) or (d) of Section 26100, or Section 27510, or Section 8100, 8101, or 8103 of the Welfare and Institutions Code, any firearm-related offense pursuant to Sections 871.5 and 1001.5 of the Welfare and Institutions Code, or of the conduct punished in subdivision (c) of Section 27590, and who, within 10 years of the conviction, owns, purchases, receives, or has in possession or under custody or control, any firearm is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine. The court, on forms prescribed by the Department of Justice, shall notify the department of persons subject to this section. However, the prohibition in this section may be reduced, eliminated, or conditioned as provided in Section 29855 or 29860.

SEC. 6.77. Section 29825 is added to the Penal Code, to read:

<< CA ST § 29825 >>

29825. (a) Every person who purchases or receives, or attempts to purchase or receive, a firearm knowing that the person is prohibited from doing so by a temporary restraining order or injunction issued pursuant to Section 527.6, 527.8, or 527.85 of the Code of Civil Procedure, a protective order as defined in Section 6218 of the Family Code, a protective order issued pursuant to Section 136.2 or 646.91 of this code, or a protective order issued pursuant to Section 15657.03 of the Welfare and Institutions

Code, is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(b) Every person who owns or possesses a firearm knowing that the person is prohibited from doing so by a temporary restraining order or injunction issued pursuant to Section 527.6, 527.8, or 527.85 of the Code of Civil Procedure, a protective order as defined in Section 6218 of the Family Code, a protective order issued pursuant to Section 136.2 or 646.91 of this code, or a protective order issued pursuant to Section 15657.03 of the Welfare and Institutions Code, is guilty of a public offense, which shall be punishable by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(c) If probation is granted upon conviction of a violation of this section, the court shall impose probation consistent with Section 1203.097.

(d) The Judicial Council shall provide notice on all protective orders that the respondent is prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive a firearm while the protective order is in effect. The order shall also state that the firearm shall be relinquished to the local law enforcement agency for that jurisdiction or sold to a licensed gun dealer, and that proof of surrender or sale shall be filed within a specified time of receipt of the order. The order shall state the penalties for a violation of the prohibition. The order shall also state on its face the expiration date for relinquishment.

SEC. 6.78. Section 30105 is added to the Penal Code, to read:

<< CA ST § 30105 >>

30105. (a) An individual may request that the Department of Justice perform a firearms eligibility check for that individual. The applicant requesting the eligibility check shall provide the personal information required by Section 28160 or 28165, as applicable, but not information regarding any firearm, to the department, in an application specified by the department.

(b) The department shall charge a fee of twenty dollars ($20) for performing the eligibility check authorized by this section, but not to exceed the actual processing costs of the department. After the department establishes fees sufficient to reimburse the department for processing costs, fees charged may increase at a rate not to exceed the legislatively approved cost-of-living adjustment for the department's budget or as otherwise increased through the Budget Act.

(c) An applicant for the eligibility check pursuant to subdivision (a) shall complete the application, have it notarized by any licensed California Notary Public, and submit it by mail to the department.

(d) Upon receipt of a notarized application and fee, the department shall do all of the following:

(1) Examine its records, and the records it is authorized to request from the State Department of Mental Health pursuant to Section 8104 of the Welfare and Institutions Code, to determine if the purchaser is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(2) Notify the applicant by mail of its determination of whether the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. The department's notification shall state either "eligible to possess firearms as of the date the check was completed" or "ineligible to possess firearms as of the date the check was completed."

(e) If the department determines that the information submitted to it in the application contains any blank spaces, or inaccurate, illegible, or incomplete information, preventing identification of the applicant, or if the required fee is not submitted, the department shall not be required to perform the firearms eligibility check.

(f) The department shall make applications to conduct a firearms eligibility check as described in this section available to licensed firearms dealers and on the department's Web site.

(g) The department shall be immune from any liability arising out of the performance of the firearms eligibility check, or any reliance upon the firearms eligibility check.

(h) No person or agency may require or request another person to obtain a firearms eligibility check or notification of a firearms eligibility check pursuant to this section. A violation of this subdivision is a misdemeanor.

(i) The department shall include on the application specified in subdivision (a) and the notification of eligibility specified in subdivision (d) the following statements:

"No person or agency may require or request another person to obtain a firearms eligibility check or notification of firearms eligibility check pursuant to Section 30105 of the Penal Code. A violation of these provisions is a misdemeanor."

"If the applicant for a firearms eligibility check purchases, transfers, or receives a firearm through a licensed dealer as required by law, a waiting period and background check are both required."

SEC. 6.79. Section 30150 is added to the Penal Code, to read:

<< CA ST § 30150 >>

30150. (a) Section 30105 does not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun, and commencing July 1, 2012, any firearm, is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.80. Section 30160 is added to the Penal Code, to read:

<< CA ST § 30160 >>

30160. (a) Section 30105 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.81. Section 30165 is added to the Penal Code, to read:

<< CA ST § 30165 >>

30165. (a) Section 30105 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.82. Section 30312 is added to the Penal Code, to read:

<< CA ST § 30312 >>

30312. (a) Commencing February 1, 2011, the delivery or transfer of ownership of handgun ammunition in this state may only occur in a face-to-face transaction with the deliverer or transferor being provided bona fide evidence of identity from the purchaser or other transferee, provided, however, that handgun ammunition may be purchased over the Internet or through other means of remote ordering if a handgun ammunition vendor in California initially receives the ammunition and processes the transfer in compliance with this section and Article 3 (commencing with Section 30345).

(b) Subdivision (a) shall not apply to or affect the sale, delivery, or transfer of handgun ammunition to any of the following:

(1) An authorized law enforcement representative of a city, county, city and county, or state or federal government, if the sale, delivery, or transfer is for exclusive use by that government agency and, prior to the sale, delivery, or transfer of the handgun ammunition, written authorization from the head of the agency employing the purchaser or transferee is obtained, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency employing the individual.

(2) A sworn peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 who is authorized to carry a firearm in the course and scope of the officer's duties.

(3) An importer or manufacturer of handgun ammunition or firearms who is licensed to engage in business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.

(4) A person who is on the centralized list maintained by the Department of Justice pursuant to Article 6 (commencing with Section 28450) of Chapter 6 of Division 6 of this title.

(5) A person who is licensed as a dealer or collector of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and who has a current certificate of eligibility issued by the Department of Justice pursuant to Section 26710.

(6) A handgun ammunition vendor.

(7) A consultant-evaluator.

(c) A violation of this section is a misdemeanor.

SEC. 6.83. Section 30346 is added to the Penal Code, to read:

<< CA ST § 30346 >>

30346. (a) Commencing February 1, 2011, a vendor shall provide written notice to the local police chief, or if the vendor is in an unincorporated area, to the county sheriff, of the vendor's intent to conduct business in the jurisdiction, and shall obtain any regulatory or business license required by the jurisdiction for ammunition sellers.

(b) Copies of the ammunition sales records required by this article shall be transmitted to the county sheriff or chief of police if required by local law.

SEC. 6.84. Section 30352 is added to the Penal Code, to read:

<< CA ST § 30352 >>

30352. (a) Commencing February 1, 2011, a vendor shall not sell or otherwise transfer ownership of any handgun ammunition without, at the time of delivery, legibly or electronically recording the following information:

(1) The date of the sale or other transaction.

(2) The purchaser's or transferee's driver's license or other identification number and the state in which it was issued.

(3) The brand, type, and amount of ammunition sold or otherwise transferred.

(4) The purchaser's or transferee's signature.

(5) The name of the salesperson who processed the sale or other transaction.

(6) The right thumbprint of the purchaser or transferee on the above form.

(7) The purchaser's or transferee's full residential address and telephone number.

(8) The purchaser's or transferee's date of birth.

(b) Subdivision (a) shall not apply to or affect sales or other transfers of ownership of handgun ammunition by handgun ammunition vendors to any of the following, if properly identified:

(1) A person licensed pursuant to Sections 26700 to 26915, inclusive.

(2) A handgun ammunition vendor.

(3) A person who is on the centralized list maintained by the department pursuant to Article 6 (commencing with Section 28450) of Chapter 6 of Division 6 of this title.

(4) A target facility that holds a business or regulatory license.

(5) A gunsmith.

(6) A wholesaler.

(7) A manufacturer or importer of firearms licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code, and the regulations issued pursuant thereto.

(8) An authorized law enforcement representative of a city, county, city and county, or state or federal government, if the sale or other transfer of ownership is for exclusive use by that government agency, and, prior to the sale, delivery, or transfer of the handgun ammunition, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made. Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser, transferee, or person otherwise acquiring ownership is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that individual is employed.

SEC. 6.85. Section 30355 is added to the Penal Code, to read:

<< CA ST § 30355 >>

30355. (a) Commencing February 1, 2011, the records required by this article shall be maintained on the premises of the vendor for a period of not less than five years from the date of the recorded transfer.

(b) Any records required by this article that are no longer required to be maintained shall be destroyed in a manner that protects the privacy of the purchaser or transferee who is the subject of the record.

SEC. 6.86. Section 30355 is added to the Penal Code, to read:

<< CA ST § 30355 >>

30355. (a) Commencing February 1, 2011, the records required by this article shall be maintained on the premises of the vendor for a period of not less than five years from the date of the recorded transfer.

(b) Any records required by this article that are no longer required to be maintained shall be destroyed in a manner that protects the privacy of the purchaser or transferee who is the subject of the record.

(c) Any records generated pursuant to this article that are no longer required to be maintained shall be destroyed in accordance with Section 1798.81 of the Civil Code.

SEC. 6.87. Section 30357 is added to the Penal Code, to read:

<< CA ST § 30357 >>

30357. (a) Commencing February 1, 2011, the records referred to in Section 30352 shall be subject to inspection at any time during normal business hours by any peace officer employed by a sheriff, city police department, or district attorney as provided in subdivision (a) of Section 830.1, or employed by the department as provided in subdivision (b) of Section 830.1, provided that the officer is conducting an investigation where access to those records is or may be relevant, is seeking information about persons prohibited from owning a firearm or ammunition, or is engaged in ensuring compliance with the Dangerous Weapons Control Law, as defined in Section 23500, or any other laws pertaining to firearms or ammunition.

(b) The records referred to in Section 30352 shall also be subject to inspection at any time during normal business hours by any other employee of the department, provided that the employee is conducting an investigation where access to those records is or may be relevant, is seeking information about persons prohibited from owning a firearm or ammunition, or is engaged in ensuring compliance with the Dangerous Weapons Control Law, as defined in Section 23500, or any other laws pertaining to firearms or ammunition.

(c) Records may be copied for investigatory or enforcement purposes by any person authorized to inspect those records pursuant to this article.

SEC. 6.88. Section 30358 is added to the Penal Code, to read:

<< CA ST § 30358 >>

30358. Commencing February 1, 2011, except for the purposes set forth in Section 30357, no vendor shall provide the information specified in subdivision (a) of Section 30352 to any third party without the written consent of the purchaser or transferee.

SEC. 6.89. Section 30358 is added to the Penal Code, to read:

<< CA ST § 30358 >>

30358. Commencing February 1, 2011, except for the purposes set forth in Section 30357, no vendor shall provide the information specified in subdivision (a) of Section 30352 to any third party, or use the information for any purpose other than as is required or authorized by statute or regulation, without the written consent of the purchaser or transferee of the handgun ammunition who is the subject of the record.

SEC. 6.895. Section 30365 is added to the Penal Code, to read:

<< CA ST § 30365 >>

30365. (a) A violation of Section 30352, 30355, 30358, 30360, or 30362 is a misdemeanor.

(b) The provisions of this section are cumulative, and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

SEC. 6.90. Section 31705 is added to the Penal Code, to read:

<< CA ST § 31705 >>

31705. (a) Subdivision (a) of Section 31615 does not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun, and commencing July 1, 2012, any firearm, is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.91. Section 31715 is added to the Penal Code, to read:

<< CA ST § 31715 >>

31715. (a) Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.92. Section 31720 is added to the Penal Code, to read:

<< CA ST § 31720 >>

31720. (a) Subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2102, any firearm, is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.93. Section 31735 is added to the Penal Code, to read:

<< CA ST § 31735 >>

31735. Subdivision (a) of Section 31615 does not apply to the sale, delivery, loan, or transfer of a firearm made by any person other than a representative of an authorized law enforcement agency to any public or private nonprofit historical society, museum, or institutional collection, if all of the following conditions are met:

(a) The entity receiving the firearm is open to the public.

(b) The firearm is deactivated or rendered inoperable prior to delivery.

(c) The firearm is not of a type prohibited from being sold, delivered, or transferred to the public.

(d) Prior to delivery, the entity receiving the firearm submits a written statement to the person selling, loaning, or transferring the firearm stating that the firearm will not be restored to operating condition, and will either remain with that entity, or if subsequently disposed of, will be transferred in accordance with the applicable provisions listed in Section 16575 and, if applicable, with Section 31615.

(e) If title to a handgun, and commencing July 1, 2012, any firearm, is being transferred to the public or private nonprofit historical society, museum, or institutional collection, then the designated representative of that entity shall, within 30 days of taking possession of that firearm, forward by prepaid mail or deliver in person to the Department of Justice, a single report signed by both parties to the transaction, which includes all of the following information:

(1) Information identifying the person representing the public or private historical society, museum, or institutional collection.

(2) Information on how title was obtained and from whom.

(3) A description of the firearm in question.

(4) A copy of the written statement referred to in subdivision (d).

(f) The report forms that are to be completed pursuant to this section shall be provided by the Department of Justice.

(g) In the event of a change in the status of the designated representative, the entity shall notify the department of a new representative within 30 days.

SEC. 6.94. Section 31775 is added to the Penal Code, to read:

<< CA ST § 31775 >>

31775. Until July 1, 2012, subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of firearms if all of the following conditions are satisfied:

(a) The firearms are unloaded.

(b) The firearms are not handguns.

(c) The sale, delivery, or transfer is made by a dealer to another dealer, upon proof of compliance with the requirements of Section 27555.

SEC. 6.95. Section 31795 is added to the Penal Code, to read:

<< CA ST § 31795 >>

31795. Until July 1, 2012, subdivision (a) of Section 31615 does not apply to the sale, delivery, or transfer of an unloaded firearm, other than a handgun, by a dealer to himself or herself.

SEC. 6.96. Section 33850 is added to the Penal Code, to read:

<< CA ST § 33850 >>

33850. (a) Any person who claims title to any firearm that is in the custody or control of a court or law enforcement agency and who wishes to have the firearm returned shall make application for a determination by the Department of Justice as to whether the applicant is eligible to possess a firearm. The application shall include the following:

(1) The applicant's name, date and place of birth, gender, telephone number, and complete address.

(2) Whether the applicant is a United States citizen. If the applicant is not a United States citizen, the application shall also include the applicant's country of citizenship and the applicant's alien registration or I–94 number.

(3) If the firearm is a handgun, and commencing July 1, 2012, for any firearm, the firearm's make, model, caliber, barrel length, handgun type, country of origin, and serial number, provided, however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, a place on the application to note that fact.

(4) For residents of California, the applicant's valid California driver's license number or valid California identification card number issued by the Department of Motor Vehicles. For nonresidents of California, a copy of the applicant's military identification with orders indicating that the individual is stationed in California, or a copy of the applicant's valid driver's license from the applicant's state of residence, or a copy of the applicant's state identification card from the applicant's state of residence. Copies of the documents provided by non-California residents shall be notarized.

(5) The name of the court or law enforcement agency holding the firearm.

(6) The signature of the applicant and the date of signature.

(7) Any person furnishing a fictitious name or address or knowingly furnishing any incorrect information or knowingly omitting any information required to be provided for the application, including any notarized information pursuant to paragraph (4), shall be guilty of a misdemeanor.

(b) A person who owns a firearm that is in the custody of a court or law enforcement agency and who does not wish to obtain possession of the firearm, and the firearm is an otherwise legal firearm, and the person otherwise has right to title of the firearm, shall be entitled to sell or transfer title of the firearm to a licensed dealer.

(c) Any person furnishing a fictitious name or address, or knowingly furnishing any incorrect information or knowingly omitting any information required to be provided for the application, including any notarized information pursuant to paragraph (4) of subdivision (a), is punishable as a misdemeanor.

SEC. 6.97. Section 33860 is added to the Penal Code, to read:

<< CA ST § 33860 >>

33860. (a) The Department of Justice shall establish a fee of twenty dollars ($20) per request for return of a firearm, plus a three-dollar ($3) charge for each additional firearm being processed as part of the request to return a firearm, to cover its costs for processing firearm clearance determinations submitted pursuant to this chapter.

(b) The fees collected pursuant to subdivision (a) shall be deposited into the Dealers' Record of Sale Special Account.

(c) The department may increase the fee by using the California Consumer Price Index as compiled and reported by the California Department of Industrial Relations to determine an annual rate of increase. Any fee increase shall be rounded to the nearest dollar.

SEC. 6.98. Section 33865 is added to the Penal Code, to read:

<< CA ST § 33865 >>

33865. (a) When the Department of Justice receives a completed application pursuant to Section 33850 accompanied by the fee required pursuant to Section 33860, it shall conduct an eligibility check of the applicant to determine whether the applicant is eligible to possess a firearm.

(b) The department shall have 30 days from the date of receipt to complete the background check, unless the background check is delayed by circumstances beyond the control of the department. The applicant may contact the department to inquire about the reason for a delay.

(c) If the department determines that the applicant is eligible to possess the firearm, the department shall provide the applicant with written notification that includes the following:

(1) The identity of the applicant.

(2) A statement that the applicant is eligible to possess a firearm.

(3) A description of the firearm by make, model, and serial number, provided, however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, a place on the application to note that fact.

(d) If the firearm is a handgun, and commencing July 1, 2012, for any firearm, the department shall enter a record of the firearm into the Automated Firearms System, provided, however, that if the firearm is not a handgun and does not have a serial number, identification number, or identification mark assigned to it, the department shall note that fact.

(e) If the department denies the application, and the firearm is an otherwise legal firearm, the department shall notify the applicant of the denial and provide a form for the applicant to use to sell or transfer the firearm to a licensed dealer. The applicant may contact the department to inquire about the reason for the denial.

SEC. 6.99. Section 33880 is added to the Penal Code, to read:

<< CA ST § 33880 >>

33880. (a) A city, county, or city and county, or a state agency may adopt a regulation, ordinance, or resolution imposing a charge equal to its administrative costs relating to the seizure, impounding, storage, or release of a firearm.

(b) The fee under subdivision (a) shall not exceed the actual costs incurred for the expenses directly related to taking possession of a firearm, storing the firearm, and surrendering possession of the firearm to a licensed firearms dealer or to the owner.

(c) The administrative costs described in subdivisions (a) and (b) may be waived by the local or state agency upon verifiable proof that the firearm was reported stolen at the time the firearm came into the custody or control of the law enforcement agency.

(d) The following apply to any charges imposed for administrative costs pursuant to this section:

(1) The charges shall only be imposed on the person claiming title to the firearm.

(2) Any charges shall be collected by the local or state authority only from the person claiming title to the firearm.

(3) The charges shall be in addition to any other charges authorized or imposed pursuant to this code.

(4) No charge may be imposed for any hearing or appeal relating to the removal, impound, storage, or release of a firearm, unless that hearing or appeal was requested in writing by the legal owner of the firearm. In addition, the charge may be imposed only upon the person requesting that hearing or appeal.

(e) No costs for any hearing or appeal related to the release of a firearm shall be charged to the legal owner who redeems the firearm, unless the legal owner voluntarily requests the poststorage hearing or appeal. No city, county, city and county, or state agency shall require a legal owner to request a poststorage hearing as a requirement for release of the firearm to the legal owner.

SEC. 6.100. Section 33890 is added to the Penal Code, to read:

<< CA ST § 33890 >>

33890. (a) Notwithstanding Section 11106, the Department of Justice may retain personal information about an applicant in connection with a claim under this chapter for a firearm that is not a handgun, to allow for law enforcement confirmation of compliance with this chapter. The information retained may include personal identifying information regarding the individual applying for the clearance, but may not include information that identifies any particular firearm that is not a handgun.

(b) This section shall become inoperative on July 1, 2012.

SEC. 6.101. Section 34355 is added to the Penal Code, to read:

<< CA ST § 34355 >>

34355. (a) Section 34350 does not apply to any sale, delivery, or transfer of firearms made to an authorized law enforcement representative of any city, county, city and county, or state, or of the federal government, for exclusive use by that governmental agency if, prior to the sale, delivery, or transfer of these firearms, written authorization from the head of the agency authorizing the transaction is presented to the person from whom the purchase, delivery, or transfer is being made.

(b) Proper written authorization is defined as verifiable written certification from the head of the agency by which the purchaser or transferee is employed, identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency by which that person is employed.

(c) Within 10 days of the date a handgun, and commencing July 1, 2012, any firearm, is acquired by the agency, a record of the same shall be entered as an institutional weapon into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.102. Section 34365 is added to the Penal Code, to read:

<< CA ST § 34365 >>

34365. (a) Section 34350 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a peace officer pursuant to Section 10334 of the Public Contract Code.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred pursuant to Section 10334 of the Public Contract Code to that peace officer, the name of the officer and the make, model,

serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 6.103. Section 34370 is added to the Penal Code, to read:

<< CA ST § 34370 >>

34370. (a) Section 34350 does not apply to the sale, delivery, or transfer of a firearm by a law enforcement agency to a retiring peace officer who is authorized to carry a firearm pursuant to Chapter 5 (commencing with Section 26300) of Division 5.

(b) Within 10 days of the date that a handgun, and commencing July 1, 2012, any firearm, is sold, delivered, or transferred to that retiring peace officer, the name of the officer and the make, model, serial number, and other identifying characteristics of the firearm being sold, delivered, or transferred shall be entered into the Automated Firearms System (AFS) via the California Law Enforcement Telecommunications System (CLETS) by the law enforcement or state agency that sold, delivered, or transferred the firearm. Any agency without access to AFS shall arrange with the sheriff of the county in which the agency is located to input this information via this system.

SEC. 7. The California Law Revision Commission is authorized to study and to make recommendations to the Legislature and the Governor regarding the minor clean-up issues identified in the report prepared by that commission pursuant to Resolution Chapter 128 of the Statutes of 2006.

SEC. 8.01. Section 6.01 of this bill adds Section 12021.5 to the Penal Code, and incorporates into that section amendments to Section 12021.5 of the Penal Code, as added by Section 8 of Chapter 171 of the Statutes of 2009, proposed by AB 2263. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 2263 amends Section 12021.5 of the Penal Code, as added by Section 8 of Chapter 171 of the Statutes of 2009, (3) this bill repeals and adds Section 12021.5 of the Penal Code on January 1, 2012, and (4) this bill is enacted after AB 2263, in which case Section 12021.5 as proposed to be added by Section 5 of this bill shall not become operative.

SEC. 8.02. Section 6.02 of this bill adds Section 12022.2 to the Penal Code, and incorporates into that section amendments to Section 12022.2 of the Penal Code, as added by Section 10 of Chapter 171 of the Statutes of 2009, proposed by AB 2263. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 2263 amends Section 12022.2 of the Penal Code, as added by Section 10 of Chapter 171 of the Statutes of 2009, (3) this bill repeals and adds Section 12022.2 of the Penal Code on January 1, 2012, and (4) this bill is enacted after AB 2263, in which case Section 12022.2 as proposed to be added by Section 5 of this bill shall not become operative.

SEC. 8.03. Section 6.03 of this bill adds Section 12022.4 to the Penal Code, and incorporates into that section amendments to Section 12022.4 of the Penal Code, as added by Section 12 of Chapter 171 of the Statutes of 2009, proposed by AB 2263. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 2263 amends Section 12022.4 of the Penal Code, as added by Section 12 of Chapter 171 of the Statutes of 2009, (3) this bill repeals and adds Section 12022.4 of the Penal Code on January 1, 2012, and (4) this bill is enacted after AB 2263, in which case Section 12022.4 as proposed to be added by Section 5 of this bill shall not become operative.

SEC. 8.04. Section 6.04 of this bill adds Section 16520 to the Penal Code, and incorporates into that section amendments to subdivision (e) of Section 12001 of the Penal Code proposed by AB 1934. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1934 amends subdivision (e) of Section 12001 of the Penal Code, (3) this bill adds Section 16520 to the Penal Code, and (4) this bill is enacted after AB 1934, in which case Section 16520 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.045. Section 6.045 of this bill adds Section 16650 to the Penal Code, and incorporates into that section amendments to Section 12323 of the Penal Code proposed by AB 2358. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 2358 amends Section 12323 of the Penal Code, (3) this bill adds Section 16650 to the Penal Code, and (4) this bill is enacted after AB 2358, in which case Section 16650 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.05. Section 6.05 of this bill adds Section 16840 to the Penal Code, and adjusts a cross-reference in that section to reflect amendments to Section 12025 of the Penal Code proposed by AB 1934. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1934 amends Section 12025 of the Penal Code to delete subdivision (b), (3) this bill adds Section 16840 to the Penal Code, and (4) this bill is enacted after AB 1934, in which case Section 16840 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.06. Section 6.06 of this bill adds Section 17000 to the Penal Code, and incorporates into that section amendments to subdivision (n) of Section 12001 of the Penal Code proposed by AB 1934. It shall only become operative if (1) both AB 1934 and this bill are enacted and become effective on or before January 1, 2011, (2) AB 1934 amends subdivision (n) of Section 12001 of the Penal Code, (3) this bill adds Section 17000 to the Penal Code, (4) AB 1810 is not enacted, does not become effective on or before January 1, 2011, or does not amend subdivision (n) of Section 12001 of the Penal Code, and (5) this bill is enacted after AB 1934, in which case Section 17000 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.07. Section 6.07 of this bill adds Section 17000 to the Penal Code, and incorporates into that section amendments to subdivision (n) of Section 12001 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both AB 1810 and this bill are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (n) of Section 12001 of the Penal Code, (3) this bill adds Section 17000 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 17000 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.08. Section 6.08 of this bill adds Section 17040 to the Penal Code, which would continue the substance of paragraph (3) of subdivision (f) of Section 12037 proposed to be added to the Penal Code by AB 1934. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1934 adds Section 12037 to the Penal Code and that section includes a definition of "public place," and (3) this bill is enacted after AB 1934.

SEC. 8.09. Section 6.09 of this bill adds Section 17295 to the Penal Code, which would continue the substance of paragraph (1) of subdivision (f) of Section 12037 proposed to be added to the Penal Code by AB 1934. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1934 adds Section 12037 to the Penal Code and that section defines when a handgun is deemed unloaded, and (3) this bill is enacted after AB 1934.

