**TODD H. MASTER [SBN 185881]**
tmaster@hrmrlaw.com
**ROBERT J. GUNDERT [SBN 104486]**
rgundert@hrmrlaw.com
**HOWARD ROME MARTIN & RIDLEY LLP**
1900 O'Farrell Street, Suite 280
San Mateo, CA  94403
Telephone:     (650) 365-7715
Facsimile:      (650) 364-5297

Attorneys for Defendants
CITY OF MENLO PARK and DAVE BERTINI

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

MICHAEL ZELENY, an individual

                Plaintiff,

     vs.

EDMUND G. BROWN, JR., an individual, in his official capacity, et al.

                Defendants.

Case No. 17-cv-07357-RS (TSH)

**OPPOSITION OF DEFENDANTS CITY OF MENLO PARK AND DAVE BERTINI TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Date:  March 18, 2021**
**Time: 1:30 p.m.**
**Dept.:  Courtroom 3**
**Judge: Hon. Richard Seeborg**

**Trial Date: None**

**HOWARD ROME MARTIN & RIDLEY LLP**
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

# TABLE OF CONTENTS

**Page**

INTRODUCTION                                                                2

THE BASIC FACTS                                                            2

RATHER THAN "UNDISPUTED," PLAINTIFF'S PAPERS CONTAIN
A NUMBER OF INACCURATE ASSERTIONS OF FACT                  5

PLAINTIFF FAILS TO ADDRESS A NUMBER OF SIGNIFICANT
FACTS RELATING TO HIS AS-APPLIED CLAIMS                       9

BECAUSE THE STATE OWNS THE MEDIAN THAT PLAINTIFF
ASKED TO UTILIZE THE CITY HAD NO AUTHORITY TO GRANT
THE SPECIAL EVENT PERMIT HE SOUGHT                            10

DEFENDANT CITY HAD LIEGITIMATE, SIGNIFICANT TIME, PLACE
AND MANNER REASONS FOR DENYING PLAINTIFF A SPECIAL
EVENT PERMIT                                                               11

THE CITY'S FILM PERMIT ORDINANCE IS CONTENT-NEUTRAL AND
CONSTITUTIONALLY PROPER                                          12

OBJECTIONS TO DECLARATION OF MICHAEL ZELENY AND
RESPONSES TO CERTAIN INACCURATE STATEMENTS WITHIN THE
DECLARATION                                                              22

## **TABLE OF AUTHORITIES**

**Page**

*City of Littleton v. Z. J. Gifts D-4, L.L.C.,* 541 US 774, 781-784 (2004)    20

*Doe v. Madison School District No. 321*, 177 F.3d 789, 797-98 (9th Cir. 1999)    21

*Epona v. County of Ventura* 874 F.3d 1214, 1220, fn. 1    20

*Ginsberg v. New York*, 390 U.S. 629, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968)    8

*Hotel & Motel Ass'n of Oakland v. City of Oakland*,
344 F.3d 959, 971 (9th Cir. 2003)    20

*McCullen v. Coakley,* 573 U.S. 464, 480 (2014)    12, 13

*Southern California Roads Co. v. McGuire* (1934) 2 Cal. 2d 115    10

*Thomas v. Chicago Park District*, 534 U.S. 316    13, 14, 19, 20

*Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989)    12

*Statutes*
California Penal Code section 313.1    8
California Streets & Highways Code section 90    10
California Code of Civil Procedure Section 1094.8    20

**INTRODUCTION**

Plaintiff claims that undisputed facts support its motion. That claim is simply not true. As the following will show, a number of plaintiff's assertions are simply not correct not to mention disputed. Others fail to tell the entire story and are offered out of context. Most surprisingly, plaintiff ignores and fails to address some of the most significant issues in this case. Defendants endeavor herein to provide the Court with the facts, which will provide ample basis for denying plaintiff's motion.

**THE BASIC FACTS**

Although the Court is by now familiar with the background of this case, defendants would like to take a few paragraphs to simply provide a brief summary and some context for this dispute, as follows:

Michael Zeleny sought a Special Event Permit ("SEP") from the City of Menlo Park in order to stage a protest, using unloaded military grade weapons and ammunition readily at hand on the center median of busy Sand Hill Road in the City of Menlo Park. *See* Zeleny Declaration in Support of Plaintiff's Motion for Partial Summary Judgment (hereinafter "Zeleny Decl.") [Doc. 162-2.] at Pg. 8, Lines 17-18 and Exhibit 6 thereto. He wanted to occupy the median 24 hours a day, 7 days a week for an indefinite period of time. Id. He intended to park his pickup truck on the median, to sleep in it at night, and to hire an armed guard to protect his weapons from whomever. *See* Zeleny Depo [within Doc. 160-3] at 104:17-107:18 and Exhibit 2 to the deposition, attached to the Declaration of Todd H. Master in Support of Defendant City's and Bertini's Motion for Summary Judgment, etc. [Doc. 160-3.]

Plaintiff wanted to carry and display his firearms to everyone who passed by, supposedly in order to amplify his message, and also in order to show those from whom he had received death threats that he was prepared to defend himself. Zeleny Decl. [Doc. 162-2] at Pg. 5, Lines 4-24 and Zeleny Depo at Pg. 57, Ln. 7 to Page 58, Ln. 12 and Page 59, Ln. 20 to Page 61, Ln. 11. [Doc. 160-3] He has testified that he wanted to have the ammunition available in case he would need to

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE: (650) 365-7715

1    defend himself, presumably by engaging in a gun battle there on that busy stretch of median and

2    roadway.  Id.

3         As a part of his protest, plaintiff also wanted to set up a 55-inch television screen that would

4    display videos "featuring explicit representations of sexual violence." Zeleny Decl. [162-2] at Pg.

