TODD H. MASTER [SBN 185881]
tmaster@hrmrlaw.com
ROBERT J. GUNDERT [SBN 104486]
rgundert@hrmrlaw.com
HOWARD ROME MARTIN & RIDLEY LLP
1900 O'Farrell Street, Suite 280
San Mateo, CA  94403
Telephone:   (650) 365-7715
Facsimile:   (650) 364-5297

Attorneys for Defendants
CITY OF MENLO PARK and DAVE BERTINI

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| MICHAEL ZELENY, an individual<br><br>Plaintiff,<br><br>vs.<br><br>EDMUND G. BROWN, JR., an individual, in his official capacity, et al.<br><br>Defendants. | Case No. 17-cv-07357-RS (TSH)<br><br>**DECLARATION OF TODD H. MASTER IN OPPOSITION TO PLAINTIFF MICHAEL ZELENY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  March 18, 2021<br>Time:  1:30 p.m.<br>Dept.:  Courtroom 3<br>Judge: Hon. Richard Seeborg<br><br>**Trial Date: None** |

I , TODD H. MASTER, declare:

1. I am an attorney at law licensed to practice before this Court, and a principal in the law firm Howard, Rome, Martin & Ridley LLP, counsel of record for defendants City of Menlo Park and Dave Bertini, herein. I am a competent adult, with personal knowledge of the matters

---

DECLARATION OF TODD H. MASTER IN OPPOSITION TO PLAINTIFF'S MOTION FOR  PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS (TSH)      1

set forth in this declaration. If called as a witness, I could and would competently testify to such matters.

2. Attached hereto as Exhibit "A" are true and correct copies of excerpts from the March 5, 2020 deposition transcript of Matthew Milde. I attended and was present during the deposition of this witness.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was executed on this 4th day of February 2021, at Burlingame, California.

Todd H. Master

# Exhibit A

```
                   UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA


          _____
                                        )
                                        )
          MICHAEL ZELENY, an individual, )
                                        )
                  Plaintiff,            )
                                        )
               vs.                      ) Case No.:
                                        ) CV 17-7357 JS
          EDMUND G. BROWN, JR., an      )
          individual, in his official   )
          capacity; XAVIER BECERRA, an  )
          individual, in his official   )
          capacity; CITY OF MENLO PARK, )
          a municipal corporation; and  )
          DAVE BERTINI, an individual,  )
          in his official capacity,     )
                                        )
                  Defendants.           )
                                        )
          _____)
```

           VIDEOTAPED DEPOSITION OF MATTHEW L. MILDE
                    San Francisco, California
                    Thursday, March 5, 2020
                           Volume I

Reported by:
CHRIS TE SELLE
CSR No. 10836
Job No. 3985719

PAGES 1 - 217

Page 1

| | | |
|---|---|---|
| 1 | from somebody else, then you are free to answer. | 11:05:41 |
| 2 | BY MR. MARKEVITCH: | |
| 3 |     Q.  May I have the answer, please. | |
| 4 |     MR. MASTER:  Let him -- he's listening. | |
| 5 |     THE WITNESS:  Can you repeat the question. | 11:05:52 |
| 6 |     MR. MARKEVITCH:  Please. | |
| 7 |     (The pending question was read.) | |
| 8 |     THE WITNESS:  No. | |
| 9 | BY MR. MARKEVITCH: | |
| 10 |     Q.  Were you involved in reviewing Mr. | 11:06:21 |
| 11 | Zeleny's special permit application? | |
| 12 |     MR. MASTER:  I will just object.  Vague and | |
| 13 | ambiguous, but you can answer. | |
| 14 |     THE WITNESS:  I reviewed Mr. Zeleny's special | |
| 15 | event permit. | 11:06:34 |
| 16 | BY MR. MARKEVITCH: | |
| 17 |     Q.  What was your role in reviewing Mr. | |
| 18 | Zeleny's application? | |
| 19 |     A.  I provided an initial review of the | |
| 20 | application. | 11:06:45 |
| 21 |     Q.  What is an initial review? | |
| 22 |     A.  Number of things.  Looking at information | |
| 23 | provided by the applicant to see if their event | |
| 24 | required additional information to then be sent to | |
| 25 | the permit committee team. | 11:07:09 |

