David W. Affeld, State Bar No. 123922
Brian R. England, State Bar No. 211335
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:     (310) 979-8700

Attorneys for Plaintiff Michael Zeleny

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY,<br><br>    Plaintiff,<br><br>vs.<br><br>GAVIN NEWSOM, *et al.*,<br><br>    Defendants. | Case No. CV 17-7357 JCS<br><br><u>Assigned to:</u><br>The Honorable Richard G. Seeborg<br><br><u>Discovery Matters:</u><br>The Honorable Thomas S. Hixson<br><br>**PLAINTIFF MICHAEL ZELENY'S OPPOSITION TO MOTION FOR SUIMMARY JUDGMENT OF THE CITY OF MENLO PARK AND POLICE CHIEF DAVE BERTINI**<br><br>[Filed concurrently:<br>1.  Supplemental Declaration of Michael Zeleny;<br>2.  Supplemental Declaration of Damion Robinson;<br>3.  Evidentiary Objections]<br><br>Date:         March 18, 2021<br>Time:         1:30 p.m.<br>Courtroom: 3, 17th Floor<br><br>Action Filed:   December 28, 2017<br>Trial Date:     TBD |

Plaintiff Michael Zeleny ("Zeleny") opposes the Motion for Summary Judgment of the City

of Menlo Park (the "City") and Chief Dave Bertini ("Bertini"; collectively the "City Defendants").

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................................... 3

       A.    Zeleny's First Amendment Activities .................................................... 3

       B.    The City's Ongoing Efforts to Stop Zeleny's Protests. ........................ 3

       C.    California's Entertainment Exemption to Its Open Carry Ban. ............ 4

       D.    The City's Defective Permitting Processes ........................................... 4

             1.    The SEP Process ......................................................................... 4

             2.    The Film Permit Process ............................................................. 5

       E.    Zeleny Applied for an SEP and the City Gave Him the Run-Around. .................. 6

             1.    The City Denied Zeleny's Application. ..................................... 6

             2.    The City Made Up an Appeal Process. ...................................... 6

       F.    Zeleny Applied for a Film Permit and the City Gave Him the Run-
             Around. ................................................................................................... 7

       G.    The City Refused to Disclose Time, Place, or Manner Standards. ....... 8

III.   ARGUMENT ............................................................................................................ 8

       A.    The City's Permit Processes Are Unconstitutional Under *Epona*. ........ 8

             1.    Permitting Requirements are Closely Scrutinized. ................... 8

             2.    The SEP Process Is Unconstitutional Under *Epona* ................ 9

                   a.    The SEP Process Has No Objective Standards. ............ 9

                   b.    The SEP Process Covers First Amendment Expression ............. 10

             3.    The City's Film Permit Process Is Unconstitutional Under
                   *Epona* ....................................................................................... 11

                   a.    The Film Permit Process Is "Completely
                         Discretionary" and Lacks any Time Limits. ................ 11

                   b.    The Construction Permitting Process Does Not Govern
                         Film Permits and Fails Under *Epona* In Any Event. ....... 12

             4.    The Permitting Processes Were Unconstitutional as Applied ................. 14

                   a.    The City Ignored Its Own SEP Process. ...................... 14

                   b.    The City Failed to Follow Its Published Film Permit
                         Process. ......................................................................... 15

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
BY THE CITY OF MENLO PARK AND BERTINI

B.  The City Defendants' Ripeness and Mootness Defenses Fail ............................. 15

    1.  The City Defendants' Ripeness Argument Defies Established Law ......................................................................................... 15

        a.  The City Cannot Avoid Review by Shelving the Application. ................................................................. 15

        b.  Zeleny Was Not Required to Exhaust a Defective Process. ........................................................................ 16

    2.  The City's Mootness Argument Misses the Point. ................... 18

        a.  The City's Asserted Lack of Ownership Is Irrelevant. ............... 18

        b.  The City Waived Its New Theory. ......................................... 19

        c.  The City's New Theory Fails on the Merits ............................. 19

C.  The City's "Time, Place and Manner Reasons" Are Irrelevant. ..................... 20

    1.  The Denial Was Content-Based. ............................................. 21

    2.  Heightened Scrutiny Applies Because Medians Are Pubic Fora. .................................................................................. 21

    3.  The City Cannot Justify an Outright Ban on Zeleny's Events. ............... 22

        a.  The City's "Open Carry Is Illegal" Excuse Is Pretextual. .......................................................... 22

        b.  There Is No Evidence of the City's Public Safety Grounds. ............................................................... 23

        c.  The City Did Not Leave Open "Ample Alternative Channels". .......................................................... 24

D.  Bertini Is Not Entitled to Summary Judgment. ................................................. 24

IV.  CONCLUSION ............................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abbott Laboratories v. Gardner,*
   387 U.S. 136 (1967)................................................................................................................. 18

*ACLU of Nev. v. Cty. of Las Vegas,*
   466 F.3d 784 (9th Cir. 1984)................................................................................................. 22

*Anderson v. Creighton,*
   483 U.S. 635 (1987)............................................................................................................... 25

*Arizona Right to Life PAC v. Bayless,*
   320 F.3d 1002 (2003)............................................................................................................ 18

*Baby Tam & Co., Inc. v. City of Las Vegas,*
   154 F.3d 1097 (9th Cir.1998)................................................................................................. 8

*Bernhardt v. Cnty of Los Angeles,*
   279 F.3d 862 (9th Cir. 2002)................................................................................................ 18

*Branzburg v. Hayes,*
   408 U.S. 665 (1972)............................................................................................................... 23

*Cal. Pro-Life Council v. Getman,*
   328 F.3d 1088 (9th Cir. 2003)............................................................................................. 17

*Cambridge Elec. Corp. v. MGA Elecs., Inc.,*
   227 F.R.D. 313 (C.D. Cal. 2004) ....................................................................................... 13

*Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara,*
   344 F.3d 822 (9th Cir. 2003)............................................................................................... 17

*Chafin v. Chafin,*
   568 U.S. 165 (2013)............................................................................................................... 18

*Citizens for Clean Gov't v. City of San Diego,*
   474 F.3d 647 (9th Cir. 2009)........................................................................................ 15, 23

*Citizens United v. FEC,*
   558 U.S. 310 (2010)......................................................................................................... 1, 23

*Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.,*
   489 U.S. 561 (1989)............................................................................................................... 17

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
BY THE CITY OF MENLO PARK AND BERTINI

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,*
   259 F.3d 1186 (9th Cir. 2001)..................................................................... 19

*Comite de Jornaleros de Redondo Beach v. Cty. of Redondo Beach,*
   657 F.3d 936 (9th Cir. 2011)............................................................... 22, 24

*Cty. of Lakewood v. Plain Dealer Publ'g Co.,*
   486 U.S. 750 (1988)........................................................................... 17, 21

*Cty. of Los Angeles v. Alameda Books, Inc.,*
   535 U.S. 425 (2002)................................................................................. 22

*Cutting v. City of Portland,*
   802 F.3d 79 (1st Cir. 2015)...................................................................... 21

*Desert Outdoor Advert., Inc. v. City of Moreno Valley,*
   103 F.3d 814 (9th Cir. 1996)............................................................... 10, 25

*Dish Network Corp. v. FCC,*
   653 F.3d 771 (9th Cir. 2011)................................................................... 21

*Epona v. County of Ventura,*
   876 F.3d 1214 (9th Cir. 2017)........................................................... *passim*

*First Nat'l Bank of Boston v. Bellotti,*
   435 U.S. 765 (1978)............................................................................. 1, 23

*Freedman v. State of Md.,*
   380 U.S. 51 (1965)................................................................................. 9, 16

*FW/PBS, Inc. v. City of Dallas,*
   493 U.S. 215 (1990)....................................................................... 9, 12, 16

*Garcia v. Lawn,*
   805 F.2d 1400 (9th Cir. 1986).................................................................. 18

*Gibson v. Berryhill,*
   411 U.S. 564 (1973)................................................................................. 16

*Grossman v. City of Portland,*
   33 F.3d 1200 (9th Cir.1994)....................................................................... 8

*Guatay Christian Fellowship v. Cnty. of San Diego,*
   670 F.3d 957 (9th Cir. 2011).................................................................... 17

*Hacienda Valley Mobile Estates v. Cty. of Morgan Hill,*
   353 F.3d 651 (9th Cir. 2003).................................................................... 16

*Harris v. Cnty. of Riverside,*
   904 F.2d 497 (9th Cir. 1990).................................................................... 17

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
BY THE CITY OF MENLO PARK AND BERTINI

*Hazel v. Crofoot,*
    727 F.3d 988 (9th Cir. 2013) .......................................................................... 18, 25

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston,*
    515 U.S. 557 ........................................................................................................... 10

*Hustler Magazine v. Falwell,*
    485 U.S. 46 (1988) ................................................................................................... 1

*Kennedy v. Allied Mut. Ins. Co.,*
    952 F.2d 262 (9th Cir. 1991) .............................................................................. 13

*Knick v. Township of Scott, Penn.,*
    __ U.S. __, 139 S.Ct. 2162 (2019) ..................................................................... 17

*Kurland v. Cty. of Providence,*
    2020 WL 5821091 (D.R.I. Sept. 30, 2020) ..................................................... 21

*Ky. V. Graham,*
    473 U.S. 159 (1985) .............................................................................................. 25

*Lands Council v. McNair,*
    629 F.3d 1070 (9th Cir. 2010) ........................................................................... 19

