1  XAVIER BECERRA
   Attorney General of California
2  ANTHONY R. HAKL
   Supervising Deputy Attorney General
3  JOHN W. KILLEEN
   Deputy Attorney General
4  State Bar No. 258395
    1300 I Street, Suite 125
5   P.O. Box 944255
    Sacramento, CA 94244-2550
6   Telephone:  (916) 210-6045
    Fax:  (916) 324-8835
7   E-mail:  John.Killeen@doj.ca.gov
   *Attorneys for Defendant Xavier Becerra*

8

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13

14  **MICHAEL ZELENY, an individual,**          Case No. 3:17-cv-07357 RS (NC)

                                    Plaintiff,   **REPLY MEMORANDUM IN SUPPORT**
15                                              **OF MOTION FOR SUMMARY**
                                                **JUDGMENT BY CALIFORNIA**
16           v.                                 **ATTORNEY GENERAL XAVIER**
                                                **BECERRA**
17  **GAVIN NEWSOM, an individual, in his**
    **official capacity; XAVIER BECERRA, an**   Date:        March 18, 2021
18  **individual, in his official capacity; CITY OF**  Time:        1:30 p.m.
    **MENLO PARK, a municipal corporation;**    Dept:        Courtroom 3, 17th Floor
19  **and DAVE BERTINI, in his official**       Judge:       The Honorable Richard G.
    **capacity,**                                            Seeborg
20                                              Trial Date:  None set
                                   Defendants.   Action Filed: 12/28/2017
21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3
   I.    California's Restrictions on the Open Carry of Unloaded Firearms Do Not
       Violate the First Amendment on Their Face ............................................................. 1

4
   II.   California's Restrictions on the Open Carry of Unloaded Firearms Do Not
       Violate the Second Amendment on Their Face ...................................................... 3

5

6
       A.    There Is No Right Under the Second Amendment to Carry
             Unloaded Firearms for the Purpose of "Amplifying" One's Protest .......... 3

7
       B.    Zeleny Did Not Plead That He Intended to Bear Loaded or
             Concealed Firearms for Self-Defense, and Has Therefore Waived

8
             an Argument Based on Self-Defense ......................................................... 3

9
       C.    To the Extent That Zeleny Is Allowed to Assert a Second
             Amendment Right to Loaded Open Carry Based on Self-Defense
             for the First Time, California's Restrictions on Loaded Open Carry

10
             Do Not Violate the Second Amendment .................................................... 6

11
   III.  California's Restrictions on the Open Carry of Firearms Do Not Violate the
       Equal Protection Clause .......................................................................................... 7

12
   IV.  Zeleny Does Not Appear to Fall Within a Statutory Exception to the Open
       Carry Laws; but Even if He Did, That Would Not Prevent Menlo Park

13
       from Imposing Reasonable Conditions on His Protest, Including on His
       Use of Firearms ...................................................................................................... 8

14
       A.    Zeleny Likely Does Not Qualify for the Entertainment Exception ........... 9

15
       B.    Even if the Court Were to Declare That Zeleny Qualified for the
             Entertainment Exemption, That Would Not Mean That Menlo

16
             Park's Regulation of Zeleny's Activities Was Unconstitutional. ............. 12

17
   V.   Penal Code Section 26405(r) Is Not Unconstitutionally Vague .......................... 12

   VI.  Conclusion ........................................................................................................... 13

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Page**

3

CASES

4

*Ai v. United States*
   809 F.3d 503 (9th Cir. 2015)....................................................................................12

5

6

*Coleman v. Quaker Oats Co.*
   232 F.3d 1271 (9th Cir. 2000)..............................................................................4, 5

7

*Donovan v. Royal Logging Co.*
   645 F.2d 822 (9th Cir. 1981)...................................................................................12

8

9

*Flanagan v. Harris*
   No. LA CV16-06164 JAK, 2018 WL 2138462 (C.D. Cal. May 7, 2018) ....................... *passim*

10

*Grayned v. City of Rockford*
   408 U.S. 104 (1972) ...............................................................................................12

11

12

*Knox v. Brnovich*
   907 F.3d 1167 (9th Cir. 2018)...................................................................................1

13

14

*Moran v. Screening Pros*
   No. 2:12-cv-05808-SVW-AGR, 2020 WL 4724307 (C.D. Cal. Jul. 30, 2020).........................8

15

16

*Navajo Nation v. U.S. Forest Service*
   535 F.3d 1058 (9th Cir. 2008)...................................................................................4

17

*Nichols v. Harris*
   17 F. Supp. 3d 989 (C.D. Cal. 2014) ...............................................................2, 4, 7, 8

