1  David W. Affeld, State Bar No. 123922
   Brian R. England, State Bar No. 211335
2  Damion Robinson, State Bar No. 262573
   Affeld Grivakes LLP
3  2049 Century Park East, Ste. 2460
   Los Angeles, CA 90067
4  Telephone:    (310) 979-8700

5  Attorneys for Plaintiff Michael Zeleny

6

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11  MICHAEL ZELENY,                          Case No. CV 17-7357 JCS

12        Plaintiff,                         Assigned to:
                                             The Honorable Richard G. Seeborg
13              vs.
                                             Discovery Matters:
14  GAVIN NEWSOM, *et al.*,                  The Honorable Thomas S. Hixson

15        Defendants.                        **PLAINTIFF MICHAEL ZELENY'S
                                             REPLY IN SUPPORT OF MOTION FOR
16                                           PARTIAL SUMMARY JUDGMENT
                                             AGAINST CALIFORNIA ATTORNEY
17                                           GENERAL XAVIER BECERRA**

18                                           Date:       March 18, 2021
                                             Time:       1:30 p.m.
19                                           Courtroom:  3, 17th Floor

20                                           Action Filed:  December 28, 2017
                                             Trial Date:    TBD
21

22

23

24

25        Plaintiff Michael Zeleny ("Zeleny") hereby respectfully submits the following Reply in

26  support of his Motion for Partial Summary Judgment against Defendant California Attorney General

27  Xavier Becerra.

28

        REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
                   AGAINST CALIFORNIA ATTORNEY GENERAL

## **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ................................................................................................1

II.     LEGAL STANDARD ........................................................................................3

III.    ARGUMENT .....................................................................................................3

        A.      This Court Has Original Jurisdiction Over Zeleny's Claims. ................................3

        B.      The Entertainment Exemptions Violate Due Process and Equal
                Protection.................................................................................................4

                1.      The Entertainment Exemptions Violate Equal Protection. ......................5

                2.      The Entertainment Exemptions Also Violate the First
                        Amendment. ....................................................................................6

        C.      The Entertainment Exemptions Are Unconstitutionally Vague ...........................8

                1.      The Statutes Are Facially Vague. ............................................................8

                2.      The State's New "Industry Interpretation" Argument Fails. ...................10

        D.      California's Open Carry Ban Violates the Second Amendment. .........................13

V.      CONCLUSION ................................................................................................13

REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*A.C.L.U. v. City of Las Vegas*
    466 F.3d 784 (9th Cir.2006)...........................................................................................5

*Branzburg v. Hayes*,
    408 U.S. 665 (1972) .................................................................................................6, 8

*Carey v. Brown*
    447 U.S. 455 (1980) .................................................................................................5, 7

*Citizens United v. FCC*
    558 U.S. 310 (2010) ......................................................................................................6

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) .............................................................................................1, 3, 13

*Donovan v. Royal Logging Co.*,
    645 F.2d 822 (9th Cir.1981)....................................................................................11, 12

*FCC v. Fox Television Studios, Inc.*,
    567 U.S. 239 (2012) ...............................................................................................8, 10

*First Nat. Bank of Boston v. Bellotti*
    435 U.S. 765 (1978) ..........................................................................................2, 6, 11

*Foti v. City of Menlo Park*,
    146 F.3d 629 (9th Cir.1998).....................................................................................7, 9

*Kev, Inc. v. Kitsap County*,
    793 F.2d 1053 (9th Cir.1986)........................................................................................9

*Kolender v. Lawson*
    461 U.S. 352 (1983) .......................................................................................................8

*Mass. Bd. of Retirement v. Murgia*,
    427 U.S. 307 (1976) .......................................................................................................4

*N.A.A.C.P. v. Button*,
    371 U.S. 415 (1993) .......................................................................................................8

*Nat'l Advertising Co. v. City of Orange*,
    861 F.2d 246 (9th Cir.1988).........................................................................................7

*Pac. Bell Telephone Co. v. City of Walnut Creek*,
    428 F. Supp. 2d 1037 (N.D. Cal. 2006)........................................................................4

REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL

*Railroad Commission of Tex. v. Pullman*
    312 U.S. 496 (1941) ..................................................................................... 4

*Shapiro v. Thompson,*
    394 U.S. 618 (1969) *overruled in part on another ground in Edelman v. Jordan,*
    415 U.S. 651 (1974) ..................................................................................... 4

