**TODD H. MASTER [SBN 185881]**
tmaster@hrmrlaw.com
**ROBERT J. GUNDERT [SBN 104486]**
rgundert@hrmrlaw.com
**HOWARD ROME MARTIN & RIDLEY LLP**
1900 O'Farrell Street, Suite 280
San Mateo, CA  94403
Telephone:     (650) 365-7715
Facsimile:     (650) 364-5297

Attorneys for Defendants
CITY OF MENLO PARK and DAVE BERTINI

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

MICHAEL ZELENY, an individual

                Plaintiff,

    vs.

EDMUND G. BROWN, JR., an individual, in
his official capacity, et al.

                Defendants.

Case No. 17-cv-07357-RS (TSH)

**REPLY OF DEFENDANTS CITY OF
MENLO PARK AND DAVE BERTINI TO
PLAINTIFF'S OPPOSITION TO MOTION
FOR SUMMARY JUDGMENT OR, IN THE
ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT**

**Date:  March 18, 2021**
**Time:  1:30 p.m.**
**Dept.:  Courtroom**
**Judge: Hon. Richard Seeborg**

**Trial Date: None**

HOWARD ROME MARTIN & RIDLEY LLP
1900 OFARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

**<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

THE CITY PROPERLY DENIED PLAINTIFF'S SPECIAL EVEN
APPLICATION                                                                 2

    Plaintiff Wrongly Claims the City Did Not Disclose its Reasons for
    Denying His Special Event Application                                  2

    The City's Reasons for Denying Plaintiff's Special Event
    Application Were Valid                                                 4

    Plaintiff's Reading of Penal Code Sections 26375 and 26405(r)
    Makes No Sense                                                         4

    Plaintiff Continues to Claim that the City Denied His Permit on
    Obscenity Grounds                                                      7

    It Took Two Years to Process Plaintiff's Special Event
    Application Because of Delays Attributable to Plaintiff and His
    Circumstances                                                          10

    It was Entirely Appropriate for the City Attorney to Respond to the
    Plaintiff and for the Police Commander to Provide Input                12

    Plaintiff's Failure to Complete the Film Permit Process Dooms His
    As-Applied Claim                                                       13

    Chapter 13.18 of the City's Municipal Code Applies to Film Permits
    And is Proper                                                          14

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Cox v. New Hampshire,* 312 U.S. 569, 574-575 (1941)                                    4

Desert Outdoor Advertising, Inc. v. City of Oakland,
506 F.3d 798 (9th Cir. 2007)                                                            15

*Epona, LLC v. County of Ventura,* 876 F.3d 1214 (9th Cir. 2017)                         15

*G.K. Ltd. Travel v. City of Lake Oswego,* 436 F.3d 1064, 1082 (9th Cir. 2006)           15

*Gallinger v. Beccerra,* 898 F.3d 1012, 1021 (9th Cir. 2018)                             4

*McCullen v. Coakley,* 573 U.S. 464, 466 (2014)                                          4

*Thomas v. Chicago Park District,* 534 U.S. 316 (2002)                                   15

*United States v. Torres,* 911. F.3d 1253, 1263-1264 (9th Cir. 2016)                     4

*Statutes*
Penal Code sections 26350 and 26400                                                     5, 6
Penal Code sections 26375 and 26405(r)                                                  6
Penal Code section 29800                                                                6
Penal Code section 313.1                                                                9

1  **THE CITY PROPERLY DENIED PLAINTIFF'S SPECIAL EVENT APPLICATION**

2  **Plaintiff Wrongly Claims the City Did Not Disclose Its Reasons for Denying His Special Event Application.**

3

4  At various points in his opposition papers plaintiff makes the surprising claim that the

5  City did not disclose its time, place and manner reasons for denying his Special Event Application.

6  The evidence clearly shows otherwise.

7  Plaintiff's first Special Event Application was submitted on July 10, 2015 via e-mail

8  directed to City Attorney William McClure, City Recreation Coordinator Matt Milde and the

9  Menlo Park Police Chief, with copies to his attorneys.  [Doc. 162-2, Pages 46-52]

10  On July 24, 2015 City Attorney William McClure replied to plaintiff by e-mail, stating that

11  the application was incomplete since it did not show where various items were to be located.  Mr.

