David W. Affeld, State Bar No. 123922
Brian R. England, State Bar No. 211335
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:    (310) 979-8700

Attorneys for Plaintiff Michael Zeleny

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY, | Case No. CV 17-7357 JCS |
| Plaintiff, | Assigned to: |
| vs. | The Honorable Richard G. Seeborg |
| GAVIN NEWSOM, *et al.*, | Discovery Matters: |
| Defendants. | The Honorable Thomas S. Hixson |

**PLAINTIFF MICHAEL ZELENY'S
REPLY IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT
AGAINST CITY OF MENLO PARK AND
DAVE BERTINI**

Date:        March 18, 2021
Time:        1:30 p.m.
Courtroom: 3, 17th Floor

Action Filed:  December 28, 2017
Trial Date:    TBD

- 1 -
REPLY ISO MOT. FOR SUMM. J.
AGAINST CITY OF MENLO PARK AND BERTINI

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   THE CITY'S PERMITTING SCHEMES ARE UNCONSTITUTIONAL ......................2

      A.   The Undisputed Facts show that the SEP Process Is Invalid as a Matter
           of Law.................................................................................................................2

           1.   The SEP Policy Covers A Substantial First Amendment
                Conduct. ...............................................................................................2

           2.   The SEP Policy Violates *Epona* as a Matter of Law.................................3

                a.   No Narrow, Objective, and Definite Standard .............................3

                b.   No Time Limit ..................................................................................5

           3.   The City Cannot Define "Special Events" to Exclude Protests. ...............5

      B.   The Undisputed Facts Demonstrate that the Film Permit Process Is
           Invalid.................................................................................................................6

III.  THE CITY'S EVASIONS ARE UNAVAILING ..........................................................7

      A.   The City Fails to Create Disputes of *Material* Fact. ........................................7

      B.   The City's "Time, Place, and Manner Reasons" Fail to Create a
           Dispute of Material Fact.....................................................................................8

      C.   The City's Ownership of the Median Strip Is Irrelevant.....................................9

      D.   The Construction-Encroachment Process Does Not Govern and Is
           Unconstitutional If Applied to Filming. ...........................................................10

           1.   The "Construction-Related" Encroachment Process Does Not
                Apply. ..................................................................................................10

                a.   On Its Face, the Construction Process Does Not Apply..............10

                b.   The City's Theory Contradicts All of Its Discovery
                     Responses. .....................................................................................12

           2.   The Construction-Encroachment Process Would Fail *Epona*
                Anyway. ..............................................................................................13

IV.   CONCLUSION ...................................................................................................15

REPLY ISO MOT. FOR SUMM. J.
AGAINST CITY OF MENLO PARK AND BERTINI

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..................................................................................................... 7

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
    227 F.R.D. 313 (C.D. Cal. 2014) ............................................................................... 13

*Chafin v. Chafin*,
    568 U.S. 165 (2013) ..................................................................................................... 9

*City of Chicago v. Morales*,
    527 U.S. 41 (1999) ....................................................................................................... 9

*Cleveland v. Policy Management Sys. Corp.*,
    526 U.S. 795 (1999) ................................................................................................... 13

*Cty. of Lakewood v. Plain Dealer Pub. Co.*,
    486 U.S. 750 ........................................................................................................ *passim*

*Desert Outdoor Advertising v. City of Moreno Valley*,
    103 F.3d 814 (1996) .............................................................................................. 1, 4, 7

*Epona LLC v. Cnty. of Ventura*,
    No. 16-6372, 2019 WL 7940582 (C.D. Cal. Dec. 12, 2019) .............................. *passim*

*Epona, LLC v. County of Ventura*,
    876 F.3d 1214 (9th Cir. 2017) ............................................................................. *passim*

*Forsythe Cnty. v. Nationalist Movement*,
    505 U.S. 123 (1991) ............................................................................................. *passim*

*Freedman v. Maryland*,
    380 U.S. 51 (1965) ....................................................................................................... 7

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) ..................................................................................................... 5

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995) ..................................................................................................... 2

*Hyde v. Stanley Tools*,
    107 F.Supp.2d 992 (E.D. La. 2000), aff'd 31 F. App'x 151 (5th Cir. 2001) .......... 13

*Kennedy v. Allied Mut. Ins. Co.*,
    952 F.2d 262 (9th Cir. 1991) .................................................................................... 13

*Lands Council v. McNair,*
  629 F.3d 1070 (9th Cir. 2010) ................................................................. 9

*Long Beach Area Peace Network v. Long Beach,*
  574 F.3d 1011 (9th Cir. 2009) ................................................................. 3

*Magana v. Com. of N. Mariana Islands,*
  107 F.3d 1436 (9th Cir. 1997) ................................................................. 9

*McHugh v. United Serv. Auto Ass'n,*
  164 F.3d 451 ........................................................................................... 10

*Niemotko v. State of Md.,*
  340 U.S. 268 (1951) ................................................................................. 6

*Nw. Env't Def. Ctr. v. Gordon,*
  849 F.2d 1241 (9th Cir. 1988) ................................................................. 9

*Preschooler II v. Clark Cnty. Bd. of Trs.,*
  478 F.3d 1175 (9th Cir. 2007) ................................................................. 7

