David W. Affeld, State Bar No. 123922
Brian R. England, State Bar No. 211335
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:      (310) 979-8700

Attorneys for Plaintiff Michael Zeleny

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ZELENY,

     Plaintiff,

vs.

GAVIN NEWSOM, *et al.*,

    Defendants.

Case No. CV 17-7357 JCS

Assigned to:
The Honorable Richard G. Seeborg

Discovery Matters:
The Honorable Thomas S. Hixson

**PLAINTIFF MICHAEL ZELENY'S EVIDENTIARY OBJECTIONS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST CITY OF MENLO PARK AND POLICE CHIEF DAVE BERTINI**

Date:            March 18, 2021
Time:           1:30 p.m.
Courtroom:  3, 17th Floor

Action Filed:   December 28, 2017
Trial Date:       TBD

    Plaintiff Michael Zeleny respectfully submits these evidentiary objections to the declarations submitted in connection with the Opposition of Menlo Park and Chief Dave Bertini's to Michael Zeleny's Motion for Summary Judgment.

| Evidence | Objection(s) |
|---|---|
| **Declaration of Nicolas Flegel [Dkt. No. 168-1]** | |
| Flegel Decl. ¶ 5<br>As the attached records show, on or about September 16, 2016, plaintiff provided notice of his intent to appeal the decision of the City Manager, Alex McIntyre, with regard to his special event permit application.  The attached records also show that over the course of the next nine months, City Clerk Pam Aguilar attempted to schedule the appeal hearing before the City Council through written communications with plaintiff and his attorney.. | Lacks foundation and personal knowledge.  Fed. R. Evid. 104, 602; Fed. R. Civ. P. 56(c)(4) ("[a] declaration used to support or oppose a motion must be made on personal knowledge … and show that the … declarant is competent to testify on the matters stated").<br>Hearsay and double hearsay.  Fed. R. Evid. 802.<br>Improper legal argument and opinion testimony.  Fed. R. Evid. 701, 702.<br>Best Evidence Rule.  Fed. R. Evid. 1002.<br><br>Mr. Flegel makes clear that he is giving his characterization of various emails, which were not sent to or from him.  He has no personal knowledge of the matter and no foundation for his testimony, which amounts to improper argument in any event. |
| Flegel Decl. ¶ 6:<br>The attached records show that the hearing before the City Council was set but then taken off calendar on various occasions due to plaintiff's unavailability or non-responsiveness. | Lacks foundation and personal knowledge.  Fed. R. Evid. 104, 602; Fed. R. Civ. P. 56(c)(4) ("[a] declaration used to support or oppose a motion must be made on personal knowledge … and show that the … declarant is competent to testify on the matters stated").<br>Hearsay and double hearsay.  Fed. R. Evid. 802.<br>Improper legal argument and opinion testimony.  Fed. R. Evid. 701, 702.<br>Best Evidence Rule.  Fed. R. Evid. 1002.<br><br>Mr. Flegel makes clear that he is giving his characterization of various emails, which were not sent to or from him.  He has no personal knowledge of the matter and no foundation for his testimony, which amounts to improper argument in any event. |
| Flegel Decl., Ex. A:<br>Various emails | Lacks foundation and personal knowledge.  Fed. R. Evid. 104, 602; Fed. R. Civ. P. 56(c)(4) ("[a] declaration used to support or oppose a motion must be made on personal knowledge … and show that the … declarant is competent to testify on the matters stated").<br>Hearsay.  Fed. R. Evid. 802.<br>Improper legal argument and opinion testimony.  Fed. R. Evid. 701, 702.<br>Lack of authentication.  Fed. R. Evid. 901.<br><br>The exhibit consists of various emails that did not include Mr. Flegel.  He has no basis to authenticate them or to lay a foundation for their admissibility.  They also constitute hearsay. |

