David W. Affeld, State Bar No. 123922
Brian R. England, State Bar No. 211335
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:   (310) 979-8700

Attorneys for Plaintiff Michael Zeleny

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY,<br><br>  Plaintiff,<br><br>vs.<br><br>GAVIN NEWSOM, *et al.*,<br><br>  Defendants. | Case No. CV 17-7357 JCS<br><br>Assigned to:<br>The Honorable Richard G. Seeborg<br><br>Discovery Matters:<br>The Honorable Thomas S. Hixson<br><br>**PLAINTIFF MICHAEL ZELENY'S STATEMENT OF RECENT DECISION**<br><br>Date:        April 22, 2021<br>Time:       1:30 p.m.<br>Courtroom: 3, 17th Floor<br><br>Action Filed:   December 28, 2017<br>Trial Date:      TBD |

Plaintiff Michael Zeleny ("Zeleny") respectfully submits this Statement of Recent Decision under Local Rule 7-3(d)(2).

On March 4, 2021, the Ninth Circuit issued its decision in *U.S. v. Rundo*, No. 19-50189, 2021 WL 821938 (9th Cir. March 4, 2021), which is relevant to the issues raised in Zeleny's Motion for Partial Summary Judgment. *See Id*. at *7 ("A 'heckler's veto' is an impermissible content-based restriction where the speaker is silenced due to an anticipated disorderly or violent reaction of the audience.") (*quoting Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1158 (9th Cir. 2007) and *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134-35 (1992) ("Speech cannot be … punished … simply because it might offend a hostile mob.")).

A copy of the Ninth Circuit's decision is attached hereto as **Exhibit A**.

Dated: March 11, 2021

Respectfully submitted,

s/ Damion Robinson
David W. Affeld
Brian R. England
Damion D. D. Robinson
Affeld Grivakes LLP

Attorneys for Plaintiff Michael Zeleny

# EXHIBIT A

2021 WL 821938
Only the Westlaw citation is currently available.
United States Court of Appeals, Ninth Circuit.

UNITED STATES of America, Plaintiff-Appellant,
v.
Robert Paul RUNDO; Robert Boman; Tyler Laube; Aaron Eason, Defendants-Appellees.

No. 19-50189
|
Submitted November 17, 2020 Pasadena, California
|
Filed March 4, 2021

**Synopsis**

**Background:** In prosecution for conspiracy to violate Anti-Riot Act, the United States District Court for the Central District of California, Cormac J. Carney, J., dismissed indictment, 2019 WL 11779228, and granted remaining defendant's motion to withdraw his guilty plea and to dismiss indictment, 2019 WL 11779227. Government appealed.

**Holdings:** The Court of Appeals held that:

[1] Act's overt act requirement referred to acts that fulfilled elements themselves;

[2] Act's prohibition against speech that "incites" or "instigates" riot did not violate First Amendment;

[3] Act provision criminalizing speech urging riot was facially overbroad;

[4] provision criminalizing interstate or foreign travel or use of facility of interstate or foreign commerce to organize riot was facially overbroad;

[5] provision criminalizing interstate or foreign travel or use of facility of interstate or foreign commerce to "encourage" or "promote" riot was facially overbroad;

[6] "riot," as defined by Act, was not protected under First Amendment; and

[7] Act's prohibition against inciting riot did not violate heckler's veto doctrine.

Reversed and rendered.

Fernandez, Senior Circuit Judge, concurred in part, dissented in part, and filed opinion.

**Procedural Posture(s):** Appellate Review; Preliminary Hearing or Grand Jury Proceeding Motion or Objection.

West Headnotes (21)

| [1] | **Criminal Law** |
| --- | --- |
| | Court of Appeals reviews de novo dismissal of indictment on the ground that underlying statute is unconstitutional. |

| [2] | **Constitutional Law** |
| --- | --- |
| | First Amendment's guarantees of free speech and free press protect advocacy of use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. U.S. Const. Amend. 1. |

| [3] | **Constitutional Law** |
| --- | --- |
| | Defendants alleging that statute is facially overbroad in violation of First Amendment have burden of establishing from both text language and actual fact that statute is substantially overbroad. U.S. Const. Amend. 1. |

| [4] | **Constitutional Law** |
| --- | --- |
| | Statute is facially invalid under First Amendment if it prohibits substantial amount of protected speech. U.S. Const. Amend. 1. |

| [5] | **Constitutional Law** |
| --- | --- |
| | Invalidation of statute for overbreadth in violation of First Amendment is strong medicine that is not to be casually employed, and thus court |

must construe statute as constitutional if it can reasonably do so. U.S. Const. Amend. 1.

### [6]   Constitutional Law

If statute contains constitutional infirmity, court must consider whether it is severable and, if so, invalidate only unconstitutional portions.

### [7]   Constitutional Law

It is court's duty to seek reasonable construction of statute that comports with constitutional requirements, so long as text is readily susceptible to such construction.

### [8]   Riot

Anti-Riot Act's overt act requirement referred to acts that fulfilled elements themselves, and not mere steps toward, or related to, one or more of those elements. U.S. Const. Amend. 1; 18 U.S.C.A. § 2101(a).

### [9]   Statutes

When statute itself defines terms, court must apply definitions contained in statute and exclude any unstated meanings.

