**TODD H. MASTER [SBN 185881]**
tmaster@hrmrlaw.com
**ROBERT J. GUNDERT [SBN 104486]**
rgundert@hrmrlaw.com
**HOWARD ROME MARTIN & RIDLEY LLP**
1900 O'Farrell Street, Suite 280
San Mateo, CA  94403
Telephone:     (650) 365-7715
Facsimile:      (650) 364-5297

Attorneys for Defendants
CITY OF MENLO PARK and DAVE BERTINI

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

| | |
|---|---|
| MICHAEL ZELENY, an individual<br><br>Plaintiff,<br><br>vs.<br><br>EDMUND G. BROWN, JR., an individual, in his official capacity, et al.<br><br>Defendants. | Case No. 17-cv-07357-RS (TSH)<br><br>**SUPPLEMENTAL BRIEF OF DEFENDANTS CITY OF MENLO PARK AND DAVE BERTINI REGARDING *YOUNG v. STATE OF HAWAII* AS PERTINENT TO PENDING MOTIONS FOR SUMMARY JUDGMENT AND/OR ADJUDICATION**<br><br>Date:   April 22, 2021<br>Time:   1:30 p.m.<br>Dept.:  Courtroom 3<br>Judge:  Hon. Richard Seeborg<br><br>Trial Date: None |

The Ninth Circuit's decision in *Young v. State of Hawaii*, Case No. 12-17808, 2021 U.S. App. LEXIS 8571 (9th Cir., March 24, 2021) applies to this case in various significant ways. Although *Young* involved a facial challenge to a statute, it is particularly applicable to plaintiff's as-applied claims, since defendants cannot be found to have unconstitutionally denied plaintiff's alleged right to use firearms in his protest and so-called entertainment event when he never had that

right in the first place. The following discusses the applicability of the *Young* decision both to plaintiff's as-applied claims and to his facial challenges to the City of Menlo Park's Special Event Permit process and its film permit ordinance.

### *Plaintiff Had No Second Amendment Right to Openly Display His Firearms in Public*

The extensive historical analysis undertaken by the *Young* majority shows that for over 700 years governing authorities have had the well-recognized authority to restrict the possession of weapons in public. (*Young, supra* at *110.)

The sum and substance of the Court's historical survey, analysis and conclusion is expressed in the following passages:

> [F]or centuries we have accepted that, in order to maintain the public peace, the government must have the power to determine whether and how arms may be carried in public places. There is no right to carry arms openly in public; nor is any such right within the scope of the Second Amendment. *Cf. Kachalsky*, 701 F.3d at 96 ("[S]tate regulation of the use of firearms in public was 'enshrined with[in] the scope' of the Second Amendment when it was adopted." (alteration in original) (quoting *Heller*, 554 U.S. at 634)). (*Id.* at *112.)

&

> [T]he Second Amendment did not contradict the fundamental principle that the government assumes primary responsibility for defending persons who enter our public spaces. The states do not violate the Second Amendment by asserting their longstanding English and American rights to prohibit certain weapons from entering those public spaces as means of providing "domestic Tranquility" and forestalling "domestic Violence." U.S. Const. pmbl.; U.S. Const. art. IV, § 4. (*Id.* at *113.)

The *Young* court's historical survey shows that much of the State's long recognized power and authority to restrict the public possession of firearms has been based on preventing "terror" to the citizenry. The prohibition of carrying weapons openly "to the terror of the King's people" dates back to 1615, if not earlier, and was foundational to the power of the governing authorities to keep the peace. (*Young, supra* at pp. *53-59.)

That people would be terrified and public safety jeopardized was a primary concern expressed by the City of Menlo Park City Council when it heard the appeal of the denial of plaintiff's Special Event Permit ("SEP") application. During that hearing the City Council

DEFTS CITY AND BERTINI'S SUPPLEMENTAL BRIEF RE *YOUNG v. HAWAII*; Case No. 17-cv-07357-RS
-2-

1  repeatedly expressed concerns about how the plaintiff's open display of his military grade firearms
2  would terrify people and create public safety and traffic danger. See City Council Hearing
3  Transcript (Exhibit F to Doc. 160-6) at 18:12-13, 23:18-25:4, 39:12-17, 41:19-42:8.

4  Even Plaintiff has acknowledged that people seeing him with his military grade weaponry would likely become frightened. See Exhibit A at Pg. 12 to Master Decl. [160-3] (Zeleny Depo. Tpt at Pg. 58, Ln. 13 to Pg. 59, 19). *Young* clearly states that protecting the public, keeping the citizenry free from the terror evoked by such weaponry, and preserving the peace are all within the governing authorities' legitimate prerogative. It is clear from *Young* that defendant City had the legal right to deny plaintiff's SEP application given his insistence on openly displaying his military grade guns on the center median of Sand Hill Road.

