MATTHEW RODRIQUEZ
Acting Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
JOHN W. KILLEEN
Deputy Attorney General
State Bar No. 258395
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-6045
 Fax: (916) 324-8835
 E-mail: John.Killeen@doj.ca.gov
*Attorneys for Defendant Acting Attorney General Matthew Rodriquez*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>GAVIN NEWSOM, an individual, in his official capacity; XAVIER BECERRA, an individual, in his official capacity; CITY OF MENLO PARK, a municipal corporation; and DAVE BERTINI, in his official capacity,<br><br>Defendants. | Case No. 3:17-cv-07357 RS (NC)<br><br>**CALIFORNIA ACTING ATTORNEY GENERAL MATTHEW RODRIQUEZ'S SUPPLEMENTAL BRIEF REGARDING RECENT AUTHORITIES**<br><br>Date: April 22, 2021<br>Time: 1:30 p.m.<br>Dept: Courtroom 3, 17th Floor<br>Judge: The Honorable Richard G. Seeborg<br>Trial Date: None set<br>Action Filed: 12/28/2017 |

—

**TABLE OF CONTENTS**

**Page**

I. *Young v. State of Hawaii* .................................................................................................... 1
    A. The Relevance of *Young* to the Attorney General's Pending Motion ......... 1
    B. The Relevance of *Young* to Zeleny's Pending Motion ............................... 1
        1. Waiver .................................................................................................. 1
        2. *Heller* Step One Analysis ................................................................. 2
        3. *Heller* Step Two Analysis ............................................................... 3
II. *United States v. Rundo* ...................................................................................................... 4

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Flanagan v. Harris*
  2018 WL 2138462 (C.D. Cal. May 7, 2018) .................................................................................... 4

*Moore v. Madigan*
  702 F.3d 933 (7th Cir. 2012) ........................................................................................................... 2

*United States v. Rundo*
  2021 WL 821938 (9th Cir. March 4, 2021) ................................................................................ 1, 4

*Wrenn v. District of Columbia*
  864 F.3d 650 (D.C. Cir. 2017) ........................................................................................................ 2

*Young v. State of Hawaii*
  2021 WL 1114180 (9th Cir. March 24, 2021) ...................................................................... 1, 2, 3, 4

**STATUTES**

18 United States Code
  § 2101 ............................................................................................................................................. 4
  § 2102 ............................................................................................................................................. 4

California Acting Attorney General Matthew Rodriquez (sued as Xavier Becerra) submits this supplemental brief regarding "*United States v. Rundo*, 2021 WL 821938 (9th Cir. March 4, 2021), and *Young v. State of Hawaii*, [2021 WL 1114180] (9th Cir. March 24, 2021)." ECF 182.

**I.    YOUNG V. STATE OF HAWAII**

In *Young*, the Ninth Circuit, sitting *en banc*, held that the State of Hawaii's restrictions on the open carry of handguns did not violate the Second Amendment on their face, because the open carry of handguns is conduct that has not traditionally fallen within the protection of the Second Amendment. *See Young*, 2021 WL 1114180, at **3, 35, 44.

**A.    The Relevance of *Young* to the Attorney General's Pending Motion**

*Young* supports the Attorney General's motion for summary judgment. Under the same "*Heller* step one" analysis employed by the court in *Young*, the Attorney General argued that Zeleny's desire to carry an unloaded firearm for the purpose of "amplifying" his protests was not conduct protected by the Second Amendment at all. ECF 161 at 16-18; ECF 166 at 14-15. The Attorney General demonstrated that there was no evidence of a free-standing constitutional or historical right to openly carry unloaded firearms for the purpose of amplifying a protest. *Id.* California's regulation of such unloaded firearms thus falls outside the scope of the Second Amendment, and such regulation can be upheld outright. *Id.*

*Young* is in accord: If carrying loaded handguns for self-defense outside the home is conduct that has not traditionally fallen within the protection of the Second Amendment—the core of which is self-defense of hearth and home—then carrying unloaded firearms for the purpose of amplifying a protest is even further outside the scope of the Second Amendment. Summary judgment should be entered in favor of the Attorney General on the complaint's Second Amendment claims.

