David W. Affeld, State Bar No. 123922
Brian R. England, State Bar No. 211335
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:     (310) 979-8700

Attorneys for Plaintiff
Michael Zeleny

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY,<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>GAVIN NEWSOM, *et al.*,<br><br>　　　Defendants. | Case No. CV 17-7357 RGS<br><br><u>Assigned to</u>:<br>The Honorable Richard G. Seeborg<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:　　　April 22, 2021<br>Time:　　　1:30 p.m.<br>Courtroom: 3, 17th Floor<br><br>Action Filed:　December 28, 2017<br>Trial Date:　　TBD |

SUPPLEMENTAL BRIEF

Plaintiff Michael Zeleny ("Plaintiff") hereby respectfully submits the following supplemental briefing in support his Motions for Partial Summary Judgment.

### A. The City's Rationale for Denying Zeleny's Permits is in Part an Unconstitutional Hecker's Veto.

"A 'heckler's veto' is an impermissible content-based restriction where the speaker is silenced due to an anticipated disorderly or violent reaction of the audience." *U.S. v. Rundo*, No. 19-50189, 2021 WL 821938, *7 (9th Cir. March 4, 2021) (*quoting Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1158 (9th Cir. 2007) and *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 134-35 (1992) ("Speech cannot be … punished … simply because it might offend a hostile mob")).

The City's denials of Zeleny's permit applications amounted to a prior restraint on Zeleny's First Amendment rights. To justify this denial, in the City's Motion and in its opposition to Zeleny's Motion, the City argues that denial was justified because of the potential "fear and panic" that Zeleny *might* cause by carrying his unloaded firearms during his protests. City Mot. (Dkt. No. 160) at p. 15. The City's stated rationale was: "Fearful people panic and fearful drivers, perceiving a threat may drive erratically to avoid the perceived danger and may even try to defend themselves with their own firearms, vehicles, or otherwise." *Id.*

The City's argument is a quintessential "heckler's veto." The City is denying Zeleny's permit applications on the ground that his constitutionally-protected protests *might* cause other citizens to overreact to a misperceived threat. The rationale is not that the content of Zeleny's speech is somehow outside the scope of the First Amendment; rather it is that unspecified citizens who hear his speech *might* react violently. Stated differently, and under the test that the Ninth Circuit recently affirmed in *Rundo*, Zeleny is being silenced because of an anticipated disorderly or violent reaction from the people who might witness his protests. Although the facts and particular ordinance involved in *Rundo* are different, the argument that the City makes is the same—Zeleny can supposedly be forbidden from conducting his protests because the City is worried about how other citizens, unconnected to Zeleny, *might* react to his protests. That is the exact opposite of a content-neutral, time, place, and manner regulation. It is using the potential

impact that his protests might have on others as a justification for preventing his speech before it occurs. Such a content-specific regulation of protected speech is presumptively unconstitutional. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (restrictions must be justified "without reference to content") (*quoting Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

Further, the City has offered no evidence to substantiate its alleged fear that other people might overreact to Zeleny's protests, and there is none. To the contrary, the uncontroverted evidence is that all of Zeleny's protests have been peaceful and that he has always been courteous and cooperative with police officers and other citizens. The City offers no evidence to suggest that would change going forward. *See* Zeleny Mot. at p. 4 (and supporting evidence). The uncontroverted evidence shows that the City's professed fear of what *might happen*, a fear used to justify blatantly content-based restrictions, is unfounded and cannot be used to trump Zeleny's First Amendment Rights.

**B.   *Young v. Hawaii* Does Not Change, or Materially Impact, the Primary Arguments Zeleny Makes Under the Second and Fourteenth Amendments.**

On March 24, 2001, an en banc panel of the Ninth Circuit issued its ruling in *Young v. Hawaii*, 2021 U.S. App. LEXIS 8571 (9th Cir. March 24, 2021). The court affirmed *Peruta v. County of San Diego*, 824 F.3d 919 (9th Cir. 2016) (en banc), which held that individuals do not have a Second Amendment right to carry concealed weapons. *Young* extended that holding to conclude that Hawaii could lawfully restrict the right to openly carry. Although Zeleny respectfully disagrees with both *Peruta* and *Young*, until those decisions are revisited or reversed, they are dispositive of Zeleny's broad claim that California's Open Carry Ban violates the U.S. Constitution.

