David W. Affeld, State Bar No. 123922
Brian R. England, State Bar No. 211335
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:     (310) 979-8700

Attorneys for Plaintiff Michael Zeleny

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY,<br><br>    Plaintiff,<br><br>        vs.<br><br>GAVIN NEWSOM, *et al.*,<br><br>    Defendants. | Case No. CV 17-7357 JCS<br><br><u>Assigned to:</u><br>The Honorable Richard G. Seeborg<br><br><u>Discovery Matters:</u><br>The Honorable Thomas S. Hixson<br><br>**PLAINTIFF MICHAEL ZELENY'S NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES**<br><br>[Filed concurrently:<br>1.  Compendium of Supporting Declarations;<br>2.  Proposed Order]<br><br>Date:       December 23, 2021<br>Time:       1:30 p.m.<br>Courtroom: 3, 17th Floor<br><br>Action Filed:  December 28, 2017<br>Trial Date:    None Set |

MOTION FOR ATTORNEY'S FEES

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on December 23, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Richard Seeborg in Courtroom 3 of the above-entitled Court, Plaintiff Michael Zeleny ("Zeleny") will and hereby does move for an award of attorney's fees against Defendants the City of Menlo Park and Police Chief Dave Bertini ("Defendants") pursuant to 42 U.S.C. § 1988 in the amount of $1,768,167.00, representing 1,727 hours of attorney time, and including a 50% lodestar enhancement.  This Motion is made on the grounds that section 1988 authorizes an award of fees to a prevailing plaintiff under 42 U.S.C. § 1983 and the fees sought are fair and reasonable.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of David W. Affeld, Brian England, David Markevitch, and Damion Robinson, the records and files herein, and such other matters as the Court may consider.

Dated:  November 12, 2021

Respectfully submitted,

s/ Brian R. England
David W. Affeld
Brian R. England
Damion D. D. Robinson
Affeld Grivakes LLP

Attorneys for Plaintiff Michael Zeleny

# **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................................... 3

      A.    Zeleny's Protests and the City's Efforts to Silence Him. .............................. 3

      B.    The City's Unconstitutional Permitting Process. ......................................... 4

      C.    Significant Events in This Case ..................................................................... 5

III.  LEGAL STANDARD .................................................................................................. 6

IV.   ARGUMENT ............................................................................................................... 7

      A.    Zeleny Is the Prevailing Party. ...................................................................... 7

      B.    The Fee Award Zeleny Seeks Is Reasonable. ............................................... 7

            1.    The Hours Spent on this Litigation Were Reasonable and
                  Necessary ............................................................................................. 8

                  a.    Zeleny Is Entitled to Fees Incurred in the
                        Administrative Process. ............................................................ 8

                  b.    This Case Was Complex and Zealously Litigated. ................... 8

                  c.    Zeleny Is Entitled to Recover Substantially All of the
                        Hours Spent on this Litigation ................................................ 9

            2.    The Rates Sought Are Reasonable. ..................................................... 11

                  a.    The Rates are Commensurate with Counsel's
                        Qualifications. ........................................................................ 12

                  b.    The Rates Are Consistent with Rates Awarded in Other
                        Cases ....................................................................................... 13

                  c.    Reasonableness Is Corroborated by Other Sources ............... 14

            3.    A 50% Enhancement Is Warranted Under the *Johnson* Factors. ............. 14

V.    CONCLUSION .......................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AdTrader, Inc. v. Google, Inc.*,
No. 17-7082, 2020 WL 1921774 (N.D. Cal. Mar 24, 2020) ............................................. 13

*Beaty v. BET Holdings, Inc.*,
222 F.3d 607 (9th Cir. 2000) ............................................................................................. 9

*Blanchard v. Bergeron*,
489 U.S. 87 (1989) ............................................................................................................. 6

*Borunda v. Richmond*,
885 F.3d 1384 (9th Cir. 1988) ........................................................................................... 6

*Brady v. Maryland*,
373 U.S. 83 (1963) ............................................................................................................. 3

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986) ......................................................................................... 12

*City of Burlington v. Dague*,
505 U.S. 557 (1992) ......................................................................................................... 15

*Civil Rights Education and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*,
No. 15-216, 2016 WL 1177950 (N.D. Cal. Mar. 22, 2016) ............................................ 13

*Dang v. Cross*,
422 F.3d 800 (9th Cir. 2005) ..................................................................................... 10, 12

*EK Vathana v. Everbank*,
No. 9-2338, 2016 WL 3951334 (N.D. Cal. July 20, 2016) ............................................. 14

*Farrar v. Hobby*,
506 U.S. 103 (1992) ........................................................................................................... 7

*Friend v. Kolodzieczak*,
72 F.3d 1386 (9th Cir. 1995) ........................................................................................... 12

*Gomez v. Gates*,
804 F. Supp. 69 (C.D. Cal. 1992) ............................................................................... 15, 16

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) ......................................................................................... 12

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
100 F.3d 691 (9th Cir. 1996) ........................................................................................... 15

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ............................................................................................ *passim*

*i.e., Epona v. County of Ventura,*
    876 F.3d 1214 (9th Cir. 2017) ........................................................................... 1, 2

*Johnson v. Georgia Highway Express, Inc.,*
    488 F.2d 714 (5th Cir. 1974) ....................................................................... 6, 14, 15

*Jordan v. Multnomah County,*
    815 F.2d 1258 (9th Cir. 1987) ..................................................................................... 6

