**TODD H. MASTER [SBN 185881]**
tmaster@hrmrlaw.com
**ROBERT J. GUNDERT [SBN 104486]**
rgundert@hrmrlaw.com
**HOWARD ROME MARTIN & RIDLEY LLP**
1900 O'Farrell Street, Suite 280
San Mateo, CA  94403
Telephone:     (650) 365-7715
Facsimile:      (650) 364-5297

Attorneys for Defendants
CITY OF MENLO PARK and DAVE BERTINI

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

| | |
|---|---|
| MICHAEL ZELENY, an individual<br><br>Plaintiff,<br><br>vs.<br><br>GAVIN NEWSOM, et al.<br><br>Defendants. | Case No. 17-cv-07357-RS (TSH)<br><br>**DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION AND MOTION FOR**<br><br>**A.) DISMISSAL OF PORTIONS OF THE PLAINTIFF'S SECOND AMENDED COMPLAINT (F.R.C.P. 12(b)(1)), OR**<br><br>**B.) LEAVE TO FILE MOTION FOR RECONSIDERATION OF A PORTION OF THIS COURT'S ORDER DATED JULY 13, 2021 (LOCAL RULE 7-9);**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS**<br><br>Date:  January 6, 2022<br>Time: 1:30 p.m.<br>Courtroom: 3, 17th Floor<br><br>Action Filed: December 28, 2017<br>Trial Date: None Set |

DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION & MOTION FOR PARTIAL DISMISSAL OR RECONSIDERATION; MEMO. OF POINTS AND AUTHORITIES IN SUPPORT; Case No. 17-cv-07357-RS (TSH)

1

# **TABLE OF CONTENTS**

|      |      |                                                                                                                                                                                              | **Page** |
|------|------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---------:|
| I.   |      | INTRODUCTION                                                                                                                                                                                 | 2        |
| II.  |      | FACTUAL BACKGROUND                                                                                                                                                                           | 4        |
|      | A.   | Plaintiff Was Repeatedly Told A Special Event Permit Was Not Needed For A Protest                                                                                                            | 4        |
|      | B.   | Plaintiff Insisted On Seeking A Permit He Did Not Need                                                                                                                                       | 8        |
| III. |      | LEGAL DISCUSSION                                                                                                                                                                             | 8        |
|      | A.   | The Issue Of Constitutional Standing Is Jurisdictional                                                                                                                                       | 8        |
|      | B.   | When A Statute, Regulation, Policy Or Process Does Not Apply To A Party Or To That Party's Proposed Activities, There Is No Article III Standing To Challenge The Statute, Regulation, Policy Or Process | 10       |
| IV.  |      | CONCLUSION                                                                                                                                                                                   | 16       |

# TABLE OF AUTHORITIES

| | Page |
|---|---|
| *Bender v. Williamsport Area School District,* 475 U.S. 534, 541 (1986) | 9 |
| *Blair v. Shanahan*, 38 F.3d 1514 (9th Cir., 1994) | 13 |
| *California v. Azar,* 911 F.3d 558, 570 (9th Cir. 2018) | 10 |
| *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d1115, 1122 (2020) | 8 |
| *DaimlerChrysler Corp.* v. *Cuno* 547 U. S. 332, 342, n. 3, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006) | 9, 10 |
| *Department of Commerce v. New York,* 139 S. Ct. 2551, 2565 (2019) | 12 |
| *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.* 528 U.S. 167, 180 | 9 |
| *FW/PBS, Inc.* v. *Dallas* 493 U. S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) | 15 |
| *Gill v. Whitford*, 138 S. Ct. 1916 (2018) | 14, 15, 16 |
| *Golden v. Zwickler*, 394 U.S. 103 (1969) | 13 |
| *Johnson v. Stuart,* 702 F.2d 193, 195 (9th Cir. 1983) | 11 |
| *Susan B. Anthony List v. Driehaus* 573 U. S. 149, 158, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014) | 13 |
| *Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010) | 10, 11, 12 |
| *Lujan v. Defenders of Wildlife, supra* | 9 |
| *Reyes Mata v. Lynch,* 576 U.S. 143, 153 | 9 |
| *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38 | 15 |
| *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) | 9, 10, 12, 15, 16 |
| *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989) | 9 |
| *Tedards v. Ducey,* 951 F.3d 1041, 1068-1069 (2019) | 9 |

*Thole v. U.S. Bank, N.A.,* 140 S.Ct. 1615, 1622 ................................................................. 15

