David W. Affeld, State Bar No. 123922
Brian R. England, State Bar No. 211335
Damion Robinson, State Bar No. 262573
Affeld Grivakes LLP
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone:    (310) 979-8700

Attorneys for Plaintiff Michael Zeleny

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ZELENY,<br><br>    Plaintiff,<br><br>    vs.<br><br>GAVIN NEWSOM, *et al.*,<br><br>    Defendants. | Case No. CV 17-7357 JCS<br><br><u>Assigned to</u>:<br>The Honorable Richard G. Seeborg<br><br><u>Settlement Conference Before</u>:<br>The Honorable Nathanael M. Cousins<br><br>**PLAINTIFF MICHAEL ZELENY'S REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**<br><br>Date:          January 6, 2022<br>Time:         1:30 p.m.<br>Courtroom: By Videoconference<br><br>Action Filed:  December 28, 2017<br>Trial Date:     None Set |

## I. **INTRODUCTION**

The City cannot justify cutting Zeleny's fees by two thirds. It does not dispute Zeleny's entitlement to fees. Nor does it dispute counsel's rates or 872.8 of the hours. Nor does it offer any plausible argument against an "undesirability" enhancement, which the Ninth Circuit has expressly recognized. All told, the City concedes that Zeleny is entitled to at least $590,000 in fees. In reality, he has fully justified the full award he seeks, reflecting 1,727 total attorney hours. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker").

The City conveniently ignores that much of the time Zeleny incurred was because the City took a scorched-earth approach to this case and forced Zeleny to respond. Case in point is the City's most recent tactic. Five months after the Court granted summary judgment, after Zeleny filed his fee motion, and after two failed settlement conferences, the City has now frivolously moved to reconsider the Court's summary judgment ruling. The motion is hopelessly untimely. It resurrects arguments that the Court expressly considered and properly rejected. Yet the City obstinately poses yet another meritless obstacle for Zeleny to have to overcome. It is almost as if the City were determined to underscore how relentlessly unreasonable it has been throughout this case. After four years of dealing with such conduct, 1,727 hours is abundantly reasonable.

A significant fee award is the only way to fairly compensate the task of responding to the City's conduct and to vindicate Zeleny's Constitutional rights. Each of the City's arguments fails.

*First*, the City ignores settled law that courts do not parse out hours spent on related claims. Where counsel obtains an excellent overall result, he is entitled to a fully compensatory fee. Zeleny's claims against the State of California (the "State") and New Enterprise Associates ("NEA") were closely related to his claims against the City. The overall results were stellar. A fully compensatory fee is appropriate. The City offers no reason to award anything less.

*Second*, there is no reason for the Court to act as a line-item auditor of counsel's time records, as the City urges it to do. The City has provided no basis to reduce counsel's fee claim. Nor has it provided any suggestion for a reasonable reduction. Instead, it asks the Court to cut

hundreds of hours from counsel's fee request, simply because the City "questions" those hours. No authority allows for this.

*Third*, the City fails to show any unreasonable or improper billing. While it tosses out buzzwords like "block billing" or "duplication," counsel's time records do not bear out these criticisms. The City fails to show any hours that were unreasonable or inconsistent with ordinary case management and efficient litigation—particularly in a case that has spanned more than four years. The City, which also had multiple attorneys, cannot seriously argue that this case was overstaffed or inefficiently litigated.

*Fourth*, and finally, the City neglects to mention settled law holding that an enhancement is warranted when a case is "undesirable," making it difficult for a party to find competent counsel. This omission is unsurprising. The City has pointed out at every opportunity how "undesirable" this case is. In fact, the City's defense was not even merits-based, but rather a referendum on how unpleasant Zeleny and his protests are. Zeleny's "undesirability" was the center of the City's defense. Given the unique facts, the 50% enhancement proposed by Zeleny is reasonable.

