1  David W. Affeld, State Bar No. 123922
   Brian R. England, State Bar No. 211335
2  Damion Robinson, State Bar No. 262573
   Affeld Grivakes LLP
3  2049 Century Park East, Ste. 2460
   Los Angeles, CA 90067
4  Telephone:      (310) 979-8700

5  Attorneys for Plaintiff Michael Zeleny

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | MICHAEL ZELENY,                    | Case No. CV 17-7357 JCS

12 |        Plaintiff,                  | Assigned to:
                                          The Honorable Richard G. Seeborg
13 |        vs.
                                          Discovery Matters:
14 | GAVIN NEWSOM, *et al.*,            | The Honorable Thomas S. Hixson

15 |        Defendants.                 | **DECLARATION OF BRIAN R. ENGLAND
                                          IN OPPOSITION TO MOTION TO
16                                        DISMISS AND IN SUPPORT OF
                                          REQUEST FOR MONETARY
17                                        SANCTIONS IN THE AMOUNT OF $9,192.**

18                                        Date:         January 6, 2022
                                          Time:         1:30 p.m.
19                                        Courtroom:  3, 17th Floor

20
                                          Action Filed:  December 28, 2017
21                                        Trial Date:    None Set

22

23

24

25

26

27

28

1

## DECLARATION OF BRIAN R. ENGLAND

2          I, Brian R. England, declare:

3          1.          My law firm and I are counsel of record to Plaintiff Michael Zeleny ("Zeleny") in this

4 matter.  I have personal knowledge of the facts below or knowledge based on the records and files of

5 my firm maintained in the ordinary course of business.  I could testify competently to these facts if

6 called upon to do so.

7          2.          Affeld Grivakes LLP reasonably incurred in excess of 16.5 hours in reviewing the

8 City's Motion, conducting legal research and analysis, and drafting this Opposition.  That included

9 six hours for me, 5.5 hours for Damion Robinson, and 5 hours for Adeline Black.  My hourly rate is

10 $695, Damion Robinson's is $595, and Ms. Black's is $350.  All in, that amounts to $9,192 in fees

11 and costs opposing this Motion.

12          3.          Attached hereto as Exhibit A is a true and correct copy of relevant of the deposition

13 transcript of Dave Bertini, taken in this case March 19, 2019.

14          4.          Attached hereto as Exhibit B is a true and correct copy of a letter from Damion

15 Robinson to the City's counsel dated October 12, 2021 regarding this Motion and the lack of merit.

16          I declare under penalty of perjury under the laws of the United States of America that the

17 foregoing is true and correct.  Executed this 13th day of December, 2021 at Los Angeles, California.

18

19                                        /s/ Brian R. England
                                          Brian R. England
20                                        Declarant

21

22

23

24

25

26

27

28

- 1 -
DECLARATION OF BRIAN ENGLAND

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

- 14 -
OPPOSITION TO MOTION TO DISMISS

```
 1                 UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3

 4    IN RE MATTER OF:                )
                                      )
 5                                    )
                                      )
 6    MICHAEL ZELENY,                 )
                                      )
 7              Plaintiff,            )
                                      )
 8        vs.                         )   CASE NO. CV 17-7357 JCS
                                      )
 9    EDMUND G. BROWN, JR., et al.,   )
                                      )
10              Defendant.            )
                                      )
11

12

13       VIDEOTAPED DEPOSITION OF CHIEF DAVE BERTINI

14                        VOLUME I

15                  Menlo Park, California

16                Tuesday, March 19, 2019

17

18

19

20

21

22
      Stenographically Reported by:
23
      HEATHER J. BAUTISTA, CSR, CRR, RPR
24

25
```

1            VIDEOTAPED DEPOSITION of CHIEF DAVE BERTINI,

2    taken before Heather J. Bautista, CSR No. 11600, a

3    Certified Shorthand Reporter for the State of

4    California, with principal office in the County of Santa

5    Clara, commencing on Tuesday, March 19, 2019, 10:07

6    a.m., at 1100 Alma Street, Suite 210, Menlo Park,

7    California 94025.

8

9    APPEARANCES OF COUNSEL:

10

11        For the Plaintiff:

12            Affeld Grivakes LLP
              BY:  DAMION ROBINSON, ESQ.
13            2049 Century Park East
              Suite 2460
14            Los Angeles, California 90067
              Phone:  (310) 979-8700 / Fax:  (310) 979-8701
15            dr@agzlaw.com

16
          For the Defendant:
17
              Howard Rome Martin & Ridley LLP
18            BY:  TODD H. MASTER, ESQ.
              1900 O'Farrell Street
19            Suite 280
              San Mateo, California 94403
20            Phone:  (650) 365-7715 / Fax:  (650) 364-5297
              tmaster@hrmrlaw.com
21

