**TODD H. MASTER [SBN 185881]**
tmaster@hrmrlaw.com
**ROBERT J. GUNDERT [SBN 104486]**
rgundert@hrmrlaw.com
**HOWARD ROME MARTIN & RIDLEY LLP**
1900 O'Farrell Street, Suite 280
San Mateo, CA  94403
Telephone:      (650) 365-7715
Facsimile:       (650) 364-5297

Attorneys for Defendants
CITY OF MENLO PARK and DAVE BERTINI

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| MICHAEL ZELENY, an individual<br><br>Plaintiff,<br><br>vs.<br><br>EDMUND G. BROWN, JR., an individual, in his official capacity, et al.<br><br>Defendants. | Case No. 17-cv-07357-RS (TSH)<br><br>**DEFENDANT CITY OF MENLO PARK'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR PARTIAL DISMISSAL OR FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br><br>Date: January 6, 2022<br>Time: 1:30 p.m.<br>Courtroom: 3, 17th Floor<br><br>Action Filed: December 28, 2017<br>Trial Date: None Set |

**SUMMARY OF REPLY**

Plaintiff sought a permit from the City of Menlo Park in order to protest and to film the reactions of people to his protest. The City did not require a Special Event Permit for a protest. It did require a film permit for a film production project. Plaintiff was told this but he proceeded to seek a Special Event Permit (SEP) anyway.

The City's position is very simple. When an enactment, policy or a process does not apply to the plaintiff or to the plaintiff's proposed activities, the plaintiff has no right (i.e., no standing) to

---
DEFENDANT CITY OF MENLO PARK'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR PARTIAL DISMISSAL OR FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; Case No. 17-cv-07357-RS (TSH)

1

challenge that enactment, policy or process.  The SEP process did not apply to plaintiff or to his activities.  He therefore has not right, no standing, to challenge the SEP process.

Plaintiff's response is threefold:

First, he claims the motion is procedurally improper.

Second, he claims that a plaintiff may challenge an enactment, policy or process even when it does not apply to the plaintiff.

Third, he claims that the SEP process did apply to his proposed activities.

The following replies to each of these claims.

## THE PROCEDURAL ISSUE

The motion under consideration has been made pursuant to FRCP 12(b)(1) since it pertains to the jurisdiction of this Court.  A motion such as this may be made at any time (*United States v. Bennett,* 147 F.3d 912, 914 (1998)) even for the first time on appeal (*Sucampo Pharms., Inc. v. Astellas Pharma, Inc.,* 471 F.3d 544, 548-549, citing *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004)).  The motion has been made so that the issue may be considered before judgment is issued in this matter.

The reason the motion has been presented in the alternative, as a motion for partial dismissal or as a motion for leave to file a motion for reconsideration, is to cover all the possible procedural bases.  First and foremost, it has been presented as a motion pursuant to Rule 12(b)(1) but, if the Court deems it more appropriate as a motion for leave to file a motion for reconsideration, it is presented as such in the alternative.

Defendant City realizes that typically on a motion for leave to file a motion for reconsideration the merits are not argued as they were here.  However, since this is also a motion under Rule 12(b)(1) there was no way to avoid that.

Plaintiff spends a lot of time arguing that a motion for reconsideration is improper.  This is not a motion for reconsideration, however.  It is a motion under Rule 12(b)(1) and a motion for leave to file a motion for reconsideration pursuant to Local Rule 7-9(b)(3).

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

Before proceeding with the merits, Defendant would like to address Plaintiff's claim that this particular issue has already been decided and that Defendant merely seeks a do-over.

As mentioned in the moving papers, the fact that the City had informed Plaintiff that the SEP process did not apply to him was mentioned in the Defendant's motion for summary judgment or, in the alternative, partial summary judgment. However, the legal issue presented by that fact has never been briefed nor does it appear to be addressed in the Court's ruling and order. It is a critical issue, since it speaks to jurisdiction. Accordingly, Defendant is presenting it at this time by this motion.

It was never Defendant's intention to hold back the issue and to present it only if it did not prevail at the summary judgment stage. Such a tactic would be foolish, particularly since, as Defendant sees it, the resolution of the issue is clear, i.e. that Plaintiff lacks standing to challenge the SEP process. Had Defendant appreciated the issue fully, as it has since that time, it would have presented it rather than risking a loss and then raising it thereafter.

Defendant apologizes for the oversight in not addressing the issue previously. But the fact that this important issue was inadvertently overlooked previously is not a good reason to fail to present and address it prior to entry of judgment. Accordingly, asking the Court's indulgence, Defendant discusses the merits of the motion below.

