United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL ZELENY,

    Plaintiff,

    v.

XAVIER BECERRA, et al.,

    Defendants.

Case No. 17-cv-07357-RS

**ORDER DENYING MOTION TO DISMISS AND GRANTING AS MODIFIED MOTION FOR ATTORNEY'S FEES**

## I. INTRODUCTION

After Michael Zeleny obtained judgment against the city of Menlo Park for its unconstitutionally vague permitting process, the city moved to dismiss his claim for lack of standing. Although the city argues he lacks standing because his protest did not require a Special Event Permit ("SEP"), the record shows he has standing. The published criteria for a SEP describe his protest, and the Police Chief has at times spoken of the SEP process as applying to him. It also seems the city believes a SEP does not apply only if Zeleny protests unarmed, which is contrary to his desires. Further, he challenges the SEP process as a prior restraint, which entails relaxed standards for standing. Thus, for the reasons further set out below, the city's motion is denied.

Zeleny moves for $1,761,162.75 in attorney's fees, consisting of a lodestar amount of $1,174,108.50 for reasonable fees and a 50% multiplier because his case was undesirable and difficult. The city challenges about half of the lodestar amount on several bases, including that some fees relate to his unsuccessful claims, some were unnecessary, and some are not sufficiently justified. Zeleny rightly responds that he is entitled to some portion of the fees for the unsuccessful

1  claims which relate to his successful ones. Thus, his compensable hours are reduced, but only by
2  roughly 16% of the lodestar amount. Zeleny is also entitled to a multiplier, albeit only a fraction of
3  what he seeks. This fraction offsets the other issues the city identifies with Zeleny's fees—which
4  are inherently impossible to quantify. Accordingly, Zeleny is awarded $987,638.

## II. BACKGROUND

### A. Standing

The parties are familiar with the facts of this case, which were extensively explained in the order on summary judgment. Only the facts relevant to these motions are discussed in detail in this section. The case stems from a series of protests Zeleny staged against a venture capital fund on Sand Hill Road in Menlo Park. He was protesting its decision to continue doing business with a man he believed had committed sex crimes. He carried a military-style rifle at these protests until California expanded its ban on openly carrying firearms in 2012. The city mounted a campaign to terminate these protests. As part of this effort, the city issued a frivolous referral that he was carrying a concealed weapon, leading to his prosecution and acquittal. Zeleny applied to the city for a Special Event Permit and a film permit. His applications were denied, and he later sued the state, the city, and the city's Police Chief (and the venture capital fund, which won a motion to dismiss). After motions for summary judgment, he was granted judgment on his facial attack on the city's permitting process as unconstitutionally vague. Judgment was granted for the state and the Police Chief on other issues, including the constitutionality of the state's open carry laws.

The city now argues Zeleny did not have standing to sue over the SEP process because the city told him that his protest did not require a SEP in the first place. His application was denied not on the merits, but because his protest did not count as a special event. The city's various denial letters noted that no permit is necessary for a protest "as long as it is conducted within the confines of the law and local ordinance, including Penal Code sections regulating the display of firearms cited above." Declaration of Zeleny in Support of Partial Summary Judgment, at 105–06. The city concedes he has standing for the film permitting process.

The city's counsel offers no real excuse for not raising this earlier, saying only that it

occurred to him after the summary judgment order. However, the city has tried to moot this case at the last minute with justiciability issues before. At summary judgment, the city argued that the land on which Zeleny protested was actually owned by the state, so his claims against the city were moot. Still, the order held that "because Zeleny challenges the permitting processes as facially invalid prior restraints, his standing is not a function of his having 'appl[ied] for, and be[en] denied' any one particular permit. So long as the processes remain in place and controlling over any future application he might submit, his claims against Menlo Park are justiciable." Summary Judgment Order at 13 (footnote and citation omitted). Thus, the city frames its motion as a motion for reconsideration, in the alternative.

Zeleny responds that the motion is primarily a motion for reconsideration, and it should be denied as procedurally improper, as no new law or facts have arisen which would justify the motion. He also notes the city does not dispute he has standing for the entertainment permitting process, so his successful § 1983 claim will survive in some form no matter what. Still, plaintiffs are required to demonstrate standing for each claim, and Zeleny has separate claims against the SEP and film permitting processes, since they have distinct factual bases. *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018).

As to the merits of the motion, Zeleny argues the city has not shown his planned protest is entirely outside of the SEP framework. He notes that the city told him he did not need a permit only if he complied with the other laws regulating firearms. In his view, since he wanted to bring a gun to the protest, he did need a SEP. He finds support in the deposition of Chief of Police and Defendant David Bertini, who said that he could be arrested if he staged his protest as planned without a film permit *or a SEP*. Opp. Ex. A, Excerpts from Depo. of Officer Bertini. This was after Zeleny had exhausted the SEP application process. (At other times, Bertini showed he believed a SEP was inapplicable. Robinson Decl. ISO Mot. For Partial Summ. J., Ex. W.)