SEC. 8.10. Section 6.10 of this bill adds Section 17510 to the Penal Code, and incorporates into that section amendments to Section 12590 of the Penal Code proposed by AB 1934. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1934 amends Section 12590 of the Penal Code, (3) this bill adds Section 17510 to the Penal Code, and (4) this bill is enacted after AB 1934, in which case Section 17510 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.11. Section 6.11 of this bill adds Section 22295 to the Penal Code, and incorporates into that section amendments to Section 12002 of the Penal Code proposed by SB 1190. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) SB 1190 amends Section 12002 of the Penal Code, (3) this bill adds Section 22295 to the Penal Code, and (4) this bill is enacted after SB 1190, in which case Section 22295 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.12. Section 6.12 of this bill adds Section 25400 to the Penal Code, and incorporates into that section amendments to Section 12025 of the Penal Code proposed by AB 1934. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1934 amends Section 12025 of the Penal Code, (3) this bill adds Section 25400

to the Penal Code, and (4) this bill is enacted after AB 1934, in which case Section 25400 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.13. Section 6.13 of this bill adds Section 25590 to the Penal Code, which would continue the substance of the new paragraph (20) that would be added to subdivision (a) of Section 12026.2 of the Penal Code by AB 1934. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1934 adds a new paragraph (20) to subdivision (a) of Section 12026.2 of the Penal Code, and (3) this bill is enacted after AB 1934.

SEC. 8.14. Section 6.14 of this bill adds Section 25595 to the Penal Code, and incorporates into that section amendments to Section 12026.2 of the Penal Code proposed by AB 1934. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1934 amends Section 12026.2 of the Penal Code, (3) this bill adds Section 25595 to the Penal Code, and (4) this bill is enacted after AB 1934, in which case Section 25595 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.15. Section 6.15 of this bill adds Section 25605 to the Penal Code, and incorporates into that section amendments to Section 12026 of the Penal Code proposed by AB 1934. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1934 amends Section 12026 of the Penal Code, (3) this bill adds Section 25605 to the Penal Code, and (4) this bill is enacted after AB 1934, in which case Section 25605 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.16. Section 6.16 of this bill adds Chapter 6 (commencing with Section 26350) of Division 5 of Title 4 of Part 6 to the Penal Code, which would continue the substance of subdivisions (a), (b), (c), (d), (e), (g), and (h) of Section 12037 proposed to be added to the Penal Code by AB 1934. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1934 adds Section 12037 to the Penal Code, and (3) this bill is enacted after AB 1934.

SEC. 8.17. Section 6.17 of this bill adds Section 26600 to the Penal Code, and incorporates into that section amendments to paragraph (2) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph 2 of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 26600 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26600 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.18. Section 6.18 of this bill adds Section 26610 to the Penal Code, and incorporates into that section amendments to paragraph (4) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (4) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 26610 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26610 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.19. Section 6.19 of this bill adds Section 26615 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (5) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 26615 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26615 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.20. Section 6.20 of this bill adds Section 26805 to the Penal Code, and incorporates into that section amendments to paragraph (1) of subdivision (b) of Section 12071 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (1) of subdivision (b) of Section 12071 of the Penal Code, (3) this bill adds Section 26805 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26805 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.21. Section 6.21 of this bill adds Section 26820 to the Penal Code, and incorporates into that section amendments to paragraph (4) of subdivision (b) of Section 12071 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (4) of subdivision

(b) of Section 12071 of the Penal Code, (3) this bill adds Section 26820 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26820 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.22. Section 6.22 of this bill adds Section 26840 to the Penal Code, and incorporates into that section amendments to subparagraph (B) of paragraph (8) of subdivision (b) of Section 12071 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subparagraph (B) of paragraph (8) of subdivision (b) of Section 12071 of the Penal Code, (3) this bill adds Section 26840 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26840 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.23. Section 6.23 of this bill adds Section 26845 to the Penal Code, and incorporates into that section amendments to subparagraph (C) of paragraph (8) of subdivision (b) of Section 12071 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subparagraph (C) of paragraph (8) of subdivision (b) of Section 12071 of the Penal Code, (3) this bill adds Section 26845 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26845 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.24. Section 6.24 of this bill adds Section 26850 to the Penal Code, and incorporates into that section amendments to subparagraph (D) of paragraph (8) of subdivision (b) of Section 12071 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subparagraph (D) of paragraph (8) of subdivision (b) of Section 12071 of the Penal Code, (3) this bill adds Section 26850 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26850 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.25. Section 6.25 of this bill adds Section 26865 to the Penal Code, and incorporates into that section amendments to paragraph (9) of subdivision (b) of Section 12071 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (9) of subdivision (b) of Section 12071 of the Penal Code, (3) this bill adds Section 26865 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26865 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.26. Section 6.26 of this bill adds Section 26890 to the Penal Code, and incorporates into that section amendments to subdivision (h) of Section 12071 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (h) of Section 12071 of the Penal Code, (3) this bill adds Section 26890 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26890 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.27. Section 6.27 of this bill adds Section 26905 to the Penal Code, and incorporates into that section amendments to paragraph (18) of subdivision (b) of Section 12071 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (18) of subdivision (b) of Section 12071 of the Penal Code, (3) this bill adds Section 26905 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26905 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.28. Section 6.28 of this bill adds Section 26955 to the Penal Code, and incorporates into that section amendments to subdivision (g) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (g) of Section 12078 of the Penal Code, (3) this bill adds Section 26955 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26955 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.29. Section 6.29 of this bill adds Section 26960 to the Penal Code, and incorporates into that section amendments to subdivision (n) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (n) of Section 12078 of the Penal

Code, (3) this bill adds Section 26960 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26960 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.30. Section 6.30 of this bill adds Section 26965 to the Penal Code, and incorporates into that section amendments to subdivision (r) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (r) of Section 12078 of the Penal Code, (3) this bill adds Section 26965 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 26965 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.31. Section 6.31 of this bill adds Section 27050 to the Penal Code, and incorporates into that section amendments to paragraph (2) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (2) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 27050 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27050 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.32. Section 6.32 of this bill adds Section 27060 to the Penal Code, and incorporates into that section amendments to paragraph (4) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (4) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 27060 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27060 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.33. Section 6.33 of this bill adds Section 27065 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (5) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 27065 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27065 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.34. Section 6.34 of this bill adds Section 27110 to the Penal Code, and incorporates into that section amendments to paragraph (1) of subdivision (k) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (1) of subdivision (k) of Section 12078 of the Penal Code, (3) this bill adds Section 27110 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27110 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.35. Section 6.35 of this bill adds Section 27130 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (k) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (5) of subdivision (k) of Section 12078 of the Penal Code, (3) this bill adds Section 27130 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27130 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.36. Section 6.36 of this bill adds Section 27400 to the Penal Code, and incorporates into that section amendments to paragraph (2) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (2) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 27400 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27400 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.37. Section 6.37 of this bill adds Section 27410 to the Penal Code, and incorporates into that section amendments to paragraph (4) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (4) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 27410 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27410 as proposed to be added by Section 6 of this bill shall not become operative.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 599 of 697

SEC. 8.38. Section 6.38 of this bill adds Section 27415 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (5) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 27415 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27415 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.39. Section 6.39 of this bill adds Section 27540 to the Penal Code, and incorporates into that section amendments to subdivision (c) of Section 12072 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (c) of Section 12072 of the Penal Code, (3) this bill adds Section 27540 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27540 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.40. Section 6.40 of this bill adds Section 27560 to the Penal Code, and incorporates into that section amendments to paragraph (2) of subdivision (f) of Section 12072 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (2) of subdivision (f) of Section 12072 of the Penal Code, (3) this bill adds Section 27560 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27560 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.41. Section 6.41 of this bill adds Section 27565 to the Penal Code, and incorporates into that section amendments to paragraph (3) of subdivision (f) of Section 12072 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (3) of subdivision (f) of Section 12072 of the Penal Code, (3) this bill adds Section 27565 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27565 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.42. Section 6.42 of this bill adds Section 27590 to the Penal Code, and incorporates into that section amendments to subdivision (g) of Section 12072 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (g) of Section 12072 of the Penal Code, (3) this bill adds Section 27590 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27590 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.43. Section 6.43 of this bill adds Section 27600 to the Penal Code, and incorporates into that section amendments to paragraph (2) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (2) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 27600 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27600 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.44. Section 6.44 of this bill adds Section 27610 to the Penal Code, and incorporates into that section amendments to paragraph (4) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (4) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 27610 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27610 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.45. Section 6.45 of this bill adds Section 27615 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (5) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 27615 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27615 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.46. Section 6.46 of this bill adds Section 27655 to the Penal Code, and incorporates into that section amendments to subdivision (g) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (g) of Section 12078 of the Penal

Code, (3) this bill adds Section 27655 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27655 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.47. Section 6.47 of this bill adds Section 27660 to the Penal Code, and incorporates into that section amendments to subdivision (n) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (n) of Section 12078 of the Penal Code, (3) this bill adds Section 27660 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27660 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.48. Section 6.48 of this bill adds Section 27665 to the Penal Code, and incorporates into that section amendments to subdivision (r) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (r) of Section 12078 of the Penal Code, (3) this bill adds Section 27665 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27665 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.49. Section 6.49 of this bill adds Section 27710 to the Penal Code, and incorporates into that section amendments to paragraph (1) of subdivision (k) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (1) of subdivision (k) of Section 12078 of the Penal Code, (3) this bill adds Section 27710 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27710 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.50. Section 6.50 of this bill adds Section 27730 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (k) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (5) of subdivision (k) of Section 12078 of the Penal Code, (3) this bill adds Section 27730 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27730 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.51. Section 6.51 of this bill adds Section 27860 to the Penal Code, and incorporates into that section amendments to paragraph (8) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (8) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 27860 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27860 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.52. Section 6.52 of this bill adds Section 27870 to the Penal Code, and incorporates into that section amendments to paragraph (1) of subdivision (c) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (1) of subdivision (c) of Section 12078 of the Penal Code, (3) this bill adds Section 27870 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27870 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.53. Section 6.53 of this bill adds Section 27875 to the Penal Code, and incorporates into that section amendments to paragraph (2) of subdivision (c) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (2) of subdivision (c) of Section 12078 of the Penal Code, (3) this bill adds Section 27875 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27875 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.54. Section 6.54 of this bill adds Section 27880 to the Penal Code, and incorporates into that section amendments to subdivision (d) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (d) of Section 12078 of the Penal Code, (3) this bill adds Section 27880 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27880 as proposed to be added by Section 6 of this bill shall not become operative.

Case 3:17-cv-07357-RS   Document 163-3   Filed 01/21/21   Page 601 of 697

SEC. 8.55. Section 6.55 of this bill adds Section 27915 to the Penal Code, and incorporates into that section amendments to paragraph (1) of subdivision (i) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (1) of subdivision (i) of Section 12078 of the Penal Code, (3) this bill adds Section 27915 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27915 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.56. Section 6.56 of this bill adds Section 27920 to the Penal Code, and incorporates into that section amendments to paragraph (2) of subdivision (i) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (2) of subdivision (i) of Section 12078 of the Penal Code, (3) this bill adds Section 27920 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 27920 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.57. Section 6.57 of this bill adds Section 28000 to the Penal Code, and incorporates into that section amendments to subdivision (l) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (l) of Section 12078 of the Penal Code, (3) this bill adds Section 28000 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28000 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.58. Section 6.58 of this bill adds Section 28060 to the Penal Code, and incorporates into that section amendments to subdivision (b) of Section 12082 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (b) of Section 12082 of the Penal Code, (3) this bill adds Section 28060 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28060 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.59. Section 6.59 of this bill adds Section 28100 to the Penal Code, and incorporates into that section amendments to Section 12073 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends Section 12073 of the Penal Code, (3) this bill adds Section 28100 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28100 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.60. Section 6.60 of this bill adds Section 28160 to the Penal Code, and incorporates into that section amendments to subdivision (b) of Section 12077 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (b) of Section 12077 of the Penal Code, (3) this bill adds Section 28160 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28160 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.61. Section 6.61 of this bill adds Section 28165 to the Penal Code, and incorporates into that section amendments to subdivision (c) of Section 12077 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (c) of Section 12077 of the Penal Code, (3) this bill adds Section 28165 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28165 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.62. Section 6.62 of this bill adds Section 28170 to the Penal Code, and incorporates into that section amendments to subdivision (d) of Section 12077 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (d) of Section 12077 of the Penal Code, (3) this bill adds Section 28170 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28170 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.63. Section 6.63 of this bill adds Section 28180 to the Penal Code, and incorporates into that section amendments to subdivision (f) of Section 12077 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both AB 1810 and this bill are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (f) of Section

12077 of the Penal Code, (3) this bill adds Section 28180 to the Penal Code, (4) SB 282 or AB 2358 is not enacted, and (5) this bill is enacted after AB 1810, in which case Section 28180 as proposed to be added by Sections 6, 6.64, and 6.65 of this bill shall not become operative.

SEC. 8.64. Section 6.64 of this bill adds Section 28180 to the Penal Code, and incorporates into that section amendments to subdivision (f) of Section 12077 of the Penal Code proposed by SB 282, which is contingent on enactment of AB 2358. It shall only become operative if (1) SB 282, AB 2358, and this bill are enacted and become effective on or before January 1, 2011, (2) SB 282 amends subdivision (f) of Section 12077 of the Penal Code, (3) this bill adds Section 28180 to the Penal Code, (4) AB 1810 is not enacted, and (5) this bill is enacted after SB 282, in which case Section 28180 as proposed to be added by Sections 6, 6.63, and 6.65 of this bill shall not become operative.

SEC. 8.65. Section 6.65 of this bill adds Section 28180 to the Penal Code, and incorporates into that section amendments to subdivision (f) of Section 12077 of the Penal Code proposed by AB 1810 and SB 282, which is contingent on enactment of AB 2358. It shall only become operative if (1) AB 1810, SB 282, AB 2358, and this bill are all enacted and become effective on or before January 1, 2011, (2) AB 1810 and SB 282 amend subdivision (f) of Section 12077 of the Penal Code, (3) this bill adds Section 28180 to the Penal Code, and (4) this bill is enacted after AB 1810 and SB 282, in which case Section 28180 as proposed to be added by Sections 6, 6.63, and 6.64 of this bill shall not become operative.

SEC. 8.66. Section 6.66 of this bill adds Section 28185 to the Penal Code, which would continue the substance of subdivision (g) Section 12077 of the Penal Code as proposed by SB 282, which is contingent on enactment of AB 2358. It shall only become operative if (1) AB 2358, SB 282, and this bill are enacted and become effective on or before January 1, 2011, (2) SB 282 amends subdivision (g) of Section 12077 of the Penal Code, and (3) this bill is enacted after SB 282.

SEC. 8.67. Section 6.67 of this bill adds Section 28190 to the Penal Code, which would continue the substance of subdivision (h) proposed to be added to Section 12077 of the Penal Code by SB 282, which is contingent on enactment of AB 2358. It shall only become operative if (1) AB 2358, SB 282, and this bill are enacted and become effective on or before January 1, 2011, (2) SB 282 adds subdivision (h) to Section 12077 of the Penal Code, and (3) this bill is enacted after SB 282.

SEC. 8.68. Section 6.68 of this bill adds Section 28210 to the Penal Code, and incorporates into that section amendments to subdivision (b) of Section 12076 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (b) of Section 12076 of the Penal Code, (3) this bill adds Section 28210 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28210 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.69. Section 6.69 of this bill adds Section 28215 to the Penal Code, and incorporates into that section amendments to subdivision (c) of Section 12076 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (c) of Section 12076 of the Penal Code, (3) this bill adds Section 28215 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28215 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.70. Section 6.70 of this bill adds Section 28220 to the Penal Code, and incorporates into that section amendments to subdivision (d) of Section 12076 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (d) of Section 12076 of the Penal Code, (3) this bill adds Section 28220 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28220 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.71. Section 6.71 of this bill adds Section 28240 to the Penal Code, and incorporates into that section amendments to subdivision (i) of Section 12076 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (i) of Section 12076 of the Penal Code, (3) this bill adds Section 28240 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28240 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.72. Section 6.72 of this bill adds Section 28245 to the Penal Code, and incorporates into that section amendments to subdivision (k) of Section 12076 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (k) of Section 12076 of the Penal Code, (3) this bill adds Section 28245 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28245 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.73. Section 6.73 of this bill adds Section 28400 to the Penal Code, and incorporates into that section amendments to paragraph (2) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (2) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 28400 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28400 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.74. Section 6.74 of this bill adds Section 28410 to the Penal Code, and incorporates into that section amendments to paragraph (4) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (4) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 28410 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28410 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.75. Section 6.75 of this bill adds Section 28415 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (5) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 28415 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 28415 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.76. Section 6.76 of this bill adds Section 29805 to the Penal Code, and incorporates into that section amendments to Section 12021 of the Penal Code proposed by AB 2668. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 2668 amends Section 12021 of the Penal Code, (3) this bill adds Section 29805 to the Penal Code, and (4) this bill is enacted after AB 2668, in which case Section 29805 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.77. Section 6.77 of this bill adds Section 29825 to the Penal Code, and incorporates into that section amendments to Section 12021 of the Penal Code proposed by SB 1062. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) SB 1062 would amend Section 12021 of the Penal Code but for Section 28 of that bill, (3) this bill adds Section 29825 to the Penal Code, and (4) this bill is enacted after SB 1062, in which case Section 29825 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.78. Section 6.78 of this bill adds Section 30105 to the Penal Code, and incorporates into that section amendments to Section 12077.5 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends Section 12077.5 of the Penal Code, (3) this bill adds Section 30105 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 30105 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.79. Section 6.79 of this bill adds Section 30150 to the Penal Code, and incorporates into that section amendments to paragraph (2) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (2) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 30150 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 30150 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.80. Section 6.80 of this bill adds Section 30160 to the Penal Code, and incorporates into that section amendments to paragraph (4) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (4) of subdivision

(a) of Section 12078 of the Penal Code, (3) this bill adds Section 30160 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 30160 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.81. Section 6.81 of this bill adds Section 30165 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (5) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 30165 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 30165 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.82. Section 6.82 of this bill adds Section 30312 to the Penal Code, and incorporates into that section amendments to subdivisions (a) and (c) of Section 12318 of the Penal Code proposed by AB 2358. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 2358 amends subdivisions (a) and (c) of Section 12318 of the Penal Code, (3) this bill adds Section 30312 to the Penal Code, and (4) this bill is enacted after AB 2358, in which case Section 30312 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.83. Section 6.83 of this bill adds Section 30346 to the Penal Code, which would continue the substance of paragraph (8) proposed to be added to subdivision (a) of Section 12061 of the Penal Code by AB 2358. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 2358 adds paragraph (8) to subdivision (a) of Section 12061 of the Penal Code, and (3) this bill is enacted after AB 2358.

SEC. 8.84. Section 6.84 of this bill adds Section 30352 to the Penal Code, and incorporates into that section amendments to paragraph (3) of subdivision (a) of Section 12061 of the Penal Code proposed by AB 2358. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 2358 amends paragraph (3) of subdivision (a) of Section 12061 of the Penal Code, (3) this bill adds Section 30352 to the Penal Code, and (4) this bill is enacted after AB 2358, in which case Section 30352 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.85. Section 6.85 of this bill adds Section 30355 to the Penal Code, and incorporates into that section a sentence proposed to be added to paragraph (4) of subdivision (a) of Section 12061 of the Penal Code by AB 2358. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 2358 amends paragraph (4) of subdivision (a) of Section 12061 of the Penal Code to include a sentence on records that are no longer required to be maintained, (3) this bill adds Section 30355 to the Penal Code, (4) SB 282 is not enacted, and (5) this bill is enacted after AB 2358, in which case Section 30355 as proposed to be added by Sections 6 and 6.86 of this bill shall not become operative.

SEC. 8.86. Section 6.86 of this bill adds Section 30355 to the Penal Code, and incorporates into that section amendments to paragraph (4) of subdivision (a) of Section 12061 of the Penal Code proposed by AB 2358, as well as the substance of subdivisions (b) and (c) of Section 12062 of the Penal Code, proposed to be added by SB 282, which is contingent on enactment of AB 2358. It shall only become operative if (1) AB 2358, SB 282, and this bill are all enacted and become effective on or before January 1, 2011, (2) AB 2358 amends paragraph (4) of subdivision (a) of Section 12061 of the Penal Code to include a sentence on records that are no longer required to be maintained, (3) SB 282 adds Section 12062 to the Penal Code, (3) this bill adds Section 30355 to the Penal Code, and (4) this bill is enacted after AB 2358 and SB 282, in which case Section 30355 as proposed to be added by Sections 6 and 6.85 of this bill shall not become operative.

SEC. 8.87. Section 6.87 of this bill adds Section 30357 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (a) of Section 12061 of the Penal Code proposed by AB 2358. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 2358 amends paragraph (5) of subdivision (a) of Section 12061 of the Penal Code, (3) this bill adds Section 30357 to the Penal Code, and (4) this bill is enacted after AB 2358, in which case Section 30357 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.88. Section 6.88 of this bill adds Section 30358 to the Penal Code, which would continue the substance of a sentence proposed to be added to paragraph (4) of subdivision (a) of Section 12061 of the Penal Code by AB 2358. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 2358 amends paragraph (4)

of subdivision (a) of Section 12061 of the Penal Code to include a sentence on providing information to a third party, (3) SB 282 is not enacted, and (4) this bill is enacted after AB 2358, in which case Section 30358 as proposed to be added by Section 6.89 of this bill shall not become operative.

SEC. 8.89. Section 6.89 of this bill adds Section 30358 to the Penal Code, which would continue the substance of a sentence proposed to be added to paragraph (4) of subdivisions (a) of Section 12061 of the Penal Code by AB 2358, as well as the substance of subdivisions (a) and (c) of Section 12062 of the Penal Code, proposed to be added by SB 282, which is contingent on enactment of AB 2358. It shall only become operative if (1) AB 2358, SB 282, and this bill are all enacted and become effective on or before January 1, 2011, (2) AB 2358 amends paragraph (4) of subdivision (a) of Section 12061 of the Penal Code to include a sentence on providing information to a third party, (3) SB 282 adds Section 12062 to the Penal Code, (3) this bill adds Section 30358 to the Penal Code, and (4) this bill is enacted after AB 2358 and SB 282, in which case Section 30358 as proposed to be added by Section 6.88 of this bill shall not become operative.

SEC. 8.895. Section 6.895 of this bill adds Section 30365 to the Penal Code, and incorporates into that section changes required by the addition of Section 30358 to the Penal Code as proposed in Section 6.88 and in Section 6.89. It shall only become operative if either Section 6.88 or Section 6.89 of this bill becomes operative, in which case Section 30365 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.90. Section 6.90 of this bill adds Section 31705 to the Penal Code, and incorporates into that section amendments to paragraph (2) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (2) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 31705 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 31705 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.91. Section 6.91 of this bill adds Section 31715 to the Penal Code, and incorporates into that section amendments to paragraph (4) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (4) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 31715 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 31715 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.92. Section 6.92 of this bill adds Section 31720 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (5) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 31720 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 31720 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.93. Section 6.93 of this bill adds Section 31735 to the Penal Code, and incorporates into that section amendments to paragraph (8) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (8) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 31735 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 31735 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.94. Section 6.94 of this bill adds Section 31775 to the Penal Code, and incorporates into that section amendments to paragraph (1) of subdivision (k) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (1) of subdivision (k) of Section 12078 of the Penal Code, (3) this bill adds Section 31775 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 31775 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.95. Section 6.95 of this bill adds Section 31795 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (k) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (5) of subdivision

(k) of Section 12078 of the Penal Code, (3) this bill adds Section 31795 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 31795 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.96. Section 6.96 of this bill adds Section 33850 to the Penal Code, and incorporates into that section amendments to paragraph (1) of subdivision (a) of Section 12021.3 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (1) of subdivision (a) of Section 12021.3 of the Penal Code, (3) this bill adds Section 33850 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 33850 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.97. Section 6.97 of this bill adds Section 33860 to the Penal Code, and incorporates into that section amendments to subdivision (c) of Section 12021.3 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (c) of Section 12021.3 of the Penal Code, (3) this bill adds Section 33860 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 33860 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.98. Section 6.98 of this bill adds Section 33865 to the Penal Code, and incorporates into that section amendments to subdivision (e) of Section 12021.3 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (e) of Section 12021.3 of the Penal Code, (3) this bill adds Section 33865 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 33865 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.99. Section 6.99 of this bill adds Section 33880 to the Penal Code, and incorporates into that section amendments to subdivision (j) of Section 12021.3 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (j) of Section 12021.3 of the Penal Code, (3) this bill adds Section 33880 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 33880 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.100. Section 6.100 of this bill adds Section 33890 to the Penal Code, and incorporates into that section amendments to subdivision (h) of Section 12021.3 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends subdivision (h) of Section 12021.3 of the Penal Code, (3) this bill adds Section 33890 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 33890 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.101. Section 6.101 of this bill adds Section 34355 to the Penal Code, and incorporates into that section amendments to paragraph (2) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (2) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 34355 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 34355 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.102. Section 6.102 of this bill adds Section 34365 to the Penal Code, and incorporates into that section amendments to paragraph (4) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (4) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 34365 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 34365 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 8.103. Section 6.103 of this bill adds Section 34370 to the Penal Code, and incorporates into that section amendments to paragraph (5) of subdivision (a) of Section 12078 of the Penal Code proposed by AB 1810. It shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2011, (2) AB 1810 amends paragraph (5) of subdivision (a) of Section 12078 of the Penal Code, (3) this bill adds Section 34370 to the Penal Code, and (4) this bill is enacted after AB 1810, in which case Section 34370 as proposed to be added by Section 6 of this bill shall not become operative.

SEC. 9. Notwithstanding Section 28 of SB 1062 of the 2009-10 Regular Session, amendments proposed to Section 12021 of the Penal Code by Section 18 of that bill shall be operative from the effective date of that bill, if it is enacted, until January 1, 2012, unless AB 2668 becomes effective on or before January 1, 2011.

SEC. 10. Sections 7 and 9 of this act become operative on January 1, 2011. The remainder of this act becomes operative on January 1, 2012.