5    8, Lines 17-18 and Exhibits 1 and 6 thereto.  He provided a "sample image" of one such

6    representation.  It shows an animated depiction of a man engaging in sexual activity with a female

7    that was meant to represent the man's minor daughter.  Exhibit 1 to Zeleny Decl.  Plaintiff never

8    indicated what other explicit representations of sexual violence he intended to display.  He claims

9    the images are not obscene.  He also claims the City denied his permit because of the images, when

10   in fact the City denied plaintiff's SEP application on other grounds.  *See* Plaintiff's Memo of Points

11   & Authorities in Support of Motion for Partial Summary Judgment ("Plaintiff's MPA") [Doc. 162]

12   at Pg. 11, Ln. 10 to Page 12, Ln. 12; Zeleny Decl. [162-2.] at Pg. 9, Lines 6-7 and Exhibit 8 thereto

13   (i.e. Letter of September 12, 2016 from City Manager Alex McIntyre).

14        Plaintiff also intended to film the reactions of those who passed by and observed his

15   activities and accoutrements.  Zeleny Decl. [162-2] at Pg. 8, Lines 10-13.  It is not clear what

16   reactions, other than fear, he expected to see and film.  He has acknowledged that his firearms

17   (which included what appears to be a machine gun on a tripod) would be likely to elicit fear

18   amongst the motoring public.  Zeleny Depo at Pg. 58:13-59:19. [160-3]

19        Adding to the mix of this remarkable situation, plaintiff also stated that he wished to pass

20   out souvenirs to those traveling by, even though driving onto a median is prohibited by law and

21   unsafe, as is sudden stopping on a 40 mile per hour roadway unless controlled by some sort of legal

22   traffic device. Zeleny Depo at 141:21-142:7; Exhibit 9 (third paragraph of 5/27/16 email). [160-3]

23        Despite the fear and danger presented by his activities, plaintiff claims that the City had no

24   right to deny him a Special Event Permit.  He hangs his proverbial hat on the notion that even

25   though California has prohibited the open carry of unloaded firearms, there is an exception that

26   applies in his case.  Defendants disagree with his position in that regard but, regardless of how one

DEFENDANT CITY OF MENLO PARK'S AND DEFENDANT DAVE BERTINI'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS (TSH)

-3-

construes the exception, there was ample, valid cause for denying plaintiff the SEP he sought, since his proposed activities presented substantial, legitimate public safety and traffic issues and concerns, to put it mildly.

After his application for a Special Event Permit was denied, plaintiff sought a film permit from the City.  Zeleny Decl. [162-2] at Pg. 9, Lines 21-22.  Assistant City Attorney Nicolas Flegel tried to work with the plaintiff in order to process and approve the application, but plaintiff refused to respond to legitimate inquiries regarding the guns he planned to have with him, where they would be pointed and why he needed live ammunition for a film production project.  The purpose of these inquiries was to obtain information sufficient to evaluate the public safety and traffic issues presented by plaintiff's application.  Rather than responding to these inquiries and completing the process, plaintiff filed this lawsuit in December 2017.  Declaration of Nicolas A. Flegel in Support of Defendant City's and Bertini's Motion for Summary Judgment (hereinafter "Flegel January Decl.") [Doc. 160-2] at Pg. 4, Ln. 4 to Page 8, Ln. 20; See also Zeleny Decl. [162-2] at Pg. 9, Lines 23-24 and Exhibit 13 thereto.  He now falsely claims that the City has been delaying the processing of his application for a film permit for three years when in fact it is he who has refused to complete the process.

As part of its opposition to plaintiff's motion, defendant asks the court to consider its recently filed motion for summary judgment.  [Docs. 160 – 160-6.]  Defendants and no doubt the court, would rather not rehash all of the same points and authorities herein.  Defendants will make some of the same points herein but for the most part will address many of the inaccurate, false and/or out of context assertions and arguments found in plaintiff's motion.  In addition, defendants will point out that many of the most significant issues are either not addressed by plaintiff or are glossed over.

Finally, defendants will address in more detail the facial challenge issues, since that seems to be the primary thrust of plaintiff's motion.   Perhaps because he realizes that he is not likely to prevail on his as-applied claims, plaintiff does not spend very much time on them and, as

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

mentioned, simply fails to discuss or even mention some of the most important issues.

### RATHER THAN "UNDISPUTED," PLAINTIFF'S PAPERS CONTAIN A NUMBER OF INACCURATE ASSERTIONS OF FACT

There is a good deal of inaccuracy in plaintiff's motion.  The following will address and endeavor to correct the most significant misstatements in plaintiff's motion.

One of the claims that plaintiff makes in his papers is that his film application is still being processed.  He claims it has been in the process of being processed for three years.  See Plaintiff's MPA [Doc. 162] at Pg. 3, Lines 1-2.  He even claims that the City concedes this in its own motion for summary judgment, which is certainly not true.  Plaintiff's MPA [162] at Pg. 8, Lines 4-5.

As defendants' motion for summary judgment clearly states, it is plaintiff that has not completed the process.  See Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment, etc. ("Defendants' MPA") [Doc. 160] at Pg. 7, 25 to Page 9, 17 and Page 18, Ln. 24 to Page 19, Ln. 18 and Flegel January Decl. [160-2] at Pg. 4, Ln. 4 to Page 8, Ln. 20; Zeleny Decl. [162-2] at Pg. 9, Lines 23-24, Exhibit 13.  Plaintiff was asked repeatedly to answer certain questions and provide additional information about his guns, such as where they would be pointed and why he needed to use live ammunition in a film production project, but he refused to answer.  Instead of responding to such legitimate questions, he filed suit.  Id. and see plaintiff's Complaint [Doc. 1] filed December 28, 2017.  Accordingly, the failure to complete the film permit process is on plaintiff.  As Mr. Flegel stated in his declaration [Doc. 160-2] the City was inclined to give plaintiff a film permit but it first needed to be certain that issues of public safety and traffic control were sufficiently informed and addressed.  Flegel January Decl. [160-2] at Pg. 8, Lines 7-10.