| | | |
|---|---|---|
| 1 | Q. Do you remember what was the outcome of | 11:07:18 |
| 2 | your review of Mr. Zeleny's application? | |
| 3 | A. I recall forwarding it on to my boss to | |
| 4 | receive input from the city's leadership team. | |
| 5 | Q. Who was your boss at the time? | 11:07:48 |
| 6 | A. Cherise Brandell. | |
| 7 | Q. Was the application complete at the time | |
| 8 | when you forwarded it to Ms. Brandell? | |
| 9 | A. I don't recall it being complete. | |
| 10 | Q. What is the standard procedure, what was | 11:08:12 |
| 11 | the standard procedure at the time for handling | |
| 12 | applications that were incomplete, based on your | |
| 13 | initial review? | |
| 14 | MR. MASTER: Objection. Vague and ambiguous, | |
| 15 | overbroad, incomplete hypothetical, and calls for | 11:08:26 |
| 16 | speculation, but, if you understand it, go ahead. | |
| 17 | THE WITNESS: Can you repeat the question. | |
| 18 | (The requested portion was read.) | |
| 19 | THE WITNESS: The applicant would be contacted | |
| 20 | and provided details on why their application was | 11:09:02 |
| 21 | incomplete, and they would be asked to resubmit. | |
| 22 | BY MR. MARKEVITCH: | |
| 23 | Q. Did you contact Mr. Zeleny and ask him to | |
| 24 | resubmit an application? | |
| 25 | A. I don't recall if I did. | 11:09:16 |

Veritext Legal Solutions
866 299-5127

```
 1        Q.   Do you believe that you would have, based      11:09:20
 2   on the standard procedure that you just testified
 3   about?
 4        MR. MASTER:   I'm not going to ask him to guess.
 5   You're not asking him to guess, are you, counsel?       11:09:28
 6   Lacks foundation.   Calls for speculation.   If you
 7   know, you can certainly answer, but, don't guess.
 8        THE WITNESS:   I'm sorry.
 9             (The pending question was read.)
10        THE WITNESS:   I can't say for sure.               11:10:08
11   BY MR. MARKEVITCH:
12        Q.   Was it a requirement to contact the
13   applicant under the circumstances where there was
14   some incompleteness to an application?
15        A.   I can't recall any requirement.               11:10:34
16        Q.   Why was the special permitting, special
17   event permitting procedure put in place?
18        A.   To my knowledge, it was put in place
19   because we had two special events that occurred that
20   didn't get the proper permit documentation, and,        11:11:03
21   based on those events, staff identified that a more
22   communicative approach internally was needed to
23   approve special events in the city.
24        Q.   What were those two events?
25        A.   I don't recall the names.   The first was a   11:11:32
```