*Laub v. U.S. Dept. of Interior,*
    342 F.3d 1080 (9th Cir. 2003) ........................................................................... 16

*Magana v. Com. of N. Mariana Islands,*
    107 F.3d 1436 (9th Cir. 1997) ........................................................................... 19

*Manufactured Home Communities, Inc. v. City of San Jose,*
    420 F.3d 1022 (9th Cir. 2005) ........................................................................... 17

*McCarthy v. Madigan,*
    503 U.S. 140 (1992) .............................................................................................. 17

*McGraw v. Oklahoma City,*
    973 F.3d 1057 (10th Cir. 2020) ......................................................................... 22

*Mi Pueblo San Jose, Inc. v. City of Oakland,*
    No. 06-4094, 2006 WL 2850016 (N.D. Cal. Oct. 4, 2006) ...................... 17

*Niemotko v. State of Md.,*
    340 U.S. 268 ........................................................................................................... 11

*Nw. Env't Def. Ctr. v. Gordon,*
    849 F.2d 1241 (9th Cir. 1988) ........................................................................... 18

*Perry Educ. Ass'n v. Perry Local Educators Ass'n,*
    460 U.S. 37 (1983) ................................................................................................ 22

- v -

*Porter v. Gore*,
   354 F.Supp.3d 1162 (S.D. Cal. 2018) .................................................................. 17, 24

*Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*,
   478 F.3d 1175 (9th Cir. 2007) ..................................................................................... 25

*Prime Media, Inc. v. Cty. of Brentwood*,
   485 F.3d 343 (6th Cir. 2007) ....................................................................................... 17

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992) ...................................................................................................... 1

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015) .................................................................................................... 21

*Reynolds v. Middleton*,
   779 F.3d 222 (4th Cir. 2015) ....................................................................................... 22

*Riley v. Nat'l Fed. of the Blind*,
   487 U.S. 781 (1988) ......................................................................................... 9, 11, 16

*Satawa v. Macomb Cnty. Road Comm'n*,
   689 F.3d 506 (6th Cir. 2012) ....................................................................................... 21

*Schad v. Borough of Mt. Ephraim*,
   452 U.S. 61 (1981) ...................................................................................................... 11

*Smith v. Ill. Bell Tel. Co.*,
   270 U.S. 587 (1926) .................................................................................................... 17

*Snapp v. United Transp. Union*,
   889 F.3d 1088 (9th Cir. 2018) ..................................................................................... 13

*Texas v. Johnson*,
   491 U.S. 397 (1989) ................................................................................................ 1, 21

*Thomas v. Anchorage Equal Rights Comm'n*,
   220 F.3d 1134 (9th Cir. 2000) ..................................................................................... 18

*Thomas v. Chicago Park District*,
   534 U.S. 316 (2002) .................................................................................................... 12

*Tollis, Inc. v. San Bernardino Cty.*,
   827 F.2d 1329 (9th Cir. 1987) ..................................................................................... 23

*Turner Broad. Sys., Inc. v. FCC*,
   512 U.S. 622 (1994) ............................................................................................... 22, 23

*United States v. Virginia*,
   518 U.S. 515 (1996) .................................................................................................... 22

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
BY THE CITY OF MENLO PARK AND BERTINI

1

*Weaver v. Montebello*,
  370 F.Supp.3d 1130 (C.D. Cal. 2019) ............................................. 10

2

**California Cases**

3

*People v. Martin* (1966)

4

  225 Cal.App.2d 91 ............................................................................ 20

5

*Sierra Club v. Napa Cnty.* (2012)
  205 Cal.App.4th 162 ......................................................................... 20

6

7

**Federal Statutes**

8

42 U.S.C. § 1983 ............................................................................ 18, 25

9

42 U.S.C. § 1988 .................................................................................. 25

10

42 U.S.C. § 1997 .................................................................................. 17

11

**California Statutes**

12

Cal. Pen. Code § 830 ........................................................................... 20

13

Cal. Pen. Code § 23650 ......................................................................... 4

14

Cal. Pen. Code § 26500 ......................................................................... 4

15

Cal. Pen. Code § 26357 ......................................................................... 4

16

Cal. Pen. Code §26405 .......................................................................... 4

17

Cal. Streets & Highways Code § 90 .................................................... 20

18

Municipal Code §§ 13.18.020 .............................................................. 14

19

Municipal Code § 13.18.110 .......................................................... 13, 14

20

Penal Code § 26375 ............................................................................... 3

21

Penal Code § 26405 ............................................................................... 3

22

Streets & Highways Code § 682.5 ....................................................... 20

23

24

25

26

27

28

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
BY THE CITY OF MENLO PARK AND BERTINI

1  ## I.   **INTRODUCTION**

2  The City Defendants' Motion should be denied.  This Motion and Zeleny's cross-motion

3  turn on a single issue: whether the City's ***administrative processes*** for issuing Special Events

4  Permits ("SEP") and film permits were constitutional under the First Amendment.  As a matter of

5  well-defined law, they were not.  The City Defendants' motion does not even discuss the leading

6  case on permitting processes, *Epona v. County of Ventura*, 876 F.3d 1214 (9th Cir. 2017).  The

7  reason is clear.  The City's processes were patently deficient.

8  Rather than address the applicable legal standard, the City tries to justify the merits of its

9  permitting decisions by ridiculing the content of Zeleny's protected First Amendment protest

10  activity.  The First Amendment, however, is not a popularity contest.  The fundamental value of the

11  First Amendment is precisely the opposite.  Popular speech is easy.  It is *unpopular* speech that

12  needs to be protected – including expression that the majority of Americans and many

13  municipalities might find ridiculous or disturbing.  *E.g., Hustler Magazine v. Falwell*, 485 U.S. 46

14  (1988) (parody portraying minister "as having engaged in a drunken incestuous rendezvous with his

15  mother in an outhouse"); *Texas v. Johnson*, 491 U.S. 397 (1989) (flag burning); *R.A.V. v. City of St.*

16  *Paul*, 505 U.S. 377 (1992) (cross burning).

17  The City Defendants have played fast and loose with Zeleny's fundamental constitutional

18  rights for more than a decade.  They have entangled Zeleny in a years-long permitting process,

19  which they made up as they went along.  They continue to do so even in this very motion, offering a

20  host of irrelevant, last-minute excuses, which they failed to raise in the many years before the

21  current motions were filed.  They are continuing to make up the rules.  Enough is enough.

22  The Court's role on a First Amendment challenge is well-defined.  The First Amendment is

23  "[p]remised on a mistrust of governmental power." *Citizens United v. FEC*, 558 U.S. 310, 340

24  (2010).  The Court must carefully scrutinize the City's process to ensure that it contains clear,

25  objective standards and procedural safeguards so that applicants' rights are not relegated to the

26  unbridled discretion of bureaucrats or indefinite delay.  The City's procedures here fail this test.

27  ***First***, the City's film permitting process is unconstitutional.  Its permitting decisions are

28  "completely discretionary," devoid of objective criteria.  Nor are there any time limits for rendering

a decision—the City has stalled multiple applications for years.  The City's newest theory, raised for the first time in its Motion, is that the process for *construction encroachments* governs film permits, but this theory contradicts the City's discovery responses and testimony.

**Second**, the City's Special Event process also fails under *Epona*.  The City's "policy" lacks any objective criteria and confers unbridled discretion on the City to make up new criteria case-by-case—as it did with Zeleny's application.  The City also has unbridled discretion to decide whether an event is "special".  Again, there is no time limit on processing an application.  The City Defendants assume their conclusion by asserting that the SEP process does not "substantially reach or regulate constitutional activity," but the very examples they cite of events requiring permits, *i.e.*, "concerts" and outdoor "movie nights" – involve core forms of expression and refute their position.

**Third**, the City Defendants ignore binding precedent in arguing that Zeleny's as-applied challenge to the film permit process is unripe.  A municipality cannot have a "pocket veto" on permitting decisions and avoid review by stalling in perpetuity.  Nor is a plaintiff required to wait *for years* while the City dawdles in an unconstitutional process.

**Fourth**, the City's last-minute argument—raised over two years into this case—that it does not own the median where Zeleny first sought to stage his events is irrelevant and misleading.  The median is within City limits and subject to the City's criminal-law authority.  Far from disclaiming such authority, the City elsewhere argues that its authorization is required.  Moreover, the City has failed to submit admissible evidence showing that someone else (Caltrans) owns the median strip.

**Fifth**, the City's "time, place and manner reasons" for its denials miss the point.  They do not go to the validity of the ***administrative process***.  As *Epona* recognizes, a municipality can always come up with justifications in hindsight.  The City was required to define objective criteria up front.  The City failed to do so, but even if it had, it failed to support its "time, place and manner reasons" with any admissible evidence—just as it failed to do in the permitting process itself.

**Sixth**, and finally, Zeleny is entitled to relief against Bertini, who was directly involved in the unconstitutional process.  Bertini's retirement does not moot Zeleny's claims against him.

The City's permitting processes are constitutionally impermissible.  Summary judgment should be entered against the City Defendants and in Zeleny's favor.

## II.   FACTUAL BACKGROUND

### A.   Zeleny's First Amendment Activities

Since 2009, Zeleny has put on and wants to resume putting on entertainment/protest events in Menlo Park, outside the headquarters of New Enterprise Associates ("NEA").  He recorded prior events as part of an online production and documentary.  Zeleny Decl. ¶ 34.[1]  Zeleny has always been willing to conduct his events on the median, either side of the street, or the sidewalk, and to comply with all reasonable time, place, and manner requirements – if the City would just bother to tell him what they are.  Zeleny Supp. Decl. ¶ 8.