18

19

*Nordyke v. King*
   319 F.3d 1185 (9th Cir. 2003)...................................................................................1

20

*Pac. Bell Telephone Co. v. City of Walnut Creek*
   428 F. Supp.2d 1037 (N.D. Cal. 2006) ......................................................................8

21

22

*United States v. O'Brien*
   391 U.S. 367 (1968)............................................................................................2, 3

23

24

*Wasco Prods., Inc. v. Southwall Techs., Inc.*
   435 F.3d 989 (9th Cir. 2006)....................................................................................4

25

26

27

28

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3    STATUTES

4    Penal Code

5        § 25400 *et seq.* .................................................................................................4
    § 25850 *et seq.* .................................................................................................4

6        § 26350.............................................................................................................4
    § 26350 et seq. ......................................................................................... *passim*

7        § 26365..........................................................................................................10
    § 26369..........................................................................................................10

8        § 26400.............................................................................................................4

9        § 26400 et seq. ......................................................................................... *passim*
    § 26405(r).................................................................................................8, 9, 12

10

11   CONSTITUTIONAL PROVISIONS

12   United States Constitution
    First Amendment........................................................................................ *passim*

13       Second Amendment ...............................................................................3, 4, 5, 6

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

1    California Attorney General Xavier Becerra submits this reply memorandum in support of

2    his motion for summary judgment (ECF 161):

3    **I.   CALIFORNIA'S RESTRICTIONS ON THE OPEN CARRY OF UNLOADED FIREARMS DO**
      **NOT VIOLATE THE FIRST AMENDMENT ON THEIR FACE**

4

5    The Attorney General demonstrated that Penal Code sections 26350 *et seq.* and 26400 *et*

6    *seq.* do not restrict speech or expressive conduct on their face, and therefore the First Amendment

7    is not implicated at all.  ECF 161 at 10.  And even if these restrictions regulated expression in

8    some way, they would survive scrutiny because of their minimal burden on expression—Zeleny

9    is still free to protest and film his events with everything but his firearms, ECF 167 at 7 n.4—and

10   their significant benefits in preserving law enforcement resources and protecting public safety by

11   reducing the potential for violent confrontations or mistakes based on a reasonable passerby's

12   concern that someone openly carrying weapons is an active threat.  ECF 161 at 13-16.

13   In response, Zeleny appears to concede that carrying a firearm "is not, in and of itself,

14   expressive."  ECF 167 at 11.  This concession ends Zeleny's facial challenge, for, in the vast

15   majority of cases, the open carry laws restrict non-expressive conduct—the carrying of a

16   firearm—with no communicative element at all.  Thus, Zeleny's facial First Amendment claim

17   fails because Zeleny cannot demonstrate that "a substantial number of [a law's] applications are

18   unconstitutional."  *Knox v. Brnovich*, 907 F.3d 1167, 1180 (9th Cir. 2018).

19   To the extent Zeleny has asserted an as-applied challenge (which is not clear), it would also

20   fail because his own carriage of firearms is not conduct that "convey[s] a particularized message"

21   that would "be understood by those who viewed it."  ECF 161 at 12; *Nordyke v. King*, 319

22   F.3d 1185, 1190 (9th Cir. 2003) (citing as hypothetical examples of expressive conduct a "gun

23   protestor burning a gun" or a "gun supporter waving a gun at an anti-gun control rally").  Zeleny

24   does not allege that he is a guns-right advocate, or that his protests are intended to convey a

25   message about firearms.  And while passersby might understand Zeleny's placards and display—

26   he is communicating that NEA has done something morally blameworthy—they would not

27   understand the presence of firearms to convey any particular meaning.

28

1

1    Furthermore, as the Attorney General explained, even if Zeleny's non-expressive use of

2    firearms were intermixed with protected expression, California's restrictions on unloaded open

3    carry would not violate the First Amendment.  ECF 161 at 14 (applying *United States v. O'Brien*,

4    391 U.S. 367 (1968)).  The restriction of unloaded open carry is not related to the suppression of

5    free expression.  ECF 161 at 14.  Zeleny does not refute the important government interests that

6    are furthered by Penal Code sections 26350 *et seq.* and 26400 *et seq.*: the need to preserve law

7    enforcement resources that would be absorbed in responding to calls about Zeleny's conduct, as

8    well as the need to prevent unanticipated conflicts between Zeleny, members of the community,

9    and law enforcement, if anyone involved makes the "slightest wrong move."  *Flanagan v. Harris*,