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989) ..................................................................................... 6

*Zablocki v. Redhail,*
    434 U.S. 374 (1978) ..................................................................................... 5

**Federal Statutes**

28 U.S.C. § 1331 ................................................................................................. 3

28 U.S.C. § 1343 ................................................................................................. 3

**California Statutes**

Penal Code § 26375 ................................................................................. 1, 10, 11

Penal Code § 26405(r) ............................................................................ 1, 10, 11

REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL

1    **I.**   **INTRODUCTION**

2          Zeleny is a law-abiding California citizen who wants to exercise his Second Amendment

3    right to openly carry an unloaded firearm during public protests in a public forum—prototypical

4    activity protected by the First Amendment.  His protests are also entertainment events that are

5    recorded for public dissemination and are live-streamed over the Internet.

6          The State of California and the City of Menlo Park have gone to extraordinary lengths to

7    deprive Zeleny of his fundamental rights under the First and Second Amendments, including

8    contorting California law to deny him due process and equal protection.  These actions defy the

9    Fourteenth Amendment.

10         As addressed at length in prior briefing, taken together California's "open carry" and

11   "concealed carry" bans effectively eliminate a citizen's right to carry an unloaded firearm outside the

12   home, unless he or she can qualify under one of the limited statutory exemptions.  The trend of

13   recent authority, starting with *District of Columbia v. Heller*, 554 U.S. 570 (2008), strongly suggests

14   that such a *de facto* ban is invalid.  The direction the wind is blowing is clear.

15         This Court, however, need not predict how the law will unfold.  This case can be resolved on

16   much narrower grounds.  This case presents a narrow issue involving interpretation and application

17   of two parallel exemptions to California's Open Carry Ban, Penal Code §§ 26375 and 26405(r).

18   These exemptions either apply to Zeleny's activities at issue in this case, or else they are

19   unconstitutionally vague.  By issuing a constitutionally-acceptable interpretation of these sections,

20   the Court need not reach the broader question of the constitutionality of California's Open Carry Ban

21   as a whole.

22         Sections 26375 and 26405(r) purport to exempt "authorized participants" in film, television

23   or video productions, or entertainment events, from the Open Carry Ban.  The key phrase is

24   "authorized participant."  The phrase is undefined in the statutes.  The legislative history offers no

25   explanation.  There are no defining regulations or official guidance.  The California Attorney

26   General would not provide a coherent definition even when ordered to do so in discovery.

27         Under a plain reading of the language, settled rules of statutory construction, and long-

28   standing industry practice, Zeleny qualifies as an "authorized participant."  Any other interpretation

- 1 -

REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL

would violate the Constitution.  The Entertainment Exemptions in particular, and the Open Carry Ban as a whole, fail constitutional scrutiny for multiple reasons:

*First*, even if the Open Carry Ban passes constitutional muster as a whole, either Zeleny qualifies under the "authorized participant" exemptions, or else those exemptions are invalid.  They distinguish between different forms of First Amendment activity, allowing open carry in the course of making movies or TV shows, but not for protests, picketing, "open carry" rallies, or gun rights demonstrations.  The exemptions treat similarly-situated groups of citizens differently based on the content of their speech.  Content-based discrimination is impermissible, especially regarding fundamental rights such as the right to bear arms and free speech.

*Second*, if Zeleny does not qualify for the "authorized participant" exemptions, they are impermissibly vague.[1]  A statute must be clear enough that a person of ordinary intelligence can understand it.  As Magistrate Judge Hixson recognized previously—and as the State concedes—the statutes contain no definition of "authorized participant."  The statutes contain no explanation of who does the authorizing or how to get it.  The State evaded multiple rounds of discovery to avoid providing a definition.  Its Rule 30(b)(6) designee could not define the phrase.  The City's Rule 30(b)(6) designee characterized the statute as "very vague."  The State's eventual answer contradicts the guidance it gave the City in 2017.  A person of ordinary intelligence cannot be expected to make sense of a statute that the State itself cannot coherently explain despite multiple chances.

*Third*, a statute must be construed to avoid constitutional concerns where possible.  Zeleny is entitled to a judicial declaration that the phrase "authorized participant" means a person authorized by the producer of the film or event.  Any other reading would put a government official in charge of casting decisions for movies and TV – and for protests—a nonsensical interpretation.