12  McClure pointed out that "[i]t is your obligation to be precise in your application as to the location,

13  including dimensions of the area proposed to be utilized."[1]  Mr. McClure's e-mail asked for

14  clarification in various other respects (i.e. length of the event, hours for the proposed use of audio

15  and lighting, and what plaintiff meant by "the lawful defense of the site").  Mr. McClure's e-mail

16  concluded with "At this point, we cannot further process your application without your providing

    further clarification as noted above." [Doc. 162-2, Pp. 55-56]

17  Apparently, plaintiff understood what was being asked, even though he did not respond as

18  required.  For instance, rather than providing details and being precise with regard to where his

19  items would be located, he simply stated that his "display would be confined to the median strip of

20  Sand Hill Road directly across from NEA headquarters."  [Doc. 162-2, Pg. 54]  He also provided a

21  general, non-specific assurance of safety and objected to "requir[ing] me to lay out my location and

22  its dimensions to the last inch" (even though that was not what Mr. McClure had asked).  [Id.]

23  Thereafter, on September 21, 2015, City Attorney McClure sent a letter denying plaintiff's

24

25  ───────────────

26  [1] Section 3 of the application required the applicant to provide "a **detailed** site plan."  [Emphasis in original.] [Doc. 162-2, Page 50]  In addition, at the end of Section 3 the application states, **Note:** Incomplete and vague site maps will delay the permit process." [Emphasis in original.]

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE: (650) 365-7715

application because a.) the application was incomplete, b.) the application did not describe a special event as opposed to a "media production" for which a film permit would be needed, c.) conducting activities in the median created driver safety concerns and issues, and d.) the open carry of firearms in California was illegal and the project, as described, did not indicate a logical nexus or legitimate purpose for carrying a firearm.  A copy of the "Film Production in Menlo Park" handout was also provided to plaintiff. [Doc. 162-2, Pp. 76-79]  The reasons for denial were clearly expressed and this was the case subsequently at each step of the way as plaintiff appealed the denial of his Special Event Application.  [Doc. 162-2 at Pp. 61-106]

The appeal process proceeded to a de novo appeal hearing before City Manager Alex McIntyre on August 11, 2016.  A written decision was issued on September 12, 2016.  The City Manager's decision laid out numerous specific reasons for denial of plaintiff's application.  [Doc. 162-2, Pp. 65-68]  The pertinent bases for denial were:[2]

> ➢ Special Event Permits ("SEPs") are not intended to regulate protests or filming of protests in the public forum areas of the City.

> ➢ Special events are time limited and not of an ongoing nature.

> ➢ Plaintiff is free to protest in compliance with laws, but in view of the City's obligation to protect public safety he could not do so in the median under State law . . . and could not camp or sleep on . . . any portion of the right-of-way.

> ➢ Display of unloaded firearms could be a violation of the Penal Code.  State law prohibits display of unloaded firearms with the exception of using firearms loaned to the permittee as props as defined in Penal Code 29500-29530.

> ➢ Vehicle Code Section 22507 provides broad discretion to cities over parking on public rights-of-way and in this case, parking is not allowed on Sand Hill Road in the proposed area of the protest.
> ➢ The proposed monitor and related equipment cannot impair a driver's vision block the sidewalk under Vehicle Code Section 21466.5.

> ➢ The lights, and video display also have the potential to impair a driver's vision.

---

[2] For simplicity, certain points of decision are not listed since they would apply only if plaintiff were to engage in the activities reference (i.e. brandishing a weapon, occupying the sidewalk, refusing to permit inspection of his weapons as required by Penal Code 28500(b) and carrying a loaded firearm).

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE: (650) 365-7715

➢ Driving upon or parking a vehicle or conducting in the median violates Vehicle Code Section 21651.