*Schad v. Borough of Mt. Ephraim,*
  452 U.S. 61 (1981) ................................................................................... 2

*Shuttlesworth v. Birmingham,*
  394 U.S. 147 (1969) ................................................................................. 7

*Snapp v. United Transp. Union,*
  889 F.3d 1088 (9th Cir. 2018) ............................................................... 13

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ................................................................................. 8

**California Cases**

*Brown v. Kelly Broad. Co.,*
  48 Cal. 3d 711 (1989) ............................................................................ 14

*People v. Martin* (1966)
  225 Cal.App.2d 91 ................................................................................. 10

*Sierra Club v. Napa Cnty.,*
  205 Cal.App.4th 162 (2012) .................................................................. 10

*Wilson v. Cable News Net., Inc.,*
  7 Cal. 5th 871 (2019) ............................................................................. 12

**Constitutional Provisions**

Cal. Const., Article 11, § 7 ....................................................................... 10

REPLY ISO MOT. FOR SUMM. J.
AGAINST CITY OF MENLO PARK AND BERTINI

**California Statutes**

Cal. Pen. Code § 830.1(a)(1) .................................................................................................... 10

Cal. Pen. Code § 26375 ............................................................................................................... 6

Cal. Pen. Code § 26405(r) ........................................................................................................... 6

Cal. Streets & Highways Code § 682.5(a), (c) ........................................................................... 10

Cal. Pub. Utils. Code § 5885(c) ................................................................................................. 14

**Federal Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................................... 7

Fed. R. Civ. P. 56(c)(2) .............................................................................................................. 10

Fed. R. Civ. P. 56(c)(4) .............................................................................................................. 10

REPLY ISO MOT. FOR SUMM. J.
AGAINST CITY OF MENLO PARK AND BERTINI

1  **I.      INTRODUCTION**

2          Binding precedent compels summary judgment for Michael Zeleny ("Zeleny").  The City of

3  Menlo Park and Dave Bertini (collectively, "City Defendants") fail to create a dispute on any

4  material fact.  The Court could decide this Motion simply by comparing the City's written policies to

5  those found unconstitutional in *Epona, LLC v. County of Ventura*, 876 F.3d 1214 (9th Cir. 2017)

6  ("*Epona*") and *Desert Outdoor Advertising v. City of Moreno Valley*, 103 F.3d 814 (1996).  The

7  City's policies are even more defective than the ones the Ninth Circuit invalidated in those cases.

8  *See Epona LLC v. Cnty. of Ventura*, No. 16-6372, 2019 WL 7940582 (C.D. Cal. Dec. 12, 2019)

9  ("*Epona II*") (granting plaintiff summary judgment on remand in *Epona*).

10         *Epona* is controlling here.  Zeleny cited it no less than 20 times in his opening brief.  Even

11  so, the City Defendants mention it only once, for a footnote about the scope of available relief.

12  They ignore the entire rest of the case, in particular its holding and its governing standard.  *Epona*

13  is dispositive.  The City's permitting processes fail to comply with constitutional requirements.

14  Summary judgment is appropriate.

15         Much of the Opposition is devoted to ridiculing the content of Zeleny's protests, rather than

16  addressing the serious constitutional issues raised.  Permitting schemes by their nature are prior

17  restraints, and therefore bear a presumption of unconstitutionality.  The City Defendants have

18  submitted no evidence to overcome this presumption.  The City's deflection to the content of

19  Zeleny's protests is not an answer; it is a further indictment.  All prior restraints must be strictly

20  content-neutral.  None of the City's popularity-contest atmospherics avoid summary judgment.

21         None of the City Defendants' supposed "disputed" facts is material.  The City Defendants

22  attempt to blame Zeleny for the breakdown of the permitting process, but in so doing fundamentally

23  misunderstand the constitutional issue.  Zeleny was not required to exhaust a defective process.  He

24  did not even have to apply for a permit in the first place.  The City's permitting processes themselves

25  were facially defective.  A facial challenge on constitutional grounds is proper regardless of how far

26  into the invalid process Zeleny went or who supposedly caused the process to break down.

27         The City's "time, place, and manner" justifications for denying Zeleny permits are irrelevant

28  for the same reason.  Even if the City had the best of justifications—and it didn't—this "entirely

misses the point." *Epona II*, 2019 WL 7940582, at *4. The problem with a defective process is not that it did or did not lead to a content-based decision in any particular case. The problem is that it lacks safeguards to prevent such decisions as a general rule.

The City's argument—raised more than two years into this case—that it does not own the median where Zeleny originally proposed to stage his protest events is also irrelevant. The City's policy applies anywhere in Menlo Park. Zeleny has made clear that he would relocate if needed. The City never cared about the location for Zeleny's protests. It wanted them categorically banned, anywhere within the City. Further, the City has failed to offer admissible evidence showing that it could not issue a permit even for the median—indeed, state law requires it to issue such a permit.

Finally, in an effort to salvage its patently defective film permitting process, the City tries to recast it years after the fact by grafting a construction-encroachment process onto it. As the City concedes, the encroachment process governs "construction-related activities," not filming. The encroachment ordinances do not even mention filming. The reason is obvious. If they governed film permitting, they would say so. The City cannot create a dispute of fact by newly incorporating a wholly unrelated regulatory scheme into its film permitting process more than three years after Zeleny first applied for a permit and three years after he filed this case.