EVIDENTIARY OBJECTIONS ISO TO MOT. FOR
SUMM J. AGAINST MENLO PARK AND BERTINI

1

| **Declaration of Todd Master [Dkt. No. 168-2** | |
|---|---|
| Master Decl., Ex. A[1] | Irrelevant.  Fed. R Evid. 401 |
| Deposition Transcript of Matt Milde at 144:3-150:14 | Lacks foundation.  Fed. R. Evid. 104. |
| Q. Having looked at this application by Mr. Zeleny today, is this an application that you would pass on to the staff internal review, if you were reviewing it right now? | The City fails to establish what bearing Mr. Milde's decision to submit the application to his superiors has on any fact in issue.  Instead, Mr. Milde admitted that Chief Bertini and the City Manager and City Attorney made the initial decision on the application, not Mr. Milde's superiors.  Robinson Decl. [Dkt. No. 162-1], Ex. G at 154. |
| A. No. | |
| Q. Why not? | |
| A. As I mentioned before, there's items that  are incomplete, and a map that isincomplete. | |
| Q. So, what would you do? Would you go back to Mr. Zeleny and ask him to clarify the map? | |
| A. Potentially. | |
| Q. Is there any reason for why you would not do something like that? 02:42:46 | |
| A. The complexity of the event. | |
| Q. The complexity of the event, though, would probably require more detail from the applicant, amI correct? | |
| A. I would say so. | |
| Q. So, why would you not ask him to draw the stage, or even tell you whether there is, indeed, a stage? | |
| A. I don't recall. At the time, I recall that this needed city leadership input before I did anything with the permit. | |
| Q. Did somebody tell you that this application required input from the city leadership,  or did you decide that yourself? | |
| A. No, well, I felt I needed someone in a higher capacity to weigh in on how the city should respond. | |
| Q. I'm sorry, were you done with the answer? | |
| A. I'm done. | |
| MR. MARKEVITCH: Okay. | |
| (Exhibit 97 was marked for identification by the court reporter and is attached hereto.) | |
| BY MR. MARKEVITCH: | |
| Q. For the record, this document starts with MP000243, and it's a chain of e-mails. 02:44:39 Mr. Milde, could you please take a look at this. | |
| A. Yes. | |

---

[1] Because the City Defendants do not designate the deposition excerpts on which they rely, Zeleny addresses those identified in the City Defendants' brief.  A party is obligated to identify the portion of the record that it intends to rely upon.  *See In re Oracle Corp. Securities Litigation, 627 F.3d 376, 386* (9th Cir. 2010) (citing *Downs v. Los Angeles Unified Sch. Dist.*, 228 F.3d 1003, 1007 n. 1 (9th Cir.2000) and *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)).

EVIDENTIARY OBJECTIONS ISO TO MOT. FOR
SUMM J. AGAINST MENLO PARK AND BERTINI

1   Q. Do you recognize these e-mails?
    A. I do.
2   Q. And it looks like on July 10, the same day
    when Mr. Zeleny submitted the application,
3   you forwarded that application to Cherise
    Brandell and Derek Schweigart, am I
4   correct?
    A. That's correct.
5   Q. Why did you do that?
    A. I felt they should be aware of the
6   application, as my supervisors.
    Q. Did anybody instruct you to forward the
7   application when you received it?
    A. No.
8   Q. At any time.
    A. No.
9   Q. Have you spoken with Chief Bertini
    regarding Mr. Zeleny prior to receiving this
10  application?
    A. No.
11  Q. When was the first time you learned of
    Mr. Zeleny's existence?
12  A. The day he submitted his permit.
    Q. Now, why exactly, precisely, did you feel
13  that this application required you to forward
    it to your superiors, rather than reviewing
14  and processing yourself?
    A. It was complex.
15  Q. Anything specific?
    A. There was just a lot of layers to it.
16  Q. Was it because it was protesting, it was
    proposing a protest against child rape?
17  A. I don't think so. I don't recall at the
    time.
18  Q. You don't recall at that time you were
    aware whether this protest was related to
19  child rape?
    A. I don't recall.
20  Q. Do you recall if you identified at the time
    that the event would involve unloaded guns?
21  A. As I sit here, I don't recall if it was
    included in the e-mail that Mr. Zeleny wrote.
22  I recall reading the e-mail and being aware of
    what he sent me at the time.
23  Q. If you like, we can go back to the
    previous exhibit.
24  MR. MASTER: It's actually at the bottom of
    97, isn't it?
25  MR. MARKEVITCH: Yeah, it's also there.
    MR. MASTER: Sure.
26  BY MR. MARKEVITCH:
    Q. Do you see that there is a list of weapons
27  there?
    A. I see.
28  Q. Do you remember noting that at the time
    when you reviewed the application?