### [10]   Riot

Anti-Riot Act's prohibition against speech that "incites" or "instigates" riot fell within scope of First Amendment exception for advocacy of use of force directed to inciting or producing imminent lawless action that is likely to incite or produce such action. U.S. Const. Amend. 1; 18 U.S.C.A. § 2101(a).

### [11]   Riot

Anti-Riot Act's provision criminalizing speech "urging" riot was facially overbroad under *Brandenburg*, 89 S.Ct. 1827; to "urge" meant only to advocate earnestly and with persistence, and earnestness and persistence did not suffice to transform forms of protected advocacy into speech likely to produce imminent lawless action. U.S. Const. Amend. 1; 18 U.S.C.A. § 2102(b).

### [12]   Riot

Anti-Riot Act's provision criminalizing interstate or foreign travel or use of facility of interstate or foreign commerce to "organize" riot was facially overbroad under *Brandenburg*, 89 S.Ct. 1827. U.S. Const. Amend. 1; 18 U.S.C.A. § 2101(a).

### [13]   Riot

First Amendment protected speech tending to encourage or promote riot, and thus Anti-Riot Act's provision criminalizing interstate or foreign travel or use of facility of interstate or foreign commerce to "encourage" or "promote" riot was facially overbroad under *Brandenburg*, 89 S.Ct. 1827. U.S. Const. Amend. 1; 18 U.S.C.A. § 2101(a).

### [14]   Riot

Anti-Riot Act's section providing that terms "to incite a riot," or "to organize, promote, encourage, participate in, or carry on a riot" "shall not be deemed to mean the mere oral or written advocacy of ideas or expression of belief, not involving advocacy of any act or acts of violence," meant to attach criminal consequences to advocacy of violence, and thus was overbroad under *Brandenburg*, 89 S.Ct. 1827. U.S. Const. Amend. 1; 18 U.S.C.A. § 2102(b).

### [15]   Statutes

In construing statute, court must examine meaning of words to see whether one construction makes more sense than another

as means of attributing rational purpose to Congress.

#### [16] Constitutional Law

Acts of violence are not protected under First Amendment. U.S. Const. Amend. 1.

#### [17] Constitutional Law

True threats, which involve subjective intent to threaten, are not protected by First Amendment. U.S. Const. Amend. 1.

#### [18] Riot

"Riot," as defined by Anti-Riot Act, was not protected under First Amendment; Act defined "riot" as public disturbance involving "act or acts of violence" or "threat or threats of the commission of an act or acts of violence" that presented "clear and present danger" to person or property of another individual. U.S. Const. Amend. 1; 18 U.S.C.A. § 2101(a).

#### [19] Constitutional Law

"Heckler's veto" is impermissible content-based speech restriction where speaker is silenced due to audience's anticipated disorderly or violent reaction. U.S. Const. Amend. 1.

#### [20] Riot

Anti-Riot Act's prohibition against inciting riot did not violate heckler's veto doctrine; intent to engage in prohibited overt act was personal prerequisite to punishment under Act and necessarily rendered any challenge based on innocent intent wide of mark. U.S. Const. Amend. 1; 18 U.S.C.A. § 2101(a).

#### [21] Statutes

When portion of statute is held to be unconstitutional, severance is remedy that must be applied when it is possible to do so.

**West Codenotes**

**Held Unconstitutional**

18 U.S.C.A. § 2101(a)(2); 18 U.S.C.A. § 2102(b)

Appeal from the United States District Court for the Central District of California, Cormac J. Carney, District Judge, Presiding, D.C. No. 2:18-cr-00759-CJC-1

**Attorneys and Law Firms**

Elana Shavit Artson (argued), David T. Ryan, and George E. Pence, Assistant United States Attorneys; Christopher D. Grigg, Chief, National Security Division; L. Ashley Aull, Chief, Criminal Appeals Section; Nicola T. Hanna, United States Attorney; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellant.

Brianna F. Mircheff (argued), Deputy Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; Peter Carl Swarth, West Hills, California; Jerome J. Haig, Torrance, California; John Neil McNicholas, Redondo Beach, California; for Defendants-Appellees.

Andrew Allen, Belvedere, California, for Amicus Curiae Free Expression Foundation Inc.

Before: Ferdinand F. Fernandez and Richard A. Paez, Circuit Judges, and Jon S. Tigar,[*] District Judge.

[*] The Honorable Jon S. Tigar, United States District Judge for the Northern District of California, sitting by designation.

Partial Concurrence and Partial Dissent by Judge Fernandez

**OPINION**

PER CURIAM:

The United States (hereafter, "the government") appeals from the district court's dismissal of the indictment against Defendants Robert Paul Rundo, Robert Boman, Tyler Laube, and Aaron Eason.[1] The Defendants were charged with conspiracy to violate the Anti-Riot Act,[2] and Rundo, Boman, and Eason were also charged with substantively violating the Act. The district court held that the Act was unconstitutional on the basis of facial overbreadth under the First Amendment to the United States Constitution.[3] Because the Act is not facially overbroad except for severable portions, we reverse and remand.

[1] Hereafter, unless otherwise indicated, we will refer to them collectively as "the Defendants."