Plaintiff has given various reasons for wanting to display guns during his protest. In the City Council appeal hearing he was asked, "Why guns?" and responded, "What I found to be the case is that nobody pays attention to an unarmed man." CC Hrg. Tpt. (Exhibit F to Doc. 160-6) at 14:23-15:1. See also CC Hrg. Tpt. at 15:20-21 and Para. 4 of the Second Amended Complaint.

Plaintiff also stated during the appeal hearing that he wanted to "demonstrat[e] my readiness and ability to defend myself with the tools available to me" those being his military grade weapons. CC Hrg. Tpt. at 16:9-11. Given the analysis in *Young* it is not reasonable to claim that one has a constitutional right to display guns in public in order to attract attention, emphasize one's message, or demonstrate the ability to defend oneself. *Young* was dealing with a plaintiff who sought a license for a handgun, but it is clear that its analysis and rationale applies to a situation such as this, where one seeks to openly display military grade guns.

Plaintiff has also claimed that he wanted to have his guns and ammunition for self-defense purposes. He has mentioned death threats and calls that he received in the 1999-2008 time frame. See Exhibit A at Pg. 11 to Master Decl. [160-3] (Zeleny Depo. Tpt at Pg. 56, Ln. 19 to Pg. 57, Ln. 6). *Young* speaks to that too, stating that there must be a sufficient and urgent need to protect life or property in order to claim a self-defense reason for possessing guns in public. Claiming to have

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

received death threats seven years earlier does not establish an urgent need. Even if it did, the City would still have the right to decline plaintiff's proposed open display and potential use of military grade firearms on the median of a busy roadway.

In addition to dispelling the notion that there is a constitutional right to openly display guns in public, *Young* also validates the City's reading of the exceptions to Penal Code §§ 26350 and 26400. As the Court will recall, there is an issue regarding the phrase "authorized participant" found in Penal Code §§ 26375 and 26405(r). Plaintiff contends that he, as the producer of an "entertainment event," may authorize himself to openly carry guns while engaged in or rehearsing for that event. The City's position is that it has the right under the exemptions to grant or deny authorization to openly display guns on public property. *Young* shows that the City's view is correct . The Court makes it clear that the government, not the firearm possessor, has the power to authorize or decline to authorize possession of firearms in public places.

Finally, *Young* shows that plaintiff's claim that he was wrongly denied a film permit is speculative. When plaintiff Zeleny sought a film permit he was asked a number of legitimate questions regarding his firearms, which he declined to answer. He chose to file suit rather than answer those questions and complete the permit application process. In *Young* the plaintiff did complete the permit application process, but he never challenged the government's denial of his application. (*Young, supra* at pp. *127-128.)  In view of that the Court stated that his due process claim was speculative and declined to adjudicate it. The Court stated that "[a] claim that 'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all' is not ripe for review. [Citations.]" (*Id.* at * 128.)  That language is even more applicable here where plaintiff did not even complete the application process.

### *The Young Decision is Also Determinative of Plaintiff's Facial Challenges*

*Young* affects plaintiff's Second Amendment facial challenges in the following ways:

First, since there is no constitutional right to carry a firearm in public any ordinance, policy or procedure that arguably restricts the right of one to possess a handgun on public property is not

subject to invalidation on Second Amendment grounds.

Next, it has been held in the Second Amendment context that when an as-applied Second Amendment claim fails a plaintiff has no standing to assert a Second Amendment facial challenge. See *United States v. Skoien*, 614 F.3d 638, 645 (7th Cir., 2010). First Amendment standing, which allows one to bring a claim of overbreadth on behalf of third parties even if a law has been properly applied to the plaintiff is unique. See *Lopez v. Candaele*, 630 F.3d 775, 780, 785, 793 (9th Cir., 2010).  It does not apply outside of the First Amendment context and even there it is limited. *Id.*

So what is left of plaintiff's case?  In short, nothing.

Plaintiff's claim that he was denied a permit because of the content of his message finds no support in the record. His claim that the City's film permit ordinance (Menlo Park Mun. Code Chapter 13.18) is facially invalid is spurious and may not be granted if there is any set of circumstances in which it would be valid. (*United States v. Salerno*, 481 U.S. 739, 745 (1987). Finally, plaintiff lacks standing to claim that the SEP process is invalid under the First Amendment since it does not apply to protests or film projects.  Even First Amendment standing requires a nexus between the challenged enactment and the plaintiff's activities. (*Lopez, supra* at p. 780.) Article III of the U.S. Constitution does not permit one to challenge a statute that does not apply to him or her.

DATED: April 9, 2021

                HOWARD ROME MARTIN & RIDLEY LLP


                By:  /s/ Robert J. Gundert
                    Todd H. Master
                    Robert J. Gundert
                    Attorneys for Defendants CITY OF MENLO
                     PARK and  DAVE BERTINI