**B.    The Relevance of *Young* to Zeleny's Pending Motion**

*Young* also undermines Zeleny's motion for summary judgment:

**1.    Waiver**

First, Zeleny argues in his motion that he has a constitutional right to carry firearms outside the home for self-defense. ECF 163 at 1 ("California's prohibitions eliminate a person's right to

carry a firearm in self-defense outside the home, in violation of the Second Amendment.")  The Attorney General demonstrated that this argument was waived for failure to plead it in the operative complaint, which asserted only a Second Amendment right to use *unloaded* weapons for *protests*, not a right to carry loaded weapons for self-defense.  ECF 166 at 15-17; ECF 161 at 18-19.  Zeleny's motion for summary judgment can be denied on this basis alone.  *Cf. Young*, 2021 WL 1114180, at *8 (declining to address putative as-applied claim that was "buried in [Young's] complaint and not well pleaded").

### 2. *Heller* Step One Analysis

Second, even if Zeleny had pleaded a Second Amendment right to carry his firearms openly for purposes of self-defense (which he did not), *Young* forecloses such a claim.

Zeleny relies heavily on cases from the Seventh Circuit (*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012)) and D.C. Circuit (*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017)) which found that open carry was protected under the Second Amendment to some degree.  ECF 163 at 12; *see Young*, 2021 WL 1114180, at **11-12 (discussing post-*Heller* cases).  In *Young*, the Ninth Circuit—whose opinion is binding here—reached a different result than *Moore* and *Wrenn*.  *See, e.g.*, *Young*, 2021 WL 1114180, at *40 ("We thus vigorously disagree with the D.C. Circuit's conclusion that . . . 'everyone started out with robust carrying rights.'").  After conducting an extensive historical analysis, the court in *Young* concluded that the historical record "confirms that we have never assumed that individuals have an unfettered right to carry arms into the public square for self-defense."  *Young*, 2021 WL 1114180, at *35.  "Government regulations on open carry are laws restricting conduct that can be traced back to the founding era and are historically understood to fall outside of the Second Amendment's scope, and thus may be upheld without further analysis."  *Young*, 2021 WL 1114180, at *35 (cleaned up).  Therefore, the court held that, at a minimum, "the government may regulate, and even prohibit, in public places—including government buildings, churches, schools, and markets—the open carrying of small arms capable of being concealed, whether they are carried concealed or openly."  *Id.*

While the holding of *Young* was addressed to "small arms"—because the Hawaii statute at issue applied only to small arms—its reasoning applies to Zeleny's complaint based on his desire

2

to carry long arms in public: "the fundamental point is that for centuries we have accepted that, in order to maintain the public peace, the government must have the power to determine whether and how arms may be carried in public places. There is no right to carry arms openly in public; nor is any such right within the scope of the Second Amendment." *Young*, 2021 WL 1114180, at *40; *see id.* at **35 ("government has the power to regulate arms in the public square"), 40 ("carrying arms in public was not treated as a fundamental right"). "The power of the government to regulate carrying arms in the public square does not infringe in any way on the right of an individual to defend his home or business," which is the core of the Second Amendment right. *Id.* at *36.

While an individual's liberty interest is at its zenith in the home, "it is particularly the duty of the states to defend the public square." *Id.* Historically, states had the primary responsibility for "securing what was formerly known as the king's peace." *Id.* (citations omitted). Part of maintaining the "king's peace" was preventing individuals like Zeleny—with his fatigues, machinegun, and ammunition—from terrorizing the residents and visitors to Menlo Park by "the mere presence of [his] weapons." *Id.* While the Court need not to engage in further historical analysis because Zeleny has not raised a claim based on self-defense, even if he had, it is impossible to reconcile *Young*'s holding and reasoning with the putative constitutional right advanced by Zeleny to stand, for hours, on a road median in Menlo Park with guns, ammunition, and no way for the reasonable passerby to understand why firearms are present (as contrasted with the highly regulated movie shoots described by Zeleny's expert witnesses). Indeed, Zeleny's activity is the quintessential example of a situation in which "the mere presence of such weapons presents a terror to the public" that would "strongly suggest that state and local governments have lost control of our public areas." *Id.* at 41. On the extreme facts of this case, California's restrictions on open carry are indisputably "within the state's legitimate police powers and are not within the scope of the right protected by the Second Amendment." *Id.* at *44.