Neither *Young* nor *Peruta*, however, addresses Zeleny's primary argument, which is that the "entertainment exemptions" to California's Open Carry Ban, Cal. Penal Code §§ 26375 and 26405(r), violate the Second and Fourteenth Amendments. In his Motion and opposition to California's Motion, Zeleny detailed how the "entertainment exemptions" are unconstitutional for multiple reasons, including: (i) the exemptions impermissibly distinguish between different categories of First Amendment speakers, thus constituting unconstitutional, content-based

restrictions; and (ii) the "authorized participant" exception is impermissibly vague and thus violates Fourteenth Amendment due process.  *See* Zeleny Mot. (Dkt. No. 161) at pp. 20-23.

### 1. The Exemptions Impermissibly Discriminate Between Categories of Speakers.

Strict scrutiny applies when a legislative classification "impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976).  Such classifications are presumed unconstitutional and will survive strict scrutiny only when the government can show the law is narrowly tailored to a compelling governmental interest.  *See Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) ("[w]hen a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests").

The entertainment exceptions impermissibly distinguish between different categories of First Amendment speakers, drawing a line between those engaged in "entertainment"—*i.e.*, movies, TV shows, and theatrical performances—and in other forms of protected speech—*i.e.*, protests, firearm training courses, "open carry" demonstrations, or gun-rights advocacy.  Mot. at p. 20. Nothing in *Young* addresses, much less negates, Zeleny's Equal Protection challenge.

### 2. The Entertainment Exemptions are Unconstitutionally Vague.

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Studios, Inc.*, 567 U.S. 239, 253 (2012) (*citing Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).  A law is impermissibly vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id*.

As detailed in the extensive prior briefing, the entertainment exceptions give no indication of what is meant by the phrase "authorized participant."  A person of reasonable intelligence could not reasonably be expected to know what it means.  As Judge Hixson noted earlier in this case, "[u]nhelpfully, there is no statutory definition of an 'authorized participant,' nor a provision stating

who does the authorizing.  There are no governing regulations either." Sept. 4, 2020 Order, Dkt. No. 140, at p. 1.  The total absence of clarifying text or regulations renders the statutes unduly vague.

Once again, nothing in *Young* addresses or negates these arguments.  In fact, *Young* is largely irrelevant to Zeleny's Equal Protection and Due Process Arguments.

### 3. *Young* Actually Narrows and Clarifies the Issues to Be Decided.

Far from being dispositive of Zeleny's claims, the Ninth Circuit's decision in *Young* is quite helpful to the resolution of the pending motions in that it narrows and clarifies the issues to be decided by this Court.  Although Zeleny included a broad constitutional challenge to California's comprehensive ban on both the open and concealed carry of firearms in public, that challenge was primarily made to preserve his rights should the Ninth Circuit or the United States Supreme Court reverse *Peruta* or *Young*.  Now, the Court can avoid an unnecessary and redundant analysis of the entire history of the Second Amendment, and can focus instead on the very narrow and specific questions raised by Zeleny's Motion: (1) whether California's "entertainment exemptions" are unconstitutionally vague, or (2) whether they impermissibly advantage certain categories of speakers based on the content of their speech.  Neither question is addressed, much less resolved, by *Young*, and either challenge is sufficient to invalidate California's unconstitutional restrictions.

### C. Conclusion

For all the foregoing reasons, and as detailed in Zeleny's prior submissions, Zeleny respectfully requests that the Court grant his Motions for Partial Summary Judgment against the State of California and the City of Menlo Park and Dave Bertini.

Dated:  April 9, 2021                Respectfully submitted,

s/ Brian R. England
David W. Affeld
Brian R. England
Damion D. D. Robinson
Affeld Grivakes LLP

Attorneys for Plaintiff Michael Zeleny

## PROOF OF SERVICE

I hereby certify that on April 9, 2021, I electronically filed the foregoing document using the Court's CM/ECF system. I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

s/ Brian R. England<br>
Brian R. England