*Kerr v. Screen Extras Guild, Inc.,*
    526 F.2d 67 (9th Cir. 1975) ....................................................................................... 15

*Klein v. City of Laguna Beach,*
    810 F.3d 693 (9th Cir. 2016) ....................................................................................... 7

*Lane v. Facebook, Inc.,*
    No. 08-3845, 2010 WL 2076916 (N.D. Cal. May 24, 2010) ................................. 16

*Lefemine v. Wideman,*
    568 U.S. 1 (2012) ....................................................................................................... 7

*Martin v. Diva Hospitality Group, Inc.,*
    No. 16-4103, 2018 WL 6710705 (N.D. Cal. Dec. 7, 2018) ................................. 14

*Missouri v. Jenkins by Agyei,*
    491 U.S. 274 (1989) ............................................................................................ 6, 12

*Newman v. Piggie Park Enters., Inc.,*
    390 U.S. 400 (1968) ..................................................................................................... 6

*Oberfelder v. City of Petuluma,*
    No. 98-1470, 2002 WL 472308 (N.D. Cal. Jan. 29, 2002) ........................... 15, 16

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,*
    478 U.S. 546 (1986) ..................................................................................................... 8

*Prison Legal News v. Schwarzenegger,*
    608 F.3d 446 (9th Cir. 2010) ................................................................................... 14

*Recouvreur v. Carreon,*
    940 F.Supp.2d 10963 (N.D. Cal. 2013) ................................................................. 14

*Stetson v. Grissom,*
    821 F.3d 1157 (9th Cir. 2016) ................................................................................. 15

*Stranger v. China Elec. Motor, Inc.,*
    812 F.3d 734 .............................................................................................................. 15

- iii -
MOTION FOR ATTORNEY'S FEES

*Superior Consulting Servs., Inc. v. Steeves-Kiss*,
    No. 18-6059, 2018 WL 2183295 (N.D. Cal. May 11, 2018) ........................................... 13

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
    489 U.S. 782 (1989) ........................................................................................................ 7

*Webb v. Sloan*,
    330 F.3d 1158 (9th Cir. 2003) ........................................................................................ 10

*Wynn v. Chanos*,
    No. 14-4329, 2015 WL 3832561 (N.D. Cal. June 19, 2015) ........................................... 14

*Young v. Hawaii*,
    992 F.3d 765 (2021) ....................................................................................................... 11

**Federal Statutes**

42 U.S.C. § 1983 .......................................................................................................................*passim*

42 U.S.C. § 1988 ................................................................................................................... 2, 6

**California Statutes**

Cal. Penal Code § 26500 ................................................................................................................ 4

Cal. Penal Code § 26500 ................................................................................................................ 4

Cal. Penal Code § 29515 .............................................................................................................. 11

MOTION FOR ATTORNEY'S FEES

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    <u>INTRODUCTION</u>

Plaintiff Michael Zeleny ("Zeleny") hereby applies for an award of attorneys' fees against the City of Menlo Park (the "City").  A fee award is appropriate based on Zeleny's having prevailed against the City in a claim under 42 U.S.C. § 1983.  Zeleny seeks a lodestar award based on the hours his counsel spent on the case multiplied by appropriate hourly rates.  Zeleny also seeks a multiplier of 1.5 to compensate his attorneys for the risk they took in representing Zeleny.

The City litigated thus case tenaciously and unreasonably for four years.  The City put Zeleny through a futile permitting process for two years before that.  The City issues permits to scores of applicants each year as a matter of course, but it forced Zeleny through two years of a sham administrative process, and nearly four years of contentious litigation.  Almost six years to the day that he first sought a permit, on July 13, 2021, the Court invalidated the City's entire permitting process as unconstitutional.  The Order makes clear that this was not a close call.  Zeleny should recover a fully-compensatory fee for the time and effort he was forced to expend because the City refused to take his First Amendment rights seriously.  He seeks $1,768,167 in fees, based on 1,727 hours of attorney time, and a 50% lodestar enhancement.

The invalidation of the City's permitting policies was the culmination of a six-year effort by Zeleny to exercise his core First Amendment right to protest.  The City stonewalled him at every step and ignored express notice that its permitting process violated settled law, *i.e.*, *Epona v. County of Ventura*, 876 F.3d 1214 (9th Cir. 2017).  After Zeleny sued, the City approached this lawsuit the same way, engaging in years of dilatory conduct and obstruction, which the Court repeatedly called out.  *See, e.g.*, 7/13/2021 Order (Dkt. No. 192) at p. 16 (characterizing one of the City's lead summary judgment arguments as a "bold display of revisionism"); 2/28/2020 Order (Dkt. No. 117) at pp. 4-5 (characterizing a declaration supporting privilege as "so generic the police could use it in any lawsuit about anything"); 11/10/2020 Order (Doc. No. 157) at p. 2 (considering excuses for failure to confer similar to the "dog ate [my homework]").  The City continued to turn a blind eye to

clear law contrary to its position.[1]  In short, the City defended this case obstinately, and Zeleny is entitled to recover the fees he necessarily incurred in response.[2]

A fee and cost award must be commensurate with the difficulty of the case, the work performed, and the results.  Counsel is entitled to a "fully compensatory" fee where, as here, he or she secures a stellar result in a difficult case.  The fee award Zeleny seeks is fair and reasonable, consistent with the complexity, risk, and unique facts.  It also takes into account the challenging circumstances, including the inherent difficulty of a case involving divisive and intentionally-provocative protests regarding child rape by a prominent Silicon Valley entrepreneur.