*Warth v. Seldin,* 422 U.S. 490, 498-499 (1975) .................................................................. 15

*White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000) ............................................................... 9

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 6, 2022, at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Richard G. Seeborg, in Courtroom 3 of the above Court, which is located at 450 Golden Gate Avenue, San Francisco, California, Defendant City of Menlo Park ("City") will and hereby does move the Court a.) to dismiss those portions of the First, Third and Fourth Causes of Action of plaintiff's Second Amended Complaint that challenge the facial, constitutional validity of the City's Special Event Permit process, or, in the alternative b.) to grant leave for Defendant City to file a motion for reconsideration of that part of the Court's July 13, 2021 Order [Docket 192] by which Plaintiff Michael Zeleny was deemed to have standing to challenge the facial constitutional validity of the City's Special Event Permit process.

Said motion is based on the fact that the Special Event Permit process did not apply to any of Plaintiff's proposed activities such that Plaintiff lacked and lacks standing under Article III of the United States Constitution to challenge the constitutional validity of the City's Special Event Permit process. Plaintiff had the burden of proving standing in all respects and failed to carry that burden.

Said motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Robert J. Gundert and Request for Judicial Notice, the proposed Orders submitted herewith, the records and files herein, and such other matters as the Court may properly consider in order to render its decision.

Date: November 29, 2021        HOWARD ROME MARTIN & RIDLEY LLP

                               By  /s/ Robert J. Gundert
                                   Robert J. Gundert
                                   Attorneys for Defendants
                                   CITY OF MENLO PARK and
                                   DAVE BERTINI

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

By this motion, Defendant City of Menlo Park ("City") asks the Court to dismiss those

portions of Plaintiff's Second Amended Complaint that comprise a facial challenge to the constitutional validity of the City's Special Event Permit process.

In the alternative, Defendant requests leave to file a motion for reconsideration of a portion of the Court's July 13, 2021 Order [Docket 192]. That Order granted in part and denied in part the respective cross-motions for summary judgment/adjudication filed by Plaintiff Michael Zeleny ("Plaintiff"), Defendant Xavier Becerra, and Defendant City.

Defendant City submits that Plaintiff lacks standing under Article III of the United States Constitution to challenge the facial validity of the City's Special Event Permit ("SEP") process. Since the process did not apply to Plaintiff's proposed activities he did not sustain an injury-in-fact that is fairly traceable to the challenged process and which is likely to be redressed by a decision in his favor. *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) (setting forth constitutional standing requirements). *See also Lopez v. Candaele* 630 F.3d 775, 788 (9th Cir. 2010) (First Amendment standing lacking where "the enforcing authority has disavowed the applicability of the challenged law to the plaintiffs.").

As set forth in the aforementioned cross-motions for summary judgment/adjudication, Plaintiff applied for an SEP from the City in July 2015. The City denied the application. One of the grounds for the denial was that the City did not require an SEP for Plaintiff to conduct his proposed protest. He was told that he needed to obtain a film permit for his film production but no SEP was required. In short, the SEP process was not applicable to what Plaintiff wished to do. That fact is the basis of this motion. It is submitted herein that a party does not have standing to challenge the validity of a statute, regulation, policy or process that does not apply to that party or to the party's proposed activities. Article III of the United States Constitution requires a case or controversy in order for a court to exercise its jurisdiction. If a party were to be allowed to challenge a statute, regulation, policy or process that does not apply to that party or to that party's activities, the fundamental, jurisdictional concept of standing would become meaningless.

///

DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION & MOTION FOR PARTIAL DISMISSAL OR RECONSIDERATION; MEMO. OF POINTS AND AUTHORITIES IN SUPPORT; Case No. 17-cv-07357-RS (TSH)
3

## II. FACTUAL BACKGROUND

### A. Plaintiff Was Repeatedly Told a Special Event Permit Was Not Needed for a Protest

From the very outset and consistently thereafter, the City advised Plaintiff that the SEP process did not apply to what he wished to do. Plaintiff wanted to protest against an individual (Min Zhu) and his "cohorts" at New Enterprise Associates, Inc. ("NEA"). The City repeatedly informed Plaintiff that he did not need an SEP to protest and that what he wanted to do was not covered by the SEP process. This was not a position that the City developed after suit was filed. Plaintiff was told this from the very start and at each step of the way.