The Court can and should award a reasonable fee as requested by Zeleny. Assuming solely for the sake of argument that the Court were inclined to reduce Zeleny's fee request, a reduction of not more than 25% would more than address the City's arguments. In that event, an award of no less than $1,320,872.00 would be appropriate.

## II.   ARGUMENT

### A.   Zeleny Is Entitled to Credit for Work Performed on Related Claims.

The City's argument to eliminate all hours relating to claims against the State and NEA defies settled law and invites reversible error. *See Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (vacating and remanding where trial court excluded hours spent on unsuccessful claims without determining whether they were related to successful claims). The legal standard is clear. *See* Motion at pp. 9-11. A plaintiff is entitled to fees not only on the claim on which he prevailed, but also on unsuccessful claims that were related to the successful ones. *See Hensley v. Eckerhart*, 461 U.S. 424, 436-38 (1983). A lawsuit involving related claims "cannot be viewed as a series of discrete

claims." *Id.* at 435.  As here, much of the work "will be devoted generally to the litigation as a whole." *Id.*  While the Court may reduce a fee award to account for unsuccessful claims, it may not wholly eliminate hours devoted to claims related to those on which the plaintiff succeeded. *Id.* at 436-38.  Instead, where the result in the case justifies a fully compensatory award, the Court may award all of the fees.  *Id.*  The City has offered no reasoned basis to deviate from this rule.

Zeleny's claims against the State and NEA were plainly related to his claims against the City.  The standard for relatedness is extremely broad.  Claims are related if they "involve a common core of facts *or* are based on related legal theories." *Id.* (quoting *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003)).[1]  Claims are deemed unrelated only if they are "distinctly different *both* legally and *factually*." *Id.* (quoting *Webb*, 330 F.3d at 1169; quotation marks omitted).   The vast majority of counsel's hours in this case were devoted to the "litigation as a whole," including closely related claims among various defendants.

Most glaringly, Zeleny's claims against NEA were for ***conspiring with the City*** to violate section 1983. These claims were derivative of the section 1983 claim against the City.  It is hard to imagine more related claims than those against co-conspirators arising from the same conspiracy.  Further, the work done to develop claims against NEA was also directly related to claims against the City.  Zeleny consistently argued, including on summary judgment, that the City's denial of his permits was part and parcel of this conspiracy.

For example, key piece of evidence at summary judgment was an email from Chief Bertini ***to NEA***, assuring NEA that the City would deny Zeleny's permit:

> Although we intend to deny this application on several grounds (predominately that this is not a "special event" as defined by the City), we are in the process of requesting more information from him on the exact location he was intending as it was not clear on his application.  Once we have gone through the formal information

---

[1] The City also implies that Zeleny's fee should somehow be reduced because (a) he did not prevail on an "as applied" theory, which was rendered unnecessary by the Court's facial invalidation of the City's statutes; and (b) Chief Bertini retired in the midst of this case, precluding injunctive relief.  Tellingly, the City does not identify any hours that it believes should be eliminated on these grounds, nor is there any reason to do so.  A facially unconstitutional permitting scheme necessarily violates the plaintiff's rights as applied, as the Court recognized at the summary judgment hearing.  *See Epona LLC v. Cnty. of Ventura*, 2019 WL7940582, at *4 (C.D. Cal. Dec. 12, 2019).  Zeleny's claims against Bertini in his official capacity were also identical to his claims against the City.

gathering process, we will notify him of our decision on his application.

Robinson Decl. ISO Mot. for Partial Summ. J., Dkt. No. 162-1, Ex. W.  The conspiracy between the City and NEA was front and center throughout this case, even after NEA was no longer a party.[2]

Similarly, as detailed in Zeleny's moving papers, his claims against the State were closely intertwined with those against the City.  It was essential that Zeleny secure a binding interpretation of state law in order to pursue his claims against the City.  The state firearms laws were the reason that the City was able to force Zeleny through a defective permitting process.  Indeed, the City lobbied for adoption of these laws **as a result of Zeleny's protests.**   For Zeleny to invoke the video production exemption from California's open-carry ban, Cal. Penal Code section 26405(r), Zeleny had to try to comply with local ordinances regarding video events.  These claims were both legally and factually related.  The City completely ignores this point.