22    ALSO PRESENT:

23            Nick Perry, Videographer

24            Michael Zeleny, Plaintiff

25

```
          1        Q.    (By Mr. Robinson)   My question was more

          2   specific than that, though.   If Mr. Zeleny -- as the

          3   person most qualified on behalf of the City of Menlo

          4   Park, in relation to these protests, if Mr. Zeleny wants

10:20     5   to go today and protest against NEA and carry unloaded

          6   firearms openly, is he allowed to do that within the

          7   city of Menlo Park?

          8             MR. MASTER:   Same objections.

          9             You can answer.

10:20    10             THE WITNESS:   Our -- the interpretation of the

         11   Penal Code is no, he would not be.   It is illegal to

         12   openly carry unloaded weapons in the state of

         13   California.

         14        Q.    (By Mr. Robinson)   What would the consequences

10:20    15   be if Mr. Zeleny undertook his protests carrying open,

         16   unloaded firearms?

         17        A.    We would look at the situation.   We would

         18   determine whether we believed a crime was occurring, and

         19   if we established that probable cause that a crime was

10:21    20   occurring, an arrest could be made.

         21        Q.    Who would be the person on the behalf of the

         22   City of Menlo Park Police Department to decide whether

         23   or not to make an arrest in that situation?

         24        A.    Police officer.

10:21    25        Q.    So assuming that Mr. Zeleny went to NEA today
```

1    or some other day and resumed his protests while openly

2    carrying unloaded firearms, he would be subject to

3    arrest; true?

4         A.    That's true.

10:21    5        Q.    Is there any way in which Mr. Zeleny can engage

6    in that protest through permits or some other process

7    where he could do those protests while openly carrying

8    firearms and not be subject to a risk of arrest?

9         A.    There is an exception to the Penal Code that

10:22    10    allows someone who is in an authorized production to

11    carry weapons and if Mr. Zeleny had a authorized

12    production permit from the City, then -- and as long as

13    he fulfilled the rest of the requirements in that

14    permitting process, he would be allowed to do so.

10:22    15       Q.    When you're talking about a production permit,

16    is that a film production permit?

17        A.    Correct.

18        Q.    Other than getting a film production permit

19    from the City, are there any other circumstances in

10:22    20    which Mr. Zeleny could conduct his protests involving

21    the use of firearms without being subject to arrest?

22        A.    I'm not aware of any.

23        Q.    So the film production permit is basically the

24    only option within the city?

10:23    25       A.    Well, it seems to be one of the exceptions to

1           THE WITNESS:  Repeat it.

2      Q.    (By Mr. Robinson)  By the definition you just

3  gave me, Mr. Zeleny's special event that he was

4  proposing, because he didn't have some other kind of

10:29   5  permit, would meet your definition of an event that was

6  special by its very nature; true?

7      A.    Believe the City's -- as I stated, I believe

8  the City's stats on that was that you don't need a

9  special events permit to, in fact, protest.

10:30   10      Q.    At this point -- let me step back a second.

11  You understand that there is an exception to the

12  California Penal Code sections about open carry for

13  entertainment events; true?

14      A.    For an authorized production; correct.

10:30   15      Q.    Are you aware of the exception that applies to

16  authorized participants in entertainment events?

17      A.    An authorized event, yes.

18      Q.    Okay.

19          Is there any other mechanism by which the City

10:30   20  of Menlo Park authorizes events, other than the special

21  event permit process?

22      A.    The film permit.

23      Q.    Okay.

24          So the two options, essentially, are film

10:30   25  permit and special events permit for events; true?

1          MR. MASTER:  I'll just object to the extent

2     that you're asking him to potentially answer questions

3     that go beyond the scope of his designation.

4          But to the extent he has an understanding, he

10:31   5     may.

6          THE WITNESS:  I'm sorry.

7     Q.   (By Mr. Robinson)  Let me step back for a

8     second.  It's the City's view -- and I'm asking about

9     Item 4 on Attachment 1, the defendant's interpretation

10:31   10    of the California statutes.

11         It's the City's position that in order to be an

12    authorized participant either in a video production or

13    an entertainment event, the City has to authorize the

14    event itself?

10:31   15    A.   That's correct.

16    Q.   And the way in which the City would authorize

17    an event of the type that Mr. Zeleny was seeking to

18    conduct would be either through a special events permit

19    or a film permit; right?

10:31   20    A.   Those are the only two that I'm aware of.

21    Q.   Okay.

22         And at the time Mr. Zeleny applied for the

23    special events permit, you're aware that he didn't have

24    a film permit; correct?