**PLAINTIFF NEVER ESTABLISHED HIS RIGHT TO CHALLENGE THE SPECIAL EVENT PERMIT PROCESS**

*Plaintiff Misstates the Law in Various Respects*

The basic premise of this motion, that a plaintiff has no right to challenge an enactment, policy or procedure that does not apply to him or her, comes from three sources:

- Article III of the United States Constitution, which states that Courts are charged with adjudicating Cases and Controversies between various persons and entities;
- The three-part standing test expressed in such cases as *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1546-47, 194 L. Ed. 2d 635 (2016); and
- Basic common sense, which indicates that if anyone could challenge anything,

HOWARD ROME MARTIN & RIDLEY LLP
1900 O'FARRELL STREET, SUITE 280
SAN MATEO, CA 94403
TELEPHONE (650) 365-7715

whether or not the challenged thing applies to the plaintiff, there would be no such thing as "standing" and the courts would be clogged with even more litigation than there is now.

Plaintiff's opposition does not challenge the above premise, and he spends very little time addressing the applicable law. When he does discuss the law, he misstates it.

First, Plaintiff claims that because he has standing to challenge the City's film permit process he had standing to challenge the SEP process. Plaintiff states his position as follows:

> Glaringly, the City concedes that Zeleny had Article III standing to challenge the City's film permitting process. Mot. At p. 3. This admission is dispositive. There was indisputably a live case or controversy between Zeleny and the City regarding the constitutionality of the City's permitting process. Zeleny brought a single claim for violation of 42 U.S.C. § 1983, challenging the City's film permit and SEP processes." [ Opposition at p. 8, lines 17-21.]

But standing to challenge the City's film permitting process does not provide standing to challenge the SEP process. As stated in the moving papers, plaintiffs are required to "demonstrate standing for each claim they seek to press." *See California v. Azar,* 911 F.3d 558, 570 (9th Cir. 2018) (quoting *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006). Plaintiff claims the SEP process was invalid and he claims the film permit process was invalid. Those are two separate and distinct claims.

Next, Plaintiff claims that he was only required to show standing at the outset of the case and that he did so through the unproven allegations of his complaint. [Opposition at p. 8, line 21 to p. 9, line 9.] This is an incomplete statement of law. Although standing should be adequately alleged by the complaint that does not settle the matter for the duration of the lawsuit. Standing must exist throughout the pendency of the action. *See Already, LLC v. Nike, Inc.,* 568 U.S. 85, 90-91 (2013), where Chief Justice Roberts stated, for a unanimous Court:

> Article III of the Constitution grants the Judicial Branch authority to adjudicate "Cases" and "Controversies." In our system of government, courts have "no business" deciding legal disputes or expounding on law in the absence of such a case or controversy. *DaimlerChrysler Corp. v. Cuno, 547 U. S. 332, 341, 126 S. Ct. 1854, 164 L. Ed. 2d 589*

*(2006)*. That limitation requires those who invoke the power of a federal court to demonstrate standing—a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright, 468 U. S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984)*. We have repeatedly held that an "actual controversy" must exist not only "at the time the complaint is filed," but through "all stages" of the litigation. *Alvarez v. Smith, 558 U. S. 87, 92, 130 S. Ct. 576, 175 L. Ed. 2d 447 (2009)* (internal quotation marks omitted); *Arizonans for Official English v. Arizona, 520 U. S. 43, 67, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997)* ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed' " (quoting *Preiser v. Newkirk, 422 U. S. 395, 401, 95 S. Ct. 2330, 45 L. Ed. 2d 272 (1975)*))).

Plaintiff next claims that a plaintiff who challenges a permitting scheme on the ground that it is an unconstitutional prior restraint has standing even if he or she has not applied for a permit. [Opposition at p. 9, lines 18-26.] Defendant does not disagree with that concept or with the proposition cited by Plaintiff that an enactment may be challenged facially even though the enactment may be validly applied to that plaintiff. But the challenged enactment must still be **applicable** to the plaintiff and what he or she wishes to do. In fact, this requirement is recognized in the very next paragraph of Plaintiff's opposition, where he quotes *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755-756 as follows: "[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, **one who is subject to the law** may challenge it facially without the necessity of first applying for, and being denied, a license." [Emphasis added.]

As the following section shows, Plaintiff was not subject to the SEP process since the City advised him repeatedly, through its City Attorney, Community Services Director, City Manager and City Council that the Special Event Permit process did not apply to protests or to film projects, the two things that Plaintiff wished to do. Nowhere in Plaintiff's papers does he dispute the fact that he was told by each of these City officials and by the City's governing council, that he would not need a Special Event Permit to protest or to undertake a film production project.