This point is also bolstered by the city's admission that "his proposed activities met various criteria that had been published by the City to inform the general public as to when a SEP would be required." Mot. at 8. The city elaborates that "Plaintiff's proposed protest with an open

ORDER ON MOTIONS TO DISMISS AND FOR ATTORNEYS' FEES
CASE NO. 17-cv-07357-RS

3

1  display of military grade guns […] was likely to impact traffic and require police monitoring,"
2  which are conditions requiring a SEP. *Id.* The city then attempts to take the sting out of this
3  admission by arguing "the City repeatedly informed Plaintiff that it recognized an exemption from
4  the SEP process for protests." *Id.* However, this was apparently not made clear in the written
5  guidelines.

### B. Fees

Zeleny seeks attorney's fees and a 50% multiplier. He argues that he is the prevailing party, such that he is entitled to fees for all of the work done on the case. Although judgment was granted to him only on his claims against the city, he reasons that his claims against the city were intertwined with those against the state: the city based its policies on its interpretations of state law. He was forced to go to court to get an interpretation of state law, which the state refused to provide. Further, he notes that his claims against the state required only that legal interpretation, while his claims against the city required much more factual discovery, e.g., only one deposition for the state vs. many against the city. He also incurred costs in navigating the administrative process, which the city told him was a mandatory prerequisite before any litigation.

Zeleny also argues he is entitled to the multiplier because his cause was unpopular, and victory uncertain. He notes he tried to get other attorneys to take this case—involving an unpopular claim, provocative conduct against powerful interests, and novel questions—but none would.

Specifically, Zeleny seeks $1,761,162.75 in fees for 1,727 hours of work. This stems from five attorneys' work, with rates ranging from $550 to $800. Before the multiplier, the lodestar calculation comes out to $1,174,108.50. The lawyers involved are experienced and successful partners and counsel at Affeld Grivakes. The most junior member of the team has been practicing for 15 years, and the most senior for nearly 40. Zeleny notes this case involved over four years of complex, intensive litigation. He argues the city was obstinate and overly aggressive. The case involved much time-consuming litigation, including discovery motions, settlement conferences, summary judgment motions producing a 4,000-page record, and a nearly two-hour summary

judgment hearing.

The city argues it should not have to pay fees relating to Zeleny's unsuccessful claims against the state, the venture capital fund, or the Police Chief. Further, it should not have to pay for work that is inadequately described in billing records, or that was "double billed," by which the city means an attorney unnecessarily duplicating or reviewing another's work. The city reviewed Zeleny's billing entries line-by-line, and challenged 50.11% of the lodestar figure, relating to around 855 hours of work. However, implicit in the city's position is that some of the challenged amounts are in fact appropriate, e.g., when there is "block billing" relating to work done that is relevant to all Defendants, some portion of it did relate to the city. Finally, the city argues the lodestar calculation already takes into account the factors that Zeleny seeks to address with his enhancement.

## III. LEGAL STANDARD

**A. Standing**

Article III of the U.S. Constitution authorizes the judiciary to adjudicate only "cases" and "controversies." The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543 (2016). The three well-known "irreducible constitutional minim[a] of standing" are injury-in-fact, causation, and redressability. *Lujan*, 504 U.S. at 560–61. A plaintiff bears the burden of demonstrating that her injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A motion to dismiss a complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject matter jurisdiction over the asserted claims. It is the plaintiff's burden to prove jurisdiction at the time the action is commenced. *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376,

1380 (9th Cir. 1988). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a factual attack, the court may consider matters outside the pleadings. *Id.*

**B. Fees**

Under 42 U.S.C. § 1988(b) the prevailing plaintiff in an action under 42 U.S.C. § 1983 is entitled to recover fees. *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989). Fees must be awarded to a successful plaintiff absent "special circumstances." *Borunda v. Richmond*, 885 F.3d 1384, 1392 (9th Cir. 1988). After the court determines that there are no special circumstances that warrant the denial of attorneys' fees, it must assess whether the requested fees are reasonable by calculating the "lodestar." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). The Ninth Circuit calculates the lodestar by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). There is a strong presumption that the lodestar figure represents a reasonable fee. *Jordan*, 815 F.2d 1258, 1262. Also, the court may adjust the award from the lodestar figure based on additional factors that bear on reasonableness. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975) (abrogated on other grounds by *City of Burlington v. Dague*, 505 U.S. 557 (1992)). Consideration of these factors is mandatory. Stetson v. Grissom, 821 F.3d 1157, 1166–67 (9th Cir. 2016).