**End of Document**                                                          © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Exhibit 7



*California*
State Auditor

December 2017



# Concealed Carry Weapon Licenses

Sheriffs Have Implemented Their Local Programs
Inconsistently and Sometimes Inadequately

Report 2017-101



COMMITMENT
INTEGRITY
LEADERSHIP

 **CALIFORNIA STATE AUDITOR**
621 Capitol Mall, Suite 1200 | Sacramento | CA | 95814

 **916.445.0255** | TTY **916.445.0033**

 For complaints of state employee misconduct,
contact us through the **Whistleblower Hotline**:
**1.800.952.5665**

*Don't want to miss any of our reports? Subscribe to our email list at* **auditor.ca.gov**

*For questions regarding the contents of this report, please contact* Margarita Fernández, Chief of Public Affairs, *at* 916.445.0255

This report is also available online at www.auditor.ca.gov | Alternate format reports available upon request | Permission is granted to reproduce reports



**Elaine M. Howle** State Auditor
**Doug Cordiner** Chief Deputy

December 14, 2017                                                                    2017-101

The Governor of California
President pro Tempore of the Senate
Speaker of the Assembly
State Capitol
Sacramento, California  95814

Dear Governor and Legislative Leaders:

As requested by the Joint Legislative Audit Committee, the California State Auditor presents this audit report concerning concealed carry weapon (CCW) license programs operated by county sheriff's departments. State law allows licensing authorities—such as county sheriff's departments—to issue CCW licenses to members of the general public upon proof of an applicant's good moral character, that good cause exists for the license, that an applicant resides within the licensing authority's jurisdiction, and that the applicant has completed firearms training. State law does not further define good moral character or good cause for a license, and therefore licensing authorities have broad discretion in the decision to issue licenses. Our review focused on the programs run by the Los Angeles, Sacramento, and San Diego County sheriff's departments.

This report concludes that the three sheriff's departments we reviewed each use the discretion provided to them by state law to implement their licensing programs differently than one another. However, the departments we reviewed failed to consistently apply their own licensing policies or standards in the licenses we reviewed at each department. We also reviewed fiscal information about the CCW programs to determine whether the programs negatively affect county budgets. We found that each program was relatively small when compared to each sheriff department's expenditures and overall county expenditures and therefore did not have a significant fiscal effect on the county. Although the three sheriffs' departments we reviewed charge application processing fees for CCW licensing, these fees do not appear to cover the costs of the programs. Further, we found that licensing authorities differ in their interpretations of state law's maximum allowable fees for CCW licenses. Therefore, we recommend that the Legislature clarify the law that limits these fees and that each department increase their fees to the maximum extent allowed by state law.

Some have argued that state law needs to change to remove the broad discretion licensing authorities have to issue licenses. After reviewing the CCW program at these three departments, including license issuance rates and license revocations, we did not identify a bad effect due directly to the different approaches departments take to issuing licenses. As a result, we do not conclude state law needs to change to clarify the issuance criteria. However, we do recommend that each department take steps to strengthen their local programs, including modifying licensing policies, establishing or modifying license processing procedures, and improving staff training.

Respectfully submitted,

*Elaine M. Howle*

ELAINE M. HOWLE, CPA
State Auditor

## Selected Abbreviations Used in This Report

| | |
|---|---|
| CCPI | California Consumer Price Index |
| Justice | California Department of Justice |
| CCW | Concealed carry weapon |
| DMV | Department of Motor Vehicles |
| DUI | Driving under the influence |

# Contents

Summary                                                                         1

Introduction                                                                    5

**Chapter 1**
Three Sheriffs' Departments Have Different CCW Policies, but They
Have Not Always Followed Those Policies When Implementing
Their Local CCW Programs                                                        13

Recommendations                                                                38

**Chapter 2**
The CCW Programs in the Counties We Reviewed Have Limited
Fiscal Impact, and State Law Should Be Clarified Concerning
Maximum Fees for CCW Licenses                                                   41

Recommendations                                                                52

**Audit Responses**
Los Angeles County Sheriff's Department                                        55

   California State Auditor's Comments on the Response
   From the Los Angeles County Sheriff's Department                            61

Sacramento County Sheriff's Department                                         65

   California State Auditor's Comments on the Response
   From the Sacramento County Sheriff's Department                             69

San Diego County Sheriff's Department                                          73

   California State Auditor's Comments on the Response
   From the San Diego County Sheriff's Department                              79

**vi** | California State Auditor Report 2017-101
December 2017

Blank page inserted for reproduction purposes only.

# Summary

### Results in Brief

State law outlines four broad criteria that an individual must meet to be issued a concealed carry weapon (CCW) license. Specifically, state law allows licensing authorities—sheriffs' and police departments—to issue a CCW license upon proof that the applicant is of good moral character, has good cause for the license, is a resident of the licensing authority's jurisdiction, and has completed firearms training. Although state law establishes these four criteria, it provides broad discretion to the licensing authority to determine whether an applicant has met the requirements. Under this discretion, each of the entities we reviewed as part of this audit—the Los Angeles County Sheriff's Department (Los Angeles), Sacramento County Sheriff's Department (Sacramento), and San Diego County Sheriff's Department (San Diego)—established its own requirements for how applicants can satisfy the four criteria.

The approaches taken to assess whether applicants have met the four criteria vary widely among the three departments. For example, Sacramento's practice is to accept as good cause an applicant's stated desire to obtain a license for self-defense or for the defense of his or her family. In contrast, Los Angeles considers an applicant to have good cause only if there is convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, his or her spouse, or dependent child; and that this danger cannot be adequately dealt with by existing law enforcement resources, cannot be reasonably avoided by alternative measures, and would be significantly mitigated by the applicant's carrying a concealed firearm. In another example, Sacramento and San Diego have set specific criteria for situations when an applicant's criminal history reveals a lack of good moral character. However, Los Angeles has not set such a standard and decides case by case whether an applicant meets the requirement for good moral character. Although this wide range of approaches to issuing CCW licenses is allowed by state law, we found that the three departments each failed to follow their own respective policies in some cases.

We found the starkest failure to follow policy at Los Angeles. Our review of 25 CCW licenses issued from fiscal years 2014–15 through 2016–17 showed that the department did not follow its CCW policy when it issued any of those licenses. Most notably, Los Angeles issued most of these licenses—24—without obtaining documentation that the applicants met its good cause requirement. The department's policy requires each applicant to submit convincing evidence of a clear and present danger to life or of great bodily harm to establish good cause. The department also requires each applicant to document that a personal threat exists. Further, of

*Audit Highlights . . .*

*Our review of information related to CCW license programs operated by three county sheriffs' departments—Los Angeles, Sacramento, and San Diego—revealed the following:*

» *State law allows licensing authorities to issue a CCW license upon proof that the applicant is of good moral character, has good cause for the license, is a resident of the licensing authority's jurisdiction, and has completed firearms training.*

» *Although the three departments have developed their own permissible policies for evaluating CCW applications, they do not consistently follow those policies when issuing CCW licenses.*

   • *Los Angeles approved applications that did not meet its policy requirements for good cause, residency, and training.*

   • *Sacramento issued some CCW licenses without collecting documentation showing that the licensing process adhered to its own standards.*

   • *San Diego's renewal process has weaknesses that led it to renew some licenses inappropriately.*

» *The CCW programs have minimal impact on county budgets because they represent a small percentage of those budgets.*

» *Although the departments' CCW programs likely run a deficit, only Sacramento tracks its CCW program expenditures.*

*continued on next page . . .*

» *Licensing authorities differ in their interpretations of state law's maximum allowable fees for CCW licenses.*

• *All three departments charged fees for initial CCW licenses that were below the maximum amount allowed by state law.*

the 25 CCW licenses we reviewed, 22 were issued to individuals within the law enforcement community, including current or former law enforcement officers, judicial officers, and deputy district attorneys. In fact, our review of the 197 CCW licenses Los Angeles issued that were active as of August 2017 showed that more than half were issued to individuals in these professions. When we asked about this condition, the lieutenant responsible for reviewing CCW applications stated that individuals within the law enforcement community satisfy the department's good cause requirement by the nature of their jobs. However, making that decision based solely on the applicant's profession both directly contradicts Los Angeles's written policy—which specifically states that no position or job classification in itself shall constitute good cause for issuance—and has led the department to treat applicants inequitably based on their occupations.

Sacramento also issued licenses without complying with its internal standards for good moral character, county residency, and training. Of the 25 CCW licenses we reviewed there, Sacramento issued eight without documentation that demonstrated residency, as the department's standards require. However, in most of these cases, the department obtained at least some evidence aligned with its standards that demonstrated the applicants resided within Sacramento County. Other issues we noted in those 25 CCW license files showed that Sacramento also did not consistently document evidence of good moral character or of firearms training.

We also found that San Diego did not always comply with its policies and procedures when it issued and renewed some licenses. Most notably, San Diego's renewal process has weaknesses that have led it to renew some licenses inappropriately. San Diego allows staff the discretion to issue renewed CCW licenses without supervisory approval if an applicant's good cause remains the same and if the applicant has not had any contact with law enforcement. As a result, San Diego renewed a license without collecting documentation that demonstrated residency, good cause for a license, or the applicant's signature on the application. Then it renewed the same license a second time without obtaining sufficient documentation to satisfy its residency or good cause requirements.

Despite the departments' differing standards for issuing CCW licenses, we did not identify a bad effect from the varying approaches they have taken. Although we believe the differences between Sacramento's criteria for good cause and the criteria of the other two departments are most likely the reason for the higher number of licenses it issued during the period we audited, we cannot conclude that a higher rate of license issuance is necessarily a harmful effect of local discretion. Similarly, Sacramento has revoked many more CCW licenses than did either San Diego or Los Angeles, but the number of revoked licenses

is not sufficient on its own to determine that state law needs to be clarified. A revoked license is not necessarily evidence that a licensing authority erred in issuing the license because an individual could have been qualified at the time of licensure and then had a particular circumstance—such as a conviction or mental health-related event—that resulted in a prohibition under federal and state law for that individual to own or possess a firearm. The licensing authority could not have known these subsequent events at the time of licensure.

When we reviewed the funding of each of the three CCW programs, we found that Los Angeles and San Diego could not readily determine whether their respective CCW programs operate at a surplus or a deficit because neither specifically tracks CCW expenditures. At Los Angeles, staff asserted that because of the minimal size of the CCW program, its expenditures were not significant enough for the department to track specifically the costs and time associated with the program. At San Diego, the licensing unit tracks only the expenditures of its entire unit because it is not required to track separately the specific costs of CCW licensing. In contrast, Sacramento does track its CCW program expenditures. Its fiscal records from fiscal years 2014–15 through 2016–17 show that its CCW program had deficits ranging from about $160,000 to $275,000 in each year. However, Sacramento's overall CCW expenditures represent a very small percentage of its budget and of the county's budget; in fiscal year 2016–17, for example, CCW expenditures represented 0.13 percent of total departmental expenditures and an even smaller percentage, 0.03 percent, of Sacramento County's total general fund expenditures in that year. According to the chief of departmental administrative services, the department pays for a large portion of its CCW costs using salary savings. Therefore, Sacramento's CCW program likely has a negligible impact on the county budget.

Finally, we found that licensing authorities differ in their interpretations of state law's maximum allowable fees for CCW licenses. State law allows licensing authorities to charge a processing fee equal to the actual costs of processing a license application up to a maximum of $100. The law also stipulates that licensing authorities may raise this fee beyond the $100 limit, consistent with the rise in the California Consumer Price Index (CCPI) since 1999. However, the Sacramento sheriff believes that state law does not allow his department to charge more than $100 for an initial license. We disagree with this interpretation, and we calculated that the maximum allowable fee as of 2017 would be about $156 for an initial license. If Sacramento had charged the maximum allowable fee during the three-year period we reviewed, it would have reduced its program's annual deficits by more than half. Because of licensing authorities' differing interpretations of state law governing fees for CCW licenses and the potential benefit that clarifying the law could have, we believe that the Legislature should amend state law.

### Selected Recommendations

*Legislature*

The Legislature should amend state law to clarify that licensing authorities can increase fees for CCW applications above the maximum amount in state law, provided that the fee for an initial application does not exceed the authority's costs and that the rate of increase for any of the fees does not exceed that of the CCPI.

*Departments*

To ensure that its CCW licensing decisions align with its public licensing policy, Los Angeles should only issue a CCW license after collecting documentation of personal threats against the applicant that satisfies its definition of good cause. If Los Angeles believes that its CCW policy does not include all acceptable good causes, it should, by March 2018, revise its policy and post the revised policy to its website.

To ensure that staff are gathering sufficient evidence from applicants to demonstrate residency, good moral character, and firearms training, by March 2018 Sacramento should create formal CCW processing procedures and train its staff to follow these procedures. Sacramento should also establish a review process in which it regularly reviews a selection of license files to determine whether its staff are collecting sufficient and consistent documentation in accordance with its policies.

To ensure that its staff appropriately renew CCW licenses, by March 2018 San Diego should establish a routine supervisory review of a selection of renewed licenses.

### Agency Comments

Although each department expressed concerns about the conclusions we reached, Los Angeles and San Diego agreed with most of the recommendations that we made to them. However, Los Angeles disagreed with our recommendation related to its good cause policy and only partially agreed with a recommendation we made related to its good moral character, residency, and training policies. San Diego did not agree with a recommendation related to its fees. Sacramento disagreed with our conclusion related to the maximum allowable fees under state law and did not clearly indicate whether it agreed with our recommendations.

# Introduction

## Background

Generally, under California law, members of the public may not carry a concealed weapon in public unless they have been issued a license, commonly referred to as a *concealed carry weapon* (CCW) *license*. A CCW license enables individuals to carry a specific pistol, revolver, or other firearm that can be concealed upon their person. In California, state law allows—but does not require—a licensing authority, which can be either the sheriff of a county or the chief or other head of a municipal police department, to issue licenses. This discretion makes California a *may-issue* state. In contrast, a *shall-issue* state is one in which issuing authorities are required to issue a permit to a qualified applicant. Licenses issued by any licensing authority in California are valid throughout the State unless a license-specific restriction provides otherwise.

## Criteria for CCW Licensing

California law gives discretion to licensing authorities to issue licenses to applicants through a public licensing process upon proof of the following: the applicant is of good moral character, good cause exists for issuing the license, the applicant is a resident of that county or city within the county or the applicant's principal place of employment or business is in the county or city within the county, and the applicant has completed a training course on firearm safety and the law regarding the permissible use of a firearm. Beyond setting these licensing requirements, state law does not further define what constitutes *good moral character* or *good cause* for a license, and it defers to licensing authorities as to how applicants must demonstrate that they meet the residency requirement. Licensing authorities may also issue licenses to reserve law enforcement officers using different issuing criteria. Our audit focused on licenses issued through the public process.

Licensing authorities may not issue a CCW license to an applicant under certain circumstances. Specifically, if the applicant is a *prohibited person*—an individual prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm—a licensing authority may not issue that individual a CCW license. California also requires licensing authorities to submit an applicant's fingerprints to the California Department of Justice (Justice), and state law requires Justice to provide the licensing authority a report of all data and information pertaining to the applicant, including whether the applicant is a prohibited person. Also, if at any time during licensure the applicant becomes a

prohibited person, state law requires Justice to notify the licensing authority of that fact, and the licensing authority must revoke the individual's license and notify Justice of the revocation.

State law regulates the maximum duration of a CCW license, and licensing authorities have the discretion to apply even shorter periods. Generally, a CCW license is valid for up to two years, but state law makes certain exceptions to this time frame. For example, licenses issued to judges can be valid for up to three years. Licensing agencies also have the authority and discretion to include any reasonable restrictions or conditions that the authority deems warranted, including restrictions as to the time, place, manner, and circumstances under which the licensee may carry the firearm. An individual can also choose to apply for a renewed license, at which point he or she must still meet the four key requirements for a CCW license.

## CCW Funding and Fees

Applicants for a CCW license must pay a fee to Justice, which conducts a criminal background check. State law allows licensing authorities to charge a local processing fee for an initial license as well as a local processing fee for license renewal or license amendment. Licenses must be amended if, for example, the licensed individual changes his or her address, or when the individual wishes to designate a different firearm to carry concealed. In addition, state law provides that a licensing authority's initial application fee must not exceed the actual cost of processing the application. However, state law allows the initial, renewal, and amendment license fee limits, shown in Table 1, to be increased at a rate not to exceed any increase in the California Consumer Price Index (CCPI) provided that actual costs are not exceeded in the case of the initial license. Also, the licensing authority is allowed to collect up to 20 percent of its initial application fee at the time the individual applies for a license; it then collects the remaining amount when it issues the license. Finally, state law prohibits licensing authorities from imposing any additional fee or charge as a condition of processing an application for a CCW license.

**Table 1**
**Maximum Local License Fees Permitted Under State Law Before CCPI Adjustment**

|  | MAXIMUM UNADJUSTED FEE |
|---|---|
| Upon initial license application* | $100 |
| Upon application for license renewal | 25 |
| Upon amendment of a license | 10 |

Source: Penal Code section 26190.

Note: Each of these fees may be increased at a rate not to exceed any increase in the CCPI.

\* Local fees for processing an initial license application may not exceed a licensing authority's actual cost to process the application. The licensing authority may collect the first 20 percent of the local fee upon the applicant's filing of the application and collect the balance upon issuance of the license.

## Scope and Methodology

The Joint Legislative Audit Committee (Audit Committee) directed the California State Auditor to review information related to the CCW licenses issued by licensing authorities in Sacramento, San Diego, and Los Angeles counties over the last three fiscal years. The licensing authorities within those counties that we reviewed were the Sacramento County Sheriff's Department (Sacramento), the San Diego County Sheriff's Department (San Diego), and the Los Angeles County Sheriff's Department (Los Angeles) respectively. We reviewed the sheriffs' departments because they were the licensing authorities that would have jurisdiction over the largest number of people within the counties. Specifically, the Audit Committee directed us to identify the number of CCW licenses issued, modified, denied, and revoked by year as well as fiscal information about the CCW program across the three licensing authorities; whether those authorities were consistently following existing laws and enforcing department processes; and whether the statutory "good cause" requirement needs clarifying. To provide additional context, at each department we identified the number of active licenses. As of June 30, 2017, Sacramento had 9,130 active licenses and San Diego had 1,281 active licenses and as of January 1, 2017, county populations of about 1.5 million and 3.3 million, respectively.[1] As of August 18, 2017, our manual count of Los Angeles's hard-copy license files identified 197 active licenses and a county population of more than 10.2 million as of January 1, 2017.[2] Table 2, beginning on the following page, lists the objectives that the Audit Committee approved and the methods used to address those objectives.

---

[1] The number of active licenses is based on unaudited data obtained from Sacramento and San Diego.

[2] We conducted a manual count of Los Angeles's CCW license files because, although Los Angeles has a tracking spreadsheet for active CCW licenses, the Audit Committee directed us to identify information that its tracking spreadsheet did not include, such as the number of licenses Los Angeles renewed and issued during our audit period.

**Table 2**
**Audit Objectives and the Methods Used to Address Them**

| | AUDIT OBJECTIVE | METHOD |
|---|---|---|
| 1 | Review and evaluate the laws, rules, and regulations significant to the audit objectives. | Reviewed relevant laws, rules, regulations, and other background materials applicable to CCW programs. |
| 2 | Identify the number of new, renewed, and amended CCW licenses issued, the number of denied licenses, and the number of licenses revoked each year. | • For fiscal years 2014–15 through 2016–17, attempted to determine the number of CCW licenses issued, renewed, denied, and revoked at the sheriffs' departments in Los Angeles, Sacramento, and San Diego. We were unable to determine the total number issued, renewed, denied, and revoked in Los Angeles for fiscal year 2014–15 because the department's record retention policy is to keep nonactive files for only two years. |
| | | • We were unable to determine the number of amended CCW licenses for Sacramento and San Diego because the information was not tracked reliably in those departments' databases. At Los Angeles, we identified a total of 21 amendments to licenses during our audit period. However, we found during our review of active license files that Los Angeles did not consistently file the amendment documents alongside the documentation for the licenses that were amended. Further, according to Los Angeles, after two years the department purges its records of inactive licenses. Accordingly, any amendments to those purged licenses were not available for our review. Therefore, we are not assured that our count of amendments is complete. Licenses can be amended if a licensee wants to change the firearm listed on a license or if the licensee's address changes. Amended licenses can also be issued if the licensing authority changes the restrictions applicable to a license. State law prohibits an amendment to a license from extending the period of time for which it is valid. Therefore, although the information we present does not include a complete count of amended licenses, this situation does not affect this report's conclusions about the volume of licenses issued or renewed. |
| 3 | Determine whether the licensing authorities are consistently following existing laws and enforcing their processes for CCW licensing in their county, including the following: | |
| | a. Issuing licenses in accordance with state law's requirements. | • Reviewed available information from each of the departments that describes how each department applies the four key criteria from state law related to the issuance of CCW licenses: good moral character, good cause, county residency, and firearms training.<br>• Interviewed key staff to determine how each department processes CCW applications. |
| | b. Collecting adequate evidence to demonstrate "good cause" and an individual's "good moral character." | • At each department, reviewed a random selection of 25 issued licenses—15 initial licenses and 10 renewed licenses—and 15 denied licenses. We tested these files to determine whether the department processed each application according to its own policies and practices, as well as the requirements of state law.<br>• Interviewed relevant staff about any exceptions we identified in our testing. |
| | c. Enforcing the license program by revoking CCW licenses upon receiving notification that the license holder became ineligible. | • Requested that Justice provide us with copies of all prohibited person notices that it sent to the three departments from fiscal years 2014–15 through 2016–17. No notices were sent to Los Angeles during this period.<br>• For Sacramento, we selected 10 prohibited person notices. For San Diego, we selected all available notices from the audit period (four notices). We then determined whether the departments revoked licenses in response to the notices and whether they notified Justice of the revocations.<br>• We reviewed up to five additional revocations that did not have an associated prohibited person notice to determine whether Sacramento and San Diego had reported these local revocations to Justice. We found both departments reported all of the local revocations we reviewed. We did not review any revocations at Los Angeles because it did not revoke any licenses during our audit period. |

| AUDIT OBJECTIVE | METHOD |
|---|---|
| 4   Determine, to the extent possible, whether the factors licensing authorities consider before issuing a license should be expanded in state law. For example, determine whether there is a need to clarify the statutory "good cause" requirement. | • Interviewed the sheriff or his designee to obtain perspective on whether the factors in state law for CCW license issuance should be changed.<br>• Considered the results of our review of each of the three departments under objectives 2 and 3.<br>• Reviewed the licensing requirements of five other *may-issue* states—Delaware, Hawaii, Massachusetts, New Jersey, and New York—and compared those states' requirements to California's. Our review determined that other states also provide for discretion in the decisions made by licensing authorities. Specifically on the issue of good cause, we found that the other states we reviewed varied greatly in how much additional guidance they provide on what constitutes good cause for a CCW license. |
| 5   Compare and contrast fiscal information about the CCW program across licensing authorities. At each licensing authority, determine the following: | |
| a.   The licensing authority's budget and costs for processing CCW licenses and enforcing the license program. | • Obtained financial reports from Sacramento to identify the amount the department budgeted and spent on its CCW program. Sacramento did not budget specifically for its CCW program in the first two years of our audit period. In the final year, the department budgeted for the program's one full-time staff member. As we describe in Chapter 2, the department operates its CCW program by using several part-time retired annuitants from its extra help pool. The department budgets separately for its extra help pool.<br>• We found that Los Angeles and San Diego did not budget for or track expenditures specifically for their CCW programs. We discuss this in Chapter 2. |
| b.   The amount of fees charged and collected. | Interviewed relevant staff and reviewed documentation such as receipts and fee schedules to determine the amount each department charged for initial and renewed CCW licenses. |
| c.   Whether the fees the licensing authority charges and collects comply with state law, including the degree to which licensing authority fees were increased and whether the licensing authority's fees increased at a rate that exceeded the CCPI. | • Assessed the fee amounts identified under Objective 5(b) against the requirements in state law related to maximum fees.<br>• Determined the CCPI-adjusted maximums that state law would allow licensing authorities to charge for initial and renewed CCW licenses.<br>• Evaluated whether the departments' fees were higher than the CCPI-adjusted maximums from state law at any point from fiscal years 2014–15 through 2016–17. |
| d.   Whether the licensing process had an operating surplus or deficit and, if applicable, how the program was subsidized as well as any associated fiscal impact on county budgets. | • At each of the departments, determined the total amount of revenue collected under the CCW program annually from fiscal years 2014–15 through 2016–17.<br>• In Sacramento, because the department tracked both revenues and expenditures, we assessed whether expenditures were higher than revenues and then interviewed staff to determine what source of funding the department used to pay for any deficit in the CCW program.<br>• In Los Angeles and San Diego, because the departments did not track CCW program expenditures, we reviewed available information, such as fiscal reports, about the larger units within which the CCW program operated. In San Diego, we also reviewed a cost study conducted in fiscal year 2011–12 to determine whether a deficit likely existed in each department's CCW program.<br>• Reviewed public information about the size of each sheriff's department budget and each county's budget.<br>• For each of the entities we reviewed, we obtained expenditure reports both for the sheriff's department as a whole and for the county general fund. We interviewed staff at each county to assess the level of involvement each county has in setting budgets or other fiscal matters related specifically to the CCW program. We determined that none of the counties regularly review fiscal information about the CCW program. |
| 6   Review and assess any other issues that are significant to the audit. | Reviewed available information for what six other licensing authorities in California charge for an initial CCW license processing fee and confirmed that information with those licensing authorities. |

Sources: California State Auditor's analysis of Joint Legislative Audit Committee audit request number 2017-101, and information and documentation identified in the table column titled *Method*.

### Assessment of Data Reliability

In performing this audit, we obtained electronic data files extracted from the information systems listed in Table 3. The U.S. Government Accountability Office, whose standards we are statutorily required to follow, requires us to assess the sufficiency and appropriateness of computer-processed information that we use to support findings, conclusions, or recommendations. Table 3 describes the analyses we conducted using data from these information systems, our methods for testing, and the results of our assessments. Although these determinations may affect the precision of the numbers we present, there is sufficient evidence in total to support our audit findings, conclusions, and recommendations.