Plaintiff also refers to delay in processing his SEP application. What he does not disclose, however, are the delays on his end.  Among those delays was the delay between the denial of his initial application on September 21, 2015 and the submission of his next application, seven months later, on April 14, 2016. See Declaration of Nicolas A. Flegel submitted with these opposition papers (rather than the declaration at 160-2) and Exhibit A thereto.  Plaintiff also does not mention

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

---

1   that there was at least a ten month delay that resulted from his emergency surgery followed by a

2   delay resulting from his wife giving birth.  Id. Of course, the City is not faulting plaintiff for either

3   of those delays, but it puts things in a much different perspective when one can see that there was

4   such a substantial delay attributable to plaintiff.

5          Another inaccurate claim made by plaintiff is that defendant Bertini and the City Attorney

6   improperly "intercepted" his special event permit application and that each of them participated in

7   denying it.  Plaintiff correctly points out that the typical first step in the special event permit

8   application process was to forward the application to the Special Events Committee (comprised of

9   representatives of various City departments, including the Police Department).  Plaintiff claims that

10   in this case Bertini and the City Attorney acted as interlopers to take charge of the situation for the

11   purpose of denying the application.  But the testimony has been that Matt Milde, the City of Menlo

12   Park Recreation Coordinator at the time, felt that this very unusual application raised significant

13   legal and safety issues.  He forwarded the application to his supervisor, Cherise Brandell, because

14   he believed it should be reviewed by City leadership.  *See* Milde Depo (attached to the Declaration

15   of Todd H. Master in Opposition to Plaintiff's Motion)[1] at Pg. 144, Ln. 3 to Pg. 150, Ln. 14.  This

16   was an unusual application (an "outlier" as Mr. Milde put it) and the fact that guns were involved,

17   along with a request to conduct an event on the Sand Hill Road median, presented safety issues that

18   caused him to forward the application up the chain of command for leadership review.  He would

19   have wanted to get the input from the Police Department, as the subject matter expert, on the

20   firearms issue in any event. Id.  In fact, his testimony indicates that he does not know much about

21   California firearms laws. Milde Depo in Opposition at Pg. 214, Ln. 7 to Pg. 215, Ln. 9.   Rather

22   than indicating something nefarious was afoot, Mr. Milde's testimony shows that he was being

23   practical and prudent by forwarding the application to his boss.  The Police Department and the

24   City Attorney each undoubtedly would have gotten involved at some point, given the legal issues

26   [1] Not to be confused with the excerpts of Mr. Milde's deposition attached to the Declaration of Todd H. Master in
    Support of Defendants' Motion for Summary Judgment. [Doc. 160-3]

DEFENDANT CITY OF MENLO PARK'S AND DEFENDANT DAVE BERTINI'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS (TSH)

-6-

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

1   involved.  It would have been surprising, and irresponsible, if they did not.

2       Zeleny also makes much out of the notion that Sgt. Matt Ortega was the usual Police

3   Department representative that would weigh in on SEP applications for the Department.  Matt

4   Milde testified, however, that he does not know if Sgt. Ortega was always the one who represented

5   the Police Department.  Milde Depo at Pg. 101, Lns. 2-13.  In addition, this was not a normal

6   application.  Milde had never seen an application like this one.  Milde Depo at Pg. 150, Lns. 3-8.

7   The usual input from the Police Department would most likely relate to traffic control and possibly

8   crowd control.  This one presented legal issues involving the open carry prohibition.  Moreover,

9   there is nothing in the First Amendment that gives plaintiff the right to have Sgt. Matt Ortega

10  review his application.  Plaintiff has also not submitted any proof that Sgt. Ortega would have done

11  or said anything to effect a different outcome.

12      The other claim that plaintiff has made is that defendant Bertini denied his application.

13  Defendant Bertini has submitted a declaration that states he was not a decision maker but simply

14  provided input to the decision makers. Bertini Decl. [Doc. 160-1] at Pg. 3, Ln. 18 to Pg. 4, Ln. 2.

15  Moreover, plaintiff acknowledges that the Police Department would normally get involved in the

16  SEP application review process.  Plaintiff's MPA [162] at Pg. 8, Lines 8-11.

17      This brings us to another misleading claim made by plaintiff.  Plaintiff contends that the

18  City denied his SEP application because it considered the sexually explicit image he was planning

19  to display to be obscene.  He contends that this provides evidence of content discrimination.  There

20  are a number of false premises within that claim.

21      To begin with, the City did not deny plaintiff's SEP application on obscenity grounds.  The

22  decision issued by the City Manager after the de novo hearing on plaintiff's application sets out

23  each of the grounds for denying the permit.  Zeleny Decl. at Pg. 9, Lines 6-7, Exhibit 8 (September

24  12, 2016 letter/decision from City Manager).

25      When the City Council heard plaintiff's appeal, it upheld the City Manager's denial on the

26  same grounds as the City Manager.  See video at https://spaces.hightail.com/space/dSShowqqgY

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE: (650) 365-7715

DEFENDANT CITY OF MENLO PARK'S AND DEFENDANT DAVE BERTINI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS (TSH)

-7-

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

and the unofficial transcript attached to Doc. 160-3 as Exhibit F [found within the batch of exhibits that is Doc. 160-6] at Pg. 42, Ln. 10 to Pg. 44, Ln. 19.

Plaintiff bases his claim in part on the fact that defendant Bertini provided to the City Manager and the City Council for consideration a copy of the image that plaintiff had presented with his application.  Plaintiff contends that this submission was improper, even though he himself had placed the image at issue by submitting it with his application.  Zeleny Decl. at Pg. 8, Lns. 17-18, Exhibit 6 and Exhibit 1.