| | | |
|---|---|---|
| 1 | BY MR. MARKEVITCH: | 01:31:13 |
| 2 | Q. Okay. Going back to step C on Exhibit 91, | |
| 3 | so, looking at the boxes, the first one lists | |
| 4 | Sergeant Matt Ortega, and, in parentheses, it says, | |
| 5 | police. | 01:31:59 |
| 6 | Does that mean that Sergeant Ortega is the | |
| 7 | liaison for the police department for the committee? | |
| 8 | A. That is correct. | |
| 9 | Q. Did Sergeant Ortega review every single | |
| 10 | permit that came through the city? | 01:32:15 |
| 11 | MR. MASTER: Objection. Lacks foundation. | |
| 12 | Calls for speculation. | |
| 13 | THE WITNESS: I can't say that he did, no. | |
| 14 | BY MR. MARKEVITCH: | |
| 15 | Q. What was your procedure for routing permit | 01:32:29 |
| 16 | applications after you were satisfied that they were | |
| 17 | complete pursuant to step B in terms of deciding who | |
| 18 | to send it to? | |
| 19 | A. Can you repeat the question. | |
| 20 | (The pending question was read.) | 01:32:48 |
| 21 | THE WITNESS: I believe, as I mentioned before, | |
| 22 | that I would scan it and send it to the permit | |
| 23 | committee. Not in every case did everyone from the | |
| 24 | permit committee get a copy at every, for every | |
| 25 | instance of a permit that we had application. | 01:33:23 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | regardless of the completeness. | 02:41:49 |
| 2 | BY MR. MARKEVITCH: | |
| 3 |     Q.   Having looked at this application by Mr. | |
| 4 | Zeleny today, is this an application that you would | |
| 5 | pass on to the staff internal review, if you were | 02:42:05 |
| 6 | reviewing it right now? | |
| 7 |     A.   No. | |
| 8 |     Q.   Why not? | |
| 9 |     A.   As I mentioned before, there's items that | |
| 10 | are incomplete, and a map that is incomplete. | 02:42:22 |
| 11 |     Q.   So, what would you do?  Would you go back | |
| 12 | to Mr. Zeleny and ask him to clarify the map? | |
| 13 |     A.   Potentially. | |
| 14 |     Q.   Is there any reason for why you would not | |
| 15 | do something like that? | 02:42:46 |
| 16 |     A.   The complexity of the event. | |
| 17 |     Q.   The complexity of the event, though, would | |
| 18 | probably require more detail from the applicant, am | |
| 19 | I correct? | |
| 20 |     A.   I would say so. | 02:43:09 |
| 21 |     Q.   So, why would you not ask him to draw the | |
| 22 | stage, or even tell you whether there is, indeed, a | |
| 23 | stage? | |
| 24 |     A.   I don't recall.  At the time, I recall | |
| 25 | that this needed city leadership input before I did | 02:43:27 |

```
 1    anything with the permit.                                          02:43:34
 2         Q.    Did somebody tell you that this
 3    application required input from the city leadership,
 4    or did you decide that yourself?
 5         A.    No, well, I felt I needed someone in a                  02:43:46
 6    higher capacity to weigh in on how the city should
 7    respond.
 8         Q.    I'm sorry, were you done with the answer?
 9         A.    I'm done.
10         MR. MARKEVITCH:  Okay.                                        02:44:13
11              (Exhibit 97 was marked for identification
12    by the court reporter and is attached hereto.)
13    BY MR. MARKEVITCH:
14         Q.    For the record, this document starts with
15    MP000243, and it's a chain of e-mails.                             02:44:39
16              Mr. Milde, could you please take a look at
17    this.
18         A.    Yes.
19         Q.    Do you recognize these e-mails?
20         A.    I do.                                                   02:44:49
21         Q.    And it looks like on July 10, the same day
22    when Mr. Zeleny submitted the application, you
23    forwarded that application to Cherise Brandell and
24    Derek Schweigart, am I correct?
25         A.    That's correct.                                         02:45:08
```

Veritext Legal Solutions
866 299-5127

```
 1      Q.   Why did you do that?                          02:45:08
 2      A.   I felt they should be aware of the
 3   application, as my supervisors.
 4      Q.   Did anybody instruct you to forward the
 5   application when you received it?                     02:45:21
 6      A.   No.
 7      Q.   At any time.
 8      A.   No.
 9      Q.   Have you spoken with Chief Bertini
10   regarding Mr. Zeleny prior to receiving this          02:45:33
11   application?
12      A.   No.
13      Q.   When was the first time you learned of Mr.
14   Zeleny's existence?
15      A.   The day he submitted his permit.              02:45:45
16      Q.   Now, why exactly, precisely, did you feel
17   that this application required you to forward it to
18   your superiors, rather than reviewing and processing
19   yourself?
20      A.   It was complex.                               02:46:02
21      Q.   Anything specific?
22      A.   There was just a lot of layers to it.
23      Q.   Was it because it was protesting, it was
24   proposing a protest against child rape?
25      A.   I don't think so.  I don't recall at the      02:46:27
```

```
 1   time.                                                          02:46:29
 2        Q.   You don't recall at that time you were
 3   aware whether this protest was related to child
 4   rape?
 5        A.   I don't recall.                                      02:46:36
 6        Q.   Do you recall if you identified at the
 7   time that the event would involve unloaded guns?
 8        A.   As I sit here, I don't recall if it was
 9   included in the e-mail that Mr. Zeleny wrote.  I
10   recall reading the e-mail and being aware of what he           02:46:56
11   sent me at the time.
12        Q.   If you like, we can go back to the
13   previous exhibit.
14        MR. MASTER:  It's actually at the bottom of 97,
15   isn't it?                                                      02:47:08
16        MR. MARKEVITCH:  Yeah, it's also there.
17        MR. MASTER:  Sure.
18   BY MR. MARKEVITCH:
19        Q.   Do you see that there is a list of weapons
20   there?                                                         02:47:24
21        A.   I see.
22        Q.   Do you remember noting that at the time
23   when you reviewed the application?
24        A.   I can't say that that was part of my
25   review, in terms of looking at the application,                02:47:34
```