Zeleny's proposed events bear all of the hallmarks of core First Amendment activity.  He intends to present a video and images of his activism—*i.e.*, NEA's ongoing corporate sponsorship of a morally disqualified Silicon Valley executive.  He intends to use placards and hand out flyers; to speak with passersby about his message; and to film the events and reactions to them.  He also intends to lawfully carry firearms, per Penal Code §§ 26375 and 26405(r).  Zeleny Supp. Decl. ¶ 2.

### B.   The City's Ongoing Efforts to Stop Zeleny's Protests.

Zeleny engaged in similar activities at the same location more than 20 times through 2012 without incident.  Zeleny Supp. Decl. ¶ 3.  The Menlo Park Police Department ("MPPD") constantly monitored his activities.  Far from finding a crime or threat to safety, they went out of their way to note how courteous and cooperative he was.  Zeleny Decl., ¶¶ 20-22; Robinson Decl., Ex. H; Robinson Supp. Decl., Ex. 1 at 146-47, 186-88, 191, 203; *id.*, Ex. 2 at 290.

Nonetheless, the City worked with the target of Zeleny's protests, NEA, to find a "firm solution" to end his protests.  Robinson Decl., Exs. 1, J, & K at MP-93; Robinson Supp. Decl., Ex. 1 at 150-51, 161-62, 190, 211-12.  In 2012, this took the form of having Zeleny falsely charged with possession of a "concealed" weapon.  Zeleny Decl. ¶¶ 24-30 & Ex. 2 at pp. 15-16, Ex. 4.  Zeleny's protests paused until 2014, when he was acquitted.  Zeleny Supp. Decl. ¶ 4.

---

[1] Because the issues on this motion and Zeleny's motion overlap, Zeleny relies on the declarations submitted in support of his motion.  Zeleny's prior declaration [Dkt. No. 162-2] is referred to as "Zeleny Decl." and his current supplemental declaration as "Zeleny Supp. Decl."  The prior declaration of Damion Robinson [Dkt. No. 162-1] is referred to as "Robinson Decl." and the supplemental declaration as "Robinson Supp. Decl."  Page references to documents produced by the City are by bates page in the format "MP-#####".

### C.      California's Entertainment Exemption to Its Open Carry Ban.

While Zeleny's prosecution was ongoing, California enacted its "open carry" ban, which prohibits citizens from carrying a firearm virtually anywhere in the state.  Cal. Pen. Code §§ 23650, 26500.  Among other exemptions, the "open carry" ban exempts "authorized participants" in film, television and video productions, and entertainment events.  Cal. Pen. Code §§ 26357, 26405(r).

"The City interprets the exemptions as requiring its authorization [either through an SEP or a film permit] since the activities would be occurring on public property."  Mot. at p. 17.  Zeleny is subject to arrest if he has no permit.  Robinson Supp. Decl., Ex. 1 at 182-183.  Although Zeleny disagrees with this interpretation, he sought a permit to avoid prosecution.  Zeleny Supp. Decl. ¶ 6.

### D.      The City's Defective Permitting Processes

Zeleny applied for a Special Events permit and for a film permit.  The City stymied both.

#### 1.      The SEP Process

The City's entire policy on SEPs is in a short form, a three-page "FAQ," a flowchart, and a website with the same information.  Robinson Decl., Exs. R, U; Robinson Supp. Decl., Ex. 1 at 64.

City policy defines a "special event," requiring a permit, as any event meeting "**one** or more of these criteria":  (a) attendance of over 150; (b) use of any street, sidewalk, or right of way; (c) street or lane closures; (d) traffic impact; (e) exceeds noise ordinance; (b) parking needs exceeding capacity; (f) generating a crowd sufficient to disrupt pedestrian or vehicular traffic; (g) "Community Events"; (h) events lasting more than one day; or (i) requiring "Police regulation, monitoring, or control."  Robinson Decl., Ex. R.  The City now asserts that "a special event is a "community-oriented event" or "community-related activit[y] of a social and/or recreational nature."  Mot. at p. 3, 20.  This wholly subjective definition appears nowhere in its written policy.

Even if an event meets the stated definition, City staff have discretion to determine whether it is a "special" event warranting a permit.  Robinson Supp. Decl., Ex. 1 at 20-21; *id.*, Ex. 2 at 371-72.  Despite admitting that Zeleny's event qualifies, *id.*, Ex. 1 at 107-110, the City denied him a permit for over two years based on its decision that his event was not a "special event" as defined by the City.  Robinson Decl., Ex. W, Zeleny Decl., Ex. 8 at pp. 10, 20, 33, 41.

"Determination of the approval or denial of any application is ***at the discretion of the***

- 4 -

***Special Events Permit Committee***" (the "SEP committee").  Robinson Decl., Ex. R at MP-1820; *see also* Robinson Supp. Decl., Ex. 5 at 126-127.  There are no set criteria for issuance or denial. The City provides a non-exhaustive list in its FAQ:

> Approval or denial of applications are based upon several factors including: size (number of people), scale, location, route to be closed, *community impact*, impact on City services, *past practices/experiences with issued permits, intended use*, non-payment of fees, *poor articulation of event* as reflected in the application and site map, *etc*.

Robinson Decl., Ex. R at MP-1820.  Consistent with this non-exhaustive list, staff consider a host of other, unwritten factors decided case-by-case, depending on the application submitted.  Robinson Supp. Decl., Ex. 1 at 28-29, 33-35, 38-39, 42-43, 45-46, 75, 111-12; *id.*, Ex. 2 at 426; *id.*, Ex. 3 at 104-05, 107, 114-15, 200-05; *id.* Ex. 5 at 117, 125-26.  Although the City claims that it only applies "time, place and manner" factors, it has no guidelines for how to assess them—*e.g.*, size limits, time limits, or approved locations.  *Id.*, Ex. 1 at 41-42, *id.*, Ex. 2 at 241-247.

Despite clear legal prohibitions, City staff also considers content of the event.  In Zeleny's case, the City considered his content "important, salient information."  *Id.*, Ex. 2 at 476.

Finally, the SEP process lacks clear procedures.  It has no set time limits.  Robinson Supp. Decl., Ex. 2 at 247, Ex. 3 at 75, 80. The City now claims that the City's Attorney can unilaterally decide applications—although this nowhere appears in its policy.  *Id.*, Ex. 2 at 450-52.

## 2.  The Film Permit Process

The City's entire policy governing film permits is in a two-page handout and a short permit application.  Robinson Decl., Ex. U; Zeleny Decl., Ex. 12. There are no other written or unwritten policies.  Robinson Supp. Decl., Ex. 2 at 481-83.

The policy contains no substantive standard for a decision.  *See* Robinson Decl., Ex. U. Film permits are "complete discretionary" with the City.  Decl. of Todd Master [Dkt. 160-6], Ex. E at p. 44; Robinson Supp. Decl., Ex. 2 at 495-96, 514-15; *id.*, Ex. 4 at 41, 156-57.  Even if an applicant complies with all written requirements, the City is not required to issue a permit.  *Id.*, Ex. 2 at 483-87, 496, 505-506, 520-21, 529.  Applications are decided case-by-case on whatever factors the City decides to consider.  *Id.* Applicants must comply with all "guidance of City supervisory employees," imposed in their discretion.  *Id.* at 487-488, 490; Robinson Decl., Ex. U.

- 5 -

1    There is no time limit for a decision.  *Id.*; Robinson Supp. Decl., Ex. 1 at 121, Ex. 2 at 495.

2    **E.      Zeleny Applied for an SEP and the City Gave Him the Run-Around.**

3         Zeleny first applied for an SEP on July 10, 2015.  Zeleny Decl., Ex. 6.  His application was

4    denied at multiple stages of review in a process that took more than two years.  *Id.*, Ex. 10.

5         **1.      The City Denied Zeleny's Application.**

6         The City did not follow the official SEP process.  The SEP committee never considered his

7    application because it was never submitted to them.  Robinson Supp. Decl., Ex. 2 at 409; *id.*, Ex. 3

8    at 118-19, 138.  Instead, Chief Bertini and City Attorney William McClure ("McClure") inserted

9    themselves into the process and denied Zeleny's application despite never deciding an application

10   before.  *Id.*, Ex. 1 at 51; Ex. 2 at 256, 371-72, 450-52; Ex. 3 at 39-40, 53-55, 154; *see also* Robinson

11   Decl., Ex. V.  Meanwhile, Bertini worked with NEA on a "combined response" to Zeleny.

12   Robinson Decl., Ex. W; Robinson Supp. Decl., Ex. 2 at 406-07.

13        Days after receiving Zeleny's application, the City secretly denied it.  On July 21, 2015,

14   Bertini assured NEA that the City planned to deny Zeleny's application "predominately [because]

15   this is not a 'special event' as defined by the City."  Robinson Decl., Ex. W; Robinson Supp. Decl.,

16   Ex. 6 at MP-297.  By August 10, it was "in the process of being denied."  *Id.*, Ex. X at MP309.

17        Having already decided to deny Zeleny's application, McClure nevertheless peppered

18   Zeleny with questions for "due diligence."  Robinson Supp. Decl., Ex. 6; Zeleny Decl., Ex. 7.

19   McClure back-filled the record for a decision already made, and stalled for two months.  *Id.*  He

20   then ignored Zeleny's answers, and declared the application "incomplete."  Zeleny Decl., Ex. 8 at

21   pp. 20-21; Robinson Supp. Decl., Ex. 2 at 413-14, 423-24.