10   No. LA CV16-06164 JAK, 2018 WL 2138462, at *7 (C.D. Cal. May 7, 2018) (describing

11   legislative history); *Nichols v. Harris*, 17 F. Supp. 3d 989, 1004-05 (C.D. Cal. 2014) (same; citing

12   ECF 161-2, Exs. 1 & 2); *see also* ECF 161-1 Ex. 6 at pp. 190:15-191:3 (reflecting similar

13   concerns of Menlo Park police department).  Nor does Zeleny explain how these restrictions are

14   anything more than incidental burdens on his speech: Contrary to Zeleny's rhetoric, nothing in

15   Penal Code sections 26350 *et seq.* or 26400 *et seq.* restricts the "content" of Zeleny's protests,

16   muzzles his ability to "address a public issue," or otherwise meaningfully limits his ability to

17   communicate his message;[1] unlike the complete ban on picketing found in *Mosely*, these laws

18   regulate only the open carry of firearms, while leaving Zeleny's other expressive activities

19   untouched.[2]  ECF 167 at 8-10.

20   Zeleny also alleges that the unloaded-open-carry statutes are content-based and were

21   enacted based on the Legislature's disagreement with certain kinds of expression.  ECF 167 at 9.

22   But there is no evidence of such animus, and the legislative history instead reflects a clear public-

23   ----------

[1] In passing, Zeleny suggests that Penal Code sections 26350 *et seq.* and 26400 *et seq.*
24   might be unfair to individuals who engage in "gun rights advocacy, or 'open carry'
     demonstrations."  ECF 167 at 9; *see also id.* at 10.  Zeleny does not allege that he is such an
25   advocate, and therefore lacks standing to raise the claims of these hypothetical parties who are not
     before the Court.

26   [2] To the extent that Zeleny has not been able to "obtain permits, give advance notice to the
     local authorities, and allow them to mitigate any potential adverse responses," or alleges that "the
27   City rebuffed all of his efforts," ECF 167 at 10-11, these allegations may be relevant to his First
     Amendment dispute with the City, but they do not render the unloaded-open-carry statutes invalid
28   on their face.

2

safety rationale for these laws. *Flanagan v. Harris*, 2018 WL 2138462, at \*7; *Nichols*, 17 F. Supp. 3d at 1004-05. As the Attorney General explained in his Equal Protection argument, to the extent that California drew distinctions among people who carry arms in public, these distinctions were based on their risk to the public and the potential absorption of law enforcement resources, *not* the content of their expression; the "entertainment productions" that use the careful procedures described by Mr. Tristano and Mr. Brown are allowed to use unloaded firearms on their sets not because the Legislature has determined that their art is superior to a lone gunman's art, but because they are at lower risk of creating the public-safety problems that the statute was intended to address.

For these reasons, summary judgment should be granted in favor of the Attorney General on the complaint's First Amendment claims on the basis that California's unloaded open carry laws do not regulate speech or expressive conduct in the majority of cases, and are therefore not facially unconstitutional. Nor do these laws restrict Zeleny's own speech or expressive conduct. And even if they did in some way, they would survive *O'Brien* scrutiny.

## II.   CALIFORNIA'S RESTRICTIONS ON THE OPEN CARRY OF UNLOADED FIREARMS DO NOT VIOLATE THE SECOND AMENDMENT ON THEIR FACE

### A.   There Is No Right Under the Second Amendment to Carry Unloaded Firearms for the Purpose of "Amplifying" One's Protest

The Attorney General demonstrated that Penal Code sections 26350 *et seq.* and 26400 *et seq.* do not violate the Second Amendment under step one of *Heller* because they do not burden conduct traditionally understood to be within the protection of the Second Amendment. ECF 161 at 17-18. There is no historically understood right to use unloaded firearms for the purpose of protest, as opposed to using loaded firearms for the purpose of defending hearth and home. *Id.*

Zeleny does not refute this argument. ECF 167 at 15-16. Therefore, summary judgment should be entered in favor of the Attorney General on the complaint's Second Amendment claims.

///

3

1

**B.    Zeleny Did Not Plead That He Intended to Bear Loaded or Concealed Firearms for Self-Defense, and Has Therefore Waived an Argument Based on Self-Defense**

2

3    In his complaint, Zeleny repeatedly alleged that he seeks to use *unloaded* firearms to

4    amplify his protests, not loaded firearms.  SAC, ¶¶ 4 ("unloaded"), 46, 48, 112, 114, 120, 188-90,

5    192, 210, 217(a), 221-22, 233, p. 41 (Prayer for Relief ¶¶ (B), (C), & (G).  And the complaint

6    challenges only California's prohibitions on unloaded open carry, not its prohibitions on loaded

7    carry or concealed carry.  SAC, ¶¶ 8, 188-190, p. 41 (Prayer for Relief, ¶ (A) [seeking declaration

8    that "Penal Code §§ 26400 and 26350 are unconstitutional"]).  As the Attorney General

9    demonstrated, the State's regulation of unloaded firearms at protests does not implicate either the

10    First Amendment or the Second Amendment: without his unloaded firearms, Zeleny is just as

11    able to express his message, and his ability to defend himself is not materially impaired—the

12    central concerns of the First and Second Amendments, respectively.