*Fourth*, if the Court has to reach the Constitutionality of California's Open Carry Ban rather than the narrower and unique aspects of this case concerning the Entertainment Exemptions, the

---

[1] On January 22, 2021, the Court granted Zeleny's Motion to Amend to clarify that his Fourteenth Amendment challenge includes a challenge on vagueness grounds.  The State opposed the Motion on the ground of undue delay.  In granting the Motion, the Court stated, "it was not wholly evident the statute was unclear until Defendants' responses revealed how uncertain the statute was."  *See* Dkt. No. 164 at p. 2.

REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL

1  Court should join the better view and weight of authority holding that California cannot

2  comprehensively criminalize an ordinary, law-abiding citizen's carrying of a firearm.  *See Heller*,

3  554 U.S. 570, and progeny.  Zeleny was particularly entitled to some form of carry, because he

4  received threats related to his protests, and therefore needed carry firearms for self-defense.

5          Zeleny's Motion for Partial Summary Judgment against the State should be granted.

6  **II.    LEGAL STANDARD**

7          Because the parties' cross-motions involve issues of pure law on undisputed facts, this case is

8  appropriate for summary judgment.  The exemptions at issue authorize the open carry of firearms

9  during the production of certain entertainment-type events.  Under the undisputed facts, either (i)

10  Zeleny qualifies as an "authorized participant" under these exemptions; or (ii) the exemptions are

11  unconstitutional.  Under either scenario, the Court should grant Zeleny's Motion for Partial

12  Summary Judgment and deny the State's Motion.  The Court can do so without taking on the larger

13  task of evaluating California's comprehensive ban.

14          Alternatively, and only if the Court is unable to reach the foregoing issues, Zeleny has

15  established that California's near-total ban on both the open and concealed carry of firearms

16  unconstitutionally impairs the right to bear arms under the Second Amendment.  This Court should

17  join the weight of authority and strike down California's comprehensive ban.

18  **III.   ARGUMENT**

19          **A.    This Court Has Original Jurisdiction Over Zeleny's Claims.**

20          In its Opposition, the State takes a baffling position that this Court should not exercise

21  "supplemental jurisdiction" to decide Zeleny's state law claims.  Opp. at p. 22.  Zeleny does not

22  have any "state law" claims.  The *only* claims Zeleny asserts are federal claims based on the First,

23  Second, and Fourteenth Amendments of the United States Constitution.

24          The Second Amended Complaint expressly states the basis for this Court's jurisdiction.

25  "This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and

26  1343." SAC at ¶ 10.  Zeleny has not brought any state law claims—all of his claims are federal

27  question claims.  Zeleny's sole claim against the State is that its gun control scheme, including the

28  Entertainment Exemptions, violates the U. S. Constitution.  Zeleny has not challenged the scheme

- 3 -

1  under the California Constitution.  This Court is exercising original, not supplemental, jurisdiction.

2  The State's "supplemental jurisdiction" argument is frivolous.

3       *Pac. Bell Telephone Co. v. City of Walnut Creek*, 428 F. Supp. 2d 1037 (N.D. Cal. 2006),

4  cited by the State, refutes the State's own argument.  There, the plaintiff challenged a law as

5  violating *both* the United States and California Constitutions.  *Id*. at 1056.   The Court, in part

6  relying on *Pullman* abstention, declined to decide whether the statutes violated the California

7  Constitution until California courts had been given an opportunity to rule on that issue.  One of the

8  factors necessary for *Pullman* abstention is that the case present *both* state and federal constitutional

9  grounds for relief.  *Railroad Commission of Tex. v. Pullman*, (1941) 312 U.S. 496, 500-01.  Because

10 that requirement is missing here, the doctrine does not apply.

11      Further, this Court is being asked to rule on whether provisions of California law violate the

12 U.S. Constitution, applying well-settled federal law.  There is no basis for the State's request that the

13 Court decline to hear a constitutional challenge that is fully ripe and ready for adjudication.

14      **B.     The Entertainment Exemptions Violate Due Process and Equal Protection.**

15      The "Entertainment Exemptions" to California's Open Carry Ban either apply to Zeleny or

16 else they violate Fourteenth Amendment due process and equal protection because they: (i) implicate

17 fundamental rights while simultaneously treating California citizens differently under the law and

18 make content-based distinctions; and (ii) are void for vagueness because they do not provide fair

19 notice as to what is required to take advantage of the exemptions.