➢ The lighting at night would be highly distracting to motorists, cyclists and pedestrians.

➢ City medians are not traditional public forum areas and are inappropriate and unsafe.

➢ The proposed location encourages the public to cross a busy arterial roadway on to A median area that is without sidewalks, encourages the public to cross traffic and view the monitor and hand-outs in an area of high speed and high-volume traffic, which is a safety issue.

➢ The median is adjacent to the entrances and exits of Interstate 280, making the location unsafe and dangerous to pedestrians, cyclists and vehicles. A display or protest in the median could also block vehicular sight lines and impair public safety for pedestrians, cyclists and automobiles under Municipal Code section 11.44.030

Thereafter, following plaintiff's appeal to the City Council, the City Council upheld the City Manager's decision on the same grounds. [Doc. 160-6 at 193-196]

Given all of the foregoing, it is not clear how plaintiff can say that the City refused to disclose time, place or manner standards or rationale for its decisions. The City made its time, place and manner requirements clear to plaintiff at each step along the way.

**The City's Reasons for Denying Plaintiff's Special Event Application Were Valid.**

The City's reasons for denying plaintiff a Special Event Permit were based on considerations of public safety, traffic control and enforcement of the law. The courts have recognized that a municipality has a legitimate, substantial interest in public safety, traffic control and law enforcement. *See McCullen v. Coakley,* 573 U.S. 464, 466 (2014) (Massachusetts' "legitimate interests in maintaining public safety on streets and sidewalks"); *United States v. Torres,* 911. F.3d 1253, 1263-1264 (9th Cir. 2016) ("the important government interest of ensuring the safety of both the public and its police officers."); *Gallinger v. Beccerra,* 898 F.3d 1012, 1021 (9th Cir. 2018) (public safety) and *Cox v. New Hampshire,* 312 U.S. 569, 574-575 (1941).

Each of the City Manager's reasons for denying plaintiff's application related to public

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

safety and/or compliance with local or state law. The primary issue that plaintiff addresses in this litigation is the City's position regarding the exemptions to the firearms open carry prohibition. That issue is discussed below.  What plaintiff does not address, except in the most general terms, are the other public safety issues cited by the City Manager.  Plaintiff does not and cannot challenge the fact that the median is located in the middle of a busy, high speed arterial highway and that although early on in the process he stated that his activities would be safe because there is no stopping on Sand Hill Road, he later said that he would be passing out souvenirs and engaging in real time conversations with those passing by.  *Compare* Doc. 162-2 at Pp. 71 and 121.  He also planned to occupy the site on a 24/7 basis, sleeping in his truck while his weapons and ammunition were on site. Zeleny Depo at 106:9-107:18; 121:19-122:3 (Doc. 160-6 at Pp. 20, 23-24)

On top of all of that, plaintiff's submittals to the City stated that he had received death threats from those that he would be protesting and that he wished to have ammunition with him for self-defense purposes.  Defendants are not aware of any legal authority that requires a municipality to permit someone to homestead on a roadway median and thereby claim the right to defend that ground against assailants.

These public safety concerns, in and of themselves, provided sufficient bases for denying plaintiff's Special Event Application.  No more need be said to justify the City's denial of plaintiff's application or the lack of merit to plaintiff's as-applied claim regarding his Special Event Application.  Even if plaintiff were correct that he was allowed to openly carry and display his guns due to the exemptions to the open carry prohibitions these other public safety reasons were sufficient to deny his application.  Since plaintiff has raised the issue defendant addresses it as well.

### Plaintiff's Reading of Penal Code Sections 26375 and 26405(r) Makes No Sense

Plaintiff claims that he was entitled to designate himself as an "authorized participant" in his own video production or entertainment event and thereby be exempted from the firearms open carry prohibitions of Penal Code §§ 26350 and 26400.  Plaintiff's position makes no sense for various reasons.