This Motion should be granted.

## II.  THE CITY'S PERMITTING SCHEMES ARE UNCONSTITUTIONAL

The parties' cross-motions for summary judgment are ripe for decision. The facts are truly undisputed. Based on those undisputed facts, the City's permitting processes are unconstitutional.

### A.  The Undisputed Facts show that the SEP Process Is Invalid as a Matter of Law.

#### 1.  The SEP Policy Covers A Substantial First Amendment Conduct.

As detailed in Zeleny's Opposition to the City's Motion for Summary Judgment, the City is wrong in arguing that the SEP policy does not "reach[] a substantial amount of constitutional activity." Opp. at p. 20. It reaches little else. The policy applies to weddings, concerts, movie nights, parades, and fundraisers—all core First Amendment activities. Mot. for Summ. J. at pp. 3, 19; Robinson Decl., Ex. F at 456; *see Epona*, 876 F.3d at 1224; *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995); *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 65

1   (1981).  It is so broad that it covers nearly any form of public expression—*i.e.*, any event drawing a

2   crowd of over 150, exceeding the noise ordinance, or impacting a sidewalk.  Robinson Decl., Ex. R.

3   The policy plainly satisfies the standard for a facial challenge—*i.e.*, having a "sufficient nexus" to

4   "conduct commonly associated with expression"; or involving "unbridled discretion" on the part of

5   permitting officials.  *Epona*, 876 F.3d at 1221

6         The City's theory that Zeleny must show that the scheme is "impermissibly vague in all its

7   applications," Opp. at 20, is fundamentally wrong.  This rule does not apply to challenges based on

8   unbridled discretion.  An ordinance that grants unbridled discretion, "could never be applied in a

9   valid manner" because the process itself is defective.  *Epona II*, 2019 WL 7940582, at *4.

10                    **2.    The SEP Policy Violates *Epona* as a Matter of Law.**

11        Permitting schemes that affect First Amendment rights are deemed prior restraints and "carry

12   a 'heavy presumption' of invalidity."  *Long Beach Area Peace Network v. Long Beach*, 574 F.3d

13   1011, 1023 (9th Cir. 2009) (quoting *Forsythe Cnty. v. Nationalist Movement*, 505 U.S. 123, 130

14   (1991)).  To overcome this presumption, *Epona* and similar cases establish two requirements: (1) the

15   scheme must have "narrow, objective and definite standards" for a decision; and (2) there must be

16   specific time limits requiring a prompt decision.  *Epona*, 876 F.3d at 1222-26.  "[I]f one condition

17   confers an impermissible degree of discretion, the specificity of a separate condition will not save

18   the scheme."  *Id.* at 1224.

19                        **a.    No Narrow, Objective, and Definite Standard**

20        The City's official policy lists the following, non-exclusive grounds for denial of an SEP:

21        size (number of people), scale, location, route to be closed, ***community impact***,
          impact on City services, ***past practices/experiences with issued permits***, ***intended***
22        ***use***, non-payment of fees, ***poor articulation of event*** as reflected in the application
          and site map, etc.
23

24   Opp. at 21; *see also* Robinson Decl., Ex. R.  These are not "narrow, objective [or] definite" criteria.

25        The City's factors here of "community impact," "past practices/experiences," "intended

26   use," and "poor articulation of event," are even less definite than those invalidated in *Epona*:

27        (a) "consistent with the intent and provisions of the County's General Plan and of
          Division 8, Chapters 1 and 2, of the Ventura County Ordinance Code;"7
28

- 3 -

REPLY ISO MOT. FOR SUMM. J.
AGAINST CITY OF MENLO PARK AND BERTINI

(b) "compatible with the character of surrounding, legally established development;"

(c) "not [ ] obnoxious or harmful, [and must not] impair the utility of neighboring property or uses;"

(d) "not [ ] detrimental to the public interest, health, safety, convenience, or welfare;"

(e) "compatible with existing and potential land uses in the general area where the development is to be located;"

876 F.3d at 1223.  They are similar to, but still less objective and definite than, the criteria found impermissible in *Moreno Valley*, 103 F.3d at 817-19:

[1] will not have a harmful effect upon the health or welfare of the general public and [2] will not be detrimental to the welfare of the general public and [3] will not be detrimental to the aesthetic quality of the community or the surrounding land uses.

As in *Epona*, 876 F.3d at 1223, the City's policy does not "provide additional specific factors for permitting officials to consider when applying the [] requirements" noted above.

There is no objective way to decide whether "community impact," "past . . . experiences," or "intended use," without elaboration, support a denial.  What types of "intended use" are acceptable?  How many bad "past experiences" are required, how bad must they have been, and must they have been bad for the City or the permittee?  What type and level of "community impact" is required?  The City could justify a denial on any ground by asserting that the "intended use," in the abstract, was unacceptable in the circumstances or the event was "poorly articulated."  These abstract and subjective factors are ready-made to provide a pretext for content discrimination.  They place no limits on official discretion.[1]

The policy also does not require staff to present evidence or the decisionmakers to make specific findings on the stated factors for a decision.  *See Epona*, 876 F.3d at 1224-25 (discussing importance of "specific factual findings"); *Moreno Valley*, 103 F.3d at 819 ("official can deny a permit without offering any evidence to support the conclusion").  At no point in the permitting process did the City submit evidence.  It merely offered general "concerns" by Bertini.