- 3 -

A. I can't say that that was part of my review, in terms of looking at the application because there was that element in, described in the e-mail that was sent to me. I felt that it was more important for city leadership to be aware and weigh in on it, in terms on if it qualified as a special event.

Q. And when you say, qualified as a special event, are you talking about meeting a specific definition?

A. Well, whether or not the special event that was submitted should be routed, or if there was another way to work with the applicant. I don't know. I was waiting on direction.

Q. Is there a specific process for dealing with special event permit applications that involve legal use of guns?

A. No, not to my knowledge.

Q. The notation of or the expectation of use of or presence of weapons was one of the components of the complexity that you have referred, correct?

A. Yeah. And I saw that PD was cc'd on that initial e-mail. PD would typically weigh in on items like this. If someone wished to have this as part of their event, I would rely on their input and expertise on determining if it's appropriate.

Q. The police department would be involved in this process regardless.

A. Correct.

Q. Pursuant to step C of the flowchart, correct?

A. Correct. 02:49:13

Q. Any other aspect of complexity that you found in this application that prompted you to forward it to your superiors?

A. The fact that it was an event that was being requested for a public median on a major thoroughfare, there's a lot of safety implications with that. That was of concern. We don't typically get applications for community events on a public median. It just doesn't happen. I haven't seen it.

Q. Is it fair to say that this application was, in your mind, different enough that you decided to forgo the entirety of the process on this flowchart?

A. It definitely stood out.

Q. But you did not follow the flowchart with regard to Mr. Zeleny's application, correct?

A. Well, I followed the flowchart in regards to that I provided the initial review of it. I did look it over, and looked at it, but I felt that before we moved forward with it that city leadership also needed to review and weigh

- 4 -

EVIDENTIARY OBJECTIONS ISO TO MOT. FOR
SUMM J. AGAINST MENLO PARK AND BERTINI

| | |
|---|---|
| in and provide direction to staff.<br>Q. Is there a procedure for processing an application the way you decided to do it with Mr.Zeleny's?<br>A. Not that I recall, but, then again, we have never gotten anything quite like this application in before, so, it was an outlier.<br>Q. Is there a reason why this application could not be processed the way the flowchart indicates an application should be processed?<br>A. Again, due to the complexity of what was submitted to me, I felt that it was necessary that city leadership provide direction to staff. | |
| Master Decl., Ex. A<br>Deposition Transcript of Matt Milde at 214:7-215:9:<br>Q. Do you know if it would be proper for Mr. Zeleny to open carry weapons if he received a permit from the city?<br>MR. MASTER: Objection. Vague and ambiguous. Overbroad. Calls for a legal conclusion. And speculation. Go ahead.<br>THE WITNESS: I don't know.<br>BY MR. MARKEVITCH:<br>Q. Do you know anything about open carry laws?<br>MR. MASTER: Objection. Vague and ambiguous.<br>BY MR. MARKEVITCH:<br>Q. Anything?<br>MR. MASTER: Same objection.<br>THE WITNESS: No.<br>BY MR. MARKEVITCH:<br>Q. Do you know what I mean when I say, open carry?<br>A. Yes.<br>Q. What is your understanding?<br>A. A person can carry a gun in plain view, is my understanding.<br>Q. Anything else?<br>A. No.<br>Q. Do you have any understanding how the open carry matter ties into Mr. Zeleny's permit application?<br>A. No. | Irrelevant.  Fed. R Evid. 401<br>Lacks foundation.  Fed. R. Evid. 104.<br><br>The City fails to establish what bearing Mr. Milde's knowledge about California's firearms regulations has on any fact in issue.  Mr. Milde was not a decisionmaker on Zeleny's permit application.  Robinson Decl. [Dkt. No. 162-1], Ex. G at 154. |

Dated:  February 11, 2021                    Respectfully submitted,

                                                    s/ Damion Robinson
                                                    David W. Affeld
                                                    Brian R. England
                                                    Damion D. D. Robinson
                                                    Affeld Grivakes LLP

                                                    Attorneys for Plaintiff Michael Zeleny

1

## **PROOF OF SERVICE**

2

3

     I hereby certify that on February 11, 2021, I electronically filed the foregoing document using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

4

                           s/ Damion Robinson

5

                           Damion Robinson

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EVIDENTIARY OBJECTIONS ISO TO MOT. FOR
SUMM J. AGAINST MENLO PARK AND BERTINI