[2] 18 U.S.C. §§ 2101–2102 (hereafter, "the Act").

[3] The district court did not reach the Defendants' alternative arguments. Nor do we. *See, e.g., Amelkin v. McClure*, 205 F.3d 293, 296 (6th Cir. 2000).

## BACKGROUND

**\*2** The indictment charges that the Defendants are members of the "Rise Above Movement" or "RAM," an organization that represents itself "as a combat-ready, militant group of a new nationalist white supremacy and identity movement." RAM members post videos and pictures online of their hand-to-hand-combat training, often interspersed with videos and pictures of their assaults on people at political events and messages supporting their white supremacist ideology.

Count One of the indictment charged the Defendants with conspiring and agreeing to riot. It alleged that in furtherance of the conspiracy, Rundo, Boman, and Eason recruited new members to join RAM, which conducted combat training to prepare them to commit violent acts at political rallies. The Defendants participated in that combat training and traveled to political rallies in Huntington Beach, California, and Berkeley, California, where they attacked people. Rundo also traveled to a political rally in San Bernardino, California, where he confronted and pursued people. For RAM recruitment purposes, Rundo and Boman posted information about those violent acts on social media.

Count Two of the indictment charged Rundo, Boman, and Eason with aiding and abetting one another in using facilities of interstate commerce (the internet, a telephone, and a credit card) with intent to riot from March 27, 2017, through April 15, 2017, and committing additional overt acts for that purpose. During that time, Eason used a credit card to rent a van and transported Rundo, Boman, and other RAM members to the Berkeley rally. Eason also used text messages to recruit individuals to attend combat training and the rally.

Laube pled guilty to the only charge against him, Count One. The remaining defendants moved to dismiss the indictment. The district court granted their motion and dismissed the indictment based on its conclusion that the Act is facially overbroad. Laube thereafter moved to withdraw his guilty plea and to dismiss the indictment against him for the same reason. The district court granted Laube's motion. This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3731.

**[1]** We review de novo the dismissal of an indictment on the ground that the underlying statute is unconstitutional. *See United States v. Afshari*, 426 F.3d 1150, 1153 (9th Cir. 2005).

## DISCUSSION

**[2]** "[T]he constitutional guarantees of free speech and free press" protect "advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S. Ct. 1827, 1829, 23 L. Ed. 2d 430 (1969) (per curiam).[4] The Defendants contend that the Act is facially overbroad in violation of the First Amendment because it prohibits advocacy that does not incite an imminent riot.

[4] Hereafter, sometimes referred to as "*Brandenburg*'s imminence requirement."

**[3]** **[4]** **[5]** **[6]** The Defendants have the burden of establishing from both "the text" language and "actual fact"

that the Act is substantially overbroad. *Virginia v. Hicks*, 539 U.S. 113, 122, 123 S. Ct. 2191, 2198, 156 L. Ed. 2d 148 (2003) (citation omitted). We first construe the provisions of the Act. *See United States v. Williams*, 553 U.S. 285, 293, 128 S. Ct. 1830, 1838, 170 L. Ed. 2d 650 (2008). "[A] statute is facially invalid if it prohibits a substantial amount of protected speech." *Id.* at 292, 128 S. Ct. at 1838. However, "[i]nvalidation for overbreadth is strong medicine that is not to be casually employed." *Id.* at 293, 128 S. Ct. at 1838 (citation and internal quotation marks omitted). Thus, we construe the Act as constitutional if we can reasonably do so. *See United States v. Harriss*, 347 U.S. 612, 618, 74 S. Ct. 808, 812, 98 L. Ed. 989 (1954).[5] If there is a constitutional infirmity, we must consider whether the Act is severable and, if so, invalidate only the unconstitutional portions. *See New York v. Ferber*, 458 U.S. 747, 769 n.24, 102 S. Ct. 3348, 3361 n.24, 73 L. Ed. 2d 1113 (1982).

[5]
> *See also Skilling v. United States*, 561 U.S. 358, 408–09, 130 S. Ct. 2896, 2931, 177 L. Ed. 2d 619 (2010); *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 616–18, 93 S. Ct. 2908, 2916, 2918–19, 37 L. Ed. 2d 830 (1973); *United States v. Cassel*, 408 F.3d 622, 634–35 (9th Cir. 2005); *cf. Iancu v. Brunetti*, ––– U.S. ––––, 139 S. Ct. 2294, 2301, 204 L. Ed. 2d 714 (2019); *Acosta v. City of Costa Mesa*, 718 F.3d 800, 811–17 (9th Cir. 2013) (per curiam).

**\*3** The Act does have some constitutional defects. However, those defects are severable from the remainder of the Act. Thus, the district court erred when it dismissed the indictment. We will explain.

I. *Most of the provisions of the Act are reasonably construed as constitutional*

At its core, the Act states:

(a) Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent–

(1) to incite a riot; or

(2) to organize, promote, encourage, participate in, or carry on a riot; or

(3) to commit any act of violence in furtherance of a riot; or

(4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;

and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph–

Shall be fined under this title, or imprisoned not more than five years, or both.