### 3. *Heller* Step Two Analysis

Third, even if Zeleny had pleaded a right to carry loaded firearms for purposes of self-defense, and even if *Young* did not foreclose Zeleny's claims at step one of *Heller*, they would

still be foreclosed at step two of *Heller*, as the district courts in *Flanagan* and *Nichols* determined.[1]  ECF 161 at 20-22; ECF 166 at 19.  The court in *Young* affirmed the commonsense principle that, in public places, "the mere presence of weapons terroriz[es] the people."  *Young*, 2021 WL 1114180, at *36; *id.* at *40 ("the mere presence of such weapons presents a terror to the public").  Armed individuals in public places can "alarm[] unsuspecting individuals" and can create dangerous situations that "can escalate quickly if the armed person makes the slightest wrong move."  *Flanagan*, 2018 WL 2138462, at *7.  Hence, as the Attorney General demonstrated, California's restrictions on open carry are justified by its need to protect public safety and prevent the diversion of law enforcement resources, and the means chosen are tailored to achieve those goals.  ECF 161 at 20-22; ECF 166 at 19.

## II. UNITED STATES V. RUNDO

In *Rundo*, the Ninth Circuit held that a federal criminal statute—the Anti-Riot Act (18 U.S.C. §§ 2101, 2102)—was overbroad under the First Amendment, but preserved the statute by severing the offending portions.  *See* 2021 WL 821938 (9th Cir. March 4, 2021).  Because California's restrictions on the open carry of firearms do not regulate speech, ECF 161, and because Zeleny has not brought an overbreadth challenge, it is not clear how *Rundo* applies here.

In his statement of recent decision, Zeleny suggested that *Rundo*'s discussion of the "heckler's veto" might be relevant here.  ECF 177; *Rundo*, 2021 WL 821938, at *7.  "A heckler's veto is an impermissible content-based speech restriction where the speaker is silenced due to an anticipated disorderly or violent reaction of the audience."  *Id.* (citations omitted).  Here, California's restrictions on the open carry of firearms do not restrict speech (either facially, or in Zeleny's situation); and even if they did, the restrictions are not content-based: they do not target Zeleny because of what he might *say*, or what passersby's reaction might be to his *speech*.  California's laws limit only the open carry of firearms in certain circumstances.  The heckler's veto has no relevance to Zeleny's claims against the Attorney General.

/ / /

---

[1] The *Flanagan* and *Nichols* appeals remain pending.  Presumably the stays in both cases will be lifted now that the *en banc* court has issued the *Young* opinion.  *See* 9th Cir. Nos. 18-55717 (*Flanagan*) & 14-55873 (*Nichols*).

| | |
|---|---|
| Dated: April 9, 2021 | Respectfully Submitted, |
| | MATTHEW RODRIQUEZ<br>Acting Attorney General of California<br>ANTHONY R. HAKL<br>Supervising Deputy Attorney General |
| | */s/ John W. Killeen*<br>JOHN W. KILLEEN<br>Deputy Attorney General<br>*Attorneys for Defendant Acting Attorney General Matthew Rodriquez* |

SA2018100198
34989836_3.docx

# CERTIFICATE OF SERVICE

| Case Name: | **Zeleny, Michael v. Edmund G. Brown, et al.** | No. | **3:17-cv-07357 RS (NC)** |
|---|---|---|---|

I hereby certify that on <u>April 9, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**CALIFORNIA ACTING ATTORNEY GENERAL MATTHEW RODRIQUEZ'S SUPPLEMENTAL BRIEF REGARDING RECENT AUTHORITIES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 9, 2021</u>, at Sacramento, California.

| Lindsey Cannan | /s/ *Lindsey Cannan* |
|---|---|
| Declarant | Signature |

SA2018100198
34995716.docx