Counsel's hours are reasonable and appropriate.  The factual and legal issues in this case were complex.  Zeleny was required to engage in extensive (and contentious) discovery, significant motion practice, and exhaustive summary judgment briefing—generating a record of over 4,000 pages.  Much of this time was spent pinning down and rebutting shifting stories on the part of the City and dealing with obstructive conduct.  The hours spent were necessary to achieve the results.

The rates sought are also reasonable.  Counsel's rates are well within the market range and consistent with the complexity and difficulty of this case.  This was not a run-of-the-mill case, even by the standards of section 1983 litigation.  The reasonableness of counsel's rates is confirmed by qualified attorneys, the rates regularly awarded by courts in similar cases, the rates regularly awarded to the same counsel in other cases, and legal benchmarking tools.

Finally, Zeleny should receive a 50% enhancement due to the unique facts presented and the "undesirability" of this case.  There can be little doubt that Zeleny and his cause are divisive and polarizing—*i.e.*, protesting the largest venture capital firm in the world for supporting a child rapist, and exercising Second Amendment rights (openly carrying firearms) to draw attention to his protests.  Few competent attorneys would take on such a case—much less with no guarantee of

---

[1] Notably, even on summary judgment in this case, the City once again refused to acknowledge or address *Epona*.  *See* 7/13/2020 Order (Dkt. No. 192) at p. 15 ("Curiously, Menlo Park does not match Zeleny's *Epona* argument with one of its own").

[2] Because the City has apparently chosen not to change its policies, despite the Court's ruling, Zeleny anticipates that additional fees and costs will be incurred in enforcing the Court's orders.

MOTION FOR ATTORNEY'S FEES

payment.  Courts have recognized that a lodestar multiplier is appropriate to take into account the "undesirability" of a client or cause and the difficulty of finding alternate counsel.

## II.  FACTUAL BACKGROUND

### A.  Zeleny's Protests and the City's Efforts to Silence Him.

Zeleny has protested in Menlo Park since 2008.  The focus of his protests is the ongoing support by venture capital firm New Enterprise Associates ("NEA") of entrepreneur Min Zhu.  Min Zhu's daughter credibly accused Min Zhu of raping her when she was 14 years old.  Min Zhu has never denied the allegations.  He fled to China when they became public.  Zeleny has received credible death threats on behalf of Min Zhu in connection with his protests.  Nonetheless, NEA has continued to financially sponsor Min Zhu and has not commented on the credible allegations of rape. Decl. of Zeleny in Sup. of Mot. for Summ. J. (Doc. No. 162-2) ("Zeleny Decl") at ¶¶ 2-11.

Zeleny has staged a series of protests outside of NEA's headquarters on Sand Hill Road.  In addition to traditional protesting — *e.g.*, displaying posters and handing out leaflets — Zeleny has also carried unloaded firearms to draw emphasis to his protests.  He has been fully cooperative with the police at all times, even when he believed their requests were unconstitutional.  *Id.* ¶¶ 11-21.

Beginning in 2010, the City worked closely with NEA to find a "firm solution" to end Zeleny's protests.  Robinson Decl. in Sup. of Mot. for Summ. J. ("Robinson MSJ Decl.") (Doc. No. 162-1) at Ex. K ("there seems to be no firm solution to ending his protests").  Through discovery, Zeleny obtained an audio recording of a secret meeting between the Menlo Park Police Department and NEA, which was apparently inadvertently recorded.  Senior police personnel and NEA acknowledged that Zeleny was not breaking any laws and had a First Amendment right to engage in his protests.  But they worked to find ways to stop him anyway, ranging from getting restraining orders to spraying him with water and pointing rifles at him to agitate him.  Affeld Decl. ¶ 11.

In 2012, the City had Zeleny prosecuted for carrying a concealed weapon.  The officer on scene confirmed in a recorded conversation that the firearm was ***not*** concealed and that he could visibly see it.  He had confirmed the same during a prior encounter—a fact that the City and the prosecutor failed to disclose under *Brady v. Maryland*, 373 U.S. 83 (1963).  NEA attended every

hearing and had extensive, private discussions with the prosecutor.  The prosecutor referred to NEA as her "client."  Zeleny was acquitted in 2014.  Zeleny Decl. at ¶¶ 24-30 & Exs. 2, 3.

### B.    The City's Unconstitutional Permitting Process.

While Zeleny's prosecution was ongoing, California adopted the "open carry" ban on handguns and rifles.  *See* Cal. Penal. Code §§ 26350, 26500.  The City lobbied for these bans, using Zeleny's protests as an example.  Robinson MSJ Decl., Ex. K.

After Zeleny's acquittal, the City interpreted these new statutes to mean that Zeleny needed a City permit before he could carry firearms in his protests.  Zeleny Decl. ¶¶ 32-33; Affeld Decl. ¶ 3. The City refused to issue such a permit.  As both the Attorney General and the Court eventually confirmed, the City's interpretation was wrong.  *See* Opp. to Mot. for Summ. J. (Doc. No. 166) at pp. 23-24 ("the Attorney General essentially *agrees* with Zeleny's understanding of the term 'authorized participant,' namely [] someone operating under the auspices of a DOJ Entertainment Firearms Permit holder"); Order dated 7/13/21 (Doc. No. 192) at p. 10.