Plaintiff submitted his initial application for an SEP on July 10, 2015. *See* Decl. of Michael Zeleny, etc. [Dkt. 162-2, p. 8, lines 17-18] and Exhibit 6 thereto [Dkt. 162-2, pp. 45-52]. The City responded on September 21, 2015 by a letter from City Attorney William L. McClure. *See* Decl. of Michael Zeleny, etc. [Dkt. 162-2, p. 9, lines 6-7] and Exhibit 8 [Dkt. 162-2, pp. 147-150]. The City denied the application for various reasons, one of which was that the City considered a "'media production' of a one-man protest" not to be a special event. In addition, the letter pointed out that "[i]f what you are actually intending is the filming of a movie, then the City has an application process, for which a film production permit is required. A copy of the City's 'Film Production in Menlo Park' document is attached for your review." *See* Dkt. 162-2, pp. 147-150. Subsequent transmittals and communications with the Plaintiff consistently said that same thing, i.e., that Plaintiff did not need an SEP to protest and that, to the extent he wished to undertake a film production project, he needed a film permit rather than a Special Event Permit.

On April 15, 2016, Plaintiff purported to appeal from the denial of his original SEP application by submitting a new application, dated June 3, 2015 (i.e. pre-dating his original application). *See* Dkt. 162-2, pp. 70-74 and 81-86. Because Plaintiff's submittal contained new and different information, the City treated it as a revised application rather than an appeal, and responded by letter from City Attorney McClure on May 4, 2016. *See* Dkt. 162-2, pp. 88-19. Once again, Plaintiff was told that the SEP process did not apply to his planned protest. As the letter

DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION & MOTION FOR PARTIAL DISMISSAL OR RECONSIDERATION; MEMO. OF POINTS AND AUTHORITIES IN SUPPORT; Case No. 17-cv-07357-RS (TSH)

4

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

stated, "protests do not require special event permits." Plaintiff's application was denied accordingly and he was told that "While it is clear this is not a 'special event,' if you wish to appeal this denial, please provide written notice to Community Service Director Cherise Brandell . . ."

Plaintiff did appeal and on June 24, 2016 Ms. Brandell also informed him that he did not need a permit to protest. As she stated:

> Please be aware that the above denial of the application for a Special Event Permit is in no way a denial of your First Amendment right to protest. No permit is necessary for a protest in the same location you have protested in the past, as long as it is conducted within the confines of the law and local ordinance, including Penal Code sections regulating the display of firearms cited above.

[Dkt. 162-2, pp. 105-106.]

Plaintiff then appealed to the City Manager, who likewise advised him that "[t]he appeal is denied. As stated previously, no permit is required for first amendment protected activity. Filming or digitally recording a protest in traditional public forum areas in the City is allowed provided they comply with all laws. SEPs are not intended to regulate protests or filming of protests in the public forum areas of the City. . . You are free to conduct a protest in compliance with laws." *See* Dkt. 162-2, p. 66.

The City Manager's letter went on to indicate that any such protest would have to comply with applicable laws. This was not to say that an SEP would be needed for a protest. Just the opposite—the Plaintiff was specifically advised that "SEPs are not intended to regulate protests or filming of protests in the public forum areas of the City." *See* Dkt. 160-6 at pp. 91-94 and Dkt. 162-2, pp. 65 to 68. He would be expected to comply with all laws as would any other individual, whether protesting or not. In short, Plaintiff was again advised that he did not need an SEP to conduct a protest.

The next and final stop was the City Council. Here also, Plaintiff was told the same thing. The following quotes and page/line references are from the transcript submitted by the City in support of its motion for summary judgment or, in the alternative, partial summary judgment. *See*

DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION & MOTION FOR PARTIAL DISMISSAL OR RECONSIDERATION; MEMO. OF POINTS AND AUTHORITIES IN SUPPORT; Case No. 17-cv-07357-RS (TSH)

5

Dkt. 160-6, pp. 152 to 197:

At Page 6, Line 21 to Page 7, Line 2 of the transcript, Commander Dave Bertini told the City Council, "Appellant Zelany [sic] was advised that the denial did not infringe upon his First Amendment right to protest as long as he was compliant with the law. Actually, he was told several times that he could protest just like anyone else could without a Special Events Permit."

At Page 8, Lines 18 to 23, Commander Bertini referred to the hearing that had been held before the City Manager, stating, "Once the hearing was over on September 12th, 2016, the appeal was, in fact, denied, and a letter was transmitted to the appellant, Mr. Zelany [sic], and the appeal was denied for the following reasons. Number one: Special Events Permits are not intended to regulate protests or filming of protests. That's not what the intent of the Special Event is."