The overall results in this case justify a fully compensatory award under *Hensley*.  While Zeleny did not secure a ruling against the State, he obtained a substantial part of the relief he sought—*i.e.* a binding and favorable interpretation of state law.  The Court granted the State summary judgment *because it adopted an interpretation largely consistent with Zeleny's*.  It was an interpretation the State refused to adopt until Zeleny won multiple discovery motions against the State.  Once the State finally did answer the question, the answer turned out to be a large part of what Zeleny sought to have the State commit to all along.  Practically speaking, this gave him much of the relief he sought.  He can now resume his protests without fear or arrest or prosecution.

Finally, the City grossly overstates the hours devoted to claims against the State and NEA.  It writes off every time entry referencing the "Second Amendment," the State, or NEA, even where clearly related to the section 1983 claim.  This includes discovery from NEA *when it was not in the case*, taken to pursue Zeleny's section 1983 claim against the City.  *See*, *e.g.*, Gundert Decl., Ex. 1 at 30 of 112 (seeking to exclude hours relating to Motion to Quash filed by NEA before it was a party); *id.* at 31 (same); *id.* at 85 (same); at 51-53 (seeking to exclude time spent regarding depositions after NEA was dismissed).  It also seeks to write off such things as a series of emails to

---

[2] As the Court will recall, NEA was not dismissed on the merits, but based on an immunity defense.

coordinate multiple depositions, or issuance of a series of subpoenas, because they included depositions of NEA and the State as well as the City. *See*, *e.g.*, *id.* at 89. The City has also flagged many time entries that have nothing to do with claims against the State or NEA, or that plainly relate to claims against the City as well. *See*, *e.g.*, *id.* at 31 ("Legal research re: … territorial limits to a county DA's authority"); *id.* at 48 ("Legal research re: new authority concerning retaliation by government for a person's exercise of First Amendment rights"); *id.* at 89 ("Draft subpoena to DA of San Mateo County for use in showing pattern of harassment/censorship"); *id.* (preparation of First Amended Complaint).

There is no basis for writing off hundreds of attorney hours, simply because they touched on issues relating to the State or NEA along with issues relating to the City. As the Supreme Court recognized in *Hensley*, this artificially and unfairly reduces the hours spent on interrelated claims.

**B.     The City Has Failed to Support Its Challenge to Counsel's Fees.**

Without any analysis, the City submits over 100 pages of time entries, highlighting what it claims are scores of "questioned charges." Opp. at p. 3. It fails to show that these entries are improper or unreasonable. It does not explain, except in the most conclusory terms, why it disputes them. Nor does it propose a reduction. Based on its blanket assertions, the City asks the Court to strike hundreds of counsel's hours. There no reason for the Court to do the City's work for it. There is no valid basis for wholesale elimination of broad swaths of counsel's time.

Leaving aside that the City has failed to plausibly dispute counsel's hours, the Court is not required to act as a line-item auditor of billing records. The Court must set a reasonable fee "in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing party, no more and no less." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989). It is required to provide a "concise but clear explanation of its reasons." *Hensley*, 461 U.S. at 437. Nothing requires the Court to "perform[] an item-by-item accounting" of a fee request that is reasonable as a whole. *La Prade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 906 (D.C. Cir. 1998).

Even if the Court were inclined to line-edit counsel's time records, the City provides no basis on which to calculate a reduction. Even if the City were correct that certain entries were "vague" or "block billed"—and the City is not—this would not support eliminating all of the hours. At most, it

would support a modest reduction. *See Fischer v. SJB-P.D.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (reversing denial of fees); *see also Hensley*, 461 U.S. at 433 (noting that court can "reduce" the fee award for inadequate documentation). The City has provided no metric to calculate a reduction.