10:32   25    A.   Correct.

```
           1    police regulation, monitoring, or control," in your

           2    view, the event that Mr. Zeleny filed his application

           3    for satisfied that criteria; correct?

           4         A.    Yes.

13:23      5         Q.    So to summarize, at least three of these bullet

           6    points would be triggered by Mr. Zeleny's proposed

           7    special event permit; correct?

           8         A.    Yes.

           9         Q.    And under the definition set out in the FAQ, if

13:24     10    an event meets any one of these criteria, it qualifies

          11    as a special event requiring a permit; true?

          12         A.    Requires you to complete a special event

          13    application.

          14         Q.    Is the City -- is the definition in this FAQ of

13:24     15    what qualifies as a special event the City's definition

          16    of a special event?

          17         A.    Yes.

          18         Q.    So under this -- at least under the published

          19    FAQ, Mr. Zeleny's event would qualify as a special event

13:24     20    on at least three criteria; correct?

          21         A.    Yes.

          22         Q.    Let me have you turn to the page that's marked

          23    MP1820.  There's the section titled "What would cause a

          24    permit to get denied?"

13:25     25              Do you see that?
```

         1   attempting to come to a conclusion with as far as his

         2   second permit.

         3        Q.    Part of your answer related to Mr. Zeleny

         4   asserting that he has the right to engage in the

15:30    5   protests without -- or to engage in an entertainment

         6   event or to film his protests as part of a video

         7   production without the City's authorization; is that

         8   accurate?

         9        A.    That is my understanding of what he has alleged

15:30   10   or he has said.

        11        Q.    As the person most qualified on behalf of the

        12   City of Menlo Park, is he correct in that assertion?

        13        A.    In the assertion -- no; that he can't -- hold

        14   on.

15:30   15             Go back and tell me the assertion again.

        16        Q.    Sure.  Is it accurate that Mr. Zeleny can

        17   engage in his activities with unloaded firearms without

        18   some kind of permit from the City?

        19        A.    That is not correct.

15:30   20        Q.    Okay.

        21             So you disagree with his assertion?

        22        A.    That's correct.

        23        Q.    And assuming that he did that, we've talked

        24   about this before, and I don't want to belabor it.

15:30   25   Assuming that he did that, he would be subject to

1    prosecution?

2         A.    He may be subject to arrest and prosecution.

3         Q.    And if I understood you correctly, Mr. Zeleny

4    is manipulating the process by applying for the permits;

15:31    5    is that correct?

6         A.    Yes.

7         Q.    Okay.

8               So the City disagrees with him -- strike that.

9               In the City's view, Mr. Zeleny needs the

15:31   10    permits in order to use the guns in the protests -- in

11    the entertainment event, the protests, the video,

12    whatever it is, he needs a permit; correct?

13         A.    In order for the exception to be applicable, he

14    has to be involved in a permitted activity, yes.

15:31   15         Q.    And in your view, Mr. Zeleny is manipulating

16    the process by applying for the permits he needs to

17    engage in that activity?

18         A.    Based on his own words, yes.

19         Q.    Going on to the next paragraph in Exhibit 44,

15:32   20    there is a reference to continuing to be in close

21    contact with security from NEA.

22               Do you see that?

23         A.    I do.

24         Q.    Do you have an understanding of how -- for what

15:32   25    period of time the City of Menlo Park was in contact

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

OPPOSITION TO MOTION TO DISMISS

# AFFELD GRIVAKES LLP

2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Tel:  (310) 979-8700
Fax: (310) 979-8701

Sender's email:
dr@agzlaw.com

October 12, 2021

Todd H. Master, Esq.                                               *Via FedEx*
Robert Gundert, Esq.
Howard Rome Martin & Ridley LLP
1900 O'Farrell Street, Suite 280
San Mateo, CA 94403

> Re:   *Zeleny v. Newsom, et al.*, N.D. Cal. Case No. 17-7357
>         Proposed Motion for Reconsideration

Gentlemen:

According to your Settlement Conference Statement, you plan to file a Motion for Reconsideration, asking the Court to "reconsider its implied ruling that plaintiff has standing to challenge the City's special event permit process[.]"  We hope that this is merely settlement posturing.  Such a motion would violate the City's and counsel's obligations under Rule 11.

The Court did not make an "implied ruling" about standing.  It made an explicit ruling, which undermines your argument:

> Because Zeleny challenges the permitting processes as facially invalid prior restraints, ***his standing is not a function of his having "appl[ied] for, and be[en] denied" any one particular permit***. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755-56 (citations omitted). So long as the processes remain in place and controlling over any future application he might submit, his claims against Menlo Park are justiciable.

Order dated 7/13/2021 (Dkt. No. 192) at p. 13 (emphasis added).  Further, you made this exact argument in opposing our Motion for Partial Summary Judgment:

> It is apparent from these documents that describe the City's SEP policy … that the SEP process was designed for community-related activities of a social and/or recreational nature. Consistent with that, plaintiff was told repeatedly that the SEP process did not apply to his proposed protest and that he did not need a permit to protest.

Todd Master, Esq.
Robert Gundert, Esq.
October 12, 2021
Page 2 of 2

Opp. to Mot. for Summ. J. (Dkt. No. 168) at p. 21.

      There are no new facts or new law here.  The Court properly rejected your argument under binding authority, including *City of Lakewood*.  In addition, any Motion for Reconsideration would be several months late.  We urge you not to waste any more time with frivolous motion practice.

                        Sincerely,
                        s/ Damion Robinson
                        Damion Robinson