***The City Validly Exempted Protests from its SEP Process***

---

DEFENDANT CITY OF MENLO PARK'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR PARTIAL DISMISSAL OR FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; Case No. 17-cv-07357-RS (TSH)

5

Plaintiff asserts that since some of the City's published criteria for what constitutes a "special event" applied to his protest the SEP process applied to him.

As mentioned in the moving papers, some of the published special event criteria did appear to apply to Plaintiff's proposed protest. But the City made it clear through its City Attorney, Community Services Director, City Manager and even its City Council, that it exempted protests from the Special Event Permit process. The City was on solid ground in doing so, as it recognized Plaintiff's First Amendment right to protest. The City's recognition that protests are *sui generis* and thus not subject to the SEP process is shown in the comments made by the various City officials to Plaintiff during his application and appeal process, and particularly by comments made by various City Council members.

The situation here is squarely in line with *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010) and *Johnson v. Stuart,* 702 F.2d 193, 195 (9th Cir. 1983). The plaintiffs in those cases feared that a policy (in *Lopez*) or a statute (in *Johnson*) would be applied against them since the words of each appeared to apply to their respective situations.

In each case those with authority to speak on behalf of the governmental entity (the Dean in *Lopez* and the Attorney General in *Johnson*) assured the plaintiffs either a) that the challenged policy or enactment would not be applied (Lopez) or b) was not applicable (Johnson) to the plaintiff(s).

The facts in this matter are consistent with, and even more compelling than, those in *Lopez* and *Johnson*. In *Lopez* the assurance that the challenged policy would not be applied to plaintiff was far less explicit than in this case, and in *Johnson* it was "only" the chief legal official for the State of Oregon (i.e., the Attorney General) who advised the plaintiffs that the statute did not apply to them. Here, the chief legal official for the City of Menlo Park (i.e. the City Attorney), the City Manager (comparable to the Governor) and the City Council (legislature) all issued *explicit* pronouncements that the SEP process would not be enforced and did not apply.

Plaintiff argues that he still would have been subject to arrest had he proceeded without a

DEFENDANT CITY OF MENLO PARK'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR PARTIAL DISMISSAL OR FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; Case No. 17-cv-07357-RS (TSH)

6

permit. That is true, but not a Special Event Permit. He was required to obtain a film permit. Otherwise, he was subject to arrest for violating the Penal Code Sections that prohibit the open carry of firearms, the validity of which the Court upheld.

The principle here is that when a plaintiff is not subject to risk, harm, arrest or other action due to the challenged enactment, policy or process he or she cannot satisfy either of the first two prongs of the *Spokeo* test for standing. Just ten days ago, the Supreme Court has recognized this principle in a case in which various public officials and one private individual were being sued. In *Whole Woman's Health v. Jackson*, 595 U.S. ___ (2021) the Court held that because a private individual had disavowed any intention of enforcing an enactment against certain parties, those parties do not have standing to sue and seek injunctive relief against the individual.

In *Whole Woman's Health, supra*, the Court had before it the recently enacted Texas anti-abortion law. The Court was considering whether the petitioners (i.e. certain abortion providers) would be permitted to seek a pre-enforcement injunction against a Texas state court judge, a court clerk, administration officials, and/or a private individual (that being Mark Lee Dickson, a major proponent of the challenged law).

The Court handed down a 5-4 decision by which it ruled that the petitioners would be allowed to proceed against the administration officials but not the judge, court clerk or Mr. Dickson. That part of the Court's decision that related to Mr. Dickson was unanimous. The Court ruled that the petitioners could not sue him since he had signed an affidavit stating that he was not planning on enforcing the abortion law against the petitioners. As the Court stated:

> In his appeal, Mr. Dickson argues that the petitioners lack standing to sue him because he possesses no intention to file an S. B. 8 suit against them. Mr. Dickson has supplied sworn declarations so attesting. See, *e.g.*, Brief for Respondent Dickson 32. The petitioners do not contest this testimony or ask us to disregard it. Accordingly, on the record before us the petitioners cannot establish "personal injury fairly traceable to [Mr. Dickson's] allegedly unlawful conduct." *California v. Texas, 593 U. S., at ___, 141 S. Ct. 2104, 2113, 210 L. Ed. 2d 230* (internal quotation marks omitted). No Member of the Court disagrees with this resolution of the claims against Mr. Dickson.

[*Whole Women's Health, supra,* at *28.]