## IV. DISCUSSION

**A. Standing**

**1. Motion for Reconsideration and Separate Claims**

At the outset, it must be decided whether this is an inappropriate motion for reconsideration, or a legitimate motion to dismiss for lack of standing. Though the issue is a close one, given that standing can be raised at any point in the litigation, and it was not previously a focus of the case, the motion will be decided on the merits as a new motion to dismiss. Thus, Zeleny's request for sanctions is denied. Zeleny's argument that his unchallenged standing for a film permit also dooms the motion, because they are both 1983 claims, is also insufficient. While

separating out individual claims is a surprisingly murky business, here there are distinct factual bases for his two claims about the two types of permits, regardless of how he styled them in the Complaint. *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 574 (9th Cir. 2018).

### 2. Standing in this Context

A plaintiff has constitutional standing if the challenged regulation "arguably" applies to his planned activities. *Lopez v. Candaele*, 630 F.3d 775, 790 (9th Cir. 2010). The standing requirements are slightly relaxed in this context (facial challenges to permitting statutes vesting unbridled discretion in public officials, especially in the prior restraint context). *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755–56. In these cases, it is not necessary for someone even to apply for a permit to have standing, and one can have standing even if his or her application would have resulted in no constitutional violation. (The city argues that *Lakewood* is restricted to those who are "subject to the law" in question, but as noted below, this argument is unavailing.)

### 3. Zeleny's Standing

Zeleny's protesting with a gun meets the published criteria for a SEP. Thus, the SEP process is "arguably" applicable to his protest. *Lopez*, 630 F.3d at 790. The Chief of Police seemed to view the SEP as one route whereby Zeleny could lawfully carry out his protest, at least in some of his statements, and said the lack of a SEP could be reason to arrest him. Given Zeleny has in fact been arrested by the city for similar reasons before, this is no idle threat. There is a substantial risk of future harm. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). The city's disclaiming of authority over the median on which Zeleny protested does not help its case. If anything, it makes it more likely Zeleny will relocate to a different location, and perhaps change his protest, mooting the city's arguments that he does not need a SEP. These reasons alone are enough to grant Zeleny standing.

Additionally, the city's view that a SEP is irrelevant appears to be premised on Zeleny protesting without his gun. As Zeleny aptly puts it, "the city cannot assert that Zeleny's protests are excluded from the SEP process while at the same time requiring him to radically change those

protests in order to avoid arrest." Opp. at 11. The city's own Police Chief testified that Zeleny could be arrested for protesting in the manner he so desires unless he obtains a film permit *or a SEP*. The city also argues Zeleny could have just gotten a film permit. However, that process too was found to be unconstitutional; even if it were not, Zeleny has characterized his activities as encompassing both protest and entertainment, and he has the right to a constitutional SEP process to ensure he is not arrested for activities that blur the lines and may require a SEP.

Even if the city clarified Zeleny's protesting with a gun did not require a SEP, Zeleny is challenging the statute as a prior restraint. "In the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable." *Forsyth Cnty., Georgia v. Nationalist Movement*, (1992) 505 U.S. 123, 129. This is a relaxation of the general "prudential requirement that a litigant raise [solely] his own rights and interests." *Serv. Emp. Int'l Union, Local 3 v. Municipality of Mt. Lebanon*, 446 F.3d 419, 423 (3rd Cir. 2006). Zeleny may well apply for a SEP in the future. Because of his past activities and that fact, Zeleny has standing to attack the SEP process generally. As the summary judgment order noted, "Zeleny's standing is not a function of his having 'appl[ied] for, and be[en] denied' any one particular permit." Summary Judgment Order at 13 (citing *Lakewood*, 486 U.S. 750). The cases the city marshals in support of its position are all distinguishable, because it was much less clear than here whether the plaintiffs had standing, or because they issued outside of this context.

Whether it is framed as wasted time or chilled speech, Zeleny has suffered injury traceable to the city's conduct and redressable by its actions, sufficient to satisfy the requirements for Article III standing. *Spokeo*, 578 U.S. at 338. "So long as the processes remain in place and controlling over any future application he might submit, his claims against Menlo Park are justiciable." Summary Judgment Order at 13. This entire dispute underscores the reasons the policy is unconstitutionally vague in the first place.

### B. Fees

#### 1. Unsuccessful Claims

The city does not contest that Zeleny is entitled to fees on his successful claims, and that there are no special circumstances to trouble this result. *Borunda*, 885 F.3d at 1392. It also does not dispute that counsel's rates are reasonable, which they are. *See, e.g.*, *Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 18-6059, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ($475-975 per hour for partners was reasonable); *AdTrader, Inc. v. Google, Inc.*, No. 17-7082, 2020 WL 1921774, at * 8 (N.D. Cal. Mar 24, 2020) ($1,000 per hour for senior partners and $855 per hour for junior partners and of counsel attorneys was reasonable).