**Table 3**
**Methods Used to Assess Data Reliability**

| DATA SOURCE | PURPOSE | METHOD AND RESULT | CONCLUSION |
|---|---|---|---|
| Sacramento<br><br>Weapons Permits and Licenses database<br><br>Permitium database | To determine the number of new, renewed, amended, denied, and revoked CCW licenses from July 1, 2014, through June 30, 2017. | We performed data-set verification procedures and electronic testing of key data elements and we did not identify any significant issues. However, we identified limitations in the Weapons Permits and Licenses database—the database primarily used to track CCW licenses in all but six months of the audit period. Specifically, this database did not track CCW license amendment dates and only contained the most recent date for a recurring action. Because of these data limitations, we could not determine the number of amended CCW licenses. Further, the number of new, renewed, denied, and revoked CCW licenses were limited to the most recent actions not overwritten in the Weapons Permits and Licenses database. | Not sufficiently reliable for this audit purpose. Although this determination may affect the precision of the numbers we present, there is sufficient evidence in total to support our findings, conclusions, and recommendations. |
| | To make a selection of CCW license actions from July 1, 2014, through June 30, 2017. | | Because we were limited to the most recent actions not overwritten in the database, the data are not complete for this audit purpose. However, the department's procedures for processing applications did not change significantly throughout most of our audit period. Therefore, there is sufficient evidence in total to support our findings, conclusions, and recommendations. |
| San Diego<br><br>License Application Processing and Tracking database | To determine the number of new, renewed, amended, denied, revoked, and suspended CCW licenses from July 1, 2014, through June 30, 2017. | We performed data-set verification procedures and electronic testing of key data elements and did not identify any significant issues. However, we identified limitations in the License Application Processing and Tracking database. Specifically, this database did not track CCW license amendment dates and is not designed to consistently track and identify all license revocations and suspensions.  Additionally, the database contained only the most recent date for a recurring action. Because of these data limitations, we could not determine the number of amended CCW licenses. Further, the number of new, renewed, denied, revoked, and suspended CCW licenses were limited to the most recent actions not overwritten in the License Application Processing and Tracking database. | Not sufficiently reliable for this audit purpose. Although this determination may affect the precision of the numbers we present, there is sufficient evidence in total to support our findings, conclusions, and recommendations. |
| | To make a selection of CCW license actions from July 1, 2014, through June 30, 2017. | | Because we were limited to the most recent actions not overwritten in the database, the data are not complete for this audit purpose. However, the department's procedures for processing applications did not change significantly during our audit period. Therefore, there is sufficient evidence in total to support our findings, conclusions, and recommendations. |

| DATA SOURCE | PURPOSE | METHOD AND RESULT | CONCLUSION |
|---|---|---|---|
| Sacramento<br><br>Financial reports run from Sacramento County's Comprehensive Online Management Personnel and Accounting Systems for Sacramento County (COMPASS). | To determine the revenues and expenditures for the CCW program for fiscal years 2014–15 through 2016–17.<br><br>To determine departmentwide expenditures and budgets for fiscal years 2014–15 through 2016–17.<br><br>To determine Sacramento County's expenditures for fiscal year 2016–17. | We did not perform full data reliability testing. However, to gain some assurance of the reliability of the data related specifically to the CCW program, we observed Sacramento's staff running the expenditure and revenue reports to ensure that the staff entered the appropriate date range and account numbers. We did not perform additional procedures specific to data reliability because the expenditure records for Sacramento's CCW program were primarily paperless and the revenue records were kept among the revenue records for the entire county, which made identifying CCW-revenue records cost prohibitive. | Undetermined reliability for these audit purposes. Although this determination may affect the precision of the numbers we present, there is sufficient evidence in total to support our findings, conclusions, and recommendations. |
| San Diego<br><br>Financial reports run from San Diego County's Oracle E-Business Suite financial system. | To determine revenues for the CCW program for each fiscal year 2014–15 through fiscal year 2016–17.<br><br>To determine licensing unit expenditures and revenues for fiscal years 2014–15 through 2016–17.<br><br>To determine departmentwide expenditures and budgets for fiscal years 2014–15 through 2016–17.<br><br>To determine San Diego County's expenditures for fiscal year 2016–17. | We did not perform full data reliability testing. However, to gain some assurance of the reliability of the data related specifically to the CCW program, we observed San Diego staff running the reports to ensure that the staff member entered the appropriate date range and account numbers. We then haphazardly selected CCW revenue receipts and requested the supporting documentation to ensure that the reports we obtained included a record of the revenues that were included in those receipts. Although we planned to review 29 receipts, we found the system did not reflect the revenues collected for two of the receipts we selected and then stopped testing. | Not sufficiently reliable for the purpose of determining the CCW program revenue. Undetermined reliability for the remaining purposes. Although these determinations may affect the precision of the numbers we present, there is sufficient evidence in total to support our findings, conclusions, and recommendations. |
| Los Angeles<br><br>Financial reports run from Los Angeles County's eCAPS financial system. | To determine revenues for the CCW program for each fiscal year 2014–15 through fiscal year 2016–17.<br><br>To determine Office of the Undersheriff expenditures and revenues for fiscal years 2014–15 through 2016–17.<br><br>To determine departmentwide expenditures and budgets for fiscal years 2014–15 through 2016–17.<br><br>To determine Los Angeles County's expenditures for fiscal year 2016–17. | We did not perform full data reliability testing. However, to gain some assurance of the reliability of the data related specifically to the CCW program, we observed Los Angeles staff run financial reports to ensure that the staff member entered the appropriate date range and account numbers. We haphazardly selected 29 CCW revenue receipts from the available license files, which, because of the department's record retention policy, did not include all files from fiscal year 2014–15. Although the department kept additional CCW receipts from fiscal year 2014–15, it did so among its total receipts for that year, which made identifying items from that year cost prohibitive. We found that the receipts we selected were all included on supporting documents that we traced back to the revenue report we received. | Undetermined reliability for these audit purposes. Although this determination may affect the precision of the numbers we present, there is sufficient evidence in total to support our findings, conclusions, and recommendations. |

Source:  California State Auditor's analysis of various documents, interviews, or data from the entities listed in this table.

Blank page inserted for reproduction purposes only.

# Chapter 1

## THREE SHERIFFS' DEPARTMENTS HAVE DIFFERENT CCW POLICIES, BUT THEY HAVE NOT ALWAYS FOLLOWED THOSE POLICIES WHEN IMPLEMENTING THEIR LOCAL CCW PROGRAMS

State law grants licensing authorities discretion in establishing criteria to satisfy the four conditions required for issuing a CCW license. Although the sheriffs' departments in Sacramento, San Diego, and Los Angeles have developed their own permissible policies for evaluating CCW applications, they do not consistently follow those policies when issuing CCW licenses. In fact, Los Angeles did not completely adhere to its policies when issuing any of the 25 CCW licenses we reviewed. For example, Los Angeles issued all but one of these licenses without obtaining the level of documentation it expects to demonstrate that the applicant has met the good cause requirement.

Although the departments have differing policies for processing CCW applications, we did not identify a bad effect resulting from the variations in policy. After reviewing information related to licensing rates and the factors that can lead to a revoked license, we determined that neither a high number of licenses nor a high number of revoked licenses necessarily demonstrates that state law's licensing criteria must be clarified. For example, a revoked license is not necessarily evidence that a licensing authority inappropriately evaluated an individual at the time it issued the license. Individuals can become prohibited persons after they are issued a license because of factors that would not be evident at the time they applied.

### The Three Sheriffs' Departments Differ in Their CCW License Policies

State law allows licensing authorities to issue a CCW license to an applicant upon his or her proof of the following four conditions: the applicant is of good moral character, good cause exists for the issuance of the license, the applicant is a resident of the county or a city within the county or the applicant's principal place of employment or business is in the county or city, and the applicant has completed a course in firearms training. Although state law provides a brief description of the subject matter that must be included in the required firearms training, it provides little additional guidance as to what information licensing authorities should require to determine whether the applicant meets the four conditions for CCW licensing. As a result, state law grants licensing authorities broad discretion in the decision to issue CCW licenses. Under that discretion, the three departments we reviewed have developed widely differing requirements for how applicants must demonstrate that they satisfy the four required conditions, and the number of licenses that each

issued varied significantly in each fiscal year from 2014–15 through 2016–17. Table 4 shows the number of CCW licenses each department issued, denied, renewed, revoked, and suspended over that period. As we discuss later in this chapter, San Diego was unique among these three departments in its practice of suspending licenses.

**Table 4**

**CCW Licenses Issued, Denied, Renewed, Revoked, and Suspended by the Sacramento, San Diego, and Los Angeles Sheriff Departments in Fiscal Years 2014–15 Through 2016–17**

|  | SACRAMENTO | | | SAN DIEGO | | | LOS ANGELES | | |
|---|---|---|---|---|---|---|---|---|---|
|  | 2014–15 | 2015–16 | 2016–17 | 2014–15 | 2015–16 | 2016–17 | 2014–15* | 2015–16 | 2016–17 |
| New licenses issued | 2,552 | 1,569 | 2,218 | 138 | 173 | 153 | 16 | 30 | 20 |
| Denied license applications | 237 | 235 | 182 | 27 | 35† | 33 | 6 | 278 | 548‡ |
| Renewed licenses issued | 1,528§ | 2,279 | 3,331 | 349§ | 423 | 425 | 89 | 64 | 68 |
| Revoked licenses | 47 | 70 | 59 | 1 | 1 | 3 | 0 | 0 | 0 |
| Suspended licenses | NA | NA | NA | 1 | 2 | 2 | NA | NA | NA |

Sources:  California State Auditor's analysis of Sacramento's Weapons Permits and Licenses database and its Permitium database, San Diego's License Application Processing and Tracking database, spreadsheets kept by Sacramento's and San Diego's staff related to renewed licenses, and San Diego's and Los Angeles's CCW license files. As stated in Table 3 on page 10 of our report, we determined that the Sacramento and San Diego databases are not sufficiently reliable because those departments primarily record only the most recent date for a CCW license action.

NA = Not applicable.

* Los Angeles has a policy of retaining CCW applications for two years. According to its CCW manager, the department purges its records of inactive CCW licenses and denied CCW applications after two years. Although we found that some inactive records and denied CCW applications still exist, the number of CCW actions we show for fiscal year 2014–15 does not include all activity in that year.

† During the *Peruta v. San Diego* litigation, several individuals sued San Diego challenging the department's interpretation and application of the statutory good cause requirement. In June 2016, San Diego announced that it would not take further action on applications that were held pending a decision on this litigation, and the applicants were instructed to reapply. The number of CCW licenses denied by San Diego does not include these applications.

‡ As a result of the *Peruta v. San Diego* litigation, Los Angeles issued notices to applicants who applied under the self-defense standard set forth in *Peruta* informing them that once the *Peruta* decision was final, it would process their applications. According to its CCW manager, Los Angeles began processing these applications in mid-June 2016, and this activity led to an increased number of license denials in fiscal year 2016–17.

§ Because CCW licenses are typically renewed every two years and Sacramento and San Diego primarily record only the most recent date of a CCW license action in their databases, the databases likely understate the number of renewed licenses in fiscal year 2014–15. Therefore, we used spreadsheets each department kept separate from their databases, which we did not assess the reliability of, to determine the number of renewed licenses in that year.

To evaluate an applicant's moral character, each department reviews his or her criminal history but not in the same manner. Sacramento and San Diego have established guidelines for how they determine that an applicant does not meet the moral character requirement. For example, Sacramento considers applicants who have been arrested within the past five years or convicted within the past seven years, regardless of the charge, to have failed the good moral character requirement. Guidance from the sheriff highlights that any criminal history, regardless of the severity, speaks to an applicant's judgment and should be given weight in the decision to issue the license. San Diego's procedures state that it does not issue CCW licenses to individuals who are under any form of probation or who have had numerous negative contacts with law enforcement. In contrast, according to Los Angeles's

administrative service manager, who is responsible for reviewing CCW applications (CCW manager), that department does not automatically deny a CCW applicant with a criminal history. Instead, it evaluates criminal history case by case to determine whether the applicant meets the moral character requirement.

In addition to reviewing an applicant's criminal history, the three departments may contact the applicant to perform other assessments to evaluate good moral character. According to its CCW manager, Los Angeles reviews statements on the CCW application and makes decisions regarding moral character based on the applicant's answers to questions on the application. Furthermore, if an applicant discloses a conviction on the application, the department contacts the individual for more information. Sacramento and San Diego take a different approach and interview every CCW applicant—whether or not they disclosed a conviction—to verify the information provided in the application and, if necessary, to obtain additional information about the applicant's circumstances. For example, if an applicant has a criminal history, Sacramento obtains an explanation from the applicant. In addition to the in-person interview, San Diego also conducts a review of the applicant's social media presence. According to San Diego's manager of the Licensing and Criminal Registration Division (licensing manager), individuals will occasionally post something online that speaks negatively to their moral character, but she was unable to recall a specific instance in which the social media review significantly influenced the department's evaluation of an application.

Similarly, each department requires different kinds and amounts of documentation for establishing that an applicant has good cause, and Sacramento is markedly different in its approach. Sacramento's practice permits the applicant's stated desire to obtain a license for self-defense or for the defense of an applicant's family to suffice as good cause. We noted that most of the 25 Sacramento CCW licenses we reviewed identified the good cause to be one or the other of these reasons. Unlike Sacramento, San Diego does not consider an applicant's stated desire to obtain a license for self-defense sufficient cause. Instead, that department requires other types of documentation for its four good cause categories: law enforcement personnel, personal protection, security or investigative personnel, and business owners or employees. For example, it requires individuals applying under the personal protection category to provide documentation, such as a restraining order, to demonstrate that their circumstances distinguish them from the mainstream and cause them to be in harm's way. Of the three departments we reviewed, Los Angeles has the policy with the narrowest definition of *good cause*. Its policy states that good cause exists only if there is convincing evidence of a clear and present danger to life or of great bodily harm to the applicant or to his or her spouse or dependent child; in addition, it must be demonstrated that this danger cannot be adequately dealt with by existing law

*In addition to reviewing an applicant's criminal history, the three departments may contact the applicant to perform other assessments to evaluate good moral character.*

enforcement resources, cannot be reasonably avoided by alternative measures, and would be significantly mitigated by the applicant's carrying a concealed firearm.

In addition, although each department requires applicants to provide at least two items to verify residency, the three departments do not require the same proof. According to its website, Sacramento requires applicants to demonstrate residency by submitting two monthly bills with their current address, such as utility bills, cellphone bills, credit card statements, or mortgage statements. San Diego also requires at least two documents, such as a utility bill, lease agreement, or property tax statement, to demonstrate residency. In addition to the documentation, Sacramento and San Diego both review Department of Motor Vehicles (DMV) records to verify the applicant's address. Los Angeles, on the other hand, requires individuals to submit an approved, recognized identification card and at least one recent item of U.S. mail.

*Each department has established different firearms training requirements for new applicants, although they all have the same requirement for CCW license renewal applicants.*

Lastly, each department has established different firearms training requirements for new applicants, although they all have the same requirement for CCW license renewal applicants. State law prohibits a licensing authority from requiring more than 16 hours of firearms training for initial applicants; at the same time, it does not specify a minimum number of training hours for such applicants. As a result, licensing authorities have some discretion on the number of training hours they require applicants to complete. For new applicants, Sacramento requires a 16-hour training course, whereas San Diego requires an eight-hour course. Until January 2016, San Diego also required individuals to complete a qualifying shoot and weapons safety check with its Weapons Training Unit in addition to the eight-hour course.[3] However, the department found that these activities were identical to those already occurring during the eight-hour training it required and, in January 2016, the department eliminated the additional requirement. Los Angeles, on the other hand, does not prescribe the number of hours that an applicant must attend training. Instead, its policy simply mirrors state law's requirement by not requiring more than 16 hours of firearms training for a new applicant. According to Los Angeles's CCW manager, most initial training courses are eight hours, but the individual has the option to take up to 16 hours. For renewal of licenses, all three departments require the applicants to complete a four-hour training course.

The differing policies established by the departments are all permissible under the broad discretion given by state law. However, as we discuss in the following sections, the departments did not consistently adhere to their respective CCW license policies when evaluating the applications we reviewed. For each department, we reviewed 25 issued

---

[3] According to San Diego's licensing manager, a *qualifying shoot* is a training session that requires the applicant to demonstrate accuracy through live fire from different positions.

licenses—15 initial and 10 renewed—and 15 denied applications from fiscal years 2014–15 through 2016–17. Figure 1 identifies the number of issued licenses we reviewed that did not comply with the departments' respective policies and practices.

**Figure 1**
**The Three Sheriffs' Departments Did Not Always Follow Their Respective CCW Policies, Procedures, or Stated Practices Before They Issued or Renewed the CCW Licenses We Reviewed**



Sources:  California State Auditor's review of CCW licenses that Los Angeles, Sacramento, and San Diego issued or renewed from fiscal years 2014–15 through 2016–17.

= Number of files that did not demonstrate that the department adhered to its policies, procedures, or stated practices.

= Number of files that demonstrated that the department adhered to its policies, procedures, or stated practices.

*During our review of licenses issued from fiscal years 2014–15 through 2016–17, we found that Los Angeles approved applications that did not meet its policy requirements for good cause, residency, and training.*

## Los Angeles's CCW Program Is Marked by a Consistent Failure to Follow Its Public CCW Policies

During our review of licenses issued from fiscal years 2014–15 through 2016–17, we found that Los Angeles approved applications that did not meet its policy requirements for good cause, residency, and training. Additionally, it did not follow its stated practices for assessing good moral character. As previously mentioned, the department's written policy requires all CCW applicants to meet certain requirements in order to qualify for a CCW license. However, we reviewed 15 initial CCW licenses and 10 renewed CCW licenses that Los Angeles issued in our audit period and found that the department could not demonstrate that it properly issued any of them. Specifically, the department failed to obtain documented support in the area of good cause for 24 CCW licenses, failed to adequately document verification of the residency requirement for any of the 25, failed to obtain evidence of firearms training for five of the licenses, and failed to verify good character in accordance with its practice for three.

### Los Angeles Issued Most CCW Licenses Without Evidence That the Applicants Met Its Good Cause Requirement

Although Los Angeles has a clear policy describing the conditions that an applicant must meet to satisfy its good cause requirement, it rarely collected adequate evidence that applicants to whom it issued CCW licenses met this requirement. As we described previously, Los Angeles requires individuals to satisfy the good cause requirement by submitting convincing evidence of a clear and present danger to life or of great bodily harm. The denial letters that Los Angeles sends to applicants state that "convincing evidence of clear and present danger" typically refers to a current situation involving specific persons who have threatened an individual and who have displayed behavior that suggests the threat could be carried out. According to its CCW manager, the department expects individuals to turn in documentation, such as restraining orders or police reports, to demonstrate that direct, recent threats exist against them. The CCW manager stated that it is insufficient for an applicant to submit a statement that he or she is aware of others receiving threats or being attacked to establish good cause. Los Angeles's denial letters also state that situations that suggest only a *potential* danger to safety, such as carrying large amounts of money to the bank or holding a specific job or profession, will not satisfy its criteria for a CCW license. We reviewed 15 initial licenses and 10 renewed licenses the department issued from fiscal years 2014–15 through 2016–17 and found that Los Angeles issued 14 of them without obtaining documentation that supported the applicants' written statements identifying specific, personal threats. For example, a judicial officer stated on his application that he had

been subject to numerous verbal and written attacks and veiled threats of physical harm and that he had received letters from parolees stating that they would do everything they could to get "justice." However, his application file contained no documentation of these threats, and yet Los Angeles issued him a CCW license without any supporting evidence for those threats he claimed.

In contrast, Los Angeles does not grant CCW licenses to other applicants who described personal threats but did not provide documentation. For example, the department denied a license to an individual whose CCW application, like that of the judicial officer's, did not contain documents to support an asserted threat. According to this application, the individual was a board member and vice president of a neighborhood council. He stated on his application that an aggrieved individual had researched his personal life and mentioned the applicant's recent family activities during a council meeting. He also asserted that the individual had made indirect threats, such as "you will get what you deserve." However, unlike the judicial officer, Los Angeles denied this applicant a CCW license, stating that he did not satisfy the requirements of good cause.

We also found that Los Angeles issued licenses to applicants who did not even assert that they faced personal threats. Of the 25 CCW licenses we reviewed, Los Angeles issued 10 to applicants who did not identify in their individual CCW applications a specific, personal threat. One of these applicants—a judge in the Los Angeles County Superior Court—stated on his application that he wanted a CCW license for self-protection and the protection of others. He further stated that as a judge he sentences defendants to jail every day. Although this individual provided no information about a personal threat, Los Angeles issued him a CCW license in February 2017. However, the department denied CCW licenses to other individuals who did not claim a specific threat. For example, in March 2017, Los Angeles denied a license to an individual who stated in his application that he wanted a CCW for personal protection because he worked in undesirable and remote areas and carried large amounts of cash. In its denial letter, the department stated that it was denying the license because the circumstances, as outlined in the application, did not satisfy the requirements for good cause. In this case, the denial was consistent with Los Angeles's policy on CCW licenses. Nevertheless, the number of licenses among those we reviewed that were issued without an identified specific threat indicates that Los Angeles is not consistently adhering to its policies.

During our testing, we noted that 22 of the 25 CCW licenses we reviewed were issued to applicants with professions that connected them to the law enforcement community: the individuals were former or current law enforcement officers, judges, court

*Of the 25 CCW licenses we reviewed, Los Angeles issued 10 to applicants who did not identify in their individual CCW applications a specific, personal threat.*

commissioners, retired federal agents, and deputy district attorneys.[4] In fact, we found that of the 197 licenses that Los Angeles had issued that were active as of mid-August 2017, only nine were issued to applicants outside of that community. Figure 2 shows the different professions of applicants to whom Los Angeles issued CCW licenses that were active as of mid-August 2017.

**Figure 2**
**Only 5 Percent of Los Angeles's Active CCW Licenses Were Held by Individuals Outside the Law Enforcement Community as of Mid-August 2017**



*1%* Former law enforcement officers
*2%* Deputy district attorneys or federal prosecutors
Individuals outside the law enforcement community*
Retired judicial officers
*5%*
*7%*
**197 ACTIVE LICENSES**
*18%* Retired federal agents†
*67%*
Judicial officers

Source:  California State Auditor's review of Los Angeles's CCW license records for the 197 individuals with active licenses as of mid-August 2017.

\* We define *law enforcement community* as including law enforcement officers, retired federal agents, judicial officers, and deputy district attorneys.

† Retired federal agents are not required by state law to meet the same criteria as other applicants. For example, they do not need to meet the good cause requirement.

When we asked Los Angeles about the number of licenses issued to applicants within the law enforcement community, the lieutenant responsible for reviewing CCW applications said that he was aware that most of the department's CCW licenses were issued to such individuals and that they met the good cause requirement because

---

[4]   Our random selection of 25 CCW licenses included two law enforcement officers—one former and one current—who, due to certain circumstances, applied for licenses through the public process rather than being able to carry concealed weapons due to their status as officers as is allowed by state law. Our review only included licenses Los Angeles issued through its public process.

of the nature of their jobs. He also stated that the decision to recognize these occupations as sufficient good cause went back several sheriffs and that it was institutional knowledge within the department that individuals in the law enforcement community satisfy the good cause requirement through their occupations. Nevertheless, his statement contradicts Los Angeles's written CCW policy, which specifically states that "no position or job classification in itself shall constitute good cause for the issuance, or for the denial, of a CCW license."

The department disagrees that its practice contradicts its written CCW policy. When we asked the lieutenant about the discrepancy between its policy and practice, he agreed that there are some inconsistencies in Los Angeles's practice, but he did not believe that the department's practice contradicted the policy because the policy allows discretion in evaluating an applicant's good cause. He also believes that the department issued CCW licenses to applicants with connections to the law enforcement community because of both the nature of their jobs and the circumstances they described in their applications. However, as noted earlier in this section, for 10 of the issued licenses we reviewed, the applicants did not describe in their CCW applications a specific, personal threat. Nine of these individuals were members of the law enforcement community. In those applications, we found some statements that claimed as good cause for licenses little more than the individuals' desire for self-protection that expressed knowledge that other individuals had been threatened or that described the applicants' duties as judges. These circumstances fall well short of Los Angeles's definition of a *clear and present personal danger* to the applicant. Therefore, it is not clear how Los Angeles's determination that these applicants met its good cause requirement could be based on anything other than their occupations, which Los Angeles's policy specifically states are insufficient on their own to meet its good cause requirement.

*It is not clear how Los Angeles's determination that applicants within the law enforcement community met its good cause requirement could be based on anything other than their occupations.*

Moreover, we found that Los Angeles's failure to adhere to its good cause policy extends beyond those in the law enforcement community. From April 2015 through June 2017, the department issued CCW licenses to six applicants who stated in their applications that they were employed in Los Angeles by the Consulate General of Israel (consulate general). We tested one of these licenses as part of our review of 25 issued licenses and identified the others during our count of licenses. None of these six individuals submitted documentation to support that he or she had experienced a specific, personal threat. When we asked why Los Angeles granted these individuals CCW licenses, the CCW manager stated that staff who work in security for the consulate general satisfy Los Angeles's good cause requirement because they protect diplomats and other individuals who face threats. However,

her assertion also directly contradicts Los Angeles's CCW policy, which states that good cause shall only exist if there is convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, the applicant's spouse, or dependent child.

Having formal, written guidance about individuals whose applications Los Angeles believes satisfy the good cause requirement because of their professions would help it better defend its decisions to issue certain applicants licenses while denying others who submit similar documentation or statements about personal threats. As previously mentioned, San Diego has four categories for which it issues CCW licenses, and one of those is a category specifically for law enforcement professions, which include active or retired reserve officers, federal agents, deputy district attorneys, and judicial officers. San Diego's CCW policy states that it evaluates good cause case by case. The policy describes how all applicants must provide documentation to support their cause and how the type of documentation will vary based on the category in which the individual applies. According to San Diego's licensing manager, individuals applying for a license under the law enforcement category of good cause must submit evidence of their employment. In this way, San Diego makes it clear that it expects different types of documentation from individuals who apply under each of its four categories. Because it does not have a similar policy, Los Angeles is unable to fully support its practice of determining that some applicants have good cause simply because of their occupations while denying licenses to other individuals who submit otherwise similar applications.

*Los Angeles issued a license to one individual based on direct authorization from the sheriff, even though the individual did not meet its definition of good cause.*

In addition to the inequitable treatment under its policy that Los Angeles has given to certain applicants based on occupation, the department issued a license to one individual based on direct authorization from the sheriff, even though the individual did not meet its definition of *good cause*. When the individual submitted his application, the department requested additional information about the threats he had experienced. Although the applicant did not provide documentation of a specific threat, Los Angeles's former chief of staff informed a former assistant sheriff that the sheriff would approve the application and instructed the former assistant sheriff to proceed with processing the license. The department issued the applicant a license in June 2016. In doing so, Los Angeles did not adhere to its CCW policy because it did so without documentation of a specific threat. Although state law gives the sheriff ultimate discretion to issue CCW licenses, direction from the sheriff to approve a specific license is outside of the regular approval process in Los Angeles, and in this case the direct approval appears to have ended the department staff's efforts to obtain information that would have supported issuing the license in accordance with policy.

When we asked about the sheriff's involvement in the decision to issue that license, the lieutenant stated that while he agreed that the sheriff is not typically involved in reviewing CCW applications, the sheriff has the right and authority to weigh in on the process as well as the responsibility for the CCW program. However, regardless of whether the sheriff himself approved the CCW license, we expected that the department would obtain sufficient documentation according to its policy before it issued a license. The lieutenant also stated that the department requested that this applicant provide additional information and the applicant did so in a written statement that documented the justification for a CCW license. Although the applicant provided a written statement outlining the threats he received during his career as a federal prosecutor, he did not provide any documentation, such as a police report, to support this statement. As we have previously discussed, Los Angeles expects applicants to submit supporting documents to demonstrate a direct and recent threat. Therefore, based on this expectation the department should have obtained more from this applicant before it granted him a license.