Plaintiff also claims that the testimony by Bertini that displaying the exhibit could result in a complaint and a possible prosecution under California Penal Code Section 313.1 infringed his rights, even though the City denied plaintiff's permit application on other grounds.  As pointed out in defendants' motion for summary judgment, the determination of whether a given explicit representation of sexual violence (in this case the rape of a teenage daughter) would qualify as "harmful matter" when displayed to a minor is a judgment call and not easy to answer, particularly as it depends on community standards.  See Penal Code Sections 313 (definition of "harmful matter") and 313.1.  Moreover, the Supreme Court has long recognized that images that may not be seen as obscene for adults can be as to a minor.  *See Ginsberg v. New York*, 390 U.S. 629, 88 S. Ct. 1274, 20 L. Ed. 2d 195 (1968).  Such testimony by defendant Bertini was fair and reasonable and, as the defendants' motion asserts, he is entitled to qualified immunity in that regard.

Just as importantly, the argument that a constitutional violation resulted from the mere *consideration* of the image that plaintiff provided with his application makes no sense.  There are images that cross the line and a public entity is entitled to consider and evaluate whether that is the case when one applies for a permit.  Furthermore, it bears noting that plaintiff never has shown all of his cards when it comes to the imagery he planned to display.  His e-mail and initial application referred to the image as merely a "sample" of what he planned to show.  Exhibit 6 to Zeleny Decl. [162-2].

So far, we have discussed a number of inaccurate claims made by plaintiff in his motion.

DEFENDANT CITY OF MENLO PARK'S AND DEFENDANT DAVE BERTINI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS (TSH)

-8-

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

Plaintiff's papers are also inaccurate by omission.  One thing that plaintiff does not address is the fact that the median where he sought to conduct his protest is State property, such that the City has no authority to issue him a permit for that location.  Defendants' MPA [160] at Pg. 9, Ln. 19 to Page 10, Ln. 19. Nothing is said in plaintiff's motion about that fact, even though he appears to be claiming that the Special Event Permit application issue is still ripe and that he remains entitled to such a permit.  As stated in defendants' motion, the issue of whether the City improperly denied him a permit to protest on the median is moot, as is any request for an injunction to force the City to issue such a permit now.  Defendants' MPA [160] at Pg. 9, Ln. 19 to Page 10, Ln. 19.

Plaintiff claims improperly that the foregoing inaccurate assertions are undisputed facts. What is undisputed, are certain facts that plaintiff's motion does not even address, as discussed in the next section.

## PLAINTIFF FAILS TO ADRESS A NUMBER OF SIGNIFICANT FACTS RELATING TO HIS AS-APPLIED CLAIMS

The vast majority of plaintiff's memorandum of points and authorities is devoted to his claim that the City of Menlo Park's special event and film permitting processes are facially unconstitutional.  He spends very few pages arguing the as-applied claims.  Even when he does discuss those claims plaintiff ignores the most significant issues.

With regard to his claim that the City improperly denied his special event permit application, plaintiff fails to address the following significant issues and facts:

    a.  The State's ownership of the median and the corresponding inability of the City to issue a permit for that location;

    b.  Various valid time, place and manner concerns that resulted in denial of plaintiff's special event permit application initially and on appeal, including:

        1.  Public Safety Issues;

        2.  Traffic Control Issues;

        3.  Plaintiff's plan to occupy the site on a 24/7 basis for an indefinite period of time;

4.   Vehicle Code issues; and

c.   The effect of defendant Bertini's retirement on plaintiff's request for an injunction to be issued against him (which, in fairness, he may not have known about when he filed his motion).

With regard to his claim that the City improperly denied his film permit application, plaintiff fails to address the fact that he refused to answer questions and provide information regarding his firearms and ammunition, although Exhibit 13 to this declaration is comprised of his e-mail communications with the City that shows this.

Defendants address the foregoing issues in their own motion for summary judgment. They are briefly discussed herein without needless repetition.

Finally, defendants address plaintiff's claims that the City's Special Event Permit and film permit processes are facially unconstitutional.

## BECAUSE THE STATE OWNS THE MEDIAN THAT PLAINTIFF ASKED TO UTILIZE THE CITY HAD NO AUTHORITY TO GRANT THE SPECIAL EVENT PERMIT HE SOUGHT

As stated in defendants' motion for summary judgment, at the time that plaintiff applied for a Special Event Permit ("SEP") in order to stage a protest on the center median of Sand Hill Road the City was not aware that the median was owned and controlled by the State of California. The median was within City limits and it was apparently assumed that the City had the authority to grant a permit for the median. Subsequently, however, it was discovered that the State owns and controls the median and that the City has no authority or jurisdiction to grant a permit to plaintiff or anyone else to conduct activities there. Flegel January Decl. [160-2] at Pg. 2, Ln. 13 to Pg. 4, Ln. 3.

Defendants' motion cites to California Streets & Highways Code § 90 and *Southern California Roads Co. v. McGuire* (1934) 2 Cal. 2d 115 for the proposition that the City has no authority over the State's median. That premise is bolstered by the legal opinion of Nicolas A. Flegel, Esq. (Flegel January Declaration [160-2] at Pg. 2, Ln. 13 to Pg. 4, Ln. 3).

Plaintiff was given notice of this fact during discovery in this case (Master Decl. [160-3] at Pg. 4, Ln. 23 to Pg. 5, Ln. 1) yet he has chosen to ignore it. He continues to claim that his SEP

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

application was improperly denied, even though the City could not have issued it in the first place. By failing to address the issue, plaintiff appears to have conceded it.

### DEFENDANT CITY HAD LEGITIMATE, SIGNIFICANT TIME, PLACE AND MANNER REASONS FOR DENYING PLAINTIFF A SPECIAL EVENT PERMIT

Similarly, plaintiff fails to address the real reasons the City denied his SEP application, preferring instead to assert there was some other basis for denial, even though the evidence shows otherwise.