Page 147

```
1    because there was that element in, described in the        02:47:37
2    e-mail that was sent to me.  I felt that it was more
3    important for city leadership to be aware and weigh
4    in on it, in terms on if it qualified as a special
5    event.                                                     02:47:55
6         Q.   And when you say, qualified as a special
7    event, are you talking about meeting a specific
8    definition?
9         A.   Well, whether or not the special event
10   that was submitted should be routed, or if there was       02:48:07
11   another way to work with the applicant.  I don't
12   know.  I was waiting on direction.
13        Q.   Is there a specific process for dealing
14   with special event permit applications that involve
15   legal use of guns?                                          02:48:21
16        A.   No, not to my knowledge.
17        Q.   The notation of or the expectation of use
18   of or presence of weapons was one of the components
19   of the complexity that you have referred, correct?
20        A.   Yeah.  And I saw that PD was cc'd on that        02:48:41
21   initial e-mail.  PD would typically weigh in on
22   items like this.  If someone wished to have this as
23   part of their event, I would rely on their input and
24   expertise on determining if it's appropriate.
25        Q.   The police department would be involved in      02:49:04
```

Page 148

```
 1    this process regardless.                                02:49:06
 2         A.    Correct.
 3         Q.    Pursuant to step C of the flowchart,
 4    correct?
 5         A.    Correct.                                     02:49:13
 6         Q.    Any other aspect of complexity that you
 7    found in this application that prompted you to
 8    forward it to your superiors?
 9         A.    The fact that it was an event that was
10    being requested for a public median on a major         02:49:29
11    thoroughfare, there's a lot of safety implications
12    with that.  That was of concern.  We don't typically
13    get applications for community events on a public
14    median.  It just doesn't happen.  I haven't seen it.
15         Q.    Is it fair to say that this application     02:50:04
16    was, in your mind, different enough that you decided
17    to forgo the entirety of the process on this
18    flowchart?
19         A.    It definitely stood out.
20         Q.    But you did not follow the flowchart with   02:50:17
21    regard to Mr. Zeleny's application, correct?
22         A.    Well, I followed the flowchart in regards
23    to that I provided the initial review of it.  I did
24    look it over, and looked at it, but I felt that
25    before we moved forward with it that city leadership  02:50:31
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | also needed to review and weigh in and provide | 02:50:35 |
| 2 | direction to staff. | |
| 3 | Q. Is there a procedure for processing an | |
| 4 | application the way you decided to do it with Mr. | |
| 5 | Zeleny's? | 02:50:51 |
| 6 | A. Not that I recall, but, then again, we | |
| 7 | have never gotten anything quite like this | |
| 8 | application in before, so, it was an outlier. | |
| 9 | Q. Is there a reason why this application | |
| 10 | could not be processed the way the flowchart | 02:51:04 |
| 11 | indicates an application should be processed? | |
| 12 | A. Again, due to the complexity of what was | |
| 13 | submitted to me, I felt that it was necessary that | |
| 14 | city leadership provide direction to staff. | |
| 15 | (Exhibit 98 was marked for identification | 02:51:58 |
| 16 | by the court reporter and is attached hereto.) | |
| 17 | BY MR. MARKEVITCH: | |
| 18 | Q. Do you recognize this chain of e-mails? | |
| 19 | A. Yes. | |
| 20 | Q. So, again, you forwarded this application | 02:52:47 |
| 21 | to Clay Curtin and Jim Cogan; is that correct? | |
| 22 | A. That's correct. | |
| 23 | Q. Why did you do that? | |
| 24 | A. They were the heads of the communication | |
| 25 | team, and, as part of our responsibilities with the | 02:53:03 |

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | A.  Not that I was aware. | 04:19:16 |
| 2 | Q.  Do you know if there was a meeting with | |
| 3 | the applicant pursuant to step D? | |
| 4 | A.  Not that I'm aware. | |
| 5 | Q.  Did you ever recommend that a meeting | 04:19:35 |
| 6 | should be held? | |
| 7 | A.  No. | |
| 8 | Q.  Did you have the authority to make such a | |
| 9 | recommendation? | |
| 10 | MR. MASTER:  Object.  Vague and ambiguous. | 04:19:45 |
| 11 | THE WITNESS:  That would depend on the permit. | |
| 12 | BY MR. MARKEVITCH: | |
| 13 | Q.  In this case. | |
| 14 | A.  I would rely on PD to provide. | |
| 15 | Q.  Did you feel like it does not really | 04:19:57 |
| 16 | matter what you thought, you were not in control? | |
| 17 | A.  Yeah, I don't think my opinion really | |
| 18 | mattered. | |
| 19 | Q.  You were just being told what to do, | |
| 20 | correct? | 04:20:17 |
| 21 | A.  That's correct. | |
| 22 | Q.  By Chief Bertini? | |
| 23 | A.  No.  By the city's leadership team, and | |
| 24 | city attorney, via Chief Bertini. | |
| 25 | Q.  So, was there anything that Chief Bertini | 04:20:40 |