22        McClure announced denial of the application in September 2015.  *Id.*  He made no reference

23   to or findings on the published criteria, nor was any evidence of impact presented.  *Id.*  He exercised

24   unbridled discretion to find that Zeleny's event was not a "special event."  *Id.*  He also concluded

25   that "it is illegal to open carry a firearm in the State of California. . . [T]here does not appear to be

26   any logical nexus or legitimate purpose of carrying a firearm."  *Id.*

27        **2.      The City Made Up an Appeal Process.**

28        When Zeleny tried to appeal, McClure deemed his appeal a "new application," and again

- 6 -

denied it unilaterally.  Zeleny Decl., Ex. 8 at pp. 25-26; Robinson Supp. Decl., Ex. 2 at 449.  The City then stalled Zeleny's appeal, first so Bertini could urge the California DOJ to revoke Zeleny's Entertainment Firearms Permit, and when that failed, to wait out the term of that permit until it expired.  Robinson Decl., Ex. Z.  The process took nearly two years.

At each stage of appeal, the City gave Zeleny a shifting series of excuses for the denial, none of which related to the published factors.  *See* Zeleny Decl., Ex. 8 at pp. 10, 11, 20-21, 33-34, 49; Robinson Supp. Decl., Ex. 2 at 467-469.  City staff submitted no evidence on the factors, *e.g.*, traffic surveys, measurements, or evidence of impact.  *See generally* Zeleny Decl., Ex. 8 & Ex. 9 at p. 12; Robinson Supp. Decl., Ex. 5 at 94-97, 103-104. Instead, Bertini, on behalf of City staff, argued for affirmance of the denial on content-based grounds, claiming that Zeleny's production **might be** deemed "obscene as to minors."  Zeleny Decl., Ex. 9 at pp. 6, 8, 9 ("The new reason today regarding this graphic has to do with the content of the graphic, is that right?  That's correct."); Robinson Supp. Decl., Ex. 1 at 136-137, 139, 141-143; *id.*, Ex. 2 at 472-476.

**F.      Zeleny Applied for a Film Permit and the City Gave Him the Run-Around.**

During the SEP appeal, the City suggested Zeleny apply for a film permit instead.  *Id.*, Ex. 2 at 481.  After the denial, he applied for a film permit in September 2017.  Zeleny Supp. Decl. ¶ 9.

The City again failed to follow its stated process.  The City ignored Zeleny's application for a month.  *See* Decl. of Nicolas Flegel [Dkt. No. 160-2] Ex. G.  Bertini and the City Attorney then intercepted Zeleny's application again.  Robinson Supp. Decl., Ex. 1 at 121.   Bertini took it upon himself to give "guidance" to City staff responsible for the application, although he is not involved in the process.  Eventually, the City Attorney's Office took over.  Robinson Decl., Exs. AA, BB; Zeleny Decl., Exs. 11, 13; Robinson Supp. Decl., Ex. 2 at 497-98, 505-506.

The City Attorney's Office then demanded a host of irrelevant and content-based information having no connection to the official permitting policy.  Zeleny Decl., Ex. 13 at MP-1425 to 1426; Robinson Supp. Decl., Ex. 2 at 513-14.  Among other things, they demanded to know the names of Zeleny's cast and crew, who supplied his firearms, the serial number of all firearms, and the relevance of certain elements of his presentation—ostensibly to "analyze public safety concerns" not in any policy.  Flegel Decl., Ex. J, K.  These questions were at the behest of the

MPPD, so that it could investigate participants.  Robinson Decl., Ex. 4 at 131, 154-155.

None of this information has been required of other applications.  For example, while the City was "reviewing" Zeleny's application, the producers of HBO show "Billions" obtained a permit to drive a 30-foot camera rig down the same stretch of Sand Hill Road.  The City required none of this type of information and issued a permit *within days*.  Robinson Decl., Ex. Y; *see also* Robinson Supp. Decl., Ex. 7 (application approved in six days for filming from the median of Sand Hill Road).  The City did not demand that these applicants submit anywhere near detail requested of Zeleny—much less content-based information about their productions and participants.

Zeleny declined to provide the irrelevant, content-based information the City demanded, which was not required by the application itself.  He urged the City to move forward.  Flegel Decl., Exs. M, N, P; Zeleny Decl., Exs. 11, 13.  The City Attorney's office declined to proceed with the application, which it did not "consider[] complete."  Flegel Decl., Ex. Q.

**G.      The City Refused to Disclose Time, Place, or Manner Standards.**

At all times, Zeleny made clear that he was willing to comply with all reasonable time, place, and manner requirements.  He repeatedly asked the City to simply tell him what they were and what standard he had to meet.  Zeleny Decl. ¶ 37 & Exs. 7, 8 at pp. 24, 46; *id.*, Ex. 11, 13.  The City refused.  *See* Robison Supp. Decl., Ex. 2 at 447-48.  Instead, it denied or refused to process his applications without specifying any content-neutral guidelines.  Zeleny Decl., Ex. 8 at pp. 20-21.

**III.    ARGUMENT**

**A.      The City's Permit Processes Are Unconstitutional Under *Epona*.**

As detailed in Zeleny's Motion, the City's processes for SEPs and film permits fail under *Epona*.  The City offers no argument to justify its policies and fails even to cite *Epona*.

**1.      Permitting Requirements are Closely Scrutinized.**

Permitting requirements applied to First Amendment activity are prior restraints.  *Epona*, 876 F.3d at 1221; *Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097, 1100 (9th Cir.1998).  Prior restraints are "the most serious and least tolerable infringement" on First Amendment rights.  *Grossman v. City of Portland*, 33 F.3d 1200, 1204 (9th Cir.1994) (citation omitted).

"While prior restraints are not unconstitutional *per se*, any system of prior restraint comes to

this Court bearing a heavy presumption against its constitutional validity." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (quotation marks and alterations omitted).

> It is settled … that an ordinance which makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship.

*Id.* (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969); alterations omitted).

The grant or denial of a permit must be governed by "narrow, objective and definite standards." *Epona*, 876 F.3d at 1222 (*quoting Shuttlesworth*).  The standards "must be sufficiently specific and objective" to limit discretion.  *Id.* (*quoting Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996)).  A scheme that grants an "impermissible degree of discretion" is unconstitutional.  *Id.*

The process must also have procedural safeguards, requiring prompt and decisive action.  "[A] prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible." *FW/PBS, Inc.*, 493 U.S. at 226 (*citing Freedman v. State of Md.*, 380 U.S. 51, 59 (1965)).  The government must "within a ***specified, brief*** period, either issue a license or go to court. *Freedman*, 380 U.S. at 59; *see also Riley v. Nat'l Fed. of the Blind*, 487 U.S. 781, 802 (1988) (invalidating statute without explicit time for limit) (emphasis added).

## 2.    The SEP Process Is Unconstitutional Under *Epona*

### a.    The SEP Process Has No Objective Standards.

The grant or denial by the City of an SEP is "at the discretion of the [SEP committee]." Robinson Decl., Ex. R. at MP-1820.  The City has no ***objective*** criteria.

As an initial matter City has discretion to decide if an event is "special" enough to warrant a permit even where written policy covers it.  Robinson Supp. Decl., Ex. 1 at 20-21; *id.*, Ex. 2 at 371-72.  Deciding if an event is "special" or a "community-type" event is the opposite of objective.

Even if the City decides that an event qualifies, it has no objective standard to determine whether to issue a permit.  If one criterion "confers an impermissible degree of discretion, the specificity of a separate condition will not save the scheme." *Epona*, 875 F.3d at 1224.  The FAQ lists "abstract," "ambiguous and subjective" factors of the type that that courts have invalidated—

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OF CITY OF MENLO PARK AND DAVE BERTINI

1    *e.g.*, "past practices/experiences," "intended use" (without explanation of what uses are allowed),

2    and "community impact."  *See id.* (reversing summary judgment where criteria included

3    "compatible with existing and potential … uses," and not "impair[ing] the utility of neighboring

4    property"); *Moreno Valley*, 103 F.3d at 818 (reversing where criteria included "harmful to the

5    community's health, welfare, or 'aesthetic quality'").  These fuzzy factors do not limit discretion.

6          Those criteria that appear somewhat objective have no guiding standards.  The City lists

7    "size," "scale," and "location," but has no guidelines for defining an appropriate size or location, or

8    what impact on City resources is excessive.  Robinson Supp. Decl., Ex. 2 at 241-247.  No evidence

9    of impact is required and City staff are not required to make factual findings.  *See generally*

10   Robinson Decl., Ex. R; Zeleny Decl., Ex. 9 at p. 12; *Moreno Valley*, 103 F.3d at 818 (striking down

11   ordinance allowing officials to "deny a permit without offering any evidence to support the

12   conclusion"); *Epona*, 876 F.3d at 1224 (invalidating due to "lack of a requirement that permitting

13   officials support their decision with objective evidence"); *Weaver v. Montebello*, 370 F.Supp.3d

14   1130, 1136 (C.D. Cal. 2019) (issuing injunction where ordinance did not require factual findings).

15         Worse, as the FAQ makes clear, the list of published criteria is non-exhaustive.  The City

16   can and does consider new factors as it sees fit, including content-based factors, depending on the

17   application.  Robinson Supp. Decl., Ex. 2 at 426-27.  A process that allows officials to add new

18   criteria case-by-case—especially content-based ones—necessarily violates *Epona*.