13    Zeleny now claims that he always intended to challenge not only Penal Code sections

14    26350 *et seq.* and 26400 *et seq.* (unloaded open carry)—which were specifically identified in the

15    complaint—but also California's long-standing restrictions on loaded open carry (§ 25850 *et seq.*)

16    and concealed carry (§ 25400 *et seq.*) of firearms.  ECF 167 at 2 ("California cannot

17    comprehensively criminalize an ordinary, law-abiding citizen's carrying of a firearm, loaded or

18    unloaded, concealed or open, virtually anywhere in the state").  Zeleny devotes much of his

19    opposition brief to these new Second Amendment claims.  ECF 167 at 15-25.

20    These challenges to California's loaded open carry and concealed schemes have been

21    waived because they were not pleaded in the complaint.  *Coleman v. Quaker Oats Co.*, 232 F.3d

22    1271, 1291 (9th Cir. 2000); *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1080 (9th Cir.

23    2008) ("where, as here, the complaint does not include the necessary factual allegations to state a

24    claim, raising such claim in a summary judgment motion is insufficient to present the claim to the

25    district court").  "[S]ummary judgment is not a procedural second chance to flesh out inadequate

26    pleadings."  *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).  As

27    evidenced by the *Young*, *Flanagan*, and *Nichols* cases pending in the Ninth Circuit (discussed

28    below), the extent to which the Second Amendment extends outside the home for purposes of

4

armed self-defense (as opposed to unarmed protest) is an issue that other litigants have been able to articulate in their pleadings.  Zeleny had nearly two years, and several opportunities, to plead the unconstitutionality of California's loaded open carry and concealed carry restrictions; indeed, Zeleny recently was granted leave to amend his complaint to add a vagueness claim.  ECF 164. Yet nowhere in the complaint is there a challenge to the loaded open carry statutes, or an allegation that Zeleny wants to use loaded firearms for self-defense; the complaint challenges only California's restrictions on unloaded open carry, on the theory that such restrictions interfere with Zeleny's right to protest.  Zeleny failed to put the defendants "on notice of the evidence [they] needed to adduce in order to defend themselves against the plaintiff's allegations," including but not limited to expert testimony about the need for, and benefits of, restrictions on the universal open or concealed carry of loaded firearms in California's cities—an obviously different situation than the use of unloaded firearms for protests.  *Coleman*, 232 F.3d at 1292; *cf. Flanagan v. Harris*, 2018 WL 2138462, at *9-10 (describing such testimony).   Therefore, Zeleny should not be allowed to proceed on these theories.  *Coleman*, 232 F.3d at 1294.

Tellingly, Zeleny cannot identify where in the complaint he alleged that California's loaded open carry and concealed carry restrictions were unconstitutional.  He points only to a single sentence: "This case is brought to challenge the constitutionality of California statutes restricting Plaintiff's right to bear arms under the Second Amendment."  ECF 167 at 16.  But this single, ambiguous reference in a 43-page complaint did not put Defendants on notice that Zeleny was challenging long-standing restrictions on loaded open carry and concealed carry.  Rather, any reasonable reader of the complaint would have understood this introductory sentence to be further developed in the remainder of the complaint, where Zeleny stressed his peaceable intention to use "unloaded" firearms, identified sections 26400 *et seq.* and 26350 *et seq.*, and alleged that they were unconstitutional.  SAC, ¶¶ 4 ("unloaded"), 46, 48, 112, 114, 120, 188-90, 192, 210, 217(a), 221-22, 233, p. 41 (Prayer for Relief ¶¶ (B), (C), & (G).  Allowing Zeleny to reverse course and raise entirely new claims on the eve of trial would be prejudicial to the Defendants.