20      The State attempts to avoid scrutiny under the Equal Protection Clause by falsely claiming

21 the exemptions' disparate treatment of similarly-situated groups does not implicate the First

22 Amendment and does not involve suspect classes.  Opp. at pp. 20-21.  The State's position is

23 incorrect—the exemptions directly implicate fundamental rights under the First and Second

24 Amendments, and therefore are subject to a heightened standard of review.

25      Strict scrutiny applies when a legislative classification "touches upon" or "impermissibly

26 interferes with the exercise of a fundamental right." *Shapiro v. Thompson*, 394 U.S. 618, 638

27 (1969) *overruled in part on another ground in Edelman v. Jordan*, 415 U.S. 651 (1974); *Mass. Bd.*

28 *of Retirement v. Murgia*, 427 U.S. 307 (1976).  Such classifications are ***presumed*** unconstitutional

- 4 -

and will survive only when the government can show the law is narrowly-tailored to a compelling state interest. *See Zablocki v. Redhail*, 434 U.S. 374, 388 (1978). The Entertainment Exemptions directly impact citizens' ability to carry firearms (*i.e.*, the Second Amendment) and their ability to engage in public expression such as films and other events (*i.e.*, the First Amendment).

### 1. The Entertainment Exemptions Violate Equal Protection.

When an equal protection claim is based on a fundamental right, then the government "may only draw distinctions in the ordinance that are finely tailored to serve substantial interests." *A.C.L.U. v. City of Las Vegas* 466 F.3d 784, 797-98 (9th Cir.2006) (*citing Carey v. Brown* (1980) 447 U.S. 455, 461-62). Only if no fundamental rights are at issue does rational basis apply. *Id.*

In particular, content-based distinctions are impermissible when fundamental rights are implicated. For example, in *Carey*, the Court invalidated, on equal protection grounds, a ban on public picketing that exempted picketing by labor unions. *Carey* at 461-62. In *Carey*, the Illinois statute flatly prohibited all non-labor picketing in residential neighborhoods, allegedly to protect residential privacy. The Court made clear that the state was impermissibly prohibiting one type of speech while allowing other speech that was equally likely to intrude on residential privacy. *Id.*

The Court found this to be an invalid content-based restriction. *Id.* at 463. It relied on the Equal Protection Clause as the basis for its decision. It noted that "under the Equal Protection Clause, not to mention the First Amendment itself, government may not grant use of a forum to those whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Id.* (*quoting Mosely*, 408 U.S. at 95-96). Because the statutory scheme implicated fundamental, First Amendment rights, content-based discrimination was impermissible. In short, content discrimination can never be a compelling interest.

This analysis applies with equal force in Zeleny's case. The Entertainment Exemptions draw a distinction between some forms of protected expression. Californians are allowed to carry firearms in connection with some types of expression but not others. This is precisely the type of content-based distinctions that the Supreme Court rejected. The exemptions impermissibly distinguish between different speakers, drawing a line between those engaged in "entertainment"— *i.e.*, movies and TV shows—and those engaged in other forms of protected speech—*i.e.*, protests,

- 5 -
REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL

1  gun rights advocacy, or "open carry" demonstrations.

2      Neither the statutes nor their legislative histories offer any justification for distinguishing

3  between these different types of constitutionally-protected speech.  While the State now tries to

4  offer possible justifications, this is pure speculation.  The Legislature did not identify any reasons at

5  all for the exemption.  It does not appear that the Legislature even considered other forms of

6  expressive conduct or any reason to distinguish certain types of expression from others.  *See*

7  Robinson Decl. [Dkt. No. 163-1] Exs. 1, 2.  To the extent that the exceptions are intended to curry

8  favor with the entertainment industry, such a distinction is unconstitutional.  *See Branzburg v.*

9  *Hayes*, 408 U.S. 665, 704 (1972).

10         **2.    The Entertainment Exemptions Also Violate the First Amendment.**

11      The Entertainment Exemptions also violate the First Amendment by making a content-based

12  distinction between the free speech rights of movie studios and other core forms of protected

13  activity.  Such a distinction is not permissible.  *See Ward v. Rock Against Racism*, 491 U.S. 781,

14  791 (1989) (restrictions must be justified "without reference to the content") (*quoting Clark v.*

15  *Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).  Zeleny has as much right to

16  expression as a movie studio or a theater company.  *Branzburg*, 408 U.S. at 703.  The State cannot

17  identify any compelling interest justifying content-based distinctions between major movie studios'

18  feature films and a lone protestor.  It may not constitutionally favor one over the other.