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE: (650) 365-7715

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**HOWARD ROME MARTIN & RIDLEY LLP**
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

As the State's motion for summary judgment points out, the California Legislature had compelling reasons for enacting the open carry prohibitions of Penal Code §§ 26350 and 26400.  It strains belief to think that all one would have to do in order to get around those prohibitions would be to open up the video feature on a cell phone and designate oneself an authorized participant in one's own selfie "video production."   That is how plaintiff reads the exemptions to the open carry prohibitions of Sections 26350 and 26400.  If plaintiff's view of the exemptions were correct the exemptions would swallow the prohibition.

Penal Code § 26350 outlaws the open carry of an unloaded handgun while in a public place or public street in an incorporated city or city and county.  Penal Code § 26400 outlaws the unloaded carry of a firearm that is not a handgun while in an incorporated city or city and county.  Thus, the general rule is that no one is permitted to openly carry an unloaded handgun while in a public place or on a public street within a city such as Menlo Park and no one may carry any other unloaded firearm within an incorporated city such as Menlo Park.  By designating the areas where open carry is prohibited the Legislature has given incorporated cities and counties the right to enforce the prohibitions within their jurisdictions, subject to the exemptions.

The exemptions of Sections 26375 and 26405(r) apply to an authorized participant in a motion picture, television or video production, or entertainment event.  When, as in this case, someone is proposing to conduct an activity such as a motion picture, television or video production or an entertainment event on public property permission must be obtained from the public entity in charge of those locations in order to conduct such an activity or event.  A public entity, such as the City of Menlo Park, is permitted to determine, on public safety grounds, whether a permit should be issued for such activities and thus whether certain participants in those activities are authorized within the meaning of the exemptions.  Accordingly, the City, through its permitting processes, has the authority in the first instance to determine if a video production or entertainment event is to be permitted to occur on public property.  If the activity is permitted, and so long as those handling firearms are not disqualified from doing so (such as under Penal Code § 29800) and

_____

1   there are no other legal or legitimate public safety concerns, the exemptions may apply.  But unless

2   and until such a permit is issued the prohibitions apply.

3        Another problem with plaintiff's argument is that he was planning to conduct a protest,

4   which is not exempted.  No permit is needed for a protest but the open carry exemptions also do

5   not apply to a protest.  To get around that plaintiff tried to take back the fact that he was proposing

6   to protest and claimed that he was really engaging in an entertainment event.  Plaintiff's own

7   submittals showed that the predominant purpose of what he wanted to do was to protest, however.

8        At times plaintiff tried to call his proposed activities both a protest and an entertainment

9   event, a hybrid of sorts.  But the exemptions do not apply to hybrids, and even if they did the City

10  had the authority to determine if a permit should issue for plaintiff's activities if they were to occur

11  on public property.  In making that determination the City had the right to evaluate public safety

12  and traffic issues and to deny the application for a permit whether or not the exemptions might

13  apply.  In other words, even if the exemptions could apply to plaintiff's proposed activities, it does

14  not mean he was entitled to a permit.  In that sense the exemption issue is really a red herring since

15  the City had the right to deny plaintiff's applications on other grounds regardless of whether or not

16  the exemptions might apply.  Nothing in the exemptions required the City to issue plaintiff a permit

17  if there were valid grounds for denying his application for same.

18      **Plaintiff Continues to Claim that the City Denied His Permit on Obscenity Grounds**

19       Despite clear evidence to the contrary, plaintiff claims that the City denied his permit

20  applications on obscenity grounds.  Plaintiff's mischaracterization of what the City did and said in

21  that regard betrays a lack of confidence in his position.