---

[1] Similarly, although some of the factors are objective-sounding, *e.g.*, "size (number of people), scale, location," the City has no objective guidelines for assessing or quantifying them—*i.e.*, size limits or prohibited locations.  Robinson Decl., Ex. F at pp. 369-70.

- 4 -

Most fundamentally, as the "etc." in the policy implies, the list is not exhaustive. Robinson Decl., Ex. E at 111. The City can and does apply additional, unwritten factors developed case-by-case depending on the application. As its Rule 30(b)(6) designee, Bertini, acknowledged:

> Q.   Is [the City] permitted to consider time, manner and place requirements outside of the written policy?
>
> A.   Yes.

*Id.*, Ex. F at 426. A process that allows officials to consider new factors, decided upon case-by-case, is the opposite of "definite and specific guidelines." *Epona*, 876 F.3d at 1225; *see Cty. of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 770 (noting that Court cannot "presume[] that [defendants] will act in good faith and adhere to standards absent from the ordinance's face").

### b.   No Time Limit

Under the City's ordinances, there is no "mandatory time limit on how long it takes to process a special event application." Robinson Decl., Ex. F at 247; *see FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 226-27 (1990) ("law that fails to confine the time within which the licensor must make a decision contains the same vice as a statute delegating excessive …discretion").

### 3.   The City Cannot Define "Special Events" to Exclude Protests.

The City seeks to avoid a constitutional challenge by asserting that its SEP process "did not apply" to Zeleny's events because they involve protests. Opp. at p. 21. This argument cannot avoid a facial challenge. Excluding "protests" from a generally-applicable permitting process would, itself, amount to unlawful content discrimination. The City cannot exclude Zeleny from an official process, open to all applicants, by repeatedly changing its definition of "special event" to avoid his intended activities.

The City admitted in discovery that its SEP process does, in fact, govern Zeleny's protest events. *See* Robinson Decl., Ex. E at 107-110 ("Mr. Zeleny's event would qualify as a special event on at least three criteria; correct? A. Yes."). This admission is binding. The City cannot seriously claim that Zeleny does not need a permit or cannot apply for one. Zeleny is subject to the permitting scheme and, as discussed above, has standing to challenge it.

The City has also threatened Zeleny with arrest if he does not get a permit before staging his

events while carrying a firearm.  Robinson Decl., Ex. E at 182-83.  It cannot require Zeleny to alter his events so that they fall outside of its official process.  Zeleny applied for the events he wanted to put on, which City policy explicitly covers.  The City had to apply the same application process in the same manner as it applies to everyone else—regardless of content.  The claim that "no permit is needed" is akin to refusing a building permit for a house because none is needed to pitch a tent.

Indeed, the City has asserted that its authorization is mandatory for Zeleny to fall under entertainment exemptions to the "open carry" ban, Cal. Pen. Code §§ 26375 and 26405(r).  *See* Mot. for Summ. J. [Dkt. No. 160] at p. 17.  The City's only means of authorization are an SEP or film permit.  Robinson Decl., Ex. E at 24.  It cannot deprive Zeleny of rights granted by state law by excluding him from the only processes available to exercise them.  If the City is going to demand that Zeleny have its authorization, it cannot also argue that no authorization is required.  It cannot force Zeleny to trade one right, *i.e.*, to bear arms, for another, *i.e.*, to protest.

**B.     The Undisputed Facts Demonstrate that the Film Permit Process Is Invalid.**

The City's film permitting process is even less constitutional than its SEP process.  A policy without any official standards is unconstitutional *per se*. *Niemotko v. State of Md.*, 340 U.S. 268, 272 (1951).  The film permitting process has no such standards and is totally discretionary.

The City's entire policy is comprised of a two-page flyer and the permit application itself.  *See* Robinson Decl., Ex. U; Zeleny Decl., Ex. 12.  As the City's Rule 30(b)(6) designee confirmed:

> Q.     Aside from this document [the flyer] and the contents of the actual film permit application itself, are there any other written policies, procedures or guidelines in the City of Menlo Park about issuing film permits?
>
> A.     No.

Robinson Decl., Ex. F at 481, 82.  The official policy consists primarily of logistics, such as insurance and business licensing.  It contains no substantive standard for issuance or denial.

Instead, as Bertini acknowledged during a public hearing, film permitting is "completely discretionary":

> Alex McIntyre:     Second question.  Is it everyone's understanding that film permits are completely discretionary by the Menlo Park City Council?
>
> Dave Bertini:     That is correct.

REPLY ISO MOT. FOR SUMM. J.
AGAINST CITY OF MENLO PARK AND BERTINI

1  Master Decl. [Dkt. No. 160-6] Ex. E at 44; *see also* Robinson Decl., Ex. F at 495-96, 515 ("It's

2  discretionary for the City to either grant or not grant the film permit").  Even if all of written

3  requirements are satisfied, "the City is not required to issue any permit." *Id.*, Ex. F 484.  A process

4  that is completely discretionary cannot pass muster under *Epona*.