(b) In any prosecution under this section, proof that a defendant engaged or attempted to engage in one or more of the overt acts described in subparagraph (A), (B), (C), or (D) of paragraph (1) of subsection (a) and (1) has traveled in interstate or foreign commerce, or (2) has use of or used any facility of interstate or foreign commerce, including but not limited to, mail, telegraph, telephone, radio, or television, to communicate with or broadcast to any person or group of persons prior to such overt acts, such travel or use shall be admissible proof to establish that such defendant traveled in or used such facility of interstate or foreign commerce.

18 U.S.C. § 2101(a)–(b).[6] It continues:

(a) As used in this chapter, the term "riot" means a public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

(b) As used in this chapter, the term "to incite a riot", or "to organize, promote, encourage, participate in, or carry on a riot", includes, but is not limited to, urging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts.

18 U.S.C. § 2102.[7]

[6]

In the original statute, § 2101(a) was labeled § 2101(a)(1) and subparagraphs (1)–(4) were labeled subparagraphs (A)–(D). Pub. L. No. 90-284, Title I, § 104; 82 Stat. 75-76 (1968). In 1996, perhaps recognizing that § 2101(a) contained only one paragraph, Congress amended § 2101(a) "by striking '(1)' and by redesignating subparagraphs (A) through (D) as paragraphs (1) through (4), respectively." Pub. L. No. 104-294, Title VI, § 601(f)(15); 110 Stat. 3488 (1996). Congress failed, however, to amend the remaining text that refers back to "subparagraph[s] (A), (B), (C), or (D)." See §§ 2101(a)–(b). We read the statute's references to subparagraphs (A)–(D) as referring to subparagraphs (1)–(4) in § 2101(a). The parties do not dispute that interpretation. Cf. *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 287 n.6, 130 S. Ct. 1396, 1402 n.6, 176 L. Ed. 2d 225 (2010).

[7]

The legislative history of the Act has been widely discussed elsewhere. See *United States v. Dellinger*, 472 F.2d 340, 358–59, 363 (7th Cir. 1972); *id.* at 410–12 (Pell, J., concurring in part and dissenting in part); *Miselis*, 972 F.3d at 527–28; Marvin Zalman, *The Federal Anti-Riot Act and Political Crime: The Need for Criminal Law Theory*, 20 Vill. L. Rev. 897, 911–16 (1975).

**\*4** **[7]** The Defendants attack the Act on a number of bases: (A) the overt act provisions; (B) the provisions of subparagraphs (1), (2), and (4) of § 2101(a); (C) the definition of a riot; and (D) the heckler's veto doctrine. We will now consider each basis. In doing so, we emphasize that our duty is to seek a reasonable construction of the Act that comports with constitutional requirements, so long as the text is "readily susceptible to such a construction." *United States v. Stevens*, 559 U.S. 460, 481, 130 S. Ct. 1577, 1591–92, 176 L. Ed. 2d 435 (2010) (citation and internal quotation marks omitted); see *Harriss*, 347 U.S. at 618, 74 S. Ct. at 812.

A. *Overt act provisions*

The Defendants argue that the travel in or use of any facility of interstate or foreign commerce and "any other overt act for any purpose specified in subparagraph [ (1), (2), (3), or (4) ] of [subsection (a) ]" are too far removed in time from any riot to satisfy *Brandenburg*'s imminence requirement. They liken the "overt act" in the Act to an overt act for a conspiracy. See *United States v. Harper*, 33 F.3d 1143, 1148 (9th Cir. 1994). However, the Act is not a conspiracy statute. And the travel in or use of a facility of interstate or foreign commerce includes conduct, not just speech. The government argues that the Seventh Circuit Court of Appeals correctly read the references to the somewhat unusual "overt act" language as more limited than the scope envisioned by the Defendants.

We adopt the Seventh Circuit's approach to the "overt act" provisions. See *United States v. Dellinger*, 472 F.2d 340, 361–62 (7th Cir. 1972). In *Dellinger*, the court reasoned that the "overt act" provision in § 2101(a) was amenable to two meanings. In the first interpretation, "for any purpose specified" could include speech that was only "a step toward" one of the acts in subparagraphs (1)–(4). *Id.* at 362. In the second, the words could reasonably be read to limit the meaning of "overt act" to one of the specific acts contemplated in subparagraphs (1)–(4). *Id.* In other words, the provision could be construed to mean the acts in subparagraphs (1)–(4) are goals, or are themselves the required overt acts. *Id.* Although the first meaning does not require "an adequate relation" between speech and action, the second closely connects speech and action such that any First Amendment concerns would arise from the conduct

criminalized in subparagraphs (1)–(4), rather than the overt act provision itself. *See id*. Significantly, § 2101(b) also supports that construction by specifically referring to "the overt acts described in subparagraph [ (1), (2), (3), or (4) ] of subsection (a)." *See id*.

[8]  We hold that the overt act requirement refers to acts that fulfill the elements themselves, and not mere steps toward, or related to, one or more of those elements. Thus, *Brandenburg*'s imminence requirement is not violated.[8]

[8]  We disagree with the Fourth Circuit's conclusion that the "overt act" provision in § 2101(a) indicates the Act is an attempt statute. *See Miselis*, 972 F.3d at 534–35. By analogizing to an attempt statute, the Fourth Circuit sidesteps—and ultimately fails to address—the need to construe the "overt act" provision in such a way that satisfies *Brandenburg*'s imminence requirement.