In an effort to comply with the City's demands, starting in 2015, Zeleny applied for both a Special Events Permit ("SEP") and later a film permit.  Zeleny Decl. ¶¶ 34-35.  The City's processes for issuing these permits lacked objective standards or a definite time limit.  7/13/2021 Order (Dkt. No. 192) at pp. 13-16.  Case in point, after more than two years, the City denied Zeleny's SEP application on ever-shifting grounds outside of its official policy, and then refused to process his film permit application.

Throughout the permitting process, Zeleny offered to cooperate with the City to address reasonable time, place, and manner requirements.  Zeleny Decl. ¶¶ 37-45 & Exs. 8-13.  He also warned the City in writing that it was leaving him no choice but to sue:

In this regard, a new Ninth Circuit ruling in *Epona, LLC v. County of Ventura*, ___ F. 3d ___ (9th Cir. 2017), is of particular relevance to your ongoing attempts to play for time:

A property owner seeking to profit from facilitating and providing a commercial space for weddings was a wedding "vendor" with standing to bring a facial First Amendment challenge a county zoning ordinance requiring it to obtain a conditional use permit to use its property for weddings. The zoning ordinance--which imposed no definite standards on permit decisions nor any limitation on the time period within which a permit

- 4 -

must be approved--provided unbridled discretion on permitting officials in violation of the First Amendment.

To apply the principle articulated herein to the matter at hand, the onus always already falls on the City to articulate definite standards for its permit decisions, and identify a limitation on the time period within which it must approve or deny a permit. … As for further specifics of the proposed site set-up, <u>I am willing to make reasonable accommodations to the City's requirements related to the public right of way, traffic control, and public safety issues, as soon as it takes the trouble to articulate them.</u>

Zeleny Decl., Ex. 13 (emphasis in original).

When the City would not articulate any such standards, Zeleny filed suit on December 28, 2017. *See* Compl. (Dkt. No. 1).

**C.    Significant Events in This Case.**

This case was heavily litigated for nearly four years, largely to develop a factual record to challenge the City's permitting processes.  Affeld Decl. ¶ 9.  A summary of key events follows:

- Zeleny took extensive discovery from the City, including four sets of Requests for Production and two sets of Interrogatories, as well as two sets of Interrogatories to Police Chief Dave Bertini ("Bertini").  This discovery was due in large part to the City's constantly-changing defenses.[3]  Zeleny also took eight fact depositions relating to his claims against the City, including a three-session deposition of Bertini individually and as a Rule 30(b)(6) designee.  *Id.* ¶ 9.

- Zeleny engaged in significant pleading practice filing both a First and Second Amended Complaint, using materials obtained in discovery to detail the City's violations of its own written policies and procedures in connection with his protests.  *Id.* ¶ 11.

- Zeleny was required to file two discovery motions against the City.  The first resulted from the City's refusal to produce communications with other law enforcement agencies on assertions of official privilege—a position Judge Hixson found wholly unsupported.  The second resulted from improper instructions by the City's counsel that Bertini not answer deposition

---

[3] For instance, in supplemental interrogatory responses approximately two years into this case, the City took the position for the first time that it could not issue Zeleny a permit because the area where he sought to stage his protests was owned by Caltrans.  It did not raise this issue at any point in the administrative process or in the first two years of this case.  See 7/13/2021 Order (Dkt. No. 192) at p. 13.

MOTION FOR ATTORNEY'S FEES

questions, which effectively amounted to coaching.  *Id.* ¶ 12; *see also* 2/28/2020 Order (Dkt. No. 117); 11/10/2020 Order (Doc. No. 157).

- The parties filed four Motions for Summary Judgment—*i.e.*, cross motions between Zeleny and the City, and cross-motions between Zeleny and the State.  The record on these four motions contained more than 4,000 pages of briefing and exhibits, including motions, oppositions, replies, submissions of new authority, and supplemental briefing.  The Motions for Summary Judgment culminated in an hour and forty-five-minute Zoom hearing on April 22, 2201.  Affeld Decl. ¶ 13 and Dkt. Nos. 160-189.

- The parties attended three settlement conferences with Magistrate Judge Cousins. Zeleny also engaged in informal discussions with the City and the state.  The City's position was that it would only agree to process a single permit application if Zeleny completed an application that satisfied the City.  The City would not discuss any long-term relief, and would not address Zeleny's concerns that after the single permit, he would be back to square one.  Affeld Decl. ¶ 8.

On July 13, 2021, the Court issued its Order, granting Zeleny summary judgment against the City.  Dkt. No. 192.  The parties attended a further settlement conference but were unable to resolve Zeleny's request for fees.

### III.    LEGAL STANDARD

Under 42 U.S.C. § 1988(b) the prevailing plaintiff in an action under 42 U.S.C. § 1983 is entitled to recover fees.  *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968); *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989).  Fees must be awarded to a successful plaintiff absent "special circumstances."  *Borunda v. Richmond*, 885 F.3d 1384, 1392 (9th Cir. 1988).

Where the plaintiff achieves significant success, the fee should be "fully compensatory," representing a reasonable rate for the reasonable hours worked.  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286 (1989).  A "reasonable" fee means "reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less."  *Blanchard*, 489 U.S. at 93.

The reasonable fee is also subject to adjustment based on the 12 "*Johnson* factors" to the extent not subsumed in calculating the lodestar.  *Jordan v. Multnomah County*, 815 F.2d 1258, 1262-

63 (9th Cir. 1987) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The result obtained is a critical factor. *See Hensley*, 461 U.S. at 435 ("The result is what matters").