Commander Bertini wrapped up his presentation to the City Council and stated (from Page 10, Line 14 to Page 11, Line 1), that "Appellant Zelany [sic] was, again, advised that no permit is necessary . . . for a lawful protest. He was actually advised that if he could -- wished to continue his protests he had done before, he was perfectly -- had every right to do that as long as it was within the laws, including the no open carry of firearms. At this point, the Staff recommends that the City Council deny the appeal and therefore uphold the City Manager's decision to uphold the Staff's denial of the Special Events Permit. . . Appellant Zelany [sic] has been notified that no permit is necessary for a peaceful protest as long as all applicable laws and ordinances are followed. Thank you."

At Page 29, Lines 16-18, Commander Bertini reiterated, in response to a question, that "Mr. Zelany [sic], the appellant, has been told numerous times, he can have a protest."

At Page 32, Lines 2 to 6, Attorney Gregory Rubens, who had represented the City Manager in the previous appeal hearing, referenced that hearing and commented upon the City Council's role in reviewing the City Manager's decision. He stated, "The point that I think that you're considering this afternoon is the Special Events Permit. . . [T]he decision of the City Manager in hearing the appeal that went on for several hours was that this is not a Special Event Permit. What

DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION & MOTION FOR PARTIAL DISMISSAL OR RECONSIDERATION; MEMO. OF POINTS AND AUTHORITIES IN SUPPORT; Case No. 17-cv-07357-RS (TSH)

6

he's talking about is a protest."

Mr. Rubens continued at Page 32, Line 24 to Page 33, Line 4, "What we tried to make clear in the letter that the City sent in the decision on the appeal to the City Manager was that . . . this is not a Special Event Permit. You can have your protest, you just have to comply with the law."

Again, from Page 36, Line 22 to Page 37, Line 6, Mr. Rubens stated, "Well, I still think -- the appellant here is confusing a Special Events Permit with his protest. . . Just to be very clear, the Staff -- City Manager in the letter -- decision on the -- lower level appeal said that you do not need a permit to conduct a lawful protest. . ."

At various times during the hearing councilmembers affirmed that they supported Mr. Zeleny's right to protest so long as he complied with the law. For example, at Page 40, Lines 9 to 17, Mayor Keith told Plaintiff, "And I think you do have avenues to protest. And I will also say that I think protesting is your right, your absolute right, and you can protest without any permit whatsoever if you follow the protest – the laws that we have, and I know you've spoken with our Police Chief and Commander Bertini about. So I would encourage you to protest."

The City Council ultimately upheld the City Manager's decision (Transcript at p. 42, line 9 to p. 44, line 19) which, as noted, stated that "SEPs are not intended to regulate protests or filming of protests in the public forum areas of the City. . . You are free to conduct a protest in compliance with laws."

At no point did the City ever tell Plaintiff that an SEP was needed for his proposed protest. In fact, Plaintiff acknowledged in deposition that he was never told by anyone associated with the City that he needed an SEP to conduct his protest. Plaintiff testified as follows:

> Q.   Okay. Did anyone associated with the City of Menlo Park, to your knowledge, whether they're an employee, an agent, or someone that you believe to be somehow associated with the City, ever contact you and tell you that you needed to apply for a special event permit to do the actions that are referenced in Exhibit 2?
>
> A.   My answer is no, and I will amplify it. In all my communications with the City of Menlo Park I was the one to initiate them.

DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION & MOTION FOR PARTIAL DISMISSAL OR RECONSIDERATION; MEMO. OF POINTS AND AUTHORITIES IN SUPPORT; Case No. 17-cv-07357-RS (TSH)

7

(Plaintiff's deposition transcript at Pg. 101, Line 21 to Pg. 102, attached to the Declaration of Todd H. Master in Support of Motion of Defendants City of Menlo Park, etc. as Exhibit A. *See* Dkt. 160-3 at p. 2, lines 5-9, p. 19 and pp. 41-47.)

### B. Plaintiff Insisted on Seeking a Permit He Did Not Need

Even though Plaintiff was told that his protest did not require an SEP he continued to seek an SEP for his protest. It was Plaintiff who insisted on proceeding through the SEP process. It does not matter why he persisted in seeking a permit he did not need in order to protest, but the most likely reason is that he wanted the City to authorize his open display of firearms.