      **C.**    **Counsel's Hours Are Not Vague, Duplicative, or Block-Billed.**

The City's identification of "questioned charges" also ignores governing standards for time records. Counsel "is not required to record in great detail how each minute of his time was expended." *Hensley*, 461 U.S. at 437 n.12. It is sufficient for counsel to list the hours and the "general subject matter of his time expenditures." *Fischer v. SJB-P.D. Inc.*, 214 F.3d at 1121 (quoting *Davis v. Cty. & Cnty. of S.F.*, 976 F.2d 1536, 1542 (9th Cir. 1992), vacated in part on other grounds 984 F.2d 345 (1993)). The Court should only eliminate hours that "are not *reasonably* expended" due to being excessive, duplicative, or unnecessary. *Hensley*, 461 U.S. at 434. Zeleny's time records meet or exceed governing standards and do not reflect unnecessary work.

The City does not identify block billing. Block billing refers to the practice of having "each lawyer … enter[] the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Harolds Stores, Inc. v. Dillard Dept. Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996). In this case, counsel's time entries are on a task-by-task basis. At worst, the City has identified entries that list "different parts of the same task" or a "grouping of highly related tasks that rarely cover more than a few hours." *Sunstone Behavioral Health, Inc. v. Alameda Cnty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1216-17 (2009) (citing cases). The City challenges numerous entries for half an hour or less—frequently for 12 minutes—for a single task or closely-related tasks, as "block billed."[3] This is not block billing under any reasonable definition. And, even if it could be construed as block billing, it would only justify a reduction if it rendered it difficult for the Court to assess whether the hours were reasonable. *Id.* It is not difficult to decide whether billing 12 minutes

---

[3] *See, e.g.*, Gundert Decl., Ex. 1 at 14 (0.5 hours reviewing "extensive analysis by Michael Zeleny of potential 1983 claim against state and local defendants"); *id.* at 81 of 112 (12 minutes for emails with Mr. Zeleny about outgoing subpoenas to NEA, an upcoming settlement conference, and strategy regarding the 1983 claim against the City), *id.* at 83 (0.2 hour entry for an email to all counsel "to schedule depositions of NEA witnesses, City of Menlo Park, and Dave Bertini"); *id.* at 87 (0.3 hours for emails trying to schedule depositions and motion to quash hearing); *id.* 89 (similar); *id.* at 95 (0.3 hours drafting deposition subpoenas to multiple parties).

for a series of closely related tasks was reasonable.

The City's overzealous vagueness argument is equally off base. It seeks to eliminate multiple entries that describe in detail specific tasks that counsel performed, such as the following:

> Review email from Michael Zeleny re: action items (0.4); tel. conf. with Michael Zeleny re: same (0.3); tel. calls to Ryan King and Ryan Okabe re: acquiring a transcript of the 2014 criminal trial (0.4).

Gundert Decl., Ex. 1 p. 21 of 112. There is nothing vague about this. The City also takes issue with such clear entries as reviewing client comments on "the most recent draft of a complaint," *id.* at 23; discussing and making revisions to the Complaint, *id.* at 24; *see also id.* at 80; "Revisions to Complaint; proofread same and make final changes; prepare for filing"; and a one-hour strategy conference and review of an outline for upcoming summary judgment motions. *Id.* at p. 58. The City seeks to eliminate multiple entries for only 12 minutes devoted to a single call or email on a specific issue. *Id.* at 59, 92. These are merely examples of clear, specific time entries that the City has improperly characterized as "vague."

These and similar entries are neither vague nor unreasonable. While the City claims it does not intend to "nitpick" counsel's billing, Opp. at p. 4, this is exactly what it has done. The City is not entitled to require belabored detail for minor tasks such that the time to make timesheet entries would be longer than the event being described. On the whole, counsel's time records fairly and specifically describe the work that counsel performed.