Likewise here, since the City completely and clearly declared the SEP process did not apply to Plaintiff or his proposed protest and that he did not need such a permit, he does not have standing to challenge it.

Plaintiff claims that even though the City exempted protests from the SEP process it nevertheless intended to require him to obtain a Special Event Permit in order to openly carry his firearms. That claim flies in the face of all of the evidence showing that the City advised him no SEP was needed.

Plaintiff has also claimed that even though the SEP process did not apply to protests it did apply to "entertainment events" and he therefore needed to obtain an SEP permit. At times Plaintiff takes the position that he is protesting and at times he claims he is not and that he is involved in an "entertainment event" as well as a film production project. As he appeared before the City Council, when it was clear his appeal would be denied, he asked to make a final statement. His request was granted and he stated:

> Throughout this hearing and the previous exchanges, the City and its agents have been putting words in my mouth. I'm not talking about a protest. This is not about a protest. I applied for a Special Event Permit because I am proposing an entertainment event, which is incidentally being filmed. In this capacity, I fit under the statutory exemptions from the firearms carry ban. Talking about a protest is not helpful. I understand that you're not trying to stifle my – my right to protest. I also have a right to – entertain. And it is my position that entertainment is whatever I say it is. If I put on right now a red nose and say I'm a clown, I may be a bad clown, but I'm an entertainer. What the City is doing in this matter is it's aggregating the right to say, this is not entertainment. This does not fit under the statutory exemption. And that is content discrimination. And that is unconstitutional. So that is the government here. Let's not waste any more words on whether or not you're trying to stifle a protest. I understand that you're not. It's entertainment and it's a film production. Look at the cameras.
> [Dkt. 160-6 at pp. 193-194.]

This statement is perhaps the best example of Plaintiff's approach in this case. Even though he referred to his activities as a protest earlier in the hearing [Dkt. 160-6 at pp. 166-167] and even

DEFENDANT CITY OF MENLO PARK'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR PARTIAL DISMISSAL OR FOR LEAVE TO FILE MOTION FOR RECONSIDERATION; Case No. 17-cv-07357-RS (TSH)

8

though he made it clear on his applications that he would be protesting, he claims the City is "putting words in my mouth" and that what he was proposing to do was not a protest but "whatever I say it is." No one from the City put those words in his mouth or forced Plaintiff to state that he wished to engage in a protest (Dkt. 162-2 at p. 82 ("It is true that I am proposing a media production of a one-man protest.")). No one from the City compelled him to testify that he wished to protest (Dkt. 160-6 at pp. 166-167 ("I'm trying to attract attention to the subject matter of my protests." and "I'm protesting people that use death threats as a means of resolving business disputes.")). He did so on his own, until he decided that it was not in his perceived best interest to state that he would be protesting.

The City reasonably and validly concluded that Plaintiff was seeking to protest and thus properly advised him that it did not require an SEP for protests. To the extent Plaintiff wished to characterize his protest as including some type of "entertainment event" it was still a protest. An "entertaining" protest would still be a protest not subject to the SEP process. This Court has likewise stated in its order that what Plaintiff wished to do was a protest. *See,* for example, Docket 192 at p. 3. Plaintiff seeks to characterize things as he sees fit. According to Plaintiff a protest is a protest until he says it isn't.

Finally, two last points deserve mention before closing. Plaintiff appeals to the Court to deny the motion a) because he was supposedly strung along for years in the processing of his application and b) because the Court found the SEP process to be facially invalid.

As to the first point, had Plaintiff followed the City Attorney's advice to seek a film permit since the SEP process did not apply, he would not have spent any time applying for an SEP and appealing its denial.[1]

As to his second point, whether or not an enactment, policy or process is constitutionally

---

[1] Plaintiff also conveniently ignores the delays not attributable to the City, such as the lapse of seven months between the initial denial of his application [Dkt. 162-2, pp. 76-86] or the ten month delay that resulted from his emergency surgery followed by a delay resulting from his wife giving birth [Dkt. 168-1].

valid is a different issue from whether a plaintiff has standing to challenge it. No doubt the statute in *Johnson* that prohibited speaking "slightingly of the founders of the republic or of those who preserved the union" violates the First Amendment. Regardless, the Court held that the teachers in that case did not have the right to challenge it. The same is true here.

//

Date: December 20, 2021    **HOWARD ROME MARTIN & RIDLEY LLP**

By  /s/  Robert J. Gundert
    Robert J. Gundert
    Attorneys for Defendants CITY OF MENLO PARK and DAVE BERTINI