Thus, there are two remaining issues. First, whether there are any entirely unrelated claims. "[C]laims are related … if they 'involve a common core of facts or are based on related legal theories." *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005). Zeleny's entirely unsuccessful claim that California's Open Carry Ban violated the U.S. Constitution is unrelated to his other claims. Second, whether to reduce the fees for a portion of the unsuccessful claims that relate to the successful ones. While fees can and should be awarded on unsuccessful claims if they are related to successful claims, the fees for those claims can also be reduced, depending on the claims' relationship. *Hensley v. Eckerhart*, 461 U.S. 424, 436–38 (1983). While the focus should be on the overall relief won when the claims are related, and not on rigidly parsing out individual claims, the "level of success" must also be considered. *Id.* at 434–35.

A reduction for some portion of the unsuccessful related claims is warranted here. To start, Zeleny's victory was not so total as he makes it out to be. He lost against most of the Defendants, and on some of the related claims. He also exaggerates the strength of the relationship between his claims against the state and those against the city. He challenged the state's "entertainment event" exemption to its ban on the open carry of firearms, and lost. While there was some relationship between that challenge and his challenge to the city (as the city's regulations are in part implementing this law), the claims are not entirely related. Clearly the claim about the city's film permitting was not contingent on a victory against the state. Also, the SEP process is distinct from

the film process.

That said, Zeleny is correct that the fees on the related unsuccessful claims cannot be zeroed out. *Dang*, 422 F.3d at 813. Unfortunately, it is impossible to determine what portion of certain entries related to the unsuccessful claims. Even the most fastidious timekeeper, gifted with foresight and trying to forestall this very problem, could not have apportioned out certain entries precisely across the various claims in this case. Still, some portion must be reduced.

The city's highlighting of 555 hours of unrelated claims serves as a ceiling. These hours were billed at $372,941 (using each attorney's billing rate multiplied by the number of hours challenged for being unrelated for that attorney). Zeleny notes that many entries were improperly challenged, e.g., every entry relating to discovery from the venture capital firm were stricken even after the firm was dismissed from the case; some of those entries might relate entirely to the successful claims.

Ultimately, between the entirely unrelated claims and the somewhat related claims, but allowing that the city's challenges were overzealous, striking 50% of the fees the city challenged for being unrelated is appropriate. This is a reduction of $186,470.5, resulting in an adjusted lodestar award of $987,638. This represents a rough compromise between the two competing truths that (1) Zeleny prevailed only on one type of claim against one Defendant, and (2) his victory was interrelated with most of the rest of the case.

### 2. Unnecessary Work, Improper Bookkeeping, and the Multiplier

Counsel must make a good-faith effort to exclude hours that were redundant or unnecessary. *Hensley*, 461 U.S. at 434. The city argues many entries were unnecessary. However, Zeleny mounts a persuasive defense against most of the challenges. For example, the city challenged many times where the most highly paid partner reviewed others' work or collaborated with them. As the city points out, this attorney collaboration is essential in complex litigation, as evidenced by the city itself assigning multiple attorneys to the case. Zeleny's firm did not overstaff the matter. That said, it does seem there was at least some degree of unnecessary work, such as when Mr. Affeld reviewed routine emails. The *Hensley* Court noted that "billing

judgment" is an important component in fee setting and fee awards. *Id.* Sometimes lawyers in private practice are ethically required to reduce hours they actually worked—even on successful claims—if the fees would be excessive for a given task. *Id.* Again, determining how much is nearly impossible given the records are imperfect, with some entries being overly vague. This imperfect recordkeeping itself gives cause to reduce the lodestar amount. *See, e.g.*, *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014). There should, therefore, be a roughly 5–10% further reduction to compensate for both of these factors. *Id.*

On the other hand, Zeleny is correct that he should be given some multiplier on top of the lodestar for delivering victory in an unpopular and difficult case, one that will benefit citizens of the city (and the state) with clearer law and guidelines for essential First Amendment activity. Yet the 50% multiplier he seeks is excessive. Zeleny was not the state's most-loathed man, and the victory did not entail overturning centuries-old precedent. Something on the order of a 5–10% increase over the lodestar amount is appropriate.

Thus, these two impossible-to-calculate factors need not be divined with faux-mathematical precision: they will simply be adjudged to cancel each other out. The *Kerr* factors, to the extent they are not already subsumed by the analysis above, do not change the just award here any further. *Kerr*, 526 F.2d at 69–70.

## V. CONCLUSION

For the reasons set forth above, the city's motion to dismiss is denied, and Zeleny's motion for attorney is granted as modified. Zeleny is awarded $987,638 in attorneys' fees.

**IT IS SO ORDERED**.

Dated: February 24, 2022

_____
RICHARD SEEBORG
Chief United States District Judge

ORDER ON MOTIONS TO DISMISS AND FOR ATTORNEYS' FEES
CASE NO. 17-cv-07357-RS
11