### Los Angeles Also Failed to Follow Consistently Its CCW Policies and Stated Practices for Its Residency, Training, and Good Moral Character Requirements

Los Angeles did not follow its policy for determining residency before it issued any of the 25 CCW licenses that we reviewed. According to its policy, applicants satisfy the residency requirement by presenting an approved, recognized identification card and at least one item of U.S. mail. However, Los Angeles did not collect this documentation for 24 of the 25 license applications we reviewed. In the 25th application file, the identification card and U.S. mail provided differing address information. As a result, the department cannot demonstrate that it followed its residency policy when issuing any of these 25 licenses. Because it did not verify that these individuals resided at the addresses stated on their applications, Los Angeles faces a higher risk that it issued CCW licenses to individuals who were not residing in its county and whom it was therefore not allowed to license. The department's CCW manager, who has been the manager since June 2017, was unsure why Los Angeles does not obtain the documentation that its written policy requires. Although she also asserted that many applicants submit proof of residency per the policy, we did not find this statement to be accurate for the 25 license files or even the 15 denied applications that we reviewed. Obtaining documentation to support that applicants reside at their stated addresses can provide the department confirmation that individuals are honest on their applications and helps ensure that the department does not license individuals it is not allowed to license.

*Because it did not verify residency, Los Angeles faces a higher risk that it issued CCW licenses to individuals who were not residing in its county and whom it was therefore not allowed to license.*

*Los Angeles did not obtain documentation that every approved applicant completed the required firearms training.*

Furthermore, Los Angeles did not obtain documentation that every approved applicant completed the required firearms training. State law requires licensing authorities to obtain proof that applicants have completed a training course with instruction on firearm safety and the law regarding the permissible use of a firearm as a minimum. Accordingly, as previously mentioned, Los Angeles requires up to 16 hours of training for initial CCW applicants and no less than four hours of training for renewal applicants. However, Los Angeles did not obtain proof that applicants completed training for five of the 25 licenses we reviewed. The CCW manager stated that every individual to whom the department issues a CCW license should have documentation of completed training in his or her CCW application file before the department issues the CCW license. She also stated that she was not aware of any reason an applicant would not have training records on file. Without the appropriate documentation, Los Angeles cannot demonstrate that it complied with state law when it issued these five CCW licenses. Further, it cannot ensure that these individuals are trained on firearm safety and the permissible use of a firearm.

Finally, Los Angeles also did not always follow its stated practices for evaluating whether applicants are of good moral character. According to the CCW manager, the department has a two-part evaluation of an applicant's good moral character: a review of the individual's statements on the application and a criminal background check processed through Justice. The CCW manager stated that if an applicant's responses on the application cause the department concern, the lieutenant interviews the applicant to obtain additional information or to verify the documentation and statements. However, we found that the department could not demonstrate that it completed such a review for three of the 25 applicants. Two of these individuals submitted incomplete applications—one did not address three questions regarding any incidents involving firearms, domestic violence, and arrests or charges for criminal offenses, while the other did not address questions about whether he had been convicted of any criminal offense, was on probation or parole, or had been or was subject to a restraining order.

When we asked the department about these two cases, the lieutenant was unsure why the individuals did not complete the applications and said that staff reviewing the applications should have caught the mistakes. The lieutenant also stated that the unanswered questions do not necessarily mean that the applicants are of bad moral character and that the totality of their applications indicate that they are responsible people. However, we believe these unanswered questions should have concerned the department because the questions address serious topics that speak to the applicant's character and criminal history,

regardless of whether the department believes that the applicants are responsible people. Furthermore, the department forgoes a valuable opportunity to evaluate applicants' honesty when it does not ensure that they address every question on the application, including those concerning criminal history. Therefore, Los Angeles should have contacted these individuals and obtained additional information about their circumstances to ensure that they were not purposefully omitting critical information.

In the third case, Los Angeles issued a CCW license to an applicant who disclosed that he had been arrested for driving under the influence (DUI) about six months before he applied, but the department did not document that it considered either this arrest or a previous conviction for DUI when making its determination about the applicant's moral character. We expected that the department would have contacted the applicant and obtained more information about his arrest. However, we found no documentation that it did so. The lieutenant stated that the department issued this license before he joined the CCW program, and he felt it was inappropriate to speculate about the decision-making process that led to the issuance of this license.

Los Angeles's failure to obtain complete documentation before it issued the licenses we reviewed can be attributed in part to the department's lack of written procedures for processing CCW applications. Although it has a formal CCW policy, the department has no written procedures for processing applications. As a result, its staff do not have guidance to ensure that they are appropriately and consistently evaluating all applications. By having written procedures, Los Angeles can better define its expectations for the documents its staff should obtain from CCW applicants.

### Sacramento's Administrative Weaknesses Led It to Issue Some Licenses That Did Not Meet Its Requirements

Although we found no evidence that it did not comply with state law, Sacramento issued some CCW licenses without collecting documentation showing that the licensing process adhered to Sacramento's standards. According to the assistant to the sheriff who oversaw the CCW program during the majority of our audit (assistant to the sheriff), the department does not have formal procedures for the staff who review CCW applications. To assess its CCW application process, we spoke with the assistant to the sheriff to confirm the department's expectations for processing an application. We also reviewed the instructions that Sacramento provides applicants on its website about what documents it requires to demonstrate residency and receipt of appropriate firearms training. The department has also developed internal criteria to

*Sacramento issued some CCW licenses without collecting documentation showing that the licensing process adhered to Sacramento's standards.*

determine whether applicants meet the good moral character and good cause requirements. For some of the 25 issued licenses we reviewed, Sacramento accepted documentation that did not align with its stated expectations. However, in most of these cases, other evidence in the application files indicated that the applicants had met its standards for a CCW license.

Among the application files we reviewed, documents related to residency were those that most often did not align with Sacramento's standards. On its website, the department provides examples of acceptable residency proof, which include utility bills and credit card statements. According to the website, applicants are to provide two documents proving residency that are dated within 60 days of their application dates. The website also explains that the department will verify that the applicant's address is current. Therefore, we expected to find the documents that the applicant provided as well as evidence that the department had verified that the applicant's address matched the address on file with the DMV. However, for the 25 licenses we reviewed, we found seven cases in which only some of the residency documentation aligned with Sacramento's standards and one instance in which the file did not contain any sufficient documents.

*For the 25 licenses we reviewed, we found seven cases in which only some of the residency documentation aligned with Sacramento's standards and one instance in which the file did not contain any sufficient documents.*

According to the assistant to the sheriff, the department's goal is to verify residency through multiple means. For seven of the files we reviewed, we saw evidence that the department had at least one properly dated residency proof that the applicants submitted or that the department had checked the applicants' addresses against the DMV records. For example, in two of these files we observed that applicants submitted residency proofs that were dated more than 60 days before the application date. However, we also saw evidence that the department had checked the applicants' addresses against the DMV records. In other cases, the department did not document that it verified applicant addresses with the DMV, but the application file contained at least one residency proof that was dated no earlier than 60 days before the application date. Therefore, in these cases, Sacramento obtained at least some evidence— aligned with its standards—that demonstrated the applicants were residents of Sacramento County. Nevertheless, for these seven cases, according to the instructions it provides applicants to submit two documents dated within 60 days of application, Sacramento had less assurance about the applicants' residency than it expects to have according to the instructions on its website.

Further, in one case we reviewed, Sacramento obtained undated residency proofs, and it did not document address verification with the DMV. That application file contained two residency proofs with insufficient information to determine whether the applicant met the 60-day requirement: one proof was undated and the other

was a credit card statement that listed only a payment due date. Therefore, according to its stated expectations, Sacramento did not obtain adequate documentation in this case to establish that the applicant met the residency requirement in state law.

Additionally, Sacramento issued one of the 25 licenses we reviewed to an applicant who did not provide evidence proving that she had attended the required number of training hours. Sacramento's website explains that it requires initial licensees to attend a 16-hour firearm training within 180 days before the issuance of the license. In one case, Sacramento issued an initial license to an applicant who provided a certificate that showed she had completed a four-hour training course for CCW renewal. There were no documents in the application file that demonstrated the applicant had attended any additional training. The assistant to the sheriff agreed that this amount of training does not meet the department's standards for initial licenses. In addition, we found that Sacramento issued licenses to two other applicants who provided training certifications that were older than Sacramento's 180-day standard by as much as 21 days. Both trainings were taken after the applicants applied for their CCW licenses. According to the sheriff's assistant, the department prefers that applicants complete their training within the 180 days before the department issues the CCW license, but it will accept older training provided the applicant received the training after submitting the application.

Further, we found that Sacramento renewed some licenses without documenting that it had performed local background checks. The local background check is separate from the criminal history background checks that Justice performs. According to the assistant to the sheriff, during these local checks, the department reviews local law enforcement databases that contain non-arrest contact that law enforcement may have had with the individual. The assistant to the sheriff stated that the department's practice is to perform local checks on applicants when they first apply for a CCW license and when they renew, and the department may use that information to deny an applicant a license if there is a consistent demonstration of poor decision making. However, we found that Sacramento renewed three of the 10 renewed licenses we reviewed without documenting a local background check. Because Sacramento did not have such documentation, anyone reviewing these files would have less assurance that these applicants met Sacramento's good moral character standard.

*Sacramento renewed some licenses without documenting that it had performed local background checks.*

Our review of 25 application files for licenses that Sacramento issued found that the files contained varied amounts of documentation for whether applicants had met its standards. In some cases, such as the one involving the applicant who did not demonstrate she had obtained a sufficient number of

training hours or the case of the applicant who did not provide appropriately dated proof of residency, Sacramento issued licenses without its required level of assurance. The assistant to the sheriff attributed these inconsistencies to human errors in the application process. However, we noted that Sacramento's CCW program has administrative weaknesses that make it more likely for these types of errors to occur.

Sacramento does not provide its staff with formal training or procedures to follow when reviewing applications. According to the assistant to the sheriff, Sacramento staffs its CCW unit with one full-time staff member and part-time retired annuitants. He stated that Sacramento expects its CCW application reviewers to use the information within the application and their previous law enforcement experience to guide their reviews. Further, he observed that the unit does not have formal written procedures for application reviews because it is easier to adjust practices when they do not need to be frequently rewritten. However, we believe training and formal procedures would better inform staff about the expectations for CCW application reviews and are important for ensuring that the inconsistencies we observed do not continue. The assistant to the sheriff agreed that a formal policy and training are reasonable, and he noted that it would not put an unmanageable burden on the unit.

*Sacramento would likely benefit by reviewing a selection of files regularly to ensure that applications are being processed in accordance with stated expectations.*

It would also likely benefit Sacramento to review a selection of files regularly to ensure that applications are being processed in accordance with stated expectations. The assistant to the sheriff explained that during most of our audit period, the CCW unit staff would verify training documentation before issuing a license to an applicant. However, our testing of 25 issued licenses showed that verification of documents' alignment with Sacramento's expectations would be beneficial. The department's current application review process includes review by a panel of two captains and a chief, yet when we spoke with one of the longer-serving panel members at the time we began our audit, he indicated that for most applications, the panel only reviews a summary of the information in the file and it performs a more detailed review of applications only if staff indicate possible reasons not to approve the application. Therefore, the panel review is not an adequate check on whether the type of documentation that Sacramento collects is consistent across all CCW applications. We believe Sacramento could achieve greater consistency in its licensing process by adopting a second-level review of application files performed by the assistant to the sheriff. By doing so, the department would better adhere to its standards for issuing CCW licenses under the broad discretion that state law vests in the department.

**Weaknesses in San Diego's Renewal Process Led to Inappropriately Renewed Licenses**

We found that San Diego issued some of the initial and renewed licenses we reviewed without obtaining documentation that demonstrated that the applicants had satisfied its residency, training, and good cause requirements. San Diego has specific requirements for the type of documentation that applicants must submit to demonstrate that they reside within the county and have completed a training course. Further, San Diego makes specific document requests to applicants based on the good cause category under which the applicant applies. For example, applicants who are applying for business-related purposes may be asked to provide proof that their business is legitimate and fully credentialed or that they deposit large amounts of cash. For cases in which documents did not align with its policies, San Diego—much like Sacramento—often had other evidence in the application files that provided some level of assurance that the applicants met its standards for CCW licenses.

However, San Diego's renewal process has weaknesses that have led it to renew some licenses inappropriately. Specifically, the department allows staff the discretion to issue a renewed CCW license without supervisory approval if the applicant's good cause remains the same and the applicant has not had any contact with law enforcement. In the most serious instance we found, the department did not collect documentation to demonstrate residency, good cause for a license, or the applicant's signature on the application for one of the 10 renewed license files we reviewed, yet it renewed this individual's license in July 2015. When we asked the licensing manager about this file, she confirmed that the clerk should have waited to issue the license until the applicant had provided all of the required documentation and that this error was most likely the result of a new clerk's not following the department's practices and procedures. However, upon further review, we found that when the applicant came back to renew the license again in June 2017, San Diego still did not obtain sufficient documentation from him to satisfy its residency requirement or the business tax certificate that the department had requested to support his good cause requirement. Like the applicants whose files we discuss later in this section, in 2017 he also submitted only one document that aligned with San Diego's residency requirement. According to the licensing manager, the clerk who renewed the license the second time was still in training, and this clerk should have obtained a current, valid business tax certificate. She then stated that after we brought this issue to the department's attention, the clerk contacted the individual and expects that he will soon be mailing his current business license to the department.

*San Diego allows staff the discretion to issue a renewed CCW license without supervisory approval if the applicant's good cause remains the same and the applicant has not had any contact with law enforcement.*

A file found during our review of revocations at San Diego also highlights another problem with the department's renewal process. In this case, in response to a federal request for information about an individual, San Diego reviewed his CCW file and found a "disturbing and reoccurring pattern of violence" on his part. A review panel then decided to revoke his CCW license, and the notes associated with that revocation indicate that the application should have been reviewed by a supervisor at the time of renewal because of the negative contact the applicant had with law enforcement.

As previously mentioned, when we spoke with the licensing manager about one of these cases, she indicated that staff experience level was a contributing cause towards the failure to collect adequate documentation. However, the level of discretion that San Diego allows its clerks leaves San Diego at a higher risk for inappropriate renewals such as those we found during our review. Although additional training for its clerks on how to process a CCW license renewal could likely benefit San Diego, the department would also benefit from a supervisory review of a selection of files. Performing such a review, which could target the licenses renewed by less-experienced employees, could provide additional assurance that San Diego is not renewing CCW licenses when the applicant has not provided sufficient proof of residency, good cause, or has had negative contact with law enforcement.

*The level of discretion that San Diego allows its clerks leaves San Diego at a higher risk for inappropriate renewals such as those we found during our review.*

Beyond problems specific to San Diego's renewed licenses, we found other instances in which the department processed applications without obtaining sufficient documentation that aligned with its policy and procedures. Among the 25 initial and renewal applications we reviewed, we found that problems with residency documents were the most common issue. San Diego requires applicants to provide two proofs of residency—such as a utility bill, lease agreement, or property tax statement dated within 30 days of the application date—that list the applicant's name, mailing address and address where he or she received the utility service. However, 11 of the 25 files we reviewed did not meet this requirement. In eight of these files, at least one residency proof that the applicant submitted was not dated within San Diego's 30-day time frame, instead ranging from two to 64 days past the 30-day limit. The remaining three cases were the renewal license discussed earlier, for which San Diego did not collect any documents related to residency or good cause, and two instances in which the applicants only provided one adequate residency proof. According to the licensing manager, although having two proofs of residency is required, if a clerk can verify residency using other supporting documentation, such as a DMV report or the county assessor's property record, then a clerk has the discretion to approve the application. Although in most of these 11 cases San Diego had some of the documentation

that it requires applicants to submit, it had less assurance in these cases than in other cases that the applicants met the residency requirement.

Further, for one file we reviewed, rather than submitting evidence of completing the required firearm training, the applicant—an active duty member of the Coast Guard—submitted evidence of a qualifying shoot from the Coast Guard. However, on its website, San Diego informs applicants they must complete a firearm training course from an approved vendor. Although the individual did not submit evidence of such a training, San Diego issued the individual a license in February 2016. When we asked the licensing manager about this file, she provided us with a memo from December 2015 that she issued to the licensing unit, which explained that active peace officers were exempt from the firearms training requirement and that the unit should accept proof of a recent qualifying shoot from the individual's employing agency. However, the Coast Guard applicant does not fall under the exceptions outlined in this memo. State law prescribes that firearms training for CCW licensure must address firearm safety and the law regarding the permissible use of a firearm. When San Diego issues licenses without evidence that applicants attended such a training, it does so without adequate assurance that it has followed the requirements of state law.

> *When San Diego issues licenses without evidence that applicants attended the required firearms training, it does so without adequate assurance that it has followed the requirements of state law.*

Finally, we found that in three of the 25 files we reviewed, San Diego requested more documentation to support an individuals' good cause than it would later determine was necessary for issuance. These instances are not violations of San Diego's policy, which allows clerks to use discretion in deciding what documentation is required. San Diego relies on its clerks to request documents from applicants based on an initial interview. In one of the three cases, San Diego requested that an applicant submit 11 documents, such as a business permit and statements showing cash deposits, to support his good cause for a CCW license. However, the applicant did not submit one of the 11 items requested—the articles of incorporation for his business. Although the applicant did not fully comply with San Diego's request for documents, San Diego issued him a CCW license. The licensing manager indicated that certain business-related documents were more essential to an applicant proving good cause than others. For example, she described that some business-related documents, such as a business license, must be renewed more regularly than others.

We noted that the practice of asking for documents that may not have been essential to proving good cause was not unique to these three instances. Two other files we reviewed show that San Diego asked for 10 or more documents related to a business-related

good cause, some of which were the same as the documents the department requested and did not receive in the other three cases. This, combined with the licensing manager's perspective that not all documents are equally important, leads us to believe that San Diego could benefit from evaluating its current expectations for good cause documentation and setting standards for the type of documents that is sufficient to satisfy its requirement. By modifying its procedures and training its staff to clarify the amount and type of documentation staff should request from applicants, San Diego can better ensure it is treating applicants consistently and avoid asking them to obtain documents that the department considers unnecessary.

### San Diego Did Not Always Revoke Licenses When Required, and Both It and Sacramento Failed to Notify Justice of All Their License Revocations

Although state law requires licensing authorities to revoke CCW licenses when license holders become prohibited persons, San Diego did not do so in all cases. State law requires that when a licensing authority determines one of its license holders is a prohibited person or when Justice notifies a licensing authority of this fact, the authority must revoke the license and notify Justice of the revocation. To determine whether the sheriffs' departments we audited complied with state law, we reviewed their responses to up to 10 notices that Justice sent to them as of June 28, 2017. In Sacramento, we reviewed 10 notices, and in San Diego we reviewed all four notices Justice had sent to the department. We found that Sacramento revoked the related licenses in all 10 cases we reviewed, but San Diego only revoked two of the four licenses. We did not review any instances at Los Angeles because Justice's records indicated that it had not sent any notices to that department during our audit period.

When we asked San Diego's licensing manager why her unit did not revoke two of the four licenses Justice notified it of, she stated that it was because the license holders had already surrendered their licenses. She believed that once a license is surrendered, it is no longer active and that accepting a surrendered license is effectively the same as revoking the license. San Diego asserted that it was not required to revoke these two licenses because they were no longer active at the time the department received the notification from Justice. However, the portions of state law that create CCW licensing requirements do not establish that a license is inactive simply because the licensee is no longer in possession of the license. Further, although San Diego reported all of its revocations to Justice, it did not always report when it accepted a surrendered license, including in these two instances. Because state law requires licensing authorities to revoke the licenses of prohibited persons and report those revocations to Justice,

*State law requires that when a licensing authority determines one of its license holders is a prohibited person or when Justice notifies a licensing authority of this fact, the authority must revoke the license and notify Justice of the revocation.*

San Diego should still revoke the licenses of prohibited persons, even if it has already accepted the licenses as surrendered to ensure it complies with state law and reports to Justice.

Additionally, we determined that San Diego failed to revoke a third prohibited person's license. Although this person was not among the four we originally reviewed, we observed during our review of files that one of San Diego's licensees was convicted of a felony in February 2017. This conviction made the individual a prohibited person, and San Diego should have revoked the license. When we asked San Diego why it did not revoke the license in this case, the licensing manager stated that the department had already suspended the individual's license when he was arrested. San Diego's procedures describe its suspension process as similar to its revocation process, and they provide the example that the department will suspend a license if it is waiting for the final outcome of a court case. Although it was true the department suspended the license in this particular case and notified Justice of the suspension, San Diego should have revoked the license because the license holder had become prohibited. Among the three departments we reviewed, San Diego was the only one we observed that had a practice of suspending CCW licenses.

Sacramento did not consistently comply with state law when reporting its revocations to Justice. State law requires licensing authorities to report to Justice when they revoke licenses. We found that among the 10 revocations we reviewed in Sacramento, the department failed to report eight of them to Justice. According to the assistant to the sheriff, reporting to Justice is redundant in cases where Justice has already instructed the department to revoke the licenses. Nonetheless, state law requires licensing authorities to report to Justice when it revokes licenses. Further, the notification Justice sends to licensing authorities specifically states that Justice must be notified in writing about the revocation. When Sacramento does not report to Justice that it has revoked licenses, Justice does not know that Sacramento revoked the license and therefore cannot adequately track CCW license holders throughout the State.

*Sacramento did not consistently comply with state law when reporting its revocations to Justice—among the 10 revocations we reviewed, the department failed to report eight of them.*

We found that San Diego reported to Justice when it revoked licenses, but it did not report the two surrendered licenses that we discuss earlier in this section as well as five others we found during our review. Although the portion of state law that requires licensing authorities to report revocations to Justice does not require licensing authorities to report surrendered licenses, Justice would prefer to be notified of those surrenders. The director of Justice's bureau of firearms stated that Justice did want licensing authorities to report these actions to it. According to San Diego's licensing manager, the state law related to CCW licenses does not require the department to report surrendered licenses to Justice,

and the department did not know until the time of our audit that Justice would like to receive this information. However, when San Diego does not report all inactivated licenses to Justice—regardless of whether the license was revoked, suspended, or surrendered—it withholds valuable information from the State's lead law enforcement agency about who is licensed to carry a concealed weapon.

### Sacramento Did Not Inform Applicants of Denied Licenses of Which Requirement They Did Not Meet

San Diego and Los Angeles processed the 15 denied license applications we reviewed at each location in accordance with their policies. Similarly, even though Sacramento did not have written procedures, it generally denied applicants for reasons its staff explained to us at the outset of our audit. In two cases, Sacramento's reasons for denial were not the same as those staff had initially explained, but we did not have concerns about this given the broad discretion that state law provides to the sheriff over issuance decisions. However, Sacramento did not comply with state law's denial requirements for any of the denials we reviewed because it did not state which criterion was unmet in its correspondence with the applicant regarding the denial. State law requires licensing authorities to provide written notice to applicants indicating whether a license is denied and in those cases it also requires the written notice to include a statement of which requirement has not been met. Sacramento's assistant to the sheriff acknowledged that the denial letters the department sent to CCW applicants during our audit period did not specify a reason, but he could not speak to why the information was not included because decisions about what content the letters included were made before he began overseeing the program. Nevertheless, the law requires licensing authorities to state which requirement that applicants did not meet.

*Sacramento did not comply with state law's denial requirements because it did not state which criterion was unmet in its correspondence with the applicant regarding the denial.*

Sacramento has since changed its practice, but its new denial letters still do not always meet the requirement of the law. By July 2017, during the course of our audit, Sacramento modified its denial letters to include a reason why the applicant was denied a CCW license. According to the assistant to the sheriff, the issue came to his attention when he was reviewing the law related to CCW licenses and he adjusted the department's practices to include a reason why the department denied the permit. We reviewed six denial letters sent to applicants after he adjusted Sacramento's practices and found that only one included an explanation that met the requirement in state law. Specifically, only one provided the requirement that the applicant failed to meet. Most of the others stated that the denial reason was "criminal history" and provided a citation to the section of state law that details the issuance criteria

for CCW licenses. This information is insufficient under the law because simply stating that the applicant was denied because of criminal history does not indicate a failed requirement such as good cause.

The assistant to the sheriff disagrees with our conclusion that the department's new denial letters do not always comport to the requirements in state law. He believes that a reference to criminal history as the reason for denying a CCW license is sufficient information for the applicant to understand and appeal if he or she desires to do so. However, the information in the letters we reviewed is not sufficient based on the plain language of state law, which requires licensing authorities to provide a statement of the *requirement* that was unmet. For example, the applicant cannot know from that information alone what about their criminal history the sheriff objected to, and criminal history is not one of the four key criteria for issuing a license.

Although Sacramento has taken some steps toward resolving the deficiencies in its denial letters, it has not yet ensured that it always complies with state law. If it further defined the type of information it expects its investigators to include in denial letters, Sacramento would be more likely to avoid such instances. Without being informed which requirement they did not meet, applicants cannot know what additional information to provide the department to appeal the denial effectively. The assistant to the sheriff informed us it is Sacramento's practice to allow denied applicants the opportunity to appeal. However, during our review, we found a letter to the department from an applicant stating that he could not reasonably initiate an appeal without knowing the specific reason for the denial. This example highlights the importance of complying with the law and providing applicants information about the specific requirement they did not meet when they are denied a CCW license.

*Without being informed which requirement they did not meet, applicants cannot know what additional information to provide Sacramento to appeal the denial effectively.*

### Despite Widely Differing Issuance Practices for CCW Licenses, the Local Discretion Established by Current State Law Has No Apparent Bad Effect

As we discussed in the previous sections, each licensing authority we reviewed applied the requirements of state law concerning CCW licenses differently. Such different approaches are permissible under the broad discretion that state law grants licensing authorities in interpreting key requirements such as good cause and good moral character. However, these inconsistent approaches have led some to argue that state law should not grant such discretion to local authorities. For example, some have argued that the lack of a definition of *good cause* has resulted in the unequal application

of state law across the State and an arbitrary denial of CCW licenses to many Californians. Others have asserted that the sheer number of permits issued shows a lack of appropriate scrutiny. Further, some have pointed to the number of revoked licenses as evidence that licensing authorities have not properly issued licenses. Nevertheless, after reviewing the departments' policies and practices and analyzing each department's issuance statistics, we did not identify a bad effect from the varying approaches taken by the three sheriffs' departments we reviewed that would lead us to conclude that state law needs to be changed to clarify the issuance criteria for CCW licenses.

Under the discretion that state law allows, the three departments have issued different numbers of licenses. As we show in Table 4 on page 14, Sacramento issued a far larger number of CCW licenses than did San Diego or Los Angeles during our audit period despite the fact that Sacramento's jurisdiction covers fewer potential license applicants than does either of the other two departments. This difference is partially the result of Sacramento's interpretation of the good cause requirement in state law, which accepts an applicant's statement that he or she desires to protect himself or herself or family as sufficient good cause for a CCW license. In contrast, Los Angeles's policy and San Diego's policy related to licenses for personal protection both require that an applicant provide evidence of danger to satisfy the good cause requirement. Therefore, applicants can more easily satisfy the good cause requirement in Sacramento than in San Diego or Los Angeles. Although more than one factor affects whether an applicant is granted a CCW license at any of the three licensing authorities we reviewed, we believe it is Sacramento's interpretation of the good cause requirement that is the most likely reason for its higher number of licenses issued.