The City Manager conducted a de novo appeal hearing regarding the denial of plaintiff's SEP application. As previously stated, a written decision following that hearing was issued on September 12, 2016. That decision set forth the bases of the City Manager's determination that plaintiff's application should be denied. The City Council heard plaintiff's further appeal thereafter and upheld the City Manager's decision.

As the video and the informal transcript from the City Council hearing shows, the one thing the Council focused on, by far, was the concern that plaintiff's openly carrying dangerous looking weapons on the median of Sand Hill Road would be likely to frighten motorists and other members of the public and present serious public safety and traffic issues.

Councilmember Carlton stated on the record that she is no stranger to guns, having grown up with them and engaged in shooting competitions. She remarked that when she had seen plaintiff standing on the corner with his guns in the past she found it to be "terrifying." Master Decl. [160-3] at Exhibit F [160-6)] at Pg. 17, Ln. 21 to Pg. 18, Ln. 10. Plaintiff has even acknowledged in his deposition that people would likely become afraid upon seeing him openly carry his guns there on the center median. Master Decl. [160-3] at Zeleny Depo [160-3] at Pg. 58, Ln. 13 to Pg. 59, 19. Yet plaintiff completely ignores this issue in his motion, while claiming that he was always open to valid time, place and manner suggestions with regard to his protest. The City's suggestion was basically that he not protest with military grade firearms on the center median of Sand Hill Road.

Other than the fact that the City could not have granted plaintiff a permit in the first place,

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

the City's valid time, place and manner concerns about what plaintiff wanted to do with guns and ammunition on the median is the biggest issue with regard to his as-applied SEP denial claim.  Yet, he fails to even address it, which speaks volumes.

### THE CITY'S FILM PERMIT ORDINANCE IS CONTENT-NEUTRAL AND CONSTITUTIONALLY PROPER

The process by which film permits are issued and regulated is found in Chapter 13.18 of the Menlo Park Municipal Code. Flegel January Depo [160-2] at Pg. 8, Lns. 21-22, Exhibit R.  Chapter 13.18 is titled "Use of Public Rights-of-Way."  Its provisions govern the issuance of encroachment permits and the activities thereunder.  Section 13.18.020 states that an encroachment permit must be obtained in any case in which one wishes to "perform any work, construct any facility, make any excavation or fill any excavation, store materials and/or vehicles in or upon any real property in which the City has an interest . . ."  Accordingly, when a film production project involves operations within a public right-of-way Chapter 13.18 applies.

Chapter 13.18 is a content-neutral regulation of activity proposed to be undertaken within public rights-of-way.  Its provisions express no preference whatsoever about speech content. In fact, expressive activity is not referenced in any manner within the chapter. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).  In order to determine if a regulation/ordinance is content neutral, "the question . . . is whether the law is 'justified without reference to the content of the regulated speech.' [Citations omitted.]" *McCullen v. Coakley,* 573 U.S. 464, 480 (2014).  In this case, the City's ordinance, on its face, does not regulate speech at all.  Chapter 13.18's provisions are primarily geared toward regulating construction-related activities.  Chapter 13.18 has zero effect on expression.  It is clearly content neutral.

The City does utilize Chapter 13.18 for film production projects to the extent they encroach upon a public right-of-way.  The focus of the chapter is on administration and logistics, with an eye on public safety, protecting property and traffic control.  See Section 13.18.110(c), for example.  A

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

governmental entity has a legitimate interest in "ensuring public safety and order, promoting the free flow of traffic on streets and sidewalks [and] protecting property rights. . ." *McCullen, supra,* at pg. 486.

In various respects, Chapter 13.18 is similar to the ordinance discussed in *Thomas v. Chicago Park District*, 534 U.S. 316. In *Thomas* the Supreme Court reviewed and approved a content-neutral ordinance, the object and purpose of which was "not to exclude communication of a particular content, but to coordinate multiple uses of limited space, to assure preservation of the park facilities, to prevent uses that are dangerous, unlawful, or impermissible under the Park District's rules, and to assure financial accountability for damage caused by the event." Id. at p. 322. In Footnote 1 of the *Thomas* decision the Court set forth portions of the Chicago Park District ordinance that provided a basis for denying a permit application. An examination of the provisions of Chapter 13.18 show that they are at least as benign constitutionally as those in *Thomas,* if not moreso. An examination of Chapter 13.18 follows.

Section 13.18.010 contains the definitions of various terms found within the chapter. Definitions pertinent to this matter are shown below:

➢ "Encroachment" includes any going over, upon, under or using any public right-of-way in such manner as to prevent, obstruct or interfere with its normal use;

➢ "Facility" means . . . any . . . material, structure or object of any kind or character, whether enumerated herein or not, which is or may be lawfully constructed, left, placed or maintained in, upon, along, across, under or over any public right-of-way;

➢ "Permittee" means any person or entity that proposes to do work or encroach upon a public right-of-way and has been issued a permit for such encroachment;

➢ "Public right-of-way" means all or part of the surface, the air space above the surface, and the area below the surface of the public streets, roads, sidewalks, lanes, courts, ways, alleys, boulevards, and places, including, without limitation, all public utility easements and public service easements as the same now or may thereafter exist that are under the jurisdiction of

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

the City;

In this case, plaintiff sought to place his "facilities" (i.e. his cameras, firearms and displays) on public sidewalks while filming.

Section 13.18.030 describes what must be included in an application for an encroachment permit.  It requires the applicant's name, address, telephone number and business information relating to the owner or contractor on whose behalf an applicant is applying.

Section 13.18.030 also requires the applicant to describe the work, specify the location where the work is to be done, and indicate the approximate time required to complete the work. It also states that the Director of Public Works may require "a map, plat, sketch, diagram, or similar exhibit of a size and in such a quantity as prescribed by the Director of Public Works, on which shall be plainly shown any and all information necessary to locate, delineate, illustrate, or identify the proposed use or encroachment and the right of the applicant to so use or encroach thereon."