```
1        A.    I don't recall.                              05:00:47
2        Q.    Do you recall any discussion of any
3   proposed modifications to his proposal that would
4   potentially allow the city to approve his
5   application for a special event permit?             05:01:02
6        A.    I don't recall.
7        Q.    Do you know if it would be proper for Mr.
8   Zeleny to open carry weapons if he received a permit
9   from the city?
10       MR. MASTER:  Objection.  Vague and ambiguous.   05:01:30
11  Overbroad.  Calls for a legal conclusion.  And
12  speculation.  Go ahead.
13       THE WITNESS:  I don't know.
14  BY MR. MARKEVITCH:
15       Q.    Do you know anything about open carry    05:01:38
16  laws?
17       MR. MASTER:  Objection.  Vague and ambiguous.
18  BY MR. MARKEVITCH:
19       Q.    Anything?
20       MR. MASTER:  Same objection.                    05:01:46
21       THE WITNESS:  No.
22  BY MR. MARKEVITCH:
23       Q.    Do you know what I mean when I say, open
24  carry?
25       A.    Yes.                                      05:01:55
```

Veritext Legal Solutions
866 299-5127

```
 1        Q.   What is your understanding?                      05:01:56
 2        A.   A person can carry a gun in plain view, is
 3   my understanding.
 4        Q.   Anything else?
 5        A.   No.                                               05:02:29
 6        Q.   Do you have any understanding how the open
 7   carry matter ties into Mr. Zeleny's permit
 8   application?
 9        A.   No.
10        Q.   Did you ever apply for a special event           05:03:01
11   permit yourself, with the City of Menlo Park?
12        A.   I can't remember.
13        Q.   Did you ever organize any events in the
14   City of Menlo Park?
15        A.   Yes.  That was my job.                           05:03:40
16        Q.   Did you ever organize any events in the
17   City of Menlo Park in your individual capacity?
18        MR. MASTER:  As a noncity employee?
19        MR. MARKEVITCH:  Correct.
20        MR. MASTER:  Okay.                                    05:03:52
21        THE WITNESS:  Not that I recall.
22        MR. MARKEVITCH:  So, I don't have any further
23   questions at this point.  For the record, I have to
24   say that it is my assessment that there were a
25   number of questions that were not answered, and,           05:04:23
```

```
 1           I, the undersigned, a Certified Shorthand
 2      Reporter of the State of California, do hereby
 3      certify:
 4           That the foregoing proceedings were taken
 5      before me at the time and place herein set forth;
 6      that any witnesses in the foregoing proceedings,
 7      prior to testifying, were duly sworn; that a record
 8      of the proceedings was made by me using machine
 9      shorthand which was thereafter transcribed under my
10      direction; that the foregoing transcript is a true
11      record of the testimony given.
12           Further, that if the foregoing pertains to the
13      original transcript of a deposition in a Federal
14      Case, before completion of the proceedings, review
15      of the transcript [ ] was [ ] was not requested.
16           I further certify I am neither financially
17      interested in the action nor a relative or employee
18      of any attorney or party to this action.
19           IN WITNESS WHEREOF, I have this date subscribed
20      my name.
21
22      Dated: March 19, 2020.
23
24                              _____
                                CHRIS TE SELLE
25                              CSR No. 10836
```

Page 217