19         Finally, the City's witnesses have been clear that there is no set timeframe.  Robinson Supp.

20   Decl., Ex. 2 at 247, Ex. 33 at 75, 80.

21             **b.      The SEP Process Covers First Amendment Expression**

22         Rather than defend its SEP process on the merits, the City claims that the SEP process does

23   not "substantially reach or regulate constitutional activity."  Memo. at p. 19.  This is absurd.

24         In the very next sentence, the City acknowledges that the SEP process applies to core First

25   Amendment activity, *i.e.* "concerts," and "movie nights."  Mot. at p. 19.  Elsewhere, it adds "small

26   parades and fundraisers" to the list.  *Id.* at pp. 3.  The process also applies to weddings.  Robinson

27   Supp. Decl., Ex. 2 at 456.  All of these are core forms of protected expression.  See *Epona*

28   (weddings); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 568-69

- 10 -

(parades); *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 65 (1981) ("motion pictures … and live entertainment, such as musical … works"); *Riley*, 487 U.S. at 788-89 (1988) (fundraisers).

The Ninth Circuit rejected a similar argument in *Epona*, which addressed a conditional use permit process.  Under *Epona*, a permitting scheme is subject to facial challenge where it has a "close enough nexus to expression, or to conduct commonly associated with expression" to pose a real threat that "protected speech or conduct will be suppressed," including through self-censorship. 876 F.3d at 1221 (*citing Cty. of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759 (1988)). Even where a permitting scheme does not directly apply to expression, it can be challenged where it "vest[s] broad discretion in permitting officials." *Id.*

The SEP policy plainly has a "nexus" to First Amendment Activity.  The policy is extremely broad, covering any event that draws a crowd, exceeds the noise ordinance, or requires use of streets or sidewalks.  This necessarily encompasses all manner of First Amendment activity, including Zeleny's events, and the examples the City gives.  It also vests improper discretion in City officials.

### 3.    The City's Film Permit Process Is Unconstitutional Under *Epona*

#### a.    The Film Permit Process Is "Completely Discretionary" and Lacks any Time Limits.

As the City admitted during the administrative process, the grant or denial of film permits is "completely discretionary".  Decl. of Todd Master [Dkt. 160-6], Ex. E at p. 44.

There are no objective criteria—or any criteria—governing that discretion.  No criteria for grant or denial appear in the flyer or the application form, which merely spell out logistics such as insurance requirements, business licensing, and indemnification.  Robinson Decl. Ex. U; Zeleny Decl., Ex. 12.  The City admitted in discovery that there are no other written or unwritten policies. Robinson Supp. Decl., Ex. 2 at 481-82.  Staff consider whatever factors they deem appropriate.  *Id.* at 483-487.  Even if an applicant complied with all of the written requirements, the City could still deny an application.  *Id.*  A policy that fails to state any objective standard cannot pass muster.  *See Niemotko v. State of Md.*, 340 U.S. 268, 272 (invalidating statute: "no standards appear anywhere").

Moreover, the City did not limit itself to time, place and manner factors.  As Bertini stated:

Q:    I mean, was this a factor – the exact image or images, was this a

- 11 -

factor that was part of the City's policy before Mr. Zeleny applied for a film permit, or was it a factor that was decided upon based on the application he submitted?

A:   ***This was a factor because of what Mr. Zeleny stated he wanted to do….***

*Id.*, Ex. 2 at 521.  *Epona* does not allow officials to make up whatever factors they see fit.

Defendants' citation of *Thomas v. Chicago Park District*, 534 U.S. 316 (2002) makes Zeleny's point.  In contrast to the City's policy—or lack thereof—the Chicago Park District had an objective, multi-element test, including clear standards such as scheduling conflicts, prior damage to park facilities, and non-compliance with specific use categories.  Chicago had objective criteria limited to time, place, and manner.  Here, the City has "complete discretion" and no official criteria.

Finally, the City has admitted that there is no fixed time period for permitting decisions.  Case in point, the City has been sitting on one application or another from Zeleny ***since 2015***.  This renders the policy unconstitutional *per se*.  *FW/PBS, Inc.*, 493 U.S. at 226.

**b.      The Construction Permitting Process Does Not Govern Film Permits and Fails Under *Epona* In Any Event.**

The City raises a last-minute theory for the first time in its Motion, that film permits are actually governed by its construction encroachment process, citing Menlo Park Municipal Code § 13.18, *et seq.*  This theory is disingenuous, has been waived, and on its face does not apply.

The City's new theory is contrary to all of its discovery responses.  Zeleny specifically asked it to identify any "rule, regulation, ***ordinance***, guideline, or guidance … governing applications for permits of the types that Zeleny has sought," including a film permit.  Robinson Supp. Decl. ¶ 10.  The City, which has engaged in repeat discovery abuse, *see, e.g.*, Discovery Order [Dkt. No. 117], Discovery Order [Dkt. No. 157], answered three times—in February 2019, March 2020, and May 2020.  It never mentioned Municipal Code § 13.18, *et seq.*  Robinson Supp. Decl., Ex. 8 at pp. 6-7, Ex. 9 at 11-12, Ex. 10 at 9-10.  Nor did the City produce these Code sections.  It only produced the sections governing firearms.  Robinson Supp. Decl. ¶ 15.

The City's witnesses also contradicted this new theory.   Bertini, the Rule 30(b)(6) designee, and Nicolas Flegel, the City's declarant, testified that they were not aware of any applicable Municipal Code sections.  Robinson Supp. Decl., Ex. 1 at 240; *see also id.*, Ex. 13 (Rule 30(b)(6)

- 12 -

topics); *id.*, Ex. 4 at 76 ("Any specific sections of those codes that you're aware of that staff would be looking at? … A. No."). Both testified that the two-page flyer and application form were the only policies. *Id.*, Ex. 2 at 481-82; *see also id.*, Ex. 4 at 79, 102.

The City also waived this new argument. Witnesses are not allowed to contradict their deposition testimony by declaration. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). A party "cannot present a theory of facts that differs from that articulated" by its Rule 30(b)(6) designee. *Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018). The City's failure to present this argument prior to summary judgment is highly prejudicial because it precluded any examination of these witnesses on the Municipal Code. *See* Robinson Supp. Decl. ¶ 16. *See Cambridge Elec. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323-24 (C.D. Cal. 2004).

The argument also fails on the merits. The encroachment process on its face applies to construction, not film permits. The Municipal Code nowhere mentions "filming," "film," or "film permits." The "Regulations" section of the code, which the City now claims is its governing standard, applies to "[t]he construction, operation, maintenance, and repair of ***facilities***."[2] Municipal Code § 13.18.110. It lists various construction standards—*e.g.*, "hours of construction activities," "graffiti-resistant finish material," and landscaping—none of which apply to filming.

By contrast, the film permitting guidelines contain different requirements, specific to filming. The City treats these as separate "film permit requirements," not encroachment requirements. *See*, *e.g.*, Flegel Decl., Ex. F at p. 2 (referring to the "film permit application process" and "film permit requirements"); *see also* Robinson Supp. Decl., Ex. 4. At 93; Ex. 11 at MP-1801. They require a "description of the nature of the filming … a list of all equipment involved in the filming … the number of cast and crew members" and "an indication of any special needs." Robinson Decl., Ex. U. None of these requirements appears in the encroachment process.

Nor did the City apply the routine encroachment process to Zeleny. The only requirements

---

[2] Facility" means "pipe, pipeline, tube, main, service, trap, vent, vault, manhole, meter, gauge, regulator, valve, conduit, wire, tower, pole, pole line, anchor, cable, junction box, transformer or any other material, structure or object of any kind or character, whether enumerated herein or not, which is or may be lawfully constructed, left, placed or maintained in, upon, along, across, under or over any public right-of-way."

for an encroachment application are:

> the name of the applicant; the name, address, telephone number, and business information for the owner or contractor on behalf of whom the applicant is submitting the application; the location and a description of the work to be done; and the approximate time which will be required to complete such work.

The City may also require a map. *Id.* The City, however, demanded a host of information from Zeleny nowhere on this list, related directly to filming—*e.g.*, Zeleny's cast and crew. The City also considered vague substantive factors such as "public safety" and traffic impact not listed in the encroachment regulations. Mr. Flegel testified that film permits are decided upon by a committee of various departments, rather than the Director of Public Works, which handles encroachment permits. Robinson Supp. Decl., Ex. 4 at 59; *compare* Municipal Code §§ 13.18.020(a), 13.18.110(a). The City's much-belated invocation of the encroachment process is simply phony.

Even if the City could graft this construction standard onto film permits for litigation purposes, it still would not satisfy *Epona*. The encroachment process has no objective or definite criteria. The Director of Public Works has unbridled discretion to impose any "directives or additional conditions" he chooses. *Id.* § 13.18.110(a). The process remains "completely discretionary." There is also no specified timeline or requirement to provide reasons for the denial, other than in the case of cable television franchises. *See Id.* § 13.18.040.

### 4. The Permitting Processes Were Unconstitutional as Applied.

#### a. The City Ignored Its Own SEP Process.

The City did not follow its SEP process, but made up a new one specifically for Zeleny's application. Robinson Supp. Decl., Ex. 3 at 149-150 ("Is there a procedure for processing an application the way you decided to do with Mr. Zeleny's?  A.  Not that I recall…").