/ / /

/ / /

5

1

2

3

**C.   To the Extent That Zeleny Is Allowed to Assert a Second Amendment Right to Loaded Open Carry Based on Self-Defense for the First Time, California's Restrictions on Loaded Open Carry Do Not Violate the Second Amendment**

4

5

6

7

8

9

10

Even if the Court determines that Zeleny has pleaded a claim challenging California's *loaded* open carry laws[3] (he has not), California's open carry regime should still be upheld as being consistent with the Second Amendment.  As the Attorney General explained, these questions are the subject of three pending Ninth Circuit cases, and the two district courts in California that have considered similar challenges have upheld California's restrictions on open carry.  ECF 161 at 20.  To the extent the Court feels bound to reach these issues, it should follow Judge Kronstadt's reasoning in *Flanagan*.

11

12

13

14

15

16

17

18

19

20

21

Zeleny does not meaningfully dispute that California's interest in enacting its open carry laws is to promote public safety and reduce gun violence.  ECF 161 at 21-22.  Nor does Zeleny refute the fact that the Legislature carefully tailored the open carry laws to achieve its legitimate objectives while still allowing open carry in dozens of circumstances where the State's public safety concerns could be addressed.  *Id.*  Instead, Zeleny says confusing things like "a flat ban is the exact opposite of tailoring—as evidenced by the litany of exceptions."  ECF 167 at 24.  But California's restrictions on open carry is not a flat ban precisely because of the exceptions; rather than ban the open carry of firearms completely, the Legislature thoughtfully identified dozens of scenarios in which its objectives could be achieved—promoting public safety and reducing violent crime—while still accommodating individuals' potential need for firearms.  *See Flanagan*, 2018 WL 2138462, at *9.

22

23

24

For these reasons, Zeleny's claims that 26350 *et seq.* and 26400 *et seq.* (or any other open carry statutes) violate the Second Amendment on their face fail, and summary judgment should be entered in favor of the Attorney General on these claims.

25

26

27

28

---

[3] While allowing Zeleny to challenge California's loaded open carry laws would be unfair based on his failure to plead such a claim, at least the Attorney General had an inkling from the complaint that Zeleny wanted to carry *openly* as part of his protests.  The complaint never put the defendants on any sort of notice that Zeleny wanted to carry a *concealed* weapon.

6

1

**III.   CALIFORNIA'S RESTRICTIONS ON THE OPEN CARRY OF FIREARMS DO NOT
VIOLATE THE EQUAL PROTECTION CLAUSE**

2

3        As the Attorney General demonstrated, California Penal Code sections 26350 *et seq.* and

4   26400 *et seq.* do not violate the Equal Protection Clause because they rationally distinguish

5   between situations that are likely to endanger public safety and absorb law enforcement resources

6   and situations that are not.  ECF 161 at 22.  To the extent that carefully regulated entertainment

7   productions that are immediately identifiable as such by the public are treated differently than a

8   man with a machine gun and fatigues who walks through the grocery store or camps out for an

9   unlimited amount of time on a public street, it is not because the government agrees with one

10  message over the other, but because of the differing public safety risk created by the two

11  situations.  Though Zeleny speculates that the California Legislature intended to discriminate

12  based on the content of one's expressive activity, ECF 167 at 9, he presents no evidence to

13  support that speculation, and the legislative history reflects contrary, legitimate concerns about

14  public safety.  *See Flanagan*, 2018 WL 2138462, at *7 (describing legislative history); *Nichols*,

15  17 F. Supp. 3d at 1004-05 (same; citing ECF 161-2, Exs. 1 & 2).

16       Rather than controverting the Attorney General's argument, the declarations offered by

17  Zeleny prove the Attorney General's point.  The concerns underlying the legislation—creating

18  confusion and potentially violent confrontations, along with the absorption of law enforcement

19  resources—are not present, or are minimally present, in the entertainment productions that

20  Zeleny's expert witnesses were part of, in which every regulation is complied with, every permit

21  is obtained, every location is scouted, every scene is scripted and of limited timed and duration,

22  and every use of firearms is closely overseen by someone like Mr. Tristano or Mr. Brown,

23  armorers with decades of experience in their field.  ECF 163-1 at pages 59-62, 66-67, 74-77; *id.* at

24  60 ("I always insist that productions get the proper permitting and cover all of the requirements in

25  the specific area and jurisdiction they are filming in.").  It was reasonable for the Legislature to

26  conclude that such productions were unlikely to raise the same concerns as individuals walking in

27  public places with firearms, with no limits on the scope or duration of their activities (like Zeleny,

28  who originally proposed to install a portable toilet in the center median so that he could be there,

7

1    with his firearms, indefinitely).  It was not illogical or arbitrary to exclude such entertainment

2    events from the general prohibition on unloaded open carry.  *See also Nichols*, 17 F. Supp. 3d at

3    1012 (rejecting Equal Protection challenge to another statutory exception).