19      The Supreme Court directly addressed this type of improper distinction in *Citizens United v.*

20  *FCC* (2010) 558 U.S. 310.  There, the Court stated that "[p]rohibited, too, are restrictions

21  distinguishing among different speakers, allowing speech by some but not others."  *Id.* at 340

22  (*citing First Nat. Bank of Boston v. Bellotti*, (1978) 435 U.S. 765, 784.  This is equivalent to a

23  content-based distinction.  "As instruments to censor, these categories are interrelated: ***Speech***

24  ***restrictions based on the identity of the speaker are all too often simply a means to control***

25  ***content***."  *Id.* (emphasis added).  "[T]he legislature is constitutionally disqualified from dictating

26  the subjects about which persons may speak ***and the speakers who may address a public issue***."

27  *Bellotti*, 435 U.S. at 784 (*citing Mosley* at 96) (emphasis added).

28      The same is true where the content or speaker distinction is within a statutory exception.

REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL

Where a statute uses categories of content to carve out particular forms of speech from its restrictions, "the restriction itself is based on content." *See Foti v. City of Menlo Park*, 146 F.3d 629, 636 (9th Cir.1998); *Nat'l Advertising Co. v. City of Orange*, 861 F.2d 246, 249 (9th Cir.1988). This is why, in *Carey*, the carve-out for labor-related demonstrations doomed the entire ban.

That is exactly what is occurring here. California is using content-based distinctions between speakers to justify regulations that are content-based. California exempts wealthy and powerful movie studios and television production companies from its Open Carry Ban, while strictly imposing those same limitations on a lone citizen protesting injustice. California no doubt enjoys substantial tax revenue and other benefits from the entertainment industry. Its disdain for Zeleny and his message are obvious. But these are not valid criteria for the State deciding what First Amendment activity will be respected versus what will not.

The State's attempts to gloss over these issues cannot be squared with the undisputed facts. The State contends that the exemptions do not distinguish between similarly-situated people. Opp. at p. 20. But the State's argument shows that the *exact opposite is true*. The State argues that a protester carrying an unloaded firearm is "different" than an entity responsible for a motion picture, television or video performance, or entertainment event because movie studios give advance notice to local authorities and secure permits. *Id.* at p. 21. **That is precisely what Zeleny has tried to do here.** The only difference is that Zeleny has been trying to get permits for more than five years, whereas the favored entertainment industry secures permits within days.

Similarly, the State tries to avoid scrutiny by claiming that Zeleny's events do not qualify as video production or "entertainment events" because he plans to film a protest and the reactions of passersby. Zeleny has been clear that he intends to film both his multimedia presentation (including his rare firearms) and the reactions of passersby, and to broadcast the video and incorporate it into a documentary. Zeleny Decl. [Dkt. No. 163-2] at ¶ 8. The State's argument that Zeleny's protest events do not qualify as video production or entertainment events makes Zeleny's point for him.

Having exempted video production and entertainment events, the State does not get to dictate what "really" qualifies as film or entertainment. Doing so is the definition of content discrimination. The State cannot constitutionally sit as an arbiter of the validity of movie

1  productions or the entertainment value of events.  The First Amendment applies to a "lonely

2  pamphleteer" with a handheld camera the same as a major motion picture studio with a state-of-the-

3  art equipment and a large crew.  *Branzburg*, 408 U.S. at 703.  The State cannot constitutionally

4  distinguish between the two.

5  Finally, the State's argument that the First Amendment is not implicated because Zeleny

6  carrying a firearm during his protests does not amount to expressive conduct misses the point

7  entirely.  Opp. at p. 10.  Zeleny has never argued, and is not now arguing, that merely carrying a

8  gun without more would constitute expressive conduct.  Zeleny contends that he carries firearms *as*

9  *part of his protests*, during the production of an entertainment event recorded for the express

10  purpose of disseminating it to the public.  Carrying firearms is an important part, but only a part, of

11  his larger protests, in the same way that Clint Eastwood carrying a firearm is an important part of

12  the totality of *Dirty Harry*.  It is in the context of a scene in a movie, which in turn is but one aspect

13  of the larger artistic expression, which the State concedes is protected.  Here, it is the *totality* of