22       Plaintiff's obscenity argument is found at Page 21, Lines 6-24 of its opposition

23  memorandum.  Of those nineteen lines of text, one paragraph of six lines sets forth the basis of

24  plaintiff's claim that the City denied plaintiff's application on obscenity grounds.  Here is what

25  plaintiff says: "The City Manager explicitly listed 'obscenity laws' as a basis to deny Zeleny's

26  SEP, despite making no finding that Zeleny's content was obscene.  Zeleny Decl., Ex. 8 at p. 11."

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE: (650) 365-7715

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE: (650) 365-7715

The latter part of that statement is correct.  The City Manager made no finding that plaintiff's content was obscene.  The first part of plaintiff's statement is not correct and is misleading.  Here is what the City Manager said at that part of his decision:

Public Rights-of-Way

Public use of rights-of-way and medians are subject to the California Vehicle Code and the Menlo Park Municipal Code. These legitimate and content-neutral regulations that serve a significant government interest include parking and time limits, obstruction of sidewalks and obscenity laws.

• Vehicle Code Section 22507 provides broad discretion to cities over parking on public rights-of-way (in this case, there is no parking on Sand Hill Road in the proposed area of your protest).
• The proposed monitor and related equipment cannot impair a driver's vision block the sidewalk under Vehicle Code Section 21466.5. The proposed lights, and video display also have the potential to impair a driver's vision.
• Driving upon or parking a vehicle or conducting in the median violates Vehicle Code Section 21651.

The City Manager cited various interests that cities have in regulating rights-of-way and medians, with obscenity laws being among them.  But he made no finding that the images plaintiff proposed to display violated those laws.

The next thing that plaintiff states in his one paragraph argument about what the City did or said regarding plaintiff's images, is that "Bertini made clear in multiple hearings that he considered Zeleny's content 'important, salient information'.  Robinson Supp. Decl., Ex. 2 at 476. He made sure to include an image of one of Zeleny's cartoons, depicting sexual activity, in his presentation. Robinson Decl., Ex. CC at MP-1199."

Here again, some of what plaintiff asserts is true, but he tells only part of the story, and in a misleading way.  Plaintiff's counsel cites to Page 476 of the Bertini deposition and to a packet of materials (found at Robinson Decl., Ex. CC at MP-1199) referenced in such testimony.  The testimony at that point was as follows:

Q. Some of the information that the city council needed to have, in your view, was this image that Mr. Zeleny proposed to display; is that fair?

[Objection]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

THE WITNESS: Both images were provided by Mr. Zeleny as to what he would plan to display as part of his, quote, unquote, special event, and that was important, salient information that the city council should know.

BY MR. ROBINSON:

Q. Did you include the photo of the gun for the same reason?

A. I did just say that, Counsel; I did. I said both photos.

The testimony here related to the fact that defendant Bertini had included in a packet of materials for the City Council to review a copy of two images, both of which plaintiff had submitted as part of his application for a Special Event Permit.  One of those images was one of the guns he planned to display while occupying the median.  The other was the sample image of "sexual violence" that plaintiff stated he planned to display.  Defendant Bertini included such images in the packet for the City Council to review in order to evaluate plaintiff's application.

Plaintiff's position appears to be that he can apply for a permit, provide a sample image of one of the "explicit representations of sexual violence" that he plans to display, but the City may not constitutionally even consider that image in order to determine whether or not it is obscene as to minors under Penal Code § 313.1 or otherwise.  That position is ludicrous.  It would be like asking this court to make that same determination without any ability to view the image itself.

Plaintiff's last evidentiary reference in support of his argument that the City denied his Special Event Application on obscenity grounds is found at "Zeleny  Decl., Exs. 11, 13."  Those exhibits relate to his film permit application, however, not to his Special Event Application.  As discussed below, the City never denied his film permit application.  It asked for pertinent information that he refused to provide.

Plaintiff claims that the City denied his Special Event Application on the ground of obscenity but that is not true.  The City denied his permit application on other grounds and all he really can say is that the sample image he himself had provided to the City for consideration with his application was viewed by the City.

_____

REPLY OF DEFTS. CITY OF MENLO PARK & DAVE BERTINI TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT; Case No. 17-cv-07357-RS (TSH)       -9-

1

2

**It Took Two Years to Process Plaintiff's Special Event Application Because of Delays Attributable to Plaintiff and His Circumstances**

3

At various places in his opposition papers plaintiff claims that it took two years to process

4

his Special Event Application because of delays on the part of the City.  The evidence shows that it

5

was plaintiff that caused the delays.