5       Finally, there is no time limit on issuing film permits.  Robinson Decl., Ex. F at 495.

6  **III.   THE CITY'S EVASIONS ARE UNAVAILING**

7       **A.    The City Fails to Create Disputes of *Material* Fact.**

8       The City spends pages purportedly identifying factual disputes, none of which is material.

9  Summary judgment must be granted unless the "material" facts are genuinely disputed.  Fed. R. Civ.

10  P. 56(a).  Material facts are those that "might affect the outcome of the suit under governing law."

11  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  None of these allegedly disputes could

12  affect the outcome, because none goes to the validity of the City's administrative processes.

13       ***First***, the City tries to create a dispute over who was at fault for the breakdown of the

14  permitting process and delays.  This cannot possibly affect the outcome.  To make a facial challenge

15  to a defective process, Zeleny did not even have apply for a permit, much less complete the process

16  to the City's satisfaction.  *See Freedman v. Maryland*, 380 U.S. 51, 56 (1965) ("it is well established

17  that one has standing … whether or not he applied for a license"). A plaintiff does not have to submit

18  to a defective permitting scheme to challenge it.  *Cty. of Lakewood*, 486 U.S. at 755-56;

19  *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969) ("[t]he Constitution can hardly be thought to

20  deny …  the right to attack its constitutionality, because he has not yielded to its demands").

21       ***Second***, the City tries to create a factual dispute over the characterization of Bertini's

22  involvement.  This is also immaterial.  Whether the permitting scheme is constitutional did not

23  depend on Bertini's role in it; and in any event, he actively participated in his official capacity—

24  whether as a decisionmaker or someone who "provided input."  Opp. at 6, 7.  It is undisputed that

25  Bertini was directly involved, and urged a denial of Zeleny's application while working directly with

26  NEA.  *See Preschooler II v. Clark Cnty. Bd. of Trs.*, 478 F.3d 1175, 1183 (9th Cir. 2007) (holding

27  that official is liable under 42 U.S.C. § 1983 if he "participates in another's affirmative act");

28  *Moreno Valley*, 103 F.3d at 821 (denying qualified immunity to municipal officials).

1    **Third**, and finally, the City disputes whether it denied Zeleny's SEP based on content.  It *did*

2    discriminate based on content, but that is not dispositive.  The facial validity of the *permitting*

3    *process* is the issue.[2]  The harm in the defective scheme "rests not on whether the administrator has

4    exercised his discretion in a content-based manner," in any particular case, "but whether there is

5    anything in the ordinance preventing him from doing so."  *Forsythe County*, 505 U.S. at 131.

6    Without such preventative constraints, the process itself allows impermissible discretion.

7    Moreover, the City Defendants have failed to submit admissible evidence showing that the

8    decision was content-neutral.  They do not even submit a declaration from a decisionmaker stating

9    that the decision was made "without reference" to content.  *See Ward v. Rock Against Racism*, 491

10   U.S. 781, 791 (1989).  The undisputed facts are that they did take Zeleny's content into

11   consideration: (a) Bertini urged the City Manager to deny Zeleny's application because it **might be**

12   deemed "obscene," which he considered "important and salient"; *see* Zeleny Decl., Ex. 6, 8, 9;

13   Robinson Decl., Ex. E. at 136-143; Ex. F at 476; (b) the City Manager cited "obscenity laws" in

14   denying a permit, *see* Zeleny Decl., Ex. 8 at p. 11; and (c) the City Council upheld that decision

15   without analysis, *id.*, Ex. 9.  The City had two choices: it could have come to a conclusion that

16   Zeleny's content was obscene, and tried to defend its decision on that basis; or it could have not

17   taken Zeleny's content into consideration at all.  The half-measure of taking his content into

18   consideration without a conclusion that it was illegal content was simply unconstitutional.

19
20   **B.     The City's "Time, Place, and Manner Reasons" Fail to Create a Dispute of
              Material Fact.**

21   The City "misses the point entirely" by arguing that it had valid time, place and manner

22   reasons for denying Zeleny applications.  *Epona II*, 2019 WL 7940582, at *4.  Even if it had the best

23   justifications in the world—and it didn't—they are irrelevant to whether its policy is constitutional.

24   _____

25   [2] As detailed in Zeleny's Motion, he brings both a facial and "as applied" challenge to the constitutionality of
     the City's permitting process.  By focusing primarily on the facial challenge here, Zeleny is neither
     minimizing, nor waiving, his "as applied" challenge to the same City processes.  Under either theory,
26   summary judgment should be granted in Zeleny's favor.  At the very least, summary judgment cannot be
     granted for the City.  The material facts necessary for the City's Motion for Summary Judgment are disputed
27   and require a trial.

28

A facially unconstitutional permitting scheme "could *never* be applied in a valid manner." *Epona II*, 2019 WL 7940582, at *4. "[If] every application of the ordinance represents an exercise of unlimited discretion, then the ordinance is invalid in all its applications." *City of Chicago v. Morales*, 527 U.S. 41, 71 (1999) (Breyer, J. concurring in part). If a facial challenge succeeds, then an as-applied challenge necessarily succeeds. *Epona II*, 2019 WL 7940582, at *4.