B.  *Section 2101(a), subparagraphs (1)–(2), (4)*

The Defendants contend that subparagraphs (1), (2), and (4) of § 2101(a) are facially overbroad because they criminalize speech that "urg[es]," "instigat[es]," "organize[s]," "promote[s]," or "encourage[s]" a riot and "advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts." We will explain why we agree in part and disagree in part.

 *5  [9]  In effect, § 2102(b) indicates that the definitions of the terms "to incite a riot" (from subparagraph 2101(a)(1)) and "to organize, promote, encourage, participate in, or carry on a riot" (from subparagraph 2101(a)(2)) together encompass but are "not limited to, urging or instigating other persons to riot" but do not encompass "the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts." Because the statute itself defines these terms, we apply the definitions contained in the statute and exclude any unstated meanings.[9] *See Stenberg v. Carhart*, 530 U.S. 914, 942, 120 S. Ct. 2597, 2615, 147 L. Ed. 2d 743 (2000).

[9]  Treating subparagraphs (1) and (2) alike, the Defendants argue, would render the terms "organize," "promote," and "encourage" mere surplusage. We think not. In any event, "statutes often contain overlapping provisions .... Congress may have acted similarly in drafting these statutes out of an understandable desire to make sure that no form of [incitement to riot] be left out." *United States v. Carona*, 660 F.3d 360, 369 (9th Cir. 2011); *see also United States v. Corrales-Vazquez*, 931 F.3d 944, 957–58 (9th Cir. 2019) (Fernandez, J., dissenting); *cf. Marinello v. United States*, ––– U.S. ––––, 138 S. Ct. 1101, 1107, 200 L. Ed. 2d 356 (2018); *United States v. Cabaccang*, 332 F.3d 622, 628 (9th Cir. 2003) (en banc).

[10]  (1) *Instigate*: "Instigate" means "to goad or urge forward : set on : PROVOKE, INCITE."[10] Likewise, "incite" means "to move to a course of action : stir up : spur on : urge on."[11] Like the Fourth Circuit and the Seventh Circuit, we conclude that speech that "incites" or "instigates" a riot satisfies *Brandenburg*'s imminence requirement. *See Miselis*, 972 F.3d at 536, 538; *Dellinger*, 472 F.2d at 361–62. Because even advocacy that is likely to cause an imminent riot is unprotected,[12] the Defendants' argument that "instigate" does not demand imminence because it means "to cause an event or situation to happen"[13] fails.

[10]  *Instigate*, Webster's Third New International Dictionary (unabridged ed. 1986).

[11]  *Incite*, Webster's Third New International Dictionary § 1 (unabridged ed. 1986); *see also Incitement*, Black's Law Dictionary (11th ed. 2019).

[12]  *See White v. Lee*, 227 F.3d 1214, 1227 (9th Cir. 2000).

[13]  *Instigate*, Cambridge Advanced Learner's Dictionary (4th ed. 2013).

[11]  (2) *Urging*: Urge "means simply to 'encourage,' 'advocate,' 'recommend,' or 'advise ... earnestly and with persistence.' " *Miselis*, 972 F.3d at 538 (alteration in original) (citations omitted). We agree with the Fourth Circuit

that, "because earnestness and persistence don't suffice to transform such forms of protected advocacy into speech that is likely to produce imminent lawless action, *Brandenburg* renders the purpose of 'urging' others to riot overbroad." *Id.*

[12] (3) *Organize*: The verb "organize" is similarly overbroad. Like "urge," "organize" is not susceptible to a limiting construction that brings it within *Brandenburg*'s strictures.

In *Brandenburg*, the Supreme Court considered a speech given at a Ku Klux Klan rally. 395 U.S. at 445–46, 89 S. Ct. at 1828–29. The speaker stated (1) "This is an organizers' meeting," (2) if the government "continues to suppress the white, Caucasian race, it's possible that there might have to be some revengeance taken," and (3) "[w]e are marching on Congress July the Fourth, four hundred thousand strong." *Id.* at 446, 89 S. Ct. at 1829. The Court concluded that such speech was protected under the First Amendment. *Id.* at 449, 89 S. Ct. at 1830 (holding the statute of conviction, "by its own words and as applied, purports to punish mere advocacy"). Thus, the use of the verb "organize" in subparagraph 2101(a)(2) punishes protected speech.

 **\*6**  [13] (4) *Encourage and promote*: Moreover, like the Fourth Circuit, we conclude that the First Amendment protects speech tending to "encourage" or "promote" a riot. *See Miselis*, 972 F.3d at 536–37. Black's Law Dictionary defines "encourage" as meaning "[t]o instigate; to incite to action; to embolden; to help" and cross-references aiding and abetting.[14] The Oxford English Dictionary's definition of "encourage" is similar but also includes "to recommend, advise."[15] The latter definition fails *Brandenburg*'s imminence requirement. The same is true for "promote," which is synonymous with "encourage."[16] *See Miselis*, 972 F.3d at 536–37; *cf. Williams*, 553 U.S. at 299–300, 128 S. Ct. at 1842 (explaining that "the statement ... 'I encourage you to obtain child pornography' " is "abstract advocacy" and is protected, but "promotes," when construed as "the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer," is not protected speech).