## IV.   ARGUMENT

### A.   Zeleny Is the Prevailing Party.

To be the prevailing party, the plaintiff must have "succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (citation and quotation marks omitted). This standard is modest. *Id.* (holding that plaintiff was entitled to fees although the trial court "rejected petitioners' claims in almost all respects"). The plaintiff must receive "at least some relief on the merits of his claim," which "changes the legal relationship between [himself] and the defendant." *Id.* (quoting *Hewitt v. Helms*, 482 U.S. 755, 760-61).

The Court's Order granting summary judgment was a resounding victory. Zeleny sought only declaratory and injunctive relief against the City. Second Am. Compl. (Dkt. No. 99), Prayer ¶¶ E, F. At summary judgment, the Court declared the entirety of the City's processes for SEPs and film permits invalid. In a case bringing a facial challenge to the City's entire permitting processes and seeking to secure the right to protest, this was an unqualified win.

Courts have consistently held that a plaintiff who seeks and obtains declaratory or injunctive relief is the prevailing party. *See Farrar v. Hobby*, 506 U.S. 103, 112 (1992); *Lefemine v. Wideman*, 568 U.S. 1 (2012); *see also Klein v. City of Laguna Beach*, 810 F.3d 693, 699–700 (9th Cir. 2016). This is not a situation in which a plaintiff achieves only a symbolic victory, despite seeking large monetary relief. *Contrast Farrar*, 506 U.S. at 115. Zeleny got substantially all that he sought.

### B.   The Fee Award Zeleny Seeks Is Reasonable.

Zeleny seeks the following hours and rates, subject to a 50% upwards enhancement:

| Attorney | Hourly Rate | Hours | Total |
|---|---|---|---|
| **David W. Affeld** | $800.00 | 566.6 | $453,280.00 |
| **Peter Shimamoto** | $695.00 | 12.0 | $8,340.00 |
| **Brian R. England** | $695.00 | 391.7 | $272,231.50 |

| | | | |
|---|---|---|---|
| **Damion D. D. Robinson** | $595.00 | 638.7 | $380,026.50 |
| **David Markevitch** | $550.00 | 118.0 | $64,900.00 |
| | Base Lodestar | | $1,174,108.50 |
| | With Enhancement | | $1,761,162.75 |

*See* Affeld Decl., Ex. 1.

### 1.    The Hours Spent on this Litigation Were Reasonable and Necessary.

A prevailing plaintiff is entitled to recover for the hours "reasonably expended" on the litigation. *Hensley*, 461 U.S. at 433. This includes all hours that are reasonably incurred that are "useful and of a type ordinarily necessary" to secure the final result achieved. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 561 (1986) (citing *Webb v. Board of Ed. of Dyer County*, 471 U.S. 234, 343 (1985)).

The hours Zeleny seeks were reasonable and necessary in light of the extent and complexity of the issues and the heavily-litigated nature of the case against the City.

### a.    Zeleny Is Entitled to Fees Incurred in the Administrative Process.

The fees for both litigation and the administrative process are recoverable where they were reasonable and necessary. *Delaware Valley*, 478 U.S. at 561 (holding that counsel may recover for fees incurred even in optional administrative proceedings).

Here, the City took the position that compliance with the permitting process was mandatory, and amounted to an administrative exhaustion requirement. *See*, *e.g.*, Answer to Second Am. Compl. (Dkt. No. 101) at p. 18. Even at summary judgment, the City argued that Zeleny's claims were premature because he had not "completed" the film permitting process. Much of the factual record used to develop this case was generated in the administrative process. Hours spent trying to secure relief through the administrative process were essential to the outcome.

### b.    This Case Was Complex and Zealously Litigated.

As the Court is aware, this was significant and lengthy litigation. Over the course of four years, Zeleny's counsel filed comprehensive pleadings, engaged in extensive written discovery and depositions, reviewed thousands of pages of documentary evidence and hours of audio recordings,

and filed multiple (successful) motions to compel.  The parties submitted exhaustive briefing and participated in an hour and forty-five-minute oral argument in April.  The amount of work that went into the successful outcome justifies a significant award.

The claims were also novel and complex, involving untested constitutional and statutory issues.  These included the interplay of state firearms laws and the City's permitting policies (both of which were far from clear), as well as the First, Second, and Fourteenth Amendments.  The case against the City was factually complex, including documenting a multiple-year history of MPPD response to Zeleny's protests, the MPPD's involvement in the permitting process, as well as the two-year permitting process itself.  This resulted in the exchange of more than 5,000 pages of document discovery and extensive audio/video recordings of police encounters and administrative hearings.

The City did not make the litigation easy.  It engaged in pervasive discovery obstruction, including frivolous claims of privilege, refusal to cooperate in scheduling, and extensive deposition misconduct, such as improper instructions not to answer, evasive answers, and coaching.  *Affeld Decl.* ¶ 14; *see also* 2/28/2020 Order [Dkt. No. 117] at pp. 4-5; 11/10/2020 Order (Doc. No. 157) at p. 2.  The City also repeatedly changed it story in significant respects, requiring Zeleny to engage in further discovery, motion practice, and research to address new arguments raised two and three years into this litigation.  7/13/2020 Order [Dkt. No. 192] at p. 16.