In his motion for summary adjudication, Plaintiff asserted that the SEP process applied to his protest since his proposed activities met various criteria that had been published by the City to inform the general public as to when an SEP would be required. It is true that the City published certain criteria as to when an SEP would be required and that some of those criteria fit with what Plaintiff wished to do. (Exhibit T to the Declaration of Damion Robinson [Dkt. 162-1 at p. 3, lines 15-19 and pp. 755-756].) For example, Plaintiff's proposed protest with an open display of military grade guns and ammunition on the median of Sand Hill Road was likely to impact traffic and require police monitoring. But the City repeatedly informed Plaintiff that it recognized an exemption from the SEP process for protests. The only permit he needed was a film permit for any activities that involved film production. Accordingly, as the following authorities show, Plaintiff has no standing to challenge the City's SEP process. Even if that process was flawed, only those to whom it applies have the proper Article III standing and right to challenge it.

### III.   LEGAL DISCUSSION

### A.  The Issue of Constitutional Standing is Jurisdictional

This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(1), which permits a defendant to move to dismiss a claim on the basis of lack of subject-matter jurisdiction. When a plaintiff lacks standing to prosecute a claim there is a lack of subject matter jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (2020): "Because standing and

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *See St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989); *see also White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000)."

The issue of constitutional standing speaks to jurisdiction, which is not to be presumed. As the Supreme Court stated in *Reyes Mata v. Lynch,* 576 U.S. 143, 153, "[F]ederal courts should 'presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record.' *See DaimlerChrysler Corp.* v. *Cuno*, 547 U. S. 332, 342, n. 3, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006)." Plaintiffs have the burden of showing that they satisfy constitutional standing requirements. As stated by the Ninth Circuit Court of Appeals in *Tedards v. Ducey,* 951 F.3d 1041, 1068-1069 (2019):

> The jurisdiction of Article III courts is limited to "Cases" and "Controversies." *U.S. Const. art. III, § 2*; *see Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1546-47, 194 L. Ed. 2d 635 (2016)*. In order to establish that they have the "irreducible constitutional minimum" of standing to bring a case or controversy, Plaintiffs have the burden of demonstrating that they have "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id. at 1547* (quoting *Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992))*.

//

In this instance, Plaintiff has not satisfied the three-part test for constitutional standing set forth above and in *Lujan v. Defenders of Wildlife, supra* and *Spokeo, Inc. v. Robins, supra.*

The summary judgment motions presented to the Court previously dealt with many legal issues. Unfortunately, as indicated in the accompanying declaration of counsel, this issue of constitutional standing was not addressed. It is presented here since it is important that the Court consider and address it before issuing a final judgment in this matter. *DaimlerChrysler v. Cuno, supra.* Such an issue can and should be evaluated by a court at any point, regardless of whether it has been previously raised or even conceded by a party. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 and *Bender v. Williamsport Area School District,* 475 U.S. 534, 541 (1986).

In addition, it matters not whether Plaintiff had standing to assert his other claims in this litigation, since plaintiffs are required to "demonstrate standing for each claim they seek to press." *California v. Azar,* 911 F.3d 558, 570 (9th Cir. 2018) (quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006)).

### B. When a Statute, Regulation, Policy or Process Does Not Apply to a Party or to that Party's Proposed Activities, There is No Article III Standing to Challenge the Statute, Regulation, Policy or Process

While First Amendment standing rules are generally more broad than in other cases, they do not extend so far as to permit one to challenge the validity of a statute, regulation, policy or process that does not apply to the challenger or the challenger's activities. In order to have standing, a plaintiff must prove an injury-in-fact, fairly traceable to the challenged enactment, which is likely to be redressed by a decision in plaintiff's favor. *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). Plaintiff has not satisfied, and cannot satisfy, these requirements. The Ninth Circuit Court of Appeals decision in *Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010) illustrates this.

In *Lopez,* a community college student challenged the community college district's sexual harassment policy. The plaintiff (Lopez) had given a religiously based speech in class, which was abruptly interrupted by the professor, who called the plaintiff a "fascist bastard" and dismissed the class early. *Id.* at pp. 782-783. After submitting a grievance to the Dean of Academic Affairs, plaintiff received a letter from the Dean, which stated that the professor was being disciplined, First Amendment rights would be respected, and Lopez would receive a fair grade in the class. *Id.* at pp. 783-784. No action was ever taken against the plaintiff and, in fact, he received an A in the class. *Id.* at 784.