Finally, the City seeks to eliminate scores of hours for claimed "duplication," primarily because Zeleny had multiple lawyers working on this case—just as the City did. It is not proper to reduce a fee award because a party had multiple attorneys, particularly in a case as long and complex as this one. *See PSM Holdings Corp. v. Nat'l Farm Fin. Corp.*, 743 F. Supp. 2d 1136, 1157 (C.D. Cal. 2010) (citing *Williamsburg Fair Housing Committee v. Ross-Rodney Housing Corp.*, 599 F. Supp. 509, 518 (S.D.N.Y. 1984)). Courts have repeatedly recognized that some level of duplication and intra-firm communication is an inherent part of litigation. *Id.*; *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1103-04 (N.D. Cal. 2008); *see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1337 (D.C. Cir. 1982). "[C]onference between attorneys to discuss strategy and prepare for oral argument are an essential part of effective

litigation." *McKenzie v. Kennickell*, 645 F. Supp. 437, 450 (D.D.C. 1986).  "One certainly expects *some* degree of duplication as an inherent part of the process. There is no reason why the lawyer should perform this necessary work for free." *Moreno*, 534 F.3d at 1112 (emphasis in original).

A downward adjustment is only warranted where the work is "unnecessarily duplicative." *Id.* (reversing, in part, because court reduced hours for duplication without determining whether hours were unnecessary).  Here, much of the work in this case was directly related to responding to the City's bad faith conduct and gamesmanship.  Many of the hours the City seeks to eliminate were for the seemingly endless efforts by Zeleny's counsel to get the City to cooperate in basic case management , such as setting a reasonable discovery schedule and providing dates for depositions. Having intentionally made routine tasks extremely difficult, the City is not in a position to challenge the time spent dealing with these issues, even if they required coordination among multiple lawyers.

### 4. The City Fails to Address Zeleny's Request for a Multiplier.

Contrary to the City's argument, Zeleny does not argue for a multiplier because "this was a long, difficult lawsuit."  *See* Opp. at 5.  Instead, it is well-settled that a multiplier is appropriate where unusual circumstances make a case "undesirable" for counsel to take on.  *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) abrogated on other grounds in *City of Burlington v. Dague*, 505 U.S. 557 (1992); *see also Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996).  Unlike the length or difficulty of litigation, the "undesirability" factor is "not ordinarily reflected in the lodestar." *Ada*, 100 F.3d at 697.

The City says nothing about the "undesirability" factor on this Motion.  Its silence is for good reason.  At every prior opportunity, the City made a point of how "undesirable" this case is.  It repeatedly and gratuitously pointed out that Zeleny filed this case to secure his right to protest while displaying military-grade firearms on a busy stretch of San Hill Road.  He sought to do so in order to draw attention to protests involving child rape and allegations against a well-regarded corporate citizen of Menlo Park.  To say that this case would be "undesirable" for most counsel to take on is an understatement.  A multiplier is warranted.

## III. CONCLUSION

Zeleny should be awarded a fully compensatory fee of $1,768,167.00, reflecting the 1,727 hours of attorney time reasonable spent on this litigation.[4]  If the Court is inclined to credit any part of the City's arguments, notwithstanding the City's scorched-earth approach to this case, at most a 25% reduction would more than addresses the issues.  Thus, Zeleny should recover a fee of at least $1,320,872.  But to be clear, the fully compensatory fee of $1,768,167.00 is warranted.

Dated:  December 10, 2021                                     Respectfully submitted,

                                                              s/ Damion Robinson
                                                              David W. Affeld
                                                              Brian R. England
                                                              Damion D. D. Robinson
                                                              Affeld Grivakes LLP

---

[4] Zeleny reserves the right to supplement his fee request for the hours incurred in responding to the City's untimely motion for reconsideration, Dkt. No. 206.

## CERTIFICATE OF SERVICE

  I certify that I electronically filed the foregoing document using the Court's CM/ECF system. I am informed and believe that filing via CM/ECF will result in electronic service on all parties to this action.

Dated:  December 10, 2021

                       Damion Robinson