*Although more than one factor affects whether an applicant is granted a CCW license, we believe it is Sacramento's interpretation of the good cause requirement that is the most likely reason for its higher number of licenses issued.*

However, it does not necessarily follow that a higher rate of license issuance results in a harmful effect because of local discretion. In fact, despite their differing approaches to CCW licensing, the sheriffs in Sacramento and San Diego and the undersheriff in Los Angeles all observed that the needs of local jurisdictions vary and agreed that the law provides those jurisdictions the ability to set their CCW policies accordingly. San Diego's sheriff noted that individuals in other counties with fewer deputies and larger geographical areas may have a greater need for personal protection because of slower response times from law enforcement. That perspective illustrates how adopting a more restrictive definition of *good cause* for a license might have unintended consequences across the State because the conditions that would justify carrying a concealed weapon might vary greatly across the State. We found differences in local conditions to be a reasonable explanation for why licensing authorities would issue CCW licenses at a rate that

does not necessarily correspond to their population. Accordingly, the variance in the number of licenses issued among licensing authorities does not necessarily indicate that the law should be changed.

Similarly, the number of revoked licenses is not sufficient on its own to determine that the issuance criteria in state law need to be clarified. Among the three licensing authorities we reviewed, only Sacramento and San Diego revoked CCW licenses during our audit period. As Table 4 on page 14 shows, Sacramento revoked many more licenses during this period than did San Diego. However, a revoked license is not necessarily evidence that a licensing authority erred in issuing the license. State law requires licenses to be revoked when the licensee becomes prohibited by federal or state law from possessing, receiving, owning, or purchasing a firearm. Prohibiting events—which could occur after a department initially issues a license—include a variety of criminal and mental health-related events, such as a felony conviction for robbery or an involuntary placement in a mental health facility. In these cases, we cannot conclude that the prohibiting event is evidence that the individual was incorrectly granted a CCW license at the time of application. In other words, a present-day conviction that prohibits an individual from keeping the CCW license is not necessarily evidence that the applicant was not qualified at the time of licensure. For example, in addition to the reviewed revocations we discussed in an earlier section, we reviewed four revocations in Sacramento that came to our attention because in each case Sacramento had revoked a CCW license after the license holder had a serious criminal or mental health event. Although we found some instances among these four files in which the residency documents in the application file did not align with Sacramento's current expectations, these exceptions do not relate to the events that occurred later that led to Sacramento revoking these licenses.

Further, the number of licenses revoked could be higher as a result of locally initiated revocations. Nothing in the state law related to CCW licenses prevents licensing authorities from revoking licenses based on the license holder's conduct even when the holder has not had a prohibiting event. For example, Sacramento sometimes revoked licenses when the license holder was arrested for DUI. Although this does not appear on Justice's list of prohibiting events, it is a condition that under Sacramento's practices prohibits someone from being eligible for a CCW license. Accordingly, we conclude that the number of revoked licenses could actually be higher because a licensing authority was more active in monitoring its license holders and revoking licenses even when such a revocation was not strictly required by law. In fact, among the licenses revoked during our audit period, both Sacramento and San Diego revoked or suspended more licenses as a result of local

*Both Sacramento and San Diego revoked or suspended more licenses as a result of local decisions— such as Sacramento's DUI-related revocations—than they did as a result of notices from Justice that license holders had become prohibited persons.*

decisions—such as Sacramento's DUI-related revocations—than they did as a result of notices from Justice that license holders had become prohibited persons.

Additionally, we asked each of the three licensing authorities whether they believed that public safety was at risk because of the disparity in how local licensing authorities interpret the four key criteria for CCW license issuance. Each representative we spoke with—the sheriffs in Sacramento and San Diego and the undersheriff in Los Angeles—told us that the differing interpretations of state law did not make them concerned for public safety in their jurisdiction and they had not noticed any bad effect in their jurisdiction that could be attributed to another licensing authority's different interpretation of state law. San Diego's sheriff noted that despite differing issuance criteria, CCW license holders must still undergo a rigorous process to receive a license. We found that local implementation of that process could be improved at each of the three locations we reviewed; however, after looking at the rate of issuance and the rate of revocation, and considering the factors that affect each of those conditions when combined with the perspective of the local licensing authorities, we could identify no direct bad effect from the different approaches each has taken in implementing state law's CCW licensing requirements. Finally, state law establishes the issuance of CCW licenses as a local control issue. The ultimate discretion to issue a license rests with sheriffs and chiefs of police departments. Therefore, to the extent that citizens do not approve of the issuance policies that are employed by their respective sheriff or police chief, they can elect a different sheriff or demand a change in law enforcement leadership.

### Recommendations

To ensure that its CCW licensing decisions align with its CCW policy, Los Angeles should only issue licenses to applicants after collecting documentation of specific, personal threats against the applicants so as to satisfy its definition of *good cause*. If Los Angeles believes that its public licensing policy does not include all acceptable good causes for a CCW license, then by March 2018 it should revise that policy and publish the new policy on its website. It should then immediately begin processing applications according to that revised policy.

To ensure that it only issues licenses to individuals after receiving evidence of residency, firearms training, and good moral character that aligns with its policy, Los Angeles should only issue licenses after verifying that it has received this evidence. To avoid overlooking required evidence, Los Angeles should create

procedures by March 2018 for its staff to follow to ensure that each CCW file contains the evidence its policy requires before issuing the license.

To ensure that staff are gathering consistent evidence from applicants to demonstrate residency, good moral character, and firearms training and are including which requirement applicants did not meet in its denial letters, by March 2018 Sacramento should create formal CCW processing procedures and train its staff to follow these procedures. These procedures should require staff to gather and evaluate the information the department believes is required to demonstrate that each of the criteria for a CCW license has been met, and they should also require staff to include which requirement applicants did not meet in its denial letters.

To ensure that staff are following its newly established procedures and to identify any need for additional guidance, by March 2018 Sacramento should establish a review process wherein it regularly reviews a selection of license files and denied applications to determine whether its staff are collecting sufficient and consistent documentation in accordance with its policies and are appropriately including which requirement applicants did not meet in its denial letters.

To ensure that its staff appropriately renew CCW licenses, by March 2018 San Diego should establish a routine supervisory review of a selection of renewed licenses.

To ensure that it consistently obtains sufficient evidence to demonstrate that an applicant satisfies its requirements for a license, by March 2018 San Diego should develop guidance and train its staff on what good cause documentation staff should request from applicants. Further, it should train its staff regarding the expected documents for residency and training.

To ensure that it provides all required information to Justice, Sacramento should immediately inform Justice when it revokes a CCW license, including when it receives a prohibition notice from Justice.

To ensure that it follows state law's requirements for revoking licenses, San Diego should immediately revoke CCW licenses and should then inform Justice that it has revoked licenses whenever license holders become prohibited persons. Additionally, San Diego should notify Justice when it suspends a license or a license is surrendered.

Blank page inserted for reproduction purposes only.

# Chapter 2

## THE CCW PROGRAMS IN THE COUNTIES WE REVIEWED HAVE LIMITED FISCAL IMPACT, AND STATE LAW SHOULD BE CLARIFIED CONCERNING MAXIMUM FEES FOR CCW LICENSES

Although the three sheriffs' departments we reviewed charge application processing fees for CCW licensing, these fees do not appear to cover the costs of the programs. However, any deficits associated with the CCW programs are likely to have a very minimal adverse effect on overall county budgets because they represent a very small percentage of those budgets. Although the departments' CCW programs likely run a deficit, only Sacramento tracks its CCW program expenditures and could identify its total deficit. The other two departments—Los Angeles and San Diego—do not specifically track CCW expenditures. However, using the CCW-specific information in Sacramento and the expenditure information related to the administrative units that process CCW licenses at the other two departments, we determined that program expenditures as a whole at all three locations represent a tiny percentage of the overall county budgets. Nevertheless, each department could improve its approach to the fees it charges. Doing so in Los Angeles would improve the department's compliance with the fee requirements set by state law, which allows licensing authorities to charge a fee equal to the amount of their actual costs up to $100 and which can be increased at a rate not to exceed the California Consumer Price Index (CCPI). In Sacramento and San Diego, because we can reasonably infer that the departments are charging fees less than their costs, maximizing the fee that each department collects could increase fee revenue in each location. Finally, licensing authorities have interpreted state law related to the maximum allowable CCW fees differently. Because of this situation, we believe that clarifying state law concerning the maximum fees allowed would be beneficial.

## At the Three Departments We Reviewed, the Relative Sizes of CCW Programs Makes Them Unlikely to Have Significant Impacts on County Budgets

At all three of the licensing authorities we reviewed, CCW programs constituted a very small proportion of the overall department and county budgets. For Sacramento, the only entity for which we were able to determine a specific deficit amount, the CCW deficit had a negligible impact on the department's cost to the county. Los Angeles and San Diego do not separately track CCW expenditures; instead they track the expenditures of the larger departmental units that manage their CCW programs.

However, the expenditures of these units were similarly small in comparison to the total department and county expenditures. As a result, the CCW programs at Los Angeles and San Diego likely have even less of a fiscal impact on department and county budgets than at Sacramento.

### Two of the Three Licensing Authorities Cannot Readily Determine Whether Their CCW Programs Operate at a Surplus or Deficit

Los Angeles does not specifically track CCW-related expenditures, and therefore it cannot readily determine whether its costs are greater than the revenue it receives from CCW fees. According to the manager of special accounts in its Financial Programs Bureau, the department does not track expenditures for CCW licenses. Instead, it organizes its budget across 11 broad budget units, which contain divisions or programs. One of these units—the administration budget unit—contains the Office of the Undersheriff, which processes CCW applications. Neither the staff in Los Angeles's CCW program nor its fiscal staff were able to provide us with a cost study showing how much each CCW license costs to process or any documentation that contained its annual CCW expenditures, so we were unable to calculate whether the CCW program is operating at a surplus or deficit. According to its CCW manager, most of Los Angeles's CCW expenditures are staffing costs. The CCW manager confirmed the part-time nature of her CCW-related duties as well as that of the only other staff member who spends a comparable amount of time on the program. According to the director of the financial programs bureau, the CCW program's expenditures have not risen to the level of something significant enough that the department has wanted to specifically track the extent of costs and time for the program. As shown in Table 5, from fiscal years 2014–15 through 2016–17, revenues from CCW fees for Los Angeles ranged between about $10,000 to almost $12,000. Given the level of revenue, Los Angeles's expenditures would have to be very low for its program not to operate at a deficit.

*Los Angeles's staff were unable to provide us with a cost study showing how much each CCW license costs to process or any documentation that contained its annual CCW expenditures.*

San Diego also does not specifically track CCW-related expenditures, leaving it unable to verify whether its CCW program is operating at a surplus or deficit. However, San Diego does track the expenditures of its licensing unit, which processes CCW license applications along with many other types of licenses such as licenses for taxicab companies or bingo licenses. According to San Diego's budget finance officer, the CCW program funding comes from the fees it charges along with unrestricted county general fund money, and therefore there is no requirement for San Diego to track CCW expenditures. A fiscal year 2016–17

expenditure report for San Diego's entire licensing unit indicates that the primary expenditures for the unit are related to staffing. However, according to the licensing manager, although the unit tracks the time staff spend conducting initial interviews with CCW applicants, this is not a listing of the full staff costs for CCW licenses.

**Table 5**
**CCW-Related Revenue for Los Angeles and San Diego**

| FISCAL YEAR | LOS ANGELES | SAN DIEGO* |
|---|---|---|
| 2014–15 | $11,390 | $17,580 |
| 2015–16 | 11,880 | 15,540 |
| 2016–17 | 10,150 | 23,210[†] |
| **Totals** | **$33,420** | **$56,330** |

Sources:  California State Auditor's analysis of unaudited financial reports from San Diego's Oracle E-Business Suite financial management system and financial reports from Los Angeles County's eCAPS financial system.

\* We did not include any revenue San Diego labeled as related to reserve officer licenses because the information we present for Los Angeles did not include such revenue, and our audit did not focus on licenses issued to reserve officers. However, a senior accountant at San Diego indicated that in approximately November 2015, the department instructed its staff to be more consistent in the labels used to identify revenue. Therefore, it is possible that our revenue totals include revenue related to reserve officer licenses that we were not able to identify due to insufficient labeling.

† San Diego's revenue in fiscal year 2016–17 included $3,830 that San Diego did not account for in a previous year. We identified this revenue during our review of the fiscal year 2016–17 revenue report that San Diego provided. We confirmed with San Diego fiscal staff that this revenue was from fiscal year 2015–16, but we report it in fiscal year 2016–17 because this was the year in which the department accounted for it.

We determined that San Diego's CCW program is likely operating at a deficit. San Diego conducted a cost study in fiscal year 2011–12, which estimated that the department spent more than $2,700 to process an initial CCW application. Given this estimated cost and the revenue San Diego collects for each issued license, which is $63, even if San Diego's costs were one-tenth of what the cost study estimated in fiscal year 2011–12, which would be about $270, its per-license costs would still be greater than its per-license revenue. As shown in Table 5, San Diego's total annual CCW revenue ranged from just over $15,500 to $23,200 over the three-year period we reviewed. Like Los Angeles, San Diego would need to keep its CCW costs fairly low for its program to be cost-neutral. We observed that some of San Diego's CCW application files contain more than 100 pages of documentation that an analyst had reviewed before issuing the license, making it unlikely that San Diego is able to keep the total cost for processing an initial application below its per-license revenue of $63. Finally, based on financial reports San Diego provided, its entire licensing unit had a deficit in each year from fiscal years 2014–15 through 2016–17. Therefore, although

San Diego's expenditure tracking does not allow us to conclude that its CCW program operates at a deficit, we believe it likely that the CCW program costs the department more than it generates from fees.

In contrast to Los Angeles and San Diego, Sacramento does track its CCW-related expenditures. As shown in Table 6, Sacramento's CCW program has operated at a deficit that has ranged from about $160,000 to more than $275,000 annually from fiscal years 2014–15 through 2016–17. Based on the financial reports that Sacramento's chief of Departmental Administrative Services (administrative services chief) provided, almost all of the department's CCW expenditures in fiscal year 2016–17 came from staffing-related costs. The assistant to the sheriff indicated that Sacramento staffs its CCW program with one full-time staff member and several part-time retired annuitants from its extra help pool. According to the administrative services chief, the department pays for a large portion of its extra help costs by using salary savings. She further explained that if funding is needed beyond what the salary savings can cover, the department uses savings from other budget categories, such as fuel costs. She stated that she does not actually transfer funds when she uses salary savings to pay for funding shortages in the CCW program, so no specific record of using salary savings to cover CCW deficits exists. However, Sacramento's fiscal records show that in each year of our audit period, it had enough savings in salary-related budget categories to cover the CCW deficits. The assistant to the sheriff told us he sees the CCW program as a mandated service and that any revenue generated to support the program is a positive for the department. In addition, the department as a whole was more than $9 million under budget for general fund expenditures in fiscal year 2016–17. Nonetheless, even though it can cover the deficits in its CCW program through savings, by using these resources in this way, Sacramento cannot use them for other purposes.

**Table 6**
**Sacramento's CCW Licensing Program Had a Deficit in Each of the Last Three Fiscal Years**

|  | FISCAL YEAR | | |
|---|---|---|---|
|  | **2014–15** | **2015–16** | **2016–17** |
| Expenditures | $483,140 | $504,820 | $597,330 |
| Revenues | 322,820 | 229,380 | 383,440 |
| **Surplus/(Deficit)** | ($160,320) | ($275,440) | ($213,890) |

Source: California State Auditor's analysis of unaudited financial reports from Sacramento County's COMPASS system.

***All Three Licensing Authorities' CCW Programs Have Very Small Effects on Their Counties' Budgets***

We found that Sacramento's CCW program expenditures represented only a fraction of 1 percent of both the department's budget and of the entire Sacramento County budget. For example, in fiscal year 2016–17, CCW program expenditures represented 0.13 percent of total department expenditures and an even smaller percentage, 0.03 percent, of the total Sacramento County general fund expenditures in that year. This demonstrates that overall, Sacramento's CCW program likely has a negligible impact on the county budget. Although the program operated at a deficit in each fiscal year from 2014–15 through 2016–17, the assistant to the sheriff believes that the deficit is very minor compared to the department's total expenditures. This seems to be true at the county level as well. If the program had been revenue-neutral—program revenues equaling program expenditures—in fiscal year 2015–16, the year in our audit period in which the program deficit was the highest, it would only have reduced Sacramento's overall cost to the county by about 0.1 percent. Additionally, Sacramento spent less than its budgeted general fund expenditures in each year of our three-year audit period. Nevertheless, as we show later, Sacramento could reduce its CCW program deficits by increasing its CCW fees.

It is also unlikely that any deficits in Los Angeles or San Diego have a significant effect on their respective county's budgets given that San Diego spent less than its budgeted general fund expenditures in each fiscal year of our three-year audit period and Los Angeles had the same condition in two of the three fiscal years. For example, San Diego's licensing division, which is responsible for CCW licenses, represents a very small portion of San Diego's overall expenditures: 0.23 percent of the department's expenditures in fiscal year 2016–17 and 0.05 percent of the county's expenditures. At Los Angeles, the CCW program is housed within the Office of the Undersheriff. That office's total expenditures—which include expenditures for such activities as managing the department's personnel and budget resources and overseeing the activities of the assistant sheriffs—constituted only 0.11 percent of the department's expenditures and 0.02 percent of the county's total expenditures for fiscal year 2016–17.

***All Three Sheriffs' Departments Charged Initial License Fees Within Allowable Maximums, but the State Should Clarify the Maximum Allowable Fee***

All three sheriffs' departments charged fees for initial CCW licenses that were below the maximum amount allowed by state law. State law allows licensing authorities to charge a processing

*Sacramento's CCW program expenditures represented only a fraction of 1 percent of both the department's budget and of the entire Sacramento County budget.*

fee equal to the actual costs of processing a license application up to a maximum of $100. However, the law also permits licensing authorities to raise this fee beyond the $100 limit, consistent with the rise in the CCPI since 1999. Even though none of the three departments we reviewed charged more than $100 as an application processing fee, we found others throughout the State that do charge more than $100. However, one of the departments we reviewed—Sacramento—asserted that it cannot raise its application processing fee above $100. Although we believe that the law allows licensing authorities to raise their application processing fee beyond $100, the disparity we found in license fees points to a need for clarification to state law.

### The Sheriffs' Departments We Reviewed Charged Initial CCW License Fees That Were Below the Maximum That State Law Allows

The three departments we reviewed charged fees for initial CCW licenses within the maximum allowable amount under state law. In 1998 the Legislature amended state law to allow licensing authorities to charge a fee equal to the amount of their actual costs for processing an application for a new license, up to a maximum of $100; this law went into effect on January 1, 1999. Before this change, state law had limited the application processing fee to $3. In addition to increasing the maximum fee, the Legislature also amended the law to allow licensing authorities to increase their application fee above $100 but at a rate not to exceed the rate of the CCPI. State law also allows licensing authorities to collect up to 20 percent of the application processing fee upon filing of the initial application; the authorities may only collect the balance of the fee when they issue the license. In addition to an initial application fee, the law allows licensing authorities to charge up to $25 for processing a renewal application and up to $10 for an amendment to a license, irrespective of the actual cost of these processes. These fees may also be increased at a rate consistent with the CCPI. Table 7 shows the fees that Los Angeles, Sacramento, and San Diego currently charge for each of these CCW-related activities.

**Table 7**
**Fees Charged by Each Department for Processing CCW Licenses**

|  | LOS ANGELES | SACRAMENTO | SAN DIEGO |
| --- | --- | --- | --- |
| Initial license application | $66 | $100 | $63 |
| License renewal | 39 | 25 | 21.50 |
| License amendment | 0 | 10 | 10 |

Sources:  California State Auditor's review of published fee schedules at Sacramento and San Diego as well as internal documents about fees and interviews with the CCW manager at Los Angeles.

Los Angeles currently charges an initial license processing fee of $66, which is below the maximum fee state law established. It also charges $39 for license renewals—which is below the CCPI-adjusted maximum allowed by state law as of 2017—but it does not charge for amending a license. We discuss in an earlier section how Los Angeles did not specifically track expenditures related to its CCW program. Provided that its costs to process an initial application are less than or equal to $66, the amount of its processing fee is appropriate. However, Los Angeles had been charging three unallowable fees in addition to its processing fee. Although state law allows licensing authorities to charge an application processing fee, it prohibits them from requiring the payment of additional funds—through fees, assessments, charges, or any other condition that requires the payment of additional funds by the applicant as a condition of processing the application for a license. Despite this prohibition, Los Angeles was charging $12 for fingerprinting, $2 for a photograph, and $29 for a local record check in addition to its $66 processing fee. Because it included these extra fees, Los Angeles was overcharging applicants for the CCW licenses it issued. When we questioned the allowability of these fees, Los Angeles's chief legal advisor stated that the department would stop charging the additional fees and that it intends to consult with the county's auditor-controller to implement a plan to reimburse persons who were charged fees in excess of $66. She also stated that the department would reassess its processing fee to ensure that it accurately reflects costs.

*Los Angeles was overcharging applicants for the CCW licenses it issued by charging three unallowable fees in addition to its processing fee.*

Our review of Los Angeles's fees found that the department lacked sufficient oversight to ensure that its fees are allowable. For example, none of the individuals we spoke with at the department knew how or when Los Angeles established its fee structure. An administrative services manager in Los Angeles's Financial Programs Bureau believed the department conducted a cost study to establish the processing fee but the department does not have a copy of the study. Furthermore, the CCW manager could not provide any documentation showing when or how fees had been established at their current levels. She explained that the individuals who would have known if or when the fees were changed have retired from the department. Without specific attention to its fee structure and the requirements of state law, Los Angeles is at a greater risk for charging unallowable CCW-related fees as it did during our audit period.

Sacramento charges applicants $100 for an initial license, $25 for a renewal, and $10 for amendments as state law allows, but its total program revenue is insufficient to cover the costs of the licensing program. According to the assistant to the sheriff, the department set the initial license fees and renewal fees to the maximum state law allows, but he could not locate historical

documentation related to the setting of the fees. Furthermore, the sheriff believes that state law prohibits him from increasing these CCW fees beyond the amounts currently charged. We disagree with the sheriff's position on fee maximums for reasons we explain in the next section. By not increasing its fees, Sacramento has incurred a larger deficit in its CCW program than necessary.

*Sacramento could reduce its CCW program deficit by increasing its CCW fees to the maximum extent possible under state law.*

Sacramento could reduce its CCW program deficit by increasing its CCW fees to the maximum extent possible under state law. To assess how increases to Sacramento's CCW fees for initial licenses and for renewals would have reduced its program deficits, we calculated the maximum possible fee and the maximum possible renewal fee the department could have charged during fiscal years 2014–15 through 2016–17. Because the department did not have a cost study, we assumed the cost to process an initial application was equal to or higher than the CCPI-adjusted maximum fee. In the case of renewals, we did not need to make a similar assumption because the law does not limit the renewal fee to the cost of processing. We also assumed that increased fees would not affect the number of applicants who applied for initial licenses or license renewals. We asked the assistant to the sheriff whether he believed a fee increase would reduce demand for licenses. In his opinion, raising the fee consistent with the increase in the CCPI would not reduce demand for licenses. Our analysis showed that if Sacramento had maximized its initial and renewal fees during our audit period, its revenue over the three-year period would have been about $411,000 higher. We calculated this amount by multiplying the number of licenses Sacramento issued and renewed in each fiscal year by the difference between its current fees and the CCPI-adjusted maximum fees allowed by state law. Over the three years we reviewed, CCW program expenditures were greater than revenue in Sacramento by a total of about $650,000. This additional revenue would have decreased this deficit by over half—63 percent. We explained our calculation to the sheriff's assistant, who agreed with our method of developing a rough estimate of potential additional revenue, although he reiterated the department's position that it has already maximized its fees to the full extent of state law.

Finally, San Diego has a CCW fee of about $63 for an initial license application and $21.50 for an application to renew. Like Los Angeles, San Diego does not track the expenditures related to its CCW program. Assuming its costs to process an initial application are not less than $63, its fee would be appropriate. However, as we stated earlier, San Diego's fiscal year 2011–12 cost study estimated that it costs $2,700 to process an initial application. Therefore, it is likely San Diego's CCW program is operating at a deficit. Although its fees do not exceed the maximums established in state law, they are probably too low. Moreover, by charging less than the

maximum allowable, San Diego is also incurring a larger deficit in its CCW program than may be necessary. San Diego last received approval from its county board of supervisors to raise its CCW fees in 2007. According to its licensing manager, the department is concerned that raising the fee too high could make obtaining a CCW license too expensive. However, as previously discussed, San Diego's own cost study determined that the department spends about $2,700 to process an initial CCW application. Applying the same assumptions as we did at Sacramento about actual costs and applicant demand for licenses, we calculated that by not increasing its fees, San Diego has forgone roughly $60,000 in revenue over the three years we audited. Although this amount is negligible in the overall budget, these funds still could have been used by the department for other purposes, such as purchasing needed equipment.

### The State Should Clarify the Maximum Allowable CCW Fees

Licensing authorities vary in their interpretation of the state law that limits the maximum processing fee for initial and renewal applications and amendments to CCW licenses, leading to differences in the fees they charge. As we discussed previously, state law sets the maximum fee for initial CCW application licenses at up to $100 of its actual costs to process the application. In addition, state law allows licensing authorities to charge up to $25 for renewal applications and $10 for license amendments, such as a change of address on the license. Additionally, separate sections of state law allow licensing authorities to increase all three of these fees at a rate not to exceed the CCPI. Figure 3 on the following page uses a hypothetical scenario to demonstrate how state law governs the fee that licensing authorities may charge for an initial CCW license. We applied the CCPI to the $100 cap initially set by the Legislature in 1998 and determined that the maximum allowable fee as of 2017 would be approximately $156. However, as we noted, Sacramento's sheriff believes that the law prohibits charging an amount higher than $100 for initial application processing.