None of the information called for by Section 13.18.030 is constitutionally inappropriate.  It is the sort of basic, administrative, common sense information one would expect to provide when seeking to perform work on public property.

Continuing with the analysis of Chapter 13.18, Section 13.18.050 states that an encroachment permit "shall not be in effect until the applicant has obtained all licenses and other permits required by law and paid the required permit fees."  Section 13.18.100 contains an indemnity provision and Section 13.18.130 contains an insurance requirement.  These provisions are similar to those found in footnote 1 of the *Thomas* decision, where the Court listed relevant portions of the Chicago ordinance.  Among those listed were the following bases for denial of a permit application, which the Court approved:

*(2) the applicant has not tendered the required application fee with the application or has not tendered the required user fee, indemnification agreement, insurance certificate, or security deposit within the times prescribed by the General Superintendent;*

. . .

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

*(10) the applicant has not complied or cannot comply with applicable licensure requirements, ordinances or regulations of the Park District concerning the sale or offering for sale of any goods or services;*

. . .

There is nothing in plaintiff's papers that challenges the City's requirement that he obtain insurance or accept the indemnification obligation.  Accordingly, such requirements appear to be non-issues in this case.

Section 13.18.080 requires permittees who damage "City street pavements, existing utilities, curbs, gutters, sidewalks or . . . any private property or improvements" to "repair, replace and restore in kind any such damaged improvements at its sole expense and with the approval of City" and require that "[a]ny and all site restoration and clean-up shall be done by a licensed and insured contractor."  The Chicago ordinance quoted by the Court also indicated that permittees who damaged City property would be required to pay for such (which is only fair) since one of the subparts of the ordinance counted as a ground for denial that "*(5) the applicant or the person on whose behalf the application for permit was made has on prior occasions damaged Park District property and has not paid in full for such damage, or has other outstanding and unpaid debts to the Park District.*"

Many of the other provisions within Chapter 13.18 are administrative and/or applicable to construction work.

Section 13.18.070 indicates that a permit will expire "if work is not commenced within ninety (90) days after the date of application" although it also indicates that a permittee may seek to extend or renew a permit, "provided no changes have been made from the original conditions for issuance of the original permit."  These administrative provisions are simple, straightforward and provide no burden on expression.

Section 13.18.120 relates to excavation work, sidewalk, curb, gutter and driveway work, which are not applicable here.  It applies to construction work within the public right-of-way, as do

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE: (650) 365-7715

Sections 13.18.140 ("Deposit or bond") and 13.18.150 ("Removal and relocation" of facilities constructed "when made necessary by any lawful change ingrade, alignment, or width of any street, including, the construction, maintenance, or operation of any other City underground or above-ground facilities"). These provisions set forth practical requirements that impose no improper burden upon expressive activities.

The primary regulatory section within Chapter 13.18 is Section 13.18.110 (titled "Regulations"). Section 13.18 reads in full as follows:

(a)    The construction, operation, maintenance and repair of facilities in the public rights-of-way shall be performed in compliance with all laws and practices affecting such facilities. This shall include, but not be limited to applicable City standards, including safety precautions (warning signs, barricades, lights) and all applicable zoning and safety codes, construction standards, noise regulations, regulations for providing notice to persons that may be affected by such facilities construction, and such directives or additional conditions placed on the encroachment permit by the Director of Public Works governing the time, place and manner in which facilities may be installed in the public rights-of-way, including but not limited to, the following:

(1)    Time. Standard hours of construction activities are weekdays between the hours of 8:00 a.m. and 6:00 p.m. Hours of construction may be restricted to greater than or less than the standard hours of construction, as determined by the Director of Public Works.

(2)    Materials. Above-ground facilities may be limited to a graffiti-resistant finish material that is easy to clean and is of a neutral color, as determined by the Director of Public Works. Permittees may be required to clean graffiti at their own cost and provide a hotline for the City residents to report graffiti.

(3)    Identification Markers. Debris boxes/storage containers may be required to have reflectors so that they can be seen at night. Identification markers may be limited by color and size, for example the Director of Public Works may prohibit orange decals and may

DEFENDANT CITY OF MENLO PARK'S AND DEFENDANT DAVE BERTINI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS (TSH)

-16-

limit decals to one inch (1") or less in size.

(4)   Landscaping and Location. Permittee may be required to install landscaping to screen any above-ground facilities and to work with the City or adjacent property owners to resolve any concerns about placement and appearance of above-ground facilities. Permittee will be required to maintain landscaping in neat and orderly condition at all times.

(b)   Any person engaged in the construction, operation, maintenance or repair of facilities in the public rights-of-way shall exercise reasonable care in the performance of all of its activities and shall use commonly accepted methods and devices for preventing failures and accidents that are likely to cause damage, injury, or nuisance to the public or to property.

(c)   A person with facilities in the public right-of-way shall, by a time specified by the Director of Public Works, temporarily disconnect, relocate, or remove when required by the City in exercise of its governmental or proprietary powers by reason of traffic conditions, public safety, public rights-of-way construction and repair, or any other purpose where the work involved would be aided by the removal and relocation of the facilities in the public right-of-way. Collectively, such matters are referred to below as the "public project."

(1)   The Director of Public Works, as applicable, shall provide written notice describing where the public project is to be performed at least one (1) week prior to the deadline by which a person must protect, support, or temporarily disconnect, remove or relocate its facilities in the public right-of-way.

(2)   In an emergency, or where a person's facility in the right-of-way creates or contributes to an imminent danger to health, safety, or property, the City may protect, support, or temporarily disconnect, remove or relocate any and all parts of the person's facility without prior notice and that person shall be responsible to pay the City for the costs incurred.

The first thing to note about this section is that certain provisions are very similar to those found in the Chicago Park District ordinance, as quoted in Footnote 1 of *Thomas*.