Bertini and/or the City Attorney decided his application without ever submitting it to the SEP committee. They did so while Bertini was working with NEA. *See* Robinson Decl., Ex. W; Robinson Supp. Decl., Ex. 2 at 381, Ex. 3 at 138. This had never been done before in the City's history. Robinson Supp. Decl., Ex. 1 at 51. They decided the application based on factors outside City policy, including the now-retracted theory that Zeleny's event was not a "special event." Zeleny Decl., Ex. 8 at p. 21.

- 14 -

At no point did the City offer any evidence or make any findings on the criteria listed in its policy, or any other "time, place, and manner" criteria.  It denied the application based on a shifting series of excuses not part of official policy and without evidence of impact.  *See Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 653-54 (9th Cir. 2009) (courts have "never accepted mere conjecture as adequate to carry a First Amendment burden," and do not accept "hypotheticals and vague allusions to practical experience").  The City repeatedly denied Zeleny's application because it determined, ***in its unbridled discretion***, that his event did not qualify as "special," and the illogical argument—unrelated to its stated policy—that "open carry" without a permit is illegal.

Although the City now claims that it had a number of questions about Zeleny's event, it failed to follow its own interactive process.  *See* Robinson Decl., Ex. U at p. 1; Robinson Supp. Decl., Ex. 2 at 376, Ex. 3 at 42, 78-79, 120-121.   It did not set up a meeting with Zeleny, allegedly for "Zeleny's convenience"—instead, denying his application so that the had to attend a number of in-person hearings.  Robinson Supp. Decl., Ex. 1 at 77, 78; *id.*, Ex. 3 at 92.  Zeleny's multiple calls to the City to follow up went unanswered and unreturned.  Zeleny Decl. ¶ 38.

Finally, it took the City over two years to process Zeleny's SEP application.

### b.     The City Failed to Follow Its Published Film Permit Process.

Once again, Bertini and the City Attorney's Office intercepted and took over Zeleny's permit application.  Robinson Decl., Ex. AA, BB.  At the behest of the MPPD, the City Attorney then peppered Zeleny with a host of content-based questions, wholly unrelated to the City's minimal "policies" governing film permits.  Zeleny Decl., Exs. 11, 13.  When Zeleny refused to answer any more irrelevant, content-based questions, the City refused to process his application.  His application has now been "pending" for more than three years.  This is not remotely compliant with the process required by the First Amendment.

## B.     The City Defendants' Ripeness and Mootness Defenses Fail

### 1.     The City Defendants' Ripeness Argument Defies Established Law.

#### a.     The City Cannot Avoid Review by Shelving the Application.

The City audaciously claims that Zeleny's as applied challenge to the film permitting process—but not his facial challenge—is unripe because the City has failed to process Zeleny's

- 15 -

application since 2017.  *See* Robinson Supp. Decl., Ex. 1 at 124, 125 (acknowledging that application itself is complete).  This argument is directly contrary to precedent.

The City cannot avoid judicial review by asserting a "pocket veto" on permit applications and shelving them indefinitely.  An indefinitely delay is the same thing as an arbitrary denial. *FW/PBS, Inc.*, 493 U.S. at 226; *Riley*, 487 U.S. at 802 ("delay compels the speaker's silence").

The City's efforts to blame Zeleny are irrelevant and inaccurate.  It was up to the City to process the application—not Zeleny.  Zeleny explicitly declined to provide further, content-based information not relevant to the City's stated policy.  *See* Robinson Supp. Decl., Ex. 2 at 528-529 ("So this request by Mr. Flegel is outside of the written and unwritten policy of the City of Menlo Park; true?  A.  Yes"). He did so after the City had already delayed his SEP application for two years; recommended that he apply for a film permit and then delayed that process by two months; and refused to tell him what the standard was for permits.  As would any reasonable person, Zeleny simply urged the City to process his application as filed.  *See* Zeleny Decl., Ex. 11 ("As we say in Hollywood, let's cut to the chase"); Ex. 13.

The City was required to promptly "issue a license or go to court."  *Freedman*, 380 U.S. at 59.  If the City believed that Zeleny's application was "incomplete," it was up to the City to deny on that basis and take its chances on judicial review.  It was not allowed to just do nothing.

   **b.**  **Zeleny Was Not Required to Exhaust a Defective Process.**

As an initial matter, as the City acknowledges, Zeleny's facial challenge is not subject to its ripeness argument "because a facial challenge by its nature does not involve a decision applying the statute."  *Hacienda Valley Mobile Estates v. Cty. of Morgan Hill*, 353 F.3d 651, 655 (9th Cir. 2003).

The City fails to mention that the same analysis applies to a challenge to a defective administrative process, rather than a specific decision.  *Gibson v. Berryhill*, 411 U.S. 564, 575 (1973).  In such cases, the question of whether the administrative process was adequate, "is for all practical purposes identical with the merits" and no exhaustion is required.  *Id.*  A plaintiff is not required to wade through a constitutionally-deficient process for years to challenge it.  *Id.*; *see also Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1089-90 (9th Cir. 2003) (noting that a procedural challenge is ripe as soon as the failure to observe proper procedures occurs).

It is settled law that a person may challenge a defective permit scheme, "without the necessity of first applying for, and being denied, a license." *Cty. of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755-56 (1988).  Due to the prospect of self-censorship, "the prior restraint of a licensing provision coupled with unbridled discretion itself amounts to an actual injury" even if the plaintiff does not seek a permit.  *Prime Media, Inc. v. Cty. of Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007).  Zeleny has been subject to concrete harm by being delayed for years in engaging in protected expression.  *See also Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 830-31 (9th Cir. 2003) ("[e]ven if the County relented today and issued all of the permits … he still would have been injured by the treatment he allegedly received"); *Harris v. Cnty. of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990) (noting that even absent an "authoritative determination," depriving plaintiff of use of land during permit process amounted to "actual, concrete injur[y]").

A plaintiff is not required to submit to "an unreasonable or indefinite timeframe for administrative action." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992) (citing cases) (superseded by statute on other grounds, see 42 U.S.C. § 1997e(a)); *Smith v. Ill. Bell Tel. Co.*, 270 U.S. 587, 591-92 (1926) (noting a plaintiff "is not required to indefinitely await a decision").  "The lack of a reasonable time limit in the … administrative [process] renders it inadequate" as a matter of law. *Coit Independence Joint Venture v. Fed. Sav. & Loan Ins. Corp.*, 489 U.S. 561, 587 (1989).

The City's cases are wildly off-point.  *Manufactured Home Communities, Inc. v. City of San Jose*, 420 F.3d 1022 (9th Cir. 2005) and *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957 (9th Cir. 2011), apply the *Williamson County* standard for ripeness, which is (a) a heightened standard applicable to land use and takings; and (b) has been overruled.  *See Mi Pueblo San Jose, Inc. v. City of Oakland*, No. 06-4094, 2006 WL 2850016, at *6 (N.D. Cal. Oct. 4, 2006) ("both parties are mistaken to focus on *Williamson County*"); *Knick v. Township of Scott, Penn.*, __ U.S. __, 139 S.Ct. 2162 (2019).  In First Amendment cases, "the Supreme Court has dispensed with rigid standing requirements," including formal ripeness. *Cal. Pro-Life Council v. Getma*n, 328 F.3d 1088, 1094 (9th Cir. 2003).  Zeleny's inability to put on his events without threat of prosecution satisfies ripeness in this context.  *See* Zeleny Supp. Decl. ¶ 7; *Porter v. Gore,* 354 F.Supp.3d 1162, 1175 (S.D. Cal. 2018) ("self-censorship is enough to overcome a ripeness challenge").

1    The City's other cases are equally distinguishable.  *Thomas v. Anchorage Equal Rights*

2    *Comm'n*, 220 F.3d 1134 (9th Cir. 2000), involved a criminal statute rather than a permitting

3    requirement.  Because there was no specific threat of enforcement and no clear plan to violate the

4    statute, the plaintiff lacked standing.  *Id.*  Where the regulation governs affirmative expression, a

5    preemptive challenge is allowed.  *Arizona Right to Life PAC v. Bayless*, 320 F.3d 1002, 1006 (2003)

6    ("hold your tongue and challenge now" approach) (citing cases).  Finally, *Abbott Laboratories v.*

7    *Gardner*, 387 U.S. 136 (1967) involved administrative rulemaking, and held that final rules were

8    required before they could be challenged.  This obvious point has no application here.

### 2.    The City's Mootness Argument Misses the Point.

10    The City's supposed lack of ownership of the median was not raised in the permitting

11    process or the first two and a half years of this case.  This new evasion fails for several reasons.

### a.    The City's Asserted Lack of Ownership Is Irrelevant.

13    As an initial matter, the City's purported lack of ownership is irrelevant to whether the

14    permitting process is constitutional.  Even if the City could have denied Zeleny's application in

15    2015, that does not speak to whether the ***process itself*** was constitutional.  The City cannot force

16    Zeleny to go through the futile permit process a third time based on a theory that it never raised.

17    The City Defendants bear a "heavy" burden.  *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241,

18    1244-45 (9th Cir. 1988).  It must be truly "impossible for the court to grant effectual relief

19    whatever." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).  The City Defendants must show that

20    Zeleny cannot be given "*any* effective relief"—not merely the "precise relief sought" in his

21    complaint.  *Nw. Environmental*, 849 F.2d at 1244-45 (noting that court could expand injunction to

22    give effective relief); *see also Garcia v. Lawn*, 805 F.2d 1400, 1402-03 (9th Cir. 1986).