4          As noted above, Zeleny contends that he is trying to comply with all of the requirements

5    applicable to entertainment productions, but that his efforts been frustrated by the City.  ECF 167

6    at 10-11.  These allegations may form part of Zeleny's First Amendment claims against the City.

7    But they do not make the unloaded open carry statutes unconstitutional on their face.  If a local

8    jurisdiction were to discriminate between similarly situated entertainment productions (which the

9    Attorney General is not suggesting occurred here), it could raise constitutional concerns. But it

10   would not mean that the unloaded carry statutes were unconstitutional, when on their face they

11   draw rational distinctions based on public safety, not based on the content of expression.

12   **IV.   ZELENY DOES NOT APPEAR TO FALL WITHIN A STATUTORY EXCEPTION TO THE
         OPEN CARRY LAWS; BUT EVEN IF HE DID, THAT WOULD NOT PREVENT MENLO
13        PARK FROM IMPOSING REASONABLE CONDITIONS ON HIS PROTEST, INCLUDING ON
         HIS USE OF FIREARMS**
14

15         As demonstrated above, Zeleny does not have a constitutional right to carry an unloaded

16   firearm in an urban area.  Zeleny next alleges that even if he does not have a constitutional right,

17   he has a statutory right to carry his firearms because he qualifies for an exemption to the general

18   prohibition, namely, because he is an "an authorized participant in . . . a motion picture,

19   television, or video production or entertainment event, when the participant lawfully uses that

20   firearm as part of that production or event . . . ."  § 26405(r); ECF 167 at 14.  Zeleny alleges that

21   he will fall within this exception by setting up a camera and pointing it at passersby who observe

22   his protest.  SAC, ¶¶191-92, 202-06; Ex. 2 at 208:19-24, 185:13-20; ECF 163 at 5.

23         The Court need not exercise its supplemental jurisdiction to decide this issue of state law

24   once it otherwise evaluates the constitutionality of section 26350 *et seq.* and § 26400 *et seq.* (the

25   unloaded open carry laws).  *See Pac. Bell Telephone Co. v. City of Walnut Creek*, 428 F. Supp.2d

26   1037, 1055 (N.D. Cal. 2006) (citing 28 U.S.C. § 1367(c); *cf. Moran v. Screening Pros,* No. 2:12-

27   cv-05808-SVW-AGR, 2020 WL 4724307, at *12 (Jul. 30, 2020) ("principles of comity favor

28

                                            8

1  permitting those claims to be adjudicated by California state courts"). But if the Court is inclined

2  to decide the state-law question, it should decline to issue the declaration Zeleny seeks.

3      Zeleny appears to believe that, if he can qualify for this exemption, then no one can regulate

4  the conditions of his protest. But he is wrong. First, it is unlikely that he falls within the

5  exception to begin with. Second, even if he did, it might give him a defense to an open carry

6  prosecution by the City, but nothing more. Nothing would prevent Menlo Park from imposing

7  other reasonable conditions on Zeleny's protests (including a condition related to his firearms), or

8  regulating Zeleny under any other civil or criminal laws. Without a declaration that he has a

9  constitutional right to protest with his firearms, or a declaration that Menlo Park's regulations

10  were invalid time-place-manner restrictions, the declaration Zeleny seeks about the entertainment

11  exception would achieve almost nothing.

12      **A.    Zeleny Likely Does Not Qualify for the Entertainment Exception[4]**

13      Initially, it appears unlikely that under state law Zeleny would qualify for this exception,

14  which allows the open carry of unloaded weapons for "an authorized participant in . . . a motion

15  picture, television, or video production or entertainment event, when the participant lawfully uses

16  that firearm as part of that production or event . . . ." § 26405(r):

17      (1) Zeleny does not propose to film his use of firearms, i.e., he does not appear to be using

18  his firearms "as part of that production or event," in the same way that a movie studio would use

19  a firearm as a prop in a *Mission Impossible* or *Marvel* movie. Rather, Zeleny is conducting a non-

20  filmed protest at which he happens to bring a camera to video *other people*, rather than his

21  "production or event." Ex. 2 at 208:19-24, 185:13-20.

22      (2) Zeleny's own evidence suggests strongly that the Legislature would not consider

23  Zeleny's activity to be a "motion picture, television, or video production or entertainment event."

24  Zeleny's expert witnesses describe how the use of firearms in television and movie productions

25  has been heavily regulated for decades by state, federal and local permitting schemes, and has

26

27      [4] The Attorney General has no involvement in Zeleny's specific case, and a determination
    that Zeleny qualified for this exception would not render the statute infirm in any way. It is
    unclear why Zeleny raised this argument in his motion for summary judgment against the
28  Attorney General, rather than against the City, which has actually regulated Zeleny's activities.