14  Zeleny's protests that is protected, which includes his use of firearms to amplify his message.

15  **C.**    **The Entertainment Exemptions Are Unconstitutionally Vague**

16  If the Entertainment Exemptions do not apply Zeleny, they are unconstitutionally vague.

17  **1.**    **The Statutes Are Facially Vague.**

18  "A fundamental principle in our legal system is that laws which regulate persons or entities

19  must give fair notice of conduct that is forbidden or required."  *FCC v. Fox Television Studios, Inc.*,

20  567 U.S. 239, 253 (2012) (*citing Connally v. General Constr. Co*., 269 U.S. 385, 391 (1926)).  A

21  law is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of

22  what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory

23  enforcement."  *Id.  See also Kolender v. Lawson* (1983) 461 U.S. 352, 357-58 ("[a]s generally

24  stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with

25  sufficient definiteness that ordinary people can understand what conduct is prohibited and in a

26  manner that does not encourage arbitrary and discriminatory enforcement").

27  When First Amendment freedoms are at stake, even more specificity and clarity is required.

28  *See N.A.A.C.P. v. Button*, 371 U.S. 415, 432–33 (1993) ("standards of permissible statutory

- 8 -

1  vagueness are strict in the area of free expression . . . Because First Amendment freedoms need

2  breathing space to survive, government may regulate in the area only with narrow specificity");

3  *Kev, Inc. v. Kitsap County*, 793 F.2d 1053, 1057 (9th Cir.1986); *Foti*, 146 F.3d at 638–39.

4      The Entertainment Exemptions fail to define the phrase "authorized participant."  If the

5  phrase does not encompass Zeleny here, no person of reasonable intelligence could reasonably be

6  expected to know what it means.  As Judge Hixson noted, "[u]nhelpfully, there is no statutory

7  definition of an 'authorized participant,' nor a provision stating who does the authorizing.  There

8  are no governing regulations either."  Sept. 4, 2020 Order, Dkt. No. 140, at p. 1.  The total absence

9  of clarifying text, regulations, or official guidance renders the statutes unconstitutionally vague.

10     The participants in this case—all individuals of at least ordinary intelligence, and the State

11  itself—have come to contrary and irreconcilable conclusions as to what the phrase "authorized

12  participant" means.  The Attorney General served no fewer than *three* sets of interrogatory

13  responses before settling on a definition, referring to an entirely different and inapplicable statutory

14  scheme.  Robinson Decl. ¶¶ 2-9 & Ex. 1 at 25-28.

15          Based on Defendant Becerra's understanding of Plaintiff Zeleny's
16          situation, in the specific context of this case, Defendant Becerra
            believes that an "authorized participant" must be operating under the
17          auspices of a Department of Justice Entertainment Firearms Permit,
            which authorizes the permit holder "to possess firearms loaned to the
18          permitholder for use solely as a prop in a motion picture, television,
            video, theatrical, or other entertainment production or event." (Penal
19          Code § 29500.) For entertainment productions this generally has meant
            that a propmaster or similarly qualified person is supervising the use of
20          firearms in the production, and others involved in the production may
            transfer or possess firearms under the auspices of the supervising
21          permit-holder.

22  *Id*. at p. 28.  Even then, the State included so many qualifications that its definition is meaningless.[2]

23     The State's Rule 30(b)(6) designee, Blake Graham, fared no better.  He could not explain

24  what the statute means.  Robinson Decl., Dkt. No. 163-1, Ex. 6 at p 13-14.  Graham was unable to

25

26  [2] The legislative history for the EFP makes clear that its purpose was to allow prop masters to loan firearms to
    actors in movie and television productions without having to complete the cumbersome background checks
27  and FFL paperwork that would have otherwise been required.  There is nothing to suggest that it was in any
    way tied to the Entertainment Exemptions. *See* Request for Judicial Notice, Dkt. No. 163-3, Ex. 3.

28

REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL

come up with a coherent definition of the phrase "authorized participant," stating that he would "have to do **quite a bit of research** before he could come up with something." *Id*. at 116-17 (emphasis added); *see also id.* at 127-28.