6

Plaintiff first submitted as Special Event Application on July10, 2015.  He sent an e-mail on

7

July 24, 2015 asking why he had not heard back yet since the City website referred to a three day

8

turnaround time.  City Attorney William McClure responded a little over an hour later, asking

9

plaintiff for certain specifics and stating that the City could not process the application until they

10

were provided.  [Doc. 162-2, Pg. 55] As also noted above, plaintiff responded to Mr. McClure's e-

11

mail but did not provide specifics about his site set-up.  Subsequently, with no further information

12

forthcoming from plaintiff, a denial letter was sent out on September 21, 2015.  It was not until

13

almost **seven months later** that plaintiff sent an e-mail, claiming to appeal the earlier denial and

14

attaching a new application.

15

Plaintiff's submittal was not considered to be an appeal since he submitted a new

16

application with various changes, most notable of which was that he would be carrying **loaded**

firearms.  His new application was denied less than three weeks later, on May 4, 2016.

17

Plaintiff's appeals proceeded along and came before the City Manager for a de novo appeal

18

hearing on August 11, 2016.  The City Manager's decision was issued on September 12, 2016. On

19

September 16, 2016 plaintiff sent an e-mail stating that he wished to appeal the City Manager's

20

decision to the City Council.  [Doc. 168-1, Pg. 4]

21

On October 12, 2016 the City Clerk sent an e-mail, letter and notice to plaintiff and his

22

attorney, setting the City Council appeal hearing for October 25, 2016. [Doc. 168-1, Pp. 6-8]

23

Counsel for plaintiff responded by e-mail stating that plaintiff had undergone emergency surgery

24

and asked if a date in November could be set.  [Doc 168-1, Pg. 10]

25

The City Clerk responded on October 13, 2016 stating that the Council's agenda was

26

compacted such that a hearing could not be set until the next year.  She followed up with an e-mail

HOWARD ROME MARTIN & RIDLEY LLP
1900 OFARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

on November 16, proposing two dates in January and two in February.  Hearing nothing, she followed up again on December 12, 201, attaching the Council's calendar and asking plaintiff and his attorney to pick a date for the hearing.

It was not until February 17, 2017 that plaintiff wrote back, apologizing "for the lengthy delay" and asking for hearing dates.  The City Clerk responded on February 23, 2017 setting the hearing date for April 4, 2017.  Plaintiff responded on the following day, asking for an earlier date since his wife was due to give birth on April 18, 2017.  The City Clerk responded on March 15, 2017 indicating that the hearing could be held on March 28, 2017.  Plaintiff did not respond until March 22, 2017 so that the hearing was taken off calendar.  He did respond on March 27, simply referring again to his wife's pregnancy and requesting a copy of an audiotape.  Thereafter, and having heard nothing further, the City Clerk wrote on June 20, 2017, setting the hearing date for August 29, 2017.

As the foregoing shows, eleven and one-half months passed from the date of the City Manager's decision on September 12, 2016 to the date of the City Council hearing on August 29, 2017.  The City Clerk set three hearing dates (October 25, 2016, April 4, 2017 and March 28, 2017) that plaintiff was not able to make due to surgery and his wife's pregnancy.  In addition, there was a period from November 2016 to February 2017 where plaintiff and his counsel were not responding at all.

The bottom line is that plaintiff's claim that City delays resulted in a two year period for processing his application is simply not true.  He did not respond sufficiently to the City Attorney's first e-mail regarding his initial application, took seven months to appeal the denial of his initial application, submitted a new application with new information thus starting the process over again, and thereafter, due to surgery, pregnancy and non-responsiveness, there was a ten month delay between the October 25, 2016 initially scheduled City Council hearing date and the actual August 29, 2017 hearing date.  Circumstances not at all attributable to the City resulted in delays of at least 17 months.

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

On top of that, if plaintiff had heeded the response by the City Attorney that his project would need a film permit rather than a Special Event Permit, he could have avoided that entire period of time and gone directly to the film permit process.