This is implicit in the prohibition against unbridled discretion. "It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion." *Forsyth Cnty.*, 505 U.S. at 133. The absence of "express standards makes it difficult to distinguish, 'as applied,' between a licensor's legitimate denial … and its illegitimate abuse of censorial power." *Lakewood*, 486 U.S. at 770. There can be no effective judicial review of a permitting decision made without any objective or fixed standard. Without a definite standard, "*post hoc* rationalizations … and the use of shifting or illegitimate criteria are far too easy." *Id.* The doctrine "disallows" a presumption that officials will act in good faith. *Id.*

### C.   The City's Ownership of the Median Strip Is Irrelevant.

The City argues that it somehow discovered, years into this lawsuit, that it could not have granted Zeleny a permit on the median strip of Sand Hill Road because Caltrans owns that median. This has nothing to do with Zeleny's challenge to the permitting scheme itself.[3]

As discussed in detail in Zeleny's Opposition to the City Defendants' Motion for Summary Judgment, they cannot carry their "heavy" burden of establishing mootness. *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988). A case is only moot if it is "impossible for the court to grant effectual relief whatever"—even relief not included in the complaint. *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see also Nw. Env't*, 849 F.3d 1244-45 ("[t]he question is whether the can be *any* effective relief ") (citation omitted; emphasis in original).

Zeleny's prayer for relief is not limited to the median strip. He seeks a declaration that the

---

[3] The City also waived this argument by failing to raise it at any point in the administrative process or until too late in the discovery process for Zeleny to examine any witnesses about it. *See* Opp. to Mot. for Summ. J. [Dkt. No.169] at p. 19; *see also Lands Council v. McNair*, 629 F.3d 1070, 1076 (9th Cir. 2010) ("party forfeits arguments that are not raised during the administrative process"); *Magana v. Com. of N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997).

REPLY ISO MOT. FOR SUMM. J.
AGAINST CITY OF MENLO PARK AND BERTINI

permitting policies are invalid everywhere in the City.  Zeleny has been clear from the outset that he would relocate if needed.  Master Decl., Ex. F at 25:8-11 ("If the median strip is not acceptable to the City, I would be happy to move to the side of the road").  The Court can grant effective relief by issuing an injunction covering the median, or any other area in the City other than the median.

Although this defeats the City's argument as a matter of law, there's more.  **First**, the City admits that it still has criminal-law jurisdiction over the median and could (and would) arrest Zeleny if he staged his protest events without a permit.  Robinson Decl., Ex. F at 263-65; *see also* Cal. Pen. Code § 830.1(a)(1); *People v. Martin* (1966) 225 Cal.App.2d 91, 93-94.  The City has plenary police power within its limits, and the Streets & Highways Code does not change this.  *See* Cal. Const., Art. 11, § 7; *Sierra Club v. Napa Cnty.*, 205 Cal.App.4th 162, 172 (2012).  **Second**, as a matter of state law, because the median is within City limits, a City permit is mandatory before Caltrans can grant one.  *See* Cal. Streets & Highways Code § 682.5(a), (c).

Finally, the City has failed to submit *admissible* evidence of ownership—*i.e.*, a deed or dedication.  *See* Evidentiary Objections [Dkt. No. 169-3]; *see also* Fed. R. Civ. P. 56(c)(2).  Instead, it shoves a morass of purported Caltrans documents before the Court without any analysis, and proffers a bald "legal opinion" that the documents show that Caltrans supposedly owns the median. No foundation is established for the declarant offered, Mr. Flegel, to authenticate the documents, much less to opine on their interpretation.  Fed. R. Civ. P. 56(c)(4).  His "legal opinion" is not admissible evidence.  *See McHugh v. United Serv. Auto Ass'n*, 164 F.3d 451, 454.

### D.   The Construction-Encroachment Process Does Not Govern and Is Unconstitutional If Applied to Filming.

#### 1.   The "Construction-Related" Encroachment Process Does Not Apply.

##### a.   On Its Face, the Construction Process Does Not Apply.

Because the City lacks a defensible process for film permitting, it now claims—for the first time at summary judgment—that its process for construction encroachments, Municipal Code, Chapter 13.18, governs.  The City acknowledges, however, that these ordinances do not on their face apply to filming.  They do not mention "filming" or "film permits."  As the City notes, "expressive activity"—*i.e.*, filming—"is not referenced."  Opp. at p. 12.  "[T]he City's ordinance, on its face,

1    does not regulate speech at all." *Id.* Its provisions "are primarily geared towards construction-

2    related activities." *Id.*

3            The reason is obvious. These ordinances do not govern filming. They govern construction

4    work. Rather than defend the regulatory scheme that actually is at issue, the City selects an arbitrary

5    strawman in its stead. The City might as well have selected its ordinances for dog licenses, Mun.

6    Code § 9.08.010, *et seq.*, real estate transfer taxes, *id.* § 3.20.010, residential parking permits, *id.* §

7    11.26.010, *et seq.*, and sales of meats, *id.*, § 7.24.010. They might well be constitutional. That does

8    not make them applicable to film permitting.