[14] *Encourage*, Black's Law Dictionary (11th ed. 2019).

[15] *Encourage*, The Compact Oxford English Dictionary § 2(b) (2d ed. 1991).

[16] *See Promote*, Webster's Third New International Dictionary § 4(a) (unabridged ed. 1986); *see also Promote*, The Compact Oxford English Dictionary § 2(a) (2d ed. 1991).

[14] (5) *Effect of § 2102(b) limitations*: Additionally, § 2102(b) states that the terms in question "shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts." The Defendants argue that the double negative cancels itself out and that the Act therefore proscribes mere "advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts." *See Miselis*, 972 F.3d at 539; *see also Lester v. Parker*, 235 F.2d 787, 790 n.5 (9th Cir. 1956) (per curiam). We agree. The First Amendment protects that kind of advocacy. *See Brandenburg*, 395 U.S. at 447, 89 S. Ct. at 1829.

We recognize that the Seventh Circuit construed the exclusion to merely "forestall any claim ... [that] advocacy and assertion constitute mere advocacy of ideas or expression of belief excluded under" § 2102(b) in the context of "a truly inciting, action-propelling speech [that] include[d] advocacy of acts of violence and assertion of the rightness of such acts." *Dellinger*, 472 F.2d at 363; *see also In re Shead*, 302 F. Supp. 560, 566 (N.D. Cal. 1969), *aff'd on other grounds sub nom. Carter v. United States*, 417 F.2d 384 (9th Cir. 1969). We do not believe that the words of the Act will reasonably bear that construction.

[15] "We must examine the meaning of the words to see whether one construction makes more sense than the other as a means of attributing a rational purpose to Congress." *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1311 (9th Cir. 1992). The "clear and present danger" test in the definition of a riot illuminates Congress's intent here. *See § 2102(a)*. At one time, in deciding whether a statute violated the First Amendment, courts considered "whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent."

*Schenck v. United States*, 249 U.S. 47, 52, 39 S. Ct. 247, 249, 63 L. Ed. 470 (1919). For example, under that test, the First Amendment "would not protect a man in falsely shouting fire in a theatre and causing a panic." *Id.* But, mere advocacy of Communism also satisfied the clear and present danger test. See *Whitney v. California*, 274 U.S. 357, 366, 371–72, 47 S. Ct. 641, 645, 647, 71 L. Ed. 1095 (1927), *overruled by Brandenburg*, 395 U.S. 444, 89 S. Ct. 1827.

*Brandenburg*'s imminence requirement is more exacting than the prior clear and present danger test. See *Miselis*, 972 F.3d at 532–33; *Turney v. Pugh*, 400 F.3d 1197, 1202 (9th Cir. 2005); *see also United States v. Viefhaus*, 168 F.3d 392, 397 n.3 (10th Cir. 1999); *Shackelford v. Shirley*, 948 F.2d 935, 937 (5th Cir. 1991). However, because *Brandenburg*'s imminence requirement was not adopted until after Congress passed the Act, there is no reason to determine that use of the double negative was a drafting error. *Cf. Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S. Ct. 1392, 1397–98, 99 L. Ed. 2d 645 (1988) (stating "courts will ... not lightly assume that Congress intended to infringe constitutionally protected liberties"). Therefore, there is no reason to deviate from the usual principle that Congress said what it meant and meant what it said [17] when it used the double negative in § 2102(b).

17     See *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 1947, 147 L. Ed. 2d 1 (2000).

**\*7** (6) *Aid or abet*: The Defendants assert that "to aid or abet any person in inciting ... a riot" (from subparagraph 2101(a)(4)) is subject to the same definition as "to incite a riot" (from subparagraph 2101(a)(1)). Thus, for the foregoing reasons, aiding or abetting inciting a riot satisfies *Brandenburg*'s imminence requirement.

In sum, subparagraphs (1), (2), and (4) of § 2101(a) do not violate the First Amendment except insofar as subparagraph (2) prohibits speech tending to "organize," "promote," or "encourage" a riot, and § 2102(b) expands the prohibition to "urging" a riot and to mere advocacy.

### C. *Riot and threat of riot*

The Defendants assert that the very definition of a "riot" is unconstitutional. We do not agree.

A "riot" requires either one or more "acts of violence" or one or more "threats" to commit one or more acts of violence. § 2102(a). The completed acts of violence (or the threatened acts of violence) must "constitute a clear and present danger of, or ... result in, damage or injury to the property ... or to the person of any other individual." *Id.*

[16] [17] Acts of violence are not protected under the First Amendment. See *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916, 102 S. Ct. 3409, 3427, 73 L. Ed. 2d 1215 (1982). Nor are "true threats," which involve subjective intent to threaten. See *Cassel*, 408 F.3d at 633; *see also Virginia v. Black*, 538 U.S. 343, 359–60, 123 S. Ct. 1536, 1547–48, 155 L. Ed. 2d 535 (2003). "True threats" are not limited to bodily harm only but also include property damage. See *Cassel*, 408 F.3d at 636–37; *see also Miselis*, 972 F.3d at 540; *United States v. Coss*, 677 F.3d 278, 283–84, 289–90 (6th Cir. 2012); *United States v. Parr*, 545 F.3d 491, 497 (7th Cir. 2008).