After pushing the bounds of aggressive litigation, the City cannot complain about fully compensating its adversary.  *See Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612-13 (9th Cir. 2000) (noting that courts take into account whether a defendant was "excessively litigious" or engaged in "litigation tactics" in defending).  Much of the fees incurred by Zeleny were as a direct result of the City's scorched-earth approach.  Zeleny is entitled to full compensation for these hours.

### c.      Zeleny Is Entitled to Recover Substantially All of the Hours Spent on this Litigation.

Courts have consistently held that a successful plaintiff may recover for hours spent litigating successful and unsuccessful claims where the two are related.  Courts do not apply a mechanical test or attempt to parse counsel's hours claim-by-claim.  *Hensley*, 461 U.S. at 436-38.  Instead, they consider the overall result, and whether "the plaintiff achieve[d] a level of success that makes the

[total] hours reasonably expended a satisfactory basis for making a fee award." *Id.* at 434; *see also*

*Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003); (quoting *Sorenson v. Mink*, 239 F.3d 1140,

1147 (9th Cir. 2001)).

As the Supreme Court explained in *Hensley*:

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. ***Such a lawsuit cannot be viewed as a series of discrete claims.*** Instead the district court should focus on the significance of the ***overall relief obtained*** by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 435 (emphasis added).  Where the plaintiff achieves "excellent results," "his attorney

should recover a fully compensatory fee." *Id.*  Here, Zeleny's claims against the City and the state

were closely intertwined, and the outcome of this case gives Zeleny the practical relief he was

seeking—*i.e.*, the ability to resume his protests in Menlo Park without fear of arrest.

"[C]laims are related … if they 'involve a common core of facts *or* are based on related legal

theories." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (quoting *Webb v. Sloan*, 330 F.3d 1158,

1168 (9th Cir. 2003); emphasis in *Dang*).  They are considered unrelated only if they are "distinctly

different *both* legally *and* factually." *Id.* (quoting *Webb*, 330 F.3d at 1169).

Zeleny's claims against all defendants were based on a core set of facts—*i.e.*, his attempts to

secure permits in order to protest—and the same legal framework—*i.e.*, the First, Second, and

Fourteenth Amendments.  From a practical standpoint, it was essential that Zeleny secure a binding

interpretation of the "entertainment event" exemptions in order to resume his protests.  The City

required Zeleny to obtain permits ***because it interpreted state law to require them.***  *See* Second Am.

Compl. (Dkt. No. 99) at ¶ 119.  It relied on the ambiguity in state law to impose additional

restrictions on Zeleny's ability to protest, which it then used to deny him that right.  Zeleny could not

obtain effective relief against the City as long as the City could continue to rely on ambiguous state

laws to prevent him from protesting.  It was impossible to litigate Zeleny's claims against the City

without also litigating the meaning of the "entertainment event" exemptions under state law.

The parties litigated this case as though the claims against the City and the Attorney General

were interrelated.  This is plainly shown in the parties' summary judgment briefing and argument.  *See*, *e.g.*, 7/13/2021 Order (Dkt. No. 192) at p. 9 ("Spurred on by the City's position that his proposed use of firearms would be illegal, Zeleny effectively contends that if his protest does not fit within the 'entertainment event' exception, then the exemption itself must be illegal").  Because Zeleny's claims related to the interplay of state law and the permitting process, the litigation proceeded in lockstep.  The City and the Attorney General presented a united front.  The City deferred to the Attorney General to interpret the statutes, and the Attorney General refusing to do so until forced through motion practice.  *See* 9/4/2020 Discovery Order (Dkt. No. 140).

Zeleny ultimately achieved both an order invalidating the City's permitting process *and* a clear interpretation of the state statutes, which he sought from the outset.  After extensive litigation, the Court determined that the Attorney General *fundamentally agreed* with Zeleny's interpretation— *i.e.*, that municipal approval is not required.  7/13/2021 Order (Doc. No. 192) at p. 10 ("the evidence confirms that the parties *agree*" to an interpretation adopted by Zeleny's experts).[4]  This was consistent with what Zeleny sought from the inception of this case.  Second Am. Compl. (Doc. No. 99), Prayer ¶ B; *see also* Opp. to Mot. for Summ. J. (Doc. No. 166) at pp. 23-24.  The overall relief obtained in this case justifies a full fee award.

Finally, the majority of counsel's time was spent on litigating claims against the City.  The claims against the state were purely legal.  They did not require extensive factual development.  Zeleny took only one fact deposition on those claims, as compared with eight as to the City.  The majority of the discovery and investigation were directed at the City.  In addition, most of the legal issues against the state had been fully explored in other cases, and were resolved by the Ninth Circuit in *Young v. Hawaii*, 992 F.3d 765 (2021).  *See* 7/13/2021 Order (Dkt. No. 192) at p. 8 n.3.