Despite these circumstances and the Dean's assurances, Lopez sued the community college district. He claimed to be concerned about facing future disciplinary action under the district's sexual harassment policy. *Id.* at pp. 788-790. He expressed this concern even though the district had not threatened to act against him under that policy and had instead affirmed his right to speak

DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION & MOTION FOR PARTIAL DISMISSAL OR RECONSIDERATION; MEMO. OF POINTS AND AUTHORITIES IN SUPPORT; Case No. 17-cv-07357-RS (TSH)

10

freely. *Id.* at p. 790.

Under these circumstances, the Court of Appeals held that plaintiff did not have standing since he could not show an injury-in-fact. One of the reasons underlying this holding was that the district had disavowed any intention of enforcing the policy against plaintiff. *Id.* at p. 788. Citing the decision in *Johnson v. Stuart,* 702 F.2d 193, 195 (9th Cir. 1983) the Court noted that "[W]e have held that plaintiffs did not demonstrate the necessary injury-in-fact where the enforcing authority expressly interpreted the challenged law as not applying to the plaintiff's activities." *Id.* at p. 788. The Court distinguished those situations in which the governmental entity's disavowal of an intent to apply a law was undertaken for purposes of litigation. *Id.*[1]

In a situation such as this, where the City stated from the very start and consistently thereafter that no SEP was required, Plaintiff lacks standing to seek declaratory or injunctive relief as to that policy. As the Ninth Circuit stated in *Lopez,* "claims of future harm lack credibility when the challenged speech restriction by its terms is not applicable to the plaintiffs, **or the enforcing authority has disavowed the applicability of the challenged law to the plaintiffs**." *Id.* at p. 788,

---

[1] In *Johnson v. Stuart, supra,* public school teachers, through their representative organizations, participated in a lawsuit challenging an Oregon statute, which stated in part that "No textbook shall be used in the schools which speaks slightingly of the founders of the republic or of those who preserved the union or which belittles or undervalues their work." *Johnson v. Stuart, supra* at p. 194.

The teachers focused on the quoted passage and claimed that they were concerned about losing their jobs if they violated the statute. *Id.* at pp. 194-195. They conceded that no teacher had been charged with violating the statute and that no teacher had been denied permission to use any book. *Id.* at p. 195. In addition, the Court noted that:

The Attorney General of Oregon has repeatedly disavowed any interpretation of *section 337.260* that would make it applicable in any way to teachers, and counsel for the Portland School District has stated his agreement with this position. On this record Oregon teachers have "no fears of [discharge or discipline] except those that are imaginary or speculative. . . ." *Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298, 60 L. Ed. 2d 895, 99 S. Ct. 2301 (1979)* (quoting *Younger v. Harris, 401 U.S. 37, 42, 27 L. Ed. 2d 669, 91 S. Ct. 746 (1971))*. They have failed to show that they have "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[s]." *Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 60 L. Ed. 2d 66, 99 S. Ct. 1601 (1979).*

In view of these facts the Court affirmed dismissal of the teachers' claims since they were not ripe for adjudication. *Johnson v. Stuart, supra* at p. 194.

DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION & MOTION FOR PARTIAL DISMISSAL OR RECONSIDERATION; MEMO. OF POINTS AND AUTHORITIES IN SUPPORT; Case No. 17-cv-07357-RS (TSH)

11

emphasis added. *Lopez* was decided in the pre-enforcement context since plaintiff claimed a fear that action would be taken against him.

The Court here has indicated in its July 13, 2021 Order that it has reviewed this matter as a pre-enforcement case as well. See that portion of the Court's Order at Page 13, Lines 14-19, which indicates that the Court views this as a pre-enforcement case:

> Because Zeleny challenges the permitting processes as facially invalid prior restraints, his standing is not a function of his having "appl[ied] for, and be[en] denied" any one particular permit. *See City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 755-56 (citations omitted). So long as the processes remain in place and controlling over any future application he might submit,[fn 5.][2] his claims against Menlo Park are justiciable.

Whether a case presents a situation involving a pre- or post-enforcement challenge, the same reasoning applies, i.e. that when the governmental entity genuinely disavows the applicability of a policy or process to a plaintiff's activities the plaintiff does not have standing to challenge that policy or process. This makes sense since in that situation the plaintiff is not at risk of suffering an injury-in-fact that is traceable to the challenged enactment. *Spokeo, supra,* at 1547.

In fact, the above excerpt from the Court's Order supports Defendant's position that Plaintiff does not have constitutional standing. The Court states that Plaintiff has standing "**[s]o long as** the processes remain in place and controlling over any future application he might submit." (Emphasis added.) In this case, the City has made it clear that the SEP process did not and will not apply to Plaintiff's proposed protest and film production project. Like the plaintiff in *Lopez*, who faced no credible threat of action under the district policy, Plaintiff faces no sanction for not having an SEP to protest. In this case and in *Lopez* the governmental entity provided assurances to the plaintiff. In *Lopez* those assurances were not even as explicit as they were here.