We disagree with Sacramento's interpretation of the law. The section of state law that allows licensing authorities to charge an application processing fee specifies that the authorities can charge a fee equal to their costs but not to exceed $100 for an initial application. We believe this allows a licensing authority to recover any amount of its actual costs up to the $100 limit. Once a licensing authority reaches the $100 limit on cost recovery, it can then continue to recover actual costs above $100, provided that it does not exceed the CCPI adjustment to the $100 limit. The license renewal and amendment fees are not subject to an actual cost constraint like the initial application processing fee is, but they

*Licensing authorities vary in their interpretation of state law that limits the maximum processing fee for initial and renewal applications and amendments to CCW licenses, leading to differences in the fees they charge.*

too may be increased at a rate that does not exceed any increase in the CCPI. We believe that the Legislature's intention that licensing authorities could incrementally increase the amount they recovered through these fees beyond the initial limits of $100, $25, and $10, respectively, can be found in the legislative history of the bill that implemented the CCPI provisions. Specifically, the analyses of the bill describe that the changes to state law would allow for a cost-of-living increase to local application processing fees. However, by amending state law, the State can make it clearer to licensing authorities currently charging less than $100, $25, and $10 that they can raise their fees beyond these initially imposed limits.

**Figure 3**

**A Model of How State Law Governs the Maximum Fee That Licensing Authorities May Charge for Processing an Initial CCW License Application**



Source:  California State Auditor's analysis of how Penal Code section 26190 and its requirements would affect a hypothetical licensing authority.

We noted that other licensing authorities we did not audit already appear to interpret state law in this way. We selected sheriffs' departments from six additional counties—Fresno, Humboldt, Monterey, Orange, San Bernardino, and Solano—that appeared to be charging more than $100 for an initial application processing

fee according to their websites. One of these departments—Humboldt—was including the fees payable to Justice in the CCW fee reported on its website which, when eliminated, reduced its local fees to $100. Monterey charged a convenience fee, in addition to its $100 fee, similar to the convenience fee that we discuss in the next section.[5] The four remaining departments were charging an initial application processing fee that exceeded $100. All of the licensing authorities we contacted charged a fee that was below the CCPI-adjusted maximum as of the most recently published CCPI information.

### Until Recently, Sacramento Did Not Inform Applicants That They Can Avoid Additional Application Fees

Sacramento has been charging convenience and credit card fees to apply for CCW licenses without informing applicants that these fees are not mandatory. Since December 2016, Sacramento has used a third-party vendor to establish an online process where individuals can apply for a CCW license. To provide this service, Sacramento allows its vendor to collect a $4 convenience fee for both initial and renewal applications in addition to the application fee the department charges. In addition, individuals who apply online must pay a credit card processing fee, with the amount based on an agreed upon rate with a payment transaction company. As we describe previously, state law allows licensing authorities to collect an application processing fee. However, state law prohibits licensing authorities from imposing any condition that requires applicants to pay any additional fees as a condition of the application for a license. Nevertheless, Sacramento's website did not inform applicants that they could avoid the convenience and credit card fees by applying in person. In fact, a December 2016 press release from the department announced that applicants could submit initial paperwork and payment online through a web-based application without any mention that applicants could avoid using that system and the associated additional fees. As a result, applicants likely assumed that the department required the use of the online application system and payment of the additional fees to apply for a license.

*State law prohibits licensing authorities from imposing any condition that requires applicants to pay any additional fees as a condition of the application for a license.*

According to the assistant to the sheriff, if applicants had called and inquired about not using this online system, the department would have informed them that they could visit the CCW office and complete a paper application in person. In this alternate process, the individual would not have to pay the convenience and credit card fees. However, the assistant to the sheriff stated

---

[5]  Although Monterey was not subject to our audit, we informed its staff that its $7 convenience fee constituted an unallowable additional fee.

that although this option existed, no applicants asked for an alternative to the online system. Because Sacramento decided to allow a third party to impose the online convenience charge on its applicants and because it failed to advertise alternatives to this process, applicants have borne unlawful additional fees since December 2016, amounting to a $4 increase in the initial portion of the $100 application cost—from $20 to $24.

In response to our discussions during August 2017, Sacramento added a paragraph to the application section of its website informing applicants that they can go to a department office to apply for a CCW license. The assistant to the sheriff acknowledged that some applicants may have thought the online application system was the only option available for applying for a CCW license, but he believed applicants would have called or emailed if they had questions about an alternative method. Now that Sacramento has made an alternative CCW application option clear, applicants can make an informed choice as to whether they wish to pay the convenience and credit card fees to apply for a license online.

## Recommendations

### Legislature

The Legislature should amend state law to clarify that licensing authorities can increase fees for CCW applications, renewals, and modifications above $100, $25, and $10, the respective maximum amounts specified in state law, provided that the fee for an initial application does not exceed the authorities' actual costs and that the rate of increase for any of the fees does not exceed that of the CCPI.

### Departments

To ensure that it is only charging fees that state law allows, Los Angeles should immediately cease charging applicants fees in addition to its license processing fee. Los Angeles should reimburse applicants who paid the unallowable fees. Further, if Los Angeles believes its license fee does not recover its entire cost of processing an initial application, it should complete a cost study and, if appropriate, revise its fee according to the results of that study and the maximum allowed fees under state law.

To ensure that it is maximizing allowable revenue from the CCW program and reducing its program deficits, Sacramento should perform a cost study of its initial application processing and, on

completion of the study, immediately increase its CCW license fees and begin charging the maximum amounts allowable under state law.

To ensure that it maximizes allowable revenue from its CCW program, San Diego should immediately pursue increasing its initial, renewal, and amendment fees to the maximum amounts allowable under state law.

We conducted this audit under the authority vested in the California State Auditor by Section 8543 et seq. of the California Government Code and according to generally accepted government auditing standards. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our findings and conclusions based on our audit objectives specified in the Scope and Methodology section of the report. We believe that the evidence obtained provides a reasonable basis for our findings and conclusions based on our audit objectives.

Respectfully submitted,

*Elaine M. Howle*

ELAINE M. HOWLE, CPA
State Auditor

| | |
|---|---|
| Date: | December 14, 2017 |
| Staff: | Bob Harris, MPP, Audit Principal |
| | Brian D. Boone, CIA, CFE |
| | Adrianna Brooks, MPP |
| | Jessica Derebenskiy |
| | Sean D. McCobb, MBA |
| | Lauren A. Taylor, MPP |
| IT Audits: | Ben Ward, CISA, ACDA, Audit Principal |
| | Lindsay Harris, MBA, CISA |
| | Brandon A. Clift, CPA, CFE |
| Legal Counsel: | Stephanie Ramirez-Ridgeway, Chief Counsel |
| | Kendra A. Nielsen, Senior Staff Counsel |

For questions regarding the contents of this report, please contact Margarita Fernández, Chief of Public Affairs, at 916.445.0255.

Blank page inserted for reproduction purposes only.



# OFFICE OF THE SHERIFF

## COUNTY OF LOS ANGELES

### HALL OF JUSTICE

JIM MCDONNELL, SHERIFF



December 1, 2017

Elaine M. Howle, CPA*
California State Auditor
621 Capitol Mall
Sacramento, California  95814

Dear Ms. Howle:

### RESPONSE TO THE CALIFORNIA STATE AUDITOR REPORT – CONCEALED WEAPON LICENSES WITHIN THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

Attached is the Los Angeles County Sheriff's Department's (Department) response to the California State Auditor's (State Auditor) report entitled, "Concealed Weapon Licenses."                                                                    ①

We initially note that the report did not find LASD to have issued any license in violation of State law.

It is unfortunate the Department's concerns are being addressed at this late                    ②
stage of the audit process in response to the final draft report.  The auditors presented written findings, without supporting evidence and solicited immediate validation responses from personnel without reasonable time to evaluate the information and prepare a comprehensive response.  This type of interactive process would have allowed us to ask substantive questions and provide auditors with more evidence to validate the findings and confirm compliance with applicable laws.  Unfortunately, during what appeared to have been an exit conference, the auditors did not ensure the Department understood the audit's purpose, methodologies, and/or results.  This was a missed opportunity for the auditors to educate the Department regarding the audit process. The audit process and the manner in which it was documented are disappointing.  We have since been sent a draft audit report and been given only five days to submit a detailed response.  The chance to respond to the audit is appreciated, however more time to clarify objective compliance with the auditors would have been productive.

211 WEST TEMPLE STREET, LOS ANGELES, CALIFORNIA 90012

*A Tradition of Service*
— Since 1850 —

---

\*   California State Auditor's comments begin on page 61.

Ms. Howle                    -2-                    December 1, 2017

We acknowledge that the audit identified some weaknesses in our processes and corrective action has been undertaken as identified in attachment "A." Specifically, we have created a checklist that will be completed before any license is issued, verifying that the file contains all necessary documentation of good moral character, good cause, residency and training.  We have also revised our fees and begun the process of identifying individuals entitled to a refund.  We are further initiating a cost study to determine the actual costs of issuing licenses, as the report correctly points out that our actual costs are likely significantly higher than the fees currently charged.

③  We strongly disagree, however, that our CCW program is "marked by a consistent failure" to follow our policies.  The report misinterprets our policy. The LASD policy simply requires that the applicant provide "convincing evidence" of good cause.  Contrary to the assertion contained in the report, that does not necessarily require the "collection of documentation."  In some cases, we may exercise our discretion to ask an applicant for additional documentation.  In other instances, the declaration provided in the application itself can serve as documentation of good cause.  We do agree that the application must contain satisfactory written evidence of good cause.  That determination is based on an exercise of discretion by the individual making the decision at the time.

④  Auditors utilized testimonial evidence from staff that may have been taken out of context.  The staff interviewed were not the same staff who held the responsibility of processing CCW applications during the audit time period.  Subsequently, their testimony was conjecture as to what may have occurred during the audit time period.  When it was stated that applicants from the law enforcement community met the requirements for good cause, the report implied the Department did not follow its own policy of requiring applicants from the law enforcement community to demonstrate good cause.

⑤  We also disagree with the suggestion in the report that licenses are unduly granted to persons involved in the criminal justice system, or that the LASD treats applicants inequitably based solely on their occupation.  A decision to grant a license is not made solely due to a specific occupation, but consideration is given to the specific circumstances attendant to the individual's occupation.  Not surprisingly, a large number of applicants for CCWs are current or former members of the law enforcement/criminal justice communities.  The law itself acknowledges this, in that there are specific provisions made for licenses issued to judicial officers and former peace officers.

Ms. Howle                    -3-                    December 1, 2017

In sum, although past practices may have been consistent with the law, it may be fair to say that some documentation to support compliance with policies should have been better.  In the spirit of continuous improvement, we are committed to implementing the recommendations as noted in the attachment.

Should you have any questions, please feel free to contact Captain Steven Gross, Audit and Accountability Bureau, at (323) 307-8302.

Sincerely,

JIM McDONNELL
SHERIFF

58 | California State Auditor Report 2017-101
December 2017

RESPONSE TO THE CALIFORNIA STATE AUDITOR
Attachment "A"

COUNTY OF LOS ANGELES – SHERIFF

SUBJECT:  CONCEALED WEAPON LICENSES WITHIN THE LOS ANGELES
COUNTY SHERIFF'S DEPARTMENT

<u>RESPONSE TO RECOMMENDATIONS BY THE CALIFORNIA STATE AUDITOR
(STATE AUDITOR)</u>

1.  To ensure that the Los Angeles Sheriff's Department's (Los Angeles) Concealed
    Carry Weapon (CCW) licensing decisions align with its CCW policy, Los Angeles
    should only issue licenses to applicants after collecting documentation of specific
    personal threats against the applicants so as to satisfy its definition of good cause.
    If Los Angeles believes that its public licensing policy does not include all acceptable
    good causes for a CCW license, then by March 2018, it should revise that policy and
    publish the new policy on its website.  It should then immediately begin processing
    applications according to that revised policy.

    <u>Response</u>: **Do not concur**.  The Los Angeles County Sheriff's Department has been
    issuing CCWs consistent with its policies, procedures, and State law.  Although the
    audit concluded the Department was not adhering to policy, this conclusion was
    based on inadequate documentation rather than evidence of policy violation.  Our
    policies are currently aligned with State law and further defined whereas State law is
    broad.  CCWs have been issued consistent with good cause although, we concur
    that documentation and retention thereof could be improved.  We do not see a need
    to revise policy based on this audit, however, we recognize a potential need to clarify
    State law for consistent application throughout its counties.

2.  To ensure that Los Angeles only issues licenses to individuals after receiving
    evidence of residency, firearms training, and good moral character that aligns with
    its policy, Los Angeles should only issue licenses after verifying that it has received
    this evidence.  To avoid overlooking required evidence, Los Angeles should create
    procedures, by March 2018, for its staff to follow to ensure that each CCW file
    contains the evidence its policy requires before issuing the license.

    <u>Response</u>: **Concur in part**.  The Department has been issuing CCWs only after
    applicants have demonstrated good moral character, good cause exists, and
    residency of the County and firearms training.  We agree to improve our process of
    documenting when an applicant demonstrates they have fulfilled the legal
    requirements necessary to obtain a CCW.  We have therefore developed and
    implemented a checklist that will be completed before any license is issued, verifying
    that the file contains all necessary documentation of good moral character, good
    cause, residency, and training.

⑥

⑥

1

3. To ensure that Los Angeles is only charging fees that State law allows, Los Angeles should immediately cease charging applicants fees in addition to its license processing fee.  Los Angeles should also reimburse applicants that paid these unallowable fees.

   <u>Response</u>: **Concur.**  As mentioned in the audit, the Department has stopped charging the additional fees and has consulted with the county's Auditor-Controller to implement a plan to reimburse individuals entitled to a refund.

   ⑦

4. If Los Angeles believes its license fee does not recover its entire cost of processing an initial application, it should complete a cost study and, if appropriate, revise its fee according to the results of that study and the maximum allowed fees under State law.

   <u>Response</u>: **Concur.**  The Department requested a cost study and will assess the results and, if appropriate, will revise the associated fees.  The Department will also take into consideration of California Penal Code Section 26170(3)(b), which allows for the waiver of fees for Peace Officer as defined by Section 830.6.

Blank page inserted for reproduction purposes only.

# Comments

## CALIFORNIA STATE AUDITOR'S COMMENTS ON THE RESPONSE FROM THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

To provide clarity and perspective, we are commenting on Los Angeles's response to the audit. The numbers below correspond to the numbers we have placed in the margin of its response.

The copy of our report that we provided to Los Angeles for its response was redacted to include only information related to our review of Los Angeles. The department's response incorrectly refers to a general description of the report's subject matter as the title of the report.  ①

Los Angeles has greatly mischaracterized our audit process, and its response ignores the multiple conversations we had with its staff throughout the audit to discuss our findings and recommendations. During our entrance conference, we discussed the audit's scope, purpose, and the audit standards we would be following with Los Angeles's staff. During our audit, the audit team was on-site in Los Angeles on multiple occasions gathering evidence, interviewing staff, and obtaining the department's perspective on the issues we identified. During our exit conference, we again explained the audit process and shared draft report text with the department. At that exit conference, we stressed the importance of continued communication about any concerns that Los Angeles may have about the planned report text. Accordingly, we continued to discuss the draft report with Los Angeles after our exit conference. We contacted Los Angeles multiple times during its five-day review period to ask if it had any concerns about the report text, and it did not communicate any concerns about the accuracy of our conclusions. Finally, our report includes direct perspective from Los Angeles about our conclusions, including in cases where Los Angeles had expressed disagreement, such as on page 21. Los Angeles's response implies that it had an inadequate amount of time to provide perspective on our audit findings, but this is simply untrue.  ②

Based on the number of exceptions to Los Angeles's policies we identified during our review, which are highlighted in Figure 1 on page 17, we stand by our conclusion that its CCW program is marked by a consistent failure to follow its policies. Further, we disagree that we are misinterpreting Los Angeles's policy. We reviewed the department's policy and describe its good cause requirement on pages 15 and 16 of our report. To establish how Los Angeles applies its policy, we discussed the policy with its CCW manager and on page 18, we report that she informed us Los Angeles expects individuals to turn in documentation  ③

such as restraining orders or police reports, to demonstrate that direct, recent threats exist against them. On that same page, we state that Los Angeles issued 14 of the 25 licenses we reviewed without obtaining documentation that supported the applicants' written statements identifying specific, personal threats. On page 19, we discuss how we found Los Angeles was inconsistent in how it treated applicants who did not submit documentation to support their claimed good cause. Specifically, Los Angeles denied licenses to applicants who described personal threats without providing supporting documentation but granted licenses to others who submitted similar good cause statements. On that same page, we also describe that 10 of the 25 issued licenses we reviewed were issued to applicants that did not even assert that they faced a specific, personal threat. As we explain on page 21, these applications sometimes contained little more than a desire for self-protection that expressed knowledge that other individuals had been threatened or that described the applicants' professional duties. Therefore, we stand by our conclusion that the department failed to follow its policy related to good cause.

④   Our report appropriately presents the perspective of Los Angeles's staff. We acknowledge on page 23 that the department's CCW manager has been in her position since June 2017, and on page 25 we report that the lieutenant who is responsible for reviewing CCW applications felt it was inappropriate to speculate about the decision-making process as it related to an application processed before he joined the CCW program. Further, Los Angeles's response appears to refer to a statement made by its lieutenant on pages 20 and 21 of our report, where the lieutenant states that applicants from the law enforcement community met the good cause requirement because of the nature of their jobs. As we explain on page 21, this is a direct contradiction of Los Angeles's written CCW policy, which states that "no position of job classification in itself shall constitute good cause for the issuance, or for the denial, of a CCW license."

⑤   Our report does not conclude that any of the licenses Los Angeles issued were granted unduly to individuals who are involved in the criminal justice system. Our report concludes that most licenses we reviewed were not issued in accordance with Los Angeles's public CCW policy, as we describe beginning on page 18. The totality of our review makes it clear that Los Angeles accepted as "convincing evidence" different levels of support for an applicant's good cause based on the individual's occupation. This treatment of applicants is inequitable under Los Angeles's current policy, which does not state that it will review applications in this way and, as discussed on page 21, specifically explains that an applicant's occupation will not in itself constitute good cause. It is disappointing to see that, in its response on page 58, Los Angeles refuses to implement our recommendation related to this issue. That recommendation

acknowledges that Los Angeles may need to revise its CCW policy to include all good causes for a CCW license. Doing so would increase the transparency of how Los Angeles makes CCW licensing decisions. As our report concludes on page 22, without such a policy, Los Angeles is unable to fully support its practice of determining that some applicants have good cause simply because of their occupations while denying licenses to other individuals who submit otherwise similar applications.

Los Angeles incorrectly asserts that it has issued CCW licenses in accordance with its policies. Figure 1, on page 17, summarizes the exceptions to Los Angeles's policies and standards that we found in the 25 issued licenses we reviewed. On page 23, we describe how the department could not demonstrate that it followed its policy related to residency for any of the 25 licenses we reviewed. In Comment 3, beginning on page 61, we note the areas of our report that explain Los Angeles's failure to follow its good cause policy in 24 of the 25 licenses we reviewed. Further, we describe on page 24 that five of the files we reviewed did not contain proof of completed training and that for three files we reviewed the department could not demonstrate that it had followed its practices related to good moral character.

⑥

We include on page 47 perspective obtained during our audit from Los Angeles's chief legal advisor that the department would stop charging additional fees. However, when we followed up in October 2017 to determine if the department had stopped charging these fees, it was unable to demonstrate that it had. Therefore, we look forward to reviewing documentation to verify that Los Angeles has stopped charging unallowable fees when we review its next response to this recommendation, which is scheduled to be submitted to us 60 days after the issuance of our report.

⑦

Blank page inserted for reproduction purposes only.

**SACRAMENTO COUNTY**    **SHERIFF'S DEPARTMENT**

### Scott R. Jones
*Sheriff*

December 5, 2017

Elaine M. Howle, CPA*
State Auditor
California State Auditor's Office

Re: Audit of Sacramento County Sheriff's Department's CCW permit process

Dear Ms. Howle,

The following serves as my response to the preliminary draft of the audit:

<u>**Preliminary Comments**</u>

It is worthwhile to chronicle how this audit came to be, to provide both context and illustration to the process and its findings.  In the 2016 legislative session, Assemblymember Kevin McCarty, who is a former Sacramento City Councilmember, introduced two bills to modify existing CCW permit laws.  Both of the bills would have made it more difficult and burdensome statewide to obtain a CCW permit.  The Assemblyman is fundamentally and philosophically opposed to CCW permits.  Both bills failed by October 2016, and in one of the bills' veto message Governor Brown correctly pointed out, "This bill was spurred by a local dispute in one county.  I am unaware of a larger problem that merits a statewide change at this point."  ①

Undeterred, Assemblymember McCarty threatened on social media on December 21st, 2016, to use the legislative audit function to intervene in my and others' CCW permit processes because of his legislative failures.  This audit is a consummation of that threat.  ①

Despite the questionable circumstances under which this audit was conceived, our team was accessible, assistive, and fully cooperative with the audit team, and I would be remiss if I didn't express how proud I am of my personnel for their facilitation of this audit.  ①

<u>**Audit Findings**</u>

This audit chronicled a number of criticisms, which I will address below, but it is also salient to note what the auditors did NOT find.  **They could not find that any permit was issued improperly or contrary to law**.  In fact, the auditors stated, "[W]e found no evidence that it did not comply with state law."

Page **1** of **4**

---
\*  California State Auditor's comments begin on page 69.

**66** | California State Auditor Report 2017-101
December 2017

② Further, **they could not find that any permit was revoked improperly, or that the revocation itself was evidence that the permit should not have previously been issued.** They state specifically, "[W]e cannot conclude that the prohibiting event is evidence that the individual was incorrectly granted a CCW license at the time of application." To the number of revocations in the Sheriff's Department, they correctly identified closer and more effective monitoring as the rationale. "Accordingly, we conclude that the number of revoked licenses could actually be higher because a licensing authority was more active in monitoring its license holders and revoking licenses even when such a revocation was not strictly required by law."

③ Finally, **the audit concluded the subsidy required to fulfill our legal obligations in processing CCW permits, "has a negligible impact on the county budget," the Sheriff's Department has never asked the County for additional funds to cover the deficit, and in fact the Sheriff's Department has given more money back to the county each year, by coming in under budget, than the CCW program deficit.**

In all, the audit in my estimation confirmed both the propriety and integrity of the Sheriff's Department's CCW process.

The audit *was* critical of various facets of the process, however. Although the audit team was provided with over 11,000 CCW records, most of their critical findings come from a "random" selection of 25 files. I will address each of these concerns in turn.

**<u>Audit Criticisms and Recommendations</u>**

1. <u>The Sheriff's Department has inadequate written policies in place to ensure consistency and compliance in the CCW application process</u>.

④ The audit team seemed frustrated by inadequate documentation in some application files relative to residency and background checks. While I can certainly appreciate that it would be much easier for an outside group completely unfamiliar with the process to view files which are identical and nicely indexed, it by no means indicates that the residency and backgrounds weren't adequately established in every single case. Policies, whether verbal or written, are meant to be guidelines and certainly cannot apply in every circumstance. Fundamental to the provision of governmental services of any kind is for employees to go out of their way to be assistive. While it is important to establish on our website what forms of residency we accept, to try and establish a baseline expectation, it is equally critical that we be flexible enough to use the considerable resources at our disposal to assist in that endeavor if and when necessary. This may result in a lack of a particular document for the file, but in no way indicates that the applicants' residence was not adequately and properly verified. The same is true of differing documentation relative to background checks. That documentation does in fact exist in every case, but often not neatly packaged in the CCW file. Our processes are designed to be effective and efficient—as all governmental services should be—without regard to the speculative and potential ease of a future audit. Although the audit team would have liked to see more of these policies reduced to written form, the fact remains that we DO have policies covering almost every facet of the CCW permit process.

That being said, we are currently examining the feasibility of the following:

    a.  Establishing a file "checklist" to both ensure and document that each requisite of an application has been met,

    b.  Examining which additional, if any, policies should be reduced to writing from their current non-written form, and

    c.  Examining a potential different staffing model that allows for more consistency and longevity in the CCW unit.

2.  <u>The Sheriff's Department does not notify DOJ in every case when it revokes a CCW</u>.

This was a requirement that was historically inconsistently applied, but has been remedied when brought to our attention by the audit team.    ⑤

3.  <u>The Sheriff's Department's reason for an applicant's denial is sometimes inadequate</u>.

There was much discussion during the pendency of the audit—and difference of opinion—on what information is required to be provided to an unsuccessful applicant as to the reason for the denial. While our denial reason is more general and the audit team wanted it to be more specific, we are in the process of conducting legal research and examining state-wide best practices relative to this issue.    ⑥

4.  <u>The Sheriff's Department does not inform applicants that it can "opt out" of the $4 online processing charge</u>.

The Sheriff's Department transitioned early this year to a more efficient, more cost effective online vendor for many of the CCW processes.  The third-party vendor charges applicants $4 to use this system.  Although we can and would process applications in the old manner and not have the applicant suffer the $4 charge, nobody has ever asked.  In the overall financial and time burden to obtain a CCW permit, a $4 charge seems trivial.    ⑦

Nonetheless, we have placed some clarifying language on the website on how applicants can opt out of the $4 fee and submit their application in the traditional manner, if they so choose.  We still have had no such requests.

5.  <u>The Sheriff's Department does not charge the maximum allowed by statute for applications and renewals</u>.

Putting aside for a moment the fact that a state auditor should neither care nor have any influence over what a County Sheriff's Department charges for any of its services, there exists in the current law confusing statutes relative to what can be charged for these services.  Although the audit team disagrees with my analysis of the statute and asserts that I could have raised the application fees each year, as a member of the California State Bar, my legal analysis is different.    ⑧

Penal Code section 26190 establishes the fees allowable for CCW application and renewal. Specifically, section 26190(b)(1) states in part, "the licensing authority may charge an additional fee in the amount equal to the actual costs for processing the application for a new license, …, but <u>in no case</u> to exceed $100… .(emphasis added)"  Other sections detail the fees allowable for renewals and modifications at $25 and $10 respectively.  There is one important distinction, however, between ALL of the other fees and the fee for the application; in all of the other fees the    ⑨

language used is that the amount "shall not exceed" the listed amount.  In the application fee, however, it mandates that "in no case" shall it exceed $100.  While the legislature could have made that particular section consistent with ALL the other sections, it did not.  In the rules of statutory interpretation I am left to believe that particular language was intentionally chosen, and it must be given plain meaning.  While the attorneys on the audit team clearly believe otherwise, I strongly believe that my interpretation of the statute is correct.

However, as indicated in their audit as a recommendation to the legislature, this issue could be easily remedied with some clarifying language added to the statute.

**Conclusion**

Despite the questionable manner in which this audit was birthed, I think it important to note that the audit team itself was quite professional and non-political.  Although we had a rough start relative to each of our expectations of the other, and differences of opinions throughout the process, they remained professional, accessible, and reasonable.  Further, despite some of the differences of opinion that this product resulted in, I believe it is a reasonable product of their perspective and I appreciate the team's efforts throughout this process.