Subpart (a) states that "The construction, operation, maintenance and repair of facilities in

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE: (650) 365-7715

the public rights-of-way shall be performed in compliance with all laws and practices affecting such facilities. This shall include, but not be limited to applicable City standards, including safety precautions (warning signs, barricades, lights) and all applicable zoning and safety codes, construction standards, noise regulations, regulations for providing notice to persons that may be affected by such facilities construction, and such directives or additional conditions placed on the encroachment permit by the Director of Public Works governing the time, place and manner in which facilities may be installed in the public rights-of-way . . ."

Subpart (a) is similar to subparts (10) and (11) from the Chicago ordinance, which indicated that a permit application would be denied if "(10) the applicant has not complied or cannot comply with applicable licensure requirements, ordinances or regulations of the Park District concerning the sale or offering for sale of any goods or services; (11) the use or activity intended by the applicant is prohibited by law, by this Code and ordinances of the Park District, or by the regulations of the General Superintendent . . . ."

The second thing to note is that where there are special requirements (i.e. directives and additional conditions) from the Director of Public Works, they are "placed on the encroachment permit."  Thus, applicants will not only have such standards, codes, regulations and practices that they can refer to as they apply for a permit and proceed through the process, but, if there are additional directives or conditions they will be shown on the permit itself. These provisions not only satisfy the requirement for definite, objective standards they also provide specificity in terms of what is required so that, if an applicant wishes to address any issues and/or mount a challenge on First Amendment grounds, the applicant will have what is needed to do so.

As for subparts (a)(1)-(4) to Section 13.18.110, again these relate to some of the conditions that the Director of Public Works may place on an encroachment permit.

Next, Section 13.18.110(b) requires that a permittee "exercise reasonable care in the performance of all of its activities and shall use commonly accepted methods and devices for preventing failures and accidents that are likely to cause damage, injury, or nuisance to the public

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

or to property."  This is certainly a reasonable requirement.  It is also similar to subpart (9) of the Chicago ordinance, which states that a permit application may be denied if "the use or activity intended by the applicant would present an unreasonable danger to the health or safety of the applicant, or other users of the park, of Park District Employees or of the public."

Subpart (c) states that the Director of Public Works may require a permittee to temporarily disconnect, relocate, or remove facilities when required by reason of traffic conditions, public safety, public rights-of-way construction and repair, or any other purpose where the work involved would be aided by the removal and relocation of the facilities in the public right-of-way. This provision implies that a permit has been issued but that there may be some need (such as an emergency, as indicated in Subpart (c)(2)) to temporarily disconnect, relocate or remove facilities. Note that except in case of emergency, the Director of Public Works provides at least one week's notice before the temporary disconnection, relocation or removal is required.

Subpart (8) from the Chicago ordinance, as quoted in Footnote 1 of *Thomas*, is somewhat similar except that it pertains to a ground of denial whereas Section 13.18.110(c) applies after a permit has been issued.  The Chicago ordinance indicates that a permit may be denied when "the proposed use or activity is prohibited by or inconsistent with the classifications and uses of the park or part thereof designated pursuant to this chapter, Section C.1., above."

In short, none of the provisions within Chapter 13.18 vests "unbridled discretion" in the City with regard to the approval or denial of an encroachment/film permit.  These provisions are content neutral, not even intended to regulate speech, and they certainly do not substantially restrict expression.  That being the case, it is submitted that the provisions of Chapter 13.18 of the Menlo Park Municipal Code are constitutionally valid.

Plaintiff argues that the two page handout titled "Film Production in Menlo Park" provides procedures relative to the film permits.  A copy of that document can be found attached to the Declaration of Nicolas A. Flegel [Doc. 160-2] as part of Exhibit E (i.e. at Page 96 of 146 of Doc. 160-2).  But that document is also benign, particularly when viewed in the larger context of the

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE: (650) 365-7715

City's film ordinance and the provisions deemed acceptable by the *Thomas* court.

Finally, plaintiff has argued that the City's film permitting process does not include time limits for review and approval or denial of applications.  The City's ordinance, being so clearly content neutral should not be deemed deficient in that respect.  Moreover, there is a 60-day standard indicated within the ordinance, in Section 13.18.040, which applies to "state video franchisees."  Although that subpart applies specifically to such franchisees, it may be reasonably inferred that the same standard applies in all cases.

Finally, it should be noted that in the event an applicant contends that the City has infringed First Amendment rights by denying an encroachment/film permit, California Code of Civil Procedure § 1094.8 provides for expedited review in such cases.  *As in City of Littleton v. Z. J. Gifts D-4, L.L.C.,* 541 US 774, 781-784 (2004) the availability of such relief satisfies constitutional requirements for expeditious review of such cases.

Plaintiffs seek injunctive and declaratory relief.  As argued above, the City's film permitting scheme is constitutional and does not burden or infringe upon expressive activity.  If the Court were to find that some aspect of the City's permitting ordinance or process is not appropriate there is a severability provision within the ordinance. In addition, the remedy would not be to invalidate the entire ordinance and process but to issue only that relief that is necessary in order to proscribe unconstitutional conduct.  *See Epona v. County of Ventura* 874 F.3d 1214, 1220, fn. 1.

## THE CITY'S SPECIAL EVENT PERMIT PROCESS IS ALSO PROPER

Plaintiff contends that the City's SEP process is vague and lacks definite standards.  See Second Amended Complaint [Doc. 99] at Pg. 37, Lns. 3-7.  When a vagueness challenge is raised, the court should first determine if the challenged process reaches a substantial amount of constitutional activity. If it does not, the court should uphold the challenge "only if the enactment is impermissibly vague in all of its applications." *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 971 (9th Cir. 2003).

The City's SEP process does not substantially reach or regulate constitutional activity.

DEFENDANT CITY OF MENLO PARK'S AND DEFENDANT DAVE BERTINI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS (TSH)

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

Permits have typically been issued for events such as fun runs/walks, block parties, car shows, concerts, movie nights and large birthday parties. Flegel Decl. [160-2] at 9:5-8. The City's website, FAQ document and Notice to Special Event Permit Applicants all describe special events as playing "an important role in building community and creating vibrancy within the City."  Exhs. C, E & G to Bertini Decl. [160-1]  The SEP application (Exh. D to Bertini Decl.) is focused on logistics, safety, compliance with the Noise Ordinance and similar considerations. The SEP FAQs (Exh. E to Bertini Decl.) address the question of "What would cause a permit to get denied?" The factors listed involve "size (number of people), scale, location, route to be closed, community impact, impact on City services, past practices/experiences with issued permits, intended use, non-payment of fees, poor articulation of event as reflected in the application and site map, etc." It is apparent from these documents that describe the City's SEP policy (Bertini Depo at 63:23-66:2) that the SEP process was designed for community-related activities of a social and/or recreational nature. Consistent with that, plaintiff was told repeatedly that the SEP process did not apply to his proposed protest and that he did not need a permit to protest. See, for example, the video and/or transcript from the City Council hearing on plaintiff's appeal.  See Exhibit F [160-6] to Master Decl. [160-3] (Transcript at Pg. 23, Ln. 18 to Pg. 25, Ln. 4, Pg. 34, Ln. 4 to Pg. 35, Ln. 10, Pg. 39, Ln. 19 to Pg. 40, Ln. 21 and Pg. 41, Ln. 4 to Pg. 42, Ln. 8.  See also Zeleny Depo [Exhibit A— Doc. 160-3] to Master Decl. [160-3] at Pg. 163, Ln. 13 to Pg. 164, Ln. 7 (found at Pg. 33 of Doc. 160-3).

Given the foregoing, plaintiff must show that the City's permit issuing process "is impermissibly vague in all of its applications." But that is not the case. These very same documents show that the SEP process validly regulates the types of activities for which it was designed.

In addition, Zeleny's facial challenge to the City's SEP process "does not present a live controversy for adjudication." *Doe v. Madison School District No. 321*, 177 F.3d 789, 797-98 (9th Cir. 1999). He sought a special event permit that the City had no authority to grant and there is nothing in his Complaint that states he intends to seek another SEP. Accordingly, the issues

HOWARD ROME MARTIN & RIDLEY LLP
1990 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

regarding the City's SEP process are academic at best.

**OBJECTIONS TO DECLARATION OF MICHAEL ZELENY AND RESPONSES TO CERTAIN INACCURATE STATEMENTS WITHIN THE DECLARATION**

Defendants object, on the grounds stated, to the following portions of the Declaration of Michael Zeleny in Support of Plaintiff's Motion, etc.

Paragraph 12, Page 4, Lines 5-6:  The witness expresses a legal opinion (i.e. "wrongfully prosecuted") without laying a proper foundation for the opinion.

Paragraph 13, Page 4, Lines 8-11:  The witness' claim concerning Dave Bertini lacks foundation.  Defendant Bertini has retired and is no longer employed by the City of Menlo Park. Bertini Decl. [160-1] at Pg. 2. Lns. 3-6.

Paragraph 14, Page 4, Lines 13-15:  The witness' legal conclusion about "non-obscene" imagery lacks foundation.

Paragraph 20, Page 6, Lines 4-6:  The witness' testimony regarding out-of-court communications with unnamed police officers are hearsay.

Paragraph 21, Page 6, Lines 9-11:  The witness' testimony as to whether unspecified requests by police officers were "constitutionally valid" is a legal opinion without foundation. Paragraph 21, Page 6, Lines 11-13:  The witness' vague representations regarding communications with unnamed police officers is hearsay.

Paragraph 22, Page 6, Lines 14-18:  The witness' generalized testimony regarding comments purportedly made by Officer Ron Prickett are hearsay and his opinion that such communications constituted an "impermissible, content-based restriction on [his] right to free speech" is a legal opinion without foundation.

Paragraph 23, Page 6, Lines 20-22:  The witness' claim that the City placed certain restrictions on his protests is vague, unclear, lacks foundation and hearsay.

Paragraph 25, Page 6 Ln. 28 to Page 7, Ln. 1:  The witness' testimony regarding "the officer who referred the matter for criminal charges" lacks foundation, particularly as there is no indication that the witness has personal knowledge regarding such an alleged referral or the identity

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

of any person who allegedly referred the matter for criminal charges.

Exhibit 2 to Plaintiff's Declaration (in its entirety):  The entire transcript contains hearsay and is unreliable, particularly as there are references to unidentified speakers, unintelligible communications and even interpretations of what may have been said (i.e. items in brackets).  A proper foundation regarding the preparation of the transcript has not been laid and the evidence is also not material to the present proceeding.

Paragraph 41, Page 9, Lines 10-13:  Plaintiff's characterization of defendant Bertini's testimony lacks foundation, constitutes hearsay, and is contrary to the evidence, which is best provided through the recording of the hearing.

Paragraph 46, Page 10, Lines 1-3:  There is no foundation for plaintiff's belief that NEA is somehow responsible for the denial of his permit applications.  Such testimony is also speculation, and the references to "past practices of using the legal system, law enforcement, and political influence to silence me and other critics" is vague, lacks foundation, and improper opinion.

DATED:  February 4, 2021          HOWARD ROME MARTIN & RIDLEY LLP


                                  By:  /s/ Robert J. Gundert
                                       Todd H. Master
                                       Robert J. Gundert
                                       Attorneys for Defendants
                                       CITY OF MENLO PARK and
                                       DAVE BERTINI

DEFENDANT CITY OF MENLO PARK'S AND DEFENDANT DAVE BERTINI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS (TSH)

-23-

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE: (650) 365-7715