23    Zeleny seeks effective relief regardless of who owns the median.  He seeks a declaration that

24    the City's permitting process is unconstitutional, and for an injunction prohibiting Defendants from

25    enforcing the permitting process and requiring them to issue him a permit.  SAC at p. 42 ¶ F.[3]  His

26    ---

[3] Zeleny is also entitled to nominal damages as a matter of law under 42 U.S.C. § 1983.  *Hazel v. Crofoot*,

27    727 F.3d 988, 991-92 (9th Cir. 2013); *see also Bernhardt v. Cnty of Los Angeles*, 279 F.3d 862, 872 (9th Cir.
2002) (nominal damages "will prevent dismissal for mootness").

28

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OF CITY OF MENLO PARK AND DAVE BERTINI

1   request is not limited to an injunction at the median strip on Sand Hill Road.

2        Zeleny made clear to the City that he would relocate if needed.  Zeleny Supp. Decl. ¶ 8;

3   Master Decl., Ex. F at 25:8-11 ("If the median strip is not acceptable to the City, I would be happy

4   to move to the side of the road").  The City's permitting process is defective and applies regardless

5   of where he seeks to stage his protest events—on the median, on the sidewalk or roadside, or

6   anywhere else in Menlo Park.  By invalidating the process and ordering the City to issue a permit,

7   the Court can grant effective relief.

8              **b.        The City Waived Its New Theory.**

9        As the City acknowledges, it failed to raise its alleged lack of ownership during the permit

10  process.  Mot. at p. 9.  "A party forfeits arguments that are not raised during the administrative

11  process."  *See Lands Council v. McNair*, 629 F.3d 1070, 1076 (9th Cir. 2010).  It was up to the City

12  to raise this issue so that Zeleny could address it, *e.g.*, by offering to relocate.  It is too late now.

13       The City also failed to raise this issue in its pleadings.  It alleged that it requires "any and all

14  person wishing to film within *the public right-of-way*" to have a permit.  Answer to Second Am.

15  Compl. [Dkt. No. 101] ¶ 4.  The City has not sought leave to amend.

16       The City first raised this theory in supplemental interrogatory responses more than *two years*

17  into this case, very late in discovery.  Robinson Supp. Decl. ¶¶ 11-13 & Ex. 8 at 2-3, Ex. 9 at 3, 6-7.

18  It waited until three days after the deposition of its declarant, Mr. Flegel.  *Id.* ¶ 12.  It refused to

19  allow its 30(b)(6) designee to testify about the theory, asserting privilege.  *Id.*, Ex. 2 at 261-63.

20       This tactic was highly prejudicial.  Robinson Supp. Decl. ¶ 13.  A party may not raise new

21  defenses at summary judgment where it is prejudicial.  *Magana v. Com. of N. Mariana Islands*, 107

22  F.3d 1436, 1446 (9th Cir. 1997).  By waiting until the end of discovery, the City precluded Zeleny

23  from any effective examination.  It is also improperly using the privilege as a "sword and shield,"

24  relying on Mr. Flegel as the basis for this theory, while refusing to allow any testimony about

25  discussions with him.  *See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham,*

26  *Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001).

27            **c.        The City's New Theory Fails on the Merits.**

28       In any case, the theory fails to establish as a matter of law that Zeleny's claims are moot.

1   Regardless of whether Caltrans owned the mediation and its authorization were needed for an event,

2   the City's authorization was also required—as the City argues elsewhere.  Mot. at p. 17.

3        Regardless of who owned the median, Zeleny would still be subject to arrest and prosecution

4   by Menlo Park authorities if he staged his event on it.  The median is within City limits and the City

5   has criminal jurisdiction.  Robinson Sup. Decl., Ex. 2 at 263-65.  The MPPD still could and would

6   arrest Zeleny if he staged his events without a permit.  *See id.*; Cal. Pen. Code § 830.1(a)(1); *People*

7   *v. Martin* (1966) 225 Cal.App.2d 91, 93-94.  The City has "plenary" police power within its limits.

8   See Cal. Const., Art. 11, § 7; *Sierra Club v. Napa Cnty.* (2012) 205 Cal.App.4th 162, 172.

9        California Streets & Highways Code § 90 does not address this issue.  It relates to the

10  design, construction, and maintenance of state highways.  It does not purport to revoke the City's

11  "plenary" authority to enforce criminal laws within the city limits.

12       More fundamentally, the City has failed to submit any *admissible* evidence that Caltrans

13  "owns" the median.  It has not presented any evidence of ownership—*e.g.*, a deed, dedication, or

14  parcel map.  Its only evidence is a smattering of Caltrans contracts and maps, shoved in front of the

15  Court without analysis.  Mr. Flegel is not competent to authenticate them, much less to offer

16  opinion testimony on what they mean.  *See* Evidentiary Objections.

17       The records that the City does submit are ambiguous and insufficient to carry the City's

18  "heavy" burden as a matter of law.  They tend to show the opposite of what the City claims – *i.e.*,

19  that the City is responsible for permits.  They designate the median as a "r[ight] of way area

20  *maintained by City*."  Flegel Decl., Ex. C at MP-6667.  Permitting is deemed a maintenance

21  function.  *Id.* at MP-6668, 6669.  Further, the contracts state that the City will issue permits, except

22  for utility lines, driveways, and similar "major encroachments" inapplicable here.  *Id.* at MP-6664.

23       Finally, even if the City were right on interpretation, its approval would still be required.

24  Streets & Highways Code § 682.5(a) provides that Caltrans will not issue a permit within city limits

25  without "an acknowledgement by the city."  An "acknowledgement" means "issuance by a city …

26  of *a special event permit* … or letter of permission authorizing the special event."  *Id.*, subd. (c).

27       **C.      The City's "Time, Place and Manner Reasons" Are Irrelevant.**

28       The City misses the point by arguing that it has legitimate "time, place, and manner reasons"

1   for denying Zeleny's applications.  The point of *Epona* and similar cases is that a City can always

2   come up with plausible justifications in hindsight.  *See Cty. of Lakewood*, 486 U.S. at 758 ("*post*

3   *hoc* rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too

4   easy").  The City was required to have a ***sufficient process*** at the outset and to tell Zeleny up front

5   what its standards were.  The City failed these requirements.

6               **1.**      **The Denial Was Content-Based.**

7         Content-based restrictions are "presumptively unconstitutional," *Reed v. Town of Gilbert,*

8   *Ariz.*, 576 U.S. 155, 163 (2015) (citation omitted), and "almost always violate the First

9   Amendment."  *Dish Network Corp. v. FCC*, 653 F.3d 771, 778 (9th Cir. 2011).  In order to be

10  content neutral, the decision must be made "without reference" to content.  *Ward*, 491 U.S. at 791

11        The City's decision was not made "without reference" to content.  *See, e.g.*, *Kurland v. Cty.*

12  *of Providence*, 2020 WL 5821091, at *11 (D.R.I. Sept. 30, 2020) (denying summary judgment

13  based on factual question as to whether decision was content based).  While the City insists that its

14  decisions were content-neutral, there is abundant evidence to the contrary—particularly in light of

15  the City's history with Zeleny.  *See* Robinson Decl., Exs. I, J. K, and L.

16        The City Manager explicitly listed "obscenity laws" as a basis to deny Zeleny's SEP, despite

17  making no finding that Zeleny's content was obscene.  Zeleny Decl., Ex. 8 at p. 11.  Bertini made

18  clear in multiple hearings that he considered Zeleny's content "important, salient information".

19  Robinson Supp. Decl., Ex. 2 at 476.  He made sure to include an image of one of Zeleny's

20  cartoons, depicting sexual activity, in his presentation.  Robinson Decl., Ex. CC at MP-1199.  The

21  City also repeatedly demanded content-based information.  *See, e.g.*, Zeleny Decl., Exs. 11, 13.

22        Moreover, throughout the permitting process, Bertini was working directly with the subject

23  of Zeleny's protests, NEA, to develop a "combined response."  Robinson Decl., Ex. W.   He told

24  NEA that the City intended to deny the application *months* before he even told Zeleny.  *Id.*

25              **2.**      **Heightened Scrutiny Applies Because Medians Are Pubic Fora.**

26        The City is wrong in arguing—without authority—that a median is not a traditional public

27  forum.  Courts have consistently held the opposite.  *See, e.g., Satawa v. Macomb Cnty. Road*

28  *Comm'n*, 689 F.3d 506, 520-22 (6th Cir. 2012); *Cutting v. City of Portland*, 802 F.3d 79, 83 (1st

1  Cir. 2015); *McGraw v. Oklahoma City*, 973 F.3d 1057, 1069-70 (10th Cir. 2020); *Reynolds v.*

2  *Middleton*, 779 F.3d 222, 225 (4th Cir. 2015) ("no question that … streets and medians qualify").

3        Zeleny also proposed moving his events to the sidewalk or the roadside, which are also

4  quintessential public fora. *Comite de Jornaleros de Redondo Beach v. Cty. of Redondo Beach*, 657

5  F.3d 936, 945 (9th Cir. 2011).  The City refused to allow Zeleny's protests on any of these sites.

6                **3.      The City Cannot Justify an Outright Ban on Zeleny's Events.**

7        In traditional public fora, "the rights of the state to limit expressive activity are sharply

8  circumscribed." *Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45 (1983).

9  Restrictions on speech in public fora, particularly prior restraints, "are presumptively invalid."

10 *Long Beach Area Peace Network*, 574 F.3d 1011, 1021 (9th Cir. 2009).

11       Restrictions in a public forum must be (1) "justified without reference to [] content"; (2) be

12 "narrowly tailored to a significant" interest; and (3) "leave open ample alternative channels for

13 communication." *Ward*, 491 U.S. 781.  "The failure to satisfy any single prong … invalidates the

14 requirement." *ACLU of Nev. v. Cty. of Las Vegas*, 466 F.3d 784, 792 (9th Cir. 1984).

15       "The burden of justification is demanding and it rests entirely on the [City]." *United States*

16 *v. Virginia*, 518 U.S. 515, 533 (1996).  The City must "demonstrate that the recited harms are real,

17 not merely conjectural, and that the regulation will in fact alleviate those harms in a direct and

18 material way." *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 666 (1994).  Any decision must be

19 "***based on substantial evidence***." *Id.* (emphasis added); *see also Cty. of Los Angeles v. Alameda*

20 *Books, Inc.*, 535 U.S. 425, 428 (2002) (plurality).

21                **a.      The City's "Open Carry Is Illegal" Excuse Is Pretextual.**

22       The City's current rationale is that "California statutory law prohibit[s] the open carry of

23 firearms."  Mot. at 14.  In other words, the City refuses to give Zeleny the permit he needs to carry

24 legally because *without that permit* it would be illegal.  This circular argument is absurd.  It is not a

25 reason for denying a permit; it's why Zeleny needs one.  The City cannot "get away with shoddy …

26 reasoning" when it comes to the First Amendment. *Alameda Books*, 535 U.S. at 426.

27       The City's argument that Zeleny's production does not (really) qualify as a video production

28 or entertainment event is flatly wrong and amounts to an unconstitutional, content-based restriction.

As a factual matter, Zeleny has been making installments of a documentary about NEA's support of Min Zhu, a morally unfit executive, since 2009.  He intends to continue.

It is also not up to the City to decide whether Zeleny's events truly qualify as entertainment or video production.  Distinguishing different forms of entertainment or videos is the height of impermissible, content-based restrictions.  The City may not distinguish between Zeleny's one-man production and a major blockbuster. *Branzburg v. Hayes*, 408 U.S. 665, 704 (1972) ("liberty of the press is the right of the lonely pamphleteer … just as much as the large metropolitan publisher"). "[T]he legislature is constitutionally disqualified from dictating the subjects about which persons may speak and the speakers who may address a public issue." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 784 (1978); *see also Citizens United*, 558 U.S. at 340.

### b.      There Is No Evidence of the City's Public Safety Grounds.

The City offered no evidence in the permitting process, and submits none now, of any actual public-safety impact.  The record is devoid of substantive evidence, *e.g.*, a traffic survey, analysis of accident history, human factor studies, or the like.  As it did in the permitting process, the City merely presents a description of the event and a blanket conclusion that it poses safety issues.

The First Amendment does not allow this kind of conclusory decision-making.  Conjecture can never "carry a First Amendment burden." *Citizens for Clean Gov't*, 474 F.3d at 653-54.  The evidence must permit a "reasonable inference" that the prohibited activity will actually cause harm. *Tollis, Inc. v. San Bernardino Cty.*, 827 F.2d 1329, 1333 (9th Cir. 1987).  The City failed to "demonstrate that the recited harms are real, not merely conjectural." *Turner*, 512 U.S. at 666.

The City tries to gloss over its lack of evidence by disparaging Zeleny.  The City asks the Court to assume that Zeleny's events must pose a threat to public safety because Zeleny wants to incorporate unloaded firearms.  This is not how constitutional rights are treated.

The City intentionally ignores that Zeleny engaged in similar activities, at the same location, close to two dozen times without incident.  Not only did MPPD officers not perceive a safety risk, they noted how cooperative Zeleny was.  Robinson Decl., Ex. H; *see also* Robinson Supp. Decl., Ex. 1 at 56-57; *id.*, Ex. 2 at 293; *see also* Robinson Decl., Ex. C ¶¶ 11-12 (expert declaration opining that Zeleny "demonstrated exceptional gun safety and knowledge of applicable law").

- 23 -

1   Contrary to the City's wild speculation, there were no car crashes; no motorists drove "erratically"

2   in response; no passersby tried to storm Zeleny with guns, to engage him in a shootout, or to run

3   him down.  The events were uneventful, aside from exposing the targets of Zeleny's protests, to the

4   consternation of City officials.  Zeleny Supp. Decl. ¶ 3.

5       Rank speculation of potential harms is not a basis to ban speech.  See *Comite de Jornaleros*,

6   657 F.3d at 949; *Porter v. Gore*, 354 F. Supp. 3d 1162, 1179 (S.D. Cal. 2018).

7           **c.    The City Did Not Leave Open "Ample Alternative Channels".**

8       Finally, the City cannot establish that it left open "ample alternative channels" when it flatly

9   prohibited Zeleny's events.  The City refused to address, or even consider, alternatives.  Zeleny

10  repeatedly offered to make any reasonable time, place, and manner adjustments the City proposed.

11  He urged the City to simply tell him what the requirements were.  The City refused while

12  continuing to deny his application for failure to comply with its ever-shifting and unspecified "time,

13  place, and manner" limits.  All it told him is that his event would not be allowed.

14      The City's throw-away argument that Zeleny "did not need a permit to conduct lawful

15  protests," Memo. at p. 16, is preposterous.  If true, all the City had to do was say so.  Instead, it

16  repeatedly and credibly threatened to prosecute Zeleny – after having subjected him to one bogus

17  criminal prosecution already.

18      The City insists that Zeleny's protest events are governed by the City's mandatory

19  permitting processes—*i.e.*, he needs a film permit to film and an SEP for an event.  Flegel Decl.,

20  Ex. L.  The City also asserts that Zeleny must have a permit to comply with state law governing

21  firearms.  If the City's authorization is required, there must be some mechanism for granting it.  The

22  only mechanism is an SEP or film permit.  *Id.*; Robinson Decl., Ex. 1 at 24.  The City cannot close

23  its official processes to Zeleny to prevent him from complying with its own interpretation of state

24  law.  Nor can it require Zeleny to radically change his events—*i.e.*, by giving up his statutory and

25  constitutional right to bear arms—so that it can avoid a decision.  The City cannot force him to trade

26  one right, *i.e.*, to bear arms, for another, *i.e.*, to protest.

27          **D.    Bertini Is Not Entitled to Summary Judgment.**

28      Bertini incorrectly argues that he is entitled to summary judgment on the ground that he no

- 24 -

longer works for the City.  Zeleny is entitled to declaratory relief and nominal damages, notwithstanding Bertini's retirement.  *Hazel*, 727 F.3d at 991-92.  Zeleny is entitled to a judicial finding that Bertini violated his rights.  He is also entitled to attorneys' fees.  42 U.S.C. § 1988.

The basis for Zeleny's claims is that Bertini "actively participated" in—and in fact orchestrated—the City's defective permitting process.  Memo. at p. 23.  The Second Amended Complaint details Bertini's direct and active participation for the benefit of NEA.  The evidence on the parties' cross-motions establish Zeleny's allegations as a matter of law.  Second Am. Compl. ¶¶ 138-172, 176-186; *see also* Robinson Decl., Exs. W, V, AA, BB; Zeleny Decl., Ex. 9 at 6, 8, 9; Ex. 11, Ex. 13; Robinson Supp. Decl., Ex. 1 at 51, 61, 104-06, 136-37, 439, 141-43, Ex. 2 at 256, 371-72, 450-52, 497-98, 505-06; Ex. 3 at 39-40, 53-55, 154; Ex. 6.

A city official is liable under 42 U.S.C. § 1983 if he "does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation" of constitutional rights.  *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 478 F.3d 1175, 1183 (9th Cir. 2007) (citation omitted).  Here, Bertini (i) intercepted Zeleny's permit applications and caused them to be denied; (ii) made the decision, with McClure, to deny those applications; and (iii) urged the City Manager and City Council to affirm the denial on content-based grounds.  Bertini was a driving force behind the deprivation of Zeleny's rights.

Finally, Bertini is not entitled to qualified immunity.  Qualified immunity applies to claims for money damages, not to actions for declaratory relief or actions against an official in his official capacity.  *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Ky. V. Graham*, 473 U.S. 159, 166 (1985).  Zeleny is not seeking money damages.  Moreover, in *Moreno Valley*, 103 F.3d at 821, the Ninth Circuit held that qualified immunity did not apply to a defective permitting scheme because "[f]or over 50 years, it has been clearly established that a licensing scheme is impermissible if it allows officials unfettered discretion."

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the City Defendants' motion should be denied, and summary judgment should be entered in Zeleny's favor on his cross-motion for summary judgment.

//

1    Dated:  2/4/2021                          Respectfully submitted,

2                                              s/ Damion Robinson
                                               _____
3                                              David W. Affeld
                                               Brian R. England
                                               Damion D. D. Robinson
4                                              Affeld Grivakes LLP

5                                              Attorneys for Plaintiff Michael Zeleny

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OF CITY OF MENLO PARK AND DAVE BERTINI

1

## **PROOF OF SERVICE**

2

     I hereby certify that on February 4, 2021, I electronically filed the foregoing document
using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will
3   send a notice of electronic filing to the interested parties.

4

                    s/ Gabrielle Bruckner
5                      Gabrielle Bruckner

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
OF CITY OF MENLO PARK AND DAVE BERTINI