9

1    been further guided by stringent industry standards.  ECF 163-1 at pages 59-62, 66-67, 74-77.

2    When it enacted the unloaded-open carry laws, the Legislature appeared to intend to allow these

3    long-standing entertainment industry practices to continue.  ECF 161-2, Ex. 1 – 50 ("props").

4    There is no indication that the Legislature intended to create a new, broader exception for

5    entertainment productions that diverged from these standard industry practices, such as for the

6    lone gunman who happened to pack a camera or smart phone.

7            If accepted, the necessary result of Zeleny's argument would be that this one of several

8    dozen exceptions to the general prohibition on unloaded open carry would swallow the rule.  If an

9    individual carrying a firearm through an urban area could create a "motion picture, television, or

10   video production or entertainment event" simply by pushing the "record" button on their smart

11   phone, there effectively would no longer be a prohibition on unloaded open carry, loaded open

12   carry, or concealed carry in California.  The individual could walk anywhere—a sports stadium, a

13   road median, a grocery store—and after creating the disturbance and law enforcement response

14   the Legislature was attempting to prevent, could pull out their smartphone and say, "don't worry,

15   this was all an entertainment production."

16           Rather than accept this absurd result, the more plausible interpretation is that the

17   "entertainment production" exception is analogous to similar exceptions for gun shows (§ 26369)

18   or target ranges (§ 26365)—confined spaces in which the firearm being carried is not easily

19   visible or accessible to the public, for a defined duration and location.  This is consistent with

20   Zeleny's evidence about industry practices, which describe exactly such a situation.  ECF 163-1

21   at pages 59-62, 66-67, 74-77.  By contrast, Zeleny initially sought to camp out in the center

22   median at a freeway juncture, with no time limitation and no signal to passerby that his activities

23   were part of an "entertainment production" as the typical person would understand.  Thus, it is

24   unlikely that Zeleny would fall into this exception.

25           In response, Zeleny argues that it is "not true that all motion pictures . . . are conducted

26   outside of the view of the public and in confined spaces," citing the movie *Die Hard*.  ECF 167 at

27   15.  That misses the Attorney General's point, which was that even when a firearm is visible to

28   the public, it is being handled in such a way as to make clear to passersby that a movie is being

1  shot, thus minimizing the possibility of adverse community response and the absorption of law

2  enforcement resources.  Zeleny's own experts describe the extensive efforts that entertainment

3  productions make to ensure the safety of the community.  ECF 163-1 at pages 59-62, 66-67, 74-

4  77.  By contrast, Zeleny proposed to wield multiple firearms—including a machine gun—from a

5  center median, displaying scenes of sexual violence, with no obvious limit to the production area

6  or the duration of his protests.  His activities prompted concern from the community before, Ex. 6

7  at 56:3-19, 302:19-303:13, 305:8-306-4, and would likely prompt concern from the community

8  again.  Simply put, a professional film set is materially different than a "protest" involving a lone

9  gunman walking up and down the street.

10       (3)  Zeleny sets up a strawman, by fixating on the term "authorized participant" and arguing

11  that the case turns on definition of "authorized participant."  ECF 163 at 7; ECF 167 at 15.  But

12  the Attorney General essentially *agrees* with Zeleny's expert's understanding of the term

13  "authorized participant," namely that someone operating under the auspices of a DOJ

14  Entertainment Firearms Permit holder qualifies as an "authorized participant" in an entertainment

15  production.  *Compare* ECF 163-1 at 75 (Zeleny: "the [Entertainment Firearms Permit] holder

16  [can] give the firearm to an actor or other Authorized Participant and take it back after the scene

17  is over . . . .") *with* ECF 163-1 at page 54 of 100 (Attorney General's formulation, emphasis

18  added): "Anyone who is not otherwise authorized to carry a weapon openly, but who desires to

19  carry a weapon openly 'as a prop in a motion picture, television, video, theatrical, or other

20  entertainment production or event' would need to do so under the auspices of an Entertainment

21  Firearms Permit. *For entertainment productions this generally has meant that a propmaster or*

22  *similarly qualified person is supervising the use of firearms in the production, and others*

23  *involved in the production may transfer or possess firearms under the auspices of the supervising*

24  *permit-holder*."  This understanding is consistent with historical practice on television and movie

25  sets: So long as the firearms are being handled consistent with applicable federal, state, and local

26  laws, usually under the supervision of a trained expert, others on the set could use the firearm too

27  without exposing themselves to liability.  ECF 163-1 at 75-77.  To the extent that Zeleny has a

28

1    dispute with the Attorney General over the meaning of the unarmed-open-carry statutes, it is not

2    over the definition of "authorized participant."

3           **B.    Even if the Court Were to Declare That Zeleny Qualified for the**
            **Entertainment Exemption, That Would Not Mean That Menlo Park's**
4           **Regulation of Zeleny's Activities Was Unconstitutional.**

5           Even if Zeleny qualified for the exemption found in section 26405(r), that would not entitle

6    him to protest whenever and wherever he pleases.  At most, the exception is a limited defense to

7    prosecution under a single criminal statute.  It does not immunize Zeleny from any other

8    regulation, or prevent the City of Menlo Park from setting reasonable conditions on Zeleny's

9    activities, such as the duration and location of his protests, or the placement of his signage or

10   guns.  Nor does it prevent the City from regulating Zeleny under any other civil or criminal law,

11   e.g., as a nuisance or for violating traffic or noise ordinances.  ECF 163-1 60-62, 66, 76-77.

12   **V.    PENAL CODE SECTION 26405(R) IS NOT UNCONSTITUTIONALLY VAGUE**

13          Finally, Zeleny alleges that the exception for television and entertainment events, and

14   specifically the term "authorized participant," is unconstitutionally vague.  ECF 167 at 11.  "It is a

15   basic principle of due process that an enactment is void for vagueness if its prohibitions are not

16   clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  The vagueness doctrine

17   incorporates two related requirements—fair notice and fair enforcement. The relevant inquiry is

18   whether the law is "so vague and indefinite as really to be no rule or standard at all, or whether a

19   person of ordinary intelligence could understand" what the law requires. *Ai v. United States*, 809

20   F.3d 503, 514 (9th Cir. 2015) (internal quotations omitted).

21          As explained above, the Attorney General and Zeleny agree that the term "authorized

22   participant" has a relatively well-understood meaning in the entertainment industry: someone

23   operating under the auspices of a DOJ Entertainment Firearms Permit holder qualifies as an

24   "authorized participant" in an entertainment production.  This ends the vagueness inquiry. Given

25   long-standing industry practices, and the apparent incorporation of those practices into the

26   exceptions to the open-carry laws, it can hardly be said that the exception is "no rule or standard

27   at all."  The entertainment industry follows certain laws and standards in the handling of firearms

28   as props, as demonstrated by the declarations of Mr. Tristano and Mr. Brown.  *See Donovan v.*

12

1   *Royal Logging Co.*, 645 F.2d 822, 831 (9th Cir. 1981) (rejecting vagueness challenge to standard

2   that would be known by reasonably prudent employer in the industry).  The Legislature

3   incorporated that understanding into the unloaded-open carry law, and the average person would

4   envision the same situation described by Mr. Tristano and Brown: a controlled television or

5   movie set where firearms are carefully handled in such a way that passerby and law enforcement

6   would know exactly what was happening.  The individual who wondered if they qualified for an

7   exception would be guided by this historical practice: is their entertainment production like those

8   described by Zeleny's experts, i.e., in a permitted, controlled environment, of limited scope and

9   duration, such that it would not spark potentially violent confrontations or law enforcement

10  response—or not?  That standard satisfies the Due Process Clause, which does not demand

11  perfect clarity, but only requires that there not be any "standard at all."

12  **VI.  CONCLUSION**

13       For all of these reasons, the Attorney General requests that the Court grant his motion and

14  grant summary judgment in favor of the Attorney General.

15

16  Dated:  February 11, 2021                              Respectfully Submitted,

17                                                         XAVIER BECERRA
                                                           Attorney General of California
18                                                         ANTHONY R. HAKL
                                                           Supervising Deputy Attorney General
19
                                                           */s/ John W. Killeen*
20                                                         JOHN W. KILLEEN
                                                           Deputy Attorney General
21                                                         *Attorneys for Defendant Xavier Becerra*

22  SA2018100198
    34820607.docx
23

24

25

26

27

28

13

# CERTIFICATE OF SERVICE

Case Name:  **Zeleny, Michael v. Edmund G.**          No.     **3:17-cv-07357 RS (NC)**
            **Brown, et al.**

I hereby certify that on <u>February 11, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY CALIFORNIA ATTORNEY GENERAL XAVIER BECERRA**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>February 11, 2021</u>, at Sacramento, California.

| Lindsey Cannan | /s/ *Lindsey Cannan* |
|:---:|:---:|
| Declarant | Signature |

SA2018100198
34819867.docx