When the City asked the State for an interpretation three years ago, the State gave the exact opposite interpretation of the one it offers now. *See* Master Decl., Dkt. No. 160-6 at 30:22-31:16. At that time, the State claimed that the Entertainment Firearms Permit ("EFP") was inapplicable to the "entertainment" exemptions, and only governed the *transfer* of firearms from one person to another, not authorization of participants. The City's Rule 30(b)(6) designee, Dave Bertini, a 33-plus-year law enforcement officer, confirmed that the exception "**is very vague**," which is why he sought he State's guidance. Robinson Decl., Dkt. No. 163-1, Ex. 5 at 428:18-429:4.

To the extent that the statute vests authority in local permitting agencies to "authorize" participants with no guiding standards, it is unconstitutionally vague. The phrase "authorized participant" gives local agencies no guidance and imposes no limits on their discretion. A statute that gives agencies unbridled discretion to authorize participants, is "so standardless that it authorizes or encourages seriously discriminatory enforcement." *Fox Television*, 567 U.S. at 253.

Compounding the vagueness of the Entertainment Exemptions, they are written as a tautology. Section 26375 states that California's ban on the open carry of a handgun does not apply to an "authorized participant" in a motion picture, television or video production, or other entertainment event (all undefined), "when the participant *lawfully* uses the handgun as part of that production or event." (Emphasis added.) The statute thus reduces to the circular definition that the carry of a handgun is lawful when it is done lawfully. Section 26405(r) has a similar qualification for long guns. By not defining what that qualifier means or how a participant can exercise this right "lawfully", the legislature has left citizens to guess what is required, which is unconstitutional. *Fox Television Studios, Inc.*, 567 U.S. at 253.

### 2.   The State's New "Industry Interpretation" Argument Fails.

The only new argument raised in the State's Opposition is that the Entertainment Exemptions are not vague because they would be understood by people in the "entertainment

1    industry."  Opp. at 25. This argument fails for multiple reasons.

2         *First*, the supposed industry understanding of the term conflicts with the interpretation

3    urged by the State and confirms Zeleny's interpretation.  Zeleny's experts, Robert Brown and

4    Michael Tristano, confirm that "authorized participant" is understood to include every actor who is

5    *authorized by the producer* to participate in the film.  *See* Robinson Decl., Dkt. No. 162-1; Exs. C,

6    D.  The performers are not required to have EFPs.  Under this interpretation, the producer does the

7    authorizing, not a government agency.[3]  The State offered no evidence of industry understanding to

8    the contrary.  Zeleny is thus entitled to authorize cast members in his production, including himself.

9         Moreover, the industry approach is consistent with the purpose of the EFP statute, which

10   relates to the transfer of firearms.  Under the industry approach, the prop master must have an EFP

11   to receive the firearms loaned from a prop house.  The EFP does not address possession by actors

12   during filming.  The prop master does not "authorize" the participants, but merely verifies that they

13   are not barred from possessing firearms—*i.e.*, due to a felony conviction or mental illness.  *Id.*

14         *Second*, the state has failed to define the relevant industry with any specificity.  There is no

15   "entertainment industry" that is easily or clearly defined.  The exemptions apply to "motion picture,

16   television or video production, or *other entertainment events*", all of which are also undefined.[4]

17   While Mr. Brown and Mr. Tristano confirm that there are normal film permitting requirements for

18   movie and television productions, neither could possibly opine on what "industry standards" would

19   govern "other entertainment events".  They do not and could opine about what "authorized

20   participant" means in terms of a play, a concert, a circus, or a Wild West show at a county fair.

21         The case cited by the State, *Donovan v. Royal Logging Co.*, 645 F.2d 822 (9th Cir.1981), is

22   unavailing.  The regulation at issue applied specifically to the highly-regulated *logging* industry.  It

23   imposed on loggers specifically a "general duty" to eliminate recognized hazards.  *Id.*  It was a

24

25   [3] This is also consistent with the rest of the exemption, which also exempts "an authorized employee or agent
     of a supplier of firearms."  Cal. Penal Code §§ 26375, 26405(r).  This language confirms that "authorized"

26   means someone authorized by the employer, not a government agency.

27   [4] In fact, the State relies on the vagueness of "other entertainment event" to exclude Zeleny's protests, which
     are filmed for later distribution and live-streamed to the public and thus are "entertainment events".

28

REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL

1    labor regulation that had nothing to do with First Amendment concerns.  The Court noted that such

2    "general duty" clauses often raise issues of fair notice.  *Id*. at 831.  But, in that particular context,

3    the Court noted that a reasonably prudent employer in the logging industry would have understood

4    the obligation imposed under the job conditions at issue.  *Id*.

5            The State does not, and cannot, point to any similar industry custom here that is broadly

6    applicable to the "entertainment industry."  The "entertainment industry" is not a discrete, highly-

7    regulated industry such as logging.  Nor can the State identify any reference in the statutes,

8    legislative history, or DOJ guidance supporting its contention, because none exist.  If it were really

9    that obvious what the undefined terms meant, it would not have taken the State five tries to reach a

10   definition, after months of take-home exam in the form of an interrogatory.

11           ***Third***, and finally, the State's proposed definition actually adds more confusion than it

12   solves.  The State proposes to define "authorized participant" as "someone operating *under the*

13   *auspices* of a DOJ Entertainment Firearms Permit holder," and claims that unidentified people in

14   the "entertainment industry" would know that.  Opp. at p. 25.  Of course, the State offers no citation

15   or expert testimony in support.  Neither the Entertainment Exemptions, nor their legislative history,

16   make any mention whatsoever of the EFP.

17           Worse still, the State makes no effort to explain what "under the auspices" means.  Under

18   the State's proposed construction, it remains totally unclear whether "under the auspices" means a

19   person holding an EFP or someone working with an EFP holder.  It also remains unclear whether

20   Zeleny would qualify as an "authorized participant" by getting an EFP, or whether the EFP holder

21   must be a separate person in order for Zeleny to be acting "under the auspices" of such person.  The

22   EFP is directed at allowing the holder to obtain loaned firearms from a third party, but what

23   happens if the "authorized participant" is also the registered owner of the firearms?  The State

24   makes no effort to address these issues, and its proposed definition is of no value.

25           The phrase "under the auspices" also has no basis in the text of either statute.  It is just as

26   vague, if not vaguer, than "authorized participant."  A reasonable person—including Zeleny—

27   would still have no idea how to comply.  In a prosecution for open carry, a jury could not seriously

28   be instructed that a defendant has a defense if he was acting "under the auspices" of an EFP holder.

REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL

1   The State's new definition makes matters worse, not better.

2       ***Finally***, putting a government official in charge of "authorizing" participants in an

3   entertainment production would ultimately lead back to content-based discrimination in favor of

4   some people's messages and against others' based on the personal preferences of the official.  No

5   government official can constitutionally be deciding whether Sasha Baron Cohen or Michael Moore

6   or Bruce Willis or Michael Zeleny is authorized to use a firearm in a film.  The State's latest

7   attempt to define a standard is no more constitutional than any of its earlier failed efforts.

8       **D.    California's Open Carry Ban Violates the Second Amendment.**

9       In his Motion for Partial Summary Judgment and his Opposition to the State's Motion,

10  Zeleny argued that California's comprehensive ban on the public carrying of firearms violates the

11  Second Amendment.  The parties' Motions and respective Oppositions have addressed this issue in

12  detail.  The Court now has nearly a hundred pages of briefing on this important issue.

13      In its Opposition, the State has not raised any arguments or authority beyond those already

14  framed in the prior round of briefing.  In the interest of brevity, Zeleny will not rehash those

15  arguments again.  Suffice it to note that the Supreme Court's decisions in *Heller* and *McDonald* spell

16  the end of the State's comprehensive ban on nearly all forms of public carry.  The direction of the

17  law's evolution is clear.  If this Court does not decide this case in Zeleny's favor on the basis of the

18  Entertainment Exemptions, it should do so on the bases that California's comprehensive ban of

19  public carry of both hand guns and non-hand guns, loaded or unloaded, is unconstitutional.

20  **V.    CONCLUSION**

21      For all the foregoing reasons, Defendant's Motion for Summary Judgment should be denied,

22  and Zeleny's Motion for Partial Summary Judgment should be granted.

23  Dated:  February 11, 2021                    Respectfully submitted,

24                                                s/ Brian R. England
                                                  David W. Affeld
25                                                Brian R. England
                                                  Damion D. D. Robinson
26                                                Affeld Grivakes LLP

27                                                Attorneys for Plaintiff Michael Zeleny

28

REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL

1

**<u>PROOF OF SERVICE</u>**

2

I hereby certify that on February 11, 2021, I electronically filed the foregoing document

3

using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will

4

send a notice of electronic filing to the interested parties.

5

s/ Gabrielle Bruckner
Gabrielle Bruckner

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST CALIFORNIA ATTORNEY GENERAL