**It Was Entirely Appropriate for the City Attorney to Respond to the Plaintiff and for the Police Commander to Provide Input**

Another claim made by plaintiff is that it was inappropriate for the City Attorney to handle the denial of his applications.  Plaintiff also claims that defendant Bertini denied his applications (which is not true) or was otherwise improperly involved.  Like so many of plaintiff's claims, he cherry picks portions of testimony or other evidence in order to try to create an illusion of impropriety, when in fact he not only lacks (or fails to state) all of the evidence, but he also bases much of his claim on conjecture and fails to show how what was done made any difference in terms of the denial of his applications.

Plaintiff cites to the deposition testimony of Matt Milde, the City's then Recreation Coordinator, and the person who would normally undertake the first review of a Special Event Application.  It is certainly true that Mr. Milde did not follow his usual practice of conducting an initial evaluation of the plaintiff's application.  This was because of the extraordinarily unusual aspects of plaintiff's application.  He saw that this very unusual application raised significant legal and safety issues.  He forwarded the application to his supervisor, Cherise Brandell, because he believed it should be reviewed by City leadership.  [Doc. 168-2, Ex. A—Pg. 144, Ln. 3 to Pg. 150, Ln. 14 of Milde Depo]  This was an unusual application (an "outlier" as Mr. Milde put it) and the fact that guns were involved, along with a request to conduct an event on the Sand Hill Road median, presented safety issues that caused him to forward the application up the chain of command for leadership review.  That was undoubtedly the most prudent thing for him (and the City) to do, given the legal and public safety issues implicated by the application and given also Mr. Milde's general unfamiliarity with California firearms laws.

In addition, plaintiff glosses over the statement in City Attorney McClure's July 24, 2015 e-mail, in which he stated that the application had been submitted to City departments for review.

[Doc. 162-2, Pg. 55] Regardless of who reviewed the plaintiff's initial application a legal opinion was going to be necessary, whereupon the City Attorney would have to get involved.  The City Attorney's letters do not state that he made the decision unilaterally.  Rather, he circulated the application to various City departments and obtained input, including input from the Police Department.

This brings us to defendant Bertini.  At times plaintiff claims that defendant Bertini denied his application and at other times he is not so sure what his role was.  Defendant Bertini has submitted an application stating that he did not make any decision regarding plaintiff's applications but simply provided input for the decision makers.  [Doc. 160-1, Para. 11]  There is certainly nothing wrong with that and, again, given the public safety and traffic issues involved it was most prudent and appropriate to obtain input from the command staff of the Police Department.

The bottom line is that the City Attorney and the Police Department, represented in this case by then Commander Dave Bertini, were appropriately involved in the evaluation of plaintiff's application and plaintiff has not shown that such involvement infringed his rights.  The reasons for denial of his Special Event Application were laid out clearly and were proper.

**Plaintiff's Failure to Complete the Film Permit Process Dooms His As-Applied Claim**

As the defendants' moving papers point out, plaintiff did not complete the film permit application process.  He was asked multiple times to respond to legitimate questions that needed to be answered for public safety purposes.  He was asked to be specific about where he planned to place his items so that the City could better analyze for safety and traffic control purposes, the guns to be used and how they were to be used, and the directions they would face, since brandishing weapons at those passing by to film their reactions would not be acceptable. [Doc. 160-2, Pp. 118-119]  He was also asked to confirm the guns would be used for film production purposes, and whether he intended to use fake props or live ammunition. If the latter, Mr. Flegel remarked that "it is unclear why live ammunition would in any way be necessary for your film production." [Id.]  These are reasonable, responsible questions, which plaintiff brushes off as illegitimate.  His failure

HOWARD ROME MARTIN & RIDLEY LLP

1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

1   to answer those questions precluded the City from reviewing the obvious safety issues associated

2   with his application and stalled the permitting process.  Unless and until he provided answers to

3   those questions the City could not determine whether the safety issues associated with his film

4   project.

5          Plaintiff argues that the City has been sitting on his film permit application for three years,

6   when it was he who halted the process, filed suit and continues to refuse to answer the public safety

7   questions asked of him.

8          **Chapter 13.18 of the City's Municipal Code Applies to Film Permits and is Proper**

9          Chapter 13.18 of the City's Municipal Code applies to encroachment permits.  Despite what

10  plaintiff argues, the City's encroachment permit process covers film permits and both plaintiff and

11  his counsel were alerted to that fact on multiple occasions.

12         Plaintiff claims that the City has belatedly come up with a new argument that the City's

13  encroachment permit process applies to film permits.  This is false.

14         The very application that plaintiff filled out in order to obtain a film permit is titled

15  "Encroachment Permit Application."  See Doc. 160-2, pp. 90-94 and 99-104.

16         Citing to Robinson Supp. Decl., Ex. 1 at 240, plaintiff points to testimony by Dave Bertini

17  in which he was asked if he was aware of any ordinances that governed film permits.  He stated

18  that he was "not aware of any specific ordinances that govern film permits."  Although defendant

19  Bertini was not aware of the encroachment permit ordinance he was aware that the encroachment

20  permit process applied.  Supp. Decl. of T. Master, Ex. A, Pg. 2 thereof.  This process was not

21  simply made up for purposes of this litigation.

22         Citing to Robinson Supp. Decl., Ex. 4 at 76, plaintiff also points to testimony from Nicolas

23  Flegel, in which he was asked if he was aware of "any specific sections of those codes that you're

24  aware of that staff would be looking at?  He answered in the negative.  But what plaintiff did not

25  cite was the testimony from two pages earlier, in which Mr. Flegel was asked about written factors

26  or policies applicable to film permits.  After mentioning the Vehicle Code and other California law,

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715

1   he was asked to be more specific and added "And there's municipal code.  I mean there is an

2   encroachment permit process for this.  There's a – in terms of other specific factors?  No." .  Supp.

3   Decl. of T. Master, Ex. B, Pp. 2-4.  See also Pp. 5-6 of that same exhibit, in which plaintiff's

4   counsel showed the witness the encroachment permit application and asked, "What is the function

5   of this encroachment permit in the context of Mr. Zeleny submitting it?" Mr. Flegel answered,

6   "Well, this is the film permit.  That's the entire function."

7        Although plaintiff claims that Chapter 13.18 only applies to construction, Section 13.18.020

8   states that an encroachment permit is required for "any work . . . in or upon any real property in

9   which the City has an interest, whether by title, easement, right-of-way, license or otherwise."

10        Plaintiff argues that the decision in *Epona, LLC v. County of Ventura,* 876 F.3d 1214 (9th

11   Cir. 2017) governs this case and is the leading case.  But with regard to the City of Menlo Park's

12   film permit process, two of the decisions that *Epona* distinguishes are far closer to this case.  *See*

13   *G.K. Ltd. Travel v. City of Lake Oswego,* 436 F.3d 1064, 1082 (9th Cir. 2006) and Desert Outdoor

14   Advertising, Inc. v. City of Oakland, 506 F.3d 798 (9th Cir. 2007).  As pointed out in the moving

15   papers, the ordinance in *Thomas v. Chicago Park District,* 534 U.S. 316 (2002) is also very close to

16   Chapter 13.18.  Defendants refer the Court to the detailed analysis and comparison of Chapter

17   13.18 with the Chicago Parks ordinance.

18        There is much more that defendants would like to address concerning plaintiff's opposition,

19   but page limit constraints prevail.  If the Court would like additional briefing on any issue

20   defendants would be glad to provide such.

21   DATED: February 11 2021

22                      HOWARD ROME MARTIN & RIDLEY LLP

23                      By:  /s/ Robert J. Gundert
24                           Todd H. Master
                             Robert J. Gundert
25                           Attorneys for Defendants
                             CITY OF MENLO PARK and
26                           DAVE BERTINI

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA  94403
TELEPHONE (650) 365-7715