9            The City cannot simply point to a regulatory scheme in litigation and claim that it governs

10   filming. The connection to film permitting must be "made explicit by textual incorporation,

11   binding judicial or administrative construction, or well-established practice." *See Cty. of*

12   *Lakewood*, 486 U.S. at 770. This means a "well-understood and uniformly applied practice has

13   developed that has virtually the force of a judicial construction." *See also Epona II*, 2019 WL

14   7940582, at *3 (quoting *Forsyth Cnty.*, 505 U.S. at 131). The City offers no such evidence. It has

15   not shown that these ordinances have ever been applied to film permits—not a single instance.

16           The construction-related ordinances could not possibly govern film permitting. They contain

17   no standards or requirements for filming. They do not remotely resemble the process that the City

18   described in discovery for film permitting. Throughout the permitting process and this case, the

19   City has treated film permitting as a separate, stand-alone process. Its witnesses described a

20   discretionary, case-by-case process involving multiple City departments and various factors wholly

21   unrelated to the Municipal Code or construction standards. *See*, *e.g.*, Robinson Decl., Ex. E at 121,

22   Ex. F at 484-85, 490, 495-96, 506, 515, 529; Robinson Supp. Decl., Ex. 4 at 41, 59, 79.

23           Nor is the City's new theory consistent with the guidelines the City provides film

24   applicants—*i.e.*, requiring a "description of the nature of the filming … a list of all equipment

25   involved in the filming … the number of cast and crew members" and the like. Robinson Decl., Ex.

26   U. None of these requirements appear in the construction ordinances. Nor do the film permitting

27   guidelines reference these ordinances.

28           The City's last-ditch attempt to retrofit its construction-related process to filming fails. The

- 11 -

REPLY ISO MOT. FOR SUMM. J.
AGAINST CITY OF MENLO PARK AND BERTINI

"Regulations" section of the encroachment process refers to "[t]he construction, operation, maintenance and repair of *facilities*."  Mun. Code § 13.18.110(a) (emphasis added).  The City plays games with ellipses in arguing that "facilities" include Zeleny's cameras, firearms, and signs.  Opp. at 13-14.  The full definition is:

> *any pipe, pipeline, tube, main, service, trap, vent, vault, manhole, meter, gauge, regulator, valve, conduit, wire, tower, pole, pole line, anchor, cable, junction box, transformer or* any *other* material, structure or object of any kind or character, whether enumerated herein or not, which is or may be lawfully constructed, left, placed or maintained in, upon, along, across, under or over any public right-of-way.

Menlo Park Mun. Code § 13.18.010 (portions omitted by City Defendants emphasized). This is a list of construction materials, not camera equipment.  *See Wilson v. Cable News Net., Inc.*, 7 Cal. 5th 871, 900 (2019) ("when a general provision follows specific examples … we generally understand that provision as restricted to those things that are similar to those which are enumerated").

The notion that a camera, placard, or prop temporarily carried by Zeleny at a protest amounts to erection of a "facility" on public land is preposterous.  The City's newfangled interpretation would apply equally to any person who crosses a City street with a cellphone in his pocket, parks in a City parking lot, or uses a camera to take pictures of his family in a park.  This is plainly not what the process was intended to cover.

### b.    The City's Theory Contradicts All of Its Discovery Responses.

Prior to the summary judgment phase of this case, the City Defendants never claimed that these construction-related ordinances applied—not in years of the permitting process, not in three sets of interrogatory responses, and not in the deposition of their Rule 30(b)(6) designee.

Zeleny specifically asked the City in interrogatories to identify any "ordinances" that govern film permits.  The City never mentioned Municipal Code, Chapter 13.18 despite answering three times.  Nor did it produce a copy.  The City had more than two years of discovery and multiple opportunities, including through take-home interrogatories, to disclose its new contention that these ordinances governed or to provide a copy.  *See* Robinson Supp. Decl. [Dkt. No. 169-2] ¶ 10, 15 & Exs. 8, 9 and 10.  It never did so because they are inapplicable.

The City's witnesses, including its 30(b)(6) designee, also testified that they were "not aware of any specific ordinances governing film permits."  Robinson Decl., Ex. F at 240; Robinson Supp.

- 12 -

Decl., Ex. 4 at 76 ("Any specific sections of those codes that you're aware of that staff would consider? … A. No.")  They confirmed that the film permitting process is a stand-alone process governed entirely by the two-page flyer and application form only.[4]

> Q.    Aside from this document [the two-page flyer] and the contents of the actual film permit application itself, are there any other written policies, procedures or guidelines in the City of Menlo Park about issuing film permits?
>
> A.    No.

Robinson Decl., Ex. F at 481-82; Robison Supp. Decl., Ex. 4 at 79, 102.  Neither of these documents mentions the construction-related ordinances.  No one thought the ordinances governed until lawyers for the City sat down a few weeks ago to write a summary judgment motion.

The City Defendants cannot avoid summary judgment by presenting a new theory that they failed to disclose—and expressly contradicted—in discovery.  *See Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 323-24 (C.D. Cal. 2014).  A party may not present a new "theory of the facts" contradicting its Rule 30(b)(6) deposition without "adequate explanation." *See Snapp v. United Transp. Union*, 889 F.3d 1088, 1103 (9th Cir. 2018); *Hyde v. Stanley Tools*, 107 F.Supp.2d 992, 993 (E.D. La. 2000), aff'd 31 F. App'x 151 (5th Cir. 2001).  Nor may a witness contradict his own deposition testimony to create a dispute of fact.  *See Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 806 (1999); *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). The City Defendants offer no explanation whatsoever for their complete reversal.

In reality, as the City notes, "[t]he City does utilize Chapter 13.18 for film production projects ***to the extent they encroach upon a public right-of-way***."  Opp. at 12.  While an applicant who seeks to encroach on a right of way may be required to also satisfy the Municipal Code, it is frivolous to argue that these sections are the governing standard for film permits.

### 2.    The Construction-Encroachment Process Would Fail *Epona* Anyway.

Even if the City could retroactively apply its construction process, it cannot create a *material*

---

[4] The City apparently repurposes an encroachment application for purpose of film permits, but it is given to applicants without any of the "encroachment" boxes checked.  Instead, it is pre-filled with "Other:  Film Permit."  *See* Decl. of Nicolas Flegel [Dkt. No. 160-2] Ex. E.  The permit application itself nowhere references the Municipal Code sections the City has now raised.

dispute because that process would still fail under *Epona*.  The ordinances do not contain any standard for granting or denying film permits.  As Bertini acknowledged, (a) the standard is "completely discretionary"; and (b) the City is not required to issue a permit, even if the written requirements are met.  Master Decl. Ex. E at 44; Robinson Decl., Ex. F at 484-85, 495-96, 515.

Indeed, the ordinances do not provide a standard for granting or denying *any* form of permits—whether filming, construction, or otherwise.  The City claims that the "Regulations" section, Municipal Code § 13.18.110, is its governing standard.  But this section does not contain any rules or criteria for issuance or denial.  Nor does it require factual findings or evidence.  Instead, it is a list of construction rules that apply once a permit is issued.  *See* Mun. Code § 13.18.110(a) ("construction, operation, maintenance and repair … ***shall be performed*** in compliance with all laws and practices") (emphasis added).  Whether to issue a permit in the first instance is left to the sole discretion of the Director of Public Works without any guiding standard.  The lack of specific standards in this area is not surprising, since these regulations are not directed at filming.  The City contorts them beyond recognition to cover filming, which they were plainly never intended to cover.

In addition, the Director of Public Works may impose "directives or additional conditions" on the permit.  *Id.*  This violates *Epona* on its face because here is no standard by which to decide what "directives or additional conditions" the Director can impose.  The City's suggestion that the Director's conditions are "definite [and] objective" because he or she writes them down on the permit is absurd.  Opp. at p. 18.  Conditions that the Director decides upon permit-by-permit do not become a "definite" governing standard simply because he or she writes them down at the time.

Finally, the process also has no time limit.  The City superficially argues that it can be "reasonably inferred" that the 60-day limit applicable to state video franchises,[5] "applies in all cases."  Opp. at p. 20.  This "inference" was drawn out of thin air.  The 60-day limit is mandated by state law for cable franchisees, and appears to have been copied directly from the Public Utilities Code.  *See* Cal. Pub. Utils. Code § 5885(c).  The inclusion of a time limit in one specific provision implies that it is inapplicable to others.  *See Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 725 (1989).

---

[5] A "state video franchisee" is a "cable operator or video service provider."  Mun. Code § 13.18.010(8).

REPLY ISO MOT. FOR SUMM. J.
AGAINST CITY OF MENLO PARK AND BERTINI

1    Further, as discussed above, the Court may only consider an "authoritative construction" of

2    the ordinances, which has the force of an agency decision or a judicial construction. *See Epona II*,

3    2019 WL 7940582, at *3 (quoting *Forsyth Cnty.*, 505 U.S. at 131).  The City offers nothing of the

4    sort.  Its witnesses confirmed that there is no time limit.  Robinson Decl., Ex. F at 495.  The City

5    has not issued a decision on Zeleny's latest application in three years. [6]

6    **IV.    <u>CONCLUSION</u>**

7        Because the City Defendants have failed to create a dispute of material fact as to the

8    defective permitting process, summary judgment should be granted in Zeleny's favor.

9    Dated:  February 11, 2021                      Respectfully submitted,

10                                                  s/ Brian R. England
                                                    David W. Affeld
11                                                  Brian R. England
                                                    Damion D. D. Robinson
12                                                  Affeld Grivakes LLP

13                                                  Attorneys for Plaintiff Michael Zeleny

14

15

16

17

18

19

20

21

22

23

24

25

26    [6] The City also discusses expedited judicial review of permitting decisions.  This is not the point.  Zeleny has no quarrel with California civil procedure for expedited review.  The problem is that the City has no time limit **to make a decision** in the first instance, which is a prerequisite for judicial review.  Stated differently, the City here has tried to block judicial review by relying upon an improper "pocket veto."

27

28

REPLY ISO MOT. FOR SUMM. J.
AGAINST CITY OF MENLO PARK AND BERTINI

1

## <u>PROOF OF SERVICE</u>

2

I hereby certify that on February 11, 2021, I electronically filed the foregoing document

3
using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will
send a notice of electronic filing to the interested parties.

4
    s/ Damion Robinson
    Damion Robinson

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOT. FOR SUMM. J.
AGAINST CITY OF MENLO PARK AND BERTINI