[18] "[W]e do not hesitate to construe" a statute punishing threats "to require ... intent" to threaten. *Cassel*, 408 F.3d at 634; *cf. Elonis v. United States*, 575 U.S. 723, ——, 135 S. Ct. 2001, 2012, 192 L. Ed. 2d 1 (2015). By requiring proof of "intent" and proof that the overt act was committed "for [the] purpose" of a riot, [18] which also indicates subjective intent, [19] Congress limited the "threats" part of the definition of a riot to "true threats." Thus, a "riot," as defined in the Act, is not protected under the First Amendment.

18     18 U.S.C. § 2101(a).

19  Cf. _United States v. Wells_, 519 U.S. 482, 489–90, 499, 117 S. Ct. 921, 926–27, 931, 137 L. Ed. 2d 107 (1997).

### D. _Heckler's veto_

The Defendants assert that the provisions of the Act violate the heckler's veto doctrine.

 [19]  [20] "A 'heckler's veto' is an impermissible content-based speech restriction where the speaker is silenced due to an anticipated disorderly or violent reaction of the audience." _Rosenbaum v. City and County of San Francisco_, 484 F.3d 1142, 1158 (9th Cir. 2007); _see also_ _Forsyth County v. Nationalist Movement_, 505 U.S. 123, 134–35, 112 S. Ct. 2395, 2404, 120 L. Ed. 2d 101 (1992) ("Speech cannot be ... punished ... simply because it might offend a hostile mob."). The Defendants argue that the Act violates that rule. Not so. Under its provisions, "the intent to engage in one of the prohibited overt acts is a personal prerequisite to punishment under [the Act] and necessarily renders any challenge based on innocent intent ... wide of the mark." _Nat'l Mobilization Comm. to End the War in Viet Nam v. Foran_, 411 F.2d 934, 938 (7th Cir. 1969); _see also_ _Lewis v. Wilson_, 253 F.3d 1077, 1081 (8th Cir. 2001); _Nelson v. Streeter_, 16 F.3d 145, 150 (7th Cir. 1994). Simply put, knowing that some might choose to become violent is not at all the same as intending that they do so.

### II. _The Act criminalizes a substantial amount of protected speech_

**\*8** Again, when we apply the above construction, the Act prohibits protected speech tending to "organize," "promote" or "encourage" a riot [20] and expands that prohibition to "urging" a riot and to mere advocacy. [21] To that extent, we agree with the Fourth Circuit that the Act criminalizes a substantial amount of protected speech. _See_ _Miselis_, 972 F.3d at 540–41; _cf._ _Williams_, 553 U.S. at 298–99, 128 S. Ct. at 1842.

20  § 2101(a)(2).

21  18 U.S.C. § 2102(b).

### III. _The unconstitutional portions of the Act are severable_

 [21] Because the Act is not facially overbroad except as indicated in parts I and II of this opinion, we must determine whether the remainder of the Act may be salvaged by severance. We are satisfied that it can be. Indeed, severance is the remedy that must be applied when it is possible to do so. _See_ _United States v. Booker_, 543 U.S. 220, 258–59, 125 S. Ct. 738, 764, 160 L. Ed. 2d 621 (2005). And that can be accomplished by severing small portions of the statutory language—even words or phrases. For instance, last year, "seven Members of the Court" [22] concluded that, even if the Court did not utilize a robocall statute's severability clause, "the presumption of severability" [23] required severance of the following exception from the remainder of the statute: " '_unless such call is made solely to collect a debt owed to or guaranteed by the United States._' " [24] We also have applied the severance principle in that manner. _See_ _United States v. Taylor_, 693 F.2d 919, 921–22 (9th Cir. 1982) (severing a single clause from a statutory provision); _cf._ _Nat'l Mining Ass'n v. Zinke_, 877 F.3d 845, 865–66 (9th Cir. 2017) (stating that courts have "severed" unconstitutional provisions "within single sentences"). Other courts of appeals have done the same. _See, e.g._, _Miselis_, 972 F.3d at 541–43; _Lipp v. Morris_, 579 F.2d 834, 835 & n.2, 836 (3d Cir. 1978) (per curiam).

22  _Barr v. Am. Ass'n of Pol. Consultants, Inc._, ––– U.S. ––––, 140 S. Ct. 2335, 2343, 207 L. Ed. 2d 784 (2020).

23  _Id._ at ––––, 140 S. Ct. at 2354.

24  _Id._ at –––– n.2, 140 S. Ct. at 2345 n.2.

Here, § 2101(a)(2)'s inclusion of "organize," "promote" and "encourage" and § 2102(b)'s inclusion of "urging or" and "not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts" are severable from the remainder of the Act. _See_ _Miselis_, 972 F.3d at 542–43. We agree with the Fourth Circuit and conclude that Congress would prefer severance over complete invalidation. _See_ _id._ at 543–44.

So severed, § 2101(a) states:

Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent–

(1) to incite a riot; or

(2) to participate in, or carry on a riot; or

(3) to commit any act of violence in furtherance of a riot; or

(4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;

and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph–

Shall be fined under this title, or imprisoned not more than five years, or both.

**\*9** So severed, § 2102(b) states:

As used in this chapter, the term "to incite a riot", or "to participate in, or carry on a riot", includes, but is not limited to, instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief.

With the above construction and severance, the Act is not facially overbroad. Rather, the Act prohibits unprotected speech that instigates (incites, participates in, or carries on) an imminent riot, unprotected conduct such as committing acts of violence in furtherance of a riot, and aiding and abetting of that speech or conduct.

## CONCLUSION

Once the offending language is elided from the Act by means of severance, the Act is not unconstitutional on its face. We recognize that the freedoms to speak and assemble which are enshrined in the First Amendment are of the utmost importance in maintaining a truly free society. Nevertheless, it would be cavalier to assert that the government and its citizens cannot act, but must sit quietly and wait until they are actually physically injured or have had their property destroyed by those who are trying to perpetrate, or cause the perpetration of, those violent outrages against them. Of course, the government cannot act to avert a perceived danger too soon, but it can act before it is too late. In short, a balance must be struck. *Brandenburg* struck that balance, [25] and the Act (after the elisions) adheres to the result. Therefore, we reverse the district court's dismissal of the indictment and remand for proceedings consistent with this opinion.

[25] *Brandenburg*, 395 U.S. at 447, 89 S. Ct. at 1829 (explicating the imminence requirement).

**REVERSED and REMANDED.**

FERNANDEZ, Circuit Judge, concurring in part and dissenting in part:

I concur in the per curiam opinion with two exceptions. That is, I would not strike the concepts of organizing and urging from the Act, and, to that extent, I dissent.

(1) I dissent from Part I.B.(2) of the per curiam opinion, which eliminates the concept of urging from the Act. Webster's defines "urge," in relevant part, as:

> *vt* **1 :** to present in an earnest or pressing manner : press upon attention : insist upon : plead or allege in or as if in argument or justification : advocate or demand with importunity ... **[3] b :** to be a compelling, impelling, or constraining influence upon : serve as a motivating impulse or reason for ... **5 :** to rouse from a dormant state or into life, expression, or action : STIMULATE, PROVOKE ... ~ *vi* ... **3 :** to exercise an inciting, constraining, or stimulating influence.

*Urge*, Webster's Third New International Dictionary (unabridged ed. 1986). Likewise, the Oxford English Dictionary defines "urge," in relevant part, as "[t]o act as an impelling or prompting motive, stimulus, or force; to incite or stimulate; to exercise pressure or constraint." *Urge*, The Compact Oxford English Dictionary § 11 (2d ed. 1991). Not

only do those definitions include the concept of inciting, but also their link to action denotes imminence. Further, speech that urges violence or physical disorder in the nature of a riot does not have the protection of the First Amendment. *Cf.* [White v. Lee,](...) 227 F.3d 1214, 1228 (9th Cir. 2000). Based on the foregoing, I am not persuaded by the Fourth Circuit's contrary interpretation of "urge"—that [Brandenburg](...)[1] protects speech that " 'urge[s],' " which "means simply to 'encourage,' 'advocate,' 'recommend,' or 'advise ... earnestly and with persistence.' " [United States v. Miselis,](...) 972 F.3d 518, 538 (4th Cir. 2020); *cf.* [United States v. Dellinger,](...) 472 F.2d 340, 361–62 (7th Cir. 1972). Rather, in the context of this statute, "urge" indicates imminence of the riot danger.

[1] [Brandenburg v. Ohio,](...) 395 U.S. 444, 447, 89 S. Ct. 1827, 1829, 23 L. Ed. 2d 430 (1969) (per curiam).

**\*10** (2) I dissent from Part I.B.(3) of the per curiam opinion, which eliminates the concept of organizing from the Act. In the context of an event or activity, like a riot, "organize" means "to unify into a coordinated functioning whole : put in readiness for coherent or cooperative action,"[2] or "to arrange by systematic planning and coordination of individual effort."[3] Simply put, "organize" means "[t]o arrange (personally); to take responsibility for providing (something); to 'fix up.' " *Organize*, The Compact Oxford English Dictionary § 2(d) (2d ed. 1991). I agree with the Fourth Circuit that "speech tending to organize a riot serves not to persuade others to engage in a hypothetical riot, but rather to facilitate the occurrence of a riot that has already begun to take shape," indicating imminence. [Miselis, 972 F.3d at 537.](...) It is far from mere speech. It is the very purposeful, physical, and concrete action of structuring people into an intentionally physically violent force, which is at least on the brink of carrying out its mission. Although it might be reasonable to organize some events into the far future, as I see it, organizing a riot does not reasonably lend itself to that interpretation.

[2] *Organize*, Webster's Third New International Dictionary § 2(b) (unabridged ed. 1986).

[3] *Id*. § 4(a).

Thus, I respectfully concur in part and dissent in part.

**All Citations**

--- F.3d ----, 2021 WL 821938

---

**End of Document** © 2021 Thomson Reuters. No claim to original U.S. Government Works.

**PROOF OF SERVICE**

    I hereby certify that on March 11, 2021, I electronically filed the foregoing document using the Court's CM/ECF system. I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

                                                                s/ Damion Robinson
                                                                 Damion Robinson