### 2.   The Rates Sought Are Reasonable.

A reasonable rate is based on the "experience, skill, and reputation of the attorney[s]

---

[4] The State eventually took the position that the "entertainment event" exemptions require a DOJ-issued Entertainment Firearms Permit or "EFP."  The Entertainment Firearms Permit is a "shall issue" permit, meaning that Zeleny is entitled to one as a matter of course.  *See* Cal. Penal Code § 29515.

requesting fees," compared to the market rate for similar services.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986); *Missouri*, 491 U.S. at 286; *see also Friend v. Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir. 1995).  The relevant community in this case is the Northern District of California.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013); *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir.2005) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

<strong>a.      The Rates are Commensurate with Counsel's Qualifications.</strong>

The rates Zeleny proposes, ranging from $550 per hour to $800 per hour are within the market range and commensurate with the qualification and experience necessary to successfully litigate this complex case.  Counsel's experience is laid out below:

- **David Affeld:  $800 per hour.**  Mr. Affeld is a founding partner of Affeld Grivakes LLP ("AG").  He has been a practicing attorney since 1985, after obtaining his law degree from Cornell, and has tried more than 45 cases to verdict or arbitration award, winning more than 90% of them.  Before starting his own firm, he was an attorney for 10 years in the litigation departments of national firms Brobeck, Phleger & Harrison and Sherman & Sterling.  He has consistently been named a "Super Lawyer" by ThomsonReuters.  Affeld Decl. ¶¶ 20-25 & Ex. 2.

- **Peter Shimamoto:  $695 per hour**.  Mr. Shimamoto was a partner at AG until late 2016.  Mr. Shimamoto has been practicing law since 1986, after graduating from Harvard Law School in 1985 and clerking in the Eastern District of Virginia.  Prior to joining AG in 2014, Mr. Shimamoto was a Senior Counsel at Irell & Manella in Los Angeles and a Partner at Brown George Ross LLP.  His practice focused on intellectual property, media, and entertainment.  *Id.* ¶ 38.

- **Brian England: $695 per hour.**  Mr. England is a Senior Counsel at AG.  He has been practicing since 2000, after obtaining his law degree from UCLA School of Law.  Before joining AG, he was an associate at the national firm of Robins Kaplan LLP and Of Counsel at the international firm of Sullivan & Cromwell LLP where his practice focused on complex business, intellectual property, securities, and anti-trust litigation.  He has significant experience in First Amendment matters.  *Id.* ¶¶ 27-30 & Ex. 3.

- **Damion Robinson:  $595 per hour**.  Mr. Robinson is a partner of AG as of 2019.

- 12 -

He has been practicing since 2009 after graduating with Order of the Coif honors from UCLA School of Law and clerking in the Central District of California from 2007 to 2008.  Before joining AG, he was a litigation associate at Sullivan & Cromwell LLP and a partner and named partner at litigation boutique Van Vleck Turner & Zaller LLP.  He has significant experience litigating constitutional and statutory challenges to governmental procedures and administrative processes.  *Id.* ¶¶ 31-33 & Ex. 4.

- **David Markevitch:  $550.00 per hour.** Mr. Markevitch is Special Counsel at AG and manages the firm's Northern California office.  He has been practicing since 2007 after graduating from UCLA School of Law.  Before joining AG, Mr. Markevitch was an attorney with the firm of Kaiser Gornick LLP (formerly Levin Simes Kaiser & Gornick LLP) where he represented plaintiffs in nationwide mass tort cases in federal court, including Multi-District Litigation.  He has been recognized as a "Super Lawyer" and a "Rising Star" by Thomson Reuters. *Id.* ¶¶ 34-37 & Ex. 5.[5]

As reflected in the accompanying declarations of Carl E. Douglas, a preeminent civil rights attorney, and Lincoln D. Bandlow, an experienced First Amendment attorney, the rates sought are reasonable and consistent with rates generally charged by counsel of similar qualifications.

**b.    The Rates Are Consistent with Rates Awarded in Other Cases.**

Courts in the Northern District have consistently awarded similar rates to counsel of similar experience.  *See Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 18-6059, 2018 WL 2183295, at  *5 (N.D. Cal. May 11, 2018) (noting that the Northern District has found $475-975 per hour for partners and $300-490 per hour for associates reasonable); *AdTrader, Inc. v. Google, Inc.*, No. 17-7082, 2020 WL 1921774, at * 8 (N.D. Cal. Mar 24, 2020) (finding reasonable $1,000 per hour for senior partners and $855 per hour for junior partners and of counsel attorneys); *Civil Rights Education and Enforcement Ctr. v. Ashford Hospitality Trust, Inc.*, No. 15-216, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) ($900 per hour for a 42-year attorney, $750 for a 25-year attorney,

---

[5] In addition, two former attorneys of Affeld Grivakes LLP worked on this case.  Their experience is set forth at Paragraphs 38 and 39 to the Affeld Declaration.

MOTION FOR ATTORNEY'S FEES

and $500 for a nine-year attorney); *Martin v. Diva Hospitality Group, Inc.*, No. 16-4103, 2018 WL 6710705 (N.D. Cal. Dec. 7, 2018) ($700 and $795 per hour).  Similar rates have been approved of by the Ninth Circuit in civil rights litigation.  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (discussing rates of between $700 and $875 for senior partners in section 1983 case in 2010).  Rates are often higher in First Amendment litigation.  *See, e.g., Wynn v. Chanos*, No. 14-4329, 2015 WL 3832561, at *2 (N.D. Cal. June 19, 2015) (on successful defense of a defamation action, approving rates of $1,035 to $1,085 per hour for partner with 40 years of experience; $645 to $710 for an associate with six years of experience; and $570 to $640 per hour for an associate with four years of experience).

By comparison, this Court determined in 2016 that "rates between $700-800 are reasonable in the San Francisco Bay Area" for a 25-year attorney.  *EK Vathana v. Everbank*, No. 9-2338, 2016 WL 3951334, at *3 (N.D. Cal. July 20, 2016) (Seeborg, J.).  Adjusting for inflation over the past several years, and counsel's additional experience, the rates sought here are squarely in line.

### c.    Reasonableness Is Corroborated by Other Sources.

The same attorneys have consistently been awarded the same or similar rates in other litigation, including First Amendment litigation.  Affeld Decl. ¶ 39 & Ex. 6.

Further, the Adjusted Laffey Matrix, a well-recognized legal fee benchmarking tool, confirms that counsel's rates are in fact conservative by comparison to rates charged by attorneys of similar experience.  *See Recouvreur v. Carreon*, 940 F.Supp.2d 10963, 1070 (N.D. Cal. 2013) (finding rate of $700 reasonable for attorney with 20-plus years of experience in 2013, using the Adjusted Laffey Matrix as a cross-check).  Counsel's rates are well below the benchmark rates of $717-764 per hour for attorneys with 11-19 years of experience, and $864-919 per hour for attorneys with 20-plus years of experience.  Affeld Decl., Ex. 7.

### 3.    A 50% Enhancement Is Warranted Under the *Johnson* Factors.

After calculating a reasonable lodestar, the Court has discretion to adjust the fee award to take into account the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).  *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975) abrogated on other

grounds in *City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016). Consideration of the *Johnson* factors is mandatory. *Stetson*, 821 F.3d at 1167; *Stranger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (noting that trial court must "explicitly [] consider the *Kerr* 'reasonableness' factors").

A multiplier is warranted due to the unique facts of this case, the risks involved, and the "undesirability" of taking it on. *Kerr*, 526 F.3d at 70 (quoting *Johnson*, 488 F.2d 714). The "undesirability" factor is not subsumed within the lodestar and warrants an upwards adjustment. *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996).

As the defendants highlighted at every opportunity, Zeleny's cause is extremely unpopular. His desire to carry firearms is unpopular with a majority of Californians, as evidenced by the state's increasingly-restrictive gun laws. The City used Zeleny's protests to lobby for firearms restrictions. Zeleny has been subject to credible death threats for his protests. *See* Zeleny Decl. at ¶ 18; *see also* Affeld Decl. ¶ 23. NEA, with the City's encouragement, physically surveilled him for years and tracked his activities online. Much of the City's presentation both in the administrative process and this case, as well as the state's, was devoted to ridiculing Zeleny and his protests.

The provocative nature of Zeleny's activities justifies a lodestar adjustment. The "undesirability" of a particular case or cause is a basis for enhancement. *Guam Soc'y of Obstetricians & Gynecologists*, 100 F.3d at 697 (affirming a two-times multiplier where counsel challenged anti-abortion statutes); *see also Gomez v. Gates*, 804 F. Supp. 69, 76 (C.D. Cal. 1992) (finding that lodestar factors did not reasonably attract lawyers to take a case where the client may decrease likelihood of success for reasons unrelated to the relative merits of the claim, and awarding a multiplier of 1.75 times). Section 1983 litigation is inherently risky. A multiplier is justified where this risk is compounded by factors outside of the substantive merits of the dispute, *e.g.*, an unpopular client or cause. *Gomez*, 804 F. Supp. at 76.

The pool of other attorneys willing to take on complex constitutional litigation on behalf of Zeleny is vanishingly small if not non-existent. *See Oberfelder v. City of Petuluma*, No. 98-1470, 2002 WL 472308, at *11 (N.D. Cal. Jan. 29, 2002), *aff'd* 67 F. App'x 308 (9th Cir. 2003) (finding a 1.5 multiplier warranted based on the inherent challenges in civil rights cases, the "unsympathetic

plaintiff," and the unlikelihood of a significant damages award); *see also Gomez*, 804 F. Supp. at 78 (expressing doubt as to whether "any other lawyer" would have taken on case).  There are few firms willing to take on firearm-related litigation.  Zeleny's counsel reached out to preeminent attorneys and experts in the field, as well as California's primary gun rights organizations, and they were unwilling to assist.  *See generally* England Decl.  As the court recognized in *Oberfedler*, 2002 WL 472308, at *11, "[t]he length and difficulty of the case, together with the absence of a fee-paying client, would have virtually precluded most private attorneys from undertaking the time-consuming prosecution of this matter."

Given these difficulties and Zeleny's unqualified victory against the City, the lodestar should be adjusted.  A 50% enhancement (1.5x multiplier) is appropriate.  This Court has previously approved a similar multiplier where appropriate.  *See, e.g., Lane v. Facebook, Inc*., No. 08-3845, 2010 WL 2076916, at *2 (N.D. Cal. May 24, 2010) (Seeborg, J.) (approving 2x multiplier).

**V.    <u>CONCLUSION</u>**

Fees are effectively mandatory in this case and Zeleny should be awarded a reasonable fee as set forth above.

Dated:  November 12, 2021                    Respectfully submitted,

                                             s/ Damion Robinson
                                             David W. Affeld
                                             Brian R. England
                                             Damion D. D. Robinson
                                             Affeld Grivakes LLP

                                             Attorneys for Plaintiff Michael Zeleny

MOTION FOR ATTORNEY'S FEES

## **PROOF OF SERVICE**

I hereby certify that on November 12, 2021, I electronically filed the foregoing document using the Court's CM/ECF system.  I am informed and believe that the CM/ECF system will send a notice of electronic filing to the interested parties.

s/ Gabrielle Bruckner
Gabrielle Bruckner

MOTION FOR ATTORNEY'S FEES