As stated in *Department of Commerce v. New York,* 139 S. Ct. 2551, 2565 (2019), concerns

---

[2] Footnote 5 of the July 13, 2021 Order stated, "Zeleny has made clear to the City that "he would relocate" from the median "if needed." *See* Dkt. 173 at 7."

DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION & MOTION FOR PARTIAL DISMISSAL OR RECONSIDERATION; MEMO. OF POINTS AND AUTHORITIES IN SUPPORT; Case No. 17-cv-07357-RS (TSH)

12

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

about future harm, "'may suffice [to establish standing] if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.' *Susan B. Anthony List v. Driehaus, 573 U. S. 149, 158, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014)* (internal quotation marks omitted)." None of that is true here. The City has not threatened to fine, arrest or take any other action against him if he does not get an SEP. In fact, the City has encouraged him **not** to proceed through the SEP process since it does not apply.

In the case of *Golden v. Zwickler*, 394 U.S. 103 (1969) an individual (Zwickler) sought declaratory relief regarding the constitutionality of a New York statute that prohibited the distribution of anonymous handbills pertaining to election campaigns. Mr. Zwickler had been arrested and convicted previously of violating the statute since he had distributed anonymous handbills critical of a Congressman running for reelection. Following reversal of his conviction, Zwickler filed suit, seeking declaratory relief as to the constitutionality of the statute, since he expected the Congressman would run for reelection and that he (Zwickler) would again wish to pass out his handbills.

After suit was filed the Congressman was elected to the Supreme Court of New York. This fact was critical to the United States Supreme Court's decision since it made it unlikely and speculative that the Congressman would run for reelection. Accordingly, this development made the statute that Zwickler was challenging inapplicable to him personally. He thus lost standing. *Id.* at p. 109.

Once a statute, policy or process is found not to apply to an individual's situation, there is no injury-in-fact and no concrete, immediate or real controversy to adjudicate. Instead, the challenge is deemed abstract and academic, such that the plaintiff lacks standing and the court loses jurisdiction to decide the issue. *Golden, supra* at pp. 108-109.

The Ninth Circuit Court of Appeals followed the *Golden* decision in *Blair v. Shanahan*, 38 F.3d 1514 (9th Cir., 1994), which involved a panhandler who had challenged a California statute.

DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION & MOTION FOR PARTIAL DISMISSAL OR RECONSIDERATION; MEMO. OF POINTS AND AUTHORITIES IN SUPPORT; Case No. 17-cv-07357-RS (TSH)

13

The Ninth Circuit held both that the case was moot and that plaintiff lacked standing since he no longer wished to panhandle. The statute no longer applied to him, which eviscerated the justiciable controversy that once existed.

More recently, the Supreme Court decided *Gill v. Whitford*, 138 S. Ct. 1916 (2018), in which the Supreme Court held that plaintiffs lacked standing since the laws they challenged law did not affect or apply to them.

In *Gill*, voters claimed that their First and Fourteenth Amendment rights had been infringed by the manner in which the state legislature had drawn (i.e. gerrymandered) legislative districts. However, none of the plaintiffs showed that they lived in one of the districts that was alleged to have been improperly drawn. The Supreme Court invoked "the familiar three-part test for Article III standing, which asked if plaintiffs had "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Gill, supra,* at p. 1929.

As the Supreme Court stated:

> To ensure that the Federal Judiciary respects "the proper—and properly limited—role of the courts in a democratic society," *Allen v. Wright, 468 U. S. 737, 750, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)*, a plaintiff may not invoke federal-court jurisdiction unless he can show "a personal stake in the outcome of the controversy." *Baker, 369 U. S., at 204, 82 S. Ct. 691, 7 L. Ed. 2d 663*. A federal court is not "a forum for generalized grievances," and the requirement of such a personal stake "ensures that courts exercise power that is judicial in nature." *Lance, 549 U. S., at 439, 441, 127 S. Ct. 1194, 167 L. Ed. 2d 29*. We enforce that requirement by insisting that a plaintiff satisfy the familiar three-part test for Article III standing: that he "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins, 578 U. S. ___, ___, 136 S. Ct. 1540, 194 L. Ed. 2d 635, 643 (2016)*. Foremost among these requirements is injury-in-fact—a plaintiff's pleading and proof that he has suffered the "invasion of a legally protected interest" that is "concrete and particularized," *i.e.*, which "affect[s] the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife, 504 U. S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351, and n. 1 (1992)*.

*Gill, supra* at 1929.

The three-party test cited by the *Gill* Court had previously been cited in *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) as "the 'irreducible constitutional minimum' of standing" whereupon "[t]he plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *FW/PBS, Inc.* v. *Dallas*, 493 U. S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990)." *Spokeo, Inc. v. Robins, supra* at 1547.

Upon applying this three-part test in *Gill*, the Supreme Court held that the plaintiffs had not shown an injury-in-fact since they had not established that their districts had been affected by the allegedly improper gerrymandering. They therefore did not have standing.

In the instant case, Plaintiff cannot satisfy any of the three prongs of the test enunciated in *Spokeo* and *Gill*. Like the plaintiffs in Gill, Plaintiff has not shown an injury-in-fact since the City made it clear he did not and does not need an SEP for his proposed activities.

By the same token, Plaintiff cannot show that the injury he alleges is "fairly traceable" to the process he challenges, since that process simply does not apply to protests or film projects.

Finally, there is no meaningful relief that the Court can actually give Plaintiff by striking down the City's SEP process.  Plaintiff is asking the Court to strike down a permitting process that does not apply to him.  Even if the Court were to declare that the City's SEP process is not constitutionally valid, that makes no difference to Plaintiff since he is not subject to it. As the Supreme Court stated in *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38:

> In sum, when a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation. [footnote omitted]

Because the SEP process does not apply to Plaintiff's proposed protest, he does not have the sort of personal stake in the outcome that is required for standing purposes. *Warth v. Seldin,* 422 U.S. 490, 498-499 (1975). See also *Thole v. U.S. Bank, N.A.,* 140 S.Ct. 1615, 1622 where the Court concluded its standing analysis as follows:

> Courts sometimes make standing law more complicated than it needs to

> be. . . [U]nder ordinary Article III standing analysis, the plaintiffs lack Article III standing for a simple, commonsense reason: . . . Winning or losing this suit would not change the plaintiffs' monthly pension benefits. The plaintiffs have no concrete stake in this dispute and therefore lack Article III standing.

Likewise, winning or losing the claim regarding the facial validity of the SEP process will not affect Plaintiff's right to protest in Menlo Park.

All of this is to say that Plaintiff cannot carry his burden of satisfying the three-prong test referenced in *Gill* and *Spokeo*.

Though the City repeatedly informed Plaintiff that the SEP process did not apply to protests or to film projects, Plaintiff nevertheless insisted that it did, probably because he wanted to have the City's blessing to display his firearms (with ammunition) and images. The only reason the SEP process is being considered in this lawsuit is because Plaintiff sought to invoke it despite the City's repeated assertions it did not apply. A statute, regulation, policy or process does not become applicable, and standing is not attained, simply because a plaintiff says so. A plaintiff must carry his or her burden of proving that the challenged statute, regulation, policy or process applies. Plaintiff did not meet that burden here.

The City's interpretation of its own SEP process recognized and respected the rights of individuals to protest peaceably and within the bounds of the law. Plaintiff in effect asks this Court to rule that protesters must seek an SEP even though the City exempts protests from that process. This makes no sense.

**IV.    CONCLUSION**

In view of the foregoing, Defendant City of Menlo Park respectfully requests that the Court dismiss those portions of Plaintiff's Second Amended Complaint that constitute a facial challenge to the constitutional validity of the City's SEP process.

Alternatively, in the event the Court concludes that this should be presented as a motion for reconsideration, Defendant requests leave to file such a motion pursuant to Local Rule 7-9(b)(3) for the reasons stated herein and in the accompanying declaration of counsel.

| | | |
|---|---|---|
| 1 | Date: November 29, 2021 | HOWARD ROME MARTIN & RIDLEY LLP |
| 2 | | |
| 3 | | By  /s/ Robert J. Gundert |
| 4 | | Robert J. Gundert<br>Attorneys for Defendants<br>CITY OF MENLO PARK and<br>DAVE BERTINI |

DEFENDANT CITY OF MENLO PARK'S NOTICE OF MOTION & MOTION FOR PARTIAL DISMISSAL OR RECONSIDERATION; MEMO. OF POINTS AND AUTHORITIES IN SUPPORT; Case No. 17-cv-07357-RS (TSH)

17