Very Truly Yours,

*Scott Jones*

SCOTT JONES, SHERIFF

# Comments

## CALIFORNIA STATE AUDITOR'S COMMENTS ON THE RESPONSE FROM THE SACRAMENTO COUNTY SHERIFF'S DEPARTMENT

To provide clarity and perspective, we are commenting on Sacramento's response to the audit. The numbers below correspond to the numbers we have placed in the margin of its response.

The Sheriff offers his perspective on how this audit originated. It is important to note that the Joint Legislative Audit Committee, which is a bipartisan committee of the Legislature, reviewed and approved the request for this audit through its regular process for approving audits at a public hearing. This committee is composed of members from the Assembly and Senate and directed our office to audit the CCW licensing processes within three counties—not just Sacramento.

①

Sacramento misrepresents our discussion of locally initiated revocations. On page 37, we discuss how the number of revoked licenses is not sufficient on its own to determine that the issuance criteria in state law need to be clarified. As support for our conclusion, we present on that page a discussion of locally initiated revocations as a possible explanation for why a licensing authority may have a higher number of revocations. Although we use Sacramento's revocation of license holders for DUI arrests as an example, we do not conclude, as Sacramento's response suggests, that Sacramento's revocation rate is higher due to what it states is its own closer and more effective monitoring.

②

Sacramento's response implies that our audit includes several conclusions about its CCW program and overall departmental fiscal condition, not all of which we actually conclude in our report. We state on page 45 that Sacramento's CCW program likely has a negligible impact on the county budget. Our report does not state that the Sheriff's department has never asked the county for additional funds to cover its program deficit or that the department has given money back to the county every year. Finally, we explain on page 44 that Sacramento was under budget for its general fund expenditures in fiscal year 2016–17 by more than $9 million, an amount that is larger than its CCW deficit. However, as we note on that same page, by using its resources on its CCW program, the department cannot use them for other purposes.

③

Sacramento is dismissive of the value that procedures could have for its CCW staff. As we indicate on page 25, Sacramento does not have formal procedures for staff who process CCW applications to follow. Therefore, our review was based on a comparison

④

of a selection of 25 CCW license files to the criteria found on the department's website, to internal guidance documents, and to the expectations verbally expressed by the assistant to the sheriff. As discussed on pages 26 and 27, our review identified eight instances in which the department did not document that it adhered to its standards for licensure in the area of residency proof and three instances in which the department did not document that it conducted local background checks to verify an applicant's good moral character. Further, on page 27 we report that in three other instances the department collected training documents that did not align with its expectations for training. These inconsistencies show that Sacramento could benefit from creating formal procedures for the staff who process CCW applications to follow, as we recommend on page 39. Despite the suggestion in Sacramento's response that a lack of procedures is merely frustrating to an outside auditor, it indicates on page 67 that it is considering changes such as a file checklist and formalizing its unwritten policies.

⑤   We look forward to reviewing whether Sacramento has improved its reporting of revocations of licenses to Justice when we review the documentation accompanying its next response, which we expect the department to submit to us 60 days after the issuance of our report.

⑥   Sacramento characterizes our finding related to its denial letters as being based on a preference, which is not true. On page 34, we describe changes Sacramento made during our audit to the level of information it provides denied applicants. We describe how Sacramento made those changes after realizing that the level of detail in the denial letters it had sent during our audit period did not provide the information required by state law. However, on the same page, we explain that most of the letters we reviewed that Sacramento sent to denied applicants after its change in practice still fell short of state law's requirement because they did not indicate which requirement the applicant failed to meet to obtain a CCW license, such as good cause. As we explain on page 35, the plain language of the law requires licensing authorities to provide the requirement that an applicant did not meet. Therefore, as we explain on that same page, although Sacramento has taken some steps toward resolving the deficiencies in its denial letters, it has not yet ensured that it always complies with state law.

⑦   Despite Sacramento's perspective that the $4 convenience fee is a trivial amount when considering the overall financial and time burden to obtain a CCW license, state law prohibits licensing authorities from imposing any condition that requires applicants to pay any additional fees as a condition of the application for a license, as we explain on page 51. Beginning on that same page, we explain how, during our audit fieldwork, Sacramento had not

informed applicants that they could avoid the additional fee by applying through some means other than its online application system. As Sacramento acknowledges in its response and as we describe on page 52, the department now informs applicants on its website that they can apply at a department office, making both options for applying clear to applicants.

Sacramento appears to suggest that it was inappropriate for our audit to examine the fees it charges for CCW licenses. However, as we describe in Table 2 on page 9 under Audit Objective 5, the fees the department charges, as well as the related areas of program surpluses or deficits and the fiscal effect of the CCW program on the county budget, were all included in the scope of the audit that the Joint Legislative Audit Committee directed us to perform. Accordingly, we examined the fees Sacramento charges for CCW licenses and compared those fees to the criteria in state law, the analysis of which we describe beginning on page 47. In doing so, we determined that state law allows licensing authorities to charge more for CCW license activities, such as initial licenses and renewed licenses, than Sacramento was charging. We also found, as we show in Table 6 on page 44, that Sacramento's CCW program operated at a deficit in each year of our audit period. As we observe on that page, by using other county resources to cover its program deficits, Sacramento cannot use those resources for other purposes. Together, this information led us to recommend, beginning on page 52, that Sacramento should perform a cost study and upon completion of the study raise its fees to the maximum extent the law allows. Such a recommendation is well within the purview of our office.

⑧

Sacramento explains that it disagrees with our conclusions about the allowable maximum fees, a disagreement that we already acknowledge on pages 49 and 50. However, we state on page 49 that licensing authorities vary in their interpretations of the state law that limits the maximum processing fee for initial and renewal applications and amendments to CCW licenses. Accordingly, we have recommended on page 52 that the Legislature amend the law to clarify that licensing authorities can increase fees for CCW applications, renewals, and amendments above the maximum amounts in state law, subject to the conditions the law outlines.

⑨

**California State Auditor Report 2017-101**
**December 2017**

Blank page inserted for reproduction purposes only.



# San Diego County Sheriff's Department

Post Office Box 939062   •   San Diego, California 92193-9062



## *William D. Gore, Sheriff*

December 1, 2017

Ms. Elaine M. Howle*
California State Auditor
621 Capitol Mall, Suite 1200
Sacramento, California 95814

State Auditor Howle:

This letter is in response to your draft audit report on Concealed Weapon Licenses.  In March of this year, the Joint Legislative Audit Committee directed you to look at three California licensing agencies, and 1) identify the number of CCW licenses issued, modified, denied, and revoked by year, 2) identify fiscal information about concealed-carry programs across the three licensing agencies, 3) identify whether those agencies were consistently following existing laws and enforcing department processes, and 4) identify whether the statutory "good cause" requirement needs clarifying.

The draft report appears to make several statements that are not supported by citation to data collected by the auditor that would provide context for the reader of the report.  For example, on page one of the report you state that "[w]e found that San Diego did not always comply with its policies and procedures when it issued … some licenses."  However, the text of your draft report fails to clearly identify what, if any, policies and procedures were violated when licenses were supposedly issued without following department policy.  The draft report also fails to help the reader to understand how many licenses you are saying that you found to have been issued that failed to comply with department policy and procedure.     ①

Another example of a lack of clarity in the statements contained within the draft report is the statement that "San Diego's renewal process has weaknesses that have led it to renew some licenses inappropriately."  The term inappropriately does not inform the reader as to whether you are alleging that a department policy was not followed, or whether you are alleging that the renewal of a particular CCW license did not comply with California law.  This is an important distinction, because a failure to comply with department policy doesn't necessarily mean that the renewal applicant didn't qualify for renewal under state law.  As you are no doubt aware, California law simply says that a Sheriff may issue a license to a person upon proof of all of the following: that the person is of good moral character, that good cause exists for issuance of the license, that the applicant is a resident of the jurisdiction, and that the applicant has completed a course of training.  California law fails, however, to provide guidance on what type of, and how much, proof is necessary to meet these requirements. As a result, issuing agencies all across the state have had to try and interpret the legislative intent behind California's requirements.     ②

*   California State Auditor's comments begin on page 79.

Elaine M. Howle
Page 2
December 1, 2017

1. **Identification of the number of CCW licenses issued, modified, denied, and revoked by year.**

The Department does not take issue with the number of licenses identified in Table 4, as being issued, denied, renewed, revoked, and suspended during the three-year period identified by the audit.  However, the methodology portion of the draft report states that you were unable to determine the number of amended CCW licenses for the Department, "because the information was not tracked reliably in its database."  This statement may be interpreted by the reader to mean that the Department has failed to properly keep records, when in fact the Department maintains individual files that contain all of the records required to be maintained pursuant to Penal Code §26225(a), including the amendment of a license or the denial of an amendment to a license.  Further, the Department complies with Penal Code §26225(b) by immediately filing the amendment of a license or denial of an amendment to a license with the Department of Justice.  Finally, although the Licensing Database does not track all of the information sought by the auditors, some of the information sought is maintained in an Excel spreadsheet by the licensing bureau.

2. **Identify fiscal information about the concealed-carry program.**

As the draft report indicates, a cost study estimate completed in fiscal year 2011-12 concluded that the cost to process an initial application was $2,700.  The Department charges a fee of $63 for an initial license application and about $21 for an application to renew.  The San Diego County Sheriff's Department recognizes and agrees that its CCW licensing program does not operate as a full cost recovery program.  There are legitimate reasons for keeping the fees for issuance of a CCW license low.  The job of the Sheriff is to ensure the safety of the public.  Those applicants who receive a CCW license have provided proof of good cause for needing to carry a concealed weapon.  More specifically, they have set forth a set of circumstances which cause them to be placed in harm's way, and that distinguishes them from other members of the general public.  It would be counterintuitive, and not good policy, to place a high fee that would deter someone who otherwise qualifies from applying for a CCW license, especially when they have a genuine necessity to obtain one.

It should also be noted that the draft report once again makes a statement that is not supported by citation to data collected by the auditor when it states "[w]e assumed that increased fees would not affect the number of applicants who applied for an initial or renewal license…"  There is no basis in fact or data cited in the draft report to support this assumption.  On the contrary, common sense tells us that when costs go up some people can't afford items that they need, or simply choose to forgo them.  A rise in the cost of CCW licenses would, more likely than not, have this effect.

3. **Identify whether the agency is consistently following existing laws and enforcing department processes.**

a. **State law**

As it relates to the issuance of CCW licenses, the Department agrees with the draft report that its "policy is permissible under the broad discretion given by state law."

As it relates to the revocation of CCW licenses when a person becomes a prohibited person, the draft report states that the department did not follow the law in all cases.  Specifically, the draft report identified two cases where the Department of Justice notified the department of two prohibited persons.  Those persons had already

Elaine M. Howle
Page 3
December 1, 2017

voluntarily surrendered their CCW licenses prior to the Department of Justice notification.  According to the
draft report, the auditor believes that California law requires a licensing agency to revoke a license and notify   ⑤
the Department of Justice, even though the license holder is no longer in possession of the license and has
voluntarily surrendered it to the licensing agency.   The issue revolves around whether or not state law requires
a licensing authority to revoke a license, and make the necessary notifications, if a prohibited person has already
surrendered his license prior to the Department of Justice notifying the licensing agency of his prohibited person   ⑥
status.  State law addresses revocations, however, it is silent on the issue of surrendered licenses.  As a result,
the department has not revoked or reported surrendered or suspended licenses.  The Department has gotten
inconsistent responses from the Department of Justice as recently as November 8, 2017, as to whether or not it
is obligated to revoke and report surrendered or suspended licenses.  In preparation for this letter, the auditors
informed the department that the director of the Bureau of Firearms would like to be notified of surrenders and
suspensions of CCW licenses.  The department has agreed to make those notifications, despite the fact that they
are not specifically required in the Penal Code.

     **b.**     **Department processes**

The draft report contains statements that don't accurately portray the department's policies when it discusses
good moral character and good cause.  The draft report indicates that the department does not issue CCW   ⑦
licenses to individuals "who have had numerous negative contacts with law enforcement."  This is not accurate.
While it is true that department policy states that "CCW licenses are not granted under good moral character for
anyone under any form of probation," the policy does not state that numerous negative contacts with law
enforcement, in and of itself, is disqualifying.  Rather the policy lists several items that are considered in the
determination of good moral character, including arrests, convictions, and citations, none of which are
necessarily a de-facto preclusion to obtaining a CCW license.

As it relates to good moral character, a review of the data for Figure 1, indicates that the auditors review of 25
CCW licenses found that the department adhered to its policy, procedures, and stated practices as
it pertained to the good moral character requirement for the issuance of both initial licenses and renewed
licenses.

The draft report also states that the department "does not consider an applicant's stated desire to obtain a   ⑦
license for self-defense sufficient cause."  As stated above, California law requires <u>proof</u> that good cause exists
for the issuance of a CCW license.  The department does not believe that an applicant who simply states that
they desire a CCW license for self-defense, without more, has provided the requisite <u>proof</u> that good cause
exists to obtain a CCW license under California law.  However, an applicant who needs a CCW for self-defense,
and who provides the requisite proof that good cause exists, can obtain a CCW for self-defense.

As it relates to California's residency requirement, the department requires an applicant to be a resident of the
county or a city within the county, or the applicant's principal place of employment or business has to be in the
county or a city within the county and the applicant must spend a substantial period of time in that place of
employment or business.  As with each of the CCW license requirements, proof must be provided.  The
department doesn't specify exactly what proof is required, as residency can be proven using a myriad of items,
but it does require two documents to establish residency.  In the department's documentation checklist, it

M. Howle
Page 4
December 1, 2017

states that "[d]ocuments must have the applicant's name, such as monthly utility bills, receipts, etc. dated within 30 days of the 2nd interview."   However, the department's CCW Policy and Procedure Outline, does not include the 30-day requirement for monthly bills and receipts, but rather simply provides examples that include "unpaid utility bills that lists applicant's name and residence address, lease agreements, property tax statements."

The draft report identified 11 files that were reviewed where at least one of the two proofs of residency was beyond the 30-day requirement set forth in the Department's document checklist.  According to the draft report, the documents were from two to 64 days past the 30-day limit.  A review of the individual files indicated licensing clerks accepted monthly residency documentation if the bill due date was within the prescribed 30 day time period, as opposed to the cycle date of the actual bill.  The goal of the documentation requirement for residency is to ensure that the applicant is a resident of the licensing agency's jurisdiction.  While the audit report does not indicate that any of the issued or renewed applications were incorrectly issued to applicants who did not qualify under state law, the department recognizes the differences in the CCW Policy and Procedure Outline and Documentation Checklist, as well as the need for clarity and training on the 30 day limit.  As a result, the department will review both documents and make sure that they accomplish the department's stated goal of ensuring compliance with the State's residency requirements for the issuance of a CCW license.   Once completed, further training will be provided to the licensing clerks.

As it relates to good cause, the draft report states that "San Diego could benefit from evaluating its current expectations for good cause documentation and setting standards for the type of documents that is sufficient to satisfy its requirement."  However, the draft report fails to provide any examples of the types and amounts of documents that could be used as a standard.  In a meeting with the auditors in preparation for the draft report, they were also unable to provide any specific standards that could be used given that the burden of proving good cause is on the applicant, and the determination of whether the requirement is met is made on an individualized case by case basis.  That said, the department has recently updated its website to indicate the types of situations which, upon proof, might establish good cause.  Licensing staff have already been trained on the department's goal of ensuring that  those persons who present proof of good cause, and meet all other qualifications, be issued a CCW if they so request.  It should be noted, however, that a review of the underlying data for Figure 1, indicates that the auditors review of 25 CCW licenses found that the department adhered to its policy, procedures, and stated practices as it pertained to the good cause requirement for the issuance of initial licenses, and only found one deviation from policy and procedure as it relates to a renewed license.  While the renewal application should have contained a good cause statement, the applicant operated an established business for which he was issued a CCW license since 2009.  The license was based on business purposes and was still in operation at the time of renewal in 2015.  The department has provided additional training to the licensing clerk to ensure that the necessary information is completed on all renewals.

As it relates to training, a review of the underlying data for Figure 1, indicates that the auditor's review of 25 CCW licenses found that the department adhered to its policy, procedures, and stated practices as it pertained to the training requirement for the issuance of all initial licenses except for a member of the Coast Guard.  Penal Code §26165 provides that "the course of training may be any course acceptable to the licensing authority, and shall not exceed 16 hours, and shall include instruction on at least firearm safety and the law regarding the permissible use of a firearm."  At the time of issuance, the department reviewed the Coast Guard member's

Elaine M. Howle
Page 5
December 1, 2017

military training, weapons qualification, and competency report, and made a determination that the Coast Guard members training not only met, but exceeded the departments training requirements for the issuance of a CCW license.  The other file that was alleged to have been found to demonstrate that the department did not adhere to its policy and procedures related to training, indicated in Figure 1, was for the renewal of a CCW license on July 14, 2015.  After review of the actual file the department located a training safety certificate issued on May 16, 2015 for the renewal applicant. 

**4.    Identify whether the statutory "good cause" requirement needs clarifying.**

It is clear that the statutory good cause requirement sets forth a requirement without defining its parameters. The legislature's failure to define good cause has subjected licensing agencies up and down the state to litigation.  From the public's perspective, the failure to define good cause has led to unequal and arbitrary treatment by those licensing agencies who are attempting to comply with the good cause requirement.

The requirements for obtaining a CCW license are set forth by the state legislature, including that licenses and applications are required to be uniform throughout the state, and the Department of Justice is in integral part of the process for the issuance of a CCW license.  While the state has clearly occupied the field of CCW licensing prescribing everything from the proof that is required to obtain a license, to the applications that must be completed, to the fees can be charged, the department appreciates the auditor's analysis of the varying standards used throughout the state.  The department agrees with the auditors that local jurisdictions are in the best position to determine what is best for their communities when it comes to issuing CCW licenses.

Recommendations:

The draft report recommends that licensing staff establish a routine supervisory review of a selection of renewed licenses.  The department agrees with this recommendation and will establish a policy requiring the routine supervisory review of random renewed licenses, effective immediately.

The draft report recommends that the department develop guidance and train its staff on what good cause documentation staff should request from applicants.  The department agrees with this recommendation and has recently updated its website and training to reflect its goal of ensuring that  those persons who present proof of good cause, and meet all other qualifications, be issued a CCW if they so request.

The draft report recommends that the department should train its staff regarding the expected documents for residency and training.  The department agrees with this recommendation, and based on the results of the audit, will be clarifying the documents expected for residency and providing updated training to its staff.

The draft report recommends that the department immediately revoke CCW licenses and should then inform Justice that it has revoked licenses whenever license holders become prohibited persons, and should notify Justice when it suspends a license or a license is surrendered.   The department agrees with this recommendation and has agreed to notify Justice when a license is suspended or surrendered.

Elaine M. Howle
Page 6
December 1, 2017

⑬ The draft report recommends that the department immediately pursue increasing its initial, renewal, and amendment fees to the maximum amount allowable under state law.  The Department does not agree with this recommendation for the reasons stated above, and as such it will not be implemented.

**Conclusion**:

The department has reviewed the redacted report and looks forward to reading the entire un-redacted report.  The audit process is important and can provide important information for forward looking departments like ours who are constantly looking to improve the quality of the services that we provide.  While the department has already begun implementing the recommendations contained within the draft report, we also hope that this response, will help our office make any necessary clarifications in the final un-redacted report.

Sincerely,

William D. Gore, Sheriff

WDG:km

# Comments

## CALIFORNIA STATE AUDITOR'S COMMENTS ON THE RESPONSE FROM THE SAN DIEGO COUNTY SHERIFF'S DEPARTMENT

To provide clarity and perspective, we are commenting on San Diego's response to the audit. The numbers below correspond to the numbers we have placed in the margin of its response.

San Diego incorrectly asserts that our report makes unsupported statements. The statement that San Diego highlights appears on page 2 which is within the Summary of our report. Our report clearly communicates on pages 13 through 16 the different policies or procedures that San Diego has established to implement its CCW program. The cases in which we found the department did not follow those policies or procedures are discussed on pages 29 through 32. Therefore, contrary to San Diego's assertion, there is ample context in our report describing the policies and procedures that the department failed to follow when issuing some of the licenses we reviewed. Additionally, Figure 1 on page 17 presents the number of exceptions to the department's policies we found across each of the four key criteria from state law.

① 

Our report makes clear that the conclusion San Diego inappropriately renewed some licenses is based on a comparison of license files we reviewed to the expectations described in San Diego's policies and procedures. For example, on page 16 we explain that San Diego requires at least two documents, such as a utility bill, lease agreement, or property tax statement, to demonstrate residence. However, as we indicate on page 29, we found the department repeatedly renewed one applicant's license without obtaining any documentation related to his residency. The full discussion of the results of our review of a selection of San Diego's issued licenses appears on pages 29 through 32 and clearly communicates that San Diego did not issue some licenses in accordance with its policies.

②

Our report text for Objective 2 on page 8 makes it clear that San Diego did not reliably track license amendments in its database. We do not imply that it failed to keep adequate records of amendments in the individual license files it maintains.

③

We report on page 49 San Diego's licensing manager's concern that raising the license fee too high could make obtaining a CCW license too expensive. However, San Diego's response misrepresents the assumption we make in our report regarding the number of applicants who would apply for a license. We also explain on page 49 that we applied the same assumptions about demand for

④

licenses in calculating our estimates of additional revenue in both Sacramento and San Diego. We included the assumption about demand to be clear about our methods for calculating the estimated revenue that could be generated from an increased fee. We do not ever conclude that demand would be unaffected if San Diego were to increase its fees. Finally, it is worth noting that state law does not require licensing authorities, such as San Diego, to charge any processing fees.

⑤    San Diego largely restates perspective and discussion that we have already included in our report. On page 32, we provide San Diego's licensing manager's explanation that the department did not revoke two licenses that had already been surrendered by the license holders because the department considered those licenses no longer active. As we explain on that page, state law does not speak to whether a license is inactive simply because the license holder is no longer in possession of the license. However, state law does clearly state that licensing authorities must revoke licenses when license holders become prohibited persons. Therefore, we recommend on page 39 that San Diego revoke licenses whenever license holders become prohibited persons. We also recommend that San Diego notify Justice when it suspends a license or a license is surrendered. In its response, San Diego indicates that it agrees with our recommendation.

⑥    San Diego is not correct when it states that it has not revoked or reported surrendered or suspended licenses. During our audit, we found that San Diego reported several of the surrendered or suspended licenses we reviewed to Justice, although it did not always consistently report surrenders as we note on page 33.

⑦    San Diego inaccurately describes its policy related to good moral character. On page 14, we explain that the department's procedures state the department does not issue CCW licenses to individuals who are under any form of probation or who have had numerous negative contacts with law enforcement. The procedures we refer to are in the department's CCW policy and procedure outline which specifically states, "The long-standing policy of this department is to approve applications unless the applicant…has had numerous negative law enforcement contacts or is on probation of any sort." Further, San Diego indicates that it believes we have misstated its policy with regard to good cause. Specifically, our report explains on page 15 that San Diego does not consider an applicant's stated desire to obtain a license for self-defense sufficient cause. In its response, San Diego does not dispute this is its policy. Therefore, we are unsure what San Diego believes we have misstated about its approach to assessing good cause.

It is unclear to us why San Diego expects us to define for it what good cause documentation it should collect. On page 31, we include the licensing manager's perspective that certain business-related documents are more essential to an applicant proving good cause than others. On that same page, we describe how San Diego at times has requested documentation that it later determined was not necessary for the issuance of a license. Based on our review, we conclude on pages 31 and 32 that San Diego could benefit from evaluating its current expectations for good cause documentation and setting standards for the types of documents that are sufficient to satisfy its requirements. Later in its response, San Diego agrees with our recommendation and indicated it had included examples of good cause documentation on its website.

⑧

San Diego asserts that the renewed license we discuss on page 29 was given for business purposes and that the related business was in operation at the time of the renewal in 2015. It is unclear to us how San Diego would have had this assurance at the time of the renewal in 2015. As we describe on page 29, San Diego renewed this applicant's license without collecting any documentation related to the applicant's good cause, which in this case was related to the applicant's business.

⑨

We explain in detail on page 31 our reasons for concluding that San Diego issued a license to a member of the Coast Guard without verifying that the individual had satisfied San Diego's training requirements. At no point during our discussions with San Diego about this application did the department present us with an analysis that showed it had assessed the applicant's training as exceeding its training requirements, as San Diego indicates in its response. On the contrary, as we explain on page 31, the department argued that the applicant was exempt from the training requirements because of a departmental memo exempting active peace officers. However, as we state on that same page, the applicant does not fall under the exceptions outlined in the department's memo.

⑩

We discuss the renewed license that San Diego refers to in its response on page 29 of our report. We reviewed the application file for the applicant's 2015 renewal and discussed our conclusion that the file lacked training documentation with the licensing manager months before sharing the draft audit report with San Diego for its comment. Despite this fact and again sharing our conclusions about this renewal with San Diego at our exit conference, it was not until its written response to our draft report that it indicated to us that it was in possession of training documents relevant to the 2015 renewal. After receiving San Diego's response, we contacted San Diego and it provided us a copy of the training documents. A supervisor in its licensing division informed us that the certificate

⑪

was in a separate part of the license file and was not attached with the rest of the documentation for the 2015 renewal. Based on this new information, we have modified our report text and Figure 1 to no longer identify this license renewal as an example where San Diego did not follow its policies for firearms training.

⑫   The perspective on state law that San Diego provides in its response is markedly different than the perspective the sheriff provided to us during our audit. San Diego's response states that the Legislature has failed to define good cause and that this failure has subjected licensing authorities to litigation. When we spoke with the sheriff to obtain his perspective on the discretion that the law provides to local licensing authorities, he did not express concern about this level of discretion. In fact, as we state on page 36, the sheriff observed that the needs of local jurisdictions vary and agreed that the law provides those jurisdictions the ability to set their CCW policies accordingly. Further, San Diego's own response displays some ambivalence about the clarity of the good cause requirement. On page 77 San Diego simultaneously claims the Legislature has failed to define parameters for good cause and also states that it believes local jurisdictions are in the best position to determine what is best for their communities when it comes to issuing CCW licenses.

⑬   As we explain in Comment 4, we have already included in our report San Diego's perspective on why it has not raised CCW fees. Our analysis, described on page 43, concludes that San Diego's CCW program likely operates at a deficit, a conclusion that San Diego appears to agree with in its response on page 74. If implemented, our recommendation to raise fees would align San Diego's CCW revenue with the allowable maximums under state law. As we describe in multiple places in our report, the allowable maximum fees are already subject to restrictions in state law that prohibit them from being any higher than actual costs or growth in the CCPI.

1

## **PROOF OF SERVICE**

2

3
     I hereby certify that on January 21, 2021, I electronically filed the foregoing document using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

4

5

s/ Gabrielle Bruckner\
Gabrielle Bruckner

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT